**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JOHNSON & JOHNSON HEALTH CARE
SYSTEMS INC.,

                Plaintiff,

         v.

SAVE ON SP, LLC,

                Defendant.

Case No. 2:22-cv-02632-JMV-CLW
  *(Document electronically filed)*

*Oral Argument Requested*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**GIBBONS P.C.**
E. Evans Wohlforth, Jr.
Julia E. Palermo
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500
ewohlforth@gibbonslaw.com
jpalermo@gibbonslaw.com

**SELENDY GAY ELSBERG PLLC**
David Elsberg *(admitted pro hac vice)*
Andrew R. Dunlap *(admitted pro hac vice)*
Meredith Nelson *(admitted pro hac vice)*
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
delsberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .....................................................................................................................3

     A.    Employer-Sponsored Health Plans .........................................................3

     B.    CarePath ..................................................................................................4

     C.    SaveOnSP ...............................................................................................5

          1.    Advising Plan Sponsors to Change Their Benefit Design .........................6

          2.    Implementing Plan Design.......................................................................7

     D.    JJHCS's Claims .......................................................................................8

ARGUMENT ..........................................................................................................................8

I.    ERISA § 514(a) Expressly Preempts JJHCS's Claims for Amounts Paid for Participants in Private Plans...........................................................................................9

     A.    JJHCS's Claims Have an Impermissible "Connection With" ERISA Plans ...........9

          1.    JJHCS Seeks to Enjoin ERISA Plans' Selection and Implementation of Plan Terms.....................................................................9

          2.    JJHCS Seeks to Coerce ERISA Plans into Changing Plan Terms.............12

     B.    JJHCS's Claims Have a "Reference To" ERISA Plans by Alleging Injuries Caused by the Plans' Designs and Misrepresentations of the Plans' Terms ........13

II.    JJHCS Fails to State Claims for Deceptive Trade Practices..............................................15

     A.    SaveOn Did Not Deceive Plan Participants Already Enrolled in CarePath ..........16

     B.    SaveOn Did Not Cause JJHCS a Cognizable Injury .............................................16

     C.    SaveOn Did Not Deceive or Mislead Participants.................................................18

     D.    SaveOn Did Not Harm the Public.........................................................................22

III.    JJHCS Fails to State Claims for Tortious Interference .....................................................25

     A.    SaveOn Did Not Tortiously Interfere with CarePath's Contracts by Encouraging Plan Participants to Sign Up for CarePath .....................................25

i

B.      SaveOn Could Not Have Induced Plan Participants Already Enrolled in
        CarePath to Enroll in CarePath ................................................................26

C.      Plan Participants Did Not Breach the Contractual Ban On "Other Offer[s]" ........27

        1.      Plans' Benefit Terms Are Not An "Offer" .................................................27

        2.      SaveOn's Services Are Not An "Offer" .....................................................28

CONCLUSION .........................................................................................................................29

## **TABLE OF AUTHORITIES**

**Cases**                                                                                   **Page(s)**

*1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers*,
   968 F.2d 401 (3d Cir. 1992) ........................................................................................14

*Berger v. Edgewater Steel Co.*,
   911 F.2d 911 (3d Cir. 1990) ........................................................................................15

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
   3 N.Y.3d 200 (2004) ............................................................................................16, 17

*Boule v. Hutton*,
   320 F. Supp. 2d 132 (S.D.N.Y. 2004) ........................................................................25

*Campo v. Oxford Health Plans, Inc.*,
   2007 WL 1827220 (D.N.J. June 26, 2007) ................................................................12

*Canfield Sci., Inc. v. Melanoscan, LLC*,
   2017 WL 2304644 (D.N.J. May 25, 2017) .................................................19, 20, 24

*Cargill Glob. Trading v. Applied Dev. Co.*,
   706 F. Supp. 2d 563 (D.N.J. 2010) .......................................................................25, 26

*City of New York v. Smokes-Spirits.Com, Inc.*,
   12 N.Y.3d 616 (2009) .....................................................................16, 17, 22, 24

*Co., LLC v. Senetek PLC*,
   118 A.D.3d 520 (N.Y. App. Div. 2014) .....................................................................29

*E. Coast Advanced Plastic Surgery v. Aetna Inc.*,
   2019 WL 2223942 (D.N.J. May 23, 2019) ..................................................................8

*Egelhoff v. Egelhoff*,
   532 U.S. 141 (2001) .......................................................................................................9

*Enigma Mgmt. Corp. v. Multiplan, Inc.*,
   994 F. Supp. 2d 290 (E.D.N.Y. 2014) .......................................................................15

*Feliciano v. Gen. Motors LLC*,
   2016 WL 9344120 (S.D.N.Y. Mar. 31, 2016) ...........................................................21

*Fisher v. USAA Casualty Ins. Co.*,
   973 F.2d 1103 (3d Cir. 1992) ......................................................................................15

*Gobeille v. Liberty Mut. Ins. Co.*,
   577 U.S. 312 (2016) ...............................................................................................9, 12

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
  98 N.Y.2d 314 (2002) ...................................................................................................15

*Guzman v. Mel S. Harris & Assocs., LLC*,
  2018 WL 1665252 (S.D.N.Y. Mar. 22, 2018) ...........................................................23

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender*
  *& Co.*,
  37 N.Y.3d 169 (2021) .............................................................................15, 16, 18

*IBM v. Platform Sols., Inc.*,
  658 F. Supp. 2d 603 (S.D.N.Y. 2009)........................................................................17

*Ideal You Weight Loss Ctr., LLC v. Zillioux*,
  174 A.D.3d 1473 (N.Y. App. Div. 2019) ..................................................................22

*Int'l Fid. Ins. Co. v. Cnty. of Rockland*,
  98 F. Supp. 2d 400 (S.D.N.Y. 2000).........................................................................27

*JJFM Corp. v. Mannino's Bagel Bakery*,
  132 N.Y.S.3d 582 (Sup. Ct. 2020)............................................................................25

*KS Trade LLC v. Int'l Gemological Inst., Inc.*,
  190 A.D.3d 556 (N.Y. App. Div. 2021) ....................................................................22

*Leadbeater v. JP Morgan Chase, N.A*,
  2017 WL 4790384 (D.N.J. Oct. 24, 2017)...................................................................8

*Maurizio v. Goldsmith*,
  230 F.3d 518 (2d Cir. 2000)......................................................................................21

*Med. Soc'y N.Y. v. UnitedHealth Grp. Inc.*,
  2019 WL 1409806 (S.D.N.Y. Mar. 28, 2019) ...........................................................15

*Menkes v. Prudential Ins. Co. of America*,
  762 F.3d 285 (3d Cir. 2014).........................................................................9, 14, 15

*Merit Const. Alliance v. City of Quincy*,
  759 F.3d 122 (1st Cir. 2014)......................................................................................10

*Michelo v. Nat'l Collegiate Student Loan Tr.*
  *2007-2*, 419 F. Supp. 3d 668 (S.D.N.Y. 2019) ...............................................22, 23

*Milich v. State Farm Fire & Cas. Co.*,
  2012 WL 4490531 (E.D.N.Y. Sept. 28, 2012) ..........................................................21

*Moshik Nadav Typography LLC v. Banana Republic, LLC*,
  2021 WL 2403724 (S.D.N.Y. June 10, 2021) ...........................................................22

*MUFG Union Bank, N.A. v. Axos Bank*,
196 A.D.3d 442 (N.Y. App. Div. 2021) ................................................................................29

*N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*,
102 A.D.3d 5 (N.Y. App. Div. 2012) ....................................................................................17

*Nasyrova v. Immunomedics, Inc.*,
2015 WL 4388310 (D.N.J. July 15, 2015) .............................................................................8

*Nostrame v. Santiago*,
213 N.J. 109 (2013) ........................................................................................................25, 26

*Paul Rudolph Found. v. Paul Rudolph Heritage Found.*,
2021 WL 4482608 (S.D.N.Y. Sept. 30, 2021) ......................................................................24

*Pharm. Care Mgmt. Ass'n v. District of Columbia*,
613 F.3d 179 (D.C. Cir. 2010) ................................................................................11, 12, 13

*Pharm. Care Mgmt. Ass'n v. Wehbi*,
18 F.4th 956 (8th Cir. 2021) .................................................................................................13

*Preston L. Firm, L.L.C. v. Mariner Health Care Mgmt. Co.*,
622 F.3d 384 (5th Cir. 2010) ................................................................................................28

*Printing Mart-Morristown v. Sharp Elecs. Corp.*,
116 N.J. 739 (1989) ..............................................................................................................25

*Rozier v. Fin. Recovery Sys., Inc.*,
2011 WL 2295116 (E.D.N.Y. June 7, 2011) ........................................................................23

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
141 S. Ct. 474 (2020) ............................................................................................................13

*Schlessinger v. Valspar Corp.*,
21 N.Y.3d 166 (2013) .....................................................................................................20, 21

*Securitron Magnalock Corp. v. Schnabolk*,
65 F.3d 256 (2d Cir. 1995) ...................................................................................................22

*Shaw v. Delta Air Lines, Inc.*,
463 U.S. 85 (1983) ............................................................................................................9, 10

*Small v. Lorillard Tobacco Co., Inc.*,
94 N.Y.2d 43 (1999) .............................................................................................................22

*Somerset Orthopedic Associates, P.A. v. Horizon Healthcare Servs. Inc.*,
2020 WL 1983693 (D.N.J. Apr. 27, 2020) ...........................................................................14

*Team Mktg. USA Corp. v. Power Pact, LLC,*
    41 A.D.3d 939 (N.Y. App. Div. 2007) ..................................................................28

*U.S. Bank Nat'l Ass'n as Tr. for GSAMP Tr. 2007-HE1 v. Goldman Sachs Mortg.*
    *Co., L.P.,*
    2020 WL 6873413 (S.D.N.Y. Nov. 23, 2020) ......................................................28

**Statutes**

29 U.S.C. § 1144(a) ............................................................................................................9

45 C.F.R. § 156.100 (2018) ...............................................................................................6

45 C.F.R. § 156.110 (2015) ...............................................................................................6

45 C.F.R. § 156.122(a)(1) ..................................................................................................6

## PRELIMINARY STATEMENT

JJHCS[1] advertises that its CarePath program helps patients suffering from chronic illnesses afford the high costs of specialty drugs sold by its affiliate, Janssen, by providing up to $20,000 per year of copay assistance for each patient. JJHCS's complaint makes clear that it does not really pay that much, and never intended to. JJHCS uses its copay assistance program CarePath to entice patients into starting Janssen specialty treatments. Janssen meanwhile keeps hiking the prices of those massively expensive drugs, for which there are few or no cheaper alternatives, to reap outsized profits.[2] JJHCS uses this scheme to line its pockets at the expense of employers who sponsor the employee benefit plans that provide most Americans with their healthcare. The ever-increasing costs of Janssen's drugs ultimately are passed on to plan participants, raising individual healthcare costs across the board.[3]

Save On SP, LLC ("SaveOn") advises plan sponsors how to structure plan benefits to take full advantage of copay assistance programs like CarePath while ensuring that plan participants

---

[1] Unless otherwise indicated, defined terms have the same meaning as in JJHCS's complaint.

[2] The average annual price of specialty drugs in the U.S. quintupled from under $17,000 a year in 2006 to over $84,000 in 2020—nearly $20,000 higher than the median U.S. household income. Stephen W. Schondelmeyer & Leigh Purvis, *Trends in Retail Prices of Specialty Prescription Drugs Widely Used by Older Americans, 2006 to 2020*, AARP Pub. Pol'y Inst., 8 (Sept. 2021), https://www.aarp.org/content/dam/aarp/ppi/2021/09/trends-retail-prices-specialty-drugs.doi.10.26419-2Fppi.00073.006.pdf. Manufacturers like Janssen earn between a four-to-one and a six-to-one estimated return on programs like CarePath. Leemore Dafny et al., *When Discounts Raise Costs: The Effect of Copay Coupons on Generic Utilization*, 9 Am. Econ. J.: Econ. Pol'y 92, 115 (2016).

[3] *See, e.g.*, *2019 Survey of US Employer-Sponsored Health Plans*, MarshMcLennan, https://www.marshmclennan.com/insights/publications/2019/oct/2019-survey-of-us--employersponsored-health-plans.html#:~:text=The%20Mercer%20National%20Survey%20of%20Employer-Sponsored%20Health%20Plans,fix%20on%20their%20costs%20for%20the%20current%20year (last accessed July 13, 2022) (describing how rising costs, including the cost of specialty drugs, lead to higher deductibles for plans where the sponsor has "less ability to absorb high cost increases").

get their specialty drugs for free. SaveOn-advised plans set high copays (amounts the plans require participants to pay for healthcare products and services after paying a deductible) for some specialty drugs, and they exempt copay assistance payments from the participants' out-of-pocket maximums (caps on how much participants must pay towards their care each year). The plans can then offer a benefit: if participants enroll in copay assistance and let SaveOn monitor their accounts, the plan covers any amounts the participants would otherwise owe for their drugs after exhausting copay assistance. Participants get their drugs for free, and the plans get all available copay assistance funds, reducing healthcare costs. Even manufacturers like JJHCS benefit: by eliminating costs for participants, the benefit helps more participants use their drugs, increasing sales.

If JJHCS does not like these plan terms, it has a simple remedy: reduce its CarePath budget. JJHCS recently did just that for two drugs, slashing its annual budget from $20,000 to $6,000 per participant for STELARA and TREMFYA for patients on plans that claim to reduce out-of-pocket costs, as of January 1, 2022. For SaveOn-advised plans, such reductions do not harm plan participants, who pay nothing for their specialty drugs as long as the relevant plan terms remain in place.

JJHCS instead sued SaveOn for alleged violations of a consumer-protection statute and tortious interference with contract. JJHCS effectively asks the Court to force employers to rewrite their benefit plans to pay more for Janssen's drugs while JJHCS avoids paying the full amount of copay assistance it promised. These claims are fundamentally flawed and should be dismissed.

*First*, JJHCS's claims concerning private plans are barred by ERISA § 514(a), which preempts state law claims that have a "connection with" or "reference to" such plans. JJHCS's claims have a "connection with" such plans: JJHCS asks the Court to enjoin ERISA plans from setting and implementing plan terms and seeks relief that would coerce those plans into adopting JJHCS's preferred benefit design. *See infra*, Section I.A. JJHCS's claims also have a "reference

to" such plans: they allege injuries based on benefit design and SaveOn's representations about plan terms. *See infra*, Section I.B.

**Second**, JJHCS's New York consumer protection claims fail. SaveOn could not have misled most plan participants because they signed up for CarePath before SaveOn communicated with them. *See infra*, Section II.A. JJHCS also fails to sufficiently plead injury, citing alleged harms to participants and to JJHCS that SaveOn did not directly cause. *See infra*, Section II.B. JJHCS further fails to adequately plead that SaveOn misled consumers; its allegations are either speculative or directly contradicted by materials incorporated into its complaint. *See infra*, Section II.C. And JJHCS does not sufficiently allege that SaveOn harmed the public, offering only speculation and other starkly contradicted statements. *See infra*, Section II.D.

**Finally**, JJHCS's claims that SaveOn tortiously interfered with its contracts with plan participants fail. JJHCS alleges that all of SaveOn's conduct occurred before the participants signed up for CarePath, but SaveOn could not tortiously interfere with a contract that did not yet exist. *See infra*, Section III.A. SaveOn also could not have coerced existing CarePath users to enroll in CarePath. *See infra*, Section III.B. And SaveOn did not induce plan participants to breach the term in JJHCS's contract stating that CarePath is not compatible with any "other offer"; SaveOn's alleged conduct consists of advising plan sponsors to adopt plan terms and communicating with plan participants about plan benefits, neither of which is an "offer." *See infra*, Section III.C.

The Court should dismiss JJHCS's claims with prejudice.

## BACKGROUND

### A.     Employer-Sponsored Health Plans

Most health plans at issue here are private, employer-sponsored, self-funded plans. In such plans, an employer is the "plan administrator" or "plan sponsor," which establishes or maintains the plan. The employer also funds the plan, providing the money used to pay benefits.

3

Plan sponsors decide what services plans will cover and levels of participant "responsibility"—amounts participants pay out of pocket towards the cost of covered services. *E.g.*, Complaint, Dkt. No. 1 ("Compl.") ¶ 66. Several categories of patient responsibility are relevant here. A ***deductible*** is an amount that a plan participant must pay for all covered services before the plan begins to pay. *Id.* ¶ 39. A ***copay*** is an amount that a plan participant must pay for covered services after paying her deductible. *Id.* ¶ 2.[4] An ***out-of-pocket maximum*** is the most the plan requires a plan participant to pay during a policy period before the plan starts paying all the cost of covered services. *See id.* ¶ 10.

While plan sponsors have great flexibility in setting plan terms, the Affordable Care Act (the "ACA") effectively limits cost sharing for "essential health benefits" ("EHBs") by capping annual out-of-pocket maximums. *Id.* ¶¶ 9, 43; *see Affordable Care Act Implementation FAQs - Set 18 "Q2,"* Ctrs. for Medicare and Medicaid Servs. (last visited July 14, 2022), https://www.cms.gov/CCIIO/Resources/Fact-Sheets-and-FAQs/aca_implementation_faqs18. Plan sponsors are free to set whatever copays they like for "non-essential health benefits" ("NEHBs") and can exclude NEHBs from the plan participants' out-of-pocket maximums. Compl. ¶ 10; *see also id.* ¶ 54; Ex. 1 (ESI Presentation Tr.) at 20:21-21:9, 22:1-7.[5]

**B.    CarePath**

Janssen manufactures specialty drugs used to treat complex, chronic conditions. Compl. ¶¶ 32-33. They are very expensive and not easily duplicated. *Id.* ¶¶ 33-35.

---

[4] SaveOn adopts JJHCS's definition of "copay" to include fixed amounts (generally called "copays") and percentages of services' costs (generally called "coinsurance"). Compl. ¶ 2 n.1.

[5] Exhibits are attached to the Certification of E. Evans Wohlforth, Jr. Each is cited in JJHCS's complaint. Pincites to the ESI Presentation Transcript refer to pages and lines, not timestamps.

Pharmaceutical companies like JJHCS set up "copay assistance" programs "under the guise of making their drugs more affordable and accessible to the patients that need them." Ex. 1 at 45:4-7. These programs let manufacturers preserve market share and reap significant tax write-offs. *Id.* at 45:7-11. They are designed to stop patients who are using one manufacturer's specialty drug from switching to a competitor's drug for economic reasons. *Id.* at 45:24-46:1, 46:3-6.

CarePath is JJHCS's copay assistance program. Compl. ¶ 7. It covers 44 Janssen specialty drugs. *Id.* ¶ 47. For most drugs, JJHCS budgets "up to $20,000" in CarePath copay assistance per patient, per year. *Id.* But JJHCS never planned to spend that much. It wanted its copay assistance payments to count towards plan participants' out-of-pocket maximums, *id.* ¶ 47, which the ACA set for the 2022 plan year at $8,700 for individuals, *id.* ¶ 43. That is, JJHCS wanted to advertise up to $20,000 in copay assistance but provide at most $8,700. Under most plans, JJHCS reaches the $20,000 limit for only a small percentage of patients enrolled in CarePath. *See, e.g.*, *id.* ¶ 99.

JJHCS fully controls how much copay assistance it provides. It budgeted up to $20,000 per patient for most drugs, *id.* ¶ 47, but slashed that budget down to $6,000 as of January 1, 2022 for two drugs (STELARA and TREMFYA) for patients on plans that claim to reduce out-of-pocket costs. Ex. 4 (STELARA Terms and Conditions); Ex. 5 (TREMFYA Terms and Conditions); *see also* Compl. ¶ 102.

**C.    SaveOnSP**

What JJHCS dubs the "SaveOnSP Program," Compl. ¶ 2, consists of two things: (1) plan sponsors design plan benefits to maximize copay assistance from programs like CarePath and ensure that plan participants pay nothing for specialty medications; and (2) at the direction and on

behalf of plan sponsors, SaveOn implements the sponsor's benefit design by, among other things, helping plan participants enroll in copay assistance programs.[6]

### 1.   Advising Plan Sponsors to Change Their Benefit Design

SaveOn advises self-funded plan sponsors on how to structure their benefit designs to achieve twin goals: maximizing copay assistance from programs like CarePath and ensuring that plan participants pay nothing for specialty medications. This involves several steps.

As provided by federal law, the plan sponsors first select a benchmark plan, like Utah's, which designates fewer specialty drugs as EHBs (which are subject to the ACA's caps on copays and out-of-pocket maximums).[7] Compl. ¶ 71. Plan sponsors then reclassify some specialty drugs as NEHBs, allowing them to increase copays and exempt those copays from participants' out-of-pocket maximums. *Id.* ¶¶ 9, 10. JJHCS calls this a "loophole," *id.* ¶ 57, but its quarrel is with Congress, which enacted the ACA, and HHS, which promulgated the ACA's regulations. The ACA and its regulations are clear that a drug's classification as an EHB has nothing to do with whether it is essential to a patient's medical needs, only which ACA rules apply.

---

[6] JJHCS's allegations about SaveOn rest heavily on a presentation by Express Scripts to a plan sponsor in 2021 (the "ESI Presentation"). *See* ¶¶ 9, 11 n.3, 14, 19, 20, 25, 53, 55, 58, 60, 64, 68, 90. Exhibit 1 is a transcript of that presentation; Exhibit 2 is slides from the presentation; Exhibit 3 is an electronic copy of the video, which has been provided to the Court. The video is also available at https://vimeo.com/513414094.

[7] The ACA sets general parameters for EHBs, but it does not define them. EHB-Benchmark Plan Standards, 45 C.F.R. § 156.110 (2015). The Department of Health and Human Services ("HHS") tasked each state with creating "benchmark plans" that defined EHBs in that state. *See* State Selection of Benchmark Plan, 45 C.F.R. § 156.100 (2018). HHS's regulations let self-funded plans choose a state plan as an "EHB-benchmark plan" and cover "[t]he same number of prescription drugs in each category and class" as that plan. 45 C.F.R. § 156.122(a)(1). Plan sponsors may designate other covered prescription drugs beyond the number required by the benchmark as NEHBs. *See generally* § 156.122(a).

The plan sponsors then provide a benefit: if a participant enrolls in copay assistance and lets SaveOn monitor her account, the plan will cover all amounts that copay assistance does not, including after the participant has used all available assistance. Ex. 1 at 18:17-25; 35:25-36:7.[8] ***The participants pay nothing for their drugs****. Id.* Participants who do not choose this benefit remain responsible for the full amount of the copay. *Id.* at 38:20-40:6.

Importantly, SaveOn does not set these benefit terms—the plan sponsors do. While JJHCS at times imprecisely suggests that SaveOn controls these terms, it acknowledges that the plan sponsors (what it calls "payers") actually control them. *E.g.*, Compl. ¶ 6 ("[A] patient's copay cost is determined and imposed by private payers."); *see also id.* ¶¶ 9, 10, 71. JJHCS does not and cannot allege that SaveOn has the authority to set terms for employee benefit plans.

### 2. Implementing Plan Design

SaveOn helps plans implement their benefit design, primarily by contacting participants to explain the plan's benefit structure, helping them enroll in copay assistance, monitoring participants' accounts, and ensuring that the plans cover all residual point-of-sale costs. While many participants enroll in copay assistance on their own, SaveOn encourages those who don't to sign up. *Id.* ¶ 12.; *see also* Ex. 1 at 29:4-22. If an unenrolled participant tries to fill an eligible prescription—almost always from an online pharmacy, not in person—the pharmacy connects the participant to SaveOn, which explains the relevant plan benefit and helps her to enroll in copay assistance. Ex. 1 at 30:7-25. Almost all participants do so. Compl. ¶ 14.

---

[8] Account monitoring ensures this benefit is "seamless." Participants need not track when a copay assistance program pays and when the plan does; they always pay nothing. Ex. 1 at 26:23-27:14.

### D.     JJHCS's Claims

Miffed at paying more of what it budgeted for CarePath than it secretly intended to, JJHCS could have simply reduced its CarePath budget for participants of SaveOn-advised plans. *Cf.* Exs. 4, 5. This would not harm participants of those plans, who would still pay nothing for their specialty drugs under the plans' current terms. Instead, JJHCS sued SaveOn, asking for "an injunction preventing SaveOnSP from implementing the SaveOnSP Program as to Janssen drugs," and damages for amounts it paid from CarePath for participants of SaveOn-advised plans. Compl. at 41.

### ARGUMENT

JJHCS must allege facts giving rise to a claim for relief that is plausible on its face. *E. Coast Advanced Plastic Surgery v. Aetna Inc.*, 2019 WL 2223942, at *2 (D.N.J. May 23, 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state a legally cognizable cause of action." *Id.* (internal quotations omitted).

The Court "must, on a Rule 12(b)(6) motion, accept all well-pled factual allegations as true," unless "the allegations are contradicted by the documents attached to the Complaint upon which its claims are based." *Nasyrova v. Immunomedics, Inc.*, 2015 WL 4388310, at *3 (D.N.J. July 15, 2015); *see also E. Coast Advanced Plastic Surgery*, 2019 WL 2223942, at *3 n.7 (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994)) ("[W]hen a document and the factual allegations contradict, the document controls."). The Court need not accept unwarranted inferences, unsupported conclusions, or legal conclusions disguised as factual allegations. *See Nasyrova*, 2015 WL 4388310, at *3; *see also Leadbeater v. JP Morgan Chase, N.A*, 2017 WL 4790384, at *3 (D.N.J. Oct. 24, 2017).

I.      **ERISA § 514(a) Expressly Preempts JJHCS's Claims for Amounts Paid for Participants in Private Plans**

ERISA § 514(a) bars JJHCS's claims for copay assistance paid for participants in private employee benefit plans. The scope of § 514(a)'s preemptive power is "extraordinary." *Menkes v. Prudential Ins. Co. of America*, 762 F.3d 285, 293 (3d Cir. 2014). It expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "State law" includes state statutory and common law claims. *Menkes*, 762 F.3d at 294-95. State law claims "relate to" an ERISA plan—in the "broad, common-sense" meaning of the words—if they have a "connection with" or "reference to" that plan. *Id.* at 294 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)). JJHCS's claims have both.

A.      **JJHCS's Claims Have an Impermissible "Connection With" ERISA Plans**

Claims have an impermissible "connection with" an ERISA plan if they attempt to "regulate[] a key facet of plan administration," *Gobeille v. Liberty Mutual Ins. Co.*, 577 U.S. 312, 325 (2016) (citing *Egelhoff v. Egelhoff*, 532 U.S. 141, 151-52 (2001)); attempt to interfere with "a central matter of plan administration," *Egelhoff*, 532 U.S. at 148, *see also Menkes*, 762 F.3d at 295-96; or "have acute, albeit indirect, economic effects" that "force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers," *Gobeille*, 577 U.S. at 320 (quoting *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 668 (1995)).

1.      **JJHCS Seeks to Enjoin ERISA Plans' Selection and Implementation of Plan Terms**

JJHCS's claims are impermissibly connected with ERISA plans because they ask the Court to enjoin the operation of ERISA plans. Neither state laws nor state law claims may "direct[ly] regulat[e] … a fundamental ERISA function." *Gobeille*, 577 U.S. at 325. An injunction that "mandates an employee benefit structure and specifies how that structure must be administered … is

9

simply too intrusive to withstand ERISA preemption." *Merit Const. Alliance v. City of Quincy*, 759 F.3d 122, 129 (1st Cir. 2014).

JJHCS seeks an injunction "preventing SaveOnSP from implementing the SaveOnSP Program as to Janssen drugs." Compl. at 41. Based on its broad definition of the "SaveOnSP Program," JJHCS seeks to enjoin SaveOn from (1) enforcing various plan terms that maximize the benefits of copay assistance programs to plans and their participants, *e.g., id.* ¶¶ 3, 9-11, and (2) implementing those terms by communicating with plan participants about their benefits, helping them to enroll in CarePath, and asking to monitor their accounts, *e.g., id.* ¶¶ 12-16.

ERISA bars JJHCS's attempt to enjoin SaveOn from enforcing ERISA plan terms. Even if SaveOn controlled what those terms are (it does not), § 514(a) squarely preempts state law attempts to dictate the content of ERISA plans. In *Shaw*, for example, the Supreme Court held that § 514(a) preempted a state law "prohibit[ing] employers from structuring their employee benefit plans in a manner that discriminate[d] on the basis of pregnancy" and another "requir[ing] employers to pay employees specific benefits." 463 U.S. at 97. In *Merit Construction Alliance*, the First Circuit held that § 514(a) preempted a city ordinance directing employee benefit plans to offer apprentice training programs. 759 F.3d at 129. JJHCS's requested injunction would prohibit plan sponsors from structuring their ERISA plan benefits as they wish, which § 514(a) does not allow. *Shaw*, 463 U.S. at 97; *Merit Const. Alliance*, 759 F.3d at 129.

ERISA also bars JJHCS's attempt to enjoin SaveOn from implementing plan design by communicating with plan participants, because § 514(a) preempts state laws that dictate how plan sponsors administer their plans. In *Alessi v. Raybestos-Manhattan, Inc.*, the Supreme Court held that ERISA preempted a New Jersey workers' compensation law to the extent that it barred ERISA plans from using an "integration" method to calculate pension benefits. 451 U.S. 504, 524-25

(1981). While the regulation of pension plans was "indirect[]," because the law did not directly target those plans, it impermissibly intruded on the implementation of plan design, which was left to "the discretion of … plan designers." *Id.* at 525. In *Cohen v. Horizon Blue Cross Blue Shield of N.J.*, a court in this District held that § 514(a) preempted a New Jersey statute to the extent that it required ERISA plans to pay benefits for emergency services within 30 days. 2017 WL 1206005, at *3-4 (D.N.J. Mar. 31, 2017). That law, too, was impermissible because it "govern[ed] a central matter of plan administration, namely, claims-processing procedures." *Id.* at *4 (alteration and quotation omitted); *see also Pharm. Care Mgmt. Ass'n v. District of Columbia* ("*PCMA*"), 613 F.3d 179, 185 (D.C. Cir. 2010) (finding that a state law regulating pharmaceutical benefits managers, or PBMs, impermissibly "regulate[d] the administration of employee benefits" by "requiring a PBM to follow a specific practice in administering pharmaceutical benefits on behalf of an [employee benefit plan]").

JJHCS seeks to enjoin the plan sponsors' implementation of plan terms. The plans create (1) a benefit for participants who enroll in copay assistance programs and let SaveOn monitor their accounts (they get their specialty drugs for free), and (2) a different benefit for participants who do not (they are responsible for copays). JJHCS seeks to block plan sponsors from using SaveOn to identify participants who use specialty drugs, inform them of these benefits, and encourage them to take advantage of the first one. This would effectively prevent sponsors from implementing that first benefit, as the plan could not ensure that participants continue to get their drugs for free without the education and monitoring functions facilitated by SaveOn.

JJHCS's requested injunction thus would impermissibly interfere with central aspects of plan administration: "determining the eligibility" of plan participants and "monitoring the availability of funds for benefit payments." *PCMA*, 613 F.3d at 185 (quoting *Fort Halifax Packing Co.,*

*Inc. v. Coyne*, 482 U.S. 1, 9 (1987)). Section 514(a) does not tolerate such relief. *See, e.g.*, *id.* at 187; *Alessi*, 451 U.S. at 524-25; *Cohen*, 2017 WL 1206005, at *4; *Campo v. Oxford Health Plans, Inc.*, 2007 WL 1827220, at *7-8 (D.N.J. June 26, 2007) (holding state law preempted because regulations on what information about ERISA plans had to be provided to participants and by whom impermissibly "affect[ed] a primary administrative function of the benefit plan").

### 2.    JJHCS Seeks to Coerce ERISA Plans into Changing Plan Terms

JJHCS's claims are further preempted because they request relief that would coerce ERISA plan sponsors into changing plan terms. Section 514(a) preempts state laws or state law claims that "have acute, albeit indirect, economic effects [that] force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." *Gobeille*, 577 U.S. at 320 (quotations omitted) (quoting *Travelers*, 514 U.S. at 668). It also preempts state laws or state law claims that "bind[] plan administrators to a particular choice." *PCMA*, 613 F.3d at 188.

In *PCMA*, the D.C. Circuit held that § 514(a) preempted the District of Columbia's Access Rx Act, which imposed various requirements on pharmaceutical benefits managers ("PBMs"), because the Act effectively prevented plans from contracting with PBMs to administer pharmaceutical benefits on the plans' terms. *Id.* The Act forced plans to choose between (1) administering those benefits itself, on its own terms; or (2) contracting with a PBM to administer those benefits, on the Act's terms. *Id.* Because self-administering these complex benefits was impractical, this choice "[was] in reality no choice at all," the Act "function[ed] as a regulation of an ERISA plan itself," and ERISA preempted it. *Id.* (quoting *Travelers*, 514 U.S. at 659).

In *Retail Industry Leaders Association v. Fielder*, the Fourth Circuit similarly held that § 514(a) preempted Maryland's Fair Share Act, which made employers pay the state the difference between their healthcare spending and eight percent of their payroll. 475 F.3d 180, 190-98 (4th Cir. 2007). "[T]he only rational choice employers [had] under the [Act was] to structure their

ERISA healthcare benefit plans so as to meet the minimum spending threshold." *Id.* at 193. Because the Act "effectively mandate[d] that employers structure their employee healthcare plans to provide a certain level of benefits," ERISA preempted it. *Id.* at 193-94.

JJHCS seeks damages here for alleged overpayments resulting from plans' benefit designs, Compl. ¶¶ 92-97, 110, 115. Because such damages would put companies like SaveOn out of business for fear of crippling liability, the plans would have to choose between self-administering plan terms that maximize copay assistance payments or eliminating them. But self-administration is impractical: employers are not set up to identify employees who take specialty drugs (doing so could place the employers at legal risk), contact them, explain benefit terms, or monitor their accounts. Plan sponsors' only true option would be changing their plan terms, which "is in reality no choice at all." *PCMA*, 613 F.3d at 188. Section 514(a) does not allow this kind of coercion. *Id.*; *Fielder*, 475 F.3d at 193-94.[9]

### B.     JJHCS's Claims Have a "Reference To" ERISA Plans by Alleging Injuries Caused by the Plans' Designs and Misrepresentations of the Plans' Terms

ERISA also preempts JJHCS's claims because they cannot be prosecuted without interpreting ERISA plan terms. A state law has an impermissible "reference to" an ERISA plan if, for

---

[9] The Supreme Court's recent decision in *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S. Ct. 474 (2020), is not to the contrary. The Court held there that ERISA did not preempt a statute requiring PBMs to reimburse pharmacies at or above drug acquisition cost, because the law was "nothing more than cost regulation," and so did not force plan sponsors to adopt a certain benefit scheme. *Id.* at 480-82. The injunction that JJHCS seeks here, in contrast, would coerce plan sponsors into adopting a benefit scheme that eliminates plan terms that maximize copay assistance. Because JJHCS's claims would force a change in plan terms, ERISA preempts them, even though JJHCS brings the claims against SaveOn and not the plans. *PCMA*, 613 F.3d at 188; *see also Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956 (8th Cir. 2021) (citing *PCMA*, 613 F.3d at 188) (holding, on remand from the Supreme Court after *Rutledge*, that state laws "do not escape preemption" simply because they "regulate PBMs rather than plans"); *see also id.* at 966-67 (agreeing with the Third Circuit that ERISA's concerns are "equally applicable to agents … who undertake and perform administrative duties for and on behalf of ERISA plans" (quoting *Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139, 148 (3d Cir. 2007))).

example, it requires the "court's inquiry [to] be directed to the plan." *Somerset Orthopedic Associates, P.A. v. Horizon Healthcare Servs. Inc.*, 2020 WL 1983693, at \*4 (D.N.J. Apr. 27, 2020) (citing *1975 Salaried Retirement Plan for Eligible Emps. of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992)). Courts in this Circuit have found such references where claims required the court to engage in a "construction of [the] plan[]," *Nobers*, 968 F.2d at 406, or "interpret[] the plan's terms," *Menkes*, 762 F.3d at 294.

Both of JJHCS's claims would require the Court to consider and interpret ERISA plan terms. To prove its alleged injuries, JJHCS would have to show that it "pa[id] more money from CarePath than it otherwise would have," Compl. ¶¶ 110, 115, because the plans set higher copays and excluded them from patient's out-of-pocket maximum, *see id.* ¶¶ 2-5; 73—core aspects of plan design. To prove its purported damages, JJHCS would have to compare the participants' copays under the current plan design to copays under JJHCS's preferred design. Because JJHCS's claims are predicated on the plans' benefit designs, and because JJCHS could not establish the cause of its alleged injuries without referring to those designs, ERISA preempts them. *See, e.g.*, *Nobers*, 968 F.2d at 406 (finding claims preempted where the "court's inquiry … would be directed to ERISA plans, in that the calculation of damages would involve construction of ERISA plans").

JJHCS's GBL § 349 claims require interpretation of ERISA plans for an additional reason: ERISA preempts consumer fraud claims based on alleged misrepresentations of an ERISA plan's terms, because they "would require a court to assess the defendants' representations in light of the plaintiffs' benefits and rights under the plans." *Menkes*, 762 F.3d at 295 (internal quotations omitted). JJHCS accuses SaveOn of directing pharmacies to "falsely tell" participants that the plans have denied their claims. Compl. ¶ 88; *see also id.* ¶¶ 13, 21, 113. Even if JJHCS adequately alleged as much (it does not, *see* Section II.C, *infra*), determining if the plans cover the drugs, and the

details of that coverage, requires looking at the plans' benefit designs. "This type of analysis—concerning the accuracy of statements to plan participants in the course of administering the plans—sits within the heartland of ERISA" and is preempted. *Menkes*, 762 F.3d at 295 (holding ERISA preempted claim under New Jersey's consumer protection statute that defendant misrepresented ERISA plan's coverage and exclusions) (citation omitted); *see also Med. Soc'y N.Y. v. UnitedHealth Grp. Inc.*, 2019 WL 1409806, at *7 (S.D.N.Y. Mar. 28, 2019) (holding ERISA preempted GBL counterclaim alleging provider fraudulently billed for services that ERISA plan purportedly did not cover, as claim required determining if the plan covered the services).[10]

## II.    JJHCS Fails to State Claims for Deceptive Trade Practices

JJHCS has not pled viable claims under GBL § 349, which requires it to allege that SaveOn engaged in (1) consumer-oriented conduct resulting in public harm, (2) that was deceptive or misleading in a material way, and (3) caused an injury to JJHCS. *See, e.g.*, *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.* ("*Himmelstein*"), 37 N.Y.3d 169, 176 (2021).[11] JJHCS fails to allege all three core elements.[12]

---

[10] *See also Berger v. Edgewater Steel Co.*, 911 F.2d 911, 923 (3d Cir. 1990) (affirming that ERISA preempted claims that defendant misrepresented proposed plan amendments because the claims "relate to an employee benefit plan"); *Enigma Mgmt. Corp. v. Multiplan, Inc.*, 994 F. Supp. 2d 290, 303 (E.D.N.Y. 2014) (holding ERISA preempted claim that defendant misrepresented plan terms because "[t]he court will need to examine what in fact the plan requires").

[11] JJHCS's claims under GBL § 349 are limited to overpayments made for New York-based plan participants. *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 325 (2002).

[12] In assessing JJHCS's claims under GBL § 349, this Court is bound by the decisions of the New York Court of Appeals and New York's intermediate appellate courts (the Appellate Divisions). *See Fisher v. USAA Casualty Ins. Co.*, 973 F.2d 1103, 1105 (3d Cir. 1992) (noting that federal courts follow the "decisions of an intermediate state court," "unless other persuasive data show that the highest court of the state would decide otherwise" (internal quotations omitted)).

### A. SaveOn Did Not Deceive Plan Participants Already Enrolled in CarePath

JJHCS cannot sustain a GBL § 349 claim based on plan participants who enrolled in Care-Path before speaking to SaveOn, as most participants did. *See* Ex. 1 at 42:19-43:8 (noting that most specialty drug patients are aware of copay assistance before SaveOn's involvement). JJHCS cannot plausibly allege that SaveOn deceived them. JJHCS accuses SaveOn of misleading patients into enrolling in CarePath, Compl. ¶ 114, but SaveOn could not mislead previously-enrolled patients into enrolling in a program in which they were already enrolled. JJHCS also does not allege that SaveOn's conduct towards these participants injured JJHCS. Once the participants enrolled in CarePath on their own, JJHCS would have paid the same amount of copay assistance for them under the plan design, regardless of SaveOn's involvement. JJHCS thus cannot state a GBL § 349 claim for previously-enrolled participants. *See, e.g.*, *Himmelstein*, 37 N.Y.3d at 176 (requiring plaintiff to show both consumer deception and an injury to it stemming from that deception).

### B. SaveOn Did Not Cause JJHCS a Cognizable Injury

For plan participants whom SaveOn did encourage to enroll in CarePath, JJHCS fails to adequately allege that SaveOn caused it a cognizable injury. Because JJHCS is not a consumer, it must allege a direct injury, not one derivative of harms allegedly suffered by consumers. *See Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.* ("*Philip Morris*"), 3 N.Y.3d 200, 207 (2004). JJHCS also must allege that it "suffered an injury as a result of the [alleged] deception." *Himmelstein*, 37 N.Y.3d at 176. JJHCS fails on both counts.

*First*, JJHCS does not allege an injury cognizable under GBL § 349. GBL § 349(h) does not allow plaintiffs to recover for derivative injuries that "arise[] solely as a result of injuries sustained by another party." *Philip Morris*, 3 N.Y.3d at 207; *see also City of New York v. Smokes-Spirits.Com, Inc.* ("*Smokes-Spirits*"), 12 N.Y.3d 616, 623 (2009) (requiring actual injury caused by the deceptive conduct and disallowing "allegations of indirect or derivative injuries"). In *Philip*

*Morris*, insurers alleged tobacco companies misled the public about the harmful properties of cig-arette smoking and sued them for the costs of services to their insureds. 3 N.Y.3d at 203-04. The New York Court of Appeals held that "claims by a third-party payer of health care costs seeking to recover costs of services provided to subscribers as a result of those subscribers being harmed by a defendant's … violation of [GBL § 349]" were "too remote to permit suit under that statute," *id.* at 205, because they were "derivative of the harm to their patients/members." *Id.* at 208 n.3; *see also IBM v. Platform Sols., Inc.*, 658 F. Supp. 2d 603, 614 (S.D.N.Y. 2009) (holding plaintiff cannot sue for injuries that "arise[] solely as a result of injuries sustained by another party"); *cf. N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 17 (N.Y. App. Div. 2012) (holding plaintiff could sue for direct injuries that "did not require a subsequent consumer trans-action" to link those injuries to defendant's deceptive conduct).

Like the *Philip Morris* plaintiffs, JJHCS does not allege that it was directly injured. It al-leges that SaveOn injured plan participants by misleading them into enrolling in CarePath; JJHCS's alleged injuries came later, when participants filled their prescriptions and JJHCS volun-tarily made copay assistance payments. JJHCS's claims are thus derivative, and so not cognizable under GBL § 349. *Philip Morris*, 3 N.Y.3d at 207; *see also Smokes-Spirits*, 12 N.Y. 3d at 622 (disallowing city's claim for lost tax revenue from customers that defendant allegedly deceived into smoking for the same reason); *IBM*, 658 F. Supp. 2d at 614 (disallowing reseller's claim for losses resulting from IBM's decision not to sell equipment to resellers' counterparties, because "[plaintiff] was injured only if [counterparties] also were injured").

*Second*, JJHCS does not allege that SaveOn's conduct caused its purported injuries. JJHCS asserts that "it pa[id] more money from CarePath than it otherwise would have." Compl. ¶ 115. But it acknowledges that participants of SaveOn-affiliated plans who enrolled in CarePath did so

not because of SaveOn, but because any reasonable patient would always choose enrolling in co-pay assistance over paying high copays for their drugs. *Id.* ¶¶ 11, 14. And JJHCS acknowledges that once those plan participants are enrolled in CarePath, its so-called injury is attributable to two things: (1) the amounts that JJHCS budgeted for CarePath *e.g.*, *id.* ¶ 99; and (2) plan terms that maximized copay assistance, *e.g.*, *id.* ¶ 4, 9, 10, 71. JJHCS admits that SaveOn does not control the CarePath budget (JJHCS does), *see id.* ¶ 102; Exs. 4, 5, or the plans' terms (the plan sponsors do), *see* Compl. ¶¶ 2, 6, 10, 36-37, 39, 66. JJHCS thus fails to allege that SaveOn's conduct caused its injuries, and so fails to state a GBL § 349 claim. *Himmelstein*, 37 N.Y.3d at 176.

### C.    SaveOn Did Not Deceive or Mislead Participants

JJHCS fails to sufficiently allege that SaveOn engaged in deceptive or materially misleading conduct. Acts are deceptive or materially misleading when they are objectively "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* at 178 (quoting *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999)). JJHCS's allegations fall short.

"Denial" of Coverage: JJHCS alleges that SaveOn "engineer[s] a false denial of coverage at the point of sale to coerce patients into enrolling in the SaveOnSP program." Compl. ¶ 113; *see also id.* ¶¶ 21, 63, 88. JJHCS cites one document, which does not say "denial." It says: "[p]oint of sale claim rejection introduced to facilitate warm transfer of member to SaveonSP." Ex. 6 (Human Resources Committee Meeting, Village of Lindenhurst) at 69. The ESI Presentation explains that this is ***not*** a denial and no participant is told that it is:

> [W]e get a prompt in our system. That prompt for an advocate is actually a rejection. So I don't like to use that word in this capacity because ***we're not telling them that the claim's not paid***, but it's the prompt for our [pharmacy] advocate to recognize that it is a SaveOn prescription.

Ex. 1 at 37:18-38:1 (emphasis added).

18

> And at that point in time, they warm transfer the member to SaveOn, so we stay on the line, make sure they're connected, and then SaveOn does the work to help them understand the program, the terms of enroll[ment] and copay assistance and getting them to that program.

*Id.* at 30:15-20.

> We want members to be able to get their medication. … ***[W]e would not tell the member they couldn't get their medicine or … anything to that effect***.

*Id.* at 38:9-18 (emphasis added). The cited document and ESI Presentation show that there was no "denial" of coverage, let alone one told to the patient—just an internal prompt to start the process of encouraging participants to enroll in CarePath and consent to plan monitoring. These materials control over JJHCS's mischaracterization, and do not support its claims. *See Canfield Sci., Inc. v. Melanoscan, LLC*, 2017 WL 2304644, at *4 & n.5 (D.N.J. May 25, 2017) (dismissing multiple claims (including for tortious interference) where plaintiff "selectively" quoted a single email to allege defendant's intent, because the document did not support plaintiff's characterization).

Copay Assistance Without SaveOn: JJHCS alleges that SaveOn "tell[s] patients that there is 'no copay assistance with [sic] SaveOnSP'" when manufacturers do in fact provide assistance independently of the SaveOnSP Program." Compl. ¶ 113 (presumably intending to say "without"). JJHCS cites a single document, a flier prepared by Blue Cross Blue Shield of Western New York. *Id.* ¶ 76 (citing Ex. 7 (Copay Offset Program Flier)). It begins: "The SaveonSP program … is designed to help members save money on their specialty medications by taking advantage of funds available through drug manufacturers." Ex. 7. It then compares two scenarios:

| How it works |
|---|

**Example**

**Without SaveonSP**
The prescription copay is paid by you. There is no copay assistance.

| Drug Cost | Your Copay | Copay Assistance | Your Total Cost | Plan Cost |
|---|---|---|---|---|
| $2,250 | $50 | $0 | $50 | $2,200 |

**With SaveonSP**
Select specialty medications qualify for the SaveonSP program. Copay assistance helps offset the cost of specialty medications.

| Drug Cost | Your Copay | Copay Assistance | Your Total Cost | Plan Cost |
|---|---|---|---|---|
| $2,250 | $800 | $800 | $0 | $1,450 |

On its face, the flier compares an old benefit design "without SaveonSP" to a new benefit design "with SaveonSP." *Id.* The old benefit design "without SaveonSP" represents plan terms before the plan restructured its benefits to encourage participants to take advantage of copay assistance. The copay is low ("$50"), the participant has not enrolled in copay assistance ("[t]here is no copay assistance"), and the participant pays the copay. For a benefit design "with SaveonSP," the copay is high ("$800"), the participant has enrolled in copay assistance that covers the copay payment ("[c]o-pay assistance helps offset the cost of specialty medications"), and the participant pays zero. The flier does not state or imply that a participant cannot enroll in copay assistance without SaveOn's involvement, and so does not support JJHCS's claim. *See Canfield Sci., Inc.*, 2017 WL 2304644, at *4 & n.5.

Failure to Inform of Breach: JJHCS alleges that SaveOn fails to tell plan participants "that by enrolling in the SaveOnSP Program, they are breaching their agreement with JJHCS." Compl. ¶ 113. The participants do not breach their contracts. Section III.C, *infra*. Even if they did, "Section 349 does not grant a private remedy for every improper or illegal business practice, but only for conduct that tends to deceive consumers. It cannot fairly be understood to mean that everyone who acts unlawfully, and does not admit the transgression, is being 'deceptive.'" *Schlessinger v.*

20

*Valspar Corp.*, 21 N.Y.3d 166, 173 (2013) (citation omitted). JJHCS's theory that SaveOn impliedly represented that participants would not violate their contracts with JJHCS is "too attenuated to be plausible." *Id.* (affirming dismissal of GBL § 349 claim that by placing an unlawful provision in a contract, defendant impliedly represented it was valid).

    <u>Failure to Disclose Fees</u>: Finally, JJHCS alleges that SaveOn failed to tell participants "that [it] charge[s] a fee of at least 25% of the patient assistance funds extracted from JJHCS." Compl. ¶ 113. But JJHCS does not allege that SaveOn made any affirmative representations about its fees, or had a duty to disclose them. *See Milich v. State Farm Fire & Cas. Co.*, 2012 WL 4490531, at *9 (E.D.N.Y. Sept. 28, 2012) (distinguishing viable omission-based claims, where defendant had "an affirmative obligation" to disclose information, from unviable claims where defendant had no such obligation).[13]

    JJHCS also does not allege that SaveOn's fees are material. Plaintiffs may establish a duty where "the business 'alone possesses material information' and fails to provide it." *Feliciano v. Gen. Motors LLC*, 2016 WL 9344120, at *9 (S.D.N.Y. Mar. 31, 2016) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)). Information is material if "a reasonable person would give significant weight to it in deciding whether to enter into the relevant transaction[.]" Restatement (Third) of Torts: Liab. for Econ. Harm § 9 cmt. d (Am. L. Inst. 2020). JJHCS does not allege that any plan participant would have considered SaveOn's fees to be important in deciding whether to receive their specialty medications for free, and so does not allege that SaveOn's decision to not disclose its fees was misleading. *See Maurizio v. Goldsmith*,

---

[13] *See also* Restatement (Third) of Torts: Liab. for Econ. Harm § 5 cmt. e (Am. L. Inst. 2020) ("A failure to speak, by itself, does not support liability for [misrepresentations]" where the defendant did not "choose to speak and … make[] an omission that misleads the plaintiff").

230 F.3d 518, 522 (2d Cir. 2000) (affirming dismissal of GBL § 349 claim that defendant represented herself as the sole author of "The First Wives' Club," as plaintiff did not allege that she intended to deceive consumers in a material way).

### D.    SaveOn Did Not Harm the Public

JJHCS fails to sufficiently allege public harm. "[S]ection 349 is 'directed at wrongs against the consuming public' and … plaintiffs must demonstrate that the complained-of acts or practices 'have a broader impact on consumers at large.'" *Smokes-Spirits*, 12 N.Y.3d at 623 (quoting *Oswego*, 85 N.Y.2d at 24). A non-consumer plaintiff like JJHCS fails to state a cause of action under GBL § 349 if "the gravamen of the complaint is not consumer injury or harm to the public interest but, rather, harm to plaintiff's business." *Ideal You Weight Loss Ctr., LLC v. Zillioux*, 174 A.D.3d 1473, 1475 (N.Y. App. Div. 2019); *see also KS Trade LLC v. Int'l Gemological Inst., Inc.*, 190 A.D.3d 556, 557 (N.Y. App. Div. 2021) (citing *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264-65 (2d Cir. 1995)).

Public harms typically are those that threaten the health or safety of the public at large. *See, e.g.*, *Securitron*, 65 F.3d at 264-65 (holding plaintiff adequately showed harm to public interest, in part because defendants "gave false information ... [to] a regulatory agency primarily concerned with the safety of the public"). Because deception itself is not a cognizable injury, *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 56 (1999), the "mere fact that a consumer was deceived" is not enough, *Moshik Nadav Typography LLC v. Banana Republic, LLC*, 2021 WL 2403724, at *4 (S.D.N.Y. June 10, 2021). JJHCS's allegations of public harm flunk this test.

<u>Stress and Confusion</u>: JJHCS alleges that SaveOn caused the public "undue stress and confusion through acts such as engineering false denials of coverage." Compl. ¶ 114. Even were there false denials (there were not, Section II.C, *supra*), emotional injuries are cognizable under GBL § 349 only if the "emotional harm … flows directly from the defendants' violative conduct, and

not the risk of a speculative future event." *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 708 (S.D.N.Y. 2019).[14] "[F]ear of an uncertain future occurrence," however, "is [not] itself sufficient to satisfy the actual injury requirement." *Michelo*, 419 F. Supp. 3d at 708.

JJHCS does not sufficiently allege that SaveOn caused the public undue stress or confusion. It asserts that SaveOn's "complicated enrollment process … can create unnecessary confusion for individuals," Compl. ¶ 88, citing a single participant's story in support. *Id.* (citing Ex. 9 (SaveonSP's Copay Maximizer Failed Me: A Patient's Perspective)). That participant states: "I received a frantic alert *from my drug manufacturer* that all of the money allotted [for] me through its co-pay assistance program was gone—due to a copay maximizer program called SaveonSP." Ex. 9 at 2 (emphasis added). While she feared that she might not keep getting her drug, she kept getting it, for free: "After multiple calls, SaveOnSP has assured me that despite all this, I will still not pay a dime out of pocket and will receive my shipment without a hitch. Apparently, it will now bill my health plan directly for my prescriptions." *Id.* at 3. JJHCS's sole example does not support its GBL § 349 claim; any stress was caused by a "drug manufacturer," not SaveOn. *Id.* at 2-3.

Even if JJHCS sufficiently alleged stress and confusion to this one participant (it does not), emotional harm that is "solely the result of a perceived and speculative risk of future injury that may never occur" is not a cognizable consumer injury. *Michelo*, 419 F. Supp. 3d at 709 (quoting *Shafran v. Harley-Davidson, Inc.*, 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008)). Any partic-

---

[14] *Cf. Guzman v. Mel S. Harris & Assocs., LLC*, 2018 WL 1665252, at *12 (S.D.N.Y. Mar. 22, 2018) (recognizing an emotional injury as sufficient where plaintiff alleged that stress and confusion resulting from the deceptive conduct caused plaintiff to leave his job and have difficulty sleeping or concentrating); *Rozier v. Fin. Recovery Sys., Inc.*, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011) (same, where defendant did not dispute plaintiff's allegations that he actually suffered humiliation, anger, and fear as a result of the deceptive conduct).

ipant concern about paying for specialty drugs her plan provides for free is speculation. *Id.* (disallowing claim based on plaintiff's speculation her wages would be garnished). Finally, "the complained-of acts or practices [must] have a broader impact on consumers at large," *Smokes-Spirits*, 12 N.Y.3d at 623 (internal quotations omitted), and JJHCS fails to adequately allege that this participant's experience shows broad public confusion. *See Paul Rudolph Found. v. Paul Rudolph Heritage Found.*, 2021 WL 4482608, at *6 (S.D.N.Y. Sept. 30, 2021) (dismissing claim based on bare allegations defendant's social media activities confused the public).

Viability of Copay Assistance: JJHCS also alleges that SaveOn "jeopardiz[es] the viability of patient assistance programs like CarePath by making them prohibitively expensive." Compl. ¶ 114. But SaveOn-advised plans simply use JJHCS's budgeted copay assistance funds; JJHCS does not explain how it is "prohibitively expensive" for it to spend money that it budgeted. If JJHCS wants to spend less, it can cut its budget, as it already has for STELARA and TREMFYA for patients on plans that claim to reduce out-of-pocket costs, slashing support from $20,000 to $6,000. Exs. 4, 5; *see also* Compl. ¶ 102. JJHCS says it does not know when plans extract CarePath funds, Compl. ¶ 101, but it does not explain why this would stop it from reducing its budget.

JJHCS also says it is worried that if it cuts its budget, then participants enrolled in CarePath might "suffer from reduced cost support and consequently be unable to afford their therapy." *Id.* But the ESI Presentation states, repeatedly, that under SaveOn-advised plans, participants enrolled in copay assistance programs who consent to monitoring always pay nothing for their specialty drugs: "***The member always pays zero***. As long as they're enrolled and as long as the drug is in the program, [even] if they've maxed out the copay assistance…." Ex. 1 at 35:25-36:7 (emphasis added); *see also id.* at 36:18-24 ("[T]he letter that includes the drug list and the corresponding copays … ma[kes] clear that as long as they participate in the program, they pay zero."). These

24

statements control over JJHCS's mischaracterizations and do not support JJHCS's allegations. *Canfield Sci., Inc.*, 2017 WL 2304644, at *4 & n.5.

    <u>Cost of Other Healthcare</u>: JJHCS alleges that SaveOn "mak[es] other patient healthcare needs more expensive by not counting any of the funds spent on patients' medication towards their ACA maximum or deductible." Compl. ¶ 114. But JJHCS does not allege that SaveOn's conduct leads directly to these increased costs; it concedes that plan sponsors, not SaveOn, set plan terms exempting assistance payments from out-of-pocket maximums. In any event, GBL § 349 is concerned only with "potential dangers to public health or safety," and paying amounts required by healthcare plans to receive healthcare benefits is not such a public harm. *JJFM Corp. v. Mannino's Bagel Bakery*, 132 N.Y.S.3d 582, 592 (Sup. Ct. 2020); *see also Boule v. Hutton*, 320 F. Supp. 2d 132, 137-38 (S.D.N.Y. 2004) ("Courts generally find that [non-consumer plaintiffs] state a claim under § 349 only when they allege some harm to the public health or safety.").

## III.    JJHCS Fails to State Claims for Tortious Interference

    JJHCS does not plead viable claims for tortious interference with contract. JJHCS must allege: (1) the existence of a valid contract between JJHCS and patients; (2) SaveOn's knowledge of the contract; (3) SaveOn's intentional procurement of patients' breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom. *Nostrame v. Santiago*, 213 N.J. 109, 122 (2013). JJHCS fails to do so.

### A.    SaveOn Did Not Tortiously Interfere with CarePath's Contracts by Encouraging Plan Participants to Sign Up for CarePath

    JJHCS does not have a viable tortious interference theory. To state a claim for tortious interference, JJHCS must show that it had a "protectable right" with which SaveOn interfered. *Printing Mart-Morristown v. Sharp Elecs. Corp.,* 116 N.J. 739, 751 (1989). That protected interest can be either an existing or prospective contractual relationship. *Id.* Either way, JJHCS must plead

that, but for SaveOn's interference, it would have received the benefit of that relationship. *Cargill Glob. Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 577 (D.N.J. 2010) ("[Plaintiff] must show that there is a reasonable probability that, but for [defendant's] actions, [plaintiff] would have recovered the full benefit of the contract.").

JJHCS cannot allege that, at the time SaveOn allegedly induced patients to enroll in Care-Path, it had a protected interest with plan participants. It alleges: "SaveOnSP knowingly and wrongfully induces patients to agree to CarePath's terms and conditions, thereby intentionally causing those patients to breach their contract with JJHCS every time they use CarePath funds while enrolled in the SaveOnSP Program." Compl. ¶ 109. But SaveOn cannot interfere with contracts by inducing participants to enter them. Any protected interest created by those contracts came into being *after* SaveOn induced the participants to enroll; SaveOn's allegedly tortious conduct in inducing participants to enroll occurred *before* any protected interest existed. Because JJHCS fails to allege the existence of a valid contract at the time of SaveOn's conduct, its tortious interference claim must be dismissed in full. *Cf. Cargill*, 706 F. Supp. 2d at 577.

### B.   SaveOn Could Not Have Induced Plan Participants Already Enrolled in CarePath to Enroll in CarePath

Even if JJHCS's theory of tortious interference were viable (it is not), SaveOn could not have interfered with JJHCS's contracts with participants who enrolled in CarePath before SaveOn communicated with them. To tortiously interfere with a contract, a defendant must "induc[e] or otherwise caus[e] the third person not to perform the contract[.]" *Nostrame*, 213 N.J. at 122 (quoting Restatement (Second) of Torts § 766 (Am. L. Inst. 1965)). JJHCS alleges that SaveOn tortiously interfered with its contracts by inducing plan participants to sign up for CarePath. Compl. ¶ 109. To the extent that JJHCS brings claims concerning participants who enrolled in CarePath

before SaveOnSP communicated with them, they must be dismissed, as JJHCS does not and could not allege that SaveOn induced them to agree to terms and conditions they had already agreed to.

### C.   Plan Participants Did Not Breach the Contractual Ban On "Other Offer[s]"

JJHCS also fails to allege that SaveOn induced the great majority of plan participants that it communicated with into breaching their contracts with JJHCS. JJHCS alleges that SaveOn induced plan participants to enroll in CarePath knowing that the so-called "SaveOnSP Program" breached a term in CarePath's contracts: patients cannot use CarePath "with any other coupon, discount, prescription savings card, free trial, or other offer." Ex. 8 (DARZALEX Terms and Conditions); Compl. ¶¶ 18-19, 109. JJHCS alleges that the "SaveOnSP Program" is such an offer. *Id.* ¶ 19. But JJHCS acknowledges that "SaveOnSP Program" consists of two things: (1) advising employer plan sponsors to set plan terms that maximize copay assistance; and (2) helping to implement such plan designs by communicating with plan participants. Neither is an "offer."

### 1.   Plans' Benefit Terms Are Not An "Offer"

Plans' benefit designs are not "offer[s]" under the CarePath contract as a matter of the contract's plain language. Contracting parties presumptively use terms consistently and use different terms to mean different things. *See Int'l Fid. Ins. Co. v. Cnty. of Rockland*, 98 F. Supp. 2d 400, 412 (S.D.N.Y. 2000).[15] JJHCS used the term "health plan" separately from the term "offer" in its contract, requiring CarePath enrollees to "follow any health plan requirements" and prohibiting them from seeking payment for value received from CarePath from "any health plan." Ex. 8. The word "offer" thus must mean something other than benefits provided by a health plan.

---

[15] The CarePath Terms of Service contain a New York choice of law provision. *Terms of Service*, Janssen CarePath, https://www.janssencarepath.com/legal-notice (last accessed July 14, 2022). SaveOn thus cites New York law for legal propositions related to the interpretation of the CarePath terms and conditions.

This is reinforced by the contract's structure. It sets up CarePath to work *alongside* health care plans. CarePath is "only for people using commercial or private health insurance" and provides "savings on [patients'] out-of-pocket medication costs," including "co-pay, co-insurance, or deductible." Ex. 8; *see also* Exs. 4, 5. The contract presumes that plans will determine the participant's "out-of-pocket medication costs," on which CarePath then offers "savings." Reading "offer" to include the plans' initial definition of participants' out-of-pocket costs would make every plan incompatible with CarePath, impermissibly rendering the contract meaningless. *U.S. Bank Nat'l Ass'n as Tr. for GSAMP Tr. 2007-HE1 v. Goldman Sachs Mortg. Co., L.P.*, 2020 WL 6873413, at *6 (S.D.N.Y. Nov. 23, 2020) (rejecting interpretation of contract that would defeat stated purpose of contract). JJHCS may not like some plan terms, but they are not an "offer."[16]

### 2.     SaveOn's Services Are Not An "Offer"

The services that SaveOn provides plan sponsors are also not an "offer" under JJHCS's contracts. The contracts say that plan participants cannot use CarePath "with any other coupon, discount, prescription savings card, free trial, or other offer." *E.g.*, Ex. 8. Each term preceding "other offer" refers to a monetary benefit that reduces the price of participants' drugs;[17] under basic

---

[16] JJHCS cites language in its complaint which describes a plan as "offer[ing] a program called SaveOnSP." Compl. ¶ 19. This language proves the point: any benefits provided to patients are provided *by the plans themselves*, and therefore cannot be an "offer" under CarePath's terms and conditions.

[17] A ***coupon*** is a "certificate that entitles the bearer to certain benefits, such as a cash refund." Coupon, *American Heritage Dictionary* (5th ed. 2012). A ***discount*** is a reduction from the full amount of a price or value. Discount, *American Heritage Dictionary* (5th ed. 2012); *see also Preston L. Firm, L.L.C. v. Mariner Health Care Mgmt. Co.*, 622 F.3d 384, 392 (5th Cir. 2010) (the prevailing meaning of "discount" is "[a] reduction from the full or standard amount of a price or debt"). A ***prescription savings card*** is designed to provide lower drug costs to patients paying out of pocket for their medications. *See, e.g., How Do Prescription Discount Cards Work?*, ScriptSave WellRx, https://www.wellrx.com/how-prescription-discount-cards-work/ (last visited July 12, 2022). A ***free trial*** is a temporary program that lets a customer try a program or service for free for

rules of contract interpretation, "offer" means the same. *See, e.g.*, *Team Mktg. USA Corp. v. Power Pact, LLC*, 41 A.D.3d 939, 942-43 (N.Y. App. Div. 2007) (force majeure clause absolving defendant of liability if plaintiff was "rendered unable to timely perform any of its obligations…for any reason" was limited as a matter of law by principle of ejusdem generis and only applied in situations similar to those enumerated in the contract).[18] SaveOn does not offer to pay any monetary benefit to any plan participant. It advises plan participants of their plan benefits, helps them take advantage of those benefits by signing up for copay assistance and consenting to monitoring, and manages the participants' experience once they are enrolled in the manufacturer's copay assistance program. *See, e.g.*, Ex. 1 at 11:5-13, 14:15-15:15. The economic benefit that a plan participant enjoys from enrolling in CarePath and consenting to monitoring is purely a function of the plan's benefit design, not an offer to pay (or payment) by SaveOn. Because JJHCS has not sufficiently alleged that the "SaveOnSP Program" is an "offer" under JJHCS's contracts, its tortious interference claims based on the breach of this term should be dismissed.[19]

## CONCLUSION

The Court should grant SaveOn's motion and dismiss JJHCS's claims with prejudice.

---

a short period of time. Free trial, *Cambridge Dictionary*, https://dictionary.cambridge.org/dictionary/english/free-trial (last accessed June 9, 2022).

[18] *See also Miller Tabak + Co., LLC v. Senetek PLC*, 118 A.D.3d 520, 521-22 (N.Y. App. Div. 2014) (general term "other disposition" in contract provision referring to "sale, transfer or other disposition" of assets limited as a matter of law by the preceding words "sale" and "transfer"); *MUFG Union Bank, N.A. v. Axos Bank*, 196 A.D.3d 442, 444 (N.Y. App. Div. 2021) (under principle of ejusdem generis, expression "willful acts" in limitation-of-liability provision referring to special damages for breaches caused willfully or by gross negligence interpreted to refer to conduct "similar in nature to the … 'gross negligence' with which it was joined") (alterations omitted).

[19] JJHCS recently changed the terms and conditions for two drugs—STELARA and TREMFYA— to exclude from CarePath patients whose plans "claim to eliminate their out-of-pocket costs." Exs. 4, 5. JJHCS cannot maintain claims for plan participants who used one of those drugs and whom SaveOn induced to sign up for CarePath before JJHCS introduced its new contract language.

Dated:   Newark, NJ                          Respectfully submitted,
         July 15, 2022


                                    By:   /s/ E. Evans Wohlforth, Jr.
                                          _____
                                          E. Evans Wohlforth, Jr.
                                          Julia E. Palermo
                                          GIBBONS P.C.
                                          One Gateway Center
                                          Newark, NJ 07102-5310
                                          ewohlforth@gibbonslaw.com
                                          jpalermo@gibbonslaw.com

                                          David Elsberg
                                          Andrew R. Dunlap
                                          Meredith Nelson
                                          SELENDY GAY ELSBERG PLLC
                                          1290 Avenue of the Americas
                                          New York, NY 10104
                                          Tel: 212-390-9000
                                          delsberg@selendygay.com
                                          adunlap@selendygay.com
                                          mnelson@selendygay.com

                                          *Attorneys for Defendant Save On SP, LLC*