UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., | : | Civil Action No. 22-2632 (JMV) (CW) |
| | : | Honorable John Michael Vazquez |
| Plaintiff, | | United States District Judge |
| | : | |
| v. | | Motion Returnable: |
| | : | September 6, 2022 |
| SAVE ON SP LLC, | : | Oral Argument Requested |
| Defendant. | : | (Electronically Filed Document) |

---

**PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S BRIEF IN OPPOSITION TO SAVE ON SP LLC'S MOTION TO DISMISS**

---

PATTERSON BELKNAP WEBB
  & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000
aamangi@pbwt.com
hsandick@pbwt.com
globiondo@pbwt.com

SILLS CUMMIS & GROSS P.C.
Jeffrey J. Greenbaum
Katherine M. Lieb
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000
jgreenbaum@sillscummis.com
klieb@sillscummis.com

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................iv

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ...............................................................................4

      A.    Payers Impose Higher Out-of-Pocket Costs on Patients ............4

      B.    JJHCS Provides Essential Cost Support to Patients ..................5

      C.    The SaveOnSP Program Targets Janssen Drugs, Inflates
           Patients' Copay Obligations, and Seizes JJHCS's Patient
           Assistance....................................................................................7

      D.    The SaveOnSP Program Harms Patients and JJHCS ................8

ARGUMENT ...............................................................................................10

I.      JJHCS'S CLAIMS ARE NOT PREEMPTED BY ERISA...........................10

      A.    JJHCS's Claims Do Not Have an Impermissible
           "Connection with" ERISA Plans ...............................................12

           1.    JJHCS and SaveOnSP Are Non-ERISA Entities
                 Whose Relationship Is Not Governed by ERISA ..........12

           2.    Granting Relief to JJHCS Will Not Interfere with
                 Plan Administration by Forcing ERISA Plans to
                 Adopt a Particular Scheme of Substantive
                 Coverage ......................................................................14

           3.    Preemption Here Would Undermine ERISA's
                 Purpose ........................................................................20

      B.    JJHCS's Claims Do Not Have an Impermissible
           "Reference to" ERISA Plans ....................................................21

II.     JJHCS HAS STATED A CLAIM FOR DECEPTIVE TRADE
        PRACTICES UNDER NEW YORK GBL SECTION 349 ........................23

        A.     JJHCS Has Plausibly Alleged that SaveOnSP
               Deceives Patients .......................................................................24

        B.     JJHCS Has Plausibly Alleged Direct Injury ...........................29

        C.     JJHCS Has Plausibly Alleged Public Harm ............................32

III.    JJHCS HAS STATED A CLAIM FOR TORTIOUS
        INTERFERENCE WITH CONTRACT ........................................................35

        A.     SaveOnSP Tortiously Interferes with JJHCS's Patient
               Contracts ...................................................................................36

        B.     SaveOnSP Makes an Offer to Patients that, Once
               Accepted, Violates the Prohibition Against "Other
               Offers"........................................................................................37

CONCLUSION .........................................................................................................40

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*1975 Salaried Ret. Plan. v. Nobers*,
    968 F.2d 401 (3d Cir. 1992) ...............................................................23

*A. & M. Wholesale Hardware Co. v. Circor Instrumentation Techs.*,
    2014 WL 714938 (D.N.J. Feb. 24, 2014) ...........................................38

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
    2015 WL 12778048 (C.D. Cal. Oct. 23, 2015) ............................18, 22

*Blue Cross & Blue Shield of N.J., Inc. v. Phillip Morris USA Inc.*,
    818 N.E.2d 1140 (N.Y. 2004).............................................................29

*Blue Cross of Cal. Inc. v. Insys Therapeutics Inc.*,
    390 F. Supp. 3d 996 (D. Ariz. 2019) ...........................................*passim*

*Boule v. Hutton*,
    328 F.3d 84 (2d Cir. 2003) .................................................................32

*Campo v. Oxford Health Plans, Inc.*,
    2007 WL 1827220 (D.N.J. June 26, 2007).........................................19

*Casper Sleep, Inc. v. Mitcham*,
    204 F. Supp. 3d 632 (S.D.N.Y. 2016) ..........................................28, 33

*Chiarelli v. Nissan North Am., Inc.*,
    2015 WL 5686507 (E.D.N.Y. Sep. 25, 2015) ....................................28

*City of New York v. Smokes–Spirits.com, Inc.*,
    911 N.E.2d 834 (N.Y. 2009)...............................................................29

*Cohen v. Horizon Blue Cross Blue Shield of N.J.*,
    2017 WL 1206005 (D.N.J. Mar. 31, 2017) ........................................19

*Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr.*,
    2015 WL 4394408 (D. Md. July 15, 2015) ........................................18

*Cooper v. Anheuser-Busch, LLC,*
    553 F. Supp. 3d 83 (S.D.N.Y. 2021) ...................................................27

*Cruz v. FXDirectDealer LLC,*
    720 F.3d 115 (2d Cir. 2013) .............................................................24

*De Buono v. Nysa-Ila Med. & Clinical Servs. Fund,*
    520 U.S. 806 (1997)........................................................................11

*Dello Russo v. Nagel,*
    358 N.J. Super. 254 (App. Div. 2003) ...............................................35

*Doe v. Princeton Univ.,*
    30 F.4th 335 (3d Cir. 2022) .........................................................5, 26

*Emergency Servs. of Okla., PC v. Aetna Health, Inc.,*
    556 F. Supp. 3d 1259 (W.D. Okla. 2021)....................................18, 22

*Firestone Tire & Rubber Co. v. Bruch,*
    489 U.S. 101 (1989)........................................................................12

*Gobeille v. Liberty Mut. Ins. Co.,*
    577 U.S. 312 (2016)..................................................................11, 19

*Guzman v. Mel S. Harris & Assocs., LLC,*
    2018 WL 1665252 (S.D.N.Y. Mar. 22, 2018)....................................34

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP*
    *v. Matthew Bender & Co.,*
    171 N.E.3d 1192 (N.Y. 2021)..........................................................32

*Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice,*
    997 F.3d 848 (9th Cir. 2021) ...........................................................11

*HSBC Bank USA, N.A. v. Lien Thi Ngo,*
    197 A.D.3d 1102 (2d Dep't 2021).....................................................28

*JJFM Corp. v. Mannino's Bagel Bakery,*
    70 Misc. 3d 171 (Sup. Ct. 2020).......................................................33

*In re JUUL Labs, Inc.,*
    497 F. Supp. 3d 552 (N.D. Cal. 2020)...............................................31

*Karlin v. IVF Am.*,
    712 N.E.2d 662 (N.Y. 1999) ..............................................................................23

*Kuzian v. Electrolux Home Prods.*,
    937 F. Supp. 2d 599 (D.N.J. 2013) ...................................................................28

*Liebowitz v. Richman*,
    2022 WL 1200805 (D.N.J. Apr. 22, 2022) ........................................................39

*In re Lupron Mktg. & Sales Practices Litig.*,
    295 F. Supp. 2d 148 (D. Mass. 2003) ...............................................................13

*M.V.B. Collision, Inc. v. Allstate Ins. Co.*,
    728 F. Supp. 2d 205 (E.D.N.Y. 2010) ..............................................................31

*Maurizio v. Goldsmith*,
    230 F.3d 518 (2d Cir. 2000) .............................................................................28

*Menkes v. Prudential Ins. Co.*,
    762 F.3d 285 (3d Cir. 2014) .............................................................................19

*Mercedes-Benz USA, LLC v. ATX Grp., Inc.*,
    2009 WL 2255727 (D.N.J. July 27, 2009) .......................................................26

*Merit Constr. Alliance v. City of Quincy*,
    759 F.3d 122 (1st Cir. 2014) .............................................................................19

*Michelo v. National Collegiate Student Loan Trust 2007-2*,
    419 F. Supp. 3d 668 (S.D.N.Y. 2019) ..............................................................34

*Milich v. State Farm Fire & Cas. Co.*,
    2012 WL 4490531 (E.D.N.Y. Sept. 28, 2012) .................................................28

*N. State Autobahn, Inc. v. Progressive Ins. Group Co.*,
    102 A.D.3d 5 (2d Dep't 2012) ....................................................................30, 33

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers*,
    514 U.S. 645 (1995) ....................................................................................16, 30

*In re Opioid Litig.*,
    2018 WL 3115100 (N.Y. Sup. Ct. June 18, 2018) ......................................29, 31

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  647 N.E.2d 741 (N.Y. 1995)....................................................................23, 27, 32

*Pesacov v. Unum Life Ins. Co. of Am.*,
  463 F. Supp. 3d 571 (E.D. Pa. 2020).......................................................39

*Pharm. Care Mgmt. Ass'n v. D.C.*,
  613 F.3d 179 (D.C. Cir. 2010).................................................................20

*Pharm. Care Mgmt. Ass'n v. Mulready*,
  2022 WL 1438659 (W.D. Okla. Apr. 4, 2022)........................................17

*Pharm. Care Mgmt. Ass'n v. Wehbi*,
  18 F.4th 956 (8th Cir. 2021) ........................................................10, 17, 21

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  263 F. Supp. 2d 172 (D. Mass. 2003)......................................................13

*Pharm. Research & Mfrs. of Am. v. Becerra*,
  2022 WL 1551924 (D.D.C. May 17, 2022)............................................6, 7

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*,
  967 F.3d 218 (3d Cir. 2020) ...........................................................*passim*

*Plavin v. Group Health Inc.*,
  146 N.E.3d 1164 (N.Y. 2020).................................................................33

*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013) ....................................................27

*Rozier v. Fin. Recovery Sys., Inc.*,
  2011 WL 2295116 (E.D.N.Y. June 7, 2011)..........................................34

*Rutledge v. Pharmaceutical Care Management Association*,
  141 S. Ct. 474 (2020)......................................................................*passim*

*Sarasota Cty. Pub. Hosp. Bd. v. Blue Cross & Blue Shield of Fla.*,
  511 F. Supp. 3d 1240 (M.D. Fla. 2021)..................................................20

*Score Bd., Inc. v. Upper Deck Co.*,
  959 F. Supp. 234 (D.N.J. 1997)..............................................................38

*Shaaya v. Jaguar Land Rover N. Am.*,
   2022 WL 2341599 (D.N.J. June 29, 2022) ........................................................27

*Shanus v. Robert Edward Auctions, LLC*,
   2012 WL 1044316 (D.N.J. Mar. 28, 2012) .......................................................25

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983) ...................................................................................18, 19

*Spirit Locker, Inc. v. EVO Direct, LLC*,
   696 F. Supp. 2d 296 (E.D.N.Y. 2010) ..............................................................32

*Venturino v. First Unum Life Ins. Co.*,
   724 F. Supp. 2d 429 (S.D.N.Y. 2010) ......................................................2, 7, 18

*Wilner v. Allstate Ins. Co.*,
   71 A.D.3d 155 (2d Dep't 2010) ........................................................................23


**Statutes**

29 U.S.C. § 1002(1) .............................................................................................21

29 U.S.C. § 1002(2)(A) ........................................................................................21

29 U.S.C. § 1144(a) ......................................................................................11, 19

New York General Business Law § 349 ........................................................*passim*


**Other Authorities**

45 C.F.R. § 156.130(a) ...........................................................................................5

*Offer*, Merriam-Webster ......................................................................................39

# PRELIMINARY STATEMENT

Instead of filing a proper motion to dismiss, SaveOnSP[1] has presented the Court with a diatribe predicated on disputed and baseless assertions that contradict the Complaint.  For example, in the very first paragraph of its brief, SaveOnSP claims that JJHCS "does not really pay" up to $20,000 per year of copay assistance and that Janssen "keeps hiking the prices" on lifesaving drugs "to reap out-sized profits."  These claims are false and expressly contrary to JJHCS's pleading.  *See* Compl. ¶¶ 47, 80, 99.  And so it continues throughout SaveOnSP's motion.  At the appropriate time, a jury will consider SaveOnSP's challenges to the pleaded allegations and whether they somehow justify its misappropriation of patient assistance funds.  But on a Rule 12(b)(6) motion, SaveOnSP's disputed facts cannot be considered, much less credited.  For now, all that SaveOnSP has established is that discovery is urgently needed.

Just as fatal to SaveOnSP's motion as the facts it disputes are the facts it concedes.  SaveOnSP admits core aspects of its illegal scheme, most significantly its malicious intent to divert ***patient*** assistance to ***payers***.  *See* SaveOnSP Br. ("Br.") 1–2, 6–7 (SaveOnSP conceding that it "advises plan sponsors how to structure plan benefits to take full advantage of copay assistance programs like CarePath" that are meant to help patients).  And while SaveOnSP seeks to

---

[1] All defined terms have the meaning ascribed to them in the Complaint.

downplay its role by pointing the finger at its client health plans, it also admits its own patient-directed conduct, including "communicating with plan participants," "helping plan participants enroll in" CarePath, and even "monitor[ing]" patients' CarePath accounts (making it easier to pilfer inflated amounts of patient copay assistance). *Id.* at 3, 6, 10.

In the end, SaveOnSP's motion provides no basis for dismissing JJHCS's claims. ***First***, ERISA does not preempt this suit. ERISA preemption ensures that disputes between employers and employees concerning employer-provided health coverage are resolved within the ERISA framework. It does ***not*** address claims brought by a drug manufacturer (or an affiliate thereof, such as JJHCS) against an intermediary such as SaveOnSP. SaveOnSP cites no authority to the contrary, and none exists. Rather, under the prevailing Third Circuit precedent, neither JJHCS nor SaveOnSP are "traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 235 (3d Cir. 2020). Remarkably, while leading with a preemption argument, SaveOnSP fails to mention this controlling case.

Moreover, even if both JJHCS and SaveOnSP were somehow found to be within ERISA's scope, ERISA does not preempt the claims here. In a case SaveOnSP buries in a footnote, *Rutledge v. Pharmaceutical Care Management Association*, a unanimous Supreme Court held less than two years ago that ERISA

does not preempt claims that "merely *increase costs* or alter incentives for ERISA plans *without forcing plans to adopt any particular scheme of substantive coverage*." 141 S. Ct. 474, 480 (2020).[2] The SaveOnSP Program shifts from plans to manufacturers a portion of the burden of paying for certain drugs. In other words, SaveOnSP's scheme relates to the cost of covering certain drugs and not the coverage itself, so JJHCS's claims concerning that scheme cannot be preempted.

*Rutledge* also disposes of SaveOnSP's alternative "reference to" preemption theory, because the Supreme Court clarified that a state law impermissibly "refers to" ERISA *only* "if it acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation." Here, JJHCS brings claims under laws of general applicability, and SaveOnSP admits that its conduct extends to both ERISA and non-ERISA plans alike. Preemption simply does not apply to this dispute.

**Second**, SaveOnSP mostly admits the facts underpinning JJHCS's deceptive trade practices claim. But SaveOnSP contends that certain patients were not misled by its deceptive acts, and asks the Court to draw factual inferences in its favor from the damning materials cited in the Complaint. Both points raise factual questions that cannot be resolved now. SaveOnSP also argues that JJHCS has not adequately pled injury to itself or harm to the public. But the Complaint details

---

[2] Unless otherwise stated, all emphasis in quotations has been supplied by JJHCS, and all citations in quoted material have been omitted.

how SaveOnSP's misconduct has caused over $100 million in direct injury to JJHCS since 2021, as well as financial and emotional harm to patients. These allegations satisfy every element of JJHCS's claim.

***Finally***, SaveOnSP's judicial admissions also establish that it is not entitled to dismissal of JJHCS's tortious interference claim. SaveOnSP concedes that its program makes patients an "offer" of $0 copays, which purports to excuse patients from paying "any amounts [they] would otherwise owe for their drugs." Br. 2. A patient's acceptance of that "offer" violates JJHCS's CarePath terms, which do not allow JJHCS's support to be combined with any "other offer." These straightforward allegations make out a prima facie case of tortious interference.

SaveOnSP's motion should be denied and this case should promptly proceed through discovery and to trial.

## STATEMENT OF FACTS

### A.    Payers Impose Higher Out-of-Pocket Costs on Patients

In recent years, commercial insurers have begun shifting more and more costs onto patients, making it harder for them to afford necessary medication. *See* Compl. ¶¶ 36, 40, 44. In particular, payers and pharmacy benefit managers ("PBMs") are imposing higher deductibles, copays, and co-insurance. *See id.* ¶ 37. When patients are saddled with these higher costs, many reduce or abandon treatment altogether. *See id.* ¶¶ 41–42. This is why the Affordable Care Act (the

"ACA") imposes annual limits on the out-of-pocket costs payers can require patients to pay for "essential health benefits," including many prescription drugs. *See id.* ¶ 43; 45 C.F.R. § 156.130(a).

## B.    JJHCS Provides Essential Cost Support to Patients

JJHCS's CarePath program provides cost support and other services to patients who have been prescribed medications researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen Biotech, Inc. and its affiliates (collectively, "Janssen"). Through CarePath, JJHCS has helped millions of patients afford their medications for cancer, autoimmune disease, and other conditions.[3]  Compl. ¶¶ 6, 32.  For many drugs, JJHCS offers each patient up to $20,000 in annual assistance. *Id.* ¶ 47.

SaveOnSP misleadingly cites an industry-wide study of the "retail prices" that PBMs charge health plans for drugs—***not*** what Janssen receives for its drugs net of rebates Janssen pays those PBMs.  That study may be relevant to whether

---

[3]  SaveOnSP disputes this well-pled allegation by citing its own representative's unfounded accusations about the purpose of copay assistance. *See* Br. 5. Those accusations appear in a presentation that the Complaint cited for its admissions about SaveOnSP's unlawful scheme.  That does ***not*** mean that the Court should credit false or disputed claims made by SaveOnSP in the same presentation. *See, e.g.*, *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) ("When the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail.").  And ultimately, SaveOnSP concedes that many of Janssen's innovative therapies have "few or no cheaper alternatives," Br. 1, giving the lie to its accusation that CarePath was "designed to stop patients … from switching to a competitor's drug," *id.* at 5.

the PBMs (with whom SaveOnSP partners) are appropriating the rebates Janssen pays rather than passing them onto health plans, but it has no relevance to Janssen's own pricing. The truth as set out in JJHCS's pleading is that the prices for Janssen's drugs in the aggregate have steadily decreased over time, even as JJHCS has also dedicated separate funds to helping patients. Compl. ¶ 80.

Notably, however, those CarePath funds are meant to help patients—**not** to subsidize payers. JJHCS's patient assistance helps patients afford their out-of-pocket costs for Janssen medications and meet their annual deductible and out-of-pocket maximums, thereby lowering their overall healthcare costs. This patient support has become critical in the face of the insurance industry's ever-increasing cost-share obligations. *See* Compl. ¶ 39; *Pharm. Research & Mfrs. of Am. v. Becerra*, 2022 WL 1551924, at *2 (D.D.C. May 17, 2022). Payers and PBMs, meanwhile, receive billions of dollars in drug rebates, discounts, and fees from Janssen every year. Compl. ¶ 80.

Eligibility for CarePath assistance is governed by CarePath's terms and conditions, which state that CarePath "may not be used with any other coupon, discount, prescription savings card, free trial, or **other offer**." Compl. ¶ 48. Crucially, patients must meet these conditions every time they use CarePath, i.e., every time they fill their prescription. *Id.*

### C.    The SaveOnSP Program Targets Janssen Drugs, Inflates Patients' Copay Obligations, and Seizes JJHCS's Patient Assistance

"Commercial health insurers have caught on" to patient assistance programs such as CarePath, and have devised schemes "to pocket for themselves at least some of the assistance" provided.  *Becerra*, 2022 WL 1551924, at *2.  The SaveOnSP Program is a particularly pernicious example.  ***First***, SaveOnSP partners with health plans and Express Scripts, Inc. (a PBM) to change the designation of Janssen's drugs—including lifesaving cancer drugs and other critical medications—from "essential health benefits" to non-essential, circumventing the ACA's out-of-pocket maximum.  Compl. ¶¶ 9, 10, 28, 43, 54. As one SaveOnSP representative admitted, not only is this practice dubious under the ACA, *id.* ¶¶ 53–54, 72, it is undertaken only for profit and not any legitimate medical purpose.  *See id.* ¶ 55 ("The moment we reclassify these as non-essential we get to operate outside of those rules, which removes the limitations for how high we set the copay, it removes the requirement to apply copay assistance dollars to the max out-of-pocket.  And that's what allows us to be the most lucrative[.]").

***Second***, having removed the drug from the bounds of the ACA, the SaveOnSP Program grossly inflates a patient's copay obligation for the given drug—often thousands of dollars per dose.  *Id.* ¶¶ 10, 92–97.

***Third***, SaveOnSP targets patients who take the drug, using the threat of the inflated copay to coerce them into enrolling in the SaveOnSP Program (thereby

breaching CarePath's terms and conditions). *Id.* ¶ 11.  Threatened with paying thousands of dollars for their medication, and unaware that CarePath already reduces their out-of-pocket costs to $10 or less, many patients feel compelled to enroll. *Id.* ¶¶ 14, 16.  SaveOnSP is aware that enrollment in its program violates CarePath's express terms, but nevertheless causes patients to enroll in both programs because in order to make money, it needs patients "to actively enroll in copay assistance. *That's where the savings comes from.*" *Id.* ¶ 65.

*Fourth*, SaveOnSP then works with specialty pharmacy Accredo Health Group, Inc. to bill CarePath for this inflated copay cost, which does not reflect the patient's true out-of-pocket responsibility. *Id.* ¶¶ 28, 66.  SaveOnSP does this even though it admits elsewhere that patients in the SaveOnSP Program in fact do not have any copay obligation whatsoever. *Id.* ¶ 67 ("If [a patient] participates in SaveOnSP, he won't pay anything ($0) out-of-pocket.").  SaveOnSP then charges the payer a fee equal to 25% of the "savings" achieved by inflating the copay amount to fully exhaust any available patient assistance. *Id.* ¶¶ 51, 68.  The more patient assistance SaveOnSP extracts, the more it gets paid.

### D.    The SaveOnSP Program Harms Patients and JJHCS

Through this scheme, SaveOnSP converts funds intended to help needy patients into a revenue source for itself and its partners, and then drains those funds at an accelerated pace.  Left unchecked, SaveOnSP will make it untenable for

manufacturers to continue such assistance, which will leave many patients unable to bear the increased cost-shifting imposed by payers. Compl. ¶¶ 92–99. SaveOnSP's deceptive conduct also harms consumers: patients' other healthcare needs are made more expensive (*id.* ¶ 78); patients believe that without SaveOnSP, they will be responsible for the full amount of the inflated copay (*id.* ¶ 76); and SaveOnSP does not disclose to patients that by combining both programs, patients are breaching their agreement with JJHCS and causing a year's worth of assistance to be drained in just a few prescription fills (*id.* ¶ 75).

The SaveOnSP Program violates CarePath's terms and conditions, which as noted above preclude patients from using CarePath assistance with "any other coupon, discount, prescription savings card, free trial, or other offer." Compl. ¶ 48.[4] The SaveOnSP Program is such an offer, and indeed SaveOnSP's own representatives have consistently described its program as an "offering" or something that is "offer[ed]." *Id.* ¶ 90. Despite this, SaveOnSP wrongfully induces patients to combine its own Program and CarePath. *Id.* ¶¶ 89–90. In so doing, SaveOnSP knowingly causes patients to breach their contract with JJHCS every time they use CarePath funds while enrolled in the SaveOnSP Program.

---

[4] SaveOnSP notes that JJHCS "recently changed" the terms and conditions for Stelara and Tremfya, and argues that "JJHCS cannot maintain claims" as to these drugs before this change. Br. 29 n.19. This argument is mistaken. At all relevant times, the CarePath terms and conditions included the "other offer" prohibition that SaveOnSP wrongfully induces patients to breach, *see* Compl. ¶ 18, including the new version of the terms and conditions for those specific drugs, *id.* ¶ 102.

SaveOnSP's misconduct has directly caused over $100 million in damages to JJHCS since 2021. *Id.* ¶ 5. The average CarePath funding paid per fill by patients enrolled in the SaveOnSP Program is significantly higher than for patients enrolled in CarePath alone. *Id.* ¶¶ 92–97. In some instances, SaveOnSP extracts an entire year's worth of assistance less than halfway through the year. *Id.* ¶ 98.

SaveOnSP now argues that JJHCS should avail itself of the "simple remedy" of reducing or eliminating copay assistance for patients enrolled in the SaveOnSP Program. Br. 2. But JJHCS already pled why self-help is no solution: SaveOnSP takes active measures to thwart detection, including outright deceit. *Id.* ¶ 73. SaveOnSP has even begun varying the amounts extracted from CarePath, making its handiwork harder to detect. *Id.* ¶ 101. SaveOnSP has thus made it impossible for JJHCS to solve this problem by reducing cost support on a patient-by-patient basis—doing so risks mistakenly cutting cost support, which would leave misidentified patients unable to afford their medication. *Id.*

## ARGUMENT

## I.    JJHCS'S CLAIMS ARE NOT PREEMPTED BY ERISA

SaveOnSP has not met its burden of proving that JJHCS's claims are preempted by ERISA. *See, e.g.*, *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 967 (8th Cir. 2021) (burden is on the party asserting preemption). JJHCS and SaveOnSP are both non-ERISA entities; JJHCS's claims do not concern whether

any employer health plans are obligated to cover any particular drug for employees; and resolving those claims will not force any health plan to alter the substantive scope of its coverage in any way.  The rights and obligations at stake in this case simply do not arise from ERISA, so JJHCS's claims are not preempted.

SaveOnSP's contrary arguments all turn on untenably broad interpretations of ERISA § 514(a), which preempts state laws that "***relate to*** any employee benefit plan" covered by ERISA.  29 U.S.C. § 1144(a).  The Supreme Court and Third Circuit have "reject[ed]" a "strictly literal reading" of this "relate to" language.  *De Buono v. Nysa-Ila Med. & Clinical Servs. Fund*, 520 U.S. 806, 813 (1997); *see also Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 997 F.3d 848, 858 (9th Cir. 2021) ("To have 'workable standards' and avoid near constant preemption ('a result [that] no sensible person could have intended'), the Supreme Court has therefore rejected 'uncritical literalism' in applying" ERISA's preemption clause) (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016)).  Instead, there is "a functional test for express preemption" under which a state law "relate[s] to" an employee benefit plan only if it has a "connection with" or makes a "reference to" an ERISA plan.  *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 226 (3d Cir. 2020).  As detailed below, both tests are far more exacting than SaveOnSP suggests, and neither is met here.

## A.   JJHCS's Claims Do Not Have an Impermissible "Connection with" ERISA Plans

Under the "connection with" test, the Court must decide whether JJHCS's claims (a) "directly affect the relationship among the traditional ERISA entities"; (b) "interfere with plan administration"; or (c) "undercut ERISA's stated purpose." *Plastic Surgery*, 967 F.3d at 235.   SaveOnSP fails to cite *Plastic Surgery* altogether, even though it "distill[ed]" the Third Circuit's framework for evaluating a preemption defense just two years ago.   *Id.*   And its brief barely mentions the Supreme Court's later *Rutledge* decision, which significantly narrowed the second prong of this analysis.   *See infra* Section I.A.2.   All three factors confirm that JJHCS's claims are not preempted.

### 1.   *JJHCS and SaveOnSP Are Non-ERISA Entities Whose Relationship Is Not Governed by ERISA*

JJHCS's claims cannot be preempted because both JJHCS and SaveOnSP fall far outside of ERISA's scope.   "ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans' and 'to protect contractually defined benefits.'"   *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989).   In evaluating a preemption defense, then, a court must determine whether the plaintiff's claims "directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries."   *Plastic Surgery*, 967 F.3d at 236.   In *Plastic Surgery*, the plaintiff

healthcare providers "were not … party to this bargain" and their "rights and remedies are not delineated in ERISA's substantive or remedial provisions." *Id.* Accordingly, their claims against an insurance company were not preempted; they arose from "a relationship ERISA did not intend to govern at all." *Id.*

The same reasoning applies here. JJHCS and SaveOnSP are both outside the ERISA "bargain," so ERISA does not govern their interactions. *Id.* Tellingly, SaveOnSP does not cite a single case in which state law claims brought by a drug manufacturer or affiliated entity against a non-beneficiary were found to be preempted, and JJHCS is aware of none. To the contrary, courts have repeatedly held that disputes involving drug manufacturers are ***not*** preempted by ERISA.[5]

*Blue Cross of Cal. Inc. v. Insys Therapeutics Inc.*, 390 F. Supp. 3d 996 (D. Ariz. 2019) is particularly instructive. There, an insurer sued a drug manufacturer for tortious interference with contract and unfair business practices— the claims at issue here—relating to copay vouchers. *Id.* at 1001–03. The court found no preemption because the drug manufacturer was a "non-ERISA entity" and the complaint did "not allege claims which ordinarily implicate an ERISA relationship—i.e., charging an ERISA entity with an alleged improper

---

[5] *See, e.g.*, *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 179–80 (D. Mass. 2003) (no preemption where defendant drug manufacturers were not "principal players in the ERISA scenario"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 190–91 (D. Mass. 2003) (no preemption of claim against pharmaceutical company, which was "neither a fiduciary nor a party in interest with respect to the plan").

administration of an ERISA plan, mishandling of plan benefits, or failure to pay covered benefits." *Id.* at 1004. Because such claims did "not have the requisite nexus with an ERISA plan or benefit system," they were not preempted. *Id.*

### 2. Granting Relief to JJHCS Will Not Interfere with Plan Administration by Forcing ERISA Plans to Adopt a Particular Scheme of Substantive Coverage

Next under the "connection with" test, the Court must consider whether JJHCS's claims would impermissibly "interfere with plan administration." *Plastic Surgery*, 967 F.3d at 235. In *Rutledge*—decided shortly after *Plastic Surgery*—the Supreme Court clarified the narrow circumstances in which a state law claim is preempted for having an impermissible "connection with" an ERISA plan because it "directly affect[s] central matters of plan administration." 141 S. Ct. at 480.

*Rutledge* teaches that ERISA does not preempt state statutes or common law claims that, like JJHCS's, "merely *increase costs* or alter incentives for ERISA plans *without forcing plans to adopt any particular scheme of substantive coverage*." *Id.* Consequently, ERISA did not preempt a state law regulating the price at which PBMs are required to reimburse pharmacies for the costs of prescription drugs. *Id.* Rather, ERISA is "concerned with pre-empting laws that require providers to structure benefit plans in particular ways, such as by *requiring payment of specific benefits*, or by binding plan administrators to specific rules for *determining beneficiary status*." *Id.* Thus, while a state law may be preempted if

14

"economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage," mere "indirect economic influence" on plans does not trigger preemption, as it does not "bind plan administrators to any particular choice." *Id.* This "***is especially so if a law merely affects costs***" because "cost uniformity was almost certainly not an object of pre-emption." *Id.* at 481.

*Rutledge* requires rejection of SaveOnSP's preemption defense. Under *Rutledge*, disputes over who should bear the cost of drugs that patients are entitled to under their health plans—the very type of dispute presented here—are not preempted by ERISA, because resolution will not "require plans to provide any particular benefit to any particular beneficiary in any particular way." *Id.* at 482. Enjoining SaveOnSP from (i) convincing payers to artificially inflate copays, and (ii) tortiously interfering with JJHCS's contracts, would not "force" any health plan—ERISA or otherwise—"to adopt any particular scheme of substantive coverage." Nor would it "bind plan administrators to any particular choice," impact a "central matter of plan administration," or otherwise "interfere[] with national[] uniform plan administration." *Id.* at 480. At most, enjoining SaveOnSP's scheme would "merely affect[]" payers' "costs" of providing drug benefits that are indisputably covered. ERISA preemption does not apply to such an outcome.

SaveOnSP consigns *Rutledge* to a footnote that sidesteps the legal principles announced by the Supreme Court, and instead tries to distinguish the instant dispute by mischaracterizing JJHCS's requested relief.  Br. 13 n.9.  Specifically, SaveOnSP posits that putting an end to its own conduct would somehow "enjoin the operation of ERISA plans," "dictate the content of ERISA plans," and "coerce ERISA plan sponsors into changing plan terms."  *Id.* at 2, 9–10; 12–13.  But it is undisputed that the plans cover the drugs at issue, with or without SaveOnSP, or else the SaveOnSP Program would not work.  So JJHCS is not asking the Court to require ***ERISA plans*** to do anything; indeed, there are no such plans named in this action.  Rather, JJHCS is asking the Court to enjoin ***SaveOnSP's*** tortious and unfair conduct, which occurs independently of any ERISA plan.  *See Plastic Surgery*, 967 F.3d at 237.  Even if granting relief to JJHCS may indirectly affect an ERISA plan's bottom line (by preventing SaveOnSP's tortious exploitation of JJHCS's patient assistance program), that does not suffice to preempt JJHCS's claims.  Such "indirect economic influence" does not magically convert SaveOnSP's program into an ERISA "plan term," let alone a term so "central" that any state law affecting it must be preempted.  *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 659 (1995).

Indeed, courts since *Rutledge* have repeatedly upheld state laws regulating reimbursements and copay allocations—the locus of SaveOnSP's scheme.  In

*Pharm. Care Mgmt. Ass'n v. Wehbi*, for example, a law extensively regulating PBMs was not preempted because it was "at most, a regulation of a ***noncentral*** 'matter of plan administration' with *de minimis* economic effects and impact on the uniformity of plan administration across states." 18 F.4th at 968. The law addressed who would reap the economic benefits of the patient's copay, and thus impacted ERISA plans. Yet the Eighth Circuit, applying *Rutledge*, held this law "certainly" was not preempted because it did not "require[] payment of specific benefits." *Id*. Similarly, in *Pharm. Care Mgmt. Ass'n v. Mulready*, another state law was not preempted despite allegedly "dictat[ing]" "cost-sharing differentials" and "communications with beneficiaries." 2022 WL 1438659, at *2 (W.D. Okla. Apr. 4, 2022). Even though this law might "alter the incentives and limit some of the options that an ERISA plan can use," it was not preempted because it did not "force[] ERISA plans to make any specific choices." *Id.*

These cases foreclose SaveOnSP's disingenuous attempt to portray its program as a plan "benefit" or a "plan term." SaveOnSP's tortious misuse of JJHCS's copay assistance program is not a "benefit" offered by health plans. Quite the opposite: SaveOnSP drains economic assistance from JJHCS intended to help patients alleviate the financial strain imposed by the health plans.

Courts have similarly held that common law claims such as tortious interference are not preempted by ERISA where they might implicate health plans'

17

costs but would not force any changes to their underlying scheme of substantive coverage. In *Emergency Servs. of Okla., PC v. Aetna Health, Inc.*, for example, the court held that claims brought by providers challenging a payer's reimbursement rates to doctors were not preempted because the "common law doctrines under which Plaintiffs bring their claims operate akin to rate regulations" of the kind upheld in *Rutledge*. 556 F. Supp. 3d 1259, 1264 (W.D. Okla. 2021). Although the dispute certainly implicated ERISA plans, the "plans [were] not the factual basis for Plaintiffs' claims as Plaintiffs [were] not seeking payment under the plans and ha[d] not asserted their claims based upon any terms of any ERISA plan." *Id.*[6]

By contrast, SaveOnSP's cited cases all concern state laws that would have forced health plans to provide a particular substantive benefit, or involved the outright denial of ERISA benefits. *Shaw v. Delta Air Lines, Inc.*, for example, concerned a statute that "require[d] employers to pay sick-leave benefits to employees unable to work because of pregnancy," which health plans otherwise had no obligation to provide. 463 U.S. 85, 88 (1983). Similarly, in *Merit Constr.*

---

[6] *See also Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 2015 WL 12778048, at *28–31 (C.D. Cal. Oct. 23, 2015) (no preemption of insurer's tortious interference claim against healthcare provider premised on provider's waiver of copays to generate business); *Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr.*, 2015 WL 4394408, at *18 (D. Md. July 15, 2015) (no preemption where "the misconduct complained of does not involve ERISA entities and the misadministration of ERISA benefits, but the intermeddling of third party providers in a contract between the Cigna entities, the plan administrators, and the plan beneficiaries"); *Venturino v. First Unum Life Ins. Co.*, 724 F. Supp. 2d 429, 432–33 (S.D.N.Y. 2010) (same result as to GBL Section 349 claim).

*Alliance v. City of Quincy*, a law requiring certain employers to offer an "apprentice training" program as a benefit to their employees was preempted because it "mandate[d] an employee benefit structure." 759 F.3d 122, 129 (1st Cir. 2014). And *Menkes v. Prudential Ins. Co.* found preemption where plan participants brought claims to recover particular benefits the insurer had denied based on the plan's exclusions, which would have "require[d] interpreting the plan's terms" and assessing plaintiffs' "benefits and rights under the plan[]." 762 F.3d 285, 294–96 (3d Cir. 2014).[7] In the same vein, *Cohen v. Horizon Blue Cross Blue Shield of N.J.* concerned a challenge to the payer's "claim payment decisions." 2017 WL 1206005, at *1 (D.N.J. Mar. 31, 2017).[8]

Lastly, SaveOnSP points to *Pharm. Care Mgmt. Ass'n v. D.C.*, an out-of-circuit decision decided a decade before *Rutledge* holding that a state law

---

[7] To the extent *Menkes* suggested a literal reading of Section 514(a), the Third Circuit has now clarified its view. *See Plastic Surgery*, 967 F.3d at 226 (explaining that if "'relate to' were taken to extend to the furthest stretch of its indeterminacy, then … preemption would never run its course"); *see also Gobeille*, 577 U.S. at 319 (to avoid a "result no sensible person could have intended," the Court has "reject[ed] 'uncritical literalism' in applying the clause").

[8] The *Cohen* court also interpreted *Gobeille* to mean that "claims-processing procedures" qualify as a "central matter of plan administration," *see id.* at *4, but *Gobeille* merely held that ERISA's detailed disclosure and reporting requirements—which includes disclosure of "claims-processing procedures"—cannot be overridden by state law. 577 U.S. at 321–23. The present case has nothing to do with ERISA's mandatory disclosure requirements. *Campo v. Oxford Health Plans, Inc.*, also cited by SaveOnSP, is distinguishable for this same reason. 2007 WL 1827220, at *7–8 (D.N.J. June 26, 2007) (imposing "dual disclosure requirements would be antithetical" to ERISA's purpose).

regulating PBMs was preempted because its purpose was to "prescribe the way PBMs decide *which pharmaceuticals* to provide to plan beneficiaries and to prevent PBMs from inflating the price the plan pays for those pharmaceuticals." 613 F.3d 179, 185 (D.C. Cir. 2010). Here, by contrast, JJHCS's claims have no impact on "which pharmaceuticals" are provided under a plan. And following *Rutledge*, state laws that merely regulate drug costs are not preempted.

### 3.    *Preemption Here Would Undermine ERISA's Purpose*

Finally under the "connection with" test, the Court must evaluate whether JJHCS's claims would "undercut ERISA's stated purpose," which is "to protect plan participants and beneficiaries." *Plastic Surgery*, 967 F.3d at 238. Here, the opposite is true: JJHCS's claims *support* ERISA's purpose. They would protect plan participants and beneficiaries from SaveOnSP's scheme that, if left unchecked, would increase healthcare costs for patients and make it cost-prohibitive for JJHCS to offer patient assistance. *See* Compl. ¶¶ 21–22, 78–79; *see also Plastic Surgery*, 967 F.3d at 239 (preemption of providers' claims would undermine ERISA by requiring providers to "deny care or raise fees"); *Sarasota Cty. Pub. Hosp. Bd. v. Blue Cross & Blue Shield of Fla.*, 511 F. Supp. 3d 1240, 1247–48 (M.D. Fla. 2021) (same).

## B.   JJHCS's Claims Do Not Have an Impermissible "Reference to" ERISA Plans

Nor can SaveOnSP satisfy the "reference to" test.  SaveOnSP claims that this test is met if the claim requires the court's "inquiry" to be "directed" to an ERISA plan.[9]  Br. 13–14.  But that is not the correct legal standard following *Plastic Surgery* and *Rutledge*, both of which were decided after the *Somerset* decision upon which SaveOnSP relies.  A state law impermissibly "refers to" ERISA *only* "if it 'acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation.'"  *Rutledge*, 141 S. Ct. at 481.  This test was not satisfied in *Rutledge* because the law at issue "applie[d] to PBMs whether or not they manage an ERISA plan," and "d[id] not directly regulate health benefit plans at all, ERISA or otherwise."  *Id.*  Following *Rutledge*, "the existence of ERISA plans is essential to a law's operation *only if* the law cannot apply to a non-ERISA plan."  *Wehbi*, 18 F.4th at 969.

SaveOnSP cannot satisfy these standards.  It is undisputed that the state laws at issue—the common law doctrine of tortious interference with contract and New York's unfair business practices statute—do not apply "exclusively" to ERISA plans, and ERISA plans are not "essential" to those laws' operation.  *See Wehbi*, 18 F.4th at 969.  Because these are laws of general applicability, they cannot be

---

[9] An ERISA plan is defined as any "employee welfare benefit plan" or "employee pension benefit plan" that was established or is maintained "by an employer or by an employee organization."  29 U.S.C. §§ 1002(1), 1002(2)(A).

preempted under the "reference to" test. *See Aetna Health*, 556 F. Supp. 3d at 1264 (no preemption under *Rutledge* because the "common law causes of action" at issue "have force and operate independently of the existence of any ERISA plans"); *Insys Therapeutics*, 390 F. Supp. 3d at 1004 (claims for tortious interference and unfair business practices were not preempted because claims were based on "law[s] of general applicability that neither 'act[] immediately and exclusively upon ERISA plans,' nor rel[y] upon the existence of ERISA plans to operate"); *Almont*, 2015 WL 12778048, at *26 (same). In addition, SaveOnSP openly concedes that its preemption defense extends only to "JJHCS's claims for copay assistance paid for participants *in private employee benefit plans*," and is therefore irrelevant to SaveOnSP's conduct vis-à-vis non-ERISA health plans. Br. 9. For this reason too, JJHCS's claims do not act "exclusively" upon ERISA plans.

Finally, SaveOnSP is wrong to suggest that JJHCS's claims would require the Court to impermissibly "consider" plan terms when assessing damages. Br. 14. The *Plastic Surgery* court held that "determinations of in-network payment rates" are "precisely the type of 'cursory examination of the plan'" that "does not trigger express preemption," and rejected the suggestion that "any reference to an ERISA plan in the calculation of damages … triggers express preemption." 967 F.3d at 233–34. Nor would the Court need to "interpret" plan terms to decide whether SaveOnSP's false denials of coverage are deceptive. Br. 14–15. There is no

dispute that these drugs are covered under the plans at issue; if they weren't, SaveOnSP would not be able to extract copay assistance for them.[10]

## II.  JJHCS HAS STATED A CLAIM FOR DECEPTIVE TRADE PRACTICES UNDER NEW YORK GBL SECTION 349

New York's General Business Law § 349 ("Section 349") empowers private plaintiffs such as JJHCS to recover for "the numerous, ever-changing types of false and deceptive business practices which plague consumers," including in healthcare.  *Karlin v. IVF Am.*, 712 N.E.2d 662, 665 (N.Y. 1999); *see also Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 159 (2d Dep't 2010) (Section 349's scope is "broad indeed").  SaveOnSP will be liable for its deceptive practices under Section 349 if JJHCS ultimately shows that (1) SaveOnSP's acts are "directed to consumers," (2) that they are materially "deceptive or misleading," and that (3) JJHCS has been injured as a result.  *E.g.*, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 744 (N.Y. 1995).

The Complaint alleges each element.  It explains that SaveOnSP targets consumers, often in their most vulnerable moments, *see, e.g.*, Compl. ¶¶ 60–63; that SaveOnSP engages in materially deceptive conduct, including by withholding,

---

[10] The Third Circuit also explained why *1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers*, 968 F.2d 401 (3d Cir. 1992), cited by SaveOnSP, is "readily distinguishable": "assessing damages" in *Nobers* "would have required benefit calculations that 'sit within the heartland of ERISA,'" not just a "'cursory examination' of plan provisions 'turning largely on legal duties generated outside the ERISA context.'"  *Plastic Surgery*, 967 F.3d at 234 & n.20.

or outright misrepresenting, material information about patients' coverage and the availability of patient assistance, *see, e.g.*, *id.* ¶¶ 75–77, 113; and that SaveOnSP's deceptive conduct has injured JJHCS and is harmful to the public at large, *see, e.g.*, *id.* ¶¶ 11–14, 60–63, 87–105.[11]   SaveOnSP's contrary arguments mostly revolve around disputed facts.  Taking the Complaint's allegations as true, and resolving inferences in JJHCS's favor, there is no basis to dismiss the Section 349 claim.[12]

## A.   JJHCS Has Plausibly Alleged that SaveOnSP Deceives Patients

SaveOnSP's lead argument is that it could not have deceived patients "who enrolled in CarePath before speaking to SaveOn" because it "could not mislead previously-enrolled patients into enrolling in a program in which they were already enrolled."  This, SaveOnSP announces, encompasses "most" of the patients at issue.  Br. 16.  The notion that "most" patients were already enrolled in CarePath

---

[11]   SaveOnSP contends in a footnote that JJHCS's damages should be limited to "New York-based plan participants."  Br. 15 n.11.  This is wrong.  Section 349 permits recovery for deceptions originating in New York that victimize out-of-state consumers.  *See Cruz v. FXDirectDealer LLC*, 720 F.3d 115, 123 (2d Cir. 2013) ("A deceptive transaction in New York falls within the territorial reach of section 349 and suffices to give an out-of-state victim who engaged in the transaction statutory standing to sue under section 349.").  The conduct here originated in New York, where SaveOnSP is headquartered and operates its scheme.  Compl. ¶ 28.  SaveOnSP also seeks the protection of New York law in the joinder agreements it signs with its payer clients, and, on information and belief, accepts payment for its services in New York.  *Id.*  Regardless, SaveOnSP's damages contention is premature and the Court need not deal with it on this motion.

[12]   Below JJHCS responds to SaveOnSP's arguments in the order they were advanced in SaveOnSP's brief, i.e., the second and third elements before the first.

before signing up with SaveOnSP is a factual contention found nowhere in the Complaint, so the Court should not consider it. *See, e.g.*, *Shanus v. Robert Edward Auctions, LLC*, 2012 WL 1044316, at *9 (D.N.J. Mar. 28, 2012) (rejecting defendant's arguments "of disputed fact, not properly resolved on a motion to dismiss"). This argument can therefore be rejected without more.

But SaveOnSP's argument also misstates JJHCS's allegations. The crux of those allegations is not that SaveOnSP uses deceptive tactics to coerce patients into enrolling into ***CarePath***; it is that SaveOnSP uses deceptive tactics to coerce patients into enrolling in ***the SaveOnSP Program***, to ensure it can max out their patient assistance funds. Compl. ¶¶ 60–63. This conduct is deceptive irrespective of whether it occurred before or after the patient enrolled in CarePath. SaveOnSP contends that JJHCS "would have paid the same amount of copay assistance" for such patients "regardless of SaveOn's involvement," Br. 16, but that (1) is yet another unsupported factual contention, (2) is directly contradicted by the Complaint, and (3) goes to damages rather than deception in any event. *See* Compl. ¶¶ 92–97 (cataloguing, on a drug-by-drug basis, how JJHCS is forced to pay significantly more in copay assistance once SaveOnSP intervenes).

SaveOnSP's remaining arguments regarding deception are likewise premised on factual contentions that cannot be resolved now. For example, SaveOnSP asks the Court to conclude that its intentional, predatory, and false

"[p]oint of sale claim rejection" of a patient's claim—designed to coerce the patient to sign up for the SaveOnSP Program, *see* Compl. ¶¶ 13, 63—is not really a denial of coverage because its representatives are careful to avoid using the word "denial." Br. 18.[13]  Such semantic games are irrelevant to the sick patient who is being told she cannot get the drug her physician prescribed, and they have no bearing on the consumer deception alleged.  It is understandable that SaveOnSP wishes to avoid facing a jury with the argument that its "point of sale claim rejection" is different from a denial.  But for now, the Complaint's well-pled allegations regarding this deceptive point-of-sale rejection must control.  *See Doe*, 30 F.4th at 342; *Mercedes-Benz USA, LLC v. ATX Grp., Inc.*, 2009 WL 2255727, at *8 (D.N.J. July 27, 2009) ("plaintiff's reasonable interpretation" of integrated document "is sufficient to overcome defendant's motion to dismiss").

Next, SaveOnSP agrees that it is misleading to tell patients they cannot obtain copay assistance without SaveOnSP, but pretends it does not actually do this.  Br. 19–20.  Again, SaveOnSP's improper factual contention is refuted by JJHCS's Complaint, which excerpts a promotional document literally and falsely stating that without SaveOnSP, "***[t]here is no copay assistance***."  Compl. ¶ 76.

---

[13] Remarkably, SaveOnSP quotes a portion of a document cited in the Complaint to advance its contention that there is no denial, *see id.*, but cuts off the quote just before the representative admits that the patient's claim for coverage "cannot move further" (and SaveOnSP "will not advance" it further) until he or she acquiesces to enrollment in the SaveOnSP Program.  Br. Ex. 1 at 37:24–38:3.

SaveOnSP speculates about how patients might interpret this statement, and offers its own view of what the document truly "represents." Br. 20. But such factual ruminations have no place in a motion to dismiss. *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("[W]hether a particular act or practice is deceptive" under Section 349 is "usually a question of fact.").

Finally, SaveOnSP does not dispute that it fails to inform patients that it is (1) causing them to breach their agreement with JJHCS and (2) helping itself to a large cut of their CarePath funds. *See* Compl. ¶¶ 75, 113. Instead, SaveOnSP posits that these omissions could not have been misleading. Br. 20–21. But an "omission can constitute a deceptive act or practice for the purposes of section 349, 'where the business alone possesses material information that is relevant to the consumer and fails to provide this information.'" *Shaaya v. Jaguar Land Rover N. Am.*, 2022 WL 2341599, at *7 (D.N.J. June 29, 2022) (quoting *Oswego*, 647 N.E.2d at 745). And whether conduct is materially misleading "is generally a question of fact not suited for resolution at the motion to dismiss stage." *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 96 (S.D.N.Y. 2021).

For now, it is more than plausible that patients would want to know that participation in the SaveOnSP Program would place them in breach of their agreements with JJHCS and thereby jeopardize their access to patient assistance in the future, or that SaveOnSP was seizing for itself the patient assistance funds that

JJHCS made available to them. Courts have repeatedly found that misleading consumers into breaching an agreement violates Section 349, as does failing to disclose material relationships. *See, e.g.*, *HSBC Bank USA, N.A. v. Lien Thi Ngo*, 197 A.D.3d 1102, 1104 (2d Dep't 2021) (plaintiff stated Section 349 claim where defendant failed to disclose that certain conduct would result in a breach of the agreement); *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 644 (S.D.N.Y. 2016) (failure to disclose affiliate relationships may violate Section 349 where omission impacts the credibility of party's consumer-oriented representations).[14]

---

[14] *Maurizio v. Goldsmith*, 230 F.3d 518 (2d Cir. 2000), is irrelevant. There, a private dispute over authorship credits and royalties did not give rise to a Section 349 claim because the complaint offered no plausible basis to assume that consumers would have been deceived in a material way by the "sole author" claim at issue. *Id.* at 522. By contrast, SaveOnSP's failure to disclose its "material relationship" with payers certainly would have been material to patients.

SaveOnSP also cites *Milich v. State Farm Fire & Cas. Co.*, 2012 WL 4490531 (E.D.N.Y. Sept. 28, 2012) for the erroneous proposition that a material omission only gives rise to a Section 349 claim if there is an "affirmative obligation" to disclose. However, "whether there is a legal duty is not the operative focus under the GBL" when evaluating a claim based on an omission. *Chiarelli v. Nissan North Am., Inc.*, 2015 WL 5686507, at *12 (E.D.N.Y. Sep. 25, 2015). Rather, the focus is whether the "business alone possesses material information that is relevant to the consumer and fails to provide this information." *Kuzian v. Electrolux Home Prods.*, 937 F. Supp. 2d 599, 616 (D.N.J. 2013). Thus, *Milich* is not on point: it concerned a contractual clause that (while poorly worded) put consumers on notice of the scope of the clause, and therefore did not involve a situation where the defendant alone possessed the information. *See* 2012 WL 4490531 at *7–8.

### B.   JJHCS Has Plausibly Alleged Direct Injury

Relying on *Blue Cross & Blue Shield of N.J., Inc. v. Phillip Morris USA Inc.*, 818 N.E.2d 1140 (N.Y. 2004), SaveOnSP argues that JJHCS's injury is insufficiently "direct." Br. 16–17.   In other words, SaveOnSP contends that JJHCS's injury is improperly "derivative" of the harm caused to patients—even as it paradoxically insists that patients were not harmed. *See id.* at 18–25.

Setting aside this fundamental inconsistency, SaveOnSP's argument still fails because it misunderstands *Blue Cross*, which held that insurers cannot use Section 349 to recover from a tortfeasor the costs of medical care received by their subscribers who were injured by that tortfeasor.   818 N.E.2d at 1144 (a payer "may not recover derivatively for injuries suffered by its insured.   Rather, the insurer's sole remedy is in equitable subrogation").   There, plaintiff's damages were literally the costs incurred and then passed on by consumers.   Under these circumstances, the Court of Appeals declined to derogate the common law rule regarding subrogation and held that a Section 349 claim must be brought by one who was "actually injured."   *Id.* at 1145; *accord City of New York v. Smokes–Spirits.com, Inc.*, 911 N.E.2d 834, 839 (N.Y. 2009) (plaintiffs must "plead that they have suffered actual injury").

Here, however, SaveOnSP's misconduct inflicts actual injury directly upon JJHCS that causes it to suffer "direct loss ***of its own***." *In re Opioid Litig.*, 2018

29

WL 3115100, at *4 (N.Y. Sup. Ct. June 18, 2018). The Complaint alleges that SaveOnSP directly damages JJHCS by "making it pay more money from CarePath than it otherwise would have for a purpose JJHCS did not intend." Compl. ¶ 115. This injury is different both quantitatively and qualitatively from the harm SaveOnSP causes to consumers, unlike in *Blue Cross* and *Smokes-Spirits*. *See id.* ¶ 114 (alleging injury to consumers "through acts such as engineering false denials of coverage" and "making other patient healthcare needs more expensive").

Numerous cases confirm that JJHCS's injury is "direct" under Section 349. In *N. State Autobahn, Inc. v. Progressive Ins. Group Co.*, the court upheld the plaintiff's Section 349 claim alleging "that another business entity deceived and misled prospective customers, causing it to sustain direct economic loss." 102 A.D.3d 5, 8 (2d Dep't 2012). The plaintiff's damages were a "direct injury" that, although related to a deception of consumers, wasn't the same as the consumers' injury—indeed, the plaintiff's damages were sustained "regardless of whether the customers ultimately suffered pecuniary injury" at all. *Id.* at 17. The court also recognized that the plaintiff's relationship to the defendant's deceptive practices was not incidental or attenuated (as the insurer's connection to the deceptive cigarette marketing was in *Blue Cross*). Rather, the defendant misled the plaintiff's **customers** for the purpose of causing **the plaintiff** loss. *See id.*

So too here.  SaveOnSP targets not just patients but also JJHCS itself; both are essential to achieve its goal of pocketing JJHCS's patient assistance.  And when SaveOnSP succeeds in coercing a patient to combine the SaveOnSP Program and CarePath, JJHCS directly suffers money damages that are entirely its own—it is repeatedly forced to pay more copay assistance than it otherwise would have. Compl. ¶ 115.  That is all Section 349 requires.  *See also M.V.B. Collision, Inc. v. Allstate Ins. Co.* 728 F. Supp. 2d 205, 217 (E.D.N.Y. 2010) (rejecting defendant's reliance on *Blue Cross* and *Smokes-Spirits* where "not only was the customer the victim of a deceptive practice, but [plaintiff] also suffered a loss"); *In re JUUL Labs, Inc.*, 497 F. Supp. 3d 552, 667–68 (N.D. Cal. 2020) (distinguishing *Blue Cross* and *Smokes-Spirits* because the plaintiff sustained "direct pecuniary harm" that "occurred independent of" the consumer deception); *In re Opioid Litig.*, 2018 WL 3115100, at *6 (same).

SaveOnSP's related argument that JJHCS "fails to allege that SaveOn's conduct caused its injuries," Br. 17–18, likewise misses the mark.  SaveOnSP is at the center of every act that is injuring JJHCS: it engineers the re-designation of Janssen drugs; it implements the scheme to inflate patients' copay obligations; it deceives patients into believing that they cannot access their drugs, or copay assistance, without it; and it pressures patients into violating the CarePath terms. Compl. ¶¶ 9–13, 16, 18–23, 75–76.  While SaveOnSP seeks to recast these injuries

as simply patients choosing to enroll "in co-pay assistance over paying high copays," Br. 18, this ignores that CarePath copay assistance is available *without* any meddling from SaveOnSP—and it is SaveOnSP's misconduct that obscures that fact for patients, and inflates the amount of money taken from CarePath, *see* Compl. ¶¶ 16, 76, 92–97.[15] It also ignores that SaveOnSP is well compensated for its central role: it takes 25% of every dollar wrongfully extracted. *Id.* ¶¶ 51, 68.

## C.    JJHCS Has Plausibly Alleged Public Harm

SaveOnSP concedes that its conduct is "consumer-oriented," but still argues that JJHCS has not sufficiently alleged that SaveOnSP's conduct caused "harm to the public interest." Br. 22. On this front, JJHCS need only allege that "there is 'some harm to the public at large.'" *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003); *see also Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 302 (E.D.N.Y. 2010) (a non-consumer plaintiff "establishes consumer-oriented conduct by showing that 'the acts or practices have a broader impact on consumers at large' in that they are 'directed to consumers' *or* that they 'potentially affect similarly situated consumers'" (quoting *Oswego*, 647 N.E.2d at 745) (emphasis in original)).

---

[15] SaveOnSP's related reliance on *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 171 N.E.3d 1192 (N.Y. 2021), is misplaced. There, no reasonable consumer would have been misled regarding the legal treatise at issue because the sales contract expressly disclaimed "accuracy, reliability [and] currentness." *Id.* at 1200. Here, by contrast, SaveOnSP actively misrepresents or conceals the material facts. Compl. ¶¶ 75–76.

JJHCS does not need to establish a "specific quantifiable" public harm, *N. State Autobahn*, 102 A.D.3d at 14, and it certainly does not need to show harm to "public health or safety," as SaveOnSP wrongly contends. *See Casper Sleep, Inc.*, 204 F. Supp. 3d at 643 ("Defendants' suggestion that the allegedly deceptive practice must pose some danger to the public health or safety … is simply wrong").[16]   Indeed, the New York Court of Appeals recently recognized that a payer could be liable under GBL § 349 for its scheme to induce consumers to enroll in a certain plan through the use of misleading statements and omissions in marketing materials. *Plavin v. Group Health Inc.*, 146 N.E.3d 1164, 1170 (N.Y. 2020) (noting that GBL claims are "intended to address" schemes like these, which are "characterized by groups of similarly-situated consumers subjected to the competitive tactics of a relatively more powerful business").[17]

The Complaint alleges public harm consistent with these precedents.  For example, SaveOnSP engineers a false denial of coverage in order to coerce patients

---

[16] *JJFM Corp. v. Mannino's Bagel Bakery*, 70 Misc. 3d 171 (Sup. Ct. 2020), does not say that Section 349 "is concerned ***only*** with 'potential dangers to public health or safety,'" as SaveOnSP contends.  Br. 25.  *JJFM* merely noted that there must be "some harm to the public at large … ***such as*** potential dangers to public health or safety."  70 Misc. 3d at 179–80.  Thus, "such" dangers are one example of harm—not the "only" harm prohibited by Section 349.  And in any event, the Complaint alleges that SaveOnSP's conduct endangers patient health.  *See* Compl. ¶¶ 41–42.

[17] Notably, plaintiff's counsel in *Plavin*—the same firm representing SaveOnSP here—successfully argued that adopting a narrow view of consumer harm "would carve out a particular type of deceptive practice from the GBL's scope with no legitimate justification."  2019 WL 8128820, at *5.  The same is true here.

into enrollment, causing "undue stress and confusion" for "individuals already under pressure from difficult medical circumstances." *See* Compl. ¶¶ 11–13, 60–63, 88, 114. As courts have consistently held, such emotional harm satisfies the injury requirement for a Section 349 claim. *Guzman v. Mel S. Harris & Assocs., LLC*, 2018 WL 1665252, at *12 (S.D.N.Y. Mar. 22, 2018); *see also Rozier v. Fin. Recovery Sys., Inc.*, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011) (allegations of "humiliation, anger, anxiety, emotional distress, fear, frustration" were sufficient). And the harm is anything but speculative—it starts as soon as patients are denied their medication unless they enroll in the SaveOnSP Program.[18] Compl. ¶¶ 13, 21; Br. Ex. 1 at 37:24–38:3.

Further, the Complaint alleges that SaveOnSP causes patients financial harm. Because the copay assistance funds extracted by SaveOnSP do not count towards patients' deductibles or out-of-pocket maximums, *see* Compl. ¶ 78, patients will ultimately pay more for their healthcare costs, *see id.* ¶¶ 78, 114. SaveOnSP attempts to evade liability for this by shifting blame to "plan sponsors"

---

[18] SaveOnSP relies on *Michelo v. National Collegiate Student Loan Trust 2007-2*, 419 F. Supp. 3d 668 (S.D.N.Y. 2019), for the proposition that damages associated with "the risk of a speculative future event" are not cognizable under the GBL. *See* Br. 22–23. *Michelo* is inapposite: there, the court determined that a plaintiff's fear that her wages would be garnished because **another** party's wages had been garnished as a result of defendant's deceptive conduct was too speculative to support a claim. *Id.* at 708. But here, patients suffer immediate harm that "flows directly from the defendants' violative conduct"—being told they cannot get their medication—and not "the risk of a speculative future event." *Id.*

who (according to SaveOnSP) are the ones that actually "set plan terms exempting assistance payments from out-of-pocket maximums." Br. 25. But that is no defense at all, in light of the Complaint's allegation that SaveOnSP plays the pivotal role in the adoption of such policies. *See* Compl. ¶¶ 51–56; *accord* Br. 1 (SaveOnSP admitting that it "advises plan sponsors" on how to take advantage of CarePath); *id.* at 6 (admitting that it "implements the sponsor's benefit design").

Lastly, the SaveOnSP Program disconnects the amount of patient assistance from patient need. *See* Compl. ¶ 74. By maxing out the available funds for each patient—sometimes seizing a year's worth of assistance by the middle of the year—SaveOnSP extracts far more copay assistance funds than warranted, exorbitantly inflating the cost of the CarePath program. *See* Compl. ¶¶ 92–98. SaveOnSP disputes whether its misconduct actually imperils CarePath, Br. 24, but that is (once again) a question of fact that cannot be resolved now.

## III. JJHCS HAS STATED A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT

JJHCS has plausibly alleged every element of tortious interference: (1) interference with a contract; (2) inflicted intentionally by a defendant who is not a party to the contract; (3) without justification; and (4) resulting damage. *Dello Russo v. Nagel*, 358 N.J. Super. 254, 268 (App. Div. 2003). JJHCS has a contract with patients, Compl. ¶¶ 48, 65; SaveOnSP interferes with that contract, *id.* ¶¶ 50–88; SaveOnSP's actions are intentional, *id.* ¶¶ 5, 8, 65–66, 70, 90, 100;

SaveOnSP's conduct is wrongful and unjustified, *id.* ¶¶ 60–64, 66–67, 73–78, 86–88; and SaveOnSP's interference damages JJHCS, *id.* ¶¶ 92–105.

SaveOnSP admits the alleged misconduct, Br. 6, but essentially contends that it times this misconduct in a way that precludes liability, *id.* at 25–26. SaveOnSP also posits that its program is not an "offer" and so does not run afoul of CarePath's prohibition on other offers. *Id.* at 27–29. Both arguments rest on mischaracterizations of JJHCS's allegations.

### A.   SaveOnSP Tortiously Interferes with JJHCS's Patient Contracts

With respect to patients who signed up for the SaveOnSP Program before enrolling in CarePath, SaveOnSP argues that its wrongful actions predated JJHCS's contracts. Br. 25–26. But SaveOnSP's tortious interference does not end there; the Complaint alleges that patients breach the "other offer" prohibition ***every time*** they use CarePath while enrolled in the SaveOnSP Program, because CarePath requires patients to "meet the program requirements every time [they] use" its copay assistance. Compl. ¶ 48. SaveOnSP induces later breaches of this clause through conduct that is ongoing, including its causing a false inflated copay amount to be communicated to JJHCS at the point of sale, *id.* ¶ 66, and its surreptitious payment of the patients' $5 or $10 responsibility, *id.* ¶ 73. Whether or not a patient was initially enrolled in CarePath is irrelevant: at a minimum, SaveOnSP is liable for all of this subsequent, ongoing interference.

With respect to patients who were already enrolled in CarePath when they were coerced to enroll in the SaveOnSP Program, SaveOnSP contends that such coercion occurred too late to interfere with those JJHCS/patient contracts. Br. 26–27. Again, SaveOnSP misapprehends the Complaint. With respect to this subset of patients—those who enrolled in CarePath first, then the SaveOnSP Program—SaveOnSP does not induce them to breach their contracts with JJHCS by signing up with ***CarePath***, but by signing up with ***SaveOnSP*** while enrolled in CarePath and obtaining CarePath support. *See* Compl. ¶ 20 (alleging that SaveOnSP "coerce[s] patients into signing up for and using the SaveOnSP Program—thereby inducing those patients to breach the terms and conditions of their CarePath agreement with JJHCS"); *id.* ¶ 75 ("SaveOnSP does not tell patients that by enrolling in the SaveOnSP Program, they are breaching their agreement with JJHCS."); *id.* ¶ 109 (alleging that patients "breach their contract with JJHCS every time they use CarePath funds while enrolled in the SaveOnSP program"). SaveOnSP therefore induces a breach by coercing patients to enroll and participate in its program when they are already enrolled in and using CarePath.

### B.  SaveOnSP Makes an Offer to Patients that, Once Accepted, Violates the Prohibition Against "Other Offers"

SaveOnSP then reasons that it cannot be liable for tortious interference because its program does not constitute an "offer" and therefore could not have induced patients to breach their contractual obligation not to participate in any

"other offer" while using CarePath. Br. 28.[19] This argument rests on a disingenuous premise: instead of engaging with the Complaint's allegations regarding the offer at issue, SaveOnSP conjures an entirely different theory of what the tortious "offer" is, and sets about poking holes in its own alternative theory.

The Complaint alleges that SaveOnSP coerces patients into enrolling in the SaveOnSP Program by purporting to offer an exclusive way for patients to avoid paying the high copays that SaveOnSP itself engineers. Compl. ¶¶ 11, 60. Denying that this is an offer flies in the face of the Complaint's allegations, and indeed the SaveOnSP Program's own materials consistently describe it as an offer. *See* Compl. ¶¶ 19, 90 (promotions referring to the "SaveOn *offering*" and stating, "That's why your plan *offers* a program called SaveOnSP"). Amazingly,

---

[19] SaveOnSP acknowledges that New Jersey law governs most of JJHCS's tortious interference claim, but asserts in a footnote that New York law controls "legal propositions related to the interpretation of the CarePath terms and conditions." *Id.* at 27 n.15. SaveOnSP is mistaken. First, the "Terms of Services" SaveOnSP cites that only govern use of the CarePath website or app (neither at issue here). *See Terms of Service*, Janssen CarePath, https://www.janssencarepath.com/legal-notice (last visited July 23, 2022) ("This Agreement … concern[s] your use of the website located at https://www.janssencarepath.com (the "Site") or the mobile software application in connection with which you are accessing this Agreement[.]"). Second, even if relevant, the terms would not apply; SaveOnSP is neither a signatory nor third-party beneficiary to that contract. *See A. & M. Wholesale Hardware Co. v. Circor Instrumentation Techs., Inc.*, 2014 WL 714938, at *8 (D.N.J. Feb. 24, 2014) (applying New Jersey law to tortious interference claim even though contract had a New York choice of law provision). New Jersey has a more significant relationship to this claim: it is where JJHCS's harm is felt, and it has a "profound interest in protecting the contractual rights of its citizens." *See, e.g.*, *Score Bd., Inc. v. Upper Deck Co.*, 959 F. Supp. 234, 238 n.4 (D.N.J. 1997) (applying governmental interest analysis to tortious interference claim).

SaveOnSP even describes the SaveOnSP Program as an "offer" *in its own brief*. *See* Br. 2 (asserting that SaveOnSP's program enables health plans to "*offer* a benefit: if participants enroll in copay assistance and let SaveOn monitor their accounts," then "[p]articipants get their drugs for free").[20] And this act fits squarely within the ordinary meaning of "offer." *See Offer*, Merriam-Webster, https://www.merriam-webster.com (last visited August 15, 2022) (defining "offer" as "a presenting of something for acceptance"). *See generally Liebowitz v. Richman*, 2022 WL 1200805, at *4 (D.N.J. Apr. 22, 2022) (Vazquez, J.) ("A basic tenet of contract interpretation is that contract terms should be given their ordinary and plain meaning."); *Pesacov v. Unum Life Ins. Co. of Am*., 463 F. Supp. 3d 571, 575 (E.D. Pa. 2020) (dictionary definitions are subject to judicial notice).

SaveOnSP's argument never addresses the actual offer pled in JJHCS's Complaint. Instead, SaveOnSP insists that something else altogether—its admitted practice of "advising employer plan sponsors to set plan terms that maximize copay assistance"—is not an offer. Br. 27–28. Whether this is right or wrong, that is not the conduct that is alleged to violate the CarePath terms.

Alternatively, SaveOnSP says its interactions with patients do not constitute an "offer" because each word preceding "other offer" in the term (coupon,

---

[20] SaveOnSP's phrasing—"[t]he plans can then offer a benefit"—appears calculated to shift the blame to its client health plans. But that attempt cannot be credited at the pleading stage, and is inconsistent with the admissions describing the SaveOnSP Program *itself* as an "offering." *See* Compl. ¶ 19.

discount, prescription savings card, and free trial) "refers to a monetary benefit that reduces the price of participants' drugs." Br. 28–29. That only supports JJHCS's case. A "monetary benefit" is precisely what JJHCS has alleged the SaveOnSP Program purports to offer: patients will pay $0 for prescriptions if they enroll in the SaveOnSP Program. *See, e.g.*, Compl. ¶ 15 ("SaveOnSP is telling patients that their therapy will be 'free' if they enroll in the SaveOnSP Program"); *id.* ¶ 90 (offer that SaveOnSP "can help lower your out-of-pocket costs to $0").

Finally, SaveOnSP presents one last factual dispute. It claims that it does not "offer to pay any monetary benefit to any plan participant." Br. 29. This characterization once again turns on disputed facts beyond JJHCS's pleading. *See* Compl. ¶ 73 (citing SaveOnSP admission that it deceptively uses a "tertiary biller," which is "really SaveOn behind the scenes," to pay patients' out-of-pocket obligations); *see also* Br. Ex. 1 at 22:15–17 (SaveOnSP representative: "[U]nique to the SaveOn program … that member always has a zero dollar copay."). Nor is it relevant: the SaveOnSP Program includes an "offer" irrespective of whether that offer is paid for by SaveOnSP or the SaveOnSP-advised payer (using JJHCS's money procured by SaveOnSP). JJHCS's allegations satisfy even SaveOnSP's narrow definition of "offer," leaving no basis to dismiss the Complaint.

## CONCLUSION

For the foregoing reasons, the Court should deny SaveOnSP's motion.

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:    s/ Jeffrey J. Greenbaum
       JEFFREY J. GREENBAUM
       KATHERINE M. LIEB


PATTERSON BELKNAP WEBB &
TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff Johnson &
Johnson Health Care Systems Inc.*

Dated: August 15, 2022