**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., | |
| *Plaintiff*, | |
| v. | Civil Action No. 2:22-cv-02632-JMV-CLV |
| SAVE ON SP, LLC, | |
| *Defendant*. | |

***AMICI CURIAE* BRIEF OF AIMED ALLIANCE,
TRIAGE CANCER, THE HIV AND HEPATITIS POLICY INSTITUTE,
THE COALITION OF STATE RHEUMATOLOGY ORGANIZATIONS, THE AIDS
INSTITUTE, THE NATIONAL ONCOLOGY STATE NETWORK AND THE
CONNECTICUT ONCOLOGY ASSOCIATION IN OPPOSITION TO SAVE ON SP'S
MOTION TO DISMISS**

A. Ross Pearlson, Esq.
CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, NJ 07052
973-325-1500
rpearlson@csglaw.com

*Counsel for Amicus Curiae Aimed Alliance*

4868-0000-2350.v2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

II.    INTERESTS OF *AMICI CURIAE* ..............................................................................1

III.   STANDARDS OF REVIEW ........................................................................................3

IV.   STATEMENTS IN THE PUBLIC INTEREST ...........................................................3

    A.    SaveOnSP's Conduct Deceives, Influences, and Harms Consumers .....................4

        1.    SaveOnSP's Conduct Deceives Health Care Consumers .......................... 6

        2.    SaveOnSP's Conduct Broadly Influences Consumers' Decisions ........... 11

        3.    SaveOnSP's Conduct Harms Consumers ................................................. 13

    B.    SaveOnSP's Conduct Has National Health Policy Implications ..........................15

        1.    SaveOnSP Mischaracterizes The Purposes Of CAPs............................. 15

        2.    SaveOnSP Threatens Patients' Health Stability By Jeopardizing Their Ability To Rely On CAPs ........................................................................ 16

        3.    SaveOnSP's Program Threatens Patient And Public Health By Serving As A Roadmap For Eroding EHB Protections....................................... 17

        4.    SaveOnSP Increases Overall Health Care Costs By Inflating The Cost of Prescription Medications ......................................................................... 18

V.    CONCLUSION............................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

*Himmelstein v. Matthew Bender & Co.*,
   37 N.Y.3d 169 (N.Y. 2021) ...................................................................................2

*Ideal You Weight Loss Ctr., LLC v. Zillioux*,
   174 A.D.3d 1473 (N.Y. App. Div. 2019) ...............................................................2

*Plavin v. Group Health Inc.*,
   2020 N.Y. Slip Op. 2025 (N.Y. 2020) ....................................................................2

**Statutes**

New York General Business Law Section 349.................................................2, 14, 17

Patient Protection and Affordable Care Act .........................................................3

**Other Authorities**

IPBC and SaveOnSP Training-20210216 19021-1, at 46:00-47:35,
   https://vimeo.com/513414094 ................................................................................8

Patient Access, *The Dangers of Non-Medical Switching for Mental Health
   Patients* (May 2022) ..............................................................................................5

4868-0000-2350.v2

I.     **INTERESTS OF *AMICI CURIAE***

Aimed Alliance is a 501(c)(3) not-for-profit health policy organization whose mission is to protect and enhance the rights of health care consumers and providers. Aimed Alliance advances policies to ensure that consumers, in consultation with their health care providers and loved ones, can make informed and individually appropriate decisions about their health care, and those decisions are not overridden by third parties, such as health insurers and their agents, or driven entirely by cost.

Aimed Alliance leads and participates in policy-focused coalition activities to advance its mission. Members of Aimed Alliance's policy coalition include health care consumers and professionals, more than 20 not-for-profit organizations, and 12 commercial supporters.[1] Aimed Alliance's organizational positions are established by its independent board of directors in accordance with its public-interest mission. The organization's principal place of business is in the District of Columbia.

Triage Cancer is a national, non-profit organization that provides free education on the legal and practical issues that may impact individuals diagnosed with cancer and their caregivers, through events, materials, and resources. Triage Cancer also continuously advocates for the health care, finances, insurance, employment, and consumer rights of those diagnosed with cancer and their caregivers.

The HIV + Hepatitis Policy Institute is a non-profit organization whose mission is to promote quality and affordable health care for people living with or at risk of HIV, hepatitis, and other serious and chronic health conditions. As part of its work, the HIV + Hepatitis Policy Institute

---

[1] Janssen Pharmaceuticals, Inc., an affiliate of the Plaintiff in this matter, is one of Aimed Alliance's commercial supporters. All of Aimed Alliance's commercial supporters are listed on the Aimed Alliance website.

monitors policies that impact the prevention and treatments of HIV, viral hepatitis, and other health conditions; communicates with members of their community and other patient groups on key policy issues that impact their access to health care; and educates policymakers about efforts to improve access to quality and affordable health care for people with or at risk of serious chronic health conditions.

The Coalition of State Rheumatology Organizations (CSRO) is a patient advocacy organization that aims to help rheumatologists protect their patients and their livelihoods. CSRO actively advocates at the state and federal levels, focusing on educating legislators, government officials, and the corporate community on the impact that policy and procedural changes have on a patient's quality of care and disease management.

The AIDS Institute is a national nonpartisan, non-profit organization that promotes action for social change through public policy, research, advocacy and education. Moreover, the AIDS Institute is considered a national leader dedicated to supporting and protecting health care access for patients living with HIV/AIDS, Hepatitis, and patients living with chronic diseases.

The National Oncology State Network (NOSN) is a non-profit action organization developed by state leaders collaborating on emerging state issues to strengthen cancer care and policy across the United States.  NOSN's policy priorities include addressing copay accumulators.

The Connecticut Oncology Association (CtOA) is a professional organization consisting of physicians and health care professionals devoted to the improvement of hematologic and oncologic care of patients. CtOA provides multidisciplinary expert input to governmental bodies, legislators, third-party payers, and others working as advocates for patient care issues.

4868-0000-2350.v2

Because, as described above, the mission of each of the above-described organizations is to promote and protect the rights of patients and health care consumers, they have a compelling interest in the subject matter of this lawsuit.

## II.    STANDARDS OF REVIEW

To survive a motion to dismiss, a complaint only needs to contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" and all reasonable inferences must be made in favor of the non-moving party. *Perez c. Express Scripts, Inc.* *2, 2020 WL 7654305 (Dec. 23, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Injured persons bringing claims under New York General Business Law ("GBL") Section 349 generally must show that the defendant's acts or practices are consumer-oriented and result in consumer injury or harm the public interest. *Himmelstein v. Matthew Bender & Co.*, 37 N.Y.3d 169, 177 (N.Y. 2021); *Ideal You Weight Loss Ctr., LLC v. Zillioux*, 174 A.D.3d 1473, 1475 (N.Y. App. Div. 2019). Consumer-oriented conduct does not need to be directed at *all* members of the public. *Plavin v. Group Health Inc.*, 2020 N.Y. Slip Op. 2025, 13 (N.Y. 2020).

## III.    STATEMENTS IN THE PUBLIC INTEREST

Aimed Alliance and its fellow Friends of the Court support the Plaintiff's Complaint and prayer for injunctive relief. The Court should deny SaveOnSP's Motion To Dismiss to enable this action to proceed. It is in the public interest for this action to proceed so that the extent and nature of SaveOnSP's alleged conduct may be litigated on its merits in a public forum.

The facts of this case as alleged in the Complaint demonstrate that SaveOnSP's conduct misleads insured consumers (including patients and the people who care for them) in ways that broadly influence their decisions and directly impact the amount they pay for their health care

needs. This misleading conduct harms consumers in a manner that constitutes actionable claims. The Friends of the Court submit this brief to highlight those harms to the Court, and do not address the arguments set forth in the Plaintiff's Opposition to SaveOnSP's Motion To Dismiss regarding harms to the Plaintiff.

If this case proceeds, Aimed Alliance and other patient advocates will undertake public awareness, consumer and professional education, and advocacy activities to disseminate the facts made public in this case and this Court's holding. In doing so, we will help the public to better understand their copay obligations and the manner in which they are impacted by SaveOnSP and companies like it that prey upon uninformed health care consumers. A potential favorable ruling on the merits will support other complaints for injunctive relief against SaveOnSP and similar companies, and promote the legislative and regulatory changes necessary nationally to protect consumers from SaveOnSP's conduct and the deceptive business practices of similar companies. Therefore, it is in the public interest for this Court to deny SaveOnSP's Motion To Dismiss.

A.    **SaveOnSP's Conduct Deceives, Influences, and Harms Consumers**

SaveOnSP's business model is premised upon disregarding limits set forth by the Patient Protection and Affordable Care Act and its implementing regulations ("ACA") on consumers' medication cost-sharing and annual out-of-pocket costs. (Complaint para. 3, 11, 59) Specifically, SaveOnSP designates a specialty medication as a "non-essential" health benefit. (Complaint para. 53, 58) It then claims that the medication is not subject to the ACA's essential health benefit (EHB) rules, including limits on consumers' annual out-of-pocket costs. (Complaint para. 54, 55) SaveOnSP then sets consumer copays for the medication to an amount equal to the full amount of copay assistance available through the manufacturer's copay assistance program (CAP).

4868-0000-2350.v2

(Complaint para. 55, 56, 58) SaveOnSP also refuses to count the medication copays toward the consumer's annual deductible and annual out-of-pocket costs. (Complaint para. 11) To coerce consumers into enrolling in its program, SaveOnSP tells consumers that their medication will not be covered unless they enroll in the SaveOnSP program. SaveOnSP tells consumer that if they do not enroll in its program, they will be responsible for paying potentially thousands of dollars to receive their medication. (Complaint para. 13,14, 63).

In promoting its model, SaveOnSP mischaracterizes federal law and regulations governing EHBs. (Complaint para. 58). Under the ACA, covered medications beyond the number of drugs covered by a benchmark plan are EHBs. (Complaint para. 59). Yet the Defendant states in its promotional materials that, due to a loophole in the ACA, drugs in excess of the benchmark number can be classified as non-essential health benefits. (Complaint para. 58). As Aimed Alliance previously explained in a letter to the federal government, when reading the U.S. Department of Health and Human Services (HHS) guidelines as a whole, this interpretation is inconsistent with how HHS intends for EHBs to be covered and defined by plans.[2] Moreover, this interpretation contradicts the intent of the ACA's essential benefits mandate and cap on annual out-of-pocket expenses, which, together, provide meaningful coverage, protect consumers from unaffordable health care costs, and ensure consumers are not bankrupted due to their medical needs.

---

[2] *See* Aimed Alliance & the Center for Health Law and Policy Innovation at Harvard Law School, *September 13, 2021 Letter to CCIIO*, https://aimedalliance.org/wp-content/uploads/2022/08/Letter-on-SaveonSP-ACA-Analysis.pdf.

4868-0000-2350.v2

Subsections 1 through 3 below establish that SaveOnSP's conduct misleads health care consumers in ways that broadly influence their decisions, and that this misleading conduct harms consumers by, among other things, pressuring them into signing up for SaveOnSP's program.

> **1.    SaveOnSP's Conduct Deceives Health Care Consumers**

As alleged in the Complaint, SaveOnSP's conduct deceives health care consumers by causing them to believe that their medication is not covered by insurance. SaveOnSP's conduct further deceives health care consumers by informing them that, under SaveOnSP's model, there will be no copay for their medication. SaveOnSP also deceptively omits to inform consumers that, under SaveOnSP's model, copay assistance is not counted toward the consumer's deductible or annual out-of-pocket limit.

> **a.    SaveOnSP Causes Pharmacies To Tell Consumers That Their Medications Are Not Covered By Insurance**

SaveOnSP causes pharmacies to reject consumers' attempts to obtain their prescription medications at their expected medication copay rate. (Complaint para. 13) The pharmacy tells the patient that the medication is not covered by insurance. (Complaint para. 13) As Aimed Alliance has previously reported, being denied access to a medically necessary treatment can be stressful for consumers and cause unnecessary stress and anxiety.[3] Under the ACA, prescription medications are EHBs to be covered by insurance. Even covered medications beyond the number of drugs covered by a benchmark plan are EHBs to be covered by insurance. (Complaint para. 59).

---

[3] *See generally* Aimed Alliance & Alliance for Patient Access, *The Dangers of Non-Medical Switching for Mental Health Patients* (May 2022).

4868-0000-2350.v2

Faced with higher costs, patients will oftentimes reduce or abandon necessary treatments and medications.

> **b.    SaveOnSP Informs Consumers That, Under Its Program, There Is No Copay**

After SaveOnSP causes the pharmacy to reject consumers' attempts to obtain their prescription medication at their expected copay rate, the pharmacy directs the patients to contact SaveOnSP to discuss the rejection. (Complaint para. 13) When SaveOnSP speaks with the consumer, it informs the consumer that the medically necessary medication will be available through its program with no copay. (Complaint para. 67) In reality, SaveOnSP sets consumer copays for the medication to an amount equal to the full amount of copay assistance available through the manufacturer's copay assistance program (CAP). (Complaint para. 55, 56, 58)

Despite SaveOnSP's contrary assertions to consumers, under its model, there is a large copay for medications. (Complaint para. 15, 67) SaveOnSP collects the copay from the manufacturer's CAP. (Complaint para. 15) Thus, SaveOnSP deceives health care consumers when it tells them that there is no copay under its program.

> **c.    SaveOnSP Does Not Disclose That, Under Its Program, Copay Assistance Is Not Counted Toward Consumers' Deductible Or Annual Out-Of-Pocket Limit**

In addition to deceiving consumers by informing them that their medically necessary medication will be available through its program with no copay, SaveOnSP also fails to inform consumers who expected copay assistance to count toward their cost-sharing requirements that, under its model, copay assistance does not count toward the consumer's deductible or annual out-of-pocket limit. Consumers expect prescription medications to be covered as an ACA EHB. They

4868-0000-2350.v2

expect the copays for those medications to apply toward their annual deductible and out-of-pocket limit. (Complaint para. 47) In fact, many privately insured individuals rely on CAPs to afford the costs of their medications as well as their overall health care. *See* Complaint paras. 44-47.

SaveOnSP's model entails high copays and does not apply copays toward consumers' deductibles or out-of-pocket limits. (Complaint para. 78, Motion to Dismiss pp. 8-9.) It, therefore, increases patients' out-of-pocket costs for their overall health care. Additionally, SaveOnSP's conduct can delay access to health care and cause consumers to forego medically necessary products and services.

When enrolling consumers, SaveOnSP entices consumers to participate in its program with assurances of medical and financial benefits (access to medication with no copay). Yet it fails to ensure that consumers who expected the copay assistance to count understand that it will not count toward their deductibles and out-of-pocket limits.

### d.    SaveOnSP Does Not Disclose That It Places Its Interests Before The Interests of Consumers

SaveOnSP tells consumers it is a patient-service hub center (*See* Aimed Alliance & CHLPI September, 13, 2021 Letter), yet it consistently places its interest before the health and safety of consumers by (1) failing to disclose to consumers how SaveOnSP may cause consumers to violate their contractual obligations with CAPs; (2) encouraging payers to limit options for consumers who do not want to enroll in the SaveOnSP program; (3) failing to disclose its financial interest in consumers enrolling in its program; and (4) proposing and implementing "solutions" that disregard consumers' needs for and reliance on copay assistance programs to afford their overall health care costs.

4868-0000-2350.v2

First, when SaveOnSP calls consumers to enroll them in its program, it does not disclose how enrolling in the SaveOnSP program could potentially violate consumers' contractual agreements with their CAP. (Complaint para. 65). As discussed below in section III.A.2, many consumers have difficulty with health literacy and fully understanding what their health plan does and does not cover. Consumers can be further confused when told they must enroll with a third-party company, such as SaveOnSP, to access their medications. This process alone is complicated for consumers to follow. For consumers then to be expected to consider and understand how SaveOnSP enrollment could implicate their contractual obligations – a complex legal matter—is unreasonable. (Complaint para. 65).

Even if consumers did know to ask about these potential contractual violations with their CAPs, for many, this process can be happening at a difficult time, when they are newly diagnosed with a health condition. They may be trying to understand and adjust to their health condition while simultaneously confronting administrative barriers to health insurance coverage and treatment access. SaveOnSP exploits this vulnerability by pressuring consumers to enroll in the SaveOnSP program without warning them of how this program could jeopardize the contract between consumers and their CAP. SaveOnSP's failure to inform consumers on how SaveOnSP may impact their contractual obligations with their CAP creates the potential for consumers to face legal ramifications for simply trying to access their medically necessary treatments.

Second, based on publicly available information, it is apparent that SaveOnSP expressly discourages payers from honoring consumers' rights to request exceptions to enrolling in its program. In a presentation to a health plan, SaveOnSP stated, "We have some clients with union populations … that feel strongly that they have to have the ability to override, and you should

9

know that you absolutely have that ability. We ask that you do so cautiously.… If members realize they can simply say 'no' and opt out, we are sort of defeating the purpose…."

Thus, while payers may wish to permit plan participants to opt out of SaveOnSP's program and remain subject to their plan's standard medication copay structure, SaveOnSP overtly discourages plans from allowing for exceptions. IPBC and SaveOnSP Training-20210216 19021-1, at 46:00-47:35, https://vimeo.com/513414094, cited in Complaint para. 9. This discouragement demonstrates SaveOnSP is not looking out for the best interest of consumers, but rather placing payers' and SaveOnSP's financial interests over the medical needs of consumers.

Third, SaveOnSP's failure to disclose its financial interest to consumers misleads consumers as to the intent of the SaveOnSP program. SaveOnSP identifies itself as a "patient service hub center Aimed Alliance & CHLPI September 13, 2021 Letter. While there are a variety of types of "hub centers," a patient service hub center is typically an intermediary that contracts with pharmaceutical manufacturers to provide services to consumers to ensure they can access their treatments and adhere to their treatment plans. *Id.* However, SaveOnSP does not attempt to ensure consumers stay on their treatment plans. SaveOnSP proposes and implements a payer cost-savings program that increases copays and exploits CAPs. In dealing with consumers, SaveOnSP simply attempts to ensure they are enrolled in a CAP. By failing to disclose that SaveOnSP has a financial interest in consumers enrolling in SaveOnSP's program, consumers are misled to believe that SaveOnSP is looking out for their best interests. (Complaint para. 68) By failing to inform consumers of its financial incentive, SaveOnSP deprives consumers of the information required to make a properly informed choice on whether to enroll in SaveOnSP's program.

4868-0000-2350.v2

Lastly, the Friends of the Court disagree with SaveOnSP's solution to its exploitation of CAPs – that pharmaceutical manufacturers should provide patients with *less* financial support (*i.e.*, copay assistance). (Motion to Dismiss p. 24) This suggestion further demonstrates SaveOnSP's disregard for consumers and their need to rely on copay assistance to access their medically necessary treatments.

Ultimately, SaveOnSP's consistent failure to disclose information vital to consumers' decision making demonstrates that SaveOnSP places its interests before those of consumers. SaveOnSP's statements and conduct demonstrate cold indifference toward the health needs and financial situations of consumers.

### 2. SaveOnSP's Conduct Broadly Influences Consumers' Decisions

SaveOnSP's conduct influences consumers' decisions to participate in its program. SaveOnSP's conduct also influences consumers medical and financial decisions. The decisions consumers must make as a result of SaveOnSP's conduct are highly consequential.

Consumers often face difficulties in understanding health insurance terms and plan language due to limitations in health literacy combined with the voluminous and complex nature of health insurance plan documents. For the average consumer who already has difficulty understanding health plan terminology and coverage, convoluted programs like SaveOnSP's are all the more difficult to understand and navigate.

### a. SaveOnSP Influences Consumers' Decisions To Participate In Its Programs

As discussed above in section III.A.3.a., SaveOnSP causes the pharmacy to tell consumers that their medication is not covered by insurance. (Complaint para. 13) SaveOnSP's conduct in

4868-0000-2350.v2

rejecting coverage of the medication is coercive, disregards the ACA and immediately influences consumers' health care decisions. In particular, SaveOnSP gives consumers the "option" of either enrolling in its program and paying $0 for their medication, or not enrolling and either paying an inflated copay that can reach thousands of dollars in some cases, or going without their medically necessary medication. (Complaint paras. 60-61) Worse yet, self-pay copayments will not count toward consumers' deductibles and annual out-of-pocket limits. (Complaint para. 60). Given that most consumers cannot bear the immediate financial burden of not enrolling in SaveOnSP's program, they are left with no other choice than to enroll. (Complaint para. 60).

In telling consumers that their medication is not covered by insurance, SaveOnSP (through the pharmacy) implies to consumers that their medication is not an ACA EHB. As such, consumers can assume that other ACA protections, such as the right to request an exception, are inapplicable to the medication. In other words, SaveOnSP leads consumers to believe that they have no recourse other than to do as SaveOnSP says if they want their medication.

As discussed above in section III.A.3.b., after pharmacy rejections, when SaveOnSP speaks with consumers, it informs the consumers that their medically necessary medication will be available through its program with no copay. As discussed above in section III.A.3.c., SaveOnSP simultaneously fails to disclose that copay assistance will not count toward their deductibles and out-of-pocket limits. It does not disclose the likely medical and financial detriments of participation. Finally, SaveOnSP does not disclose that it shares in the medication cost savings that it achieves for payers. This conduct deceives consumers into believing that SaveOnSP's program benevolently provides them access to their medically necessary medication with no strings attached.

4868-0000-2350.v2

b.    **SaveOnSP Influences Consumers' Medical And Financial Decisions**

After consumers have come to realize the medical and financial detriments of participating in SaveOnSP's program, they must make difficult medical and financial choices. When confronted with the reality that SaveOnSP refuses to count the value of medication copays toward the insured consumer's annual deductible and limit on out-of-pocket costs, consumers may have to make highly consequential decisions, such as which expenses to sacrifice in light of their increased health care costs, and how to go about foregoing necessary health care products and services and dealing with the adverse effects. In summary, SaveOnSP's conduct influences consumers' decisions to participate in its program. SaveOnSP's conduct also influences the high stakes medical and financial decisions consumers must make as a consequence of participating in its program.

3.    **SaveOnSP's Conduct Harms Consumers**

As discussed in above in section A.1.a. , SaveOnSP's conduct causes consumers harm by disregarding ACA and advising consumers their medications are not covered by insurance. SaveOnSP's conduct further harms consumers financially because it causes them to pay more for their health care. It also may cause them medical harm if their access to health care is delayed or they must forego necessary health care products and services due to increased costs.

a.    **SaveOnSP's Conduct Delays Health Care Access And Causes Consumers To Pay More For Their Health Care**

Under ACA patient protections, a manufacturer's copay assistance counts toward the consumer's annual health insurance deductible and out-of-pocket maximum. The consumer can satisfy the deductible earlier in the year than if copay assistance is excluded and only the

13

consumer's self-pay expenses count toward the deductible and out-of-pocket maximum. After meeting the deductible, the consumer can access other covered health care products and services with only a copay versus paying full price out of pocket.

As explained above in section III.A., SaveOnSP refuses to count the value of medication copays toward the insured consumer's deductible and limit on annual out-of-pocket costs. (Complaint para. 11) As a result, consumers who expect the copay assistance to count toward their deductible experience a "deductible surprise" when they realize the repercussions of participating in SaveOnSP's program. It takes longer for the consumer to pay off the annual deductible and access covered products and services with only a copay (as opposed to paying full price out of pocket).

SaveOnSP's conduct also increases the out-of-pocket costs that an insured consumer must pay per year for covered health care products and services.

### b.     SaveOnSP's Conduct Causes Consumers To Forego Health Care Products And Services

As explained above in section III.A., SaveOnSP refuses to count the value of medication copays toward the insured consumer's annual deductible and limit on out-of-pocket costs. (Complaint para. 11) As a result, some consumers cannot afford to pay their full health insurance deductibles. (Complaint para. 41) Most patients and caregivers who use copay assistance would have extreme difficulty affording treatments and medications if copay assistance did not count towards their deductibles and annual out-of-pocket limits. Individuals denied the essential health benefit protections of the ACA may have no choice but to forego medically necessary products and services. (Complaint para. 41) Going without medically necessary products and services is

associated with disease progression and poor health care outcomes, and can be fatal. (Complaint para. 42)

In summary, SaveOnSP's conduct harms consumers by creating financial distress, which may cause them to forego medically necessary products and services. These consumers who have no choice but to go without treatment may experience disease progression, poor health care outcomes, or death.

Section A.1. through A.3. above establish the plausibility of the Plaintiff's claim for injunctive relief. SaveOnSP's conduct misleads health care consumers in ways that broadly influence their decisions. This misleading conduct harms consumers medically and financially in highly consequential ways.

**B.       SaveOnSP's Conduct Has National Health Policy Implications**

Subsections 1 through 4 below describe the broad, national public health policy implications of SaveOnSP's conduct. This section provides reasons the Court should permit the GBL Section 349 claim to proceed and deny SaveOnSP's Motion To Dismiss.

**1.       SaveOnSP Mischaracterizes The Purposes Of CAPs**

SaveOnSP states that "JJHCS uses its copay assistance program CarePath to entice patients into starting Janssen specialty treatments." SaveOnSP Motion to Dismiss preliminary statement p. 1. This statement is inaccurate and improperly frames CAPs as programs that convince consumers to favor expensive name-brand specialty medications. In actuality CAPs are vital consumer safety net programs. CAPs ensure patients can afford their medications and are not forced to become non-adherent to their treatment plans due to financial cost.

15

Describing CAPs in the manner done by SaveOnSP ignores how consumers make decisions about their health with their health care providers. When a consumer begins to take a specialty medication, it is because their health care provider has prescribed the medication that will be most effective to treat the consumer's condition. Therefore, it is health care providers, not CarePath, who determine which treatments are appropriate for each patient. Moreover, from the perspective of health care providers, the interference that SaveOnSP alleges is created by CAP programs, is in fact, created by "copay accumulator" programs like SaveOnSP's. Health care providers have criticized how programs with copay accumulator features interfere with providers' independence and discretion in selecting the medically appropriate treatment for their patients, and impact treatment compliance when consumers have multiple co-occurring conditions, ultimately impacting how health care providers are able to treat their patients.

Thus, the existence of a CAP for a specialty medication cannot entice a patient to start a specialty medication, as that decision is made by the health care provider with the informed consent of the patient.

## 2. SaveOnSP Threatens Patients' Health Stability By Jeopardizing Their Ability To Rely On CAPs

CAPs help patients afford certain medically necessary treatments and meet their deductibles and annual out-of-pocket maximums. Given the steady rise in cost-sharing obligations, patients with chronic conditions increasingly rely on CAPs. Complaint paras. 44-46. When consumers are unable to afford their prescription drugs and other health care expenses, they may become nonadherent to their treatment plans. Non-adherence can include consumers stopping their treatments altogether, rationing medications by skipping doses, or limiting medication usage. This

can lead to poor health outcomes, including relapses in symptoms and hospitalization, which can increase overall health care costs. This is a major reason why CAPs have become so important to patients. Thus, it is essential for consumers to have access to CAPs to ensure financial costs do not impair a consumer's treatment compliance and health stability.

SaveOnSP jeopardizes the viability and sustainability of these important assistance programs by taking advantage of CAPs and exploiting the maximum amount of assistance available to patients. *See* Complaint paras. 8-9, 57, 114. If CAPs cannot be sustained in a way that provides patients who rely on them with meaningful assistance, then the health of these patients is ultimately at risk.

### 3. SaveOnSP's Program Threatens Patient And Public Health By Serving As A Roadmap For Eroding EHB Protections

SaveOnSP exploits what it calls a "loophole" in the ACA, and thus creates a precarious roadmap for how it and others could use similar reasonings to erode all EHB protections. *See* Complaint pp. 24-26 (explaining how SaveOnSP takes advantage of its purported loophole in the ACA). SaveOnSP sets a model for payers and their agents to set their own definition for an EHB and deprive consumers of the ACA's important protections. Without action to enjoin SaveOnSP's conduct, SaveOnSP and similar companies will apply this scheme to other types of EHBs. For example, SaveOnSP could likewise encourage health plans to adopt the benchmark with the least amount of services for "maternal and newborn care" and deem all additional services non-EHBs. This type of erosion is dangerous for many women who experience high-risk pregnancies and need more visits, tests, or ultrasounds than those provided in the benchmark plan. The large-scale ramifications of SaveOnSP's non-EHB scheme cannot be ignored. By permitting this action to

4868-0000-2350.v2

proceed and denying SaveOnSP's motion to dismiss, this Court can help ensure that SaveOnSP and similar programs are not empowered to continue to disregard patient protections throughout all 10 EHBs.

### 4. SaveOnSP Increases Overall Health Care Costs By Inflating The Cost of Prescription Medications

SaveOnSP increases overall health care costs by representing inaccurate amounts for drug pricing. SaveOnSP' inflates the cost of a prescription drug to the amount of copay assistance available, thereby artificially inflating the cost of prescription drugs to a higher amount than it may otherwise have been. (Complaint para. 3). The inflation of the cost of the medication based on the amount of copay assistance interferes with the broader health care marketplace, as the price of the medication is set by the copay assistance, not the actual price of the prescription drug negotiated by the pharmacy benefit manager and the drug manufacturer. Thus, by providing in accurate representations as to the cost of prescription drugs, consumers are placed in a more difficult position to understand health care costs, and how to have more active voices within the large health care affordability conversation.

## IV.     <u>CONCLUSION</u>

As discussed in the preceding Statement of Public Interest, the Plaintiff's claim for injunctive relief against SaveOnSP under GBL Section 349 is fully supported by the facts alleged in the Complaint. SaveOnSP's conduct misleads payers and health care consumers in ways that broadly influence their medical decision-making. This misleading conduct significantly harms consumers. Additionally, the broad, national public health policy implications of SaveOnSP's conduct necessitate adjudication in a public forum.

4868-0000-2350.v2

The Friends of the Court are confident that, if this claim proceeds, this Court will find that SaveOnSP's conduct is misleading and deceptive, and violates GBL Section 349. This outcome will enable Aimed Alliance and other patient advocates to undertake public awareness, consumer and professional education, and advocacy activities to disseminate this Court's holding, support other complaints against SaveOnSP and similar companies, and promote the legislative and regulatory changes necessary to protect consumers from SaveOnSP's conduct and the deceptive business practices of similar companies. For these reasons, it is in the public interest for this Court to deny SaveOnSP's Motion to Dismiss.

Respectfully submitted,

/s/ A. Ross Pearlson

Dated:  August 15, 2022                    A. Ross Pearlson

CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, NJ 07052
973-325-1500
rpearlson@csglaw.com

*Counsel for Amicus Curiae*
*Aimed Alliance*

19

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2022, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system.

CHIESA SHAHINIAN & GIANTOMASI PC
*Counsel for Amicus Curiae*
*Aimed Alliance*


By:＿＿*/s/ A. Ross Pearlson*＿＿
　　　A. ROSS PEARLSON

Dated: August 15, 2022

4868-0000-2350.v2