## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOHNSON & JOHNSON HEALTH CARE
SYSTEMS INC.,

                    Plaintiff,

         v.

SAVE ON SP, LLC,

                    Defendant.

Case No. 2:22-cv-02632-JMV-CLW
 *(Document electronically filed)*

*Oral Argument Requested*

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**GIBBONS P.C.**
E. Evans Wohlforth, Jr.
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500
ewohlforth@gibbonslaw.com

**SELENDY GAY ELSBERG PLLC**
David Elsberg *(admitted pro hac vice)*
Andrew R. Dunlap *(admitted pro hac vice)*
Meredith Nelson *(admitted pro hac vice)*
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
delsberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ..............................................................................................................2

I.      JJHCS Fails to Allege a "SaveOnSP Program" That Is Different from Plan Terms
        That It Does Not Challenge ............................................................................2

II.     ERISA § 514(a) Expressly Preempts JJHCS's Claims......................................3

        A.      JJHCS's Claims Are Impermissibly Connected with ERISA Plans.......................3

        B.      JJHCS's Claims Impermissibly "Reference" ERISA Plans ...................................6

III.    JJHCS Fails to State Claims for Deceptive Trade Practices................................7

IV.     JJHCS Fails to State Claims for Tortious Interference.....................................10

CONCLUSION.........................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1975 Salaried Retirement Plan for Eligible Emps. of Crucible, Inc. v. Nobers*,
  968 F.2d 401 (3d Cir. 1992)....................................................................................7

*AutoTrakk, LLC v. Auto. Leasing Specialists, Inc.*,
  2017 WL 2936730 (M.D. Pa. July 10, 2017)............................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................3

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
  3 N.Y.3d 200 (2004) ...............................................................................................8

*Blue Cross of Cal. Inc. v. Insys Therapeutics Inc.*,
  390 F. Supp. 3d 996 (D. Ariz. 2019) ......................................................................4

*Doe v. Princeton University*,
  30 F.4th 335 (3d Cir. 2022) .....................................................................................9

*Guzman v. Mel S. Harris & Assocs., LLC*,
  2018 WL 1665252 (S.D.N.Y. Mar. 22, 2018) .......................................................10

*Hozier v. Midwest Fasteners, Inc.*,
  908 F.2d 1155 (3d Cir. 1990)...................................................................................6

*In re JUUL Labs, Inc.*,
  497 F. Supp. 3d 552 (N.D. Cal. 2020) .....................................................................8

*M.V.B. Collision, Inc. v. Allstate Ins. Co.*,
  728 F. Supp. 2d 205 (E.D.N.Y. 2010) .....................................................................8

*Menkes v. Prudential Ins. Co. of Am.*,
  762 F.3d 285 (3rd Cir. 2014) ...............................................................................6, 7

*N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*,
  102 A.D.3d 5 (2d Dep't 2012) .................................................................................8

*In re Opioid Litig.*,
  2018 WL 3115100 (N.Y. Sup. Ct. June 18, 2018)...................................................8

*Pharm. Care Mgmt. Ass'n v. D.C.*,
  613 F.3d 179 (D.C. Cir. 2010) .................................................................................5

*Pharm. Care Mgmt. Ass'n v. Mulready*,
  2022 WL 1438659 (W.D. Okla. Apr. 4, 2022) ...................................................5

*Pharm. Care Mgmt. Ass'n v. Wehbi*,
  18 F.4th 956 (8th Cir. 2021) ...........................................................................5

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*,
  967 F.3d 218 (3d Cir. 2020) ..................................................................4, 6, 7

*Rozier v. Fin. Recovery Sys., Inc.*,
  2011 WL 2295116 (E.D.N.Y. June 7, 2011) ....................................................10

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
  141 S. Ct. 474 (2020) ...............................................................................4, 6

*Somerset Orthopedic Associates, P.A. v. Horizon Healthcare Servs. Inc.*,
  2020 WL 1983693 (D.N.J. Apr. 27, 2020) ........................................................6

*W. Chester Univ. Found. v. Metlife Ins. Co.*,
  2016 WL 2939508 (E.D. Pa. May 20, 2016) ....................................................10

**Statutes**

29 U.S.C. § 1022 ............................................................................................6

29 U.S.C. § 1024(b) .......................................................................................6

ERISA § 514(a) ..............................................................................................3

**Other Authorities**

Ctrs. for Medicare & Medicaid Servs., *Frequently Asked Questions on Essential
  Health Benefits Bulletin* (2012),
  https://www.cms.gov/CCIIO/Resources/Files/Downloads/ehb-faq-508.pdf ............6

## PRELIMINARY STATEMENT

JJHCS's[1] Opposition confirms that it has no viable claims.

As drug manufacturers like JJHCS have hiked the cost of their specialty drugs, sponsors of health benefit plans have fought back by adopting plan terms to take advantage of manufacturer copay assistance programs like CarePath. These terms: (1) reclassify some drugs as non-essential health benefits; (2) set higher copays for them; and (3) set plan benefits in which participants enrolled in copay assistance programs can get their drugs for free. SaveOn advises plans how to set these terms and helps implement them by encouraging participants to sign up for copay assistance.

Unable to sue the plan sponsors to change these terms, JJHCS seeks the same result by suing SaveOn. It hopes to prevent SaveOn and similar companies from advising plan sponsors to set these terms. It also knows that these terms only work as intended if participants sign up for copay assistance programs. If JJHCS can prevent SaveOn from encouraging participants to sign up for copay assistance, it can force sponsors to change the terms.

But JJHCS's distaste for these plan terms does not give it a viable cause of action. It accuses SaveOn of running an improper "SaveOnSP Program," but it does not explain what that program is apart from the plan terms that it does not (and cannot) challenge. Section I, *infra*. JJHCS's claims are squarely preempted by ERISA, which preempts state law causes of action that force plan sponsors to change plan terms, as JJHCS's claims would here. Section II, *infra*. JJHCS does not plead a viable GBL § 349 claim, because SaveOn does not directly cause JJHCS to pay more in copay assistance. JJHCS's injuries are both derivative of participants' higher copay responsibilities and are caused by those higher copays (set by plan sponsors) and by its own CarePath budget, not SaveOn's allegedly deceptive conduct. Section III, *infra*. And JJHCS does not plead viable tortious

---

[1] Unless otherwise indicated, defined terms have the same meaning as in JJHCS's Complaint.

interference claims, as it does not explain how participants breach their contracts with JJHCS by enrolling in the undefined "SaveOnSP Program" and it does not dispute that plan terms are not an "other offer" excluded by its contracts. Section IV, *infra*. JJHCS's claims should be dismissed.[2]

## ARGUMENT

## I.    JJHCS Fails to Allege a "SaveOnSP Program" That Is Different from Plan Terms That It Does Not Challenge

JJHCS bases its claims on allegations that SaveOn runs the "SaveOnSP Program." SaveOn explained how JJHCS's Complaint and the ESI Presentation (which JJHCS incorporates into its Complaint as "reveal[ing]" SaveOn's "modus operandi," Compl. ¶ 53) show that SaveOn does two things: (1) it advises health plan sponsors to set plan terms that maximize copay assistance; and (2) it implements that plan design by advising participants of plan benefits, helping them enroll in copay assistance, and monitoring participant pharmacy accounts. Mot. 5-6; *see also* Compl. ¶¶ 2, 6, 9-10, 12, 15, 17, 53, 57-58, 64, 71; Ex. 1 (ESI Presentation Tr.) at 6:8-14, 29:4-22, 30:7-25, 35:25-36:7. SaveOn showed that JJHCS has no viable claims based on this conduct.

In its Opposition, JJHCS says that the "SaveOnSP Program" consists of different conduct, but it does not explain what that conduct is, if not the conduct SaveOn described. JJHCS says that the "SaveOnSP Program" includes reclassifying drugs and increasing copays, Opp. 7—but it alleged that *plan sponsors* do these things, not SaveOn, Compl. ¶¶ 2, 3, 6. And JJHCS says that it is *not* trying to force plan sponsors to reclassify drugs or set different copays. *E.g.*, Opp. 16 ("JJHCS is not asking the Court to require ERISA plans to do anything.").[3] JJHCS cannot sue SaveOn over

---

[2] JJHCS asserts that SaveOn "admits" or "concedes" several allegations. *See, e.g.*, Opp. 1, 3, 4, 32, 36. It does not. SaveOn accepts JJHCS's well-pled allegations only for its motion to dismiss.

[3] JJHCS suggests that the Court should enjoin SaveOn from advising plans on setting plan terms. Opp. 15. But JJHCS's claims are based on SaveOn's communications with plan participants, not

plan terms that SaveOn does not control and JJHCS does not challenge.

JJHCS next says, circularly, that the "SaveOnSP Program" includes "coerc[ing] [participants] into enrolling in the SaveOnSP Program," Opp. 7-8—but it does not explain what that "program" is. Asserting that SaveOn runs a tortious and deceptive program, without alleging facts suggesting specific, actionable conduct, does not state a claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (court need not credit assertions of "illegal agreement" or "conspiracy").

JJHCS finally says that the "SaveOnSP Program" includes billing CarePath for "inflated" copays that do not reflect "the patient's true out-of-pocket responsibility," Opp. 8—but, again, it admits that plan sponsors set copays and patient responsibility, not SaveOn, Compl. ¶¶ 2, 3, 6, and it does not allege CarePath is billed a copay different from the one that the sponsor sets.[4]

JJHCS thus fails to allege a "SaveOnSP Program" that is different from the plan terms that it does not challenge. JJHCS cannot maintain claims based on an undefined "SaveOnSP Program" and its Complaint should be dismissed. *See AutoTrakk, LLC v. Auto. Leasing Specialists, Inc.*, 2017 WL 2936730, at \*6 (M.D. Pa. July 10, 2017) (dismissing trade secret claim for misappropriation of a "program" because plaintiff was "wholly unclear" about "what that program is").

## II.    ERISA § 514(a) Expressly Preempts JJHCS's Claims

### A.    JJHCS's Claims Are Impermissibly Connected with ERISA Plans

SaveOn showed that JJHCS's claims are impermissibly "connected with" ERISA plans because JJHCS seeks to compel and coerce plan sponsors to change plan terms and because its claims would interfere with SaveOn's implementation of those plan terms. Mot. 9-13.

---

SaveOn's advice to plans. Compl. ¶¶ 106-17. SaveOn explained that its advice complies with federal law, Mot. 6, and while JJHCS implies that SaveOn's advice violates the ACA, JJHCS does not base its claims on any such violations.

[4] JJHCS acknowledges that SaveOn is not the entity that bills it. Opp. 8.

JJHCS's attempts to avoid preemption fail. JJHCS first asserts that it and SaveOn are not ERISA entities. Opp. 12-14. But its claims "arise out of" and "directly affect the *relationship* among" such entities. *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 235-36 (3d Cir. 2020) (emphasis added).[5] They center on SaveOn's communications with participants on behalf of plan sponsors and would force ERISA plans to change how they classify drugs, set copays, and allocate copay responsibility, affecting both plans and participants. Mot. 9-13.[6]

JJHCS next asserts that its claims affect only the costs that plans pay for its drugs. Opp. 14-15 (citing *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S. Ct. 474 (2020)). In fact, JJHCS's claims affect how ERISA plans *allocate the costs* of those drugs among plans and participants. *See* Opp. 15 (admitting the "dispute presented here" is "over who should bear the cost of drugs" covered by health plans). Plan sponsors allocate costs through benefit design. Forcing them to change the portion of costs borne by participants requires them "to adopt a certain scheme of substantive coverage," which is squarely preempted. *E.g.*, *Rutledge*, 141 S. Ct. at 480.

JJHCS then says that it does not seek to enjoin ERISA plans. Opp. 16. But it seeks to enjoin SaveOn from advising plan sponsors about plan design, *id.* at 15—conduct that it says plays a "pivotal role in the adoption of [the plan terms at issue]," *id.* at 35. JJHCS also seeks damages that would put SaveOn (and similar companies) out of business, making it practically impossible for

---

[5] JJHCS suggests that the Third Circuit set out three "factors" or "prongs" for finding an impermissible "connection." Opp. 12. It did not. It recognized three *independent* "avenue[s] for [finding] an impermissible 'connection with' ERISA plans," *Plastic Surgery*, 967 F.3d at 235: directly affecting the relationship among traditional ERISA entities, interfering with plan administration, or undercutting ERISA's purpose, *id.*

[6] JJHCS's cited cases do not involve claims affecting the relationship between plan sponsors and participants. *Plastic Surgery*, 967 F.3d at 237 (out-of-network provider sued plan administrator for failure to pay for services); *Blue Cross of Cal. Inc. v. Insys Therapeutics Inc.*, 390 F. Supp. 3d 996, 1000-01 (D. Ariz. 2019) (insurer sued drug manufacturer for prescription kickback scheme).

plans to implement plan terms that maximize copay assistance and, in turn, forcing them to change their benefit designs. Mot. 12-13 (citing *Pharm. Care Mgmt. Ass'n v. D.C.* ("*PCMA*"), 613 F.3d 179 (D.C. Cir. 2010)). This would not indirectly affect the plans' bottom lines, *contra* Opp. 16; it would directly interfere with their benefits and the implementation of those terms.

JJHCS tries to distinguish *PCMA*, saying that the state law at issue there dictated which drugs pharmacy benefit managers ("PBMs") could provide, while its claims do not. Opp. 19-20. But that law forced plans to choose between (1) keeping preferred plan terms and administering them themselves; and (2) changing their plan terms—"in reality no choice at all." *PCMA*, 613 F.3d at 188. JJHCS's claims too would force plans to choose between (1) administering preferred terms (drug classifications, copays, etc.) themselves; and (2) changing their plan terms—a similarly illusory choice. Mot. 12-13.

JJHCS also suggests that ERISA does not preempt laws regulating "copay allocations." Opp. 16-17. But its cited cases deal with laws that affected the allocation of costs between PBMs and pharmacies. *See Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956 (8th Cir. 2021); *Pharm. Care Mgmt. Ass'n v. Mulready*, 2022 WL 1438659 (W.D. Okla. Apr. 4, 2022). Unlike JJHCS's claims, they did not force plan sponsors to change plan terms that allocate costs between plans and participants. *See Wehbi*, 18 F.4th at 968; *Mulready*, 2022 WL 1438659, at *4-5. Similarly, while JJHCS suggests that tortious interference claims are not preempted if they "would not force any changes to [an] underlying scheme of substantive coverage," Opp. 17-18 & n.6, none of the claims in its cited cases would have forced plan sponsors to change plan terms, as JJHCS's claims would here.[7]

---

[7] JJHCS admits that ERISA preempts state laws forcing plans to change their benefits, Opp. 18-19, but suggests that plans would not change their terms here because they already cover the drugs

Finally, JJHCS asserts that its claims support ERISA's purpose by "protect[ing]" participants from a scheme that would purportedly increase healthcare costs and make copay assistance cost prohibitive. Opp. 20. In fact, the ESI Presentation confirms that, under the relevant plan benefit, participants get their drugs for free, *see* Mot. 7, 24, and JJHCS does not explain how spending copay amounts within its budget plausibly could be "cost prohibitive."

### B.    JJHCS's Claims Impermissibly "Reference" ERISA Plans

SaveOn showed that JJHCS's claims "refer to" ERISA plans because calculating its alleged damages and determining SaveOn's liability under GBL § 349 requires interpreting ERISA plan terms. Mot. 13-15. JJHCS's arguments to the contrary fail.

JJHCS asserts that state law claims "refer to" ERISA plans only if they "act[] immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation." Opp. 21 (citing *Rutledge*, 141 S. Ct. at 481).[8] But ERISA *also* preempts state law claims "premised on" ERISA plans, including "where the court's inquiry must be directed to the plan" to "constr[ue]" or "interpret[] the plan's terms." *Plastic Surgery*, 967 F.3d at 230; *see also* Mot. 13-14 (citing *Somerset Orthopedic Associates, P.A. v. Horizon Healthcare Servs. Inc.*, 2020

---

at issue. *Id.* at 16. In fact, the plans would have to change terms relating to copays for those drugs. Mot. 11, 13. A plan sponsor would have to identify and review a benchmark plan, ensure the desired changes comply with applicable regulations, modify its summary plan document, and notify its participants and plan administrators of the changes. *See, e.g.*, Ctrs. for Medicare & Medicaid Servs., *Frequently Asked Questions on Essential Health Benefits Bulletin* (2012), https://www.cms.gov/CCIIO/Resources/Files/Downloads/ehb-faq-508.pdf (last visited Aug. 29, 2022) (providing guidance on how plans can comply with benchmark plan requirements and other regulations); 29 U.S.C. §§ 1022, 1024(b) (summary plan document requirements); *see generally Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155 (3d Cir. 1990) (detailing the formal requirements for amending plan terms, which is plan "administration").

[8] It is also irrelevant that the laws providing JJHCS's causes of action are not exclusive to ERISA, *contra* Opp. 21-22; otherwise, no common law claims could be preempted—but they can be, *see Plastic Surgery*, 967 F.3d at 230 n.15 (collecting cases); *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 295 n.9 (3rd Cir. 2014) (collecting cases).

WL 1983693 (D.N.J. Apr. 27, 2020)). Neither *Rutledge* nor JJHCS's other cited cases (Opp. 21-22) addressed, much less eliminated, this independent test for ERISA preemption.

JJHCS asserts that its alleged damages require only a "cursory examination" of the plans. Opp. 22. But it does not contest that it seeks the difference between its payments under the current plan design and under its preferred design, which requires comparing the two. Mot. 14; *see also* Opp. 25 (describing "damages" as "pay[ing] significantly more in copay assistance once Save-OnSP intervenes"). The Court cannot simply refer to an independent fee schedule, as in *Plastic Surgery*, 967 F.3d at 233-34. Because JJHCS's "calculation of damages would involve construction of ERISA plans," its claims are preempted. *1975 Salaried Retirement Plan for Eligible Emps. of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992).

JJHCS also says, in passing, that determining if alleged denials of coverage were deceptive under GBL § 349 does not require looking at the plans, as the plans indisputably covered the drugs. Opp. 22-23. But even if JJHCS sufficiently alleged that SaveOn arranged or conveyed such denials (it does not, Mot. 18-19), the Court would need to assess if SaveOn's communications comply with plan terms requiring pharmacies to pause the relevant claims and transfer the patients to SaveOn. *Id.* ERISA preempts such claims involving "the accuracy of statements … to plan participants in the course of administering the plans." *Menkes*, 762 F.3d at 295.

## III.    JJHCS Fails to State Claims for Deceptive Trade Practices

SaveOn showed that JJHCS cannot state a GBL § 349 claim for participants who enrolled in CarePath before SaveOn spoke with them. Mot. 16. JJHCS asserts that how many such participants exist is a factual dispute, Opp. 24-25, but it fails to state a claim for any such participants as a matter of law. JJHCS says the "crux" of its allegations is that SaveOn deceived participants into enrolling in the "SaveOnSP Program," not CarePath, *id.* at 25, but it does not explain what this

program is, Section I, *supra*. JJHCS also asserts that whether it would pay the same in copay assistance absent SaveOn's "deception" is a factual dispute, Opp. 25, but it admits that plan sponsors (not SaveOn) set copays, Compl. ¶¶ 2, 3, 6, which determine the amounts that JJHCS pays.

SaveOn also showed that a third-party payer of health care costs cannot bring a derivative GBL § 349 claim for amounts it pays on behalf of patients. Mot. 16-17 (citing *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 207 (2004)).[9] JJHCS insists that SaveOn injured it "directly" by making it pay more in copay assistance, Opp. 29-30, but JJHCS actually alleges that SaveOn advises plan sponsors to set higher copays, Compl. ¶¶ 8-10, and that *participants* pass the costs of those copays on to CarePath when they fill their prescriptions, *id.* ¶¶ 15-17. This is not "direct" injury. It is what JJHCS admits occurred in *Blue Cross*: "plaintiff's damages were literally the costs incurred and then passed on by consumers." Opp. 29.[10]

SaveOn next showed that its alleged deceptive conduct did not cause JJHCS to increase its CarePath payments; JJHCS's own CarePath budget and plan terms set by the plan sponsors did.

---

[9] JJHCS asserts it is "paradoxical[]" for SaveOn to argue that participants were not harmed and that JJHCS's injuries were not direct. Opp. 29. JJHCS confuses its allegations. It separately alleges that (1) SaveOn injured the *public* by causing participants stress, threatening the viability of copay assistance, and making participants' other healthcare more expensive, Compl. ¶¶ 113-14; and (2) SaveOn injured *JJHCS* by making it pay more in copay assistance, *id.* ¶ 115. JJHCS fails to sufficiently allege that SaveOn injured the public at all, Mot. 22-25, and it does not allege that SaveOn directly caused JJHCS's increased copay assistance payments.

[10] JJHCS's cited cases (Opp. 29-31) are inapposite. Two involved claims that plaintiffs were injured when other businesses convinced consumers not to use their services, even if the consumers were not injured. *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 17 (2d Dep't 2012); *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205, 217 (E.D.N.Y. 2010). The other two involved claims by government entities against businesses for costs associated with public health crises. The courts distinguished *Blue Cross* because (1) the entities were statutorily obligated to cover certain health care costs; and (2) the entities asserted claims for costs they bore directly (*e.g.*, costs of changing public-school health curriculum to warn teenagers of the dangers of vaping). *In re Opioid Litig.*, 2018 WL 3115100, at *4 (N.Y. Sup. Ct. June 18, 2018); *In re JUUL Labs, Inc.*, 497 F. Supp. 3d 552, 667-68 (N.D. Cal. 2020).

Mot. 17-18. JJHCS responds that SaveOn is at "the center of every act that is injuring JJHCS," including reclassifying drugs and increasing copays. Opp. 31. But JJHCS does not base its GBL § 349 claim on reclassifying drugs and increasing copays, Compl. ¶¶ 112-17; it admits that plan sponsors do those things, not SaveOn, *id.* ¶¶ 2, 3, 6; and it fails to explain how setting such plan terms is consumer-oriented conduct. JJHCS asserts that SaveOn "obscures" for participants the fact that they can enroll in CarePath without SaveOn's "meddling," Opp. 32. But it does not allege that any participant would have acted differently absent SaveOn's "deception"; to the contrary, it admits that once plans raise copays, participants will sign up for CarePath to cover those increased costs instead of paying them out of pocket. Compl. ¶ 14.

SaveOn further showed that JJHCS did not adequately allege that SaveOn's conduct deceived participants. Mot. 18-22. JJHCS asserts that whether SaveOn denies participants coverage or tells them they cannot get copay assistance without SaveOn are factual disputes, Opp. 25-27, but the documents that it incorporated into its Complaint show that these allegations are false, and the Court need not credit them, Mot. 18-20.[11] JJHCS also does not dispute (Opp. 27-28) that it failed to allege that any participant would have acted differently had she learned of SaveOn's fees or been told that enrolling in the "SaveOnSP Program" would purportedly breach her CarePath agreements. Mot. 20-21.

Finally, SaveOn showed that JJHCS's allegations of public harm fall short. Mot. 22-25. JJHCS says emotional harm is actionable, Opp. 33-34, but does not dispute that its cited documents

---

[11] JJHCS suggests that *Doe v. Princeton University*, 30 F.4th 335 (3d Cir. 2022), gives it license to mischaracterize documents incorporated into its Complaint. Opp. 5 n.3. It does not. *Doe* held that well-pled allegations that "contest[]" "the truth of facts" stated in a document prevail over the document. 30 F.4th at 342-43 (complaint contested accuracy of facts stated in Title IX investigation report). JJHCS does not contest the accuracy of the documents it attached; it misleadingly quotes them and asks the Court to ignore other statements contradicting its allegations.

simply do not show that SaveOn caused such harm (a drug manufacturer did), Mot. 22-24, and neither of its cited cases shows that stress about a speculative event is a cognizable injury.[12] JJHCS asserts a factual dispute over whether spending CarePath funds could financially imperil CarePath, Opp. 35, but it does not explain how spending amounts that it budgeted threatens CarePath's viability. And JJHCS fails to show that health plans changing their benefits (even if those changes cause participants to spend more on healthcare) is a cognizable public harm. Mot. 25.

## IV.    JJHCS Fails to State Claims for Tortious Interference

JJHCS alleged that SaveOn "induces patients to agree to CarePath's terms and conditions," causing them "to breach their contract with JJHCS every time they use CarePath funds while enrolled in the SaveOnSP Program." Compl. ¶ 109. SaveOn showed that inducing participants to sign up for CarePath is not tortious interference, because it occurs *before* participants enter CarePath contracts. Mot. 25-26. JJHCS does not dispute this. Instead, it says that SaveOn induces participants to breach after they enroll in CarePath by allegedly "causing a false inflated copay amount to be communicated to JJHCS" and "surreptitious[ly] pay[ing] patients' $5 or $10 responsibility." Opp. 36. But JJHCS does not allege that *SaveOn* did these things; the *plan sponsors* decide copay amounts and patient responsibility. Compl. ¶ 6. It does not explain how the copay set by the plan sponsors could be "false." JJHCS also did not plead that its tortious interference claim was based on this conduct, *cf. id.* ¶¶ 106-11, and it cannot amend its Complaint in its Opposition. *E.g.*, *W. Chester Univ. Found. v. Metlife Ins. Co.*, 2016 WL 2939508, at *2 (E.D. Pa. May 20, 2016). Nor does JJHCS explain how this conduct induced participants to fill their prescriptions and use

---

[12] *See Guzman v. Mel S. Harris & Assocs., LLC*, 2018 WL 1665252, at *12 (S.D.N.Y. Mar. 22, 2018) (defendant's use of false affidavits to obtain default judgments caused plaintiff so much stress that he quit his job and had trouble sleeping); *Rozier v. Fin. Recovery Sys., Inc.*, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011) (defendant's misleading debt collection letters caused plaintiff "humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment").

CarePath: the copay amounts were communicated to JJHCS (not to participants), and the payments came after participants filled their prescriptions, *cf.* Compl. ¶¶ 66, 73.

SaveOn also showed that JJHCS has no viable tortious interference claims for participants already enrolled in CarePath, as SaveOn could not induce them to sign up for that program after they had enrolled. Mot. 26-27. JJHCS now says that SaveOn induces participants to breach their contracts "by signing up with *SaveOnSP* while enrolled in CarePath and obtaining CarePath support." Opp. 37. JJHCS still fails to explain what the "SaveOnSP Program" is. Section I, *supra*. It did not plead that, and does not explain how, inducing participants to enroll in the "SaveOnSP Program" is tortious by itself. Compl. ¶ 109. And it does not explain how a participant's enrollment in the "SaveOnSP Program" causes its damages; JJHCS rather acknowledges that once a plan raises copays, participants will ask CarePath to cover those amounts, causing JJHCS to pay more— regardless of whether they are "enrolled" in the undefined "SaveOnSP Program." Compl. ¶ 14.

SaveOn further showed that participants did not breach the "other offer" condition of the CarePath contract, as neither advising plan sponsors nor implementing plan design is an "offer." Mot. 27-29. JJHCS does not dispute that those actions are not breaches. Opp. 39. Instead, it says that it bases its claims on SaveOn coercing participants to enroll in the "SaveOnSP Program." Opp. 37-40. Because JJHCS never explains what the "SaveOnSP Program" is, Section I, *supra*, it does not sufficiently allege that the "SaveOnSP Program" is an "offer." It says that SaveOn's materials and Brief describe the "SaveOnSP Program" as an offer, Opp. 38, but those documents describe *plan benefits*, Compl. ¶¶ 19, 90 ("your plan"); Mot. 3 ("health plans"); *see also* Ex. 1 at 3:25-4:1 (the program "is a change in … benefit design"), not a separate offer that SaveOn makes to plan participants—and JJHCS does not dispute that plan benefits are not "other offers," Mot. 27-28. JJHCS also says that whether plans cover participants' copays is a factual dispute, Opp. 39 n.20,

11

40, but JJHCS pled that plans pay those amounts, Compl. ¶ 73; *see also* Ex. 1 at 26:12-15.[13]

## **CONCLUSION**

The Court should grant SaveOn's motion and dismiss JJHCS's claims with prejudice.

Dated:    Newark, New Jersey                 Respectfully submitted,
          August 29, 2022

                                    By:    /s/ E. Evans Wohlforth, Jr.
                                           E. Evans Wohlforth, Jr.
                                           GIBBONS P.C.
                                           One Gateway Center
                                           Newark, NJ 07102-5310
                                           ewohlforth@gibbonslaw.com

                                           David Elsberg
                                           Andrew R. Dunlap
                                           Meredith Nelson
                                           SELENDY GAY ELSBERG PLLC
                                           1290 Avenue of the Americas
                                           New York, NY 10104
                                           Tel: 212-390-9000
                                           delsberg@selendygay.com
                                           adunlap@selendygay.com
                                           mnelson@selendygay.com

                                           *Attorneys for Defendant Save On SP, LLC*

---

[13] JJHCS disputes that New York law applies to the interpretation of its contracts with participants, Opp. 38 n.19, but it does not dispute SaveOn's contractual interpretation arguments.