# Exhibit 2

```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF NEW JERSEY
 2
     JOHNSON & JOHNSON HEALTH        .
 3   CARE SYSTEMS INC.,              .
                                     .  Case No. 22-CV-2632
 4        Plaintiff,                 .
                                     .  Newark, New Jersey
 5                 vs.               .  August 16, 2022
                                     .
 6   SAVE ON SP, LLC,                .
                                     .
 7        Defendant.                 .

 8                       TRANSCRIPT OF HEARING
 9             BEFORE THE HONORABLE CATHY L. WALDOR
                 UNITED STATES MAGISTRATE JUDGE
10
     APPEARANCES (the parties appeared via teleconference)
11
     For the Plaintiff:   JEFFREY J. GREENBAUM, ESQ.
12                        Sills Cummis & Gross PC
                          1 Riverfront Plaza
13                        Newark, NJ 07102
                          (973) 643-7000
14                        jgreenbaum@silliscummis.com

15                        KATHERINE M. LIEB, ESQ.
                          Sills Cummis & Gross PC
16                        1 Riverfront Plaza
                          Newark, NJ 07102
17                        (973) 643-7000
                          klieb@silliscummis.com
18

19

20
     Audio Operator:
21
     Transcription Service:   KING TRANSCRIPTION SERVICES, LLC
22                            3 South Corporate Drive, Suite 203
                              Riverdale, NJ 07457
23                            (973) 237-6080

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

Hearing
22-cv-2632, August 16, 2022

2

```
 1  (APPEARANCES continued)

 2  For the plaintiff:  HARMAN AVERY GROSSMAN, ESQ.
                        Assistant General Counsel
 3                      1 Johnson & Johnson Plaza
                        New Brunswick, NJ 08933
 4                      (732) 524-2559
                        hgrossman@jnj.com
 5
    For the Defendant   E. EVANS WOHLFORTH, JR, ESQ.
 6  Save On LLC:        Gibbons PC
                        1 Gateway Center
 7                      Newark, NJ 07102-5310
                        (973) 596-4879
 8                      ewohlforth@gibbonslaw.com

 9                      MICHAEL V. CARACAPPA, ESQ.
                        Gibbons PC
10                      1 Gateway Center
                        Newark, NJ 07102-5310
11                      (973) 596-4879
                        mcaracappa@gibbonslaw.com
12
                        DAVID ELSBERG, ESQ.
13                      Selendy Gay Elsberg PLLC
                        1290 Avenue of the Americas
14                      New York, NY 10104
                        (212) 390-9004
15                      delsberg@selendygay.com

16                      ANDREW R. DUNLAP, ESQ.
                        Selendy Gay Elsberg PLLC
17                      1290 Avenue of the Americas
                        New York, NY 10104
18                      (212) 390-9005
                        adunlap@selendygay.com
19
                        MEREDITH NELSON, ESQ.
20                      Selendy Gay Elsberg PLLC
                        1290 Avenue of the Americas
21                      New York, NY 10104
                        (212) 390-9069
22                      mnelson@selendygay.com

23

24

25
```

Hearing
22-cv-2632, August 16, 2022

3

1  (APPEARANCES continued)

2

   For the Aimed          ASHIRA VANTREES
3  Alliance               AIMED ALLIANCE
                          1455 Pennsylvania Avenue, NW,
4                         Suite 400
                          Washington, DC 20004
5                         (202) 349-4089

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                   (Commencement of proceedings)

2           THE COURT:  All right.  We're now on the

3    record 22-2632.  <u>Johnson & Johnson versus Save On and</u>

4    <u>others</u>.  Jeff -- Mr. Greenbaum, if you wouldn't mind,

5    could you enter plaintiff's appearances again, I'm

6    sorry.

7           MR. GREENBAUM:  Not a problem.  Good

8    morning, Your Honor.  Jeffrey J. Greenbaum and

9    Katherine Lieb of Sills Cummis and Gross for the

10   plaintiff, Johnson and Johnson Health Care Services

11   Inc.  Along with me today is Mr. Adeel Mangi of

12   Patterson Belknap Webb and Tyler LLP and Harmon Avery

13   Grossman, Assistant General Counsel of Johnson and

14   Johnson.  Mangi will be leading the discussion for the

15   plaintiff.

16          THE COURT:  Thank you.  Who's on for Save On

17   SP?

18          MR. WOHLFORTH:  Good morning, Your Honor.

19   This is Evans Wohlforth from the Gibbons Firm.  With

20   me is Michael Caracappa also from -- from our firm.

21   And from the Selendy, Gay and Elsberg firm, we have

22   David Elsberg, Andrew Dunlap and Meredith Nelson.  Mr.

23   Dunlap will be bearing the flag for defendants today.

24          THE COURT:  Okay.  And Aimed Alliance.

25          MS. VANTREES:  Hi.  My name is Ashira

```
 1   Vantrees and I'm legal counsel as Aimed Alliance.
 2            THE COURT:  Okay.  Anyone on from Chiesa?
 3            MR. GREENBAUM:  I think Mr. Pearlson had a
 4   conflict.  They just entered their appearance
 5   yesterday and he told me he has another --
 6            THE COURT:  Okay.
 7            MR. GREENBAUM:  -- appearance right now with
 8   a court -- another court.
 9            THE COURT:  I know somebody will advise him
10   of what occurred today and they'll be a transcript as
11   well.
12            So, why don't you, plaintiff, Mr. Mangi,
13   discuss with me what the problems, if any, that are
14   occurring in this case.
15            MR. MANGI:  Yes, Your Honor.  Good morning.
16   So Your Honor, what brings us here today is that as a
17   plaintiff, we have been seeking to hold a Rule 26(f)
18   conference with the defendant in order to get the
19   initial conferrals leading to discovery underway.
20            But the defendant has refused to hold an
21   Rule 26(f) conference.  So, that is the immediate
22   problem that brings us here today.
23            And with your permission, I can give you a
24   little bit of context on that dispute and set forth
25   why we think the Court should set a Rule 16 conference
```

1   date so that we can get promptly to a Rule 26(f)

2   conferral.

3           THE COURT:  Okay.  Go ahead.

4           MR. MANGI:  Thank you, Judge.  So, let me

5   start then, Your Honor, with -- with the background

6   here.  So, Johnson & Johnson Health Care Systems or --

7   or JJHCS, the plaintiff, filed this case on May 4th.

8   So, that's more than three months ago, now.

9           And this is an important case, Judge,

10  because it relates to patient assistance funds that

11  our client makes available to patients specifically to

12  help them afford their medications.  And this is a

13  program that relates to medications provided by the

14  Johnson & Johnson family of companies.

15          So, at core, what we have alleged here is

16  that these patient assistance funds which we make

17  available for patients are being unlawfully seized by

18  the defendant, Save On SP, through a scheme that we've

19  alleged constitutes deceptive trade practices and that

20  also tortiously interferes with the agreements we have

21  with patients that relate to those patient assistance

22  programs.  And we've alleged, you know, significant

23  ongoing harm both to patients and to Johnson & Johnson

24  Health Care Systems.

25          So, you know, promptly after Save On's

1    counsel appeared, we sought to hold a Rule 26(f)

2    conference.  And of course, as the Court knows under

3    Rule 26(f), that conference is supposed to occur as

4    soon as practicable, is the language of the Rule.

5         And so in this case, when you date from

6    defendant's first appearance, based on the interplay

7    of Rule 16 and Rule 26, the parties were obligated to

8    hold that Rule 26(f) conference no later than July 3rd

9    which would have then led to a Rule 16 conference by

10   July 24th.

11        Now, Save On notably did not file a motion

12   to stay discovery.  They still have not filed a motion

13   to stay discovery.  But they refused to hold the

14   conference as I indicated.

15        Let me also note just rounding out the

16   background there.  You know, despite our desire to --

17   to keep this case moving, we have, Judge, sought to

18   be, very reasonable on scheduling.  So, even after

19   Save On availed itself of the two week automatic

20   extension, we consented to another thirty day

21   extension because they wanted to file their motion to

22   dismiss.

23        And so where things stand now procedurally

24   is, that Save On filed a motion to dismiss on July

25   15th.  We filed our opposition to that yesterday.  And

8

1  under an agreed upon schedule, Save On's reply is

2  gonna be due on August 29th.  So -- so that briefing is

3  almost complete.

4        And as Your Honor saw from the docket, a

5  number of patient advocacy groups have also now filed

6  an *amicus* brief in support of our position that was

7  filed yesterday by a collection of different patient

8  groups that have an interest in this issue.

9        So, our position here, Judge, is really

10 quite straightforward.  We believe that discovery must

11 get underway now.  It's already been three months

12 since we filed.  And -- and certainly it should not

13 await the resolution of the motion to dismiss.

14        Now, we think that flows quite naturally

15 form the reading of the rules and the dates that come

16 from Rule 16 and Rule 26 as I laid out a moment ago.

17 And of course, as the Court well knows, there's --

18 there's no automatic stay of discovery generated by

19 the filing of a motion to dismiss.  The defendant

20 would need to show good cause and merely filing a

21 motion to dismiss doesn't do it.  And of course, you

22 know, motions to stay are disfavored in this district,

23 in particular.

24        I would suggest, Judge, that that alone

25 should be enough here.  That should be dispositive

Hearing
22-cv-2632, August 16, 2022
                                                                                        9

1    because there has been no application for a stay of

2    discovery.  So, absent that like in any other case,

3    the parties must promptly hold a Rule 26(f) conference

4    in compliance with the Rules.

5              On that point, the only thing we really

6    heard back from Save On is a citation to a local Rule

7    16.1.  And Save On contends that it's under no

8    obligation to hold a conference with us until and

9    unless the Court schedules a Rule 16 conference which

10   it suggests should not be scheduled until after the

11   motion to dismiss is decided.

12             So, in substance, what that comes down to

13   is, Save On arguing its filed a motion to dismiss so

14   therefore it's entitled to a stay of discovery.  And

15   of course, the law is -- is precisely the opposite.

16             So, you know, in terms of this motion,

17   obviously, you know, Your Honor, I understand will not

18   engage with the merits of that in any great detail

19   now.  But I'll -- I'll just flag a few quick points

20   about it.

21             The first is, you know, I have set out in

22   the brief we filed yesterday, Judge.  We believe that

23   motion is predicated largely on disputed issues of

24   fact that go well beyond our pleading.  That's just

25   not permissible.  And so we don't think that motion

1    even, frankly, gets out of the starting gate for that

2    reason.

3            And, you know, Save On has noted in its

4    letter to you that they have made an ERISA pre-emption

5    argument.  But frankly, we don't think that gets out

6    of the starting gate either.  Certainly it should not

7    play any role on this issue here.

8            And -- and fundamentally, the very short

9    version of that is ERISA preemption at core, is a

10   doctrine that's designed to ensure that when employees

11   are challenging health coverage decisions by their

12   employers, they must do so under the ERISA statutory

13   frame work which governs employee benefits.

14           But, you know, under the Third Circuit

15   precedent, drug manufacturers like us and defendants,

16   entities like Save On, neither side here is within the

17   bounds of ERISA preemption.  In fact, their program

18   isn't even limited to  employee provided health plans.

19   And the Supreme Court made clear just a couple of

20   years ago in -- in the Rutledge case that issues

21   relating to cost allocation aren't subject to ERISA

22   preemption in any event.

23           So, we don't think any of that really --

24   certainly doesn't ground any -- any basis to -- to

25   hold off further on discovery beyond the three months

1  we've already waited here.

2          And -- and let me also just add one other

3  point, Judge, which is there's some very significant

4  harmful conduct to patients that we have alleged here.

5  And you know, we've set out in detail in our complaint

6  how and why we think the scheme is particularly

7  pernicious.

8          And you know, just to give you one example,

9  you know, we've alleged that Save On is engineering a

10  false denial for patients' prescriptions at the

11  pharmacy in order to coerce them to sign up with its

12  program.  And you know, these are patients often

13  suffering from very serious conditions.

14          And then Save On is threatening them with

15  hugely inflated payment if they don't participate.

16  When it forces them into their scheme it's then

17  jacking up the amounts that it draws down from our

18  patient assistance programs intended for patients,

19  taking a twenty-five percent cut of that, undisclosed

20  to patients.  And generally imperiling the -- the

21  existence of these programs.

22          And -- and frankly, doing all of this in --

23  in a manner that we think runs fundamentally contrary

24  to all of the governing statutes in this area

25  including the Affordable Care Act.

Hearing
22-cv-2632, August 16, 2022

 1          So -- so, that -- that's the background

 2   here, Judge, and where this all comes from.  Let me

 3   make one final point.  Which is, you know, all that we

 4   are seeking at the moment is to have a Rule 26(f)

 5   conference.  And have that lead to a Rule 16

 6   conference.

 7          And you know, if Save On wants to make a --

 8   a motion to stay discovery, we haven't sought to

 9   preclude them from doing that.  We would oppose it.

10   but -- but they could seek that relief.  But what we

11   submit that they should not be allowed to do, is just

12   engage in self-help and pretend like, just because we

13   filed a motion to dismiss, you know, we don't have to

14   have a Rule 26(f) conference.

15          We served them with document requests at the

16   very outset.  And we're prepared to engage with them

17   immediately to -- to talk about, you know, the

18   protective order and ESI protocol and get that process

19   underway.  And we certainly think that should get

20   underway now.

21          And so, we're asking the Court to set a Rule

22   16 conference promptly and that will trigger Save On's

23   obligation to confer with us in advance.  And

24   hopefully then we can get this case promptly underway.

25          Unless Your Honor has questions, that is our

1  position.

2          THE COURT:  All right.  Thank you.  Evans --

3  I mean, Mr. Wohlforth, I thought you said Mr. Dunlap

4  would be speaking.

5          UNIDENTIFIED MALE:  Yes --

6          THE COURT:  Hello.

7          MR. DUNLAP:  This is -- this is Mr. Dunlap.

8  I am prepared to speak.

9          THE COURT:  Okay.  There's a glitch in the

10 phone.  I don't know what happened.  But go ahead.

11         MR. DUNLAP:  Thank you, Your Honor.  So,

12 this is Andrew Dunlap on behalf of Save On.  And just

13 at the outset, I'd like to correct what our friend on

14 the other side said about us potentially engaging in

15 self-help or not complying with the Rules.

16         Rule 16 allows local rules to modify the

17 general Federal Rules.  And the -- as Your Honor is

18 likely aware, Local Rule 16.1 in this district gives

19 you the discretion to schedule the Rule 16 conference

20 up until sixty days within the filing of an answer.

21 And even longer than that if there is a pending

22 motion.

23         And so, I'd like to just address why we

24 think the rule -- that you should not use your

25 discretion to schedule the conference now.  And then

1    talk a little bit about the procedure.

2            So, there are three basic reasons we don't

3    think discovery should go forward now.  The first is

4    that we do have a motion to dismiss on file that could

5    dispose of all of Johnson & Johnson's claims here.

6    And -- and critically, we are moving on basis that J&J

7    could not cure by amending.

8            So, just as background, Johnson & Johnson

9    set up this co-pay assistance program, CarePath, that

10   it says will cover up to $20,000 of co-pays that

11   commercial health plans require members to pay for

12   Johnson & Johnson specialty drugs.

13           What my client Save On does is it advises

14   those employers how to structure their plan terms so

15   that the plans can take full advantage of the funds

16   that J&J says that it's providing.

17           Now, J&J doesn't like these plan terms

18   because they result in J&J paying out more money in

19   co-pay assistance than it had been paying under prior

20   terms.  But that doesn't give J&J a cause of action

21   here.  And I don't want to go down too far into the

22   merits.

23           But there are -- there is a very strong

24   argument here that ERISA preempts substantially all of

25   J&J's claims.  The fact that J&J --

Hearing
22-cv-2632, August 16, 2022

15

1          THE COURT:  Yes, can you talk about that a

2    little bit.

3          MR. DUNLAP:  Sure.  So, the ERISA preemption

4    standard is not limited to employees.  It is limited

5    to state laws or it includes state laws, including

6    state law causes of actions that would operate or

7    force a change in the actual plans.

8          And the relief that J&J is seeking here

9    which includes injunctive relief, would essentially

10   force the plans that Save On advance -- advises to

11   change their plan terms to get rid of those provisions

12   that J&J doesn't like.

13         So, the way the plans work is, they

14   designate certain drugs as -- under the ACA that allow

15   them to then set co-pays at a certain level.  That set

16   co-pays at a high level.  They then say if members

17   sign up for co-pay assistance, that is if they enroll

18   in a program like CarePath, then after they have

19   exhausted all those funds, the plans will pay the

20   rest.

21         So, the members who sign up for Johnson &

22   Johnson's programs, under plans advised by Save On,

23   they wind up paying nothing for their specialty drugs.

24   All this talk that somehow patients are being harmed

25   here, is simply incorrect even based on the documents

1    that J&J cites in its own pleading.

2            What J&J is asking for here are changes that

3    would prevent the plans from implementing those plan

4    terms and hiring Save On to implement those plan

5    terms, forcing it then to go back to the old terms

6    that J&J wants.  That is squarely within what ERISA

7    preempts.

8            And if we're right about that, then

9    virtually all of Save -- J&J's claims go away except

10   for a very small piece that relate to non ERISA

11   plaintiffs.  And J&J can't plead around that.  They

12   cannot.

13           Another critical point here, Your Honor, is

14   that we don't believe that J&J has failed to plead

15   that Save On injured it.  It's alleged injury here is

16   that it is paying out more in co-pay assistance than

17   it wants to.

18           But the reason J&J is paying more in co-pay

19   assistance than it wants to is because of two factors.

20   One, it voluntarily sets a co-pay assistance program

21   where it budgets a certain amount of co-pay assistance

22   for patients who use its drugs.

23           And two, plans, health benefit plans, set

24   terms that allow them to draw down more of those funds

25   from the program that J&J set up.  Save On doesn't set

Hearing
22-cv-2632, August 16, 2022

1   these plan terms.  The plans do.

2         Save On advises the plans.  But the plans

3   are the ones that actually set what the plan terms are

4   and how the benefits work.  And Save On also doesn't

5   set J&J's co-pay assistance budget.  J&J does that.

6         If J&J wants to reduce how much it's paying

7   under its CarePath program, it could reduce that budge

8   tomorrow and bring its costs down.  This is not a

9   legally cognizable injury caused by Save On to J&J.

10  Which we think disposes of its other claims even

11  without ERISA preemption.

12        And again, this is not something that J&J

13  can plead around.  We believe our motion is very

14  likely to dispose of all of J&J's claims.  And at a

15  minimum, it could significantly reduce the scope of

16  those claims.  Which is why we don't believe it would

17  be appropriate for discovery to go forward until this

18  dispositive motion is resolved.

19        Now there are two other points I'd like to

20  make briefly, if I could.  Unless Your Honor has

21  questions about that -- that point.

22        THE COURT:  No.  I'm -- I'm good so far.

23  And I think I know what path I want to take.  But go

24  ahead.

25        MR. DUNLAP:  All right.  Well, there are two

Hearing
22-cv-2632, August 16, 2022

1    other points I'd like to make.  One is that waiting

2    until the motion is decided to advance discovery won't

3    prejudice J&J in anyway.  We're preserving relevant

4    documents.  There's no risk of any evidence being lost

5    here.

6                There's absolutely nothing in the case that

7    requires urgent discovery.  Save On's operations are

8    not new.  They've been in business for years before

9    J&J decided to sue it a few months ago.  This is not

10   some new conduct that requires an urgent

11   investigation.

12               While they're moving for injunctive relief,

13   they haven't moved for a TRO or for a preliminary

14   injunction that would require some sort of immediate

15   discovery.  They haven't articulated any financial

16   burden from waiting to have discovery til after the

17   motion is resolved.

18               And contrary to what they're saying, there's

19   no evidence that any patient is being de -- denied any

20   kind of required medication because of what Save On is

21   doing.  To the contrary, Save On helps patients get

22   those drugs at no cost because of how they advise the

23   plans that set up their terms.

24               THE COURT:  --

25                   (Simultaneous conversation)

1          MR. DUNLAP:  There's also no reason here --

2     yes, Your Honor.

3          THE COURT:  Where -- where does that --

4     plaintiff's allegation that -- that patients are being

5     deprived drugs come from them.  I'm not --

6          MR. DUNLAP:  We don't believe that it's

7     consistent with any of the documents that they attach

8     to their complaints.

9          THE COURT:  Okay.

10         MR. DUNLAP:  If you look at their complaint,

11    Your Honor, it's -- it's based largely on and cites to

12    a presentation --

13         THE COURT:  Right.

14         MR. DUNLAP:  -- that a company called

15    Express Scripts gave to a potential client, to a

16    potential health plan.  Not a presentation given --

17    given by Save On.

18         But in that program, the Express Scripts

19    employee describes generally how the program works.

20    And that -- that program makes clear -- that

21    presentation makes clear that if the patient enrolls

22    in a program like CarePath, then it consents to

23    monitoring of that account by the plan, then the plans

24    will provide the drugs at no cost to the patients.

25         And you heard our friend on the other side

20

1  talk about engineering false denials of coverage.  But

2  if you look at the actual cited materials, and we do

3  go into this in the motion to dismiss papers.  That's

4  not accurate.

5          What it says is, if someone goes to a

6  pharmacy, and these are online pharmacies, by and

7  large, who is not enrolled in a CarePath like program

8  and says I want to buy this drug.  The plans, again,

9  not Save On, but the plan is structured to say, wait a

10  minute, before you buy this drug, because you have

11  this high co-pay, please call Save On and they will

12  walk you through what the plan terms are.

13          At that point, Save On explains to them if

14  they sign up for the program, and they consent to

15  monitoring, then they get the drug for free.  If they

16  don't, they can still sign up for the program, but

17  they will be responsible for the co-pays.  And vir --

18  I think everyone, as far as I know, then signs up for

19  the co-pay assistance program like CarePath and gets

20  their drug for free.

21          So, that's what the presentation says.

22  There's absolutely nothing in there that says that

23  patients are being denied coverage.  Or -- or being --

24  of their drugs, ultimately.  Or being denied access to

25  their drugs or being charged large amounts for their

Hearing
22-cv-2632, August 16, 2022

1    drugs.  To the contrary, the whole program is designed

2    to reduce and eliminate cost to the patient so they

3    can get these drugs.

4              The problem J&J has with this is that they

5    wind up spending more money.  Not that the patients

6    wind up spending more money or are being denied their

7    drugs.

8              THE COURT:  Okay.

9              MR. DUNLAP:  But there -- there's two

10   additional questions.  So, I made the point that we

11   don't think there's any reason to think a brief pause

12   here to let the Court resolve the motion to dismiss

13   would be overly long.

14             As my friend on the other side said, we've

15   agreed to a very brisk briefing schedule.  We got

16   their opposition yesterday --

17                  (Simultaneous conversation)

18             THE COURT:  That doesn't --

19             MR. DUNLAP:  -- we'll be replying --

20             THE COURT:  -- effect the date of -- of --

21   that doesn't effect the date of decision.

22             MR. DUNLAP:  That's right, Your Honor.  I

23   was just saying that there are two parts to it.

24   There's how long it takes the briefing to go in, which

25   is happening very quickly.  And then the second part

1  is, you say how long it will take --

2         THE COURT:  Right.

3         MR. DUNLAP:  -- the Court to resolve the

4  motion.  And we're not aware of anything that we

5  believe would take an extra ordinarily long time here.

6  So, we don't think there's any harm that they've

7  articulated for waiting for the Court to rule on the

8  motion.

9         And then the -- the last substantive point

10 is that ordering the early discovery that J&J seeks

11 here we think would be a big waste of resources.  So,

12 to be clear, J&J is going after Save On hammer and

13 tongs in this case.  It's not just suing for damages.

14 As I said, it wants to enjoin Save On from operating.

15 It's asked a slew of trade groups to come in as *amici*

16 on the motion to dismiss.

17        And we know that the discovery is going to

18 be asking for here is going to be wide-ranging and

19 aggressive.  And we know that because they sent us

20 purported requests the same day it served its

21 complaint.  They served forty-two requests.  Most of

22 which are just blunder busts.

23        They want everything that Save On has

24 concerning CarePath or anyone enrolled in it.  All

25 documents concerning Save On's relationships with

Hearing
22-cv-2632, August 16, 2022

23

1  various third parties.  Anything Save On used to

2  promote its services.  Anything we exchange with any

3  clients about its services.  And that's thousands of

4  clients.

5          And they want reams of data for every

6  participant of every plan that Save On advised who

7  signed up for co-pay assistance.  And we're talking

8  about hundreds of thousands of patients going back to

9  2017.

10         This is a massive amount of information.

11 And we submit that it wouldn't be appropriate to let

12 Johnson & Johnson go off on this type of fishing

13 expedition which would inevitably lead to hard thought

14 discovery disputes, draining party resources, tying up

15 Your Honor with protracted motion practice.  When

16 Johnson & Johnson's claims very well may not survive

17 the pending motion to dismiss.

18         And just finally, briefly, procedurally,

19 we're glad to proceed however Your Honor wants, of

20 course.  But we think the best way to prevent this

21 premature discovery is simply to hold off on

22 scheduling the Rule 16 conference.

23         You have the discretion to schedule it when

24 you think best.  Johnson & Johnson wants you to

25 schedule it now which would then put the burden on us

1    to try to then move to say, discovery.  But we don't

2    think that's proper because Johnson & Johnson has

3    failed to show any reason why you should use your

4    discretion to schedule the conference now.

5          And we also think it's inefficient.  You can

6    avoid motion practice simply by waiting to schedule

7    the conference until there's a ruling on the pending

8    motion.  So, we think that's the most efficient path

9    forward and ask you not to schedule the Rule 16

10   conference at this time.

11         THE COURT:  Okay.  Let me tell you that --

12   and -- and I think at least local counsel is very

13   aware that our motion lists are extremely backed up.

14   So, my considerations are in a much more practical

15   sense rather than the wait or lack of wait with

16   respect to prejudice to the plaintiff.  Is to whether

17   or not potentially in a year or eighteen months, how

18   much time do I lose in discovery.

19         Because I think this is a case of public

20   interest, I'm -- I understand the Local Rule 16.1

21   gives me some amount of discretion.  I would prefer to

22   have briefing on the docket with respect to a stay.

23         So, I'd ask that defense prepare a motion to

24   stay obviously including the arguments today and any

25   further argument so that the docket recognizes that

1  there's a motion to stay and that I have all the

2  information I need.  If in fact, I need oral argument

3  on that, I will schedule it.

4          We can meet and confer and have your own

5  briefing schedule on that.

6          MR. MANGI:  Your Honor, Adeel Mangi for the

7  plaintiff.  Could we request, Your Honor, that the

8  Court set a date in the very near future, say a week

9  from now for that motion to be on file?

10          THE COURT:  You mean for the defense to file

11  a motion to stay?

12          MR. MANGI:  Yes, Your Honor, so we can get

13  that, you know, filed and resolved promptly.

14          THE COURT:  Yeah -- no.  I'm not -- I'm not

15  gonna do that.  I'm -- the parties are gonna meet and

16  confer and draft a schedule and get it to me by the

17  end of the week.  I don't -- I hope that defense isn't

18  going to engage in some kind of delayed briefing

19  schedule on that in good faith.  Understand?

20          MR. DUNLAP:  Yes, Your Honor, it's Andrew

21  Dunlap.

22          THE COURT:  Yes.

23          MR. DUNLAP:  I -- I can tell you we will

24  absolutely not delay -- we will want to take account

25  of the fact that we are briefing our substantive reply

 1  motion over the next two weeks.  But we're glad to get

 2  a motion to Your Honor as quickly as we can after

 3  that, if that works.

 4          THE COURT:  Yeah.  I'm gonna let you meet

 5  and confer on a schedule.  But as I said, don't --

 6  don't -- don't string this out just for the sake of

 7  stringing it out because I will obviously know that.

 8          MR. DUNLAP:  Understood, Your Honor.

 9          MR. GREENBAUM:  Your Honor, this is Jeff

10  Greenbaum.  Could Your Honor set a -- an outside date

11  for the Rule 16 conference so we know what -- what

12  they're seeking to stay because without that, there's

13  -- there's no like, guidance out there as to what is

14  being stayed.

15          THE COURT:  What do you mean, Jeff?  I'm --

16  I'm not --

17              (Simultaneous conversation)

18          MR. GREENBAUM:  In other words --

19          THE COURT:  -- if I set a date for a Rule 16

20  and there's a motion to stay, I'll have to decide the

21  motion to stay -- to stay prior to the Rule 16

22  conference.

23          MR. GREENBAUM:  Correct.  I -- I -- I was --

24  just thought -- thought that might be a way of setting

25  it up.

1          THE COURT:  No, I'm gonna keep tight track

2  of this.  I'm gonna notice every mo -- movement.

3          MR. GREENBAUM:  Okay.

4          THE COURT:  So, nobody will be

5  disadvantaged.  But I just want all the parties to

6  know, and I know you already know this.  That motions

7  are not moving as quickly as you anticipate.  So, that

8  -- that's gonna weigh very heavily on me.  I don't

9  want to get into a case that's two years old and start

10  discovery then.

11          If there's an interim solution that you can

12  work out, I encourage you to discuss that a well.

13  Perhaps, limited discovery.  That's a suggestion.

14  It's not an order.  Other than that, I'll consider the

15  motion to stay when it's fully briefed.  All right

16  folks.

17          MR. DUNLAP:  Thank you, Judge.

18          MR. GREENBAUM:  All right.  Thank you.

19          MR. WOHLFORTH:  Thank you very much, Your

20  Honor.

21          MR. MANGI:  Thank you, Your Honor.

22          THE COURT:  Thank you.  Bye, bye.

23          MR. DUNLAP:  Bye, bye.

24          (Conclusion of proceedings)

25

Hearing
22-cv-2632, August 16, 2022

28

1                          <u>Certification</u>

2          I, Eileen M. Zakrzewski, Transcriptionist, do hereby

3    certify that the 27 pages contained herein constitute a

4    full, true, and accurate transcript from the official

5    electronic recording of the proceedings had in the above-

6    entitled matter; that research was performed on the

7    spelling of proper names and utilizing the information

8    provided, but that in many cases the spellings were

9    educated guesses; that the transcript was prepared by me

10   or under my direction and was done to the best of my

11   skill and ability.

12         I further certify that I am in no way related to any

13   of the parties hereto nor am I in any way interested in

14   the outcome hereof.

15

16   <u>/s/Eileen M. Zakrzewski</u>            <u>August 31, 2022</u>
     Signature of Approved Transcriber       Date
17
     KING TRANSCRIPTION SERVICES, LLC
18   3 South Corporate Drive, Suite 203
     Riverdale, NJ 07457
19   (973)237-6080

20

21

22

23

24

25