## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Case No. 2:22-cv-02632-JMV-CLW <br><br> *(Document electronically filed)* |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF AIMED ALLIANCE, TRIAGE CANCER, THE HIV AND HEPATITIS POLICY INSTITUTE, THE COALITION OF STATE RHEUMATOLOGY ORGANIZATIONS, THE AIDS INSTITUTE, THE NATIONAL ONCOLOGY STATE NETWORK, AND THE CONNECTICUT ONCOLOGY ASSOCIATION AND MOTION OF PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA FOR LEAVE TO FILE *AMICUS CURIAE* BRIEFS**

**GIBBONS P.C.**
E. Evans Wohlforth, Jr.
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500
ewohlforth@gibbonslaw.com

**SELENDY GAY ELSBERG PLLC**
David Elsberg *(admitted pro hac vice)*
Andrew R. Dunlap *(admitted pro hac vice)*
Meredith Nelson *(admitted pro hac vice)*
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
delsberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .......................................................................................................................3

    I.       Movants Are Too Partial to Serve as Amici ..................................................3

    II.      Movants Do Not Have a "Special Interest" in this Case .................................8

    III.     Movants' Briefs Reiterate Arguments Already Made by JJHCS .....................10

    IV.     JJHCS Has Already Competently Represented Movants' Interests in the Litigation ......................................................................................................12

CONCLUSION ....................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abu-Jamal v. Horn*,
  2000 WL 1100784 (E.D. Pa. Aug. 7, 2000) ............................................................................13

*Acra Turf Club, LLC v. Zanzuccki*,
  2014 WL 5465870 (D.N.J. Oct. 28, 2014)..............................................................................10

*Bernard v. Cosby*,
  2022 WL 3273877 (D.N.J. Aug. 11, 2022) ..............................................................................3

*Bernstein v. Township of Freehold*,
  2008 WL 11510751 (D.N.J. Jan. 4, 2008) ................................................................................9

*Dobson Mills Apartments, L.P. v. City of Philadelphia*,
  2022 WL 558348 (E.D. Pa. Feb. 23, 2022) ..............................................................................8

*Dwelling Place Network v. Murphy*,
  2020 WL 3056305 (D.N.J. June 9, 2020).......................................................................3, 8, 9

*Fharmacy Recs. v. Nassar*,
  465 F. App'x 448 (6th Cir. 2012) ............................................................................................7

*Granillo v. FCA US LLC*,
  2018 WL 4676057 (D.N.J. Sept. 28, 2018) ..................................................................... passim

*Kennedy v. Connecticut Gen. Life Ins. Co.*,
  924 F.2d 698 (7th Cir. 1991) ...................................................................................................2

*Leigh v. Engle*,
  535 F. Supp. 418 (N.D. Ill. 1982) ............................................................................................8

*Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*,
  149 F.R.D. 65 (D.N.J 1993).................................................................................................6, 8

*Mayer v. Belichick*,
  605 F.3d 223 (3d Cir. 2010)...................................................................................................12

*McVicker v. King*,
  2009 WL 10674503 (W.D. Pa. Apr. 30, 2009)......................................................................12

*N. Cypress Med. Ctr. Operating Co., v. Cigna Healthcare*,
  952 F.3d 708 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1053 (2021)..........................................2

*N.J. Prot. & Advoc., Inc. v. Twp. of Riverside*,
  2006 WL 2226332 (D.N.J. Aug. 2, 2006) ........................................................10, 12

*Nat'l Org. for Women, Inc. v. Scheidler*,
  223 F.3d 615 (7th Cir. 2000) ...............................................................................6

*Neonatology Assocs., P.A. v. Comm'r*,
  293 F.3d 128 (3d Cir. 2002)............................................................................3, 8

*Pfizer, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
  42 F.4th 67 (2d Cir. 2022) ..................................................................................1

*Pro. Drug Co. Inc. v. Wyeth Inc.*,
  2012 WL 4794587 (D.N.J. Oct. 3, 2012)................................................... *passim*

*Ryan v. Commodity Futures Trading Comm'n*,
  125 F.3d 1062 (7th Cir. 1997) ............................................................................6

*Smith v. Chrysler Fin. Co.*,
  2003 WL 328719 (D.N.J. Jan. 15, 2003) ...........................................................12

*United States v. Alkaabi*,
  223 F. Supp.2d 583 (D.N.J. 2002) ......................................................................3

*United States v. Bayer Corp.*,
  2014 WL 12625934 (D.N.J. Oct. 23, 2014)......................................................10

### Other Authorities

Fed. R. App. P. 29................................................................................................7, 8

Defendant Save On SP, LLC ("SaveOn") filed its motion to dismiss the above-captioned action under Federal Rule of Civil Procedure 12(b)(6) on July 15, 2022. ECF No. 31.[1] On August 15—the same day that Plaintiff Johnson & Johnson Health Care Systems Inc. ("JJHCS") filed its opposition to that motion, ECF No. 34—Aimed Alliance and several other organizations (the "Aimed Alliance Group") filed a motion for leave to file an amicus curiae brief in support of JJHCS's opposition. ECF No. 35. On August 18, Pharmaceutical Research and Manufacturers of America ("PhRMA," and, collectively with the Aimed Alliance Group, "Movants") also filed a motion for leave to file an amicus curiae brief in support of JJHCS's opposition. ECF No. 38. SaveOn respectfully files this memorandum of law in opposition to those motions.

## PRELIMINARY STATEMENT

As drug manufacturers like JJHCS have hiked the prices of their specialty drugs, they have rolled out "copay assistance" programs—like JJHCS's CarePath program—for the purported purpose of helping patients afford those drugs. In reality, by reducing or eliminating the amounts that patients have to pay for those drugs under the terms of their health plans, the programs are designed to encourage patients to use the sponsoring manufacturer's specialty drug instead of a competitor's drug. The Department of Health and Human Services ("HHS") has opined that copay assistance programs are *illegal* under the Anti-Kickback Statute when applied to federal healthcare programs—an opinion the Second Circuit recently upheld. *Pfizer, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 42 F.4th 67, 69 (2d Cir. 2022).

Some employers who sponsor the commercial health plans that bear most of these price increases have sought to manage their costs by taking full advantage of drug manufacturers' copay assistance programs. In short, these plans sponsors set plan benefits to (1) reclassify some drugs

---

[1] Unless otherwise indicated, docket citations refer to filings in the above-captioned action.

as "non-essential health benefits" consistent with the Affordable Care Act (the "ACA"); (2) set higher copays for those drugs; and (3) for plan participants who enroll in copay assistance programs and consent to SaveOn monitoring their pharmacy accounts, pay any amounts that are not covered by copay assistance. *See* Def.'s Br. Supp. Mot. Dismiss ("SaveOn Mot."), ECF No. 31-1, at 5-7. In doing so, the plan sponsors act fully within their authority to amend their plan terms to combat the drugmakers' copay assistance schemes. *Cf. Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 702 (7th Cir. 1991) (holding insurer acted within its discretion under ERISA in enforcing plan terms intended to prevent providers from waiving copays due from patients); *N. Cypress Med. Ctr. Operating Co., v. Cigna Healthcare*, 952 F.3d 708, 717 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1053 (2021) (same).

Recently, drug manufacturers—with Movants' help—have targeted companies like SaveOn that advise plans on setting these types of plan terms and help implement them. In 2021, Aimed Alliance filed two separate letters with several government agencies requesting that they investigate and act against SaveOn (none have done so). In early 2022, Aimed Alliance attacked SaveOn in public statements and presentations. In May 2022, JJHCS sued SaveOn, seeking an injunction and damages that would put it out of business, forcing plan sponsors to change plan terms that JJHCS and other drug makers do not like. Movants now seek to appear as amici before this Court to further advocate against SaveOn and plan terms that take advantage of copay assistance programs.

The Court should deny Movants' motions. *First*, Movants' deep financial and business ties to JJHCS and its affiliates make them extremely partial to JJHCS, well past the point where they would be genuine amici. *See infra*, Section I. *Second*, Movants' generalized interest in shutting down plan terms that take advantage of copay assistance is not specific to the case before the Court

2

and so does not support amicus status. *See infra*, Section II. *Third*, Movants' proposed briefs do little more than repeat points that JJHCS has already made and so would not help the Court resolve SaveOn's motion to dismiss. *See infra*, Section III. *Finally*, Movants' interest in promoting copay assistance programs and dismantling companies like SaveOn is already fully represented by JJHCS and its counsel. *See infra*, Section IV.

## ARGUMENT

"Whether to grant amicus status is within the broad discretion of the district court," but, "at the district court level, the aid of amicus curiae may be less appropriate than at the appellate level." *Granillo v. FCA US LLC*, 2018 WL 4676057, at *4 (D.N.J. Sept. 28, 2018) (citations and quotations omitted). District courts, guided by the Third Circuit's application of Federal Rule of Appellate Procedure ("FRAP") 29, consider whether the proposed amicus: (1) is partial to a particular outcome in the case; (2) has a "special interest" in the case; (3) provides information that is "timely and useful"; and (4) has an interest that is not competently represented by the parties' counsel. *Granillo*, 2018 WL 4676057, at *4; *see also Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 131 (3d Cir. 2002) (a motion for leave should be denied if the movant does not meet the requirements of "adequate interest," "desirability," and "relevance").

### I.    Movants Are Too Partial to Serve as Amici

While amici need not be impartial, the nature and extent of their partiality is "an appropriate consideration for the court with regard to the appearance of an amicus curiae." *Pro. Drug Co. Inc. v. Wyeth Inc.*, 2012 WL 4794587, at *2 (D.N.J. Oct. 3, 2012); *accord Dwelling Place Network v. Murphy*, 2020 WL 3056305, at *3 (D.N.J. June 9, 2020) ("[T]he partiality of an amicus is a factor to be considered by a court in deciding whether to allow participation…." (quoting *United States v. Alkaabi*, 223 F. Supp.2d 583, 592 (D.N.J. 2002))); *Bernard v. Cosby*, 2022 WL 3273877, at *1 (D.N.J. Aug. 11, 2022) (listing partiality as a relevant factor).

3

Movants are overwhelmingly partial to JJHCS's position.

*First*, they have significant financial and business ties to JJHCS and its affiliates. PhRMA states that it "represents the country's leading biopharmaceutical companies" and that its "members offer patient copay assistance programs *like the one at issue in this suit*," PhRMA Mot. 1, ECF No. 38-1 (emphasis added), and it asserts that SaveOn could harm "drug manufacturers like JJHCS and PhRMA's members," PhRMA Amicus Br. 13, ECF No. 38-3. Johnson & Johnson ("J&J")—JJHCS's parent company—is one of PhRMA's members. *Members*, https://phrma.org/About#members.[2] In 2019 alone, PhRMA received $515,420,431 in dues from its members. Ex. 1 (Excerpt of PhRMA 2019 Form 990).[3] And the PhRMA Foundation, one of PhRMA's affiliated entities, lists J&J as a financial supporter. *PhRMA Foundation*, https://www.phrmafoundation.org/.

There is significant overlap between Janssen[4] executives and members of PhRMA's board. To name just a few, Aran Maree—Janssen's Chief Medical Officer—is a member of the PhRMA Foundation Board. *PhRMA Foundation Board of Directors*, https://www.phrmafoundation.org/leadership/phrma-foundation-board/. Chris Hourigan, the Company Group Chairman, Pharmaceuticals for Janssen Asia Pacific and President of Janssen Pharmaceutical K.K., is also the Chairman of PhRMA's Japan-Based Executive Committee. *PhRMA Press Conference* (Oct. 28, 2020), http://www.phrma-jp.org/wordpress/wp-content/uploads/2020/10/201028_Bio_Chris Hourigan_en.pdf. And Amy Jackson, PhRMA's Japan Representative from 2016 to 2021, became

---

[2] All cited websites were last visited on September 18, 2022.

[3] Exhibits are attached to the Certification of E. Evans Wohlforth, Jr. All pin citations to Exhibits refer to document pagination.

[4] Janssen Pharmaceuticals is a subsidiary of J&J and operates Janssen CarePath.

4

Janssen's Head of Government Affairs and Policy for Pharmaceuticals, Asia Pacific immediately after leaving PhRMA. *Our Leadership*, Janssen APAC, https://www.janssen.com/apac/leaderships.

PhRMA and J&J also have significant personnel overlap. For example, Jennifer Taubert—J&J's Executive Vice President and Worldwide Chairman of Pharmaceuticals since 2018—sits on PhRMA's board of directors. *Jennifer Taubert*, https://www.jnj.com/leadership/jennifer-taubert. Joaquin Duato—J&J's current CEO and former Worldwide Chairman of Pharmaceuticals—served as PhRMA's Board Chairman from January 2017 through February 2018. *Joaquin Duato*, https://www.linkedin.com/in/joaquinduato/. Daisuke Yasumizu, J&J's Director of Corporate Government Affairs and Policy, also serves as Co-Chair of PhRMA's Vision Task Force. *Daisuke Yasumizu*, https://www.linkedin.com/in/daisuke-yasumizu-62a2a7167/. And Eric Lohnes took on his current role as J&J's Director of State Government Affairs immediately after leaving his position as PhRMA's Senior Director of State Policy. *Eric Lohnes*, https://www.linkedin.com/in/eric-lohnes-5baa8835/.

The Aimed Alliance Group likewise has significant ties to JJHCS, J&J, and PhRMA:

- Aimed Alliance has Janssen as a corporate supporter, *Aimed Alliance Supporters*, https://aimedalliance.org/supporters/, and it received a grant from PhRMA in 2019, *Aimed Alliance*, Cause IQ, https://www.causeiq.com/organizations/alliance-for-the-adoption-of-innovations-in-medici,461806586/. Stacey L. Worthy, Aimed Alliance's prior Executive Director and Counsel, is now Healthcare Policy and Advocacy Director at J&J. *Stacey L. Worthy*, https://www.linkedin.com/in/staceyworthy/.

- The Coalition of State Rheumatology Organizations ("CSRO") received at least $200,000 from Janssen in each of 2021 and 2022, *Corporate Members*, CSRO, https://csro.info/about/corporate-donors; *see also* CSRO, *2022 Corporate Membership Prospectus* at 6-7, https://csro.info/UserFiles/file/2022CSROCorporateMemberProspectus.pdf (listing the cost of each corporate sponsorship tier). PhRMA gave it between $25,000 and $50,000 in 2021 and 2022. *Corporate Members*, CSRO, https://csro.info/about/corporate-donors. And, in 2021, Janssen paid CSRO's Vice President Gary Feldman a total of $10,750 for "[c]ompensation for services other than

5

- consulting." *Gary R. Feldman*, Open Payments, https://openpaymentsdata.cms.gov/physician/128264.

- The Connecticut Oncology Association lists J&J as a "Charter Oak Corporate Partner," meaning J&J gives it at least $8,000 per year. *Corporate Partners*, Conn. Oncology Assoc., http://www.ctoncology.com/partners; *see also Become a Partner*, Conn. Oncology Assoc., http://www.ctoncology.com/partner-benefits.

- The AIDS Institute received a $250,000 grant from PhRMA in 2019, *The AIDS Institute*, Cause IQ, https://www.causeiq.com/organizations/the-aids-institute,650380952/; and it has personnel overlap with Janssen and J&J, *see Donna Sabatino*, https://www.linkedin.com/in/donna-sabatino-rn-acrn-2a031620/ (formerly, Community Liaison at J&J and Market Develop Manager at Janssen; currently works in State Policy and Advocacy for The AIDS Institute).

- The National Oncology State Network lists J&J as an industry partner, *NOSN and its Corporate Partners*, Nat'l Oncology State Network, https://nosn.clubexpress.com/content.aspx?page_id=22&club_id=682507&module_id=517962, and several of its current and former employees serve as directors at J&J, including as (1) J&J's Healthcare Policy and Advocacy Director - Northwest, *Leslie Fox*, https://www.linkedin.com/in/leslieastrupfox/; (2) Strategic Market Director, *Rebecca Lueken Stewart*, https://www.linkedin.com/in/rebeccaluekenstewart/; and (3) Employer Strategy Director, *Patricia Slade*, https://www.linkedin.com/in/patricia-slade-2456b019/; *see also Our Teams*, Nat'l Oncology State Network, https://nosn.clubexpress.com/content.aspx?page_id=22&club_id=682507&module_id=517966.

- Triage Cancer lists Janssen as a corporate sponsor. *Our Sponsors*, Triage Cancer, https://triagecancer.org/about-sponsors.

- The HIV + Hepatitis Policy Institute lists J&J as a corporate sponsor and has held events sponsored by PhRMA. *About Us*, HIV + Hepatitis Pol'y Inst., https://hivhep.org/about-us/.

Movants' ties to JJHCS and its affiliates—which (except for Janssen's support of Aimed Alliance) they did not disclose to the Court—strongly weigh against granting them amicus status. *See, e.g.*, *Wyeth Inc.*, 2012 WL 4794587, at *2; *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 82 (D.N.J 1993); *cf. Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) ("The vast majority of amicus curiae briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such amicus briefs should not be allowed."); *Nat'l Org. for Women, Inc. v.*

6

*Scheidler*, 223 F.3d 615, 617 (7th Cir. 2000) (taking issue with amicus briefs that are "sponsored or encouraged by one or more of the parties in the case[]").[5]

*Second*, Movants are part of a campaign against SaveOn and similar companies that advise plan sponsors about drug manufacturers' copay assistance programs. On July 23, 2021, Aimed Alliance filed a letter with HHS and the Centers for Medicare & Medicaid Services claiming that SaveOn was exploiting a "'loophole' to the [ACA]," suggesting that SaveOn's conduct "may also violate the ACA," and asking both entities to investigate SaveOn. Ex. 2 (July 2021 Ltr.) at 3-4. On September 13, 2021, Aimed Alliance filed a letter with the Center for Consumer Information & Insurance Oversight ("CCIIO"), suggesting that SaveOn was violating federal law, asking CCIIO to prevent health plans from designating certain drugs as non-essential health benefits, and requesting that CCIIO investigate SaveOn. Ex. 3 (Sept. 2021 Ltr.). In February 2022, Aimed Alliance spoke negatively about SaveOn in a webinar on so-called "copay maximizers." *Aimed Alliance Hosts Webinar on Copay Accumulators 101*, Aimed Alliance, https://aimedalliance.org/aimed-alliance-hosts-webinar-on-copay-accumulators-101/. And, on August 30, 2022, HIV + Hepatitis Policy Institute challenged an HHS rule that allows health plans to exempt copay

---

[5] Movants chose not to include an authorship and funding statement as described in FRAP 29(a)(4)(E), which requires proposed amici in federal appellate courts to affirmatively state whether "a party's counsel authored the brief in whole or in part" and whether a party or other person "contributed money that was intended to fund preparing or submitting the brief." That rule is designed to deter the use of amicus briefs to circumvent page limitations and to help courts assess whether to grant leave. *See* Fed. R. App. P. 29 advisory committee's note to 2010 amendment. District courts are guided by FRAP 29 in assessing whether to grant leave to potential amici, *e.g.*, *Granillo*, 2018 WL 4676057, at *4, and Movants have included such statements when filing amicus briefs in other district courts. *See, e.g.*, PhRMA Amicus Br. at iv n.1, *Wood v. Allergan*, No. 10-cv-05645-JMF (S.D.N.Y. Nov. 15, 2016), 2016 WL 9242182; PhRMA Amicus Br. at 4 n.3, *Kieff v. Wyeth*, No. 06-cv-11724-DPW (D. Mass. Nov 11, 2004), 2011 WL 12864044. Movants' failures to include such statements would be grounds for denying leave at the appellate level. *Fharmacy Recs. v. Nassar*, 465 F. App'x 448, 451 (6th Cir. 2012).

assistance payments from plan participants' deductibles or annual out-of-pocket maximums, Complaint, *HIV & Hepatitis Pol'y Inst. v. U.S. Dep't of Health & Hum. Servs.*, No. 22-cv-02604 (D.D.C. Aug. 30, 2022), ECF No. 1—a plan feature that lets plans advised by SaveOn set plan terms that take full advantage of copay assistance programs.

These actions show that Movants are "significantly partial to a particular outcome," *Wyeth Inc.*, 2012 WL 4794587, at *2, and are "better characterized as 'amicus reus,' or friend of the Plaintiff, rather than amicus curiae," *Dobson Mills Apartments, L.P. v. City of Philadelphia*, 2022 WL 558348, at *2 (E.D. Pa. Feb. 23, 2022) (denying amicus status); *see also Liberty Lincoln Mercury, Inc.*, 149 F.R.D. at 82 (noting that amicus status "should be denied" if "the party seeking to appear as amicus curiae is perceived to be … an advocate of one of the parties to the litigation" or has an "attitude toward a litigation [that] is patently partisan.").[6]

## II.     Movants Do Not Have a "Special Interest" in this Case

"When evaluating a potential amici's proffered interest in a case, the court looks to whether its 'interests … would be ultimately and directly affected by the court's ruling on the substantive matter before it.'" *Murphy*, 2020 WL 3056305, at *2 (quoting *Granillo*, 2018 WL 4676057, at *5). That interest must be something more than a "a generalized interest in all cases of a similar subject matter." *Id.* (citation and internal quotations omitted).

---

[6] The Third Circuit's decision in *Neonatology*, cited by PhRMA, PhRMA Mot. 2, 4, is not to the contrary. There, appellants argued that FRAP 29 requires that amici be wholly impartial. 293 F.3d at 131. Here, SaveOn does not argue that Movants must be disinterested in this case; it argues that Movants' partiality to JJHCS is so extreme that it weighs against granting them amicus status. *See, e.g.*, *Wyeth Inc.*, 2012 WL 4794587, at *2 (subsequent to *Neonatology*, holding that partiality "weighs against" granting amicus status). That partiality has special weight here because, unlike in *Neonatology*, Movants seek amicus status at the district court level. *See Leigh v. Engle*, 535 F. Supp. 418, 422 (N.D. Ill. 1982) (recognizing that the increase in partisan amici may be useful at the appellate level but is "not proper in a trial court … because it injects an element of unfairness into the proceedings"); *cf. Granillo*, 2018 WL 4676057, at *4 ("[A]t the district court level, the aid of amicus curiae may be less appropriate." (internal quotations omitted)).

Courts in this District regularly deny leave to file amicus briefs to advocacy groups that seek to vindicate general interests. In *Granillo*, for instance, the court denied amicus status to consumer advocacy groups who partially opposed the settlement of a class action suit over automobile defects, holding that their "strong organizational interests in auto safety and consumer protection," were "generalized concern[s]," not the required "special interests." 2018 WL 4676057, at *5. In *Murphy*, similarly, the court denied amicus status to a public interest organization supporting the separation of church and state in a constitutional challenge to COVID-19 restrictions on religious gatherings, holding its interest in the case was too generalized. 2020 WL 3056305, at *2 (noting movant had filed similar briefs in multiple suits across the country). And in *Bernstein v. Township of Freehold*, 2008 WL 11510751, at *2 (D.N.J. Jan. 4, 2008), the court similarly denied the American Civil Liberties Union amicus status in a free speech and free exercise challenge to a zoning ordinance, holding that, while the case presented constitutional questions of "obvious general interest" to the ACLU, it had not articulated any special interest justifying leave.

By their admission, Movants' interest is not limited to this case; it extends to opposing all companies that offer services like SaveOn's and to all plans with terms that take advantage of copay assistance programs. They (falsely) claim that the public is harmed "by SaveOnSP and *similar schemes*," PhRMA Mot. 3 (emphasis added), and they advocate for a ruling in JJHCS's favor to support "other complaints for injunctive relief against SaveOnSP and *similar companies*," purportedly to protect the public from SaveOn and "*similar companies*," Aimed All. Mot. 4 (emphases added). Aimed Alliance acknowledges petitioning HHS regarding programs "*like* SaveOnSP's," and publicly commenting on "practices by SaveOnSP *and others*." *Id.* at 3-4 (emphases added). And PhRMA inveighs against "companies *such as* SaveOnSP" that advise plans regarding copay

9

assistance programs, "[s]chemes *like* SaveOnSP's maximizer programs," and "programs *like* Save-OnSP." PhRMA Amicus Br. 9, 11, 13 (emphases added). Movants' opposition to a general practice by health plans and companies like SaveOn is not the "special interest in the particular case" required for amicus status. *E.g.*, *Granillo*, 2018 WL 4676057, at *5.

While PhRMA suggests that its status as a trade association means it has a special interest here, PhRMA Mot. 2, the two cases it cites are simply instances in which a court granted a trade association amicus status—neither says that trade associations automatically have a special interest in suits that affect their members. *See Acra Turf Club, LLC v. Zanzuccki*, 2014 WL 5465870, at *6 (D.N.J. Oct. 28, 2014) (granting leave because amicus' brief provided information that had not been provided by the parties and thus "complete[d] the record before the Court"); *United States v. Bayer Corp.*, 2014 WL 12625934, at *1 (D.N.J. Oct. 23, 2014) (granting unopposed leave motion in part based on conclusion that the trade association movants had a strong interest in the outcome of the case). PhRMA also asserts that this case has implications for its members, "who have invested billions of dollars in their own patient copay assistance programs," PhRMA Mot. 2, but this underscores that it has only a generalized interest in such programs.[7]

### III. Movants' Briefs Reiterate Arguments Already Made by JJHCS

Courts deny amicus status when a movant's arguments are redundant of those advanced by the parties. *See N.J. Prot. & Advoc., Inc. v. Twp. of Riverside*, 2006 WL 2226332, at *6 (D.N.J. Aug. 2, 2006). "Doing little more than duplicating arguments raised by the parties is not the proper

---

[7] PhRMA notes that it was permitted to file an amicus brief in a case filed by Pfizer, Inc. against HHS challenging HHS's determination that certain copay assistance programs are illegal under the Anti-Kickback Statute when applied to federal healthcare programs. Order Granting Leave, *Pfizer, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 20-cv-04920-MKV (S.D.N.Y. Jan. 6, 2021), ECF No. 60. PhRMA's motion there was unopposed, *see* Mem. Law Supp. Mot. Leave at 1, *Pfizer*, No. 20-cv-04920-MKV (S.D.N.Y. Dec. 7, 2020), ECF No. 50—unlike here.

10

role of an amicus curiae." *Wyeth Inc.*, 2012 WL 4794587, at *2. Movants propose briefs here that largely reiterate the allegations in JJHCS's Complaint. *See generally* Aimed All. Amicus Br., ECF No. 35-1 (citing Compl. ¶¶ 3, 8-9, 11, 13-15, 24-26, 41-42, 44-47, 53-61, 63, 65, 67-68, 78, 114); PhRMA Amicus Brief (citing Compl. ¶¶ 5, 8-10, 12, 18-20, 22, 40-42, 48, 50, 53-54, 56-64, 74, 78, 89, 92-99, 103, 114). With two exceptions, the other outside sources Movants cite are materials that JJHCS already referenced in its Complaint. *See, e.g.*, PhRMA Amicus Br. at 3-4 (citing articles cited at Compl. ¶¶ 41-42); *id.* at 5 (citing article cited at Compl. ¶ 22); *id.* at 7-8 (citing article cited at Compl. ¶ 50).[8]

It would not aid the Court to consider recycled arguments to which SaveOn has already responded. For example, Movants argue that SaveOn "misled consumers," Aimed All. Amicus Br. at 6-12 (citing Compl. ¶¶ 9, 13, 15, 44-47, 55-56, 58-61, 65, 67-68, 78)—but SaveOn has explained why JJHCS's allegations of "deception" do not state claims under GBL § 349. SaveOn Mot. 16-17 (JJHCS's claimed injury is derivative of consumers' injuries); *id.* at 17-18 (JJHCS has not pled a plausible theory of causation); *id.* at 18-21 (JJHCS's allegations are belied by the documents it incorporated into its Complaint). Movants also assert that SaveOn causes plan participants to pay more for their medicines and to forego health care, Aimed All. Amicus Br. 13-15 (citing JJHCS's Complaint); PhRMA Amicus Br. 9 (citing an article referenced in JJHCS's Complaint)—but SaveOn has explained how the plans they advise set plan terms that allow participants to receive their specialty drugs for free. SaveOn Mot. 6-7. Movants further assert that SaveOn's conduct risks

---

[8] Neither of those sources is helpful to the court nor supports granting amicus status. The Aimed Alliance Group cites one additional article—which it wrote—to assert that patients experience stress and anxiety when they are denied access to their medications. Aimed All. Amicus Br. 6 n.3. But as SaveOn has explained, patients enrolled in plans that partner with SaveOn are *not* denied their medications—instead, they receive their medications for free. SaveOn Mot. at 7, 18-19. The Aimed Alliance Group also cites its own letter to CCIIO, discussed above, *see supra* p. 7, which simply reiterates the points it makes here, Aimed All. Amicus Br. 5 n.2.

11

making copay assistance programs "prohibitively expensive" or "unfeasible," PhRMA Amicus Br. at 11 (citing Compl. ¶ 22)—but SaveOn showed that JJHCS failed to explain how paying amounts of copay assistance it budgeted could be prohibitively expensive, SaveOn Mot. at 24. And Movants assert that SaveOn's conduct violates the ACA, Aimed All. Amicus Br. 4-6, 12, 15, 17-18 (citing JJHCS's Complaint); PhRMA Amicus Br. at 10 (citing JJHCS's Complaint)—but SaveOn explained that its conduct complies with federal law and that JJHCS's claims are not based on violations of the ACA, SaveOn Mot. at 4, 6; Def.'s Rep. Br. Supp. Mot. Dismiss, ECF No. 43.[9]

Movants' rehashed arguments do not support granting them amicus status. *See N.J. Prot. & Advoc., Inc.*, 2006 WL 2226332, at *1, *6 (denying amicus status where movant's proposed brief "merely rehashe[d] the issues already addressed by [p]laintiff"); *Smith v. Chrysler Fin. Co.*, 2003 WL 328719, at *10 (D.N.J. Jan. 15, 2003) (denying amicus status where movant's proposed brief "fail[ed] to further the Court's understanding of the issues at bar."); *Wyeth Inc.*, 2012 WL 4794587, at *2 (D.N.J. Oct. 3, 2012) (denying amicus status where movant cited studies already cited by plaintiff).

### IV. JJHCS Has Already Competently Represented Movants' Interests in the Litigation

Courts deny amicus status where movants' interests are already represented in the case by competent counsel. *N.J. Prot. & Advoc., Inc.*, 2006 WL 2226332, at *6 (denying motion for leave when parties were "represented by competent counsel, which ha[d] coherently presented the arguments for each side"). "To the extent that amici seek to amplify a claim already presented by

---

[9] The few points Movants make that go beyond the Complaint—such as the Aimed Alliance Group's (false) assertion that SaveOn inflates drug costs, Aimed All. Amicus Br. 18—are unsupported factual assertions. The Court cannot consider outside "evidence" in the context of a Motion to Dismiss. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also McVicker v. King*, 2009 WL 10674503, at *1 (W.D. Pa. Apr. 30, 2009) (denying leave to file amicus brief seeking to introduce factual evidence because amicus was not entitled to "insert … his version of the facts into th[e] case").

petitioner, … the burden on the court and parties in terms of additional pages filed and time required to resolve the issues presented likely would outweigh the nominal analytical contribution." *Abu-Jamal v. Horn*, 2000 WL 1100784, at *4 (E.D. Pa. Aug. 7, 2000).

JJHCS and Movants share the same interest in promoting copay assistance programs and dismantling companies like SaveOn. The Aimed Alliance Group purports to represent the interests of patients and their advocates—but JJHCS has extensively advocated for what it claims are patient interests, using the same arguments as the Aimed Alliance Group. *Compare, e.g.*, Aimed All. Amicus Br. 6-11, 13-14, 17-18 (arguing that SaveOn confuses patients, jeopardizes the viability of copay assistance program, and causes consumers to pay more for health care) *with* Compl. ¶ 114 (same). PhRMA says that it represents drug manufacturers that offer copay assistance programs, PhRMA Mot. 14—but JJHCS has advocated for its interests in its own copay assistance program. *Compare, e.g.*, PhRMA Amicus Br. 3-7, 11-13 (arguing that copay assistance programs help make medications affordable for patients and that SaveOn's actions threaten copay assistance programs) *with* Compl. ¶¶ 2, 44-46, 114 (same). Movants do not explain how their interests differ from JJHCS's such that they could provide different, unique perspectives. Because JJHCS and Movants share interests that JJHCS and its counsel has already adequately represented, this Court should deny Movants' motions for leave. *See Wyeth Inc.*, 2012 WL 4794587, at *2 (denying FTC's motion for leave when it had "not expressed an interest" that was not represented competently in the case).

## CONCLUSION

The Court should deny Movants' motions for leave to file amicus curiae briefs.

Dated: Newark, New Jersey  
September 19, 2022

Respectfully submitted,

By: /s/ *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
ewohlforth@gibbonslaw.com

David Elsberg
Andrew R. Dunlap
Meredith Nelson
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
delsberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

*Attorneys for Defendant Save On SP, LLC*