```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

JOHNSON & JOHNSON HEALTH CARE        .
SYSTEMS INC.,                        .
                                     .
          Plaintiff,                 .  Case No. 22-cv-02632
                                     .
vs.                                  .  Newark, New Jersey
                                     .  October 18, 2022
SAVE ON SP, LLC,                     .
                                     .
          Defendant.                 .


                      TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE CATHY L. WALDOR
                 UNITED STATES MAGISTRATE JUDGE


APPEARANCES (the parties appeared via Zoom videoconference):

 For the Plaintiff:        KATHERINE MARGUERITE LIEB, ESQ.
                           Sills Cummis & Gross P.C.
                           101 Park Avenue, 28th Floor
                           New York, NY 10178
                           (212) 643-7000
                           Klieb@sillscummis.com

                           JEFFREY J. GREENBAUM, ESQ.
                           Sills Cummis & Gross P.C.
                           The Legal Center
                           One Riverfront Plaza
                           Newark, NJ 07102-5400
                           (973) 643-7000
                           jgreenbaum@sillscummis.com




 Audio Operator:

 Transcription Service:    KING TRANSCRIPTION SERVICES
                           3 South Corporate Drive, Suite 203
                           Riverdale, NJ  07457
                           (973) 237-6080


Proceedings recorded by electronic sound recording; transcript
produced by transcription service.
```

```
 1   (APPEARANCES continued)

 2
     For the Plaintiff:        ADEEL ABDULLAH MANGI, ESQ.
 3                             Patterson Belknap Webb & Tyler LLP
                               1133 Avenue of the Americas
 4                             New York, NY 10036
                               (212) 336-2563
 5                             aamangi@pbwt.com

 6                             MICHAEL SOCHYNSKY, ESQ.
                               Patterson Belknap Webb & Tyler LLP
 7                             1133 Avenue of the Americas
                               New York, NY 10036
 8                             (212) 336-2091
                               Msochynsky@pbwt.com
 9
10   For the Defendant:        ERIC EVANS WOHLFORTH, JR., ESQ.
                               Gibbons, P.C.
11                             One Gateway Center
                               Newark, NJ 07102-5310
12                             (973) 596-4879
                               ewohlforth@gibbonslaw.com
13
                               ANDREW R. DUNLAP, ESQ.
14                             Selendy Gay Elsberg PLLC
                               1290 Avenue of the Americas
15                             New York, NY  10104
                               (212) 390-9005
16                             Adunlap@selendygay.com

17                             DAVID ELSBERG, ESQ.
                               Selendy Gay Elsberg PLLC
18                             1290 Avenue of the Americas
                               New York, NY  10104
19                             (212) 390-9004
                               Delsberg@selendygay.com
20
                               MEREDITH NELSON, ESQ.
21                             Selendy Gay Elsberg PLLC
                               1290 Avenue of the Americas
22                             New York, NY  10104
                               (212) 390-9069
23                             Mnelson@selendygay.com

24                             Also present:  Michael V. Caracappa
                               (Gibbons PC)
25
```

 1                    (Commencement of proceedings)

 2          THE COURT:  All right.  22-2632.  We're here today

 3   at 12:04 for oral argument on a motion to stay.  That's

 4   Johnson & Johnson versus Save On SP LLC.

 5          Let's have appearances, beginning with Johnson &

 6   Johnson.

 7          MR. GREENBAUM:  Good afternoon, Your Honor.

 8   Jeffrey J. Greenbaum and Katherine Lieb from Sills Cummis &

 9   Gross.  And with me from Patterson Belknap are Adeel Mangi

10   and Michael Sochynsky.

11          Mr. Mangi will be arguing on our behalf today.

12          MR. MANGI:  Good morning, Your Honor.

13          THE COURT:  Good morning.

14          Okay.  I just want to memorize where your squares

15   are.  Got it.  Okay.

16          Now, let's have defense.

17          MR. WOHLFORTH:  Good morning, Your Honor.  This is

18   Evans Wohlforth from the Gibbons firm.  With me from Gibbons

19   is my colleague Mike Caracappa.

20          Also joining from the Selendy Gay & Elsberg firm

21   are Andrew Dunlap, who will be presenting the case for

22   defendants today.

23          In addition, our colleagues Meredith Nelson and

24   David Elsberg are on the line, all admitted pro hac vice.

25          THE COURT:  Okay.  Thank you, everybody.

 1        So, Mr. Dunlap, I'm going to put it on you.

 2   Explain to me why you think that this is a clear case of

 3   hardship or inequity in starting discovery.

 4        MR. DUNLAP:  Yes, Your Honor.  And thank you.

 5        Well, quite simply, we think we have a very strong

 6   motion here for a couple of reasons.  One is we have a very

 7   well-founded and potentially dispositive motion to dismiss

 8   that could dispense of with all of Johnson & Johnson's claims

 9   or significantly scale them back.  There would be a large

10   burden to us from going forward under the proposal that

11   Johnson & Johnson has made because of the scope of the

12   discovery they're seeking on their claims and may well go

13   away.

14        Johnson & Johnson has identified no real prejudice

15   if document discovery --

16        THE COURT:  But what's the burden?

17        MR. DUNLAP:  The burden is the scope of the

18   discovery they want.

19        And there's some late-breaking news, Your Honor,

20   that I think will put this into better context for you, if I

21   may.

22        THE COURT:  Sure.

23        MR. DUNLAP:  So we made a proposal -- you had said

24   last time we were here that you wanted the parties to try to

25   work on an interim solution.  And we tried, and we made the

1  proposal that is in our motion papers, which you say you're

2  familiar with.

3           Johnson & Johnson, as you know, came back and said,

4  no.  They agreed to put off depositions, but they want

5  document production now.  And not just regular document

6  production.  They want to accelerate document production.

7  They want us to go from zero to substantial completion in

8  this case in five months.  That's what they said in their

9  motion papers, which is highly accelerated for a case of this

10 size.

11          So recently we went back to them, and we made

12 another proposal.  And they only just responded to it

13 yesterday, which is why we didn't have a chance to put in

14 something before the argument.

15          We said, if they really want to do document

16 production in five months, we would do it, but we had two

17 conditions -- two conditions.  The first was that they had to

18 put a reasonable limit on the number of documents that we

19 would have to review.  And we proposed 160,000 as a high

20 limit.  And we based that on what we thought we could get

21 through in five months if we assigned a team of 20 attorneys

22 to review documents -- because we would still need to do the

23 earlier work of exchanging requests and responses and

24 negotiating search terms and all this stuff that I'm sure

25 you're more familiar with than you would like to be.  Get

1  that done.  Even if you do that fast, that's about two

2  months.

3          And if we put eight -- 20 reviewers reviewing at

4  the high end of the standard range, they could do about 200

5  documents a day for eight weeks; that's about 160,000

6  documents.  That would leave us three or four weeks to do

7  second-level review and quality control and the logistics of

8  the production.

9          You know, in their papers, they said they wanted

10  something that was reasonable and attainable.  Well, that's

11  what we think is -- we could reasonably do from standing

12  stop -- standing start to finish and in five months.

13          THE COURT:  So let me just stop you for a minute.

14          MR. DUNLAP:  Yes.

15          THE COURT:  You say 160,000 documents.  What do you

16  think is the entire field or number of documents?  That

17  160,000 would be just an initial five-month-period

18  production?

19          MR. DUNLAP:  No, Your Honor.  They're the ones who

20  say they want to do this fast.  So our proposal would be if

21  you -- if they really think they have to do all this fast, we

22  will do 160,000 documents in five months.  But then that

23  would be it, that they couldn't come back and ask for more

24  time or more documents, because they're the ones who are

25  saying --

|Hearing
|22-cv-02632, October 18, 2022

```
 1              THE COURT:  Well, how could you possibly --
 2         (Simultaneous conversation)
 3              MR. DUNLAP:  -- the essence.
 4              I'm sorry?
 5              THE COURT:  How could either side speculate on how
 6    many documents may or may not -- maybe they only the want
 7    140,000, or maybe they want 560,000, but how can you -- how
 8    can you put a number on documents prior to interrogatories,
 9    prior to document production?  That's like throwing caution
10    to the wind.  Isn't it?
11              MR. DUNLAP:  Well, we --
12         (Simultaneous conversation)
13              THE COURT:  -- take that bargain --
14              MR. DUNLAP:  Well --
15              THE COURT:  -- but it -- are there five million
16    documents in total?
17              MR. DUNLAP:  Well, we think that really proves our
18    point, Your Honor, which is what they're asking for is
19    something -- what they want is five months to complete
20    production with absolutely no document limit.
21              THE COURT:  Right.
22              MR. DUNLAP:  And they rejected our proposal of a
23    limit, which means that at a minimum, they want us to look at
24    hundreds of thousands of documents, if not more.  And I think
25    that underscores two points.  One is that there is
```

1   substantial prejudice to here.  They are looking at -- or at

2   least want the ability to go after a huge volume of

3   documents.  160,000 is a lot of documents.  And they want

4   more than that.

5            And so the prejudice we're facing is while our

6   motion to dismiss is pending, having to look at all of those.

7   And it also shows that what they've proposed to you, which,

8   by the way, they didn't put any specific dates in their

9   proposals, is completely unworkable.  So they rejected that.

10            THE COURT:  Well, if they --

11       (Simultaneous conversation)

12            THE COURT:  -- did a limit of documents, they'd be

13   subject to malpractice.

14            MR. DUNLAP:  No -- well, Your Honor, I think -- I

15   don't think that's true if they mean what they say.  There's

16   no way that you could do more than that, we think, reasonably

17   in five months.  So if they don't want to agree to a --

18       (Simultaneous conversation)

19            THE COURT:  I agree -- five months, if you have 20

20   reviewers at 200 a day, as you say, okay, that's fine.

21   That's an initial production, though.

22            MR. DUNLAP:  Well, but if, in fact, they don't need

23   it done in five months, if they want more time, I think that

24   also speaks to the fact that there's no need to get this

25   done -- to start document production urgently.

 1          What we have proposed in our -- the one we put in

 2   to the Court was that we would do a lot of the preliminary

 3   work necessary to be ready to produce documents, exchanging

 4   requests, doing responses and objections, litigating all of

 5   that, search terms, custodians, time periods, litigating all

 6   that, being ready to produce once the motion to dismiss comes

 7   down, plus committing to do document production on an

 8   accelerated time frame at that point.

 9          And --

10      (Simultaneous conversation)

11          THE COURT:  -- number of documents.  That's what my

12   problem is.

13          MR. DUNLAP:  Your Honor, in our first proposal, the

14   one we made to you, there's no document limit.

15          THE COURT:  Right.

16          MR. DUNLAP:  The only -- only limit we're proposing

17   is the one we proposed to them.  If they really want to do

18   this fast in five months, we need a document limit because we

19   can't -- we can't -- unless we have some huge, like, floors

20   and floors of people reviewing documents, do more than that.

21          So if they want speed, they can't have size.  If

22   they want size, then there's no reason to start things now.

23          But I'd like to pivot, if I could, to the second

24   point of the proposal we made to them, which is we said that

25   if they want us to start producing documents before the

1   motion to dismiss is decided, we would do that.  If their

2   claims are dismissed, they would bear the cost of the

3   document production.

4          So to be clear, if -- if we lose, they win, all

5   their claims go forward, we would pay for the whole thing.

6   But if they lose and their claims go away, they would pay for

7   it.

8          Now, we think we have a very good motion to dismiss

9   here.

10          THE COURT:  It's very --

11      (Simultaneous conversation)

12          MR. DUNLAP:  I'm sorry?

13          THE COURT:  It's very casino-like.

14          MR. DUNLAP:  Well, they have said some very unkind

15   things about our motions to dismiss.  They hold one of our

16   arguments spurious.  They said our arguments don't get out of

17   the starting gate --

18      (Simultaneous conversation)

19          THE COURT:  Well, you're better than that.

20   Don't -- you can't take that stuff personally.

21          And we don't know.

22          MR. DUNLAP:  Oh, Your Honor --

23      (Simultaneous conversation)

24          THE COURT:  So let me just --

25          MR. DUNLAP:  Your Honor, I'm not taking it

|Hearing
|22-cv-02632, October 18, 2022

1  personally.

2        What I'm saying is if they really believe, as they

3  have told you, that our motion to dismiss is not a basis to

4  stay because it is so weak, then they should be jumping at

5  this deal because it poses no risk to them, and the fact that

6  they're turning it down, we think, says a lot about what they

7  think of the merits of our motion to dismiss.

8        THE COURT:  Okay.  I am not -- I am not --

9     (Simultaneous conversation)

10       MR. DUNLAP:  It is very well-founded --

11    (Simultaneous conversation)

12       THE COURT:  -- I am not going to read the tea

13 leaves.  That's not my job.

14       My job is to move cases.  That's my job.  I'm a

15 magistrate.  The district judge can make any determination on

16 the motion to dismiss that he wants.

17       And I anticipate the motion to dismiss will be

18 sooner than we thought.  I -- that's my anticipation, based

19 upon his moving his motions of recent.

20       So that -- I put that on the table for your

21 consideration.

22       I'm going to tell you -- I don't want to cut you

23 off, but, obviously, I am not staying discovery.  But I do

24 think that there's some kind of schedule that you might agree

25 on that might be 160,000 documents in five months but not

1    foreclosing -- because there's no way you can foreclose for

2    the production or for the request.  That's an impossibility.

3            But if you -- we were to stage discovery such that

4    you'd meet and confer on need discovery plan, you've got to

5    do search terms, you've got to do custodians, you have to do

6    a confidentiality -- I'm sure there's going to be some

7    fighting over that.  But I am telling you do not come to me

8    to decide your search terms because I will random strike the

9    bottom hundred.

10           So just -- you have to -- the fact that you haven't

11   even met and conferred on that is a little troubling.

12           And then we can go into production.  But I

13   anticipate that the motion to dismiss will be decided well

14   before that five-month period.

15           MR. DUNLAP:  Your Honor, well, I think that speaks

16   to what we put forward to you.  We proposed doing

17   negotiate -- exchanging requests.

18           THE COURT:  Right.

19           MR. DUNLAP:  Exchanging limited interrogatories,

20   negotiating and litigating, if necessary, the scope of those

21   requests; negotiating search terms and custodians and doing

22   all of that work.  So we are completely fine on that, and I

23   think the parties agree on that.

24           If, in fact, you believe that the judge is likely

25   to decide the motion to dismiss sooner rather than later, we

|Hearing
|22-cv-02632, October 18, 2022

1    think, then, that cuts toward entering our proposal, which

2    says let's do all that preliminary work, which is important

3    and often where rubber meets the road in terms of these

4    discovery fights.  Have that done.  And then once the motion

5    to dismiss decision comes down, if their claims survive,

6    we'll start producing at that point.

7              But the offer we made about doing document

8    production earlier was contingent on them accepting some of

9    these other terms, which they've said they'd not.  If they

10   won't --

11        (Simultaneous conversation)

12             THE COURT:  --

13        (Simultaneous conversation)

14             MR. DUNLAP:  -- we're facing a huge burden -- I'm

15   sorry?

16             THE COURT:  I don't care about your deals.  They

17   have nothing to do with me.  You rejected each other's deals.

18   That's fine.

19             What I'm saying is you're going to meet and confer.

20   You're going to start discussing e-discovery protocols,

21   custodians, search terms.  You're going to start production,

22   rolling production.  You're going to exchange document

23   requests and interrogatories.  You're going to begin

24   discovery on -- as regular a schedule as possible.

25             I will agree to that backstop of five months for

1  160,000 documents because I think that's reasonable in your

2  stated terms of what would be overly burdensome, although I

3  don't have a lot of specifics on that because I don't really

4  know what the requests are going to be.

5          That being said, start discovery.  If you produce

6  160,000 documents in five months, I think that's fine.  But

7  that's not to foreclose the production at 160,000 documents.

8          MR. DUNLAP:  Well, Your Honor, we're glad to --

9  we've already sent them a proposed protective order and a

10 proposed ESI protocol.  And they've sent us some comments

11 back.  And so the parties are negotiating that.

12         And as we put in our order, we're glad to do

13 everything that you said in terms of starting to negotiate

14 everything.

15         And if you would like us to start rolling

16 production, we will.

17         THE COURT:  Yes.

18         MR. DUNLAP:  I will say, though, that the schedule

19 that we put in our second offer to them was a highly

20 accelerated one.  We'll negotiate the terms with them, but I

21 think we are going to ask to proceed on a more regular

22 schedule -- I think that was the word you used -- a normal

23 discovery schedule for a case of this sort, and we can try to

24 negotiate exactly what that looks like with that.

25         THE COURT:  Well, let me -- Mr. Mangi that I didn't

1  mean to shut you down, but do you think under the suggestions

2  or the orders that I'm going to post -- which is going to be

3  a text order that discovery shall proceed -- you'll meet and

4  confer, submit a reasonable discovery schedule.

5          Do you think that that's possible to do?

6          MR. MANGI:  Certainly, Your Honor.  We have been

7  trying to have a conferral since the case first started.  And

8  I have no reason to think, once we have that conferral,

9  anyone's going to be unreasonable.

10          So if order -- there is a couple of supplements I

11  would suggest, Your Honor, to ensure that goes smoothly.

12          THE COURT:  Okay.

13          MR. MANGI:  So the first is, Your Honor, I think it

14  would be very useful if the Court were to also set a date for

15  a Rule 16 conference so that we can promptly meet and confer.

16  And if we're able to agree on a schedule, great.  If not,

17  we'll come back in front of you.  Right?

18          THE COURT:  Okay.

19          MR. MANGI:  Say, here's a problem.

20          THE COURT:  Good.

21          MR. MANGI:  Second issue just for clarification, I

22  am not going to argue the under -- the motion to stay because

23  I think we're past that now.  So I'll just focus on some of

24  these practical issues that have been raised.  And I'm also

25  not going to address the proposal that Save On made because I

 1    think Your Honor has -- set that aside.

 2              I just want to talk about this 160,000 limitation

 3    that Mr. Dunlap spoke about, because I think there's a bit of

 4    a disconnect, Your Honor.

 5              Your Honor has been talking about a production of

 6    160,000 documents as, you know, perhaps an initial

 7    production, something that might be reasonable.

 8              What Save On's proposal to us, setting aside the

 9    conditions, was that they would not review more than 160,000

10    documents.  And, you know, that creates a different host of

11    issues, and we don't think that's a reasonable limitation,

12    even out of the box.

13              You know, we're not -- we're not suggesting there

14    should be some crazy expedited schedule here.  But I think

15    the starting premise should be, as Your Honor is indicating,

16    get started with discovery.  No artificial limitations.  Try

17    and agree on a schedule.  And if you can't, you know, there's

18    a date set for a Rule 16 conference whether it's, you know,

19    two or three weeks from now, whenever Your Honor deems

20    appropriate.  And then, you know, we'll try to come to

21    agreement whether the document production period ends up

22    being five months -- what we've proposed -- or whether it

23    ends up being, you know, something different from that.

24    We'll try and work that out so we don't bother you with that.

25    I hate to bother judges with time periods, let alone search

1   terms.  So I hope we can work that out.  But --

2           THE COURT:  I think -- let me say this.  So I'm

3   clear, I don't think reviewing 160,000 documents is a

4   limitation.  I think -- to me, it's a guideline, and it's

5   where to start.

6           I would never foreclose -- because I don't know the

7   body of documents.  That's why I need you all to start,

8   initiate discovery so we can find out what the body is.  Then

9   if it's burdensome, you can be specific, Mr. Dunlap.  You can

10  say there's 14 million documents, and I can't have more than

11  20 people working on them for, you know, two documents a day.

12          I don't have enough specifics to even get near

13  granting a stay.

14          So what I'm suggesting is -- I'll -- Mr. Mangi,

15  you're right.  I'll put a Rule 16 on, and I'm going to order

16  you to meet and confer, come up with a scheduling order

17  that's reasonable.  If you disagree on specific items, give

18  me a side -by-side.  Just to let you -- you know where that's

19  going.  I'll go right down the middle.  So you can anticipate

20  what's going to happen with that unless there's something

21  specifically burdensome, Mr. Dunlap or Mr. Mangi, that you

22  can say to me, "Judge, it can't be done."

23          So you'll do that.  And that will be that.

24          And I will tell you this -- because I am not going

25  for this.  The text order will be posted.  If you appeal to

1    Judge Vazquez, that will not stay discovery.

2            MR. MANGI:  Your Honor, may I just seek

3    clarification on a couple of quick points to smooth the way

4    for our conferral?

5            THE COURT:  Okay.

6            MR. MANGI:  Your Honor, first with regard to

7    interrogatories and aspects of discovery that go beyond the

8    document production, again, our view is we should start.  If

9    there's a disagreement, you know, someone did seek a

10    protective order, but there should not be any artificial

11    preconditions of the scope of interrogatories.

12            THE COURT:  Yes.

13            MR. MANGI:  Great.

14            THE COURT:  That's correct.

15            MR. MANGI:  And then -- thank Your Honor.

16            And then the second and final point is with regards

17    to numbers of documents and search terms and how much should

18    have to be reviewed, our view, Your Honor, is that there's no

19    way to even get into that discussion until the parties have

20    collected documents from custodians, have run some search

21    terms so we know what the universe is.

22            So my suggestion is that there should be no

23    preconditions or limitations as part of this initial

24    discussion.  Later on, when we get to collections and we have

25    the universe, if there's an issue in volume, parties can

1    raise --

2            THE COURT:  Yes.  I agree with you one hundred

3    percent.  We're not going to put any preconditions.  I'm not

4    adopting either party's suggested orders.

5            I'm saying proceed with discovery in -- and I'll

6    use the word again -- "normal," the way any other case would

7    proceed with discovery at this point.  I think we're going to

8    be surprised at how quickly that motion gets decided and we

9    won't be behind the eight ball.

10           I will take each deficiency or each complaint or

11   each grievance or each motion for a protective order on a

12   case-by-case basis or a motion-by-motion basis, and we're

13   just going to start the case.

14           So right now, both of you agree that you're to meet

15   and confer on your protocols, search terms, custodians, start

16   making document requests, interrogatories.  And I do believe

17   before -- maybe even before, Mr. Dunlap, production proceeds,

18   that motion will be decided.  So -- and that's -- believe me

19   when I tell you, I haven't spoken to Judge Vazquez, but I

20   have been following his motion list, and I'm seeing that his

21   turnover is pretty good.

22           So --

23           MR. GREENBAUM:  Judge, would you like to set the

24   dates of the Rule 16 now to make sure that counsel are

25   available?

```
 1              THE COURT:  No because -- where's Tim?  My deputy

 2   has to do that, Jeff.

 3              MR. GREENBAUM:  Okay.  Thank you.

 4              THE COURT:  And if you like the date, you'll let me

 5   know.  We'll do it by Zoom.  If you don't like the date, you

 6   let me know, and we'll arrange for some new dates.  Or if you

 7   hate the date, meet and confer and submit three or four

 8   dates.

 9              MR. GREENBAUM:  Okay.

10              MALE SPEAKER:  -- do that, Judge.  Thank you.

11              THE COURT:  All right?

12              MR. MANGI:  Thank you, Judge.

13              MALE SPEAKER:  Thank Your Honor.

14              THE COURT:  Hmm?

15              MR. GREENBAUM:  You need an order submitted on

16   denying the motion to stay or?

17              THE COURT:  No.  I'm going to do it in a text

18   order.

19              MR. GREENBAUM:  Okay.  Thank you, Your Honor.

20              THE COURT:  You know, with very loose outline.

21              So -- okay.  Thank you very much.

22              UNIDENTIFIED SPEAKERS:  Thank you, Your Honor.

23              THE COURT:  Bye-bye.

24                    (Conclusion of proceedings)

25
```

```
|Hearing
|22-cv-02632, October 18, 2022
|Certification
```

1                              Certification

2          I, SARA L. KERN, Transcriptionist, do hereby certify

3     that the 21 pages contained herein constitute a full, true,

4     and accurate transcript from the official electronic

5     recording of the proceedings had in the above-entitled

6     matter; that research was performed on the spelling of proper

7     names and utilizing the information provided, but that in

8     many cases the spellings were educated guesses; that the

9     transcript was prepared by me or under my direction and was

10    done to the best of my skill and ability.

11         I further certify that I am in no way related to any of

12    the parties hereto nor am I in any way interested in the

13    outcome hereof.

14

15

16

17

18    s/ *Sara L. Kern*                    20th of October, 2022

19    _____     _____
      Signature of Approved Transcriber            Date

20

21
      Sara L. Kern, CET**D-338
22    King Transcription Services
      3 South Corporate Drive, Suite 203
23    Riverdale, NJ  07457
      (973) 237-6080

24

25