UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Case No. 2:22-cv-02632-JMV-CLW |

**STIPULATION AND ORDER**
**GOVERNING THE EXCHANGE OF ELECTRONICALLY STORED INFORMATION**

Upon agreement of the Parties for entry of an order establishing a protocol for the exchange and production of documents in hard-copy format ("Documents") and electronically stored information ("ESI"), as those terms are used in the Federal Rules of Civil Procedure, plaintiff Johnson & Johnson Health Care Systems Inc. ("Plaintiff") and Defendant Save On SP, LLC ("Defendant") (each a "Party" and, collectively, the "Parties") hereby stipulate ("ESI Stipulation") and the Court orders as follows:

**I.    GENERAL PROVISIONS**

A.    The Parties and non-parties producing Documents and ESI (each a "Producing Party") shall prepare their Documents and ESI for production to the Parties receiving the production (each a "Receiving Party") in accordance with this ESI Stipulation.

B.    If a provision of this agreement conflicts with the terms of the stipulated Discovery Confidentiality Order (ECF No. 62) (the "Confidentiality Stipulation") entered in this action,[1] the Confidentiality Stipulation will control absent further order of the Court.

---

[1] Defined terms in the Confidentiality Stipulation not otherwise defined herein are incorporated.

  C. <u>Proportionality</u>

    1. <u>Reasonable Discovery Limits</u>. The proportionality standard set forth in Rule 26(b)(1) shall apply to discovery in this action. Consistent with that proportionality standard, the Parties agree to cooperate in identifying appropriate limits on discovery, including phased discovery and reasonable limits on search terms and the number of custodians, on discoverable data sources, on the relevant period, and on the permissible scope of requests for production, specifically including the permissible scope of requests for emails. Requests for production of ESI, including requests for emails, shall be reasonably targeted, clear, and as specific as possible.

  D. <u>No Designation of Discovery Requests</u>. Productions of Documents and ESI in the reasonably usable form set out in this protocol need not be organized and labeled to correspond to the categories in the requests.

**II. PRODUCTION OF HARD COPY DOCUMENTS**

  A. <u>TIFFs</u>. Producing Parties shall produce Documents in the form of single-page, Group IV TIFFs at 300 dpi. They shall name each TIFF image as its corresponding Bates number. They shall maintain Original Document orientation (*i.e.,* portrait to portrait and landscape to landscape). They shall provide TIFF image files in a self-identified "Images" folder.

  B. <u>OCR Text Files</u>. Producing Parties shall provide Optical Character Recognition ("<u>OCR</u>") text files as a single text file for each Document, not one text file per page. They shall name each file with the beginning Bates number assigned to its corresponding Document, followed by .txt. They shall provide OCR text files in a self-identified "Text" directory. To the extent that a Document is redacted, they shall produce OCR text files for that Document that shall not contain text for redacted portions.

  C. <u>Database Load Files/Cross-Reference Files</u>. Unless otherwise agreed by the Parties, Producing Parties shall provide Documents with Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files) using standard Concordance delimiters. They shall provide Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files) in a self-identified "Data" folder.

  D. <u>Coding Fields</u>. Producing Parties shall produce Documents with at least the following searchable information in accompanying delimited data files: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodians, (6) OCRTextPath, (7) Confidentiality, and (8) Source. When a Producing Party determines in good faith judgment that it is practicable to accompany Documents with other metadata fields in Table I, the Producing Party shall produce those Documents with the practicable metadata fields. Producing Parties shall identify custodians using any of the following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first name_last name"; or "FLast." Producing Parties shall use a uniform description of a particular custodian, and separate multiple custodians in the "Custodian" field by a semicolon. For Documents with no individual custodian (*e.g.*, centralized files, document management systems), Producing Parties shall (a) use the relevant entity name(s) in the "Custodian" field and (b) identify the source of the Documents in the "Source" field.

  E. <u>Bates Numbering</u>. Producing Parties shall assign each TIFF image a Bates number that: (1) is unique across the entire production; (2) maintains a constant length across the entire production (*i.e.*, padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given Document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

F.      *Parent-Child Relationships*. Producing Parties shall preserve parent-child relationships (*i.e.*, the association between an attachment and its parent Document), to the extent they exist in the manner in which the Documents are maintained in the ordinary course of business. For example, if a Producing Party produces a printout of an email with its attachments, it shall produce such attachments behind the email in the order in which they were attached.

G.      *Color*. Producing Parties need not, in the first instance, produce Documents containing color in color format. The Receiving Party may request production of such Documents in color format by (1) providing a list of the Bates numbers of the Document(s); and (2) explaining the need for production of the Documents in color format. Consent to produce in color shall not be unreasonably withheld.

H.      *Unitizing of Documents*. A Producing Party shall not, when scanning Documents: (1) merge distinct Documents into a single record; or (2) split single Documents into multiple records (*i.e.*, Documents should be logically unitized).

III.    **PRODUCTION OF ESI**

A.      *Technology Assisted Review ("TAR")*.

1.      Any Producing Party that wishes to use TAR agrees to disclose that intent to the Receiving Party before the Producing Party employs any TAR and must meet-and-confer with the Receiving Party regarding an appropriate TAR protocol. The Producing Party will identify the universe of Documents or ESI to which it intends to apply TAR. The Producing Party may not use TAR to limit or cull Documents or ESI to be reviewed without the prior consent of the Receiving Party.  If the parties are unable to reach agreement on an appropriate protocol, or if the Receiving Party withholds consent, any such disputes shall be resolved by the Court.

4

2. The absence of a search term hit or retrieval by TAR methodology for a given ESI or Document does not automatically render it irrelevant. If any Producing Party identifies relevant ESI or Documents not hit upon by the search term filters noted above, it shall produce such non-privileged Documents and/or ESI, subject to the Producing Party's objections to discovery requests and rights under this ESI Protocol, the Local Rules, and this Court's individual rules.

3. The fact that any electronic file has been identified in agreed-upon searches shall not prevent any Producing Party from withholding such file from production on the grounds that the file is not responsive or relevant, or that it is responsive or relevant but protected from disclosure by applicable privilege or immunity (in which case the Producing Party shall include it on a privilege log), or that the Protective Order entered in this Action allows the file to be withheld.

B. <u>Avoidance of Duplicate Production</u>

1. "Duplicate ESI" means files that are exact duplicates based on the files' MD5 hash, SHA-1 hash, email duplicate spare messages (as defined by Relativity), or SHA-256 hash values. The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (i.e., both within a particular custodian's files and across all custodians). Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When the same Duplicate ESI exists in the files of multiple custodians, the additional custodians shall be listed in the "All Custodians" field identified in Table I to the extent such information is available.

2. The Parties may confer regarding other deduplication methods, such as the use of Textual Near Deduplication. Except for the removal of extracted logos, no custom deduplication method will be implemented without the consent of the Receiving Party, and such consent shall not be unreasonably withheld.

3. If the Producing Party collects and processes additional ESI which contains duplicates of ESI previously produced, that Party also shall provide an overlay file to allow the Receiving Party to update the "All Custodians" field. The overlay file shall include both all custodians listed in the "All Custodians" field in prior productions and any custodians identified in the newly processed ESI.

C. Email Threading

1. Email threads are email communications that contain lesser-included email communications that also may exist separately in the Party's electronic document collection. A most-inclusive email is one that contains unique content and all the lesser-included emails, including attachments, for that branch of the email thread. The Parties agree that removal of available lesser-included emails from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting, and, when producing the most-inclusive email in a thread, the parties need not also produce lesser-included emails in the thread.

2. Participants in lesser-included emails that otherwise would have been subject to review shall be listed in the most-inclusive email's "All Participants" field included in the data load file. With respect to an e-mail chain, the parties may produce the longest unique or most inclusive chain and the parties do not need to separately produce the lesser-included e-mails unless those lesser-included e-mails include unique attachments

not included in the longest chain or contain a BCC recipient not shown in the longest unique chain. If a lesser-included e-mail includes a unique attachment, or if the lesser-included email was modified in any way in a subsequent email, then the lesser-included e-mail must be separately produced with the attachment.

D. <u>TIFFs</u>. Producing Parties shall produce ESI in the form of single-page, black and white, Group IV TIFFs at 300 dpi. They shall name each TIFF image as its corresponding Bates number. They shall maintain original document orientation (*i.e.*, portrait to portrait and landscape to landscape). They shall provide TIFF image files in a self-identified "Images" folder.

E. <u>Parent-Child Relationships</u>. Producing Parties shall preserve parent-child relationships (*i.e.*, the association between an attachment and its parent file).

F. <u>Metadata Fields and Processing</u>. Producing Parties shall produce each of the metadata and coding fields set forth in Table I that can be extracted from ESI for that ESI. They are not obligated to populate manually any of the fields in Table I if such fields cannot be extracted from the ESI, except for the following: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodians, (6) NativeLink, (7) Confidentiality, (8) Parent ID fields (which the Producing Party or its vendor may populate), and (9) Source. They shall identify custodians using any of the following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first name_last name"; or "FLast." A Producing Party shall use a uniform description of a particular custodian and separate multiple custodians by a semicolon in the "Custodians" field. For documents with no individual custodian (*e.g.*, centralized files, document management systems), Producing Parties shall (a) use the relevant entity name(s) in the "Custodian" field and (b) identify the source of the documents in the "Source" field.

G. <u>Extracted Text Files</u>. For all ESI (other than multimedia or graphic files), Producing Parties shall provide an extracted text file along with its corresponding TIFF image file(s) and metadata. They shall name each extracted text file such that it is identical to that of the first image page of its corresponding file, followed by .txt. They shall not use file names that contain special characters or embedded spaces and shall extract the text of native files directly from the native file. If a file contains redactions, however, the Producing Party may provide OCR of the redacted file in lieu of extracted text.

H. <u>Database Load Files/Cross-Reference Files</u>. Unless otherwise agreed to by the parties, Producing Parties shall include in each production (1) a metadata file (DAT file) using standard Concordance delimiters or carat pipe delimiters and (2) an image load file in Opticon format (.OPT file). They shall provide in a self-identified "Data" folder Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files).

I. <u>Native Files</u>. The following governs the production of native files.

1. Producing Parties shall produce PowerPoint presentations, source code, large diagrams, Excel files and/or .csv files, word processing files with tracked changes, comments, or hidden text (*e.g.*, Word), desktop databases (*e.g.*, Access), and audio/video multimedia files in native format ("<u>Native Files</u>"), unless they have redactions.

2. Producing Parties shall provide native files in a self-identified "Natives" directory. Producing Parties shall produce each native file with a corresponding single-page TIFF placeholder image, which shall state the ESI is being produced as a native file and provide the Confidentiality Designation, if any. Producing Parties shall name each native file with the beginning Bates number that is assigned to that specific record in the production.

      3.      Producing Parties shall include a "NativeLink" entry for each native file in the .DAT load file indicating the relative file path to each native file on the production media. Producing Parties shall produce native files with extracted text and applicable metadata fields as set forth in Paragraphs III.E and III.F. Producing Parties may produce redacted files in either native format or as TIFF image files and OCR in lieu of a Native File, TIFF placeholder image and extracted text file. Producing Parties shall exclude any metadata fields for redacted files that would reveal privileged information.

      4.      If produced as a TIFF, each Producing Party shall make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals hidden data from redacted native files that are produced as TIFF image files and ensures that redacted native files will be formatted to be readable. (For example, column widths should be formatted so that numbers do not appear as "#########").

J.      <u>Structured Data</u>. To the extent that responding to a discovery request requires production of ESI contained in a database, a Producing Party may query the database for discoverable information and generate and produce a report in a reasonably usable and exportable Excel or .csv format. The first line of each such file will, to the extent not unduly burdensome, show the column headers for each field of data included. The Parties shall meet and confer to finalize the appropriate data extraction and production format for specific information contained in a database.

K.      <u>Audio and Video Files.</u> Producing Parties shall produce audio and video files in a reasonably usable format as may be agreed upon by the Parties.

L.      <u>Requests for Other Native Files</u>. Other than as specifically set forth above, a Producing Party need not produce ESI in native format. The Receiving Party may request

production in native format of other documents by (1) providing a list of the Bates numbers of ESI it requests to be produced in native format; and (2) explaining the need for reviewing such ESI in native format. The Responding Party may object and any disputes will be resolved by the Court. If the Producing Party agrees to produce such a native file, the Producing Party shall produce in response to such request each native file with corresponding production number fields and a "NativeLink" entry in the DAT load file indicating the relative file path to each native file on the production media, all extracted text (other than for multimedia or graphic files), and applicable metadata fields set forth in Table I.

**Table I-ESI Metadata Fields**

| FIELD NAME | DESCRIPTION |
|---|---|
| Author | Author of document, if identified in metadata |
| Begin Bates | Unique document identifier and the starting page of a document (*e.g.*, ABC00000001) |
| Bates End | The end number of a document (*e.g.*, ABC0000099) |
| Bates Beg Attach | The starting number of a group or family of documents (*e.g.*, ABC0000001) |
| Bates End Attach | The end number of a group or family of the document (*e.g.*, ABC0000099) |
| Custodian | The owner of a document |
| All Custodians | List of all custodians who had custody of the document; when global de-duplication is used, these are custodians whose file has been de-duplicated; multiple custodians separated by semicolons |
| All Participants | For emails only, lists all participants included in lesser-included emails that, without email threading, would have been subject to review |
| Filename | The original name of the file |
| File Extension | File extension of document (*e.g.*, .msg, .docx, .xlsx, etc.) |
| File Size | The size of the file |

| FIELD NAME | DESCRIPTION |
|---|---|
| Document Type | Type of document (*e.g.*, email, e-document, attachment, hardcopy) |
| Date Created | Date document was created (*e.g.*, 01/01/2001) |
| Time Created | Time document was created (*e.g.*, 17:00) |
| Date Last Modified | Date the document was last modified (*e.g.*, 01/01/2001) |
| Time Last Modified | Time the document was last modified (*e.g.*, 17:00) |
| Date Last Accessed | Last access date of the document as extracted during processing from the file metadata |
| Time Last Accessed | Last access time of the document as extracted during processing from the file metadata |
| Date Sent | Date email was sent (*e.g.*, 01/01/2001) |
| Time Sent | Time email was sent (*e.g.*, 17:00) |
| Date Received | Date email was received (*e.g.*, 01/01/2001) |
| Time Received | Time email was sent (*e.g.*, 17:00) |
| Email From | Sender of email |
| Email Subject | Subject line of email |
| Email To | Recipient(s) of email |
| Email BCC | Blind-copied recipients of email |
| Email CC | Copied recipients of email |
| MD5 Hash | MD5 Hash Value of file |
| Native Link | Relative file path of native file |
| File Path | Original file path where file was kept (by the custodian) |
| Pages | Number of pages per document |

| FIELD NAME | DESCRIPTION |
|---|---|
| Confidentiality | Confidential, Confidential Health Information, or Attorneys' Eyes Only |
| Redactions | Yes/No |
| Source | Person, shared drive, or other source from whom files were collected |
| Prod Volume | Volume in which the Document was produced (*e.g.*, VOL001) |

M. <u>Confidentiality Designations</u>. If a Producing Party reduces native files or other ESI designated "Confidential," "Confidential Health Information," and/or "Attorneys' Eyes Only," as defined by the Confidentiality Stipulation, to Document form, it shall mark the Document with the appropriate designation. Producing Parties shall produce all ESI designated as "Confidential," "Confidential Health Information," and/or "Attorneys' Eyes Only" with the designation in the metadata field pursuant to Table I and in the ESI itself.

N. <u>Encryption of Production Media</u>. To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media. The Receiving Parties in this matter are on notice that certain data produced may originate from custodians in the European Union and the Receiving Parties therefore agree to follow the strictest security standards in guarding access to such data.

O. <u>Time Zone</u>. Producing Parties shall produce all ESI normalized to Eastern Standard Time (EST).

**IV.    PROCESSING OF THIRD-PARTY DOCUMENTS**

  A. A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Stipulation with the subpoena and request that the non-party produce Documents and ESI in accordance with the specifications set forth herein. If an Issuing Party issued a non-party subpoena prior to the execution of this ESI Stipulation, that Issuing Party shall promptly forward a copy of this ESI Stipulation to the non-party and request that the non-party produce Documents and ESI in accordance with the specifications set forth herein.

  B. The Issuing Party is responsible for producing to all other Parties any Documents and/or ESI obtained pursuant to a subpoena. If a non-party refuses to produce Documents and/or ESI in accordance with the specifications set forth here, the Issuing Party has no obligation to conform the non-party's production to such specifications.

  C. Nothing in this ESI Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

**V.    MISCELLANEOUS PROVISIONS**

  A. This ESI Stipulation is intended solely to address the format of Document and ESI productions. Nothing in this ESI Stipulation is intended to affect the rights of any Party to object to any requests or demand for production. Nothing in this ESI Stipulation shall constitute, or operate as, a waiver of any rights of any Party to object to, or to avoid, discovery or disclosure, in whole or in part, under the laws of the United States, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of New Jersey, the Individual Practices of Magistrate Judge Cathy L. Waldor, the Individual Practices of Judge John Michael Vazquez, or any other applicable law, rule, or order.

Case 2:22-cv-02632-CCC-CLW   Document 63   Filed 11/22/22   Page 14 of 15 PageID: 784

B. Nothing in this ESI Stipulation establishes any agreement as to either the temporal or subject matter scope of discovery or as to the relevance or admissibility of any Document or ESI. Nothing in this ESI Stipulation shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI.

C. The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Stipulation. If a Producing Party, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Stipulation or if compliance with such material aspect would be unreasonable, such Producing Party shall inform the Receiving Party in writing as to why compliance with the Stipulation is impossible or unreasonable as soon as reasonably practicable.

D. Nothing herein is intended to, nor shall be construed to, diminish or otherwise affect any Party's discovery obligations.

E. Any application to the Court under or regarding this ESI Stipulation shall be made pursuant to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of New Jersey, and the Individual Practices of Magistrate Judge Cathy L. Waldor.

14

Dated: Newark, New Jersey
      November 21, 2022

| By: | */s/Jeffrey J. Greenbaum* | By: | */s/ E. Evans Wohlforth, Jr.* |
|---|---|---|---|
| | Jeffrey J. Greenbaum | | E. Evans Wohlforth, Jr. |
| | Katherine M. Lieb | | GIBBONS P.C. |
| | SILLS CUMMIS & GROSS P.C. | | One Gateway Center |
| | One Riverfront Plaza | | Newark, NJ 07102-5310 |
| | Newark, New Jersey 07102 | | ewohlforth@gibbonslaw.com |
| | (973) 643-7000 | | |
| | | | |
| | Adeel A. Mangi | | David Elsberg |
| | Harry Sandick | | Andrew R. Dunlap |
| | George LoBiondo | | Meredith Nelson |
| | PATTERSON BELKNAP WEBB & TYLER LLP | | SELENDY GAY ELSBERG PLLC |
| | 1133 Avenue of the Americas New York, New York 10036 | | 1290 Avenue of the Americas New York, NY 10104 |
| | (212) 336-2000 | | Tel: 212-390-9000 |
| | | | |
| | *Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.* | | *Attorneys for Defendant Save On SP, LLC* |

SO ORDERED this 22nd day of November, 2022

                                                s/ Cathy L. Waldor
                                                HON. CATHY L. WALDOR
                                                United States Magistrate Judge