January 5, 2023

**By ECF**

Hon. Cathy L. Waldor
U.S. District Court for the District of New Jersey
50 Walnut Street, Room 4040
Newark, NJ 07102

> Re:    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC***
> ***(Case No. 2:22-cv-02632-JMV-CLW)***

Dear Judge Waldor:

We submit this joint letter on behalf of the parties in the above-captioned matter pursuant to the Court's Civil Case Management Order ¶ 7 and Local Rule 37.1 governing discovery disputes.

On December 7 and 8 and December 22, 2022, the parties met and conferred in good faith in an attempt to resolve several disputes related to Defendant Save On SP, LLC's ("SaveOnSP") Responses and Objections to Plaintiff Johnson & Johnson Health Care Systems Inc.'s ("JJHCS") First and Second Set of Requests for Production. The parties also exchanged letters and emails on these issues on December 9, 21, and 28, 2022. JJHCS believes that the parties are at an impasse on a number of Requests, as detailed below; SaveOnSP does not agree that the parties have exhausted the meet-and-confer process or are at impasse on all those issues. JJHCS respectfully requests that the Court resolve these disputes.

At JJHCS's request, the parties are submitting two separate letters. This letter provides some background and addresses four cross-cutting issues that apply to many of the JJHCS Requests. A second letter that we are filing contemporaneously addresses additional disputes specific to individual Requests. SaveOnSP believes that the issues in the two letters overlap and would have been best presented in a single letter and asks that the Court resolve all issues presented in both letters simultaneously.

## I.    RELEVANT BACKGROUND

### *JJHCS's Statement of the Relevant Background*

JJHCS brings this action to recover damages and enjoin a tortious scheme by SaveOnSP to exploit JJHCS's patient assistance program, "CarePath." CarePath provides patients with funds to help them afford medications that are marketed by the Janssen Pharmaceutical Companies of Johnson & Johnson. This financial support is critical to ensuring that patients have

Hon. Cathy L. Waldor
January 5, 2023
Page 2

uninterrupted access to their prescribed treatments at a time when commercial insurers are imposing ever-higher copays or similar cost-sharing burdens on patients.

By its own admission below, SaveOnSP exists solely to "take advantage" of patient assistance programs like CarePath. SaveOnSP seizes funds meant to help patients for its own benefit and that of its business partners in the health insurance industry—all in violation of the CarePath Terms & Conditions. Compl., Dkt. 1, ¶¶ 1-5, 8-17, 50-88. SaveOnSP also prevents these copay assistance funds from contributing to patients' deductibles and maximum out-of-pocket costs, causing patients' overall healthcare costs to rise. SaveOnSP's misconduct thus not only harms JJHCS but also the patients that JJHCS serves. *Id.* ¶¶ 11-13, 60-63, 74-78, 88, 89-99, 114; *see also* Dkt. 34 at 8-10, 29-35. SaveOnSP carries out this scheme in part by collaborating with health plans to change each plan's designation of Janssen drugs from "essential" health benefits to "non-essential" health benefits under the Affordable Care Act (the "ACA"), even if the drugs are actually essential to the health of the patients who rely on them. This change enables SaveOnSP and its partners to avoid the statutory maximum for out-of-pocket costs and, in turn, extract more funds from CarePath. *Id.* ¶¶ 9, 10, 28, 43, 54.

JJHCS asserts two claims: (1) a tortious interference with contract claim under New Jersey common law, and (2) a deceptive trade practices claim under New York General Business Law ("GBL") § 349. JJHCS believes that SaveOnSP has caused JJHCS to pay at least $100 million more from CarePath than it otherwise would have, *id.* ¶ 5, but JJHCS cannot accurately assess its damages until it has access to discovery that SaveOnSP is refusing to provide.

To prove its tortious interference claim, JJHCS will show that (1) JJHCS has a contract with patients, (2) SaveOnSP's interference caused a breach of that contract, (3) SaveOnSP's interference is intentional, (4) SaveOnSP's interference is wrongful and unjustified, and (5) SaveOnSP's interference has caused JJHCS damage. *See, e.g., Dello Russo v. Nagel*, 358 N.J. Super. 254, 268 (App. Div. 2003). With respect to whether interference is wrongful and unjustified, courts look to several factors, including whether the actor uses improper means to accomplish the interference. *See Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 40 (N.J. 1989) (*per curiam*) (considering whether the defendant's interference was "sanctioned by the 'rules of the game'"); *see also E Z Sockets, Inc., v. Brighton-Best Socket Screw Mfg. Inc.*, 704 A.2d 1364, 1370 (N.J. Super. 1996) (providing that examples of improper means include "fraud, intimidation, misrepresentation, criminal or civil threats, and/or violations of law").

To prove its GBL claim, JJHCS will show that (1) SaveOnSP's acts are "directed to consumers," (2) they are materially "deceptive or misleading," and (3) JJHCS has been injured as a result. *E.g., Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 744 (N.Y. 1995). Because JJHCS is not a consumer, it will also show that there is "some harm to the public at large." *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003). Here, that public harm includes harm to patients.

SaveOnSP's refusal to provide highly relevant discovery is merely its latest effort to frustrate the efficient litigation of this matter. This case has been pending for more than seven

Hon. Cathy L. Waldor
January 5, 2023
Page 3

months without any material discovery. And while SaveOnSP states below that it has agreed to many different categories of documents, it has carefully tailored the scope of those categories to preclude what are likely the most telling and inculpating documents, such as internal communications about a variety of subjects. *See* Section II.C, *infra.*

Indeed, the number of issues discussed in these joint letters reflect the breadth of what SaveOnSP has *not* agreed to produce. Just to name a few of the categories of documents that SaveOnSP refuses to produce even after weeks of back and forth makes plain that SaveOnSP seeks to block JJHCS from receiving essential discovery including, for example: (i) the identities of the health plans with whom it contracts; (ii) the identities of the patients who are enrolled in CarePath and whose enrollment in SaveOnSP's program has breached the Terms & Conditions to which those patients agreed and caused damages to JJHCS; (iii) most internal communications at SaveOnSP, asserting an unprecedented argument that discovery may not encompass internal communications; (iv) SaveOnSP's practices with respect to other manufacturer assistance programs; (v) SaveOnSP's communications with the patients who are enrolled in CarePath; (vi) most communications relating to a crucial presentation given to health plans in order to persuade them to partner with SaveOnSP; (vii) data relating to the increased copay support drawn by patients who are strong-armed to participate in SaveOnSP; (viii) all relevant information relating to the fees paid to SaveOnSP, which are based on the extra funds drained from CarePath and other manufacturer assistance programs.

Below, SaveOnSP asserts that the parties have not actually reached an impasse and that there is still more to discuss. The facts do not support that charge, and reveal instead that SaveOnSP is simply seeking to delay resolution of these issues as it has consistently done. The parties have exchanged lengthy letters and engaged in three separate meet and confers.[1] The outcome of those discussions makes clear that the parties have a fundamental difference of opinion on the issues outlined in these joint letters, and that intervention from the Court is appropriate. SaveOnSP suggests it is interested in compromise rather than delay, but there are many instances where it has not made reasonable counter-proposals identifying specific categories of documents

---

[1] At JJHCS's request, the parties had two meet and confers on December 7 and 8. On December 9, JJHCS sent SaveOnSP a letter memorializing the conferrals, identifying where JJHCS believed the parties had reached an impasse, and requesting that SaveOnSP respond by December 14. SaveOnSP did not provide a substantive response until December 21. On December 12, SaveOnSP informed JJHCS that it "may not be able to" respond by December 14, but it did not indicate when it would be able to provide a response. On December 19, JJHCS sent additional emails requesting an update from SaveOnSP. SaveOnSP responded, *inter alia*, that it intended to respond on the week of December 19. On December 20, JJHCS requested a substantive response from SaveOnSP by December 21. On December 21, SaveOnSP finally sent JJHCS a letter responding to JJHCS's December 9 letter and raising several other discovery issues. On December 22, JJHCS sent SaveOnSP a draft of the joint letters, and the parties met and conferred once again on the issues related to JJHCS's requests.

Hon. Cathy L. Waldor
January 5, 2023
Page 4

it is willing to produce, or particularized its claims of burden by quantifying volumes of documents. Instead, SaveOnSP proposes more discussions in the abstract, putting the onus on JJHCS to guess what would be less burdensome and come up with new proposals.[2] SaveOnSP should not be allowed to use the meet and confer requirement as a pretext for delay.

SaveOnSP also inaccurately resorts to labeling JJHCS's requests as overbroad. For example, SaveOnSP takes issues with one of JJHCS's requests because, according to SaveOnSP, it would cover "*every* communication that SaveOnSP has ever had with any patient enrolled or eligible to enroll in CarePath *on any topic*, and *every* internal document about those communications." *See* Section I, *infra* (emphasis in original). But SaveOnSP has not explained what topics other than the subject-matter implicated by this litigation it would be discussing with CarePath patients, and nor has it provided any concrete assessment of how many documents fall into this category that it claims is so broad.

SaveOnSP also attempts in many of its sections to combine discussion of JJHCS's requests with discussion of SaveOnSP's requests. This is improper. There are not yet any ripe disputes regarding SaveOnSP's requests, and indeed the parties have not yet met and conferred even once on those requests, which SaveOnSP served long after JJHCS served its own requests that are the subject of this letter. So there is nothing for the Court to resolve with respect to SaveOnSP's requests. Moreover, while SaveOnSP attempts to portray some of its requests as "reciprocal" to JJHCS's own requests and therefore appropriate for joint consideration, the issues implicated by the parties' respective requests are fundamentally different because SaveOnSP's intent and conduct is at issue in this litigation, and JJHCS's is not. Nor is this exchange of letters the appropriate place to debate the merits of SaveOnSP's burdensome and disproportionate document requests.

Finally, notwithstanding SaveOnSP's complaints about process, on the substance of many of these disputes SaveOnSP's unreasonable positions have eliminated any potential for compromise. For instance, JJHCS believes that there is no basis for SaveOnSP to "anonymize"— that is, withhold—the identities of patient and health plans whom SaveOnSP has involved in its wrongful scheme. SaveOnSP believes there is, and acknowledged in the last meet and confer that the parties were at an impasse on that issue. SaveOnSP has also had most of JJHCS's discovery requests for more than seven months, including more than two months since this Court denied SaveOnSP's motion to stay discovery on October 18, 2022. SaveOnSP served its Responses and Objections to JJHCS's requests on November 23, 2022, and the parties have been negotiating

---

[2] Although SaveOnSP cites case law to argue that JJHCS bears the burden of showing that its requests are relevant, as laid out in these letters, JJHCS has amply explained why its requests are relevant. It is SaveOnSP that has failed to rebut those explanations or propose an otherwise acceptable alternative.

Hon. Cathy L. Waldor
January 5, 2023
Page 5

regarding SaveOnSP's objections for the past five weeks.[3]  It is past time for these disputes to be resolved so that, at long last, discovery in this case can proceed.

### SaveOnSP's Statement of the Relevant Background

SaveOnSP exists because pharmaceutical companies like JJHCS hike the cost of their specialty drugs year after year, lining their pockets at the expense of the employee benefit plans that provide most Americans with their healthcare. JJHCS uses its copay assistance program CarePath to induce patients to use its drugs, knowing that it will reap outsized returns on that investment because the patients' health plans will foot the bill for nearly all the costs of the drugs. SaveOnSP helps health plans structure their benefits to encourage patients to take advantage of the copay assistance funds that JJHCS and other manufacturers voluntarily make available. Put simply—if JJHCS offers $20,000 in copay assistance per patient per year, SaveOnSP helps plans structure their benefits so that patients will actually use most or all of the full $20,000 that JJHCS makes available instead of leaving that money on the table. These benefits help plans manage their costs so that they can continue covering many specialty drugs that they are not legally obligated to cover.

JJHCS knows that federal law prevents it from suing health plan sponsors to force them to change benefit terms it does not like. So JJHCS sued SaveOnSP, attempting to do the same thing indirectly. The goal of JJHCS's suit is not to help patients, but to push SaveOnSP out of business. JJHCS and other pharmaceutical companies could then force commercial health plans to change their benefits so that patients use less patient assistance, thus boosting JJHCS's profits at employers' expense. On July 15, 2022, SaveOnSP moved to dismiss JJHCS's Complaint, including on the grounds that JJHCS's claims are preempted by ERISA and that JJHCS failed to plead elements of its claims. SaveOnSP's motion was fully briefed on August 28, 2022.

Although it was forbidden from doing so, Fed. R. Civ. P. 26(d)(1)-(2), JJHCS served SaveOnSP with a set of 42 Requests for Production on the day that it served its Complaint. JJHCS served an additional set of ten requests on October 21, 2022. In accordance with Federal Rule of Civil Procedure 34(b)(2)(A), both sets of requests were deemed served on October 24, 2022—the date of the parties' Rule 16(f) conference—and SaveOnSP timely served its Responses and Objections to those Requests on November 23, 2022, thirty days later. JJHCS now implies that SaveOnSP has been dilatory because JJHCS served its Requests seven months ago. In reality, SaveOnSP fully complied with the Federal Rules and the schedule set by this Court.

In its initial Responses and Objections, SaveOnSP agreed to produce documents in response to 41 of JJHCS's 52 Requests, including large swaths of core documents such as: (1) documents reflecting SaveOnSP's organizational structure; (2) documents reflecting patient information and the content of communications with patients, including scripted and unscripted

---

[3] SaveOnSP suggests that the parties have not been negotiating for five weeks, but JJHCS requested a meet and confer on November 30, which is exactly five weeks from January 4, 2023.

Hon. Cathy L. Waldor
January 5, 2023
Page 6

communications and complaints and inquiries from patients; (3) communications from members of plans advised by SaveOnSP who use any Janssen Drug who refused to enroll, tried to opt out, or initially enrolled but cancelled their enrollment; (4) documents reflecting SaveOnSP's communications with pharmacies about the warm transfer of patients using Janssen Drugs to SaveOnSP; (5) documents sufficient to show the terms of contracts with health insurance plans; (6) documents and communications reflecting the advice SaveOnSP gives to health plans; (7) documents reflecting savings for plans advised by SaveOnSP; (8) drug lists featuring Janssen Drugs and documents and communications reflecting advice regarding the same; (9) documents sufficient to show how SaveOnSP determines the CarePath funds available to member of the plans that it advises; (10) communications with JJHCS; (11) documents reflecting SaveOnSP's relationship with Express Scripts Inc.; (12) documents reflecting SaveOnSP's relationship with Accredo; (13) documents showing CarePath payments, savings to health plans, and SaveOnSP's fees; (14) final versions of marketing materials; and (15) documents concerning adherence and non-medical switching. Through the meet-and-confer process, SaveOnSP agreed to produce even more documents, including documents responsive to two additional Requests.[4]

        Contrary to JJHCS's suggestion, JJHCS has not been negotiating with SaveOnSP for five weeks. On November 30, 2022, JJHCS requested that the parties meet and confer. SaveOnSP and JJHCS met and conferred on SaveOnSP's Responses and Objections to JJHCS's RFPs on December 7 and 8, 2022. During that meet and confer, counsel for JJHCS did not say that the parties were at impasse on any issues. The next evening, JJHCS sent SaveOnSP an eleven-page letter declaring impasse on twelve issues, misstating SaveOnSP's position on several issues, and demanding a response within three business days. *See* Exhibit 1 (Dec. 9 Letter from H. Sandick to M. Nelson) ("Dec. 9 Letter"). SaveOnSP provided a detailed, 18-page response on December 21, Exhibit 2 (Dec. 21 Letter from M. Nelson to H. Sandick) ("Dec. 21 Letter"), disputing JJHCS's declarations of impasse on several issues, asking questions to help progress the parties' negotiations, agreeing to produce some categories of documents that JJHCS said it wanted, raising issues with JJHCS's responses to SaveOnSP's document requests, and inviting JJHCS to meet and confer. The parties scheduled a meet-and-confer call for the afternoon of December 22. Exhibit 3 (Dec. 9-29, 2022 Email Chain) at 6-8.

        Two hours before the parties were to meet and confer on December 22, JJHCS sent SaveOnSP its half of a proposed joint letter to the Court, raising several arguments that it had never presented to SaveOnSP, requesting relief on eleven issues, and failing to respond to many points that SaveOnSP made in its December 21 letter. JJHCS demanded that SaveOnSP provide its half of the joint letter. During the parties' call two hours later, SaveOnSP stated that it was willing to provide a response to JJHCS's proposed joint letter if JJHCS insisted on filing but noted that JJHCS had made several new arguments and that the parties were not at impasse on many of the

---

[4] JJHCS's list of what SaveOnSP has not agreed to produce is not fully accurate. SaveOnSP explains what it is willing to produce and could be willing to produce if JJHCS will narrow some of its Requests, in the remainder of this letter and in response to JJHCS's other letter.

Hon. Cathy L. Waldor
January 5, 2023
Page 7

issues that JJHCS raised. SaveOnSP proposed that the parties finish fully meeting and conferring before JJHCS submitted a letter to the Court. JJHCS refused and demanded that SaveOnSP provide its half of a joint letter so that JJHCS could submit these disputes to the Court. Exhibit 3 (Dec. 9-29, 2022 Email Chain) at 4-5.

JJHCS has not complied with its meet-and-confer obligations. "[A] good faith effort requires a discussion of merits of positions as well as a proposed compromise, not simply a 'I am entitled to/you are not' exchange." *Jemison v. Phillips-Van Heusen*, No. CV 07-3553 (FLW), 2008 WL 11518519, at *1 (D.N.J. Sept. 22, 2008). JJHCS has not narrowed a single one of the 31 Requests on which it now moves. It has instead rushed to declare impasse and to burden this Court with 32 pages of briefing instead of working to narrow the parties' disputes.

SaveOnSP is glad for the Court to resolve the few issues where the parties are genuinely at impasse. For the remainder—and majority—of issues, however, SaveOnSP believes that the parties should meet and confer to try to narrow JJHCS's overbroad Requests. For example, JJHCS currently asserts that it is entitled to *every* communication that SaveOnSP has ever had with any patient enrolled or eligible to enroll in CarePath *on any topic*, and *every* internal document about those communications. SaveOnSP remains willing to provide a subset of those documents, but JJHCS has refused to explain which communications are relevant to its claims. Contrary to JJHCS's assertions that SaveOnSP improperly places the "onus" on JJHCS to say what it wants, the onus is on JJHCS to establish the relevance of every category of documents sought. *Arena v. RiverSource Life Ins. Co.*, Civ. Action No. 2:16-cv-5063-JLL-SCM, 2017 WL 6513056, at *2, 6 (D.N.J. Dec. 19, 2017) (a party seeking to compel discovery must demonstrate the relevance of the documents sought). Neither SaveOnSP nor the Court should have to guess at what types of documents JJHCS believes are relevant.

The Court should deny JJHCS's motions to compel and order JJHCS to meet and confer with SaveOnSP on the parties' outstanding issues.

Hon. Cathy L. Waldor
January 5, 2023
Page 8


## II.    GLOBAL ISSUES[5]

### A.    Request Nos. 4, 5, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 28, 31, 32, 33, 34, 42, and 44[6]

*JJHCS's Position:  SaveOnSP May Not Withhold the Names of Relevant Health Plans*

JJHCS has requested documents sufficient to identify SaveOnSP's customers, i.e., every health plan with which SaveOnSP has contracted for participation in the SaveOnSP Program (Request No. 4). JJHCS has also requested other categories of documents that would include or reveal health plan identities, such as documents and communications relating to SaveOnSP's methods for generating "savings" for health plans (Request No. 32). SaveOnSP objected to these requests in part on the ground that "producing the identities of . . . health plans . . . is not sufficiently relevant and necessary to JJHCS's case to outweigh the harm that disclosure of that information could cause to SaveOnSP, plan participants, and health plans." *See, e.g.*, Response to Request No. 14. Thus, SaveOnSP responded that in its production of documents it would "anonymize references to the identities of . . . health plans." *See, e.g., id.*

SaveOnSP's objections are specious and cannot overcome JJCHS's entitlement to this obviously relevant information. Allowing SaveOnSP to remove health plan names will render its production of relevant document shorn of context and likely incoherent.  For example, it will make it impossible to follow discussion of issues and negotiations of contracts across different documents and emails, much less to do with the critical context of the size, scale and area of operation of the relevant health plan. Moreover, SaveOnSP operates its program in partnership with health plans, and since JJHCS challenges SaveOnSP's program for the harm it is causing, JJHCS is entitled to know the identities of SaveOnSP's partners in its scheme. JJHCS may also pursue further discovery from those plans to establish their role in the SaveOnSP scheme and its impact on JJHCS and patients.  Further, SaveOnSP has itself placed health plans roles at issue in its motion to dismiss and other statements in this action, including, for example, arguing that JJHCS's claim should be preempted because the critical decisions relating to the SaveOnSP Program are purportedly made by the health plans, and not by SaveOnSP itself. *See, e.g.,* Mem. of Law in Support of Def.'s Mot. to Dismiss, Dkt. 31-1, at 8-13. JJHCS is entitled to know the

---

[5] Some of these global issues also infect SaveOnSP's Responses and Objections to JJHCS's First Set of Interrogatories.  For example, SaveOnSP refused to provide any information at all in response to JJHCS's interrogatory seeking the name of each health plan SaveOnSP has advised based on the anonymization issue laid out in Section II.A.

[6] For the Court's reference, the Requests and Responses in dispute for these Global Issues are provided in full in Appendix A to this letter. The full Requests and Responses are also provided for the Court's reference as Exhibits 4, 5, and 6.

Hon. Cathy L. Waldor
January 5, 2023
Page 9

identities of those actors to test SaveOnSP's claims and to present the full story regarding SaveOnSP's conduct and its partners to the jury.

SaveOnSP's claims of potential harm are inadequate. Health plans routinely publicly advertise the fact that they participate in the SaveOnSP Program.[7] And even those that do not state that fact in online materials necessarily reveal that fact to patients enrolled in those plans. Moreover, even if this was somehow confidential business information, the Court has entered a Protective Order, which eliminates any potential harm from disclosure to JJHCS, which is not even a competitor to SaveOnSP.

SaveOnSP now speculates further that revealing health plan identities could cause SaveOnSP harm because JJHCS may try to subpoena or contact those health plans. But setting aside whether SaveOnSP is correct to condemn third-party discovery as a general matter, SaveOnSP does not explain how that justifies withholding health plan identities in the first instance. Indeed, under Federal Rule of Civil Procedure 45(a)(4), SaveOnSP is entitled to notice of any subpoena for the production of documents that JJHCS seeks to serve, and may move to quash.[8] SaveOnSP has not identified any non-speculative harm posed by disclosure of the names

---

[7] For example, Blue Cross Blue Shield of Western New York encourages its members to enroll in SaveOnSP. *See* BLUE CROSS BLUE SHIELD OF WESTERN NEW YORK, *SAVEONSP: COPAY OFFSET PROGRAM FOR SPECIALTY MEDICATION*, https://www.bcbswny.com/content/dam/BCBSWNY/ broker-group/public/pdf/group/computer-task-group/Saveon-Member-Flyer.pdf. Numerous large employer and university plans also publicly advertise their partnership with SaveOnSP. *E.g.,* WRITERS GUILD OF AMERICA PENSION & HEALTH PLANS, https://www.wgaplans.org/saveonsp/; DUKE UNIVERSITY HUMAN RESOURCES, https://hr.duke.edu/benefits/medical/pharmacy-benefits/ saveonsp; IONA UNIVERSITY, *SAVEONSP – VARIABLE COPAYMENTS FOR CERTAIN SPECIALTY PHARMACY MEDICATIONS*, https://www.iona.edu/offices/human-resources/employee-benefits/ health-insurance/saveonsp-variable-copayments-certain; NORTHWESTERN UNIVERSITY (WITH BLUE CROSS BLUE SHIELD OF ILLINOIS), *IT'S ALL ABOUT YOUR BENEFITS 2022*, https://www.northwestern.edu/hr/documents/benefits/2022-benefits-guide.pdf; UNIVERSITY OF RICHMOND (WITH CIGNA), *PAY $0 FOR SELECT SPECIALTY MEDICATIONS*, https://hr.richmond.edu/ benefits/insurance/medical-plans/pdf/SaveonSP.pdf; TEXAS A&M UNIVERSITY (WITH BLUE CROSS BLUE SHIELD OF TEXAS), *PRESCRIPTION PROGRAMS AND YOUR A&M SYSTEM PRESCRIPTION DRUG BENEFITS*, https://www.tamus.edu/business/prescription-programs-and-your-am-system-prescription-drug-benefits/.

[8] For this reason, most of the cases SaveOnSP cites are irrelevant at this juncture because they address motions to quash third party subpoenas, and thus do not support SaveOnSP's effort to evade its own discovery obligations or doctor its own business records. The only exception is *Thompson v. Trident Seafoods Corp.*, and that case is materially distinguishable. No. C11-0120RSL, 2012 WL 293865 (W.D. Wash. Jan. 31, 2012). There, a former employer in a sexual harassment and hostile work environment suit sought to discover the identities of plaintiff's new

Hon. Cathy L. Waldor
January 5, 2023
Page 10

of health plans that it works with under the Protective Order. Nor is blocking a litigant from interviewing witnesses a proper basis to oppose discovery. SaveOnSP has not cited any law justifying a purported right to redact this information from relevant documents given the entry of the Protective Order.[9] SaveOnSP's insistence that such discovery can only proceed with its approval, or only as it relates to those health plans that have publicly disclosed their collaboration with SaveOnSP, is improper. SaveOnSP does not get to set the terms of the discovery process in this case.

### SaveOnSP's Position: SaveOnSP Needs Protection Against JJHCS's Commercially Destructive Third-Party Discovery of SaveOnSP's Clients

JJHCS seeks the right to subpoena or otherwise "interview" all SaveOnSP's health plan clients—acts that would severely disrupt SaveOnSP's client relationships and further JJHCS's commercial objective of destroying SaveOnSP's business. Because JJHCS identifies no legitimate need at this point in the litigation for the identities of all SaveOnSP's clients, SaveOnSP proposed to anonymize references to health plan identities for now (except for those health plans who have publicly announced their relationship with SaveOnSP) in documents that it produces. SaveOnSP is not withholding any *documents* on this basis—it simply intends to anonymize the identities of its clients for now. SaveOnSP invited JJHCS to discuss alternative methods of safeguarding SaveOnSP's clients against widespread discovery as a way of resolving this dispute, but JJHCS ignored SaveOnSP's invitation.

JJHCS has repeatedly stated that it intends to subpoena, interview, or otherwise contact SaveOnSP's health plan clients. Most of SaveOnSP's thousands of clients are private, employer-sponsored, self-funded plans who keep their relationship with SaveOnSP confidential from drug makers like JJHCS. If contacted by JJHCS and dragged into this litigation, many health plans would consider ending their relationship with SaveOnSP. JJHCS subpoenaing all—or even many—of SaveOnSP's clients thus poses a risk of serious injury to SaveOnSP. JJHCS dismisses

---

employers. The court found that such identities were only marginally relevant because "Plaintiff's subsequent employment will have no impact on the jury's determination of whether plaintiff was sexually harassed while working for Trident, whether she was subject to a hostile work environment, and/or whether Trident retaliated against plaintiff for complaining of sexual harassment" and therefore granted plaintiff's protective order against producing those identities. *Id.* at *1. Here, by contrast, aside from the fact that SaveOnSP has not formally sought a protective order, health plans and patients are at the heart of the subject-matter in this action.

[9] SaveOnSP also misleadingly cites two cases to suggest that JJHCS must show that health plan and patient identities are not only relevant, but necessary. *See Taro Pharms. U.S.A., Inc. v. Perrigo Israel Pharms. Ltd.*, No. 14:cv-989, 2015 WL 7737310, at *3 (D. Del. Dec. 1, 2015); *In re Ethi-Care Advisors, Inc.*, Civ. A No. 20-1886 (WJM), 2020 WL 4670914, at *3-4 (D.N.J. Aug. 12, 2020). In fact, those cases state that the necessity inquiry comes into play only after the party resisting disclosure shows that the information is a trade secret, which SaveOnSP has not done.

Hon. Cathy L. Waldor
January 5, 2023
Page 11

this harm as "speculative." But subpoenas to a party's client base pose real, non-speculative risks of harm. *Accusoft Corp. v. Quest Diagnostics, Inc.*, No. CIV.A. 12-40007-FDS, 2012 WL 1358662, at *1, 10-11 (D. Mass. Apr. 18, 2012) (quashing third-party subpoenas directed at defendants' customers because the subpoenas would "more than likely" harm defendants' relationships with the subpoenaed customers). JJHCS has rejected SaveOnSP's invitation to resolve this dispute through reasonable limitations on third-party discovery. This Court can and should deny JJHCS's motion to compel on the basis that JJHCS's desired third-party discovery would be unduly oppressive to SaveOnSP. *See Thompson v. Trident Seafoods Corp.*, No. C11-0120RSL, 2012 WL 293865, at *1-2 (W.D. Wash. Jan. 31, 2012) (denying defendants' motion to compel production of plaintiff's employers' identities, because even if those identities were relevant to damages, defendants' desire to take third-party discovery from those employers posed "a risk of annoyance, embarrassment, and oppression" to plaintiff).

JJHCS identifies no other legitimate reason for wanting health plan identities other than to pursue third-party discovery.[10] JJHCS asserts that it needs health plan identities to show SaveOnSP's advice to health plans, health plans' role in the "SaveOnSP scheme," and the method by which health plans make decisions regarding the classification of Janssen drugs. But SaveOnSP has already agreed to produce documents sufficient to show that information while anonymizing health plan identities. JJHCS has not explained how health plan identities are necessary for it to investigate SaveOnSP's conduct towards health plans or health plans' role in working with SaveOnSP. *See Taro Pharms. U.S.A., Inc. v. Perrigo Israel Pharms. Ltd.*, No. 14:cv-989, 2015 WL 7737310, at *3 (D. Del. Dec. 1, 2015) (production of confidential business information is not necessary if the party already possesses the information necessary to prove its claims from other documents). SaveOnSP has repeatedly told JJHCS that it will consider revealing certain health plan identities if, after reviewing SaveOnSP's documents, JJHCS makes a showing of particularized need for those identities. JJHCS rejected this offer out of hand.

JJHCS also asserts that certain health plans publicly advertise that they partner with SaveOnSP. That some plans have publicly disclosed that they are clients, however, does not render the identities of those who have not any less confidential. Even if health plans reveal that they

---

[10] JJHCS asserts that it is entitled to this "obviously relevant information." *Supra* at 7. JJHCS misstates the applicable law. Where, as here, a party moves to compel the production of confidential business information, the release of which poses a risk of serious harm to the producing party, the moving party must show not only relevance but also *necessity. In re EthiCare Advisors, Inc.*, Civ. A No. 20-1886 (WJM), 2020 WL 4670914, at *3-4 (D.N.J. Aug. 12, 2020) (the moving party must demonstrate that the inspection of the confidential business information is necessary to prepare its case for trial or that failure to order production would other prejudice the movant). JJHCS says that it only needs to show necessity if the information sought is a trade secret. Not so. In *EthiCare Advisors*, for instance, the court explicitly declined to decide whether the information sought constituted a trade secret but denied the motion to compel for lack of necessity regardless. *Id.* at *3-4.

Hon. Cathy L. Waldor
January 5, 2023
Page 12

work with SaveOnSP to a subset of their patients to encourage those patients to participate in the health plan benefits that SaveOnSP administers, that is not the same as publicly disseminating such information to those who wish to harm SaveOnSP's business, including JJHCS.

JJHCS further asserts that the Protective Order obviates the need to anonymize health plan identities. But, of course, the Protective Order cannot prevent JJHCS from issuing subpoenas to or otherwise contacting SaveOnSP's clients, which poses a significant risk of harm to SaveOnSP. JJHCS rejected SaveOnSP's proposal to discuss appropriate limits on JJHCS's subpoenas to and communications with SaveOnSP's clients to guard against this risk. JJHCS instead suggests that SaveOnSP should wait until after it serves its subpoenas, and then move to quash. By that point, SaveOnSP's clients would already have been dragged into this litigation and forced to defend themselves against subpoenas, and much of the harm that JJHCS's third-party discovery poses to SaveOnSP would have already come to pass.

JJHCS also asserts that SaveOnSP's proposal to anonymize client names would remove important context and render its production incoherent. Not so. SaveOnSP proposes to assign unique identifiers to each anonymized client. This will allow JJHCS to identify documents and communications related to the same client across SaveOnSP's productions. JJHCS's concerns that anonymizing would "make it impossible to follow discussion of issues and negotiations of contracts across different documents and emails," *supra* at 8 are thus unfounded.

SaveOnSP asks the Court to deny JJHCS's request for health plan identities at this time. JJHCS has not demonstrated any need for the identities at this juncture. *See Wear-Guard Corp. v. Van Dyne-Crotty, Inc.*, No. CIV. A. 90-1948, 1990 WL 209298, at *3 (E.D. Pa. Dec. 13, 1990) (denying a motion to compel discovery of defendant's client list because plaintiff had made no showing that it needed the confidential business information at the time). If JJHCS continues to seek this information, SaveOnSP remains willing to meet and confer with JJHCS to discuss proposals to balance that desire with protections against widespread third-party subpoenas directed at SaveOnSP's clients. SaveOnSP would be glad to submit supplemental briefing on this point if the Court would find it helpful.

**B.    Request Nos. 3, 5, 7, 8, 14, 15, 24, 28, 30, 33, 34, 40, 41 and 42**

*JJHCS's Position:  SaveOnSP May Not Withhold the Names of Affected Patients*

JJHCS has requested documents sufficient to identify every patient enrolled in the SaveOnSP Program and CarePath (Request No. 3). JJHCS has also requested other categories of documents that will disclose patients' identities, such as documents relating to complaints from patients about the SaveOnSP Program (Request No. 33) and transaction or claims level data regarding claims submitted relating to the SaveOnSP Program (Request Nos. 41 and 42). SaveOnSP objected to all these requests on the ground that "producing the identities of plan participants . . . is not sufficiently relevant and necessary to JJHCS's case to outweigh the harm that disclosure of that information could cause to SaveOnSP, plan participants, and health plans."

Hon. Cathy L. Waldor
January 5, 2023
Page 13

*See, e.g.*, Response to Request No. 14. Thus, SaveOnSP states that in its production of documents it will "anonymize references to the identities of plan participants." *See, e.g.*, *id.*

SaveOnSP's purported concerns about disclosure to JJHCS make little sense because JJHCS and its vendors who assist it in administering the CarePath program already know the identities of patient participants because they are, by definition, enrolled in CarePath. SaveOnSP has cited no legal support for its claimed right to redact patient information where the parties have already stipulated to a court-ordered, Health Insurance Portability and Accountability Act of 1996 ("HIPAA") compliant Protective Order. *See* Dkt. 62. The whole purpose of having a HIPAA-compliant Protective Order is to avoid issues like this and to permit the sharing of protected health information in discovery after ensuring that appropriate safeguards are in place.

Patient identities are also relevant and appropriate for discovery. For example, when setting forth its case for why the SaveOnSP program harms patients—which bears upon whether SaveOnSP's conduct is wrongful and unjustified under the tortious interference claim or is directed to consumers and causes public harm under the GBL claim—JJHCS is entitled to track and analyze individual patients' experiences with SaveOnSP through the relevant documents and claims data. JJHCS may choose, for example, to match up a patient's narrative written complaints to SaveOnSP with their corresponding claims data to show their experience. This is all impossible if SaveOnSP is permitted to withhold patient identities.

Patient identities are also critical to JJHCS's damages analyses. In consultation with its experts, JJHCS has determined that the matching of patient identities across data sets will be crucial to JJHCS's efforts to show the harm SaveOnSP has caused. For instance, JJHCS may prove its damages by comparing the amount of CarePath funds used by patients in the SaveOnSP Program with the amount of CarePath funds used by patients not in the SaveOnSP Program. JJHCS may also study how patient copays increased or changed after a patient joined the SaveOnSP Program. None of this can be done reliably if the documents and data do not permit tracking individual patient experiences across data sets, including across SaveOnSP data and CarePath data. To perform that tracking, JJHCS needs patient identities. Otherwise it will be analyzing individual data points with no way to match a patients' data, such as changes in copay amounts, across sets. SaveOnSP suggests that it has already agreed to produce data that will allow JJHCS to perform the damages analyses that it is entitled to perform, but in fact, it has agreed only to produce data on a lump sum basis, which will not allow JJHCS to perform a patient-by-patient analysis.

Finally, JJHCS may also choose to seek discovery from some of the individual patients who have been impacted by SaveOnSP and have them tell their stories to the jury. Again, while SaveOnSP speculates that revealing patient identities could cause SaveOnSP harm because JJHCS may try to subpoena or contact "tens-of-thousands" of patients, SaveOnSP does not explain how that justifies withholding patient names in the first instance before JJHCS has issued a single subpoena. Moreover, SaveOnSP seems to acknowledge that it would be appropriate for JJHCS to contact patients in certain cases by offering to consider revealing patient names where documents produced by SaveOnSP show interactions with a specific patient that support JJHCS's allegations of harm. And while SaveOnSP tries to portray third-party discovery as somehow improper, it is in

Hon. Cathy L. Waldor
January 5, 2023
Page 14

fact a normal part of litigation, and there is no legitimate basis for SaveOnSP to suggest that JJHCS would conduct such discovery in a way that would be disruptive to its own patients. JJHCS is entitled to know patient identities in order to conduct further discovery.

***SaveOnSP's Position: SaveOnSP Needs Protection Against JJHCS's Commercially Destructive Third-Party Discovery of Patients Enrolled in Plans Advised by SaveOnSP***

JJHCS seeks the right to serve third-party subpoenas on, or otherwise contact for litigation purposes, all patients enrolled in health plans advised by SaveOnSP.[11] The prospect of JJHCS subpoenaing or otherwise contacting SaveOnSP's tens-of-thousands of patients would pose a significant risk to SaveOnSP, those patients, and SaveOnSP's client health plans. Such subpoenas would harm and confuse the very patients whom JJHCS claims that it wants to protect. When served with a subpoena or otherwise contacted by JJHCS, those patients—largely strangers to litigation who likely would be stressed by simply receiving such outreach—could feel that they need to retain a lawyer to respond. Those subpoenas could also confuse patients about the status of their plan benefits and SaveOnSP's role in administering those benefits. In turn, patients could pressure their health plans to alter, or terminate, their relationships with SaveOnSP. To protect against this serious harm, SaveOnSP proposed anonymizing patient identities until, and if, JJHCS could make a showing of particularized need for specific patient identities. *See, e.g.*, *Winona PVD Coatings, LLC v. Excel Enters., LLC*, No. 3:16-CV-19-WCL-CAN, 2016 WL 9347091, at *3 (N.D. Ind. Apr. 18, 2016) (deferring subpoenas until after party discovery because such subpoenas posed a risk to plaintiff's business relationships with its customers and suppliers); *Accusoft Corp.*, 2012 WL 1358662, at *1, 10-11 (quashing third-party subpoenas directed at defendants' customers because the subpoenas would cause harm to defendants' customer relationships). JJHCS rejected this proposal. SaveOnSP invited JJHCS to discuss limits on third-party discovery to patients as a way of resolving this dispute, but JJHCS declined SaveOnSP's invitation.

JJHCS asserts that it already knows the identities of patients on CarePath, and that the Protective Order adequately addresses any concerns about the disclosure of confidential patient health information. But JJHCS does not know which patients on CarePath are also enrolled in plans that contract with SaveOnSP. And the Protective Order does not protect against JJHCS subpoenaing patients or otherwise contacting them for litigation purposes, which poses a significant risk of alarming patients and hurting SaveOnSP's business.

JJHCS's statement that it will not conduct third-party discovery in a way that would be disruptive "to its own patients" is disingenuous. JJHCS wants those patients to keep using Janssen Drugs while forcing their health plans to change their benefit terms and end their relationships with SaveOnSP. This would harm SaveOnSP (which would lose clients) and health plans (which, if they change plan terms, would pay more of the exorbitant prices that JJHCS

---

[11] JJHCS refers to patients enrolled in the "SaveOnSP Program," but patients do not enroll in any SaveOnSP program. *See* Br. Supp. Mot. Dismiss (ECF No. 31-1) at 5-7. SaveOnSP interprets JJHCS's Requests to seek discovery about patients enrolled in health plans advised by SaveOnSP.

Hon. Cathy L. Waldor
January 5, 2023
Page 15

charges for Janssen Drugs). Courts routinely limit third-party subpoenas based on foreseeable commercial harm to a party or its clients. *See, e.g.*, *Heckler & Koch, Inc. v. German Sport Guns GMBH*, No. 1:11-CV-1108-SEB-TAB, 2014 WL 1323226, at *1-2 (S.D. Ind. Mar. 28, 2014) (validating a party's concern that non-party subpoenas to a long list of customers were designed to harass while permitting subpoenas to a small sample of customers). It is no answer for JJHCS to say that third-party discovery is "normal"; there is nothing normal about the commercial harm that JJHCS seeks to inflict on SaveOnSP through third-party discovery here. JJHCS points to no case allowing a party to seek discovery from tens-of-thousands of non-parties—the majority of whom would have duplicative information.

JJHCS has not identified a valid reason why it needs these identities other than for third-party discovery. JJHCS alleges that it needs patient identities because it wants to track patient experiences with SaveOnSP. But SaveOnSP has already agreed to produce, *inter alia*, communications with patients enrolled in health plans advised by SaveOnSP who were enrolled in or eligible to enroll in CarePath; all complaints, concerns, or inquiries about SaveOnSP's services related to Janssen Drugs; documents identified concerning benefits offered by plans advised by SaveOnSP; documents and communications concerning changes to copays for Janssen Drugs; and marketing materials. SaveOnSP is willing to provide even more documents if JJHCS will engage in the meet and confer process and identify what it wants. JJHCS has not explained why these documents are not sufficient to prove its claims. *See Taro Pharms.*, 2015 WL 7737310, at *3 (explaining that where a party can prove its claims through the documents already produced, the producing party need not produce confidential business information).

JJHCS also asserts that it needs patient identities to calculate damages, but it does not provide a credible explanation why it needs patient names to do that math. JJHCS states that its damages are the difference between what it actually paid in CarePath funds for patients enrolled in SaveOnSP-advised plans and what it would have paid for those patients if SaveOnSP did not exist. But SaveOnSP has already agreed to provide JJHCS with data that will allow it to calculate this figure, including information on the amounts JJHCS pays in CarePath funds on behalf of patients enrolled in SaveOnSP-advised plans and information on those plans' historical copays for Janssen Drugs. If JJHCS believes it needs more or more granular data (including anonymized patient-level data), SaveOnSP is willing to consider that request.

SaveOnSP asks the Court to deny JJHCS's requests for patient identities at this time. JJHCS has not shown a need for those identities other than to subpoena or otherwise contact patients enrolled in plans advised by SaveOnSP, which could severely harm SaveOnSP. SaveOnSP continues to be willing to consider JJHCS's requests for specific patient identities based on a particularized showing. And SaveOnSP remains willing to meet and confer with JJHCS to discuss balancing JJHCS's desire to learn patient identities with appropriate limits on JJHCS's litigation outreach to patients. SaveOnSP would be glad to submit supplemental briefing on this point if the Court would find it helpful.

Hon. Cathy L. Waldor
January 5, 2023
Page 16

### C.    Request Nos. 5, 7, 8, 16, 17, 18, 19, 20, 21, 22, 31, 35, 44, and 45

*JJHCS's Position:  SaveOnSP May Not Withhold Relevant Internal Communications*

SaveOnSP refuses to produce its internal communications, such as emails, that are responsive to a variety of requests. For example, SaveOnSP refuses to provide its internal communications "concerning SaveOnSP's evaluation of Janssen therapies, including but not limited to the de-designation of Janssen therapies as essential health benefits pursuant to the Affordable Care Act" (Request No. 18), "concerning SaveOnSP's inclusion or exclusion of specific drugs as essential health benefits pursuant to the Affordable Care Act, including the criteria for inclusion and exclusion" (Request No. 19), or "concerning SaveOnSP's compliance with the Affordable Care Act, including but not limited to documents and communications concerning legal 'gray area' surrounding the de-designation of Janssen therapies as essential health benefits pursuant to the Affordable Care Act" (Request No. 22). SaveOnSP similarly refuses to produce its internal communications relating to complaints it received from patients enrolled in CarePath (Request No. 7) or complaints from patients who refused to enroll in the SaveOnSP Program or tried to opt out of enrollment in the SaveOnSP Program (Request 8). SaveOnSP refuses to even provide its internal communications concerning a key piece of evidence, discussed at length in the Complaint, that lays bare many of the dubious aspects of the SaveOnSP scheme: "the preparation of, and posting of the SaveOnSP IPBC Video presentation as discussed in the Complaint, including who prepared the presentation, to whom the presentation was given, how many times the presentation was given, by whom, and over what period of time." *See* Request No. 35.[12]

SaveOnSP's position is untenable. Internal communications are a standard part of discovery—indeed, in many ways, they are the whole point of discovery. *See, e.g.*, *Mallinckrodt LLC v. Actavis Labs. FL, Inc.*, No. 2:15-cv-3800, 2017 WL 5476801, at *3 (D.N.J. Feb. 10, 2017) (Waldor, J.) (in patent case, concluding that "internal communications regarding the infringement, validity, or enforceability of the patents-in-suit" were "plainly relevant"); *Fusion Multisystems, Inc. v. Basile*, No. 09-4692, 2010 WL 11570267, at *2-3 (D.N.J. Apr. 30, 2010) (request for defendant's "internal emails" on subject of litigation were "relevant" because they "could result in the production of documents necessary to prove [plaintiff's] case and satisfy the relatively low relevancy bar applied at the discovery stage").

_____

[12] While SaveOnSP attempts to portray this issue as a host of separate issues, SaveOnSP's objection to producing large categories of internal communications warrants treating it as a global issue. Although SaveOnSP has agreed to produce some internal communication in response to certain other Requests, such as Request No. 6 ("All communications between SaveOnSP and JJHCS, as well as all communications SaveOnSP has had relating to SaveOnSP's communications with JJHCS."), it has carefully carved out large swaths of internal communications in its responses to the Requests under this heading.  SaveOnSP may be amenable to making certain exceptions, but its general position is that internal communications are largely exempt from discovery.

Hon. Cathy L. Waldor
January 5, 2023
Page 17

Here, these internal communications are of obvious relevance. For example, SaveOnSP's re-designation of drugs from "essential" to "non-essential" under the ACA is a centrally important part of this case as this change is what allows for the dramatic increase in patient co-pays and resulting draws on the CarePath program. These documents are relevant to JJHCS's tortious interference claim because they may provide insight into both SaveOnSP's intent and the means it uses to induce patients to breach the CarePath Terms & Conditions, and they are relevant to JJHCS's GBL claim because they may reflect the extent to which SaveOnSP's actions result in patient harm. SaveOnSP cannot unilaterally exempt itself from producing internal documents and emails about some of its most questionable conduct. Similarly, SaveOnSP's internal discussions about patient complaints, including about its strong-arm enrollment threats, are likely to be highly relevant discovery in a case where SaveOnSP flatly denies that it causes any patient harm and rather claims it is of great benefit to patients. And its internal communications about the SaveOnSP IPBC Video presentation featured prominently in JJHCS's Complaint will doubtless reveal its internal discussions about various dubious actions discussed in the video, such as causing the pharmacy to "warm transfer" a patient to a SaveOnSP representative before allowing the patient to fill his or her medication, in order to force their enrollment. Compl. ¶¶ 62-63. Finally, to the extent that SaveOnSP claims its internal documents are confidential, the Court has entered a Protective Order that negates any potential risk of harm, and SaveOnSP is itself seeking the extensive production of internal documents from JJHCS.

For other requests, SaveOnSP counters that it is concerned about burden and overbreadth, but these concerns are baseless. For instance, SaveOnSP claims with respect to Request Nos. 7 and 8 that they are burdensome because they would cover SaveOnSP's communications with patients about "any topic."[13] But SaveOnSP has a single line of business— its tortious scheme. It defies logic to speculate that SaveOnSP possesses communications with patients on topics other than that scheme, which is the primary subject of this litigation and fair game for discovery. And tellingly, SaveOnSP has not even tried to make such a showing, instead offering only its own baseless conjecture. Further, for requests like Request No. 35, if SaveOnSP believes it has few, if any, relevant documents, it should not be an issue for it to simply produce what it has.

### SaveOnSP's Position

### Internal Communications

JJHCS misstates SaveOnSP's position. SaveOnSP has *not* refused to produce all internal communications. To the contrary, SaveOnSP agreed in its Responses and Objections to produce internal communications on several important topics—including, for example, any documents relating to CarePath, RFP No. 23, and any documents relating to changes to copays for

---

[13] To the extent SaveOnSP now suggests that it is not making burden objections, that only serves to further weaken its overbreadth objections given the emphasis on proportionality in the Federal Rules of Civil Procedure.

Hon. Cathy L. Waldor
January 5, 2023
Page 18

Janssen Drugs, RFP No. 28. Although JJHCS acknowledges that SaveOnSP has agreed to produce some such communications, it continues to falsely assert that SaveOnSP's "general position is that internal communications are largely exempt from discovery." *See supra* at 14 n.7.

As SaveOnSP has explained to JJHCS repeatedly, *see* Exhibit 2 (Dec. 21 Letter) at 4, SaveOnSP's concerns about producing internal communications are tied to its concern that specific Requests are overbroad and encompass large swaths of irrelevant documents. The burden rests with JJHCS to identify narrow categories of information that are actually relevant. *See Arena v. RiverSource Life Ins. Co.*, Civ. Action No. 2:16-cv-5063-JLL-SCM, 2017 WL 6513056, at *2, 6 (D.N.J. Dec. 19, 2017) (noting that a party seeking to compel discovery bears the burden of showing relevance and finding movant has not carried its burden because the requests at issue could be read to demand every document the non-moving party had ever produced during the course of its business). JJHCS has refused to carry its burden and narrow its Requests to encompass only relevant documents.[14] The Court should deny JJHCS's motion and order JJHCS to meet and confer with SaveOnSP.

### Patient communications and complaints
### (RFP Nos. 7 and 8)

JJHCS's RFP Nos. 7 and 8 are overbroad. RFP No. 7 seeks "[a]ll communications SaveOnSP has received from persons currently enrolled in CarePath, including patient complaints or inquiries regarding the SaveOnSP Program[.]" That is, JJHCS seeks *every* communication that SaveOnSP has ever had with *every* patient enrolled in CarePath about *any* topic. RFP 8 seeks "[a]ll communications SaveOnSP has received from persons who (i) refused to enroll in the SaveOnSP Program; (ii) tried to opt out of enrollment in the SaveOnSP Program; or (iii) initially enrolled in the SaveOnSP Program, but later canceled their enrollment, as well as all documents regarding such patient communications." RFP No. 8 is not limited to those communications that relate to the patient's refusal to "enroll" or attempt to "opt out" of the plan benefits administered by SaveOnSP; it seeks *every* communication with those patients about *any* topic and *every* internal document related to *every* communication with those patients.

SaveOnSP is willing to produce *relevant* internal documents responsive to JJHCS's Requests. For instance, when JJHCS stated during the parties' meet and confer that it wanted documents showing any internal discussions about a patient being told that her drug is not covered, SaveOnSP agreed to search for and produce any such documents. Exhibit 2 (Dec. 21 Letter) at 4. But SaveOnSP cannot agree at this point in discovery—before it has even had the opportunity to review the wide universe of patient communications that may exist—that *all* its communications with patients are automatically relevant to JJHCS's claims. Instead of agreeing to a subject matter limitation on its Requests or deferring this dispute until after SaveOnSP reviews and produces

---

[14] JJHCS incorrectly asserts that SaveOnSP's arguments are based on burden. While SaveOnSP reserves the right to make burden arguments if the parties are not able to agree on a search protocol, its arguments here are based on relevance (including overbreadth).

Hon. Cathy L. Waldor
January 5, 2023
Page 19

documents, JJHCS asks this Court to order SaveOnSP now to produce every patient communication and every document about those communications, regardless of content. That is improper, as JJHCS cannot establish that every patient communication and related document is relevant here. The Court should deny JJHCS's motion as to RFP Nos. 7 and 8.

### *SaveOnSP's advice to health plans*
### *(RFP Nos. 18, 19, and 22)*

JJHCS's RFP Nos. 18, 19, and 22 seek all documents relating to SaveOnSP's evaluation of Janssen therapies, including the de-designation of those drugs as Essential Health Benefits under the Affordable Care Act; all documents concerning SaveOnSP's inclusion or exclusion of specific drugs as Essential Health Benefits under the ACA; and all documents concerning SaveOnSP's compliance with the ACA, respectively.

As SaveOnSP explained to JJHCS, these requests do not make sense as drafted. SaveOnSP does not designate, de-designate, include, or exclude drugs as EHBs under the ACA; rather, it advises health plans on which drugs they should designate as EHBs. SaveOnSP also is not required to "comply" with the ACA, other than as the sponsor of its own employee benefit plan (which is not at issue here). Undeterred by this reality, JJHCS insists that these requests deal with SaveOnSP's "most questionable conduct." They do not. In its Complaint, JJHCS does not allege that SaveOnSP's advice to health plans regarding EHBs violates the ACA—to the contrary, JJHCS says that SaveOnSP uses a "loophole" in the ACA. Compl. ¶ 57. Having failed to plead that SaveOnSP or the health plans it advises violate the ACA, JJHCS cannot seek discovery into that topic. *See, e.g.*, *Smith v. Lyons, Doughty & Veldhuius*, Civ. Action No. 0-5139, 2008 WL 2885887, at *5 (D.N.J. July 23, 2008) ("Discovery should not serve as a fishing expedition during which Plaintiff searches for evidence in support of facts he has not yet pleaded.").

JJHCS fails to explain how documents concerning the ACA relate to its claims. For its tortious interference claim, JJHCS asserts that such documents could show SaveOnSP's intent and the means it uses to induce patients to breach their CarePath contracts. JJHCS does not explain why that is so. JJHCS pleaded that SaveOnSP tortiously interferes with those contracts by inducing patients to enroll in CarePath, Compl. ¶ 109, and argued in opposing SaveOnSP's motion to dismiss that SaveOnSP caused patients to violate the CarePath terms and conditions by inducing them to sign up for a "SaveOnSP Program" that consists of health plan benefits, Br. Opp'n Mot. Dismiss (ECF No. 34) at 45. None of this has anything to do with whether the plans' designation of Janssen Drugs as EHBs complies with the ACA. For its GBL claim, JJHCS asserts that documents concerning the ACA may show that SaveOnSP's actions result in public harm. JJHCS does not explain this. In its Complaint, JJHCS alleges public harm of purported stress and confusion to patients, jeopardizing the financial viability of patient assistance programs, and making other patient healthcare more expensive. Compl. ¶ 114. JJHCS does not allege any public harm based on purported violations of the ACA.

The irrelevance of such documents is further illustrated by JJHCS's refusal to produce its own documents reflecting its understanding of whether SaveOnSP's advice to plans

Hon. Cathy L. Waldor
January 5, 2023
Page 20

complies with the ACA. *See* Exhibit 7 (JJHCS's R&Os to SaveOnSP's First RFPs), Resp. to RFP No. 14 (refusing to produce documents reflecting JJHCS's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act unless those documents relate specifically to SaveOnSP); Resp. to RFP No. 21 (refusing to produce documents regarding advocacy to governmental or regulatory bodies, which could reflect JJHCS's understanding of the legality of SaveOnSP's advice to health plans). In its December 21 letter, SaveOnSP asked JJHCS how it could reconcile these two positions; JJHCS never responded. JJHCS says that the Court should ignore JJHCS's position because any disputes about SaveOnSP's Requests are not ripe, but the reality is that SaveOnSP has tried to discuss its Requests with JJHCS and JJHCS has to date refused to meet and confer about them. SaveOnSP should not be compelled to produce documents that JJHCS has refused to produce simply because JJHCS has insisted on pressing forward on its discovery requests while not responding to SaveOnSP's own Requests. The Court need not and should not ignore JJHCS's positions in response to SaveOnSP's Requests when considering JJHCS's relevance arguments.

SaveOnSP is willing to consider producing some subset of documents relating to the ACA, but not the full sweep of documents demanded by JJHCS, and only if JJHCS will agree to produce similar documents of its own. The Court should deny JJHCS's motion as to RFP Nos. 18, 19, and 22 and order JJHCS to meet and confer with SaveOnSP in good faith regarding these Requests and SaveOnSP's Requests No. 14 and 21.

### Communications regarding the ESI Presentation
### (RFP No. 35)

JJHCS's RFP No. 35 seeks all documents regarding "the preparation of, and posting of the SaveOnSP IPBC Video presentation as discussed in the Complaint," also known as the "ESI Presentation." JJHCS asserts that SaveOnSP refuses to produce any internal communications in response. In fact, as SaveOnSP explained to JJHCS in its responses to JJHCS's First Set of Interrogatories, SaveOnSP did not prepare or post the ESI Presentation, so it does not believe that it has any such internal communications to produce. As SaveOnSP has also told JJHCS, it is possible that SaveOnSP provided feedback on earlier materials that were incorporated into the slide deck used in the ESI Presentation. SaveOnSP told JJHCS that it is willing to search for and produce documents reflecting its feedback into those earlier materials, and it believed that offer would resolve the parties' dispute. JJHCS did not respond to SaveOnSP's proposal. Instead, JJHCS burdens this Court with a dispute that the parties could likely resolve on their own. The Court should deny JJHCS's motion as to RFP No. 35 and order JJHCS to meet and confer with SaveOnSP.

### Remaining documents
### (RFP Nos. 5, 16, 17, 20, 21, 31, 44 and 45)

In its motion, JJHCS makes no attempt to explain why seven of the other eight Requests that it includes in this category—RFP Nos. 5, 16, 17, 20, 21, 31, and 44—request relevant

Hon. Cathy L. Waldor
January 5, 2023
Page 21

material and it does not explain why the parties are supposedly at an impasse as to those Requests. SaveOnSP has agreed to produce some documents in response to all these Requests. But it has concerns about the overbreadth of some of these Requests; for example, RFP No. 5 seeks all documents about communications with individuals enrolled or eligible to enroll in CarePath on any topic, even those irrelevant to this case. SaveOnSP invited JJHCS to clarify what documents it seeks in respect to RFP No. 5 and JJHCS did not respond. Exhibit 2 (Dec. 21 Letter) at 4. JJHCS has not explained the relevance of other Requests; for example, RFP No. 17 seeks all drafts and the full negotiation histories of every contract that SaveOnSP has negotiated with all its thousands of clients, even though the terms of those contracts are not at issue. SaveOnSP has invited JJHCS to meet and confer about all these Requests, but it declined. The Court should deny JJHCS's motion as to RFP Nos. 5, 16, 17, 20, 21, 31, and 44 and order JJHCS to meet and confer with SaveOnSP regarding these Requests.

*Finally,* JJHCS includes RFP No. 45 as part of its motion to compel the production of internal communications, but it also moves separately to compel production of documents responsive to that RFP. SaveOnSP addresses RFP No. 45 in response to the portion of JJHCS's second letter that is specific to that Request.

### D.    Request Nos. 8, 19, 20, 21, 22, 28, 30, 32, 33, and 34

***JJHCS's Position:  SaveOnSP May Not Withhold Evidence of its Scheme's Effects on Non-Janssen Drugs and Patients***

JJHCS has requested categories of documents relating to (1) patient complaints and experiences with the SaveOnSP Program (Request Nos. 8, 28, 30, 32, 33, and 34) and (2) SaveOnSP's compliance with the ACA (Request Nos. 19, 20, 21 and 22). These requests seek to uncover the contours of how the SaveOnSP Program operates and the effects that the SaveOnSP Program has on patients.

In response to these requests, SaveOnSP stated that it would only produce responsive documents regarding Janssen Drugs. *See, e.g.*, Response to Request No. 19. SaveOnSP argued that documents not related to Janssen Drugs are irrelevant to this action. In the parties' conferrals, SaveOnSP agreed to produce responsive documents regarding or applying to drugs generally, or encompassing CarePath or Janssen Drugs, even if those documents do not make a specific reference to Janssen, CarePath, or a Janssen Drug. However, SaveOnSP has continued to refuse to produce responsive documents that relate to or reference only non-Janssen Drugs.

As set forth on page 2, *supra*, to establish a claim under the GBL, JJHCS must demonstrate that SaveOnSP's deceptive conduct has caused harm to the public at large. *See Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 302 (E.D.N.Y. 2010) (a non-consumer plaintiff "establishes consumer-oriented conduct by showing that the acts or practices have a broader impact on consumers at large" (quotation marks omitted)). SaveOnSP's conduct harms the public through its impact on not only patients who happen to be taking a Janssen Drug, but patients across the board. Therefore, any documents relating to the harm associated with

Hon. Cathy L. Waldor
January 5, 2023
Page 22

SaveOnSP's conduct is relevant to JJHCS's GBL claim. That is, if there are documents reflecting instances where the SaveOnSP Program has harmed patients using non-Janssen Drugs, that would be relevant to the "public harm" component of JJHCS's GBL claim.  Even if, as SaveOnSP suggests, JJHCS could not recover damages for harm stemming from non-Janssen drugs, that does not mean such harm is per se irrelevant to liability.

Moreover, JJHCS's tortious interference claim requires a showing that SaveOnSP employed "improper" or "wrongful" means to induce patients to breach CarePath's Terms & Conditions. *See, e.g.*, *Nostrame v. Santiago*, 61 A.3d 893, 901 (N.J. 2013). Therefore, JJHCS is entitled to the full picture of SaveOnSP's wrongful conduct, not only as it relates to Janssen patients. Again, if there are documents reflecting instances where SaveOnSP employed wrongful means to pressure patients using non-Janssen Drugs to enroll in its program, evidence of those wrongful means would be relevant to JJHCS's tortious interference claim.

A specific example is illustrative. Assume that SaveOnSP has internal documents where its employees question the appropriateness or changing a Pfizer drug from "essential" to "non-essential" under the ACA in order to drive SaveOnSP's profits, but do so in the very specific context of talking about that Pfizer drug or a patient complaint from a patient taking a Pfizer drug. Under SaveOnSP's logic, those discussions are purely about non-JJHCS drugs so should be excluded. But the context in which the issues arise does not change the fact that the issues under discussion are relevant to this action. SaveOnSP should not be afforded the opportunity to make shaded calls about relevance based on which drugs its counsel feel relevant documents relate to, or to what extent the discussions are generally applicable versus drug-specific. All responsive documents should be produced, and any disagreements about relevance or admissibility can be properly addressed at trial.

### *SaveOnSP's Position: Non-Janssen Drugs Are Irrelevant to JJHCS's Claims*

JJHCS's motion to compel documents that relate solely to non-Janssen Drugs seeks information that is irrelevant to its claims or SaveOnSP's defenses. SaveOnSP has agreed to produce documents relating to Janssen Drugs, including (as JJHCS concedes) documents that apply to both Janssen Drugs and other drugs made by different manufacturers. *See* Exhibit 1 (Dec. 9 Letter) at 4; Exhibit 2 (Dec. 21 Letter) at 5-6. JJHCS fails to credibly explain why documents having nothing to do with Janssen Drugs are relevant here.

Documents unrelated to Janssen Drugs are irrelevant to JJHCS's tortious interference claim. That claim rests on JJHCS's allegations that SaveOnSP intentionally and improperly interfered with the performance of specific contracts, *Nostrame v. Santiago*, 213 N.J. 109, 122 (2013)—the CarePath contracts between JJHCS and patients who use Janssen Drugs. JJHCS cites no authority for its assertion that SaveOnSP's conduct with respect to *different contracts* between *different drug manufacturers* and patients using *different copay assistance programs* could bear on whether SaveOnSP tortiously interfered with the CarePath contracts at issue here.

Hon. Cathy L. Waldor
January 5, 2023
Page 23

       Documents unrelated to Janssen Drugs are also irrelevant to JJHCS's GBL claim. To prevail on that claim, JJHCS must show that SaveOnSP engaged in (1) consumer-oriented conduct resulting in public harm; (2) that was deceptive or misleading in a material way; and (3) that caused an injury to JJHCS. *See, e.g.*, *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 176 (2021); *Ideal You Weight Loss Ctr., LLC v. Zillioux*, 174 A.D.3d 1473, 1475 (N.Y. App. Div. 2019). JJHCS suggests that SaveOnSP's conduct regarding non-Janssen Drugs could show that SaveOnSP harmed the public. But such conduct is irrelevant to JJHCS's claims in this case unless it also *injured JJHCS. See Himmelstein*, 37 N.Y.3d at 176 (holding that plaintiffs raising a GBL claim must demonstrate that they "suffered an injury *as a result* of the [alleged] deception" (emphasis added)). JJHCS does not explain how SaveOnSP's communications with the public about drugs that JJHCS does not make or copay assistance programs that JJHCS does not fund could harm JJHCS. JJHCS cannot use its GBL claim as a license to rummage through all SaveOnSP's documents relating to every drug made by every drug manufacturer.

       SaveOnSP has invited JJHCS to identify specific categories of documents pertaining solely to non-Janssen Drugs that may nonetheless support JJHCS's claims so that SaveOnSP can consider whether it will produce those documents. But JJHCS has refused to do so, and SaveOnSP will not agree to produce every single responsive document that relates exclusively to non-Janssen Drugs. Indeed, the scope of what that production would entail is staggering. It would include, for example: every document and communication pertaining to how plans treat non-Janssen Drugs (RFP Nos. 19-21), every document and communication concerning the copays plans set for those drugs (RFP No. 28), every document and communication regarding the amount of money plans have saved on non-Janssen Drugs (RFP No. 32), and every single communication from or with patients and other parties regarding non-Janssen Drugs or copay assistance programs other than CarePath (RFP No. 33).

       JJHCS should not be allowed to fish through SaveOnSP's documents for material that has nothing to with its claims. SaveOnSP will produce documents that relate to Janssen Drugs, even if they also relate to non-Janssen Drugs. SaveOnSP remains willing to consider any narrowed requests from JJHCS for documents that relate solely to non-Janssen Drugs. The Court should deny JJHCS's motion to compel all responsive documents relating solely to non-Janssen Drugs and direct JJHCS to meet and confer with SaveOnSP on this issue.

* * *

       The parties appreciate the Court's attention to this matter.

       Respectfully submitted,

       /s/*Jeffrey J. Greenbaum*
       Jeffrey J. Greenbaum
       Katherine M. Lieb
       SILLS CUMMIS & GROSS P.C.

Hon. Cathy L. Waldor
January 5, 2023
Page 24

One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*


/s/*E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
973-596-4500
ewohlforth@gibbonslaw.com

David Elsberg (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

*Attorneys for Defendant Save On SP, LLC*