January 5, 2023

**By ECF**

Hon. Cathy L. Waldor
U.S. District Court for the District of New Jersey
50 Walnut Street, Room 4040
Newark, NJ 07102

      Re: ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*
         (Case No. 2:22-cv-02632-JMV-CLW)**

Dear Judge Waldor:

    JJHCS submits this joint letter on behalf of the parties in the above-captioned matter pursuant to the Court's Civil Case Management Order ¶ 7 and Local Rule 37.1 governing discovery disputes. The first joint letter submitted today set forth the background of this matter, appended the relevant Requests for Production and Responses thereto, and addressed four cross-cutting disputes that apply to multiple Requests. JJHCS submits that this letter only addresses additional, discrete disputes specific to individual Requests that were not covered in JJHCS's prior submission.[1] SaveOnSP submits that the issues discussed in this letter overlap with those in the parties' other letter submitted today, that those issues would have been best addressed in a single letter, and that the Court should address the issues in both letters simultaneously.

    A.  **Request No. 12**

***JJHCS's Request***

    All documents concerning fees paid to or collected by SaveOnSP, not otherwise captured by other Requests.

***JJHCS's Position***

    JJHCS seeks to understand, among other things, how SaveOnSP's fees are designed, structured, and calculated in order to determine JJHCS's damages and develop its liability case. As JJHCS alleges, SaveOnSP apparently charges a fee of 25% of the funds extracted from CarePath and other manufacturer assistance programs. Compl. ¶ 68. JJHCS has not alleged that SaveOnSP uses no other fee structure, and JJHCS is entitled to take discovery on whether this

---

[1] For simplicity, the Exhibits referenced herein refer to the Exhibits attached to our first joint letter submitted today.

Hon. Cathy L. Waldor
January 5, 2023
Page 2

25% fee is SaveOnSP's exclusive means of generating fee income from manufacturer assistance programs, including CarePath. This issue should come as no surprise to SaveOnSP. If the 25% rate is the extent of SaveOnSP's fees, then there should be limited documents to produce about this simple fee structure, and SaveOnSP need not produce "every invoice" that it has ever sent. JJHCS did not make this concession for the first time in this letter; JJHCS told this to SaveOn in the parties' December 8 meet and confer call. JJHCS seeks these documents to, e.g., understand how SaveOnSP arrived at its exorbitant fee rate; to learn what patients, health care providers, or plans have told SaveOnSP about that structure or the appropriateness of seizing patient assistance funds at these levels; and to review what SaveOnSP employees and executives have said in internal discussions about the financial windfall SaveOnSP is extracting at the expense of patient assistance funds. Documents "sufficient to show" all fees paid—i.e., some form of summary financial data—is insufficient because it would exclude all such discussions. Alternatively, if it turns out that SaveOnSP has other fee arrangements in place with different plans beyond the 25%, then JJHCS is entitled to understand and explore those financial arrangements and the reasons for any differential treatment as part of its damages case, too. Differential fee structures across drug manufacturers may also influence how SaveOnSP advises health plans to structure their formularies, which could in turn lead to non-medical switching of patient therapies. That switching could amount to a public harm relevant to JJHCS's GBL claim.

### *SaveOnSP's Position*

In response to RFP No. 12, SaveOnSP has agreed to produce documents sufficient to show the fees it received for services related to Janssen Drugs. Exhibit 2, Dec. 21 Letter at 8. Those documents will show how SaveOnSP's fees are structured. SaveOnSP is also willing to produce documents sufficient to show its fee arrangements with plans that cover Janssen Drugs. If that was all JJHCS wanted, the parties would have no dispute. JJHCS has not explained why it needs anything more than what SaveOnSP has agreed to produce.

For the first time in this joint letter (never raised in a meet-and-confer session or a discovery letter), JJHCS asserts that it needs all documents concerning SaveOnSP's fees to "develop its liability case." But JJHCS does not explain how the amount of SaveOnSP's fees relate to its claims. Those fees have nothing to do with whether SaveOnSP induces patients to breach their contracts, the basis of JJHCS's tortious interference claim. While JJHCS asserts, in connection with its GBL claim, that SaveOnSP's failure to disclose the amount of its fees to patients is deceptive conduct, SaveOnSP has already agreed to produce documents showing the fees it collected. JJHCS does not explain why it needs additional information about those fees to prove that SaveOnSP's non-disclosure was deceptive.

JJHCS also asserts that it needs additional information about SaveOnSP's fees to "determine JJHCS's damages," but it does not explain why this is so. JJHCS alleges that its damages are the additional amounts of CarePath funds that JJHCS paid because of SaveOnSP's conduct. *See* Compl. ¶¶ 110, 115 (alleging that SaveOnSP "make[s] it pay more money from CarePath than it otherwise would have"); Br. Opp'n Mot. Dismiss (ECF No. 34) ("JJHCS … is repeatedly forced to pay more copay assistance than it otherwise would have."). Nowhere in its

Hon. Cathy L. Waldor
January 5, 2023
Page 3

Complaint does JJHCS allege that its damages depend in any way on the amount of SaveOnSP's fees. SaveOnSP has agreed to produce information concerning the amounts of CarePath funds received by patients enrolled in plans that SaveOnSP advises—the core of JJHCS's alleged damages. SaveOnSP Resp. to RFP No. 42.

Also for the first time in this letter, JJHCS raises a new theory, relevant only to its GBL claim, that if SaveOnSP has different fee structures for different manufacturers' drugs, those differing fee structures could indirectly lead patients to switch their medications for non-medical reasons. JJHCS's new theory is found nowhere in its Complaint. To the contrary, JJHCS pleaded that SaveOnSP does *not* have different fee structures for different manufacturers' drugs. Compl. ¶ 68 (SaveOnSP's fees are 25% of the amount of savings that SaveOnSP helps plans achieve). Even if JJHCS's theory were valid (it is not), SaveOnSP has agreed to produce documents showing SaveOnSP's fee structures. JJHCS cannot rely on sheer speculation (and contradict its own Complaint) to justify its motion to compel all fee-related documents.

JJHCS also does not limit its RFP No. 12 to the types of information that it describes in this joint letter. RFP No. 12 asks for "all documents" concerning SaveOnSP's fees, which on its face includes every invoice that SaveOnSP has ever sent and every communication that SaveOnSP has ever had with anyone about any aspect of its fees—including those related to fees generated by services that have nothing to do with Janssen Drugs. Such material is simply irrelevant. Although JJHCS suggested for the first time in this letter that SaveOnSP may not be required to produce every invoice SaveOnSP has ever sent, JJHCS has not actually agreed to limit its Request in any manner, and it asks this Court to compel production of all documents responsive to RFP No. 12.

The Court should not allow JJHCS to comb through SaveOnSP's documents for material that is not relevant to this case. SaveOnSP will produce documents sufficient to show its fees, fee structures, and fee arrangements with clients. SaveOnSP is also open to producing additional documents on this topic, but JJHCS has so far refused to meet and confer or narrow the scope of its Request. JJHCS's motion to compel all fee-related documents and communications should be denied.

B.     **Request Nos. 41 and 42**

*JJHCS's Request No. 41*

Data covering the period January 1, 2016 through the present on all manufacturer copay assistance provided to either a pharmacy, PBM, or SaveOnSP for prescriptions filled by SaveOnSP member patients, including: (i) manufacturer; (ii) brand name; (iii) National Drug Code ("NDC"); (iv) recipient of manufacturer assistance; (v) patient identifier; (vi) pharmacy for relevant drug fill; (vii) pharmacy address; (viii) prescription number; (ix) prescription fill date; (x) number of units; (xi) days of supply; (xii) unit of measure; (xiii) copay or coinsurance amount; (xiv) coupon amount; and (xv) information on how these payments can be linked to the transaction/claims data.

Hon. Cathy L. Waldor
January 5, 2023
Page 4

### *JJHCS's Request No. 42*

Electronic prescription-level transaction data for all drug purchases from January 1, 2016 through the present for all patients who at any point during that time frame participated or did not participate in the SaveOnSP program, including:

- Information on parties to the prescription transaction, including: (i) pharmacy name; (ii) pharmacy address; (iii) patient identification; (iv) patient state of residence; (v) identifier for whether patient is on a SaveOnSP program; (vi) insurance/health plan name; (vii) insurance/health plan ID; (viii) type of insurance (e.g., commercial, Medicare, Medicaid); (ix) insurance/health plan member ID; (x) insurance/health plan BIN number; (xi) insurance/health plan PCN number; (xii) insurance/health plan group name; and (xiii) insurance/health plan group number.

- Drug information for the prescription transaction, including: (i) product description (i.e., brand name); (ii) NDC; (iii) product form; (iv) product strength; (v) number of units; (vi) days of supply; (vii) units returned or otherwise affected by the transaction; (viii) unit of measure; (ix) date of prescription fill; (x) information sufficient to identify the type of transaction (e.g., a sale, a return, a discount, etc.); and (xi) any discounts, rebates, or other price adjustments or offsets.

- Payment information for the prescription transaction, including: (i) total amount paid to the pharmacy for the prescription; (ii) patient copayment; (iii) patient coinsurance payment; (iv) patient deductible payment; (v) copay coupon/manufacturer assistance amount applied to the prescription cost; (vi) voucher amount; (vii) bridge benefit payment; (viii) net consumer payment after subtracting co-pay, coinsurance, deductible, coupon, voucher, bridge benefit, and other assistance; (ix) insurance/health plan cost submitted; and (x) insurance/health plan amount paid to pharmacy.

### *JJHCS's Position*

Request Nos. 41 and 42 seek transaction-level data rather than documents. Specifically, Request No. 41 seeks transaction-level data relating to manufacturer copay assistance payments made on behalf of patients enrolled in the SaveOnSP Program, including the identity of the patient, the amount of copay assistance withdrawn, and the drug for which the copay assistance was withdrawn. Request No. 42 seeks transaction-level data relating to drug purchases by patients enrolled in the SaveOnSP Program (as well as patients who were eligible for enrollment but declined), including the identity of the patient, the drug purchased, and the total amount paid for the drug. Transaction data like this is typically maintained in the ordinary course of business and is routinely produced in complex litigation involving pharmaceutical products.

SaveOnSP objected to these Requests largely on relevance and burden grounds, and instead agreed to produce only data sufficient to show the annual total amount of payments made by CarePath for participants of plans advised by SaveOnSP. Those objections are

Hon. Cathy L. Waldor
January 5, 2023
Page 5

unwarranted. These requests call only for the download of data in SaveOnSP's possession, custody, or control, so there is no appropriate burden objection. Nor is solely "the annual total amount of payments made by CarePath for participants of plans advised by SaveOnSP" sufficient. This case is in its infancy and JJHCS is not yet committed to any particular method of calculating damages. It is imperative that JJHCS have access to the most granular levels of data available in order to fully vet and explore the most appropriate methodologies for determining damages. For example, JJHCS alleges that SaveOnSP has caused JJHCS to pay more money from CarePath than it otherwise would have for patients not enrolled in the SaveOnSP Program. In order to analyze the difference between what a patient enrolled in the SaveOnSP Program costs CarePath versus what a patient not enrolled in the SaveOnSP Program costs CarePath, or what a patient cost CarePath before enrollment in the SaveOnSP Program versus what a patient cost CarePath after enrollment in the SaveOnSP Program, JJHCS must have access to transaction-level data. The granular categories requested are also necessary so that JJHCS can control for price differences that may be attributable to other factors like changes in dosage or insurance coverage.

SaveOnSP's response below accuses JJHCS of failing to meet and confer on these requests. That is not accurate. The parties did meet and confer, but when pressed, SaveOnSP was unable to provide any counterproposal concerning what categories of data it would be willing to include. Thus, SaveOnSP's present request for yet more conferrals appears to be another delay tactic.

SaveOnSP's attempt to tether these Requests to its own Requests for data is not only premature, it is also a red herring. The parties' needs in this action are not symmetrical: JJHCS's Requests seek data necessary to show how SaveOnSP increases the cost burden on CarePath for patients enrolled in the SaveOnSP Program, which is central to proving JJHCS's damages in this action. SaveOnSP, by contrast, seeks data related to *every fill* of a Janssen Drug over the last *thirteen years*, as well as data related to the costs of manufacturing and bringing to market every Janssen Drug for the same time period. Most of that data, covering nearly a decade before SaveOnSP even existed, is obviously irrelevant to the subject matter of this action. SaveOnSP should not be able to avoid its discovery obligations by prematurely raising objections about JJHCS's production.

### *SaveOnSP's Position*

SaveOnSP has agreed to provide data sufficient to show, for each Janssen Drug, the annual total amount of payments made by CarePath for participants of plans advised by SaveOnSP. As SaveOnSP explained during the parties' meet and confer, SaveOnSP is willing to discuss producing additional categories of data (although not, for now, data that would reveal patient or health plan identities). Since then, however, JJHCS has refused to produce reciprocal data in response to SaveOnSP's RFPs. SaveOnSP's RFP No. 28 requests data on a variety of topics, many of which overlap with the data JJHCS seeks. In response, JJHCS agreed to produce only "Janssen Transparency Reports," without providing any information on what those reports include and offered to discuss producing further documents for less than half of the categories of information listed in SaveOnSP's Request. Exhibit 7 (JJHCS's R&Os to SaveOnSP's First RFPs),

Hon. Cathy L. Waldor
January 5, 2023
Page 6

Resp. to RFP No. 28. SaveOnSP has explained that it is willing to meet and confer with JJHCS to discuss how both parties can provide the data sought by the other side, Exhibit 2 (Dec. 21 Letter) at 15, but JJHCS refused to engage in any such discussion.

For the first time in this letter, JJHCS now claims that the parties' Requests are not reciprocal, but that assertion cannot be reconciled with the clear language of the Requests. *Compare* JJHCS's RFP No. 41 (seeking "[e]lectronic prescription-level transaction data for all drug purchases," including patient identities, insurer identities, the name and dosage of the drug filled, and the amounts patients and plans paid for each prescription transaction), *with* SaveOnSP's RFP No. 28 (seeking, among other things, the identities of patients who received Janssen Drugs, the number of fills patients received, the dosages patients received, and the amount of copay assistance that JJHCS paid on behalf of those patients). JJHCS faults SaveOnSP for seeking data on "every fill," but that is exactly what JJHCS seeks in its Requests. And while JJHCS criticizes SaveOnSP for including a broader time frame for its Request than JJHCS included in its Requests, that does not excuse JJHCS's refusal to produce *any* data in response to SaveOnSP's Request (except for high-level "transparency reports") while demanding that SaveOnSP produce *everything* responsive to JJHCS's Requests.

JJHCS also attempts to explain away its refusal to engage in reciprocal discovery negotiations by arguing for the first time that the data sought by SaveOnSP is not relevant. In reality, that data is highly relevant. JJHCS has alleged that it offers copay assistance programs to offset the high cost of specialty drugs and that it does so for the good of the patients who take them. *See, e.g.*, Compl. ¶ 45. JJHCS also alleged that SaveOnSP threatens the financial viability of CarePath by forcing JJHCS to pay out more than it otherwise would have. Compl. ¶ 114. SaveOnSP seeks data from JJHCS to test the veracity of those assertions. If the data shows, for example, that JJHCS routinely hikes the price of Janssen Drugs primarily for its own profit, that would undercut JJHCS's assertions that it needs to offer copay assistance to offset higher costs imposed on patients by plans. If the data shows that JJHCS offers CarePath as a marketing device to ensure that patients will use its drugs—instead of competitors' drugs—that would undercut JJHCS's assertion that it offers CarePath for the good of patients. If the data shows that JJHCS's profits from Janssen Drugs are more than adequate to cover its increased costs to CarePath, that would undercut JJHCS's assertions that SaveOnSP threatens CarePath's financial viability. And, if the data shows that SaveOnSP's actions in fact increase JJHCS's profits, because SaveOnSP's advice to plans results in more patients using and continuing to use Janssen Drugs, that would undercut JJHCS's assertions that it has been damaged at all by SaveOnSP's conduct. JJHCS refuses to produce this critical data while simultaneously demanding that SaveOnSP produce all data that JJHCS requests.

The Court should deny JJHCS's motion to compel documents responsive to its RFP Nos. 41 and 42 and order JJHCS to meet and confer with SaveOnSP regarding reciprocal data productions.

Hon. Cathy L. Waldor
January 5, 2023
Page 7

### C. Request No. 43

*JJHCS's Request*

All documents and communications relating to how SaveOnSP operates in jurisdictions with statutes or regulations that ban or limit accumulator adjustment programs.

*JJHCS's Position*

As detailed in JJHCS's Complaint, one of the ways that the health insurance industry has exploited patient assistance programs like CarePath is through "accumulator adjustment programs" or "accumulators." Compl. ¶ 50 n.7. Those programs work by identifying and accepting manufacturer copay assistance, such as CarePath, but refusing to count that assistance toward the patient's deductible or out-of-pocket maximum. *Id.* This scheme allows insurers to drain the entirety of available manufacturer copay assistance, while preventing patients from hitting their deductible or out-of-pocket maximum, which would otherwise make the insurer responsible for payment for the relevant treatment after assistance has run out. *Id.* The harm caused by such programs has led at least 11 states to ban them. *Id.*

The SaveOnSP Program, among other things, causes manufacturer copay assistance to not count towards a patient's deductible or out-of-pocket maximum, just as "accumulator" programs do. The documents JJHCS seeks may show, therefore, that SaveOnSP is operating in jurisdictions in which its business is ostensibly barred by statute or regulation. Indeed, in the IPBC video that details the SaveOnSP Program, the presenter touts SaveOnSP's ability to navigate regulatory gray areas. *Id.* ¶ 72. SaveOnSP now argues that it is not an "accumulator" because it ensures that patients enrolled in its Program "always pay zero for their specialty drugs." This is a merits argument that is inappropriate for a discovery dispute, and, in any event, it misconstrues the nature of "accumulators." JJHCS has alleged that SaveOnSP has features of an "accumulator" because it has advised health plans to not count copay assistance like CarePath towards a patient's deductible or out of pocket maximum. This is so regardless of whether patients enrolled in the SaveOnSP Program have any copay obligation for their drugs. Whether SaveOnSP is engaged in conduct barred by state laws is relevant to assessing whether its conduct is wrongful for purposes of JJHCS's tortious interference claim, or causes public harm for purposes of JJHCS's GBL claim. Indeed, this Request may also reveal knowing or willful violations of these state laws. That JJHCS does not in its Complaint explicitly allege such violations of state law does not make this information irrelevant to its claims or categorically exempt it from discovery, particularly since, as described above, JJHCS has alleged how the SaveOnSP Program operates like an "accumulator." Moreover, these documents address a discrete issue and should be limited in number. SaveOnSP provides no valid reason to withhold them.

*SaveOnSP's Position*

JJHCS's RFP No. 43 is a blatant fishing expedition that seeks completely irrelevant documents. JJHCS's Complaint never once accuses SaveOnSP of violating state statutes or

Hon. Cathy L. Waldor
January 5, 2023
Page 8

regulations that ban or limit accumulator adjustment programs. JJHCS's Complaint describes these statutes in a footnote but stops short of saying that they apply to SaveOnSP. Compl. at ¶ 50 n.7. Nothing in JJHCS's Complaint suggests that its claims depend at all on SaveOnSP's compliance with these statutes. *See id.* at ¶¶ 106-17. Contrary to JJHCS's conclusory assertions, SaveOnSP's compliance with these statutes has nothing to do with whether it induced patients to breach their contracts with JJHCS or whether it deceives the public. Having failed to assert claims concerning SaveOnSP's compliance with these statutes, JJHCS cannot seek discovery on that topic based on its unfounded speculation that SaveOnSP might be violating them.

JJHCS's assertion (raised for the first time in this letter) that it has alleged how the "SaveOnSP Program" operates as an "accumulator" is simply false. In its Complaint, JJHCS alleges that eleven states have banned "accumulator" programs that refuse to count copay assistance towards patients' deductibles or their out-of-pocket maximums, so that once copay assistance runs out, the patient will "have to pay the full list price [for her drug] or leave empty handed." *Id.* ¶ 50 n.7. JJHCS alleges that plans advised by SaveOnSP do not count copay assistance towards deductibles and out-of-pocket maximums, *id.* at ¶¶ 11, 50 n.7. But JJHCS does not, and cannot, allege that these benefits require patients to pay the full list price of the drugs themselves once copay assistance is exhausted. To the contrary, the ESI Presentation that JJHCS cites makes clear that patients who take advantage of the benefits that SaveOnSP administers for plans always pay *zero* for their specialty drugs, because their plans pay whatever cost of the drugs that copay assistance does not. *See* Br. Supp. Mot. Dismiss (ECF No. 31-1) at 7. Because the benefits at issue here do not leave patients on the hook for any cost, they are simply not "accumulators" of the sort that JJHCS describes in its Complaint. JJHCS cannot recast its allegations, or make new false allegations, in service of its inappropriate fishing expedition. JJHCS's motion to compel documents in response to RFP No. 43 should be denied.

  **D.**  **Request No. 45**

*JJHCS's Request*

All documents and communications relating to studies, reports, publications, analyses, research, white papers, reviews, or other written work product that SaveOnSP has created, commissioned, paid for, sponsored, or otherwise procured or supported regarding (i) specialty medication costs, (ii) copayment and coinsurance rates, (iii) accumulator programs, (iv) maximizer programs, or (v) strategies to manage specialty medication costs.

*JJHCS's Position*

After the parties met and conferred, SaveOnSP agreed to produce all responsive studies, reports, publications, analyses, research, white papers, or reviews, regardless of whether or not they were publicly disseminated.

However, SaveOnSP continues to refuse to produce internal communications concerning its decision to pay for or sponsor reports, publications, reviews, or other written work

product sought by this Request. Such communications help to explain internal thought processes and decision-making within SaveOnSP. This is relevant to the tortious interference and GBL claims, to the extent that the written work product ultimately was deceptive or misleading to patients, including as it relates to patients' perception of conditions or dynamics in the healthcare and pharmaceutical markets. JJHCS is entitled to understand what misinformation SaveOnSP has helped introduce to the marketplace. For example, in a case where SaveOnSP denies any patient harm and claims that its programs help patients, it will be highly relevant if it funded sham studies touting its favored positions while internally acknowledging that the reality is quite different. That JJHCS has not agreed to produce analogous internal documents is irrelevant because the parties' needs in this action are not symmetrical—JJHCS's actions and state of mind are not relevant to any claim or defense. This dispute has not been raised by JJHCS for the first time in this letter. Rather, it is part and parcel with SaveOnSP's general refusal to produce internal communications, which the parties have discussed at length in meet and confer sessions and which we have described in the first letter to the Court filed today. *See* Global Issues Letter, Section II.C.

To the extent that SaveOnSP has not been engaged in generating the materials responsive to this Request, there should be nothing to produce. But SaveOnSP should not be permitted to withhold responsive documents. And because SaveOnSP has consistently objected to providing internal communications, additional conferral regarding this Request would be futile.

### *SaveOnSP's Position*

JJHCS concedes that SaveOnSP has agreed to produce the only documents that JJHCS said it wanted during the parties' meet and confer and follow up correspondence—"all studies, reports, publications, formal research summaries, and white papers responsive to [RFP No. 45], regardless of whether they were publicly disseminated." Exhibit 2, Dec. 21 Letter at 5. The parties have never met and conferred regarding any other documents responsive to RFP No. 45, and JJHCS's motion should be denied on that basis alone.

In this joint letter, JJHCS now says that it wants a new set of documents responsive to RFP No. 45, asking for "communications concerning [SaveOnSP's] decision to pay for or sponsor reports, publications, reviews, or other written work product." JJHCS never mentioned to SaveOnSP that it wanted this specific category of documents before filing this letter, even though SaveOnSP expressed its concerns that JJHCS's Request could conceivably cover every single written document about SaveOnSP and asked JJHCS to identify the documents it wanted. Exhibit 2 (Dec. 21 Letter) at 5. SaveOnSP is willing to produce any such materials if JJHCS will agree to produce similar documents regarding the studies, reports, publications, etc. that JJHCS has funded or supported regarding copay assistance programs and maximizer and accumulator programs. To date, however, JJHCS has refused to produce any such materials while insisting that SaveOnSP produce the same information. *See, e.g.*, Exhibit 7 (JJHCS's R&Os to SaveOnSP's First RFPs), Resp. to RFP No. 20 (refusing to produce any documents regarding publicly distributed materials (including articles, op-eds, white papers, and online postings) about accumulator and maximizer programs and refusing to produce documents about JJHCS's funding of publicly distributed materials about SaveOnSP).

JJHCS contends that SaveOnSP's Request is not analogous to JJHCS's Request because JJHCS's actions and state of mind are irrelevant. Not so. JJHCS has alleged, for example, that SaveOnSP's contacts with patients cause patients stress and confusion. Compl. ¶¶ 113-14. If JJHCS caused such stress and confusion by funding articles that misrepresent how benefits administered by SaveOnSP actually work, that information would undercut JJHCS's allegations. SaveOnSP is entitled to test whether JJHCS itself is responsible for any stress and confusion which it accuses SaveOnSP of causing. The Court should deny JJHCS's motion to compel and order JJHCS to meet and confer with SaveOnSP so that the parties can agree on reciprocal productions of such documents.

E.   **Request No. 52**

### *JJHCS's Request*

Documents sufficient to show SaveOnSP's liquidity, debt, profits, losses, revenues, costs, EBITDA, and assets throughout the Time Period, including financial statements or financial analyses.

### *JJHCS's Position*

This request seeks foundational documents relevant to any financial analysis of the SaveOnSP business model and, ultimately, to the construction of a damages model. JJHCS cannot begin to analyze relevant issues until its experts can assess SaveOnSP's financial statements. But SaveOnSP is a private company, so its financial position and the extent to which it has profited from the tortious actions for which it has been sued is unknown to JJHCS without discovery on this issue. Further, courts have regularly concluded that private financial information is subject to disclosure in discovery, particularly where, as here, a protective order has been entered. *See Thomas & Betts v. Richards Mfg. Co.*, No. 01-4677, 2010 WL 2400151, at *4 (D.N.J. June 10, 2010) (compelling production of updated financial information by defendant because "the information Plaintiff seeks is clearly relevant to its damages claims"); *see also Mut. Indus., Inc. v. Am. Int'l Indus.*, No. 11-5007, 2013 WL 3716516, at *5 (E.D. Pa. July 15, 2013) (in tortious interference case, records of "commissions are relevant to demonstrate that these representative groups were susceptible to pressure from Defendant to end their relationship with Plaintiff . . . . if in fact[] these items represent private financial information Defendant may request a protective order pursuant to Rule 26(c)"); *Mut. Indus. Inc. v. Am. Int'l Indus.*, No. 11-5007, 2014 WL 1281135, at *4 (E.D. Pa. Mar. 28, 2014) ("Defendant has not provided a specific example of an injury that it will suffer if its financial information is disclosed to Plaintiff. . . . The information sought is still relevant and discoverable, and is being sought for a legitimate purpose.").

SaveOnSP's position clearly demonstrates that the parties are at impasse on this Request. And its attempt to distinguish JJHCS's cases simply presumes the conclusion that SaveOnSP wishes the Court to reach, i.e., that the requested information is "irrelevant." JJHCS has explained the relevance of this information—and provided authority to support its position, which SaveOnSP has not done (and evidently cannot do).

Hon. Cathy L. Waldor
January 5, 2023
Page 11

### *SaveOnSP's Position*

JJHCS's RFP No. 52 is, at best, a blatant fishing expedition. At worst, it is an attempt to peer into its adversary's finances to gain an advantage in this litigation. JJHCS says that it has explained the relevance of the requested information, but it has not.

JJHCS states that it needs information responsive to RFP No. 52 so it can conduct "a financial analysis of SaveOnSP's business model." But it never explains why such a financial analysis is necessary to prove its claims. Such information is not relevant to damages—JJHCS alleges damages based on the "additional" amounts that it paid in CarePath funds due to SaveOnSP's actions, Compl. ¶ 26, which have nothing to do with SaveOnSP's financial condition. JJHCS says that it needs discovery on "the extent to which [SaveOnSP] has profited from [its purportedly] tortious actions," but SaveOnSP will produce documents showing the fees that it made from its relevant services. JJHCS asserts that courts conclude that private financial information is subject to disclosure in discovery. But none of its cited cases say that a party should be compelled to produce irrelevant, sensitive financial information, and none of those cases excuses JJHCS's failure to articulate why the documents it seeks are relevant to its claims. *See Thomas & Betts v. Richards Mfg. Co.*, No. 01-4677, 2010 WL 2400151, at *4 (D.N.J. June 10, 2010) (finding good cause to grant plaintiff's motion to compel because net profits, as reflected in the financial information sought, was a method for determining damages on a misappropriation claim); *Mut. Indus. Inc. v. Am. Int'l Indus.*, No. 11-5007, 2014 WL 1281135, at *4 (E.D. Pa. Mar. 28, 2014) (permitting limited discovery of certain commissions because plaintiff alleged that defendant used its financial strength to induce breach of plaintiff's contracts and such commissions would demonstrate defendant's financial strength); *Mut. Indus., Inc. v. Am. Int'l Indus.*, No. 11-5007, 2013 WL 3716516, at *5 (E.D. Pa. July 15, 2013) (same). The Court should deny JJHCS's motion to compel documents in response to this Request.

\* \* \*

The parties appreciate the Court's attention to this matter.

Respectfully submitted,

/s/*Jeffery J. Greenbaum*
Jeffrey J. Greenbaum
Katherine M. Lieb
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)

Hon. Cathy L. Waldor
January 5, 2023
Page 12

George LoBiondo
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*


/s/ *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
973-596-4500
ewohlforth@gibbonslaw.com

David Elsberg (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

*Attorneys for Defendant Save On SP, LLC*