**GIBBONS**

E. EVANS WOHLFORTH, JR.
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4879 Fax: (973) 639-6486
ewohlforth@gibbonslaw.com

February 24, 2023


<u>Via ECF</u>

Hon. Cathy L. Waldor
U.S. District Court for the District of New Jersey
50 Walnut Street, Room 4040
Newark, NJ 07102

Re:    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC***
       **(Case No. 2:22-cv-02632-JMV-CLW)**

Dear Judge Waldor,

We submit this joint letter on behalf of the parties in the above-captioned matter pursuant to the Court's Civil Case Management Order ¶ 7 and Local Rule 37.1 governing discovery disputes and in advance of the parties' discovery conference scheduled for February 28, 2023.

Plaintiff Johnson & Johnson Health Care Systems Inc. ("JJHCS") and Defendant Save On SP, LLC ("SaveOnSP") have met and conferred in good faith to resolve their discovery disputes. Despite these efforts, the parties are at impasse on the issues discussed below, which all relate to applications to compel discovery or for a protective order sought by SaveOnSP. We respectfully request that the Court address these disputes during the February 28, 2023 conference.

## I.    RELEVANT BACKGROUND

### *SaveOnSP's Statement of the Relevant Background*

Specialty drug costs are skyrocketing because pharmaceutical companies like JJHCS and its affiliates raise prices year after year to boost their own profits. One recent report found that specialty drug prices increased at three-and-a-half times the rate of inflation from 2019 to 2020, resulting in an average cost of therapy of $84,442 per year.[1] Employers, who sponsor and fund the employee benefit plans that provide most Americans with their health insurance, bear the brunt of these price increases.

To encourage patients to use, and keep using, Janssen specialty drugs, JJHCS created Care-Path. Under most commercial health plans, the employer pays for the vast majority of the cost; the patient pays the rest in the form of copays. CarePath offers to cover most of the cost of the patient's copay, encouraging the patient to use Janssen drugs. JJHCS thus makes a healthy return on its

---

[1] Purvis, Leigh, and Stephen W. Schondelmeyer, *Rx PriceWatch Reports*, Washington, DC: AARP Public Policy Institute (Sept. 2021), https://doi.org/10.26419/ppi.00073.000.

Hon. Cathy L. Waldor
February 24, 2023
Page 2

investment in CarePath in additional revenue for Janssen drugs—paid for, primarily, by commercial health plans.[2]

To help plans manage rising specialty drug costs, SaveOnSP helps health plans encourage patients to take advantage of the full amount of copay assistance funds that JJHCS and other manufacturers voluntarily make available. These benefits help plans manage their costs. They also ensure that patients pay $0 for their specialty drugs. While JJHCS asserts that it reduces patient costs to $5 or $10 without benefit terms administered by SaveOnSP, most of patients' costs are paid by their *health plans*. If those plans cannot manage the ever-growing costs of specialty drugs, then they cannot keep providing coverage for those drugs.

JJHCS wants health plans to change their benefits back, so that it pays out less in copay assistance funds and makes even more massive profits by foisting more of the costs of its drugs onto plans. JJHCS cannot directly sue health plan sponsors to change their benefits, so it sued SaveOnSP. JJHCS brings claims for deceptive trade practices and tortious interference with contract.

JJHCS's goal is to put SaveOnSP out of business. It seeks to enjoin SaveOnSP from serving its clients and seeks damages that would make it economically impossible for SaveOnSP to do so. If JJHCS can prevent SaveOnSP from operating, it will put tremendous pressure on health plans to revert back to earlier plan terms under which JJHCS pays less in copay assistance and reaps even larger profits on its specialty drugs, and under which patients pay more for their specialty drugs.

In its zeal, JJHCS has pushed for early and expansive discovery from SaveOnSP, even before the parties finished meeting and conferring. Since the Court ordered the parties to finish discussing JJHCS's requests, SaveOnSP has agreed to produce wide swaths of documents, resisting only JJHCS's remaining requests for patently irrelevant information.

Notably, JJHCS wants to be able to contact or subpoena any of SaveOnSP's thousands of clients and the tens of thousands of patients who are members of their health plans. This could severely harm SaveOnSP, pressuring its clients to change or end their relationships with SaveOnSP. SaveOnSP offered to give JJHCS the identities of the plans and clients if JJHCS would agree to contact a limited number of each without SaveOnSP's consent or a showing of good cause to the Court. Alternatively, SaveOnSP offered to produce documents with patient and plan names anonymized in the first instance, producing specific names later if JJHCS can show a genuine need for them. JJHCS refused. JJHCS's refusal to agree on any limit to its ability to go after plans and

---

[2] The Department of Health and Human services determined, and the Second Circuit affirmed, that copay assistances are illegal kickbacks when applied to federal healthcare programs. *See Pfizer, Inc. v. U.S. Dep't of Health & Hum. Servs.*, *Pfizer, Inc v. United States Dep't of Health & Hum. Servs.*, 42 F.4th 67, 69 (2d Cir. 2022), *cert. denied sub nom.*, 143 S. Ct. 626 (2023).

Hon. Cathy L. Waldor
February 24, 2023
Page 3

patients is slowing down SaveOnSP's ability to produce relevant documents containing that information (SaveOnSP is not, as JJHCS disingenuously suggests, simply holding back documents).

At the same time, JJHCS refuses to give SaveOnSP key documents it needs to defend against JJHCS's claims, including (1) documents showing JJHCS's financial returns from Care-Path—relevant to JJHCS's claim that SaveOnSP threatens CarePath's viability and to JJHCS's alleged damages; (2) documents showing why JJHCS created and operates CarePath—relevant to JJHCS's assertion that threats to CarePath are a public harm; and (3) documents regarding Care-Path and Janssen drugs held by Johnson & Johnson entities other than JJHCS—relevant to, among other things, JJHCS's operation of CarePath and the profits that CarePath generated for Janssen drugs and thus to JJHCS's alleged damages. JJHCS cannot withhold documents that SaveOnSP needs to defend itself by pretending that JJHCS's own conduct is irrelevant to its claims.

This Court should grant SaveOnSP a protective order that limits JJHCS's ability to contact SaveOnSP's clients and their patients for purposes of litigation and it should compel JJCHS to produce the relevant documents it withholds.

### *JJHCS's Statement of the Relevant Background*

SaveOnSP's entire business model is to siphon funds from JJHCS's patient assistance program, CarePath, and to keep these funds for SaveOnSP's own profit and the profit of its insurance industry partners. SaveOnSP now claims it is benefitting patients, but under CarePath, these patients already have co-payments of only $5 or $10 per prescription fill—they are not in need of any help from SaveOnSP. Far from helping patients by pilfering CarePath funds, SaveOnSP harms patients by artificially deeming their lifesaving drugs "non-essential" in order to evade the patient protections of the Affordable Care Act, grossly increasing co-payments, coercing patients into enrollment in the SaveOnSP program with the threat of those artificially inflated copays, and leaving the patient to foot the bill on other out-of-pocket expenses that would have been offset by CarePath but for SaveOnSP's interference. That is why a slew of patient advocacy groups filed amicus briefs in this case opposing SaveOnSP's motion to dismiss and demanding that it be held accountable. SaveOnSP's complaint that JJHCS is "foisting more of the costs of its drugs onto plans" is revealing—the very purpose of those insurance plans is to protect patients (who pay their insurers ever-increasing premiums and face ever-increasing co-pay and deductible obligations) by covering the cost of prescription therapies, including specialty medications for life-altering illnesses.[3] SaveOnSP's desire to profit by helping plans avoid that responsibility does not justify

---

[3] The statistics quoted by SaveOnSP at the top of this letter are taken from a Washington, DC lobbying organization and they do not actually reflect the pricing of Janssen pharmaceuticals or even the actual net price paid. In fact, the net prices of Janssen pharmaceuticals have declined for five years in a row. *See* 2021 Janssen Transparency Report, at 2 (2022), found at https://transparencyreport.janssen.com/_document/the-2021-janssen-u-s-transparency-report?id=00000180-0108-dccf-a981-a52ec8300000.

Hon. Cathy L. Waldor
February 24, 2023
Page 4

SaveOnSP's tortious interference with the CarePath terms and conditions or its deceptive practices that are at issue in this litigation.

SaveOnSP's almost one-year-long campaign to avoid discovery has stalled out—its motion to dismiss has been denied and the Court will soon adjudicate JJHCS's motion to compel. In this letter application, therefore, SaveOnSP lays bare its new defense strategy: distract from its own wrongful conduct by trying to make this case into one about drug manufacturer pricing and by framing the CarePath program as a marketing tool as opposed to what it is—a program created to help patients facing serious medical conditions afford the specialty Janssen medications prescribed by their doctors. And then, leveraging this sleight-of-hand, SaveOnSP seeks to impose extraordinary and shocking burden and expense on JJHCS through the discovery process—perhaps to try and ensure no other manufacturers or patient groups file suit against it.

After months of letter writing and meet and confer sessions, JJHCS has made a host of concessions in order to avoid wasting the Court's time on these disputes. Nonetheless, due to SaveOnSP's irrelevant and burdensome requests and its unwillingness to compromise, the parties remain at impasse on several global issues:

- SaveOnSP's sweeping requests for all documents concerning the development and pricing of more than a dozen Janssen pharmaceuticals—truly extraordinary requests that would encompass an extraordinary volume of entirely irrelevant documents.

- SaveOnSP's insistence that JJHCS produce documents that are in the possession of Johnson & Johnson entities other than JJHCS, the only plaintiff in this case and the entity that is responsible for the CarePath program.

- SaveOnSP's contention that JJHCS must produce information relating to every vendor who ever provided services to CarePath, regardless of whether those services are connected in any way to the issue in this lawsuit.

- SaveOnSP's demand for documents and communications extending back to 2009, nearly a decade before either CarePath or the SaveOnSP program existed, and more than eight years before any of the allegations in the complaint.

None of this discovery has anything to do with JJHCS's claim against SaveOnSP, which are the only claims at issue in this lawsuit. All of this is simply an attempt by SaveOnSP to make the costs of any lawsuit against it prohibitive. Consider, for example, the impact of just the first and last bullet points noted above in combination: SaveOnSP demands the production of virtually every document from over 13 years relating to every major specialty drug that any Johnson & Johnson company has ever sold. JJHCS should not be required to engage in such burdensome and irrelevant makework; SaveOnSP's motion should be denied.

In addition, as discussed below, SaveOnSP asks for a "protective order" that would prohibit JJHCS from speaking with patients or health plans that are enrolled in the SaveOn Program, or

Hon. Cathy L. Waldor
February 24, 2023
Page 5

taking any discovery from these entities. This unprecedented request is driven by SaveOnSP's fear that these witnesses will offer testimony that supports JJHCS's claims in this lawsuit and it inverts the normal rules of litigation under which a party may speak to witnesses as it sees fit. It is especially audacious here where the witnesses that SaveOnSP seeks to block from speaking to JJHCS are the very patients in CarePath with whom JJHCS already has a business relationship. JJHCS will not "go after" anyone. All that JJHCS intends to do is to pursue witness interviews and third-party discovery as necessary to prove its claims, the same as any other litigant would do.

This all needs to stop. As a result of SaveOnSP's intransigence and discovery games, JJHCS has received no substantive discovery—almost a month after SaveOnSP lost its motion to dismiss, four months after SaveOnSP lost its motion to stay, and nine months after JJHCS filed the Complaint.[4] The parties' joint discovery schedule calls for the substantial completion of document production by June 9, 2023. *See* Dkt. 64. SaveOnSP should produce relevant discovery itself; and limit its affirmative demands to the discovery it needs from JJHCS that is directly relevant to the claims that have been asserted against it—not try to conjure up unrealistic demands for documents that have nothing to do with those claims merely for strategic gain.

Again, the claims at issue here are simple and focused and they are all against SaveOnSP. JJHCS is not the Defendant; nor is J&J; nor is the entire pharmaceutical industry. Rather, JJHCS asserts two claims against SaveOnSP based on its wrongful pattern of conduct: (1) a tortious interference with contract claim under New Jersey common law, and (2) a deceptive trade practices claim under New York General Business Law ("GBL") § 349. Both of these claims were the subject of SaveOnSP's motion to dismiss, which Judge Vazquez denied on January 27, 2023.

As Judge Vazquez held, to prove that SaveOnSP has tortiously interfered with contractual relations, JJHCS must show that (1) an existing contractual relationship between JJHCS and its patients; (2) SaveOnSP's interference is intentional and malicious; (3) SaveOnSP's interference caused a loss or breach of that contract; and (4) SaveOnSP's interference has caused JJHCS damage. *See* Order, Dkt. 68, at 15; *see also, e.g., Dello Russo v. Nagel*, 358 N.J. Super. 254, 268 (App. Div. 2003). To determine whether interference is wrongful and unjustified, courts consider several factors, including whether the actor uses improper means to accomplish the interference. *See Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 40 (N.J. 1989) (per curiam) (considering whether the defendant's interference was "sanctioned by the 'rules of the game'").

To prove its GBL claim, JJHCS must show that (1) SaveOnSP's acts are "directed to consumers," (2) they are materially "deceptive or misleading," and (3) JJHCS has been injured as a result. *See* Order, Dkt. 68, at 12; *see also, e.g., Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 744 (N.Y. 1995). The statute is "intentionally broad,

---

[4] The glacial pace of SaveOnSP's document productions are particularly striking given that SaveOnSP represented through counsel on October 12, 2022, that if JJHCS would agree to limit the scope of discovery to "no more than 160,000 documents," SaveOnSP would commit to substantial completion of the document production over a five-month period. *See* Email from E. Wohlforth to J. Greenbaum dated Oct. 12, 2022.

Hon. Cathy L. Waldor
February 24, 2023
Page 6

applying to virtually all economic activity." *See* Order, Dkt. 68, at 12. Because JJHCS is not a consumer, to prevail under the GBL, JJHCS must also demonstrate "some harm to the public at large." *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003). For the reasons set forth above, the public harm at stake in this litigation includes harm to patients.

The focal discovery relevant to these two claims at issue is almost all in the possession of SaveOnSP. As the foregoing statements of the law make clear, none of the elements of the claims at issue look inward to JJHCS's conduct, disproving SaveOnSP's contention that this case is somehow about JJHCS's business practices. It is not. JJHCS has already agreed to produce discovery relevant to the claim it has asserted. None of these claims at issue justify the extraordinary discovery that SaveOnSP now seeks from JJHCS. SaveOnSP's application should be denied.

## II.   PROTECTIVE ORDER CONCERNING JJHCS'S THIRD PARTY DISCOVERY FROM SAVEONSP'S CLIENTS AND THEIR PATIENTS

### *SaveOnSP's Position*

JJHCS asked SaveOnSP for the names of its health plan clients and the patients enrolled in those plans, and for documents referring to those clients and patients. JJHCS has repeatedly made clear that it intends to subpoena or interview plans and patients. *See, e.g.*, Ex. 1 (Dec. 9, 2022 Ltr from H. Sandick to M. Nelson) at 2-3 ("JJHCS may also potentially pursue further discovery from those plans."); Ex. 2 (Jan. 6, 2023 Ltr. from H. Sandick to M. Nelson) at 2 ("JJHCS is also entitled to pursue further discovery from those plans, to the extent appropriate, to establish their role in the SaveOnSP scheme and its impact on JJHCS and patients."); Ex. 3 (Jan. 27 Ltr. from H. Sandick to A. Dunlap) at 2-3 (insisting that JJHCS be permitted to contact health plans and patients to obtain discovery); Ex. 4 (Feb. 9, 2023 Ltr. From A. LoMonaco to M. Nelson) at 1-2 (explaining that JJHCS accepts no limits on its ability to take third-party discovery from health plans and patients).

As it told JJHCS, SaveOnSP is concerned that JJHCS could subpoena or contact hundreds or thousands of clients and patients, putting extreme commercial pressure on client plans to cut ties with SaveOnSP. While JJHCS now says that it does not intend to "subpoena thousands of patients," it does not disclaim its intent to go after SaveOnSP's clients or to reach out to large numbers of patients without subpoenas. To prevent this harm, SaveOnSP first proposed to anonymize client and patient names in the documents it produces in the first instance, with JJHCS free to seek specific names after it reviewed SaveOnSP's productions. *See, e.g.*, Joint Ltr. re Global Disputes (ECF No. 65) at 10-13. JJHCS refused. *Id.* at 8-10. SaveOnSP then proposed that it would produce client and patient names if JJHCS agreed not to subpoena or contact for litigation purposes more than five clients and five patients unless SaveOnSP consented or on showing of good cause to the Court. *See* Ex. 5 (Jan. 20, 2023 Ltr. from A. Dunlap to H. Sandick) at 1-2. JJHCS said no, Ex. 4 (Feb. 9, 2023 Ltr. from A. LoMonaco to M. Nelson) at 1-2, then served a subpoena on Premera Blue Cross ("Premera"), one of SaveOnSP's publicly disclosed health plan clients. Ex. 6.

Hon. Cathy L. Waldor
February 24, 2023
Page 7

SaveOnSP now seeks a protective order to stop JJHCS from subpoenaing or contacting for litigation purposes more than a limited number of SaveOnSP's clients and their patients, except upon SaveOnSP's consent or a showing of good cause to the Court.

*First*, broad third-party discovery of plans and clients by JJHCS could severely harm SaveOnSP. A party may not harass, annoy, or embarrass another party or third-party through the discovery process. *See Santiago v. Apothaker Scian P.C.*, 2017 WL 4543689, at *1 (D.N.J. Oct. 11, 2017); *see also* Fed. R. Civ. P. 26(g)(1)(B)(ii). Most of SaveOnSP's clients are private, employer-sponsored, self-funded plans who keep their relationship with SaveOnSP confidential from drug makers like JJHCS. Many are not regular litigants and could incur significant costs and burdens if forced to hire outside counsel and respond to subpoenas. If JJHCS contacts or subpoenas them, many health plans may consider ending their relationship with SaveOnSP. Similarly, patients subpoenaed or contacted about the litigation by JJHCS could become confused, thinking their access to specialty drugs is in peril, and complain to their health plans, creating further pressure for the plans to cut ties with SaveOnSP. JJHCS should not be allowed to use litigation to harm SaveOnSP in this way. Courts have recognized serious risks to a party posed by subpoenas directed to its non-party clients and ordered relief to guard against those risks. *See, e.g.*, *Winona PVD Coatings, LLC v. Excel Enters., LLC*, No. 3:16-CV-19-WCL-CAN, 2016 WL 9347091, at *3 (N.D. Ind. Apr. 18, 2016) (stating that defendants' subpoenas to non-party customers posed a risk to plaintiff's business relationships and ordering that defendants proceed with party discovery first to prevent defendants from prematurely burdening non-parties); *Accusoft Corp. v. Quest Diagnostics, Inc.*, No. CIV.A. 12-40007-FDS, 2012 WL 1358662, at *1, 10-11 (D. Mass. Apr. 18, 2012) (quashing third-party subpoenas directed at defendants' customers because the discovery at issue would likely harm defendants' customer relationships); *see also Thompson v. Trident Seafoods Corp.*, No. C11-0120RSL, 2012 WL 293865, at *1-2 (W.D. Wash. Jan. 31, 2012) (denying defendants' motion to compel production of plaintiff's employers' identities, and granting plaintiff's motion for protective order over those identities, because even if those identities were relevant to damages, defendants' desire to take third-party discovery from those employers posed "a risk of annoyance, embarrassment, and oppression" to plaintiff).

*Second*, JJHCS's subpoenas to third-party clients and patients are highly likely to be duplicative of party discovery. "A court may limit or deny otherwise appropriate discovery when the information sought is not proportional to the needs of the case when certain factors are considered, including burden and expense." *In re EthiCare Advisors, Inc.*, Civ.A. No. 20-1886 (WJM), 2020 WL 4670914, at *3 (D.N.J. Aug. 12, 2020); *see also* Fed. R. Civ. P. 26(c). As JJHCS's subpoena to Premera shows, it would seek information from these subpoenas that it is already seeking from SaveOnSP. Of JJHCS's nine requests to Premera, seven duplicate requests that it already made to SaveOnSP (the other two seek information about an entry on Premera's website, outside the time period of discovery). Ex. 6. JJHCS has not explained why it needs discovery from third-party health plans and patients that it can get from SaveOnSP. *Korotki v. Cooper Levenson, April, Niedelman & Wagenheim, P.A.*, Civil No. 20-11050 (CPO/MJS), 2022 WL 2191519, at *2, 7 (D.N.J. June 17, 2022) (quashing third-party subpoenas because they contained nearly identical requests to prior requests for production directed to a party); *see generally* Fed. R. Civ. P. 26(b)(2)(C). And JJHCS certainly has not explained why it would need to subpoena more than a limited number of

7

Hon. Cathy L. Waldor
February 24, 2023
Page 8

plans or patients to obtain whatever information it does not think that SaveOnSP could provide. *Wells Fargo & Co. v. ABD Ins.*, No. C 12-03856 PJH DMR, 2012 WL 6115612, at *3 (N.D. Cal. Dec. 10, 2012) (limiting number of non-party subpoenas directed to defendants' clients to a small percentage of its clients); *Heckler & Koch, Inc. v. German Sport Guns GMBH*, No. 1:11-CV-1108-SEB-TAB, 2014 WL 1323226, at *1-2 (S.D. Ind. Mar. 28, 2014) (limiting subpoenas to three out of fourteen customers as a sample).

JJHCS's arguments to the contrary are unpersuasive.

*First*, JJHCS asserts that its inability to speak to patients about the litigation with Save-OnSP would place "extreme limitations on JJHCS's business operations." Ex. 4 (Feb. 9, 2023 Ltr. from A. LoMonaco to M. Nelson) at 1. Not so. SaveOnSP proposes to produce patient and client identities as Attorneys' Eyes Only. Because JJHCS's businesspeople would not receive this information, they would be no more limited in their operations than they are now. SaveOnSP's proposal would simply prevent JJHCS's attorneys from contacting significant numbers of plans and patients about this litigation.

*Second*, JJHCS contends that SaveOnSP seeks measures inconsistent with the Federal Rules of Civil Procedure. Not so. SaveOnSP seeks relief consistent with the Court's power to limit discovery to prevent harm and avoid cumulative and duplicative discovery.

*Third*, JJHCS argues that a protective order is improper because it is unilateral. JJHCS identifies no commercial harm that might result from SaveOnSP speaking to plans or patients. And JJHCS has never asked SaveOnSP to limit the number of plans or patients it could contact for litigation purposes. SaveOnSP would be glad to discuss a mutual limit.

*Fourth*, while a party may interview willing third-party witnesses, that general principle yields when the contact poses a high risk of harm to a party's business unrelated to the litigation. In two cases cited by JJHCS, the party sought to speak to a small group of treating physicians relevant to the litigation who would possess unique information otherwise potentially unavailable to the parties. *See Patton v. Novartis Consumer Health, Inc.*, No. 02-cv-47, 2005 WL 1799509, at *3 (S.D. Ind. July 25, 2005) (asking to interview a group of treating physicians in which the plaintiff put her medical condition at issue); *Doe v. Eli Lily & Co.*, 99 F.R.D. 126, 128 (D.D.C. 1983) (same). JJHCS also cites to a case in which certain non-parties agreed in a settlement agreement to sit for an interview, and the movant sought a protective order to prevent those interviews. *Eddystone Rail Co., LLC v. Bridger Logistics, LLC*, No. 2:17-cv-00495-JDW, 2021 WL 4262317, at *1-3 (E.D. Pa. Sept. 20, 2021). Those cases simply do not speak to the concerns here. And Save-OnSP has never suggested that JJHCS not speak to any plans or patients, just that it limit the number to minimize the risks of commercial harm.[5]

---

[5] JJHCS tries to distinguish the cases cited by SaveOnSP on the basis that they did not impose the precise limits that SaveOnSP seeks here. This misses the point. Those cases recognize that the

Hon. Cathy L. Waldor
February 24, 2023
Page 9

*Fifth*, JJHCS says that a limit of five plans or patients is too little. SaveOnSP is glad to discuss a different limit, as long as it is reasonable, but JJHCS has refused to do so.

*Finally*, JJHCS assets that the Federal Rules give SaveOnSP adequate protections because it could move to quash any subpoenas that JJHCS might serve, and the plans or patients would have time to retain counsel. This is disingenuous. The Rules would not prevent JJHCS from interviewing or speaking with clients or patients without subpoenaing them, putting commercial pressure on them to question their business relationships with SaveOnSP. And receiving a subpoena, even one that SaveOnSP then moved to quash, and having to hire litigation counsel would also apply commercial pressure. At bottom, the Rules do not protect SaveOnSP from the commercial harm that could result from wide-spread third-party discovery of plans and patients by JJHCS.

SaveOnSP respectfully asks the Court to enter a protective order limiting JJHCS to issuing subpoenas to, or otherwise contacting about the litigation, more than five patients and five clients without SaveOnSP's prior consent of or an order of the Court for good cause shown.

### *JJHCS's Position*

SaveOnSP seeks extraordinary relief through this application for a protective order.  First, SaveOnSP asks the Court to prohibit JJHCS from speaking with its own patients who are taking its drugs and who are participants in its CarePath patient assistance program.  The obvious purpose of this application is to prevent JJHCS from learning more about the harms inflicted by SaveOnSP or developing its case for trial.  Second, SaveOnSP seeks to also prohibit JJHCS from speaking with health insurance companies and health plans—sophisticated entities who are well represented and certainly capable of defending their own interest.  As such, SaveOnSP asks the Court to bar JJHCS from engaging in the routine factfinding process that is an essential part of discovery, by placing unprecedented restrictions on JJHCS's ability to contact potential witnesses—even those patients with whom JJHCS already has a contractual relationship.  No factual showing has been made to support the issuance of such a protective order.  Like any other plaintiff, JJHCS should be permitted to speak with witnesses and issue subpoenas without restrictions dictated by SaveOnSP, which should not be allowed to abuse the discovery process by imposing a gag order designed to pull a veil over its conduct impacting and involving third parties.

As an initial matter, any motion for a protective order relating to subpoenas that JJHCS has not served is not tethered to any specific dispute and is, therefore, premature.  As discussed above, JJHCS is not "go[ing] after" patients or health plans or anyone else, or subpoenaing thousands of its own patients, or harassing witnesses.  Nor has SaveOnSP shown that JJHCS has caused or will cause any business harm by proceeding with the normal course of third-party discovery.  Such fears are entirely speculative.  Nor has SaveOnSP sought Court permission to file a motion for a

---

Court may limit discovery to avoid risks of commercial harm. The Court can use its discretion to determine the specific limits appropriate to the case before it.

Hon. Cathy L. Waldor
February 24, 2023
Page 10

protective order, which would be premature at this time, in any event. There is no subpoena pending that has given rise to any need to issue a protective order, and it is inappropriate to ask the Court to issue a protective order without the development of a full factual record.

In reality, the harm feared by SaveOnSP is not commercial harm but rather that SaveOnSP will be unable to defend against the evidence of patient harm and wrongful practices that will be developed in third-party discovery. Of course, a party's fear that the evidence developed in discovery will be used against them in the lawsuit is provides no basis for a protective order. If and when SaveOnSP takes issue with any given subpoena JJHCS serves, SaveOnSP may seek judicial intervention at the appropriate time in accordance with the Federal Rules. *See* Fed. R. Civ. P. 30(b)(1), 45(a)(4). We ask the Court to deny this application as unripe.

On the merits, SaveOnSP is also wrong. Again, the patients with whom SaveOnSP seeks to prevent JJHCS from communicating are patients who are participants in JJHCS's CarePath program. These patients are directly impacted and harmed by SaveOnSP's conduct. JJHCS is entitled to speak with them to learn more about those issues and the harms inflicted on them by SaveOnSP. SaveOnSP has no legal standing to prevent JJHCS even from speaking to its own patients who are already in regular communication with JJHCS. This is both unfair to JJHCS and also unworkable given the ongoing business relationship between JJHCS and its patients.

The Court has already recognized the importance of discovery from patients. For example, in denying SaveOnSP's motion to dismiss, Judge Vazquez determined that JJHCS "plausibly alleges at least two types of consumer deception: (1) enlisting pharmacies to reject patients' claims for their prescription at the point of sale, Compl. ¶¶ 13, 63, 113; and (2) failing to inform patients that are enrolling in SaveOnSP, they breach the CarePath terms and conditions, Compl. ¶¶ 113." Dkt. No. 68, at 13. JJHCS is entitled to pursue discovery from patients who have found themselves caught in SaveOnSP's scheme, to hear their firsthand accounts of the effect it has had on their medication and treatment plans. This is not a case in which every patient will have had the same experience with SaveOnSP. Patients are covered by different insurance plans, take different medications, have different medical histories, and live in different geographic areas. It cannot be said that once we have spoken to a limited number of patients (out of the tens of thousands of patients who are harmed by SaveOnSP) that no other patient will have had a unique experience with SaveOnSP.

As to health insurance plans, SaveOnSP itself has placed the role of its health plan clients at issue in its motion to dismiss and other statements in this action, including, for example, arguing that JJHCS's claim should be preempted because the critical decisions relating to the SaveOnSP Program are purportedly made by the health plans, and not by SaveOnSP itself. *See, e.g.*, Mem. Of Law in Support of Def.'s Mot. To Dismiss, Dkt. 31-1, at 8-13. JJHCS is entitled to pursue discovery from the very health plans whose practices SaveOnSP placed at issue in this action. The Premera subpoena to which SaveOnSP refers is a good example. It seeks only a limited set of documents focused on Premera's recognition that CarePath's terms and conditions bar use of SaveOnSP; Premera engaged counsel after receiving the subpoena, has received an extension of time to reply, and is engaged in discussions with JJHCS regarding the subpoena. The system is working just as the Federal Rules contemplate.

Hon. Cathy L. Waldor
February 24, 2023
Page 11

Furthermore, SaveOnSP's request for a protective order is unilateral: it would only prevent JJHCS from speaking with patients and SaveOnSP's health plan clients, and imposes no analogous restrictions on SaveOnSP. This one-way street would create an unbalanced system of discovery that authorizes SaveOnSP to obtain information from potential witnesses while inhibiting JJHCS's ability to do the same. JJHCS should not be subject to SaveOnSP's arbitrary rules restricting the number of patients and health plans it is allowed to contact or subpoena. JJHCS certainly should not be subjected to SaveOnSP's proposal that JJHCS must seek SaveOnSP's prior consent or Court order to contact or subpoena more than five health plans or five patients.

The cases cited by SaveOnSP in which the court granted protective orders or otherwise restricted third-party discovery present materially different facts than are present here. *See, e.g., Korotki*, 2022 WL 2191519, at *4-8 (quashing third-party subpoenas in a legal malpractice suit because, *inter alia*, they sought materials already provided to the plaintiff, were unduly burdensome, and fell outside the permissible scope of discovery); *Santiago*, 2017 WL 4543689, at *1 (granting a limited protective order over the defendant's personal net worth because personal finances were irrelevant to the suit); *Thompson*, 2012 WL 293865, at *1 (denying motion to compel the disclosure of the plaintiff's employer's identities in an employment case because it risked "subjecting plaintiff's current and prospective employers to discovery and inviting an in-depth critique of plaintiff's job performance [which would] certainly pose a risk of annoyance, embarrassment, and oppression."). None of those cases have any bearing here.

*Accusoft* is instructive. 2012 WL 1358662, at *1. In that copyright infringement case, the court addressed a discovery dispute concerning 19 third-party subpoenas issued by the plaintiff to the defendants' customers. *Id.* The court had granted limited injunctive relief to the plaintiff by compelling the "defendants to produce an accounting of their [relevant business] relationships." *Id.* at 10. Accordingly, the court quashed the plaintiff's third-party subpoenas, but held that the plaintiff may renew the subpoenas, as needed, after the defendants produced an accounting of their business relationships. *Id.* at *10-11. Here, JJHCS has issued only one health plan subpoena; not 19. And it not received any discovery from SaveOnSP that would moot the need for third party discovery. The Court has no record on which to determine, as in *Accusoft*, what is being sought from third parties or whether it can fairly be deferred.

Moreover, the terms of SaveOnSP's requested protective order are far more draconian than the cases it cites in support of its proposal. *Wells Fargo*, 2012 WL 6115612, at *3-4 (permitting the plaintiffs to proceed with 50 third-party subpoenas instead of 142, in addition to the 19 third-parties that had already responded to the subpoenas); *Heckler*, 2014 WL 1323226, at *3 (permitting the plaintiffs to proceed with three of the requested fourteen third-party subpoenas and ordering the defendants to produce responsive documents concerning all fourteen customers the plaintiffs intended to subpoena). Prohibiting JJHCS from contacting or serving subpoenas on more than five patients and five health plans out of the tens of thousands of patients and hundreds of health plan clients that are involved with SaveOnSP is entirely arbitrary and would not even provide JJHCS with a representative sample of patients' and health plans' experiences with SaveOnSP.

Hon. Cathy L. Waldor
February 24, 2023
Page 12

Far from discouraging informal efforts at fact gathering by interviewing witnesses, courts have made clear that such contacts are beneficial for the system and are to be permitted. *See, e.g.*, mm *Rail Co., LLC v. Bridger Logistics, LLC*, No. 2:17-cv-00495-JDW, 2021 WL 4262317, at *4 (E.D. Pa. Sept. 20, 2021) ("[P]re-trial interviews with witnesses [are] common, and 'the right to conduct such interviews is taken for granted as a matter of federal procedure." (quoting *Patton v. Novartis Consumer Health, Inc.*, No. 02-cv-47, 2005 WL 1799509, at *3 (S.D. Ind. July 25, 2005)); *Doe v. Eli Lily & Co.*, 99 F.R.D. 126, 128 (D.D.C. 1983) ("[W]hile the Federal Rules of Civil Procedure have provided certain specific formal methods of acquiring evidence from recalcitrant sources by compulsion, they have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a witness who is willing to speak."). JJHCS and its counsel are permitted to contact and interview any third parties who are willing to speak, without limitation.

Not surprisingly, SaveOnSP cites no authority for its effort to restrict JJHCS from contacting witnesses. And the cases it cites provide no support for its demand. Even where courts quashed subpoenas in particular circumstances, they imposed no prohibitions on contact of the kind SaveOnSP seeks. *See Korotki*, 2022 WL 2191519, at *8 (quashing third-party subpoenas, but placing no restrictions on the plaintiff's ability to contact witnesses); *In re EthiCare Advisors, Inc.*, 2020 WL 4670914, at *5 (denying motion to compel compliance with a third-party subpoena, but placing no restrictions on any party's ability to contact potential witnesses); *Santiago*, 2017 WL 4543689, at *1 (granting limited protective order over the defendant's personal net worth but placing no restrictions on the plaintiff's ability to contact potential witnesses); *Winona*, 2016 WL 9347091, at *3 (granting motion to quash subpoenas, but placing no restrictions on any party's ability to contact potential witnesses); *Heckler*, 2014 WL 1323226, at *1-2 (limiting the scope of third party discovery on the facts, but placed no restrictions on the plaintiff's ability to contact potential witnesses); *Accusoft Corp.*, 2012 WL 1358662, at *10-11 (granting motion to quash third-party subpoenas, but placed no restrictions on any party's ability to contact potential witnesses); *Thompson*, 2012 WL 293865, at *1 (denying motion to compel the disclosure of the plaintiff's employer's identities, but placed no restrictions on any party's ability to contact potential witnesses); *Wells Fargo*, 2012 WL 6115612, at * 4 (limiting the number of the plaintiffs' third-party subpoenas, but placed no restrictions on the plaintiffs' ability to contact potential witnesses).

JJHCS has already committed to "ensure that the return date for any subpoena provides adequate time for the witness to engage counsel and/or consult with either of the parties, if they care to do so, or for [SaveOnSP] to take any actions appropriate under the Federal Rules." Ex. 4 (Feb. 9, 2023 Ltr. from A. LoMonaco to M. Nelson) at 2. JJHCS stands by this commitment, which should alleviate SaveOnSP's speculative concerns regarding any potential commercial impact that may result from JJHCS contacting or subpoenaing patients or health plans. The Federal Rules sufficiently address SaveOnSP's concerns, and SaveOnSP should not expect this Court to take steps nowhere permitted in the Federal Rules or elsewhere to protect it from the impact of routine aspects of civil litigation.

JJHCS has not proposed a mutual limitation on the number of patients and health plans each party may contact or subpoena because no limitation is justified by law or by the facts of this

Hon. Cathy L. Waldor
February 24, 2023
Page 13

case. JJHCS and SaveOnSP are already restricted by the actual constraints of the Federal Rules of Civil Procedure and the limited time remaining for discovery—the same constraints that protect the rights of litigants and third parties in every case. It is both unnecessary and unjustified for SaveOnSP to demand additional artificial limitations on JJHCS's ability to engage in third-party discovery.

JJHCS respectfully requests that this Court deny SaveOnSP's request for a protective order limiting JJHCS's ability to contact and subpoena patients and SaveOnSP's health plan clients. The motion is overreaching in the extreme, both because it is unripe and because it is wrong on the merits.

## III.   MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

### A.   Documents Related to the Development and Marketing of CarePath, JJHCS's Financial Returns from CarePath, and the Price of J&J's Specialty Drugs (RFP Nos. 11, 28.a-28.h, 29-30)[6]

#### *SaveOnSP's Position*

SaveOnSP seeks information about the development and marketing of CarePath (RFP No. 11), JJHCS's financial returns from CarePath (RFP No. 29), and the price of Johnson & Johnson's ("J&J") specialty drugs, including J&J's decisions to raise those prices (RFP Nos. 28.a-28.h and 30). JJHCS has flatly refused to produce this information, asserting that it is irrelevant. *See, e.g.*, Ex. 7 (Jan. 27, 2023 Letter from A. LoMonaco to M. Nelson) at 1-3; Ex. 8 (Feb. 15, 2023 Letter from M. Nelson to A. LoMonaco).

This material is highly relevant to SaveOnSP's defenses.

*First*, JJHCS's Complaint alleges that CarePath is intended to help patients afford their medications, *see, e.g.*, Compl. ¶ 44, that SaveOnSP harms patients and threatens the continued viability of CarePath by making it "prohibitively expensive," *id.* ¶ 114, and that this threat to Care-Path's viability constitutes a public harm for purposes of JJHCS's GBL § 349 claim. SaveOnSP intends to show that CarePath is not a public good, but primarily a marketing tool that JJHCS and its affiliates use to sell more specialty drugs and to hike the drug prices. JJHCS asserts that Care-Path is not a marketing program, but that is for the factfinder to decide. SaveOnSP also intends to show that J&J's return on investment from CarePath is substantial, and that even if JJHCS's costs for CarePath have gone up, CarePath is still profitable for J&J—not "prohibitively expensive," as JJHCS claims—and that SaveOnSP thus poses no risk to CarePath's viability. JJHCS opted to

---

[6] SaveOnSP's RFP Nos. 26 and 36-37 also raise similar issues. Because the parties are negotiating a potential compromise on those RFPs, SaveOnSP is not moving on them at this time.

Hon. Cathy L. Waldor
February 24, 2023
Page 14

plead that one of the ways SaveOnSP causes public harm is by threatening the viability of Care-Path, and SaveOnSP is entitled to defend against that claim.

*Second*, JJHCS has accused SaveOnSP of violating GBL § 349 by making health care more expensive for patients. Compl. ¶ 114. SaveOnSP intends to show that JJHCS and J&J use their copay assistance program to convince doctors to prescribe and patients to fill prescriptions for its specialty drugs, even as J&J increases the price of those drugs year after year. Those cost increases—imposed by J&J and other pharmaceutical companies—pressure health plans to increase the cost of healthcare for all members to offset increased spending for specialty drugs. JJHCS asserts that SaveOnSP can get the discovery it needs to support this theory from health plans. But SaveOnSP is entitled to prove that the reason health plans must raise costs is because J&J raises its prices year after year simply to increase profits. The factfinder can then evaluate whether health plans' decision to increase plan members' costs is a public harm.

*Third*, JJHCS's return on investment from CarePath and its profits from specialty drugs are relevant to JJHCS's alleged damages. SaveOnSP intends to show that its services to health plans have resulted in more patients enrolling in CarePath than would have otherwise and that patients' adherence to J&J's specialty drugs has increased because of the benefit terms implemented by SaveOnSP's clients (which ensure that plan members always receive their drugs for free). As a result of SaveOnSP's activities, J&J has sold more specialty drugs and reaped more profits than it otherwise would have—undercutting JJHCS's alleged damages. To quantify this benefit to J&J, SaveOnSP seeks discovery on JJHCS's return on investment for CarePath and on J&J's profits on its specialty drugs. JJHCS disagrees with SaveOnSP's theory that it increases patient adherence to Janssen Drugs, claiming that SaveOnSP "play[s] [no] part in encouraging patients to take Janssen pharmaceuticals," but that is an issue to be resolved on the merits, once the parties have received relevant discovery.

*Finally*, JJHCS seeks injunctive relief in addition to damages. To obtain a permanent injunction, JJHCS must demonstrate "(1) it will suffer irreparable injury, (2) no remedy available at law could adequately remedy that injury, (3) the balance of hardships tips in its favor, and (4) an injunction would not disserve the public interest." *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). SaveOnSP is entitled to discovery that will enable it to refute each of those elements, including to show that JJHCS is not suffering any real injury, let alone an irreparable one, from SaveOnSP's activities and that an injunction would not serve the public interest. JJHCS claims that SaveOnSP is not entitled to any additional documents because JJHCS has already agreed to provide documents that show JJHCS's theory of liability. But SaveOnSP is entitled to documents that show that neither JJHCS nor the public was harmed by SaveOnSP's conduct. By seeking an injunction shutting down SaveOnSP's business, JJHCS itself has put these questions at issue.

SaveOnSP seeks this information to defend itself against JJHCS's baseless claims, which are designed to put SaveOnSP out of business (not to "penalize" JJHCS). JJHCS has agreed to produce documents relevant to its own theories of liability, injury, and damages, but it is withholding documents critical for SaveOnSP to defend against those theories. And while JJHCS claims that SaveOnSP's requests are burdensome, the primary issue before the Court in this motion is

Hon. Cathy L. Waldor
February 24, 2023
Page 15

relevance. Once the Court determines that the information is relevant, the parties can meet and confer about appropriate search parameters, and JJHCS can then quantify any burden argument it might want to make, as the Federal Rules require. Fed. R. Civ. P. 26(b)(2)(B).

The Court should compel JJHCS to produce documents in response to SaveOnSP's RFP Nos. 11, 28.a-28.h, and 29-30.

### *JJHCS's Position*

While SaveOnSP attempts to gloss over the scope of the demands it references in this section, they are extraordinary. SaveOnSP's requests include items such as (1) all documents regarding the development, management, and marketing of CarePath going back to 2009, (*see* SaveOnSP's RFP No. 11); (2) data regarding every single individual patients who has received Janssen drugs since 2009, including dosages and fill amounts, even if those patients have nothing to do with CarePath or SaveOnSP (*see* SaveOnSP's RFP No. 28); and (3) all documents regarding the manufacturing and pricing of Janssen pharmaceuticals since 2009 (*see* SaveOnSP's RFP Nos. 28, 29, and 30). Each of these categories alone is grossly burdensome and utterly irrelevant. Together, they constitute a shocking overreach that can only be construed as an attempt to penalize JJHCS—and Johnson & Johnson overall—for having brought this lawsuit. SaveOnSP's rationale for these far-reaching requests is flawed, and its motion to compel should be denied.

As an initial matter, in an effort to reach a compromise, and notwithstanding the very limited relevance of these documents, JJHCS has already agreed to produce several categories of documents in these areas that SaveOnSP seeks. Specifically, JJHCS has agreed to produce

- "all non-privileged documents and communications in its possession relating to the extent of the harm SaveOnSP has caused JJHCS during the relevant Time Period,"

- "the data that formed the basis for the allegations in Complaint ¶¶ 92-100,"

- "JJHCS's budget for copay assistance through CarePath," and

- "JJHCS's actual and projected annual costs for CarePath."

*See* R&Os to Requests 25, 27, and 29.

Subject to SaveOnSP's agreement to make a reciprocal production of patient-level data, JJHCS has also agreed to produce for the time period of January 1, 2016 to July 1, 2022 documents sufficient to show: (1) all patients enrolled in CarePath for each Janssen Drug; (2) the dates on which each patient was enrolled in CarePath; (3) the amounts of copay assistance funds that JJHCS offered to each Patient enrolled in CarePath; (4) the Janssen Drug for which each patient enrolled in CarePath received copay assistance; and (5) all CarePath copay assistance payments made to each patient." Ex. 9 (Feb. 17, 2023 Letter from A. LoMonaco to M. Nelson).

Hon. Cathy L. Waldor
February 24, 2023
Page 16

Nothing more is necessary or appropriate. SaveOnSP's insistence on documents from as long ago as 2009 would require JJHCS to produce documents from nearly a decade before the allegations in the Complaint, and long before the SaveOnSP's operations began in earnest in 2017. Nor did CarePath even exist in its current form until 2016. Documents from the time period prior to 2017 are irrelevant and certainly fail the test of proportionality. Nor is there any basis for data relating to every patient on a Johnson & Johnson drug other than the data specific to CarePath that JJHCS has already agreed to produce. And whatever SaveOnSP might seek to argue with respect to the manufacturing and pricing of drugs, for it seek to every document relating to all specialty drugs in the Johnson & Johnson family of companies over a 13-year period is an astonishing overreach. Such documents are utterly irrelevant, certainly disproportionate, and their production would be an unprecedented burden.

SaveOnSP somehow suggests that the "primary issue before the Court in this motion is relevance," and that once the Court determines that the information is relevant, "the parties can meet and confer about appropriate search parameters, and JJHCS can then quantify any burden argument it might want to make." This is only an effort to further drag out the discovery process and to minimize the burden objections presented here. JJHCS's opposition to SaveOnSP's motion is based on both relevance and burden, and the Court can and should consider relevance and burden together.

SaveOnSP's purported justifications for its conduct all fail.

*First*, SaveOnSP's claims that it needs the documents so it can prove that "CarePath is not a public good, but primarily a marketing tool that JJHCS and its affiliates use to sell more specialty drugs and to hike the drug prices." This argument does not withstand even minimal scrutiny.

CarePath is not a marketing program—it is a patient assistance program. But regardless, whether CarePath is a marketing program does not give SaveOnSP license to tortiously interfere with CarePath patients or deceive them into enrolling in the SaveOnSP Program. There is no rule of law that precludes a tortious interference claim simply because the contract at issue purportedly serves a business purpose. *See, e.g.*, *Score Bd., Inc. v. Upper Deck Co.*, 959 F. Supp. 234, 238 (D.N.J. 1997) (finding plaintiff was likely to succeed on claim for tortious interference with its contract regarding licensing rights for sports memorabilia).

Further, as illustrated by Judge Vazquez's opinion, the question relevant to JJHCS's GBL § 349 claim is not whether, in the abstract, CarePath is a "public good," but whether ***SaveOnSP's actions*** harm the public. *See* Opinion & Order, Dkt. 68, at 13 (holding that a plaintiff must "allege some harm to the public at large" and that JJHCS has done so by alleging that SaveOnSP "enlist[s] pharmacies to reject patients' claims for their prescriptions at the point of sale" and "fail[s] to inform patients that by enrolling in SaveOnSP, they breach the CarePath terms and conditions"). JJHCS does not hide that it is a for-profit corporation, as are many plaintiffs who bring GBL § 349 claims. SaveOnSP cannot use that fact, or unsupported speculation about the "intent" behind CarePath, to justify its lies to patients or its interference with JJHCS's contracts.

Hon. Cathy L. Waldor
February 24, 2023
Page 17

*Second*, SaveOnSP also claims that it "intends to show that J&J's return on investment from CarePath is substantial, and that even if JJHCS's costs for CarePath have gone up, CarePath is still profitable for J&J—not 'prohibitively expensive,' as JJHCS claims." Again, SaveOnSP's claimed defense does not justify its overly expansive discovery requests. SaveOnSP seems to suggest that if Janssen pharmaceuticals are profitable, that somehow erases JJHCS's damages or gives SaveOnSP permission to interfere with CarePath's Terms and Conditions or justifies its deception of patients. It does not.

*Third*, SaveOnSP overreads JJHCS's allegation that SaveOnSP's services "jeopardiz[e] the viability of patient assistance programs like CarePath by making them prohibitively expensive." Compl. ¶ 114. This allegation self-evidently turns on the added expenses caused by SaveOnSP. JJHCS's point is simply that, as a matter of business judgment, it cannot justify the skyrocketing costs of its copay assistance program if those added costs are incurred not for the benefit of patients but rather for SaveOnSP and its partners. JJHCS has already agreed to produce documents relating to CarePath's budget and costs, and SaveOnSP is free to explore these points further at depositions and trial. But it is not free to probe every aspect of J&J's financial information in order to argue that JJHCS has the means to continue allowing SaveOnSP to steal from it.

*Fourth*, SaveOnSP states that it wants to disprove JJHCS's allegation that SaveOnSP "make[s] health care more expensive for patients" by demonstrating that CarePath is used to increase sales and prices of Janssen's specialty drugs, and that those increases cause "health plans to increase the cost of healthcare for all members to offset" that cost. Again, SaveOnSP misrepresents the allegations in the Complaint. SaveOnSP omits that JJHCS's full allegation reads: SaveOnSP "mak[es] other patient healthcare needs more expensive ***by not counting any of the funds spent of patients' medication towards their ACA maximum or deductible***." Compl. ¶ 114 (emphasis added). SaveOnSP does not dispute that its program does this, and JJHCS (or Johnson & Johnson) documents relating to increases in drug sales or prices have no bearing on this allegation.

In any event, even if SaveOnSP's claims about CarePath were true, it would provide no justification for SaveOnSP's wrongful and deceptive actions. SaveOnSP is admitting in this letter that it wants to make this case into one about the fairness of drug prices, but that is not relevant to this case in any way. SaveOnSP nowhere explains how the price of drugs or the reasons for any purported increases would disprove any of the elements of JJHCS's tortious interference or GBL claims or justify their conduct. The elements of those claims look to ***SaveOnSP's*** actions. But even still, there is no reason to think that ***JJHCS*** has the documents necessary to establish this purported defense. If SaveOnSP seeks to show that ***health plans*** have experienced increased costs or have chosen to shift those increased costs onto patients, then SaveOnSP should request the documents showing that from the ***health plans*** who are themselves SaveOnSP's customers.[7]

---

[7] Despite JJHCS's objections, it has nevertheless has already produced to SaveOnSP several Janssen Transparency Reports which provide summary data about Janssen drug prices over the

Hon. Cathy L. Waldor
February 24, 2023
Page 18

*Fifth*, SaveOnSP claims it needs documents relating to "JJHCS's return on investment from CarePath and its profits from specialty drugs" is based on speculation that due to "SaveOnSP's activities, J&J has sold more specialty drugs and reaped more profits than it otherwise would have." SaveOnSP's theory makes little sense. CarePath already makes Janssen pharmaceuticals affordable by reducing patient expenses to $5 or $10 per prescription fill. Nor does SaveOnSP play any part in encouraging patients to take Janssen pharmaceuticals; doctors are the ones who prescribe Janssen products.[8] Despite this, JJHCS has already said it will produce CarePath enrollment data and documents from 2016 to 2022, such as "all copay assistance payments made to each patient." Such documents should be sufficient to show whether SaveOnSP has in fact caused more patients to take advantage of CarePath and fill more Janssen prescriptions. SaveOnSP, however, still seeks additional documents.

*Finally*, SaveOnSP contends its overbroad requests are necessary so it may refute the elements of injunctive relief, including "to show that JJHCS is not suffering any real injury, let alone an irreparable one, from SaveOnSP's activities and that an injunction would not serve the public interest." SaveOnSP's conclusory rationale should be rejected. JJHCS has already agreed to produce documents sufficient to show its injury and SaveOnSP is free to test that claim at deposition. It does not need every document relating to the pricing of any Johnson & Johnson drug to do so, let alone all documents going back to 2009 when the SaveOnSP program began in 2017. S*ee also Healthcare Servs. Grp., Inc. v. Fay*, 597 F. App'x 102, 104 (3d Cir. 2015) (noting that "future losses of clients and revenue" are quintessential irreparable injuries). While SaveOnSP is free to make arguments about why enjoining its behavior would be contrary to the public interest, it provides no authority for the proposition that this strategy entitles it to over a decade's worth of documents relating to every aspect of CarePath and all manner of Janssen drug development and pricing information.

## B.    Documents in the Possession of J&J Entities Other Than JJHCS

### *SaveOnSP's Position*

SaveOnSP's RFPs and Interrogatories seek information from JJHCS and JJHCS affiliates. This includes Janssen Pharmaceuticals, Inc. ("Janssen")—the wholly owned subsidiary of J&J that developed the specialty drugs at the center of this litigation—and other J&J entities involved in the development, marketing, or administration of CarePath or in the development or marketing of

---

past several years. Such documents, plus discovery from SaveOnSP's health plan partners, are sufficient for SaveOnSP to make the arguments it says that it seeks to make.

[8] SaveOnSP replies to this point that it wants discovery to show that it does, in fact, play a part in encouraging patients to take Janssen pharmaceuticals. SaveOnSP is free to rely upon its own documents to show how it has brought about such results; there is no reason to think that JJHCS would have documents relevant to this issue.

Hon. Cathy L. Waldor
February 24, 2023
Page 19

Janssen drugs. JJHCS has refused to produce any documents and communications from these entities or to even identify which other J&J entities were involved with CarePath or Janssen drugs. Ex. 7 (Jan. 27, 2023 Letter from A. LoMonaco to M. Nelson) at 4.

JJHCS has no valid basis to object based on relevance. SaveOnSP seeks documents on topics that either the parties agree are relevant (*e.g.*, communications about SaveOnSP, communications with patients or plans, the meaning of the CarePath terms and conditions) or on topics that SaveOnSP has asked the Court to compel JJHCS to produce over a relevance objection (*e.g.*, documents concerning the development and marketing of CarePath; documents concerning the development and marketing of the Janssen Drugs). JJHCS cites no authority suggesting that relevant documents become irrelevant simply because they are held by a corporate affiliate or vendor.

JJHCS does not assert that these entities lack relevant documents. Nor could it, as it has refused to conduct a reasonable investigation to determine if other J&J entities have such information or what information they have. JJHCS also does not assert that documents held by other J&J entities are outside of its possession, custody, or control.

JJHCS objects based on burden but says only that J&J and Janssen are "big companies" with many subsidiaries and employees. Ex. 10 (Feb. 7, 2023 Letter from M. Nelson to A. LoMonaco) at 4-5. That comes nowhere close to quantifying burden. JJHCS asserts that SaveOnSP has "demand[ed] that it must peer into every J&J entity that has been involved, however incidentally or minimally, in the development or marketing of a Janssen Drug since 2009." In fact, SaveOnSP wants JJHCS to identify what those entities were, and the roles they played, so the parties can then negotiate reasonable parameters for JJHCS's search for relevant documents. JJHCS's assertion that SaveOnSP has not engaged with JJHCS's investigation is simply false—JJHCS has categorically refused to produce *any* documents from *any* J&J entities other than JJHCS.

This Court should compel JJHCS (1) in response to SaveOnSP's Interrogatories, to identify all J&J entities involved in the development, marketing, or administration of CarePath or the development and marketing of Janssen drugs as well as the names of relevant individuals at those entities and at Janssen; and (2) in response to SaveOnSP's RFPs, to produce relevant documents from all such J&J entities subject to parameters agreed to by the parties.

### *JJHCS's Position*

Johnson & Johnson has over 200 corporate subsidiaries, operating all over the world. It is one of the largest health care companies in the world, with more than 140,000 employees. SaveOnSP should not be allowed to conduct a fishing expedition into every J&J entity that has had any hand in the development or marketing of *any* J&J drug on the CarePath copay assistance program dating back to 2009. As explained above, documents related to the marketing, development, and pricing of every Janssen Drug are irrelevant to any claim or defense in this action. This case concerns only the CarePath copay assistance program. SaveOnSP's discovery should be limited to the only J&J entity charged with the administration of CarePath: JJHCS.

Hon. Cathy L. Waldor
February 24, 2023
Page 20

JJHCS is the sole relevant J&J entity involved in the development, marketing, or administration of CarePath. *See* Ex. 2 (Jan. 6, 2023 Letter from H. Sandick to M. Nelson) at 3; Ex. 7 (Jan. 27, 2023 Letter from A. LoMonaco to M. Nelson) at 2-4; Ex. 11 (Feb. 14, 2023 Letter from A. LoMonaco to M. Nelson) at 3. In response to SaveOnSP's interrogatories, JJHCS identified dozens of individuals within JJHCS's Strategic Customer Group ("SCG") and Patient Engagement and Customer Solutions ("PECS") business units who have had responsibility for the marketing and administration of CarePath since 2017. JJHCS also produced over five years' worth of organizational charts for SCG and PECS which confirm that the individuals identified held roles relevant to CarePath's marketing and administration, across relevant business functions and therapeutic areas for the Janssen Drugs at issue, including Immunology, Infectious Diseases, Oncology, Pulmonary Hypertension, and Neuroscience. Many of the individuals identified have also been selected as custodians for purposes of document collection in this action. *See* Ex. 12 (Feb. 6, 2023 Letter from H. Sandick to A. Dunlap).

Rather than engage with JJHCS's good faith investigation and document collection methodology, SaveOnSP instead continues to demand that it must peer into every J&J entity that has been involved, however incidentally or minimally, in the development or marketing of a Janssen Drug since 2009. Not only would such discovery be irrelevant to this case, it would also be shockingly burdensome for JJHCS, given the number of entities and affiliates involved. For example, SaveOnSP blithely suggests that JJHCS need only add to its production documents from Janssen Pharmaceuticals, Inc. Yet Janssen Pharmaceuticals itself has thousands of employees, and numerous other Janssen entities (including Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc.) have had a role in developing or marketing the complex and life-altering drugs for which copay assistance is available through CarePath. SaveOnSP insists that some specific quantification of burden is necessary, yet the sheer breadth of its requests—every J&J entity and affiliate involved in the development of dozens of Janssen drugs—makes that burden to JJHCS self-evident.

Entities other than JJHCS have no direct bearing on this case, and JJHCS should not have to collect and produce discovery from them absent some specific showing of need. If, after SaveOnSP has reviewed JJHCS's document productions in this matter, it can point to documents supporting the notion that specific J&J entities beyond JJHCS have relevant information concerning the administration of CarePath copay assistance, then SaveOnSP can renew its requests. Until then, we ask the Court to reject SaveOnSP's motion to compel discovery from J&J entities outside of JJHCS wholesale.

## C.    Identities of JJHCS Hub Entities

### *SaveOnSP's Position*

SaveOnSP's Interrogatories seek information from various JJHCS Hub Entities—vendors and other third parties—involved in the development, administration, or marketing of CarePath and the individuals at those entities involved in those subjects. As SaveOnSP has explained to JJHCS, that information is relevant because these entities are likely to possess documents related to, amongst other things, the pricing of Janssen drugs, the true purpose of CarePath, and J&J's

Hon. Cathy L. Waldor
February 24, 2023
Page 21

return on investment for CarePath. *See* Ex. 8 (Feb. 15, 2023 Letter from M. Nelson to A. LoMonaco) at 2; Ex. 10 (Feb. 7, 2023 Letter from M. Nelson to A. LoMonaco) at 5-7.

JJHCS has identified five such entities: TrialCard, Lash Group, EagleForce, IBM, and TJ Paul. Ex. 11 (Feb. 14, 2023 Letter from A. LoMonaco to M. Nelson) at 2-3. JJHCS has also indicated that JJHCS retained "[n]umerous other agencies … to design content for CarePath marketing, promotional, and educational materials," all of which was done with JJHCS's review, *id.* at 3, as well as "[o]ther vendors" to provide "limited, episodic services to JJHCS relating to CarePath," Ex. 7 (Jan. 27, 2023 Letter from A. LoMonaco to M. Nelson) at 3. JJHCS has not, however, agreed to identify any of those entities or to provide an exhaustive list of potentially relevant Hub Entities.[9]

JJHCS does not assert that all Hub Entities other than those previously identified lack relevant documents, nor does it represent that JJHCS has conducted a reasonable investigation to determine the full scope of entities involved in the development, administration, or marketing of CarePath. While JJHCS states that TrialCard is the "*primary* third-party entity" that administered CarePath, it flatly refuses to identify any other entity involved in administering CarePath. And while it claims that a significant number of entities were engaged in the development and marketing of CarePath, JJHCS has thus far identified only one—TJ Paul. JJHCS has thus far refused to identify even the core vendors involved in the development or marketing of CarePath.

JJHCS asserts it would be burdensome to ask all employees who worked on any J&J copay assistance programs about vendors they employed. But SaveOnSP seeks the identities of Hub Entities that provided services only to CarePath, not other programs. And JJHCS does not explain how many employees it might have to speak with or how long doing so might take, nor does it explain what its investigation to date consisted of. JJHCS cannot deny SaveOnSP relevant information simply because JJHCS chose to hire multiple vendors to assist with CarePath.

This Court should compel JJHCS, in response to SaveOnSP's Interrogatories, to identify all Hub Entities involved in the development, marketing, or administration of CarePath as the names of relevant individuals at those entities.

### JJHCS's Position

SaveOnSP seeks broad-ranging discovery from any and all CarePath vendors and third-parties (which it refers to as the so-called "Hub Entities") that have had any role whatsoever in the development, administration, or marketing of CarePath for a time period of more than a decade. In response, JJHCS has explained that Trial Card is the primary third-party entity with a role in administering the CarePath program relevant to this litigation. JJHCS has employed Trial Card for this purpose since CarePath began in its current form in 2016, which is only one year before the SaveOnSP Program appears to have begun in earnest. JJHCS has already agreed to facilitate a document production from Trial Card. *See* Ex. 11 (Feb. 14, 2023 Letter from A. LoMonaco to

---

[9] JJHCS has agreed to facilitate the production of documents only from Trial Card.

Hon. Cathy L. Waldor
February 24, 2023
Page 22

M. Nelson) at 2-3. JJHCS has also identified a handful of other vendors that have performed other discrete tasks relating to CarePath.

SaveOnSP is unsatisfied with this and demands that JJHCS produce an exhaustive list of all entities—***and all individuals***—that have ever had a hand in any aspect of CarePath. SaveOnSP's motion to compel should be denied on both relevance and burden grounds. As discussed at length in Section III.A, *supra*, its request is not relevant. JJHCS has identified the entities that, based on its investigation to date, are involved in enrolling patients in the copay assistance program and assisting them with their cards. But SaveOnSP's attempt to shift attention beyond those entities to any vendor or even any individual who has provided any services of any kind to CarePath—whether printing a brochure or hiring actors for a commercial—should be rejected. Indeed, CarePath is about more than co-pay support. It offers many services that are not at issue in this litigation. *See, e.g.*, *Support to Help You While Taking STELARA®*, JANSSEN CAREPATH, https://www.janssencarepath.com/patient/stelara/treatment-support (last visited Feb. 24, 2023) (noting that CarePath offers, *inter alia*, nurse support to answer patient questions about Stelara). An itemized account of every vendor or individual who has ever done anything relating to CarePath has no conceivable relevance to the allegations in this case, which all relate to SaveOnSP's conduct.

As to burden, SaveOnSP asserts that JJHCS has not "articulated any burden in identifying such entities or facilitating the production of documents therefrom." This is disingenuous. The JJHCS teams that support CarePath are able to engage vendors as needed, and so to compile the "exhaustive list" SaveOnSP demands, JJHCS would have to engage in a time-consuming investigation, accounting for all employees who worked on any J&J copay support program, and questioning each of them about any entities they had engaged, and then identifying all the individuals from those entities who did any work. JJHCS has undertaken a reasonable investigation, and has identified several entities and their roles. *Id.* SaveOnSP's demand for more than this is unduly burdensome and its motion should be denied.

### D. Documents Relating to the Meaning of CarePath's Terms and Conditions (RFP Nos. 12 and 13)

#### *SaveOnSP's Position*

SaveOnSP's RFP Nos. 12 and 13 seek documents and communications concerning the meaning of CarePath's terms and conditions. JJHCS agreed to produce final versions of CarePath's terms and conditions and documents concerning the "drafting" of CarePath's terms and conditions starting in 2017 but refuses to produce any other documents on this topic, claiming they are irrelevant. For the first time in this letter, JJHCS now says that it will produce documents related to the meaning of the term "other offer" from 2017 on, but no documents from before 2017 and no documents related to any other portions of the terms and conditions.

Documents related to the meaning of CarePath's terms and conditions are centrally relevant. In its tortious interference claim, JJHCS asserts CarePath's terms and conditions say that it is not compatible with any other "offer," that the so-called "SaveOnSP Program" is such an offer,

Hon. Cathy L. Waldor
February 24, 2023
Page 23

and that SaveOnSP induced patients to breach this provision by purportedly inducing them to sign up for the "SaveOnSP Program." Compl. ¶¶ 19-20, 106-11. Among other things, SaveOnSP intends to show that the patients did not breach those provisions because SaveOnSP's services are not an "offer" under the meaning of CarePath's terms and conditions. *See* SaveOnSP's Mem. of L. in Supp. of Mot. to Dismiss (ECF No. 31-1) at 27-28. In resolving the motion to dismiss, the Court did not hold that the contract was unambiguous in JJHCS's favor; it held that arguments about the meaning of the terms "are better suited for a motion for summary judgment." Op. Denying SaveOnSP's Mot. to Dismiss (ECF No. 68), at 16. SaveOnSP is entitled to extrinsic evidence of what the parties—here, JJHCS—believed the disputed provisions meant. *See, e.g.*, *Am. Cyanamid Co. v. Fermenta Animal Health Co.*, 54 F.3d 177, 181 (3d Cir. 1995); *Armkel, LLC v. Pfizer Inc.*, No. Civ. A. 02-4206, 2005 WL 2416982, at *7 (D.N.J. Sept. 29, 2005) ("[U]nder New Jersey law, extrinsic evidence is admissible to aid in the interpretation of an integrated agreement even when the contract, on its face, is free from ambiguity." (citing *Atl. N. Airlines Inc. v. Schwimmer*, 12 N.J. 293, 301-02 (1953)). That evidence goes beyond the mere drafting history of the terms and conditions and includes any documents that shed light on JJHCS's understanding of the meaning of its own terms and conditions. JJHCS also cannot unilaterally limit its search to the history of specific terms—SaveOnSP is entitled to full discovery on all terms in the contracts that JJHCS claims it induced patients to breach.

JJHCS insists that SaveOnSP's Requests are overbroad because they go back to 2009. In fact, as explained below, Section III.F, SaveOnSP seeks documents going back to the earliest date on which JJHCS began drafting the terms and conditions. Ex. 10 (Feb. 7, 2023 Letter from M. Nelson to A. LoMonaco) at 6. JJHCS has refused to tell SaveOnSP when the relevant terms and conditions were first drafted.

The Court should compel JJHCS to produce documents and communications responsive to SaveOnSP's RFP Nos. 12 and 13.

### *JJHCS's Position*

SaveOnSP's RFP Nos. 12 and 13 seek from January 1, 2009, through the present, all documents and communications regarding CarePath's terms and conditions, including (1) "Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) JJHCS's decision to revise any of its CarePath terms and conditions for any Janssen Drug; and (d) JJHCS's understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions, *see* SaveOnSP's RFP No. 12; and (2) "all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89," *see* SaveOnSP's RFP No. 12.

While JJHCS agrees that SaveOnSP is entitled to relevant documents about the drafting of the CarePath terms and conditions, this request for documents going back to 2009—long before the establishment of CarePath in its current form and before SaveOnSP came into existence—

Hon. Cathy L. Waldor
February 24, 2023
Page 24

seeks irrelevant documents and is unduly burdensome. JJHCS has agreed to produce "internal documents and communications relating to the drafting of CarePath's terms and conditions during the relevant time period of January 1, 2017 to July 1, 2022, to the extent such non-privileged documents exist and can be identified after a reasonable search." JJHCS is also prepared to conduct a reasonable search for non-privileged documents and communications during the relevant time period of January 1, 2017 to July 1, 2022 bearing on the meaning of the "other offer" provision at issue in this case. *See* Compl. ¶¶ 18-19. However, JJHCS will not search for and produce documents and communications bearing on the meaning of *all* provisions of the CarePath terms and conditions, most of which are not in dispute. Indeed, in SaveOnSP's own motion to dismiss, the only term it took issue with was the "other offer" provision. *See* Mem. of Law, Dkt. No. 31-1, at 27. It has not explained now why other terms have a disputed meaning and are relevant to this lawsuit. As noted, the other documents sought are irrelevant and would impose significant burdens due to their timeframe. SaveOnSP should accept JJHCS's reasonable limitation on these requests.

We ask the Court to reject SaveOnSP's motion to compel discovery regarding the meaning of terms and conditions not otherwise at issue in this litigation, extending back over seven years before the inception of the CarePath program. *See infra* § III.F.

### E.    Documents Regarding J&J's Negotiations To Use SaveOnSP For Its Own Health Plan (RFP No. 34)

***SaveOnSP's Position: JJHCS Cannot Withhold Documents Concerning J&J's Negotiations to Use SaveOnSP's Services***

SaveOnSP's RFP No. 34 seeks documents and communications regarding JJHCS's or Janssen's negotiations to potentially hire SaveOnSP for their own health plans. JJHCS refuses to produce any such documents, asserting they are irrelevant because "J&J never signed a contract with SaveOnSP" and "JJHCS itself was not involved in any such negotiations." Ex. 7 (Jan. 27, 2023 Letter from A. LoMonaco to M. Nelson) at 12.

As it has explained to JJHCS, SaveOnSP understands that J&J or JJHCS conducted significant negotiations with ESI to use SaveOnSP's services for the health plan that JJHCS provides to its own employees. SaveOnSP understands that those negotiations ultimately ceased at the insistence of another division within J&J or JJHCS. JJHCS now concedes that J&J considered contracting with SaveOnSP. Documents and communications reflecting J&J's contemporaneous assessment of how SaveOnSP's services could benefit patients go to the credibility of JJHCS's current assertions that SaveOnSP harms patients—even if the parties never signed a contract. JJHCS could not credibly claim that SaveOnSP's services harm patients while holding back documents that show that its affiliates believed that SaveOnSP's services could benefit its employees.

The Court should compel JJHCS to produce documents and communications responsive to SaveOnSP's RFP No. 34.

***JJHCS's Position***

24

Hon. Cathy L. Waldor
February 24, 2023
Page 25

J&J's brief consideration of whether to participate in the SaveOnSP Program is not relevant to any claims or defenses in this action. Representatives from Express Scripts, Inc. ("ESI"), which has long served as J&J's pharmacy benefits manager for its employee healthcare plans, presented the SaveOnSP Program to individuals on J&J's employee benefits team in mid-2017 and early 2018, as part of ESI's regularly scheduled conversations with J&J concerning the services it offers. SaveOnSP was not even present at those meetings. After reviewing the information ESI provided, J&J employee benefits staff rejected any notion of contracting with SaveOnSP. These facts are undisputed, as is the fact that JJHCS had no involvement in these negotiations.

As such, RFP No. 34 represents another attempt by SaveOnSP to fish for J&J documents from entities that have nothing to do with CarePath. These documents have no relevance to the claims that JJHCS has asserted against SaveOnSP relating to CarePath. We ask the Court therefore to deny SaveOnSP's motion to compel documents responsive to RFP No. 34 as irrelevant.

### F.    Time Period (RFP Nos. 1-7, 11-14, 28-30, 36-37, 41-42; Interrogatory Nos. 1-4)

#### *SaveOnSP's Position*

While most of SaveOnSP's RFPs seek documents beginning January 1, 2017, some go back earlier. JJHCS refuses to produce documents pre-dating January 1, 2016, asserting they are irrelevant.

*RFP Nos. 12-13.* SaveOnSP requested documents and communications concerning the drafting and revision of CarePath's terms and conditions back to January 1, 2009 (when SaveOnSP understands the earliest Janssen drug was launched) or the earliest date on which JJHCS began drafting those terms and conditions. JJHCS refused to produce such documents prior to January 1, 2016. The documents are relevant: JJHCS alleges that SaveOnSP induced patients to breach the terms and conditions, so SaveOnSP is entitled to discovery into the meaning of those terms and conditions, including their drafting history—however far back it might go. JJHCS does not explain how producing these documents would be unduly burdensome. The Court should compel JJHCS to produce them. JJHCS's proposed "compromise" is not sufficient, both because JJHCS will not commit to producing documents going back to the original drafting of the relevant contracts, and because the documents that JJHCS seeks in exchange (drafts of agreements of SaveOnSP's contracts with plans) are not relevant.

*RFP Nos. 14, 41, and 42.* SaveOnSP requested information on JJHCS's or any Hub Entity's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits ("EHBs") or Non-Essential Health Benefits ("NEHBs") under the Affordable Care Act ("ACA"), as well as their understanding of Copay Accumulator Services and Copay Maximizers Services, back to January 1, 2015. JJHCS refused to produce these documents between January 1, 2015 and January 1, 2017. The documents are relevant: The relevant provisions of the ACA and related regulations concerning EHB requirements and out of pocket maximums, which allowed health benefit plans to adopt the benefits proposed by Copay Accumulator Services and Copay Maximizer Services, came into effect in 2015. *See, e.g.*, 45 C.F.R. §§ 156.122, 156.115. It is thus

Hon. Cathy L. Waldor
February 24, 2023
Page 26

highly likely that JJHCS had internal discussions regarding these topics between January 1, 2015 and January 1, 2017. JJHCS does not assert that producing these documents would be unduly burdensome. While JJHCS asserts that doing so would be "disproportionate," this ignores the reality that JJHCS has been in business longer than SaveOnSP and has documents going back to 2015. The Court should compel JJHCS to produce these documents.

*RFP Nos. 1-7, 11, 28-30, and 36-37.* SaveOnSP requested organizational charts for JJHCS, Janssen, and the JJHCS Hub Entities (RFP Nos. 1-7) and documents and communications relating to the development, marketing, administration, and financials of CarePath, and the development, marketing, sale, and financials of Janssen drugs (RFP Nos. 11, 28-30, 36-37) back to January 1, 2009 or the earliest dates on which JJHCS began developing CarePath or the specialty drugs at issue. Where it agrees to produce any of these documents, JJHCS refuses to do so prior to January 1, 2017, because (it declares) January 1, 2017 is the beginning of the relevant period. But the fact that SaveOnSP began operations in 2017 does not mean that all documents from before 2017 are automatically irrelevant. The documents sought here are relevant: They go to JJHCS's assertion that a threat to CarePath's viability constitutes a public harm and to JJHCS's alleged damages. JJHCS does not explain why producing these documents would be unduly burdensome. The Court should compel JJHCS to produce them.

*Interrogatory Nos. 1-4.* SaveOnSP requested the identities of individuals involved in aspects of CarePath's development and administration—including communicating with patients and health plans; marketing and communicating with the public about CarePath; drafting and revising CarePath's terms and conditions; or analyzing price, revenue, cost, or other financial data for Janssen drugs, as well as financial data for CarePath—back to January 1, 2009. JJHCS refused to produce this information prior to January 1, 2017. The information is relevant: SaveOnSP needs to know the individuals involved in the requested subject matters to fully explore JJHCS's allegations that CarePath is a public good and the extent of JJHCS's alleged damages. JJHCS objects on burden grounds, but it has not quantified the burden associated with responding to these Interrogatories. The Court should compel JJHCS to respond to them.

### JJHCS's Position

SaveOnSP requests several categories of documents from before January 1, 2017, including requests that reach as far back as ***eight years before the inception of the SaveOnSP program.*** *See* RFPs Nos. 1-7, 11-13, 28-30, 36-37 (seeking documents from January 1, 2009). JJHCS objects to this extended timeframe both because these documents are irrelevant to the claims and defenses at issue ***and*** because this extended timeframe serves no legitimate purpose and is aimed at imposing unjustified burden and expense on JJHCS. *See, e.g.* Ltr. from A. LoMonaco to M. Nelson dated Feb. 14, 2023, at 4. To restate the key facts: SaveOnSP did not even exist until 2017. Nor did CarePath exist in its current form until 2016. The allegations in the Complaint all concern events in or after 2017. This Court should block SaveOnSP's plan to increase the time frame of relevant discovery from 5 years to more than 13 years. The burden associated with this dramatically expanded timeframe is self-evident and does not require further particularization. Nor can it be justified on relevance grounds, as it only serves to develop evidence for a proposition that is

Hon. Cathy L. Waldor
February 24, 2023
Page 27

irrelevant to the elements of the claims as articulated by Judge Vazquez. However, where Save-OnSP has put forth a colorable rationale for requesting documents that pre-date the existence of the SaveOnSP program, JJHCS has endeavored in good faith to identify common ground by offering to produce documents dating back to 2016, which marks the beginning of the CarePath program in its current form.

*RFP Nos. 12 and 13.* These requests seek extrinsic evidence relating to the meaning of CarePath's terms and conditions. SaveOnSP claims that because JJHCS alleged that it induced patients to breach the terms and conditions of the CarePath agreement, SaveOnSP is "entitled to discovery into the meaning of those terms and conditions, including their drafting history." But any such discovery, even if permissible, must be proportionate.

By way of compromise, JJHCS has proposed that, if SaveOnSP will produce internal communications responsive to a corresponding demand relating to SaveOnSP's own agreements—JJHCS's RFP No. 17 ("Any agreements, including drafts, between Express Scripts on the one hand, and health insurance plan sponsors, on the other regarding the SaveOnSP Program, and any communications relating thereto") —then JJHCS will agree to produce internal communications relating to the drafting of CarePath's terms and conditions, or the meaning of the "other offer" term that is central to this lawsuit, dating back to January 1, 2016. This proposed compromise should provide SaveOnSP with a sufficient vantage to assess the drafting history and the meaning of key terms and conditions pre- and post- the existence of SaveOnSP. SaveOnSP fails to explain why this compromise offer is insufficient nor why it requires extrinsic evidence extending more than eight years before SaveOnSP came into existence to assess the meaning of the terms and conditions in place when it began to engage in the conduct at issue in this litigation.

*RFP Nos. 14, 41, and 42.* SaveOnSP seeks documents dating back to January 1, 2015 relating to JJHCS's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits (RFP No. 14), "Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's return on investment for copay assistance dollars," (RFP No. 41), and JJHCS's understanding of the terms "copay accumulator" and "copay maximizer," (RFP No. 42). Again, what matters here is SaveOnSP's understanding of the requirements of the Affordable Care Act and its taking of steps designed to circumvent its requirements. JJHCS's impressions are beside the point. Regardless, JJHCS is prepared to produce these documents for the relevant time period in this lawsuit from January 1, 2017 to July 1, 2022—but it should not be required to go back further given the demands of proportionality.

*RFP Nos. 1-7, 11, 28-30, and 36-37.* All of these requests suffer from at least one common defect: they seek documents from 2009 rather than from the time period that is relevant to this lawsuit. In response to these requests, JJHCS has agreed to produce some documents from the relevant time period of 2016 to the present. Yet SaveOnSP will not budge and continues to insist on the production of documents for seven years prior to this time period, and for no valid reason.

For example, Requests 1-7 seek organizational charts for a host of entities, many of which are not involved in the management or administration of CarePath. JJHCS agreed to produce non-

Hon. Cathy L. Waldor
February 24, 2023
Page 28

privileged documents dating back to January 1, 2016, "sufficient to show the organizational structure of the JJHCS groups responsible for the administration of CarePath." However, organizational charts for the past seven years are not enough for SaveOnSP—they want such documents for another seven years, which is for the seven years before the launch of the CarePath copay assistance program and for the eight years before SaveOnSP existed. SaveOnSP does not need these documents from so long ago to lay a defense on the issue of public harm. Those people only involved in CarePath before SaveOnSP existed will have nothing to say at all about SaveOnSP, or JJHCS's response to its efforts to sabotage CarePath.

For RFP Nos. 11, 28-30, 36, and 37, which relate to the development, marketing, administration, and financials of CarePath and Janssen drugs, SaveOnSP again claims that it is entitled to documents dating back to January 1, 2009, in order to evaluate JJHCS's allegation that a threat to CarePath's viability constitutes a public harm. This is again an extraordinarily wide range of documents and topics. Every document relating to the development, marketing or administrating of CarePath obviously has no bearing on the claims at issue in this case—let alone every document relating to Janssen drugs generally. While these documents are generally irrelevant to the claims and defenses in this case, by way of compromise, JJHCS agreed to produce the following categories of documents dating back to January 1, 2016:

- In response to RFP No. 28, JJHCS agreed to produce Janssen Transparency Reports and also agreed to consider producing documents responsive to items (i) through (m), which relate to CarePath enrollment data.

- In response to RFP No. 29, JJHCS agreed to produce documents sufficient to show (1) how JJHCS determines the amounts of copay assistance funds that JJHCS offers to Patients enrolled in CarePath, (2) JJHCS's budget for copay assistance through CarePath, and (3) JJHCS's actual and projected annual costs for CarePath.

SaveOnSP rejected this proposal, but fails to explain why it needs documents that date back seven years before the launch of CarePath and fourteen years before the present date in order to analyze SaveOnSP's impact on the CarePath program.

*Interrogatory Nos. 1-4.* These interrogatories seek the identities of individuals involved in aspects of CarePath's development and administration. Here too, SaveOnSP seeks information dating back to January 1, 2009. For the reasons noted earlier, this date range is vastly overbroad and has no meaningful relation to the facts or events at issue in this litigation. SaveOnSP nevertheless persists in making this unduly burdensome request without providing any legitimate rationale for its need to review documents extending back seven years before the CarePath program began in its current form, and eight years before SaveOnSP began to engage in the conduct at issue in this litigation.

\* \* \*

The parties appreciate the Court's attention to this matter.

28

Hon. Cathy L. Waldor
February 24, 2023
Page 29

Respectfully submitted,

/s/ E. Evans Wohlforth, Jr.
E. Evans Wohlforth, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500
ewohlforth@gibbonslaw.com

David Elsberg (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
Attorneys for Defendant Save On SP, LLC


/s/ Jeffrey J. Greenbaum
Jeffrey J. Greenbaum
Katherine M. Lieb
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000


*Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*