UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHNSON AND JOHNSON HEALTH CARE
SYTEMS INC.,

                  Plaintiff,

       v.

SAVE ON SP LLC,

                  Defendant.

Case No. 22-cv-02632 (JMV) (CLW)

## DEFENDANT'S ANSWER TO THE COMPLAINT

Defendant Save On SP, LLC ("SaveOnSP"),[1] through its undersigned attorneys, answers the May 4, 2022 complaint ("Complaint") filed by plaintiff Johnson & Johnson Health Care Systems Inc. ("JJHCS"). SaveOnSP denies each allegation in the Complaint, except for those expressly and specifically admitted below.[2]

Each response below corresponds to the identical paragraph number in the Complaint.

## INTRODUCTION

1.     Denied.

2.     Admitted that JJHCS is a subsidiary of Johnson & Johnson. Admitted that commercial health plans may require plan members to pay copays for specialty drugs. SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations regarding uncited studies. Otherwise denied.

---

[1] Unless defined herein, defined terms have the meanings ascribed to them in JJHCS's Complaint.

[2] SaveOnSP includes here the headings used by JJHCS in its Complaint. Because those headings are not allegations, SaveOnSP does not respond to them individually. To the extent a response is required, SaveOnSP denies any allegation in a heading.

3.        Denied.

4.        Admitted that SaveOnSP's clients pay it fees based on savings. Otherwise denied.

5.        SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations regarding the level of its copay assistance spending. Otherwise denied.

6.        Admitted that JJHCS does not directly control the costs that pharmacies ask patients to pay for medications. Admitted that commercial health plans determine the copay amounts for specialty drugs covered by those plans. SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations about the number of patients to which it has provided copay assistance. Otherwise denied.

7.        Admitted that JJHCS's CarePath program provides copay assistance to plan members using Janssen drugs. Admitted that some Janssen drugs are complex biologic treatments. SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations about the effect of JJHCS's assistance on patient lives. Otherwise denied.

## BACKGROUND

### SaveOnSP's Operations and Structure

8.        Admitted that SaveOnSP knows that JJHCS funds its CarePath program. Admitted that one of SaveOnSP's founders and its former CEO are former Johnson & Johnson employees. Otherwise denied.

9.        Admitted that federal law allows commercial health plans to designate specialty drugs as essential or non-essential health benefits. Admitted that SaveOnSP advises some clients to designate some Janssen drugs as non-essential health benefits. Admitted that some of Save-OnSP's clients designate some Janssen drugs as non-essential health benefits. Admitted that the quoted language appears in the cited video. Otherwise denied.

10.     Admitted that, under federal law, if a health plan designates a drug as a non-essential health benefit, then it is not subject to out-of-pocket maximum limits. SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations about the purpose of provisions of the ACA. Admitted that the quoted language and presentation slide appear in the cited video. Otherwise denied.

11.     Admitted that SaveOnSP advises health plans to designate some drugs as non-essential health benefits. In providing that assistance, SaveOnSP considers (among other things) the amount of copay assistance offered for those drugs. Admitted that SaveOnSP speaks with members of its clients' health plans about the benefits available to them under those plans. Admitted that the quoted language appears in the cited video. Admitted that the cited slide appears at the cited webpage. Otherwise denied.

12.     Admitted that SaveOnSP speaks with members of its clients' health plans about the benefits available to them under those plans. Admitted that the cited slide appears at the cited webpage. Otherwise denied.

13.     Admitted that the cited slide appears at the cited webpage. Otherwise denied.

14.     SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations about patient choices. Admitted that some patients who have multiple options may choose health plans based on which plans purport to cover their medications. Admitted that the quoted language appears in the cited video. Otherwise denied.

15.     Admitted that SaveOnSP assists some patients in enrolling in CarePath. Admitted that JJHCS makes funds available for copay assistance through CarePath. Admitted that patients may receive paperwork stating the amount of the copay set by the health plan. Admitted that the

quoted language appears in the cited video. Admitted that the cited document appears at the cited webpage. Otherwise denied.

16.     Admitted that SaveOnSP assists some patients in enrolling in CarePath. Admitted that SaveOnSP speaks with members of its clients' health plans about the benefits available to them under those plans. Otherwise denied.

17.     Admitted that the benefits adopted by SaveOnSP advised-plans do not change the amount the pharmacist receives. Admitted that benefits do decrease the amount the health plan will pay for the drug and increases copays the patient is responsible for. Admitted that the patient may pay some or all of that copay amount with patient assistance. Admitted that SaveOnSP charges its clients fees related to savings. Otherwise denied.

18.     Denied.

19.     Admitted that the quoted language appears in the cited video. Otherwise denied.

20.     Admitted that SaveOnSP monitors drug manufacturers' terms and conditions. Admitted that SaveOnSP does advise some plans on benefits and assists some plan members in enrolling in CarePath. Otherwise denied.

21.     Admitted that some plans advised by SaveOnSP do not count funds spent on certain medications towards the patient's ACA maximum or deductible. Otherwise denied.

22.     SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations regarding speculative elimination of copay assistance. Admitted that the cited articles appear at the cited webpages. Otherwise denied.

23.     Denied.

24.     Admitted that SaveOnSP is paid fees by clients it advises based on savings. Admitted that the cited materials appear at the cited webpages. Otherwise denied.

25.     Admitted that some health plans (either directly or indirectly, for example through a PBM) may negotiate some price reductions on some specialty drugs with some drug manufacturers. SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations about the amount of its rebates. Admitted that patient assistance funds are distinct from rebates. Admitted that the cited materials appear at the cited webpages. Admitted that the quoted language appears in the cited video. Otherwise denied.

26.     Denied.

## PARTIES

27.     Admitted that JJHCS is a New Jersey corporation, has its principal place of business at 425 Hoes Lane, Piscataway, New Jersey 08854, is a subsidiary of Johnson & Johnson, and administers CarePath. Otherwise denied.

28.     Admitted that SaveOnSP's principal place of business is in New York. Admitted that SaveOnSP has a business relationship with Express Scripts and Accredo. Admitted that Express Scripts may offer SaveOnSP's services to health plans. Admitted that SaveOnSP has operations in Buffalo, New York. Admitted that some of SaveOnSP's clients sign a joinder agreement that is governed by New York law. Admitted that SaveOnSP accepts payments for its services in New York. Admitted that none of the members of SaveOnSP are citizens of New Jersey. Otherwise denied.

## JURISDICTION AND VENUE

29.     Admitted that this Court has personal jurisdiction over SaveOnSP. Admitted that SaveOnSP does business in New Jersey. Otherwise denied.

30.     Admitted that SaveOnSP does business in New Jersey. Admitted that venue is proper in this Court. Otherwise denied.

31.     Denied to the extent that JJHCS alleges that it has Article III standing. Otherwise admitted.

**JJHCS's Drugs and Treatments**

32.     Admitted that JJHCS's CarePath program offers copay assistance for drugs including those listed. Admitted that some treatments may be used to treat patients' medical conditions. Admitted that Janssen offers drugs that may be used for some of those treatments. Otherwise denied.

33.     SaveOnSP lacks information or knowledge sufficient to form a belief as to JJHCS's allegations regarding the percentage of interchangeable biosimilars for Janssen drugs. Otherwise admitted.

34.     Admitted that biologic treatments may be necessary for the health of some patients. Admitted that JJHCS offers specialty drugs that can be used for those treatments. Admitted as to JJHCS's general descriptions of STELARA, TREMPFYA, and DARZALEX. Denied as to JJHCS's allegations that Janssen's biologic therapies are the only treatment option for patients. Otherwise, SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

35.     SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

**The CarePath Program**

36.     Admitted that administrators of commercial health plans set cost-sharing for medications covered by those plans. Otherwise, SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

37.     Admitted that commercial health plans may contract with PBMs. Admitted that PBMs generally administer prescription drug benefits on behalf of commercial health plans. Admitted that Express Scripts is a PBM. Otherwise, SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

38.     Admitted that Express Scripts is a subsidiary of Cigna. Otherwise, SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

39.     Admitted that commercial health plans may require plan members to pay deductibles, copays, and/or co-insurance toward the cost of medical services, devices, or drugs. Otherwise, SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

40.     Admitted that the cited material appears at the cited webpages. Otherwise, SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

41.     Admitted that the cited materials appear at the cited webpages. Otherwise, SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

42.     Admitted that the cited material appears at the cited webpage. Otherwise, SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

43.     Admitted that the ACA places annual limits on out-of-pocket costs for essential health benefits. Admitted that the annual out-of-pocket maximum for the 2022 plan year was $8,700 for an individual and $17,400 for a family. Admitted that the cited material appears at the cited webpage. Otherwise, SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

44.     Admitted that the cited material appears at the cited webpage. Admitted that some drug manufacturers offer copay assistance programs. Admitted that some of these copay assistance

programs offer copay assistance in the form of coupons or cards. Otherwise, SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

45.     Admitted that the cited materials appear at the cited webpages. Otherwise, Save-OnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

46.     Admitted that the cited materials appear at the cited webpages. Otherwise, Save-OnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

47.     Admitted that JJHCS advertises that it offers up to $20,000 in copay assistance per year for some Janssen drugs. SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations regarding the number of Janssen drugs that CarePath covers. Otherwise denied.

48.     Admitted that JJHCS asks individuals who enroll in CarePath to agree to terms and conditions required by JJHCS. Admitted that the quoted language appears in the cited document. Otherwise, SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

49.     Admitted that patients may enroll in CarePath online using the MyJanssenCare-Path.com website, by phone, or via mail or fax by filling out and sending an enrollment form. SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations regarding receipt of a card patients can use at the point of sale.

**SaveOnSP's Advice to Client Health Plans**

50.     Admitted that SaveOnSP's clients adopt benefits that allow them to take advantage of copay assistance funds that drug manufacturers choose to make available. Admitted that the quoted materials appear at the cited webpages. Otherwise denied.

51.     Admitted that SaveOnSP's clients pay it fees related to savings. Admitted that SaveOnSP has a business relationship with Express Scripts and Accredo. Admitted that SaveOnSP

speaks with members of its clients' health plans about the benefits available to them under those plans. Otherwise denied.

52.     Admitted that SaveOnSP and Express Scripts executed a Master Program Agreement, effective November 13, 2017. Admitted that SaveOnSP's website provides information about its services. Admitted that the cited material appears at the cited webpages. Otherwise denied.

53.     Admitted that the quoted language appears in the cited video. Otherwise denied.

54.     Admitted that, under federal law, if a health plan designates a drug as a non-essential health benefit, then it is not subject to out-of-pocket maximum limits. Admitted that the quoted language appears in the cited video. Admitted that the quoted words appear in the cited regulation. Otherwise denied.

55.     Admitted that some patients have conditions that require specialty drugs. Admitted that SaveOnSP's clients designate some Janssen drugs as non-essential health benefits. Admitted that SaveOnSP's clients adopt benefits that allow them to take advantage of copay assistance benefits that drug manufacturers choose to make available. Admitted that the quoted language appears in the cited video. Otherwise denied.

56.     Admitted that the quoted language appears in the cited video. Otherwise denied.

57.     Admitted that the quoted language appears in the cited regulations. Admitted that federal law allows commercial health plans to designate specialty drugs as essential or non-essential health benefits. Otherwise denied.

58.     Admitted that federal law allows commercial health plans to designate specialty drugs as essential or non-essential health benefits. Admitted that the cited slide appears in the cited video. Otherwise denied.

59. Admitted that the quoted language appears in the cited regulations. Otherwise denied.

60. Admitted that SaveOnSP speaks with members of its clients' health plans about the benefits available to them under those plans. Admitted that the quoted language appears in the cited video. Otherwise denied.

61. Admitted that SaveOnSP sends letters to members of its clients' health plans as directed by those plans. Admitted that the quoted language appears in the cited video. Otherwise denied.

62. Admitted that SaveOnSP's clients direct Accredo to ask the client's plan members to speak with SaveOnSP. Admitted that this process is sometimes referred to as a "warm transfer." Admitted that the quoted language appears in the cited video. Otherwise denied.

63. Admitted that Accredo sometimes transfers plan members to SaveOnSP. Otherwise denied.

64. Admitted that SaveOnSP sometimes helps plan members enroll in copay assistance programs. Admitted that the quoted language appears in the cited video. Otherwise denied.

65. Admitted that plan members may enter into copay assistance agreements with drug manufacturers. Admitted that SaveOnSP's clients offer benefits under which plan members enrolled in copay assistance programs pay nothing for their specialty drugs. Admitted that SaveOnSP's clients adopt plan terms that result in them saving money versus prior plan terms. Admitted that the quoted language appears in the cited video. Otherwise denied.

66. SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations regarding OCC-8 codes. Otherwise denied.

67.     Admitted that SaveOnSP's clients offer benefits under which plan members en-
rolled in copay assistance programs and who consent to SaveOnSP monitoring their account pay
$0 towards their out-of-pocket responsibility for their specialty drugs on the SaveOnSP supported
drug list. Admitted that the quoted language appears in the cited webpage. Otherwise denied.

68.     Admitted that SaveOnSP's clients pay it fees related to savings. Admitted that the
quoted language appears in the cited video. Otherwise denied.

69.     Admitted that many of SaveOnSP's clients offer benefits under which plan mem-
bers enrolled in copay assistance programs pay nothing for their specialty drugs. Admitted that the
quoted language appears in the cited video. Otherwise denied.

70.     Admitted that the quoted language appears in the cited video. Otherwise denied.

71.     Admitted that federal law allows plans to designate a state benchmark plan. Admit-
ted that SaveOnSP advises many of its clients about state benchmark plans. Admitted that the
quoted language appears in the cited video. Otherwise denied.

72.     Admitted that the quoted language appears in the cited video. Otherwise denied.

73.     Admitted that SaveOnSP knows that some copay assistance programs state that
plan members may pay some amount of money towards the costs of their drugs. Admitted that
SaveOnSP's clients pay these amounts via SaveOnSP. Admitted that this process is referred to as
"tertiary billing". Admitted that the quoted language appears in the cited video. Otherwise denied.

74.     Admitted that the quoted language appears in the cited material. Otherwise denied.

75.     Admitted that SaveOnSP does not tell plan members that they are breaching their
contracts with JJCHS, because they are not. Admitted that SaveOnSP does not tell plan members
about the fees paid by its clients. Otherwise denied.

76.     Admitted that drug manufacturers may provide copay assistance to members of plans not advised by SaveOnSP. Admitted that some drug manufacturers provided copay assistance before SaveOnSP began operations. Admitted that the cited material appears at the cited webpage. Otherwise denied.

77.     Admitted that many of SaveOnSP's clients adopt benefits under which plan members who do not qualify for those benefits may be required to pay the full amount of their copays for specialty drugs. Admitted that SaveOnSP speaks with members of its clients' health plans about the benefits available to them under those plans. Otherwise denied.

78.     Admitted that, consistent with federal law, many of SaveOnSP's clients adopt benefits under which payments towards copay assistance benefits do not count towards deductibles or out-of-pocket maximums. Admitted that the quoted language appears in the cited document. Otherwise denied.

79.     Admitted that the quoted language appears in the cited materials. Otherwise denied.

80.     Admitted that the quoted language appears in the cited materials. SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations regarding its discounts and drug pricing, and regarding health plans' negotiations of pricing discounts with manufacturers. Otherwise denied.

81.     Denied.

82.     Admitted that the quoted language appears at the cited webpage. Otherwise denied.

83.     Admitted that the quoted language appears at the cited webpage. Otherwise denied.

84.     Admitted that the quoted language appear sat the cited webpage. Otherwise denied.

85.     Admitted that the quoted language appears in the cited materials. Otherwise denied.

86.     Admitted that the cited materials state that SaveOnSP's clients adopt benefits that reduce costs to patients. Admitted that plan members can sign up for copay assistance without SaveOnSP's involvement. Otherwise denied.

87.     Admitted that many of SaveOnSP's clients adopt benefits under which payments from copay assistance funds do not count towards deductibles or out-of-pocket maximums, consistent with federal law. Admitted that the quoted language appears on the cited webpage. Otherwise denied.

88.     Admitted that the quoted language appears on the cited webpage. Otherwise denied.

**Funds Offered by the CarePath Program**

89.     Admitted that the quoted language appears in the cited material. Otherwise, SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

90.     Admitted that the quoted language appears in the cited materials. Otherwise denied.

91.     Admitted that SaveOnSP creates lists of drugs that it advises clients to designate as non-essential health benefits. Admitted that the cited list is one of those lists. Admitted that the cited drugs appear on the cited list. Otherwise denied.

92.     SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations regarding its internal data. Otherwise denied.

93.     SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

94.     SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

95.     SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

96.     SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

97.     SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

98.     Admitted that some patients do use the same specialty drug for an entire year. Otherwise denied.

99.     SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

100.    Denied.

101.    Admitted that SaveOnSP advises its clients on copays to set for Janssen drugs. Admitted that SaveOnSP's clients have adjusted the copays they set for Janssen drugs over time. SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations regarding its ability to reduce the amount of assistance provided to patients enrolled in CarePath. Otherwise denied.

102.    Admitted.

103.    Admitted that the quoted language appears at the cited website. Otherwise denied.

104.    Admitted that SaveOnSP has not removed Janssen drugs from the lists of drugs that it advises clients to designate as non-essential health benefits. Otherwise denied.

105.    Denied.

### **FIRST CAUSE OF ACTION**

### **(Tortious Interference with Contract)**

106.    SaveOnSP incorporates its responses to Paragraphs 1-105.

107.    SaveOnSP lacks knowledge or information sufficient to form a belief as to JJHCS's allegations.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

## **SECOND CAUSE OF ACTION**

### **(Deceptive Trade Practices in Violation of N.Y. Gen. Bus. Law § 349)**

112.    SaveOnSP incorporates its responses to Paragraphs 1-111.

113.    Admitted that SaveOnSP does not tell plan members that they are breaching their contracts with JJCHS, because they are not. Admitted that SaveOnSP does not tell plan members about the fees paid by its clients. Otherwise denied.

114.    Denied.

115.    Denied.

116.    Denied.

117.    Denied.

## **JURY DEMAND**

118.    Admitted that JJHCS requests a jury trial. Otherwise denied.

## DEFENDANT'S AFFIRMATIVE DEFENSES

SaveOnSP asserts the following Affirmative Defenses. SaveOnSP does not admit that it bears the burden of proof on any issue. SaveOnSP reserves the right to assert any additional defenses revealed through discovery or further investigation.

### FIRST AFFIRMATIVE DEFENSE
### (ERISA § 514(a))

1.      SaveOnSP incorporates the prior paragraphs.

2.      JJHCS's claims involving ERISA plans are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, because they attempt to coerce plans to structure their benefits in a particular manner and to enjoin SaveOnSP from implementing ERISA plan terms.

3.      ERISA § 514(a) expressly preempts state statutory and common law claims which have a connection with or reference to an ERISA plan. Neither state laws nor state law claims may directly regulate a fundamental ERISA function.

4.      JJHCS's claims have an impermissible connection with an ERISA plan because they attempt to regulate plan terms and, if successful, would have acute economic effects that would force ERISA plans to adopt a certain scheme of substantive coverage.

5.      SaveOnSP does not control plan terms. Health plan sponsors do. Health plan sponsors create a benefit for participants who enroll in manufacturer copay assistance programs and let SaveOnSP monitor their pharmacy accounts on behalf of the plans (they pay $0 towards their out-of-pocket responsibility for specialty drugs).

6.      JJHCS seeks damages for alleged overpayments resulting from plans' benefit designs. Compl. ¶¶ 92-97, 110, 115. Such damages likely would put SaveOnSP and companies like it out of business for fear of crippling liability. Plans would then have to choose between self-

16

administering plan terms that utilize copay assistance payments or eliminating them. But self-administration is not feasible: Employers are not set up to identify employees who take specialty drugs (doing so could place the employers at legal risk), contact them, explain benefit terms, or monitor their accounts. Plan sponsors' only true option would be changing their plan terms, which is no choice at all. ERISA does not allow JJHCS to bring state law claims that would coerce ERISA plans into changing their benefits.

7.      JJHCS also seeks an injunction barring SaveOnSP from implementing the plan terms that its ERISA plan clients adopt to take advantage of the copay assistance offered by JJHCS and other drug manufacturers. *See* Compl. at 41. ERISA does not allow JJHCS to bring state law claims that interfere with the administration of ERISA plans.

<u>SECOND AFFIRMATIVE DEFENSE</u>
**(ERISA § 514(a))**

8.      SaveOnSP incorporates the prior paragraphs.

9.      ERISA preempts JJHCS's claims involving ERISA plans because the Court cannot adjudicate its claims without interpreting ERISA plan terms.

10.     To prove its alleged injuries, JJHCS would have to show that it paid more money from CarePath than it would have in the absence of SaveOnSP because the plans set higher copays and excluded them from patients' out-of-pocket maximum—core aspects of plan design. Compl. ¶¶ 2-5, 73, 110, 115.

11.     To prove its purported damages, JJHCS would have to compare the participants' copays under the current plan design to copays under JJHCS's preferred design.

12.     JJHCS's claims pursuant to New York General Business Law ("GBL") § 349 also require interpretation of ERISA plans for an additional reason: JJHCS accuses SaveOnSP of directing pharmacies to "falsely tell" participants that the plans have denied their claims. Compl.

¶ 88; *see also id.* ¶¶ 13, 21, 113. Determining if the plans cover the drugs, and the details of that coverage, requires that the Court look at the plans' benefit designs in contravention of ERISA.

### THIRD AFFIRMATIVE DEFENSE
(**No Damages**)

13.     SaveOnSP incorporates the prior paragraphs.

14.     JJHCS's claims fail in whole or in part to the extent that it has suffered no damages by reasons of any of the conduct alleged against SaveOnSP in the Complaint.

15.     CarePath offers patients up to $20,000 in assistance towards their out-of-pocket costs per calendar year. Compl. ¶ 47. But CarePath does not exist in a vacuum. The health plans cover the remaining cost of the specialty drugs, a large portion of which ultimately is paid to Johnson & Johnson.

16.     JJHCS's claims concern at least fourteen drugs manufactured by Janssen. Compl. ¶ 91. Those drugs include: Balversa, Darzalex, Darzalex Faspro, Erleada, Imbruvica, Opsumit, Remicade, Rybrevant, Simponi, Stelara, Tracleer, Tremfya, Uptravi, and Zytiga. *Id.* According to Johnson & Johnson's annual reports, in 2021 in the United States, it netted over $2 billion from Remicade; over $1.1 billion from Simponi; over $5.9 billion from Stelara; over $1.5 billion from Tremfya; $3.15 billion from Darzalex; over $800 million from Erleada; over $1.7 billion from Imbruvica; over $115 million from Zytiga; over $1.1 billion from Opsumit; and over $1 billion from Uptravi. Upon information and belief, that amount is well above the amount of funds expended by CarePath in connection with each of the drugs sold. For example, according to Johnson & Johnson's website, the list price of Stelara per fill is $25,497.12. JJHCS alleges that the average amount of CarePath funds pulled per fill for Stelara is $6,401. Compl. ¶ 95. So whenever CarePath pays $6,401 towards a fill of Stelara, the health plan pays almost $20,000 towards that fill. And because JJHCS caps its copay assistance at $20,000 per year, CarePath does not pay $6,401 for

each fill for patients who fill their drug more than three times per year. If a patient fills their prescription 6.5 times per year as recommended, *Crohn's Disease: Cost Support Options for STELARA® / STELARA®*, https://www.stelarainfo.com/crohns-disease/cost-support-and-more (last accessed Mar. 8, 2023), JJHCS will pay $20,000 for that year, but the plan will pay over $145,000. Each time a patient fills their prescription, Johnson & Johnson makes more money—from the plans—than JJHCS expends in CarePath funds.

17.      Upon information and belief, SaveOnSP's services result in an increase in the number of fills of Janssen drugs, both by encouraging additional plan members to use and keep using those drugs and by encouraging plan members who are already using those drugs to keep using them. Upon information and belief, SaveOnSP's services thus result in Johnson & Johnson making more money from additional sales of Janssen drugs than JJHCS expends in additional CarePath funds resulting from those services. JJHCS is thus in a better position due to SaveOnSP's conduct and has no damages.

## FOURTH AFFIRMATIVE DEFENSE
### (No Damages)

18.      SaveOnSP incorporates the prior paragraphs.

19.      JJHCS's claims fail in part to the extent that it has suffered no damages as to plan members already enrolled in CarePath before SaveOnSP communicated with them. Once those plan members enrolled in CarePath on their own, JJHCS would have paid the same amount of copay assistance for them under the plan design, regardless of SaveOnSP's involvement.

## FIFTH AFFIRMATIVE DEFENSE
### (Lack of Standing)

20.      SaveOnSP incorporates the prior paragraphs.

21.      JJHCS lacks Article III standing because it has not suffered an injury-in-fact or any injury fairly traceable to SaveOnSP.

22.     JJHCS asserts that it was injured by paying out more in CarePath funds than it would have under different plan terms. Compl. ¶¶ 110, 115. SaveOnSP did not cause this injury. JJHCS determines the amount that it budgets for the copay assistance it offers through CarePath. Compl. ¶ 102. Health plans set their plan benefits, consistent with federal law, that take advantage of the copay assistance that JJHCS chooses to offer.

23.     JJHCS is not injured by paying copay assistance funds that it opted to make available to cover copays legally set by health plans. Any increase in JJHCS's copay assistance payments is traceable to JJHCS's CarePath budget and benefit terms set by health plans.

## SIXTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

24.     SaveOnSP incorporates the prior paragraphs.

25.     To the extent that JJHCS suffered an injury, its claims are barred in whole or part because it failed to use reasonable means to prevent the alleged damage and failed to use reasonable means to mitigate its damages.

26.     JJHCS claims that it expended more in CarePath than it intended and would have under different plan terms. Compl. ¶¶ 110, 115.

27.     JJHCS controls the amounts that it budgets for CarePath. Compl. ¶ 102. While JJHCS choose to offer plan members up to $20,000 in assistance towards their out-of-pocket costs per calendar year, Compl. ¶ 47, it could have reduced its CarePath budget at any time.

28.     JJHCS knew of SaveOnSP's services as early as June of 2017. Yet, JJHCS took no steps until 2021 to reduce the amount of copay assistance that it pays to plan members, and then only for two Janssen drugs at issue. Compl. ¶¶ 102-03.

29.     In doing so, JJHCS failed to mitigate its alleged damages and any damages awarded to JJHCS must be reduced accordingly.

## SEVENTH AFFIRMATIVE DEFENSE
### (Laches)

30.     SaveOnSP incorporates the prior paragraphs.

31.     Laches bars JJHCS's claims for tortious interference with contract in whole or in part.

32.     JJHCS's terms and conditions have remained the same since and including 2017 for the majority of drugs at issue. Compl. ¶ 102. JJHCS changed those terms and conditions only as to Stelara and Tremfya in December 2021. *Id.*

33.     In or about June 2017, JJHCS began to negotiate with ESI the use of SaveOnSP's services. Upon information and belief, at that time, JJHCS became aware of SaveOnSP's services. Upon information and belief, JJHCS ceased those negotiations, but did not cite any violations of its terms and conditions. At no point did JJHCS indicate a belief that SaveOnSP's services caused patients to violate CarePath's terms and conditions.

34.     JJHCS waited almost five years, until May 2022, to sue SaveOnSP over its services. During those five years, JJHCS enjoyed the fruits of SaveOnSP's labor: On information and belief, more plan members started using and kept using Janssen Drugs than would have without Save-OnSP's efforts, benefitting Johnson & Johnson financially. Then, five years later, having reaped this benefit, JJHCS sued SaveOnSP for a portion of the copay assistance funds that JJHCS paid towards those plan members' copays.

35.     SaveOnSP did not know until JJHCS filed its lawsuit that JJHCS believed that SaveOnSP caused patients to violate CarePath's terms and conditions. SaveOnSP thus had no opportunity during the preceding five years to respond to JJHCS's assertions, by (for example) amending its business practices or seeking early judicial intervention that would have greatly reduced the amount of JJHCS's alleged damages.

21

36.     JJHCS's delay in bringing suit thus prejudiced SaveOnSP, as SaveOnSP's exposure is far greater that it would have been had JJHCS acted promptly after learning about SaveOnSP's services. It would be inequitable to allow JJHCS to profit from its delay.

### EIGHTH AFFIRMATIVE DEFENSE
(**Acquiescence**)

37.     SaveOnSP incorporates the prior paragraphs.

38.     All acts performed by SaveOnSP alleged by JJHCS to constitute tortious interference with contract were performed with JJHCS's knowledge and/or acquiescence.

### NINTH AFFIRMATIVE DEFENSE
(**No Equitable Relief**)

39.     SaveOnSP incorporates the prior paragraphs.

40.     JJHCS is not entitled to equitable relief, including its requested injunction.

41.     JJHCS cannot show that it has suffered any irreparable harm from SaveOnSP's actions. JJHCS claims that it will be irreparably harmed because SaveOnSP makes CarePath, a financial support program provided to patients, too expensive. Compl. ¶ 1. In fact, JJHCS is not injured by SaveOnSP's conduct; the amounts that it pays in copay assistance funds are determined by its own CarePath budgets and plan benefit terms set by health benefit plans (not by SaveOnSP). Even if SaveOnSP caused JJHCS to pay unwarranted additional amounts in copay assistance funds, that harm would not be irreparable: JJHCS could change its CarePath budget, and thus reduce the amounts it spends in copay assistance, whenever it wants.

42.     The alleged injury or damage suffered by JJHCS, if any, would be adequately compensated by damages. Accordingly, JJHCS has a complete and adequate remedy at law and is not entitled to seek equitable relief.

43.     The balance of the equites favors SaveOnSP. Enjoining SaveOnSP from operating would injure not only SaveOnSP, but also the health plans that are SaveOnSP's clients and the

members of those plans. Consistent with their fiduciary duty to preserve and maximize plan assets, those plans lawfully adopted benefits that allow them to take full advantage of copay assistance funds that JJHCS voluntarily makes available. The injunction would compel or coerce those plans into adopting plan benefit terms that would take less advantage of the copay assistance funds that JJHCS seeks to offer, increasing health insurance costs for them and for all of their plan members. Plans might also be forced to make the hard choice of not including these expensive specialty drugs on their formulary. At the same time, the requested injunction would inequitably profit JJHCS. Upon information and belief, JJHCS established CarePath to market the sale of Janssen drugs to patients, not as an altruistic measure to help patients afford those drugs. The injunction would make it easier for Johnson & Johnson to raise the prices of Janssen drugs, at the expense of commercial health plans and their plan members.

### TENTH AFFIRMATIVE DEFENSE
**(Lack of Malice)**

44.    SaveOnSP incorporates the prior paragraphs.

45.    SaveOnSP acted in good faith and without any intent to harm JJHCS. None of SaveOnSP's alleged acts or omissions were willful, wanton, malicious or in bad faith.

46.    SaveOnSP did not intend to induce patients to breach CarePath's terms and conditions because SaveOnSP did not believe that its services could cause such a breach.

47.    SaveOnSP sought to assist health plans in satisfying their fiduciary duties to act in the best interests of plan participants and beneficiaries. Johnson & Johnson (along with other drug manufacturers) has steadily raised the costs of its specialty drugs over the cost of inflation. *J&J Raises US Prices On Around Two Dozen Drugs*, CNBC (Jan. 11, 2019, 6:19 a.m.), https://www.cnbc.com/2019/01/11/jj-raises-us-prices-on-around-two-dozen-drugs.html (indicating Johnson & Johnson increased prices by between 6 and 7 percent, including Stelara and Sytiga);

Gregg Girvan, *The Impact of Johnson & Johnson's Price Increases for Stelara on Pharmaceutical Innovation*, FREOPP (Oct. 21, 2022), https://freopp.org/the-impact-of-johnson-johnsons-price-increases-for-stelara-on-pharmaceutical-innovation-dfdff6145fba (study demonstrating that nearly 58% of Stelara's revenue growth came from price increases alone). Health plans and patients predominantly shoulder those costs. Rebecca Robbins, *How a Drug Company Made $114 Billion by Gaming the U.S. Patent System*, N.Y. Times (Jan. 28, 2023), https://www.nytimes.com/2023/01/28/business/humira-abbvie-monopoly.html. Health plans sought ways to reduce their costs, so that they could maximize the funds that they have available to provide healthcare benefits for all plan members, keeping down the costs of those benefits for all participants. In good faith, SaveOnSP advised its clients on ways of setting plan benefit terms that helped preserve their assets by reducing the amounts that the plans spent on specialty drugs.

### ELEVENTH AFFIRMATIVE DEFENSE
**(Choice of Law)**

48.     SaveOnSP incorporates the prior paragraphs.

49.     JJHCS's claim under New York's GBL § 349 is barred to the extent that New York law does not apply to or govern some or all of the conduct at issue in that claim.

### TWELFTH AFFIRMATIVE DEFENSE
**(Unclean Hands)**

50.     SaveOnSP incorporates the prior paragraphs.

51.     SaveOnSP alleges that JJHCS is barred by its unclean hands and failure to do equity in the factual circumstances upon which the Complaint is based, and JJHCS is therefore estopped from asserting any cause of action against SaveOnSP.

### THIRTEENTH AFFIRMATIVE DEFENSE
**(Necessary Joinder)**

52.     SaveOnSP incorporates the prior paragraphs.

53.     JJHCS has failed to join all parties necessary for a just adjudication of this action.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Economic Loss Doctrine)

54.     SaveOnSP incorporates the prior paragraphs.

55.     The economic loss rule bars JJHCS from asserting its tortious interference with contract claim because JJHCS's claims are rooted in the patients' claims and rights under their contracts with JJHCS.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

56.     SaveOnSP incorporates the prior paragraphs.

57.     JJHCS fails to state a claim under GBL § 349 because JJHCS did not plausibly allege, among other things, that (a) SaveOnSP deceived patients who were already enrolled in CarePath to enroll in a program in which they were already enrolled; (b) SaveOnSP's conduct caused JJHCS's purported injuries; (c) SaveOnSP deceived or materially misled patients; or (d) SaveOnSP's conduct harmed the public.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

58.     SaveOnSP incorporates the prior paragraphs.

59.     JJHCS fails to state a claim for tortious interference because, among other things (a) SaveOnSP could not have induced plan participants already enrolled in CarePath to enroll in CarePath; and (b) JJHCS fails to sufficiently allege that SaveOnSP induced plan participants to breach their contracts with JJHCS.

Dated: March 8, 2023                              Respectfully submitted,
      New York, NY                              GIBBONS P.C.

                                                       By: /s/ *E. Evans Wohlforth, Jr.*
                                                       E. Evans Wohlforth, Jr.
                                                       GIBBONS P.C.

One Gateway Center
Newark, NJ 07102-5310
973-596-4500
ewohlforth@gibbonslaw.com

SELENDY GAY ELSBERG, PLLC

David Elsberg (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth Snow (admitted *pro hac vice*)
Dominic Budetti (admitted *pro hac vice*)
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
delsberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com
dbudetti@selendygay.com
*Attorneys for Defendant Save On SP, LLC*

26