**FILED UNDER SEAL - CONTAINS INFORMATION MARKED AS CONFIDENTIAL UNDER THE DISCOVERY CONFIDENTIALITY ORDER.**

June 2, 2023

<u>VIA ECF</u>

Hon. Cathy Waldor, U.S.M.J.
U.S. District Court for the District of New Jersey
50 Walnut Street, Room 4040
Newark, NJ 07102

        Re:    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
              <u>No. 2:22-cv-02632 (ES) (CLW)</u>

Dear Judge Waldor:

      The parties have met and conferred in good faith to resolve their dispute concerning SaveOnSP's "ATTORNEY'S EYES ONLY" designation and JJHCS's anticipated use of a Patient List set forth below, but were unable to do so. We therefore submit this letter in accordance with Local Rule 37.1 and the Court's Civil Case Management Order. JJHCS respectfully requests that the Court resolve this dispute at the upcoming discovery status conference on June 6. SaveOnSP respectfully submits that the Court should deny JJHCS's request at that conference but should not consider granting it until the health plans affected by JJHCS's request have an opportunity to be heard.

### *JJHCS's Position*

      As directed by the Court, SaveOnSP recently produced in discovery a list of names of patients who are enrolled in both the SaveOnSP Program and JJHCS's CarePath (the "Patient List," attached as Exhibit A), and marked it "ATTORNEY'S EYES ONLY." JJHCS seeks a Court Order lowering the designation to "Confidential" for all purposes and permitting JJHCS to use the list to mitigate its damages from the SaveOnSP Program in the manner set forth below.

      For a patient to be simultaneously enrolled in both the SaveOnSP Program and JJHCS's CarePath violates CarePath's terms and conditions, and facilitates SaveOnSP's misappropriation of the funds that JJHCS makes available exclusively to help patients. JJHCS wishes to enforce the CarePath terms and conditions and exclude from CarePath the individuals on the Patient List who are also enrolled in the SaveOnSP Program. This is necessary to prevent SaveOnSP from further misappropriation of patient funds and will not harm the patients because SaveOnSP has committed to ensuring that patients will keep a zero-dollar copayment regardless. SaveOnSP's "ATTORNEY'S EYES ONLY" confidentiality designation makes little sense: JJHCS already knows the names of all patients enrolled in CarePath and is not a competitor to SaveOnSP. JJHCS seeks to mitigate the ongoing damages that it is suffering as a result of SaveOnSP's misconduct. To be clear, JJHCS is under no obligation to expend any money on CarePath. It chooses

Hon. Cathy L. Waldor
June 2, 2023
Page 2

to do so to help patients. Where those funds are being misappropriated by third parties, JJHCS has every right to curtail its expenditure. None of this requires any legal conclusions are to who is right or wrong on the merits of this case. JJHCS can choose to spend its patient assistance funds as it sees fit.

JJHCS therefore seeks the entry of an order lowering the designation of the Patient List to "Confidential," and authorizing it to share the Patient List with necessary business employees at JJHCS and its vendor TrialCard so that JJHCS can mitigate the ongoing harm it is suffering as a result of SaveOnSP's conduct by excluding the individuals listed on the Patient List from CarePath. JJHCS will implement these changes slowly and with deliberation over an appropriate period of time to ensure that continuity of patient care is prioritized. This careful approach will provide sufficient time to ensure that the insurers pay for the patients' continuing medications as per SaveOnSP's commitments without disruptions to care. Additionally, JJHCS should be permitted to share the Patient List with its necessary business personnel for purposes of analyzing the CarePath utilization data related to these patients, helping pull other related records, and assessing its potential damage claims.

By way of background, JJHCS brought this action to recover damages and enjoin SaveOnSP's tortious scheme to exploit JJHCS's CarePath patient assistance program. CarePath provides patients with funds to help them afford medication to treat cancer and other serious illnesses. SaveOnSP exists solely to take parasitic advantage of patient assistance programs like CarePath—it seizes these patient assistance funds for itself and its business partners in the health insurance industry. *See, e.g.*, Compl. ¶¶ 1-5, 8-17, 50-88. SaveOnSP accomplishes this, in part, by designating these critical therapies as "non-essential," even where these drugs are actually essential to the health of the patients who rely on them. This pretextual re-designation ostensibly exploits a perceived loophole in the Affordable Care Act, enabling SaveOnSP to (1) inflate patients' copay obligation to thousands of dollars per dose, and then (2) wrongfully extract all of that extra money from CarePath. *Id.* ¶ 9 (SaveOnSP representative: "The moment we reclassify these as non-essential we get to operate outside of those rules, which removes the limitations for how high we set the copay… And that's what allows us to be the ***most lucrative*** in terms of driving savings for SaveOn."); *see also id.* ¶¶ 10, 28, 43, 54, 92-97. This scheme violates CarePath's express terms and conditions, and has caused JJHCS to pay at least $100 million more in copay assistance than it otherwise would have for a purpose JJHCS did not intend, depleting the support available for other patients who cannot afford the ever-increasing copays and deductibles imposed by their commercial health insurers. *Id.* ¶¶ 5, 18-26, 36-46. That figure has grown since JJHCS filed its complaint over a year ago, and increases every day.

In response to JJHCS's allegations, SaveOnSP largely admitted the facts of its tortious scheme, but pled an affirmative defense that JJHCS has failed to mitigate its damages. *See* Answer, Dkt. No. 85, at 20 (pleading that JJHCS's "claims are barred in whole or [in] part because it failed to use reasonable means to prevent the alleged damage and failed to use reasonable means

Hon. Cathy L. Waldor
June 2, 2023
Page 3

to mitigate its damages"). Similarly, SaveOnSP's briefing has repeatedly argued that JJHCS should avail itself of the "simple remedy" of reducing or eliminating copay assistance for the patients at issue. *See, e.g.*, SaveOnSP's Memorandum of Law in Support of its Motion to Dismiss, Dkt. No. 31-1 at 5 ("JJHCS fully controls how much copay assistance it provides."); *id.* at 31 ("If JJHCS wants to spend less, it can cut its budget, as it already has for STELARA and TREMFYA for patients on plans that claim to reduce out-of-pocket costs" such as SaveOnSP-connected plans); Aug. 16, 2022 Trans. at 17 ("If J&J wants to reduce how much it's paying under its CarePath program, it could reduce that budget tomorrow and bring its costs down."). There has been an obvious impediment to JJHCS doing any such thing: it had no precise and reliable information about which individuals are enrolled in both CarePath and the SaveOnSP Program. But now SaveOnSP has produced the Patient List in discovery.

JJHCS therefore intends to now do exactly what SaveOnSP has urged: identify patients who are enrolled in both CarePath and the SaveOnSP Program, in violation of CarePath's terms and conditions, which has rendered them ineligible for continued CarePath assistance. Again, no legal finding about the terms and conditions is required to do this because JJHCS has no legal obligation to provide these patient assistance funds in the first place. If JJHCS does not wish to expend this money based on its own view of its terms and conditions, it is free to do so. Although SaveOnSP's scheme has caused these patients to be in breach of the CarePath terms and conditions already, JJHCS will prioritize the need to ensure that patients' course of treatment is not disrupted, while still allowing JJHCS to mitigate its damages on a going-forward basis, as it is obligated to do. *See, e.g.*, *Martin Marietta Corp. v. New Jersey Nat. Bank*, 653 F.2d 779, 785 (3d Cir. 1981) ("[T]he requirement that plaintiffs mitigate damages prevails as much in the case of damages arising out of tort as it does in the case of breach of contract."); *Fox v. Millman*, 45 A.3d 332, 345 (N.J. 2012) ("[P]laintiffs would only be entitled to recover as damages such sums as they could demonstrate were properly theirs, a determination that necessarily implicates an evaluation of whether plaintiff failed to act so as to avoid the consequences of defendant's tortious conduct." (internal quotation marks and citation omitted)). SaveOnSP and its business partner health insurers will then assume the cost of paying for those patients' drugs, which they should have been doing all along, in performance of their commitment that enrolled patients will always have a zero-dollar cost. *See* Dkt. No. 31-3 at 37:19-37:21 ("And it's made clear that as long as they participate in the program, they pay zero."); 38:6-38:7 ("[B]ut you will always pay zero, as long as you are enrolled in the program.").

To identify patients whom SaveOnSP has rendered out of compliance with the CarePath terms and conditions, JJHCS needs to show necessary business personnel at JJHCS and the CarePath administration vendor TrialCard the Patient List provided by SaveOnSP. Without it, JJHCS personnel cannot independently determine who these patients are with the necessary certainty, because the SaveOnSP Program is designed precisely to evade detection. *See* Compl. ¶ 101 ("SaveOnSP has taken steps to obscure when funds are being extracted from CarePath through its Program, including recently by varying the patient's out-of-pocket obligation per prescription fill,

Hon. Cathy L. Waldor
June 2, 2023
Page 4

such that the amounts extracted from the copay card by the pharmacy are not consistent and easily detectible.  Further, JJHCS cannot reduce cost support preemptively to prevent SaveOnSP's activities without an unacceptable risk that individual patients may be misidentified and suffer from reduced cost support and consequently be unable to afford their therapy.  The secretive nature of SaveOnSP's operations, therefore, renders any attempt to reduce copay assistance on a patient-by-patient basis unworkable as it risks harming the very patients CarePath was designed to support.").  In other words, JJHCS cannot mitigate its damages without giving necessary business personnel at JJHCS and TrialCard access to the Patient List.[1]  Having insisted that JJHCS must mitigate its damages, SaveOnSP cannot make it impossible for JJHCS to do so by hiding the necessary information behind an "ATTORNEY'S EYES ONLY" designation.

SaveOnSP's response below contains several remarkable admissions that underscore why JJHCS should be granted the relief it seeks.  Most strikingly, SaveOnSP now admits that it is helping itself (and its partners) to ▅▅▅▅▅▅▅▅▅▅▅▅▅▅ of JJHCS's money.  Yet incredibly, SaveOnSP's position is that the Court cannot permit JJHCS to stop the bleeding, because losing access to ill-gotten gains would "harm" SaveOnSP's "business model" and cause a loss of "savings" to the health insurers that have heretofore been enriched by SaveOnSP's unlawful scheme.  To state the obvious, neither SaveOnSP nor its clients have any entitlement whatsoever to an uninterrupted flow of funds from JJHCS—and certainly not CarePath funds that JJHCS makes available, in its sole discretion, for the express purpose of assisting ***patients***.  SaveOnSP has no legal right to continue seizing that money to enrich itself.   Nor does paying for medicines for insured persons constitute cognizable "harm" to health insurers, let alone render them somehow "devastated" as SaveOnSP claims below.  Paying for medicines needed by insured persons is what health insurers are supposed to do.  Those health insurers similarly have no entitlement to misappropriate money made available to JJHCS exclusively to help patients to lower their costs.

SaveOnSP's other main objection is that "JJHCS has not proved that these patients are violating its terms and conditions."  But JJHCS does not need to "prove" to SaveOnSP's satisfaction that JJHCS's terms and conditions have been violated for these purposes.  JJHCS is the master of its CarePath program—there is nothing stopping it from mitigating its damages by

---

[1] SaveOnSP's argument that, even under a "Confidential" designation, only JJHCS "executives" would be able to view the Patient List fundamentally misunderstands JJHCS's request.  JJHCS seeks an order lowering the designation of the Patient List to "Confidential" *and* authorizing JJHCS to share the Patient List with necessary personnel as set forth above.  As contemplated by the Confidentiality Order, any personnel given access to the Patient List would sign a copy of Exhibit A to the Confidentiality Order limiting the use of that information and maintaining its confidentiality.  *See* Dkt. No. 62 ¶ 5(g).

reducing assistance to patients that, in JJHCS's judgment, do not qualify. JJHCS is not required to make this CarePath money available. It does so to help patients. JJHCS is fully within its rights to not make that money available where it is being misappropriated by third parties like SaveOnSP. JJHCS does not need to prove anything before taking that step.

SaveOnSP's procedural arguments fare no better. It erroneously claims that the Confidentiality Order in this case gives it "the right" to designate these materials as "ATTORNEYS' EYES ONLY." Not so. SaveOnSP bears the burden of justifying that designation and cannot do so under these circumstances. *See, e.g., United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) ("Where there is an umbrella protective order[,] the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order."). As relevant here, the Discovery Confidentiality Order in this case reserves the "ATTORNEYS' EYES ONLY" designation only for "highly sensitive business or personal information," the disclosure of which is "highly likely" to (1) cause significant harm to an individual, (2) cause significant harm to the business or competitive position of SaveOnSP, or (3) cause SaveOnSP to violate its privacy or confidentiality obligations to others. Dkt. No. 62 ¶ 2. None of these requirements are met here.

*First*, providing the Patient List to JJHCS's and TrialCard's necessary business personnel is not likely, let alone "highly likely," to cause "significant harm to an individual." The Patient List only contains names—not private, sensitive, or confidential personal information. Again, these are JJHCS's own patients, and JJHCS is already aware of all names of patients enrolled in CarePath and what Janssen medications they are taking. The only information added by the Patient List is the fact that the patient is *also* enrolled in the SaveOnSP Program. See Feb. 28, 2023 Trans. at 18:8-9, 18:23 ("THE COURT: Okay. But why shouldn't they be able to contact patients? . . . THE COURT: But then – they're *their* patients." (emphasis added)). As noted above, JJHCS will implement the exclusions slowly and carefully while prioritizing patients' access to their medications. And any persons receiving this information will sign the undertaking to the Confidentiality Order and maintain its confidentiality.

*Second*, providing the Patient List to JJHCS's business personnel will not harm "the business or competitive position" of SaveOnSP. The Patient List does not contain the type of "trade secrets, competitively sensitive technical, marketing, financial, sales or other confidential business information" contemplated by the designation. Dkt. No. 62 ¶ 1. And SaveOnSP cannot be heard to complain about any purported business harm associated with JJHCS reducing CarePath assistance for these patients, given that as noted above, SaveOnSP repeatedly has argued that "cut[ting] its budget" for assistance to certain patients is precisely what JJHCS should be doing to mitigate its damages. SaveOnSP now changes course, arguing that "JJHCS's proposed action would cost SaveOnSP ███████████████████████ and would cost the employers who are SaveOnSP's clients ███████████████████." But as noted above, SaveOnSP has no right to insist JJHCS keeps *these* patients on CarePath in violation of JJHCS's terms and

Hon. Cathy L. Waldor
June 2, 2023
Page 6

conditions. Confidentiality Orders are not intended to facilitate ongoing lawbreaking or misappropriation or to force JJHCS to make expenditures that it does not wish to make.

*Third*, disclosure of the Patient List to JJHCS's business personnel will not cause SaveOnSP to "violate its privacy or confidentiality obligations to others." Again, JJHCS already has the names of all patients enrolled in CarePath. And SaveOnSP has already produced the Patient List in this litigation pursuant to Court order—all that is at issue now is its designation. JJHCS is now seeking this Order for limited purposes as set forth above and will not make the information public. Further, SaveOnSP has no "privacy or confidentiality obligation" to hide the names of patients whom it has caused to violate the CarePath terms and conditions from JJHCS. *See Traffix USA, Inc. v. Bay*, No. 21-CV-02093, 2022 WL 2046282, at *5 (N.D. Ill. June 7, 2022) (lowering designation of "common customer" list and allowing plaintiff to "inform . . . their own client of the common customers"); *Seaga Mfg., Inc. v. Fortune Res. Enters., Inc.*, No. 99 C 50332, 2002 WL 31399408, at *3 (N.D. Ill. Oct. 24, 2002) (lifting of "attorney's eyes only" designation placed upon consultant's proprietary customer list previously provided to manufacturer's attorneys, was warranted, to extent that names of customers overlapped between consultant and manufacturer). Nor can these patients have any such confidentiality expectation, given that they all previously agreed, as a condition of receiving CarePath funds, that they "meet the [CarePath] program requirements every time [they] use the program" and will disclose any enrollment in programs like SaveOnSP. *See, e.g.*, Compl. ¶ 48; *see also* Savings Program Overview – STELARA®, https://www.stelarawithme.com/sites/www.stelarawithme.com/files/stelara-savings-program-overview.pdf?v=39 (CarePath terms and conditions requiring patients to disclose if they have enrolled in plans, including those modified by SaveOnSP, that "claim to eliminate their out-of-pocket costs").

*Fourth*, the cases cited by SaveOnSP do not support its novel proposition that a defendant gets to decide how and when a plaintiff may mitigate its damages. In fact, SaveOnSP's authority says the opposite. *See, e.g.*, *In re Kellet Aircraft Corp.*, 186 F.2d 197, 198–99 (3d Cir. 1951) ("Where a choice has been required between two reasonable courses, the person whose wrong forced the choice can not complain that one rather than the other was chosen. The rule of mitigation of damages may not be invoked by a [defendant] as a basis for hypercritical examination of the conduct of the injured party, or merely for the purpose of showing that the injured person might have taken steps which seemed wiser or would have been more advantageous" to the defendant). Similarly, SaveOnSP's arguments against the production of "customer lists" ignores the cases cited by JJHCS concerning "common customer lists" like the Patient List in dispute here. *See Traffix*, 2022 WL 2046282, at *5; *Seaga Mfg.*, 2002 WL 31399408, at *3. And contrary to SaveOnSP's suggestion, *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, does not address mitigation of damages at all, so that Illinois case has no bearing here. 235 F.R.D. 435, 445–46 (N.D. Ill. 2006) (denying protective order and determining discovery of some customer information relevant to customer confusion).

Hon. Cathy L. Waldor
June 2, 2023
Page 7

*Finally*, SaveOnSP's suggestion that JJHCS "rushed through" this issue is belied by the record. SaveOnSP refused to produce the information in dispute for months until this Court finally ordered it to do so in February. SaveOnSP did not fully comply with the Court's order until April 28. And while JJHCS requested that SaveOnSP consent to this relief on May 16, SaveOnSP apparently did not bother to timely solicit objections from its clients, waiting until more than a week later in a transparent attempt to further delay JJHCS's mitigation of damages by arguing this motion should not be heard on June 6. Even now, SaveOnSP has failed to substantiate its claims of objections from the "thousands" of clients who would prefer to keep profiteering from SaveOnSP's subversion of the CarePath program. But regardless, this dispute relates to documents that have already been produced in this litigation. Third parties have no standing to argue over the appropriate designation for those documents.

There is simply no basis to require that JJHCS keep providing hundreds of millions of dollars to SaveOnSP and its business partners when it does not wish to do so. JJHCS should be permitted to mitigate its damages by stopping this flow of money, which is meant only for patients. Accordingly, JJHCS respectfully requests that the Court enter an order lowering the Patient List designation to Confidential and permitting JJHCS to share the Patient List with necessary business personnel at JJHCS and TrialCard so that JJHCS can take steps to mitigate its damages.

### SaveOnSP's Position

JJCHS proposes to use SaveOnSP's proprietary, confidential information to shut down SaveOnSP's services relating to Janssen drugs—granting JJHCS part of the ultimate relief it seeks in this case although JJHCS has not proved its claims. JJHCS's proposed action would cost SaveOnSP ███████████████████████ and would cost the employers who are SaveOnSP's clients over a ██████████████████████████. This attempted self-help is an abuse of the discovery process: JJHCS seeks to gain a business advantage and cripple a business rival without any legal basis. The Court should deny JJHCS's request. If inclined to entertain it, the Court should order full briefing with an opportunity for the commercial health plans who would be devastated by JJHCS's requested relief to participate.

The Court is aware of the basic outlines of this dispute, so SaveOnSP will not rebut all of JJHCS's mischaracterizations of the parties' dispute. In short, JJHCS is upset that SaveOnSP-advised plan sponsors changed their plan benefits to raise copays for Janssen drugs covered by CarePath, JJHCS's copay assistance program. JJHCS sued SaveOnSP, accusing it of tortiously inducing plan members into breaching CarePath's terms and conditions and of misleading patients in violation of New York's consumer protection law. SaveOnSP strongly contests these claims. JJHCS seeks both damages and a permanent injunction that would shut down SaveOnSP's business (and thus the plans' benefits) relating to Janssen drugs.

Hon. Cathy L. Waldor
June 2, 2023
Page 8

In discovery, JJHCS requested a list of patients on SaveOnSP-advised plans, telling the Court that it wanted this information to "assess" its damages and so its litigation counsel could contact patients about their discussions with SaveOnSP. *See* Ex. ___ (Jan. 5, 2023 Joint Letter), at 2. SaveOnSP produced to JJHCS a list of patients enrolled in SaveOnSP-advised plans (the "Patient List"), designating it as Attorneys Eyes Only ("AEO") under the Discovery Confidentiality Order ("DCO"), Dkt. 62, stipulated by the parties and entered by the Court. JJHCS now asks the Court to strip the Patient List of its AEO designation and allow JJHCS to use that information for a previously undisclosed purpose—to disenroll these patients from CarePath.

The Court should deny JJHCS's motion because the Patient List easily qualifies for AEO protection. The DCO gives SaveOnSP "the right" to designate as AEO any discovery material:

> that contains highly sensitive business or personal information, the disclosure of which is highly likely to cause significant harm to an individual or to the business or competitive position of the Producing Party or the disclosure of which absent an Attorneys' Eyes Only designation could cause the Producing Party to violate its privacy or confidentiality obligations to others.

Dkt. 62 at 1-2. The Patient List contains "highly sensitive business ... information"—the identities of patients enrolled in SaveOnSP-advised plans who are also enrolled in CarePath. Disclosing this information to JJHCS would, in the words of the DCO to which JJHCS agreed, be "highly likely to cause significant harm to ... the business ... of" SaveOnSP. JJHCS has made explicit that it would use the information to disenroll these patients from CarePath, eliminating all savings that SaveOnSP's client health plans receive from CarePath—█████—and SaveOnSP would lose all fees based on those savings—█████. The disclosure also would be "highly likely to cause significant harm to ... the ... competitive position of" SaveOnSP. JJHCS's action would remove from CarePath only members of SaveOnSP-advised plans, but not members of plans advised by SaveOnSP's competitors, putting SaveOnSP at a competitive disadvantage. The Patient List is, and should remain, AEO material.

JJHCS's arguments to the contrary are meritless.

*First*, JJHCS asserts that the Patient List does not contain confidential business information because JJHCS already knows who is enrolled in CarePath. But JJHCS admits that it does not know who on the Patient List is *also* enrolled in SaveOnSP-advised plans. That is the sensitive portion of the information protected by the AEO designation. JJHCS admits that it needs this additional information to selectively disenroll such patients, else it would not bring its motion. This information—the identities of patients enrolled in SaveOnSP-advised plans—is the confidential, proprietary information of SaveOnSP and its health plan clients.

*Second*, JJHCS asserts that patients have no confidentiality expectations in whether their plans are advised by SaveOnSP because they signed JJHCS's terms and conditions. But those terms do not contain any confidentiality waiver and do not require the patients to disclose anything about SaveOnSP to JJHCS. The terms also could not require SaveOnSP or its benefit plan clients—which never signed them—to turn over their confidential, proprietary information.

*Third*, JJHCS asserts that changing the designation of the Patient List will not harm SaveOnSP's business or competitive position. This is disingenuous. JJHCS and SaveOnSP are commercial adversaries—JJHCS seeks to destroy SaveOnSP by eliminating its ability to advise plans to change their benefits to take advantage of JJHCS's copay assistance funds. JJHCS admits that disenrolling the relevant patients from CarePath would gut SaveOnSP's business model, causing SaveOnSP's health benefit plan clients to lose all savings generated by CarePath funds. The loss would ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—significant harm by any measure.

*Fourth*, JJHCS says that the Court should let it kick these patients off of CarePath because those patients are purportedly violating JJHCS's terms and conditions and SaveOnSP is supposedly "misappropriat[ing]" CarePath funds. But JJHCS has not proved that these patients are violating its terms and conditions or that SaveOnSP owes it any kind of damages; the parties are litigating JJHCS's claims now. Having proved nothing, JJHCS proposes to use the Patient List to shut down SaveOnSP's services related to Janssen drugs—preemptively granting itself the permanent injunction that it seeks in this litigation. JJHCS cannot use discovery to gain this relief. *See, e.g.*, *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 445-6 (N.D. Ill. 2006) (denying motion to compel production of customer list without AEO restrictions under vendor agreement at issue in litigation, as "[d]iscovery is not intended to be used to acquire indirectly the very relief that is supposed to await the determination of the action on the merits); *Ring Energy, Inc. v. Hullum*, 2015 WL 4413366 (N.D. Okla. July 17, 2015) (denying motion to compel production of seismic reports for purpose of deciding whether to renew or extend leases at issue in the litigation as, "allowing such use would be prematurely granting defendants the relief they seek on their specific performance claim").

*Fifth*, JJHCS asserts that because it has no obligation to provide copay assistance funds to patients, it should be allowed to strip those funds from patients on SaveOnSP-advised plans without having to prove the merits of its claims. This is not the law. JJHCS can certainly use information it has now—obtained outside of this litigation—to take the commercial action of withdrawing copay assistance from individual patients. But JJHCS cannot use SaveOnSP's confidential, proprietary information, obtained on an attorneys-eyes-only basis in a federal litigation, for the purely commercial purpose of identifying specific patients so it can cut off their assistance payments. Litigants simply are not allowed to use confidential discovery material for commercial purposes. *Damiano v. Sony Music Ent., Inc.*, 168 F.R.D. 485, 492-93 (D.N.J. 1996) ("The notion of using raw discovery materials for financial profit is not what this court considers to be a legitimate purpose for disclosure. … Of course, the plaintiff is free to utilize the materials in preparing and

Hon. Cathy L. Waldor
June 2, 2023
Page 10

presenting this case in the judicial forum."). If JJHCS wishes to use the federal court system to shut down SaveOnSP's operations regarding Janssen drugs, it has to prove its claims—which SaveOnSP strongly contests—and obtain appropriate relief.

*Sixth*, JJHCS says that it seeks to use the Patient List to mitigate its damages, as SaveOnSP has correctly argued that JJHCS has failed to do. This distorts the concept of mitigation of damages. Mitigation does not mean a party may misappropriate sensitive information gained in discovery, assume the truth of the allegations in its suit, and use that information to destroy its adversary's business without providing any legal entitlement to relief. Parties must rather make reasonable efforts to mitigate damages "judged in the light of one viewing the situation at the time the problem was presented." *Toyota Indus. Trucks U.S.A., Inc. v. Citizens Nat. Bank of Evans City*, 611 F.2 465, 471 (3rd Cir. 1979) (citing *In Re Kellett Aircraft Corp.*, 186 F.2d 197, 198 (3d Cir. 1951)). SaveOnSP argues that JJHCS failed to mitigate its damages by not acting on information available to it outside of the litigation—such as failing to reduce its CarePath budget. SaveOnSP does not argue that JJHCS failed to mitigate its damages by not acting on confidential, proprietary information that it received in discovery (and, to be clear, SaveOnSP waives any such argument). *See Ring Energy*, 2015 WL 4413366 at *8 (ordering defendant not to use reports produced in discovery to mitigate damages as plaintiff accepted risk that defendant might recover more damages than if they had used reports to mitigate). This is not a "change of course," as JJHCS falsely asserts; SaveOnSP has never said different. JJHCS cites no authorities allowing it to use SaveOnSP's proprietary information, obtained through discovery, to mitigate damages.[2]

*Seventh*, JJHCS asserts that because SaveOnSP already produced the Patient List, all that is at issue is the level of that list's confidentiality designation. This is simply not true. As it admits, JJHCS does not ask the Court to just change the list's designation from AEO to Confidential. It asks the Court to allow individuals who would not otherwise be allowed to see Confidential discovery material to not only view that list but then use it to withdraw copay assistance funds from patients on SaveOnSP-advised plans. JJHCS's use of the Patient List, not simply the list's designation, is very much at issue here.

---

[2] JJHCS' proposed actions would also go beyond mitigation of its alleged damages. In its Complaint, JJHCS alleged that it was damaged by "SaveOnSP knowingly and proximately caus[ing] JJHCS … pay more money from CarePath than it otherwise would have for a purpose JJHCs did not intend." Compl. ¶ 110. That is, JJHCS asserted that it was paying more in CarePath funds under the terms of SaveOnSP-advised plans than under different plan terms. Removing patients from CarePath would not recover this difference; it would eliminate any CarePath payments entirely.

While the Court should deny JJHCS's request now, it could not fairly consider granting it without hearing from SaveOnSP's health plan clients. The information that JJHCS seeks to re-designate is Protected Health Information covered by the Health Insurance Portability and Accountability Act of 1996 and by a services agreement and Business Associate Agreements between SaveOnSP and its clients. SaveOnSP told its clients that it would produce this information on an AEO basis. JJHCS seeks to strip away that protection and share the information not only with the "executives who are required to participate in decisions with reference to this lawsuit" who may view confidential information under the DCO, Dkt. 62 at 4-5, but also with "necessary business personnel" and a third-party vendor who may not. JJHCS's proposed actions would also significantly impact the plans' finances. JJHCS's decision to hike drug prices has strained these plans' healthcare budgets; implementing copay assistance benefits administered by SaveOnSP helps to partially offset some of this cost. If JJHCS were to remove from CarePath all patients on SaveOnSP-advised plans, it would cost those plans ███████████████, greatly increasing their healthcare costs.

SaveOnSP asked JJHCS to wait to bring its request to the Court until SaveOnSP could notify the thousands of plans at issue and given them a full opportunity to respond. It also offered to ask the Court to push the June 6 conference back by a few weeks to give the plans this time while allowing JJHCS's claims to be heard promptly thereafter. JJHCS refused. This refusal speaks volumes. JJHCS is trying to rush through its baseless request before the thousands of businesses that it would devastate can be heard. Rather than litigate its case on the merits, JJHCS tries to leverage the discovery powers of the Court to serve its own business interests and achieve the aim of this lawsuit—putting SaveOnSP out of business—without the trouble of proving its claims.

SaveOnSP recently notified the plans of JJHCS's request. Several have responded, objecting, and asking for a chance to review JJHCS's submission to the Court (which was not publicly available at the time of notice) and consider submitting a response to the Court. More plans were responding at the time this letter was finalized. And many more have not yet had a chance to respond. The Court should not consider granting JJHCS's requested relief until they can weigh in.[3]

---

[3] JJHCS's assertion that SaveOnSP should have provided earlier notice is baseless. While JJHCS first raised this issue on May 15, the parties did not meet and confer about it until May 23. On the night of May 24, before SaveOnSP had responded to JJHCS's request, JJHCS for the first time declared its intention to raise the issue with the Court on June 6. The next day, May 25, SaveOnSP began preparing an appropriate notice to the thousands of affected plans, which it began sending out promptly after the Memorial Day weekend, on May 30.

Hon. Cathy L. Waldor
June 2, 2023
Page 12

* * *

The parties appreciate the Court's attention to this matter.

Respectfully submitted,

/s/ *Jeffrey J. Greenbaum*

Jeffrey J. Greenbaum
Katherine M. Lieb
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*

/s/ *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

David Elsberg (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
SELENDY GAY ELSBERG PLLC

Hon. Cathy L. Waldor
June 2, 2023
Page 13

        1290 Avenue of the Americas
        New York, NY 10104
        (212) 390-9000
        deslberg@selendygay.com
        adunlap@selendygay.com
        mnelson@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# EXHIBIT A

# Filed Under Seal