**FILED UNDER SEAL - CONTAINS INFORMATION MARKED AS CONFIDENTIAL UNDER THE DISCOVERY CONFIDENTIALITY ORDER.**

June 2, 2023

**VIA ECF**

Hon. Cathy Waldor, U.S.M.J.
U.S. District Court for the District of New Jersey
50 Walnut Street, Room 4040
Newark, NJ 07102

Re:  *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
*No. 2:22-cv-02632 (ES) (CLW)*

Dear Judge Waldor:

Plaintiff Johnson & Johnson Health Care Systems, Inc. ("JJHCS") seeks the Court's intervention at the June 6 status conference to compel Defendant Save On SP, LLC ("Save-OnSP") to produce documents responsive to two requests for production ("RFP") served on April 18, 2023.  SaveOnSP's responses and objections to the JJHCS RFPs at issue in this letter are attached as Exhibit 1.

The parties have met and conferred in good faith to resolve their disputes concerning these RFPs, but we were unable to do so.  We therefore submit this letter in accordance with Local Rule 37.1 and the Court's Civil Case Management Order.

## I.   JJHCS'S REQUEST FOR PRODUCTION NO. 61

"All SaveOnSP business plans, including without limitation any monthly, quarterly, or annual plans."

*JJHCS's Position*

SaveOnSP has refused to produce any documents responsive to this RFP. SaveOnSP's objection is not on burden grounds, for good reason:  this request seeks a small number of discrete documents.  Instead, SaveOnSP claims that its own business plans are irrelevant.

This objection makes little sense.  JJHCS alleges that SaveOnSP's business model is to unlawfully enrich itself (along with its partners) by diverting patient assistance funds that are intended to help patients access the medication(s) they need to treat serious, chronic conditions. *See, e.g.*, Compl. ¶¶ 1–5, 8–17, 50–88.  Because SaveOnSP's diversion of patient assistance funds is the whole point of its business operations, its business plan documents are relevant.  These documents will shed much-needed light on SaveOnSP's strategic goals, performance metrics,

Hon. Cathy Waldor, U.S.M.J.
June 2, 2023
Page 2

interactions with patients, responses to changes in copay assistance programs, and how all of these have evolved over time.

The relevance of these documents is not a matter of speculation. SaveOnSP has already produced a single business plan, and it is replete with plainly discoverable information. For example, the document details ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The document also addresses ▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Thus, contrary to SaveOnSP's protest below that its business plans are "irrelevant," in fact the information contained in the business plans is squarely relevant to JJHCS's claims about the SaveOnSP Program, and the harm it visits upon JJHCS and patients alike.

Courts routinely order the production of business plans where they are relevant to the claims at issue. *See, e.g.*, *AstraZeneca LP v. IVAX Pharmaceuticals, Inc.*, No. 05-5142, 2007 WL 9782656, at *9 (D.N.J. May 31, 2007) (granting the plaintiff's motion to compel the production of business plans because such materials were relevant to plaintiff's inducement to infringe claims); *Theia Technologies LLC v. Theia Grp., Inc.*, No. 20-97, 2020 WL 6450468, at *6 (E.D. Pa. Nov. 3, 2020) (granting the plaintiff's motion to compel the production of outstanding business plans and investor materials); *Hodges v. Pfizer, Inc.*, No. 14-485, 2015 WL 13804602, at *10 (D. Minn. Dec. 17, 2015) (compelling the defendant to produce, *inter alia*, United States business plans for Advil between 2001 and 2010 because they were "relevant" to plaintiff's claims). The result should be no different here.

SaveOnSP's purported reasons for refusing to produce its business plans are pretextual and meritless. First, SaveOnSP complains that its business plans would be "cumulative" of various other items SaveOnSP has produced. But SaveOnSP has not shown—indeed, it has not even tried to show—that all of the relevant information in its business plans appears elsewhere in its production. Moreover, business plans will present the key strategic information about SaveOnSP's operations in one place and in SaveOnSP's own words. JJHCS should not be required to try and piece together the same information from tens of thousands of other documents, to the extent any of it is even reflected in those other production materials. So SaveOnSP cannot meet its "heavy burden" of demonstrating that production of this handful of documents would be "unreasonably cumulative" as Rule 26 requires. *Campbell v. Sedgwick, Detert, Moran & Arnold*, 2012 WL 12898345, at *3 (D.N.J. Oct. 9, 2012) (Waldor, J.) ("The non-moving party bears the 'heavy burden' when arguing against production pursuant to Fed. Civ. P. 26(b)(1)."); Fed. R. Civ. P. 26(b)(2)(C).

Hon. Cathy Waldor, U.S.M.J.
June 2, 2023
Page 3

Second, SaveOnSP mischaracterizes both its own prior positions and this Court's rulings when it claims that the Court previously "denied JJHCS's request to discover" similar information. Until this point, SaveOnSP has **not** objected to producing relevant documents that, like the business plans at issue today, concern "drugs generally," and indeed SaveOnSP represented that it "did not intend to limit its production to documents which reference JJHCS or Janssen Drugs on their face." D.E. 65-2 at 5, 19; *see also* D.E. 65 at 23 ("SaveOnSP will produce documents that relate to Janssen Drugs, even if they also relate to non-Janssen Drugs."). By contrast, the March 17 ruling referred to by SaveOnSP below concerned requests for information that pertained **exclusively** to non-Janssen drugs, and so is utterly beside the point here, because SaveOnSP's business plans discuss its operations at a level that includes "drugs generally," i.e., copay assistance funds that wrongfully diverted from JJHCS and others.

Finally, SaveOnSP grossly distorts the caselaw it cites. For example, SaveOnSP says that *Michael Kors, L.L.C v. Su Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 WL 1517552 (S.D.N.Y. Apr. 8, 2019), denied a "request for all defendant's business plans because it was not tailored to the . . . claims at issue." That is exactly backwards—the request at issue there was for all *plaintiff* Michael Kors' business plans, and therefore would have reached products and business lines that were irrelevant to the marks that the defendant was accused of infringing. Here, by contrast, the SaveOnSP scheme at issue is at the core of SaveOnSP's business. SaveOnSP's other cases, and the ways it describes them, are similarly misleading. *See Barbara v. MarineMax, Inc.*, 2013 WL 1952308, at *6 (E.D.N.Y. May 10, 2013) (rejecting a much broader request for "**[a]ll documents and communications relating to** MarineMax business plans or corporate strategy" (emphasis added)); *Welch v. GEICO Gen. Ins. Co.*, 2017 WL 3701136, at *2 (M.D. Fla. May 15, 2017) (**granting** motion to compel business plans reflecting relevant information). SaveOnSP's attempts to distinguish the authority relied upon by JJHCS, meanwhile, all turn on whether the discovery sought is relevant—and as noted above, the single business plan produced by SaveOnSP demonstrates the relevance of these documents.

JJHCS respectfully requests that this Court order SaveOnSP to produce "[a]ll SaveOnSP business plans," as requested by JJHCS's RFP No. 61.

### *SaveOnSP's Position*

SaveOnSP is producing large swaths of documents with a slew of details about its business operations relevant to this case. Among other things, it is producing (1) lists of over 6200 of its client health plans; (2) lists of patients enrolled in those plans who take Janssen drugs; (3) its contracts with its clients; (4) its contracts with Express Scripts and Accredo; (5) data showing the fees it received for providing its services relating to Janssen drugs; (6) over 140,000 records of calls between SaveOnSP and patients who take Janssen drugs; (7) guides for the SaveOnSP employees who conduct those calls; (8) reams of detailed data about its patients; and (9) numerous organizational charts. This includes documents on most of the subject areas that JJHCS cites—client savings from Janssen drugs, SaveOnSP's operations and call centers, process for communications with clients, and organizational charts. On these topics, SaveOnSP's business plans would be cumulative of discovery that JJHCS has already received. The sole reason offered by JJHCS is that

Hon. Cathy Waldor, U.S.M.J.
June 2, 2023
Page 4

it requires SaveOnSP's strategic information in one place—at best for the sake of convenience—does not change that fact.

In demanding SaveOnSP's business plans, JJHCS seeks additional, irrelevant information to which the Court has already held it is not entitled. The Court denied JJHCS's request to discover information about SaveOnSP's business regarding non-Janssen drugs, which are not at issue. Mar. 17, 2023 Hr'g Tr. At 16:17-25. Yet JJHCS seeks business plans that discuss SaveOnSP's business regarding those drugs. The Court also denied JJHCS's request for SaveOnSP's financial information beyond that necessary to show the fees it received related to Janssen drugs. Mar. 17, 2023 Hr'g Tr. At 23:23-24. Yet JJHCS seeks business plans that would discuss SaveOnSP's overall finances, well beyond fees related to the drugs at issue. JJHCS's current request is simply its old, rejected requests in a new guise.

Contrary to JJHCS's statements above, JJHCS bears the initial burden to establish relevance to a parties' claim or defense, Fed. R. Civ. P. 26, and JJHCS simply has not demonstrated the relevance of the business plans. *Campbell v. Sedgwick, Detert, Moran & Arnold*, 2012 WL 12898345, at *3 (D.N.J. Oct. 9, 2012) (Waldor, J.) (finding many requests sought information unrelated to claims as alleged in the operative complaint). The fact that JJHCS might find it convenient to review those plans does not make them relevant. And JJHCS's suggestion that SaveOnSP previously agreed to produce them is simply not true. SaveOnSP agreed to produce policies, procedures, and the like that apply to both Janssen and non-Janssen drugs, and not to withhold relevant documents simply because they discuss non-Janssen drugs. SaveOnSP never committed to producing financial and business information that has nothing do with this case.

The Court should deny JJHCS's overbroad request for irrelevant information. *See, e.g.*, *Michael Kors, L.L.C. v. Su Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 WL 1517552, at *5 (S.D.N.Y. Apr. 8, 2019) (denying request for all defendant's business plans because it was not tailored to the trade dress infringement and unfair competition claims at issue); *Barbara v. MarineMax, Inc.*, No. 12-CV-368 ARR RER, 2013 WL 1952308, at *6 (E.D.N.Y. May 10, 2013) (affirming denial of request for defendant's business plans as "utterly vague and overbroad" to plaintiffs' bad faith claims). JJHCS's attempt to distinguish these cases fails. JJHCS's explanation of why the plaintiff's request was denied in *Michael Kors* shows why its request should be denied here: The requested business plans would "reach[] products and business lines that are irrelevant" to JJHCS's claims, regardless of whether it is plaintiff or defendant. And while the plaintiff's request in *MarineMax* sought "all documents and communications relating to MarineMax's business plans or corporate strategy," not just the plans themselves, the court held that the business plans' themselves were irrelevant—as they are here.[1]

---

[1] JJHCS is not helped by its cited caselaw. *AstraZeneca LP v. IVAX Pharmaceuticals, Inc.*, No. 05-5142, 2007 WL 9782656, at *9 (D.N.J. May 31, 2007) and *Theia Technologies LLC v. Theia Grp., Inc.*, No. 20-97 2020 WL 6450468, at *1 (E.D. Pa. Nov. 3, 2020) both involved intellectual property infringement claims, to which defendants' business plans were relevant to their use of the contested intellectual property. *Hodges v. Pfizer, Inc.*, No. 14-485, 2015 WL 13804602, at *10 (D. Minn. Dec. 17, 2015) involved punitive damage claims, to which defendant's business plan was relevant to show its marketing efforts and expenditures. Here, in contrast, the additional information in SaveOnSP's

Hon. Cathy Waldor, U.S.M.J.
June 2, 2023
Page 5

  If JJHCS believes that there are specific gaps in SaveOnSP's massive production of relevant business information, it should identify them so the parties can meet and confer.

## II. JJHCS'S REQUEST FOR PRODUCTION NO. 62

  "All corporate governance documents for SaveOnSP, from its founding to the present, including but not limited to its Articles of Organization and any amendments thereto, bylaws, operating agreements, or codes of conduct."

### *JJHCS's Position*

  SaveOnSP has refused to produce any documents responsive to this RFP, even though the RFP seeks a limited universe of non-custodial documents that are maintained in the regular course of business and that would not present any burden to produce.

  JJHCS seeks SaveOnSP codes of conduct to understand SaveOnSP's internal standards and policies.  The relevance of these documents at trial is obvious:  JJHCS is entitled to cross-examine SaveOnSP's executives about whether they have lived up to even their own codes of conduct, let alone the requirements of the law.  JJHCS has alleged that SaveOnSP's conduct, including its employees' conduct, has caused harm to JJHCS and its patients, with whom SaveOnSP's employees regularly interact.  JJHCS has also alleged that SaveOnSP employees use deceptive tactics to both coerce patients to enroll in its program and deceive manufacturers like JJHCS.  SaveOnSP's expectations and guidelines regarding its employee conduct, therefore, are material to JJHCS's claims.  *See Carey v. Foster Wheeler Corp.*, No. 89-325, 1991 WL 10033, at *3, 5 (D.N.J. Jan. 23, 1991) (compelling production of employee handbook and personnel policy manual because provisions were "directly relevant to the plaintiff's cause of action"); *Williams v. City of Hartford*, 2016 WL 1732719, at *6 (D. Conn. May 2, 2016) (compelling defendant to produce the Hartford Police Department's Code of Conduct where plaintiff had sufficiently alleged "police misconduct and abuse of power within the Hartford Police Department").

  JJHCS also seeks straightforward organizational and operating documents. SaveOnSP is a murky operation.  It is a private LLC whose two members are themselves an LLC and a corporation, neither of which appears on the organizational charts SaveOnSP has produced. SaveOnSP also appears enrich its partners not only through distributions, but also through management fees, commissions, and direct money transfers paid to yet more LLCs.  All of these payments, of course, are made using wrongfully obtained ***patient assistance*** funds from JJHCS and others, thanks to the SaveOnSP scheme at the heart of JJHCS's complaint.  JJHCS is entitled to understand the basic organizational framework documents underpinning SaveOnSP, which in

---

business plans that JJHC seeks is wholly irrelevant to JJHCS's tortious interference and consumer protection claims regarding CarePath and Janssen drugs.

Hon. Cathy Waldor, U.S.M.J.
June 2, 2023
Page 6

turn will help identify SaveOnSP's true decision makers and decision-making process, and may ground further discovery.

Once again, SaveOnSP's arguments against providing this information ring hollow. First, SaveOnSP previously objected to JJHCS's RFP No. 62 in part on the grounds that certain documents are "publicly available." But only SaveOnSP's Articles of Organization themselves seem to be publicly available, and those contain almost no substantive information. Ex. 3. SaveOnSP has not identified any other responsive documents available in the public domain. The documents sought here regarding how SaveOnSP operates and makes decisions, such as its by-laws or codes of conduct, are not publicly available. Second, SaveOnSP cites the Court's ruling on an entirely unrelated RFP (which sought documents relating to how SaveOnSP "operates in jurisdictions with statutes or regulations that ban or limit accumulator adjustment programs"), which has no bearing here. Third, SaveOnSP's statement that it has produced "140,000 call records" is both misleading and irrelevant. It is misleading because it suggests that SaveOnSP produced the recordings or transcripts of its calls with patients. In fact, SaveOnSP refused to do so. Instead, it produced its *own* notes of those calls—which, aside from likely being self-serving, are completely inapposite to the corporate governance documents requested by this RFP.

Finally, SaveOnSP's remaining arguments all rely on its insistence that its own policies are somehow irrelevant. But evidence of whether SaveOnSP's employees are violating those policies is, on its face, plainly probative of whether those employees acted wrongfully, without justification, or deceptively. These factors are, in turn, undisputedly relevant to JJHCS's claims. *See, e.g.*, *Dello Russo v. Nagel*, 358 N.J. Super. 254, 268 (App. Div. 2003) (wrongful or unjustified conduct relevant to tortious interference); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 744 (N.Y. 1995) (requiring showing under GBL that defendant's acts were "deceptive or misleading"). If SaveOnSP is violating even its own codes of conduct—and its refusal to produce these documents suggests strongly that it is—then JJHCS should be permitted to cross-examine its executives using those codes.

JJHCS respectfully requests that this Court order SaveOnSP to produce "[a]ll corporate governance documents for SaveOnSP," as requested by JJHCS's RFP No. 62.

### SaveOnSP's Position

"Discovery should not serve as a fishing expedition during which Plaintiff searches for evidence in support of facts he has not yet pleaded." *Smith v. Lyons, Doughty & Veldhuius, P.C.*, No. CIV.A. 07-5139, 2008 WL 2885887, at *5 (D.N.J. July 23, 2008). In its RFP No. 62, JJHCS set out on such a trip, seeking information that it already has or is completely irrelevant.

*First*, JJHCS asks for SaveOnSP's Articles of Incorporation and any amendments. The Articles of Incorporation are publicly available, and there are no amendments.

*Second*, JJHCS seeks operating documents to "identify SaveOnSP's true decisionmakers." But SaveOnSP has produced 20 organizational charts with added information on SaveOnSP's

Hon. Cathy Waldor, U.S.M.J.
June 2, 2023
Page 7

partners and employees between April 1, 2016 and January 1, 2018 in an April 20, 2023 letter, and identified 6 relevant witnesses and their roles in the company in its Initial Disclosures. JJHCS also wants these documents to learn how SaveOnSP's profits might flow to its member LLCs. This has nothing to do with JJHCS's alleged damages, which are based on the amounts of copay assistance that JJHCS has paid for patients on SaveOnSP-advised plans. Compl. ¶ 5, 23, 26, 89-105. The Court already denied JJHCS's attempt to gain discovery about the owners of SaveOnSP, and about SaveOnSP's broader finances, unrelated to the fees it receives related to Janssen drugs, Mar. 17, 2023 Hr'g Tr. At 23:23-24, and it should do so again.

Third, JJHCS seeks codes of conduct to understand SaveOnSP's internal standards and policies and to cross-examine SaveOnSP's executives about whether they complied with them. Whether SaveOnSP has such codes and whether its executives complied with them is utterly irrelevant. JJHCS brings no claim for breach of SaveOnSP's internal standards, nor could it. This is nothing like JJHCS's cited cases, in which an employee handbook was relevant to a wrongful termination claim, *Carey v. Foster Wheeler Corp.*, No. 89-325, 1991 WL 10033 (D.N.J. Jan. 23, 1991), or a police department's code of conduct was relevant to a police misconduct claim, *Williams v. City of Hartford*, 2016 WL 1732719 (D. Conn. May 2, 2016). JJHCS says that it alleges that SaveOnSP's conduct harmed it and its patients. But whether that conduct breached some internal policy is irrelevant to whether that conduct harmed JJHCS or the public. SaveOnSP has produced a mountain of material regarding its communications with patients—including over 140,000 call records—which are the core of JJHCS's actual claims.[2] SaveOnSP has similarly produced records of internal audits of calls received by its call center employees. "[D]elving deeper would be a fishing expedition." *Six v. State Farm Mut. Auto. Ins. Co.*, No. 20-CV-3219-DDD-SKC, 2022 WL 510362, at *1 (D. Colo. Feb. 19, 2022) (where defendant had produced a specific document relating to its incentive plan that was relevant to plaintiff's bad faith and breach of contract claims, denying request for additional documents regarding that plan as a "bridge too far"). JJHCS is not helped by its cited cases—*Dello Russo v. Nagel*, 358 N.J. Super. 254, 268 (App. Div. 2003); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 744 (N.Y. 1995)—neither of which concerned the production of documents nor uses the violation of corporate policies to prove the GBL or tortious interference claims.

Finally, JJHCS seeks SaveOnSP's by-laws, but does not even attempt to explain how they could be relevant to its claims.

The Court should deny JJHCS's request.

* * *

---

[2] JJHCS asserts that SaveOnSP refused to produce transcripts of these calls. This is grossly misleading. For most of its existence, SaveOnSP did not record or transcribe the calls. SaveOnSP has identified hundreds of thousands of calls that it did record and transcribe, but it would be unreasonably burdensome to export them all using SaveOnSP's current systems. SaveOnSP invited JJHCS to review the call center records that it produced and identify specific calls for which it wishes to receive transcripts and records. *See*, Mar. 29, 2023 Ltr. from A. Dunlap to H. Sandick at 4.

Hon. Cathy Waldor, U.S.M.J.
June 2, 2023
Page 8

The parties appreciate the Court's attention to this matter.


Respectfully submitted,


/s/ *Jeffrey J. Greenbaum*

Jeffrey J. Greenbaum
Katherine M. Lieb
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*


/s/ *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

David Elsberg (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

Hon. Cathy Waldor, U.S.M.J.
June 2, 2023
Page 9

deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# Exhibit 1

E. Evans Wohlforth, Jr.
Robinson & Cole
666 3rd Ave #20
New York, NY 10174
212-451-2954
ewohlforth@rc.com

David Elsberg (*admitted pro hac vice*)
Andrew R. Dunlap (*admitted pro hac vice*)
Meredith Nelson (*admitted pro hac vice*)
Elizabeth Snow (*admitted pro hac vice*)
Dominic Budetti (*admitted pro hac vice*)
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
delsberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com
dbudetti@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., | Civil Action No. 22-2632 (ES) (CLW) |
| Plaintiff, | **DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| v. | |
| SAVE ON SP, LLC, | |
| Defendant. | |

To:    Jeffrey J. Greenbaum, Esq.
       SILLS CUMMIS & GROSS, P.C.
       One Riverfront Plaza

Newark, New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New York

*Attorneys for Plaintiff Johnson & Johnson*
*Health Care Systems Inc.*

Pursuant to Federal Rule of Civil Procedure 34, Defendant Save On SP, LLC ("Save-OnSP"), by and through its undersigned counsel, responds and objects to Plaintiff Johnson & Johnson Health Care Systems Inc.'s ("JJHCS") Fourth Set of Requests for Production, dated April 18, 2023 (the "Requests"). If SaveOnSP learns that in some material respect its responses are incomplete or incorrect, SaveOnSP will correct them if the additional or corrective information has not otherwise been made known to JJHCS during the discovery process or in writing. Fed. R. Civ. P. 26(e)(1)(A).

## **GENERAL OBJECTIONS**

1.    JJHCS's Instruction 30 does not define the Time Period as agreed upon by the parties or with specificity. SaveOnSP objects to each of these Requests to the extent that they seek documents beginning January 1, 2015. SaveOnSP also renews its objections to each of these Requests to the extent that they seek documents "through the present." Since the parties have agreed that the relevant time period for the purposes of discovery is between April 1, 2016 through July 1, 2022, SaveOnSP limits its responses herein to documents from April 1, 2016 through July 1, 2022.

## OBJECTIONS TO DEFINITIONS

2.      SaveOnSP objects to the definition of "Annual Reviews" as vague and overbroad. SaveOnSP understands "Annual Reviews" to refer to certain compilations of data concerning claims volume, enrollment statistics, plan savings, business overviews, and status updates relating to client health plans, requested by Express Scripts in response to requests made by health plans to Express Scripts.

3.      SaveOnSP objects to the definition of the term "SaveOnSP" as including attorneys and accountants who may be outside of SaveOnSP's possession, custody, and control. SaveOnSP interprets the term "SaveOnSP" to mean SaveOnSP, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, represent-atives, directors, officers, employees, committees, and all persons or entities acting or purporting to act on behalf or under the control of SaveOnSP.

4.      SaveOnSP objects to the definition of "SaveOnSP Program," as described in Com-plaint ¶¶ 9-17 and ¶¶ 50-88, because it mischaracterizes SaveOnSP's services. SaveOnSP will not use this definition.

5.      SaveOnSP objects to the definition of "You" and "Your" to the same extent that it objects to the definition of "SaveOnSP."

6.      SaveOnSP objects to the definition of "Drug List" to the extent that it objects to the definition of the "SaveOnSP Program."

## OBJECTIONS TO INSTRUCTIONS

7.      SaveOnSP objects to Instruction No. 21 in Plaintiff's Fourth Set of Requests for Production to the extent that JJHCS attempts to impose requirements on SaveOnSP beyond those required by the Federal Rules of Civil Procedure, agreed to by the parties, or ordered by the Court.

8.      SaveOnSP objects to Instruction No. 23 in Plaintiff's Fourth Set of Requests for Production and Instruction to the extent that it asks SaveOnSP to produce Documents and Communications outside of its possession, custody, and control or asks SaveOnSP to provide information beyond that which SaveOnSP can identify after a reasonable search. SaveOnSP will produce relevant, non-privileged documents within its possession, custody, or control that it can identify after a reasonable search.

9.      SaveOnSP objects to Instruction No. 25 in Plaintiff's Fourth Set of Requests for Production to the extent that JJHCS attempts to impose requirements on SaveOnSP beyond those required by the Federal Rules of Civil Procedure, agreed to by the parties, or ordered by the Court.

10.     SaveOnSP objects to the definition of the term "copay" as used in the Complaint. SaveOnSP interprets the term "copay" to mean the portion of a drug's cost, as determined by the plan, owed by the patient at point of sale.

11.     SaveOnSP uses the terms "Essential Health Benefits," "Janssen Drugs," and "Non-Essential Health Benefits" as defined in SaveOnSP's First Request for Production of Documents to JJHCS, dated November 11, 2022.

## SPECIFIC RESPONSES AND OBJECTIONS

**REQUEST NO. 60:** All documents and communications concerning the origin of the relationship between SaveOnSP and Express Scripts.

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents prior to April 1, 2016 and after July 1, 2022. SaveOnSP will not produce such documents.

SaveOnSP objects to this Request to the extent that it seeks documents that do not concern SaveOnSP's services at issue in this action, as such documents are irrelevant to the claims or defenses in this action. SaveOnSP will not produce such documents.

4

SaveOnSP objects to this Request as not proportional to the needs of the case to the extent that it seeks all documents and communications concerning the relationship between SaveOnSP and Express Scripts regarding SaveOnSP's services at issue in this action beyond those identified during a reasonable search. SaveOnSP will not produce such documents.

SaveOnSP objects to this Request because the burden and expense of producing all documents and communications concerning the relationship between SaveOnSP and Express Scripts regarding SaveOnSP's services outweighs any marginal relevance of the material requested. SaveOnSP will not produce such documents.

SaveOnSP objects to this Request to the extent that it seeks documents concerning payments made between Express Scripts and SaveOnSP beyond those sufficient to show the amounts of those payments, as such information is cumulative. SaveOnSP will not produce such documents.

SaveOnSP objects to this Request to the extent that it seeks documents outside of SaveOnSP's possession, custody, or control.

SaveOnSP will produce documents and communications from April 1, 2016 to July 1, 2022 identified during a reasonable search concerning the origin of the relationship between SaveOnSP and Express Scripts regarding SaveOnSP's services at issue in this action.

**REQUEST NO. 61:** All SaveOnSP business plans, including without limitation any monthly, quarterly, or annual business plans.

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents prior to April 1, 2016 and after July 1, 2022.

SaveOnSP objects to the undefined term "business plans" as vague and ambiguous. SaveOnSP interprets "business plans" to mean internal documents prepared by SaveOnSP that define its financial objectives and performance as a company, including its assets and liabilities.

SaveOnSP objects to this Request because it seeks documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request because the burden and expense of producing all such information outweighs the marginal relevance of the material requested.

SaveOnSP will not produce documents in response to this Request.

**REQUEST NO. 62:** All corporate governance documents for SaveOnSP, from its founding to the present, including but not limited to its Articles of Organization and any amendments thereto, bylaws, operating agreements, or codes of conduct.

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents prior to April 1, 2016 and after July 1, 2022.

SaveOnSP objects to the undefined term "Articles of Organization" as vague and ambiguous. SaveOnSP understands "Articles of Organization" to mean the official document used to create a limited liability company.

SaveOnSP objects to the undefined term "any amendments thereto" as vague. SaveOnSP interprets "any amendments thereto" to mean any updates, additions, or changes to the official document used to create a limited liability company.

SaveOnSP objects to the undefined term "bylaws" as vague and ambiguous. SaveOnSP interprets "bylaws" to mean internal guidelines for a company's internal governance.

SaveOnSP objects to the undefined term "operating agreement" as vague and ambiguous. SaveOnSP interprets "operating agreement" to mean an internal agreement among SaveOnSP's members.

SaveOnSP objects to the undefined term "codes of conduct" as vague and ambiguous. SaveOnSP interprets "codes of conduct" to mean internal guidelines or rules governing the conduct of SaveOnSP's employees.

SaveOnSP objects to this Request because it seeks documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request because the burden and expense of producing all requested documents outweighs any marginal relevance of the material requested.

SaveOnSP objects to this Request to the extent it asks SaveOnSP to produce documents that are publicly available.

SaveOnSP will not produce documents in response to this Request.

**REQUEST NO. 63:** All documents and communications relating to Annual Reviews for each health plan participating in the SaveOnSP program, including but not limited to discussions of claims volume, enrollment statistics, and plan savings.

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents prior to April 1, 2016 and after July 1, 2022. SaveOnSP will not produce such documents.

SaveOnSP objects to this Request because there is no "SaveOnSP Program" as defined in the Requests. SaveOnSP interprets this term to mean the services that it provides to health plans.

SaveOnSP objects to this Request to the extent that it seeks documents that do not concern CarePath, SaveOnSP's services, or Janssen Drugs, because such documents are irrelevant to the claims or defenses in this action. SaveOnSP will not produce such documents.

SaveOnSP objects to this Request to the extent that it seeks documents outside of Save-OnSP's possession, custody, or control.

SaveOnSP objects to this Request to the extent that it seeks documents beyond the final Annual Reviews that SaveOnSP has prepared for its health plan clients, as such documents are cumulative of the information in the final reviews. SaveOnSP will not produce such documents.

SaveOnSP will produce final copies of Annual Reviews prepared from April 1, 2016 to July 1, 2022 for any health plan that requested that SaveOnSP prepare such a review that can be identified after a reasonable search.

**REQUEST NO. 64:** All communications between SaveOnSP and Breakwall Holdings.

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents prior to April 1, 2016 and after July 1, 2022.

SaveOnSP objects to this Request because it seeks documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request because the burden and expense of producing the requested documents outweighs any marginal relevance of the material requested.

SaveOnSP objects to this Request to the extent that it seeks documents outside of SaveOnSP's possession, custody, or control.

SaveOnSP will not produce documents in response to this Request.

**REQUEST NO. 65:** All documents concerning the relationship between SaveOnSP and Breakwall Holdings, including documents sufficient to show all transactions between SaveOnSP and Breakwall Holdings.

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents prior to April 1, 2016 and after July 1, 2022.

SaveOnSP objects to this Request because it seeks documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request because the burden and expense of producing the requested documents outweighs any marginal relevance of the material requested.

SaveOnSP objects to this Request to the extent that it seeks documents outside of SaveOnSP's possession, custody, or control.

SaveOnSP will not produce documents in response to this Request.

**REQUEST NO. 66:** All communications between SaveOnSP and Medequity Holdings.

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents prior to April 1, 2016 and after July 1, 2022.

8

SaveOnSP objects to this Request because it seeks documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request because the burden and expense of producing the requested documents outweighs any marginal relevance of the material requested.

SaveOnSP objects to this Request to the extent that it seeks documents outside of SaveOnSP's possession, custody, or control.

SaveOnSP will not produce documents in response to this Request.

**REQUEST NO. 67:** All documents concerning the relationship between SaveOnSP and Medequity Holdings, including documents sufficient to show all transactions between SaveOnSP and Medequity Holdings.

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents prior to April 1, 2016 and after July 1, 2022.

SaveOnSP objects to this Request because it seeks documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request because the burden and expense of producing the requested documents outweighs any marginal relevance of the material requested.

SaveOnSP objects to this Request to the extent that it seeks documents outside of SaveOnSP's possession, custody, or control.

SaveOnSP will not produce documents in response to this Request.

**REQUEST NO. 68:** Documents sufficient to show all reasons for SaveOnSP's decision to remain "closed" to new business or customers in or around January 2023.[1]

---

[1] *See* Premera Blue Cross, *SaveOnSP Program Impacted by Drug Manufacturer Changes* (January 12, 2023) (attached as Exhibit 1 to JJHCS's Fourth Set of Requests for Production) ("At this time SaveOnSP is still closed to new sales.").

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents prior to April 1, 2016 and after July 1, 2022.

SaveOnSP is unable to respond or object to this Request, as it is not aware of any decision by SaveOnSP "to remain 'closed' to new business or customers in or around January 2023." Save-OnSP invites JJHCS to meet and confer regarding this request. To avoid doubt, SaveOnSP reserves all relevant objections, including but not limited to those based on relevance, burden, and lack of possession, custody, and control.

**REQUEST NO. 69:** All communications with Premera Blue Cross related to matters set forth in the January 12, 2023 article *SaveOnSP Program Impacted by Drug Manufacturer Changes*.

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents out-side of SaveOnSP's possession, custody, or control.

SaveOnSP objects to this Request to the extent that any such communications within its possession, custody, or control, have already been produced to JJHCS by third-party Premera Blue Cross.

SaveOnSP will produce documents responsive to this Request that can be identified after a reasonable search.

**REQUEST NO. 70:** All documents and communications related to the January 12, 2023 article *SaveOnSP Program Impacted by Drug Manufacturer Changes*.

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents out-side of SaveOnSP's possession, custody, or control.

SaveOnSP objects to this Request to the extent that such documents have already been produced to JJHCS by third-party Premera Blue Cross.

SaveOnSP will produce documents responsive to this Request that can be identified after a reasonable search.

**REQUEST NO. 71:** All documents and communications relating to Express Script's "Co-pay Assurance plan."[2]

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents prior to April 1, 2016 and after July 1, 2022.

SaveOnSP objects to the undefined Express Script's "Co-pay Assurance plan" as vague and ambiguous. SaveOnSP understands Express Script's "Co-pay Assurance plan" to refer to the program referenced in Exhibit 2 of Plaintiff's Fourth Set of Requests for Production.

SaveOnSP objects to this Request because it seeks documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request because the burden and expense of producing all such information outweighs any marginal relevance of the material requested.

SaveOnSP is unaware of any "Co-pay Assurance plan" provided by Express Scripts. Save-OnSP is unaware of any documents relating to Express Script's "Co-pay Assurance plan" that are in its possession, custody, and control.

SaveOnSP will not produce documents in response to this Request.

Dated:  May 18, 2023                    By:  /s/ E. Evans Wohlforth, Jr.
                                             E. Evans Wohlforth, Jr.
                                             Robinson & Cole
                                             666 3rd Ave #20
                                             New York, NY 10174
                                             212-451-2954
                                             ewohlforth@rc.com

                                             David Elsberg
                                             Andrew R. Dunlap

---

[2] *See* Express Scripts, *Express Scripts® Further Advances Transparency and Affordability for Consumers and Clients* (Apr. 13, 2023) (attached as Exhibit 2 to JJHCS's Fourth Set of Requests for Production).

Meredith Nelson
Elizabeth Snow
Dominic Budetti
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
delsberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com
dbudetti@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# Exhibit 2

# Exhibit 3

150324000

# ARTICLES OF ORGANIZATION
## OF
### SAVE ON SP, LLC

237

Under Section 203 of the Limited
Liability Company Law

FIRST:        The name of the limited liability company is Save on SP, LLC.

SECOND:        The County within the State of New York in which the office of the Limited

Liability Company is to be located is Erie County.

THIRD:        The Secretary of State is hereby designated as the agent of the limited liability

company upon whom process against it may be served.  The post office address within or without this

state to which the Secretary of State shall mail a copy of process against the limited liability company

served upon him or her is:

> Brian N. Lewandowski, Esq.
> Lewandowski & Associates
> 721 Center Road
> West Seneca, New York 14224

FOURTH:        The limited liability company is to be managed by (check the appropriate box):

X   One or more members

☐    A class or classes of members

☐    One or more managers

☐    A class or classes of managers

IN WITNESS WHEREOF, this certificate has been subscribed this 23rd day of March 2015, by the undersigned who affirms that the statements made herein are true under the penalties of perjury.

Brian N. Lewandowski
Organizer

S:\BNLCLT\COR\1540\ARTICLES OF ORGANIZATION032315

UNI-37

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED

MAR 24 2015

TAX $ _____

BY: _____

## ARTICLES OF ORGANIZATION

### OF

### SAVE ON SP, LLC

Under and Pursuant to Section 203 of the Limited Liability Company Law
of the State of New York

RECEIVED
2015 MAR 24  AM 9: 15

Lewandowski & Associates
721 Center Road
West Seneca, NY  14224

Customer Reference # SAVEO46451

DRAWDOWN

*150625000 708*

# CERTIFICATE OF PUBLICATION

## OF

## SAVE ON SP, LLC

**Under and Pursuant to Section 206 of the Limited Liability Company Law
of the State of New York**

The undersigned is the Authorized Person of SAVE ON SP, LLC.

The articles of organization were filed by the Department of State on:
March 24, 2015.

The published notices described in the annexed affidavits of publication
contain all of the information required by Section 206 of the Limited Liability Company
Law.

The newspapers described in such affidavits of publication satisfy the
requirements set forth in the Limited Liability Company Law and the designation made
by the county clerk.

I certify the foregoing statements to be true under penalties of perjury.

Dated: May 22, 2015

_____
Brian N. Lewandowski

S:\bnlclt\cor\1540\docs\Cert.Pub.

# AM-POL EAGLE

3620 Harlem Road
Cheektowaga, New York 14215
716-835-9454, Fax: 716-835-9457
advertising@ampoleagle.com

Affidavit of Publication Under Section 206 of the Limited Liability Company Law
State of New York
County of Erie, SS:

MAY 18, 2015

The undersigned, is the Publisher of the
AM-POL EAGLE, a Weekly Newspaper published
in Erie County, New York. A notice regarding,
SAVE ON SP, LLC

was published in said newspaper once each
week for 6 weeks, commencing
on 4/9/15 and ending on 5/14/15

The Text of the Notice as published in said
newspaper is as set forth below, or in the annexed
exhibit. This newspaper has been designated by
the Clerk of Erie County for this purpose.

By: _Christine Kane_

Christine Kane, Authorized Designee of
Roger Puchalski, Publisher
of Am-Pol Eagle

SWORN TO ME ,
THIS 18 TH DAY OF MAY
2015

Notary Public, Erie County New York

BRITTANY L KALENDA
Lic. #01KA6313417
Notary Public-State of New York
Qualified in Erie County
COMM. EXP. 10/20/2018

**LEGAL NOTICE**

SAVE ON SP, LLC filed Articles of Organization with the Secretary of State of New York on 3-24-2015. The office of the Limited Liability Company shall be located in Erie County, New York. The Secretary of State has been designated as the Agent of the Limited Liability Company upon whom process against it may be served and the Secretary of State shall mail a copy of any process served upon him or her to Brian H. Lewandowski, Lewandowski & Associates, 721 Center Road, West Seneca, New York 14224. The purpose of the Limited Liability Company is to engage in any lawful act or activity for which limited liability companies may be organized under the New York Limited Liability Company Law provided that the Company will not engage in any activity that requires permits, licenses or the like without first obtaining the same.          4/9-5/14/15

# AFFIDAVIT OF PUBLICATION

## Business First

### 465 MAIN STREET

### BUFFALO, N.Y. 14203-1793

Under Section **206** of the Limited Liability Company Law, State of New York, County of Erie, ss.:

The undersigned is the authorized designee of **John J. Connors**, publisher of Business First, a weekly newspaper published in Buffalo, New York. A notice regarding **Save on SP, LLC** was published in said newspaper once in each week for **six** (6) successive weeks, commencing on **April 10, 2015** and ending on **May 15, 2015**. The text of the notice as published in said newspaper is as set forth below, or in the annexed exhibit. This newspaper has been designated by the Clerk of Niagara County, as a newspaper of record in this county, and as such, is eligible to publish such notices.

Signature _____

Printed Name: Dawn Taibbi

Subscribed and sworn to before me this **15th** day of **May**, **2015**.

_____
Notary Public

KIMBERLY J. SCHAUS
Notary Public, State of New York
Qualified in Erie County
My Commission Expires February 8, 2018

**LEGAL NOTICE**

Save on SP, LLC filed Articles of Organization with the Secretary of State of New York on 3-24-2015. The office of the Limited Liability Company shall be located in Erie County, New York. The Secretary of State has been designated as the Agent of the Limited Liability Company upon whom process against it may be served and the Secretary of State shall mail a copy of any process served upon him or her to Brian N. Lewandowski, Lewandowski & Associates, 721 Center Road, West Seneca, New York 14224. The purpose of the Limited Liability Company is to engage in any lawful act or activity for which limited liability companies may be organized under the New York Limited Liability Company Law provided that the Company will not engage in any activity that requires permits, licenses or the like without first obtaining the same.

04/10/15; 04/17/15; 04/24/15; 05/01/15; 05/08/15; 05/15/15



**UNI-37**

CERTIFICATE OF PUBLICATION

OF

SAVE ON SP, LLC

Under and Pursuant to Section 206 of the Limited Liability Company Law
of the State of New York

Lewandowski & Associates
721 Center Road
West Seneca, NY 14224

Customer Ref. #: SAVEO54022

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED   JUN 25 2015
TAX $
BY:

**DRAWDOWN**

6