# EXHIBIT A

July 18, 2023

**VIA ECF**

Hon. Cathy Waldor, U.S.M.J.
U.S. District Court for the District of New Jersey
50 Walnut Street, Room 4040
Newark, NJ 07102

> Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
> ***No. 2:22-cv-02632 (ES) (CLW)***

Dear Judge Waldor:

Defendant Save On SP, LLC ("SaveOnSP") writes to request that the current discovery schedule in the above-referenced action be extended by two months, moving the deadline for substantial completion from July 24, 2023 to September 24, 2023.

SaveOnSP states that, during the June 6, 2023 conference, Your Honor instructed it to renew its application for an extension if SaveOnSP believed that it needed additional time—particularly to address disputes between the parties. June 6, 2023 Hr'g Tr. at 57:8-9 ("[W]e'll have to decide [the parties' disputes], and then if more time is needed, I can give you more time."). During an off-the-record session at the June 27, 2023 conference, SaveOnSP stated that it would be moving for an extension and JJHCS stated that it would oppose any such motion, confirming that the parties are at impasse. The Court directed SaveOnSP to explain in its motion what it has done to date, how much more time it needs, and why. This application is in line with those instructions.

Plaintiff Johnson & Johnson Health Care Systems, Inc. ("JJHCS") states that the parties have never met and conferred about SaveOnSP's application, which JJHCS opposes. As detailed below, SaveOnSP has chosen to willfully disregard an order of this Court. The Court only recently denied a materially identical SaveOnSP application and ordered SaveOnSP to substantially complete its document production by July 24, 2023. SaveOnSP simply ignored that Order and made no apparent effort to comply by devoting new resources to production. Worse, even now, SaveOnSP does not candidly admit its failing and seek the Court's indulgence—instead it disingenuously seeks to justify its request by claiming JJHCS's production is incomplete. It is not. JJHCS has substantially completed its production. SaveOnSP's casual disregard of this Court's Order merits a strong response.

### *SaveOnSP's Position*

SaveOnSP has worked diligently to produce documents in a timely manner, but it needs an additional two months to substantially complete its production. Courts grant extensions of discovery schedules upon a showing of "good cause," Fed. R. Civ. P. 16(b)(4), which a party shows if it "demonstrate[s] that it cannot reasonably meet the [C]ourt's deadlines despite its diligence." *In re*

Hon. Cathy Waldor, U.S.M.J.
July 18, 2023
Page 2

*Martin & Harris Priv. Ltd.*, No. CV2017070MCAMAH, 2022 WL 3040948, at *3 (D.N.J. Aug. 2, 2022). SaveOnSP easily meets that standard here.

**SaveOnSP needs two more months to finish its massive document production.**

SaveOnSP is reviewing a huge amount of material. In response to JJHCS's initial document requests, SaveOnSP proposed generous search parameters, including 36 search terms, to search the documents of 17 custodians, yielding approximately 250,000 documents for review. In response to JJHCS's many requests since then, SaveOnSP has added 9 more custodians, added nearly 30 new search terms, and expanded its search period by nine months, increasing the number of documents it must review by more than 350,000—a total of over 600,000 custodial documents. Just since the original substantial completion deadline of June 9, 2023, at JJHCS's request, Save-OnSP has added 2 more custodians and 9 more search terms, producing another approximately 20,000 documents for review. SaveOnSP also identified for review 70,000 documents from non-custodial sources, plus over 185,000 call center records, and reams of transaction data.

SaveOnSP is reviewing these documents as promptly as it reasonably can. It has employed dozens of reviewers, incurring many millions of dollars in cost. By the original substantial completion date of June 9, 2023, it produced nearly 100,000 documents. It produced approximately another 20,000 documents on June 23, 2023, and anticipates producing approximately another 20,000 before the current substantial completion date of July 24, 2023—a total of approximately 140,000 documents. It has also reviewed and produced 140,000 records of calls between its patient service representatives and patients who may be discussing a Janssen Drug, and 116,000 lines of data regarding patient transactions. SaveOnSP has responded to almost 30 discovery letters from JJHCS and agreed to prioritize production of documents on numerous topics. Any suggestion by JJHCS that SaveOnSP has been anything less than diligent is simply false, as the numbers show.

SaveOnSP needs some additional time to complete its work. It still has approximately 110,000 custodial and non-custodial documents that it needs to finish reviewing. Barring any large new requests by JJHCS, SaveOnSP projects substantially completing its document production by September 24, 2023. (Previously, SaveOnSP had projected taking until October 6, 2023.) If the Court grants this request, SaveOnSP does not anticipate moving for a further extension of the substantial completion deadline based on its own document production. In light of the amount of material that SaveOnSP needs to review, its diligence in reviewing and producing that material, and the modest amount of additional time that it seeks, SaveOnSP has more than shown good cause for an extension of the discovery schedule. *See Bolton v. Bay Valley Foods, LLC*, No. 3:17-cv-69, 2019 WL 529333 (W.D. Penn. Feb. 11, 2019) (granting motion to extend discovery and noting that movant's counsel took multiple actions to move the case along during the discovery period).

**JJHCS needs at least two more months to remedy glaring deficiencies in its paltry document production.**

JJHCS's opposition to any discovery extension is part of its transparent strategy to withhold critical documents while running out SaveOnSP's time to compel their production. The Court

Hon. Cathy Waldor, U.S.M.J.
July 18, 2023
Page 3

should not allow it. Courts find good cause for an extension when the party opposing an extension resists production. *See 800 Cooper Fin., LLC v. Liu*, No. CV 16-736 (JHR/SAK), 2023 WL 2523853, at *3 (D.N.J. Mar. 15, 2023) (finding good cause to reopen discovery where counter-claim defendants "resisted the production" of underlying discovery); *Gordian Medical, Inc. v. Vaughn*, Civil Action No. 22-319, 2023 WL 3340207 (D. Del. May 10, 2023) (granting motion to extend discovery where movant acted diligently but was obstructed by the opposing party). And this Court recognized that if it must resolve additional discovery disputes, then "the schedule would get pushed out." June 6, 2023 Hr'g Tr. at 56:25-57:10. The reality is that JJHCS will need time to produce the numerous documents that it is withholding.

In response to SaveOnSP's initial document requests, JJHCS objected to producing docu-ments on many important topics including (1) the drafting and enforcement of CarePath's terms and conditions dated before January 1, 2017;[1] and (2) financial and operational information in-cluding the basis for CarePath's budget and JJHCS's return on investment on CarePath. It also refused to produce any documents from custodians at Johnson & Johnson entities other than JJHCS. The parties met and conferred extensively, but JJHCS refused to budge. In a joint letter of February 24, 2023, SaveOnSP moved to compel production of this material (ECF No. 79).

In opposing SaveOnSP's motion to compel, JJHCS promised the Court that it would make a substantial production and would prioritize production of documents relating to CarePath's terms and conditions and to financial information related to injury and damages. JJHCS insisted that SaveOnSP should wait to review those productions before seeking to compel additional infor-mation. Mar. 17, 2023 Hr'g Tr. at 31:25-33:23, 40:14-25, 45:15-46:12. The Court agreed, and ordered JJHCS to prioritize those productions. *Id.* at 36:5-16, 47:10-17.

JJHCS did not do what it promised, or what the Court ordered.

JJHCS did not prioritize productions of key documents—it strung them out. Before June, JJHCS produced fewer than 5,300 documents. It waited to produce the great bulk of its produc-tion—over 10,000 more documents—until early June, just before the prior substantial completion deadline. It did not complete its court-ordered priority productions until the day of that deadline, June 9, 2023. *See* Ex. 2 (May 19, 2023 Ltr.); Ex. 3 (June 15, 2023 Email).

JJHCS's total production was also paltry—approximately 16,000 documents—miles away from the substantial production that it promised. By JJHCS's admission, it reviewed only 20,000 documents, June 27, 2023 Hr'g Tr. 65:10-21, limiting its custodians and its search terms. While it told the Court that it had produced from 18 custodians, *id.*, almost two-thirds of JJHCS's produc-tion—over 10,000 documents—came from just three custodians. JJHCS produced only a single document for one custodian, only 26 documents for another, and under 100 documents for another

---

[1] JJHCS has since agreed to produce documents on this topic back to April 1, 2016, but although JJHCS now concedes that the pertinent terms of the CarePath terms and conditions were drafted prior to 2016, it has not committed to producing those documents.

Hon. Cathy Waldor, U.S.M.J.
July 18, 2023
Page 4

two more. And while JJHCS highlighted its production from Katie Mazuk, a member of the Janssen Americas Leadership Team, *id.*, it only produced 370 documents from her files.

Unsurprisingly, SaveOnSP's initial review of JJHCS's belated production confirms that JJHCS is still withholding key documents. The parties are meeting and conferring, but more time will be required for JJHCS to either relent and produce the missing documents or for SaveOnSP to move the Court to compel JJHCS to do so.

*First*, JJHCS refused—until ordered by the Court at a recent conference—to search for relevant documents at Janssen, violating its fundamental obligation to conduct a reasonable investigation. *Cf. Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, 2007 WL 2758571, at *20 (C.D. Cal. Sep. 18, 2007) (stating that Rule 26 requires counsel to "make a reasonable investigation and effort to certify that the client has provided all information and documents available to it which are responsive to a discovery request"). JJHCS needs time to complete this search and update its interrogatories, as the Court ordered. June 29, 2023 Text Order (ECF No. 127). The parties will then need to negotiate the parameters of JJHCS's search for documents from Janssen custodians—potentially requiring Court intervention—and JJHCS will need time to review and produce those documents.

*Second*, JJHCS is still withholding critical information regarding CarePath's terms and conditions. SaveOnSP began identifying these deficiencies in May, *See* Ex. 1 (May 17, 2023 Ltr.), but JJHCS replied that it would not complete its production on the subject until June 9, 2023. Ex. 2. After reviewing that production, SaveOnSP confirmed that the deficiencies still exist. The parties met and conferred in June, and SaveOnSP sent a letter on June 29, 2023, asking for additional information, Ex. 5 (June 29, 2023 Ltr.), but JJHCS did not reply until July 17, 2023, and then largely refused SaveOnSP's requests. More time is needed for JJHCS to agree to remedy the deficiencies in this production or for SaveOnSP to bring this dispute to the Court and for JJHCS to then produce the missing documents.

*Third*, JJHCS is withholding information regarding its ongoing payment of CarePath funds in apparent contradiction of CarePath's terms and conditions. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ SaveOnSP asked JJHCS to expand its production regarding enforcement of CarePath's terms and conditions and its payment of Care-Path funds through the present, *See* Ex. 4 (June 12, 2023 Ltr.), but JJHCS refused. The parties are in the midst of meeting and conferring on this issue, and JJHCS will need time to produce these documents as well.

*Fourth*, JJHCS is also withholding key financial information going to JJHCS's alleged injury and damages. While SaveOnSP is completing its review of JJHCS's delayed production, it is clear that JJHCS is withholding documents related to the setting of the CarePath budget and the

Hon. Cathy Waldor, U.S.M.J.
July 18, 2023
Page 5

return on investment for CarePath. The parties will need time to meet and confer about this deficiency as well, and JJHCS will need time to produce the missing documents.

*Fifth*, JJHCS has been interfering with SaveOnSP's discovery from third parties. For example, JJHCS represented to the Court that its vendor TrialCard is "the administrator" of CarePath and stated that TrialCard was producing documents. June 27, 2023 Hr'g Tr. at 7:4–5, 90:2-6. In reality, TrialCard—represented by the same counsel as JJHCS—has produced only 131 documents and, until last week, refused to produce any documents from the files of any of its employees. Only after extensive meeting and conferring did TrialCard agree on July 6, 2023 that it would make a custodial production—but it has yet to explain how broad that production will be or when it will produce the documents. TrialCard will need time to complete this production and the parties will need time to address any deficiencies.

JJHCS's responses below are a series of falsehoods. *First*, JJHCS repeats the canard that SaveOnSP has delayed discovery. In fact, SaveOnSP has moved diligently and produced massive numbers of documents and data (unlike JJHCS). *Second*, JJHCS accuses SaveOnSP of willfully breaching the current substantial completion deadline. In fact, SaveOnSP has produced another 40,000 documents since the prior deadline, and Your Honor invited SaveOnSP to ask for more time if SaveOnSP believed it was needed. *Third*, JJHCS pretends that it did not know that SaveOnSP would seek an additional extension until last week. This too is false: At the June 27 conference, SaveOnSP told JJHCS and the Court that it would do, and the Court asked SaveOnSP to explain why in its application, as SaveOnSP now does. *Fourth*, JJHCS tries to change the legal standard by asserting that SaveOnSP's motion is one for reconsideration. It is not. It is a motion to adjust the schedule, subject to the "good cause" standard of Rule 15, which SaveOnSP easily meets based on the large volume of material it needs to review, its ongoing diligence in doing so, and the modest additional time it seeks. *Finally*, JJHCS again asserts that its document production is substantially complete. This is simply not true. The Court had to compel JJHCS to search the records of Janssen, which JJHCS should have done many months ago, and JJHCS continues to withhold large swaths of key information regarding CarePath's terms and conditions and its finances. JJHCS's assertion that SaveOnSP is raising these disputes "at the last minute" is especially ridiculous—SaveOnSP moved to compel on these issues months ago, the Court instructed SaveOnSP to wait to renew its motion until JJHCS completed its priority production, Mar. 17, 2023 Hr'g Tr. at 34:1-4; 35:17-19, JJHCS did not purport to complete that priority production until last month, Ex. 3, and is now slow-rolling the parties' negotiations to address the blatant deficiencies in that production.

This Court should not abet JJHCS's strategy of withholding key documents and trying to run out the clock to prevent SaveOnSP from obtaining them. SaveOnSP should be granted the time needed to extract relevant materials from JJHCS and third parties, and to complete its own substantial productions—the majority of which arose from JJHCS's specific requests. SaveOnSP respectfully asks that this Court extend the discovery schedule by two months.

Hon. Cathy Waldor, U.S.M.J.
July 18, 2023
Page 6

### *JJHCS's Position*

As set forth in another case by Your Honor:

> A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril. Indeed, [d]isregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of litigation, and reward the indolent and the cavalier.

*Arzadi v. Evanston Ins. Co.*, 2021 WL 753970, at *3 (D.N.J. Feb 25, 2021) (Waldor, J.) (quoting *Baker v. United States Marshal Serv.*, 2014 WL 2534927, at *2 (D.N.J. June 5, 2014)).

### **SaveOnSP Has Willfully Ignored the Court's Order**

SaveOnSP has consistently sought to frustrate the timely and efficient completion of fact discovery since this matter began in May 2022. This strategy is not surprising, because SaveOnSP misappropriates millions of dollars in manufacturer patient assistance funds every day. Thus, after this case was filed, SaveOnSP refused to participate in even a routine discovery conferral for months, delayed moving to stay discovery, and continued to stonewall for months even after its motion to stay was denied. *See* D.E. 111 at 3–5. Indeed, in the five months after the Court denied SaveOnSP's motion to stay discovery, SaveOnSP produced a grand total of forty-four documents. *Id.* at 4.

Last month, SaveOnSP sought to be rewarded for this pattern of delay with a four-month extension of the substantial completion deadline from June 9 to October 6. It set forth precisely the same grounds as it rehashes now: it characterized its own efforts as "diligent," and argued that JJHCS would need more time to produce ever more documents based on contrived disputes that SaveOnSP had apparently failed to timely advance. *Id.* at 2–3. These contentions, SaveOnSP insisted, "easily add[ed] up to good cause to extend the discovery schedule" by several months. *Id.* at 3.

JJHCS opposed any such extension, pointing out that SaveOnSP had chosen to delay production at every turn, even while JJHCS funds were being misappropriated and patients were suffering more due to SaveOnSP's misconduct with each passing day.

At a hearing on June 6, this Court disagreed with SaveOnSP's conclusion as to what the facts "easily add[ed] up to," and expressly rejected SaveOnSP's request for a months-long extension. The Court ruled unequivocally that SaveOnSP could have only an additional "45 days"

Hon. Cathy Waldor, U.S.M.J.
July 18, 2023
Page 7

to substantially complete its document production, "[n]ot four months. And let's keep rolling." June 6 Hearing Tr. at 57:4–10.[2]

This Court's ruling was not unclear, or unreasonable, or optional. SaveOnSP could have an extra 45 days to make good on its obligations, not several more months as SaveOnSP requested. The path before SaveOnSP was then clear. It needed to devote all due resources to substantially completing its document production by July 24. SaveOnSP has no paucity of resources. As SaveOnSP itself notes above, it is spending "many millions" of dollars on attorney fees. It brought no fewer than seven attorneys to the recent discovery conference—and has an army of lawyers beyond that working on the case. SaveOnSP could readily have ramped up the size and pace of its document review contract lawyer team and gotten the job done. SaveOnSP had no choice in the matter; it was under a Court Order to do so. But SaveOnSP did not even try.

Instead, as the Court will recall, at the end of a discovery conference focused on other matters on June 27—less than halfway through the extension period—counsel for SaveOnSP casually remarked to the Court that instead of complying with the deadline, SaveOnSP planned to ask for several ***more*** months, essentially demanding a do-over of the application it had already lost. In other words, even though there was still nearly a month left before the extended substantial completion deadline, SaveOnSP had already determined as of June 27 that it was not going to comply. JJHCS noted that it would strenuously oppose any such application because that is not how court orders work—SaveOnSP had already sought this relief and was denied it. It was under a binding obligation to substantially complete its document production by July 24.

Based on counsel's comments at that conference, JJHCS grew concerned that SaveOnSP was making no serious efforts to comply and instead intended to defy the Court's order. Accordingly, JJHCS wrote to SaveOnSP on July 5, asking SaveOnSP to confirm that it was "doing everything necessary in order to ensure that it meets the Court's July 24 deadline," and requesting "the courtesy of a prompt response." Ex. 8 (July 5 Letter from Mangi to Dunlap). SaveOn did not respond promptly, and indeed did not respond at all. Later that week, JJHCS noticed two depositions of SaveOnSP witnesses, but issued the notices "with the understanding that, consistent with Judge Waldor's rulings regarding the case schedule, SaveOnSP is on continued track to meet the July 24, 2023 deadline or substantial completion of its document production." Ex. 9 (July 7 Letter from Arrow to Dunlap). Again, SaveOn remained silent.

It was only after JJHCS followed up once again on July 11 that SaveOnSP finally revealed its intentions. SaveOnSP refused to provide the requested representation that it was devoting all

---

[2] SaveOnSP claims that Your Honor "invited" and even "instructed" SaveOnSP to seek further extensions. *See supra* at 1, 5. Not so. What the Court actually said was that more time might be needed to produce specific documents relevant to discrete disputes that the parties had yet to litigate—***not*** a blanket extension of substantial completion across the board, as SaveOnSP suggests. June 6 Hearing Tr. at 56:25–57:10 ("[A] schedule does not necessarily encompass disputes. . . . the disputes are sort of a time warp. You know, we'll have to decide them, and then if more time is needed, I can give you more time. So it's 45 days.").

Hon. Cathy Waldor, U.S.M.J.
July 18, 2023
Page 8

necessary resources to complying with the Court's order.  Instead of confirming that SaveOnSP was diligently working toward meeting the Court's deadline, SaveOnSP provided its first draft of the instant joint letter, which falsely claimed that the parties had met and conferred regarding SaveOnSP's request for reconsideration.  SaveOnSP thus reaffirmed that it still had no intention of even trying to comply; it apparently just assumed the Court was not serious or would not enforce its Order.  Having been turned aside in its request to have until October 6 to substantially complete its document production, SaveOnSP now seeks to have until September 24—giving it virtually the same extension of time that the Court denied just weeks ago.

Again, it would be one thing is SaveOnSP had made every effort to comply with the Court's June 6 ruling to complete its document production by July 24.  In that case, SaveOnSP would have had no hesitation representing that it had made every effort to comply but was unable to do so.  And in that case, SaveOnSP would have submitted an attorney declaration detailing just how it ramped up its production efforts after the Court's June 6 ruling to try and meet the deadline.  But SaveOnSP has not made any such representations, because it chose to simply pretend the Court's Order did not exist and assumed the Court would simply accept SaveOnSP's choice to disobey its Order.  It reaffirmed that choice through its comments at the June 27 hearing and through its response or lack thereof to JJHCS's July 5 letter.  This cannot stand.

**SaveOnSP's Failures Do Not Justify Reconsideration of the Court's Prior Ruling**

Nowhere in SaveOnSP's lengthy submission does it even mention the Court's denial of its previous request, presumably because SaveOnSP knows it cannot meet the high standard for reconsideration of that ruling.  *See generally Sandoval v. Midland Funding, LLC*, 2021 WL 486904, at \*4–5 (D.N.J. Feb. 9, 2021) (denying reconsideration of discovery ruling and noting that such an application is "an extremely limited procedural vehicle" that is only proper where there has been new law, new evidence, or "the need to correct a clear error of law or fact or to prevent manifest injustice"); L. Civ. R. 7.1(i) (requiring reconsideration motions to be filed "within 14 days" of the previous ruling, and to specifically identify "the matter or controlling decisions which the party believes the Judge has overlooked").[3]

---

[3] SaveOnSP claims above that its application is subject to the "good cause standard of Rule 15," not the standard governing requests for reconsideration of previous court rulings.  *Supra* at 5.  That is not correct— SaveOnSP's **previous** application was subject to the "good cause" standard and the Court denied it.  Now that SaveOnSP is asking the Court to reverse its prior ruling, the reconsideration standard plainly governs. *See, e.g.*, *Sandoval*, 2021 WL 486904, at \*3; *Rotex Global, LLC v. Gerard Daniel Worldwide, Inc.*, 2019 WL 13161460, at \*1–2 (M.D. Pa. Dec. 13, 2019) (applying Third Circuit's reconsideration standard to party's request to modify scheduling order); *Reyes v. Zions First Nat'l Bank*, 2016 WL 913099, at \*1 (E.D. Pa. Mar. 9, 2016) (rejecting challenge to court's modification of case management order because "[r]ather than providing the Court with a valid basis for reconsideration, Defendants express their disagreement with the Court's Fourth Amended CMO and ask the Court to rethink what it has already thought through"); *Raritan Baykeeper, Inc. v. NL Indus.*, 2017 WL 29030, at \*2 (D.N.J. Jan. 2, 2014) (same).  Were it otherwise, nothing would prevent a vexatious litigant from making the same application over and over again—precisely what SaveOnSP is attempting here.  And even if SaveOnSP were correct that the Rule 16

Hon. Cathy Waldor, U.S.M.J.
July 18, 2023
Page 9

To be clear, there is no basis whatsoever for the Court to reconsider its ruling on this issue. There is nothing in SaveOnSP's new letter that was not in its old letter, which the Court duly considered and ultimately rejected.  SaveOnSP once again compliments its own "massive" discovery efforts, and much of its application is recycled almost word-for-word, e.g.:

| Old Letter, D.E. 111, at pp. 2–3 | *Supra* at p. 2 |
|---|---|
| SaveOnSP has "produced over 140,000 records of calls between SaveOnSP and patients using Janssen drugs, and 116,000 lines of data regarding patient transactions. Along the way, SaveOnSP has responded to 25 discovery letters from JJHCS and agreed to prioritize production of documents on numerous topics." | SaveOnSP has "produced 140,000 records of calls between its patient service representatives and patients who may be discussing a Janssen Drug, and 116,000 lines of data regarding patient transactions. SaveOnSP has responded to almost 30 discovery letters from JJHCS and agreed to prioritize production of documents on numerous topics." |

For good measure, SaveOnSP even repeats above its already-rejected argument that it "easily meets" the standard for the extension it seeks.  These arguments did not carry the day before and are no more compelling now.  The existing schedule—as well as the schedule that was in place before that—already assumed that the parties would need to professionally review and produce a meaningful number of documents.  That is not going above and beyond; it is the bare minimum obligation of parties to commercial litigation, especially well-funded parties represented by expensive and sophisticated counsel.  *See Syracuse Univ. v. Otis Elevator Co.*, 2010 WL 2680230, at *3 (N.D.N.Y. July 1, 2010) (defendant's excuses "fall far short of demonstrating good cause for the requested extension and disclose no unforeseen circumstances that were not contemplated, or could not have been foreseen, by the parties at the time the schedule in this case was issued").  In any event, setting all of SaveOnSP's hyperbole aside, the record reflects that SaveOnSP has in fact produced about 116,000 documents—a significant but not exactly herculean number, given that this matter has been pending for well over a year.

Nor do SaveOnSP's two new cases on this point change the calculus.  For one thing, both parties in *In re Martin & Harris* were seeking an extension of the schedule, so the facts in that case bear no resemblance to the instant dispute.  *See* 2022 WL 3040948, at *2–3 (D.N.J. Aug. 2, 2022). And the facts supporting that court's finding of "diligence" warranting a single 45-day extension (i.e., the same extension SaveOnSP **already received**) are completely absent here.[4]  Similarly,

---

"good cause" standard applies here, it still has not met its required showing.  "To show good cause, 'the moving party must 'demonstrate that a more diligent pursuit of discovery was impossible.'"  *E.g.*, *Konopca v. FDS Bank*, 2016 WL 1228844 (D.N.J. Mar. 29, 2016) (quoting *Alexiou v. Moshos*, 2009 WL 2913960, at *3 (E.D. Pa. Sept. 9, 2009)).  SaveOnSP has not even attempted to show that it was "impossible" to comply with the Court's June 6 Order.

[4] There, the defendant had originally been ordered on June 15 to produce a large volume of additional materials by July 31—in other words, it had to both start **and** finish production within seven weeks.  *See id.* at 2.  The court was ultimately persuaded that the defendant needed a modest 45-day extension to, among

Hon. Cathy Waldor, U.S.M.J.
July 18, 2023
Page 10

SaveOnSP's gloss on *Bolton v. Bay Valley Foods, LLC* conspicuously omits most of the Court's reasoning, i.e., that the movant's counsel was "a sole practitioner" and that the discovery period at issue "included the holiday season." 2019 WL 529333, at *2 (W.D. Pa. Feb. 11, 2019). That SaveOnSP—which, again, is misappropriating millions every day and brought seven lawyers to the most recent discovery conference—would claim to see itself in this ruling is laughable. SaveOnSP obviously has the resources to meet the Court's deadlines; what it lacks is the desire to do so.

**SaveOnSP's Discussion of JJHCS's Productions Does Not Justify Reconsideration Either**

Apparently recognizing that the record refutes its claims of diligence, SaveOnSP attempts a strange pivot: it presumes to seek an extension on JJHCS's behalf. *See supra* at 2. Once again, SaveOnSP tried this the last time it wanted to blow up the case schedule, claiming that the delay was needed so that JJHCS could complete its document production. And once again, the attempt is misbegotten on both the law and the facts.

On the law, even SaveOnSP's proposed "good cause" standard focuses on the diligence ***of the movant***; "[i]f that party was not diligent, the inquiry should end." *E.g.*, *Alexiou*, 2009 WL 2913960, at *3. In other words, Rule 16 does not permit a movant who has failed to act diligently to distract from that failure by pointing the finger at its adversary.

On the facts, JJHCS does not need "at least two more months" to substantially complete its document production. *Supra* at 2. JJHCS takes this case and court orders seriously, and so it has consistently devoted the necessary resources to meeting the Court's deadlines, including its deadlines for substantial completion. JJHCS's document production is already substantially complete. If SaveOnSP has a problem with that production, the solution is a motion to compel, not a motion to extend the schedule.

Regardless, SaveOnSP's arguments are without merit. SaveOnSP's protracted discussion of JJHCS's production boils down to one overarching theme: SaveOnSP wishes that JJHCS had more documents to produce that would be helpful to SaveOnSP's defense. For example, SaveOnSP grumbles that JJHCS's production to date is "approximately 16,000" documents, as though that is somehow proof positive that other, mysterious "key documents" are somehow "missing." *Supra* at 3. But as JJHCS already explained the last time SaveOnSP made this argument, it is no mystery why JJHCS has fewer documents to produce in this litigation than SaveOnSP. This case is about SaveOnSP's conduct, not JJHCS's, and for most of the discovery

---

other things, "pull hard drives, process significant amounts of electronic data, run searches . . . and then properly review that data for production and privilege." *Id.* at 3. Here, by contrast, SaveOnSP has not recently been ordered to significantly increase the scope of its production—many of the documents it has failed to timely produce are documents JJHCS asked for in May of ***last year***. In any event, SaveOnSP has already received the benefit of the single 45-day extension at issue in *In re Martin & Harris*; that case does not support SaveOnSP's request for endless further delays.

Hon. Cathy Waldor, U.S.M.J.
July 18, 2023
Page 11

period JJHCS did not even know that SaveOnSP existed (much less that SaveOnSP was surreptitiously siphoning funds from JJHCS's CarePath program). It is quite obvious that the proponent of a scheme of misappropriation will have many more documents relevant to that scheme than the victim who knew very little about it.

Similarly, SaveOnSP concedes that JJHCS has produced documents from 18 custodians, but complains that "over 10,000 documents[] came from just three custodians." *Id.* Yet the number of documents in each person's files is a function of what they generated in the ordinary course of JJHCS's business. There is nothing that JJHCS—or, for that matter, this Court—can do to assuage SaveOnSP's apparent unhappiness that some employees focused on relevant issues and wrote many responsive emails on the relevant subjects while others did not. Likewise, SaveOnSP contends that JJHCS did not produce certain documents until "early June, just before the prior substantial completion deadline." *Id.* But that just proves that JJHCS ramped up resources to meet the deadline, which is exactly what SaveOnSP should have done—and JJHCS appropriately prioritized various categories in prior productions at SaveOnSP's request. Regardless, all of these purported grievances are utterly irrelevant to the topic at hand, i.e., whether SaveOnSP has shown sufficient justification for reconsidering the Court's previous refusal to extend the substantial completion deadline for several more months. It has not.

The balance of SaveOnSP's application purports to identify various other areas in which SaveOnSP is unhappy with the number or nature of documents JJHCS has produced. *See id.* at 3–4. JJHCS disputes most of SaveOnSP's assertions, and in particular JJHCS disagrees that these are legitimate issues that SaveOnSP diligently pursued throughout the discovery period, versus throwing them at the wall at the last minute to justify the extension it seeks. Nor can the mere possibility of JJHCS being required to produce documents in the future justify an extension today. JJHCS has timely responded to the issues that SaveOnSP has raised and will continue to do so with regard to any outstanding queries.

At any rate, discrete categories of disputed documents that might be required to be produced in the future cannot support a wholesale extension of the entire substantial completion period. "Substantial" completion is just that; it does not mean that either JJHCS or SaveOnSP must produce every single document by July 24. The parties may continue to seek documents from each other, as they are currently doing. In fact, the Court's schedule ***already*** accounts for this reality by allowing both sides to continue serving document requests until September 13; fact discovery concludes a month later, on October 13. *See* D.E. 64 ¶¶ 1, 6. And where the parties cannot agree on the proper scope of production, those disputes may well be brought to Your Honor, who may or may not order either party to supplement its productions in certain respects. But as to documents that SaveOnSP already ***knows*** it must produce (and, indeed, has known for many months), there is no basis for reconsideration of the Court's prior ruling.

Once again, SaveOnSP badly misses the mark with its newly cited cases. In *800 Cooper Finance, LLC v. Liu*, the court reopened discovery after the defendant defied a court order to produce documents (conduct for which the defendant was formally sanctioned). *See* 2023 WL 2523853, at *3 (D.N.J. Mar. 15, 2023). Similarly, *Wingnut Films, Ltd. v. Katja Motion Pictures*

Hon. Cathy Waldor, U.S.M.J.
July 18, 2023
Page 12


*Corp.*, a California case, involved sanctions for failure to comply with court orders.  *See* 2007 WL 2758571, at *19–20 (C.D. Cal. Sept. 18, 2007).  Neither of those cases has the slightest relevance here, other than perhaps as an illustration that sanctions can be appropriate when a party fails to obey court orders.  The court in *Gordian Medical, Inc. v. Vaughn*, meanwhile, denied the months-long extension sought and granted only an additional three weeks—less time, in other words, than the extension SaveOnSP has already received.  2023 WL 3340207, at *2–3 (D. Del. May 10, 2023).  None of these precedents support SaveOnSP's application for reconsideration, and the Court should deny it.

* * *

The parties appreciate the Court's attention to this matter.


Respectfully submitted,


/s/ Jeffrey J. Greenbaum

Jeffrey J. Greenbaum
Katherine M. Lieb
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*

Hon. Cathy Waldor, U.S.M.J.
July 18, 2023
Page 13

/s/ E. Evans Wohlforth
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th Floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

David Elsberg (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth Snow (admitted *pro hac vice*)
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# Exhibit 1

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

**selendy
gay
elsberg**

Andrew Dunlap
Partner
212 390 9069
adunlap@selendygay.com

May 17, 2023

**Via E-mail**

Harry Sandick
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
hsandick@pbwt.com

**Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear Harry,

We write regarding JJHCS's production of documents regarding CarePath's
terms and conditions.

## I.     Background

In this case, JJHCS sues SaveOnSP for tortious interference with contract,
alleging that SaveOnSP induced participants in SaveOnSP-advised health plans to
breach the terms and conditions of those participants' agreements with CarePath.
Compl ¶¶ 106-11. JJHCS alleges that SaveOnSP induced breaches of two sets of
terms and conditions. First, it alleges that participants breached terms and condi-
tions that applied to all drugs through December 2021 and still apply to all drugs
except Stelara and Tremfya today ("General T&Cs"), asserting that signing up for
the "SaveOnSP Program" violates a term stating that CarePath is not available with
any "other offer" and that SaveOnSP's services constitute such an offer. Compl. ¶¶
19-20, 106-11. Second, JJHCS alleges that participants breached terms and condi-
tions that it introduced for Stelara and Tremfya in December 2021 ("New Stelara
& Tremfya T&Cs"), asserting that signing up for the "SaveOnSP Program" violates
terms requiring that a patient pay "an out-of-pocket cost for [his or her] medica-
tion" and prohibiting "[p]atients who are members of health plans that claim to
eliminate their out-of-pocket costs" from receiving cost support. *Id.* ¶¶ 102-03.

In its motion to dismiss, SaveOnSP argued that patients on SaveOnSP-ad-
vised plans did not breach the General T&Cs because SaveOnSP's services are not

an "offer" under the meaning of those provisions. Mem. of Law ISO SaveOnSP's Mot. to Dismiss at 27-29 (ECF No. 31-1). It argued that plan benefit terms are not an "offer," as the contract (1) distinguishes between benefits provided by health plans and "offer[s]" and sets up CarePath to work alongside health plans; and (2) the meaning of "coupon, discount, prescription savings card, [and] "free trial" bears upon the meaning of the term "other offer" and that SaveOnSP's services are different from a coupon, discount, prescription savings card, or free trial. *Id.* In denying SaveOnSP's motion to dismiss, the Court held that arguments regarding the meaning of the terms and conditions should be decided at summary judgment, with the benefit of extrinsic evidence. Op. Denying SaveOnSP's Mot. to Dismiss (ECF No. 68) at 16. In its affirmative defenses, SaveOnSP argues that JJHCS is barred from recovering for any purported breach because, despite being aware of SaveOnSP's services in 2017, JJHCS took no action to enforce its terms and conditions for years, impliedly acquiesced to patients on SaveOnSP-advised plans using CarePath, and failed to mitigate its damages by not enforcing the terms of its contract based upon its purported belief that patients on SaveOnSP-advised plans breached CarePath's terms and conditions. Affirmative Defenses ¶¶ 24-38.

In its RFP Nos. 12 and 13, SaveOnSP requested documents and communications concerning the meaning of CarePath's terms and conditions starting from January 1, 2009. RFP No. 12 seeks all documents and communications regarding CarePath's terms and conditions, including those regarding "(a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) JJHCS's decision to revise any of its CarePath terms and conditions for any Janssen Drug; and (d) JJHCS's understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions." RFP No. 13 seeks all documents and communications regarding "CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89."

In response, JJHCS agreed to produce final versions of CarePath's Terms and Conditions, documents concerning the "drafting" of CarePath's terms and conditions, and documents related to the meaning of the term "other offer." *See* Feb. 24, 2023 Joint Ltr. at 23-24. On February 24, 2023, SaveOnSP moved to compel JJHCS to produce all documents responsive to RFP Nos. 12 and 13. Feb. 24, 2023 Joint Ltr. at 23 (ECF No. 79).

At the March 17, 2023 conference, the Court denied SaveOnSP's motion to compel without prejudice. After JJHCS stated that it intended to "make a substantial production of documents" regarding the terms and conditions, Mar. 17, 2023 Hr'g Tr. at 40:14-15, the Court ordered JJHCS to prioritize that production, *id.* at 46:13-47:17. The Court said that, after SaveOnSP reviewed the production, it could raise any issues and potentially make "more tailored requests." *Id.* at 46:14-47:1. The Court said that the parties "need to talk to each other after the production,"

Harry Sandick
May 17, 2023

and that SaveOnSP is "entitled to ... the evaluation of the terms not limited to what [JJHCS] says." *Id.* at 48:1-11.

We understand that JJHCS has substantially completed its production of documents relating to its terms and conditions. During a meet and confer session on April 26, 2023, JJHCS said that its production on Friday, April 28, 2023 would include documents regarding CarePath's terms and conditions and "should be the majority" of that priority production. On April 28, 2023, JJHCS made a production of documents and has not produced any documents since.

Based on our review of the April 28, 2023 production, JJHCS has produced approximately 600 total documents that refer to its terms and conditions. Of these, approximately 120 are copies of the terms and conditions or internal JJHCS documents reflecting the terms and conditions, approximately 160 are form letters to patients, approximately 75 are other documents or letters sent or advertised to patients, health care providers, and organizations containing the terms and conditions, and approximately 10 are training documents for JJHCS representatives containing the terms and conditions. JJHCS appears to have produced only about five documents about whether SaveOnSP's services violate CarePath's terms and conditions, primarily in its March 16, 2023 production. *See, e.g.*, JJHCS_000035931-933. Approximately 75% of the documents it produced in its April 28, 2023 production regarding terms and conditions relate to the New Stelara & Tremfya T&Cs, while the vast majority of JJHCS's claims relate to the General T&Cs.

## II.    The General T&Cs

Contrary to its statement to the Court that it would make a "substantial" production of documents relating to its terms and conditions, JJHCS's production of documents relating to the General T&Cs has been paltry. JJHCS must increase the scope of its production and expand its search parameters. *See* Mar. 17, 2023 Hr'g Tr. at 44:2-7 ("MR. SANDICK: ... [W]hat I would propose is that we make the production that we've already committed to make. If it doesn't answer all of their questions, they can always come back and ask for additional documents.").

### A.    Scope of Production

Even though JJHCS agreed to produce documents concerning the "drafting" of CarePath's terms and conditions, *see* Feb. 24, 2023 Joint Ltr. at 23-24, JJHCS does not appear to have produced any such documents concerning the drafting of the General T&Cs. As the Court said: "I do believe in order to interpret terms, there has to be a background . . . I'm willing to limit this, but I do think that in order to see the evolution of terms and the reason therefore, it's necessary to give some amount of background." Mar. 17, 2023 Hr'g Tr. at 44:13-23. JJHCS must produce all documents related to the drafting of the General T&Cs.

Although JJHCS agreed to produce documents related to the meaning of the term "other offer," *see* Feb. 24, 2023 Joint Ltr. at 23-24, it does not appear to

have produced any such documents. JJHCS must produce them. JJHCS must also produce documents relating to the meaning of all aspects of the General T&Cs, including without limitation documents relating to the meaning of other provisions that SaveOnSP cited in its motion to dismiss: (1) "[t]his program is only for people . . . using commercial or private health insurance for their Janssen medication"; (2) "[y]ou may not seek payment for the value received from this program from any health plan"; (3) "[t]o use this program, you must follow any health plan requirements;" and (4) "[t]his program offer may not be used with any other coupon, discount, prescription savings card, free trial, or other offer." DARZALEX® Savings Program (Sept. 2021), https://www.janssencarepath.com/sites/www.janssencarepath-v1.com/files/darzalex-faspro-yondelis-savings-program-overview.pdf; *see also* Compl. ¶ 48. SaveOnSP has the right to explore whether any aspect of the General T&Cs shows that participants did not breach the "other offer" provision by taking advantage of copay assistance benefits in SaveOnSP-advised plans.

JJHCS has asserted that it need not produce documents going to how it enforced its terms and conditions, including the General T&Cs, over the years. In fact, it is well-settled that evidence regarding performance of a contract can be used to demonstrate the meaning of an ambiguous contract, particularly in instances where, as here, only one party drafted it. *See Quick v. N.L.R.B.*, 245 F.3d 231, 247 (3d Cir. 2001) ("[A]ny course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement" (quoting Restatement (Second) of Contracts § 202(4))); *Int'l Paper Co. v. Rexam, Inc.*, 2013 WL 3043638, at *5 (D.N.J. June 17, 2013) (recognizing that unilateral conduct may be considered as a matter of contract interpretation and compelling plaintiffs to produce documents in response to requests seeking documents regarding course of performance evidence). JJHCS must produce any documents going to its decisions to enforce or not enforce the "other offer" provision that it claims SaveOnSP induced plan participants into breaching.

At the March 17, 2023 conference, JJHCS expressed concern that SaveOnSP sought broad discovery of all terms and conditions from all copay assistance programs in Johnson & Johnson's history, whether or not they related to CarePath. Mar. 17, 2023 Hr'g Tr. at 42:21-43:6. It does not. SaveOnSP seeks documents concerning the drafting, meaning, and enforcement of the General T&Cs and the New Stelara & Tremfya T&Cs. SaveOnSP seeks such documents concerning other copay assistance programs only to the extent that a term in the General T&Cs was based on or adapted from a term for another program. For example, if the "other offer" clause in the General T&Cs was based on similar language from a predecessor program, SaveOnSP seeks documents relating to the drafting, meaning, and enforcement of that term in the predecessor program. *See* Mar. 17, 2023 Hr'g Tr. at 43:19-44:24 ("MS. NELSON: … If CarePath came into existence in 2016 and when it came into existence, someone at Johnson & Johnson said, 'Hey, we have these terms and conditions from our old program. Let's use those again.' THE COURT: Right. That's what I'm trying to get at.").

Harry Sandick
May 17, 2023

### B.    Search Parameters

#### 1.    Custodians

JJHCS identified six individuals as responsible for the drafting and revision of the terms and conditions identified in the Complaint. JJHCS's Resps. & Objs. to SaveOnSP's First Set of Interrogatories at 11. JJHCS refuses to add three of these individuals—Jennifer De Camara, Harman Grossman, and Savaria Harris—as custodians. All three individuals appear to have relevant information: for example, (1) Jennifer De Camara was invited to calls regarding the impact of SaveOnSP and Prudent, JJHCS_00026251, and "EHB Variable Copay Program Impact Growing for 2021," JJHCS_00026511; and (2) Sylvia Schubert forwarded Savaria Harris an email regarding JJHCS's understanding of CarePath's terms and conditions. *See* JJHCS_00035931-93.

JJHCS asserts that it need not add these individuals as custodians because they are attorneys, and all their documents would be covered by a privilege or protection. Mar. 16, 2023 Ltr. from H. Sandick to A. Dunlap at 1. JJHCS's position is contrary to law. Courts recognize that attorneys may be custodians where, as here, they are percipient witnesses to the events at issue; "[t]heir status as attorneys does not shield . . . custodians unconditionally from fulling the discovery obligations of [plaintiffs]." *In re Rail Freight Surcharge Antitrust Litig.*, No. 07-489 (PLF/JMG/AK), 2009 WL 3443563, at *10 (D.D.C. Oct. 23, 2009). It also does not follow that all these individuals' documents would be privileged. Attorneys can waive privilege "by disclosing otherwise protected communications to employees who do not need to know the information," for example. *Schwarz Pharm., Inc. v. Teva Pharm. USA, Inc.*, Civ. Action No. 01-4995, 2007 WL 2892744, at *4 (D.N.J. Sept. 27, 2007) (then M.J. E. Salas). If JJHCS believes that any of its custodians' relevant communications are privileged, it can list them on a privilege log so that SaveOnSP can evaluate the privilege claims.[1]

JJHCS must add De Camara, Grossman, and Harris as custodians. If JJHCS refuses to add any of these individuals, please state the total number of unique documents identified by running JJHCS's search parameters across the documents of each individual that JJCHS refuses to add.

The meager nature of JJHCS's production from JJHCS employees suggests that non-JJHCS employees were involved in drafting the General T&Cs. JJHCS must identify and add custodians from Johnson & Johnson entities outside of

---

[1] The Third Circuit has also expressed doubt that documents shared between members of a corporate family, like many of the documents that JJHCS has produced, are privileged. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 372, 378-79 (3d Cir. 2007) ("[H]olding that parents and subsidiaries may freely share documents without implicating the disclosure rule because of a deemed community of interest stretches, we believe, the community-of-interest privilege too far.").

Harry Sandick
May 17, 2023

JJHCS who are likely to have documents relating to the drafting, meaning, or enforcement of the General T&Cs.

## 2. Search Terms

JJHCS's current proposed search terms capture neither the relevant documents that it has already agreed to produce (as evidenced by its meager production to date) nor the full universe of relevant documents.

JJHCS offered two limited search terms regarding the "other offer" term:

- "other offer" W/5 (accumulat* OR maximiz* OR "health plan*" OR insur*)

- "This program offer may not be used with any other coupon, discount, prescription savings card, free trial, or other offer"

This is insufficient. Documents regarding the meaning, drafting, or enforcement of the "other offer" term may not also use the terms "accumulator," "maximizer," "health plan," "insurer," or "insurance" within five words of "other offer" and may not use the full language of the relevant term, particularly because that term has changed over time. *See* JJHCS_00017335 (reflecting minor word changes from the 2017 version to the 2021 version). SaveOnSP therefore proposes the following additional search terms:

- (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") AND ((term* w/3 condition*) OR "T&C" OR "TNC")

- (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program" OR "program") AND "other offer*"

Furthermore, as discussed, JJHCS must expand its production to include documents regarding the meaning and enforcement of the General T&Cs. SaveOnSP proposes the following additional search terms:

- ("coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*") AND (accumulat* OR maximiz* OR "health plan*" OR insur* OR Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program" OR "program")

- "health plan*" AND ((term* w/3 condition*) OR "T&C" OR "TNC")

- (prohibit* OR bar* OR enforc*) AND ((term* w/3 condition*) OR "T&C" OR "TNC")

- "Benefits Investigation*" AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR

6

Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga)

If JJHCS declines to add any of these terms, please identify the total number of unique documents identified by running each such term across JJHCS's custodians during the agreed timeframe. If JJHCS proposes to modify any of these terms, please identify the total number of unique documents identified by running the unmodified term across JJHCS's custodians during the agreed timeframe and the total number of documents identified by running the modified version.

### 3.    Time Period

At the March 17, 2023 conference, JJHCS represented that CarePath "in its current form" began operating in 2016, *see* Mar. 17, 2023 Hr'g Tr. at 38:8-16, and that the terms and conditions at issue "came into being" after that, *id.* at 42:18-21. But discovery to date indicates that the General T&Cs were drafted earlier than that. The earliest version of the General T&Cs that JJHCS has produced to date is from January 2017, JJHCS_00017335, and it uses terms that are largely similar to terms in use today. For example, the 2017 version states: "[t]his offer may not be combined with any other coupon, discount, prescription savings card, free trial, or other offer," *id.*, while the 2021 version states: "[t]his *program* offer may not be *used* with any other coupon, discount, prescription savings card, free trial, or other offer." DARZALEX® Savings Program (Sept. 2021), https://www.janssencarepath.com/sites/www.janssencarepath-v1.com/files/darzalex-faspro-yondelis-savings-program-overview.pdf (emphasis added on the differences between the 2017 version and the 2021 version). This shows that this term was substantially drafted before January 2017 and later amended.

JJHCS must produce all documents relating to the drafting of the General T&Cs, from whatever time period. That is, (1) JJHCS must produce any such documents created on or after April 1, 2016, the date on which the parties have agreed to begin their production periods; (2) if any portion of the General T&Cs were drafted before April 1, 2016, JJHCS must produce documents relating to the drafting of those terms; (3) if any portion of the General T&Cs were modeled on or adopted from terms and conditions for other programs, JJHCS must produce documents relating to the drafting of those terms; and (4) if any of the General T&Cs were amended after April 1, 2016—which, as shown, they were—JJHCS must produce documents relating to the drafting of those amendments.

In opposing SaveOnSP's motion to compel, Feb. 24, 2023 Joint Ltr. at 23 (ECF No. 79), and at the March 17, 2023 conference, Mar. 17, 2023 Hr'g Tr. at 42:17-6, JJHCS expressed concern that RFP Nos. 12 and 13 ask for documents going back to 2009. As SaveOn has explained, it proposed that date because it understands that the first of the Janssen Drugs at issue was introduced in 2009. To be clear, SaveOnSP does not seek documents that pre-date the drafting of the terms contained in the General T&Cs. JJHCS should conduct a reasonable investigation and determine when the General T&Cs—or the terms from other programs on

Harry Sandick
May 17, 2023

which they were modeled—were first drafted and propose a starting date for pro-
duction based on the drafting dates. If it turns out that different terms were drafted
at different points, we are glad to meet and confer about a protocol that reflects
that drafting history.

## III.    The New Stelara & Tremfya T&Cs

In December 2021, JJHCS changed the terms and conditions for Stelara and
Tremfya to include a provision stating "Patients who are members of health plans
(often termed "maximizer" plans) that claim to reduce their patients' out-of-pocket
costs will have a reduced maximum program benefit of $6,000 per calendar year.
Out-of-pocket costs may be co-pay, co-insurance, or deductible" and "Patients who
are members of health plans that claim to eliminate their out-of-pocket costs are
not eligible for cost support." SaveOnSP needs documents related to the drafting,
meaning, and enforcement of the New Stelara & Tremfya T&Cs. But JJHCS has
produced only approximately 50 documents and communications regarding the
reasoning behind these changes and none that reflect the decision actually being
made. *See, e.g.*, JJHCS_00006834-58.

For example, it appears that Ileana Caivano, now a Patient Experience Prod-
uct Group Leader, employed by the Janssen Pharmaceutical Companies of John-
son & Johnson, Ileana Caivano, LINKEDIN, https://www.linkedin.com/in/ileanah
(last visited May 17, 2023), played a role in brainstorming ways to address maximizers
in CarePath's terms and conditions. *See* JJHCS_00035926. Please identify the indi-
viduals, whether employed by JJHCS or another J&J entity, who were involved in
the drafting, meaning, and enforcement of the New Stelara & Tremfya T&Cs, in-
cluding without limitation identifying who made the decision to change the terms
and conditions for Stelara and Tremfya.

*             *             *

We request that JJHCS confirm by tomorrow evening that it has substan-
tially completed its priority production of documents related to the terms and con-
ditions. We request a full reply to this letter by May 22, 2023.

We reserve all rights and are available to meet and confer.

Best,

/s/ Andrew Dunlap

Andrew R. Dunlap
Partner

8

# Exhibit 2



www.pbwt.com

May 19, 2023

Harry Sandick
(212) 336-2723

Elizabeth Snow, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

> **Re:    Outstanding Issues Concerning SaveOnSP's Production**
> *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
> No. 22 Civ. 2632 (ES) (CLW)

Dear Elizabeth:

We write in response to your May 16, 2023 letter regarding the parameters of SaveOnSP's document productions, and further to our previous correspondence on this topic.

## I.    Search Terms

Thank you for agreeing to add the following search term:  (copay* OR co-pay* OR coins* OR co-ins* OR "cost share") W/15 (zero OR 0 OR $0 OR "no cost" OR "free of charge").

## II.    Standing Meetings with ESI

Thank you for agreeing to add the term "Weekly Touch Base" as a search term.

You have also agreed to add the search term "Bi-weekly call."  Upon review of the documents SaveOnSP has produced thus far, it appears that this search term will be underinclusive as it will not capture all documents relevant to the bi-weekly calls.  For example, there are documents that include the terms "Bi-Weekly Calls" and "Bi-Weekly Meetings" in SaveOnSP's productions to date.  *See* SOSP_0001782, SOSP_0022266.  Accordingly, we ask that SaveOnSP add the search term:  bi-weekly W/2 (call* OR meeting*).

## III.    Custodians

We asked that you add Andrew Walker, Armand Peoples, and Jillian Vincheski as custodians.  In your May 16 letter, you responded that the "Andrew Walker" referenced in our prior correspondence was in fact Andrea Walker, and that you were still considering whether SaveOnSP will agree to add these custodians.  We look forward to your response on this point.

Elizabeth Snow
May 19, 2023
Page 2


**IV.      Notion Partners**

      In our April 28 letter, we requested that SaveOnSP produce "all correspondence and work product between SaveOnSP and the vendor Notion Partners." In response, your May 16 letter suggests adding the search term "Notion" to capture such requests. We request that SaveOnSP also search for and produce all emails to, from, or copying email addresses ending in "@notionpartners.com." We also request that SaveOnSP conducted a targeted search independent of search terms to specifically locate and produce the Notion Partners-created video itself, if necessary from a network drive or other non-custodial source, including any drafts of the video that were shared with SaveOnSP.

**V.      Custodial Sources**

      It appears that Jody Miller used the email address jlmwny@yahoo.com for communications related to SaveOnSP during the relevant time period. *See, e.g.*, SOSP_0062579. Please confirm that you have preserved, collected, and will produce relevant documents from that email address and any others used by Jody Miller for SaveOnSP-related communications.

*      *      *

      Please provide your position on each of these points by issues by May 26.

      Best regards,


      */s/ Harry Sandick*
      Harry Sandick

# Exhibit 3

| From: | Haigney Long, Julia (x2878) |
|---|---|
| To: | Elizabeth Snow; Mangi, Adeel A. (x2563); Sandick, Harry (x2723); LoBiondo, George (x2008); Arrow, Sara (x2031); Shane, Beth (x2659); Brisson, Katherine (x2552); Hashmi, Kabir (x2701); ~jgreenbaum@sillscummis.com; ~klieb@sillscummis.com |
| Cc: | David Elsberg; Andrew Dunlap; Wohlforth, E. Evans; Meredith Nelson |
| Subject: | RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW) |
| Date: | Thursday, June 15, 2023 7:21:19 PM |

Elizabeth,

Consistent with Judge Waldor's rulings at the March 17, 2023 conference, JJHCS prioritized its agreed upon production of documents responsive to the priority topics referenced in your email and production of those categories of documents is now substantially complete for the expanded time period subsequently agreed to by the parties.

To the extent that we identify any additional, non-privileged documents that are responsive to these requests, we will continue to produce these documents as soon as possible, on a rolling basis.

Best,
Julia

**Julia Haigney Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jhaigneylong@pbwt.com**

---

**From:** Elizabeth Snow <esnow@selendygay.com>
**Sent:** Monday, June 12, 2023 5:07 PM
**To:** Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; Carotenuto, George (Departed User) <gcarotenuto@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Shane, Beth (x2659) <eshane@pbwt.com>; Haigney Long, Julia (x2878) <jhaigneylong@pbwt.com>; Brisson, Katherine (x2552) <kbrisson@pbwt.com>; Jeffrey Greenbaum <JGREENBAUM@sillscummis.com>; Katherine Lieb <klieb@sillscummis.com>
**Cc:** ~delsberg@selendygay.com <delsberg@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; Meredith Nelson <mnelson@selendygay.com>
**Subject:** JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW)

**_Caution: External Email!_**

Julia,

Thank you for your production of documents on June 9, 2023. We understand based upon your prior representations that JJHCS's June 9, 2023 production completes JJHCS's production on the priority topics (financial documents and Janssen CarePath's terms and conditions) ordered by the Court on March 17, 2023. Please let us know if this is incorrect.

Thanks,

Elizabeth

**Elizabeth Snow**
Associate  [Email]
Selendy Gay Elsberg PLLC  [Web]
Pronouns: she, her, hers
--------------------------------------------
+1 212.390.9330  [O]
+1 540.409.7257  [M]

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

# Exhibit 4

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Elizabeth Snow
Associate
212 390 9330
esnow@selendygay.com

June 12, 2023

**<u>Via E-mail</u>**

George LoBiondo
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
globiondo@pbwt.com

**Re:** ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*** **(Case No. 2:22-cv-02632-ES-CLW)**

Dear George,

We write to ask that JJHCS extend the time period of its production in response to RFP Nos. 8, 9, 12, and 29 through the present.

*First,* SaveOnSP understands that for at least some patients taking Stelara and Tremfya, JJHCS had cut the amount of copay assistance funds available through the Janssen CarePath program starting in January 2022 to $6,000, but JJHCS increased the available amount to approximately $9,100 in or around May 2023. Documents and communications reflecting JJHCS's decision to decrease and then apparently to increase the amount of copay assistance funds available for Stelara and Tremfya are responsive to SaveOnSP's Request for Production 29, and encompassed by JJHCS's agreement to produce JJHCS's budget for copay assistance through CarePath and JJHCS's actual and projected annual costs for CarePath. *See* Feb. 14, 2023 Ltr. from A. LoMonaco to M. Nelson, at 1-2.

SaveOnSP asks that JJHCS please run the following new search term over the time period July 1, 2022 through June 12, 2023: ((9,100 OR 9100 OR increase) AND (Stelara* OR Tremfya* OR CarePath OR JCP OR "Savings Program"). SaveOnSP notes that it bases this search term off of the term that JJHCS proposed in its February 6, 2023 letter regarding the limitation of funds for CarePath to $6,000 for Stelara and Tremfya. SaveOnSP also asks that JJHCS extends the following term through June 12, 2023: (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate). Please also identify any individuals (not limited to employees of JJHCS) who were involved in

George LoBiondo
June 12, 2023

or have knowledge of this decision or its implementation. To the extent that they are not already named as custodians, we ask that JJHCS please add those individuals as custodians.

*Second*, SaveOnSP understands—in part based on the Trial Card production, *see, e.g.*, TRIALCARD_00000076 (form letter dated Feb. 2, 2023 informing a patient that based on the patient's plan's engagement of SaveOnSP's services, that patient is not eligible for CarePath)—that JJHCS continues to attempt to disenroll patients in the Janssen CarePath program who it believes are members of SaveOnSP-advised plans. Documents and communications regarding these efforts are relevant to JJHCS's attempts to purportedly enforce CarePath's terms and conditions, and so are responsive to several of SaveOnSP's RFPs, including RFP Nos. 8, 9, and 12.

SaveOnSP asks that JJHCS please run the following new search term over the period July 1, 2022 through June 12, 2023: ("Benefits Investigation" AND (Stelara OR Tremfya)). SaveOnSP also requests that you extend the following terms through June 12, 2023:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP"

- "Save On"

- ("Express Scripts" OR ESI) w/50 (accumulat* OR maximiz*)

- Accredo w/50 (accumulat* OR maximiz*)

Please also identify any individuals (not limited to employees of JJHCS) who were involved in or have knowledge of these efforts. To the extent that they are not already named as custodians, we ask that JJHCS please add those individuals as custodians.

Please confirm by June 16, 2023 that JJHCS will produce documents through the present on both of the foregoing topics. We reserve all rights and are available to meet and confer.

Best,

/s/ Elizabeth Snow

Elizabeth H. Snow
Associate

# Exhibit 5

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

selendy
gay
elsberg

Andrew R. Dunlap
Partner
212.390.9005
adunlap@selendygay.com

June 29, 2023

**Via E-mail**

Harry Sandick
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
hsandick@pbwt.com

Re:    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC*** **(Case No. 2:22-cv-02632-ES-CLW)**

Dear Harry,

　　We write regarding the parties' June 23, 2023 meet and confer as it relates to CarePath's terms and conditions and the volume of JJHCS's document review.

　　*First*, in your May 26 letter, you stated that the term "other offer" in CarePath's terms and conditions goes back to at least 2010. During the meet and confer, you stated that CarePath's terms and conditions were adopted from terms and conditions for prior JJHCS copay assistance programs. JJHCS agreed to (1) identify the predecessor programs from which the CarePath terms and conditions were drawn; and (2) identify the document sources that JJHCS has for those programs, including how far back those records go, whether they are reasonably accessible, and who the custodians or non-custodial sources of those records are. JJHCS acknowledged that it had not previously done so.

　　*Second*, in its initial disclosures JJHCS had identified three attorneys—Harman Grossman, Savaria Harris, and Jennifer De Camera—as involved in the drafting of CarePath's terms and conditions. In its May 17 letter, SaveOnSP asked JJHCS to add these attorneys as custodians. In its May 26 letter, JJHCS refused to do so. During the meet and confer, JJHCS agreed to determine if those attorneys (1) were involved in non-privileged business conversations; and (2) were involved in revisions of the terms and conditions for Stelara and Tremfya that took effect in 2022. JJHCS acknowledged that it had not previously done so.

Harry Sandick
June 29, 2023

*Third*, in our May 17 letter, we proposed that JJHCS add various search terms related to terms and conditions. In your May 26 letter, you declined to add any of those search terms, stating that the proposed terms resulted in 312,000 unique hits, which you claimed was too burdensome for JJHCS to review. During the meet and confer, we asked if JJHCS was prepared to add any of the proposed terms; JJHCS said that it had not considered any terms individually. The parties agreed that SaveOnSP would propose a new set of search terms, broken down into smaller phrases, and that JJHCS would (1) provide the number of unique hits identified by each term; and (2) for each term, state if it will agree to add the term or not. SaveOnSP attaches its revised proposed search terms as Exhibit 1.

*Finally*, JJHCS agreed to provide SaveOnSP with the number of documents that JJHCS has reviewed to date. We ask that you provide both a total for all documents and a total for all custodial documents (excluding documents or data from non-custodial sources).

We ask for a response by July 6, 2023.

We reserve all rights and are available to meet and confer.

Best,

*/s/ Andrew R. Dunlap*

Andrew R. Dunlap
Partner

2

# EXHIBIT 1

## <u>Proposed Search Terms</u>

- Janssen AND (term* w/3 condition)
- Janssen AND "T&C"
- Janssen AND "TNC"
- Jannsen AND (term* w/3 condition)
- Jannsen AND "T&C"
- Jannsen AND "TNC"
- Jansen AND (term* w/3 condition)
- Jansen AND "T&C"
- Jansen AND "TNC"
- CarePath AND (term* w/3 condition)
- CarePath AND "T&C"
- CarePath AND "TNC"
- "Care Path" AND (term* w/3 condition)
- "Care Path" AND "T&C"
- "Care Path" AND "TNC"
- CP AND (term* w/3 condition)
- CP AND "T&C"
- CP AND "TNC"
- JCP AND (term* w/3 condition)
- JCP AND "T&C"
- JCP AND "TNC"
- "Savings Program" AND (term* w/3 condition)

- "Savings Program" AND "T&C"

- "Savings Program" AND "TNC"

- Janssen AND "other offer*"

- Jannsen AND "other offer*"

- Jansen AND "other offer*"

- CarePath AND "other offer*"

- "Care Path" AND "other offer*"

- CP AND "other offer*"

- JCP AND "other offer*"

- "Savings Program" AND "other offer*"

- "coupon*" AND accumulat*

- "coupon*" AND maximiz*

- "coupon*" AND "health plan*"

- "coupon*" AND insur*

- "coupon*" AND Janssen

- "coupon*" AND Jannsen

- "coupon*" AND Jansen

- "coupon*" AND CarePath

- "coupon*" AND "Care Path"

- "coupon*" AND CP

- "coupon*" AND JCP

- "coupon*" AND "Savings Program"

- "coupon*" AND "program"

- "discount*" AND accumulat*

- "discount*" AND maximiz*
- "prescription savings card*" AND accumulat*
- "prescription savings card*" AND maximiz*
- "prescription savings card*" AND "health plan*"
- "prescription savings card*" AND insur*
- "prescription savings card*" AND Janssen
- "prescription savings card*" AND Jannsen
- "prescription savings card*" AND Jansen
- "prescription savings card*" AND CarePath
- "prescription savings card*" AND "Care Path"
- "prescription savings card*" AND CP
- "prescription savings card*" AND JCP
- "prescription savings card*" AND "Savings Program"
- "prescription savings card*" AND "program"
- "free trial*" AND accumulat*
- "free trial*" AND maximiz*
- "free trial*" AND "health plan*"
- "free trial*" AND insur*
- "free trial*" AND Janssen
- "free trial*" AND Jannsen
- "free trial*" AND Jansen
- "free trial*" AND CarePath
- "free trial*" AND "Care Path"
- "free trial*" AND CP

- "free trial*" AND JCP

- "free trial*" AND "Savings Program"

- "free trial*" AND "program"

- "Benefits Investigation*" AND Balversa

- "Benefits Investigation*" AND Darzelex

- "Benefits Investigation*" AND Faspro

- "Benefits Investigation*" AND Erleada

- "Benefits Investigation*" AND Imbruvica

- "Benefits Investigation*" AND Opsumit

- "Benefits Investigation*" AND Precobix

- "Benefits Investigation*" AND Remicade

- "Benefits Investigation*" AND Rybrevant

- "Benefits Investigation*" AND Simponi

- "Benefits Investigation*" AND Stelara

- "Benefits Investigation*" AND Symtuza

- "Benefits Investigation*" AND Tracleer

- "Benefits Investigation*" AND Tremfya

- "Benefits Investigation*" AND Uptravi

- "Benefits Investigation*" AND Ventavis

- "Benefits Investigation*" AND Zytiga

# Exhibit 6

# Confidential

# Filed Under Seal

# Exhibit 7

# Confidential

# Filed Under Seal

# EXHIBIT 8



July 5, 2023

Adeel Mangi
Partner
(212) 336-2563
aamangi@pbwt.com

By Email Attachment


Andrew R. Dunlap
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY  10104
adunlap@selendygay.com

Re:    *Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC*
       **Case No. 2:22-cv-02632 (ES) (CLW)**

Dear Andrew,

      I write further to the discussion at the end of the June 27, 2023 hearing before Judge Waldor regarding the case schedule.  SaveOnSP is subject to a July 24, 2023 deadline for the substantial completion of its document production.  Judge Waldor has not granted any relief from that deadline, which itself represents an extension based on SaveOnSP's inability to meet the prior deadline.  It remains our expectation that SaveOnSP is devoting all necessary resources to comply with the deadline.  While limited documents might be produced after that deadline, such as those relating to our most recent document requests, SaveOnSP has had more than enough time to comply with its substantial completion obligation.  In view of your statements at the conference, we seek written confirmation that SaveOnSP is doing everything necessary in order to ensure that it meets the Court's July 24 deadline.  If you are unable to provide that confirmation, please explain why not, so that we can seek an appropriate remedy from the Court. We request the courtesy of a prompt response.

      Sincerely,

      /s/ Adeel Mangi

      Adeel Mangi

# EXHIBIT 9



www.pbwt.com

July 7, 2023

Sara A. Arrow
(212) 336-2031

Andrew R. Dunlap, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

        **Re:**    ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
                   <u>**Case No. 2:22-cv-02632 (ES) (CLW)**</u>

Dear Andrew:

        Plaintiff Johnson & Johnson Health Care Systems, Inc. is today issuing notices of deposition to Jenna Ordonez and Jill Stearns.  We are issuing these notices with the understanding that, consistent with Judge Waldor's rulings regarding the case schedule, SaveOnSP is on continued track to meet the July 24, 2023 deadline for substantial completion of its document production.  While we are open to coordinating scheduling to accommodate witness availability, we intend to take these depositions on the noticed dates or in close proximity to those dates, as we expect that additional depositions will follow in short order.  Please let us know if you have an alternative preference as to the locations for these depositions.

                          Very truly yours,


                          */s/ Sara A. Arrow*
                          Sara A. Arrow