**FILED UNDER SEAL - CONTAINS INFORMATION MARKED AS CONFIDENTIAL UNDER THE DISCOVERY CONFIDENTIALITY ORDER.**

August 11, 2023

<u>Via ECF</u>

Hon. Cathy L. Waldor
U.S. District Court for the District of New Jersey
50 Walnut Street, Room 4040
Newark, NJ 07102

Re:   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC***
       <u>**(Case No. 2:22-cv-02632-ES-CLW)**</u>

Dear Judge Waldor:

Plaintiff Johnson & Johnson Health Care Systems Inc. ("JJHCS") seeks the Court's intervention to compel Defendant Save On SP, LLC ("SaveOnSP") to produce relevant communications by SaveOnSP executives using non-SaveOnSP email addresses to conduct SaveOnSP-related business. SaveOnSP asserts that it has identified all email accounts that its executives actually used to conduct SaveOnSP business during the relevant period and that JJHCS comes nowhere close to showing that the executives used the personal accounts at issue to do so.

The parties have met and conferred in good faith to resolve their dispute. Despite these efforts, the parties remain at impasse on this issue. We therefore submit this letter in accordance with Local Rule 37.1 and the Court's Civil Case Management Order and respectfully request that the Court resolve this dispute.

*JJHCS's Position*

In reviewing SaveOnSP's document production, JJHCS has uncovered that multiple high-level SaveOnSP executives have regularly used non-SaveOnSP email addresses to conduct SaveOnSP-related business. Even after being advised of this fact, SaveOnSP has refused to preserve, collect, and produce relevant documents and communications from its custodians' non-SaveOnSP email accounts.[1] In fact, it even refuses to determine the full universe of non-

---

[1] For purposes of this letter, the term "non-SaveOnSP email addresses" refers to email addresses associated with domains other than SaveOnSP or 4Front Consulting Group, an entity that was started by Jody Miller, President of SaveOnSP. SaveOnSP has confirmed that it has preserved, collected, and will produce relevant documents from certain SaveOnSP custodians who have 4Front email addresses. Ex. 3 at 2 (Mar. 31, 2023 Ltr. from A. Dunlap to H. Sandick). While collecting and producing from 4Front Consulting Group is necessary, it is insufficient to satisfy SaveOnSP's discovery burden to preserve and collect *all* relevant communications from any accounts used to conduct SaveOnSP business. This is true regardless of how many emails SaveOnSP has produced from Miller's and Krawczyk's work accounts.

SaveOnSP email addresses used by its custodians.  *See* Ex. 1 at 2 (June 16, 2023 Ltr. from E. Snow to H. Sandick); Ex. 2 at 3 (July 19, 2023 Ltr. from K. Brisson to E. Snow).

Most concerning to JJHCS, SaveOnSP has admitted that it failed at the outset of this case to direct that relevant emails from these accounts be preserved.  This is contrary to the fundamental requirements of electronic discovery.

To excuse these failures, SaveOnSP below asks the Court to ignore the evidence JJHCS has compiled, and complains that it would somehow be burdensome or "annoy[ing]" to search its executives' email accounts.  It would be neither.  Our request is narrow:  all SaveOnSP has to do is apply the parties' agreed-upon search terms, which were designed to collect documents that bear on the claims and defenses in this action, to its executives' email accounts.  We are not asking for irrelevant personal emails.  SaveOnSP's protests are therefore quite telling:  if there were nothing of relevance in the disputed email accounts, then SaveOnSP would have no reason to refuse to search them.  Indeed, it would have mooted this dispute by running a search and stating that no documents hit upon the search terms.  But SaveOnSP has refused to even run the search terms.

In light of SaveOnSP's intransigence, we ask the Court to order SaveOnSP to preserve, collect, and produce relevant documents and communications from any implicated non-SaveOnSP email addresses, including those associated with SaveOnSP custodians Miller and Krawczyk identified herein.

*A litigant must preserve, collect, and produce relevant evidence*
*from its employees' non-company email accounts*

SaveOnSP has an "independent duty" to preserve relevant evidence relating to the claims and defenses at issue in this litigation, regardless of whether such communications occurred using SaveOnSP corporate or personal email accounts.  *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) ("An independent duty to preserve relevant evidence arises when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be caused by seeking the evidence if the evidence were to be discarded." (citing *Joe Hand Promotions v. Sports Page Café*, 940 F. Supp. 102, 104 n.13 (D.N.J. 1996)); *CA, Inc. v. AppDynamics, Inc.*, 2014 WL 12860591, at *4 (E.D.N.Y. Sept. 8, 2014) ("If responsive emails kept on the officers' and founders' personal email accounts are not subject to a Rule 34 notice to produce, it would be tantamount to an invitation for executives to keep an email equivalent of two sets of correspondence, one discoverable and the other not—a recipe for deceit.  The Court declines to endorse this outcome.").

Courts routinely compel corporate litigants to search and produce from their employees' personal email accounts when, as here, there is evidence that they have been used to exchange relevant business documents.  *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 12942210, at *5 (N.D. Cal. May 29, 2015) (requiring search of employee's account when he used it during the relevant period to "to send . . . business documents"); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2972806, at *2 (N.D. Cal. July 12, 2017) (ordering party to produce documents in officers' control because it "cannot hide responsive documents simply because these

2

officers' work for [the corporation] was done using their personal email accounts"). JJHCS's request is entirely consistent with the routine requirements of electronic discovery. *See Mosaid Techs. Inc. v. Samsung Elecs. Co., Ltd.*, 348 F. Supp. 2d 332, 336 (D.N.J. 2004) ("[A] litigant . . . is under a duty to preserve what it knows, or reasonably should know, will likely be requested in a reasonably foreseeable litigation.").

*SaveOnSP employees conduct business on non-company email accounts*

Here, SaveOnSP's document productions demonstrate that high-ranking executives including Jody Miller, President of SaveOnSP, and Ron Krawczyk, CEO of SaveOnSP—both individual owners of SaveOnSP—have used their personal email accounts to strategize with SaveOnSP employees, communicate with key SaveOnSP business partners, and discuss the SaveOnSP program with potential clients.[2] As described more fully herein, we have identified in SaveOnSP's productions multiple relevant emails sent to or from Miller's Yahoo email address, jlmwny@yahoo.com, and/or Krawczyk's Comcast email address. Ten illustrative examples are appended hereto.[3] Miller and Krawczyk did not forward a single one of these emails to their own SaveOnSP business accounts.

SaveOnSP argues that JJHCS has not met its burden to show that Miller and Krawczyk regularly used their personal email accounts to conduct SaveOnSP business. This is preposterous: JJHCS cannot possibly be asked to meet this invented standard when SaveOnSP is the only party with access to the relevant accounts and itself refuses to search and produce from them. Even so, JJHCS has identified multiple relevant communications that relate directly to the claims and defenses at issue in this litigation. For example:

- Miller used his Yahoo email address to provide a substantive, sales-oriented response to a series of questions from a potential SaveOnSP client and to describe in detail SaveOnSP's business strategy. Ex. 8 (SOSP_0066491) ("█████ ███████████████████████████████████████████████████ ███████████").

- Miller used his Yahoo email address to discuss with other high-ranking executives ████████████████████████████████████████ ████████ Ex. 13 (SOSP_0176829).

---

[2] JJHCS has uncovered evidence that, in addition to Miller and Krawczyk, other employees within SaveOnSP regularly use personal email to conduct SaveOnSP business. For example, Ayesha Zulqarnain, a Special Projects Coordinator, regularly communicated with SaveOnSP colleagues using a personal Gmail account. *See, e.g.*, Ex. 4 (SOSP_0189533); Ex. 5 (SOSP_0146308); Ex. 6 (SOSP_0189762); Ex. 7 (SOSP_0191180). JJHCS has requested that SaveOnSP preserve, collect, and produce from both Zulqarnain's SaveOnSP and personal accounts, and that request is pending.

[3] *See* Ex. 8 (SOSP_0066491); Ex. 9 (SOSP_0062659); Ex. 10 (SOSP_0079356); Ex. 11 (SOSP_0083513); Ex. 12 (SOSP_0176650); Ex. 13 (SOSP_0176829); Ex. 14 (SOSP_0177583); Ex. 15 (SOSP_0271137); Ex. 16 (SOSP_0384771); Ex. 17 (SOSP_0431143).

- Miller used his Yahoo email address to communicate regarding ████████ ████████████████████████████████████████████████████ ████████████████████████████ Ex. 9 (SOSP_0062659).

- SaveOnSP's business partner Express Scripts, Inc. directed emails to Miller's Yahoo account and addressed topics such as ██████████████████ ████████████████████████████. Ex. 17 (SOSP_0431143).

- Krawczyk used his personal Comcast account to discuss a ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████. Ex. 12 (SOSP_0176650).

- Krawczyk used his personal Comcast account to discuss ████████████ ████████████████████████████████████████████████████████ ████████████. Ex. 15 (SOSP_0271137).

- Krawczyk used his personal Comcast email address to send another high-ranking executive ████████████████████████████████████████. Ex. 10 (SOSP_0079356). Krawczyk also communicated with business partners using his Comcast account concerning issues that should be "on the Savon teams radar." Ex. 11 (SOSP_0083513).

In addition to using their personal email accounts, SaveOnSP executives have also used other email addresses associated with non-SaveOnSP companies for SaveOnSP business purposes. For example, Krawczyk used his SaveOnSP email address to forward ████████ ████████. Ex. 16 (SOSP_0384771). Krawczyk also used a Protean, LLC email address to send █ ████████████████████████████████████. Ex. 14 (SOSP_0177583). These examples demonstrate a pattern of SaveOnSP executives using their non-SaveOnSP email addresses to conduct SaveOnSP business and set company strategy—and they plainly contradict SaveOnSP's assertion to the contrary. While SaveOnSP argues that Miller and Krawczyk "have stated that they did not use [their personal accounts] to conduct business related to SaveOnSP" that claim cannot be reconciled with the above record and is set forth in attorney argument rather than sworn declarations. Moreover, Miller and Krawczyk can hardly be expected to remember every email they have sent over the last seven years and from where they sent it—the only way to test their assertion is to run a search.

SaveOnSP attempts below to distinguish the emails appended to JJHCS's submission by grouping them into various categories to show that all were eventually sent or forwarded to a SaveOnSP email account. But that proves nothing—because SaveOnSP has refused to search for or produce any emails in the non-SaveOnSP email addresses, JJHCS *only* has the emails that eventually made their way to a SaveOnSP account. SaveOnSP's argument therefore tells us nothing about the content or number of relevant emails exclusively in the personal accounts at issue and only confirms that the non-SaveOnSP addresses were indeed used to conduct

SaveOnSP business.  *See AppDynamics*, 2014 WL 12860591, at *4 ("The fact that certain emails with personal email addresses were produced only because they were also contained in work email accounts demonstrates Plaintiff's good faith belief that other responsive emails may exist.").  SaveOnSP must conduct a reasonable search of its custodians' non-SaveOnSP email accounts for relevant documents so that JJHCS can confirm the full scope of implicated communications.

SaveOnSP cannot avoid these obligations by relying on an unsupported claim of burden.  JJHCS seeks only relevant business-related documents and communications from Miller's and Krawczyk's non-SaveOnSP email addresses; it is not requesting that SaveOnSP produce all documents and communications from their personal email addresses.  This presents minimal burden, if any:  all SaveOnSP must do is to run the agreed-upon search terms over Miller and Krawczyk's non-SaveOnSP email accounts to identify relevant documents.  Far from "harass[ment]" or "annoy[ance]," JJHCS's request is narrowly tailored to the needs of the case, supported by evidence in SaveOnSP's document productions, and in accordance with SaveOnSP's discovery obligations.  *See* Ex. 18 at 4 (July 26, 2023 Ltr. from E. Snow to K. Brisson).

Finally, SaveOnSP's reliance on *Owen v. Elastos Foundation*, 2023 WL 2537287 (S.D.N.Y. Mar. 16, 2023) is unavailing.  There, the party seeking discovery of personal emails pointed to a "single instance where [the party resisting discovery] *received*" a business document via his gmail.com email address" and "promptly forwarded it" to his business account.  *Id.* at 3 (emphasis in original).[4]  Here, by contrast, the evidence available to JJHCS points to multiple instances in which Miller and Krawczyk have used non-SaveOnSP accounts for business purposes, including to communicate with customers, direct employees on strategy, and discuss the CarePath program at issue in this litigation.  And unlike in *Owen*, the executives did not "promptly forward" a single one of the emails at issue here to their own SaveOnSP business accounts.[5]  These are precisely the circumstances that merit a search of their personal email accounts.  *See, e.g.*, *Tradeshift, Inc. v. BuyerQuest, Inc.*, 2021 WL 1586283, at *2 (N.D. Cal. Apr. 23, 2021) (ordering search of CEO's personal email account after discovery disclosed three relevant emails and observing that a contrary approach "would gut Rule 34 and make it way too easy for high-level executives to hide evidence").

*SaveOnSP must preserve, collect, and produce relevant evidence
from its employees' non-company email accounts*

Given this persistent use of non-company email accounts, there is no possible justification for SaveOnSP's outright refusal to produce relevant emails from the non-SaveOnSP email addresses identified above.  SaveOnSP claims that the communications from SaveOnSP custodians' personal email accounts were "logistical in nature."  *See* Ex. 1 at 2 (June 16, 2023 Ltr.

---

[4] In fact, the court in *Owen* observed that the fact pattern at issue in that case—a single instance of an executive immediately forwarding an email sent to his personal account to his work account—was distinguishable from the facts at issue in *AppDynamics*, 2014 WL 12860591.  *See Owen v. Elastos Found.*, 2023 WL 2537287, at *3.  As in *AppDynamics*, the executives here repeatedly used their personal accounts for various business purposes, including to communicate with external parties, to send emails while traveling (which SaveOnSP likewise maintains is the case here for Miller), and for "other related work."  *See AppDynamics,* 2014 WL 1286059, at *4.

[5] To the contrary, there are at least three instances where Miller and Krawczyk forwarded emails *from* their business accounts *to* their personal accounts, indicating that they intended to use their personal accounts for the express purpose of conducting business.  *See* Ex. 19 (SOSP_0136005); Ex. 20 (SOSP_0439985); Ex. 21 (SOSP_0474809).

from E. Snow to H. Sandick). Not so. The above examples demonstrate that Miller and Krawczyk regularly use non-SaveOnSP email addresses to engage in substantive discussions related to SaveOnSP's business operations. For example, Miller used his Yahoo email address to ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████ *See* Ex. 13 (SOSP_0176829) ("██████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████"); *see also* Ex. 8 (SOSP_0066491).

SaveOnSP also claims that its existing production is sufficient to capture these communications. *See* Ex. 1 at 2 (June 16, 2023 Ltr. from E. Snow to H. Sandick). This is pure speculation by SaveOnSP, and in any event, is insufficient. That other SaveOnSP personnel received some of the emails in question does not shed any light whatsoever on the full manner in which Miller and Krawczyk used their personal email addresses to conduct SaveOnSP business. Miller and Krawczyk were, after all, co-founders of SaveOnSP. Given the ample evidence that their personal accounts were in fact used for business purposes, they must be searched. SaveOnSP certainly cannot avoid doing so by pointing to a few emails involving other SaveOnSP personnel that managed to slip through in SaveOnSP's productions to date.

SaveOnSP has acknowledged its failure even to investigate the other email addresses used by Miller or Krawczyk to conduct SaveOnSP business, let alone preserve and collect relevant documents from these non-SaveOnSP email addresses. Indeed, at the meet and confer on this issue, SaveOnSP informed JJHCS that its clients had merely represented that they did not use their personal email accounts for business and, therefore, they were not even directed to preserve them. Even when confronted with multiple emails to the contrary, SaveOnSP's counsel repeated this excuse, refusing to further preserve and review these personal email accounts for responsive documents. Under these circumstances, SaveOnSP's unwillingness to undertake even a reasonable investigation to identify the full universe of relevant evidence violates its basic discovery obligations and raises serious questions of potential spoliation. *See AppDynamics*, 2014 WL 12860591, at *4 (rejecting as "premature" litigant's argument that corporate document productions were sufficient "before a search of the personal email accounts is conducted and responsive documents collected and produced"). Further, if it is genuinely the case that Miller or Krawczyk preserved the emails relating to SaveOnSP in their personal accounts— as SaveOnSP now belatedly argues—any burden in collecting and producing the relevant communications would be minimal or non-existent. *See AppDynamics*, 2014 WL 12860591, at *4 ("If [the movant's] suspicion proves unfounded, the production from these [executives'] email accounts will be limited."). Finally, JJHCS is not asking that Miller or Krawczyk be directed to "preserve wholly irrelevant personal emails (*e.g.,* spam)" as SaveOnSP disingenuously suggests below—but SaveOnSP's counsel should have directed these individuals to preserve all materials relevant to this litigation in their personal email accounts at the outset of this litigation.

JJHCS respectfully requests that this Court order SaveOnSP to preserve, collect, and produce relevant documents and communications from any implicated non-SaveOnSP email addresses, including those associated with Miller and Krawczyk identified herein.

*SaveOnSP's Position*

JJHCS moves on a phony issue. SaveOnSP has investigated, identified, preserved, and produced documents from the email accounts that its executives used to conduct business on the topics at issue in this case—including several non-SaveOnSP email addresses. SaveOnSP has told JJHCS what these email addresses are. It has produced thousands of documents from those addresses for the two SaveOnSP executives at issue in this motion: 3,815 emails and attachments for Jody Miller and 2,927 for Ron Krawczyk's files—and counting, as SaveOnSP is still producing documents. JJHCS's assertion that SaveOnSP did not reasonably investigate its executives' email usage is simply false.[6]

JJHCS comes nowhere close to meeting its burden of showing that Miller or Krawczyk used personal email accounts to conduct SaveOnSP business. Miller and Krawczyk have stated that they did not use them to conduct business related to SaveOnSP in the production time period of April 1, 2016 to July 1, 2022—JJHCS can verify this at deposition, if it likes.

The ten emails that JJHCS points to—out of over 60,000 emails that SaveOnSP has produced so far—are not to the contrary. In three, Miller or Krawczyk received emails at their personal accounts that were also sent to SaveOnSP accounts. SOSP_0431143; SOSP_0083513; SOSP_0384771. In another, Krawczyk received an inquiry at his personal account from a contact who asked if he was "still using this email," to which he responded by copying colleagues at their SaveOnSP accounts. SOSP_0271137. In three more, Miller or Krawczyk received general information at their personal accounts that they forwarded to SaveOnSP accounts.[7] SOSP_0177583 (spreadsheet created by MHA Specialty Pharmacy Solutions); SOSP_0176829 (mass email newsletter from AIS Health Daily); SOSP_0079356 (link to CarePath website). In two others (different versions of the same email thread), Miller used a Yahoo email account to send two emails to his SaveOnSP colleagues at their SaveOnSP email addresses, SOSP_0066491; SOSP_00062659—which he states that he did only inadvertently, while traveling. In the last one, Krawczyk states that he was discussing a business opportunity for venture different from SaveOnSP, which he forwarded to two SaveOnSP employees who had expressed interest in that separate venture—it did not relate to SaveOnSP business. SOSP_0176650.

This shows that, on the stray occasions when something related to SaveOnSP touched Miller's or Krawczyk's personal email account, it was sent to a SaveOnSP account, where it was preserved, searched, and (if relevant) produced. Pointing to such one-off emails—one or two a year, on average—is miles away from showing that they used their personal accounts to conduct SaveOnSP business. See *Owen v. Elastos Foundation*, 19-cv-5462, 2023 WL 2537287, at *3 (S.D.N.Y. Mar. 16, 2023) (plaintiffs did not show that individual used personal email to conduct

---

[6] JJHCS also asserts that SaveOnSP failed to preserve relevant emails from Miller' or Krawczyk's personal accounts. In fact, Miller and Krawczyk have stated that they are preserving any email in their personal accounts that could even arguably relate to SaveOnSP. They did not preserve wholly irrelevant personal emails (*e.g.*, spam).

[7] JJHCS points to three emails that Krawczyk forwarded from his SaveOnSP account to his personal account, which it claims shows an "inten[t] to use their personal accounts for the express purpose of conducting business. In fact, Krawczyk states that he sent one by accident, Ex. __ (SOSP_0136005), and sent the other two because he was in a remote location in which he could not access his SaveOnSP email but could access his personal email and he needed to review two contracts. *See* Ex. 20 (SOSP_0439985); Ex. 21 (SOSP_0474809). These one-off occurrences do not constitute conducting business.

business based on a single instance in which he received business document at his personal account and then forwarded it to his work account).[8]

JJHCS's motion is especially inappropriate because JJHCS identifies no gaps in SaveOnSP's production of nearly 8,000 email documents for Miller or Krawczyk while demanding that SaveOnSP collect and search their personal email accounts during the production period. In addition to the unwarranted time and cost of this wholly unnecessary effort, JJHCS's request would serve no purpose than to harass and annoy Miller and Krawczyk, which is not permitted. Fed. R. Civ. P. 26(g)(1)(B)(ii).

The Court should deny JJHCS's motion.

\*        \*        \*

The parties appreciate the Court's attention to this matter.

Respectfully submitted,
/s/ *Jeffrey J. Greenbaum*

Jeffrey J. Greenbaum
Katherine M. Lieb
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas

---

[8] No case cited by JJHCS requires the preservation of personal email accounts where the individual states that he did not conduct business using his personal email and evidence does not contradict those statements. *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (finding duty to preserve surveillance footage that six witnesses testified to would have captured relevant events); *CA, Inc. v. AppDynamics, Inc.*, 2014 WL 12860591, at \*4 (E.D.N.Y. Sept. 8, 2014) (compelling production of business founders' personal accounts when one founder testified "that he used his personal email accounts in connection with forming AppDynamics and possibly for other related work" and the other testified that he "would send work emails of his notes concerning the APM product to his personal account so that they would be easier to access when he traveled, which was 'a lot'"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 12942210, at \*5 (N.D. Cal. May 29, 2015) (compelling production of documents from deponent's personal email account that he said he used to conduct Mitsubishi business); *Mosaid Technologies Inc. v. Samsung Electronics Co., Ltd.*, 348 F. Supp. 2d 332, 336 (D.N.J. 2004) (finding spoilation where defendant never placed a litigation hold); *Tradeshift, Inc. v. BuyerQuest, Inc.*, 2021 WL 1586283, at \*2 (N.D. Cal. Apr. 23, 2021) (compelling production of individual's emails where defendant agreed that the individual probably used his Gmail account for work-related emails); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2972806, at \*2 (N.D. Cal. July 12, 2017) (compelling production of personal emails when testimony confirmed that individual exclusively used personal devices for work).

New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*

*/s/ E. Evans Wohlforth*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

David Elsberg (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

9

# Exhibit 1

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Elizabeth H. Snow
Associate
212.390.9330
esnow@selendygay.com

June 16, 2023

**Via E-mail**

Harry Sandick
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
hsandick@pbwt.com

**Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*
       (Case No. 2:22-cv-02632-ES-CLW)**

Dear Harry,

We write in response to your May 19, 2023 letter regarding the parameters of Save-OnSP's search methodology.

## I.    Standing Meetings with ESI

You ask SaveOnSP to add the following search term: bi-weekly W/2 (call* OR meeting*). SaveOnSP will.

## II.    Custodians

In your letter dated May 19, 2023, you propose that if SaveOnSP adds Andrea Waker (previously misidentified as Andrew Walker), JJHCS would be willing to add Lindsey Anderson as an additional custodian. SaveOnSP agrees.

You ask that SaveOnSP add Jillian Vincheski as a custodian. We will.

You also ask that SaveOnSP add Armand Peoples as a custodian. We will not. Mr. Peoples stopped working for SaveOnSP on November 10, 2018. After a reasonable investigation, we do not believe that SaveOnSP retained Mr. Peoples' files.

## III.    Notion Partners

You ask SaveOnSP to search for emails that include email addresses ending in "@notionpartners.com." We will.

You further ask that SaveOnSP specifically locate and produce the Notion Partners-created video itself, as well as any drafts thereof. SaveOnSP will produce the final version of the video.

## IV.    Custodial Sources

You ask that SaveOnSP to confirm that it has preserved, collected, and will produce relevant documents from the email address jlmwny@yahoo.com and any other email addresses used by Jody Miller for SaveOnSP-related communications. SaveOnSP will not collect, search, or produce emails from Jody Miller's personal email accounts; after a reasonable investigation, we do not believe these accounts contain any unique relevant documents. The single document that you identify, SOSP_0062579, which contains an email sent by Mr. Miller from the email address jlmwny@yahoo.com, is not to the contrary. The recipients of that email—which is logistical in nature and advises the recipients that Mr. Miller would join a call scheduled for the next day—include Jill Stearns, who is a custodian. The next email in the chain includes Mr. Miller's SaveOnSP email address.

We note that the additional search terms and custodians that SaveOnSP has agreed to add at JJHCS's request may delay the date by which SaveOnSP substantially completes its document production.

We reserve all rights and are available to meet and confer.

Best,

/s/ Elizabeth H. Snow

Elizabeth H. Snow
Associate

2

# Exhibit 2



www.pbwt.com

July 19, 2023

Katherine Brisson
(212) 336-2552

Elizabeth Snow, Esq.
Selendy Gay Elsberg, PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
> ***No. 2:22-cv-02632 (ES) (CLW)***

Dear Elizabeth:

We write further to our July 18 meet and confer concerning JJHCS's RFP No. 79, SaveOnSP's forthcoming production of text and Chatter messages, and the use of non-SaveOnSP email addresses by SaveOnSP personnel.

## I.    JJHCS's Request for Production No. 79

SaveOnSP's RFP 79 requests "All documents relating to any attempts by SaveOnSP to evade or avoid detection of the SaveOnSP Program by drug manufacturers, including but not limited to the creation of 'one time' or temporary copay coupons or credit cards for the purpose of paying a patient's out-of-pocket responsibility."

During the meet and confer, you stated that based on your initial investigation, you believe that, with respect to both JJHCS and other manufacturers, SaveOnSP used a temporary credit card one time as a "logistical work around" due to a pharmacy error. You also explained that because this one-time use was for "logistical" reasons, it was not done to "evade or avoid detection" of manufacturers for purposes of JJHCS's RFP No. 79. Please provide written confirmation that SaveOnSP only used a temporary credit card one time and the reason why the temporary credit card was used by July 26.

Additionally, as we previewed during the meet and confer and in our July 14 letter, JJHCS has identified several SaveOnSP documents showing that SaveOnSP used credit cards to cover portions of JJHCS patients' copay responsibility. *See, e.g.*, SOSP_0086178 (email with the subject line "tertiary credit card" demonstrating that a SaveOnSP "provided the tertiary credit

Elizabeth Snow, Esq.
July 19, 2023
Page 2

card" to cover a patient's Zytiga copay responsibility); SOSP_0091083 (email with the subject line, "BILLING ISSUE/TERTIARY CREDIT CARD UTILIZED" and states a tertiary credit card was used to cover the $5.00 balance for a Remicade patient's copayment); SOSP_0099566 (email with the subject line "tertiary credit card" indicating SaveOnSP used a tertiary credit card to cover the balance of a Simponi patient's copayment); SOSP_0262134 ("Zytiga should have a $10 remaining balance after copay assistance is applied.  The $10 would then be processed on the tertiary credit card.").  These documents cast doubt on SaveOnSP's representation during the meet and confer and in its July 10 letter that "[a]fter a reasonable investigation, we have determined that SaveOnSP used temporary credit cards as referenced in your Request for a drug sold by another manufacturer – not by Janssen."  July 10, 2023 Ltr. from M. Nelson to H. Sandick at 2.

SaveOnSP agreed to further investigate its use of temporary or tertiary credit cards with respect to both JJHCS and other manufacturers.  In light of the documents cited above, please provide written confirmation of the results of your supplemental investigation with respect to JJHCS and other manufacturers by July 26.

Finally, we note that JJHCS's RFP No. 79 is not limited to SaveOnSP's use of credit cards.  Therefore, while you continue to investigate SaveOnSP's use of credit cards, we understand that we are at impasse with regards to SaveOnSP's efforts undertaken to avoid detection by non-JJHCS manufacturers.  It is JJHCS's view that efforts to evade detection by non-Janssen manufacturers are relevant to JJHCS's tortious interference claim because they indicate that SaveOnSP engaged in deceitful conduct to hide its involvement in the medical claims process.  Furthermore, to establish a claim under the GBL, JJHCS must demonstrate that SaveOnSP's deceptive conduct harms the public at large.  *See Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 302 (E.D.N.Y. 2010) (a non-consumer plaintiff "establishes consumer-oriented conduct by showing that the acts or practices have a broader impact on consumers at large" (quotation marks omitted)).  SaveOnSP's conduct harms members of the public who take specialty medications on the SaveOnSP drug list, whether that medication is a Janssen Drug or is manufactured by another pharmaceutical company.  Any documents relating to the harm associated with SaveOnSP's efforts to avoid detection by manufacturers are relevant to this inquiry.  Accordingly, SaveOnSP's efforts to evade detection by manufacturers other than JJHCS are highly relevant to both claims asserted by JJHCS.  As we stated in our July 14 letter, we are at an impasse on this issue.

## II.     Non-Email Communications

SaveOnSP represented that it is reviewing various types of messages, including text and Chatter messages and will produce these messages "on a rolling basis."  Please confirm whether these messages will be produced prior to the substantial completion deadline of July 24.

## III.     Non-SaveOnSP Email Addresses

SaveOnSP represented that it has preserved, collected, and will produce relevant documents from the 4Front email accounts held by SaveOnSP custodians.  Thank you for agreeing

Elizabeth Snow, Esq.
July 19, 2023
Page 3

to provide JJHCS with a list of the SaveOnSP custodians who have 4Front email accounts.  Please provide this list by July 26.

We were surprised, however, that SaveOnSP has not investigated the full universe of email addresses used by Jody Miller or Ron Krawczyk to conduct SaveOnSP business, nor has SaveOnSP preserved and collected relevant documents from the SaveOnSP or non-4Front email addresses of Miller, Krawczyk, or other SaveOnSP custodians.  At the meet and confer, SaveOnSP refused to agree to further investigate the use of non-SaveOnSP and non-4Front email addresses by SaveOnSP custodians and similarly refused to preserve and collect relevant documents and communications therefrom.  Our belief that SaveOnSP custodians, including Jody Miller and Ron Krawczyk, conducted SaveOnSP business from their personal email accounts is based not on speculation, but on evidence discovered during the review of SaveOnSP's document productions. *See, e.g.*, SOSP_0079356; SOSP_00883513; SOSP_0177583.

It appears the parties are now at impasse on the issue of SaveOnSP's obligation to collect and product documents from the personal email accounts of custodians using non-SaveOnSP email addresses to conduct SaveOnSP business.  JJHCS will proceed with preparing a joint letter on this issue.

Please promptly confirm that SaveOnSP will preserve the personal email accounts SaveOnSP custodians used to conduct SaveOnSP-related business while this issue is pending. Finally, please provide certifications from Jody Miller and Ron Krawczyk that they have not deleted any emails, communications, data, or other relevant information from their personal email accounts by July 26.

Very truly yours,

*/s/ Katherine Brisson*
Katherine Brisson

# Exhibit 3

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

**selendy
gay
elsberg**

Andrew R. Dunlap
Partner
212.390.9005
adunlap@selendygay.com

March 31, 2023                    CONFIDENTIAL

Via E-mail

Harry Sandick
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
hsandick@pbwt.com

**Re:**    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-JMV-CLW)**

Dear Harry,

We write in response to your March 24, 2023 letter regarding SaveOnSP's
ongoing document productions.

## I.    **Master Services Agreements, Statements of Work, and Rate Cards**

You ask if we have produced all agreements between SaveOnSP and Express
Scripts or related entities. We have not. SaveOnSP is still in the process of produc-
ing documents, including such agreements. We interpret your letter as a request
that SaveOnSP prioritize production of those agreements. We will.

You ask that SaveOnSP produce all executed Statements of Work and Rate
Cards, as they are referred to in a September 10, 2020 Master Services Agreement
between SaveOnSP and Evernorth Health, Inc. After an investigation, we under-
stand that the Master Services Agreements did not include Statements of Work.
The Statement of Work and Rate Card included in SaveOnSP's initial production
were a third-party's form agreements for government clients. We do not believe
that SaveOnSP has any further Statements of Work or Rate Cards.

## II.    **Black and White Documents**

You identify various documents, produced in black and white, that you ask
us to re-produce in color. SaveOnSP is re-producing those documents in color, ex-
cluding native attachments, today.

Harry Sandick
March 31, 2023

## III.    Vendors and Consultants

You ask that we describe work done by four purported vendors for Save-OnSP during the relevant time period. After an investigation, we state:

- <u>4Front Consulting</u>: SaveOnSP never retained or paid 4Front Consulting to provide any services during the relevant time period.

- <u>Arexcel Consulting</u>: SaveOnSP never retained or paid Arexcel Consulting to provide any services during the relevant time period.

- <u>AssistRx</u>: AssistRx is a software vendor that provided SaveOnSP with a customer relations management software that it used from 2017 to 2020.

- <u>QuestEx</u>: QuestEx is a communications consultant that performed services for SaveOnSP in 2021.

You ask that we identify any vendors or consultants used by SaveOnSP who conducted services relevant to this litigation. After an investigation, we believe that one other vendor, EJR Consulting, a communications consultant, performed relevant work for SaveOnSP during the relevant time period.

## IV.    Weekly Touch Base Meetings

You ask us to produce all documents related to Weekly Touch Base meetings held between SaveOnSP and Express Scripts. We will produce any such documents that fall within our search parameters and the scope of discovery that we have agreed to provide.

## V.    4Front Consulting

You ask us to confirm that we have preserved, collected, and produced documents from 4Front Consulting Group email addresses. After an investigation, we understand that some SaveOnSP personnel occasionally used 4Front Consulting email accounts to conduct SaveOnSP business. SaveOnSP has preserved those documents, we have collected them from agreed custodians, and will produce any such documents that fall within our search parameters and the scope of discovery that we have agreed to provide.

We designate all of our responses CONFIDENTIAL under the November 22, 2022 Discovery Confidentiality Order.

Harry Sandick
March 31, 2023


Best,


/s/ Andrew R. Dunlap

Andrew R. Dunlap
Partner

# Exhibit 4

# Filed Under Seal

# Exhibit 5

# Filed Under Seal

# Exhibit 6

# Filed Under Seal

# Exhibit 7

# Filed Under Seal

# Exhibit 8

# Filed Under Seal

# Exhibit 9

# Filed Under Seal

# Exhibit 10

# Filed Under Seal

# Exhibit 11

# Filed Under Seal

# Exhibit 12

# Filed Under Seal

# Exhibit 13

# Filed Under Seal

# Exhibit 14

# Filed Under Seal

# Exhibit 15

# Filed Under Seal

# Exhibit 16

# Filed Under Seal

# **Exhibit 17**

# Filed Under Seal

# Exhibit 18

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Elizabeth Snow
Associate
212 390 9330
esnow@selendygay.com

July 26, 2023            **ATTORNEYS' EYES ONLY**

<u>**Via E-mail**</u>

Katherine Brisson
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
kbrisson@pbwt.com

**Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*** **(Case No. 2:22-cv-02632-ES-CLW)**

Dear Katherine,

Save On SP, LLC ("<u>SaveOnSP</u>") responds to the letter from Johnson & Johnson Health Care Systems Inc. ("<u>JJHCS</u>") dated July 19, 2023.

**I.    JJHCS's Request for Production No. 79**

In its July 19, 2023 letter, JJHCS asks about two aspects of RFP No. 79: its specific request regarding the use of temporary credit cards, as referenced in JJHCS's RFP No. 79, and its assertion that SaveOnSP attempted to evade detection by drug manufacturers like JJHCS.

*First*, JJHCS again asks about SaveOnSP's use of temporary credit cards.

Katherine Brisson
July 26, 2023



*Second*, you assert that that JJHCS has identified documents showing that

*Third*, you assert that documents regarding efforts to avoid detection by non-J&J manufacturers are relevant to JJHCS's claims. They are not. For JJHCS's tortious interference claim, you assert that the documents are relevant to Save-OnSP's motive in allegedly inducing patients to breach their CarePath contracts. But JJHCS's tortious interference claim relates solely to CarePath contracts. Compl. ¶¶ 107-11. For JJHCS's GBL claim, you assert that the documents are relevant to your allegations that SaveOnSP's conduct harms the public at large. But motive is not an element of a GBL claim, *Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 302 (E.D.N.Y. 2010), and JJHCS's GBL claims are limited to acts that harm JJHCS, Complaint ¶ 100. You do not explain how SaveOnSP's conduct relating solely to other manufacturers is relevant to either of those claims. As the Court stated at the March discovery conference: "what doesn't affect Johnson & Johnson is not part of this lawsuit," Mar. 17, 2023 Hr'g Tr. at 16:17-21. SaveOnSP opposes JJHCS's requests for these irrelevant documents.

## II.    Non-Email Communications

In the letter dated July 19, 2023, JJHCS asks whether SaveOnSP will produce text and Chatter messages prior to the substantial completion deadline. Save-OnSP will produce such messages on or before September 24, 2023.

## III.    Non-SaveOnSP Email Addresses

JJHCS asked SaveOnSP to provide a list of the 4Front email counts held by SaveOnSP custodians, claimed that SaveOnSP failed to investigate the full universe of email addresses used by Jody Miller and Ron Krawczyk, stated its intent to move to compel the production of documents from Miller and Krawczyk's personal email

Katherine Brisson
July 26, 2023

accounts, and requested that SaveOnSP confirm that SaveOnSP will preserve the personal email accounts of Jody Miller and Ron Krawczyk.

*First*, SaveOnSP collected, is reviewing, and is producing documents from the 4front email accounts for the following custodians:

- Alissa Langley;

- Claudia Dunbar;

- Jenna Benkelman;

- Jenna Ordonez;

- Jody Miller;

- Nick Morrissey; and

- Ron Krawczyk.

*Second*, JJHCS accuses SaveOnSP of not investigating the full universe of email addresses used by Jody Miller or Ron Krawczyk for SaveOnSP business. In fact, as we told you during the meet and confer, SaveOnSP did investigate. Both Miller and Krawcyzk conducted business using only their SaveOnSP and their 4front email accounts. SaveOnSP preserved, collected, reviewed, and produced documents from those accounts.

*Third*, you assert a "belief" that Miller and Krawcyzk conducted SaveOnSP business from their personal accounts. You are wrong. Courts look primarily at two factors when evaluating whether an individual used his personal email account to conduct business: (1) frequency of forwarding emails at personal address to the work address and (2) testimony by the individual that he did or did not use his personal email address to conduct business. *See Owen v. Elastos Foundation*, 19-cv-5462, 2023 WL 2537287, at *3 (S.D.N.Y. Mar. 16, 2023). JJHCS cites three emails as supposed evidence that Krawczyk conducted SaveOnSP business from his personal email account: (1) an email that Krawczyk received from a colleague at another business venture, SOSP_0177583, which he forwarded to Miller and Claudia Dunbar at their SaveOnSP email addresses; (2) an email that Krawczyk received from an employee at Compliance Meds Technologies, LLC, which copied Miller at his SaveOnSP email address, SOSP_0083513; and (3) an email that Krawczyk sent to Dunbar at her SaveOnSP email alerting her to a new product, SOSP_0079356. In its July 12, 2023 letter, JJHCS cited two emails as purported evidence that Miller conducted SaveOnSP business from his personal email account: (1) an email that Miller, and other SaveOnSP colleagues, received from ESI, SOSP_0431143, to which Miller did not respond; and (2) a mass email newsletter, which Miller forwarded to SaveOnSP colleagues at their SaveOnSP email addresses, including Claudia Dunbar and Krawczyk, SOSP_0176829. These sporadic

Katherine Brisson
July 26, 2023

and non-substantive emails do not show that Miller or Krawczyk conducted Save-OnSP business from their personal accounts, especially when contrasted with the 5,933 emails produced from Miller's SaveOnSP email account and 3,600 emails produced from Krawczyk's SaveOnSP email account. *Owen*, 2023 WL 2537287, at *3 (declining to order employee to produce documents from a personal account when his work account yielded over 13,000 documents and he had forwarded emails from his personal account to his work account). Given the clear lack of evidence that either Miller or Krawczyk used his personal email account to conduct SaveOnSP business, JJHCS's request serves no purpose other than to harass and annoy SaveOnSP's founders, which is an improper use of discovery. Fed. R. Civ. P. 26(g)(ii).

*Fourth*, although under no obligation to preserve their personal data, Miller and Krawczyk have not deleted any emails in their personal email accounts that relate to SaveOnSP.

\*          \*          \*

We reserve all rights and are available to meet and confer.

Best,

/s/ Elizabeth Snow

Elizabeth H. Snow
Associate

4

# Exhibit 19

# Filed Under Seal

# **Exhibit 20**

# Filed Under Seal

# **Exhibit 21**

# Filed Under Seal