# EXHIBIT A

**FILED UNDER SEAL - CONTAINS INFORMATION MARKED AS CONFIDENTIAL
UNDER THE DISCOVERY CONFIDENTIALITY ORDER.**

August 24, 2023

**VIA ECF**

Hon. Cathy Waldor, U.S.M.J.
U.S. District Court for the District of New Jersey
50 Walnut Street, Room 4040
Newark, NJ 07102

Re:    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
       *No. 2:22-cv-02632 (ES) (CLW)*

Dear Judge Waldor:

Defendant Save On SP, LLC ("SaveOnSP") seeks the Court's intervention to compel Plaintiff Johnson & Johnson Health Care Systems, Inc. ("JJHCS") to produce documents regarding the terms and conditions ("T&Cs") of the CarePath program, which JJHCS alleges that SaveOnSP induces patients to breach.  JJHCS asserts that it has taken every reasonable step to identify and produce documents about the CarePath terms and conditions—but as this Court already ruled, there is no basis to force JJHCS to search an apparently unlimited time period for documents that likely do not exist.

SaveOnSP states that the parties have met and conferred in good faith to resolve their disputes concerning these RFPs but were unable to do so. SaveOnSP submits this letter in accordance with Local Rule 37.1 and the Court's Civil Case Management Order. JJHCS disagrees that the parties have completed the meet-and-confer process, as JJHCS was still gathering factual information from almost 15 years ago in order to respond to SaveOnSP's questions about the CarePath T&Cs when SaveOnSP elected unilaterally to declare impasse and send a joint letter to JJHCS, in violation of Court rules. SaveOnSP responds that JJHCS's characterization of the parties' negotiations is false, as the discovery record shows.

***SaveOnSP's Position***

SaveOnSP asks the Court to compel JJHCS to search for and produce documents regarding its drafting, understanding, and enforcement of its CarePath T&Cs. SaveOnSP initially made this request in a joint letter filed in February 2023. The Court ordered SaveOnSP to defer its requests until JJHCS completed its production of documents regarding the T&Cs. That production omits key categories of documents. JJHCS does not dispute that the documents SaveOnSP seeks are relevant.

Hon. Cathy L. Waldor
August 24, 2023
Page 2

*Background*

JJHCS sues SaveOnSP for tortious interference with contract. JJHCS alleges that Save-OnSP induced participants in SaveOnSP-advised health plans to breach two sets of T&Cs that JJHCS imposes for the CarePath program: (1) T&Cs that applied to all 17 Janssen Drugs at issue through December 2021 and still apply to 15 of those drugs (all except Stelara and Tremfya) ("General T&Cs"); and (2) T&Cs that JJHCS introduced for Stelara and Tremfya effective January 2022 ("New Stelara & Tremfya T&Cs").[1] Compl ¶¶ 106-11. JJHCS alleges that patients breach the General T&Cs by participating in the "SaveOnSP Program" because those T&Cs provide that CarePath is not available with any "other offer" and SaveOnSP's services purportedly constitute an "offer." Compl. ¶¶ 19-20, 106-11. JJHCS asserts that patients breach the New Stelara & Tremfya T&Cs by participating in the "SaveOnSP Program" because one term requires patients to pay "an out-of-pocket cost for [their] medication," another prohibits "[p]atients who are members of health plans that claim to eliminate their out-of-pocket costs" from receiving cost support, and SaveOnSP's services purportedly violate both. *Id.* ¶¶ 102-03.

In ruling on SaveOnSP's motion to dismiss, the Court held that arguments regarding the meaning of the terms and conditions should be decided at summary judgment with the benefit of extrinsic evidence. ECF No. 68 at 16. Courts interpret ambiguous contracts terms based on the intent of the parties to the contract while drafting. *Serico v. Rothberg*, 234 N.J. 168, 178 (2018). Also, "courts will consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation." *Id.* (citing *In re County of Atlantic*, 230 N.J. 237, 254-55 (2017)). Documents relating to JJHCS's efforts to en-force the T&Cs are relevant to its practical construction of those T&Cs.

JJHCS does not want to produce documents regarding the meaning of its T&Cs. JJHCS was aware of SaveOnSP for at least ***five years*** before it filed this lawsuit. Never once in that time did it assert that SaveOnSP's services breached its T&Cs. SaveOnSP believes that JJHCS's documents will show that, until shortly before it filed this lawsuit, JJHCS never understood or in-tended its T&Cs to apply to services like SaveOnSP's, that it never believed that its T&Cs barred patients on SaveOnSP-advised plans from receiving CarePath funds, and that it never tried to enforce its T&Cs to exclude patients on those plans. JJHCS's stated interpretation of its T&Cs in this case is simply a made-for-litigation position. JJHCS's documents may well also show that, during this time, JJHCS enforced other provisions of the T&Cs or enforced the same provisions of the T&Cs against other conduct but opted not to enforce them against patients on SaveOnSP-

---

[1] These defined terms refer to sets of terms and conditions that are substantively similar, even if not identical. The CarePath terms and conditions changed in small ways during the relevant time period. *Compare* Ex. 1 (JJHCS_00017335) *with* DARZALEX® Savings Program (Sept. 2021), https://www.janssencare-path.com/sites/www.janssencarepath-v1.com/files/darzalex-faspro-yondelis-savings-program-overview.pdf.

Hon. Cathy L. Waldor
August 24, 2023
Page 3

advised plans—showing that JJHCS acquiesced in any purported breach of those T&Cs by patients on SaveOnSP-advised plans.

JJHCS has resisted producing these critical T&C documents. In its Request for Production Nos. 12 and 13, SaveOnSP requested all documents and communications concerning the meaning of CarePath's T&Cs from January 1, 2009 to the present. JJHCS refused to produce large categories of those documents, and SaveOnSP moved to compel in February 2023. Feb. 24, 2023 Joint Ltr. at 23-24. During a March 17, 2023 conference, the Court noted that the origin of CarePath's T&Cs was relevant. Mar. 17, 2023 Hr'g Tr. at 43:19-24 ("MS. NELSON: If CarePath came into existence in 2016 and when it came into existence, someone at Johnson & Johnson said, 'Hey, we have these terms and conditions from our old program. Let's use those again.' THE COURT: Right. That's what I'm trying to get at."); *id.* at 44:20-2 ("THE COURT: … I do think that in order to see the evolution of terms and the reason there for, it's necessary to give some amount of background."). JJHCS proposed that it make its agreed upon production, and "if doesn't answer all of [SaveOnSP's] questions, they can always come back for more." *Id.* at 45:2-3. The Court agreed and ordered SaveOnSP to defer its requests until after JJHCS made its production of T&C-related documents. *Id.* at 46:14-47:1.

JJHCS did not begin producing T&C-related documents until April 28, 2023. SaveOnSP reviewed JJHCS's production, found that it lacked documents regarding important subjects, and asked JJHCS to add six search terms and three custodians to capture those missing categories of documents. Ex. 2 (May 17, 2023 Ltr.). JJHCS rejected SaveOnSP's proposal and refused to add any new custodians or search terms. Ex. 3 (May 26, 2023 Ltr.). JJHCS finally completed its "priority" production of T&C-related documents on June 9, 2023, the original substantial completion deadline. *See* Ex. 4 (June 15, 2023 Email from J. Haigney Long).

Although JJHCS told the Court that it would make a "substantial" production of T&C-related documents, Mar. 17, 2023 Hr'g Tr. At 40:14-15, its production was paltry.[2] SaveOnSP asked JJHCS to (1) conduct a thorough search for documents relating to the drafting of the General T&Cs; (2) add additional search terms designed to identify documents relating to JJHCS's drafting, understanding, and enforcement of both sets of T&Cs; (3) add two custodians that JJHCS identified as responsible for drafting the New Stelara and Tremfya T&Cs; and (4) extend its search for documents relating to its enforcement of the new Stelara and Tremyfa T&Cs

---

[2] JJHCS tries to inflate the number of T&C-related documents that it produced by citing the number of documents it produced that "hit on search terms" related to the T&Cs. SaveOnSP accurately describes JJHCS's production of documents that are actually relevant to the T&Cs: No documents regarding the drafting of the General T&Cs, no documents regarding the enforcement of the General T&Cs, no documents regarding its understanding of the key provisions of the General T&Cs, no documents regarding its decision to revise the New Stelara and Tremfya T&Cs, and no documents regarding its business decision to implement the New Stelara & Tremfya T&Cs. The vast majority of the documents JJHCS produced are copies of the T&Cs or other communications repeating the text of the T&Cs.

Hon. Cathy L. Waldor
August 24, 2023
Page 4

through the present (as its efforts to enforce them are ongoing). Ex. 3 (May 26, 2023 Ltr.). JJHCS refused. It refused to add any custodians or search for any recent enforcement documents. Ex. 5 at 3-4 (July 17, 2023 Ltr.). It offered only to search eight more months of one custodian's documents and add two limited search terms. *Id.* at 2.

Contrary to JJHCS's assertions, the parties have fully met and conferred. As the discovery record shows, SaveOnSP has been asking for these documents for *eight months*. Since the March 17, 2023 conference alone, the exchanged extensive correspondence—on May 17, May 19, May 26, June 29, July 17, and July 24, 2023. Ex. 2 (May 17, 2023 Ltr.); Ex. 6 (May 19, 2023 Ltr.); Ex. 3 (May 26, 2023 Ltr.); Ex. 7 (June 29, 2023 Ltr.); Ex. 5 (July 17, 2023 Ltr.); Ex. 8 (July 24, 2023 Ltr.)—and met and conferred by phone on June 23, 2023. JJHCS made its last, insufficient proposal on July 17, 2023. Ex. 5 (July 17, 2023 Ltr.). In a detailed letter of July 24, 2023, Save-OnSP explained why that proposal was insufficient, laid out the steps that JJHCS should have taken to conduct a reasonable investigation, and explained that if JJHCS did not agree then the parties would be at impasse. Ex. 8 at 3-7 (July 24, 2023 Ltr.). JJHCS did not respond. SaveOnSP was not required to negotiate against itself or agree to JJHCS's wholly unreasonable proposal. JJHCS's assertion below that SaveOnSP "walked away" from negotiations is thus flatly false. The parties are at impasse. JJHCS cannot delay this motion practice any longer by mischaracterizing the parties' negotiations.

*General T&Cs*

The Court should compel JJHCS to produce documents reflecting its drafting, understanding, and enforcement of the General T&Cs. JJHCS alleges that the plan benefits that SaveOnSP's clients offer to their patients are an "offer" under those T&Cs, and thus patients enrolled in such plans are not eligible for CarePath funds. Compl. ¶¶ 19-20, 106-11. SaveOnSP argues, ECF. No. 31 at 28-29, that neither its services nor the terms of its clients' health plans are an "offer," including because they are not like the "coupon[s]," "discount[s]," "prescription savings card[s]," or "free trial[s]" that precede the term "offer" in the relevant provision. *See generally New Castle County v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 243 F.3d 744, 752 (3d Cir. 2001) (under doctrine of *ejusdem generis*, a general term following specific terms applies only to items like those specifically defined). SaveOnSP also argues, *id.* at 28, that JJHCS's reading of "offer"—which would deny CarePath funds to patients who have plans with copay assistance benefits—would render meaningless other provisions of the General T&Cs that require patients to comply with all plan terms. *See, e.g.*, *Hardy ex rel. Dowdell v. Abdul-Matin*, 198 N.J. 95, 103 (2009) (declining

Hon. Cathy L. Waldor
August 24, 2023
Page 5

to read a contract in a manner which would render certain terms meaningless).[3] SaveOnSP is entitled to documents going to the meaning of the General T&Cs.

     *Drafting*. JJHCS has produced no documents regarding the drafting of the General T&Cs, despite promising to do so. Feb. 24, 2023 Joint Ltr. at 23-24.[4] Even if, arguendo, the "other offer" language is susceptible to two different, reasonable readings, it cannot—and does not—dispute that such documents are relevant. Courts interpret ambiguous contract terms based on the intent of the parties to the contract, *Serico v. Rothberg*, 234 N.J. 168, 178 (2018), and JJHCS unilaterally drafted the General T&Cs here. This Court agreed that SaveOnSP is entitled to documents concerning the General T&C's origins. Mar. 17, 2023 Hr'g Tr. at 43:19-24, 44:20-22.

     JJHCS based CarePath's General T&Cs on the T&Cs of prior Johnson & Johnson copay assistance programs, but it refuses to identify those programs or disclose whether it has possession, custody, or control of documents relating to them. Ex. 5 at 1-2 (July 17, 2023 Ltr.). JJHCS **knows** what these programs were: It admits below that one of its custodians, Adrienne Minecci, was "involved in the process of transitioning at least one predecessor co-pay support program to the CarePath program" and worked at JJHCS during an eight-month period "during which the predecessor programs were combined under the CarePath umbrella." Yet JJHCS **withholds** the programs' names as well as the names of Johnson & Johnson employees who worked on those programs, and it **refuses** to search the files of those programs or their employees. JJHCS's glowing descriptions below of its discovery efforts—it conducted a "robust" investigation, made "considerable effort," "followed every reasonable lead and explored every reasonable avenue"—are thus bunk: JJHCS flatly refuses to search the files of the predecessor programs from which it admits the General T&Cs were drawn.

     JJHCS offered to produce additional documents from Minecci for the additional eight months (August 1, 2015 to April 1, 2016) that it says included the transition from its predecessor programs to CarePath, Ex. 5 at 2 (July 17, 2023 Ltr.). This is woefully inadequate, as it does not

---

[3] These provisions include: (1) "This program is only for people . . . using commercial or private health insurance for their Janssen medication"; (2) "You may not seek payment for the value received from this program from any health plan"; (3) "To use this program, you must follow any health plan requirements." DARZALEX® Savings Program (Sept. 2021), https://www.janssencarepath.com/sites/www.janssencarepath-v1.com/files/darzalex-faspro-yondelis-savings-program-overview.pdf.

[4] JJHCS asserts below that SaveOnSP's assertion that JJHCS has not produced responsive documents on this topic is false. SaveOnSP's assertion is true: JJHCS does not, and cannot, identify a single document that it produced relating to the drafting of the General T&Cs. JJHCS also asserts that it "has looked for documents relating to the drafting of the CarePath T&Cs and has produced whatever non-privileged documents it has identified." This means nothing, as JJHCS has produced **nothing** relating to the drafting of the General T&Cs and has not searched the files of the predecessor programs where they were drafted.

Hon. Cathy L. Waldor
August 24, 2023
Page 6

even attempt to capture the origin of the General T&Cs that JJHCS says go back at least as far as 2010.

The Court should compel JJHCS to (1) identify the predecessor programs from which CarePath's General T&Cs were drawn; (2) identify the individuals within Johnson & Johnson (whether at JJHCS or another J&J entity) who worked on those T&Cs and any non-custodial sources related to those T&Cs; and (3) gather and produce relevant documents from those sources, using at a minimum the search terms on Exhibit 7, plus any other terms likely to identify documents relating to the drafting of the General T&Cs.

JJHCS asserts below that it need not identify the predecessor programs or their employees because "nothing in SaveOnSP's discovery requests require such identification." Nonsense. SaveOnSP requested documents relating to the drafting of the General T&Cs. Ex. 9 at RFP No. 12 (SaveOnSP's First Set of Reqs. for Prod.)("From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions."). Because JJHCS admits that those T&Cs were largely drawn from predecessor programs, JJHCS must produce documents from those programs, which necessarily includes identifying those programs and collecting documents from the individuals who worked on them. SaveOnSP has also served an interrogatory asking JJHCS to identify individuals with knowledge of the drafting of the General T&Cs, which necessarily requires JJHCS to identify individuals who worked at the predecessor programs where those T&Cs originated. Ex. 10 at Rog. No. 3 (SaveOnSP's First of Interrogatories) (asking JJHCS to "[i]dentify each person who participated in or had responsibility for drafting or revising CarePath's terms and conditions for each Janssen Drugs, from January 1, 2009 through the present"). JJHCS cannot avoid responding to these straightforward discovery requests based on a made-up technicality; its attempts to do so only further delay its compliance with its discovery obligations.

JJHCS asserts that it "is not even able to make a production of documents from a time period earlier than 2013 due to applicable preservation and/or retention capabilities." *See also* Ex. 5 at 1-2 (July 17, 2023 Ltr.) (making the same claim). Even if true, this would not excuse JJHCS from searching for records going back through 2013. More troublingly, JJHCS is playing word games. JJHCS does not say that it ***lacks*** documents from before 2013. If it did not have any pre-2013 documents it could say so directly. JJHCS rather says that it is "not … able" to produce documents from before 2013, but it does not explain why. If JJHCS wants to withhold documents in its possession based on a purported inability to produce them, it has the burden of showing that the documents are not reasonably accessible. *See Major Tours, Inc. v. Colorel*, 2009 WL 3446761, at *2 (D.N.J. Oct. 20, 2009) ("On a motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue cost or burden" (quoting Fed. R. Civ. P. 26(b)(2)(B))). JJHCS flunks that test here. It offers only a vague, conclusory assertion about its "capabilities." It does not explain at all, much less in the required detail, what the issues with its preservation or retention capabilities are or why they would prevent it from searching for or producing relevant documents.

Hon. Cathy L. Waldor
August 24, 2023
Page 7

JJHCS complains about having to search for documents from before 2016 (or, in Minecci's case, before late 2015). But SaveOnSP is not responsible for when and how JJHCS drafted the T&Cs that it now alleges were breached. JJHCS must search for documents relating to the drafting of those T&Cs, whenever that drafting may have occurred, and JJHCS admits that the original drafting occurred years before 2016. JJHCS also suggests that searching for these earlier documents would be unduly burdensome. But JJHCS has the legal burden of explaining what its production burden would be, *Colorel*, 2009 WL 3446761, at *3, which it fails to do. It has not identified who its custodians from its predecessor programs would be, much less run search terms to determine how many of their documents it would need to review.

JJHCS insists that searching for earlier documents would be a "wild goose chase," "unlikely" to identify relevant documents. This is not credible. The General T&Cs did not spontaneously self-generate; JJHCS drafted them. It originally drafted those T&Cs for predecessor programs. It knows what those programs are and who worked for them. Searching the files of those programs and their employees under JJHCS's possession, custody, and control is not some snipe hunt—it is a fundamental discovery obligation. JJHCS says that it is unlikely to find a drafting history for the General T&Cs because they were not negotiated between two parties. But drafting history is not limited to negotiated contracts; it can include a party's drafting of a one-sided contract, *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 106 (D.N.J. 1990) (compelling production of documents regarding the drafting history of a standard-form insurance contract) and the drafting of the General T&Cs here includes drafting of T&Cs at JJHCS's predecessor programs. JJHCS also says that it is unlikely to find drafting documents because the "other offer" provision of the General T&Cs is a "standard" term "of old vintage." But JJHCS presents no evidence indicating that the term was standard at the time that JJHCS drafted the term for its predecessor programs; it cites primarily other companies' T&Cs from 2022 and 2023.[5] Even if the term were standard now, it is entirely possible that J&J—one of the largest drug manufacturers in the country—originally drafted the term and that other manufacturers later adopted it. Even if it turns out that JJHCS adopted the term from another manufacturer, that history could show how JJHCS understood the other manufacturer to use that term, and hence JJHCS's understanding of the term in its own T&Cs. Either way, the drafting history is relevant; JJHCS must search for it.

Finally, JJHCS asserts that pre-2016 documents cannot bear on the meaning of the General T&Cs "in connection with the SaveOnSP Program," as SaveOnSP was formed in 2016. To the extent that JJHCS argues that drafting history is irrelevant if it does not specifically refer to

---

[5] JJHCS cites a webpage from 2011 announcing that AstraZeneca will offer a savings card for its drug Nexium that "cannot be combined with any other offer." This single example does not show that the term was standard at the time. It also omits key language present in the "other offer" provision at issue referring to "coupon[s]," "discount[s]," "prescription savings card[s]," or "free trial[s]."

Hon. Cathy L. Waldor
August 24, 2023
Page 8

SaveOnSP or other "maximizers," it is simply wrong. The drafting history should show what JJHCS understood that the General T&Cs meant—including the "other offer" provision. Save-OnSP could use that understanding to show that its services are not like the "offers" that JJHCS understood the term to include.

  ***Enforcement***. JJHCS has produced no documents regarding its enforcement of the General T&Cs, asserting that such documents are irrelevant. March 17, 2023 Hr'g Tr. at 45:18-46:3. In fact, the law is clear that evidence regarding performance of a contract can be used to demonstrate the meaning of an ambiguous contract—especially in case like this where only one party drafted it. *See Quick v. N.L.R.B.*, 245 F.3d 231, 247 (3d Cir. 2001) ("[A]ny course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement" (quoting Restatement (Second) of Contracts § 202(4))); *Int'l Paper Co. v. Rexam, Inc.*, 2013 WL 3043638, at *5 (D.N.J. June 17, 2013) (recognizing that unilateral conduct may be considered as a matter of contract interpretation and compelling plaintiffs to produce documents in response to requests seeking documents regarding course of performance evidence).

  The Court should compel JJHCS to gather and produce documents relating to its enforcement of the General T&Cs, including both attempts to enforce and considerations of whether to enforce or not. These documents must include those relating to (1) the "other offer" provision in any circumstance (not limited to copay assistance), which is relevant to the meaning of that provision; (2) all other provisions of the General T&Cs; and (3) all Benefits Investigations for the Janssen Drugs at issue.

  JJHCS asserts that only its enforcement of the "other offer" provision is relevant. Not so. JJHCS's prior efforts to enforce ***other*** provisions of the General T&Cs are highly relevant to SaveOnSP's mitigation and acquiescence defenses, because they could show that JJHCS intentionally did not seek to enforce the "other offer" provision in similar circumstances. Aff. Defs. ¶¶ 24-29, 37-38. For example, JJHCS has produced talk tracks stating that a patient on one of it drugs would be ineligible for CarePath funds if they submitted out-of-pocket costs paid by Care-Path as a claim for payment to a Health Savings Account or if the patient lacked commercial or private health insurance—but the tracks say nothing about patients being ineligible under the "other offer" provision if they were on a so-called maximizer plan. If JJHCS opted to enforce other provisions of the General T&Cs but not the "other offer" provision, it could show that JJHCS acquiesced to SaveOnSP's conduct. *See also*, *N.J., Dep't of Env't Prot. v. Gloucester Env't Mgmt. Servs., Inc.*, 264 F. Supp. 2d 156 (D.N.J. 2003) ("Where a party fails to declare a breach of contract, and continues to perform under the contract after learning of the breach, it may be deemed to have acquiesced in an alteration of the terms of the contract, thereby barring its enforcement." (collecting cases)). JJHCS then asserts that the only relevant documents regarding its enforcement of the General T&Cs are records of its calls with patients, produced by its vendor TrialCard. Not so. Those call records do not and could not show JJHCS's decisions about which of the General T&Cs to enforce, which are critical to showing JJHCS's understanding of its own T&Cs. Those decisions likely will be reflected in documents like emails,

Hon. Cathy L. Waldor
August 24, 2023
Page 9

communications, meeting minutes, and memoranda that JJHCS has not produced and which it refuses to conduct a reasonable search for.

JJHCS also asserts that its Benefits Investigations are irrelevant to its enforcement efforts because they "do not relate at all to co-pay support." This is demonstrably false. ███████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ *See, e.g.*, Ex. 11 (JJHCS_00003355); Ex. 12 (JJHCS_00003447); Ex. 13 (JJHCS_00003570). In both its claims, JJHCS asserts that members of such plans are ineligible for copay assistance through CarePath. Compl. ¶¶ 108, 113. If JJHCS identified a patient on a SaveOnSP-advised plan but continued to provide that patient with copay assistance benefits, that would be highly relevant to SaveOnSP's defenses that JJHCS failed to mitigate its supposed damages, Aff. Defs. ¶¶ 24-29, and acquiesced to SaveOnSP's conduct, *id.* ¶¶ 37-38. Beyond that, if JJHCS's Benefits Investigations identified other supposed breaches of the "other offer" provision (*e.g.,* a patient combining CarePath with a coupon) or of other General T&Cs, and JJHCS opted to enforce those provisions while not enforcing the "other offer" provision against patients on SaveOnSP-advised plans, that would be relevant to SaveOnSP's defense that JJHCS acquiesced to its conduct. JJHCS cannot withhold these critical documents.

***Understanding***. JJHCS cannot dispute that documents regarding its understanding of the General T&Cs are relevant, but it has produced no documents regarding its understanding of the key provisions of the General T&Cs. It has produced nothing on its purported understanding that SaveOnSP's services constitute an "other offer" under the General T&Cs. It has produced nothing regarding its understanding of the "other offer" provision in general, or the other parts of the General T&Cs that SaveOnSP cited in its motion to dismiss. ECF No. 31 at 27-29. JJHCS has produced only a handful of documents that even arguably relate to the meaning of the General T&Cs, such as ███████████████████████████████████████████████████ ████████████████████████████ *see* Ex. 14 (JJHCS_00008764); Ex. 15 (JJHCS_00042080), and a few emails ███████ *see* Ex. 16 (JJHCS_00075534).

JJHCS's production is paltry because it used heavily restricted search terms. It offered to add two terms: (1) the complete text of the 2021 version of the "other offer" provision: "This program offer may not be used with any other coupon, discount, prescription savings card, free trial, or other offer"; and (2) "other offer" w/5 (accumulat* OR maximiz* OR "health plan*" OR insur*). These terms will only pick up the final versions of the General T&Cs from 2021, not the older version of the General T&Cs that contain slightly different language or documents

Hon. Cathy L. Waldor
August 24, 2023
Page 10

discussing the *meaning* of any individual terms.[6] The Court should compel JJHCS to conduct a reasonable search for documents related to its understanding of the General T&Cs.

      For JJHCS to conduct a reasonable search for documents relating to its understanding and enforcement of the T&Cs, SaveOnSP proposed that JJHCS add these search terms:

- ("coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*") AND (accumulat* OR maximiz* OR "health plan*" OR insur* OR Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program" OR "program")

- "health plan*" AND ((term* w/3 condition*) OR "T&C" OR "TNC")

- (prohibit* OR bar* OR enforce*) AND ((term* w/3 condition*) OR "T&C" OR "TNC")

- "Benefits Investigation*" AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga)

Ex. 2 at 6-7 (May 17, 2023 Ltr.); Ex. 8 at Ex. A (July 24, 2023 Ltr.). JJHCS refused, asserting that doing so would require it to review an additional 313,000 documents, which it said would constitute an undue burden. Ex. 3 at 4 (May 26, 2023 Ltr.). Following the June 23, 2023 meet and confer, SaveOnSP proposed a more limited set of search terms broken down into smaller phrases. Ex. 7 at Ex. 1 (June 29, 2023 Ltr). To clarify, SaveOnSP requests that the Court compel JJHCS to add the following search terms:

- (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") AND ((term* w/3 condition) OR "T&C" OR "TNC" OR "other offer")

---

[6] JJHCS's first proposed term is also based on the 2021 version of the term, not the 2017 version that applied during most of the time period. The 2017 version states that "[t]his **offer** may not be **combined** with any other coupon, discount, prescription savings card, free trial, or other offer." Ex. 1 (JJHCS_00017335). In 2021, it stated, "[t]his **program** offer may not be **used** with any other coupon, discount, prescription savings card, free trial, or other offer." DARZALEX® Savings Program (Sept. 2021), https://www.janssencarepath.com/sites/www.janssencarepath-v1.com/files/darzalex-faspro-yondelis-savings-program-overview.pdf (emphasis added on the differences between the 2017 version and the 2021 version). This indicates that the provision was substantially drafted prior to January 2017 and amended between 2017 and 2021.

Hon. Cathy L. Waldor
August 24, 2023
Page 11

- ("coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*") AND (accumulat* OR maximiz* OR "health plan*" OR insur* OR Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program" OR "program")

- "Benefits Investigation*" AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga)

Ex. 7 at Ex. 1 (June 29, 2023 Ltr.). JJHCS states that these terms would yield 188,000 documents for review, which it says would be unduly burdensome.

JJHCS's claims of burden are beyond meritless. Documents concerning its General T&Cs go to the heart of its tortious interference claims. The amount in dispute is enormous—JJHCS seeks over $100 million in damages, and climbing. Compl. ¶ 5. JJHCS has massive resources—even putting aside its other divisions, J&J makes over $50 billion from drug sales each year, including over $10 billion from Stelara and Tremfya alone. *2022 Annual Report*, JOHNSON & JOHNSON at 25 (Mar. 2023) https://www.investor.jnj.com/asm/2022-annual-report. JJHCS has reviewed a shockingly small number of documents to date—only "close to 20,000", June 27, 2023 Hr'g Tr. 65:20-21—and so cannot argue that it has already incurred disproportionately large discovery costs. And the 188,000 documents identified by these searches are still a fraction of the more than 670,000 documents that SaveOnSP is reviewing in response to JJHCS's demands. The 5,300 to 6,300 attorney hours that JJHCS estimates for its review do not change this conclusion; SaveOnSP's attorneys spent over 10,000 attorney hours reviewing documents in May alone. If SaveOnSP's review of many more documents was proportionate and was not unduly burdensome, then JJHCS's review of far fewer documents cannot be. JJHCS must live up to its basic discovery responsibilities.

*New Stelara & Tremfya T&Cs*

In January 2022, JJHCS implemented the New Stelara & Tremfya T&Cs for those two drugs, while deciding not to implement new T&Cs for other Janssen drugs at issue. Whether and how JJHCS attempted to enforce the New Stelara & Tremfya T&Cs is a critical issue. JJHCS says that these T&Cs specifically exclude members of SaveOnSP-advised plans from CarePath coverage; if JJHCS did not enforce, or did not fully enforce, those T&Cs against members of SaveOnSP plans, it could show that JJHCS acquiesced to SaveOnSP's conduct or that JJHCS failed to mitigate its damages. Yet JJHCS's production regarding the New Stelara & Tremfya T&Cs has critical gaps: (1) no documents reflect the decision to revise those T&Cs; (2) no documents show the business decision to implement the New Stelara & Tremfya T&Cs; and (3) few documents show the actual implementation and enforcement of the New Stelara & Tremfya T&Cs.

Hon. Cathy L. Waldor
August 24, 2023
Page 12

*First*, JJHCS has produced no documents regarding its decision to revise the New Stelara and Tremfya T&Cs. (JJHCS asserts below that this is inaccurate, but it is true and JJHCS does not cite a single document to the contrary.) It is highly likely that such documents exist, as JJHCS has produced documents showing that ███████████████████████████████████████ ███████ *See, e.g.*, Ex. 17 (JJHCS_00008722) ██████████████████████████ ████████████ JJHCS has also produced approximately 30 documents regarding its drafting of the New Stelara & Tremfya T&Cs, mostly having to do with ████████████████████████ ████████████████████████████████████████ *See, e.g.*, Ex. 18 (JJHCS_00005373-76-) (email regarding ████████████████████████████████████████ ; Ex. 19 (JJHCS_00005901) ████████

JJHCS's production here is deficient because it both used restrictive search terms and refuses to add as custodians three of the six individuals that it identified as responsible for drafting and revising the T&Cs, Ex. 20 at 11 (JJHCS's Resps. & Objs. to SaveOnSP's First Set of Interrogatories)—Jennifer De Camara, Harman Grossman, and Savaria Harris—because they are attorneys. SaveOnSP is not currently pursuing Grossman, who appears to work as a litigation counsel. But De Camara and Harris do not; they are corporate attorneys. Attorneys may be custodians where, as here, they are percipient witnesses to the events at issue: "Their status as attorneys does not shield . . . custodians unconditionally from fulling the discovery obligations of [plaintiffs]." *In re Rail Freight Surcharge Antitrust Litig.*, No. 07-489 (PLF/JMG/AK), 2009 WL 3443563, at *10 (D.D.C. Oct. 23, 2009). SaveOnSP is entitled to explore if their communications regarding the T&Cs might not be privileged, for example because they constituted business advice or were disclosed "to employees who do not need to know the information." *Schwarz Pharm., Inc. v. Teva Pharm. USA, Inc.*, Civ. Action No. 01-4995, 2007 WL 2892744, at *4 (D.N.J. Sept. 27, 2007) (Salas, M.J.).

JJHCS asserts below that there is "no evidence" that De Camara or Harris participated in non-privileged business communications regarding the New Stelara & Tremfya T&Cs. But any such evidence is most likely to be found in their files, which JJHCS is withholding. And while JJHCS accuses SaveOnSP of simply speculating that De Camara or Harris had non-privileged communications on this highly relevant topic, JJHCS notably does not represent that they did ***not*** have such communications, something it could easily do were it true.

The Court should compel JJHCS to conduct a reasonable search for documents about its decision to revise the New Stelara and Tremfya T&Cs and its drafting thereof, including by adding De Camara and Harris as custodians and using at a minimum the search terms listed above.

Hon. Cathy L. Waldor
August 24, 2023
Page 13

*Second*, JJHCS has produced no documents regarding its business decision to implement the New Stelara & Tremfya T&Cs. (JJHCS asserts below that this too is inaccurate, but it is true.[7]) Why JJHCS chose to revise CarePath's T&Cs for Stelara and Tremfya but not for the other 15 Janssen Drugs goes to SaveOnSP's defenses. *See* Aff. Defs. ¶¶ 24-38. It goes to mitigation: JJHCS knew of SaveOnSP's services in 2017 but opted not to reduce the amount of its copay assistance for any drugs until December 2021 and even then, decided not to reduce its assistance for over a dozen other drugs. *Id.* ¶¶ 24-29. It goes to laches: JJHCS knew of SaveOnSP and its services in 2017, but waited to file suit against SaveOnSP until May of 2022, when it could have revised its T&Cs five years earlier. *Id.* ¶¶ 30-36. And it goes to acquiescence: JJHCS knew of and acquiesced to SaveOnSP's conduct for years. *Id.* ¶¶ 37-38.

The Court should compel JJHCS to conduct a reasonable search for documents about its decision to implement the New Stelara & Tremfya T&Cs and not to implement similar changes for other Janssen Drugs at issue, using at a minimum the search terms listed above.

*Third*, JJHCS has produced limited documents concerning its implementation and enforcement of the New Stelara & Tremfya T&Cs. While it has produced approximately 900 documents that arguably go to implementation, 750 of them ███████████████████████████
███████████████████████████████ *see*, *e.g.*, Ex. 24 (JJHCS_00004977)
█████████████████████████████ Ex. 25 at 11-13, 17-18 (JJHCS_00001805) ██████
████████████████ Ex. 26 (JJHCS_00003216) (█████████████████████
█████████████████████ Fewer than 150 documents appear to be unique communications regarding implementation.

A major issue is that JJHCS refuses to extend its production regarding its implementation and enforcement of documents relating to the New Stelara & Tremfya T&Cs through the present. While the parties have generally agreed to end the production period on July 1, 2022, documents relating to the New Stelara & Tremfya T&Cs warrant an exception. These T&Cs were not implemented until December 2021, Compl. ¶ 102, so JJHCS's production captures only six months of enforcement, even though JJHCS continues to enforce these T&Cs presently. *See* Ex. 27 (TRIALCARD_00000034-35; Ex. 28 (TRIALCARD_00000074-75). It also appears that JJHCS

---

[7] JJHCS cites JJHCS_00033681—████████████████████████████████████—and
claims it explains the business decision. In reality, that ████████████████████████
███████████████████████ Ex. 21 (JJHCS_00033681). It says nothing about why JJHCS introduced this pro-
gram or changed the T&Cs. ████████████████████████████████ is not the same as
making a business decision to implement a new initiative. JJHCS also cites JJHCS_00002574 and JJHCS_00034931;
the former is ██████████████████████████████████ and the latter █████████████
████████████████████████████████████████████████████████████ Ex. 22
(JJHCS_00002574); Ex. 23 (JJHCS_00034931). They too say nothing about why JJHCS made its decision.

Hon. Cathy L. Waldor
August 24, 2023
Page 14

*revised* the New Stelara & Tremfya T&Cs after July 1, 2022.[8] The new version removes the language: "Patients who are members of health plans that claim to eliminate their out of pocket costs are not eligible for cost support." As JJHCS alleges that patients on SaveOnSP-advised plans fall under this language, Compl. ¶¶ 103-04, its decision to remove that language is highly relevant to whether JJHCS ever enforced or intended to enforce that provision. While JJHCS asserts that the burden of extending its production would be undue, it has not quantified how many additional documents it would have to review by extending its search. Ex. 29 (July 19, 2023 Ltr).[9]

The Court should compel JJHCS to update its production of documents about its enforcement of the New Stelara & Tremfya T&Cs through the present using a limited set of five search terms. It should run one new term—("Benefits Investigation*" AND (Stelara OR Tremfya))—to capture Benefits Investigations as to the New Tremfya & Stelara T&Cs. And it should run four existing terms designed to capture documents regarding SaveOnSP, and Express Scripts or Accredo with accumulator or maximizer.[10] *See* Ex. 30 (June 12, 2023 Ltr.).[11]

* * *

SaveOnSP requests that the Court compel JJHCS to produce documents regarding its drafting, understanding, and enforcement of the T&Cs, as described above. To avoid doubt,

---

[8] *Compare* ECF No. 31-6 (Stelara) *and* ECF No. 31-7 (Tremfya) *with Savings Program Overview - STELARA,* https://www.stelarawithme.com/sites/www.stelarawithme.com/files/stelara-savings-program-overview.pdf (last accessed Aug. 14, 2023) *and Savings Program Terms & Conditions - TREMFYA*, https://www.tremfyawithme.com/sites/www.tremfyawithme.com/files/TREMFYA-withMe-Savings-Program-Mobile-Wallet-Terms-and-Conditions.pdf (last accessed Aug. 14, 2023)

[9] JJHCS suggests below that SaveOnSP did not properly meet and confer on the issue of JJHCS extending its production regarding enforcement of the New Tremfya & Stelara T&Cs because SaveOnSP did not raise that issue in its May 17 or June 29, 2023 letters. In fact, SaveOnSP raised this issue with JJHCS in a letter of June 12, 2023, JJHCS responded on June 16, 2023, and the parties exchanged further letters on July 11, 2023 and July 19, 2023. Ex. 30 (June 12, 2023 Ltr.); Ex. 31 (June 16, 2023 Ltr.); Ex. 32 (July 11, 2023 Ltr.); Ex. 29 (July 19, 2023). In its July 19 letter, JJHCS flatly refused to extend its production of enforcement documents, Ex. 29 (July 19, 2023), creating an impasse. Any suggestion by JJHCS that SaveOnSP did not properly or fully meet and confer on this issue is thus false.

[10] SaveOnSP requests JJHCS run the following agreed-upon terms: (1) SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP"; (2) "Save On"; (3) ("Express Scripts" OR ESI) w/50 (accumulat* OR maximiz*); and (4) Accredo w/50 (accumulat* OR maximiz*).

[11] Those four terms are: (1) SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP"; (2) "Save On"; (3) ("Express Scripts" OR ESI) w/50 (accumulat* OR maximiz*); and (4) Accredo w/50 (accumulat* OR maximiz*).

Hon. Cathy L. Waldor
August 24, 2023
Page 15

JJHCS's search for those documents should include custodians and non-custodial sources outside of JJHCS (including Janssen) with knowledge of or involvement with the T&Cs.

### *JJHCS's Position*

Since the start of discovery, JJHCS has taken every reasonable step to identify and produce documents about the CarePath patient terms and conditions (T&Cs) given their relevance to the claims lodged by JJHCS against SaveOnSP:

- JJHCS has produced thousands of pages of documents in response to the search terms used to find documents relating to terms and conditions.

- JJHCS has produced other documents that bear on JJHCS's enforcement and understanding of the relevant terms and conditions.

- JJHCS also has investigated further the availability of additional documents and, based on that investigation, understands that the terms and conditions at issue in this litigation are standard, uncontroversial terms used in most, if not all, manufacturer copay support programs, and are terms that long pre-date the relevant time period of 2016 to 2023.

- Despite the unlikelihood of finding more non-privileged documents, JJHCS has offered to review thousands of additional documents to see if other documents from the relevant time frame of 2016 to 2022 exist.

All of this work by JJHCS is consistent with what JJHCS promised to the Court when the Court denied without prejudice SaveOnSP's motion to compel in March 2023. In so ruling, the Court described SaveOnSP's 14-year time frame as "awfully broad" and urged SaveOnSP to narrow its requests.

Despite the Court's admonition, SaveOnSP now returns to the Court without having narrowed its requests at all. In a very long and prolix joint letter that is replete with both misrepresentations about JJHCS's document production and misleading legal citations, SaveOnSP asks this Court to order JJHCS to embark on a wild-goose chase in search of documents that never existed and therefore cannot be collected and produced. Among the many extreme and unwarranted requests made by SaveOnSP are the following:

- To order JJHCS to review documents from an unlimited time period, not only back to 2009 as the Court already rejected, but even before that year with no date restriction at all.

Hon. Cathy L. Waldor
August 24, 2023
Page 16

- To order JJHCS to review more than 188,000 documents based on unilaterally imposed search terms, looking for non-privileged documents that do not exist because the relevant terms and conditions here are not unique to JJHCS.

SaveOnSP even asks this Court to order that JJHCS collect and review documents from its attorneys' files, documents that are certain to be privileged. This is an unusual step, taken only in circumstances that do not exist here—such as when lawyers negotiated the terms of an agreement with third parties, or were witnesses to a particular event.

In addition, the primary defect with SaveOnSP's search proposals is not even burden—it is that SaveOnSP seeks completely irrelevant documents. For example:

- SaveOnSP seeks documents concerning the enforcement of terms and conditions that are not at issue in this lawsuit, because JJHCS does not allege that SaveOnSP interfered with the ability of patients to comply with those other provisions.

- SaveOnSP seeks documents relating to JJHCS benefits investigations—the process of confirming that a patient's health insurance covers a particular medication and a subject that has nothing to do with this lawsuit.

- SaveOnSP seeks documents from a time period when maximizer programs like the SaveOnSP program did not even exist, rendering those documents irrelevant to the question of whether the "other offer" term was meant to stop maximizer programs.

The real impetus behind this motion is not any failing by JJHCS to take reasonable steps to comply with SaveOnSP's document requests, or that relevant documents have been withheld. The motion is animated by SaveOnSP's dissatisfaction with the documents produced thus far by JJHCS and a desire to impose burden on JJHCS in retaliation for having filed this lawsuit. JJHCS does not dispute SaveOnSP's contention that, at least broadly speaking, documents relating to the drafting and understanding of CarePath T&Cs could be relevant if a Court deemed extrinsic evidence relevant—but only if such non-privileged documents existed. JJHCS has not pressed an objection to producing documents on this issue based on relevance.

Nor is JJHCS "resisting" the production of relevant documents, which it would gladly produce if they existed. Indeed, those documents are as or more likely to support JJHCS's arguments in this case than they are likely to support those contentions advanced by SaveOnSP. However, SaveOnSP's wish that JJHCS had more relevant documents to produce about the drafting, enforcement, and understanding of the T&Cs is not a basis for ordering further review and production. As discussed below, the crucial "other offer" term is not only common in copay support programs—it is used in virtually all "coupon" programs that are offered to consumers in the United States, by businesses as varied as Amazon, Uber, and Macy's. Simply put, the additional non-privileged documents relating to the drafting, understanding and enforcement of

Hon. Cathy L. Waldor
August 24, 2023
Page 17

the CarePath T&Cs that SaveOnSP seeks in discovery most likely do not exist, and JJHCS cannot produce documents that do not exist.

Finally, SaveOnSP makes this ask after it walked away in the middle of the parties' negotiations and while JJHCS was in the midst of a robust, good-faith investigation of the availability of requested documents over a more than 14-year period. Rather than continue to negotiate, SaveOnSP prematurely sent JJHCS a draft of a joint letter while JJHCS was still preparing its response to SaveOnSP's latest letter which contained scores of questions and proposed search terms, and after SaveOnSP told JJHCS that it had 48 hours to submit to SaveOnSP's demands or face motion practice. Instead of trying to reach a compromise on search terms, custodians, and time frame, as contemplated by the Court's rules, SaveOnSP refused to compromise, escalated its demands, and then sent a joint letter teeing up this motion for the Court's consideration. JJHCS remains willing to have reasonable negotiations about search terms if this Court orders it.

For the reasons discussed below, the Court should deny SaveOnSP's motion.

### *JJHCS Has Made a Significant Production of T&C Documents*

Contrary to SaveOnSP's claim that JJHCS has failed to produce any T&C documents, JJHCS in fact has produced over 1,200 non-privileged documents, spanning over 10,000 pages, all of which hit on search terms related to the "general" CarePath T&Cs.[12] SaveOnSP complains that these productions are insufficient, but throughout its letter, SaveOnSP implicitly acknowledges that it has received these responsive documents and it cites these documents in support of its own arguments. SaveOnSP thereby refutes its own false claim that JJHCS has not produced responsive documents. The volume of JJHCS's document production from the agreed-upon time period for discovery, April 1, 2016 to July 1, 2022, reflects the thorough, good faith collection and production of documents undertaken by JJHCS in this litigation. The fact that SaveOnSP wishes that JJHCS had more or different documents to produce about its terms and conditions is not a basis to require JJHCS to review hundreds of thousands of additional and irrelevant documents over a 14-year period. Searching for documents using additional search terms is unlikely to shed any additional light on the meaning or interpretation of the "other offer" term, or other terms and conditions identified by SaveOnSP.

---

[12] SaveOnSP claims that JJHCS is "inflat[ing]" the number of T&C related documents produced to date. This makes no sense. SaveOnSP never disputes that over 1,200 non-privileged documents hitting on relevant search terms have been produced to date. The fact that the documents do not say what SaveOnSP wishes they said is irrelevant.

Hon. Cathy L. Waldor
August 24, 2023
Page 18

In response to SaveOnSP's inquiries this summer, JJHCS has undertaken a robust investigation to assess both the availability of documents and the drafting history of the CarePath terms and conditions, including the "other offer" term emphasized by SaveOnSP.  As JJHCS has explained to SaveOnSP, JJHCS searched for additional relevant non-privileged documents and spoke with numerous JJHCS employees whose experience with patient copay assistance programs predates SaveOnSP's creation in 2016.  JJHCS has followed every reasonable lead and explored every reasonable avenue to identify non-privileged documents.  Based on this and other document review, JJHCS has identified and will produce before the substantial completion deadline some additional non-custodial documents bearing on CarePath's annual budgets and terms and conditions in the 2016 to 2022 time period.  But JJHCS has not identified any other non-privileged, responsive custodial documents—outside of the documents already produced—regarding the CarePath terms and conditions, nor does JJHCS have any reason to think such documents exist.

*SaveOnSP Is Insisting on the Production of Documents that Do Not Exist*

As JJHCS has explained to SaveOnSP on multiple prior occasions, the terms and conditions at issue in this litigation are standard across copay support programs at JJHCS and many other drug manufacturers and they long pre-date the parties' agreed-upon time period (April 1, 2016 to July 1, 2022), which goes back to the launch of the CarePath program in its current form in 2016.  *See* May 26, 2023 Ltr. from H. Sandick to A. Dunlap; July 17, 2023 Ltr. from H. Sandick to A. Dunlap.  As noted, JJHCS has looked for documents relating to the drafting of the CarePath T&Cs and has produced non-privileged documents relating to the T&Cs.  That SaveOnSP wishes that there were more non-privileged documents about the drafting of the T&Cs cannot will such documents into existence.  Nor is there any reason to think that the T&Cs at issue here have a drafting history given that they are not negotiated contracts between two parties.  Rather, the T&Cs are rules established by JJHCS with which patients must comply if they wish to participate in the CarePath program.

It is therefore not surprising that JJHCS does not have non-privileged documents containing discussions about JJHCS's understanding of the "other offer" language that is central to this action.  This particular "other offer" language is a standard term that is not only used by JJHCS.  It is also used by many other manufacturers' copay assistance programs, further confirming that the term is of an old vintage, ubiquitous in its use, and unambiguous in its meaning.  As just a few examples, AstraZeneca states that its copay assistance "cannot be combined with any other offer."[13]  Novartis and Bristol Myers Squibb similarly specify that their copay assistance

---

[13]  *See* AstraZeneca Patient Savings Programs for Specialty Products (last updated March 2023), https://www.astrazenecaspecialtysavings.com/.

Hon. Cathy L. Waldor
August 24, 2023
Page 19

"[p]rogram may not be combined with any third-party rebate, coupon, or offer,"[14] as does Pfizer.[15] To the extent that SaveOnSP attempts to rebut this argument by suggesting without any evidentiary support these manufacturers only adopted the terms in 2022 or 2023, that, too, is inaccurate. From publicly available sources, it appears at least AstraZeneca's co-pay assistance program for NEXIUM included a similar phrase as long ago as August 2011.[16] SaveOnSP minimizes the relevance of this "single example"—but fails to reconcile with the existence of a near identical term from another manufacturer five years before SaveOnSP's founding in 2016 and CarePath's launch the same year. SaveOn cannot escape the truth: Given the T&C's ubiquity in the industry and the fact that they are not negotiated by two parties to a contract, it is not surprising that the types of documents that SaveOnSP wishes to obtain about drafting and understanding have not been found.

Despite all this, SaveOnSP states that JJHCS has a "fundamental discovery obligation" to find documents that do not exist. It insists that there is a non-privileged drafting history from 14 years ago or longer, and it bases this claim on *ipse dixit* reasoning and pure speculation. For example, it claims at one point that the "other offer" language must have been devised by JJHCS personnel even though it is one of the most common limitations placed on consumer coupons and discounts, and not only within the area of co-pay assistance. A recent publication by the American Bar Association (the "ABA") describes the specification that a coupon "may not be combined with another coupon or offer," which is the key term relevant to this lawsuit, as a "typical[]" coupon term.[17] It is no surprise that a term that has been in use for many years at JJHCS and throughout the marketplace would not be the subject of internal discussion.

---

[14] Novartis, Patient Copay Savings, https://www.copay.novartispharma.com/nvscopay/eligibility.html# (last accessed May 22, 2023); Bristol Myers Squibb, Access Support Co-Pay Assistance Program Terms & Conditions (October 2022), https://www.bmsaccesssupport.bmscustomerconnect.com/servlet/servlet. FileDownload?file=00Pi000000omiYSEAY ("This offer cannot be combined with any other offer, rebate, coupon or free trial.").

[15] *See, e.g.*, Pfizer, Nivestym Patient Resources ("This program cannot be combined with any other savings, free trial or similar offer for the specified prescription."), https://www.nivestym.com/patient-resources (last accessed May 22, 2023).

[16] *See NEXIUM® (esomeprazole magnesium) Launches New Savings Card Offering Instant Discounts for Patients*, Fierce Pharma (Aug. 25, 2011), https://www.fiercepharma.com/pharma/nexium%C2%AE-esomeprazole-magnesium-launches-new-savings-card-offering-instant-discounts-for ("The card must be used within 14 months of the first prescription fill and cannot be combined with any other offer.").

[17] Sharon Kohn, *Sales Promotions, Contests, and Sweepstakes: Laws and Regulations Your Business Clients Must Know*, ABA (Dec. 18, 2022), https://www.americanbar.org/groups/gpsolo/publications/

Hon. Cathy L. Waldor
August 24, 2023
Page 20


Even outside of the context of copay assistance, a quick internet search reveals that the same exact "other offer" term applies for retailers such as Amazon,[18] Uber,[19] and Lyft[20]—nor is it new in the retail context.[21]  This explains further why there are not more non-privileged documents on this subject.  SaveOnSP's reliance on *Nestle Foods* also does not merit a contrary result.  In *Nestle Foods*, the court evaluated only the potential relevance of the drafting history—but did not evaluate **burden** as JJHCS asks the Court to do here where SaveOnSP insists at least 14 years of document production on this issue.  *See Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 106-07 (D.N.J. 1990).

With respect to the enforcement of the terms and conditions, JJHCS has already produced records from thousands of calls between patients and CarePath administrators at Trial Card, many of which concern patients asking questions about eligibility and the payment of co-pay support. This is evidence of how the T&Cs have been enforced by JJHCS.  SaveOnSP is not satisfied with the actual evidence of enforcement, contending that JJHCS refuses to produce documents "like emails, communications, meeting minutes, and memoranda" about the enforcement of T&C provisions.  This is another pure falsehood from SaveOnSP.  If those documents were found in the 2016 to 2022 time frame, they have been produced, and if such documents were not found, it does not follow that JJHCS has "refused" to produce them.

SaveOnSP also insists that JJHCS also produce documents proving a negative, as when it demands the production of evidence of the fact that JJHCS "never tried to enforce its T&Cs" on certain patients.  Nevertheless, as discussed below, JJHCS has offered to conduct additional

---

gpsolo_ereport/2022/december-2022/sales-promotions-contests-sweepstakes-laws-regulations-your-business-clients-must-know/.

[18] Amazon, *Multiple Item Discount Terms & Conditions*, https://www.amazon.com/gp/help/customer/display.html?nodeId=201895200 ("This promotion may not be combined with other offers, including promotional certificates.").

[19] Uber, *Uber for Business*, https://businesses.uber.com/amazon-business-uber.html?utm_source=affiliate&utm_campaign=affiliate-2018-06-amazonoffer-LG ("Cannot be combined with any other offer.").

[20] Lyft, *Points Loyalty Platform User Agreement*, https://lyft-loyaltywallet.points.com/earn/points-account-terms?close=disabled ("This offer may not be combined or used in conjunction with any other offer, unless otherwise stated.").

[21] Coupons from retailers such as Macy's contained the phrase "[c]annot be combined with any other offer" in 2009.  Macy's, *Secret Sale*, https://www.macys.com/dyn_img/site_ads/031009_MNO.pdf (effective March 11-15, 2009).  *See also* Red Lobster, https://www.redlobster.com/militarymonday (effective August 8 to November 15, 2016).

Hon. Cathy L. Waldor
August 24, 2023
Page 21

searches and to review more documents from the past six years, despite its doubts about whether this additional work will yield the types of documents that SaveOnSP wishes existed.

SaveOnSP also seeks discovery unrelated to the enforcement of the "other offer" provision that is at issue in this litigation. For example, SaveOnSP admittedly seeks all documents concerning "JJHCS's prior efforts to enforce other provisions" of the T&Cs apart from the "other offer" provision. SaveOnSP even seeks documents that do not relate at all to co-pay support, or that relate to completely irrelevant subjects, such as benefits investigations (i.e., confirming a patient's insurance coverage and determining if the patient is required to make co-payments for a particular medication). *See infra* at 23-25. These demands are enormously overbroad and aimed at irrelevant documents, and illustrate the extremity of SaveOnSP's position. SaveOnSP already has what it needs to prove how and whether the relevant T&Cs were enforced.

SaveOnSP attempts to justify its overreach by relying on *N.J., Dep't of Env't Prot. v. Gloucester Env't Mgmt. Servs., Inc.*, 264 F. Supp. 2d 165, 177-78 (D.N.J. 2003). Nowhere does *Gloucester* suggest that alleged acquiescence to *one*, separate term of a contract would somehow excuse performance under *other* provisions of the same contract. Nor is that the law. In fact, "[i]t is hornbook law that '[t]he waiver of one right under a contract does not necessarily waive other rights under the contract; rather, the parties to a contract may waive parts of its provisions.'" *Mister Softee, Inc. v. Amanollahi*, 2016 WL 5745105, at *18 (D.N.J. Sept. 30, 2016) (quoting Williston on Contracts § 39:18 (4th ed.)) (concluding contract's notice provision still valid where party had not enforced other provisions of franchise agreement). Williston provides the following example: "a waiver of the right to timely performance under one provision of a contract does not necessarily operate to waive of all of the contract's time specifications." Williston on Contracts § 39:18 (4th ed.). The Court should reject SaveOnSP's efforts to compel JJHCS to review and/or produce documents with no possible bearing on this lawsuit.

*SaveOnSP's Requests Are Extreme and Unwarranted*

Despite JJHCS's production and the unlikelihood that further review will lead to the production of more non-privileged documents, SaveOnSP continues to press its extreme document requests and asks this Court to order JJHCS to review untold hundreds of thousands of documents, from a time period going back to 2009 and even earlier, in order to find non-privileged documents that do not exist. The Court should deny SaveOnSP's request.

First, SaveOnSP continues to push JJHCS to review documents from at least 2009 to the present, even after the Court stated at the March 17, 2023 conference that SaveOnSP's proposed time frame is "awfully broad." Mar. 17, 2023 Tr. at 34:5. Fourteen years ago, neither SaveOnSP nor CarePath's co-pay assistance program even existed. In fact, SaveOnSP was founded in 2016 and CarePath launched the same year. JJHCS has agreed to produce documents and

Hon. Cathy L. Waldor
August 24, 2023
Page 22

communications from that full seven-year time period. SaveOnSP, on the other hand, has refused to limit to any extent its proposed time frame to address the Court's concern.[22]

Rather than propose a more limited time frame as directed by this Court, SaveOnSP instead has expanded its proposed time frame, insisting that JJHCS review and produce documents without any time limit at all. This is no exaggeration: in this joint letter, SaveOnSP demands the production of documents relating to the T&Cs not only going back to 2009, but going back to "whenever that drafting may have occurred," even to the beginning of time if necessary. It is self-evident that the boundless search contemplated by SaveOnSP is unnecessary and burdensome.

Second, it is unlikely that searching documents from a time period before 2016 will lead JJHCS to identify and produce documents that explain how to interpret the key "other offer" term in connection with the SaveOnSP program. SaveOnSP's requests are meant to identify documents that could conceivably bear on the meaning of the "other offer" term in the context of the SaveOnSP program and other copay accumulator and/or maximizer programs like it. SaveOnSP was formed in 2016 and it did not conduct substantial business until 2017. There is no reasonable basis to dig further into the annals of history from a time long before SaveOnSP ever existed. Any such request by SaveOnSP would exceed the bounds of proportionality, relevance and burden established by the Federal Rules.

Third, JJHCS advised SaveOnSP that JJHCS is not even able to make a production of documents from a time period earlier than 2013 due to applicable preservation and/or retention capabilities. SaveOnSP's continued and obsessive focus on what documents can or cannot be produced by JJHCS from before the 2016 to 2022 time period is meant to distract the Court from the real issue, which is that SaveOnSP continues to insist that JJHCS must review documents from as long as 14 years ago, or even longer. Nor is JJHCS engaged in any "word games" when it says that it is not able to make a document production from so many years ago. It is far from surprising that JJHCS does not have complete records from a time period that is more than 10 years ago.

SaveOnSP's citation to *Colorel* is not to the contrary. In *Colorel*, the Court found that the moving party had not established good cause "to search [the defendant's] universe of backup and archived e-mails for the requested e-mails" because the "relevant information [was] available . . . from a number of more easily accessed sources," including at depositions, and "[the moving party] ha[d] not produced evidence that the backup or archived e-mails contain relevant information that is not otherwise available or cumulative of other evidence." *Major Tours, Inc. v. Colorel*, No. Civ.

---

[22] To the extent SaveOnSP suggests that JJHCS allegedly knew about SaveOnSP for "five years" but did not assert that SaveOnSP's services breached its T&Cs, this, too, would be covered by the **seven-year** time period that JJHCS already has agreed to and provides no justification for doubling the relevant time period to go back to 2009.

Hon. Cathy L. Waldor
August 24, 2023
Page 23

05-3091JBSJS, 2009 WL 3446761, at *3-5 (D.N.J. Oct. 20, 2009), *aff'd*, 720 F. Supp. 2d 587 (D.N.J. 2010); *see also Danieli Corp. v. SMS Grp., Inc.*, No. 2:21-CV-1716, 2022 WL 2541981, at *2 (W.D. Pa. Mar. 18, 2022) ("agree[ing]" that "[the plaintiff] cannot take discovery that is unlimited in temporal scope" and limited discovery "to the time period of ten years"). JJHCS has produced relevant documents from a reasonable time period and SaveOnSP may explore this issue further during depositions.

Finally, SaveOnSP demands that JJHCS use new search terms (as discussed below) that will require it to review more than 188,000 documents in a search for non-privileged documents that likely do not exist. The Court has previously recognized the parties here have considerable resources, which colors its view of burden arguments. But JJHCS urges the Court to pause and consider the extraordinary scale of what SaveOnSP is demanding. Reviewing this volume of document would require an estimated 5,300 to 6,300 hours of first-pass attorney review, excluding necessary privilege review and other necessary review by more senior attorneys. That is an astonishing number of irrelevant documents to review in a quest for documents that most likely do not exist. In addition, this level of document review is only from the 2016 to 2022 time period. SaveOnSP would add to it an unknown number of documents that—if they could somehow be found—would need to be reviewed if the time frame were to be doubled, as SaveOnSP demands.[23]

*JJHCS Remains Willing To Run Reasonable Additional Search Terms*

Additional search terms are unlikely to produce responsive materials relating to the CarePath T&Cs. Nonetheless, in an effort to confirm that the documents SaveOnSP seeks do not exist and moot this issue, JJHCS was and remains willing to run reasonable additional search terms to resolve the instant motion. JJHCS is prepared to employ these search terms and expand its review—even though such search terms are likely to yield a significant number of false hits and waste attorney time without any resulting benefit to either party.

However, JJHCS is not willing to burden itself with an unreasonable level of document review simply to satisfy SaveOnSP's curiosity. SaveOnSP's requested terms are particularly frustrating in light of the status of the negotiations before SaveOnSP insisted on filing this motion. On May 17, SaveOnSP asked JJHCS to run search terms that would have required JJHCS to review nearly 313,000 documents. SaveOnSP and JJHCS then conferred on June 23 and on June 29, SaveOnSP returned with a request that would have required JJHCS to review over 133,000 documents. On July 17, JJHCS countered with an offer to review over 14,500 documents responsive to *eight* of the search terms SaveOnSP proposed. Rather than return with targeted additional terms that were tailored to find relevant documents, in response, on July 24, SaveOnSP

---

[23] This document count also does not include two additional JJHCS custodians that JJHCS recently offered to add in exchange for one additional SaveOnSP custodian.

Hon. Cathy L. Waldor
August 24, 2023
Page 24

backtracked and proposed **additional** broad search terms, similar to SaveOnSP's initial proposal, which would have required JJHCS review more than 300,000 additional documents from the 2016 to 2022 time period alone.

In addition, SaveOnSP fails to mention that its proposals on search strings have been so unclear that it was not until **three weeks** into the process of responding to this joint letter that SaveOnSP landed on precisely what search terms it seeks to compel JJHCS to add.  Indeed, the filing of this letter followed a lengthy back-and-forth exchange between JJHCS and SaveOnSP in which SaveOnSP changed its search terms while repeatedly and falsely denying that it had done so.  *See* Aug. 23, 2023 Email from E. Snow to H. Sandick, attached as JJHCS Ex. 1 ("We did not change the terms that we are asking JJHCS to run.  The terms that we are moving on are the same ones that we identified in our June 29 letter.").  Ultimately, after the exchange of several draft joint letters, SaveOnSP finally conceded that it had changed the search terms just as JJHCS had claimed all along, and deleted language from its portion of the letter above that falsely claimed otherwise.  This time-wasting episode caused by SaveOnSP is another indication of the lack of seriousness or thought on the part of SaveOnSP with respect to both the selection of search terms and the imposition of unwarranted burden on JJHCS.  Rather than pursuing a strategy dictated by the evidence or logical inference, SaveOnSP is making it up as it goes.

JJHCS's opposition to these search terms is not only a matter of unnecessary burden.  Many of SaveOnSP's requests would require the review of completely irrelevant documents.  For example, in its current proposal, SaveOnSP asks for JJHCS to review any document that mentions the word "discount" and Janssen (or related misspellings).  This term would effectively sweep in any document that mentions the name of the manufacturer (Janssen) and has a discussion of "discount" or "discounts" regardless of whether those mentions relate to co-pay assistance.

In addition, SaveOnSP devotes an entire search string[24] to the subject of benefits investigations, which as noted has nothing to do with this case and which on its face contains no connection of any kind to SaveOnSP.  It seeks every single document relating to a "Benefits Investigation" that also happens to mention any one of a long series of Janssen drugs.  This one proposed string alone would result in approximately 49,000 additional documents (or roughly 1,400 to 1,630 additional hours of first-pass attorney review, excluding necessary privilege review and other necessary review by more senior attorneys).  SaveOnSP claims that these documents relate to "co-pay support," but the documents cited by SaveOnSP do not support the relevance claims it now makes.  Indeed, these documents show that the benefits investigations at issue involved confirming that the CarePath patients had a "Commercial Pharmacy" plan and "[b]enefits

---

[24] The referenced string is:  "Benefits Investigation*" AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga).

Hon. Cathy L. Waldor
August 24, 2023
Page 25

were verified" for the prescribed medication. Despite SaveOnSP's protestations to the contrary, benefits investigations do not involve determining "the amount[]" of co-pay assistance given to an individual CarePath patient. The fact that patients sometimes asked about SaveOnSP during that process does not change the purpose of these standard contacts, having nothing to do with the SaveOnSP program. *E.g.*, JJHCS_00003355 █████████████████████████
███████████████████████; JJHCS_00003447 ██████████████
█████████████████; JJHCS_00003570 ████████████

Again, this illustrates that SaveOnSP is not engaging seriously in the process of proposing terms that will lead to relevant documents, preferring instead a kitchen-sink approach that imposes burden on JJHCS without providing any benefit at all to SaveOnSP.

In addition to JJHCS's offer to add search terms, JJHCS also proposed to expand the time period for the production of documents from one custodian, Adrienne Minecci, to include August 1, 2015 to July 1, 2022. Ms. Minecci was proposed based on ███████████████████████
█████████████████████████████████████████ *see* JJHCS's Responses and Objections to SaveOnSP's Interrogatory No. 3. She was also involved in the process of transitioning at least one predecessor co-pay support program to the CarePath program. SaveOnSP paints this offer as "woefully inadequate"—and ignores the relevance of this eight-month timeframe, which includes the period during which predecessor programs were combined under the CarePath umbrella. Contrary to SaveOnSP's assertions, this expanded window for Ms. Minecci (going back to the beginning of her work on CarePath issues) and JJHCS's willingness to run additional search terms were proposals offered in good faith to "capture the origin of the General T&Cs" for CarePath—if this is even possible. SaveOnSP has rejected this proposal.

Finally, SaveOnSP's comparison of the burden it seeks to impose on JJHCS to the time it has spent in document review and production is another effort to the distract the Court and reveals that SaveOnSP's real purpose here is to impose a matching burden on JJHCS rather than engage in a search for relevant documents. It is no surprise that SaveOnSP has reviewed and produced more documents than JJHCS has or will produced—the case is about whether SaveOnSP has engaged in tortious interference or consumer deception, questions that can be answered only by reference to SaveOnSP's documents and not those in the files of JJHCS. In any event, the Court has already expressed its lack of interest in this type of comparative analysis. *See* June 27, 2023 Tr. 96:17-19.

### *Additional Discovery on Stelara & Tremfya T&Cs Is Unwarranted*

SaveOnSP claims that JJHCS's production of documents concerning changes to the Stelara and Tremfya terms and conditions include "no documents regarding its decision to revise the New Stelara and Tremfya T&Cs" and "no documents regarding its business decision to implement the New Stelara & Tremfya T&Cs." This is inaccurate. JJHCS has produced over 1,700 documents,

Hon. Cathy L. Waldor
August 24, 2023
Page 26

spanning over 17,800 pages, hitting on search terms relevant to the changes in the Stelara and Tremfya T&Cs.

Faced with this reality, SaveOnSP attempts to write off these productions, claiming that none address the "business decision to implement the New Stelara & Tremfya T&Cs." This, too, is inaccurate, as the documents produced by JJHCS make clear. For example, JJHCS produced a December 2021 presentation titled ██████████████████████████████████ ██████████████████ which explains that ████████████████ ████████████████████████████████████████████████████████████ and then continues, ████████████ JJHCS_00033681 at JJHCS_00033683. This explains the JJHCS "business decision" to implement the New Stelara & Tremfya T&Cs. SaveOnSP attempts to write off this document, claiming "[i]t says nothing about why JJHCS introduced this program"—but that characterization ignores the plain text of the document itself. SaveOnSP's desire for a different explanation is not the same as no explanation at all, and SaveOnSP is free to ask for further detail on the ████████ ████████████████████ at depositions. In addition, other produced documents discussed in the footnote following this sentence provide similar insight into this decision-making.[25]

To the extent SaveOnSP relies on purported additional revisions to these T&Cs in July 2022, SaveOnSP recently served JJHCS with document requests related to those alleged changes. JJHCS's response to those discovery requests is due August 28, 2023, and the parties have yet to confer on JJHCS's yet-to-be served response. SaveOnSP must at least wait for JJHCS to respond and then engage in meet-and-confer discussions before moving this Court to compel such a production.

SaveOnSP also takes issue with JJHCS's alleged "refus[al] to extend its production regarding this implementation through the present." SaveOnSP never raised this issue in its May 17 or June 29, 2023 discovery letters. *See* May 17, 2023 Ltr. from A. Dunlap to H. Sandick at 8; June 29, 2023 Ltr. from A. Dunlap to H. Sandick at 1-2. Regardless, SaveOnSP's own words in response to an update request from JJHCS provide perhaps the best response: "[t]he parties have generally agreed to end production as of July 1, 2022, unless a party shows a specific need for documents created later which [SaveOnSP] has not done here." *See* SaveOnSP's July 24, 2023

---

[25] *E.g.*, JJHCS_00002574 ██████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████ JJHCS_00034931
████████████████████████████████████████████████████████████████████████
████████████████████████

Hon. Cathy L. Waldor
August 24, 2023
Page 27

Responses & Objections to JJHCS's Sixth Set of RFPs. The close of substantial production is almost here. JJHCS has no objection to specific and narrow update requests, e.g., on claims data, but there is no reason to demand an update on documents relating to the drafting of terms and conditions that have been in effect since January 2022.

*Discovery from Attorney Custodians is Protected by*
*Attorney-Client Privilege and/or Work Product Doctrine*

SaveOnSP also mischaracterizes the roles of two of the three attorneys—Jennifer De Camara, Harman Grossman, and Savaria Harris—who SaveOnSP proposed to add as custodians. JJHCS appreciates that SaveOnSP finally has dropped its request to that JJHCS add Mr. Grossman, an in-house litigation counsel, as a custodian. This does not make its request that JJHCS add Ms. De Camara or Ms. Harris any more reasonable. Having attorneys as document custodians is hugely invasive and burdensome, because almost all of their relevant documents will then need to be placed on a privilege log. And it serves no purpose, because no non-privileged documents are likely to exist only in their files. Any relevant documents or communications from Ms. De Camara and/or Ms. Harris would be protected by the attorney-client privilege, work product doctrine, or another applicable privilege or protection from disclosure.

As stated in JJHCS's May 26 and July letters and during the parties' June 23 meet and confer, Ms. De Camara and Ms. Harris are in-house attorneys embedded within JJHCS to provide legal advice to the relevant business units. Ms. Harris has been closely involved in matters relating to oversight of this litigation. To the extent Ms. Harris and Ms. De Camera were "involved in revisions of the terms and conditions for Stelara and Tremfya," that involvement was in their role as attorneys providing legal advice to the relevant business units within JJHCS. As such, their communications are protected by the attorney-client privilege. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) ("[W]hile the attorney's advice may be relevant to the matters in issue," the privilege continues to apply "as the interests it is intended to protect are still served by confidentiality."); *Prestige Management Servs., Inc.*, No. 14-3451, 2017 WL 1084523, at *5 (D.N.J. Mar. 21, 2017) (Salas, J.) (concluding there was no implied waiver of privilege where defendant did not raise any relevant affirmative defense or "selectively produce[] some privileged documents while withholding others"); *Rowe v E.I. duPont de Nemours and Co.*, No. CIV. 06-1810-RMD-AMD, 2008 WL 4514092, at *5 (D.N.J. Sept. 30, 2008) (attorney-client privilege applies when attorneys are acting as lawyers "giving advice with respect to the legal implications of a proposed course of conduct").

SaveOnSP argues, for the first time, that Ms. De Camara and Ms. Harris are "percipient witnesses to the events at issue." Not so. There is no event or occurrence that these individuals are alleged to have witnessed or participated in, such as negotiating a contract with another party or participating in non-privileged conversations with people outside of JJHCS and its affiliates. *See Johnston Dev. Grp., Inc. v. Carpenters Loc. Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990) ("In the present case, plaintiffs' concerns of privilege or confidentiality are unwarranted

Hon. Cathy L. Waldor
August 24, 2023
Page 28

because third parties were present at each conversation for which deposition testimony is sought, and the presence of adverse third parties destroys the confidentiality otherwise attaching to lawyer-client conversations."). SaveOnSP points to no basis to believe that Ms. De Camara or Ms. Harris participated in any non-privileged, business conversations regarding the terms and conditions (or anything else relevant to this case). This is because no such non-privileged conversations exist, as JJHCS's privilege logs will reflect when they are produced later in discovery. Indeed, SaveOnSP offers nothing whatsoever beyond speculation in support of its demand that JJHCS take the unusual step of the collection or production of documents from these attorneys. *See id.* (limiting deposition of attorney to facts within his recollection of four conversations with third parties). This case already involves large document productions from many custodians, and the Court should draw the line at SaveOnSP's attempts to now force JJHCS to collect and product the documents of attorneys, including those involved in this litigation.

### *SaveOnSP Seeks To Use Document Requests in Place of Interrogatories*

In addition to seeking to compel document production, SaveOnSP also seeks an order compelling JJHCS to (i) "identify the predecessor programs from which CarePath's General T&Cs were drawn" and (ii) "identify the individuals within Johnson & Johnson (whether at JJHCS or another J&J entity) who worked on those T&Cs and any non-custodial sources related to those T&Cs," this requested relief is not available through a document request.

When one party wishes to ask factual questions of another party, the proper procedural mechanism is Federal Rule of Civil Procedure 33, which allows 25 such written interrogatories to be served by a party in discovery. *See* Wright & Miller, Federal Practice and Procedure, § 2163 (3d ed.) ("Interrogatories are an effective way to obtain simple facts, to narrow the issues by securing admissions from the other party, and to obtain information needed in order to make use of the other discovery procedures."). While SaveOnSP contends that it has already served interrogatories on these issues, it overlooks that JJHCS responded to those interrogatories months ago and provided relevant information from the 2016 to 2022 time period, information used by SaveOnSP in this letter. SaveOnSP has never challenged JJHCS's responses and for good reason: JJHCS is not required to answer interrogatory requests that seek irrelevant information or that would create an undue burden to JJHCS. At any rate, if SaveOnSP has further questions to ask, it should do so in interrogatories and not asking the Court to issue orders with no basis in the Federal Rules.

Finally, to the extent SaveOnSP argues that JHCS is "withhold[ing]" the names of the predecessor programs as well as the names of Johnson & Johnson employees who worked on those programs, SaveOnSP misunderstands the relevant background. Prior to CarePath's launch in 2016, co-pay assistance programs were not standardized across medications. What JJHCS did prior to the establishment of the CarePath program is irrelevant to this case. SaveOnSP's request that JJHCS track down the names of all such predecessor programs over a ***14-year period*** as well as the names of scores of employees—past and present—who may have had some involvement in

Hon. Cathy L. Waldor
August 24, 2023
Page 29

these shuttered programs is extraordinarily burdensome.  JJHCS already has offered to add one custodian, Adrienne Minecci, and produce documents going back to August 1, 2015, in order to encompass some of this consolidation.  *See supra* at 25-26.  SaveOnSP rejected this proposal.

Accordingly, on this and all issues discussed above, the Court should deny SaveOnSP's requested relief.

* * *

The parties appreciate the Court's attention to this matter.

Respectfully submitted,

/s/ *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

David Elsberg (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

Hon. Cathy L. Waldor
August 24, 2023
Page 30

/s/ *Jeffrey J. Greenbaum*

Jeffrey J. Greenbaum
Katherine M. Lieb
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*

# EXHIBIT 1

# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 2

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

selendy
gay
elsberg

Andrew Dunlap
Partner
212 390 9069
adunlap@selendygay.com

May 17, 2023

**Via E-mail**

Harry Sandick
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
hsandick@pbwt.com

Re:   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
      LLC*** **(Case No. 2:22-cv-02632-ES-CLW)**

Dear Harry,

We write regarding JJHCS's production of documents regarding CarePath's
terms and conditions.

## I.    Background

In this case, JJHCS sues SaveOnSP for tortious interference with contract,
alleging that SaveOnSP induced participants in SaveOnSP-advised health plans to
breach the terms and conditions of those participants' agreements with CarePath.
Compl ¶¶ 106-11. JJHCS alleges that SaveOnSP induced breaches of two sets of
terms and conditions. First, it alleges that participants breached terms and condi-
tions that applied to all drugs through December 2021 and still apply to all drugs
except Stelara and Tremfya today ("General T&Cs"), asserting that signing up for
the "SaveOnSP Program" violates a term stating that CarePath is not available with
any "other offer" and that SaveOnSP's services constitute such an offer. Compl. ¶¶
19-20, 106-11. Second, JJHCS alleges that participants breached terms and condi-
tions that it introduced for Stelara and Tremfya in December 2021 ("New Stelara
& Tremfya T&Cs"), asserting that signing up for the "SaveOnSP Program" violates
terms requiring that a patient pay "an out-of-pocket cost for [his or her] medica-
tion" and prohibiting "[p]atients who are members of health plans that claim to
eliminate their out-of-pocket costs" from receiving cost support. *Id.* ¶¶ 102-03.

In its motion to dismiss, SaveOnSP argued that patients on SaveOnSP-ad-
vised plans did not breach the General T&Cs because SaveOnSP's services are not

Harry Sandick
May 17, 2023

an "offer" under the meaning of those provisions. Mem. of Law ISO SaveOnSP's Mot. to Dismiss at 27-29 (ECF No. 31-1). It argued that plan benefit terms are not an "offer," as the contract (1) distinguishes between benefits provided by health plans and "offer[s]" and sets up CarePath to work alongside health plans; and (2) the meaning of "coupon, discount, prescription savings card, [and] "free trial" bears upon the meaning of the term "other offer" and that SaveOnSP's services are different from a coupon, discount, prescription savings card, or free trial. *Id.* In denying SaveOnSP's motion to dismiss, the Court held that arguments regarding the meaning of the terms and conditions should be decided at summary judgment, with the benefit of extrinsic evidence. Op. Denying SaveOnSP's Mot. to Dismiss (ECF No. 68) at 16. In its affirmative defenses, SaveOnSP argues that JJHCS is barred from recovering for any purported breach because, despite being aware of SaveOnSP's services in 2017, JJHCS took no action to enforce its terms and conditions for years, impliedly acquiesced to patients on SaveOnSP-advised plans using CarePath, and failed to mitigate its damages by not enforcing the terms of its contract based upon its purported belief that patients on SaveOnSP-advised plans breached CarePath's terms and conditions. Affirmative Defenses ¶¶ 24-38.

In its RFP Nos. 12 and 13, SaveOnSP requested documents and communications concerning the meaning of CarePath's terms and conditions starting from January 1, 2009. RFP No. 12 seeks all documents and communications regarding CarePath's terms and conditions, including those regarding "(a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) JJHCS's decision to revise any of its CarePath terms and conditions for any Janssen Drug; and (d) JJHCS's understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions." RFP No. 13 seeks all documents and communications regarding "CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89."

In response, JJHCS agreed to produce final versions of CarePath's Terms and Conditions, documents concerning the "drafting" of CarePath's terms and conditions, and documents related to the meaning of the term "other offer." *See* Feb. 24, 2023 Joint Ltr. at 23-24. On February 24, 2023, SaveOnSP moved to compel JJHCS to produce all documents responsive to RFP Nos. 12 and 13. Feb. 24, 2023 Joint Ltr. at 23 (ECF No. 79).

At the March 17, 2023 conference, the Court denied SaveOnSP's motion to compel without prejudice. After JJHCS stated that it intended to "make a substantial production of documents" regarding the terms and conditions, Mar. 17, 2023 Hr'g Tr. at 40:14-15, the Court ordered JJHCS to prioritize that production, *id.* at 46:13-47:17. The Court said that, after SaveOnSP reviewed the production, it could raise any issues and potentially make "more tailored requests." *Id.* at 46:14-47:1. The Court said that the parties "need to talk to each other after the production,"

Harry Sandick
May 17, 2023

and that SaveOnSP is "entitled to ... the evaluation of the terms not limited to what [JJHCS] says." *Id.* at 48:1-11.

We understand that JJHCS has substantially completed its production of documents relating to its terms and conditions. During a meet and confer session on April 26, 2023, JJHCS said that its production on Friday, April 28, 2023 would include documents regarding CarePath's terms and conditions and "should be the majority" of that priority production. On April 28, 2023, JJHCS made a production of documents and has not produced any documents since.

Based on our review of the April 28, 2023 production, JJHCS has produced approximately 600 total documents that refer to its terms and conditions. Of these, approximately 120 are copies of the terms and conditions or internal JJHCS documents reflecting the terms and conditions, approximately 160 are form letters to patients, approximately 75 are other documents or letters sent or advertised to patients, health care providers, and organizations containing the terms and conditions, and approximately 10 are training documents for JJHCS representatives containing the terms and conditions. JJHCS appears to have produced only about five documents ██████████████████████████████████████████ ██████████████████████████████████████████████ *See, e.g.,* JJHCS_000035931-933. Approximately 75% of the documents it produced in its April 28, 2023 production regarding terms and conditions relate to the New Stelara & Tremfya T&Cs, while the vast majority of JJHCS's claims relate to the General T&Cs.

## II.    The General T&Cs

Contrary to its statement to the Court that it would make a "substantial" production of documents relating to its terms and conditions, JJHCS's production of documents relating to the General T&Cs has been paltry. JJHCS must increase the scope of its production and expand its search parameters. *See* Mar. 17, 2023 Hr'g Tr. at 44:2-7 ("MR. SANDICK: ... [W]hat I would propose is that we make the production that we've already committed to make. If it doesn't answer all of their questions, they can always come back and ask for additional documents.").

### A.    Scope of Production

Even though JJHCS agreed to produce documents concerning the "drafting" of CarePath's terms and conditions, *see* Feb. 24, 2023 Joint Ltr. at 23-24, JJHCS does not appear to have produced any such documents concerning the drafting of the General T&Cs. As the Court said: "I do believe in order to interpret terms, there has to be a background . . . I'm willing to limit this, but I do think that in order to see the evolution of terms and the reason therefore, it's necessary to give some amount of background." Mar. 17, 2023 Hr'g Tr. at 44:13-23. JJHCS must produce all documents related to the drafting of the General T&Cs.

Although JJHCS agreed to produce documents related to the meaning of the term "other offer," *see* Feb. 24, 2023 Joint Ltr. at 23-24, it does not appear to

3

Harry Sandick
May 17, 2023

have produced any such documents. JJHCS must produce them. JJHCS must also produce documents relating to the meaning of all aspects of the General T&Cs, including without limitation documents relating to the meaning of other provisions that SaveOnSP cited in its motion to dismiss: (1) "[t]his program is only for people . . . using commercial or private health insurance for their Janssen medication"; (2) "[y]ou may not seek payment for the value received from this program from any health plan"; (3) "[t]o use this program, you must follow any health plan requirements;" and (4) "[t]his program offer may not be used with any other coupon, discount, prescription savings card, free trial, or other offer." DARZALEX® Savings Program (Sept. 2021), https://www.janssencarepath.com/sites/www.janssencarepath-v1.com/files/darzalex-faspro-yondelis-savings-program-overview.pdf; *see also* Compl. ¶ 48. SaveOnSP has the right to explore whether any aspect of the General T&Cs shows that participants did not breach the "other offer" provision by taking advantage of copay assistance benefits in SaveOnSP-advised plans.

JJHCS has asserted that it need not produce documents going to how it enforced its terms and conditions, including the General T&Cs, over the years. In fact, it is well-settled that evidence regarding performance of a contract can be used to demonstrate the meaning of an ambiguous contract, particularly in instances where, as here, only one party drafted it. *See Quick v. N.L.R.B.*, 245 F.3d 231, 247 (3d Cir. 2001) ("[A]ny course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement" (quoting Restatement (Second) of Contracts § 202(4))); *Int'l Paper Co. v. Rexam, Inc.*, 2013 WL 3043638, at *5 (D.N.J. June 17, 2013) (recognizing that unilateral conduct may be considered as a matter of contract interpretation and compelling plaintiffs to produce documents in response to requests seeking documents regarding course of performance evidence). JJHCS must produce any documents going to its decisions to enforce or not enforce the "other offer" provision that it claims SaveOnSP induced plan participants into breaching.

At the March 17, 2023 conference, JJHCS expressed concern that SaveOnSP sought broad discovery of all terms and conditions from all copay assistance programs in Johnson & Johnson's history, whether or not they related to CarePath. Mar. 17, 2023 Hr'g Tr. at 42:22-43:6. It does not. SaveOnSP seeks documents concerning the drafting, meaning, and enforcement of the General T&Cs and the New Stelara & Tremfya T&Cs. SaveOnSP seeks such documents concerning other copay assistance programs only to the extent that a term in the General T&Cs was based on or adapted from a term for another program. For example, if the "other offer" clause in the General T&Cs was based on similar language from a predecessor program, SaveOnSP seeks documents relating to the drafting, meaning, and enforcement of that term in the predecessor program. *See* Mar. 17, 2023 Hr'g Tr. at 43:19-44:24 ("MS. NELSON: ... If CarePath came into existence in 2016 and when it came into existence, someone at Johnson & Johnson said, 'Hey, we have these terms and conditions from our old program. Let's use those again.' THE COURT: Right. That's what I'm trying to get at.").

4

Harry Sandick
May 17, 2023

### B.    Search Parameters

#### 1.    Custodians

JJHCS identified six individuals as responsible for the drafting and revision of the terms and conditions identified in the Complaint. JJHCS's Resps. & Objs. to SaveOnSP's First Set of Interrogatories at 11. JJHCS refuses to add three of these individuals—Jennifer De Camara, Harman Grossman, and Savaria Harris—as custodians. All three individuals appear to have relevant information: for example, (1) ████████████ JJHCS_00026251, and ████ JJHCS_00026511; and (2) Sylvia Schubert forwarded Savaria Harris an email regarding JJHCS's understanding of CarePath's terms and conditions. *See* JJHCS_00035931-93.

JJHCS asserts that it need not add these individuals as custodians because they are attorneys, and all their documents would be covered by a privilege or protection. Mar. 16, 2023 Ltr. from H. Sandick to A. Dunlap at 1. JJHCS's position is contrary to law. Courts recognize that attorneys may be custodians where, as here, they are percipient witnesses to the events at issue; "[t]heir status as attorneys does not shield . . . custodians unconditionally from fulling the discovery obligations of [plaintiffs]." *In re Rail Freight Surcharge Antitrust Litig.*, No. 07-489 (PLF/JMG/AK), 2009 WL 3443563, at *10 (D.D.C. Oct. 23, 2009). It also does not follow that all these individuals' documents would be privileged. Attorneys can waive privilege "by disclosing otherwise protected communications to employees who do not need to know the information," for example. *Schwarz Pharm., Inc. v. Teva Pharm. USA, Inc.*, Civ. Action No. 01-4995, 2007 WL 2892744, at *4 (D.N.J. Sept. 27, 2007) (then M.J. E. Salas). If JJHCS believes that any of its custodians' relevant communications are privileged, it can list them on a privilege log so that SaveOnSP can evaluate the privilege claims.[1]

JJHCS must add De Camara, Grossman, and Harris as custodians. If JJHCS refuses to add any of these individuals, please state the total number of unique documents identified by running JJHCS's search parameters across the documents of each individual that JJCHS refuses to add.

The meager nature of JJHCS's production from JJHCS employees suggests that non-JJHCS employees were involved in drafting the General T&Cs. JJHCS must identify and add custodians from Johnson & Johnson entities outside of

---

[1] The Third Circuit has also expressed doubt that documents shared between members of a corporate family, like many of the documents that JJHCS has produced, are privileged. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 372, 378-79 (3d Cir. 2007) ("[H]olding that parents and subsidiaries may freely share documents without implicating the disclosure rule because of a deemed community of interest stretches, we believe, the community-of-interest privilege too far.").

Harry Sandick
May 17, 2023

JJHCS who are likely to have documents relating to the drafting, meaning, or enforcement of the General T&Cs.

## 2. Search Terms

JJHCS's current proposed search terms capture neither the relevant documents that it has already agreed to produce (as evidenced by its meager production to date) nor the full universe of relevant documents.

JJHCS offered two limited search terms regarding the "other offer" term:

- "other offer" W/5 (accumulat* OR maximiz* OR "health plan*" OR insur*)

- "This program offer may not be used with any other coupon, discount, prescription savings card, free trial, or other offer"

This is insufficient. Documents regarding the meaning, drafting, or enforcement of the "other offer" term may not also use the terms "accumulator," "maximizer," "health plan," "insurer," or "insurance" within five words of "other offer" and may not use the full language of the relevant term, particularly because that term has changed over time. *See* JJHCS_00017335 ███████████████████████. SaveOnSP therefore proposes the following additional search terms:

- (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") AND ((term* w/3 condition*) OR "T&C" OR "TNC")

- (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program" OR "program") AND "other offer*"

Furthermore, as discussed, JJHCS must expand its production to include documents regarding the meaning and enforcement of the General T&Cs. SaveOnSP proposes the following additional search terms:

- ("coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*") AND (accumulat* OR maximiz* OR "health plan*" OR insur* OR Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program" OR "program")

- "health plan*" AND ((term* w/3 condition*) OR "T&C" OR "TNC")

- (prohibit* OR bar* OR enforc*) AND ((term* w/3 condition*) OR "T&C" OR "TNC")

- "Benefits Investigation*" AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR

6

Harry Sandick
May 17, 2023

Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR
Tremfya OR Uptravi OR Ventavis OR Zytiga)

If JJHCS declines to add any of these terms, please identify the total number
of unique documents identified by running each such term across JJHCS's custo-
dians during the agreed timeframe. If JJHCS proposes to modify any of these
terms, please identify the total number of unique documents identified by running
the unmodified term across JJHCS's custodians during the agreed timeframe and
the total number of documents identified by running the modified version.

### 3.    Time Period

At the March 17, 2023 conference, JJHCS represented that CarePath "in its
current form" began operating in 2016, *see* Mar. 17, 2023 Hr'g Tr. at 38:8-16, and
that the terms and conditions at issue "came into being" after that, *id.* at 42:18-21.
But discovery to date indicates that the General T&Cs were drafted earlier than
that. The earliest version of the General T&Cs that JJHCS has produced to date is
from January 2017, JJHCS_00017335, and it uses terms that are largely similar to
terms in use today. For example, the 2017 version states: "[t]his offer may not be
combined with any other coupon, discount, prescription savings card, free trial, or
other offer," *id.*, while the 2021 version states: "[t]his *program* offer may not be
*used* with any other coupon, discount, prescription savings card, free trial, or other
offer." DARZALEX® Savings Program (Sept. 2021), https://www.janssencare-
path.com/sites/www.janssencarepath-v1.com/files/darzalex-faspro-yondelis-
savings-program-overview.pdf (emphasis added on the differences between the
2017 version and the 2021 version). This shows that this term was substantially
drafted before January 2017 and later amended.

JJHCS must produce all documents relating to the drafting of the General
T&Cs, from whatever time period. That is, (1) JJHCS must produce any such doc-
uments created on or after April 1, 2016, the date on which the parties have agreed
to begin their production periods; (2) if any portion of the General T&Cs were
drafted before April 1, 2016, JJHCS must produce documents relating to the draft-
ing of those terms; (3) if any portion of the General T&Cs were modeled on or
adopted from terms and conditions for other programs, JJHCS must produce doc-
uments relating to the drafting of those terms; and (4) if any of the General T&Cs
were amended after April 1, 2016—which, as shown, they were—JJHCS must pro-
duce documents relating to the drafting of those amendments.

In opposing SaveOnSP's motion to compel, Feb. 24, 2023 Joint Ltr. at 23
(ECF No. 79), and at the March 17, 2023 conference, Mar. 17, 2023 Hr'g Tr. at
42:17-6, JJHCS expressed concern that RFP Nos. 12 and 13 ask for documents go-
ing back to 2009. As SaveOn has explained, it proposed that date because it under-
stands that the first of the Janssen Drugs at issue was introduced in 2009. To be
clear, SaveOnSP does not seek documents that pre-date the drafting of the terms
contained in the General T&Cs. JJHCS should conduct a reasonable investigation
and determine when the General T&Cs—or the terms from other programs on

7

Harry Sandick
May 17, 2023

which they were modeled—were first drafted and propose a starting date for pro-
duction based on the drafting dates. If it turns out that different terms were drafted
at different points, we are glad to meet and confer about a protocol that reflects
that drafting history.

## III.    The New Stelara & Tremfya T&Cs

In December 2021, JJHCS changed the terms and conditions for Stelara and
Tremfya to include a provision stating "Patients who are members of health plans
(often termed "maximizer" plans) that claim to reduce their patients' out-of-pocket
costs will have a reduced maximum program benefit of $6,000 per calendar year.
Out-of-pocket costs may be co-pay, co-insurance, or deductible" and "Patients who
are members of health plans that claim to eliminate their out-of-pocket costs are
not eligible for cost support." SaveOnSP needs documents related to the drafting,
meaning, and enforcement of the New Stelara & Tremfya T&Cs. But JJHCS has
produced only approximately 50 documents and communications regarding the
reasoning behind these changes and none that reflect the decision actually being
made. *See, e.g.*, JJHCS_00006834-58.

For example, it appears that Ileana Caivano, now a Patient Experience Prod-
uct Group Leader, employed by the Janssen Pharmaceutical Companies of John-
son & Johnson, Ileana Caivano, LINKEDIN, https://www.linkedin.com/in/ileanah
(last visited May 17, 2023) ▮▮▮▮▮▮▮▮▮▮▮▮ *See* JJHCS_00035926. Please identify the indi-
viduals, whether employed by JJHCS or another J&J entity, who were involved in
the drafting, meaning, and enforcement of the New Stelara & Tremfya T&Cs, in-
cluding without limitation identifying who made the decision to change the terms
and conditions for Stelara and Tremfya.

*            *            *

We request that JJHCS confirm by tomorrow evening that it has substan-
tially completed its priority production of documents related to the terms and con-
ditions. We request a full reply to this letter by May 22, 2023.

We reserve all rights and are available to meet and confer.

Best,

/s/ Andrew Dunlap

Andrew R. Dunlap
Partner

# Exhibit 3



May 26, 2023

Harry Sandick
(212) 336-2723
hsandick@pbwt.com

Andrew Dunlap, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:   **Production of Terms and Conditions Discovery**
*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
No. 22 Civ. 2632 (ES) (CLW)

Dear Andrew:

We write in response to your May 17, 2023 letter regarding JJHCS's production of documents regarding CarePath's terms and conditions in response to SaveOnSP's Requests for Production Nos. 12 and 13.

## I.   Documents Regarding the Drafting of Terms and Conditions

JJHCS has further assessed the availability of documents regarding the drafting history of the CarePath terms and conditions, including the "other offer" term emphasized in SaveOnSP's prior letters on this issue. Among other things, we searched for relevant documents and spoke with numerous JJHCS employees whose experience with patient copay assistance programs dates back to at least 2010—more than six years before CarePath was launched in its current form, more than six years before SaveOnSP began operations, and more than twelve years before this litigation was initiated. We understand based on this review that the terms and conditions at issue in this litigation are standard across copay support programs and long pre-date the relevant time period. We have not identified any further documents regarding their drafting, nor do we have any reason to think such documents exist.

Based on these facts, the volume of JJHCS's document production is unsurprising and in no way undermines the thorough, good faith collection and production of documents undertaken by JJHCS in this litigation. Searching for documents using additional search terms is unlikely to shed any more light on the meaning or interpretation of the "other offer" term, or other terms and conditions identified in your May 17 letter.

It is even more unlikely that searching an earlier date range will lead us to identify and produce documents that explain how to interpret this term in connection with the SaveOnSP program. SaveOnSP's requests are meant to identify documents that could conceivably bear on the meaning of the "other offer" term in the context of the SaveOnSP program and other copay accumulator and/or maximizer programs like it. It is now clear that no such documents exist and there is no reasonable basis to dig further into the annals of history—well before any accumulator

Andrew Dunlap, Esq.
May 26, 2023
Page 2

and/or maximizer programs ever existed. Any such request by SaveOnSP would exceed the bounds of proportionality, relevance and burden established by the Federal Rules.

Furthermore, the "other offer" language is standard fare across many manufacturers' copay assistance programs, further confirming that the term is of an old vintage, ubiquitous in its use, and unambiguous in its meaning. As just a few examples, AstraZeneca states that its copay assistance "cannot be combined with any other offer."[1] Novartis and Bristol Myers Squibb similarly specify that their copay assistance "[p]rogram may not be combined with any third-party rebate, coupon, or offer,"[2] as does Pfizer.[3]

For these reasons, and as described in more detail below, JJHCS will not agree to add specific custodians or SaveOnSP's search terms for the drafting history of the terms and conditions at issue, including the "other offer" language. It is our understanding that the documents that SaveOnSP seeks from JJHCS do not exist. Nor will JJHCS search for "all documents . . . *from whatever time period*," May 17, 2023 Ltr. from A. Dunlap to H. Sandick at 7 (emphasis added), to placate SaveOnSP's insistence to the contrary. As the Court noted at the March 17, 2023 conference, SaveOnSP's initial request that JJHCS produce documents dating back to January 1, 2009 was "awfully broad." Mar. 17, 2023 Tr. at 34:5. SaveOnSP's new request—that JJHCS look for such documents without regard to *any date restriction*—is even more broad.

---

[1] *See* AstraZeneca Patient Savings Programs for Specialty Products (last updated March 2023), https://www.astrazenecaspecialtysavings.com/.

[2] Novartis, Patient Copay Savings, https://www.copay.novartispharma.com/nvscopay/eligibility.html# (last accessed May 22, 2023); Bristol Myers Squibb, Access Support Co-Pay Assistance Program Terms & Conditions (October 2022), https://www.bmsaccesssupport.bmscustomerconnect.com/servlet/servlet.FileDownload?file=00Pi000000 omiYSEAY ("This offer cannot be combined with any other offer, rebate, coupon or free trial.").

[3] *See, e.g.*, Pfizer, Nivestym Patient Resources ("This program cannot be combined with any other savings, free trial or similar offer for the specified prescription."), https://www.nivestym.com/patient-resources (last accessed May 22, 2023).

14325913

Andrew Dunlap, Esq.
May 26, 2023
Page 3

## II.    Attorney Custodians

JJHCS declines to add as custodians, or to run search parameters across the documents of, Jennifer De Camara, Harman Grossman, and Savaria Harris (collectively, "Attorneys").  At the outset, all three individuals are attorneys and therefore are not proper custodians in this matter, as any relevant documents or communications would be protected by the attorney-client privilege, work product doctrine, or another applicable privilege or protection from disclosure.  Moreover, even if the Attorneys did have relevant documents or communications outside the privilege, they would be cumulative of those produced by JJHCS from the other agreed-upon custodians.

This approach is consistent with JJHCS's prior representations regarding the Attorneys.  *See* Mar. 16, 2023 Ltr. from H. Sandick to A. Dunlap at 1.   It is well-established that when attorneys are acting as lawyers "giving advice with respect to the legal implications of a proposed course of conduct," the attorney-client privilege applies.  *Rowe v E.I. duPont de Nemours and Co.*, No. CIV. 06-1810-RMD-AMD, 2008 WL 4514092, at *5 (D.N.J. Sept. 30, 2008).  Such "[a]dvice is not in issue merely because it is relevant."  *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994).  Rather, as the Third Circuit has made clear, "[w]hile the attorney's advice may be relevant to the matters in issue," the privilege continues to apply "as the interests it is intended to protect are still served by confidentiality."  *Id.* at 864 (reversing district court's finding of privilege waiver where plaintiff had not put its state of mind at issue); *Berardino v. Prestige Management Servs., Inc.*, No. 14-3451, 2017 WL 1084523, at *5 (D.N.J. Mar. 21, 2017) (Salas, J.) (concluding there was no implied waiver of privilege where defendant did not raise any relevant affirmative defense or "selectively produce[] some privileged documents while withholding others").  SaveOnSP's reliance on invitations to attorneys to join conference calls or forwarded emails is insufficient to establish relevance or to suggest any waiver of the attorney-client privilege.  *See* May 17, 2023 Ltr. from A. Dunlap to H. Sandick at 5.

## III.    Search Terms

JJHCS declines to add the six search strings proposed by SaveOnSP in its May 17 letter.  As a threshold matter, based on our investigation to date, *none* of these search strings are likely to produce responsive materials.  As explained, *supra*, it is our understanding that the relevant language long predates the existence of SaveOnSP or CarePath and is standard across many manufacturers' copay assistance programs.

JJHCS also declines to add these search strings based on the unduly burdensome number of additional unique documents hitting on these terms for the April 1, 2016 to July 1, 2022 time period, as summarized in the chart below.

14325913

Andrew Dunlap, Esq.
May 26, 2023
Page 4

| Search Term Proposed by SaveOnSP | Additional Documents Hitting on Term[4] | Additional Documents Hitting on Term + Families |
|---|---|---|
| (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") AND ((term* w/3 condition*) OR "T&C" OR "TNC") | 25,408 | 124,635 |
| (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program" OR "program") AND "other offer*" | 4,594 | 12,685 |
| ("coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*") AND (accumulat* OR maximiz* OR "health plan*" OR insur* OR Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program" OR "program") | 59,844 | 174,263 |
| "health plan*" AND ((term* w/3 condition*) OR "T&C" OR "TNC") | 4,438 | 14,857 |
| (prohibit* OR bar* OR enforc*) AND ((term* w/3 condition*) OR "T&C" OR "TNC") | 20,739 | 114,205 |
| "Benefits Investigation*" AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga) | 14,470 | 48,983 |

These six terms would require JJHCS to review 312,942 unique documents including families. This is unwarranted given the unlikelihood of identifying any responsive

---

[4] These hit counts exclude documents that have already been reviewed in the course of this litigation.

14325913

Andrew Dunlap, Esq.
May 26, 2023
Page 5

documents that will bear on the issue of the meaning of the CarePath terms and conditions. We therefore decline to agree to these additional search terms.

## IV.    The Stelara & Tremfya T&Cs

In your May 17 letter, you also assert that JJHCS has produced "only approximately fifty documents and communications" related to the "New Stelara & Tremfya T&Cs." May 17, 2023 Ltr. from A. Dunlap to H. Sandick at 8. SaveOnSP's suggestion that JJHCS has produced "fifty" documents responsive to this request is incorrect. To date, JJHCS has produced approximately 2,500 documents hitting on search terms relevant to this request, and JJHCS intends to produce some additional documents relating to the Stelara & Tremfya T&Cs in advance of the June 9 substantial completion deadline.

SaveOnSP also asks that JJHCS add Ileana Caivano as an additional custodian. JJHCS declines to do so. Based on our investigation to date, Ms. Caivano is not relevant to this litigation. Ms. Caivano is a Patient Experience Product Group Leader who focused on IT-related functions and would not have been involved in "brainstorming ways to address maximizers in CarePath's terms and conditions," as suggested in your May 17 letter. *See* May 17, 2023 Ltr. from A. Dunlap to H. Sandick at 8. We therefore do not believe that Ms. Caivano would have documents or communications related to SaveOnSP generally, or JJHCS's decision to change the terms of the Stelara and Tremfya copay assistance programs.

* * *

We remain available for additional meet-and-confer discussions relating to JJHCS's terms and conditions discovery.

Very truly yours,

Harry Sandick

14325913

# Exhibit 4

| | |
|---|---|
| **From:** | Elizabeth Snow |
| **To:** | SaveOn-Team |
| **Subject:** | FW: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW) |
| **Date:** | Thursday, June 15, 2023 7:22:01 PM |

**Elizabeth Snow**

Associate  [Email]

Selendy Gay Elsberg PLLC  [Web]

Pronouns: she, her, hers

-------------------------------------------

+1 212.390.9330  [O]

+1 540.409.7257  [M]

**From:** Haigney Long, Julia (x2878) <jhaigneylong@pbwt.com>
**Sent:** Thursday, June 15, 2023 7:21 PM
**To:** Elizabeth Snow <esnow@selendygay.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; Shane, Beth (x2659) <eshane@pbwt.com>; Brisson, Katherine (x2552) <kbrisson@pbwt.com>; Hashmi, Kabir (x2701) <khashmi@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** David Elsberg <delsberg@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; Meredith Nelson <mnelson@selendygay.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW)

Elizabeth,

Consistent with Judge Waldor's rulings at the March 17, 2023 conference, JJHCS prioritized its agreed upon production of documents responsive to the priority topics referenced in your email and production of those categories of documents is now substantially complete for the expanded time period subsequently agreed to by the parties.

To the extent that we identify any additional, non-privileged documents that are responsive to these requests, we will continue to produce these documents as soon as possible, on a rolling basis.

Best,
Julia

**Julia Haigney Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jhaigneylong@pbwt.com**

---

**From:** Elizabeth Snow <esnow@selendygay.com>
**Sent:** Monday, June 12, 2023 5:07 PM
**To:** Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>;
Carotenuto, George (Departed User) <gcarotenuto@pbwt.com>; LoBiondo, George (x2008)
<globiondo@pbwt.com>; Shane, Beth (x2659) <eshane@pbwt.com>; Haigney Long, Julia (x2878)
<jhaigneylong@pbwt.com>; Brisson, Katherine (x2552) <kbrisson@pbwt.com>; Jeffrey Greenbaum
<JGREENBAUM@sillscummis.com>; Katherine Lieb <klieb@sillscummis.com>
**Cc:** ~delsberg@selendygay.com <delsberg@selendygay.com>; Andrew Dunlap
<adunlap@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; Meredith Nelson
<mnelson@selendygay.com>
**Subject:** JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW)

<mark>*Caution: External Email!*</mark>

Julia,

Thank you for your production of documents on June 9, 2023. We understand based upon your prior
representations that JJHCS's June 9, 2023 production completes JJHCS's production on the priority
topics (financial documents and Janssen CarePath's terms and conditions) ordered by the Court on
March 17, 2023. Please let us know if this is incorrect.

Thanks,

Elizabeth

**Elizabeth Snow**
Associate  [Email]
Selendy Gay Elsberg PLLC  [Web]
Pronouns: she, her, hers

------------------------------------------

+1 212.390.9330  [O]
+1 540.409.7257  [M]

---

Privileged/Confidential Information may be contained in this message. If you are not
the addressee indicated in this message (or responsible for delivery of the message to
such person), you may not copy or deliver this message to anyone. In such case, you

should destroy this message and kindly notify the sender by reply email. Please advise
immediately if you or your employer do not consent to receiving email messages of this
kind.

# **Exhibit 5**



July 17, 2023

Harry Sandick
(212) 336-2723
hsandick@pbwt.com

Andrew Dunlap, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    **Production of Terms and Conditions Discovery**
*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
No. 22 Civ. 2632 (ES) (CLW)

Dear Andrew:

We write in response to your June 29, 2023 letter regarding JJHCS's production of documents regarding CarePath's terms and conditions in response to SaveOnSP's Requests for Production Nos. 12 and 13.

For the reasons discussed below and in our prior correspondence, JJHCS has taken reasonable steps in accordance with the Federal Rules of Civil Procedure in order to respond to RFP Nos. 12 and 13. SaveOnSP's asserted dissatisfaction with the documents produced thus far is not a basis for requiring JJHCS to embark on a wild-goose chase in search of documents that never existed and therefore cannot be collected and produced.

Nevertheless, in keeping with the Court's admonition to seek to resolve discovery disputes through negotiation rather than motion practice, we offer in this letter several proposals that, taken together, are more than sufficient to resolve your outstanding concerns. We make these proposals contingent on your agreement that taking these steps will resolve this dispute and allow the parties to avoid unnecessary motion practice.

**I.    Documents Regarding the Drafting of Terms and Conditions**

At the outset, JJHCS disagrees with your characterization of various aspects of our June 23 meet and confer. To begin with, we did not agree to "identify the predecessor programs from which the CarePath terms and conditions were drawn." June 29, 2023 Ltr. from A. Dunlap to H. Sandick. Rather, we stated that we would consider your request that we do so.

Having considered it, we are not prepared to agree to this request. As JJHCS has stated, the terms and conditions at issue in this litigation long pre-date the relevant time period. At no point have we identified any further documents regarding their drafting or the specific programs for which those terms and conditions were originally employed, nor do we have any reason to think such documents exist.

Andrew Dunlap, Esq.
July 17, 2023
Page 2

      During our meet and confer, we did agree to identify how far back JJHCS typically retains business records and to what extent communications pre-dating 2016 are still accessible. This would allow us to assess the feasibility of agreeing to your request. We did not agree to "identify the document sources that JJHCS has for those [predecessor] programs" or identify "the custodians or non-custodial sources of those records" as stated in your letter. *See* June 29, 2023 Ltr. from A. Dunlap to H. Sandick. Based on our reasonable investigation, we understand that, due to applicable preservation and/or retention capabilities, we are not in a position to produce documents or communications created before 2013.

      At any rate, even if such documents were accessible, it is far from clear that they would shed any light on the disputed issues in this lawsuit. The "other offer" language is standard fare across many manufacturers' copay assistance programs, further confirming that the term is of an old vintage, ubiquitous in its use, and unambiguous in its meaning. In our May 26 letter, we cited just a few examples, including AstraZeneca,[1] Novartis,[2] Bristol Myers Squibb,[3] and Pfizer.[4]

      Nonetheless, in a good-faith effort to reach agreement on this issue, JJHCS will agree to expand the time period for the production of documents from Adrienne Minecci to include August 1, 2015 to July 1, 2022—subject to SaveOnSP's agreement that this expansion and the additional search terms discussed, *infra* at 4—will satisfy JJHCS's obligations with respect to Request Nos. 12 and 13. Consistent with JJHCS response to SaveOnSP's Interrogatory No. 3, Ms. Minecci had responsibility for the drafting and revision of the CarePath terms and conditions referenced in the Complaint and also was involved in the process of transitioning at least one predecessor co-pay support program to the CarePath program, including the introduction of the relevant terms and conditions.

---

[1] *See* AstraZeneca Patient Savings Programs for Specialty Products (last updated March 2023), https://www.astrazenecaspecialtysavings.com/ (copay assistance "cannot be combined with any other offer").

[2] Novartis, Patient Copay Savings, https://www.copay.novartispharma.com/nvscopay/eligibility.html# (last accessed May 22, 2023) ("Program may not be combined with any third-party rebate, coupon, or offer.").

[3] Bristol Myers Squibb, Access Support Co-Pay Assistance Program Terms & Conditions (October 2022), https://www.bmsaccesssupport.bmscustomerconnect.com/servlet/servlet.FileDownload?file=00Pi000000 omiYSEAY ("This offer cannot be combined with any other offer, rebate, coupon or free trial.").

[4] *See, e.g.*, Pfizer, Nivestym Patient Resources ("This program cannot be combined with any other savings, free trial or similar offer for the specified prescription."), https://www.nivestym.com/patient-resources (last accessed May 22, 2023).

14325913

Andrew Dunlap, Esq.
July 17, 2023
Page 3


## II.   Attorney Custodians

SaveOnSP also mischaracterizes our discussion of the three attorneys—Jennifer De Camara, Harman Grossman, and Savaria Harris—who SaveOnSP now seeks to add as custodians.  As stated on our call and as confirmed in our subsequent investigation, all three individuals are employed by the company as attorneys who provide legal advice—not business advice—and therefore none are proper custodians in this matter.  Any relevant documents or communications would be protected by the attorney-client privilege, work product doctrine, or another applicable privilege or protection from disclosure.

For example, during the relevant period, Mr. Grossman served as "Assistant General Counsel, Litigation" at Johnson & Johnson.  In that role, Mr. Grossman managed a portfolio of complex civil and patent litigations involving the Company.   To the extent Mr. Grossman was "involved in revisions of the terms and conditions for Stelara and Tremfya," as disclosed in our January 17, 2022 responses to SaveOnSP's Interrogatories, that involvement was in his role as in-house counsel providing legal advice to JJHCS and his communications are protected by the attorney-client privilege.  *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) ("[W]hile the attorney's advice may be relevant to the matters in issue," the privilege continues to apply "as the interests it is intended to protect are still served by confidentiality."); *Prestige Management Servs., Inc.*, No. 14-3451, 2017 WL 1084523, at *5 (D.N.J. Mar. 21, 2017) (Salas, J.) (concluding there was no implied waiver of privilege where defendant did not raise any relevant affirmative defense or "selectively produce[] some privileged documents while withholding others").  In addition, given his role as a litigation in-house counsel, many of his communications during the relevant time period are protected by the work product doctrine as well.  *Harrington v. Bergen Cnty.*, 2016 WL 4820625, at *3 (D.N.J. Sept. 13, 2016) (Waldor, J.) ("The work product doctrine is governed by a uniform federal standard set forth in Fed.R.Civ.P. 26(b)(3) and shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." (quoting *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003)).

As stated in JJHCS's May 26 letter and our June 23 meet and confer, Savaria Harris and Jennifer De Camara served as attorneys embedded within JJHCS to provide legal advice to the relevant business units.  To the extent Ms. Harris and Ms. De Camera were "involved in revisions of the terms and conditions for Stelara and Tremfya," that involvement was in their role as attorneys providing legal advice to the relevant business units within JJHCS.  As such, their communications are protected by the attorney-client privilege.  *See Rhone-Poulenc Rorer*, 32 F.3d at 864; *Rowe v E.I. duPont de Nemours and Co.*, No. CIV. 06-1810-RMD-AMD, 2008 WL 4514092, at *5 (D.N.J. Sept. 30, 2008) (attorney-client privilege applies when attorneys are acting as lawyers "giving advice with respect to the legal implications of a proposed course of conduct").

Andrew Dunlap, Esq.
July 17, 2023
Page 4

In your June 29 letter, SaveOnSP also asked whether these attorneys "were involved in non-privileged business conversations." June 29, 2023 Ltr. from A. Dunlap to H. Sandick. We do not know of such communications. Nothing beyond speculation justifies the unusual step of the collection or production of documents from these attorneys.

## III.    Search Terms

JJHCS agrees to add the following search strings proposed by SaveOnSP in its June 23 letter, subject to SaveOnSP's agreement that this expansion and the additional search terms discussed will satisfy SaveOnSP's production obligations with respect to these Requests.

- "Care Path" AND "other offer*"

- "Care Path" AND (term* w/3 condition)

- "Care Path" AND T&C

- "Care Path" AND TNC

- CarePath AND "other offer*"

- CarePath AND (term* w/3 condition)

- CarePath AND T&C

- CarePath AND TNC

As explained in JJHCS's May 26 letter and again during our June 23 meet and confer, *none* of these search strings are likely to produce responsive materials. Nonetheless, in an effort to resolve the instant dispute, JJHCS will is prepared to employ these search terms and to make an additional production of non-privileged documents responsive to Requests 12 and 13. In addition, JJHCS encloses an updated hit count for the proposed search terms as Exhibit A to this letter.

JJHCS declines to add the remaining search strings based on the unduly burdensome number of additional unique documents hitting on these terms for the April 1, 2016 to July 1, 2022 time period, as summarized in Exhibit A. The ninety search strings requested by SaveOnSP would require JJHCS to review a total of 133,138 unique documents including families. This is unwarranted given the unlikelihood of identifying any responsive documents that will bear on the issue of the meaning of the CarePath terms and conditions. We therefore decline to agree to these additional search terms.

14325913

Andrew Dunlap, Esq.
July 17, 2023
Page 5


**IV.     Total Documents Reviewed and Produced**

        Finally, at no point during our meet and confer did JJHCS "agree[] to provide SaveOnSP with the number of documents that JJHCS has reviewed to date."  *See* June 29, 2023 Ltr. from A. Dunlap to H. Sandick.  This is a misstatement, as we only agreed to consider this request.  Having considered the request, JJHCS declines to do provide this information.  As Judge Waldor has made clear as recently as our June 27, 2023 conference, the total number of documents each party has reviewed or produced is "doesn't matter" to her assessment of the merits of discovery disputes.  June 27, 2023 Tr. 96:17-19.


                                            Very truly yours,


                                            Harry Sandick

## Exhibit A:  Hit Count for Requested Search Terms

| Search Term Proposed by SaveOnSP | Additional Documents Hitting on Term[5] | Additional Documents Hitting on Term + Families |
|---|---|---|
| "Benefits Investigation*" AND Balversa | 571 | 2,618 |
| "Benefits Investigation*" AND Darzelex | 20 | 50 |
| "Benefits Investigation*" AND Erleada | 2,070 | 8,401 |
| "Benefits Investigation*" AND Faspro | 888 | 4,627 |
| "Benefits Investigation*" AND Imbruvica | 402 | 2,010 |
| "Benefits Investigation*" AND Opsumit | 729 | 3,151 |
| "Benefits Investigation*" AND Precobix | 1 | 2 |
| "Benefits Investigation*" AND Remicade | 5,483 | 24,566 |
| "Benefits Investigation*" AND Rybrevant | 536 | 2,807 |
| "Benefits Investigation*" AND Simponi | 6,376 | 26,504 |
| "Benefits Investigation*" AND Stelara | 9,408 | 36,503 |
| "Benefits Investigation*" AND Symtuza | 1,171 | 3,288 |
| "Benefits Investigation*" AND Tracleer | 332 | 1,750 |
| "Benefits Investigation*" AND Tremfya | 6,472 | 22,469 |
| "Benefits Investigation*" AND Uptravi | 717 | 3,131 |
| "Benefits Investigation*" AND Ventavis | 278 | 1,481 |
| "Benefits Investigation*" AND Zytiga | 2,601 | 13,397 |
| "Care Path" AND "other offer*" | 261 | 1,603 |
| "Care Path" AND (term* w/3 condition) | 40 | 133 |
| "Care Path" AND T&C | 18 | 56 |

[5] These hit counts exclude documents that have already been reviewed in the course of this litigation.

| Search Term Proposed by SaveOnSP | Additional Documents Hitting on Term[5] | Additional Documents Hitting on Term + Families |
|---|---|---|
| "Care Path" AND TNC | 9 | 23 |
| "free trial*" AND "Care Path" | 410 | 2,237 |
| "free trial*" AND "health plan*" | 1,042 | 4,620 |
| "free trial*" AND "Savings Program" | 3,866 | 10,835 |
| "free trial*" AND accumulat* | 321 | 1,144 |
| "free trial*" AND CarePath | 4,995 | 14,673 |
| "free trial*" AND CP | 2,667 | 5,330 |
| "free trial*" AND insur* | 5,030 | 18,170 |
| "free trial*" AND Jannsen | 156 | 515 |
| "free trial*" AND Jansen | 193 | 539 |
| "free trial*" AND Janssen | 6,512 | 21,339 |
| "free trial*" AND JCP | 2,457 | 7,246 |
| "free trial*" AND maximiz* | 504 | 2,527 |
| "free trial*" AND program | 6,769 | 21,770 |
| "prescription savings card*" AND "Care Path" | 163 | 1,168 |
| "prescription savings card*" AND "health plan*" | 481 | 1,541 |
| "prescription savings card*" AND "Savings Program" | 2,426 | 5,424 |
| "prescription savings card*" AND accumulat* | 48 | 99 |
| "prescription savings card*" AND CarePath | 2,656 | 5,879 |

14325913

| Search Term Proposed by SaveOnSP | Additional Documents Hitting on Term[5] | Additional Documents Hitting on Term + Families |
|---|---|---|
| "prescription savings card*" AND CP | 1,744 | 3,259 |
| "prescription savings card*" AND insur* | 2,762 | 6,335 |
| "prescription savings card*" AND Jannsen | 3 | 16 |
| "prescription savings card*" AND Jansen | 28 | 60 |
| "prescription savings card*" AND Janssen | 2,802 | 6,318 |
| "prescription savings card*" AND JCP | 1,329 | 3,162 |
| "prescription savings card*" AND maximiz* | 98 | 382 |
| "prescription savings card*" AND program | 2,829 | 6,379 |
| "Savings Program" AND "other offer*" | 2,843 | 7,222 |
| "Savings Program" AND (term* w/3 condition) | 201 | 511 |
| "Savings Program" AND T&C | 900 | 1,559 |
| "Savings Program" AND TNC | 41 | 94 |
| CarePath AND "other offer*" | 3,357 | 8,627 |
| CarePath AND (term* w/3 condition) | 218 | 603 |
| CarePath AND T&C | 991 | 1,943 |
| CarePath AND TNC | 60 | 204 |
| coupon* AND "Care Path" | 4,066 | 5,877 |
| coupon* AND "health plan*" | 2,249 | 13,779 |
| coupon* AND "Savings Program" | 9,720 | 23,597 |

14325913

| Search Term Proposed by SaveOnSP | Additional Documents Hitting on Term[5] | Additional Documents Hitting on Term + Families |
|---|---|---|
| coupon* AND accumulat* | 1,879 | 7,051 |
| coupon* AND CarePath | 11,079 | 27,666 |
| coupon* AND CP | 7,193 | 12,381 |
| coupon* AND insur* | 11,944 | 38,797 |
| coupon* AND Jannsen | 185 | 1,540 |
| coupon* AND Jansen | 602 | 3,463 |
| coupon* AND Janssen | 16,695 | 46,710 |
| coupon* AND JCP | 6,864 | 13,217 |
| coupon* AND maximiz* | 4,189 | 11,808 |
| coupon* AND program | 18,595 | 50,405 |
| CP AND "other offer*" | 2,027 | 4,080 |
| CP AND (term* w/3 condition) | 200 | 831 |
| CP AND T&C | 468 | 1,072 |
| CP AND TNC | 66 | 143 |
| discount* AND accumulat* | 2,244 | 9,464 |
| discount* AND maximiz* | 4,780 | 22,216 |
| Jannsen AND "other offer*" | 4 | 19 |
| Jannsen AND (term* w/3 condition) | 64 | 345 |
| Jannsen AND T&C | 14 | 62 |
| Jannsen AND TNC | 16 | 34 |
| Jansen AND "other offer*" | 55 | 741 |
| Jansen AND (term* w/3 condition) | 60 | 353 |

| Search Term Proposed by SaveOnSP | Additional Documents Hitting on Term[5] | Additional Documents Hitting on Term + Families |
|---|---|---|
| Jansen AND T&C | 29 | 106 |
| Jansen AND TNC | 28 | 66 |
| Janssen AND "other offer*" | 4,018 | 11,394 |
| Janssen AND (term* w/3 condition) | 765 | 2,591 |
| Janssen AND T&C | 1,757 | 3,663 |
| Janssen AND TNC | 292 | 3,241 |
| JCP AND "other offer*" | 1,627 | 4,677 |
| JCP AND (term* w/3 condition) | 234 | 602 |
| JCP AND T&C | 711 | 1,386 |
| JCP AND TNC | 51 | 127 |

14325913

# Exhibit 6



www.pbwt.com

May 19, 2023

Harry Sandick
(212) 336-2723

Andrew Dunlap, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    **Documents Regarding CarePath's Terms and Conditions**
       *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
       No. 22 Civ. 2632 (ES) (CLW)

Dear Andrew:

   We write in response to one of the several questions posed in your May 17, 2023 letter concerning JJHCS's document production in response to SaveOnSP's Requests for Production Nos. 12 and 13. You had asked for an answer to a single question about our production by May 18, 2023.

   Consistent with Judge Waldor's rulings at the March 17, 2023 conference, JJHCS "prioritize[d] its agreed upon production of documents responsive to" Request Nos. 12 and 13 concerning CarePath's terms and conditions and made a substantial production of those documents on April 28, 2023. As you know, following the conference on April 10, 2023, the parties agreed to extend the relevant time period to begin on April 1, 2016. *See* Apr. 10, 2023 Email from G. LoBiondo to M. Nelson. JJHCS continues to prioritize the review of documents responsive to Request Nos. 12 and 13 from this expanded time period. JJHCS anticipates producing documents from this expanded date range on or before June 9, 2023.

   To the extent that we identify any additional, non-privileged documents that are responsive to Request Nos. 12 and 13 in our ongoing review, we will continue to produce these documents as soon as possible.

Very truly yours,

Harry Sandick

# Exhibit 7

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Andrew R. Dunlap
Partner
212.390.9005
adunlap@selendygay.com

June 29, 2023

**Via E-mail**

Harry Sandick
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
hsandick@pbwt.com

**Re:**   *Johnson & Johnson Health Care Systems Inc. v. Save On SP,
          LLC* **(Case No. 2:22-cv-02632-ES-CLW)**

Dear Harry,

        We write regarding the parties' June 23, 2023 meet and confer as it relates
to CarePath's terms and conditions and the volume of JJHCS's document review.

        *First*, in your May 26 letter, you stated that the term "other offer" in Care-
Path's terms and conditions goes back to at least 2010. During the meet and confer,
you stated that CarePath's terms and conditions were adopted from terms and con-
ditions for prior JJHCS copay assistance programs. JJHCS agreed to (1) identify
the predecessor programs from which the CarePath terms and conditions were
drawn; and (2) identify the document sources that JJHCS has for those programs,
including how far back those records go, whether they are reasonably accessible,
and who the custodians or non-custodial sources of those records are. JJHCS
acknowledged that it had not previously done so.

        *Second*, in its initial disclosures JJHCS had identified three attorneys—Har-
man Grossman, Savaria Harris, and Jennifer De Camera—as involved in the draft-
ing of CarePath's terms and conditions. In its May 17 letter, SaveOnSP asked
JJHCS to add these attorneys as custodians. In its May 26 letter, JJHCS refused to
do so. During the meet and confer, JJHCS agreed to determine if those attorneys
(1) were involved in non-privileged business conversations; and (2) were involved
in revisions of the terms and conditions for Stelara and Tremfya that took effect in
2022. JJHCS acknowledged that it had not previously done so.

Harry Sandick
June 29, 2023

*Third*, in our May 17 letter, we proposed that JJHCS add various search
terms related to terms and conditions. In your May 26 letter, you declined to add
any of those search terms, stating that the proposed terms resulted in 312,000
unique hits, which you claimed was too burdensome for JJHCS to review. During
the meet and confer, we asked if JJHCS was prepared to add any of the proposed
terms; JJHCS said that it had not considered any terms individually. The parties
agreed that SaveOnSP would propose a new set of search terms, broken down into
smaller phrases, and that JJHCS would (1) provide the number of unique hits iden-
tified by each term; and (2) for each term, state if it will agree to add the term or
not. SaveOnSP attaches its revised proposed search terms as Exhibit 1.

*Finally*, JJHCS agreed to provide SaveOnSP with the number of documents
that JJHCS has reviewed to date. We ask that you provide both a total for all doc-
uments and a total for all custodial documents (excluding documents or data from
non-custodial sources).

We ask for a response by July 6, 2023.

We reserve all rights and are available to meet and confer.

Best,

*/s/ Andrew R. Dunlap*

Andrew R. Dunlap
Partner

# EXHIBIT 1

## **Proposed Search Terms**

- Janssen AND (term* w/3 condition)

- Janssen AND "T&C"

- Janssen AND "TNC"

- Jannsen AND (term* w/3 condition)

- Jannsen AND "T&C"

- Jannsen AND "TNC"

- Jansen AND (term* w/3 condition)

- Jansen AND "T&C"

- Jansen AND "TNC"

- CarePath AND (term* w/3 condition)

- CarePath AND "T&C"

- CarePath AND "TNC"

- "Care Path" AND (term* w/3 condition)

- "Care Path" AND "T&C"

- "Care Path" AND "TNC"

- CP AND (term* w/3 condition)

- CP AND "T&C"

- CP AND "TNC"

- JCP AND (term* w/3 condition)

- JCP AND "T&C"

- JCP AND "TNC"

- "Savings Program" AND (term* w/3 condition)

- "Savings Program" AND "T&C"

- "Savings Program" AND "TNC"

- Janssen AND "other offer*"

- Jannsen AND "other offer*"

- Jansen AND "other offer*"

- CarePath AND "other offer*"

- "Care Path" AND "other offer*"

- CP AND "other offer*"

- JCP AND "other offer*"

- "Savings Program" AND "other offer*"

- "coupon*" AND accumulat*

- "coupon*" AND maximiz*

- "coupon*" AND "health plan*"

- "coupon*" AND insur*

- "coupon*" AND Janssen

- "coupon*" AND Jannsen

- "coupon*" AND Jansen

- "coupon*" AND CarePath

- "coupon*" AND "Care Path"

- "coupon*" AND CP

- "coupon*" AND JCP

- "coupon*" AND "Savings Program"

- "coupon*" AND "program"

- "discount*" AND accumulat*

- "discount*" AND maximiz*
- "prescription savings card*" AND accumulat*
- "prescription savings card*" AND maximiz*
- "prescription savings card*" AND "health plan*"
- "prescription savings card*" AND insur*
- "prescription savings card*" AND Janssen
- "prescription savings card*" AND Jannsen
- "prescription savings card*" AND Jansen
- "prescription savings card*" AND CarePath
- "prescription savings card*" AND "Care Path"
- "prescription savings card*" AND CP
- "prescription savings card*" AND JCP
- "prescription savings card*" AND "Savings Program"
- "prescription savings card*" AND "program"
- "free trial*" AND accumulat*
- "free trial*" AND maximiz*
- "free trial*" AND "health plan*"
- "free trial*" AND insur*
- "free trial*" AND Janssen
- "free trial*" AND Jannsen
- "free trial*" AND Jansen
- "free trial*" AND CarePath
- "free trial*" AND "Care Path"
- "free trial*" AND CP

- "free trial*" AND JCP

- "free trial*" AND "Savings Program"

- "free trial*" AND "program"

- "Benefits Investigation*" AND Balversa

- "Benefits Investigation*" AND Darzelex

- "Benefits Investigation*" AND Faspro

- "Benefits Investigation*" AND Erleada

- "Benefits Investigation*" AND Imbruvica

- "Benefits Investigation*" AND Opsumit

- "Benefits Investigation*" AND Precobix

- "Benefits Investigation*" AND Remicade

- "Benefits Investigation*" AND Rybrevant

- "Benefits Investigation*" AND Simponi

- "Benefits Investigation*" AND Stelara

- "Benefits Investigation*" AND Symtuza

- "Benefits Investigation*" AND Tracleer

- "Benefits Investigation*" AND Tremfya

- "Benefits Investigation*" AND Uptravi

- "Benefits Investigation*" AND Ventavis

- "Benefits Investigation*" AND Zytiga

# Exhibit 8

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

*selendy*
*gay*
*elsberg*

Andrew R. Dunlap
Partner
212 390 9000
adunlap@selendygay.com

July 24, 2023

**Via E-mail**

Harry Sandick
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
hsandick@pbwt.com

**Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear Harry,

We write in response to your July 17, 2023 letter regarding JJHCS's pro-
duction of documents related to CarePath's terms and conditions ("T&Cs") in re-
sponse to SaveOnSP's Requests for Production Nos. 12 and 13.

## I.    Background

JJHCS sued SaveOnSP for tortious interference with contract. JJHCS al-
leges that SaveOnSP induced participants in SaveOnSP-advised health plans to
breach two sets of T&Cs of those participants' agreements with CarePath: (1) T&Cs
that applied to all Janssen Drugs at issue through December 2021 and still applies
today to all those drugs except Stelara and Tremfya ("General T&Cs"); and (2)
T&Cs that JJHCS introduced for Stelara and Tremfya, effective January 2022
("New Stelara & Tremfya T&Cs"). Compl ¶¶ 106-11. JJHCS asserts that patients
breach the General T&Cs by participating in the "SaveOnSP Program" because they
provide that CarePath is not available with any "other offer" and SaveOnSP's ser-
vices purportedly constitute such an offer. Compl. ¶¶ 19-20, 106-11. JJHCS also
asserts that patients breach the New Stelara & Tremfya T&Cs by participating in
the "SaveOnSP Program" because one term requires that patients pay "an out-of-
pocket cost for [their] medication," another prohibits "[p]atients who are members
of health plans that claim to eliminate their out-of-pocket costs" from receiving
cost support, and SaveOnSP's services purportedly violate both. *Id.* ¶¶ 102-03.

Harry Sandick
July 24, 2023

In ruling on SaveOnSP's motion to dismiss, the Court held that arguments regarding the meaning of the T&Cs should be decided at summary judgment with the benefit of extrinsic evidence. ECF No. 68 at 16. Courts interpret ambiguous contracts terms based on the intent of the parties to the contract. *Serico v. Rothberg*, 234 N.J. 168, 178 (2018). Documents relating to JJHCS's drafting, revising, and understanding of both sets of T&Cs are relevant to its intent. Also, "courts will consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation." *Id.* (citing *In re County of Atlantic*, 230 N.J. 237, 254-55 (2017)). Documents relating to JJHCS's efforts to enforce both sets of T&Cs are relevant to its practical construction of the contract here.

In its RFP Nos. 12 and 13, SaveOnSP requested documents and communications concerning the meaning of CarePath's T&Cs starting from January 1, 2009. To date, JJHCS has agreed to produce only final versions of CarePath's T&Cs, documents concerning the "drafting" of those T&Cs, and documents related to the meaning of the term "other offer" in the General T&Cs, all from April 1, 2016 to July 1, 2022. *See* Feb. 24, 2023 Joint Ltr. at 23-24; May 17 Ltr. from A. Dunlap to H. Sandick at 7.

During the March 17, 2023 conference, Magistrate Judge Waldor specifically noted that the origin of CarePath's T&Cs was relevant. Hr'g Tr. at 43:19-24 ("MS. NELSON: If CarePath came into existence in 2016 and when it came into existence, someone at Johnson & Johnson said, 'Hey, we have these terms and conditions from our old program. Let's use those again.' THE COURT: Right. That's what I'm trying to get at."); *id.* at 44:20-2 ("THE COURT: ... I do think that in order to see the evolution of terms and the reason there for, it's necessary to give some amount of background."). In response to the Court's concerns, JJHCS proposed that it make its agreed upon production, and "if doesn't answer all of [SaveOnSP's] questions, they can always come back for more." *Id.* at 45:2-3.

JJHCS's production regarding CarePath's T&Cs is inadequate. We sent you a letter on May 17, 2023 pointing out the deficiencies in your production and proposing additional search terms and custodians that might help JJHCS's satisfy its discovery obligations. On May 26, 2023, JJHCS rejected all of SaveOnSP's proposals. JJHCS purported to substantially complete its production of documents relating to the T&Cs on June 9, 2023. June 15, 2023 Email from J. Haigney Long to E. Snow. After reviewing that production, we met and conferred on June 23, 2023. At your request, we split our proposed search terms into smaller chains, so that JJHCS could determine how many documents each portion of the terms would add. June 29, 2023 Ltr. at 4-7. In your July 17, 2023 Letter, JJHCS proposed adding only a handful of search terms and expanding the time period for only a single custodian for eight months. This is nowhere close to sufficient.

2

Harry Sandick
July 24, 2023

## II.    The General T&Cs

Although JJHCS told the Court that it would make a substantial production of documents relating to its General T&Cs, Mar. 17, 2023 Hr'g Tr. at 40:14-15, its production on the subject has been paltry. JJHCS has not produced a single document reflecting the drafting of its General T&Cs nor any document reflecting the enforcement of the "other offer" provision. JJHCS's production includes only a handful of documents that are even arguably related to the meaning of the General T&Cs, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. JJHCS must perform a reasonable search to identify and produce such documents.

### A.    Drafting of the T&Cs

JJHCS agreed to produce documents regarding the drafting of the General T&Cs, Feb. 24, 2023 Joint Ltr. at 23-24, but has produced none. At the June 23, 2023 meet and confer, you said that the General T&Cs, and the term "other offer" specifically, were drawn from T&Cs of predecessor programs to CarePath that go back to at least 2010. We requested that JJHCS (1) identify those predecessor programs; (2) identify the document sources for those programs; and (3) tell us whether those documents were reasonably accessible. June 29, 2023 Ltr. at 1.

JJHCS waited three weeks to tell SaveOnSP that it (1) refuses to identify the predecessor programs; (2) refuses to identify document sources for those programs; and (3) is "not in a position to produce documents or communications created before 2013" "due to applicable preservation and/or retention capabilities." July 17, 2023 Ltr. from H. Sandick to A. Dunlap at 1-2. JJHCS instead offers to provide additional documents from one custodian, Adrienne Minecci, for an additional eight months (beginning on August 1, 2015). July 17, 2023 Ltr. at 2. JJHCS does not explain how such a limited production starting in 2015 could capture documents concerning the drafting of the General T&Cs, which JJHCS states "long pre-date the relevant time period." *Id.* at 1-2. JJHCS's offer is plainly insufficient.

*First*, JJHCS must identify the predecessor programs from which Care-Path's T&Cs were drawn. The Court agreed at the March 17, 2023 conference that SaveOnSP was entitled to information on the origin of the General T&Cs. Hr'g Tr. at 43:19-24, 44:20-2. SaveOnSP has repeatedly asked for this information, which JJHCS should be readily able to provide.

*Second*, JJHCS must identify the individuals within Johnson & Johnson—whether at JJHCS or another J&J entity—who worked on those predecessor T&Cs—and any non-custodial sources related to those T&Cs.

*Third*, JJHCS must identify whether documents from those sources exist and are reasonably accessible. While JJHCS says that it is "not in a position" to

3

Harry Sandick
July 24, 2023

produce documents created before 2013, it does not squarely answer these questions. If JJHCS maintains that such documents are not reasonably accessible, it must explain why, including the burden and cost of accessing them. *See Major Tours, Inc. v. Colorel*, 2009 WL 3446761, at *2 (D.N.J. Oct. 20, 2009) ("On a motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue cost or burden") (quoting Fed. R. Civ. P. 26(b)(2)(B)).

*Finally*, if such documents exist and are reasonably accessible, JJHCS must search for and produce documents regarding the drafting of the following provisions of the General T&Cs: (1) "[t]his program is only for people . . . using commercial or private health insurance for their Janssen medication"; (2) "[y]ou may not seek payment for the value received from this program from any health plan"; (3)"[t]o use this program, you must follow any health plan requirements"; and (4) "[t]his program offer may not be used with any other coupon, discount, prescription savings card, free trial, or other offer." DARZALEX® Savings Program (Sept. 2021), https://www.janssencare-path.com/sites/www.janssencarepath-v1.com/files/darzalex-faspro-yondelis-savings-program-overview.pdf; *see also* Compl. ¶ 48. Once JJHCS identifies the relevant predecessor programs, SaveOnSP is glad to meet and confer with JJHCS to agree upon search terms.

## B.     JJHCS's Understanding of the Meaning of the T&Cs

JJHCS produced almost no documents discussing its understanding of the meaning of the General T&Cs. In its complaint, JJHCS complains that SaveOnSP's services breach the General T&Cs, but no document in JJHCS's production reflects JJHCS's understanding that SaveOnSP's services constitute an "other offer" under the meaning of the General T&Cs. JJHCS used only two narrow search terms relevant to this topic, neither of which was likely to capture all such discussions. First, the full "other offer" term was unlikely to capture many, if any, documents other than copies of the terms and conditions. Second, the limitation of "accumulator," "maximizer," "health plan," "insurer," or "insurance" within five words of "other offer" restricted the search to documents discussing JJHCS's allegations that "other offer" includes services of an accumulator or maximizer. SaveOnSP is entitled to a complete picture of what JJHCS believed that term, and other terms in the T&Cs, meant—including the meaning of "coupon," "discount," "prescription savings card," and "free trial." JJHCS has refused to add the additional terms that SaveOnSP proposed.

JJHCS must perform a reasonable search for these documents. It must use the additional terms that SaveOnSP proposed in Ex. A.I. It must use these terms for all of its custodians—including any relevant individuals at Janssen. It must also extend its time period for this search back through when the terms and conditions for the predecessor programs were drafted for custodians it identifies from the predecessor programs.

4

Harry Sandick
July 24, 2023

## C.    Enforcement of the T&Cs

JJHCS has produced very few documents regarding its decision to enforce the General T&CS. It did not use any search terms that target enforcement documents. JJHCS has refused to add the additional terms that SaveOnSP proposed.

JJHCS must perform a reasonable search for these documents from April 1, 2016 through July 1, 2022 (the agreed upon time period). It must use the additional terms that SaveOnSP proposed in Ex. A.II. It must use these terms for all of its custodians—including any relevant individuals at Janssen. In doing so it must produce all documents relating to all Benefits Investigations for the Janssen Drugs at issue in this action, *see, e.g.*, JJHCS_0003309, as well as any other enforcement actions JJHCS has taken with regard to the General T&Cs, including from non-custodial sources.

## III.    Stelara and Tremfya Terms and Conditions

### A.    Drafting & Revision

*First*, JJHCS has produced very few documents regarding the drafting of the New Stelara and Tremfya T&Cs. ████████████████ ████████████ *See, e.g.*, JJHCS_00006834-58; JJHCS_0001532-41.

JJHCS must perform a reasonable search for these documents. It must add as custodians Jennifer De Camara and Savaria Harris.[2] While it asserts that their documents are protected by attorney-client privilege, *see* July 17, 2023 Ltr. at 3, none of the cases that it cites state that attorneys may not be added as custodians. JJHCS must also add as custodians any relevant individuals at Janssen.

*Second*, JJHCS has produced no documents regarding the business decision to implement the New Stelara and Tremfya T&Cs. JJHCS must do a reasonable search for these documents and add as custodians any relevant individuals at Janssen.

---

█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████

[2] SaveOnSP agrees that, due to his position as "Assistant General Counsel, Litigation," Harman Grossman's documents and communications are more likely than not protected by attorney-client and/or work product privilege. Based on the job titles of Ms. Camara and Ms. Harris, it is likely at least some of their documents and communications are not privileged.

Harry Sandick
July 24, 2023

## B.    Enforcement

JJHCS has produced approximately 100 template letters and call guides ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see*, *e.g.*, JJHCS_00004977 and JJHCS_00044960, but very few documents showing actual implementation of that language. Documents showing only hypothetical enforcement of the T&Cs are insufficient. SaveOnSP proposed terms regarding Benefits Investigations, *see* Ex. A.III, but JJHCS has not agreed to add them.

JJHCS must perform a reasonable search for these documents. It must use the additional terms that SaveOnSP proposed in Ex. A.III. It must use these terms for all of its custodians—including any relevant individuals at Janssen.

JJHCS must also extend this production through the present, June 12, 2023 Ltr. from E. Snow to G. LoBiondo at 1, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* TRIALCARD_00000034-35, TRIAL-CARD_00000074-75. JJHCS does not deny this, but it still refuses to extend its production. It asserts that the burden of extending the production is too great, but it has not quantified how many additional documents it would have to review by extending its search. It also asserts that the Court extended the substantial completion deadline only for SaveOnSP to complete its production. Even were this true, it is a non sequitur—JJHCS is still required to produce relevant documents during the ongoing discovery period.

## IV.    Burden & Proportionality

JJHCS's claims of burden relating to the additional searches that SaveOnSP proposes are meritless. You state that adding the proposed search terms would require JJHCS to review about 133,000 additional documents. This is not an undue burden. These documents go to the heart of JJHCS's claims and SaveOnSP's defenses. JJHCS seeks damages above $100 million. JJHCS has reviewed a shockingly small number of documents to date—JJHCS told the Court it had reviewed only "close to 20,000," June 27, 2023 Conf. Tr. 65:20-21—while SaveOnSP is reviewing over 600,000 custodial documents and 70,000 noncustodial documents. The burden that JJHCS identifies is fully proportional to the needs of this this case.

*            *            *

Harry Sandick
July 24, 2023

Please let us know by July 26, 2023 if you will agree to take steps that Save-OnSP requests in this letter. If not, we will understand the parties to be at impasse. We reserve all rights and are available to meet and confer.

Best,

/s/ Andrew Dunlap

Andrew R. Dunlap
Partner

# EXHIBIT A

## Proposed Search Terms

### I.     Drafting and Meaning Search Terms

- Janssen AND (term* w/3 condition)

- Janssen AND "T&C"

- Janssen AND "TNC"

- Jannsen AND (term* w/3 condition)

- Jannsen AND "T&C"

- Jannsen AND "TNC"

- Jansen AND (term* w/3 condition)

- Jansen AND "T&C"

- Jansen AND "TNC"

- CarePath AND (term* w/3 condition)

- CarePath AND "T&C"

- CarePath AND "TNC"

- "Care Path" AND (term* w/3 condition)

- "Care Path" AND "T&C"

- "Care Path" AND "TNC"

- CP AND (term* w/3 condition)

- CP AND "T&C"

- CP AND "TNC"

- JCP AND (term* w/3 condition)

- JCP AND "T&C"

- JCP AND "TNC"

- "Savings Program" AND (term* w/3 condition)

Harry Sandick
July 24, 2023

- "Savings Program" AND "T&C"

- "Savings Program" AND "TNC"

- Janssen AND "other offer*"

- Jannsen AND "other offer*"

- Jansen AND "other offer*"

- CarePath AND "other offer*"

- "Care Path" AND "other offer*"

- CP AND "other offer*"

- JCP AND "other offer*"

- "Savings Program" AND "other offer*"

- "coupon*" AND accumulat*

- "coupon*" AND maximiz*

- "coupon*" AND "health plan*"

- "coupon*" AND insur*

- "coupon*" AND Janssen

- "coupon*" AND Jannsen

- "coupon*" AND Jansen

- "coupon*" AND CarePath

- "coupon*" AND "Care Path"

- "coupon*" AND CP

- "coupon*" AND JCP

- "coupon*" AND "Savings Program"

- "coupon*" AND "program"

- "discount*" AND accumulat*

2

Harry Sandick
July 24, 2023

- "discount*" AND maximiz*

- "prescription savings card*" AND accumulat*

- "prescription savings card*" AND maximiz*

- "prescription savings card*" AND "health plan*"

- "prescription savings card*" AND insur*

- "prescription savings card*" AND Janssen

- "prescription savings card*" AND Jannsen

- "prescription savings card*" AND Jansen

- "prescription savings card*" AND CarePath

- "prescription savings card*" AND "Care Path"

- "prescription savings card*" AND CP

- "prescription savings card*" AND JCP

- "prescription savings card*" AND "Savings Program"

- "prescription savings card*" AND "program"

- "free trial*" AND accumulat*

- "free trial*" AND maximiz*

- "free trial*" AND "health plan*"

- "free trial*" AND insur*

- "free trial*" AND Janssen

- "free trial*" AND Jannsen

- "free trial*" AND Jansen

- "free trial*" AND CarePath

- "free trial*" AND "Care Path"

- "free trial*" AND CP

Harry Sandick
July 24, 2023

- "free trial*" AND JCP

- "free trial*" AND "Savings Program"

- "free trial*" AND "program"

## II.    General T&Cs Enforcement Search Terms

- "prohibit*" AND (term* w/3 condition*)

- "prohibit*" AND "T&C"

- "prohibit*" AND "TNC"

- "bar*" AND (term* w/3 condition*)

- "bar*" AND "T&C"

- "bar*" AND "TNC"

- "enforc*" AND (term* w/3 condition*)

- "enforc*" AND "T&C"

- "enforc*" AND "TNC"

- "Benefits Investigation*" AND Balversa

- "Benefits Investigation*" AND Darzelex

- "Benefits Investigation*" AND Faspro

- "Benefits Investigation*" AND Erleada

- "Benefits Investigation*" AND Imbruvica

- "Benefits Investigation*" AND Opsumit

- "Benefits Investigation*" AND Precobix

- "Benefits Investigation*" AND Remicade

- "Benefits Investigation*" AND Rybrevant

- "Benefits Investigation*" AND Simponi

- "Benefits Investigation*" AND Symtuza

Harry Sandick
July 24, 2023

- "Benefits Investigation*" AND Tracleer

- "Benefits Investigation*" AND Uptravi

- "Benefits Investigation*" AND Ventavis

- "Benefits Investigation*" AND Zytiga


**III.   Stelara and Tremfya Enforcement Search Terms**

- "Benefits Investigation*" AND Stelara

- "Benefits Investigation*" AND Tremfya

# Exhibit 9

David Elsberg
Andrew R. Dunlap
Meredith Nelson
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

E. Evans Wohlforth, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JMV) (CLW) <br><br> **DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

To:    Jeffrey J. Greenbaum, Esq.
       SILLS CUMMIS & GROSS, P.C.
       One Riverfront Plaza
       Newark, New Jersey 07102
       973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New

*Attorneys for Plaintiff Johnson & Johnson*
*Health Care Systems Inc.*

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26 and 34,

Defendant Save On SP, LLC ("SaveOnSP") requests Plaintiff Johnson & Johnson Health Care

Systems Inc. ("JJHCS"), to produce for inspection and copying the documents listed in these Re-

quests, to the office of the undersigned within 30 days of being served or at a time and place mu-

tually agreed by the parties or ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that this demand for production of documents

shall be deemed continuing in nature so as to require supplemental responses if Plaintiff or Plain-

tiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's

responses are served.

Dated: November 11, 2022              By: /s/ Andrew R. Dunlap
                                          David Elsberg
                                          Andrew R. Dunlap
                                          Meredith Nelson
                                          SELENDY GAY ELSBERG, PLLC
                                          1290 Avenue of the Americas
                                          New York, NY 10104
                                          212-390-9000
                                          deslberg@selendygay.com
                                          adunlap@selendygay.com
                                          mnelson@selendygay.com

                                          E. Evans Wohlforth, Jr.
                                          GIBBONS P.C.
                                          One Gateway Center
                                          Newark, NJ 07102-5310

973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

## DEFINITIONS

1.　　The singular form of a word includes the plural, and vice versa.

2.　　Any tense of a verb includes all tenses.

3.　　Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.　　Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.　　"Action" means this litigation styled as "*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (JMV) (CLW).

6.　　"Affordable Care Act" means the Patient Protection and Affordable Care Act, Pub. L. 148, 124 Stat. 119.

7.　　"All," "any," and "each" mean any and all.

8.　　"And" and "or" are construed both conjunctively and disjunctively.

9.　　"CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

4

10.     "CarePath Care Coordinator" means any person or entity encompassed by that term as used on CarePath's "Contact Us" webpage,[1] as well as any person responsible for communicating with patients who contact CarePath via an advertised help number (*e.g.*, 877-CarePath).

11.     "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

12.     "Complaint" means JJHCS's May 4, 2022 Complaint [ECF No. 1] or any subsequently amended Complaint in this Action.

13.     "Copay Accumulator Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

14.     "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

15.     "Copay Maximizer Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay

---

[1] *See* Contact Us, https://www.janssencarepath.com/patient/contact-us (last visited October 25, 2022).

assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maximizer."

16.    "Document" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

17.    "ESI" means "electronically stored information" as defined in the Federal Rules of Civil Procedure.

18.    "Essential Health Benefit" means, in the context of prescription drug benefits at issue in this case, (a) a prescription drug benefit that satisfies the requirement for a plan to provide essential prescription drug benefits under the Affordable Care Act or that is treated as such by a plan;[2] and (b) any definition JJHCS ascribes to the term "essential health benefit" as used in the Complaint.

19.    "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

20.    "Including" means including but not limited to.

21.    "Janssen" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents,

---

[2] 45 C.F.R. §§ 156.122, 156.115.

representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

22.    "Janssen Drug" means any Specialty Drug manufactured or sold by Janssen from any time for which patients may receive copay assistance, including BALVERSA, DARZALEX, DARZALEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, REMICADE, RYBREVANT, SIMPONI, STELARA, TRACLEER, TREMFYA, UPTRAVI, and ZYTIGA, as well as any other specialty drugs that JJHCS asserts are at issue in this Action.

23.    "JJHCS's Employee Health Plans" means any health plan offered by JJHCS or Janssen to its employees.

24.    "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Johnson & Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and Janssen Research & Development LLC.

25.    "JJHCS Access Group" means the team operating within and for JJHCS under this or a substantially similar name (*i.e.*, Access Group, Access Team, or Access Division).

26.    "JJHCS Health Economics Group" means the team operating within and for JJHCS

under this or a substantially similar name (*i.e.*, Health Economics Group, Health Economics Team,

or Health Economics Division).

27.    "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer,

in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors

and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments,

agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all

persons or entities acting or purporting to act on behalf of such an entity.

28.    "JJHCS Outcome Group" means the team operating within and for JJHCS under

this or a substantially similar name (*i.e.*, Outcome Group, Outcome Team, or Outcome Division).

29.    "Lash Group" means The Lash Group, Inc. and any and all predecessors and suc-

cessors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, rep-

resentatives, directors, officers, employees, committees, attorneys, accountants, and all persons or

entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

30.    "Non-Essential Health Benefits" means, in the context of prescription drug benefits

at issue in this case, (a) any prescription drug benefit covered by a plan in excess of those necessary

for a plan to satisfy the requirements for providing essential prescription drug health benefits under

the Affordable Care Act[3] and designated by the plan as a non-essential health benefit; and (b) any

definition JJHCS ascribes to the term "non-essential health benefits" as used in the Complaint.

31.    "Parties" means "SaveOnSP" and "JJHCS."

32.    "Patient" means a natural person prescribed or eligible to be prescribed any Janssen

Drug, whether or not they use CarePath or are a participant in a health plan advised by SaveOnSP.

---

[3] *See* 45 C.F.R. §§ 156.122, 156.115.

33.    "Person" means a natural person or legal entity including any business or governmental entity or association.

34.    "Regarding" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

35.    "Request" means any of these Requests for Production.

36.    "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Save On SP, LLC.

37.    "SaveOnSP IPBC Video" means the IPBC and SaveOnSP training video created by Express Scripts as defined in Complaint ¶ 9.

38.    "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

39.    "Stelara" means the Janssen Drug sold under that name.

40.    "Tremfya" means the Janssen Drug sold under that name.

41.    "<u>TrialCard</u>" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

42.    "<u>You</u>" and "<u>Your</u>" means JJHCS.

## INSTRUCTIONS

1.    These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 34(a)(1).

2.    These Requests seek production of nonprivileged material. Fed. R. Civ. P. 26(b)(1).

3.    These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4.    For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 34(b)(2)(C).

5.    If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

6.    If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest. Fed. R. Civ. P. 34(b)(2)(C).

7.    If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 26(b)(5)(A)(ii), including by indicating whether any document exists regarding the information

10

requested and stating, to the extent the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked, Local Rule 34.1.

8.     If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction, the reason for its destruction, the name of the person who requested or authorized its destruction, and the name of the person who destroyed it.

9.     Produce documents as they are kept in the usual course of business. Fed. R. Civ. P. 34(b)(E)(i). For each document, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

10.     Produce electronically stored information in the form and manner required by any agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

11.     Produce each document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

12.     Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notations, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

13.     These Requests are deemed continuing. If after responding to any Request you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).

**TIME PERIOD**

Unless otherwise specified, these Requests cover from and including January 1, 2017, through the present.

**REQUESTS**

1.      From January 1, 2009 through the present, Documents sufficient to show JJHCS's organizational structure, including organizational charts.

2.      From January 1, 2009 through the present, Documents sufficient to show Janssen's organizational structure, including organizational charts.

3.      From January 1, 2009 through the present, Documents sufficient to show the organizational structure of each JJHCS Hub Entity.

4.      From January 1, 2009 through the present, Documents sufficient to show the organizational structure of any group or division within JJHCS, Janssen, or any JJHCS Hub Entity involved in developing, managing, marketing, or administering CarePath or any other copay assistance program offered for Janssen Drugs, and to identify their employees.

5.      From January 1, 2009 through the present, Documents sufficient to show the organizational structure of JJHCS's Health Economics, Access, and Outcome Groups and to identify employees working in those groups.

6.      From January 1, 2009 through the present, Documents sufficient to show the organizational structure of the drug product team for each Janssen Drug, and to identify employees working on those teams.

7.      From January 1, 2009 through the present, documents sufficient to identify all natural persons with decisionmaking authority over the sale or marketing of Janssen Drugs.

8.      All Documents and Communications with or regarding SaveOnSP.

12

9.    All Communications by JJHCS or Janssen with any Patient regarding SaveOnSP, including any Documents regarding those Communications.

10.    All Documents and Communications regarding any presentation, document, or information regarding SaveOnSP referenced in the Complaint, including the "SaveOnSP IPBC Video" and the materials referenced in Complaint ¶¶ 82-88.

11.    From January 1, 2009 through the present, all Documents and Communications regarding the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

12.    From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) JJHCS's decision to revise any of its CarePath terms and conditions for any Janssen Drug; and (d) JJHCS's understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

13.    From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

14.    From January 1, 2015 through the present, all Documents and Communications regarding JJHCS's or any JJHCS Hub Entity's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under

the Affordable Care Act and its regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

15.     All Documents and Communications regarding SaveOnSP's communications with Patients regarding CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 60-67, 109.

16.     All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 72.

17.     All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

18.     All Documents and Communications regarding any allegedly misleading or confusing communications between SaveOnSP and Patients, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 13, 75-77, 85-88.

19.     All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

20.     All Documents and Communications regarding any publicly distributed material (including, for example, articles, op-eds, white papers, and online postings) regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services, including Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect involvement with such material and JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect funding of the authors, publishers, or distributors of such material.

14

21.     All Documents and Communications regarding any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services.

22.     All Documents and Communications regarding any alleged harm caused by Save-OnSP to any Patient by allegedly making their healthcare more expensive, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

23.     All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

24.     All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than Care-Path, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

25.     All Documents and Communications regarding any alleged harm caused by Save-OnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 110, 115.

26.     All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

27.     All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

28.     From January 1, 2009 through the present, for each Janssen Drug for each year, Documents sufficient to show:

15

a.    all Patients receiving the Janssen Drug;

b.    the number of fills of the Janssen Drug received by each such Patient;

c.    the dosage of the Janssen Drug received by each such Patient for each fill;

d.    the projected number of Patients, average number of fills, and average
dosage for the Janssen Drug;

e.    the cost to manufacture the Janssen Drug;

f.    the sales and marketing budget for the Janssen Drug;

g.    the price of the Janssen Drug;

h.    the revenue received by JJHCS from the Janssen Drug;

i.    all Patients enrolled in the CarePath program for the Janssen Drug;

j.    the dates on which each Patient was enrolled in CarePath;

k.    the amounts of copay assistance funds that JJHCS offered to each Patient
enrolled in CarePath;

l.    the Janssen Drugs for which each Patient enrolled in CarePath received
copay assistance;

m.    all copay assistance payments that JJHCS made to or on behalf each Pa-
tient enrolled in CarePath; and

29.    From January 1, 2009 through the present, for each Janssen Drug for each year, all
Documents and Communications regarding:

a.    JJHCS's determination of the amounts of copay assistance funds that
JJHCS offered to Patients enrolled in CarePath, including the determina-
tion of the maximum program benefit per calendar year for the Janssen
Drug;

16

b.      JJHCS's budget for CarePath, including the sales and marketing budget;

c.      JJHCS's actual and projected annual costs for CarePath;

d.      JJHCS's use of or accounting for unused CarePath funds;

e.      the impact of the Affordable Care Act on JJHCS's CarePath budget or funding, including the impact of laws and regulations regarding out-of-pocket maximums;

f.      JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath;

g.      the impact of CarePath on Janssen's sales of any Janssen Drug;

h.      the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

i.      JJHCS's or Janssen's actual and projected return on investment for CarePath; and

j.      any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by Save-OnSP.

30.    From January 1, 2009 through the present, for each year for each Janssen Drug, all Documents and Communications regarding the basis for Janssen's decision to raise or lower the price of the Janssen Drug, including labor or manufacturing costs or the increase in efficacy of the Janssen Drug.

31.    All Documents and Communications regarding JJHCS's attempts to limit or eliminate the amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs, including Documents and Communications regarding JJHCS's attempts to limit or eliminate the

availability of CarePath copay assistance funds available to Patients enrolled in health plans advised by SaveOnSP.

32.    All Documents and Communications regarding any offer by JJHCS to provide to any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance funds available to a Patient.

33.    All Documents and Communications regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans.

34.    From any time, all Documents and Communications regarding JJHCS's or Janssen's negotiations or agreements regarding the potential use of SaveOnSP's services, or the services of any Copay Maximizer Service or Copay Accumulator Service, for JJHCS's Employee Health Plans, including JJHCS's abandonment of those negotiations or agreements.

35.    Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coordinators.

36.    From January 1, 2009 through the present, Documents sufficient to show the economic terms of JJHCS's retention of or agreements with any JJHCS Hub Entity or CarePath Care Coordinator regarding CarePath, including any assessment of the fair market value of those services.

37.    From January 1, 2009 through the present, documents sufficient to show the percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs.

18

38.     From January 1, 2009 through the present, all Documents and Communications received by JJHCS from any JJHCS Hub Entity or sent by JJHCS to any JJHCS Hub Entity regarding SaveOnSP or CarePath.

39.     All Documents and Communications received by JJHCS from any CarePath Care Coordinator regarding SaveOnSP.

40.     All Communications by any JJHCS Hub Entity or CarePath Care Coordinator with any Patient regarding SaveOnSP, including any Documents regarding those Communications and talk tracks or scripts prepared for use during those Communications.

41.     From January 1, 2015 through the present, all Documents and Communications relating to Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's return on investment for copay assistance dollars.

42.     From January 1, 2015 through the present, all Documents and Communications relating to JJHCS's or any JJHCS Hub Entity's understanding of the terms "copay accumulator" and "copay maximizer."

43.     All Documents and Communications concerning non-medical switching by participants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

44.     To the extent not requested above, Documents and Communications of any JJHCS Hub Entity or CarePath Care Coordinator regarding the topics of all Requests listed above.

45.     JJHCS's, Janssen's, any JJHCS Hub Entity's, and any CarePath Care Coordinator's document retention policies.

46.     Complete data dictionaries for any data that You produce.

19

47.    From any time, all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP, including in response to subpoenas served in this Action.

48.    To the extent not requested above, from any time, all Documents and Communications upon which you may rely in this Action.

# Exhibit 10

David Elsberg
Andrew R. Dunlap
Meredith Nelson
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

E. Evans Wohlforth, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., | Civil Action No. 22-2632 (JMV) (CLW) |
| Plaintiff, | **DEFENDANT'S FIRST SET OF INTERROGATORIES TO JJHCS** |
| v. |  |
| SAVE ON SP, LLC, |  |
| Defendant. |  |

To:    Jeffrey J. Greenbaum, Esq.
       SILLS CUMMIS & GROSS, P.C.
       One Riverfront Plaza
       Newark, NJ 07102
       973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, NY

*Attorneys for Plaintiff Johnson & Johnson*
*Health Care Systems Inc.*

**PLEASE TAKE NOTICE** that pursuant to Federal Rule of Civil Procedure 33 and Local Civil Rule 33.1, Defendant Save On SP, LLC ("SaveOnSP"), hereby requests that Plaintiff Johnson & Johnson Health Care Systems Inc.'s ("JJHCS") answer these Interrogatories within 30 days of being served in accordance with the definitions and instructions set forth below.

**PLEASE TAKE FURTHER NOTICE** that these Interrogatories are continuing in nature, and it is requested that JJHCS serve upon SaveOnSP's counsel, via supplemental answers, any information requested herein that is unavailable at the time answers hereto are submitted, but which becomes available to JJHCS or any attorney, agent, representative, or principal of JJHCS prior to the termination of this case.

Dated:  December 15, 2022                    By:  */s/ Andrew R. Dunlap*
                                                     David Elsberg
                                                     Andrew R. Dunlap
                                                     Meredith Nelson
                                                     SELENDY GAY ELSBERG, PLLC
                                                     1290 Avenue of the Americas
                                                     New York, NY 10104
                                                     212-390-9000
                                                     deslberg@selendygay.com
                                                     adunlap@selendygay.com
                                                     mnelson@selendygay.com

                                                     E. Evans Wohlforth, Jr.
                                                     GIBBONS P.C.
                                                     One Gateway Center
                                                     Newark, NJ 07102-5310
                                                     973-596-4500

ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

## DEFINITIONS

The following definitions apply to these Interrogatories:

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses.

3.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.      "Action" means this litigation styled as "*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (JMV) (CLW).

6.      "Affordable Care Act" means the Patient Protection and Affordable Care Act, Pub. L. 148, 124 Stat. 119.

7.      "All," "any," and "each" mean any and all.

8.      "And" and "or" are construed both conjunctively and disjunctively.

9.      "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

10.    "CarePath Care Coordinator" means any person or entity encompassed by that term as used on CarePath's "Contact Us" webpage,[1] as well as any person responsible for communicating with patients who contact CarePath via an advertised help number (*e.g.*, 877-CarePath).

11.    "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

12.    "Complaint" means JJHCS's May 4, 2022 Complaint [ECF No. 1] or any subsequently amended Complaint in this Action.

13.    "Copay Accumulator Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

14.    "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

15.    "Copay Maximizer Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay

---

[1] *See* Contact Us, https://www.janssencarepath.com/patient/contact-us (last visited October 25, 2022).

assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maxi-

mizer."

16.     "Document" means "document" and "electronically stored information" as defined

in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within

the meaning of this term.

17.     "ESI" means "electronically stored information" as defined in the Federal Rules of

Civil Procedure.

18.     "Essential Health Benefit" means, in the context of prescription drug benefits at

issue in this case, (a) a prescription drug benefit that satisfies the requirement for a plan to provide

essential prescription drug benefits under the Affordable Care Act or that is treated as such by a

plan;[2] and (b) any definition JJHCS ascribes to the term "essential health benefit" as used in the

Complaint.

19.     "Identify" means (a) with respect to persons, to give, to the extent known, the per-

son's full name, present or last known address, and when referring to a natural person, additionally,

the present or last known place of employment; (b) with respect to documents, either (i) to give,

to the extent known, the (A) type of document; (B) general subject matter; (C) date of the docu-

ment; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together

with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

20.     "Including" means including but not limited to.

21.     "Janssen" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen

Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and

successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents,

---

[2] 45 C.F.R. §§ 156.122, 156.115.

representatives, directors, officers, employees, committees, attorneys, accountants, and all persons

or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc.,

Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

22.    "Janssen Drug" means any Specialty Drug manufactured or sold by Janssen from

any time for which patients may receive copay assistance, including BALVERSA, DARZALEX,

DARZALEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, REMICADE, RYBREVANT,

SIMPONI, STELARA, TRACLEER, TREMFYA, UPTRAVI, and ZYTIGA, as well as any other

specialty drugs that JJHCS asserts are at issue in this Action.

23.    "JJHCS's Employee Health Plans" means any health plan offered by JJHCS or

Janssen to its employees.

24.    "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all pre-

decessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or depart-

ments, agents, representatives, directors, officers, employees, committees, attorneys, accountants,

and all persons or entities acting or purporting to act on behalf or under the control of Johnson &

Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil

Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals,

Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development,

LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc.,

Janssen BioPharma LLC, and Janssen Research & Development LLC.

25.    "JJHCS Access Group" means the team operating within and for JJHCS under this

or a substantially similar name (*i.e.*, Access Group, Access Team, or Access Division).

26.      "<u>JJHCS Health Economics Group</u>" means the team operating within and for JJHCS under this or a substantially similar name (*i.e.*, Health Economics Group, Health Economics Team, or Health Economics Division).

27.      "<u>JJHCS Hub Entity</u>" means any entity retained or utilized by JJHCS to administer, in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of such an entity.

28.      "<u>JJHCS Outcome Group</u>" means the team operating within and for JJHCS under this or a substantially similar name (*i.e.*, Outcome Group, Outcome Team, or Outcome Division).

29.      "<u>Lash Group</u>" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

30.      "<u>Non-Essential Health Benefits</u>" means, in the context of prescription drug benefits at issue in this case, (a) any prescription drug benefit covered by a plan in excess of those necessary for a plan to satisfy the requirements for providing essential prescription drug health benefits under the Affordable Care Act[3] and designated by the plan as a non-essential health benefit; and (b) any definition JJHCS ascribes to the term "non-essential health benefits" as used in the Complaint.

31.      "<u>Parties</u>" means "SaveOnSP" and "JJHCS."

32.      "<u>Patient</u>" means a natural person prescribed or eligible to be prescribed any Janssen Drug, whether or not they use CarePath or are a participant in a health plan advised by SaveOnSP.

---

[3] *See* 45 C.F.R. §§ 156.122, 156.115.

33.    "Person" means a natural person or legal entity including any business or governmental entity or association.

34.    "Regarding" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

35.    "Request" means any of these Requests for Production.

36.    "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Save On SP, LLC.

37.    "SaveOnSP IPBC Video" means the IPBC and SaveOnSP training video created by Express Scripts as defined in Complaint ¶ 9.

38.    "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

39.    "Stelara" means the Janssen Drug sold under that name.

40.    "Tremfya" means the Janssen Drug sold under that name.

41.    "<u>TrialCard</u>" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

42.    "<u>You</u>" and "<u>Your</u>" means JJHCS.

## <u>INSTRUCTIONS</u>

1.    These Interrogatories seek information available to you following a reasonable inquiry into the information sought.

2.    These Interrogatories seek nonprivileged information. Fed. R. Civ. P. 26(b)(1).

3.    Answer each Interrogatory separately and fully in writing under oath.  Fed. R. Civ. P. 33(b)(3).

4.    If you object to all or part of an Interrogatory, state that objection with specificity. Fed. R. Civ. P. 33(b)(4).  Any ground not stated in a timely objection will be waived unless excused by the Court for good cause.  *Id.*

5.    If you object to part of an Interrogatory, specify the part and answer the rest.

6.    If you are unable to answer all or part of an Interrogatory, specify the part and answer the rest.

7.    If you find the meaning of any term in these Interrogatories unclear, assume a reasonable meaning, and respond to the Interrogatory according to the assumed meaning, stating your assumed meaning in your response.

8.    If the answer to an Interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a part your documents, and if the burden of deriving or ascertaining the answer will be substantially the same for either party, you may answer by (a) specifying the records that must be reviewed, in sufficient detail to enable SaveOnSP to locate and identify

them as readily as you could; and (b) giving SaveOnSP a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries. Fed. R. Civ. P. 33(d).

9.      If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim. Fed. R. Civ. P. 26(b)(5)(A)(ii). When you claim any privilege, you shall indicate, as to the information requested, whether (a) any documents exist; or (b) any oral communications took place. If you assert a privilege in connection with a claim or defense governed by state law, you shall set forth the state privilege rule being invoked. Local Civ. Rule 33.1(c).

10.     If the person who verifies the answers to interrogatories does not have personal knowledge of the information contained in the answers, that person shall, for each answer not verified by personal knowledge, identify the person or persons from whom the information was obtained or, if the source of the information is documentary, provide a full description including the location thereof. Local Civ. Rule 33.1(b).

11.     If you become aware of a document concerning an Interrogatory that was once in your possession, custody, or control, and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction, the reason for its destruction, the name of the person who requested or authorized its destruction, and the name of the person who destroyed it.

12.     Answers must be signed by the person providing them; objections mut be signed by an attorney.  Fed. R. Civ. P. 33(b)(5).

13.     If after responding to any Interrogatory you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).

## **TIME PERIOD**

Unless otherwise specified, these Interrogatories relate to the time period from and including January 1, 2017, through the present.

## **INTERROGATORIES**

1.     Identify each person who participated in or had responsibility for communications with patients or health plans, including any communications between CarePath Care Coordinators or JJHCS Hub Entities and patients, from January 1, 2009 through the present.

**ANSWER:**

2.      Identify each person who participated in or had responsibility for the marketing of CarePath or other communications with the public regarding CarePath, including those mentioning Copay Accumulator Services or Copay Maximizer Services, from January 1, 2009 through the present.

**ANSWER:**

3.      Identify each person who participated in or had responsibility for drafting or revising CarePath's terms and conditions for each Janssen Drug, from January 1, 2009 through the present.

**ANSWER:**

4.      Identify each person who participated in or had responsibility for analyzing price, revenue, cost, or other financial data for Janssen Drugs, as well as financial data for CarePath and other Copay Assistance Programs for Janssen Drugs, from January 1, 2009 through the present.

**ANSWER:**

5.      Identify each person who participated in or had responsibility for JJHCS's attempts to identify health plans advised by SaveOnSP or patients enrolled in such plans.

**ANSWER:**

6.      Identify each person who participated in or had responsibility for JJHCS's attempts to limit or eliminate the amount of CarePath copay assistance funds available to patients enrolled in health plans advised by SaveOnSP, including JJHCS's attempts to limit or eliminate the amount of CarePath copay assistance funds available to patients using Stelara or Tremfya.

**ANSWER:**

7.      Identify each person who participated in or had responsibility for JJHCS's or any JJHCS Hub Entity's understanding of the terms "copay accumulator" and "copay maximizer."

**ANSWER:**

## **CERTIFICATION**

I am the _____ of Plaintiff Johnson & Johnson Health Care

Systems Inc. ("Plaintiff"). I am authorized to submit this certification on behalf of Plaintiff. I

certify that the foregoing responses made by me to these Interrogatories are true. I am aware that

if any of the foregoing answers are willfully false, I and Plaintiff are subject to punishment.

I certify that in responding to the foregoing Interrogatories, I furnished all information

available to Plaintiff, and to its agents, employees, and attorneys. As to those answers which are

not within my personal knowledge, I certify that I provided the name and address of every person

from whom such information was received or, where the source of such information is

documentary, a full description of the document including its location.


Dated: _____                    By: _____

                                               Title: _____

# EXHIBITS 11-28

# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 29



www.pbwt.com

July 19, 2023

Sara A. Arrow
(212) 336-2031

**<u>VIA EMAIL</u>**

Meredith Nelson, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
       <u>No. 2:22-cv-02632 (ES) (CLW)</u>

Dear Meredith:

We write in response to your July 11, 2023 letter about JJHCS's production in response to SaveOnSP's Requests for Production Nos. 8, 9, 12, and 29.

We have identified documentation sufficient to show the nature and extent of the change relating to a $9,100 co-pay assistance maximum for certain patients and will produce it shortly.

You have also requested that JJHCS run a hit report to confirm the burden associated with running additional search terms over the files of an untold number of unidentified custodians for a period outside of the agreed-upon time period. We decline to do so for the reasons already explained in our prior correspondence. Instead, subject to any objections and while reserving all rights, JJHCS will respond in due course to SaveOnSP's Request for Production No. 49, which seeks documents regarding JJHCS's purported efforts to identify and disenroll individuals enrolled in CarePath as members of SaveOnSP-advised plans.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

# Exhibit 30

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

selendy
gay
elsberg

Elizabeth Snow
Associate
212 390 9330
esnow@selendygay.com

June 12, 2023

**Via E-mail**

George LoBiondo
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
globiondo@pbwt.com

Re:    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
       LLC*** **(Case No. 2:22-cv-02632-ES-CLW)**

Dear George,

  We write to ask that JJHCS extend the time period of its production in response to RFP Nos. 8,9, 12, and 29 through the present.

  *First,* SaveOnSP understands that for at least some patients taking Stelara and Tremfya, JJHCS had cut the amount of copay assistance funds available through the Janssen CarePath program starting in January 2022 to $6,000, but JJHCS increased the available amount to approximately $9,100 in or around May 2023. Documents and communications reflecting JJHCS's decision to decrease and then apparently to increase the amount of copay assistance funds available for Stelara and Tremfya are responsive to SaveOnSP's Request for Production 29, and encompassed by JJHCS's agreement to produce JJHCS's budget for copay assistance through CarePath and JJHCS's actual and projected annual costs for CarePath. *See* Feb. 14, 2023 Ltr. from A. LoMonaco to M. Nelson, at 1-2.

  SaveOnSP asks that JJHCS please run the following new search term over the time period July 1, 2022 through June 12, 2023: ((9,100 OR 9100 OR increase) AND (Stelara* OR Tremfya* OR CarePath OR JCP OR "Savings Program"). SaveOnSP notes that it bases this search term off of the term that JJHCS proposed in its February 6, 2023 letter regarding the limitation of funds for CarePath to $6,000 for Stelara and Tremfya. SaveOnSP also asks that JJHCS extends the following term through June 12, 2023: (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate). Please also identify any individuals (not limited to employees of JJHCS) who were involved in

George LoBiondo
June 12, 2023

or have knowledge of this decision or its implementation. To the extent that they are not already named as custodians, we ask that JJHCS please add those individuals as custodians.

*Second*, SaveOnSP understands—in part based on the Trial Card production, *see, e.g.*, TRIALCARD_00000076 ████████████████████████████████████████████████████████████████████████████████████████████████████ Documents and communications regarding these efforts are relevant to JJHCS's attempts to purportedly enforce CarePath's terms and conditions, and so are responsive to several of SaveOnSP's RFPs, including RFP Nos. 8, 9, and 12.

SaveOnSP asks that JJHCS please run the following new search term over the period July 1, 2022 through June 12, 2023: ("Benefits Investigation" AND (Stelara OR Tremfya)). SaveOnSP also requests that you extend the following terms through June 12, 2023:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP"

- "Save On"

- ("Express Scripts" OR ESI) w/50 (accumulat* OR maximiz*)

- Accredo w/50 (accumulat* OR maximiz*)

Please also identify any individuals (not limited to employees of JJHCS) who were involved in or have knowledge of these efforts. To the extent that they are not already named as custodians, we ask that JJHCS please add those individuals as custodians.

Please confirm by June 16, 2023 that JJHCS will produce documents through the present on both of the foregoing topics. We reserve all rights and are available to meet and confer.

Best,

/s/ Elizabeth Snow

Elizabeth H. Snow
Associate

# Exhibit 31



June 16, 2023

George LoBiondo
(212) 336-2008

**<u>VIA EMAIL</u>**

Elizabeth H. Snow, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
        *No. 2:22-cv-02632 (ES) (CLW)*

Dear Elizabeth:

We write concerning your June 12, 2023 letter about JJHCS's production in response to SaveOnSP's Requests for Production Nos. 8, 9, 12, and 29.

## I.    Request for Production No. 29

You have requested that JJHCS run new search terms, extend the time period, and identify new custodians to capture additional documents related to the amount of copay assistance funds available through Janssen CarePath programs for patients taking Stelara and Tremfya. The premise underlying your request is your understanding that JJHCS made a "decision to decrease and then apparently to increase the amount of copay assistance funds available for Stelara and Tremfya" from $6,000 to $9,100 "in or around May 2023." Your understanding is incorrect. To help resolve your misunderstanding, although it is under no obligation to do so, JJHCS will identify and produce documents sufficient to show the nature and extent of the change relating to a $9,100 maximum for certain patients. SaveOnSP may then explore these issues further at deposition or using appropriate discovery devices.

## II.    Requests for Production Nos. 8, 9, and 12

You have also requested that JJHCS run additional search terms, extend the time period, and identify additional custodians purportedly to capture documents related to efforts to disenroll SaveOn-affiliated patients from the Janssen CarePath program. But the searches you have proposed bear no connection to the issue you have identified. Rather, they obviously seek a generalized update of document production, e.g., your proposed searches for variants on the term "SaveOnSP" or Express Scripts/Accredo in close proximity to the terms "accumulat*" or "maximiz*." The original close of substantial production date has now passed, and the date was

Elizabeth H. Snow
June 16, 2023
Page 2

extended only to facilitate SaveOnSP's meeting its production obligations.  JJHCS declines to entertain a belated and one-sided demand for a wholesale production update at this stage.[1]

        More generally, JJHCS has already provided extensive discovery on this topic, including previously agreed-upon search terms and custodians capturing JJHCS's efforts to enforce CarePath terms and conditions.  SaveOnSP may explore this topic further at depositions.

        Very truly yours,


        */s/ George LoBiondo*
        George LoBiondo

---

[1] We recognize that limited and bilateral updates may be necessary, e.g., for data relevant to damages, and are available to discuss those issues further.

# Exhibit 32

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Meredith Nelson
Associate
212.390.9069
mnelson@selendygay.com

July 11, 2023

**<u>Via E-mail</u>**

George LoBiondo
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
globiondo@pbwt.com

**Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear George,

We write in response to your June 16 letter regarding SaveOnSP's RFP Nos. 8, 9, 12, and 29.

*First*, JJHCS promised to "identify and produce documents sufficient to show" why it believes SaveOnSP was "incorrect" in its understanding that JJHCS decided to decrease and then increase the amount of copay assistance funds available for Stelara and Tremfya from $6,000 to $9,100 in May 2023. Over three weeks have passed since JJHCS volunteered to produce these documents, but SaveOnSP has yet to receive them. As JJHCS knows, the amount of money that JJHCS voluntarily makes available through CarePath is a key issue in this case. If JJHCS does not produce the documents it promised by July 14, we will understand the parties to be at impasse on this issue. (To be clear, we do not agree that the promised production will be sufficient to respond to SaveOnSP's request.)

*Second*, JJHCS refused to search for documents regarding its attempts to disenroll patients on SaveOnSP-advised plans from July 1, 2022 through June 12, 2023, which SaveOnSP regards as responsive to RFP Nos. 8, 9, and 12. JJHCS does not appear to object to the request on the basis of relevance. If JJHCS objects on the basis of burden, please provide hit counts for the search terms SaveOnSP has requested JJHCS to run by July 14. If you do not provide hit counts by then, we will understand that JJHCS is refusing to do so.

George LoBiondo
July 11, 2023

We reserve all rights and are available to meet and confer.


Best,

/s/ Meredith Nelson

Meredith Nelson
Associate

# JJHCS
# Exhibit 1

**Haigney Long, Julia (x2878)**

| | |
|---|---|
| **From:** | Sandick, Harry (x2723) |
| **Sent:** | Wednesday, August 23, 2023 4:39 PM |
| **To:** | Elizabeth Snow |
| **Cc:** | Haigney Long, Julia (x2878); Arrow, Sara (x2031); LoBiondo, George (x2008); Mangi, Adeel A. (x2563); ~jgreenbaum@sillscummis.com; ~klieb@sillscummis.com; Andrew Dunlap; Meredith Nelson; ~delsberg@selendygay.com; Wohlforth, E. Evans |
| **Subject:** | Re: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW) |

Elizabeth,

As you will soon see when we circulate the draft, your assertion that the terms in the letter today are the same as those in the June 29 letter is incorrect.

Regards,

Harry

Sent from my iPhone

> On Aug 23, 2023, at 4:36 PM, Elizabeth Snow <esnow@selendygay.com> wrote:
>
>
> *Caution: External Email!*
>
>
> Harry,
>
> Your assertion that we are causing any delays in the process is simply not true. We did not change the terms that we are asking JJHCS to run. The terms that we are moving on are the same ones that we identified in our June 29 letter. Please provide any edits to the joint letter promptly.
>
> Best,
>
> **Elizabeth Snow**
> Associate  [Email]
> Selendy Gay Elsberg PLLC [Web]
> Pronouns: she, her, hers
>
> +1 212.390.9330 [O]
> +1 540.409.7257 [M]
>
> **From:** Sandick, Harry (x2723) <hsandick@pbwt.com>
> **Sent:** Wednesday, August 23, 2023 3:47 PM
> **To:** Elizabeth Snow <esnow@selendygay.com>

**Cc:** Haigney Long, Julia (x2878) <jhaigneylong@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>;
LoBiondo, George (x2008) <globiondo@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>;
~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com
<klieb@sillscummis.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson
<mnelson@selendygay.com>; David Elsberg <delsberg@selendygay.com>; Wohlforth, E. Evans
<EWohlforth@rc.com>
**Subject:** Re: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW)

Elizabeth,

Thanks for your email.  We are working on replying and expect to get back to you soon.  We note that
even after weeks of meet-and-confer and after going through this joint letter process for some time, you
continue to change the search terms that you are asking JJHCS to run.  It is improper for SaveOnSP to be
proposing new terms at this late stage in the process and this is the cause of any delay that you may
perceive.

Best regards,

Harry

Sent from my iPad

On Aug 23, 2023, at 3:19 PM, Elizabeth Snow <esnow@selendygay.com> wrote:

*Caution: External Email!*

Harry,

It has now been almost a full 24 hours. Please promptly provide any revisions to the
joint letter. We would like to file with the Court today.

Thanks,

**Elizabeth Snow**
Associate  [Email]
Selendy Gay Elsberg PLLC  [Web]
Pronouns: she, her, hers
_____
+1 212.390.9330  [O]
+1 540.409.7257  [M]

**From:** Sandick, Harry (x2723) <hsandick@pbwt.com>
**Sent:** Tuesday, August 22, 2023 4:07 PM
**To:** Elizabeth Snow <esnow@selendygay.com>; Haigney Long, Julia (x2878)
<jhaigneylong@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; LoBiondo,

George (x2008) <globiondo@pbwt.com>; Mangi, Adeel A. (x2563)
<aamangi@pbwt.com>; ~jgreenbaum@sillscummis.com
<jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson
<mnelson@selendygay.com>; David Elsberg <delsberg@selendygay.com>; Wohlforth, E.
Evans <EWohlforth@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW)

Elizabeth,

Thanks for your email.  We will review your revisions promptly.

Upon a first read, some of the revisions relate to proposed search terms that may be
different from what we understood SaveOnSP was proposing in the last turn of this letter.
Given that the letter was sent back to us at 4 pm, we cannot commit to finishing this letter
today.

Regards,

Harry

Harry Sandick
Patterson Belknap Webb & Tyler LLP

---

**From:** Elizabeth Snow <esnow@selendygay.com>
**Sent:** Tuesday, August 22, 2023 3:53 PM
**To:** Haigney Long, Julia (x2878) <jhaigneylong@pbwt.com>; Arrow, Sara (x2031)
<sarrow@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Mangi,
Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723)
<hsandick@pbwt.com>; ~jgreenbaum@sillscummis.com
<jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson
<mnelson@selendygay.com>; ~delsberg@selendygay.com
<delsberg@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>
**Subject:** JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW)

*Caution: External Email!*

Counsel,

Please find attached a revised version of SaveOnSP's joint letter regarding CarePath's
terms and conditions and a redline from the prior version you circulated. We ask that
you please provide any revisions today, so we may file. We reserve the right to revise in
response to any further revisions.

Thanks,

Elizabeth

**Elizabeth Snow**
Associate  [Email]

Selendy Gay Elsberg PLLC  [Web]
Pronouns: she, her, hers

+1 212.390.9330  [O]
+1 540.409.7257  [M]

Privileged/Confidential Information may be contained in this message. If you are not
the addressee indicated in this message (or responsible for delivery of the message to
such person), you may not copy or deliver this message to anyone. In such case, you
should destroy this message and kindly notify the sender by reply email. Please advise
immediately if you or your employer do not consent to receiving email messages of this
kind.

Privileged/Confidential Information may be contained in this message. If you are not
the addressee indicated in this message (or responsible for delivery of the message to
such person), you may not copy or deliver this message to anyone. In such case, you
should destroy this message and kindly notify the sender by reply email. Please advise
immediately if you or your employer do not consent to receiving email messages of this
kind.