June 23, 2023

**Via ECF**

Hon. Cathy L. Waldor, U.S.M.J.
U.S. District Court for the District of New Jersey
50 Walnut Street, Room 4040
Newark, NJ 07102

Re:   *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*
      **(Case No. 2:22-cv-02632-JMV-CLW)**

Dear Judge Waldor,

    We submit this joint letter on behalf of the parties in the above-captioned matter pursuant to the Court's Civil Case Management Order ¶ 7 and Local Rule 37.1 governing discovery disputes and in advance of the parties' discovery conference scheduled for June 27, 2023.

    As set forth below, Plaintiff Johnson & Johnson Health Care Systems Inc. ("JJHCS") states that the parties have never met and conferred regarding the new relief requested by Defendant Save On SP, LLC ("SaveOnSP"), nor have they reached impasse; the phone call alluded to by SaveOnSP was in no way a substantive conferral about the issues raised in this motion. Therefore, JJHCS asserts that SaveOnSP's request does not comply with Paragraph 5 of the Court's Pretrial Scheduling Order or Local Civ. Rule 37.1(a). SaveOnSP states that the parties have discussed the relief SaveOnSP seeks on several occasions and have reached impasse. The parties met and conferred again today and confirmed that they were at impasse on this issue.

### *SaveOnSP's Position*

    JJHCS still refuses to identify individuals working at Johnson & Johnson entities other than JJHCS who are involved with the CarePath program in response to SaveOnSP's interrogatories or to designate employees of those entities as document custodians. Months ago, when SaveOnSP moved to compel it to do these things, JJHCS asked that "the Court [] reject SaveOnSP's motion" until "SaveOnSP [] reviewed JJHCS's document productions." Feb. 24, 2023 Joint Ltr. at 19 (ECF No. 79). JJHCS waited to produce most of its documents until a few weeks ago. SaveOnSP's initial review confirms that this production is materially deficient because it excludes documents from non-JJHCS entities.

    *First*, although JJHCS told the Court that "JJHCS is the sole relevant J&J entity involved in the development, marketing, or administration of CarePath," Feb. 24, 2023 Joint Ltr. at 20, its production shows that key decisions regarding CarePath were made by Janssen, which makes the drugs covered by CarePath. For example, in May of 2022, JJHCS sent patients a letter asking them to contact their plans about recent changes to CarePath's terms and conditions. Ex. 1 (JJHCS_000002618). JJHCS's documents show that an April 21, 2022 version of the letter was "████████████████████████████" Ex. 2 (JJHCS_000002616)—████████████████

14380269

Hon. Cathy L. Waldor, U.S.M.J.
June 23, 2023
Page 2

███████████, *see, e.g.,* Ex. 3 (JJHCS_00001542), which "████████████████████████████████████████████████████████████████████████████████████████████████"[1] Other documents show that JJHCS could not change CarePath's terms and conditions on its own; ████████████████████████████████████████████████████████████. Ex. 4 (JJHCS_00001460). All this indicates that Janssen was heavily involved with CarePath's terms and conditions and strategies for contacting patients about those changes. And, while JJHCS presentations show the amount of copay assistance funds available for Janssen drugs, *e.g.*, Ex. 5 (JJHCS_00117128); Ex. 6 (JJHCS_00002348), JJHCS has produced nothing showing who set those levels—indicating they were set outside of JJHCS, likely at Janssen.

*Second*, the conclusion that Janssen made key decisions regarding CarePath is bolstered by the fact that JJHCS's operations were intertwined with Janssen's. In administering CarePath, JJHCS uses talk tracks and presentations created by Janssen entities.[2] JJHCS works with the third-party vendor TrialCard to run CarePath day-to-day, Ex. 10 (JJHCS_00011355), pursuant to contracts that TrialCard signed with Janssen entities.[3] Employees of JJHCS and other J&J entities use the same email domain—@its.jnj.com. Ex. 14 (JJHCS_00001704). Multiple JJHCS employees were simultaneously Janssen employees, for example: (1) Blasine Penkowski, who serves as Chief Strategic Customer Officer of both;[4] (2) Daphne Longbothum, who manages patient access

---

[1] Scott White, LINKEDIN, https://www.linkedin.com/in/scott-white-37860b7?original_referer=https%3A%2F%2Fwww.bing.com%2F (last visited June 23, 2023).

[2] *See, e.g.*, Ex. 7 (JJHCS_00005953) (████████████████████████████████████); Ex. 8 (JJHCS_00002425) (████████████████████████████████████); Ex. 6 (JJHCS_00002348) (████████████████████████████████████████████████████████████████████); Ex. 9 (JJHCS_00002544) (████████████████████████████████████████████████████████).

[3] *See, e.g.*, Ex. 11 (JJHCS_00025736) (████████████████████████████████████████████████); Ex. 12 (JJHCS_00025974) (████████████████████████████████████████████); Ex. 13 (JJHCS_00025873) (████████████████████████████████████).

[4] *Compare* Camille Chatterjee, *5 Things to Know About the 2018 Janssen U.S. Transparency Report*, JOHNSON & JOHNSON, https://www.jnj.com/latest-news/2018-janssen-us-transparency-report-top-5-things-you-need-to-know#:~:text=in%20a%20row.%22-,Blasine%20Penkowski,-%2C%20Chief%20Strategic%20Customer (Mar. 28, 2019), *with Janssen Signs Results-Base Contract with Oklahoma Health Care Authority (OHCA) for its Long-Acting Injectable Schizophrenia Medicines*, JOHNSON & JOHNSON, https://www.jnj.com/janssen-signs-results-

14380269

Hon. Cathy L. Waldor, U.S.M.J.
June 23, 2023
Page 3

solutions for both;[5] and (3) William Shontz, who works on patient access and affordability for Janssen and on "portfolio solutions" for JJHCS.[6] JJHCS also apparently generates no revenue,[7] indicating that other entities provide its operating funds, with Janssen as the most likely source.

*Third*, it is thus no surprise that Janssen employees were involved with key decisions regarding CarePath, including:

- *Juliette Deshaies*, a product director at Janssen from 2017 through 2023,[8] worked on outreach to patients regarding the Janssen drug Simponi Aria,[9] worked on marketing materials for the same drug, Ex. 19 (JJHCS_00113019), and was a member of the "Janssen Brand Team" for Stelara and Tremfya, Ex. 20 (JJHCS_00036509).  (JJHCS_00011199-208), Ex. 22 (JJHCS_00011144-45).

---

based-contract-with-oklahoma-health-care-authority-ohca-for-its-long-acting-injectable-schizophrenia-medicines#:~:text=Blasine%20Penkowski%2C%20Chief%20Strategic%20Customer%20Officer%2C%20Johnson%20%26%20Johnson%20Health%20Care%20Systems%20Inc. (Dec. 13, 2018).

[5] *Compare* Daphne Longbothum, LINKEDIN, https://www.linkedin.com/in/daphne-longbothum-b734862b (last visited June 23, 2023) *and* Ex. 15 JJHCS_00001464 (providing her email signature block as Manager, Patient Affordability & Access Solutions, Pulmonary Hypertension, for the Janssen Pharmaceutical Companies of Johnson & Johnson) *with* Ex. 16 (JJHCS_00000027) at 32.

[6] *Compare* William (Will) Shontz, LINKEDIN, https://www.linkedin.com/in/williamtshontz (last visited June 23, 2023) *with* Ex. 16 (JJHCS_00000027) at 32.

[7] *See* Ex. 17 (JJHCS_00126215) (  ). *See, e.g., id.*; Ex. 18 (JJHCS_00126217) ).

[8] Juliette Deshaies, LINKEDIN, https://www.linkedin.com/in/juliette-deshaies-1132b44 (last visited June 23, 2023).

[9] Laura Entis, *40 Under 40 2020: Juliette Deshaies, Janssen Biotech*, MEDICAL MARKETING + MEDIA, https://www.mmm-online.com/40-under-40/40-under-40-2020-juliette-deshaies-janssen-biotech/ (May 4, 2020).

3

14380269

Hon. Cathy L. Waldor, U.S.M.J.
June 23, 2023
Page 4

- *Karen Lade*, a product director at Janssen,[10] emailed with JJHCS employees about copay assistance programs, Ex. 23 (JJHCS_00002688), about launching CarePath for Simponi Aria, Ex. 24 (JJHCS_00045107), ███████████████████████ ███████████████████████████████████████████, Ex. 25 (JJHCS_00061956).

- *Steven Jackson*, a former sales director at Janssen,[11] launched the Janssen drug Tremfya. Ex. 26 (JJHCS_00008952); Ex. __ (JJHCS_00008957). He ████████ ███████████████████████████████████████████, Ex. 28 (JJHCS_00008958); Ex. 29 (JJHCS_00008955), collaborating with JJHCS employees, Ex. 27 (JJHCS_00008957), who sought his approval on presentations regarding marketing of Tremfya. *See* Ex. 30 (JJHCS_00008949). ████████ ███████████████████████████████████████████ ████████████████████████. *See* Ex. 31 (JJHCS_00002683).

- *Scott White*, a member of JALT and chair of North America Pharmaceuticals Johnson & Johnson, Ex. 3 (JJHCS_00001542), received the so-called SaveOnSP IPBC video, Ex. 14 (JJHCS_00001704), which is heavily cited in JJHCS's Complaint, Compl. ¶¶ 9-11, 14, 19, 20, 25, 53, 55, 58, 60, 64, 68, 90. ████████████ ███████████████████████████████████████████, Ex. 32 JJHCS_00011154—████████████████████████████████████████ ████████████████████████████████████████.

JJHCS's production thus provides overwhelming evidence that key decisions regarding CarePath were made at Johnson & Johnson entities other than JJHCS—most notably, at Janssen entities. JJHCS has not contested that it has possession, custody, and control of documents held by such entities, Feb. 24, 2023 Joint Ltr. at 19-20, and courts routinely find that documents within a corporate family are within each family member's control. *See, e.g.*, *Barton v. RCI, LLC*, 2013 WL 1338235, at *20 (D.N.J. Apr. 1, 2013); *see also In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-MD-2885, 2020 WL 4501794, at *2 (N.D. Fla. Aug. 5, 2020 (ordering defendant to produce documents from Mexico-based subsidiary).

Now that discovery has proved false JJHCS's representation that "[e]ntities other than JJHCS have no direct bearing on the case," Feb. 24, 2023 Joint Ltr. at 20, the Court should compel JJHCS to (1) respond to SaveOnSP's interrogatories and identify individuals at all Johnson & Johnson entities with knowledge of relevant topics; and (2) produce documents responsive to SaveOnSP's document requests from all such entities.

---

[10] Ms. Lade does not appear on any organizational chart produced to date by JJHCS.

[11] Steven A. Jackson, LINKEDIN, https://www.linkedin.com/in/steven-a-jackson-b07ba9b (last visited June 23, 2023).

Hon. Cathy L. Waldor, U.S.M.J.
June 23, 2023
Page 5

It is no response for JJHCS to propose, as it has, May 19, 2023 Ltr. from H. Sandick to E. Snow at 2, that SaveOnSP take on the burden of identifying from JJHCS's limited production which non-JJHCS entities or individuals might have been involved with CarePath. It is JJHCS's responsibility *in the first instance* to identify individuals with relevant knowledge and to produce documents from relevant custodians and non-custodial sources. *E.g., Action Star Enter. v. Kaijet Tech. Int'l*, No. CV1208074BROMRWX, 2014 WL 12589632, at *6 (C.D. Cal. July 7, 2014) ("Parties have a discovery obligation to conduct a reasonable search for responsive documents from all custodians from whom the parties have a legal right to obtain documents."); *Strategic Partners, Inc. v. FIGS, Inc.*, No. CV 19-2286-GW (KSX), 2020 WL 2527056, at *6-7 (C.D. Cal. Feb. 6, 2020) (party had obligation to search for relevant documents from additional custodians whose areas of expertise and responsibilities made it likely that they possessed responsive documents and could not simply rely on assertion that the custodians it selected were sufficient). JJHCS has failed to do this for non-JJHCS entities; it should be compelled to do so now.

JJHCS's responses below are meritless. *First*, JJHCS asserts that SaveOnSP wants it to search the files of every Johnson & Johnson employee with a tangential connection to CarePath. In fact, SaveOnSP asks JJHCS to identify key employees outside of JJHCS with knowledge of or responsibility for aspects of CarePath and to search their documents. *Second*, JJHCS says that it has numerous divisions and employees. But JJHCS knows or should know who the key J&J employees with knowledge of and responsibility for CarePath are. JJHCS cannot use the fact that those individuals may work in different divisions to withhold relevant discovery. *Third*, JJHCS complains that SaveOnSP does not identify which specific Janssen entities were involved with CarePath. But it is JJHCS's burden to identify those entities in the first instance. *Fourth*, JJHCS says that it has produced documents provided to members of the JALT. But JJHCS has not produced the JALT members' own documents, including their communications with J&J personnel outside of JJHCS or documents reflecting their decision-making on key topics. *Fifth*, JJHCS says that members of the JALT are high-level executives, who should be protected under the "apex" doctrine. But JJHCS's own cited authority applies that limited doctrine only if such executives' relevance is speculative, *Lauris v. Novartis AG*, 2016 WL 7178602, at *4 (E.D. Cal. Dec. 8, 2016); here, documents show that the JALT was involved with—and ***approved***—key aspects of the Care-Path program.[12] *Sixth*, JJHCS says that, based on a preliminary investigation, it does not believe that specific individuals identified by SaveOnSP are likely to have unique, relevant documents. But the documents tell a different story, showing that these individuals were involved with key aspects of CarePath. *Finally*, JJHCS says that the parties did not properly meet and confer. The parties conferred multiple times about non-JJHCS employees and confirmed on a call today that they are at impasse, as JJHCS refuses to respond to SaveOnSP's interrogatories about these employees or to produce their documents.

---

[12] *See, e.g.*, Ex. 33 (JJHCS_00001393) ( ), Ex. 34 (JJHCS_00037154) ), Ex. 35 (JJHCS_00100799) at 5 ( ).

5

14380269

Hon. Cathy L. Waldor, U.S.M.J.
June 23, 2023
Page 6

The Court should grant SaveOnSP's motion to compel.

### *JJHCS's Position*

This Court should deny SaveOnSP's request that JJHCS identify every single individual at any Johnson & Johnson ("J&J") entity who has had any connection, however attenuated, with the JJHCS CarePath Program, and then collect and produce documents from those individuals. As discussed below, SaveOnSP makes these extreme requests without having engaged in any meet-and-confer with JJHCS, in clear violation of this Court's rules.

On the merits, SaveOnSP offers no valid justification for seeking the production of documents from custodians throughout J&J, pointing to irrelevant facts (such as the fact that all J&J employees have email addresses that end in "jnj.com") or to stray documents from a small number of witnesses most of whom are actually JJHCS employees. In March, the Court described SaveOnSP's requests as "awfully broad not just temporally but otherwise broad" and asked SaveOnSP to "modify and streamline . . . your requests[.]" Mar. 17, 2023 Tr. 34:5–10. SaveOnSP has ignored the Court's guidance.

SaveOnSP would have learned some of these facts had it engaged in the required meet-and-confer process rather than racing headlong into motion practice. SaveOnSP asked for and received an extension of time to finish its document production, and instead of using this time productively, it is using the extra time to file baseless discovery motions. The Court should reject this motion.

### *SaveOnSP Has Filed this Motion Without Engaging in Any Meet-And-Confer Process*

SaveOnSP asserts that the parties have conferred in good faith and are at impasse. This is incorrect. In reality, the parties have never met and conferred—not *even once*—about the issues SaveOnSP now raises. The motion is contrary to the Court's rules that parties meet and confer prior to raising discovery disputes with the Court. Paragraph 5 of the Court's Pretrial Scheduling Order requires good faith conferral "**before** seeking the Court's intervention" to raise a discovery dispute. *See also* Local Civ. Rule 37.1(a)(1) ("Counsel shall confer to resolve any discovery dispute."). SaveOnSP's motion should be denied on this basis alone.

By way of background, following the Court's ruling on March 17, 2023 denying SaveOnSP's application for discovery from other J&J entities apart from the plaintiff JJHCS, SaveOnSP did not raise the issue of non-JJHCS custodians until it sent a May 9, 2023 letter to JJHCS, proposing to add five custodians that SaveOnSP claimed worked for "Johnson & Johnson entities other than JJHCS" and possessed relevant materials. May 9, 2023 Ltr. from E. Snow to H. Sandick. JJHCS's response on May 19, 2023 explained that SaveOnSP's premise was "largely mistaken" and that four of the five cited individuals were, indeed, JJHCS employees and the fifth employee had no relevance to the action. *See* May 19, 2023 Ltr. from H. Sandick to E. Snow. In the same letter, JJHCS also offered to add a JJHCS employee as a custodian in exchange for SaveOnSP agreeing to add a reciprocal SaveOnSP custodian.

14380269

Hon. Cathy L. Waldor, U.S.M.J.
June 23, 2023
Page 7

For nearly a whole month, SaveOnSP ignored JJHCS's offer, until June 16, 2023, which is just one business day before SaveOnSP sent to JJHCS a draft of the instant joint letter. SaveOnSP's proposed timeline left the parties with no opportunity to engage on this issue. SaveOnSP declared impasse before even a single phone call with JJHCS. If SaveOnSP actually conferred with JJHCS, JJHCS would have again clarified that of the seven individuals mentioned in SaveOnSP's present application, four are actually JJHCS employees, which undercuts the stated basis for SaveOnSP's requested relief. Yet SaveOnSP simply bypassed this step.

SaveOnSP misrepresents the nature of its call with JJHCS on June 23, 2023—a call that happened three days after SaveOnSP determined to proceed to motion practice. At the end of a meet-and-confer discussion on other discovery issues unrelated to this letter, JJHCS counsel expressed its surprise that SaveOnSP had not engaged in any meet-and-confer on the issues discussed in this letter and asked whether SaveOnSP was still going to proceed with motion practice. JJHCS offered to find a time to engage SaveOnSP prior to motion practice on the specific issues in this letter—for example, to discuss the relevance of specific custodians or business units, topics addressed for the first time in this joint letter. SaveOnSP stated its belief that no further conferral was necessary unless JJHCS was willing to accede to all of SaveOnSP's demands made in this letter. Counsel for JJHCS explained that this was not the type of substantive conferral required by the Court's rules and that we would present this issue to the Court. Today's five-minute discussion about the absence of conferral did not address the substantive issues presented in this letter and therefore is insufficient to comply with this Court's rules.

*SaveOnSP's Request Is Extreme*

SaveOnSP's motion is also overreaching in the extreme. As the Court is aware, SaveOnSP has previously asked the Court to order discovery from Janssen and other J&J business units. *See* Feb. 24, 2023 Joint Ltr. at 18–19. While the Court's denial was without prejudice, nothing has changed in the ensuing months to justify SaveOnSP's renewed request and as noted, SaveOnSP has ignored the Court's suggestion to narrow its requests. As we have stated all along, JJHCS is the sole relevant J&J entity involved in the development, marketing, or administration of CarePath, and none of the documents SaveOnSP cites contradicts that essential fact. *See id.* at 19.

To be clear, JJHCS has not refused to answer an interrogatory requiring it to identify employees or entities with "knowledge of or responsibility for aspects of CarePath and to search their documents," as SaveOnSP asserts. JJHCS answered this interrogatory, after conducting a reasonable investigation, and reiterates that the appropriate custodians are those JJHCS has already selected, and that decisions for CarePath are made by JJHCS and its employees. SaveOnSP's real complaint is not that these questions are unanswered but rather that it does not like or accept JJHCS's answers. Instead of engaging in meet-and-confer conferral with JJHCS about custodians and search terms based on the discovery record, SaveOnSP elected to file this motion.

In support of its motion, all SaveOnSP has done is to identify a small handful of individuals whose work allegedly overlaps with, or who are incidentally involved in, CarePath operations. That showing does not justify the enormous burden that SaveOnSP would impose on JJHCS: to

7

Hon. Cathy L. Waldor, U.S.M.J.
June 23, 2023
Page 8

"identify individuals at all Johnson & Johnson entities with knowledge of relevant topics" and to produce responsive documents "from all such entities." Such an extreme request is entirely disconnected from the issues SaveOnSP identifies in support of its motion—it would require JJHCS to investigate all of J&J's 200 subsidiaries and over 140,000 employees to determine if any had a role, however minimal or attenuated, in developing or marketing the drugs for which copay assistance is available through CarePath. SaveOnSP fails to justify the breathtaking burden that this would pose to JJHCS.

*SaveOnSP's Request Is Unjustified*

SaveOnSP's arguments also fail on their merits. As a threshold matter, SaveOnSP asserts that JJHCS was required to identify individuals with relevant knowledge and to produce documents from relevant custodians and non-custodial sources. That is precisely what JJHCS has already done. Following a reasonable investigation, JJHCS agreed to collect and produce documents from seventeen JJHCS-affiliated custodians who hold a variety of relevant roles, including in Marketing, Supplier Management and Operations, Patient Access, and Patient Experience, across several of the therapeutic areas for the Janssen Drugs at issue, including Pulmonary Hypertension, Oncology, and Immunology. In addition, JJHCS has also produced documents from a variety of non-custodial sources, including promotional review, contract, and data repositories, and including those containing data concerning CarePath claims data and other budget items. JJHCS has thus conducted a diligent investigation of relevant sources and has made a thorough collection and production of documents. *See, e.g.*, *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 427–28 (D.N.J. 2009) (holding that the producing party is in "the best position to determine the method by which they will collect documents" and denying motion to compel that would "require [the producing party] to go back to square one and begin its document collection efforts anew").

Despite JJHCS's substantial efforts to date, SaveOnSP seeks to expand discovery because it asserts that "key decisions . . .were made by Janssen." SaveOnSP's generic reference to "Janssen" is itself ambiguous: it is unclear whether it refers to Janssen Pharmaceuticals, Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, or Janssen Products, LP—all J&J entities involved in the research, manufacture and sale of therapies covered by CarePath copay support. This failure only underscores the breadth and potential unwieldiness of SaveOnSP's request.

SaveOn next asserts that its request is justified by the fact that the Janssen Americas Leadership Team ("JALT"), composed of high-level executives from across J&J's pharmaceutical business, reviewed certain CarePath documents. But it simply does not follow that the executives who comprise JALT—which has wide-ranging responsibilities for the entirety of Janssen's pharmaceutical portfolio in the United States, Mexico, Canada, South, and Central America—have unique documents reflecting the management of the CarePath co-pay support program. *See* Ex. 3 (JJHCS_00001542) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). ▮▮▮▮▮

Hon. Cathy L. Waldor, U.S.M.J.
June 23, 2023
Page 9

. Ex. 3 (JJHCS_00001542).

. This does not justify sweeping, intrusive discovery of JALT's files.[13] This is especially important here where the relief SaveOnSP seeks would force apex personnel, i.e., high-level executives, to participate in document discovery, thereby subjecting them to undue burden and harassment. *See, e.g.*, *Lauris v. Novartis AG*, 2016 WL 7178602, at *4 (E.D. Cal. Dec. 8, 2016) (requiring "more than mere speculation to order [the producing party] to include the apex custodians in [a] search protocol").

At any rate, to the extent that SaveOnSP seeks a window into the communications about CarePath shared with JALT executives, it already has one in Ms. Mazuk. Indeed, Ex. 35 (JJHCS_00100799),

. *See Sugg v. Virtusa*, 2020 WL 6585872, at *2 (D.N.J. Nov. 10, 2020) (refusing to add two senior executives because existing custodians were already "top employees" and further discovery would be "duplicative"); *Lauris*, 2016 WL 7178602, at *4 (discovery from senior executives is duplicative and unreasonable if "information regarding [the key issues in the case] would be expected to be communicated th[r]ough" existing custodians).

SaveOnSP's suggestion that the operations of one J&J entity (JJHCS) are "intertwined" with those of another (Janssen) similarly rests on faulty assumptions. As SaveOnSP itself recognizes, it is JJHCS that "uses" the talk tracks at issue in administering the program and "works with the third-party vendor TrialCard to run CarePath day-to-day." This is so even if some documents bear a Janssen Biotech, Inc. copyright (which itself is hardly dispositive of actual authorship) or if some other J&J entity nominally executed the general services agreements with TrialCard. Indeed,

*See* Ex. 11 (JJHCS_00025736) at § 6.0; Ex. 13 (JJHCS_00025873) at § 6.0 (

). By SaveOnSP's admission, then, it is JJHCS—and not any of the other J&J entities mentioned in these documents—who has actual, ultimate responsibility for "us[ing]" and "work[ing]" with these materials.

---

[13] SaveOnSP even mischaracterizes several of the documents it cites in support of its sweeping request to obtain documents from all members of JALT. Ex. 33 (JJHCS_00001393) and Ex. 34 (JJHCS_00037154) do not demonstrate that JALT approved FAQs on CarePath; rather, both documents reflect 

. The documents cited do not justify additional collection and production, but rather demonstrate that the current parameters of JJHCS's production captured the relevant documents.

9

14380269

Hon. Cathy L. Waldor, U.S.M.J.
June 23, 2023
Page 10

JJHCS's existing production of talk tracks, presentations, and TrialCard agreements also reinforces that JJHCS's current search methodology is properly calibrated, yielding relevant documents regardless of whether they mention other non-JJHCS entities. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (barring "unreasonably cumulative or duplicative" discovery); *see also In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 2012 WL 4764589, at *10 (D.N.J. Oct. 5, 2012) (Waldor, J.) ("[A] voluminous prior production makes it considerably more likely that further discovery will be duplicative."). By identifying these documents, SaveOnSP has demonstrated that JJHCS's production of documents is comprehensive and sufficient for purposes of this litigation.

Nor can SaveOnSP seek to restart fact discovery in a wholesale manner merely because it has identified some similarities across business units affiliated with the same parent entity. To be sure, JJHCS employees interact with other business units within the larger J&J enterprise. But that Janssen and JJHCS employees have the same email domain—a generic J&J email address that is used across all of J&J's vast pharmaceutical and medical technology sectors—is a preposterous reason to expand discovery to cover everyone whose email address ends with the same domain. Similarly, it does not follow that just because several employees purportedly "wear multiple hats"—i.e., are cross-designated both to JJHCS and to Janssen—that their work for JJHCS requires the production of Janssen documents that are in the files of other employees. SaveOnSP's speculation that some other J&J entity provides operating funds to JJHCS is likewise not a hook for additional custodial discovery. The specific sources of JJHCS's funding within the larger J&J business is entirely irrelevant to the claims and defenses in this litigation. It is sufficient that the co-pay support was provided to patients and misappropriated by SaveOnSP. None of this justifies the fishing expedition that SaveOnSP now pursues.

***The Individuals Identified By SaveOnSP Do Not Support Requiring Broad Discovery From Janssen or Other J&J Entities***

As to the specific seven individuals whom SaveOnSP identifies in its letter, JJHCS's preliminary investigation has revealed that each is of minimal or no relevance to the claims and defenses at issue or is likely to have documents that entirely overlap with one or more existing custodian(s). The roles of these individuals provide no basis for expanding discovery to cover even these individual's files, let alone SaveOnSP's proposed wholesale expansion of discovery to all J&J-affiliated employees. Nor do the documents cited by JJHCS demonstrate that any of them made "key decisions," as SaveOnSP claims, as the following makes clear:

- **Daphne Longbothum.** SaveOnSP asserts that Daphne Longbothum works "for both" Janssen and JJCHS. This is wrong. As JJHCS has informed SaveOnSP, Ms. Longbothum is a JJHCS employee. *See* May 19, 2023 Ltr. from H. Sandick to E. Snow. Moreover, based on its investigation to date, JJHCS has no reason to believe that Ms. Longbothum would have unique documents relevant to the litigation, or that any such documents would not be cumulative of those produced from existing JJHCS custodians, including Nidhi Saxena and Hattie McKelvey, to whom Ms. Longbothum reported. *See* Ex. 16 (JJHCS_00000027).

10

Hon. Cathy L. Waldor, U.S.M.J.
June 23, 2023
Page 11

- **William Shontz.** SaveOnSP asserts that William Shontz works "for both" Janssen and JJCHS. Again, this is wrong. JJHCS has also informed SaveOnSP that Mr. Shontz is a JJHCS employee. *See* May 19, 2023 Ltr. from H. Sandick to E. Snow. Moreover, based on its investigation to date, JJHCS has no reason to believe that Mr. Shontz would have unique documents relevant to the litigation, or that any such documents would not be cumulative of those produced from existing JJHCS custodians, Hattie McKelvey and Silviya McCool, to whom he reports. *See* Ex. 16 (JJHCS_00000027).

- **Juliette Deshaies.** SaveOnSP asserts that Juliette Deshaies served as "a product director at Janssen." Once again, this ignores JJHCS's identification that Ms. Deshaies is a JJHCS—not Janssen—employee. *See* May 19, 2023 Ltr. from H. Sandick to E. Snow. In any event, SaveOnSP's own description of her role, and the documents it cites, make clear that Ms. Deshaies's primary responsibilities relate to marketing of Simponi Aria, Stelara, and Tremfya—not CarePath or any other issues relevant to this action. To the extent Ms. Deshaies's custodial files contain relevant documents or communications, they would also be cumulative of those documents JJHCS has produced from other agreed-upon custodians, including Spilios Asimakopoulos, Heith Jeffcoat, and Lynn Hall.

- **Steven Jackson.** SaveOnSP also continues to insist that Steven Jackson is relevant to the litigation. He is not. As JJHCS explained on May 19, Mr. Jackson previously served as the National Sales Director for Dermatology. In that role, Mr. Jackson would not have documents or communications specific to SaveOnSP or JJHCS's response to the SaveOnSP program. SaveOnSP's examples to the contrary do not alter this conclusion. Indeed, the presentation on which SaveOnSP relies has nothing to do with co-pay support and instead discusses psoriatic arthritis. *See* Ex. 28 JJHCS_00008958 at 10 ("                                    "). Further, Ex. 31 (JJHCS_00002683) suggests—without proving—that Mr. Jackson may have been a recipient of operational updates, while Ex. 30 (JJHCS_00008949) merely addresses his involvement with marketing for Tremfya. None of the cited documents demonstrate that he was responsible for approving CarePath promotional materials. Finally, any relevant documents Mr. Jackson may have would be cumulative of those JJHCS has already produced from other agreed-upon custodians, including Spilios Asimakopoulos and Lauren Pennington, who are included on the cited examples.

- **Karen Lade.** SaveOnSP raised an interest in Karen Lade, a product director responsible for rheumatology marketing, for the first time ever in the context of the instant letter, which provided inadequate time for JJHCS to fully investigate her role. Based on the cited documents and JJHCS's preliminary investigation to date, JJHCS has no reason to believe that Ms. Lade would have unique documents or communications specific to SaveOnSP or JJHCS's response to the SaveOnSP program. At most, SaveOnSP has demonstrated that she provided some information to other JJHCS personnel who did work on CarePath, and their emails have already been produced.

11

14380269

Hon. Cathy L. Waldor, U.S.M.J.
June 23, 2023
Page 12

- **Scott White.** Scott White, Company Group Chairman, North America Pharmaceuticals, is a high-ranking executive with no day-to-day responsibilities for CarePath and he is entitled to protection from undue burden and harassment under the apex doctrine. In addition, SaveOnSP asserts that because Mr. White received a copy of a SaveOnSP presentation video, he is relevant to this litigation. If this were the case, anyone who received or read the Complaint would be a potential discovery target, since the Complaint cites this presentation. This is untenable. Indeed, the document on which SaveOnSP relies shows that Katie Mazuk (a current custodian) sent this video and other information to over twenty individuals on December 17, 2021. *See* Ex. 14 (JJHCS_00001704). SaveOnSP also fails to acknowledge that the meeting invitation it cites was sent to ***three*** of JJHCS's existing custodians—Ms. Mazuk, Heith Jeffcoat, and John ("Chip") Franz—all of whom had direct involvement in the issues relevant to this litigation. *See* Ex. 32 (JJHCS_00011154). "Mere speculation" that Mr. White's position as "a senior executive might increase the relevance of his files" is not a basis for designating him as a custodian, let alone expanding discovery to cover all J&J personnel. *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *3 (S.D.N.Y. May 18, 2017). SaveOnSP offers no reason to believe that Mr. White would have unique documents or communications specific to SaveOnSP or JJHCS's response to the SaveOnSP program.

- **Blasine Penkowski.** Blasine Penkowski is also a high-ranking executive entitled to protection from undue burden and harassment under the apex doctrine. In addition, SaveOnSP's assertion that Ms. Penkowski serves as "Chief Strategic Customer Officer of both" JJHCS and Janssen simply is incorrect. Ms. Penkowski is an employee of JJHCS—not Janssen—and, based on a preliminary investigation, JJHCS has no reason to believe that Ms. Penkowski would have unique documents or communications relating to SaveOnSP or JJHCS's response to the SaveOnSP program.

SaveOnSP's requested relief—which is not tailored in any way to match the specific issues it has raised in its application—would require a wholesale reopening of discovery with no meaningful limitations. Had SaveOnSP engaged JJHCS in meet-and-confer concerning the addition of certain specific JJHCS custodians to address specific asserted gaps in JJHCS's production, JJHCS would have considered adding custodians as appropriate. JJHCS has already added custodians in response to SaveOnSP's requests. However, SaveOnSP failed to engage in any meet-and-confer sessions.

In any event, SaveOnSP is not asking for the addition of these seven individuals as custodians. It is claiming that it is entitled to discovery from throughout J&J based on the mistaken assertion that these individuals have unique documents. This imposes an undue burden on JJHCS. Most of all, it is nothing like the "more targeted request" that the Court wanted SaveOnSP to make when the subject of discovery from other J&J entities was discussed at the March 17, 2023 conference. Mar. 17, 2023 Tr. 35:20–21. Instead SaveOnSP is making the same sweeping requests that it made in the past and that the Court denied. SaveOnSP should not be permitted to pursue discovery from an untold number of custodians whom SaveOnSP has not identified with specificity and for whom it has not provided any showing of need.

14380269

Hon. Cathy L. Waldor, U.S.M.J.
June 23, 2023
Page 13

     Nothing in SaveOnSP's letter or in the documents cited by SaveOnSP provides a basis for the limitless discovery from other corners of the J&J business that SaveOnSP seeks. SaveOnSP asked the Court for additional time to complete discovery, and now turns around to use that time to file baseless motions like this one and without any required conferral. JJHCS respectfully requests that the court deny SaveOnSP's motion.

* * *

     The parties appreciate the Court's attention to this matter.


     Respectfully submitted,

     /s/ *E. Evans Wohlforth, Jr.*
     E. Evans Wohlforth, Jr.
     ROBINSON COLE
     666 3rd Ave #20
     New York, NY 10174
     212-451-2954
     ewohlforth@rc.com

     David Elsberg (admitted *pro hac vice*)
     Andrew R. Dunlap (admitted *pro hac vice*)
     Meredith Nelson (admitted *pro hac vice*)
     Elizabeth Snow (admitted *pro hac vice*)
     SELENDY GAY ELSBERG PLLC
     1290 Avenue of the Americas
     New York, NY 10104
     (212) 390-9000
     deslberg@selendygay.com
     adunlap@selendygay.com
     mnelson@selendygay.com
     esnow@selendygay.com

     *Attorneys for Defendant Save On SP, LLC*

     /s/ *Jeffrey J. Greenbaum*
     Jeffrey J. Greenbaum
     Katherine M. Lieb
     SILLS CUMMIS & GROSS P.C.
     One Riverfront Plaza
     Newark, New Jersey 07102
     (973) 643-7000

14380269

Hon. Cathy L. Waldor, U.S.M.J.
June 23, 2023
Page 14

        Adeel A. Mangi
        Harry Sandick (admitted *pro hac vice*)
        George LoBiondo
        PATTERSON BELKNAP WEBB & TYLER LLP
        1133 Avenue of the Americas
        New York, New York 10036
        (212) 336-2000

        *Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*

Cc:  All counsel of record (via ECF)

14380269

# Exhibits 1-35
## CONFIDENTIAL - FILED UNDER SEAL