# Sills Cummis & Gross

### A Professional Corporation

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102**
**Tel: (973) 643-7000**
**Fax (973) 643-6500**

Jeffrey J. Greenbaum
Member
Admitted In NJ, NY
Direct Dial:  973-643-5430
Email:  jgreenbaum@sillscummis.com

101 Park Avenue
28ᵗʰ Floor
New York, NY 10178
Tel: (212) 643-7000
Fax: (212) 643-6500

**FILED UNDER SEAL - CONTAINS INFORMATION MARKED AS CONFIDENTIAL
UNDER THE DISCOVERY CONFIDENTIALITY ORDER.**

June 26, 2023

***By ECF***

The Honorable Cathy L. Waldor, U.S.M.J.
United States District Court, District of New Jersey
50 Walnut Street
Newark, NJ 07101

> **Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC***
> **Civil Action No. 22-2632 (JMV-CLW)**

Dear Judge Waldor:

On behalf of Plaintiff Johnson & Johnson Health Care Systems Inc. ("JJHCS"), we object to the improper supplemental letter brief filed on the evening of Friday, June 23, 2023 by Defendant Save On SP, LLC ("SaveOnSP") regarding JJHCS's RFP Nos. 61 and 62. Dkt. No. 121. The parties already submitted, and the Court already reviewed, a joint letter fully setting forth each party's positions and cited authorities on this dispute. *See* Dkt. No. 110. That is the only submission permitted under Local Rule 7; indeed, the Rule specifically precludes "further letter submissions" such as SaveOnSP's absent "leave of Court."

SaveOnSP has tacitly acknowledged that its submission is improper.  It originally asked JJHCS to consent to a second submission "on the issue of JJHCS's RFP Nos. 61 and 62." *See* Ex. 1 at 1–2.  After JJHCS objected and pointed SaveOnSP to the Rule barring such supplemental submissions, SaveOnSP deleted the portion of the letter identifying it as such. *See id.*  The final version filed by SaveOnSP makes the remarkable claim that it is not a "supplemental" submission after all, ostensibly because SaveOnSP also grafted onto it a frivolous request for a protective order, filed without leave of Court, seeking a prior restraint on JJHCS from making future

Sills Cummis & Gross
A Professional Corporation

Honorable Cathy L. Waldor, U.S.M.J.
June 26, 2023
Page 2

discovery requests or asking certain questions in depositions. *See id.* at 3. That only compounds the impropriety, because SaveOnSP never raised the substance of its new application with JJHCS until sending its draft "dispute" letter—in which SaveOnSP falsely claimed that the parties had "met and conferred" about it. *See id.* at 1.

In sum, SaveOnSP's kitchen-sink letter is improper, whether the Court construes it as an improper supplemental submission on RFPs No. 61 and 62, or a premature application for relief that the parties have never discussed. We therefore request that the Court strike or decline to consider SaveOnSP's supplemental letter brief.

The Court can and should stop there. But in the event the Court decides to consider SaveOnSP's new contentions, JJHCS provides brief responses to each below.

### SaveOnSP's Newly Requested Relief Is Improper.

SaveOnSP requests a "protective order to stop JJHCS from seeking to discover its financial information unrelated to CarePath." Dkt. No. 121 at 1. At the outset, the premise of SaveOnSP's application—that it has "financial information unrelated to CarePath"—is disputed. If it were not for CarePath and programs like it, SaveOnSP would have no revenue at all. SaveOnSP makes money by charging health plans fees, which are calculated as a percentage of the patient assistance funds SaveOnSP causes to be wrongfully seized from JJHCS and others. *See* Compl. ¶¶ 1–5, 8–17, 51, 68, 75. There is no dispute about this. *See, e.g.,* Ex. 2, SOSP_0000061 at -62 (

). In fact, SaveOnSP recently emphasized to this Court its reliance on those fees, and complained that its business would be "cripple[d]" if it were no longer permitted to take CarePath funds. Dkt. No. 117-1 at 7–8.

Put simply, SaveOnSP built its business using JJHCS's money, and cannot now get sweeping injunctive relief by simply decreeing that the two are "unrelated." This question goes to the core of the parties' dispute, and a prior restraint blocking JJHCS from even *requesting* discovery into this issue would be tantamount to an order enjoining a plaintiff from prosecuting its claims.

Tellingly, SaveOnSP cites no authority granting such a prior restraint. To the contrary, "there is no legal support" in this Circuit for a protective order prospectively shielding a defendant's "financial condition" or "financial motive" from inquiry at deposition. *E.g., UBS Fin. Servs. Inc. v. Ohio Nat'l Life Ins. Co.,* 18 Civ. 17191, Dkt. 160 (D.N.J. Oct. 12, 2020) (attached as Ex. 3) (special master ruling), *aff'd,* 2021 WL 9220301 (D.N.J. Jan. 22, 2021). This is particularly true where, as here, such questions "may tend to show admissions against interest *and tortious*

## Sills Cummis & Gross
##### A Professional Corporation

Honorable Cathy L. Waldor, U.S.M.J.
June 26, 2023
Page 3

*interference*, amongst other possible matters." 2021 WL 9220301, at *2. And while SaveOnSP now tries to pretend its financial information is categorically "unrelated to CarePath," that would not matter even if it were true, because "it is inappropriate to impose a blanket prohibition" on "deposition questions based on relevance." *UBS*, Ex. 3 at 12.

In the absence of any law supporting its position, SaveOnSP instead tries to rely on this Court's previous ruling on a different request, JJHCS Request No. 52. This reliance is misplaced in multiple respects. First, Request No. 52 sought information concerning "SaveOnSP's liquidity, debt, profits, losses, revenues, costs, EBITDA, and assets throughout the Time Period[.]" The Court never ruled or even suggested that *other* discovery touching upon financial information would somehow be *per se* off limits. Indeed, the Court's denial of this request was without prejudice—a detail SaveOnSP's submission conspicuously omits. *See Dkt.* No. 89, Mar. 17, 2023 Hr'g Tr. at 23:12–24. In other words, the Court recognized that JJHCS might need to renew its request or seek similar information in the future; that ruling cannot be squared with SaveOnSP's present demand that the Court order such inquiries to "stop." Moreover, even SaveOnSP admits that the Court was inclined to side with JJHCS on Request No. 62, again belying any notion that JJHCS's requests are categorically out of bounds. All else aside, even if the Court's ruling on Request No. 52 were analogous (and it is not), it still "does not follow that rulings made about written discovery should apply to deposition questions." *UBS*, Ex. 3 at 14 (citing *Summerville v. N.J. State Police*, 2018 WL 401785 (D.N.J Jan. 11, 2018)). SaveOnSP's request for a protective order should be denied.

### SaveOnSP Did Not "Follow[] the Court's Guidance."

SaveOnSP's letter implies that it proposed a compromise on RFPs 61 and 62 that was consistent with the Court's guidance during the June 6, 2023 conference (i.e., that the Court was inclined to compel SaveOnSP to respond on RFP No. 62 but not RFP No. 61). *See* Dkt. No. 121 at 2. That is a distortion. What SaveOnSP actually proposed was more like "heads I win, tails you lose": it offers to produce nothing on RFP No. 61 and almost nothing on RFP No. 62.[1] In particular, with respect to RFP No. 62, SaveOnSP continues to withhold its operating agreements, which are plainly discoverable under Rule 26(b)(1). As JJHCS has explained, these core governance documents will go a long way in shining a light on SaveOnSP's operations, which are otherwise concealed behind a web of overlapping LLCs, corporations, and partners. *See* Dkt. No.

---

[1] RFP No. 62 sought "All corporate governance documents for SaveOnSP, from its founding to the present, including but not limited to its Articles of Organization and any amendments thereto, bylaws, operating agreements, or codes of conduct." SaveOnSP claims that its Articles of Incorporation are public; that there are no amendments; and that there are no bylaws. It admitted there are operating agreements, but refused to produce them, and proposed to produce only its final versions of employee manuals.

Sills Cummis & Gross
A Professional Corporation

Honorable Cathy L. Waldor, U.S.M.J.
June 26, 2023
Page 4

110 at 5–6.  These are final versions of records that SaveOnSP already maintains in the ordinary course of business, and producing them would impose no burden on SaveOnSP.

### *SaveOnSP's Newly Cited Authorities Are Inapposite.*

Just like last time, SaveOnSP mischaracterizes or misconstrues the cases it cites.  For example, the motion pending before the court in *Goldenberg v. Indel, Inc.*, No. 09-5202, 2012 WL 15909 (D.N.J. Jan. 3, 2012) was a motion to seal exhibits submitted in support of a motion for partial summary judgment.  *Id.* at *1.  The documents at issue had already been produced during party discovery, and the only question left for the court to decide was whether the documents at issue, which included confidential business information, should be filed under seal or on the public docket.  *Id.*  Here, the dispute concerns SaveOnSP's refusal to produce business plans and corporate governance documents in the first instance.[2]

The remainder of SaveOnSP's cases can be distinguished on their facts.  Two involve motions to quash non-party subpoenas where the movants' non-party status, and the fact that the disputants were business competitors, both shaped the court's analysis in each case.  *Rocky Mountain Med. Mgmt., LLC v. LHP Hosp. Grp., Inc.*, No. 4:13-cv-00064-EJL, 2013 WL 6446704, at *6 (D. Idaho Dec. 9, 2013) (granting motion to quash third party subpoena where the movant was a non-party and the party seeking production was a competitor); *Reeves v. Denbury Onshore, LLC*, No. 3:14-CV-640-DPJ-LRA, 2015 WL 476047, at *3 (S.D. Miss. Feb. 5, 2015) (quashing non-party subpoenas where disclosure of the information sought would result in "substantial competitive and economic harm" to the non-parties and was not relevant to the underlying action). These cases are inapposite here, where SaveOnSP is a party in the above-captioned action, JJHCS is not a competitor of SaveOnSP, and the requested information is relevant to the claims alleged by JJHCS.

The final case cited by SaveOnSP is equally irrelevant.  In *Neill Corp. v. John Paul Mitchell Systems*, the discovery at issue "[did] not seek documents or information relating to the conduct of the defendant toward the plaintiff," and instead focused on "contracts between the defendant

---

[2] The Discovery Confidentiality Order in this case would permit SaveOnSP to designate its business plans or corporate governance documents as "Confidential" or "Attorneys' Eyes Only" as appropriate, thereby mooting the issue presented in *Goldenberg* and any other supposed confidentiality concerns SaveOnSP may raise.  Dkt. No. No. 62 § 2; *see also Ford Motor Co. v. Edgewood Properties, Inc.*, No. 06-1278, 2011 WL 601312, at *3 (D.N.J. Feb. 15, 2011) ("While the Court recognizes that Edgewood has a legitimate privacy interest concern relating to its business model and development plans, the Court agrees with Ford that the information can be protected pursuant to a confidentiality order.  As such, documents relating to Edgewood's business plans should be produced pursuant to an agreed upon confidentiality order.").

## Sills Cummis & Gross
### A Professional Corporation

Honorable Cathy L. Waldor, U.S.M.J.
June 26, 2023
Page 5

and others in connection with allegations *that did not involve the plaintiff*." No. CIV. A. 92-2157, 1995 WL 217480, at *6 (E.D. La. Apr. 12, 1995) (emphasis added). Here, because the diversion of patient assistance funds is the foundation of SaveOnSP's entire business model, *see* Compl. ¶¶ 1–5, 8–17, 50–88, its business plan documents are relevant and directly implicate the harm SaveOnSP has caused to JJHCS.

\* \* \*

The balance of SaveOnSP's arguments—namely that "JJHCS does not need" the plainly discoverable information it seeks, and irrelevant lists of other information in SaveOnSP's production—are largely copied and pasted from the parties' previous joint letter. To avoid burdening the Court further, JJHCS rests on its previous responses to those arguments.

As always, we appreciate the Court's attention to this matter.

Respectfully submitted,

/s/ Jeffrey J. Greenbaum
Jeffrey J. Greenbaum
Katherine M. Lieb
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000
*Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*

Enclosures
cc: All counsel of record (by email)

# EXHIBIT 1



June [XX], 2023

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York and New Jersey

June 23, 2023

**Via ECF**

Hon. Cathy L. Waldor
U.S. District Court for the District of New Jersey
50 Walnut Street, Room 4040
Newark, NJ 07102

Hon. Cathy L. Waldor, U.S.M.J.
U.S. District Court for the District of New Jersey
50 Walnut Street, Room 4040
Newark, NJ 07102

Re:     *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*
        **(Case No. 2:22-cv-02632-JMV-CLW)**

Dear Judge Waldor,

        We submit this ~~joint~~ letter on behalf of ~~the parties~~Defendant Save On SP, LLC
("SaveOnSP") in the above-captioned matter pursuant to the Court's Civil Case Management
Order ¶ 7 and Local Rule 37.1 governing discovery disputes and in advance of the parties'
discovery conference scheduled for June 27, 2023. We are mindful of the Court's requirement
that submissions of this type be joint by the Parties. Plaintiff Johnson & Johnson Health Care
Systems Inc. ("JJHCS") declined, however, to contribute to a joint letter to the Court. They have
stated that they believe this submission is improper and that they intend to make a separate
application to strike it.

In accordance with the Court's instruction at the June 6, 2023 conference, Plaintiff Johnson & Johnson
Health Care Systems Inc. ("JJHCS") and Defendant Save On SP, LLC ("SaveOnSP") have met and conferred in
good faith to resolve their discovery disputes. Despite these efforts, the parties remain at impasse on the issue of

JJHCS's RFP Nos. 61 and 62. We respectfully request that the Court address this dispute during the June 27, 2023 conference.

### *SaveOnSP's Position*

SaveOnSP seeks a protective order to stop JJHCS from ~~continuing to request the production of~~<u>seeking to discover</u> its financial information unrelated to CarePath. JJHCS has been after this information from the start. In RFP No. 52, it broadly sought SaveOnSP's "liquidity, debt, profits, losses, revenues, costs, EBITDA, and assets<u>,</u>" including financial statements and financial analyses. <u>Dkt. No. 65-2, at 111.</u> JJHCS ~~move~~<u>moved</u> to compel production of this information, ~~ECF~~<u>Dkt.</u> No. 66, which the Court summarily rejected ~~Mar. 17, 2023 Hr'g Tr.~~ <u>Dkt. No. 95,</u> at 23:23-24. In April 2022, JJHCS served RFPs Nos. 61 and 62, seeking SaveOnSP's business plans and corporate governance documents. <u>Ex. 1 (</u>Apr. 18, 2023 Pl.'<u>s</u> Fourth Set of Doc.

(Add)

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

## Robinson+Cole

Hon. Cathy L. Waldor, U.S.M.J.
June 23, 2023
Page 2

Reqs.), at 7. When it moved to compel, ~~June 2 Joint Ltr. (ECF~~Dkt. No. 110~~)~~, the Court stated that it was inclined to deny the former but grant the latter, and asked the parties to meet and confer. ~~June 6, 2023 Hr'g Tr.~~Dkt. No. 116, at 57:~~11–17~~1117.

Following the Court's guidance, SaveOnSP proposed that if JJHCS stopped requesting its business plans, then SaveOnSP would produce its corporate governance documents with the single exception of its operating agreements, which contain sensitive financial information about the distributions of revenues to ~~members of~~ SaveOnSP's LLC members. JJHCS refused, saying that it ~~intends~~intended to move to compel all documents requested in its RFP Nos. 61 and 62. JJHCS has also served SaveOnSP with additional document requests that seek all communications between SaveOnSP and the members of its LLCs. Ex. 1, at 7 (RFP Nos. 64-67).

SaveOnSP's non-CarePath related financial information easily qualifies for a protective order. Protecting a business's confidential information can be good cause for such an order under Federal Rule of Civil Procedure 26(c). *See, e.g., Goldenberg v. Indel, Inc.*, 2012 WL 15909, at *3 (D.N.J. Jan. 3, 2012) ("Courts have recognized that the confidentiality of business agreements, trade secrets or commercial information are a legitimate private interest and the disclosure of this information can be used for the improper purpose of causing harm to the litigant's competitive standing in the marketplace.") (collecting cases). And courts routinely protect "business plans and operating agreements" from commercial adversaries. *Rocky Mountain Med. Mgmt., LLC v. LHP Hosp. Grp., Inc.*, 2013 WL 6446704, at *6 (D. Idaho Dec. 9, 2013) (quashing subpoena for competitor's business plans and operating agreements where moving party had already received relevant documents); *see also Reeves v. Denbury Onshore, LLC*, No. 3:14-CV-640-DPJ-LRA, 2015 WL 476047, at *3 (S.D. Miss. Feb. 5, 2015) (quashing third party subpoenas for non-party competitor's contracts that included commercial terms, risk allocation, and other financial considerations); *see also Neill Corp. v. John Paul Mitchell Sys.*, No. CIV. A. 92-2157, 1995 WL 217480, at *5 (E.D. La. Apr. 12, 1995) (affirming denial of deposition of defendant representative about defendant's business plans).

JJHCS does not need SaveOnSP's business plans. SaveOnSP has already produced information—lots of it—about its business and finances related to CarePath, including (1) lists of over ~~6200~~6,200 of its client health plans; (2) lists of patients enrolled in those plans who take Janssen drugs; (3) its contracts with its clients; (4) its contracts with Express Scripts and Accredo; (5) data showing the fees it received for providing its services relating to Janssen drugs; (6) over 140,000 records of calls between SaveOnSP and patients who take Janssen drugs; (7) guides for

the SaveOnSP employees who conduct those calls; (8) reams of detailed data about its patients who take those drugs; and (9) numerous organizational charts. Any information in SaveOnSP's

**Robinson+Cole**

Hon. Cathy L. Waldor, U.S.M.J.
June 23, 2023
Page 3

business plans on these topics would be duplicative. *Rocky Mountain Med. Mgmt.*, 2013 WL 6446704, at *6.

JJHCS also does not need SaveOnSP's operating agreements. SaveOnSP has provided the names and citizenship of the LLCs who own SaveOnSP's interests. ~~Rule 7.1 Corp. Disc.~~ ~~Statement, February 10. 2023 (ECF~~ *See* Dkt. No. 71~~)~~. It has produced tens of thousands of emails showing all facets of SaveOnSP's business regarding Janssen drugs and CarePath, including internal communications, including documents showing who its key decision-makers are. SaveOnSP has also offered to produce its articles of incorporation and employee handbook, which includes internal codes of conduct. (It would also produce its bylaws, but it has none.) SaveOnSP seeks to withhold only its operating agreements, because they reflect the financial relationship between SaveOnSP and its member LLCs. This sensitive financial information about the distribution of SaveOnSP's profits to its members is wholly irrelevant to this case.

When SaveOnSP proposed a joint letter on its motion for a protective order, JJHCS responded as follows: "JJHCS objects to SaveOnSP's proposed supplemental submission on RFP Nos. 61 and 62. The parties already submitted, and the Court already reviewed, a joint letter fully setting forth each party's positions and cited authorities on this dispute. *See* Dkt. No. 110. That is the only submission permitted under Local Rule 7; indeed, the Rule specifically precludes 'further letter submissions' absent 'leave of Court.' If SaveOnSP insists on filing its proposed letter brief, JJHCS will move to strike that submission consistent with the Local Rules." Ex. 2 (June 22, 2023 Email from J. Long to E. Snow).

JJHCS is incorrect. SaveOnSP does not make here a supplemental submission limited to JJHCS's motion to compel production in response to RFP Nos. 61 and 62—SaveOnSP moves for a protective order that would safeguard its financial information unrelated to CarePath. While this protective order would apply to RFP Nos. 61 and 62, it would also apply more broadly, preventing JJHCS from serving additional document requests for the same information or asking questions about that information at depositions. The Court should deny any motion JJHCS might make to strike SaveOnSP's motion for a protective order.

JJHCS's financial fishing expedition should stop. The Court should enter a protective order barring JJHCS from seeking SaveOnSP's financial information unrelated to CarePath.

*JJHCS's Position*

[INSERT]

\* \* \*

The parties appreciate SaveOnSP appreciates the Court's attention to this matter.

# EXHIBIT 2

# Filed Under Seal

# EXHIBIT 3

# O'TOOLE SCRIVO
### ATTORNEYS AT LAW

**THOMAS P. SCRIVO**
tscrivo@oslaw.com

October 12, 2020

<u>**VIA ECF**</u>
All Counsel

> **Re:** ***UBS Financial Services Inc., et al. v. The Ohio National Life Insurance Company, et. al***
> <u>**Civil Action No. 18-17191**</u>

Dear Counsel:

Please accept this decision in response to the application by defendants The Ohio National Life Insurance Company, Ohio National Life Assurance Corporation, Ohio National Equities, Inc., and National Security Life and Annuity Company (collectively, "ONL") dated May 13, 2020, for a protective order precluding plaintiffs UBS Financial Services Inc. and UBS Financial Services Insurance Agency Inc. (collectively, "UBS") from: (i) taking the depositions of certain high-level executives; and (ii) inquiring into ONL's "motive" or general financial condition during future depositions. D.E. 105. UBS submitted opposition to the application and a cross-motion seeking an order compelling responses to improperly withheld deposition testimony on May 21, 2020. D.E. 109. ONL submitted a reply in further support of its application and in opposition to UBS's cross-motion on May 28, 2020. D.E. 111.

**A.      ONL's Motion for Protective Order regarding Deposition Notices**

UBS served deposition notices for Barbara Turner ("Turner"), the President and Chief Operating Officer of Ohio National Financial Services, Inc. ("ONFS"), and Gary "Doc" Huffman ("Huffman"), Chairman and Chief Executive Officer of ONFS, on or around October 21, 2019.

*UBS Financial Services Inc., et al. v.*
*The Ohio National Life Insurance Company, et al.*
Page 2

*See* D.E. 66 at 6. ONL refused to produce Ms. Turner or Mr. Huffman and ultimately moved for a protective order barring the depositions of these executives. ONL argues that UBS has already deposed other high-level executives directly involved in and with personal knowledge of the claims at issue in the lawsuit. ONL also contends that UBS has not exhausted other means of obtaining this information, such as a Rule 30(b)(6) deposition on these subjects and, therefore, the apex deposition doctrine precludes the depositions of Ms. Turner and Mr. Huffman. ONL further argues that the depositions of these witnesses would impose an undue burden and costs.

UBS argues that the apex deposition doctrine does not apply when an executive has personal knowledge of the facts underlying the litigation. UBS contends that Ms. Turner and Mr. Huffman were identified as "key individuals" involved in major decisions at ONL and that deposition testimony from lower-level employees confirmed Ms. Turner's and Mr. Huffman's personal involvement in the decisions. UBS also argues it is not harassing to take the executives' depositions because the claims at issue are not immaterial or about day-to-day issues. UBS contends that testimony from a Rule 30(b)(6) deposition or from lower-level employees would be inadequate substitutes for the testimony of Ms. Turner and Mr. Huffman.

A party seeking to preclude the deposition of high-level, "apex" executives has a heavy burden of showing protection is warranted. *Engage Healthcare Communs., LLC v. Intellisphere, LLC*, C.A. No. 12-cv-00787, 2017 U.S. Dist. LEXIS 214569, at *16 (D.N.J. Nov. 1, 2017) (citing *In re Tylenol (Acetaminophen) Mktg. Sales Practices & Prods. Liab. Litig.*, C.A. No. 14-mc-00072, 2014 U.S. Dist. LEXIS 89981, at *4 (E.D. Pa. July 1, 2014)). Similarly, "a party attempting to depose a high-level executive must demonstrate exceptional circumstances justifying the deposition." *Id.* at *16-17 (citing *Lederman v. New York City Dept. of Parks and Recreation*, 731 F.3d 1999, 2003 (2d Cir. 2013)). Such exceptional circumstances may include the executive's

*UBS Financial Services Inc., et al. v.*
*The Ohio National Life Insurance Company, et al.*
Page 3

unique first-hand knowledge related to the claims or that the sought information cannot be obtained through other, less burdensome means. *Id.*

 Courts consider two factors in determining whether the deposition of a high-ranking corporate officer is appropriate, namely whether: (1) the executive has personal or unique knowledge on relevant subject matters; and (2) the information can be "obtained from lower[-]level employees or through less burdensome means[.]" *Ford Motor Co. v. Edgewood Properties, Inc.*, C.A. No. 06-1728, 2011 U.S. Dist. LEXIS 15776, at *8 (D.N.J. Feb. 15, 2011); *Engage Healthcare*, 2017 U.S. Dist. LEXIS 214569, at *17.  The apex deposition doctrine applies a rebuttable presumption that an executive's deposition is unduly burdensome unless the party seeking the deposition can establish these two factors. *United States ex rel. Galmines v. Novartis Pharms. Corp.*, C.A. No. 06-3213, 2015 U.S. Dist. LEXIS 109997, at *4 (E.D. Pa. Aug. 20, 2015). A court may prohibit the deposition of a high-level executive where the executive has no firsthand knowledge of the events in dispute. *Engage Healthcare*, 2017 U.S. Dist. LEXIS 214569, at *17-18.  Conversely, where the executive possesses personal knowledge of the facts that could not be obtained through the depositions of other employees, the apex deposition doctrine does not preclude the executive's deposition. *In re Tylenol*, 2014 U.S. Dist. LEXIS 89981, at *18.

 Whether the apex deposition doctrine should be construed to preclude a deposition is an extremely fact-sensitive determination. *In re Lincoln Nat'l COI Litig.*, C.A. No. 16-cv-6605, No. 17-cv-2593, 2019 U.S. Dist. LEXIS 224988, at *9 (E.D. Pa. Dec. 5, 2019).  The preclusion of a deposition is more likely "where the subject matter of the deposition would involve merely the company's 'day to day operations' or something manifestly immaterial in view of the total scope of the company's overall operations[.]" *Id.* at *9-10.

*UBS Financial Services Inc., et al. v.*
*The Ohio National Life Insurance Company, et al.*
Page 4

        1.    <u>Unique, Personal Knowledge</u>

An executive has unique, personal knowledge of the facts relevant to the litigation if there is evidence of the executive's involvement. *In re Tylenol*, 2014 U.S. Dist. LEXIS 89981, at *9-10; *Pegley v. Roles*, C.A. No. 17-732, 2018 U.S. Dist. LEXIS 12835, at *8 (W.D. Pa. Jan. 26, 2018). For example, in *In re Tylenol*, the court permitted an apex official's deposition where the executive had unique knowledge and was actively involved in day-to-day decision making regarding the marketing and product development of the products at issue. 2014 U.S. Dist. LEXIS at *10.

A party may also prove an executive's involvement through the deposition testimony of lower-level employees. *Weber v. Fujifilm Med. Sys. U.S.A.*, No. 3:10-cv-401, 2011 U.S. Dist. LEXIS 6197, at *8 (D. Conn. Jan. 24, 2011). For example, in *Weber*, the court allowed an apex official's deposition where a mid-level executive's testimony suggested the company's executive leadership "directed some aspects" of an alleged wrongful termination and had unique knowledge about corporate leadership's involvement in the termination. *Id.* at *8.

Conversely, an executive's knowledge about "institutional practices" is likely not unique or based on the executive's personal knowledge. *Klungvedt v. Unum Group*, No. 2:12-cv-00651, 2013 U.S. Dist. LEXIS 20105, at *7 (D. Ariz. Feb. 13, 2013). For example, in *Klungvedt*, the plaintiff sought to depose an executive plaintiff conceded had no personal knowledge, but allegedly had information about the defendant's "institutional practices[.]" *Id.* at *3, 7. The court reviewed, *inter alia*, the executive's affidavit denying personal knowledge of the decisions at issue and barred the depositions because of the executive's lack of personal knowledge. *Id.* at *7.

UBS argues Ms. Turner and Mr. Huffman have unique, personal knowledge because ONL identified them as "key individuals" involved in the decisions regarding which selling agreements to terminate and the overall decision to terminate trail commission payments on certain variable

*UBS Financial Services Inc., et al. v.*
*The Ohio National Life Insurance Company, et al.*
Page 5

annuities; because deposition testimony from lower-level employees and former employees confirmed Ms. Turner's and Mr. Huffman's personal involvement in the decisions underlying the claims in this matter; and because several documents produced by ONL confirm Ms. Turner's and Mr. Huffman's personal involvement in the decision-making.

The Special Master finds UBS has not demonstrated Ms. Turner or Mr. Huffman have unique, personal knowledge of the facts in this matter. In its interrogatory answers, ONL identifies Ms. Turner and Mr. Huffman as persons involved in the decision to: "terminate some selling agreements; not terminate some selling agreements; offer servicing agreements to some broker-dealers whose selling agreements were terminated; and not offer servicing agreements to other broker-dealers whose selling agreements were terminated[.]" D.E. 109, Exh. B. Notably, Ms. Turner and Mr. Huffman are two of thirteen persons identified. *Id.* Ms. Turner and Mr. Huffman were also identified as two of thirteen persons "involved in the decision to terminate trail commission payments on variable annuities with GMIB Riders." *Id.* The same people were identified as those "responsible for the decision to offer the Proposed Servicing Agreement or the Servicing Agreements to Plaintiffs." Id. Given that Ms. Turner and Mr. Huffman were identified along with several other persons, it is unlikely that Ms. Turner's and Mr. Huffman's knowledge regarding these decisions is unique. As Judge Wettre noted, UBS is not permitted to depose persons involved in the decision-making merely because they were identified in answers to interrogatories. D.E. 46 at Tr.46:21-22.

UBS further contends that lower-level employees testified about Ms. Turner's and Mr. Huffman's personal involvement in the decision-making. With regard to Ms. Turner, Thomas Barefield identified her as the person running the strategic business unit at the time it was created. D.E. 109, Exh. C at Tr.141:9-11 ("At the time we created strategic business unit, the person

*UBS Financial Services Inc., et al. v.*
*The Ohio National Life Insurance Company, et al.*
Page 6

running that was a lady by the name of Barbara Turner."). Mr. Barefield also testified that he spoke with Mr. Huffman and three other people, including Chris Carlson, about terminating the payment of trail commissions. *Id.* at Tr. 99:25-100:23. H. Douglas Cooke identified Ms. Turner as the person in charge of the call center receiving questions and complaints. D.E. 109, Exh. D at Tr.281:7-9. Mr. Cooke also identified Ms. Turner and Mr. Huffman as individuals involved in discussions with Mr. Cooke and Mr. Carlson about the impact of the decision to terminate the payment of trail commissions. *Id.* at Tr.155:9-156:11. The same four-person group had discussions about the buyout and exchange offers. *Id.* at Tr. 234:19-235:9. Martin Griffin identified Ms. Turner and Mr. Huffman as part of the four-person group[1] with the authority to introduce the exchange offer. D.E. 109, Exh. E at Tr.175:10-25. Mr. Griffin also stated that Ms. Turner was involved in meetings regarding the approval of the exchange offers with Mr. Cooke and Mr. Carlson, but could not remember whether Mr. Huffman was present for the meetings. *Id.* at Tr.176:11-177:12.

This deposition testimony confirms that Ms. Turner and Mr. Huffman were members of decision-making groups. However, Ms. Turner and Mr. Huffman were not the only members of these groups. In fact, Mr. Cooke, who has already been deposed, was also a member of these decision-making groups. *See* D.E. 109, Exh. C at Tr.99:25-100:23; Exh. D at Tr.155:9-156:11; Exh. E at Tr.175:10-25, 176:11-177:12. There is no evidence that Ms. Turner and Mr. Huffman have knowledge different from that of Mr. Cooke. Moreover, that Ms. Turner was in charge of the strategic business unit and the call center does not support a finding of unique, personal knowledge. Like the executive in *Klungvedt*, Ms. Turner likely has knowledge of those

---

[1] Mr. Griffin identified this four-person group, consisting of Ms. Turner, Mr. Huffman, Mr. Carlson, and Mr. Cooke, as the "office of the CEO."

*UBS Financial Services Inc., et al. v.*
*The Ohio National Life Insurance Company, et al.*
Page 7

departments' institutional practices, but she would not be the only individual with that knowledge.

*See Klungvedt*, 2013 U.S. Dist. LEXIS 20105 at *7. It is possible UBS could obtain the

information through a Rule 30(b)(6) deposition, which has not yet been taken.

UBS also argues that several documents produced by ONL confirm Ms. Turner's and Mr.

Huffman's involvement in the matters at issue:

- An e-mail dated October 4, 2018, from Ms. Turner "discussing a list of broker-dealers who would be impacted or not by the decision to cease paying trail commissions[.]" D.E. 109, Exh. F, ON-ESearch 028866. In fact, the e-mail is from Tom DeGaetano to Ms. Turner, Mr. Cooke, and Nicole Breitenstein with the text of an e-mail being sent to an unidentified group of broker-dealers regarding the termination of selling agreements. *Id.* Ms. Turner responds requesting a list of the broker-dealers the communication is being sent to. *Id.*

- An e-mail dated May 7, 2018, to Ms. Turner and Mr. DeGaetano forwarding an invitation to a happy hour to celebrate the Annuity Operations team's success in implementing the Exchange Offer. *Id.*, Exh. G, ON-ESearch 062403. The invitation was originally sent to several executives asking them to forward it to their teams. *Id.*

- An e-mail dated October 3, 2018, forwarding an example of a financial advisor's complaint to Ms. Turner. *Id.*, Exh. H, ON-ESearch 031146. The complaint was also sent to two other executives. *Id.*

- An e-mail dated July 7, 2017, to Mr. DeGaetano asking him to assemble information regarding an update to be provided to the "Office of the CEO." *Id.*, Exh. J, ON-ESearch 046322.

- An email dated July 10, 2017, from Mr. Griffin to Mr. Cooke apparently summarizing a discussion with Mr. Huffman regarding the value of the variable annuity block. *Id.*, Exh. K, ON-ESearch 046375.

- An e-mail dated August 21, 2017, from Mr. Griffin to Mr. Cooke apparently summarizing talking points from a meeting with Mr. Huffman. *Id.*, Exh. L, ON-ESearch 047404.

- An e-mail chain, dated September 20-21, 2017, between Mr. DeGaetano, Michael DeWeirdt, and Mr. Cooke reflecting the demands of "the Office of the CEO" with respect to timing of the Exchange Offers. *Id.*, Exh. M, ON-ESearch 048897.

- An e-mail dated September 27, 2017, from Matthew McGinley to Mr. Cooke,

*UBS Financial Services Inc., et al. v.*
*The Ohio National Life Insurance Company, et al.*
Page 8

copying Mr. Griffin, summarizing the discussion they had with Mr. Huffman earlier in the day. *Id.*, Exh. N, ON-ESearch 049387.

- An e-mail from Angela C. Meehan dated April 17, 2018, advising Susan McDonald and Mr. Griffin that she had updated the "CEO group" about a media inquiry and relayed compliments from Mr. Huffman and Mr. Carlson. *Id.*, Exh. O, ON-ESearch 061982.

The documents provided do not support a finding that Ms. Turner and Mr. Huffman have unique, personal knowledge. With regard to Ms. Turner, none of the documents in the record were sent only to her. Instead, other executives, including Mr. Cooke and Mr. DeGaetano, also received the e-mails. While Ms. Turner may have some knowledge, there is no indication that that knowledge is unique and could not be obtained by less intrusive means of discovery, such as interrogatories or depositions of the other named individuals. Furthermore, none of the cited documents were even sent to Mr. Huffman. Instead, the e-mails often discuss information presented to the "Office of the CEO," a group that includes two people other than Ms. Turner and Mr. Huffman, one of whom was already deposed. These documents do not show that Ms. Turner and Mr. Huffman were involved in decision-making. Rather, these documents demonstrate that Ms. Turner and Mr. Huffman were usually the recipients of information from lower-level employees. Though Ms. Turner and Mr. Huffman may have been members of the decision-making groups, there is no evidence that they have information other than what lower-level employees have provided or could provide. UBS has not demonstrated that Ms. Turner or Mr. Huffman have unique, personal knowledge of the matters at issue.

     2.   <u>Less Burdensome Means</u>

Less burdensome means of discovery include depositions of lower-level employees or even less intrusive discovery, such as interrogatories. *Groupion, LLC v. Groupon, Inc.*, No. 11-0870, 2012 U.S. Dist. LEXIS 12684, at *13 (N.D. Cal. Feb. 2, 2012). Courts in other Districts have held

*UBS Financial Services Inc., et al. v.*
*The Ohio National Life Insurance Company, et al.*
Page 9

it is "inappropriate to compel [an apex official's] deposition without first deposing lesser-ranking employees who have more direct knowledge of the facts at issue" even if the apex official does have direct knowledge of the facts. *ADT LLC v. Vivint, Inc.*, No. 17-cv-80432, 2017 U.S. Dist. LEXIS 216970, *3-4 (S.D. Fla. Aug. 31, 2017). "The preferred method of deposing a corporation is through a Rule 30(b)(6) deposition." *See Skytruck Co. v. Sikorsky Aircraft Corp.*, 2011 U.S. Dist. LEXIS 160482, *4-5 (M.D. Fla. May 11, 2011) (holding plaintiff had not established that apex executives had unique or personal knowledge of underlying facts and noting that Rule 30(b)(6) deposition is the preferred method for deposing a corporation).

UBS contends only Ms. Turner and Mr. Huffman can testify to their "unique conduct, representations, knowledge, intentions, and personal impressions" regarding the business decisions at issue. D.E. 109 at 20. UBS argues it will question Ms. Turner and Mr. Huffman on "numerous other subjects," such as the actions of the decision-making group in respect of the Exchange Offers and the significance of call time reports from ONL's call center. *Id.* at 21. UBS does not demonstrate, however, why Ms. Turner's and Mr. Huffman's deposition testimony is necessary rather than the testimony of other lower-level employees. In fact, UBS presents no evidence that it has attempted to obtain information about the decision-making group's actions or the significance of call time reports from Cooke or lower-level employees. *See Groupion*, 2012 U.S. Dist. LEXIS 12684, at *11 (denying request for apex deposition where requesting party failed to show it had even attempted less intrusive means of discovery, such as interrogatories or depositions of lower-level employees); *Skytruck*, 2011 U.S. Dist. LEXIS 160482, at *4-5 (barring depositions of apex officials where Rule 30(b)(6) deposition has not yet been taken). UBS has not yet exhausted less burdensome means of discovery in its attempts to obtain such information.

In sum, UBS has not demonstrated that either Ms. Turner or Mr. Huffman have unique,

*UBS Financial Services Inc., et al. v.*
*The Ohio National Life Insurance Company, et al.*
Page 10

personal knowledge of facts relevant to this litigation or that UBS has exhausted less intrusive means of discovery to obtain this information. *See*, *e.g.*, *City of Farmington Hills Emple. Ret. Sys. v. Wells Fargo Bank, N.A.*, Civ. No. 10-4372, 2012 U.S. Dist. LEXIS 190633, at *12 (D. Minn. Sept. 17, 2012) ("The Court will not allow Plaintiffs to depose the most senior corporate executives where there is insufficient evidence that such executives represent the only source of the information sought."); *Roman v. Cumberland Ins. Group*, No. 07-cv-1201, 2007 U.S. Dist. LEXIS 96775, at *2 (E.D. Pa. Oct. 26, 2007) ("Courts throughout the country have prohibited the deposing of corporate executives who have no direct knowledge of a plaintiff's claim when other employees with superior knowledge are available to testify."); *Piontek v. I.C. Sys.*, No. 1:08-1207, 2008 U.S. Dist. LEXIS 84963, at *2-3 (M.D. Pa. Oct. 22, 2018) (prohibiting deposition of CEO when two other employees with superior knowledge were able to be deposed).

ONL's motion for a protective order precluding the depositions of Barbara Turner and Gary "Doc" Huffman is granted.

**B.     ONL's Motion for Protective Order Regarding Deposition Questions**

ONL requests the Special Master enter a protective order precluding UBS from inquiring into UBS's "motive" or "general financial condition" during future depositions.  ONL argues UBS must be limited to questions that specifically link ONL's financial condition directly to its allegedly tortious conduct, consistent with Judge Wettre's October 3, 2019 Order.  ONL contends Judge Wettre ruled that motive evidence, particularly financial motive evidence, was not relevant with the exception of information directly linking ONL's financial condition to the offering of annuity exchange and buyout offers.  ONL contends that UBS has improperly asked multiple questions related to ONL's motive and financial information and has made no effort to link the requested financial information to the alleged tortious behavior.

*UBS Financial Services Inc., et al. v.*
*The Ohio National Life Insurance Company, et al.*
Page 11

UBS argues that Judge Wettre's relevancy rulings were not so limited, as ONL was still required to produce documents related to motive that may bear on other issues in the case or may contain admissions or declarations against interest. UBS also argues Judge Wettre's rulings were limited to written discovery, not oral discovery. UBS contends the requested protective order is "unworkable" because there is no legal support for such a protective order and would provide ONL the ability to obstruct all future depositions.

Fed. R. Civ. P 26(b)(1) provides that "[p]arties may obtain discovery of any matter, not privileged, that is relevant to any party's claim or defense and proportional to the needs of the case[.]" It is well-settled that Rule 26 allows broad and liberal discovery that "encompasses 'any matter that bears on or reasonably could lead to other matters that could bear on any issue that is or may be in the case.'" *Kopacz v. Del. River and Bay Auth.*, 225 F.R.D. 494, 497 (D.N.J. 2004); *see Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999) (noting broad discovery permitted under Rule 26). Information not admissible at trial may still be relevant if within the scope of discovery. Fed. R. Civ. P. 26(b)(1). The court may limit discovery if: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

The Special Master finds there is no legal support for ONL's requested protective order limiting deposition questions or topics. Generally, objections to deposition questions cannot be made on the basis of relevancy or being overbroad. *See*, *e.g.*, *Hall v. Clifton Precision*, 150 F.R.D. 525, 530 (E.D. Pa. 1993) ("Since most objections such as those grounded on relevance or materiality, are preserved for trial, they need not be made."); *Cmty. Ass'n Underwriters of Am. v.*

*UBS Financial Services Inc., et al. v.*
*The Ohio National Life Insurance Company, et al.*
Page 12

*Quensboro Flooring Corp.*, C.A. No. 3:10-cv-1559, 2014 U.S. Dist. LEXIS 90939, at *23 (M.D.
Pa. July 3, 2014) (citing *Hall*, 150 F.R.D. at 530) ("Objections to relevance or materiality need not
be made at deposition, as they are preserved for trial."); *Summerville v. New Jersey State Police*,
C.A. No. 14-7653, 2018 U.S. Dist. LEXIS 5630, at *11 n.1 (D.N.J. Jan. 11, 2018) ("[O]bjections
based on relevance or overbreadth are not commonly a reason for instructing a witness not to
answer."). Indeed, other jurisdictions have refused to enter similar orders prospectively limiting
deposition topics because "an advance ruling on relevance or any other objection is not appropriate
under Rule 26." *Direct Gen. Ins. Co. v. Indian Harbor Ins. Co.*, Case No. 14-20050, 2015 U.S.
Dist. LEXIS 187354, at *5 (S.D. Fla. Jan. 29, 2015) (citing Fed. R. Civ. P. 26). Moreover, Judge
Wettre's May 21, 2019, Pretrial Scheduling Order prohibits objections to deposition questions
other than "as to lack of foundation, form or privilege." D.E. 26 at 1. Because it is inappropriate
for ONL to object to UBS's deposition questions based on relevance during a deposition, it is also
inappropriate to impose a blanket prohibition on such questions. Further, ONL cannot
prospectively limit deposition questions.

ONL's central argument for a protective order is that UBS's questions violate Judge
Wettre's September 27, 2019 and October 3, 2019 rulings and it is entitled to a protective order
that incorporates and enforces prior court orders. Judge Wettre's September 27, 2019 and October
3, 2019 relevancy rulings are not as limited as ONL suggests. Judge Wettre ruled that if documents
bear "purely on financial motivation and [do not] mention breaching the trail commissions
requirement, alleged requirement, then [they are] not relevant to the [breach of] contract claims."
D.E. 46, Tr.55:22-24. However, documents bearing on motive may be relevant if the documents
contain admissions against interest. *Id.*, Tr. 46:10-14 ("But there may be nonprivileged documents
within these RFPs in which Ohio National discusses the expected fallout and potential

*UBS Financial Services Inc., et al. v.*
*The Ohio National Life Insurance Company, et al.*
Page 13

consequences of the termination of trail commissions that may contain admissions against interests."). Notably, Judge Wettre ruled that a document containing general motive evidence may have relevance other than motive that requires it to be produced. *Id.*, Tr. 50:20-24. Additionally, documents that may link the financial pressures or conditions affecting ONL to ONL's allegedly tortious conduct are relevant. D.E. 47 at 2.

The Special Master finds the deposition questions at issue have relevance other than motive or ONL's general financial condition. For example, the questions directed to Mr. Barefield and Mr. Cooke about a possible merger or sale may lead to an admission that ONL's self-valuation included the continued obligation to pay trail commissions on the GMIB annuities. *See* D.E. 104, Exh. A at Tr.147:15-18; *Id.*, Exh. D at Tr.278:24-279:1. UBS's questions regarding ONL's financial condition may lead to the discovery of information linking such information to the tortious interference claims once a foundation was laid. *See id.*, Exh. A at 115:13-15. For example, this information could link financial pressures or conditions affecting ONL to its alleged actions to cause customers to exchange or abandon the GMIB variable annuity product, or actions otherwise taken to exit this line of business. *See* D.E. 47 at 2.

Additionally, the Special Master notes Judge Wettre's rulings addressed the discovery disputes presented in the parties' joint September 18, 2019 Letter to the Court. *See generally* D.E. 46 at Tr.3:23-25; D.E. 47. The discovery disputes presented in the parties' joint September 18, 2019 Letter concerned requests for document production and answers to interrogatories. *See* D.E. 43 at 21 ("Plaintiffs seek discovery related to these decisions, including contemporaneous documentation reflecting the ***identities*** of Defendants' decision-makers and the circumstances and factors that informed their decision-making.") (emphasis in original); *id.* at 22 ("Defendants' refusal to produce Board-level and other documents and information concerning their decisions to

*UBS Financial Services Inc., et al. v.*
*The Ohio National Life Insurance Company, et al.*
Page 14

terminate trail commission payments on GMIB annuities – or even identify Board members and other senior officials involved in these decisions – plainly violates the 'broad and liberal' discovery required by the Federal Rules."). Thus, despite ONL's arguments that Judge Wettre's relevancy rulings may be applicable to discovery as a whole, it does not follow that rulings made about written discovery should apply to deposition questions. *See Summerville*, 2018 U.S. Dist. LEXIS 5630, at *11 n.1.

For the reasons stated above, ONL's application for a protective order precluding UBS from inquiring into ONL's "motive" or "general financial condition" during future depositions is denied.

**C.     UBS's Cross-Motion to Compel ONL to Provide Answers to Questions Witnesses were Improperly Instructed Not to Answer**

UBS requests leave to depose four previously deposed witnesses, Mr. Cooke, Mr. Barefield, Mr. Griffin, and John Mulhall, for one hour each regarding the subject matters on which they were improperly instructed not to answer by counsel. UBS contends that ONL's attorneys have improperly instructed deponents not to answer questions based on the "incorrect and irrelevant belief" that the questions violated Judge Wettre's relevancy rulings. D.E. 109 at 12. For example, counsel instructed Mr. Cooke not to answer the question, "Were you ever privy to any discussions about a sale or a merger of Ohio National?" *Id.*, Exh. D at Tr.278:24-279:14. UBS alleges ONL counsel also improperly instructed Mr. Barefield not to answer questions. *See*, *e.g.*, *id.*, Exh. C at Tr.115:13-15 ("What was your understanding of the profitability of the variable annuity business in 2016?"); *id.* at Tr. 87:21-22 ("During your tenure at Ohio National did [the GMIB VA block] create any problems for the company?"). UBS argues these questions are not barred by Judge Wettre's relevancy rulings. UBS also argues that, notwithstanding relevancy,

*UBS Financial Services Inc., et al. v.*
*The Ohio National Life Insurance Company, et al.*
Page 15

ONL's counsel's instructions not to answer violated Judge Wettre's May 21, 2019 Pretrial Scheduling Order, which only permits instructions not to answer based on privilege. *See* D.E. 26 at 1 ("No instruction not to answer shall be given unless a privilege is implicated."). UBS argues ONL conceded the questions did not seek privileged information and thus there was no basis for the instructions not to answer. D.E. 109 at 13-14.

UBS also alleges ONL has refused to cooperate in scheduling the remaining depositions in this matter. UBS contends there are six additional depositions, including a Rule 30(b)(6) deposition, that must be taken in this case. UBS requests an order compelling ONL to meet-and-confer with UBS's counsel to set out an appropriate schedule to accommodate these depositions in advance of the discovery deadline.

ONL argues the questions at issue were inappropriate because the information sought was barred on relevancy grounds. ONL contends UBS's reliance on Judge Wettre's Pretrial Scheduling Order is misplaced; instead, Rule 30(c)(2) controls. *See* Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary to privilege a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).") (emphasis added). ONL argues its instructions not to answer were necessary to enforce the express limitations on the scope of "relevant" discovery as ordered by Judge Wettre. ONL contends its limited instructions not to answer were appropriate and UBS is not entitled to an Order compelling responses to inappropriate questions. ONL does not address UBS's request for an order compelling ONL to meet-and-confer with UBS regarding the schedule of future depositions.

ONL's contention that its instructions not to answer were necessary to enforce a prior court order under Rule 30(c)(2) is unavailing. District courts and magistrate judges have broad discretion to manage discovery and to resolve discovery disputes. *Sempier v. Johnson & Higgins*,

*UBS Financial Services Inc., et al. v.*
*The Ohio National Life Insurance Company, et al.*
Page 16

45 F.3d 724, 734 (3d Cir. 1995); *Republic of Philippines v. Westinghouse Elec. Corp.*, 132 F.R.D.

384, 386-87 (D.N.J. 1990), *aff'd*, 949 F.2d 653 (3d Cir. 1991) (noting broad discretion of

magistrate judge in discovery matters).  Here, Judge Wettre issued a Pretrial Scheduling Order that

expressly prohibited instructions not to answer for any reason except privilege. D.E. 26 at 1.  Judge

Wettre's Pretrial Scheduling Order squarely limits the scope of deposition objections.  No order

has been entered revisiting Judge Wettre's Pretrial Scheduling Order.  ONL may not circumvent

it.

Moreover, as discussed above, the Special Master finds that Judge Wettre's relevancy

rulings are not as limited as ONL contends and do not apply to deposition questions.  Objections

to deposition questions based on relevance are not permitted as those objections are preserved for

trial. *Summerville*, 2018 U.S. Dist. LEXIS 5630, at *11 n.1.  It is premature to determine whether

the questions sought relevant information or whether such information may be considered

admissions or declarations against interest.  The instructions not to answer were not appropriate

pursuant to Rule 30(c)(2).

Accordingly, UBS's cross-motion is granted.  UBS may depose Mr. Cooke, Mr. Barefield,

Mr. Griffin, and Mr. Mulhall for one hour each.  UBS may only question the witnesses on the

topics which ONL improperly instructed the witnesses not to answer.

Additionally, the parties are directed to meet and confer regarding the scheduling of these

four one hour depositions and the six remaining depositions.  The parties shall file a joint

submission within ten (10) days detailing (a) the efforts by the parties to meet and confer regarding

the scheduling and (b) any agreements made regarding deposition.

*UBS Financial Services Inc., et al. v.*
*The Ohio National Life Insurance Company, et al.*
Page 17

     Thank you.

                         Very truly yours,

                         */s/ Thomas P. Scrivo*

                         Thomas P. Scrivo

cc:     Hon. Edward S. Kiel, U.S.M.J. (via ECF)