▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

October 25, 2023

**VIA ECF**

Hon. Cathy L. Waldor, U.S.M.J.
U.S. District Court for the District of New Jersey
50 Walnut Street, Room 4040
Newark, NJ 07102

> Re:  ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
> ***No. 2:22-cv-02632 (ES) (CLW)***

Dear Judge Waldor:

We submit this joint letter on behalf of the parties in the above-captioned matter pursuant to Local Rule 37.1 and the Court's Civil Case Management Order.

Defendant Save On SP, LLC ("SaveOn") asks the Court to compel Plaintiff Johnson & Johnson Health Care Systems, Inc. ("J&J") to review and produce documents that will likely require dismissal of its claims in their entirety, or at a minimum will narrow the case dramatically. More specifically, SaveOn seeks documents that will demonstrate that J&J made a conscious choice to give CarePath funds to patients even though J&J <u>knew those patients were using SaveOn</u>. J&J cannot blame SaveOn for J&J's own strategic business decision to give funds to such patients, much less can J&J recover "damages" from SaveOn equal to the amounts that J&J willingly paid to patients with eyes wide open that they were using SaveOn. Yet, that is precisely the measure of damages J&J seeks.

JJHCS responds that SaveOnSP's latest demand will not "require dismissal of" or "narrow" the case, but will only introduce yet more delay, which is SaveOnSP's true goal. This letter is very long, yet the facts are simple: JJHCS has ***agreed*** to run SaveOnSP's requested search terms for the parties' agreed-upon time period (April 1, 2016 to July 1, 2022), which corresponds to the date on which JJHCS collected and processed many of its custodians' documents. The only "live" issue is whether JJHCS must also produce documents from outside the parties' agreed-upon time period. Because this is enormously burdensome at this late stage, and because ***SaveOnSP refuses to do the same***, the Court should deny SaveOnSP's motion.

SaveOn asserts that its request would require JJHCS to run only three search terms over a limited time period—and that although J&J makes the empty assertion that it would be an "enormous burden," J&J has failed to even attempt to quantify its purported burden. JJHCS responds that the burden is obvious: SaveOnSP is seeking to force JJHCS to re-collect, re-process, and re-search ***all*** of its custodians' documents. The parties agreed to a date cutoff for custodial discovery precisely to avoid spurious eleventh-hour demands like this one. If SaveOnSP wanted a later cutoff, the time to negotiate that was months ago, not after the (already twice-extended) deadline for substantial completion of document production.

Hon. Cathy L. Waldor
October 25, 2023
Page 2

  The parties have met and conferred in good faith to resolve their disputes but were unable to do so.

### *SaveOn's Position*



  SaveOn is seeking crucial documents, similar to the one excerpted above, that may put an end to this case. These documents will potentially show that J&J has suffered no damages at all, requiring dismissal of its claims, and the documents certainly will narrow this case substantially. Specifically, SaveOn is seeking documents that will prove that ***J&J was able to identify, and did identify, patients on SaveOn's program***. Yet, armed with that information, J&J with eyes wide open ***chose to give CarePath payments to those patients***. J&J therefore cannot claim that the payments it made are damages caused by anything SaveOn did or did not do, as opposed to the direct result of J&J's own conscious choices. And even if J&J's eyes-wide-open choice to pay could somehow constitute "damages" "caused" by SaveOn, J&J's deliberate decision to continue making payments is an utter failure by J&J to fulfill its duty to mitigate.

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

---

¹ Ex. 1 (JJHCS_0003355).

² Ex. 2 (JJHCS_00133549) (████████████████████████████████████);
*see also* Ex. 3 (JJHCS_00040622) (████████████████████████████████); Ex. 4 (JJHCS_00041215) (████████████████████).

³ *See, e.g.*, Ex. 5 (JJHCS_00001460) (████████████████████████████); Ex. 6 (JJHCS_00001497) (████████████████████████).

⁴ ████████████████████████████████████████ *See, e.g.*, Ex. 7 (JJHCS_00104708) (████████████; *see also* Ex. 8 (JJHCS_00083826) (████████████████████).

Hon. Cathy L. Waldor
October 25, 2023
Page 3

███████████████████████████████████████.[5] J&J identified individual patients with speci-
ficity, including by name, date of birth and patient ID number. J&J identified patients on SaveOn
by obtaining documents with the type of information shown in the snapshot on the previous
page—saying in the clearest possible terms that:

███████████████████████████████████ [6]

J&J cannot, and does not, deny that this is exactly what it did through its CAP program.

███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████ █ ████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████ [10]

_____

[5] *See, e.g.*, Ex. 9 (JJHCS _00001207); Ex. 10 (JJHCS_00003307) (██████████████████████
███████████████████████); Ex. 11 (JJHCS_0003309) (██████████████████████████████████
██████████████████); Ex. 12 (JJHCS_00003353) (███████████████████████████████████████
████████); Ex. 1 (JJHCS_0003355) (███████████████████████████████████████████████
██████████████); Ex. 13 (JJHCS_00008104) (█████████████████████████████████████); Ex. 14
(JJHCS_00135351) (███████████████████████████████████████████████). JJHCS has also produced
spreadsheets which attempt to and purport to identify individuals on maximizers and accumulators.

[6] Ex. 1 (JJHCS_0003355).

[7] Ex. 15 (JJHCS_00002593) ("████████████████████████████████████████████████████████
████████████████████████████.").

[8] *See* Ex. 16 (TrialCard_00000074) (████████████████████████████████████████████████████████;
Ex. 17 (TrialCard_00000076) (████████████████████████).

[9] *Id.*

[10] Likewise, in 2023, J&J changed the terms applicable to certain drugs by deleting the language that, according to
J&J, previously prohibited the use of SaveOn. *See* Compl. ¶ 103; *compare* ECF No. 31-6 (Stelara) *and* ECF No. 31-
7 (Tremfya) *with Savings Program Overview - STELARA,*
https://www.stelarawithme.com/sites/www.stelarawithme.com/files/stelara-savings-program-overview.pdf (last ac-
cessed Oct. 3, 2023) *and Savings Program Terms & Conditions - TREMFYA,* https://www.tremfya-
withme.com/sites/www.tremfyawithme.com/files/TREMFYA-withMe_Savings-Program-Web-Flashcard.pdf (last
accessed Oct. 3, 2023). Those changes removed the term "Patients who are members of health plans that claim to
**eliminate** their out-of-pocket costs are not eligible for cost support." ECF No. 31-6. The Stelara and Tremfya terms
and conditions instead include the term that "Patients who are members of health plans (often termed "maximizer" or
"optimizer" programs) that claim to reduce or eliminate their patients' out-of-pocket co-pay, co-insurance, or deduct-
ible obligations for certain prescription drugs based upon the availability of, or patient's enrollment in, manufacturer

Hon. Cathy L. Waldor
October 25, 2023
Page 4

J&J **_seeks to recover for ongoing "damages"_** it allegedly suffered **_from July 1, 2022 through 2023_**. J&J asserts that it "**_agreed_** to run SaveOnSP's requested search terms for the parties' agreed-upon time period," but the point here is that J&J refuses to search for CAP documents during the July 2022 through 2023 period. SaveOn must have the documents regarding CAP for that time period, so that SaveOn can use them to demonstrate that J&J was the cause of its own "damages," and that it also egregiously failed to fulfill its duty mitigate, during that period. J&J cannot have it both ways: it must either stipulate that it will not seek damages for the July 2022 through 2023 time period, or it must produce the documents SaveOn needs to defend itself.[11]

Through its actions, J&J has recognized that its ability to identify patients using SaveOn is a pivotal and potentially case-dispositive issue in this case—but it wants discovery on that issue to be a one-way street. In an effort to shelter itself from the explosive nature of the evidence showing that J&J made the deliberate decision to pay patients it <u>knew</u> were using SaveOn, J&J has resorted to arguing that SaveOn supposedly engages in "deceit" that prevents J&J from identifying such patients. J&J has demanded that SaveOn produce "deceit"-related documents. SaveOn disagrees with J&J's assertion that SaveOn "deceives"—but agreed to search for and produce such documents, if any exist. SaveOn also provided interrogatory responses on the same topic. Once again, J&J cannot have it both ways: J&J wants to obtain documents from SaveOn (if any exist) that it can use to try to show that J&J was unable to identify patients who use SaveOn—but at the same time J&J wants to withhold the documents that will eviscerate its meritless contention.

J&J tries to change the subject by listing **_other_** categories of documents that it has agreed to produce.[12] But it is apples and oranges: J&J cannot, and does not, assert that these other categories of documents capture the universe of patients that J&J identified as using SaveOn, or encompass the universe of documents showing that J&J repeatedly chose to continue giving CarePath funds to such patients. To the contrary, **_J&J admits that the other categories of documents_**

---

[11] The parties agreed to a default discovery cutoff of July 1, 2022, but agreed that they would make exceptions "where appropriate." Ex. 18 at 2 (Sept. 7, 2023 Ltr. from J&J to SaveOn). For that reason, the parties agreed to refresh their productions as to the data underlying J&J's damages claim through trial. *See* Ex. 19 (July 24, 2023 Ltr.). The same reasoning applies to the CAP program. For example, SaveOn agreed to run search terms from July 1, 2022 through October 1, 2023 to capture documents regarding a change to a drug list in 2023 by one of SaveOn's health plan clients.

[12] J&J notably omits that SaveOnSP has agreed to produce, and has produced, many documents from after July 1, 2022. SaveOn has produced over 1,300 documents from after July 1, 2022; whereas, J&J has only produced approximately 165. For example, SaveOn produced organizational charts from later in 2022. Ex. 20 (SOSP_0000170). SaveOn also has agreed to produce all drug lists from 2023, Ex. 21 (Sept. 19, 2023 Ltr.); all documents and communications regarding the letters SaveOn sent to providers, this Action, and the June 2, 2023 Joint Letter, *id.*, if J&J produced the same (J&J refused); and all patient-level data, Ex. 22 (Sept. 20, 2023 Ltr.).

---

sponsored co-pay assistance for such drugs will have a $6,000 annual maximum program benefit per calendar year." *Savings Program Overview - STELARA,* https://www.stelarawithme.com/sites/www.stelarawithme.com/files/stelara-savings-program-overview.pdf (last accessed Oct. 3, 2023).

Hon. Cathy L. Waldor
October 25, 2023
Page 5

it has agreed to produce ***omit the pivotal materials sought here***—and that J&J ***has not even tried to search for or collect the documents***. Specifically, J&J admits that in order to identify and produce such documents, it would need to "re-collect, re-process, and re-search all of its custodians' documents." That would not be necessary at all, if J&J had already looked for and produced the crucial documents SaveOn seeks. J&J cannot be permitted to recover "damages" for even a single patient that J&J chose to pay with knowledge that the patient was using SaveOn; but that is exactly what J&J is trying to do by concealing documents that would expose each patient for whom J&J did this.

J&J's remaining arguments are specious.

J&J's "burden" assertion is hollow. J&J has done absolutely nothing to quantify any alleged burden.

J&J's complaints about the timing of this motion are equally meritless. J&J asserts that SaveOn negotiated search terms months ago—but at that time J&J ***hid*** the existence of the CAP program and did not propose search terms to capture those documents. J&J also withheld the vast majority of its limited production until June 2023. After SaveOn reviewed J&J's production, it promptly began requesting that J&J run additional searches.[13]

The documents sought could substantially narrow or end the case. We respectfully ask the Court to compel J&J to (1) review documents from July 1, 2022 through October 30, 2023 hit by the search "CAPm" OR "CAPa" OR "adjustment program," and (2) produce all hits responsive to SaveOn's requests.

### *JJHCS's Position*

This application is just the latest in a long line of meritless motions brought by SaveOnSP insisting that JJHCS is withholding "critical," "crucial," or "case-ending" documents. This time, SaveOnSP claims, the documents at issue supposedly show JJHCS choosing not to mitigate its damages. SaveOnSP's charges are false. As explained in detail below, JJHCS has repeatedly tried to stop the bleeding from its patient assistance programs, including by motion to this Court, but SaveOnSP has thwarted JJHCS's efforts at every turn, and has sought to exploit JJHCS's unwillingness to risk harm to patients for its own financial benefit. And with respect to the specific documents at issue, JJHCS has agreed to produce those very documents for the date range that the parties mutually agreed upon long ago. SaveOnSP accepted that compromise, and to this day is still refusing to produce its own custodial documents that go beyond that agreed-upon range. So SaveOnSP cannot now demand another set of rules for JJHCS.

As the Court has heard during prior disputes, JJHCS's business personnel cannot reliably or comprehensively determine which patients have been forced into the SaveOnSP program. That

---

[13] *See* Ex. 23 (July 18, 2023 Ltr.). J&J refused to do so for the critical time period after July 1, 2022. Ex. 24 (Sept. 29, 2023 email from J. Long).

Hon. Cathy L. Waldor
October 25, 2023
Page 6

is no accident: SaveOnSP has engaged in persistent and brazen deceit to prevent JJHCS and other drug manufacturers from detecting its scheme. JJHCS alleged this when it first filed its Complaint—and specifically noted the resulting risks to patients inherent in JJHCS taking action based on unconfirmed information.[14] Recently produced SaveOnSP documents confirm that deliberately thwarting manufacturer attempts to identify patients enrolled in SaveOnSP is precisely what SaveOnSP has done. *See, e.g.*, JJHCS Ex. 1 (SOSP_0694247) (

); JJHCS Ex. 2 (SOSP_0828860) (

); JJHCS Ex. 3 (SOSP_0307960) (

).

SaveOnSP's efforts to prevent JJHCS from being able to effectively mitigate its damages without harming misidentified patients have even extended into this very courtroom. As the Court will recall, JJHCS made a motion earlier this year seeking permission to use the definitive list of names of patients enrolled in SaveOnSP produced in discovery by SaveOnSP to mitigate its damages, but SaveOnSP vigorously opposed that motion and the Court denied it. (*See* Dkt. Nos. 109, 113.) SaveOnSP should not be heard to argue that "J&J with eyes wide open" has "chose[n] to give CarePath payments to those patients [enrolled in SaveOnSP]" (*supra* at 2), when SaveOnSP itself in this very Court recently prevented JJHCS from stopping CarePath payments to those patients by blocking access to the only definitive list of patients who are enrolled in SaveOnSP. If SaveOnSP believes what it is now claiming—that JJHCS is making deliberate payments to patients enrolled in SaveOnSP with no true desire or intention to cut them off—then SaveOnSP should have simply granted JJHCS permission to use the patient list to mitigate its damages. The fact that SaveOnSP refused to do so—and still refuses to do so—proves that even SaveOnSP does not believe the argument it is making here.

The reality is that in large part due to SaveOnSP's evasion tactics, JJHCS has never been able to comprehensively and definitively identify the patients on the SaveOnSP program, and has been cautious about taking any steps that could imperil healthcare for patients who may or may not be in SaveOnSP. Indeed, even when an individual patient provides information indicating some connection to SaveOnSP, that is often incomplete, as the very example SaveOnSP highlights

---

[14] *See* Compl. ¶ 101 ("SaveOnSP has taken steps to obscure when funds are being extracted from CarePath through its Program, including recently by varying the patient's out-of-pocket obligation per prescription fill, such that the amounts extracted from the copay card by the pharmacy are not consistent and easily detectible. Further, JJHCS cannot reduce cost support preemptively to prevent SaveOnSP's activities without an unacceptable risk that individual patients may be misidentified and suffer from reduced cost support and consequently unable to afford their therapy. The secretive nature of SaveOnSP's operations, therefore, renders any attempt to reduce copay assistance on a patient-by-patient basis unworkable as it risks harming the very patients CarePath was designed to support.").

Hon. Cathy L. Waldor
October 25, 2023
Page 7

above shows. *See supra* at 2 (noting that it was unclear when a patient was enrolled in SaveOn or whether it covered the Janssen drug).[15]  In sum, SaveOnSP has deliberately "camouflaged" its misconduct to evade detection, but now seeks to blame JJHCS for not taking more extreme action based on limited and incomplete information.[16]

But this is not a motion on those merits—this is a motion to compel discovery that JJHCS largely has already agreed to produce.  JJHCS has agreed to run SaveOnSP's requested search terms for the parties' agreed-upon time period, which corresponds to the date on which JJHCS collected and processed many of its custodians' documents.  JJHCS took this step (which added more than 32,000 new documents to JJHCS's review queue) in good faith, even though the deadline for substantial completion of documents—twice delayed due to SaveOnSP's dilatory misconduct—has already passed, in the hope that it would resolve this dispute.  Yet, as has been its recent practice, SaveOnSP refused any reasonable compromise and rushes to Court insisting that it get every single thing it wants.  SaveOnSP therefore insists that JJHCS should refresh *all* of its document collections through a future date to capture documents hitting on these search terms. This is untenable.  JJHCS should not be forced to restart its document collection, review, and production process all over again, produce documents through to the present despite the parties' prior agreement on a time frame for production, and push depositions and trial off yet again to accommodate an endless cycle of updates.  Indeed, if SaveOnSP were to prevail, it would no doubt be back in a few months seeking yet another update based on the same logic it urges here.

SaveOnSP's motion is not only meritless, it is also hypocritical.  To be clear, SaveOnSP has taken exactly the same position with respect to its own documents that JJHCS has.  Like JJHCS, SaveOnSP has agreed to produce easily accessible **non**-custodial information from late 2022 and 2023, such as organizational charts and transactional data.  But SaveOnSP has steadfastly refused to produce more recent **custodial** documents, on the grounds "production of documents after that time would be unduly burdensome" emphasizing that "[t]he parties have generally agreed to end production as of July 1, 2022, unless a party shows a specific need for documents created later, which JJHCS has not done here."  JJHCS Ex. 4 (SaveOnSP's Aug. 21, 2023 Responses & Objections to JJHCS's Seventh Set of RFPs, at 4-9.).  With the sole exception of one request, for which SaveOnSP has offered exactly one custodian, SaveOnSP has not agreed to run search terms

---

[15] Contrary to SaveOnSP's misleading excerpts quoted above, *supra* at 2-3 nn.1 & 6, the full context of that document shows that JJHCS was ***not*** able to confirm key facts about the patient's status:

███████████████████████████████████████████████████████████████████████████

[16] SaveOnSP claims that JJHCS "considered reducing CarePath payments to zero for patients J&J identified as using SaveOn," but fails to mention that its own conduct prevented JJHCS from doing so.  *See supra* at 3.

Hon. Cathy L. Waldor
October 25, 2023
Page 8

over its custodial productions through the present.  *See* JJHCS Ex. 5 (Oct. 3, 2023 Ltr. from A. Dunlap to S. Arrow at 1.)[17]

Thus, SaveOnSP is grossly distorting the facts when it suggests above that it has agreed to produce "deceit-related documents" showing its own extensive efforts to prevent manufacturers from detecting its misconduct.  Remarkably, SaveOnSP hides the critical fact that, just like JJHCS, it is *only* producing such documents from the agreed-upon time period, *not* through to the present.  In other words, it is SaveOnSP and not JJHCS that wants a "one-way street" of discovery—it wants JJHCS to do what SaveOnSP is not willing to do itself, even though this case is fundamentally about SaveOnSP's misconduct.

There is also nothing unfair or surprising about the fact that JJHCS seeks ongoing damages, including damages that accrued after the agreed-upon discovery cutoff.  SaveOnSP has known since the first day of this litigation that JJHCS sought ongoing damages, and nevertheless agreed to the July 1, 2022 cutoff.  And that made perfect sense, since in every case custodial discovery must end before damages are finally calculated.  Were it otherwise, the parties would have to keep exchanging their employees' emails all the way through trial—an impractical and absurd idea.  And so the parties mutually agreed to a reasonable end date for their custodial productions, while also agreeing that both sides could get additional updated evidence in the form of refreshed data productions.  JJHCS had *more* to lose from this compromise than SaveOnSP did—SaveOnSP's misconduct continues every day, and so it is necessarily generating new evidence of wrongdoing every day as well.  Yet JJHCS understood that reasonable end dates for document production are necessary to ensure that the parties can timely take depositions and proceed to trial.  There is no basis to make JJHCS alone do more—and certainly no basis to bless SaveOnSP's attempt, once again, to start one-way discovery over at the beginning with a whole new round of document collections and search terms.  SaveOnSP's motion should be denied.

The record also disproves SaveOnSP's claim that it lacks the documents it "needs to defend itself."  To the contrary, JJHCS has made extensive productions of types of documents SaveOnSP claims to need, including the data supporting JJHCS's damages claim as well as documents concerning its mitigation efforts.  In addition to agreeing to run the terms "CAPm" OR "CAPa" OR "adjustment program" for the parties' agreed-upon time period (April 1, 2016 to July 1, 2022), JJHCS already had agreed to produce broad categories of responsive documents, including many discrete categories past the originally agreed-upon date period:

- Documents sufficient to show final versions of reports received by JJHCS from external vendors in response to JJHCS's request that they analyze CarePath

---

[17] SaveOnSP also notes that it has "provided interrogatory responses" on the subject of its own evasive and deceptive tactics.  *See supra* at 4.  But so what?  SaveOnSP never served JJHCS with interrogatories related to the CAP program that is the subject of this motion—making SaveOnSP's comparison inapposite.

Hon. Cathy L. Waldor
October 25, 2023
Page 9

enrollment and claims data to assess whether it is possible to identify individuals enrolled in SaveOnSP *through the present*;

- Documents sufficient to show JJHCS's internal analyses to assess whether it is possible to identify individuals enrolled in accumulator or maximizer programs generally *through the present*;

- Documents sufficient to show any attempts to enforce CarePath's terms and conditions against those individuals to the extent that any such documents exist *through the present*;

- Data, *through the present*, concerning (i) patients enrolled in CarePath; (j) the dates on which each patient was enrolled; (k) the amount(s) of copay assistance funds that JJHCS offered to each patient; (l) the Janssen drug which each patient received; and (m) all copay assistance payments that JJHCS made to or on behalf of each patient enrolled in CarePath;

- Documents and communications responsive to SaveOnSP's "attempts to limit or eliminate the amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs," from April 1, 2016 to July 1, 2022;[18]

- Documents sufficient to show the substantive terms and conditions of the Stelara and Tremfya co-pay assistance programs *through the present*;

- Documents sufficient to show the nature and extent of the change relating to a $9,100 co-pay assistance maximum for Stelara and Tremfya *for 2023*;

- Documents sufficient to show why JJHCS re-branded its Stelara and Tremfya co-pay assistance programs *in 2023*; and

- Documents sufficient to show JJHCS's budget for copay assistance through CarePath, including JJHCS's actual and projected annual costs for CarePath, *through the present*.

    To the extent that SaveOnSP wishes to argue that JJHCS failed to mitigate based on the data it had available through to the present, therefore, it shall have that data already and much more besides. Even just the first four bullets above confirm that. SaveOnSP does not need every email production from individual custodian's files updated too. SaveOnSP's burdensome request—that

---

[18] JJHCS already ran and produced documents responsive to this request using the following search string: (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate).

Hon. Cathy L. Waldor
October 25, 2023
Page 10

the Court direct JJHCS to refresh all seventeen of its collections through a *future* date (October 30, 2023)—goes too far. To be clear, this would require JJHCS to re-collect not only files and emails on JJHCS's servers—but also to recollect and re-image hard drives and cell phones from individual employee-witnesses. SaveOnSP's present motion is thereafter tantamount to a demand for the wholesale updating of JJHCS's document production through to the present, at a time when the parties should instead be proceeding to depositions. And SaveOnSP is not even limiting itself to discovery about SaveOnSP. SaveOnSP's desired search terms—"CAPm" OR "CAPa" OR "adjustment program"—go to accumulators and maximizers generally.

Moreover, SaveOnSP's demand that JJHCS refresh the entirety of its collection is particularly unreasonable given that documents like JJHCS_0003355—the centerpiece of SaveOnSP's motion—will be captured by an upcoming TrialCard production of all benefits investigations that reflect inquiries about whether a patient taking Stelara or Tremfya is enrolled in an accumulator or maximizer program (including SaveOnSP) from January 1, 2022 through July 1, 2022 (i.e., the conclusion of the parties' agreed-upon default time period).[19]

Two final points bear mentioning regarding SaveOnSP's true motives for bringing this motion now. First, the information SaveOnSP now seeks is exceedingly commercially sensitive because it is information about what business steps JJHCS has taken to protect itself from the SaveOnSP scheme. Disclosing this information to SaveOnSP would be giving the proverbial fox the keys to the henhouse. The protective order will not adequately shield this proprietary information because SaveOnSP will no doubt seek to use it at trial, in the presence of SaveOnSP's corporate representative. That outcome would be intolerable and unjust.

Second and lastly, the timing of this motion is highly revealing. Of the four RFPs supposedly at issue, SaveOnSP served three of them more than *eleven* months ago. *See* JJHCS Ex. 6 (RFP Nos. 8, 13, 31). And the parties had already reached agreement on the scope of SaveOnSP's remaining disputed request, RFP No. 49, with JJHCS agreeing to produce documents sufficient to show (i) final versions of reports received by JJHCS from external vendors concerning mitigation efforts; (ii) JJHCS's internal analyses to assess whether it is possible to identify individuals enrolled in accumulator or maximizer programs generally; and (iii) efforts to enforce CarePath's terms and conditions against those individuals to the extent that any such documents exist. *See* JJHCS Ex. 7 (JJHCS's July 24, 2023 Responses & Objections to SaveOnSP's Second Set of RFPs). If SaveOnSP truly wished to pursue these issues, it could have pushed them to a motion months ago, rather than raising these issues now in an attempt to delay discovery and trial. Indeed, the very document on which SaveOnSP hinges its motion—a 2022 benefits investigation (JJHCS_00003355)—was produced to SaveOnSP on March 16, 2023, ***more than seven months***

---

[19] Indeed, as JJHCS has represented to the Court and to SaveOnSP, JJHCS is reviewing SaveOnSP's Fourth Set of Requests for Production (served on October 20, 2023) and SaveOnSP's related request that JJHCS run certain search terms related to benefits investigations as part of those discovery requests. JJHCS is reviewing these requests, anticipates making an additional production of documents in response to these requests, and remains open to meeting and conferring with SaveOnSP on these issues.

Hon. Cathy L. Waldor
October 25, 2023
Page 11

***before SaveOnSP filed the instant motion***.  This fact alone gives the lie to SaveOnSP's claim that JJHCS "hid" these documents.  *See supra* at 5 (emphasis removed).

SaveOnSP now has ***six*** wide-ranging motions before the Court.  On the issue of JJHCS's productions concerning ongoing efforts to mitigate its damages, JJHCS already has agreed to produce the relevant documents and data necessary to SaveOnSP's defenses for the agreed-upon time period, and more.  The Court should deny SaveOnSP's motion.

\* \* \*

The parties appreciate the Court's attention to this matter.

Respectfully submitted,


/s/ E. Evans Wohlforth
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

David Elsberg (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

Hon. Cathy L. Waldor
October 25, 2023
Page 12

/s/ Jeffrey J. Greenbaum

Jeffrey J. Greenbaum
Katherine M. Lieb
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff Johnson & Johnson Health Care
Systems Inc.*

# EXHIBITS 1-17

# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 18



www.pbwt.com

September 7, 2023

Sara A. Arrow
(212) 336-2031

**<u>By Email</u>**

Andrew R. Dunlap, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

    Re:  ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
        **<u>Case No. 2:22-cv-02632 (ES) (CLW)</u>**

Dear Andrew:

    We write in response to your August 24, 2023 letter regarding JJHCS's Sixth Set of Requests for Production.

    I.  **Requests Nos. 81 & 82**

    We have considered your proposal with respect to Requests Nos. 81 and 82 and decline to accept it. SaveOnSP has not served mirror requests on JJHCS, and if SaveOnSP wishes to obtain documents about JJHCS's communications with market participants, it can pursue such discovery and we will respond in the normal course. Regardless, JJHCS's communications with the marketplace (to the extent they exist) are irrelevant to the issues in dispute. By contrast, SaveOnSP's mass communications to patients, providers, and payors are directly relevant to the harms that JJHCS has alleged.

    Specifically, SaveOnSP's May 2023 communications to doctors and plans suggest that SaveOnSP deployed a discovery dispute as a pretext to send thousands of highly misleading and harmful communications (the "SaveOnSP Letters") to doctors who prescribe Janssen drugs and to health plans that have participants who rely on Janssen drugs. The SaveOnSP Letters falsely suggested that JJHCS planned to remove copay assistance on its drugs and encouraged the doctors to switch their patients who are medically stable on Janssen therapies to some other treatment that would make SaveOnSP more money. Similarly, SaveOnSP's letter to health plans encouraged the plans to reduce or remove coverage for Janssen Drugs. JJHCS is entitled to understand the full context giving rise to this approach, which promoted non-medical switching of medically stable patients, and RFP No. 82 is appropriately tailored to obtain such documents.

    JJHCS's entitlement to such documents is particularly evident given SaveOnSP's own prior positions in this litigation. As you'll recall, SaveOnSP protested to the Court that JJHCS

Andrew Dunlap, Esq.
September 7, 2023
Page 2

should not be permitted to communicate with plans and patients about this Action or SaveOnSP's scheme. *See* Feb. 28, 2023 Tr. at 8:13–15 (SaveOnSP's counsel: "So our concern is that subpoenas or outreach for a large number of plans or patients could harm SaveOn's business."); *id.* at 9:7–9 ("What we're trying to do is ensure that there's not some large-scale outreach to the plans, especially to the plans, that could harm our business here."). In a remarkable turnaround, SaveOnSP did precisely that which it baselessly predicted JJHCS would do. It is SaveOnSP—not JJHCS—that has engaged in harmful and misleading outreach to market participants, and JJHCS is entitled to all documents and communications to providers and health plans concerning such outreach.

        SaveOnSP also cannot resist discovery on the grounds that its latest misconduct occurred too recently to be discoverable. While the parties agreed to a ***default*** discovery period covering April 1, 2016 to July 1, 2022, the parties have made various exceptions to that default understanding in instances, like this one, where appropriate. Here, SaveOnSP has put the issues relating to the SaveOnSP Letters into dispute through its own ongoing misconduct. And there is no significant burden associated with production of the requested documents, all of which relate to a narrow period of time (far narrower than 2016-2022) and a discrete set of events.

        JJHCS is similarly entitled to all documents responsive to Request No. 81. To date, SaveOnSP has refused to confirm that the SaveOnSP Letters are the only misleading communications SaveOnSP has made concerning this Action. Accordingly, JJHCS seeks, through Request No. 81, all documents related to any communications SaveOnSP has had with market participants about this litigation. Like Request No. 82, this request is narrow and would present minimal burden: all SaveOnSP must do is either (1) confirm that it did not communicate with market participants concerning this Action; or (2) search its files for any such communications or related documents. We understand that SaveOnSP is unwilling to do either without a reciprocal agreement from JJHCS to do the same.

        If you wish to reconsider your position, please provide proposed search terms by September 13, 2023 so that we can evaluate the adequacy of your proposed search methodology. If we do not hear from you by then, we will assume the parties are at impasse with respect to Requests Nos. 81 and 82, and we will proceed accordingly.

## II.    Request No. 83

        JJHCS's RFP No. 83 seeks "documents and communications from January 2, 2023 to the present relating to any contemplated or actual changes to any Drug List, including but not limited to contemplated or actual changes to be effective July 1, 2023." SaveOnSP has offered to produce only the final version of the 2023 Drug List. This is insufficient. As we have previously explained, JJHCS is entitled to all documents, including internal communications, concerning SaveOnSP's decisions to include or exclude Janssen Drugs in its program. Having already agreed to provide such documents concerning its Drug Lists through July 2022, SaveOnSP has already acknowledged the relevance of these documents. And there can be no significant burden with

Andrew Dunlap, Esq.
September 7, 2023
Page 3

simply refreshing the collections it has already undertaken to capture a narrow additional time period.

Nevertheless, in an effort to avoid a dispute, we are willing to narrow our initial request as follows. First, you suggest in your August 24 letter that SaveOnSP's May 2023 communications with plans do not "relate to JJHCS's RFP No. 83." Please conduct a good faith investigation to confirm that no changes (e.g., exclusion of Janssen Drugs) were made—either by SaveOnSP or any other entity—to the SaveOnSP Drug List(s) in response to or in connection with the SaveOnSP Letters. Please provide the results of this investigation by September 13, 2023. Second, assuming that you can confirm that no changes were made to the SaveOnSP Drug List(s) in response to or in connection with the SaveOnSP Letters, please produce all 2023 Drug Lists, as well as documents sufficient to show any changes made to those Lists in 2023. We reserve our right to renew our request for additional documents, including custodial documents, once we have reviewed your production on these issues.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

14536091

# Exhibit 19



www.pbwt.com

July 24, 2023

Harry Sandick
(212) 336-2723

Andrew Dunlap, Esq.
Selendy Gay Elsberg, PLLC
1290 Avenue of the Americas
New York, NY 10104

**Re:**   ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
             ***No. 2:22-cv-02632 (ES) (CLW)***

Dear Andrew:

We write in response to your July 12, 2023 letter regarding SaveOnSP's renewed requests for documents related to CarePath budgeting and financial information.

## I.    Harm Caused To JJHCS

In the July 12 letter, SaveOnSP asks whether JJHCS believes its harm is "limited to additional CarePath funds that JJHCS believes it has expended because of SaveOnSP." July 12, 2023 Ltr. from A. Dunlap to H. Sandick at 3.  Consistent with the allegations in the Complaint, JJHCS confirms that SaveOnSP's tortious conduct "has caused JJHCS to pay at least $100 million more in copay assistance than it otherwise would have." *See* Compl. ¶¶ 5, 89-105.  JJHCS reserves the right to pursue relief relating to any harm caused by SaveOnSP encompassed by its pleading.

We also note that SaveOnSP has engaged in acts of concealment in order to prevent JJHCS and other market participants from learning about the true nature and extent of SaveOnSP's wrongdoing.  Accordingly, JJHCS reserves all rights to assert additional types or amounts of damages based on evidence learned in discovery or through ongoing fact investigation into SaveOnSP's ongoing tortious conduct.

## II.    JJHCS's Production of Financial Information

In the July 12 letter, SaveOnSP requests that JJHCS "refresh" its production of documents related to the extent of harm caused by SaveOnSP, as well as data responsive to SaveOnSP's RFP No. 28(i)-(m) through the present. *See* July 12, 2023 Ltr. from A. Dunlap to H. Sandick at 3-4.  As to an update of data, we agree this should occur but on a reciprocal basis, including data produced in response to JJHCS's RFP Nos. 41, 42, and 56.  For the avoidance of doubt, JJHCS will "refresh" its production of (i) patients enrolled in CarePath; (j) the dates on which each patient was enrolled; (k) the amount(s) of copay assistance funds that JJHCS offered to each patient; (l) the Janssen drug which each patient received; and (m) all copay assistance

Andrew Dunlap, Esq.
July 24, 2023
Page 2

payments that JJHCS made to or on behalf of each patient enrolled in CarePath. *See* SaveOnSP's RFP No. 28(i)-(m). We propose that the parties confer on dates for two updates of their respective data productions. We suggest that there be one update through to the present to occur at the close of substantial completion of production, and another to occur two months before trial with an understanding that expert using the data for damages calculations will be permitted to update their calculations only within one month thereafter. We are willing to confer as to any appropriate reciprocal update as to documents relating to harm caused by SaveOnSP beyond these data updates.

SaveOnSP's July 12 letter (at pages 4-5) also renews a series of requests for production:

- **RFP No. 29(a)**: From April 1, 2016 through the present, all Documents and Communications regarding JJHCS's determination of the amounts of copay assistance funds that JJHCS offered to Patients enrolled in CarePath. *See* RFP No. 29(a).

- **RFP No. 29(b)**: From April 1, 2016 through the present, all Documents and Communications regarding JJHCS's budget for CarePath. *See* RFP No. 29(b).

- **RFP No. 29(i)**: From April 1, 2016 through the present, all Documents and Communications regarding JJHCS's or Janssen's actual and projected return on investment for CarePath. *See* RFP No. 29(i).

With respect to RFP No. 29(a), JJHCS agrees to produce documents sufficient to show how JJHCS determines the amounts of copay assistance funds that JJHCS offers to Patients enrolled in CarePath from April 1, 2016 through the present, subject to SaveOnSP's agreement to make a reciprocal production of documents sufficient to show how determines the copayments for Janssen drugs subject to the SaveOnSP program through to the present.

With respect to RFP No. 29(b), JJHCS agrees to produce documents sufficient to show JJHCS's budget for copay assistance through CarePath and JJHCS's actual and projected annual costs for CarePath. JJHCS represents that, as part of its next production, JJHCS will produce additional budget data, including all available forecasted and actual spend, related to the CarePath co-pay assistance program from January 1, 2017 to July 1, 2022. Based on a reasonable investigation, we understand that this budget data is not available prior to January 1, 2017. JJHCS agrees to produce additional data to update this production through the present.

With respect to RFP No. 29(i), JJHCS does not agree to produce documents "regarding JJHCS's or Janssen's actual and projected return on investment for CarePath." The documents JJHCS has agreed to produce, including the CarePath budget and actual costs, are sufficient to show the harm caused by SaveOnSP to CarePath. As explained more fully in Section III, *supra*, SaveOnSP continues to seek information that is irrelevant to the claims and defenses in this case.

Andrew Dunlap, Esq.
July 24, 2023
Page 3


**III.    Further Discovery of Janssen, JJHCS, and CarePath Budget and Financial Information Is Not Warranted**

At the March 17, 2023 Status Conference, Judge Waldor expressed skepticism regarding the breadth of SaveOnSP's requests for financial, budget, and other similar information. Judge Waldor cautioned SaveOnSP multiple times to limit the scope of its requests on these issues.

For example, Judge Waldor told the defense that "I think it's an awfully broad and not just temporally but otherwise broad request. I understand the background and the basis for the request, but as I said, not – it's premature. Let's see what [JJHCS] produces. And let's see if you can modify and streamline your arguments to me and your requests after that." Dkt. No 89 at 34:5-10. Later, Judge Waldor stated again that the requests were "temporally [] way out of line" and she expressed her "hop[e]" that the defense could make "a more targeted request." *Id.* at 35:15-21

Despite Judge Waldor's comments, SaveOnSP has presented renewed requests in Sections III.B and III.C of the July 12 letter that are nearly identical to those that the Court denied at the March 17 conference. Rather than make "a more targeted request," SaveOnSP is pressing the same requests that the Court rejected as overbroad four months ago. Given that SaveOnSP has not changed its position, JJHCS's position likewise remains the same: SaveOnSP's demands are overly broad, irrelevant, and unnecessary for preparation of its defense.

In SaveOnSP's renewed requests for documents responsive to RFP Nos. 28(a)-(h) and RFP 29(j), as identified in Section III.B of your July 12 letter, SaveOnSP has made no substantive changes to the requests themselves, even though Judge Waldor explicitly stated her concerns involved the temporal *and* substantive scope of the requests. *See* Mar. 17 Tr. at 34:5-6 ("I will tell you that I think it's an awfully broad and not just temporally but otherwise broad request."). Limiting the timeframe within which you seek documents is insufficient to address Judge Waldor's substantive concerns. In addition, SaveOnSP has failed to narrow either the temporal or the substantive scope of its renewed request for RFP No. 30, which seeks extensive pricing information for every Janssen Drug from 2009 through the present—a request that is both wildly overbroad and lacking in relevance to the claims and defenses in this case.

In addition to Judge Waldor's skepticism about the breadth of the requests, which seek, among other things, prescription-level data for all CarePath patients, all documents and communications regarding adherence rate analysis for CarePath patients, and internal data and pricing information related to the net price of each Janssen Drug, Judge Waldor explained that any renewed requests should be targeted to address any perceived deficiencies in JJHCS's priority production of documents. Mar. 17, 2023 Tr. at 34:2-10 ("I'll hear further argument once [JJHCS] produces what [counsel] said he's going to produce and we can get a little more specific … Let's see what [JJHCS] produces. And let's see if you can modify and streamline your arguments to me and your requests after that."); *id.* at 35:17-21 ("I will allow you to renew that request after [JJHCS counsel] produces everything he says he's going to produce. And I'm just hoping . . . that maybe it can be a more targeted request.").

Andrew Dunlap, Esq.
July 24, 2023
Page 4

   Despite this, SaveOnSP's July 12 letter never describes why the productions made by JJHCS are insufficient for analyzing the sale of Janssen Drugs or the adherence rates of patients in the SaveOnSP program compared to that of patients that are not. Instead, the renewed requests amount to nothing more than a reiteration of the same points, without the additional justification contemplated by Judge Waldor as to why SaveOnSP needs more than the financial and patient-level data JJHCS has already produced.

   **A.**  **SaveOnSP Is Not Entitled to Information Sought by Section III.B**

   SaveOnSP claims that its program increases both the sales of Janssen Drugs and patient adherence rates. Even if this dubious proposition were true and somehow relevant to the claims and defenses—and it is neither—JJHCS's document productions are sufficient for SaveOnSP to prepare a defense. JJHCS has produced a wealth of non-privileged documents and communications in its possession relating to the following:

- The extent of the harm SaveOnSP has caused JJHCS during the relevant Time Period.

- The data that formed the basis for the allegations in the Complaint ¶¶ 92-100.

- JJHCS's budget for copay assistance through CarePath; JJHCS's actual and projected annual costs for CarePath.

- Patient-level data from the time period January 1, 2016 to July 1, 2022, including documents sufficient to show:

  (1) all patients enrolled in CarePath for each Janssen Drug;

  (2) the dates on which each patient was enrolled in CarePath;

  (3) the amounts of copay assistance funds that JJHCS offered to each Patient enrolled in CarePath;

  (4) the Janssen Drug for which each patient enrolled in CarePath received copay assistance; and

  (5) all CarePath copay assistance payments made to each payment. This data is more than sufficient for you to test the injury and damages alleged by JJHCS.

   This document production—which includes documents from before and after SaveOnSP began operations in earnest—is sufficient for SaveOnSP to answers the questions that it poses. Are patients on the SaveOnSP program more likely to continue to take Janssen medications than patients who are not on SaveOnSP? Does JJHCS provide more or less co-pay support to patients after the patients register for SaveOn? How if at all have CarePath's budgets

Andrew Dunlap, Esq.
July 24, 2023
Page 5

changed as SaveOnSP has grown?  These questions and much more can be answered by making reference to the documents produced by JJHCS and the documents in SaveOnSP's own files.[1]

At any rate, SaveOnSP's claim that its program somehow "benefits" JJJHCS through increased sales and patient adherence is illogical.  The argument is apparently premised on the idea that if Janssen pharmaceuticals have been profitable in recent years, then it must be that the SaveOnSP program somehow led to increased sales and patient adherence, leaving JJHCS unharmed by SaveOnSP's conduct.  But the profitability of Janssen therapies is not a justification for SaveOnSP's tortious conduct.  Whether or not Janssen therapies are profitable is irrelevant to SaveOnSP's interference with CarePath's terms and conditions and its deception of CarePath patients.  SaveOnSP is not entitled to the additional discovery it seeks (let alone for a time period that predates SaveOnSP's existence by almost a decade) given that JJHCS already has produced documents sufficient for SaveOnSP to test its own unlikely theories.

Accordingly, JJHCS declines to produce all documents responsive to SaveOnSP's RFP Nos. 29(a)-(h), (j) and 29.  If SaveOnSP were inclined to follow Judge Waldor's admonition and narrow the scope of the documents it seeks produced to only those that are relevant to the case, JJHCS remains open to further meet and confer discussions.

### B.    SaveOnSP Is Not Entitled to the Information Sought by Section III.C

SaveOnSP also now renews its vastly overbroad, irrelevant request for "[d]ocuments sufficient to show the basis for Janssen's decision to raise or lower the price of the Janssen Drug" for every Janssen Drug, and seeks these documents from January 1, 2009 to the present.  The temporal and substantive breadth of this request is extraordinary, and there it seeks documents with no connection to the Complaint whatsoever.

This is not a case about Janssen therapies and how they are priced or marketed.  This case is about SaveOnSP's conduct in relation to CarePath.  Nowhere in the Complaint does JJHCS allege that the price of Janssen therapies has changed in response to an increased utilization of CarePath funds or, more specifically, due to SaveOnSP's conduct.  Only the conduct of SaveOnSP and the impact that SaveOnSP has on CarePath's co-pay support program are at issue.  SaveOnSP continues its attempt to turn the case into a referendum on the expensive nature of pharmaceuticals and the fairness of drug prices—issues that are wholly irrelevant to the case and meant to be a distraction from SaveOnSP's tortious conduct.  The price of a Janssen Drug— whatever that price may be—does not give SaveOnSP the right to interfere with CarePath's terms

---

[1] In addition, it is possible that answers to some of these questions may also be found in the files of SaveOnSP's business partners, Express Scripts, Inc. ("ESI"), and Accredo, Inc.  Despite the obvious relevance of ESI and Accredo's documents, SaveOnSP has inexplicably filed papers in support of ESI and Accredo's motions to quash JJHCS's third-party subpoenas, leaving SaveOnSP in the unusual position of opposing the production of relevant documents and seeking the production of irrelevant documents.

Andrew Dunlap, Esq.
July 24, 2023
Page 6

and conditions or mislead consumers.  Focusing on how Janssen prices its pharmaceuticals is an improper attempt to lay blame on JJHCS and to impose unwarranted burden on JJHCS in retaliation for the filing of this lawsuit.  JJHCS's conduct is not at issue, and this attempt to shift the focus away from SaveOnSP is inappropriate.

SaveOnSP's letter claims that documents regarding the pricing decisions of Janssen Drugs are "relevant to JJHCS's allegations that SaveOnSP makes CarePath 'prohibitively expensive,'" but provides nothing more than this conclusory statement in support of this claim.  As we have previously stated, "as a matter of business judgment, [JJHCS] cannot justify the skyrocketing costs of its copay assistance program if those added costs are incurred not for the benefit of patients but rather for SaveOnSP and its partners." Dkt. No. 79 at 17.  CarePath does not exist to subsidize SaveOnSP's business; it exists to provide patients with access to medications that they otherwise might not be able to afford.  SaveOnSP's opinion about to the business decisions of JJHCS and the considerations involved in running the CarePath program are irrelevant.  Nevertheless, JJHCS has already produced budget and financial data that is relevant to our allegation that the SaveOnSP program makes CarePath prohibitively expensive.  Additional data regarding the pricing of Janssen drugs over a fifteen-year period is irrelevant to this determination and simply unnecessary.

Furthermore, you again omit JJHCS's rationale behind its allegation that SaveOnSP makes healthcare more expensive for patients, as you did in your motion to compel regarding the same request at issue here.  *See* Dkt. No. 79 at 14 ("JJHCS has accused SaveOnSP of violating GBL § 349 by making health care more expensive for patients."); July 12, 2023 Ltr. from A. Dunlap to H. Sandick at 6 ("Documents regarding Johnson & Johnson's pricing decisions for the Janssen Drugs at issue in this case are relevant to JJHCS's allegations … that SaveOnSP makes health care more expensive for patients[.]").  In response, we again highlight the fact that JJHCS has been clear that the SaveOnSP program "mak[es] patient healthcare needs more expensive" not in the abstract but specifically "***by not counting any of the funds spent of patients' medication toward their ACA maximum or deductible***." Compl. ¶ 114 (emphasis added); *see also* Dkt. No. 79 at 17.  The pricing of Janssen drugs has nothing to do with the design of the SaveOnSP program and its manipulation of essential versus non-essential health benefits, which causes patients' healthcare needs to be more expensive.  CarePath already makes participating Janssen pharmaceuticals affordable by reducing patient expenses to $5 or $10 per prescription fill, thus annual price fluctuations have no impact on patients enrolled in CarePath and is irrelevant to CarePath patients' copay responsibility.

In addition to the clear irrelevance of this data, the breadth of this request is immense.  As discussed at the March 17 conference, Johnson & Johnson has over 140,000 employees and 200 affiliates around the world, many of which are involved in the manufacture, creation, and pricing decisions of Janssen pharmaceuticals.  *See* Mar. 17, 2023 Tr. at 33:3-8. Pricing decisions are made based on a wide array of factors that have nothing to do with CarePath or JJHCS—let alone SaveOnSP—such as manufacturing costs, inflation, and competition in the specialty drug marketplace.

Andrew Dunlap, Esq.
July 24, 2023
Page 7

        Finally, SaveOnSP's renewed request seeks documents sufficient to show pricing decisions of Janssen Drugs going all the way back to 2009, seven years before both CarePath began in its current form and SaveOnSP began operations in 2016.  The allegations in the Complaint all concern events that took place in or after 2017.  There is no legitimate purpose to seek the pricing of Janssen Drugs from eight years before SaveOnSP existed.  Indeed, SaveOnSP does not even provide a rationale for why it is entitled to this information going back to 2009, offering only conclusory assertions.  *See* July 12, 2023 Ltr. from A. Dunlap to H. Sandick at 6.  SaveOnSP's request for documents sufficient to show pricing decisions for every Janssen Drug during a nearly fifteen-year period would require JJHCS to search through the entire network of Johnson & Johnson entities, creating a burden that is undue and disproportionate to the needs of the case and irrelevant to the claims at issue.

        In addition, as stated in our July 17, 2023 letter, based on our reasonable investigation, we understand that, due to applicable preservation and/or retention capabilities, we are not in a position to produce documents or communications created before 2013.

        Accordingly, JJHCS refuses to produce all documents responsive to SaveOnSP's RFP No. 30.  As with the other requests discussed above, JJHCS remains open to considering narrowed requested as suggested by Judge Waldor.

                        Very truly yours,

                        */s/ Harry Sandick*
                        Harry Sandick

# EXHIBIT 20

# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 21

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

selendy
gay
elsberg

Andrew Dunlap
Partner
212 390 9069
adunlap@selendygay.com

September 19, 2023

**<u>Via E-mail</u>**

Sara Arrow
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
sarrow@pbwt.com

**Re:**  ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear Sara,

We write in response to your September 7, 2023 letter regarding JJHCS's
RFP Nos. 81, 82, and 83.

*First*, you may have misunderstood our proposal regarding RFP Nos. 81 and
82, which ask for documents regarding SaveOnSP's communications concerning
the Action and the Joint Letter from May 4, 2023 to the present. In our August 24,
2023 letter, we indicated that SaveOnSP would be willing to produce documents
on the topics requested in RFPs Nos. 81 and 82 from May 4, 2023 to August 1, 2023
if JJHCS agreed to produce its own documents on the same topics during the same
time period—communications concerning the Action and the Joint Letter. Save-
OnSP did not ask JJHCS to produce its general communications "with the market-
place." You also suggest that SaveOnSP has not served requests to mirror RFP Nos.
81 and 82. It did not need to: In RFP No. 8, SaveOnSP requested all documents
and communications "with or regarding SaveOnSP," which covers the requested
material. In light of these clarifications, please let us know if JJHCS will accept
SaveOnSP's proposal.

*Second*, regarding RFP No. 83, which asks for documents regarding changes
to any Drug List in 2023, we offered to produce the final version of the 2023 Drug
List and to revisit this Request once JJHCS identified specific changes it believed
justified extending discovery past the parties' agreed-upon cutoff. You agree to
narrow the request subject to two conditions: that (1) SaveOnSP conduct an inves-
tigation to confirm that no changes were made to the SaveOnSP Drug List in

Sara Arrow
September 19, 2023

response to or in connection with the SaveOnSP Letters, and (2) SaveOnSP pro-
duce all 2023 Drug Lists, as well as documents sufficient to show any changes
made to those Lists in 2023. SaveOnSP is conducting the requested investigation.
SaveOnSP is willing produce all 2023 Drug Lists, and documents sufficient to show
changes made to those Lists in 2023 to the extent that the changes reflect changes
regarding the inclusion or exclusion of Janssen Drugs on the SaveOnSP Drug Lists.
Please confirm JJHCS's agreement that this will resolve all issues regarding RFP
No. 83.

We reserve all rights and are available to meet and confer.

Best,

/s/ Andrew Dunlap

Andrew R. Dunlap
Partner

# Exhibit 22

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Meredith Nelson
Associate
212 390 9069
mnelson@selendygay.com

September 20, 2023

**Via E-mail**                    ATTORNEYS' EYES ONLY

Cassie Deskus
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
cdeskus@pbwt.com

**Re:** ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear Cassie,

We write in response to your August 25, 2023 letter concerning SaveOnSP's
data production.

## I.    Patient Identifying Data

JJHCS requests that SaveOnSP produce data sufficient to identify a given
patient in both SaveOnSP's and JJHCS's produced data, including the individual
patient's TrialCard enrollment number, name, date of birth, and social security
number ("SSN"). SaveOnSP will provide names and dates of birth for patients who
appear in SaveOnSP's data. SaveOnSP possesses TrialCard enrollment numbers
for most, but not all, patients who appear in its produced data. SaveOnSP will pro-
duce the TrialCard enrollment numbers that it has. SaveOnSP does not possess
patient SSNs.

## II.    SaveOnSP's Enrollment Data

You state that SaveOnSP's data does not contain a field identifying whether
a patient is enrolled in the SaveOnSP program. SaveOnSP possesses data only for
patients who are using the copay assistance benefit administered by SaveOnSP. All
data SaveOnSP has produced is for patients using that benefit.

Cassie Deskus
September 20, 2023

## III.    Data Timeframe

You note that SaveOnSP's data production contains limited transactions from 2017 and no transactions from 2016. JJHCS asks SaveOnSP to produce data from these years.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

You also ask that SaveOnSP agree to refresh its data production through the present. As we have discussed previously, SaveOnSP is willing to refresh its data production through the present on a mutually agreed date.

## IV.    Additional Payment Data

You state that SaveOnSP's data does not contain sufficient data for JJHCS to determine the amount paid by SaveOnSP or the plan sponsor for a given transaction and ask that SaveOnSP provide this information.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

You ask that we provide transaction-level data indicating the type of insurance plan (*e.g.*, PPO, HMO, etc.). As we stated in our March 31, 2023 letter, SaveOnSP does not possess this data. You also ask that we provide copay schedules for all relevant years.

███████████████████████████████████████████████

## V.    Payment Data

*First*, █████████████████████████████████████

*Second*, ████████████████████████████████████
███████████████████████████████████████████████

Cassie Deskus
September 20, 2023



Cassie Deskus
September 20, 2023

## VI.   Additional Clarifying Information

*First*, you ask us to provide a data dictionary. We will do so.



Regards,

/s/ Meredith Nelson

Meredith Nelson
Associate

4

# Exhibit 23

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

selendy
gay
elsberg

Elizabeth Snow
Associate
212 390 9330
esnow@selendygay.com

July 18, 2023

**<u>Via E-mail</u>**

George LoBiondo
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
globiondo@pbwt.com

**Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear George,

We write regarding deficiencies in JJHCS's document production.

## I.    Organizational Charts

### A.    Time Period

JJHCS's production does not appear to include organizational charts from before December 1, 2016. Please provide organizational charts covering the full time period from April 1, 2016 through December 1, 2016.

### B.    Juliette DeShaies

In the joint letter dated June 23, 2023, and in your letter dated May 19, 2023, you stated that Juliette DeShaies is an employee of JJHCS. *See* June 23, 2023 Joint Ltr. at 11. She does not appear on any organizational chart produced to date. Please produce all organizational charts on which she appears, whether from JJHCS or Janssen.

### C.    Groups in JJHCS's Organizational Charts

Please explain the function of the following groups named in JJHCS's organizational charts.

█   ████████████

George LoBiondo
July 18, 2023



Please also provide the names of all members of each group, whether employed JJHCS, at Janssen, or elsewhere in the J&J organization.

## II.   Custodians

After reviewing JJHCS's production, SaveOnSP continues to believe that JJHCS should add as custodians several individuals that it has declined to add. SaveOnSP also proposes one new custodian.

### A.   Quinton Kinne

In its March 7, 2023 letter, SaveOnSP proposed Quinton Kinne as a custodian because JJHCS named Mr. Kinne as (1) having identified or attempted to identify health plans advised by SaveOnSP or patients enrolled in the SaveOnSP program; and (2) having had responsibility for monitoring and addressing the amount of CarePath copay assistance provided to patients enrolled in the Save-OnSP program. In its March 16, 203 letter, JJHCS argued that Mr. Kinne's documents are either completely protected by a privilege or other protection from disclosure or would be captured by other custodians, including John Paul Franz.

George LoBiondo
July 18, 2023

JJHCS's production shows that its assertion that Mr. Kinne's documents would be entirely duplicative and entirely privileged is false.

Please confirm that JJHCS will add Mr. Kinne as a custodian.

JJHCS's production also reflects that Mr. Kinne is a member of something called the SMOX Team. JJHCS_00001196. Please explain the function of the SMOX team and provide the names of all its members, whether employed at JJHCS or Janssen or elsewhere in other J&J entities.

**B.    Leigh Wyszkowski**

In its March 7, 2023 letter, SaveOnSP proposed Leigh Wyszkowski as a custodian because JJHCS named her as having identified or attempted to identify health plans advised by SaveOnSP or patients enrolled in the SaveOnSP program. In its March 16, 2023 letter, JJHCS asserted that her communications would be captured by other custodians, including John Paul Franz.

As noted above, JJHCS_00008989 reflects that Kinne attended meetings one-on-one with Leigh Wyszkowski regarding SaveOnSP. By definition, Franz could not have been privy to those meetings.

Please confirm that JJHCS will add Wyszkowski as a custodian.

**C.    Daphne Longbothum**

In its June 23, 2023 joint letter, JJHCS asserted that Daphne Longbothum is solely an employee of JJHCS, *id.* at 10, and that all her relevant documents would be captured by Nidhi Saxena and Hattie McKelvey.

After a review of JJHCS's production, it is clear that Longbothum's documents are not completely captured by Saxena and McKelvey. For example, neither appear on an email which Longbothum received regarding the CAP program FAQs, JJHCS_00001393, on emails regarding the CarePath website, JJHCS_00007876;

3

George LoBiondo
July 18, 2023

JJHCS_00034500, or on emails regarding updated terms and conditions for pulmonary hypertension drugs, JJHCS_00034526. These demonstrate that Longbothum's documents are not coextensive with Saxena's and McKelvey's documents.

Please confirm that JJHCS will add Longbothum as a custodian.

### D.    William Shontz

In its June 23, 2023 joint letter, JJHCS asserted that William Shontz is an employee of JJHCS, *id.* at 11, and that all his relevant documents would be captured by Hattie McKelvey and Silviya McCool.

After a review of JJHCS's production, it is clear that Shontz's documents are not completely captured by McKelvey and McCool. JJHCS_00001202 reflects that when McCool was out of the office, she directed people to reach out to Shontz and later emails in that thread do not copy McCool or McKelvey. And many emails include Shontz but neither McKelvey or McCool. *See, e.g.*, JJHCS_0005897 ██████ ██████ ); JJHCS_00008556 ( ██████ ██████ ); JJHCS_00034500 ( ██████ ██████ ); JJHCS_00034531 ( ██████ ). These demonstrate that Shontz's documents are not coextensive with McKelvey's and McCool's documents.

Please confirm that JJHCS will add Mr. Shontz as a custodian.

### E.    Alison Barklage

SaveOnSP requests that JJHCS add Alison Barklage as a custodian.



Her work thus concerns JJHCS's response to SaveOnSP and is directly relevant to JJHCS's claims and SaveOnSP's defenses in this action.

Please confirm that JJHCS will add Ms. Barklage as a custodian.

4

George LoBiondo
July 18, 2023

## III.    Search Terms

*First*, in its March 16, 2023 letter, JJHCS refused to remove the limitation for (accumulate* OR maximiz*) within 50 words of Express Scripts (and permutations) and Accredo (and permutations). JJHCS's proposal improperly limits its searches. JJHCS has agreed to produce "all non-privileged documents and communications in its possession relating to the extent of the harm SaveOnSP has caused JJHCS during the relevant Time Period." Feb. 14, 2023 Ltr. from A. LoMonaco to M. Nelson at 1-2. ████████████████████████████████
████████████████████████████████████████████████████
████████████████████████ *See* JJHCS_00026405; JJHCS_00000641.

To resolve this issue, SaveOnSP proposes that JJHCS use these terms:

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz* OR copay* OR co-pay* OR coins* OR co-ins* OR "cost share")

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz* OR copay* OR co-pay* OR coins* OR co-ins* OR "cost share")

Please confirm that JJHCS will add these search terms. If JJHCS objects to either term on burden grounds, please provide the number of unique documents returned by that term.

*Second*, JJHCS agreed to produce all non-privileged documents and communications regarding its understanding of commercial health plans' ability to designate specialty drugs as EHB or NEHB under the ACA and its regulations during the relevant time period. While JJHCS agreed to run a proposed term regarding EHB and NEHB, the following additional term is required to capture the full universe of relevant documents JJHCS agreed to produce: (CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") /100 (ACA OR "Affordable Care Act" OR Obamacare). Please confirm that JJHCS will add this search term. If JJHCS objects to the term on burden grounds, please provide the number of unique documents returned by that term.

*Third*, JJHCS rejected the following search terms:

- "copay assistance" w/10 program

- (CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") AND (patient w/20 (copay or payment or contrib*)) pay* w/100 (patient w/10 ("high deduc*) OR "high-deduc* OR "health savings" OR HSA)

- Copay w/5 accumulat*

- Copay w/5 max*

5

George LoBiondo
July 18, 2023

Based on JJHCS's productions to date, JJHCS often refers to copay maximizer or accumulators or describes the services SaveOnSP provides at a high level, without explicitly referring to SaveOnSP (or Express Scripts or Accredo).



The document does not use the terms SaveOnSP, Express Scripts, or Accredo. Although SaveOnSP does not concede it is an accumulator or maximizer, JJHCS refers to SaveOnSP as such. To capture all relevant documents on SaveOnSP's services, JJHCS must add search terms describing SaveOnSP's services, but not mentioning SaveOnSP itself.

Please confirm that JJHCS will add these search terms. If JJHCS objects to either term on burden grounds please provide the number of unique documents returned by that term.

*          *          *

Please respond by July 21, 2023. We reserve all rights and are available to meet and confer.

Best,

/s/ Elizabeth Snow

Elizabeth H. Snow
Associate

6

# Exhibit 24

| | |
|---|---|
| **From:** | Elizabeth Snow |
| **To:** | SaveOn-Team |
| **Subject:** | Fwd: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW) |
| **Date:** | Friday, September 29, 2023 6:28:00 PM |

**Elizabeth Snow**

Associate  [Email]

Selendy Gay Elsberg PLLC  [Web]

Pronouns: she, her, hers

--------------------------------------------

+1 212.390.9330  [O]

+1 540.409.7257  [M]

---

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Friday, September 29, 2023 6:23:35 PM
**To:** Elizabeth Snow <esnow@selendygay.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; David Elsberg <delsberg@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW)

Counsel:

In an effort to reach compromise and reduce the number of disputes before Judge Waldor at our October 30 conference, JJHCS agrees to run the terms "CAPa," "CAPm" and "adjustment program" for the agreed-upon relevant time period, April 1, 2016 to July 1, 2022.

We hope that this will resolve the dispute.  We do not think a demand through to the present by SaveOnSP is appropriate or feasible.  As JJHCS has no direct knowledge of SaveOnSP's conduct at issue, JJHCS's documents primarily relate to its awareness and response to SaveOnSP, and this demand amounts to a wholesale update of the production.  We note SaveOnSP has rejected even several discrete updates, let alone a wholesale update, of its own production.

Please let us know if our proposed production resolves this dispute.

JJHCS will respond separately to your joint letter on SaveOnSP's interrogatories next week.

Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jlong@pbwt.com**

---

**From:** Elizabeth Snow <esnow@selendygay.com>
**Sent:** Wednesday, September 27, 2023 12:12 PM
**To:** Long, Julia (x2878) <jlong@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; ~delsberg@selendygay.com <delsberg@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>
**Subject:** JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW)

<mark>*Caution: External Email!*</mark>

Counsel,

Please find attached a joint letter that SaveOnSP intends to file with the Court. We ask that you please provide JJHCS's portion by end of day Monday, October 2. We reserve the right to revise in response to any revisions.

Thanks,

Elizabeth

**Elizabeth Snow**
Associate  [Email]
Selendy Gay Elsberg PLLC  [Web]
Pronouns: she, her, hers
--------------------------------------------
+1 212.390.9330  [O]
+1 540.409.7257  [M]

---

Privileged/Confidential Information may be contained in this message. If you are not

the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

# JJHCS Exhibits 1-3
# CONFIDENTIAL – FILED UNDER SEAL

# JJHCS Ex. 4

E. Evans Wohlforth, Jr.
ROBINSON & COLE LLP
666 Third Avenue, 20th Floor
New York, NY 10174
212-451-2954
ewohlforth@rc.com

David Elsberg (*admitted pro hac vice*)
Andrew R. Dunlap (*admitted pro hac vice*)
Meredith Nelson (*admitted pro hac vice*)
Elizabeth Snow (*admitted pro hac vice*)
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
delsberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (ES) (CLW) <br><br> **DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SEVENTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

To:     Jeffrey J. Greenbaum, Esq.
        SILLS CUMMIS & GROSS, P.C.
        One Riverfront Plaza
        Newark, New Jersey 07102
        973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New York

*Attorneys for Plaintiff Johnson & Johnson*
*Health Care Systems Inc.*

Pursuant to Federal Rule of Civil Procedure 34, Defendant Save On SP, LLC ("Save-OnSP"), by and through its undersigned counsel, responds and objects to Plaintiff Johnson & Johnson Health Care Systems Inc.'s ("JJHCS") Seventh Set of Requests for Production, dated July 20, 2023 (the "Requests"). If SaveOnSP learns that in some material respect its responses are incomplete or incorrect, SaveOnSP will correct them if the additional or corrective information has not otherwise been made known to JJHCS during the discovery process or in writing. Fed. R. Civ. P. 26(e)(1)(A).

## OBJECTIONS TO DEFINITIONS

1.      SaveOnSP objects to the definition of the term "SaveOnSP" as including attorneys and accountants who may be outside of SaveOnSP's possession, custody, and control. SaveOnSP interprets the term "SaveOnSP" to mean SaveOnSP, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, and all persons or entities acting or purporting to act on behalf or under the control of SaveOnSP.

2.      SaveOnSP objects to the definition of "SaveOnSP Program," as described in Complaint ¶¶ 9-17 and ¶¶ 50-88, because it mischaracterizes SaveOnSP's services. SaveOnSP will not use this definition.

2

3.      SaveOnSP objects to the definition of "You" and "Your" to the same extent that it objects to the definition of "SaveOnSP."

4.      SaveOnSP objects to the definition of "Drug List" to the extent that objects to the definition of the "SaveOnSP Program."

## OBJECTIONS TO INSTRUCTIONS

5.      SaveOnSP objects to Instruction No. 16 to the extent that JJHCS attempts to impose requirements on SaveOnSP beyond those required by the Federal Rules of Civil Procedure, agreed to by the parties, or ordered by the Court.

6.      SaveOnSP objects to Instruction No. 20 to the extent that it asks SaveOnSP to produce Documents and Communications outside of its possession, custody, and control or asks SaveOnSP to provide information beyond that which SaveOnSP can identify after a reasonable search. SaveOnSP will produce relevant, non-privileged documents within its possession, custody, or control that it can identify after a reasonable search.

7.      SaveOnSP objects to Instruction No. 18 to the extent that JJHCS attempts to impose requirements on SaveOnSP beyond those required by the Federal Rules of Civil Procedure, agreed to by the parties, or ordered by the Court.

8.      SaveOnSP objects to Instruction No. 20 to the extent that it requires the production of documents created after July 1, 2022, as production of documents after that time would be unduly burdensome. The parties have generally agreed to end production as of July 1, 2022, unless a party shows a specific need for documents created later.

9.      SaveOnSP uses the term "Janssen Drugs" as defined in SaveOnSP's First Request for Production of Documents to JJHCS, dated November 11, 2022.

## SPECIFIC RESPONSES AND OBJECTIONS

**REQUEST NO. 85:** All documents and communications concerning the Strategic Steering Committee and its meetings, including all participant lists, associated emails, preparatory materials, research, agendas, meeting minutes, and calendar invitations.[1]

**RESPONSE:**  SaveOnSP objects to this Request to the extent that it seeks documents that do not concern the subject matter of this Action, as such documents are irrelevant to the claims or defenses in this action. SaveOnSP will not produce such documents.

SaveOnSP objects to this Request because the term "Strategic Steering Committee" is undefined. SaveOnSP interprets this term to refer to a committee of SaveOnSP personnel and Express Scripts personnel that convened bimonthly to discuss SaveOnSP's services and implementation of those services.

SaveOnSP objects to this Request to the extent that it seeks documents created after July 1, 2022, as production of documents after that time would be unduly burdensome. The parties have generally agreed to end production as of July 1, 2022, unless a party shows a specific need for documents created later, which JJHCS has not done here.

SaveOnSP objects to this Request to the extent that it asks SaveOnSP to produce Documents and Communications outside of its possession, custody, and control.

SaveOnSP objects to this Request to the extent that it seeks documents that do not concern Janssen Drugs, CarePath, or SaveOnSP's services at issue in this action, as such documents are irrelevant to the claims or defenses in this action. SaveOnSP will not produce such documents.

---

[1] *See, e.g.*, SOSP_0335068; SOSP_0396126; SOSP_0356091.

4

SaveOnSP will produce non-privileged documents and communications responsive to this Request that are relevant to Janssen Drugs, CarePath, or SaveOnSP's services at issue in this action that can be identified during a reasonable search.

**REQUEST NO. 86:** All documents and communications, including any white papers, research, or analysis, concerning SaveOnSP's belief that its program or offerings improve therapeutic compliance or promote patient adherence to a drug regimen, including any talking points related to or concerning therapeutic compliance or patient adherence.[2]

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents that do not concern the subject matter of this Action, as such documents are irrelevant to the claims or defenses in this action. SaveOnSP will not produce such documents.

SaveOnSP objects to this Request to the extent that it seeks documents created after July 1, 2022, as production of documents after that time would be unduly burdensome. The parties have generally agreed to end production as of July 1, 2022, unless a party shows a specific need for documents created later, which JJHCS has not done here.

SaveOnSP objects to this Request to the extent that it seeks documents that do not concern Janssen Drugs, CarePath, or SaveOnSP's services at issue in this action, as such documents are irrelevant to the claims or defenses in this action. SaveOnSP will not produce such documents.

SaveOnSP objects to this Request as not proportional to the needs of the case to the extent that it seeks all documents and communications be-yond those identified during a rea-sonable search. The burden and expense of producing all such documents outweighs the marginal relevance of the material requested. SaveOnSP will not produce all such documents.

---

[2] *See, e.g.*, SOSP_0256537.

SaveOnSP will produce non-privileged documents identified during a reasonable search responsive to this Request.

**REQUEST NO. 87:** All documents and communications, including any white papers, research, or analysis, concerning SaveOnSP's belief that its program or offerings increase the sale of, or revenues from, Janssen drugs.

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents that do not concern the subject matter of this Action, as such documents are irrelevant to the claims or defenses in this action. SaveOnSP will not produce such documents.

SaveOnSP objects to this Request to the extent that it seeks documents created after July 1, 2022, as production of documents after that time would be unduly burdensome. The parties have generally agreed to end production as of July 1, 2022, unless a party shows a specific need for documents created later, which JJHCS has not done here.

SaveOnSP objects to this Request to the extent that it seeks documents that do not concern Janssen Drugs, CarePath, or SaveOnSP's services at issue in this action, as such documents are irrelevant to the claims or defenses in this action. SaveOnSP will not produce such documents.

SaveOnSP objects to this Request as not proportional to the needs of the case to the extent that it seeks all documents and communications beyond those identified during a reasonable search. The burden and expense of producing all such documents outweighs the marginal relevance of the material requested. SaveOnSP will not produce all such documents.

SaveOnSP will produce non-privileged documents identified during a reasonable search responsive to this Request.

**REQUEST NO. 88:** All documents and communications, including any white papers, research, or analysis, concerning efforts to switch medically stable patients to an alternative drug therapy for non-medical reasons. For the avoidance of doubt, responsive documents should include any actual or contemplated communications with pharmaceutical manufacturers concerning switching patients' medication for non-medical reasons.

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents that do not concern the subject matter of this Action, as such documents are irrelevant to the claims or defenses in this action. SaveOnSP will not produce such documents.

SaveOnSP objects to this Request to the extent that it seeks documents created after July 1, 2022, as production of documents after that time would be unduly burdensome. The parties have generally agreed to end production as of July 1, 2022, unless a party shows a specific need for documents created later, which JJHCS has not done here.

SaveOnSP objects to this Request to the extent that it seeks documents that do not concern Janssen Drugs, as such documents are irrelevant to the claims or defenses in this action. SaveOnSP will not produce such documents.

SaveOnSP objects to this Request as not proportional to the needs of the case to the extent that it seeks all documents and communications beyond those identified during a reasonable search. The burden and expense of producing all such documents outweighs the marginal relevance of the material requested. SaveOnSP will not produce all such documents.

SaveOnSP will produce non-privileged documents and communications responsive to this Request identified during a reasonable search related to Janssen Drugs.

**REQUEST NO. 89:** Documents sufficient to identify any Payor, Plan, corporation, partnership, firm, association, or government body or agency, that declined to contract for SaveOnSP's Services.

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents that do not concern the subject matter of this Action, as such documents are irrelevant to the claims or defenses in this action. SaveOnSP will not produce such documents.

 SaveOnSP objects to this Request to the extent that it seeks documents created after July 1, 2022, as production of documents after that time would be unduly burdensome. The parties have

generally agreed to end production as of July 1, 2022, unless a party shows a specific need for documents created later, which JJHCS has not done here.

SaveOnSP objects to this Request to the extent that it seeks documents outside of Save-OnSP's possession, custody, and control.

SaveOnSP objects to producing documents sufficient to identify any Payor, Plan, corporation, partnership, association, or government body or agency that has declined to contract with SaveOnSP, to the extent such documents are irrelevant to the claims or defenses in this action. Such entities may have declined to contract with SaveOnSP for any number of reasons wholly unrelated to JJHCS's claims or the issues in this action.

SaveOnSP has already agreed to produce documents responsive to JJHCS's RFP No. 33, which seeks documents and communications that SaveOnSP has received reflecting complaints, concerns, or inquiries about SaveOnSP's operations, services, and/or business model. To the extent a Payor, Plan, corporation, partnership, association, or government body or agency declined to contract with SaveOnSP due to complaints or concerns about its conduct at issue in this Action, SaveOnSP has already agreed to produce documents sufficient to show the identity of that Payor, Plan, corporation, partnership, association, or government body or agency. SaveOnSP will not produce further documents responsive to this Request.

**REQUEST NO. 90:** Documents sufficient to identify any Payor, Plan, corporation, partnership, firm, association, or government body or agency, that initially enrolled in the SaveOnSP Program but later terminated its relationship with SaveOnSP or ceased using SaveOnSP's services.

**RESPONSE:** SaveOnSP objects to this Request to the extent that it seeks documents that do not concern the subject matter of this Action, as such documents are irrelevant to the claims or defenses in this action. SaveOnSP will not produce such documents.

SaveOnSP objects to this Request to the extent that it seeks documents created after July 1, 2022, as production of documents after that time would be unduly burdensome. The parties have generally agreed to end production as of July 1, 2022, unless a party shows a specific need for documents created later, which JJHCS has not done here.

SaveOnSP objects to producing documents sufficient to identify any Payor, Plan, corporation, partnership, association, or government body or agency that terminated its relationship with SaveOnSP or ceased using SaveOnSP's services, to the extent such documents are irrelevant to the claims or defenses in this action. Such entities may have terminated their relationships with SaveOnSP or ceased using SaveOnSP's services for any number of reasons wholly unrelated to JJHCS's claims or the issues in this action.

SaveOnSP has already agreed to produce documents responsive to JJHCS's RFP No. 33, which seeks documents and communications SaveOnSP has received reflecting complaints, concerns, or inquiries about SaveOnSP's operations, services, and/or business model. To the extent a Payor, Plan, corporation, partnership, association, or government body or agency terminated its relationship with SaveOnSP or ceased using SaveOnSP's services due to complaints or concerns about its conduct at issue in this Action, SaveOnSP has already agreed to produce documents sufficient to show the identity of that Payor, Plan, corporation, partnership, association, or government body or agency. SaveOnSP will not produce further documents responsive to this Request.

9

Dated: August 21, 2023

By:  /s/      E. Evans Wohlforth, Jr.
E. Evans Wohlforth, Jr.
ROBINSON & COLE LLP
666 Third Avenue, 20th Floor
New York, NY 10174
212-451-2954
ewohlforth@rc.com

David Elsberg
Andrew R. Dunlap
Meredith Nelson
Elizabeth Snow
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
delsberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# JJHCS Ex. 5

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

**selendy
gay
elsberg**

Andrew R. Dunlap
Partner
212.390.9005
adunlap@selendygay.com

October 3, 2023          Choose an item.

**Via E-mail**

Sara Arrow
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
sarrow@pbwt.com

**Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear Sara,

        We write in response to your September 7 and 21, 2023 letters to the extent
they concern JJHCS's RFP No. 83.

        *First*, you asked that SaveOnSP investigate potential changes made to the
SaveOnSP Drug List in response to or in connection with the SaveOnSP Letters.
SaveOnSP has done so. Based on that investigation, SaveOnSP is not aware of a
health plan client that made changes to the SaveOnSP Drug List in response to or
in connection with the SaveOnSP Letters. SaveOnSP is aware of only one client
that changed its Drug List as to Janssen Drugs in 2023 for any reason: Premera
removed Stelara and Tremfya effective as of July 1, 2023.

        *Second*, you "accept" that SaveOnSP's document production in response to
RFP No. 83 will include (1) all 2023 Drug Lists; and (2) documents sufficient to
show any changes made to those Drug Lists in 2023 to the extent that those
changes concern inclusion or exclusion of Janssen Drugs. SaveOnSP will produce
such documents. We will use the following search terms over the custodial docu-
ments of Melanie Jerred between July 1, 2022 and October 1, 2023 to identify the
second group of documents:

- (Premera AND (remove OR change)) W/25 (Janssen OR JJHCS OR
  Stelara OR Tremfya)

Sara Arrow
October 3, 2023

- (Premera AND ("drug list" OR list)) W/25 (Janssen OR JJHCS OR Stelara OR Tremfya)

We reserve all rights and are available to meet and confer.

Best,

/s/ Andrew Dunlap

Andrew R. Dunlap
Partner

# JJHCS Ex. 6

David Elsberg
Andrew R. Dunlap
Meredith Nelson
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

E. Evans Wohlforth, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.,<br><br>Plaintiff,<br><br>v.<br><br>SAVE ON SP, LLC,<br><br>Defendant. | Civil Action No. 22-2632 (JMV) (CLW)<br><br>**DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

To:    Jeffrey J. Greenbaum, Esq.
       SILLS CUMMIS & GROSS, P.C.
       One Riverfront Plaza
       Newark, New Jersey 07102
       973-643-7000

1

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New

*Attorneys for Plaintiff Johnson & Johnson
Health Care Systems Inc.*

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26 and 34,

Defendant Save On SP, LLC ("SaveOnSP") requests Plaintiff Johnson & Johnson Health Care

Systems Inc. ("JJHCS"), to produce for inspection and copying the documents listed in these Re-

quests, to the office of the undersigned within 30 days of being served or at a time and place mu-

tually agreed by the parties or ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that this demand for production of documents

shall be deemed continuing in nature so as to require supplemental responses if Plaintiff or Plain-

tiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's

responses are served.

Dated:  November 11, 2022          By:  /s/ Andrew R. Dunlap
                                        David Elsberg
                                        Andrew R. Dunlap
                                        Meredith Nelson
                                        SELENDY GAY ELSBERG, PLLC
                                        1290 Avenue of the Americas
                                        New York, NY 10104
                                        212-390-9000
                                        deslberg@selendygay.com
                                        adunlap@selendygay.com
                                        mnelson@selendygay.com

                                        E. Evans Wohlforth, Jr.
                                        GIBBONS P.C.
                                        One Gateway Center
                                        Newark, NJ 07102-5310

2

973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

## DEFINITIONS

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses.

3.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.      "Action" means this litigation styled as "*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (JMV) (CLW).

6.      "Affordable Care Act" means the Patient Protection and Affordable Care Act, Pub. L. 148, 124 Stat. 119.

7.      "All," "any," and "each" mean any and all.

8.      "And" and "or" are construed both conjunctively and disjunctively.

9.      "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

4

10.     "CarePath Care Coordinator" means any person or entity encompassed by that term as used on CarePath's "Contact Us" webpage,[1] as well as any person responsible for communicating with patients who contact CarePath via an advertised help number (*e.g.*, 877-CarePath).

11.     "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

12.     "Complaint" means JJHCS's May 4, 2022 Complaint [ECF No. 1] or any subsequently amended Complaint in this Action.

13.     "Copay Accumulator Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

14.     "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

15.     "Copay Maximizer Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay

---

[1] *See* Contact Us, https://www.janssencarepath.com/patient/contact-us (last visited October 25, 2022).

assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maxi-mizer."

16.    "Document" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

17.    "ESI" means "electronically stored information" as defined in the Federal Rules of Civil Procedure.

18.    "Essential Health Benefit" means, in the context of prescription drug benefits at issue in this case, (a) a prescription drug benefit that satisfies the requirement for a plan to provide essential prescription drug benefits under the Affordable Care Act or that is treated as such by a plan;[2] and (b) any definition JJHCS ascribes to the term "essential health benefit" as used in the Complaint.

19.    "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

20.    "Including" means including but not limited to.

21.    "Janssen" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents,

---

[2] 45 C.F.R. §§ 156.122, 156.115.

representatives, directors, officers, employees, committees, attorneys, accountants, and all persons

or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc.,

Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

22.     "Janssen Drug" means any Specialty Drug manufactured or sold by Janssen from

any time for which patients may receive copay assistance, including BALVERSA, DARZALEX,

DARZALEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, REMICADE, RYBREVANT,

SIMPONI, STELARA, TRACLEER, TREMFYA, UPTRAVI, and ZYTIGA, as well as any other

specialty drugs that JJHCS asserts are at issue in this Action.

23.     "JJHCS's Employee Health Plans" means any health plan offered by JJHCS or

Janssen to its employees.

24.     "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all pre-

decessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or depart-

ments, agents, representatives, directors, officers, employees, committees, attorneys, accountants,

and all persons or entities acting or purporting to act on behalf or under the control of Johnson &

Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil

Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals,

Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development,

LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc.,

Janssen BioPharma LLC, and Janssen Research & Development LLC.

25.     "JJHCS Access Group" means the team operating within and for JJHCS under this

or a substantially similar name (*i.e.*, Access Group, Access Team, or Access Division).

26.     "JJHCS Health Economics Group" means the team operating within and for JJHCS under this or a substantially similar name (*i.e.*, Health Economics Group, Health Economics Team, or Health Economics Division).

27.     "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer, in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of such an entity.

28.     "JJHCS Outcome Group" means the team operating within and for JJHCS under this or a substantially similar name (*i.e.*, Outcome Group, Outcome Team, or Outcome Division).

29.     "Lash Group" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

30.     "Non-Essential Health Benefits" means, in the context of prescription drug benefits at issue in this case, (a) any prescription drug benefit covered by a plan in excess of those necessary for a plan to satisfy the requirements for providing essential prescription drug health benefits under the Affordable Care Act[3] and designated by the plan as a non-essential health benefit; and (b) any definition JJHCS ascribes to the term "non-essential health benefits" as used in the Complaint.

31.     "Parties" means "SaveOnSP" and "JJHCS."

32.     "Patient" means a natural person prescribed or eligible to be prescribed any Janssen Drug, whether or not they use CarePath or are a participant in a health plan advised by SaveOnSP.

_____

[3] *See* 45 C.F.R. §§ 156.122, 156.115.

33.    "Person" means a natural person or legal entity including any business or govern-mental entity or association.

34.    "Regarding" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidenc-ing, identifying, in connection with, indicating, in respect of, involving, memorializing, mention-ing, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, re-porting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touch-ing upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

35.    "Request" means any of these Requests for Production.

36.    "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, represent-atives, directors, officers, employees, committees, attorneys, accountants, and all persons or enti-ties acting or purporting to act on behalf or under the control of Save On SP, LLC.

37.    "SaveOnSP IPBC Video" means the IPBC and SaveOnSP training video created by Express Scripts as defined in Complaint ¶ 9.

38.    "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

39.    "Stelara" means the Janssen Drug sold under that name.

40.    "Tremfya" means the Janssen Drug sold under that name.

41.    "TrialCard" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

42.    "You" and "Your" means JJHCS.

## INSTRUCTIONS

1.    These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 34(a)(1).

2.    These Requests seek production of nonprivileged material. Fed. R. Civ. P. 26(b)(1).

3.    These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4.    For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 34(b)(2)(C).

5.    If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

6.    If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest. Fed. R. Civ. P. 34(b)(2)(C).

7.    If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 26(b)(5)(A)(ii), including by indicating whether any document exists regarding the information

requested and stating, to the extent the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked, Local Rule 34.1.

8.      If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction, the reason for its destruction, the name of the person who requested or authorized its destruction, and the name of the person who destroyed it.

9.      Produce documents as they are kept in the usual course of business. Fed. R. Civ. P. 34(b)(E)(i). For each document, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

10.     Produce electronically stored information in the form and manner required by any agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

11.     Produce each document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

12.     Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notations, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

13.     These Requests are deemed continuing. If after responding to any Request you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).

## TIME PERIOD

Unless otherwise specified, these Requests cover from and including January 1, 2017, through the present.

## REQUESTS

1.      From January 1, 2009 through the present, Documents sufficient to show JJHCS's organizational structure, including organizational charts.

2.      From January 1, 2009 through the present, Documents sufficient to show Janssen's organizational structure, including organizational charts.

3.      From January 1, 2009 through the present, Documents sufficient to show the organizational structure of each JJHCS Hub Entity.

4.      From January 1, 2009 through the present, Documents sufficient to show the organizational structure of any group or division within JJHCS, Janssen, or any JJHCS Hub Entity involved in developing, managing, marketing, or administering CarePath or any other copay assistance program offered for Janssen Drugs, and to identify their employees.

5.      From January 1, 2009 through the present, Documents sufficient to show the organizational structure of JJHCS's Health Economics, Access, and Outcome Groups and to identify employees working in those groups.

6.      From January 1, 2009 through the present, Documents sufficient to show the organizational structure of the drug product team for each Janssen Drug, and to identify employees working on those teams.

7.      From January 1, 2009 through the present, documents sufficient to identify all natural persons with decisionmaking authority over the sale or marketing of Janssen Drugs.

8.      All Documents and Communications with or regarding SaveOnSP.

12

9.      All Communications by JJHCS or Janssen with any Patient regarding SaveOnSP, including any Documents regarding those Communications.

10.     All Documents and Communications regarding any presentation, document, or information regarding SaveOnSP referenced in the Complaint, including the "SaveOnSP IPBC Video" and the materials referenced in Complaint ¶¶ 82-88.

11.     From January 1, 2009 through the present, all Documents and Communications regarding the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

12.     From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) JJHCS's decision to revise any of its CarePath terms and conditions for any Janssen Drug; and (d) JJHCS's understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

13.     From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

14.     From January 1, 2015 through the present, all Documents and Communications regarding JJHCS's or any JJHCS Hub Entity's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under

13

the Affordable Care Act and its regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

15.    All Documents and Communications regarding SaveOnSP's communications with Patients regarding CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 60-67, 109.

16.    All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 72.

17.    All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

18.    All Documents and Communications regarding any allegedly misleading or confusing communications between SaveOnSP and Patients, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 13, 75-77, 85-88.

19.    All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

20.    All Documents and Communications regarding any publicly distributed material (including, for example, articles, op-eds, white papers, and online postings) regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services, including Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect involvement with such material and JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect funding of the authors, publishers, or distributors of such material.

21.     All Documents and Communications regarding any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services.

22.     All Documents and Communications regarding any alleged harm caused by Save-OnSP to any Patient by allegedly making their healthcare more expensive, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

23.     All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

24.     All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than Care-Path, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

25.     All Documents and Communications regarding any alleged harm caused by Save-OnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 110, 115.

26.     All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

27.     All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

28.     From January 1, 2009 through the present, for each Janssen Drug for each year, Documents sufficient to show:

15

a.  all Patients receiving the Janssen Drug;

b.  the number of fills of the Janssen Drug received by each such Patient;

c.  the dosage of the Janssen Drug received by each such Patient for each fill;

d.  the projected number of Patients, average number of fills, and average dosage for the Janssen Drug;

e.  the cost to manufacture the Janssen Drug;

f.  the sales and marketing budget for the Janssen Drug;

g.  the price of the Janssen Drug;

h.  the revenue received by JJHCS from the Janssen Drug;

i.  all Patients enrolled in the CarePath program for the Janssen Drug;

j.  the dates on which each Patient was enrolled in CarePath;

k.  the amounts of copay assistance funds that JJHCS offered to each Patient enrolled in CarePath;

l.  the Janssen Drugs for which each Patient enrolled in CarePath received copay assistance;

m.  all copay assistance payments that JJHCS made to or on behalf each Patient enrolled in CarePath; and

29.  From January 1, 2009 through the present, for each Janssen Drug for each year, all Documents and Communications regarding:

a.  JJHCS's determination of the amounts of copay assistance funds that JJHCS offered to Patients enrolled in CarePath, including the determination of the maximum program benefit per calendar year for the Janssen Drug;

16

b.    JJHCS's budget for CarePath, including the sales and marketing budget;

c.    JJHCS's actual and projected annual costs for CarePath;

d.    JJHCS's use of or accounting for unused CarePath funds;

e.    the impact of the Affordable Care Act on JJHCS's CarePath budget or funding, including the impact of laws and regulations regarding out-of-pocket maximums;

f.    JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath;

g.    the impact of CarePath on Janssen's sales of any Janssen Drug;

h.    the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

i.    JJHCS's or Janssen's actual and projected return on investment for CarePath; and

j.    any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by Save-OnSP.

30.    From January 1, 2009 through the present, for each year for each Janssen Drug, all Documents and Communications regarding the basis for Janssen's decision to raise or lower the price of the Janssen Drug, including labor or manufacturing costs or the increase in efficacy of the Janssen Drug.

31.    All Documents and Communications regarding JJHCS's attempts to limit or eliminate the amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs, including Documents and Communications regarding JJHCS's attempts to limit or eliminate the

17

availability of CarePath copay assistance funds available to Patients enrolled in health plans advised by SaveOnSP.

32.     All Documents and Communications regarding any offer by JJHCS to provide to any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance funds available to a Patient.

33.     All Documents and Communications regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans.

34.     From any time, all Documents and Communications regarding JJHCS's or Janssen's negotiations or agreements regarding the potential use of SaveOnSP's services, or the services of any Copay Maximizer Service or Copay Accumulator Service, for JJHCS's Employee Health Plans, including JJHCS's abandonment of those negotiations or agreements.

35.     Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coordinators.

36.     From January 1, 2009 through the present, Documents sufficient to show the economic terms of JJHCS's retention of or agreements with any JJHCS Hub Entity or CarePath Care Coordinator regarding CarePath, including any assessment of the fair market value of those services.

37.     From January 1, 2009 through the present, documents sufficient to show the percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs.

38.     From January 1, 2009 through the present, all Documents and Communications received by JJHCS from any JJHCS Hub Entity or sent by JJHCS to any JJHCS Hub Entity regarding SaveOnSP or CarePath.

39.     All Documents and Communications received by JJHCS from any CarePath Care Coordinator regarding SaveOnSP.

40.     All Communications by any JJHCS Hub Entity or CarePath Care Coordinator with any Patient regarding SaveOnSP, including any Documents regarding those Communications and talk tracks or scripts prepared for use during those Communications.

41.     From January 1, 2015 through the present, all Documents and Communications relating to Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's return on investment for copay assistance dollars.

42.     From January 1, 2015 through the present, all Documents and Communications relating to JJHCS's or any JJHCS Hub Entity's understanding of the terms "copay accumulator" and "copay maximizer."

43.     All Documents and Communications concerning non-medical switching by participants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

44.     To the extent not requested above, Documents and Communications of any JJHCS Hub Entity or CarePath Care Coordinator regarding the topics of all Requests listed above.

45.     JJHCS's, Janssen's, any JJHCS Hub Entity's, and any CarePath Care Coordinator's document retention policies.

46.     Complete data dictionaries for any data that You produce.

19

47.    From any time, all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP, including in response to subpoenas served in this Action.

48.    To the extent not requested above, from any time, all Documents and Communications upon which you may rely in this Action.

# JJHCS Ex. 7

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza Newark,
New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for Plaintiff Johnson & Johnson Health Care
Systems Inc.*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.,<br><br>     Plaintiff,<br><br>  v.<br><br>SAVE ON SP, LLC,<br><br>     Defendant. | Civil Action No. 22-2632 (JMV) (CLW)<br><br>**PLAINTFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS** |

14425583

**GENERAL OBJECTIONS**

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the

General Objections below into its specific objections to each Request, whether or not each such

General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing.  It reserves the right to

supplement, amend, modify, or correct its responses under Rule 26(e) should it discover

additional information or grounds for objections at any time prior to the conclusion of this

Action.  The following responses and objections are based upon information known at this time.

1.      JJHCS objects to the Requests to the extent that they seek documents or

information protected from disclosure by a privilege including, without limitation, the First

Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense

privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules

of the Court, and relevant case law.  The inadvertent production by JJHCS of information,

documents, materials, or things covered by any privilege or doctrine shall not constitute a

waiver of any applicable privilege or doctrine, including but not limited to, objections on the

basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or

admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.      JJHCS objects to the Requests to the extent that they seek documents or

information that are not relevant to a claim or defense or to the subject matter of this litigation.

Any response JJHCS makes to any Request shall not be deemed an admission that the response,

information, document, or thing produced is relevant to a claim or defense or to the subject

matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence,

is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

14425583

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.      JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.     JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.     JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.     JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

13.     JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

### OBJECTIONS TO DEFINITIONS

1.      JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.

2.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to

include attorneys and accountants who may be outside of JJHCS's possession, custody, and

control.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not

proportional to the needs of the case to extent it purports to include "any and all predecessors

and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or]

representatives" or purports to include entities and persons acting or purporting to act on behalf

of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc.,

including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil

Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech,

Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals,

Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and

Janssen Research & Development LLC.

      3.     JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and

as irrelevant to the extent it purports to include entities other than those responsible for

administering CarePath during the relevant Time Period.  JJHCS further objects to the

definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it includes "any and all predecessors and successors in interest, assignees, parents,

subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers,

employees, committees, attorneys, accountants and all persons or entities acting or purporting to

act on behalf" of those entities.  JJHCS further objects on the ground that the phrase

"administer, in whole or in part, CarePath" is vague and ambiguous.  JJHCS further objects to

the extent the term is used to seek documents and communications in the possession of entities

other than JJHCS.

      4.     JJHCS objects to the definition of the term "Lash Group" as overbroad, unduly

4

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of The Lash Group, Inc."  JJHCS further objects to the extent the term is used to seek

documents and communications in the possession of entities other than JJHCS.

     5.     JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of TrialCard Inc."  JJHCS further objects to the extent the term is used to seek documents and

communications in the possession of entities other than JJHCS.

## SPECIFIC RESPONSES AND OBJECTIONS

### Request No. 49

All Documents and Communications regarding efforts by JJHCS, Janssen, a JJHCS Hub
Entity, or other entity working on any of their behalves to (a) identify (through non-litigation
means) individuals enrolled in CarePath as members of SaveOnSP-advised plans; or (b) to
enforce CarePath's terms and conditions against those individuals, including without limitation
by reducing the amount of copay assistance funds provided to those individuals or by
disenrolling those individuals from CarePath.

### Response to Request No. 49

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by any privilege including, without limitation, the First Amendment

privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the

common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court,

and relevant case law.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to show (i) final versions of reports received by JJHCS from external

vendors in response to JJHCS's request that they analyze CarePath enrollment and claims data to

assess whether it is possible to identify individuals enrolled in SaveOnSP; and (ii) JJHCS's

internal analyses to assess whether it is possible to identify individuals enrolled in accumulator

or maximizer programs generally.  JJHCS will further produce documents sufficient to show any

attempts to enforce CarePath's terms and conditions against those individuals to the extent that

any such documents exist.  Otherwise, JJHCS will not search for or produce documents

responsive to this Request.

Dated: July 24, 2023

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:      /s/Jeffrey J. Greenbaum
         JEFFREY J. GREENBAUM
         KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

6

14425583