

| | | |
|---|---|---|
| | **Freda Wolfson**<br>Chief U.S. Dist. Judge (ret.)<br>Partner | One Lowenstein Drive<br>Roseland, New Jersey 07068<br><br>T: (862) 926-2708<br>F: (973) 597-2400<br>E: fwolfson@lowenstein.com |

April 18, 2024

<u>**LETTER ORDER**</u>

<u>VIA ECF</u>
TO ALL COUNSEL OF RECORD

      RE:    *Johnson & Johnson Health Care Systems, Inc. v. SaveOnSP, LLC*
               <u>Civ. Action No.: 22-2632 (JKS) (CLW)</u>

Counsel:

      Before me is Plaintiff Johson & Johnson Health Care Systems, Inc.'s ("JJHCS") motion to withdraw Exhibit 81 (Bates Stamp JJHCS_00008989), which was filed in connection with the parties' joint letter discovery dispute dated October 25, 2023 ("Joint Letter"). (ECF No. 165.) Judge Waldor has referred the motion to me in my role as the Special Master. Defendant SaveOnSp, LLC ("SaveOn") has opposed JJHCS's motion. I heard oral argument on April 3, 2024.

      As a brief summary, the parties filed the Joint Letter, under seal, requesting the Court to resolve a dispute relating to production of documents of twelve proposed custodians. Exhibit 81 is an email chain with portions of the emails redacted by JJHCS on privilege grounds. Exhibit 81 was produced in April 2023. There is no dispute that JJHCS was aware that the Exhibit was filed in support of SaveOn's position in the Joint Letter. In fact, JJHCS, itself, referred to the Exhibit in its section of the Joint Letter, (*see* Joint Letter, pp. 22, 25), as well as SaveOn (*see id.* pp. 8, 14).

      Over a month later, on December 6, 2023, pursuant to the procedures set forth in the Discovery Confidentiality Order (*see* ECF No. 62), JJHCS sent a request to SaveOn to destroy Exhibit 81, claiming that the entire document was privileged and/or subject to the protection of work product and had been inadvertently produced. By December 18, 2023, SaveOn had complied with the request and destroyed all copies of Exhibit 81 in its possession. However, the Exhibit remained sealed on the Court's docket.

      Despite destroying Exhibit 81, on January 26, 2024, by way of a letter, SaveOn informed JJHCS that JJHCS had wavied any privilege over the document because it filed the Exhibit in the first instance and failed to seek to remove it for over three months. In response, JJHCS argues that while Exhibit 81 was filed on the Court's docket, it was done so under seal, and that the Magistrate Judge recently permenently sealed the document

1

from public view.[1] Moreover, JJHCS contends that SaveOn is precluded from asserting wavier since it did not do so within a reasonable time after receiving notice of the inadvertent disclosure. Finally, JJHCS maintains that contrary to SaveOn's position, JJHCS has not waived its assserted privilege.

Because Defendant has challeneged Plaintiff's assertion of privilege as to all portions of Exhibit 81, my first inquiry is to determine whether any portion of the Exhibit is protected by work product doctrine or otherwise privileged.

I.  **Whether Exhibit 81 is a Privileged Document**

The work product doctrine precludes production of "materials prepared by an attorney, or an attorney's agent, in anticipation of or for litigation," as well as "[a]n attorney's mental impressions, conclusions, opinions or legal theories." *In re Diet Drugs Prods. Liab. Litig.*, No. 1203, 2001 U.S. Dist. LEXIS 5494, at *11-12 (E.D. Pa. Apr. 19, 2001) (citing *In re Ford Motor Co. v. Kelly*, 110 F.3d 954, 967 (3d Cir. 1997), abrogated on other grounds by *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)); *see also* Fed. R. Civ. P. 26(b)(3). Therefore, the doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003)(quotations and citations omitted). The party asserting the protection of the work product doctrine carries the burden of demonstrating that the doctrine applies. *In re Gabapentin Litig.*, 214 F.R.D. 178, 183 (D.N.J. 2003).

Courts apply a two-step inquiry to determine whether a document is considered work product. *Id.* at 183-84. The first step is to ascertain whether the document in question was created "in anticipation of litigation," and second, whether the document was created "primarily for the purpose of litigation." *Id; In re Am. Med. Collection Agency, Inc.*, No. 19-2904, 2023 U.S. Dist. LEXIS 223286, at *32 (D.N.J. Oct. 16, 2023). Importantly, a party must establish more than just the "remote prospect" of litigation in satisfying the "in anticipation of litigation" prong. *Id.* at 183. In that regard, the party must show the "existence of an identifiable specific claim or impending litigation at the time the materials were prepared." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 473 (E.D. Pa. 2005). "The mere involvement of, consultation with, or investigation by an

---

[1] During the pendency of this motion, SaveOn also issued to JJHCS its own clawback request: the withdrawal of Exhibit 22 to its March 20, 2024 opposition to JJHCS's motion to compel supplemental interrogatory responses, which was not electronically filed on the Court's ECF docket. Based on this clawback request, in a letter dated March 29, 2024, JJHCS argues that SaveOn should not be able to rely on waiver here, because it also has failed to take reasonable steps to prevent inadvertent disclosure. I do not find that this issue is relevant to my present analysis.

2

attorney does not, in itself, evidence the 'anticipation of litigation.'" *In re Gabapentin Litig.*, 214 F.R.D. at 183.

In determining whether a document was created primarily for the purpose of litigation, courts look to the motive behind the document's creation. *In re Am. Med.*, 2023 U.S. Dist. LEXIS 223286, at *33. "[T]he proper inquiry is whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Gabapentin Litig.*, 214 F.R.D. at 183 (quotations and citations omitted). "Documents created for other purposes that prove useful in subsequent litigation are not attorney work product; similarly, documents that are routinely prepared in the ordinary course of business are outside the scope of work product protection." *Id.* (citing *Hardy v. New York News, Inc.,* 114 F.R.D. 633, 646 (S.D.N.Y. 1987)). Emails can generally be protected by work product doctrine. *See Goldenberg v. Indel, Inc.,* No. 09-5202, 2012 U.S. Dist. LEXIS 199516, at *13 (D.N.J. May 31, 2012).

Finally, even if the work product doctrine is applicable, courts may nevertheless order factual material produced "upon a showing of substantial need and inability to obtain the equivalent without undue hardship." *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981).

Here, having reviewed the unredacted version of Exhibit 81, it was not evident on the face of the document that the entire email chain may be protected from disclosure by the work product doctrine. The email chain begins with an email from Mr. John Paul Franz, who is not an attorney, to Ms. Savaria Harris, an in-house counsel. Based on the content of the email, it was difficult to ascertain whether the email communications were generated in anticipation of litigation. However, pursuant to my request for additional information, Plaintiff's counsel represents in its Supplemental Letter Brief that the email chain involves litigation- and damages-related analysis that non-attorneys conducted at the request of counsel to support the drafting of JJHCS's Complaint in this matter.

During the hearing I stated, and I reiterate here, that I am satisfied that the email communications in Exhibit 81 are protected work product. First, based upon counsel's representation, the analysis undertook by certain employees of Johnson & Johnson was directed by the in-house counsel for the purpose of this litigation, *i.e.*, drafting of complaint. Moreover, because of such a purpose, the information revealed in the emails, both in redacted and unredacted versions, was not prepared in the ordinary course of business. And, SaveOn has not shown that it has a substantial need and inability to obtain equivalent without undue hardship. In fact, on this point, I made a finding, during the hearing, that SaveOn may indeed be able to obtain the factual information contained in the email chain elsewhere during discovery. Accordingly, I find that Exhibit 81 is protected work product.

**II.     Whether Plaintiff Waived Its Right to Assert Work Product**

"A party may waive privilege, whether attorney-client or work product, through various actions including purposeful disclosure, partial disclosure, and careless disclosure." *In re Am. Med.*, 2023 U.S. Dist. LEXIS, at *50 (citation omitted). A wavier of the privilege occurs if one voluntarily discloses the privileged communication to a third party, *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1424 (3d Cir. 1991), or fails to take reasonable measures to ensure the confidentiality of communications with counsel. *See Kaufman v. Sungard Invest. Sys.*, Civ. No. 05-1236, 2006 U.S. Dist. LEXIS 28149, at *9 (D.N.J. May 10, 2006); *Smithkline Beecham Corp. v Apotex Corp.*, 232 F.R.D. 467, 479 (E.D. Pa. 2005) (stating that mass dissemination of purportedly confidential communications can destroy an assertion of the privilege).

In the context of work product, "[t]he predicate of the waiver inquiry . . . [is] whether the material was disclosed to an adversary." *Maldonado v. New Jersey ex rel. Administrative Office of Courts-Probation Division*, 225 F.R.D. 120, 131 (D.N.J. 2004). In other words, if information protected by the work-product doctrine is disclosed to an adversary, the protection of the work-product doctrine is waived. *Westinghouse Elec. Corp.*, 951 F.2d at 1428.

A disclosure of materials otherwise protected by work product "does not operate as a waiver . . . if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error . . . ." *Wise v. Washington Cnty.*, No. 10-1677, 2013 U.S. Dist. LEXIS 128731, at *9 (W.D. Pa. Sept. 10, 2013)(quoting Fed. R. Evid. 502(b)). In that connection, courts in this district also consider the following factors: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be served by relieving the party of its error." *Ciba-Geigy Corp. v. Sandoz Ltd.*, 916 F. Supp. 404, 411 (D.N.J. 1995)(citations and quotations omitted).

Because the work product doctrine protects information from opposing parties, rather than from all others outside a particular confidential relationship, the party asserting waiver of work product protection—instead than the party asserting the protection—has the burden of establishing waiver. *Maldonado*, 225 F.R.D. at 132; see *Occidental Chem. Corp. v. 21st Century Fox Am.*, Inc., No. 18-11273, 2023 U.S. Dist. LEXIS 33926, at *131 (D.N.J. Feb. 28, 2023). However, "[t]he party resisting a waiver argument has the burden of demonstrating that the *Ciba-Geigy* factors weigh in its favor." *Jame Fine Chems., Inc. v. Hi-Tech Pharmacal Co.*, No. 00-3545, 2006 U.S. Dist. LEXIS 58235, at *7 (D.N.J. Aug. 16, 2006)(citing *Ciba-Geigy*, 916 F. Supp. at 412).

Here, at the outset, because JJHCS produced Exhibit 81 to its adversary, there is little dispute that a wavier has occurred. However, that does not end the inquiry. I next examine the factors outlined above to determine whether the waiver was inadvertent. First, I find that the waiver was unintentional. There is no evidence in the record that indicates that counsel for JJHCS intentionally waived the protection. Rather, I accept counsel's representation that they took reasonable steps to prevent any privileged documents from being produced by reviewing numerous potential privileged documents, and out of thousands of them, the two-page Exhibit at issue here was inadvertently produced. In that regard, the extent of disclosure is also minimal.

The primary dispute centers on the timeframe within which JJHCS acted to rectify the error. While this factor is a much closer call, I cannot find that JJHCS's delay in issuing the clawback notice was excessive—once it became aware of Exhibit 81's privileged nature. Despite the knowledge that Exhibit 81 was submitted in connection with the parties' Joint Letter to the Court, counsel represented that they were unaware that the unredacted portions of the Exhibit constituted work product or were otherwise privileged. It was not until December 2023, following discussions between counsel and their clients, that they determined the entire email chain fell under the purview of work product. Subsequently, counsel promptly issued a clawback notice to SaveOn. I am satisfied that any delay was attributed to fact the counsel was unaware from April 2023 to December 2023, that Exhibit 81 was work product. Although SaveOn faults JJHCS's counsel for failing to conduct a timely investigation, as I commented during the hearing, on their face, it was not self-evident that the unredacted sections of the email communications were generated in connection with the current litigation. But, as I have found, upon further inquiry, the entire email string is protected work product.

After an application of the factors, I conclude that JJHCS did not waive its work product privilege because its production of Exhibit 81 to SaveOn was inadvertent, and therefore, excusable. Since SaveOn has already destroyed all copies of the Exhibit in its possession, I direct JJHCS to request the Clerk's Office to strike Exhibit 81 from the Court's Docket.

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson (ret.)
Special Master