**Freda Wolfson**
Chief U.S. Dist. Judge (ret.)
Partner

One Lowenstein Drive
Roseland, New Jersey 07068

T: (862) 926-2708
F: (973) 597-2400
E: fwolfson@lowenstein.com

April 25, 2024

# LETTER ORDER

<u>*VIA ECF*</u>
TO ALL COUNSEL OF RECORD

    RE:    *Johnson & Johnson Health Care Systems, Inc. v. SaveOnSP, LLC*
               **Civ. Action No.: 22-2632(JKS)(CLW)**

Counsel:

On Janauary 24, 2024, I held oral argument on three discovery motions, two of which were pending before Judge Waldor when I was appionted as a special master in this case. Thereafter, I rendered a written decision on February 6, 2024, resolving those discovery disputes (the "Opinion"). (*See* Dkt. 192.) In the instant matter, Defendant SaveOnSP, LLC ("Defendant") moves for clarification and reconsideration of certain portions of my decision. Plaintiff Johnson & Johnson Health Care Systems, Inc. ("Plaintiff") opposes the motion. Having reviewed the parties' submissions, for the reasons set forth herein, Defenant's motion is denied.

I need not belabor the facts as the parties are well aware of them. As a brief summary, Defendant moved to compel Plaintiff to 1) search for and produce documents regarding its drafting, understanding, and enforcement of its CarePath Terms and Conditions ("T&C"), and 2) financial information from affiliates of Johnson & Johnson ("J&J") on the profitability of Janssen drugs and how these drugs prices are calculated. Essentially, I found that drafting documents related to the T&Cs of the CarePath program

1

and its predecessors prior to 2016 are relevant, and documents and communications related to the enforcement of the T&Cs of the CarePath program are also relevant. However, as to financial documents of Janssen drugs, I found that the communications of CarePath's budgetary decisions are not relevant to Defendant's defenses, including mitigation; I did, however, find that the viability of CarePath is a relevant topic which Defendant may explore. Additionally, I rejected Defendant's argument that documents related to J&J's return on investment from CarePath are relevant, and similarly, I was not convinced that the documents related to year-to-year pricing of Janssen drugs are relevant.

I first address Defendant's request for clarification. "The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *Lynch v. Tropicana Prods.*, No. 11-07382, 2013 U.S. Dist. LEXIS 128410, at *3-4 (D.N.J. Sep. 3, 2013)(internal citations and quotations omitted); *Engers v. AT&T Corp.*, No. 98-3660, 2006 U.S. Dist. LEXIS 85117, at *16 (D.N.J. Nov. 20, 2006)(granting motion for clarification where "[t]he Court neglected to specify [in its order] that Count Six was dismissed with prejudice," but the text of the Court's opinion stated "that such dismissal was with prejudice").

Here, Defendant seeks three clarifications of the Opinion. The first request relates to my findings on J&J's enforcement of CarePath eligibility. In my Opinion, I specifically limited discovery on the company's enforcement to only instructions and policy concerning eligibility criteria set forth in the following provision of the relevant consumer agreements: "may not be used with any other coupon, discount, prescription savings

2

card, free trial, or other offer" ("May-Not-Use Provision"). (Opinion at 13.) Despite the clear language in this regard, Defendant states that it understood that this ruling applies to *all* CarePath eligibility criteria, reasoning that during the hearing, it appears that I commented that other eligibility criteria, including criteria listed in the May-Not-Use Provision, are relevant as well. I disagree. As I indicated in the Opinion, I considered factors such as proportionality and burden in limiting the criteria to those in the May-Not-Use Provision and to those that are the subject of this suit. All other criteria are not the bases for Plaintiff's claims. Furthermore, I considered, and rejected, Defendant's argument centered on selective enforcement, and therefore, I declined to include other criteria, such as age or Medicare status. At this juncture, Defendant has presented no other evidence that would lead me to change that finding. Accordingly, I need not clarify, nor will I reconsider my decision in this context.

The second request focuses on production of documents on CarePath's viability, which I found to be relevant. Defendant now seeks clarification that viability documents that also bear on the program's budget and investment returns should likewise be relevant. Indeed, Plaintiff has agreed that if it identifies responsive, non-privileged documents discussing both relevant topics (*e.g.*, viability) and topics on budget and return on investment communications, it will produce those documents. Beyond that, there is no ambiguity in my Opinion of this aspect. I rejected Defendant's request for these topics because they are irrelevant to Plaintiff's claims. Although Defendant argues that budget and investment communications may be relevant to CarePath's financial viability, I remain unconvinced, particularly in light of Plaintiff's agreement that any

3

budgetary and investment return communications that also touch upon viability will be produced. If the parties cannot agree on how to identify documents that are relevant to CarePath's viability, they may bring that dispute to my attention; however, I will not broaden my ruling at this time.

Finally, Defendant seeks clarification that Plaintiff must produce documents containing information sufficient to quantify the monetary benefit that Defendant generated for Plaintiff, such as data showing the revenue that Plaintiff received from drug sales by members of Defendant's advised plans. Defendant reasons that these documents will allow it to analyze the dollar figure necessary to offset Plaintiff's purported damages. No clarification is necessary. On this issue, in my Opinion, I permitted Defendant to take discovery on whether more patients are taking Janssen drugs as a result of being on the SaveOnSp Program, but I disallowed Defendant to obtain any financial documents to show the profits derived from selling Janssen drugs. Although Defendant is seeking this information to refute Plaintiff's damages calculation, I am not inclined to permit such discovery at this time, because those financial documents do not relate to patient adherence. I have insufficient information, based on the parties' briefing, to determine the relevance of the requested discovery.

Next, I will address the reconsideration aspect of Defenant's motion. The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986) (citation omitted). Consistent with that purpose, under Local Civil Rule 7.1(i), the moving party must demonstrate either: "(1) an intervening change

4

in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Andreyko v. Sunrise Sr. Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014) (alteration in original)(citations omitted).

Defendant asks that I reconsider my ruling on budgetary communications to include discovery on the reasons why J&J set the annual maximum amounts of copay assistance for the drugs at issue at the levels that it did, and why J&J chose to maintain those levels after learning of Defendant's services. Defendant reasons that these documents are relevant to its mitigation defense. This argument is not new; indeed, in its previous motion, citing as relevant to its defenses, Defendant sought communications and documents regarding internal discussions of changes that J&J made to CarePath's budget. I rejected that argument, finding that Plaintiff has already produced certain documents reflecting budgetary changes to CarePath and that internal communications about why certain changes were or were not implemented are irrelevant to Defendant's defense.

To reiterate, to mount its mitigation defense, Defendant must show that Plaintiff failed to take reasonable mitigating measures. *See VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 299 (3d Cir. 2014). To do so, Defendant does not require communications as to why Plaintiff or J&J did not make certain decisions or vice versa; rather, it will need evidence as to actual changes that occurred and argue that Plaintiff failed to take certain measures to mitigate. It matters not—for mitigation purposes—how Plaintiff came to those budgetary decisions, assuming of course that at the time when Plaintiff was taking

5

action, it was aware of Defendant's program. Aside from the fact that I already considered this issue, none of the purported evidence that Defendant has cited here convinces me that it requires what it seeks by way of reconsideration.

Defendant also asks me to revisit my ruling that CarePath's purpose is irrelevant to Plaintiff's GBL claim. It maintains that to prove such a claim, Plaintiff must not only show that Plaintiff has been harmed by Defendant's conduct, but also the same conduct harmed the consuming public. But, I already determined that Plaintiff's allegation of public harm, which the Court has found sufficient, is "tethered to the viability of the CarePath program vis-à-vis the availability of funds generally available to the patients in need. The alleged harm is [therefore] not related to the profitability of any Janssen drugs. Put differently, even if J&J and its entities ultimately drive profits—even very generous ones—from selling the drugs at issue, that fact does not disprove Plaintiff's alleged harm in this case, either to itself or to the public." (Opinion at 22.)

On this motion, Defendant argues that to disprove Plaintiff's theory of public harm, it should be entitled to discovery to show that harming CarePath's viability does not harm the public, because, as Defendant surmises, CarePath is not intended to benefit patients, but rather, it is intended to benefit J&J to sell more drugs. I disagree. Again, Plaintiff's current theory of public harm is supported by its allegation that Defendant's program jeopardizes the *viability* of CarePath by making CarePath prohibitively expensive, which in turn, makes other patient healthcare needs more expensive

6

generally.[1] Compl., ¶ 114. In that regard, Defendant does not require discovery on why Plaintiff created the CarePath program; instead, Defendant must show, *inter alia*, that its conduct does not harm the public by eroding the viability of CarePath. The purpose of CarePath, whether it was created for marketing or not, has no bearing on these issues. Ultimately, it appears that Defendant takes issue with the Court's decision on Defendant's motion to dismiss, to which I am bound.

Lastly, Defendant requests that I reconsider my ruling on the relevance of the pricing of Janssen drugs. Defendant contends that to counter Plaintiff's GBL claim, it intends to present evidence that J&J uses CarePath to raise drug prices, and if Plaintiff reserves the right to rebut that presentation, Defendant must produce information showing the impact of CarePath on the pricing of its 14 drugs at issue. Nothing Defendant now raises convinces me to reconsider on this issue, as well.

Defendant's full explanation follows:

> In recent years, drug makers like J&J increased specialty drug prices far beyond the cost of inflation. Drug makers like J&J used their copay assistance programs to support these price increases by covering large portions of patients' copays, insulating them from higher prices and encouraging them to buy the manufacturers' drugs instead of competitors' drugs. Because commercial health plans pay the vast majority of the cost when their members fill these drugs, increased drug prices caused the plans' spending on pharmacy benefits—overwhelmingly driven by specialty drugs—to skyrocket. This hurt plan members, as the plans had less money available for healthcare benefits.

---

[1] I am aware that Plaintiff has filed a motion to amend the Complaint. I have received correspondence from Defendant that it seeks to withdraw certain arguments that it made here because of amendments sought by Plaintiff in its proposed amended complaint. Since that motion has not been decided, I advised the parties that the operative complaint remains the original complaint filed in this case. As such, I decide the current reconsideration motion based on that complaint.

7

> As fiduciaries managing plan assets for the benefit of all members, plan sponsors looked for ways to manage rising specialty drug costs. One way is the copay assistance benefit that SaveOn administers: It helps use all copay assistance funds that a drug maker voluntarily makes available while ensuring that members get their specialty drugs for free. An aspect of this benefit is that the plans choose not to count copay assistance funds towards members' maximums or deductibles. J&J asserts that this plan benefit hurts the few plan members taking specialty drugs because it requires them to pay for their other healthcare (just as other plan members do). But this same plan benefit helps all other plan members—the vast majority—by leaving the plans more money to spend on healthcare benefits. Far from raising the public's healthcare costs, SaveOn's conduct helps lower those costs for the vast majority of commercial health plan members.
>
> This presentation will necessarily involve showing that the plan benefit that SaveOn administers was a reaction to drug makers raising specialty drug prices . . . .
>
> Allowing J&J to rebut SaveOn's presentation about rising specialty drug prices while denying SaveOn discovery of information relevant to that rebuttal would be manifestly unjust . . . . If J&J will disclaim any rebuttal to SaveOn's anticipated showing that J&J and other drug makers have raised specialty drug prices—fully eliminating the "out" that its counsel reserved—then no discovery on this point is necessary. But if J&J continues to reserve itself the right to present rebuttal evidence that it has lowered (or not increased) those prices, then SaveOn submits that J&J must produce discovery on this topic now, including the data underlying any such assertions.

(Defendant's Brief, 19-20.)

I do not agree with Defendant's argument. First and foremost, Plaintiff has represented that it will not rely on the pricing of Janssen drugs as a basis to prove its claims because the alleged harm in this case does not relate to lost profits or lowering drug prices. To the extent that Defendant, at trial, presents evidence that CarePath was utilized by Plaintiff to raise drug prices—a theory that may or may not be admissible— Plaintiff has indicated that it will not assert that the price of Janssen drugs has changed

8

due to an increased utilization of CarePath funds or, more specifically, due to Defendant's conduct. In that regard, depending on how Defendant intends to raise this issue at trial, it has Plaintiff's on-the-record representation regarding the pricing of the drugs. Unless Plaintiff's position changes in some fashion, there is no basis to reconsider my decision at this juncture.

Accordingly, Defendant's motion for clarification and reconsideration is denied.

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson (ret.)
Special Master