Mark A. Berman, Esq.
**HARTMANN DOHERTY ROSA**
**BERMAN & BULBULIA LLP**
433 Hackensack Avenue, Suite 1002
Hackensack, New Jersey 07601
t: 201-441-9056
*Counsel of Record for Intervenors*
*Express Scripts, Inc. & Accredo Health Group, Inc*

|  |  |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS, INC., | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY** |
| Plaintiff, | Civil No. 22-2632 (JKS) (CLW) |
| – vs – | |
| SAVE ON SP LLC, | |
| Defendant. | |

**INTERVENORS' OPPOSITION TO PLAINTIFF'S MOTION**
**FOR LEAVE TO FILE AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........................................................................ II

TABLE OF AUTHORITIES .............................................................. IV

PRELIMINARY STATEMENT ............................................................ 1

BACKGROUND ................................................................................... 1

I.    FACTUAL BACKGROUND ...................................................... 1

      A.    Express Scripts Informs J&J about the SaveOn Product in 2017 ........ 2

      B.    Express Scripts Makes a Detailed Presentation to J&J about
            SaveOn in 2017 ................................................................. 3

II.   PROCEDURAL BACKGROUND ................................................ 6

ARGUMENT ........................................................................................ 8

III.  JJHCS HAS ACTED WITH UNDUE DELAY, BAD FAITH, AND
      DILATORY MOTIVES, AND THE AMENDMENT WOULD
      PREJUDICE INTERVENORS ................................................... 9

      A.    The PAC Is the Product of Undue Delay ............................. 10

            1.    JJHCS Had All the Knowledge Needed in 2017 .......... 11

            2.    JJHCS Has Also Long Had Access to Publicly Available
                  Information on Intervenors' Roles ............................ 15

      B.    JJHCS's Lack of Explanation for the Undue Delay Suggests Bad
            Faith and Dilatory Tactics .................................................. 19

      C.    Intervenors Will Be Prejudiced by JJHCS's Undue Delay, Bad
            Faith, and Dilatory Tactics ................................................. 24

IV.   JJHCS'S AMENDMENT WOULD HARM JUDICIAL ECONOMY ........ 27

V.    JJHCS'S MOTION IS FUTILE BECAUSE THE CLAIMS ARE TIME-
      BARRED ............................................................................... 29

A. The Operative Statute of Limitations Is No More Than Six Years ....30

B. The Limitations Clock Began Before 2018 ........................................31

C. Even Accounting for the Discovery Rule, the Limitations Period Began No Later than August 30, 2017 ................................................32

    a. JJHCS Had Knowledge to Start the Clock Before 2018................................................................................32

    b. JJHCS Does Not Plead Support for the Discovery Rule ...............................................................................33

D. JJHCS Cannot Rely on the Equitable Tolling, Relation Back, or Continuing Violation Doctrines to Save Its Claims ..........................35

    1. Equitable Tolling Does Not Apply Because Intervenors Did Not Cause Delay by Concealing the Cause of Action..............35

    2. The Relation Back Doctrine Does Not Apply Because There Was No Mistake Concerning the Identity of Any Defendant ....................................................................36

    3. The Continuing Violation Doctrine Does Not Apply to Tortious Interference with Contract Claims ............................38

VI. CONCLUSION.............................................................................39

CERTIFICATE OF SERVICE.............................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadi v. Quick Chek Corp.*,
 2023 WL 3983879 (D.N.J. June 13, 2023) ...........................................19

*Adams v. Gould Inc.*,
 739 F.2d 858 (3d Cir. 1984) ..................................................19, 20, 24

*Advocat v. Nexus Indus., Inc.*,
 497 F.Supp. 328 (D. Del. 1980)..........................................................24

*Albino v. Home Depot*,
 2021 WL 1239858 (D.N.J. Apr. 2, 2021) ...............................................9

*Arab African Int'l Bank v. Epstein*,
 10 F.3d 168 (3d Cir. 1993) ..................................................................31

*Arthur v. Maersk, Inc.*,
 434 F.3d 196 (3d Cir. 2006) ...............................................................19

*Baird v. Amer. Med. Optics*,
 713 A.2d 1019 (N.J. 1998) ..................................................................33

*Block v. First Blood Assocs.*,
 988 F.2d 344 (2d Cir. 1993) ...............................................................11

*Brown v. Camden County Counsel*,
 2009 WL 5174640 (D.N.J. Dec. 17, 2009) (dismissing ......................38

*Bustamante v. Borough of Paramus*,
 994 A.2d 573 (N.J. Super. Ct. App. Div. 2010) ............................35, 36

*Centennial Plaza Prop, LLC v. Trane U.S. Inc.*,
 2023 WL 7403640 (D.N.J. Nov. 9, 2023) ..............................................9

*Coventry v. U.S. Steel Corp.*,
 856 F.2d 514 (3d Cir. 1988) ...............................................................24

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
 252 F.3d 267 (3d Cir. 2001) ...............................................8, 10, 11, 24

iv

*Dalal v. Molinelli*,
2022 WL 16362459 (D.N.J. Oct. 28, 2022) .......................................................20

*Daruwala v. Merchant*,
2015 WL 6829646 (N.J. Super. Ct. App. Div. Nov. 9, 2015) ............................30

*Dribeck Imp., Inc.*,
133 F.R.D. 463 (D.N.J. 1990).............................................................................29

*Egg Harbor Assoc., LLC v. Village Supermarkets, Inc.*,
2020 WL 132768 (N.J. Super. Ct. App. Div. Jan. 13, 2020)..............................38

*Foman v. Davis*,
371 U.S. 178 (1962).............................................................................................8

*Forbes v. Eagleson*,
228 F.3d 471 (3d Cir. 2000) ...............................................................................19

*Ford Motor Co. v. Edgewood Prop. Inc.*,
2011 WL 1321605 (D.N.J. Apr. 4, 2011) ...........................................................11

*Franks v. Cape May County*,
2009 WL 10727959 (D.N.J. Aug, 31, 2009) .......................................................37

*Garrett v. Wexford Health*,
938 F.3d 69 (3d Cir. 2019) ...........................................................................10, 11

*Garvin v. Philadelphia*,
354 F.3d 215 (3d Cir. 2003) ...............................................................................37

*Grayson v. Mayview State Hosp.*,
293 F.3d 103 (3d Cir. 2002) ...............................................................................29

*Heraeus Med. GmbH v. Esschem, Inc.*,
321 F.R.D. 215 (E.D. Pa. 2017)..........................................................................27

*Hong Zhuang v. EMD Performance Materials Corp.*,
2019 WL 3037568 (D.N.J. July 10, 2019)..........................................................26

*Hughes Aircraft Co. v. Nat'l Semiconductor Corp.*,
857 F. Supp. 691 (N.D. Cal. 1994) .....................................................................23

*In re Adams Golf, Inc. Secs. Litig.*,
   381 F.3d 267 (3d Cir. 2004) ...................................................11

*In re Burlington Coat Factory Secs. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ..................................................29

*In re Lombardo*,
   755 F.3d 1 (1st Cir. 2014) ......................................................11

*Laber v. Long View R.V., Inc.*,
   454 F. Supp. 3d 158 (D. Conn. 2020) ..............................27, 28

*Lapka v. Porter Hayden Co.*,
   745 A.2d 525 (N.J. 2000) ...............................................33, 34

*Larry Pitt & Assocs. v. Lundy L., LLP*,
   2017 WL 783653 (E.D. Pa. Feb. 28, 2017) ..........................27

*Lewis v. Brown*,
   2010 WL 1371939 (D.N.J. Mar. 30, 2010).............................38

*Lockhart v. Dorrance Pub. Co., Inc.*,
   2023 WL 157323 (D.N.J. Jan. 11, 2023).........................32, 34

*Lopez v. Swyer*,
   300 A.2d 563 (N.J. 1973) ......................................30, 32, 34

*Lorenz v. CSX Corp.*,
   1 F.3d 1406 (3d Cir. 1993) ............................12, 15, 19, 24

*Lundy v. Adamar of N.J., Inc.*,
   34 F.3d 1173 (3d Cir. 1994) ...................................................37

*Lyons v. Township of Wayne*,
   888 A.2d 426 (N.J. 2005) ......................................................38

*Maryland v. King*,
   596 U.S.  (2013)......................................................................23

*McDade v. Siazon*,
   32 A.3d 1122 (N.J. 2011) ......................................................34

*McFadden v. U.S.*,
     2016 WL 589681 (D.N.J. Feb. 11, 2016) ............................................................34

*McKinney v. Lanigan*,
     2021 WL 288465 (D.N.J. Jan. 28, 2021) ..............................................................34

*McTernan v. City of New York, Penn.*,
     577 F.3d 521 (3d Cir. 2009) ........................................................................30, 31

*Medley v. Atlantic Exposition Servs, Inc.*,
     550 F.Supp. 3d 170 (D.N.J. 2021) ................................................................31, 32

*Mullin v. Balicki*,
     875 F.3d 140- (3d Cir. 2017) ..........................................................................8, 27

*Panetta v. SAP Amer., Inc.*,
     294 Fed. Appx. 715 (3d Cir. 2008) ......................................................................19

*Phillips v. Borough of Keyport*,
     179 F.R.D. 140 (D.N.J. 1998) ..............................................................20, 23, 25

*Rolax v. Whitman*,
     53 Fed. Appx. 635 (3d Cir. 2002) .......................................................................37

*Rolo v. City Investing Co. Liquidating Tr.*,
     155 F.3d 644 (3d Cir. 1998) ................................................................................18

*Savage v. Old Bridge-Sayreville Med. Grp., P.A.*,
     633 A.2d 514 (N.J. 1993) ....................................................................................33

*Shepherd v. Hunterdon Dev. Ctr.*,
     803 A.2d 611 (N.J. 2002) ....................................................................................38

*Singh v. Twp. of Weehawken*,
     2023 WL 3119792 (D.N.J. Apr. 27, 2023) .........................................................26

*Slater v. Skyhawk Transp.*, Inc.,
     187 F.R.D. 185 (D.N.J. 1999) .......................................................................36, 37

*Smart Pharmacy, Inc. v. Medco Health Sols., Inc.*,
     2014 WL 3735344 (D.N.J. July 29, 2014) ..........................................................26

*State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Comms Int'l, Inc.*,
904 A.2d 775 (N.J. Super. Ct. App. Div. 2006) ................................................30

*StrikeForce Techs., Inc. v. PhoneFactor, Inc.*,
2015 WL 3793726 (D. Del. May 26, 2015).............................................9, 15, 18

*Travelers Cas. & Sur. Co. v. Becton Dickinson & Co.*,
2017 WL 349376 (D.N.J. Jan. 24, 2017)............................................................24

*Villalobos v. Fava*,
775 A.2d 700 (N.J. Super. Ct. App. Div. 2001) ................................................35

*Vispisiano v. Ashland Chem. Co.*,
527 A.2d 66 (N.J. 1987) ....................................................................................33

*Walls v. County of Camden*,
2008 WL 4934052 (D.N.J. Nov. 13, 2008) ........................................................37

*Wehrenberg v. Metropolitan Prop. & Cas. Ins. Co.*,
2015 WL 1643043 n.7 (W.D. Pa. Apr. 9, 2015).................................................23

*Wright-Phillips v. United Airlines, Inc.*,
2021 WL 3828837 (D.N.J. Aug. 27, 2021) ........................................................29

**Statutes**

N.J.S.A. 2A:14-1 ........................................................................................................30

New York General Business Law § 349 ......................................................................6

**Rules**

Fed. R. Civ. P. 15 ........................................................................................................8

Fed. R. Civ. P. 15(a) .............................................................................................10, 11

Fed. R. Civ. P. 15(a)(2) ...............................................................................................8

N.Y. C.P.L.R. § 214(4) ..............................................................................................30

**Other Authorities**

6 C. Wright & A. Miller, Federal Practice and Procedure § 1473 (3d ed. 2019)
...................................................................................................................10, 11

## PRELIMINARY STATEMENT

Intervenors Express Scripts, Inc. ("Express Scripts") and Accredo Health Group, Inc. ("Accredo") respectfully request that this Court deny Plaintiff Johnson & Johnson Health Care Systems Inc.'s ("JJHCS") motion to amend its Complaint. JJHCS claims it only recently learned in discovery the extent to which Express Scripts and Accredo work with Save On SP, LLC ("SaveOn"). But that is an easily disproven pretext. JJHCS had all the information it needed – received from Express Scripts itself, no less – over six years before it sought to add Express Scripts and Accredo as defendants. Accordingly, the Proposed Amended Complaint (the "PAC") is the product of undue delay, bad faith, and dilatory tactics, and it will prejudice Intervenors and harm judicial economy. In addition, the PAC is futile because it is time barred.

## BACKGROUND

### I.    FACTUAL BACKGROUND

JJHCS sued SaveOn in May 2022, alleging a tortious "scheme" with Intervenors arising out of SaveOn's advertising and administration of the SaveOn product. JJHCS now belatedly seeks to add Intervenors as defendants, claiming only recently to have realized Intervenors' alleged involvement in the "scheme." This attempt comes over six years after JJHCS learned of the "modus operandi" of the SaveOn "scheme," *see* Compl. ¶ 53, – information provided *by Express Scripts*. And, even setting aside JJHCS's 2017 and 2018 knowledge, the original Complaint

1

shows that JJHCS had all the knowledge it needed in 2022, at the latest, *and* that

the limitations period on its claims against Express Scripts and Accredo has

expired.

### A. Express Scripts Informs J&J about the SaveOn Product in 2017

This Court has already observed that JJHCS has known about the SaveOn

product since 2017.   Op. and Order, Dkt. 192 at 14.   This is at least in part because

Express Scripts educated Johnson & Johnson ("J&J") about SaveOn,[1] including

with a detailed presentation, in 2017 and 2018.   JJHCS was thus aware of details of

the SaveOn product, including Express Scripts' and Accredo's work with it, for

over six years before it attempted to add Express Scripts and Accredo as

defendants.

As an employer, J&J is the sponsor of a health plan, and in that capacity is

an Express Scripts client.   It was in this context that Express Scripts provided

substantial detail regarding SaveOn to J&J in 2017,[2] beginning no later than June

20, 2017.   *See* Declaration of Mark A. Berman, Ex. A ("Berman Decl.") (activity

log maintained by Express Scripts client team for J&J).

---

[1] JJHCS is a wholly owned subsidiary of J&J.

[2] JJHCS has implicitly acknowledged that it had this same knowledge as J&J.  *See*
ECF 261 at 11-12 (in response to allegations of JJHCS's "'deep knowledge . . .
years before it brought this case,'" responding only that "JJHCS lacked *detailed*
knowledge until it had conducted discovery" and "failing to add a claim a party
had prior knowledge of does not alone amount to bad faith") (emphasis added)
(citation omitted).

J&J was interested in making SaveOn available to its members, and so

discussions continued.  On June 15, 2017, Express Scripts explained some of the

key aspects of the product: designating medications non-essential health benefits

under the Affordable Care Act ("ACA") and drawing on manufacturer assistance:

> "SaveonSP works directly with interested clients to create unique savings
> opportunities by consulting with them to maximize their use of available
> copay assistance funds provided by manufacturers.  Specifically, [SaveOn]
> utilizes plan design changes to exclude select drugs as non-essential health
> benefits and assistance programs to reduce overall plan and member costs."

Berman Decl. at Ex. B; *compare with* Compl. ¶ 9 ("The SaveOnSP Program . . .

works by first changing the designation of Janssen's drugs . . . to non-essential

health benefits under the Affordable Care Act."), *and* ¶ 3 ("SaveOnSP's scheme

works by . . . increas[ing] the funds extracted from JJHCS's patient assistance

program").

### B.  Express Scripts Makes a Detailed Presentation to J&J about SaveOn in 2017

Following up on J&J's interest in SaveOn, Express Scripts made a detailed

presentation about the product to J&J on August 30, 2017.  *See* Berman Decl. at

Ex. C.  Express Scripts explained the SaveOn product, including two elements

JJHCS alleges are part of the "scheme."  First, Express Scripts again explained

SaveOn worked by designating certain drugs as non-essential health benefits under

the ACA.  *See id.*  Second, Express Scripts detailed the outreach to patients to

explain SaveOn.  *See id.*

The PowerPoint deck for the August 30, 2017 meeting contains 5 slides dedicated to SaveOn.  A summary states, "Manufacturers [like J&J] make funds available to assist patients with their share of the cost.  $0 copay for enrolled J&J members."  *Id*. at 15.  A later slide explains, "Utilizes Affordable Care Act (ACA) state benchmark to **change client plan design**."  *Id*. at 24 (emphasis in original). The next slide provides more detail:





This August 30, 2017 slide shows that without SaveOn, the plan ("employer responsibility") would pay the vast majority of the total cost for a drug called

Humira, while the patient would pay the balance, a much smaller amount. "Using SaveonSP," however, the economics would shift significantly in favor of the patient and the plan. Using SaveOn, the patient would pay nothing, and the plan would shoulder only about three-quarters of the cost. *Id.*

The same deck provides an example of Accredo patient outreach provided for clients:



*Id.* at 27.

Contemporaneous notes reflect that J&J had questions about SaveOn and requested further detail.  *See id.* at Ex. D.  In addition, these notes reflect that J&J was "interested" in deploying SaveOn.  *See id.*  Indeed, a later follow-up question J&J posed was how many individuals, across all commercial plans Express Scripts advised, had access to SaveOn.  *See id.* at Ex. E.  Express Scripts responded: nearly one million patients at that time.  *See id.*

In short, J&J not only knew how SaveOn worked in 2017, and understood that hundreds of thousands of patients had access to it, but also was interested in using SaveOn to reduce its own costs as a health plan sponsor.

## II.    PROCEDURAL BACKGROUND

On May 4, 2022, JJHCS sued SaveOn for tortious interference of contract and violation of New York General Business Law § 349.  The Complaint repeatedly accused Express Scripts and Accredo, by name, of taking part in the alleged wrongdoing.  *See id.* ¶¶ 51 ("In partnership with PBM Express Scripts and specialty pharmacy Accredo, SaveOnSP . . . induces patients to enroll."), 52, 62, 63 ("adding to the pressure placed on patients, Accredo actually ***rejects*** the patient's claim for their prescription medication . . . to transfer them to SaveOn, even though that medication is covered by the patient's insurance") (emphasis in original).

JJHCS issued overly burdensome third-party subpoenas to Intervenors on January 13, 2023 – before SaveOn's motion to dismiss was even decided.  *See* ECF

No. 68.  Motion practice ensued in the Eastern District of Missouri (the "Missouri Action") and the Western District of Tennessee (the "Tennessee Action"), in which JJHCS made the following assertions to the courts:

- "Since 2016, SaveOnSP has worked exclusively with ESI, and ESI actively markets SaveOnSP's services."  Missouri Action, Mem. of Law in Supp. of Mtn to Compel at 3.
- ESI and its specialty pharmacy, Accredo . . . are integral, necessary parts of the SaveOnSP scheme." *Id*. at 5.
- "ESI is intimately involved in and profits from SaveOn's business." *Id*. at 11.
- "[Express Scripts] ha[s] 500 employees working on the scheme[.  This] gives you a sense of, A, the investment that they have in the SaveOn program."  Oral argument by JJHCS before the U.S. District Court for the Eastern District of Missouri (attached to Berman Decl. at Ex. F) at 20:23-25.
- "JJHCS alleges that Accredo . . . is integral to [the SaveOn] scheme along with its parent company, Express Scripts."  Tennessee Action, Order Granting in Part & Denying in Part Mtn to Compel at 2. [3]

Ultimately, both courts granted JJHCS's motions to compel only in part, and Intervenors have accordingly produced documents.

Eventually, however, JJHCS's continued demands on Intervenors became so burdensome that Intervenors sought the protection of Rule 45(d)(2)(B)(ii)'s fee-shifting provisions.  On March 8, 2024, Accredo sent a letter to JJHCS to initiate a meet and confer regarding fee-shifting for both Accredo and Express Scripts.

---

[3] JJHCS's memorandum in support of the motion to compel and many of the associated exhibits before the District Court for the Western District of Tennessee remain under seal. *See* ECF Nos. 2-4, *Johnson & Johnson Health Care Sys., Inc. v. Save On SP, LLC*, No. 2:23-mc-00019-JTF-tmp (W.D. Tenn.).  Therefore, Intervenors cite to the court order in that action.

Berman Decl. at Ex. G. Accredo noted that Intervenors had spent, as of early March, over $650,000 – including over $470,000 on an eDiscovery vendor. *Id*. JJHCS's attempt to add Intervenors came just one week later. Meanwhile, discovery is proceeding in this Court.

**<u>ARGUMENT</u>**

The Federal Rules generally favor freely granting leave to amend "when justice so requires," but they do not countenance gamesmanship. Fed. R. Civ. P. 15(a)(2). To guard against parties exploiting Rule 15's generally liberal standard for strategic advantage, the Supreme Court instructs that amendments should be denied as unjust where there is "undue delay, bad faith or dilatory motive on the part of the movant . . . [,] undue prejudice to the opposing party . . . [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Third Circuit has layered on additional protection against improper tactics, considering additional equities including judicial economy and the burden on the Court in allowing a party to amend. *Mullin v. Balicki*, 875 F.3d 140-50, 149 (3d Cir. 2017). The decision whether to grant a leave to amend is committed to the sound discretion of the Court. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001).

Unlike a Rule 12(b)(6) inquiry, this Court's consideration of undue delay, bad faith, dilatory tactics, prejudice, and judicial economy is not confined to the pleadings. Courts in the Third Circuit regularly consider documents outside the

8

pleadings for these factors, particularly to determine when a plaintiff learned of the facts giving rise to the proposed amendment. *See, e.g., Centennial Plaza Prop, LLC v. Trane U.S. Inc.*, 2023 WL 7403640, at *6 (D.N.J. Nov. 9, 2023); *Albino v. Home Depot*, 2021 WL 1239858, at *2 (D.N.J. Apr. 2, 2021); *StrikeForce Techs., Inc. v. PhoneFactor, Inc.*, 2015 WL 3793726, at *3 (D. Del. May 26, 2015). As such, this Court may properly consider the evidence discussed herein. That evidence, coupled with JJHCS's own admissions in its original Complaint and filings before three federal courts, makes clear that the PAC is the product of undue delay and bad faith and, in any event, is futile because JJHCS's claims are time-barred.

## III. JJHCS HAS ACTED WITH UNDUE DELAY, BAD FAITH, AND DILATORY MOTIVES, AND THE AMENDMENT WOULD PREJUDICE INTERVENORS

The PAC is precisely the kind of proposed amendment that the Rules prohibit. JJHCS claims it is attempting to add Express Scripts and Accredo as defendants now because it "learned material information during discovery demonstrating that" Express Scripts and Accredo have "distinct and important role[s] in the development, marketing, and management of" the SaveOn product. Amend. Brief ISO Mtn to Amend at 1-2. But JJHCS has been aware of Intervenors' roles with respect to the SaveOn product since at least 2017. Nevertheless, JJHCS elected not to name Express Scripts and Accredo as defendants in its original complaint. Making matters worse, JJHCS engaged Intervenors in third-party discovery for over a year before moving to add them as parties to this litigation and did so only after

Intervenors sought the protection that Rule 45's cost-shifting provision provides third parties. This can only be undue delay, particularly when considered in light of the library of publicly available information explaining Express Scripts' involvement in SaveOn – some of which is cited in the original complaint – and the information Express Scripts shared with JJHCS concerning the SaveOn product in early 2017. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (quoting 6 C. Wright & A. Miller, Federal Practice and Procedure § 1473 (3d ed. 2019)) ("The function of Rule 15(a) . . . is to enable a party to assert matters that were overlooked or were unknown at the time the party interposed the original complaint.")

Where JJHCS lacks any valid explanation for the years of delay, this Court may presume bad faith and dilatory tactics. This Court may also find bad faith and dilatory tactics based on the circumstances surrounding JJHCS tactical move to add Intervenors as Defendants. Moreover, the undue delay will prejudice Intervenors – and will harm judicial economy, by forcing the parties to restart discovery after almost two years of extensive discovery and contentious motion practice. This Court should therefore reject JJHCS's attempt to begin this lengthy litigation anew.

## A.     <u>The PAC Is the Product of Undue Delay</u>

Although "delay alone" does not suffice to deny leave to amend, "at some point, the delay will become undue, placing an unwarranted burden on the court . . . [and] an unfair burden on the opposing party." *Cureton*, 252 F.3d at 273 (quotation

omitted). "Delay may become undue when a movant has had previous opportunities to amend." *Id.* (citation omitted). Accordingly, courts ask why a movant did not seek to amend sooner and consider "whether new information came to light or was available earlier to the moving party." *Ford Motor Co. v. Edgewood Prop. Inc.*, 2011 WL 1321605, at *2 (D.N.J. Apr. 4, 2011) (quoting *In re Adams Golf, Inc. Secs. Litig.*, 381 F.3d 267, 280 (3d Cir. 2004)) (quotation marks omitted). The more time that has elapsed, the greater the scrutiny on the movant. *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). "[W]hen considerable time has elapsed," some courts shift the burden to the movant to "show[] some valid reason for his neglect and delay." *In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014) (Souter, J.). This is because "[t]he function of Rule 15(a) . . . is to enable a party to assert matters that were overlooked or were unknown at the time [of] the original complaint" – not to allow a party to sit on a claim for years and assert it at the eleventh hour. *See Garrett*, 938 F.3d at 82 (quoting 6 C. Wright & A. Miller, Federal Practice and Procedure § 1473 (3d ed. 2019)). Here, JJHCS has known about Intervenors' work with the SaveOn product since at least 2017, yet waited until the scheduling order's last day for proposed amendments; its delay is undue.

### 1. JJHCS Had All the Knowledge Needed in 2017

JJHCS claims it learned only recently that Intervenors are so involved in the alleged SaveOn "scheme." Amend. Brief ISO Mtn to Amend at 1-2. As the Special

Master has observed, this is not only easily disproven by the original complaint,[4] it is a distraction. There is no need to parse the timeline of discovery in this matter, because JJHCS has known for over six years everything it now asserts against Intervenors. Where "[m]ost of the facts were available to [a] plaintiff . . . before she filed her original complaint," a court is well within its discretion to deny a motion to amend. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

This Court has already found that JJHCS "knew of the SaveOnSp Program since 2017." ECF No. 192 at 14. This is perhaps an understatement. J&J, of which JJHCS is a wholly owned subsidiary, was exploring itself implementing SaveOn since early 2017. Express Scripts made detailed presentations to J&J about SaveOn and provided further information when requested.

The following chart shows specifics of the alleged "scheme" Express Scripts communicated in 2017 or 2018, compared with the original complaint:

---

[4] "Based on the allegations of the original Complaint, Plaintiff clearly knew of the alleged involvement of ES and Accredo in the SaveOnSP programs . . . Yet, Plaintiff waited until almost two years into this litigation to bring claims against the . . . Intervenors." Order on Mtn to Intervene, Dkt. 281, at 18-19.

| Alleged Element of "Scheme" | Original Complaint (2022) | 2017 or 2018 Express Scripts Communication (Berman Decl. Ex.) |
|---|---|---|
| Designating drugs as non-essential health benefits under the Affordable Care Act ("ACA"). | ¶ 10. | "[SaveOn] utilizes plan design changes to exclude select drugs as non-essential health benefits and assistance programs to reduce overall plan and member costs." Ex. B (June 15, 2017). |
| Designating drugs as non-essential health benefits under the ACA. | "The SaveOnSP Program . . . works by first changing the designation of Janssen's drugs . . . from 'essential health benefits' to non-essential health benefits under the . . . ACA." ¶ 9. | "Utilizes Affordable Care Act (ACA) state benchmark to **change client plan design**." Ex. C at 24 (emphasis in original) (Aug. 30, 2017). |
| Using manufacturers' funds for patient assistance. | SaveOn is "targeting and exhausting those [patient assistance] funds." ¶ 1. | "Manufacturers make funds available to assist patients with their share of the cost. $0 copay for enrolled J&J members." *Id.* at 15 (Aug. 30, 2017). |

| Alleged Element of "Scheme" | Original Complaint (2022) | 2017 or 2018 Express Scripts Communication (Berman Decl. Ex.) |
|---|---|---|
| Allowing health plans to benefit from manufacturers' funds for patient assistance. | "SaveOnSP enriches the payers with which it partners by (a) reducing the amount they pay . . . for each prescription . . . and (b) increasing by a commensurate amount the costs to the JJHCS copay assistance program." ¶ 4. |  *Id.* at 25 (Aug. 30, 2017). |
| Patient outreach. | "SaveOnSP . . . enlist[s] the help of the pharmacy to reject a patient's claim. . . at the point of sale . . . in order to get the patient on the phone with SaveOnSP [to] pressure the patient to enroll." ¶ 13. |  *Id.* at 27 (August 30, 2017) (providing an example of Accredo patient outreach provided for clients). |

Thus, over six and a half years before the PAC, JJHCS knew that SaveOn and Express Scripts worked together regarding the SaveOn product and further knew that the SaveOn product worked by (1) designating drugs as non-essential health benefits and (2) utilizing manufacturer assistance funds.

The Court observed that the "scheme" JJHCS alleges has two main elements: (1) "the drugs at issue are reclassified from essential to non-essential health benefits under the Affordable Care Act ('ACA')"; and (2) "to target patients by instituting an outreach campaign to enroll patients in the Program." ECF No. 192, at 3. Express Scripts provided information on both its and Accredo's involvement in both elements over six years before JJHCS filed leave to amend. And because *Express Scripts* was the one to provide the information in connection with marketing the SaveOn product, JJHCS can hardly now claim that it was blind to Express Scripts' (or Accredo's) involvement in the marketing and management of the SaveOn product. *See Lorenz*, 1 F.3d at 1414 (affirming denial of motion to amend where plaintiff knew "[m]ost of the facts" before filing original complaint); *see also StrikeForce Techs, Inc. v. PhoneFactor, Inc.*, 2015 WL 3793726, at *4 (D. Del. May 26, 2015) (holding delay was undue where plaintiff "waited almost twenty-two months" after learning key fact "and almost nineteen months after filing its initial complaint").

### 2. JJHCS Has Also Long Had Access to Publicly Available Information on Intervenors' Roles

Not only was JJHCS provided specific, detailed information directly from Express Scripts regarding Intervenors' "key role" in the alleged "scheme," but JJHCS was aware of this information from publicly available sources that it has admitted it had access to.

In both its original complaint and PAC, JJHCS cites extensively to a "SaveOnSP IPBC Video." *See* Compl. ¶¶9, 11, 14, 19-20, 25, 53-56, 58, 60-62, 64-65, 68-73, 90; PAC ¶¶9, 12, 16-17, 24-25, 33, 76-79, 81, 85-87, 89-90, 93-96, 100-101, 122, 164.[5] This recorded training is a co-branded SaveOn and Express Scripts February 16, 2021 presentation for a health plan client.  Ex. H at 1.  It details the way in which the SaveOn product works, including how specialty medications are designated as non-essential under the ACA.  *Id.* at 2-3, 7.  Regarding Express Scripts' operational involvement, Ms. Harmon (an Express Scripts employee) states, "*we're still at the core of this* . . . we're following all of your current formulary and utilization management protocols[.]"  *Id*. at 7 (emphasis added).  The video also identifies Accredo's role with respect to the SaveOn product on several occasions. *See, e.g.*, *id.* at 10 (identifying the "partnership with Accredo"), 5, 8 (noting claims adjudication and process at Accredo).

Similarly, information regarding the SaveOn product was reported on an industry-specific blog upon which JJHCS relies in its complaint and PAC.  In a 2020 article entitled "Latest Express Scripts Data: Slow Drug Spending Growth—And Big Plan Savings from Manufacturer Copay Programs," Dr. Adam Fein "Blogsplain[s] SaveOnSP" including (1) the designation of specialty drugs as "non-

---

[5] JJHCS provide a transcript of this video to the court in the Eastern District of Missouri; it is attached hereto as Ex. H to Berman Decl.  The transcript indicates that it was exported on December 6, 2021.  *Id.*

essential" under the Affordable Care Act, (2) plans' beneficiaries' enrollment in SaveOn, and that (3) "[p]rescriptions are filled exclusively from Express Scripts' Accredo specialty pharmacy[.]" *See* Berman Decl. at Ex. I. Just a few months later, Dr. Fein published another article discussing "the SaveonSP program offered via Express Scripts." *See id.* at Ex. J. It states that individuals "must . . . fill their prescriptions exclusively from . . . Accredo" and "Express Scripts is SaveonSP's only client for its copay assistance solution." *Id.*

There is no question JJHCS was aware of Dr. Fein's blog post since at least May 2022, when it cited the post in its original Complaint. Compl. ¶ 50 n.7. Indeed, JJHCS claims it "relied primarily on publicly available sources to understand how SaveOnSP markets and administers the SaveOnSP Program in partnership with [Intervenors]" in formulating its original complaint. Amend. Brief ISO Mtn to Amend, at 6. Those very "publicly available sources" provided it with substantial information years before it moved to add Express Scripts and Accredo as defendants.

Intervenors have also published information about their use of the SaveOn product to reduce the impact of exorbitant drug costs on payor clients. For example, on October 7, 2021, Meghan Pasicznyk, PharmD, then-Managing Director of Specialty Product & Strategy Advancement at Express Scripts, published an article entitled, "Copay Assistance Strategy Reduces Financial Burdens for Plans and Patients." *See* Berman Decl. at Ex. K. In it, Ms. Pasicznyk identifies Express

Scripts' partnership with SaveOnSP to "help create unique savings opportunities that maximize the use of manufacturer assistance funds." Ms. Pasicznyk details, "How the program works," noting that "[p]lans that participate in SaveOnSP classify certain medications as 'non-essential health benefits' (NEHBs) in alignment with the . . . ACA." By doing so, it "open[s] up the opportunity to maximize copay assistance to benefit the plan and patients." Ms. Pasicznyk further notes that "[p]atient education and outreach are essential components" and details the communication such that "a vast majority of patients experience no disruption." There is similarly no question that JJHCS was aware of this article by at least May 2022, because JJHCS cites it in its original complaint. Compl. ¶ 24.

These public sources only emphasize that JJHCS knew of the involvement of Intervenors' roles relative to its claims prior to filing its original complaint. Despite this knowledge, JJHCS made the tactical decision not to name Intervenors as defendants in the original complaint and, instead, waited almost two years before attempting to do so. Thus, JJHCS acted with undue delay and its motion to amend should be denied. *See StrikeForce Techs., Inc.,* 2015 WL 3793726, at *4 (finding undue delay in part because plaintiff was clearly aware of proposed defendant's role relative to its claims in light of proposed defendants' public statements regarding the specific technology both before and after the filing of the original complaint); *see also Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 654 (3d Cir. 1998)

abrogation on other grounds recognized, *Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000) (affirming denial of leave to amend where plaintiff sought to "replead facts and arguments that could have been pled much earlier in the proceedings"); *Lorenz*, 1 F.3d at 1414 (affirming denial of leave to amend where the facts had already been available to plaintiff for years prior and where plaintiff had failed to take advantage of earlier opportunities); *Panetta v. SAP Amer., Inc.*, 294 Fed. Appx. 715, 718 (3d Cir. 2008) (refusing to grant leave for amendment to complaint for undue delay where, inter alia "[the new] claim was known to Panetta early on in the litigation because the cause of action arises out of the same set of facts as the [original] claim.").

## B. JJHCS's Lack of Explanation for the Undue Delay Suggests Bad Faith and Dilatory Tactics

"The question of undue delay, as well as the question of bad faith, requires that we focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier[.]" *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984); *see also Abadi v. Quick Chek Corp.*, 2023 WL 3983879, at *3 (D.N.J. June 13, 2023) ("[T]he question of bad faith focuses on a party's motives for not amending its pleadings sooner."). The Rule "allows for misunderstandings and good-faith lapses in judgment, so long as the party thereafter acts reasonably and diligently." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 206 (3d Cir. 2006). However, courts "will deny a motion to amend where the movant's unexplained delay suggests bad faith or tactical

design.  Undue delay which is not satisfactorily explained is equivalent to bad faith."
*Phillips v. Borough of Keyport*, 179 F.R.D. 140, 149 (D.N.J. 1998) (Wolfson, J.);
*see also Adams,* 739 F.2d at 868 ("[D]elay can itself be evidence of bad faith
justifying denial of leave to amend."); *Dalal v. Molinelli*, 2022 WL 16362459, at *3
(D.N.J. Oct. 28, 2022) ("If the movant fails to explain the delay in seeking to amend,
the Court may find such delay to be tactical and thereby undue.").

JJHCS asserts that it "has learned material information during discovery"
revealing that Intervenors' roles in the alleged "scheme" are substantial with each
entity exercising "a distinct and important role in the development, marketing, and
management of the SaveOnSP program[.]"  Amend. Brief ISO Mtn to Amend at 1-
2.  While JJHCS admits that it "had some limited information about the roles played
by pharmacy benefits manager Express Scripts and specialty pharmacy Accredo in
the design and implementation of the SaveOnSP Program" at the time it filed the
original complaint, JJHCS suggests it only learned "[t]he full extent of the
Defendants' collaboration" during the course of document discovery.  *Id.* at 2, 6.

These claims are impossible to reconcile with the materials discussed *supra*.
Worse yet, these claims contradict JJHCS's own pleadings, filings, and other
statements before this and other Courts.  JJHCS's invented reason for its delay
should be, at best, ignored – and at worst, is evidence of bad faith.

JJHCS's original Complaint paints Intervenors as key players in the SaveOn

"scheme." In describing SaveOn, JJHCS alleges that "SaveOnSP advertises and administers its program . . . in partnership with pharmacy benefits manager Express Scripts, Inc. ("Express Scripts") and specialty pharmacy Accredo Health Group, Inc. ("Accredo")." Compl. ¶ 28. JJHCS also alleges, "[i]n partnership with PBM Express Scripts and specialty pharmacy Accredo, SaveOnSP markets and sells its program to payers, and then induces patients to enroll." Compl. ¶ 51. Indeed, the original Complaint is peppered with similar allegations. *See id.* ¶¶ 10, 12, 13, 15, 52, 58, 62.

JJHCS further confirmed its longstanding awareness of Intervenors' involvement with the SaveOn product in representations to this and other courts. During proceedings before courts in the Eastern District of Missouri and the Western District of Tennessee, JJHCS made assertions about Intervenors' roles in in motions to compel responses to third-party subpoenas issued to Intervenors.

JJHCS asserted to the Missouri court that "ESI plays a critical role in this scheme." ECF No. 2 at 2, *Johnson & Johnson Health Care Sys., Inc. v. Express Scripts, Inc.*, No. 4:23-mc-00527-SEP (E.D. Mo.). Indeed, JJHCS stated that, "[s]ince 2016, SaveOnSP has worked exclusively with ESI." *Id.* at 3. "ESI and its specialty pharmacy, Accredo . . . are integral, necessary parts of the SaveOnSP scheme." *Id.* at 5. JJHCS also stated, "SaveOnSP, in concert with ESI, advises health plans to take several actions to help it siphon off CarePath funds to enrich

insurers and plans[.]" *Id.*

Before the Tennessee court, JJHCS represented that "Accredo, a specialty pharmacy, is integral to this scheme along with its parent company, Express Scripts, Inc." ECF No. 25 at 2, *Johnson & Johnson Health Care Sys., Inc. v. Save On SP, LLC*, No. 2:23-mc-00019-JTF-tmp (W.D. Tenn.). "SaveOn works exclusively with ESI to market its program to patients and Accredo fills prescriptions for ESI managed plans." *Id.* At one point, JJHCS went so far as to allege "that the scheme could not have operated without Accredo's involvement" in patient enrollment. *Id.* at 6.

This is not to say that JJHCS did not learn anything new before it finally sought to add Intervenors as defendants. It did. But that new information had nothing to do with how the "scheme" works or Intervenors' role therein. On March 8, 2024, in response to JJHCS demanding the addition of yet another custodian, Intervenors sought fee-shifting under Rule 45(d)(2)(B)(ii). *See* Berman Decl. at Exs. G, L (noting expenses of over $650,000, including more than $470,000 on eDiscovery vendor fees). Just one week later, JJHCS moved to make Intervenors defendants in what appears to be an effort to avoid responsibility for those costs – and an effort to further expand the discovery it seeks to take from Intervenors. *See* ECF No. 261 at 3-4 (admitting JJHCS intends to take further discovery from Intervenors).

It is clear from JJHCS's own court filings that it has known for years what it now claims to have just learned in discovery. In the face of evidence from Express Scripts information-sharing in 2017, and substantial publicly available information concerning Intervenors' roles with respect to the SaveOn product, JJHCS's claim that it learned information that spurred it to add Intervenors as defendants only recently through discovery in this case "taxes the credulity of the credulous." *Wehrenberg v. Metropolitan Prop. & Cas. Ins. Co.*, 2015 WL 1643043, at \*5 n.7 (W.D. Pa. Apr. 9, 2015) (rejecting "attempt to manufacture a reason for" late joinder of defendant) (quoting *Maryland v. King*, 596 U.S. 435 (2013) (Scalia, J., dissenting)). Instead, JJHCS made a "tactical decision" not to name Intervenors in its original complaint. JJHCS's tactical calculus changed when faced with the fee-shifting Rule 45 affords third-parties, leading JJHCS to attempt to add Intervenors as defendants nearly two years after filing its original complaint. Rule 15 flatly prohibits such amendments, borne out of "tactical design" rather than good-faith oversight despite reasonable diligence. *Phillips*, 179 F.R.D. at 149 (Wolfson, J.); *see also Hughes Aircraft Co. v. Nat'l Semiconductor Corp.*, 857 F. Supp. 691, 701 (N.D. Cal. 1994) (finding bad faith in movants' attempt to add new defendant based on movants' "litigation tactics" thus far and noting the court's unwillingness to believe that movants were "unsure" of the relationship between the entities).

### C. Intervenors Will Be Prejudiced by JJHCS's Undue Delay, Bad Faith, and Dilatory Tactics

Prejudice is the touchstone for the denial of an amendment. *Lorenz*, 1 F.3d at 1414. A finding of substantial or undue prejudice is a sufficient ground for denial. *Cureton*, 252 F.3d at 273. In evaluating the extent of any alleged prejudice, courts look to the hardship on the non-moving party if the amendment were granted. *Id.* More specifically, courts consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Id.* "[T]he longer the period of an unexplained delay the less will be required of the nonmoving party in terms of a showing of prejudice." *Advocat v. Nexus Indus., Inc.*, 497 F.Supp. 328, 331 (D. Del. 1980). "Thus, the proper standard requires balancing the length of the delay against the resulting prejudice." *Travelers Cas. & Sur. Co. v. Becton Dickinson & Co.*, 2017 WL 349376, at *2 (D.N.J. Jan. 24, 2017); *see also Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 520 (3d Cir. 1988) ("[T]he obligation of the trial court . . . is to articulate the imposition or prejudice caused by the delay, and to balance those concerns against the movant's reason for delay.").

As discussed above, the delay here is equivalent to bad faith. *Adams,* 739 F.2d at 868. Most notably, JJHCS knew of Intervenors' roles in the alleged "scheme" long before filing their original complaint and relied on this relationship throughout this case in subjecting Intervenors to burdensome third-party discovery.

Thus, very little is required from Intervenors to establish prejudice. Nevertheless, the amendment would significantly prejudice Intervenors.

Intervenors have already invested a significant amount of money and time in their responses to JJHCS's subpoenas Express Scripts has produced or plans to produce to JJHCS claims data, client-specific forms, exemplar marketing materials, patient inquiries, and documents from 16 custodians. Express Scripts' first production totaled more than 9,500 documents and 37,000 pages. Accredo, for its part, has produced over 8,600 documents, totaling over 31,000 pages – including years of patient-related communications. Express Scripts and Accredo together have incurred expenses of over $650,000 associated with these productions. *See* Berman Decl. at Ex. G.

While this information would likely be a portion of what Intervenors would have produced had they been named as defendants from the beginning, it pales in comparison to discovery that would have to be taken if they are added now. Discovery would largely start anew – particularly discovery that Intervenors would now have the right to take from JJHCS. Furthermore, JJHCS has admitted that it intends to take further discovery from Express Scripts and Accredo. *See* ECF No. 261 at 3-4. An amendment that requires reopening discovery is more prejudicial than one that presents only a new issue of law. *Phillips*, 179 F.R.D. at 144. The deadline for interrogatories and document requests was recently extended to July 19,

2024; the close of fact discovery was recently reset to August 26, 2024.  ECF No. 255.

Furthermore, an amendment would likely result in additional contentious discovery issues.  *See Smart Pharmacy, Inc. v. Medco Health Sols., Inc.*, 2014 WL 3735344, at *4 (D.N.J. July 29, 2014) (denying leave to amend the complaint two years after the prior amendment because "countless discovery issues would result"); *cf. Hong Zhuang v. EMD Performance Materials Corp.*, 2019 WL 3037568, at *4 (D.N.J. July 10, 2019) (permitting amendment because "it d[id] not appear that the addition of Plaintiff's proposed new claim would require substantial additional discovery," only six months had elapsed between plaintiff gaining knowledge and moving to amend, and plaintiff was *pro se* when she filed original complaint).  Thus, any amendment will prohibit a reasonably timely resolution of this action.  *Singh v. Twp. of Weehawken*, 2023 WL 3119792, at *3 (D.N.J. Apr. 27, 2023) (finding a delay of two and a half years would prejudice defendant by requiring additional discovery, costing significant time and money, and "would upend their expectations in a reasonably timely resolution").

Motion practice would also begin again.  Intervenors would be required to address the legal flaws in JJHCS's suit – including that it is time-barred.  Although Intervenors have been involved as non-parties, this status means they have "not had a chance to participate in the discovery process as [] named defendant[s] and it would

be extremely prejudicial to expect [them] to file dispositive motions and/or proceed to trial at any time in the near future." *Heraeus Med. GmbH v. Esschem, Inc*., 321 F.R.D. 215, 218 (E.D. Pa. 2017) (quotation marks omitted).

## IV.  JJHCS'S AMENDMENT WOULD HARM JUDICIAL ECONOMY

The Third Circuit permits consideration of the judicial economy in allowing a party to amend. *Mullin*, 875 F.3d at 149-50. Judicial economy "stands entirely alone, separate and apart from prejudice and factors relevant to whether delay was 'undue.'" *Id.* at 157. Courts consider "judicial efficiency and effective case management." *Id.* It is not sufficient to tally the work that has already been conducted by the court, although that is "certainly salient"; the key is "whether future management of the case would encounter similar difficulties." *Id.* at 158; *see also Laber v. Long View R.V., Inc.*, 454 F. Supp. 3d 158, 172 (D. Conn. 2020) (denying amendment in part because "the parties have engaged in extensive motion practice and there have been multiple discovery disputes requiring the Court's attention" and the amendment would "essentially re-start the pleading process"). JJHCS's proposed amendment would burden the Court by re-opening certain issues this Court has already addressed and prompting a "new wave" of discovery based on the new claims and additional defendants. *See Larry Pitt & Assocs. v. Lundy L., LLP,* 2017 WL 783653, at *4 (E.D. Pa. Feb. 28, 2017) (finding amendment prior to the close of fact discovery would "undermine judicial efficiency" as allowing it "would prompt

a new wave of discovery based on the additional allegations and Defendants . . .

[which] would likely touch upon areas in which the Court previously foreclosed

discovery").

This litigation has been contentious, resulting in a multitude of discovery and

case management disputes and significant motion practice. A cursory review of the

docket indicates more than 60 letter briefs apparently originating just six weeks after

filing (ECF No. 25), nearly as many orders, and conferences or hearings almost

every month in 2023. In her order appointing the Honorable Freda L. Wolfson (ret.),

as special master, the Honorable Cathy L. Waldor wrote: "[T]he parties' disputes

have been frequent and complex . . . [T]he disputes show no sign of slowing, and

the Court foresees that this case will continue to demand a level of intensive,

individualized case management that is simply not sustainable[.]" ECF No. 184 at

2.

Intervenors lack access to much of the docket and therefore are unaware of

this matter's full procedural history. Even so, it is likely that some previously

addressed issues may need to be reopened, especially custodial discovery. Further,

additional discovery and motion practice would be warranted as the parties and the

Court "re-start the pleading process." *Laber*, 454 F. Supp. 3d at 172. As detailed

*infra*, JJHCS's claims against Intervenors are time-barred. This and many other

issues would be litigated if JJHCS was permitted to amend. Failing any such

motion's success, the parties would be entitled to discovery on timing issues, as well.

JJHCS's proposed amendment would substantially burden the Court and should be denied. *C.f. Wright-Phillips v. United Airlines, Inc.,* 2021 WL 3828837, at *6 (D.N.J. Aug. 27, 2021) (dismissing concerns of burden when the proposed amendment "merely entails" the substitution of two fictitious defendants with their names and identities and does not include new causes of action or new allegations).

## V.    JJHCS'S MOTION IS FUTILE BECAUSE THE CLAIMS ARE TIME-BARRED

JJHCS's motion for leave to amend should be denied for the independent reason that it is futile. An amendment is futile if it is "frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Bev. Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (quotation omitted). There being no reason to burden courts with facially meritless lawsuits, there is a "long tradition of denying leave to amend under Rule 15(a) when amendment is . . . futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 113 (3d Cir. 2002). Because "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted" courts "assessing 'futility' . . . appl[y] the same standard of legal sufficiency as applies under Rule 12(b)(6)" *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997), with the additional requirement that the amendment "be sufficiently well-grounded in fact or law that it is not a frivolous pursuit." *Harrison Bev. Co.*, 133 F.R.D. at 469.

Rule 15's adoption of the 12(b)(6) framework for assessing futility may prevent the Court from considering evidence outside the four corners of the PAC and matters appropriate for judicial notice. *McTernan v. City of New York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009). However, that does not prevent a ruling on futility here, because the PAC is facially untimely and judicially noticeable documents underscore its untimeliness.

## A. The Operative Statute of Limitations Is No More Than Six Years

All of JJHCS's claims against Intervenors have statutes of limitations of no more than six years.[6] *See* N.J.S.A. 2A:14-1; *Daruwala v. Merchant*, 2015 WL 6829646, at *12 (N.J. Super. Ct. App. Div. Nov. 9, 2015) (quoting *Lopez v. Swyer*, 300 A.2d 563, 568 (N.J. 1973)) (conspiracy claims rise and fall with underlying tort); *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Comms Int'l, Inc.*, 904 A.2d 775, 784 (N.J. Super. Ct. App. Div. 2006) (aiding and abetting claims are also tied to underlying tort). Thus, if the limitations period began before March 14, 2018 – six years before JJHCS moved for leave to amend its complaint – JJHCS's claims are time-barred.

---

[6] JJHCS seeks to level common-law claims governed by either New York or New Jersey law against Intervenors. The common-law claims have shorter limitations periods under New York law. *See* N.Y. C.P.L.R. § 214(4). However, this Court need not decide which state's law applies, because JJHCS's claims are untimely even under New Jersey's longer period.

## B. The Limitations Clock Began Before 2018

Even setting aside the substantial extra-pleadings evidence that JJHCS knew enough to begin the limitations clock in 2017, it is clear from the face of the complaint that JJHCS knew enough to begin the clock before 2018:

> SaveOnSP devised a scheme aimed at taking funds meant to help patients. **Since 2016**, Express Scripts and Accredo have worked with SaveOnSP in furtherance of that scheme . . . by interfering with the contractual relationship between JJHCS and patients.

PAC ¶ 2 (emphasis added). JJHCS's claims are thus facially untimely and futile. *See Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 175 (3d Cir. 1993) (affirming denial of motion to amend because untimeliness rendered it futile).

The PAC is not the first time JJHCS asserted that the SaveOn "scheme" began in 2016. JJHCS made the same claim in the Missouri Action, writing that "[s]ince 2016, SaveOnSP has worked exclusively with ESI." Mem. in Supp. of Mtn. to Compel, ECF No. 7 at 3. Moreover, as this Court has observed, "Plaintiff . . . knew of the SaveOnSp Program since 2017." ECF No. 192 at 14. Both JJHCS's brief and this Court's prior order are appropriate for judicial notice. *See Medley v. Atlantic Exposition Servs, Inc.*, 550 F.Supp. 3d 170, 184 (D.N.J. 2021) (taking judicial notice of filing in another forum and dismissing claim as time-barred); *McTernan*, 577 F.3d at 526 (holding a court "may take judicial notice of a prior judicial opinion" under the 12(b)(6) analysis). Indeed, in *Medley*, the District Court for the District of New Jersey dismissed a claim as time-barred because the plaintiff's filing in another

forum "demonstrate[d] beyond any doubt that he knew of the . . . actions concerning the alleged violations by that date." 550 F.Supp. 3d at 184. JJHCS cannot escape its briefing before another court any more than it can escape its pleadings before this Court.

## C.   Even Accounting for the Discovery Rule, the Limitations Period Began No Later than August 30, 2017

JJHCS cannot seek shelter under the discovery rule, because JJHCS has failed to plead that rule, much less facts sufficient to support it, in its facially untimely complaint. *Lockhart v. Dorrance Pub. Co., Inc.*, 2023 WL 157323, at *5 (D.N.J. Jan. 11, 2023) (Wolfson, J.) (dismissing claim where plaintiff failed to plead facts to support discovery rule). However, even assuming JJHCS deserves the benefit of the discovery rule, this Court has already found that JJHCS had knowledge sufficient to start the clock in 2017. *See* Op. and Order, Dkt. 192 at 14.

### a.   JJHCS Had Knowledge to Start the Clock Before 2018

New Jersey's discovery rule protects plaintiffs who, through no fault of their own, are unaware that they have claims. *See Lopez*, 300 A.2d at 566. The clock does not begin until a plaintiff "discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." *Id*. at 565.

The level of knowledge that will start the clock is minimal. "[K]nowledge of fault" does not require "knowledge of a basis for legal liability or a provable cause

of action." *Savage v. Old Bridge-Sayreville Med. Grp., P.A.*, 633 A.2d 514, 518 (N.J. 1993); *accord Lapka v. Porter Hayden Co.*, 745 A.2d 525, 530 (N.J. 2000) (courts "impute discovery if the plaintiff is aware of facts that would alert a reasonable person to the possibility of an actionable claim"). Thus, the clock begins once a plaintiff knows or reasonably should know that (1) the plaintiff has been injured (2) that the injury was caused by another. *See Baird v. Amer. Med. Optics*, 713 A.2d 1019, 1026 (N.J. 1998).

JJHCS has pleaded that its injury was financial, meaning, under its theory of injury, it was injured as soon as JJHCS paid an allegedly inflated copay for the very first SaveOn patient. *See* PAC ¶ 2 (alleging Intervenors have been "taking funds meant to help patients" by targeting "JJHCS's program" "[s]ince 2016"); *see also id.* ¶ 5 (describing damages as "depleting the support available"). Assuming JJHCS has any level of responsible financial monitoring in place, JJHCS must have known of its injury very shortly after the SaveOn service began in 2016. However, even if JJHCS lacked sufficient financial controls to notice the injury itself, it learned of the SaveOn service at some point in 2017. ECF No. 192 at 14.

b.      JJHCS Does Not Plead Support for the Discovery Rule

Once they have acquired knowledge that can start the clock, plaintiffs are under an obligation to act with reasonable diligence to determine whether to bring suit and to prepare to do so. *See, e.g.*, *Vispisiano v. Ashland Chem. Co.*, 527 A.2d

66, 71 (N.J. 1987). Plaintiffs who fail to exercise diligence cannot benefit from the discovery rule. *See, e.g.*, *McDade v. Siazon*, 32 A.3d 1122, 1131-32 (N.J. 2011); *Lapka*, 745 A.2d at 531-32; *McFadden v. U.S.*, 2016 WL 589681, at \*6 (D.N.J. Feb. 11, 2016) (Wolfson, J.).

Ordinarily, plaintiffs must carry the burden of proving that the discovery rule applies. *See, e.g.*, *Lopez*, 300 A.2d at 568. In this posture,[7] JJHCS must plead "'sufficient factual matter' for the court to infer that discovery may . . . keep alive [its] otherwise untimely claims." *Lockhart*, 2023 WL 157323 at \*5 (quotation omitted). Thus, JJHCS must "plead that [it] could not, by the exercise of reasonable diligence, have discovered essential information about the alleged [violation]." *Id.* (quotation omitted); *accord McKinney v. Lanigan*, 2021 WL 288465, at \*7 (D.N.J. Jan. 28, 2021) ("[I]t is necessary to plead the doctrine [of tolling or delayed accrual] or facts in support thereof where the claims are facially untimely.").

JJHCS does not plead it could not discover its claims with "reasonable diligence" because it knows that it cannot. Its own allegations show that JJHCS *did* exercise diligence – in fact, it apparently conducted an extensive survey of publicly available information and an analysis of internal JJHCS data in support of its complaint, *see* PAC ¶¶ 4, 31 n.8, 92, 108 (alleging analysis of "[i]nternal JJHCS data

---

[7] Were JJHCS faced with this challenge on a later motion – such as for summary judgment – JJHCS would have a heavier burden. *See Lopez*, 300 A.2d at 568.

concerning CarePath use" that allowed JJHCS), to determine the amount of funds SaveOn patients were using, as compared with funds of non-SaveOn patients. And that diligence clearly alerted JJHCS to Intervenors' roles with respect to the SaveOn product, as JJHCS's original complaint details those roles.

## D. JJHCS Cannot Rely on the Equitable Tolling, Relation Back, or Continuing Violation Doctrines to Save Its Claims

JJHCS has failed to plead any reasonable explanation for its delay, but it may attempt to raise a number of post-hoc rationalizations in briefing, such as equitable tolling, relation back, or the continuing violation doctrine. None would have merit even if they had been properly pleaded, which they were not.

### 1. Equitable Tolling Does Not Apply Because Intervenors Did Not Cause Delay by Concealing the Cause of Action

Equitable tolling, a close cousin of the discovery rule, stops the limitations clock "when a plaintiff is misled . . . and as a result fails to act within the prescribed time limit." *Bustamante v. Borough of Paramus*, 994 A.2d 573, 588 (N.J. Super. Ct. App. Div. 2010) (quotation omitted). Thus, to invoke equitable tolling, JJHCS would have to plead both that (1) Intervenors "misled" it to conceal their SaveOn-associated wrongdoing and (2) that the concealment worked, i.e. JJHCS did not timely file *because of* the deceit. *See id.*; *Villalobos v. Fava*, 775 A.2d 700, 708 (N.J. Super. Ct. App. Div. 2001).

JJHCS has failed to plead any such thing. The deceit it alleges either (1) were

unsuccessful, given JJHCS's actual knowledge in 2017; (2) attempted not to hide the existence of the cause of action, but rather to obscure which patients were linked to SaveOn; or (3) was designed for SaveOn to gain information from JJHCS. *See* Op. and Order, Dkt. 192, at 3; PAC ¶¶ 115, 122-24 (also alleging that concealment began "in or around January 2022"), 126-27. Moreover, the PAC cites publicly available documents describing the SaveOn product, belying any claim that Intervenors were trying to conceal it from JJHCS. *See, e.g.*, PAC ¶¶ 4, 31 n.8, 108. JJHCS's failure to act timely thereafter cannot be the "result" of concealment, and equitable tolling therefore cannot apply. *Bustamante*, 994 A.2d at 588.

## 2. The Relation Back Doctrine Does Not Apply Because There Was No Mistake Concerning the Identity of Any Defendant

The Federal Rules of Civil Procedure permit amendments to relate back to original pleadings, for limitations purposes, where plaintiffs made "an error . . . concerning the identity of the proper" defendants. *Slater v. Skyhawk Transp*., Inc., 187 F.R.D. 185, 195 (D.N.J. 1999) (Wolfson, J.). Relation back does not apply, by contrast, "where there is lack of knowledge of a proper party." *Id*. at 195 (rejecting attempt to add a new defendant because "[t]here has not been a mistake in identity. [T]he plaintiff . . . seeks to add an additional defendant, which he cannot do.").

Nor do the Rules permit plaintiffs to exploit relation back strategically. "Where . . . there is no reason . . . to believe that the plaintiff did anything other than make a deliberate choice between potential defendants, courts have consistently held

that" relation back does not apply. *Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1183 (3d Cir. 1994)*; accord Garvin v. Philadelphia*, 354 F.3d 215, 221-22 (3d Cir. 2003) ("[A]n amended complaint will not relate back if the plaintiff had been aware of the identity of the newly named parties when she filed her original complaint and simply chose not to sue them at that time.").

It is undisputed that JJHCS was "aware of the identity of the newly named parties when [it] filed [its] original complaint and simply chose not to sue them at that time." *Garvin*, 354 F.3d at 221-22. The original complaint repeatedly names Intervenors. *See, e.g.*, Compl. ¶¶ 28, 37, 38, 51. Courts in this District routinely reject this kind of gamesmanship. *See, e.g., Garvin*, 354 F.3d at 221-22.; *Slater*, 187 F.R.D. at 195; *Franks v. Cape May County*, 2009 WL 10727959, at *6 (D.N.J. Aug, 31, 2009); *Walls v. County of Camden*, 2008 WL 4934052, at *8 (D.N.J. Nov. 13, 2008).

Moreover, even if JJHCS had been unaware of Express Scripts' and Accredo's identities (a dubious proposition given the extensive information JJHCS had concerning Intervenors and SaveOn when it filed the original complaint), JJHCS was required to use fictitious defendant pleading to preserve its claims against unknown defendants. *Rolax v. Whitman*, 53 Fed. Appx. 635, 637-38 (3d Cir. 2002) (where plaintiffs are unaware of "specific names, our jurisprudence requires that [they] use 'fictitious-defendant pleading' to preserve [their] claim."). Plaintiffs who

disdain fictitious-defendant pleading cannot later argue their untimely claims were preserved. *See id.* (dismissing cause of action as time-barred where plaintiff failed to use fictitious-defendant pleading); *Lewis v. Brown*, 2010 WL 1371939, at *10 (D.N.J. Mar. 30, 2010) (holding claim untimely where plaintiff failed to preserve it using fictitious-defendant pleading). JJHCS failed to use fictitious-defendant pleading. It therefore cannot rely on the relation back doctrine to salvage its time-barred claims, rendering those claims futile. *See Brown v. Camden County Counsel*, 2009 WL 5174640, at *2 (D.N.J. Dec. 17, 2009) (dismissing claim as time-barred where plaintiff failed to plead fictitious defendant).

### 3. The Continuing Violation Doctrine Does Not Apply to Tortious Interference with Contract Claims

The continuing violation doctrine, or continuing tort doctrine, has been classically applied only to hostile work environment and "continuing nuisance" claims. *See Shepherd v. Hunterdon Dev. Ctr.*, 803 A.2d 611, 625 (N.J. 2002)[8]; *see also Lyons v. Township of Wayne*, 888 A.2d 426, 433 (N.J. 2005). Highlighting the "narrowly delineated" nature of the doctrine, the Appellate Division has refused to extend it to tortious interference with contract. *Egg Harbor Assoc., LLC v. Village Supermarkets, Inc.*, 2020 WL 132768, at *3 (N.J. Super. Ct. App. Div. Jan. 13,

---

[8] JJHCS has repeatedly asserted that New Jersey law controls its tortious interference claims. *See* ECF No. 79 at 5 ("a tortious interference with contract claim under New Jersey common law"); ECF No. 34 at 38 n.19 (arguing for New Jersey choice of law).

2020).  JJHCS therefore cannot invoke this doctrine.

## VI. CONCLUSION

For the foregoing reasons, Intervenors respectfully request that this Court deny JJHCS's motion for leave to amend.  In the alternative, Intervenors respectfully request that this Court order targeted discovery on the extent and timing of JJHCS's knowledge of SaveOn in 2016 through early 2018, to be followed by briefing on a motion for summary judgment on whether JJHCS's claims are time-barred.

Dated: May 20, 2024

/s/ Mark A. Berman

Mark A. Berman
HARTMANN DOHERTY ROSA
BERMAN & BULBULIA LLP
433 Hackensack Ave. Suite 1002
Hackensack, NJ 07601
(201) 441-9056
mberman@hdrbb.com

*Counsel of Record for Intervenors Accredo Health Group, Inc. and Express Scripts, Inc.*

Jeremy M. Sternberg (*pro hac vice*)
Andrew Solinger (*pro hac vice*)
Emily A. Robey-Phillips (*pro hac vice*)
Holland & Knight LLP
10 St. James Avenue, 11th Floor
Boston, MA 02116
(617) 523-6850
Jeremy.sternberg@hklaw.com
Andrew.solinger@hklaw.com
Emily.robey-phillips@hklaw.com

*Counsel for Intervenor Accredo Health Group, Inc.*

Sarah C. Hellmann (*pro hac vice*)
Christopher A. Smith (*pro hac vice*)
Kate Ledden (*pro hac vice*)
Husch Blackwell LLP
8001 Forsyth Blvd., Suite 1500
St. Louis, Missouri 63105
(314) 480-1500
Fax: (314) 480-1505
sarah.hellmann@huschblackwell.com
chris.smith@huschblackwell.com
kate.ledden@huschblackwell.com

*Counsel for Intervenor Express Scripts, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of May 2024, the foregoing was electronically filed to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ Mark A. Berman
Mark A. Berman