

Freda Wolfson
Chief U.S. Dist. Judge (ret.)
Partner

One Lowenstein Drive
Roseland, New Jersey 07068

T: **(862) 926-2708**
F: **(973) 597-2400**
E: **fwolfson@lowenstein.com**

## SPECIAL MASTER MEMORANDUM ORDER

**FILED ON ECF**
**TO ALL COUNSEL OF RECORD**

  Plaintiff Johnson and Johnson Healthcare Services ("Plaintiff") and Defendant SaveOnSp, LLC ("Defendant") have brought competing discovery-related motions. Defendant filed the following motions: 1) Co-Pay Adjustment Program ("CAP") motion related to Judge Waldor's November 7, 2023 Order ("CAP I Motion"); 2) CAP (Cost motion related to search terms applicable to CAP custodians ("CAP II Motion"); and 3) motion to seek relief from Special Master Order dated February 6, 2024 ("Motion for Relief"). Plaintiff filed the following motions: 1) motion to compel production of documents responsive to RFPs 95 and 96 ("Motion to Compel Production I"); 2) motion to compel production of documents responsive to RFPs 99, 102 and 103 ("Motion to Compel Production II"); 3) motion to compel supplementary responses to interrogatories Nos. 4, 15–17, and 19–20 ("Motion to Compel Responses").[1] On April 3, 2024, I held a Zoom hearing with the parties to address these motions. For the reasons set forth on the record and below, I make the following findings:

  1. As it relates to Defendant's CAP I Motion, I find that Judge Waldor's November 6, 2023 ("November 6th Order") is unambiguous and that Paragraphs 2 and 3 of the Order are

---

[1]  Plaintiff also filed a motion to strike Exhibit 81 to ECF No. 165 from the Docket based on privilege grounds, and Defendant filed a motion to reconsideration/clarification of the February 6th Order. I will issue separate letter orders to address these motions.

consistent, and in her Order, Judge Waldor specifically imposed a "SaveOn" limiter[2] with regards to custodial document searches of the CAP program. However, based on Judge Waldor's comments on the record, she also left open the possibility of amending her Order should circumstances arise that make it appropriate to do so. Based on certain documents that were produced to Defendant after the issuance of the November 6th Order, I find that the "SaveOn" limiter is still appropriate, except that I direct the parties to add "OR accumulat* OR maximiz*" in addition to the "SaveOn" limiter imposed by Judge Waldor. The addition of these two terms is reasonable because later-produced documents reference accumulator and maximizer programs without mentioning "SaveOn," but they clearly are highly relevant documents to Defendant's defense. With the additions, the search string is: ("SaveOn" (and other reasonable variations) OR accumulat* OR maximiz*).

2. With regards to the CAP II Motion, for the same reasons set forth in paragraph 1 of this Order, I find that it is appropriate to place the "SaveOn" limiter, including accumulator and maximizer, to custodial searches of the newly designated custodians, *i.e.*, Quinton Kinne, Daphne Long-Bothum, William Shontz, John Hoffman, L.D. Platt, Alison Barklage (custodians designated by Judge Waldor's November 6th Order), Scott White, Blasine Penkowski, and Karen Lade (custodians destinated by my February 6th Order). The search string is the same as above: ("SaveOn" (and other reasonable variations) OR accumulat* OR maximiz*).

3. As to Defendant's Motion for Relief, Plaintiff is directed to produce the applicable pre-2013 retention policy to Defendant by April 17, 2024.

---

[2] According to the November 6th Order, the "SaveOn" limiter includes reasonable variations and/or abbreviations of "SaveOn" search term.

2

4. By April 17, 2024, the parties are directed to meet and confer regarding terms applicable to custodial searches of Kimberly Wortman and Kathi Chapman, who were identified by Plaintiff as individuals responsible for drafting terms and conditions of predecessor programs (pre-2016) to CarePath. As suggested during the hearing, although not mandatory, the search terms should exclude Janssen, but may include these additional terms and/or variations thereof: "savings program," "rebate program," "access program," "terms and condition," "other offer," "coupon," discount," "prescription savings card," and/or "free trial." As the parties have agreed, the search string should also include the relevant drugs at issue in this case. Moreover, Plaintiff shall identify, if any, the names or identity of predecessor programs or drugs by April 17, 2024. Finally, Plaintiff is directed to further investigate whether there are any additional custodians who were tasked in drafting, or otherwise involved in drafting, the terms or conditions of predecessor programs. Should there be any additional custodians in this context, Plaintiff is directed to promptly notify Defendant.

5. As to the parties' dispute of search terms for CAP-related custodians, which centers on the terms "NEHB" and "EHB," the parties have, during the hearing, compromised on a search string (*see* Transcript of Hearing, T82:23-T85:10). The only dispute remaining dealt with the tightness of the connections of the words, *i.e.*, w/25 or w/50. Plaintiff shall advise Defendant of the hit count as to both sets of word counts. The parties shall agree upon the final search string by April 17, 2024.

6. Regarding terms related to TrialCard statement of work for Scott White and Blasine Penkowski, Plaintiff is directed to run Defendant's proposed search terms and determine the hit count. Those terms are as follows:

> ("TrialCard" OR "Trial Card" OR TC) AND ((statement* /5 work) OR "SOW*"
> OR contract*) AND (CarePath OR (care w/2 path) OR Carpath OR Carepth OR

3

>CP OR JCP OR "Savings Program" OR "WithMe" OR (with w/2 me)) AND (BALVERSA OR DARZALEX OR ERLEADA OR IMBRUVICA OR OPSUMIT OR PREZCOBIX OR REMICADE OR RYBREVANT OR SIMPONI OR STELARAOR OR SYMTUZA OR TRACLEER OR TREMFYA OR UPTRAVI OR VENTAVIS OR ZYTIGA)

Should the parties disagree on the production of documents under Defendant's proposed search terms, they can promptly bring that dispute to my attention.

7. As to the search terms regarding the group Penkowski convened to respond to accumulator sand SaveOn, the parties are directed to meet and confer on these terms, since no prior meet and confer on the parties' respective proposed terms occurred. The parties shall do so by April 17, 2024. In advance of the meet and confer, Plaintiff shall advise Defendant of the hit count for each of the parties' proposed search strings.

8. With respect to the search terms related to Harris and De Camara, I find that, consistent with my February 6th Order, those terms must be limited to both individuals' third-party communication involving the terms and conditions for Stelara and Tremfya. In that connection, based on the current record at this juncture, I reject Defendant's proposal that seeks to expand the search of these two custodians by imposing terms related to "SaveOn"; Defendant's proposal is too broad based on the original purpose of adding these custodians, which was confined to drafting of the terms and conditions for Stelara and Tremfya.

9. With respect to the Motion to Compel Production II, Plaintiff's motion is **GRANTED**. According to Plaintiff, RFPs 99, 102 and 103 seek approximately 5,000 pages of documents concerning the harmful impact of Defendant's advised programs on patients and their healthcare costs, and Defendant's alleged misleading communications regarding the same. There is little dispute that these requests are relevant. Rather, Defendant's objection is based primarily on burden. In that regard, Defendant submits that it has reviewed over a million documents from

4

29 custodians and non-custodians sources, using over 90 search terms. Moreover, it has produced more than 260,000 documents spanning its entire existence. Defendant argues that the additional 5,000 pages of documents will be cumulative, duplicative or irrelevant. A party resisting discovery on the grounds of burden or expense "bears the burden of showing specifically how the request is burdensome." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.,* No. 09-290, 2010 U.S. Dist. LEXIS 125252, at *10 (W.D. Pa. Nov. 29, 2010)(citation omitted); *Taro Pharm. v. Lupin Ltd.*, No. 18-4225, 2019 U.S. Dist. LEXIS 41915, at *3 (D.N.J. Mar. 12, 2019). "[U]nsubstantiated claims of burden and expense are insufficient to withhold otherwise relevant discovery." *Taro Pharm*, 2019 U.S. Dist. LEXIS 41915, at *4. Here, Defendant argues that because it has already produced large quantity of documents, any documents identified by Plaintiff's proposed terms are highly likely to be duplicative. More specifically, with regard to RFP 103, Defendant points out that Plaintiff already asked for documents relating to attempts by Defendant to evade or avoid detection of the SaveOnSP Program by drug manufacturers in one of its prior RFPs (*See* RFP 79: All documents relating to any attempts by SaveOnSP to evade or avoid detection of the SaveOnSP Program by drug manufacturers, including but not limited to the creation of "one time" or temporary copay coupons or credit cards for the purpose of paying a patient's out-of-pocket responsibility). However, that Request does not ask for any communications regarding out-of-pocket costs or copays. Additionally, Defendant maintains that it has already produced documents regarding its offer of $0 co-payments to patients, including communications relating to whether to cease offering $0 co-payments and documents concerning an increase to Defendant's copay or out-of-pocket obligations. However, as Plaintiff has explained, these subject RFPs were sent to shed light on Defenant's alleged recent efforts to mislead patients and to further its ongoing tortious interference with Plaintiff's contracts, and to prevent Plaintiff from detecting and stopping

5

the same. For example, during the course of discovery, Plaintiff received documents that reflect a new offering from Defendant, entitled "Adapt." According to Plaintiff, this program may harm patients on high deductible health plans by vastly increasing their required out of pocket healthcare expenditures. Plaintiff believes that Defendant recently modified the way its program applies to patients enrolled in high deductible health plans, potentially depriving them of the benefit of manufacturer patient assistance until they have met their deductible. In short, these requests are aimed to find documents that touch upon those offerings and alleged changes in the way Defenant has instructed its employees to communicate with patients. Indeed, none of the prior requests, identified by Defendant, were served for, or meant to capture, that purpose. Accordingly, Defendant has not demonstrated that these new proposed searches or requests would only result in duplicative or cumulative productions, albeit there may be some duplication. Next, based on the number of documents, Defendant has not shown that it would be prohibitively expensive or that it would be unduly burdensome to review those documents. While Defendant has produced over 260,000 documents, the mere volume of production does not undermine the fact that these requests seek to search for documents that are tailored to the change in Defendant's communications and policy regarding high deductible copay insurance, or the so-called Adapt program. Because 5,000 is not a prohibitive number of documents and because the documents requested are relevant, Defendant is directed to produce relevant, non-privileged documents requested in RFPs 99, 102 and 103[3] by April 30, 2024.

10. Regarding Plaintiff's Motion to Compel Production I, Plaintiff moves to compel Defendant to produce documents responsive to RFPs 95 and 96, both of which relate to measures

---

[3] Because the documents responsive to RFPs 99, 102 and 103 have been identified by Defendants, I need not address the appropriate search terms for these requests.

6

that Defendant has purportedly taken under the pretext of enforcing confidentiality policies to prevent its current and former employees from speaking publicly on Defendant's alleged misconduct. On the record, I concluded that based on the language of RFPs 95 and 96, Defendant's responses are sufficient, and no further responses are required, save for one exception. To the extent Defendant conducted investigations to reveal whether Defendant enforced its confidentiality policies to silence or threatened its current or former employees from speaking to outside companies, like Plaintiff, Defendant must revise its responses to reflect the result of those investigations. Defendant shall do so by April 24, 2024. I further concluded that Plaintiff may serve narrower requests related to this topic should they be appropriate. I cautioned, however, that the requests must be narrowly tailored as to the scope of the subject matter and time period.

11. With respect to Plaintiff's Motion to Compel Responses, Plaintiff seeks supplemental responses to Interrogatory Nos. 4, 15–17, and 19–20. According to Plaintiff, these Interrogatories concern the alleged deceptive tactics that Defendant employs to evade detection of its scheme. Plaintiff requests, pursuant to Fed. R. Civ. P. 26(e), an order compelling Defendant to immediately (1) diligently investigate all information in its possession potentially responsive to the Manufacturer Evasion Interrogatories; and (2) correct and supplement its responses to those Interrogatories as necessary. At the outset, I note that typically, Rule 26(e) is used in assessing whether a party has failed to disclose certain information during discovery. A failure to do so would subject that party to sanctions, such as exclusion of such evidence. *WebXchange Inc. v. FedEx Corp.*, No. 08-133, 2010 U.S. Dist. LEXIS 4528, at *6 (D. Del. Jan. 20, 2010). While Rule 26(e) imposes the obligation to correct or supplement information provided in an interrogatory, there is no case law support for the proposition that Rule 26(e) can be the basis for a party to demand certain admissions from another party based on documents otherwise received during

discovery, particularly when the pertinent facts are in dispute.[4] I concluded that based on the current record, Defendant's responses to the subject interrogatories are sufficient. One exception is the following language that Defendant used in its responses: "not aware of." To the extent appropriate, Defendant shall amend its responses to reflect that it has done a proper investigation and the investigation did not reveal any instances of alleged conduct as specified in the interrogatories. Defendant shall do so by April 24, 2024.

Dated: April 10, 2024

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson (ret.)
Special Master

---

[4] While Defendant responded to the Interrogatories, it nevertheless opposed Plaintiff's motion, in part, based on the relevancy of the Interrogatories. During the hearing, I found that the Interrogatories are relevant to Plaintiff's claims. Specifically, I reasoned that Defendant's alleged conduct of making misrepresentations to Plaintiff is relevant to the tortious interference claim, because that conduct bears on the issue of whether Defendant employed wrongful means in its alleged efforts to induce patients to breach the terms of the CarePath Program. Further, the interrogatories are relevant to Plaintiff's GBL claim, which requires Plaintiff to prove that Defendant is engaging in acts or practices that are deceptive or misleading in a material way. While in order to prove that claim, Plaintiff must establish that Defendant deceived patients in some material way, as part of the scheme, however, Plaintiff is entitled to discovery on any acts that Defendant employed to effectuate or implement the scheme. I clarified that the relevancy determination is solely for discovery purposes; it does not address or impact in anyway the elements, or proof, of the substantive claims.