**Lowenstein Sandler**

| **Freda Wolfson** | One Lowenstein Drive |
| Chief U.S. Dist. Judge (ret.) | Roseland, New Jersey 07068 |
| Partner | |
| | T: (862) 926-2708 |
| | F: (973) 597-2400 |
| | E: fwolfson@lowenstein.com |

# LETTER ORDER

May 28, 2024

*VIA ECF and Email*
TO ALL COUNSEL OF RECORD

      RE:    *Johnson & Johnson Health Care Systems, Inc. v. SaveOnSP, LLC*
                **Civ. Action No.: 22-2632(JKS)(CLW)**

Counsel:

On May 23, 2024, I conducted a hearing via Zoom on three discovery-related motions filed by both Plaintiff Johnson & Johnson Health Care Systems, Inc. ("Plaintiff" or "JJHCS") and Defendant SaveOnSp, LLC ("Defendant" or "SaveOnSP"): 1) Plaintiff's motion to compel Darcie Falsioni's third-party communications; 2) Defendant's motion to compel JJHCS to produce documents in the possession of TrialCard, Inc. ("TrialCard"); and 3) Defendant's motion to compel document concerning Best Price Rule. Because my rulings are memorialized on the record, I summarize them here; however, as discussed, I will provide a more fulsome explanation on the issue of TrialCard's documents.

First, Plaintiff sought additional documents from Falsioni, Defendant's Corporate Counsel and Chief Compliance Officer and a designated custodian. These requested documents relate to communications that Falsioni had with third parties regarding the SaveOnSp program. Plaintiff argued that these documents are relevant because Falsioni negotiates contractual terms with Defendant's clients which could shed light on the alleged interference scheme. Plaintiff proposed the following search string:

1

*"service agreement" OR BAA OR "business associate agreement" OR joinder OR PHI OR contract OR amendment*

On the record, I found that the requested documents are relevant; however, I agree with Defendant's position that the search string is too expansive by using "OR" in connecting each seemingly broad independent term, such as "contract" or "amendment." I instructed the parties to meet and confer on the search string, with the suggestion that each term should be qualified by other terms such that the search would only generate relevant documents. The parties shall confer on the appropriate search terms by June 4, 2024. If any dispute arises, I can assist the parties in resolving their differences.

As to the Best Price Rule motion, Defendant sought documents regarding Plaintiff's "best price" certification to the federal government pursuant to Department of Health and Human Services' Best Price Rule. These documents are related to Defendant's Requests for Production Nos. 8, 70 and 79. Defendant insists that it is entitled to such documents for its mitigation defense; that is, to show that Plaintiff changed certain terms and conditions of its CarePath program and the creation of the CAP Program in response to the promulgation of the 2023 Best Price Rule, which never went into effect. While I agree with Defendant's position that these documents *may* reveal Plaintiff's intent and motivation in identifying its patients who are on SaveOnSp's programs, nonetheless before any production on the part of Plaintiff, Defendant must first serve interrogatories on Plaintiff—I suggest no more than three—to explore the purpose of an internal

2

checklist[1] that may or may not relate to Plaintiff's obligations under the Best Price Rule. Relatedly, Defendant may question Plaintiff regarding who was responsible for creating the internal checklist. I advised Defendant that these interrogatories must be targeted and narrow in scope.[2] Once the interrogatories are served and answered, the parties must meet and confer on appropriate search terms and whether any additional custodians may need to be included on this issue. Again, if any issues arise, the parties shall bring them to my attention.

Finally, I will further expand upon my decision granting Defendant's motion to compel JJHCS to produce TrialCard documents. In that motion, Defendant moved to compel Plaintiff to produce the following responsive documents in the possession of its vendor TrialCard, related to work performed by TrialCard for Plaintiff: (1) documents and communications related to TrialCard's administration of CarePath from the "refresh" time period of July 1, 2022 to November 7, 2023; and (2) documents and communications regarding TrialCard's efforts on behalf of Plaintiff to identify patients on accumulators, maximizers, and SaveOnSP-advised plans, including communications about benefits investigations.

---

[1] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ SaveOn Ex. 7 (JJHCS_00204199) at -421, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[2] The time period for the search should be limited to the period from the date when the 2023 Best Price Rule was proposed by the government until it was invalidated by the District Court in the District of Columbia.

3

As a third-party independent contractor, TrialCard administers the CarePath Program at the behest of Plaintiff. Indeed, TrialCard manages that program pursuant to a Master Services Agreement ("MSA") executed between the two parties. In that role, there is no dispute that TrialCard interfaces directly with patients, using materials that are approved by Plaintiff, to 1) screen patients to determine their eligibility for CarePath; and 2) disburse the CarePath funds. Additionally, TrialCard has been involved in identifying patients who are on SaveOnSp programs, and according to Defendant, TrialCard collaborated with Plaintiff in designing the CAP program.

According to Defendant, TrialCard has been withholding critical documents that relate to Defendant's defense, including mitigation of damages. Defendant maintains that while TrialCard produced a spreadsheet summary of the results of its benefits investigations for Plaintiff, TrialCard refuses, for example, to produce documents showing how it chooses which patients to investigate, how it conducts those investigations, how it determines if a patient is on an accumulator, maximizer, or plan advised by SaveOnSP, or any internal communications regarding any directions provided by Plaintiff. Defendant further maintains that although Plaintiff has produced some communications with TrialCard about patients identified through the CAP Program, documents show that TrialCard also held internal discussions related to the results of benefits investigations, which were not produced. In addition, Defendant argues that TrialCard is inappropriately withholding documents relating to methods that it used or considered using, in addition to benefits investigations, to attempt to identify members of SaveOnSP-advised plans.

4

Rather than filing a motion to compel TrialCard to produce those documents in North Carolina pursuant to Fed. R. Civ. P. 45, Defendant argues that these documents are within the "legal control" of Plaintiff such that Plaintiff may be compelled, here, to produce those documents.

The parties' primary dispute is whether Plaintiff has "legal control" over the documents Defendant seeks, as those documents are in the possession and custody of TrialCard. Defendant argues that the audit provisions in the MSA between Plaintiff and TrialCard are sufficient to establish control under Rule 34. On the other hand, Plaintiff insists that it does not have control over the requested documents because, in its view, the MSA provides only limited rights to audit certain documents for limited purposes. I disagree.

Federal Rule of Civil Procedure 34 allows "[a] party . . . [to] serve on any other party a request . . . to produce . . . in the responding party's possession, custody or control . . . any designated documents . . . ." Fed. R. Civ. P. 34(a). "In the absence of control by a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has no duty to produce." *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 140 (3d Cir. 1988). "In the context of Fed. R. Civ. P. 34(a), so long as the party has the legal right or ability to obtain the documents from another source upon demand, that party is deemed to have control." *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004). Importantly, a "practical ability to obtain the requested documents" from separate corporate entities is not enough to constitute control because an entity "could legally . . . refuse to turn over such documents." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107-

5

08 (9th Cir. 1999). Instead, "control" is defined as "the legal right to obtain documents upon demand." *United States v. International Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989). Federal courts construe "control" very broadly for Rule 34 purposes. *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991).

A contractual right to obtain documents in the possession of a third party can constitute control for Rule 34 purposes. *See, e.g., Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*, 2016 U.S. Dist. LEXIS 20076, at *4 (D. Del. Feb. 12, 2016) (stock purchase agreement with third party provided requisite control); *Lofton v. Verizon Wireless (Vaw) LLC,* 2014 U.S. Dist. LEXIS 165140, at *1 (N.D. Cal. Nov. 25, 2014) (audit provisions in vendor contracts provided control over third party's documents); *Haskins v. First Am. Title Ins. Co.*, 2012 U.S. Dist. LEXIS 149947, 2012 WL 5183908, at *2 (D.N.J. Oct. 18, 2012) (contracts provided control over and access to third party agents' files).

Here, the relevant audit provisions of the MSA provide:



6



(MSA, § 17 (emphasis added).)

First, that the intent of § 17 may be on financial audits is of no moment. Indeed, the crux of the "control" analysis is whether the parties intended to provide Plaintiff

7

access to certain documents such that Plaintiff may audit or examine those documents. In other words, the focus is on whether Plaintiff has "the contractual right to obtain the documents requested." *Moretti v. Hertz Corp.*, No. 14-469, 2018 U.S. Dist. LEXIS 168609, at *8 (D. Del. Sep. 30, 2018). In that regard, Plaintiff's reliance on *Inline Connection Corp. v. AOL Time Warner, Inc.*, Nos. 02-272, 02-477, 2006 U.S. Dist. LEXIS 72724, at *11 (D. Del. Oct. 5, 2006) is misplaced. For one, in that case, unlike the broad provision in the MSA here, the contract in *Inline* required a non-party to provide information only "where feasible," which the court construed as merely providing the contracting party access to information. *Id*. Here, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This language plainly is distinguishable from the provision in *Inline*.[3]

Indeed, during oral argument, Plaintiff conceded that the MSA's audit provision is quite broad. That provision states that TrialCard "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[3] During oral argument, Plaintiff argued that I should be guided by the decision in *Camden Iron*, and consider whether the documents sought are records which JJHCS may request and obtain in its normal course of business with TrialCard. But that case is distinguishable because it dealt with a parent and subsidiary relationship and the related companies' course of dealings, not control governed by a written agreement executed by two unrelated corporate entities.

███████████████████████" Courts that have examined similarly broad language have found control for the purposes of Rule 34. *See, e.g.*, *Moretti*, 2018 U.S. Dist. LEXIS 168609, at *4-5 ("To allow representatives of International or Hertz, at any time during normal business hours, to inspect the premises, records, and vehicles of the Licensee used in operation as a Hertz System Licensee and to examine Licensee's records ascertaining and verifying the number of vehicles owned, leased, used or kept by the Licensee for use in Licensee's Vehicle Renting Business, the revenues therefrom and any - other information required by Hertz with respect to the Licensee's Vehicle Renting Business."); *Mercy*, 380 F.3d at 160 (where the subcontractor was "employed . . . to conduct the audit and receive documents," and thereby agreed to make available pertinent files "at all reasonable times, for review and obtaining any necessary information," the Third Circuit held that the "the documents were accessible to the [contracting party] and within its control"); *Haskins*, 2012 U.S. Dist. LEXIS 149947, at *2 (finding control from contract language that indicates that the third-party must "[m]aintain and carefully preserve all records . . . [and] [p]ermit [the defendant] to examine, audit and copy all financial information and records upon reasonable prior notice").

Turning to the documents sought by Defendant, these fall within the broad audit provision of the MSA. Defendant has requested production of documents and communications relating to the administration of CarePath, call recordings and other records reflecting communications between TrialCard's CarePath call center and patients, and documents and communications related to the implementation of the CAP program and TrialCard's benefits investigations. Presumably, these documents are being

9

"maintained by [TrialCard] in relation to [the MSA] and/or any applicable Work Orders" such that Plaintiff "shall at any time have the right to request [those] documents." (MSA, § 17.2.) They also fall under the term "other records" in the same provision. (*Id.*)("[██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████]

Accordingly, I find that by virtue of the MSA, Plaintiff has legal control over the requested documents.

Having made that determination, I direct the parties to meet and confer on the scope of the TrialCard discovery by June 4, 2024. While I am not making any rulings on the appropriate scope or burden of the requested discovery in this context, I nevertheless make the following observations. At the outset, I reiterate that the requested discovery is relevant as the documents at issue relate to the creation and implementation of the CAP Program, and benefits investigations into whether patients were on SaveOnSP programs. Although Plaintiff argues that many of the TrialCard documents that Defendant seeks are cumulative of party discovery, I am not convinced, based on the simple fact that TrialCard, itself, has not performed a search of the requested documents to determine whether it possesses additional relevant documents. In short, regardless of whether the documents may be cumulative, to make that determination, TrialCard must first conduct a search at the request of JJHCS. Finally, at this juncture, I note that Plaintiff has not

10

presented any compelling reasons to avoid refreshing the production of the categories of documents that TrialCard has already agreed to produce.

                                                                   */s/ Freda L. Wolfson*
                                                                   Hon. Freda L. Wolfson (ret.)
                                                                   Special Master