# EXHIBIT A

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

February 16, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

> Re:  *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
> *No. 2:22-cv-02632 (JKS) (CLW)*

Dear Judge Wolfson:

In a motion on February 7, 2024, Defendant Save On SP, LLC ("**SaveOn**") moved Your Honor to compel Johnson & Johnson Health Care Systems, Inc. (with its affiliates, "**J&J**") to run the following search terms—"CAPa" OR "CAPm" OR "adjustment program" (the "CAP Terms")—over the files of its existing custodians, without any limitation, from July 1, 2022 to November 7, 2023, as part of J&J's refresh production. Since then, J&J has also refused to run the unlimited CAP Terms over the files of newly ordered custodians Quinton Kinne, Daphne Long-bothum, William Shontz, John Hoffman, L.D. Platt, Alison Barklage, Scott White, Blasine Pen-kowski, and Karen Lade for any time period. SaveOn thus brings this additional motion to compel J&J to run the unlimited CAP Terms for its new custodians as well.

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                      Page 2

The Cost Adjustment Program or Copay Adjustment Program (the "<u>CAP Program</u>") is J&J's formal response to "accumulators" and "maximizers," which it believes includes SaveOn. Dkt. 166 at 4. Documents about the CAP Program go to the heart of SaveOn's mitigation defense: J&J used it to identify patients on SaveOn-advised plans or plans that it believed were maximizers or accumulators, Dkt. 166 Ex. 1, but it disbursed copay assistance funds to them anyway. Such evidence could limit or even eliminate J&J's claims for damages. Judge Waldor and Your Honor have both recognized the CAP Program's relevance. Dkt. 173 at 2-3; Dkt. 192 at 25-26.

In her November 7, 2023 Order, Judge Waldor ordered J&J to add Kinne, Longbothum, Shontz, Hoffman, Platt, and Barklage as custodians, noting that each was "identified with regard to the CAP program," Dkt 173 at 2; *see also* Ex. 1 at 110:20-111:5 (Jan. 24, 2024 Hr'g Tr.) ("[T]hese are CAP people."). In Your Honor's February 6, 2024 Order, Your Honor ordered J&J to add White, Penkowski, and Lade, who also had relevant documents regarding the CAP Program in particular and J&J's responses to accumulators, maximizers, and SaveOn generally. Dkt. 192 at 28-29.

In SaveOn's motions asking the Court to compel J&J to add these custodians, SaveOn asked that J&J run all previously agreed-upon search terms over their files. *See* Dkt 165 at 15; Ex. 2 (Dec. 28, 2023 Ltr.); Ex. 3 (Jan. 16, 2024 Ltr.). J&J previously agreed to run the CAP Terms for its existing custodians for the period from April 1, 2016 to July 1, 2022. Ex. 4 at App'x 1 & n.7 (Dec. 22, 2023 Ltr.). Remarkably, however, J&J now refuses to run the CAP Terms over any time

Hon. Freda L. Wolfson                                                    Page 3

period for any new custodian without the limitation that the document also explicitly mention SaveOnSP. Ex. 5 (Feb. 14, 2024 Ltr.).[1]

By refusing to run the CAP Terms without a SaveOn limiter, J&J renders the CAP Terms meaningless. J&J is already running search terms like SaveOnSP, SaveOn, SOSP, and other variations on SaveOn's name. *See* Ex. 4 at App'x 1 (Dec. 22, 2023 Ltr.). Running the CAP Terms limited to documents that already mention SaveOnSP means that J&J's proposed modification to the CAP Terms will result in ***no new documents***. This would be a highly perverse result: J&J would effectively run no new search terms related to the CAP Program across the files of the new custodians, who were found to be highly relevant to that program.

Documents related to the CAP Program are relevant whether they explicitly mention SaveOn or not, because the purpose of the CAP Program is to respond to SaveOn and businesses like it. *See, e.g.,* Ex. 6, at 1, 2, 8 (TRIALCARD_00005044) (███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████). From other custodians, J&J has produced documents relevant to that program that do not refer directly to SaveOn. *See, e.g.*, Ex. 7 (JJHCS_00142757) (███████████

████████████████████████████████████████████████);

Ex. 8 (JJHCS_00001497) (████████████████████████████

████████████████████████ Ex. 9 (JJHCS_00002774) (████████

---

[1] The only terms regarding the CAP program that J&J has indicated a willingness to run are: (1) (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP) and (2) ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (case sensitive).

Hon. Freda L. Wolfson                                                                          Page 4

███████████████████████████████████████████████████████████

███████████████████████████████████████    J&J's proposal to use a SaveOn limiter would

let J&J withhold such documents in the new custodians' files.

J&J has not advanced any claim that running the unlimited CAP Terms for the new custo-

dians would be burdensome. It agreed to run those terms for its previous custodians from April 1,

2016 to July 1, 2022 without such an objection. SaveOn asked that, if J&J objected on burden

grounds, it provide hit counts for any term it refused to add, Ex. 10 at 2 (Jan. 29, 2024 Ltr.); J&J

did not do so, Ex. 5 (Feb. 14, 2024 Ltr.).

J&J's sole basis for its position is to cite Paragraph 2 of Judge Waldor's November 7, 2023

Order regarding Docket Entry No. 166, which compelled J&J to run the CAP Terms with a SaveOn

limiter for its existing custodians from January 1, 2022 to the present, Ex. 11 (Feb. 15, 2024 Ltr.).

Paragraph 2 does not support J&J's position. *First*, by its terms, it did not apply to documents

before 2022, so it is no basis for J&J to refuse to run the unlimited CAP Terms before then. (In

Dkt. 166, SaveOn moved for the CAP Terms to be run from July 1, 2022 to the present because,

at the time, the parties had generally agreed to cut off discovery at July 1, 2022.) *Second*, Judge

Waldor's Order could not have applied to White, Penkowski, and Lade because she did not order

J&J to add them as custodians; Your Honor would not do that until January 2024. *Third*, J&J

previously argued that Paragraph 2 allowed it to apply a SaveOn limiter to the CAP Terms for

other custodians, Ex. 12 at 5 n.1 (Jan. 22, 2024 Ltr.), and Your Honor disagreed, holding that J&J

had to apply a broader set of search terms related to the CAP Program. Dkt. 192 at 26. *Fourth*, as

stated in SaveOn's motion regarding J&J's refusal to run the unlimited CAP Terms for its existing

custodians, Paragraph 2 does not trump Paragraph 3's order that J&J update its production "*with-

out limitation*," which includes running the unlimited CAP Terms to which it previously agreed.

Hon. Freda L. Wolfson                                                                    Page 5

Ex. 13 at 1-2 (Feb. 7, 2024 Ltr.). *Finally*, in any event, J&J should run the unlimited CAP Terms

here because the new custodians were specifically identified as being involved with the CAP Pro-

gram and thus are highly likely to have relevant documents regarding that program.

      J&J's position here is part of an ongoing effort to withhold documents about the CAP Pro-

gram that could cripple J&J's claims. Although the program took effect months before J&J filed

its Complaint, J&J concealed the existence of that program when the parties initially agreed on

discovery parameters. Once SaveOn learned of the program, J&J resisted adding search terms and

custodians related to that program for months, agreeing finally to run the CAP Terms over the

custodial files of the existing custodians from April 1, 2016 through July 1, 2022. Ex. 14 (Sept.

29, 2023 Email from J. Long to E. Snow). Judge Waldor ordered the parties to refresh their pro-

ductions through November 7, 2023 "*without limitation*," Dkt. 173 at 3, but J&J is now trying to

back out of its previous agreement to run the unlimited CAP Terms both by refusing to run those

terms for its prior custodians from July 1, 2022 to the present, Feb. 7, 2024 Ltr, and now by refus-

ing to run those terms for its new custodians during any time period.[2] This must stop. The CAP

Program is highly relevant, and J&J must apply the unlimited CAP Terms in searching its custo-

dians' documents.

      SaveOn appreciates Your Honor's attention to this matter.

                        Respectfully submitted,

                        /s/ E. Evans Wohlforth, Jr.
                        E. Evans Wohlforth, Jr.
                        Robinson & Cole LLP
                        666 Third Avenue, 20th floor

---

[2] J&J asserts that this dispute will be decided by Your Honor's ruling on SaveOn's February 7, 2024 letter. In fact, that letter addressed only J&J's refusal to run the unlimited CAP Terms for its existing custodians from July 1, 2022 to November 7, 2023. This motion addresses J&J's subsequent refusal to run the unlimited CAP Terms for its new custodians during any time period.

Hon. Freda L. Wolfson                                                        Page 6

New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# EXHIBIT 1

Page 1

1          UNITED STATES DISTRICT COURT

2          DISTRICT OF NEW JERSEY

3          CIVIL ACTION NO. 22-2632

4    JOHNSON & JOHNSON HEALTH CARE

5    SYSTEMS, INC.,

6         Plaintiff,                    TRANSCRIPT

7         vs.                              OF

8    SAVE ON SP, LLC,                  PROCEEDINGS

9         Defendant.

10   - - - - - - - - - - - - - - - - -

11

12          TRANSCRIPT of the stenographic notes of

13   the proceedings in the above-entitled matter as

14   taken by and before RUTHANNE UNGERLEIDER, a

15   Certified Court Reporter and Notary Public of the

16   State of New Jersey, held at the office of

17   LOWENSTEIN SANDLER LLP, One Lowenstein Drive,

18   Roseland, New Jersey, on Wednesday, January 24,

19   2024, commencing at approximately 10:00 in the

20   forenoon.

21

22

23

24

25

Page 2

```
 1    B E F O R E:
 2    HONORABLE FREDA L. WOLFSON
 3    A P P E A R A N C E S:
 4    PATTERSON BELKNAP WEBB & TYLER LLP
      1133 Avenue of the Americas
 5    New York, New York  10036
           BY:  HARRY SANDICK, ESQ.
 6                JULIA LONG, ESQ.
                  GEORGE A. LoBIONDO, ESQ.
 7                SARA A. ARROW, ESQ.
      Attorneys for Plaintiff
 8
      SILLS CUMMIS & GROSS P.C.
 9    The Legal Center
      One Riverfront Plaza
10    Newark, New Jersey  07102
           BY:  JEFFREY J. GREENBAUM, ESQ. (VIA ZOOM)
11    Attorneys for Plaintiff
12    SILLS CUMMIS & GROSS P.C.
      101 Park Avenue, 28th Floor
13    New York, New York  10178
           BY:  KATHERINE M. LIEB, ESQ.
14    Attorneys for Plaintiff
15    SELENDY GAY ELSBERG PLLC
      1290 Avenue of the Americas
16    New York, New York  10104
           BY:  ANDREW R. DUNLAP, ESQ.
17                ELIZABETH SNOW, ESQ.
                  HANNAH MILES, ESQ.
18    Attorneys for Defendant
19    ROBINSON & COLE LLP
      666 Third Avenue 20th Floor
20    New York, New York  10017
           BY:  E. EVANS WOHLFORTH, JR., ESQ.
21    Attorneys for Defendant
22
23    ALSO PRESENT:
      SHERYN GEORGE, JJHCS In-House Counsel
24    WAYNE FANG, ESQ., Lowenstein Sandler
25
```

Page 3

1                JUDGE WOLFSON:  All right.

2                We're here today in connection with the

3    outstanding disputes, and when we had our Zoom

4    conference several weeks ago I indicated I wanted to

5    address whatever had been left open by Judge Waldor.

6    She's had many, many conferences in this case,

7    resolved many issues on the record, entered some

8    orders, and there were a couple of substantial issues

9    that have really been kicking around for a while

10   where she was looking for everyone to meet and confer

11   and see where you ended up.  And, primarily, they're

12   going to relate to discovery regarding the terms and

13   conditions, there was financial information, and now

14   there are other things to do with custodians, and I'm

15   going to try to get to everything.  But I want to

16   deal with this, in the first instance, with regard to

17   those pending discovery disputes, let me turn first

18   to the documents dealing with the CarePath terms and

19   conditions that have been talked about for quite a

20   while now and what should be discoverable with regard

21   to the drafting, understanding enforcement of the

22   terms and conditions.

23               We know that, in particular, what's

24   being looked at is that this program is supposed to

25   fall under the "Other Offer" category.  It's not the

Page 4

1    coupon.  No one is asserting that it falls within the

2    other language.  Right?  Everybody agrees?  Yes?  So

3    it's all about the other offer.

4                    MR. GREENBAUM:  Your Honor, may I make

5    two short preliminary points for context to just kind

6    of set the table at least from our perspective?

7                    JUDGE WOLFSON:  I don't think it's

8    necessary at this point.

9                    Let me move forward.

10                   And I will say this -- can I go off the

11   record one moment?

12                   (Brief recess taken.)

13                   JUDGE WOLFSON:  So let's break this down

14   into what's there.

15                   There's no doubt -- or there's no

16   dispute that there certainly is relevance to evidence

17   regarding what this term means.  The question is, how

18   much discovery is to be given, and where does it go,

19   and what are our time tables for doing that, et

20   cetera?  And we're going to get to that.

21                   The Plaintiff has said that it produced

22   thousands of pages of documents, approximately 1200,

23   in response to search terms that were used to find

24   documents relating to terms and conditions from

25   April 2016 to July 1, 2022 that had been an agreed

Page 5

1   upon discovery period, however, the Court at the last

2   hearing had directed the parties to continue to

3   update discovery through October 2023.

4            So now we're all dealing with updating,

5   updating.

6            Okay.

7            There were requests also for documents

8   that bear on -- if I can, for short, I know it's

9   JJHCS -- if I can say J&J for purposes of the

10  hearing.  We know it's a different entity, but just

11  for ease -- J&J's enforcement and understanding of

12  the relevant terms and conditions.  And Plaintiff

13  says also that J&J has investigated availability of

14  additional documents and based on that investigation

15  understands that the terms and conditions at issue

16  are standard, uncontroversial terms, used in most, if

17  not all, manufacturer co-pay support programs that

18  long predate the time period of 2016 to 2023.  And

19  J&J has offered to review additional documents to see

20  what else might fall within that relevant time frame.

21           J&J has indicated that documents that go

22  further back to 2009, which is what really I think

23  SaveOn has been talking about, argues that either

24  they're irrelevant and also enforcement of terms and

25  conditions relating to other terms besides "other

Page 6

1  offer."  I mean, I have all the arguments here.

2            So let's move into this.

3            Now, in this connection too we have

4  custodian issues, and you agreed to some

5  modifications.

6            I think what we have here is Defendant

7  asked Plaintiff to conduct a search for documents

8  relating to the drafting of the general T&C's to add

9  additional search terms used designed to identify

10 documents relating to drafting, understanding and

11 enforcement, and add two custodians that J&J

12 identified as responsible for drafting the new

13 Stelara and Tremfya T&C's and to extend a search for

14 documents relating to enforcement of the new Stelara

15 and Tremfya T&C's.

16            Plaintiff has indicated that it will

17 search eight more months of one custodian's documents

18 and add two limited search terms.

19            So let's talk about where we are.

20            With regard to the requests, it was

21 requested that Plaintiffs identify predecessor

22 programs from which CarePath's general T&C's were

23 drawn.  And I think there are also interrogatories on

24 that topic.  Right?

25            MR. DUNLAP:  Yes, are honor.

                                                          Page 7

1              MR. SANDICK:  I don't think that there

2    is an interrogatory that specifically tracks what

3    they asked for in our discovery letters.  And not to

4    get sidetracked, but one of the points of contention

5    is that if they want detailed historical information

6    about things within JJHCS, I think the discovery

7    device for that is an interrogatory.  If they

8    propound one, we'll answer it subject to objections.

9    But I don't think that they have propounded one that

10   would cover all of the issues that they have raised

11   and have tried to use discovery correspondence as a

12   mechanism essentially as a substitute for

13   interrogatories.  And they're not at their

14   interrogatory cap.  They could propound

15   interrogatories.

16             MR. DUNLAP:  Could I respond to that,

17   your Honor?

18             JUDGE WOLFSON:  Sure.

19             MR. DUNLAP:  Just briefly.

20             We served document requests asking for

21   documents relating to the drafting of the terms and

22   conditions.  We served interrogatories asking them to

23   identify individuals with responsibility for the

24   drafting of the terms and conditions.  It turns out

25   that this specific term and condition, which is the

1  heart of part of the case, ███████████████████

███████████████████         We think our

3  existing interrogatory and document requests are

4  broad enough to cover whoever drafted it, whether

5  they were working at JJHCS or some other predecessor

6  program.  So we think it's covered.

7              JUDGE WOLFSON:  Okay.

8              We're going to talk about it today,

9  whether it was specifically asked in that way or not,

10 but I'm going to get to the bottom of this and be

11 done with it so that we have this resolved.

12             Now, in that regard, you've asked for I

13 think January 1, 2009 to the present, right?

14             MR. DUNLAP:  Yes.

15             JUDGE WOLFSON:  Because it would include

16 predecessor programs.

17             MR. DUNLAP:  Because that is our

18 understanding of when it began.  Obviously, if the

19 program began earlier, at some other time, then we

20 would want it to be tailored, our issue, but they

21 haven't given us information, so it's hard for us to

22 tailor our understanding of when the program started.

23             JUDGE WOLFSON:  Okay.

24             Why would you, Mr. Sandick, believe

25 that -- you know, we're looking for what the meaning

1   of this is -- that if you had predecessor programs

2   that used the same term, why would that not be

3   relevant at a discovery stage?

4             MR. SANDICK:  So, a couple of things.

5             It's not so much that we're saying it

6   would be irrelevant.  What we're saying is, number

7   one, as we've explained to the Defendants before, we

8   do not have consistent record keeping within our

9   client's files.

10            JUDGE WOLFSON:  I'm going to get to

11  retention.

12            What I'm saying is, I want to take this

13  piece by piece.  Which is, if we start with

14  relevancy, now let's go to what the problems are with

15  producing it.

16            MR. SANDICK:  Sure.

17            I think the relevance issue is this:  As

18  to the meaning of "other offer" in the context of a

19  program like SaveOn, an accumulator or maximizer

20  program, those programs did not exist back in --

21  SaveOn was created in 2016.  So trying to figure out

22  prior to 2016 what the terms and conditions meant

23  with respect to a company like SaveOn I think is not

24  a productive project.

25            Also, for that matter, the current

Page 10

1    CarePath system, which started in around 2016, also

2    did not exist prior to that.

3                    To be short, J&J through JJHCS has tried

4    to help patients pay for co-pay support, help them

5    pay their deductibles on drugs for many years, but

6    the program was different.

7                    So we're going to a time period when

8    SaveOn did not exist, when the CarePath program we're

9    talking about did not exist, and in a time period

10   where -- and I know your Honor said you'll get to

11   this -- but where the document record is not what it

12   is in more recent years because 2013 is a long time

13   ago.

14                   JUDGE WOLFSON:  And I'll deal with that,

15   but I have to say I don't agree with your position

16   on -- that it would not be relevant simply because

17   programs like SaveOn didn't exist, whether

18   accumulator or maximizer programs, or CarePath didn't

19   come into being.

20                   You know, you have indicated that these

21   are terms, that is the position you have taken, that,

22   you know, through maybe time, this is a term that is

23   used.  So in creating that, how broad a meaning you

24   thought that had, what it meant outside of the other

25   things you described, coupons, rebates, et cetera,

Page 11

1    that it could encompass, it may have nothing to do

2    with this, but that is okay.  So we need to answer

3    that question.

4                 I do not agree with you.  I do agree

5    with SaveOn that I believe that going back in time is

6    relevant to the extent it was included in predecessor

7    programs.  It had to have a meaning.  If anyone even

8    discussed it.  Maybe they didn't.  And maybe that is

9    what will turn up.  But that is an answer in itself.

10                Now, talking about availability of

11   documents, because you have indicated that there are

12   preservation of retention issues, but I don't know

13   that you have provided anything that tells us what

14   those retention policies are or the issues as to why

15   they don't exist or how limited they are.

16                That has to be provided so that I could

17   determine, or your adversaries can determine, what

18   was done, and what the policy was, and whether it was

19   followed here.

20                That is always what we do when you have

21   a relevant document and a relevant time period and

22   there may be an issue.

23                So you're going to have to produce that

24   retention policy.

25                To the extent that you do find the

Page 12

1    documents regardless of that retention policy, I'm

2    ordering that they be produced.

3            Now, you've also indicated it's too

4    cumbersome, but you haven't done a search going back

5    because you haven't thought you had to produce them,

6    and the burden is on you to explain why it would be

7    burdensome.  And, frankly, if you're telling me you

8    may have nothing before 2013, it doesn't sound very

9    burdensome to me.  So I'm not buying that at the

10   moment without more.

11           For me, when I look at all of this,

12   rather this one seemed like an easy one, and I think

13   it's totally appropriate.

14           The crux of this case is going to be

15   what "other offer" means.  And in Judge Vazquez's

16   opinion in very short order in that last paragraph it

17   said this is going to need discovery and it could be

18   the subject of a summary judgment motion, but not a

19   dismissal motion, or maybe it goes to a trial, but he

20   noted that that was something that required

21   discovery.  And that term is going to be critical

22   here.

23           MR. SANDICK:  So, your Honor, we will

24   come back to you then with a submission on the

25   subject of burden and accessibility because I do

Page 13

1    believe those are substantial issues here.  That, you

2    know, very few companies would have sort of coherent

3    organized records going back 15 years or longer.  And

4    so I do think we have an issue that we need to bring

5    to your Honor's attention on this.

6                    JUDGE WOLFSON:  Okay.

7                    You're going to have to really convince

8    me because, first of all, I don't know what your

9    retention policy is, but on the burdenness, I know

10   that Judge Waldor kept putting burden to the side.

11   She said, a hundred million dollar case, it's a big

12   case, big companies, don't argue burden to me.

13                   I'm not quite sure I always agree with

14   that because burden is something you are allowed to

15   assert.  I'm not preventing you from doing so, but I

16   think you have a high hurdle there.

17                   So you want to move this along, I want

18   to also, so those answers you're going to have to get

19   to me pretty quickly.

20                   MR. SANDICK:  We'll do that, your Honor.

21                   JUDGE WOLFSON:  Okay, when?

22                   MR. SANDICK:  I would like to talk to

23   people internally to figure out, but today is

24   Wednesday.  Next week?

25                   JUDGE WOLFSON:  Sure.

Page 14

```
 1                 MR. SANDICK:  Okay.

 2                 JUDGE WOLFSON:  That would be fine.

 3                 You want a week from today?

 4                 The end of next week?

 5                 MR. SANDICK:  Let me just confer for a

 6     moment.

 7                 Next Friday.

 8                 JUDGE WOLFSON:  Next Friday is fine.

 9                 MR. DUNLAP:  I assume you would want us

10     to meet and confer about this.

11                 JUDGE WOLFSON:  Yes.

12                 MR. DUNLAP:  Part of our concern is that

13     they haven't been really forthcoming in explaining to

14     us what their preservation or retention issues are.

15                 JUDGE WOLFSON:  Now you're going to get

16     it.

17                 MR. DUNLAP:  I assume you want the

18     parties to meet and confer before they file the

19     motion.

20                 JUDGE WOLFSON:  Yeah.

21                 MR. SANDICK:  I mean, I'm happy to talk

22     to Andrew any time.  We're going to file something on

23     this.  And I do not agree that we have been not

24     forthcoming.  We explained that 2013 is the crucial

25     time period for our client when there were changes in
```

Page 15

```
 1   the record keeping system and that before that time,
 2   all though I can't say that there aren't documents
 3   here and there sort of lying around, so to speak, the
 4   digital equivalent of that, there is no consistent
 5   effort to retain documents from that time period.
 6              JUDGE WOLFSON:  Look, they haven't
 7   gotten that, and, you know, simply indicating that is
 8   not enough.
 9              They said they would have an answer by
10   next Friday.  So what I'll direct is that information
11   be given to you, as to burden and retention, you can
12   meet and confer, and then tee it up for me.
13              MR. SANDICK:  Would you like us to
14   submit it to your Honor in parallel next Friday?
15              JUDGE WOLFSON:  I would love to see it.
16              MR. SANDICK:  We will send it to you and
17   of course copy defense counsel by next Friday.
18              JUDGE WOLFSON:  Okay.
19              And then you can meet and confer and
20   we'll see if we have an issue.
21              As I said, but from my perspective on
22   the burden aspect, it's going to have to be a pretty
23   darn heavy burden because I think this is highly
24   relevant information, and so on a weighing here as to
25   the relevance versus the burden on you, I think you
```

Page 16

1    know where I'm going to come out.

2                   All right.  Let's move onto the next

3    topic.

4                   These are, quote, the enforcement

5    documents.

6                   So let's talk about this issue.

7                   This is I think where it -- the issue is

8    whether it's enforcing all of the terms of that or

9    only the other offer, correct?  That's where we are.

10                   MR. DUNLAP:  I think that is part of it.

11   Part of it is also what search terms they employ.

12   Since this submission went in we met and conferred

13   with the other side and narrowed the search terms.

14   It cuts out about 20 percent of the documents that

15   were identified in my previous submission.

16                   JUDGE WOLFSON:  Okay.

17                   So tell me what is left on this issue

18   that you want to argue today.

19                   MR. DUNLAP:  Well, we believe that they

20   should run a broader search for documents relating to

21   the meaning and understanding and enforcement of the

22   general terms and conditions, the "other offer"

23   provision.

24                   JUDGE WOLFSON:  The "other offer"

25   provision is good.

Page 17

1           MR. DUNLAP:  Yes.

2           Well, we think there are other portions

3  of the general terms and conditions that are relevant

4  as well.

5           So the way this works is that a lot of

6  the -- they call this the SaveOn program, but a lot

7  of the things they're complaining about, the setting

8  of the co-pays, the not counting towards

9  out-of-pocket max, are actually plan terms.  Those

10  are part of what the commercial plan sets as terms

11  for their members.  And there are references within

12  the terms and conditions health plans.  And we

13  think -- part of our argument is that that indicates

14  whatever "other offer" means, it can't mean plan

15  terms.  So we think it can't be limited just to the

16  "other offer" provision.  That is point one.

17           Point two is, based on what we have seen

18  in the documents we don't --

19           JUDGE WOLFSON:  So let me think of

20  though what you're looking for in that regard.

21           You're not interested in coupons,

22  rebates, and the other things that are in there.

23           I want to make sure how we're limiting

24  this.

25           MR. DUNLAP:  Well, we are to the extent

Page 18

1    that we want to understand, there is an affirmative

2    case did they actually believe SaveOn was a coupon or

3    other offer or a program.

4              JUDGE WOLFSON:  I think we are clear

5    that you said it's only other offer.

6              MR. SANDICK:  The other offer is the

7    only term that we're doing.

8              There is a long list of terms and

9    conditions that patients have to agree, most of them

10   have nothing to do in not even any conceivable way

11   with this case.

12             For example, you cannot by federal law

13   be on Medicare or Medicaid and be part of SaveOn.

14   That is prohibition.  Children are not eligible to

15   receive drugs through this program.  And there are a

16   number of other things.  None of them are within the

17   scope of what we are alleging to be the contract that

18   was tortiously interfered with.  That's why the focus

19   has been -- in Judge Vasquez's decision and in our

20   complaint -- on the "other offer" language that your

21   Honor has spotlighted.

22             JUDGE WOLFSON:  So we're limiting it to

23   the only contractual term that they think is "other

24   offer."

25             MR. DUNLAP:  Right.

 1                And I think we have a couple of issues

 2    with that.

 3                So, first, as you may have seen if

 4    you've looked at the Motion to Dismiss briefing,

 5    "other offer" appears in a string of other terms,

 6    coupon, et cetera.  And under ejusdem generis, if I'm

 7    pronouncing that doctrine correctly, you would

 8    understand what "other offer" means by looking at

 9    what the other terms in that clause mean.

10                So what they understand a coupon to

11    mean, what they understand another offer of financial

12    assistance to mean, is relevant to determining what

13    in context the "other offer" provision means.

14                So we do want to understand what they

15    think that means.

16                I would also make the point that --

17                JUDGE WOLFSON:  But we're on the

18    enforcement documents now, not on the actual

19    interpretation, terms, conditions.

20                MR. DUNLAP:  Well, but that period we're

21    talking about from 2016 through 2022 we're not just

22    looking for documents on enforcement, it also goes to

23    the meaning and their understanding of what the

24    "other offer" provision meant during that time

25    period.  And we submit to understand that you have to

Page 20

 1    look not just at "other offer," but also at the other

 2    terms that are in the clause where it appears other

 3    provisions in the terms and conditions that relate to

 4    health plans, there is a lot of contractual context

 5    that we need in order to argue about what "other

 6    offer" means.

 7              But I do want to turn to enforcement

 8    also.

 9              So as Mr. Sandick said, there are other

10    eligibility requirements that are not at issue.  For

11    example, if you're on Medicare or Medicaid, or you're

12    not of a certain age, et cetera.

13              Part of our argument is that until they

14    decided to bring this lawsuit we don't think J&J

15    actually ever contemplated that the "other offer"

16    provision covered members on SaveOn plans.  They

17    never actually thought that being on a SaveOn plan

18    ran afoul of the "other offer" provision.

19              And part of the evidence of that will be

20    that they did enforce eligibility criteria.  That

21    they were able to enforce other parts of the terms

22    and conditions, on Medicare, Medicaid, on age

23    requirements, et cetera, but they never sought to

24    enforce their new position on SaveOn until they

25    brought this lawsuit.

Page 21

1          We think that information is highly

2    relevant circumstantial evidence to show their course

3    of performance was they didn't actually believe that

4    "other offer" applied to the SaveOn program.

5          And so we need to see what they were

6    doing in terms of enforcing the terms and conditions

7    generally not just on "other offer."

8          MR. SANDICK:  Your Honor, two things:

9    First of all, on the subject of enforcement, since

10   these letters were submitted I think in August we

11   have already agreed to produce what are either

12   directly through us or by asking our vendor, a

13   company called Trial Card, to produce what are known

14   as benefits investigations.  And those are the

15   enforcement documents.  We're in the process of

16   making those productions for the relevant time period

17   right now.

18          So the enforcement issue I think by

19   virtue of concessions made by HCS, by J&J, is already

20   being addressed.

21          I want to also though pause for a moment

22   on the subject of whether the other terms next to

23   "other offer" in that particular term and condition

24   are relevant.

25          I think it's important to say two

Page 22

1  things.  First of all, this particular language,

2  coupon, discount, prescription savings card, free

3  trial, those are primarily what is driving the hit

4  count for the search terms they have proposed.

5  Something like maybe two-thirds or three-quarters of

6  the documents that they are asking to be reviewed

7  relate not to "other offer," which, by the way, have

8  already been the subject of search terms.  That's

9  why, as your Honor pointed out, we have already

10  produced thousands of pages of documents.  But the

11  search terms that they are proposing go way beyond

12  that, into any time that someone uses the word

13  "coupon" and the word "Janssen," we would have to

14  produce those documents.

15          That is why Judge Waldor told -- well,

16  one of the reasons why she told them back in October

17  and in the order that they needed to narrow their

18  requests, not just the search terms, but the requests

19  themselves, that this is too broad, it goes beyond

20  the scope of what is actually necessary to resolve

21  this case.

22          And if we were focusing on things like

23  "other offer" language, again, we've already made a

24  lot of production on that.  And we had offered

25  before, as your Honor pointed out, to do some

Page 23

1   additional production on that subject.

2           It's when you blow it open into

3   everything -- every word that is used on the sheet of

4   terms and conditions that the burden in terms of

5   document review goes through the roof.  And as we

6   pointed out, probably for very little benefit.

7   Because these are standard industry terms that are

8   used in the co-pay program area and also used in all

9   sorts of other consumer areas.  The ABA said this is

10  a standard term in all consumer discount programs.

11          JUDGE WOLFSON:  So what I'm hearing is,

12  but what I want to understand too, is you are going

13  to produce documents with regard to this, quote,

14  benefits investigation.

15          What I want to get back to you here, Mr.

16  Dunlap, what you said a couple of moments ago is what

17  is important to you is to give definition to what

18  they're enforcing and what they're not enforcing, you

19  want to know, well, were you enforcing all of these

20  other programs that you have listed, whether they

21  were Medicare, Medicaid, and all the various coupons

22  and other things, right?

23          MR. DUNLAP:  The eligibility questions.

24          JUDGE WOLFSON:  The eligibility

25  questions.

Page 24

1          You want to know, were you diligently

2     and regularly enforcing.  You knew SaveOn was there

3     and you didn't do it.  And you want to make an

4     argument, so guess what, we're going to tell you, you

5     never thought of any of these exclusions.

6               I hear what you're saying.  The question

7     is, how many documents do we need?  If they're going

8     to give you what we would call the benefits

9     investigations, would that not turn up every time

10    that they questioned eligibility?

11              MR. DUNLAP:  We don't think so, your

12    Honor.

13              Let me talk about the benefits

14    investigations.

15              So what they said at the last conference

16    was that ███████████████████████████████████

███    ████████████████████████████████████████

███    ████████████████████████████████████████

███    ██████████████████████████████████████████

███    ██████████████████    ████████████████████

███    ████████████████████████████████████████

███    ███████████████████████████████████████

███    ██████████████████████████████████████████

███    ██████████████████████████████████████████

███    █████████████████████

Page 25

1          They have so far declined to give us any

2   documents related to those investigations, just the

3   final reports themselves.

4          We got a production the other day.  We

5   had some issues with that.

6          What they're offering to give us is

7   very, very narrow.  They are not offering to give us

8   benefits investigations going to the full relevant

9   time period of this case from 2016 to present.  ██████

   ██████████████████████████████████████████████████

   ██████████████████████████████  And they're

12  not offering to give us any documents, there are no

13  enforcement search terms, for example, that go to the

14  enforcement of eligibility criteria or the meaning of

15  things like coupon or discount or benefit card.

16          And I hear what opposing counsel is

17  saying about the search terms.

18          We have proposed search terms to them.

19  We have narrowed those search terms since we put in

20  our letter by about 20 percent.  We have not received

21  I believe a counteroffer from the other side about

22  which of our search terms they would be willing to

23  run.  Their response has generally been no.

24  Certainly inviting us to negotiate against ourselves.

25          We're always glad to talk about

Page 26

1    appropriate search terms here, but we don't have

2    anything on enforcement.  We're not convinced that

3    just the benefits investigations process will give us

4    what we need here.

5                  I'm glad to address the other points he

6    made, but I think those are the main ones.

7                  MR. SANDICK:  Your Honor, I think there

8    are a few things I would like to address and correct.

9                  So, first of all, it's not true that we

10   aren't giving other documents relating to the subject

11   of enforcement of the terms and conditions against

12   accumulator and maximizer programs.  We are running

13   to some extent voluntarily and to some extent in

14   response to Judge Waldor's order the so-called CAP

15   terms.

16   ███████████████████████████████

     ███████████

     ███████████████████████████████████

     ████████████████████████████████████

     ████████████████████████████████████

     ████████████████████████████████████

     ███████████████████████████████████

     ██████████████████████████████████████

     ████████████████████████████████

     ████████████████████████████████

Page 27

1          As we said in some of our papers, SaveOn

2    goes to great effort to prevent anyone from finding

3    out which patients are in the program. ██████████

██   ████████████████████████████████████████████████

██   ██████████████████████████████████████████████

██   █████████████████████ they go to great length to

7    prevent us from figuring out who is in the program.

8              ████████████████████████████████████

██   ██████████████████████████████████████████████

██   ███████████████████████████████████████████████

██   ██████████████████████████████████████████████

██   ████████  That's why we have been producing for that

13   category from 2022, the beginning of the year, now up

14   through the date of Judge Waldor's order.

15             JUDGE WOLFSON:  Well, let me go back a

16   moment.

17             We got two things going on.  Now we're

18   talking about dates, how far back we go, but the

19   other is the various enforcement efforts with regard

20   to eligibility, which they have been talking about.

21   And the position there is, SaveOn was in existence

22   prior to 2022.  The fact that you started to take

23   some steps in response to what you believe was a

24   problematic program and would violate your terms in

25   that time frame doesn't address their concern, which

Page 28

1    is, okay, we were around before, and you also came to

2    this conclusion in 2022, whatever, but we'd like to

3    see what generally did you do as enforcement efforts

4    with regard to other eligibility criteria.  Do you

5    police generally?  Do you let things go?

6                    I mean, these are some of the arguments.

7                    I know you have some defenses you also

8    want to raise on, you know, latches, mitigations,

9    whatever, steps that were not taking, but I think

10   that there needs to be some understanding of,

11   generally, what are your enforcement efforts that you

12   take with regard to eligibility criteria.

13                   Now, it has to be cabined in some way.

14   I don't want it to be so broad because there are lots

15   of things here and much of it may not be relevant.

16   So I think we have to understand, or they have to

17   understand, how do you go about enforcing, when do

18   you do so, and there is more information that is

19   needed.

20                   MR. SANDICK:  So, your Honor, a couple

21   of things:  First of all, the subject of benefits

22   investigations.  Benefits investigations are,

23   generally speaking, not relevant to this case because

24   they don't touch on the application of the "other

25   offer" term, they don't touch on how that's applied

Page 29

1    in the context of a so-called maximizer or

2    accumulator program like SaveOn.

3             So what that would lead to, your Honor,

4    if there were to be some expansion of benefits

5    investigations, would be, essentially, meaningless

6    documents about, "Oh, this person is on Medicare.  We

7    can't cover that."  Things having nothing at all to

8    do with the scope of this case.

9             The other thing is, the questions that

10   Mr. Dunlap is raising, if he serves an interrogatory

11   on us that asks those questions, we'd be obliged to

12   answer those questions in a way that would be binding

13   as an admission on JJHCS.

14            To, you know, beat it back and forth in

15   discovery letters doesn't lead to that outcome.

16            JUDGE WOLFSON:  What would that

17   discovery interrogatory look like?

18            MR. SANDICK:  Sure.

19            It would be an interrogatory asking for

20   a statement of what the company's policy was on the

21   issue of enforcement of the terms and conditions.

22            It could ask for --

23            JUDGE WOLFSON:  And then they're going

24   to ask for all the documents that support what that

25   policy is and explain that policy and discuss the

Page 30

```
 1   policy.

 2            MR. SANDICK:  And we produced those.

 3            JUDGE WOLFSON:  There will be a document

 4   request.

 5            MR. SANDICK:  As to "other offer," we

 6   produced those documents already.

 7            JUDGE WOLFSON:  I'm not so limiting it

 8   at this point.

 9            MR. SANDICK:  So, in any event, the

10   point I'm making is that, the subject of benefits

11   investigation is, unless it has something to do with

12   SaveOn, or maximizer, or accumulator programs, is

13   really just completely irrelevant to this case, and

14   it's going to lead to the production of documents

15   that talk about issues that have nothing to do with

16   the "other offer" term, nothing to do with SaveOn,

17   that just simply show that, you know, there are a

18   host of different eligibility requirements, and can

19   see this patient passing the test, this patient not

20   passing the test, but none of it relating to SaveOn,

21   none of it relating to maximizer or accumulator

22   programs, other than from the time period of 2022 to

23   the present, which we're already engaged in producing

24   documents for.

25            JUDGE WOLFSON:  I think that -- and I
```

Page 31

1    know that Judge Waldor would constantly say go meet

2    and confer, but I hate kicking the can down the road

3    and keep doing this, but I'm prepared to do it or

4    discuss it with you now, but I think you need to

5    narrow your request.  I believe we got to the crux of

6    it a moment ago, which is, I believe you're entitled

7    to documents that show what policies they had with

8    regard to enforcement of eligibility criteria beyond

9    "other offer."

10              They need a comparison here to what were

11   your policies.

12              Those documents I believe would be

13   relevant.

14              It doesn't mean, therefore, and now we

15   eliminate the burden of going through every time you

16   actually took an individual's eligibility criteria

17   and looked at it.

18              I think let's start with documents that

19   reflect what their policies were and anything that

20   reflects how they would go about enforcing it or

21   instructions given to enforce it, and it will also

22   identify, therefore, for you what areas that they

23   thought were important to enforce.

24              That is of a more general nature.

25              You said they could ask an interrogatory

Page 32

1    as to that.  The document request is going to follow,

2    so I'm saying go ahead with the document request

3    right now.  And it won't be involved with the

4    individual benefits investigations.

5              MR. SANDICK:  So what your Honor is

6    proposing is something limited, essentially, to

7    policy or discussion of policy.

8              My concern is that it really should be

9    tied to "other offer" because once it moves into

10   things like discount, or free trial, or coupon, the

11   burden escalates dramatically.

12             We're talking about the review of

13   perhaps a quarter of a million documents.  And we

14   told them this.

15             We haven't failed to engage them in meet

16   and confer.  I'm happy to relate the history of that,

17   your Honor, if you would like to hear it.  But we

18   have tried throughout to engage them in meet and

19   confer and for months the only position they took

20   was, these are our terms, you need to run them all.

21   Even for two months after Judge Waldor told them to

22   narrow their search terms, told them in court, told

23   them in a written order.  They did not even provide

24   us with narrow search terms, let alone narrowing the

25   request, which is what her order said, that they're

Page 33

1    going too far, they're taking extreme positions.

2                    JUDGE WOLFSON:  I read every single

3    transcript, not just the October one.

4                    MR. SANDICK:  Yes.

5                    It was in March too.

6                    JUDGE WOLFSON:  Okay.

7                    But you understand what I am saying is

8    relevant.  I appreciate we don't want every little

9    document every time they discuss a discount.

10                   When you're talking about policies and

11   discussions with regard to enforcing those policies,

12   no, I don't believe that we're talking about millions

13   of documents.

14                   So come up with better.  I'm not going

15   to create them for you, I mean, I have given general

16   categories about this.  You know, from my

17   perspective, the world has become search terms.  Not

18   how I grew up, or when I was a Magistrate judge, we

19   didn't have search terms.  Okay?  You made a document

20   request and everybody understood what it meant and go

21   find them, wherever they are.  Now everyone needs to

22   define custodians and search terms to make sure that

23   you have done it a certain way.

24                   I have given you what the subject matter

25   is.

Page 34

```
 1              So you think you need search terms to do
 2    it, talk about what they are.
 3              MR. DUNLAP:  Your Honor, can I ask a
 4    clarifying question?
 5              JUDGE WOLFSON:  Yes, go ahead.
 6              MR. DUNLAP:  So you said that policies
 7    regarding enforcement would be relevant.  I've heard
 8    my friend on the other side say he thinks enforcement
 9    is only relevant as to "other offer."
10              JUDGE WOLFSON:  I already said no.
11              MR. DUNLAP:  I just wanted to clarify it
12    goes to other eligibility criteria as well.
13              Now, we still had -- within the request
14    for this 2016 to 2022 time period, part of our
15    request was also about their understanding and
16    meaning of things like coupon or discount or other
17    terms as well, which I don't believe your Honor
18    addressed in talking about the enforcement side of
19    the request.
20              So we would ask that whatever they do in
21    terms of running additional search terms, and we're
22    glad to continue meeting and conferring with them
23    about that, that there be an understanding that --
24    their understanding, their enforcement -- the meaning
25    of the other terms in that clause, coupon, discount
```

Page 35

1   and the others, is also relevant and something they

2   look for.

3              MR. SANDICK:  Your Honor, that's really

4   where the heart of the burden comes in.  If they're

5   asking for every time that someone at JJHCS talks

6   about the word discount in the context of Janssen,

7   you can just imagine the burden that that will

8   create.

9              JUDGE WOLFSON:  I don't want it that

10  broad, I agree.  So we have to figure out a way to

11  narrow that because, yes, we don't want to bring in

12  things that are not going to be relevant.

13             So you're going to go back and work as

14  to how to narrow this with the understanding of, I

15  appreciate your argument is, we want to see how they

16  define these terms or interpret them and then use

17  them.

18             They've already conceded, however, that

19  SaveOn doesn't fall within any of those terms, they

20  only fall within the "other offer."

21             So I understand -- what I'm trying to

22  figure out is what more that's relevant about

23  understanding how they interpreted coupon, rebate,

24  discount is important to your case?

25             MR. DUNLAP:  Sure.

Page 36

 1              So, as you said, the "other offer"
 2    provision is a big piece of this case.  It's a big
 3    piece of the tortious interference claim.  What did
 4    "other offer" mean?
 5              They say it applies to SaveOn services.
 6    We say it does not apply to SaveOn services.
 7              So to the extent that the court finds
 8    that term ambiguous, one of the standard tools of
 9    construction that it may use is looking at the terms
10    that go along with it in that same clause.
11              And I'm sure you are familiar with that
12    doctrine.
13              JUDGE WOLFSON:  Absolutely.
14              MR. DUNLAP:  So in order to determine
15    whether or not other offer -- the scope of other
16    offer is like a coupon or discount savings card we
17    need to understand what they believe a coupon or
18    discount savings card meant.
19              So we don't want every time anyone at
20    Johnson & Johnson used the word "coupon."  What we
21    want to understand is, what did they believe, what
22    did they understand those terms within the context of
23    the general terms and conditions meant.
24              We believe that that is relevant.  And
25    if you can give us guidance that that is relevant,

Page 37

1    then we're glad to go back and continue meeting and

2    conferring with them on the search terms that are

3    designed to try and capture that.

4              MR. SANDICK:  Your Honor, Mr. Dunlap

5    said a moment ago words to the effect of, we're not

6    looking for every time that somebody mentioned

7    discount or coupon, but the search terms that they

8    proposed even after Judge Waldor ordered them to

9    narrow their request are exactly what Mr. Dunlap just

10   said --

11             JUDGE WOLFSON:  It's not going to

12   happen.

13             MR. SANDICK:  Okay.

14             Because I think what he is saying is,

15   I'd like guidance.  What I hear him saying is, he

16   would like you to say something that contradicts what

17   you said a moment ago.  And we'd ask you not to do

18   that.

19             JUDGE WOLFSON:  I got it.

20             MR. DUNLAP:  That is not what I said or

21   I asked for.

22             JUDGE WOLFSON:  We have what the

23   position is.  I appreciate your argument.

24             And this is also going again back to

25   interpreting what the terms and conditions mean.  And

Page 38

1   I do appreciate that one of the arguments is going to

2   be, if you look at this entire phrase, and the things

3   that they really wanted to exclude, it gives meaning

4   to "other offer."

5              I know that is your argument, and I

6   understand that, which is why I would permit the

7   discovery on what does that mean.

8              That is different than enforcement.

9              We have gone backwards now.  We are

10  going back to terms and conditions and what this

11  sentence means.  I was on enforcement for a moment.

12  We'll return to enforcement.  But, yes, I do.  But

13  we're not going to have search terms that you're

14  right that every time that phrase comes up it gets

15  produced.  It has to in some way be cabined to

16  capture what we are talking about, which is, what was

17  the understanding of those terms when they were

18  placed into these various agreements, plans,

19  whatever, and documents that reflect what that

20  understanding was and the intent of it.

21              MR. SANDICK:  And we've already produced

22  documents to the extent they exist, to the extent

23  that we have non-privileged documents, from the

24  period of 2016 to 2022.  We've already produced those

25  documents.

Page 39

```
 1              JUDGE WOLFSON:  And I guess you're going
 2      to have a privilege log.
 3              MR. SANDICK:  We do have a privilege
 4      log.  We're going to meet and confer on that subject.
 5      I'm sure that will go on too.
 6              JUDGE WOLFSON:  I would like to go back
 7      now to enforcement.
 8              It's of a similar nature, which is that
 9      the idea is, here, you want to know how vigilant were
10      they about enforcing these various terms that appear
11      here, or whatever the eligibility criteria are.
12              You don't need the underlying
13      investigations on all the other terms.  Right?  It's
14      really to figure out how they decided, one, if there
15      are documents that reflect, we are going to
16      aggressively pursue these terms.  You know, people
17      that get the coupons or whatever.  And do you
18      actually go about enforcing.  You know, because they
19      are going to make an argument you sat back on this
20      one.  Do you sit back on others too, is this kind of
21      what you do, or do you aggressively enforce that and
22      you didn't come about doing this for a few years.
23              These are, again, of a more general
24      nature than every individual one that they do.
25              So, go to work on figuring out -- I
```

Page 40

1   would do it in general categories like I did in the

2   old days, but you'll come up with search terms

3   instead that create all these issues for us -- work

4   on those search terms that capture what I just said.

5            Okay?

6            MR. DUNLAP:  Yes, your Honor.

7            MR. SANDICK:  Okay.

8            JUDGE WOLFSON:  Next.

9            So then, I guess, part of this problem

10  has been we're still talking about the understanding

11  of what "other offer" means, how that overlaps with

12  the specific categories.  We're back to all these

13  search terms.  And I think you found 188,000

14  documents on using certain of the search terms they

15  gave you, and you say, hey, that is too burdensome.

16           MR. SANDICK:  Yes.

17           And after Judge Waldor asked them to

18  narrow their requests, they never narrowed their

19  requests, but they gave us somewhat narrower terms.

20           From an apples to apples comparison, if

21  we look at the same time period and the same

22  custodians, they went from about 180,000 to about

23  150,000.

24           The terms themselves are only slightly

25  narrowed.  The nature of the requests are not

Page 41

1    narrowed at all.  In our view, they have not complied

2    with what Judge Waldor asked them to do.

3              JUDGE WOLFSON:  I could sit here and we

4    could go through search terms and say, how can we

5    better do this, but the goal here is to come up with

6    the documents you need, and not more than you need,

7    which is going to be of no help for you either to

8    review.

9              So -- I hate to send you back to meet

10   and confer.

11             I've given you guidance on what

12   categories or subjects I think are relevant.  Based

13   on that, maybe you can do search terms that are honed

14   better to that.

15             But I want this meet and confer to

16   happen within the next week.  We're back and forth

17   too much.  And to the extent you can't agree, I'll do

18   a Zoom with you.  But we need to move this ahead.

19   Keeping in mind that I've defined for you areas that

20   I think are relevant.

21             Okay?

22             MR. DUNLAP:  We understand, your Honor,

23   yes.

24             Thank you.

25             JUDGE WOLFSON:  Okay, good.

Page 42

1              Now, I guess in January of 2022 there

2       were new terms and conditions for Stelara and Tremfya

3       medications that specifically excluded members of the

4       Defendant plans from CarePath.

5              I know SaveOn has argued that Plaintiff

6       didn't implement new terms and conditions for other

7       drugs.  Kind of a selective enforcement argument

8       maybe being made here.  And I guess you've asked for

9       documents reflecting the decision to revise those

10      terms and conditions for those two drugs, how it's

11      being enforced and implemented.

12             Okay.

13             I think the argument here is that there

14      have been -- the production is deficient, restrictive

15      search terms were used, and custodians, such as

16      Jennifer De Camara and Harman Grossman and Savaria

17      Harris were not added because they are attorneys, but

18      I don't think there has been a privilege log.

19             MR. SANDICK:  So a privilege log has

20      been sent.  They sent us a letter critiquing some of

21      it and we are going to this week, by the end of

22      Friday, send them back a response.  They identified

23      several hundred documents, we've reviewed every one,

24      and we have a response planned for them by Friday

25      close of business, so Friday the end of the day.

Page 43

 1             JUDGE WOLFSON:  And then if there are

 2    still documents upon which there is disagreement, I'm

 3    going to do an in camera review of them.

 4             MR. DUNLAP:  Yes, your Honor.

 5             MR. SANDICK:  That is something we're

 6    working through, and, of course, we'll bring it to

 7    your Honor.

 8             On the subject, your Honor, of the

 9    Stelara and Tremfya terms and conditions, this is

10    really related to the CAP issue that was the subject

11    of movement at the October conference.  So we have

12    already produced documents that relate to this issue,

13    documents that show the changes in the Tremfya terms

14    and conditions, documents that show how the CAP

15    program operated, and that is going to be updated

16    right through, as Judge Waldor said, through

17    November 7.

18             So I think this issue is one that I

19    think has been kind of overtaken by events, so to

20    speak, since the letters in August.

21             MR. DUNLAP:  I agree to some extent.

22             Part of the original dispute was were

23    they going to search past July of 2022.  Judge Waldor

24    sort of took that out of everyone's hands by saying

25    go through November, and we understand they're going

Page 44

1    to be running all their search terms, so that should

2    capture a lot of it.  I think there are a few pieces

3    that still remain.  One is the issue of these two

4    custodians who are attorneys but there is evidence

5    they worked in a business role at some point.  So we

6    ask that they be added.

7                There are two additional points.

8                We had asked that they run --

9                JUDGE WOLFSON:  Well, I'm assuming, by

10   what I was just asking about, because we always know,

11   in-house attorneys in particular, we have to decide

12   are they acting in their role as an attorney or in a

13   business sense?

14               I am assuming this is part of the

15   privilege log.  You did go through their documents.

16               MR. DUNLAP:  No.

17               MR. SANDICK:  So, your Honor, we have

18   not added these people as custodians.

19               Mr. Dunlap is wrong.  They play no

20   business role.  They are lawyers.  They are not,

21   let's say, JD's doing business, or former lawyers

22   doing business.  They work in a legal capacity as

23   lawyers for JJHCS.  So their documents do come up

24   from time to time because they will be in

25   communication with the people who are custodians in

Page 45

1    this case, the business people, and when they are,

2    those documents will be withheld or redacted for

3    privilege as appropriate.

4              On very rare occasions they may be in

5    communications with both the business people and

6    people external to JJHCS, and in some of those cases

7    the documents are produced because, obviously, if a

8    lawyer is talking to a complete stranger, that might

9    not be privileged.

10             We have not added them as custodians.

11   In other words, we have not undertaken specifically

12   to review all of the lawyers' files.  And let me tell

13   you why.  It's because, given that they are attorneys

14   working as attorneys, if we are reviewing all of

15   their documents, all we are going to wind up doing is

16   creating a massive privilege log problem for us, and

17   in the end I suppose for them, because their files

18   are going to be, if not exclusively, overwhelmingly

19   privileged, because what they do when they talk to

20   people within the company is going to be conveying

21   legal advice or receiving requests for legal advice.

22             To the extent that they have

23   communications with business people and those are not

24   privileged, those would be produced.

25             JUDGE WOLFSON:  How do you search for

Page 46

1    those, though?  If you're saying you're not doing a

2    search for them as a custodian, how are you

3    determining which I falls in which category?

4                    MR. SANDICK:  Sure.

5                    Let's take an example.

6                    You have a custodian at the company, an

7    employee named Heith Jeffcoat.  If he has e-mails

8    with Savaria Harris, who is the lawyer for JJHCS, we

9    may see those e-mails when we review Heith Jeffcoat's

10   files, and to the extent those documents are

11   privileged, they will be marked privilege, they will

12   be put on the log, they will either be withheld or

13   redacted, depending on the nature of the privilege

14   assertion.

15                   What we're not doing is specifically

16   collecting all of Ms. Harris' e-mails and looking at

17   those separately.

18                   JUDGE WOLFSON:  How about though -- we

19   use Ms. Harris as an example.  She's having

20   communications with Trial Card, she's having

21   communications with a third party outside that it

22   doesn't have a business person on it, so you're not

23   capturing it there, but if you're not doing a search

24   on her, you're not capturing Trial Card because

25   they're not part of the search.

Page 47

1        MR. SANDICK:  So Trial Card is producing

2    documents, actually, they're producing custodial

3    documents from the most important people at Trial

4    Card.  There has been a separate third-party subpoena

5    back and forth between Trial Card and SaveOn.  But

6    Trial Card is producing documents, number one.

7        JUDGE WOLFSON:  I only gave that as an

8    example.

9        Any third party on the outside that she

10    is having a communication with, if you're not doing a

11    search on her, you're not going to capture any of

12    those communications that would not be protected by

13    the privilege.

14        MR. SANDICK:  Well, what we have seen is

15    that her communications will inevitably have business

16    people on them.  She is not doing business work on

17    her own.  She is the legal advisor to JJHCS.  So to

18    the extent that JJHCS is doing business-related work,

19    that is going to be conducted by the business

20    personnel.  And if Ms. Harris is copied on an e-mail,

21    and the e-mail is not a request for legal advice, or

22    the rendering of legal advice, then there will be no

23    privilege assertion.  That is how they have gotten

24    some documents that Ms. Harris is on.  Because not

25    every communication that she is copied on is

Page 48

1    necessarily going to be privileged.

2              But the issue is this:  Should we have

3    to undertake separately the burden of reviewing

4    attorney e-mails, which is very unusual in this

5    context.  It's common when the attorney is not really

6    functioning as an attorney, when the attorney is

7    really -- they have a JD, but they're doing business

8    work.

9              That is not the case here.  These are

10   in-house lawyers for J&J.

11             So if we are required to review their

12   documents separate from reviewing the business

13   people's documents, what we're going to do, you know,

14   we'll have someone sitting at a computer, privilege,

15   privilege, privilege, and at the end they will get

16   thousands more entries.

17             The cost of that to us is significant.

18   The benefit to them will be negligible or

19   non-existent, because these are people engaged in

20   legal work.  They're not doing business work for the

21   company.  They're lawyers practicing as lawyers.

22             MR. DUNLAP:  Your Honor, may I respond

23   briefly to that?

24             JUDGE WOLFSON:  Yes.

25             MR. DUNLAP:  So since the letter went

Page 49

1    out we have seen documents indicating that a couple

2    of these folks did have communications with third

3    parties, not just Trial Card, but another J&J

4    consultant called Archbow.

5              Where I think your Honor is going, and

6    this might be something we can discuss, is something

7    where they don't have to review, in the first

8    instance at least, all the internal e-mails, which

9    really seems to be Mr. Sandick's concern, but start

10   with the production of their communications with

11   third parties outside of JJHCS limited by search

12   terms, specifically folks like Archbow or Trial Card

13   or the other consultants that we know were involved

14   in discussions like this.  That might be a place to

15   start.

16              I just want to note that we have dropped

17   our request for the one in-house lawyer who

18   apparently functioned in a litigation function.

19              JUDGE WOLFSON:  Mr. Grossman?

20              MR. DUNLAP:  Mr. Grossman, yes.

21              So we're only down to these other two.

22   So we would think that that might be a place to

23   start.

24              MR. SANDICK:  Your Honor, even on the

25   issue of external communications there is, of course,

Page 50

1    a privilege doctrine that when someone working

2    outside of the company is either serving,

3    essentially, as a functional employee of the company

4    because of the nature of the work that they're doing,

5    or is part of a discussion in anticipation of

6    litigation, those e-mails involving the lawyer will

7    also be protected.

8              So even the screen that Mr. Dunlap is

9    proposing is a very -- it's a very poor tool for

10   limiting the burden on us.

11             What they are getting is, to the extent

12   that Ms. Harris is on communications with external

13   parties, for instance, let's say -- going to

14   Mr. Jeffcoat again, to use him as an example, he

15   wants to enter into some kind of a contract to help

16   manage the CarePath program, he has back and forth

17   with his business counterpart at this other company,

18   at some point he will copy Ms. Harris on that e-mail,

19   and then there will be some external discussions.

20   But those aren't discussions that drop the business

21   people.  The business people are always involved.

22   Ms. Harris is just there maybe to look at a contract

23   or provide legal advice offline to Mr. Jeffcoat about

24   the nature of the business that is being proposed.

25             So we do object to the inclusion of

Page 51

1    lawyer custodians when we know that these are lawyers

2    doing legal work, not business work.

3                    JUDGE WOLFSON:  I want to go back to the

4    limitation that Mr. Dunlap raised, which is as to

5    third parties.

6                    Address that.

7                    I know you said they subpoenaed Trial

8    Card.

9                    That doesn't relieve you.

10                   As you know, more than one party could

11   have a document, and sometimes one of the parties

12   doesn't maintain the documents properly.  It doesn't

13   relieve your obligation to produce them as well.

14                   So I want to address communications with

15   third parties.

16                   And I know you said, well, there could

17   be an occasion where she is having a communication

18   with a third party, but we still believe privilege

19   applies.  And that's when you put it on a privilege

20   log though.  It doesn't mean you produce it, it ends

21   up on a privilege log.

22                   What is the problem with the third-party

23   communications?

24                   MR. SANDICK:  So third-party

25   communication issue, number one, they are going to

Page 52

1    have -- just saying based on our investigation for a

2    long time in this matter -- Ms. Harris'

3    communications with third parties when she has been

4    copied on an e-mail, or is the recipient of an

5    e-mail, they are going to be business people who are

6    already custodians in this case.  So we are doing

7    this work for no additional advantage.  We're going

8    to be reviewing documents that are already in the

9    files of the business people at JJHCS.

10                   JUDGE WOLFSON:  I hope.

11                   MR. SANDICK:  Well, or at least

12   overwhelmingly so.

13                   I can't sit here and say that there

14   might not be one document that falls outside of what

15   I'm describing, but, again, the question is, what is

16   reasonable and proportional in this context?

17                   They have 16 business unit custodians.

18   They are getting some more as a result of the Court's

19   order.  So they will be getting more production over

20   the next month.

21                   But the question is whether we should be

22   required to review all of the in-house lawyer e-mails

23   for the narrow purpose of seeing if maybe once in a

24   while she has done this.

25                   JUDGE WOLFSON:  I hope not all e-mails.

Page 53

```
 1                What are the search terms you're using?

 2                MR. DUNLAP:  Your Honor, may I respond

 3   to that?

 4                JUDGE WOLFSON:  Yes.

 5                MR. DUNLAP:  It's not all of their

 6   in-house lawyers.  It's not all of their e-mails.

 7   It's just the third-party communications at this

 8   point.

 9                JUDGE WOLFSON:  Third-party

10   communications on what subject?

11                MR. DUNLAP:  Well, we will limit it to

12   search terms.

13                The reason we're interested in these

14   folks specifically is because the other side has

15   indicated they were involved in revising the Stelara

16   and Tremfya search terms.  So communications they had

17   about the meaning of those terms outside of JJHCS

18   would be very relevant to us.

19                And Mr. Sandick said, well, you know, a

20   lot of times when they communicate outside, they have

21   copied existing custodians.

22                Well, if they have, then those documents

23   will be de-dupped, they will be taken out, they have

24   already been identified for review if they hit on our

25   search terms.
```

Page 54

1              So we think at least in the first

2    instance they should gather the documents, we can

3    talk about tailored search terms for those

4    custodians, and then give us the numbers, and then

5    they can make a burden argument that is based on

6    actual numbers.

7              JUDGE WOLFSON:  All right, this is where

8    we're going on this.

9              It's only as to two attorneys, it's

10   Jennifer De Camara and Savaria Harris, correct?

11             MR. DUNLAP:  Yes.

12             JUDGE WOLFSON:  Okay.

13             As to them we're only looking at

14   communications to third parties on narrowly-defined

15   search terms, which I don't know what they are yet.

16             MR. DUNLAP:  We're glad to meet and

17   confer.

18             JUDGE WOLFSON:  You will.

19             MR. SANDICK:  And one other thing that

20   is important here, this is only terms and conditions

21   related discovery, that's what their request was, not

22   the whole world of SaveOn.

23             JUDGE WOLFSON:  Yes.

24             MR. SANDICK:  So communications with

25   third parties relating to terms and conditions is

Page 55

1    what your Honor is asking for?

2              JUDGE WOLFSON:  And I think this was

3    really within the Stelara and Tremfya area.

4              MR. SANDICK:  Right.

5              MR. DUNLAP:  Yes, that's why we were

6    interested in them.

7              I will say, if they mention SaveOn to a

8    third party, we do want to know about that.

9              MR. SANDICK:  What is the entitlement to

10   that?

11             MR. DUNLAP:  Because it goes to J&J's

12   awareness of SaveOn and their responses to SaveOn.

13             MR. SANDICK:  This has never been

14   briefed, your Honor.

15             JUDGE WOLFSON:  Yeah, I'm not addressing

16   that today.  If you want to address that with them,

17   you can address that with them.

18             MR. DUNLAP:  I think there are two other

19   issues that I think linger from the later time

20   period.  The custodians was one of the three.

21             So in our original request we had ask

22   that they run I think five search terms during this

23   later time period.  Four of those they had already

24   agreed to run for the earlier time period, but there

25   is one search term that we had asked them to run for

Page 56

1    the 2022 time period forward that was not caught up

2    by Judge Waldor's order, and it's my understanding

3    that they're declining to run it, and it's one that

4    we think is very important, and it is a term that

5    asks for the term EI, which is benefits

6    investigations, which is what Mr. Sandick discussed

7    earlier, within the same document as Stelara and

8    Tremfya.

9             So you may have recalled him saying that

10   through Trial Card they are producing information or

11   copies of benefits investigations they conducted for

12   Stelara and Tremfya because at that point they

13   specifically started asking to look for whether

14   people were on SaveOn advised plans or not.

15            So we want documents relating to those

16   investigations, which is why we asked them to include

17   the search term.

18            I believe they're declining to run it

19   and we think that they should.

20            MR. SANDICK:  Your Honor, they are going

21   to be getting benefits investigations documents

22   relating to Stelara and Tremfya as a result of Judge

23   Waldor's order.  What they need beyond that I do not

24   perceive it or understand it, but maybe they should

25   wait to see what our production is.

Page 57

1          JUDGE WOLFSON:  See what their

2    production is, and if there is still an issue, I'll

3    resolve it.

4          MR. DUNLAP:  Glad to reserve that.

5          There is just one other issue that I

6    believe is still out there, which is within the

7    documents that they reviewed for this later period,

8    2022 through November of last year, we believe that

9    they should be looking for and producing documents

10   identified by the search terms that go to their

11   enforcement of the Stelara and Tremfya conditions.

12         I believe there was an indication in

13   some of their correspondence that they weren't going

14   to do that.  We don't think there is a basis for

15   that.  We think that if there is a document

16   identified by the search terms and it goes to

17   enforcement of these terms, we need to see it,

18   because we have seen some documents from that time

19   period indicating ███████████████████████████████

██   ████████████████████████████████████████████████

██   ██████████████████████████████████████████████████

██   █████████████████████████████████████████████████

██   ████████████████████████████████████

24         We just want to make sure that they're

25   producing documents relating to the enforcement of

Page 58

1    those terms.

2            MR. SANDICK:  The first time that I ever

3    heard this issue raised was right now.

4            I have in front of me the search

5    terms that they proposed on terms and conditions.  I

6    don't know what he's saying, how it connects to any

7    of this.  I'm just totally surprised by what he's

8    proposing.

9            JUDGE WOLFSON:  Then talk after we're

10    done.

11            MR. DUNLAP:  Sure.

12            We have met and conferred about this,

13    but we'll do it again.

14            JUDGE WOLFSON:  Okay.

15            Let's turn to the financial documents.

16    I think that's the next thing.

17            Now, what I understand is Plaintiff has

18    produced documents that bear on the following:  The

19    extent of the harm that SaveOn has caused J&J during

20    the relevant time period; and then a number of other

21    things.

22            What are those documents?  That is a

23    general description.  What does that mean?  What are

24    you producing to them?

25            MR. SANDICK:  So what we've produced to

Page 59

1    them is ████████████████████████████████

     ████████████  ██████████████████████████

     ██████████████████████████  We have, of course,

4    agreed to update that through the present.

5              ████████████████████████████████

     ████████████████████████████████████████

     ████████████████████████████████

8              What they are asking for is -- going

9    back at one point at least to 2009 -- all documents

10   and communications about those budgets.  And they've

11   offered no rational for why they need all documents

12   and communications about the budget.

13             So this is one where we do object on the

14   basis of relevance.

15             What matters is what budget was set; how

16   much was paid.

17             ████████████████████████████████████

     ████████████████████████████████████████

     ████████████████████████████.  So we've already

20   produced substantial budget data.

21             What we haven't produced is all

22   communications ever about how much money was going to

23   be spent.  We don't think that is necessary for the

24   case.  It creates burden for no benefit.

25             JUDGE WOLFSON:  Okay.

```
                                               Page 60
```

 1              MR. DUNLAP:  So, they bring a GBL claim

 2     against us alleging that we caused public harm.

 3              One of the things that they allege that

 4     we do is that we threaten the financial viability of

 5     CarePath.

 6              That is right in their complaint.

 7              We don't think that SaveOn threatens the

 8     financial viability of CarePath, number one.

 9              And number two, we don't think that this

10     is a public harm, because CarePath is actually the

11     marketing program.  It is designed to encourage

12     patients to buy Johnson & Johnson's drugs instead to

13     competitors' drugs.

14              And there is case law saying that if

15     what you're really doing is impacting somebody's

16     business, that is not a harm recognizable under the

17     general business law, which is about protecting the

18     public.

19              We need documents showing who sets the

20     budget, why is it set, where do the funds come from.

21              JJHCS is a division of Johnson & Johnson

22     that as far as we know doesn't make any products or

23     offer any services outside of Johnson & Johnson.

24     It's an administrative entity that serves other J&J

25     entities.

Page 61

1              If, in fact, the budget for CarePath is

2     part of the marketing budget, if, in fact, it is not

3     part of some sort of public or charitable effort,

4     that goes a long way in showing that this was a

5     marketing program.

6              If, in fact, we can show that the

7     budget -- the factors that go into setting the budget

8     are not actually impacted by what SaveOn is doing and

9     they're going to keep funding this anyway, that could

10    go a long way in showing that we don't actually

11    threaten their financial viability.

12             What they have produced are a limited

13    number of documents showing amounts paid out under

14    the CarePath program and some budgeting documents,

15    but they're just numbers, they don't show us why the

16    budgets were set, we don't know who sets the budgets,

17    there is no documents indicating any of that.

18             We're not asking for every single

19    communication under the sun about this.  It's a

20    question of whether this is relevant.  And we think

21    it's squarely relevant.

22             And if we can establish that, then we're

23    glad to work on determining who the right custodians

24    are and the search terms and all of that.

25             JUDGE WOLFSON:  Let me first stop you.

Page 62

1              Judge Vazquez talked about public harm

2     in his opinion, and the way he analyzed it was -- he

3     said that "Plaintiffs plausibly allege at least two

4     deceptions as to consumers:  One, enlisting

5     pharmacies to reject Plaintiffs' claims for their

6     prescriptions at the point of sale; and two, failing

7     to inform patients that by enrolling in SaveOn SP can

8     breach the CarePath terms and conditions."

9              The things you're looking to do don't

10    answer those public harm questions.

11             So I want to get away from that for a

12    moment.

13             I think really the focus here is on the

14    harm to the Plaintiff itself and how the discovery

15    relates to that.

16             So let's focus on that.

17             I know that one of the arguments is the

18    viability, economic viability of the program.

19             Okay.

20             Yeah.  Documents that go to that are

21    important.

22             Could be communications go to it.

23             I think at this point what you've

24    done -- I don't know if you have produced any

25    communications.  You have given budgets.  You have

Page 63

1  given I think you know -- let's see -- data.

2              What have you given?

3              MR. SANDICK:  We have given them

4  documents about how co-pay assistance is determined.

5  We answered interrogatory on this subject.

6              They said we don't know who makes the

7  decisions.

8              Literally that exact question of who

9  makes the decisions was the subject of our

10  interrogatory response that we provided this summer

11  after Judge Waldor told us that she wanted us to

12  broaden our response on that.

13              JUDGE WOLFSON:  Okay.

14              MR. SANDICK:  Patient level data to show

15  every patient enrolled, dates of enrollment, the

16  amounts of assistance, the drugs they took, all of

17  this for a six-and-a-half year period.

18              You know, why would they need

19  communications within various parts of the J&J

20  company, not just JJHCS, but other components of the

21  company, why would they need that to figure out what

22  damages are?  There is no need for that.

23              JUDGE WOLFSON:  I will tell you, I think

24  that your requests in the financial area are over

25  broad.

Page 64

1            There may be areas that are pertinent,

2     and I want to define what they are.

3            I think to the extent that the harm

4     being alleged is a financial harm to the CarePath

5     program and, as you call it, the viability of the

6     program, there could be communications that could be

7     relevant.  It's not just what the budget is, but if

8     people are saying, you know, this is going to hurt

9     our bottom line, we're going to be okay, but it's

10    going to hurt our bottom line, that could go to your

11    viability argument.

12            There certainly could be communications.

13            So what I would like is a better or more

14    narrow request for what those communications are as

15    opposed to the entire world.

16            Frankly, the success of these drugs is

17    really not the issue for me or for this case.  These

18    are about programs.

19            I know you say this is really a

20    marketing tool, it's not to help the patient.

21            Maybe.

22            Maybe they're not such good guys.  I

23    don't know, that is not my determination today.  That

24    is not what this is about.

25            They created a program.  They are, you

Page 65

1    know, entitled to enforce the program how they'd

2    like.

3                    And this is not a determination of, as I

4    said, are they benevolent here in doing something

5    great or not.  That is not the inquiry.  It's an

6    economic harm that is being alleged.

7                    Right?

8                    MR. DUNLAP:  Your Honor, may I respond

9    to that?

10                    JUDGE WOLFSON:  Yeah.

11                    MR. DUNLAP:  So I believe you said

12   that -- and you cited the Court's opinion in talking

13   about the harm and pointing to things like failing to

14   say that signing up for whatever it is allegedly

15   breaches the contract.

16                    I just want to clarify the elements of

17   the GBL claim.

18                    I believe when Judge Vazquez was talking

19   about those things he was talking about the

20   underlying acts.

21                    The elements are, you have to have an

22   act that is consumer facing, public facing, that is

23   deceptive or missing.

24                    That is one.

25                    Two, that act has to cause some sort of

Page 66

1    harm to the public.

2                    And then third, that act also has to

3    cause some sort of harm to the Plaintiff bringing the

4    suit.

5                    So when he was talking about failing to

6    tell patients that they breached their contract, he

7    was talking about the deceptive act, one of the

8    alleged deceptive acts.  He wasn't talking about the

9    harm that they allege.

10                   The harm that they allege, if you look

11   at the complaint --

12                   JUDGE WOLFSON:  Yeah, but I'm looking at

13   his opinion right here.

14                   You're right, he is talking about the

15   deception.

16                   But turning to Defendant's argument.

17                   "The Court first agrees with Plaintiff

18   that a plausible belief that Defendant deceived

19   participants already enrolled in CarePath.

20   Similarly, the Court disagrees with Defendant's

21   reading that the statute requires a threat to the

22   health or safety of the public at large.  While

23   Plaintiff must plausibly allege some harm to the

24   public at large, while a threat to the health or

25   safety of the public is certainly a way to meet this

Page 67

1   obligation, the statute is not related to health and

2   safety harms," and then it goes on to say what he

3   says.

4           Now, you may think that his opinion

5   didn't adequately address harm, but we have what he

6   did.  And, you know, it's not a lengthy opinion, and,

7   you know, but it is what is, and that is how he did

8   it.

9           But I want to get to, I think that -- I

10  believe that this financial information overall, your

11  request 28, 29, and I think 30, are over broad, and I

12  want to talk about what narrow requests could be

13  relevant to your claim.

14          MR. DUNLAP:  Your Honor, I don't want to

15  belabor this, but just in response to what you said,

16  which is, what the Court did was it disagreed with

17  our basis to dismiss the complaint in terms of

18  allegations of harm to the public.  So as I

19  understand it, he allowed J&J's allegations to go

20  through to discovery.

21          Those allegations of harm, paragraph 114

22  of their complaint, says SaveOn causes damage to the

23  public, including patients, through a series of

24  things, one of which is jeopardizing the viability of

25  patient assistance programs like CarePath by making

1    them prohibitively expensive.

2              JUDGE WOLFSON:  But that is the point.

3              I am saying discovery about the

4    viability of the program is fine.  That is the

5    limitation.  And so that's what I'm focused on.  But

6    that's why I'm saying, things that you're saying

7    about, oh, but let's see how much money J&J makes on

8    Stelara, let's see how much money J&J makes overall,

9    is really not the issue.  I want to focus on the

10   program itself.

11             MR. SANDICK:  And, your Honor, just to

12   clarify the subject of the public harm that we're

13   alleging.

14             The public harm in this case is not even

15   exclusively or primarily this viability issue, what

16   it is, and as we have seen in discovery, is across

17   the country patients who come into contact with the

18   SaveOn program find their lives made much worse by

19   it.  ███████████████████████████████████

20   ██████████████████████████████████

21   █████████████████████████████████████

22   ████████████████████████████████████

23   █████████████████████████████████████

24   ███████████████████████████████████████

25   ████████████████████████████████

Page 69

```
 1              So the idea that somehow this will be a
 2   case primarily about the viability of SaveOn, 349, as
 3   I'm sure the Court knows, is a statute about consumer
 4   harm, and consumer fraud, and the consumers have been
 5   very badly harmed.
 6              That evidence will be what this trial is
 7   about.
 8              JUDGE WOLFSON:  That is fine, but I want
 9   to now get to the other aspect, which was what his
10   requests were about, which is the viability of
11   CarePath and what documents are necessary to talk
12   about that economic harm that challenged the
13   viability of CarePath.  And let's come up with
14   requests that are more narrowly tailored to that.
15              I don't think getting discovery on, you
16   know, gee, you're making -- you know, this is really
17   a marketing program, or, more broadly, J&J makes a
18   lot of money on these drugs.
19              Let's break it down.
20              So, with regard to CarePath
21   specifically, what do you think you're missing that
22   you need to give you the discovery you require to
23   show how this impacts the viability of CarePath.
24              MR. DUNLAP:  We need to understand how
25   Johnson & Johnson sets the CarePath levels, how it
```

Page 70

1    decides on the budget, where that is done, the

2    factors that go into it, and relevant communications

3    about that.

4                    JUDGE WOLFSON:  Okay.

5                    Frankly, I find that okay.

6                    So that's where we are.

7                    Let's move onto the next.

8                    J&J's return on investment from

9    CarePath.

10                   MR. DUNLAP:  I'm glad to speak about it.

11                   Return on investment documents we think

12   goes to fundamental issues of injury and damages.

13                   Fundamental issues of injury and

14   damages.

15                   Their allegation is that somehow what we

16   do causes them to pay out more in CarePath, in these

17   co-pay assistance funds, and they say, we don't want

18   to be paying this much money, it costs us however

19   much it costs us, that is our injury, and those are

20   our damages.  We will figure that out.

21                   Part of what SaveOn does on behalf of

22   its plan clients is it helps more people enroll in

23   CarePath and take more Janssen drugs.

24                   So we believe that if you look at the

25   additional patients who have signed up for CarePath,

Page 71

1    the additional patients who have bought more Janssen

2    drugs as a result of what we are doing on behalf of

3    our clients, that Johnson & Johnson has made much

4    more money in terms of drug sales, new drug sales, it

5    otherwise would not have made than in the money that

6    it pays out.

7                    Now, it has been well documented,

8    including congressional hearings, that a lot of drug

9    companies specifically monitor their return on

10   investment.

11                   You can spend a little bit of money to

12   help patients take your drugs as opposed to a

13   competitors.  You can sell many more of these drugs

14   that the commercial health plans then basically pay

15   for.

16                   That's why they do this, it's part of

17   the purpose of the program, not to benefit the

18   public, but to make this amazing investment, this

19   amazing return for themselves.

20                   So that goes to whether it's a public

21   harm.

22                   But it also goes to the question of

23   injury and damages.

24                   If we are signing more people up and

25   they are paying more in CarePath assistance funds,

Page 72

1   but they're making much more in drug sales, we think

2   that offsets or eliminates their damages, and it

3   might offset or eliminate their entire injury.

4             These return on investment documents are

5   absolutely critical to us.  We can talk about the

6   scope of how we get them, the type of data they

7   produce, the type of communication they produce, but

8   the subject of return on investment is critical to

9   our defenses on injury and damages, and it's relevant

10  to questions of public harm and GBL.

11            MR. SANDICK:  Judge, I would like to

12  respond.

13            JUDGE WOLFSON:  Sure.

14            MR. SANDICK:  This argument is

15  essentially that if CarePath, you know, and Johnson &

16  Johnson are still able to make money despite the

17  looting of the program that his client has engaged

18  in, then, you know, it's okay.  It's okay to steal

19  from someone, and to loot a program, so long as at

20  the end of the day they're still making money.

21            If this program was helping the

22  pharmaceutical manufacturers, as Mr. Dunlap suggests,

23  why have they gone through such extensive efforts to

24  hide their existence, to prevent us from knowing who

25  was in the program?

Page 73

1              If these were something that, you know,

2    advanced the profitability of the CarePath program,

3    or of pharmaceutical industry generally, why are they

4    hiding this from everyone?

5              This is a made for litigation argument

6    to obtain documents that have nothing to do with the

7    case in an effort to shift the case from a fairly

8    specific question, do their efforts lead CarePath to

9    pay more money than it would pay in the absence of

10   CarePath, into a huge question about how much money

11   is J&J making on its drugs, can it afford to absorb

12   some losses here because they're generally a

13   profitable company, things that are just totally

14   irrelevant.

15             Also, just for a moment on the burden

16   issue.

17             The question of how much money does a

18   drug company make on a particular drug is not a

19   simple question, you know, residing in a couple of

20   paper files in someone's office.  This is a massively

21   complicated question that goes to virtually every

22   corner of the entire J&J company to figure out, you

23   know, is a drug profitable relative to what?  To

24   other investments?  To other potential drugs?

25             It's an effort to place a huge burden on

Page 74

1    us for no benefit in the lawsuit.  It's totally

2    irrelevant to the lawsuit whether or not the whole

3    company of Johnson & Johnson makes more money or less

4    money.

5              The question is, are they inducing

6    people to breach the terms and conditions, the

7    patients, are they forcing them to do this in order

8    to get their medication, are they causing harm to

9    those patients, and does this lead to an increase in

10   the amount of co-pay support that we would pay absent

11   that?

12             They are reframing this to entities, by

13   the way, that are not part of this lawsuit.

14             JUDGE WOLFSON:  Well, that's why I want

15   to ask a question.

16             May I stop you there for a minute?

17             MR. SANDICK:  Sure.

18             JUDGE WOLFSON:  I find this curious, and

19   I have been wondering about this as I've looked at

20   this case since the beginning, the only Plaintiff in

21   this case is JJHCS, not J&J.  So the question is, you

22   have just defined, Mr. Sandick, that this is a very

23   narrow harm, narrow in the sense of to this one

24   subsidiary or affiliate that runs the CarePath

25   program.

Page 75

1              You want to argument more broadly, it's

2     much more than that.  J&J is making a lot of money.

3              So, first of all, who funds the CarePath

4     program?

5              MR. SANDICK:  So -- I'm not actually

6     sure what the -- it's something within the Johnson &

7     Johnson family of companies, but I couldn't say

8     specifically.  I think there are specific drugs that

9     fund -- essentially that fund their own co-pay

10    support, it's not decided in one person's office

11    sitting alone.

12             JUDGE WOLFSON:  Okay.

13             So those decisions are made somewhere

14    else within corporate J&J perhaps, it's not limited

15    to this one entity who is the Plaintiff in the case,

16    but who may be the one administering it.

17             I understand your arguments, Mr. Dunlap.

18    I'm not buying it at the moment.

19             What I don't want to see happen too in

20    this case is that this becomes, essentially, J&J is a

21    big company that makes a lot of money.  Don't cry for

22    them.

23             And I don't think, by the way, any juror

24    is going to believe that anyway, that you're doing

25    something that's greatly going to harm the overall

Page 76

1    J&J company.

2              So that's why I'm trying to figure out,

3    if you're narrowing harm as to the CarePath program

4    itself that exists within this one entity.

5              MR. SANDICK:  That is the case.

6              We are not, for example, this is not a

7    case about lost profits.  This is not a case about

8    the harm, more broadly, to Johnson & Johnson.  This

9    is a program that says, well, the program gets this

10   amount of money.  As a result of SaveOn, they need to

11   spend this amount of money.  And that delta is the

12   financial damage.  And then the patient harm is what

13   we talked about before.

14             JUDGE WOLFSON:  Yeah, that's what I'm

15   dealing with now on financials.

16             MR. DUNLAP:  So I have to reiterate how

17   strongly we believe this is relevant and how

18   important we think these documents are.  And, again,

19   we're glad to talk about exactly which documents they

20   would produce, what sort of data, et cetera.

21             But the name of the program, or it used

22   to be, it was not just CarePath, but Janssen

23   CarePath.  Janssen being the entity that actually

24   sells the drug.

25             They decided to arrange their business

Page 77

1    so that this entity develops and sells the drug,

2    Janssen, and this entity administers the CarePath

3    program, but the two are related.  Of course they

4    analyze their return on investment.  There is, again,

5    congressional testimony showing that a number of

6    these drug companies do that.  And we haven't heard

7    them say that they don't have return on investment

8    related documents.  They figure out how much they're

9    going to give to CarePath to give to patients.  They

10   figure out how much that helps them drive additional

11   sales over in the Janssen entity.

12              We don't think that they should be able

13   to say, well, nothing that happens over in Janssen in

14   terms of additional sales is relevant because they

15   decided to put the CarePath program under JJHCS.

16              We're not trying to stand up and say,

17   oh, J&J makes a huge amount of money generally.

18   We're not interested in baby powder sales or shampoo

19   sales or anything.

20              JUDGE WOLFSON:  I know that.

21              MR. DUNLAP:  But we do think that this

22   fundamentally goes to what the purpose of this

23   program is and what the financial consequences of it

24   are.

25              They want to stand up and tell a story

Page 78

1    that says, J&J provides this money to help patients

2    for their drugs and SaveOn comes in and loots and

3    steals and all the other pejorative terms Mr. Sandick

4    used.

5                 We think that that is not true.

6                 What we want to be able to stand up and

7    say, they don't offer this program to help patients.

8    They offer this program to help persuade people to

9    buy their drugs instead of their competitors.

10                And what SaveOn does on behalf of its

11   plans actually winds up with them making more money.

12   It's not, oh, they make lot of money, they can afford

13   this.  It's that the direct consequences of the

14   actions that they have put at issue causes them to

15   make more money.  That there is an offset through the

16   additional drug sales that we are able to drive by

17   signing more people up for CarePath that more than

18   offsets the additional CarePath funds that they're

19   spending.

20                This isn't some general argument, they

21   make a lot of money, they can afford it.  That is not

22   what it is.  It is directly tied to the allegations

23   in the complaint.

24                And I have to underscore -- you know,

25   we're glad to narrow, as I said, the search terms,

Page 79

1    the types of requests that we go after here.

2              JUDGE WOLFSON:  Tell me what that

3    narrowing would be.  Let me hear that.

4              And I do appreciate, but I'm assuming

5    you are producing documents about CarePath being

6    created and what it's intended to do and how it's

7    being funded.

8              MR. SANDICK:  Absolutely.

9              And the reason, by the way, it's named

10   Janssen CarePath is not like some secret thing, it's

11   because patients know the company as Janssen.  So if

12   you take Darzalex, you know that is a Janssen drug.

13   Janssen CarePath helps you pay for it.

14             That is the reason that at one time

15   Janssen was part of the name, it's not some broad

16   conspiracy theory.

17             MR. DUNLAP:  We're not alleging a

18   conspiracy theory.

19             JUDGE WOLFSON:  What is the narrow terms

20   you would say?

21             MR. DUNLAP:  We need documents showing

22   Johnson & Johnson's analysis of its return on

23   investment for CarePath.  Not just the data about

24   what it's paid out.  We know thing going to produce

25   that because that's driving their damages.

Page 80

1          JUDGE WOLFSON:  Repeat that.

2          MR. DUNLAP:  We need Johnson & Johnson's

3  analysis of its return on investment for the CarePath

4  program, including how it helps patients adhere to

5  Janssen drugs once they enroll in CarePath, and we

6  want relevant communications on that topic as well.

7          MR. SANDICK:  Your Honor, what that

8  would require is, essentially, a company wide X-ray

9  of how much money the company makes on all of these

10  different drugs, how much it costs to make these

11  drugs, how much it costs to market these drugs.  All

12  of that information would be necessary.  A vast

13  project, totally irrelevant to the case.

14          And on the subject of adherence, by the

15  way, this is something that is very important for

16  your Honor to know, ████████████████████████████

17  ████████████████████████████████████

18  ██████████████████████████████████████████████

19  ████████████████████          We have documents.  We can

20  produce those to the Court if that is relevant, I

21  don't think it is necessary to reach this.  But the

22  notion that the adherence story somehow resides

23  within JJHCS, they've looked at it.  They know

24  already.  Their partner is Express Scripts.  They get

25  all sorts of tremendous industry wide data.  Express

Page 81

1    Scripts manages pharmaceutical benefits for more

2    Americans than any other company.  So if there is an

3    adherence story, they would know it.  And what

4    they've have figured out was it's nonsense.  There is

5    no adherence story.

6              And what he said is not a narrowing of

7    the request, when he said, "oh, this is my narrowed

8    request."  It is almost verbatim what they've asked

9    for in the requests, in the discovery correspondence,

10   before Judge Waldor.  It's not a narrowing at all in

11   any regard.

12             MR. DUNLAP:  Can I respond to those

13   points, your Honor?

14             JUDGE WOLFSON:  Go ahead.

15             MR. DUNLAP:  So, first, he's acting as

16   if we're asking him to create a return on investment

17   analysis from scratch and just go out into the

18   company and all the various corners of it and try to

19   figure this out.

20             No.

21             We want whatever analyses they have

22   already done on their return on investment for

23   CarePath.  There has to be existing work product on

24   this.  Whatever finance teams or product teams drive

25   it must have done something.

Page 82

1          JUDGE WOLFSON:  He's limiting it to

2     CarePath not on your drugs.

3          MR. SANDICK:  Well, in order to figure

4     out the question of whether CarePath is helpful you

5     have to look at all of these other issues relating to

6     the manufacturing, development, marketing, and sale

7     of the drugs, and I don't think -- I know Mr. Dunlap

8     keeps saying there is one piece of paper and it will

9     have all the answers -- I don't think that is true,

10    not based on anything I have seen.

11         MR. DUNLAP:  So the return on investment

12    documents would say, we put this much money into

13    CarePath, and then we make this much money in terms

14    of selling additional drugs to patients over in the

15    Janssen entity.

16         We're not asking him to, you know,

17    search every single corner for documents that are

18    irrelevant or -- we want whatever analysis they have

19    done.

20         They do CarePath for a reason.  There

21    must be some analysis of the benefit that CarePath

22    has on Janssen's product line.

23         MR. SANDICK:  The question of whether

24    CarePath operates for charitable purposes or for

25    business purposes is not really relevant to the case

Page 83

1    if they're taking money from it.

2              If you run a car dealership and someone

3    steals a car once a week from your lot, it doesn't

4    matter whether as an overall matter the dealership is

5    still making money, it's still wrong to take cars

6    from people's lots, and it's wrong to induce people

7    to breach their terms and conditions in order to make

8    more money.

9              So the idea that somehow it matters how

10   profitable CarePath is or whether it's prudent for

11   J&J to run it, it's just moving the case far, far

12   away afield from anything in the complaint, the

13   judge's order, into this other subject of, is this

14   segment of J&J's business, the drug segment, is it

15   profitable, and is this just some gold dust from the

16   machine that it's okay for SaveOn to take.

17             Whether CarePath has a huge return on

18   investment or has no return on investment, it still

19   has no bearing on whether they're allowed to do this.

20   It's irrelevant to the case.

21             MR. DUNLAP:  Your Honor, if I could just

22   respond quickly.

23             JUDGE WOLFSON:  Yes.

24             MR. DUNLAP:  It has a huge bearing on

25   whether we have actually damaged them because if the

Page 84

1    action we take by signing someone up for CarePath,

2    what they call the SaveOn program, resulted in a new

3    patient signing up for CarePath, they're saying, wait

4    a minute, we have paid more to that patient than we

5    otherwise would have.  But if by signing them up we

6    gave them more drug sales, we produced more drug

7    sales for Janssen, which is a J&J entity, then that

8    additional money eliminates whatever damage we say

9    was caused -- they say was caused by the additional

10   expenditure of CarePath funds.

11           Now, of course it's fine for him to

12   argument differently at trial if he wants to, but we

13   need these documents to show that we're not actually

14   injuring them.

15           And the car dealership scenario he

16   provides makes no sense, frankly.  If you steal a car

17   a week from a car dealership, that might be illegal,

18   but it's not a GBL claim.

19           JUDGE WOLFSON:  Let me ask you this

20   question:  Mr. Sandick, is there any analysis --

21   their position is, guess what, we make more sales for

22   you.  More people sign up because of the SaveOn

23   program.  And that may not be accurate.  You may

24   dispute it.

25           Is there a document or do you have

Page 85

1    documents that show whether, indeed, as a result of

2    --

3              MR. SANDICK:  If we do and it talks

4    about SaveOn, it would have already been produced.

5              MR. DUNLAP:  Aw, if it talks about

6    SaveOn.  That is the critical point.

7              MR. SANDICK:  Well, yeah, this is a case

8    about SaveOn.

9              There is literally no way to search as a

10   practical matter without going to every corner of the

11   business to generate the information that Mr. Dunlap

12   wants to be generated for this case.

13             JUDGE WOLFSON:  I didn't ask you to

14   generate it.  What I asked was, has anyone done an

15   analysis for documents that exist as to whether there

16   are more patients signing up for your drugs or

17   getting the drugs who are SaveOn customers?

18             MR. SANDICK:  I have seen that analysis

19   in their files stating that it's not true.

20             They have, along with their business

21   partner --

22             JUDGE WOLFSON:  I asked if you have it?

23             MR. SANDICK:  I haven't seen that

24   document.

25             JUDGE WOLFSON:  Answer that question.

Page 86

```
 1                    MR. SANDICK:  I have not seen that
 2       document.
 3                    JUDGE WOLFSON:  I'm asking if there are.
 4                    Do a search for that.
 5                    I want to start in that instance.  I
 6       think that is a starting point.
 7                    MR. SANDICK:  What is the search, your
 8       Honor?
 9                    JUDGE WOLFSON:  Whether there are
10       documents that exist that have looked at whether
11       there are more patients taking your drugs as a result
12       of being in the SaveOn program.  That's the inquiry.
13                    MR. DUNLAP:  Your Honor, may I?
14                    JUDGE WOLFSON:  Yes.
15                    MR. DUNLAP:  I think it is necessary for
16       them to do that search, but we don't think it should
17       be limited to that.  And let me tell you why.
18                    JUDGE WOLFSON:  I'm going to start with
19       that.
20                    MR. DUNLAP:  Limiting it to the SaveOn
21       program we think has too narrow a net because if they
22       have documents that say, you know, for every
23       additional hundred people we sign up for taking
24       Stelara, we make this much money, that may not
25       mention SaveOn, but if we could find those documents,
```

Page 87

1    if we could find that analysis, and then we compare

2    that with our own separate analysis of how many new

3    patients we got to sign up, we can show additional

4    profits to them as well.

5              So the relevant documents may not

6    mention SaveOn.  I understand you want to start

7    narrow, but I just want to put a stake in the ground

8    that we don't think limiting return on investment

9    information to SaveOn is sufficient.

10             MR. SANDICK:  Yeah, I mean, if it

11   doesn't mention SaveOn, then I don't see what it has

12   to do with this issue.

13             I should also point out that going back

14   right to the start of the case we made some requests

15   to SaveOn, saying, we want to know about how your

16   program operates with other pharmaceutical companies,

17   because the public harm in the GBL 349 claim is not

18   limited to harm to patients taking our drugs, it

19   could be patients taking Pfizer's drugs, or some

20   other company's drugs, those could also be harmed

21   under 349.

22             They objected and said, anything beyond

23   Janssen and SaveOn, CarePath and SaveOn, we object

24   to.  And Judge Waldor heard argument and ruled in

25   their favor and said, absent some very specific

Page 88

1   showing, and a couple of times that showing has been

2   made, they don't have to tell you about their program

3   as it ties to other drug companies.  But now they are

4   making the mirrored request saying we have to do

5   something that has nothing to do with SaveOn.

6              MR. DUNLAP:  The mirrored request is

7   about Janssen drugs.  We're not asking them for all

8   kinds -- the draft drugs at issue in this case.

9   We're not asking for return on investment on a whole

10  bunch of drugs that aren't at issue.  What is their

11  return on investment for the drugs at issue, those 14

12  drugs.

13             JUDGE WOLFSON:  I need it to be honed in

14  on SaveOn at the moment, and I'm limiting it to that.

15  You're certainly free to come back to me depending on

16  what we get.  I know we're not done.

17             MR. DUNLAP:  Thank you, your Honor.

18             JUDGE WOLFSON:  All right.

19             But answer that, please.

20             MR. SANDICK:  Okay.

21             JUDGE WOLFSON:  Are those all the old

22  requests?

23             MR. DUNLAP:  Well, I think there was

24  also a pricing issue, a pricing data issue.

25             JUDGE WOLFSON:  The pricing of Janssen

Page 89

1   drugs.

2              MR. DUNLAP:  I could address that

3   briefly.

4              JUDGE WOLFSON:  Go ahead.

5              MR. DUNLAP:  So they allege in their

6   complaint that they have actually lowered the cost of

7   Janssen drugs, and they cite for that something that

8   they call a transparency report, which is a

9   publicly-available document that they put up on a

10  website that says, we have lowered the cost of

11  Janssen drugs, but it provides no actual data.  And,

12  in fact, if you go and look at those reports, it

13  drops footnotes that says, we base this on internal

14  Janssen financials.  But they haven't produced the

15  backup for them.  And, in fact, we think that they

16  don't actually reduce drug prices, that they increase

17  drug prices.  Which is relevant to why these plans

18  are fighting back, because the prices that Johnson &

19  Johnson continues to raise, continues to put

20  financial pressure on the plans.

21             We also think that there is information

22  showing that one of the reasons they're able to keep

23  raising drug prices is because of the CarePath

24  program and the fact that they're able to get more

25  people through that program to stay on their drugs as

Page 90

1    opposed to taking competitors' drugs.

2            We think that that is highly relevant to

3    their allegations here.

4            MR. SANDICK:  Your Honor, I think your

5    Honor may have said a few minutes ago that you didn't

6    think that the price of drugs was relevant in this

7    case, and it's not.

8            We produced the transparency reports as

9    a way of trying to give them something on an issue

10   that is actually irrelevant.

11           What they have asked for is, they say,

12   all internal data that supports the net price values.

13           Net price is, essentially, the price

14   that matters when we're talking about drug pricing.

15           And all internal data that supports it.

16           Again, this would require us to go well

17   outside of JJHCS to go through the entire company and

18   to try to explain what the pricing is, how it changes

19   over time.

20           First of all, they have a lot of this

21   information already through their business partners,

22   Express Scripts, and Accredo.  Accredo is a pharmacy.

23   The pharmacy collects payment on these drugs.  They

24   know, and their business partners know, what the drug

25   prices are.

Page 91

```
 1              But the case is not about what we charge

 2   for the medication, is that a fair price, should be

 3   charge something more or something less.

 4              JUDGE WOLFSON:  You're not going to

 5   argue that your drug pricing was affected by their

 6   program?

 7              MR. SANDICK:  No.  The drug pricing --

 8   we're not seeking lost profits.  Drug pricing is set

 9   by reference to a million factors.  SaveOn is not one

10   of them.

11              MR. DUNLAP:  If I could respond on that.

12              JUDGE WOLFSON:  Yeah.

13              MR. DUNLAP:  They say they produced

14   these transparency reports.  Of course they're on the

15   website.  This wasn't really much of a production.

16   It was something that was already available.  And

17   they say the net price is what matters.  And they

18   also say, oh, we have to go outside of JJHCS.  We

19   have to do this wide range search.

20              They put these numbers into the

21   transparency reports.

22              JUDGE WOLFSON:  But I want to know what

23   is the relevance of it.

24              MR. DUNLAP:  It's relevant -- first,

25   it's relevant because we believe it will show that
```

Page 92

1   their allegation that they actually lowered real

2   prices over the course of these years, something

3   they're intending to tell the jury --

4              JUDGE WOLFSON:  Well, I hope not.  I

5   just asked that.  And I'm going to put that right out

6   there again to Mr. Sandick.

7              Are you in any way going to put to a

8   jury that you lowered prices and put that up to

9   suggest implicitly or explicitly it's because of

10  SaveOn.

11             MR. SANDICK:  This is not a lost profits

12  case.  This is about the CarePath program and whether

13  that funding has had to go up over time because of

14  their efforts.

15             I think that answers your Honor's

16  question.

17             JUDGE WOLFSON:  But you're not going to

18  argue, and by that funding, we've now lowered prices,

19  or we've raised prices, or anything else?

20             MR. SANDICK:  No.  The drug pricing is

21  not set by reference to SaveOn, it's set by reference

22  to a million other things, but not SaveOn.

23             JUDGE WOLFSON:  I'm going to put this

24  right out, Mr. Dunlap, we're on the record today:  If

25  there will be no argument in this case at a trial, or

Page 93

```
 1   at a motion for summary judgment, or wherever it
 2   might be, that CarePath in any way has impacted the
 3   pricing of these drugs, it's a non-issue.
 4              MR. DUNLAP:  Well, they're going to
 5   stand up --
 6              JUDGE WOLFSON:  I'm asking.
 7              I want that representation.
 8              MR. SANDICK:  Yes, that is not the
 9   theory of our damages.
10              JUDGE WOLFSON:  I ask for a
11   representation that you will not make that argument.
12              MR. SANDICK:  Yes, we are not going to
13   argue that our drug prices were lowered due to what
14   SaveOn has done.
15              The only argument we will make about
16   damages is how the funding for the CarePath program
17   within JJHCS has changed as a result of their
18   conduct.
19              MR. DUNLAP:  Paragraph 80 of their
20   complaint they say, "SaveOn SP has inflated patients'
21   drug co-pay obligations even as JJHCS has
22   consistently decreased the price of the drugs
23   targeted by the SaveOn SP program," and it cites its
24   own transparency report, a quote that says, "Net
25   prices for Janssen medicines has declined for the
```

Page 94

1    fifth year in a row."

2                MR. SANDICK:  But that is not in any way

3    different from what I just said a moment ago, your

4    Honor.  What we say there is that they have taken a

5    bigger share of the CarePath program payments even

6    while we have reduced drug prices, but we are not

7    alleging that the drug price reduction was caused by,

8    was driven by, is related to SaveOn's program.  The

9    drug prices are set not by reference to what SaveOn

10   is doing, by reference to lots of other things, but

11   not that.

12               MR. DUNLAP:  The issue, your Honor, is

13   that we don't think that allegation is true.  We

14   think that, in fact, they have raised drug prices.

15               JUDGE WOLFSON:  Well, I want to know

16   what you're going to do with allegation number 80.

17               MR. SANDICK:  What am I going to do with

18   allegation number 80?

19               JUDGE WOLFSON:  Yeah.

20               MR. SANDICK:  What I'm going to do with

21   allegation number 80 is show that they are taking an

22   increased piece of the co-pay support program.

23               We are not intending --

24               JUDGE WOLFSON:  And that is not

25   impacting your pricing?

Page 95

1              MR. SANDICK:  No.

2              JUDGE WOLFSON:  Lowering your pricing or

3    raising your pricing?

4              MR. SANDICK:  No.

5              That line in there, which is far from

6    central to what our case is going to be about, what

7    that line in there is meant to say is that it is

8    commonly the case in sort of the market of public

9    discourse for insurance companies to say, oh, yes, we

10   know that your drug prices have gone up, but that is

11   not our fault, that is the drug company's fault that

12   raise their prices every year.

13             So we made this sort of rhetorical

14   aside.

15             We are not intending to show, will not

16   show, or not alleging that the cause of drug prices

17   moving up or down is because of SaveOn.

18             MR. DUNLAP:  Well, no, because they are

19   going to stand up and they're going to say, we have

20   been lowering our prices, and then they're going to

21   come in and say, while we have been lowering our

22   prices SaveOn has come in and taken a bunch of our

23   CarePath assistance programs --

24             JUDGE WOLFSON:  I think I heard you're

25   not going to say that.

Page 96

1              MR. DUNLAP:  Well, I thought he said he

2    wasn't limiting it to the damages or the cause of the

3    increase.

4              MR. SANDICK:  No, we are not going to

5    argue that our damages are in the form of lost

6    profits by having reduced prices due to SaveOn.  That

7    is not our theory of the case, our damages, or

8    anything else like that.

9              If they make arguments in their case

10   using SaveOn data about drug pricing, say, no, no,

11   no, actually, these guys are -- you know, they're

12   ganas, they're taking from everyone, then we will be

13   able to come back and say something.  But our case is

14   not about the drug prices being set by reference to

15   anything that SaveOn does.  I want to make that very

16   clear.

17             MR. DUNLAP:  He keeps trying to link it

18   to SaveOn.

19             Put SaveOn aside for a second.

20             He is going to stand up at trial, if it

21   gets there, and say, Johnson & Johnson has been

22   lowering its drug prices.

23             JUDGE WOLFSON:  Why would you say that?

24             MR. SANDICK:  I don't think that we're

25   going to say that.

Page 97

1              MR. DUNLAP:  It's in his complaint.

2              JUDGE WOLFSON:  I hear it's in the

3    complaint.  Just because it's in the complaint --

4    that's why I'm looking for representations today.

5              MR. SANDICK:  We're not planning to

6    prove a case about our drug prices.  The case that

7    we're going to prove on damages, just to spell it out

8    --

9              JUDGE WOLFSON:  You're not going to open

10   and say, and you're not going to close and say, we're

11   such good guys, we keep reducing the price, but they

12   stealing from us?

13             MR. SANDICK:  No.

14             JUDGE WOLFSON:  Do you agree you're not

15   going to do that?

16             MR. SANDICK:  I agree that we're not

17   going to do that.  That's not the theory of our case.

18             MR. DUNLAP:  I just want to make clear,

19   he is not going to make any representation that they

20   have been lowering drug prices?

21             MR. SANDICK:  We are not going to make

22   that representation.

23             I want to leave myself one out, your

24   Honor.  If they start making allegations about the

25   greedy drug companies that have raised prices, I

Page 98

```
 1    think we're allowed to reply to that.  But that is

 2    not something we're planning to present.  And, in any

 3    event, they and their business partners have tons of

 4    data about this.  ███████████████████████████

 5    ████████████████████████████████████████████████

 6    ████████████████████████████████████    ███████████

 7    ████████████████████████    ██████████████████████

 8    ████████████████████████████████    Why all the

 9    lies and the deception?

10              MR. DUNLAP:  Well, I'm not getting into

11    all those false accusations.

12              Look, we had raised the drug pricing for

13    two reasons.  One is that they allege that they were

14    increasing these prices.  And if they are going to

15    make that allegation, we want to see the data on

16    which they are basing that.

17              JUDGE WOLFSON:  Okay.  I have just

18    gotten a commitment that they weren't.

19              MR. DUNLAP:  We also want to make the

20    point that it's our understanding that one of the

21    reasons Johnson & Johnson can, in fact, continue to

22    increase its drug prices is because it is able to get

23    patients to commit to taking its drugs through the

24    CarePath program.  That the CarePath program, one of

25    the consequences of it is, that it allows Johnson &
```

Page 99

1    Johnson to increase drug prices.  That they don't

2    exist separately, that, in fact, it's part of Johnson

3    & Johnson's strategy, that they've increased prices

4    for reasons having nothing to do with material costs

5    or efficacy or anything like that, but just because

6    they can.  And one of the reasons they can do that is

7    because they made the patients pricing sensitive to

8    this program and they keep buying more drugs.  And

9    the cost of that is borne by the employers.  And we

10   think that evidence goes to whether or not this is

11   actually a public harm or not or whether it's a

12   program designed to benefit J&J through increased

13   drug prices.  And we also think it could go to

14   damages and injury if we can show that by adding new

15   patients to the CarePath rolls, where they are able

16   to raise their prices more, not just make more sales,

17   but make more sales at a higher price.  That could

18   offset damages.

19              JUDGE WOLFSON:  Did you want to take a

20   break?

21              COURT REPORTER:  Yes, I would love to.

22              JUDGE WOLFSON:  Okay.

23              (Brief recess taken.)

24              JUDGE WOLFSON:  Mr. Dunlap, you got one

25   minute to summarize.  Before we took the break we

Page 100

1    kind of interrupted you.

2              MR. DUNLAP:  I think I just finished

3    making another pitch about why we thought drug

4    pricing was relevant even if they are not going to

5    affirmatively say that they have been decreasing

6    prices.

7              One other point I just want to make on

8    the financial stuff generally to the extent that your

9    Honor is going back and forth about whether or not

10   it's relevant or wants to put it off.

11             We have seen a number of documents that

12   have been produced since we submitted the letter and

13   since the conference occurred that we think

14   underscores that they do look at return on

15   investments.  And we're glad to make a supplemental

16   submission to you summarizing those documents, and

17   we're happy to do that promptly if that will help

18   you.

19             JUDGE WOLFSON:  Okay.

20             For today I'm not directing that

21   anything further be provided on the financial.  I

22   don't foreclose you if you got something else that

23   you want to submit to me that you think would be

24   convincing, but, first, would you please speak to the

25   other side and confer as to, based on that, why you

Page 101

1    think.

2                    MR. DUNLAP:  This is on the drug

3    pricing?

4                    JUDGE WOLFSON:  Yes.

5                    MR. DUNLAP:  Okay.

6                    JUDGE WOLFSON:  Okay, I think the next

7    thing now is with regard to this issue that's been

8    briefed the last week or so on custodians.

9                    MR. DUNLAP:  And my associate Ms. Snow

10   is going to present argument on that.

11                   JUDGE WOLFSON:  Okay.

12                   All right.  So we got a couple of

13   disputes here.  This started with, I guess, 12

14   custodians, et cetera.  November 7 Judge Waldor

15   granted the motion as to six custodians.  And in that

16   regard the Plaintiff is now -- and I think you

17   reached some agreement on that, but the question is

18   the scope of the search terms.  Right now they have

19   been as to the CAP program, the Plaintiff has said,

20   right?

21                   MS. SNOW:  Yes, just two narrow terms as

22   to the CAP program.

23                   JUDGE WOLFSON:  And I think that you

24   have gone back and forth as to what did Judge Waldor

25   mean.

Page 102

1          Well, guess what?  As Judge Waldor had

2     put in her order, you know, I had the opportunity if

3     I would like to speak to her.  Actually, Wayne

4     communicated with her chambers and we got a response

5     that told us -- well, you know what, I'll let Wayne

6     put into the record because you communicated with

7     them about it.

8               MR. FANG:  The law clerk sent

9     correspondence back to my inquiry.

10              JUDGE WOLFSON:  Tim.

11              MR. FANG:  Tim.

12              And he summarized the dispute as he

13    understands it, and he spoke to Judge Waldor about

14    the differing interpretations, the parties'

15    interpretation of her order.  So, ultimately, what

16    she first said -- what he first said was, and

17    Defendant was right, that the judge did not

18    specifically order specifics regarding new custodian

19    searches, because the judge had asked the parties to

20    work up logistics, but upon reviewing and considering

21    the parties' dispute, Judge Waldor agrees -- and I'm

22    reading his e-mail -- that "Johnson & Johnson's

23    position is the only one that makes sense from a

24    proportionality standpoint.  We were only adding the

25    new custodians because of their association with the

```
                                              Page 103
 1    CAP program. ████████████████████████████████

 2    ████████████████████████████████████████████████

 3    ██████████████████████████████████████

 4    ██████████████.  Similarly, we will limit the searches

 5    of the new custodians' records to the CAP related

 6    term that Judge Waldor specified since that is the

 7    only reason these people are involved in the

 8    discovery in the first place."

 9              MS. SNOW:  Your Honor, you know, I hear

10    what she is saying.

11              ████████████████████████████████████████

12    ████████████████████████████████████████████

13    ████████████████████████████████████████████████

14    ████████████████████

15              I would ask that we be allowed discovery

16    on that earlier time period.

17              Additionally, I think we did raise new

18    evidence that demonstrates why the two narrow

19    searches --

20              JUDGE WOLFSON:  I'm going to address

21    that in a moment.  Okay?

22              ██████████████████████████

23              MR. SANDICK:  Let me pass it off to

24    Ms. Long.  I have had enough.  I don't want to say

25    anything else for the rest of the day.
```

Page 104

1          MS. LONG:  I just wanted to clarify, I

2    think as to the search terms at issue in the

3    November 7 order we did meet and confer where we were

4    considering the position that was offered by SaveOn

5    and a potential for compromise in the middle.

6    Ultimately we did not make that compromise.  But

7    prior to the October 30 conference we had agreed to

8    run a specific CAP search term which did not include

9    a SaveOn modifier for the 2016 to 2022 period.  We

10   did that to try to avoid the dispute that ultimately

11   went before Judge Waldor.  And what we took back from

12   the meet and confer was whether to consider running

13   that term over some period of these CAP custodians

14   earlier.

15          Ultimately we said back to Ms. Snow, and

16   we've had several meet and confers on this point,

17   that we did not consider that is what Judge Waldor

18   had ordered us to do so we declined to run the term.

19   ████████████████████████████████

20   ██████████████████████████████████████████

21   ██████████████████████████████████████████

22   ████████████████████████████

23          It is always possible that there is some

24   correspondence just outside of that window, but

25   consistent with our meet and confer our position has

Page 105

1    been, as Mr. Fang just said, the order prescribed

2    only these search terms and only for that time

3    period, and that is why we cabined our searches

4    accordingly.

5                    JUDGE WOLFSON:  She didn't say that,

6    though.  What she said is -- she didn't give a

7    specific order on it, but she said what makes sense

8    to her based on the discussion.

9                    So it was not ruled upon.  So to the

10   extent you went back and forth, you're right, I think

11   you're interpreting what her meaning might be, but it

12   does say, the short answer is, "we did not order

13   specifics regarding the new custodian searches.  We

14   wanted the parties to work it out."  And then the

15   rest of the response was her kind of weighing in on

16   proportionality though.

17                   So it's not necessarily a done deal.

18                   So, let's talk about, is there

19   compromise in here?  That is really where we are.

20   And, one, I want to talk about dates.  I don't

21   understand this whole thing about before 2022.  There

22   is some earlier date involved or not.

23                   MS. LONG:  ███████████████████████

24   ████████████

25                   JUDGE WOLFSON:  ████████████████████

Page 106

1    █████████████████████████

2         MS. LONG:  ████████████████

3    ██████████████████████████████████████

4    ██████████████████████████

5         MS. SNOW:  If I can speak on that.  Two

6    points on that.

7         █████████████████████████████████

8    ████████████████████████████████████

9    ██████████████████.

10        JUDGE WOLFSON:  ████████████████

11   ██████████████████████████████

12        MR. LoBIONDO:  We'll search for those.

13        JUDGE WOLFSON:  You're going to search

14   for those.

15        MR. LoBIONDO:  ████████████████████

16   ██████████████████████

17        MS. SNOW:  So I think my second point is

18   that, really, it's about the essence of the CAP

19   program, and █████████████████████████████

20   ██████████████████████████████

21   ████████████████████████████████

22   ██████████  ████████████████

23   ██████████████████████████████████

24   ██████████  And that is what we are -- that is what

25   we believe we're entitled to discovery on.

Page 107

1         And I think that for those custodians we

2    do need to go back further.  It is clear that, like,

3    for example, John Hoffman was working on the response

4    to accumulators and maximizers in 2020.

5         And I think there is another additional

6    point I have here, which is that the search terms

7    that they have agreed to run just on the CAP program

8    do not actually capture all of the documents that

9    would be involved in that response, which ultimately

10   turned into that program.

11             JUDGE WOLFSON:  Okay.

12         So you're saying there could be other

13   documents because perhaps even there wasn't a name of

14   a CAP program but the idea of what this program could

15   be was out there and maybe it's not being captured by

16   the search terms?

17             MS. SNOW:  Yes.

18             JUDGE WOLFSON:  What are the search

19   terms?

20             MS. SNOW:  So I believe they're

21   referring to the two additional search terms that

22   were requested in SaveOn's other motion regarding the

23   CAP program, and there is this additional term which

24   they agreed to starting -- they agreed to it in

25   September, which was also covering the CAP program

Page 108

1    specifically, but there are a number of other terms

2    that I'm happy to get into the specifics on but that

3    encompass mentions of SaveOn, mentions of ESI and of

4    accumulator because, of course, many of the documents

5    reveal that ████████████████████████████████████

6    █████████████████████████████████.

7                    JUDGE WOLFSON:  And you haven't reached

8    agreement on these?

9                    MS. LONG:  I want to be clear that we're

10   limited as to the new CAP custodians.  We have run

11   these search terms for the original time period and

12   through the refresh as to 17 other custodians.

13                   JUDGE WOLFSON:  Why wouldn't you run

14   them for these?

15                   MS. LONG:  Because, respectfully, their

16   request was cabined -- was about the CAP program.

17   Judge Waldor opened the door about CAP.

18                   We're happy to take the terms back to

19   mid-2021 or to another date, and we can investigate

20   what that date was.

21                   JUDGE WOLFSON:  Well, the reason I asked

22   that is, if these were the people that were somehow

23   involved with the CAP program, they may have been

24   involved in the discussions at an earlier date as

25   well and may be relevant custodians.

Page 109

```
 1              So I'm going to direct that it happen,
 2      that you run them for these additional custodians as
 3      well.
 4              I can't believe they just suddenly
 5      appeared just for CAP and didn't have involvement
 6      before.
 7              MR. LoBIONDO:  They were certainly
 8      relevant, your Honor.
 9              The argument we made before Judge Waldor
10      and she agreed with was, as I understand it, was, we
11      have custodians that are covering these issues.
12      These people would be cumulative of what we already
13      produced.  And she decided they were not cumulative
14      as to CAP, which is why she thought that they should
15      be added not with respect to proportionality, only as
16      to CAP.
17              JUDGE WOLFSON:  It's four more.  I'm not
18      worried about it.  I'm doing it.
19              MR. LoBIONDO:  It's six more for five
20      years.
21              MS. LONG:  Are we talking about number
22      of custodians or the search terms as to the CAP
23      custodians?
24              JUDGE WOLFSON:  Those custodians that
25      we've agreed to, but running the additional search
```

Page 110

1    terms on them.

2                    MS. LONG:  Back to 2016?

3                    JUDGE WOLFSON:  Right, what the

4    attorneys agreed to, correct.

5                    MR. SANDICK:  So all of the search terms

6    that we've used in the case, that is your Honor's

7    ruling?

8                    JUDGE WOLFSON:  I don't know of all the

9    search terms, it's whatever is related --

10                    MR. SANDICK:  Because that is the core

11   issue.

12                    MR. LoBIONDO:  This is part of the

13   issue, frankly, that we've been having, which is

14   that, we brief up an issue, they get a ruling they

15   don't like.  They say, no, Judge Waldor actually

16   meant something else.  Judge Waldor said, no, this is

17   what I meant.  And now we're re-litigating it for a

18   third time until they've finally gotten a ruling that

19   is going to give them everything they asked for.

20                    JUDGE WOLFSON:  I don't know about

21   everything.  All I heard was the terms that would be

22   relevant to them would be referring to SaveOn,

23   referring to ESI.  It's not the world.

24                    What I'm trying to capture with them,

25   the only reason is, that I'm saying it, is these are

Page 111

1    CAP people.  The likelihood is that they were

2    involved somehow before this in looking at these

3    issues, and to the extent they were, they should

4    produce documents.  But I want to limit it then to

5    this world, not every search term.

6                     MR. LoBIONDO:  Okay.

7                     JUDGE WOLFSON:  So come up with the

8    search terms that relate to this and confer on it.

9                     MS. SNOW:  Your Honor, we're happy to

10   make a narrow proposal of search terms.

11                    JUDGE WOLFSON:  Okay, let's do it.

12                    New custodians that were brought up in a

13   letter.

14                    I guess you brought up Scott White,

15   Blasine Penkowski, Karen Lade, and Juliette Deshaies.

16                    I think Plaintiff is saying that Judge

17   Waldor rejected proposal of these additional

18   custodians, that they were part of that motion to

19   compel 12, and she ordered only half basically,

20   right?

21                    Okay.

22                    And now what you're claiming is that

23   there are new documents that were not part of the

24   motion before Judge Waldor that show that these

25   proposed custodians have more knowledge than you

Page 112

1    previously knew and presented to her and that you

2    want them to be added, right?

3              MS. SNOW:  Yes, your Honor.

4              There are actually five remaining

5    custodians that were left undecided, and we have

6    renewed our motion as to all five, however, in the

7    event you determine that Judge Waldor did resolve as

8    to -- you know, we don't think the order states

9    that -- it doesn't name those custodians at all.  At

10   the conference she didn't issue a ruling as to those

11   custodians, and so we don't think she's decided

12   those.  But we have also put forth significant new

13   evidence as to White, Penkowski, Lade and Deshaies,

14   as we've mentioned.

15             JUDGE WOLFSON:  Ms. Long.

16             MS. LONG:  Yeah.

17             I think your Honor said our position

18   fairly succinctly.  We believe Judge Waldor already

19   decided this.  I think that is fairly clear from the

20   text of her order.  This issue was part of 27 single

21   spaces of briefing and 146 exhibits that went before

22   Judge Waldor, and ultimately Judge Waldor split the

23   issue.  As your Honor said, there were 12 custodians

24   that were at issue in the motion.  She ordered us to

25   provide six of seven.  We later conferred on which

Page 113

```
 1    six those would be and agreed and resolved as to

 2    those.  And I just don't think there is anything

 3    ambiguous about the order and what was resolved.

 4              JUDGE WOLFSON:  Do you think that --

 5    their position is we've identified, now based on new

 6    documents I'm assuming that you could not have

 7    presented to her at the time because you didn't have

 8    them, that based on new documents this is a new and

 9    different argument to be made?

10              MS. LONG:  No.

11              If I could take the custodians in turn.

12              First, as to Ernie Knewitz, there are no

13    new documents.  There are no new documents in

14    SaveOn's opening brief.  There are no new documents

15    on the reply brief.

16              As to the remaining custodians that are

17    at issue --

18              JUDGE WOLFSON:  Yeah.

19              Let's start with White and Penkowski.

20              MS. LONG:  Sure.

21              They're the same types of documents that

22    were at issue, for example, calender invitations

23    concerning JALT, et cetera.  And as was before Judge

24    Waldor, the issue with Mr. Knewitz and Mr. White and

25    Ms. Penkowski are all that they serve on what's
```

Page 114

 1    called the JALT.

 2              We have a senior executive who was on

 3    the JALT.  Her name is Katie Mazuk.  She has already

 4    been designated as a custodian in this case on all

 5    relevant issues on all agreed upon search terms.  And

 6    so any discovery that would be relevant, anything

 7    that the JALT considered, will be produced from Ms.

 8    Mazuk's files.  That is something that was before

 9    Judge Waldor.  That is consistent with the documents

10    that are still before your Honor.  Ms. Mazuk is the

11    senior most executive with responsibility for making

12    decisions about the CarePath program.

13              As to Mr. White.  Mr. White is one of

14    the highest ranking executives in the Johnson &

15    Johnson family of companies and he has no

16    responsibilities day to day for CarePath.

17              Mr. White came up first in a motion that

18    SaveOn brought in June about our interrogatory

19    responses, that was also at issue at the October

20    conference, where we have consistently provided

21    representation to the other side that Mr. White does

22    not have responsibility for -- does not have day to

23    day responsibility for the CarePath program.  He has

24    no unique documents because, again, he is on the

25    JALT, which is the main piece of evidence that SaveOn

Page 115

1    cites.  So is Ms. Mazuk.  And all of the documents

2    that SaveOn has cited Ms. Mazuk is either on or is a

3    custodian of.  The calendar invitations include

4    Ms. Mazuk.  And so the only --

5              JUDGE WOLFSON:  So let me ask you this

6    question:  The documents that they now provided say

7    that -- you know, forget the day to day

8    responsibility -- that White may have been involved

9    in the high level discussions about CarePath,

10   SaveOn's role and how it was impacting Plaintiff's

11   program, litigation.

12             Why do you think that White would not

13   have relevant documents?

14             MS. LONG:  ███████████████████████████

15   ███████████████████████████████████████████████

16   ██████████    ██████████████████████    ██████

17   █████████████████████████████████████████████████

18   ████████████████████    ██████████████████████

19   █████████████████████████████████████████████████

20   ███████████████████.

21             And that is consistent with all of the

22   documents that we've cited, including decks and

23   other -- the evidence that is at issue before your

24   Honor today.

25             The other evidence comes down to being a

Page 116

1    counterparty on certain work orders with Trial Card,

2    and, again, I don't see how that is relevant here.

3              And I think the last category of new

4    documents, which, you know, SaveOn points to as kind

5    of a smoking gun by a third party is an ████████

6    ████████████████████████████████████████████████

7    ████████████████████████████████████████████████

8    ██████████████████████████████████████████████████

9    ████████████████████████████████████████████████et

10   ██████████████████████████████████████████████

11   ██████████████████████████████.

12             First, we've now found the calendar

13   invitation -- what we believe is the calendar

14   invitation for this meeting.  It does not include any

15   of those individuals. ████████████████████████████

16   ████████████████████████████.  And, also, as

17   your Honor just ordered, ██████████████████████

18   ██████████████████████████████████████████████████

19   ████████████████████████████████████████

20   ██████████████████████████.  John Hoffman is one of

21   the CAP custodians that you just ordered additional

22   search terms be run over.

23             So there is not a gap in our production

24   here.

25             I don't see in the document what SaveOn

Page 117

1    is claiming, but even if it was true, those files

2    would be produced already.

3              And I think when we're looking at

4    someone as senior was Mr. White and Ms. Penkowski,

5    and the same would apply for Mr. Knewitz, there is a

6    particular concern about Apex custodians.  And I

7    recognize that the Apex doctrine comes up more so in

8    the context of depositions, but if we're talking

9    about cumulative files from very senior people, I

10   don't think that SaveOn has met that showing.

11   ██████████████████████████████████████████

12   ████████████████████████████████████████  ██

13   ████████████████████  ██████████████████████

14   ████████████████████    There is no additional

15   benefit to these other custodians.

16             JUDGE WOLFSON:  Ms. Snow.

17             MS. SNOW:  Yes.

18             So, first of all, I just want to address

19   the point that ██████████████████████████████

20   ████████████████████████████.  That's because

21   that's who they actually have produced documents

22   from.  That doesn't mean that that's the only place

23   there are relevant documents.

24   ████████████████████████████████████████████

25   ██████████████████

Page 118

1             ███████████████████████

2 ████████████████████████

3 ████████ You would -- I have a copy if you'd

4 like.

5             JUDGE WOLFSON:  I have it here too.

6             MS. SNOW:  ████████████████████,

7 ████████████████████████████

8             And I also want to make a point about

9 this document.

10             This is the only -- █████████████

11 ████████████████████████

12 ████████████████████████

13             There is not a single document produced

14 before January 2022 that suggests this idea.

15             So what this document shows us is that

16 ██████████████████████████

17 ██████████████████████████

18 ██████████████████████████

19             For that reason alone I think he's

20 highly likely to have relevant documents.

21             And just addressing the Trial Card work

22 order.

23             I think we brought up Trial Card a few

24 times today.

25             ████████████████████████

Page 119

1　████████████████████████████████████████

2　████████████████████████████████████████

3　Those are very key aspects of how you actually run a

4　program like this. ████████████████████ a

5　████████████████████████████████

6　██████████████ ███████████████████████████

7　████████████████████

8　　　████████████████████████████

9　████████████████████████████████

10　███████████████████

11　　　　　That goes to the viability we have been

12　discussing.  It goes to the harm, because they're

13　having to -- you know, J&J alleges that they're

14　having to up the amount that they're reimbursing

15　patients.

16　　　　　JUDGE WOLFSON:  Yeah, so let me ask you

17　this question:  So Scott White is apparently the

18　company group chairman of North America

19　Pharmaceuticals, right?  So one of the highest

20　ranking executives.

21　　　　██████████████████████████████

22　███████████████████████████████

23　███████████████████████████████

24　　　　MS. SNOW:  ████████████████████

25　████████████████████████████████

Page 120

1   ███████████████████████████████████████

2   ████████████    So we see in numerous documents --

3               JUDGE WOLFSON:  At the what level?

4               MS. SNOW:  ██████    ███████   █████

5   ████████████████████████████████████████

6   ████

7               You know, they make a point about us

8   going after so many executives.  ████████████████

9   ███████████████████████   ██████████████████

10  ██████████████████████████████████

11  █████████████████████████████████

12  █████████████████████████████████.

13  █████████████████████████████████

14  ████████████████████████████████████████

15  ██████████████.

16              JUDGE WOLFSON:  What is it precisely

17  you're looking for Mr. White to produce?

18              MS. SNOW:  Well, I think we've been

19  missing many documents to show who actually -- like

20  the decisions being made.

21              You know, ████████████████████████████

22  █████████████    and we're not disputing that.

23  ████████████████████████████████████

24  ███████████████████████████████

25  ████████    █████████████████████████

Page 121



1  ████████████████████   ████████████████

2  █████████████████████████████████████

3  ████████████████████████████████████

4  ██████████████████████████████████

5  ██████████

6        ███████████████████████████████

7  ████████████████████████████████

8  ████████████████

9        MS. LONG:  May I respond?

10       JUDGE WOLFSON:  Yes.

11       MS. LONG:  ████████████

12       Let's start with just a brief look at

13  Exhibit 2.

14       █████████████████████████

15  █████████████████████████████████

16  ████████████████████

17       ███████████████████████████████

18  ██████████████████   ████████████████

19  ███████████████████████████████████

20  █████████████████████████████████████

21  ██████████████████   █████████████████.

22       What Ms. Snow was talking about, ████████

23  ██████████████████████████████████

24  ████████████████████████████████

25  ██████████████████████.  ████████████████

Page 122

1   ████████████████████████████████████

2   █████████████████████    █████████████ ,

3   ██████████████████████    ████████████

4   █████████████████████████████

5   █████████████████████████████████████

6   ████████████████████ .

7                JUDGE WOLFSON:  But how was that meeting

8   captured?

9                MS. LONG:  Sure.

10               So there are a couple of ways that the

11  meeting was captured.  There are, first, these

12  calendar invites.  Usually attaching a presentation.

13  The presentation has content, sometimes relevant to

14  the CAP program, for example.

15               Ms. Mazuk was on the calendar

16  invitation, was on the e-mail where those decks were

17  communicated.

18               JUDGE WOLFSON:  But what happens at the

19  meeting, and where is that document?

20               MS. LONG:  So what happened at the

21  meeting I believe is that the presentation -- the

22  deck is presented and there is a discussion.  I am

23  not aware of any minutes, for example, that come out

24  of that meeting, but if there was subsequent e-mail

25  discussion, it would presumably be as we've seen in

1    the documents amongst ████████████████████

2    ████████████████

3    ██████████████████████████████

4    ███████████████████████████,

5    ████████████████████████████ for

6    ████████████████ -- this was at issue with

7    respect to our interrogatories -- different areas of

8    the company that have absolutely nothing to do with

9    the CarePath program.

10            And just, again, to emphasis, as to

11   Mr. Knewitz, we have also stated, for example, that

12   he has nothing to do with CarePath.  He occasionally

13   made statements regarding the lawsuit, and that is

14   the limitation.  We have represented that in

15   interrogatory responses.

16            JUDGE WOLFSON:  Which one are you

17   referring to?

18            MS. LONG:  Mr. Knewitz.  It's

19   K-N-E-W-I-T-Z.

20            JUDGE WOLFSON:  Okay.

21            MS. LONG:  And then as to the remaining

22   folks, again, those decisions would be captured -- to

23   the extent that there are documents, which I think if

24   ████████████████████████████████

25   ████████████████████████████

Page 124

1    ███████████████████, but certainly SaveOn is

2    welcomed, as I'm sure they will, to depose Ms. Mazuk

3    to learn about those discussions, but I don't have

4    any evidence, nor do they, that those discussions

5    were otherwise memorialized in e-mails that have

6    somehow been withheld from our productions.

7              If there are relevant communications, if

8    there are relevant documents, decks, minutes, those

9    would have already been produced to opposing counsel.

10             MS. SNOW:  I just have a few quick

11   responses.

12             First of all, to the last point, we need

13   documents before we're taking depositions.  And the

14   standard that is at issue is, have we shown that

15   these individuals are likely to have relevant

16   documents.

17             Going to the point that Ms. Long was

18   making, while it's not in the new evidence, there are

19   █████████████████████████████████████████

20   █████████████████████████████████████████

21   ██████████████████████████████████

22             JUDGE WOLFSON:  Did you present that to

23   Judge Waldor?

24             I don't want to go over ground that she

25   already decided.  So I don't want to do that.

1            I'm only looking at if they're new

2    documents and you have a new argument to make,

3    because she obviously considered this already.

4              MS. SNOW:  Your Honor, if we could just

5    look at the old documents in the context of the new

6    documents.  There is evidence that shows that these

7    ████████████████████████████████████████████████

8    ████

9                ████████████████████████████████████

10   ████████████

11              I ██████████████████████████████████

12   ██████████████████████████████████

13   █████████████████████████.  ████

14   ████████████████████████████ █

15   ███████████████████████████████████

16   █████████    ███████████████████████,

17   ██████████████████████████████████now,

18   ███████████████████████████████

19   ████████████

20              JUDGE WOLFSON:  I don't know if you want

21   to take these one by one or as a group, I mean, you

22   dealt with them kind of as a group overall, but I

23   have a couple of concerns here.  I certainly don't

24   want to go over ground that Judge Waldor actually

25   dealt with unless, as I said, there was something new

Page 126

1    and there was a reason to do so and to revisit it.

2    Respectfully, I don't think it would be otherwise

3    appropriate.

4           Now, I don't know how well this was

5    addressed or simply if it was, like, get these, this

6    is all you're getting.  You know, you get six

7    custodians, I'm not giving you more, or whatever it

8    might be.

9           MS. SNOW:  So, actually, in the

10   transcript she said, I'm going to order some to

11   start, and then we'll deal with the Apex custodians

12   later, so I think today is that later.

13          JUDGE WOLFSON:  Did she leave that

14   opening?

15          They're seeming to shake their head no

16   on the other side of the table.

17          MS. LONG:  The transcript, your Honor,

18   is long.  In that context, we disagree with what was

19   set forth by Ms. Snow.

20          JUDGE WOLFSON:  Is it the October

21   transcript?

22          MS. LONG:  Yes, it is the October

23   transcript.  We agree on that.

24          But, your Honor, specifically Judge

25   Waldor said, "Well, I thought CAP -- the 12 new

Page 127

1    custodians included CAP custodians, I'm going to open

2    the doors on CAP," and then later, "I'm going to

3    permit additional custodians.  I know we're down to

4    six."  Referencing the six custodians that ultimately

5    Judge Waldor ordered.

6               I think that is also consistent with,

7    frankly, the natural reading of the order that

8    followed the conference.  Here the order read, "With

9    regard to SaveOn's requested relief as set forth in

10   docket entry number 165, custodians' motion, the

11   Court will require" --

12              JUDGE WOLFSON:  I'm looking at the

13   transcript, I'm reading, so if you could wait a

14   moment, please, I'm reading the portion of the

15   transcript.

16              Well, this is what she says, she said,

17   "I said start with four.  Mr. Mangi will talk to them

18   about it.  And then we can discuss the two that

19   you're trying to protect with the Apex doctrine,

20   which is, according to adversary, inapplicable to

21   documents."

22              Mr. Mangi, "Yeah."

23              The Court, "I assume ultimately you're

24   going to want to depose them."

25              MS. ARROW:  Your Honor, what page are

Page 128

1   you on?

2               JUDGE WOLFSON:  119, 120.

3               Well, it doesn't look like she

4   definitively closed the door, that is true.  So I

5   don't think I should look at it that way.  It clearly

6   was a start.  So I don't want to rely on that.

7               So let's talk about the merits of the

8   issue.

9               Now, what are the limited search terms

10  with regard to White and Penkowski that you want to

11  use?

12              MS. SNOW:  We're happy to provide a

13  proposal on that.

14              JUDGE WOLFSON:  Very limited.

15              MS. SNOW:  Very limited, yes, your

16  Honor.

17              JUDGE WOLFSON:  Very limited.

18              Confer with your adversary.

19              MS. SNOW:  And for the time period --

20  the full time period that they've used for every

21  other custodian?

22              JUDGE WOLFSON:  That's fine, but, as I

23  said, these are going to be limited search terms.  I

24  do understand they are high level executives and may

25  be duplicative of what others have, but I also know

Page 129

```
 1    people sometimes write e-mails and do things that
 2    don't include everybody else when they want to talk
 3    to someone else in the company, and it happens, so
 4    there could be other documents, but, please, limit
 5    it.
 6                Now we've got -- in fact, I mean,
 7    ██████████████████████████████████████████████████
 8    ████████.  Very relevant.  I've got quotes from her in
 9    e-mails.  I understand others may have gotten them,
10    but that is an important person.
11                Yeah, do your search terms and I'm going
12    to allow it.
13                MS. SNOW:  Thank you, your Honor.
14                JUDGE WOLFSON:  Then we've got Lade,
15    L-A-D-E.
16                MS. SNOW:  Yes.
17                So just to start about the so-called
18    brand employees.
19                There's new evidence -- if you look at
20    Exhibit 6, it includes the e-mail, actually, that
21    ██████████████████████    ████████████████████████
22    ████████████████████ -- I can give you a copy of the
23    exhibit.
24                JUDGE WOLFSON:  I have them here, it's
25    just finding where 6 starts.
```

Page 130

1                  Thank you, Wayne.

2                  Okay, I got it.

3                  MS. SNOW:  If you look at the -- I

4     believe the very bottom of that first page, it says,

5     ████████████████████████████████████████████

6     ███████████████████████████████████

7     ██████████████████████████████████████████

8     ████████████████████████████████

9                  So Ms. Lade is a brand employee, and I

10    think -- you know, turning to just looking at the new

11    evidence, in May of 2017 -- if you look at Exhibit

12    11.

13                 I'm happy to also give you a copy.

14                 JUDGE WOLFSON:  Now, these documents

15    were produced to you because they came through other

16    custodians?

17                 MS. SNOW:  Yes.

18                 But if you look at Exhibit 11, there's

19    an e-mail -- I'll give you a minute.

20                 JUDGE WOLFSON:  Okay, I'm up to 11.

21                 Go ahead.

22                 MS. SNOW:  So if you look at the second

23    page of that exhibit, there's an e-mail that Ms. Lade

24    sent and there is not a single current custodian on

25    that e-mail, and it's all about --

Page 131

```
 1              JUDGE WOLFSON:  So how did you get it?
 2              MS. SNOW:  Because later in the thread
 3   it was forwarded to a custodian.
 4              JUDGE WOLFSON:  Okay.
 5              I see you shaking your heads on this
 6   side, but that's happenstance, that it ended up being
 7   forwarded to someone.  She authored an e-mail, and if
 8   it's relevant -- and she's authoring a lot of
 9   documents.  I don't know why she would not be a
10   custodian to search if it's relevant material.
11              MS. LONG:  Your Honor, one, there is no
12   mention of SaveOn in this document; and two, I want
13   to be  ███████████████████████████████████████
14   ███████████████████    ██████████████████████████████
15   ████████████████████████████████████████████████
16   ███████████████████    ███████████████████████████
17   ███████████████████████████████████████
18              JUDGE WOLFSON:  Yes, but you take the
19   position that they are.  Yes, you do.  So the fact
20   that they don't isn't really the issue because you
21   are going to be arguing they are.
22              Look, you know what, I have enough on
23   this.  This is someone who you should be getting
24   documents from.  I'm adding it.
25              You know, everybody wants to slice this
```

Page 132

1    so finely.  It's a huge case.  There is a lot of

2    discovery on both sides.  Let's just do it instead of

3    fighting over it.  It will take you less time to

4    produce and move on than to fight.

5              MS. SNOW:  And, your Honor, to be clear

6    on those, for the regular set of search terms and the

7    full regular time period?

8              JUDGE WOLFSON:  Regular time period, but

9    I don't know about all the search terms.  You have to

10   hone something that is appropriate for her, it cannot

11   be a universe.  I have to have some limitations.

12             So work on those search terms with your

13   adversary please.

14             Okay?

15             MS. SNOW:  And turning to Ms. Deshaies.

16             JUDGE WOLFSON:  Yes.

17             MS. SNOW:  So her primary -- or her

18   relevance in the new additional document is she was

19   working with a really important third party.  The

20   third party is named Archbow.  It's all one word,

21   A-R-C-H-B-O-W.  That third party was working on the

22   ████████████████████████████████████████

23   █████████████  ███████████████████████████

24   ██████████████████████████████████

25   █████████████████████████████████

Page 133



18          JUDGE WOLFSON:  Why is that critical?

19          MS. SNOW:  It's critical to our

20   mitigation defense.

21               They have these ways that they're trying

22   to use to limit their damages.

23          JUDGE WOLFSON:  Aren't there others

24   involved in this issue that are already custodians?

25          MS. SNOW:  There are others involved in

Page 134

1    the CAP program. ████████████████████████

2    █████████████████████     ████████████████

3    ████████████████████████████████████████████

4    ████████████████████████████████████

5              JUDGE WOLFSON:  I never understood

6    Erleada to be the driving drug in this whole case.

7              I'm not buying this one.  I have to have

8    some limits.  So I'm not ordering that to be done.

9              Does that take care of all our new

10   custodians?

11             Go ahead.

12             MS. LONG:  I think Mr. Knewitz is still

13   at issue, your Honor.  That was the custodian without

14   any new evidence that we had discussed earlier.  I

15   believe you████████████████████████████████████

16   ████████████████████████████.

17             Mr. Knewitz is essentially a PR

18   professional.  ████████████████████████

19   ████████████████     ██████████████████████

20             JUDGE WOLFSON:  I'm not adding him.

21             You have the ones we've added, Lade,

22   Penkowski and White, but you're going to confer on

23   search terms, please.

24             MS. SNOW:  Yes.

25             Thank you.

Page 135

1             JUDGE WOLFSON:  Anything else open?

2             MR. SANDICK:  No.

3             Thank you, your Honor.  We really

4    appreciate the evident time you spend reading all of

5    this paper and helping us resolve the issues.

6             Thank you very much.

7             JUDGE WOLFSON:  No problem.

8             MR. DUNLAP:  We greatly appreciate your

9    attention to this.

10             (Proceedings concluded at 1 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 136

1                    C E R T I F I C A T E

2

3          I, RUTHANNE UNGERLEIDER, a Certified Court

4     Reporter and Notary Public of the State of New

5     Jersey, certify that the foregoing is a true and

6     accurate transcript of the stenographic notes of the

7     deposition of said witness who was first duly sworn

8     by me, on the date and place hereinbefore set forth.

9              I FURTHER CERTIFY that I am neither

10    attorney, nor counsel for, nor related to or

11    employed by, any of the parties to the action in

12    which this deposition was taken, and further that I

13    am not a relative or employee of any attorney or

14    counsel in this case, nor am I financially

15    interested in this case.

16

17

18

19

20

      RUTHANNE UNGERLEIDER, C.C.R., C.R.R.

21    LICENSE NO. XIO1634, XIO0115

22

23

24

25

| & |
| --- |

**&**   1:4 2:4,8,12
2:19 36:20
60:12,21,23
69:25 71:3
72:15 74:3
75:6 76:8
79:22 80:2
89:18 96:21
98:21,25 99:3
102:22 103:12
114:14

| 0 |
| --- |

**07102**   2:10

| 1 |
| --- |

**1**   4:25 8:13
135:10
**10017**   2:20
**10036**   2:5
**101**   2:12
**10104**   2:16
**10178**   2:13
**10:00**   1:19
**11**   130:12,18,20
**1133**   2:4
**114**   67:21
**11883**   136:20
**119**   128:2
**12**   101:13
111:19 112:23
126:25
**120**   128:2
**1200**   4:22

**1290**   2:15
**14**   88:11
**146**   112:21
**15**   13:3
**150,000**   40:23
**16**   52:17
**165**   127:10
**17**   108:12
**180,000**   40:22
**188,000**   40:13

| 2 |
| --- |

**2**   119:5 121:13
**20**   16:14 25:20
120:9
**20,000**   121:3
**200**   119:7
125:12,18
**2009**   5:22 8:13
59:9
**2013**   10:12
12:8 14:24
**2016**   4:25 5:18
9:21,22 10:1
19:21 25:9
34:14 38:24
103:4 104:9
106:4,16 110:2
**2017**   130:11
**2020**   107:4
**2021**   106:3,9,20
108:19
**2022**   4:25
19:21 24:16,23
26:18 27:8,13
27:22 28:2

30:22 34:14
38:24 42:1
43:23 56:1
57:8 103:2,14
103:22 104:9
104:22 105:21
105:24 106:1
106:11,16
118:14
**2023**   5:3,18
24:24
**2024**   1:19
**20th**   2:19
**22-2632**   1:3
**24**   1:18
**27**   112:20
**28**   67:11
**28th**   2:12
**29**   67:11

| 3 |
| --- |

**30**   67:11 104:7
**349**   69:2 87:17
87:21

| 6 |
| --- |

**6**   129:20,25
**6,000**   121:3
**666**   2:19

| 7 |
| --- |

**7**   24:24 43:17
101:14 104:3

| 8 |
| --- |

**80**   93:19 94:16
94:18,21

| a |
| --- |

**aba**   23:9
**able**   20:21
72:16 77:12
78:6,16 89:22
89:24 96:13
98:22 99:15
132:25
**above**   1:13
**absence**   73:9
**absent**   74:10
87:25
**absolutely**
36:13 72:5
79:8 123:8
**absorb**   73:11
**accessibility**
12:25
**accredo**   90:22
90:22
**accumulator**
9:19 10:18
26:12 29:2
30:12,21 108:4
108:5 129:7
130:7 131:13
131:15
**accumulators**
57:23 106:21
107:4 132:22
**accurate**   84:23
136:6
**accusations**
98:11

**act** 65:22,25
66:2,7
**acting** 44:12
81:15
**action** 1:3 84:1
136:11
**actions** 78:14
**acts** 65:20 66:8
**actual** 19:18
54:6 59:3
89:11 120:1
121:20
**actually** 17:9
18:2 20:15,17
21:3 22:20
31:16 39:18
47:2 60:10
61:8,10 75:5
76:23 78:11
83:25 84:13
89:6,16 90:10
92:1 96:11
99:11 102:3
103:13 107:8
110:15 112:4
117:21 118:25
119:3,5 120:19
125:24 126:9
129:20
**add** 6:8,11,18
**added** 42:17
44:6,18 45:10
109:15 112:2
134:21

**adding** 99:14
102:24 131:24
134:20
**additional** 5:14
5:19 6:9 23:1
34:21 44:7
52:7 70:25
71:1 77:10,14
78:16,18 82:14
84:8,9 86:23
87:3 107:5,21
107:23 109:2
109:25 111:17
116:21 117:14
127:3 132:18
**additionally**
103:17
**address** 3:5
26:5,8 27:25
51:6,14 55:16
55:17 67:5
89:2 103:20
117:18
**addressed**
21:20 34:18
126:5
**addressing**
55:15 118:21
**adequately**
67:5
**adhere** 80:4
**adherence**
80:14,18,22
81:3,5 98:5,6

**adjustment**
26:16 106:23
130:7 131:14
131:16
**administering**
75:16
**administers**
77:2 118:25
**administrative**
60:24 68:24
**admission**
29:13
**advanced** 73:2
**advantage** 52:7
**adversaries**
11:17
**adversary**
127:20 128:18
132:13
**advice** 45:21,21
47:21,22 50:23
**advised** 24:18
56:14
**advisor** 47:17
**affected** 91:5
**affiliate** 74:24
**affirmative**
18:1
**affirmatively**
100:5
**afford** 73:11
78:12,21
**afield** 83:12
**afoul** 20:18

**age** 20:12,22
**aggressively**
39:16,21
**ago** 3:4 10:13
23:16 31:6
37:5,17 90:5
94:3
**agree** 10:15
11:4,4 13:13
14:23 18:9
35:10 41:17
43:21 97:14,16
126:23
**agreed** 4:25 6:4
21:11 55:24
59:4 104:7
107:7,24,24
109:10,25
110:4 113:1
114:5
**agreement**
101:17 108:8
**agreements**
38:18
**agrees** 4:2
66:17 102:21
**ahead** 32:2
34:5 41:18
81:14 89:4
130:21 134:11
**allegation**
70:15 92:1
94:13,16,18,21
98:15

**allegations**
  67:18,19,21
  78:22 90:3
  97:24
**allege** 60:3 62:3
  66:9,10,23
  89:5 98:13
**alleged** 64:4
  65:6 66:8
**allegedly** 65:14
  116:19
**alleges** 119:13
**alleging** 18:17
  60:2 68:13
  79:17 94:7
  95:16
**allow** 129:12
  133:1
**allowed** 13:14
  67:19 83:19
  98:1 103:15
**allows** 98:25
**amazing** 71:18
  71:19
**ambiguous**
  36:8 113:3
**america** 119:18
**american** 123:6
**americans** 81:2
**americas** 2:4
  2:15 120:5
**amount** 74:10
  76:10,11 77:17
  119:14,22
  121:2,4,23

**125:18
**amounts** 61:13
  63:16
**analyses** 81:21
**analysis** 79:22
  80:3 81:17
  82:18,21 84:20
  85:15,18 87:1
  87:2
**analyze** 77:4
**analyzed** 62:2
**andrew** 2:16
  14:22
**answer** 7:8
  11:2,9 15:9
  29:12 62:10
  85:25 88:19
  105:12
**answered** 63:5
**answers** 13:18
  82:9 92:15
**anticipation**
  50:5
**anyone's**
  123:25
**anyway** 57:22
  61:9 75:24
**apex** 117:6,7
  126:11 127:19
**apologies** 116:8
**apparently**
  49:18 119:17
**appear** 39:10
**appeared** 109:5

**appears** 19:5
  20:2 121:15,15
**apples** 40:20,20
**application**
  28:24
**applied** 21:4
  28:25
**applies** 36:5
  51:19
**apply** 36:6
  117:5
**appreciate** 33:8
  35:15 37:23
  38:1 79:4
  135:4,8
**appropriate**
  12:13 26:1
  45:3 126:3
  130:8 132:10
**approximately**
  1:19 4:22
  24:22
**april** 4:25
**archbow** 49:4
  49:12 116:5,10
  132:20
**area** 23:8 55:3
  63:24 122:6
**areas** 23:9
  31:22 41:19
  64:1 123:7
**argue** 13:12
  16:18 20:5
  91:5 92:18
  93:13 96:5

**argued** 42:5
**argues** 5:23
**arguing** 131:21
**argument**
  17:13 20:13
  24:4 35:15
  37:23 38:5
  39:19 42:7,13
  54:5 64:11
  66:16 72:14
  73:5 75:1
  78:20 84:12
  87:24 92:25
  93:11,15
  101:10 109:9
  113:9 125:2
  131:16
**arguments** 6:1
  28:6 38:1
  62:17 75:17
  96:9
**arrange** 76:25
**arrow** 2:7
  127:25
**aside** 95:14
  96:19
**asked** 6:7 7:3
  8:9,12 37:21
  40:17 41:2
  42:8 44:8
  55:25 56:16
  81:8 85:14,22
  90:11 92:5
  102:19 108:21
  110:19

[asking - benefit]                                                    Page 4

| | | | |
|---|---|---|---|
| **asking** 7:20,22 | **attention** 13:5 | 23:15 27:15,18 | **beat** 29:14 |
| 21:12 22:6 | 135:9 | 29:14 35:13 | **began** 8:18,19 |
| 29:19 35:5 | **attorney** 44:12 | 37:1,24 38:10 | 24:16 27:12 |
| 44:10 55:1 | 48:4,5,6,6 | 39:6,19,20 | **beginning** |
| 56:13 59:8 | 136:10,13 | 40:12 41:9,16 | 24:23 27:13 |
| 61:18 81:16 | **attorneys** 2:7 | 42:22 47:5 | 74:20 |
| 82:16 86:3 | 2:11,14,18,21 | 50:16 51:3 | **behalf** 70:21 |
| 88:7,9 93:6 | 42:17 44:4,11 | 59:9 87:13 | 71:2 78:10 |
| **asks** 29:11 56:5 | 45:13,14 54:9 | 88:15 89:18 | **belabor** 67:15 |
| **aspect** 15:22 | 110:4 | 96:13 100:9 | **belief** 66:18 |
| 69:9 | **august** 21:10 | 101:24 102:9 | **believe** 8:24 |
| **aspects** 119:3 | 43:20 103:4 | 104:11,15 | 11:5 13:1 |
| 134:3 | **authored** 131:7 | 105:10 106:15 | 16:19 18:2 |
| **assert** 13:15 | **authoring** | 107:2 108:18 | 21:3 25:21 |
| **asserting** 4:1 | 131:8 | 110:2 125:9 | 27:23 31:5,6 |
| **assertion** 46:14 | **authority** | **backup** 89:15 | 31:12 33:12 |
| 47:23 | 121:18,20 | **backwards** | 34:17 36:17,21 |
| **assistance** | 125:12 | 38:9 | 36:24 51:18 |
| 19:12 59:1 | **availability** | **badly** 69:5 | 56:18 57:6,8 |
| 63:4,16 67:25 | 5:13 11:10 | **bag** 68:22 | 57:12 65:11,18 |
| 70:17 71:25 | **available** 89:9 | **base** 89:13 | 67:10 70:24 |
| 95:23 121:2,4 | 91:16 121:2 | **based** 5:14 | 75:24 76:17 |
| **assistant** | **avenue** 2:4,12 | 17:17 41:12 | 91:25 103:11 |
| 121:16 125:14 | 2:15,19 | 52:1 54:5 | 106:25 107:20 |
| **associate** 101:9 | **avoid** 104:10 | 82:10 100:25 | 109:4 112:18 |
| **association** | **aw** 85:5 | 105:8 113:5,8 | 116:13,18 |
| 102:25 | **aware** 122:23 | **basically** 71:14 | 122:21 130:4 |
| **assume** 14:9,17 | **awareness** | 111:19 | 134:15 |
| 125:11,15,16 | 55:12 | **basing** 98:16 | **belknap** 2:4 |
| 127:23 | | **basis** 57:14 | **benefit** 23:6 |
| **assuming** 44:9 | **b** | 59:14 67:17 | 25:15 48:18 |
| 44:14 79:4 | **b** 2:1 132:21 | **bear** 5:8 58:18 | 59:24 71:17 |
| 113:6 | **baby** 77:18 | **bearing** 83:19 | 74:1 82:21 |
| **attaching** | **back** 5:22 9:20 | 83:24 | 99:12 117:15 |
| 122:12 | 11:5 12:4,24 | | |
| | 13:3 22:16 | | |

**[benefits - cap]**                                               Page 5

| benefits 21:14 | breached 66:6 | budgeting | c |
|---|---|---|---|
| 23:14 24:8,13 | breaches 65:15 | 61:14 | c 2:3 132:21 |
| 24:17,21 25:8 | break 4:13 | budgets 59:3 | 136:1,1 |
| 26:3 28:21,22 | 69:19 99:20,25 | 59:10 61:16,16 | c.c.r. 136:20 |
| 29:4 30:10 | brief 4:12 | 62:25 | c.r.r. 136:20 |
| 32:4 56:5,11 | 99:23 110:14 | bunch 88:10 | cabined 28:13 |
| 56:21 81:1 | 113:14,15 | 95:22 | 38:15 105:3 |
| 98:6 104:20 | 121:12 | burden 12:6,25 | 108:16 |
| benevolent | briefed 55:14 | 13:10,12,14 | calendar 115:3 |
| 65:4 | 101:8 | 15:11,22,23,25 | 116:12,13 |
| best 26:20 | briefing 19:4 | 23:4 31:15 | 122:12,15 |
| better 33:14 | 112:21 | 32:11 35:4,7 | calender |
| 41:5,14 64:13 | briefly 7:19 | 48:3 50:10 | 113:22 |
| beyond 22:11 | 48:23 89:3 | 54:5 59:24 | call 17:6 24:8 |
| 22:19 31:8 | bring 13:4 | 73:15,25 | 64:5 84:2 89:8 |
| 56:23 87:22 | 20:14 35:11 | burdenness | called 21:13 |
| big 13:11,12 | 43:6 60:1 | 13:9 | 26:14 29:1 |
| 36:2,2 75:21 | 120:21 | burdensome | 49:4 114:1 |
| bigger 94:5 | bringing 66:3 | 12:7,9 40:15 | 129:17 133:7 |
| binding 29:12 | broad 8:4 | business 42:25 | camara 42:16 |
| 119:6 | 10:23 22:19 | 44:5,13,20,21 | 54:10 |
| bit 71:11 | 28:14 35:10 | 44:22 45:1,5 | camera 43:3 |
| blasine 111:15 | 63:25 67:11 | 45:23 46:22 | camouflage |
| 116:8 | 79:15 | 47:15,16,18,19 | 27:5 |
| blow 23:2 | broaden 63:12 | 48:7,12,20 | cap 7:14 26:14 |
| blowback | broader 16:20 | 50:17,20,21,24 | 26:16 43:10,14 |
| 133:12 | broadly 69:17 | 51:2 52:5,9,17 | 101:19,22 |
| borne 99:9 | 75:1 76:8 | 60:16,17 68:25 | 103:1,5,13 |
| bottom 8:10 | brought 20:25 | 76:25 82:25 | 104:8,13,19 |
| 64:9,10 130:4 | 111:12,14 | 83:14 85:11,20 | 106:9,18,19 |
| bought 71:1 | 114:18 118:23 | 90:21,24 98:3 | 107:7,14,23,25 |
| brand 129:18 | budget 59:2,12 | buy 60:12 78:9 | 108:10,16,17 |
| 130:6,9 | 59:15,20 60:20 | buying 12:9 | 108:23 109:5 |
| breach 62:8 | 61:1,2,7,7 64:7 | 75:18 99:8 | 109:14,16,22 |
| 74:6 83:7 | 70:1 | 134:7 | 111:1 116:21 |

**[cap - circumstantial]**                                        Page 6

120:24 121:23
122:14 126:25
127:1,2 132:22
133:7,10,12,14
133:16 134:1,2
**capacity** 44:22
**capture** 37:3
38:16 40:4
44:2 47:11
107:8 110:24
124:1
**captured**
107:15 122:8
122:11 123:22
**capturing**
46:23,24
**car** 83:2,3
84:15,16,17
**card** 21:13 22:2
25:15 36:16,18
46:20,24 47:1
47:4,5,6 49:3
49:12 51:8
56:10 116:1
118:21,23,25
119:6 125:19
**care** 1:4 134:9
**careful** 131:13
**carepath** 3:18
10:1,8,18 42:4
50:16 60:5,8
60:10 61:1,14
62:8 64:4
66:19 67:25
69:11,13,20,23

69:25 70:9,16
70:23,25 71:25
72:15 73:2,8
73:10 74:24
75:3 76:3,22
76:23 77:2,9
77:15 78:17,18
79:5,10,13,23
80:3,5 81:23
82:2,4,13,20,21
82:24 83:10,17
84:1,3,10
87:23 89:23
92:12 93:2,16
94:5 95:23
98:24,24 99:15
114:12,16,23
115:9,18,19
119:1,10 121:7
121:21 123:9
123:12 132:25
133:13 134:4
**carepath's** 6:22
118:12,18
120:14
**cars** 83:5
**case** 3:6 8:1
12:14 13:11,12
18:2,11 22:21
25:9 28:23
29:8 30:13
35:24 36:2
45:1 48:9 52:6
59:24 60:14
64:17 68:14

69:2 73:7,7
74:20,21 75:15
75:20 76:5,7,7
80:13 82:25
83:11,20 85:7
85:12 87:14
88:8 90:7 91:1
92:12,25 95:6
95:8 96:7,9,13
97:6,6,17
110:6 114:4
116:16 132:1
134:6 136:14
136:15
**cases** 45:6
**categories**
33:16 40:1,12
41:12
**category** 3:25
27:13 46:3
116:3
**caught** 56:1
**cause** 65:25
66:3 95:16
96:2
**caused** 58:19
60:2 84:9,9
94:7
**causes** 67:22
70:16 78:14
**causing** 74:8
**center** 2:9
**central** 95:6
**certain** 20:12
33:23 40:14

59:18 116:1
117:13 118:2
119:22
**certainly** 4:16
25:24 64:12
66:25 88:15
106:4,7 109:7
118:1 124:1
125:23
**certified** 1:15
136:3
**certify** 136:5,9
**cetera** 4:20
10:25 19:6
20:12,23 76:20
101:14 113:23
**chairman**
119:18
**challenged**
69:12
**chambers**
102:4
**change** 104:20
120:25 121:1,4
**changed** 93:17
**changes** 14:25
43:13 90:18
121:22,23
133:13
**charge** 91:1,3
**charitable** 61:3
82:24
**children** 18:14
**circumstantial**
21:2

[cite - concede]                                                                Page 7

cite  89:7
cited  65:12
  115:2,22
cites  93:23
  115:1
citing  133:5
civil  1:3
claim  36:3 60:1
  65:17 67:13
  84:18 87:17
claiming
  111:22 117:1
claims  62:5
clarify  34:11
  65:16 68:12
  104:1 121:19
clarifying  34:4
clause  19:9
  20:2 34:25
  36:10
clear  18:4
  96:16 97:18
  107:2 108:9
  112:19 132:5
clearly  128:5
clerk  102:8
client  14:25
  72:17
client's  9:9
clients  70:22
  71:3
close  42:25
  97:10
closed  128:4

closely  130:7
coherent  13:2
cole  2:19
collecting
  46:16
collects  90:23
colon  68:22
colostomy
  68:22
come  10:19
  12:24 16:1
  33:14 39:22
  40:2 41:5
  44:23 60:20
  68:17 69:13
  88:15 95:21,22
  96:13 111:7
  117:20 122:5
  122:23
comes  35:4
  38:14 78:2
  115:25 117:7
  133:3
commencing
  1:19
commercial
  17:10 71:14
commit  98:23
commitment
  98:18
common  48:5
commonly  95:8
communicate
  53:20

communicated
  102:4,6 122:17
communication
  44:25 47:10,25
  51:17,25 61:19
  72:7
communicati...
  45:5,23 46:20
  46:21 47:12,15
  49:2,10,25
  50:12 51:14,23
  52:3 53:7,10
  53:16 54:14,24
  59:10,12,22
  62:22,25 63:19
  64:6,12,14
  70:2 80:6
  115:15 116:11
  124:7 134:19
companies  13:2
  13:12 71:9
  75:7 77:6
  87:16 88:3
  95:9 97:25
  98:7,8 114:15
company  9:23
  21:13 45:20
  46:6 48:21
  50:2,3,17
  63:20,21 73:13
  73:18,22 74:3
  75:21 76:1
  79:11 80:8,9
  81:2,18 90:17
  119:18 121:7

123:8 129:3
company's
  29:20 87:20
  95:11
compare  87:1
comparison
  31:10 40:20
compel  111:19
competitors
  60:13 71:13
  78:9 90:1
complaining
  17:7
complaint
  18:20 60:6
  66:11 67:17,22
  78:23 83:12
  89:6 93:20
  97:1,3,3
complete  45:8
completely
  30:13
complicated
  73:21
complied  41:1
components
  63:20
comprised
  130:5
compromise
  104:5,6 105:19
computer
  48:14
concede  121:17

conceded  35:18
conceivable
  18:10
conceptualize
  123:3
concern  14:12
  27:25 32:8
  49:9 117:6
concerned
  133:11
concerning
  113:23
concerns
  125:23
concessions
  21:19
concluded  98:5
  135:10
conclusion  28:2
condition  7:25
  21:23
conditions  3:13
  3:19,22 4:24
  5:12,15,25
  7:22,24 9:22
  16:22 17:3,12
  18:9 19:19
  20:3,22 21:6
  23:4 26:11,25
  29:21 36:23
  37:25 38:10
  42:2,6,10 43:9
  43:14 54:20,25
  57:11 58:5
  62:8 74:6 83:7

118:12,18
  120:15 121:1
conduct  6:7
  93:18
conducted
  24:22 47:19
  56:11
conducting
  24:17
confer  3:10
  14:5,10,18
  15:12,19 31:2
  32:16,19 39:4
  41:10,15 54:17
  100:25 103:11
  104:3,12,25
  111:8 128:18
  134:22
conference  3:4
  24:15 43:11
  100:13 104:7
  112:10 114:20
  127:8
conferences  3:6
conferred
  16:12 58:12
  112:25
conferring
  34:22 37:2
confers  104:16
congressional
  71:8 77:5
connection  3:2
  6:3

connects  58:6
consequences
  77:23 78:13
  98:25
consider
  104:12,17
considered
  106:21 114:7
  125:3
considering
  102:20 104:4
  120:13
consistent  9:8
  15:4 104:25
  114:9 115:21
  127:6
consistently
  93:22 114:20
  117:11 131:14
conspiracy
  79:16,18
constantly  31:1
construction
  36:9
consultant  49:4
consultants
  49:13
consumer  23:9
  23:10 65:22
  69:3,4
consumers  62:4
  69:4
contact  68:17
contemplated
  20:15

content  122:13
contention  7:4
context  4:5
  9:18 19:13
  20:4 29:1 35:6
  36:22 48:5
  52:16 117:8
  125:5 126:18
continue  5:2
  34:22 37:1
  98:21
continues
  89:19,19
contract  18:17
  50:15,22 65:15
  66:6 125:13
contractual
  18:23 20:4
contradicts
  37:16
conveying
  45:20
convince  13:7
convinced  26:2
convincing
  100:24
copied  47:20,25
  52:4 53:21
copies  56:11
copy  15:17
  50:18 118:3
  129:22 130:13
core  110:10
corner  73:22
  82:17 85:10

[corners - damage]                                                    Page 9

corners  81:18
corporate
   75:14
correct  16:9
   26:8 54:10
   110:4
correctly  19:7
corresponden...
   7:11 57:13
   81:9 102:9
   104:24
cost  48:17 89:6
   89:10 99:9
   106:22 133:1
costs  70:18,19
   80:10,11 99:4
counsel  2:23
   15:17 25:16
   103:12 121:19
   124:9 125:14
   136:10,14
count  22:4
counter  119:5
counteroffer
   25:21
counterpart
   50:17
counterparty
   116:1
counting  17:8
country  68:17
couple  3:8 9:4
   19:1 23:16
   28:20 49:1
   73:19 88:1

101:12 122:10
125:23
coupon  4:1
   18:2 19:6,10
   22:2,13 25:15
   32:10 34:16,25
   35:23 36:16,17
   36:20 37:7
coupons  10:25
   17:21 23:21
   39:17
course  15:17
   21:2 43:6
   49:25 59:3
   77:3 84:11
   91:14 92:2
   108:4
court  1:1,15
   5:1 32:22 36:7
   66:17,20 67:16
   69:3 80:20
   99:21 127:11
   127:23 136:3
court's  52:18
   65:12
cover  7:10 8:4
   29:7
covered  8:6
   20:16
covering
   107:25 109:11
create  33:15
   35:8 40:3
   68:25 81:16

created  9:21
   64:25 79:6
creates  59:24
creating  10:23
   45:16
criteria  20:20
   25:14 28:4,12
   31:8,16 34:12
   39:11
critical  12:21
   72:5,8 85:6
   133:18,19
critiquing
   42:20
crucial  14:24
   133:15
crux  12:14 31:5
cry  75:21
cumbersome
   12:4
cummis  2:8,12
cumulative
   109:12,13
   117:9
curious  74:18
current  9:25
   130:24
custodial  47:2
custodian  6:4
   46:2,6 102:18
   105:13 114:4
   115:3 116:16
   128:21 130:24
   131:3,10
   134:13

custodian's
   6:17
custodians  3:14
   6:11 33:22
   40:22 42:15
   44:4,18,25
   45:10 51:1
   52:6,17 53:21
   54:4 55:20
   61:23 101:8,14
   101:15 102:25
   103:3,5 104:13
   107:1 108:10
   108:12,25
   109:2,11,22,23
   109:24 111:12
   111:18,25
   112:5,9,11,23
   113:11,16
   116:21 117:6
   117:15 126:7
   126:11 127:1,1
   127:3,4,10
   130:16 133:24
   134:10
customer  130:6
customers
   85:17
cutoff  24:24
cuts  16:14

            d

d  129:15 133:8
damage  67:22
   76:12 84:8

**damaged** 83:25
**damages** 63:22
  70:12,14,20
  71:23 72:2,9
  79:25 93:9,16
  96:2,5,7 97:7
  99:14,18
  133:22
**darn** 15:23
**darzalex** 79:12
**data** 59:2,20
  63:1,14 72:6
  76:20 79:23
  80:25 88:24
  89:11 90:12,15
  96:10 98:4,15
**date** 24:24 27:9
  27:14 105:22
  108:19,20,24
  118:6 136:8
**dates** 27:18
  63:15 105:20
**day** 25:4 42:25
  72:20 103:25
  114:16,16,22
  114:23 115:7,7
  120:21,22
**days** 40:2
**de** 42:16 53:23
  54:10
**deal** 3:16 10:14
  105:17 126:11
**dealership** 83:2
  83:4 84:15,17

**dealing** 3:18
  5:4 76:15
**dealt** 125:22,25
**deceived** 66:18
**deception**
  66:15 98:9
**deceptions** 62:4
**deceptive** 65:23
  66:7,8
**decide** 44:11
  133:9
**decided** 20:14
  39:14 57:20,21
  75:10 76:25
  77:15 109:13
  112:11,19
  124:25
**decides** 70:1
**decision** 18:19
  42:9 119:21,25
  120:1 134:2
**decisions** 63:7
  63:9 75:13
  114:12 115:18
  120:12,20
  121:6,20,25
  123:22
**deck** 122:22
**decks** 115:22
  122:2,16 124:8
**declined** 25:1
  93:25 104:18
**declining** 56:3
  56:18

**decreased**
  93:22
**decreasing**
  100:5
**deductibles**
  10:5
**defendant** 1:9
  2:18,21 6:6
  42:4 66:18
  102:17
**defendant's**
  66:16,20
**defendants** 9:7
**defense** 15:17
  133:20
**defenses** 28:7
  72:9
**deficient** 42:14
**define** 33:22
  35:16 64:2
**defined** 41:19
  54:14 74:22
**definition**
  23:17
**definitively**
  128:4
**delta** 76:11
**demonstrates**
  103:18
**depending**
  46:13 88:15
**depose** 117:14
  124:2 127:24
**deposition**
  136:7,12

**depositions**
  117:8 124:13
**deprived** 68:19
  68:23
**described**
  10:25
**describing**
  52:15
**description**
  58:23
**deshaies**
  111:15 112:13
  132:15 133:3
**designated**
  114:4
**designed** 6:9
  37:3 60:11
  99:12
**despite** 72:16
**detailed** 7:5
**determination**
  64:23 65:3
  119:8
**determine**
  11:17,17 24:18
  36:14 112:7
**determined**
  63:4
**determining**
  19:12 46:3
  61:23 133:6
**development**
  82:6
**develops** 77:1

[device - documents]                                                    Page 11

| | | | |
|---|---|---|---|
| **device** 7:7 | **discourse** 95:9 | **dismissal** 12:19 | 5:7,14,19,21 |
| **different** 5:10 | **discoverable** | **dispute** 4:16 | 6:7,10,14,17 |
| 10:6 30:18 | 3:20 | 43:22 84:24 | 7:21 11:11 |
| 38:8 80:10 | **discovery** 3:12 | 102:12,21 | 12:1 15:2,5 |
| 94:3 113:9 | 3:17 4:18 5:1,3 | 104:10 | 16:5,14,20 |
| 116:11 123:7 | 7:3,6,11 9:3 | **disputes** 3:3,17 | 17:18 19:18,22 |
| **differently** | 12:17,21 29:15 | 101:13 | 21:15 22:6,10 |
| 84:12 | 29:17 38:7 | **disputing** | 22:14 23:13 |
| **differing** | 54:21 62:14 | 120:22,23 | 24:7 25:2,12 |
| 102:14 | 67:20 68:3,16 | **district** 1:1,2 | 26:10 27:4 |
| **dig** 26:20 | 69:15,22 81:9 | **division** 60:21 | 29:6,24 30:6 |
| **digital** 15:4 | 103:8,15 | **docket** 127:10 | 30:14,24 31:7 |
| **diligently** 24:1 | 106:25 114:6 | **doctrine** 19:7 | 31:12,18 32:13 |
| **direct** 15:10 | 132:2 | 36:12 50:1 | 33:13 38:19,22 |
| 78:13 109:1 | **discuss** 29:25 | 117:7 127:19 | 38:23,25 39:15 |
| **directed** 5:2 | 31:4 33:9 49:6 | **document** 7:20 | 40:14 41:6 |
| **directing** | 127:18 | 8:3 10:11 | 42:9,23 43:2 |
| 100:20 | **discussed** 11:8 | 11:21 23:5 | 43:12,13,14 |
| **directly** 21:12 | 56:6 134:14 | 27:9 30:3 32:1 | 44:15,23 45:2 |
| 78:22 | **discussing** | 32:2 33:9,19 | 45:7,15 46:10 |
| **disagree** | 119:12 | 51:11 52:14 | 47:2,3,6,24 |
| 126:18 | **discussion** 32:7 | 56:7 57:15 | 48:12,13 49:1 |
| **disagreed** | 50:5 105:8 | 59:1,5 84:25 | 51:12 52:8 |
| 67:16 | 118:17 122:22 | 85:24 86:2 | 53:22 54:2 |
| **disagreement** | 122:25 123:24 | 89:9 116:6,20 | 56:15,21 57:7 |
| 43:2 | **discussions** | 116:25 118:9 | 57:9,18,25 |
| **disagrees** 66:20 | 33:11 49:14 | 118:13,15 | 58:15,18,22 |
| **disburses** 119:1 | 50:19,20 106:1 | 121:15,16 | 59:9,11,17 |
| **discount** 22:2 | 106:3,4,7 | 122:19 125:16 | 60:19 61:13,14 |
| 23:10 25:15 | 108:24 115:9 | 131:12,17 | 61:17 62:20 |
| 32:10 33:9 | 122:2 124:3,4 | 132:18 | 63:4 69:11 |
| 34:16,25 35:6 | 124:20,21 | **documented** | 70:11 72:4 |
| 35:24 36:16,18 | 125:7 | 71:7 | 73:6 76:18,19 |
| 37:7 | **dismiss** 19:4 | **documents** | 77:8 79:5,21 |
| | 67:17 | 3:18 4:22,24 | 80:16,19 82:12 |

[documents - e]                                                    Page 12

82:17 84:13
85:1,15 86:10
86:22,25 87:5
100:11,16
107:8,13 108:4
111:4,23 113:6
113:8,13,13,14
113:21 114:9
114:24 115:1,6
115:13,22
116:4 117:19
117:21,23
118:20 120:2
120:11,19
123:1,23 124:8
124:13,16
125:2,5,6
127:21 129:4
130:14 131:9
131:24 133:11
**doing** 4:19
13:15 18:7
21:6 31:3
39:22 44:21,22
45:15 46:1,15
46:23 47:10,16
47:18 48:7,20
50:4 51:2 52:6
60:15 61:8
65:4 71:2
75:24 94:10
109:18
**dollar** 13:11
125:12

**door** 108:17
128:4
**doors** 127:2
**doubt** 4:15
**draft** 88:8
**drafted** 8:1,4
**drafting** 3:21
6:8,10,12 7:21
7:24
**dramatically**
32:11
**drawn** 6:23
**drive** 1:17
77:10 78:16
81:24
**driven** 94:8
**driving** 22:3
79:25 134:6
**drop** 50:20
**dropped** 49:16
**drops** 89:13
**drug** 71:4,4,8
72:1 73:18,18
73:23 76:24
77:1,6 78:16
79:12 83:14
84:6,6 88:3
89:16,17,23
90:14,24 91:5
91:7,8 92:20
93:13,21 94:6
94:7,9,14
95:10,11,16
96:10,14,22
97:6,20,25

98:7,8,12,22
99:1,13 100:3
101:2 133:7,17
134:6
**drugs** 10:5
18:15 24:19,25
25:11 42:7,10
60:12,13 63:16
64:16 68:24
69:18 70:23
71:2,12,13
73:11,24 75:8
78:2,9 80:5,10
80:11,11 82:2
82:7,14 85:16
85:17 86:11
87:18,19,20
88:7,8,10,11,12
89:1,7,11,25
90:1,6,23 93:3
93:22 98:23
99:8 121:5
123:6
**due** 93:13 96:6
**duly** 136:7
**dunlap** 2:16
6:25 7:16,19
8:14,17 14:9
14:12,17 16:10
16:19 17:1,25
18:25 19:20
23:16,23 24:11
29:10 34:3,6
34:11 35:25
36:14 37:4,9

37:20 40:6
41:22 43:4,21
44:16,19 48:22
48:25 49:20
50:8 51:4 53:2
53:5,11 54:11
54:16 55:5,11
55:18 57:4
58:11 60:1
65:8,11 67:14
69:24 70:10
72:22 75:17
76:16 77:21
79:17,21 80:2
81:12,15 82:7
82:11 83:21,24
85:5,11 86:13
86:15,20 88:6
88:17,23 89:2
89:5 91:11,13
91:24 92:24
93:4,19 94:12
95:18 96:1,17
97:1,18 98:10
98:19 99:24
100:2 101:2,5
101:9 135:8
**duplicative**
128:25
**dupped** 53:23
**dust** 83:15

---

**e**

---

**e** 2:1,1,3,3,20
46:7,9,16
47:20,21 48:4

**[e - essence]**                                                      Page 13

49:8 50:6,18
52:4,5,22,25
53:6 102:22
122:16,24
123:19,25
124:5,19 129:1
129:7,9,15,20
130:19,23,25
131:7 132:23
133:8,8 136:1
136:1
**earlier** 8:19
55:24 56:7
103:14,16,22
104:14 105:22
108:24 134:14
**early** 26:18
**ease** 5:11
**easy** 12:12
**economic** 62:18
65:6 69:12
**effect** 37:5
104:22 105:23
106:11
**efficacy** 99:5
**effort** 15:5 27:2
61:3 73:7,25
**efforts** 27:19
28:3,11 72:23
73:8 92:14
**ei** 56:5
**eight** 6:17
**either** 5:23
21:11 26:22
41:7 46:12

50:2 115:2
**ejusdem** 19:6
**elements** 65:16
65:21
**eligibility** 20:10
20:20 23:23,24
24:10 25:14
27:20 28:4,12
30:18 31:8,16
34:12 39:11
**eligible** 18:14
**eliminate** 31:15
72:3
**eliminates** 72:2
84:8
**elizabeth** 2:17
**elsberg** 2:15
**emphasis**
123:10
**employ** 16:11
**employed**
136:11
**employee** 46:7
50:3 130:9
136:13
**employees**
129:18
**employers** 99:9
**encompass**
11:1 108:3
**encourage**
26:23 60:11
**ended** 3:11
131:6

**ends** 51:20
**enforce** 20:20
20:21,24 31:21
31:23 39:21
57:21 65:1
**enforced** 42:11
**enforcement**
3:21 5:11,24
6:11,14 16:4
16:21 19:18,22
20:7 21:9,15
21:18 25:13,14
26:2,11 27:19
28:3,11 29:21
31:8 34:7,8,18
34:24 38:8,11
38:12 39:7
42:7 57:11,17
57:19,25
**enforcing** 16:8
21:6 23:18,18
23:19 24:2
28:17 31:20
33:11 39:10,18
**engage** 32:15
32:18
**engaged** 30:23
48:19 72:17
**enlisting** 62:4
**enroll** 70:22
80:5
**enrolled** 63:15
66:19
**enrolling** 62:7

**enrollment**
63:15
**enter** 50:15
**entered** 3:7
**entire** 38:2
64:15 72:3
73:22 90:17
**entities** 60:25
74:12
**entitled** 1:13
31:6 65:1
106:25
**entitlement**
55:9
**entity** 5:10
60:24 75:15
76:4,23 77:1,2
77:11 82:15
84:7
**entries** 48:16
**entry** 127:10
**equivalent** 15:4
**erleada** 133:8
133:10 134:2,4
134:6
**ernie** 113:12
**escalates** 32:11
**esi** 108:3
110:23
**esi's** 108:5,6
**esq** 2:5,6,6,7,10
2:13,16,17,17
2:20,24
**essence** 106:18
106:22

[essentially - figure]                                                    Page 14

**essentially** 7:12
  29:5 32:6 50:3
  72:15 75:9,20
  80:8 90:13
  106:24 134:17
**establish** 61:22
**et** 4:19 10:25
  19:6 20:12,23
  76:20 101:14
  113:23
**evans** 2:20
**event** 30:9 98:3
  112:7
**events** 43:19
**everybody** 4:2
  33:20 129:2
  131:25
**everyone's**
  43:24
**evidence** 4:16
  20:19 21:2
  44:4 69:6
  99:10 103:18
  112:13 114:25
  115:23,25
  124:4,18 125:6
  129:19 130:11
  134:14
**evident** 135:4
**exact** 63:8
**exactly** 37:9
  76:19
**example** 18:12
  20:11 25:13
  46:5,19 47:8

50:14 76:6
  107:3 113:22
  122:14,23
  123:11
**exclude** 38:3
  121:1
**excluded** 42:3
**exclusions** 24:5
**exclusively**
  45:18 68:15
**executive** 114:2
  114:11 115:16
**executives** 27:4
  114:14 119:20
  120:8 122:4
  128:24
**exhibit** 119:5
  121:13 129:20
  129:23 130:11
  130:18,23
**exhibits** 112:21
**exist** 9:20 10:2
  10:8,9,17
  11:15 38:22
  85:15 86:10
  99:2
**existence** 27:21
  72:24
**existent** 48:19
**existing** 8:3
  53:21 81:23
**exists** 76:4
**expansion** 29:4
**expenditure**
  84:10

**expensive** 68:1
**explain** 12:6
  29:25 90:18
**explained** 9:7
  14:24
**explaining**
  14:13
**explicitly** 92:9
**express** 80:24
  80:25 90:22
**extend** 6:13
**extensive** 72:23
**extent** 11:6,25
  17:25 26:13,13
  36:7 38:22,22
  41:17 43:21
  45:22 46:10
  47:18 50:11
  58:19 64:3
  100:8 105:10
  111:3 121:25
  123:23
**external** 45:6
  49:25 50:12,19
**extreme** 33:1

**f**

**f** 2:1 136:1
**facing** 65:22,22
**fact** 27:22 61:1
  61:2,6 89:12
  89:15,24 94:14
  98:5,21 99:2
  124:19 129:6
  131:19 133:4

**factors** 61:7
  70:2 91:9
**failed** 32:15
**failing** 62:6
  65:13 66:5
**fair** 91:2
  125:11
**fairly** 73:7
  112:18,19
**fall** 3:25 5:20
  35:19,20 106:3
**falls** 4:1 46:3
  52:14
**false** 80:18
  98:11
**familiar** 36:11
**family** 75:7
  114:15
**fang** 2:24 102:8
  102:11 105:1
**far** 25:1 27:18
  33:1 60:22
  83:11,11 95:5
**fault** 95:11,11
**favor** 87:25
**federal** 18:12
**fifth** 94:1
**fight** 132:4
**fighting** 89:18
  132:3
**figure** 9:21
  13:23 26:20
  35:10,22 39:14
  63:21 70:20
  73:22 76:2

77:8,10 81:19
82:3
**figured** 81:4
**figuring** 27:7
39:25
**file** 14:18,22
**files** 9:9 45:12
45:17 46:10
52:9 73:20
85:19 114:8
115:20 117:1,9
117:13,20
122:3 123:25
**final** 24:21 25:3
**finally** 110:18
**finance** 81:24
130:6
**financial** 3:13
19:11 58:15
60:4,8 61:11
63:24 64:4
67:10 76:12
77:23 89:20
100:8,21
**financially**
136:14
**financials**
76:15 89:14
**find** 4:23 11:25
33:21 68:18
70:5 74:18
80:19 86:25
87:1
**finding** 27:2
129:25

**finds** 36:7
**fine** 14:2,8 68:4
69:8 84:11
128:22
**finely** 132:1
**finished** 100:2
**first** 3:16,17
13:8 19:3 21:9
22:1 26:9
28:21 49:7
54:1 58:2
61:25 66:17
75:3 81:15
90:20 91:24
100:24 102:16
102:16 103:8
113:12 114:17
116:12 117:18
118:11 122:11
124:12 130:4
136:7
**five** 55:22
109:19 112:4,6
**floor** 2:12,19
**focus** 18:18
62:13,16 68:9
**focused** 68:5
**focusing** 22:22
**folks** 49:2,12
53:14 116:9
123:5,22
**follow** 32:1
**followed** 11:19
127:8

**following** 58:18
**footnotes** 89:13
**forcing** 74:7
**forecasted** 59:3
**foreclose**
100:22
**foregoing**
136:5
**forenoon** 1:20
**forget** 115:7
**form** 96:5
**former** 44:21
**forth** 29:14
41:16 47:5
50:16 100:9
101:24 105:10
112:12 126:19
127:9 136:8
**forthcoming**
14:13,24
**forward** 4:9
56:1
**forwarded**
131:3,7
**found** 40:13
116:12
**four** 55:23
109:17 127:17
**frame** 5:20
27:25
**frankly** 12:7
64:16 70:5
84:16 110:13
127:7

**fraud** 69:4
**freda** 2:2
**free** 22:2 32:10
88:15
**friday** 14:7,8
15:10,14,17
42:22,24,25
**friend** 34:8
**front** 58:4
**full** 25:8 128:20
132:7
**function** 49:18
**functional** 50:3
**functioned**
49:18
**functioning**
48:6
**fund** 75:9,9
**fundamental**
70:12,13
**fundamentally**
77:22
**funded** 79:7
**funding** 61:9
92:13,18 93:16
**funds** 60:20
70:17 71:25
75:3 78:18
84:10 119:1
**further** 5:22
100:21 107:2
136:9,12

**[ganas - gotten]** Page 16

| **g** | 25:10,12 26:3 | 79:1 81:14,17 | 45:18,20 47:11 |
|---|---|---|---|
| **ganas** 96:12 | 36:25 54:4 | 89:4,12 90:16 | 47:19 48:1,13 |
| **gap** 116:23 | 69:22 77:9,9 | 90:17 91:18 | 49:5 50:13 |
| **gather** 54:2 | 90:9 105:6 | 92:13 99:13 | 51:25 52:5,7 |
| **gay** 2:15 | 110:19 129:22 | 107:2 124:24 | 54:8 56:20 |
| **gbl** 60:1 65:17 | 130:13,19 | 125:24 130:21 | 57:13 59:8,22 |
| 72:10 84:18 | **given** 4:18 8:21 | 134:11 | 61:9 64:8,9,10 |
| 87:17 | 15:11 31:21 | **goal** 41:5 | 75:24,25 77:9 |
| **gee** 69:16 | 33:15,24 41:11 | **goes** 12:19 | 79:24 85:10 |
| **general** 6:8,22 | 45:13 62:25 | 19:22 22:19 | 86:18 87:13 |
| 16:22 17:3 | 63:1,2,3 | 23:5 27:2 | 91:4 92:5,7,17 |
| 31:24 33:15 | **gives** 38:3 | 34:12 55:11 | 92:23 93:4,12 |
| 36:23 39:23 | **giving** 26:10 | 57:16 61:4 | 94:16,17,20 |
| 40:1 58:23 | 125:15,17,18 | 67:2 70:12 | 95:6,19,19,20 |
| 60:17 78:20 | 126:7 | 71:20,22 73:21 | 95:25 96:4,20 |
| **generally** 21:7 | **glad** 25:25 26:5 | 77:22 99:10 | 96:25 97:7,9 |
| 25:23 28:3,5 | 34:22 37:1 | 119:11,12 | 97:10,15,17,19 |
| 28:11,23 73:3 | 54:16 57:4 | **going** 3:12,15 | 97:21 98:14 |
| 73:12 77:17 | 61:23 70:10 | 4:20 8:8,10 | 100:4,9 101:10 |
| 100:8 | 76:19 78:25 | 9:10 10:7 11:5 | 103:20 106:13 |
| **generate** 85:11 | 100:15 | 11:23 12:4,14 | 106:15 109:1 |
| 85:14 | **go** 4:10,18 5:21 | 12:17,21 13:3 | 110:19 119:9 |
| **generated** | 9:14 22:11 | 13:7,18 14:15 | 120:8,9,24,25 |
| 85:12 103:3 | 25:13 27:6,15 | 14:22 15:22 | 121:1,3 124:17 |
| **generating** | 27:18 28:5,17 | 16:1 23:12 | 126:10 127:1,2 |
| 118:17 | 31:1,20 32:2 | 24:4,7 25:8 | 127:24 128:23 |
| **generis** 19:6 | 33:20 34:5 | 27:17 29:23 | 129:11 131:21 |
| **george** 2:6,23 | 35:13 36:10 | 30:14 31:15 | 134:22 |
| **getting** 50:11 | 37:1 39:5,6,18 | 32:1 33:1,14 | **gold** 83:15 |
| 52:18,19 56:21 | 39:25 41:4 | 35:12,13 37:11 | **good** 16:25 |
| 69:15 85:17 | 43:25 44:15 | 37:24 38:1,10 | 41:25 64:22 |
| 98:10 126:6 | 51:3 57:10 | 38:13 39:1,4 | 97:11 98:7 |
| 131:23 | 61:7,10 62:20 | 39:15,19 41:7 | **gotten** 15:7 |
| **give** 23:17 24:8 | 62:22 64:10 | 42:21 43:3,15 | 47:23 98:18 |
| 24:21 25:1,6,7 | 67:19 70:2 | 43:23,25 45:15 | 110:18 129:9 |

[granted - honor]                                                    Page 17

granted  101:15
granular
  119:21
great  27:2,6,6
  65:5
greatly  75:25
  135:8
greedy  97:25
greenbaum
  2:10 4:4
grew  33:18
gross  2:8,12
grossman
  42:16 49:19,20
ground  87:7
  124:24 125:24
group  119:18
  125:21,22
  129:22 130:5,6
guess  24:4 39:1
  40:9 42:1,8
  84:21 101:13
  102:1 111:14
guidance  36:25
  37:15 41:11
gun  116:5
guys  64:22
  96:11 97:11

**h**

h  132:21
half  63:17
  111:19
hands  43:24
hannah  2:17

happen  37:12
  41:16 75:19
  109:1
happened
  115:15 122:20
happens  77:13
  122:18 129:3
happenstance
  131:6
happy  14:21
  32:16 100:17
  108:2,18 111:9
  128:12 130:13
hard  8:21
harm  58:19
  60:2,10,16
  62:1,10,14
  64:3,4 65:6,13
  66:1,3,9,10,23
  67:5,18,21
  68:12,14 69:4
  69:12 71:21
  72:10 74:8,23
  75:25 76:3,8
  76:12 87:17,18
  99:11 119:12
harman  42:16
harmed  69:5
  87:20
harms  67:2
harris  42:17
  46:8,16,19
  47:20,24 50:12
  50:18,22 52:2
  54:10

harry  2:5
hate  31:2 41:9
hcs  21:19
head  126:15
heads  131:5
health  1:4
  17:12 20:4
  66:22,24 67:1
  71:14
hear  24:6 25:16
  32:17 37:15
  79:3 97:2
  103:9
heard  34:7 58:3
  77:6 87:24
  95:24 110:21
hearing  5:2,10
  23:11
hearings  71:8
heart  8:1 35:4
heavy  15:23
heith  46:7,9
held  1:16
help  10:4,4
  41:7 50:15
  64:20 71:12
  78:1,7,8
  100:17
helpful  82:4
helping  72:21
  135:5
helps  70:22
  77:10 79:13
  80:4

hereinbefore
  136:8
hey  40:15
hide  72:24 98:7
hiding  73:4
  98:8
high  13:16
  115:9 120:13
  128:24
higher  99:17
highest  114:14
  119:19
highly  15:23
  21:1 90:2
  118:20
historical  7:5
history  32:16
hit  22:3 53:24
hoffman  107:3
  116:8,17,20
hone  132:10
honed  41:13
  88:13
honor  4:4 6:25
  7:17 10:10
  12:23 13:20
  15:14 18:21
  21:8 22:9,25
  24:12 26:7
  28:20 29:3
  32:5,17 34:3
  34:17 35:3
  37:4 40:6
  41:22 43:4,7,8
  44:17 48:22

49:5,24 53:2
55:1,14 56:20
65:8 67:14
68:11 80:7,16
81:13 83:21
86:8,13 88:17
90:4,5 94:4,12
97:24 100:9
103:9 109:8
111:9 112:3,17
112:23 114:10
115:24 116:17
119:24 125:4
126:17,24
127:25 128:16
129:13 131:11
132:5 134:13
135:3
**honor's** 13:5
92:15 110:6
**honorable** 2:2
**hope** 52:10,25
92:4
**host** 30:18
**house** 2:23
44:11 48:10
49:17 52:22
53:6
**huge** 73:10,25
77:17 83:17,24
132:1
**hundred** 13:11
42:23 86:23
**hurdle** 13:16

**hurt** 64:8,10

**i**

**idea** 39:9 69:1
83:9 107:14
118:11,14,17
**identified** 6:12
16:15 42:22
53:24 57:10,16
113:5
**identify** 6:9,21
7:23 31:22
**illegal** 84:17
**imagine** 35:7
**impacted** 61:8
93:2
**impacting**
60:15 94:25
115:10
**impacts** 69:23
**implement** 42:6
120:24 133:7
133:10,16
**implemented**
42:11
**implicitly** 92:9
**important**
21:25 23:17
27:8 31:23
35:24 47:3
54:20 56:4
62:21 76:18
80:15 129:10
132:19
**inapplicable**
127:20

**include** 8:15
56:16 104:8
115:3 116:14
129:2
**included** 11:6
127:1
**includes** 59:2
116:15 129:20
**including** 67:23
71:8 80:4
115:22 123:2
134:4
**inclusion** 50:25
**inconsistent**
26:25
**increase** 74:9
89:16 96:3
98:22 99:1
**increased**
94:22 99:3,12
**increasing**
98:14 125:18
**indicate** 80:17
**indicated** 3:4
5:21 6:16
10:20 11:11
12:3 53:15
**indicates** 17:13
**indicating** 15:7
49:1 57:19
61:17
**indication**
57:12
**individual** 32:4
39:24

**individual's**
31:16
**individuals**
7:23 116:15
118:3 120:12
123:1 124:15
125:7
**induce** 83:6
**inducing** 74:5
**industry** 23:7
73:3 80:25
**inevitably**
47:15
**inflated** 93:20
**inform** 62:7
**information**
3:13 7:5 8:21
15:10,24 21:1
28:18 56:10
67:10 80:12
85:11 87:9
89:21 90:21
**inherently**
122:5
**injuring** 84:14
**injury** 70:12,13
70:19 71:23
72:3,9 99:14
**inquiry** 65:5
86:12 102:9
**instance** 3:16
49:8 50:13
54:2 86:5
**instructions**
31:21

insurance  95:9
intended  79:6
intending  92:3
  94:23 95:15
intent  38:20
interested
  17:21 53:13
  55:6 77:18
  136:15
interfered
  18:18
interference
  36:3
internal  27:4
  49:8 89:13
  90:12,15
internally
  13:23
interpret  35:16
interpretation
  19:19 102:15
interpretations
  102:14
interpreted
  35:23
interpreting
  37:25 105:11
interrogatories
  6:23 7:13,15
  7:22 123:7
interrogatory
  7:2,7,14 8:3
  29:10,17,19
  31:25 63:5,10
  114:18 123:15

interrupted
  100:1
investigate
  108:19
investigated
  5:13
investigation
  5:14 23:14
  30:11 52:1
investigations
  21:14 24:9,14
  24:17,21 25:2
  25:8,10 26:3
  28:22,22 29:5
  32:4 39:13
  56:6,11,16,21
  104:20
investment
  70:8,11 71:10
  71:18 72:4,8
  77:4,7 79:23
  80:3 81:16,22
  82:11 83:18,18
  87:8 88:9,11
investments
  73:24 100:15
invitation
  116:13,14
  122:16
invitations
  113:22 115:3
invites  122:12
inviting  25:24
involved  32:3
  49:13 50:21

53:15 103:7
105:22 107:9
108:23,24
111:2 115:8
118:16 120:12
133:24,25
134:1,3,18
involvement
  109:5
involving  50:6
irrelevant  5:24
  9:6 30:13
  73:14 74:2
  80:13 82:18
  83:20 90:10
issue  5:15 8:20
  9:17 11:22
  13:4 15:20
  16:6,7,17
  20:10 21:18
  24:19 27:5
  29:21 43:10,12
  43:18 44:3
  48:2 49:25
  51:25 57:2,5
  58:3 64:17
  68:9,15 73:16
  78:14 87:12
  88:8,10,11,24
  88:24 90:9
  93:3 94:12
  101:7 104:2,19
  110:11,13,14
  112:10,20,23
  112:24 113:17

113:22,24
114:19 115:23
123:6 124:14
128:8 131:20
133:24 134:13
issues  3:7,8 6:4
  7:10 11:12,14
  13:1 14:14
  19:1 25:5
  30:15 40:3
  55:19 70:12,13
  82:5 98:5
  109:11 111:3
  114:5 135:5

j

j  2:10
j&j  5:9,13,19
  5:21 6:11 8:1
  10:3 20:14
  21:19 26:19
  48:10 49:3
  58:19 60:24
  63:19 68:7,8
  69:17 73:11,22
  74:21 75:2,14
  75:20 76:1
  77:17 78:1
  83:11 84:7
  99:12 108:5
  119:6,13 133:1
  133:9
j&j's  5:11
  55:11 67:19
  70:8 83:14
  106:8,20

[j&j's - judge]                                                          Page 20

| | | | |
|---|---|---|---|
| 125:13 | **jersey** 1:2,16 | **judge** 3:1,5 4:7 | 74:18 75:12 |
| **jalt** 113:23 | 1:18 2:10 | 4:13 7:18 8:7 | 76:14 77:20 |
| 114:1,3,7,25 | 136:5 | 8:15,23 9:10 | 79:2,19 80:1 |
| 117:19 120:2,4 | **jjhcs** 2:23 5:9 | 10:14 12:15 | 81:10,14 82:1 |
| 120:9 121:11 | 7:6 8:5 10:3 | 13:6,10,21,25 | 83:23 84:19 |
| 122:1 123:2,4 | 27:10 29:13 | 14:2,8,11,15,20 | 85:13,22,25 |
| 123:24 134:16 | 35:5 44:23 | 15:6,15,18 | 86:3,9,14,18 |
| 134:19 | 45:6 46:8 | 16:16,24 17:19 | 87:24 88:13,18 |
| **janssen** 22:13 | 47:17,18 49:11 | 18:4,19,22 | 88:21,25 89:4 |
| 35:6 70:23 | 52:9 53:17 | 19:17 22:15 | 91:4,12,22 |
| 71:1 76:22,23 | 60:21 63:20 | 23:11,24 26:14 | 92:4,17,23 |
| 77:2,11,13 | 74:21 77:15 | 27:14,15 29:16 | 93:6,10 94:15 |
| 79:10,11,12,13 | 80:23 90:17 | 29:23 30:3,7 | 94:19,24 95:2 |
| 79:15 80:5 | 91:18 93:17,21 | 30:25 31:1 | 95:24 96:23 |
| 82:15 84:7 | **john** 107:3 | 32:21 33:2,6 | 97:2,9,14 |
| 87:23 88:7,25 | 116:8,17,20 | 33:18 34:5,10 | 98:17 99:19,22 |
| 89:7,11,14 | **johnson** 1:4,4 | 35:9 36:13 | 99:24 100:19 |
| 93:25 120:5 | 36:20,20 60:12 | 37:8,11,19,22 | 101:4,6,11,14 |
| **janssen's** 82:22 | 60:21,21,23,23 | 39:1,6 40:8,17 | 101:23,24 |
| **january** 1:18 | 69:25,25 71:3 | 41:2,3,25 43:1 | 102:1,10,13,17 |
| 8:13 24:16 | 71:3 72:15,16 | 43:16,23 44:9 | 102:19,21 |
| 42:1 104:22 | 74:3,3 75:6,7 | 45:25 46:18 | 103:6,20 |
| 105:24 106:1 | 76:8,8 79:22 | 47:7 48:24 | 104:11,17 |
| 106:11 118:14 | 80:2 89:18,19 | 49:19 51:3 | 105:5,25 |
| **jd** 48:7 | 96:21,21 98:21 | 52:10,25 53:4 | 106:10,13 |
| **jd's** 44:21 | 98:21,25 99:1 | 53:9 54:7,12 | 107:11,18 |
| **jeffcoat** 46:7 | 99:2 102:22 | 54:18,23 55:2 | 108:7,13,17,21 |
| 50:14,23 | 103:12,12 | 55:15 56:2,22 | 109:9,17,24 |
| 116:15 | 114:14,15 | 57:1 58:9,14 | 110:3,8,15,16 |
| **jeffcoat's** 46:9 | **johnson's** | 59:25 61:25 | 110:20 111:7 |
| **jeffrey** 2:10 | 60:12 79:22 | 62:1 63:11,13 | 111:11,16,24 |
| **jennifer** 42:16 | 80:2 99:3 | 63:23 65:10,18 | 112:7,15,18,22 |
| 54:10 | 102:22 | 66:12 68:2 | 112:22 113:4 |
| **jeopardizing** | **jr** 2:20 | 69:8 70:4 | 113:18,23 |
| 67:24 | | 72:11,13 74:14 | 114:9 115:5 |

117:16 118:5
119:16 120:3
120:16 121:10
122:7,18
123:16,20
124:22,23
125:20,24
126:13,20,24
127:5,12 128:2
128:14,17,22
129:14,24
130:14,20
131:1,4,18
132:8,16
133:18,23
134:5,20 135:1
135:7
**judge's** 83:13
**judgment**
  12:18 93:1
**julia** 2:6
**juliette** 111:15
**july** 4:25 43:23
**june** 114:18
**juror** 75:23
**jury** 92:3,8

**k**

**k** 123:19
**karen** 111:15
**katherine** 2:13
**katie** 114:3
  116:7,19,20
**keep** 31:3 57:21
  61:9 89:22
  97:11 99:8

**keeping** 9:8
  15:1 41:19
**keeps** 82:8
  96:17
**kept** 13:10
**key** 119:3 130:5
**kicking** 3:9
  31:2
**kind** 4:5 39:20
  42:7 43:19
  50:15 100:1
  105:15 116:4
  125:22
**kinds** 88:8
**knew** 24:2
  112:1 125:17
**knewitz** 113:12
  113:24 117:5
  123:11,18
  134:12,17
**know** 3:23 5:8
  5:10 8:25
  10:10,20,22
  11:12 13:2,8,9
  15:7 16:1
  23:19 24:1
  26:18 28:7,8
  29:14 30:17
  31:1 33:16
  38:5 39:9,16
  39:18 42:5
  44:10 48:13
  49:13 51:1,7
  51:10,16 53:19
  54:15 55:8

58:6 60:22
61:16 62:17,24
63:1,6,18 64:8
64:19,23 65:1
67:6,7 69:16
69:16 72:15,18
73:1,19,23
77:20 78:24
79:11,12,24
80:16,17,23
81:3 82:7,16
86:22 87:15
88:16 90:24,24
91:22 94:15
95:10 96:11
98:4 102:2,5
103:9 110:8,20
112:8 115:7
116:4 119:13
120:7,14,21
125:13,17,20
126:4,6 127:3
128:25 130:10
131:9,22,25
132:9
**knowing** 72:24
**knowledge**
  111:25
**known** 21:13
**knows** 69:3

**l**

**l** 2:2 129:15
  133:8
**lade** 111:15
  112:13 129:14

130:9,23
134:21
**language** 4:2
  18:20 22:1,23
**large** 66:22,24
**latches** 28:8
**law** 18:12
  60:14,17 102:8
**lawsuit** 20:14
  20:25 59:7
  74:1,2,13
  123:13
**lawyer** 45:8
  46:8 49:17
  50:6 51:1
  52:22
**lawyers** 44:20
  44:21,23 45:12
  48:10,21,21
  51:1 53:6
**lead** 29:3,15
  30:14 73:8
  74:9
**leadership**
  120:5 123:4
**learn** 124:3
**leave** 26:24
  97:23 126:13
**left** 3:5 16:17
  68:22 112:5
**legal** 2:9 44:22
  45:21,21 47:17
  47:21,22 48:20
  50:23 51:2

[length - lowering]                                                          Page 22

| | | | |
|---|---|---|---|
| **length** 27:6 | 128:23 | **logistics** 102:20 | 19:8,22 36:9 |
| **lengthy** 67:6 | **limiting** 17:23 | **long** 2:6 5:18 | 37:6 46:16 |
| **letter** 25:20 | 18:22 30:7 | 10:12 18:8 | 54:13 57:9 |
| 42:20 48:25 | 50:10 82:1 | 52:2 61:4,10 | 62:9 66:12 |
| 100:12 111:13 | 86:20 87:8 | 72:19 103:24 | 97:4 111:2 |
| **letters** 7:3 | 88:14 96:2 | 104:1 105:23 | 117:3 120:17 |
| 21:10 29:15 | **limits** 134:8 | 106:2 108:9,15 | 121:6 125:1 |
| 43:20 119:2 | **line** 59:2,2 64:9 | 109:21 110:2 | 127:12 130:10 |
| **level** 63:14 | 64:10 82:22 | 112:15,16 | **looks** 118:1 |
| 115:9 120:2,3 | 95:5,7 | 113:10,20 | **loot** 72:19 |
| 120:13 123:3 | **linger** 55:19 | 115:14 121:9 | **looting** 72:17 |
| 128:24 | **link** 96:17 | 121:11 122:9 | **loots** 78:2 |
| **levels** 69:25 | **list** 18:8 | 122:20 123:18 | **losses** 73:12 |
| **license** 136:21 | **listed** 23:20 | 123:21 124:17 | **lost** 76:7 91:8 |
| **lieb** 2:13 | **literally** 63:8 | 126:17,18,22 | 92:11 96:5 |
| **lies** 98:9 | 85:9 | 131:11 134:12 | **lot** 17:5,6 20:4 |
| **light** 26:18 | **litigating** | **longer** 13:3 | 22:24 44:2 |
| **likelihood** | 110:17 | **look** 12:11 15:6 | 53:20 69:18 |
| 111:1 | **litigation** 49:18 | 20:1 29:17 | 71:8 75:2,21 |
| **likely** 118:20 | 50:6 73:5 | 35:2 38:2 | 78:12,21 83:3 |
| 124:15 | 115:11 | 40:21 50:22 | 90:20 131:8 |
| **limit** 53:11 | **little** 23:6 33:8 | 56:13 66:10 | 132:1 |
| 103:4 111:4 | 71:11 | 70:24 82:5 | **lots** 28:14 83:6 |
| 129:4 133:22 | **lives** 68:18 | 89:12 98:12 | 94:10 |
| **limitation** 51:4 | **llc** 1:8 | 100:14 121:12 | **love** 15:15 |
| 68:5 123:14 | **llp** 1:17 2:4,19 | 125:5 128:3,5 | 99:21 |
| **limitations** | **lobiondo** 2:6 | 129:19 130:3 | **lowenstein** 1:17 |
| 132:11 | 106:12,15 | 130:11,18,22 | 1:17 2:24 |
| **limited** 6:18 | 109:7,19 | 131:22 | **lowered** 89:6 |
| 11:15 17:15 | 110:12 111:6 | **looked** 3:24 | 89:10 92:1,8 |
| 26:22 32:6 | **log** 39:2,4 | 19:4 31:17 | 92:18 93:13 |
| 49:11 61:12 | 42:18,19 44:15 | 74:19 80:18,23 | **lowering** 95:2 |
| 75:14 86:17 | 45:16 46:12 | 86:10 98:4 | 95:20,21 96:22 |
| 87:18 108:10 | 51:20,21 | **looking** 3:10 | 97:20 |
| 128:9,14,15,17 | | 8:25 17:20 | |

**[lying - meant]**                                                          Page 23

| | | | |
|---|---|---|---|
| **lying** 15:3 | 54:5 57:24 | **manufacturer** | **mazuk** 114:3 |
| | 60:22 71:18 | 5:17 | 114:10 115:1,2 |
| **m** | 72:16 73:18 | **manufacturers** | 115:4,16 |
| | 78:12,15,21 | 72:22 | 116:20 117:12 |
| **m** 2:13 | 80:10 82:13 | **manufacturing** | 117:14,20 |
| **machine** 83:16 | 83:7 84:21 | 82:6 | 121:21,25 |
| **made** 21:19 | 86:24 93:11,15 | **march** 33:5 | 122:1,5,15 |
| 22:23 26:6 | 96:9,15 97:18 | **mark** 116:8 | 123:2 124:2,20 |
| 33:19 42:8 | 97:19,21 98:15 | **marked** 46:11 | 125:7 |
| 68:18 71:3,5 | 98:19 99:16,17 | **market** 80:11 | **mazuk's** 114:8 |
| 73:5 75:13 | 100:7,15 103:2 | 95:8 | 115:20 |
| 87:14 88:2 | 104:6 111:10 | **marketing** | **mean** 6:1 14:21 |
| 95:13 99:7 | 118:8 120:7 | 60:11 61:2,5 | 17:14 19:9,11 |
| 109:9 113:9 | 125:2 133:13 | 64:20 69:17 | 19:12 28:6 |
| 115:19 120:20 | **makes** 63:6,9 | 82:6 134:4 | 31:14 33:15 |
| 121:7 123:13 | 68:7,8 69:17 | **massive** 45:16 | 36:4 37:25 |
| 134:15 | 74:3 75:21 | **massively** | 38:7 51:20 |
| **magistrate** | 77:17 80:9 | 73:20 | 58:23 87:10 |
| 33:18 | 84:16 102:23 | **material** 99:4 | 101:25 117:22 |
| **mail** 47:20,21 | 105:7 | 131:10 | 125:21 129:6 |
| 50:18 52:4,5 | **making** 21:16 | **matter** 1:13 | **meaning** 8:25 |
| 102:22 122:16 | 30:10 67:25 | 9:25 33:24 | 9:18 10:23 |
| 122:24 123:25 | 69:16 72:1,20 | 52:2 83:4,4 | 11:7 16:21 |
| 129:20 130:19 | 73:11 75:2 | 85:10 | 19:23 25:14 |
| 130:23,25 | 78:11 83:5 | **matters** 59:15 | 34:16,24 38:3 |
| 131:7 132:23 | 88:4 97:24 | 83:9 90:14 | 53:17 105:11 |
| **mails** 46:7,9,16 | 100:3 114:11 | 91:17 | **meaningless** |
| 48:4 49:8 50:6 | 119:22,25 | **max** 17:9 | 29:5 |
| 52:22,25 53:6 | 120:1,12 | **maximizer** 9:19 | **means** 4:17 |
| 124:5,19 129:1 | 124:18 | 10:18 26:12 | 12:15 17:14 |
| 129:7,9 | **manage** 50:16 | 29:1 30:12,21 | 19:8,13,15 |
| **main** 26:6 | **manages** 81:1 | 108:6 | 20:6 38:11 |
| 114:25 | **mangi** 127:17 | **maximizers** | 40:11 |
| **maintain** 51:12 | 127:22 | 57:23 106:21 | **meant** 9:22 |
| **make** 4:4 17:23 | | 107:4 132:23 | 10:24 19:24 |
| 19:16 24:3 | | | |
| 33:22 39:19 | | | |

[meant - narrowing]                                                    Page 24

33:20 36:18,23
95:7 110:16,17
**mechanism**
7:12
**medicaid** 18:13
20:11,22 23:21
**medicare** 18:13
20:11,22 23:21
29:6
**medication**
68:21 74:8
91:2
**medications**
42:3
**medicines**
93:25
**meet** 3:10
14:10,18 15:12
15:19 31:1
32:15,18 39:4
41:9,15 54:16
66:25 103:11
104:3,12,16,25
**meeting** 34:22
37:1 116:14,18
116:18 117:24
118:2 122:7,11
122:19,21,24
123:24
**members** 17:11
20:16 42:3
**memorialized**
124:5
**mention** 55:7
86:25 87:6,11

118:11 131:12
**mentioned** 37:6
112:14
**mentions** 108:3
108:3
**merits** 128:7
**met** 16:12
58:12 116:9
117:10
**mid** 108:19
**middle** 104:5
**miles** 2:17
**million** 13:11
32:13 91:9
92:22 119:7
125:12,18
**millions** 33:12
**mind** 41:19
**minute** 74:16
84:4 99:25
130:19
**minutes** 90:5
122:23 124:8
**mirrored** 88:4
88:6
**missing** 65:23
69:21 120:19
**mitigation**
133:20
**mitigations**
28:8
**modifications**
6:5
**modifier** 104:9

**moment** 4:11
12:10 14:6
21:21 27:16
31:6 37:5,17
38:11 62:12
73:15 75:18
88:14 94:3
103:21 127:14
**moments** 23:16
**money** 59:6,22
68:7,8 69:18
70:18 71:4,5
71:11 72:16,20
73:9,10,17
74:3,4 75:2,21
76:10,11 77:17
78:1,11,12,15
78:21 80:9
82:12,13 83:1
83:5,8 84:8
86:24 119:9,23
**monitor** 71:9
**monitoring**
130:7
**month** 52:20
**months** 6:17
32:19,21
**motion** 12:18
12:19 14:19
19:4 93:1
101:15 107:22
111:18,24
112:6,24
114:17 127:10
133:5

**move** 4:9 6:2
13:17 16:2
41:18 70:7
132:4
**movement**
43:11
**moves** 32:9
**moving** 83:11
95:17

**n**

**n** 2:3 123:19
**name** 76:21
79:15 106:20
107:13 112:9
114:3
**named** 46:7
79:9 132:20
**narrow** 22:17
25:7 31:5
32:22,24 35:11
35:14 37:9
40:18 52:23
64:14 67:12
74:23,23 78:25
79:19 86:21
87:7 101:21
103:18 111:10
**narrowed**
16:13 25:19
40:18,25 41:1
81:7
**narrower**
40:19
**narrowing**
32:24 76:3

**[narrowing - offering]**                                              Page 25

79:3 81:6,10
**narrowly**  54:14
69:14
**natural**  127:7
**nature**  31:24
39:8,24 40:25
46:13 50:4,24
**necessarily**
48:1 105:17
115:15 123:25
**necessary**  4:8
22:20 59:23
69:11 80:12,21
86:15
**need**  11:2 12:17
13:4 20:5 21:5
24:7 26:4 27:5
31:4,10 32:20
34:1 36:17
39:12 41:6,6
41:18 56:23
57:17 59:11
60:19 63:18,21
63:22 69:22,24
76:10 79:21
80:2 84:13
88:13 107:2
124:12
**needed**  22:17
28:19 68:21
**needs**  28:10
33:21
**negligible**
48:18

**negotiate**  25:24
**neither**  136:9
**net**  86:21 90:12
90:13 91:17
93:24
**never**  20:17,23
24:5 40:18
55:13 134:5
**new**  1:2,16,18
2:5,5,10,13,13
2:16,16,20,20
6:12,14 20:24
42:2,6 71:4
84:2 87:2
99:14 102:18
102:25 103:5
103:17 105:13
108:10 111:12
111:23 112:12
113:5,8,8,13,13
113:14 116:3
124:18 125:1,2
125:5,25
126:25 129:19
130:10 132:18
134:9,14 136:4
**newark**  2:10
**non**  38:23
48:19 93:3
**nonsense**  81:4
**north**  119:18
**notary**  1:15
136:4
**note**  49:16
118:7

**notebook**  116:7
117:25
**noted**  12:20
**notes**  1:12
118:2,7 136:6
**notion**  80:22
**november**
24:24 43:17,25
57:8 101:14
104:3
**number**  9:6
18:16 47:6
51:25 58:20
60:8,9 61:13
77:5 94:16,18
94:21 100:11
108:1 109:21
120:10 127:10
**numbers**  54:4,6
61:15 91:20
**numerous**
120:2

**o**

**o**  2:1 132:21
**object**  50:25
59:13 87:23
**objected**  87:22
**objections**  7:8
**obligation**
51:13 67:1
**obligations**
93:21
**obliged**  29:11
**obtain**  73:6

**obviously**  8:18
45:7 125:3
**occasion**  51:17
**occasionally**
123:12
**occasions**  45:4
**occurred**
100:13 116:19
**occurring**
120:1
**october**  5:3
22:16 33:3
43:11 104:7
114:19 126:20
126:22
**offer**  3:25 4:3
6:1 9:18 12:15
16:9,22,24
17:14,16 18:3
18:5,6,20,24
19:5,8,11,13,24
20:1,6,15,18
21:4,7,23 22:7
22:23 28:25
30:5,16 31:9
32:9 34:9
35:20 36:1,4
36:15,16 38:4
40:11 60:23
78:7,8
**offered**  5:19
22:24 59:11
104:4 121:24
**offering**  25:6,7
25:10,12

**office** 1:16
73:20 75:10
**offline** 50:23
**offset** 72:3
78:15 99:18
**offsets** 72:2
78:18
**oh** 29:6 68:7
77:17 78:12
81:7 91:18
95:9
**okay** 5:6 8:7,23
11:2 13:6,21
14:1 15:18
16:16 28:1
33:6,19 37:13
40:5,7 41:21
41:25 42:12
54:12 58:14
59:25 62:19
63:13 64:9
70:4,5 72:18
72:18 75:12
83:16 88:20
98:17 99:22
100:19 101:5,6
101:11 103:21
107:11 111:6
111:11,21
123:20 130:2
130:20 131:4
132:14
**old** 40:2 88:21
124:19 125:5

**once** 32:9 52:23
80:5 83:3
**oncology** 68:23
**ones** 26:6
134:21
**open** 3:5 23:2
97:9 127:1
135:1
**opened** 108:17
**opening** 113:14
126:14
**operated** 43:15
**operates** 82:24
87:16
**operation**
68:22
**opinion** 12:16
62:2 65:12
66:13 67:4,6
**opportunity**
102:2
**opposed** 64:15
71:12 90:1
119:22
**opposing** 25:16
121:19 124:9
**order** 12:16
20:5 22:17
26:14 27:14
32:23,25 36:14
52:19 56:2,23
74:7 82:3 83:7
83:13 102:2,15
102:18 104:3
105:1,7,12

112:8,20 113:3
118:22 125:10
125:15 126:10
127:7,8
**ordered** 37:8
104:18 111:19
112:24 116:17
116:21 127:5
**ordering** 12:2
134:8
**orders** 3:8
116:1
**organized** 13:3
**original** 43:22
55:21 108:11
118:16
**outcome** 29:15
**outside** 10:24
46:21 47:9
49:11 50:2
52:14 53:17,20
60:23 90:17
91:18 104:24
**outstanding**
3:3
**overall** 67:10
68:8 75:25
83:4 125:22
**overlaps** 40:11
**overtaken**
43:19
**overwhelmin...**
45:18 52:12
**own** 47:17 75:9
87:2 93:24

131:16

**p**

**p** 2:3,3
**p.c.** 2:8,12
**p.m.** 135:10
**page** 117:25
127:25 130:4
130:23
**pages** 4:22
22:10
**paid** 59:2,16
61:13 79:24
84:4 119:9
**paper** 73:20
82:8 116:6
135:5
**papers** 27:1
**paragraph**
12:16 67:21
93:19
**parallel** 15:14
**park** 2:12
**part** 8:1 14:12
16:10,11 17:10
17:13 18:13
20:13,19 34:14
40:9 43:22
44:14 46:25
50:5 61:2,3
70:21 71:16
74:13 79:15
99:2 110:12
111:18,23
112:20 119:8
132:23,23

133:5,13

**partially**
119:25

**participants**
27:11 66:19
118:7

**participated**
122:2

**particular** 3:23
21:23 22:1
44:11 73:18
117:6

**parties** 5:2
14:18 49:3,11
50:13 51:5,11
51:15 52:3
54:14,25
102:14,19,21
105:14 136:11

**partner** 80:24
85:21

**partners** 68:25
90:21,24 98:3

**parts** 20:21
63:19

**party** 46:21
47:4,9 51:10
51:18,22,24
53:7,9 55:8
116:5,10 119:5
132:19,20,21

**pass** 103:23

**passing** 30:19
30:20

**past** 43:23

**patient** 30:19
30:19 63:14,15
64:20 67:25
76:12 84:3,4
133:1,12

**patients** 10:4
18:9 24:18
26:21,23 27:3
57:22 60:12
62:7 66:6
67:23 68:17,23
70:25 71:1,12
74:7,9 77:9
78:1,7 79:11
80:4 82:14
85:16 86:11
87:3,18,19
93:20 98:23
99:7,15 119:2
119:2,9,15
121:24

**patterson** 2:4

**pause** 21:21

**pay** 5:17 10:4,4
10:5 23:8
26:16,22 59:1
59:6,19 63:4
70:16,17 71:14
73:9,9 74:10
74:10 75:9
79:13 93:21
94:22 121:2,4

**paying** 57:21
70:18 71:25

**payment** 90:23

**payments** 94:5

**pays** 17:8 71:6

**pejorative** 78:3

**pending** 3:17

**penkowski**
111:15 112:13
113:19,25
117:4 118:16
121:17 124:20
128:10 129:7
129:21 134:16
134:22

**people** 13:23
39:16 44:18,25
45:1,5,6,20,23
47:3,16 48:19
50:21,21 52:5
52:9 56:14
64:8 68:19
70:22 71:24
74:6 78:8,17
83:6 84:22
86:23 89:25
103:7 108:22
109:12 111:1
117:9 120:9
129:1

**people's** 48:13
83:6

**perceive** 56:24

**percent** 16:14
25:20

**performance**
21:3

**period** 5:1,18
10:7,9 11:21
14:25 15:5
19:20,25 21:16
24:22 25:9
30:22 34:14
38:24 40:21
55:20,23,24
56:1 57:7,19
58:20 63:17
103:16 104:9
104:13 105:3
108:11 128:19
128:20 132:7,8

**permit** 38:6
127:3

**person** 29:6
46:22 117:12
129:10 133:6

**person's** 75:10

**personnel**
47:20

**perspective** 4:6
15:21 33:17

**persuade** 78:8

**pertinent** 64:1

**pfizer's** 87:19

**pharmaceutical**
72:22 73:3
81:1 87:16

**pharmaceutic...**
119:19

**pharmacies**
62:5

[pharmacy - price]                                                    Page 28

**pharmacy**
90:22,23
**phrase**  38:2,14
**piece**  9:13,13
36:2,3 82:8
94:22 114:25
116:6
**pieces**  44:2
**pitch**  100:3
**place**  49:14,22
73:25 103:8
117:22 136:8
**placed**  38:18
**plaintiff**  1:6 2:7
2:11,14 4:21
5:12 6:7,16
42:5 58:17
62:14 66:3,17
66:23 74:20
75:15 101:16
101:19 111:16
**plaintiff's**
115:10
**plaintiffs**  6:21
62:3,5
**plan**  17:9,10,14
20:17 70:22
**planned**  42:24
**planning**  97:5
98:2
**plans**  17:12
20:4,16 24:18
38:18 42:4
56:14 71:14
78:11 89:17,20

**plausible**  66:18
**plausibly**  62:3
66:23
**play**  44:19
**plaza**  2:9
**please**  88:19
100:24 127:14
129:4 132:13
134:23
**pllc**  2:15
**pocket**  17:9
**point**  4:8 17:16
17:17 19:16
30:8,10 44:5
50:18 53:8
56:12 59:9
62:6,23 68:2
85:6 86:6
87:13 98:20
100:7 104:16
106:17 107:6
117:19 118:8
120:7 124:12
124:17 125:9
**pointed**  22:9,25
23:6
**pointing**  65:13
**points**  4:5 7:4
26:5 44:7
81:13 106:6
116:4
**police**  28:5
**policies**  11:14
31:7,11,19
33:10,11 34:6

**policy**  11:18,24
12:1 13:9
29:20,25,25
30:1 32:7,7
**poor**  50:9
**portion**  127:14
**portions**  17:2
**position**  10:15
10:21 20:24
27:21 32:19
37:23 84:21
102:23 104:4
104:25 112:17
113:5 131:15
131:19
**positions**  33:1
**possible**  104:23
**potential**  73:24
104:5
**powder**  77:18
**pr**  134:17
**practical**  85:10
**practicing**
48:21
**precisely**
120:16
**predate**  5:18
**predecessor**
6:21 8:2,5,16
9:1 11:6
**preliminary**
4:5
**prepared**  31:3
**prescribed**
105:1

**prescription**
22:2
**prescriptions**
62:6
**present**  2:23
8:13 24:23
25:9 30:23
59:4 98:2
101:10 124:22
**presentation**
122:12,13,21
132:24
**presentations**
122:3
**presented**
112:1 113:7
122:1,22
**preservation**
11:12 14:14
**pressure**  89:20
**presumably**
122:25
**pretty**  13:19
15:22
**prevent**  27:2,7
72:24
**preventing**
13:15
**previous**  16:15
**previously**
112:1
**price**  90:6,12
90:13,13 91:2
91:17 93:22
94:7 97:11

99:17
**prices** 89:16,17
89:18,23 90:25
92:2,8,18,19
93:13,25 94:6
94:9,14 95:10
95:12,16,20,22
96:6,14,22
97:6,20,25
98:14,22 99:1
99:3,13,16
100:6 133:1
**pricing** 88:24
88:24,25 90:14
90:18 91:5,7,8
92:20 93:3
94:25 95:2,3
96:10 98:12
99:7 100:4
101:3
**primarily** 3:11
22:3 68:15
69:2
**primary**
132:17
**prior** 9:22 10:2
27:22 104:7
133:5
**privilege** 39:2,3
42:18,19 44:15
45:3,16 46:11
46:13 47:13,23
48:14,15,15
50:1 51:18,19
51:21

**privileged**
38:23 45:9,19
45:24 46:11
48:1
**probably** 23:6
119:23
**problem** 40:9
45:16 51:22
135:7
**problematic**
27:24
**problems** 9:14
**proceedings**
1:8,13 135:10
**process** 21:15
26:3
**produce** 11:23
12:5 21:11,13
22:14 23:13
51:13,20 72:7
72:7 76:20
79:24 80:20
111:4 120:17
132:4
**produced** 4:21
12:2 22:10
30:2,6 38:15
38:21,24 43:12
45:7,24 58:18
58:25 59:5,17
59:20,21 61:12
62:24 80:16
84:6 85:4
89:14 90:8
91:13 100:12

109:13 114:7
117:2,21
118:13 124:9
130:15
**producing** 9:15
27:12 30:23
47:1,2,6 56:10
57:9,25 58:24
79:5
**product** 81:23
81:24 82:22
**production**
22:24 23:1
25:4 27:9
30:14 42:14
49:10 52:19
56:25 57:2
91:15 106:8
116:23
**productions**
21:16 124:6
**productive**
9:24
**products** 60:22
**professional**
134:18
**profitability**
73:2
**profitable**
73:13,23 83:10
83:15
**profits** 76:7
87:4 91:8
92:11 96:6

**program** 3:24
8:6,19,22 9:19
9:20 10:6,8
17:6 18:3,15
21:4 23:8
26:17,24 27:3
27:7,24 29:2
43:15 50:16
59:7 60:11
61:5,14 62:18
64:5,6,25 65:1
68:4,10,18
69:17 71:17
72:17,19,21,25
73:2 74:25
75:4 76:3,9,9
76:21 77:3,15
77:23 78:7,8
80:4 84:2,23
86:12,21 87:16
88:2 89:24,25
91:6 92:12
93:16,23 94:5
94:8,22 98:6
98:24,24 99:8
99:12 101:19
101:22 103:1,1
103:13 105:23
106:9,10,16,19
106:19,23
107:7,10,14,14
107:23,25
108:6,6,16,23
114:12,23
115:11,18,19

119:1,4,10
120:25 121:8
121:21,23
122:14 123:9
129:8 131:14
131:16 132:22
133:7,10,12,14
133:16 134:1
**programs** 5:17
6:22 8:2,16 9:1
9:20 10:17,18
11:7 23:10,20
26:12,19,21
27:10,11 30:12
30:22 64:18
67:25 95:23
130:7
**prohibition**
18:14
**prohibitively**
68:1
**project** 9:24
80:13
**promising**
119:6
**promptly**
100:17
**pronouncing**
19:7
**properly** 51:12
**proportional**
52:16
**proportionality**
102:24 105:16
109:15

**proposal**
111:10,17
128:13
**proposed** 22:4
25:18 37:8
50:24 58:5
111:25
**proposing**
22:11 32:6
50:9 58:8
**propound** 7:8
7:14
**propounded**
7:9
**protect** 127:19
**protected**
47:12 50:7
**protecting**
60:17
**prove** 97:6,7
**provide** 32:23
50:23 112:25
128:12 130:8
**provided** 11:13
11:16 63:10
100:21 114:20
115:6 117:13
**provides** 78:1
84:16 89:11
**provision** 16:23
16:25 17:16
19:13,24 20:16
20:18 36:2
**provisions** 20:3

**prudent** 83:10
**public** 1:15
60:2,10,18
61:3 62:1,10
65:22 66:1,22
66:24,25 67:18
67:23 68:12,14
71:18,20 72:10
87:17 95:8
99:11 136:4
**publicly** 89:9
**purpose** 52:23
71:17 77:22
132:25
**purposes** 5:9
82:24,25
**pursue** 39:16
**put** 25:19 46:12
51:19 77:15
78:14 82:12
87:7 89:9,19
91:20 92:5,7,8
92:23 96:19
100:10 102:2,6
112:12 118:6
**putting** 13:10

**q**

**quarter** 32:13
**quarters** 22:5
**question** 4:17
11:3 24:6 34:4
52:15,21 61:20
63:8 71:22
73:8,10,17,19
73:21 74:5,15

74:21 82:4,23
84:20 85:25
92:16 101:17
115:6 116:8
119:17
**questioned**
24:10
**questions** 23:23
23:25 29:9,11
29:12 62:10
72:10 122:4
**quick** 124:10
**quickly** 13:19
83:22
**quite** 3:19
13:13
**quote** 16:4
23:13 93:24
**quotes** 129:8

**r**

**r** 2:1,3,16
132:21 133:8
136:1
**raise** 28:8
89:19 95:12
99:16 103:12
103:17 133:1
**raised** 7:10
51:4 58:3
92:19 94:14
97:25 98:12
**raising** 29:10
89:23 95:3
**ran** 20:18

[range - relevant]                                                    Page 31

| | | | |
|---|---|---|---|
| **range** 91:19 | **reasonable** | 94:10 96:14 | **reimbursing** |
| **ranking** 114:14 | 52:16 | 116:19 131:13 | 119:14 |
| 119:20 | **reasons** 22:16 | **references** | **reiterate** 76:16 |
| **rare** 45:4 | 89:22 98:13,21 | 17:11 | **reject** 62:5 |
| **rather** 12:12 | 99:4,6 | **referencing** | **rejected** 111:17 |
| **rational** 59:11 | **rebate** 35:23 | 127:4 | **relate** 3:12 20:3 |
| **ray** 80:8 | **rebates** 10:25 | **referring** | 22:7 32:16 |
| **reach** 80:21 | 17:22 | 107:21 110:22 | 43:12 111:8 |
| **reached** 101:17 | **recalled** 56:9 | 110:23 123:17 | **related** 25:2 |
| 108:7 | **receive** 18:15 | **refers** 108:5 | 43:10 47:18 |
| **read** 33:2 127:8 | **received** 25:20 | **reflect** 31:19 | 54:21 67:1 |
| **reading** 66:21 | **receiving** 45:21 | 38:19 39:15 | 77:3,8 94:8 |
| 102:22 127:7 | **recent** 10:12 | **reflecting** 42:9 | 103:5 110:9 |
| 127:13,14 | **recess** 4:12 | **reflects** 31:20 | 136:10 |
| 135:4 | 99:23 | **reframing** | **relates** 62:15 |
| **real** 92:1 | **recipient** 52:4 | 74:12 | 104:20 |
| **really** 3:9 5:22 | **recognizable** | **refresh** 108:12 | **relating** 4:24 |
| 13:7 14:13 | 60:16 | **regard** 3:16,20 | 5:25 6:8,10,14 |
| 26:20 30:13 | **recognize** | 6:20 8:12 | 7:21 16:20 |
| 32:8 35:3 38:3 | 117:7 | 17:20 23:13 | 26:10 30:20,21 |
| 39:14 43:10 | **record** 3:7 4:11 | 27:19 28:4,12 | 54:25 56:15,22 |
| 48:5,7 49:9 | 9:8 10:11 15:1 | 31:8 33:11 | 57:25 82:5 |
| 55:3 60:15 | 92:24 102:6 | 69:20 81:11 | **relative** 73:23 |
| 62:13 64:17,19 | **records** 13:3 | 101:7,16 127:9 | 136:13 |
| 68:9 69:16 | 103:3,5 | 128:10 | **relevance** 4:16 |
| 82:25 91:15 | **redacted** 45:2 | **regarding** 3:12 | 9:17 15:25 |
| 105:19 106:18 | 46:13 | 4:17 34:7 | 59:14 91:23 |
| 131:20 132:19 | **reduce** 89:16 | 102:18 105:13 | 132:18 133:3 |
| 135:3 | **reduced** 94:6 | 107:22 123:13 | **relevancy** 9:14 |
| **reason** 27:8 | 96:6 | **regardless** 12:1 | **relevant** 5:12 |
| 53:13 79:9,14 | **reducing** 97:11 | **regular** 132:6,7 | 5:20 9:3 10:16 |
| 82:20 103:7 | **reduction** 94:7 | 132:8 | 11:6,21,21 |
| 108:21 110:25 | **refer** 124:19 | **regularly** 24:2 | 15:24 17:3 |
| 118:19 126:1 | **reference** 91:9 | **reimburse** | 19:12 21:2,16 |
| | 92:21,21 94:9 | 119:6 | 21:24 25:8 |

[relevant - return]                                                   Page 32

28:15,23 31:13
33:8 34:7,9
35:1,12,22
36:24,25 41:12
41:20 53:18
58:20 61:20,21
64:7 67:13
70:2 72:9
76:17 77:14
80:6,20 82:25
87:5 89:17
90:2,6 91:24
91:25 100:4,10
108:25 109:8
110:22 114:5,6
115:13 116:2
117:23 118:20
122:13 124:7,8
124:15 129:8
131:8,10,17
134:3
**relief**  127:9
**relieve**  51:9,13
**rely**  128:6
**remain**  44:3
**remaining**
  112:4 113:16
  123:21
**rendering**
  47:22
**renewed**  112:6
**repeat**  80:1
**reply**  98:1
  113:15

**report**  89:8
93:24
**reporter**  1:15
99:21 136:4
**reports**  25:3
89:12 90:8
91:14,21
115:17
**representation**
93:7,11 97:19
97:22 114:21
**representations**
97:4
**represented**
123:14
**request**  30:4
31:5 32:1,2,25
33:20 34:13,15
34:19 37:9
47:21 49:17
54:21 55:21
64:14 67:11
81:7,8 88:4,6
108:16
**requested**  6:21
107:22 127:9
**requests**  5:7
6:20 7:20 8:3
22:18,18 40:18
40:19,25 45:21
63:24 67:12
69:10,14 79:1
81:9 87:14
88:22

**require**  69:22
80:8 90:16
127:11
**required**  12:20
48:11 52:22
**requirements**
20:10,23 30:18
**requires**  66:21
**reserve**  57:4
**resided**  121:25
**resides**  80:22
**residing**  73:19
**resolve**  22:20
57:3 112:7
135:5
**resolved**  3:7
8:11 113:1,3
**respect**  9:23
109:15 121:20
123:7
**respectfully**
108:15 126:2
**respond**  7:16
48:22 53:2
65:8 72:12
81:12 83:22
91:11 121:9
**response**  4:23
25:23 26:14
27:23 42:22,24
63:10,12 67:15
102:4 105:15
106:20,23
107:3,9 132:22

**responses**
55:12 114:19
123:15 124:11
**responsibilities**
114:16 120:22
**responsibility**
7:23 114:11,22
114:23 115:8
115:17 122:6
123:5
**responsible**
6:12
**rest**  103:25
105:15
**restrictive**
42:14
**result**  52:18
56:22 68:20
71:2 76:10
85:1 86:11
93:17
**resulted**  84:2
**retain**  15:5
**retention**  9:11
11:12,14,24
12:1 13:9
14:14 15:11
**return**  38:12
70:8,11 71:9
71:19 72:4,8
77:4,7 79:22
80:3 81:16,22
82:11 83:17,18
87:8 88:9,11
100:14

**reveal** 108:5
**review** 5:19
  23:5 32:12
  41:8 43:3
  45:12 46:9
  48:11 49:7
  52:22 53:24
**reviewed** 22:6
  42:23 57:7
**reviewing**
  45:14 48:3,12
  52:8 102:20
**revise** 42:9
**revising** 53:15
**revisit** 126:1
**rhetorical**
  95:13
**right** 3:1 4:2
  6:24 8:13 16:2
  18:25 21:17
  23:22 32:3
  38:14 39:13
  43:16 54:7
  55:4 58:3 60:6
  61:23 65:7
  66:13,14 87:14
  88:18 92:5,24
  101:12,18,20
  102:17 105:10
  110:3 111:20
  112:2 119:19
**riverfront** 2:9
**road** 31:2
**robinson** 2:19

**role** 44:5,12,20
  115:10
**rolls** 99:15
**roof** 23:5
**root** 27:10
**roseland** 1:18
**row** 94:1
**ruled** 87:24
  105:9
**rules** 59:18
**ruling** 110:7,14
  110:18 112:10
  134:15
**run** 16:20
  25:23 32:20
  44:8 55:22,24
  55:25 56:3,18
  83:2,11 104:8
  104:18 107:7
  108:10,13
  109:2 116:22
  119:3
**running** 26:12
  34:21 44:1
  104:12 109:25
**runs** 74:24
**ruthanne** 1:14
  136:3,20

**s**

**s** 2:3
**safety** 66:22,25
  67:2
**sale** 62:6 82:6
**sales** 71:4,4
  72:1 77:11,14

77:18,19 78:16
84:6,7,21
99:16,17
**sandick** 2:5 7:1
8:24 9:4,16
12:23 13:20,22
14:1,5,21
15:13,16 18:6
20:9 21:8 26:7
28:20 29:18
30:2,5,9 32:5
33:4 35:3 37:4
37:13 38:21
39:3 40:7,16
42:19 43:5
44:17 46:4
47:1,14 49:24
51:24 52:11
53:19 54:19,24
55:4,9,13 56:6
56:20 58:2,25
63:3,14 68:11
72:11,14 74:17
74:22 75:5
76:5 78:3 79:8
80:7 82:3,23
84:20 85:3,7
85:18,23 86:1
86:7 87:10
88:20 90:4
91:7 92:6,11
92:20 93:8,12
94:2,17,20
95:1,4 96:4,24
97:5,13,16,21

103:23 110:5
110:10 135:2
**sandick's** 49:9
**sandler** 1:17
  2:24
**sara** 2:7
**sat** 39:19
**savaria** 42:16
  46:8 54:10
**save** 1:8
**saveon** 5:23
  9:19,21,23
  10:8,17 11:5
  17:6 18:2,13
  20:16,17,24
  21:4 24:2,18
  26:19,24 27:1
  27:4,11,21
  29:2 30:12,16
  30:20 35:19
  36:5,6 42:5
  47:5 54:22
  55:7,12,12
  56:14 58:19
  60:7 61:8 62:7
  67:22 68:18,25
  69:2 70:21
  76:10 78:2,10
  80:17 83:16
  84:2,22 85:4,6
  85:8,17 86:12
  86:20,25 87:6
  87:9,11,15,23
  87:23 88:5,14
  91:9 92:10,21

92:22 93:14,20
93:23 94:9
95:17,22 96:6
96:10,15,18,19
104:4,9 106:21
106:23 108:3,5
110:22 114:18
114:25 115:2
116:4,25
117:10 121:1
124:1 131:12
131:14,17
**saveon's** 94:8
107:22 113:14
115:10 118:11
118:17 120:14
127:9
**savings** 22:2
36:16,18
**saying** 9:5,6,12
24:6 25:17
32:2 33:7
37:14,15 43:24
46:1 52:1 56:9
58:6 60:14
64:8 68:3,6,6
82:8 84:3
87:15 88:4
103:10 107:12
110:25 111:16
**says** 5:13 67:3
67:22 76:9
78:1 89:10,13
93:24 116:7
127:16 129:21

130:4
**scenario** 84:15
**scg** 130:5
**scope** 18:17
22:20 29:8
36:15 72:6
101:18
**scott** 111:14
116:7 119:4,17
121:8,14
**scratch** 81:17
**screen** 50:8
**scripts** 80:24
81:1 90:22
**search** 4:23 6:7
6:9,13,17,18
12:4 16:11,13
16:20 22:4,8
22:11,18 25:13
25:17,18,19,22
26:1 32:22,24
33:17,19,22
34:1,21 37:2,7
38:13 40:2,4
40:13,14 41:4
41:13 42:15
43:23 44:1
45:25 46:2,23
46:25 47:11
49:11 53:1,12
53:16,25 54:3
54:15 55:22,25
56:17 57:10,16
58:4 61:24
78:25 82:17

85:9 86:4,7,16
91:19 101:18
103:2 104:2,8
105:2 106:12
106:13 107:6
107:16,18,21
108:11 109:22
109:25 110:5,9
111:5,8,10
114:5 116:22
128:9,23
129:11 131:10
132:6,9,12
134:23
**searches**
102:19 103:4
103:19 105:3
105:13
**second** 96:19
106:17 130:22
**secret** 79:10
**see** 3:11 5:19
15:15,20 21:5
28:3 30:19
35:15 46:9
56:25 57:1,17
63:1 68:7,8
75:19 87:11
98:15 116:2,25
119:4 120:2
131:5
**seeing** 52:23
**seeking** 91:8
120:10

**seemed** 12:12
**seeming** 126:15
**seems** 49:9
**seen** 17:17 19:3
47:14 49:1
57:18 68:16
82:10 85:18,23
86:1 100:11
106:8 122:25
**segment** 83:14
83:14
**selective** 42:7
**selendy** 2:15
**sell** 71:13
**selling** 82:14
**sells** 76:24 77:1
**send** 15:16 41:9
42:22
**sends** 119:2
**senior** 27:4
114:2,11
115:16 117:4,9
122:4
**sense** 44:13
74:23 84:16
102:23 103:2
105:7
**sensitive** 99:7
**sensitivity**
133:2
**sent** 42:20,20
102:8 130:24
**sentence** 38:11
**separate** 47:4
48:12 87:2

[separate - sorts]                                                    Page 35

124:21
**separately**
  46:17 48:3
  99:2
**september**
  107:25
**series**  67:23
**serve**  113:25
**served**  7:20,22
**serves**  29:10
  60:24
**services**  36:5,6
  60:23 118:11
  118:18 120:14
**serving**  50:2
**set**  4:6 59:15,18
  60:20 61:16
  91:8 92:21,21
  94:9 96:14
  126:19 127:9
  132:6 136:8
**sets**  17:10
  60:19 61:16
  69:25
**setting**  17:7
  61:7
**seven**  112:25
**several**  3:4
  42:23 104:16
**shake**  126:15
**shaking**  131:5
**shampoo**  77:18
**share**  94:5
**sheet**  23:3

**sheryn**  2:23
**shift**  73:7
**short**  4:5 5:8
  10:3 12:16
  105:12
**show**  21:2
  30:17 31:7
  43:13,14 59:17
  61:6,15 63:14
  69:23 84:13
  85:1 87:3
  91:25 94:21
  95:15,16 99:14
  111:24 120:19
**showing**  59:1,5
  60:19 61:4,10
  61:13 77:5
  79:21 88:1,1
  89:22 117:10
**shown**  120:11
  124:14
**shows**  118:15
  125:6
**side**  13:10
  16:13 25:21
  34:8,18 53:14
  100:25 114:21
  126:16 131:6
**sides**  132:2
**sidetracked**  7:4
**sign**  84:22
  86:23 87:3
  119:23 120:24
**signatory**
  121:18

**signature**
  121:14 136:20
**signed**  70:25
  121:16 125:16
**significant**
  48:17 112:12
**signing**  65:14
  71:24 78:17
  84:1,3,5 85:16
  125:12,13
**sills**  2:8,12
**similar**  39:8
**similarly**  66:20
  103:4
**simple**  73:19
**simply**  10:16
  15:7 30:17
  126:5
**single**  33:2
  61:18 82:17
  112:20 116:6
  118:10,13
  130:24
**sit**  39:20 41:3
  52:13
**sits**  120:5
**sitting**  48:14
  75:11
**six**  63:17
  101:15 109:19
  112:25 113:1
  126:6 127:4,4
**slice**  131:25
**slightly**  40:24

**small**  120:10,10
  133:5
**smoking**  116:5
**snow**  2:17
  101:9,21 103:9
  104:15 106:5
  106:17 107:17
  107:20 111:9
  112:3 117:16
  117:17 118:6
  119:24 120:4
  120:18 121:22
  124:10 125:4
  126:9,19
  128:12,15,19
  129:13,16
  130:3,17,22
  131:2 132:5,15
  132:17 133:19
  133:25 134:24
**somebody**  37:6
**somebody's**
  60:15
**someone's**
  73:20
**somewhat**
  40:19
**sorry**  120:4
**sort**  13:2 15:3
  43:24 61:3
  65:25 66:3
  76:20 95:8,13
  134:3
**sorts**  23:9
  80:25

sought   20:23
sound   12:8
south   123:6
sp   1:8 62:7
   93:20,23
spaces   112:21
speak   15:3
   43:20 70:10
   100:24 102:3
   106:5 117:12
speaking   28:23
specific   7:25
   40:12 73:8
   75:8 87:25
   104:8 105:7
specifically   7:2
   8:9 24:17 42:3
   45:11 46:15
   49:12 53:14
   56:13 69:21
   71:9 75:8
   102:18 108:1
   126:24 134:1
specifics
   102:18 105:13
   108:2
specified   103:6
spell   97:7
spend   71:11
   76:11 135:4
spending   78:19
spent   59:6,23
split   112:22
spoke   102:13

sporadic   57:20
spotlighted
   18:21
squarely   61:21
stage   9:3
stake   87:7
stand   77:16,25
   78:6 93:5
   95:19 96:20
standard   5:16
   23:7,10 36:8
   124:14
standpoint
   102:24
stands   26:16
start   9:13
   31:18 49:9,15
   49:23 86:5,18
   87:6,14 97:24
   113:19 121:12
   126:11 127:17
   128:6 129:17
started   8:22
   10:1 26:19
   27:22 56:13
   101:13 103:13
   106:16
starting   24:16
   86:6 107:24
starts   129:25
state   1:16
   136:4
stated   123:11
statement
   29:20

statements
   123:13
states   1:1 112:8
stating   85:19
statute   66:21
   67:1 69:3
stay   89:25
steal   72:18
   84:16
stealing   97:12
steals   78:3 83:3
stelara   6:13,14
   24:19 25:11
   42:2 43:9
   53:15 55:3
   56:7,12,22
   57:11 68:8,20
   86:24 104:21
   121:2,24
stenographic
   1:12 136:6
steps   27:6,23
   28:9
stop   61:25
   74:16
story   77:25
   80:18,22 81:3
   81:5
stranger   45:8
strategic   130:6
strategy   99:3
string   19:5
strongly   76:17
stuff   100:8

subject   7:8
   12:18,25 21:9
   21:22 22:8
   23:1 26:10
   28:21 30:10
   33:24 39:4
   43:8,10 53:10
   59:7 63:5,9
   68:12 72:8
   80:14 83:13
subjects   41:12
submission
   12:24 16:12,15
   100:16
submit   15:14
   19:25 100:23
submitted
   21:10 100:12
subpoena   47:4
subpoenaed
   51:7
subsequent
   122:24
subsidiary
   74:24
substantial   3:8
   13:1 59:20
substitute   7:12
success   64:16
succinctly
   112:18
suddenly   109:4
sufficient   87:9
suggest   92:9
   133:11

[suggests - terms]                                                    Page 37

**suggests**  72:22
  118:14
**suit**  66:4
**summarize**
  99:25
**summarized**
  102:12
**summarizing**
  100:16
**summary**  12:18
  93:1
**summer**  63:10
**sun**  61:19
**supplemental**
  100:15
**support**  5:17
  10:4 26:22
  29:24 59:6,19
  74:10 75:10
  94:22
**supports**  90:12
  90:15 116:9
**suppose**  45:17
**supposed**  3:24
**sure**  7:18 9:16
  13:13,25 17:23
  29:18 33:22
  35:25 36:11
  39:5 46:4
  57:24 58:11
  69:3 72:13
  74:17 75:6
  113:20 122:9
  124:2

**surprised**  58:7
**sworn**  136:7
**system**  10:1
  15:1
**systems**  1:5

**t**

**t**  123:19 136:1
  136:1
**t&c's**  6:8,13,15
  6:22
**table**  4:6
  126:16
**tables**  4:19
**tailor**  8:22
**tailored**  8:20
  54:3 69:14
**take**  9:12 27:6
  27:22 28:12
  46:5 70:23
  71:12 79:12
  83:5,16 84:1
  99:19 106:10
  108:18 113:11
  118:2,7 125:21
  131:18 132:3
  134:9
**taken**  1:14 4:12
  10:21 53:23
  94:4 95:22
  99:23 131:15
  136:12
**talk**  6:19 8:8
  13:22 14:21
  16:6 24:13
  25:25 30:15

34:2 45:19
54:3 58:9
67:12 69:11
72:5 76:19
105:18,20
127:17 128:7
129:2
**talked**  3:19
62:1 76:13
**talking**  5:23
  10:9 11:10
  19:21 27:18,20
  32:12 33:10,12
  34:18 38:16
  40:10 45:8
  65:12,18,19
  66:5,7,8,14
  90:14 109:21
  117:8 121:22
  123:4,5
**talks**  35:5 85:3
85:5
**targeted**  93:23
**team**  120:5
133:6,6
**teams**  81:24,24
**tee**  15:12
**tell**  16:17 24:4
  45:12 63:23
  66:6 77:25
  79:2 86:17
  88:2 92:3
**telling**  12:7
**tells**  11:13

**term**  4:17 7:25
  9:2 10:22
  12:21 18:7,23
  21:23 23:10
  28:25 30:16
  36:8 55:25
  56:4,5,17
  103:6 104:8,13
  104:18,19
  107:23 111:5
**terminated**
  26:23
**terms**  3:12,18
  3:22 4:23,24
  5:12,15,16,24
  5:25 6:9,18
  7:21,24 9:22
  10:21 16:8,11
  16:13,22 17:3
  17:9,10,12,15
  18:8 19:5,9,19
  20:2,3,21 21:6
  21:6,22 22:4,8
  22:11,18 23:4
  23:4,7 25:13
  25:17,18,19,22
  26:1,11,15,25
  27:9,24 29:21
  32:20,22,24
  33:17,19,22
  34:1,17,21,21
  34:25 35:16,19
  36:9,22,23
  37:2,7,25
  38:10,13,17

**[terms - tied]**                                                    Page 38

39:10,13,16
40:2,4,13,14,19
40:24 41:4,13
42:2,6,10,15
43:9,13 44:1
49:12 53:1,12
53:16,17,25
54:3,15,20,25
55:22 57:10,16
57:17,20 58:1
58:5,5 59:18
61:24 62:8
67:17 71:4
74:6 77:14
78:3,25 79:19
82:13 83:7
101:18,21
104:2,21 105:2
107:6,16,19,21
108:1,11,18
109:22 110:1,5
110:9,21 111:8
111:10 114:5
116:22 118:12
118:18 120:14
120:25 128:9
128:23 129:11
132:6,9,12
134:23
**test**  30:19,20
**testimony**  77:5
**text**  112:20
**thank**  41:24
88:17 129:13
130:1 134:25

135:3,6
**theory**  79:16,18
93:9 96:7
97:17 116:9
**thicket**  68:24
**thing**  29:9
54:19 58:16
79:10,24 101:7
105:21
**things**  3:14 7:6
9:4 10:25 17:7
17:22 18:16
21:8 22:1,22
23:22 25:15
26:8 27:17
28:5,15,21
29:7 32:10
34:16 35:12
38:2 58:21
60:3 62:9
65:13,19 67:24
68:6 73:13
92:22 94:10
129:1
**think**  4:7 5:22
6:6,23 7:1,6,9
8:2,6,13 9:17
9:23 12:12
13:4,16 15:23
15:25 16:7,10
17:2,13,15,19
18:4,23 19:1
19:15 20:14
21:1,10,18,25
24:11 26:6,7

28:9,16 30:25
31:4,18 34:1
37:14 40:13
41:12,20 42:13
42:18 43:18,19
44:2 49:5,22
54:1 55:2,18
55:19,22 56:4
56:19 57:14,15
58:16 59:23
60:7,9 61:20
62:13,23 63:1
63:23 64:3
67:4,9,11
69:15,21 70:11
72:1 75:8,23
76:18 77:12,21
78:5 80:21
82:7,9 86:6,15
86:16,21 87:8
88:23 89:15,21
90:2,4,6 92:15
94:13,14 95:24
96:24 98:1
99:10,13 100:2
100:13,23
101:1,6,16,23
103:17 104:2
105:10 106:17
107:1,5 111:16
112:8,11,17,19
113:2,4 115:12
115:14 116:3
117:3,10
118:19,23

119:21,24
120:9,18
123:23 125:11
126:2,12 127:6
128:5 130:10
131:14 133:10
134:12
**thinks**  34:8
**third**  2:19
46:21 47:4,9
49:2,11 51:5
51:15,18,22,24
52:3 53:7,9
54:14,25 55:8
66:2 110:18
116:5,10
132:19,20,21
**thirds**  22:5
**thought**  10:24
12:5 20:17
24:5 31:23
96:1 100:3
103:13 109:14
126:25
**thousands**  4:22
22:10 48:16
**thread**  131:2
**threat**  66:21,24
**threaten**  60:4
61:11
**threatens**  60:7
**three**  22:5
55:20 133:6
**tied**  32:9 78:22

**ties** 88:3
**tim** 102:10,11
**time** 4:19 5:18
  5:20 8:19 10:7
  10:9,12,22
  11:5,21 14:22
  14:25 15:1,5
  19:24 21:16
  22:12 24:9
  25:9 27:25
  30:22 31:15
  33:9 34:14
  35:5 36:19
  37:6 38:14
  40:21 44:24,24
  52:2 55:19,23
  55:24 56:1
  57:18 58:2,20
  79:14 90:19
  92:13 103:16
  105:2 108:11
  110:18 113:7
  128:19,20
  132:3,7,8
  135:4
**times** 53:20
  88:1 118:24
**today** 3:2 8:8
  13:23 14:3
  16:18 55:16
  64:23 92:24
  97:4 100:20
  115:24 118:24
  126:12

**told** 22:15,16
  32:14,21,22,22
  63:11 102:5
  117:11
**tons** 98:3
**took** 31:16
  32:19 43:24
  63:16 99:25
  104:11 105:23
  106:19
**tool** 50:9 64:20
**tools** 36:8
**top** 116:7 118:6
**topic** 6:24 16:3
  80:6
**tortious** 36:3
**tortiously**
  18:18
**totally** 12:13
  58:7 73:13
  74:1 80:13
**touch** 28:24,25
**towards** 17:8
**tracks** 7:2
**transcript** 1:6
  1:12 33:3
  126:10,17,21
  126:23 127:13
  127:15 136:6
**transparency**
  89:8 90:8
  91:14,21 93:24
**tremendous**
  80:25

**tremfya** 6:13
  6:15 24:19
  25:11 42:2
  43:9,13 53:16
  55:3 56:8,12
  56:22 57:11
  68:20 104:21
  121:3,24
**trial** 12:19
  21:13 22:3
  32:10 46:20,24
  47:1,3,5,6 49:3
  49:12 51:7
  56:10 69:6
  84:12 92:25
  96:20 116:1
  118:21,23,25
  119:6 125:19
**tried** 7:11 10:3
  32:18
**true** 26:9 78:5
  82:9 85:19
  94:13 117:1
  128:4 132:25
  136:5
**try** 3:15 26:20
  27:10 37:3
  81:18 90:18
  104:10
**trying** 9:21
  35:21 76:2
  77:16 90:9
  96:17 110:24
  121:18 127:19
  133:21

**turn** 3:17 11:9
  20:7 24:9
  58:15 113:11
**turned** 107:10
**turning** 66:16
  117:24 130:10
  132:15
**turns** 7:24
**two** 4:5 6:11,18
  17:17 21:8,25
  22:5 24:19,22
  24:25 27:17
  32:21 42:10
  44:3,7 49:21
  54:9 55:18
  60:9 62:3,6
  65:25 77:3
  98:13 101:21
  103:18 106:5
  107:21 127:18
  131:12
**tyler** 2:4
**type** 72:6,7
**types** 79:1
  113:21

**u**

**ultimately**
  102:15 104:6
  104:10,15
  106:19 107:9
  112:22 127:4
  127:23 133:9
**uncontrovers...**
  5:16

| undecided | understands | **v** | **w** |
|---|---|---|---|
| 112:5 | 5:15 102:13 | values 90:12 | w 123:19 |
| under 3:25 | understood | various 23:21 | 132:21 |
| 19:6 60:16 | 33:20 57:22 | 27:19 38:18 | wait 56:25 84:3 |
| 61:13,19 77:15 | 134:5 | 39:10 63:19 | 127:13 |
| 87:21 | undertake 48:3 | 81:18 | waldor 3:5 |
| underlying | undertaken | vasquez's | 13:10 22:15 |
| 39:12 65:20 | 45:11 | 18:19 | 31:1 32:21 |
| underscore | ungerleider | vast 80:12 | 37:8 40:17 |
| 78:24 | 1:14 136:3,20 | vazquez 62:1 | 41:2 43:16,23 |
| underscores | unique 114:24 | 65:18 | 63:11 81:10 |
| 100:14 | unit 52:17 | vazquez's | 87:24 101:14 |
| understand | united 1:1 | 12:15 | 101:24 102:1 |
| 18:1 19:8,10 | universe | vendor 21:12 | 102:13,21 |
| 19:11,14,25 | 132:11 | verbatim 81:8 | 103:6 104:11 |
| 23:12 28:16,17 | unusual 48:4 | versus 15:25 | 104:17 108:17 |
| 33:7 35:21 | update 5:3 59:4 | viability 60:4,8 | 109:9 110:15 |
| 36:17,21,22 | updated 43:15 | 61:11 62:18,18 | 110:16 111:17 |
| 38:6 41:22 | updates 130:8 | 64:5,11 67:24 | 111:24 112:7 |
| 43:25 56:24 | updating 5:4,5 | 68:4,15 69:2 | 112:18,22,22 |
| 58:17 67:19 | use 7:11 35:16 | 69:10,13,23 | 113:24 114:9 |
| 69:24 75:17 | 36:9 46:19 | 119:11 | 124:23 125:24 |
| 87:6 105:21 | 50:14 128:11 | view 26:24 41:1 | 126:25 127:5 |
| 109:10 128:24 | 133:22 | vigilant 39:9 | waldor's 26:14 |
| 129:9 | used 4:23 5:16 | violate 27:24 | 27:14 56:2,23 |
| understanding | 6:9 9:2 10:23 | 118:12,18 | want 3:15 7:5 |
| 3:21 5:11 6:10 | 23:3,8,8 36:20 | 120:14 | 8:20 9:12 |
| 8:18,22 16:21 | 42:15 76:21 | virtually 73:21 | 13:17,17 14:3 |
| 19:23 28:10 | 78:4 110:6 | virtue 21:19 | 14:9,17 16:18 |
| 34:15,23,24 | 128:20 | voluntarily | 17:23 18:1 |
| 35:14,23 38:17 | uses 22:12 | 26:13 | 19:14 20:7 |
| 38:20 40:10 | using 40:14 | vs 1:7 | 21:21 23:12,15 |
| 56:2 98:20 | 53:1 96:10 | | 23:19 24:1,3 |
| 104:21 132:24 | usually 122:12 | | 28:8,14 33:8 |
| 133:15 | | | 35:9,11,15 |

36:19,21 39:9
41:15 49:16
51:3,14 55:8
55:16 56:15
57:24 62:11
64:2 65:16
67:9,12,14
68:9 69:8
70:17 74:14
75:1,19 77:25
78:6 80:6
81:21 82:18
86:5 87:6,7,15
91:22 93:7
94:15 96:15
97:18,23 98:15
98:19 99:19
100:7,23
103:24 105:20
108:9 111:4
112:2 117:12
117:18 118:8
124:24,25
125:20,24
127:24 128:6
128:10 129:2
131:12
**wanted** 3:4
34:11 38:3
63:11 104:1
105:14
**wants** 50:15
84:12 85:12
100:10 131:25

**way** 8:9 17:5
18:10 22:7,11
28:13 29:12
33:23 35:10
38:15 61:4,10
62:2 66:25
74:13 75:23
79:9 80:15
85:9 90:9 92:7
93:2 94:2
118:1 128:5
**wayne** 2:24
102:3,5 130:1
**ways** 122:10
133:21
**we've** 9:7 22:23
38:21,24 42:23
58:25 59:5,19
92:18,19
104:16 109:25
110:6,13
112:14 113:5
115:22 116:12
120:18 122:25
129:6,14
134:21
**webb** 2:4
**website** 89:10
91:15
**wednesday**
1:18 13:24
**week** 13:24
14:3,4 41:16
42:21 83:3
84:17 101:8

103:12
**weeks** 3:4
68:20,24
**weighing** 15:24
105:15
**welcomed**
124:2
**went** 16:12
40:22 48:25
104:11 105:10
112:21
**white** 111:14
112:13 113:19
113:24 114:13
114:13,17,21
115:8,12,17
117:4 118:16
119:4,17
120:17 121:8
121:14,17
124:19 125:15
128:10 134:15
134:22
**white's** 125:14
**wide** 80:8,25
91:19
**willing** 25:22
**wind** 45:15
**window** 104:24
**winds** 78:11
**withheld** 45:2
46:12 124:6
**witness** 136:7
**wohlforth** 2:20

**wolfson** 2:2 3:1
4:7,13 7:18 8:7
8:15,23 9:10
10:14 13:6,21
13:25 14:2,8
14:11,15,20
15:6,15,18
16:16,24 17:19
18:4,22 19:17
23:11,24 27:15
29:16,23 30:3
30:7,25 33:2,6
34:5,10 35:9
36:13 37:11,19
37:22 39:1,6
40:8 41:3,25
43:1 44:9
45:25 46:18
47:7 48:24
49:19 51:3
52:10,25 53:4
53:9 54:7,12
54:18,23 55:2
55:15 57:1
58:9,14 59:25
61:25 63:13,23
65:10 66:12
68:2 69:8 70:4
72:13 74:14,18
75:12 76:14
77:20 79:2,19
80:1 81:14
82:1 83:23
84:19 85:13,22
85:25 86:3,9

86:14,18 88:13
88:18,21,25
89:4 91:4,12
91:22 92:4,17
92:23 93:6,10
94:15,19,24
95:2,24 96:23
97:2,9,14
98:17 99:19,22
99:24 100:19
101:4,6,11,23
102:10 103:20
105:5,25
106:10,13
107:11,18
108:7,13,21
109:17,24
110:3,8,20
111:7,11
112:15 113:4
113:18 115:5
117:16 118:5
119:16 120:3
120:16 121:10
122:7,18
123:16,20
124:22 125:20
126:13,20
127:12 128:2
128:14,17,22
129:14,24
130:14,20
131:1,4,18
132:8,16
133:18,23

134:5,20 135:1
135:7
**wondering**
74:19
**word** 22:12,13
23:3 35:6
36:20 132:20
**words** 37:5
45:11
**work** 35:13
39:25 40:3
44:22 47:16,18
48:8,20,20
50:4 51:2,2
52:7 61:23
81:23 102:20
105:14 116:1
118:21 125:10
132:12
**worked** 44:5
133:4
**working** 8:5
43:6 45:14
50:1 107:3
129:22 130:5
132:19,21
**works** 17:5
**world** 33:17
54:22 64:15
110:23 111:5
**worried** 109:18
**worse** 68:18
**write** 129:1
**writing** 129:7

**written** 32:23
**wrong** 44:19
83:5,6
**wrote** 129:21

| x |
|---|

**x** 80:8
**xio0115** 136:21
**xio1634** 136:21

| y |
|---|

**yeah** 14:20
55:15 62:20
65:10 66:12
76:14 85:7
87:10 91:12
94:19 112:16
113:18 119:16
127:22 129:11
**year** 24:22
27:13 57:8
63:17 94:1
95:12
**years** 10:5,12
13:3 39:22
92:2 109:20
**york** 2:5,5,13
2:13,16,16,20
2:20

| z |
|---|

**z** 123:19
**zoom** 2:10 3:3
41:18

Federal Rules of Civil Procedure

Rule 30


(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2)  Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.



DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

# EXHIBIT 2

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

December 28, 2023

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

      Re:    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
               **No. 2:22-cv-02632 (ES) (CLW)**

Dear Special Master Wolfson:

      Defendant Save On SP, LLC ("**SaveOn**") submits this letter pursuant to Your Honor's request during the status conference on December 21, 2023.

      The November 7 Order did not decide SaveOn's motion to compel Plaintiff Johnson & Johnson Health Care Systems, Inc. (with its affiliates, "**J&J**") to designate additional custodians as to five custodians. Dkt No. 165.[1] As SaveOn noted in the December 21 conference, after it

---

[1] The Court's November 7, 2023 Order required J&J to add six of seven custodians identified in that Order. Dkt No. 173 at 2. Where the Court denied requests for relief in the November 7 Order, it did so explicitly. Dkt. No. 173 at 2 ("SaveOn's request for relief set forth in Docket Entry No. 162 is DENIED"). In addressing SaveOn's motion regarding additional custodians, in contrast, the

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                                    Page 2

submitted its motion, J&J and third parties produced additional documents confirming the rele-

vance of four of those custodians: Scott White, Blasine Penkowski, Karen Lade, and Juliette

Deshaies.

This new evidence demonstrates that:

- **White** and **Penkowski** discussed whether SaveOn's services purportedly violate
  CarePath's terms and conditions—which goes to J&J's understanding of those
  provisions (which J&J unilaterally drafted), the disputed meaning of which is at
  the heart of J&J's claim that SaveOn induced plan members to violate them.

- **Lade** was involved with telling patients about accumulators, maximizers, and
  SaveOn in 2018 but did not tell them that those services violated CarePath's terms
  and conditions—which goes to J&J's claim that SaveOn's conduct violates those
  contract terms and SaveOn's defense that J&J's claim is a recently concocted,
  made-for-litigation position.

- **White** and **Penkowski** were counterparties for J&J on contracts with TrialCard,
  the J&J vendor that administered the CarePath Program, so had authority over
  CarePath's payments to patients via TrialCard—which goes to J&J's allegations
  that SaveOn caused it to make increased payments that injured it and threatened
  CarePath's financial viability and to SaveOn's defenses that J&J's own CarePath
  budget was the cause of these payments (not SaveOn) and that J&J could continue

---

Court stated that it "will require" J&J to add six additional custodians but said nothing regarding
the other five requested custodians.

Hon. Freda L. Wolfson                                                                    Page 3

making CarePath payments.

- **Penkowski** and **Lade** were involved with J&J's earliest formulation of a response to SaveOn's services—which goes to SaveOn's defense that J&J could have reduced or stopped payments to patients on SaveOn-advised plans but did not, thus failing to mitigate J&J's damages.

- **White** and **Deshaies** know that CarePath is a marketing program that generates a return for J&J by selling more drugs and raising drug prices (by making patients less cost sensitive to drug costs)—which goes to SaveOn's defenses that SaveOn's conduct does not threaten CarePath's financial viability, and that helping more patients enroll in CarePath financially benefits J&J (offsetting some or all of its alleged injury and damages), and any harm to CarePath is a commercial harm and not a public harm under the GBL.

The details follow.

**White** and **Penkowski** met with third party Archbow Consulting in January 2022, a few months before J&J filed this lawsuit, ████████████████████████████████

████████████████████████████. The document that shows this, Exhibit 1 (ARCHBOW_000443),[2] produced by Archbow, is the earliest document produced from before the filing of this lawsuit that reflects any understanding by J&J that SaveOn purportedly induced

---

[2] Archbow produced this document on October 30, 2023 following the Court conference on SaveOn's motion. ████████████████████████████
████████████████████████

Hon. Freda L. Wolfson                                                                    Page 4

breaches of CarePath's terms and conditions. The document's context strongly indicates that this was a made-for-litigation position. It is relevant when and why White and Penkowski formed that understanding on behalf of J&J, which they then shared outside of J&J.

**White** played key roles with CarePath's budget and J&J's "investment" in that program.



Ex. 2 (TRIAL-CARD_00002367).[3]

Ex. 3 (JJHCS_00140480) (attaching Ex. 4 (JJHCS_00140485)).[4]

Ex. 4 (JJHCS_00140485) (emphasis added). for drugs at issue, (i) countering allegations that SaveOn's conduct caused it to pay more in CarePath funds, Compl. ¶¶ 23, 115, and (ii) undermining any suggestion that SaveOn threatens CarePath's financial viability, *id.* ¶ 114. They also show that CarePath is a marketing program, countering J&J's claim that harm to CarePath is a public harm, necessary to its GBL claim. Compl. ¶¶ 113-15.

---

[3] All documents with the Bates TRIALCARD_ cited in this letter were produced by TrialCard on October 27, 2023—after the submission of SaveOn's motion to compel.

[4] All documents cited from J&J's production, with the Bates JJHCS_, were produced by J&J on December 22, 2023.

Hon. Freda L. Wolfson                                                                                    Page 5

**Penkowski** was integral to J&J's response to accumulators, maximizers, and SaveOn as

early as May of 2018—four years before the filing of this lawsuit.[5] ██████████████████

█████████████████████████████████████████████████████████████████████

██ Ex. 6 (JJHCS_00140929); *see also* Ex. 7 (JJHCS_00142063) (██████████████

████████████████████████████). ███████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████. Ex. 8 (TRIALCARD_00002400). But, ████████████

█████████████████████████████████████ countering J&J's allegation that

it believed such members were ineligible for CarePath. *See* Compl. ¶¶ 48, 108, and illustrating

J&J's failure to mitigate its purported damages. Aff. Defs. ¶¶ 24-29.

███████████████████████████████████████████████████████

███████████████████████████████. Ex. 9 (TRIALCARD_00003383); Ex. 10

(JJHCS_00142033). ██████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████. Ex. 9 (TRIAL-

CARD_00003383). Among other things, ██████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████ *Id.* at -384. This indicates that █████████████████████

█████████████ which tend to disprove J&J's allegations that SaveOn's conduct harms plan

---

[5] ██████████████████████████████████████████████████████████ Ex. 5
(JJHCS_00142781).

Hon. Freda L. Wolfson                                                    Page 6

members, Compl. ¶ 114, and that the so-called "SaveOnSP Program" is different from plan ben-

efit design, Compl. ¶¶ 1, 3. Further, it bolsters SaveOn's defense that J&J failed to mitigate its

damages, Aff. Defs. ¶¶ 24-29.

     **Lade** was involved with J&J's response to accumulators, maximizers, and SaveOn at least

early as May of 2017—and apparently did ***not*** believe that SaveOn's services violated CarePath's

terms and conditions in 2018. ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

Ex. 11 at -360 (JJHCS_00141359). ██████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ *Id.* This shows

that J&J was fully aware of accumulator and maximizer programs but decided not to reduce its

CarePath budget, failing to mitigate its purported damages, Aff. Defs. ¶¶ 27-28, ██████████

█████████████████ ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████, *see, e.g.*, Ex. 12 (JJHCS_00144460) (at-

taching Ex. 13 (JJHCS_00144463)), counter to J&Js allegations, *see* Compl. ¶¶ 48, 108. ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████ Ex. 13

(JJHCS_00144463). This is directly contrary to J&J's allegations that SaveOn could set those

terms. Compl. ¶¶ 3, 10.

     **Deshaies** helped formulate J&J's response to accumulators and maximizers, ██████████

Hon. Freda L. Wolfson                                                          Page 7

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████. Ex. 14 (JJHCS_00141440) (attaching Ex. 15

(JJHCS_00141442)).████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████ Ex. 15 (JJHCS_00141442). J&J has alleged that copay assistance is to benefit the pa-

tient, not a marketing program, Compl. ¶¶ 113-15, █████████████████████████████

███████████████████████████████████████████████████.

These documents confirm the relevance of these four individuals, whom the Special Mas-

ter should compel J&J to designate as custodians, running all agreed or ordered search terms from

April 1, 2016 to November 7, 2023. SaveOn stands on its prior motion as to Ernie Knewitz.

SaveOn appreciates the Court's attention to this matter.

Respectfully submitted,

/s/ E. Evans Wohlforth, Jr.
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Hon. Freda L. Wolfson                                                        Page 8

David Elsberg (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# EXHIBIT 3

# Robinson+Cole

E. Evans Wohlforth, Jr.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

January 16, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

>       Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
>              **No. 2:22-cv-02632 (ES) (CLW)**

Dear Special Master Wolfson:

On behalf of Defendant Save On SP LLC ("**SaveOn**"), we write to ask you to compel Plaintiff Johnson & Johnson Health Care Systems, Inc. (with its affiliates, "**J&J**") to fully comply with that portion of the Court's November 7, 2023 Order compelling J&J to add six additional document custodians and to run previously-agreed or ordered search terms over their documents. Dkt No. 173 at 2. Contrary to the Order, while J&J agreed to add the custodians, it refuses to run all search terms over their documents.

SaveOn moved the Court "to compel JJHCS to add the above twelve custodians and run ***all*** agreed-upon or Court-ordered search terms and any future agreed-upon or Court-ordered search terms over their files." Dkt No. 165 at 15 (emphasis added). On November 7, 2023, Judge

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                                    Page 2

Waldor granted that motion as to six of seven custodians, without limitation.[1] Yet J&J refuses

run all search terms during the current discovery period of April 1, 2016 to November 7, 2023

for those custodians, saying it will instead run only two search terms related to its CAP program

and only from January 1, 2022 to November 7, 2023. Ex. 1 (January 8-12, 2024 Email Chain).

 J&J's position is baseless. It argues that a different part of the Order, compelling it to run

three search terms related to its CAP program (the "CAP terms")[2] for all custodians from July 1,

2022 to October 30, 2023, Dkt. No. 166 at 5, somehow limits its searches for the six new custo-

dians to those same restricted terms and time period. Ex. 1 (January 8-12, 2024 Email Chain).

Not so. SaveOn's motion for new custodians, Dkt. No. 165, and its motion for the CAP terms,

Dkt No. 166, were separate. Judge Waldor resolved them separately. *Compare* Dkt. 173 at 2

(ruling "with regard to SaveOnSp's request for relief as set forth in Docket Entry No. 165") *with*

*id.* at 2-3 ("resolv[ing] the issues set forth in Docket Entry No. 166"). J&J has no basis to conflate

the two; the Court's ruling on SaveOn's custodians motion stands on its own.

 SaveOn's custodian motion asked that J&J run ***all*** search terms for new custodians, Dkt.

165 at 15, and Judge Waldor granted that motion as to the six custodians without limitation, Dkt

No. 173 at 2. Judge Waldor separately imposed a time period starting in 2022 for the CAP terms,

Dkt. 173 at 2-3, because SaveOn sought a similar time period in its CAP terms motion, Dkt. No.

166 at 5, but SaveOn sought no such limit in its custodians motion, Dkt. 165 at 15, and Judge

Waldor imposed none. Where the Court imposed time limits, Dkt. 173 at 2-3 (setting "temporal

scope" of CAP terms), or denied relief, *id.* at 2 ("SaveOnSP's request for relief set forth in Docket

---

[1] The parties agreed to add the following six custodians: Quinton Kinne, Daphne Longbothum,
William Shontz, Alison Barklage, John Hoffman, and L.D. Platt.

[2] The terms are: "CAPm" OR "CAPa" OR "adjustment program." Dkt No. 166 at 5.

Hon. Freda L. Wolfson                                                                    Page 3

Entry No. 162 is DENIED"), it did so expressly, but it did not do so here.

Even were the Order ambiguous (it is not), there is no basis to limit searches for these

custodians to the CAP terms or to exclude documents before 2022. J&J does not represent that

these individuals' relevant work was only on the CAP program and only in that time period. *See*

Dkt. No. 165 at 22-25. In its custodians motion, to the contrary, SaveOn cited evidence of their

broader relevance. *See, e.g.,* Dkt. No. 165 at 8-13 (██████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████ ).

Unsurprisingly, then, these custodians have relevant documents that do not contain the

CAP terms that J&J says it will use. Shontz, for instance, ██████████████████████████████

████████████████████████████████████████████████████████. Ex. 2

(JJHCS_00002339) ("██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████ ). This is strong evidence that J&J never believed that the existing CarePath language

proscribed SaveOn, devastating to the tortious interference claim. Solely running the terms

"CAPa," "CAPm," or "adjustment program," would exclude this plainly relevant email. So too

would it exclude ██████████████████████████████████, Ex. 3 (JJHCS_00011226),

and ████████████████████████████████████ Ex. 4 (JJHCS_00001206), both

of which demonstrate J&J's awareness of how SaveOn works and go towards SaveOn's mitiga-

tion defense. Aff. Defs. ¶¶ 24-29. J&J has no basis to restrict its searches of the custodians'

Hon. Freda L. Wolfson                                                        Page 4

documents to the three CAP terms.

These custodians also have relevant documents from before 2022, the date from which

J&J declares it will begin running its searches. ███████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████. Dkt. No. 165 Ex. 126 (JJHCS_00069171);

Compl. ¶¶ 93, 96, 102. ████████████████████████████████████████████████████

████████████████████████████████████ for a J&J drug at issue in this case. Ex.

5 (JJHCS_00104963); Compl. ¶ 91. ██████████████████████████████████████████

████████████████████████████. Ex. 6 (JJHCS_00142275). █████████████████████

████████████████████████████ Ex. 7 (ARCHBOW_000436), and █████████████████

████████████████████████████████. Ex. 8 (JJHCS_00156513). Such docu-

ments concerning cost support and J&J's responses to accumulators and maximizers go to J&J's

damages and SaveOn's mitigation affirmative defense. *See* Aff. Defs. ¶¶ 24-29. J&J has no basis

to exclude the six custodians' documents from before 2022.

SaveOn thus respectfully requests that, consistent with the Order, Your Honor compel

J&J to run all agreed-upon or court-ordered search terms for Shontz, Hoffman, Barklage, Long-

bothum, Kinne, Platt for the full discovery timer period of April 1, 2016 to November 7, 2023.

SaveOn appreciates the Court's attention to this matter.

Respectfully submitted,

/s/ E. Evans Wohlforth
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Hon. Freda L. Wolfson                                                        Page 5

David Elsberg (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# EXHIBIT 4



www.pbwt.com

December 22, 2023

Julia Long
(212) 336-2878

**BY EMAIL**

Elizabeth Snow, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*,
        *2:23-cv-02632 (ES) (CLW)* _____

Dear Elizabeth:

We write in response to your December 15, 2023 letter concerning our November 27, 2023 meet and confer, and further to our November 28 letter on the same topic.

### I.    SaveOnSP's Requests as to Terms & Conditions and Financial Information

In its December 15, 2023 letter, SaveOnSP asserts that "[n]othing in the Court's Order required SaveOnSP to further limit its request [on terms and conditions] as JJHCS suggests." Dec. 15, 2023 Letter from E. Snow to J. Long at 2. This assertion is refuted by the plain text of the Court's Order and Judge Waldor's direction at the October 30, 2023 conference. The Court's November 7, 2023 Order admonished SaveOnSP "to narrow the scope of its requests" with respect to "Docket Entry Nos. 146 (regarding CarePath terms and conditions) and 150 (seeking financial information and data on patient drug adherence)." ECF No. 173 at 1. Indeed, at the conference, Judge Waldor made clear that SaveOnSP ignored prior instructions from March 2023 "to review and modify [its requests related to terms and conditions] so that [SaveOnSP] [wasn't] asking for everything in the world." Oct. 30, 2023 Tr. at 43:2-5.

As you know, Judge Wolfson has directed SaveOnSP to provide JJHCS with narrowed requests as to both the terms and conditions and the financial information by Tuesday, December 26. In our call with Judge Wolfson, we were surprised to hear SaveOnSP assert that such a letter already was sent to JJHCS. The letter to which SaveOnSP appeared to refer during our call with Judge Wolfson did not narrow SaveOnSP's requests with respect to the terms and conditions requests, or even mention the financial information requests. In any event, JJHCS will promptly review SaveOnSP's narrowed requests when they are received. Please provide your availability to meet and confer so that the parties can discuss any remaining issues in advance of the January 24 conference before Judge Wolfson.

Elizabeth Snow, Esq.
December 22, 2023
Page 2

## II.        CAP Custodians

As you know, Judge Waldor's November 7 Order resolved SaveOnSP's motion requesting the addition of "CAP" custodians, i.e., individuals that SaveOnSP claimed were relevant due to their purported involvement in the CAP program.  Pursuant to that Order, Judge Waldor directed JJHCS to add six of the seven "CAP" custodians and further directed the parties to "meet and confer regarding the *identities* of the additional custodians and *to work out any necessary logistics*."  ECF No. 173 at 2 (emphasis added).  Judge Waldor further directed the parties to fashion "a search designed to capture documents wherein the terms 'CAP A', 'CAP M', or 'adjustment program' (or reasonable variations of those terms) are found in the same documents as the term 'SaveOn' (or reasonable variations / abbreviations)."  ECF. No. 173 at 2-3.

JJHCS has complied with that order.  *First*, following the November 27, 2023 meet and confer, JJHCS accepted SaveOnSP's proposal that JJHCS add Kinne, Longbothom, Shontz, Barklage, Hoffman, and Platt as CAP custodians.  *See* Nov. 28, 2023 Letter from J. Long to M. Nelson at 2.  *Second*, JJHCS also proposed two search strings for those custodians designed to conform specifically to the text of the November 7 Order and to capture documents related to the CAP program:

- ("CAPa" OR "CAPm" OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (case sensitive)

Despite JJHCS's strict compliance with Judge Waldor's instruction, SaveOnSP now claims that "only using the two search strings listed [above]" would purportedly "violate the Court's Order."  Dec. 15, 2023 Letter from E. Snow to J. Long at 1.  Apparently dissatisfied with the ruling and refusing to follow it, SaveOnSP even suggests that the "[t]he Court granted SaveOnSP's motion as to the six CAP custodians "without limitation as to time periods or search terms."  Dec. 15, 2023 Letter from E. Snow to J. Long at 1-2.  This argument has no support in the text of Judge Waldor's Order, and JJHCS declines to accept it.  Indeed, SaveOnSP's own motion to compel the addition of these custodians concedes that JJHCS's CAP program was not created until "in or around 2021."  ECF No. 165 at 7.  SaveOnSP cites to no authority in support of its characterization of Judge Waldor's order, because no such support exists.  Contrary to SaveOnSP's insistence, the November 7 Order only requires the parties to "work out any necessary logistics" concerning the additional custodians.  ECF No. 173 at 2.  JJHCS remains available to do so.

## III.       Document Refresh

JJHCS is fully complying with the Court's November 7 Order that calls for a "update" of "discovery responses (including productions), *without limitation*, through the date of this Order[.]"  ECF No. 173 at 3 (emphasis in original).  JJHCS already has begun to update its collection and review of documents—from both custodial and noncustodial sources—through November 7, 2023 using the parties' agreed-upon search parameters.   JJHCS intends to

Elizabeth Snow, Esq.
December 22, 2023
Page 3

substantially complete its production of these documents by the end of January 2024. Consistent with Judge Waldor's order and Judge Wolfson's further instruction at the December 21 conference, JJHCS also intends to supplement its Interrogatory responses. JJHCS will do so by the end of January 2024, as Judge Wolfson proposed, subject to SaveOnSP's confirmation that it will do the same. Please confirm.

We also address below several specific aspects of the "refresh" portion of Judge Waldor's order.

### A.    JJHCS Search Terms and Noncustodial Collections

In its December 15, 2023 letter, SaveOnSP requests confirmation that JJHCS will run "at a minimum" the search terms listed in Exhibit 1 to that letter. As outlined below, SaveOnSP's exhibit contains at least three errors. A corrected list of search terms that JJHCS has agreed to run appears in **Appendix 1** to this letter.

*First*, SaveOnSP's Exhibit 1 implies that JJHCS agreed to add Silas Martin as a full custodian. This is incorrect. As JJHCS has twice clarified, JJHCS ran specific search terms over Silas Martin's documents to satisfy its discovery obligations as to RFP No. 20. *See* Sept. 6, 2023 Letter from E. Shane to E. Snow at 2; Sept. 11, 2023 Letter from J. Long to E. Snow at 8. As part of JJHCS's ongoing refresh, JJHCS will re-run those Martin-specific search terms from July 2, 2022 to November 7, 2023. *See* Appendix 1.

*Second*, SaveOnSP's Exhibit 1 also incorrectly suggests that JJHCS agreed to run three Silas Martin-specific search terms over all custodians.[1] As outlined in the same September 6, 2023 letter, JJHCS agreed to run the following terms "over Silas Martin's custodial data, to satisfy its discovery obligations as to RFP No. 20." At no point did JJHCS agree to run these terms over other existing JJHCS custodians, and we will not do so.

*Third*, as noted above, SaveOnSP's Exhibit 1 ignores the Court's November 7 Order with respect to the "CAP" search terms. Prior to the October 30 conference, in an effort to avoid motions practice on the issue, JJHCS agreed to run the search string "CAPa" OR "CAPm"

---

[1] The three terms are as follows:

- (accumulator* OR maximizer* OR copay OR co-pay OR CAP) w/25 (impact* OR effect* OR patient* OR equity)

- (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit" OR NEHB* OR "Affordable Care Act" OR ACA OR Obamacare) w/25 (report* OR article* OR post* OR "white paper" OR WP OR analy* OR sponsor* OR partner*)

- (IQVIA OR Excenda OR "Analysis Group" OR Xcenda OR "The Eagle Force") w/25 (accumulator* OR maximizer* OR copay OR co-pay OR CAP)

Elizabeth Snow, Esq.
December 22, 2023
Page 4

or "adjustment program," without a SaveOnSP limitation, as to the then-existing custodians for the time period April 1, 2016 to July 1, 2022. *See* ECF No. 166 at 8. SaveOnSP then moved to compel JJHCS to "review documents from July 1, 2022 through October 30, 2023 hit by the search 'CAPm' OR 'CAPa' OR 'adjustment program.'" *Id.* at 5. As you know, the Court denied this request and instead directed JJHCS to review documents wherein the terms "CAPa" OR "CAPm" or "adjustment program" "***are found in the same documents as the term 'SaveOn' (or reasonable variations / abbreviations)***." ECF No. 173 at 2-3 (emphasis added).

In light of the Court's Order, we will run the two search terms as set forth above in bullets in Section II, for the period January 1, 2022 through November 7, 2023, for both the new "CAP" custodians and previously agreed-upon JJHCS custodians.[2] A complete list of the search terms that JJHCS has agreed to run appears in Appendix 1.

As to other categories of collections, including those from noncustodial sources, JJHCS reiterates that it will refresh its production of those documents and data consistent with JJHCS's prior representations and agreements between the parties. To the extent that SaveOnSP's Exhibit 2 attempts to expand the scope of these productions, JJHCS rejects that expanded scope. The Court's November 7 Order is clear: the order directs the parties to update discovery responses, including noncustodial productions, through the date of the Order, and otherwise does not expand the scope of either party's existing requests. *See* ECF No. 173 at 3.

### B. SaveOnSP's Search Terms and Noncustodial Collections

As you know, the November 7 Order required "both parties [to] update their discovery responses (including productions), *without limitation*" through the date of the Order. *See* ECF No. 173 at 3 (emphasis in original). In the November 28 letter, JJHCS requested that SaveOnSP confirm that: (1) SaveOnSP has completed a full collection of every custodian's documents through November 7, 2023; (2) SaveOnSP will supplement its production of documents using all previously agreed upon search terms for all previously agreed-upon SaveOnSP custodians through that date; and (3) SaveOnSP is making every effort to produce these documents expeditiously, so that the parties can complete fact discovery—including fact witness depositions—by April 25, 2024.

SaveOnSP has refused to do so. Instead, in its December 15 letter, SaveOnSP asserts that "***[s]ubject to JJHCS's confirmation of its production parameters***, SaveOnSP will

---

[2] Consistent with its representations to SaveOnSP and the Court, JJHCS will continue to run the term ("CAPa" OR "CAPm" OR "adjustment program") for previously agreed-upon custodians (Lindsey Anderson, Spilios Asimakopoulos, John Franz, Evelyn Hall, Brandon Jeffcoat, John King, Jeremy Mann, Katie Mazuk, Silviya McCool, Hattie McKelvey, Adrienne Minecci, Lauren Pennington, William Robinson III, Nidhi Saxena, Heather Schoenly, Carol Scholz, and Jasmeet Singh) for the period April 1, 2016 to July 1, 2022. *See* Dec. 1, 2023 Letter from J. Long to E. Snow at 1.

Elizabeth Snow, Esq.
December 22, 2023
Page 5

refresh its production running the search terms on Exhibit 4 for the custodians listed on that Exhibit through November 7." Dec. 15, 2023 Letter from E. Snow to J. Long at 2 (emphasis added).

At the outset, it is not appropriate for SaveOnSP to condition its compliance with the Court's November 7 Order on anything, let alone "JJHCS's confirmation of its production parameters," including, e.g., demands that JJHCS "identify how many documents [JJHCS's] terms generate for review." *Id.* SaveOnSP's equivocation is especially troubling given Judge Waldor's instruction that both parties update their "discovery responses . . . *without limitation*[.]" *See* ECF No. 173 at 3 (emphasis in original). Just as in the case of its motion relating to the so-called "Janssen Interrogatories" (ECF No. 162), SaveOnSP has incorrectly described the Court's order and then insisted that JJHCS comply with an order that does not exist. JJHCS will not do so.

Additionally, based on yesterday's colloquy between SaveOnSP and Judge Wolfson, we understand that SaveOnSP understands its obligation to update *all* of its discovery, including its production of documents and data collected from non-custodial sources. But to ensure that the record is clear, by January 5, 2023, please confirm that SaveOnSP will refresh its collection of documents listed in **Appendix 2** to this letter, including *inter alia* updating SaveOnSP's productions of its business plans and claims data through November 7, 2023. SaveOnSP also produced several categories of information for the time period April 1, 2016 to July 1, 2022, including SaveOnSP's patient list, call notes, client list, terminated client list, and drug lists. Please confirm that SaveOnSP will comply with Judge Waldor's order to update these discovery responses through November 7, 2023 as well. *See* Appendix 2.

Finally, SaveOnSP's Exhibit 4 omits nineteen search terms and phrases which SaveOnSP previously agreed to run through its custodial documents, including emails, text messages, mobile data, Chatter, Teams messages, hard drive data, and personal email collections, consistent with the Court's prior orders and SaveOnSP's prior representations. *See* ECF No. 144. The search terms with missing phrases appears in red font below.

- ("don't" OR "not" OR allowed OR never OR permit OR "can't" OR cannot) W/5 (mention OR disclose OR say OR inform* OR divulge) W/15 (SaveOn OR SaveOnSP OR SOSP OR Save On OR manufacturer* OR mfgr* OR program)

- (avoid* OR conceal*) AND (co-insurance OR variable OR copay OR "co-pay")

- (Business w/15 plan) OR "Business plan"

- (copay* OR co-pay* OR coins* OR co-ins* OR "cost share") W/15 (zero OR 0 OR $0 OR "no cost" OR "free of charge")

- (counter* OR strateg* OR "course correct" OR "bypass" OR respon* OR solution OR solv*) W/25 (manufacturer OR mfgr* OR Biogen OR Abbvie OR Amgen OR Vertex OR Exelixis OR Takeda OR Sanofi OR Novartis)

Elizabeth Snow, Esq.
December 22, 2023
Page 6

- (detect* OR evade* OR avoid* OR hide OR conceal*) AND (manufacturer OR mfgr* OR Biogen OR Abbvie OR Amgen OR Vertex OR Exelixis OR Takeda OR Sanofi OR Novartis)

- (detect* OR evade* OR hide OR conceal*) AND (co-insurance OR coinsurance OR variable)

- (manufacturer OR mfgr* OR Biogen OR Abbvie OR Amgen OR Vertex OR Exelixis OR Takeda OR Sanofi OR Novartis) w/25 (maximizer* OR accumulator* OR reduce* OR modif* OR change*)

- (Premera AND ("drug list" OR list)) W/25 (Janssen OR JJHCS OR Erleada OR Simponi OR Stelara OR Tremfya OR Zytiga)[3]

- (Premera AND (remove OR change)) W/25 (Janssen OR JJHCS OR Erleada OR Simponi OR Stelara OR Tremfya OR Zytiga)[4]

- "@express-scripts.com"[5]

- "@notionpartners.com"

- "strategy plan" OR (strategy /15 plan) OR "monthly plan" OR (monthly /15 plan) OR "transition plan" OR (growth /15 plan)

- Cobicistat

- Darunavir

- Emitricitabine

- manufacturer* w/10 (maximizer* OR accumulator*)

- Tenofovir Alafenamide

---

[3] SaveOnSP agreed to run this term over Melanie Jerred's custodial documents from July 1, 2022 to October 1, 2023.

[4] SaveOnSP also agreed to run this term over Melanie Jerred's custodial documents from July 1, 2022 to October 1, 2023.

[5] For the period December 2015 through August 31, 2016. Unless otherwise noted, the terms listed above do not have a date limitation that was more narrow than the previously applicable time period of April 1, 2016 to July 1, 2022.

14734540

Elizabeth Snow, Esq.
December 22, 2023
Page 7

- <span style="color:red">UPTRAVI OR selexipag</span>

     Please promptly confirm that (1) SaveOnSP did in fact run all of the terms listed in **Appendix 3** to this letter, as agreed by the parties, for the period April 1, 2016 to July 1, 2022; (2) SaveOnSP did in fact substantially complete production of all non-privileged, responsive documents hitting on all of these terms for the original time period; and (3) SaveOnSP will use this full set of terms for the purposes of its refresh collection.

*     *     *     *

     Please respond by January 5, 2023.  We remain available to meet and confer.

Very truly yours,

*/s/ Julia Long*
Julia Long

14734540

## APPENDIX 1

### JJHCS Search Terms[6]

**Search Terms for JJHCS Existing Custodians**

- **Custodians**: Lindsey Anderson, Spilios Asimakopoulos, John Franz, Evelyn Hall, Brandon Jeffcoat, John King, Jeremy Mann, Katie Mazuk, Silviya McCool, Hattie McKelvey, Adrienne Minecci, Lauren Pennington, William Robinson III, Nidhi Saxena, Heather Schoenly, Carol Scholz, and Jasmeet Singh

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB*

- (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate)

- "This program offer may not be used with any other coupon, discount, prescription savings card, free trial, or other offer"

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- "Save On" *(case sensitive)*

- "other offer" w/5 (accumulat* OR maximiz* OR "health plan*" OR insur*)

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

- (essential OR nonessential OR non-essential OR "non essential") w/50 ("Affordable Care Act" OR ACA OR Obamacare)

- (Fein OR Pembroke OR Adam OR "Drug Channels") AND afein@drugchannels.net AND (SaveOnSP OR accumulat* OR maximiz*)

- CAPa OR CAPm OR "adjustment program"[7]

---

[6] Unless otherwise noted, the time period applicable for the terms is April 1, 2016 to November 7, 2023.

[7] JJHCS agreed to run this term for April 1, 2016 to July 1, 2022 period only.

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)[8]

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" *(case sensitive)*[9]

## Search Terms for "CAP" Custodians

- **Custodians**:  Quinton Kinne, Daphne Longbothum, Allison Barklage, John Hoffman, William Shontz, and L.D. Platt

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)[10]

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" *(case sensitive)*[11]

## Silas Martin Search Terms

- **Custodians**:  Silas Martin

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP

- (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit" OR NEHB* OR "Affordable Care Act" OR ACA OR Obamacare) w/25 (report* OR article* OR post* OR "white paper" OR WP OR analy* OR sponsor* OR partner*)

- (accumulator* OR maximizer* OR copay OR co-pay OR CAP) w/25 (impact* OR effect* OR patient* OR equity)

- (IQVIA OR Excenda OR "Analysis Group" OR Xcenda OR "The Eagle Force") w/25 (accumulator* OR maximizer* OR copay OR co-pay OR CAP)

---

[8] January 1, 2022 to November 7, 2023.

[9] January 1, 2022 to November 7, 2023.

[10] January 1, 2022 to November 7, 2023.

[11] January 1, 2022 to November 7, 2023.

**APPENDIX 2**

**SaveOnSP's Non-Custodial Collections**

- Documents sufficient to show SaveOnSP's organizational structure, including organization charts

- SalesForce records for members of SaveOnSP-advised plans who were prescribed at least one Janssen Drug

- Data responsive to Request for Production No. 41: (1) manufacturer; (2) brand name; (3) national drug code; (4) recipient of manufacturer assistance; (5) patient identifier; (6) pharmacy for relevant drug fill; (7) pharmacy address; (8) prescription number; (9) prescription fill date; (10) number of unites; (11) days of supply; (12) unit of measure; (13) copay or coinsurance amount; (14) patient names; (15) patient dates of birth; (16) patient TrialCard enrollment numbers; and (17) Patient Identifier (Cardholder ID)

- Data responsive to Request for Production No. 42: (1) pharmacy name; (2) pharmacy address; (3) patient identification; (4) patient state of residence; (5) identifier of whether patient is on a SaveOnSP Program; (6) insurance/health plan name; (7) insurance/health plan member ID; (9) health/insurance plan group name; (10) insurance/health plan group number; (11) product description; (12) NDC; (13) product form; (14) product strength; (15) number of units; (16) days of supply; (17) unit of measure; (18) date of prescription fill; (19) patient copayment; (20) patient coinsurance payment; (21) patient deductible payment; (22) copay coupon/manufacturer assistance amount applied to the prescription cost; (23) patient names; (24) patient dates of birth; (25) patient TrialCard enrollment numbers; and (26) Patient Identifier (Cardholder ID)

- All agreements between SaveOnSP and Express Scripts or related entities

- List of patients who were entered into SaveOnSP's system and were prescribed at least one Janssen Drug (the "Patient List")

- List of SaveOnSP's call center locations

- List of clients who engaged SaveOnSP's services

- Final versions of Annual Reviews

- Documents sufficient to show the identities of patients whose claims were put on hold or rejected because the patient was not enrolled in the SaveOnSP program

- Documents sufficient to show the identities of patients whose claims were put on hold or rejected because the patient was not enrolled in the SaveOnSP program, but whose claim was later permitted to proceed after that patient was enrolled

- SaveOnSP's operating agreements and any amendments thereto

- SaveOnSP's business plans and "business plan-like" documents, including any draft business plans

- Breakwall Holdings LLC's operating agreements

- Video and audio recordings of training sessions, including daily "huddle" sessions

- All SaveOnSP Drug Lists

- Documents or data received from third parties as part of a formal production or otherwise

- All Master Services Agreements between ESI, SaveOnSP, and Prime Therapeutics

- List of former clients who terminated their agreements with SaveOnSP

- SaveOnSP Privacy and Data Security Policy

- May 2023 Updated Confidentiality and Nondisclosure Policy

# APPENDIX 3

## SaveOnSP Search Terms[12]

- "Project Recapture" OR "Rescue Study" OR "adherence data"

- "zero cost share" OR "$0 cost share"

- (("transfer*" OR reject* OR POS OR "point of sale" OR step edit*) W/15 pharm*) OR "Error Code 73" OR ((drug* OR med* OR fill*) W/15 (cover*))

- ((essential OR "non-essential" OR nonessential) W/10 (benefit*)) OR EHB* OR NEHB*

- ((patient* OR chang* OR mov* OR switch*) W/30 (new W/5 (drug* OR med* OR brand*)))

- ((SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP) w/15 ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen)) w/5 (revenue OR sales OR profits OR "return on investment" OR "ROI")

- <span style="color:red">("don't" OR "not" OR allowed OR never OR permit OR "can't" OR cannot) W/5 (mention OR disclose OR say OR inform* OR divulge) W/15 (SaveOn OR SaveOnSP OR SOSP OR Save On OR manufacturer* OR mfgr* OR program)</span>

- (Accredo OR "accredo.com") W/30 (agr* OR contract OR memor* OR fee* OR shar* OR relat*)

- (adher* OR complian* OR comply* OR discontinue*) W/10 (trend* OR rate* or stat*)

- <span style="color:red">(avoid* OR conceal*) AND (co-insurance OR variable OR copay OR "co-pay")</span>

- <span style="color:red">(Business w/15 plan) OR "Business plan"</span>

- (chang* or edit*) W/25 website

- (copay* OR co-pay* OR coins* OR co-ins* OR "cost share" OR "specialty med*" OR "specialty drug*" OR biolog* OR infus*) W/15 (OR transfer* OR reduc* OR saving*)

- (copay* OR co-pay* OR coins* OR co-ins* OR "cost share") W/15 (zero <span style="color:red">OR 0 OR $0</span> OR "no cost" OR "free of charge")

---

[12] Unless otherwise noted, these time period applicable for these terms is April 1, 2016 to November 7, 2023.

- (copay* OR co-pay* OR coins* OR co-ins* OR "out of pocket" OR OOP OR bucket* OR "ingredient cost") W/30 (infla* OR increase)

- (counter* OR strateg* OR "course correct" OR "bypass" OR respon* OR solution OR solv*) W/25 (manufacturer OR mfgr* OR Biogen OR Abbvie OR Amgen OR Vertex OR Exelixis OR Takeda OR Sanofi OR Novartis)

- (detect* OR evade* OR avoid* OR hide OR conceal*) AND (manufacturer OR mfgr* OR Biogen OR Abbvie OR Amgen OR Vertex OR Exelixis OR Takeda OR Sanofi OR Novartis)

- (detect* OR evade* OR avoid* OR hide OR conceal*) W/15 (manufacturer*)

- (detect* OR evade* OR hide OR conceal*) AND (co-insurance OR coinsurance OR variable)

- (ESI OR "Express Scripts" OR Evernorth) w/15 (fee* OR ((master w/2 agreement) OR assistance OR "copay card" OR "co-pay card" OR "savings card" OR enroll* OR accumulat* OR maximiz*))

- (exhaust* OR drain* OR complain*) w/ 15 (co-pay OR copay* OR support* OR cover*)

- (FirstView OR "First View") w/10 card

- (FirstView OR "First View") AND (credit w/2 card)

- (inc* W/10 (save* OR saving*) W/15 manuf* OR assist*

- (inclu* OR add* OR remov* OR Structure) W/10 (benefit* OR "drug list*")

- (manufacturer OR mfgr* OR Biogen OR Abbvie OR Amgen OR Vertex OR Exelixis OR Takeda OR Sanofi OR Novartis) w/25 (maximizer* OR accumulator* OR reduce* OR modif* OR change*)

- (Passthrough OR pass through* OR pass thru OR passthru OR passthrus)

- (patient* OR member*) W/5 (adher* OR complian* OR comply* OR discontinu*)

- (Premera AND ("drug list" OR list)) W/25 (Janssen OR JJHCS OR Erleada OR Simponi OR Stelara OR Tremfya OR Zytiga)[13]

---

[13] SaveOnSP agreed to run this term over Melanie Jerred's custodial documents from July 1, 2022 to October 1, 2023.

- (Premera AND (remove OR change)) W/25 (Janssen OR JJHCS OR Erleada OR Simponi OR Stelara OR Tremfya OR Zytiga)[14]

- (therap* or drug* OR medication) w/15 (adhere* OR continu* OR discontinu*)

- (therap* OR drug* OR medication) w/15 (transition OR "same class" OR "same category")

- "@express-scripts.com"[15]

- "@notionpartners.com"

- "Affordable Care Act" OR ACA

- "DARZALEX FASPRO" OR DARZALEX OR daratumumab OR hyaluronidase*

- "Intergovernmental Personnel Benefit Cooperative" OR IPBC OR (Rachel W/2 Harmon) OR rharmon@expressscripts.com OR ((presentation OR training OR video) W/5 (ESI OR "Express Scripts"))

- "Johnson & Johnson" OR "Johnson and Johnson"

- "Lash Group"

- "non-med* switch*" OR "nonmed* switch*" OR ((patient OR non-med*OR nonmed*) W/15 switch*) OR "switch rationale" OR "switch card" OR "economic switch*" OR (("force* or mandate*) w/5 switch*")"

- "open enrollment" OR ((summar* OR term) W/30 (program* OR plan* OR benefit* OR coverage* OR coinsurance OR deductible OR OOP OR "out-of-pocket"))

- "SaveOnSP Program Impacted" OR (Premera W/15 (article OR alert* OR news*)) OR ("close*" W/15 ("business OR "customer*"))

- "strategic steering committee" OR "steering committee" OR (strateg* w/10 (monthly OR meet*))

- "strategy plan" OR (strategy /15 plan) OR "monthly plan" OR (monthly /15 plan) OR "transition plan" OR (growth /15 plan)

- "Summary of Benefits"

---

[14] SaveOnSP agreed to run this term over Melanie Jerred's custodial documents from July 1, 2022 to October 1, 2023.

[15] For the period December 2015 through August 31, 2016.  Unless otherwise noted, the terms listed above do not have a date limitation.

- "Summary Plan"

- Accredo W/15 (transfer* OR assistance OR "savings card" OR "copay card" OR "co-pay card" OR enroll* OR accumulat* OR maximiz*)

- analy* OR "white paper*" OR "research" OR report* OR publication* OR review* OR article* OR study OR studies W/15 "specialty med*" OR "specialty drug*" OR biolog* OR infus* or accumul* OR maximizer* OR copay* OR co-pay* OR coins* OR co-ins*

- BALVERSA OR erdafitinib

- benchmark* /10 (plan OR state OR EHB OR essential* OR NEHB or nonessential* OR non-essential*)

- bi-weekly W/2 (call* OR meeting*)

- care W/2 path

- CarePath OR Carpath OR Carepth

- Cobicistat

- Darunavir

- EJR AND emilyjreckinger@gmail.com

- email W/10 template

- Emitricitabine

- ERLEADA OR apalutamide

- https://www.saveonsp.com* OR www.saveonsp.com* OR "reduce this exorbitant cost" OR "we offer an innovative specialty solution" OR "is committed to making expensive medications more affordable for companies" OR "modifying their plan design" OR "how will our plan see savings generated"

- IMBRUVICA OR ibrutinib

- its.jnj.com

- J&J or JNJ

- Janssen OR Jannsen OR Jansen OR Jannssen

- JJHCS OR JHCS or JJCHS OR JJHS

- manufacturer* w/10 (maximizer* OR accumulator*)

- OPSUMIT OR macitentan

- Prezcobix

- QuestEx

- Reject* w/2 73

- REMICADE OR infliximab

- RYBREVANT OR amivantamab*

- SIMPONI OR golimumab

- STELARA OR ustekinumab

- structure* W/4 (benefit* OR "drug list*")

- Symtuza

- Tenofovir Alafenamide

- TRACLEER OR bosentan

- TREMFYA OR guselkumab

- TrialCard OR "Trial Card"

- UPTRAVI OR selexipag

- Ventavis OR iloprost

- ZYTIGA OR abiraterone

# EXHIBIT 5



www.pbwt.com

February 14, 2024

Harry Sandick
Partner
(212) 336-2723
hsandick@pbwt.com

**By Email**

Hon. Freda L. Wolfson
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

Re:    **JJHCS's Opposition to SaveOnSP's February 7 Motion to Compel**
        *Johnson and Johnson Health Care Systems, Inc. v. Save On SP, LLC*
        **No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), we write in opposition to the February 7, 2024 letter motion by Defendant Save On SP, LLC ("SaveOnSP") seeking to "resolve a potential ambiguity" in the Court's November 7, 2023 Order (Dkt. No. 173). There is no ambiguity in the Court's Order. That Order directed JJHCS to fashion

> a search designed to capture documents wherein the terms 'CAP A,' 'CAP M,' or 'adjustment program' (or reasonable variations of those terms) are found in the same documents as the term 'SaveOn' (or reasonable variations / abbreviations).

There is nothing unclear about this instruction. In fact, as detailed below, SaveOnSP agreed **on the record** to accept the narrower string that the Court imposed. SaveOnSP should not be permitted to endlessly relitigate issues that the Court has ruled upon. Your Honor should deny SaveOnSP's motion and should leave Judge Waldor's clear ruling with respect to Dkt. No. 166 in place.

Hon. Freda L. Wolfson
February 14, 2024
Page 2

**I.    Judge Waldor Directed JJHCS to Review Documents Wherein the Terms "CAP A," "CAP M," or "Adjustment Program" Appear in the Same Document as SaveOnSP**

In its October motion, ███████████████████████████

████████████████████████████████████████████

███████████████    *See* Dkt. No. 166.

At the October conference, Judge Waldor considered SaveOnSP's request for the July 1, 2022 to present time period, and ultimately compelled JJHCS to review only those documents that hit the terms "CAPa" OR "CAPm" OR "adjustment program" *and* "the term 'SaveOn' (or reasonable variations / abbreviations)."  Dkt. No. 173 at 2–3.[1]  At the conference, SaveOnSP counsel made the same arguments it now makes to Your Honor about whether JJHCS should only review documents that mention SaveOnSP.  SaveOnSP's counsel repeatedly argued against the inclusion of the SaveOnSP modifier.  First, SaveOnSP asked that the Court require JJHCS to review all documents with any reference to "maximizers" or "accumulators," regardless of whether those documents mentioned SaveOnSP.  *See* Oct. 30. Tr. at 101:20–22.  Then he argued that the term "*and* SaveOn" should be replaced with "*or* SaveOn," which would have broadened the scope of the search to include literally every document that mentioned SaveOnSP.  *See id.* at 102:2–3.

Rejecting SaveOnSP's arguments, Judge Waldor repeatedly and unequivocally declined to order JJHCS to review documents that did not mention SaveOnSP.  On at least three

---

[1] JJHCS has followed this ruling to the letter.  In fact, SaveOnSP has never once objected to the "reasonable variations" of the search terms JJHCS proposed months ago to fulfill its discovery obligations.  *See* JJHCS Exhibit A (Nov. 28, 2023 Ltr. from J. Long to M. Nelson at 2); JJHCS Exhibit B (Dec. 22, 2023 Ltr. from J. Long to E. Snow at 3–4).

14915802

Hon. Freda L. Wolfson
February 14, 2024
Page 3

occasions, she ordered that the SaveOn search term be used. *See id.* at 101:10 ("THE COURT:

***I'm going to order that they search CAP A and CAP M and adjustment programs but related to***

***SaveOn.***" (emphasis added)); *id.* 102:11–15 (rejecting SaveOnSP's request for "***or***" SaveOn); *id.*

102:24–103:4 (ruling that the documents must be "***[r]elated to SaveOn. Qualified by SaveOn.***").

Judge Waldor similarly considered and ultimately rejected SaveOnSP's argument that, because

JJHCS employees "don't always use the word 'SaveOn' or 'SOSP'" and instead use the phrases

"ESI's maximizer" or "maximizer program[,]" those terms should be added to the CAP search

string. *Id.* at 105:16–106:6.[2]

On the record and after lengthy argument before Judge Waldor, SaveOnSP's own

counsel agreed that documents "talking about SaveOn" would be "sufficient" for SaveOnSP's

motion:

> THE COURT: What was the agreement you suspect we might have arrive at?
>
> MR. ELSBERG: Yeah, so this is what I'm thinking, Your Honor. We could -- we could agree to do what counsel just said except instead of saying within the same sentence, ***I think it's fair to say SaveOn and variations on it, if it's in the same document, we should get the document, because it's talking about SaveOn***. It doesn't need to be in the sentence. It could be three paragraphs later. It could be the next page.
>
> THE COURT: Okay. That's an agreement. You've just agreed to that.
>
> MR. ELSBERG: And, Your Honor, I would then say I hope that's going to be sufficient. And --
>
> THE COURT: Well, I don't want to talk about what-ifs or tomorrow.

---

[2]  SaveOnSP's argument that the "***and*** SaveOn" term would not lead to review of certain documents is not new. SaveOnSP presented this argument to Judge Waldor at the October 30 conference and Judge Waldor was unpersuaded. *See* Oct. 30 Tr. at 101:10–108:23.

Hon. Freda L. Wolfson
February 14, 2024
Page 4

>MR. ELSBERG: Fine.

>THE COURT: And let's not get hyperbolic about anything in terms of what that's going to uncover and produce because ***the points that's really being [made] here is there's going to be a stop at some point. There is got to be***. So let's just minimize -- minimize -- let's do the search that was suggested if CAP M and CAP A.

>MR. ELSBERG: And adjustment program.

>THE COURT: And adjustment programs.

>MR. ELSBERG: ***With variations of SaveOn in the document.***

>THE COURT: ***And that's an agreement. Right?*** Yes. Okay. Good.

>MR. ELSBERG: ***All right.*** Thank you, Your Honor.

Oct. 30 Tr. at 107:21–108:23 (emphasis added). SaveOnSP never sought clarification or timely moved for reconsideration of the issue before Judge Waldor, either immediately after the October 30, 2023 conference, or after Judge Waldor issued her order on November 7, 2023. Nor could it, given that it expressly agreed to accept that limitation. SaveOnSP's expansive reinterpretation of the Court's November 7 Order cannot be reconciled with the Court's November 7 Order, which is unambiguous.

Nor should Your Honor credit SaveOnSP's claim that there is some internal inconsistency in Judge Waldor's order in light of her ruling that the parties needed to update their discovery responses through November 7. First, the November 7 Order (issued after the October 30 colloquy above) maintained the SaveOnSP limiter with respect to CAP, even as Judge Waldor ordered a full refresh. Second, if SaveOnSP truly believed these rulings created an "ambiguity," SaveOnSP had no reason to delay raising this issue for more than three months.

We pause to note that this is not the first time that SaveOnSP has sought to relitigate Judge Waldor's prior orders based on incorrect and improbable interpretations of those orders.

14915802

Hon. Freda L. Wolfson
February 14, 2024
Page 5

Judge Waldor even recognized this at the October 30 conference—ironically, during SaveOnSP's

argument on this same issue, when she correctly predicted that SaveOnSP would try to return to

the well even after she rejected SaveOnSP's position. *See* Oct. 30 Tr. at 108:11–14 ("Let's not get

hyperbolic about anything in terms of what that's going to uncover and produce because the point[]

that's really being [made] here is there's going to be a stop at some point. There is got to be.").

Yet, rather than heeding this admonition by Judge Waldor, SaveOnSP is simply now redirecting

that same hyperbole to Your Honor. Your Honor should reject this approach to discovery and

deny SaveOnSP's motion.

## II. There Is No Basis to Revisit Judge Waldor's Ruling

In the alternative, SaveOnSP claims that "documents produced since the

October 30 conference would provide ample grounds to reconsider that decision." Despite the

parties' having met and conferred on the "CAP" search terms several times, SaveOnSP never

raised this argument with us. *See* JJHCS Exhibit C (Jan. 5, 2024 Ltr. from E. Snow to J. Long);

JJHCS Exhibit D (Jan. 11, 2024 Ltr. from J. Long to E. Snow). Had SaveOnSP raised the "new

evidence" with JJHCS prior to moving before Your Honor, JJHCS would have addressed the

purported relevance of the documents SaveOnSP now claims are "highly relevant" to the parties'

claims and defenses.

For example, although SaveOnSP claims that its requested search string is essential

to capture documents like Exhibit 3, which ███████ █ █ ████████████████████

████████████████████████████████████████████████████████████████████

███████ this is flatly incorrect. JJHCS already has agreed to produce—and indeed has

produced—monthly "CAP Reporting" through November 7, 2023 from non-custodial sources.

Hon. Freda L. Wolfson
February 14, 2024
Page 6

*See* JJHCS Exhibit E (JJHCS_00139021) and JJHCS Exhibit F (JJHCS_00139023). But even absent that agreement, the same documents would have been produced using the very search terms that Judge Waldor's November 7 Order is meant to capture, because since May 2022 these reports have expressly included the term "SaveOn SP," and so would be picked up by the search string Judge Waldor ordered. *See* JJHCS Exhibit G (JJHCS_00000404) (█████████████████████████████████████████████████████████████████████████). In other words, the more recent versions of the same report would be captured by the term ordered by Judge Waldor in the November 7 Order.

SaveOnSP's exhibits also belie its claims of "ample" new evidence on this point to revisit Judge Waldor's directive. There is nothing new about many of the documents on which SaveOnSP relies in its motion. Despite SaveOnSP's protestations that new productions "since the October 30 conference" warrant revisiting the issue, JJHCS first produced versions of the "highly relevant" monthly CAP reporting in Exhibit G (JJHCS_00000404) on March 3, 2023, nearly a year ago. SaveOnSP had every ability to review this production for seven months before Judge Waldor issued the November 7 Order.

SaveOnSP's remaining citations, relegated to a string cite in a footnote, fare no better. SaveOnSP baldly claims that these documents are "relevant to mitigation and acquiescence" but makes no arguments about how these documents support their motion. This omission is telling. For example, Exhibit 4 (JJHCS_00142279) has nothing to do with the claims or defenses in this litigation ████████████████████████████████████████████████████████████████████████████████████████

Hon. Freda L. Wolfson
February 14, 2024
Page 7

████████████████████  *See* Exhibit 4 (JJHCS_00142279).  It is thus of no consequence that this

document contains the search term "adjustment program" without a SaveOnSP limiter.

Similarly, Exhibit 11 (JJHCS_00139311), ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████  Simply put, nothing in Exhibit 11

supports SaveOnSP's purported defenses, nor does Exhibit 11 weigh in favor of additional search

terms.  Accordingly, Judge Waldor's "SaveOnSP" limiter should be kept in place, and the rulings

she made on this issue after extended oral argument should not be disturbed.

*        *        *

Having produced more than 56,000 pages of documents (excluding those produced

in native formats) on CAP issues and the discovery refresh since December 22, 2023, JJHCS did

what it was ordered to do.  At the October 30 conference, as memorialized in the Court's November

7 Order, Judge Waldor directed JJHCS to run the search terms "CAPa" OR "CAPm" or

"adjustment program" to capture all documents also containing the term "SaveOnSP" (or

reasonable variations thereof).  There is no ambiguity in the Court's Order and no reason to re-

open an issue that Judge Waldor directly considered and decided.  SaveOnSP already agreed ***on

the record*** to accept the limitation that the Court imposed and should be held to its agreement.

We appreciate Your Honor's attention to this matter, and we are available to answer

any questions.

Hon. Freda L. Wolfson
February 14, 2024
Page 8

Respectfully submitted,

*/s/ Harry Sandick*
Harry Sandick

cc:    Counsel for SaveOnSP

14915802

# EXHIBITS 6-9
# CONFIDENTIAL – FILED
# UNDER SEAL

# Exhibit 10

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Elizabeth Snow
Associate
212 390 9330
esnow@selendygay.com

January 29, 2024

**Via E-mail**

Julia Long
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jlong@pbwt.com

**Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Julia,

We write to propose search terms for the custodians discussed at and ordered to be added at during the January 24, 2024 conference in front of Special Master Wolfson.

*First*, as to Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, Alison Barklage, and L.D. Platt, Judge Wolfson ordered SaveOn to propose a set of search terms that relate to the CAP program and to discussions regarding J&J's response to SaveOn, accumulators, and maximizers, Tr. at 107:1-111:10, to be run for the full discovery period of April 1, 2016 through November 7, 2023, *id*. 108:21-109:18. SaveOn proposes these terms in Exhibit 1.

*Second*, as to Scott White, Blasine Penkowski, and Karen Lade, Judge Wolfson ordered J&J to add them as custodians for the full time period and ordered SaveOn to propose targeted search terms for each new custodian. Tr. 128:9-129:13, 131:22-132:13. SaveOn's proposes these terms in Exhibits 2-4.

*Third*, as to Savaria Harris and Jennifer De Camara, Judge Wolfson ordered that J&J add them as custodian and ordered that SaveOn propose a set of search terms to be run over their communications with third parties from January 1, 2021 through November 7, 2023. Tr. 54:12-23. SaveOn proposes these terms in Exhibit 5.

Julia Long
January 29, 2024

      Please let us know by February 2, 2024 if J&J will agree to run these proposed search terms. If J&J objects to running any search term, please provide hit counts that identify the total number of unique documents identified by SaveOn's proposed terms, both individually and in the aggregate.

      We reserve all rights and are available to meet and confer.

Best,

/s/ Elizabeth Snow

Elizabeth H. Snow
Associate

# Exhibit 1

**JJHCS v. SaveOnSP**
Search Terms for Quinton Kinne, Daphne Longbothum, William Shontz, John
Hoffman, Alison Barklage, and L.D. Platt
Case No. 2:22-cv-02632-JKS-CLW

| Search Terms |
|---|
| "essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB* |
| (essential OR nonessential OR non-essential OR "non essential") w/50 ("Affordable Care Act" OR ACA OR Obamacare) |
| "Save On" (case sensitive) |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) |
| "other offer" W/5 (accumulat* OR maximiz*) |
| CAPa |
| CAPm |
| "adjustment program" |
| (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP) |
| ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*) |

# Exhibit 2

## JJHCS v. SaveOnSP
Search Terms for Scott White
Case No. 2:22-cv-02632-JKS-CLW

| Search Terms |
| --- |
| "Save On" (case sensitive) |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) |
| "CAPa" OR "CAPm" OR "adjustment program" |
| (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate) |
| ("TrialCard" OR "Trial Card" OR TC) AND ((statement* /5 work) OR "SOW*" OR contract*) AND (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR JCP OR "Savings Program" OR "WithMe" OR (with w/2 me)) |

# Exhibit 3

**JJHCS v. SaveOnSP**
Search Terms for Blaine Penkowski
Case No. 2:22-cv-02632-JKS-CLW

| Search Terms |
| --- |
| "Save On" (case sensitive) |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) |
| "CAPa" OR "CAPm" OR "adjustment program" |
| (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate) |
| ("TrialCard" OR "Trial Card" OR TC) AND ((statement* /5 work) OR "SOW*" OR contract*) AND (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR JCP OR "Savings Program" OR "WithMe" OR (with w/2 me)) |
| (brand* OR finance* OR "SCG" OR (strategic /5 customer)) AND (accumulat* OR maximiz*) |
| ((lose* OR loss* OR (return w/4 investment) OR "ROI" OR (negative w/5 impact) OR (gross w/5 impact) OR (net w/5 impact) OR (GTN w/5 impact)) w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe")) AND ("Save On" OR Save-OnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR accumulat* OR maximiz*) |
| Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me)) |
| (($20,000 OR 20k OR $6,000 OR 6k) w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas*)) AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga) |

# Exhibit 4

**JJHCS v. SaveOnSP**
Search Terms for Karen Lade
Case No. 2:22-cv-02632-JKS-CLW

| Search Terms |
| --- |
| "Save On" (case sensitive) |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) |
| "CAPa" OR "CAPm" OR "adjustment program" |
| (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate) |
| (($20,000 OR 20k OR $6,000 OR 6k) w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas*)) AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga) |
| Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me)) |
| "other offer" w/5 (accumulat* OR maximiz* OR "health plan*" OR insur*) |
| (accumulator /5 prog*) |
| PBM* AND (copay* or co-pay*) AND deductible |
| (Max* /15 benefit*) AND ($20,000 OR $20K OR 20k) |

# Exhibit 5

**JJHCS v. SaveOnSP**
Search Terms for Savaria Harris & Jennifer De Camara
Case No. 2:22-cv-02632-JKS-CLW

| Search Terms |
|---|
| "Save On" (case sensitive) |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) |
| "other offer" W/5 (accumulat* OR maximiz* OR "health plan*" OR insur*) |
| (eligib* or ineligib*) AND "out-of-pocket cost" |
| (maximiz* OR optimiz*) AND ($6,000 OR "maximum program benefit") |
| ($6,000 OR $6k OR 6k OR $9,100 OR $8,900 OR (OOP) OR (out-of-pocket)) AND (Stelara OR Tremfya) |
| (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") AND ((term* w/3 condition) OR "T&C" OR "TNC" OR "other offer") |
| ("coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*") AND (accumulat* OR maximiz* OR "health plan*" OR insur* OR OR Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program" OR program) |

# Exhibit 11



www.pbwt.com

February 15, 2024

Julia Long
(212) 336-2878

**<u>VIA EMAIL</u>**

Elizabeth H. Snow, Esq.
Selendy Gay, PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,***
        **2:23-cv-02632 (JKS) (CLW)**

Dear Elizabeth:

We write in response to SaveOnSP's January 29, 2024 letter regarding search terms for the new custodians added during the January 24, 2024 conference before Judge Wolfson as well as new search terms for the "CAP" custodians.

## I.    CAP Custodians

SaveOnSP's January 29 letter requests that JJHCS add thirteen search terms that it contends "relate to the CAP program" and concern "discussions regarding J&J's response to SaveOn, accumulators, and maximizers" for Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, Alison Barklage, and L.D. Platt (the "CAP" Custodians) for the period April 1, 2016 to November 7, 2023. *See* Jan. 29, 2024 Ltr. from E. Snow to J. Long at 1.

SaveOnSP's proposed search terms go well beyond Judge Wolfson's order, which only required JJHCS to "use CAP-related search terms, including terms that capture discussions by the custodians prior to the creation of the CAP program." Dkt. No. 192 at 26. In keeping with the Court's order, JJHCS agrees to add the following search strings for the time period April 1, 2016 to November 7, 2023:

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*)

To the extent SaveOnSP also seeks the addition of the term "CAPa" OR "CAPm" OR "adjustment program," without a SaveOnSP limiter, this proposal is inconsistent with the Court's November 7, 2023 Order. (*See* Dkt. No. 173 at 2-3.) In addition, SaveOnSP now has made an additional motion

Elizabeth H. Snow, Esq.
February 15, 2024
Page 2

to Judge Wolfson to expand the scope of the November 7, 2023 Order. For the reasons discussed in JJHCS's opposition brief filed on February 14, SaveOnSP has no basis to relitigate the November 7, 2023 Order. For the avoidance of doubt, should Judge Wolfson expand the scope of the Court's November 7 Order with respect to the CAP search terms, JJHCS will adopt that application to the CAP custodians for the full time period as well.

As a compromise, JJHCS is prepared to run the following terms:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- "Save On" (*case sensitive*)

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- "other offer" W/5 (accumulat* OR maximiz*)

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

However, JJHCS declines to run the following search terms, which have no relation to JJHCS's CAP-related efforts. Indeed, SaveOnSP acknowledged the lack of any connection during the parties' February 12, 2024 meet and confer, when SaveOnSP claimed these terms describe SaveOnSP's "business model." As SaveOnSP well knows, the Court did not direct further discovery on that issue.

- "essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*

- (essential OR nonessential OR non-essential OR "non essential") w/50 ("Affordable Care Act" OR ACA OR Obamacare)

## II.     Scott White and Blasine Penkowski

SaveOnSP's letter also requests search terms to be added with respect to two apex custodians, Scott White and Blasine Penkowski. As to Mr. White and Ms. Penkowski, JJHCS agrees to run the following terms:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- "Save On" (*case sensitive*)

14922008

Elizabeth H. Snow, Esq.
February 15, 2024
Page 3

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

- (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate)

JJHCS declines to run the "CAP" search term over Mr. White's and Ms. Penkowski's documents without a SaveOnSP limiter, for the reasons previously discussed, but will agree to run the following search strings for the full April 1, 2016 to November 7, 2023 period consistent with the Court's November 7 Order:

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*)

JJHCS also declines to run the following search terms over Mr. White's and Ms. Penkowski's documents, but will search for and produce final contracts and statements of work with Trial Card from non-custodial sources consistent with its January 29, 2024 responses and objections to SaveOnSP's discovery requests:

- ("TrialCard" OR "Trial Card" OR TC) AND ((statement* /5 work) OR "SOW*" OR contract*) AND (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR JCP OR "Savings Program" OR "WithMe" OR (with w/2 me))

Finally, JJHCS declines to add certain proposed financial-related terms, which SaveOnSP requested only as to Ms. Penkowski's documents. As outlined in JJHCS's February 8, 2024 letter, and as discussed during the parties' February 12, 2024 meet and confer, SaveOnSP's insistence that JJHCS produce these documents is inconsistent with Judge Wolfson's February 6, 2024 Order. For example, as to issues concerning CarePath's budget, Judge Wolfson concluded that "[JJHCS] has the better argument" and "communications of budgetary decisions are not relevant to Defendant's defenses or Plaintiff's claims." Dkt. No. 192 at 19. Similarly, as to issues related to return on investment (or "ROI"), Judge Wolfson unambiguously rejected SaveOnSP's arguments, finding that JJHCS's "alleged harm is not related to the profitability of any Janssen drugs. Put differently, even if J&J and its [affiliates] ultimately derive profits . . . from selling the drugs at issue, that fact does not disprove Plaintiff's alleged harm in this case, either to itself or to the public." *Id.* at 22.

Elizabeth H. Snow, Esq.
February 15, 2024
Page 4

Accordingly, JJHCS will not run the following terms:

- (brand* OR finance* OR SCG OR (strategic w/5 customer)) AND (accumulat* OR maximiz*)

- ((lose* OR loss* OR (return w/4 investment) OR "ROI" OR (negative w/5 impact) OR (gross w/5 impact) OR (net w/5 impact) OR (GTN w/5 impact)) w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe")) AND ("Save On" OR Save-OnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR accumulat* OR maximiz*)

- Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me))

- (($20,000 OR 20k OR $6,000 OR 6k) w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas*)) AND (Balversa OR Darzalex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga)

As discussed during the parties' February 12, 2024 meet and confer, SaveOnSP's proposal of these terms demonstrates that SaveOnSP refuses to accept the Court's rulings on an issue already twice litigated—and on which JJHCS has twice prevailed.  JJHCS will not provide hit counts for these searches, as they seek documents that are beyond the scope of what Judge Wolfson ordered.  If SaveOnSP is willing to meet and confer in good-faith and to propose search terms related to the "small window" that Judge Wolfson opened with respect to budget and financials issues, JJHCS will run SaveOnSP's requested search terms and provide hit counts, as appropriate.  *See* Feb. 8, 2024 Ltr. From J. Long to E. Snow at 2-3.

**III.     Karen Lade**

SaveOnSP proposed thirteen search terms with respect to Ms. Lade's documents. JJHCS agrees to run the following search terms:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- "Save On" (*case sensitive*)

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

Elizabeth H. Snow, Esq.
February 15, 2024
Page 5

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

- (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate)

- "other offer" w/5 (accumulat* OR maximiz* OR "health plan*" OR insur*)

- accumulator w/5 prog*

      For the reasons cited above, JJHCS declines (1) to run the "CAP" search term over Ms. Lade's documents without a SaveOnSP limiter; and (2) to run financial-related search strings over Ms. Lade's documents.[1]  As with Mr. White and Ms. Penkowski, JJHCS agrees to run the following terms with respect to the CAP program for the April 1, 2016 to November 7, 2023 time period:

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*)

      As discussed at the parties' February 12, 2024 meet and confer, JJHCS will consider running two final Lade-specific search strings if those are modified to capture the documents SaveOnSP explained it was seeking.  JJHCS offers to run these modified terms, subject to SaveOnSP's agreement that these strings resolve SaveOnSP's requests with respect to these strings.

| SaveOnSP Proposal | JJHCS Modification |
|---|---|
| PBM* AND (copay* or co-pay*) AND deductible | PBM* w/50 ((chang* OR increas* OR decreas*) AND (copay* OR co-pay*) AND deductible) |

---

[1] JJHCS declines to run the following financial-related strings, which are beyond the scope of Judge Wolfson's order:

- (($20,000 OR 20k OR $6,000 OR 6k) w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas*)) AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga)

- Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me))

Elizabeth H. Snow, Esq.
February 15, 2024
Page 6

| (Max* /15 benefit*) AND ($20,000 OR $20K OR 20k) | (Max* /15 benefit*) w/50 ((chang* OR increas* OR decreas*) AND ($20,000 OR $20K OR 20k)) |
|---|---|

## IV.      Savaria Harris and Jennifer De Camara

Judge Wolfson ordered production from Ms. Harris and Ms. De Camara's custodial files on a single, narrow issue:  (1) documents and communications between the attorneys and any third-party entities **and** (2) that concern the "new terms and conditions for both its Stelara and Tremfya medications" implemented in January 2022.  Dkt. No. 192 at 13-14.  SaveOnSP's requested terms go well beyond these limitations.

For example, SaveOnSP continues to insist on documents with any reference in which "coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*" appear in the same document as the terms "Janssen" or "CarePath" (or variations thereof)—despite Judge Waldor explicitly rejecting that a narrower version of that term at the January 24, 2024 conference. Jan. 24 Tr. at 35:3-37:1 ("MR. SANDICK: Your Honor, Mr. Dunlap said a moment ago words to the effect of, we're not looking for every time that somebody mentioned discount or coupon, but the search terms that they proposed even after Judge Waldor ordered them to narrow their request are exactly what Mr. Dunlap just said -- JUDGE WOLFSON: It's not going to happen."). Accordingly, JJHCS declines to run the following terms:

- ("coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*") AND (accumulat* OR maximiz* OR "health plan*" OR insur* OR OR Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program" OR program)

- (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") AND ((term* w/3 condition) OR "T&C" OR "TNC" OR "other offer")

For the same reason, JJHCS also declines to run the following terms, which are not designed to capture documents concerning the "new terms and conditions for both its Stelara and Tremfya medications":

- Save On" (*case sensitive*)

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

14922008

Elizabeth H. Snow, Esq.
February 15, 2024
Page 7

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

      JJHCS agrees to the remainder of SaveOnSP's proposed terms for the period proposed by SaveOnSP (January 1, 2021 to November 7, 2023), so long as those documents also mention Stelara and Tremfya (as modified in red font below):

- "other offer" W/5 (accumulat* OR maximiz* OR "health plan*" OR insur*) AND (Stelara OR Tremfya)

- (eligib* or ineligib*) AND "out-of-pocket cost" AND (Stelara OR Tremfya)

- (maximiz* OR optimiz*) AND ($6,000 OR "maximum program benefit") AND (Stelara OR Tremfya)

- ($6,000 OR $6k OR 6k OR $9,100 OR $8,900 OR (OOP) OR (out-of-pocket)) AND (Stelara OR Tremfya)

      In addition, JJHCS will consider running the following terms for the period proposed by SaveOnSP (January 1, 2021 to November 7, 2023), subject to SaveOnSP's agreement that these modifications will resolve SaveOnSP's requests with respect to Ms. Harris and Ms. De Camara:

- (Stelara OR Tremfya) W/25 ((term* w/3 condition*) OR "T&C*" OR "other offer"))

              *     *     *

      JJHCS remains available to meet and confer with respect to SaveOnSP's proposed search terms.


      Very truly yours,


      */s/ Julia Long*
      Julia Long

14922008

# EXHIBIT 12



www.pbwt.com

January 22, 2024

Harry Sandick
Partner
(212) 336-2723
hsandick@pbwt.com

**By Email**

Hon. Freda L. Wolfson
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

Re:    **JJHCS's Opposition to SaveOnSP's January 16 Motion to Compel**
       *Johnson and Johnson Health Care Systems, Inc. v. SaveOnSP, LLC*
       **No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), we write in opposition to the January 16, 2024 letter motion by Defendant SaveOnSP, LLC ("SaveOnSP") seeking additional relief on the six "CAP custodians" that were the subject of previous motion practice and Judge Waldor's November 7, 2023 order.

Once again, SaveOnSP is making motions that misstate the record and seek the production of documents that go well beyond what was previously briefed and decided. SaveOnSP asked Judge Waldor to compel JJHCS to produce additional discovery relating to its "CAP program," beginning in 2021, including through custodians who SaveOnSP insisted were "likely to have unique documents relating to the CAP program." D.E. 165 at 7–8; D.E. 166 at 2–3. At oral argument on October 30, SaveOnSP explained that it sought the designation of "seven custodians who we specifically identified as related to the CAP program," as well as CAP-focused search terms covering a "year and a half," starting "in 2022"—as counsel acknowledged, "we are not talking about a very long time period here." Oct. 30 Tr. at 76:3–78:20. Judge Waldor granted

Hon. Freda L. Wolfson
January 22, 2024
Page 2

some but not all of the CAP-focused relief SaveOnSP sought.  She decided to "open the doors on

CAP," directed JJHCS to add six custodians "with respect to the CAP program," and even provided

search parameters and a time period of "January 1, 2022 through the present" for additional CAP

discovery.  *See* Oct. 30 Tr. at 56:1; D.E. 173 at 2–3.  JJHCS has followed this ruling to the letter.

       Yet now SaveOnSP claims that Judge Waldor actually wanted JJHCS to produce

documents from these "CAP custodians" not just about the CAP program, but on all manner of

topics going back to April 1, 2016—*five years* before the CAP program began.  SaveOnSP's

expansive reinterpretation is inconsistent with its own previous arguments and irreconcilable with

Judge Waldor's ruling.  Indeed, this is the third letter brief to Your Honor in which SaveOnSP has

claimed to construe Judge Waldor's intent while studiously avoiding any citation to the October

30 conference, at which these very issues were discussed for several hours.  That omission is

telling.  The full record shows that Judge Waldor granted limited relief as to the CAP program and

related custodians; there is no basis to disturb her ruling.  Accordingly, Your Honor should deny

SaveOnSP's motion.  SaveOnSP should focus its considerable energies not on meritless discovery

motions but rather on timely completing its own discovery obligations without further delay or

distraction.

    **I.**    **SaveOnSP Sought Narrow Relief Related to the CAP Program**

       SaveOnSP asked Judge Waldor to compel JJHCS to add certain custodians due to

their ostensible involvement in the "CAP Program," beginning "in or around 2021"—in particular,

because SaveOnSP insisted that documents about the CAP program were "crucial."  D.E. 165 at

7–8.  The relevant portion of SaveOnSP's motion is excerpted below:

Hon. Freda L. Wolfson
January 22, 2024
Page 3



*Id.* (highlighting supplied).

SaveOnSP then repeated this rationale as to the individual custodians—that each was "likely to have unique documents regarding the CAP program," which, again, was created "in or around 2021." *See, e.g.*, *id.* at 8 ("Kinne is likely to have unique documents regarding the CAP program"), 9 ("Longbothum is likely to have unique documents regarding the CAP program"), *et seq.* And SaveOnSP expressly linked its motion to a "forthcoming submission," i.e., a follow-on SaveOnSP motion on the same subject of CAP program discovery:

| SaveOnSP Motion, D.E. 165, at p. 7 | SaveOnSP Motion, D.E. 166, at pp. 2–3 |
|---|---|
| As described in more detail in a forthcoming submission, in or around 2021, JJHCS created its CAP program as part of an effort to respond to accumulators and maximizers… | In or around 2021, J&J created a program called a "cost adjustment program" or "copay adjustment program" ("CAP"), as part of an effort to "adjust" the amount of copay assistance payments that J&J made to patients who were on accumulators and maximizers…. |

Hon. Freda L. Wolfson
January 22, 2024
Page 4

## II.    Judge Waldor Addressed and Resolved Both CAP Motions Together, Ordering Narrower Relief than SaveOnSP Sought

Because SaveOnSP had filed two motions on the same topic, Judge Waldor chose to address them together, and took up SaveOnSP's requested "CAP custodians" during an extended colloquy about what JJHCS should produce "in terms of CAP." *See* Oct. 30 Tr. at 54:8–56:6 *et seq.*  As part of that colloquy, after SaveOnSP's counsel described his request for CAP-focused search terms, he characterized SaveOnSP's ask as modest and focused:

> MR. ELSBERG: …the CAP program started in -- thank you -- in 2022. So we are not talking about a very long time period here.
>
> THE COURT: So in terms of search terms for CAP A, CAP M, and adjustment programs, it's 2022 through today.
>
> MR. ELSBERG: Yes. It's 2022 through whatever date it is that they're seeking damages.

*Id*. at 77:4–12.  Judge Waldor then again sought to confirm the CAP relief SaveOnSP requested as to the so-called CAP custodians.  *Id.* at 77:16–17 ("THE COURT:  What about these seven custodians that we were talking about before?").  Notably, SaveOnSP's counsel did ***not*** say that the seven employees were relevant to issues other than CAP, or that Judge Waldor should compel JJHCS to produce documents from them going back five years before the CAP program began.  Just the opposite:  SaveOnSP's entire argument was that these employees should be added because they were "***specifically identified as related to the CAP program***," and asked Judge Waldor to grant the motion as to the "six custodians where we have strong evidence of their [involvement] in CAP."  *Id.* at 77:21–20 (emphasis supplied).

It is in this context—an extended discussion of CAP-related discovery across two overlapping motions—that Judge Waldor's November 7 order arose.  In that order, she directed

Hon. Freda L. Wolfson
January 22, 2024
Page 5

JJHCS to add "six of the custodians that SaveOnSp identified with regard to the CAP program,"

as SaveOnSP's counsel had specifically requested.  D.E. 173 at 2.  And she ordered JJHCS to run

specific "custodial document searches," directly tied to the CAP-related terms discussed at the

conference,[1] for the narrow time period of "January 1, 2022 to the present."  *Id.* at 2–3.

Thus, SaveOnSP's present insistence that the two motions were "separate" and that

"Judge Waldor resolved them separately" is refuted by the record.  This is why SaveOnSP

completely ignores the October 30 transcript when it insists that Judge Waldor intended to order

extremely broad discovery from these CAP custodians going back to 2016, five years before the

CAP program began.  One will search the October 30 transcript in vain for any evidence that this

was Judge Waldor's intent.  Instead, she said the opposite:  "I'm going to open the doors **on CAP**."

Oct. 30 Tr. at 56:1 (emphasis supplied).[2]

---

[1] Although it is not material to this dispute, for purposes of ensuring a clear record we note that SaveOnSP's letter incorrectly describes the search string Judge Waldor ordered JJHCS to run.  *See* SaveOnSP Jan. 16, 2024 Letter at 2 n.1.  Citing its own previous motion, D.E. 166, SaveOnSP claims that Judge Waldor ordered JJHCS to run the terms listed in footnote 2 of its letter ("CAPa" OR "CAPm" or "adjustment program").  That is not accurate.  In fact, Judge Waldor compelled a narrower search of only documents that hit those terms **and** "the term 'SaveOn' (or reasonable variations / abbreviations)."  D.E. 173 at 2–3.  This was another topic of discussion at the October 30 conference, with SaveOnSP's counsel repeatedly trying to change the "**and** SaveOn" to "**or** SaveOn" to vastly broaden the scope of the search, and Judge Waldor repeatedly and unequivocally declining to do so.  *See* Oct. 30 Tr. at 101:14–108:22.

[2] For this reason, SaveOnSP is not helped by its repeated reliance on a single line in D.E. 165, in which it asked the Court "to compel JJHCS to add the above twelve custodians and run all agreed-upon or Court-ordered search terms . . . over their files."  D.E. 165 at 15.  Simply put, Judge Waldor did not grant that relief.  Instead, she ordered JJHCS to produce documents from a smaller number of custodians "with regard to the CAP program" using the far narrower search parameters discussed above.

Hon. Freda L. Wolfson
January 22, 2024
Page 6

### III.    There Is No Basis to Expand the Scope of Judge Waldor's Ruling to Unrelated Topics and Irrelevant Time Periods

In the alternative, SaveOnSP seeks a do-over on the grounds that "these custodians have relevant documents that do not contain the terms that J&J says it will use."  SaveOnSP Jan. 16, 2024 Letter at 3.  The do-over attempt is improper and the justification is a strawman.  The real question—particularly now, as this case approaches its two-year anniversary—is whether the employees at issue would have *unique* relevant documents, i.e., documents that are not merely cumulative of what JJHCS has already produced from its sixteen full custodians.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (barring "unreasonably cumulative or duplicative" discovery); *Sugg v. Virtusa*, 2020 WL 6585872, at *2 (D.N.J. Nov. 10, 2020) (denying motion to compel where, as here, the existing custodians included "high-ranking executives in the company, as well as the heads of several relevant business groups," and the movant failed to show that additional requested custodians had "any unique knowledge").  And the answer to the question whether this review would lead to unique documents is no:  as JJHCS explained to SaveOnSP in March of 2023, when SaveOnSP first began asking for some of these employees to be added, we have no reason to believe that any of them would have unique, non-privileged documents or communications going back to 2016 that relate to the non-CAP issues in this lawsuit.[3]

---

[3] SaveOnSP itself has observed that, even though JJHCS has designated sixteen "full" custodians, most of its custodial documents came from the files of a core group of four employees most directly involved in the relevant issues.  *See* D.E. 165 at 2 (SaveOnSP complaining that "the vast majority" of JJHCS's production "came from only *four* custodians or from noncustodial files"); *id.* at 16 (JJHCS explaining that "[i]f anything, this reflects simply that the relevant knowledge about SaveOnSP's operations was limited to a small number of people at JJHCS, which is not surprising given SaveOnSP's self-professed goal of operating in the shadows").  This prospect of diminishing returns is presumably why Judge Waldor rejected SaveOnSP's blunderbuss demand for twelve more JJHCS custodians after the substantial completion deadline for document production had

Hon. Freda L. Wolfson
January 22, 2024
Page 7

None of the exhibits to SaveOnSP's letter support a different conclusion. For starters, SaveOnSP has had some of the documents it now cites for more than ten months—they were part of JJHCS's very first custodial production—demonstrating how stale SaveOnSP's arguments are. These are documents that could have been presented to Judge Waldor by SaveOnSP in support of its prior motions; SaveOnSP chose not to do so. Moreover, in most of the email chains cited by SaveOnSP, the email involving the CAP custodian at issue is fully redacted for privilege. *See* Ex. 3 at -227; Ex. 5 at -963–64; Ex. 6 at -275. There is, of course, no good reason to add ever-more custodians whose relevant communications are privileged and therefore will not be produced regardless. All else aside, the fact remains that every single JJHCS document now cited by SaveOnSP was already produced from the files of at least one existing JJHCS custodian.[4] Taken together, they confirm that SaveOnSP already has full coverage from JJHCS's existing custodians. There is no reason, other than harassment and delay, for SaveOnSP to demand more.

\*       \*       \*

It is time for this case to move forward, and JJHCS is committed to making that happen. We expect to substantially complete JJHCS's production of documents by the end of January, so that the parties can meet the Court's fact discovery deadline of April 25, 2024. Unfortunately, SaveOnSP has no intention of meeting that deadline. After our last appearance

---

already elapsed, and instead directed JJHCS only to produce additional discovery that was specific to the CAP program.

[4] SaveOnSP also attaches one document produced by a third party, ██████████████████████ ████████████████████████████████████t—who is already a "full" JJHCS custodian.

Hon. Freda L. Wolfson
January 22, 2024
Page 8

before Your Honor, SaveOnSP announced that it "intends" to substantially complete its own

refresh production "by March 31, 2024."  That obviously will not leave the parties with enough

time to complete all fact depositions by April 25 as the Court ordered.   And the delay is the point.

Every month that this litigation continues is another month that SaveOnSP is able to

misappropriate millions of dollars from JJHCS's patient assistance programs, harming patients

and JJHCS alike.  Indeed, SaveOnSP is only making a "refresh production" in the first place

because it renounced the parties' previous agreement on a cutoff date, and unilaterally insisted that

custodial discovery must be carried forward into the present.  *See, e.g.*, Oct. 30 Tr. at 97:14–98:2.

Having eagerly sought out that obligation, SaveOnSP cannot use it as an excuse for noncompliance

with yet another discovery deadline.

In light of this development, we request that Your Honor direct SaveOnSP to

substantially complete its production by February 15, so that depositions can proceed and fact

discovery can finally end.  SaveOnSP has ample resources to meet the Court's deadline if it focuses

its energies on compliance, and not on the endless re-litigation of meritless motions to compel.

We appreciate Your Honor's attention to this matter, and we are available to answer

any questions.

Respectfully submitted,

*/s/ Harry Sandick*
Harry Sandick

cc:     Counsel for SaveOnSP

# EXHIBIT 13

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

February 7, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

        Re:    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
               *No. 2:22-cv-02632 (JKS) (CLW)*

Dear Judge Wolfson:

        On behalf of Defendant Save On SP LLC ("**SaveOn**"), we ask you to resolve a potential

ambiguity in the Court's November 7, 2023 Order, Dkt. 173 ("the Order"), issued after the Octo-

ber 30, 2023 discovery conference, and compel Johnson & Johnson Health Care Systems, Inc.

(with its affiliates, "**J&J**") to refresh its document production from July 1, 2022 through Novem-

ber 7, 2023 using all search terms to which it previously agreed.

        The potential ambiguity is this: In the second paragraph of the portion of the Order ruling

on the issues raised in Docket Entry No. 166 ("Paragraph 2"), the Court compelled J&J to run

three search terms—"CAPa" OR "CAPm" OR "adjustment program" (the "CAP Terms")—to

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                                    Page 2

the extent that they "are found in documents as the term 'SaveOn' (or reasonable variations / ab-

breviations)," through November 7, 2023. Dkt. 173 at 2-3. In the next paragraph ("Paragraph 3"),

the Court ordered both parties, including J&J, to "update their discovery responses (including

productions)" *without limitation*," also through November 7, 2023. *Id.* at 3 (original emphasis).

Because J&J had already agreed to run the CAP Terms without a "SaveOn limiter" through July

1, 2022, Paragraph 3 compels it to run those same terms over its updated production without a

limiter. J&J argues, however, that Paragraph 2 allows it to run the CAP terms *with* a "SaveOn

limiter" for its updated production.

      Documents concerning the CAP program are key to SaveOn's defenses. ███████████

████, Dkt. 166 at 2, ████████████████████████████████████████████████████

████████████████████████████████████████████████ Dkt. 166 at 2. The CAP pro-

gram is highly relevant: If J&J identified patients on SaveOn-advised plans and paid them any-

way, then J&J failed to mitigate its purported damages. J&J did not disclose the existence of the

CAP program during the initial stages of discovery and did not propose any search terms to cap-

ture documents related to it. On September 29, 2023, after extensive meeting and conferring, J&J

agreed to run three search terms—"CAPa" OR "CAPm" OR "adjustment program"—for its cus-

todians over the originally agreed-upon discovery period of April 1, 2016 through July 1, 2022.

Ex. 1 (Sept. 29, 2023 Email from J. Long to E. Snow), notably, without the SaveOn limiter.

      Because J&J did not implement the CAP program until late 2021, SaveOn asked J&J to

run the CAP search terms from July 1, 2022 to the present.  Sept. 27, 2023 Email from E. Snow

to J. Long. J&J refused and SaveOn moved to compel in the joint letter filed as Docket Entry No.

166. At the October 30, 2023 discovery conference, Judge Waldor granted SaveOn's motion in

part and ordered J&J to run the CAP terms through the present, but only for documents in which

the term "SaveOn," or some variation, appeared. Dkt. 171 at 108. This ruling was memorialized in Paragraph 2 of the Court's November 7 Order.

But that was not the end of Judge Waldor's rulings during the October 30 conference. After Judge Waldor ruled on SaveOn's motion, J&J orally moved the Court to compel SaveOn to "update their searching through to the present." Dkt. 171 at 109. J&J made this oral motion without prior notice to SaveOn, without meeting and conferring, and without filing a joint letter seeking that relief. After discussion, Judge Waldor stated that both parties should update their productions through the present "*without limitation*." Dkt. 171 at 114. That ruling was memorialized in Paragraph 3 of the Court's November 7 order. Dkt. 173 at 3.

Because J&J raised the issue of a full refresh at the conference without notice to SaveOn or written submission to the Court, Judge Waldor was not made aware that the existing search terms that J&J had already agreed to run (and which it is obligated to run under Paragraph 3 of the Order) included both (1) variations on "SaveOn" and (2) the CAP Terms as independent terms. These terms make sense: Documents that explicitly mention SaveOn are likely to be relevant. Documents that mention the CAP program are also likely to be relevant (even if they do not explicitly mention SaveOn), because the entire purpose of the CAP program is to respond to SaveOn and other similar businesses. Further, by refusing to run the CAP Terms over documents that do not explicitly mention SaveOn, J&J has rendered Paragraph 2 of Judge Waldor's Order meaningless, because every single document covered by that Paragraph 2 of that Order would have already been captured by the standalone "SaveOn" search term, which J&J acknowledges it is obligated to run per Paragraph 3 of the Order.

Hon. Freda L. Wolfson                                                                              Page 4

Even if J&J's reading of the Order were correct, documents produced since the Octo-

ber 30 conference would provide ample grounds to reconsider that decision, as they show that

applying the "SaveOn" limiter to the CAP Term would exclude from discovery highly relevant

documents. Take, for example, Exhibit 2 (JJHCS_00146512). ██████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████ As another example,

consider Exhibit 3 (JJHCS_00145741). ████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████ Whether J&J has made such identifications since July 1, 2022 is also relevant

to mitigation and acquiescence. Both documents use one or more individual term of the CAP

Term, but not a variation of the term "SaveOn," so running the CAP Terms with a "SaveOn"

limiter would exclude such documents.[1] To ensure that such documents are captured in J&J's re-

freshed production, the Court should compel it to run the CAP Terms without any limitation.

---

[1] There are numerous other examples of such documents in J&J's productions since the October 30, 2023 conference. *See*, *e.g.*, Ex. 4 (JJHCS_00142279) (████████████████████████████████████████████████ ██████████████████████████████████); Ex. 5 (JJHCS_00156936) (████████████████ ██████); Ex. 6 (JJHCS_00146145) (████████████████████████████████████████████ ████████████████████████████); Ex. 7 (JJHCS_00150735) (████████████████████████████████████████████████); Ex. 8 (JJHCS_00140763) (████████████████████████); Ex. 9 (JJHCS_00141346) (████████████████); Ex. 10 (JJHCS_00145571) (████████████████████████); Ex. 11 (JJHCS_00139311) (████

Hon. Freda L. Wolfson                                                                          Page 5

SaveOn appreciates the Court's attention to this matter.

Respectfully submitted,

/s/ E. Evans Wohlforth, Jr.
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com


Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

---

█████████████████████████████████████████████████████████████████████████ ).

# EXHIBIT 14

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Friday, September 29, 2023 6:23:35 PM
**To:** Elizabeth Snow <esnow@selendygay.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>;
Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>;
Arrow, Sara (x2031) <sarrow@pbwt.com>; ~jgreenbaum@sillscummis.com
<jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>;
David Elsberg <delsberg@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW)

Counsel:

In an effort to reach compromise and reduce the number of disputes before Judge Waldor at our
October 30 conference, JJHCS agrees to run the terms "CAPa," "CAPm" and "adjustment program"
for the agreed-upon relevant time period, April 1, 2016 to July 1, 2022.

We hope that this will resolve the dispute.  We do not think a demand through to the present by
SaveOnSP is appropriate or feasible.  As JJHCS has no direct knowledge of SaveOnSP's conduct at
issue, JJHCS's documents primarily relate to its awareness and response to SaveOnSP, and this
demand amounts to a wholesale update of the production.  We note SaveOnSP has rejected even
several discrete updates, let alone a wholesale update, of its own production.

Please let us know if our proposed production resolves this dispute.

JJHCS will respond separately to your joint letter on SaveOnSP's interrogatories next week.

Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jlong@pbwt.com**

---

**From:** Elizabeth Snow <esnow@selendygay.com>
**Sent:** Wednesday, September 27, 2023 12:12 PM
**To:** Long, Julia (x2878) <jlong@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; ~delsberg@selendygay.com <delsberg@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>
**Subject:** JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW)

<mark>*Caution: External Email!*</mark>

Counsel,

Please find attached a joint letter that SaveOnSP intends to file with the Court. We ask that you please provide JJHCS's portion by end of day Monday, October 2. We reserve the right to revise in response to any revisions.

Thanks,

Elizabeth

**Elizabeth Snow**
Associate  [Email]
Selendy Gay Elsberg PLLC  [Web]
Pronouns: she, her, hers
------------------------------------------
+1 212.390.9330  [O]
+1 540.409.7257  [M]

---

Privileged/Confidential Information may be contained in this message. If you are not

the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.



www.pbwt.com

February 28, 2024

Harry Sandick
Partner
(212) 336-2723
hsandick@pbwt.com

**By Email**

Hon. Freda L. Wolfson
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

Re:    **JJHCS's Opposition to SaveOnSP's February 16 Motion to Compel**
       *Johnson and Johnson Health Care Systems, Inc. v. Save On SP, LLC*
       **No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), we write in opposition to the February 16, 2024 letter motion by Defendant Save On SP, LLC ("SaveOnSP") seeking to compel the addition of a search string—"CAPa" OR "CAPm" OR "adjustment program"—over the files of newly ordered custodians Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, L.D. Platt, Alison Barklage, Scott White, Blasine Penkowski, and Karen Lade.

SaveOnSP's litigation strategy is now clear.  It has taken the appointment of a Special Discovery Master as liberty to relitigate issues that it lost before the Magistrate Judge, and to seek reconsideration on issues it loses going forward before the Discovery Master.  SaveOnSP thereby seeks to tie this case up in discovery, which is to its advantage because the amount it misappropriates from manufacturer patient assistance funds every day far exceeds what it spends on litigation.  This motion specifically is the latest attempt by SaveOnSP to relitigate yet another issue squarely resolved by the November 7, 2023 Order, which made clear that CAP-related search

Patterson Belknap Webb & Tyler LLP    1133 Avenue of the Americas, New York, NY 10036    T 212.336.2000    F 212.336.2222

Hon. Freda L. Wolfson
February 28, 2024
Page 2

terms would only be used where they appeared in addition to SaveOnSP-related terms, to ensure

that discovery was limited to matters relevant to this case rather than encompassing matters

relevant to other maximizer programs from other companies.  *See* Dkt. No. 173 at 2–3.  SaveOnSP

brought this motion after it filed a nearly identical motion on February 7, 2024, requesting the

same relief with respect to a different set of custodians, even after JJHCS stated that if the Court

granted the February 7 motion, JJHCS would voluntarily apply the Court's ruling to the new

custodians.  *See* Ex. 1 (Feb. 15, 2024 Ltr. from J. Greenbaum to Hon. Wolfson at 8–9).  In other

words, this is the third time SaveOnSP has sought to force JJHCS to run this search term—twice

after Judge Waldor denied SaveOnSP's initial motion.

### I.    Judge Waldor Directed JJHCS to Review Documents Wherein the Terms "CAP A," "CAP M," or "Adjustment Program" Appear in the Same Document as SaveOnSP

JJHCS already has briefed Your Honor on the Court's November 7 Order (Dkt. No.

173).  As addressed at length in our prior submission, that Order directed JJHCS to fashion

> a search designed to capture documents wherein the terms 'CAP A,' 'CAP M,' or 'adjustment program' (or reasonable variations of those terms) are found in the same documents as the term 'SaveOn' (or reasonable variations / abbreviations).

Dkt. No. 173 at 2–3.

Despite SaveOnSP's continued insistence that "clarification" is required, there is

nothing unclear about this instruction.  Judge Waldor considered the same arguments SaveOnSP

now repackages for a third time, and repeatedly refused to order JJHCS to review documents that

did not mention SaveOnSP.  *See* Oct. 20, 2023 Tr. at 101:10 ("THE COURT: ***I'm going to order***

***that they search CAP A and CAP M and adjustment programs but related to SaveOn.***"

(emphasis added)); *id.* at 102:11–15 (rejecting SaveOnSP's request for "***or***" SaveOn (emphasis

Hon. Freda L. Wolfson
February 28, 2024
Page 3

added)); *id.* at 102:24–103:4 (ruling that the documents must be "***[r]elated to SaveOn.  Qualified***

***by SaveOn***." (emphasis added)).   Judge Waldor similarly considered and ultimately rejected

SaveOnSP's argument that, because JJHCS employees "don't always use the word 'SaveOn' or

'SOSP'" and instead use the phrases "ESI's maximizer" or "maximizer program[,]" those terms

should be added to the "CAP" search string.  *Id.* at 105:16–106:6.

This clear ruling defeats SaveOnSP's resurrection of the argument that using a

"SaveOn" limiter would "let J&J withhold [] documents" that do not reference SaveOnSP.  Judge

Waldor heard the same argument and was unpersuaded, concluding that the "SaveOn" limiter was

needed to tie SaveOnSP's requested discovery to this case rather than matters relevant to other

maximizer programs from other companies.  *See id.* at 83:10–84:21, 101:10–108:23.  As JJHCS

argued in October:

> [T]here [are] a . . . [l]ist of companies out there in the market that are in this
> category of maximizers or accumulators. . .  .   Some of them have been
> involved in other litigation with other pharmaceutical companies, but
> there's a long list of them, maximizers, accumulators, they are the subject
> of movements in various states to outlaw them as a matter of state law. . . .
> And while we're very focused on SaveOn and we've sued them because
> they think they're one of the most egregious actors in the industry, that
> doesn't change the fact that there are lots of other entities that are out there.
>
> Now, when you go looking for anything to do with CAP A or CAP M or
> adjustment program, none of [that] is limited to SaveOn.  And that is part
> of why it would pull in reams and reams of material and hits here.  They
> haven't chosen to limit their search terms any way.

*Id.* at 83:10–84:10.  It was in this context that Judge Waldor first raised the suggestion of a SaveOn

"qualifier."  *Id.* at 84:20–21.  SaveOnSP repeatedly sought to revisit Judge Waldor's qualifier, but

she rejected that attempt every time, as quoted above.  She also made her purpose clear:  "THE

COURT:  I'm trying to get where we bring in that which is . . . identifiable with SaveOn."  *Id.* at

Hon. Freda L. Wolfson
February 28, 2024
Page 4

103:15–18.  Judge Waldor ultimately memorialized this limitation in the November 7 Order, and there is no reasoned basis to depart from that ruling.  Indeed, even SaveOnSP's own counsel eventually acknowledged at the October 30 conference that documents "talking about SaveOn" would be "sufficient" to capture relevant documents concerning the CAP Program.  *Id.* at 107:21–108:23.  The same is true for the new custodians at issue here.

SaveOnSP also recycles its argument that there is some internal inconsistency in Judge Waldor's Order, in light of her ruling that the parties needed to update their discovery responses through November 7.  There is no inconsistency.  First, the November 7 Order (issued after the October 30 colloquy above) maintained the SaveOnSP limiter with respect to CAP, even as Judge Waldor ordered a full update of discovery.  Second, even if there was a conflict between the general "refresh" ruling and the specific ruling with respect to the "CAP" search string, the specific ruling as to the CAP program would govern due to the canon of construction that the "specific trumps the general."  *E.g.*, *Kotchetkova v. Garnet Health Med. Ctr.*, --- F. Supp. 3d ----, 2023 WL 6474630, at *4–5 (D.N.J. Oct. 5, 2023).  It is illogical to suggest that when Judge Waldor issued a general ruling asking the parties to update their productions, she was somehow making an implicit determination about the appropriate scope of CAP-related discovery, especially when she considered that specific issue the prior week and expressly ruled in the same order that CAP-related discovery must be limited to that also involving SaveOnSP.  Your Honor should reject SaveOnSP's endless attempts to reopen this issue and deny SaveOnSP's motion.

14925139

Hon. Freda L. Wolfson
February 28, 2024
Page 5

## II.    SaveOnSP's Claim that JJHCS "Would Effectively Run No New Search Terms Related to the CAP Program" Is Baseless

Your Honor's analysis can end here at point I.  But if Your Honor wishes to consider SaveOnSP's repetition of arguments that it previously lost, we also repeat our arguments in opposition here.  First, as in its February 7 Motion, SaveOnSP contends that JJHCS's position "render[s] the CAP Terms meaningless."  Feb. 16, 2024 Ltr. from E. Wohlforth to Hon. Wolfson at 3.  That is incorrect.  Relying on the November 7 Order, JJHCS already has reviewed and produced scores of documents hitting on the CAP search term *with* the SaveOnSP modifier. JJHCS will make an additional production of documents hitting on these search terms, and others, by the end of next week.  It is disingenuous of SaveOnSP to ignore these productions.

Second, SaveOnSP appears to take issue with the fact that JJHCS has since agreed to use other, broader search terms over the same custodial records, which effectively subsume the narrower CAP term.  This is an odd argument for SaveOnSP to advance.  The net result of the parties' negotiations *benefits* SaveOnSP:  JJHCS has agreed to review every document mentioning SaveOnSP (and reasonable variations thereof) and SaveOnSP's founders, as well as every document referring to SaveOnSP as "ESI's accumulator program or ESI's maximizer program," as SaveOnSP raised at the January 24, 2024 conference,[1] across not only the new custodians but all 26 custodians for the entire April 1, 2016 to November 7, 2023 time period.  That these broader search terms necessarily capture every instance in which the "CAP" program "[r]elate[s] to SaveOn," as Judge Waldor directed, does not prejudice SaveOnSP.

---

[1] *See* Jan. 24, 2024 Tr. at 108:4–6.

Hon. Freda L. Wolfson
February 28, 2024
Page 6

Indeed, what JJHCS has now agreed to do is a broader undertaking than even what Your Honor directed earlier this month.  For example, as to the CAP custodians, JJHCS only was required to "use CAP-related search terms, including terms that capture discussions by the custodians prior to the creation of the CAP program."  Dkt. No. 192 at 26.  In the interest of compromise, JJHCS agreed to use a broader set of search terms to fulfill this obligation, including SaveOnSP (and variations thereof) and variations of ESI (and Accredo) in proximity to maximizer and accumulator—at SaveOnSP's suggestion.  *See* Ex. 2 (listing agreed-upon search terms); Ex. 3 (Feb. 15, 2024 Ltr. from J. Long to E. Snow at 1–2).  JJHCS agreed to run eight of the eleven search terms that SaveOnSP requested to fulfill this obligation.  The only proposed search terms JJHCS declined to add were the "CAP" terms without a SaveOnSP modifier, based on Judge Waldor's November 7 Order, and two terms that SaveOnSP itself acknowledged had no connection to the JJHCS's CAP-related efforts.  *See* Ex. 2.

The same is true for Scott White, Blaine Penkowski, and Karen Lade.[2]  Here, too, JJHCS has agreed to run the vast majority of terms that SaveOnSP requested, which it ostensibly designed to capture relevant documents.  For Mr. White, JJHCS agreed to six of SaveOnSP's proposed terms, only declining to add the "CAP" terms without a SaveOnSP modifier (citing Judge Waldor's November 7 Order) and, as to the eighth term, suggesting instead that JJHCS search for and produce final contracts and statements of work with Trial Card from non-custodial sources.  As to Ms. Penkowski and Ms. Lade, JJHCS took the same approach, rejecting only search terms

---

[2] As Your Honor recognized, Mr. White and Ms. Penkowski are senior executives and thus directed only "[v]ery limited" search terms be used over their custodial documents.  Jan. 24, 2024 Tr. at 128:14–17.

14925139

Hon. Freda L. Wolfson
February 28, 2024
Page 7

designed to capture "return on investment" and "budget" documents that Your Honor specifically rejected and proposing modest revisions to other terms unrelated to the CAP program. *See* Ex. 2.

JJHCS's willingness to compromise should not be held out as a reason to depart from Judge Waldor's November Order. Otherwise, parties will be incentivized to dig in and never to compromise, lest their efforts be weaponized against them in the future. For a productive discovery process, the parties must embrace their wins and their losses—not endlessly relitigate the same issues in the hope that one judge will reverse another.

*      *      *

JJHCS has made every effort to comply with Judge Waldor's orders and the February 6 Order. SaveOnSP has taken a very different approach, forcing JJHCS to litigate the same issues over and over again.[3] For discovery to proceed in an expeditious and fair fashion, the Court's orders must be respected. SaveOnSP's latest motion should be denied.

We appreciate Your Honor's attention to this matter, and we are available to answer any questions.

Respectfully submitted,

*/s/ Harry Sandick*
Harry Sandick

cc:    Counsel for SaveOnSP

---

[3] *See also* SaveOnSP's Feb. 20, 2024 Motion for Clarification and Reconsideration.

14925139

# Exhibit 1

# Sills Cummis & Gross

**A Professional Corporation**

**The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Tel: (973) 643-7000
Fax (973) 643-6500**

**Jeffrey J. Greenbaum**
**Member**
**Admitted In NJ, NY**
**Direct Dial: 973-643-5430**
**Email:**
**jgreenbaum@sillscummis.com**

101 Park Avenue
28th Floor
New York, NY 10178
Tel: (212) 643-7000
Fax: (212) 643-6500

February 15, 2024

The Honorable Freda L. Wolfson
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

> **Re:** *Johnson & Johnson Healthcare Systems Inc. v. Save On SP, LLC*
> **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Plaintiff Johnson & Johnson Health Care Systems Inc. ("JJHCS"), we write pursuant to Your Honor's February 6, 2024 Order (the "Order") to provide an update on the discovery issues addressed at the January 24, 2024 conference, including agreements reached between the parties and the status of document productions.

Immediately following the Court's January 24 conference, JJHCS began to diligently collect documents—including from the five new custodians specifically addressed in the Order and other former JJHCS employees—to comply with Your Honor's directives. We also exchanged letters and conferred with counsel for SaveOnSP seeking to resolve any outstanding issues. In these discussions, however, a pattern emerged that has significantly inhibited the parties from making progress. Rather than accept and abide by the Court's rulings, SaveOnSP insists on disregarding any Orders that went against it. For example, SaveOnSP continues to insist that JJHCS collect and produce documents on subjects where the Order or prior rulings from Judge

The Honorable Freda L. Wolfson                                                    Page 2

Waldor *sustained* JJHCS's objections.  For example, SaveOnSP has demanded that JJHCS collect

and produce documents related to terms and conditions and ancillary financial documents on issues

squarely foreclosed by Your Honor's Order, including *inter alia*, documents and communications

related to CarePath's budget and return on investment (or "ROI").  SaveOnSP similarly demands

that JJHCS run a search for documents referencing "CAPa," "CAPm," or "adjustment program,"

without a SaveOnSP modifier, despite the November 7 Order squarely resolving the issue.  *See*

Dkt. No. 173 at 2–3.

JJHCS has clearly communicated its position to SaveOnSP:  the Order outlines with

specificity the categories of documents that JJHCS must produce.  Where the Court overruled our

objections, we will comply with the Order.  But SaveOnSP too must accept both its victories and

its losses.  Instead, SaveOnSP continues to insist on search terms that seeks documents concerning

the very issues it lost, pressing JJHCS to add new custodians on those issues, and even demanding

the parties re-open issues long decided by Judge Waldor.[1]  This approach forces JJHCS to litigate

the same issues over and over again.  For discovery to proceed in an orderly fashion, the Court's

orders must be respected.

I.    **Financial Documents**

SaveOnSP continues to demand JJHCS produce (1) "documents showing how J&J

sets the level of CarePath copay assistance funds that it offers patients, how it decides on the

CarePath budget including the factors that go into this decision, where that decision is made, and

the relevant communications about the budget" and (2) "documents and communications regarding

---

[1] For example, SaveOnSP recently renewed its request that JJHCS identify custodians, search for
and produce responsive documents, and provide interrogatory responses based on information
outside of JJHCS, including within Janssen.  SaveOnSP has repeatedly litigated this issue, and
Judge Waldor twice denied the broad relief SaveOnSP sought.  *See* Dkt. No. 127; Oct. 30, 2023
Tr. at 36:9–41:7; Dkt. No. 173 at 2.

CONFIDENTIAL
14918858

The Honorable Freda L. Wolfson                                                    Page 3

[JJHCS's] actual and projected return on investment," including "documents and communications regarding accumulators' and maximizers' effect on [JJHCS's] ROI." Jan. 29, 2024 Ltr. from E. Snow to J. Long at 1, 3. SaveOnSP's demands ignore Your Honor's Order.

As to issues concerning CarePath's budget, Your Honor concluded that "[JJHCS] has the better argument" and "communications of budgetary decisions are not relevant to Defendant's defenses or Plaintiff's claims." Dkt. No. 192 at 19. Accordingly, JJHCS has refused to run SaveOnSP's requested search terms related to this issue. The same is true for SaveOnSP's demands that JJHCS run search terms related to ROI, which Your Honor squarely rejected. *Id.* at 21 ("[W]hether Plaintiff's operation is ultimately profitable is not the relevant inquiry."). SaveOnSP has not explained any coherent basis for its refusal to recognize the limitations imposed by the Court.

At the February 12 meet and confer, SaveOnSP also raised for the first time that JJHCS should search for and produce documents that reflect whether more patients are taking Janssen drugs as a result of being on health plans advised by SaveOnSP—including "documents showing how all accumulators or maximizers affect J&J." *See* Feb. 14, 2024 Ltr. from E. Snow to J. Long at 2. Here, too, SaveOnSP's demands bear no rational relationship to the Court's "small window" of discovery on "documents that may reflect whether more patients are taking Janssen drugs as a result of being on the SaveOnSp Program." Dkt. No. 192 at 22. JJHCS remains available to meet and confer should SaveOnSP choose to follow Your Honor's directives and propose terms that are meant to comply with them.

## II.    Terms and Conditions

The parties continue to meet and confer on issues related to the drafting and enforcement of the CarePath terms and conditions ("T&Cs"), but the same problems have bogged

The Honorable Freda L. Wolfson                                                    Page 4

down discussions.  SaveOnSP's insistence on relitigating issues resolved by the Order is rendering resolution of these issues challenging.

At the January 24 conference, Your Honor directed JJHCS to "first search and determine whether any relevant documents can be found" concerning the drafting of the CarePath T&Cs from as early as 2009.  Dkt. No. 192 at 10.  JJHCS provided an initial update to Your Honor on February 2.  As detailed in that letter, JJHCS has identified "two non-attorney employees involved in CarePath's predecessor programs may have available email data from as early as 2010, based on document collection in unrelated proceedings that appear to have been retained."  Feb. 2, 2024 Ltr. from H. Sandick to Hon. Wolfson at 1.  Using search terms, JJHCS has identified a subset of those documents that may relate to the T&Cs of CarePath's predecessor programs.  At the parties' February 12 meet and confer, JJHCS agreed to consider SaveOnSP's proposed search terms to be run over these files.  JJHCS is moving as quickly as possible to search these documents and to make productions of responsive, non-privileged documents in compliance with the Court's order.  There is no present dispute on this issue.

As to enforcement of the T&Cs, however, SaveOnSP continues to demand documents concerning every instance in which JJHCS "investigated, enforced, or contemplated enforcing" its T&Cs.  Feb. 5, 2024 Ltr. from E. Snow to J. Long at 2.  This disregards Your Honor's Order.  At the January 24 conference, Your Honor made clear that SaveOnSP "[doesn't] need the underlying investigations" and instead should focus on producing "documents that reflect [whether JJHCS was] going to aggressively pursue these terms."  Jan. 24, 2024 Tr. at 39:12–24 (describing enforcement documents as being "of a more general nature than every individual one that they do").  Your Honor memorialized this ruling in the February 6 Order, "agree[ing] with Plaintiff's argument that it would be burdensome to search and produce records of each individual patient's call history," Dkt. No. 192 at 12–13, and limiting the scope of production to "documents reflecting

The Honorable Freda L. Wolfson                                                           Page 5

the company's enforcement instructions and policy, during the entirety of the agreed upon

discovery time frame (April 2016-November 2023), concerning eligibility criteria set forth in the

provision: 'may not be used with any other coupon, discount, prescription savings card, free trial,

or other offer.'" *Id.* at 13. But despite this very specific guidance, SaveOnSP still asserts that it is

entitled to production of documents reflecting "documents sufficient to show *the instances*" in

which JJHCS:

- "investigated, enforced, or contemplated enforcing CarePath eligibility standards, including without limitation for patients on Medicare, Medicaid or other government-provided insurance, or patients ineligible due to their age";

- "investigated, enforced, or contemplated enforcing the General T&Cs for purported violations of (1) the 'other offer' provision on any basis; (2) the 'other offer' provision as to entities J&J considered 'maximizers' or 'accumulators' (including without limitation OptumRx and PrudentRx); and (3) the 'other offer' provision as to SaveOn"; and

- "investigated, enforced or contemplated enforcing the General T&Cs for violation of any of the 'other offer,' 'coupon,' 'discount,' 'prescription savings card' and 'free trial' provisions."

SaveOnSP's new formulation of these requests, using the words "documents

sufficient to show the instances" provides no meaningful limitation here. SaveOnSP is again

ignoring both what Your Honor rejected (i.e., documents relating every single instance in which a

decision was made about whether to provide or terminate copay support to specific patients, which

is what SaveOnSP continues to seek) and the limited scope of discovery that Your Honor permitted

(production of instructions and policies on a defined issue).

Indeed, SaveOnSP has been unwilling to negotiate search terms specific to the

discovery that Your Honor ordered, i.e., "documents reflecting the company's enforcement

instructions and policy." Instead, it continues to demand search terms that bear no connection to

the permitted scope of discovery. For example, one of SaveOnSP's proposed terms would even

require JJHCS to review all documents in which the term "other offer" appeared in the same

document as "PrudentRx" or "OptumRx" (including variations thereof). Far from seeking

documents limited to JJHCS enforcement policies, this search seeks documents about separate companies unrelated to SaveOnSP that are not even part of this lawsuit and which SaveOnSP never requested at any point in the eleven months the parties litigated this issue. Again, SaveOnSP should not be permitted to disregard the Court's orders.

## III.    Discovery From New Custodians

JJHCS is diligently working to comply with Your Honor's Order and continues to collect and process custodial data from the five new JJHCS custodians (Scott White, Blasine Penkowski, Karen Lade, Savaria Harris, and Jennifer De Camara) added at the January 24 conference. To help resolve disputes, JJHCS also has voluntarily added a sixth custodian, Debbie Kenworthy, for the period June 1, 2023 to November 7, 2023.

Following SaveOnSP's proposal of search terms, the parties met and conferred for more than two hours on February 12 to negotiate search terms for each of these custodians. During the meet and confer, JJHCS agreed to run the vast majority of SaveOnSP's proposed search terms. JJHCS memorializes the status of the parties' agreement on various search terms in Exhibit 1 of the attached. But three sets of disputes have crystallized with respect to these new custodians.

### a.    *SaveOnSP's Insistence on Broad Searches That Your Honor Has Rejected*

JJHCS declined to run several terms that conflict with Your Honor's directive. These include: (i) search terms unrelated to CAP or mitigation issues for the CAP custodians; (ii) search terms designed to capture every instance of "coupon" or "discount" within the same document as the term "Janssen"; (iii) search terms designed to capture ROI and budget information generally. Your Honor squarely rejected discovery on these issues.

On the first issue, for the CAP custodians, Your Honor only ordered the production of documents relating to CAP issues for the time period April 2016 to November 2023. Dkt. No. 192 at 26. In so ruling, Your Honor rejected SaveOnSP's argument that the November 7 Order

CONFIDENTIAL
14918858

The Honorable Freda L. Wolfson                                                    Page 7

was meant to add the "CAP" custodians for all purposes and instead directed the use of "CAP-related search terms, including terms that capture discussions by the custodians prior to the creation of the CAP program." *Id.*  SaveOnSP disregards that limitation.

On the second issue, when JJHCS counsel raised the concern that JJHCS would be forced to look for "every time that someone mentioned discount or coupon," the Court stated that "[i]t's not going to happen."  Jan. 24, 2024 Tr. at 37:4–37:12 ("MR. SANDICK:  Your Honor, Mr. Dunlap said a moment ago words to the effect of, we're not looking for every time that somebody mentioned discount or coupon, but the search terms that they proposed even after Judge Waldor ordered them to narrow their request are exactly what Mr. Dunlap just said – JUDGE WOLFSON:  It's not going to happen.").  SaveOnSP disregards that limitation too.

As to the third issue, search terms aimed at investment and budget issues, SaveOnSP continues to demand that JJHCS run several financial-related search terms over Ms. Penkowski's and Ms. Lade's documents notwithstanding the Court's Order.  For example, as to issues concerning CarePath's budget, Your Honor concluded that "[JJHCS] has the better argument" and "communications of budgetary decisions are not relevant to Defendant's defenses or Plaintiff's claims."  Dkt. No. 192 at 19.  But SaveOnSP continues to insist on those documents from new custodians.  Similarly, as to issues related to ROI, Your Honor unambiguously rejected SaveOnSP's arguments, finding that JJHCS's "alleged harm is not related to the profitability of any Janssen drugs.  Put differently, even if J&J and its [affiliates] ultimately derive profits . . . from selling the drugs at issue, that fact does not disprove Plaintiff's alleged harm in this case, either to itself or to the public."  *Id.* at 22.  Again, SaveOnSP is unmoved by Your Honor's guidance.  For these reasons, as detailed in Exhibit 1, JJHCS will not run search terms that apply only to matters Your Honor has already rejected as an appropriate scope for discovery.

The Honorable Freda L. Wolfson                                                        Page 8

      *b.   SaveOnSP's Insistence on Discovery From Attorney Custodians That Disregards Limitations Imposed by Your Honor*

      The parties also have additional disputes that are specific to the J&J in-house counsel that Your Honor ordered to be added as custodians:  Savaria Harris and Jennifer De Camara.  Your Honor was very clear that discovery from these attorneys would be carefully circumscribed and limited to documents and communications (1) between the attorneys and any third-party entities (2) that concern the "new terms and conditions for both its Stelara and Tremfya medications" implemented in January 2022.  *Id.* at 13–14.  SaveOnSP appears willing to accept the first limitation, but insists on disregarding the second.  Specifically, SaveOnSP continues to insist on documents with any reference to coupon or discount, and without any connection to Stelara and Tremya.  JJHCS has refused to run such searches and will abide by the scope of discovery that Your Honor ordered.

      *c.   SaveOnSP's Insistence on CAP Searches That Disregard Limitations Imposed by Judge Waldor*

      The parties also are at impasse on the addition of search string "CAPa" OR "CAPm" OR "adjustment program" without a "SaveOn" limiter for the new custodians.  This is another example of SaveOnSP refusing to abide by prior orders, in this case one issued by Judge Waldor.  This issue raised by SaveOnSP is squarely resolved by the Court's November 7, 2023 Order, which made clear that CAP-related terms would only be searched where they appeared in addition to SaveOnSP-related terms, to ensure that discovery was limited to matters relevant to this case rather than encompassing matters relevant to other maximizer programs from other companies.  *See* Dkt. No. 173 at 2–3.  At any rate, whether to run this string will soon be *sub judice*, as it is at issue in SaveOnSP's recent motion for "clarification" of the Court's November 7 Order.  *See* Feb. 7, 2024 Mot. from E. Wohlforth to Hon. Wolfson.  JJHCS opposes reopening this long-decided issue.  Indeed, as set forth in JJHCS's recent submission, SaveOnSP counsel

The Honorable Freda L. Wolfson                                          Page 9

previously expressly accepted the resolution set forth in Judge Waldor's order, which SaveOnSP now apparently seeks to overturn. *See* Feb. 14, 2024 Opp. from H. Sandick to Hon. Wolfson. Should Your Honor overrule our objection, reverse Judge Waldor's determination, and expand the scope of the Court's November 7 Order with respect to the CAP search terms, JJHCS will adopt that application to the new custodians at issue.

JJHCS will continue to meet and confer in good faith with SaveOnSP on these issues. Following the parties' February 12 meet and confer, SaveOnSP agreed to consider narrowing several of the remaining terms at issue. JJHCS also provided SaveOnSP with a counterproposal as to several outstanding terms. JJHCS will respond to SaveOnSP's counterproposal, once received, on any remaining terms.

*     *     *

We are reporting these issues in light of Your Honor's request for an update, but we are not asking for any rulings at this time. In our view, the parties should continue to meet and confer on appropriate search terms for the topics on which Your Honor permitted discovery. If the parties cannot reach compromise, we will present any remaining issues to Your Honor for resolution.

## IV.    Upcoming Issues

JJHCS continues to meet and confer in good faith with SaveOnSP in connection with several other ongoing discovery issues. Since the January 24 conference, JJHCS has identified several deficiencies with SaveOnSP's Supplemental Responses and Objections to JJHCS's Interrogatories. This is a significant issue, which relates to SaveOnSP's repeated failure to provide a clear and comprehensive accounting of all instances in which its employees lied to drug manufacturers in furtherance of their scheme. Most pressing is SaveOnSP's failure to comply with Your Honor's January 31 deadline to update and verify its supplemental interrogatory

The Honorable Freda L. Wolfson                                                    Page 10

responses in violation of Federal Rule of Civil Procedure 33(b)(5).  JJHCS has raised other several

concerns with SaveOnSP concerning the substance of SaveOnSP's supplemental responses.

JJHCS will promptly raise these issues before Your Honor in the near future.

                                        Respectfully submitted,

                                        */s/ Jeffrey J. Greenbaum*

                                        JEFFREY J. GREENBAUM

cc:    All Counsel
       (*by email*)

# Exhibit 2

| "CAP" Custodian Search Terms | |
|---|---|
| **Custodians:** Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, Alison Barklage, and L.D. Platt<br><br>**Date Range:** April 1, 2016 to November 7, 2023 | |
| **SaveOnSP's Proposed Terms** | **JJHCS's Position** |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" | Accepted |
| "Save On" (*case sensitive*) | Accepted |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") | Accepted |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) | Accepted |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) | Accepted |
| "other offer" w/5 (accumulat* OR maximiz*) | Accepted |
| (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP) | Accepted |
| ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*) | Accepted |
| "CAPa" OR "CAPm" OR "adjustment program" | Consistent with the Court's November 7 Order, JJHCS will run this term with a SaveOnSP limiter. *See* Dkt. No. 173 at 2–3. |
| "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* | JJHCS declines to run this term, which SaveOnSP acknowledged as no connection to JJHCS's CAP-related efforts. |
| (essential OR nonessential OR non-essential OR "non essential") w/50 ("Affordable Care Act" OR ACA OR Obamacare) | JJHCS declines to run this term, which SaveOnSP acknowledged as no connection to JJHCS's CAP-related efforts. |

| **Scott White Search Terms** | |
|---|---|
| **Date Range:** April 1, 2016 to November 7, 2023 | |
| **SaveOnSP's Proposed Terms** | **JJHCS's Position** |
| "Save On" (*case sensitive*) | Accepted |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") | Accepted |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" | Accepted |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) | Accepted |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) | Accepted |
| (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate) | Accepted |
| "CAPa" OR "CAPm" OR "adjustment program" | Consistent with the Court's November 7 Order, JJHCS will run this term with a SaveOnSP limiter. *See* Dkt. No. 173 at 2–3. |
| ("TrialCard" OR "Trial Card" OR TC) AND ((statement* /5 work) OR "SOW*" OR contract*) AND (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR JCP OR "Savings Program" OR "WithMe" OR (with w/2 me))[1] | JJHCS declines to run this term, but has agreed to search for and produce final contracts and statements of work with Trial Card from non-custodial sources. |

---

[1] SaveOnSP recently proposed a variation of this term.  JJHCS will respond to that proposal this week.

14937395

| **Blasine Penkowski Search Terms** | |
| --- | --- |
| **Date Range:** April 1, 2016 to November 7, 2023 | |
| **SaveOnSP's Proposed Terms** | **JJHCS's Position** |
| "Save On" (*case sensitive*) | Accepted |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") | Accepted |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" | Accepted |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) | Accepted |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) | Accepted |
| (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate) | Accepted |
| "CAPa" OR "CAPm" OR "adjustment program" | Consistent with the Court's November 7 Order, JJHCS will run this term with a SaveOnSP limiter. *See* Dkt. No. 173 at 2–3. |
| ("TrialCard" OR "Trial Card" OR TC) AND ((statement* /5 work) OR "SOW*" OR contract*) AND (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR JCP OR "Savings Program" OR "WithMe" OR (with w/2 me))[2] | JJHCS declines to run this term, but has agreed to search for and produce final contracts and statements of work with Trial Card from non-custodial sources. |

---

[2] SaveOnSP recently proposed a variation of this term.  JJHCS will respond to that proposal this week.

3

| **Blasine Penkowski Search Terms** | |
| --- | --- |
| **Date Range:** April 1, 2016 to November 7, 2023 | |
| ((lose* OR loss* OR (return w/4 investment) OR "ROI" OR (negative w/5 impact) OR (gross w/5 impact) OR (net w/5 impact) OR (GTN w/5 impact)) w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe")) AND ("Save On" OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR accumulat* OR maximiz*) | Consistent with the February 6 Order, JJHCS will not search for or review documents concerning JJHCS's "return on investment," or variations thereof. *See* Dkt. No. 192 at 22. |
| Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me)) | Consistent with the February 6 Order, JJHCS will not search for or review documents concerning "communications of budgetary decisions." Dkt. No. 192 at 19. |
| (($20,000 OR 20k OR $6,000 OR 6k) w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas*)) AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga) | Consistent with the February 6 Order, JJHCS will not search for or review documents concerning "communications of budgetary decisions." Dkt. No. 192 at 19. |
| (brand* OR finance* OR "SCG" OR (strategic /5 customer)) AND (accumulat* OR maximiz*) | JJHCS declines to run this term, which would return any document with "finance" (or variations thereof) in the same document as "accumulator" or "maximizer." In addition, because Ms. Penkowski oversees the "Strategic Customer Group," these terms would result in review of every document in which "Strategic Customer Group" or "SCG" appear in a signature block, effectively asking JJHCS to review all documents about "accumulators" or "maximizers." |

4

| Karen Lade Search Terms | |
|---|---|
| **Date Range:** April 1, 2016 to November 7, 2023 | |
| **SaveOnSP's Proposed Terms** | **JJHCS's Position** |
| "Save On" (*case sensitive*) | Accepted |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") | Accepted |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" | Accepted |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) | Accepted |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) | Accepted |
| (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate) | Accepted |
| "other offer" w/5 (accumulat* OR maximiz* OR "health plan*" OR insur*) | Accepted |
| (accumulator /5 prog*) | Accepted |
| "CAPa" OR "CAPm" OR "adjustment program" | Consistent with the Court's November 7 Order, JJHCS will run this term with a SaveOnSP limiter. *See* Dkt. No. 173 at 2–3. |
| PBM* AND (copay* or co-pay*) AND deductible | JJHCS will run the following term, as agreed to by SaveOnSP:<br><br>PBM* <span style="color:red">w/50 ((chang* OR increas* OR decreas*) AND</span> (copay* OR co-pay*) AND deductible<span style="color:red">))</span> |

5

| **Karen Lade Search Terms** | |
| --- | --- |
| **Date Range:**  April 1, 2016 to November 7, 2023 | |
| (Max* /15 benefit*) AND ($20,000 OR $20K OR 20k) | JJHCS will run the following term, as agreed to by SaveOnSP:<br><br>(Max* /15 benefit*) w/50 ((chang* OR increas* OR decreas*) AND ($20,000 OR $20K OR 20k)) |
| Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me)) | Consistent with the February 6 Order, JJHCS will not search for or review documents concerning "communications of budgetary decisions."  Dkt. No. 192 at 19. |
| (($20,000 OR 20k OR $6,000 OR 6k) w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas*)) AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga) | Consistent with the February 6 Order, JJHCS will not search for or review documents concerning "communications of budgetary decisions."  Dkt. No. 192 at 19. |

6

# Exhibit 3



February 15, 2024

Julia Long
(212) 336-2878

**<u>VIA EMAIL</u>**

Elizabeth H. Snow, Esq.
Selendy Gay, PLLC
1290 Avenue of the Americas
New York, NY 10104

Re: ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***,
***2:23-cv-02632 (JKS) (CLW)***

Dear Elizabeth:

We write in response to SaveOnSP's January 29, 2024 letter regarding search terms for the new custodians added during the January 24, 2024 conference before Judge Wolfson as well as new search terms for the "CAP" custodians.

**I.      CAP Custodians**

SaveOnSP's January 29 letter requests that JJHCS add thirteen search terms that it contends "relate to the CAP program" and concern "discussions regarding J&J's response to SaveOn, accumulators, and maximizers" for Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, Alison Barklage, and L.D. Platt (the "CAP" Custodians) for the period April 1, 2016 to November 7, 2023.  *See* Jan. 29, 2024 Ltr. from E. Snow to J. Long at 1.

SaveOnSP's proposed search terms go well beyond Judge Wolfson's order, which only required JJHCS to "use CAP-related search terms, including terms that capture discussions by the custodians prior to the creation of the CAP program." Dkt. No. 192 at 26.  In keeping with the Court's order, JJHCS agrees to add the following search strings for the time period April 1, 2016 to November 7, 2023:

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*)

To the extent SaveOnSP also seeks the addition of the term "CAPa" OR "CAPm" OR "adjustment program," without a SaveOnSP limiter, this proposal is inconsistent with the Court's November 7, 2023 Order.  (*See* Dkt. No. 173 at 2-3.)  In addition, SaveOnSP now has made an additional motion

Elizabeth H. Snow, Esq.
February 15, 2024
Page 2

to Judge Wolfson to expand the scope of the November 7, 2023 Order.  For the reasons discussed in JJHCS's opposition brief filed on February 14, SaveOnSP has no basis to relitigate the November 7, 2023 Order.  For the avoidance of doubt, should Judge Wolfson expand the scope of the Court's November 7 Order with respect to the CAP search terms, JJHCS will adopt that application to the CAP custodians for the full time period as well.

As a compromise, JJHCS is prepared to run the following terms:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- "Save On" (*case sensitive*)

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- "other offer" W/5 (accumulat* OR maximiz*)

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

However, JJHCS declines to run the following search terms, which have no relation to JJHCS's CAP-related efforts.  Indeed, SaveOnSP acknowledged the lack of any connection during the parties' February 12, 2024 meet and confer, when SaveOnSP claimed these terms describe SaveOnSP's "business model."  As SaveOnSP well knows, the Court did not direct further discovery on that issue.

- "essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*

- (essential OR nonessential OR non-essential OR "non essential") w/50 ("Affordable Care Act" OR ACA OR Obamacare)

## II.     Scott White and Blasine Penkowski

SaveOnSP's letter also requests search terms to be added with respect to two apex custodians, Scott White and Blasine Penkowski.  As to Mr. White and Ms. Penkowski, JJHCS agrees to run the following terms:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- "Save On" (*case sensitive*)

Elizabeth H. Snow, Esq.
February 15, 2024
Page 3

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

- (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate)

JJHCS declines to run the "CAP" search term over Mr. White's and Ms. Penkowski's documents without a SaveOnSP limiter, for the reasons previously discussed, but will agree to run the following search strings for the full April 1, 2016 to November 7, 2023 period consistent with the Court's November 7 Order:

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*)

JJHCS also declines to run the following search terms over Mr. White's and Ms. Penkowski's documents, but will search for and produce final contracts and statements of work with Trial Card from non-custodial sources consistent with its January 29, 2024 responses and objections to SaveOnSP's discovery requests:

- ("TrialCard" OR "Trial Card" OR TC) AND ((statement* /5 work) OR "SOW*" OR contract*) AND (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR JCP OR "Savings Program" OR "WithMe" OR (with w/2 me))

Finally, JJHCS declines to add certain proposed financial-related terms, which SaveOnSP requested only as to Ms. Penkowski's documents. As outlined in JJHCS's February 8, 2024 letter, and as discussed during the parties' February 12, 2024 meet and confer, SaveOnSP's insistence that JJHCS produce these documents is inconsistent with Judge Wolfson's February 6, 2024 Order. For example, as to issues concerning CarePath's budget, Judge Wolfson concluded that "[JJHCS] has the better argument" and "communications of budgetary decisions are not relevant to Defendant's defenses or Plaintiff's claims." Dkt. No. 192 at 19. Similarly, as to issues related to return on investment (or "ROI"), Judge Wolfson unambiguously rejected SaveOnSP's arguments, finding that JJHCS's "alleged harm is not related to the profitability of any Janssen drugs. Put differently, even if J&J and its [affiliates] ultimately derive profits . . . from selling the drugs at issue, that fact does not disprove Plaintiff's alleged harm in this case, either to itself or to the public." *Id.* at 22.

Elizabeth H. Snow, Esq.
February 15, 2024
Page 4

Accordingly, JJHCS will not run the following terms:

- (brand* OR finance* OR SCG OR (strategic w/5 customer)) AND (accumulat* OR maximiz*)

- ((lose* OR loss* OR (return w/4 investment) OR "ROI" OR (negative w/5 impact) OR (gross w/5 impact) OR (net w/5 impact) OR (GTN w/5 impact)) w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe")) AND ("Save On" OR Save-OnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR accumulat* OR maximiz*)

- Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me))

- (($20,000 OR 20k OR $6,000 OR 6k) w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas*)) AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga)

As discussed during the parties' February 12, 2024 meet and confer, SaveOnSP's proposal of these terms demonstrates that SaveOnSP refuses to accept the Court's rulings on an issue already twice litigated—and on which JJHCS has twice prevailed. JJHCS will not provide hit counts for these searches, as they seek documents that are beyond the scope of what Judge Wolfson ordered. If SaveOnSP is willing to meet and confer in good-faith and to propose search terms related to the "small window" that Judge Wolfson opened with respect to budget and financials issues, JJHCS will run SaveOnSP's requested search terms and provide hit counts, as appropriate. *See* Feb. 8, 2024 Ltr. From J. Long to E. Snow at 2-3.

## III.    Karen Lade

SaveOnSP proposed thirteen search terms with respect to Ms. Lade's documents. JJHCS agrees to run the following search terms:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- "Save On" (*case sensitive*)

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

Elizabeth H. Snow, Esq.
February 15, 2024
Page 5

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

- (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate)

- "other offer" w/5 (accumulat* OR maximiz* OR "health plan*" OR insur*)

- accumulator w/5 prog*

      For the reasons cited above, JJHCS declines (1) to run the "CAP" search term over Ms. Lade's documents without a SaveOnSP limiter; and (2) to run financial-related search strings over Ms. Lade's documents.[1]  As with Mr. White and Ms. Penkowski, JJHCS agrees to run the following terms with respect to the CAP program for the April 1, 2016 to November 7, 2023 time period:

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*)

      As discussed at the parties' February 12, 2024 meet and confer, JJHCS will consider running two final Lade-specific search strings if those are modified to capture the documents SaveOnSP explained it was seeking.  JJHCS offers to run these modified terms, subject to SaveOnSP's agreement that these strings resolve SaveOnSP's requests with respect to these strings.

| SaveOnSP Proposal | JJHCS Modification |
|---|---|
| PBM* AND (copay* or co-pay*) AND deductible | PBM* w/50 ((chang* OR increas* OR decreas*) AND (copay* OR co-pay*) AND deductible) |

---

[1] JJHCS declines to run the following financial-related strings, which are beyond the scope of Judge Wolfson's order:

- (($20,000 OR 20k OR $6,000 OR 6k) w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas*)) AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga)

- Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me))

Elizabeth H. Snow, Esq.
February 15, 2024
Page 6

| (Max* /15 benefit*) AND ($20,000 OR $20K OR 20k) | (Max* /15 benefit*) w/50 ((chang* OR increas* OR decreas*) AND ($20,000 OR $20K OR 20k)) |
|---|---|

## IV.    Savaria Harris and Jennifer De Camara

Judge Wolfson ordered production from Ms. Harris and Ms. De Camara's custodial files on a single, narrow issue:  (1) documents and communications between the attorneys and any third-party entities *and* (2) that concern the "new terms and conditions for both its Stelara and Tremfya medications" implemented in January 2022.  Dkt. No. 192 at 13-14.  SaveOnSP's requested terms go well beyond these limitations.

For example, SaveOnSP continues to insist on documents with any reference in which "coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*" appear in the same document as the terms "Janssen" or "CarePath" (or variations thereof)—despite Judge Waldor explicitly rejecting that a narrower version of that term at the January 24, 2024 conference. Jan. 24 Tr. at 35:3-37:1 ("MR. SANDICK: Your Honor, Mr. Dunlap  said a moment ago words to the effect of, we're not looking for every time that somebody mentioned discount or coupon, but the search terms that they proposed even after Judge Waldor ordered them to narrow their request are exactly what Mr. Dunlap just said -- JUDGE WOLFSON: It's not going to happen."). Accordingly, JJHCS declines to run the following terms:

- ("coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*") AND (accumulat* OR maximiz* OR "health plan*" OR insur* OR OR Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program" OR program)

- (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") AND ((term* w/3 condition) OR "T&C" OR "TNC" OR "other offer")

For the same reason, JJHCS also declines to run the following terms, which are not designed to capture documents concerning the "new terms and conditions for both its Stelara and Tremfya medications":

- Save On" (*case sensitive*)

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

Elizabeth H. Snow, Esq.
February 15, 2024
Page 7

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

       JJHCS agrees to the remainder of SaveOnSP's proposed terms for the period proposed by SaveOnSP (January 1, 2021 to November 7, 2023), so long as those documents also mention Stelara and Tremfya (as modified in red font below):

- "other offer" W/5 (accumulat* OR maximiz* OR "health plan*" OR insur*) AND (Stelara OR Tremfya)

- (eligib* or ineligib*) AND "out-of-pocket cost" AND (Stelara OR Tremfya)

- (maximiz* OR optimiz*) AND ($6,000 OR "maximum program benefit") AND (Stelara OR Tremfya)

- ($6,000 OR $6k OR 6k OR $9,100 OR $8,900 OR (OOP) OR (out-of-pocket)) AND (Stelara OR Tremfya)

       In addition, JJHCS will consider running the following terms for the period proposed by SaveOnSP (January 1, 2021 to November 7, 2023), subject to SaveOnSP's agreement that these modifications will resolve SaveOnSP's requests with respect to Ms. Harris and Ms. De Camara:

- (Stelara OR Tremfya) W/25 ((term* w/3 condition*) OR "T&C*" OR "other offer"))

             *    *    *

       JJHCS remains available to meet and confer with respect to SaveOnSP's proposed search terms.


                     Very truly yours,


                     */s/ Julia Long*
                     Julia Long

# Robinson+Cole

E. Evans Wohlforth, Jr.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

March 4, 2024

**<u>VIA E-Mail</u>**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

Re: *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
   **No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Defendant Save On SP LLC ("**<u>SaveOn</u>**"), we write in response to Johnson & Johnson Health Care Systems, Inc.'s (with its affiliates, "**J&J**") February 28, 2024 opposition to SaveOn's February 16, 2024 motion to compel J&J to run the CAP Terms[1] over the custodial files of Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, L.D. Platt, Alison Barklage (collectively, the "CAP Custodians"), Scott White, Blasine Penkowski, and Karen Lade.

---

[1] The CAP Terms are "adjustment program," "CAPa," and "CAPm." J&J agreed to run that term for its original custodians from April 1, 2016 through July 1, 2022. Ex. 1 (Sept. 29, 2023 Email).

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                                      Page 2

J&J does not dispute that the CAP Terms are relevant. Nor could it. Your Honor and Judge Waldor both recognized the CAP Program's relevance. *See, e.g.*, Dkt. 192 at 25 (reflecting Judge Waldor's intent for additional discovery regarding the CAP Program); Jan. 24, 2024 Hr'g at 108:21-109:6 (Your Honor indicating that documents related to the CAP Program are relevant).

J&J also does not dispute that each of the nine custodians at issue was heavily involved with the CAP Program, as Your Honor recognized. *See* Dkt. 192 at 26 (regarding the CAP Custodians), 28 (agreeing "White was involved in high level discussions about the CarePath program," including SaveOn's impact on the CarePath program and J&J's response, which necessarily includes the CAP Program), 29 (finding "documents show [Penkowski's] role in responding to 'accumulators,' a term that Plaintiff used internally to refer to SaveOnSP's programs" and "Lade was involved early on in Plaintiff's formulation of a response to maximizer and accumulator programs," so each are appropriate custodians); *see also* Dkt. 173 at 2 (directing parties to negotiate search terms for the CAP Custodians regarding the CAP Program).

J&J also does not dispute that the CAP Terms are targeted to identify documents regarding the CAP Program—and it does not argue that reviewing the documents identified by these terms would be unduly burdensome. *See generally*, Jan. 24. 2024 Hr'g at 108:13-14 (Your Honor asking J&J regarding proposed search terms including the unlimited CAP Terms at issue: "Why wouldn't [J&J] run them for [the CAP Custodians]?"). To the contrary, J&J fails to provide the hit counts that it would need to substantiate its burden obligation. *Compare* Ex. 2 (Jan 29, 2024 Ltr.) (requesting hit counts for each search term J&J objects to run), *with* Ex. 3 (Feb. 15, 2024 Ltr.).

J&J further does not dispute that running the CAP Terms limited by a "SaveOn" modifier, as it proposes, would be completely subsumed by J&J's agreement to separately run variations of

Hon. Freda L. Wolfson                                                      Page 3

that "SaveOn" modifier as a stand-alone term. *See* Opp. at 5.[2] While it claims to have produced "scores" of documents hitting on its proposed limited CAP Terms, *id.*, this is highly misleading: It has produced 31,959 documents to date, of which only ***1,696*** hit the ***limited*** CAP Terms (run through November 7, 2023) but a whopping ***9,730*** hit the ***unlimited*** CAP Terms (run only through July 1, 2022)—including numerous relevant documents that the limited terms would have missed. *See, e.g.*, Ex. 4 (JJHCS_00001207) (



);

Ex. 6 (JJHCS_00182969) (

); Ex. 7 (JJHCS_00142268) (

).[3] The disproportionate hit counts to date confirm that if J&J runs the ***unlimited*** CAP Terms over the documents that it has yet to produce, those terms would identify a similar a trove of relevant documents—documents that would not be identified by the ***limited*** CAP Terms.

Otherwise, J&J relies on procedural arguments, all of which fail.

*First*, J&J tries to paint this motion as duplicative of SaveOn's February 7, 2024 motion, which also involved the CAP Terms. It is not. The February 7 motion seeks to compel J&J to comply with the November 7, 2023 Order by conducting a full refresh of its document production though that date—which includes running the CAP Terms (to which it already agreed) over J&J's

---

[2] J&J suggests that it agreed to run this "SaveOn" term as a "result of the parties' negotiations," Opp. at 5, but in fact Your Honor ***told*** J&J that this term would be relevant to the newly-ordered custodians, Hr'g Tr. at 110:20-23 ("[T]he terms that would be relevant to them would be referring to SaveON, referring to ESI.").

[3] For the CAP Custodians, J&J has produced a total of 99 documents from Alison Barklage that hit on the limited CAP Terms, 24 from Hoffman, 61 from Kinne, 35 from Longbothum, 89 from Platt, and 48 from Shontz.

Hon. Freda L. Wolfson                                                                    Page 4

*original* custodians, whom it had agreed to add as custodians prior to the October 30, 2023 con-

ference before Judge Waldor. This motion, in contrast, seeks to compel J&J to run the CAP Terms

over its *new* custodians—the CAP Custodians that Judge Waldor compelled J&J to add in her

November 7, 2023 Order and those custodians that Your Honor compelled it to add in the Febru-

ary 6, 2024 Order. While J&J should run the CAP Terms for all its custodians, it is especially

important that it do so for these new custodians, whom Your Honor found relevant for their in-

volvement in the CAP Program. Dkt. 192 at 26-29.

Second, J&J asserts that SaveOn moves for clarification. It does not. In the February 6,

2024 Order—which J&J does not discuss—Your Honor ordered the parties to negotiate appropri-

ate search terms regarding the CAP Program for the CAP Custodians, Dkt. 192 at 26, and appro-

priate search terms for White, Penkowski, and Lade, *id.* at 28-29. The parties met and conferred,

J&J refused to run the unlimited CAP Terms for any of these custodians, and SaveOn sought relief

from Your Honor. There is nothing to clarify.

Third, J&J asserts that the November 7 Order holds that it may run the CAP Terms with a

SaveOn limiter in every circumstance. Not so. The portion of that order that J&J cites concerned

only SaveOn's motion (Dkt. 166) to compel J&J to run CAP Terms past the July 1, 2022 discovery

cutoff. Dkt. 173 at 2-3. In its February 7 motion, SaveOn explained why that ruling does not allow

J&J to run limited CAP Terms for its original custodians in refreshing its document production.

Feb. 7, 2024 Mot. at 1-3. Even if that ruling did apply to J&J's refresh production (it does not), it

explicitly does not apply to J&J's production from its new custodians, for whom Judge Waldor

and Your Honor specifically directed the parties to negotiate search terms without any limits on

what those terms could be. Dkt. 173 at 2; Dkt. 192 at 26-29; *see also* Dkt. 192 at 26 ("Judge

Hon. Freda L. Wolfson                                                      Page 5

Waldor's November Order did not order specific custodian search terms in the hope that the parties would come to a compromise.").

*Finally*, J&J accuses SaveOn of using this motion to prolong discovery. The record shows otherwise. J&J does not dispute that it failed to disclose the CAP Program at the start of discovery, despite launching that program months before filing this lawsuit. Dkt. 192 ("SaveOn [did not] learn about the existence of the CAP program until June 2023 (it apparently existed since before J&J filed this case).""). Once SaveOn learned of the program, it promptly began seeking the custodians at issue. *See* Ex. 8 (July. 18, 2023 Ltr); *see also* Ex. 9 (Aug. 28, 2023 Ltr.). J&J ultimately refused to add a single custodian regarding the CAP Program. SaveOn then promptly sought the Court's intervention, Dkt. 165, and, after the Court ordered J&J to add the CAP Custodians, it promptly proposed search terms. Ex. 2 (Jan. 29, 2024 Ltr.). SaveOn brings this motion because it needs relevant documents regarding the CAP Program that J&J continues to withhold.

SaveOn appreciates Your Honor's attention to this matter.

Respectfully submitted,

/s/ E. Evans Wohlforth
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Hon. Freda L. Wolfson                                                      Page 6

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# Exhibit 1

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Friday, September 29, 2023 6:23:35 PM
**To:** Elizabeth Snow <esnow@selendygay.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; David Elsberg <delsberg@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW)

Counsel:

In an effort to reach compromise and reduce the number of disputes before Judge Waldor at our October 30 conference, JJHCS agrees to run the terms "CAPa," "CAPm" and "adjustment program" for the agreed-upon relevant time period, April 1, 2016 to July 1, 2022.

We hope that this will resolve the dispute. We do not think a demand through to the present by SaveOnSP is appropriate or feasible. As JJHCS has no direct knowledge of SaveOnSP's conduct at issue, JJHCS's documents primarily relate to its awareness and response to SaveOnSP, and this demand amounts to a wholesale update of the production. We note SaveOnSP has rejected even several discrete updates, let alone a wholesale update, of its own production.

Please let us know if our proposed production resolves this dispute.

JJHCS will respond separately to your joint letter on SaveOnSP's interrogatories next week.

Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas

New York, NY 10036

T 212.336.2878

**jlong@pbwt.com**

---

**From:** Elizabeth Snow <esnow@selendygay.com>
**Sent:** Wednesday, September 27, 2023 12:12 PM
**To:** Long, Julia (x2878) <jlong@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; ~delsberg@selendygay.com <delsberg@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>
**Subject:** JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW)

---

<mark>*Caution: External Email!*</mark>

Counsel,

Please find attached a joint letter that SaveOnSP intends to file with the Court. We ask that you please provide JJHCS's portion by end of day Monday, October 2. We reserve the right to revise in response to any revisions.

Thanks,

Elizabeth

**Elizabeth Snow**
Associate  [Email]
Selendy Gay Elsberg PLLC  [Web]
Pronouns: she, her, hers

---

+1 212.390.9330  [O]
+1 540.409.7257  [M]

---

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

---

# Exhibit 2

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Elizabeth Snow
Associate
212 390 9330
esnow@selendygay.com

January 29, 2024

**Via E-mail**

Julia Long
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jlong@pbwt.com

Re:   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
      LLC*** **(Case No. 2:22-cv-02632-JKS-CLW)**

Dear Julia,

We write to propose search terms for the custodians discussed at and or-
dered to be added at during the January 24, 2024 conference in front of Special
Master Wolfson.

*First*, as to Quinton Kinne, Daphne Longbothum, William Shontz, John
Hoffman, Alison Barklage, and L.D. Platt, Judge Wolfson ordered SaveOn to pro-
pose a set of search terms that relate to the CAP program and to discussions re-
garding J&J's response to SaveOn, accumulators, and maximizers, Tr. at 107:1-
111:10, to be run for the full discovery period of April 1, 2016 through November 7,
2023, *id.* 108:21-109:18. SaveOn proposes these terms in Exhibit 1.

*Second*, as to Scott White, Blasine Penkowski, and Karen Lade, Judge
Wolfson ordered J&J to add them as custodians for the full time period and or-
dered SaveOn to propose targeted search terms for each new custodian. Tr. 128:9-
129:13, 131:22-132:13. SaveOn's proposes these terms in Exhibits 2-4.

*Third*, as to Savaria Harris and Jennifer De Camara, Judge Wolfson ordered
that J&J add them as custodian and ordered that SaveOn propose a set of search
terms to be run over their communications with third parties from January 1, 2021
through November 7, 2023. Tr. 54:12-23. SaveOn proposes these terms in Exhibit
5.

Julia Long
January 29, 2024

Please let us know by February 2, 2024 if J&J will agree to run these proposed search terms. If J&J objects to running any search term, please provide hit counts that identify the total number of unique documents identified by SaveOn's proposed terms, both individually and in the aggregate.

We reserve all rights and are available to meet and confer.

Best,

/s/ Elizabeth Snow

Elizabeth H. Snow
Associate

# Exhibit 1

**JJHCS v. SaveOnSP**
Search Terms for Quinton Kinne, Daphne Longbothum, William Shontz, John
Hoffman, Alison Barklage, and L.D. Platt
Case No. 2:22-cv-02632-JKS-CLW

| Search Terms |
|---|
| "essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB* |
| (essential OR nonessential OR non-essential OR "non essential") w/50 ("Affordable Care Act" OR ACA OR Obamacare) |
| "Save On" (case sensitive) |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) |
| "other offer" W/5 (accumulat* OR maximiz*) |
| CAPa |
| CAPm |
| "adjustment program" |
| (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP) |
| ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*) |

# Exhibit 2

**JJHCS v. SaveOnSP**
Search Terms for Scott White
Case No. 2:22-cv-02632-JKS-CLW

| Search Terms |
| --- |
| "Save On" (case sensitive) |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) |
| "CAPa" OR "CAPm" OR "adjustment program" |
| (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate) |
| ("TrialCard" OR "Trial Card" OR TC) AND ((statement* /5 work) OR "SOW*" OR contract*) AND (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR JCP OR "Savings Program" OR "WithMe" OR (with w/2 me)) |

# Exhibit 3

**JJHCS v. SaveOnSP**
Search Terms for Blaine Penkowski
Case No. 2:22-cv-02632-JKS-CLW

| Search Terms |
|---|
| "Save On" (case sensitive) |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) |
| "CAPa" OR "CAPm" OR "adjustment program" |
| (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate) |
| ("TrialCard" OR "Trial Card" OR TC) AND ((statement* /5 work) OR "SOW*" OR contract*) AND (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR JCP OR "Savings Program" OR "WithMe" OR (with w/2 me)) |
| (brand* OR finance* OR "SCG" OR (strategic /5 customer)) AND (accumulat* OR maximiz*) |
| ((lose* OR loss* OR (return w/4 investment) OR "ROI" OR (negative w/5 impact) OR (gross w/5 impact) OR (net w/5 impact) OR (GTN w/5 impact)) w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe")) AND ("Save On" OR Save-OnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR accumulat* OR maximiz*) |
| Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me)) |
| (($20,000 OR 20k OR $6,000 OR 6k) w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas*)) AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga) |

6

# Exhibit 4

**JJHCS v. SaveOnSP**
Search Terms for Karen Lade
Case No. 2:22-cv-02632-JKS-CLW

| Search Terms |
|---|
| "Save On" (case sensitive) |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) |
| "CAPa" OR "CAPm" OR "adjustment program" |
| (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate) |
| (($20,000 OR 20k OR $6,000 OR 6k) w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas*)) AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga) |
| Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me)) |
| "other offer" w/5 (accumulat* OR maximiz* OR "health plan*" OR insur*) |
| (accumulator /5 prog*) |
| PBM* AND (copay* or co-pay*) AND deductible |
| (Max* /15 benefit*) AND ($20,000 OR $20K OR 20k) |

# Exhibit 5

## JJHCS v. SaveOnSP
Search Terms for Savaria Harris & Jennifer De Camara
Case No. 2:22-cv-02632-JKS-CLW

| Search Terms |
|---|
| "Save On" (case sensitive) |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) |
| "other offer" W/5 (accumulat* OR maximiz* OR "health plan*" OR insur*) |
| (eligib* or ineligib*) AND "out-of-pocket cost" |
| (maximiz* OR optimiz*) AND ($6,000 OR "maximum program benefit") |
| ($6,000 OR $6k OR 6k OR $9,100 OR $8,900 OR (OOP) OR (out-of-pocket)) AND (Stelara OR Tremfya) |
| (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") AND ((term* w/3 condition) OR "T&C" OR "TNC" OR "other offer") |
| ("coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*") AND (accumulat* OR maximiz* OR "health plan*" OR insur* OR OR Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program" OR program) |

# Exhibit 3



February 15, 2024

Julia Long
(212) 336-2878

**<u>VIA EMAIL</u>**

Elizabeth H. Snow, Esq.
Selendy Gay, PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:   ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***,
      **2:23-cv-02632 (JKS) (CLW)**

Dear Elizabeth:

We write in response to SaveOnSP's January 29, 2024 letter regarding search terms for the new custodians added during the January 24, 2024 conference before Judge Wolfson as well as new search terms for the "CAP" custodians.

### I.       CAP Custodians

SaveOnSP's January 29 letter requests that JJHCS add thirteen search terms that it contends "relate to the CAP program" and concern "discussions regarding J&J's response to SaveOn, accumulators, and maximizers" for Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, Alison Barklage, and L.D. Platt (the "CAP" Custodians) for the period April 1, 2016 to November 7, 2023.  *See* Jan. 29, 2024 Ltr. from E. Snow to J. Long at 1.

SaveOnSP's proposed search terms go well beyond Judge Wolfson's order, which only required JJHCS to "use CAP-related search terms, including terms that capture discussions by the custodians prior to the creation of the CAP program." Dkt. No. 192 at 26.  In keeping with the Court's order, JJHCS agrees to add the following search strings for the time period April 1, 2016 to November 7, 2023:

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*)

To the extent SaveOnSP also seeks the addition of the term "CAPa" OR "CAPm" OR "adjustment program," without a SaveOnSP limiter, this proposal is inconsistent with the Court's November 7, 2023 Order.  (*See* Dkt. No. 173 at 2-3.)  In addition, SaveOnSP now has made an additional motion

Elizabeth H. Snow, Esq.
February 15, 2024
Page 2

to Judge Wolfson to expand the scope of the November 7, 2023 Order.  For the reasons discussed in JJHCS's opposition brief filed on February 14, SaveOnSP has no basis to relitigate the November 7, 2023 Order.  For the avoidance of doubt, should Judge Wolfson expand the scope of the Court's November 7 Order with respect to the CAP search terms, JJHCS will adopt that application to the CAP custodians for the full time period as well.

      As a compromise, JJHCS is prepared to run the following terms:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- "Save On" (*case sensitive*)

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- "other offer" W/5 (accumulat* OR maximiz*)

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

      However, JJHCS declines to run the following search terms, which have no relation to JJHCS's CAP-related efforts.  Indeed, SaveOnSP acknowledged the lack of any connection during the parties' February 12, 2024 meet and confer, when SaveOnSP claimed these terms describe SaveOnSP's "business model."  As SaveOnSP well knows, the Court did not direct further discovery on that issue.

- "essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*

- (essential OR nonessential OR non-essential OR "non essential") w/50 ("Affordable Care Act" OR ACA OR Obamacare)

## II.        Scott White and Blasine Penkowski

      SaveOnSP's letter also requests search terms to be added with respect to two apex custodians, Scott White and Blasine Penkowski.  As to Mr. White and Ms. Penkowski, JJHCS agrees to run the following terms:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- "Save On" (*case sensitive*)

Elizabeth H. Snow, Esq.
February 15, 2024
Page 3

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

- (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate)

JJHCS declines to run the "CAP" search term over Mr. White's and Ms. Penkowski's documents without a SaveOnSP limiter, for the reasons previously discussed, but will agree to run the following search strings for the full April 1, 2016 to November 7, 2023 period consistent with the Court's November 7 Order:

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*)

JJHCS also declines to run the following search terms over Mr. White's and Ms. Penkowski's documents, but will search for and produce final contracts and statements of work with Trial Card from non-custodial sources consistent with its January 29, 2024 responses and objections to SaveOnSP's discovery requests:

- ("TrialCard" OR "Trial Card" OR TC) AND ((statement* /5 work) OR "SOW*" OR contract*) AND (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR JCP OR "Savings Program" OR "WithMe" OR (with w/2 me))

Finally, JJHCS declines to add certain proposed financial-related terms, which SaveOnSP requested only as to Ms. Penkowski's documents. As outlined in JJHCS's February 8, 2024 letter, and as discussed during the parties' February 12, 2024 meet and confer, SaveOnSP's insistence that JJHCS produce these documents is inconsistent with Judge Wolfson's February 6, 2024 Order. For example, as to issues concerning CarePath's budget, Judge Wolfson concluded that "[JJHCS] has the better argument" and "communications of budgetary decisions are not relevant to Defendant's defenses or Plaintiff's claims." Dkt. No. 192 at 19. Similarly, as to issues related to return on investment (or "ROI"), Judge Wolfson unambiguously rejected SaveOnSP's arguments, finding that JJHCS's "alleged harm is not related to the profitability of any Janssen drugs. Put differently, even if J&J and its [affiliates] ultimately derive profits . . . from selling the drugs at issue, that fact does not disprove Plaintiff's alleged harm in this case, either to itself or to the public." *Id.* at 22.

Elizabeth H. Snow, Esq.
February 15, 2024
Page 4

Accordingly, JJHCS will not run the following terms:

- (brand* OR finance* OR SCG OR (strategic w/5 customer)) AND (accumulat* OR maximiz*)

- ((lose* OR loss* OR (return w/4 investment) OR "ROI" OR (negative w/5 impact) OR (gross w/5 impact) OR (net w/5 impact) OR (GTN w/5 impact)) w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe")) AND ("Save On" OR Save-OnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR accumulat* OR maximiz*)

- Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me))

- (($20,000 OR 20k OR $6,000 OR 6k) w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas*)) AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga)

As discussed during the parties' February 12, 2024 meet and confer, SaveOnSP's proposal of these terms demonstrates that SaveOnSP refuses to accept the Court's rulings on an issue already twice litigated—and on which JJHCS has twice prevailed. JJHCS will not provide hit counts for these searches, as they seek documents that are beyond the scope of what Judge Wolfson ordered. If SaveOnSP is willing to meet and confer in good-faith and to propose search terms related to the "small window" that Judge Wolfson opened with respect to budget and financials issues, JJHCS will run SaveOnSP's requested search terms and provide hit counts, as appropriate. *See* Feb. 8, 2024 Ltr. From J. Long to E. Snow at 2-3.

**III.    Karen Lade**

SaveOnSP proposed thirteen search terms with respect to Ms. Lade's documents. JJHCS agrees to run the following search terms:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- "Save On" (*case sensitive*)

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

Elizabeth H. Snow, Esq.
February 15, 2024
Page 5

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

- (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate)

- "other offer" w/5 (accumulat* OR maximiz* OR "health plan*" OR insur*)

- accumulator w/5 prog*

      For the reasons cited above, JJHCS declines (1) to run the "CAP" search term over Ms. Lade's documents without a SaveOnSP limiter; and (2) to run financial-related search strings over Ms. Lade's documents.[1]  As with Mr. White and Ms. Penkowski, JJHCS agrees to run the following terms with respect to the CAP program for the April 1, 2016 to November 7, 2023 time period:

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

- ("CAPa OR CAPm" OR "adjustment program") AND "Save On" (*case sensitive*)

      As discussed at the parties' February 12, 2024 meet and confer, JJHCS will consider running two final Lade-specific search strings if those are modified to capture the documents SaveOnSP explained it was seeking.  JJHCS offers to run these modified terms, subject to SaveOnSP's agreement that these strings resolve SaveOnSP's requests with respect to these strings.

| SaveOnSP Proposal | JJHCS Modification |
|---|---|
| PBM* AND (copay* or co-pay*) AND deductible | PBM* w/50 ((chang* OR increas* OR decreas*) AND (copay* OR co-pay*) AND deductible) |

---

[1] JJHCS declines to run the following financial-related strings, which are beyond the scope of Judge Wolfson's order:

- (($20,000 OR 20k OR $6,000 OR 6k) w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas*)) AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga)

- Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me))

Elizabeth H. Snow, Esq.
February 15, 2024
Page 6

| (Max* /15 benefit*) AND ($20,000 OR $20K OR 20k) | (Max* /15 benefit*) w/50 ((chang* OR increas* OR decreas*) AND ($20,000 OR $20K OR 20k)) |
| --- | --- |

## IV.     Savaria Harris and Jennifer De Camara

Judge Wolfson ordered production from Ms. Harris and Ms. De Camara's custodial files on a single, narrow issue:  (1) documents and communications between the attorneys and any third-party entities *and* (2) that concern the "new terms and conditions for both its Stelara and Tremfya medications" implemented in January 2022.  Dkt. No. 192 at 13-14.  SaveOnSP's requested terms go well beyond these limitations.

For example, SaveOnSP continues to insist on documents with any reference in which "coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*" appear in the same document as the terms "Janssen" or "CarePath" (or variations thereof)—despite Judge Waldor explicitly rejecting that a narrower version of that term at the January 24, 2024 conference. Jan. 24 Tr. at 35:3-37:1 ("MR. SANDICK: Your Honor, Mr. Dunlap  said a moment ago words to the effect of, we're not looking for every time that somebody mentioned discount or coupon, but the search terms that they proposed even after Judge Waldor ordered them to narrow their request are exactly what Mr. Dunlap just said -- JUDGE WOLFSON: It's not going to happen."). Accordingly, JJHCS declines to run the following terms:

- ("coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*") AND (accumulat* OR maximiz* OR "health plan*" OR insur* OR OR Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program" OR program)

- (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") AND ((term* w/3 condition) OR "T&C" OR "TNC" OR "other offer")

For the same reason, JJHCS also declines to run the following terms, which are not designed to capture documents concerning the "new terms and conditions for both its Stelara and Tremfya medications":

- Save On" (*case sensitive*)

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

Elizabeth H. Snow, Esq.
February 15, 2024
Page 7

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

        JJHCS agrees to the remainder of SaveOnSP's proposed terms for the period proposed by SaveOnSP (January 1, 2021 to November 7, 2023), so long as those documents also mention Stelara and Tremfya (as modified in red font below):

- "other offer" W/5 (accumulat* OR maximiz* OR "health plan*" OR insur*) AND (Stelara OR Tremfya)

- (eligib* or ineligib*) AND "out-of-pocket cost" AND (Stelara OR Tremfya)

- (maximiz* OR optimiz*) AND ($6,000 OR "maximum program benefit") AND (Stelara OR Tremfya)

- ($6,000 OR $6k OR 6k OR $9,100 OR $8,900 OR (OOP) OR (out-of-pocket)) AND (Stelara OR Tremfya)

        In addition, JJHCS will consider running the following terms for the period proposed by SaveOnSP (January 1, 2021 to November 7, 2023), subject to SaveOnSP's agreement that these modifications will resolve SaveOnSP's requests with respect to Ms. Harris and Ms. De Camara:

- (Stelara OR Tremfya) W/25 ((term* w/3 condition*) OR "T&C*" OR "other offer"))

        \*      \*      \*

        JJHCS remains available to meet and confer with respect to SaveOnSP's proposed search terms.

        Very truly yours,

        */s/ Julia Long*
        Julia Long

14922008

# EXHIBITS 4-7
# CONFIDENTIAL – FILED
# UNDER SEAL

# Exhibit 8

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Elizabeth Snow
Associate
212 390 9330
esnow@selendygay.com

July 18, 2023

<u>Via E-mail</u>

George LoBiondo
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
globiondo@pbwt.com

Re:     ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC*** (Case No. 2:22-cv-02632-ES-CLW)

Dear George,

We write regarding deficiencies in JJHCS's document production.

## I.      Organizational Charts

### A.      Time Period

JJHCS's production does not appear to include organizational charts from
before December 1, 2016. Please provide organizational charts covering the full
time period from April 1, 2016 through December 1, 2016.

### B.      Juliette DeShaies

In the joint letter dated June 23, 2023, and in your letter dated May 19,
2023, you stated that Juliette DeShaies is an employee of JJHCS. *See* June 23,
2023 Joint Ltr. at 11. She does not appear on any organizational chart produced to
date. Please produce all organizational charts on which she appears, whether from
JJHCS or Janssen.

### C.      Groups in JJHCS's Organizational Charts

Please explain the function of the following groups named in JJHCS's or-
ganizational charts.

1.      JCP One Platform

George LoBiondo
July 18, 2023

    2.      CX Operations

    3.      JCP Customer Experience

    4.      PECS

    5.      PX-TA Teams

    6.      E2E Implementation

    7.      E2E JALT

    8.      Patient Access Solutions

    9.      Patient Access and Affordability Solutions

    10.    FFS Execution

    11.    FFS Strategy Management

    12.    FFS Pharmacy Monitoring & Program Compliance

    13.    FFS Customer Management

    14.    CAR-T Patient Services

Please also provide the names of all members of each group, whether employed JJHCS, at Janssen, or elsewhere in the J&J organization.

## II.    Custodians

After reviewing JJHCS's production, SaveOnSP continues to believe that JJHCS should add as custodians several individuals that it has declined to add. SaveOnSP also proposes one new custodian.

### A.    Quinton Kinne

In its March 7, 2023 letter, SaveOnSP proposed Quinton Kinne as a custodian because JJHCS named Mr. Kinne as (1) having identified or attempted to identify health plans advised by SaveOnSP or patients enrolled in the SaveOnSP program; and (2) having had responsibility for monitoring and addressing the amount of CarePath copay assistance provided to patients enrolled in the SaveOnSP program. In its March 16, 203 letter, JJHCS argued that Mr. Kinne's documents are either completely protected by a privilege or other protection from disclosure or would be captured by other custodians, including John Paul Franz.

2

George LoBiondo
July 18, 2023

JJHCS's production shows that its assertion that Mr. Kinne's documents would be entirely duplicative and entirely privileged is false. For example, in JJHCS_00035757,

JJHCS_00035757.

Similarly, JJHCS_00008989

By definition, Franz could not have been privy to those meetings.

Please confirm that JJHCS will add Mr. Kinne as a custodian.

JJHCS's production also reflects that Mr. Kinne is a member of something called the SMOX Team. JJHCS_00001196. Please explain the function of the SMOX team and provide the names of all its members, whether employed at JJHCS or Janssen or elsewhere in other J&J entities.

**B.    Leigh Wyszkowski**

In its March 7, 2023 letter, SaveOnSP proposed Leigh Wyszkowski as a custodian because JJHCS named her as having identified or attempted to identify health plans advised by SaveOnSP or patients enrolled in the SaveOnSP program. In its March 16, 2023 letter, JJHCS asserted that her communications would be captured by other custodians, including John Paul Franz.

As noted above, JJHCS_00008989

By definition, Franz could not have been privy to those meetings.

Please confirm that JJHCS will add Wyszkowski as a custodian.

**C.    Daphne Longbothum**

In its June 23, 2023 joint letter, JJHCS asserted that Daphne Longbothum is solely an employee of JJHCS, *id.* at 10, and that all her relevant documents would be captured by Nidhi Saxena and Hattie McKelvey.

After a review of JJHCS's production, it is clear that Longbothum's documents are not completely captured by Saxena and McKelvey. For example,

, JJHCS_00001393,                                        , JJHCS_00007876;

3

George LoBiondo
July 18, 2023

JJHCS_00034500, █████████████████████████████████, JJHCS_00034526. These demonstrate that Long-
bothum's documents are not coextensive with Saxena's and McKelvey's docu-
ments.

Please confirm that JJHCS will add Longbothum as a custodian.

### D.    William Shontz

In its June 23, 2023 joint letter, JJHCS asserted that William Shontz is an
employee of JJHCS, *id.* at 11, and that all his relevant documents would be cap-
tured by Hattie McKelvey and Silviya McCool.

After a review of JJHCS's production, it is clear that Shontz's documents are
not completely captured by McKelvey and McCool. JJHCS_00001202 ██████
████████████████████████████████████████████████ And many emails in-
clude Shontz but neither McKelvey or McCool. *See, e.g.*, JJHCS_0005897 (email
from Mr. Robinson to Mr. Shontz stating █████████████████████████████
████████████████); JJHCS_00008556 (emails with Thomas J. Paul and Trial
Card regarding the CarePath website); JJHCS_00034500 (email from Thomas J.
Paul regarding the CAP program website design); JJHCS_00034531 (emails re-
garding the ERLEADA CAP program). These demonstrate that Shontz's docu-
ments are not coextensive with McKelvey's and McCool's documents.

Please confirm that JJHCS will add Mr. Shontz as a custodian.

### E.    Alison Barklage

SaveOnSP requests that JJHCS add Alison Barklage as a custodian. Bar-
klage appears to be the person implementing the CAP programs for Janssen's on-
cology and pulmonary health divisions. JJHCS_00118794. Barklage was privy to
an assortment of CAP-related PowerPoint presentations circulated throughout
J&J. *See, e.g.*, JJHCS_00069175 (Barklage sending CarePath Introduction slides
approved by Janssen's Cardiovascular & Metabolism division); JJHCS_00084681
(Barklage sending a PowerPoint of █████████████████ which will be used at a JALT
meeting); JJHCS_00038647 (█████████████████████████████████████████
████████████████); JJHCS_00029668 (Barklage receiving a copy of
█████████████████████████████████████████████████████████████████");
JJHCS_00038575 (█████████████████████████████████████████████████
█████████████████████████████); JJHCS_00084507 (██████████████████
█████████████████████████████████). Barklage also received a copy
of the IPBC SaveOnSP Training video. JJHCS_00001206. Her work thus concerns
JJHCS's response to SaveOnSP and is directly relevant to JJHCS's claims and
SaveOnSP's defenses in this action.

Please confirm that JJHCS will add Ms. Barklage as a custodian.

George LoBiondo
July 18, 2023

### III. Search Terms

*First*, in its March 16, 2023 letter, JJHCS refused to remove the limitation for (accumulate* OR maximiz*) within 50 words of Express Scripts (and permutations) and Accredo (and permutations). JJHCS's proposal improperly limits its searches. JJHCS has agreed to produce "all non-privileged documents and communications in its possession relating to the extent of the harm SaveOnSP has caused JJHCS during the relevant Time Period." Feb. 14, 2023 Ltr. from A. Lo-Monaco to M. Nelson at 1-2. The purported harm caused by SaveOnSP may be described in ways that do not explicitly refer to SaveOnSP (or a permutation); JJHCS's productions reflect that it often referred to SaveOnSP as a program created by ESI or ESI's SP. *See* JJHCS_00026405; JJHCS_00000641.

To resolve this issue, SaveOnSP proposes that JJHCS use these terms:

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz* OR copay* OR co-pay* OR coins* OR co-ins* OR "cost share")

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz* OR copay* OR co-pay* OR coins* OR co-ins* OR "cost share")

Please confirm that JJHCS will add these search terms. If JJHCS objects to either term on burden grounds, please provide the number of unique documents returned by that term.

*Second*, JJHCS agreed to produce all non-privileged documents and communications regarding its understanding of commercial health plans' ability to designate specialty drugs as EHB or NEHB under the ACA and its regulations during the relevant time period. While JJHCS agreed to run a proposed term regarding EHB and NEHB, the following additional term is required to capture the full universe of relevant documents JJHCS agreed to produce: (CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") /100 (ACA OR "Affordable Care Act" OR Obamacare). Please confirm that JJHCS will add this search term. If JJHCS objects to the term on burden grounds, please provide the number of unique documents returned by that term.

*Third*, JJHCS rejected the following search terms:

- "copay assistance" w/10 program

- (CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") AND (patient w/20 (copay or payment or contrib*)) pay* w/100 (patient w/10 ("high deduc*") OR "high-deduc* OR "health savings" OR HSA)

- Copay w/5 accumulat*

- Copay w/5 max*

George LoBiondo
July 18, 2023

Based on JJHCS's productions to date, JJHCS often refers to copay maximizer or accumulators or describes the services SaveOnSP provides at a high level, without explicitly referring to SaveOnSP (or Express Scripts or Accredo). For example, JJHCS_00011151-53 is ███████████████████████████████████████████ ███████████████████████████████. The document does not use the terms SaveOnSP, Express Scripts, or Accredo. Although SaveOnSP does not concede it is an accumulator or maximizer, JJHCS refers to SaveOnSP as such. To capture all relevant documents on SaveOnSP's services, JJHCS must add search terms describing SaveOnSP's services, but not mentioning SaveOnSP itself.

*Fourth*, JJHCS appears to have implemented a program which it calls "CAP" to address the effects of accumulators and maximizers. *See, e.g.*, JJHCS_00001207. JJHCS also appears to use the term "CAPa" to refer to efforts to identify patients on accumulators and "CAPm" to refer to efforts to identify patients on maximizers. *Id.* The following additional term is required to capture the full universe of relevant documents JJHCS agreed to produce: "CAP" OR "CAPm" OR "CAPa."

Please confirm that JJHCS will add these search terms. If JJHCS objects to either term on burden grounds please provide the number of unique documents returned by that term.

\*　　　　　\*　　　　　\*

Please respond by July 21, 2023. We reserve all rights and are available to meet and confer.

Best,

/s/ Elizabeth Snow

Elizabeth H. Snow
Associate

6

# Exhibit 9

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

selendy
gay
elsberg

Elizabeth Snow
Associate
212 390 9330
esnow@selendygay.com

August 28, 2023

**Via E-mail**

Julia Haigney Long
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jhaigneylong@pbwt.com

Re:    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-JMV-CLW)**

Dear Julia,

SaveOnSP writes to ask that JJHCS add the individuals identified below as
custodians. Some requests are new; others follow up on prior requests.

If JJHCS objects to adding any individual on the ground that doing so would
be unduly burdensome or that their documents would be duplicative or cumulative
of those of another custodian, please provide hit counts of how many unique, rele-
vant documents would be identified for that individual by each of the terms that
JJHCS has agreed to run or that SaveOnSP has moved the Court for it to run on its
existing custodians. *See Steven Madden, Ltd. v. Jasmin Larian, LLC*, 2019 WL
3940112, at *2 (S.D.N.Y. July 8, 2019) (finding vague assertions that proposed cus-
todians' document would be duplicative "unsupported by evidence and meritless").

**A.    Quinton Kinne**

SaveOnSP asks that JJHCS add Quinton Kinne as a custodian. SaveOnSP
first made this request in its March 7, 2023 letter. In its July 28, 2023 letter, JJHCS
offered to add Kinne as a custodian if SaveOnSP would add Ayesha Zulqarnain and
drop all other requests for other custodians; SaveOnSP added Zulquarnain but did
not agree to forego all other custodian requests.

Kinne is relevant to this litigation: (1) JJHCS identified Mr. Kinne as
(a) having identified or attempted to identify health plans advised by SaveOnSP or
patients enrolled in such plans; and (b) having responsibility for monitoring and

Julia Haigney Long
August 28, 2023

addressing the amount of CarePath copay assistance provided to patients enrolled in SaveOnSP-advised plans, Jan. 17, 2023 JJHCS's Resps. to SaveOnSP's First Interrogatories at 15-16; (2) Kinne serves as the Senior Manager for Pharmacy Monitoring and Program Compliance as part of the Strategic Customer Group of JJHCS, JJHCS_00000358; (3) Kinne worked with John Paul Franz on ███████ ████████████████████████, JJHCS_00010098; and (4) Kinne circulated ████████████, JJHCS_00011143.

Kinne is likely to have unique documents. In its March 16, 203 letter, JJHCS argued that Kinne's documents would be captured by John Paul Franz's documents. In its July 28, 2023 letter, JJHCS claimed that Kinne's documents would be captured by Lindsey Anderson's documents. Discovery has shown otherwise: (1) Kinne sent an email solely to Alison Barklage to discuss the copay adjustment program (CAP) and saying that he attends the CAP meetings, JJHCS_00035757—indicating that he has unique documents regarding the CAP; and (2) Kinne attended one-on-one meetings with Leigh Wyszkowski regarding SaveOnSP, ████████████████████████████████, JJHCS_00008989—████████████████.

## B.    Daphne Longbothum

SaveOnSP asks that JJHCS add Daphne Longbothum as a custodian. SaveOnSP first made this request in its May 9, 2023 letter. In its July 28, 2023 letter, JJHCS offered to add Longbothum as a custodian if SaveOnSP would add Ayesha Zulqarnain and drop all other requests for other custodians; SaveOnSP added Zulquarnain but did not agree to forego all other custodian requests.

Longbothum is relevant to this litigation: (1) she is the Manager, Patient Affordability & Access Solutions, Pulmonary Hypertension, for the Janssen Pharmaceutical Companies of Johnson & Johnson, Daphne Longbothum, LINKEDIN, https://www.linkedin.com/in/daphne-longbothumb734862b (last visited Aug. 27, 2023); (2) Longbothum circulated the high level deadlines for the pulmonary hypertension CAP program, ████████████████████████, JJHCS_00008591; (3) ██████████████████████████—JJHCS_00001391, JJHCS_00001464; (4) she appears to have worked on the website for CarePath for Tremfya, JJHCS_00008463; (5) she provided input on the CAP program requirements, JJHCS_00008466; JJHCS_00008584; JJHCS_00008634; and (6) ████████████████████████, JJHCS_00008501.

Julia Haigney Long
August 28, 2023

Longbothum is likely to have unique documents. In its May 19, 2023 letter, JJHCS asserted that all her relevant documents would be captured by Nidhi Saxena's and Hattie McKelvey's documents. In its July 28, 2023 letter, JJHCS asserted that her documents would be captured by Adrienne Minecci's documents. Discovery has shown otherwise: (1) Longbothum spearheaded the effort ███████ ██████████████████████████████████████, JJHCS_00001464— indicating that she would have unique documents about that effort; (2) Long-bothum received ████████████████████████████████████████████████ █████, JJHCS_00008802—indicating that she would have unique documents on pa-tients identified as belonging to accumulator or maximizer plans; and (3) ████████ ██████████████████████████████, JJHCS_00008838—further indicating that she has unique documents on efforts to identify such patients.

## C.    Juliette Deshaies

SaveOnSP asks that JJHCS add Juliette Deshaies as a custodian. SaveOnSP first made this request in its May 9, 2023 letter.

Deshaies is relevant to this litigation. Per LinkedIn, she was the Group Product Director of the ERLEADA Patient Experience. Juliette Deshaies, LINKEDIN, https://www.linkedin.com/in/juliette-deshaies-1132b44 (last visited May 9, 2023). As JJHCS represented to the Court, Deshaies worked on the mar-keting of multiple Janssen Drugs at issue, June 23, 2023 Joint Ltr. at 11, ECF No. 127 (Deshaies's "primary responsibilities related to the marketing of Simponi Aria, Stelara, and Tremfya").

While JJHCS asserted that Deshaies's "primary responsibilities" did not in-clude CarePath, *id.*, discovery shows that Deshaies was heavily involved with that program: (1) she worked closely with Adrienne Minecci on CarePath for Deshaies' "brands" (that is, the drugs she marketed), JJHCS_00059500; (2) she worked with Minecci on patient communications that included CarePath's terms and con-ditions, JJHCS_00059501 at 3 (requiring eligible patient using commercial insur-ance), 7 (CarePath's terms and conditions); (3) she was asked for feedback on a presentation ████████████████████████████████████████████████ ████, JJHCS_00083826, which included CarePath's terms and conditions; (4) ████, JHCS_00110089; JJHCS_00114605; JJHCS_00061959; JJHCS_00061961, in-cluding reviewing and seeking approval for program language, JJHCS_00061959, and refreshing the patient website for Simponi Aria to reflect CarePath program language, JJHCS_00114605; and (5) she provided direction ████████████████ ████████████████████████████████████████████████████████████ ██████ JJHCS_00011144-45.

3

Julia Haigney Long
August 28, 2023

Deshaies was also involved in deciding whether JJHCS would establish a copay adjustment program (CAP) for Erleada: (1) ███████████████████████████ ████████████, JJHCS_00083836; *see also* JJHCS_00083838; (2) she was sent (not just cc'ed) an email regarding a ███████████████████ ██████████████████████, JJHCS_00083826, and ████████████████████████████████████████████ ████████████████████████████████.

Deshaies is likely to have unique documents. In its May 19, 2023 letter, JJHCS asserts that her documents would be cumulative of those in the files of custodians Spilios Asimakopoulos, Heith Jeffcoat, and Lynn Hall. Discovery shows otherwise: (1) Deshaies received an email from McCann regarding ██████████ ████████████████████████████, JJHCS_00069842—indicating that she has unique documents regarding the offering of CarePath for Stelara; (2) she had a call with Alison Barklage without any current custodians regarding ██████████████████████████████████████, *see, e.g.*, JJHCS_00104243—indicating she has unique documents regarding the offering of CarePath for Stelara.

## D.    Leigh Wyszkowski

SaveOnSP asks that JJHCS add Leigh Wyszkowski as a custodian. Save-OnSP first made this request in its March 7, 2023 letter.

Wyszkowski is relevant to this litigation: (1) she is the Director of Fee for Service (FFS) Execution & Cut Supplier Management as part of the Strategic Customer Groups, JJHCS_00000346; (2) ███████████████████████ ███████, JJHCS_00026553; (3) █████████████████████████████ ██████████████████████████, JJHCS_00000551—the other was an employee of KPMG, ████ JJHCS_00000641 (copying Ms. Wyszkowski); and (4) she assisted Franz in reviewing an employee, JJHCS_00000553, ████████████████████████████████████████████, JJHCS_00000645—indicating that she worked on and/or had knowledge of that response.

Wyszkowski is likely to have unique documents. In its March 16, 2023 letter, JJHCS asserted that her communications would be captured by other custodians, including Franz. Discovery shows otherwise: (1) she attended a one-on-one with Kinne regarding SaveOnSP that, by definition, Franz did not, JJHCS_00008989; (2) Franz stated that ████████████████████████████, JJHCS_00010064— indicating that Wyszkowski worked on aspects of CarePath without Franz's direct involvement.

4

Julia Haigney Long
August 28, 2023

### E.    William Shontz

SaveOnSP asks that JJHCS add William Shontz as a custodian. SaveOnSP first made this request in its May 9, 2023 letter.

Shontz is relevant to this litigation. Per LinkedIn, he is Associate Director, Patient Access and Affordability Solutions, Oncology at Johnson & Johnson. William (Will) Shontz, LINKEDIN, https://www.linkedin.com/in/williamtshontz (last visited May 9, 2023). Shontz worked on the marketing of CarePath.

JJHCS_00104322; *see also* JJHCS_00104319; JJHCS_00044074.

JJHCS_00104322 at 13.

Shontz worked on setting CarePath's budget and modifying its terms and conditions: (1) he was asked to JJHCS_00029708; (2) he was included on communications regarding JJHCS_00030300; (3) he was included on communications regarding , JJHCS_00002355; (4) he corresponded routinely with the vendors Thomas J. Paul, JJHCS_00044011, and Trial-Card, including to inform TrialCard that , JJHCS_00104708 (including the changes ).

Shontz also worked on programs that considered reducing copay assistance payments to patients enrolled in SaveOnSP-advised plans: (1) he edited project requirements for a program with , JJHCS_00029831-34; *see also* JJHCS_00029829 (reflecting that Mr. Shontz provided edits and comments), JJHCS_00029838; (2) he sent Deshaies a draft presentation for , JJHCS_00083826; (3) . JJHCS_00104645; and (4) . JJHCS_00104674.

Shontz is likely to have unique documents. In its May 19, 2023 letter, JJHCS claimed that his documents and communications would be captured by the documents of custodians Nidhi Saxena and Hattie McKelvey. In the June 23, 2023 joint letter, JJHCS asserted that his documents would be captured by the documents of custodians McKelvey and Silviya McCool. Discovery shows otherwise: (1) he received several relevant communications that were not sent to those other

Julia Haigney Long
August 28, 2023

custodians, JJHCS_00005897; JJHCS_00034500; JJHCS_00034561; JJHCS_00034602—indicating that he received relevant communications directly; (2) he appears on an email regarding ███████████████████████ ██████████████████, JJHCS_00044011 (later forwarded to a custodian); (3) Shontz apparently gave an approval regarding ████████████████████████ ██████████████████, JJHCS_00030136—indicating that he either had independent approval authority or the authority to act in McCool's stead; (4) when McCool was out of the office, she directed people to reach out to Shontz, JJHCS_00001202, and later emails in that thread do not include McCool or McKelvey; and (5) many emails include Shontz but neither McKelvey or McCool, *see, e.g.,* JJHCS_00005897 (email from Mr. Robinson to Mr. Shontz stating ███████████████████████); JJHCS_00008556 (emails with Thomas J. Paul and Trial Card regarding the CarePath website).

### F.    Alison Barklage

SaveOnSP asks that JJHCS add Alison Barklage as a custodian. SaveOnSP first made this request in its July 18, 2023 letter.

Barklage is relevant to this litigation. While JJHCS asserted in its July 28, 2023 letter that she was a "JJHCS contractor during the relevant period with administrative responsibilities," LinkedIn states that from 2004 to 2007 she was a Consulting Director at Johnson & Johnson and from 2011 to the present has been the President of AKB Consulting (her own company), in which she "delivers change & project management consulting for large pharmaceutical companies" and "support[s] senior stakeholders with project management on critical business initiatives, including issue identification, stakeholder engagement & communications, project planning, dashboard status reporting, and success measurement plans."[1]

Discovery confirms that her work for JJHCS was substantive: (1) she sent an email regarding ████████████████████████████████████ ██████ ██████ █████████████████ ██ ██████, JJHCS_00084174; *see also* JJHCS_00084176, (2) in many instances, Heith Jeffcoat asked for her feedback on relevant presentations, including about the CAP program, JJHCS_00084504; JJHCS_00084426; JJHCS_00084507; (3) she asked Jeffcoat for his thoughts on

---

[1] Alison Barklage, MHSA, LINKEDIN, https://www.linkedin.com/in/alison-barklage?challengeId=AQFbgDDvMikQdAAAAYotJLka16VvfLHioohPKqHkyHQ q8-x8kcseu4DpAyvTdJVIQsr0EHO_irv6te5zBl4ZpmiokUGq-gnyfw&submissionId=a11fb285-55a7-7e17-f8f8-22be33e1a736&challengeSource=AgEdBx4PytP1swAAAYotJO8HtPee3A-dt2H1mjjKjMQQi7fuI_H-PqNqfXcY7m8&challegeType=AgEEI2s1TqMI3QAAAYotJO8LI_gIY5uJ0J4qMy 9wQdzaZGx4qhGD2YI&memberId=AgGbLaHzL0TyeAAAAYotJO8OUy_dh7q02 DhaOAmyeVtVWiY&recognizeDevice=AgFf9b5VuiQntgAAAYotJO8SLSPSWYD0 Dv5BdP2y1X2lUqTey2kg (last visited Aug. 25, 2023).

Julia Haigney Long
August 28, 2023

████████████████████████████████████████████

JJHCS_00084681—indicating that she was substantively involved in the decision-making process; (4) she called a meeting regarding ███████████████

███████████████████ JJHCS_00117387—indicating that she was driving discussions regarding cost support (e.g., CarePath); and (5) she told others that she was working with Minecci regarding ████████████████████
████████, JJHCS_00060430.

Barklage is likely to have unique documents. In its July 28, 2023 letter, JJHCS asserted that her files would be captured by Jeffcoat's documents. Discovery shows otherwise: (1) she was the only sender of an email to Jeffcoat regarding ████████, JJHCS_00084681—indicating she has unique information about CarePath's enrollment; (2) she is part of a series of emails about ███████████

████████████████, JJHCS_00069171—indicating she has unique information about the offering of CarePath for Darzalex; and (3) she sent a presentation that ██████████████████████████████████████████

███████████████████████████████████████████,
JJHCS_00069174—indicating that she has unique information regarding JJHCS's communication efforts regarding CarePath.

### G.    Blasine Penkowski

SaveOnSP requests that JJHCS add Ms. Penkowski as a custodian.

Penkowski is relevant to this litigation: (1) she serves as the Chief Strategic Customer Officer of JJHCS,[2] *see* JJHCS_00000106; (2) ████████████████
JJHCS_00101641 (scheduling a meeting to ████████████████████
██████████████); JJHCS_00084221 (discussing how SaveOnSP works and revealing ████████
██████); JJHCS_00101570 (sending Penkowski

---

[2] In the June 23, 2023 joint letter, JJHCS indicated that Penkowski and Scott White were immune from discovery under the apex doctrine. In fact, "the 'apex doctrine,' while it may be applicable to depositions, is not a protective shield that prohibits document discovery from high-ranking executives." *Sandoz, Inc. v. United Therapeutics Corp.*, 2020 WL 13830525, at *3 (D.N.J. Nov. 16, 2020) (citing *Nat'l Labor Relations Bd v. 710 Long Ridge Rd Operating Co. II, LLC*, 2020 WL3026523 at *2 (D.N.J. June 5, 2020)).

Julia Haigney Long
August 28, 2023

███████████); (3) Penkowski called a meeting regarding
█████████████, JJHCS_00083216; and (4)
████████, *see* JJHCS_00001830; JJHCS_00001668 (an individual named Karan
Dhundia ████████████████████████
███████████████████████████████████).

Penkowski is likely to have unique documents. In the June 23, 2023 joint
letter, JJHCS asserted that her files would be captured by those belonging to Katie
Mazuk. Discovery shows otherwise: (1) Penkowski appears on many relevant email
threads without Mazuk, *see* JJHCS_00027236 (████████████████
█████████████████████████); JJHCS_00026852
(Penkowski remained part of those discussions in December 2017); (2)
███████████████████████, JJHCS_00026519, and *2022 Economic Re-
port on U.S. Pharmacies and Pharmacy Benefit Managers* by Adam Fein,
JJHCS_00074697—indicating that She directly received unique information
about SaveOnSP and other entities that JJHCS deems to be maximizers; (3) she
signed many contracts with TrialCard outlining TrialCard's duties for JJHCS in
relation to CarePath, JJHCS_00025908; JJHCS_00025517 (showing modifica-
tion by Ms. Penkowski, but not Ms. Mazuk); JJHCS_00025532 (same);
JJHCS_00024511 (same); JJHCS_00025594 (same)—indicating that she has
unique information about JJHCS's relationship with TrialCard.

## H.    Scott White

SaveOnSP requests that JJHCS add Mr. White as a custodian.

White is relevant to this litigation: (1) he is a member of JALT and serves as
the Company Group Chairman for North America Pharmaceuticals Johnson &
Johnson, *see* JJHCS_00001542; (2) White was forwarded ██████████
█████, JJHCS_00001704; (3)
████████████████████████, *see, e.g.*, JJHCS_00011154
(a December 17, 2021 meeting with the subject ████████); JJHCS_00041213 (
█████████████████); and (4)
██████████ *see* JJHCS_00001830; JJHCS_00001668 (
████████████████████████████████████
████).

White is likely to have unique documents. In its June 23, 2023 joint letter,
JJHCS asserted that his files would be captured by Mazuk's documents. Discovery

8

Julia Haigney Long
August 28, 2023

shows otherwise: (1) ██████████ ███ ██ █ ██ █, JJHCS_00100210, *see also*
JJHCS_00100213 (███████████████████████)—indicating ███████████
███████████; (2) he signed work orders and change orders with
TrialCard,    JJHCS_00039767;    JJHCS_00039772;    JJHCS_00039696;
JJHCS_00039374; JJHCS_00039378; JJHCS_00039382; JJHCS_00039625;
JJHCS_00039879—indicating that he has unique information about JJHCS's re-
lationship with TrialCard.

### I.    Karen Lade

SaveOnSP requests that JJHCS add Karen Lade as a custodian.

Lade is relevant to this litigation. She appears to be a Product Director, In-
tegrated Customer Solution, Patient Affordability Strategy at Janssen Immunol-
ogy,[3] JJHCS_00002688. She performed significant work related to CarePath:
(1) ████████████████████████████████████████████████████████████
JJHCS_00083183; *see also* JJHCS_00083894 (sharing ██████████████
████); (2) she was asked to send custodian Spilios Asimakopoulos
███████████████████ JJHCS_00083180—indicating that she was deeply involved
with CarePath's role; (3) she worked on ████████████████████████████
██████████, JJHCS_00105296; and (4) she provided ████████████████
████████████████████, JJHCS_00045468.

Lade is likely to have unique documents. In the June 23, 2023 joint letter,
JJHCS asserted that she was not likely to have unique documents because she
simply provided information about CarePath to other JJHCS personnel. Discovery
shows otherwise: (1) Lade sent emails regarding CarePath in 2016 to Jeffcoat, at-
taching other emails regarding CarePath with no custodian as a party.
JJHCS_00083929 (attaching JJHCS_00083930); (2) she sent emails regarding
████████████████████████████████████████████████████████████
█████, JJHCS_00083930—indicating that she has unique information about
those goals; and (3) she is listed ████████████████████████████
████████████████████, JJHCS_00083931; *see
also* JJHCS_00083932 (same)—indicating that she has unique information about
questions from those representatives involving CarePath.

### J.    L.D. Platt

SaveOnSP asks that JJHCS add L.D. Platt as a custodian. He is relevant to
this litigation: (1) JJHCS identified him as an individual who provided input on
communications related to this Action," July 28, 2023 JJHCS Suppl. Resps. to
SaveOnSP's First Interrogatories at 12, and he has emailed with JJHCS's lawyers

---

[3] Ms. Lade does not appear on any organizational chart produced to date by JJHCS.

Julia Haigney Long
August 28, 2023

regarding communications about this lawsuit, JJHCS_00027998; (2) ███████████████

██████████████████████████████████████████████, JJHCS_00100535;
JJHCS_00008448; JJHCS_00008451; JJHCS_00037157; (3) ████████████████

████████████████████████████████, JJHCS_00008447; (4) █████████████████

███████████████████████████████████████████████, JJHCS_00027996;
JJHCS_00008450; JJHCS_00037156; (5) ███████████████████████████████

██████████████████████████, JJHCS_00027974; (6) ███████████████████

███████████████████████, JJHCS_00001707; (7) ████████████████████████



JJHCS_00001668.

### K.    Ernie Knewitz

SaveOnSP asks that JJHCS add Ernie Knewitz as a custodian. He is relevant to this litigation: (1) JJHCS identified him as an individual who provided input on communications related to this Action," July 28, 2023 JJHCS Suppl. Resps. to SaveOnSP's First Interrogatories at 12; (2) he is the Regional Pharmaceutical Communications Leader, the Americas, and a member of the JALT, JJHCS_00001859; (3) ████████████████████████████████████████████████████
████████████████████, JJHCS_00001857;  (4) ███████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████, JJHCS_00083266; (5)████████████████████████████████████████████████████████████████████████████,
JJHCS_00100210; (6) ████████████████████████████████████████████

████████████████████████████████, JJHCS_00041213, and ██████████████████

████████████████████████████████████████, JJHCS_00001704.

### L.    Silas Martin

SaveOnSP asks that JJHCS add Silas Martin as a custodian. He is relevant to this litigation: (1) JJHCS identified him as a person who had responsibility for JJHCS's understanding of the terms 'copay accumulator' and 'copay maximizer,'" July 28, 2023 JJHCS Suppl. Resps. to SaveOnSP's First Interrogatories at 23-24; (2) ████████████████████████████████████████████████████████████████████████████,
JJHCS_00114446; and (3) ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████ JJHCS_00001594.

Julia Haigney Long
August 28, 2023

### M.    John Hoffman

SaveOnSP asks that JJHCS add John Hoffman as a custodian. He is relevant to this litigation: (1) JJHCS identified him as a person who had responsibility for JJHCS's understanding of the terms 'copay accumulator' and 'copay maximizer,'" July 28, 2023 JJHCS Suppl. Resps. to SaveOnSP's First Interrogatories at 23-24; (2) per LinkedIn, as the former head of Health Policy & Advocacy at Johnson & Johnson, he "help[ed] to enact state legislation prohibiting non-medical switching and copay accumulator and maximizer programs";[4] and (3) ████████████████

████████████████████, JJHCS_00027236; JJHCS_00026852; (4) ████████████████████, JJHCS_00101570; (5) ████████████████████

JJHCS_00100210; JJHCS_00126949; and (6) ████████████████████, JJHCS_00114446.

           *           *           *

We request a response by September 5, 2023.

We reserve all rights and are available to meet and confer.

Best,

/s/ Elizabeth Snow

Elizabeth H. Snow
Associate

---

[4] John Hoffman, LINKEDIN, https://www.linkedin.com/in/john-hoffman-b788147?challengeId=AQHIg4eOVl86lAAAAYovUZQ9SsGyvdo2HYtutCig6Xv1w LmAESYejIZNNUm5tj_f3xXdkNRIsO2pKckOxX0yNv2iDuWS_CHTJA&submis sionId=80ad3273-86c8-7e17-a1fe-77f347742717&challengeSource=AgH1X6LAia67HwAAAYovU4AHBhdazZxe-czPqZAJoV21oKYm5wu7ZSjcwBLBnKw&challegeType=AgGRK-8FFEdBJgAAAYovU4AJHwvS8UwxYtNjfsJqMYjqd1mPyaC3LvM&memberId=A gGo7hRMgBgeJAAAAYovU4AMGQyolcdLCH7f9bLEylRddVo&recognizeDevice= AgGseyLBagE6qAAAAYovU4APYASa3jZyEgK9oMKG0BoiwT_PF69U      (last visited Aug. 25, 2023)