# Robinson+Cole

E. Evans Wohlforth, Jr.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

March 21, 2024

**<u>VIA E-Mail</u>**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

> Re:  *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
> <u>No. 2:22-cv-02632 (JKS) (CLW)</u>

Dear Judge Wolfson:

On behalf of Defendant Save On SP, LLC ("**<u>SaveOn</u>**"), we write to oppose Plaintiff John-son and Johnson Health Care System's (with its affiliates, "**<u>J&J</u>**") March 13, 2024 motion to com-pel SaveOn to produce documents in response to J&J's Requests for Production ("<u>RFP</u>") Nos. 95 and 96, which seek documents concerning SaveOn's enforcement of its employee confidentiality policies.[1] Those policies are irrelevant to J&J's claims, there is no evidence or reason to believe that SaveOn ever abused those policies, and J&J's requests are unduly burdensome.

---

[1] RFP No. 95 requests "[a]ny Documents or Communications concerning Your Employee confidentiality obligations, ██████████████████████████████████████████████████████

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

## Background

Like many companies, SaveOn has confidentiality policies. SaveOn advises commercial health plans on designing plan benefits, assists members enrolled in SaveOn-advised plans with enrolling in manufacturer copay assistance programs like J&J's CarePath program, and on behalf of its client plans monitors those members' pharmacy accounts with the members' consent. SaveOn has thousands of clients, including unions, universities, municipalities, non-profits, and private companies of all sizes. In this work, SaveOn has access to confidential information about its clients (including private billing information) and about many of its clients' plan members, including medical records, test results, and other confidential health-related information protected by HIPAA.[2]



In relevant part, the Confidentiality Policy States:

_____

as well as any other written policies, manuals, or trainings concerning Your Employees' confidentiality obligations." J&J Ex. 1 (J&J 9th Set of RFPs).

RFP No. 96 requests "[a]ny Communications with Your Employees relating to compliance with or attestation to Your Employee confidentiality policies or other confidentiality obligations." _Id._

[2] Although irrelevant to its motion, J&J also asserts that (1) SaveOn's conduct harms the public, Mot. 2—which SaveOn strongly disputes; (2) SaveOn attempted to evade detection by manufacturers, Mot. 2-3—which mischaracterizes the discovery record; (3) that ████████████████████████ J&J Ex. 2, Mot. 2— ████████ J&J Ex. 2 at 4; and (4) that patients complained about SaveOn's conduct, Mot. 3-4—in truth, the vast majority of patients on SaveOn-advised plans gave very positive feedback on their interactions with SaveOn.

[3] ████████████████████████████████████



*Id.* at 25.



. SaveOn Ex. 2 (Mighells Employee Handbook Affirmation).

Mighells quit in September 2022, eight months before the updated Confidentiality Policy went into effect, after learning that he would not be promoted. After he left, Mighells began posting statements about SaveOn on social media platforms including LinkedIn and Facebook. Some were ad hominem attacks on former coworkers; for example:

> [I]n today's episode of I'm going to publicly shame you and the company you work for, Jen you're todays' big winner. It seems they can't seem to get me out of their heads. Nice to know I'm still mind f****** you. #notafraid #iwontbesilenced #myd***isbigger-thanyours #ididntsigns*** #yupimtauntingyou

SaveOn Ex. 3 (LinkedIn Post Screenshot). Others were about J&J's lawsuit against SaveOn; for example:

> The roof, the roof, the roof is on fire[.] (We don't need to water, let the motherf****** burn) (Burn, mother******, burn). Lol[.]

SaveOn Ex. 4 (Facebook Post Screenshot). Still others were discussions of SaveOn's business. For example, in a Facebook group named "DOWN WITH Express Scripts and Accredo," Mighells wrote:

> You do have the option of declining enrollment. It's not mandatory. But the cost share of your medication is such that you don't want to opt out as you will max out the copay program. … I used to be the training supervisor for SOSP. I can answer your questions. Feel free to DM me as they monitor this group. …"

SaveOn Ex. 5 (Facebook Group Screenshot).

SaveOn later learned that, ████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████ *See, e.g.* SaveOn Ex. 6 (SOSP_1039788-879), SaveOn Ex. 7 (SOSP_1040609-614). SaveOn sent Mighells a letter on May 23, 2023, citing the Employee Handbook, and directing him to immediately cease and desist (1) "[his] unauthorized use and disclosure of any confidential and trade secret information obtained by [him] and a result of [his] former employment at SaveOnSP" and (2) "holding [him]self out as an agent of SaveOnSP or someone otherwise authorized to speak on behalf of SaveOnSP's policies and practices." SaveOn Ex. 8 (May 26, 2023 Ltr.).

Instead, Mighells gave confidential documents he stole from SaveOn to J&J. On August 4, 2023, SaveOn received notice that J&J had subpoenaed Mighells, SaveOn Ex. 9 (Aug. 4, 2023 Email from E. Shane); on August 25 and October 19, 2023, J&J provided to SaveOn documents that Mighells produced in response to that subpoena. SaveOn Ex. 10 (Aug. 25, 2023 Mighells Prod. Ltr.); SaveOn Ex. 11 (Oct. 19, 2023 Mighells Prod. Ltr.). In these productions, which totaled 487 documents, were confidential documents that Mighells took from SaveOn, including SaveOn talk tracks, training materials, PSR scoring metrics, internal SaveOn FAQs, and draft letters to

patients—many of which SaveOn had produced to J&J on a Confidential or Attorneys Eyes Only basis.

On August 18, 2023—shortly after subpoenaing and presumably speaking with Mighells—J&J served its Interrogatory No. 18, asking if SaveOn had ever used its confidentiality policies to prevent SaveOn's current or former employees from communicating with J&J or others about the conduct at issue in this case. J&J Ex. 14 (J&J Third Set of Interrogatories at 5). SaveOn responded (excluding its objections):



SaveOn Ex. 12 at 9 (Defendant's Supp'l R&Os to Plaintiff's Third Interrogatories).

In October 2023, J&J served the document requests at issue, asking SaveOn for a wide range of material about its confidentiality policies, J&J Ex. 1 at 5 (J&J 9th Set of Requests for Production), which SaveOn declined to produce, SaveOn Ex. 13 at 3-4 (SaveOn's R&Os to J&J 9th Set of Requests for Production). In an effort to avoid a dispute, however, SaveOn produced the policy that applied to Mighells and the May 2023 update. SaveOn Ex. 14 (Feb. 8, 2024 Ltr. from M. Nussbaum to S. Arrow).

On December 12, 2023, SaveOn sent Mighells a letter informing him of the confidential nature of the documents he stole from SaveOn. SaveOn Ex. 15 (Dec. 12, 2023 Ltr. from E. Snow to S. Riden). SaveOn has preserved its rights to take legal action but has not done so.

J&J now brings its motion, demanding communications concerning SaveOn's motives for its policies, its efforts to enforce those policies, and any employee who breached the policies or refused to sign them. J&J did not meet and confer with SaveOn before making this second narrowed request; SaveOn learned of it for the first time in reading J&J's motion.

<u>**Argument**</u>

## I.  SaveOn's Confidentiality Policies Are Irrelevant

It is normal business practice for companies to maintain and enforce confidentiality policies. *See generally*, Melvin Jager, *Restrictive covenants vs. confidentiality agreements—Confidentiality Agreements*, 2 Trade Secrets Law § 13:3 (West 2023) (collecting cases showing confidentiality policies are generally enforceable). J&J recently sought to enforce its own confidentiality policies to prevent an alleged theft of trade secrets. Andrea Park, *J&J's Auris Health, Verb Surgical accuse 3 former employees of trade secret theft*, https://www.fiercebiotech.com/medtech/jjs-auris-health-verb-surgical-accuse-3-former-employees-shameless-trade-secret-theft (last accessed March 19, 2024).

J&J does not argue that SaveOn's confidentiality policies are somehow inappropriate, nor could it. Confidentiality policies in New York, where SaveOn is based and whose law generally governs SaveOn's Employee Handbook, are enforceable if they are reasonable in time or geographic area. *Intertek Testing Servs, N.A., Inc. v. Pennisi*, 443 F.Supp.3d 303, 333-34 (E.D.N.Y. 2020); *see also Ashland Mgmt. Inc. v. Altair Inves. NA, LLC*, 869 N.Y.S. 2d 465 (1st Dept. 2008), *aff'd as modified*, 925 N.E.2d 581 (N.Y. 2010) (confidentiality policies are treated as restrictive covenants under New York law). Companies can enforce confidentiality policies if necessary "(1)

to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employees' services to the employer are deemed special or unique." *Pennisi*, 443 F.Supp.3d. at 336.

J&J brings no claims that involve or even touch on SaveOn's Confidentiality Policy. In its proposed Amended Complaint, Dkt. 219, J&J alleges purported violations of NY GBL § 349, tortious interference with contract, and conspiracy and aiding and abetting of tortious inference, *id.* ¶¶ 182-205. These claims all focus on SaveOn's communications with patients—allegedly making false statements to them (GBL) or supposedly inducing them into violating CarePath's terms and conditions (tortious interference). *Id.* None involve SaveOn's employees, its Confidentiality Policy, or its enforcement thereof. J&J does not mention those policies anywhere in its existing Complaint or its proposed Amended Complaint.

SaveOn's Confidentiality Policy would be relevant here only—and only to the extent— that it had abused it by trying to prevent employees from disclosing materials to J&J in discovery. *Green v. Cosby*, 314 F.R.D. 164, 170 (E.D. Pa. 2016) (citing *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F. 3d 664, 665 (7th Cir. 2009)). SaveOn has reviewed over a million documents—including in response to RFP No. 6 seeking "[a]ll communications between SaveOnSP and JJHCS, as well as all communications SaveOnSP has had relating to SaveOnSP's communications with JJHCS," SaveOn Ex. 16 at 6 (J&J's First Set of RFPs)—and found no evidence that it ever used or tried to use its confidentiality policies in such a way. J&J's speculation that someone at SaveOn might have written an email saying that SaveOn was "implementing" its policies to

stymie J&J in this case, Mot. 6, is both nonsensical—SaveOn implemented the policies years be-

fore J&J filed its claims, so could not have done so in reaction to those claims—and untethered by

any evidence.

     As stated in response to Interrogatory No. 18, ██████████████████████████████

████████████████████████████████████████████████████████, SaveOn

Ex. 12 at 9—███████████████████████████ SaveOn did not prevent or at-

tempt to prevent J&J from obtaining documents from Mighells in discovery—including the docu-

ments that he stole—or from deposing him.

     J&J cites nothing to suggest that SaveOn adopted or used its Confidentiality Policy to pre-

vent it from obtaining information from SaveOn's current or former employees through the dis-

covery process. To the contrary, J&J's subpoena to Mighells, and its receipt of the documents from

him, is evidence that J&J has been able to obtain such information through discovery. Nothing in

SaveOn's two letters to Mighells states or suggests that he cannot comply with valid discovery

requests; they simply say that he should stop violating SaveOn's confidentiality policies, SaveOn

Ex. 8, SaveOn Ex. 15, which is entirely proper.

     J&J's assertion that SaveOn "concede[d]" and "admi[tted]" that it enforced its policies to

stymie J&J in this litigation, Mot. 6, is flatly false—████████████████████████████

████████████████████████████ SaveOn Ex. 12 at 9

(emphasis added). Preventing such communications thus could not have been one of SaveOn's

motives in adopting its policies. This is especially true for Mighells, who started working at

SaveOn years before it adopted its original confidentiality policy and quit eight months before

SaveOn updated its policy. SaveOn stated only ████████████████████████████

████████████████████████████████████████████, SaveOn

Ex. 12 at 9. That is patently *not* a statement that SaveOn adopted its policies to prevent its em-
ployees from speaking with J&J.

J&J thus utterly fails to show why SaveOn's confidentiality policies are relevant.

## II.     J&J's Request is Unduly Burdensome

SaveOn has reviewed over a million documents, has produced 261,808, and is on track to
produce tens of thousands more by the end of the month. Given these massive productions, it
would be unduly burdensome for SaveOn to search for clearly irrelevant documents. *See Alaska
Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016)
(noting that Fed R. Civ. P. Rule 26(b)(1)'s proportionality requirement means utility of the docu-
ment must be considered); *see also Abbott v. Wyoming Cty. Sheriff's Office*, 2017 WL 2115381,
at *2 (W.D.N.Y. May 16, 2017) ("Considerations of proportionality can include reviewing whether
discovery production has reached a point of diminishing returns.").

J&J's assertion that SaveOn failed to substantiate its burden argument, Mot. 7-8, is disin-
genuous. After serving RFP Nos. 95 and 96, J&J proposed a set of extremely broad search terms,
J&J Ex. 17 (Feb. 1, 2024 Ltr from S. Arrow to M. Nussbaum), which SaveOn ran. SaveOn reported
that these terms would pick up *275,000* unique documents and made a burden objection. SaveOn
Ex. 14. J&J then proposed slightly narrowed terms, J&J Ex. 19 (Feb. 12, 2024 Ltr from S. Arrow
to M. Nussbaum), which SaveOn also ran, reporting that they would pick up *215,000* unique doc-
uments, again objecting on the basis of burden. J&J Ex. 18 (Feb. 23, 2024 email from M. Nuss-
baum to S. Arrow). Since this correspondence, J&J filed its motion in which it proposed narrowed
requests, but it notably did not propose any new search terms nor even specify which terms it wants
SaveOn to run. Reviewing the massive crush of documents identified by the terms that J&J did
propose in search of irrelevant information would be incredibly burdensome. *Alaska Elec. Pension*

*Fund*, 2016 WL 6779901, at *3. SaveOn cannot provide hit counts for terms that J&J did not propose.

J&J's assertion that SaveOn refuses to investigate whether it has documents responsive to J&J's requests, Mot. 7, is also misleading: SaveOn's position is that its existing discovery efforts were more than sufficient to identify any actual or contemplated use of its confidentiality policies to stymie J&J in this case. SaveOn conducted an investigation that revealed no such instance. SaveOn also agreed to produce documents in response to J&J's RFP No. 6, which calls for "all communications SaveOnSP has had relating to SaveOnSP's communications with JJHCS." SaveOn Ex. 16 at 6. In its massive review, SaveOn has gathered documents from all those who would be involved with creating or enforcing its confidentiality policies, including Chief Executive Officer Rob Saeli and Chief Information Officer Patrick Garland. SaveOn ran search terms over these custodians' documents that include terms designed to pick up communications about J&J, including "J&J or JNJ" and "JJHCS OR JHCS or JJHCS OR JJHS". If any documents of the sort that J&J speculates exist—saying "[w]e are implementing these so-called confidentiality policies with the real goal of preventing JJHCS or the Court from learning the truth by talking to our employees," Mot. 6—they would have been captured by SaveOn's review. In light of all this, it would be unduly burdensome to compel SaveOn to conduct an additional investigation.

***

We respectfully submit that Your Honor should deny J&J's motion.

Respectfully submitted,

/s/ *E. Evans Wohlforth*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900

Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# EXHIBIT 1

# SEALED IN ITS ENTIRETY

# EXHIBIT 2

# SEALED IN ITS ENTIRETY

# Exhibit 3

Case 2:23-cv-02636-KSM Document 16 Filed 06/06/24 Page 15 of 62 PageID: 351

12:58

# Ted Mighells

**Posts**   Photos



**Ted Mighells**
1d · 🌐

In today's episode of I'm going to publicly shame you and the company you work for,  Jen you're today's big winner. It seems they can't seem to get me out of their heads. Nice to know I'm still mind fucking you.

#notafraid
#Iwontbesilenced
#mydickisbiggerthanyours
#ididntsignshit
#yupimtauntingyou

**All**   My posts   Mentions



**Jennifer Benzel** viewed your profile. See all views.

35m

•••



A post by an employee at **TED Conferences** is popular: "Thus, the miraculous correspondence between mathematics and...

3h





The most crucial decision leaders can make within their organization is who they name as a manager.


Home


Video


Marketplace


Events


Notifications


Menu

# Exhibit 4

Case 2:22-cv-02632-CCC-CLW Document 516-8 Filed 08/04/24 Page 17 of 62 PageID: 24041353

👍 Like      💬 Comment      ➤ Send

---

 **Ted Mighells**
2d · 👥

The roof, the roof, the roof is on fire
(We don't need no water, let the motherfucker burn)
(Burn, motherfucker, burn).  Lol

🔥 🔥 🔥 🔥



policymed.com
**Johnson & Johnson Files Lawsuit Against Drug Benefit Company**

---

👍 Like      💬 Comment      ↪ Share

---

 **Ted Mighells**
2d · 👥

I used to work for a company that obviously doesn't

---

🏠 Home    ▶ Watch    🏪 Marketplace    💳 Feeds    🔔 Notifications    ☰ Menu

# Exhibit 5

Case 2:23-cv-02224-SSS-CLV Document 316-8 Filed 01/03/2025 Page 19 of 62 Page ID: Page 240355

 **DOWN WITH Express Scripts and Accredo!**

Sean Klinetobe · Dec 29, 2022 · 

Anyone else gotten a call from someone at SAVEONSP? Apparently they're partnering with acreedo, and your insurance to more or less force you to get a manufacturer copay card, and if you don't have one or there isn't one available your specialty Med can now cost you as much as 30% of the price of the drug?

5 comments

 Like     Comment     Send

 2

Top comments ⌄

 **Ashley Brown**
I found this group because of this weird BS. It seems extremely fishy to me that they're forcing us to do this.

14w    Like    Reply

 **Amy Jay**

Write a comment...

Case 2:23-cv-00272-SCJ Document 216 Filed 04/19/24 Page 20 of 62 PageID: 356

10:19     ..ll LTE 83

 **DOWN WITH Express Scripts and Accredo!**

Rebecca Jones · Feb 15 · 👥    •••

 **Maureen Curry**
Michael Meyer yep

3w   Like   Reply

 Write a reply...

 **Ted Mighells**
You do have the option of declining enrollment. It's not mandatory. But the cost share of your medication is such that you don't want to opt out as you will max out the copay program. You're insurance is through an employer that is self funded. What that means is they pay the full cost of your medication minus your copay or coinsurance. So they guarantee that you will never pay anything as your employer who would be paying it any way pays it. I used to be the training supervisor for SOSP. I can answer your questions. Feel free to DM me as they monitor this group. I'm one of the few here that actually has experience with SOSP and accredo that isn't afraid to show my name lol. Also remember SOSP doesn't work for you they work to save your employer money. You're just stuck in the middle.

8w   Like   Reply     6 👍❤️

Write a comment...     💬 GIF 🙂

Home   Friends   Watch   Marketplace   Notifications   Menu

**EXHIBIT 6**

**SEALED IN ITS ENTIRETY**

**EXHIBIT 7**

**SEALED IN ITS ENTIRETY**

# Exhibit 8

# BOND SCHOENECK & KING

Avant Building - Suite 900 | 200 Delaware Avenue | Buffalo, NY 14202-2107 | **bsk.com**

**MARK A. MOLDENHAUER, ESQ.**
mmoldenhauer@bsk.com
P: 716-416-7036
F: 716-416-7336

May 26, 2023

Mr. Theodore Mighells
5768 Broadway Street, Apt. Right
Lancaster, NY 14086

Re:     *Notice to Cease and Desist*
        *SaveOnSP, LLC*
        *40 LaRiverie Drive*

Dear Mr. Mighells:

SaveOnSP, LLC is a benefit management company contracted by pharmacy benefit managers and employers to assist with the administration of their various prescription benefit plans.

It has been brought to our attention that post termination of your employment, September 23, 2022, you have on one or more occasions given advice and assistance to customers of SaveOnSP using information you obtained while employed by SaveOnSP, LLC. This is in clear violation of the company's Data Privacy and Security policy, which you attested to having reviewed, requiring you to keep confidential all company data, policies, procedures and trade secrets during and after your employment.

In addition, you have on one or more occasions publicly disparaged the SaveOnSP name and the services it provides to its many customers.

Continuing to proceed in this manner may cause harm to the customer and SaveOnSP. Further, disseminating protectible information belonging to SaveOnSP violates its property rights and is very clearly being done in an attempt to damage the company and its reputation.

By this letter, you are hereby directed to immediately cease and desist your unauthorized use and disclosure of any confidential and trade secret information obtained by you as a result of your former employment at SaveOnSP. You are also directed to cease and desist holding yourself out as an agent of SaveOnSP or someone otherwise authorized to speak on behalf of SaveOnSP's policies and practices.

SaveOnSP reserves all rights with respect to your failure to comply with this cease and desist demand, including but not limited to seeking monetary damage and equitable relief for any past and continued damaging activity. Please be advised that SaveOnSP will also seek injunctive relief and payment of all attorney fees. Your liability and exposure under such legal action could be considerable.

Mr. Meghells
May 26, 2023
Page 2


In an effort to avoid potential legal action and to provide SaveOnSP assurances that you are no longer engaging in the improper activities described above, it is requested that you contact Jody Miller at 716-440-0192. **You are also to notify SaveOnSP immediately if you have shared company information or of any attempts by outside parties to obtain such information.**

In the meantime, SaveOnSP wishes to give you the opportunity to discontinue this damaging conduct by complying with this demand immediately. Thank you for your compliance in this important matter.


Very truly yours,

BOND, SCHOENECK & KING, PLLC


Mark A. Moldenhauer
Member


MAM/tsh

# Exhibit 9

| From: | Shane, Beth (x2659) |
|---|---|
| To: | Andrew Dunlap; WohlForth  E. Evans; Meredith Nelson; David Elsberg; Elizabeth Snow; Emma Holland |
| Cc: | Sandirk, Harry (x2773); Manoi, Adeel A  (x2561); LoBiondo, George (x2008); Haigney Long, Julia (x2878); Arrow, Sara (x2031); Brisson, Katherine (x2552); ~jmoosehause@sillscummis.com; ~klieb@sillscummis.com |
| Subject: | JJHCS v. SaveOnSP // SaveOnSP Third Party Subpoena |
| Date: | Friday, August 4, 2023 10:42:58 AM |
| Attachments: | 2023.08.04  Mighells Subpoena.pdf |

Counsel,

Please find attached a copy of the subpoena that we intend to serve on Theodore A. Mighells later today.

Best,
Beth

**Beth Shane**
She | Her | Hers
Associate
**Patterson Belknap Webb & Tyler LLP**
1133 Avenue of the Americas | New York, NY  10036
T: 212.336.2659 | M: 412.496.0602 | F: 212.336.1262
eshane@pbwt.com | www.pbwt.com

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

# Exhibit 10

| From: | Shane, Beth (x2659) |
|---|---|
| To: | Andrew Dunlap; Meredith Nelson; Elizabeth Snow; David Elsberg; Wohlforth, E. Evans |
| Cc: | Mangi, Adeel A. (x2563); Sandick, Harry (x2723); LoBiondo, George (x2008); Arrow, Sara (x2031); ~jgreenbaum@sillscummis.com; ~klieb@sillscummis.com; Haigney Long, Julia (x2878) |
| Subject: | JJHCS v. SaveOnSP // T. Mighells Production of Documents |
| Date: | Friday, August 25, 2023 10:29:23 AM |
| Attachments: | 2020.08.25_Ltr. from E. Shane to M. Nelson re T. Mighells Production.pdf |

Counsel:

Please see the attached correspondence. The link to access the production is:

████████████████████████████████████████████

A password will be provided under separate cover.

Best,
Beth

**Beth Shane**
She | Her | Hers
Associate
**Patterson Belknap Webb & Tyler LLP**
1133 Avenue of the Americas | New York, NY 10036
T: 212.336.2659 | M: 412.496.0602 | F: 212.336.1262
eshane@pbwt.com | www.pbwt.com

---

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.



www.pbwt.com

August 25, 2023

Elisabeth Shane
(212) 336 2659

**VIA EMAIL**

Meredith Nelson, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
mnelson@selendygay.com

> Re: **Theodore A. Mighells Production**
> *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*,
> Case No. 2:22-cv-02632 (ES) (CLW)

Dear Meredith:

Today, Johnson & Johnson Health Care Systems, Inc. ("JJHCS") is producing to Save On SP LLC, via Dropbox, documents obtained through a non-party subpoena, bearing Bates ranges MIGH000001 – MIGH000531. Accompanying this letter is an FTP link you can use to download the production. The password will be sent separately via email.

This production contains documents that are designated "CONFIDENTIAL" pursuant to the Discovery Confidentiality Order.

Very truly yours,

*/s/ Elisabeth Shane*
Elisabeth Shane

# Exhibit 11



www.pbwt.com

October 19, 2023

Elisabeth Shane
(212) 336 2659

**VIA EMAIL**

Meredith Nelson, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
mnelson@selendygay.com

> Re:    **Theodore A. Mighells Production**
> *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*,
> Case No. 2:22-cv-02632 (ES) (CLW)

Dear Meredith:

      Today, Johnson & Johnson Health Care Systems, Inc. ("JJHCS") is producing to Save On SP LLC documents obtained through a non-party subpoena bearing Bates ranges MIGH000532–MIGH001010. Accompanying this letter is an FTP link you can use to download the production. The password will be sent separately via email.

      This production contains documents that are designated "CONFIDENTIAL" pursuant to the Discovery Confidentiality Order.

Very truly yours,

*/s/ Elisabeth Shane*
Elisabeth Shane

# EXHIBIT 12

# SEALED IN ITS ENTIRETY

# Exhibit 13

E. Evans Wohlforth, Jr.
ROBINSON & COLE LLP
666 Third Avenue, 20th Floor
New York, NY 10174
212-451-2954
ewohlforth@rc.com

David Elsberg (*admitted pro hac vice*)
Andrew R. Dunlap (*admitted pro hac vice*)
Meredith Nelson (*admitted pro hac vice*)
Elizabeth Snow (*admitted pro hac vice*)
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
delsberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.,<br><br>Plaintiff,<br><br>v.<br><br>SAVE ON SP, LLC,<br><br>Defendant. | Civil Action No. 22-2632 (ES) (CLW)<br><br>**DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S NINTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

To:     Jeffrey J. Greenbaum, Esq.
        SILLS CUMMIS & GROSS, P.C.
        One Riverfront Plaza
        Newark, New Jersey 07102
        973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New York

*Attorneys for Plaintiff Johnson & Johnson*
*Health Care Systems Inc.*

Pursuant to Federal Rule of Civil Procedure 34, Defendant Save On SP, LLC ("Save-OnSP"), by and through its undersigned counsel, responds and objects to Plaintiff Johnson & Johnson Health Care Systems Inc.'s ("JJHCS") Ninth Set of Requests for Production, dated October 18, 2023 (the "Requests"). If SaveOnSP learns that in some material respect its responses are incomplete or incorrect, SaveOnSP will correct them if the additional or corrective information has not otherwise been made known to JJHCS during the discovery process or in writing. Fed. R. Civ. P. 26(e)(1)(A).

## OBJECTIONS TO DEFINITIONS

1. SaveOnSP objects to the definition of the term "SaveOnSP" as including attorneys and accountants who may be outside of SaveOnSP's possession, custody, and control. SaveOnSP interprets the term "SaveOnSP" to mean SaveOnSP, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, and all persons or entities acting or purporting to act on behalf or under the control of SaveOnSP.

2. SaveOnSP objects to the definition of "You" and "Your" to the same extent that it objects to the definition of "SaveOnSP."

## OBJECTIONS TO INSTRUCTIONS

3.       SaveOnSP objects to Instruction No. 11 to the extent that JJHCS attempts to impose requirements on SaveOnSP beyond those required by the Federal Rules of Civil Procedure, agreed to by the parties, or ordered by the Court.

4.       SaveOnSP objects to Instruction No. 13 to the extent that it asks SaveOnSP to produce Documents and Communications outside of its possession, custody, and control or asks SaveOnSP to provide information beyond that which SaveOnSP can identify after a reasonable search. SaveOnSP will produce relevant, non-privileged documents within its possession, custody, or control that it can identify after a reasonable search.

5.       SaveOnSP objects to Instruction No. 15 to the extent that JJHCS attempts to impose requirements on SaveOnSP beyond those required by the Federal Rules of Civil Procedure, agreed to by the parties, or ordered by the Court.

6.       SaveOnSP objects to Instruction No. 20 to the extent that it requires the production of documents created after July 1, 2022, as production of documents after that time would be unduly burdensome. The parties have generally agreed to end production as of July 1, 2022, unless a party shows a specific need for documents created later.

## SPECIFIC RESPONSES AND OBJECTIONS

**REQUEST NO. 95:** Any Documents or Communications concerning Your Employee confidentiality obligations, including SaveOnSP's Data Privacy and Security Policy and SaveOnSP's Updated Confidentiality and Nondisclosure Policy referenced in your Response to JJHCS's Interrogatory No. 18, as well as any other written policies, manuals, or trainings concerning Your Employees' confidentiality obligations.

**RESPONSE:** SaveOnSP objects to this Request because it seeks documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request to the extent that it seeks documents that are privileged.

3

SaveOnSP objects to this Request as not proportional to the needs of the case to the extent that it seeks all documents and communications beyond those identified during a reasonable search. The burden and expense of producing all such documents outweighs any marginal relevance of the material requested.

SaveOnSP will not produce documents in response to this Request.

**REQUEST NO. 96:** Any Communications with Your Employees relating to compliance with or attestation to Your Employee confidentiality policies or other confidentiality obligations.

**RESPONSE:** SaveOnSP objects to this Request because it seeks documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request to the extent that it seeks documents that are privileged.

SaveOnSP objects to this Request as not proportional to the needs of the case to the extent that it seeks all documents and communications beyond those identified during a reasonable search. The burden and expense of producing all such documents outweighs any marginal relevance of the material requested.

SaveOnSP will not produce documents in response to this Request.

**REQUEST NO. 97:** From any time, all Documents and Communications regarding this Action provided to you by any person or entity other than JJHCS, including in response to subpoenas served in this action.

**RESPONSE:** SaveOnSP objects to this Request as vague and confusing to the extent that it seeks Documents and Communications regarding this Action provided to it by any person or entity other than JJHCS other than in response to subpoenas served in this action.

SaveOnSP objects to this Request to the extent it seeks documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request to the extent that it seeks documents that are privileged. SaveOnSP will not produce such documents.

SaveOnSP objects to this Request as not proportional to the needs of the case to the extent that it seeks all documents and communications beyond those identified during a reasonable search. The burden and expense of producing all such documents outweighs any marginal relevance of the material requested.

SaveOnSP will produce documents that it receives in response to subpoenas that it serves in this Action. SaveOnSP will not otherwise produce documents in response to this Request.

Dated:  November 17, 2023

By: /s/      E. Evans Wohlforth, Jr.
E. Evans Wohlforth, Jr.
ROBINSON & COLE LLP
666 Third Avenue, 20th Floor
New York, NY 10174
212-451-2954
ewohlforth@rc.com

David Elsberg
Andrew R. Dunlap
Meredith Nelson
Elizabeth Snow
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
delsberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# Exhibit 14

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Matthew Nussbaum
Associate
212.390.9062
mnussbaum@selendygay.com

February 8, 2024

**Via E-mail**

Sara Arrow
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

Re: ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC** (Case No. 2:22-cv-02632-JKS-CLW)*

Dear Sara,

   We write in response to your February 1, 2024 letter in which you requested
SaveOn run search terms pursuant to J&J's RFP Nos. 95 and 96.

   As stated in our November 17, 2023 Responses & Objections, as well as at
the November 27, 2023 meet-and-confer, the documents sought by those requests
are irrelevant to the claims or defenses in this action. J&J also has not explained
the relevance of its narrowed categories: communications regarding "the reasons,
goals, or motivations for the confidentiality policies" and for those regarding "any
employee who had refused or failed" to sign or abide by the policies. SaveOn's em-
ployee confidentiality policies have nothing to do with the claims and defenses in
this litigation.

   In the interest of compromise, SaveOn agreed to produce documents that it
receives in response to subpoenas that it serves in this Action, as well as two con-
fidentiality policies specifically requested by J&J.

   The burden and expense of producing additional documents significantly
outweighs any marginal relevance the documents might have. We ran the proposed
search terms over the relevant time period. The hit counts are substantial, as
demonstrated by the report included in Exhibit 1. SaveOn accordingly declines to
produce documents in response to RFP Nos. 95 and 96 beyond those it has already
agreed to produce.

   We are available to meet and confer.

Sincerely,

/s/ Matthew Nussbaum

Matthew Nussbaum
Associate

Encl:   Exhibit 1

# Exhibit 1

| Term | Documents with hits | Documents with hits, including group | Unique hits |
|---|---|---|---|
| (Confi* OR "data privacy" OR "security policy" OR "privacy policy" OR nondisclosure OR "non-disclosure" OR "non-disparag*" OR nondisparag* OR NDA OR whistleblower (whistle w/2 "blow*")) w/50 (muzzl* or silenc* OR "shut up" OR fire OR firing OR terminat* OR compli* OR "non-compli*" OR noncompli*) | 107,514 | 206,435 | 60,198 |
| (Confi* OR "data privacy" OR "security policy" OR "privacy policy" OR nondisclosure OR "non-disclosure" OR "non-disparag*" OR nondisparag* OR NDA or whistleblower (whistle w/2 "blow*")) w/50 (updat* OR revis* OR chang* OR modify*) | 298,084 | 508,698 | 225,199 |
| (Confi* OR "data privacy" OR "security policy" OR "privacy policy" OR nondisclosure OR "non-disclosure" OR "non-disparag*" OR nondisparag* OR NDA OR whistleblower OR (whistle w/2 blower)) w/75 (J&J OR JnJ OR Johnson OR Janssen OR Jannsen OR Jansen OR Jannssen OR JJHCS OR JHCS OR JJHS OR HCS OR CPA OR "copay assistance" OR "co-pay assistance" OR "CarePath" OR "JCP" OR litigation OR lawsuit) | 122,994 | 207,429 | 76,170 |

# Exhibit 15

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Elizabeth H. Snow
Associate
212 390 9330
esnow@selendygay.com

December 12, 2023

**Via E-mail**

Russell Beck
Beck Reed Riden LLP
155 Federal Street
Suite 1302
Boston, Massachusetts 02110
rbeck@beckreed.com

**Re:** ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear Russell,

We write regarding documents produced by Theodore Mighells in the above-captioned litigation. We understand based upon Johnson & Johnson Health Care Systems Inc.'s ("JJHCS") Rule 26(a) disclosures that your firm represents Mr. Mighells in connection with this litigation.

Mr. Mighells produced documents in this action within the following bates ranges that belong to SaveOnSP, all of which he designated as "Confidential":

- MIGH000001-MIGH000221

- MIGH000227-MIGH000246

- MIGH000261-MIGH000383

- MIGH000390-MIGH000398

- MIGH000512-MIGH00530

- MIGH000923

- MIGH000931-MIGH00933

Russell Beck
December 12, 2023

- MIGH000936-MIGH000937

- MIGH000936-MIGH000937

Under Paragraph 16 of the Discovery Confidentiality Order in this litigation, which we understand was provided to you by JJHCS and a copy of which is attached here, information known by a receiving party through proper means shall not be deemed or considered Confidential. As the documents identified above are SaveOnSP's own documents, under the Order, they cannot be Confidential as to SaveOnSP. Please inform us in writing by December 19, 2023 if you disagree (and, if so, please provide the basis for that disagreement).

SaveOnSP reserves its rights to seek an order from a court designating some or all of those documents as Confidential, Attorneys Eyes' Only, or Confidential Health Information.


Best,

/s/ Elizabeth Snow

Elizabeth H. Snow
Associate

# Exhibit 16

SILLS CUMMIS & GROSS P.C.
Jeffrey J. Greenbaum
Katherine M. Lieb
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (*pro hac vice* forthcoming)
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., | : | Civil Action No. 22-2632 (JMV) |
| Plaintiff, | : | |
| vs. | : | **PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION** |
| SAVE ON SP, LLC, | : | |
| Defendant. | : | |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff Johnson & Johnson Health Care Systems Inc. ("JJHCS"), makes the following requests for production of documents to Defendant Save On SP, LLC ("SaveOnSP"):

### DEFINITIONS AND INSTRUCTIONS

1. "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of SaveOnSP.

2.       "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any affiliates, including but not limited to Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc, Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, Janssen Research & Development LLC, and Johnson & Johnson.

3.       "Payor" means any entity that reimburses in whole or in part for the administration or sale of a pharmaceutical or biologic product, including government agencies, private insurers, and health and welfare funds.

4.       "CarePath" means the Janssen patient assistance program providing support services for patients using medications researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen Biotech Inc., Janssen Pharmaceuticals, Inc, Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc. (collectively, "Janssen").

5.       Accredo means specialty pharmacy Accredo Health Group, Inc., and any and all predecessors and successors in interest, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Accredo Health Group, Inc.

6.       Express Scripts means pharmacy benefits manager Express Scripts, Inc., and any and all predecessors and successors in interest, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Express Scripts, Inc.

7.      The SaveOnSP Program refers to the scheme as described in the Complaint at ¶¶ 9–17.

8.      "You" and "Your" mean SaveOnSP as defined in paragraph 1 above.

9.      The term "document" is used in the broadest sense consistent with Rule 34(a) of the Federal Rules of Civil Procedure.   The term includes, without limitation, any written, recorded, transcribed, taped, photographic or graphic matter, any electronically, magnetically or digitally stored information, including, without limitation, call notes, voice mail, electronic mail, software, source code, object code or hard or floppy disc files, any other tangible things, and all copies of any of the foregoing that are different in any way from the original.

10.      "And" and "or" are to be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive; use of a singular noun is to be construed to include the plural noun and use of a plural noun is to be construed to include the singular noun; the use of a verb in any tense is to be construed as the use of that verb in all other tenses whenever necessary to bring within the scope of the requested documents or things that which might otherwise be construed to be outside its scope.

11.      The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

12.      The term "person" means (a) natural persons (also referred to as "individuals"); (b) legal entities, including but not limited to corporations, partnerships, firms, associations, professional corporations and proprietorships; and (c) government bodies or agencies.

13.      If You believe that production of documents or things is privileged or otherwise excluded from discovery, You are requested to specify the basis of the privilege or other grounds for exclusion and to provide all other appropriate information as required by Rule 26(b)(5) of the

Federal Rules of Civil Procedure. Provide responsive documents or things to all parts of the Request to which You do not object. Any purportedly privileged document containing non-privileged material must be produced, redacting only the portion purportedly privileged.

14. If You withhold information on the grounds of privilege (including work product immunity), You must identify the nature of the privilege that is being claimed in accordance with any agreed-upon or court-ordered protocols. In the event the Court has not timely approved any protocols when You are ready to produce a privilege log, JJHCS will provide supplemental instructions detailing the privilege log requirements.

15. If You cannot produce responsive documents or things to any of these Requests in full, produce documents or things to the extent possible, specifying the reasons for Your inability to produce documents or things in full and provide responsive documents or things to the remainder.

16. In producing documents or things responsive to these Requests, furnish all information that is available to You, including documents or things in the possession of Your agents, employees, or attorneys, or otherwise subject to Your custody or control.

17. If a responsive document or thing was, but no longer is, within Your possession, custody, or control, please state in detail:

        a.    the type of document or thing and the author(s), sender(s), recipient(s) and copy(ies) of the document or thing;

        b.    a summary of the contents of the document or thing;

        c.    what disposition was made of such document or thing;

        d.    the date of such disposition;

e.     whether the original or a copy thereof is within the possession, custody or control of any other person; and

f.     if the answer to (e) is affirmative, the identity of such person.

18.     All documents and data and all electronically stored information should be produced in the manner required by any agreed-upon or court-ordered protocols.  In the event the Court has not timely approved any protocols when You are ready to produce documents, JJHCS will provide supplemental instructions detailing the production requirements.

19.     Pursuant to Rule 34(b)(2)(C) of the Federal Rules of Civil Procedure, any objection in whole or in part to a Request must state whether any responsive materials are being withheld on the basis of that objection, and an objection to part of a request must specify the part and permit inspection of the rest.

20.     These definitions and instructions, and the requests set forth below, apply equally to all forms of electronic communications, including e-mails, and to all other tangible things.

21.     To extent a term is not defined herein, apply the definition for such term used in the Complaint.

22.     The Requests should be deemed continuing and the responses to them must be supplemented pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

23.     Unless otherwise specified herein or agreed to by the parties, the time period for each request is January 1, 2017 through the present (the "Time Period").

### REQUESTS FOR THE PRODUCTION OF DOCUMENTS

**Request No. 1.**     Documents sufficient to show SaveOnSP's organizational structure throughout the Time Period, including but not limited to organization charts.

**Request No. 2.**     Documents sufficient to identify the names and citizenship of all SaveOnSP LLC members, including the membership of any limited liability companies, limited

partnerships, or partnerships that are members of SaveOnSP, either directly or indirectly (e.g., through membership of an LLC that is itself a member of SaveOnSP).

**Request No. 3.** Documents sufficient to identify every person who has ever been enrolled in CarePath and the SaveOnSP Program.

**Request No. 4.** Documents sufficient to identify every health plan who has ever contracted with SaveOnSP or Express Scripts to participate in the SaveOnSP Program.

**Request No. 5.** All documents, including drafts, concerning communications with persons currently enrolled or eligible to enroll in CarePath.

**Request No. 6.** All communications between SaveOnSP and JJHCS, as well as all communications SaveOnSP has had relating to SaveOnSP's communications with JJHCS.

**Request No. 7.** All communications SaveOnSP has received from persons currently enrolled in CarePath, including patient complaints or inquiries regarding the SaveOnSP Program, and all documents regarding such patient complaints or inquiries.

**Request No. 8.** All communications SaveOnSP has received from persons who (i) refused to enroll in the SaveOnSP Program; (ii) tried to opt out of enrollment in the SaveOnSP Program; or (iii) initially enrolled in the SaveOnSP Program, but later canceled their enrollment, as well as all documents regarding such patient communications.

**Request No. 9.** All documents and communications concerning the "Master Program Agreement, effective November 13, 2017" executed between Express Scripts and SaveOnSP, including any drafts thereof and amendments, schedules, exhibits, and appendices thereto, as well as all documents and communications concerning any predecessor or successor agreements between Express Scripts and SaveOnSP relating to similar subject matter as the Master Program Agreement.

**Request No. 10.**     All documents and communications concerning the relationship between Express Scripts and SaveOnSP, including any payments remitted to SaveOnSP pursuant to the Master Program Agreement, or any other agreement, written or otherwise.

**Request No. 11.**     All documents and communications concerning the relationship between Accredo and SaveOnSP, including contracts, agreements, and memoranda of understanding of any kind.

**Request No. 12.**     All documents concerning fees paid to or collected by SaveOnSP, not otherwise captured by other Requests.

**Request No. 13.**     All documents and communications between Accredo and SaveOnSP concerning CarePath, including the terms and conditions of CarePath and the operation of the CarePath copay card.

**Request No. 14.**     All marketing materials, including drafts, regarding the SaveOnSP Program provided to health insurance plan sponsors or any other person.

**Request No. 15.**     All recordings or transcripts of presentations or interviews concerning the SaveOnSP Program.

**Request No. 16.**     All documents and communications, including drafts, concerning SaveOnSP's marketing or promoting its services to health insurance plan sponsors, including without limitation to pharmaceutical health plan sponsors.

**Request No. 17.**     Any agreements, including drafts, between SaveOnSP or Express Scripts on the one hand, and health insurance plan sponsors, on the other, regarding the SaveOnSP Program, and any communications relating thereto.

**Request No. 18.**     All documents and communications concerning SaveOnSP's evaluation of Janssen therapies, including but not limited to the de-designation of Janssen therapies as essential health benefits pursuant to the Affordable Care Act.

**Request No. 19.**     All documents and communications concerning SaveOnSP's inclusion or exclusion of specific drugs as essential health benefits pursuant to the Affordable Care Act, including the criteria for inclusion and exclusion.

**Request No. 20.**     All documents and communications concerning the definition of "Essential Health Benefits" as that term is used in the Affordable Care Act.

**Request No. 21.**     All documents and communications concerning which state benchmark to use for the designation of specific drugs as essential health benefits.

**Request No. 22.**     All documents and communications concerning SaveOnSP's compliance with the Affordable Care Act, including but not limited to documents and communications concerning legal "gray area"[1] surrounding the de-designation of Janssen therapies as essential health benefits pursuant to the Affordable Care Act.

**Request No. 23.**     All documents and communications relating to CarePath, including documents and communications concerning (i) drugs for which CarePath assistance is available; (ii) the amount of CarePath copay assistance available for Janssen therapies; (iii) the terms and conditions of CarePath; and (iv) and corresponding or resulting changes to the SaveOnSP Program based on the "most lucrative copay assistance programs."[2]

---

[1] *See* David Cook, IPBC and SaveOnSP Training-20210216 1901-1, VIMEO, at 26:27 (Feb 17, 2021), https://vimeo.com/513414094 (hereinafter, *SaveOnSP IPBC Video*).

[2] *See id.* at 14:47, 31:50, 32:09 ("[I]n the event that pharma decides to pull back funding for their programs . . . it might be a prompt to determine, 'Do we need to make a change in the drug list for this program? Because we are not saving as much as we initially anticipated, and there's another drug where we could.'").

**Request No. 24.**    All documents concerning SaveOnSP's offer of $0 co-payments to patients, including any communications relating to whether to cease offering $0 co-payments for one or more pharmaceuticals.

**Request No. 25.**    All documents concerning SaveOnSP call center locations, training materials, and call scripts used in communications regarding the SaveOnSP program with patients.

**Request No. 26.**    All documents concerning actuarial, adherence trends, or other analyses performed by SaveOnSP on patient adherence to Janssen therapies.

**Request No. 27.**    All documents and communications concerning non-medical switching of prescription drug therapies by CarePath patients, enrolled or not enrolled in SaveOnSP, based on the exhaustion of manufacturer copay assistance funds.

**Request No. 28.**    All documents and communications concerning "the inflated co-pay,"[3] or increase to, SaveOnSP patients' copay or out-of-pocket obligations.

**Request No. 29.**    All documents and communications indicating the total amount SaveOnSP has collected from patients who had already satisfied their out-of-pocket maximum, prior to enrolling in SaveOnSP.

**Request No. 30.**    All documents reflecting communications with pharmacies regarding the "[p]oint of sale claim rejection" to "facilitate warm transfer of member to SaveonSP."[4]

---

[3]  *See Id.* at 49:26.

[4]  *See* Human Resources Committee Meeting, VILLAGE OF LINDENHURST ILLINOIS, at 69 (Mar. 11, 2021), https://www.lindenhurstil.org/egov/documents/1615238827_33717.pdf.

**Request No. 31.**      All documents concerning or discussing the amount of "savings"[5] generated and commissions earned by SaveOnSP relating to Janssen therapies.

**Request No. 32.**      All documents and communications concerning SaveOnSP's methods to maintain or increase "savings" to health plan sponsors through manufacturer copay assistance programs.

**Request No. 33.**      All documents and communications SaveOnSP has received reflecting complaints, concerns, or inquiries about SaveOnSP's operations, services, and/or business model, including without limitation from patients, patient advocacy groups, health plan sponsors, governmental agencies, Express Scripts and Accredo.

**Request No. 34.**      All documents and communications concerning SaveOnSP's coverage for drugs after the exhaustion of available manufacturer's copay assistance.

**Request No. 35.**      All documents, including drafts, and communications concerning the preparation of, and posting of the *SaveOnSP IPBC Video* presentation as discussed in the Complaint (*see, e.g.*, Compl. ¶¶ 9–11, 53–56), including who prepared the presentation, to whom the presentation was given, how many times the presentation was given, by whom, and over what period of time.

**Request No. 36.**      Annual Program Summary documents outlining the terms of the SaveOnSP program for each participating health plan, including: (i) patient copay/coinsurance requirements for each drug included in the program; (ii) the extent to which SaveOnSP would rely on manufacturer copay assistance to cover the patient costs; (iii) patient copay/coinsurance requirements after a manufacturer's copay assistance has reached its maximum contribution for

---

[5]  *See SaveOnSP IPBC Video*, at 49:26 (explaining that "in order for us to leverage the *savings*, the member has to actively enroll in copay assistance.  That's where the *savings* comes from.").

the year; (iv) patient deductible requirements; (v) patient out-of-pocket maximum limits and what patient payments are accounted for in determining whether a patient has reached their out-of-pocket maximum; (vi) any other payment obligations for the patient.

**Request No. 37.**     Any contracts between SaveOnSP and participating health plans related to drug pricing, and factors affecting plan or plan member payments to pharmacies or PBMs for drugs included in the SaveOnSP program(s).

**Request No. 38.**     All documents, including drafts and communications, concerning SaveOnSP's terms and negotiations with health plans and/or pharmacy benefit managers related to their maximizer programs.

**Request No. 39.**     All documents, including drafts, and communications concerning SaveOnSP's terms and negotiations with pharmacies related to their maximizer program.

**Request No. 40.**     All documents and communications providing information regarding how SaveOnSP patients can be identified in the transaction/claims data.

**Request No. 41.**     Data covering the period January 1, 2016 through the present on all manufacturer copay assistance provided to either a pharmacy, PBM, or SaveOnSP for prescriptions filled by SaveOnSP member patients, including: (i) manufacturer; (ii) brand name; (iii) National Drug Code ("NDC"); (iv) recipient of manufacturer assistance; (v) patient identifier; (vi) pharmacy for relevant drug fill; (vii) pharmacy address; (viii) prescription number; (ix) prescription fill date; (x) number of units; (xi) days of supply; (xii) unit of measure; (xiii) copay or coinsurance amount; (xiv) coupon amount; and (xv) information on how these payments can be linked to the transaction/claims data.

**Request No. 42.**     Electronic prescription-level transaction data for all drug purchases from January 1, 2016 through the present for all patients who at any point during that time frame

participated or did not participate in the SaveOnSP program, including:

- Information on parties to the prescription transaction, including: (i) pharmacy name; (ii) pharmacy address; (iii) patient identification; (iv) patient state of residence; (v) identifier for whether patient is on a SaveOnSP program; (vi) insurance/health plan name; (vii) insurance/health plan ID; (viii) type of insurance (e.g., commercial, Medicare, Medicaid); (ix) insurance/health plan member ID; (x) insurance/health plan BIN number; (xi) insurance/health plan PCN number; (xii) insurance/health plan group name; and (xiii) insurance/health plan group number.

- Drug information for the prescription transaction, including: (i) product description (i.e., brand name); (ii) NDC; (iii) product form; (iv) product strength; (v) number of units; (vi) days of supply; (vii) units returned or otherwise affected by the transaction; (viii) unit of measure; (ix) date of prescription fill; (x) information sufficient to identify the type of transaction (e.g., a sale, a return, a discount, etc.); and (xi) any discounts, rebates, or other price adjustments or offsets.

- Payment information for the prescription transaction, including: (i) total amount paid to the pharmacy for the prescription; (ii) patient copayment; (iii) patient coinsurance payment; (iv) patient deductible payment; (v) copay coupon/manufacturer assistance amount applied to the prescription cost; (vi) voucher amount; (vii) bridge benefit payment; (viii) net consumer payment after subtracting co-pay, coinsurance, deductible, coupon, voucher, bridge benefit,

and other assistance; (ix) insurance/health plan cost submitted; and

(x) insurance/health plan amount paid to pharmacy.

Dated:  May 11, 2022

> SILLS CUMMIS & GROSS P.C.
> One Riverfront Plaza
> Newark, New Jersey 07102
> (973) 643-7000
>
> By:   s/ Jeffrey J. Greenbaum
>        JEFFREY J. GREENBAUM
>        KATHERINE M. LIEB
>
>
> PATTERSON BELKNAP WEBB & TYLER LLP
> Adeel A. Mangi
> Harry Sandick (*pro hac vice* forthcoming)
> 1133 Avenue of the Americas
> New York, New York 10036
> (212) 336-2000
>
> *Attorneys for Plaintiff*
> *Johnson & Johnson Health Care Systems Inc.*