# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

July 1, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

      Re:   *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
                **No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Defendant Save On SP, LLC ("**SaveOn**"), we write in response to Plaintiff Johnson and Johnson Health Care Systems, Inc.'s (with its affiliates, "**J&J**") motion for *in camera* review of four text message conversations produced by SaveOn.

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                                                     Page 2

SaveOn does not oppose *in camera* review of the four documents at issue: SOSP_1068408, SOSP_1068420, SOSP_1068512, and SOSP_1332950.[1] J&J's submission is devoted in substantial part to arguments that the redacted portions of these messages are not in fact privileged. SaveOn writes to address the law that applies and to explain why the redacted messages are privileged.

**I.    New Jersey Law Governs This Dispute**

Federal courts sitting in diversity apply the privilege law of the state in which they sit. *Chen v. Ming Dow Ho*, 2005 WL 8176175, at *3 (D.N.J. Mar. 8, 2005). When resolving choice of law issues, New Jersey courts perform a two-step analysis. First, the court determines whether there is a conflict between the forum state's laws and the laws of the other interested state. *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008). Second, the court applies the law of the state with the "most significant relationship" to the dispute. *In re Accutane Litig.*, 235 N.J. 229, 257-63 (2018). If there is no conflict, the court does not reach the second step. *Calabotta v. Phibro Animal Corp.*, 460 N.J. Super 38, 54 (App. Div. 2019). Because J&J does not identify a conflict between the laws of New Jersey and New York regarding the application of privilege, New Jersey law applies.

New Jersey recognizes the attorney-client privilege. The party asserting the privilege must show that a document withheld on that basis is or reflects a communication between an attorney and a client for the purposes of facilitating the rendition of legal advice or services. *O'Boyle v. Borough of Longport*, 218 N.J. 168, 185 (2014). The communication must be primarily of legal

---

[1] During the meet-and-confer process, J&J did not ask SaveOn if it would consent to *in camera* review. Had it done so, SaveOn would have agreed, even though it disagrees that J&J has presented sufficient facts to warrant such review.

character and confidential. *Id.* at 186. An attorney need not appear directly on the document; documents and communications between non-attorneys that reveal the contents of attorney-client privileged communications may be withheld or redacted. *See, e.g.*, *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *5 (D.N.J. Dec. 5, 2016) (privileged communications remain privileged even if shared among non-attorney corporate employees if sharing the communications advances the attorney's representation); *Travelers Prop. Cas. Co. of Am. v. USA Container Co., Inc.*, 2012 WL 12898823, at *20 (D.N.J. Oct. 25, 2012) (same), report and recommendation adopted 2012 WL 12903853 (D.N.J. Nov. 28, 2012).

New Jersey also recognizes the common interest doctrine, which allows communications that are protected by the attorney-client privilege to maintain that protection when shared among parties with a common interest in litigation. The doctrine acts as an exception to waiver of privilege through third-party disclosure when "(1) the disclosure is made due to actual or anticipated litigation; (2) for the purposes of furthering a common interest; and (3) the disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse parties." *LaPorta v. Gloucester Cnty. Bd. of Chosen Freeholders*, 340 N.J. Super 254, 259 (App. Div. 2001) (quotation marks omitted). The common interest doctrine covers communications between corporate representatives of entities that share a common interest, even if there are no attorneys present on those communications. *Gallo v. PHH Mort. Corp.*, 2015 WL 12851917, at *5 (D.N.J. June 4, 2015).

## II. The Redacted Material Is Privileged

J&J does not dispute that SaveOn and ESI share a common interest in this litigation, and so cannot dispute that the sharing of privileged information between those entities does not waive the underlying privilege in the shared materials. The only issue before Your Honor is whether the redacted portions of the text messages in SOSP_1068408, SOSP_1068420, SOSP_1068512, and

Hon. Freda L. Wolfson                                                                                                                     Page 4

SOSP_1332950 between an executive of SaveOn, Jody Miller, and an executive of ESI, Meghan Pasicznyk, are privileged. They are.

### A. SOSP_1332950 is Properly Redacted

The redacted messages in SOSP_1332950 reflect legal advice regarding a letter that Janssen CarePath sent to a patient on a SaveOn-advised plan informing the patient that her benefits may change (J&J Ex. 16). This letter, which was sent during this litigation, touched on a core issue in the case—the meaning of CarePath's terms and conditions. *Id.* Miller's message,  Pasicznyk's messages reflect ▊▊▊▊▊▊ Because these messages reflect legal advice ▊▊▊▊▊▊ , the messages are properly redacted for attorney-client privilege.

J&J refers to an email from the same day as this message, J&J Ex. 15, ▊▊▊▊▊▊ Mot. 7-8. From there, J&J asserts that the redacted texts ▊▊▊▊▊▊ *Id.* Not so. The email that J&J cites ▊▊▊▊▊▊

**B. SOSP_1068408, SOSP_1068420, and SOSP_1068512 Are Properly Redacted**

The redacted messages in SOSP_1068408, SOSP_1068420, and SOSP_1068512 reflect privileged communications regarding ███████████████████████████████████████ ███████████████████████████████████████.[2]

In January 2023, J&J requested that SaveOn produce a list of patients on SaveOn-advised plans. Dkt. 65 at 2 (Jan. 5, 2023 Joint Letter). After motion practice, SaveOn produced the list, designating it as Attorneys' Eyes Only ("AEO") under the Discovery Confidentiality Order ("DCO"). Dkt. 62.[3] On May 16, 2023, J&J demanded that SaveOn de-designate the list from AEO to Confidential so that J&J could use it to remove patients on the list from CarePath. Dkt. 109 at 7 (June 2, 2023 Joint Letter). SaveOn refused. J&J moved to remove SaveOn's AEO designation from the list. On June 6, 2023, Judge Waldor denied J&J's motion, acknowledging the significance of J&J's request:

> [Y]our assumptions are this, that you've won your case. You are the judge jury, and executioner here. … therefore [SaveOn] should not be entitled to continue its commercial endeavors. … You're trying to prove your case. It's almost like prior restraint of some sort to, in fact, cut off their means to do business because your case says that they are doing the wrong thing. And we just don't have proof of that. And, again, that would be up to the finder of fact. …

---

[2] SaveOn also asserts that the redacted messages are covered by the work product privilege. SaveOn informed J&J that it was asserting work product protections over these messages on February 27, 2024. Ex. 1 (Feb. 27, 2024 Ltr. from E. Snow to C. Zielinski). J&J acknowledged SaveOn's assertion of work product privilege on March 11, 2024, and did not challenge that assertion in the parties' correspondence. Ex. 2 (Mar. 11, 2024 Ltr. from C. Zielinski to E. Snow). While briefing this opposition, SaveOn discovered that it inadvertently omitted the work product designation from its April 26, 2024 privilege log. SaveOn served a corrected privilege log on J&J on July 1, 2024.

[3] Under the DCO, a party has a right to designate any materials AEO "that contains highly sensitive business or personal information, the disclosure of which is likely to cause significant harm to an individual or to the business competitive position of the Producing Party." Dkt. 62 at 1-2. When materials are marked AEO, the list of people that can view the materials is limited to counsel, the court, and staff that assist counsel and the court in processing those materials. *Id.* at 4-6

> I believe that the end here is commercial and punitive measures. In other words, you want me to issue a sort of preliminary injunction [tying] hands. I am not going to do that. This is discovery. … As I said, acting as the judge and jury is not appropriate in this case.

June 6, 2023 Hr'g. Tr. 39:16-40:3; 47:22-8.

Between May 16 and May 30, 2023, SaveOn consulted with its outside litigation counsel, Selendy Gay, representatives from ESI, and ESI's counsel regarding potential responses to J&J's request to de-designate the patient list. As a result of those consultations, and with input from counsel, on May 30, 2023, SaveOn sent letters to plan sponsors and medical providers explaining the state of the litigation and the possible outcomes of J&J's then-pending motion. Exs. 3, 4 (JJHCS_00158775, JJHCS_00201689). SaveOn informed providers and plans that J&J had told SaveOn that it intended to remove patients on SaveOn-advised plans from CarePath. In response to SaveOn's letters, both SaveOn and J&J received phone calls and inquiries from recipients of the letters. During the weeks after SaveOn sent the letters and continuing after Judge Waldor ruled on J&J's motion, SaveOn regularly consulted with its outside counsel and with ESI and ESI's counsel regarding the impact of J&J's motion and SaveOn's response on this litigation. ▌

J&J's assertion that SaveOn's letters were "part of an established commercial strategy" is demonstrably not true—the letters explicitly responded to J&J's actions in this litigation. Exs. 3, 4. The redacted texts were sent when SaveOn was reacting to J&J's motion to de-designate and Judge Waldor's order: SOSP_1068408 on June 2, 2023, SOSP_1068420 on June 14, 2023, and SOSP_1068512 on June 24, 2023. Each reflects privileged communications:

- *J&J Ex. 2 (SOSP_1068408).* ▌

Case 2:22-cv-02632-JKS-CLW Document 334-1 Filed 07/08/24 Page 8 of 14 PageID: 28097
Case 2:22-cv-02632-JKS-CLW Document 387-1 Filed 10/28/24 Page 8 of 14 PageID: 28805

Hon. Freda L. Wolfson                                                                                        Page 7



- *J&J Ex. 3 (SOSP_1068420).*

- *J&J Ex. 4 (SOSP_1068512).*

The messages thus reflect information protected by the attorney-client privilege. Because J&J does not challenge the common interest between ESI and SaveOn or claim that SaveOn otherwise waived privilege, the conclusion that the redacted materials reflect privileged information is sufficient to resolve this dispute.

***

We appreciate Your Honor's attention to this matter.

Respectfully submitted,

/s/ *E. Evans Wohlforth Jr.*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com


Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# Exhibit 2

Case 2:22-cv-02632-JKS-CLW Document 387-1 Filed 07/23/24 Page 39 Page ID: 28099



www.pbwt.com

March 11, 2024

Caroline Zielinski
(212) 336-2206

**VIA EMAIL**

Elizabeth Snow, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re: SaveOnSP's Assertion of the Common Interest Privilege
*Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*,
2:22-cv-02632 (JKS) (CLW)

Dear Elizabeth:

We write in response to your February 27, 2024 letter regarding SaveOnSP's privilege assertions over certain text message exchanges and further to our related correspondence and meet and confer held on March 4, 2024.

In your February 27 letter, you assert that SaveOnSP has maintained redactions on three text message exchanges (SOSP_1068408, SOSP_1068420, and SOSP_1068512) because they reflect SaveOnSP's "communications . . . with ESI" which were made "in furtherance of the parties' common interest and are covered by the attorney-client privilege, work product privilege, and the common interest privilege." Feb. 27, 2024 Ltr. from E. Snow to C. Zielinski.

It is settled law that to be eligible for protection under the common interest privilege, the communication at issue "must be shared with the *attorney* of the member of the [alleged] community of interest." *In re Teleglobe Comms. Corp.*, 493 F.3d 345, 364 (3d Cir. 2007) (emphasis in original); *see also Gallo v. PHH Mortg. Corp.*, 2016 WL 7423188, at *1 (D.N.J. June 9, 2016) (same); *Hoffman-La Roche, Inc. v. Roxane Labs., Inc.*, 2011 WL 1792791, at *6 n.6 (D.N.J. May 11, 2011) (same). Courts impose this "attorney-sharing requirement" to "prevent abuse" of the privilege "by ensuring that the common-interest privilege only supplants the disclosure rule when attorneys, not clients, decide to share information in order to coordinate legal strategies." *Teleglobe*, 493 F.3d at 365.

In addition, for the privilege to apply, the parties to the communication must be "pursuing a common legal interest as opposed to a business interest." *McLane Foodservice, Inc. v. Ready Pac Produce, Inc.*, 2012 WL 1981559, at *4 (D.N.J. June 1, 2012). Demonstrating a common legal interest is a significant burden as courts have held that the legal interest must be

Elizabeth Snow, Esq.
March 11, 2024
Page 2

"substantially similar" or "identical." *Shipyard Assocs., L.P. v. City of Hoboken*, 2015 WL 4623470, at *6 (D.N.J. Aug. 3, 2015); *Net2Phone, Inc. v. Ebay, Inc.*, 2008 WL 8183817, at *7 (D.N.J. June 26, 2008).

Each of the three text message exchanges at issue in the February 27 letter reflect communications between non-attorneys, namely Jody Miller and Meghan Pasicznyk. Moreover, none of the communications appear to be in furtherance of a common legal interest. Rather, ███ ████████████ ████████████ ████████, *see* SOSP_1068408 and SOSP_1068420, and ████████████ *see* SOSP_1068512.

In light of these issues, please explain, in as much detail as possible, the basis for SaveOnSP's assertion of any privilege over these communications. If SaveOnSP no longer wishes to assert any of the applicable privileges, including the common interest privilege, please expressly so state and explain which privilege assertion(s) you are retracting. In addition, to the extent you no longer seek to assert any privilege over these documents, please produce unredacted copies of SOSP_1068408, SOSP_1068420, and SOSP_1068512. Please provide a response by March 18, 2024.

Very truly yours,

*/s/ Caroline Zielinski*
Caroline Zielinski

14962150

# Exhibit 3



May 30, 2023

****************AUTO**MIXED AADC 140
S30 P1 T7 B11 865

[REDACTED]

Dear Dr. [REDACTED],

    As an advisor to various commercial health plans, Save On SP, LLC ("SaveOnSP") writes to notify you that Johnson & Johnson Health Care Systems Inc. ("JJHCS") has informed us that it wants to withdraw copay assistance for members of plans advised by SaveOnSP who take one or more of the following specialty drugs manufactured by Janssen: Balversa, Darzelex, Darzelex Faspro, Erleada, Imbruvica, Opsumit, Prezcobix, Remicade, Rybrevant, Simponi, Stelara, Symtuza, Tracleer, Tremfya, Uptravi, Ventavis, and Zytiga ("Janssen Drugs").

    We understand that you may have prescribed one or more Janssen Drugs to a member of a SaveOnSP-advised plan. We also understand that JJHCS may have previously told you that it will provide copay assistance through its Janssen CarePath program to members of commercial health plans who are prescribed Janssen Drugs. On its website, JJHCS describes CarePath as providing resources to patients "to help them learn about, afford, and stay on their medication," and states that "[o]nce [a patient] and [her] doctor have decided a Janssen medication is right for [the patient], Janssen CarePath can help [the patient] ... identify ways to help [her] pay for [her] Janssen medication and provide ongoing support." *Janssen CarePath*, https://www.janssencarepath.com/ (last accessed May 30, 2023).

    On May 16, 2023, JJHCS told SaveOnSP that it wishes to "remov[e] [patients on plans advised by SaveOnSP] from CarePath after due notice and after providing an appropriate period of time for insurers and SaveOnSP to ensure continuity of care for these patients." On May 24, 2023, JJHCS told SaveOnSP that it intends to ask a federal court for an order allowing it to begin disenrolling members of these plans from CarePath. JJHCS further stated that it wishes the court to hear this issue in a conference currently scheduled for June 6, 2023.

    Without copay assistance from CarePath, patients on affected plans may experience increased costs for their specialty medications. SaveOnSP is advising the plans that use its services that if JJHCS removes all their patients from CarePath, the plans will

 40 La Riviere Drive, Suite 310, Buffalo, NY 14202     800.683.1074

ATTORNEYS' EYES ONLY                                                                              JJHCS_00158775

need to consider options including changing benefits for Janssen Drugs or removing coverage for Janssen Drugs entirely.

If you have any questions about why JJHCS wishes to terminate copay assistance for these patients, you can contact your Janssen representative or Janssen area business specialist.

Sincerely,

SaveOnSP

ATTORNEYS' EYES ONLY

JJHCS_00158776