# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

April 29, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

Re:    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
        **No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Defendant Save On SP, LLC ("**SaveOn**"), we write to oppose Plaintiff Johnson & Johnson Health Care Systems, Inc.'s (with its affiliates, "**J&J**") April 17, 2024 motion to compel SaveOn to run additional search terms over the documents of SaveOn's Corporate Counsel and Chief Compliance Officer Darcie Falsioni.

On February 26, 2024, at J&J's request, SaveOn added Falsioni as a custodian and agreed to run nine of the ten search strings proposed by J&J over her external communications. Ex. 1 (Feb. 26 Ltr. from E. Snow to C. Zielinski). All but one of J&J's proposed search strings are lists of terms without limiters—that is, the strings call for all documents containing each term, instead of limiting it to documents containing that term and another term. By agreeing to run these nine

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                                                     Page 2

strings, SaveOn thus effectively agreed to run *28* discrete search terms: (1) enrollment*;

(2) onboarding; (3) implement*; (4) program design; (5) benefit design; (6) program update;

(7) drug list; (8) Affordable Care Act; (9) ACA; (10) ERISA; (11) essential health benefit;

(12) EHB; (13) NEHB; (14) accumulator; (15) maximizer; (16) regulation /5 state; (17) regulation

/5 copay; (18) exception pharmacy; (19) fully insured; (20) self-funded; (21) qualified health plan;

(22) HSA; (23) health savings account; (24) high deductible health plan; (25) HDHP; (26) opt out;

(27) override; and (28) monitor*.

    SaveOn declined to run only J&J's tenth proposed search string, at issue here, which con-

sists of seven discrete search terms: (1) contract; (2) amendment; (3) joinder; (4) business associate

agreement; (5) BAA; (6) PHI; (7) service agreement.

    These terms are not tailored to identify relevant documents.

    "Contract" would be overbroad in most contexts, but is especially so for Falsioni, a lawyer

who reviews all types of contracts for SaveOn. It could pick up not only SaveOn's contracts with

its health plan clients but also contracts with parties like vendors, suppliers, contractors, counsel,

and employees, all of which are irrelevant. J&J does not explain why this term is necessary.

SaveOn has already produced final copies of its client contracts, *e.g.*, Ex. 2 (SOSP_0013090),

communications with its clients about those contracts, *e.g.,* Ex. 3 (SOSP_0572153), and 47,638

documents that contain the term "contract," 1,383 of which involve Falsioni.

    "Amendment" is also overbroad, especially for a lawyer who deals with a variety of con-

tracts, including many that are irrelevant. J&J asserts that its term is "designed to capture such

modifications to SaveOnSP's standard contracts" as are discussed in three cited documents. Mot.

at 8. But SaveOn has produced the operative amendments to its client contracts, *e.g.*, Ex. 4

(SOSP_0361804), communications with clients about those amendments, *e.g.*, Ex. 5

Hon. Freda L. Wolfson                                                                 Page 3

(SOSP_0854117), and 18,078 documents that contain the term "amendment," 870 of which involve Falsioni.

        "Joinder" too is overbroad, especially given Falsioni's role, and could pick up discussions of irrelevant contracts. J&J's only defense of this term is to note in passing that Falsioni was involved with a "Joinder Amendment" by which some █████████████████████████ ████████████████ Mot. at 3. But SaveOn has already produced these Joinder Agreements, *e.g.*, Ex. 6 (SOSP_0015313), client communications about them, *e.g.*, Ex. 7 (SOSP_0285215), and 28,330 documents that contain the term "joinder," 1,345 of which involve Falsioni.

        "Business associate agreement" and its acronym "BAA" are both patently irrelevant and overbroad. J&J's only mention of these terms is to say that a BAA is a "██████████████████ ██████████████████████████████████████" Mot. at 3. BAAs are standard agreements that spell out SaveOn's and its clients' responsibilities in handling patients' personal health information ("PHI") under HIPAA and the Health Information Technology for Economic and Clinical Health Act. *See, e.g.*, Ex. 8 (SOSP_0051708), Ex. 9 (SOSP_0123796). J&J does not explain how these contracts are relevant to its claims or SaveOn's defenses. The terms are also overbroad—SaveOn executes BAAs with entities other than clients, including vendors and counsel, which J&J's broad proposed terms could pick up. In any event, SaveOn has already produced numerous copies of this standard contract, *e.g.*, Ex. 10 (SOSP_0285227), client communications about it, *e.g.*, Ex. 11 (SOSP_0867608), and 30,130 documents that contain the term "business associate agreement" or "BAA," 1,460 of which involve Falsioni.

        "PHI" is irrelevant and overbroad for similar reasons. J&J's only mention of the term is to note that Falsioni worked on PHI Release Forms "██████████████████████████████ ████████████████████████████." Mot. at 3. A PHI Release Form is a standard,

one-page form stating that ███████████████████████████. *See, e.g.*, Ex. 12 (SOSP_0811925). As with BAAs, J&J does not explain how this standard release is relevant to this case and the term "PHI" could pick up irrelevant discussions of personal health information, such as with SaveOn's vendors or about members of SaveOn plans who do not take any of the Janssen drugs at issue. In any event, SaveOn has already produced numerous copies of this standard release, *e.g.*, Ex. 13 (SOSP_0278048), client communications about them, *e.g.*, Ex. 14 (SOSP_1138882), and 37,321 documents that contain the term "PHI," 1,133 of which involve Falsioni.

"Service agreement" is also overbroad. J&J's only discussion of this term is to note that SaveOn enters a Service Agreement with its health plan clients. Mot. at 3. But SaveOn also has service agreements with entities such as vendors that are irrelevant to this case, which J&J's proposed term would pick up. SaveOn has already produced hundreds of its Service Agreements with its clients, *e.g.*, Ex. 15 (SOSP_0278039), client communications about them, *e.g.*, Ex. 16 (SOSP_0082618), and 4,064 documents that contain the term "service agreement," 231 of which involve Falsioni. These Service Agreements are generally identical and contain standard terms, *see, e.g.*, Ex. 17 (SOSP_0524973), Ex. 18 (SOSP_0525410), Ex. 19 (SOSP_0001921), and J&J does not explain what marginal value there might be in any additional documents discussing them.

While J&J spends several pages discussing Falsioni's work for SaveOn (including several mischaracterizations), Mot. at 2-6, J&J does not link that discussion to the search terms at issue. J&J then offers four arguments in support of its motion, Mot. at 7-9, but even then it barely mentions the disputed terms, let alone explains why they would identify unique, relevant documents.

*First*, J&J asserts that it needs Falsioni's communications describing SaveOn's services. Mot. at 7-8. None of J&J's proposed terms go to any aspect of SaveOn's services. SaveOn is already running multiple terms that do describe its services—advising clients on their plan benefits

Hon. Freda L. Wolfson                                                                    Page 5

and explaining those benefits to plan members—over Falsioni's documents: "program design"; "benefit design"; "program update"; "drug list"; "Affordable Care Act"; ACA; ERISA; "essential health benefit"; EHB; NEHB; "regulation" /5 "state"; "regulation" /5 "copay"; "exception pharmacy"; "fully insured"; "self-funded"; "qualified health plan"; HSA; "health savings account"; "high deductible health plan"; HDHP; "opt out"; override; and monitor*. These terms already cover the subjects discussed in J&J's cited documents. J&J Ex. 27 (discussing ███████████ ███████████████████████████████████████████████████████████████████"); J&J Ex. 2 (discussing ████████████████████████████████████); J&J Ex. 11 (discussing ███████████████████████████████████"); J&J Ex. 12 (discussing ██████████████████████).

        *Second*, J&J asserts that it needs Falsioni's communications about "the meaning of contract terms." Mot. at 8. None of J&J's claims go to the meaning of the terms of *SaveOn's* contracts— only of *CarePath's* terms and conditions—and J&J does not identify any term in SaveOn's contracts relevant to its claims. More confounding, none of J&J's proposed search terms even go to the subject matter of SaveOn's contracts. Finally, SaveOn has already produced thousands of its contracts and communications about them and it is already running multiple search terms that go to terms in its client contracts across Falsioni's documents: the Service Agreement alone contains the terms "enrollment"; "ERISA"; "implementing"; "HSA"; "high deductible health plan"; and "monitoring". SaveOn is also already running terms related to J&J's allegations of "harm [to] patients on high deductible health plans," Mot. at 6 n.5, over Falsioni's documents: "HDHP" and "high deductible health plan".  This area, of dubious relevance in the first instance, has been exhaustively explored already.

Hon. Freda L. Wolfson                                                                                      Page 6

*Third*, J&J asserts that it needs Falsioni's communications about how SaveOn "modifies its standard contracts to enable clients to enroll even if they are ineligible to do so under existing regulations." Mot. at 8. Only one of J&J's proposed terms—"amendment"—even arguably goes to SaveOn modifying its contracts. This overbroad term is unnecessary: SaveOn is already producing final versions of its client contracts that will show any deviation from its standard terms and is producing communications with its clients. SaveOn is also running the many terms described above that go to the subject matter of its contracts, which are likely to pick up any discussions of any modified terms, as demonstrated by the documents that J&J cites. J&J Ex. 17 (discussing ████████████████████████████████████████████████████████████████ ████████████████████████████); J&J Ex. 28 (discussing ████████████████████ ███████████████████████████████████); J&J Ex. 24 (discussing ██████ ████████████████████████████████████████████████████████████████████ ██████████).

*Finally*, J&J asserts that it needs Falsioni's communications to "reveal" SaveOn's allegedly deceptive tactics. Mot. at 8-9. None of J&J's proposed terms go to these alleged tactics. J&J says that Falsioni communicates with clients about SaveOn's services, *id.* at 8, but SaveOn is already running the many terms discussed above that go to those services over her documents. J&J also provides only one example of what it considers to be a "deceptive" tactic, which involves Falsioni ████████████████████████████████████████████, *id.* at 8-9, but none of its proposed terms go to this supposed tactic and J&J does not explain how any search term could pick up additional instances of Falsioni not saying things.

Given the demonstrated irrelevance of J&J's proposed search terms, the Special Master should also consider the burden of reviewing the additional 1,774 unique documents identified by

Hon. Freda L. Wolfson                                                                    Page 7

those terms in light of SaveOn's massive document production of over 290,000 documents to date, with more to come, including from Falsioni's files. *See, e.g.*, *Robinson v. Horizon Blue Cross-Blue Shield of N. J.*, No. 2:12-CV-02981-ES-JAD, 2013 WL 6858956, at *6 (D.N.J. Dec. 23, 2013) (courts consider "the volume of discovery that plaintiff has already received" and if the requests are cumulative); *In re Merck & Co., Inc. Secs., Derivative & ERISA Litig.*, 2012 WL 4764589 at *10 (D.N.J. Oct. 5, 2012) ("[A] voluminous prior production makes it considerably more likely that further discovery will be duplicative" (quoting *Jaffee Pension Plan v. Household Int'l, Inc.*, No. 02 C 5893, 2006 WL 3445742, at * 2 (N.D. Ill. Nov. 22, 2006))).

***

Your Honor should deny J&J's motion.

Respectfully submitted,

*/s/ E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# EXHIBIT 1

# SEALED IN ITS ENTIRETY

# EXHIBIT 2

# SEALED IN ITS ENTIRETY

# EXHIBIT 3

# SEALED IN ITS ENTIRETY

# EXHIBIT 4

# SEALED IN ITS ENTIRETY

# EXHIBIT 5

# SEALED IN ITS ENTIRETY

# EXHIBIT 6

# SEALED IN ITS ENTIRETY

# EXHIBIT 7

# SEALED IN ITS ENTIRETY

# EXHIBIT 8

# SEALED IN ITS ENTIRETY

# EXHIBIT 9

# SEALED IN ITS ENTIRETY

# EXHIBIT 10

# SEALED IN ITS ENTIRETY

# EXHIBIT 11

# SEALED IN ITS ENTIRETY

# EXHIBIT 12

# SEALED IN ITS ENTIRETY

# EXHIBIT 13

# SEALED IN ITS ENTIRETY

# EXHIBIT 14

# SEALED IN ITS ENTIRETY

# EXHIBIT 15

# SEALED IN ITS ENTIRETY

# EXHIBIT 16

# SEALED IN ITS ENTIRETY

# EXHIBIT 17

# SEALED IN ITS ENTIRETY

# EXHIBIT 18

# SEALED IN ITS ENTIRETY

# EXHIBIT 19

# SEALED IN ITS ENTIRETY