# Sills Cummis & Gross

### A Professional Corporation

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102**
**Tel: (973) 643-7000**
**Fax (973) 643-6500**

**Jeffrey J. Greenbaum**
**Member**
**Admitted In NJ, NY**
**Direct Dial: 973-643-5430**
**Email:**
**jgreenbaum@sillscummis.com**

101 Park Avenue
28th Floor
New York, NY 10173
Tel: (212) 643-7000
Fax: (212) 643-6500

May 21, 2024

<u>**Via Email and ECF**</u>

Honorable Freda L. Wolfson, U.S.D.J.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL**
**UNDER THE DISCOVERY CONFIDENTIALITY ORDER**

**Re:    Reply in Support of Motion to Compel SaveOnSP to Produce**
**Documents Regarding Non-Medical Switching**
***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,***
<u>**Civil Action No. 22-2632 (JKS) (CLW)**</u>

Dear Judge Wolfson:

On behalf of JJHCS, we submit this reply in further support of JJHCS's May 3, 2024 motion to compel SaveOnSP to produce documents regarding non-medical switching in response to JJHCS's Request Nos. 104–107.  SaveOnSP's opposition contends that it has never encouraged non-medical switching; posits that non-medical switching has no relevance to JJHCS's claims; and suggests that the Court should excuse SaveOnSP's abject refusal to confer about search terms.  Each of SaveOnSP's arguments should be rejected, and JJHCS's motion should be granted.

Honorable Freda L. Wolfson, U.S.D.J.
May 21, 2024
Page 2

## <u>SaveOnSP Encouraged Non-Medical Switching</u>

SaveOnSP's opposition is built around its protests that "it never sent any communications encouraging the non-medical switching of drugs." Opp. at 2. That denial does not withstand scrutiny. As JJHCS explained, in May 2023 SaveOnSP sent a letter to thousands of doctors who prescribe Janssen drugs, in which it encouraged them to consider switching their patients to non-Janssen drugs. Mot. at 4–5; JJHCS Ex. 10 ("SaveOnSP is advising the plans that use its services that if JJHCS removes all their patients from CarePath, the plans will need to consider options including changing benefits for Janssen drugs or *removing coverage for Janssen Drugs entirely*." (emphasis supplied)).[1] There is simply no credible basis for SaveOnSP's pretending that these letters—which it acknowledges raised the prospect of patients "transitioning to different therapies," Opp. at 3—do not pertain to non-medical switching. That is what those words mean, and that is plainly what SaveOnSP intended them to convey.[2]

---

[1] SaveOnSP sent a similar letter to health plans, again suggesting two options, one of which was that they "change [the] plan design" to "allow[] patients to *transition* to drugs in the same class and category made by other manufacturers." JJHCS Ex. 13 (emphasis supplied). This is textbook non-medical switching—telling patients to stop taking the drug that is working for them, not for any clinical reason, but because the payor has simply decided to stop covering it. *See* "Non-medical Switching of Medications," Ofc. of Legis. Research Report, Connecticut General Assembly, *available at* https://www.cga.ct.gov/2017/rpt/2017-R-0008.htm (last visited May 19, 2024) ("'Non-medical switching' broadly refers to a change in a stable patient's medication for non-medical reasons, including a *change in the patient's insurance plan*") (emphasis supplied).

[2] SaveOnSP claims that it was obliged to send the letters at issue because of a discovery dispute that implicated patient identities. *See* Opp. at 2–3 ("Consistent with its client contracts, SaveOn notified its clients of the potential disclosure of HIPAA-protected data (*i.e.*, patient identities) that would result if J&J's request were granted."). This is another rationalization that does not hold up. For one thing, whether or not SaveOnSP had to notify its client health plans, there was no legitimate need for it to also write to thousands of *doctors*. It chose to do so for no other reason than to disrupt the continuity of care for the patients Janssen serves. And as to plans, SaveOnSP did not merely give notice of the

Honorable Freda L. Wolfson, U.S.D.J.
May 21, 2024
Page 3

Not only did SaveOnSP intend for its letters to encourage non-medical switching, ███████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████ JJHCS Ex. 11.  If SaveOnSP successfully

encouraged physicians who prescribe Janssen drugs to suddenly stop doing so, that would necessarily

require physicians to switch their existing patients to different drugs, even if the patient was stable on

the Janssen medication.  ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████" JJHCS Ex. 9; *see id.* (███████████████████████████████

███████████████████████).

SaveOnSP also asks Your Honor to ignore the ████████████████████████████

███████████████████████████████████████████ *See* Opp. at 2, 5.  That

hardly makes them per se irrelevant, especially if SaveOnSP decided ████████████████████

**because** of the harmful effect they would have on patients.  *See* Mot. at 10 ("That would be highly

probative evidence that SaveOnSP **did** knowingly harm patients in instances where it effectuated its

plans to encourage non-medical switching, as it did on at least one occasion with respect to Janssen

drugs.").

Finally, JJHCS's motion provided several more examples from SaveOnSP's production, all

showing that ███████████████████████████████████████████████████████

████████████████████████████████████████████. JJHCS Ex. 7; *see*

─────────────────────

"disclosure" issue, but went far beyond that to the encouragement of non-medical switching—and for
no reason, because Judge Waldor ultimately ruled in favor of SaveOnSP on the disclosure.

Honorable Freda L. Wolfson, U.S.D.J.
May 21, 2024
Page 4

*also* JJHCS Ex. 8 (); JJHCS Ex. 9 (

).  SaveOnSP's opposition is completely silent on this inconvenient evidence, all of which gives the lie to SaveOnSP's suggestion that it would never go near non-medical switching.

## Documents Concerning Non-Medical Switching Are Highly Relevant

As JJHCS has explained, documents concerning non-medical switching are highly relevant evidence of patient harm.  *See* Mot. at 2–3, 8; Compl. ¶ 114 (alleging that the SaveOnSP program causes harm "to the public, including patients, by causing undue stress and confusion"); *see also* Am. Compl. ¶¶ 28, 97–99.  SaveOnSP's opposition does not address, much less dispute, the harmful impact of non-medical switching on patients, including the potential for "adverse side effects, disease progression, and nonadherence to medication protocols." Mot. at 3.  SaveOnSP has even conceded these dangers.  JJHCS Ex. 3 at 18 (SaveOnSP recognizing that non-medical switching is "potentially harmful conduct").

Yet SaveOnSP now posits that non-medical switching is categorically irrelevant to this case, and that it "certainly did not concede the relevance of non-medical switching."  Opp. at 3, 5 n.4. These are perplexing statements, given that SaveOnSP agreed—more than eighteen months ago—to produce documents "concerning non-medical switching of prescription drug therapies by CarePath patients . . . based on the exhaustion of manufacturer copay assistance funds," without limitation. JJHCS Ex. 15 at 24–25 ("SaveOnSP will produce documents responsive to this Request identified

Honorable Freda L. Wolfson, U.S.D.J.
May 21, 2024
Page 5

during a reasonable search.").  SaveOnSP may wish to avoid producing more damning evidence on non-medical switching, but that does not make it irrelevant.

SaveOnSP's narrower arguments on relevance also fail.  SaveOnSP contends that its conduct towards other drug manufacturers is not discoverable, and suggests that Judge Waldor endorsed this view.  *See* Opp. at 4.  That is misleading.  It is true that, early in discovery, Judge Waldor declined to compel SaveOnSP to produce documents regarding "300 drugs" from "different manufacturers." Mar. 17, 2023 Tr. at 14:10–12; 15:1–2; 16:17–21.  But after JJHCS uncovered more of SaveOnSP's deceptive and harmful conduct, both Judge Waldor and Your Honor have consistently compelled SaveOnSP to provide discovery concerning its conduct towards non-party manufacturers.  *See* June 27, 2023 Tr. at 19:8–15 (evidence of tactics against another manufacturer ruled discoverable "to show intent with respect to" JJHCS); Apr. 3, 2024 Tr. at 136:10–11 (rejecting SaveOnSP's relevance objection to including its deceptive tactics aimed at other manufacturers in interrogatory responses).

Most strangely, SaveOnSP complains that JJHCS seeks "non-medical switching documents to 'gather evidence of harm that ***could*** support' its GBL claim." Opp. at 5 (emphasis by SaveOnSP). There is nothing improper about seeking to gather evidence that could support one's claim—that is the point of discovery.  SaveOnSP itself has forcefully argued for far more expansive discovery; less than two weeks ago, for example, SaveOnSP insisted that it was entitled to "discovery which would encompass any matter that bears on, or that reasonably ***could*** lead to other matter that ***could*** bear on, any issue that is ***or may be*** in the case." May 9, 2024 Reply Br. at 2 (emphasis supplied).  And while SaveOnSP accuses JJHCS of seeking "to uncover new bases for a claim that it did not plead," Opp. at 5, that is a strawman.  In fact, non-medical switching is not a claim in and of itself, but is a harmful tactic that bears on JJHCS's GBL claim.  JJHCS is entitled to explore it in discovery.  *See, e.g.*,

Honorable Freda L. Wolfson, U.S.D.J.
May 21, 2024
Page 6

*Cement Masons' Union Loc. No. 592 Pension Fund v. Almand Bros. Concrete*, 2015 WL 3604747, at *6 (D.N.J. June 8, 2015) ("Because discovery is designed to help define and clarify the issues, it is not limited to issues raised by the pleadings.").

### SaveOnSP Should Not Be Given Two Bites at the Apple

SaveOnSP refuses to produce documents on the basis that JJHCS's request are "overbroad," Opp. at 2, but it refused to engage with JJHCS on its ostensible burden objection. Mot. at 11. If SaveOnSP truly wished to propose narrower search terms, it had every opportunity to do so. Instead, it refused to confer in good faith with JJHCS and did not provide alternative search terms. It must be held to the consequences of that choice now. The Court should order SaveOnSP to run JJHCS's proposed search terms and produce responsive documents.

SaveOnSP should not be rewarded for its evasion of the process of conferral, negotiation and compromise. In its opposition, SaveOnSP at once contends that the Requests and associated search terms are "duplicative and burdensome" while at the same time refusing to counter-offer any alternative with which it could live. Opp. at 6. Instead, SaveOnSP recommends that "Your Honor should direct the parties to meet and confer on appropriate search terms." *Id*. Stated more plainly, SaveOnSP wants two very inefficient bites at the apple: one round of briefing on relevance, and then if it loses this round, another round on burden. SaveOnSP proposed this same inefficient two-step approach to Your Honor last year, and Your Honor unequivocally rejected it. Prior to the first conference before Your Honor, SaveOnSP asked for permission to effectively bifurcate discovery disputes so that Your Honor would have to give a relevance ruling first, followed by another round of effort expended on burden questions. *See* SaveOnSP Dec. 20, 2023 Ltr. at 3. When counsel pressed this notion at the December 21 conference, Your Honor was very clear: you did not want

6

Honorable Freda L. Wolfson, U.S.D.J.
May 21, 2024
Page 7

"staging" or "staggering" of these quarrels, which would needlessly delay resolution.  That was the right ruling then and SaveOnSP should not be allowed to sidestep it now.

      In any event, JJHCS's proposed search terms are appropriately tailored to capture responsive documents.  SaveOnSP complains that the proposed search terms "would pick up documents containing the words 'other,' 'change,' or 'modify,' within twenty words of 'drug" or "medication,' and twenty words of 'expense,' 'profit,' 'revenue,' or 'cost,'" Opp. at 6, but documents responsive to this term are likely to be highly relevant.  For example, the term would capture a hypothetical email in which a SaveOnSP executive recommends switching patients "to **other medication** to increase our **profit**."  While SaveOnSP objects to the term because it identifies approximately 11,000 new documents,[3] that volume is not unduly burdensome given the scope of discovery in this complex case and the significance of these non-medical switching documents to JJHCS's claims.

      As always, we appreciate Your Honor's attention to this matter, and we are available to answer any questions.

                        Respectfully submitted,

                        */s/ Jeffrey J. Greenbaum*
                        JEFFREY J. GREENBAUM

cc:  All counsel of record for SaveOnSP

---

[3] SaveOnSP has not disclosed whether this volume of documents includes attached "family" members.  If it does, the number of search "hits" would be smaller than 11,000 documents.