# EXHIBIT A

# BEST PRICE MOTION

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

April 18, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

> Re:    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
> *No. 2:22-cv-02632 (JKS) (CLW)*

Dear Judge Wolfson:

Defendant Save On SP LLC ("**SaveOn**") moves to compel Johnson & Johnson Health Care
Systems, Inc. (with its affiliates, "**J&J**") to produce documents regarding J&J's "best price" cer-
tifications to the federal government and related allegations to the Court. In these certifications,
J&J affirms that all its copay assistance funds go to patients—contradicting its allegations in this
case that SaveOn misappropriates a portion of those funds. SaveOn also moves to compel J&J to
produce documents regarding its reaction to an updated best price regulation that triggered J&J's
sudden interest in determining which patients are on SaveOn-advised plans (five years after J&J
became aware of SaveOn's services), its claims that SaveOn violated its terms and conditions at
issue (never made during the first five years of SaveOn's operations), and its decision to bring this

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

lawsuit. These documents are responsive to SaveOn's Requests for Production Nos. 8, 70, and 79.

J&J does not make, much less substantiate, any burden objection to these requests,[1] *see* Ex. 2 (Apr. 9, 2024 Ltr.), and it refuses to identify custodians or provide hit counts of the unique documents identified by SaveOn's proposed search terms. *Id.* J&J's only objection—made repeatedly during the parties' negotiations—is that the requested documents are irrelevant. *See* Ex. 3 (Feb. 22, 2024 Ltr.) ("[I]ssues related to the Best Price Rule are completely irrelevant to this action."); Ex. 4 (Feb. 28, 2024 Ltr.) ("JJHCS has repeatedly explained its position that Best Price-related documents are irrelevant for a variety of reasons, and it reiterates those objections here."); Ex. 2 (Apr. 9, 2024 Ltr.) ("The Best Price Rule Is Irrelevant to the Claims and Defenses at Issue."); *see also* Ex. 5 (Apr. 18, 2024 Email Chain) (J&J refusing to withdraw its relevance objection). Because the documents are in fact highly relevant, the parties are at an impasse.

## I.    J&J Must Produce Documents Regarding Its Compliance with HHS's 2016 Best Price Rule

By federal statute, a drug manufacturer—like J&J—must offer state Medicaid programs the "best price" for its drugs that it offers any other purchaser (with a few minor exceptions). 42 U.S.C. § 1396r-8. "Best price" for a drug means "the lowest price available from the manufacturer during the rebate period to any wholesaler, retailer, provider, health maintenance organization, nonprofit entity, or governmental entity in the United States in any pricing structure (including capitated payments) in the same quarter for which the AMP is computed." 42 C.F.R. § 447.505; *see also* 42 U.S.C. § 1396r-8(c)(1)(C). A drug manufacturer's best price must reflect all discounts,

---

[1] J&J originally objected to RFP No. 70 on the basis of burden "to the extent it seeks 'all documents and communications' regarding a broad subject matter." Ex. 1 at 13-14 (Dec. 18, 2023 J&J's R&Os to SaveOn' Fifth Set of RFPs). J&J has not articulated a burden objection in response to SaveOn's narrowing of the Requests at issue.

Hon. Freda L. Wolfson                                                    Page 3

rebates, and other pricing adjustments "either directly or indirectly to the best price-eligible enti-

ties." 42 C.F.R. § 447.505. In other words, the greater the discount or rebate, the lower the maxi-

mum price that manufacturers may charge to federal government entities for their drugs. Manu-

facturers must report their best price to the Department of Health and Human Services ("**HHS**")

quarterly. 42 U.S.C. § 1396r-8(b)(3)(A); 42 C.F.R. § 447.510(a).

In 2016, HHS promulgated a regulation—still in effect—that a drug manufacturer may

exclude copay assistance program funds from its best price calculation "to the extent that the man-

ufacturer ensures the program benefits are provided entirely to the patient and the pharmacy, agent,

or other entity does not receive any price concession." 42 C.F.R. § 447.505(c)(10) (the "2016 Best

Price Rule"). If any portion of copay assistance is not applied to a patient's cost-sharing obliga-

tions, however, "the assistance becomes a price concession to the health plan … and thus should

be counted in best price." 85 Fed. Reg. 87050 (Dec. 31, 2020). ███████████

████████████████████████████████████████████████████

███████. *See* Ex. 6 (JJHCS_00047500) at -7510.

J&J appears to have regularly certified to HHS that all its CarePath copay assistance funds

go exclusively to patients. For example, ████████████████████████████████



Ex. 7 (JJHCS_00204199) at -421 (second emphasis added) (April 7, 2022); *see also, e.g.*, Ex. 8

(JJHCS_00135354) at -537 (December 15, 2021); Ex. 9 (JJHCS_00135950) at -5970 (March 31,

2022); Ex. 10 (JJHCS_00214452) at -4469 (Mar. 2, 2022). ████████████████████

████████████████████████████████████████████████████



Ex. 7 (JJHCS_00204199) at -421. "

*Id.* This strongly indicates that

.

At the same time, however, J&J has told the Court and Your Honor in this case that a portion of its copay assistance funds flow to SaveOn. It alleges that SaveOn converts copay assistance to patients into a "manufacturer subsidy for [SaveOn, ESI, and Accredo]," Dkt. 219 Ex. A ¶ 128; *see also* Compl. ¶ 74, and that the savings that SaveOn generates for its commercial health plan clients are "simply diverted CarePath funds." Compl. ¶ 24.[2] In this case, J&J has regularly accused SaveOn of "seizing," "extract[ing]," "pilfering," "siphoning," "diverting," "misappropriating," "looting," and "stealing" J&J's copay assistance funds.[3] That is, J&J accuses SaveOn of

---

[2] *See also* Compl. ¶ 51 (accusing SaveOn of draining patient assistance programs); Dkt. 219 Ex. A ¶¶ 1 ("JJHCS brings this action to stop a scheme to pilfer tens of millions of dollars from the financial support that JJHCS provides for patients."), *id.* ¶ 3 ("The SaveOnSP scheme works by … leveraging the illicit SaveOnSP Program to surreptitiously extract inflated amounts of patient copay assistance, often exhausting the maximum amount of allotted copay assistance."), *id.* ¶ 127 (stating that SaveOn misappropriates copay assistance).

[3] *See* Dkt. 65, at 2 ("seiz[ing]"); Dkt. 66 at 2 (same); Dkt. 79 at 3 ("siphoning" and "pilfering"); Dkt. 109 at 1, 2, 4, 5 ("misappropriating"); Dkt. 110 at 1 ("diverting"); Dkt. 111 ("misappropriating"); Dkt. 133 at 6 (same); Dkt. 150 at 20 (same); Dkt. 165 at 15 (same); Apr. 3, 2024 Hr'g Tr. at 141:19-24 (Mr. LoBiondo: accusing SaveOn of "stealing our money:); *see also id.* at 126:16-23 (same); 144:3-14 (Mr. LoBiondo: "[SaveOn helps itself] to hundreds of millions of dollars of [J&J's] money."); Feb. 28, 2023 Hr'g at 4:10-15 (Mr. Sandick: "SaveOn's misappropriation of the CarePath co-pay support."); June 6, 2023 Hr'g at 41:14-17 (Mr. Mangi: "And we can cut off payments to an entity that we know is taking money that is not intended to."); June 27, 2023 Hr'g Tr. at 7:24-8:6 (Mr. Greenbaum: "[D]iversion of patient assistance funds is the foundation of

Hon. Freda L. Wolfson                                                              Page 5

taking copay assistance funds directly from J&J. Jan. 24, 2024 Hr'g at 83:2-8 (comparing

SaveOn's services to "someone steal[ing] a car").

      Both cannot be true. If SaveOn were diverting CarePath funds from patients as J&J asserts,

then any certification that J&J makes to HHS that all those funds go to patients would have to be

false. If J&J's apparent certifications to HHS that all its copay assistance funds go to patients were

true, on the other hand, then J&J's accusations that SaveOn diverts CarePath funds from those

patients would necessarily be false.

      J&J appears to be aware of the connection between its "best price" certifications and its

CarePath expenditures: ███████████████████████████████████████████

████████████████████████████████████████████████████████. *See, e.g.*, Ex.

7 (JJHCS_00204199) at -419, -421 ████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████. ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

2022, Ex. 11 at Tab "SaveOn ID" (JJHCS_00139021); Ex. 12 (JJHCS_00002774), ███████

██████████████████████████████████████ SaveOn is entitled to discover the basis

for J&J's apparently contradictory representations to HHS and to this Court.

      In correspondence, J&J asserted that SaveOn's requests are "just another way of asking for

---

SaveOn's business model."); *id.* 14:3-5 (Mr. Greenbaum: "We're trying to show that they are try-
ing to circumvent the changes at manufacturers are making to defeat their efforts to take our
money."); Jan 24, 2024 Hr'g Tr. at 72:14-20 (Mr. Sandick: accusing SaveOn of arguing that "[i]t's
okay to steal from someone, and to loot a program, so long as at the end of the day they're still
making money").

Hon. Freda L. Wolfson                                                                    Page 6

the same pricing data that the Court's February 6 Order squarely rejected." Ex. 2 at 4 (Apr. 9, 2024

Ltr.). Not so. SaveOn does not seek here the pricing data underlying J&J's transparency reports

that J&J put at issue in its Complaint, Compl. ¶¶ 25, 80, or the pricing data necessary to counter

any representation that J&J might make at trial about its purported pricing reductions, at issue in

SaveOn's February 20 Motion for Reconsideration, *see* Feb. 20, 2024 Mot. for Clarification &

Reconsideration at 18-20. SaveOn seeks here only communications and documents that will allow

it to test J&J's repeated accusations that SaveOn has been "diverting" J&J's copay assistance

funds. This motion is not about how J&J sets prices; it is about whether J&J actually believes that

any of its copay assistance funds flow to SaveOn. Evidence that J&J regularly certified that copay

assistance funds go entirely to patients, *see* 42 C.F.R. §§ 447.510(a)(2), (e), would contradict this

assertion and severely undermine J&J's credibility.

     SaveOn thus asks Your Honor to compel J&J to produce the following categories of doc-

uments for the full discovery period (April 1, 2016 through November 7, 2023):

- All Best Price Quarterly Reports for all Janssen drugs at issue in this litigation
  (RFP 79), *see* Ex. 13 (SaveOn's Sixth Set of RFPs);

- Documents sufficient to show the factual basis of all of J&J's statements to the
  Court in this litigation regarding SaveOn taking, seizing, pilfering, siphoning, di-
  verting, and misappropriating copay assistance funds (RFPs 8, 70), *see* Ex. 14
  (SaveOn's First Set of RFPs); Ex. 15 (SaveOn's Fifth Set of RFPs);[4]

- Documents sufficient to show the factual basis of all of J&J's statements to the
  Court in this litigation regarding SaveOn's services converting copay assistance

---

[4] SaveOn's RFP No. 8 seeks: "All Documents and Communications with or regarding SaveOnSP,"
Ex. 14 at 12 (Nov. 11, 2022 SaveOn's First Set of RFPs). SaveOn's RFP No. 70 seeks: "All Doc-
uments and Communications regarding manufacturer copay assistance program funds counting
towards the calculation of a drug's Best Price, including the anticipated impact of the 2023 Best
Price Rule on JJHCS, including without limitation the impact on CarePath." Ex. 15 at 11-12
(SaveOn's Fifth Set of RFPs). SaveOn's RFP No. 79 seeks: "All Best Price Quarterly Reports
created or submitted by JJHCS, Janssen, or their affiliates for each Janssen Drug." Ex. 13 at 12
(Dec. 28, 2023 SaveOn's Sixth Set of RFPs).

       funds into a manufacturer subsidy for SaveOn, Express Scripts, Accredo, and/or plans, *see* Compl. ¶¶ 23-24, 74, (RFPs 8, 70), *see* Ex. 14 (SaveOn's First Set of RFPs); Ex. 15 (SaveOn's Fifth Set of RFPs);

- Documents sufficient to show what J&J has told HHS, CMS, or other executive agencies regarding each patient that J&J or a vendor of J&J has identified as a member of a SaveOn-advised plan (RFPs 8, 70), *see* Ex. 14 (SaveOn's First Set of RFPs); Ex. 15 (SaveOn's Fifth Set of RFPs);

- Documents sufficient to show the basis for J&J's assertions to HHS, CMS, and other executive agencies that the full amount of J&J's copay assistance is passed to patients (RFP 70), *see* Ex. 15 (SaveOn's Fifth Set of RFPs);

- Documents sufficient to show J&J's evaluation of whether the services provided by SaveOn, accumulators, or maximizers cause copay assistance funds to be provided to any entities other than patients (RFPs 8, 70), *see* Ex. 14 (SaveOn's First Set of RFPs); Ex. 15 (SaveOn's Fifth Set of RFPs); and

- All communications or records of communications that discuss accumulators, maximizers, or SaveOn, with HHS, CMS, or other federal agencies, related to J&J's submission of Quarterly Best Price Reports (RFPs 8, 70), *see* Ex. 14 (SaveOn's First Set of RFPs); Ex. 15 (SaveOn's Fifth Set of RFPs).

       For the last category of documents, SaveOn asks Your Honor to compel J&J to identify individuals with documents relevant to this topic as custodians (not limited to individuals within JJHCS), including, but not limited, the individuals who certify compliance with the 2016 Best Price Rule to HHS, and run the following search term across their custodial documents for the full discovery period of April 1, 2016 to November 7, 2023:

- ("HHS" OR (Health /3 "Human Services") OR "CMS" OR ".gov") AND ("Best Price" OR "BP") AND (accumulat* OR maximiz* OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

## II.   J&J Must Produce Documents Regarding Its Response to HHS's 2023 Best Price Rule

       Under the 2016 Best Price Rule, so long as a drug manufacturer did not know that its copay assistance funds were going to a plan, PBM, accumulator, or maximizer, it could avoid accounting for those funds as a discount in its "best price" calculations and so charge a higher price to gov-

ernment entities. This regime gave J&J a financial incentive not to learn whether its copay assistance funds were going to any entities other than patients—if J&J learned that any funds were going to other entities, it would have to lower the "best price" it charged federal insurers for its drugs. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████. *See* Ex. 6 (JJHCS_00047500) at -7510 ████

████████████████████████████████████████████████████████

████████████████████████████████████

On December 31, 2020, however, HHS finalized a "accumulator adjustment rule" (the "2023 Best Price Rule"), which required manufacturers to "ensure the benefit [of their assistance programs] go exclusively to the consumer" before the manufacturers exclude the discount from their best price calculations. CMS Final Rule 85 Fed. Reg. 87,000 (Dec. 31, 2020). This required drug manufacturers to take affirmative steps to ensure that none of their copay assistance funds flow to entities other than patients; manufacturers would now face a penalty unless they took all steps to know whether the funds went to entities other than patients. ████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Ex. 16 (JJHCS_00084277) at -4292.[5]

In 2022, after the 2023 Best Price Rule was issued, ████████████████████████

████████████████████, Ex. 16 at 9 (JJHCS_00084277) at -285, ████████████████

_____

[5] While a court would ultimately strike it down in May 2022 before it took effect, *Pharm. Rsch. & Mfrs. of Am. v. Becerra*, No. 21-CV-1395 (CJN), 2022 WL 1551924, at *5-6 (D.D.C. May 17, 2022), the 2023 Best Price Rule was a final HHS rule embodied in federal regulations for well over a year starting in early 2021. From January 2021 until May 2022, J&J thus had every reason to believe that the 2023 Best Price Rule would be effective starting in January 2023.

Hon. Freda L. Wolfson                                                                      Page 9

████████.[6] It stated: "███████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████." Ex. 17 at 4 (JJHCS_00033653)

(emphasis added).[7] ████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████. *See* Ex. 23 (ARCHBOW_000443)████████

███████████████████████████████████████████████████████████

██████); Ex. 24 JJHCS_00141442 (██████████████████████████████████

████████████████████████████). J&J also changed CarePath's terms and conditions for Stelara

and Tremfya ████████████████████ Ex. 17 at 7 (JJHCS_00033653).[8]

---

[6] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████████████████████████

[7] *See also* Ex. 18 at 1 (JJHCS_00084196)████████████████████████████
████████); Ex. 19 at 3 (JJHCS_00010110)██████████████████████████
████████████████████████████████████████████████); Ex. 20 at 4 (JJHCS_00003023) (████████
████████████████████████████████████████████); Ex. 21 at 2 (JJHCS_00001595) (T█
████ ██ ██ ██ ████████ ██ ██ ████████████████); Ex. 22 (TRIAL-
CARD_00003689) (article titled████████████████████████████████████████").

[8] *See* Ex. 17 at 7 (JJHCS_00033653) (████████████████████████████████
██████████████████████); Ex. 25 (JJHCS_00001209)████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████);

J&J's reaction to the 2023 Best Price Rule is relevant in multiple ways. As Your Honor observed, "[SaveOn] is entitled to explore why [J&J] decided to amend the terms in 2022, when it knew of the SaveOnSp Program since 2017, which decision could potentially support Defendant's defenses of mitigation, laches and acquiescence." Dkt. 192 at 14; *see also New Reflections Plastic Surgery, LLC v. Reflections Ctr. for Skin & Body, PC*, Civil Action No. 16-8523 (FLW) (TJB), 2018 WL 6716105, at *6 (D.N.J. Dec. 20, 2018) ("[A]ggrieved parties must … bring their claim … when they learned or should have learned, through the exercise of due diligence, that they have a cause of action."). J&J knew of SaveOn since at least 2017, Dkt. 192 at 14, ████████████

████████████████████████████████████████████████████████████████

████████████████████████████. *Cf.* Ex. 6 (JJHCS_00047500) at -7510.[9] ████

████████████████████████████████████████████████████████████████

████████████████████████████ d. *See id.* (████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

Your Honor also reaffirmed that J&J's understanding of the terms and conditions at issue in this case is highly relevant. *See* Dkt. 192 at 7 ("[T]he Court held that arguments regarding the meaning of the terms and conditions should be decided at summary judgment with the benefit of extrinsic evidence."). J&J's response to the 2023 Best Price Rule will likely also show that J&J

---

Ex. 26 (JJHCS_00026369) at -370 (noting that ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████).

[9] ████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *See* Ex. 27 (JJHCS_00197563); Ex. 28 (JJHCS_00197574).

developed its current, made-for-litigation interpretation of the T&Cs solely to bring this lawsuit,

shut down SaveOn, and avoid the effect of the 2023 Best Price Rule—not because J&J truly be-

lieved that SaveOn's activities violated T&Cs or that SaveOn caused any real damage to J&J.

In correspondence, J&J asserted that its productions regarding the CAP Program will cover

documents on this topic. *See* Ex. 2 at 3 (Apr. 9, 2024 Ltr.). But J&J has neither identified the

custodians who were responsible for responding to the 2023 Best Price Rule, nor is J&J running a

search term which would capture the relevant documents related to that rule. That is plainly insuf-

ficient. As discussed *supra*, J&J must produce documents to explain ████████████████

███████████████████████████████████████████████████. *Com-*

*pare* Ex. 29 (JJHCS_00195975) (███████████████████████████████

█████████████████████████████████████████████████████████

████████████) *with* Ex. 23 (ARCHBOW_000443).

SaveOn asks Your Honor to compel J&J to produce documents and communications re-

flecting J&J's response to the 2023 Best Price Rule, including without limitation its creation of the

CAP Program and its interpretations of or modifications to its terms and conditions. J&J should

identify individuals with documents relevant to this topic as custodians (not limited to individuals

within JJHCS) and run the following term run across their custodial documents from December 1,

2020 to November 7, 2023:

- ("copay" OR "co-pay" or fund* OR manufact*) /20 ("best price" or "BP") /20 (accu-mulat* OR maximiz* OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

SaveOn appreciates Your Honor's attention to this matter.

Respectfully submitted,

*/s/ E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.

Hon. Freda L. Wolfson                                                      Page 12

Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# Exhibit 1

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (ES) (CLW) <br><br> **PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIFTH REQUEST FOR PRODUCTION OF DOCUMENTS** |

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the

General Objections below into its specific objections to each Request, whether or not each such

General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing.  It reserves the right to

supplement, amend, modify, or correct its responses under Rule 26(e) should it discover

additional information or grounds for objections at any time prior to the conclusion of this

Action.  The following responses and objections are based upon information known at this time.

1.    JJHCS objects to the Requests to the extent that they seek documents or

information protected from disclosure by a privilege including, without limitation, the attorney-

client privilege, the work-product doctrine, the joint defense privilege, the common interest

privilege, the First Amendment privilege, the Federal Rules of Civil Procedure, the Local Rules

of the Court, and relevant case law.  The inadvertent production by JJHCS of information,

documents, materials, or things covered by any privilege or doctrine shall not constitute a

waiver of any applicable privilege or doctrine, including but not limited to, objections on the

basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or

admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.    JJHCS objects to the Requests to the extent that they seek documents or

information that are not relevant to a claim or defense or to the subject matter of this litigation.

Any response JJHCS makes to any Request shall not be deemed an admission that the response,

information, document, or thing produced is relevant to a claim or defense or to the subject

matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence,

is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek documents or information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

2

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.      JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.     JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.     JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.     JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

13.     JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.      JJHCS objects to the definition of the term "Archbow" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of Archbow." JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS or documents that have already

3

been produced in response to discovery requests made by SaveOnSP to other entities, including but not limited to Archbow.

2.      JJHCS objects to the definition of the term "Benefits Investigation" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to the definition on the grounds that the phrase "receives information regarding the pharmacy benefits provided by a health plan" is vague and ambiguous; JJHCS construes this phrase in the context of this case to refer to information received through investigations into whether a patient is affiliated with SaveOnSP or another copay accumulator or maximizer service.  JJHCS further objects to the definition as irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it encompasses instances in which JJHCS may receive "information regarding the pharmacy benefits provided by a health plan" for purposes other than establishing whether a patient is affiliated with SaveOnSP or another copay accumulator or maximizer service.

3.      JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.

4.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to include attorneys and accountants whose documents and communications may be outside of JJHCS's possession, custody, and control.  JJHCS further objects to the definition as overbroad,

4

unduly burdensome, and not proportional to the needs of the case to extent it purports to include

"any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, .

. . agents, [or] representatives" or purports to include entities and persons acting or purporting to

act on behalf of or under the control of entities other than Johnson & Johnson Healthcare

Systems, Inc., including Centocor, Inc.; Ortho Biotech Products LP; McNeil Pharmaceutical;

Ortho-McNeil Pharmaceutical, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc.; Scios Inc.;

Janssen Biotech, Inc.; Janssen Oncology, Inc.; Janssen Research & Development, LLC; Janssen

Pharmaceuticals, Inc.; Janssen Products, LP; Actelion Pharmaceuticals U.S., Inc.; Janssen

BioPharma LLC; and Janssen Research & Development LLC.

5.    JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and

as irrelevant to the extent it purports to include entities other than those responsible for

administering CarePath during the relevant Time Period.  JJHCS further objects to the

definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it includes "any and all predecessors and successors in interest, assignees, parents,

subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers,

employees, committees, attorneys, accountants and all persons or entities acting or purporting to

act on behalf" of those entities.  JJHCS further objects on the ground that the phrase

"administer, in whole or in part, CarePath" is vague and ambiguous.  JJHCS further objects to

the extent the term is used to seek documents and communications in the possession of entities

other than JJHCS.

6.    JJHCS objects to the definition of the term "Lash Group" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc."  JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

7.      JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc."  JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

## OBJECTIONS TO THE TIME PERIOD

1.      JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome, and not relevant to the subject matter of this Action to the extent they call for documents from after November 7, 2023.  Unless otherwise noted, JJHCS will only provide information from April 1, 2016 through November 7, 2023 (the "Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

### Request No. 63

All Documents and Communications regarding JJHCS's efforts to directly reimburse patients for out-of-pocket costs after the patient acquires a Janssen Drug.

### Response to Request No. 63

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS objects to

this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to JJHCS's efforts to provide copay assistance funds to patients and unrelated to the CarePath program (and the "withMe" programs). JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it uses the term "Janssen" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications related to "efforts to directly reimburse patients for out-of-pocket costs" that are unrelated to SaveOnSP. JJHCS further objects to this request as duplicative of Request Nos. 26 and 28; in response to those Requests, subject to objections made thereto, JJHCS already has produced data regarding payments to patients to reimburse them for their out-of-pocket costs.

Subject to the foregoing objections, JJHCS incorporates by reference its responses to Request Nos. 26 and 28. *See also* Feb. 17, 2023 Letter from A. LoMonaco to M. Nelson; Mar. 7, 2023 Letter from A. Dunlap to H. Sandick. To the extent that documents responsive to this Request are also responsive to prior Requests for Production, JJHCS has already agreed to produce those documents from the relevant Time Period, subject to prior objections and those presented here. JJHCS will update its production of data in responsive to Request Nos. 26 and 28 pursuant to the Court's November 7, 2023 Order. (*See* Dkt. No. 173.) Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 64**

All Documents and Communications regarding ████████████████████
████████████████████████████████████████████ ARCHBOW_000219),
████████████████████████████████████████████████████████████ *See*
ARCHBOW_000219.

**Response to Request No. 64**

In addition to the foregoing general objections, JJHCS further objects to this Request as
overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it
seeks "all" documents and communications regarding a broad subject matter.  JJHCS further
objects to this Request to the extent it seeks documents and communications that are exempt
from discovery and protected from disclosure by any privilege.  JJHCS further objects to this
Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the
extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this
Request to the extent it uses the term "Janssen" for the reasons stated in JJHCS's Objections to
Definitions.  JJHCS further objects to this Request as irrelevant to any claim or defense in this
Action to the extent it seeks documents and communications unrelated to SaveOnSP.  JJHCS
further objects to this Request to the extent it seeks documents and communications in the
possession of entities other than JJHCS.  JJHCS further objects to this Request as duplicative of
Request Nos. 8, 31, 33, 49, 51, 52, 54, and 55.

Subject to the foregoing objections, JJHCS incorporates by reference its responses to
Request Nos. 8, 31, 33, 49, 51, 52, 54, and 55.  To the extent that documents or communications
responsive to this Request are also responsive to prior Requests for Production, JJHCS has
already agreed to produce responsive, non-privileged documents, subject to prior objections and
those presented here, including but not limited to those documents related to the CAP Program,

8

consistent with the Court's November 7, 2023 Order.  (*See* Dkt. No. 173.)  Otherwise, JJHCS

will not search for or produce documents responsive to this Request.

**Request No. 65**

      All Documents and Communications regarding ███████████████████████

█████████████████████████ ARCHBOW_000241).

███████████████████████████████████████.  *See* ARCHBOW_000241.

**Response to Request No. 65**

      In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks documents and communications that are exempt

from discovery and protected from disclosure by any privilege.  JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this

Request to the extent it uses the term "Janssen" for the reasons stated in JJHCS's Objections to

Definitions.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.  JJHCS further objects to this

Request as duplicative of Request Nos. 8, 31, 33, 49, 64, and 66.

      Subject to the foregoing objections, JJHCS incorporates by reference its responses to

Request Nos. 8, 31, 33, 49, 64, and 66.  To the extent that documents responsive to this Request

are also responsive to prior Requests for Production, JJHCS has already agreed to produce those

documents from the relevant Time Period, subject to JJHCS's prior objections and those

presented here.  JJHCS will update its production pursuant to the Court's November 7, 2023

Order.  (*See* Dkt. No. 173.)  Otherwise, JJHCS will not search for or produce documents

responsive to this Request.

**Request No. 66**

All Documents and Communications regarding attempts by JJHCS to prevent health plans, PBMs (including without limitation Express Scripts), pharmacies (including without limitation Accredo), or SaveOnSP, from being able to detect JJHCS's provision of funds to patients.

**Response to Request No. 66**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP, Express Scripts, or Accredo. JJHCS further objects to this Request as duplicative of Request Nos. 8, 31, 33, 49, 64 and 65.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request Nos. 8, 31, 33, 49, 64 and 65. To the extent that documents responsive to this Request are also responsive to prior Requests for Production, JJHCS has already agreed to produce those documents from the relevant Time Period subject to JJHCS's prior objections. JJHCS will update its production pursuant to the Court's November 7, 2023 Order. (*See* Dkt. No. 173.) Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 67**

Documents sufficient to show all payments or reimbursements made by JJHCS to patients taking Janssen Drugs other than copay assistance payments provided via CarePath.

**Response to Request No. 67**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and information unrelated to SaveOnSP. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "Janssen" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and information that is unrelated to the CarePath program and any withMe programs. JJHCS further objects to this Request as duplicative of Request Nos. 26 and 28; in response to those Requests, JJHCS already has produced data regarding payments to patients.

Subject to the foregoing objections, JJHCS incorporates by reference its responses to Request Nos. 26 and 28. *See also* Feb. 17, 2023 Letter from A. LoMonaco to M. Nelson; Mar. 7, 2023 Letter from A. Dunlap to H. Sandick. To the extent that documents responsive to this Request are also responsive to prior Requests for Production, JJHCS has already agreed to produce those documents from the relevant Time Period, subject to prior objections and those presented here. JJHCS will update its production of data in responsive to Request Nos. 26 and 28 pursuant to the Court's November 7, 2023 Order. (*See* Dkt. No. 173.) Otherwise, JJHCS will not search for or produce documents or communications responsive to this Request.

11

**Request No. 68**

All Documents and Communications between JJHCS and Archbow regarding CarePath, copay assistance, or provision of funds to patients enrolled in CarePath.

**Response to Request No. 68**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request as irrelevant to the extent that it seeks documents and communications between JJHCS and Archbow that are unrelated to SaveOnSP.   JJHCS further objects to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "Archbow" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections and to objections to other Requests, JJHCS has already agreed to produce responsive, non-privileged documents that relate to SaveOnSP, including those documents related to the CAP Program consistent with the Court's November 7, 2023 Order.  (*See* Dkt. No. 173.)  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 69**

All Documents and Communications with or regarding ██████████████████████ *See* ARCHBOW_000103.

12

**Response to Request No. 69**

  In addition to the foregoing general objections, JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it uses the term "Archbow" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request as duplicative of Request No. 8.

  Subject to the foregoing objections, JJHCS incorporates by reference its response to Request No. 8.  To the extent that documents or communications responsive to this Request are also responsive to prior Requests for Production, subject to prior objections and those presented here, JJHCS has already agreed to produce responsive, non-privileged documents, including those related to the CAP Program, consistent with the Court's November 7, 2023 Order.  (*See* Dkt. No. 173.)  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 70**

  All Documents and Communications regarding manufacturer copay assistance program funds counting towards the calculation of a drug's Best Price, including the anticipated impact of the 2023 Best Price Rule on JJHCS, including without limitation the impact on CarePath.

**Response to Request No. 70**

  In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all documents and communications" regarding a broad subject matter.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action.  JJHCS further objects

13

to this Request to the extent it seeks documents and communications that are exempt from

discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request

to the extent it uses the terms "JJHCS" and "Best Price" for the reasons stated in JJHCS's

Objections to Definitions.

JJHCS will not search for or produce documents or communications responsive to this

Request.

**Request No. 71**

Documents sufficient to show how JJHCS records, books, accounts for, or refers to copay
assistance payments and other provision of funds to patients for the purpose of internal reports,
bookkeeping, internal or external financial reporting, including without limitation reporting for
tax purposes or compliance with any other law, including without limitation whether JJHCS
accounts for those payments as charity, charitable contributions, business expenses, rebates,
discounts, marketing, or otherwise.

**Response to Request No. 71**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action.  JJHCS further objects to this Request to the

extent it seeks information that is exempt from discovery and protected from disclosure by any

privilege.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks documents outside of the relevant

Time Period.  JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the

reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents or communications responsive to this

Request.

**Request No. 72**

All Documents and Communications regarding ███████████████████████████
███████████████████████████████████████████████████████████
████████████████████ *See* ARCHBOW_000438.

14

**Response to Request No. 72**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all documents and communications" regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to the extent that it seeks information unrelated to SaveOnSP. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the term "Archbow" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request as duplicative of Request No. 68.

JJHCS will not search for or produce documents or communications responsive to this Request.

**Request No. 73**

All Documents and Communications by or for Janssen market research regarding Accumulators or Maximizers, including without limitation discussions with Archbow. *See* ARCHBOW_000306; ARCHBOW_000439.

**Response to Request No. 73**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents sufficient to show "all documents and communications" regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to the extent that it seeks information unrelated to SaveOnSP and the CarePath program and any withMe programs.

15

JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "Archbow" and "Janssen" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request as duplicative of Request Nos. 20, 41, 42 and 68.

Subject to the foregoing objections, to the extent that documents responsive to this Request are also responsive to prior Requests for Production, JJHCS has already agreed to produce those documents from the relevant Time Period, subject to JJHCS's prior objections. JJHCS will update its production of responsive, non-privileged documents to those Requests pursuant to the Court's November 7, 2023 Order. (*See* Dkt. No. 173.) Otherwise, JJHCS will not search for or produce documents or communications responsive to this Request.

## Request No. 74

All Documents and Communications regarding the funds that JJHCS provides to patients taking Janssen Drugs (including without limitation CarePath funds and any other funds) compared to the revenue that Janssen receives from the sales of Janssen Drugs, including without limitations discussions with Archbow. *See* ARCHBOW_000440.

## Response to Request No. 74

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents sufficient to show "all documents and communications" regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to the extent that it seeks information unrelated to SaveOnSP and unrelated to the CarePath program and any withMe

16

programs.  JJHCS further objects to this Request to the extent it seeks information that is exempt

from discovery and protected from disclosure by any privilege.  JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this

Request to the extent it uses the terms "JJHCS," "Janssen," and "Archbow" for the reasons stated

in JJHCS's Objections to Definitions.  JJHCS further objects to this Request to the extent it seeks

documents and communications in the possession of entities other than JJHCS.  JJHCS further

objects to this Request as duplicative of Request Nos. 29 and 41.  JJHCS also objects to this

Request to the extent that it seeks documents that the Court specifically declined to order JJHCS

to produce on March 17 and October 30, 2023.

    JJHCS will not search for or produce documents or communications responsive to this

Request.

## Request No. 75

    All Documents and Communications with entities other than JJHCS regarding the above-
captioned lawsuit or any potential lawsuit against SaveOnSP, including without limitation
discussions with Archbow. *See* ARCHBOW_000443.

## Response to Request No. 75

    In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents sufficient to show "all documents and communications" regarding a broad

subject matter.  JJHCS further objects to this Request to the extent it seeks information that is

exempt from discovery and protected from disclosure by any privilege, including without

limitation the attorney-client privilege, the work-product doctrine, the joint defense privilege, the

common interest privilege, the First Amendment privilege, the Federal Rules of Civil Procedure,

the Local Rules of the Court, and relevant case law.  JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "Archbow" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request as duplicative of Request No. 8.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request No. 8. To the extent that documents responsive to this Request are also responsive to prior Requests for Production, JJHCS has already agreed to produce those documents from the relevant Time Period, subject to JJHCS's prior objections and those objections presented here. JJHCS will update its production pursuant to the Court's November 7, 2023 Order. (*See* Dkt. No. 173.) Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 76**

All recordings of calls between SaveOnSP or any employee of SaveOnSP, on the one hand, and JJHCS or any Hub Entity, on the other hand.

**Response to Request No. 76**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents sufficient to show "all" recordings regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as unduly burdensome because it requires JJHCS to identify recordings of calls without the benefit of identifying information—specifically, all names (including the many pseudonyms and false

claims of affiliation with various health plans, insurance companies and pharmacies made by

SaveOnSP) and phone numbers used by SaveOnSP employees who called JJHCS and its

affiliates—that SaveOnSP has not provided.  JJHCS further objects to this Request to the extent

it uses the terms "JJHCS" and "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections

to Definitions.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents or communications responsive to this

Request.

Dated: December 18, 2023

<div style="margin-left: 40%;">

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:    /s/Jeffrey J. Greenbaum
       JEFFREY J. GREENBAUM
       KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

</div>

# Exhibit 2



www.pbwt.com

April 9, 2024

Ian Eppler
(212) 336-2205

**By Email**

Elizabeth Snow, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:     **SaveOnSP Request for Production Nos. 70 and 79**
        *Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC*
        **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Elizabeth:

We write in response to your March 21, 2024 letter regarding SaveOnSP's Request Nos. 70 and 79. As we have told you before, these Requests call for a plethora of documents related to the "Best Price Rule," and are therefore irrelevant to the claims and defenses in this litigation.

**I.      SaveOnSP's "Narrowed" Requests Actually Broaden RFPs 70 and 79**

As a threshold matter, these ostensibly "narrow[ed]" demands are not consistent with the text of Request Nos. 70 and 79. Mar. 21, 2024 Ltr. from E. Snow to J. Long, at 2. Request No. 70 demands "[a]ll Documents and Communications regarding manufacturer copay assistance program funds counting towards the calculation of a drug's Best Price, including the anticipated impact of the 2023 Best Price Rule on JJHCS, including without limitation the impact on CarePath," and Request No. 79 demands "[a]ll Best Price Quarterly Reports created or submitted by JJHCS, Janssen, or their affiliates for each Janssen Drug."

In your March 21 letter, you demand that JJHCS produce several other categories of documents related to the Best Price Rule, including:

- Documents sufficient to show the factual basis of all statements to the Court in this litigation regarding SaveOn taking, seizing, pilfering, siphoning, diverting, and misappropriating copay assistance funds;

- Documents sufficient to show the factual basis of all statements to the Court in this litigation regarding SaveOn's services converting copay assistance funds into a manufacturer subsidy for SaveOn, Express Scripts, Accredo, and/or plans;

April 9, 2024
Elizabeth Snow, Esq.
Page 2

- Documents sufficient to show what J&J has told HHS, CMS, or other executive agencies regarding each patient that J&J or a vendor of J&J has identified as on a SaveOn-advised plan;

- Documents sufficient to show the basis for J&J's assertions made to HHS, CMS, and other executive agencies that the full amount of copay assistance is passed to the patient;

- Documents sufficient to show J&J's evaluation of whether the services provided by SaveOn, accumulators, or maximizers cause copay assistance funds to be provided to any entity other than the patient; and

- All communications or records of communications that discuss accumulators, maximizers, or SaveOn, with HHS, CMS, or other federal agencies, related to J&J's submission of Quarterly Best Price Reports.

Mar. 21, 2024 Ltr. from E. Snow to J. Long, at 2-3. SaveOnSP does not explain, for example, how documents regarding the "factual basis for all statements to the Court in this litigation" related to certain issues have anything to do with the Requests.

Even setting that aside, none of these categories of documents are relevant to the litigation because documents solely concerning the Best Price Rule are immaterial to this litigation, as set forth below.

## II.    The Best Price Rule Is Irrelevant to the Claims and Defenses at Issue

SaveOnSP's insistence on discovery related to the Best Price Rule is nothing more than an attempt to re-open, for a third time, discovery related to pricing of Janssen drugs. This is wholly improper, and JJHCS rejects SaveOnSP's latest attempts—months after Judge Wolfson found pricing irrelevant—to re-open the door on this long-settled issue.

To be clear, the Best Price Rule refers to a series of statutes and regulations governing rebates paid to manufacturers for prescription drugs dispensed to individuals enrolled in the Medicaid program. *See* 42 U.S.C. § 1396r-8; 42 C.F.R. § 447.500 *et seq*. The rebates and pricing determinations at issue in the Best Price regulatory scheme have no relation to the claims or defenses at issue in this lawsuit. SaveOnSP nevertheless demands discovery on these irrelevant issues, arguing that proposed changes to the Best Price Rule in 2020 somehow transform reams of irrelevant pricing data into relevant discovery materials. *See* Mar. 21, 2024 Ltr. from E. Snow to J. Long, at 2 (speculating that never-effective proposed changes to the Best Price Rule may have "influenced [JJHCS's] behavior regarding SaveOn.").

There are two fundamental problems with this theory: *First*, JJHCS already has agreed to produce all non-privileged documents and communications related to CAP, as well as similar efforts that may predate the CAP Program, for the period April 1, 2016 to November 7, 2023. *Second*, the proposed changes to the Best Price Rule—which would have required

April 9, 2024
Elizabeth Snow, Esq.
Page 3

manufacturers to "ensure that the full value of their assistance stays with the patient and is not captured by the patient's health insurer through an accumulator"[1]—never became effective.

On the first point, JJHCS reiterates—as it has in the past—that if a non-privileged document relates to CAP (or predecessor programs), JJHCS has produced it or will produce it. *See, e.g.*, Mar. 1, 2024 Ltr. from J. Long to E. Snow, at 1 (quoting Dkt. No. 192, at 26). In other words, if a non-privileged document addresses *both* a Best Price-related issue *and* CAP or other JJHCS efforts to mitigate harm caused by SaveOnSP, JJHCS has produced it or will produce it. At the same time, JJHCS will not indulge a fishing expedition for documents that relate *only* to the Best Price Rule. *See, e.g,* Feb. 28, 2024 Ltr. from I. Eppler to E. Snow, at 2 ("documents unrelated to *both* SaveOnSP and the CarePath copay assistance program are irrelevant in this litigation" (emphasis in original)); Feb. 8, 2024 Ltr. from I. Eppler to E. Snow, at 5 (refusing to produce documents related to "other accumulators or maximizers" as "wholly irrelevant to the claims and defenses in this action").

On the second point, the timeline of events makes clear that the proposed Best Price Rule change had nothing to do with JJHCS's efforts to limit the harm done by SaveOnSP. As SaveOnSP well knows, a federal district court struck down the proposed change more than six months *before* it became effective, leaving a prior version of the Rule, which exempted copay assistance dollars that have been captured by accumulators or maximizers from Best Price calculations, in effect. *Pharm. Rsch. & Manufacturers of Am. v. Becerra*, 2022 WL 1551924, at *5 (D.D.C. May 17, 2022). There is no reason to believe SaveOnSP's implausible theory that JJHCS was motivated to undertake expensive and burdensome efforts to mitigate the harm done by SaveOnSP because of a regulation that was vacated by a court and never went into effect.[2]

SaveOnSP's other requests in its March 21 letter are similarly irrelevant. For example, the demands for "[d]ocuments sufficient to show what J&J has told HHS, CMS, or other executive agencies regarding each patient that J&J or a vendor of J&J has identified as on a SaveOn-advised plan" and "[d]ocuments sufficient to show the basis for J&J's assertions made to HHS, CMS, and other executive agencies that the full amount of copay assistance is passed to the patient" make no sense in light of the existing regulatory framework—which was in effect for the entirety of the relevant time period through the present. And while SaveOnSP claims that it is entitled to Best Price documents ███████████████████████████████████ "JJHCS_00136670" █████████ ████████████████████████████████████ Mar. 21, 2024 Ltr. from E. Snow to J. Long, at 2, ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████

---

[1] *Pharm. Rsch. & Manufacturers of Am. v. Becerra*, 2021 WL 5630798, at *2 (D.D.C. Dec. 1, 2021).

[2] Accordingly, JJHCS will not run the following term: ("copay" OR "co-pay" or fund* OR manufact*) /20 ("best price" or "BP") /20 (accumulat* OR maximiz* OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP).

April 9, 2024
Elizabeth Snow, Esq.
Page 4

## III.    SaveOnSP's Remaining Requests Squarely Relate to Pricing Data

Request No. 79 demands the production of JJHCS's "Best Price Quarterly Reports"—i.e., the quarterly reports that drug manufacturers, such as JJHCS, must provide to the Centers for Medicare and Medicaid Services with their pricing data. 42 C.F.R. § 447.510(a). This is just another way of asking for the same pricing data that the Court's February 6 Order squarely rejected. The Court concluded that "documents on pricing of Janssen drugs are [not] relevant to Plaintiff's claims or Defendant's defenses" and rejected three RFPs seeking the prices of Janssen drugs.[3] Dkt. No. 192, at 24. SaveOnSP's latest request for Best Price Reports is nothing more than a second bite at the apple. Disguising a renewed demand for pricing data by making reference to the Best Price Rule does not change the conclusion reached by the Court earlier this year: pricing-related documents are simply irrelevant to this litigation.

SaveOnSP's request for additional custodians and search terms fare no better. SaveOnSP uses the Best Price Quarterly Reports to demand "communications or records of communications that discuss accumulators, maximizers, or SaveOn, with HHS, CMS, or other federal agencies, related to J&J's submission of Quarterly Best Price Reports." Mar. 21, 2024 Ltr. from E. Snow to J. Long, at 3. But its proposed search term is explicitly designed to return these sensitive pricing documents—particularly when paired with a request to expand to J&J custodians who have no relation to JJHCS's co-pay assistance program or the claims and defenses in this litigation.[4] Accordingly, JJHCS declines to run this additional search string.

We are available to meet and confer and reserve all rights.

Very truly yours,

/s/ Ian Eppler
Ian Eppler

---

[3] *See, e.g,* SaveOnSP's First Set of Requests for Production ¶ 28(g) (demanding, for "each Janssen Drug" at issue in this litigation, "[d]ocuments sufficient to show" the "price of the Janssen Drug"); ¶ 30 (demanding, "for each year for each Janssen Drug, all Documents and Communications regarding the basis for Janssen's decision to raise or lower the price of the Janssen Drug.").

[4] The term is: ("HHS" OR (Health /3 "Human Services") OR "CMS" OR ".gov") AND ("Best Price" OR "BP") AND (accumulat* OR maximiz* OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP).

# Exhibit 3



**www.pbwt.com**

February 22, 2024

Ian Eppler
(212) 336-2205

**VIA EMAIL**

Hannah R. Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

<div align="center">

Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
No. 2:22-cv-02632 (JKS)(CLW)

</div>

Dear Hannah:

We write in response to SaveOnSP's February 12, 2024 letter regarding JJHCS's responses and objections to SaveOnSP's Sixth Set of Requests for Production ("JJHCS's Sixth Set of R&Os").

## I.    General Objections & Definitions

SaveOnSP requests confirmation that JJHCS is not withholding documents based on two of its general objections:  JJHCS's objection that SaveOnSP's requests seek documents or information "obtainable from sources other than JJHCS" in a more efficient manner, and JJHCS's objection that SaveOnSP's requests require JJHCS to disclose materials in a manner that would violate "a confidentiality agreement, court order, or applicable law."  *See* JJHCS's Sixth Set of R&Os, at 2.  As we have repeatedly stated—including in response to several prior letters from SaveOnSP—JJHCS's specific responses and objections to each of SaveOnSP's requests explain how JJHCS plans to respond, including with respect to what JJHCS is willing to produce.  *See* Feb. 8, 2024 Ltr. from I. Eppler to E. Snow at 1; Jan. 2, 2024 Ltr. from J. Long to E. Snow at 1.  If you believe any of our responses or objections are unclear, please let us know.

As to non-JJHCS discovery, JJHCS has repeatedly explained its objection to SaveOnSP's definition of Janssen.  JJHCS has consistently made clear—including in several prior letters addressing the same issue—that of roughly 200 J&J subsidiaries, "JJHCS is the sole relevant J&J entity involved in the development, marketing, [and] administration of CarePath."  Feb. 13, 2024 Ltr. from C. Zielinski to E.Snow (quoting Feb. 8, 2024 Ltr. from I. Eppler to E. Snow at 1; Jan. 2, 2024 Ltr. from J. Long to E. Snow at 1; Dkt. No. 122 at 1; Dkt. No. 29 at 20).  In compliance with Judge Wolfson's February 6, 2024 order (Dkt. No. 192), JJHCS will designate three additional custodians for limited discovery.  *See* Feb. 13, 2024 Ltr. from C. Zielinski to E. Snow

Hannah R. Miles, Esq.
February 22, 2024
Page 2

at 2.  JJHCS will not undertake a "further investigation into whether individuals outside of JJHCS possess relevant information or responsive documents," and JJHCS "reject[s] SaveOnSP's latest attempt to relitigate issues that have already been foreclosed by prior orders."  *Id.*

## II.     Request Nos. 77 and 78

These Requests demand a bevy of documents and communications related to relationships between JJHCS and various patient and pharmaceutical advocacy groups, and alleged coordination between JJHCS and those groups regarding public communications about copay assistance programs, SaveOnSP, accumulators, or maximizers.  As a basis for these Requests, SaveOnSP claims JJHCS may have used "its influence over these groups to promote the false narrative that copay maximizers and accumulators . . . harm patients," which could have "impacted patients' experiences with the CarePath copay assistance program and caused confusion, concern and stress to patients."  Feb. 12, 2024 Ltr. from H. Miles to I. Eppler at 2.  SaveOnSP does not, and cannot, point to even a scintilla of evidence to support this entirely speculative chain of reasoning.[1]  And SaveOnSP has not asserted any claims against JJHCS.  Accordingly, JJHCS objects to these Requests based on relevance.

JJHCS also objects to these Requests as duplicative for several reasons.  JJHCS agreed to run several search terms intended to identify documents related to relevant public communications and alleged JJHCS support for publishers of relevant material in response to Request No. 20.  SaveOnSP claims, without evidence or citation, that JJHCS has not undertaken "a fulsome search" for material responsive to Request No. 20.  Feb. 12, 2024 Ltr. from H. Miles to I. Eppler at 2–3.  But it has been over a year since JJHCS began producing documents (including documents responsive to Request No. 20), and at no point before the instant letter did SaveOnSP ever suggest that JJHCS's production of documents responsive to Request No. 20 was inadequate.  Moreover, to the extent that these Requests call for documents and communications regarding any JJHCS communications with these advocacy groups about SaveOnSP, these Requests are duplicative, as JJHCS has already agreed to run several search terms intended to identify documents related to SaveOnSP in response to Request No. 8.

JJHCS reiterates that it has produced, and will continue to produce, responsive documents in accordance with agreed-upon search terms.  But JJHCS will not search for and review wholly irrelevant documents based on SaveOnSP's speculation.  And because JJHCS objects to producing documents responsive to these Requests based on relevance and duplication, in addition to burden, it will not provide SaveOnSP's requested hit counts.

---

[1] Moreover, SaveOnSP's argument is a disingenuous effort to shift focus to JJHCS and away from the evidence that SaveOnSP knowingly harmed patients.  *See, e.g.*, SOSP_0685665 at -665█████████
████████████████████████████████████████████); SOSP_0409971 at -976 (s█████
██████████████████████).

Hannah R. Miles, Esq.
February 22, 2024
Page 3

## III.    Request No. 79

Request No. 79 demands "All Best Price Quarterly Reports created or submitted by JJHCS, Janssen, or their affiliates for each Janssen Drug." JJHCS will not produce documents in response to this Request. As JJHCS explained in its Responses and Objections to this Request, issues related to the Best Price Rule are completely irrelevant to this action. JJHCS rejects SaveOnSP's contention that the reports are relevant because they will "reveal whether J&J accounts for its copay assistance program in government filings." *See* Feb. 12. 2024 Ltr. from H. Miles to I. Eppler at 3. Such speculation does not make these documents relevant. SaveOnSP is the defendant in this litigation. JJHCS asserts that SaveOnSP misappropriated hundreds of millions of dollars from CarePath by tortiously interfering with JJHCS's contracts with CarePath patients and deceiving consumers in violation of GBL § 349. It is SaveOnSP's conduct, not the language used in JJHCS's filings with the government, that is at issue.

## IV.    Request No. 81

This Request calls for draft contracts exchanged between JJHCS and TrialCard regarding maximizers, accumulators, and SaveOnSP. The very nature of the term "draft" means that draft contracts between JJHCS and TrialCard never governed the relationship between JJHCS and TrialCard, have no bearing on the work TrialCard did to mitigate the harm SaveOnSP caused to CarePath, and are irrelevant to SaveOnSP's understanding of the relationship between the companies.

As its sole cited basis for the relevance of these documents, SaveOnSP speculates that draft contracts could be relevant because "J&J could have asked TrialCard to start identifying and excluding patients on plans advised by SaveOn earlier than January 2022," before JJHCS and TrialCard implemented the CAP program, "and for more drugs than just Stelara and Tremfya." Feb. 12, 2024 Ltr. from H. Miles to I. Eppler at 4. But if any such work occurred, it would be captured in the ***final*** contracts between JJHCS and TrialCard responsive to SaveOnSP's Request No. 80, which JJHCS has already agreed to produce. Moreover, as JJHCS has repeatedly made clear, JJHCS will produce any non-privileged, responsive documents regarding "SaveOnSP" (or variations thereof) in response to Request No. 8. Accordingly, consistent with JJHCS's Sixth Set of R&Os, JJHCS declines to search for and produce any draft contracts in response to Request No. 81.

## V.    Request No. 82

Request No. 82 demands a variety of documents and communications regarding work related to copay assistance programs undertaken by Avalere Health, a health care industry consulting firm, on behalf of JJHCS. To the extent that the Request calls for documents and communications with Avalere regarding SaveOnSP, JJHCS has already agreed to run several search terms intended to identify documents related to SaveOnSP in response to Request No. 8. Any documents regarding SaveOnSP that involve Avalere would be subsumed by those previously agreed-upon search terms. Otherwise, as JJHCS explained in its Responses and Objections, this

Hannah R. Miles, Esq.
February 22, 2024
Page 4


Request is irrelevant because it demands a variety of material unrelated to SaveOnSP.  *See* JJHCS's JJHCS's Sixth Set of R&Os, at 13.  SaveOnSP offers two arguments as to the relevance of Avalere-related documents unconnected to SaveOnSP, but neither are convincing.

First, SaveOnSP claims that it is entitled to this broad swath of Avalere-related documents because they are relevant to its professed investigation into whether CarePath, and not SaveOnSP, is responsible for the patient stress and confusion that JJHCS alleges in its complaint.  Yet SaveOnSP provides no basis to speculate that evidence of this patient harm would be found in Avalere-related documents unconnected to SaveOnSP

Second, SaveOnSP asserts that Avalere-related documents unrelated to SaveOnSP are relevant because Avalere conducted research related to the proposed 2023 modifications to the Best Price Rule.  SaveOnSP speculates that this research could be relevant because, under the proposed rule, "J&J would be required to count copay assistance funds towards AMP and Best Price, creating an incentive for J&J to not identify patients on SaveOn-advised plans."  Feb. 12, 2024 Ltr. from H. Miles to I. Eppler, at 5.  The chain of logic supporting SaveOnSP's assertion of relevance fails on several levels.  Most importantly, the proposed Best Price Rule never went into effect, undermining SaveOnSP's suggestion that the rule influenced JJHCS's behavior.  It defies logic to suggest that JJHCS would have allowed SaveOnSP to continue draining millions of dollars of copay assistance funds because the government did not adopt a regulation.  Accordingly, JJHCS declines to produce documents in response to Request No. 82.

We are available to meet and confer and reserve all rights.

Very truly yours,

*/s/ Ian Eppler*
Ian Eppler

# Exhibit 4



www.pbwt.com

February 28, 2024

Ian Eppler
(212) 336-2205

**<u>VIA EMAIL</u>**

Elizabeth H. Snow, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:   **SaveOnSP's Fifth Set of Requests for Production**
      ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC***,
      <u>**No. 2:22-cv-02632 (JKS)(CLW)**</u>

Dear Elizabeth:

We write in response to SaveOnSP's February 15, 2024 letter regarding JJHCS's responses and objections to SaveOnSP's Fifth Set of Requests for Production ("JJHCS's Fifth Set of R&Os") and the February 8, 2024 meet and confer addressing JJHCS's Fifth Set of R&Os.

**I.   Request No. 63**

Request No. 63, demanding "[a]ll Documents and Communications regarding JJHCS's efforts to directly reimburse patients for out-of-pocket costs after the patient acquires a Janssen Drug," remains irrelevant to this case. SaveOnSP's latest letter speculates that three categories of relevant documents not captured by previously agreed-upon search terms are unique to this request: (1) "documents regarding [JJHCS's] efforts to directly reimburse patients" that involve SaveOnSP but do "not necessarily mention SaveOn on the face of the document," (2) documents that involve efforts to reimburse patients outside of CarePath or the CAP program, and (3) documents involving the CAP program from before the agreed-upon date range. *See* Feb. 15, 2024 Ltr. from E. Snow to J. Long at 1–2. But despite having received thousands of pages of JJHCS documents regarding JJHCS's efforts to mitigate SaveOnSP's pilfering of JJHCS funds, SaveOnSP is not able to point to a single page suggesting that there are any relevant, unproduced documents in the aforementioned categories.

To be clear, this is a case about JJHCS's CarePath copay assistance program and SaveOnSP's efforts to pilfer those funds. To the extent that Request No. 63 calls for documents regarding JJHCS's mitigation efforts, JJHCS already has agreed to produce "documents regarding JJHCS's efforts to mitigate harm caused to CarePath by SaveOnSP by modifying CarePath to reimburse patients for out-of-pocket costs." Feb. 8, 2024 Ltr. from I. Eppler to E. Snow at 2. JJHCS has separately agreed to produce all non-privileged, responsive documents regarding

Elizabeth H. Snow, Esq.
February 28, 2024
Page 2

SaveOnSP in response to Request No. 8.  But documents unrelated to **both** SaveOnSP and the CarePath copay assistance program are irrelevant in this litigation.

Moreover, even if these documents were relevant, JJHCS would object on the basis of burden.  SaveOnSP's proposed search term for this Request has identified **over 670,000 documents** (family inclusive).  The massive expansion of discovery associated with this Request alone is wholly disproportionate to the needs of the case, particularly given the tendentious basis for the Request's relevance.

## II.    Request No. 64

Request No. 64 demands "[a]ll Documents and Communications regarding JJHCS's attempts to avoid PBM 'redirection' of copay assistance funds . . . including without limitation the creation of a Janssen credit card or a direct to patient rebate program."  JJHCS previously explained that this Request is duplicative to the extent it calls for documents on this subject related to SaveOnSP, and irrelevant to the extent it calls for documents unrelated to SaveOnSP.  Feb. 8, 2024 Ltr. from I. Eppler to E. Snow at 2.  JJHCS stands behind that objection.

In response to JJHCS's relevance objection, SaveOnSP claims that "[JJHCS] policies that apply to all PBMs, accumulators, and maximizers, would apply to SaveOn, even if they do not single out SaveOn by name," and that relevant documents in that category would be omitted by the existing search terms.  Feb. 15, 2024 Ltr. from E. Snow to J. Long at 2 (emphasis omitted).  This is a flavor of the same argument SaveOnSP raised in its recent motions to compel on the CAP search terms.  Consistent with Judge Waldor and Judge Wolfson's guidance, JJHCS has agreed to run variations of "SaveOnSP," its founders, and search terms meant to capture documents referring to "ESI's accumulator program or ESI's maximizer program"[1] across 26 custodians.  But JJHCS declines to search for documents on this topic that are not "identifiable with SaveOn."[2]

SaveOnSP's own letter supports that limitation by citing several documents that **were** elicited by the existing agreed-upon search terms even though they do not mention SaveOnSP by name.  Feb. 15, 2024 Ltr. from E. Snow to J. Long at 2.  This demonstrates that the existing search terms are sufficient to identify relevant documents concerning JJHCS's mitigation efforts.  Because JJHCS continues to object on the basis of relevance, JJHCS declines to provide the requested hit counts.[3]

---

[1] *See* Jan. 24, 2024 Tr. at 108:4–6.

[2] Oct. 30, 2023 Tr. at 104:15–18.

[3] JJHCS declines to provide hit counts for JJHCS's proposed search terms where JJHCS primarily objects on the basis of relevance.

Elizabeth H. Snow, Esq.
February 28, 2024
Page 3

## III.    Request No. 66

Request No. 66 calls for "[a]ll Documents and Communications regarding attempts by JJHCS to prevent health plans, PBMs (including without limitation Express Scripts), pharmacies (including without limitation Accredo), or SaveOnSP, from being able to detect JJHCS's provision of funds to patients." JJHCS stands by its position that this Request is duplicative of SaveOnSP's prior requests, including Request No. 8, which concerns documents related to SaveOnSP, as well as requests related to the CAP program, which were addressed by the Court's November 7 Order (and are subject to two pending motions by SaveOnSP). *See* Feb. 8, 2024 Ltr. from I. Eppler to E. Snow at 3. As discussed at our February 8 meet and confer, previously agreed-upon search terms intended to elicit documents related to SaveOnSP, the CAP program, Express Scripts, and Accredo will also produce documents responsive to this Request. *See id.* SaveOnSP continues to speculate that there may be a "gap" in JJHCS's production for "discussions about PBMs or J&J's policies on direct-to-patient payments without explicit reference to ESI (the PBM which works with SaveOn)." *See* Feb. 15, 2024 Ltr. from E. Snow to J. Long at 3. But it provides no basis in the existing JJHCS and third-party productions to suggest that such a gap exists, nor does it provide any reason to believe that such a gap would be relevant to JJHCS's claims or SaveOnSP's defenses if it existed. Consistent with our discussion at our prior meet and confer, JJHCS declines to add new search terms responsive to this Request.

## IV.    Request No. 67

In its February 15 letter, SaveOnSP reiterates its request for data on "payments or reimbursements made . . . to patients taking Janssen drugs other than copay assistance payments provided through CarePath." Feb. 15, 2024 Ltr. from E. Snow to J. Long at 3. As JJHCS explained at the February 8 meet and confer, data on payments or reimbursements to patients taking the Janssen drugs at issue in this litigation was produced in response to SaveOnSP's Request Nos. 26 and 28. JJHCS will refresh that data, consistent with the Court's November 7 Order and the parties' agreement, in the near term. To the extent this Request calls for documents or data unrelated to the CarePath copay assistance program, any such payments are irrelevant to the claims and defenses in this action.

## V.    Request Nos. 68 and 69

SaveOnSP demands, in Request No. 68, that JJHCS search for and produce additional documents regarding work that Archbow did on behalf of JJHCS. To the extent Request No. 68 calls for a broader set of communications between JJHCS and Archbow that address issues unrelated to CAP or SaveOnSP, including communications related to the Best Price Rule, JJHCS objects on relevance grounds. In the face of this objection, SaveOnSP claims additional search terms are necessary because "[r]elevant documents regarding Archbow may not state SaveOn on their face." Feb. 15, 2024 Ltr from E. Snow to J. Long at 4. But the documents SaveOnSP cites undermine this assertion. For example, ARCHBOW_000082–85 ███████████████████, as is ARCHBOW_000099–102 ("I ███████████

Elizabeth H. Snow, Esq.
February 28, 2024
Page 4

████████████████████████ To the extent Archbow conducted relevant work for JJHCS, JJHCS will continue to produce such documents using existing search terms.

As to Request No. 69, █████████████████████████████
████████████████████████████████████████████████████
██████████ Consistent with Request No. 8, JJHCS will not withhold non-privileged, responsive documents regarding SaveOnSP. *See, e.g.*, Feb. 8, 2024 Ltr. from I. Eppler to E. Snow at 2–3.

## VI.    Request No. 70

This Request demands Best Price Rule-related documents.  JJHCS has repeatedly explained its position that Best Price-related documents are irrelevant for a variety of reasons, and it reiterates those objections here.  *See, e.g.*, Feb. 22, 2024 Ltr. from I. Eppler to H. Miles at 3–4 (explaining that Best Price-related documents are irrelevant because "[i]t is SaveOnSP's conduct, not the language used in JJHCS's filings with the government, that is at issue" and "[i]t defies logic to suggest that JJHCS would have allowed SaveOnSP to continue draining millions of dollars of copay assistance funds because the government did not adopt a regulation"); Feb. 8, 2024 Ltr. from I. Eppler to E. Snow at 4; JJHCS's Responses and Objections to SaveOnSP's Sixth Set of Requests for Production at 10.  Because these documents are irrelevant, JJHCS will not provide hit counts for SaveOnSP's request.

## VII.    Request Nos. 71 and 72

In your February 15 letter, you ask that JJHCS confirm it will not "withhold documents responsive to Request No[s]. 71 and 72" that are "relevant" to "the financial viability of CarePath and SaveOn's impact on return on investment in CarePath."  Feb. 15, 2024 Ltr. from E. Snow to J. Long at 5–6.  To the extent that SaveOnSP seeks confirmation that JJHCS will comply with Judge Wolfson's February 6 Order, JJHCS confirms that it will, of course, do so.  But JJHCS does not agree that the February 6 Order encompasses "SaveOn's impact on return on investment in CarePath"—a topic that has been the subject of several meet and confers between the parties and is also now implicated by SaveOnSP's motion to compel.  JJHCS will not produce documents that Judge Wolfson has determined are irrelevant.

## VIII.    Request No. 73

JJHCS continues to object to this demand for "Documents and Communications by or for Janssen market research regarding Accumulators or Maximizers" on the basis of relevance.[4]

---

[4] It is ironic that SaveOnSP now wishes to obtain irrelevant documents regarding other accumulators and maximizers when its own documents indicate that SaveOnSP spent years falsely telling ████████████████████████████████████████████.  *See, e.g.*, SOSP_0013776 ████████████████████████████████ "); SOSP_1035015 at 2 (████████████

Elizabeth H. Snow, Esq.
February 28, 2024
Page 5

In its Complaint, JJHCS has alleged that SaveOnSP has harmed members of the public in violation of GBL § 349 by, *inter alia*, "causing [patients] undue stress and confusion." Compl. ¶ 114. JJHCS will be able to prove this allegation at trial by demonstrating how ***SaveOnSP*** patients experienced undue stress and confusion at the hands of ***SaveOnSP***, without reference to how patients may have hypothetically reacted to other accumulators or maximizers. It is irrelevant whether some patient at some time, may have "like[d] [a] compan[y] which provide[s] services similar to SaveOn." Feb. 15, 2024 Ltr. from E. Snow to J. Long at 6. Accordingly, JJHCS declines to produce documents responsive to this request.

## IX. Request Nos. 74 and 75

JJHCS stands by its relevance objection to Request No. 74, which demands all documents and communications "regarding the funds that JJHCS provides to patients taking Janssen Drugs . . . compared to the revenue that Janssen receives from the sales of Janssen Drugs." This is yet another reformulation of SaveOnSP's failed quest for documents regarding JJHCS's return on investment from CarePath. Judge Waldor and Judge Wolfson have consistently rejected SaveOnSP's arguments demanding discovery into these issues. (*See* Dkt. No. 192 at 22; Dkt. No. 173; Dkt. No. 89 at 34:10–19, 35:17–21.) Accordingly, JJHCS will not produce any documents in response to Request No. 74.

With respect to Request No. 75, SaveOnSP "requests confirmation that J&J is not withholding documents regarding the origin of this lawsuit." Feb. 15, 2024 Ltr. from E. Snow to J. Long at 7. As we explained at the February 8 meet and confer, JJHCS is not withholding non-privileged documents regarding SaveOnSP. *See* Feb. 8, 2024 Ltr. from I. Eppler to E. Snow at 6.

We are available to meet and confer and reserve all rights.

Very truly yours,

*/s/ Ian Eppler*
Ian Eppler

---

████████████████████████████████████████████████████████
).

# Exhibit 5

**From:** Hannah Miles
**Sent:** Thursday, April 18, 2024 4:33 PM
**To:** 'Long, Julia (x2878)' <jlong@pbwt.com>; Eppler, Ian (x2205) <ieppler@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; Elizabeth Snow <esnow@selendygay.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

Julia,

The parties have already met and conferred regarding SaveOn's request for documents relating to the best price rule, including on February 8 and March 4, 2024.

During the parties' negotiations, we explained our basis for requesting documents related to the best price rule, including why they are relevant to this litigation. *See* Jan. 26, 2024 Letter from E. Snow to I. Eppler, at 5-6; Feb. 12, 2024 Letter from H. Miles to I. Eppler, at 3; Feb. 15, 2023 Letter from E. Snow to I. Eppler, at 4-5; Mar. 21, 2024 Letter from E. Snow to J. Long.

In those negotiations, J&J stated, multiple times, that it views documents related to the best price rule as irrelevant. *See* April 9, 2024 Letter from I. Eppler to E. Snow, at 2 ("The Best Price Rule is Irrelevant to the Claims and Defenses at Issue."); February 28, 2024 Letter from I. Eppler to E. Snow, at 4 ("JJHCS has repeatedly explained its position that Best Price-related documents are irrelevant for a variety of reasons, and it reiterates those objections here."); February 22, 2024 Letter from I. Eppler to H. Miles ("[I]ssues related to the Best Price Rule are completely irrelevant to this action."); February 8, 2024 Letter from I. Eppler to E. Snow, at 4 ("[I]ssues related to 'Best Price' are completely irrelevant to this action."). You do not explain

why our description of J&J's position as contesting the relevance of these documents is purportedly incorrect.

In your recent emails, you do not agree to withdraw your relevance objection, you do not agree to produce the requested documents, and you do not explain why the parties are not at impasse in light of J&J's multiple, definitive statements that it will not produce the requested material. You thus provide no valid reason for the parties to meet and confer on the same topic yet again. This leaves the unfortunate impression that J&J seeks simply to delay submitting this issue for resolution.

Because the discovery record firmly establishes that the parties are at impasse on this subject, we intend to seek relief from the Special Master.

Best,

Hannah


**Hannah Miles**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: she, her, hers
--------------------------------------------
+1 212.390.9055 [O]
+1 347.731.1404 [M]

---

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Monday, April 15, 2024 12:34 PM
**To:** Hannah Miles <hmiles@selendygay.com>; Eppler, Ian (x2205) <ieppler@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; Elizabeth Snow <esnow@selendygay.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)


Hannah,

You are not correctly describing our position.  Rather than continue to trade missives, the next step is to have a meet and confer phone discussion.  Whenever you have time to discuss our Falsioni email (which asks whether you are prepared to run a single term with a known burden to SaveOnSP), we can make time to discuss the more complicated set of issues presented by your Best Price Rule

request.

Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jlong@pbwt.com**

---

**From:** Hannah Miles <hmiles@selendygay.com>
**Sent:** Friday, April 12, 2024 5:46 PM
**To:** Long, Julia (x2878) <jlong@pbwt.com>; Eppler, Ian (x2205) <ieppler@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; Elizabeth Snow <esnow@selendygay.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

 **External: Think before you click.** 

Julia,

Please explain why J&J thinks that the parties are not at impasse regarding SaveOn's request for documents regarding the Best Price rule given J&J's stated position that such documents are categorically irrelevant. If J&J is withdrawing its relevance objection or will otherwise agree to produce the requested documents, then we would be glad to meet and confer on Monday. If not, please explain what you believe that the parties would have to discuss.

As we told you, we will provide our position on J&J's updated request regarding Darcie Falsioni's documents early next week and will be glad to meet and confer on that topic after we provide our response.

Best,
Hannah

**Hannah Miles**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: she, her, hers
------------------------------------------------------
+1 212.390.9055 [O]
+1 347.731.1404  [M]

---

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Friday, April 12, 2024 4:23 PM
**To:** Hannah Miles <hmiles@selendygay.com>; Eppler, Ian (x2205) <ieppler@pbwt.com>; Elizabeth Snow <esnow@selendygay.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; Matthew Nussbaum <mnussbaum@selendygay.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

Hannah,

We disagree that the parties are at impasse on Best Price.  We propose that we meet and confer on Monday on both Darcie Falsioni's search terms and Best Price issues.

Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jlong@pbwt.com**

---

**From:** Hannah Miles <hmiles@selendygay.com>
**Sent:** Friday, April 12, 2024 4:09 PM
**To:** Eppler, Ian (x2205) <ieppler@pbwt.com>; Elizabeth Snow <esnow@selendygay.com>; Long, Julia (x2878) <jlong@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; Arrow, Sara (x2031)

<[sarrow@pbwt.com](mailto:sarrow@pbwt.com)>; ~[jgreenbaum@sillscummis.com](mailto:jgreenbaum@sillscummis.com) <[jgreenbaum@sillscummis.com](mailto:jgreenbaum@sillscummis.com)>;
~[klieb@sillscummis.com](mailto:klieb@sillscummis.com) <[klieb@sillscummis.com](mailto:klieb@sillscummis.com)>; _cg J&J-SaveOn <[JJSaveOn@pbwt.com](mailto:JJSaveOn@pbwt.com)>
**Cc:** Philippe Selendy <[pselendy@selendygay.com](mailto:pselendy@selendygay.com)>; Andrew Dunlap <[adunlap@selendygay.com](mailto:adunlap@selendygay.com)>;
Meredith Nelson <[mnelson@selendygay.com](mailto:mnelson@selendygay.com)>; Wohlforth, E. Evans <[EWohlforth@rc.com](mailto:EWohlforth@rc.com)>;
Matthew Nussbaum <[mnussbaum@selendygay.com](mailto:mnussbaum@selendygay.com)>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

🟨 **External: Think before you click.** 🟨

Counsel,

We have reviewed your April 9, 2024 letter. We understand J&J's position to be that documents
regarding Best Price are categorically irrelevant and that the parties are thus at impasse on
this issue.

Best,
Hannah

**Hannah Miles**
Associate  [[Email](mailto:)]
Selendy Gay PLLC  [[Web](#)]
Pronouns: she, her, hers
-------------------------------------------------
+1 212.390.9055 [O]
+1 347.731.1404  [M]

---

**From:** Eppler, Ian (x2205) <[ieppler@pbwt.com](mailto:ieppler@pbwt.com)>
**Sent:** Tuesday, April 9, 2024 7:03 PM
**To:** Elizabeth Snow <[esnow@selendygay.com](mailto:esnow@selendygay.com)>; Long, Julia (x2878) <[jlong@pbwt.com](mailto:jlong@pbwt.com)>; LoBiondo,
George (x2008) <[globiondo@pbwt.com](mailto:globiondo@pbwt.com)>; Mangi, Adeel A. (x2563) <[aamangi@pbwt.com](mailto:aamangi@pbwt.com)>; Sandick,
Harry (x2723) <[hsandick@pbwt.com](mailto:hsandick@pbwt.com)>; Arrow, Sara (x2031) <[sarrow@pbwt.com](mailto:sarrow@pbwt.com)>;
~[jgreenbaum@sillscummis.com](mailto:jgreenbaum@sillscummis.com) <[jgreenbaum@sillscummis.com](mailto:jgreenbaum@sillscummis.com)>; ~[klieb@sillscummis.com](mailto:klieb@sillscummis.com)
<[klieb@sillscummis.com](mailto:klieb@sillscummis.com)>; _cg J&J-SaveOn <[JJSaveOn@pbwt.com](mailto:JJSaveOn@pbwt.com)>
**Cc:** Philippe Selendy <[pselendy@selendygay.com](mailto:pselendy@selendygay.com)>; Andrew Dunlap <[adunlap@selendygay.com](mailto:adunlap@selendygay.com)>;
Meredith Nelson <[mnelson@selendygay.com](mailto:mnelson@selendygay.com)>; Wohlforth, E. Evans <[EWohlforth@rc.com](mailto:EWohlforth@rc.com)>; Hannah
Miles <[hmiles@selendygay.com](mailto:hmiles@selendygay.com)>; Matthew Nussbaum <[mnussbaum@selendygay.com](mailto:mnussbaum@selendygay.com)>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

Counsel,

Please see the attached letter regarding SaveOnSP's Request Nos. 70 and 79.

Best,

Ian

---

**From:** Elizabeth Snow <esnow@selendygay.com>
**Sent:** Thursday, March 21, 2024 6:51 PM
**To:** Long, Julia (x2878) <jlong@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>;
Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>;
Arrow, Sara (x2031) <sarrow@pbwt.com>; ~jgreenbaum@sillscummis.com
<jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>; _cg J&J-
SaveOn <JJSaveOn@pbwt.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>;
Meredith Nelson <mnelson@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; Hannah
Miles <hmiles@selendygay.com>; Matthew Nussbaum <mnussbaum@selendygay.com>
**Subject:** JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)


⚠️ *Caution: External Email!*


Counsel,

Please find attached a letter in the above-captioned matter.

Thanks,

Elizabeth


**Elizabeth Snow**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: she, her, hers
---------------------------------------------
+1 212.390.9330  [O]
+1 540.409.7257  [M]


---

Privileged/Confidential Information may be contained in this message. If you are not
the addressee indicated in this message (or responsible for delivery of the message to
such person), you may not copy or deliver this message to anyone. In such case, you
should destroy this message and kindly notify the sender by reply email. Please advise
immediately if you or your employer do not consent to receiving email messages of this

kind.

---

---

Privileged/Confidential Information may be contained in this message. If you are not
the addressee indicated in this message (or responsible for delivery of the message to
such person), you may not copy or deliver this message to anyone. In such case, you
should destroy this message and kindly notify the sender by reply email. Please advise
immediately if you or your employer do not consent to receiving email messages of this
kind.

---

---

Privileged/Confidential Information may be contained in this message. If you are not
the addressee indicated in this message (or responsible for delivery of the message to
such person), you may not copy or deliver this message to anyone. In such case, you
should destroy this message and kindly notify the sender by reply email. Please advise
immediately if you or your employer do not consent to receiving email messages of this
kind.

---

# EXHIBITS 6-12
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 13

E. Evans Wohlforth, Jr.
ROBINSON & COLE
666 3rd Avenue #20
New York, NY 10174
212-451-2954
ewolforth@rc.com

David Elsberg
Andrew R. Dunlap
Meredith Nelson
Elizabeth Snow
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (ES) (CLW) <br><br> **DEFENDANT'S SIXTH REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

To:    Jeffrey J. Greenbaum, Esq.
       SILLS CUMMIS & GROSS, P.C.
       One Riverfront Plaza
       Newark, NJ 07102
       973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, NY

*Attorneys for Plaintiff Johnson & Johnson
Health Care Systems Inc.*

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26 and 34,

Defendant Save On SP, LLC ("SaveOnSP"), requests Plaintiff Johnson & Johnson Health Care

Systems Inc.'s ("JJHCS"), to produce for inspection and copying the documents listed in these

Requests, to the office of the undersigned within 30 days of being served or at a time and place

mutually agreed by the parties and ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that this demand for production of documents

shall be deemed continuing in nature so as to require supplemental responses if Plaintiff or Plain-

tiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's

responses are served.

Dated:  December 28, 2023          By: */s/ E. Evans Wohlforth, Jr.*
                                   E. Evans Wohlforth, Jr.
                                   ROBINSON & COLE
                                   666 3rd Avenue #20
                                   New York, NY 10174
                                   212-451-2954
                                   ewolforth@rc.com

                                   David Elsberg
                                   Andrew R. Dunlap
                                   Meredith Nelson
                                   Elizabeth Snow
                                   SELENDY GAY ELSBERG, PLLC
                                   1290 Avenue of the Americas
                                   New York, NY 10104
                                   212-390-9000
                                   deslberg@selendygay.com
                                   adunlap@selendygay.com
                                   mnelson@selendygay.com
                                   esnow@selendygay.com

                                   *Attorneys for Defendant Save On SP, LLC*

## DEFINITIONS

The following definitions apply to these Interrogatories:

1.    The singular form of a word includes the plural, and vice versa.

2.    Any tense of a verb includes all tenses.

3.    Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.    Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.    "2023 Best Price Rule" means 85 Fed. Reg 87,000 which required that, starting on January 1, 2023, manufacturers must ensure that the full amount of copay assistance programs is passed on to the patient and that no other entity receives any price concession, in order to exclude any such benefits from the calculation of the drug's "Best Price."

6.    "Accredo" means Accredo Health Group, Inc. as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Accredo.

7.    "Accumulator" means a copay accumulator service, including (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which

members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

8.      "All," "any," and "each" mean any and all.

9.      "And" and "or" are construed both conjunctively and disjunctively.

10.     "Archbow" means Archbow Consulting, LLC and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Archbow.

11.     "Avalere" means Avalere Health LLC and any predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions and departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of or under the control of Avalere.

12.     "Benefits Investigation" means any process by which JJHCS, or any entity acting on its behalf, receives information regarding the pharmacy benefits provided by a health plan, including information regarding prior authorization, costs, Essential Health Benefits status, patient eligibility, and related information.

13.     "Best Price" is the lowest price available from the manufacturer during the rebate period to any wholesaler, retailer, provider, health maintenance organization, nonprofit entity, or governmental entity in the United States in any pricing structure.

14.     "Best Price Quarterly Report" is a quarterly report submitted by a pharmaceutical manufacturer to the Centers for Medicare & Medicaid Services in compliance with 42 C.F.R. § 447.510(a).

5

15.    "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

16.    "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

17.    "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

18.    "Document" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

19.    "ESI" means "electronically stored information" as defined in the Federal Rules of Civil Procedure.

20.    "Express Scripts" means Express Scripts, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Express Scripts.

21.    "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

6

22.    "Including" means including but not limited to.

23.    "Janssen" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

24.    "Janssen Drug" means any Specialty Drug manufactured or sold by Janssen from any time for which patients may receive copay assistance, including BALVERSA, DARZELEX, DARZELEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, PREZCOBIX, REMICADE, RYBREVANT, SIMPONI, SIMPONI ARIA, STELARA, SYMTUZA, TRACLEER, TREMFYA, UPTRAVI, VENTAVIS, ZYTIGA, as well as any other specialty drugs that JJHCS asserts are at issue in this Action.

25.    "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Johnson & Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and Janssen Research & Development LLC.

7

26. "<u>JJHCS Hub Entity</u>" means any entity retained or utilized by JJHCS to administer, in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of such an entity.

27. "<u>Lash Group</u>" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

28. "<u>Maximizer</u>" means copay maximizer service, including (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maximizer."

29. "<u>Person</u>" means a natural person or legal entity including any business or governmental entity or association.

30. "<u>Regarding</u>" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to,

8

reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

31.    "Request" means any of these Requests for Production.

32.    "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, represent-atives, directors, officers, employees, committees, attorneys, accountants, and all persons or enti-ties acting or purporting to act on behalf or under the control of Save On SP, LLC.

33.    "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

34.    "TrialCard" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representa-tives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

35.    "You" and "Your" means JJHCS.

## INSTRUCTIONS

1.    These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 34(a)(1).

2.    These Requests seek production of nonprivileged information. Fed. R. Civ. P. 26(b)(1).

3.    These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

9

4.      For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 34(b)(2)(C).

5.      If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

6.      If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest. Fed. R. Civ. P. 34(b)(2)(C).

7.      If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 26(b)(5)(A)(ii), including by indicating whether any document exists regarding the information, requested and stating, to the extent the privilege is being asserted in connection with a claim or defense governed by the state law, the state privilege rule being invoked, Local Rule 34.1.

8.      If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction the reason for its destruction, the name of the person who requested or authorized its decision, and the name of the person who destroyed it.

9.    Produce documents as they are kept in the usual course of business. Fed. R. Civ. P. 34(b)(E)(i). For each document, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

10.    Produce electronically stored information in the form and manner required by any agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

11.    Produce each document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

12.    Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notation, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

13.    These Requests are deemed continuing. If after responding to any Request you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).

## TIME PERIOD

Unless otherwise specified, these Requests relate to the time period from and including April 1, 2016, through the present.

## REQUESTS

77.    All Documents and Communications regarding efforts by JJHCS to work with, inform, sponsor, or influence patient advocacy groups regarding those organizations' public statements, patient outreach, or lobbying in any form about Copay Assistance programs, Copay Maximizers, Copay Accumulators, and/or SaveOnSP (including but not limited to AIDS Foundation of Chicago, AIDS Institute, Aimed Alliance, American Cancer Society Cancer Action Network, American Chronic Pain Association, American College of Rheumatology, American Diabetes

11

Association, American Kidney Fund, American Lung Association, American Society of Clinical
Oncology, Arthritis Foundation, Coalition of State Rheumatology Organizations, Crohn's & Colitis Foundation, Cystic Fibrosis Research Institute, Connecticut Oncology Association, COPD
Foundation, Epilepsy Foundation, Gay Men's Health Crisis, HealthyWomen, HIV + Hepatitis Policy Institute, Immune Deficiency Foundation, International Myeloma Foundation, Leukemia &
Lymphoma Society, LUNGevity Foundation, Lupus Research Alliance, Lupus Foundation of
America, Lupus Alliance Research, Mary M. Gooley Treatment Center, Men's Health Network,
Multiple Sclerosis Association of America, Nashville CARES, National Alopecia Areata Foundation, National Multiple Sclerosis Association of America, National Multiple Sclerosis Society,
National Oncology State Network, National Organization of Rare Disorders, National Psoriasis
Foundation, Prevent Blindness, Pulmonary Hypertension Association, Rheumatology Research
Foundation, Scleroderma Foundation, Stand Up To Cancer, Susan G. Komen, The ALS Association, Treatment Action Group, Triage Cancer, U.S. Pain Foundation, Vasculitis Foundation, and
ZERO Prostate Cancer).

78.     All Documents and Communications regarding efforts by JJHCS to work with, inform, sponsor, or influence pharmaceutical industry associations or groups regarding those organizations' public statements, patient outreach, or lobbying in any form about Copay Assistance programs, Copay Maximizers, Copay Accumulators, and/or SaveOnSP (including but not limited to
Biotechnology Innovation Organization, Pharmaceutical Care Management Association, and
Pharmaceutical Research and Manufacturers of America).

79.     All Best Price Quarterly Reports created or submitted by JJHCS, Janssen, or their
affiliates for each Janssen Drug.

80.     A copy of each final contract executed between JJHCS and TrialCard regarding CarePath, including without limitation any final work order.

81.     All draft contracts exchanged between JJHCS and TrialCard regarding Copay Maximizers, Copay Accumulators, and/or SaveOnSP, including without limitation any draft work orders.

82.     All Documents and Communications between JJHCS and Avalere regarding CarePath or Copay Assistance Programs, including regarding (1) Copay Maximizers, Copay Accumulators, and/or SaveOnSP, (2) patient satisfaction with Copay Assistance Programs, including but not limited to CarePath, (3) the impact of Copay Assistance Programs on patient adherence to medication, and (4) reevaluating or changing Copay Assistance Programs based on expected changes to the Best Price Rule.

# Exhibit 14

David Elsberg
Andrew R. Dunlap
Meredith Nelson
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

E. Evans Wohlforth, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JMV) (CLW) <br><br> **DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

To:    Jeffrey J. Greenbaum, Esq.
       SILLS CUMMIS & GROSS, P.C.
       One Riverfront Plaza
       Newark, New Jersey 07102
       973-643-7000

1

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New

*Attorneys for Plaintiff Johnson & Johnson*
*Health Care Systems Inc.*

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26 and 34,

Defendant Save On SP, LLC ("SaveOnSP") requests Plaintiff Johnson & Johnson Health Care

Systems Inc. ("JJHCS"), to produce for inspection and copying the documents listed in these Re-

quests, to the office of the undersigned within 30 days of being served or at a time and place mu-

tually agreed by the parties or ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that this demand for production of documents

shall be deemed continuing in nature so as to require supplemental responses if Plaintiff or Plain-

tiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's

responses are served.

Dated:  November 11, 2022              By:  /s/ Andrew R. Dunlap
                                            David Elsberg
                                            Andrew R. Dunlap
                                            Meredith Nelson
                                            SELENDY GAY ELSBERG, PLLC
                                            1290 Avenue of the Americas
                                            New York, NY 10104
                                            212-390-9000
                                            deslberg@selendygay.com
                                            adunlap@selendygay.com
                                            mnelson@selendygay.com

                                            E. Evans Wohlforth, Jr.
                                            GIBBONS P.C.
                                            One Gateway Center
                                            Newark, NJ 07102-5310

2

973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

## DEFINITIONS

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses.

3.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.      "Action" means this litigation styled as "*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (JMV) (CLW).

6.      "Affordable Care Act" means the Patient Protection and Affordable Care Act, Pub. L. 148, 124 Stat. 119.

7.      "All," "any," and "each" mean any and all.

8.      "And" and "or" are construed both conjunctively and disjunctively.

9.      "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

10.    "CarePath Care Coordinator" means any person or entity encompassed by that term as used on CarePath's "Contact Us" webpage,[1] as well as any person responsible for communicating with patients who contact CarePath via an advertised help number (*e.g.*, 877-CarePath).

11.    "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

12.    "Complaint" means JJHCS's May 4, 2022 Complaint [ECF No. 1] or any subsequently amended Complaint in this Action.

13.    "Copay Accumulator Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

14.    "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

15.    "Copay Maximizer Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay

---

[1] *See* Contact Us, https://www.janssencarepath.com/patient/contact-us (last visited October 25, 2022).

assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maxi-

mizer."

16.    "<u>Document</u>" means "document" and "electronically stored information" as defined

in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within

the meaning of this term.

17.    "<u>ESI</u>" means "electronically stored information" as defined in the Federal Rules of

Civil Procedure.

18.    "<u>Essential Health Benefit</u>" means, in the context of prescription drug benefits at

issue in this case, (a) a prescription drug benefit that satisfies the requirement for a plan to provide

essential prescription drug benefits under the Affordable Care Act or that is treated as such by a

plan;[2] and (b) any definition JJHCS ascribes to the term "essential health benefit" as used in the

Complaint.

19.    "<u>Identify</u>" means (a) with respect to persons, to give, to the extent known, the per-

son's full name, present or last known address, and when referring to a natural person, additionally,

the present or last known place of employment; (b) with respect to documents, either (i) to give,

to the extent known, the (A) type of document; (B) general subject matter; (C) date of the docu-

ment; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together

with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

20.    "<u>Including</u>" means including but not limited to.

21.    "<u>Janssen</u>" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen

Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and

successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents,

---

[2] 45 C.F.R. §§ 156.122, 156.115.

representatives, directors, officers, employees, committees, attorneys, accountants, and all persons

or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc.,

Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

22.     "Janssen Drug" means any Specialty Drug manufactured or sold by Janssen from

any time for which patients may receive copay assistance, including BALVERSA, DARZALEX,

DARZALEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, REMICADE, RYBREVANT,

SIMPONI, STELARA, TRACLEER, TREMFYA, UPTRAVI, and ZYTIGA, as well as any other

specialty drugs that JJHCS asserts are at issue in this Action.

23.     "JJHCS's Employee Health Plans" means any health plan offered by JJHCS or

Janssen to its employees.

24.     "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all pre-

decessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or depart-

ments, agents, representatives, directors, officers, employees, committees, attorneys, accountants,

and all persons or entities acting or purporting to act on behalf or under the control of Johnson &

Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil

Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals,

Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development,

LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc.,

Janssen BioPharma LLC, and Janssen Research & Development LLC.

25.     "JJHCS Access Group" means the team operating within and for JJHCS under this

or a substantially similar name (i.e., Access Group, Access Team, or Access Division).

26.    "JJHCS Health Economics Group" means the team operating within and for JJHCS under this or a substantially similar name (*i.e.*, Health Economics Group, Health Economics Team, or Health Economics Division).

27.    "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer, in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of such an entity.

28.    "JJHCS Outcome Group" means the team operating within and for JJHCS under this or a substantially similar name (*i.e.*, Outcome Group, Outcome Team, or Outcome Division).

29.    "Lash Group" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

30.    "Non-Essential Health Benefits" means, in the context of prescription drug benefits at issue in this case, (a) any prescription drug benefit covered by a plan in excess of those necessary for a plan to satisfy the requirements for providing essential prescription drug health benefits under the Affordable Care Act[3] and designated by the plan as a non-essential health benefit; and (b) any definition JJHCS ascribes to the term "non-essential health benefits" as used in the Complaint.

31.    "Parties" means "SaveOnSP" and "JJHCS."

32.    "Patient" means a natural person prescribed or eligible to be prescribed any Janssen Drug, whether or not they use CarePath or are a participant in a health plan advised by SaveOnSP.

---

[3] *See* 45 C.F.R. §§ 156.122, 156.115.

33.    "Person" means a natural person or legal entity including any business or governmental entity or association.

34.    "Regarding" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

35.    "Request" means any of these Requests for Production.

36.    "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Save On SP, LLC.

37.    "SaveOnSP IPBC Video" means the IPBC and SaveOnSP training video created by Express Scripts as defined in Complaint ¶ 9.

38.    "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

39.    "Stelara" means the Janssen Drug sold under that name.

40.    "Tremfya" means the Janssen Drug sold under that name.

41.    "TrialCard" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

42.    "You" and "Your" means JJHCS.

## INSTRUCTIONS

1.    These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 34(a)(1).

2.    These Requests seek production of nonprivileged material. Fed. R. Civ. P. 26(b)(1).

3.    These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4.    For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 34(b)(2)(C).

5.    If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

6.    If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest. Fed. R. Civ. P. 34(b)(2)(C).

7.    If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 26(b)(5)(A)(ii), including by indicating whether any document exists regarding the information

10

requested and stating, to the extent the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked, Local Rule 34.1.

8.      If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction, the reason for its destruction, the name of the person who requested or authorized its destruction, and the name of the person who destroyed it.

9.      Produce documents as they are kept in the usual course of business. Fed. R. Civ. P. 34(b)(E)(i). For each document, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

10.     Produce electronically stored information in the form and manner required by any agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

11.     Produce each document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

12.     Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notations, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

13.     These Requests are deemed continuing. If after responding to any Request you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).

11

## TIME PERIOD

Unless otherwise specified, these Requests cover from and including January 1, 2017, through the present.

## REQUESTS

1.    From January 1, 2009 through the present, Documents sufficient to show JJHCS's organizational structure, including organizational charts.

2.    From January 1, 2009 through the present, Documents sufficient to show Janssen's organizational structure, including organizational charts.

3.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of each JJHCS Hub Entity.

4.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of any group or division within JJHCS, Janssen, or any JJHCS Hub Entity involved in developing, managing, marketing, or administering CarePath or any other copay assistance program offered for Janssen Drugs, and to identify their employees.

5.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of JJHCS's Health Economics, Access, and Outcome Groups and to identify employees working in those groups.

6.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of the drug product team for each Janssen Drug, and to identify employees working on those teams.

7.    From January 1, 2009 through the present, documents sufficient to identify all natural persons with decisionmaking authority over the sale or marketing of Janssen Drugs.

8.    All Documents and Communications with or regarding SaveOnSP.

12

9.      All Communications by JJHCS or Janssen with any Patient regarding SaveOnSP, including any Documents regarding those Communications.

10.     All Documents and Communications regarding any presentation, document, or information regarding SaveOnSP referenced in the Complaint, including the "SaveOnSP IPBC Video" and the materials referenced in Complaint ¶¶ 82-88.

11.     From January 1, 2009 through the present, all Documents and Communications regarding the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

12.     From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) JJHCS's decision to revise any of its CarePath terms and conditions for any Janssen Drug; and (d) JJHCS's understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

13.     From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

14.     From January 1, 2015 through the present, all Documents and Communications regarding JJHCS's or any JJHCS Hub Entity's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under

the Affordable Care Act and its regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

15.    All Documents and Communications regarding SaveOnSP's communications with Patients regarding CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 60-67, 109.

16.    All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 72.

17.    All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

18.    All Documents and Communications regarding any allegedly misleading or confusing communications between SaveOnSP and Patients, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 13, 75-77, 85-88.

19.    All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

20.    All Documents and Communications regarding any publicly distributed material (including, for example, articles, op-eds, white papers, and online postings) regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services, including Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect involvement with such material and JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect funding of the authors, publishers, or distributors of such material.

14

21.    All Documents and Communications regarding any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services.

22.    All Documents and Communications regarding any alleged harm caused by SaveOnSP to any Patient by allegedly making their healthcare more expensive, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

23.    All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

24.    All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

25.    All Documents and Communications regarding any alleged harm caused by SaveOnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 110, 115.

26.    All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

27.    All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

28.    From January 1, 2009 through the present, for each Janssen Drug for each year, Documents sufficient to show:

15

a.    all Patients receiving the Janssen Drug;

b.    the number of fills of the Janssen Drug received by each such Patient;

c.    the dosage of the Janssen Drug received by each such Patient for each fill;

d.    the projected number of Patients, average number of fills, and average dosage for the Janssen Drug;

e.    the cost to manufacture the Janssen Drug;

f.    the sales and marketing budget for the Janssen Drug;

g.    the price of the Janssen Drug;

h.    the revenue received by JJHCS from the Janssen Drug;

i.    all Patients enrolled in the CarePath program for the Janssen Drug;

j.    the dates on which each Patient was enrolled in CarePath;

k.    the amounts of copay assistance funds that JJHCS offered to each Patient enrolled in CarePath;

l.    the Janssen Drugs for which each Patient enrolled in CarePath received copay assistance;

m.    all copay assistance payments that JJHCS made to or on behalf each Patient enrolled in CarePath; and

29.    From January 1, 2009 through the present, for each Janssen Drug for each year, all Documents and Communications regarding:

a.    JJHCS's determination of the amounts of copay assistance funds that JJHCS offered to Patients enrolled in CarePath, including the determination of the maximum program benefit per calendar year for the Janssen Drug;

16

b.      JJHCS's budget for CarePath, including the sales and marketing budget;

c.      JJHCS's actual and projected annual costs for CarePath;

d.      JJHCS's use of or accounting for unused CarePath funds;

e.      the impact of the Affordable Care Act on JJHCS's CarePath budget or funding, including the impact of laws and regulations regarding out-of-pocket maximums;

f.      JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath;

g.      the impact of CarePath on Janssen's sales of any Janssen Drug;

h.      the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

i.      JJHCS's or Janssen's actual and projected return on investment for CarePath; and

j.      any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by SaveOnSP.

30.     From January 1, 2009 through the present, for each year for each Janssen Drug, all Documents and Communications regarding the basis for Janssen's decision to raise or lower the price of the Janssen Drug, including labor or manufacturing costs or the increase in efficacy of the Janssen Drug.

31.     All Documents and Communications regarding JJHCS's attempts to limit or eliminate the amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs, including Documents and Communications regarding JJHCS's attempts to limit or eliminate the

17

availability of CarePath copay assistance funds available to Patients enrolled in health plans advised by SaveOnSP.

32.    All Documents and Communications regarding any offer by JJHCS to provide to any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance funds available to a Patient.

33.    All Documents and Communications regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans.

34.    From any time, all Documents and Communications regarding JJHCS's or Janssen's negotiations or agreements regarding the potential use of SaveOnSP's services, or the services of any Copay Maximizer Service or Copay Accumulator Service, for JJHCS's Employee Health Plans, including JJHCS's abandonment of those negotiations or agreements.

35.    Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coordinators.

36.    From January 1, 2009 through the present, Documents sufficient to show the economic terms of JJHCS's retention of or agreements with any JJHCS Hub Entity or CarePath Care Coordinator regarding CarePath, including any assessment of the fair market value of those services.

37.    From January 1, 2009 through the present, documents sufficient to show the percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs.

18

38.    From January 1, 2009 through the present, all Documents and Communications received by JJHCS from any JJHCS Hub Entity or sent by JJHCS to any JJHCS Hub Entity regarding SaveOnSP or CarePath.

39.    All Documents and Communications received by JJHCS from any CarePath Care Coordinator regarding SaveOnSP.

40.    All Communications by any JJHCS Hub Entity or CarePath Care Coordinator with any Patient regarding SaveOnSP, including any Documents regarding those Communications and talk tracks or scripts prepared for use during those Communications.

41.    From January 1, 2015 through the present, all Documents and Communications relating to Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's return on investment for copay assistance dollars.

42.    From January 1, 2015 through the present, all Documents and Communications relating to JJHCS's or any JJHCS Hub Entity's understanding of the terms "copay accumulator" and "copay maximizer."

43.    All Documents and Communications concerning non-medical switching by participants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

44.    To the extent not requested above, Documents and Communications of any JJHCS Hub Entity or CarePath Care Coordinator regarding the topics of all Requests listed above.

45.    JJHCS's, Janssen's, any JJHCS Hub Entity's, and any CarePath Care Coordinator's document retention policies.

46.    Complete data dictionaries for any data that You produce.

19

47.     From any time, all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP, including in response to subpoenas served in this Action.

48.     To the extent not requested above, from any time, all Documents and Communications upon which you may rely in this Action.

# Exhibit 15

E. Evans Wohlforth, Jr.
ROBINSON & COLE
666 3rd Avenue #20
New York, NY 10174
212-451-2954
ewolforth@rc.com

David Elsberg
Andrew R. Dunlap
Meredith Nelson
Elizabeth Snow
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JMV) (CLW) <br><br> **DEFENDANT'S FIFTH REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

To:    Jeffrey J. Greenbaum, Esq.
       SILLS CUMMIS & GROSS, P.C.
       One Riverfront Plaza
       Newark, NJ 07102
       973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, NY

*Attorneys for Plaintiff Johnson & Johnson*
*Health Care Systems Inc.*

     **PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26 and 34,

Defendant Save On SP, LLC ("SaveOnSP"), requests Plaintiff Johnson & Johnson Health Care

Systems Inc.'s ("JJHCS"), to produce for inspection and copying the documents listed in these

Requests, to the office of the undersigned within 30 days of being served or at a time and place

mutually agreed by the parties and ordered by the Court.

     **PLEASE TAKE FURTHER NOTICE** that this demand for production of documents

shall be deemed continuing in nature so as to require supplemental responses if Plaintiff or Plain-

tiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's

responses are served.

Dated:  November 17, 2023          By: */s/ E. Evans Wohlforth, Jr.*
                                       E. Evans Wohlforth, Jr.
                                       ROBINSON & COLE
                                       666 3rd Avenue #20
                                       New York, NY 10174
                                       212-451-2954
                                       ewolforth@rc.com

                                       David Elsberg
                                       Andrew R. Dunlap
                                       Meredith Nelson
                                       Elizabeth Snow
                                       SELENDY GAY ELSBERG, PLLC
                                       1290 Avenue of the Americas
                                       New York, NY 10104
                                       212-390-9000
                                       deslberg@selendygay.com
                                       adunlap@selendygay.com
                                       mnelson@selendygay.com
                                       esnow@selendygay.com

                                       *Attorneys for Defendant Save On SP, LLC*

3

**DEFINITIONS**

The following definitions apply to these Requests:

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses.

3.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.      "2023 Best Price Rule" means 85 Fed. Reg 87,000 which required that, starting on January 1, 2023, manufacturers must ensure that the full amount of copay assistance programs is passed on to the patient and that no other entity receives any price concession, in order to exclude any such benefits from the calculation of the drug's "Best Price."

6.      "Accredo" means Accredo Health Group, Inc. as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Accredo.

7.      "Accumulator" means a copay accumulator service, including (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which

4

members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

8.      "All," "any," and "each" mean any and all.

9.      "And" and "or" are construed both conjunctively and disjunctively.

10.     "Archbow" means Archbow Consulting, LLC and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Archbow.

11.     "Benefits Investigation" means any process by which JJHCS, or any entity acting on its behalf, receives information regarding the pharmacy benefits provided by a health plan, including information regarding prior authorization, costs, Essential Health Benefits status, patient eligibility, and related information.

12.     "Best Price" is the lowest price available form the manufacturer during the rebate period to any wholesaler, retailer, provider, health maintenance organization, nonprofit entity, or governmental entity in the United States in any pricing structure.

13.     "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

14.     "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

15.    "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

16.    "Document" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

17.    "ESI" means "electronically stored information" as defined in the Federal Rules of Civil Procedure.

18.    "Express Scripts" means Express Scripts, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Express Scripts.

19.    "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

20.    "Including" means including but not limited to.

21.    "Janssen" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons

or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc.,
Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

22.    "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all pre-
decessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or depart-
ments, agents, representatives, directors, officers, employees, committees, attorneys, accountants,
and all persons or entities acting or purporting to act on behalf or under the control of Johnson &
Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil
Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals,
Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development,
LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc.,
Janssen BioPharma LLC, and Janssen Research & Development LLC.

23.    "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer,
in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors
and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments,
agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all
persons or entities acting or purporting to act on behalf of such an entity.

24.    "Lash Group" means The Lash Group, Inc. and any and all predecessors and suc-
cessors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, rep-
resentatives, directors, officers, employees, committees, attorneys, accountants, and all persons or
entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

25.    "Maximizer" means copay maximizer service, including (a) any service provided
by Pharmacy Benefit Managers or insurance companies, or any third party providing services to
the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from

7

counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maximizer."

26.     "Person" means a natural person or legal entity including any business or governmental entity or association.

27.     "Regarding" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

28.     "Request" means any of these Requests for Production.

29.     "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Save On SP, LLC.

30.     "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

31.     "TrialCard" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents,

8

representatives, directors, officers, employees, committees, attorneys, accountants, and all persons

or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

32.     "You" and "Your" means JJHCS.

## INSTRUCTIONS

1.     These Requests seek production of material in Your possession, custody, or control.
Fed. R. Civ. P. 34(a)(1).

2.     These Requests seek production of nonprivileged information. Fed. R. Civ.
P. 26(b)(1).

3.     These Requests seek production of material that is proportional to the needs of this
case. Fed. R. Civ. P. 26(b)(1).

4.     For each Request, either state that you will produce the requested material or state
with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P.
34(b)(2)(C).

5.     If you object to all or part of a Request, state whether you are withholding any
responsive material based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

6.     If you object to part of a Request, specify the part and state that you will produce
documents responsive to the rest. Fed. R. Civ. P. 34(b)(2)(C).

7.     If you withhold responsive information by claiming that the information is privi-
leged or subject to protection as trial-preparation material, expressly make the claim and describe
the nature of the information privileged or protected in a manner that, without revealing infor-
mation itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P.
26(b)(5)(A)(ii), including by indicating whether any document exists regarding the information,
requested and stating, to the extent the privilege is being asserted in connection with a claim or
defense governed by the state law, the state privilege rule being invoked, Local Rule 34.1.

8.      If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction the reason for its destruction, the name of the person who requested or authorized its decision, and the name of the person who destroyed it.

9.      Produce documents as they are kept in the usual course of business. Fed. R. Civ. P. 34(b)(E)(i). For each document, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

10.     Produce electronically stored information in the form and manner required by any agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

11.     Produce each document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

12.     Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notation, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

13.     These Requests are deemed continuing. If after responding to any Request you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).

## **TIME PERIOD**

Unless otherwise specified, these Requests relate to the time period from and including April 1, 2016, through the present.

## **REQUESTS**

63.     All Documents and Communications regarding JJHCS's efforts to directly reimburse patients for out-of-pocket costs after the patient acquires a Janssen Drug.

64.     All Documents and Communications regarding ███████████████████ ███████████████████████████ ARCHBOW_000219), ███████ ███████████████████████████████████████████. *See* ARCHBOW_000219.

65.     All Documents and Communications regarding ███████████████ ███████████████ ARCHBOW_000241), ███████████████████ ███████████████████████████████ *See* ARCHBOW_000241.

66.     All Documents and Communications regarding attempts by JJHCS to prevent health plans, PBMs (including without limitation Express Scripts), pharmacies (including without limitation Accredo), or SaveOnSP, from being able to detect JJHCS's provision of funds to patients.

67.     Documents sufficient to show all payments or reimbursements made by JJHCS to patients taking Janssen Drugs other than copay assistance payments provided via CarePath.

68.     All Documents and Communications between JJHCS and Archbow regarding CarePath, copay assistance, or provision of funds to patients enrolled in CarePath.

69.     All Documents and Communications with or regarding ███████████ ██████ *See* ARCHBOW_000103.

70.     All Documents and Communications regarding manufacturer copay assistance program funds counting towards the calculation of a drug's Best Price, including the anticipated impact of the 2023 Best Price Rule on JJHCS, including without limitation the impact on CarePath.

71.    Documents sufficient to show how JJHCS records, books, accounts for, or refers to copay assistance payments and other provision of funds to patients for the purpose of internal reports, bookkeeping, internal or external financial reporting, including without limitation reporting for tax purposes or compliance with any other law, including without limitation whether JJHCS accounts for those payments as charity, charitable contributions, business expenses, rebates, discounts, marketing, or otherwise.

72.    All Documents and Communications regarding ███████████████

████████████████████████████████████████████

███████████████ *See* ARCHBOW_000438.

73.    All Documents and Communications ███████████████████

████████████████████████████████████████. *See* ARCH-

BOW_000306; ARCHBOW_000439.

74.    All Documents and Communications regarding ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████. *See* ARCHBOW_000440.

75.    All Documents and Communications ███████████████████

████████████████████████████████████████████

███████████████. *See* ARCHBOW_000443.

76.    All recordings of calls between SaveOnSP or any employee of SaveOnSP, on the one hand, and JJHCS or any Hub Entity, on the other hand.

# EXHIBITS 16-29
# CONFIDENTIAL – FILED UNDER SEAL

# Sills Cummis & Gross
### A Professional Corporation

**The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102-5400
Tel: 973-643-7000
Fax: 973-643-6500**

Jeffrey J. Greenbaum
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

May 2, 2024

**By Email**

Hon. Freda L. Wolfson
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL
UNDER THE DISCOVERY CONFIDENTIALITY ORDER**

Re:    **Opposition to SaveOnSP's April 18, 2024 Motion to Compel**
       *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
       Civil Action No. 22-2632 (JKS) (CLW)

Dear Judge Wolfson:

On behalf of Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), we write in opposition to Defendant Save On SP, LLC's ("SaveOnSP") April 18, 2024 letter motion to compel the production of documents purportedly relating to "Best Price."

SaveOnSP's motion consists of a grab-bag of disparate arguments. Some are hard to follow, and all are premised on tortured logic, if not outright errors of law. The gist, however, is simple: SaveOnSP argues that it should get documents about JJHCS's compliance with federal Best Price regulations, which govern Medicaid rebates, and in particular JJHCS's compliance with a proposed regulation that never went into effect. SaveOnSP's spurious relevance arguments are addressed below—but they are merely a smokescreen designed to conceal what SaveOnSP really

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 2

wants.  Best Price documents are by definition all about the details of drug pricing.  The documents

SaveOnSP seeks here include detailed and highly sensitive government reports about every price,

rebate, and discount on every formulation of every Janssen drug at issue, and internal documents

regarding the same.

SaveOnSP has long made clear that it wishes to make this case a trial on the propriety of

pharmaceutical pricing in America.  As the Court's prior rulings have recognized, however, this

case is not about Janssen drug pricing; it is about SaveOnSP's misappropriation of manufacturer-

provided patient assistance funds.  Accordingly, the Court repeatedly has denied SaveOnSP this

discovery.  *See, e.g.*, D.E. 192 at 24 ("[D]ocuments on pricing of Janssen drugs are [not] relevant

to Plaintiff's claims or Defendant's defenses"); D.E. 264 at 2,7 ("I was not convinced that the

documents related to year-to-year pricing of Janssen drugs are relevant . . . Nothing Defendant

now raises convinces me to reconsider on this issue").  This latest motion is just another attempt

to get at the same documents through a different pathway.

Even if the Court were to venture into the weeds of the Medicaid rebate regulatory scheme,

the motion should be denied.  SaveOnSP's primary argument is that JJHCS's Best Price reporting

to the government is non-compliant with regulations, and contradicts its claims in this lawsuit.  But

SaveOnSP has misunderstood the relevant regulations and JJHCS documents—there is no

contradiction.  Regardless, SaveOnSP is not a private Attorney General.  It is a self-described

███████████████████████████████████████████████████████

to further its scheme to misappropriate patient assistance funds.  The federal government, which

closely polices drug manufacturer compliance with Best Price, has never suggested that JJHCS's

2

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 3

position in this lawsuit, which has been pending for years and highly publicized, presents any

issues with JJHCS's Best Price submissions.  That is because it does not.

SaveOnSP next argues that all of JJHCS's attempts to enforce its terms and conditions

against SaveOnSP and mitigate its damages stemming from SaveOnSP's scheme are really an

elaborate ruse, somehow designed to engineer compliance with a Best Price regulation proposed

in 2020 and anticipated to go into effect in 2023, but which was enjoined and never went into

effect—as opposed to being motivated by SaveOnSP's conduct.  SaveOnSP contends that this

somehow proves that JJHCS actually is helped and not damaged by SaveOnSP.  This is a confusing

conspiracy theory for the ages.  But if JJHCS actually had any such documents relevant to this

outlandish theory, it would already be producing them:  it has agreed to produce documents about

SaveOnSP, about the entire history of the CarePath terms and conditions going back more than a

decade, and about its attempts at mitigating the harm done by SaveOnSP.  SaveOnSP is not entitled

to documents about Best Price regulations and submissions that have nothing to do with any

relevant issue, and nothing to do with SaveOnSP.

SaveOnSP's final contention is that documents about JJHCS's reaction to the 2023 Best

Price regulation when it was first proposed in 2020 will help further its laches defense by showing

what JJHCS knew about SaveOnSP in 2017.  This argument defies time itself.  How JJHCS reacted

to a 2020 proposed rule that was originally slated to go into effect in 2023 does not speak to what

it knew in 2017.  But regardless, it is also wrong as a legal matter, because SaveOnSP's laches

defense will fail in any event.  The claims at issue were timely filed under governing statutes of

limitations.  And, once again, SaveOnSP does not need these documents to know what JJHCS

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 4

knew about SaveOnSP and when it knew it, because JJHCS is already producing documents that
mention SaveOnSP from the files of more than twenty custodians.

There is one additional reason to deny this motion: SaveOnSP's position is not only
disingenuous, it is also hypocritical. In pressing this motion, SaveOnSP now contends that
compliance with government regulations about Best Price is "highly relevant." But SaveOnSP
itself categorically refused to produce documents regarding its *own* compliance with different laws
and regulations that actually *are* relevant (because they relate to the improper misappropriation of
patient assistance funds and whether SaveOnSP has been outlawed in certain states). When JJHCS
sought documents "relating to how SaveOnSP operates in jurisdictions with statutes or regulations
that ban or limit accumulator adjustment programs," i.e., jurisdictions that ban programs like
SaveOnSP, SaveOnSP groused that JJHCS's request was "a blatant fishing expedition that seeks
completely irrelevant documents," because "**compliance with these statutes has nothing to do
with whether [SaveOnSP] induced patients to breach their contracts with JJHCS or whether
it deceives the public.**" D.E. 66 at 7–8 (emphasis supplied); *see also* Mar. 17, 2023 Tr. at 20:8–
16 (SaveOnSP's counsel arguing that compliance with "some other statute" is just "**completely
tangential**." (emphasis supplied)). Judge Waldor sided with SaveOnSP, commenting, "I don't see
the relevance at all. And it's too much." Mar. 17, 2023 Tr. at 23:1–3; *see also* D.E. 102, ¶ 3.
JJHCS accepted that ruling and has never moved to clarify, reconsider, or relitigate it. The parties
thus proceeded with the understanding that discovery would not be expanded into general
regulatory compliance. Having won the ruling on scope that it sought, and shielded far more
relevant documents about its own compliance from scrutiny, SaveOnSP cannot now—more than

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 5

a year later—put JJHCS's own compliance with an entirely irrelevant relevant regulatory scheme

at issue.

## DISCUSSION

The Court should deny SaveOnSP's motion for four reasons.  *First*, it is an improper

attempt to revisit discovery about the pricing of Janssen drugs.  *Second*, documents that relate

solely to the Best Price Rule—but not other issues subject to discovery like SaveOnSP or the CAP

program—are irrelevant.  *Third*, while SaveOnSP does its best to muddy the waters on the

document requests at issue, the bottom line is this:  to the extent that a document touches on Best

Price alongside other relevant topics, JJHCS has already agreed to produce it.  SaveOnSP is

entitled to nothing more.  *Fourth*, SaveOnSP is wrong when it claims it is entitled to these

documents to support a potential laches defense:  its argument misconstrues both the facts and the

legal framework that would govern such a defense.

## I.    SaveOnSP's Motion Is an Improper Attempt to Revisit Pricing-Related Discovery

The Best Price Rule is part of a regulatory scheme intended to ensure that Medicaid gets

the benefit of the lowest prices that drug manufacturers offer in the marketplace.  It does so by

requiring manufacturers to (i) disclose to the government certain pricing concessions that they

offer in the market, and (ii) provide rebates to Medicaid that result in Medicaid getting the net

"Best Price."  *See PhRMA v. Becerra*, 2022 WL 1551924, at *1 (D.D.C. May 17, 2022).  Discovery

about "Best Price" is therefore, by definition, discovery about the pricing of Janssen drugs.

For example, SaveOnSP's Request No. 79 seeks "[a]ll Best Price Quarterly Reports created

or submitted by JJHCS, Janssen, or their affiliates for each Janssen Drug."  SaveOnSP Ex. 13.

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 6

These Quarterly Reports to the government include, for each drug, the average manufacturer price[1]

and the Best Price.[2]  42 C.F.R. § 447.510(a).  In simple terms, these reports contain within them

the details on every relevant price, discount, and rebate that JJHCS or Janssen offers in the

marketplace to a vast array of defined market participants.

        As noted above, Your Honor previously concluded that "documents on pricing of Janssen

drugs are [not] relevant to Plaintiff's claims or Defendant's defenses" because "the sales and

profitability of Janssen drugs is not a justification for Defendant's tortious conduct."  D.E. 192 at

24.  Accordingly, Your Honor rejected three document requests seeking the prices of Janssen

drugs.  *Id*.  Your Honor's rulings on this issue are in accord with two prior rulings from Judge

Waldor.  *See, e.g.*, Oct. 30, 2023 Tr. at 52:16–20, 54:25–55:1; Mar. 17, 2023 Tr. at 34:1–10

(declining to compel compliance with an "awfully broad" request for pricing-related documents).

These rulings are dispositive here because SaveOnSP is seeking the very same pricing information.

This motion is nothing more than the proverbial old wine in new bottles.

        SaveOnSP insists that it is innocent of any such intent to evade the Court's orders.  It says

that it does not seek pricing data, but "only communications and documents that will allow it to

test J&J's repeated accusations that SaveOn has been 'diverting' J&J's copay assistance funds."

Mot. at 6.  Therefore, it argues "[t]his motion is not about how J&J sets prices; it is about whether

---

[1] Defined as "the average price paid to the manufacturer for the drug in the United States by
wholesalers for drugs distributed to retail community pharmacies and retail community pharmacies
that purchase drugs directly from the manufacturer."  42 C.F.R. § 447.504.

[2] Defined as "the lowest price available from the manufacturer during the rebate period to any
wholesaler, retailer, provider, health maintenance organization, nonprofit entity, or governmental
entity in the United States in any pricing structure (including capitated payments) in the same
quarter for which the [average manufacturer price] is computed."  42 C.F.R. § 447.505(a).

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 7

J&J actually believes that any of its copay assistance funds flow to SaveOn." *Id.*  This is

nonsensical.  Request 79 on its face seeks pricing data.  Moreover, there is no dispute that

SaveOnSP engages in that diversion.  SaveOnSP already admitted ten months ago that it helps

itself and its partners to **hundreds of millions of dollars per year** of JJHCS's patient assistance

funds.  *See* D.E. 109 [Patient List Joint Letter] at 7 ("JJHCS's proposed action [to use discovery

information to exclude patients in SaveOnSP from CarePath] would cost SaveOnSP tens of

millions of dollars per year and would cost the employers who are SaveOnSP's clients over a

hundred million dollars per year.").  And so there is simply nothing to "test" here.  SaveOnSP does

not dispute that it makes money by taking copay patient assistance funds for the benefit of itself

and its partners.  The only question is whether this undisputed conduct is legal or constitutes either

tortious interference with contract or a violation of New York General Business Law § 349.

All else aside, if JJHCS actually had documents stating that it thinks SaveOnSP is not

diverting its patient assistance funds—the counterfactual scenario that SaveOnSP posits—then

those documents will be produced, because JJHCS is producing documents relating to SaveOnSP

from more than twenty custodians, as set forth below.  Documents relating to pricing of Janssen

drugs alone, however, are as irrelevant in the Best Price context as they were in any other.

II.    **SaveOnSP's Argument to Compel the Production of Best Price Rule-Related**
        **Documents Depends on Errors of Law and Fact**

SaveOnSP posits that it is entitled to take discovery on issues related to the Best Price Rule

because JJHCS has made "contradictory representations" in this litigation and in regulatory filings

made with the Department of Health and Human Services ("HHS").  Mot. at 5.  Not even close.

SaveOnSP's    identification    of    alleged    "contradictory    representations"    is    rooted    in

7

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 8

misunderstandings of the law and the facts.  In any event, the accuracy of JJHCS's regulatory

submissions is not an issue in this case, which turns solely on tortious conduct by SaveOnSP.

### A.  SaveOnSP Misconstrues the Best Price Regulatory Scheme

SaveOnSP argues that JJHCS was required under the Best Price regulatory scheme to

include copay assistance dollars in its calculation of Best Price if it had any suggestion that some

of that money was being diverted "to a plan, PBM, accumulator, or maximizer."  Mot. at 7.

Accordingly, to avoid having a lower Best Price, and therefore higher Medicaid rebate obligations,

SaveOnSP posits that JJHCS "decided to be willfully blind to the effect of SaveOn or similar

companies on its copay assistance funds."  Mot. at 8.

SaveOnSP is flat wrong, as shown by the very regulatory history that it cites.  The relevant

facts are undisputed.  In 2020, HHS proposed an amendment to the Best Price Rule—what

SaveOnSP's motion refers to as the "2023 Best Price Rule"—that would for the first time have

included copay assistance payments in the calculation of Best Price, unless "the manufacturer

ensures the full value of the assistance or benefit is passed on to the consumer or patient."  *Revising

Medicaid Drug Rebate and Third Party Liability Requirements,* 85 Fed. Reg. 37286, 37298 (June

19, 2020).  This proposed amendment was a significant change from the existing regulatory

scheme, to which SaveOnSP refers as the "2016 Best Price Rule."  The proposed 2023 Best Price

Rule was controversial and was soon challenged in federal district court.

Two aspects of that litigation are pertinent here.  First, the court determined whether the

2023 Best Price Rule constituted a change from the requirements under the 2016 Best Price Rule.

From the time HHS proposed the 2023 Best Price Rule, there was debate regarding the preexisting

obligations of manufacturers under the 2016 Best Price Rule.  *See PhRMA*, 2022 WL 1551924, at

8

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 9

*4.  HHS contended that under the 2016 Best Price Rule, manufacturers "ha[d] a duty to include

in their best price calculations the effects of accumulator adjustment programs," and that the 2023

Best Price Rule merely clarified this existing requirement.  *Id.*; *see also Establishing Minimum*

*Standards in Medicaid State Drug Utilization Review*, 85 Fed. Reg 87000, 87052 (Dec. 31, 2020).

Manufacturers had always understood their obligations under the 2016 Best Price Rule differently.

Because manufacturers are "not aware of when [the use of accumulators or maximizers] by the

health plans take[s] place," drug manufacturers understood the 2016 Best Price Rule did not

require them to include copay assistance payments in the calculation of Best Price, so long as they

intended that all copay assistance go to patients.  *Establishing Minimum Standards in Medicaid*

*State Drug Utilization Review*, 85 Fed. Reg 87000, 87048–049; *see also* PhRMA Br. (D.E. 26-1),

*PhRMA v. Becerra*, No. 21-cv-1395 (D.D.C. Jan. 4, 2022), at 25 ("[HHS] itself thus has recognized

that, when a manufacturer provides a rebate or benefit to a non-Best-Price-eligible purchaser, the

manufacturer's intent is what matters").  The court sided with the manufacturers, explaining that

the 2023 Best Price Rule "imposes new regulatory requirements on manufacturers" to "ensure that

the full value of the [copay] assistance stays with the patient."  *PhRMA*, 2022 WL 1551924, at *4

(quotation marks omitted).

      Second, the court had to determine whether the 2023 Best Price Rule should be allowed to

take effect.  In the course of interposing various legal challenges, manufacturers pointed out that

it made little sense to include copay assistance in the calculation of Best Price because it was

money intended to help patients, not to reduce the prices at which drugs were being sold in the

marketplace.  *See* PhRMA Reply Br. (D.E. 34), *PhRMA v. Becerra*, No. 21-cv-1395 (D.D.C. Mar.

7, 2022), at 6–11 (explaining that "manufacturer assistance to patients . . . is not part of the

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 10

consideration for any sale transaction with a health plan for a manufacturer's drug," meaning that

it is not part of the "price" under the ordinary meaning of the word "price"). Including copay

assistance in Best Price calculations would create perverse incentives for manufacturers to stop

helping patients. *Id*. at 22–23. And manufacturers pointed out that they had no ability to ensure

that the full value of copay assistance was passed onto patients, because external actors could

misappropriate such funds without the manufacturer's knowledge and without an opportunity for

the manufacturer to intervene. *Id*. at 16–18.

Again, the court ruled in favor of the manufacturers. Before the "2023 Best Price Rule"

ever went into effect, the court vacated and set aside the proposed amendment as inconsistent with

the text of the operative statute. *See PhRMA*, 2022 WL 1551924, at *35 (noting that the Rule

"would make the calculation of the best price turn on information often in the sole possession of

commercial health insurers. Under the proposed rule, manufacturers would need to conduct

transaction-by-transaction investigations into the operations of accumulator adjustment programs

even though manufacturers have no control over (and sometimes no information concerning) those

programs.").

And so, fatally for SaveOnSP's motion, the "2023 Best Price Rule" is not—and will never

be—the law. The court's decision also confirmed that the law never required manufacturers to

include copay assistance in Best Price so long as they intended for patient assistance funds to be

used by patients—as JJHCS always did. With that, the premise of SaveOnSP's motion falls apart.

SaveOnSP also argues that it "cannot be [simultaneously] true" that "SaveOn[SP] was

diverting CarePath funds from patients" and that JJHCS accurately "certif[ied] to HHS that all its

copay assistance funds go to patients." Mot. at 5. This is a fallacy. SaveOnSP already has

10

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 11

admitted to diverting millions of dollars from JJHCS's copay assistance program.  And under the

operative Best Price framework, JJHCS was never required to include copay assistance dollars in

Best Price or make any such certification, because it always intended CarePath funds to be for its

patients.

      *B.  SaveOnSP Misreads the Documents It Cites*

      SaveOnSP claims, based on citations to several documents, that JJHCS "appears to have

regularly certified to [HHS] that all its CarePath copay assistance funds go exclusively to patients"

while telling "the Court and Your Honor in this case that a portion of its copay assistance funds

flow to SaveOn."  Mot. at 3–4.  But each of the four JJHCS documents that SaveOnSP cites for

the proposition that JJHCS "appears to have regularly certified to [HHS] that all its CarePath copay

assistance funds go exclusively to patients" shows nothing of the kind.  ████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████ They certainly do not certify to anyone

externally, let alone the government, that no bad actor like SaveOnSP is engaged in theft or

misappropriation.  Indeed, they all include this legend on each and every page:

Confidential and proprietary for internal use only.

*See* SaveOnSP Ex. 7; SaveOnSP Ex. 8; SaveOnSP Ex. 9; SaveOnSP Ex. 10.

      Moreover, some of the "Program Checklists" cited by SaveOnSP do not involve CarePath

at all.  *See* SaveOnSP Ex. 9 at -5950, -5953 (describing ████████████████████████

██████████████████████████████████████.  SaveOnSP does not, and

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 12

cannot, explain how an internal JJHCS document connected to a program that is completely unrelated to CarePath, and functions differently from CarePath, has any probative value as evidence of the representations that JJHCS makes to the government regarding CarePath.[3]

The Best Price regulatory scheme is detailed and highly specific, yet SaveOnSP does not cite any regulation requiring any submission or certification that is somehow contradicted by any position JJHCS has taken in this lawsuit.  Nor can it, because contrary to SaveOnSP's contention, the Best Price regulations do not require JJHCS to submit anything to the government in which it expressly states that "all its CarePath copay assistance funds go exclusively to patients."  Mot. at 3.  The regulation does not require JJHCS to make a certification regarding how CarePath functions; it simply requires JJHCS to calculate and submit certain pricing data to the government. 42 C.F.R § 447.510(a).  Because the Best Price regulations did not and do not require JJHCS to do so, JJHCS never made the representations to the government SaveOnSP posits that JJHCS made, and when JJHCS submitted pricing data to the government, it calculated that pricing data in accordance with all regulatory requirements.  These facts eviscerate the basis for SaveOnSP's motion.

---

[3] SaveOnSP also contends that JJHCS "█████████████████████████████████████
████████████████████████████████████████████████████████████████████████████."  Mot. at
3.  Not true.  █████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████

SaveOnSP Ex. 6 at -7510.  This is accurate:  despite its best efforts, JJHCS has no definitive way of knowing which patients are affected by SaveOnSP, thanks to SaveOnSP's painstaking efforts to evade detection by JJHCS and other drug manufacturers.  The risk that manufacturers could be penalized for evasive conduct by third parties is part of why a district court struck down the 2023 Best Price Rule.  *PhRMA*, 2022 WL 1551924, at *5 (holding that "[f]easibility concerns support th[e] conclusion" that the 2023 Best Price Rule is invalid).

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 13

**III.    The Only Relevant Best Price-Related Documents Are Those Relating to the CAP Program, and JJHCS Already Has Agreed to Produce Them.**

SaveOnSP has moved to compel the production of documents responsive to three document requests: Request Nos. 8, 70, and 79. Mot. at 2. In its motion, SaveOnSP seeks to reinvent these document requests entirely in a series of bullet points at pages 6 to 7, with descriptions that bear no reasonable relationship to the actual underlying Requests. But to the extent that SaveOnSP seeks relevant documents that do not relate exclusively to Janssen pricing or Best Price, and that instead also relate to relevant issues involving the CAP program or SaveOnSP, JJHCS is already running reasonable searches to identify and produce those documents. It should not be required to do more.

*A.    SaveOnSP's Motion to Compel on Request No. 79 Should be Denied*

As set forth above, Request No. 79 sought JJHCS's Best Price submissions to the government. Notably, nowhere in SaveOnSP's submission does it provide a single justification or reason for why it needs those detailed government pricing submissions sought through Request No. 79, and JJHCS has set forth above why they are irrelevant. Accordingly, the motion to compel as to Request No. 79 should be denied.

*B.    SaveOnSP's Motion to Compel on Request No. 70 Should be Denied*

Request No. 70 seeks: "All Documents and Communications regarding manufacturer copay assistance program funds counting towards the calculation of a drug's Best Price, including the anticipated impact of the 2023 Best Price Rule on JJHCS, including without limitation the impact on CarePath." *See* SaveOnSP Ex. 1 at 13. SaveOnSP claims that the never-effective 2023 Best Price Rule may have influenced JJHCS's behavior regarding SaveOnSP, including by causing

13

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 14

JJHCS to "for the first time, c[o]me up with its current interpretation of CarePath's terms and conditions," "develop[] the CAP Program" and "file[] this lawsuit." Mot. at 8–9.

This argument fails for two reasons. *First*, the suggestion that a non-implemented regulatory proposal was somehow what drove JJHCS to pursue SaveOnSP—a company that admits damaging JJHCS to the tune of hundreds of millions of dollars—is a fanciful fishing expedition. If SaveOnSP were correct, JJHCS would surely have halted the CAP Program and dismissed this lawsuit after the 2023 Best Price Rule was permanently blocked in May 2022. But JJHCS did nothing of the kind. Instead, it has continued with the expense and burden of maintaining the CAP Program, and this litigation, even though the 2023 Best Price Rule no longer exists. It has done so for the obvious reason that it seeks to recover damages for SaveOnSP's misconduct, and to put an end to the harm that SaveOnSP's scheme visits on JJHCS and the patients it serves.[4]

SaveOnSP's related contention that JJHCS's interpretation of the CarePath terms and conditions is a "made-for-litigation" position is also belied by JJHCS's most recent productions

---

[4] SaveOnSP distorts the factual record to argue that JJHCS pursued the CAP Program and this litigation solely because of the 2023 Best Price Rule. For example, SaveOnSP claims "▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Mot. at 9. But ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. SaveOnSP Ex. 23. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Another document it cites for this proposition does not mention the CarePath terms and conditions at all. SaveOnSP Ex. 24. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ SaveOnSP Ex. 17 at 7, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 15

(cited nowhere in SaveOnSP's current motion).  Mot. at 11.  JJHCS's documents regarding the relevant terms and conditions going back to 2013—years before SaveOnSP or the 2023 Best Price regulation even existed—and demonstrate its longstanding view that patient assistance is for patients, not payors.  Ex. 1 at -4623 (JJHCS_00224591) ("███████████████████████████
███████████████████).

Regardless, however, JJHCS already has agreed to produce non-privileged documents and communications related to CAP, as well as similar efforts that may predate the CAP Program, for the period April 1, 2016 to November 7, 2023.  *See* D.E. 192 at 26.  In other words, if a non-privileged document addresses ***both*** a Best Price-related issue ***and*** CAP or other JJHCS efforts to mitigate harm caused by SaveOnSP, JJHCS is producing it.  Indeed, SaveOnSP's citation of documents related to the Best Price Rule ***and*** CAP demonstrate that the current search and collection process works effectively to identify relevant documents.  But documents that relate ***only*** to the Best Price Rule are irrelevant, and JJHCS should not be ordered to produce them.

Nor is there a need for added search terms to capture CAP-related documents connected to the Best Price Rule.  The Court has already dealt with the parameters of that CAP-related discovery repeatedly.  As Your Honor knows, JJHCS now has many custodians, among them six "CAP"-specific custodians.  JJHCS is also already producing documents related to "why [J&J] decided to amend the [CarePath] terms in 2022."  Mot. at 10.  Indeed, after appearing before Your Honor on April 3, JJHCS reached compromise with SaveOnSP on several new terms meant to capture additional documents.  *See* Ex. 2 (Apr. 17, 2024 Ltr. from E. Wohlforth to Judge Wolfson).  And when SaveOnSP has proposed reasonable additional terms related to JJHCS's terms and conditions, JJHCS has agreed to run those as well.  *See* Ex. 3 (Apr. 23, 2024 Ltr. from J. Long to

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 16

E. Snow).  JJHCS also has agreed to run further mitigation-related searches to avoid motions

practice.  *See* Ex. 4 (Apr. 26, 2024 Ltr. from I. Eppler to E. Snow).  In short, to the extent there is

anything truly relevant in documents that also reference Best Price, other agreed-upon search terms

or categories of discovery will capture those documents and SaveOnSP will have access to them.

### C.    *SaveOnSP's Motion to Compel on Request No. 8 Should be Denied*

JJHCS agreed long ago to produce documents from over twenty custodians regarding

SaveOnSP in response to SaveOnSP's Request No. 8 (calling for "[a]ll Documents and

Communications with or regarding SaveOnSP").  *See* Ex. 5 at 10 (JJHCS's R&Os to SaveOnSP's

First Set of RFPs).  This Request has no connection to Best Price.  And again, relevant documents

will not be withheld just because they happen to also include any content relating to Best Price.

### D.    *SaveOnSP's Recitation of Demands is Disconnected From the Requests Underlying its Motion and Should be Denied*

While citing only the three Requests addressed above, SaveOnSP sets forth an entirely

different set of document requests in bullet points that purport to describe what it seeks to compel.

Mot. at 6–7.  The Court should reject those demands because they are not reasonably related to

what the RFPs at issue ask for.  The actual text of the Requests is set forth and addressed above.

SaveOnSP cannot move to compel documents it never requested.

But even if the Court addresses the merits of SaveOnSP's demands, its wishlist either

describes documents that it is already receiving, or documents that it is not entitled to.  For

example, SaveOnSP argues, citing Request Nos. 8 and 70, that it seeks "documents sufficient to

show" "the factual basis of all of J&J's statements to the Court in this litigation regarding SaveOn

taking, seizing, pilfering, siphoning, diverting, and misappropriating copay assistance funds";  as

well as "the factual basis of all of J&J's statements to the Court in this litigation regarding

16

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 17

SaveOn's services converting copay assistance funds into a manufacturer subsidy for SaveOn,
Express Scripts, Accredo, and/or plans." Mot. at 6–7. That is not what Request Nos. 8 or 70 seek,
and in any event, JJHCS is already producing from a long list of custodians the documents sought
in Request No. 8, which calls for all documents regarding SaveOnSP.

Similarly, SaveOnSP demands documents showing JJHCS's communications with the
government regarding "each patient that J&J or a vendor of J&J has identified as a member of a
SaveOn-advised plan." *Id.* Again, that is not what these requests seek, and JJHCS would have no
reason to make any such communications, because the Best Price regulations do not require it, but
documents addressing SaveOnSP would nonetheless have been produced if they existed.

SaveOnSP's other demands are as misconceived as they are irrelevant to Request Nos. 8
and 70. SaveOnSP demands documents sufficient to show "the basis for J&J's assertions" to the
government that "the full amount of J&J's copay assistance is passed to patients"—but as set forth
above, there is no such requirement in the Best Price regulations. *Id.* SaveOnSP's demand for
"documents sufficient to show J&J's evaluation" of whether SaveOnSP and similar companies
"cause copayment assistance funds to be provided to any entities other than patients" is equally
irrelevant because SaveOnSP admits that it does seize such funds. But regardless, any evaluation
of SaveOnSP's role is nonetheless being produced already, because it is a document regarding
SaveOnSP that is responsive to Request No. 8.

Finally, SaveOnSP demands "[a]ll communications or records of communications that
discuss accumulators, maximizers, or SaveOn, with HHS, CMS, or other federal agencies, related
to J&J's submission of Quarterly Best Price Reports." *Id.* Again, this is not what Request Nos. 8
or 70 address—it is an entirely new demand. But it is utterly irrelevant because Best Price reports

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 18

exclude and have always excluded copay assistance programs.  For the same reason, no additional

custodians relating to Best Price submissions are merited, much less custodians outside of the

named party (JJHCS) as demanded by SaveOnSP.  *Id.* at 7.

## IV.    Best Price Rule-Related Documents Are Irrelevant to SaveOnSP's Laches Defense

SaveOnSP is mistaken when it claims it is entitled to Best Price Rule documents to support

its laches defense.  Mot. at 10.  SaveOnSP's hypothesis is that JJHCS had all the materials

information that it needed to sue SaveOnSP in 2017 but decided not to act, entitling SaveOnSP to

invoke the defense of laches.  To be clear, JJHCS disputes that it had material information about

the SaveOnSP scheme in 2017.[5]  But even accepting that premise *arguendo*, there is still no reason

why JJHCS documents related to a regulatory change proposed in 2020 and litigated until 2022

would have any bearing on JJHCS's knowledge of, or decision-making regarding, SaveOnSP in

2017.

SaveOnSP is also wrong on the law.  The case cited by SaveOnSP on this point—the only

case cited in SaveOnSP's entire motion—does not support its argument.  *See* Mot. at 10 (citing

*New Reflections Plastic Surgery, LLC v. Reflections Ctr.*, 2018 WL 6716105 (D.N.J. Dec. 20,

2018)).  *New Reflections* arose in the context of federal Lanham Act claims with no statute of

---

[5] SaveOnSP's support for this proposition is a ███████████████████████████████████
█████████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████ *See*  Ex.  6
(SOSP_0026532).  SaveOnSP has never provided any evidence that ████████████████████
███████████████████████, much less that they provided the basis for a lawsuit.  And while
SaveOnSP cites one of Your Honor's previous discovery rulings, Mot. at 10 (citing D.E. 192 at
14), Your Honor has made clear that you are not making merits findings.  *See* Apr. 3, 2024 Tr. at
148:1–149:3 ( "I would never do that and impose it on the judges that may have this case.").

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 19

limitations; in that specific circumstance, the doctrine of laches steps in to bar stale claims. *See* 2018 WL 6716105, at *6 (citing *Kaufhold v. Caifa*, 872 F. Supp. 2d 374, 379 (D.N.J. 2012)). Here, by contrast, there are statutes of limitations that apply to each of JJHCS's claims, and SaveOnSP does not dispute that JJHCS's claims were timely filed in accordance with them. That ends the inquiry, and with it, SaveOnSP's fishing expedition. *See, e.g.*, *Fox v. Millman*, 45 A.3d 332, 344 (N.J. 2012) ("To the extent that the trial and appellate courts understood . . . that an action at law otherwise governed by a statute of limitations can be barred by application of laches, they were in error"); *id* at 345 ("We see no reason to conclude that our regular, predictable, and uniform system of fixing timeliness through application of the statutes of limitations should be replaced with" the "chaotic and unpredictable patchwork" of laches). *See generally SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 580 U.S. 328, 335 (2017) ("Laches is a gap-filling doctrine, and where there is a statute of limitations, there is no gap to fill.").

## CONCLUSION

When SaveOnSP successfully resisted far more relevant discovery regarding its own compliance with directly relevant laws and regulations relating to copay assistance, it argued: "[A]t some point enough is enough. And this case needs to be about the actual claims that Johnson & Johnson brought." Mar. 17, 2023 Tr. at 20:23–25. That was more than a year ago. We agree with SaveOnSP on this much: the scope of discovery here needs to be about the merits of JJHCS's claims. SaveOnSP should not be rewarded for its transparent and endless attempts to burden JJHCS with irrelevant discovery demands—especially not on this motion, given the Court's unequivocal rejection of both pricing ***and*** regulatory compliance discovery.

For the foregoing reasons, Your Honor should deny SaveOnSP's April 18, 2024 motion.

Honorable Freda L. Wolfson, U.S.D.J.
May 2, 2024
Page 20

Respectfully submitted,

s/ *Jeffrey J. Greenbaum*
JEFFREY J. GREENBAUM


cc:    Counsel of record for SaveOnSP

# EXHIBIT 1
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 2

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

April 17, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

Re:     *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
        **No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

Defendant Save On SP, LLC ("**SaveOn**") writes to confirm that it has met and conferred

with Plaintiff Johnson & Johnson Health Care Systems, Inc. (with its affiliates, "**J&J**") about

SaveOn's requested search terms, as directed by Your Honor's May 10, 2024 Order, and that the

parties have resolved their outstanding disputes as to those terms. A summary of the search terms

that J&J has agreed to run is attached as Appendix 1.

*First*, J&J agreed to run SaveOn's TrialCard Statements of Work search term over Scott

White's and Blaine Penkowski's documents.

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                                    Page 2

*Second*, J&J identified the names of the predecessor programs to CarePath, as directed by

Your Honor. J&J agreed to run SaveOn's modified T&Cs search term, which includes the names

of these predecessor programs, over Kimberly Wortman's and Kathi Chapman's documents.

*Third*, J&J agreed to run a modified search term over Blaine Penkowski's documents and

include responsive documents hitting on that term in a production in or around May 10.

*Fourth*, the parties agreed to use the "w/50" connector for the EHB and NEHB search term.

SaveOn reserves the right to ask J&J to run additional search terms if warranted; J&J has

objected to SaveOn's reservation of rights.

SaveOn appreciates Your Honor's attention to this matter.

Respectfully submitted,

/s/ E. Evans Wohlforth, Jr.
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000
pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

2

Hon. Freda L. Wolfson                                                    Page 3

**Appendix 1**

| TrialCard Statement of Work Term | **Custodians:** Scott White, Blasine Penkowski<br><br>("TrialCard" OR "Trial Card" OR TC) **AND** ((statement* /5 work) OR "SOW*" OR contract*) **AND** (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR JCP OR "Savings Program" OR "WithMe" OR (with w/2 me)) **AND** (BALVERSA OR DARZALEX OR ERLEADA OR IMBRUVICA OR OPSUMIT OR PREZCOBIX OR REMICADE OR RYBREVANT OR SIMPONI OR STELARAOR OR SYMTUZA OR TRACLEER OR TREMFYA OR UPTRAVI OR VENTAVIS OR ZYTIGA OR EDURANT OR INTELENCE OR PONVORY). |
|---|---|
| T&Cs Term | **Custodians:** Kimberly Wortman, Kathi Chapman<br><br>(CarePath OR "Savings Program" OR "Rebate Program" OR "Access Program" OR "copay assistance" OR Instant Savings Card OR YOU&I OR RemiStart OR AccessOne OR Darzalex OR Imbruvica OR Opsumit OR Remicade OR Simponi OR SimponiOne OR Stelara OR Sylvant OR SylvantOne OR Tracleer OR Uptravi OR Ventavis OR Zytiga OR ZytigaOne OR Invokana OR Xarelto OR Olysio OR Risperdal OR Invega) **w/50** ((term* w/3 condition) OR "T&C" or "TNC" OR "other offer" OR "coupon*" OR "discount*" OR "prescription savings card*" OR "free trial") |
| Penkowski Working Group Term | **Custodian:** Blasine Penkowski<br><br>((brand* OR finance* OR SCG OR (strategic w/5 customer)) **w/25** ("working group" OR guidance OR respond* OR respons*) AND (accumulat* OR maximiz*) |

3

Hon. Freda L. Wolfson                                                        Page 4

| **EHB / NEHB Term** | **Custodians:** Quinton Kinne, Daphne Longbothum, William Shontz, L.D. Platt, John Hoffman, Alison Barklage |
| --- | --- |
| | ("essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*) **W/50** ("CAPa" OR CAPm" OR "adjustment program" OR accumulat* OR maximiz*) |

# Exhibit 3



April 23, 2024

Julia Long
(212) 336-2878

**VIA EMAIL**

Elizabeth H. Snow, Esq.
Selendy Gay, PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,***
> ***2:23-cv-02632 (JKS) (CLW)***

Dear Elizabeth:

        We write in response to SaveOnSP's April 4, 2024 letter and further to JJHCS's March 4, 2024 letter concerning the scope of JJHCS's production obligations for terms and conditions issues.

I.      **Documents Relating To "Meaning" And "Enforcement" Of The Terms And Conditions**

        As a threshold matter, you claim that Judge Wolfson directed that JJHCS to produce documents concerning the "[m]eaning" of the CarePath terms and conditions for the period April 1, 2016 to November 7, 2023. Tellingly, however, you cite to a section of Judge Wolfson's February 6 Order that addresses discovery from the pre-2016 period. *See* Apr. 4, 2024 Ltr. from E. Snow to J. Long at 1 (citing Dkt. No. 192 at 11). Nowhere does Judge Wolfson's February 6, 2024 Order direct further discovery on this point from the later time period. *See* Dkt. No. 192 at 10-14. As you know, JJHCS already has produced documents relating to terms and conditions from this later time period. To the extent additional documents concerning the meaning of JJHCS's terms and conditions hit on the parties' agreed-upon search terms, JJHCS will produce them. Additional search terms are neither warranted nor directed in Judge Wolfson's order.

        As to "enforcement" documents, SaveOnSP demands that JJHCS employ two search terms to identify documents "reflecting the company's enforcement instructions and policy" for the full April 1, 2016 to November 7, 2023 time period. Again, SaveOnSP's request squarely intersects with its February 20 motion for clarification and/or reconsideration of various topics, including SaveOnSP's pending request that JJHCS review "[d]ocuments [r]elating to [a]ll [e]ligibility [c]riteria for CarePath's General T&Cs." Feb. 20, 2024 Ltr. from E. Wohlforth to Hon. Wolfson at 3.

Elizabeth H. Snow, Esq.
April 23, 2024
Page 2

In the interest of compromise, JJHCS agrees to run the following term over the custodial files of Karen Lade, Lindsey Anderson, Spilios Asimakopoulos, John Franz, Evelyn Hall, Brandon Jeffcoat, John King, Jeremy Mann, Katie Mazuk, Silviya McCool, Hattie McKelvey, Adrienne Minecci, Lauren Pennington, William Robinson III, Nidhi Saxena, Heather Schoenly, Carol Scholz, and Jasmeet Singh for the time period April 1, 2016 to November 7, 2023. JJHCS also agrees to run the same term over Debbie Kenworthy's custodial files for the time period June 1, 2023 to November 7, 2023.

- (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") AND ((term* w/3 condition) OR T&C OR TNC OR "other offer") AND (maximiz* OR accumulat*)

JJHCS does not agree to run the following overbroad term over the same custodians and date range, but will agree to the below counterproposal. As SaveOnSP has acknowledged, "using an 'AND' instead of a proximity limiter . . . is problematic, for the reasons Judge Wolfson acknowledged at the last discovery conference." Apr. 18, 2024 Ltr. from A. Miner to K. Brisson at 1. There is no reason to employ different search logic here.

| SaveOnSP's Proposal | JJHCS's Proposal |
|---|---|
| (coupon* OR discount* OR "prescription savings card*" OR "free trial*") AND (accumulat* OR maximiz*) AND (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") AND (enforc* OR eligib* OR ineligib*)<br><br>21,795 documents (family inclusive) | ("coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*") /50 (accumulat* OR maximiz*) AND (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") AND ("enforc*" OR "eligib*" OR "ineligib*")<br><br>2,425 documents (family inclusive) |

SaveOnSP's remaining term would require JJHCS to review all documents in which the term "other offer" appeared in the same document as "PrudentRx" or "OptumRx" (including variations thereof).[1] In its April 4 letter, SaveOnSP claims that these documents are relevant because "J&J's documents show that it considers SaveOn, PrudentRx, and OptumRx to offer similar services" and "J&J even considered suing all of these companies." Apr. 4, 2024 Ltr. from E. Snow to J. Long at 3.[2] This makes no sense and is wholly untethered from Judge Wolfson's February 6 Order. Far from seeking documents limited to JJHCS enforcement policies, SaveOnSP's proposed search string seeks documents about separate companies unrelated to

---

[1] SaveOnSP's requested term is: "other offer" AND ("Prudent" OR "Prudent Rx" OR "PrudentRx" OR "Optum" OR "Optum Rx" OR "OptumRx").

[2] JJHCS does not concede SaveOnSP inaccurate descriptions of the cited documents.

Elizabeth H. Snow, Esq.
April 23, 2024
Page 3

SaveOnSP that are not even part of this lawsuit and which SaveOnSP never requested at any point
in the eleven months the parties litigated this issue. JJHCS declines to run these terms.

Finally, despite JJHCS's detailed explanation in its March 4, 2024 letter, SaveOnSP
continues to insist on a production of "documents sufficient to show *the instances*" in which
JJHCS "investigated, enforced, or contemplated enforcing" various CarePath eligibility standards.
Apr. 4, 2024 Ltr. from E. Snow to J. Long at 2; Feb. 21, 2024 Ltr. from E. Snow to J. Long at 3
(same). For the reasons stated in JJHCS's February 8, 15 and March 4 letters, this request is
inconsistent with Judge Wolfson's order, and JJHCS will not produce "documents sufficient to
show the instances" in which JJHCS:

- "investigated, enforced, or contemplated enforcing CarePath eligibility standards,
  including without limitation for patients on Medicare, Medicaid or other government-
  provided insurance, or patients ineligible due to their age";

- "investigated, enforced, or contemplated enforcing the General T&Cs for purported
  violations of (1) the 'other offer' provision on any basis; (2) the 'other offer' provision as
  to entities J&J considered 'maximizers' or 'accumulators' (including without limitation
  OptumRx and PrudentRx); and (3) the 'other offer' provision as to SaveOn"; and

- "investigated, enforced or contemplated enforcing the General T&Cs for violation of any
  of the 'other offer,' 'coupon,' 'discount,' 'prescription savings card' and 'free trial'
  provisions."

*See* Feb. 15, 2024 Ltr. from J. Greenbaum to Hon. Wolfson at 5; Feb. 8, 2024 Ltr. from J. Long to
E. Snow at 2-3. JJHCS again offers to meet and confer with SaveOnSP, as we have offered to do
on several occasions.

**II.     Stelara and Tremfya Terms and Conditions**

SaveOnSP demands JJHCS run the following term for over the custodial files of
Lindsey Anderson, Spilios Asimakopoulos, John Franz, Evelyn Hall, Brandon Jeffcoat, John King,
Jeremy Mann, Katie Mazuk, Silviya McCool, Hattie McKelvey, Adrienne Minecci, Lauren
Pennington, William Robinson III, Nidhi Saxena, Heather Schoenly, Carol Scholz, and Jasmeet
Singh, Scott White, Blasine Penkowski, Savaria Harris, Jennifer DeCamara and Debbie
Kenworthy for the time period **April 1, 2016 to November 7, 2023**. We can only assume that this
was a typographical error. In SaveOnSP's prior correspondence, SaveOnSP requested a nearly
identical term for the shorter time period of **January 1, 2021 to November 7, 2023**, which is the
time period relevant to "'why Plaintiff decided to amend the [Stelara and Tremfya] terms in
2022.'" Feb. 21, 2024 Ltr. from E. Snow to J. Long at 3-4.

- (revis* OR rewrit* OR chang* OR maximizer* OR accumulator*) AND ((term* OR
  condition*) w/50 (Stelara OR Tremfya) w/50 (CarePath OR "Care Path" OR CP OR JCP
  OR WithMe))

Elizabeth H. Snow, Esq.
April 23, 2024
Page 4

Subject to SaveOnSP's agreement that this term should be run for the relevant period January 1, 2021 to November 7, 2023, JJHCS agrees to run this term over the custodial files of Lindsey Anderson, Spilios Asimakopoulos, John Franz, Evelyn Hall, Brandon Jeffcoat, John King, Jeremy Mann, Katie Mazuk, Silviya McCool, Hattie McKelvey, Adrienne Minecci, Lauren Pennington, William Robinson III, Nidhi Saxena, Heather Schoenly, Carol Scholz, and Jasmeet Singh. JJHCS also agrees to run this term over the custodial files of Debbie Kenworthy for the time period June 1, 2023 to November 7, 2023. As to Ms. Harris and Ms. De Camara, consistent with the Court's February 6 and April 10 Orders, JJHCS agrees to run these search terms only over communications with third parties. *See* Dkt. No. 192 at 14 n.8.

JJHCS does not agree to run these terms for Scott White and Blasine Penkowski who as high-ranking executives are subject to "very limited" discovery[3] and for whom the parties have just negotiated search terms in the last month—both before and after the Court's April 3 conference.

*       *       *

We remain available to meet and confer.

Very truly yours,

*/s/ Julia Long*
Julia Long

---

[3] *See* Jan. 24 Tr. at 128:14-17.

15068449

# Exhibit 4



www.pbwt.com

April 26, 2024

Ian Eppler
(212) 336-2205

**VIA EMAIL**

Elizabeth H. Snow, Esq.
Selendy Gay, PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:    **SaveOnSP's Request Nos. 58-62, 68, 73, 82**
> *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
> **No. 2:22-cv-02632(JKS) (CLW)**

Dear Elizabeth:

        We write in response to your April 4, 2024 letter regarding SaveOnSP's Request Nos. 58-62, 68, 73, and 82 and in further to our letters of February 16 and February 28, 2024 on JJHCS's responses and objections to SaveOnSP's Fourth and Fifth Sets of Requests for Production.[1]

**I.    Request Nos. 68 and 82**

        SaveOnSP demands, in Request No. 68, that JJHCS search for and produce additional documents regarding work that Archbow did on behalf of JJHCS. Request No. 82 similarly demands a variety of documents and communications regarding work related to copay assistance programs undertaken by Avalere Health, a health care industry consulting firm, on behalf of JJHCS. To the extent these Requests call for a broader set of communications between JJHCS and Archbow that address issues unrelated to CAP or SaveOnSP, including communications related to the Best Price Rule, JJHCS objects on relevance grounds. *See* Feb. 22, 2024 Ltr. from I. Eppler to H. Miles, at 4; Feb. 8, 2024 Ltr. from I. Eppler to E. Snow, at 4.

        In the interest of compromise, and while reserving all rights, JJHCS would agree to run the following search terms over, and produce responsive, non-privileged documents from, the custodial files of Jeremy Mann, Heith Jeffcoat, Lauren Pennington, Adrienne Minecci, Silviya McCool, John Paul Franz, Lindsey Anderson, Alison Barklage, Spilios Asimakopoulos, Lynn

---

[1] We note SaveOnSP's nearly two-month lag in raising these issues since our meet and confer of February 8, 2024 and our further correspondence related to that conferral.

Elizabeth Snow, Esq.
April 26, 2024
Page 2

Hall, Nidhi Saxena, Katie Mazuk, Jasmeet Singh, Debbie Kenworthy, Silas Martin, L.D. Platt, Daphne Longbothum, Hattie McKelvey, Heather Schoenly, John King, John Hoffman, and William Robinson for the period of April 1, 2016 through November 7, 2023, subject to SaveOnSP's agreement that this resolves JJHCS's discovery obligations with respect to these requests.

- Archbow w/50 (accumulator* OR maximizer* OR mitigat* OR "NEHB" OR (variable /5 "EHB") OR "CAPa" OR "CAPm" OR "adjustment program")

- Archbow w/50 "other offer"

- Avalere w/50 (accumulator* OR maximizer* OR mitigat* OR "NEHB" OR (variable /5 "EHB") OR "CAPa" OR "CAPm" OR "adjustment program")

- Avalere w/50 "other offer"

## II.    Request No. 73

JJHCS maintains its objection to Request No. 73, which demands "Documents and Communications by or for Janssen market research regarding Accumulators or Maximizers" on the basis of both relevance and burden. As we explained in our February 28 letter, JJHCS has alleged that **SaveOnSP** has harmed members of the public in violation of GBL § 349 by, *inter alia*, "causing [patients] undue stress and confusion." Compl. ¶ 114. JJHCS will be able to prove this allegation at trial by demonstrating how **SaveOnSP** patients experienced undue stress and confusion at the hands of **SaveOnSP**, without reference to how patients may have hypothetically reacted to other accumulators or maximizers. It is irrelevant whether some patient at some time, may have "like[d] [a] compan[y] which provide[s] services similar to SaveOn." Feb. 28, 2024 Ltr. from I. Eppler to E. Snow (quoting Feb. 15, 2024 Ltr. from E. Snow to J. Long, at 6).

JJHCS also objects on the basis of relevance and burden to the extent that SaveOnSP demands that JJHCS to identify new custodians outside of JJHCS (in the "Janssen market research group") and run SaveOnSP's ten requested search terms over their custodial files. *See* Apr. 4, 2024 Ltr. from E. Snow to J. Long, at 3. As an initial matter, SaveOnSP has prematurely resorted to motion practice on the issue of non-JJHCS custodians, so further negotiation on the issue is not possible. But even if SaveOnSP had not improperly sought the Court's intervention with respect to non-JJHCS discovery, JJHCS would not identify "Janssen market research" custodians and produce their documents. As we have repeatedly explained throughout this litigation, "JJHCS is the sole relevant entity within Johnson & Johnson with respect to the development, marketing, and administration of CarePath." Feb. 13, 2024 Ltr. from C. Zielinski to E. Snow at 1. Consistent with this position, we have opposed expansion of discovery to non-JJHCS entities when SaveOnSP has repeatedly attempted to litigate this issue, and JJHCS has repeatedly prevailed. *Id.* Judge Wolfson's orders have not opened the door for SaveOnSP to relitigate this issue once again. Accordingly, JJHCS will not run SaveOnSP's requested search terms in response to Request No. 73.

Elizabeth Snow, Esq.
April 26, 2024
Page 3

### III.    Request Nos. 58 and 59

These Requests call for a bevy of documents and communications related to benefits investigations.  Request No. 58 demands "All documents or communications related to Benefits Investigations undertaken by JJHCS or any JJHCS Hub Entity that identified or attempted to identify whether a Person enrolled in CarePath was or could be a member of a health plan advised by SaveOnSP."  Request No. 59 demands "all documents or communications related to Benefits Investigations undertaken by JJHCS or any JJHCS Hub Entity that identified or attempted to identify whether a Person enrolled in CarePath was or could be a member of a Maximizer or Accumulator health plan."

Notwithstanding the overbreadth of these requests, JJHCS asked its vendor TrialCard to produce "███████████████████████████████████████████████████████
██████████████████████████████████████████████████  *See* JJHCS's Responses and Objections to SaveOnSP's Fourth Requests for Production at 6–7.  Yet now SaveOnSP comes back for more, claiming that Request Nos. 58 and 59 require JJHCS to produce a variety of additional documents.  Specifically, while "reserving rights to seek additional documents," SaveOnSP demands that JJHCS "prioritize the following narrowed categories of documents," including:

- Documents sufficient to show the budget given to TrialCard and RIS Rx, including but not limited to line items showing the costs associated with attempts to identify patients on plans advised by SaveOn;

- All documents and communications about J&J's engagement of Trial-Card and RIS Rx to identify or attempt to identify patients on SaveOn-advised plans, accumulators, and maximizers;

- JJHCS's instructions to its vendors, including but not limited to TrialCard and RIS Rx, about enforcement of the eligibility criteria in the CarePath T&Cs, and communications and documents regarding the content or priorities of those enforcement instructions;

- All documents and communications regarding what TrialCard and RIS Rx did for each patient they identified as on a maximizer, accumulator, or SaveOn-advised plan.

*See* Apr. 4, 2024 Ltr. from E. Snow to J. Long, at 5.

It is unclear how some of these new requests are even fairly subsumed within Requests No. 58 and 59: for instance, SaveOnSP does not explain how "the budget given to TrialCard and RIS RX" is encompassed by a request for documents related to benefits investigations.  *Id*.  Nor can SaveOnSP square its renewed requests with the fact that SaveOnSP has now repeatedly lost motions to compel budget-related documents from JJHCS.  *See* Apr. 25, 2024, at 5–6; Feb. 6, 2024 Order, at 19.

Elizabeth Snow, Esq.
April 26, 2024
Page 4

JJHCS is willing to offer a compromise proposal, subject to SaveOnSP's agreement that these search parameters would resolve JJHCS's discovery obligations with respect to these Requests (and not as an offer to SaveOnSP to pocket, to be added to its existing requests without spirit of good faith compromise). Under this proposal, JJHCS would run the following terms over the custodial files of Jeremy Mann, Heith Jeffcoat, Lauren Pennington, Adrienne Minecci, Silviya McCool, John Paul Franz, Lindsey Anderson, Alison Barklage, Spilios Asimakopoulos, Lynn Hall, Nidhi Saxena, Katie Mazuk, Jasmeet Singh, Silas Martin, L.D. Platt, Daphne Longbothum, Hattie McKelvey, Heather Schoenly, John King, William Robinson, Alison Barklage Quinton Kinne, William Shontz for the time period of April 1, 2016 to November 7, 2023.

- (RIS OR RISRx) AND ((Benefit* w/5 Investigation*) OR B.I. OR "BI's" OR BIs OR "B.I.'s")

- (RIS OR RISRx) AND "BI" (*case sensitive*)

JJHCS would also run the following amended terms and produce responsive, non-privileged documents, again subject to SaveOnSP's agreement that these search parameters would resolve JJHCS's discovery obligations with respect to these Requests:[2]

- (RIS OR RISRx) /50 (accumulator* OR maximizer*)[3]

- (RIS OR RISRx) /50 (identif*)[4]

**IV.    Request Nos. 61 and 62**

SaveOnSP's Requests 61 and 62 respectively demand "[a]ny patient information or data provided by Accredo or ESI to JJHCS or any JJHCS Hub Entity regarding Persons enrolled in CarePath" and "[d]ocuments sufficient to show any negotiations engaged in by JJHCS or any JJHCS Hub Entity to obtain data from ESI or Accredo regarding Persons enrolled in CarePath, including without limitation JJHCS's or any JJHCS Hub Entity's knowledge of the information

---

[2] These terms will be run with the same date range and custodian list as the other RISRx terms addressed in this letter. JJHCS reiterates its objection to running these terms over the documents of Scott White and Blasine Penkowski, pursuant to the apex doctrine.

[3] JJHCS proposes this term as an alternative to SaveOnSP's request for documents responsive to the following term: ("RIS" OR "RISRx" OR "TrialCard") AND (accumulator* OR maximizer* OR "CAPm" OR "CAPa" OR "adjustment program"). SaveOnSP's proposed term returns 24,783 documents (inclusive of families) and JJHCS objects to it as unduly burdensome.

[4] JJHCS proposes this term as an alternative to SaveOnSP's request for documents responsive to the following term: (RIS OR RISRx OR TrialCard) AND (budget* OR identif*). SaveOnSP's proposed term returns 53,511 documents and JJHCS objects to it as unduly burdensome.

Elizabeth Snow, Esq.
April 26, 2024
Page 5

available." As JJHCS previously explained, these Requests call for irrelevant information. *See* Jan. 2, 2024 Ltr. from J. Long to E. Snow.

JJHCS has also previously explained that it objects to producing data in response to Request No. 61 because it is vastly overbroad: by demanding "patient information or data provided by Accredo or ESI to JJHCS," it sweeps in a variety of information completely unrelated to the benefits investigation process. Jan. 2, 2024 Ltr. from J. Long to E. Snow, at 2–3. SaveOnSP contends that the data could have been used to "identify individuals on accumulator, maximizer, or SaveOn-advised plans." Apr. 4, 2024 Ltr. from E. Snow to J. Long, at 6. That reasoning, even if true, has no relationship to JJHCS's primary objection to Request 61: the overwhelming burden associated with its overbreadth. Moreover, as SaveOnSP will observe after JJHCS produces final, executed data-sharing agreements with Accredo and ESI by May 10, 2024, these agreements impose sharp limitations on JJHCS's ability to use the data it obtained. These use limitations undermine SaveOnSP's theory that JJHCS could have used data it received from ESI or Accredo in order to identify individuals enrolled in the SaveOnSP program.

As to Request 62, SaveOnSP claims that documents concerning "any negotiations between JJHCS and Accredo or ESI . . . are relevant to whether JJHCS "could have asked to purchase data from Accredo that would identify patients on accumulator, maximizer, or SaveOn-advised plans . . . as part of its mitigation efforts." Apr. 4, 2024 Ltr. from E. Snow to J. Long at 6. As we explained when we addressed this very Request months ago, "any documents concerning any underlying negotiations would not provide further relevant information." Jan. 2, 2024 Ltr. from J. Long to E. Snow at 3. JJHCS will produce final, executed data-sharing contracts by May 10, 2024. We invite you to meet and confer if, after reviewing those contracts, you still have questions.

Very truly yours,


Ian Eppler

# Exhibit 5

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza Newark,
New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for Plaintiff Johnson & Johnson Health Care
Systems Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.,<br><br>      Plaintiff,<br><br>  v.<br><br>SAVE ON SP, LLC,<br><br>      Defendant. | Civil Action No. 22-2632 (JMV) (CLW)<br><br>**PLAINTFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** |

## <u>GENERAL OBJECTIONS</u>

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing. It reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action. The following responses and objections are based upon information known at this time.

1.    JJHCS objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. The inadvertent production by JJHCS of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.    JJHCS objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response JJHCS makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

2

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9. JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10. JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11. JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12. JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

13. JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1. JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.

3

2.      JJHCS objects to the definition of the term "Janssen Drug" as irrelevant to the extent it purports to include drugs that are not covered by CarePath.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any Specialty Drug manufactured or sold by Janssen from any time."

3.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to include attorneys and accountants who may be outside of JJHCS's possession, custody, and control.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or] representatives" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and Janssen Research & Development LLC.

4.      JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and as irrelevant to the extent it purports to include entities other than those responsible for administering CarePath during the relevant Time Period.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to

4

act on behalf" of those entities. JJHCS further objects on the ground that the phrase

"administer, in whole or in part, CarePath" is vague and ambiguous. JJHCS further objects to

the extent the term is used to seek documents and communications in the possession of entities

other than JJHCS.

5.      JJHCS objects to the definition of the term "Lash Group" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of The Lash Group, Inc." JJHCS further objects to the extent the term is used to seek

documents and communications in the possession of entities other than JJHCS.

6.      JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of TrialCard Inc." JJHCS further objects to the extent the term is used to seek documents and

communications in the possession of entities other than JJHCS.

## **OBJECTIONS TO THE TIME PERIOD FOR SPECIFIC REQUESTS**

1.      JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome,

and not relevant to the subject matter of this Action to the extent they call for documents from

before January 1, 2017. Unless otherwise noted, JJHCS will only produce documents from

January 1, 2017 through the July 1, 2022 (the "Time Period").

5

## SPECIFIC RESPONSES AND OBJECTIONS

### Request No. 1

From January 1, 2009 through the present, Documents sufficient to show JJHCS's organizational structure, including organizational charts.

### Response to Request No. 1

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show the organizational structure of the JJHCS groups responsible for the administration of CarePath for the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

### Request No. 2

From January 1, 2009 through the present, Documents sufficient to show Janssen's organizational structure, including organizational charts.

### Response to Request No. 2

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other

than JJHCS.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 3**

From January 1, 2009 through the present, Documents sufficient to show the
organizational structure of each JJHCS Hub Entity.

**Response to Request No. 3**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the

JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other

than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub

Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 4**

From January 1, 2009 through the present, Documents sufficient to show the
organizational structure of any group or division within JJHCS, Janssen, or any JJHCS Hub
Entity involved in developing, managing, marketing, or administering CarePath or any other
copay assistance program offered for Janssen Drugs, and to identify their employees.

**Response to Request No. 4**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the

JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other

than JJHCS.  JJHCS further objects to this Request on the ground that the phrase "any other

copay assistance program offered for Janssen Drugs" is vague and ambiguous.  JJHCS further

objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in

JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to show the organizational structure of the JJHCS groups responsible for

the administration of CarePath for the relevant Time Period, to the extent such documents exist

and can be located after a reasonable search.  Otherwise, JJHCS will not search for or produce

documents responsive to this Request.

## Request No. 5

From January 1, 2009 through the present, Documents sufficient to show the
organizational structure of JJHCS's Health Economics, Access, and Outcome Groups and to
identify employees working in those groups.

## Response to Request No. 5

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the

JJHCS groups responsible for the administration of CarePath.  JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents outside of the relevant Time Period.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to show the organizational structure of the JJHCS groups responsible for

the administration of CarePath for the relevant Time Period, to the extent such documents exist

and can be located after a reasonable search.  Otherwise, JJHCS will not search for or produce

documents responsive to this Request.

**Request No. 6**

From January 1, 2009 through the present, Documents sufficient to show the
organizational structure of the drug product team for each Janssen Drug, and to identify
employees working on those teams.

**Response to Request No. 6**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the

JJHCS groups responsible for the administration of CarePath.  JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other

than JJHCS.  JJHCS further objects to this Request on the ground that the phrase "drug product

team" is vague and ambiguous.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 7**

From January 1, 2009 through the present, documents sufficient to identify all natural
persons with decisionmaking authority over the sale or marketing of Janssen Drugs.

**Response to Request No. 7**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the

JJHCS groups responsible for the administration of CarePath.  JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 8**

All Documents and Communications with or regarding SaveOnSP.

**Response to Request No. 8**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents related to any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period, to the extent such documents and communications exist and can be located after a reasonable search. However, notwithstanding the foregoing, JJHCS will not produce any documents or communications responsive to Request for Production No. 21, which seeks

documents that are irrelevant to any claim or defense in this Action. JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

**Request No. 9**

All Communications by JJHCS or Janssen with any Patient regarding SaveOnSP, including any Documents regarding those Communications.

**Response to Request No. 9**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 10**

All Documents and Communications regarding any presentation, document, or information regarding SaveOnSP referenced in the Complaint, including the "SaveOnSP IPBC Video" and the materials referenced in Complaint ¶¶ 82-88.

**Response to Request No. 10**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents related to any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a

broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

## Request No. 11

From January 1, 2009 through the present, all Documents and Communications regarding the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

## Response to Request No. 11

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request on the ground that the phrase "any other copay assistance program offered for Janssen Drugs" is vague and ambiguous.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to CarePath.

JJHCS will not search for or produce documents or communications responsive to this Request.  JJHCS is, however, willing to meet and confer to determine if this Request can be appropriately narrowed.

12

**Request No. 12**

From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) JJHCS's decision to revise any of its CarePath terms and conditions for any Janssen Drug; and (d) JJHCS's understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

**Response to Request No. 12**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the final CarePath terms and conditions at issue. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it calls for JJHCS's understanding of any particular term, as such a contention interrogatory would be premature at this point in the litigation pursuant to Local Rule 33.1(d).

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show all final versions of CarePath's terms and conditions for each Janssen Drug during the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 13**

From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen

13

Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

**Response to Request No. 13**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the final CarePath terms and conditions at issue. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show all final versions of CarePath's terms and conditions for each Janssen Drug during the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 14**

From January 1, 2015 through the present, all Documents and Communications regarding JJHCS's or any JJHCS Hub Entity's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

**Response to Request No. 14**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for views on a legal

14

question.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks "all" documents and communications

regarding a broad subject matter.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period.  JJHCS further objects to this Request to

the extent it seeks documents and communications in the possession of entities other than

JJHCS.  JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity"

for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents

and communications in its possession regarding SaveOnSP's designation of specialty drugs as

Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its

regulations during the relevant Time Period, to the extent such documents and communications

exist and can be located after a reasonable search.  However, notwithstanding the foregoing,

JJHCS will not produce any documents responsive to Request for Production No. 21, which is

irrelevant to any claim or defense in this Action.  JJHCS will not otherwise search for or produce

documents and communications responsive to this Request.

## Request No. 15

All Documents and Communications regarding SaveOnSP's communications with
Patients regarding CarePath, including Documents and Communications regarding JJHCS's
allegations in Complaint ¶¶ 60-67, 109.

## Response to Request No. 15

In addition to the foregoing general objections, JJHCS objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 16**

All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 72.

**Response to Request No. 16**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request on the ground that the phrase "SaveOnSP's provision of services to qualified high deductible or health savings account plans" is vague and ambiguous.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 17**.

All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

**Response to Request No. 17**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information about JJHCS's payment of funds to patients enrolled in qualified high deductible or health savings account plans as opposed to SaveOnSP's exploitation of a purported legal gray area with respect to those plans. JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 18**

All Documents and Communications regarding any allegedly misleading or confusing communications between SaveOnSP and Patients, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 13, 75-77, 85-88.

**Response to Request No. 18**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents related to any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it seeks "misleading or confusing communications," as those terms are vague and ambiguous.

17

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 19**

All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 19**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 20**

All Documents and Communications regarding any publicly distributed material (including, for example, articles, op-eds, white papers, and online postings) regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services, including Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect involvement with such material and JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect funding of the authors, publishers, or distributors of such material.

**Response to Request No. 20**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information about JJHCS's or any other entity's relationship or connection, if any, to materials about SaveOnSP's conduct,

18

as opposed to information about SaveOnSP's conduct itself. JJHCS further objects to this

Request as irrelevant to any claim or defense in this Action to the extent it seeks information

relating to Copay Accumulator Services or Copay Maximizer Services other than SaveOnSP's.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks "all" documents and communications regarding a

broad subject matter. JJHCS further objects on the ground that the phrases "direct or indirect

involvement" and "direct or indirect funding" are vague and ambiguous. JJHCS further objects

to this Request to the extent it seeks documents and communications in the possession of entities

other than JJHCS or that are publicly available and therefore equally available to SaveOnSP.

JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the

reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

## Request No. 21

All Documents and Communications regarding any advocacy to or communication with
any governmental or regulatory body regarding SaveOnSP, Copay Accumulator Services, or
Copay Maximizer Services.

## Response to Request No. 21

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks information about JJHCS's

advocacy to or communication with any governmental or regulatory body regarding SaveOnSP

as opposed to information about SaveOnSP's conduct itself. JJHCS further objects to this

Request as irrelevant to any claim or defense in this Action to the extent it seeks information

relating to Copay Accumulator Services or Copay Maximizer Services other than SaveOnSP's.

19

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 22**

All Documents and Communications regarding any alleged harm caused by SaveOnSP to any Patient by allegedly making their healthcare more expensive, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 22**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

20

**Request No. 23**

All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 23**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 24**

All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 24**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information about the financial viability of any Copay Assistance Program other than CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

21

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

**Request No. 25**

All Documents and Communications regarding any alleged harm caused by SaveOnSP to
JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint
¶¶ 110, 115.

**Response to Request No. 25**

In addition to the foregoing general objections, JJHCS objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of

entities other than JJHCS.  JJHCS further objects to this Request on the ground that the phrase

"any alleged harm" is vague and ambiguous.  For the purposes of its response, JJHCS shall

interpret the phrase "any alleged harm" to mean the damages identified by JJHCS relating to the

increased average amount of CarePath expenditures incurred for patients enrolled in the

SaveOnSP Program.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents

and communications in its possession relating to the extent of the harm SaveOnSP has caused

JJHCS during the relevant Time Period, including the extent to which SaveOnSP has caused

JJHCS to pay more in copay assistance than it otherwise would have, to the extent such

documents exist and can be located after a reasonable search.  However, notwithstanding the

foregoing, JJHCS will not produce any documents responsive to Request for Production No. 21,

which is irrelevant to any claim or defense in this Action.  JJHCS will not otherwise search for or

produce documents and communications responsive to this Request.

**Request No. 26**

All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

**Response to Request No. 26**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum" is vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 27**

All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

**Response to Request No. 27**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter and seeks "complete databases from which [] data was drawn." JJHCS further objects to this Request to

23

the extent it seeks documents and communications in the possession of entities other than

JJHCS.  JJHCS further objects to this Request as duplicative of Request No. 25.

Subject to the foregoing objections, JJHCS will produce the data that formed the basis for

the allegations in Complaint ¶¶ 92-100.  Otherwise, JJHCS will not search for or produce

documents and communications responsive to this Request.

**Request No. 28**

From January 1, 2009 through the present, for each Janssen Drug for each year,
Documents sufficient to show:

a.   all Patients receiving the Janssen Drug;

b.   the number of fills of the Janssen Drug received by each such Patient;

c.   the dosage of the Janssen Drug received by each such Patient for each fill;

d.   the projected number of Patients, average number of fills, and average dosage for
     the Janssen Drug;

e.   the cost to manufacture the Janssen Drug;

f.   the sales and marketing budget for the Janssen Drug;

g.   the price of the Janssen Drug;

h.   the revenue received by JJHCS from the Janssen Drug;

i.   all Patients enrolled in the CarePath program for the Janssen Drug;

j.   the dates on which each Patient was enrolled in CarePath;

k.   the amounts of copay assistance funds that JJHCS offered to each Patient enrolled
     in CarePath;

l.   the Janssen Drugs for which each Patient enrolled in CarePath received copay
     assistance;

m.   all copay assistance payments that JJHCS made to or on behalf each Patient
     enrolled in CarePath; and

24

**Response to Request No. 28**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP's misconduct, including information relating to Patient fills, the cost of manufacturing Janssen Drugs, the sales and marketing budgets for Janssen drugs, and pricing and revenue generated by Janssen Drugs. JJHCS further objects to this Request on the ground that the phrases "the projected number of Patients, average number of fills, and average dosage for the Janssen Drug," "the cost to manufacture the Janssen Drug," and "the price of the Janssen Drug" are vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a variety of extremely broad subject matters. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS will produce Janssen Transparency Reports for the relevant Time Period. Further, JJHCS is willing to meet and confer to discuss subparts (i) through (m). Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 29**

From January 1, 2009 through the present, for each Janssen Drug for each year, all Documents and Communications regarding:

    a.    JJHCS's determination of the amounts of copay assistance funds that JJHCS offered to Patients enrolled in CarePath, including the determination of the maximum program benefit per calendar year for the Janssen Drug;

b.     JJHCS's budget for CarePath, including the sales and marketing budget;

c.     JJHCS's actual and projected annual costs for CarePath;

d.     JJHCS's use of or accounting for unused CarePath funds;

e.     the impact of the Affordable Care Act on JJHCS's CarePath budget or funding, including the impact of laws and regulations regarding out-of-pocket maximums;

f.     JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath;

g.     the impact of CarePath on Janssen's sales of any Janssen Drug;

h.     the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

i.     JJHCS's or Janssen's actual and projected return on investment for CarePath; and

j.     any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by SaveOnSP.

**<u>Response to Request No. 29</u>**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP's misconduct, including information relating to the sales and marketing budget for CarePath, JJHCS's uses of or accounting for unused CarePath funds, the impact of the Affordable Care Act or other laws and regulations on CarePath's budget or funding, JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath, the impact of CarePath on Janssen's sales of any Janssen Drug, the impact of CarePath on JJHCS's or Janssen's gross to net calculations, JJHCS's or Janssen's actual and projected return on investment for CarePath, and the adherence rates of Patients enrolled in CarePath to Janssen Drugs.  JJHCS further objects to this Request on the ground that the phrases "the projected number of Patients, average number of fills, and average dosage for the Janssen Drug," "JJHCS's or Janssen's gross to net calculations," and "JJHCS's or Janssen's actual and projected return on investment for CarePath" are vague and ambiguous.  JJHCS further objects to this

26

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks "all" documents and communications regarding a variety of broad subject matters.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks documents and communications outside of the relevant

Time Period.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

   Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession for the relevant Time Period sufficient to show (1) how JJHCS determines the

amounts of copay assistance funds that JJHCS offers to Patients enrolled in CarePath,

(2) JJHCS's budget for copay assistance through CarePath, and (3) JJHCS's actual and projected

annual costs for CarePath, to the extent such documents exist and can be located after a

reasonable search.  Otherwise, JJHCS will not search for or produce documents responsive to

this Request.

**<u>Request No. 30</u>**

   From January 1, 2009 through the present, for each year for each Janssen Drug, all
Documents and Communications regarding the basis for Janssen's decision to raise or lower the
price of the Janssen Drug, including labor or manufacturing costs or the increase in efficacy of the
Janssen Drug.

**<u>Response to Request No. 30</u>**

   In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to

SaveOnSP's misconduct, including information related to the pricing of Janssen Drugs.  JJHCS

further objects to this Request on the ground that the phrases "the price of the Janssen Drug" and

"the increase in efficacy of the Janssen Drug" are vague and ambiguous.  JJHCS further objects

to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to

the extent it seeks "all" documents and communications regarding a broad subject matter.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks documents and communications outside of the relevant

Time Period.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents responsive to this Request.

## Request No. 31

All Documents and Communications regarding JJHCS's attempts to limit or eliminate the amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs, including Documents and Communications regarding JJHCS's attempts to limit or eliminate the availability of CarePath copay assistance funds available to Patients enrolled in health plans advised by SaveOnSP.

## Response to Request No. 31

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information beyond the

final CarePath terms and conditions at issue.  JJHCS further objects to this Request as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all"

documents and communications regarding a broad subject matter.  JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other

than JJHCS.

Subject to the foregoing objections, JJHCS will produce non-privileged documents and

communications in its possession relating to JJHCS's decision to limit or eliminate the amount of

copay assistance funds available to Patients using Stelara or Tremfya who are also enrolled in the

SaveOnSP Program, to the extent such documents and communications exist and can be located

after a reasonable search.  JJHCS will not otherwise search for or produce documents and

communications responsive to this Request.

**Request No. 32**

All Documents and Communications regarding any offer by JJHCS to provide to any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance funds available to a Patient.

**Response to Request No. 32**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information beyond the

extent to which SaveOnSP has caused JJHCS to pay more in copay assistance than it otherwise

would have.  JJHCS further objects to this Request on the ground that the phrases "CarePath

funds greater than the amounts that JJHCS generally offers to CarePath Patients" and "to waive

any limitation on or elimination of the amount of CarePath copay assistance funds available" are

vague and ambiguous.  JJHCS further objects to this Request as overbroad, unduly burdensome,

and not proportional to the needs of the case to the extent it seeks "all" documents and

communications regarding a broad subject matter.  JJHCS further objects to this Request to the

extent it seeks documents and communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents and communications responsive to this

Request.

**Request No. 33**

All Documents and Communications regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans.

**Response to Request No. 33**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to

SaveOnSP's misconduct.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter.  JJHCS further objects to this Request to

the extent it seeks documents and communications in the possession of entities other than JJHCS

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

## Request No. 34

From any time, all Documents and Communications regarding JJHCS's or Janssen's
negotiations or agreements regarding the potential use of SaveOnSP's services, or the services of
any Copay Maximizer Service or Copay Accumulator Service, for JJHCS's Employee Health
Plans, including JJHCS's abandonment of those negotiations or agreements.

## Response to Request No. 34

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about other

"services of Copay Maximizer Service[s] or Copay Accumulator Service[s]" and unrelated to

SaveOnSP's misconduct.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter.  JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents and communications outside of the relevant Time Period.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of

entities other than JJHCS.  JJHCS further objects to this Request to the extent it seeks

information that is exempt from discovery and protected from disclosure by a privilege

including, without limitation, the attorney-client privilege, the work-product doctrine, the joint

defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local

Rules of the Court, and relevant case law.

JJHCS will not search for or produce documents and communications responsive to this

Request.

**Request No. 35**

Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coordinators.

**Response to Request No. 35**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about

JJHCS "Hub Entities" or "CarePath Care Coordinators" that are not implicated in this litigation.

JJHCS further objects to this Request to the extent it seeks documents and communications in

the possession of entities other than JJHCS.  JJHCS further objects to this Request to the extent it

uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to identify the entities responsible for administering CarePath during the

relevant Time Period, to the extent such documents exist and can be located after a reasonable

search.  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 36**

From January 1, 2009 through the present, Documents sufficient to show the economic
terms of JJHCS's retention of or agreements with any JJHCS Hub Entity or CarePath Care
Coordinator regarding CarePath, including any assessment of the fair market value of those
services.

**Response to Request No. 36**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about

JJHCS "Hub Entities" or "CarePath Care Coordinators" that are not implicated in this litigation.

JJHCS further objects to this Request on the ground that "any assessment of the fair market value

of those services" is irrelevant.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period.  JJHCS further objects to this Request to

the extent it seeks documents and communications in the possession of entities other than

JJHCS.  JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity"

for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this

Request to the extent it seeks information that is exempt from discovery and protected from

disclosure by a privilege including, without limitation, the attorney-client privilege, the work-

product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of

Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce agreements in its possession

between JJHCS and the entities responsible for administering CarePath during the relevant Time

Period, to the extent such documents exist and can be located after a reasonable search.

Otherwise, JJHCS will not search for or produce documents and communications responsive to

this Request.

**Request No. 37**

From January 1, 2009 through the present, documents sufficient to show the percentage
of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub
Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs.

**Response to Request No. 37**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to

SaveOnSP's misconduct, including information about JJHCS's advertising or marketing of

CarePath or Janssen Drugs.  JJHCS further objects to this Request on the ground that the phrase

"Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub

Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs" is

vague and ambiguous.  JJHCS further objects to this Request as overbroad, unduly burdensome,

and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period.  JJHCS further objects to this Request to

the extent it seeks documents and communications in the possession of entities other than

JJHCS.  JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity"

for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents and communications responsive to this

Request.

## Request No. 38

From January 1, 2009 through the present, all Documents and Communications received
by JJHCS from any JJHCS Hub Entity or sent by JJHCS to any JJHCS Hub Entity regarding
SaveOnSP or CarePath.

## Response to Request No. 38

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about

CarePath without relation to SaveOnSP.  JJHCS further objects to this Request as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all"

documents and communications regarding a broad subject matter.  JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents and communications outside of the relevant Time Period.  JJHCS

further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons

stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request to the extent

33

it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 39**

All Documents and Communications received by JJHCS from any CarePath Care Coordinator regarding SaveOnSP.

**Response to Request No. 39**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 40**

All Communications by any JJHCS Hub Entity or CarePath Care Coordinator with any Patient regarding SaveOnSP, including any Documents regarding those Communications and talk tracks or scripts prepared for use during those Communications.

34

**Response to Request No. 40**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 41**

From January 1, 2015 through the present, all Documents and Communications relating to Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's return on investment for copay assistance dollars.

**Response to Request No. 41**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information about other "Copay Accumulator Services and Copay Accumulator Services" and information unrelated to SaveOnSP's misconduct. JJHCS further objects to this Request on the ground that the phrase "JJHCS's return on investment for copay assistance dollars" is vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the

35

needs of the case to the extent it seeks "all" documents and communications regarding a broad

subject matter.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks documents and communications

outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks

documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

## Request No. 42

From January 1, 2015 through the present, all Documents and Communications relating
to JJHCS's or any JJHCS Hub Entity's understanding of the terms "copay accumulator" and
"copay maximizer."

## Response to Request No. 42

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to

SaveOnSP's misconduct.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter.  JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents and communications outside of the relevant Time Period.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of

entities other than JJHCS.  JJHCS further objects to this Request to the extent it uses the term

"JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by a privilege including, without limitation, the attorney-client

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications in JJHCS's possession during the relevant Time Period relating to JJHCS's understanding of whether the terms "copay accumulator" or "copay maximizer" apply to SaveOnSP. However, notwithstanding the foregoing, JJHCS will not produce any documents or communications responsive to Request for Production No. 21, which is irrelevant to any claim or defense in this Action. JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

## Request No. 43

All Documents and Communications concerning non-medical switching by participants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

## Response to Request No. 43

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information about any other "Copay Accumulator Service" or "Copay Maximizer Service" and information unrelated to SaveOnSP's misconduct. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 44**

To the extent not requested above, Documents and Communications of any JJHCS Hub Entity or CarePath Care Coordinator regarding the topics of all Requests listed above.

**Response to Request No. 44**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "regarding the topics of all Requests listed above" is vague and ambiguous.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 45**

JJHCS's, Janssen's, any JJHCS Hub Entity's, and any CarePath Care Coordinator's document retention policies.

**Response to Request No. 45**

In addition to the foregoing general objections, JJHCS objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce its document retention policies for the relevant Time Period. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 46**

Complete data dictionaries for any data that You produce.

**Response to Request No. 46**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "data dictionaries for any data that You produce" is vague and ambiguous. JJHCS further objects to this Request to the extent that it purports to require the creation of any document or record in a format not kept by JJHCS or seeks to impose production obligations that exceed those required by the Rules of Federal Procedure, the Local Rules of the Court, this Court's Orders, or with any applicable agreement among the parties.

JJHCS will not search for or produce documents or communications responsive to this Request. JJHCS is, however, willing to meet and confer to determine if this Request can be appropriately narrowed.

**Request No. 47**

From any time, all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP, including in response to subpoenas served in this Action.

**Response to Request No. 47**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP" is vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject

39

matter.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks documents and communications

outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks

information that is exempt from discovery and protected from disclosure by a privilege

including, without limitation, the attorney-client privilege, the work-product doctrine, the joint

defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local

Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce documents obtained via third-

party subpoenas it serves in this Action.  Otherwise, JJHCS will not search for or produce

documents responsive to this Request.

## Request No. 48

To the extent not requested above, from any time, all Documents and Communications
upon which you may rely in this Action.

## Response to Request No. 48

In addition to the foregoing general objections, JJHCS objects to this Request on the

ground that the phrase "all Documents and Communications upon which you may rely in this

Action" is vague and ambiguous.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter.  JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents and communications outside of the relevant Time Period.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by a privilege including, without limitation, the attorney-client

40

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege,

the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents

and communications upon which it intends to rely at trial in compliance with the schedule set by

the Court.  Otherwise, JJHCS will not search for or produce documents responsive to this

Request.

Dated: December 12, 2022

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:      /s/Jeffrey J. Greenbaum
         JEFFREY J. GREENBAUM
         KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

# EXHIBIT 6
# CONFIDENTIAL – FILED UNDER SEAL

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

May 9, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

<div style="text-align:center">

Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
       **No. 2:22-cv-02632 (JKS) (CLW)**

</div>

Dear Judge Wolfson:

On behalf of Defendant Save On SP, LLC ("**SaveOn**"), we write in reply to Plaintiff John-

son & Johnson Health Care Systems, Inc.'s (with its affiliates, "**J&J**") opposition to SaveOn's

motion to compel J&J to produce documents related to the 2016 Best Price Rule and the 2023 Best

Price Rule.[1]

---

[1] SaveOn uses the same definitions as in its opening brief. *See* Apr. 18, 2024 Mot. ("Mot.").

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                              Page 2

"It is well recognized that the federal rules allow broad and liberal discovery." *Pacciti v. Macy's*, 193 F. 3d 766, 777 (3d Cir. 1999). "[C]ourts have construed [Federal Rule of Civil Procedure 26] liberally, creating a broad range for discovery which would encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *AdvanSix Inc. v. Allianz Glob. Risks US Ins. Co.*, No. 221-CV-07962-MCA-CLW, 2023 WL 179963, at *2 (D.N.J. Jan. 13, 2023) (Waldor, J.). "It is beyond dispute that Rule 26 should be construed in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage." Dkt. 192 at 5-6. Once the party seeking discovery shows "that the information sought is relevant to the subject matter of the action and may lead to admissible evidence, the party resisting discovery bears the burden of supporting its objections with clear explanations." *Id.* at 6 (citations and quotations omitted).

SaveOn has firmly established why the discovery it seeks is relevant.

The 2016 Best Price Rule, in effect throughout the relevant period of this case, required drug manufacturers like J&J to certify to the federal government that it sells its drugs to the government at the best price that it sells them to anyone else. Under that rule, J&J did not have to deduct copay assistance funds from its prices to government insurers as long as all those funds went exclusively to patients. J&J required internal certifications that all these funds went to patients, which strongly indicates that J&J certified the same thing to the government, either explicitly by stating as much or implicitly by reporting prices that did not account for copay assistance payments. Such certifications that patients receive all copay assistance funds would be directly contrary to J&J's assertions in this case that some of those funds went to SaveOn and its health plan clients, disproving those allegations and undercutting J&J's credibility. SaveOn thus seeks

2

Hon. Freda L. Wolfson                                                                    Page 3

the Quarterly Reports that J&J submitted to the government regarding its best prices and docu-

ments relating to the bases of J&J's representations.

The 2023 Best Price Rule, finalized at the end of 2020 and slated to go into effect in January

2023, would have required drug manufacturers like J&J to affirmatively "ensure" that no copay

assistance funds went to non-patients. This gave J&J a compelling financial incentive to investi-

gate if any such funds went to non-patients: if it did not ensure that this was so, it would have to

discount its prices to the government to account for those payments, costing it billions. This flipped

J&J's incentives from the 2016 Best Price Rule, under which J&J did not have to investigate where

the funds went but did have to account for any payments to non-patients if it learned about them.

Under this regime, J&J's incentive was to not investigate where the funds went; J&J's documents

show that it instituted a policy that it "was not allowed to know" if any funds went to so-called

accumulators or maximizers. Ex. 6 at -7510. This seemed to change with J&J's response to the

2023 Best Price Rule, which apparently included beginning to investigate if patients were on

SaveOn-advised plans and bringing this lawsuit. Documents about that response—along with doc-

uments relating to the 2016 Best Price Rule—could show that, before the 2023 Best Price Rule

was finalized, J&J affirmatively did not try to identify members of SaveOn-advised plans or to

enforce its terms and conditions against them, showing that J&J failed to mitigate its damages,

acquiesced to SaveOn's conduct, and did not believe that its terms applied to SaveOn's conduct.

SaveOn thus seeks documents concerning J&J's response to the 2023 Best Price Rule,

In opposition, J&J provides no valid basis to withhold this discovery. Contrary to J&J's

repeated assertions, SaveOn does not seek pricing data—SaveOn would agree that J&J can redact

the dollar amounts of drug prices from its Quarterly Reports. It is also not true that SaveOn con-

cedes that it takes copay assistance funds from J&J—SaveOn strongly disputes that it takes any of

Hon. Freda L. Wolfson                                                    Page 4

those funds. J&J asserts that SaveOn misreads the Best Price regulations, but even were this true

(it is not) it would be irrelevant—SaveOn does not contest J&J's compliance with the regulations

here; it seeks discovery of the facts of what J&J did in response to them. J&J asks Your Honor to

ignore documents showing what it did by offering competing interpretations of those materials,

but at best for J&J this simply raises a factual dispute about J&J's conduct, which SaveOn is enti-

tled to explore through discovery. J&J also tries asserting that it is already producing all relevant

documents, but in fact it continues to withhold the documents at issue and refuses to even identify

relevant custodians.

      The Special Master should grant SaveOn's motion.

## I.      SaveOn Does Not Seek Drug Prices

      Contrary to J&J's repeated assertions, Opp. 2, 5, 6, 7, 19, SaveOn does not seek in this

motion to discover the dollar amounts of J&J's drug prices. J&J asserts that SaveOn seeks this

data by asking for J&J's Quarterly Reports, which J&J says contain "every relevant price, discount,

and rebate" that it offers for the drugs at issue. Opp. 5-6; *see also id.* 6-7 (asserting RFP No. 79,

seeking Quarterly Reports, "on its face seeks pricing data"). To assuage this concern, while re-

serving all rights, SaveOn would agree that J&J can **redact** the dollar amounts of its drug prices,

discounts, and rebates from the versions of its Quarterly Reports that it produces in this case.[2]

      J&J then asserts that Your Honor previously ruled that the information that SaveOn seeks

is irrelevant. Opp. 6. Not so. In a prior motion, SaveOn sought "pricing data" to show the "true

---

[2] J&J asserts that all "Best Price documents are by definition all about the details of drug pricing."
Opp. 2. In fact, J&J has produced documents regarding the Best Price Rule that do not contain
pricing data. *See, e.g.*, Ex. 16 at 9 (JJHCS_00084277); Ex. 7 (JJHCS_00204199) at -4214 (April
7, 2022); Ex. 8 (JJHCS_00135354) at -5373 (December 15, 2021); Ex. 9 (JJHCS_00135950) at -
5970 (March 31, 2022); Ex. 10 (JJHCS_00214452) at -4469 (Mar. 2, 2022).

Hon. Freda L. Wolfson                                                                    Page 5

price[s]" and "net price[s]" of the drugs at issue, *see* Dkt. No. 150 at 7-8, which Your Honor denied

based on J&J's representation that it would not introduce evidence regarding its drug prices at trial.

Dkt. 192 at 24. Because SaveOn does not seek any pricing data in this motion, let alone "the very

same pricing information" that it previously sought, Opp. 6, that ruling has no bearing here.

　　　As explained below, the reality is that SaveOn seeks documents regarding J&J's response

to the Best Price Rule because they are relevant to issues in the case. J&J cannot use the false

specter of producing pricing data to withhold this information.

**II.    J&J Must Produce Documents Regarding Its Compliance with HHS's 2016 Best
       Price Rule**

　　　The 2016 Best Price Rule permits a drug manufacturer to exclude copay assistance funds

from its best price calculations "to the extent that manufacturer ensures the program benefits are

provided entirely to the patient and the pharmacy, agent, or other entity does not receive any price

concession." 42 C.F.R. § 447.505(c)(10). J&J's internal checklists, in which it affirms that "[t]he

full value of the [copay] assistance is passed on to the customer," strongly indicate that J&J repre-

sented the same facts to the federal government in its required Quarterly Reports, either explicitly

or implicitly by reporting drug prices that reflect copay assistance funds going only to patients.[3]

Mot. 3-4. Such representations would contradict J&J's allegations in this case—repeated even in

its opposition, Opp. 2, 6-7—that SaveOn takes a portion of those funds.

　　　SaveOn seeks discovery to explore this contradiction: (1) J&J's Best Price Quarterly Re-

ports for the drugs at issue and documents going to the basis of J&J's assertions to the government

---

[3] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████ *See, e.g.*, Ex. 7 (JJHCS_00204199) at -4214 (April
7, 2022); Ex. 8 (JJHCS_00135354) at -5373 (December 15, 2021); Ex. 10 (JJHCS_00214452) at
-4469 (Mar. 2, 2022).

Hon. Freda L. Wolfson                                                                Page 6

that all its copay assistance funds go to patients; and (2) documents going to the basis of J&J's

allegations in this case that some of its copay assistance funds go to SaveOn. Mot. 6-7. Documents

showing that J&J knew that SaveOn does **not** receive any portion of its copay assistance funds

would show that J&J's accusations are not true and undermine its credibility. *Id.*[4] Documents con-

firming that none of J&J's copay assistance funds flow to SaveOn, but rather to members of health

plans, most of which are subject to ERISA, would show that J&J's claims as to those plans are

preempted by ERISA. *See, e.g.*, *Pharm. Care Mgmt. Ass'n v. District of Columbia*, 613 F.3d 179,

185 (D.C. Cir. 2010) (recognizing ERISA preemption for state law claims that affect "the availa-

bility of funds for benefit payments"). And documents showing that J&J intentionally did not in-

vestigate if any of its copay assistance funds went to non-patients, to avoid having to report such

facts to HHS, would show that J&J failed to mitigate its purported damages caused by payments

to patients on SaveOn-advised plans. Mot. 10. J&J should produce this relevant information.

      J&J's scattered arguments to the contrary are meritless.

      *First*, J&J asserts that there is no need to test its allegations about who gets its copay assis-

tance funds because SaveOn purportedly "does not dispute that it makes money by taking copay

assistance funds for the benefit of itself and its partners." Opp. 7. In fact, SaveOn strongly disputes

this accusation. ███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████. *E.g.*, Ex. 30 at -220 (SOSP_0000214)

---

[4] Such evidence could potentially lead the Court to estop J&J from asserting that SaveOn takes
any of its copay assistance funds. *See, e.g.*, *McBurrows v. Verizon*, 2019 WL 6908014, at *10
(D.N.J. Dec. 19, 2019) (holding plaintiff "judicially estopped" from "asserting his accommodation
claim" for disability discrimination because his submitted social security application represented
that he was "not able to work"); *see generally Morton Intern. Inc. v. General Acc. Ins. Co. of
America*, 629 A. 2d 831, 876 (N.J. 1993) (recognizing "estoppel doctrine in a regulatory context").

Hon. Freda L. Wolfson                                                        Page 7

(███████████████████████████████). ████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████. Saving money is not the same thing as "taking"

it. By alleging that SaveOn "helps itself and its partners to … JJHCS's patient assistance funds,"

Opp. 7, J&J put at issue the questions of whether those funds ever flow to SaveOn and whether

J&J knows that they do not. The discovery that SaveOn seeks is relevant to that disputed issue.

      *Second*, J&J asserts that its Best Price representations under the 2016 Best Price Rule are

irrelevant because it "had always understood" that the rule did not require drug manufacturers to

report whether copay assistance funds were going to third parties "so long as they intended that all

copay assistance go to patients." Opp. 9. This was the litigation position of the collective repre-

senting pharmaceutical companies in challenging the 2023 Best Price Rule, but ████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████ Ex. 6 at -7510 (emphasis added).[5] ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████ Ex. 7 (JJHCS_00204199) at -4213. ███████████████████████████████

████████████████████████████████████████████████████████████████████

───────────────────

[5] ████████████████████████████████████████████████████████████

███████████████████. Opp. 12 n.3. ███████████████████████████████

████████████████████████████████ Ex. 6 at -7510 (JJHCS_00047500).

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████.

Hon. Freda L. Wolfson                                                                          Page 8

███████████████████████ At the very least, this is a disputed issue, and discovery is required

to determine how J&J interpreted the rule and what it reported.[6]

    *Third*, J&J says that its intent-based reading of the 2016 Best Price Rule was validated in

*Pharmaceutical Research & Manufacturers of America v. Becerra* ("*PhRMA*"). Opp. 8-9; *see also*

*id.* 12 n.3. This is a distraction. The question in this discovery motion is not legal—which of two

competing interpretations of the 2016 Best Price Rule is correct—but factual—how did J&J inter-

pret the 2016 Best Price Rule in practice, and what did it report to HHS in response to that rule.

*PhRMA*'s ruling in May 2022 could not have retroactively changed those facts, and ██████████

█████████████████████████████████████████████████████████████████████████████████████

*See* Ex. 6 (JJHCS_00047500) at -7510. SaveOn seeks these documents not to challenge J&J's

legal compliance with the 2016 Best Price Rule in this litigation but to discover the facts of what

J&J knew and what it represented about them.[7]

_____

[6] Even if the Special Master were to agree with J&J's unsupported assertion that that 2016 Best
Price Rule set an intent-based standard, and to further agree with J&J's counterfactual assertion
that it always understood that this was the standard, Your Honor should still grant the motion.
If J&J learned that any copay assistance funds went to non-patients, it would have had to stop
those payments so it could act consistently with its intent. SaveOn is entitled to learn what J&J
knew about where its payments went and what it represented to the government about them.

[7] Even if the legal conclusions of the *PhRMA* case were relevant (they are not), J&J fails to show
that *PhRMA* sustained the intent-based interpretation of the 2016 Best Price Rule that it offers in
its opposition. Plaintiffs in *PhRMA* challenged the 2023 Best Price Rule, not the 2016 rule.
*PhRMA*, 2022 WL 1551924, at *5 (D.D.C. May 17, 2022). In ruling on standing, as J&J notes,
Opp. 8-9, the court held that the 2023 Best Price Rule's requirement that drug manufacturers "en-
sure" that copay assistance funds go only to patients was a change from the 2016 Best Price Rule.
*Id.* at 4. The court did ***not*** say that the 2016 Best Price Rule excused drug manufacturers from
reporting if they knew that some funds went to non-patients or allowed them to conceal such in-
formation simply because they *intended* that all the funds go to patients. *See id.*

On the merits, the court enjoined the 2023 Best Price Rule, not because copay assistance funds are
"intended to help patients" (as J&J asserts by citing the plaintiffs' own briefing, Opp. 9-10), but

*Fourth*, J&J asks the Special Master to disregard its internal checklists requiring certification that all copay assistance funds go to patients.[8] It asserts that these documents ███████████

████████████████████████████████████████████████████████████████████████████

Opp. 11, ███████████████████████████████████████████████████. Ex. 7

(JJHCS_00204199) at -4214 (████████████████████████████████████████████

███████████████") . Once again, at best, J&J has established that the parties have competing factual

interpretations of these relevant documents, showing that SaveOn is entitled to discovery into

them. *See In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. 527, 528 (D.N.J. 2015) (Waldor, J.) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper

litigation." (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). J&J also asserts that it did not



primarily because the court read the underlying statute as not requiring drug manufacturers to account for payments to patients at all, as it believed that they were not "eligible entities." *PhRMA*, 2022 WL 1551924, at *6. The court did ***not*** say that drug manufacturers' intent plays any role in their reporting obligations. *See id.* Even if it applied to the 2016 Best Price Rule, moreover, that non-binding ruling from one district court is not a dispositive interpretation of that rule; HHS's position remains "in essence, that the best price calculation must take account of a price made available *from* the manufacturer *to* the commercial health plan *through* an insured patient"—including copay assistance funds. *Id.* at 5 (original emphases). And even were this a binding interpretation of the 2016 Best Price Rule, that rule would still require J&J to report any payments that it knew went to ESI—which is an "eligible entity"—and J&J alleges here that ESI received a portion of those funds. Compl. ¶ 68. In any case, the Special Master should not indulge J&J's demand to resolve these complex legal questions in ruling on this discovery motion; at a minimum, there are disputed factual questions here that underscore the importance of the discovery that SaveOn seeks.

8 Ex. 7 (JJHCS_00204199) at -4214 (███████████████████████████████████████
████████████████████ Ex. 8 (JJHCS_00135354) at -5373 (███████████████████████
████████████████); Ex. 10 (JJHCS_00214452) at -4469 (████████████████████████
████████████████████████). ███████████████████
███████████████████████████ Opp. 11 (citing Ex. 9) but ███████████████
█████████████████████████████████████████. *See, e.g.*,
Ex. 31 at -7538 (JJHCS_00137524) (████████████████████████████████████████
███████████); Ex. 32 at -7559 (JJHCS_00137545) (███████████████████████████
██████████████████.

Hon. Freda L. Wolfson                                                          Page 10

submit these checklists to the government, Opp. 11, but this misses the point: ███████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████ Ex. 7 (JJHCS_00204199)

at -4213,[9] ████████████████████████████████████████████████████████████

████████████████. Discovery is required to determine what J&J said to the government and its

bases for doing so.

    *Fifth*, J&J claims that it did not make the representations to the government that SaveOn

posits that it made. Opp. 12. But J&J then says, carefully, that it did not submit anything to the

government that "expressly states" that all its copay assistance funds go to patients. *Id.* Even were

this true, J&J could have represented that fact to the government ***implicitly***. The 2016 Best Price

Rule required J&J to account for any payments going to non-patients in calculating the prices that

it submitted to HHS. If J&J calculated those prices as if all funds went to patients, then it implicitly

represented that no funds went to non-patients. This implicit representation would contradict its

allegations in this case that some of those funds went to SaveOn, ESI, and their health plan clients.

    *Sixth*, J&J says that it is producing documents related to the CAP Program, Opp. 13-18,

but this production would not capture the requested documents regarding the 2016 Best Price Rule.

To start with, this production excludes the Quarterly Reports, which J&J admits that it withholds.

---

[9] *Compare* Ex. 7 (JJHCS_00204199) at -4214 (█████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████ *with* 42 C.F.R. § 447.505(c)(10) (2016 Best Price Rule, permitting manu-
facturers to exclude copay assistance funds from their best price calculations "to the extent that the
program benefits are provided entirely to the patient and the pharmacy, agent, or other entity does
not receive any price concession").

Hon. Freda L. Wolfson                                                                    Page 11

*Id.* at 17-18. Also—critically—J&J's production excludes custodians involved with J&J's Best

Price reports, who are most likely to have documents about the bases for those submissions, and

whom J&J refuses to identify.[10] The production also excludes documents from before the begin-

ning of the CAP Program in early 2022, omitting years' worth of documents about J&J's repre-

sentations to, and relevant communications with, the government and J&J's evaluations of SaveOn

and similar entities. The search terms that J&J is using regarding CAP would not capture docu-

ments on Best Price in the five years before the CAP Program existed. J&J must identify the rele-

vant custodians and must use reasonable search parameters to search their files for the documents

at issue.[11]

      *Finally*, J&J briefly asserts that SaveOn's document requests do not cover the documents

that it seeks regarding the 2016 Best Price Rule. Opp. 17-18. In fact, they do. SaveOn's RFP No. 79

squarely asks for J&J's Quarterly Reports. Ex. 13 at 12 (SaveOn's Sixth Set of RFPs). SaveOn's

RFP No. 70 seeks all documents and communications regarding copay assistance funds counting

towards the calculation of best price, Ex. 15 at 11, which easily encompasses the narrower set of

documents and communications that SaveOne seeks here about those calculations. Mot. 6-7. To

the extent that any of these documents refer directly to SaveOn, or refer to it indirectly by using

terms like "maximizer" or "accumulator," *see, e.g.*, Apr. 10, 2024 Order at 2, they are also covered

---

[10] ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████. Ex. 31 at -541 (JJHCS_00137524); Ex. 32 at -562
(JJHCS_00137545).

[11] SaveOn proposes a single targeted search term to capture these documents: ("HHS" OR (Health
/3 "Human Services") OR "CMS" OR ".gov") AND ("Best Price" OR "BP") AND (accumulat*
OR maximiz* OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR
SOSP). Mot. 7. Each document must on its face include a term regarding the relevant agencies;
best price; and SaveOn, accumulators, or maximizers.

by SaveOn's RFP No. 8, which seeks all documents relating to SaveOn, Ex. 14 at 12 (SaveOn's

First Set of RFPs). In addition to being wrong, J&J's technical arguments are pointless—even if

SaveOn's current requests did not cover some portion of the documents at issue, Your Honor could

confirm that they are relevant and SaveOn could seek them in a new request.

### III.    J&J Must Produce Documents Regarding Its Response to HHS's 2023 Best Price Rule

Where the 2016 Best Price Rule required drug manufacturers to report the state of their

knowledge regarding whether any of their copay assistance funds were going to non-patients,

42 C.F.R. § 447.505(c)(10), the 2023 Best Price Rule stated that they would have to "ensure[]"

that this was so, 85 Fed. Reg. 87049. That is, drug manufacturers could no longer claim that they

were permitted to be willfully blind to where their copay assistance funds were going; they would

have to affirmatively make sure, for example, that those funds did not go to patients on "accumu-

lator adjustment programs." 85 Fed. Reg. 87050. Under the new rule, ████████████████

█████ █████████ █████ █████ █ █████████ █████████, *see, e.g.*, Ex. 6 at -510

(JJHCS_00047500) (████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████),

potentially costing it billions. The 2023 Best Price Rule, announced on December 31, 2021, gave

drug manufacturers until January 1, 2023, to implement this approach. 85 Fed. Reg. 87057. As J&J

acknowledges, the 2023 Best Price rule was "significant" and "controversial." Opp. 8. █████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████. Mot. 8-9 (citing Exs. 16-24).

SaveOn seeks limited additional discovery on this topic: It asks that J&J identify individuals with knowledge of J&J's response to the proposed 2023 Best Price Rule and run a single search term across their files.[12] Documents regarding J&J's response to the rule are relevant to SaveOn's affirmative defenses of mitigation, laches, and acquiescence, Mot. 10—J&J's reaction to the 2023 Best Price Rule, which would have no longer allowed drug manufacturers to be willfully blind of copay assistance funds flowing to non-patients, could show that J&J previously had a compelling financial incentive not to investigate whether patients were on SaveOn-advised plans, Ex. 16 (JJHCS_00084277) at -285 (█████████████████████████), and that it followed that incentive, failing to mitigate its purported damages and acquiescing to SaveOn's conduct. The documents are also relevant to J&J's understanding of the "other offer" provision underlying its tortious inference claim, which apparently changed along with its reaction to the 2023 Best Price Rule. Mot. 9.[13]

J&J's arguments resisting this discovery are meritless.

---

[12] ("copay" OR "co-pay" or fund* OR manufact*) /20 ("best price" or "BP") /20 (accumulat* OR maximiz* OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP).

[13] ████████████████████████████████████████████████████████████████████████████████████
███████████████████████. Opp. 15 (citing J&J Ex. 1 (JJHCS_00224591)). This is not evidence of what J&J knew about where the funds actually went. Nor is it evidence that J&J believed that its "other offer" provision applied to SaveOn's services before the 2023 Best Price Rule came along. Discovery is required on both topics. ████████████████████████████████
█████████████████████████████████ J&J Ex. 1 at -608, ███████████████████████████
████████████████ *id.* at -613, contradicting J&J's allegations that "JJHCS funds copay assistance programs like CarePath to ease the burden on patients" Amend. Compl. ¶ 8, and help them "defray their copay costs and more easily afford their life-saving and life-improving therapies, *id.* ¶ 6.

*First*, J&J tries to dismiss the notion that "a never-effective 2023 Best Price Rule may have influenced [J&J's] behavior regarding [SaveOn]." Opp. 13-14. The rule's influence is straightforward. Because the 2016 Best Price Rule required drug manufacturers to report if copay assistance funds went to non-patients but did not require them to investigate whether that was the case, drug manufacturers had an incentive to remain willfully blind to where their funds went. Mot. 8; *see also* Ex. 6 (JJHCS_00047500) at -510. In the 2023 Best Price Rule, HHS eliminated this incentive. It stated that, starting in 2023, drug manufacturers would have an affirmative duty to investigate where their funds went—they would have to "ensure[]" that the full value of copay assistance went to patients. 85 Fed. Reg. 87049. For seventeen months, from when the 2023 Best Price Rule was promulgated on December 31, 2020 until it was enjoined on May 17, 2022, *see PhRMA*, 2022 WL 1551924 at *3, this was the law scheduled to take effect in 2023.[14] It is highly likely J&J reacted to this rule by preparing to implement it.

*Second*, J&J asserts that it is "fanciful" to suggest that its reaction to 2023 Best Price Rule motivated this lawsuit because the purported "damages" that SaveOn caused it were motive enough. Mot. 14. This is exactly SaveOn's point. J&J knew about SaveOn starting in at least 2017. Dkt. 192 at 14. If J&J believed that SaveOn was improperly increasing its copay assistance payments, then J&J had a financial incentive to sue SaveOn years before it did. But it did not. A highly plausible reason why it did not is that J&J had an even stronger financial incentive under the

---

[14] The 2023 Best Price Rule was not a "regulatory proposal." Opp. 14. It was a regulation that became the law on December 31, 2020. 85 Fed. Reg. 87000, 87048 through 87055, and 87102 through 87103. The regulation provided that this law would not become effective until 2023, *id.* at 87053, but the regulation itself was final, *id.* at 87057 ("[W]e are finalizing the proposed rule[.]"). The regulation was originally proposed on June 19, 2020, *id.* at 87000, went through the required notice-and-comment period, and was made final on December 31, 2020. *Id.* at 87057.

Hon. Freda L. Wolfson                                                                    Page 15

2016 Best Price Rule to not investigate whether its copay assistance payments were flowing to SaveOn (or to other non-patients).

Conversely, when it appeared that the 2023 Best Price Rule would eliminate this incentive and give J&J a new incentive to ensure that its copay assistance funds did not flow to so-called "accumulators," 85 Fed. Reg. 87000, 87054, it is highly plausible that J&J reacted in part by bringing this suit against SaveOn, which it internally referred to as an accumulator, Dkt. 166 at 3-4, to try and stop such payments. J&J has produced documents showing that this was likely the case. Mot. 8-9.[15]

*Third*, J&J argues that SaveOn cannot mount its laches affirmative defense because J&J purportedly brought its claims within the relevant statutes of limitations. Opp. 18-19. The Special Master need not reach this argument, as the requested documents are relevant to SaveOn's mitigation and acquiescence defenses. This merits argument is also inappropriate at the discovery stage: J&J could have moved to strike SaveOn's laches defense, *see Eagle View Techs., Inc. v. Xactware Sols., Inc.,* 325 F.R.D. 90, 95 (D.N.J. 2018), but did not, and SaveOn is entitled to discovery relevant to that defense. J&J also misstates the law: As the New Jersey Supreme Court case that J&J cites explains, "if a suit in equity raises claims as to which there is an applicable statute of limitations, there is nevertheless a role for the equitable doctrine of laches," *Fox v. Millman*, 210 N.J. 401, 419 (2012), and J&J here seeks the equitable remedy of an injunction, Compl. at 41 ¶ C; Am. Compl. 206 ¶ C.

--------

[15] J&J also suggests that the 2023 Best Price Rule could not have been a motive in bringing this case because it continued the suit, and its CAP Program, after that rule was enjoined. Opp. 14. Of course, J&J could have decided to continue the suit and the program for other reasons, such as deciding that it would be more profitable to reduce its overall level of copay assistance spending. Discovery is required to determine what actually happened.

Hon. Freda L. Wolfson                                                    Page 16

*Fourth*, J&J asserts that it is already producing documents related to the CAP Program, which it says should capture documents "address[ing] both a Best Price-related issue and CAP or other JJHCS efforts to mitigate harm." Opp. 15 (emphasis removed). The problem with this argument is ***custodians***. J&J asks Your Honor to assume that its current custodians are the only ones who would have information regarding J&J's reaction to the 2023 Best Price Rule, but ██████

██████████████████████████████████████████████. *See, e.g.*, Ex. 24 (███████████

████████████████████████████████████████); Ex. 26 (████████

███████████████████████████████████████████████████████████

████████████████████████████). J&J needs to identify the relevant custodians and apply SaveOn's proposed search term to their files.

*Finally*, J&J asserts that SaveOn's RFPs do not cover documents concerning the factual bases of its statements that SaveOn takes copay assistance funds, Opp. 16-17, but they do. RFP No. 8, for example, seeks all documents regarding SaveOn, which covers the documents at issue, and RFP No. 70 specifically asks for documents regarding "the anticipated impact of the 2023 Best Price Rule on JJHCS," Ex. 15 at 11-12 (Nov. 17, 2023 SaveOn's Fifth Set of RFPs). J&J asserts that it "agreed long ago," Opp. 16, to produce documents from twenty custodians in response to RFP No. 8, but SaveOn never agreed that J&J could limit its production to these custodians. To the contrary, when SaveOn has discovered that J&J withheld relevant documents— *e.g.*, failing to disclose its CAP Program, failing to disclose its Benefits Investigations, failing to disclose its predecessor programs in which it drafted the "other offer" provision—or that J&J has failed to designate relevant individuals as custodians—*e.g.*, Scott White, Blasine Penkowski, Karen Lade, Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, L.D. Platt, Alison Barklage, —SaveOn has sought and received additional discovery. Dkt. 173 at 2-3 (CAP program),

Hon. Freda L. Wolfson                                                     Page 17

at 2 (Kinne, Longbothum, Shontz, Hoffman, Platt, and Barklage); 192 at 11-12 ("other offer"),

at 12-13 (benefits investigations), at 27-29 (White, Penkowski, and Lade). J&J should provide the

requested discovery here on its reaction to the 2023 Best Price Rule.

Respectfully submitted,


/s/ *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com


Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# EXHIBITS 30-32
# CONFIDENTIAL – FILED UNDER SEAL