Discovery Material is disclosed to in-house counsel, they have been disclosed to the opposing party and have signed a copy of Exhibit A. A party may substitute which in-house counsel may access Attorneys' Eyes Only materials pursuant to this Paragraph, provided that such substitution is disclosed to the opposing party prior to sharing any Attorneys' Eyes Only Discovery Material with the substituted counsel and the total number of in-house counsel does not exceed four. The parties may agree in writing that Discovery Material produced and marked as Attorneys' Eyes Only may be disclosed to additional in-house attorneys.

8. Designated Material shall be used only by individuals permitted access to it under Paragraphs 5 and 7. Designated Material, copies thereof, and the information contained therein, shall not be disclosed in any manner to any other individual, until and unless (a) outside counsel for the party asserting confidentiality waives the claim of confidentiality, and, in the case of Discovery Materials marked "Confidential Health Information," there exists a valid authorization by the individual to whom it relates that complies with the requirements of 45 C.F.R. § 164.508(6); or (b) the Court orders such disclosure.

9. With respect to any depositions that involve a disclosure of Designated Material, the designating party shall have until fourteen (14) days after receipt of the final deposition transcript to inform all other parties which portions of the transcript, by page and line number, are to be designated as Confidential, Confidential Health Information, or Attorneys' Eyes Only, which period may be extended by agreement of the parties. During these fourteen (14) days, all deposition transcripts shall be treated as if they had been designated as Attorneys' Eyes Only in their entirety.

10. If counsel for a Receiving Party objects to the designation of all or a portion of Discovery Material as Confidential, Confidential Health Information, or Attorneys' Eyes Only, the following procedure shall apply:

   a. Counsel for the Receiving Party shall serve on the Producing Party a written objection to such designation, which shall describe with particularity by Bates number or deposition page and line number the documents or information in question and shall state the grounds for objection. Counsel for the Producing Party shall respond in writing to such objection within 14 days, and shall state with particularity the grounds for asserting that the Discovery Material is Confidential, Confidential Health Information, or Attorneys' Eyes Only. If no timely written response is made to the objection, the challenged designation will be deemed to be void. If the Producing Party makes a timely response to such objection asserting the propriety of the designation, counsel shall then confer in good faith in an effort to resolve the dispute. The challenged material shall be treated as it has been designated until the Producing Party agrees otherwise in writing or this Court issues an order rejecting the designation.

   b. If a dispute as to a Confidential, Confidential Health Information, or Attorneys' Eyes Only designation of a document or item of information cannot be resolved by agreement, the party challenging the designation shall present the dispute to the Court initially by telephone or letter, in accordance with Local Civil Rule

37.1(a)(1), before filing a formal motion for an order regarding the challenged designation. The document or information that is the subject of the filing shall be treated as originally designated pending resolution of the dispute.

11. Any document designated Confidential, Confidential Health Information, or Attorneys' Eyes Only by a party or non-party and which document is filed with the Court shall be filed under seal in accordance with Local Civil Rule 5.3. Court filings that refer to Designated Material, but do not disclose the substance of that Designated Material, need not be filed under seal. However, any Court filing that would disclose the substance of any Designated Material must be filed under seal or with redactions to the extent necessary to preserve confidentiality of that material in accordance with Local Civil Rule 5.3.

12. Each person who has access to Designated Material shall take reasonable precautions to prevent the unauthorized or inadvertent disclosure of such material.

13. To the extent consistent with applicable law, the inadvertent or unintentional disclosure of Discovery Material that should have been marked as Designated Materials, regardless of whether the information, document or thing was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a party's claim of confidentiality, either as to the specific information, document or thing disclosed or as to any other material or information concerning the same or related subject matter. Such inadvertent or unintentional disclosure may be rectified by notifying in writing counsel for all parties to whom the material was disclosed that the material should have been designated under this Discovery Confidentiality Order within a reasonable time after the Producing Party discovers that the material was not properly marked. Such notice shall constitute a designation of the Discovery Material as Confidential, Attorneys Eyes Only, or Confidential Health Information under this Discovery Confidentiality Order.

14. When the inadvertent or mistaken disclosure of any Discovery Material protected by privilege or work-product immunity is discovered by the Producing Party and brought to the attention of the Receiving Party, the Receiving Party's treatment of such material shall be in accordance with Federal Rule of Civil Procedure 26(b)(5)(B). If a Producing Party asserts an inadvertently produced document is privileged in its entirety, the Producing Party shall produce a privilege log with respect to any such inadvertently disclosed information within five (5) business days of receiving confirmation from the Receiving Party that the inadvertently disclosed information has been returned or destroyed. If a Producing Party asserts that only a portion of an inadvertently produced document is privileged, it must reproduce the document in redacted form within five (5) business days of receiving confirmation from the Receiving Party that the inadvertently disclosed information has been returned or destroyed. The Receiving Party may request additional information regarding the redacted document to the extent necessary to evaluate whether to challenge the claim of privilege. The Producing Party shall provide that information within five (5) business days of receiving such request. Such inadvertent or mistaken disclosure of such information, document or thing shall not by itself constitute a waiver by the Producing Party of any claims of privilege or work-product immunity. However, nothing herein restricts the right of the Receiving Party to challenge

the Producing Party's claim of privilege if appropriate within a reasonable time after receiving notice of the inadvertent or mistaken disclosure. If such challenge involves moving the Court for an order compelling production, said motion shall be filed under seal, and neither the fact of the inadvertent production nor the content of any privileged portion of the Discovery Material at issue shall be asserted as a grounds or basis for entering such an order.

15. If a non-party serves a Party in this action with a request, subpoena, or order ("demand") for disclosure of Designated Material of a Designating Party, the Party receiving the demand, if not prohibited under applicable law, shall promptly deliver a copy of the demand to the Designating Party's counsel, and shall notify the party who served the request that some or all of the materials sought by the request are subject to this Confidentiality Order. The Party receiving the demand shall not disclose any Designated Material prior to the date specified for disclosure, or prior to resolution of any dispute regarding production of such material in response to the request. In its sole discretion and at its own cost, the Designating Party may oppose or seek to limit the demand in any legal manner. The Party who received the demand shall not oppose or otherwise interfere with the Designating Party's actions.

16. No information that is in the public domain or which is already known by the receiving party through proper means or which is or becomes available to a party from a source other than the party asserting confidentiality, rightfully in possession of such information on a non-confidential basis, shall be deemed or considered to be Confidential material under this Discovery Confidentiality Order.

17. This Discovery Confidentiality Order shall not deprive any party of its right to object to discovery by any other party or on any otherwise permitted ground. This Discovery Confidentiality Order is being entered without prejudice to the right of any party to move the Court for modification or for relief from any of its terms.

18. This Discovery Confidentiality Order shall survive the termination of this action and shall remain in full force and effect unless modified by an Order of this Court or by the written stipulation of the parties filed with the Court.

19. Upon final conclusion of this litigation, within 30 days of the final disposition of the litigation, each party or other individual subject to the terms hereof shall promptly return to the origination source, or, upon permission of the producing party, destroy all originals and unmarked copies of documents and things containing Designated Material and to destroy, should such source so request, all copies of Designated Material that contain and/or constitute attorney work product as well as excerpts, summaries and digests revealing Designated Material; provided, however, that counsel may retain complete copies of all motions, filings, transcripts and pleadings including any exhibits attached thereto, and copies of attorney work product, including counsel's emails, for archival purposes, subject to the provisions of this Discovery Confidentiality Order. Any copies of transcripts and pleadings including exhibits attached thereto retained by counsel for archival purposes shall, to the extent that they that contain or reference Confidential Health Information, be maintained in accordance with the requirements of HIPAA and

45 C.F.R. § 164.504(e)(2)(ii)(J) imposed on Business Associates to preserve the privacy of those transcripts and pleadings. Counsel to all Receiving Parties must certify compliance with these requirements within 45 days of the final disposition of the litigation.

20.    To the extent a party requests the return of Designated material from the Court after the final conclusion of the litigation, including the exhaustion of all appeals therefrom and all related proceedings, the party shall file a motion seeking such relief.

21.    This Court shall retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

We consent to the form and entry of the within Order.


Dated: November 21, 2022

GIBBONS, PC.
One Gateway Center
Newark, New Jersey 07102-5310
973-596-4500

*/s/ E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr., Esq.

SELENDY GAY ELSBERG, PLLC
David Elsberg
Andrew R. Dunlap
Meredith Nelson
1290 Avenue of the Americas
New York, NY 10104
212-390-9000

*Attorneys for Defendant*
*Save On SP LLC*


Dated: November 21, 2022

SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

*/s/ Jeffrey J. Greenbaum*
Jeffrey J. Greenbaum, Esq.

PATTERSON BELKNAP WEBB
& TYLER LLP
Adeel A. Mangi
George LoBiondo
Harry Sandick
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*


**IT IS SO ORDERED**

Dated: November 22, 2022

s/ Cathy L. Waldor
Honorable Cathy L. Waldor, U.S.M.J.

9

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHNSON & JOHNSON
HEALTH CARE SYSTEMS INC.,          :
                                    Civil Action No. 22-2632 (JMV) (CLW)
                                   :
          Plaintiff,
                                   :   **ENDORSEMENT OF**
     vs.                           :   **PROTECTIVE ORDER**

SAVE ON SP, LLC,                   :

          Defendant.               :

## **EXHIBIT A**

I hereby attest that I understand that information or documents marked as Designated Material are provided to me subject to the Order dated _____, 2022 (the "Order"), in the above-captioned litigation ("Litigation"); that I have been given a copy of and have read the Order; and that I agree to be bound by its terms. I also understand that my signature below indicates my agreement to be bound by the Order and is a prerequisite to my review of any information or documents designated as Designated Material pursuant to the Order.

I further agree that I shall not use Designated Material for any purpose other than as authorized in the Order and that, except as explicitly authorized in the Order, I shall not disclose Designated Material, in any form whatsoever, to others.

I further agree to return or destroy Designated Material in my possession, custody, or control in the manner and time specified by the Order.

I further agree and attest to my understanding that my obligation to honor the confidentiality of such Designated Material will continue even after this Litigation concludes.

I further agree and attest to my understanding that, if I fail to abide by the terms of the Order, I may be subject to sanctions, including contempt of court, for such failure. I agree to be subject to the jurisdiction of the above-identified Court for the purposes of any proceedings relating to enforcement of the Order. I further agree to be bound by and to comply with the terms of the Order as soon as I sign this Agreement, regardless of whether the Order has been entered by the Court.

Date: _____

By: _____

# Exhibit 3

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHNSON & JOHNSON HEALTH CARE
SYSTEMS INC.,

             Plaintiff,

    v.

SAVE ON SP, LLC,

             Defendant.

Case No. 2:22-cv-02632-JMV-CLW

## STIPULATION AND ORDER
## GOVERNING THE EXCHANGE OF ELECTRONICALLY STORED INFORMATION

Upon agreement of the Parties for entry of an order establishing a protocol for the exchange and production of documents in hard-copy format ("Documents") and electronically stored information ("ESI"), as those terms are used in the Federal Rules of Civil Procedure, plaintiff Johnson & Johnson Health Care Systems Inc. ("Plaintiff") and Defendant Save On SP, LLC ("Defendant") (each a "Party" and, collectively, the "Parties") hereby stipulate ("ESI Stipulation") and the Court orders as follows:

## I.    GENERAL PROVISIONS

A.    The Parties and non-parties producing Documents and ESI (each a "Producing Party") shall prepare their Documents and ESI for production to the Parties receiving the production (each a "Receiving Party") in accordance with this ESI Stipulation.

B.    If a provision of this agreement conflicts with the terms of the stipulated Discovery Confidentiality Order (ECF No. 62) (the "Confidentiality Stipulation") entered in this action,[1] the Confidentiality Stipulation will control absent further order of the Court.

---

[1] Defined terms in the Confidentiality Stipulation not otherwise defined herein are incorporated.

C.    Proportionality

1.    Reasonable Discovery Limits. The proportionality standard set forth in Rule 26(b)(1) shall apply to discovery in this action. Consistent with that proportionality standard, the Parties agree to cooperate in identifying appropriate limits on discovery, including phased discovery and reasonable limits on search terms and the number of custodians, on discoverable data sources, on the relevant period, and on the permissible scope of requests for production, specifically including the permissible scope of requests for emails. Requests for production of ESI, including requests for emails, shall be reasonably targeted, clear, and as specific as possible.

D.    No Designation of Discovery Requests. Productions of Documents and ESI in the reasonably usable form set out in this protocol need not be organized and labeled to correspond to the categories in the requests.

II.    **PRODUCTION OF HARD COPY DOCUMENTS**

A.    TIFFs. Producing Parties shall produce Documents in the form of single-page, Group IV TIFFs at 300 dpi. They shall name each TIFF image as its corresponding Bates number. They shall maintain Original Document orientation (*i.e.,* portrait to portrait and landscape to landscape). They shall provide TIFF image files in a self-identified "Images" folder.

B.    OCR Text Files. Producing Parties shall provide Optical Character Recognition ("OCR") text files as a single text file for each Document, not one text file per page. They shall name each file with the beginning Bates number assigned to its corresponding Document, followed by .txt. They shall provide OCR text files in a self-identified "Text" directory. To the extent that a Document is redacted, they shall produce OCR text files for that Document that shall not contain text for redacted portions.

2

C.     Database Load Files/Cross-Reference Files. Unless otherwise agreed by the Parties, Producing Parties shall provide Documents with Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files) using standard Concordance delimiters. They shall provide Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files) in a self-identified "Data" folder.

D.     Coding Fields. Producing Parties shall produce Documents with at least the following searchable information in accompanying delimited data files: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodians, (6) OCRTextPath, (7) Confidentiality, and (8) Source. When a Producing Party determines in good faith judgment that it is practicable to accompany Documents with other metadata fields in Table I, the Producing Party shall produce those Documents with the practicable metadata fields. Producing Parties shall identify custodians using any of the following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first name_last name"; or "FLast." Producing Parties shall use a uniform description of a particular custodian, and separate multiple custodians in the "Custodian" field by a semicolon. For Documents with no individual custodian (*e.g.*, centralized files, document management systems), Producing Parties shall (a) use the relevant entity name(s) in the "Custodian" field and (b) identify the source of the Documents in the "Source" field.

E.     Bates Numbering. Producing Parties shall assign each TIFF image a Bates number that: (1) is unique across the entire production; (2) maintains a constant length across the entire production (*i.e.*, padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given Document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

F.   _Parent-Child Relationships_. Producing Parties shall preserve parent-child relationships (_i.e._, the association between an attachment and its parent Document), to the extent they exist in the manner in which the Documents are maintained in the ordinary course of business. For example, if a Producing Party produces a printout of an email with its attachments, it shall produce such attachments behind the email in the order in which they were attached.

G.   _Color_. Producing Parties need not, in the first instance, produce Documents containing color in color format. The Receiving Party may request production of such Documents in color format by (1) providing a list of the Bates numbers of the Document(s); and (2) explaining the need for production of the Documents in color format. Consent to produce in color shall not be unreasonably withheld.

H.   _Unitizing of Documents_. A Producing Party shall not, when scanning Documents: (1) merge distinct Documents into a single record; or (2) split single Documents into multiple records (_i.e._, Documents should be logically unitized).

## III.   PRODUCTION OF ESI

A.   _Technology Assisted Review ("TAR")_.

1.   Any Producing Party that wishes to use TAR agrees to disclose that intent to the Receiving Party before the Producing Party employs any TAR and must meet-and-confer with the Receiving Party regarding an appropriate TAR protocol. The Producing Party will identify the universe of Documents or ESI to which it intends to apply TAR. The Producing Party may not use TAR to limit or cull Documents or ESI to be reviewed without the prior consent of the Receiving Party.  If the parties are unable to reach agreement on an appropriate protocol, or if the Receiving Party withholds consent, any such disputes shall be resolved by the Court.

4

2.    The absence of a search term hit or retrieval by TAR methodology for a given ESI or Document does not automatically render it irrelevant. If any Producing Party identifies relevant ESI or Documents not hit upon by the search term filters noted above, it shall produce such non-privileged Documents and/or ESI, subject to the Producing Party's objections to discovery requests and rights under this ESI Protocol, the Local Rules, and this Court's individual rules.

3.    The fact that any electronic file has been identified in agreed-upon searches shall not prevent any Producing Party from withholding such file from production on the grounds that the file is not responsive or relevant, or that it is responsive or relevant but protected from disclosure by applicable privilege or immunity (in which case the Producing Party shall include it on a privilege log), or that the Protective Order entered in this Action allows the file to be withheld.

B.    Avoidance of Duplicate Production

1.    "Duplicate ESI" means files that are exact duplicates based on the files' MD5 hash, SHA-1 hash, email duplicate spare messages (as defined by Relativity), or SHA-256 hash values. The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (i.e., both within a particular custodian's files and across all custodians). Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When the same Duplicate ESI exists in the files of multiple custodians, the additional custodians shall be listed in the "All Custodians" field identified in Table I to the extent such information is available.

2.    The Parties may confer regarding other deduplication methods, such as the use of Textual Near Deduplication. Except for the removal of extracted logos, no custom deduplication method will be implemented without the consent of the Receiving Party, and such consent shall not be unreasonably withheld.

3.    If the Producing Party collects and processes additional ESI which contains duplicates of ESI previously produced, that Party also shall provide an overlay file to allow the Receiving Party to update the "All Custodians" field. The overlay file shall include both all custodians listed in the "All Custodians" field in prior productions and any custodians identified in the newly processed ESI.

C.    Email Threading

1.    Email threads are email communications that contain lesser-included email communications that also may exist separately in the Party's electronic document collection. A most-inclusive email is one that contains unique content and all the lesser-included emails, including attachments, for that branch of the email thread. The Parties agree that removal of available lesser-included emails from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting, and, when producing the most-inclusive email in a thread, the parties need not also produce lesser-included emails in the thread.

2.    Participants in lesser-included emails that otherwise would have been subject to review shall be listed in the most-inclusive email's "All Participants" field included in the data load file. With respect to an e-mail chain, the parties may produce the longest unique or most inclusive chain and the parties do not need to separately produce the lesser-included e-mails unless those lesser-included e-mails include unique attachments

6

not included in the longest chain or contain a BCC recipient not shown in the longest unique chain. If a lesser-included e-mail includes a unique attachment, or if the lesser-included email was modified in any way in a subsequent email, then the lesser-included e-mail must be separately produced with the attachment.

D.     TIFFs. Producing Parties shall produce ESI in the form of single-page, black and white, Group IV TIFFs at 300 dpi. They shall name each TIFF image as its corresponding Bates number. They shall maintain original document orientation (*i.e.*, portrait to portrait and landscape to landscape). They shall provide TIFF image files in a self-identified "Images" folder.

E.     Parent-Child Relationships. Producing Parties shall preserve parent-child relationships (*i.e.*, the association between an attachment and its parent file).

F.     Metadata Fields and Processing. Producing Parties shall produce each of the metadata and coding fields set forth in Table I that can be extracted from ESI for that ESI. They are not obligated to populate manually any of the fields in Table I if such fields cannot be extracted from the ESI, except for the following: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodians, (6) NativeLink, (7) Confidentiality, (8) Parent ID fields (which the Producing Party or its vendor may populate), and (9) Source. They shall identify custodians using any of the following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first name_last name"; or "FLast." A Producing Party shall use a uniform description of a particular custodian and separate multiple custodians by a semicolon in the "Custodians" field. For documents with no individual custodian (*e.g.*, centralized files, document management systems), Producing Parties shall (a) use the relevant entity name(s) in the "Custodian" field and (b) identify the source of the documents in the "Source" field.

7

G.   Extracted Text Files. For all ESI (other than multimedia or graphic files), Producing Parties shall provide an extracted text file along with its corresponding TIFF image file(s) and metadata. They shall name each extracted text file such that it is identical to that of the first image page of its corresponding file, followed by .txt. They shall not use file names that contain special characters or embedded spaces and shall extract the text of native files directly from the native file. If a file contains redactions, however, the Producing Party may provide OCR of the redacted file in lieu of extracted text.

H.   Database Load Files/Cross-Reference Files.  Unless otherwise agreed to by the parties, Producing Parties shall include in each production (1) a metadata file (DAT file) using standard Concordance delimiters or carat pipe delimiters and (2) an image load file in Opticon format (.OPT file). They shall provide in a self-identified "Data" folder Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files).

I.   Native Files. The following governs the production of native files.

1.   Producing Parties shall produce PowerPoint presentations, source code, large diagrams, Excel files and/or .csv files, word processing files with tracked changes, comments, or hidden text (*e.g.*, Word), desktop databases (*e.g.*, Access), and audio/video multimedia files in native format ("Native Files"), unless they have redactions.

2.   Producing Parties shall provide native files in a self-identified "Natives" directory. Producing Parties shall produce each native file with a corresponding single-page TIFF placeholder image, which shall state the ESI is being produced as a native file and provide the Confidentiality Designation, if any. Producing Parties shall name each native file with the beginning Bates number that is assigned to that specific record in the production.

8

3.      Producing Parties shall include a "NativeLink" entry for each native file in the .DAT load file indicating the relative file path to each native file on the production media. Producing Parties shall produce native files with extracted text and applicable metadata fields as set forth in Paragraphs III.E and III.F. Producing Parties may produce redacted files in either native format or as TIFF image files and OCR in lieu of a Native File, TIFF placeholder image and extracted text file. Producing Parties shall exclude any metadata fields for redacted files that would reveal privileged information.

4.      If produced as a TIFF, each Producing Party shall make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals hidden data from redacted native files that are produced as TIFF image files and ensures that redacted native files will be formatted to be readable. (For example, column widths should be formatted so that numbers do not appear as "########").

J.      <u>Structured Data</u>. To the extent that responding to a discovery request requires production of ESI contained in a database, a Producing Party may query the database for discoverable information and generate and produce a report in a reasonably usable and exportable Excel or .csv format. The first line of each such file will, to the extent not unduly burdensome, show the column headers for each field of data included. The Parties shall meet and confer to finalize the appropriate data extraction and production format for specific information contained in a database.

K.      <u>Audio and Video Files.</u> Producing Parties shall produce audio and video files in a reasonably usable format as may be agreed upon by the Parties.

L.      <u>Requests for Other Native Files</u>. Other than as specifically set forth above, a Producing Party need not produce ESI in native format. The Receiving Party may request

production in native format of other documents by (1) providing a list of the Bates numbers of ESI it requests to be produced in native format; and (2) explaining the need for reviewing such ESI in native format. The Responding Party may object and any disputes will be resolved by the Court. If the Producing Party agrees to produce such a native file, the Producing Party shall produce in response to such request each native file with corresponding production number fields and a "NativeLink" entry in the DAT load file indicating the relative file path to each native file on the production media, all extracted text (other than for multimedia or graphic files), and applicable metadata fields set forth in Table I.

## Table I-ESI Metadata Fields

| FIELD NAME | DESCRIPTION |
|---|---|
| **Author** | Author of document, if identified in metadata |
| **Begin Bates** | Unique document identifier and the starting page of a document (*e.g.*, ABC00000001) |
| **Bates End** | The end number of a document (*e.g.*, ABC0000099) |
| **Bates Beg Attach** | The starting number of a group or family of documents (*e.g.*, ABC0000001) |
| **Bates End Attach** | The end number of a group or family of the document (*e.g.*, ABC0000099) |
| **Custodian** | The owner of a document |
| **All Custodians** | List of all custodians who had custody of the document; when global de-duplication is used, these are custodians whose file has been de-duplicated; multiple custodians separated by semicolons |
| **All Participants** | For emails only, lists all participants included in lesser-included emails that, without email threading, would have been subject to review |
| **Filename** | The original name of the file |
| **File Extension** | File extension of document (*e.g.*, .msg, .docx, .xlsx, etc.) |
| **File Size** | The size of the file |

| FIELD NAME | DESCRIPTION |
|---|---|
| **Document Type** | Type of document (*e.g.*, email, e-document, attachment, hardcopy) |
| **Date Created** | Date document was created (*e.g.*, 01/01/2001) |
| **Time Created** | Time document was created (*e.g.*, 17:00) |
| **Date Last Modified** | Date the document was last modified (*e.g.*, 01/01/2001) |
| **Time Last Modified** | Time the document was last modified (*e.g.*, 17:00) |
| **Date Last Accessed** | Last access date of the document as extracted during processing from the file metadata |
| **Time Last Accessed** | Last access time of the document as extracted during processing from the file metadata |
| **Date Sent** | Date email was sent (*e.g.*, 01/01/2001) |
| **Time Sent** | Time email was sent (*e.g.*, 17:00) |
| **Date Received** | Date email was received (*e.g.*, 01/01/2001) |
| **Time Received** | Time email was sent (*e.g.*, 17:00) |
| **Email From** | Sender of email |
| **Email Subject** | Subject line of email |
| **Email To** | Recipient(s) of email |
| **Email BCC** | Blind-copied recipients of email |
| **Email CC** | Copied recipients of email |
| **MD5 Hash** | MD5 Hash Value of file |
| **Native Link** | Relative file path of native file |
| **File Path** | Original file path where file was kept (by the custodian) |
| **Pages** | Number of pages per document |

11

| FIELD NAME | DESCRIPTION |
|---|---|
| Confidenti-ality | Confidential, Confidential Health Information, or Attorneys' Eyes Only |
| Redactions | Yes/No |
| Source | Person, shared drive, or other source from whom files were collected |
| Prod Vol-ume | Volume in which the Document was produced (*e.g.*, VOL001) |

M.      Confidentiality Designations. If a Producing Party reduces native files or other ESI designated "Confidential," "Confidential Health Information," and/or "Attorneys' Eyes Only," as defined by the Confidentiality Stipulation, to Document form, it shall mark the Document with the appropriate designation. Producing Parties shall produce all ESI designated as "Confidential," "Confidential Health Information," and/or "Attorneys' Eyes Only" with the designation in the metadata field pursuant to Table I and in the ESI itself.

N.      Encryption of Production Media. To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media. The Receiving Parties in this matter are on notice that certain data produced may originate from custodians in the European Union and the Receiving Parties therefore agree to follow the strictest security standards in guarding access to such data.

O.      Time Zone. Producing Parties shall produce all ESI normalized to Eastern Standard Time (EST).

## IV.    PROCESSING OF THIRD-PARTY DOCUMENTS

A.    A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Stipulation with the subpoena and request that the non-party produce Documents and ESI in accordance with the specifications set forth herein. If an Issuing Party issued a non-party subpoena prior to the execution of this ESI Stipulation, that Issuing Party shall promptly forward a copy of this ESI Stipulation to the non-party and request that the non-party produce Documents and ESI in accordance with the specifications set forth herein.

B.    The Issuing Party is responsible for producing to all other Parties any Documents and/or ESI obtained pursuant to a subpoena. If a non-party refuses to produce Documents and/or ESI in accordance with the specifications set forth here, the Issuing Party has no obligation to conform the non-party's production to such specifications.

C.    Nothing in this ESI Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

## V.    MISCELLANEOUS PROVISIONS

A.    This ESI Stipulation is intended solely to address the format of Document and ESI productions. Nothing in this ESI Stipulation is intended to affect the rights of any Party to object to any requests or demand for production. Nothing in this ESI Stipulation shall constitute, or operate as, a waiver of any rights of any Party to object to, or to avoid, discovery or disclosure, in whole or in part, under the laws of the United States, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of New Jersey, the Individual Practices of Magistrate Judge Cathy L. Waldor, the Individual Practices of Judge John Michael Vazquez, or any other applicable law, rule, or order.

13

B.      Nothing in this ESI Stipulation establishes any agreement as to either the temporal or subject matter scope of discovery or as to the relevance or admissibility of any Document or ESI. Nothing in this ESI Stipulation shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI.

C.      The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Stipulation. If a Producing Party, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Stipulation or if compliance with such material aspect would be unreasonable, such Producing Party shall inform the Receiving Party in writing as to why compliance with the Stipulation is impossible or unreasonable as soon as reasonably practicable.

D.      Nothing herein is intended to, nor shall be construed to, diminish or otherwise affect any Party's discovery obligations.

E.      Any application to the Court under or regarding this ESI Stipulation shall be made pursuant to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of New Jersey, and the Individual Practices of Magistrate Judge Cathy L. Waldor.

Dated: Newark, New Jersey
        November 21, 2022

By: */s/Jeffrey J. Greenbaum*
        Jeffrey J. Greenbaum
        Katherine M. Lieb
        SILLS CUMMIS & GROSS P.C.
        One Riverfront Plaza
        Newark, New Jersey 07102
        (973) 643-7000

        Adeel A. Mangi
        Harry Sandick
        George LoBiondo
        PATTERSON BELKNAP WEBB &
        TYLER LLP
        1133 Avenue of the Americas New
        York, New York 10036
        (212) 336-2000

        *Attorneys for Plaintiff Johnson &*
        *Johnson Health Care Systems Inc.*

By: */s/ E. Evans Wohlforth, Jr.*
        E. Evans Wohlforth, Jr.
        GIBBONS P.C.
        One Gateway Center
        Newark, NJ 07102-5310
        ewohlforth@gibbonslaw.com

        David Elsberg
        Andrew R. Dunlap
        Meredith Nelson
        SELENDY GAY ELSBERG PLLC
        1290 Avenue of the Americas New
        York, NY 10104
        Tel: 212-390-9000

        *Attorneys for Defendant Save On SP,*
        *LLC*

SO ORDERED this 22nd day of November, 2022

                                s/ Cathy L. Waldor
                                HON. CATHY L. WALDOR
                                United States Magistrate Judge

15

# Exhibit 24

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for TrialCard Inc.*


# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY


| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JMV) (CLW) <br><br> **NON-PARTY TRIALCARD, INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** |

14168182

## GENERAL OBJECTIONS

TrialCard Incorporated ("TrialCard") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in TrialCard objections to a specific Request.

TrialCard reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action.  The following responses and objections are based upon information known at this time.

1.    TrialCard is not a party to the above-captioned litigation pending in the District of New Jersey (the "Action") and objects to the Subpoena's imposition of significant burden on it because the vast majority of Requests in the Subpoena can be satisfied by obtaining documents directly from Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), a party to the Action.  TrialCard notes that the requests in the Subpoena are nearly identical to document requests made by SaveOnSP to JJHCS in the Action, and JJHCS has already agreed to facilitate a production of TrialCard documents in response to those requests in party discovery. TrialCard objects to producing any documents unless and until SaveOnSP can demonstrate that it has not been able to obtain these documents in party discovery.

2.    TrialCard objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.  The inadvertent production by TrialCard of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the

1

basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

3.      TrialCard objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response TrialCard makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

4.      TrialCard objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

5.      TrialCard objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that TrialCard agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of TrialCard. Instead, it means that TrialCard will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

6.      TrialCard objects to the Requests to the extent that they seek information that is obtainable from sources other than TrialCard in a manner that is more convenient, less burdensome, or less expensive.

14168182

7.      TrialCard objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

8.      TrialCard objects to the Requests to the extent that they are vague and/or ambiguous.

9.      TrialCard objects to the Requests to the extent that they require interpretation by it in providing a response.  TrialCard responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that differs from TrialCard's understanding of that Request, TrialCard reserves the right to modify or supplement its objections and responses.

10.     TrialCard objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

11.     TrialCard objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. TrialCard further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

12.     TrialCard objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

13.     TrialCard objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

14.     TrialCard objects to the Requests to the extent that they seek the production of documents that are not in TrialCard's possession, custody, or control.

14168182

## OBJECTIONS TO DEFINITIONS

1.      TrialCard objects to the definition of the term "Janssen" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf" of those entities.

2.      TrialCard objects to the definition of the term "Janssen Drug" as irrelevant to the extent it purports to include drugs that are not covered by CarePath.

3.      TrialCard objects to the definition of the term "JJHCS" as overbroad, unduly burdensome, and not proportional to the needs of the case to extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or] representatives" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and Janssen Research & Development LLC.

4.      TrialCard objects to the definition of the term "JJHCS Hub Entity" as vague and as irrelevant to the extent it purports to include entities other than those responsible for administering CarePath during the relevant Time Period.  TrialCard further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents,

4

subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities. TrialCard further objects to the extent the term is used to seek documents and communications concerning entities other than JJHCS.

5.    TrialCard objects to the definition of the term "Lash Group" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc."

6.    TrialCard objects to the definition of the term "TrialCard" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc." TrialCard further objects to the extent the term is used to seek documents and communications in the possession of entities other than TrialCard.

## OBJECTIONS TO INSTRUCTIONS

1.    TrialCard objects to the Instructions to the extent that they impose requirements on TrialCard beyond those required by the Federal Rules of Civil Procedure.

2.    TrialCard objects to Instruction No. 14 to the extent that SaveOnSP attempts to impose requirements on TrialCard beyond those required by the Federal Rules of Civil Procedure or ordered by the Court. Rule 34, which contains a duty to supplement responses,

14168182

does not apply to requests for production directed to a non-party, and Rule 45 contains no duty

to supplement.

## **OBJECTIONS TO THE TIME PERIOD FOR SPECIFIC REQUESTS**

1.      TrialCard objects to SaveOnSP's Requests as overbroad, unduly burdensome,

and not relevant to the subject matter of this Action to the extent they call for documents from

before January 1, 2017 or after July 1, 2022.[1]

## **SPECIFIC RESPONSES AND OBJECTIONS**

**Request No. 1**

From January 1, 2009 through the present, Documents sufficient to show the
organizational structure of TrialCard.

**Response to Request No. 1**

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as irrelevant to any claim or defense in this Action to the extent it seeks

documents unrelated to the JJHCS groups responsible for the administration of CarePath.

TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional

to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

TrialCard has already agreed to produce through JJHCS certain responsive

documents, subject to JJHCS's objections and to those presented here, from the relevant Time

Period.  TrialCard will not search for or produce documents in response to the Request.

**Request No. 2**

From January 1, 2009 through the present, Documents sufficient to show the
organizational structure of any group or division within TrialCard involved in developing,
managing, marketing, or administering CarePath and to identify their employees.

---

[1] For convenience, TrialCard refers to the period of January 1, 2017 to July 1, 2022 as the "Time Period."

**Response to Request No. 2**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request to the extent it seeks the production of documents and information that are available from parties to the Action. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

TrialCard has already agreed to produce through JJHCS certain responsive documents, subject to JJHCS's objections and to those presented here, from the relevant Time Period. TrialCard will not search for or produce documents responsive to this Request.

**Request No. 3**

All Documents and Communications with or regarding SaveOnSP, including those between You and JJHCS, You and any patients, and You and any other Hub Entity.

**Response to Request No. 3**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the attorney-client

7

14168182

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege,

the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

TrialCard has already agreed to produce through JJHCS certain responsive documents,

subject to JJHCS's objections and to those presented here, from the relevant Time Period.

TrialCard will not further search for or produce documents or communications in response to this

Request.

**Request No. 4**

From January 1, 2009 through the present, all Documents and Communications
regarding the development, management, and marketing of CarePath or any other copay
assistance program offered for Janssen Drugs, including Documents and Communications
regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

**Response to Request No. 4**

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as it seeks the production of documents and information relating to specific

allegations in the Complaint that are available from parties to the Action and, therefore, is unduly

burdensome on TrialCard.  TrialCard further objects to this Request insofar as it seeks the

production of documents and communications outside of TrialCard's possession, custody, and/or

control.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks "all" documents and communications

regarding a broad subject matter.  TrialCard further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period.  TrialCard further objects to this Request

on the ground that the phrase "any other copay assistance program offered for Janssen Drugs" is

vague and ambiguous.  TrialCard further objects to this Request as irrelevant to any claim or

defense in this Action to the extent it seeks documents unrelated to CarePath.

TrialCard will not search for or produce documents or communications responsive to this Request.

**Request No. 5**

From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) revisions to any of the CarePath terms and conditions for any Janssen Drug; and (d) Your understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

**Response to Request No. 5**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the final CarePath terms and conditions at issue.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.

TrialCard will not search for or produce documents or communications responsive to this Request.

14168182

**Request No. 6**

From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

**Response to Request No. 6**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the final CarePath terms and conditions at issue. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. TrialCard further objects to this Request to the extent it seeks documents and communications in the possession of entities other than TrialCard.

TrialCard will not search for or produce documents or communications responsive to this Request.

**Request No. 7**

From January 1, 2015 through the present, all Documents and Communications regarding Your understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its

10

14168182

regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

**Response to Request No. 7**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request to the extent it calls for views on a legal question. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.

TrialCard will not search for or produce documents or communications responsive to this Request.

**Request No. 8**

All Documents and Communications regarding SaveOnSP's communications with Patients regarding CarePath, including allegedly misleading or confusing communications and JJHCS's allegations in Complaint ¶¶ 60-67, 109, ¶¶ 13, 75-77, 85-88.

**Response to Request No. 8**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the

11

production of documents and communications outside of TrialCard's possession, custody, and/or

control.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks "all" documents and communications

regarding a broad subject matter.  TrialCard further objects to this Request to the extent it seeks

"misleading or confusing communications," as those terms are vague and ambiguous.

TrialCard will not search for or produce documents or communications

responsive to this Request.

**Request No. 9**

All Documents and Communications regarding SaveOnSP's provision of services
to qualified high deductible or health savings account plans, including JJHCS's allegations in
Complaint ¶ 72.

**Response to Request No. 9**

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as it seeks the production of documents and information relating to specific

allegations in the Complaint that are available from parties to the Action and, therefore, is unduly

burdensome on TrialCard.  TrialCard further objects to this Request insofar as it seeks the

production of documents and communications outside of TrialCard's possession, custody, and/or

control.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks "all" documents and communications

regarding a broad subject matter.  TrialCard further objects to this Request on the ground that the

phrase "SaveOnSP's provision of services to qualified high deductible or health savings account

plans" is vague and ambiguous.

TrialCard will not search for or produce documents or communications

responsive to this Request.

14168182

**Request No. 10**

All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

**Response to Request No. 10**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 11**

All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 11**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications

13

regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 12**

All Documents and Communications regarding any alleged harm caused by SaveOnSP to any Patient by allegedly making their healthcare more expensive, including JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 12**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 13**

All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 13**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly

14

burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 14**

All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 14**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information about any Copay Assistance Program other than CarePath. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

15

14168182

**Request No. 15**

All Documents and Communications regarding any alleged harm caused by SaveOnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 110, 115.

**Response to Request No. 15**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request on the ground that the phrase "any alleged harm" is vague and ambiguous.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 16**

All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

**Response to Request No. 16**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this

16

Request on the ground that the phrase "payment of any Patient's costs including those that accumulate towards the Patient's deductible or out-of-pocket maximum" is vague and ambiguous.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 17**

All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

**Response to Request No. 17**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter and seeks "complete databases from which [ ] data was drawn."

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 18**

From January 1, 2009 through the present, for each Janssen Drug for each year, Documents sufficient to show:

14168182

a.    all Patients receiving the Janssen Drug;

b.    the number of fills of the Janssen Drug received by each such Patient;

c.    the dosage of the Janssen Drug received by each such Patient for each fill;

d.    the projected number of Patients, average number of fills, and average dosage for the Janssen Drug;

e.    the cost to manufacture the Janssen Drug;

f.    the sales and marketing budget for the Janssen Drug;

g.    the price of the Janssen Drug;

h.    the revenue received by JJHCS from the Janssen Drug;

i.    all Patients enrolled in the CarePath program for the Janssen Drug;

j.    the dates on which each Patient was enrolled in CarePath;

k.    the amounts of copay assistance funds that JJHCS offered to each Patient enrolled in CarePath;

l.    the Janssen Drugs for which each Patient enrolled in CarePath received copay assistance; and

m.    all copay assistance payments that JJHCS made to or on behalf each Patient enrolled in CarePath.

**Response to Request No. 18**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP's conduct at issue, including information relating to Patient fills, the cost of manufacturing Janssen Drugs, the sales and marketing budgets for Janssen Drugs, and pricing

and revenue generated by Janssen Drugs. TrialCard further objects to this Request on the ground

that the phrases "the projected number of Patients, average number of fills, and average dosage

for the Janssen Drug," "the cost to manufacture the Janssen Drug," and "the price of the Janssen

Drug" are vague and ambiguous. TrialCard further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period.

TrialCard has already agreed to produce through JJHCS certain responsive

documents, subject to JJHCS's objections and to those presented here, from the relevant Time

Period. TrialCard will not further search for or produce documents or communications in

response to this Request.

**Request No. 19**

From January 1, 2009 through the present, for each Janssen Drug for each year,
all Documents and Communications regarding:

a.    JJHCS's determination of the amounts of copay assistance funds that JJHCS
offered to Patients enrolled in CarePath, including the determination of the
maximum program benefit per calendar year for the Janssen Drug;

b.    JJHCS's budget for CarePath, including the sales and marketing budget;

c.    JJHCS's actual and projected annual costs for CarePath;

d.    JJHCS's use of or accounting for unused CarePath funds;

e.    the impact of the Affordable Care Act on JJHCS's CarePath budget or funding,
including the impact of laws and regulations regarding out-of pocket maximums;

f.    JJHCS's and Janssen's revenue and revenue projections from fills by Patients
enrolled in CarePath;

g.    the impact of CarePath on Janssen's sales of any Janssen Drug;

h.    the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

i.    JJHCS's or Janssen's actual and projected return on investment for CarePath; and

j.      any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by SaveOnSP.

**Response to Request No. 19**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP's conduct at issue, including information relating to the sales and marketing budget for CarePath, JJHCS's uses of or accounting for unused CarePath funds, the impact of the Affordable Care Act or other laws and regulations on CarePath's budget or funding, JJHCS's and Janssen's revenue and revenue projections from fills by patients enrolled in CarePath, the impact of CarePath on Janssen sales of any Janssen Drug, the impact of CarePath on JJHCS's or Janssen's gross to net calculations, JJHCS's or Janssen's actual or projected return on investment for CarePath, and the adherence rates of Patients enrolled in CarePath to Janssen Drugs. TrialCard further objects to this Request on the ground that the phrases "the projected number of Patients, average number of fills, and average dosage for the Janssen Drug," "JJHCS's or Janssen's gross to net calculations," and "JJHCS's or Janssen's actual and projected return on investment for CarePath" are vague and ambiguous. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a variety of broad subject matters. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and

20

communications outside of the relevant Time Period.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 20**

All Documents and Communications regarding JJHCS's attempts to limit or eliminate the amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs, including Documents and Communications regarding JJHCS's attempts to limit or eliminate the availability of CarePath copay assistance funds available to Patients enrolled in health plans advised by SaveOnSP.

**Response to Request No. 20**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information beyond the final CarePath terms and conditions at issue.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 21**

All Documents and Communications regarding any offer by JJHCS to provide to any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance funds available to a Patient.

21

**Response to Request No. 21**

   In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the extent to which SaveOnSP has caused JJHCS to pay more in copay assistance than it otherwise would have. TrialCard further objects to this Request on the ground that the phrases "CarePath funds greater than the amounts that JJHCS generally offers CarePath Patients" and "to waive any limitation on or elimination of the amount of CarePath copay assistance funds available" are vague and ambiguous. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

   TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 22**

   All Documents and Communications regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans.

**Response to Request No. 22**

   In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications

14168182

outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this

Request as irrelevant to any claim or defense in this Action to the extent it calls for information

unrelated to SaveOnSP's conduct at issue. TrialCard further objects to this request as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all"

documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications

responsive to this Request.

## Request No. 23

From any time, all Documents and Communications regarding TrialCard's
negotiations or agreements regarding the potential use of any Copay Maximizer Service or
Copay Accumulator Service, for TrialCard's Employee Health Plans, including any
abandonment of those negotiations or agreements.

## Response to Request No. 23

In addition to the foregoing objections, TrialCard, as a third party, objects to this

Request as irrelevant to any claim or defense in this Action to the extent it seeks information

about "the potential use of any Copay Maximizer Service or Copay Accumulator Service,"

which is unrelated to SaveOnSP's conduct at issue. TrialCard further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter. TrialCard further

objects to this Request insofar as it seeks the production of documents and communications

outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents and communications outside of the relevant Time Period. TrialCard

further objects to this Request to the extent it seeks information that is exempt from discovery

and protected from disclosure by a privilege including, without limitation, the attorney-client

23

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court and relevant case law.

TrialCard will not search for or produce documents and communications responsive to this Request.

## Request No. 24

Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coordinators.

## Response to Request No. 24

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this request as irrelevant to any claim or defense in this Action to the extent it calls for information about "JJHCS Hub Entities" or "CarePath Care Coordinators" that are not implicated in this litigation. TrialCard further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in TrialCard's Objections to Definitions.

TrialCard will not search for or produce documents and communications responsive to this Request.

## Request No. 25

From January 1, 2009 through the present, Documents sufficient to show the economic terms of JJHCS's retention of or agreements with You, including any assessment of the fair market value of those services.

## Response to Request No. 25

In addition to the foregoing general objections, TrialCard, as a third party, objects

24

to this Request as it seeks the production of documents and information that are available from

parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further

objects to this Request insofar as it seeks the production of documents and communications

outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this

Request on the ground that "any assessment of the fair market value of those services" is

irrelevant.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks documents and communications

outside of the relevant Time Period.  TrialCard further objects to this Request to the extent it

seeks information that is exempt from discovery and protected from disclosure by a privilege

including, without limitation, the attorney-client privilege, the work product doctrine, the joint

defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local

Rules of the Court, and relevant case law.

TrialCard will not search for or produce documents and communications

responsive to this Request.

## Request No. 26

From January 1, 2009 through the present, documents sufficient to show the
percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any
JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen
Drugs.

## Response to Request No. 26

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as it seeks the production of documents and information that are available from

parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further

objects to this Request insofar as it seeks the production of documents and communications

outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this

14168182

Request as irrelevant to any claim or defense in this Action to the extent it calls for information

unrelated to SaveOnSP's misconduct, including information about JJHCS's advertising or

marketing of CarePath or Janssen Drugs.  TrialCard further objects to this Request on the ground

that the phrase "Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any

JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen

Drugs" is vague and ambiguous.  TrialCard further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period.  TrialCard further objects to this Request to

the extent it uses the terms "JJHCS Hub Entity" for the reasons stated in TrialCard's Objections

to Definitions.

TrialCard will not search for or produce documents and communications

responsive to this Request.

### Request No. 27

From January 1, 2015 through the present, all Documents and Communications
relating to Copay Accumulator Services and Copay Maximizer Services and their effect on
JJHCS's return on investment for copay assistance dollars.

### Response to Request No. 27

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as it seeks the production of documents and information that are available from

parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further

objects to this Request insofar as it seeks the production of documents and communications

outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this

Request as irrelevant to any claim or defense in this Action to the extent it calls for information

about other "Copay Accumulator Services and Copay Maximizer Services" other than

SaveOnSP.  TrialCard further objects to this Request on the ground that the phrase "JJHCS's

return on investment for copay assistance dollars" is vague and ambiguous. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.

TrialCard will not search for or produce documents and communications responsive to this Request.

## Request No. 28

From January 1, 2015 through the present, all Documents and Communications relating to Your understanding of the terms "copay accumulator" and "copay maximizer."

## Response to Request No. 28

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to SaveOnSP's conduct at issue. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request as unduly burdensome to the extent it seeks documents and communications outside of the relevant Time Period. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

TrialCard will not search for or produce documents and communications

27

responsive to this Request.

**Request No. 29**

      All Documents and Communications concerning non-medical switching by participants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

**Response to Request No. 29**

      In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

      TrialCard will not search for or produce documents or communications responsive to this Request.

**Request No. 30**

      Your document retention policies.

**Response to Request No. 30**

      In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are not relevant to the Action. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege,

14168182

the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the

Court, and relevant case law.

TrialCard will through JJHCS produce documents responsive to this Request for

the relevant Time Period.

**Request No. 31**

Complete data dictionaries for any data that You produce.

**Response to Request No. 31**

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as it seeks the production of documents and information that are not relevant to

the Action.  TrialCard further objects to this Request on the ground that "data dictionaries for

any data that You produce" is vague and ambiguous.  JJHCS further objects to this Request to

the extent that it purports to require the creation of any document or record in a format not kept

by TrialCard or seeks to impose production obligations that exceed those required by the Rules

of Federal Procedure, the Local Rules of the Court, this Court's or with any applicable

agreement among the parties.

TrialCard will not search for or produce documents responsive to this Request.

**Request No. 32**

From any time, all Documents and Communications regarding this Action
provided to you by any person or entity other than SaveOnSP, including in response to
subpoenas served in this Action.

**Response to Request No. 32**

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as it seeks the production of documents and information that are available from

parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further

29

objects to this Request insofar as it seeks the production of documents and communications

outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this

Request on the ground that the phrase "all Documents and Communications regarding this

Action provided to you by any person or entity other than SaveOnSP" is vague and ambiguous.

TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional

to the needs of the case to the extent it seeks "all" documents and communications regarding a

broad subject matter.  TrialCard further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period.  TrialCard further objects to this Request to

the extent it seeks information that is exempt from discovery and protected from disclosure by a

privilege including, without limitation, the attorney-client privilege, the work-product doctrine,

the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure,

the Local Rules of Court, and relevant case law.

　　　　　TrialCard will not search for or produce documents or communications

responsive to this Request.


Dated: March 6, 2023

　　　　　　　　　　By:　　 /s/DRAFT_____

　　　　　　　　　　Adeel A. Mangi
　　　　　　　　　　Harry Sandick (admitted *pro hac vice*)
　　　　　　　　　　George LoBiondo
　　　　　　　　　　PATTERSON BELKNAP WEBB
　　　　　　　　　　& TYLER LLP
　　　　　　　　　　1133 Avenue of the Americas
　　　　　　　　　　New York, New York 10036
　　　　　　　　　　(212) 336-2000

　　　　　　　　　　*Attorneys for TrialCard Inc.*

14168182

31

# Exhibit 25



June 7, 2023

Katherine Brisson
(212) 336-2552

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

     **Re:**   ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
          **Case No. 2:22-cv-02632 (ES) (CLW)**

Dear Emma:

     We write in response to your May 31, 2023 letter regarding the subpoena issued to TrialCard, Inc. ("TrialCard") and TrialCard's April 24, 2023 document production.

## I.     Requests for Which TrialCard Agreed to Produce Documents

     <u>RFP No. 3</u>:  TrialCard confirms that it has filtered its case and task notes by the Janssen drugs at issue in this litigation:  Balversa, Darzalex, Darzalex Faspro, Erleada, Imbruvica, Opsumit, Prezcobix, Remicade, Rybrevant, Simponi, Stelara, Symtuza, Tracleer, Tremfya, Uptravi, Ventavis, and Zytiga.[1]  The case and task notes that TrialCard anticipates producing will include patients who receive Janssen CarePath copay assistance for at least one Janssen drug at issue in this litigation, regardless of whether that is the only Janssen drug for which they receive copay assistance.  TrialCard anticipates producing over 19,000 call notes based on the application of the previously agreed-upon twelve search terms.

     Despite TrialCard's extensive efforts to identify and produce responsive documents, SaveOnSP now proposes that TrialCard supplement its already broad search parameters to include two additional terms: "out-of-pocket" and "OOP."  TrialCard declines to do so.  These terms are overinclusive, and their application would present a substantial burden, which is particularly pronounced for a third-party like TrialCard.  Nearly every call with TrialCard relating to the CarePath program likely involves some mention or reference to the terms "out-of-pocket" or "OOP."  Indeed, providing financial assistance to enable patients to meet their out-of-pocket obligations is a primary service that the CarePath program provides.  SaveOnSP is not

---

[1] As we have noted several times, *e.g.*, Ltr. from H. Sandick (for JJCHS) to A. Dunlap dated Apr. 11, 2023, Valchlor is not a Janssen drug.

Emma Holland, Esq.
June 7, 2023
Page 2

entitled to every call concerning out-of-pocket costs without some reasonable subject matter limitation, which is precisely what TrialCard's existing search terms already establish.

SaveOnSP also asks TrialCard to confirm that it "has investigated whether it possesses documents responses to RFP No. 3 beyond the above-described patient calls and the results of that investigation." TrialCard has conducted a reasonable investigation and has determined that it possesses no additional responsive materials beyond what it understands has been or will be produced through JJHCS.

## II.     TrialCard's Investigation and Responses Regarding Other RFPs

RFP Nos. 5, 6, 8, 10–17, 20–22, 24–25, and 32:  Following a reasonable investigation, we confirm that TrialCard does not have any documents responsive to these RFPs other than what it has already agreed to produce.  If TrialCard becomes aware of any responsive documents in its possession that are not also in the possession of JJHCS, it will notify SaveOnSP.

RFP Nos. 7, 9, and 29:  These requests each seek documents that improperly go beyond TrialCard's implementation of the Janssen CarePath program.  In particular, RFP No. 7 seeks documents concerning TrialCard's "understanding" of commercial insurers' designation of specialty drugs; RFP No. 9 seeks TrialCard's documents concerning SaveOnSP's provision of services to qualified high deductible or health savings account plans; and RFP No. 29 seeks TrialCard's documents concerning the non-medical switching of patients who are subject to SaveOnSP's services or other accumulators or maximizers besides SaveOnSP.  None of these requests have anything to do with TrialCard's provision of services to JJHCS.  TrialCard's understanding of the health insurance market and its participants in the abstract is irrelevant to its actual implementation of the Janssen CarePath program and, thus, is immaterial to the claims at issue.  Accordingly, TrialCard will limit its responses to these requests as previously described in its May 12 letter.

However, as also previously noted in our May 12 letter, TrialCard has published various written materials encompassing the subject of copay accumulator and maximizer programs generally, some of which may touch on the requests at issue.  Without conceding the responsiveness or relevance of these documents, we note that they are publicly available at https://corp.trialcard.com/resources/.

RFP Nos. 13–15, 17, 20, and 22:  As we explained in our May 12 letter, TrialCard's contributions to any analyses responsive to these requests would have been provided at the request of, or in consultation with, JJHCS.  Accordingly, TrialCard would have furnished any such deliverables to JJHCS, which, in turn, would be captured by JJHCS's document productions (since SaveOnSP has served virtually identical requests on JJHCS).

TrialCard understands that, to date, JJHCS has produced more than 4,000 communications between JJHCS and TrialCard and related documents.  This includes work orders for the Cost Adjustment Program ("CAP") referenced in your May 31 letter, *e.g.*,

Emma Holland, Esq.
June 7, 2023
Page 3

JJHCS_00001497, JJHCS_00037297; the CAP project requirements and business rules that JJHCS provided to TrialCard, *e.g.*, JJHCS_00077384, JJHCS_00077393; and over 1,000 documents and communications regarding the implementation of CAP. These materials are more than sufficient for SaveOnSP to understand the scope and nature of the work that TrialCard performed at JJHCS's direction.

SaveOnSP nevertheless seeks discovery into TrialCard's documents generated outside of its relationship with JJHCS or not furnished to JJHCS. Such documents are entirely irrelevant to the claims and defenses at issues, and as a third-party, TrialCard need not produce such materials. Accordingly, TrialCard will not produce documents in response to these requests.

RFP No. 26: Following a reasonable investigation, TrialCard does not possess any data, analyses, or other information about patient enrollment in CarePath responsive to this RFP.

## III.    TrialCard's April 24, 2023 Production

RFP Nos. 1–2: TrialCard will produce additional organizational charts in a forthcoming production.

RFP No. 3: TrialCard has produced all responsive patient letters to SaveOnSP in its April 24 production. It has no additional materials to produce in response to RFP No. 3.

RFP No. 18(i)–(m): TrialCard anticipates producing additional medical benefit claims data responsive to this request in a forthcoming production.

RFP No. 30: In its April 24 production, TrialCard produced its only Company-wide document retention policy, which was published in 2023. *See* TRIALCARD_00000125. It has no additional materials to produce in response to RFP No. 30.

Identification of Custodians: TrialCard has conducted a reasonable investigation to respond to SaveOnSP's document requests and has produced documents from a variety of non-custodial repositories. TrialCard will not further identify the specific non-custodial source for each document it has produced.

Very truly yours,

*/s/Katherine Brisson*
Katherine Brisson

# Exhibit 26



www.pbwt.com

August 24, 2023

Katherine Brisson
(212) 336-2552

**By Email**

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the America
New York, NY 10104

> Re:   **Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC
> (Case No. 2:22-cv-02632-ES-CLW)**

Dear Emma:

On behalf of TrialCard, we write further to our letter of August 3, 2023, and in response to your August 16, 2023 letter regarding the third party subpoena issued to TrialCard in the above-captioned action. We note that several of the issues you raise in your August 16 letter have been addressed at length in our prior correspondence, which we incorporate by reference as appropriate.

Request No. 3. As you know, we have already produced over 19,000 call notes based on the application of twelve existing search terms. This search methodology—which already includes the very broad term "Save*"—was designed to be quite expansive in yielding potentially responsive documents. We believe that the application of this methodology represents a good faith effort to identify documents responsive to Request No. 3. Nevertheless, in the interest of avoiding an unnecessary dispute, we are continuing to explore the feasibility of adding the "OOP" terms you have proposed and will revert when we have additional information.

Scope of Custodial Searches. TrialCard and SaveOnSP have met and conferred multiple times and exchanged extensive discovery correspondence addressing the scope of the searches it will conduct to satisfy its discovery obligations, and, as relevant here, why TrialCard believes custodial discovery is unnecessary as to certain Requests for Production. Custodial discovery is unlikely to yield non-duplicative information that JJHCS has not already produced. Nevertheless, we have agreed to perform custodial searches in an effort to resolve SaveOnSP's concerns about the sufficiency of TrialCard's productions and to avoid unnecessary recourse to motion practice.

Emma Holland, Esq.
August 24, 2023
Page 2

To address the questions you have raised concerning the specific RFPs you identify in your letter, we direct you to our May 12 letter, which describes at length the reasons why SaveOnSP's RFP Nos. 5–7, 10, 16, 17, 20–22, 24, 25, 27, 29, and 32 do not require additional collection and production of documents. By way of summary, we reiterate the following:

- Based on our reasonable investigation, TrialCard does not believe that it possesses documents responsive to RFP Nos. 5, 6, 10, 17, 20–22, 27, and 32 that are not also in the possession of JJHCS.

- TrialCard does not believe it has any documents responsive to RFP Nos. 7 and 29 that relate to TrialCard's implementation of the CarePath program.

- TrialCard has already produced call notes for patient calls using search criteria designed to capture relevant communications concerning SaveOnSP. After a reasonable investigation, TrialCard does not believe it has additional documents responsive to RFP No. 16.

- In response to RFP No. 24, TrialCard has produced organization charts for the portions of its business that oversee the administration of CarePath. Based on a reasonable investigation, TrialCard does not believe it has other documents responsive to RFP No. 24 that are not also in the possession of JJHCS.

- JJHCS has agreed to produce its agreements, work orders, and associated documents with TrialCard. These documents are responsive to RFP No. 25. TrialCard does not believe it has other documents responsive to RFP No. 25 that are not also in the possession of JJHCS.

Documents Produced by JJHCS. TrialCard will not produce documents that it believes to be in the possession of JJHCS because such documents are duplicative of party discovery. As we already explained at length our August 3 letter, SaveOnSP's reliance on *Wyeth v. Abbott Laboratories*—which SaveOnSP first cited in its July 26 letter—squarely supports TrialCard's position that a third-party is not required to duplicate party productions. *See Wyeth v. Abbott Laby's*, 2011 WL 2429318, at *8 (D.N.J. June 13, 2011) ("To the extent Plaintiffs seek to compel Novartis to produce documents already produced by Abbott, Plaintiffs motions to enforce their subpoenas are denied as duplicative."). As counsel to both JJHCS and TrialCard, we state that both JJHCS and TrialCard are complying with their respective discovery obligations and conducting searches as agreed upon with SaveOnSP. Further, as we have previously explained, JJHCS has produced over 4,000 communications and related documents between JJHCS and TrialCard.

Additional Custodians and Custodial Search Terms. As you know, TrialCard has designated four custodians to address SaveOnSP's concerns and avoid an unnecessary dispute. Despite TrialCard's reasonable efforts to reach compromise, you persist in your unreasonable request for sixteen custodians. Once again, this is disproportionate given TrialCard's very narrow

Emma Holland, Esq.
August 24, 2023
Page 3

role in the events relevant to this litigation, and we will not add the twelve additional custodians you have requested.

        You have also asked us to substantiate the burden of adding these additional custodians. TrialCard has run a hit report across its existing four custodians (Holly Weischedel, Sini Abraham, Paul Esterline, and Rick Fry) for the search terms proposed in Appendix A of SaveOnSP's July 26 letter. This report resulted in over 128,000 documents, inclusive of families. Given that tens of thousands of documents hit on these search terms for just these four custodians, it is self-evident that there will be a significant, undue burden associated with engaging in custodial discovery for all sixteen custodians you have requested. As such, we decline to designate the additional twelve TrialCard custodians you have proposed. We also suggest that you review the documents TrialCard produces from these four custodians in order to make an assessment about whether the additional proposed review is warranted.[1]

        <u>Retention Policy.</u> TrialCard has produced all retention documents that it has been able to identify based on reasonable investigation for the applicable time frame.[2]

        Very truly yours,

        */s/ Katherine Brisson*
        Katherine Brisson

---

[1] In our letter of August 3, we stated that we would provide an evaluation of the search terms you proposed in Appendix A to your July 26 letter ("Appendix A"). TrialCard does not understand SaveOnSP to be disputing JJHCS's proposed Search Terms Nos. 2, 3, and 4 contained in Appendix A. Accordingly, we will run these mutually-agreed upon terms over the files of Weischedel, Abraham, Esterline, and Fry. TrialCard has run a hit report for SaveOnSP's proposed Search Term No. 1 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "Save OnSP" OR Maximize* OR ("Express Scripts" OR ESI) OR Accredo OR CAP*), and has concluded that the term is overinclusive, yielding over 91,000 search hits, family inclusive, for just the existing four custodians. As such, we decline to add it to our existing custodial search methodology. We will, however, run TrialCard's Search Term No. 1 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP).

[2] For this reason, we also decline to run SaveOnSP's proposed Search Term No. 5 in Appendix A. Nevertheless, in the interest of avoiding a dispute and to ensure that there are no other responsive documents from the four existing custodians, we will include the term "retention policy" as proposed in Search Terms Nos. 2, 3, and 4.

# Exhibit 27



www.pbwt.com

April 7, 2023

Harry Sandick
(212) 336-2723

**VIA EMAIL**

Andrew Dunlap, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
adunlap@selendygay.com

      Re:    **TrialCard's Responses and Objections to SaveOnSP's Subpoena**
                   *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*,
                   No. 22 Civ. 2632 (ES) (CLW)

Dear Andrew:

      We write on behalf of TrialCard in response to your March 15, 2023 letter regarding TrialCard's Responses and Objections to SaveOnSP's Third Party Subpoena.

      ***First***, SaveOnSP requests information as to whether "TrialCard is withholding any documents on the basis that it believes that they are available in party discovery" with regard to SaveOnSP's RFP Nos. 2-22, 24-27, 29, and 32.  As an initial matter, TrialCard will not produce materials responsive to SaveOnSP's RFP Nos. 4, 18 (a)-(h), and 19, because the Court sustained JJHCS's objections to the documents and communications sought by these requests in the March 17, 2023 discovery conference.  With respect to SaveOnSP's RFPs 2, 3, 18 (i)-(m), and 30, JJHCS has already agreed to produce responsive documents on TrialCard's behalf.

      With respect to the other RFPs, TrialCard is objecting to these requests because, among other things, these requests are targeted at issues that are logically explored only through party discovery and not through discovery from TrialCard.  SaveOnSP's "cut-and-paste" document requests to TrialCard ignore the fact that while JJHCS's understanding of various issues may be relevant to the case, TrialCard's independent understanding of these issues will not be relevant, absent some reason to believe otherwise based on documents produced in party discovery.  For this reason, the production of documents by TrialCard on these issues is not appropriate.  This position is consistent with TrialCard's general and/or specific objections to all of SaveOnSP's requests based on relevance.

Andrew Dunlap, Esq.
April 7, 2023
Page 2

We provide further explanation of the nature of our objections below:

RFP 5:  This request seeks all documents and communications regarding CarePath terms and conditions.  While JJHCS is making a production of such documents, TrialCard was not involved in any decisions regarding the drafting or revision terms and conditions.  Nor is its interpretation of those terms relevant.  As a result, TrialCard will have no independent, relevant information about the terms and conditions, such as the terms "offer" or "health plan," and its understanding of those terms (if any) is irrelevant to this case.

RFP 6:  This request seeks information about CarePath's requirement that patients make some payment toward their copay.  TrialCard does not set the patient copay amounts.  TrialCard is not a party to the contract at issue in this case.

RFP 7:  This request seeks documents relating to how specialty drugs are designated under the Affordable Care Act.  JJHCS has agreed to produce certain documents that concern this issue.  There is no reason to believe that TrialCard would have documents relevant to JJHCS's understanding of these issues that are not available from JJHCS, and TrialCard's own understanding of these issues is irrelevant to this lawsuit.

RFPs 13 and 14:  These requests seek documents and communications about SaveOnSP's direct or indirect impact on the financial viability of CarePath.  TrialCard is not responsible for the financing of CarePath in any respect.  Moreover, JJHCS has already agreed to produce certain documents in response to these requests, and those documents will be produced in the coming weeks.

RFP 15:  This request seeks materials "regarding any alleged harm caused by SaveOnSP to JJHCS."  JJHCS is already producing documents that are responsive to a similar request.  This is not an appropriate subject for third-party discovery, as TrialCard's understanding of this issue, to the extent it even has one, is not relevant.

RFP 22:  This request seeks documents "regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans."  To the extent that TrialCard may have been involved in the efforts to identify these patients and health plans, JJHCS's production will capture such documents and communications in the first instance.

The same is true for the other RFPs identified in SaveOnSP's letter:  RFP 8 (SaveOnSP's misleading communications); RFPs 9-10 (payments to patients in high deductible or health savings account plans), RFP 11-12 (harm caused to patients in the SaveOnSP program), RFP 16 (payment of patient costs), RFP 17 (documents relating to internal JJHCS data), RFP 20 (Stelara and Tremfya program changes), RFP 21 (payments in excess of program caps), RFP 22 (efforts by JJHCS to identify patients in health plans advised by SaveOnSP), and RFP 32 (TrialCard's communications about the action).  TrialCard's understanding on the issues raised by these requests is not relevant to the lawsuit, and TrialCard should not be required to produce

Andrew Dunlap, Esq.
April 7, 2023
Page 3

documents in response to them unless party discovery demonstrates that TrialCard would have documents that bear on JJHCS's understanding of these issues.

**Second**, SaveOnSP seeks additional information for RFP Nos. 1-3 and 18 to which TrialCard responded that it had already agreed to produce responsive documents through JJHCS, subject to objections already lodged by JJHCS. TrialCard will address each RFP below.

RFPs 1 and 2: TrialCard confirms that it will produce its organization charts for TrialCard between 2016 and 2022 through JJHCS.

RFP 3: This request seeks all documents and communications "with or regarding SaveOnSP, including those between You and JJHCS, You and any patients, and You and any other Hub Entity." TrialCard is available to meet and confer to discuss issues related to the collection of call notes, recording and related records to determine an appropriate approach given issues specific to the format in which those materials are maintained. Other responsive materials should be pursued through party discovery.

RFP 18: TrialCard will produce through JJHCS documents responsive to SaveOnSP's RFP 18 subparts (i) through (m), which seeks CarePath enrollment and claims data. Pursuant to the Court's order, TrialCard will not produce through JJHCS or otherwise documents responsive to SaveOnSP's RFP 18 subparts (a) through (h).

Bates-stamp identifier: TrialCard confirms that we will use a unique Bates-stamp identifier to distinguish its document production from those documents produced by JJHCS.

**Third**, SaveOnSP raises concerns about TrialCard's relevance objections to SaveOnSP's RFPs 5, 6, 18 (i)-(m), 19, 20, 22, and 26. As you observe, in some cases TrialCard's relevance objections are broader than JJHCS's relevance objections. This is for the same reason noted above: while JJHCS's understanding of various issues presented in this lawsuit may support valid document requests, TrialCard's understanding of these same issues will often be irrelevant. We have discussed the nature of TrialCard's objections to these requests earlier in this letter, except for RFP 26. TrialCard will not produce documents responsive to this request due to its vague and ambiguous nature, and the undue burden presented by the request as we understand it.

**Fourth**, TrialCard confirms that it intends for its objections to the Time Period applicable to SaveOnSP's RFP Nos. 1, 2, 5-6, 18, 19, and 25-28 to be consistent with JJHCS's objections that request similar information. TrialCard will comply with any court order applicable to those RFPs.

**Fifth**, as SaveOnSP has explained, TrialCard has lodged a specific objection to the vague and ambiguous nature of SaveOnSP's RFP 4, 8, 9, 15, 16, 18, 19, 21, 26, 27, 31, and 32. Many of these requests are also the subject of other objections. To the extent that TrialCard makes a production in response to these RFPs, it will construe any vague or ambiguous terms in accordance with TrialCard's reasonable understanding of such terms and produce the responsive

Andrew Dunlap, Esq.
April 7, 2023
Page 4

documents. If SaveOnSP wishes to clarify any of its requests, please advise us of any such clarifications.

*Sixth*, SaveOnSP asks whether TrialCard is withholding documents responsive to RFP 7 based on our objection that it calls for views on a legal question. As noted, TrialCard's understanding of health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits is irrelevant. TrialCard is a third-party with no insight into how these designations are made and it has no influence over these designations—which of course are not made by anyone at TrialCard. These are the grounds for TrialCard's refusal to produce documents at the present time, and not the fact that the request calls for legal interpretation.

TrialCard is available to meet and confer on its responses and objections to SaveOnSP's RFPs.

Very truly yours,

Harry Sandick

14206013

# Exhibit 28

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

selendy
gay
elsberg

Andrew Dunlap
Partner
212 390 9069
adunlap@selendygay.com

April 28, 2023

**Via E-mail**

George Carotenuto
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
gcarotenuto@pbwt.com

**Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-JMV-CLW)**

Dear George,

We write to follow up on our April 25 and 26 meet and confers regarding TrialCard, Inc.'s ("TrialCard") responses and objections to Save On SP LLC's ("SaveOnSP") Requests for Production.

**I.      RFP Nos. 4, 18 (a)-(h), and 19**

In its April 7, 2023 letter, TrialCard stated that it will not produce materials responsive to RFP Nos. 4, 18(a)-(h), and 19 because the Court sustained Johnson & Johnson Health Care Systems Inc.'s ("JJHCS") objections to the documents and communications sought by these requests in the March 17, 2023 conference. We explained that the court dismissed certain of SaveOnSP's motions to compel without prejudice and SaveOnSP may renew its motion. As such, we asked whether TrialCard would produce responsive documents if JJHCS was ordered to produce documents responsive on the same topic. You stated that TrialCard will generally produce documents to the same extent as JJHCS and will inform us if it does not.

**II.     Time Period**

We asked whether TrialCard would adjust the time period for all responsive documents to date back to April 2016.  You answered that that TrialCard would do so. You also stated that TrialCard's first production on April 24, 2023 would include documents dated back to April 2016 and, if not, the next production would.

George Carotenuto
April 28, 2023

## III.    Requests for which TrialCard Agreed to Produce Responsive Documents

We noted that TrialCard, in its responses and objections ("R&Os"), stated that it would produce "certain responsive documents" through JJHCS for several requests. We asked whether, for those requests, TrialCard is withholding any responsive documents. You stated that, with regard to one part of RFP No. 3, Trial-Card's communications with patients regarding SaveOnSP, TrialCard is attempting to identify responsive audio recordings by running search terms similar to JJHCS's proposed search terms over call center notes. You stated that you would provide further information about this search next week, including the search terms that TrialCard is using. You otherwise confirmed that for RFP Nos. 2, 3, 18(i)-(m) and 30, TrialCard is not withholding any responsive documents.

Please also confirm that TrialCard will produce all documents responsive to RFP No. 1.

## IV.    Vague and Ambiguous Objections

In your R&Os you objected to portions of RFP Nos. 4, 8, 9, 15, 16, 18, 19, 21, 26, 27, 31 and 32 as vague and ambiguous.

RFP No. 26 seeks documents sufficient to show the percentage of patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs. We explained that it seeks records that show how many patients, after JJHCS (or its vendors, like TrialCard) encourage them to enroll in CarePath, do enroll in CarePath and how many do not. You stated that you would let us know if JJHCS still maintained that this request was vague or ambiguous. You also stated that you do not believe that TrialCard would have documents responsive to RFP No. 26 because you believe that JJHCS entities typically do not contact patients to get them to enroll in CarePath and that TrialCard conducts no such analysis to determine how many patients sign up after contact with JJHCS entities. We asked if you had investigated to reach this conclusion. You stated that you would investigate and let us know if JJHCS still maintains that TrialCard has no documents responsive to RFP No. 26.

For RFP Nos. 4, 8, 9, 15, 16, 18, 19, 21, 27, 31 and 32, we noted that in your April 7, 2023 letter, you said that, to the extent TrialCard makes a production in response to those requests, it will construe any vague or ambiguous terms in accordance with TrialCard's reasonable understanding of such terms. You agreed to tell us how TrialCard interprets any terms in those RFPs that it maintains are vague or ambiguous.

## V.    RFP Nos. 5, 6, and 7

SaveOnSP's RFP Nos. 5 and 6 seek, respectively, all documents and communications regarding CarePath's terms and conditions, and all documents and

2

George Carotenuto
April 28, 2023

communications regarding CarePath's requirement that patients enrolled in Care-Path make any payments towards Janssen Drugs. TrialCard has refused to produce documents responsive to these requests. During our meet and confer, we explained that gathering information on JJHCS's terms and conditions is key to the case because of JJHCS's tortious interference claim. You stated that TrialCard's under-standing of JJHCS's terms and conditions is not relevant to the case because Trial-Card had no role in the drafting the terms and conditions. You confirmed that TrialCard communicates with patients regarding JJHCS's terms and conditions, following JJHCS's direction. We explained that TrialCard documents or commu-nications about JJHCS's instructions on explaining terms to patients, or showing how TrialCard implements those terms is relevant to the meaning of those terms. You stated that you would let us know if JJHCS still maintains that TrialCard's documents on this topic are irrelevant.

SaveOnSP's RFP No. 7 seeks all documents and communications regarding TrialCard's understanding of commercial health plans' ability to designate spe-cialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act ("ACA") and its regulations. During our meet and confer, we explained that, to the extent that JJHCS agrees that its understanding of this issue is relevant, TrialCard's understanding is relevant as well. We explained that if TrialCard's understanding of the ACA is different from JJHCS, that would go to the credibility of JJHCS's allegations. You stated that you think TrialCard's under-standing of this issue is not relevant.

## VI.   RFP Nos. 5-17, 20-22, 24-27, 29, and 32

During our meet and confer, you agreed to investigate and tell us whether TrialCard has any documents responsive to RFP Nos. 5-17, 20-22, 24-27, 29, and 32 that are not also in the possession of JJHCS.

* * *

We request your response by Friday, May 5 and are available to continue to meet and confer.

Sincerely,

/s/ Andrew Dunlap

Andrew Dunlap
Partner

# EXHIBITS 29-30
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 31



January 26, 2024

Caroline Zielinski
(212) 336-2206

**By Email**

Taylor Stone, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
       **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Taylor,

We write in response to your January 2, 2024 letter concerning JJHCS's privilege log and further to related correspondence.[1]

After reviewing the documents that you identified in your letter, we no longer seek to fully withhold or maintain all of the redactions in the documents listed in Appendix A to this letter. Accordingly, JJHCS will produce these documents either in full or with more limited redactions in a forthcoming production.

With respect to the documents you identified that are not listed in Appendix A, we disagree with the assertions raised in your letter. These documents were properly withheld pursuant to applicable privileges, including the attorney-client and/or the work product privileges. To address your contentions, JJHCS provides additional information about those documents below.

**Exhibit 1 Documents.** SaveOnSP first asserts that approximately 160 documents on Exhibit 1 were improperly withheld based on attorney-client privilege "without indicating that they involve communications with counsel." Contrary to SaveOnSP's assertion, JJHCS's privilege log indicates that an attorney was the author or recipient of multiple of the identified documents in this category. *See* PL000002020 (email in which S. Harris is the author); PL000002021 (email in which S. Harris is the recipient); and PL000001630 (email in which C. Bosch is copied). In addition, Exhibit 1 includes draft documents properly withheld pursuant

---

[1] We have separately addressed SaveOnSP's request for an updated privilege log and a log of all partially redacted documents. *See* Jan. 11, 2024 Ltr. from J. Long to E. Snow.

Taylor Stone, Esq.
January 26, 2024
Page 2

to the attorney-client privilege because they include comments from JJHCS's in-house attorneys reflecting legal advice related to the operation of JJHCS's copay assistance programs, including training modules, work orders, and terms and conditions. *See, e.g.*, PL000000049 (comments from J. De Camara), PL000002012 (comments from C. Bosch); PL000002762 (comments from M. Shea). Assertion of the attorney-client privilege in this circumstance is based on well-established law. *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prods. Mtking, Sales Practices, & Prods. Liability Litig.*, 2021 WL 3144945, at *6 (D.N.J. July 26, 2021) (sustaining attorney-client privilege assertions with respect to "draft documents containing [an in-house attorney's] comments" as they "reflect [their] legal input and analysis").

Moreover, whether an attorney is listed as an author or recipient of a document does not determine whether a document is properly withheld pursuant to the attorney-client privilege. The attorney-client privilege extends to communications comprising a discussion of legal analysis regardless of whether an attorney is included on the communication. *See, e.g.*, *Engage Health Comms., LLC v. Intellisphere, LLC*, 2017 WL 10259770, at *3 (D.N.J. Sept. 12, 2017), *report & recommendation adopted* 2017 WL 10259774 (Nov. 21, 2017) (explaining that a document comes within the attorney-client privilege even if it reflects a "communication between two non-attorneys" as long as it "reflect[s] the [provision of] legal advice"). JJHCS has properly withheld documents included in Exhibit 1 that reflect legal analysis and incorporate requests for legal advice pertaining to the design and implementation of JJHCS's copay assistance programs. *See, e.g.*, PL000000256; PL000000226; PL000000244; PL000000246; PL000000227. *See also In re Johnson & Johnson*, 2021 WL 3144945, at *10 (explaining that the "absence of an attorney on a document is not necessarily determinative" as "[c]ommunications remain privileged if they assist [an] attorney to formulate and render legal advice" (internal quotation marks and citation omitted)).

**Exhibit 2 Documents.** SaveOnSP next argues that JJHCS improperly withheld information in approximately 90 documents on Exhibit 2, because the documents "do not appear privileged based on their descriptions." SaveOnSP provides no legal authority for its suggestion that the provision of legal advice must be apparent from the document's description. To the contrary, the privilege determination depends on an assessment of whether the underlying document includes disclosures "necessary to obtain informed legal advice." *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *4 (D.N.J. Dec. 5, 2016), *on reconsideration in part*, 2017 WL 11633446 (D.N.J. Jan. 5, 2017) (quoting *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423-24 (3d Cir. 1991)). As with Exhibit 1, many of the documents on Exhibit 2 were properly withheld because they convey legal advice from JJHCS's in-house attorneys, *see, e.g.*, PL000001075 (reflecting legal advice from J. Williams on draft presentation); PL000000424 (conveying legal advice from J. De Camara); PL000000097 (reflecting J. De Camara's legal advice), or reflect requests for legal advice, *see, e.g.*, PL000000097 (identifying areas for which legal advice was required); PL000000427 (same); PL000000414 (same). In addition, as JJHCS's privilege log indicates, PL000002242 was properly withheld pursuant to the attorney-client and work product privileges as it reflects an attorney-client communication relating to litigation strategy.

Taylor Stone, Esq.
January 26, 2024
Page 3

**Exhibit 3 Documents.** SaveOnSP contests that JJHCS improperly withheld approximately 130 "calendar invites" included in Exhibit 3. Although neither the attorney-client nor the work product privilege applies to "the facts underlying any given communication," a "communication concerning that fact is entirely different." *La. Mun. Police Employees Retirement Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 305 (D.N.J. 2008); *In re Johnson & Johnson*, 2021 WL 3144945, at *4. Email communications accompanying the calendar invitations at issue in Exhibit 3 were properly withheld when they reflect discussions with JJHCS's legal team regarding strategies for this litigation. *See* PL000001253 (email communication with S. Harris regarding strategy for current litigation); PL000001257 (same); PL000002117 (email from S. Harris explaining purpose of meeting tied to litigation strategy); PL000001913 (same); PL000001919 (same); PL000001920 (same). Likewise, information underlying requests for legal advice, to be discussed at upcoming meetings with counsel, was also properly withheld. *See, e.g.*, PL000000398 (email reflecting areas for legal input for discussion at meeting with in-house counsel); PL000001217 (email explaining topics for discussion at upcoming meeting with S. Harris); PL000000820 (same); PL000000821 (same); PL000001938 (email explaining purpose of call regarding legal questions for S. Harris). That said, after further review, JJHCS will be producing certain calendar invitations previously withheld in redacted form.

**Exhibit 4 Documents.** SaveOnSP identifies approximately 60 documents on Exhibit 4 that it contends were improperly withheld pursuant to the work product privilege. As indicated in JJHCS's privilege log, however, Exhibit 4 includes documents prepared in anticipation of JJHCS's litigation against SaveOnSP. *See, e.g.*, PL000001086 (Oct. 2021 email communication with S. Harris discussing litigation strategy); PL000001108 (same); PL000001088 (October 2021 email communication between S. Harris and outside counsel discussing litigation strategy). Furthermore, contrary to SaveOnSP's description that Exhibit 4 "contains a list of documents withheld solely on the basis of the work product privilege," JJHCS's privilege log indicates that many documents included in Exhibit 4 were also withheld based on application of the attorney-client privilege. These documents include communications with JJHCS's counsel that reflect requests for legal advice or convey counsel's legal analysis regarding the implementation of JJHCS's patient assistance programs. *See, e.g.*, PL000000224 (email with J. De Camara requesting legal advice); PL000001045 (email with J. De Camara reflecting legal analysis).

**Exhibit 5 Documents**. SaveOnSP argues that JJHCS has improperly withheld or redacted approximately 240 documents on Exhibit 5 because the attorney-client privilege was waived through disclosure of these documents to third parties. As an initial matter, Exhibit 5 contains many emails in which no third parties are included on the latest-in-time communications. In those instances, JJHCS employees have forwarded a communication with a third party to JJHCS's in-house counsel to request their legal analysis. *See, e.g.*, PL000001869 (email communication with third party forwarded to S. Harris requesting legal analysis); PL000001854 (same). These documents were properly withheld, as the attorney-client privilege extends to emails which "forward[] [to counsel] prior non-privileged emails" that underlie the request for legal advice and assist the attorney in providing their analysis. *Engage Health*, 2017 WL 10259770, at *3 ("[E]ven though one email is not privileged, a subsequent and privileged email

Taylor Stone, Esq.
January 26, 2024
Page 4

which forwards that prior non-privileged email, will allow the privilege to attach to the entire email chain, including the non-privileged prior email messages." (quoting *Rhoads Indus. Inc. v. Building Materials Corp. of Am.*, 254 F.R.D. 238, 240 (E.D. Pa. 2008)).

        With respect to documents shared with third parties, the attorney-client privilege is maintained when an independent consultant acts as the "functional equivalent" of the party's employee and the communication with the third party was "kept confidential and made for the purpose of obtaining or providing legal advice." *In re Johnson & Johnson*, 2021 WL 3144945, at *9 (citing *In re Flonase Antitrust Litig.*, 879 F. Supp. 2d 454, 460 (E.D. Pa. 2012)); *see id.* (explaining that communications between Johnson & Johnson and its consultants, "even in the absence of an attorney . . . may be privileged if they are necessary for the client to obtain[] informed legal advice"); *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *6, *8 (applying functional equivalent doctrine to documents between party and public relations and communications consultants).

        This legal principle recognizes that "in-house counsel should be able to communicate freely with consultants about legal issues without being chilled by the prospect that their communications will be produced to an adversary in discovery." *In re Johnson & Johnson*, 2021 WL 3144945, at *9. Documents listed in Exhibit 5 were appropriately withheld pursuant to this standard because they include confidential communications between JJHCS and third parties relating to information requested by or provided to JJHCS's attorneys to assist in their analysis of legal issues. *See, e.g.*, PL000002658 (email in which third party provides information requested by JJHCS's counsel to assist in the provision of legal advice); PL000002370 (same); PL000002292 (email in which JJHCS's counsel requests information necessary to provision of legal advice); *see also In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *9 (holding that information provided by third party "needed by [party's] attorneys to render legal advice" is privileged). Exhibit 5 also includes documents protected by the attorney-client privilege because they convey the legal analysis of JJHCS's attorneys. *See, e.g.*, PL000001908 (email conveying legal advice); PL000001750 (draft document reflecting legal advice); PL000001751 (same). *See also In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *10 (finding documents shared with third party were privileged where the "documents indicate[d] actual legal advice was conveyed" including an "email asking for legal insight" or an "email referring to attorney advice"); *In re Johnson & Johnson*, 2021 WL 3144945, at *7 (finding documents shared with third party privileged where they were reviewed by counsel "with a view towards legal issues").

*    *    *

        Finally, based on our review of SaveOnSP's revised privilege log dated October 10, 2023, we have identified several areas of concern, where it appears that SaveOnSP has inappropriately redacted or withheld certain documents that should have been produced. For example, the following documents appear on SaveOnSP's privilege log:

- **Emails that were sent to or from third parties.** *See, e.g.*, SOSP_0817331 (an email fully withheld for privilege from an individual with a "RideMetro.Org"

Taylor Stone, Esq.
January 26, 2024
Page 5

domain to Claudia Dunbar, Ron Krawczyk, Jill Stearns, and two individuals at
Express Scripts Inc. ("ESI")); SOSP_0827911 (an email redacted for privilege
including Michael Kirchhoff with an ESI domain); SOSP_0828613 (an email
redacted for privilege including Aaron Mallin with an ESI domain);

- **Inconsistent privilege calls.** *See* SOSP_0832627, which is an attachment titled
  "JnJ letter page 2.pdf." This document was withheld as privileged even though
  "page 1" of this same attachment was produced; and

We have identified similar issues for the following documents that have not yet
been logged on SaveOnSP's privilege log:

- SOSP_0940021, which is a spreadsheet reflecting notes on SaveOnSP calls with
  external parties, including Allina Health System, International Association of Heat
  and Frost Insulators Local 17 Welfare Fund, SKC, Inc., AmerisourceBergen
  Corporation, and HealthSmart; and

- SOSP_1034728, which is text message exchange involving no lawyers that was
  sent to and from a third party.

Please explain by February 2, 2024 why you have withheld or redacted the specific
documents identified above. In the event you no longer wish to assert privilege over any of the
documents identified herein, please promptly produce them.

Finally, in response to your SaveOnSP's January 25, 2024 letter, we can confirm
that JJHCS has included, and will continue to include, all thread participants on emails included
on its privilege logs. Thank you for confirming that SaveOnSP will correct its privilege log to
address this issue and to adopt this practice moving forward. *See* Jan. 25, 2024 Ltr. from E. Snow
to J. Long. Please confirm that you will provide the corrected version of your privilege log by
February 13, 2024.

Very truly yours,

*/s/Caroline Zielinski*
Caroline Zielinski

# Exhibit 32



www.pbwt.com

June 16, 2023

Katherine Brisson
(212) 336-2552

**<u>VIA EMAIL</u>**

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:     ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
          **<u>No. 2:22-cv-02632 (ES) (CLW)</u>**

Dear Emma:

On behalf of TrialCard, we write in response to your June 14, 2023 letter concerning TrialCard's productions in the above-captioned matter.

## I.      Non-Custodial Documents

In your May 31, 2023 letter, SaveOnSP requested that TrialCard identify the individual custodian or the specific noncustodial source for each document it has produced. In response to that request, TrialCard explained that it would not identify the specific sources for noncustodial documents—an approach entirely consistent with the parties' practices in this litigation. *See* Ltr. from K. Brisson to E. Holland dated June 7, 2023. Indeed, SaveOnSP has not identified the specific sources for any non-custodial document it has produced in this litigation. SaveOnSP can hardly place demands on a third party for format requirements that it has not even complied with itself in party discovery.

The documents that TrialCard has produced in this matter consist of, among other things: (1) organizational charts, (2) CarePath claims and enrollment data, (3) template letters and related communications to patients; (4) patient call notes; and (5) a document retention policy. To identify and collect such documents, we worked closely with our client to identify responsive materials and the repositories in which they are maintained. For example, we worked with the Chief Compliance Officer and General Counsel to identify organizational charts and the document retention policy. Similarly, we worked with Quality Assurance and Quality Control personnel to source call data from a dedicated database and with appropriate client service representatives to retrieve enrollment and claims data from a centralized location. We can discern no basis for SaveOnSP's request for additional information about the specific sources for these documents. Nevertheless, we are willing to consider a reasoned request for additional source information on a case-by-case basis.

Emma Holland, Esq.
June 16, 2023
Page 2

## II.    Custodial Documents

TrialCard has engaged in substantial efforts to identify and produce documents responsive to the SaveOnSP's subpoena, including producing over 19,000 call notes and over 100 responsive non-custodial documents. *See, e.g.*, Ltr. from K. Brisson to E. Holland dated June 7, 2023. JJHCS has also produced a substantial number of documents, including more than 4,000 communications (and related materials) between JJHCS and TrialCard, that are responsive to SaveOnSP's subpoena to TrialCard. As we have repeatedly explained, TrialCard, as a third party, need not produce documents duplicative of those JJHCS has produced—a position SaveOnSP has fully embraced in ongoing third-party motion practice.

Indeed, as you know, JJHCS served third party subpoenas on SaveOnSP's business partners, Express Scripts Inc. ("ESI") and Accredo Health Group, Inc. ("Accredo"). In stark contrast to TrialCard, neither ESI nor Accredo have produced *any* documents in response to those subpoenas, arguing in part that third parties need not duplicate party productions. SaveOnSP has even gone out of its way to support ESI and Accredo's efforts to resist discovery, including by submitting its own affidavits detailing the number of documents SaveOnSP has produced in this litigation. *See* Dunlap Aff., *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*, No. 4:23-mc-527-SEP (E.D. Mo.), D.E. 13-10 (declaration from SaveOnSP's lead trial counsel in support of ESI's Opposition to JJHCS's Motion to Compel); Dunlap Aff*., Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*, No. 2:23-mc-00019-JTF-tmp (W.D. Tenn.), D.E. 19 (same in support of Accredo). SaveOnSP nevertheless expects TrialCard to bear far more burdensome discovery than its own business partners are willing to undertake.

Despite TrialCard's considerable efforts to comply with the subpoena (and SaveOnSP's business partners' complete failure to do the same), SaveOnSP now apparently wishes to move to compel additional custodial documents from TrialCard. Any such motion would be grossly unripe and meritless. SaveOnSP has not identified any gaps in TrialCard's productions, nor has it identified specific documents that it seeks from any specific custodian. While TrialCard is willing to consider targeted custodial collections, it cannot do so entirely in the abstract and without any direction whatsoever as to which of SaveOnSP's thirty-two document requests purportedly warrants a custodian.

TrialCard has carefully reviewed the subpoena, delineated its objections and scope of production, and produced responsive documents. If SaveOnSP believes some particular document request still requires a supplemental TrialCard custodial production despite the party and non-party productions to date, please identify those requests, why they purportedly require custodial production, and which custodians you seek. We will then consider any such request.

## III.    Request for Consent to File Joint Letter

Finally, SaveOnSP has asked for TrialCard's consent to submit a joint letter on these issues before Magistrate Judge Waldor in the District of New Jersey. As you are well aware, TrialCard, which is headquartered in North Carolina, is a nonparty in this case. While TrialCard is willing to consider a request to proceed before Judge Waldor rather than in North Carolina, it cannot do so without additional information concerning the scope of a dispute, once ripe, and the

Emma Holland, Esq.
June 16, 2023
Page 3

specific relief SaveOnSP intends to seek.  This is particularly so given your acknowledgement in the June 14 letter that you are still reviewing our May 31 letter.

Very truly yours,

*/s/ Katherine Brisson*
Katherine Brisson

# Exhibit 33



June 30, 2023

Katherine Brisson
(212) 336-2552

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    *Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC*
       *Case No. 2:22-cv-02632 (ES) (CLW)*

Dear Emma:

On behalf of TrialCard, Inc. ("TrialCard"), we write in response to your June 29, 2023 letter regarding our June 28, 2023 meet and confer concerning TrialCard's responses to Save On SP, LLC's (SaveOnSP) subpoena.

As a preliminary matter, we disagree with several of the assertions made in your June 29 letter. First, we did not categorically state that "the only relevant materials" in TrialCard's possession are "communications that it provides to JJHCS [Johnson & Johnson Health Care Systems, Inc.] during the normal course of business." Rather, we explained that because TrialCard is a vendor tasked with administering CarePath at the direction of JJHCS, responsive documents that it would possess would largely be in the possession of JJHCS as well. Indeed, as we have stated in our correspondence, TrialCard does not independently interpret the CarePath terms and conditions without direction from JJHCS, nor does it independently analyze the harm SaveOnSP has caused to JJHCS. *See* Ltr. from G. Carotenuto to A. Dunlap dated May 12, 2023 at 3–4.

Relatedly, as we explained at length previously and during the meet and confer, purely internal communications concerning issues that do not relate to TrialCard's implementation of the CarePath program are not relevant to the claims and defenses in the litigation. *See, e.g.*, Ltr. from K. Brisson to E. Holland dated June 7, 2023 at 2. Thus, for example, the documents sought by RFP Nos. 7, 9, and 29—which seek documents entirely unrelated to TrialCard's provision of services to JJHCS—are immaterial to the claims at issue. TrialCard should not be forced to search for them in any format, custodial or non-custodial.

In addition, you mischaracterize TrialCard's willingness to search for or produce custodial documents, stating inaccurately that we "refuse[]" to do so. Rather, we repeatedly stated that following reasonable investigation, we had concluded that such custodial discovery was unnecessary to fulfill our obligations under the subpoena. This is especially so in light of the substantial productions made to date, including the production of over 19,000 patient call notes,

Emma Holland, Esq.
June 30, 2023
Page 2

numerous patient form letters, and voluminous spreadsheets containing enrollment and claims data. In any event, we also repeatedly reiterated our willingness to search for and produce custodial documents, but noted that we could not do so entirely in the abstract, without any direction whatsoever as to which of your thirty-two requests merit custodial discovery. You refused to identify any purported gaps in our productions thus far, and you similarly refused to identify any specific requests that you believe merit a custodial production.

Your letter also fails to memorialize the discussion we had concerning the ongoing third-party motion practice involving JJHCS and Express Scripts Inc. ("ESI") and Accredo Health Group, Inc. ("Accredo"). During the meet and confer, we asked if you were willing to memorialize your apparent position that a third-party must always produce custodial documents to comply with its third-party subpoena obligations. You stated that despite submitting an affidavit in support of ESI's and Accredo's opposition to JJHCS's motions to compel, you had not read the oppositions in those cases, and you had no position on whether ESI or Accredo should be required to produce any discovery at all. Given your submission of affidavits in support of ESI and Accredo, we find it less than plausible that you do not endorse their positions. Regardless, however, we reiterate that SaveOnSP's position in relation to the instant TrialCard subpoena is inconsistent with the positions taken by its own business partners. *See* Ltr. from K. Brisson to E. Holland dated June 16, 2023 at 2.

All else aside, we have conveyed your position to our client and, in an effort to seek compromise, we are diligently working to determine whether there is anything more to be done to satisfy the concerns raised in your letter. We will provide an update as soon as possible.

Finally, you have requested information concerning who is paying for TrialCard's costs in connection with responding to the subpoena. This is a remarkable request given that SaveOnSP itself has refused to provide this information, absent Court order, in the context of the ongoing litigation. *See, e.g.*, Joint Ltr. to Judge Waldor dated Apr. 11, 2023 at 5 (memorializing SaveOnSP's refusal to respond to JJHCS's Interrogatory No. 14 requesting information concerning the payment of SaveOnSP's legal fees). SaveOnSP can hardly place demands on a third party for information that it itself has refused to provide in party discovery.

Very truly yours,

*/s/ Katherine Brisson*
Katherine Brisson

# Exhibit 34



www.pbwt.com

August 3, 2023

Katherine Brisson
(212) 336-2552

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

> **Re:**   ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
> **Case No. 2:22-cv-02632 (ES) (CLW)**

Dear Emma:

On behalf of TrialCard, we write in response to your July 26, 2023 letter concerning TrialCard's response to the third-party subpoena served by SaveOnSP.

Request No. 3. You appear to misunderstand how we will be responding to Request No. 3. As we have explained, we have already agreed to search custodial files for documents responsive to this Request. *See* July 13 Ltr. from K. Brisson to E. Holland. The specific search terms we intend to apply to custodial data are addressed more fully below.

As to non-custodial documents, we decline your invitation to add the proposed terms to our collection of case and tasks notes for the reasons already explained. *See* June 7, 2023 Ltr. from K. Brisson to E. Holland. Specifically, we have already produced 19,933 records from TrialCard's centralized database that hit on 12 existing search terms. The limitations you have proposed with respect to the "out of pocket" term (specifically adding the terms "no" and "zero") are insufficient to address the substantial burden we have already identified in our June 7 letter. Indeed, as we have already explained, nearly every single call to TrialCard relating to the CarePath program likely involves some mention or reference to the terms "out-of-pocket" or "OOP," and SaveOnSP is not entitled to every call concerning out-of-pocket costs without some reasonable subject matter limitation. Your proposed terms do not represent such a reasonable limitation.

Scope of Custodial Searches. TrialCard confirms that it will perform a custodial search for documents responsive to Request Nos. 8–9 and 11–15, as well as Request Nos. 1, 2, 3, 18(i)-(m), and 30 (which are the requests to which it previously agreed to produce non-custodial documents). TrialCard will not produce custodial documents responsive to the remainder of the Requests.

Request No. 22/Documents in JJHCS's Possession. Regarding Request No. 22 specifically, we have previously explained that TrialCard will not produce documents that are

Emma Holland, Esq.
August 3, 2023
Page 2

already in the possession of JJHCS. *See, e.g.*, May 12, 2023 Ltr. from G. Carotenuto to A. Dunlap. Your own cited authority is in accord. *See Wyeth v. Abbott Lab'ys*, 2011 WL 2429318, at *8 (D.N.J. June 13, 2011) ("To the extent Plaintiffs seek to compel Novartis to produce documents already produced by Abbott, Plaintiffs' motions to enforce their subpoenas are denied as duplicative."). Moreover, as we have also previously explained at length, this is consistent with the position that SaveOnSP has endorsed with respect to its own business partners, ESI and Accredo, for which it has suggested that third-parties need not duplicate party productions. *See generally* Ltr. from K. Brisson to E. Holland dated June 16, 2023.

Nothing about JJHCS's Responses and Objections to SaveOnSP's Second Set of Interrogatories alters this position. TrialCard has already produced enrollment and claims data, and to the extent JJHCS received analyses or other deliverables concerning this data, these documents would be in JJHCS's possession. Indeed, as we have already explained, analysis of such data would have been done at the request of, or in consultation with, JJHCS. Further, as explained in its Responses and Objections to SaveOnSP's Second Set of Interrogatories, JJHCS intends to produce documents sufficient to show the analyses at issue.

Finally, you ask TrialCard to confirm that JJHCS has produced all documents in the possession of both JJHCS and TrialCard. TrialCard has no reason to question JJHCS's assertion that JJHCS has produced such documents to the extent necessary to satisfy JJHCS's discovery obligations and as negotiated by the parties.

Additional Custodians and Custodial Search Terms. We reiterate that while we still do not believe custodial collections are necessary at all, we have undertaken such collections to moot the concerns you have expressed and to avoid an unnecessary dispute. *See* July 6, 2023 Ltr. from K. Brisson to E. Holland. In addition to the two custodians we have already proposed, you now request the addition of sixteen document custodians. This is grossly disproportionate to TrialCard's status as a third-party and would present a significant burden. Nevertheless, in the interest of reaching compromise, we will agree to add Rick Fry[1] and Paul Esterline[2] as additional custodians if that will resolve this dispute. We are in the process of collecting these custodians' file. Once we have done so, we will revert to address the issues you have raised with respect to additional search terms, including those proposed in Appendix A to your letter.

TRIALCARD_00000200. TrialCard is investigating the legibility issue you have identified and will reproduce a replacement version to the extent feasible.

Document Retention Policy. The document retention policy produced as TRIALCARD_00000125 has been in effect since December 16, 2020 and was modified on

---

[1] Mr. Fry served as Senior Vice President, Client Solutions from February 2020 to August 2022. Prior to that, he served in various roles in Operations and Client Services for nearly seven years.

[2] Mr. Esterline is currently Director of Reporting and Analytics and has held several prior roles in analytics and strategic accounts.

Emma Holland, Esq.
August 3, 2023
Page 3


January 31, 2023 to include the "TC Script Records Portion" in Appendix A.  Based on reasonable
investigation, TrialCard does not have any other responsive retention documents.

    <u>Data Dictionary</u>.  In the event you have a specific question concerning the meaning
of a particular data field, we are open to addressing it on a case-by-case basis.

                            Very truly yours,



                            */s/ Katherine Brisson*
                            Katherine Brisson

# Exhibit 35



www.pbwt.com

December 22, 2023

Sara A. Arrow
(212) 336-2031

**By Email**

Elizabeth Snow, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:     ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
         **Case No. 2:22-cv-02632 (ES) (CLW)**

Dear Elizabeth:

On behalf of TrialCard, we write in response to your December 14, 2023 letter concerning the relevant time period for JJHCS's productions in response to the February 17, 2023 subpoena (the "Subpoena") served on TrialCard.

As you know, TrialCard, a non-party, and SaveOnSP have been engaged for several months in extensive negotiations related to the scope of TrialCard's response to the Subpoena. The Subpoena sought the production of documents for the period from January 1, 2017 through the date of the subpoena.  TrialCard timely raised relevance, breadth, and burden objections, agreeing to produce documents only for the period January 1, 2017 to July 1, 2022.  *See* TrialCard Responses and Objections dated March 6, 2023.[1]  Following negotiation, TrialCard subsequently agreed to expand the Relevant Time Period to cover April 1, 2016 through July 1, 2022.  *See* May 12, 2023 Ltr. from G. Carotenuto to A. Dunlap.

Throughout the course of our negotiations, TrialCard consistently reiterated that it would only produce documents from this time period.  *See, e.g.*, July 13, 2023 Ltr. from K. Brisson to E. Holland (identifying April 1, 2016 to July 1, 2022 as the Relevant Time Period for custodial productions); Sept. 8, 2023 Ltr. from K. Brisson to E. Holland (reiterating the Relevant Time Period).  SaveOnSP raised no objections whatsoever and accepted this as the Relevant Time Period

---

[1] You assert in the December 14 letter that TrialCard has articulated no relevance or burden objections to extending the applicable time period.  Not so.  Referencing our original Responses and Objections, we expressly preserved such objections during the December 12, 2023 meet and confer, and we maintain those objections for the reasons stated during our conferral and in this letter.

Elizabeth Snow, Esq.
December 22, 2023
Page 2

at least twice. *See* May 31, 2023 Ltr. from E. Holland to G. Carotenuto at 1 (referring to April 1, 2016 to July 1, 2022 as the "Relevant Time Period"); July 26, 2023 Ltr. from E. Holland to K. Brisson at 7 n.1 (proposing search terms for the "Relevant Time Period" defined as April 1, 2016 to July 1, 2022).

More than six months after TrialCard first identified the Relevant Time Period and several months after SaveOnSP accepted it, SaveOnSP now is attempting to rewrite the above history and demands that TrialCard supplement its productions through November 7, 2023. SaveOnSP's request is improper for several reasons, including the following:

- *First*, the Subpoena was issued on February 17, 2023. TrialCard seeks to extend the scope of the subpoena at least **nine months** beyond the service date. This is plainly improper and contrary to the Federal Rules of Civil Procedure. Neither Rule 45 nor any other authority supports the notion that a subpoena may seek the production of documents that were not created until after the subpoena was propounded.

- *Second*, as we have explained at length, nothing in the Court's November 7, 2023 Order directs TrialCard, as a non-party, to update its discovery responses. That Order only directs "both parties" to "supplement their discovery responses in accordance with the Federal Rules of Civil Procedure"—which, as noted, above, do not impose on TrialCard, a non-party, an obligation to supplement. *See Johnson & Johnson Healthcare Sys., Inc. v. Save On SP, LLC*, ECF No. 173 ("ECF No. 173"). Nor are we aware of any other third party (including your business partners, Express Scripts Inc. or Accredo Health Group, Inc.) who have made a comparable production pursuant to the November 7 Order.

- *Third*, citing to an April 7 letter, you claim that TrialCard purportedly confirmed that it would comply with any court order applicable to RFP Nos. 1, 2, 5–6, 18, 19, and 25–28, which contain requests similar to those in scope and substance as several requests directed to JJHCS. This ignores and mischaracterizes the relevant context surrounding the April 7 letter. As you know, RFP Nos. 1, 2, 5–6, 18, and 19 sought documents for the period January 1, 2009 to the present, and RFP Nos. 25–28 sought documents for the period January 1, 2015 to the present. The parties—JJHCS and SaveOnSP—have long disputed the proprietary of requiring collections beginning as early as 2009 or 2015, as applicable, and have engaged in extended motion practice related to those parallel requests served on JJHCS. To date, the Court has not endorsed SaveOnSP's requests for discovery *prior* to April 1, 2016 for any of the comparable RFPs as they relate to JJHCS. Nothing within Judge Waldor's November 7 Order addresses the earlier time period; to the contrary, Judge Waldor made clear that several of SaveOnSP's requests seeking pre-2016 documents should be narrowed, both as to time period and substance. *See e.g.*, ECF No. 173 at 1 (requiring SaveOnSP to "narrow" the scope of its requests for information relating to CarePath Terms and Conditions and financial information—two categories of information that overlap with several of the

Elizabeth Snow, Esq.
December 22, 2023
Page 3

Requests for Production referenced in TrialCard's April 7 letter).[2]  Thus, contrary to your assertion, TrialCard's representations in its April 7 letter do not alter its consistent position that the relevant time period is April 1, 2016 to July 1, 2022—a period that SaveOnSP has repeatedly accepted over months of negotiation.

For these and all of the other reasons we provided during our meet and confer, TrialCard will not update its response to the Subpoena beyond July 1, 2022.  TrialCard reserves all rights, and we remain available to meet and confer.

Very truly yours,

/s/ Sara A. Arrow
Sara A. Arrow

---

[2] For example, RFP No. 5 seeks documents concerning CarePath Terms and Conditions.  SaveOnSP's RFP No. 27 seeks documents concerning JJHCS's purported return on investment for copay assistance dollars.

# Exhibit 36

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

District of New Jersey

| | |
|---|---|
| Johnson & Johnson Health Care Systems Inc. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 22-2632 (JMV) (CLW) |
| Save On SP, LLC | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    TrialCard Inc.
            2250 Perimeter Park Dr., #300, Morrisville, NC 27560
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached requests for production.

| Place: Robinson & Cole LLP 666 Third Avenue, 20th Floor New York, NY 10017-4132 | Date and Time: 12/15/2023 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/01/2023

| *CLERK OF COURT* | OR | |
|---|---|---|
| | | /s/ E. Evans Wohlforth, Jr. |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* **Defendant**
Save On SP, LLC                                    , who issues or requests this subpoena, are:
E. Evans Wohlforth, Jr., Gibbons P.C., One Gateway Center, Newark, NY 07102-5310

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. **22-2632 (JMV) (CLW)**

### PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   **0.00**   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

David Elsberg
Andrew R. Dunlap
Meredith Nelson
Elizabeth H. Snow
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

E. Evans Wohlforth, Jr.
ROBINSON & COLE LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
212-451-2954
ewohlforth@rc.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (ES) (CLW) <br><br> **NOTICE OF SUBPOENA FOR THE PRODUCTION OF DOCUMENTS** |

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26, 34, and 45 Defendant Save On SP, LLC ("SaveOnSP") requests TrialCard Inc. ("Trial-Card"), to produce for inspection and copying the documents listed in these Requests, to

the office of the undersigned on December 15, 2023 or at a time and place mutually agreed

by the parties or ordered by the Court.

    **PLEASE TAKE FURTHER NOTICE** that this demand for production of docu-

ments shall be deemed continuing in nature to require supplemental responses if Plaintiff

or Plaintiff's counsel obtain or locate further or additional documents subsequent to the

time Plaintiff's responses are served.


Dated:  December 1, 2023        By: /s/ _____
                      E. Evans Wohlforth, Jr.
                      ROBINSON & COLE LLP
                      666 Third Avenue, 20th floor
                      New York, NY 10017-4132
                      212-451-2954
                      ewohlforth@rc.com

                      David Elsberg
                      Andrew R. Dunlap
                      Meredith Nelson
                      SELENDY GAY ELSBERG, PLLC
                      1290 Avenue of the Americas
                      New York, NY 10104
                      212-390-9000
                      deslberg@selendygay.com
                      adunlap@selendygay.com
                      mnelson@selendygay.com

                      *Attorneys for Defendant Save On SP, LLC*

## DEFINITIONS

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses.

3.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.      "Action" means this litigation styled as "Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (ES) (CLW).

6.      "Affordable Care Act" means the Patient Protection and Affordable Care Act, Pub. L. 148, 124 Stat. 119.

7.      "All," "any," and "each" mean any and all.

8.      "And" and "or" are construed both conjunctively and disjunctively.

9.      "Benefits Investigation" means any process by which TrialCard, or any entity acting on its behalf, receives information regarding the pharmacy benefits provided by a health plan, including information regarding prior authorization costs, Essential Health Benefits status, patient eligibility, and related information.

10.     "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty

3

drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

11.    "CarePath Care Coordinator" means any person or entity encompassed by that term as used on CarePath's "Contact Us" webpage,[1] as well as any person responsible for communicating with patients who contact CarePath via an advertised help number (*e.g.*, 877-CarePath).

12.    "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

13.    "Complaint" means JJHCS's May 4, 2022 Complaint [ECF No. 1] or any subsequently amended Complaint in this Action.

14.    "Copay Accumulator Service" means (a) any service provided by Pharmacy Benefit Mangers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

15.    "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

---

[1] *See* Contact Us, https://www.janssencarepath.com/patient/contact-us (last visited November 20, 2023).

4

16.   "Copay Maximizer Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maximizer."

17.   "Document" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

18.   "Essential Health Benefit: means, in the context of prescription drug benefits at issue in this case, (a) a prescription drug benefit that satisfies the requirement for a plan to provide essential prescription drug benefits under the Affordable Care Act or that is treated as such by a plan;[2] and (b) any definition JJHCS ascribes to the term "essential health benefit" as used in the Complaint.

19.   "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

---

[2] 45 C.F.R. §§ 156.122, 156.115

20.    "Including" means including but not limited to.

21.    "Janssen" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc.,
Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all pre-
decessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions
or departments, agents, representatives, directors, officers, employees, committees, at-
torneys, accountants, and all persons or entities acting or purporting to act on behalf or
under the control of Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Prod-
ucts, LP, or Actelion Pharmaceuticals U.S., Inc.

22.    "Janssen Drug" means any Specialty Drug manufactured or sold by Janssen
from any time for which patients may receive copay assistance, including BALVERSA,
DARZELEX, DARZELEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, PREZCOBIX,
REMICADE, RYBREVANT, SIMPONI, STELARA, SYMTUZA, TRACLEER, TREMFYA,
UPTRAVI, VENTAVIS, ZYTIGA, as well as any other specialty drugs that JJHCS asserts
are at issue in this Action.

23.    "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and
all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, di-
visions or departments, agents, representatives, directors, officers, employees, commit-
tees, attorneys, accountants, and all persons or entities acting or purporting to act on be-
half or under the control of Johnson & Johnson Health Care Systems Inc., including
Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Phar-
maceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Bio-
tech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Phar-
maceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen Bi-
oPharma LLC, and Janssen Research & Development LLC.

6

24.    "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer, in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of such an entity.

25.    "Lash Group" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

26.    "Non-Essential Health Benefits" means, in the context of prescription drug benefits at issue in this case, (a) any prescription drug benefit covered by a plan in excess of those necessary for a plan to satisfy the requirements for providing essential prescription drug health benefits under the Affordable Care Act[3] and designated by the plan as a non-essential health benefit; and (b) any definition JJHCS ascribes to the term "non-essential health benefits" as used in the Complaint.

27.    "Patient" means a natural person prescribed or eligible to be prescribed any Janssen Drug, whether or not they use CarePath or are a participant in a health plan advised by SaveOnSP.

28.    "Person" means a natural person or legal entity including any business or governmental entity or association.

---

[3] *See* 45 C.F.R. §§ 156.122, 15.115

7

29.    "<u>Regarding</u>" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

30.    "<u>Request</u>" means any of these Requests for Production.

31.    "<u>SaveOnSP</u>" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Save On SP, LLC.

32.    "<u>Specialty Drug</u>" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

33.    "<u>Stelara</u>" means the Janssen Drugs sold under that name.

34.    "<u>Tremfya</u>" means the Janssen Drug sold under that name.

35.    "<u>TrialCard</u>" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

8

36. "TrialCard's Employee Health Plans" means any health plans offered by TrialCard to its employees.

37. "You" and "Your" means TrialCard.

## INSTRUCTIONS

1. These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii).

2. These Requests seek production of nonprivileged material. Fed. R. Civ. P. 26(b)(1).

3. These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4. For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 45(d)(2)(B).

5. An objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. Fed. R. Civ. P. 45(d)(2)(B).

6. If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection.

7. If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest.

8. If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 45(e)(2)(A), including by indicating whether any document

9

exists regarding the information re- quested and stating, to the extent the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked, Local Rule 34.1.

9.    If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction, the reason for its destruction, the name of the person who requested or authorized its destruction, and the name of the person who destroyed it.

10.    Produce documents as they are kept in the usual course of business or in a form specified in this subpoena. Fed. R. Civ. P. 45(e)(1)(b). For each document, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

11.    Produce electronically stored information in the form and manner required by any agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

12.    Produce each document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

13.    Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notations, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

14.    These Requests are deemed continuing. If after responding to any Request you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner.

## TIME PERIOD

Unless otherwise specified, these Requests cover from and including April 1, 2016, through the present.

## REQUESTS

1.    Documents sufficient to show the identity of all drug makers for which TrialCard performs Benefits Investigations.

2.    Documents sufficient to show the identity of all drug makers for which TrialCard has performed investigations, including but not limited to Benefits Investigations, that identify or attempt to identify if patients are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service.

3.    Documents sufficient to show the methods by which TrialCard identifies or attempts to identify if patients are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service.

4.    All Documents and Communications between TrialCard and JJHCS regarding identification or attempts to identify patients who are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service, including without limitation proposals to perform such work.

5.    All Communications with patients receiving Stelara or Tremfya, including without limitation recordings of calls.

6.    Documents sufficient to show the methods by which TrialCard responded to Benefits Investigations that revealed or suggested that a patient was a member of a plan

advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service, including without limitation regarding the criteria by which TrialCard determined to send the letter previously produced at TRIALCARD_00000074—77.

7.    All Communications between TrialCard and SaveOnSP, including without limitation recordings of calls.

8.    All Documents and Communications regarding the creation or attempted creation of a response to SaveOnSP, Copay Accumulator Services, and/or Copay Maximizer Services, including without limitation the creation or attempted creation of a █████

████████████████████████████████████████████████████

████████████████████████████████████████████, *see, e.g.*, TRIALCARD_00001815 ██████████████████████████████████

███  ████████  ███  ████████  ████████); TRIALCARD_00002256;    TRIAL-CARD_00002725, as well as Documents and Communications regarding the sale or attempted sale of such a program to drug makers.

# Exhibit 37

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
Sara A. Arrow, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036

*Attorneys for TrialCard Inc.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (ES) (CLW) <br><br> **NON-PARTY TRIALCARD INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS** |

## **GENERAL OBJECTIONS**

TrialCard Incorporated ("TrialCard") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in TrialCard objections to a specific Request.

TrialCard reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action. The following responses and objections are based upon information known at this time.

1.      TrialCard is not a party to the above-captioned litigation pending in the District of New Jersey (the "Action") and objects to the Subpoena's imposition of significant burden on it because the vast majority of Requests in the Subpoena can be satisfied by obtaining documents directly from Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), a party to the Action. TrialCard notes that several of the requests in the Subpoena are nearly identical to document requests made by SaveOnSP to JJHCS in the Action. TrialCard objects to producing any documents unless and until SaveOnSP can demonstrate that it has not been able to obtain these documents in party discovery.

2.      TrialCard objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the First Amendment privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. The inadvertent production by TrialCard of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of

competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

3.    TrialCard objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response TrialCard makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

4.    TrialCard objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

5.    TrialCard objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that TrialCard agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of TrialCard.  Instead, it means that TrialCard will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

6.    TrialCard objects to the Requests to the extent that they seek information that is obtainable from sources other than TrialCard in a manner that is more convenient, less burdensome, or less expensive.

3

7.    TrialCard objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

8.    TrialCard objects to the Requests to the extent that they are vague and/or ambiguous.

9.    TrialCard objects to the Requests to the extent that they require interpretation by it in providing a response.  TrialCard responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that differs from TrialCard's understanding of that Request, TrialCard reserves the right to modify or supplement its objections and responses.

10.    TrialCard objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests, including the requests contained within the subpoena served on TrialCard dated February 17, 2023 (the "February 2023 Subpoena").

11.    TrialCard objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. TrialCard further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

12.    TrialCard objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

13.    TrialCard objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

14.     TrialCard objects to the Requests to the extent that they seek the production of documents that are not in TrialCard's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.      TrialCard objects to the definition of the term "Benefits Investigation" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any means by which TrialCard, or any entity acting on its behalf, receives information regarding the pharmacy benefits provided by a health plan, including information regarding prior authorization costs, Essential Health Benefits status, patient eligibility, and related information" or purports to include entities and persons acting or purporting to act on behalf of or under the control of TrialCard.

2.      TrialCard objects to the definition of the term "Janssen" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf" of those entities.

3.      TrialCard objects to the definition of the term "JJHCS" as overbroad, unduly burdensome, and not proportional to the needs of the case to extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or] representatives" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development,

5

LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc.,

Janssen BioPharma LLC, and Janssen Research & Development LLC.

4.        TrialCard objects to the definition of the term "JJHCS Hub Entity" as vague and

as irrelevant to the extent it purports to include entities other than those responsible for

administering CarePath during the Relevant Time Period.  TrialCard further objects to the

definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it includes "any and all predecessors and successors in interest, assignees, parents,

subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers,

employees, committees, attorneys, accountants and all persons or entities acting or purporting to

act on behalf" of those entities.  TrialCard further objects to the extent the term is used to seek

documents and communications concerning entities other than JJHCS.

5.        TrialCard objects to the definition of the term "Lash Group" as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it includes "any

and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates,

divisions or departments, agents, representatives, directors, officers, employees, committees,

attorneys, accountants and all persons or entities acting or purporting to act on behalf or under

the control of The Lash Group, Inc."

6.        TrialCard objects to the definition of the term "TrialCard" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of TrialCard Inc." TrialCard further objects to the extent the term is used to seek documents and communications in the possession of entities other than TrialCard.

## OBJECTIONS TO INSTRUCTIONS

1.      TrialCard objects to the Instructions to the extent that they impose requirements on TrialCard beyond those required by the Federal Rules of Civil Procedure.

2.      TrialCard objects to Instruction No. 14 to the extent that SaveOnSP attempts to impose requirements on TrialCard beyond those required by the Federal Rules of Civil Procedure or ordered by the Court. Rule 34, which contains a duty to supplement responses, does not apply to requests for production directed to a non-party, and Rule 45 contains no duty to supplement.

## OBJECTIONS TO THE TIME PERIOD FOR SPECIFIC REQUESTS

1.      TrialCard objects to SaveOnSP's Requests as overbroad, unduly burdensome, and not relevant to the subject matter of this Action to the extent they call for documents from before April 1, 2016 or after July 1, 2022. Except where expressly noted, TrialCard will only produce documents for the period April 1, 2016 to July 1, 2022 (the "Relevant Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

**Request No. 1**

Documents sufficient to show the identity of all drug makers for which TrialCard performed Benefits Investigations.

**Response to Request No. 1**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad and irrelevant to any claim or defense in this Action. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. TrialCard further objects to this Request to the extent it uses the terms "Benefits Investigations" and "TrialCard" for the reasons stated in TrialCard's

7

Objections to Definitions.  TrialCard further objects to this Request on the grounds that the term "drug makers" is undefined.  TrialCard further objects to this Request because it would require the disclosure of confidential business information, including information about other TrialCard clients, that has no relevance to this Action and is subject to confidentiality agreements between TrialCard and its other clients.

TrialCard will not search for or produce documents in response to this Request.

**Request No. 2**

Documents sufficient to show the identity of all drug makers for which TrialCard has performed investigations, including but not limited to Benefits Investigations, that identify or attempt to identify if patients are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service.

**Response to Request No. 2**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad and irrelevant to any claim or defense in this Action, insofar as it seeks documents related to efforts to identify or attempt to identify patients unaffiliated with SaveOnSP. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege.  TrialCard further objects to this Request to the extent it uses the terms "Benefits Investigations" and "TrialCard" for the reasons stated in TrialCard's Objections to Definitions.  TrialCard further objects to this Request on grounds that the terms "investigations" and "drug makers" are undefined and/or vague and ambiguous. TrialCard further objects to this Request because it would require the disclosure of confidential business information, including information about other TrialCard clients, that has no relevance to this Action and is subject to confidentiality agreements between TrialCard and its other clients.

TrialCard will not search for or produce documents responsive to this Request.

**Request No. 3**

Documents sufficient to show the methods by which TrialCard identifies or attempts to identify if patients are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service.

**Response to Request No. 3**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant to any claim or defense in this Action, insofar as it seeks information about services that TrialCard provides to clients other than JJHCS and in relation to patients unaffiliated with SaveOnSP. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. TrialCard further objects to this Request to the extent it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome to TrialCard. TrialCard further objects to this Request to the extent it uses the term "TrialCard" for the reasons stated in TrialCard's Objections to Definitions.

Subject to the foregoing objections and without prejudice to those objections, to the extent that documents responsive to this Request are also arguably responsive to existing Requests for Production Numbers 20 and 22 in the February 2023 Subpoena, TrialCard has already agreed to produce certain documents subject to TrialCard's prior objections. Specifically, to the extent such documents have not already been produced by JJHCS, TrialCard has agreed to produce (1) non-privileged documents from certain agreed-upon TrialCard custodians that are responsive to Requests for Production Numbers 20 and 22 for the Relevant Time Period; and (2) Benefits

Investigations performed for JJHCS that sought to determine whether Stelara or Tremfya patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan, to the extent such non-privileged documents exist for the period January 1, 2022 to November 7, 2023. TrialCard will not otherwise search for or produce documents or communications responsive to this Request.

**Request No. 4**

All Documents and Communications between TrialCard and JJHCS regarding identification or attempts to identify patients who are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service, including without limitation proposals to perform such work.

**Response to Request No. 4**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant to any claim or defense in this Action, insofar as it seeks documents unrelated to SaveOnSP. TrialCard further objects to this Request to the extent it seeks the production of documents and communications that are available from parties to the Action and, therefore, is unduly burdensome to TrialCard. TrialCard further objects to this Request to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. TrialCard further objects to this Request to the extent it uses the terms "TrialCard" and "JJHCS" for the reasons stated in TrialCard's Objections to Definitions.

Subject to the foregoing objections and without prejudice to those objections, to the extent that documents responsive to this Request are also arguably responsive to existing Requests for Production Numbers 20 and 22 in the February 2023 Subpoena, TrialCard has already agreed to

10

produce certain documents subject to TrialCard's prior objections. Specifically, to the extent such documents have not already been produced by JJHCS, TrialCard has agreed to produce (1) certain non-privileged documents from certain agreed-upon TrialCard custodians that are responsive to Requests for Production Numbers 20 and 22 for the Relevant Time Period; and (2) Benefits Investigations performed for JJHCS that sought to determine whether Stelara or Tremfya patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan, to the extent such non-privileged documents exist for the period January 1, 2022 to November 7, 2023. TrialCard will not otherwise search for or produce documents responsive to this Request.

**Request No. 5**

All Communications with patients receiving Stelara and Tremfya, including without limitation recordings of calls.

**Response to Request No. 5**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant to any claim or defense in this Action, insofar as it seeks communications unrelated to the CarePath program (and the "withMe" programs) and/or with patients unaffiliated with SaveOnSP. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" communications regarding a broad subject matter. TrialCard further objects to this Request to the extent that it seeks the production of communications that are available from parties to the Action (specifically, SaveOnSP) and, therefore, is unduly burdensome to TrialCard.

Subject to the foregoing objections and without prejudice to those objections, to the extent that documents responsive to this Request are also arguably responsive to existing Request for

11

Production Number 3 in the February 2023 Subpoena, TrialCard has already agreed to produce

certain documents subject to TrialCard's prior objections.  Specifically, to the extent such

documents have not already been produced by JJHCS, TrialCard has agreed to produce (1) case

and task notes reflecting communications between TrialCard and patients taking at least one

Janssen Drug for the Relevant Time Period; and (2) for the period January 1, 2022 to November

7, 2023, certain documents sufficient to show written communications to patients receiving Stelara

or Tremfya to the extent such communications concern whether those patients were in a

SaveOnSP-advised plan, a maximizer plan, or an accumulator plan.  TrialCard will not otherwise

search for or produce communications responsive to this Request.

**Request No. 6**

Documents sufficient to show the methods by which TrialCard responded to Benefits

Investigations that revealed or suggested that a patient was a member of a plan advised by

SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service, including

without limitation regarding the criteria by which TrialCard determined to send the letter

previously produced at TRIALCARD_00000074–77.

**Response to Request No. 6**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this

Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant

to any claim or defense in this Action, insofar as it seeks documents unrelated to SaveOnSP.

TrialCard further objects to this Request to the extent it seeks the production of documents and

information that are available from parties to the Action and, therefore, is unduly burdensome to

TrialCard.  TrialCard further objects to this Request on the ground that the phrase "methods by

which TrialCard responded to Benefits Investigations" is vague and ambiguous.  TrialCard further

12

objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege.  TrialCard further objects to this Request to the extent it uses the terms "Benefits Investigations" and "TrialCard" for the reasons stated in TrialCard's Objections to Definitions.

Subject to the foregoing objections and without prejudice to those objections, to the extent that documents responsive to this Request are also arguably responsive to existing Requests for Production Numbers 20 and 22 in the February 2023 Subpoena, TrialCard has already agreed to produce certain documents subject to TrialCard's prior objections.  Specifically, to the extent such documents have not already been produced by JJHCS, TrialCard has agreed to produce (1) certain non-privileged documents from certain agreed-upon TrialCard custodians that are responsive to Requests for Production Numbers 20 and 22 for the Relevant Time Period; and (2) for the period January 1, 2022 to November 7, 2023, certain documents sufficient to show written communications to patients receiving Stelara or Tremfya to the extent such communications concern whether those patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan.  TrialCard will not further search for or produce documents in response to this Request.

**Request No. 7**

All Communications between TrialCard and SaveOnSP, including without limitation recordings of calls.

**Response to Request No. 7**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant to any claim or defense in this Action, insofar as it seeks communications unrelated to any Janssen

13

Drug or to the CarePath (and the "withMe" programs). TrialCard further objects to the extent this Request seeks the production of documents and communications that are available from parties to the Action, in particular from SaveOnSP. TrialCard further objects to this Request to the extent it seeks documents and communications in the possession of entities other than TrialCard or outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" communications regarding a broad subject matter. TrialCard further objects to this Request to the extent it uses the term "TrialCard" for the reasons stated in TrialCard's Objections to Definitions.

TrialCard further objects to this Request as unduly burdensome because it requires TrialCard to identify recordings of calls without the benefit of identifying information—specifically, all names and phone numbers used by SaveOnSP employees who communicated with TrialCard and its affiliates—that SaveOnSP has not provided. TrialCard further objects to this Request as duplicative of Request No. 5 to the extent communications between TrialCard and SaveOnSP included patients.

Subject to the foregoing objections, TrialCard will produce certain responsive call recordings as requested by JJHCS. TrialCard will not otherwise search for or produce documents or communications responsive to this Request.

**Request No. 8**

All Documents and Communications regarding the creation or attempted creation of a response to SaveOnSP, Copay Accumulator Services, and/or Copay Maximizer Services, including without limitation the creation or attempted creation of a ███████████████

████████████████████████████████████████████

14

████████████████████████████, *see, e.g.,* TRIALCARD_00001815 (██████

████████████████████████████████████████████████████████████);

TRIALCARD_00002256; TRIALCARD_00002725, as well as Documents and Communications

regarding the sale or attempted sale of such a program to drug makers.

**Response to Request No. 8**

        In addition to the foregoing general objections, TrialCard, as a third party, objects to this

Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant

to any claim or defense in this Action, insofar as it seeks information about services that TrialCard

provides to clients other than JJHCS and/or in relation to patients unaffiliated with SaveOnSP.

TrialCard further objects to this Request as it seeks the production of documents and information

that are available to parties to the Action and, therefore, is unduly burdensome to TrialCard.

TrialCard further objects to this Request to the extent it seeks information that is exempt from

discovery and protected from disclosure by any privilege.  TrialCard further objects to this Request

as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.

        TrialCard will not search for or produce documents responsive to this Request.

Dated:  December 15, 2023

                                        By:    */s/ Harry Sandick*_____

                                        Adeel A. Mangi
                                        Harry Sandick (admitted *pro hac vice*)
                                        George LoBiondo
                                        Sara A. Arrow
                                        PATTERSON BELKNAP WEBB
                                        & TYLER LLP
                                        1133 Avenue of the Americas
                                        New York, New York 10036
                                        (212) 336-2000

                                        *Attorneys for TrialCard Inc.*

15

# Exhibit 38



March 1, 2024

Sara Arrow
(212) 336-2031

**<u>By Email</u>**

Hannah Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    **TrialCard's December 1, 2023 Subpoena**
       ***Johnson & Johnson Health Care Services, Inc. v. Save On SP, LLC***,
       **<u>Case No. 2:22-cv-02632 (JKS) (CLW)</u>**

Dear Hannah:

On behalf of TrialCard, we write in response to SaveOnSP's February 16, 2024 letter regarding the December 1, 2023 Subpoena issued to TrialCard.

**I.    General Objections**

**Time Period.**  SaveOnSP continues to insist that TrialCard produce documents beyond July 1, 2022, the parties' agreed-upon cut-off date for discovery.  However, nothing in Judge Waldor's November 7, 2023 Order directs third parties, such as TrialCard, to update its discovery responses.  That Order only directs "both parties" to "supplement their discovery responses in accordance with the Federal Rules of Civil Procedure."  *See Johnson & Johnson Health Care Sys., Inc. v. Save On SP, LLC*, ECF No. 173.  This does not obligate TrialCard to update its discovery responses, as TrialCard is not a party to the underlying litigation.  It certainly does not provide any basis for TrialCard to produce documents ***beyond*** the cutoff date for party discovery (November 7, 2023), as SaveOnSP now insists.

SaveOnSP also states that "TrialCard has not raised any valid burden objection" to extending the time period beyond July 1, 2022.  That is not accurate.  In its Responses and Objections to the December 1, 2023 Subpoena, TrialCard did so, objecting to SaveOnSP's Requests as "overbroad, ***unduly burdensome***, and not relevant to the subject matter of this Action to the extent they call for documents from before April 1, 2016 or after July 1, 2022" (emphasis supplied).  Furthermore, TrialCard reiterated its burden objection during the January 12, 2024 meet and confer.  For the avoidance of doubt, TrialCard asserts relevance, breadth, and burden objections to SaveOnSP's demand that TrialCard produce documents beyond July 1, 2022.

Hannah Miles, Esq.
March 1, 2024
Page 2

SaveOnSP next suggests that TrialCard should be required to produce documents beyond July 1, 2022 because it "is central to the litigation." However, TrialCard is a third party, and is far more removed from the SaveOnSP scheme at issue than SaveOnSP's own business partners, ESI and Accredo—yet SaveOnSP apparently does not believe that ESI and Accredo should update their productions. *See* Jan. 11, 2024 Email from H. Miles to S. Arrow. TrialCard's role in administering the CarePath program, at the direction of JJCHS, does not impose on it unique obligations that are different than those applicable to other third parties.

Nevertheless, in the interest of compromise, TrialCard has agreed to produce, through November 7, 2023, thousands of benefits investigations ███████████████████████ ████████████████████████████████████████████. *See* TRIALCARD_00008931. In addition, TrialCard agrees to "refresh" certain CarePath claims data through November 7, 2023. We are currently investigating the full scope of this data "refresh" and will revert when we have additional information.

**General References to Accumulators and Maximizers.** SaveOnSP also seeks documents that relate generally to copay accumulators and maximizers without any reference to SaveOnSP. SaveOnSP has failed to justify its insistence that TrialCard must produce documents that do not mention SaveOnSP, and TrialCard declines to engage in an overbroad, unduly burdensome review of them.[1]

## II.    TrialCard's Ability to Identify Patients

**Request Nos. 1 and 2.** Requests Nos. 1 and 2 seek documents sufficient to show the identity of all drug makers for which TrialCard performed investigations, including benefits investigations, that identify or attempt to identify if a patient is on a health plan affiliated with a copay maximizer, accumulator, or SaveOnSP. SaveOnSP's reference to general investigations (beyond benefits investigations) is vague and ambiguous. In any event, TrialCard's purported actions with respect to clients other than JJHCS are irrelevant to the underlying litigation, which only concerns the administration of CarePath, and not copay assistance programs offered by other pharmaceutical manufacturers. SaveOnSP has failed to articulate the relevance of documents sought by this request, and has similarly failed to explain how TrialCard's work performed for

---

[1] As you know, Judge Waldor's November 7, 2023 Order imposed a limitation that documents related to JJHCS's CAP Program must also mention SaveOnSP. *See* Dkt. No. 173 at 2–3 ("Plaintiff shall run custodial document searches fashioning a search designed to capture documents wherein the terms 'CAP A', 'CAP M', or 'adjustment program,' (or reasonable variations of those terms) are found *in the same documents as the term 'SaveOn'* (or reasonable variations / abbreviations)." (emphasis supplied)). While this Order is only applicable to party discovery, it suggests that expanding third party discovery to documents that do not mention or refer to SaveOnSP is improper and disproportionate to the needs of the case.

Hannah Miles, Esq.
March 1, 2024
Page 3

clients other than SaveOnSP has any relevance whatsoever to JJHCS or CarePath.  TrialCard will
not search for or produce documents responsive to Requests 1 or 2.

      **Request No. 3.**  Request No. 3 seeks documents sufficient to show the methods by
which TrialCard identifies or attempts to identify if patients are members of health plans affiliated
with copay accumulators, maximizers, or SaveOnSP.  As you know, TrialCard produced thousands
of benefits investigations on January 12, 2024.  *See* TRIALCARD_00008931.  As we have
discussed, TrialCard is also in the process of identifying whether additional data fields exist for
these benefits investigations.

      SaveOnSP nevertheless asserts that the benefits investigations do not satisfy this
Request because "this request seeks 'method**s**,' plural."  Feb. 16, 2024 Ltr. from H. Miles to S.
Arrow at 3.  SaveOnSP identifies two documents wherein TrialCard employees discuss potential
methods for identifying patients on a copay accumulator, maximizer, or SaveOnSP and claims that
it "needs to know if those, or other methods, were ever used to identify or attempt to identify if
patients are members of plans advised by SaveOn, accumulators, or maximizers."  However, as
SaveOnSP acknowledges, the documents that SaveOnSP cites reflect ███████████████
████████████████████████████████████████████████████  *See id.*;
███████████ TRIALCARD_00003417.  As we have explained, to the extent such ███████████
██████████████, they are only relevant to the extent they were provided to JJHCS.  Accordingly,
such documents are more properly obtained through party discovery.

      Accordingly, we decline to review documents to identify general identification
"methods" of SaveOnSP patients that TrialCard may have considered.  To the extent SaveOnSP
seeks to propose a more narrowly tailored request concerning other methods of identification that
TrialCard may have developed with respect to CarePath, we remain open to considering such a
request.

      **Request No. 4.**  Request No. 4 seeks documents and communications between
TrialCard and JJHCS regarding the identification or attempted identification of patients who are
members of plans affiliated with copay accumulators, maximizers, or SaveOnSP.  As we have
explained repeatedly, documents and communications between TrialCard and JJHCS are more
appropriately sought through party discovery.  TrialCard makes no representations as to the
contents of JJHCS's productions, and further takes no position as to whether these documents
would be relevant.

### III.    TrialCard's Responses to Patients Once Identified

      **Request No. 6.**  Request No. 6 seeks documents sufficient to show the methods by
which TrialCard responded to benefits investigations that revealed or suggested that a patient was
a member of a health plan that was affiliated with a copay accumulator, maximizer, or SaveOnSP.
SaveOnSP asserts that TrialCard has not satisfied this Request.  This is incorrect.  TrialCard has
produced multiple letter templates that it has sent to patients in connection with the benefits
investigation process, including following identification of a patient as affiliated with a copay

Hannah Miles, Esq.
March 1, 2024
Page 4

accumulator, maximizer, or SaveOnSP.  TrialCard has further satisfied this Request by providing the CarePath IDs of the patient recipients of these letters and the dates on which those letters were sent.  *See* TRIALCARD_00008931 ("Tasks").  Because Request No. 6 seeks "documents sufficient to show," these documents satisfy this request.

    **Request No. 8.**  Request No. 8 seeks documents and communications regarding TrialCard's creation or attempted creation of a response to SaveOnSP and/or copay accumulators or maximizers.  This overbroad request seeks documents and communications that are irrelevant to any claim or defense in the underlying litigation.  SaveOnSP is not entitled to go on a fishing expedition of all efforts TrialCard contemplated or took with respect to copay maximizers, accumulators, or even SaveOnSP.  TrialCard is a vendor for JJHCS, and only the work that TrialCard work performed for JJHCS is relevant to this litigation.  Further, documents regarding what responses or solutions TrialCard purportedly offered to JJHCS, to the extent they exist, are more appropriately sought through party discovery.

    Further, SaveOnSP has not shown how any responses or solutions that TrialCard may have contemplated or developed for copay assistance programs other than CarePath have any applicability to CarePath.  Once again, we remain open to considering a request that concerns TrialCard's responses to SaveOnSP with respect to JJHCS and the CarePath Program, but absent such a request, we decline to produce documents in response to this Request.

## IV. Communications Between TrialCard and SaveOnSP

    Request No. 7 seeks all communications between TrialCard and SaveOnSP.  To the extent these communications occurred, SaveOnSP can search its own records to locate them.  SaveOnSP has not explained why it needs a third party to search for and produce documents that should be within its own files.  Accordingly, TrialCard declines to undertake the undue burden of searching for and producing communications sought by Request No. 7.

*  *  *  *

    Finally, for avoidance of doubt, TrialCard does not agree that the parties are at impasse with respect to the December 1, 2023 Subpoena.  We reserve all rights and are available to meet and confer.

        Very truly yours,

        */s/ Sara A. Arrow*
        Sara A. Arrow

# EXHIBITS 39-41
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 42



March 22, 2024

Sara A. Arrow
(212) 336-2031

**By Email**

Hannah Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:   **December 1, 2023 Subpoena to TrialCard**
      *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
      **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Hannah:

On behalf of TrialCard, we write in response to SaveOnSP's March 8, 2024 letter regarding the subpoena dated December 1, 2023 (the "Second Subpoena").

## I.   Time Period

SaveOnSP asserts that TrialCard has provided "no reasoned basis" to justify a July 1, 2022 cutoff date.  Not so:  we have explained our position on this issue repeatedly in written correspondence and during meet and confers.  *See, e.g.*, Mar. 1, 2024 Ltr. from S. Arrow to H. Miles; Jan. 12, 2024 Ltr. from S. Arrow to H. Miles; *see also* Dec. 22, 2023 Ltr. from S. Arrow to H. Miles.  Specifically, as it relates to the February 17, 2023 subpoena (the "First Subpoena"), SaveOnSP ***agreed*** to July 1, 2022 as the cut-off date.  *See* May 31, 2023 Ltr. from E. Holland to G. Carotenuto at 1 (referring to April 1, 2016 to July 1, 2022 as the "Relevant Time Period"); July 26, 2023 Ltr. from E. Holland to K. Brisson at 7 n.1 (proposing search terms for the "Relevant Time Period" defined as April 1, 2016 to July 1, 2022).

Belatedly disappointed with the agreement it struck, SaveOnSP then sought to circumvent this agreed-upon time period by propounding the Second Subpoena—containing several requests that overlapped with those in the First Subpoena and imposing a new "refresh" time period to partially match the "refresh" time period to which the parties are bound.  But as SaveOnSP acknowledges, TrialCard, as a third party, is not bound by Judge Waldor's November 7, 2023 Order extending party discovery.  *See* Jan. 11, 2024 Email from H. Miles to S. Arrow. Nor has SaveOnSP explained why TrialCard, as a third party, should be subject to such expansive discovery far beyond the initial agreed-upon cut-off date.  SaveOnSP has already refused to say whether its own co-conspirators and business partners—Express Scripts, Inc. and Accredo Health

Hannah Miles, Esq.
March 22, 2024
Page 2

Group—should be required to update its third-party productions through November 7, 2023. *See id.* And perhaps most egregious, SaveOnSP has provided no basis whatsoever for why TrialCard must produce documents even ***beyond*** the cutoff date for party discovery (November 7, 2023), as SaveOnSP now insists.

Despite these objections, TrialCard has nevertheless agreed to produce multiple categories of documents through November 7, 2023 in the interest of compromise. *See, e.g.*, Mar. 1, 2024 Ltr. from S. Arrow to H. Miles at 1–2. For example, TrialCard has agreed to produce the results of thousands of benefits investigations to comply with the First and Second Subpoenas. *See* Mar. 12, 2024 Ltr. from S. Arrow to H. Miles at 1 n.1; Oct. 20, 2023 Ltr. from S. Arrow to E. Holland at 1. Further, as discussed in greater detail below, TrialCard has agreed to refresh its production of CarePath enrollment data[1] and case and task notes for Stelara and Tremfya patients through November 7, 2023. These productions, which are voluminous, represent a good-faith effort to comply with SaveOnSP's subpoenas in a manner proportional to its role as a third party.

Finally, if there are specific, targeted categories of documents that you seek through November 7, 2023, please so advise so that we can evaluate that request. If you present a reasonable proposal, we are certainly willing to consider it—but we cannot agree to a wholesale expansion of the discovery cutoff without any justification or reasonable limitation.

## II.    TrialCard's Ability to Identify Patients

**Request Nos. 1 and 2** seek documents sufficient to show the identities of all drug makers for which TrialCard performed investigations, including benefits investigations, that identify or attempt to identify if a patient is on a health plan affiliated with a copay maximizer, accumulator, or SaveOnSP. As we have explained, any actions that TrialCard may or may not have taken for clients other than JJHCS are irrelevant. SaveOnSP has not explained how TrialCard's work performed for its non-JJHCS clients has any relevance whatsoever to JJHCS or CarePath. Please so do and we will consider your position.

**Request No. 3** seeks documents sufficient to show the methods by which TrialCard identifies or attempts to identify whether patients are members of health plans affiliated with copay accumulators, maximizers, or SaveOnSP. Despite TrialCard's production of the results of thousands of benefits investigations performed for patients taking Stelara or Tremfya, *see* TRIALCARD_00008931, SaveOnSP insists that TrialCard has not satisfied Request No. 3. We disagree. ████████████████████████████████████████████████████
████████████████████████████████████████████████████

---

[1] Specifically, TrialCard agrees to refresh its prior production of CarePath enrollment data for the time period July 1, 2022 through November 7, 2023. *See* TRIALCARD_00000001; TRIALCARD_00000004; TRIALCARD_00000005; TRIALCARD_00000006; TRIALCARD_00000007; TRIALCARD_00000008; and TRIALCARD_00000009.

Hannah Miles, Esq.
March 22, 2024
Page 3

███████████████████████████████  TrialCard's production of the
results of those benefits investigation therefore satisfies this request.

SaveOnSP nevertheless asserts that it is entitled to documents concerning some "methods" that TrialCard hypothetically employed to identify SaveOnSP-affiliated patients because SaveOnSP has asserted a "failure to mitigate defense."[2]  This argument rests on several unsubstantiated assumptions, including that (1) TrialCard developed other "methods" of identifying SaveOnSP patients; (2) such methods would be applicable to JJHCS and the CarePath program; (3) it disclosed those methods to JJHCS; and (4) having learned of those methods, JJHCS declined to implement them.  Each of these assumptions rests on pure speculation.  TrialCard, therefore, declines to go on a fishing expedition to satisfy SaveOnSP's curiosity into its business entirely unrelated to JJHCS or CarePath.

**Request No. 4** seeks documents and communications "between TrialCard and JJHCS" regarding the identification or attempted identification of patients who are members of plans affiliated with copay accumulators, maximizers, or SaveOnSP.  As we explained during the March 7 meet and confer, such documents—which necessarily would have been provided to JJHCS—can be obtained through party discovery.

SaveOnSP nevertheless insisted during the March 7 meet and confer that this request encompasses internal documents that "reflect" communications between TrialCard and JJHCS, including notes that TrialCard personnel may have taken during a phone call or meeting.  As we discussed during the meet and confer, however, the plain language of this Request is not so expansive:  it seeks only Communications—i.e., "the transmittal of information"—***between*** JJHCS and TrialCard.  It does not request purely internal documents reflecting the contents of those transmittals.  *See* Second Subpoena at 4.

### III.    TrialCard's Responses to Identifying Patients

**Request No. 6** seeks documents sufficient to show the methods by which TrialCard responded to benefits investigations that revealed or suggested that a patient was a member of a health plan that was affiliated with a copay accumulator, maximizer, or SaveOnSP.  As we have explained in previous correspondence and during the March 7 meet and confer, TrialCard has produced multiple letter templates that it sent to SaveOnSP-patients in connection with the benefits investigation process.    TrialCard also produced a catalogue of these letters.    *See* TRIALCARD_0008931 ("Tasks").  Based on our reasonable investigation to date, we are unaware

---

[2] We note that the caselaw you cite in support of this argument appears inapposite.  *See Prusky v. Reliastar Life Ins.*, 532 F.3d 252, 258–59 (3d Cir. 2008) (discussing the failure to mitigate defense in the context of a breach of contract claim asserted under Pennsylvania law); *Grubbs v. Knoll*, 376 N.J. Super. 420, 437 (N.J. App. 2005) (discussing whether a jury instruction on the failure to mitigate defense is appropriate).  Neither case stands for the broad proposition that a third party is obligated to produce any document that may have some hypothetical bearing on whether the plaintiff could have mitigated its damages.

Hannah Miles, Esq.
March 22, 2024
Page 4

of any other systematic "method" that TrialCard undertook to respond to the results of benefits investigations identifying patients as SaveOnSP-affiliated; to the extent JJHCS undertook such methods, JJHCS is the proper source for such discovery. We trust that this resolves any dispute with respect to Request No. 6.

**Request No. 8** seeks documents and communications regarding the creation or attempted creation of a response or "solution" to copay maximizers, accumulators, or SaveOnSP. The search term that you have proposed is untethered to the claims at issue in this litigation: it seeks documents related to any maximizer or accumulator irrespective of whether such documents concern SaveOnSP. In the event you wish to pursue this request, please provide an appropriately narrowed term that addresses the relevant issues in this litigation.

## IV.    Communications with Stelara and Tremfya Patients

**Request No. 5** seeks "[a]ll Communications with patients receiving Stelara and Tremfya, including without limitation recordings of calls." You have represented that if TrialCard "refresh[es] the call and task notes, subject to the same procedures in the May 12, 2023 letter, and agree that SaveOn reserves it rights to request call recordings and transcripts in the future, that would" resolve any dispute with respect to Request No. 5.

TrialCard agrees to refresh its production of case and task notes through November 7, 2023 using the same collection methodology we used during the initial collection of case and task notes, which involved filtering the records for the Janssen Drugs at issue in this litigation and further searching them for responsive material using the search terms listed the May 12, 2023 letter. *See* May 12, 2023 Ltr. from G. Carotenuto to A. Dunlap at 2. Additionally, as we did with the initial production of case and task notes, we invite SaveOnSP to use these records to identify a reasonable number of calls for which you would like TrialCard to attempt to locate and produce the associated audio recording and/or transcript, where available. *See id.*

## V.    Communications Between TrialCard and SaveOnSP

**Request No. 7** seeks all communications between TrialCard and SaveOnSP. As we have explained, SaveOnSP can search its own records for communications responsive to this request, including call recordings. *See* TrialCard's Responses and Objections to RFP No. 5 ("TrialCard further objects to the extent this Request seeks the production of documents and communications that are available from parties to the Action, in particular from SaveOnSP."); *see also* Mar. 1, 2024 Ltr. from S. Arrow to H. Miles at 4.

In your March 8 letter, you clarified why you believe SaveOnSP would not possess the documents it seeks with this request. Specifically, you confirmed that certain "outbound calls

Hannah Miles, Esq.
March 22, 2024
Page 5

may not have been recorded by SaveOn."[3]  Please explain, in as much detail as possible, which types of calls are recorded and which are not.  This will allow TrialCard to evaluate whether there are certain recordings that only TrialCard maintains that are not in SaveOnSP's possession.  To the extent you seek production of such recordings, please also provide identifying information that would allow TrialCard to identify the relevant calls—specifically, all names and phone numbers used by SaveOnSP employees to communicate with TrialCard.  Absent such information, TrialCard lacks identifying information to isolate responsive recordings without undertaking the enormous burden of assessing every incoming call that it received.

You also ask a series of questions regarding the 16 call recordings that TrialCard produced on January 12, 2024.  We confirm that, at JJHCS's request, TrialCard agreed to produce these 16 call recordings.  Please direct any further questions regarding these call recordings to JJHCS.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

---

[3] Based on our meet and confer and SaveOnSP's March 8 letter, we understand that SaveOnSP has narrowed Request No. 7 to seek only this subset of call recordings—i.e., those that SaveOnSP did not record and thus does not have in its possession.  Please promptly clarify if this understanding is incorrect.

# Exhibit 43

David Elsberg
Andrew R. Dunlap
Meredith Nelson
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

E. Evans Wohlforth, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JMV) (CLW) <br><br> **DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

To:    Jeffrey J. Greenbaum, Esq.
       SILLS CUMMIS & GROSS, P.C.
       One Riverfront Plaza
       Newark, New Jersey 07102
       973-643-7000

1

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New

*Attorneys for Plaintiff Johnson & Johnson
Health Care Systems Inc.*

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26 and 34,

Defendant Save On SP, LLC ("SaveOnSP") requests Plaintiff Johnson & Johnson Health Care

Systems Inc. ("JJHCS"), to produce for inspection and copying the documents listed in these Re-

quests, to the office of the undersigned within 30 days of being served or at a time and place mu-

tually agreed by the parties or ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that this demand for production of documents

shall be deemed continuing in nature so as to require supplemental responses if Plaintiff or Plain-

tiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's

responses are served.

Dated:  November 11, 2022          By:  /s/ Andrew R. Dunlap
                                        David Elsberg
                                        Andrew R. Dunlap
                                        Meredith Nelson
                                        SELENDY GAY ELSBERG, PLLC
                                        1290 Avenue of the Americas
                                        New York, NY 10104
                                        212-390-9000
                                        deslberg@selendygay.com
                                        adunlap@selendygay.com
                                        mnelson@selendygay.com

                                        E. Evans Wohlforth, Jr.
                                        GIBBONS P.C.
                                        One Gateway Center
                                        Newark, NJ 07102-5310

2

973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

## **DEFINITIONS**

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses.

3.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.      "Action" means this litigation styled as "*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (JMV) (CLW).

6.      "Affordable Care Act" means the Patient Protection and Affordable Care Act, Pub. L. 148, 124 Stat. 119.

7.      "All," "any," and "each" mean any and all.

8.      "And" and "or" are construed both conjunctively and disjunctively.

9.      "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

10.    "CarePath Care Coordinator" means any person or entity encompassed by that term as used on CarePath's "Contact Us" webpage,[1] as well as any person responsible for communicating with patients who contact CarePath via an advertised help number (*e.g.*, 877-CarePath).

11.    "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

12.    "Complaint" means JJHCS's May 4, 2022 Complaint [ECF No. 1] or any subsequently amended Complaint in this Action.

13.    "Copay Accumulator Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

14.    "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

15.    "Copay Maximizer Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay

---

[1] *See* Contact Us, https://www.janssencarepath.com/patient/contact-us (last visited October 25, 2022).

assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maxi-mizer."

16.    "Document" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

17.    "ESI" means "electronically stored information" as defined in the Federal Rules of Civil Procedure.

18.    "Essential Health Benefit" means, in the context of prescription drug benefits at issue in this case, (a) a prescription drug benefit that satisfies the requirement for a plan to provide essential prescription drug benefits under the Affordable Care Act or that is treated as such by a plan;[2] and (b) any definition JJHCS ascribes to the term "essential health benefit" as used in the Complaint.

19.    "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

20.    "Including" means including but not limited to.

21.    "Janssen" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents,

---

[2] 45 C.F.R. §§ 156.122, 156.115.

representatives, directors, officers, employees, committees, attorneys, accountants, and all persons

or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc.,

Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

22.    "Janssen Drug" means any Specialty Drug manufactured or sold by Janssen from

any time for which patients may receive copay assistance, including BALVERSA, DARZALEX,

DARZALEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, REMICADE, RYBREVANT,

SIMPONI, STELARA, TRACLEER, TREMFYA, UPTRAVI, and ZYTIGA, as well as any other

specialty drugs that JJHCS asserts are at issue in this Action.

23.    "JJHCS's Employee Health Plans" means any health plan offered by JJHCS or

Janssen to its employees.

24.    "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all pre-

decessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or depart-

ments, agents, representatives, directors, officers, employees, committees, attorneys, accountants,

and all persons or entities acting or purporting to act on behalf or under the control of Johnson &

Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil

Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals,

Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development,

LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc.,

Janssen BioPharma LLC, and Janssen Research & Development LLC.

25.    "JJHCS Access Group" means the team operating within and for JJHCS under this

or a substantially similar name (*i.e.*, Access Group, Access Team, or Access Division).

26.    "JJHCS Health Economics Group" means the team operating within and for JJHCS under this or a substantially similar name (*i.e.*, Health Economics Group, Health Economics Team, or Health Economics Division).

27.    "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer, in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of such an entity.

28.    "JJHCS Outcome Group" means the team operating within and for JJHCS under this or a substantially similar name (*i.e.*, Outcome Group, Outcome Team, or Outcome Division).

29.    "Lash Group" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

30.    "Non-Essential Health Benefits" means, in the context of prescription drug benefits at issue in this case, (a) any prescription drug benefit covered by a plan in excess of those necessary for a plan to satisfy the requirements for providing essential prescription drug health benefits under the Affordable Care Act[3] and designated by the plan as a non-essential health benefit; and (b) any definition JJHCS ascribes to the term "non-essential health benefits" as used in the Complaint.

31.    "Parties" means "SaveOnSP" and "JJHCS."

32.    "Patient" means a natural person prescribed or eligible to be prescribed any Janssen Drug, whether or not they use CarePath or are a participant in a health plan advised by SaveOnSP.

---

[3] *See* 45 C.F.R. §§ 156.122, 156.115.

33.    "Person" means a natural person or legal entity including any business or govern-
mental entity or association.

34.    "Regarding" means (directly or indirectly, partially or wholly) about, alluding to,
assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to,
considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidenc-
ing, identifying, in connection with, indicating, in respect of, involving, memorializing, mention-
ing, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, re-
porting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touch-
ing upon a subject, or having been created, generated, or maintained in connection with or as a
result of that subject.

35.    "Request" means any of these Requests for Production.

36.    "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors
in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, represent-
atives, directors, officers, employees, committees, attorneys, accountants, and all persons or enti-
ties acting or purporting to act on behalf or under the control of Save On SP, LLC.

37.    "SaveOnSP IPBC Video" means the IPBC and SaveOnSP training video created
by Express Scripts as defined in Complaint ¶ 9.

38.    "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or
other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

39.    "Stelara" means the Janssen Drug sold under that name.

40.    "Tremfya" means the Janssen Drug sold under that name.

9

41.    "TrialCard" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

42.    "You" and "Your" means JJHCS.

## INSTRUCTIONS

1.    These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 34(a)(1).

2.    These Requests seek production of nonprivileged material. Fed. R. Civ. P. 26(b)(1).

3.    These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4.    For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 34(b)(2)(C).

5.    If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

6.    If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest. Fed. R. Civ. P. 34(b)(2)(C).

7.    If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 26(b)(5)(A)(ii), including by indicating whether any document exists regarding the information

10

requested and stating, to the extent the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked, Local Rule 34.1.

8.      If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction, the reason for its destruction, the name of the person who requested or authorized its destruction, and the name of the person who destroyed it.

9.      Produce documents as they are kept in the usual course of business. Fed. R. Civ. P. 34(b)(E)(i). For each document, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

10.      Produce electronically stored information in the form and manner required by any agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

11.      Produce each document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

12.      Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notations, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

13.      These Requests are deemed continuing. If after responding to any Request you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).

**TIME PERIOD**

Unless otherwise specified, these Requests cover from and including January 1, 2017, through the present.

**REQUESTS**

1.    From January 1, 2009 through the present, Documents sufficient to show JJHCS's organizational structure, including organizational charts.

2.    From January 1, 2009 through the present, Documents sufficient to show Janssen's organizational structure, including organizational charts.

3.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of each JJHCS Hub Entity.

4.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of any group or division within JJHCS, Janssen, or any JJHCS Hub Entity involved in developing, managing, marketing, or administering CarePath or any other copay assistance program offered for Janssen Drugs, and to identify their employees.

5.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of JJHCS's Health Economics, Access, and Outcome Groups and to identify employees working in those groups.

6.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of the drug product team for each Janssen Drug, and to identify employees working on those teams.

7.    From January 1, 2009 through the present, documents sufficient to identify all natural persons with decisionmaking authority over the sale or marketing of Janssen Drugs.

8.    All Documents and Communications with or regarding SaveOnSP.

12

9.    All Communications by JJHCS or Janssen with any Patient regarding SaveOnSP, including any Documents regarding those Communications.

10.    All Documents and Communications regarding any presentation, document, or information regarding SaveOnSP referenced in the Complaint, including the "SaveOnSP IPBC Video" and the materials referenced in Complaint ¶¶ 82-88.

11.    From January 1, 2009 through the present, all Documents and Communications regarding the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

12.    From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) JJHCS's decision to revise any of its CarePath terms and conditions for any Janssen Drug; and (d) JJHCS's understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

13.    From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

14.    From January 1, 2015 through the present, all Documents and Communications regarding JJHCS's or any JJHCS Hub Entity's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under

13

the Affordable Care Act and its regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

15.    All Documents and Communications regarding SaveOnSP's communications with Patients regarding CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 60-67, 109.

16.    All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 72.

17.    All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

18.    All Documents and Communications regarding any allegedly misleading or confusing communications between SaveOnSP and Patients, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 13, 75-77, 85-88.

19.    All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

20.    All Documents and Communications regarding any publicly distributed material (including, for example, articles, op-eds, white papers, and online postings) regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services, including Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect involvement with such material and JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect funding of the authors, publishers, or distributors of such material.

14

21.     All Documents and Communications regarding any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services.

22.     All Documents and Communications regarding any alleged harm caused by Save-OnSP to any Patient by allegedly making their healthcare more expensive, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

23.     All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

24.     All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than Care-Path, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

25.     All Documents and Communications regarding any alleged harm caused by Save-OnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 110, 115.

26.     All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

27.     All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

28.     From January 1, 2009 through the present, for each Janssen Drug for each year, Documents sufficient to show:

15

a.      all Patients receiving the Janssen Drug;

b.      the number of fills of the Janssen Drug received by each such Patient;

c.      the dosage of the Janssen Drug received by each such Patient for each fill;

d.      the projected number of Patients, average number of fills, and average dosage for the Janssen Drug;

e.      the cost to manufacture the Janssen Drug;

f.      the sales and marketing budget for the Janssen Drug;

g.      the price of the Janssen Drug;

h.      the revenue received by JJHCS from the Janssen Drug;

i.      all Patients enrolled in the CarePath program for the Janssen Drug;

j.      the dates on which each Patient was enrolled in CarePath;

k.      the amounts of copay assistance funds that JJHCS offered to each Patient enrolled in CarePath;

l.      the Janssen Drugs for which each Patient enrolled in CarePath received copay assistance;

m.      all copay assistance payments that JJHCS made to or on behalf each Patient enrolled in CarePath; and

29.      From January 1, 2009 through the present, for each Janssen Drug for each year, all Documents and Communications regarding:

a.      JJHCS's determination of the amounts of copay assistance funds that JJHCS offered to Patients enrolled in CarePath, including the determination of the maximum program benefit per calendar year for the Janssen Drug;

16

b.      JJHCS's budget for CarePath, including the sales and marketing budget;

c.      JJHCS's actual and projected annual costs for CarePath;

d.      JJHCS's use of or accounting for unused CarePath funds;

e.      the impact of the Affordable Care Act on JJHCS's CarePath budget or funding, including the impact of laws and regulations regarding out-of-pocket maximums;

f.      JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath;

g.      the impact of CarePath on Janssen's sales of any Janssen Drug;

h.      the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

i.      JJHCS's or Janssen's actual and projected return on investment for CarePath; and

j.      any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by SaveOnSP.

30.     From January 1, 2009 through the present, for each year for each Janssen Drug, all Documents and Communications regarding the basis for Janssen's decision to raise or lower the price of the Janssen Drug, including labor or manufacturing costs or the increase in efficacy of the Janssen Drug.

31.     All Documents and Communications regarding JJHCS's attempts to limit or eliminate the amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs, including Documents and Communications regarding JJHCS's attempts to limit or eliminate the

17

availability of CarePath copay assistance funds available to Patients enrolled in health plans advised by SaveOnSP.

32.     All Documents and Communications regarding any offer by JJHCS to provide to any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance funds available to a Patient.

33.     All Documents and Communications regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans.

34.     From any time, all Documents and Communications regarding JJHCS's or Janssen's negotiations or agreements regarding the potential use of SaveOnSP's services, or the services of any Copay Maximizer Service or Copay Accumulator Service, for JJHCS's Employee Health Plans, including JJHCS's abandonment of those negotiations or agreements.

35.     Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coordinators.

36.     From January 1, 2009 through the present, Documents sufficient to show the economic terms of JJHCS's retention of or agreements with any JJHCS Hub Entity or CarePath Care Coordinator regarding CarePath, including any assessment of the fair market value of those services.

37.     From January 1, 2009 through the present, documents sufficient to show the percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs.

18

38.     From January 1, 2009 through the present, all Documents and Communications received by JJHCS from any JJHCS Hub Entity or sent by JJHCS to any JJHCS Hub Entity regarding SaveOnSP or CarePath.

39.     All Documents and Communications received by JJHCS from any CarePath Care Coordinator regarding SaveOnSP.

40.     All Communications by any JJHCS Hub Entity or CarePath Care Coordinator with any Patient regarding SaveOnSP, including any Documents regarding those Communications and talk tracks or scripts prepared for use during those Communications.

41.     From January 1, 2015 through the present, all Documents and Communications relating to Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's return on investment for copay assistance dollars.

42.     From January 1, 2015 through the present, all Documents and Communications relating to JJHCS's or any JJHCS Hub Entity's understanding of the terms "copay accumulator" and "copay maximizer."

43.     All Documents and Communications concerning non-medical switching by participants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

44.     To the extent not requested above, Documents and Communications of any JJHCS Hub Entity or CarePath Care Coordinator regarding the topics of all Requests listed above.

45.     JJHCS's, Janssen's, any JJHCS Hub Entity's, and any CarePath Care Coordinator's document retention policies.

46.     Complete data dictionaries for any data that You produce.

19

47.    From any time, all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP, including in response to subpoenas served in this Action.

48.    To the extent not requested above, from any time, all Documents and Communications upon which you may rely in this Action.

# Exhibit 44

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza Newark,
New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for Plaintiff Johnson & Johnson Health Care
Systems Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JMV) (CLW) <br><br> **PLAINTFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** |

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the

General Objections below into its specific objections to each Request, whether or not each such

General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing.  It reserves the right to

supplement, amend, modify, or correct its responses under Rule 26(e) should it discover

additional information or grounds for objections at any time prior to the conclusion of this

Action.  The following responses and objections are based upon information known at this time.

1.     JJHCS objects to the Requests to the extent that they seek documents or

information protected from disclosure by a privilege including, without limitation, the First

Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense

privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules

of the Court, and relevant case law.  The inadvertent production by JJHCS of information,

documents, materials, or things covered by any privilege or doctrine shall not constitute a

waiver of any applicable privilege or doctrine, including but not limited to, objections on the

basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or

admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.     JJHCS objects to the Requests to the extent that they seek documents or

information that are not relevant to a claim or defense or to the subject matter of this litigation.

Any response JJHCS makes to any Request shall not be deemed an admission that the response,

information, document, or thing produced is relevant to a claim or defense or to the subject

matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence,

is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

2

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.    JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.    JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.    JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.    JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

13.    JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.    JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.

3

2.      JJHCS objects to the definition of the term "Janssen Drug" as irrelevant to the
extent it purports to include drugs that are not covered by CarePath.  JJHCS further objects to
the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to
the extent it includes "any Specialty Drug manufactured or sold by Janssen from any time."

3.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to
include attorneys and accountants who may be outside of JJHCS's possession, custody, and
control.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not
proportional to the needs of the case to extent it purports to include "any and all predecessors
and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or]
representatives" or purports to include entities and persons acting or purporting to act on behalf
of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc.,
including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil
Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech,
Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals,
Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and
Janssen Research & Development LLC.

4.      JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and
as irrelevant to the extent it purports to include entities other than those responsible for
administering CarePath during the relevant Time Period.  JJHCS further objects to the
definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the
extent it includes "any and all predecessors and successors in interest, assignees, parents,
subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers,
employees, committees, attorneys, accountants and all persons or entities acting or purporting to

4

act on behalf" of those entities. JJHCS further objects on the ground that the phrase

"administer, in whole or in part, CarePath" is vague and ambiguous. JJHCS further objects to

the extent the term is used to seek documents and communications in the possession of entities

other than JJHCS.

5.      JJHCS objects to the definition of the term "Lash Group" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of The Lash Group, Inc." JJHCS further objects to the extent the term is used to seek

documents and communications in the possession of entities other than JJHCS.

6.      JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of TrialCard Inc." JJHCS further objects to the extent the term is used to seek documents and

communications in the possession of entities other than JJHCS.

## OBJECTIONS TO THE TIME PERIOD FOR SPECIFIC REQUESTS

1.      JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome,

and not relevant to the subject matter of this Action to the extent they call for documents from

before January 1, 2017. Unless otherwise noted, JJHCS will only produce documents from

January 1, 2017 through the July 1, 2022 (the "Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

### Request No. 1

From January 1, 2009 through the present, Documents sufficient to show JJHCS's organizational structure, including organizational charts.

### Response to Request No. 1

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show the organizational structure of the JJHCS groups responsible for the administration of CarePath for the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

### Request No. 2

From January 1, 2009 through the present, Documents sufficient to show Janssen's organizational structure, including organizational charts.

### Response to Request No. 2

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this

6

Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 3**

From January 1, 2009 through the present, Documents sufficient to show the organizational structure of each JJHCS Hub Entity.

**Response to Request No. 3**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 4**

From January 1, 2009 through the present, Documents sufficient to show the organizational structure of any group or division within JJHCS, Janssen, or any JJHCS Hub Entity involved in developing, managing, marketing, or administering CarePath or any other copay assistance program offered for Janssen Drugs, and to identify their employees.

**Response to Request No. 4**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

7

extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request on the ground that the phrase "any other copay assistance program offered for Janssen Drugs" is vague and ambiguous. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show the organizational structure of the JJHCS groups responsible for the administration of CarePath for the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 5**

From January 1, 2009 through the present, Documents sufficient to show the organizational structure of JJHCS's Health Economics, Access, and Outcome Groups and to identify employees working in those groups.

**Response to Request No. 5**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show the organizational structure of the JJHCS groups responsible for the administration of CarePath for the relevant Time Period, to the extent such documents exist

8

and can be located after a reasonable search.  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 6**

From January 1, 2009 through the present, Documents sufficient to show the organizational structure of the drug product team for each Janssen Drug, and to identify employees working on those teams.

**Response to Request No. 6**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request on the ground that the phrase "drug product team" is vague and ambiguous.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 7**

From January 1, 2009 through the present, documents sufficient to identify all natural persons with decisionmaking authority over the sale or marketing of Janssen Drugs.

**Response to Request No. 7**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 8**

All Documents and Communications with or regarding SaveOnSP.

**Response to Request No. 8**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents related to any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period, to the extent such documents and communications exist and can be located after a reasonable search. However, notwithstanding the foregoing, JJHCS will not produce any documents or communications responsive to Request for Production No. 21, which seeks

10

documents that are irrelevant to any claim or defense in this Action.  JJHCS will not otherwise

search for or produce documents and communications responsive to this Request.

**Request No. 9**

All Communications by JJHCS or Janssen with any Patient regarding SaveOnSP, including any Documents regarding those Communications.

**Response to Request No. 9**

In addition to the foregoing general objections, JJHCS objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of

entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

**Request No. 10**

All Documents and Communications regarding any presentation, document, or in-formation regarding SaveOnSP referenced in the Complaint, including the "SaveOnSP IPBC Video" and the materials referenced in Complaint ¶¶ 82-88.

**Response to Request No. 10**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks documents related to any

advocacy to or communication with any governmental or regulatory body regarding SaveOnSP.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks "all" documents and communications regarding a

broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

## Request No. 11

From January 1, 2009 through the present, all Documents and Communications regarding the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

## Response to Request No. 11

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request on the ground that the phrase "any other copay assistance program offered for Janssen Drugs" is vague and ambiguous.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to CarePath.

JJHCS will not search for or produce documents or communications responsive to this Request.  JJHCS is, however, willing to meet and confer to determine if this Request can be appropriately narrowed.

12

**Request No. 12**

From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) JJHCS's decision to revise any of its CarePath terms and conditions for any Janssen Drug; and (d) JJHCS's understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

**Response to Request No. 12**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information beyond the

final CarePath terms and conditions at issue.  JJHCS further objects to this Request as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all"

documents and communications regarding a broad subject matter.  JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents and communications outside of the relevant Time Period.  JJHCS

further objects to this Request to the extent it seeks documents and communications in the

possession of entities other than JJHCS.  JJHCS further objects to this Request to the extent it

calls for JJHCS's understanding of any particular term, as such a contention interrogatory would

be premature at this point in the litigation pursuant to Local Rule 33.1(d).

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to show all final versions of CarePath's terms and conditions for each

Janssen Drug during the relevant Time Period, to the extent such documents exist and can be

located after a reasonable search.  Otherwise, JJHCS will not search for or produce documents

responsive to this Request.

**Request No. 13**

From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen

Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

**Response to Request No. 13**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the final CarePath terms and conditions at issue. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show all final versions of CarePath's terms and conditions for each Janssen Drug during the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 14**

From January 1, 2015 through the present, all Documents and Communications regarding JJHCS's or any JJHCS Hub Entity's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

**Response to Request No. 14**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for views on a legal

question.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not
proportional to the needs of the case to the extent it seeks "all" documents and communications
regarding a broad subject matter.  JJHCS further objects to this Request as overbroad, unduly
burdensome, and not proportional to the needs of the case to the extent it seeks documents and
communications outside of the relevant Time Period.  JJHCS further objects to this Request to
the extent it seeks documents and communications in the possession of entities other than
JJHCS.  JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity"
for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents
and communications in its possession regarding SaveOnSP's designation of specialty drugs as
Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its
regulations during the relevant Time Period, to the extent such documents and communications
exist and can be located after a reasonable search.  However, notwithstanding the foregoing,
JJHCS will not produce any documents responsive to Request for Production No. 21, which is
irrelevant to any claim or defense in this Action.  JJHCS will not otherwise search for or produce
documents and communications responsive to this Request.

## Request No. 15

All Documents and Communications regarding SaveOnSP's communications with
Patients regarding CarePath, including Documents and Communications regarding JJHCS's
allegations in Complaint ¶¶ 60-67, 109.

## Response to Request No. 15

In addition to the foregoing general objections, JJHCS objects to this Request as
overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it
seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 16**

All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 72.

**Response to Request No. 16**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request on the ground that the phrase "SaveOnSP's provision of services to qualified high deductible or health savings account plans" is vague and ambiguous. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 17**.

All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

**Response to Request No. 17**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks information about JJHCS's

payment of funds to patients enrolled in qualified high deductible or health savings account plans

as opposed to SaveOnSP's exploitation of a purported legal gray area with respect to those plans.

JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the

needs of the case to the extent it seeks "all" documents and communications regarding a broad

subject matter.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents and communications responsive to this

Request.

**Request No. 18**

All Documents and Communications regarding any allegedly misleading or confusing
communications between SaveOnSP and Patients, including Documents and Communications
regarding JJHCS's allegations in Complaint ¶¶ 13, 75-77, 85-88.

**Response to Request No. 18**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks documents related to any

advocacy to or communication with any governmental or regulatory body regarding SaveOnSP.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks "all" documents and communications regarding a

broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.  JJHCS further objects to this

Request to the extent it seeks "misleading or confusing communications," as those terms are

vague and ambiguous.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 19**

All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 19**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 20**

All Documents and Communications regarding any publicly distributed material (including, for example, articles, op-eds, white papers, and online postings) regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services, including Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect involvement with such material and JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect funding of the authors, publishers, or distributors of such material.

**Response to Request No. 20**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information about JJHCS's or any other entity's relationship or connection, if any, to materials about SaveOnSP's conduct,

18

as opposed to information about SaveOnSP's conduct itself. JJHCS further objects to this

Request as irrelevant to any claim or defense in this Action to the extent it seeks information

relating to Copay Accumulator Services or Copay Maximizer Services other than SaveOnSP's.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks "all" documents and communications regarding a

broad subject matter. JJHCS further objects on the ground that the phrases "direct or indirect

involvement" and "direct or indirect funding" are vague and ambiguous. JJHCS further objects

to this Request to the extent it seeks documents and communications in the possession of entities

other than JJHCS or that are publicly available and therefore equally available to SaveOnSP.

JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the

reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

**Request No. 21**

All Documents and Communications regarding any advocacy to or communication with
any governmental or regulatory body regarding SaveOnSP, Copay Accumulator Services, or
Copay Maximizer Services.

**Response to Request No. 21**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks information about JJHCS's

advocacy to or communication with any governmental or regulatory body regarding SaveOnSP

as opposed to information about SaveOnSP's conduct itself. JJHCS further objects to this

Request as irrelevant to any claim or defense in this Action to the extent it seeks information

relating to Copay Accumulator Services or Copay Maximizer Services other than SaveOnSP's.

19

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

JJHCS will not search for or produce documents and communications responsive to this Request.

## Request No. 22

All Documents and Communications regarding any alleged harm caused by SaveOnSP to any Patient by allegedly making their healthcare more expensive, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

## Response to Request No. 22

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 23**

All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 23**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 24**

All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 24**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information about the financial viability of any Copay Assistance Program other than CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

21

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 25**

All Documents and Communications regarding any alleged harm caused by SaveOnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 110, 115.

**Response to Request No. 25**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request on the ground that the phrase "any alleged harm" is vague and ambiguous. For the purposes of its response, JJHCS shall interpret the phrase "any alleged harm" to mean the damages identified by JJHCS relating to the increased average amount of CarePath expenditures incurred for patients enrolled in the SaveOnSP Program.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications in its possession relating to the extent of the harm SaveOnSP has caused JJHCS during the relevant Time Period, including the extent to which SaveOnSP has caused JJHCS to pay more in copay assistance than it otherwise would have, to the extent such documents exist and can be located after a reasonable search. However, notwithstanding the foregoing, JJHCS will not produce any documents responsive to Request for Production No. 21, which is irrelevant to any claim or defense in this Action. JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

**Request No. 26**

All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

**Response to Request No. 26**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum" is vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 27**

All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

**Response to Request No. 27**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter and seeks "complete databases from which [] data was drawn." JJHCS further objects to this Request to

23

the extent it seeks documents and communications in the possession of entities other than

JJHCS.  JJHCS further objects to this Request as duplicative of Request No. 25.

Subject to the foregoing objections, JJHCS will produce the data that formed the basis for

the allegations in Complaint ¶¶ 92-100.  Otherwise, JJHCS will not search for or produce

documents and communications responsive to this Request.

## Request No. 28

From January 1, 2009 through the present, for each Janssen Drug for each year,
Documents sufficient to show:

a.    all Patients receiving the Janssen Drug;

b.    the number of fills of the Janssen Drug received by each such Patient;

c.    the dosage of the Janssen Drug received by each such Patient for each fill;

d.    the projected number of Patients, average number of fills, and average dosage for
the Janssen Drug;

e.    the cost to manufacture the Janssen Drug;

f.    the sales and marketing budget for the Janssen Drug;

g.    the price of the Janssen Drug;

h.    the revenue received by JJHCS from the Janssen Drug;

i.    all Patients enrolled in the CarePath program for the Janssen Drug;

j.    the dates on which each Patient was enrolled in CarePath;

k.    the amounts of copay assistance funds that JJHCS offered to each Patient enrolled
in CarePath;

l.    the Janssen Drugs for which each Patient enrolled in CarePath received copay
assistance;

m.    all copay assistance payments that JJHCS made to or on behalf each Patient
enrolled in CarePath; and

**Response to Request No. 28**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP's misconduct, including information relating to Patient fills, the cost of manufacturing Janssen Drugs, the sales and marketing budgets for Janssen drugs, and pricing and revenue generated by Janssen Drugs. JJHCS further objects to this Request on the ground that the phrases "the projected number of Patients, average number of fills, and average dosage for the Janssen Drug," "the cost to manufacture the Janssen Drug," and "the price of the Janssen Drug" are vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a variety of extremely broad subject matters. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS will produce Janssen Transparency Reports for the relevant Time Period. Further, JJHCS is willing to meet and confer to discuss subparts (i) through (m). Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 29**

From January 1, 2009 through the present, for each Janssen Drug for each year, all Documents and Communications regarding:

    a.      JJHCS's determination of the amounts of copay assistance funds that JJHCS offered to Patients enrolled in CarePath, including the determination of the maximum program benefit per calendar year for the Janssen Drug;

25

b.      JJHCS's budget for CarePath, including the sales and marketing budget;

c.      JJHCS's actual and projected annual costs for CarePath;

d.      JJHCS's use of or accounting for unused CarePath funds;

e.      the impact of the Affordable Care Act on JJHCS's CarePath budget or funding, including the impact of laws and regulations regarding out-of-pocket maximums;

f.      JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath;

g.      the impact of CarePath on Janssen's sales of any Janssen Drug;

h.      the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

i.      JJHCS's or Janssen's actual and projected return on investment for CarePath; and

j.      any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by SaveOnSP.

**<u>Response to Request No. 29</u>**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP's misconduct, including information relating to the sales and marketing budget for CarePath, JJHCS's uses of or accounting for unused CarePath funds, the impact of the Affordable Care Act or other laws and regulations on CarePath's budget or funding, JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath, the impact of CarePath on Janssen's sales of any Janssen Drug, the impact of CarePath on JJHCS's or Janssen's gross to net calculations, JJHCS's or Janssen's actual and projected return on investment for CarePath, and the adherence rates of Patients enrolled in CarePath to Janssen Drugs.  JJHCS further objects to this Request on the ground that the phrases "the projected number of Patients, average number of fills, and average dosage for the Janssen Drug," "JJHCS's or Janssen's gross to net calculations," and "JJHCS's or Janssen's actual and projected return on investment for CarePath" are vague and ambiguous.  JJHCS further objects to this

26

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks "all" documents and communications regarding a variety of broad subject matters.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks documents and communications outside of the relevant

Time Period. JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession for the relevant Time Period sufficient to show (1) how JJHCS determines the

amounts of copay assistance funds that JJHCS offers to Patients enrolled in CarePath,

(2) JJHCS's budget for copay assistance through CarePath, and (3) JJHCS's actual and projected

annual costs for CarePath, to the extent such documents exist and can be located after a

reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to

this Request.

**Request No. 30**

From January 1, 2009 through the present, for each year for each Janssen Drug, all
Documents and Communications regarding the basis for Janssen's decision to raise or lower the
price of the Janssen Drug, including labor or manufacturing costs or the increase in efficacy of the
Janssen Drug.

**Response to Request No. 30**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to

SaveOnSP's misconduct, including information related to the pricing of Janssen Drugs. JJHCS

further objects to this Request on the ground that the phrases "the price of the Janssen Drug" and

"the increase in efficacy of the Janssen Drug" are vague and ambiguous. JJHCS further objects

to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to

the extent it seeks "all" documents and communications regarding a broad subject matter.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks documents and communications outside of the relevant

Time Period.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents responsive to this Request.

**Request No. 31**

All Documents and Communications regarding JJHCS's attempts to limit or eliminate the
amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based
on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs,
including Documents and Communications regarding JJHCS's attempts to limit or eliminate the
availability of CarePath copay assistance funds available to Patients enrolled in health plans
advised by SaveOnSP.

**Response to Request No. 31**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information beyond the

final CarePath terms and conditions at issue.  JJHCS further objects to this Request as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all"

documents and communications regarding a broad subject matter.  JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other

than JJHCS.

Subject to the foregoing objections, JJHCS will produce non-privileged documents and

communications in its possession relating to JJHCS's decision to limit or eliminate the amount of

copay assistance funds available to Patients using Stelara or Tremfya who are also enrolled in the

SaveOnSP Program, to the extent such documents and communications exist and can be located

after a reasonable search.  JJHCS will not otherwise search for or produce documents and

communications responsive to this Request.

**Request No. 32**

All Documents and Communications regarding any offer by JJHCS to provide to any
Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath
Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance
funds available to a Patient.

**Response to Request No. 32**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information beyond the

extent to which SaveOnSP has caused JJHCS to pay more in copay assistance than it otherwise

would have.  JJHCS further objects to this Request on the ground that the phrases "CarePath

funds greater than the amounts that JJHCS generally offers to CarePath Patients" and "to waive

any limitation on or elimination of the amount of CarePath copay assistance funds available" are

vague and ambiguous.  JJHCS further objects to this Request as overbroad, unduly burdensome,

and not proportional to the needs of the case to the extent it seeks "all" documents and

communications regarding a broad subject matter.  JJHCS further objects to this Request to the

extent it seeks documents and communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents and communications responsive to this

Request.

**Request No. 33**

All Documents and Communications regarding JJHCS's attempts to identify health plans
advised by SaveOnSP or Patients enrolled in such plans.

**Response to Request No. 33**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to

SaveOnSP's misconduct.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter.  JJHCS further objects to this Request to

the extent it seeks documents and communications in the possession of entities other than JJHCS

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

**Request No. 34**

From any time, all Documents and Communications regarding JJHCS's or Janssen's
negotiations or agreements regarding the potential use of SaveOnSP's services, or the services of
any Copay Maximizer Service or Copay Accumulator Service, for JJHCS's Employee Health
Plans, including JJHCS's abandonment of those negotiations or agreements.

**Response to Request No. 34**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about other

"services of Copay Maximizer Service[s] or Copay Accumulator Service[s]" and unrelated to

SaveOnSP's misconduct.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter.  JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents and communications outside of the relevant Time Period.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of

entities other than JJHCS.  JJHCS further objects to this Request to the extent it seeks

information that is exempt from discovery and protected from disclosure by a privilege

including, without limitation, the attorney-client privilege, the work-product doctrine, the joint

defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local

Rules of the Court, and relevant case law.

JJHCS will not search for or produce documents and communications responsive to this

Request.

**Request No. 35**

Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coordinators.

**Response to Request No. 35**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about

JJHCS "Hub Entities" or "CarePath Care Coordinators" that are not implicated in this litigation.

JJHCS further objects to this Request to the extent it seeks documents and communications in

the possession of entities other than JJHCS.  JJHCS further objects to this Request to the extent it

uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to identify the entities responsible for administering CarePath during the

relevant Time Period, to the extent such documents exist and can be located after a reasonable

search.  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 36**

From January 1, 2009 through the present, Documents sufficient to show the economic
terms of JJHCS's retention of or agreements with any JJHCS Hub Entity or CarePath Care
Coordinator regarding CarePath, including any assessment of the fair market value of those
services.

**Response to Request No. 36**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about

31

JJHCS "Hub Entities" or "CarePath Care Coordinators" that are not implicated in this litigation. JJHCS further objects to this Request on the ground that "any assessment of the fair market value of those services" is irrelevant. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce agreements in its possession between JJHCS and the entities responsible for administering CarePath during the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 37**

From January 1, 2009 through the present, documents sufficient to show the percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs.

**Response to Request No. 37**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to SaveOnSP's misconduct, including information about JJHCS's advertising or marketing of

32

CarePath or Janssen Drugs. JJHCS further objects to this Request on the ground that the phrase "Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs" is vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 38**

From January 1, 2009 through the present, all Documents and Communications received by JJHCS from any JJHCS Hub Entity or sent by JJHCS to any JJHCS Hub Entity regarding SaveOnSP or CarePath.

**Response to Request No. 38**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information about CarePath without relation to SaveOnSP. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent

33

it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 39**

All Documents and Communications received by JJHCS from any CarePath Care Coordinator regarding SaveOnSP.

**Response to Request No. 39**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 40**

All Communications by any JJHCS Hub Entity or CarePath Care Coordinator with any Patient regarding SaveOnSP, including any Documents regarding those Communications and talk tracks or scripts prepared for use during those Communications.

34

**Response to Request No. 40**

In addition to the foregoing general objections, JJHCS objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of

entities other than JJHCS.  JJHCS further objects to this Request to the extent it uses the term

"JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by a privilege including, without limitation, the attorney-client

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege,

the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

**Request No. 41**

From January 1, 2015 through the present, all Documents and Communications relating
to Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's
return on investment for copay assistance dollars.

**Response to Request No. 41**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about other

"Copay Accumulator Services and Copay Accumulator Services" and information unrelated to

SaveOnSP's misconduct.  JJHCS further objects to this Request on the ground that the phrase

"JJHCS's return on investment for copay assistance dollars" is vague and ambiguous.  JJHCS

further objects to this Request as overbroad, unduly burdensome, and not proportional to the

35

needs of the case to the extent it seeks "all" documents and communications regarding a broad

subject matter. JJHCS further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks documents and communications

outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks

documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

## Request No. 42

From January 1, 2015 through the present, all Documents and Communications relating
to JJHCS's or any JJHCS Hub Entity's understanding of the terms "copay accumulator" and
"copay maximizer."

## Response to Request No. 42

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to

SaveOnSP's misconduct. JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter. JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents and communications outside of the relevant Time Period. JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of

entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term

"JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by a privilege including, without limitation, the attorney-client

36

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege,

the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents

and communications in JJHCS's possession during the relevant Time Period relating to JJHCS's

understanding of whether the terms "copay accumulator" or "copay maximizer" apply to

SaveOnSP.  However, notwithstanding the foregoing, JJHCS will not produce any documents or

communications responsive to Request for Production No. 21, which is irrelevant to any claim or

defense in this Action.  JJHCS will not otherwise search for or produce documents and

communications responsive to this Request.

**Request No. 43**

All Documents and Communications concerning non-medical switching by participants of
plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay
Maximizer Service.

**Response to Request No. 43**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about any

other "Copay Accumulator Service" or "Copay Maximizer Service" and information unrelated to

SaveOnSP's misconduct.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter.  JJHCS further objects to this Request to

the extent it seeks documents and communications in the possession of entities other than JJHCS

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

**Request No. 44**

To the extent not requested above, Documents and Communications of any JJHCS Hub Entity or CarePath Care Coordinator regarding the topics of all Requests listed above.

**Response to Request No. 44**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "regarding the topics of all Requests listed above" is vague and ambiguous. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 45**

JJHCS's, Janssen's, any JJHCS Hub Entity's, and any CarePath Care Coordinator's document retention policies.

**Response to Request No. 45**

In addition to the foregoing general objections, JJHCS objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

38

Subject to the foregoing objections, JJHCS will produce its document retention policies for the relevant Time Period. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 46**

Complete data dictionaries for any data that You produce.

**Response to Request No. 46**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "data dictionaries for any data that You produce" is vague and ambiguous. JJHCS further objects to this Request to the extent that it purports to require the creation of any document or record in a format not kept by JJHCS or seeks to impose production obligations that exceed those required by the Rules of Federal Procedure, the Local Rules of the Court, this Court's Orders, or with any applicable agreement among the parties.

JJHCS will not search for or produce documents or communications responsive to this Request. JJHCS is, however, willing to meet and confer to determine if this Request can be appropriately narrowed.

**Request No. 47**

From any time, all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP, including in response to subpoenas served in this Action.

**Response to Request No. 47**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP" is vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject

39

matter.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks documents and communications

outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks

information that is exempt from discovery and protected from disclosure by a privilege

including, without limitation, the attorney-client privilege, the work-product doctrine, the joint

defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local

Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce documents obtained via third-

party subpoenas it serves in this Action.  Otherwise, JJHCS will not search for or produce

documents responsive to this Request.

## Request No. 48

To the extent not requested above, from any time, all Documents and Communications
upon which you may rely in this Action.

## Response to Request No. 48

In addition to the foregoing general objections, JJHCS objects to this Request on the

ground that the phrase "all Documents and Communications upon which you may rely in this

Action" is vague and ambiguous.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter.  JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents and communications outside of the relevant Time Period.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by a privilege including, without limitation, the attorney-client

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications upon which it intends to rely at trial in compliance with the schedule set by the Court. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

Dated: December 12, 2022

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:     /s/Jeffrey J. Greenbaum
        JEFFREY J. GREENBAUM
        KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

# Exhibit 45

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Elizabeth H. Snow
Associate
212 390 9330
esnow@selendygay.com

January 30, 2024

**Via E-mail**

Sara Arrow
Patterson Belknap Webb & Tyler LLP
133 Avenue of the Americas
New York, NY 10036
Sarrow@pbwt.com

**Re:** ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear Sara,

We write to you as counsel for TrialCard, Inc. ("TrialCard") and Johnson &
Johnson health Care Systems, Inc. (with its affiliates, "J&J"), regarding the Janu-
ary 12, 2024 meet-and-confer between SaveOn and TrialCard regarding Trial-
Card's Responses and Objections, dated December 15, 2023, to SaveOn's second
subpoena, dated December 1, 2023.

During the meet-and-confer, in your capacity as counsel for TrialCard, you
cited the deposition testimony of Ayesha Zulqarnain in support of your objection
to SaveOn's RFP No. 7. This violated the Discovery Confidentiality Order. Discov-
ery Confidentiality Order, Nov. 22, 2022, Dkt No. 62 ("DCO"). SaveOn designated
all of Zulqarnain's testimony as at least "Confidential" and J&J did not object. *See*
Jan. 4, 2024 Ltr. from K. Brisson to E. Holland ("As an initial matter, JJHCS has
no objection to SaveOnSP's designation of the entire transcript as Confidential").
Zulqarnain's testimony thus is "Designated Material" under the DCO and J&J was
prohibited from sharing it with third parties including TrialCard. DCO ¶ 4.

Please let us know if J&J has shared with TrialCard (or any other third
party) any other information that SaveOn produced to it in this litigation and

Sara Arrow
January 30, 2024

designated as Confidential or AEO under the DCO. Please also let us know what steps you will take to ensure that similar violations of the DCO do not occur in the future.

We request a response by February 6, 2023.

Sincerely,

Elizabeth Snow
Associate

# Exhibit 46



January 4, 2024

Katherine Brisson
(212) 336-2552

**By Email**

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,***
> ***Case No. 2:22-cv-02632-JKS-CLW***

Dear Emma:

We write in response to your December 5 letter that designates portions of the Ayesha Zulqarnain deposition transcript as Attorneys' Eyes Only ("AEO") and Attorneys' Eyes Only–Confidential Health Information ("AEO-CHI").

As an initial matter, JJHCS has no objection to SaveOnSP's designation of the entire transcript as Confidential.

However, many of your AEO designations do not appear to fall within the definition of "Attorneys' Eyes Only" in the Confidentiality Order. *See* D. E. 62 at ¶ 2 (defining "Attorneys' Eyes Only" material as that which "contains ***highly sensitive*** business or personal information, the disclosure of which is ***highly likely*** to cause ***significant harm*** to an individual or to the business or competitive position of the Producing Party or the disclosure of which absent an Attorneys' Eyes Only designation could cause the Producing Party to violate its confidentiality obligations to others" (emphasis supplied)). These AEO designations include testimony regarding:

- ███████████████████████████████████████████, *see, e.g.*, 28:16–29:21, 35:16–38:14;

- ████████████████████████████████████████████████████████████
  █████████████████████, *see, e.g.*, 108:20–24, 111:7–9, 112:6–113:5, 115:13–25, 116:14–117:12, 120:18–121:2, 145:4–6; 149:13–150:6;

- ████████████████████████████████████████████████████████, *see* 128:4–129:17, 141:4–10, 185:8–186:5;

Emma Holland, Esq.
January 4, 2024
Page 2

- █████████████████████████, *see* 174:8–17;

- █████████████████████████, *see* 206:16–21; and

- ███████████████████████████ *see* 255:2–256:10, 263:18–266:10, 274:16–275:16, 277:18, 281:20–282:15.

These and other designations by SaveOnSP are set forth on Appendix A to this letter.  We ask that SaveOnSP explain with particularity the basis for each of these designations, or withdraw them, by January 11, 2024.

Very truly yours,

*/s/Katherine Brisson*
Katherine Brisson

Emma Holland, Esq.
January 4, 2024
Page 3

## Appendix A

| | | | |
|---|---|---|---|
| 28:16–29:21 | 121:18–25 | 144:9–12 | 180:8–13 |
| 35:16–38:14 | 124:15–25 | 145:4–6 | 185:8–186:5 |
| 91:24–92:4 | 125:20–21 | 147:5–10 | 206:16–21 |
| 103:22–105:11 | 128:4–129:17 | 149:13–150:6 | 263:18–266:10 |
| 108:20–24 | 131:18–19 | 152:18–20 | 274:16–275:16 |
| 111:7–9 | 132:8–9 | 154:2–155:11 | 277:18 |
| 111:19–25 | 136:19–21 | 170:14–21 | 279:15–19 |
| 112:6–113:5 | 137:3–6 | 171:6–11 | 280:12–13 |
| 115:13–25 | 137:19–22 | 172:2–6 | 281:10–11 |
| 116:14–117:12 | 138:2–7 | 174:8–17 | 281:20–282:15 |
| 120:18–121:2 | 141:4–10 | 177:21–178:22 | |

# Exhibit 47



www.pbwt.com

February 1, 2024

Sara A. Arrow
(212) 336-2031

**By Email**

Elizabeth Snow, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:   **January 12, 2024 Meet and Confer**
> *Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC*
> **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Elizabeth:

We write in response to your January 30, 2024 letter concerning the January 12, 2024 meet and confer between SaveOnSP and TrialCard.

Your assertion that JJHCS has violated the Discovery Confidentiality Order ("DCO") is baseless. JJHCS has not provided Ayesha Zulqarnain's deposition transcript to TrialCard, nor has it summarized its contents to TrialCard or otherwise provided to TrialCard any other materials designated by SaveOnSP as Confidential or Attorney's Eyes Only ("AEO") under the DCO. As we have previously explained, your resort to unfounded accusations is disappointing and not collegial. *See* Aug. 16, 2023 Email from G. LoBiondo to E. Snow.

Your letter also misrepresents the discussion that we had during the January 12 meet and confer. Specifically, Request No. 7 requested all communications between TrialCard and SaveOnSP, including recordings of calls. While discussing TrialCard's burden objections to producing documents in response to that request, we, in our capacity as counsel to TrialCard, noted that TrialCard could not identify recordings of such calls without the benefit of identifying information, including the names and phone numbers SaveOnSP has used to communicate with TrialCard. We invited SaveOnSP to provide this information to TrialCard to assist it in its efforts to locate responsive documents. We further mentioned in passing that, in our capacity as counsel for JJHCS, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. We observed that such deception contributes to the burden TrialCard faces in producing the calls sought by Request No. 7. At no point did we suggest or imply that TrialCard was in possession of Ms. Zulqarnain's deposition testimony; quite to the contrary, we recognized during the meet and confer, as we have throughout this litigation, that JJHCS and TrialCard are separate entities.

---

Elizabeth Snow, Esq.
February 1, 2024
Page 2


Finally, in light of the issues raised in the January 30 letter, we note that SaveOnSP has itself repeatedly attempted to blur the lines between JJHCS and TrialCard.  For example, SaveOnSP has cited JJHCS materials designated as AEO in letters to TrialCard (including even after we advised you that such an approach raised confidentiality concerns)[1] and by attempting to link issues involving TrialCard to unrelated issues involving JJHCS, *see* Jan. 19, 2024 Ltr. from H. Sandick to E. Snow.  We again caution you against this approach and ask you to observe the boundaries between JJHCS and TrialCard.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

---

[1] For example, your December 8, 2023 letter to TrialCard quoted from documents that JJHCS had designated as AEO, without recognition of that designation or of TrialCard's status as a third party.  Instead of jumping to conclusions—as SaveOnSP does in the January 30 letter—we recognized that this may have been an oversight and asked you to act in accordance with the DCO going forward.  *See* Dec. 22, 2023 Ltr. from S. Arrow to H. Miles at 1 n.1.  In two subsequent letters to TrialCard, SaveOnSP proceeded to ignore the concern we had raised in the December 22 letter.  *See* Jan. 5, 2024 Ltr. from H. Miles to K. Brisson (quoting JJHCS's AEO-designated documents to TrialCard without noting the confidentiality designation); Jan. 30, 2024 Ltr. from H. Miles to S. Arrow (same).

# Exhibit 48



www.pbwt.com

February 22, 2024

Sara A. Arrow
(212) 336-2031

**By Email**

Elizabeth Snow, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    **January 12, 2024 Meet and Confer**
       ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
       **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Elizabeth:

We write in response to your February 16, 2024 letter concerning the January 12, 2024 meet and confer between SaveOnSP and TrialCard, and the related earlier correspondence.

As you know, the January 12, 2024 meet and confer between TrialCard and SaveOnSP has been the subject of several discovery letters. In a letter dated January 30, 2024, SaveOnSP first suggested—without basis—that our client, JJHCS, violated the Discovery Confidentiality Order by purportedly sharing materials marked as Attorney's Eyes Only ("AEO") under the DCO with TrialCard, a third party in this matter. We explained at length why that accusation lacked merit. *See* Feb. 1, 2024 Ltr. from S. Arrow to E. Snow. JJHCS has not provided TrialCard with any materials designated by SaveOnSP as Confidential or AEO, and your mistaken characterization of the meet and confer did not prove otherwise. We also asked you in our February 1 letter to cease making unfounded accusations in the interest of collegiality.

Unfortunately, you have not done so. Instead, you have now leveled a new baseless accusation, falsely suggesting that our firm, as counsel for both JJHCS and TrialCard, violated the DCO by "***using*** Confidential information" acquired through our firm's representation of JJHCS for a "purpose other than its prosecution of this action, including on behalf of a third party resisting a subpoena." *See* Feb. 16, 2024 Ltr. from E. Snow to S. Arrow (emphasis in original). A passing reference in a phone call does not amount to "use" of any kind, let alone a use that is prohibited by Paragraph 4 of the DCO. We did not use protected materials in violation of the DCO or otherwise.

You nevertheless insist that we identify steps to ensure that "similar violations of the DCO do not occur in the future." The premise of your demand is flawed; there has been no violation. Accordingly, our firm will not "wall off its attorneys representing [JJHCS] in this

Elizabeth Snow, Esq.
February 22, 2024
Page 2

matter from those representing TrialCard on this matter," as you insist.  We are aware of no authority to support this extraordinary request, and you have identified none.  Our clients are free to select counsel of their choosing, and we will continue to represent them consistent with all applicable ethical and other obligations.

Finally, we have requested multiple times in discovery correspondence and during conferral that you observe the distinctions between our firm's clients, JJHCS on the one hand, and TrialCard on the other.  *See, e.g.*, Feb. 1, 2024 from S. Arrow to E. Snow.  We have made this request precisely because we recognize that the parties are separate, with distinct rights and obligations.  Yet, even in the days following your allegations about the DCO, you have persisted in blurring the lines between these two clients.  *See, e.g.*, Feb. 13, 2024 Ltr. From H. Miles to S. Arrow ("We write to you as counsel for TrialCard, Inc. ("TrialCard") and Johnson & Johnson Health Care Systems, Inc. (with its affiliates, "J&J")").  Once again, it is SaveOnSP—not JJHCS or TrialCard—that has attempted to conflate JJHCS and TrialCard.  Please immediately cease this practice.  We have and will continue to treat JJHCS and TrialCard as distinct entities—and we expect you to do the same.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

14928123

# Exhibit 49



January 12, 2024

Sara A. Arrow
(212) 336-2031

**By Email**

Elizabeth Snow, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:     ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
         **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Elizabeth:

On behalf of TrialCard, we write in response to your December 27, 2023 letter concerning the February 17, 2023 subpoena (the "Subpoena") served on TrialCard and our related email correspondence.

Suffice it to say, we disagree with the statements in your December 27 letter, including for the reasons we have explained at length in discovery letters and during the conferral process. *See, e.g.*, Dec. 6, 2022 Ltr. from S. Arrow to H. Miles; Dec. 22, 2023 Ltr. from S. Arrow to E. Snow. As we have explained, SaveOnSP's request to the extend the scope of the Subpoena at least nine months beyond the service date is improper and contrary to the Federal Rules of Civil Procedure.

In the interest of finality, we write to confirm that we are at impasse with respect to the applicable time period for the Subpoena. TrialCard does not consent to submit this dispute to Judge Wolfson.

TrialCard reserves all rights.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

# Exhibit 50

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

March 8, 2024

**Via E-mail**

Sara A. Arrow
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
sarrow@pbwt.com

Re:     ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Sara,

We write regarding SaveOn's second subpoena, to TrialCard, dated December 1, 2023, and to follow up on the parties' meet-and-confer on March 7, 2024.

## I.     Time Period

SaveOn's subpoena—issued December 1, 2023—seeks documents through "the present," but TrialCard has generally refused to produce documents past July 1, 2022. We discussed SaveOn's position that TrialCard should produce documents through the present for all requests. TrialCard has provided no reasoned basis to explain the July 1, 2022 date—particularly for these requests which were served almost 18 months after that date.

In your March 1, 2024 letter and during the meet and confer, you pointed to the Benefits Investigations spreadsheet, where you have agreed to produce records through November 7, 2023, as an instance where you agreed to go beyond TrialCard's obligations "in the interest of compromise." But, as we stated, TrialCard is producing those records on behalf of J&J, which has been ordered by the Court to produce responsive documents through November 7, 2023. *See* Jan. 24, 2024 Tr. at 21:10–17 ("[W]e [J&J] have already agreed to produce[,] ... either directly through us or by asking our vendor, a company called TrialCard, to produce what are known as benefits investigations. And those are the enforcement documents. We're in the process of making those productions for the relevant time period right now."); *see also* Oct. 30, 2023 Tr., at 62:8–13 ("[W]e [J&J] will also give

Sara A. Arrow
March 8, 2024

them through a production from TrialCard, which is our vendor, who we also represent and is subject to a subpoena, we'll give them benefits investigations that find any patient in a maximizer or accumulator through to the present. Through to the present.").

In addition, TrialCard represented that it intends to produce certain updated or refreshed CarePath claims data through November 7, 2023. You indicated that you were still exploring the scope of the refresh. Please let us know when we can expect that updated data, and whether you are producing claims data on behalf of TrialCard or J&J.

## II.    TrialCard's Ability to Identify Patients

Next, we discussed SaveOn's Requests 1, 2, 3, and 4, which seek documents related to TrialCard's ability to identify patients on accumulators, maximizers, or health plans advised by SaveOn. You continued to state that the information that we request in these RFPs is not relevant.

For Request 3, which requests "[d]ocuments sufficient to show the methods by which TrialCard identifies or attempts to identify if patients are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service," you pointed to the Benefits Investigations spreadsheet that you previously produced. But you were not able to represent that Benefits Investigations are the underline{only} method that TrialCard uses to identify or attempt to identify such patients, and refused to search for additional documents responsive to this request. As we explained, it is not our burden to tell you exactly what methods we are looking for—only TrialCard has that information.

How TrialCard could identify patients on SaveOn-advised plans is highly relevant to our failure-to-mitigate defense. You responded that the only methods to identify patients that may be relevant are those that were squarely presented to J&J and thus that we could get anything we needed from party discovery. That misunderstands our failure-to-mitigate affirmative defense. "To prove a failure to mitigate, one must show: (1) what reasonable actions the plaintiff ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced." *Prusky v. ReliaSatar Life Ins.*, 532 F.3d 252, 258–59 (3d Cir. 2008) (quotation marks omitted). "Damages that could have been 'avoided with reasonable effort without undue risk, expense, burden, or humiliation will be considered ... as not chargeable against the defendant.'" *Id.* at 259 (quoting Williston on Contracts, § 64:27, at 195). "Reasonableness is to be determined from all the facts and circumstances of each case, and must be judged in the light of one viewing the situation at the time the problem was presented." *Id.*; *see also Grubbs v. Knoll*, 376 N.J. Super. 420, 437 (N.J. App. 2005) ("Injured parties have a duty to take reasonable steps to mitigate damages ... The reasonableness of the plaintiff's actions is measured by a subjective standard."). If TrialCard, J&J's vendor, used other methods to identify patients on SaveOn-advised plans, maximizers, and accumulators, those methods are relevant to our

Sara A. Arrow
March 8, 2024

failure-to-mitigate defense as "reasonable actions the plaintiff ought to have taken," whether or not there is direct evidence that the option was put in front of J&J.

The parties are at impasse on this issue.

## III. TrialCard's Responses to Identifying Patients

Requests 6 and 8 seek documents related to TrialCard's responses to accumulators, maximizers, and plans advised by SaveOn. For Request 6, which asks for "[d]ocuments sufficient to show the methods by which TrialCard responded to Benefits Investigations that revealed or suggested that a patient was a member of a plan advised by SaveOnSP, any Copay Accumulator service, and/or any Copay Maximizer," you pointed to the form letters that TrialCard sent to Stelara and Tremfya patients after the patients were identified through Benefits Investigations. We asked if sending those letters (and the actions described in the letters) are the only methods or actions taken to respond to such Benefits Investigations. You did not confirm that, nor did you agree to produce documents reflecting other methods. You stated that we should seek this material from J&J because, as a vendor, TrialCard acted only according to J&J's direction in operating the CarePath program. As we stated, we are entitled to investigate both what J&J directed (through party discovery), and what TrialCard actually did (through third-party discovery). The parties are at impasse on this issue.

Request 8 seeks documents and communications regarding the creation or attempted creation of ██████████████████ You again stated that TrialCard's responses or solutions are only relevant to the extent that they were proposed or presented to J&J. For the reasons explained above, if TrialCard had developed responses or solutions that other drugs manufacturers were using or considered using to mitigate alleged losses relating to similar copay assistance program, that is relevant to our failure to mitigate defense, regardless of whether the option was directly pitched to J&J. TrialCard's capabilities are relevant. You suggested that we propose search terms for this request. Please see Appendix A. Please tell us by March 15, 2024 if you agree to run these search terms.

## IV. Communications with Stelara and Tremfya Patients

In response to Request 5, which seeks all communications with patients receiving Stelara and Tremfya, including recordings of calls, you pointed to your previous productions of "(1) case and task notes reflecting communications between TrialCard and patients taking at least one Janssen drug [to January 1, 2022]; and (2) for the period January 1, 2022 to November 7, 2023, certain documents sufficient to show written communications to patients receiving Stelara and Tremfya to the extent such communications concern whether those patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan." TrialCard's R&Os, at 12 (Dec. 15, 2023). You clarified that, based on your reasonable investigation,

Sara A. Arrow
March 8, 2024

the letters that TrialCard produced were the only communications sent to Stelara and Tremfya patients regarding whether those patients were in a SaveOn-advised plan, a maximizer or an accumulator.

We asked you to please update the case and task notes to the present. You stated that you would take the request back but were open to such a refresh, if we agreed that doing so would resolve this Request. When you produced the original set of case and task notes, you explained that you "filtered these notes for the Janssen Drugs at issue in this litigation and [then] further search[ed] these notes for responsive material" using search terms. *See* May 12, 2023 Ltr. from G. Carotenuto to A. Dunlap, at 2. You then "invite[d] [SaveOn] to use these records to identify a reasonable number of calls for which you would like TrialCard to attempt to produce the associated audio recording and/or transcript, where available." *Id.* If you refresh the call and task notes, subject to the same procedures in the May 12, 2023 letter, and agree that SaveOn reserves its rights to request call recordings and transcripts in the future, that would indeed resolve this Request.

## V.    Communications Between TrialCard and SaveOn

Finally, we discussed Request 7, which asks for "[a]ll communications between TrialCard and SaveOnSP, including without limitation recordings of calls." You asked whether SaveOn itself has these call records, such that any request for TrialCard to produce them would be duplicative. To the extent that SaveOn employees contacted the CarePath call center run by TrialCard on behalf of J&J, those outbound calls may not have been recorded by SaveOn. That is why we have requested these call records from TrialCard, which we believe records incoming calls to its call center as a regular practice.

In addition, we discussed the 16 call records that TrialCard produced on January 12, 2024, marked as TRIALCARD_00008915-8930. We explained that we believe that these were the "certain responsive call recordings as requested by JJHCS" that TrialCard agreed to produce in its R&Os in response to Request 7. We explained that it was our understanding that J&J possessed and used these call recordings long before they were produced by TrialCard to SaveOn on January 12, 2024. We asked how it was that J&J had come to possess these call recordings, and what the nature of the request was that J&J made to TrialCard that led to it producing the call recordings to us. You stated that you were not prepared to answer those questions but that you would look into it. We then asked whether it is TrialCard's general practice to share recordings of calls with or regarding CarePath patients with J&J, whether those calls were shared as part of this litigation, or whether these 16 calls were specifically identified and shared.

Please tell us (1) how J&J came to possess the call recordings before they were produced in this litigation by TrialCard, (2) what the nature of J&J's request to TrialCard was that led it to produce the call recordings to SaveOn, and (3) whether it is TrialCard's general practice to share recordings of calls with or

Sara A. Arrow
March 8, 2024

regarding CarePath patients with J&J, whether those calls were shared as part of
this litigation, or whether these 16 calls were specifically identified and shared.

    We request a response by March 15, 2024.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

Sara A. Arrow
March 8, 2024

## **Appendix A**

- Proposed Custodians: Holly Weischedel, Sini Abraham, Paul Esterline, Rick Fry, Jason Zemcik, Rick Ford, April Harrison, Tommy Gooch, Lynsi Newton, Amber Maldonado, Cosimo Cambi.

- Search term:

  (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP) OR (accumulate* OR maximiz*) OR ("Essential Health Benefit*" OR NEHB OR EHB OR (variable /5 copay)) /20 (solution* OR response* OR shield* OR circumvent* OR prevent* OR avoid*)

6

# Exhibit 51

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

**selendy
gay
elsberg**

Elizabeth H. Snow
Associate
212 390 9330
esnow@selendygay.com

December 27, 2023

**Via E-mail**

Sara Arrow
Patterson Belknap Webb & Tyler LLP
133 Avenue of the Americas
New York, NY 10036
Sarrow@pbwt.com

Re:    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear Sara,

We write in response to your December 22, 2023 letter concerning the sub-poena issued to TrialCard, Inc. ("TrialCard") by Save On SP, LLC ("SaveOn") on February 18, 2023 (the "Subpoena"), and to follow up on the parties' December 12, 2023 meet and confer.

We stated in our December 14, 2023 letter that, following the parties' meet and confer, the parties are at impasse on the question of whether TrialCard will produce documents through November 7, 2023, the date ordered by the Court for a refreshed party production. TrialCard's responses do not change this conclusion.

*First*, the May 31, 2023 letter that TrialCard cites to purportedly show that SaveOn "accepted [April 1, 2016 to July 1, 2022] as the Relevant Time," offers no support for its assertion that SaveOn agreed to a July 1, 2002 cutoff for TrialCard's production. The quoted language merely summarized TrialCard's position: "You replied that TrialCard will produce documents responsive to this request from April 1, 2016 through July 1, 2022 (the 'Relevant Time Period')." *See* May 31, 2023 Ltr. from E. Holland to G. Carotenuto at 1. Similarly, the July 26, 2023 letter simply proposed supplemental search terms to add to the search that TrialCard had agreed to conduct, reserving all rights. *See* July 26, 2023 Ltr. from E. Holland to K. Brisson at 7 n.1.

*Second*, while TrialCard asserts that it is improper to extend the scope of the subpoena beyond the date of service, federal courts have ordered third parties

Sara A. Arrow
December 27, 2023

to produce documents created after the return date or service date of subpoenas. *See, e.g.*, *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 449 (S.D.N.Y. 2011); *United States v. Int'l Bus. Machines Corp.*, 83 F.R.D. 92, 96 (S.D.N.Y. 1979); *Addison v. Monarch & Assocs., Inc.*, No. 14-CV-00358 (GW) (JEM), 2016 WL 11530426, at *1 (C.D. Cal. Dec. 12, 2016). Even were it otherwise, SaveOn could simply serve an updated subpoena covering the updated timeframe; TrialCard's position serves only to delay production of clearly relevant documents.

*Third*, while TrialCard points out that the Court's November 7, 2023 Order did not direct it to update its discovery responses, that issue was not before the Court. Now that the parties have been ordered to refresh their productions through November 7, 2023, the question is whether TrialCard—J&J's main vendor for CarePath—should produce documents from the same time period, and it should. TrialCard asserts that no other third party has updated its production through November 7; in fact, Archbow has agreed to do so, and TrialCard should as well.

In sum, the parties did not agree that TrialCard's production would not extend past July 1, 2022. TrialCard has not articulated a relevance or burden objection. The parties are thus at impasse on this issue. SaveOn requests that TrialCard consents to submit this dispute to Special Master Freda L. Wolfson.

We request a response by January 3, 2023.

Best,


Elizabeth H. Snow
Associate

# Exhibit 52



www.pbwt.com

July 6, 2023

Katherine Brisson
(212) 336-2552

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
       **Case No. 2:22-cv-02632 (ES) (CLW)**

Dear Emma:

On behalf of TrialCard, Inc. ("TrialCard"), we write in response to your July 5, 2023 letter concerning TrialCard's responses to Save On SP, LLC's (SaveOnSP) subpoena. As we previously stated, we have worked with our client to determine whether there is anything more to be done to satisfy the concerns you raised during our June 28, 2023 meet and confer. While we still do not think it necessary, in order to moot the concerns you have expressed and to avoid an unnecessary dispute, we will make a custodial production from TrialCard. We will update you further as that collection and review proceeds and will aim to make a prompt production. We believe this resolves our present dispute. However, if you insist on proceeding with a motion regarding the purported absence of a custodial production from TrialCard, we provide our consent to proceed before Magistrate Judge Waldor on that specific issue.

Very truly yours,

*/s/ Katherine Brisson*
Katherine Brisson

# Exhibit 53

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212 390 9000
hmiles@selendygay.com

March 13, 2024

**Via E-mail**

Sara A. Arrow
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
sarrow@pbwt.com

**Re:   *Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Sara,

We write to ask that J&J agree that it has possession, custody, and control
of documents held by TrialCard, Inc. ("TrialCard") regarding work that TrialCard
performed for J&J.

Pursuant to Rule 34(a) of the Federal Rules of Civil Procedure, a party has
an obligation to produce documents within its "possession, custody, or control."
Fed. R. Civ. P. 34(a). "Federal Courts construe 'control' very broadly under Rule
34." *Maniscalco v. Brother Int'l Corp.*, No. 3:06-CV-4907 (FLW), 2010 WL
762194, at *4 (D.N.J. Mar. 5, 2010). A party has control over documents if it "has
the legal right or ability to obtain the documents from another source upon de-
mand." *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004).

J&J has the legal right to obtain upon demand, and thus controls, Trial-
Card's documents regarding its administration of CarePath. "[A] litigating party
has control of documents if a contractual obligation requires a non-party to pro-
vide requested documents to the litigating party upon demand." *Haskins v. First
Am. Title Ins. Co.*, No. 10-CV-5044 (RMB)(JS), 2012 WL 5183908, at *1 (D.N.J.
Oct. 18, 2012). The 2017 Master Services Agreement between TrialCard and J&J
("MSA")[1] obligates TrialCard ███████████████████████████████████████

───────────────────

[1] The MSA was produced with Bates number JJHCS_00011273.

Sara A. Arrow
March 13, 2024

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████" MSA § 17.1.████████████
███████████████████████████████████████

*Id.* Courts regularly find such contractual provisions sufficient to establish a litigant's control over documents in the possession of a third party. *See, e.g., Mercy Catholic*, 380 F.3d at 160–61 (establishing party's control over non-party's working papers via right to have papers "made available … at all reasonable times."); *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 410–11 (E.D. Pa. 2021) (establishing party's control through "right to access" non-party books and records); *Rosie D. v. Romney*, 256 F. Supp. 2d 115, 119 (D. Mass. 2003) (establishing party's "control" through contractual right to examine and copy non-party records).

███████████████████████████████████████
███████████████████████████████████████
████████████████*See* MSA § 8.2█████████
███████████████████████████████████████
███████████████████████████████████████
██████████); MSA § 17.2█████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████████ Similar agreements to cooperate in litigation by a non-party have been found sufficient to establish the party's legal right to obtain documents upon request, even if the party could not "force" the non-party's compliance. *Haskins*, 2012 WL 5183908, at *4 n.4. Because J&J has the legal right to obtain relevant TrialCard documents upon request, it has "control" over those documents.

J&J also has the practical ability to obtain TrialCard's documents. Even where a party does not have a legal right to a third-party's documents, "a company's ability to demand and have access to documents in the normal course of business gives rise to the presumption that such documents are in the litigating corporation's control." *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 443 (D.N.J. 1991). "One such business need is to provide highly relevant documents in litigation." *Id.* at 444. Where, as here, a party and non-party share "documents helpful for use in the litigation, the courts will not permit [the party] to deny control for purposes of discovery by an opposing party." *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 141 (3d Cir. 1988). J&J and TrialCard are clearly collaborating in discovery, as evidenced by the many times J&J has promised to make its own productions "from" or "through" TrialCard. *See, e.g.*, Jan. 24, 2024 Conf. Tr. at 21:10-17 ("We have already agreed to produce what are either directly through us or by asking our vendor, a company called Trial Card, to produce what are known as benefits investigations. And those are the enforcement

Sara A. Arrow
March 13, 2024

documents. We're in the process of making those productions for the relevant time period right now."); Nov. 20, 2023 Responses & Objections to SaveOnSP's Fourth Set of RFPs at 7 ("Subject to the foregoing objections, JJHCS will ask TrialCard, Inc. to produce all benefits investigation reports from the Time Period that reflect inquiries about whether a patient taking Stelara or Tremfya is enrolled in an accumulator or maximizer program (including SaveOnSP), to the extent such documents exist and can be located after a reasonable search."); Oct. 30, 2023 Conf. Tr. at 46:23-47:2 ("We produced call notes from thousands of calls at TrialCard, our vendor, that actually talks to the patients. We produced thousands of call notes from TrialCard to show how these things are being done."); *id.* at 62:8 ("In addition to all of the categories that I just pointed out, we will also give them a production from TrialCard, which is our vendor, who we also represent and is subject to a subpoena, we'll give them benefits investigations that find any patient in a maximizer or a [sic] accumulator through to the present. Through to the present."); June 27, 2023 Conf. Tr. at 90:2-6 ("'[T]he administrator is TrialCard, this third party that is also—that we have identified and we've made document production from—and probably we'll be making more"). TrialCard confirms that it is making productions "as requested by" J&J. *See* Dec. 15, 2023 TrialCard Responses or Objections to SaveOnSP's Second Set of RFPs at 14 ("TrialCard will produce certain responsive call recordings as requested by JJHCS.").

Please confirm that J&J agrees that it has possession, custody, and control over documents in TrialCard's possession relating to TrialCard's services for J&J.

We request a response by March 20, 2024. We are available to meet and confer.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

# Exhibit 54

**Patterson Belknap Webb & Tyler** LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

January 27, 2023

Anthony C. LoMonaco
Associate
(212) 336-2642
alomonaco@pbwt.com

<u>**VIA EMAIL**</u>

Meredith Nelson, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
mnelson@selendygay.com

        **Re:**    **SaveOnSP's Requests For Production**
            *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
            No. 22 Civ. 2632 (JMV) (CLW)

Dear Meredith:

        We write in response to your January 20, 2023 letter concerning our January 13, 2023 meet and conferring regarding Johnson & Johnson Health Care Systems Inc.'s ("JJHCS") Responses and Objections to Save On SP, LLC's ("SaveOnSP") First Set of Requests for Production.

**I.**      **GLOBAL ISSUES**

      **A.**    **Documents Related to the Development and Marketing of CarePath and SaveOnSP's Financial Impact on JJHCS and CarePath (RFPs 11, 26, 28-30, 36, and 37)**

        SaveOnSP claims that it needs documents relating to the development and marketing of CarePath as well as documents relating to the "finances of any entity with a stake in CarePath, including documents reflecting the financial impact of SaveOnSP's services and the plan terms set by its clients on JJHCS."  In general, SaveOnSP advises it needs such documents because it "intends to show that CarePath is primarily a marketing tool that JJHCS and its affiliates use to sell more Janssen Drugs and to hike the price of those drugs year after year." SaveOnSP also claims that it needs such documents because JJHCS alleges that "SaveOnSP harms patients and threatens the continued viability of CarePath by making it 'prohibitively expensive,'" and that "the threat of CarePath's viability constitutes a public harm for purposes of JJHCS's GBL [section] 349 claim," and SaveOnSP "intends to show that Johnson & Johnson's ("J&J's") return on investment from CarePath is substantial, and that even if JJHCS' costs for CarePath have gone up, CarePath is still profitable for J&J."  You elaborate on the rationale behind each specific RFP further.  We address each RFP below in turn.

Meredith Nelson, Esq.
January 27, 2023
Page 2

RFP No. 11 seeks documents regarding "the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs." You state that such documents "relate to SaveOnSP's defense that CarePath is a marketing tool, developed to increase J&J's bottom line."

SaveOnSP has not explained how its assertion that CarePath is a marketing tool is relevant to any claim or defense, or how this fact, even if proved, would justify SaveOnSP inducing patients to breach their contracts with JJHCS. Nor has SaveOnSP explained how JJHCS's intention in operating CarePath is relevant to JJHCS's claims.

RFP Nos. 26 and 32 seek documents concerning the amounts of CarePath funds paid out to patients. You claim such documents "are relevant to disputing JJHCS's claims that its increased CarePath expenditures threaten the viability of CarePath by making it prohibitively expensive, as well as to the extent of JJHCS's alleged damages." We address RFP Nos. 26 and 32 in Section II.F, *infra*.

RFP No. 28 seeks a variety of categories of data relating to both Janssen Drugs (items a. through g.) and CarePath (items i. thorough m.), and RFP No. 29 seeks additional documents relating to CarePath's finances. You claim such requests are relevant to "understanding JJHCS's return on investment for CarePath, how CarePath enables JJHCS to increase the costs of Janssen Drugs, the financial impact of SaveOnSP on J&J more broadly, and JJHCS's damages." We address RFPs No. 28 & 29 in Section II.G, *infra*.

RFP No. 30 seeks documents "regarding the basis for Janssen's decision to raise or lower the prices of Janssen Drugs." You claim this relates to "SaveOnSP's defenses that CarePath is primarily a marketing tool that enables J&J to continue to raise drug prices year after year and that J&J profits from SaveOnSP increasing enrollment in CarePath, because it is able to sell more of its incredibly expensive drugs."

As noted above, SaveOnSP has not explained how Janssen's pricing decisions would justify or excuse SaveOnSP in causing patients to breach their contracts with JJHCS. Further, please explain how documents "regarding the basis for Janssen's decision to raise or lower the prices of Janssen Drugs" relates to SaveOnSP's claimed defense that it is somehow increasing JJHCS's profits by increasing enrollment in CarePath. Even if SaveOnSP did increase enrollment in CarePath, it is unclear how documents relating to decisions to raise or lower drug prices would prove the fact of that increased enrollment.

In short, proclaiming *ipse dixit* on a call that certain categories of documents relate to the litigation does not make it so, and the burden of explaining the relevance of the documents rests with SaveOnSP, especially where the documents requested are voluminous. Thus far, SaveOn has not carried its burden.

Meredith Nelson, Esq.
January 27, 2023
Page 3

RFP Nos. 36 and 37 seek documents relating to the economic terms of its agreements with vendors that support CarePath and documents relating to enrollment in CarePath, respectively. We address RFP Nos. 36 and 37 in Sections II.I, *infra*.

## B.    Documents in the Possession of JJHCS Hub Entities, Janssen, and Other

### 1.    JJHCS Hub Entities

You ask us to confirm (1) whether there previously were or currently are other JJHCS Hub Entities involved in the development, administration, and marketing of CarePath aside from Trial Card and Lash Group, and (2) if so, whether JJHCS will produce documents from those entities responsive to SaveOnSP's requests.

As discussed in Section I.A., *supra*, SaveOnSP has not explained how documents relating to the development and marketing of CarePath are relevant to this litigation. Further, as explained in Section I.C., *infra*, it is unclear to us how documents dated from before 2017 are relevant to this litigation. Therefore, we focus our response on entities responsible for the administration of CarePath during the relevant Time Period and with regard to the scope that we have agreed is appropriate.

Trial Card is the entity responsible for administering CarePath's co-pay assistance program during the relevant Time Period and is most likely to have documents responsive to SaveOnSP's requests. We had previously identified Lash Group as a predecessor to Trial Card in administering CarePath during a small portion of the relevant Time Period. Based on additional fact investigation, however, we no longer believe that Lash Group had a comparable role in the administration of CarePath's co-pay assistance program. We are continuing to investigate and will let you know if that understanding changes. We are otherwise unaware of any of vendors that have had a comparable role in administering CarePath. Other vendors that provide or have provided limited, episodic services to JJHCS relating to CarePath are not relevant to the litigation.

As noted at our meet and confer, JJHCS is working with Trial Card to facilitate the production of documents responsive to SaveOnSP's requests. Such documents will be produced to SaveOnSP through JJHCS's counsel.

### 2.    J&J and Janssen

You ask us to confirm whether JJHCS will produce documents held by Janssen or other J&J entities because you believe those entities will have "highly relevant" documents, including "documents related to the pricing of Janssen Drugs, the purpose of CarePath, and J&J's return on investment for CarePath." You also request that we provide a list of all J&J entities involved in the development, marketing, or administration of CarePath.

Meredith Nelson, Esq.
January 27, 2023
Page 4

As discussed, JJHCS is the entity that manages CarePath and it is the only J&J entity that is a party to this action. There is no need for JJHCS to provide any list of entities or for documents from other JJHCS affiliates to be produced. JJHCS is prepared to produce documents held by other J&J entities to the extent that such production is agreed upon or ordered by the Court, but we do not think any such production is necessary or appropriate.

### C.    Time Period

SaveOnSP requests several categories of documents from before January 1, 2017. You ask us whether JJHCS intends to produce any documents pre-dating January 1, 2017.

### 1.    Your Demand for Documents Dating Back to January 1, 2009

For certain categories of RFPs (Nos. 1-7, 11-13, 28-30, 36-37), you state that you chose January 1, 2009 as the starting date based on your understanding of when most of the Janssen Drugs first went to market. As we have explained, this start date is unjustified and inappropriate, reaching back almost a decade before SaveOnSP existed, and seven years before CarePath was launched. Nevertheless, we address each request in turn.

For RFP Nos. 12 and 13, which relate to extrinsic evidence concerning the drafting of CarePath's terms and conditions, you claim you need documents going back to January 1, 2009 so you can "make arguments about the meaning of the contracts that SaveOnSP allegedly induced patients to breach." As discussed in Section II.B, *infra*, the drafting history of CarePath's terms and conditions is not relevant to the claims or defenses in this case, but to the extent the parties can reach an agreement on JJHCS's proposal with respect to the scope of JJHCS's response to RFP Nos. 12 and 13, JJHCS is willing to consider producing documents dating back to January 1, 2016.

For RFP Nos. 11, 28-30, 36, and 37, which relate to the development, marketing, administration, and financials of CarePath and Janssen drugs, you claim that you need documents going back to January 1, 2009 so you can "probe why CarePath was created, J&J's historical return on investment for CarePath, and how SaveOnSP has impacted JJHCS and CarePath." Further, you claim that you are entitled to rely on "historical information to assess [JJHCS's] damages and the impact that SaveOnSP has on JJHCS and CarePath," particularly by comparing information pre-dating SaveOnSP's existence to information post-dating SaveOnSP's existence.

As explained more fully in Section I.A, *supra*, and in other sections of this letter, much of the information sought from these requests is irrelevant to the claims and defenses in this case. Nevertheless, JJHCS has agreed to produce certain documents in response to them, subject to general and specific objections, including:

Meredith Nelson, Esq.
January 27, 2023
Page 5

- In response to RFP No. 28, JJHCS agreed to produce Janssen Transparency Reports and also agreed to consider producing documents responsive to items (i) through (m), which relate to CarePath enrollment data.

- In response to RFP No. 29, JJHCS agreed to produce documents sufficient to show (1) how JJHCS determines the amounts of copay assistance funds that JJHCS offers to Patients enrolled in CarePath, (2) JJHCS's budget for copay assistance through CarePath, and (3) JJHCS's actual and projected annual costs for CarePath.

In order to allow SaveOnSP to perform an analysis comparing information from before and after SaveOnSP's existence, JJHCS would be willing to provide documents in these categories dating back to January 1, 2016, to the extent such documents exist and can be located by a reasonable search. Any date range beyond that would be unduly burdensome and unnecessary to the analysis that SaveOnSP wishes to perform.

Finally, for RFP Nos. 1-7, which ask for various categories of organizational charts, you state you need documents dating back to January 1, 2009 "in order to understand how the above information implicates the various entities whose conduct is relevant in this action and to identify potential sources of additional information." Subject to general and specific objections, JJHCS agreed in response to RFP Nos. 1, 4, and 5 to "produce non-privileged documents in its possession sufficient to show the organizational structure of the JJHCS groups responsible for the administration of CarePath." As above, JJHCS would be willing to provide documents in these categories dating back to January 1, 2016, to the extent such documents exist and can be located by a reasonable search.

## 2.    Your Demand for Documents Dating Back to January 1, 2015

For another category of RFPs (Nos. 14, 41, and 42), you seek documents from as early as January 1, 2015. These requests seek documents relating to JJHCS's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits (RFP No. 14), "Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's return on investment for copay assistance dollars," (RFP No. 41), and JJHCS's understanding of the terms "copay accumulator" and "copay maximizer." (RFP No. 42).

As we have explained, these requests are irrelevant to the claims and defenses at issue in this case because JJHCS's understanding of the regulatory backdrop or the meaning of the terms "copay accumulator" and "copay maximizer" have no bearing on whether SaveOnSP tortiously interfered with CarePath or violated the New York's GBL. Further, JJHCS has agreed to produce several categories of documents related to the harm SaveOnSP has caused it, so the effects of other programs are also not relevant to this case.

Meredith Nelson, Esq.
January 27, 2023
Page 6

Nevertheless, in response to RFP No. 14, subject to general and specific objections, JJHCS agreed to produce documents "regarding SaveOnSP's designation of specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its regulations." JJHCS discusses further compromise on this RFP in Section II.C, *infra*. Further, while JJHCS has not agreed to produce documents in response to RFP Nos. 41 and 42, JJHCS also discusses a potential compromise in Section I.D, *infra*. While JJHCS is prepared to compromise on the requests and go beyond what it is obligated to produce, extending the time period beyond January 1, 2017 is not appropriate for these requests.

**D.    Requests Related to Accumulators and Maximizers (RFP Nos. 20, 21, and 41-43).**

SaveOnSP's RFP Nos. 20, 21, and 41-43 seek documents related to accumulators and maximizers. For example, RFP No. 42 seeks documents relating to JJHCS's "understanding of the terms 'copay accumulator' and 'copay maximizer.'" JJHCS responded to most of these requests that it would produce documents relating to SaveOnSP specifically, except for RFP No. 21, which JJHCS objected to in full because, *inter alia*, it targets irrelevant lobbying efforts.

As we explained during the meet and confer, JJHCS's understanding or views about accumulators or maximizers in general are irrelevant. The key point in JJHCS's Complaint is that SaveOnSP has characteristics of such programs (*see* Compl. ¶¶ 50, 74), which is a fact that will be proved only by reference to documents in SaveOnSP's possession. In response, you ask whether JJHCS would agree to a proposal that both parties drop their requests concerning accumulators and maximizers.

We do not accept this proposal. The documents relating to maximizers and accumulators that JJHCS seeks are relevant for reasons that are not reciprocal. For instance, JJHCS's RFP No. 43 seeks "documents and communications relating to how SaveOnSP operates in jurisdictions with statutes or regulations that ban or limit accumulator adjustment programs and JJHCS's RFP No. 45 seeks "documents and communications relating to studies, reports, publications, analyses, research, white papers reviews, or other written work product" relating to, *inter alia*, "accumulator programs" and "maximizer programs." The wrongfulness of SaveOnSP's Program is at issue, so whether it can legally operate in states with accumulator bans is relevant. Further, SaveOnSP's intent is at issue, so given that it has characteristics of accumulators and maximizers, any analyses of whether such programs are wrongful or harmful is relevant. Because JJHCS's intent is not at issue, neither of those categories of documents are relevant with respect to JJHCS, nor is the broad category of "JJHCS's understanding of the terms 'copay accumulator' and 'copay maximizer'" an appropriate topic of discovery from JJHCS.

**II.    ISSUES RELATED TO SPECIFIC REQUESTS**

Meredith Nelson, Esq.
January 27, 2023
Page 7

A.    **RFP No. 11**

You ask us to confirm whether J&J or JJHCS operates or previously operated any copay assistance programs other than CarePath.  We are unaware of any other copay assistance programs operated by J&J or JJHCS during the relevant Time Period of January 1, 2017 to July 1, 2022.  Any programs that predate CarePath's launch are irrelevant to this litigation.

B.    **RFP Nos. 12 and 13**

SaveOnSP's Request Nos. 12 and 13 seek documents regarding CarePath's terms and conditions, including CarePath's requirement that patients enrolled in CarePath make payments toward Janssen Drugs.  In response, JJHCS has agreed to produce final versions of CarePath's terms and conditions because JJHCS's allegation that SaveOnSP causes a breach of those terms and conditions is evident by their plain meaning.  SaveOnSP nevertheless insists that it is entitled to gather extrinsic evidence on the meaning of CarePath's terms and conditions in support of its assertion that SaveOnSP does not cause of breach of cause a CarePath's terms and conditions.  You ask us to confirm whether JJHCS will produce internal communications regarding the meaning of SaveOnSP's terms and conditions.

During our meet and confer, we asked SaveOnSP to consider producing internal communications responsive to JJHCS's RFP No. 17 ("Any agreements, including drafts, between Express Scripts on the one hand, and health insurance plan sponsors, on the other, regarding the SaveOnSP Program, and any communications relating thereto") in exchange for JJHCS's agreement to produce internal communications relating to the drafting of CarePath's terms and conditions.  You rejected this proposal at the meet and confer and again in your letter because you claim that "the terms of SaveOnSP's contracts with health plans are not at issue in this case."

We ask you to reconsider our proposal.  The terms of SaveOnSP's contracts with health plans and Express Scripts are very much at issue in this case.  JJHCS alleges that SaveOnSP intentionally tortiously interferes with its CarePath program by contracting with Express Scripts and health plans to perpetuate the SaveOnSP Program.  *See, e.g.*, Compl. ¶¶ 28, 52, 68, 75, 113.  Because SaveOnSP's intent is at issue with respect to JJHCS's tortious interference claim, communications relating to SaveOnSP's understanding of those terms and whether they are wrongful is particularly relevant.  Further, because harm to both JJHCS and patients is at issue with respect both to JJHCS's tortious interference claim and its GBL claim, communications relating to whether the terms of SaveOnSP's agreements harm JJHCS or harm patients are also relevant.  If SaveOnSP intends to seek JJHCS's internal documents, fairness requires that SaveOnSP produces its internal documents, as we have proposed and propose again.

Meredith Nelson, Esq.
January 27, 2023
Page 8

### C.    RFP No. 14

SaveOnSP's RFP No. 14 seeks documents relating to JJHCS's and other entities' "understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits ('EHB') or Non-Essential Health Benefits ('NEHB') under the Affordable Care Act ('ACA') and its regulations."  In response to this request, JJHCS agreed to produce non-privileged documents and communications regarding SaveOnSP's designation of specialty drugs as EHB or NEHB.  You ask us to confirm whether in addition to these documents, JJHCS would be willing to produce internal communications relating to its understanding of a commercial health plans' ability to designate specialty drugs as EHB or NEHB under the ACA.  In exchange, you indicate that "SaveOnSP would be open to producing internal documents that reflect its understanding of whether SaveOnSP's advice to health plans complies with the ACA."

We are willing to accept the following proposal:  We would agree to produce all non-privileged documents and communications regarding JJHCS's understanding of commercial health plans' ability to designate specialty drugs as EHB or NEHB under the ACA and its regulations for the time period of January 1, 2017 to June 1, 2022 to the extent such documents exist and can be located after a reasonable search.  In exchange, SaveOnSP would need to agree to produce all non-privileged documents and communications, including internal communications, regarding SaveOnSP's understanding of commercial health plans' ability to designate specialty drugs as EHB or NEHB under the ACA and its regulations for the time period from January 1, 2017 to July 1, 2022.  Please let us know SaveOnSP is interested in such a proposal.

### D.    RFP No. 21

SaveOnSP's RFP No. 21 concerns "any advocacy to or communications with any governmental or regulatory body regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer."   JJHCS has objected to this request, *inter alia*, as seeking documents and communications that are irrelevant to any claim or defense in this action and also subject to a First Amendment privilege.

In your letter, you claim "that such documents are relevant to JJHCS's GBL claim, as JJHCS's public advocacy efforts may include misinformation that causes the alleged patient stress and confusion that JJHCS attributes to SaveOnSP."  As we discussed during our meet and confer, the Complaint alleges that SaveOnSP confuses patients by, for example, creating rejections and delays at the point of sale. *See* Compl. ¶ 88.  You respond by maintaining that "you are entitled to discovery of such documents notwithstanding [JJHCS's] assertion that this case concerns only the specific types of stress and confusion that JJHCS alleged in its complaint."

SaveOnSP's request does not relate to the claims or defenses in this action and you have offered no logical explanation to the contrary.  In response to our request that you

Meredith Nelson, Esq.
January 27, 2023
Page 9

identify stress or confusion alleged in the complaint that could reasonably be attributed to JJHCS, you instead suggest in conclusory fashion that this case does not concern "only the specific types of stress and confusion that JJHCS alleged in its complaint." Please explain how, if JJHCS's public advocacy efforts to protect patients theoretically somehow caused stress or confusion other than that alleged in the Complaint, that would justify SaveOnSP causing the stress or confusion alleged in the Complaint.

Moreover, as we explained in our letter dated January 6, 2023, JJHCS has a privilege against the production of documents that would unjustifiably burden its First Amendment right to political association. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462-63 (1958). In light of this First Amendment privilege, we asked SaveOnSP to explain why its request for documents concerning JJHCS's lobbying of government officials is permissible. To date, you have provided no response to this request. Please explain why SaveOnSP is entitled to documents and communications concerning JJHCS's lobbying efforts, notwithstanding the burden this request imposes on JJHCS's First Amendment protections.

### E.  RFP No. 25

SaveOnSP's RFP No. 25 seeks all documents and communications regarding any alleged harm caused by SaveOnSP to JJHCS, including JJHCS's allegations in Complaint ¶¶ 110, 115. In response, JJHCS agreed to produce documents and communications relating to "the extent of the harm SaveOn has caused." R&O to SaveOnSP's RFP No. 25.

During the meet and confer, you asked to confirm whether use of the phrase "extent of the harm," as compared to the phrase "any alleged harm," as used in the request, was intended to exclude any documents responsive to SaveOnSP's request. There is no practical difference in the search terms or production that would follow from what was requested and what we have agreed to produce. Thus, subject to its general and specific objections, JJHCS confirms that it will produce all documents responsive to SaveOnSP's request.

### F.  RFP Nos. 26 & 32

SaveOnSP's RFP No. 26 seeks "documents and communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum." SaveOnSP's RFP No. 32 seeks all documents and communications "regarding any offer by JJHCS to provide to any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance funds available to a Patient."

With respect to Request No. 26, JJHCS agreed to produce documents sufficient to show "how JJHCS determines the amounts of copay assistance funds that JJHCS offers to

Meredith Nelson, Esq.
January 27, 2023
Page 10

Patients enrolled in CarePath." *See* R&O to RFP No. 29. However, JJHCS declined to produce any documents in response to Request No. 32 as, *inter alia*, irrelevant to the litigation.

During our meet and confer, you clarified that SaveOnSP is seeking not just documents showing how JJHCS determines the amount of copay funds it offers to patients, but also documents and communications concerning what amounts are actually paid to patients, including internal documents and communications regarding these amounts. In your letter, you contend that these amounts are "particularly relevant to both refuting JJHCS's allegations regarding viability as well as for contesting any damages amount put forward by JJHCS, as such overpayments would not be caused by SaveOnSP."

Internal communications regarding the amount of copay assistance funds paid to patients are not necessary for SaveOnSP to assess whether JJHCS pays out more in copay assistance than it has budgeted. Nor has SaveOnSP explained how such documents are otherwise relevant to any claims or defenses in this litigation. However, subject to the conditions laid out in Section II.F *infra* regarding RFP No. 28, JJHCS is willing to provide data regarding the actual amounts paid to patients in copay assistance, to the extent such data exists and can be located after a reasonable search. To the extent that data reflects that JJHCS is in fact paying more than the budgeted amount of CarePath funds to certain patients, JJHCS is willing to meet and confer further to determine if additional discovery is appropriate on those specific cases. Please confirm whether this compromise is acceptable to SaveOnSP.

G.    **RFP No. 28 & 29**

SaveOnSP's RFP No. 28 seeks a variety of categories of data relating to both Janssen Drugs (items a. through g.) and CarePath (items i. through m.). SaveOnSP's Request No. 29 seeks documents relating to CarePath's finances and the relationship between those finances and Janssen finances. In response, subject to general and specific objections, JJHCS agreed to produce Janssen Transparency Reports and invited SaveOnSP to confer on items i. through m. for RFP No. 28, and also agreed to produce documents sufficient to show "(1) how JJHCS determines the amount of copay assistance funds that JJHCS offers Patients enrolled in CarePath, (2) JJHCS's budget for copay assistance through CarePath, and (3) JJHCS's actual and projected annual costs for CarePath" for RFP No. 29. *See* R&Os to SaveOnSP's RFP Nos. 28 & 29.

You claim that the data SaveOnSP seeks in RFP Nos. 28 and 29 is relevant to its understanding of "JJHCS's return on investment for CarePath, how CarePath enables JJHCS to increase the costs of Janssen Drugs, and the financial impact of SaveOnSP on J&J more broadly." Further, during the meet and confer, you stated that SaveOnSP is entitled to discovery on the marketing and development of CarePath and other copay assistance programs for the ***last thirteen years***, because Janssen increases drug prices for profit and uses CarePath to induce patients to take Janssen drugs, so any impact SaveOnSP has on CarePath does not constitute

Meredith Nelson, Esq.
January 27, 2023
Page 11

public harm.  Finally, you ask us to consider whether SaveOnSP's RFP Nos. 28 is similar to
JJHCS's RFP No. 41, and whether there is potential for reciprocity.

After conferring internally, with to items a. through g. for RFP No. 28, we still do not see
how those categories of documents relate to the claims and defenses in this case.

First, the items you request do not relate to the facts you seek to establish as outlined in
your letter, namely: "JJHCS's return on investment for CarePath, how CarePath enables JJHCS
to increase the costs of Janssen Drugs, and the financial impact of SaveOnSP on J&J more
broadly."  Please explain how items like "actual and projected number of patients receiving
Janssen drugs, the number of fills and dosages, the costs to manufacture Janssen Drugs, the sales
and marketing budget for Janssen drugs, the price of Janssen Drugs, and the revenue received for
Janssen Drugs" going back nearly thirteen years are relevant or necessary to determining the
"return on investment for CarePath," "how CarePath enables JJHCS to increase the cost of
Janssen Drugs," or "the financial impact of SaveOnSP on J&J more broadly."

Second,  the facts you seek to establish do not relate to the claims or defenses in this
action.  Specifically, please explain how, even assuming there is a "return on investment on
CarePath" or "CarePath enables JJHCS to increase the costs of Janssen Drugs," those facts
would permit SaveOnSP to cause patients to breach their contracts with JJHCS and repurpose
CarePath's funds for SaveOnSP's profit or would excuse the damages that JJHCS alleges
SaveOnSP has caused.  Likewise, please explain how SaveOnSP's theoretical impact on "J&J
more broadly" excuses those same damages.  There is no basis to convert this case from a claim
brought against SaveOnSP for two specific causes of action into a free-wheeling exploration of
all aspects of J&J's process of drug development and price.  Indeed, neither of the causes of
action brought by JJHCS permit the type of discovery from JJHCS that SaveOnSP seeks.

With respect to items i. through m. for RFP No. 28, which relate to enrollment data for
CarePath, JJHCS is willing to consider producing such data, to the extent it exists and can be
located after a reasonable search, if SaveOnSP is willing to produce the categories of data
requested in JJHCS's RFP No. 41 and 42, rather than just "data sufficient to show, for each
Janssen Drug, the annual total amount of payments made by CarePath for participants advised by
SaveOnSP."  *See* R&Os for JJHCS's RFP Nos. 41 and 42.  Please indicate whether SaveOnSP is
willing to consider this compromise.

Finally, with respect to RFP No. 29, in addition to agreeing to produce documents
showing the harm that results from SaveOnSP's conduct (*see, e.g.*, R&O to SaveOnSP's RFP
No. 25), JJHCS has also agreed, subject to general and specific objections, to produce documents
sufficient show (1) how JJHCS determines the amounts of copay assistance funds that JJHCS
offers to Patients enrolled in CarePath, (2) JJHCS's budget for copay assistance through
CarePath, and (3) JJHCS's actual and projected annual costs for CarePath."  R&O to
SaveOnSP's RFP No. 29.  As noted above, we still do not see how the facts you seek to establish
as outlined in your letter relate to the claims or defenses at issue, but we ask you to consider

Meredith Nelson, Esq.
January 27, 2023
Page 12

whether such data, in addition to the data JJHCS would be willing per the above compromise regarding RFP No. 28, is sufficient.

### H.    RFP No. 34

SaveOnSP's Request No. 34 seeks documents and communications concerning JJHCS's consideration of SaveOnSP's services for its own employer-sponsored health plan. JJHCS declined to produce any such documents.  As outlined in your letter, you indicated that "SaveOnSP understands that J&J or JJHCS conducted significant negotiations with SaveOnSP to use SaveOnSP's services for the health plan it provides for its own employees" but "[b]efore the parties could sign a contract, however, another division within J&J or JJHCS insisted that the negotiations cease."

As you are aware, J&J never signed a contract with SaveOnSP.  Further, JJHCS itself was not involved in any such negotiations.  Thus, RFP No. 34 is irrelevant to the claims and defenses in this action.  JJHCS will not produce documents in response to this request.

### I.    RFP Nos. 36 & 37

SaveOnSP's Request No. 36 seeks documents "sufficient to show the economic terms of JJHCS's retention of or agreements with any JJHCS Hub Entity or Care Path Coordinator regarding Care Path, including any assessment of the fair market value of those services."  JJHCS has agreed to produce agreements for entities responsible for administering CarePath for the period of January 1, 2017 to the present, even if those entities are no longer involved in the administration of CarePath.  *See* R&O to SaveOnSP's RFP No. 36.  JJHCS is also endeavoring to produce work orders that document the cost of the services provided.

During the meet and confer, you clarified that in addition to these agreements, SaveOnSP is seeking internal communications regarding the value ascribed to the services provided by certain Hub Entities.  In your letter, you again assert that in addition to the agreements themselves, SaveOnSP is seeking internal communications that "reflect[] the value of [those] services, including internal documents that may have been generated by JJHCS in the process of negotiating its contracts."  Please explain how the value ascribed by JJHCS to the services provided its vendors or otherwise relevant to claims or defenses in this matter.

Relatedly, SaveOnSP's Request No. 37 seeks documents "sufficient to show the percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs."  JJHCS declined to produce documents in response to this Request on the grounds that, *inter alia*, this Request is irrelevant to the subject matter at issue in this litigation.  *See* R&O to RFP No. 37.

During the meet and confer, you explained that SaveOnSP believes it is actually more successful in getting patients to sign up for CarePath than Janssen is by itself.  Therefore,

Meredith Nelson, Esq.
January 27, 2023
Page 13

you contend that SaveOnSP "provides a net benefit to J&J, because more patients are taking Janssen drugs even if JJHCS is paying more in copay assistance."

We have investigated this issue further. JJHCS does not keep statistics on whether patients sign up for CarePath after being contacted by JJHCS or its vendors, which moots this request regardless of its irrelevance.

**J.      Request No. 38**

SaveOnSP's Request No. 38 seeks documents and communications received by JJHCS from any JJHCS Hub Entity or sent by JJHCS to any JJHCS Hub Entity regarding SaveOnSP or CarePath. As SaveOnSP indicates that it accepts JJHCS's offer to produce all documents responsive to this Request regarding SaveOnSP, there appears to be no further dispute on this issue.

\* \* \*

We are available to meet and confer regarding the issues outlined above at your convenience. We look forward to your response.

Very truly yours,

*/s/Anthony C. LoMonaco*
Anthony C. LoMonaco

# Exhibit 55

# Ethics Opinion 381

# Responding to Third-Party Subpoena

**Introduction**

A lawyer's representation of a prospective client in responding to a third-party subpoena that seeks documents, tangible things, property, or testimony[1] ("Information") about a lawyer's existing client does not create a conflict of interest unless the lawyer's representation of either the prospective client or the client will be, or likely will be, adversely affected.[2] A lawyer's representation of a prospective client in responding to a third-party subpoena that seeks Information about a lawyer's former client does not create a conflict of interest unless the subpoena matter is the same or substantially related to the lawyer's former representation and the interests of the prospective client and former client are adverse.

**Applicable Rules**

- Rule 1.0 (Terminology)
- Rule 1.1 (Competence)
- Rule 1.3 (Diligence and Zeal)
- Rule 1.6 (Confidentiality of Information)
- Rule 1.7 (Conflict of Interest: General Rule)
- Rule 1.9 (Conflict of Interest: Former Client)
- Rule 1.10 (Imputed Disqualification: General Rule)

**Discussion**

In this opinion, the Committee considers whether a lawyer's representation of a client in responding to a third-party subpoena for Information that identifies specific parties by name (the "Prospective Client") creates a conflict of interest if the lawyer also represents or represented one of the named persons (the "Other Client") in unrelated matters.[3]

    *1. Current Client Conflict of Interest*

Typically, a lawyer may represent a Prospective Client, even if the Information sought relates to another client of the lawyer, without triggering a conflict under Rule 1.7(b).

Pursuant to D.C. Rule 1.7(b), a lawyer shall not represent a client in a matter if:

(1) That matter involves a specific party or parties and a position to be taken by that client is adverse to a position taken or to be taken by another client in the same matter even though that client is

unrepresented or represented by a different lawyer;

(2) Such representation will be or is likely to be adversely affected by representation of another client;

(3) Representation of another client will be or is likely to be adversely affected by such representation; [or]

(4) The lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests.[4]

A. <u>Assessing Conflicts at the Outset of the Representation</u>

A lawyer is required to assess conflicts on each proposed engagement at the outset of the representation.[5] Such assessment includes undertaking reasonable diligence concerning the subpoena. In assessing possible conflicts before undertaking the representation of the Prospective Client, a lawyer should consider the particulars of the proceeding out of which the subpoena issued and the information contained in the subpoena itself, including the time period, the scope of information sought, and the names of persons identified and their connection to the information sought.  Whether additional diligence would be required is a question of fact and varies by the circumstances.  For example, under certain circumstances, it might be necessary for the lawyer to review publicly available information or consult with the Other Client as part of the additional diligence effort.

Ordinarily, direct adversity will not exist between the interests of the Prospective Client and the Other Client because the issuer of the subpoena, not the subject of the subpoena, is adverse to the Prospective Client and a testimonial or documentary response by the Prospective Client does not constitute taking any "position" with respect to any of the subjects of the subpoena.  Rather, the focus of the Prospective Client – and therefore the scope of the lawyer's representation – is the legality and propriety of the subpoena and the respondent's posting of proper objections to requests for production by the issuer of the subpoena.

The lawyer's representation of the Prospective Client may, however, create a conflict of interest if the representation of that client would likely adversely affect, or be adversely affected by, the representation of another client or personal interests of the lawyer.  However, Rules 1.7(b)(2)-(4) do not obligate lawyers to assess the possibility of conflicts based upon rank conjecture and speculation but, rather, only to determine, based upon a reasonable objective belief, that certain facts will develop that would create a substantial risk that the lawyer's representation of a client will adversely affect or be adversely affected by ethical obligations to another client, former client, or herself.[6]

A few hypothetical examples may help to illustrate the applicable conflicts standard. Suppose a lawyer is asked to represent a hospital in producing medical records of a patient in response to a

third-party subpoena issued by an insurance company in a vehicular personal injury matter. The parties to the litigation are the at-fault driver's insurance company and the injured party, who is a client of the lawyer in a custody matter.[7] In representing the hospital, the lawyer would be advising it on the scope of the subpoena, any deficiencies, and any objections, including, for example, the relevance and responsiveness of any documents of the injured party (Other Client) in the hospital's possession.

At the outset of the representation, the lawyer does not know the contents of the medical records, and the lawyer's review of the complaint does not provide any more information about what the medical records of the hospital might reveal.  Typically, the lawyer may therefore undertake the hospital representation without it creating a Rule 1.7 conflict of interest.  The mere possibility that responsive medical records of the hospital that might undermine the injured party's claim exist and are produced does not give rise to a conflict of interest.  There may be circumstances, however, where the lawyer's knowledge about the facts surrounding the subpoena request and its implications might necessitate the lawyer's consultation with the Other Client (subject of the subpoena) to properly assess conflicts of interest before undertaking the engagement by the Prospective Client.[8]

Suppose that the lawyer knows through and in the course of representing the Other Client in the custody case that the Other Client has been unable to honor the temporary custody schedule because of injuries sustained from athletic activities. As a result of the custody matter, the lawyer has in her possession medical records from the hospital during the relevant subpoena time period reflecting those injuries.  Given the lawyer's knowledge about the cause of the injuries documented in the medical records, undertaking the prospective representation might well create a conflict of interest under Rule 1.7(b)(2) or (b)(3) or under Rule 1.7(b)(4) with the personal interest of the lawyer herself.

The Committee concludes that to determine whether a conflict of interest exists in undertaking the prospective engagement, the lawyer must assess whether the lawyer knows,[9] after performing reasonable diligence in evaluating the subpoena request as described above, that the Prospective Client possesses responsive information that, if produced, is or likely will be adverse[10] to the subject of the subpoena (the Other Client).[11] If so, then the lawyer must assess whether that knowledge will likely adversely affect the lawyer's representation of either client.  If it likely will, a Rule 1.7(b)(2) or (3) conflict exists.

If neither representation is likely to be adversely affected or the lawyer does not know in the first instance that the Prospective Client possesses responsive information that is likely to be adverse to the Other Client, the lawyer must nonetheless consider whether the lawyer has a personal conflict under Rule 1.7(b)(4).  That is, the lawyer must determine in undertaking the prospective matter whether the lawyer's professional judgment will or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own interests.[12]

A lawyer who concludes at the outset of the representation that undertaking the new engagement would create a Rule 1.7(b) conflict with the Other Client could still represent the Prospective Client

if the lawyer satisfies Rule 1.7(c)'s requirements that the lawyer obtain the informed consent from each affected client and reasonably believes that she can provide competent and diligent representation to each client.[13] A crucial initial consideration in this regard is whether the disclosure of the requisite information necessary to secure the informed consent of either the Prospective Client or the Other Client would violate the lawyer's Rule 1.6 duty to protect the confidences and secrets of each.[14] If so, then the lawyer could neither seek nor obtain informed consent and, as such, the lawyer would have to decline the prospective representation because the lawyer could not satisfy the Rule 1.7(c)(1) requirement.

If informed consent could be sought and were obtained, under Rule 1.7(c)(2), the lawyer must also undertake both a subjective self–assessment and an objective analysis to determine whether, notwithstanding the clients' informed consent, the lawyer will be able to "provide competent and diligent representation" to each client. That assessment would include consideration of whether the lawyer might pull punches during the new representation either out of concern over the impact on the lawyer's representation of the Other Client,[15] or because of the lawyer's own personal, financial or other interests.[16]

By way of further illustration, suppose a lawyer is asked to represent a bank that has received a Department of Justice subpoena for records of a party it is investigating for bribing a government official. News reports indicate that the subject of the investigation is a close personal friend of the government official and also a business person whose business seeks zoning approval and a building permit within the jurisdiction of the government official. The business is a long-standing client of the lawyer, which has generated substantial fees for the lawyer over time. The lawyer currently represents the business in litigation alleging breach of a commercial contract. The lawyer does not know at the outset of the prospective representation whether the bank possesses records reflecting payments from the business person to the government official, but the bank suspects that there might be some payments because of the frequency with which both transact at the bank and the time period involved.

While the lawyer does not have actual knowledge that the bank possesses any responsive documents damaging to the business person, nor does the lawyer represent the business person personally in a matter, the lawyer's long-standing and substantial professional relationship with the business might prevent the lawyer from providing competent and diligent representation to the bank. For example, the lawyer might be overzealous in raising objections to production of the potentially damaging documents because they might adversely affect the principal of a long-standing and lucrative client, when the bank does not have any concerns about the production other than its own cost. Under these circumstances, the bank representation could create a personal conflict of interest for the lawyer. Barring a problem with the lawyer's ability to provide competent and diligent representation to each client, without the lawyer's actual knowledge that certain information harmful to the interests of the subject of the subpoena exists and is responsive, the mere possibility that documents responsive to the subpoena exist that are, or might be, adverse to the interests of the business person or the lawyer's Other Client, the business, and might be produced, is purely speculative.

Even if it later develops that the lawyer's speculation about the potentially damaging nature of the information produced results in the evidence being used adversely against the business, the subsequent factual confirmation of the lawyer's speculation would not change the analysis.[17] The production of Information adverse to a particular client would be an "unwitting" side effect of the representation of the Prospective Client, and not the lawyer's attempt to seek a result for the Prospective Client "to which another client is opposed."[18]< Nor would it be considered in hindsight to have been a Rule 1.7(b)(2) or (b)(3) conflict.

As discussed, although typically there is no ethical requirement that a lawyer disclose the prospective representation of a subpoenaed third-party to the Other Client (who is the subject of the subpoena), it might nonetheless be prudent for the lawyer to notify the Other Client of the prospective engagement – barring any Rule 1.6 (Confidentiality of Information) issues.  The consultation could permit the Other Client an opportunity to voice concerns about the lawyer's representation of the Prospective Client under the circumstances.

> B. Discovery or development of a conflict after commencement of the representation of the Prospective Client

If the lawyer undertakes the representation of the Prospective Client, a conflict under Rule 1.7(b)(2), (b)(3), or (b)(4) may nevertheless arise *after the representation commences* if the lawyer's discovery of potentially damaging information, prior to its production, might adversely affect the lawyer's ability to competently and diligently represent either the Prospective Client or the Other Client.[19]

Returning to the first example of the third-party subpoena to the hospital by an insurance company in a vehicular personal injury matter where the lawyer also represents Other Client in a custody matter but does not possess knowledge of the Other Client's medical issues: suppose after reviewing the medical records of the hospital for the Prospective Client for responsiveness and privilege, the lawyer discovers a note in the medical records that undermines, or would seem to undermine, the patient's injury claim.  Suppose further that the note reflects that the patient disclosed that he had participated in sports activities around the time of the accident and that such sports activities could have produced the same injuries being attributed to the accident.

As the lawyer learns information during the course of the third-party subpoena representation, through reviewing documents, discussions with the client, or otherwise, the lawyer might learn information prior to production that is harmful to the Other Client and might also conclude that such information is responsive to the subpoena.  Under such circumstances, continuing to represent the Prospective Client might adversely affect, or be adversely affected by, representation of the Other Client.[20] Or, the lawyer might conclude that there is a personal conflict pursuant to Rule 1.7(b)(4) because the lawyer's professional judgment on behalf of the subpoenaed client will be or reasonably may be adversely affected by her responsibilities to a third party or by her own interests.  Whether continuing the Prospective Client representation is a conflict of interest under Rules 1.7(b)(2) – (b)(4) is a matter of degree and a question of fact, which turns on whether a reasonable lawyer would

conclude that there would be a diminution in the quality of the representation of either the Prospective Client or the Other Client.

Should the lawyer conclude in the affirmative, he or she must assess whether the conflict is consentable and if so, seek informed consent from each affected client.[21] Such informed consent could be sought in advance in the engagement terms or sought contemporaneously.[22] If the lawyer concludes that she may not seek informed consent, either because the lawyer reasonably concludes that she would be unable to provide competent and diligent representation to each affected client given the nature and degree of the conflict, or because confidentiality obligations prevent her from disclosing information sufficient to obtain informed consent, she may retain conflicts counsel to address that portion of the representation if the client agrees and the retention is otherwise consistent with the Rules.[23] Otherwise, the lawyer must withdraw from the representation.[24]

### 2. Former Client Conflict of Interest

A lawyer's representation of a Prospective Client to produce documents or give testimony that might include information adverse to the interests of a former client might constitute a conflict of interest if the prospective engagement is "the same or a substantially related matter in which [the Prospective Client's] interests are materially adverse to the interests of the former client unless the former client gives informed consent."[25] The purpose of Rule 1.9, the former client conflicts rule, is twofold: first, to prevent "side-switching" and, second, to protect confidential factual information gained through or in the course of the prior representation from being used to the former client's detriment in the current representation.[26]

Side-switching occurs when parties are materially adverse to each other in a subsequent substantially related matter and the former client's lawyer begins representing a client in a matter adverse to the former client's interests.[27] In connection with a subpoena request, when a lawyer represents the Prospective Client either in a matter that is not adverse to the former client (subject of the subpoena) or in a matter that is not the same as nor substantially related to the matter in which the lawyer formerly represented the Other Client, the prohibition on side-switching is not implicated.

With respect to client confidences, the rule focuses on the risk that the former client's confidential information may be used to benefit another client in a subsequent representation to the former client's detriment. The rule assures the former client that information confided to the lawyer will not be used by the lawyer against the former client in a subsequent matter without the former client's consent. The rule does not concern the possibility that some other party may later have information detrimental to the former client.[28] In that circumstance, the lawyer is able to represent the Prospective Client to respond to a third-party subpoena involving the former client without running afoul of Rule 1.9.

**Conclusion**

A lawyer's representation of a Prospective Client does not create a conflict of interest unless: (1) the lawyer knows, after performing reasonable diligence in evaluating the subpoena request, that the Prospective Client possesses responsive information that, if produced, is or likely will be adverse to the Other Client, and such knowledge likely will adversely affect the lawyer's representation of either client; or (2) the lawyer's professional judgment will or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or other interests as a result of the prospective engagement.  Reasonable diligence prior to undertaking the new engagement includes considering the particulars of the proceeding out of which the subpoena issued and the information contained in the subpoena itself, including the time period, the scope of information sought, and the names of persons identified and their connection to the information sought.  It might also include review of publicly available information or consultation with the Other Client depending on the knowledge of the lawyer concerning the circumstances surrounding the subpoena request and its implications. Whether additional diligence would be required is a question of fact and varies by the circumstances.

A lawyer who undertakes a representation of a Prospective Client having concluded that there was not a conflict at the outset of the representation and who, despite reasonable diligence, does not discover a conflict throughout the engagement, has not violated Rule 1.7 if responsive Information produced is subsequently used by another party in a manner that is damaging to the Other Client.

However, if a lawyer discovers Information potentially damaging to the Other Client during the course of the Prospective Client engagement and prior to production, the lawyer must assess from both an objective and subjective perspective whether the lawyer's ability to competently and diligently represent either the Prospective Client or the Other Client might be comprised. If such Information readily appears to be, or reasonably will be, damaging to the lawyer's Other Client (not speculatively), then it is a conflict that develops after commencement of the engagement, for which informed consent from each affected client would be required.  If informed consent is not obtained, then conflicts counsel would have to be retained, if permissible, or the lawyer must withdraw.

Finally, a lawyer's representation of a prospective client in responding to a third-party subpoena that seeks Information about a lawyer's former client does not create a conflict of interest unless the subpoena matter is the same as or substantially related to the lawyer's former representation and the interests of the prospective client and former client are adverse.

Published: February 2021

---

1. The reference to documents, physical things, property, or testimony in this Opinion is intended to incorporate the same terms and definitions as contained in Federal Rule of Civil Procedure 34.
2. This Opinion does not address instances where the lawyer is the recipient of a third-party subpoena for his or her own records or for the records of the lawyer's firm. See D.C. Legal Ethics Opinion 288 (1999).
3. A lawyer reviewing a subpoena that does not specify names, but only a certain time period, will ordinarily be unable to

identify a conflict at the outset of the representation, but might become aware of one after commencement of the representation. See section 1.B. infra.

4. D.C. Rule 1.0(h) defines "matter" broadly to mean "any litigation, administrative proceeding, lobbying activity, application, claim, investigation, arrest, charge or accusation, the drafting of a contract, a negotiation, estate or family relations practice issue, or any other representation, except as expressly limited in a particular rule." Rule 1.0 (h).

5. Rule 1.7 and see, e.g., Comments [7], [19], and [29].

6. See Rule 1.7 Comments [7], [9], and [19]. See also D.C. Legal Ethics Opinion 356 (2010) ("a conflict must be clear, specific and not based on mere speculation."); Rule 1.7(d) (the standard is "reasonably foreseeable" when assessing whether a conflict could have been anticipated at the outset of the representation).

7. The Committee does not see any meaningful distinction in the conflicts analysis if the request for production of medical records is in the form of a pre-complaint letter request rather than a subpoena issued out of litigation.

8. See, e.g., Comment [19] to Rule 1.7.

9. Rule 1.0(f) defines "knowledge" or "knows" as "actual knowledge of the fact in question," which "may be inferred from the circumstances."

10. Whether or not information known to the lawyer is "adverse" or "harmful" is left to the reasonable judgment of the lawyer.

11. While Rule 1.3(b)(2) provides that "[a] lawyer shall not intentionally prejudice or damage a client during the course of the professional relationship," the act of producing responsive information on behalf of another client that might be harmful to a lawyer's client does not run afoul of Rule 1.3(b)(2) because it is not in the matter in which the lawyer represents the client and "Rule 1.3 is not meant to govern conflicts of interest, which are addressed by Rules 1.7, 1.8, and 1.9."

12. See Rule 1.7(b)(4) infra as quoted in the body of the Opinion.

13. Rule 1.0(e) defines informed consent as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably alternatives to the proposed course of conduct." Such required "information and explanation" varies by circumstances and is subject to a variety of factors, including the sophistication, vel non, of the person granting the informed consent.

 Rule 1.7(c) provides that a lawyer may represent a client notwithstanding a conflict if "(1) each potentially affected client provides informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation; and (2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client under the circumstances."

14. Moreover, pursuant to Rule 1.18(b), "Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as permitted by Rule 1.6." Thus, the duty of confidentiality owed to a prospective client is coextensive with the duty owed to an actual client. In some instances, the mere fact of the representation or prospective representation may constitute a Rule 1.6 secret, further potentially complicating the ability of the lawyer to obtain the requisite informed consent.

15. As explained in D.C. Legal Ethics Opinion 380 (2021), "'Punch pulling' is a boxing term that refers to a fighter purposefully hitting his adversary with less than full force – as if the fighter pulled back a punch before making contact. In the professional responsibility context, a punch pulling conflict refers to circumstances where a lawyer is less zealous in advocating for, or advising, a client out of concern over the impact on the lawyer's representation of another client."

16. See Rules 1.1, 1.3, and 1.7(c)(2) and see, e.g., comment [7] ("The underlying premise is that disclosure and informed consent are required before assuming a representation if there is any reason to doubt the lawyer's ability to provide wholehearted and zealous representation of a client....").

17. See D.C. Legal Ethics Opinion 356 (2010).

18. See Rule 1.7, Comment [19].

19. Because of the nature of the third-party representation, a conflict of interest will not typically arise under Rule 1.7 (b)(1) because, as stated previously, raising objections to a subpoena or providing responsive documents is not adverse to the subject of the subpoena (the Other Client) but, rather, is adverse to the issuer of the subpoena. In the unusual circumstance that a Rule 1.7(b)(1) conflict arises in connection with responding to a third-party subpoena, the conflict might be considered under the "thrust upon" scenario pursuant to Rule 1.7(d). D.C. Legal Ethics Opinion 356 might also be instructive in this regard. But, see, footnote 22 infra.

20. See Rule 1.7(b)(2) or (b)(3).

21. See Rule 1.7(c) and Rules 1.1 and 1.3.

22. While advance waivers of conflicts of interest are permissible under certain circumstances, they are more susceptible to failing the informed consent standard than contemporaneous consents. See Rule 1.7, Comment [31]. See also D.C. Legal Ethics Opinion 309 (2001) ("The less specific the circumstances considered by the client and the less sophisticated the client, the less likely that an advanced waiver will be valid."). A client may also revoke valid consents. D.C. Legal Ethics Opinion 317 (2002).

23. "Conflicts counsel" has the same definition as set forth in endnote 11 of D.C. Legal Ethics Opinion 380 (2021). ("'Conflicts counsel' is the designation generally applied to the retention of a lawyer from a different firm engaged solely to represent the client on the discrete, severable aspect of the matter that gave rise to the conflict....").

24. Rule 1.7(d) will typically not be available to a lawyer who concludes that a conflict has arisen during a representation in this context because a conflict arising under Rule 1.7(b)(2)-(4) is not consentable under Rule 1.7(d). As to withdrawal, see Rule 1.16 (Declining or Terminating Representation).

25. Rule 1.9 states: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent."

26. See Rule 1.9, Comments [2] and [3]; D.C. Legal Ethics Opinion 272 (1997) ("purpose of the rule is to assure the preservation of attorney-client confidences gained in the prior representation and to preserve the reasonable expectations of the former client that the attorney will not seek to benefit from the prior representation at the expense of the former client"); and Brown v. District of Columbia Board of Zoning Adjustment, 486 A.2d 37 (D.C. 1984) (en banc).

27. Cf, Rule 1.9, Comment [2]: "[A] lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client."

28. See Rule 1.9, Comment [3]: "Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying."

# Sills Cummis & Gross

A Professional Corporation
**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102-5400**
Tel: 973-643-7000
Fax: 973-643-6500

**Jeffrey J. Greenbaum**
**Member**
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL UNDER THE
DISCOVERY CONFIDENTIALITY ORDER**

May 7, 2024

**By Email**

Hon. Freda L. Wolfson, U.S.D.J.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

Re:    **JJHCS's Opposition to SaveOnSP's April 19, 2024 Motion to Compel**
        ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,***
        <u>Civil Action No. 22-2632 (JKS) (CLW)</u>

Dear Judge Wolfson:

On behalf of JJHCS, we write in opposition to SaveOnSP's April 19, 2024 motion to compel JJHCS to obtain and produce documents belonging to a third party, TrialCard, Inc. ("TrialCard"), a JJHCS vendor headquartered in North Carolina.

SaveOnSP's motion is a meritless and transparent effort to deny TrialCard its rights under Federal Rule of Civil Procedure 45, and it should be denied in its entirety for three principal reasons. *First*, to support its argument that JJHCS can be compelled to produce documents belonging to TrialCard, SaveOnSP relies on a service agreement between JJHCS and TrialCard. But this agreement does not, as SaveOnSP claims, provide JJHCS with either legal or practical control over everything SaveOnSP seeks, such as purely internal communications among TrialCard employees. Nor does any law support SaveOnSP's contention that the agreement between JJHCS and TrialCard allows the Court to direct JJHCS to force TrialCard to produce an

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 2

unlimited number of documents about an unlimited number of topics.  For more than a year,

SaveOnSP had the service agreement on which it relies in its possession and yet it never once

claimed to either JJHCS or TrialCard that the agreement governed this dispute.

*Second*, by asking this Court to compel JJHCS to obtain documents from TrialCard,

SaveOnSP is asking this Court to solve a problem that does not exist.  TrialCard already has

produced thousands of documents in response to SaveOnSP's two separate subpoenas, often with

JJHCS's encouragement.  Having made this effort, TrialCard should not be forced to endure undue

burden without the due process afforded under Federal Rule of Civil Procedure 45, all to satisfy

SaveOnSP's curiosity about irrelevant matters.  If SaveOnSP believes it is entitled to more than

TrialCard has produced, SaveOnSP can either seek further discovery directly from JJHCS or do

what it acknowledges every other litigant must do:  proceed with a motion to compel against

TrialCard in its home district.  *See* Opening Br. at 11, 18 ("To get documents directly from

TrialCard . . . SaveOn would have to move to compel compliance with its subpoenas in North

Carolina.").  By filing this motion, SaveOnSP is asking the Court to treat it as exempt from

following the rules that govern the taking of discovery from third-party witnesses.

*Finally*, SaveOnSP demands that Patterson Belknap Webb & Tyler LLP now be

disqualified or required to implement an ethical wall in its representation of JJHCS and

TrialCard—two independent entities that have each requested Patterson Belknap's representation

and agreed to waive any conflict arising out of this simultaneous representation.  This

extraordinary request finds no support in any case law or other authority and seems motivated by

a hope that, without counsel of choice, TrialCard will be deterred from asserting its rights.

Your Honor should deny the motion.

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 3

## FACTUAL BACKGROUND

**A.**    ***TrialCard Is Independent From JJHCS***

TrialCard is a North Carolina corporation that offers services to over 500 life sciences customers, including JJHCS.[1]  Among other things, TrialCard administers patient service support programs for multiple pharmaceutical companies.  Since at least 2011, JJHCS has engaged TrialCard as a vendor to perform services in connection with the administration of JJHCS's co-pay support programs, including the CarePath program that is central to this lawsuit.

TrialCard's contractual relationship with JJHCS is governed primarily by a Master Services Agreement ("MSA").  *See* Ex. 1.  Among other things, TrialCard administers a hotline call center that supports patients who are prescribed Janssen medications.  As the MSA confirms, TrialCard is wholly independent from JJHCS and other Johnson & Johnson affiliates.  TrialCard is



"  *See* Ex. 1 at § 12; *see also id.* (                                    ).

As SaveOnSP acknowledges, TrialCard is a JJHCS vendor that neither sets the terms and conditions of the CarePath program nor independently crafts strategies for JJHCS to respond to SaveOnSP's misappropriation.  *See generally* Ex. 2 at 3–4 (May 12, 2023 Ltr. from G. Carotenuto to A. Dunlap); Ex. 3 at 2 (Apr. 7, 2023 Ltr. from H. Sandick to A. Dunlap).

---

[1] *See* Mercalis Releases 2023 Annual Highlights, https://www.mercalis.com/news/2023-annual-highlights/ (last accessed May 7, 2024).  In September 2023, TrialCard changed its name to Mercalis, Inc.; for convenience, JJHCS refers to Mercalis as TrialCard throughout this briefing.

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 4

>    **B.**    ***TrialCard Has Produced Thousands Of Documents To SaveOnSP***

As SaveOnSP has acknowledged, TrialCard has produced "thousands" of documents in response to SaveOnSP's two subpoenas and at the request of, and in "collaborat[ion]" with, JJHCS. *See generally* Ex. 4 at 2–3 (Mar. 13, 2024 Ltr. from H. Miles to S. Arrow) ; *see also* Opening Br. at 15–16 (detailing the instances in which JJHCS "facilitate[d]" TrialCard's production of documents).  All told, TrialCard has thus far produced over ***3,030*** documents, totaling over ***8,950*** pages, many of which pertain to TrialCard's implementation of JJHCS's Cost Adjustment Program ("CAP") program, *see, e.g.*, Ex. 5 (TRIALCARD_00006499), and TrialCard's performance of benefits investigations at JJHCS's request.  In party discovery, JJHCS has produced nearly ***10,000*** document pages, reflecting communications to or from TrialCard, on these very same subjects. *See, e.g.*, Ex. 6 (JJHCS_00145739) (███████████████████████████████████████
███████); SaveOnSP Ex. 8 (██████████████████████████████████████
████████████); Ex. 7 (JJHCS_00002774) (█████████████████████████████
██████████████).  SaveOnSP's claim that TrialCard has been obstructionist is false and belied by the record.

>    **1.**    **TrialCard Produces Thousands Of Documents And Communications In Response To SaveOnSP's First Subpoena**

On February 17, 2023, even before SaveOnSP made any substantial document production of its own, SaveOnSP served its first subpoena on TrialCard (the "First Subpoena).  *See* Ex. 8. The First Subpoena was vast in scope:  it contained thirty-two requests for production seeking a broad range of documents and communications.  As a result, TrialCard objected to the First Subpoena based on relevance, breadth, burden, and proportionality.  *See* Ex. 9.

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 5

In several instances, SaveOnSP "cut-and-paste" wholly irrelevant document requests that it also propounded to JJHCS, such as its request to TrialCard for documents about the pricing of and revenue projections for Janssen drugs. *Compare* Ex. 10 (SaveOnSP's First Set of Requests for Production to JJHCS) at Request No. 29, *with* Ex. 8 (SaveOnSP's First Subpoena to TrialCard) at Request No. 19. Not only would TrialCard not have such documents, but both Judge Waldor and Your Honor have concluded that such documents are irrelevant. *See, e.g.*, D.E. 192 at 24; D.E. 180-4 at 52:16–20, 54:25–55:1; Mar. 17, 2023 Tr. at 34:1–10. SaveOnSP sought materials with no connection to JJHCS, such as internal communications concerning TrialCard's own understanding of the health insurance market or its general views on maximizers and accumulators. *See, e.g.*, Ex. 11 at 2 (June 7, 2023 Ltr. from K. Brisson to E. Holland). The First Subpoena sought documents either going back as far as 2009 or even without any date limitation whatsoever. *See, e.g.*, *id.* at Request Nos. 1–2, 4–6, 18–19, 23, 25–26, 32.

TrialCard nevertheless proceeded to engage in good faith with SaveOnSP, routinely meeting and conferring, and making several extensive document productions, including:

- 2,875 documents and 8,718 pages of documents and communications from the custodial files of four TrialCard employees with key responsibilities for the administration of CarePath;[2]

- Over 19,900 records from TrialCard's centralized patient call database;

- Over 4,800 records of benefits investigations ███████████████████████

---

[2] SaveOnSP suggests that TrialCard's existing custodians are inadequate based on JJHCS's interrogatory responses, *see* Opening Br. at 4 n.3. In truth, TrialCard agreed to a custodian for every interrogatory for which JJHCS identified responsible TrialCard employees. *See* Ex. 14 at 5–6, 15–16.

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 6

;[3]

- Patient letters and templates that JJHCS drafted and that TrialCard sent to patients; and

- Spreadsheets containing extensive CarePath enrollment and claims data.

*See, e.g.*, Ex. 11 at 1 (June 7, 2023 Ltr. from K. Brisson to E. Holland); Ex. 24 at 1–2 (June 16,

2023 Ltr. from K. Brisson to E. Holland).

SaveOnSP later sought to force TrialCard to produce documents created long after the date

on which it served the First Subpoena, which was improper and contrary to the Federal Rules of

Civil Procedure. *See* Ex. 12 (Dec. 6, 2023 Ltr. from S. Arrow to H. Miles); Ex. 13 (Dec. 22, 2023

Ltr. from S. Arrow to H. Miles).[4]  TrialCard nonetheless voluntarily agreed to update its production

of multiple categories of documents—such as benefits investigations performed in connection with

the JJHCS's CAP program and related patient communications—through November 7, 2023 (the

cutoff date for party discovery).[5]

---

[3] SaveOnSP is incorrect when it claims that TrialCard only produced a "summary" document reflecting benefits investigation. *See* Opening Br. at 4.  TrialCard initially produced the results of 3,908 benefits investigations in the same format in which those records are maintained in the normal course of business. *See* Ex. 15 (Jan. 19, 2024 Ltr. from S. Arrow to H. Miles); Ex. 16 (Mar. 12, 2024 Ltr. from S. Arrow to H. Miles).  TrialCard then supplemented its original production with an additional 900 records of benefits investigations, as well as with several additional categories of data in response to specific requests from SaveOnSP. *See* Ex. 17 (Feb. 13, 2024 Ltr. from H. Miles to S. Arrow); Ex. 16 (Mar. 12, 2024 Ltr. from S. Arrow to H. Miles).

[4] Neither Rule 45 nor any other authority supports the notion that a subpoena may seek the production of documents that were not created until after the subpoena was propounded. *See* Fed. R. Civ. P. 45.  Likewise, nothing in the Court's November 7, 2023 Order was directed at TrialCard; that order only directed "both parties" to update its document production. *See* D.E. 173 at 3.

[5] SaveOnSP claims that TrialCard agreed without limitation that it would "produce documents to the same extent that J&J did" and then "reneged" on this promise.  Opening Br. at 8–9.  This is fiction. *See* Ex. 13 at 1–2 (Dec. 22, 2023 Ltr. from S. Arrow to E. Snow) (detailing correct rendition of prior communications).

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 7

        **2.**      **TrialCard Produced More Documents In Response To SaveOnSP's Second Subpoena**

SaveOnSP served a second subpoena on TrialCard on December 1, 2023 (the "Second Subpoena").  *See* Ex. 18.  Far from addressing only a "technical objection," as SaveOnSP now asserts, the Second Subpoena added eight similarly expansive requests, several lacking in relevance.  Opening Br. at 9.  For example, SaveOnSP demanded that TrialCard produce documents relating to its work for other pharmaceutical manufacturers.  This material is highly sensitive for TrialCard, as it relates to other clients who run co-pay support programs that are also subject to misappropriation by SaveOnSP.  It is also completely irrelevant to this case, as this material has nothing to do with JJHCS or CarePath.  SaveOnSP also sought (i) the identities of ***all*** of TrialCard's other customers for which it performed benefits investigations, and (ii) information about ***all*** methods used by TrialCard to block misappropriation by accumulators or maximizers, without regard to whether TrialCard ultimately pursued or even discussed such methods with JJHCS.  *See* Ex. 18 at 11; Ex. 19 at 1–2 (Mar. 1, 2024 Ltr. from S. Arrow to H. Miles).

TrialCard once again raised breadth, burden, relevance, and proportionality objections.  *See* Ex. 20 (TrialCard's Responses and Objections to SaveOnSP's Second Subpoena).  As before, TrialCard sought to negotiate with SaveOnSP, but SaveOnSP refused, renewing its request for the same exact custodians it had been proposing for months and proposing a single overbroad search term.  *See* Ex. 21 at 1 (Dec. 22, 2023 Ltr. from S. Arrow to H. Miles); *see also* Ex. 22 at 6 (Mar. 8, 2024 Letter from H. Miles to S. Arrow).  Even so, TrialCard still agreed to voluminous productions, including for the "refresh" period, in response to the Second Subpoena, including:

- A full list of patients, updated through November 7, 2023, who received individual letters that TrialCard sent on JJHCS's behalf concerning certain limitations on co-pay

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 8

support for patients who were in a maximizer or accumulator plan and the dates on
which those letters were sent;

- Updated claims and enrollments data through November 7, 2023;

- Updated records of patient calls through November 7, 2023; and

- Certain call recordings between SaveOnSP representatives and TrialCard.

See Ex. 19 at 2 (Mar. 1, 2024 Ltr. from S. Arrow to H. Miles). TrialCard has already produced

most of these documents and anticipates completing its agreed-upon production by the end of May

2024.

## C.    *SaveOnSP Seeks to End-Run TrialCard's Lack of Consent to the Court's Jurisdiction*

Even as TrialCard produced documents and continued to negotiate the scope of the two

subpoenas, SaveOnSP repeatedly threatened TrialCard with motion practice and sought its consent

to proceed in this jurisdiction. *See, e.g.*, Ex. 23 at 1–2 (July 5, 2023 Ltr. from E. Holland to K.

Brisson); Ex. 24 at 2–3 (June 16, 2023 Ltr. from K. Brisson to E. Holland); Ex. 25 at 2 (Dec. 27,

2023 Ltr. from E. Snow to S. Arrow); Ex. 26 (Mar. 4, 2024 Ltr. from H. Miles to S. Arrow).

TrialCard, a North Carolina corporation, declined to provide that consent, as is its right under Rule

45(d), consistent with the position taken by SaveOnSP's business partners like Express Scripts and

Accredo. *See, e.g.*, Ex. 27 (Apr. 7, 2023 Email from J. Sternberg to G. Carotenuto).

Only on March 13, 2024—more than a full year after it served a subpoena on TrialCard—

did SaveOnSP first ask JJHCS to agree that pursuant to the MSA, it has "possession, custody,

[and] control" over ***all*** TrialCard documents "regarding work that TrialCard performed" for

JJHCS. Opening Br. at 14; *see also* Ex. 4 (Mar. 13, 2024 Ltr. from H. Miles to S. Arrow).

SaveOnSP never specified which documents it believed JJHCS was authorized to demand from

8

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 9

TrialCard.  *See* Ex. 28 (Apr. 12, 2024 Ltr. from S. Suri to H. Miles).  Nor did SaveOnSP identify

any gaps in TrialCard's document productions.

In response, JJHCS informed SaveOnSP that while it disagreed that JJHCS has control

over all of TrialCard's documents relating to its services for JJHCS, it was open to further

discussions concerning the scope of SaveOnSP's requests and which ones, if any, could be

addressed by JJHCS exercising its rights under the MSA.  JJHCS specifically noted that under the

operative MSA, JJHCS is entitled to "audit and/or examine" only certain specific categories of

material from TrialCard related to the scope of work described in the MSA.  *See* Ex. 1 at § 17.1

(Section Heading:  "Audit").  Rather than respond or engage in even a single required meet-and-

confer discussion, SaveOnSP unilaterally filed this motion in violation of the applicable rules.  *See*

Fed. R. Civ. P. 37(a)(1); L. Civ. R. 37.1(a)(1) (requiring movant to certify conferral).

## ARGUMENT

## I.  JJHCS Does Not "Control" All TrialCard Documents

SaveOnSP seeks to short-circuit normal third-party discovery procedures and motion

practice by "forcing" JJHCS to collect documents from an independent third party.  SaveOnSP's

efforts find no support either in the relevant MSA or in applicable law, neither of which permit a

party to use the concept of a party's "control" to obtain limitless non-party discovery.  Moreover,

even if JJHCS's "control" could be established as to some subset of TrialCard's documents, the

principles of reasonableness, relevance, and proportionality, all weigh against what SaveOnSP is

asking this Court to do, which is to order the production of an unknown and unlimited number of

additional TrialCard documents, despite TrialCard's significant prior productions.  This end-run

around Rule 45 should not be countenanced.

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 10

    **A.**    *The MSA Does Not Confer On JJHCS Legal Control Over TrialCard Documents*

SaveOnSP's primary argument is that the operative MSA between JJHCS and TrialCard confers on JJHCS access to and the right to request ***any*** document from TrialCard "relating to its work" for JJHCS—including "communications regarding the administration of CarePath, call recordings and other records reflecting communications between TrialCard's CarePath call center and patients, and documents and communications related to the implementation of the CAP program and TrialCard's Benefits Investigations." Opening Br. at 14. SaveOnSP is incorrect.

The MSA first provides



. Ex. 1 at § 17.1.

But "a contract provision which merely authorizes the party litigant's access to information that is in the possession of a non-party, without more, is insufficient to establish legal control in the Third Circuit." *Inline Connection Corp. v. AOL Time Warner Inc.*, 2006 WL 2864586, at *4 (D. Del. Oct. 5, 2006). The access right under the MSA—even if it were as broad as SaveOnSP suggests—therefore does not confer JJHCS with the requisite "control" under Rule 34(a).[6]

_____

[6] For this same reason, ████████████████████████, ████████████████████████████████████████████████, do not allow JJHCS to demand the production of documents by TrialCard. *See* Ex. 1.

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 11

SaveOnSP next points to the MSA's provision that JJHCS may request documents ████████████████████████████████████████████████████████ Ex. 1 at § 17.1. For example, under this provision, JJHCS could ████████████████████████████ ████████████████████████████████████████████████████ *See* SaveOnSP Ex. 15 at 2–3 (████████████████████████████████████████████ ████████████████████████████████████████). While this provision ████████████ ████████████████████████████████████, it does not mean that JJHCS has control sufficient to demand **all** TrialCard documents, including purely internal communications between **any** TrialCard employee on **any** subject, related in **any** way to **any** work for JJHCS. *See generally Princeton Digital Image Corp. v. Konami Digital Ent. Inc.*, 316 F.R.D. 89, 92 (D. Del. 2016) ("ask[ing] for and obtain[ing]" information "relevant to . . . litigation" is insufficient to establish control). Any alternative result would place prohibitive burdens on TrialCard as a vendor beyond what common sense suggests from such a contract provision.

Despite this, SaveOnSP argues that the MSA grants JJHCS permission to collect every scrap of paper—handwritten, digital, or otherwise—that TrialCard employees ever generated or touched during its work for JJHCS, regardless of whether such materials were of the type or nature of materials provided JJHCS during the course of dealing under the MSA. This is not the law. *See Maniscalco v. Brother Int'l Corp. (USA)*, 2010 WL 762194, at *11 (D.N.J. Mar. 5, 2010) (Wolfson, J.) (ability to request information relevant to a litigation does "not equate to control" over documents at issue unless the particular documents were of a kind previously supplied by the third party to the litigant); *see also Block v. Jaguar Land Rover N. Am., LLC*, 2017 WL 11696617, at *1–2 (D.N.J. Aug. 23, 2017) (finding lack of "control" where movant failed to meet its burden

11

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 12

to show that it had "the ability to demand" documents and despite evidence that it had "obtained

some other documents" from the third party).

Here, SaveOnSP does not suggest that JJHCS ordinarily requests internal TrialCard

communications in the normal course of business, let alone carried its burden of demonstrating

control. *See Maniscalco*, 2010 WL 762194, at *11 (noting law is "misapplied" if responding party

is required to "disprove control over the requested documents"). And the mere fact that JJHCS

has asked TrialCard to produce itself some subset of documents during this litigation—e.g., the

records of over 4,800 benefits investigation or other patient-specific data—is neither surprising

nor significant as the MSA expressly ████████████████████████████████████

████████████████████████████████. *See* Ex. 1 at § 5.3.2 ("████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████"). Not only does

JJHCS not have access to such TrialCard records in the normal course, but in some instances, it is

expressly prohibited from obtaining such information by contract and by applicable law (e.g., the

Health Insurance Portability and Accountability Act ("HIPAA")). Given that JJHCS has **no** access

to these documents, it is absurd to suggest that JJHCS's request to TrialCard to produce these

documents was done solely to gain some "tactical advantage" (it was not), *see* Opening Br. at 6,

16, or that JJHCS has control over documents it cannot even legally see.

SaveOnSP's own cited authority concerning legal control does not support its argument.

For example, in the unpublished *Haskins v. First Am. Title Ins. Co.*, 2012 WL 5183908 (D.N.J.

Oct. 18, 2012) decision, the court considered whether the principal had control over its agents'

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 13

closing files by virtue of a broad contractual provision requiring that the agents maintain and preserve "material of any kind that relate in any way to the Agency and this agreement or to the Policies issued by Agent." *Id.* at *2–3. While the *Haskins* court concluded that this established the principal's control over a certain discrete set of closing files related to the agent's policies, it did not require production of all documents relating to those files where such an exercise of authority would create undue burden. *See id.* at *3 n.3 (refusing to extend a finding of "control" to compel production of "essentially every mortgage document and associated document" from every transaction because such a result would be "unduly burdensome"). Likewise here: even if the MSA confers on JJHCS some legal control over certain subset of documents—*i.e.*, some of the categories of documents TrialCard has already produced—it does not entitle JJHCS to obtain all internal documents and communications, from all custodians, related to those documents.[7]

Finally, SaveOnSP's complete refusal to confer with JJHCS about any specific subset of documents that it seeks makes it impossible for the Court to evaluate whether some more limited set of documents might be within JJHCS's control under the MSA. It likewise makes it impossible for JJHCS to ascertain whether it might agree to make a request to TrialCard pursuant to the MSA,

---

[7] SaveOnSP's reliance on *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142 (3d Cir. 2004), is similarly unavailing here, where ████████████████████████████████████████████ ████████████████████. *See* Ex. 1 at § 12. By contrast, in *Mercy Catholic*, the court concluded that a "prime contractor" (the fiscal intermediary) had "control" over a discrete set of data based on a principal-agent relationship between it and a subcontractor (its agent) and a requirement that the relevant files "be made available to the Intermediary at "all 'reasonable times.'" *See id.* at 160–61. As one district court has observed, the *Mercy Catholic* court "did not address the issue of document production as between two independent corporations who conduct business at arms length." *Inline Connection Corp.*, 2006 WL 2864586, at *1. Nor did the *Mercy Catholic* court offer any suggestion that its holding extended "control" over anything other than the discrete set of data at issue.

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 14

as JJHCS has on multiple prior occasions. SaveOnSP's framing of this motion as an "all or nothing" proposition is not consistent with the MSA or the background law, and the motion should therefore be denied.

**B.     *SaveOnSP's Remaining Arguments Relating To "Control" Do Not Entitle It To Relief***

SaveOnSP alternatively argues that it should prevail because JJHCS has the "practical ability" to compel TrialCard to produce documents. *See* Opening Br. at 15–17. SaveOnSP is wrong, as the Third Circuit does not recognize the "practical ability" test for "control." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 146 (D. Del. 2005) ("[T]he Court is not persuaded that the Third Circuit has adopted as expansive a definition of 'control'" to include "an inquiry into the *practical ability* . . . to obtain such documents."); *Inline*, 2006 WL 2864586, at *2–3 (doubting that the Third Circuit recognizes the "practical ability test"; even if did, it would likely only be available in the parent-subsidiary context—not as between "two *independent* corporate entities"); *see generally* The Sedona Conference, Commentary on Rule 34 and Rule 45 "Possession, Custody, or Control," 25 Sedona Conf. J. 1, 28 (2024) (identifying the Third Circuit as a "legal right" jurisdiction that does not accept the "practical ability" test).

This Third Circuit rule makes sense:  information is "readily accessible" through "alternative avenues" such as a Rule 45 subpoena, and so no compelling reason exists to expand the definition of "control" beyond the "legal right" to obtain the materials. *See Power Integrations, Inc.*, 233 F.R.D. at 146; *Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 502 (D. Kan. 2001) ("Rule 45 specifically confers jurisdiction on the court issuing the subpoena and that court alone. A 'practical ability' test, then, would shift any dispute about a nonparty's documents from the

14

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 15

district in which the corporation may be found to the district where the suit is pending."); *Bleecker*

*v. Standard Fire Ins. Co.*, 130 F. Supp. 2d 726, 739 (E.D.N.C. 2000) (same).

Even if SaveOnSP could proceed on the basis of "practical ability," courts routinely deny

that it exists where, as here, there is no corporate affiliation between TrialCard and JJHCS. *See,*

*e.g.*, *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 502–03 (D.N.J. 2021) (finding no

"control" where firms were "separate legal entities," not "parents, subsidiar[ies], or sister

corporation[s]"); *see also Multiple Energy Techs., LLC v. Under Armour, Inc*., 2023 WL 2529187,

at *5 (W.D. Pa. Feb. 21, 2023) (finding no "control" absent indication that entities "are affiliated

in a way other than Beida serving as Under Armour's printer"); *Power Integrations*, 233 F.R.D. at

145 (finding no "control" where entities were "separate legal entities with separate corporate

places of incorporation" and "have little more than a vendor relationship").[8]  Again, this makes

perfect sense—TrialCard is an independent company that deals with many pharmaceutical sector

clients and appropriately safeguards access to its records.  SaveOnSP has provided no basis to

suggest that JJHCS has the "practical ability" to raid its vendor company's records for vast

volumes of TrialCard internal documents and then produce those in litigation.  *Accord In re Pork*

*Antitrust Litig.*, 2022 WL 972401, at *6 (D. Minn. Mar. 31, 2022) ("It is one thing to show that a

responding party may *ask* for documents in the possession of someone with whom it has a

---

[8] SaveOnSP's authorities all involve corporate affiliates, s*ee* Opp. at 15–16, and are thus factually
distinguishable.  *See Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441
(D.N.J. 1991) (whether a subsidiary had control of documents within its parent's possession);
*Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140–41 (3d Cir. 1988) (whether sister corporations
under common control are alter egos of the litigating entity); *Sanofi-Aventis v. Sandoz, Inc*., 272
F.R.D. 391, 395–96 (D.N.J. 2011) (whether "control" exists among corporate sisters, one of which
"prominently displayed" the logo of the other on website).

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 16

relationship, but quite another to conclude that the party has the practical ability to *demand* such documents, and therefore has 'control' over them.").

SaveOnSP's remaining arguments fare no better. For example, SaveOnSP argues that JJHCS is using its relationship with TrialCard "as both a sword and a shield." Opening Br. at 17. But SaveOnSP identifies no types of documents suppressed by TrialCard at JJHCS's behest or based on their content. TrialCard has produced multiple categories of documents without regard to whether those documents are helpful or harmful to JJHCS, and SaveOnSP has long been on notice to (and has not objected to) TrialCard's search parameters. *See, e.g.*, Ex. 29 (July 19, 2023 Ltr. from K. Brisson to E. Holland) (identifying search terms for TrialCard's custodial production). Indeed, as to the issues that SaveOnSP claims are central to its defense—*e.g.*, the CAP program and TrialCard's benefits investigations—TrialCard has produced a wealth of information, including over 4,800 benefits investigations that TrialCard performed and corresponding information about the subsequent action(s) taken with respect to patients. These documents allow SaveOnSP to evaluate what steps JJHCS took in response to learning that a given patient was enrolled with SaveOnSP. The volume and substance of the production refute SaveOnSP's suggestion that TrialCard is selectively producing documents.

SaveOnSP also argues that TrialCard's purportedly "significant role" in the subject matter in this litigation "independently" confers on JJHCS control over SaveOnSP's documents. *See* Opening Br. at 16. This is nonsensical. Under SaveOnSP's logic, any vendor who performs "significant" work for a litigant is effectively transformed into a nominal party subject to all associated discovery obligations. This is not the law. *See* Fed. R. Civ. P. 45(d)(1).

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 17

Nor does JJHCS's assertion of privilege over certain documents shared with TrialCard on the basis of the "functional equivalent" test mean that JJHCS "directly controls TrialCard's work and potential custodians." *See* Opening Br. at 7, 16. SaveOnSP cites no authority whatsoever to support this argument. A vendor's work may involve privileged information without the vendor being under the "control" of the entity that hired it. The MSA also refutes this argument, confirming that ███████████████████████████████████████████████ ██████████████████████████████████████" *See* Ex. 1 at § 12.

## II.    Requiring Further Productions From TrialCard Via JJHCS Is Unreasonable And Deprives TrialCard Of Its Rights Under Rule 45

Even if SaveOnSP could establish that JJHCS has legal or practical control over some specific subset of TrialCard documents—and it cannot—this does not give JJHCS the right to demand the expansive swath of documents that SaveOnSP now seeks. Relevance, reasonableness and proportionality considerations all weigh against further production from either JJHCS or TrialCard. *See* Fed. R. Civ. P. 26(b); *Signify Holding B.V. v. TP-Link Rsch. Am. Corp.*, 2022 WL 3704001, at *2 n.2 (S.D.N.Y. Aug. 26, 2022) ("[E]ven if a party has possession, custody or control of certain information, proportionality principals [sic] may weigh against production of such information."); *Vitaworks IP, LLC v. Glanbia Nutritionals (NA), Inc.*, 2023 WL 4825392, at *2 (D. Del. July 27, 2023) (after finding control, ordering the parties to "meet and confer" to avoid "undue burden"); *Haskins*, 2012 WL 5183908, at *3 n.3.

This is especially so since TrialCard has and continues to cooperate fully in third-party discovery; JJHCS has repeatedly facilitated that discovery; and JJHCS has made its own substantial party productions related to the very same issues for which SaveOnSP now seeks

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 18

further intrusive discovery of TrialCard.  Under these circumstances, neither JJHCS nor TrialCard

should be subject to any categorical burdens.  Any finding of "control," thus, must be balanced

against the existing burdens that TrialCard has already been forced to endure as part of third-party

discovery.

　　　Many of the documents SaveOnSP now seeks from TrialCard via JJHCS are irrelevant or

cumulative of party discovery.  For example, SaveOnSP suggests that TrialCard must produce

"internal communications regarding directions provided to it" by JJHCS.  Opening Br. at 5.  But

it is JJHCS's directions—not SaveOnSP's internal communications about those directions—that

are germane to the claims here.  *See, e.g.*, Ex. 30 (TRIALCARD_00005044) (███████████

█████████████████████████████████████████████████████

███); Opening Br. at 3 (recognizing that all CarePath-related materials require JJHCS approval).

Neither JJHCS nor TrialCard has opposed the production of these directions.  In any event, to the

extent SaveOnSP seeks additional documents relating to these issues, such documents are more

properly sought from JJHCS's own files.

　　　SaveOnSP also seeks documents "related to the implementation of the CAP program and

TrialCard's Benefits Investigations."  Opening Br. at 14.  SaveOnSP's own exhibits confirm that

TrialCard (1) regularly sends to JJHCS "██████████████████████████████████

███████████," *see, e.g.*, SaveOnSP Ex. 17 at -748; (2) ██████████████████████

███████████████████████, *see* SaveOnSP Ex. 8 at -713; and (3) ██████████████

███████████████, *see* SaveOnSP Ex. 18.[9]  Such documents reside in JJHCS's own files, and

---

[9] As to this last exhibit, SaveOnSP claims that TrialCard ████████████████████████
███████████████████████████████████ *see* Opening Br. at 5.  In fact, the exhibit

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 19

as SaveOnSP acknowledges, JJHCS is already producing broad CAP-related discovery, including

by running CAP-specific search terms over the files of over 25 JJHCS custodians for the period

April 1, 2016 to November 7, 2023.  *See, e.g.*, Opening Br. at 8; *see also* D.E. 192 at 26 (directing

JJHCS to produce CAP-related discovery); Apr. 10, 2024 Order at 2 (expanding CAP search

terms).   To the extent SaveOnSP seeks all "call recordings and other records reflecting

communications between" TrialCard and patients, *see* Opening Br. at 14, this Court has already

rejected this request as "burdensome."  D.E. 192 at 13.[10]

    SaveOnSP also argues that it is entitled to documents concerning the "reasonable steps"

JJHCS "could have taken to mitigate its alleged damages."  *See* Opening Br. at 5.  But again, the

proper source of those documents is JJHCS—not its vendor.  Indeed, to the extent TrialCard

███████████████████████████████ *see* SaveOnSP Ex. 19, those methods are only relevant

if TrialCard actually proposed them to JJHCS.   SaveOnSP is not entitled to all documents

concerning TrialCard's work for ***any*** manufacturer, including JJHCS's competitors, or ***any***

methods that TrialCard ever contemplated to respond to SaveOnSP's tactics.[11]  The MSA does not

---

itself contains ████████████████████████. *See* SaveOnSP Ex. 18 (██████████
██████████████████████████████████ ).  Whether this error was the
product of carelessness or something worse, the Court should reject SaveOnSP's argument that
depends on its mischaracterization of the cited exhibit.

[10] SaveOnSP has objected to producing its own call recordings—specifically, communications
relating to SaveOnSP with persons likely enrolled in CarePath—claiming that it would be "unduly
burdensome" and "vastly disproportionate."  *See* Ex. 31 at 4 (Mar. 29, 2023 Ltr. from A. Dunlap
to H. Sandick).  Notwithstanding this, the parties and TrialCard remain in ongoing negotiations
regarding an appropriate scope of mutual production of relevant call recordings, if any.  *See, e.g.*,
Ex. 32 (Apr. 9, 2024 Email from K. Brisson to H. Miles) (stating that TrialCard continues to
investigate the feasibility of identifying and producing over 1,500 requested recordings); Ex. 33 at
1 (May 7, 2024 Ltr. from E. Shane to H. Miles).

[11]  As TrialCard has explained to SaveOnSP, the benefits investigations process ███████████
████████████████████████████████████████████████████████████

19

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 20

permit JJHCS to access these documents.  *See* Opening Br. at 5; *see also* Ex. 1 at § 17.1

(███████████████████████████████████████████████████).    To the extent

TrialCard's documents implicate JJHCS or CarePath, either JJHCS, TrialCard or both have already

agreed to produce them.[12]  Neither JJHCS nor TrialCard should be required to do anything more.

*See generally Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 361 (D. Md. 2012) (noting

that even where a party has "control" over third-party's documents, Federal Rule of Civil

Procedure 26(b) still requires that courts to "limit the frequency or extent of discovery otherwise

allowed" so as to ease discovery burdens).

Finally, even if there is a basis to compel TrialCard to do more, Federal Rule of Civil

Procedure 45(d)(2)(B)(i) is clear:  "the serving party may move the court for the district where

compliance is required for an order compelling production[.]"  In addition, as a third-party witness,

TrialCard must be protected from "undue burden or expense" by "[t]he court for the district where

compliance is required."  Fed. R. Civ. P. 45(d)(1).  SaveOnSP is well aware of these standard

procedures, and yet apparently ignores them out of mere convenience, seeking this Court's

assistance in making an end-run around Rule 45.  *See* Opening Br. at 11, 18 (recognizing that in

the absence of control sufficient to allow SaveOnSP to obtain all requested documents, it would

need to "negotiate with TrialCard's attorneys to obtain the documents and likely to proceed to

motion practice against TrialCard in North Carolina").

---

████████████████████████████████████.  *See* Ex. 34 at 2–3 (Mar. 22, 2024 Ltr. from
S. Arrow to H. Miles).

[12] In SaveOnSP's Exhibit 20, ██████████████████████████████████████████████
██████████████████████████████████████████    SaveOnSP Ex. 20
at -341.  TrialCard produced this document precisely because it implicated JJHCS, refuting
SaveOnSP's claim that TrialCard is "withholding" these documents.  Opening Br. at 5.

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 21

### III.    There Is No Basis To Disqualify Patterson Belknap Or Bar Its Lawyers From Representing Both JJHCS and TrialCard

Having failed to substantiate its arguments on the merits, SaveOnSP resorts to leveling unfounded accusations against JJHCS's lead counsel, Patterson Belknap, urging Your Honor to disqualify Patterson Belknap (apparently from representing one or both clients) or impose an ethical wall to separate the Patterson Belknap lawyers representing JJHCS from those representing TrialCard. *See* Opening Br. at 17–19. SaveOnSP's request is meritless gamesmanship.

Counsel routinely represents both parties and related third parties in commercial litigation. This is both practical and cost-efficient because those counsel are familiar with all the relevant issues. Patterson Belknap has abided by all relevant and appropriate ethical obligations in this regard, and any suggestions to the contrary are scurrilous. Motions to disqualify are heavily disfavored, and courts must balance several competing considerations, including a client's interest in being represented by counsel of its choosing with the need to maintain the high standards of the profession. *See Carlyle Towers Condo. Ass'n, Inc. v. Crossland Savs., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996). SaveOnSP has failed to state the applicable legal standard, let alone address these factors, which alone should dispose of its motion. *See Capps v. Dixon*, 2023 WL 8257995, at *9 (D.N.J. Nov. 28, 2023) (concluding that a party failed to meet its "heavy burden" to disqualify counsel when it "fail[ed] to address the relative hardships"). However, even if it had, the balancing here weighs against disqualification: there is no conflict between JJHCS and TrialCard; both have voluntarily engaged Patterson Belknap; and it would take considerable time for new counsel to acquaint itself with the "very complex issues involved." *Carlyle Towers*, 944 F. Supp. at 348–49.

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 22

One would expect SaveOnSP to have a formidable legal argument before interposing an incendiary demand of this kind. But SaveOnSP has identified no authority whatsoever that supports its extraordinary request for disqualification or an ethical wall in this context. For example, SaveOnSP cites to a non-binding Ethics Opinion from the District of Columbia Bar suggesting that, before accepting a representation of a subpoenaed third party, a lawyer might, but is not required to, notify its existing client who is the subject of the subpoena of the proposed engagement. *See* SaveOnSP Ex. 55 at 6. Patterson Belknap has done this here: both JJHCS and TrialCard—who are not adverse to each other—have been advised of Patterson Belknap's representation of the other and have voluntarily and knowingly agreed to engage Patterson Belknap as counsel. Patterson Belknap has obtained appropriate waivers as to any potential conflict that may arise. None of SaveOnSP's other cited authorities, several of which involve lawyers representing an adversary in litigation (unlike here) and none of which ultimately resulted in an order requiring disqualification, support SaveOnSP's arguments.[13]

Nor has SaveOnSP has offered any evidence that Patterson Belknap cannot zealously advocate for both clients, nor shown that the firm is somehow "torn between [its] obligations" to each. Opening Br. at 18. There is no conflict between the interests of JJHCS and its vendor. If

---

[13] The cases on which SaveOnSP relies are inapposite. Indeed, two involved a law firm representing its client's adversary in a litigation, and yet the court nevertheless found that disqualification was unwarranted. *See Wyeth v. Abbott Lab'ys*, 692 F. Supp. 2d 453, 458–59, 461 (D.N.J. 2010); *Bos. Sci. Corp. v. Johnson & Johnson Inc.*, 647 F. Supp. 2d 369, 374–75 (D. Del. 2009). Not so here, where there is no actual conflict between TrialCard and JJHCS, much less one that is unwaivable. In the third case, *Hempstead Video, Inc. v. Inc. Village of Valley Steam*, 409 F.3d 127 (2d Cir. 2005), the court declined to impute an "of counsel" attorney's potential conflict to the firm. *Id.* at 136. The court further concluded that even if the potential conflict could be so imputed, the "presumption of shared confidences that may arise by operation of law" was rebutted, and, thus, there was no basis for disqualification. *Id.* at 138. No such presumption applies here.

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 23

anything, it is counsel for SaveOnSP that refuses to respect the boundaries between TrialCard and JJHCS by repeatedly failing to heed the distinctions between them.[14]  Patterson Belknap intends to diligently represent both JJHCS and TrialCard consistent with all applicable ethical and other obligations so long as both clients seek its counsel.

SaveOnSP's only remaining argument is a false claim that JJHCS has repeatedly refuted. In a letter dated January 30, 2024, SaveOnSP first asserted without basis that JJHCS, violated the Discovery Confidentiality Order ("DCO"), D.E. 62, by purportedly sharing a confidential transcript of the deposition of Ayesha Zulqarnain with TrialCard.  JJHCS explained that it never provided the deposition transcript to TrialCard, nor did it summarize its contents to TrialCard or otherwise provide to TrialCard any other confidential materials designated by SaveOnSP.  *See* Ex. 35 (Feb. 1, 2024 Ltr. from S. Arrow to E. Snow).

Undeterred, SaveOnSP then set its sights on counsel, falsely suggesting that Patterson Belknap, as attorneys for both JJHCS and TrialCard, somehow violated the DCO by "***using*** Confidential information" acquired through Patterson Belknap's representation of JJHCS for a "purpose other than its prosecution of this action, including on behalf of a third party resisting a subpoena." *See* Ex. 38 at 1 (Feb. 16, 2024 Ltr. from E. Snow to S. Arrow) (emphasis in original). The apparent basis for this very serious charge was only this:  that during a meet-and-confer phone

---

[14] For almost a year, we have asked SaveOnSP to respect this separation.  Its lead counsel at Selendy Gay Elsberg (now doing business as "Selendy Gay") has ignored our requests.  *See, e.g.*, Ex. 35 (Feb. 1, 2024 from S. Arrow to E. Snow; *see also* Ex. 36 (Feb. 16, 2024 from H. Sandick to E. Snow).  Instead, counsel for SaveOnSP routinely writes to Patterson Belknap in its capacity as "attorneys for TrialCard and JJHCS" and describes confidential JJHCS documents to TrialCard on the theory that "as JJHCS's counsel, [Patterson Belknap] ha[s] reviewed and produced such documents."  *See, e.g.*, Ex. 37, at 1 n.1 (May 31, 2023 Ltr. from E. Holland to G. Carotenuto); Ex. 17, (Feb. 13, 2024 Ltr. From H. Miles to S. Arrow).

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 24

call between outside counsel, counsel explained that in light of SaveOnSP's repeated use of deceptive tactics to obscure its agents' SaveOnSP affiliation, TrialCard needed more information in order to comply with SaveOnSP's request for communications between TrialCard and SaveOnSP. That is all.

SaveOnSP's attempt to twist this reference (to an undisputed fact) into a violation of the DCO is untenable. Patterson Belknap did not disclose any protected information to TrialCard. Nor did it "use" protected materials in violation of Paragraph 8 of the DCO, as SaveOnSP claims. *See* Opening Br. at 10. That paragraph specifies that "Designated Material shall be used only by individuals permitted access to it," and Patterson Belknap certainly had such access and was permitted to discuss such information with opposing counsel who had produced that information in the first place.[15] None of this constitutes a violation of any provision of the DCO.

Moreover, counsel merely noted the obvious: to identify TrialCard's calls with SaveOnSP, SaveOnSP needed to provide caller names or phone numbers sufficient to identify those calls. For example, TrialCard had within its own records information for a "patient" who registered with CarePath using the name Ayesha Zulqarnain, *see* Ex. 39. TrialCard then received multiple calls from this same registered cell phone number, with the caller using many different names and affiliations. *See, e.g.*, Ex. 40 (TRIALCARD_00008921) (████████████████ Ex. 41 (TRIALCARD_00008923) ███████████████  Ex. 42 (TRIALCARD_00008927)

---

[15] Nor does this stray reference in a meet and confer amount to "use" prohibited by the DCO, as SaveOnSP claimed in prior correspondence. The DCO requires a Receiving Party to use Designated Material "solely for purposes of the prosecution or defense of this action" and not for commercial or personal purposes. D.E. 62 ¶ 4. Counsel's remarks—made in an effort to facilitate subpoena compliance in a call among outside counsel who all had access to the relevant materials—did not violate this provision.

Honorable Freda L. Wolfson, U.S.D.J.
May 7, 2024
Page 25

██████████████████████ *see also* Ex. 43 (Zulqarnain Depo. Tr.) at 148:9–22, 156:13–

157:2.  Thus, TrialCard already had information in its files regarding Ms. Zulqarnain's use of fake

names.  SaveOnSP could have assisted TrialCard in identifying similar calls based on information

only within SaveOnSP's possession (i.e., the phone numbers and fake names its agents used when

communicating with TrialCard), but it refused to do so, thus complicating TrialCard's ability to

produce responsive documents.

This passing reference to SaveOnSP's deceptive tactics is also no different than what

JJHCS has said publicly.  *See, e.g.*, Compl. at ¶ 73 ("SaveOnSP deceives manufactures by actively

concealing its role and interference with patient assistance programs."); D.E. 180-4 at 13:15–21

(noting that SaveOnSP engages in "deception"); *id.* at 86:23–24 (JJHCS stating that SaveOnSP is

"trying to evade and camouflage" its actions from manufacturers).  The notion that TrialCard's

outside counsel somehow violated the DCO by requesting clarity on what names or numbers to

search is therefore utterly baseless.

\*       \*       \*

For the foregoing reasons, we request that Your Honor deny SaveOnSP's motion to compel

JJHCS to produce documents from TrialCard and reject its requests as to Patterson Belknap's

representation of both JJHCS and TrialCard.  We appreciate Your Honor's attention to this matter.

Respectfully submitted,

 /s/ *Jeffrey J. Greenbaum*
JEFFREY J. GREENBAUM

cc:      Counsel of record for SaveOnSP

# EXHIBIT 1
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 2



May 12, 2023

George Carotenuto
(212) 336-2547

Andrew Dunlap, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:   **TrialCard Subpoena**
> *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
> No. 22 Civ. 2632 (ES) (CLW)

Dear Andrew:

We write in response to your April 28, 2023 letter regarding the subpoena issued to TrialCard, Inc. ("TrialCard") in the above-captioned matter.

## I.    RFP Nos. 4, 18(a)-(h), and 19

We write to confirm that, to the extent that SaveOnSP renews its motion to compel against JJHCS and the Court orders JJHCS to produce additional categories of documents that are also the subject of RFP Nos. 4, 18(a)-(h) and 19, TrialCard will similarly broaden its production, to the extent that TrialCard has responsive documents that JJHCS is not producing. TrialCard reserves the right to renew other objections to such production, including objections based on burden.

## II.    Time Period

We write to confirm that the time period for TrialCard's productions will be April 1, 2016 through July 1, 2022 (the "Relevant Time Period").

## III.    Requests for which TrialCard Agreed to Produce Responsive Documents

We address below several RFPs for which Trial Card has agreed to produce responsive documents:

RFP No. 1

TrialCard will produce documents from the Relevant Time Period responsive to this request.

Andrew Dunlap, Esq.
May 12, 2023
Page 2

RFP No. 3

      RFP No. 3 seeks "All Documents and Communications with or regarding SaveOnSP, including those between You and JJHCS, You and any patients, and You and any other Hub Entity." We write to explain our search methodology for one part of that RFP—calls between TrialCard and patients.

      TrialCard call agents enter case and task notes into a centralized database when patients call regarding the CarePath copay assistance program. In general, case notes are akin to patient profiles and include reasons for initial outreach, whereas task notes are generated each time TrialCard has contact with a given patient. TrialCard has filtered these notes for the Janssen Drugs at issue in this litigation and intends to further search these notes for responsive materials using the following search terms:[1]

| Term |
| --- |
| maximiz* |
| designat* |
| ESI |
| Obamacare |
| ACA |
| Save* |
| accumulat* |
| Accredo |
| Express Script* |
| EHB |
| Affordable Care Act |
| essential |

      TrialCard will produce all case and task notes for SaveOnSP patient calls hitting on these terms. In addition, for all task notes that hit on responsive search terms, TrialCard will also produce the corresponding case note. We invite you to use these records to identify a reasonable number of calls for which you would like TrialCard to attempt to produce the associated audio recording and/or transcript, where available.

---

[1] More complex terms-and-connectors cannot be used in the platform's search functionality, so the search terms used for JJHCS's custodial productions cannot be duplicated here.

Andrew Dunlap, Esq.
May 12, 2023
Page 3

RFP Nos. 2, 18(i)-(m), and 30

We write to confirm that TrialCard does not intend to withhold documents responsive to these requests. TrialCard's April 24, 2023 production included documents responsive to these requests.

## IV.    Investigation Regarding Other RFPs

You asked us whether TrialCard has any documents responsive to RFP Nos. 5-17, 20-22, 24-27, 29, and 32 that are not also in the possession of JJHCS. Based on our investigation, we have set forth below our current understanding regarding each request. Where JJHCS has responsive documents, it will produce them consistent with the Court's orders with respect to the scope of discovery, as well as JJHCS's prior objections and agreements on discovery requests.

RFP Nos. 5, 6, & 21: RFP Nos. 5, 6, and 21 seek all documents and communications regarding CarePath's terms and conditions, all documents and communications regarding the requirement that patients enrolled in CarePath make some payment towards Janssen drugs, and all documents and communications regarding any offer to waive any limitation(s) on the amount of CarePath copay assistance available to any particular patient.

We do not believe that any documents responsive these requests exist at TrialCard that are not also in the possession of JJHCS. TrialCard does not independently interpret the CarePath terms and conditions without direction from JJHCS, nor does it independently change the amount of CarePath copay assistance available to any individual patient. JJHCS will produce the training materials, call scripts, and other directives regarding implementation of the CarePath program that it has provided to TrialCard, as well as other communications between JJHCS and TrialCard responsive to these requests.[2]

RFP Nos. 7, 9, & 29: We do not believe that TrialCard has any documents responsive to these requests that relate to TrialCard's implementation of the CarePath program. TrialCard has published white papers on the subject of accumulator and maximizer programs generally, some of which touch on the issues of health plans designating certain drugs as essential or non-essential health benefits under the Affordable Care Act and the provision of copay assistance to patients in high deductible or health savings account plans. These white papers do not address non-medical switching (RFP No. 29). These white papers were developed by TrialCard's marketing team without input from JJHCS and are publicly available.

RFP Nos. 8, 11, 12, & 16: As noted above, TrialCard will produce call notes for patient calls using search criteria designed to capture relevant communications concerning SaveOnSP, including those responsive to these requests, which seek all documents and communications regarding "SaveOnSP's communications with patients regarding CarePath, including allegedly misleading or confusing communications," "any alleged stress or confusion

---

[2] JJHCS produced certain of these materials in its April 28, 2023 production.

Andrew Dunlap, Esq.
May 12, 2023
Page 4

caused by SaveOnSP," and "any alleged harm caused by SaveOnSP to any Patient," and JJHCS's payment of costs "that accumulate towards the Patient's deductible or out-of-pocket maximum," respectively. We do not believe that TrialCard has any other documents responsive to this request that are not also in the possession of JJHCS.

RFP No. 10: We do not believe that TrialCard has any documents responsive to this request that are not also in the possession of JJHCS.

RFP Nos. 13-15, 17, 20, & 22: These requests seek documents and communications regarding a variety of subjects, including how SaveOnSP threatens the financial viability of CarePath or has harmed JJHCS (RFP Nos. 13-15), any efforts to limit CarePath copay assistance for Stelara or Tremfya patients (RFP No. 20), and any attempts to identify health plans or patients enrolled in SaveOnSP (RFP No. 22), as well as certain data referenced in JJHCS's Complaint (RFP No. 17). Based on our investigation, to the extent that TrialCard participated in the analysis of these questions, it would have been done at the request of, or in consultation with, JJHCS. Thus, we do not believe that TrialCard has documents responsive to these requests that are not also in the possession of JJHCS.

RFP No. 24: This request seeks documents "sufficient to identify all JJHCS Hub Entities and CarePath Care Coordinators." TrialCard has agreed to produce organization charts for the portions of its business that oversee CarePath. We do not believe that TrialCard has other documents responsive to this request that are not also in the possession of JJHCS.

RFP No. 25: This request seeks documents sufficient to show the economic terms of JJHCS's retention of TrialCard. JJHCS has agreed to produce its agreements, work orders, and associated documents with TrialCard. We do not believe that TrialCard has other documents responsive to this request that are not also in the possession of JJHCS.

RFP No. 26: This request seeks documents sufficient to show the percentage of patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to market CarePath. At our meet and confer, you explained that you seek to understand "how many patients, after JJHCS (or its vendors, like TrialCard) encourage them to enroll in CarePath, do enroll in CarePath and how many do not." Apr. 28, 2023 Ltr. from A. Dunlap to G. Carotenuto at 2. TrialCard does not undertake marketing or advertising efforts for CarePath and does not affirmatively reach out to patients to "encourage them to enroll in CarePath." TrialCard also does not track what percentage of patients ultimately enroll in CarePath after those patients have affirmatively contacted TrialCard. As such, no analysis responsive to this request exists at TrialCard.

RFP No. 27: This request seeks documents and communications relating to accumulators and maximizers and their effect on JJHCS's return on investment for copay assistance dollars. We do not believe that TrialCard has any documents responsive to this request that are not also in the possession of JJHCS. To the extent that any analysis of JJHCS's "return on investment" for copay assistance dollars exists, any request for such an analysis would originate

Andrew Dunlap, Esq.
May 12, 2023
Page 5

with JJHCS, as with RFP Nos. 13-15, 17, 20 and 22.  Separately, as we have explained above, TrialCard has published white papers on the subject of accumulator and maximizer programs generally, but these do not relate to JJHCS's return on investment.

RFPs No. 32:  This request seeks "all documents and communications regarding this Action provided to you by any person or entity other than SaveOnSP, including in response to subpoenas served in this Action."  We do not believe that TrialCard has any non-privileged documents responsive to this request that are not also in the possession of JJHCS.

## V.    Vague and Ambiguous Objections

Other than as noted above or in our prior correspondence, TrialCard does not intend to independently produce documents responsive to RFP Nos. 4, 8, 9, 15, 16, 18(a)-(h), 19, 21, 26, 27, 31, or 32.  To the extent that that position changes, TrialCard will indicate whether it believes any terms in those requests are vague and ambiguous and will provide an explanation of how it intends to construe any such terms.

*       *       *

TrialCard reserves all rights and is available to meet and confer.

Very truly yours,

George Carotenuto

14293830

# Exhibit 3



www.pbwt.com

April 7, 2023

Harry Sandick
(212) 336-2723

**<u>VIA EMAIL</u>**

Andrew Dunlap, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
adunlap@selendygay.com

Re:    **TrialCard's Responses and Objections to SaveOnSP's Subpoena**
       *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*,
       No. 22 Civ. 2632 (ES) (CLW)

Dear Andrew:

We write on behalf of TrialCard in response to your March 15, 2023 letter regarding TrialCard's Responses and Objections to SaveOnSP's Third Party Subpoena.

*First*, SaveOnSP requests information as to whether "TrialCard is withholding any documents on the basis that it believes that they are available in party discovery" with regard to SaveOnSP's RFP Nos. 2-22, 24-27, 29, and 32. As an initial matter, TrialCard will not produce materials responsive to SaveOnSP's RFP Nos. 4, 18 (a)-(h), and 19, because the Court sustained JJHCS's objections to the documents and communications sought by these requests in the March 17, 2023 discovery conference. With respect to SaveOnSP's RFPs 2, 3, 18 (i)-(m), and 30, JJHCS has already agreed to produce responsive documents on TrialCard's behalf.

With respect to the other RFPs, TrialCard is objecting to these requests because, among other things, these requests are targeted at issues that are logically explored only through party discovery and not through discovery from TrialCard. SaveOnSP's "cut-and-paste" document requests to TrialCard ignore the fact that while JJHCS's understanding of various issues may be relevant to the case, TrialCard's independent understanding of these issues will not be relevant, absent some reason to believe otherwise based on documents produced in party discovery. For this reason, the production of documents by TrialCard on these issues is not appropriate. This position is consistent with TrialCard's general and/or specific objections to all of SaveOnSP's requests based on relevance.

Andrew Dunlap, Esq.
April 7, 2023
Page 2

We provide further explanation of the nature of our objections below:

RFP 5:  This request seeks all documents and communications regarding CarePath terms and conditions.  While JJHCS is making a production of such documents, TrialCard was not involved in any decisions regarding the drafting or revision terms and conditions.  Nor is its interpretation of those terms relevant.  As a result, TrialCard will have no independent, relevant information about the terms and conditions, such as the terms "offer" or "health plan," and its understanding of those terms (if any) is irrelevant to this case.

RFP 6:  This request seeks information about CarePath's requirement that patients make some payment toward their copay.  TrialCard does not set the patient copay amounts.  TrialCard is not a party to the contract at issue in this case.

RFP 7:  This request seeks documents relating to how specialty drugs are designated under the Affordable Care Act.  JJHCS has agreed to produce certain documents that concern this issue.  There is no reason to believe that TrialCard would have documents relevant to JJHCS's understanding of these issues that are not available from JJHCS, and TrialCard's own understanding of these issues is irrelevant to this lawsuit.

RFPs 13 and 14:  These requests seek documents and communications about SaveOnSP's direct or indirect impact on the financial viability of CarePath.  TrialCard is not responsible for the financing of CarePath in any respect.  Moreover, JJHCS has already agreed to produce certain documents in response to these requests, and those documents will be produced in the coming weeks.

RFP 15:  This request seeks materials "regarding any alleged harm caused by SaveOnSP to JJHCS."  JJHCS is already producing documents that are responsive to a similar request.  This is not an appropriate subject for third-party discovery, as TrialCard's understanding of this issue, to the extent it even has one, is not relevant.

RFP 22:  This request seeks documents "regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans."  To the extent that TrialCard may have been involved in the efforts to identify these patients and health plans, JJHCS's production will capture such documents and communications in the first instance.

The same is true for the other RFPs identified in SaveOnSP's letter:  RFP 8 (SaveOnSP's misleading communications); RFPs 9-10 (payments to patients in high deductible or health savings account plans), RFP 11-12 (harm caused to patients in the SaveOnSP program), RFP 16 (payment of patient costs), RFP 17 (documents relating to internal JJHCS data), RFP 20 (Stelara and Tremfya program changes), RFP 21 (payments in excess of program caps), RFP 22 (efforts by JJHCS to identify patients in health plans advised by SaveOnSP), and RFP 32 (TrialCard's communications about the action).  TrialCard's understanding on the issues raised by these requests is not relevant to the lawsuit, and TrialCard should not be required to produce

Andrew Dunlap, Esq.
April 7, 2023
Page 3

documents in response to them unless party discovery demonstrates that TrialCard would have documents that bear on JJHCS's understanding of these issues.

  **Second**, SaveOnSP seeks additional information for RFP Nos. 1-3 and 18 to which TrialCard responded that it had already agreed to produce responsive documents through JJHCS, subject to objections already lodged by JJHCS.  TrialCard will address each RFP below.

  <u>RFPs 1 and 2</u>: TrialCard confirms that it will produce its organization charts for TrialCard between 2016 and 2022 through JJHCS.

  <u>RFP 3</u>: This request seeks all documents and communications "with or regarding SaveOnSP, including those between You and JJHCS, You and any patients, and You and any other Hub Entity."  TrialCard is available to meet and confer to discuss issues related to the collection of call notes, recording and related records to determine an appropriate approach given issues specific to the format in which those materials are maintained. Other responsive materials should be pursued through party discovery.

  <u>RFP 18</u>: TrialCard will produce through JJHCS documents responsive to SaveOnSP's RFP 18 subparts (i) through (m), which seeks CarePath enrollment and claims data. Pursuant to the Court's order, TrialCard will not produce through JJHCS or otherwise documents responsive to SaveOnSP's RFP 18 subparts (a) through (h).

  <u>Bates-stamp identifier</u>: TrialCard confirms that we will use a unique Bates-stamp identifier to distinguish its document production from those documents produced by JJHCS.

  **Third**, SaveOnSP raises concerns about TrialCard's relevance objections to SaveOnSP's RFPs 5, 6, 18 (i)-(m), 19, 20, 22, and 26.  As you observe, in some cases TrialCard's relevance objections are broader than JJHCS's relevance objections.  This is for the same reason noted above:  while JJHCS's understanding of various issues presented in this lawsuit may support valid document requests, TrialCard's understanding of these same issues will often be irrelevant. We have discussed the nature of TrialCard's objections to these requests earlier in this letter, except for RFP 26.  TrialCard will not produce documents responsive to this request due to its vague and ambiguous nature, and the undue burden presented by the request as we understand it.

  **Fourth**, TrialCard confirms that it intends for its objections to the Time Period applicable to SaveOnSP's RFP Nos. 1, 2, 5-6, 18, 19, and 25-28 to be consistent with JJHCS's objections that request similar information.  TrialCard will comply with any court order applicable to those RFPs.

  **Fifth**, as SaveOnSP has explained, TrialCard has lodged a specific objection to the vague and ambiguous nature of SaveOnSP's RFP 4, 8, 9, 15, 16, 18, 19, 21, 26, 27, 31, and 32. Many of these requests are also the subject of other objections.  To the extent that TrialCard makes a production in response to these RFPs, it will construe any vague or ambiguous terms in accordance with TrialCard's reasonable understanding of such terms and produce the responsive

Andrew Dunlap, Esq.
April 7, 2023
Page 4

documents.  If SaveOnSP wishes to clarify any of its requests, please advise us of any such clarifications.

       *Sixth*, SaveOnSP asks whether TrialCard is withholding documents responsive to RFP 7 based on our objection that it calls for views on a legal question.  As noted, TrialCard's understanding of health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits is irrelevant.  TrialCard is a third-party with no insight into how these designations are made and it has no influence over these designations—which of course are not made by anyone at TrialCard.  These are the grounds for TrialCard's refusal to produce documents at the present time, and not the fact that the request calls for legal interpretation.

       TrialCard is available to meet and confer on its responses and objections to SaveOnSP's RFPs.

                  Very truly yours,

                  Harry Sandick

# Exhibit 4

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212 390 9000
hmiles@selendygay.com

March 13, 2024

**Via E-mail**

Sara A. Arrow
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
sarrow@pbwt.com

**Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,***
***LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Sara,

We write to ask that J&J agree that it has possession, custody, and control
of documents held by TrialCard, Inc. ("TrialCard") regarding work that TrialCard
performed for J&J.

Pursuant to Rule 34(a) of the Federal Rules of Civil Procedure, a party has
an obligation to produce documents within its "possession, custody, or control."
Fed. R. Civ. P. 34(a). "Federal Courts construe 'control' very broadly under Rule
34." *Maniscalco v. Brother Int'l Corp.*, No. 3:06-CV-4907 (FLW), 2010 WL
762194, at *4 (D.N.J. Mar. 5, 2010). A party has control over documents if it "has
the legal right or ability to obtain the documents from another source upon de-
mand." *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004).

J&J has the legal right to obtain upon demand, and thus controls, Trial-
Card's documents regarding its administration of CarePath. "[A] litigating party
has control of documents if a contractual obligation requires a non-party to pro-
vide requested documents to the litigating party upon demand." *Haskins v. First
Am. Title Ins. Co.*, No. 10-CV-5044 (RMB)(JS), 2012 WL 5183908, at *1 (D.N.J.
Oct. 18, 2012). The 2017 Master Services Agreement between TrialCard and J&J
("MSA")[1] obligates TrialCard ██████████████████████████████
████████████████████████████████████████████████████████████

---

[1] The MSA was produced with Bates number JJHCS_00011273.

Sara A. Arrow
March 13, 2024



MSA § 17.1.

*Id.* Courts regularly find such contractual provisions sufficient to establish a litigant's control over documents in the possession of a third party. *See, e.g.*, *Mercy Catholic*, 380 F.3d at 160–61 (establishing party's control over non-party's working papers via right to have papers "made available … at all reasonable times."); *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 410–11 (E.D. Pa. 2021) (establishing party's control through "right to access" non-party books and records); *Rosie D. v. Romney*, 256 F. Supp. 2d 115, 119 (D. Mass. 2003) (establishing party's "control" through contractual right to examine and copy non-party records).

*See* MSA § 8.2

); MSA § 17.2

). Similar agreements to cooperate in litigation by a non-party have been found sufficient to establish the party's legal right to obtain documents upon request, even if the party could not "force" the non-party's compliance. *Haskins*, 2012 WL 5183908, at *4 n.4. Because J&J has the legal right to obtain relevant TrialCard documents upon request, it has "control" over those documents.

J&J also has the practical ability to obtain TrialCard's documents. Even where a party does not have a legal right to a third-party's documents, "a company's ability to demand and have access to documents in the normal course of business gives rise to the presumption that such documents are in the litigating corporation's control." *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 443 (D.N.J. 1991). "One such business need is to provide highly relevant documents in litigation." *Id.* at 444. Where, as here, a party and non-party share "documents helpful for use in the litigation, the courts will not permit [the party] to deny control for purposes of discovery by an opposing party." *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 141 (3d Cir. 1988). J&J and TrialCard are clearly collaborating in discovery, as evidenced by the many times J&J has promised to make its own productions "from" or "through" TrialCard. *See, e.g.*, Jan. 24, 2024 Conf. Tr. at 21:10-17 ("We have already agreed to produce what are either directly through us or by asking our vendor, a company called Trial Card, to produce what are known as benefits investigations. And those are the enforcement

Sara A. Arrow
March 13, 2024

documents. We're in the process of making those productions for the relevant time period right now."); Nov. 20, 2023 Responses & Objections to SaveOnSP's Fourth Set of RFPs at 7 ("Subject to the foregoing objections, JJHCS will ask TrialCard, Inc. to produce all benefits investigation reports from the Time Period that reflect inquiries about whether a patient taking Stelara or Tremfya is enrolled in an accumulator or maximizer program (including SaveOnSP), to the extent such documents exist and can be located after a reasonable search."); Oct. 30, 2023 Conf. Tr. at 46:23-47:2 ("We produced call notes from thousands of calls at TrialCard, our vendor, that actually talks to the patients. We produced thousands of call notes from TrialCard to show how these things are being done."); *id.* at 62:8 ("In addition to all of the categories that I just pointed out, we will also give them a production from TrialCard, which is our vendor, who we also represent and is subject to a subpoena, we'll give them benefits investigations that find any patient in a maximizer or a [sic] accumulator through to the present. Through to the present."); June 27, 2023 Conf. Tr. at 90:2-6 (""[T]he administrator is TrialCard, this third party that is also—that we have identified and we've made document production from–and probably we'll be making more"). TrialCard confirms that it is making productions "as requested by" J&J. *See* Dec. 15, 2023 TrialCard Responses or Objections to SaveOnSP's Second Set of RFPs at 14 ("TrialCard will produce certain responsive call recordings as requested by JJHCS.").

Please confirm that J&J agrees that it has possession, custody, and control over documents in TrialCard's possession relating to TrialCard's services for J&J.

We request a response by March 20, 2024. We are available to meet and confer.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

# EXHIBITS 5-7
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 8

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

| | |
|---|---|
| Johnson & Johnson Health Care Systems Inc. | ) |
| *Plaintiff* | ) |
| v. | ) |
| Save On SP, LLC | ) |
| | ) |
| *Defendant* | ) |

Civil Action No. 22-2632 (JMV) (CLW)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                      TrialCard Inc.
        2250 Perimeter Park Dr., #300, Morrisville, NC 27560
        *(Name of person to whom this subpoena is directed)*

☛ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached requests for production.

| Place: Weno Process c/o Marcus Lawing 4711 Hope Valley Rd, Ste. 4F-604 Durham, NC 27707 | Date and Time: 03/07/2023 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    02/17/2023

                    *CLERK OF COURT*
                                                OR
    _____          /s/ E. Evans Wohlforth, Jr.
    *Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* __Defendant__ Save On SP, LLC                    , who issues or requests this subpoena, are:

E. Evans Wohlforth, Jr., Gibbons P.C., One Gateway Center, Newark, NY 07102-5310

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 22-2632 (JMV) (CLW)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2) For Other Discovery.** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2) Command to Produce Materials or Permit Inspection.**
   **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3) Quashing or Modifying a Subpoena.**
   **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
   **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
   **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2) Claiming Privilege or Protection.**
   **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

David Elsberg
Andrew R. Dunlap
Meredith Nelson
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

E. Evans Wohlforth, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., | Civil Action No. 22-2632 (JMV) (CLW) |
| Plaintiff, | **NOTICE OF SUBPOENA FOR THE PRODUCTION OF DOCUMENTS** |
| v. | |
| SAVE ON SP, LLC, | |
| Defendant. | |

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26, 34, and

45 Defendant Save On SP, LLC ("SaveOnSP") requests TrialCard Inc. ("TrialCard"), to produce

for inspection and copying the documents listed in these Requests, to the office of the undersigned

1

within 30 days of being served or at a time and place mutually agreed by the parties or ordered by the Court.

      **PLEASE TAKE FURTHER NOTICE** that this demand for production of documents shall be deemed continuing in nature to require supplemental responses if Plaintiff or Plaintiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's responses are served.


Dated:  February 17, 2023        By:  /s/ E. Evans Wohlforth, Jr._____
                    E. Evans Wohlforth, Jr.
                    GIBBONS P.C.
                    One Gateway Center
                    Newark, NJ 07102-5310
                    973-596-4500
                    ewohlforth@gibbonslaw.com

                    David Elsberg
                    Andrew R. Dunlap
                    Meredith Nelson
                    SELENDY GAY ELSBERG, PLLC
                    1290 Avenue of the Americas
                    New York, NY 10104
                    212-390-9000
                    deslberg@selendygay.com
                    adunlap@selendygay.com
                    mnelson@selendygay.com

                    *Attorneys for Defendant Save On SP, LLC*

## DEFINITIONS

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses.

3.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.      "Action" means this litigation styled as "*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (JMV) (CLW).

6.      "Affordable Care Act" means the Patient Protection and Affordable Care Act, Pub. L. 148, 124 Stat. 119.

7.      "All," "any," and "each" mean any and all.

8.      "And" and "or" are construed both conjunctively and disjunctively.

9.      "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

3

10.    "CarePath Care Coordinator" means any person or entity encompassed by that term as used on CarePath's "Contact Us" webpage,[1] as well as any person responsible for communicating with patients who contact CarePath via an advertised help number (*e.g.*, 877-CarePath).

11.    "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

12.    "Complaint" means JJHCS's May 4, 2022 Complaint [ECF No. 1] or any subsequently amended Complaint in this Action.

13.    "Copay Accumulator Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

14.    "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

15.    "Copay Maximizer Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay

---

[1] *See* Contact Us, https://www.janssencarepath.com/patient/contact-us (last visited October 25, 2022).

assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maxi-mizer."

16.    "<u>Document</u>" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

17.    "<u>Essential Health Benefit</u>" means, in the context of prescription drug benefits at issue in this case, (a) a prescription drug benefit that satisfies the requirement for a plan to provide essential prescription drug benefits under the Affordable Care Act or that is treated as such by a plan;[2] and (b) any definition JJHCS ascribes to the term "essential health benefit" as used in the Complaint.

18.    "<u>Identify</u>" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

19.    "<u>Including</u>" means including but not limited to.

20.    "<u>Janssen</u>" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons

---

[2] 45 C.F.R. §§ 156.122, 156.115.

or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc.,

Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

21.    "Janssen Drug" means any Specialty Drug manufactured or sold by Janssen from

any time for which patients may receive copay assistance, including BALVERSA, DARZALEX,

DARZALEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, REMICADE, RYBREVANT,

SIMPONI, STELARA, TRACLEER, TREMFYA, UPTRAVI, and ZYTIGA, as well as any other

specialty drugs that JJHCS asserts are at issue in this Action.

22.    "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all pre-

decessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or depart-

ments, agents, representatives, directors, officers, employees, committees, attorneys, accountants,

and all persons or entities acting or purporting to act on behalf or under the control of Johnson &

Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil

Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals,

Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development,

LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc.,

Janssen BioPharma LLC, and Janssen Research & Development LLC.

23.    "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer,

in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors

and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments,

agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all

persons or entities acting or purporting to act on behalf of such an entity.

24.     "Lash Group" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

25.     "Non-Essential Health Benefits" means, in the context of prescription drug benefits at issue in this case, (a) any prescription drug benefit covered by a plan in excess of those necessary for a plan to satisfy the requirements for providing essential prescription drug health benefits under the Affordable Care Act[3] and designated by the plan as a non-essential health benefit; and (b) any definition JJHCS ascribes to the term "non-essential health benefits" as used in the Complaint.

26.     "Patient" means a natural person prescribed or eligible to be prescribed any Janssen Drug, whether or not they use CarePath or are a participant in a health plan advised by SaveOnSP.

27.     "Person" means a natural person or legal entity including any business or governmental entity or association.

28.     "Regarding" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

29.     "Request" means any of these Requests for Production.

---

[3] *See* 45 C.F.R. §§ 156.122, 156.115.

30.     "<u>SaveOnSP</u>" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Save On SP, LLC.

31.     "<u>Specialty Drug</u>" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

32.     "<u>Stelara</u>" means the Janssen Drug sold under that name.

33.     "<u>Tremfya</u>" means the Janssen Drug sold under that name.

34.     "<u>TrialCard</u>" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

35.     "<u>TrialCard's Employee Health Plans</u>" means any health plan offered by TrialCard to its employees.

36.     "<u>You</u>" and "<u>Your</u>" means TrialCard.

## **INSTRUCTIONS**

1.     These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii).

2.     These Requests seek production of nonprivileged material. Fed. R. Civ. P. 26(b)(1).

3.     These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4.     For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 45(d)(2)(B).

5.    An objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. Fed. R. Civ. P. 45(d)(2)(B).

6.    If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection.

7.    If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest.

8.    If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 45(e)(2)(A), including by indicating whether any document exists regarding the information requested and stating, to the extent the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked, Local Rule 34.1.

9.    If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction, the reason for its destruction, the name of the person who requested or authorized its destruction, and the name of the person who destroyed it.

10.    Produce documents as they are kept in the usual course of business or in a form specified in this subpoena. Fed. R. Civ. P. 45(e)(1)(b). For each document, identify the file or

9

location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

11.     Produce electronically stored information in the form and manner required by any agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

12.     Produce each document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

13.     Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notations, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

14.     These Requests are deemed continuing. If after responding to any Request you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner.

## TIME PERIOD

Unless otherwise specified, these Requests cover from and including January 1, 2017, through the present.

## REQUESTS

1.     From January 1, 2009 through the present, Documents sufficient to show the organizational structure of TrialCard.

2.     From January 1, 2009 through the present, Documents sufficient to show the organizational structure of any group or division within TrialCard involved in developing, managing, marketing, or administering CarePath and to identify their employees.

3.     All Documents and Communications with or regarding SaveOnSP, including those between You and JJHCS, You and any patients, and You and any other Hub Entity.

10

4.      From January 1, 2009 through the present, all Documents and Communications regarding the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

5.      From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) revisions to any of the CarePath terms and conditions for any Janssen Drug; and (d) Your understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

6.      From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

7.      From January 1, 2015 through the present, all Documents and Communications regarding Your understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

8.      All Documents and Communications regarding SaveOnSP's communications with Patients regarding CarePath, including allegedly misleading or confusing communications and JJHCS's allegations in Complaint ¶¶ 60-67, 109, ¶¶ 13, 75-77, 85-88.

9.     All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including JJHCS's allegations in Complaint ¶ 72.

10.     All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

11.     All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including JJHCS's allegations in Complaint ¶ 114.

12.     All Documents and Communications regarding any alleged harm caused by SaveOnSP to any Patient by allegedly making their healthcare more expensive, including JJHCS's allegations in Complaint ¶ 114.

13.     All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

14.     All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

15.     All Documents and Communications regarding any alleged harm caused by SaveOnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 110, 115.

12

16.    All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

17.    All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

18.    From January 1, 2009 through the present, for each Janssen Drug for each year, Documents sufficient to show:

  a. all Patients receiving the Janssen Drug;

  b. the number of fills of the Janssen Drug received by each such Patient;

  c. the dosage of the Janssen Drug received by each such Patient for each fill;

  d. the projected number of Patients, average number of fills, and average dosage for the Janssen Drug;

  e. the cost to manufacture the Janssen Drug;

  f. the sales and marketing budget for the Janssen Drug;

  g. the price of the Janssen Drug;

  h. the revenue received by JJHCS from the Janssen Drug;

  i. all Patients enrolled in the CarePath program for the Janssen Drug;

  j. the dates on which each Patient was enrolled in CarePath;

  k. the amounts of copay assistance funds that JJHCS offered to each Patient enrolled in CarePath;

  l. the Janssen Drugs for which each Patient enrolled in CarePath received copay assistance; and

m.    all copay assistance payments that JJHCS made to or on behalf each Patient enrolled in CarePath.

19.    From January 1, 2009 through the present, for each Janssen Drug for each year, all Documents and Communications regarding:

a.    JJHCS's determination of the amounts of copay assistance funds that JJHCS offered to Patients enrolled in CarePath, including the determination of the maximum program benefit per calendar year for the Janssen Drug;

b.    JJHCS's budget for CarePath, including the sales and marketing budget;

c.    JJHCS's actual and projected annual costs for CarePath;

d.    JJHCS's use of or accounting for unused CarePath funds;

e.    the impact of the Affordable Care Act on JJHCS's CarePath budget or funding, including the impact of laws and regulations regarding out-of-pocket maximums;

f.    JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath;

g.    the impact of CarePath on Janssen's sales of any Janssen Drug;

h.    the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

i.    JJHCS's or Janssen's actual and projected return on investment for CarePath; and

j.    any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by SaveOnSP.

20.    All Documents and Communications regarding JJHCS's attempts to limit or elim-
inate the amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya
based on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs,
including Documents and Communications regarding JJHCS's attempts to limit or eliminate the
availability of CarePath copay assistance funds available to Patients enrolled in health plans ad-
vised by SaveOnSP.

21.    All Documents and Communications regarding any offer by JJHCS to provide to
any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath
Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance
funds available to a Patient.

22.    All Documents and Communications regarding JJHCS's attempts to identify health
plans advised by SaveOnSP or Patients enrolled in such plans.

23.    From any time, all Documents and Communications regarding TrialCard's negoti-
ations or agreements regarding the potential use of any Copay Maximizer Service or Copay Ac-
cumulator Service, for TrialCard's Employee Health Plans, including any abandonment of those
negotiations or agreements.

24.    Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coor-
dinators.

25.    From January 1, 2009 through the present, Documents sufficient to show the eco-
nomic terms of JJHCS's retention of or agreements with You, including any assessment of the fair
market value of those services.

26.    From January 1, 2009 through the present, documents sufficient to show the percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs.

27.    From January 1, 2015 through the present, all Documents and Communications relating to Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's return on investment for copay assistance dollars.

28.    From January 1, 2015 through the present, all Documents and Communications relating to Your understanding of the terms "copay accumulator" and "copay maximizer."

29.    All Documents and Communications concerning non-medical switching by participants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

30.    Your document retention policies.

31.    Complete data dictionaries for any data that You produce.

32.    From any time, all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP, including in response to subpoenas served in this Action.

# Exhibit 1

SILLS CUMMIS & GROSS P.C.
Jeffrey J. Greenbaum
Katherine M. Lieb
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (*pro hac vice* forthcoming)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., | : | Civil Action No. |
| | : | |
| Plaintiff, | : | Jury Trial Demanded |
| vs. | : | |
| SAVE ON SP, LLC, | : | **COMPLAINT** |
| Defendant. | : | |

Plaintiff Johnson & Johnson Health Care Systems Inc. ("JJHCS"), having an address at

425 Hoes Lane, Piscataway, New Jersey 08854, for its Complaint against Defendant Save On

SP, LLC, 611 Jamison Road, Elma, New York 14059 ("SaveOnSP"), alleges as follows:

**PRELIMINARY STATEMENT**

1.     JJHCS brings this action to stop SaveOnSP's scheme to pilfer tens of

millions of dollars from the financial support program that JJHCS provides for patients.  The

patient assistance that JJHCS provides is for *patients*—not for SaveOnSP or the health plans with

which it partners.  By targeting and exhausting those funds for the benefit of its (and its partners') bottom line, SaveOnSP is increasing the cost of, and will ultimately render it untenable to provide, the assistance that patients desperately require.  That will irreparably harm JJHCS and the patients it serves.

2.      As a subsidiary of Johnson & Johnson, JJHCS provides funds to help commercially insured patients afford the costs of valuable and life-saving therapies.  Those costs include the co-payments ("copays")[1] that insurance companies and private health plans ("payers") insist must be paid by patients to obtain their prescription drugs.  Study after study has shown that many patients cannot afford such copays, and will be forced to forgo vital treatments unless help is provided to meet those obligations.  JJHCS provides that support through its patient assistance program.  However, with the deliberate intent to manipulate and thwart the purpose of JJHCS's program, SaveOnSP devised and implemented a scheme (the "SaveOnSP Program") to inflate and misappropriate the funding JJHCS provides for patients by interfering with the contractual relationship between JJHCS and patients.

3.      SaveOnSP's scheme works by (i) circumventing statutory constraints on the level of copay costs that payers may require patients to pay for pharmaceuticals; (ii) inflating patients' copay costs in order to increase the funds extracted from JJHCS's patient assistance program and thereby reduce the portion of the drug cost that the payers otherwise would have to pay to the pharmacy; (iii) using this artificially inflated copay cost to coerce patients to enroll in a program run by SaveOnSP, in addition to, and in violation of the terms of, JJHCS's patient

---

[1]  In this Complaint, the term "copay" is generally meant to encompass both an out-of-pocket fixed amount paid by the patient at the point of sale, as well as "co-insurance," or an out-of-pocket percentage of the cost of the product or service paid by the patient at the point of sale.

assistance program; and (iv) leveraging its illicit SaveOnSP Program to surreptitiously extract inflated amounts of patient assistance.

4. Through this artifice, SaveOnSP enriches the payers with which it partners by (a) reducing the amount they pay to pharmacists for each prescription in the SaveOnSP Program, and (b) increasing by a commensurate amount the costs to the JJHCS patient assistance program. In return for this exploitation and interference with JJHCS's program, the payers reward SaveOnSP with a 25% commission on their "savings."

5. As a result, the costs to JJHCS of providing patient support have exploded. SaveOnSP has caused JJHCS to pay at least $100 million more in copay assistance than it otherwise would have for a purpose JJHCS did not intend, depleting the support available for patients who cannot afford their rising copays. SaveOnSP knows this, and nonetheless has maliciously pursued this scheme to cause harm to JJHCS and the patients it supports while lining its own pockets.

**Patient Out-of-Pocket Obligations & JJHCS's Patient Assistance**

6. JJHCS does not and cannot control the price that a patient is asked to pay at a pharmacy when the patient goes to retrieve her or his medication. Rather, a patient's copay cost is determined and imposed by private payers and their affiliated entities. In recognition of the increasing costs that patients have faced at the pharmacy, since 2016, JJHCS has provided assistance to more than 2 million patients in order to help them defray their copay costs and more easily afford their life-saving and life-improving therapies.

7. The patient assistance program at issue here, the Janssen CarePath Program ("CarePath"), provides a portfolio of support services for patients using medications researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen Biotech Inc., Janssen Pharmaceuticals, Inc, Janssen Products, LP, and Actelion

3

Pharmaceuticals U.S., Inc. (collectively, "Janssen"). These medications include complex biologic treatments for various cancers and serious immunological conditions. Without JJHCS's assistance, many patients would be unable to afford their medications, potentially leading them to discontinue treatment, reducing their quality of life, and sometimes shortening their lives.

### SaveOnSP's Actions Interfere with JJHCS's Patient Assistance

8.     SaveOnSP knows that JJHCS funds patient assistance programs like CarePath to ease the burden on patients.[2]   Nevertheless, SaveOnSP has planned and executed a scheme to exploit, interfere with, and ultimately render it untenable for JJHCS to continue the CarePath program by inflating patients' copay obligations to coerce patients to enroll in SaveOnSP's own program—in violation of CarePath's terms and conditions.

9.     The SaveOnSP Program at the heart of SaveOnSP's scheme works by first changing the designation of Janssen's drugs—including live-saving cancer drugs and other critical medications—from "essential health benefits" to non-essential health benefits under the Affordable Care Act ("ACA"). Working in tandem with its payer partners, the SaveOnSP Program reclassifies the medications as non-essential *without regard to patients' actual medical needs and solely for SaveOnSP's own profit motives*. Indeed, in a recorded presentation available online, a SaveOnSP Program representative admits: "The moment we reclassify these as non-essential we get to operate outside of those rules, which removes the limitations for how high we set the copay, it removes the requirement to apply copay assistance dollars to the max out-of-pocket. And that's what allows us to be the *most lucrative* in terms of driving savings for SaveOn." *See* David Cook, *IPBC and SaveonSP Training-20210216 1901-1*, VIMEO, at 23:35 (Feb 17, 2021), https://vimeo.com/513414094 (hereinafter, *SaveOnSP IPBC Video*).

---

[2]  SaveOnSP is well-versed in JJHCS's program, as its founder is a former Johnson & Johnson employee, and its CEO is also a former Johnson & Johnson employee.

10.     Once the SaveOnSP Program re-categorizes a drug as a non-essential health benefit, it is no longer subject to the ACA's annual out-of-pocket maximum that limits how much patients with private insurance can be required to pay for their medical care each year. The out-of-pocket maximum rule is meant to prevent patients from being forced to choose between vital medication and other necessities of life, such as food, clothing and housing.  In direct contravention to this legislative intent, by reclassifying certain medications as non-essential health benefits, the SaveOnSP scheme allows the payer to continue to charge the patient inflated copay costs even where the patient has already satisfied their out-of-pocket maximum as indicated during the SaveOnSP Program presentation:



*Id.* at 24:00.  In addition, after removing a given drug from the purview of the ACA's out-of-pocket maximum, the SaveOnSP Program increases the patient's copay for the given drug to an artificially high amount—often thousands of dollars per dose.  As explained by the SaveOnSP Program representative, "[I]n order for us to capitalize on this copay assistance funding, *we have to have that inflated copay upfront to bill to copay assistance.*"  *Id.* at 49:26.

11.     Further, in deciding which drugs to include in its program, SaveOnSP targets drugs that "*have the most lucrative copay assistance programs,*" programs like CarePath.  *Id.* at

13:31.[3]  Once it has included those drugs in the SaveOnSP Program and the drug's copay has

been inflated, SaveOnSP then targets patients who take the drug, using the threat of an inflated

copay to coerce them into enrolling in the SaveOnSP Program.   Specifically, SaveOnSP tells

each patient that unless she enrolls in the SaveOnSP Program, she will have to pay the inflated

copay herself—and, making matters worse, the SaveOnSP Program will not count the thousands

she pays toward her deductible or out-of-pocket maximum.   SaveOnSP's offer is illustrated in

marketing materials available online:



*Pay $0 for Select Specialty Medications*, Cigna (Aug. 2021), https://hr.richmond.edu/benefits/

insurance/medical-plans/pdf/SaveonSP.pdf (last visited Apr. 27, 2022).

---

[3] Similarly, in the same recorded presentation, the SaveOnSP Program representative admits that the program works only if they are able to extract patient assistance: "In order for us to leverage the savings, the member has to actively enroll in copay assistance.   ***That's where the savings comes from***."  *SaveOnSP IPBC Video*, *supra* ¶ 9, at 49:27.

12.    SaveOnSP engages in a concerted effort to communicate this coercive offer to patients, including through phone calls and letters.  This outreach campaign is illustrated by a SaveOnSP Program slide deck available online:



*Copay Assistance Program & Solutions*, EXPRESS SCRIPTS, at 9 (2019), https://pebp.state.nv.us/wp-content/uploads/2020/03/7.-Combined-for-website.pdf.

13.    SaveOnSP even goes so far as to enlist the help of the pharmacy to reject a patient's claim for their prescription medication at the point of sale—to tell the patient that insurance will not cover their prescription even though that medication is in fact covered—in order to get the patient on the phone with SaveOnSP so that a representative can pressure the patient to enroll in the SaveOnSP Program.  This is highlighted in another SaveOnSP Program slide deck, which admits engineering a ***"[p]oint of sale claim rejection"*** to "facilitate warm transfer of member to SaveonSP":



*Human Resources Committee Meeting*, VILLAGE OF LINDENHURST ILLINOIS, at 69 (Mar. 11, 2021), https://www.lindenhurstil.org/egov/documents/1615238827_33717.pdf.

14.     Of course, a choice between paying nothing for badly needed medication, or paying thousands of dollars for that medication out of pocket, is—for most patients—no choice at all.  Indeed, many patients choose health plans precisely based on which plan purports to cover their necessary medications.  Unsurprisingly, therefore, once SaveOnSP's offer is communicated to the patients, most are coerced into accepting:  "[T]hat's often compelling enough for members to say, 'oh wait, I want my drugs for free.'"  *SaveOnSP IPBC Video*, *supra* ¶ 9, at 46:25.

15.     But while SaveOnSP is telling patients that their therapy will be "free" if they enroll in the SaveOnSP Program, what SaveOnSP is really doing is also enrolling them in

CarePath so that the cost of the artificially inflated copay is born by JJHCS and the entirety of the funds JJHCS makes available via patient assistance are drained.  This is revealed when the SaveOnSP Program representative admits that patients may see an inflated copay on their "invoice paperwork," but "they will not be charged" that amount.  *Id.* at 43:38; *see also, e.g.*, *Albuquerque Public Schools Summary of Benefits*, EXPRESS SCRIPTS, at 2 (2021), https://www.aps.edu/human-resources/benefits/documents/2021-summary-of-benefits/express-scripts-summary-of-benefits   (stating that the cost of drugs for patients enrolled in SaveOnSP "will be reimbursed by the manufacturer").

16.     Further, while SaveOnSP walks the patient through the process of enrolling in programs like CarePath, SaveOnSP does not tell patients that CarePath is already available to them without enrollment in the SaveOnSP Program, and already reduces patients' out-of-pocket costs to $10, $5, or even $0.  In other words, the SaveOnSP Program exists not to benefit patients, but solely to wrongfully meet the payer's obligation to the patient using the cost support made available by JJHCS for SaveOnSP's own profit.

17.     The SaveOnSP Program does not change the amount the pharmacist receives for a prescription.  It decreases the portion that the payer pays of that amount, and increases the portion that the patient pays with patient assistance dollars.  The payers' "savings" is actually the increased amount that payers withhold from pharmacists because the payers foist the obligation onto patients, who will use CarePath dollars to pay it.  SaveOnSP then calculates the payers' "savings"—actually, the value the payer has gained by virtue of displacing its payment obligation to JJHCS—and charges the payer a fee of 25%.

**SaveOnSP Disregards the Terms and Conditions of JJHCS's Program**

18.     SaveOnSP's scheme is expressly prohibited by the CarePath terms and conditions, which do not allow the program to be used in connection with any "other offer" like

9

the SaveOnSP Program. *See, e.g.*, DARZALEX® Savings Program (Sept. 2021), https://www.

janssencarepath.com/sites/www.janssencarepath-v1.com/files/darzalex-faspro-yondelis-savings-

program-overview.pdf.

19. The SaveOnSP Program is such an "offer." The SaveOnSP representative

expressly refers to the SaveOnSP Program in her presentation as the "SaveOn **offering**,"

*SaveOnSP IPBC Video*, *supra* ¶ 9, at 4:25; 27:31, and marketing materials state "That's why

your plan **offers** a program called SaveOnSP, which can help lower your out-of-pocket costs to

$0." *See Pay $0 for Select Specialty Medications*, *supra* ¶ 11 (emphasis added).

20. SaveOnSP is well aware of this prohibition on other offers because it

monitors drug manufacturers' patient assistance terms and conditions. *See SaveOnSP IPBC

Video*, *supra* ¶ 9, at 31:59. Nevertheless, SaveOnSP continues to coerce patients into signing up

for and using the SaveOnSP Program—thereby inducing those patients to breach the terms and

conditions of their CarePath agreement with JJHCS.

21. SaveOnSP's scheme harms patients in a number of ways, including by

selecting drugs for coverage based upon a profit motive and not medical need; wrongfully

engineering a denial of coverage at the point of sale to coerce patients to participate in the

program; and not counting any of the funds spent on patients' medication towards their ACA

maximum or deductible, thereby making their other healthcare needs more expensive.

22. Further, by imposing on JJHCS inflated costs that are not tethered to actual

patient need, SaveOnSP's scheme ultimately will make it cost prohibitive for JJHCS to offer

patient assistance. This result is aligned with the interest of payers, which have used a variety of

tactics—widely condemned by patient advocacy groups[4]—to deprive patients of the benefits of patient assistance. As payers well know, eliminating patient assistance will result in patients seeking less medicine than they otherwise need and would obtain, which would in turn increase payers' profits.[5]

23.     SaveOnSP's scheme also harms JJHCS. SaveOnSP depletes the CarePath funds intended to help patients afford their Janssen medication, and causes JJHCS to pay out thousands of dollars more per patient in CarePath funds than it otherwise would pay, solely for SaveOnSP's and its partners' profit.

24.     SaveOnSP concedes this misappropriation and diversion. Marketing materials for the SaveOnSP Program tout the "savings" that it generates for payers. For example, one health plan projected $600,000 in annual "savings" from implementing the SaveOnSP Program. *See SaveOnSP for Specialty Medications*, VALLEY CENTER PAUMA UNIFIED SCHOOL DISTRICT, https://vcpusd.learning.powerschool.com/c/1720900/file/show/ 159819292; *see also Copay Assistance Program & Solutions*, *supra* ¶ 12, at 8 (projecting $1.9

---

[4] For instance, the "All Copays Count Coalition," made up of more than 60 groups representing patients with serious and chronic health conditions, has engaged in a concerted effort to stop payer use of "accumulators," programs that identify patient assistance funds and refuse to count them toward the patient's deductible or out-of-pocket maximum. *See New Insurance Policies Are Targeting Vulnerable Patients with High Copays*, NAT'L HEMOPHILIA FOUND., https://www.hemophilia.org/advocacy/federal-priorities/make-all-copays-count#ACCC (last visited Apr. 27, 2022). Accumulators and the harms they cause to patients are discussed in greater detail in Section III, *infra*.

[5] Certain payers have argued that copay assistance programs artificially increase payers' costs by "incentivizing patients to take brand-name drugs instead of cheaper bioequivalent generics" or even by incentivizing patients to take medications they do not require. *See, e.g.,* Tomas J. Philipson et al., *The Patient Impact of Manufacturing Copay Assistance in an Era of Rising Out-of-Pocket*, UNIV. CHI. (Dec. 2021), at 18, https://cpb-us-w2.wpmucdn.com/voices.uchicago.edu/ dist/d/3128/files/2021/12/2021_12_15-Copay-Assistance-Final-Draft-Clean.pdf (last visited Apr. 27, 2022). Beyond the absurdity of suggesting that copay assistance causes a patient suffering from cancer to take a cancer therapy they do not require, this argument overlooks that copay assistance is often used for specialty drugs without a generic substitute. *Id.*; *see infra* ¶ 34.

million in "savings" in 2020 for one health plan from implementing SaveOnSP); *Copay Assistance Strategy Reduces Financial Burdens for Plans and Patients*, EVERNORTH (Oct. 7, 2021), https://www.evernorth.com/articles/reduce-costs-for-health-care-plans-with-copay-program-assistance (advertising that "[i]n 2020, plans that participated in these copay assistance solutions [like the SaveOnSP Program] experienced a specialty [drug cost] trend of -7.2%, while nonparticipating plans experienced an 8.7% specialty [drug cost] trend.").  But in fact, these "savings" are simply diverted CarePath funds that were intended to benefit patients, not payers.

25.     Patient assistance does not exist so that SaveOnSP can enrich payers further while taking a cut itself.  Indeed, payers already negotiate enormous price concessions from manufacturers, including rebates that manufacturers pay when a patient fills a prescription.  In 2021 alone, Janssen paid more than $8 billion in rebates, discounts, and fees to commercial insurers and pharmacy benefit managers.  *See The 2021 Janssen U.S. Transparency Report*, at 6, https://2021jtr.prod.cmc.jnj-secondary.psdops.com/_document/the-2021-janssen-u-s-transparency-report?id=00000180-0108-dccf-a981-a52ec8300000 (last visited Apr. 27, 2022); *see also Form 10-K*, CIGNA CORP., at 37 (Feb. 24, 2022), https://investors.cigna.com/financials/sec-filings/default.aspx ("We maintain relationships with numerous pharmaceutical manufacturers, which provide us with, among other things: . . . discounts, in the form of rebates, for drug utilization.").  SaveOnSP acknowledges that these payer rebates are a "completely different set of funds" from *patient* assistance—which, SaveOnSP further acknowledges, is made available pursuant to "an agreement between the member and the manufacturer." *SaveOnSP IPBC Video*, *supra* ¶ 9, at 24:32-24:50.  By tortiously interfering with that agreement between JJHCS and patients, SaveOnSP wrongfully enables payers to "double-dip" into both manufacturer rebates and copay assistance.

12

26.     SaveOnSP should not be permitted to profiteer on the backs of patients by exploiting JJHCS's patient assistance. SaveOnSP should therefore be enjoined from including Janssen drugs in the SaveOnSP Program, and should be ordered to compensate JJHCS for the funds it caused to be wrongfully extracted from CarePath.

## THE PARTIES

27.     Plaintiff JJHCS is a corporation organized under the laws of the State of New Jersey, with its principal place of business at 425 Hoes Lane, Piscataway, New Jersey 08854. JJHCS is a subsidiary of Johnson & Johnson, and administers CarePath for the benefit of patients who are prescribed medications marketed by other Johnson & Johnson entities that are not fully paid for by private insurance.

28.     Defendant SaveOnSP is a limited liability company organized under the laws of the State of New York, with its principal place of business at 611 Jamison Road, Elma, New York 14059. SaveOnSP advertises and administers its program (the "SaveOnSP Program") in partnership with pharmacy benefits manager Express Scripts, Inc. ("Express Scripts") and specialty pharmacy Accredo Health Group, Inc. ("Accredo"). SaveOnSP has operations, including a call center, in Buffalo, New York. It also makes its client payers sign a joinder agreement governed by the laws of New York, and, on information and belief, accepts payments for its services in New York. Upon information and belief, none of the members of SaveOnSP are citizens of New Jersey.

## JURISDICTION AND VENUE

29.     This Court has personal jurisdiction over SaveOnSP because SaveOnSP has sufficient minimum contacts with New Jersey so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. SaveOnSP actively implements the SaveOnSP Program in New Jersey, including by offering the SaveOnSP

Program to New Jersey payers, and by inducing New Jersey patients to enroll in the SaveOnSP Program.

30.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because "a substantial part of the events or omissions giving rise to the claim" occurred in this judicial district, including SaveOnSP's offering of the SaveOnSP Program to New Jersey payers, New Jersey patients' enrollment in the SaveOnSP Program, violation of CarePath's terms and conditions, and JJHCS's injury as a result of SaveOnSP's wrongful acts.

31.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy in the present action exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs, and complete diversity of citizenship between the parties exists because JJHCS is a citizen of New Jersey, while SaveOnSP's members are not.

## FACTUAL ALLEGATIONS

### I.    The Pharmaceuticals for which JJHCS Offers Support Have Improved and Saved the Lives of Countless Patients

32.     The pharmaceuticals for which JJHCS offers support are essential to patients' health and, in some cases, survival.  These pharmaceuticals include treatments for various forms of cancer (for example, DARZALEX®, ERLEADA®), pulmonary arterial hypertension (for example, OPSUMIT®, TRACLEER®, UPTRAVI®), and various autoimmune disorders (for example, REMICADE®, STELARA®, TREMFYA®).

33.     A significant percentage of CarePath funds are provided for treatments known as "biologics," which are medications developed from living materials, usually cells, and which have complex molecular structures that are not easily definable.  This complexity is in contrast to more conventional medications, which tend to be chemically synthesized and have

14

simpler molecular structures.  Because of this complexity, biologic therapies cannot be precisely copied, meaning that there are no "generic" versions of these molecules that can be substituted for branded products without a physician's prescription, as there are for simpler chemical compounds.[6]  *See also* Tomas J. Philipson et al., *The Patient Impact of Manufacturing Copay Assistance in an Era of Rising Out-of-Pocket*, UNIV. CHI. (Dec. 2021), at 18,  https://cpb-us-w2.wpmucdn.com/voices.uchicago.edu/dist/d/3128/files/2021/12/2021_12_15-Copay-Assistance-Final-Draft-Clean.pdf (last visited Apr. 27, 2022) (noting that "copay cards are used primarily for brand drugs without a generic substitute").

34.     Biologics remain at the cutting edge of medical science, and they are often used to treat life-altering medical conditions for which no other treatments are available. Janssen's biologic treatments are essential to the health of patients in a variety of important therapeutic areas, including immunology, oncology, and pulmonary hypertension.  For example, STELARA® is an immunology biologic used to treat hundreds of thousands of patients in the United States for Crohn's disease, ulcerative colitis, and other chronic health conditions. TREMFYA® is an immunology biologic used to treat joint pain, stiffness, and swelling caused by psoriatic arthritis, as well as painful patches on the skin caused by moderate-to-severe plaque psoriasis.  DARZALEX® is an oncology biologic used to treat multiple myeloma, a form of cancer that targets plasma cells found in bone marrow.  For these and most of Janssen's other

---

[6]   There are "biosimilar" versions of certain biologics on the market.  *See* Biosimilar and Interchangeable Products, FDA, https://www.fda.gov/drugs/biosimilars/biosimilar-and-interchangeable-products (last visited Apr. 27, 2022) ("A biosimilar is a biological product that is highly similar to and has no clinically meaningful differences from an existing FDA-approved reference product.").  A biosimilar may also qualify for a designation by the FDA that it is "interchangeable" with the original branded product.  Currently, there are no FDA-approved interchangeable biosimilars for any Janssen product.

biologic therapies, there are currently no FDA-approved "biosimilar" versions of the same molecule on the market.

35.      Developing these biologics is an expensive and risky venture for Janssen and other pharmaceutical manufacturers.  In order to produce safe and effective biologic treatments, Janssen makes enormous investments in research and development.  Even so, only 1 in 5,000 drug candidates makes it from discovery to market, and even for successful drugs, the entire process takes approximately 10 to 12 years.  Further adding to the expense, biologics require rigorous quality control during the manufacturing process, as they are sensitive to even minute changes in raw materials and can be compromised by changes in temperature or microbial contamination.  Manufacturing biologics thus requires specialized manufacturing equipment and facilities.  Without manufacturers like Janssen who are willing to take on these risks and costs, innovative and life-saving biologic treatments would not be available to patients suffering from a range of diseases.

## II.    CarePath Offers Patients Thousands of Dollars in Financial Assistance to Help Defray Out-of-Pocket Costs that Limit Access to Medication

36.      Patients with private commercial health insurance, especially those with acute complex medical conditions, are increasingly subject to higher and higher cost-sharing obligations imposed by their insurers, making it harder for patients to access medications prescribed by their doctors.

37.      Health insurance plan sponsors do not typically determine these obligations alone.  Rather, they contract with entities known as "Pharmacy Benefits Managers" or "PBMs."  PBMs are companies that manage prescription drug benefits on behalf of health insurance plans.  They often serve as middlemen with an aim towards increasing insurers' and their own profits by

determining which drugs a plan will cover and to what extent they will be covered. Express Scripts, Inc. is a PBM.

38.     PBMs are also often part of even larger, vertically integrated organizations that offer other services in the health insurance field. For example, such organizations may offer health insurance themselves or operate specialty pharmacies, i.e., pharmacies that dispense complex pharmaceuticals like biologics that require special handling and care. Express Scripts, for example, is itself a subsidiary of the major insurance company Cigna.

39.     In their role as middlemen, PBMs have presided over the rise of high cost-sharing insurance plans, which feature higher than usual deductibles, copays, and co-insurance. In essence, these plans pressure patients to limit their medical expenses by covering the full cost only after significant contributions by the patients. For instance, when a patient's health plan has a deductible, he or she must pay the entire price for the drug until the deductible threshold is met. Only once the deductible is met will the payer help the patient pay for the drug, at which point the patient may still pay either a fixed amount known as a copay, or a percentage of the drug's price, known as co-insurance.

40.     Health plans with deductibles for prescription medications are becoming more common. Between 2012 and 2017, the share of employer-sponsored health plans requiring patients to meet a deductible for prescription medications rose from 23% to 52%. *See Faced with High Cost Sharing for Brand Medicines, Commercially Insured Patients with Chronic Conditions Increasingly Use Manufacturer Cost-Sharing Assistance*, PhRMA, at 3 (Jan. 29, 2021), https://phrma.org/-/media/Project/PhRMA/PhRMA-Org/PhRMA-Org/PDF/D-F/Faced-with-High-Cost-Sharing-for-Brand-Medicines.pdf.

17

41.     These high-cost sharing models have been found to discourage patients from filling their prescriptions and can lead to abandonment of treatment.  *See, e.g.*, Katie Devane et al., *Patient Affordability Part Two: Implications for Patient Behavior & Therapy Consumption*, IQVIA (2018), https://www.iqvia.com/locations/united-states/library/case-studies/patient-affordability-part-two (finding that 52% of new patients with an out-of-pocket cost of $125 to $250 abandoned treatment, and 69% of new patients with an out-of-pocket cost of $250.01 abandoned treatment); Jalpa A. Doshi et al., *Association of Patient Out-of-Pocket Costs With Prescription Abandonment and Delay in Fills of Novel Oral Anticancer Agents*, JOURNAL OF CLINICAL ONCOLOGY (Dec. 20 2017), https://ascopubs.org/doi/abs/10.1200/JCO.2017.74.5091 (finding that abandonment of oral cancer treatment increased from 10% for patients with a $10 out-of-pocket cost or less to 31.7% for patients with a $100.01 to $500 out-of-pocket cost, 41% for patients with a $500.01 to $2,000 out-of-pocket cost, and 49.4% for patients with an out-of-pocket cost exceeding $2,000); Michael T. Eaddy, *How Patient Cost-Sharing Trends Affect Adherence and Outcomes*, PHARMACY & THERAPEUTICS (Jan. 2012), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3278192/ (conducting literature review of 160 articles from January 1974 to May 2008 and finding that "85% showed that an increasing patient share of medication costs was significantly associated with a decrease in adherence").

42.     Patient abandonment of prescribed medication is a serious, potentially fatal problem.  It is associated with "poor therapeutic outcomes, progression of disease, and an estimated burden of billions per year in avoidable direct health care costs."  Aurel O. Iuga & Maura J. McGuire, *Adherence and Healthcare Costs*, 7 RISK MGMT. HEALTHCARE POLICY 35 (Feb. 2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3934668/.

18

43.     In order to limit the negative effects of inflated out-of-pocket costs, the ACA places annual limits on the amount of out-of-pocket costs a payer can force a patient to pay for so-called "essential health benefits," which includes many prescription drugs.  *See* 45 C.F.R. § 156.130(a).  For example, the annual ACA out-of-pocket maximum for the 2022 plan year is $8,700 for an individual and $17,400 for a family.  *See Out-of-Pocket Maximum/Limit*, HEALTHCARE.GOV,     https://www.healthcare.gov/glossary/out-of-pocket-maximum-limit/     (last visited Apr. 27, 2022).  Nevertheless, that threshold is high enough that many patients would still be unable to afford the costs of their medication without help.

44.     Thus, in the face of these ever-increasing cost-share obligations, financial assistance like that provided by JJHCS has become an important safety net helping patients pay for necessary medications.  *See The Patient Impact of Manufacturing Copay Assistance in an Era of Rising Out-of-Pocket*, *supra* ¶ 33, at 2 (explaining that "[m]anufacturer copay assistance is a tool to ensure drug affordability in response to higher list prices and shifts in benefit design that put more out-of-pocket burden on commercial patients" and that "[w]ithout copay assistance, . . . OOP spending would have increased 3.4 percent from 2015 to 2019, growing from $46.6 billion to $48.2 billion.  However, due to the growing use of copay cards in response to growing OOP exposure, patients faced a lower OOP burden, so actual OOP spending paid by patients was lower and decreased 6.3 percent, from an estimated $38.6 billion to $36.2 billion").  Such financial assistance is offered in the form of programs providing patients with coupons or a card that they can then use when purchasing their prescription medications.

45.     Patients with chronic illnesses are increasingly reliant on patient assistance to afford their medications.  For example, in 2019, 32% of patients filling brand-name oncology medicines used patient assistance, as did 45% of patients filling brand-name depression

medicines, 55% of patients filling brand-name HIV medicines, and 70% of patients filling brand-name multiple sclerosis medicines. *Faced with High Cost Sharing for Brand Medicines, Commercially Insured Patients with Chronic Conditions Increasingly Use Manufacturer Cost-Sharing Assistance*, *supra* ¶ 40, at 6. Without patient assistance, average patient out-of-pocket costs for brand medicines would have been 225% to 1,096% higher in 2019, depending on the illness category. *Id.* at 7; *see also The Patient Impact of Manufacturing Copay Assistance in an Era of Rising Out-of-Pocket*, *supra* ¶ 33, at 2 (noting that "[c]opay cards are even more important to offset high-cost exposures for patients taking specialty drugs as 50 percent of patients taking a specialty brand drug use copay cards versus 33 percent of patients on traditional brand drugs. The savings from copay cards lead patients to have similar final OOP costs between specialty drugs and traditional drugs due to an average savings of $1,548 for specialty drugs and only $414 for traditional drugs"). On average, patient assistance helped patients taking brand HIV and oncology medicines with more than $1,600 in costs, and patients taking brand MS medicines with more than $2,200 in costs. *See Faced with High Cost Sharing for Brand Medicines, Commercially Insured Patients with Chronic Conditions Increasingly Use Manufacturer Cost-Sharing Assistance*, *supra* ¶ 40, at 7.

46.     These savings are critical to improving and saving the lives of patients who have private insurance without causing them to choose between treatment and other necessary expenditures, such as food, clothing and housing. Multiple studies have found that when manufacturers help patients pay their out-of-pocket costs, patients are more likely to obtain their medication and adhere to their treatment regimens. *See, e.g.*, Anna Hung et al., *Impact of Financial Medication Assistance on Medication Adherence: A Systematic Review*, 27 J. MGMT. CARE SPECIALTY PHARM. 924 (July 2021); *The Patient Impact of Manufacturing Copay*

*Assistance in an Era of Rising Out-of-Pocket*, *supra* ¶ 33, at 4 ("[A]ffordability offered by copay assistance has resulted in increased utilization of needed drugs. . . . Copay cards lower the out-of-pocket costs for patients leading them to increase their utilization by 4.8 to 16.7 percent."); Matthew Daubresse et al., *Effect of Prescription Drug Coupons on Statin Utilization and Expenditures: A Retrospective Cohort Study*, 37 PHARMACOTHERAPY 12 (Jan. 2017), https://accpjournals.onlinelibrary.wiley.com/doi/10.1002/phar.1802.

47.      CarePath helps patients afford out-of-pocket costs for 44 Janssen drugs.  For most of these drugs, CarePath offers patients up to $20,000 in assistance towards their out-of-pocket costs per calendar year.  This assistance is meant not only to help patients afford their out-of-pocket costs for medications, but also to help patients meet their deductible and ACA out-of-pocket maximums, thereby allowing patients to more easily afford their healthcare overall.

48.      To be eligible for CarePath, patients must meet certain criteria set forth in CarePath's terms and conditions.  Relevant here, patients using CarePath must be enrolled in commercial or private health insurance (not, for example, Medicare).  For some drugs, patients agree to pay $5 or $10 themselves at the point of sale.  Also, the terms state that CarePath "may not be used with any other coupon, discount, prescription savings card, free trial, or ***other offer***." (emphasis added).  And patients agree that they "meet the program requirements every time [they] use the program."  *See, e.g.*, DARZALEX® Savings Program, *supra* ¶ 18.

49.      Patients may enroll in CarePath online using the MyJanssenCarePath.com website, by phone, or via mail or fax by filling out and sending an enrollment form.  Once enrolled, patients receive a card they can then use at the point of sale to cover the out-of-pocket costs for their prescription medication minus the $5 or $10 they agreed to pay themselves.

## III.  SaveOnSP Employs a Scheme to Drain Patient Assistance Program Funds for Its Own Benefit and the Benefit of Its Partners

50.     Although programs like CarePath are meant to help patients, payers and PBMs have devised a set of evolving schemes designed to capture the benefit of patient assistance funds.[7]  The scheme at issue in this lawsuit represents the latest in this line, and is administrated by SaveOnSP.

51.     SaveOnSP's business model is to drain patient assistance from programs like CarePath by increasing patient out-of-pocket costs in a manner that serves no end other than to maximize profits for SaveOnSP and its partners.  SaveOnSP's compensation is based on a contingency fee; it is paid a percentage based on the amount of patient assistance it is able to extract from manufacturer programs like CarePath.  In partnership with PBM Express Scripts and specialty pharmacy Accredo, SaveOnSP markets and sells its program to payers, and then induces patients to enroll.

52.     The contours of the SaveOnSP Program, and the partnership between Express Scripts and SaveOnSP in particular, are governed by a non-public "Master Program

---

[7]  For instance, for years and continuing today, various payers and PBMs have employed programs known as "accumulators."  These programs work by identifying and accepting manufacturer copay assistance, but refusing to count it toward the patient's deductible or out-of-pocket maximum.  Adam J. Fein, *Copay Maximizers Are Displacing Accumulators—But CMS Ignores How Payers Leverage Patient Support*, DRUG CHANNELS (May 19, 2020), https://www.drugchannels.net/2020/05/copay-maximizers-are-displacing.html.  Because none of the patient assistance counts towards the patient's deductible or out-of-pocket maximum, the scheme delays or prevents the patient from meeting those thresholds, and patient assistance that would normally be sufficient to last all year gets completely used up much earlier.  *Id.*  This leads to serious patient harm, as the patient will eventually go to fill a prescription and be shocked to learn that the patient assistance has run out and that the deductible and out-of-pocket maximum still have not been met—meaning he or she will have to pay the full list price or leave empty handed.  *Id.*  Patients often simply cannot afford to pay such costs without assistance, leading many patients to discontinue their treatment.  The harm caused by such programs has led 11 states to ban them.  Joseph Cantrell, *State Legislative Issues to Watch in 2022*, THE RHEUMATOLOGIST (Jan. 7, 2022), https://www.the-rheumatologist.org/article/state-legislative-issues-to-watch-in-2022/.

22

Agreement, effective November 13, 2017." *See* Res. 20-660, CITY OF JERSEY CITY, Exhibit B (Sept. 10, 2020), https://cityofjerseycity.civicweb.net/document/33785/Express%20Scripts%20-%20SaveOn%20Program.pdf. Further, SaveOnSP's public-facing website provides limited information about how its program functions. *See Frequently Asked Questions*, SAVEONSP, https://www.saveonsp.com/employers/ (last visited Apr. 27, 2022).

53.     Nevertheless, SaveOnSP's modus operandi is revealed in a video posted online showing a SaveOnSP Program presentation to an Illinois-based health insurance plan sponsor. *See SaveOnSP IPBC Video*, *supra* ¶ 9. In the presentation, the representative admits that the SaveOnSP Program works by designating drugs covered under the health plan as non-essential health benefits: "for a number of drugs, we can carve them out and create a different benefit design, where we designate these drugs as non-essential." *Id.* at 5:30.

54.     This designation prevents any money paid towards the drug from applying to the ACA's annual limit. *Id.* at 7:23 ("[W]e're not gonna allow [patient assistance] to hit [the patient's] max out-of-pocket."). This is because the ACA's annual limit applies only to "essential health benefits." *See* 45 C.F.R. § 155.20 (defining "cost sharing" so that the annual out-of-pocket maximum applies only to "any expenditure required by or on behalf of an enrollee with respect to ***essential health benefits***" (emphasis added)).

55.     As is clear from the presentation, there is no legitimate medical reason for applying the designation, as the drugs are plainly essential for the health and well-being of many patients. Rather, SaveOnSP uses the designation to extract as much money from patient assistance as possible: "***The moment we reclassify these as non-essential we get to operate outside of those rules, which removes the limitations for how high we set the copay***, it removes the requirement to apply copay assistance dollars to the max out-of-pocket. And that's what

allows us to be **the most lucrative** in terms of driving savings for SaveOn." *SaveOnSP IPBC Video*, *supra* ¶ 9, at 23:35.

56.     This "inflated" copay cost is essential to the SaveOnSP Program's mission of siphoning off patient assistance funds from programs like CarePath: "in order for us to capitalize on this copay assistance funding, **we have to have that inflated copay upfront to bill to copay assistance**." *Id.* at 19:01.  For example, the representative explains, if the amount of assistance per fill is $6,600: "we would literally set the patient copay to $6,600, and you would save that amount on every fill." *Id.* at 6:11.  To be clear, the "you" in this presentation is the payer—not the patient.

57.     SaveOnSP's method exploits what it perceives as a loophole in the ACA.  To cover the required number of prescription drugs mandated by the ACA, a payer must identify as "essential" the greater of "(i) One drug in every United States Pharmacopeia (USP) category and class" or "(ii) The same number of prescription drugs in each category and class as the EHB-benchmark plan."[8]  45 C.F.R. § 156.122(a)(1); *see also* 42 U.S.C. § 18022(b)(1) (specifying that the Secretary of HHS shall "define the essential health benefits" including, *inter alia*, "prescription drugs").

---

[8] An "EHB-benchmark plan" is a "standardized set of essential health benefits that must be met by a" payer.  45 C.F.R. § 156.20.  Each state typically selects the parameters for their own EHB-benchmark plan.  45 C.F.R. § 156.100.

58.    Because the regulation requires that payers provide "the same number" of prescription drugs in each category or class as the specified benchmark plans, SaveOnSP takes the view that payers may de-designate drugs covered beyond that number. This view is reflected in a slide accompanying the recorded presentation:



*SaveOnSP IPBC Video*, *supra* ¶ 9, at 9:30.

59.    The Centers for Medicare & Medicaid Services ("CMS") has stated that if a payer "is covering drugs beyond the number of drugs covered by the [EHB] benchmark, all of these drugs are EHB" and cost sharing paid for drugs properly classed as EHB "must count toward the annual limitation on cost sharing." *See Patient Protection and Affordable Care Act*, 80 Fed. Reg. 10749, 10817 (Feb. 27, 2015) (codified at 45 C.F.R. pts. 144, 147, 153, 154, 155, 156 and 158). SaveOnSP's Program defies this admonition. Instead, SaveOnSP and its partners designate covered drugs—including life-saving oncology, pulmonary arterial hypertension, and

immunology drugs—as non-essential health benefits so that it can inflate patient copay obligations.

60. Once the copay cost is inflated, SaveOnSP can coerce the patient into enrolling in its Program (and consequently in manufacturer programs) by telling them that they will either pay $0 per prescription if they enroll, or will have to pay the inflated copay cost— potentially in the thousands of dollars—themselves if they do not: "Meaning if you don't participate in this program, your copay or your responsibility will be [for example] $1,000. And because it's not part of your existing benefit design, that $1,000 is not applicable to your max out-of-pocket. And that's often compelling enough for members to say, 'oh wait, I want my drugs for free.'" *SaveOnSP IPBC Video*, *supra* ¶ 9, at 46:10. Because most patients cannot afford such costs, they are essentially forced into acceding to SaveOnSP's offer.

61. To communicate this coercive offer to patients, SaveOnSP first engages in outreach. The representative explains that once the payer signs the contracts to use its program, "there is a standard member letter that we have that can be co-branded" that is sent to patients in the first 30 days, "and it's our goal to outreach to every one of these members before the program ever goes live." *Id.* at 33:27; 34:04. The representative explains further that "at 30 days out, if we're unsuccessful in reaching those members, we send a reminder letter and again, another phone call campaign with attempts to try and get contact with that member and get them enrolled." *Id.* at 34:25.

62. On average, however, only 55% to 65% of the payer's membership typically gets enrolled by the date that the program goes live. *Id.* at 34:50. At this point, SaveOnSP leverages its partnership with the specialty pharmacy Accredo to facilitate patient enrollment. As the specialty pharmacy designated by the payers to administer the drug benefit plan, Accredo

steers the patients to SaveOnSP.  In the words of the SaveOnSP Program representative, "our Accredo advocates, once the claim is processed, will receive a prompt to alert them that this is a SaveOn drug, and they have some scripting that says, 'We have an opportunity for you to participate in a program which allows you to get your drug for free.  I need to connect you to SaveOn now.'  And at that point in time, they 'warm transfer'[9] the member to SaveOn." *Id.* at 34:14.

63.     As illustrated in paragraph 13 above, adding to the pressure placed on patients, Accredo actually ***rejects*** the patient's claim for their prescription medication at the point of sale in order to transfer them to SaveOnSP, even though that medication is covered by the patient's insurance.  *Human Resources Committee Meeting*, *supra* ¶ 13, at 69.

64.     Once the patient agrees to enroll in its program, SaveOnSP helps the patient enroll in manufacturer patient assistance programs.  The representative explains that SaveOnSP "can help facilitate with the member on the phone" to guide them through online enrollment, or if enrollment is by phone, can advise patients "as how to respond to the questions that they're being asked as part of enrollment."  *SaveOnSP IPBC Video*, *supra* ¶ 9, at 16:08; 16:38.

65.     SaveOnSP inserts itself in this process even though it knows that the enrollment in its program violates the express terms and conditions of the CarePath agreement that prohibit the patient from combining CarePath with the SaveOnSP Program.  SaveOnSP recognizes that the CarePath relationship "is an agreement between the patient and copay assistance through the manufacturer," but nevertheless involves itself because "in order for us to leverage the savings, the member has to actively enroll in copay assistance.  ***That's where the***

---

[9]  A "warm transfer" is "a telecommunications mechanism in which the person answering the call facilitates transfer to a third party, announces the caller and issue and remains engaged as necessary to provide assistance."  *Warm Transfer Definition*, LAW INSIDER, https://www. lawinsider.com/dictionary/warm-transfer (last visited Apr. 27, 2022).

*savings comes from.*"  *Id.* at 49:20.  Once SaveOnSP assists the patient in enrolling in patient assistance, "it relays that to Accredo, so that it's housed in our system and then again, the claims from there on out just process at $0."  *Id.* at 35:54

66.     The SaveOnSP Program then causes CarePath to be electronically billed for an inflated copay cost that is not connected to the patient's true out-of-pocket responsibility.  The amount charged to the CarePath card at the point of sale is communicated using an "OCC-8" code, which tells JJHCS that the patient owes a copay for the drug.  That code is supposed to communicate the patient's true out-of-pocket responsibility as set by their health plan.  Instead, SaveOnSP causes an inflated charge to be communicated to JJHCS for the express purpose of draining more patient assistant funds from the patient's CarePath card.

67.     This misrepresentation of an inflated copay is made to JJHCS even as it admits elsewhere that patients in the SaveOnSP Program do not have any copay obligation whatsoever.  *See Pay $0 for Select Specialty Medications*, *supra* ¶ 11 ("If [a patient] participates in SaveOnSP, he won't pay anything ($0) out-of-pocket.").

68.     Finally, SaveOnSP charges the payer "25% of the savings that's achieved." *SaveOnSP IPBC Video*, *supra* ¶ 9, at 37:38.  To facilitate this payment, payers sign "a 25% joinder agreement," which "allows Express Scripts to bill you for that fee on your administrative invoice.  So you'll see a simple line item for SaveOnSP."  *Id.* at 40:50.  In other words, SaveOnSP is paid a percentage of the "savings" it has achieved for payers by meeting the payer's obligations to the patient with patient assistance funds—assistance that SaveOnSP obtains by inducing patients to violate the terms and conditions of CarePath.

69.     SaveOnSP also admits to engaging in careful tactics designed not for the patient's benefit but to optimize earnings.  For example, in deciding which drugs make it onto

SaveOnSP's drug list, the representative explains that SaveOnSP looks to which drugs "have the most lucrative copay assistance programs" and that SaveOnSP may "remove drugs from the programs" if "something comes to our attention where the funding goes away completely."  *Id.* at 14:47.  This further demonstrates that SaveOnSP is making business-driven decisions without any regard for what is best for the patients.  Indeed, while SaveOnSP promises patients that they will receive their medication for $0, if the patient assistance is removed, it will eventually move the drug out of the SaveOnSP Program: "we would honor the copay assistance or the $0 SaveOn copay until they were able to effectively manage that patient out, manage that drug out."  *Id.* at 14:58.

70.     In order to ensure that only the most lucrative drugs are on its list, SaveOnSP monitors manufacturers' assistance terms and conditions: "in the event that pharma decides to pull back funding for their programs ***or decides to change the terms of the program***, it's seamless to the member.  ***SaveOn is actively watching*** these claims process and sees when any of these changes occur."  *Id.* at 31:50.  And in response to such a change, SaveOnSP might switch one drug off their list in exchange for another one: "it might be a prompt to determine, 'Do we need to make a change in the drug list for this program?  Because we are not saving as much as we initially anticipated, and there's another drug where we could.'"  *Id.* at 32:09.

71.     Likewise, to minimize the necessary coverage and maximize profits, payers using the SaveOnSP Program are encouraged to pick the state EHB-benchmark plan that has the lowest number of requirements: "So again, the ACA defines the essential by again, leveraging a state benchmark.  You do not have to leverage your own current state or the state in which most of your members reside.  It's simply a guideline for how to administer that essential health benefit.  So for example, many commercial plans pick Utah because it had the fewest number of

required drugs to cover, and therefore it was the most cost-effective.  So all we're saying is that Utah is setting the list of drugs or the number of drugs by therapeutic category to be deemed essential."  *Id.* at 22:40.  In other words, instead of picking a state benchmark that reflects where a payer's patients live or where the drug coverage is most comprehensive, SaveOnSP encourages payers to choose a state benchmark with as few requirements as possible to maximize profits.

72.     The SaveOnSP Program representative also admits that the SaveOnSP Program operates in a legal "gray area" as it relates to "qualified high deductible HSA [i.e., Health Savings Account] plan[s]."  *Id.* at 25:55; 26:27.  The representative acknowledges in her presentation that "copay assistance is not ACA compliant in an HSA plan."  *Id.* at 26:43.  But she explains that SaveOnSP gets away with knowingly breaking this rule because of a lack of oversight: "there's no requirement that patients provide documentation or confirm that they've met their deductibles before they get copay assistance," and "there's no governing body that's really monitoring the industry today," so "copay assistance happens in qualified HSA plans all the time."  *Id.* at 26:50.  It thus leaves it to plans to "determine whether or not it's appropriate to include their HSA plans in the SaveOn offering or not."  *Id.* at 27:27.

73.     Further, SaveOnSP deceives manufacturers by actively concealing its role and interference with patient assistance programs.  SaveOnSP knows that such programs often have a requirement that a patient pay $5 or $10 of the cost of the prescription.  But SaveOnSP intentionally circumvents this requirement by shifting that $5 or $10 obligation onto the payer— and actively conceals from JJCHS that it has done so by using the artifice of a "tertiary biller," which is "really SaveOn behind the scenes."  *Id.* at 30:24.

74.     While SaveOnSP engages in these wrongful courses of conduct to increase profits, it unfortunately comes at a great cost to patients.  Patient assistance programs are meant

to help patients pay their actual and required out-of-pocket costs. By changing the amounts owed by patients based on only the availability of patient assistance, the programs disconnect patient assistance from actual cost to patients, causing patient assistance programs to be more expensive than originally intended, and converting what is meant to be patient assistance into a manufacturer subsidy for SaveOnSP and its partners. *See The Patient Impact of Manufacturing Copay Assistance in an Era of Rising Out-of-Pocket*, *supra* ¶ 33, at 17 (explaining that "accumulator adjustment and maximizer programs . . . counteract the uptake of manufacturer copay assistance shifting the cost burden back onto patients" and that "limiting [patients' use of copay assistance programs] without giving patients a new way to address their affordability issues will negatively impact patients"). By these actions, SaveOnSP wrongly increases the costs of patient assistance programs and, unless enjoined, will make it untenable for such programs to continue to be provided.

75.      Moreover, SaveOnSP misleads patients about the nature of the SaveOnSP Program. SaveOnSP does not tell patients that by enrolling in the SaveOnSP Program, they are breaching their agreement with JJHCS. It does not tell patients that the SaveOnSP Program may cause as much as a year's worth of patient assistance to be drained in just a few prescription fills. And it does not tell patients that it charges a fee of at least 25% of the patient assistance funds pulled.

76.      It also does not tell patients that patient assistance is available without the SaveOnSP Program. Indeed, in marketing materials, SaveOnSP misrepresents to patients that "Without SaveonSP," "[t]here is no copay assistance":

*SaveonSP: Copy Offset Program for Specialty Medication*, BLUECROSS BLUESHIELD OF WESTERN NEW YORK, https://www.bcbswny.com/content/dam/BCBSWNY/broker-group/public /pdf/group/computer-task-group/Saveon-Member-Flyer.pdf (last visited Apr. 27, 2022). This is false: manufacturers provide copay assistance independently of SaveOnSP, and did so for many years before SaveOnSP ever began interfering in these programs.

77. Further, the SaveOnSP Program puts patients who decide not to enroll in an even more precarious scenario: They will still have an inflated copay obligation, but the payer does not cover the cost, and the patient is told that he or she will have to pay the cost alone. *Id.*

78. Finally, in either case, no payments count towards the patient's deductible or out-of-pocket maximum, so the patient will still face higher costs for other healthcare services (such as doctor's visits or diagnostic testing). *Pay $0 for Select Specialty Medications*, *supra* ¶ 11. The marketing materials for the SaveOnSP Program referenced in paragraph 11 above make this clear, noting that in either scenario, payments made for the drug "won't count towards [the patient's] deductible or out-of-pocket maximum." *Id.*

79. The federal government has recognized that assistance from manufacturers is for patients, not payers, and has explained patients are harmed when payers "shift costs back to the patient prematurely by not applying the full value of the manufacturer-sponsored assistance to a patient's health plan deductible." *See* Medicaid Program, 85 Fed. Reg. 87,000, 87,049 (Dec. 31, 2020) (codified at 42 C.F.R pts. 433, 438, 447, and 456). Indeed, CMS has even issued a

rule intended to ensure that patient assistance benefits patients, not payers, 85 Fed. Reg. at 87,048–58, and has explained that the rule exists because "[h]ealth plans, with the help of third-party pharmacy benefits administrators, often reap the benefits of [patient assistance] by declining to allow [it] to offset patients' out-of-pocket costs," and as a result "plans are enriched through the reduction in the amount they have to cover for these drugs." *See Pharm. Research & Mfs. of Am. v. Becerra*, No. 21-CV-01395, Dkt. 32-1, at 1 (D.D.C. Feb. 3, 2022).

80.     Payers already can and do negotiate pricing discounts with manufacturers, including by securing rebates that manufacturers pay after patients fill prescriptions. *See The 2021 Janssen U.S. Transparency Report*, *supra* ¶ 25, at 6 (indicating that since 2016, "the rebates, discounts and fees we have provided to commercial insurers and PBMs have increased almost fivefold" and that Janssen provided $8.3 billion in rebates, discounts, and fees to commercial insurers and PBMs in 2021); *see also Form 10-K*, *supra* ¶ 25, at 37 (Cigna stating, "[w]e maintain relationships with numerous pharmaceutical manufacturers, which provide us with, among other things: . . . discounts, in the form of rebates, for drug utilization"). In fact, SaveOnSP has inflated patients' drug copay obligations even as JJHCS has consistently decreased the price of the drugs targeted by the SaveOnSP Program. *See The 2021 Janssen U.S. Transparency Report*, *supra* ¶ 25, at 2 (indicating that "net prices for Janssen medicines have declined for the fifth year in a row," including a net decline of -2.8% in 2021 (compared to the 2021 consumer inflation rate of 7%)).

81.     Patient assistance does not exist as additional funding for payers to absorb on top of those enormous price concessions. But various publicly available materials describing the SaveOnSP Program explicitly acknowledge that the program is designed for just that: to enrich payers.

82.     For example, in a presentation given to the New Jersey Health Insurance Fund, a New Jersey-based insurance pool, the SaveOnSP Program is described as a "very aggressive program" that sets copays to "maximize manufacturer assistance dollars" so that "**plan sponsor spend** [is] reduced $2.50 - $4.50 [per member per month]."  Joseph M. DiBella, *New Jersey Health Insurance Fund*, PERMA (Nov. 2019) at 19–20, https://slideplayer.com/slide/17742625/ (emphasis added).

83.     Similarly, an agenda for the Burlington County Insurance Commission, another New Jersey-based insurance pool, notes that the SaveOnSP Program is being implemented "**so that the plan can maximize manufacturer assistance** dollars (coupons) while reducing the member's copay to $0."  *Meeting and Reports*, BURLINGTON CNTY. INS. COMM'N (Nov. 5, 2020), at 28, https://bcnj.co.burlington.nj.us/Upload/BCIC/Images/Agenda_11-5-20.pdf (emphasis added).

84.     And in another agenda for Southern Skyland Regional, a New Jersey-based insurance fund, there are notes that while "Members receive a $0 copay," the "**plan receives the remaining discount**."  *Agenda & Reports*, Southern Skyland Regional (Oct. 5, 2021), at 8, https://static1.squarespace.com/static/5b1c2db85ffd2031c58b5583/t/615db86e5abc5715e41a709e/1633532015317/A_SSRHIF_October+5th+Agenda.pdf (emphasis added).

85.     SaveOnSP's own website emphasizes the same, explaining how "plan[s] see savings generated" from its program.  *See Frequently Asked Questions*, SAVEONSP, https://www.saveonsp.com/employers/ (last visited Apr. 27, 2022); *see also Copay Assistance Strategy Reduces Financial Burdens for Plans and Patients*, *supra* ¶ 23 (highlighting that "[i]n 2020, plans that participated in these copay assistance solutions [like the SaveOnSP Program] experienced a specialty trend of -7.2%, while nonparticipating plans experienced an 8.7%

specialty trend."); *Form 10-K*, *supra* ¶ 25, at 7 (Cigna stating that it has a "partnership with SaveOnSP," an "aggressive solution" that "adapts" to changes in manufacturer programs to "protect plan design preferences and achieve lower trend" for health plans).

86. And while these materials also tout reduced costs to patients, they mislead patients by obscuring the fact that patients can get the benefit of reduced costs by directly signing up for manufacturer assistance, without any involvement from SaveOnSP whatsoever.

87. Further underscoring that the SaveOnSP Program is for the benefit of payers and not patients, SaveOnSP Program materials show that even when patients do hit their deductible or out-of-pocket maximum through other means, SaveOnSP will continue to extract patient assistance. *See Copay Assistance Program & Solutions*, *supra* ¶ 12, at 5 ("[T]he member continues to max out the copay assistance throughout the plan year regardless of whether they hit their DED/MOOP through other means.").

88. Finally, the SaveOnSP Program also burdens patients with a complicated enrollment process that can create unnecessary confusion for individuals already under pressure from difficult medical circumstances. *See* Anndi McAfee, *SaveonSP's Copay Maximizer Failed Me: A Patient's Perspective*, DRUG CHANNELS (Nov. 13, 2020), https://www.drugchannels.net /2020/11/saveonsps-copay-maximizer-failed-me.html ("If SaveonSP had not used all of my money, I probably would have continued on in sweet blissful ignorance. But here I am again, expending precious time and energy to ensure that my drug gets into my body."). As noted in paragraph 13 above, one step in the SaveOnSP Program is to falsely tell a patient who is entitled to insurance coverage for a life-saving medication that their request for coverage was denied, as a ruse to push the person to apply for copay support just to drive greater profitability for SaveOnSP. *Human Resources Committee Meeting*, *supra* ¶ 12, at 69.

## IV.  JJHCS Is Harmed by SaveOnSP's Abusive Practices

89.     CarePath's terms and conditions typically require patients to pay $5 or $10 when using the Assistance Program, and they preclude patients from using the Assistance Program with "any other coupon, discount, prescription savings card, free trial, or other offer." *See, e.g.*, DARZALEX® Savings Program, *supra* ¶ 18.

90.     The SaveOnSP Program is clearly such an "offer."  Indeed, the SaveOnSP representative refers to the SaveOnSP Program in her presentation as the "SaveOn **offering**." *SaveOnSP IPBC Video*, *supra* ¶ 9, at 4:25; 27:31.   And marketing materials similarly state, "That's why your plan **offers** a program called SaveOnSP, which can help lower your out-of-pocket costs to $0."  *See Pay $0 for Select Specialty Medications*, *supra* ¶ 11 (emphasis added). Nevertheless, despite its knowledge of these terms, SaveOnSP implements its program to extract CarePath's funds.

91.     SaveOnSP's conduct is clear from its publicly available drug lists.   For example, one such list includes 14 Janssen drugs: BALVERSA®, DARZALEX®, DARZALEX FASPRO®, ERLEADA®, IMBRUVICA®, OPSUMIT®, REMICADE®, RYBREVANT®, SIMPONI®, STELARA®, TRACLEER®, TREMFYA®, UPTRAVI®, and ZYTIGA®.  *See 2022 SaveOnSP Drug List*, CHRISTIAN BROTHERS EBT, (Dec. 20, 2021), https://www.saveonsp.com/wp-content/uploads/2021/12/cbservices.pdf.

92.     Internal JJHCS data concerning CarePath use confirms that SaveOnSP is abusing CarePath.  For instance, in 2021, the average amount of CarePath funds pulled per fill for STELARA® patients who were not enrolled in the SaveOnSP Program was $1,171, while the average amount of CarePath funds pulled per fill for STELARA® patients who were enrolled in the SaveOnSP Program was $4,301.

36

93.     The same pattern holds true for patients on TREMFYA®.  In 2021, the average amount of CarePath funds pulled per fill for TREMFYA® patients who were not enrolled in the SaveOnSP Program was $1,126, while the average amount of CarePath funds pulled per fill for TREMFYA® patients who were enrolled in the SaveOnSP Program was $3,717.

94.     The difference is even starker for other drugs.  For example, the average amount of CarePath funds pulled per fill for UPTRAVI® patients who were not enrolled in the SaveOnSP Program was only $418, while the average amount of CarePath funds pulled per fill for UPTRAVI® patients who were enrolled in the SaveOnSP Program was $5,000.

95.     These trends continue into this year.  For January through March of 2022, the average amount of CarePath funds pulled per fill for STELARA® patients who were not enrolled in the SaveOnSP Program was $2,057, while the average amount of CarePath funds pulled per fill for STELARA® patients who were enrolled in the SaveOnSP Program was $6,401.

96.     Likewise, for the same time period, the average amount of CarePath funds pulled per fill for TREMFYA® patients who were not enrolled in the SaveOnSP Program was $1,796, while the average amount of CarePath funds pulled per fill for TREMFYA® patients who were enrolled in the SaveOnSP Program was $3,745.

97.     And, for the same time period, the average amount of CarePath funds pulled per fill for UPTRAVI® patients who were not enrolled in the SaveOnSP Program was only $1,242, while the average amount of CarePath funds pulled per fill for UPTRAVI® patients who were enrolled in the SaveOnSP Program was $6,979.

98.     SaveOnSP harms JJHCS not only by causing inflated amounts of patient assistance to be charged per fill, but also by causing greater amounts of patient assistance to be charged earlier in the year.  Many patients do not stay on therapy for an entire year.  Thus, when SaveOnSP seizes a year's worth of copay assistance by repeatedly charging inflated copays, but the patient does not actually fill a year's worth of prescriptions, SaveOnSP reaps an additional windfall and charges JJHCS for more copay assistance than is actually warranted.  In some instances, SaveOnSP has extracted an entire year's worth of patient assistance by the middle of the year.

99.     Indeed, SaveOnSP causes JJHCS to pay out the maximum amount of funds available per patient far more often than it otherwise would.  For example, in 2021, only 3% of STELARA® patients who were not enrolled in the SaveOnSP Program exhausted the full CarePath benefit of $20,000, while **33%** of STELARA® patients who were enrolled in the SaveOnSP Program exhausted the full CarePath benefit of $20,000.

100.     Through the SaveOnSP Program, SaveOnSP knowingly and wrongfully harms JJHCS by causing it to pay CarePath funds solely for its own enrichment.  JJHCS provides CarePath funds to help patients bridge the gap between what they must pay out-of-pocket to obtain their Janssen drugs and what they can afford.  But the SaveOnSP Program interferes with this intended purpose by causing JJHCS to pay out exponentially more CarePath funds per patient only so that it may profit in violation of the CarePath terms and conditions.

101.     Further, there is no easy or foolproof way for JJHCS to simply reduce the amount of assistance it provides to all patients enrolled in SaveOnSP's Program.  This is because SaveOnSP has taken steps to obscure when funds are being extracted from CarePath through its Program, including recently by varying the patient's out-of-pocket obligation per prescription

fill, such that the amounts extracted from the copay card by the pharmacy are not consistent and easily detectible. Further, JJHCS cannot reduce cost support preemptively to prevent SaveOnSP's activities without an unacceptable risk that individual patients may be misidentified and suffer from reduced cost support and consequently be unable to afford their therapy. The secretive nature of SaveOnSP's operations, therefore, renders any attempt to reduce copay assistance on a patient-by-patient basis unworkable as it risks harming the very patients CarePath was designed to support.

102.    For STELARA® and TREMFYA®, JJHCS released a new version of the terms and conditions that were publicly on the CarePath website in December 2021. *See* STELARA® Savings Program (Dec. 2021), https://www.janssencarepath.com/sites/www. janssencarepath-v1.com/files/stelara-savings-program-overview.pdf?v=39;     TREMFYA® Savings Program (Dec. 2021), https://www.janssencarepath.com/sites/www.janssencarepath-v1. com/files/tremfya-savings-program-overview.pdf?v=88.

103.    The new terms and conditions specify explicitly that to be eligible for CarePath, "you . . . must pay an out-of-pocket cost for your medication." *Id.* They also explicitly prohibit use of programs like SaveOnSP, stating "Patients who are members of health plans that claim to eliminate their out-of-pocket costs are not eligible for cost support." *Id.*

104.    To this date, however, SaveOnSP has not taken Janssen's drugs off its list, and continues to induce patients in the SaveOnSP Program to sign up for CarePath in violation of CarePath's terms and conditions.

105.    Thus, SaveOnSP continues to harm JJHCS, entitling it to relief. Moreover, damages for ongoing and future wrongdoing are inadequate because SaveOnSP takes concerted

measures to avoid detection.  Unless enjoined, it will continue to cause damages and irreparable harm to JJHCS.

## COUNT I:
## TORTIOUS INTERFERENCE WITH CONTRACT

106.      JJHCS re-alleges paragraphs 1–105 as if fully set forth herein.

107.      JJHCS has a valid and enforceable contract with the patients who use CarePath.

108.      The CarePath terms and conditions prohibit patients from being enrolled in SaveOnSP while using CarePath.

109.      SaveOnSP knowingly and wrongfully induces patients to agree to CarePath's terms and conditions, thereby intentionally causing those patients to breach their contract with JJHCS every time they use CarePath funds while enrolled in the SaveOnSP Program.

110.      Through its wrongful inducement, SaveOnSP knowingly and proximately causes JJHCS damage by making it pay more money from CarePath than it otherwise would have for a purpose JJHCS did not intend.

111.      SaveOnSP has therefore tortiously interfered with JJHCS's agreement with patients who use CarePath.

## COUNT II:
## DECEPTIVE TRADE PRACTICES
## IN VIOLATION OF N.Y. GEN. BUS. LAW § 349

112.      JJHCS re-alleges paragraphs 1–111 as if fully set forth herein.

113.      SaveOnSP has been and is engaging in willful deceptive acts and practices in New York against JJHCS and the public in the conduct of its business through the following consumer-oriented acts: engineering a false denial of coverage at the point of sale to coerce patients into enrolling in the SaveOnSP Program; telling patients that there is "no copay

40

assistance with SaveOnSP" when manufacturers do in fact provide assistance independently of the SaveOnSP Program; failing to tell patients that by enrolling in the SaveOnSP Program, they are breaching their agreement with JJHCS; and failing to tell patients that they charge a fee of at least 25% of the patient assistance funds extracted from JJHCS.

114. Through its willful deceptive acts and practices, SaveOnSP causes damage to the public, including patients, by causing undue stress and confusion through acts such as engineering false denials of coverage; jeopardizing the viability of patient assistance programs like CarePath by making them prohibitively expensive; and making other patient healthcare needs more expensive by not counting any of the funds spent on patients' medication towards their ACA maximum or deductible.

115. Through its willful deceptive acts and practices, SaveOnSP also causes damage to JJHCS by making it pay more money from CarePath than it otherwise would have for a purpose JJHCS did not intend.

116. SaveOnSP has therefore violated N.Y. Gen. Bus. Law § 349.

117. SaveOnSP's violation of § 349 also warrants the recovery of attorneys' fees.

## DEMAND FOR JURY TRIAL

118. JJHCS hereby respectfully requests a trial by jury for all claims and issues in its Complaint which are or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**NOW, THEREFORE**, Plaintiff JJHCS respectfully requests that the Court:

A.     Award JJHCS damages in an amount to be ascertained at trial.

B.     Award to JJHCS pre-judgment and post-judgment interest.

C.     Issue an injunction preventing SaveOnSP from implementing the SaveOnSP Program as to Janssen drugs.

41

D.    Award JJHCS its reasonable attorneys' fees.

E.    Grant such other and further relief as the Court may deem appropriate.

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:    s/ Jeffrey J. Greenbaum
       JEFFREY J. GREENBAUM
       KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (*pro hac vice* forthcoming)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

Dated:  May 4, 2022

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to Local Civ. Rule 11.2, I hereby certify to the best of my knowledge, information and belief that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:  s/ Jeffrey J. Greenbaum
JEFFREY J. GREENBAUM
KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (*pro hac vice* forthcoming)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

Dated: May 4, 2022

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Johnson & Johnson Health Care Systems Inc. | Save On SP, LLC |

**(b)** County of Residence of First Listed Plaintiff    Middlesex, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Erie County, NY
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jeffrey J. Greenbaum, Katherine M. Lieb, Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07305, 973-643-7000

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [X] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [X] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane   [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product     Product Liability | |     28 USC 157 |     3729(a)) |
| [ ] 140 Negotiable Instrument |     Liability   [ ] 367 Health Care/ | | **INTELLECTUAL** | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel &     Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
|     & Enforcement of Judgment |     Slander     Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'     Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted |     Liability   [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
|     Student Loans | [ ] 340 Marine     Injury Product | |     New Drug Application | [ ] 470 Racketeer Influenced and |
|     (Excludes Veterans) | [ ] 345 Marine Product     Liability | | [ ] 840 Trademark |     Corrupt Organizations |
| [ ] 153 Recovery of Overpayment |     Liability   **PERSONAL PROPERTY** | | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
|     of Veteran's Benefits | [ ] 350 Motor Vehicle   [ ] 370 Other Fraud | **LABOR** |     Act of 2016 |     (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle   [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards | | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract |     Product Liability   [X] 380 Other Personal |     Act | **SOCIAL SECURITY** |     Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal     Property Damage | [ ] 720 Labor/Management | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise |     Injury   [ ] 385 Property Damage |     Relations | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury -     Product Liability | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) |     Exchange |
| |     Medical Malpractice | [ ] 751 Family and Medical | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** |     Leave Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights   **Habeas Corpus:** | [ ] 790 Other Labor Litigation | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting   [ ] 463 Alien Detainee | [ ] 791 Employee Retirement | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment   [ ] 510 Motions to Vacate |     Income Security Act | [ ] 870 Taxes (U.S. Plaintiff |     Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/     Sentence | |     or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability |     Accommodations   [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities -   [ ] 535 Death Penalty | **IMMIGRATION** |     26 USC 7609 |     Act/Review or Appeal of |
| |     Employment   **Other:** | [ ] 462 Naturalization Application | |     Agency Decision |
| | [ ] 446 Amer. w/Disabilities -   [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| |     Other   [ ] 550 Civil Rights |     Actions | |     State Statutes |
| | [ ] 448 Education   [ ] 555 Prison Condition | | | |
| |   [ ] 560 Civil Detainee -     Conditions of     Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause: Plaintiff seeks damages for tortious interference with contract and for deceptive trade practices in violation of N.Y. Gen. Bus. Law § 349

**VII. REQUESTED IN COMPLAINT:**
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
In excess of $100 million

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes   [ ] No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE   5/4/2022
SIGNATURE OF ATTORNEY OF RECORD   s/ Jeffrey J. Greenbaum

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# Exhibit 2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHNSON & JOHNSON                          :
HEALTH CARE SYSTEMS INC.,                  :        Civil Action No.  22-2632 (JMV) (CW)
                                           :
                        Plaintiff,         :
            vs.                            :        **DISCOVERY CONFIDENTIALITY**
                                                    **ORDER**
SAVE ON SP, LLC,                           :
                                           :
                        Defendant.         :


        It appearing that discovery in the above-captioned action is likely to involve the
disclosure of confidential information, it is ORDERED as follows:

1.      Any party to this litigation and any third-party who produces to any other person any
        "Discovery  Material" (*i.e.*, information, documents, or things  of  any  kind, including
        without limitation interrogatory answers, admissions, pleadings, responses to a subpoena,
        or testimony) in  the  course  of discovery in this action) (a "Producing Party") shall have
        the right to designate as "Confidential" and subject to this Order any Discovery Material
        or portion thereof:  (a) that contains trade secrets, competitively sensitive technical,
        marketing, financial, sales or other confidential business information, or (b) that contains
        private or confidential personal information, or (c) that contains information received in
        confidence from third parties, or (d) which the producing party otherwise believes in
        good faith to be entitled to protection under Rule 26(c)(1)(G) of the Federal Rules of
        Civil Procedure and Local Civil Rule 5.3, or the production of which would cause the
        Producing Party to violate his, her, or its privacy or confidentiality obligations to  others.

        a.      Any Producing Party who produces or discloses any Confidential Discovery
                Material shall mark the same with the following or similar legend:
                "CONFIDENTIAL" or "CONFIDENTIAL – SUBJECT TO DISCOVERY
                CONFIDENTIALITY ORDER" (hereinafter "Confidential").

        b.      Any Producing Party who produces Confidential Discovery Material in native
                format, shall include, at the end of the file name and prior to the file extension, the
                following or similar legend: "CONFIDENTIAL" or "CONFIDENTIAL –
                SUBJECT TO DISCOVERY CONFIDENTIALITY ORDER". Any person
                making any copy of the native file, if authorized under this Order, shall not
                rename the file.

2.      Any Producing Party shall have the right to designate as "Attorneys' Eyes Only" and
        subject to this Order any Discovery Material or any portion thereof that contains highly
        sensitive business or personal information, the disclosure of which is highly likely to
        cause significant harm to an individual or to the business or competitive position of the

Producing Party or the disclosure of which absent an Attorneys' Eyes Only designation could cause the Producing Party to violate its privacy or confidentiality obligations to others.

    a.    Any Producing Party who produces or discloses any Attorneys' Eyes Only Discovery Material shall mark the same with the following or similar legend: "ATTORNEYS' EYES ONLY" or "ATTORNEYS' EYES ONLY – SUBJECT TO DISCOVERY CONFIDENTIALITY ORDER" (hereinafter "Attorneys' Eyes Only").

    b.    Any Producing Party who produces Attorneys' Eyes Only Discovery Material in native format, shall include, at the end of the file name and prior to the file extension, the following or similar legend: "ATTORNEYS' EYES ONLY" or "ATTORNEYS' EYES ONLY – SUBJECT TO DISCOVERY CONFIDENTIALITY ORDER". Any person making any copy of the native file, if authorized under this Order, shall not rename the file.

3.    With respect to the production of any Discovery Material that identifies an individual or subscriber and relates to the past, present, or future care, services, or supplies relating to the physical or mental health or condition of such individual or subscriber, the provision of health care to such individual or subscriber, or the past, present, or future payment for the provision of health care to such individual or subscriber ("Confidential Health Information"), the Producing Party or its counsel shall mark the same with the following or similar legend: "CONFIDENTIAL HEALTH INFORMATION." If such Discovery Material is produced in native format, the native version shall include, at the end of the file name and prior to the file extension, the following or similar legend: "CONFIDENTIAL HEALTH INFORMATION." Any person making any copy of the native file, if authorized under this Order, shall not rename the file.

    a.    Confidential Health Information specifically includes "protected health information" as such term is defined by the Standards for Privacy of Individually Identifiable Health Information, 45 CFR parts 160 and 164, promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). *See* 45 C.F.R. § 160.103 (defining "individually identifiable health information" and "protected health information"). Confidential Health Information also includes, but is not limited to, medical bills, claims forms, charge sheets, medical records, medical charts, test results, notes, dictation, invoices, itemized billing statements, remittance advice forms, explanations of benefits, checks, notices, and requests. Confidential Health Information also includes without limitation all notes, summaries, compilations, extracts, abstracts, or oral communications that contain, are based on, or are derived from, Confidential Health Information.

    b.    Confidential Health Information does not include any Discovery Material that has all of the following identifiers of the individual or subscriber or of the relatives, employers, or household members of the individual or subscriber removed or redacted:

i.    names;

ii.    all geographic subdivisions smaller than a State, including street address, city, county, precinct, zip code, and their equivalent area codes, except for the initial three digits of a zip code if, according to the current publicly available data from the Bureau of the Census, (i) the geographic unit formed by combining all zip codes with the same three initial digits contains more than 20,000 people, and (ii) the initial three digits of a zip code for all such geographic units containing 20,000 or fewer people is changed to 000;

iii.    all elements of dates (except year) for dates directly related to an individual, including birth date, admission dates, discharge dates and date of death, and all ages over 89, and all elements of dates (including year) indicative of such age, except that such ages and elements may be aggregated into a single category of age 90 or older;

iv.    telephone numbers;

v.    fax numbers;

vi.    electronic mail addresses;

vii.    social security numbers;

viii.    medical record numbers;

ix.    health plan beneficiary numbers;

x.    account numbers;

xi.    certificate/license numbers;

xii.    vehicle identifiers and serial numbers, including license plate numbers;

xiii.    device identifiers and serial numbers;

xiv.    web universal resource locators ("URLs");

xv.    internet protocol ("IP") address numbers;

xvi.    biometric identifiers, including finger and voice prints;

xvii.    full face photographic images and any comparable images; and

xviii.    any other unique identifying number, characteristic, or code except as permitted for a code utilized to re-identify de-identified data that complies with 45 C.F.R. § 164.514(c).

    c.    Notwithstanding the foregoing, the parties shall produce Discovery Material containing Confidential Health Information in response to discovery requests of another party in this litigation without redaction, designating such documents as set forth herein.

    d.    This Order is intended to provide protection sufficient to constitute a Qualified Protective Order under HIPAA and the regulations promulgated under its aegis. *See* 45 C.F.R. § 164.512(e)(1)(ii).

4.    All Designated Material, defined to include Confidential, Confidential Health Information, and Attorneys' Eyes Only materials, shall be used by any person to whom the Discovery Material is produced or disclosed (a "Receiving Party") solely for purposes of the prosecution or defense of this action, shall not be used by the Receiving Party for any business, commercial, competitive, personal or other purpose, including for purposes of initiating, prosecuting, or defending any other action, and shall not be disclosed by the Receiving Party to anyone other than those set forth herein, unless and until the restrictions herein are removed either by written agreement of counsel for the parties, or by Order of the Court.  It is, however, understood that counsel for a Receiving Party may give advice and opinions to his or her client solely relating to the above-captioned action based on his or her evaluation of Designated Material, provided that such advice and opinions shall not reveal the content of such Designated Material except by prior written agreement of counsel for the parties, by Order of the Court, or as otherwise permitted by this Discovery Confidentiality Order.

5.    Discovery Material produced and marked Confidential and Confidential Health Information and the contents of such material may be disclosed only to the following individuals under the following conditions:

    a.    Outside litigation counsel retained by the parties for this action (herein defined as any attorney at the parties' outside law firms) and relevant in-house counsel for the parties;

    b.    Outside experts or consultants retained by outside counsel for purposes of this action, including their staff, provided they have signed a non-disclosure agreement in the form attached hereto as Exhibit A.

    c.    Secretarial, paralegal, clerical, duplicating and data processing personnel of the foregoing;

    d.    The Court and court personnel;

    e.    Any deponent may be shown or examined on any information, document or thing designated under this Discovery Confidentiality Order if it appears that the witness authored or received a copy of it, was involved in the subject matter described therein or is employed by the party who produced the information, document or thing, or if the producing party consents to such disclosure;

     f.      Vendors retained by or for the parties to assist in preparing for pretrial discovery, trial and/or hearings including, but not limited to, court reporters, litigation support personnel, jury consultants, individuals to prepare demonstrative and audiovisual aids for use in the courtroom or in depositions or mock jury sessions, as well as their staff, stenographic, and clerical employees whose duties and responsibilities require access to such materials provided that the vendor has first signed a copy of Exhibit A;

     g.     Any other person mutually agreed upon in writing among the Parties, but only if that person has signed a copy of Exhibit A; and

     h.     The parties. In the case of parties that are corporations or other business entities, "party" shall mean executives who are required to participate in decisions with reference to this lawsuit.

6.     With respect to Discovery Material produced and designated Confidential Health Information:

     a.     A Receiving Party or any other person who has access to Designated Material shall implement appropriate administrative, physical, and technical safeguards to prevent the use or disclosure of Confidential Health Information in any manner other than pursuant to the terms and conditions of this Order;

     b.     A Receiving Party or any other person who has access to Designated Material shall limit the use or disclosure of Confidential Health Information to the minimum necessary to accomplish the intended purpose of such use or disclosure—but nothing in this sub-paragraph 6(b) shall prevent any use of Designated Material for purposes of this litigation in a manner consistent with the terms of this Order; and

     c.     In the event that the Receiving Party or any person who has access to Designated Material becomes aware of or suspects that Discovery Material produced and marked Confidential Health Information or the contents of such material has been disclosed or used by the Receiving Party—or by any other party to which the Receiving Party disclosed said Discovery Material—in a manner other than those permitted under this Order, that person or the Receiving Party shall immediately notify the Producing Party. Such notification shall provide the Producing Party with information sufficient to identify the Confidential Health Information at issue and, to the extent possible, the nature of the unauthorized disclosure or use. For the purposes of this reporting requirement, no person is required to report inconsequential incidents that occur on a daily basis such as scans or 'pings' that are not allowed past that person's fire walls.

7.     Discovery Material produced and marked as Attorneys' Eyes Only may be disclosed only to the persons described in Paragraphs 5.a through 5.g above, except that with respect to in-house counsel, said Discovery Material may also be disclosed only up to four (4) in-house counsel with responsibilities for this matter, provided that before any such

Discovery Material is disclosed to in-house counsel, they have been disclosed to the opposing party and have signed a copy of Exhibit A. A party may substitute which in-house counsel may access Attorneys' Eyes Only materials pursuant to this Paragraph, provided that such substitution is disclosed to the opposing party prior to sharing any Attorneys' Eyes Only Discovery Material with the substituted counsel and the total number of in-house counsel does not exceed four. The parties may agree in writing that Discovery Material produced and marked as Attorneys' Eyes Only may be disclosed to additional in-house attorneys.

8.   Designated Material shall be used only by individuals permitted access to it under Paragraphs 5 and 7. Designated Material, copies thereof, and the information contained therein, shall not be disclosed in any manner to any other individual, until and unless (a) outside counsel for the party asserting confidentiality waives the claim of confidentiality, and, in the case of Discovery Materials marked "Confidential Health Information," there exists a valid authorization by the individual to whom it relates that complies with the requirements of 45 C.F.R. § 164.508(6); or (b) the Court orders such disclosure.

9.   With respect to any depositions that involve a disclosure of Designated Material, the designating party shall have until fourteen (14) days after receipt of the final deposition transcript to inform all other parties which portions of the transcript, by page and line number, are to be designated as Confidential, Confidential Health Information, or Attorneys' Eyes Only, which period may be extended by agreement of the parties. During these fourteen (14 days), all deposition transcripts shall be treated as if they had been designated as Attorneys' Eyes Only in their entirety.

10.  If counsel for a Receiving Party objects to the designation of all or a portion of Discovery Material as Confidential, Confidential Health Information, or Attorneys' Eyes Only, the following procedure shall apply:

  a.   Counsel for the Receiving Party shall serve on the Producing Party a written objection to such designation, which shall describe with particularity by Bates number or deposition page and line number the documents or information in question and shall state the grounds for objection. Counsel for the Producing Party shall respond in writing to such objection within 14 days, and shall state with particularity the grounds for asserting that the Discovery Material is Confidential, Confidential Health Information, or Attorneys' Eyes Only. If no timely written response is made to the objection, the challenged designation will be deemed to be void. If the Producing Party makes a timely response to such objection asserting the propriety of the designation, counsel shall then confer in good faith in an effort to resolve the dispute. The challenged material shall be treated as it has been designated until the Producing Party agrees otherwise in writing or this Court issues an order rejecting the designation.

  b.   If a dispute as to a Confidential, Confidential Health Information, or Attorneys' Eyes Only designation of a document or item of information cannot be resolved by agreement, the party challenging the designation shall present the dispute to the Court initially by telephone or letter, in accordance with Local Civil Rule

37.1(a)(1), before filing a formal motion for an order regarding the challenged designation. The document or information that is the subject of the filing shall be treated as originally designated pending resolution of the dispute.

11. Any document designated Confidential, Confidential Health Information, or Attorneys' Eyes Only by a party or non-party and which document is filed with the Court shall be filed under seal in accordance with Local Civil Rule 5.3. Court filings that refer to Designated Material, but do not disclose the substance of that Designated Material, need not be filed under seal. However, any Court filing that would disclose the substance of any Designated Material must be filed under seal or with redactions to the extent necessary to preserve confidentiality of that material in accordance with Local Civil Rule 5.3.

12. Each person who has access to Designated Material shall take reasonable precautions to prevent the unauthorized or inadvertent disclosure of such material.

13. To the extent consistent with applicable law, the inadvertent or unintentional disclosure of Discovery Material that should have been marked as Designated Materials, regardless of whether the information, document or thing was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a party's claim of confidentiality, either as to the specific information, document or thing disclosed or as to any other material or information concerning the same or related subject matter. Such inadvertent or unintentional disclosure may be rectified by notifying in writing counsel for all parties to whom the material was disclosed that the material should have been designated under this Discovery Confidentiality Order within a reasonable time after the Producing Party discovers that the material was not properly marked. Such notice shall constitute a designation of the Discovery Material as Confidential, Attorneys Eyes Only, or Confidential Health Information under this Discovery Confidentiality Order.

14. When the inadvertent or mistaken disclosure of any Discovery Material protected by privilege or work-product immunity is discovered by the Producing Party and brought to the attention of the Receiving Party, the Receiving Party's treatment of such material shall be in accordance with Federal Rule of Civil Procedure 26(b)(5)(B). If a Producing Party asserts an inadvertently produced document is privileged in its entirety, the Producing Party shall produce a privilege log with respect to any such inadvertently disclosed information within five (5) business days of receiving confirmation from the Receiving Party that the inadvertently disclosed information has been returned or destroyed. If a Producing Party asserts that only a portion of an inadvertently produced document is privileged, it must reproduce the document in redacted form within five (5) business days of receiving confirmation from the Receiving Party that the inadvertently disclosed information has been returned or destroyed. The Receiving Party may request additional information regarding the redacted document to the extent necessary to evaluate whether to challenge the claim of privilege. The Producing Party shall provide that information within five (5) business days of receiving such request. Such inadvertent or mistaken disclosure of such information, document or thing shall not by itself constitute a waiver by the Producing Party of any claims of privilege or work-product immunity. However, nothing herein restricts the right of the Receiving Party to challenge

the Producing Party's claim of privilege if appropriate within a reasonable time after receiving notice of the inadvertent or mistaken disclosure. If such challenge involves moving the Court for an order compelling production, said motion shall be filed under seal, and neither the fact of the inadvertent production nor the content of any privileged portion of the Discovery Material at issue shall be asserted as a grounds or basis for entering such an order.

15. If a non-party serves a Party in this action with a request, subpoena, or order ("demand") for disclosure of Designated Material of a Designating Party, the Party receiving the demand, if not prohibited under applicable law, shall promptly deliver a copy of the demand to the Designating Party's counsel, and shall notify the party who served the request that some or all of the materials sought by the request are subject to this Confidentiality Order. The Party receiving the demand shall not disclose any Designated Material prior to the date specified for disclosure, or prior to resolution of any dispute regarding production of such material in response to the request. In its sole discretion and at its own cost, the Designating Party may oppose or seek to limit the demand in any legal manner. The Party who received the demand shall not oppose or otherwise interfere with the Designating Party's actions.

16. No information that is in the public domain or which is already known by the receiving party through proper means or which is or becomes available to a party from a source other than the party asserting confidentiality, rightfully in possession of such information on a non-confidential basis, shall be deemed or considered to be Confidential material under this Discovery Confidentiality Order.

17. This Discovery Confidentiality Order shall not deprive any party of its right to object to discovery by any other party or on any otherwise permitted ground. This Discovery Confidentiality Order is being entered without prejudice to the right of any party to move the Court for modification or for relief from any of its terms.

18. This Discovery Confidentiality Order shall survive the termination of this action and shall remain in full force and effect unless modified by an Order of this Court or by the written stipulation of the parties filed with the Court.

19. Upon final conclusion of this litigation, within 30 days of the final disposition of the litigation, each party or other individual subject to the terms hereof shall promptly return to the origination source, or, upon permission of the producing party, destroy all originals and unmarked copies of documents and things containing Designated Material and to destroy, should such source so request, all copies of Designated Material that contain and/or constitute attorney work product as well as excerpts, summaries and digests revealing Designated Material; provided, however, that counsel may retain complete copies of all motions, filings, transcripts and pleadings including any exhibits attached thereto, and copies of attorney work product, including counsel's emails, for archival purposes, subject to the provisions of this Discovery Confidentiality Order. Any copies of transcripts and pleadings including exhibits attached thereto retained by counsel for archival purposes shall, to the extent that they that contain or reference Confidential Health Information, be maintained in accordance with the requirements of HIPAA and

45 C.F.R. § 164.504(e)(2)(ii)(J) imposed on Business Associates to preserve the privacy of those transcripts and pleadings. Counsel to all Receiving Parties must certify compliance with these requirements within 45 days of the final disposition of the litigation.

20. To the extent a party requests the return of Designated material from the Court after the final conclusion of the litigation, including the exhaustion of all appeals therefrom and all related proceedings, the party shall file a motion seeking such relief.

21. This Court shall retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

We consent to the form and entry of the within Order.

Dated: November 21, 2022

GIBBONS, PC.
One Gateway Center
Newark, New Jersey 07102-5310
973-596-4500

*/s/ E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr., Esq.

SELENDY GAY ELSBERG, PLLC
David Elsberg
Andrew R. Dunlap
Meredith Nelson
1290 Avenue of the Americas
New York, NY 10104
212-390-9000

*Attorneys for Defendant*
*Save On SP LLC*

Dated: November 21, 2022

SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

*/s/ Jeffrey J. Greenbaum*
Jeffrey J. Greenbaum, Esq.

PATTERSON BELKNAP WEBB
& TYLER LLP
Adeel A. Mangi
George LoBiondo
Harry Sandick
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

**IT IS SO ORDERED**

       s/ Cathy L. Waldor

Dated: <u>November 22, 2022</u>      Honorable Cathy L. Waldor, U.S.M.J.

9

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHNSON & JOHNSON     :
HEALTH CARE SYSTEMS INC.,    Civil Action No. 22-2632 (JMV) (CLW)
           :
    Plaintiff,     **ENDORSEMENT OF**
  vs.       :  **PROTECTIVE ORDER**

SAVE ON SP, LLC,     :

    Defendant.    :

## **EXHIBIT A**

    I hereby attest that I understand that information or documents marked as Designated Material are provided to me subject to the Order dated _____, 2022 (the "Order"), in the above-captioned litigation ("Litigation"); that I have been given a copy of and have read the Order; and that I agree to be bound by its terms. I also understand that my signature below indicates my agreement to be bound by the Order and is a prerequisite to my review of any information or documents designated as Designated Material pursuant to the Order.

    I further agree that I shall not use Designated Material for any purpose other than as authorized in the Order and that, except as explicitly authorized in the Order, I shall not disclose Designated Material, in any form whatsoever, to others.

    I further agree to return or destroy Designated Material in my possession, custody, or control in the manner and time specified by the Order.

    I further agree and attest to my understanding that my obligation to honor the confidentiality of such Designated Material will continue even after this Litigation concludes.

    I further agree and attest to my understanding that, if I fail to abide by the terms of the Order, I may be subject to sanctions, including contempt of court, for such failure. I agree to be subject to the jurisdiction of the above-identified Court for the purposes of any proceedings relating to enforcement of the Order. I further agree to be bound by and to comply with the terms of the Order as soon as I sign this Agreement, regardless of whether the Order has been entered by the Court.

Date: _____

By: _____

# Exhibit 3

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHNSON & JOHNSON HEALTH CARE
SYSTEMS INC.,

                Plaintiff,

       v.

SAVE ON SP, LLC,

                Defendant.

Case No. 2:22-cv-02632-JMV-CLW

## STIPULATION AND ORDER
## GOVERNING THE EXCHANGE OF ELECTRONICALLY STORED INFORMATION

Upon agreement of the Parties for entry of an order establishing a protocol for the exchange

and production of documents in hard-copy format ("Documents") and electronically stored infor-

mation ("ESI"), as those terms are used in the Federal Rules of Civil Procedure, plaintiff Johnson

& Johnson Health Care Systems Inc. ("Plaintiff") and Defendant Save On SP, LLC ("Defendant")

(each a "Party" and, collectively, the "Parties") hereby stipulate ("ESI Stipulation") and the Court

orders as follows:

## I.    GENERAL PROVISIONS

A.    The Parties and non-parties producing Documents and ESI (each a "Producing

Party") shall prepare their Documents and ESI for production to the Parties receiving the

production (each a "Receiving Party") in accordance with this ESI Stipulation.

B.    If a provision of this agreement conflicts with the terms of the stipulated

Discovery Confidentiality Order (ECF No. 62) (the "Confidentiality Stipulation") entered in this

action,[1] the Confidentiality Stipulation will control absent further order of the Court.

---

[1] Defined terms in the Confidentiality Stipulation not otherwise defined herein are incorporated.

C. <u>Proportionality</u>

1. <u>Reasonable Discovery Limits</u>. The proportionality standard set forth in Rule 26(b)(1) shall apply to discovery in this action. Consistent with that proportionality standard, the Parties agree to cooperate in identifying appropriate limits on discovery, including phased discovery and reasonable limits on search terms and the number of custodians, on discoverable data sources, on the relevant period, and on the permissible scope of requests for production, specifically including the permissible scope of requests for emails. Requests for production of ESI, including requests for emails, shall be reasonably targeted, clear, and as specific as possible.

D. <u>No Designation of Discovery Requests</u>. Productions of Documents and ESI in the reasonably usable form set out in this protocol need not be organized and labeled to correspond to the categories in the requests.

## II. PRODUCTION OF HARD COPY DOCUMENTS

A. <u>TIFFs</u>. Producing Parties shall produce Documents in the form of single-page, Group IV TIFFs at 300 dpi. They shall name each TIFF image as its corresponding Bates number. They shall maintain Original Document orientation (*i.e.,* portrait to portrait and landscape to landscape). They shall provide TIFF image files in a self-identified "Images" folder.

B. <u>OCR Text Files</u>. Producing Parties shall provide Optical Character Recognition ("<u>OCR</u>") text files as a single text file for each Document, not one text file per page. They shall name each file with the beginning Bates number assigned to its corresponding Document, followed by .txt. They shall provide OCR text files in a self-identified "Text" directory. To the extent that a Document is redacted, they shall produce OCR text files for that Document that shall not contain text for redacted portions.

C.    Database Load Files/Cross-Reference Files. Unless otherwise agreed by the Parties, Producing Parties shall provide Documents with Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files) using standard Concordance delimiters. They shall provide Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files) in a self-identified "Data" folder.

D.    Coding Fields. Producing Parties shall produce Documents with at least the following searchable information in accompanying delimited data files: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodians, (6) OCRTextPath, (7) Confidentiality, and (8) Source. When a Producing Party determines in good faith judgment that it is practicable to accompany Documents with other metadata fields in Table I, the Producing Party shall produce those Documents with the practicable metadata fields. Producing Parties shall identify custodians using any of the following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first name_last name"; or "FLast." Producing Parties shall use a uniform description of a particular custodian, and separate multiple custodians in the "Custodian" field by a semicolon. For Documents with no individual custodian (*e.g.*, centralized files, document management systems), Producing Parties shall (a) use the relevant entity name(s) in the "Custodian" field and (b) identify the source of the Documents in the "Source" field.

E.    Bates Numbering. Producing Parties shall assign each TIFF image a Bates number that: (1) is unique across the entire production; (2) maintains a constant length across the entire production (*i.e.*, padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given Document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

F.  <u>Parent-Child Relationships</u>. Producing Parties shall preserve parent-child relationships (*i.e.*, the association between an attachment and its parent Document), to the extent they exist in the manner in which the Documents are maintained in the ordinary course of business. For example, if a Producing Party produces a printout of an email with its attachments, it shall produce such attachments behind the email in the order in which they were attached.

G.  <u>Color</u>. Producing Parties need not, in the first instance, produce Documents containing color in color format. The Receiving Party may request production of such Documents in color format by (1) providing a list of the Bates numbers of the Document(s); and (2) explaining the need for production of the Documents in color format. Consent to produce in color shall not be unreasonably withheld.

H.  <u>Unitizing of Documents</u>. A Producing Party shall not, when scanning Documents: (1) merge distinct Documents into a single record; or (2) split single Documents into multiple records (*i.e.*, Documents should be logically unitized).

## III.  PRODUCTION OF ESI

A.  <u>Technology Assisted Review ("TAR")</u>.

1.  Any Producing Party that wishes to use TAR agrees to disclose that intent to the Receiving Party before the Producing Party employs any TAR and must meet-and-confer with the Receiving Party regarding an appropriate TAR protocol. The Producing Party will identify the universe of Documents or ESI to which it intends to apply TAR. The Producing Party may not use TAR to limit or cull Documents or ESI to be reviewed without the prior consent of the Receiving Party.  If the parties are unable to reach agreement on an appropriate protocol, or if the Receiving Party withholds consent, any such disputes shall be resolved by the Court.

2.      The absence of a search term hit or retrieval by TAR methodology for a given ESI or Document does not automatically render it irrelevant. If any Producing Party identifies relevant ESI or Documents not hit upon by the search term filters noted above, it shall produce such non-privileged Documents and/or ESI, subject to the Producing Party's objections to discovery requests and rights under this ESI Protocol, the Local Rules, and this Court's individual rules.

3.      The fact that any electronic file has been identified in agreed-upon searches shall not prevent any Producing Party from withholding such file from production on the grounds that the file is not responsive or relevant, or that it is responsive or relevant but protected from disclosure by applicable privilege or immunity (in which case the Producing Party shall include it on a privilege log), or that the Protective Order entered in this Action allows the file to be withheld.

B.      <u>Avoidance of Duplicate Production</u>

1.      "Duplicate ESI" means files that are exact duplicates based on the files' MD5 hash, SHA-1 hash, email duplicate spare messages (as defined by Relativity), or SHA-256 hash values. The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (i.e., both within a particular custodian's files and across all custodians). Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When the same Duplicate ESI exists in the files of multiple custodians, the additional custodians shall be listed in the "All Custodians" field identified in Table I to the extent such information is available.

2.      The Parties may confer regarding other deduplication methods, such as the use of Textual Near Deduplication. Except for the removal of extracted logos, no custom deduplication method will be implemented without the consent of the Receiving Party, and such consent shall not be unreasonably withheld.

3.      If the Producing Party collects and processes additional ESI which contains duplicates of ESI previously produced, that Party also shall provide an overlay file to allow the Receiving Party to update the "All Custodians" field. The overlay file shall include both all custodians listed in the "All Custodians" field in prior productions and any custodians identified in the newly processed ESI.

C.      Email Threading

1.      Email threads are email communications that contain lesser-included email communications that also may exist separately in the Party's electronic document collection. A most-inclusive email is one that contains unique content and all the lesser-included emails, including attachments, for that branch of the email thread. The Parties agree that removal of available lesser-included emails from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting, and, when producing the most-inclusive email in a thread, the parties need not also produce lesser-included emails in the thread.

2.      Participants in lesser-included emails that otherwise would have been subject to review shall be listed in the most-inclusive email's "All Participants" field included in the data load file. With respect to an e-mail chain, the parties may produce the longest unique or most inclusive chain and the parties do not need to separately produce the lesser-included e-mails unless those lesser-included e-mails include unique attachments

6

not included in the longest chain or contain a BCC recipient not shown in the longest unique

chain. If a lesser-included e-mail includes a unique attachment, or if the lesser-included

email was modified in any way in a subsequent email, then the lesser-included e-mail must

be separately produced with the attachment.

D.     TIFFs. Producing Parties shall produce ESI in the form of single-page, black and

white, Group IV TIFFs at 300 dpi. They shall name each TIFF image as its corresponding Bates

number. They shall maintain original document orientation (*i.e.*, portrait to portrait and landscape

to landscape). They shall provide TIFF image files in a self-identified "Images" folder.

E.     Parent-Child Relationships. Producing Parties shall preserve parent-child

relationships (*i.e.*, the association between an attachment and its parent file).

F.     Metadata Fields and Processing. Producing Parties shall produce each of the

metadata and coding fields set forth in Table I that can be extracted from ESI for that ESI. They

are not obligated to populate manually any of the fields in Table I if such fields cannot be extracted

from the ESI, except for the following: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach,

(5) Custodians, (6) NativeLink, (7) Confidentiality, (8) Parent ID fields (which the Producing Party

or its vendor may populate), and (9) Source. They shall identify custodians using any of the

following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first

name_last name"; or "FLast." A Producing Party shall use a uniform description of a particular

custodian and separate multiple custodians by a semicolon in the "Custodians" field. For

documents with no individual custodian (*e.g.*, centralized files, document management systems),

Producing Parties shall (a) use the relevant entity name(s) in the "Custodian" field and (b) identify

the source of the documents in the "Source" field.

7

G.      Extracted Text Files. For all ESI (other than multimedia or graphic files), Producing Parties shall provide an extracted text file along with its corresponding TIFF image file(s) and metadata. They shall name each extracted text file such that it is identical to that of the first image page of its corresponding file, followed by .txt. They shall not use file names that contain special characters or embedded spaces and shall extract the text of native files directly from the native file. If a file contains redactions, however, the Producing Party may provide OCR of the redacted file in lieu of extracted text.

H.      Database Load Files/Cross-Reference Files.  Unless otherwise agreed to by the parties, Producing Parties shall include in each production (1) a metadata file (DAT file) using standard Concordance delimiters or carat pipe delimiters and (2) an image load file in Opticon format (.OPT file). They shall provide in a self-identified "Data" folder Concordance-compatible image and data load files (i.e., .OPT and DAT files).

I.      Native Files. The following governs the production of native files.

1.      Producing Parties shall produce PowerPoint presentations, source code, large diagrams, Excel files and/or .csv files, word processing files with tracked changes, comments, or hidden text (e.g., Word), desktop databases (e.g., Access), and audio/video multimedia files in native format ("Native Files"), unless they have redactions.

2.      Producing Parties shall provide native files in a self-identified "Natives" directory. Producing Parties shall produce each native file with a corresponding single-page TIFF placeholder image, which shall state the ESI is being produced as a native file and provide the Confidentiality Designation, if any. Producing Parties shall name each native file with the beginning Bates number that is assigned to that specific record in the production.

8

3.      Producing Parties shall include a "NativeLink" entry for each native file in the .DAT load file indicating the relative file path to each native file on the production media. Producing Parties shall produce native files with extracted text and applicable metadata fields as set forth in Paragraphs III.E and III.F. Producing Parties may produce redacted files in either native format or as TIFF image files and OCR in lieu of a Native File, TIFF placeholder image and extracted text file. Producing Parties shall exclude any metadata fields for redacted files that would reveal privileged information.

4.      If produced as a TIFF, each Producing Party shall make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals hidden data from redacted native files that are produced as TIFF image files and ensures that redacted native files will be formatted to be readable. (For example, column widths should be formatted so that numbers do not appear as "########").

J.      <u>Structured Data</u>. To the extent that responding to a discovery request requires production of ESI contained in a database, a Producing Party may query the database for discoverable information and generate and produce a report in a reasonably usable and exportable Excel or .csv format. The first line of each such file will, to the extent not unduly burdensome, show the column headers for each field of data included. The Parties shall meet and confer to finalize the appropriate data extraction and production format for specific information contained in a database.

K.      <u>Audio and Video Files.</u> Producing Parties shall produce audio and video files in a reasonably usable format as may be agreed upon by the Parties.

L.      <u>Requests for Other Native Files</u>. Other than as specifically set forth above, a Producing Party need not produce ESI in native format. The Receiving Party may request

9

production in native format of other documents by (1) providing a list of the Bates numbers of ESI it requests to be produced in native format; and (2) explaining the need for reviewing such ESI in native format. The Responding Party may object and any disputes will be resolved by the Court. If the Producing Party agrees to produce such a native file, the Producing Party shall produce in response to such request each native file with corresponding production number fields and a "NativeLink" entry in the DAT load file indicating the relative file path to each native file on the production media, all extracted text (other than for multimedia or graphic files), and applicable metadata fields set forth in Table I.

### Table I-ESI Metadata Fields

| FIELD NAME | DESCRIPTION |
|---|---|
| **Author** | Author of document, if identified in metadata |
| **Begin Bates** | Unique document identifier and the starting page of a document (*e.g.*, ABC00000001) |
| **Bates End** | The end number of a document (*e.g.*, ABC0000099) |
| **Bates Beg Attach** | The starting number of a group or family of documents (*e.g.*, ABC0000001) |
| **Bates End Attach** | The end number of a group or family of the document (*e.g.*, ABC0000099) |
| **Custodian** | The owner of a document |
| **All Custodians** | List of all custodians who had custody of the document; when global de-duplication is used, these are custodians whose file has been de-duplicated; multiple custodians separated by semicolons |
| **All Participants** | For emails only, lists all participants included in lesser-included emails that, without email threading, would have been subject to review |
| **Filename** | The original name of the file |
| **File Extension** | File extension of document (*e.g.*, .msg, .docx, .xlsx, etc.) |
| **File Size** | The size of the file |

| FIELD NAME | DESCRIPTION |
|---|---|
| **Document Type** | Type of document (*e.g.*, email, e-document, attachment, hardcopy) |
| **Date Created** | Date document was created (*e.g.*, 01/01/2001) |
| **Time Created** | Time document was created (*e.g.*, 17:00) |
| **Date Last Modified** | Date the document was last modified (*e.g.*, 01/01/2001) |
| **Time Last Modified** | Time the document was last modified (*e.g.*, 17:00) |
| **Date Last Accessed** | Last access date of the document as extracted during processing from the file metadata |
| **Time Last Accessed** | Last access time of the document as extracted during processing from the file metadata |
| **Date Sent** | Date email was sent (*e.g.*, 01/01/2001) |
| **Time Sent** | Time email was sent (*e.g.*, 17:00) |
| **Date Received** | Date email was received (*e.g.*, 01/01/2001) |
| **Time Received** | Time email was sent (*e.g.*, 17:00) |
| **Email From** | Sender of email |
| **Email Subject** | Subject line of email |
| **Email To** | Recipient(s) of email |
| **Email BCC** | Blind-copied recipients of email |
| **Email CC** | Copied recipients of email |
| **MD5 Hash** | MD5 Hash Value of file |
| **Native Link** | Relative file path of native file |
| **File Path** | Original file path where file was kept (by the custodian) |
| **Pages** | Number of pages per document |

| FIELD NAME | DESCRIPTION |
|---|---|
| Confidenti-ality | Confidential, Confidential Health Information, or Attorneys' Eyes Only |
| Redactions | Yes/No |
| Source | Person, shared drive, or other source from whom files were collected |
| Prod Vol-ume | Volume in which the Document was produced (*e.g.*, VOL001) |

M.     <u>Confidentiality Designations</u>. If a Producing Party reduces native files or other ESI designated "Confidential," "Confidential Health Information," and/or "Attorneys' Eyes Only," as defined by the Confidentiality Stipulation, to Document form, it shall mark the Document with the appropriate designation. Producing Parties shall produce all ESI designated as "Confidential," "Confidential Health Information," and/or "Attorneys' Eyes Only" with the designation in the metadata field pursuant to Table I and in the ESI itself.

N.     <u>Encryption of Production Media</u>. To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media. The Receiving Parties in this matter are on notice that certain data produced may originate from custodians in the European Union and the Receiving Parties therefore agree to follow the strictest security standards in guarding access to such data.

O.     <u>Time Zone</u>. Producing Parties shall produce all ESI normalized to Eastern Standard Time (EST).

## IV.     PROCESSING OF THIRD-PARTY DOCUMENTS

A.      A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Stipulation with the subpoena and request that the non-party produce Documents and ESI in accordance with the specifications set forth herein. If an Issuing Party issued a non-party subpoena prior to the execution of this ESI Stipulation, that Issuing Party shall promptly forward a copy of this ESI Stipulation to the non-party and request that the non-party produce Documents and ESI in accordance with the specifications set forth herein.

B.      The Issuing Party is responsible for producing to all other Parties any Documents and/or ESI obtained pursuant to a subpoena. If a non-party refuses to produce Documents and/or ESI in accordance with the specifications set forth here, the Issuing Party has no obligation to conform the non-party's production to such specifications.

C.      Nothing in this ESI Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

## V.     MISCELLANEOUS PROVISIONS

A.      This ESI Stipulation is intended solely to address the format of Document and ESI productions. Nothing in this ESI Stipulation is intended to affect the rights of any Party to object to any requests or demand for production. Nothing in this ESI Stipulation shall constitute, or operate as, a waiver of any rights of any Party to object to, or to avoid, discovery or disclosure, in whole or in part, under the laws of the United States, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of New Jersey, the Individual Practices of Magistrate Judge Cathy L. Waldor, the Individual Practices of Judge John Michael Vazquez, or any other applicable law, rule, or order.

13

B.      Nothing in this ESI Stipulation establishes any agreement as to either the temporal or subject matter scope of discovery or as to the relevance or admissibility of any Document or ESI. Nothing in this ESI Stipulation shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI.

C.      The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Stipulation. If a Producing Party, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Stipulation or if compliance with such material aspect would be unreasonable, such Producing Party shall inform the Receiving Party in writing as to why compliance with the Stipulation is impossible or unreasonable as soon as reasonably practicable.

D.      Nothing herein is intended to, nor shall be construed to, diminish or otherwise affect any Party's discovery obligations.

E.      Any application to the Court under or regarding this ESI Stipulation shall be made pursuant to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of New Jersey, and the Individual Practices of Magistrate Judge Cathy L. Waldor.

Dated: Newark, New Jersey
November 21, 2022

By: */s/Jeffrey J. Greenbaum*
Jeffrey J. Greenbaum
Katherine M. Lieb
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

Adeel A. Mangi
Harry Sandick
George LoBiondo
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas New
York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff Johnson &
Johnson Health Care Systems Inc.*

By: */s/ E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
ewohlforth@gibbonslaw.com

David Elsberg
Andrew R. Dunlap
Meredith Nelson
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas New
York, NY 10104
Tel: 212-390-9000

*Attorneys for Defendant Save On SP,
LLC*

SO ORDERED this 22nd day of November, 2022

s/ Cathy L. Waldor
HON. CATHY L. WALDOR
United States Magistrate Judge

15

# Exhibit 9

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for TrialCard Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JMV) (CLW) <br><br> **NON-PARTY TRIALCARD, INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** |

14168182

## GENERAL OBJECTIONS

TrialCard Incorporated ("TrialCard") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in TrialCard objections to a specific Request.

TrialCard reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action.  The following responses and objections are based upon information known at this time.

1.      TrialCard is not a party to the above-captioned litigation pending in the District of New Jersey (the "Action") and objects to the Subpoena's imposition of significant burden on it because the vast majority of Requests in the Subpoena can be satisfied by obtaining documents directly from Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), a party to the Action.  TrialCard notes that the requests in the Subpoena are nearly identical to document requests made by SaveOnSP to JJHCS in the Action, and JJHCS has already agreed to facilitate a production of TrialCard documents in response to those requests in party discovery. TrialCard objects to producing any documents unless and until SaveOnSP can demonstrate that it has not been able to obtain these documents in party discovery.

2.      TrialCard objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.  The inadvertent production by TrialCard of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the

1

basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

3.     TrialCard objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response TrialCard makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

4.     TrialCard objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

5.     TrialCard objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that TrialCard agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of TrialCard. Instead, it means that TrialCard will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

6.     TrialCard objects to the Requests to the extent that they seek information that is obtainable from sources other than TrialCard in a manner that is more convenient, less burdensome, or less expensive.

14168182

7.    TrialCard objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

8.    TrialCard objects to the Requests to the extent that they are vague and/or ambiguous.

9.    TrialCard objects to the Requests to the extent that they require interpretation by it in providing a response.  TrialCard responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that differs from TrialCard's understanding of that Request, TrialCard reserves the right to modify or supplement its objections and responses.

10.    TrialCard objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

11.    TrialCard objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. TrialCard further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

12.    TrialCard objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

13.    TrialCard objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

14.    TrialCard objects to the Requests to the extent that they seek the production of documents that are not in TrialCard's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.      TrialCard objects to the definition of the term "Janssen" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it purports to include

"any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates,

divisions or departments, agents, representatives, directors, officers, employees, committees,

attorneys, accountants, and all persons or entities acting or purporting to act on behalf" of those

entities.

2.      TrialCard objects to the definition of the term "Janssen Drug" as irrelevant to

the extent it purports to include drugs that are not covered by CarePath.

3.      TrialCard objects to the definition of the term "JJHCS" as overbroad, unduly

burdensome, and not proportional to the needs of the case to extent it purports to include "any

and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, . . .

agents, [or] representatives" or purports to include entities and persons acting or purporting to

act on behalf of or under the control of entities other than Johnson & Johnson Healthcare

Systems, Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical,

Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc.,

Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen

Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen

BioPharma LLC, and Janssen Research & Development LLC.

4.      TrialCard objects to the definition of the term "JJHCS Hub Entity" as vague

and as irrelevant to the extent it purports to include entities other than those responsible for

administering CarePath during the relevant Time Period.  TrialCard further objects to the

definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it includes "any and all predecessors and successors in interest, assignees, parents,

4

subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.  TrialCard further objects to the extent the term is used to seek documents and communications concerning entities other than JJHCS.

5.       TrialCard objects to the definition of the term "Lash Group" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc."

6.       TrialCard objects to the definition of the term "TrialCard" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc."  TrialCard further objects to the extent the term is used to seek documents and communications in the possession of entities other than TrialCard.

## OBJECTIONS TO INSTRUCTIONS

1.       TrialCard objects to the Instructions to the extent that they impose requirements on TrialCard beyond those required by the Federal Rules of Civil Procedure.

2.       TrialCard objects to Instruction No. 14 to the extent that SaveOnSP attempts to impose requirements on TrialCard beyond those required by the Federal Rules of Civil Procedure or ordered by the Court.  Rule 34, which contains a duty to supplement responses,

does not apply to requests for production directed to a non-party, and Rule 45 contains no duty
to supplement.

## OBJECTIONS TO THE TIME PERIOD FOR SPECIFIC REQUESTS

1.      TrialCard objects to SaveOnSP's Requests as overbroad, unduly burdensome,
and not relevant to the subject matter of this Action to the extent they call for documents from
before January 1, 2017 or after July 1, 2022.[1]

## SPECIFIC RESPONSES AND OBJECTIONS

### Request No. 1

From January 1, 2009 through the present, Documents sufficient to show the
organizational structure of TrialCard.

### Response to Request No. 1

In addition to the foregoing general objections, TrialCard, as a third party, objects
to this Request as irrelevant to any claim or defense in this Action to the extent it seeks
documents unrelated to the JJHCS groups responsible for the administration of CarePath.
TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional
to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

TrialCard has already agreed to produce through JJHCS certain responsive
documents, subject to JJHCS's objections and to those presented here, from the relevant Time
Period.  TrialCard will not search for or produce documents in response to the Request.

### Request No. 2

From January 1, 2009 through the present, Documents sufficient to show the
organizational structure of any group or division within TrialCard involved in developing,
managing, marketing, or administering CarePath and to identify their employees.

---

[1] For convenience, TrialCard refers to the period of January 1, 2017 to July 1, 2022 as the "Time Period."

14168182

<u>**Response to Request No. 2**</u>

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request to the extent it seeks the production of documents and information that are available from parties to the Action. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

TrialCard has already agreed to produce through JJHCS certain responsive documents, subject to JJHCS's objections and to those presented here, from the relevant Time Period. TrialCard will not search for or produce documents responsive to this Request.

<u>**Request No. 3**</u>

All Documents and Communications with or regarding SaveOnSP, including those between You and JJHCS, You and any patients, and You and any other Hub Entity.

<u>**Response to Request No. 3**</u>

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the attorney-client

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege,

the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

TrialCard has already agreed to produce through JJHCS certain responsive documents,

subject to JJHCS's objections and to those presented here, from the relevant Time Period.

TrialCard will not further search for or produce documents or communications in response to this

Request.

### Request No. 4

From January 1, 2009 through the present, all Documents and Communications
regarding the development, management, and marketing of CarePath or any other copay
assistance program offered for Janssen Drugs, including Documents and Communications
regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

### Response to Request No. 4

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as it seeks the production of documents and information relating to specific

allegations in the Complaint that are available from parties to the Action and, therefore, is unduly

burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the

production of documents and communications outside of TrialCard's possession, custody, and/or

control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks "all" documents and communications

regarding a broad subject matter. TrialCard further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period. TrialCard further objects to this Request

on the ground that the phrase "any other copay assistance program offered for Janssen Drugs" is

vague and ambiguous. TrialCard further objects to this Request as irrelevant to any claim or

defense in this Action to the extent it seeks documents unrelated to CarePath.

8

TrialCard will not search for or produce documents or communications responsive to this Request.

**Request No. 5**

From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) revisions to any of the CarePath terms and conditions for any Janssen Drug; and (d) Your understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

**Response to Request No. 5**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the final CarePath terms and conditions at issue.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.

TrialCard will not search for or produce documents or communications responsive to this Request.

**Request No. 6**

From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

**Response to Request No. 6**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the final CarePath terms and conditions at issue. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. TrialCard further objects to this Request to the extent it seeks documents and communications in the possession of entities other than TrialCard.

TrialCard will not search for or produce documents or communications responsive to this Request.

**Request No. 7**

From January 1, 2015 through the present, all Documents and Communications regarding Your understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its

10

regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

**Response to Request No. 7**

        In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request to the extent it calls for views on a legal question. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.

        TrialCard will not search for or produce documents or communications responsive to this Request.

**Request No. 8**

        All Documents and Communications regarding SaveOnSP's communications with Patients regarding CarePath, including allegedly misleading or confusing communications and JJHCS's allegations in Complaint ¶¶ 60-67, 109, ¶¶ 13, 75-77, 85-88.

**Response to Request No. 8**

        In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the

production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request to the extent it seeks "misleading or confusing communications," as those terms are vague and ambiguous.

TrialCard will not search for or produce documents or communications responsive to this Request.

**Request No. 9**

All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including JJHCS's allegations in Complaint ¶ 72.

**Response to Request No. 9**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request on the ground that the phrase "SaveOnSP's provision of services to qualified high deductible or health savings account plans" is vague and ambiguous.

TrialCard will not search for or produce documents or communications responsive to this Request.

**Request No. 10**

All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

**Response to Request No. 10**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 11**

All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 11**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications

14168182

regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 12**

All Documents and Communications regarding any alleged harm caused by SaveOnSP to any Patient by allegedly making their healthcare more expensive, including JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 12**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 13**

All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 13**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly

14

burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 14**

All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 14**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information about any Copay Assistance Program other than CarePath. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 15**

        All Documents and Communications regarding any alleged harm caused by SaveOnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 110, 115.

**Response to Request No. 15**

        In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request on the ground that the phrase "any alleged harm" is vague and ambiguous.

        TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 16**

        All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

**Response to Request No. 16**

        In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this

14168182

Request on the ground that the phrase "payment of any Patient's costs including those that accumulate towards the Patient's deductible or out-of-pocket maximum" is vague and ambiguous. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 17**

All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

**Response to Request No. 17**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter and seeks "complete databases from which [ ] data was drawn."

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 18**

From January 1, 2009 through the present, for each Janssen Drug for each year, Documents sufficient to show:

14168182

a.    all Patients receiving the Janssen Drug;

b.    the number of fills of the Janssen Drug received by each such Patient;

c.    the dosage of the Janssen Drug received by each such Patient for each fill;

d.    the projected number of Patients, average number of fills, and average dosage for the Janssen Drug;

e.    the cost to manufacture the Janssen Drug;

f.    the sales and marketing budget for the Janssen Drug;

g.    the price of the Janssen Drug;

h.    the revenue received by JJHCS from the Janssen Drug;

i.    all Patients enrolled in the CarePath program for the Janssen Drug;

j.    the dates on which each Patient was enrolled in CarePath;

k.    the amounts of copay assistance funds that JJHCS offered to each Patient enrolled in CarePath;

l.    the Janssen Drugs for which each Patient enrolled in CarePath received copay assistance; and

m.    all copay assistance payments that JJHCS made to or on behalf each Patient enrolled in CarePath.

## Response to Request No. 18

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP's conduct at issue, including information relating to Patient fills, the cost of manufacturing Janssen Drugs, the sales and marketing budgets for Janssen Drugs, and pricing

and revenue generated by Janssen Drugs. TrialCard further objects to this Request on the ground

that the phrases "the projected number of Patients, average number of fills, and average dosage

for the Janssen Drug," "the cost to manufacture the Janssen Drug," and "the price of the Janssen

Drug" are vague and ambiguous. TrialCard further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period.

TrialCard has already agreed to produce through JJHCS certain responsive

documents, subject to JJHCS's objections and to those presented here, from the relevant Time

Period. TrialCard will not further search for or produce documents or communications in

response to this Request.

**Request No. 19**

From January 1, 2009 through the present, for each Janssen Drug for each year,
all Documents and Communications regarding:

a.    JJHCS's determination of the amounts of copay assistance funds that JJHCS
      offered to Patients enrolled in CarePath, including the determination of the
      maximum program benefit per calendar year for the Janssen Drug;

b.    JJHCS's budget for CarePath, including the sales and marketing budget;

c.    JJHCS's actual and projected annual costs for CarePath;

d.    JJHCS's use of or accounting for unused CarePath funds;

e.    the impact of the Affordable Care Act on JJHCS's CarePath budget or funding,
      including the impact of laws and regulations regarding out-of pocket maximums;

f.    JJHCS's and Janssen's revenue and revenue projections from fills by Patients
      enrolled in CarePath;

g.    the impact of CarePath on Janssen's sales of any Janssen Drug;

h.    the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

i.    JJHCS's or Janssen's actual and projected return on investment for CarePath; and

> j.    any analysis of the adherence rates of Patients enrolled in CarePath to Janssen
> Drugs, including such Patients enrolled in plans advised by SaveOnSP.

**Response to Request No. 19**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP's conduct at issue, including information relating to the sales and marketing budget for CarePath, JJHCS's uses of or accounting for unused CarePath funds, the impact of the Affordable Care Act or other laws and regulations on CarePath's budget or funding, JJHCS's and Janssen's revenue and revenue projections from fills by patients enrolled in CarePath, the impact of CarePath on Janssen sales of any Janssen Drug, the impact of CarePath on JJHCS's or Janssen's gross to net calculations, JJHCS's or Janssen's actual or projected return on investment for CarePath, and the adherence rates of Patients enrolled in CarePath to Janssen Drugs. TrialCard further objects to this Request on the ground that the phrases "the projected number of Patients, average number of fills, and average dosage for the Janssen Drug," "JJHCS's or Janssen's gross to net calculations," and "JJHCS's or Janssen's actual and projected return on investment for CarePath" are vague and ambiguous. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a variety of broad subject matters. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period.

TrialCard will not search for or produce documents and communications responsive to this Request.

## Request No. 20

All Documents and Communications regarding JJHCS's attempts to limit or eliminate the amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs, including Documents and Communications regarding JJHCS's attempts to limit or eliminate the availability of CarePath copay assistance funds available to Patients enrolled in health plans advised by SaveOnSP.

## Response to Request No. 20

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information beyond the final CarePath terms and conditions at issue. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

## Request No. 21

All Documents and Communications regarding any offer by JJHCS to provide to any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance funds available to a Patient.

21

14168182

**Response to Request No. 21**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the extent to which SaveOnSP has caused JJHCS to pay more in copay assistance than it otherwise would have. TrialCard further objects to this Request on the ground that the phrases "CarePath funds greater than the amounts that JJHCS generally offers CarePath Patients" and "to waive any limitation on or elimination of the amount of CarePath copay assistance funds available" are vague and ambiguous. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 22**

All Documents and Communications regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans.

**Response to Request No. 22**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications

14168182

outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this

Request as irrelevant to any claim or defense in this Action to the extent it calls for information

unrelated to SaveOnSP's conduct at issue.  TrialCard further objects to this request as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all"

documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications

responsive to this Request.

## Request No. 23

From any time, all Documents and Communications regarding TrialCard's
negotiations or agreements regarding the potential use of any Copay Maximizer Service or
Copay Accumulator Service, for TrialCard's Employee Health Plans, including any
abandonment of those negotiations or agreements.

## Response to Request No. 23

In addition to the foregoing objections, TrialCard, as a third party, objects to this

Request as irrelevant to any claim or defense in this Action to the extent it seeks information

about "the potential use of any Copay Maximizer Service or Copay Accumulator Service,"

which is unrelated to SaveOnSP's conduct at issue.  TrialCard further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  TrialCard further

objects to this Request insofar as it seeks the production of documents and communications

outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents and communications outside of the relevant Time Period.  TrialCard

further objects to this Request to the extent it seeks information that is exempt from discovery

and protected from disclosure by a privilege including, without limitation, the attorney-client

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court and relevant case law.

TrialCard will not search for or produce documents and communications responsive to this Request.

## Request No. 24

Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coordinators.

## Response to Request No. 24

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this request as irrelevant to any claim or defense in this Action to the extent it calls for information about "JJHCS Hub Entities" or "CarePath Care Coordinators" that are not implicated in this litigation. TrialCard further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in TrialCard's Objections to Definitions.

TrialCard will not search for or produce documents and communications responsive to this Request.

## Request No. 25

From January 1, 2009 through the present, Documents sufficient to show the economic terms of JJHCS's retention of or agreements with You, including any assessment of the fair market value of those services.

## Response to Request No. 25

In addition to the foregoing general objections, TrialCard, as a third party, objects

24

to this Request as it seeks the production of documents and information that are available from

parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further

objects to this Request insofar as it seeks the production of documents and communications

outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this

Request on the ground that "any assessment of the fair market value of those services" is

irrelevant.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks documents and communications

outside of the relevant Time Period.  TrialCard further objects to this Request to the extent it

seeks information that is exempt from discovery and protected from disclosure by a privilege

including, without limitation, the attorney-client privilege, the work product doctrine, the joint

defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local

Rules of the Court, and relevant case law.

TrialCard will not search for or produce documents and communications

responsive to this Request.

**Request No. 26**

From January 1, 2009 through the present, documents sufficient to show the
percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any
JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen
Drugs.

**Response to Request No. 26**

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as it seeks the production of documents and information that are available from

parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further

objects to this Request insofar as it seeks the production of documents and communications

outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this

14168182

Request as irrelevant to any claim or defense in this Action to the extent it calls for information

unrelated to SaveOnSP's misconduct, including information about JJHCS's advertising or

marketing of CarePath or Janssen Drugs. TrialCard further objects to this Request on the ground

that the phrase "Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any

JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen

Drugs" is vague and ambiguous. TrialCard further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period. TrialCard further objects to this Request to

the extent it uses the terms "JJHCS Hub Entity" for the reasons stated in TrialCard's Objections

to Definitions.

TrialCard will not search for or produce documents and communications

responsive to this Request.

**Request No. 27**

From January 1, 2015 through the present, all Documents and Communications
relating to Copay Accumulator Services and Copay Maximizer Services and their effect on
JJHCS's return on investment for copay assistance dollars.

**Response to Request No. 27**

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as it seeks the production of documents and information that are available from

parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further

objects to this Request insofar as it seeks the production of documents and communications

outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this

Request as irrelevant to any claim or defense in this Action to the extent it calls for information

about other "Copay Accumulator Services and Copay Maximizer Services" other than

SaveOnSP. TrialCard further objects to this Request on the ground that the phrase "JJHCS's

26

return on investment for copay assistance dollars" is vague and ambiguous. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 28**

From January 1, 2015 through the present, all Documents and Communications relating to Your understanding of the terms "copay accumulator" and "copay maximizer."

**Response to Request No. 28**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to SaveOnSP's conduct at issue. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request as unduly burdensome to the extent it seeks documents and communications outside of the relevant Time Period. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

TrialCard will not search for or produce documents and communications

14168182

responsive to this Request.

## Request No. 29

All Documents and Communications concerning non-medical switching by participants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

## Response to Request No. 29

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents or communications responsive to this Request.

## Request No. 30

Your document retention policies.

## Response to Request No. 30

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are not relevant to the Action. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege,

28

the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the

Court, and relevant case law.

TrialCard will through JJHCS produce documents responsive to this Request for

the relevant Time Period.

**Request No. 31**

Complete data dictionaries for any data that You produce.

**Response to Request No. 31**

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as it seeks the production of documents and information that are not relevant to

the Action.  TrialCard further objects to this Request on the ground that "data dictionaries for

any data that You produce" is vague and ambiguous.  JJHCS further objects to this Request to

the extent that it purports to require the creation of any document or record in a format not kept

by TrialCard or seeks to impose production obligations that exceed those required by the Rules

of Federal Procedure, the Local Rules of the Court, this Court's or with any applicable

agreement among the parties.

TrialCard will not search for or produce documents responsive to this Request.

**Request No. 32**

From any time, all Documents and Communications regarding this Action
provided to you by any person or entity other than SaveOnSP, including in response to
subpoenas served in this Action.

**Response to Request No. 32**

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as it seeks the production of documents and information that are available from

parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further

29

objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this Request on the ground that the phrase "all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP" is vague and ambiguous. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.  TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of Court, and relevant case law.

TrialCard will not search for or produce documents or communications responsive to this Request.

Dated: March 6, 2023

By:    /s/DRAFT_____

Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for TrialCard Inc.*

14168182

14168182

# Exhibit 10

David Elsberg
Andrew R. Dunlap
Meredith Nelson
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

E. Evans Wohlforth, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JMV) (CLW) <br><br> **DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

To:    Jeffrey J. Greenbaum, Esq.
       SILLS CUMMIS & GROSS, P.C.
       One Riverfront Plaza
       Newark, New Jersey 07102
       973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New

*Attorneys for Plaintiff Johnson & Johnson
Health Care Systems Inc.*

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26 and 34,

Defendant Save On SP, LLC ("SaveOnSP") requests Plaintiff Johnson & Johnson Health Care

Systems Inc. ("JJHCS"), to produce for inspection and copying the documents listed in these Re-

quests, to the office of the undersigned within 30 days of being served or at a time and place mu-

tually agreed by the parties or ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that this demand for production of documents

shall be deemed continuing in nature so as to require supplemental responses if Plaintiff or Plain-

tiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's

responses are served.

Dated:  November 11, 2022            By:  /s/ Andrew R. Dunlap
                                         David Elsberg
                                         Andrew R. Dunlap
                                         Meredith Nelson
                                         SELENDY GAY ELSBERG, PLLC
                                         1290 Avenue of the Americas
                                         New York, NY 10104
                                         212-390-9000
                                         deslberg@selendygay.com
                                         adunlap@selendygay.com
                                         mnelson@selendygay.com

                                         E. Evans Wohlforth, Jr.
                                         GIBBONS P.C.
                                         One Gateway Center
                                         Newark, NJ 07102-5310

973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

## DEFINITIONS

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses.

3.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.      "Action" means this litigation styled as "*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (JMV) (CLW).

6.      "Affordable Care Act" means the Patient Protection and Affordable Care Act, Pub. L. 148, 124 Stat. 119.

7.      "All," "any," and "each" mean any and all.

8.      "And" and "or" are construed both conjunctively and disjunctively.

9.      "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

10.    "CarePath Care Coordinator" means any person or entity encompassed by that term as used on CarePath's "Contact Us" webpage,[1] as well as any person responsible for communicating with patients who contact CarePath via an advertised help number (*e.g.*, 877-CarePath).

11.    "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

12.    "Complaint" means JJHCS's May 4, 2022 Complaint [ECF No. 1] or any subsequently amended Complaint in this Action.

13.    "Copay Accumulator Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

14.    "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

15.    "Copay Maximizer Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay

---

[1] *See* Contact Us, https://www.janssencarepath.com/patient/contact-us (last visited October 25, 2022).

assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maximizer."

16.    "Document" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

17.    "ESI" means "electronically stored information" as defined in the Federal Rules of Civil Procedure.

18.    "Essential Health Benefit" means, in the context of prescription drug benefits at issue in this case, (a) a prescription drug benefit that satisfies the requirement for a plan to provide essential prescription drug benefits under the Affordable Care Act or that is treated as such by a plan;[2] and (b) any definition JJHCS ascribes to the term "essential health benefit" as used in the Complaint.

19.    "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

20.    "Including" means including but not limited to.

21.    "Janssen" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents,

---

[2] 45 C.F.R. §§ 156.122, 156.115.

6

representatives, directors, officers, employees, committees, attorneys, accountants, and all persons

or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc.,

Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

22.    "Janssen Drug" means any Specialty Drug manufactured or sold by Janssen from

any time for which patients may receive copay assistance, including BALVERSA, DARZALEX,

DARZALEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, REMICADE, RYBREVANT,

SIMPONI, STELARA, TRACLEER, TREMFYA, UPTRAVI, and ZYTIGA, as well as any other

specialty drugs that JJHCS asserts are at issue in this Action.

23.    "JJHCS's Employee Health Plans" means any health plan offered by JJHCS or

Janssen to its employees.

24.    "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all pre-

decessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or depart-

ments, agents, representatives, directors, officers, employees, committees, attorneys, accountants,

and all persons or entities acting or purporting to act on behalf or under the control of Johnson &

Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil

Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals,

Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development,

LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc.,

Janssen BioPharma LLC, and Janssen Research & Development LLC.

25.    "JJHCS Access Group" means the team operating within and for JJHCS under this

or a substantially similar name (*i.e.*, Access Group, Access Team, or Access Division).

26.     "JJHCS Health Economics Group" means the team operating within and for JJHCS under this or a substantially similar name (*i.e.*, Health Economics Group, Health Economics Team, or Health Economics Division).

27.     "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer, in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of such an entity.

28.     "JJHCS Outcome Group" means the team operating within and for JJHCS under this or a substantially similar name (*i.e.*, Outcome Group, Outcome Team, or Outcome Division).

29.     "Lash Group" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

30.     "Non-Essential Health Benefits" means, in the context of prescription drug benefits at issue in this case, (a) any prescription drug benefit covered by a plan in excess of those necessary for a plan to satisfy the requirements for providing essential prescription drug health benefits under the Affordable Care Act[3] and designated by the plan as a non-essential health benefit; and (b) any definition JJHCS ascribes to the term "non-essential health benefits" as used in the Complaint.

31.     "Parties" means "SaveOnSP" and "JJHCS."

32.     "Patient" means a natural person prescribed or eligible to be prescribed any Janssen Drug, whether or not they use CarePath or are a participant in a health plan advised by SaveOnSP.

---

[3] *See* 45 C.F.R. §§ 156.122, 156.115.

33.  "Person" means a natural person or legal entity including any business or governmental entity or association.

34.  "Regarding" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

35.  "Request" means any of these Requests for Production.

36.  "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Save On SP, LLC.

37.  "SaveOnSP IPBC Video" means the IPBC and SaveOnSP training video created by Express Scripts as defined in Complaint ¶ 9.

38.  "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

39.  "Stelara" means the Janssen Drug sold under that name.

40.  "Tremfya" means the Janssen Drug sold under that name.

41.    "TrialCard" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

42.    "You" and "Your" means JJHCS.

## INSTRUCTIONS

1.    These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 34(a)(1).

2.    These Requests seek production of nonprivileged material. Fed. R. Civ. P. 26(b)(1).

3.    These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4.    For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 34(b)(2)(C).

5.    If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

6.    If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest. Fed. R. Civ. P. 34(b)(2)(C).

7.    If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 26(b)(5)(A)(ii), including by indicating whether any document exists regarding the information

10

requested and stating, to the extent the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked, Local Rule 34.1.

8.    If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction, the reason for its destruction, the name of the person who requested or authorized its destruction, and the name of the person who destroyed it.

9.    Produce documents as they are kept in the usual course of business. Fed. R. Civ. P. 34(b)(E)(i). For each document, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

10.    Produce electronically stored information in the form and manner required by any agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

11.    Produce each document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

12.    Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notations, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

13.    These Requests are deemed continuing. If after responding to any Request you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).

## TIME PERIOD

Unless otherwise specified, these Requests cover from and including January 1, 2017, through the present.

## REQUESTS

1.    From January 1, 2009 through the present, Documents sufficient to show JJHCS's organizational structure, including organizational charts.

2.    From January 1, 2009 through the present, Documents sufficient to show Janssen's organizational structure, including organizational charts.

3.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of each JJHCS Hub Entity.

4.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of any group or division within JJHCS, Janssen, or any JJHCS Hub Entity involved in developing, managing, marketing, or administering CarePath or any other copay assistance program offered for Janssen Drugs, and to identify their employees.

5.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of JJHCS's Health Economics, Access, and Outcome Groups and to identify employees working in those groups.

6.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of the drug product team for each Janssen Drug, and to identify employees working on those teams.

7.    From January 1, 2009 through the present, documents sufficient to identify all natural persons with decisionmaking authority over the sale or marketing of Janssen Drugs.

8.    All Documents and Communications with or regarding SaveOnSP.

9.      All Communications by JJHCS or Janssen with any Patient regarding SaveOnSP, including any Documents regarding those Communications.

10.     All Documents and Communications regarding any presentation, document, or information regarding SaveOnSP referenced in the Complaint, including the "SaveOnSP IPBC Video" and the materials referenced in Complaint ¶¶ 82-88.

11.     From January 1, 2009 through the present, all Documents and Communications regarding the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

12.     From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) JJHCS's decision to revise any of its CarePath terms and conditions for any Janssen Drug; and (d) JJHCS's understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

13.     From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

14.     From January 1, 2015 through the present, all Documents and Communications regarding JJHCS's or any JJHCS Hub Entity's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under

the Affordable Care Act and its regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

15.     All Documents and Communications regarding SaveOnSP's communications with Patients regarding CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 60-67, 109.

16.     All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 72.

17.     All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

18.     All Documents and Communications regarding any allegedly misleading or confusing communications between SaveOnSP and Patients, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 13, 75-77, 85-88.

19.     All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

20.     All Documents and Communications regarding any publicly distributed material (including, for example, articles, op-eds, white papers, and online postings) regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services, including Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect involvement with such material and JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect funding of the authors, publishers, or distributors of such material.

21. All Documents and Communications regarding any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services.

22. All Documents and Communications regarding any alleged harm caused by Save-OnSP to any Patient by allegedly making their healthcare more expensive, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

23. All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

24. All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than Care-Path, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

25. All Documents and Communications regarding any alleged harm caused by Save-OnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 110, 115.

26. All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

27. All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

28. From January 1, 2009 through the present, for each Janssen Drug for each year, Documents sufficient to show:

a.    all Patients receiving the Janssen Drug;

b.    the number of fills of the Janssen Drug received by each such Patient;

c.    the dosage of the Janssen Drug received by each such Patient for each fill;

d.    the projected number of Patients, average number of fills, and average
dosage for the Janssen Drug;

e.    the cost to manufacture the Janssen Drug;

f.    the sales and marketing budget for the Janssen Drug;

g.    the price of the Janssen Drug;

h.    the revenue received by JJHCS from the Janssen Drug;

i.    all Patients enrolled in the CarePath program for the Janssen Drug;

j.    the dates on which each Patient was enrolled in CarePath;

k.    the amounts of copay assistance funds that JJHCS offered to each Patient
enrolled in CarePath;

l.    the Janssen Drugs for which each Patient enrolled in CarePath received
copay assistance;

m.    all copay assistance payments that JJHCS made to or on behalf each Pa-
tient enrolled in CarePath; and

29.    From January 1, 2009 through the present, for each Janssen Drug for each year, all
Documents and Communications regarding:

a.    JJHCS's determination of the amounts of copay assistance funds that
JJHCS offered to Patients enrolled in CarePath, including the determina-
tion of the maximum program benefit per calendar year for the Janssen
Drug;

16

b.    JJHCS's budget for CarePath, including the sales and marketing budget;

c.    JJHCS's actual and projected annual costs for CarePath;

d.    JJHCS's use of or accounting for unused CarePath funds;

e.    the impact of the Affordable Care Act on JJHCS's CarePath budget or funding, including the impact of laws and regulations regarding out-of-pocket maximums;

f.    JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath;

g.    the impact of CarePath on Janssen's sales of any Janssen Drug;

h.    the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

i.    JJHCS's or Janssen's actual and projected return on investment for CarePath; and

j.    any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by SaveOnSP.

30.    From January 1, 2009 through the present, for each year for each Janssen Drug, all Documents and Communications regarding the basis for Janssen's decision to raise or lower the price of the Janssen Drug, including labor or manufacturing costs or the increase in efficacy of the Janssen Drug.

31.    All Documents and Communications regarding JJHCS's attempts to limit or eliminate the amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs, including Documents and Communications regarding JJHCS's attempts to limit or eliminate the

17

availability of CarePath copay assistance funds available to Patients enrolled in health plans advised by SaveOnSP.

32.    All Documents and Communications regarding any offer by JJHCS to provide to any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance funds available to a Patient.

33.    All Documents and Communications regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans.

34.    From any time, all Documents and Communications regarding JJHCS's or Janssen's negotiations or agreements regarding the potential use of SaveOnSP's services, or the services of any Copay Maximizer Service or Copay Accumulator Service, for JJHCS's Employee Health Plans, including JJHCS's abandonment of those negotiations or agreements.

35.    Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coordinators.

36.    From January 1, 2009 through the present, Documents sufficient to show the economic terms of JJHCS's retention of or agreements with any JJHCS Hub Entity or CarePath Care Coordinator regarding CarePath, including any assessment of the fair market value of those services.

37.    From January 1, 2009 through the present, documents sufficient to show the percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs.

18

38.     From January 1, 2009 through the present, all Documents and Communications received by JJHCS from any JJHCS Hub Entity or sent by JJHCS to any JJHCS Hub Entity regarding SaveOnSP or CarePath.

39.     All Documents and Communications received by JJHCS from any CarePath Care Coordinator regarding SaveOnSP.

40.     All Communications by any JJHCS Hub Entity or CarePath Care Coordinator with any Patient regarding SaveOnSP, including any Documents regarding those Communications and talk tracks or scripts prepared for use during those Communications.

41.     From January 1, 2015 through the present, all Documents and Communications relating to Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's return on investment for copay assistance dollars.

42.     From January 1, 2015 through the present, all Documents and Communications relating to JJHCS's or any JJHCS Hub Entity's understanding of the terms "copay accumulator" and "copay maximizer."

43.     All Documents and Communications concerning non-medical switching by participants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

44.     To the extent not requested above, Documents and Communications of any JJHCS Hub Entity or CarePath Care Coordinator regarding the topics of all Requests listed above.

45.     JJHCS's, Janssen's, any JJHCS Hub Entity's, and any CarePath Care Coordinator's document retention policies.

46.     Complete data dictionaries for any data that You produce.

19

47.    From any time, all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP, including in response to subpoenas served in this Action.

48.    To the extent not requested above, from any time, all Documents and Communications upon which you may rely in this Action.

# Exhibit 11



June 7, 2023

Katherine Brisson
(212) 336-2552

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

> **Re:** ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
> **Case No. 2:22-cv-02632 (ES) (CLW)**

Dear Emma:

We write in response to your May 31, 2023 letter regarding the subpoena issued to TrialCard, Inc. ("TrialCard") and TrialCard's April 24, 2023 document production.

## I.    Requests for Which TrialCard Agreed to Produce Documents

RFP No. 3:  TrialCard confirms that it has filtered its case and task notes by the Janssen drugs at issue in this litigation:  Balversa, Darzalex, Darzalex Faspro, Erleada, Imbruvica, Opsumit, Prezcobix, Remicade, Rybrevant, Simponi, Stelara, Symtuza, Tracleer, Tremfya, Uptravi, Ventavis, and Zytiga.[1]  The case and task notes that TrialCard anticipates producing will include patients who receive Janssen CarePath copay assistance for at least one Janssen drug at issue in this litigation, regardless of whether that is the only Janssen drug for which they receive copay assistance.  TrialCard anticipates producing over 19,000 call notes based on the application of the previously agreed-upon twelve search terms.

Despite TrialCard's extensive efforts to identify and produce responsive documents, SaveOnSP now proposes that TrialCard supplement its already broad search parameters to include two additional terms: "out-of-pocket" and "OOP."  TrialCard declines to do so.  These terms are overinclusive, and their application would present a substantial burden, which is particularly pronounced for a third-party like TrialCard.  Nearly every call with TrialCard relating to the CarePath program likely involves some mention or reference to the terms "out-of-pocket" or "OOP."  Indeed, providing financial assistance to enable patients to meet their out-of-pocket obligations is a primary service that the CarePath program provides.  SaveOnSP is not

---

[1] As we have noted several times, *e.g.*, Ltr. from H. Sandick (for JJCHS) to A. Dunlap dated Apr. 11, 2023, Valchlor is not a Janssen drug.

Emma Holland, Esq.
June 7, 2023
Page 2

entitled to every call concerning out-of-pocket costs without some reasonable subject matter limitation, which is precisely what TrialCard's existing search terms already establish.

SaveOnSP also asks TrialCard to confirm that it "has investigated whether it possesses documents responses to RFP No. 3 beyond the above-described patient calls and the results of that investigation." TrialCard has conducted a reasonable investigation and has determined that it possesses no additional responsive materials beyond what it understands has been or will be produced through JJHCS.

## II.     TrialCard's Investigation and Responses Regarding Other RFPs

RFP Nos. 5, 6, 8, 10–17, 20–22, 24–25, and 32:  Following a reasonable investigation, we confirm that TrialCard does not have any documents responsive to these RFPs other than what it has already agreed to produce.  If TrialCard becomes aware of any responsive documents in its possession that are not also in the possession of JJHCS, it will notify SaveOnSP.

RFP Nos. 7, 9, and 29:  These requests each seek documents that improperly go beyond TrialCard's implementation of the Janssen CarePath program.  In particular, RFP No. 7 seeks documents concerning TrialCard's "understanding" of commercial insurers' designation of specialty drugs; RFP No. 9 seeks TrialCard's documents concerning SaveOnSP's provision of services to qualified high deductible or health savings account plans; and RFP No. 29 seeks TrialCard's documents concerning the non-medical switching of patients who are subject to SaveOnSP's services or other accumulators or maximizers besides SaveOnSP.  None of these requests have anything to do with TrialCard's provision of services to JJHCS.  TrialCard's understanding of the health insurance market and its participants in the abstract is irrelevant to its actual implementation of the Janssen CarePath program and, thus, is immaterial to the claims at issue.  Accordingly, TrialCard will limit its responses to these requests as previously described in its May 12 letter.

However, as also previously noted in our May 12 letter, TrialCard has published various written materials encompassing the subject of copay accumulator and maximizer programs generally, some of which may touch on the requests at issue.  Without conceding the responsiveness or relevance of these documents, we note that they are publicly available at https://corp.trialcard.com/resources/.

RFP Nos. 13–15, 17, 20, and 22:  As we explained in our May 12 letter, TrialCard's contributions to any analyses responsive to these requests would have been provided at the request of, or in consultation with, JJHCS.  Accordingly, TrialCard would have furnished any such deliverables to JJHCS, which, in turn, would be captured by JJHCS's document productions (since SaveOnSP has served virtually identical requests on JJHCS).

TrialCard understands that, to date, JJHCS has produced more than 4,000 communications between JJHCS and TrialCard and related documents.  This includes work orders for the Cost Adjustment Program ("CAP") referenced in your May 31 letter, *e.g.*,

Emma Holland, Esq.
June 7, 2023
Page 3

JJHCS_00001497, JJHCS_00037297; the CAP project requirements and business rules that JJHCS provided to TrialCard, *e.g.*, JJHCS_00077384, JJHCS_00077393; and over 1,000 documents and communications regarding the implementation of CAP. These materials are more than sufficient for SaveOnSP to understand the scope and nature of the work that TrialCard performed at JJHCS's direction.

SaveOnSP nevertheless seeks discovery into TrialCard's documents generated outside of its relationship with JJHCS or not furnished to JJHCS. Such documents are entirely irrelevant to the claims and defenses at issues, and as a third-party, TrialCard need not produce such materials. Accordingly, TrialCard will not produce documents in response to these requests.

RFP No. 26: Following a reasonable investigation, TrialCard does not possess any data, analyses, or other information about patient enrollment in CarePath responsive to this RFP.

## III.    TrialCard's April 24, 2023 Production

RFP Nos. 1–2: TrialCard will produce additional organizational charts in a forthcoming production.

RFP No. 3: TrialCard has produced all responsive patient letters to SaveOnSP in its April 24 production. It has no additional materials to produce in response to RFP No. 3.

RFP No. 18(i)–(m): TrialCard anticipates producing additional medical benefit claims data responsive to this request in a forthcoming production.

RFP No. 30: In its April 24 production, TrialCard produced its only Company-wide document retention policy, which was published in 2023. *See* TRIALCARD_00000125. It has no additional materials to produce in response to RFP No. 30.

Identification of Custodians: TrialCard has conducted a reasonable investigation to respond to SaveOnSP's document requests and has produced documents from a variety of non-custodial repositories. TrialCard will not further identify the specific non-custodial source for each document it has produced.

Very truly yours,

*/s/Katherine Brisson*
Katherine Brisson

# Exhibit 12



December 6, 2023

Sara Arrow
(212) 336-2031

**By Email**

Hannah Miles, Esq.
Selendy Gay Elsberg, PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,*
> **Case No. 2:22-cv-02632-ES-CLW**

Dear Hannah:

We write on behalf of TrialCard in response to your November 30 letter regarding the applicable time period for TrialCard's document productions in response to the subpoena dated February 17, 2023.

You claim that, during a meet and confer on April 25, 2023, we "agreed that TrialCard's productions would generally conform to the Court's orders as to JJHCS, including adjusting the time period for TrialCard's productions in line with JJHCS's." Suffice it to say, we disagree with your characterization of TrialCard's assertions during the April 25 meet and confer. At no point during the meet and confer did TrialCard and SaveOnSP contemplate or discuss a complete update of all discovery responses through November 7, 2023, much less agree to undertake the same.

In any event, the Court's November 7, 2023 Order does not impose obligations on TrialCard as a third party, nor are we aware of any other third party (including your business partners, Express Scripts Inc. or Accredo Health Group, Inc.) undertaking a comparable production update pursuant to that Order. As a result, we decline your invitation to update our discovery responses, including productions, through November 7, 2023.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

# Exhibit 13



www.pbwt.com

December 22, 2023

Sara A. Arrow
(212) 336-2031

**By Email**

Elizabeth Snow, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

      **Re:**    *Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC*
                **Case No. 2:22-cv-02632 (ES) (CLW)**

Dear Elizabeth:

        On behalf of TrialCard, we write in response to your December 14, 2023 letter concerning the relevant time period for JJHCS's productions in response to the February 17, 2023 subpoena (the "Subpoena") served on TrialCard.

        As you know, TrialCard, a non-party, and SaveOnSP have been engaged for several months in extensive negotiations related to the scope of TrialCard's response to the Subpoena. The Subpoena sought the production of documents for the period from January 1, 2017 through the date of the subpoena.  TrialCard timely raised relevance, breadth, and burden objections, agreeing to produce documents only for the period January 1, 2017 to July 1, 2022.  *See* TrialCard Responses and Objections dated March 6, 2023.[1]  Following negotiation, TrialCard subsequently agreed to expand the Relevant Time Period to cover April 1, 2016 through July 1, 2022.  *See* May 12, 2023 Ltr. from G. Carotenuto to A. Dunlap.

        Throughout the course of our negotiations, TrialCard consistently reiterated that it would only produce documents from this time period.  *See, e.g.*, July 13, 2023 Ltr. from K. Brisson to E. Holland (identifying April 1, 2016 to July 1, 2022 as the Relevant Time Period for custodial productions); Sept. 8, 2023 Ltr. from K. Brisson to E. Holland (reiterating the Relevant Time Period).  SaveOnSP raised no objections whatsoever and accepted this as the Relevant Time Period

---

[1] You assert in the December 14 letter that TrialCard has articulated no relevance or burden objections to extending the applicable time period.  Not so.  Referencing our original Responses and Objections, we expressly preserved such objections during the December 12, 2023 meet and confer, and we maintain those objections for the reasons stated during our conferral and in this letter.

Patterson Belknap Webb & Tyler LLP    1133 Avenue of the Americas, New York, NY 10036    T 212.336.2000    F 212.336.2222

Elizabeth Snow, Esq.
December 22, 2023
Page 2

at least twice.  *See* May 31, 2023 Ltr. from E. Holland to G. Carotenuto at 1 (referring to April 1, 2016 to July 1, 2022 as the "Relevant Time Period"); July 26, 2023 Ltr. from E. Holland to K. Brisson at 7 n.1 (proposing search terms for the "Relevant Time Period" defined as April 1, 2016 to July 1, 2022).

More than six months after TrialCard first identified the Relevant Time Period and several months after SaveOnSP accepted it, SaveOnSP now is attempting to rewrite the above history and demands that TrialCard supplement its productions through November 7, 2023. SaveOnSP's request is improper for several reasons, including the following:

- *First*, the Subpoena was issued on February 17, 2023.  TrialCard seeks to extend the scope of the subpoena at least **nine months** beyond the service date.  This is plainly improper and contrary to the Federal Rules of Civil Procedure.  Neither Rule 45 nor any other authority supports the notion that a subpoena may seek the production of documents that were not created until after the subpoena was propounded.

- *Second*, as we have explained at length, nothing in the Court's November 7, 2023 Order directs TrialCard, as a non-party, to update its discovery responses.  That Order only directs "both parties" to "supplement their discovery responses in accordance with the Federal Rules of Civil Procedure"—which, as noted, above, do not impose on TrialCard, a non-party, an obligation to supplement.  *See Johnson & Johnson Healthcare Sys., Inc. v. Save On SP, LLC*, ECF No. 173 ("ECF No. 173").  Nor are we aware of any other third party (including your business partners, Express Scripts Inc. or Accredo Health Group, Inc.) who have made a comparable production pursuant to the November 7 Order.

- *Third*, citing to an April 7 letter, you claim that TrialCard purportedly confirmed that it would comply with any court order applicable to RFP Nos. 1, 2, 5–6, 18, 19, and 25–28, which contain requests similar to those in scope and substance as several requests directed to JJHCS.  This ignores and mischaracterizes the relevant context surrounding the April 7 letter.  As you know, RFP Nos. 1, 2, 5–6, 18, and 19 sought documents for the period January 1, 2009 to the present, and RFP Nos. 25–28 sought documents for the period January 1, 2015 to the present.  The parties—JJHCS and SaveOnSP—have long disputed the proprietary of requiring collections beginning as early as 2009 or 2015, as applicable, and have engaged in extended motion practice related to those parallel requests served on JJHCS.  To date, the Court has not endorsed SaveOnSP's requests for discovery *prior* to April 1, 2016 for any of the comparable RFPs as they relate to JJHCS.  Nothing within Judge Waldor's November 7 Order addresses the earlier time period; to the contrary, Judge Waldor made clear that several of SaveOnSP's requests seeking pre-2016 documents should be narrowed, both as to time period and substance. *See e.g.*, ECF No. 173 at 1 (requiring SaveOnSP to "narrow" the scope of its requests for information relating to CarePath Terms and Conditions and financial information—two categories of information that overlap with several of the

Elizabeth Snow, Esq.
December 22, 2023
Page 3

Requests for Production referenced in TrialCard's April 7 letter).[2]  Thus, contrary to your assertion, TrialCard's representations in its April 7 letter do not alter its consistent position that the relevant time period is April 1, 2016 to July 1, 2022—a period that SaveOnSP has repeatedly accepted over months of negotiation.

For these and all of the other reasons we provided during our meet and confer, TrialCard will not update its response to the Subpoena beyond July 1, 2022.  TrialCard reserves all rights, and we remain available to meet and confer.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

---

[2] For example, RFP No. 5 seeks documents concerning CarePath Terms and Conditions.  SaveOnSP's RFP No. 27 seeks documents concerning JJHCS's purported return on investment for copay assistance dollars.

# Exhibit 14

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza Newark,
New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for Plaintiff Johnson & Johnson Health Care
Systems Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOHNSON & JOHNSON HEALTH CARE
SYSTEMS INC.,

        Plaintiff,

    v.

SAVE ON SP, LLC,

        Defendant.

Civil Action No. 22-2632 (JMV) (CLW)

**PLAINTIFF JOHNSON & JOHNSON
HEALTH CARE SYSTEMS INC.'S
RESPONSES AND OBJECTIONS TO
DEFENDANT SAVE ON SP, LLC'S
FIRST SET OF INTERROGATORIES**

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the General Objections below into its specific objections to each Interrogatory, whether or not each such General Objection is expressly referred to in JJHCS's objections to a specific Interrogatory. JJHCS's investigation of facts related to this Action is ongoing. It reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action. The following responses and objections are based upon information known at this time.

1.    JJHCS objects to the Interrogatories to the extent that they seek material or information protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the First Amendment privilege, or any privilege recognized by the Federal Rules of Civil Procedure, the Local Rules of the Court, and/or relevant case law.

2.    JJHCS objects to the Interrogatories to the extent that they seek information that is not relevant to a claim or defense or to the subject matter of this litigation. Any response JJHCS makes to any Interrogatory shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

3.    JJHCS objects to the Interrogatories to the extent that they are vague and/or ambiguous.

4.    JJHCS objects to the Interrogatories to the extent that they require interpretation or legal analysis by JJHCS in providing a response. JJHCS responds to the Interrogatories as it interprets and understands each Interrogatory as set forth. If SaveOnSP subsequently asserts an

1

interpretation of any Interrogatory that differs from JJHCS's understanding of that Interrogatory, JJHCS reserves the right to modify or supplement its objections and responses.

5.      JJHCS objects to the Interrogatories to the extent that they are duplicative of document requests, other interrogatories, and/or other discovery requests.

6.      JJHCS objects to the Interrogatories to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Interrogatories to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

7.      JJHCS objects to the Interrogatories to the extent that they seek information relating to any business affairs other than those that are the subject of the Action.

8.      JJHCS objects to the Interrogatories to the extent that they seek information that is not in JJHCS's possession, custody, or control.

### OBJECTIONS TO DEFINITIONS

1.      JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek information in the possession of entities other than JJHCS.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.

2.      JJHCS objects to the definition of the term "Janssen Drug" as irrelevant to the extent it purports to include drugs that are not covered by CarePath. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any Specialty Drug manufactured or sold by Janssen from any time."

2

3.    JJHCS objects to the definition of the term "JJHCS" to the extent it purports to include attorneys, accountants, or others who may be outside of JJHCS's control. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or] representatives" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc.

4.    JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and as irrelevant to the extent it purports to include entities other than those within JJHCS responsible for administering CarePath from January 1, 2017 to the present. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities. JJHCS further objects on the ground that the phrase "administer, in whole or in part, CarePath" is vague and ambiguous. JJHCS further objects to the extent the term is used to seek information in the possession of entities other than JJHCS.

5.    JJHCS objects to the definition of the term "Lash Group" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control

3

of The Lash Group, Inc." JJHCS further objects to the extent the term is used to seek information in the possession of entities other than JJHCS.

6.       JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc." JJHCS further objects to the extent the term is used to seek information in the possession of entities other than JJHCS.

## OBJECTIONS TO THE TIME PERIOD

1.       JJHCS objects to SaveOnSP's Interrogatories as overbroad, unduly burdensome, and not relevant to the subject matter of this Action to the extent they call for documents from before January 1, 2017. Unless otherwise noted, JJHCS will only provide information from January 1, 2017 through July 1, 2022 (the "Time Period").

## RESPONSES TO INTERROGATORIES

### Interrogatory No. 1

Identify each person who participated in or had responsibility for communications with patients or health plans, including any communications between CarePath Care Coordinators or JJHCS Hub Entities and patients, from January 1, 2009 through the present.

**Response:**

4







JJHCS designates its response to this Interrogatory as Confidential under the Discovery

Confidentiality Order, so-ordered November 22, 2022, ECF No. 62.

## Interrogatory No. 2

Identify each person who participated in or had responsibility for the marketing of CarePath or other communications with the public regarding CarePath, including those mentioning Copay Accumulator Services or Copay Maximizer Services, from January 1, 2009 through the present.

**Response:**

8





JJHCS designates its response to this Interrogatory as Confidential under the Discovery

Confidentiality Order, so-ordered November 22, 2022, ECF No. 62.

**Interrogatory No. 3**

Identify each person who participated in or had responsibility for drafting or revising CarePath's terms and conditions for each Janssen Drug, from January 1, 2009 through the present.

**Response:**



███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

JJHCS designates its response to this Interrogatory as Confidential under the Discovery

Confidentiality Order, so-ordered November 22, 2022, ECF No. 62.

**Interrogatory No. 4**

Identify each person who participated in or had responsibility for analyzing price, revenue, cost, or other financial data for Janssen Drugs, as well as financial data for CarePath and other Copay Assistance Programs for Janssen Drugs, from January 1, 2009 through the present.

**Response:**

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████  █████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████.





JJHCS designates its response to this Interrogatory as Confidential under the Discovery

Confidentiality Order, so-ordered November 22, 2022, ECF No. 62.

**Interrogatory No. 5**

Identify each person who participated in or had responsibility for JJHCS's attempts to identify health plans advised by SaveOnSP or patients enrolled in such plans.

**Response:**



JJHCS designates its response to this Interrogatory as Confidential under the Discovery

Confidentiality Order, so-ordered November 22, 2022, ECF No. 62.

**Interrogatory No. 6**

Identify each person who participated in or had responsibility for JJHCS's attempts to limit or eliminate the amount of CarePath copay assistance funds available to patients enrolled in health plans advised by SaveOnSP, including JJHCS's attempts to limit or eliminate the amount of CarePath copay assistance funds available to patients using Stelara or Tremfya.

**Response:**

15



JJHCS designates its response to this Interrogatory as Confidential under the Discovery

Confidentiality Order, so-ordered November 22, 2022, ECF No. 62.

**Interrogatory No. 7**

Identify each person who participated in or had responsibility for JJHCS's or any JJHCS Hub Entity's understanding of the terms "copay accumulator" and "copay maximizer."

**Response:**

JJHCS designates its response to this Interrogatory as Confidential under the Discovery

Confidentiality Order, so-ordered November 22, 2022, ECF No. 62.


Dated: January 17, 2023

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:   /s/Jeffrey J. Greenbaum
      JEFFREY J. GREENBAUM
      KATHERINE M. LIEB

PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

18

## **CERTIFICATION**

1.  I am Senior Director of Supplier Management & Operations for the Patient Engagement &
Customer Solutions group within JJHCS.  I am authorized by JJHCS to execute these Responses
to Interrogatories on its behalf.

2.  I have read the attached Responses to SaveOnSP's First Set of Interrogatories.

3.  The Responses are based upon my personal knowledge, upon information supplied to me
by others, and upon JJHCS's documents, books, and records.

4.  As to Responses based upon my personal knowledge, they are true to the best of my
knowledge.  As to Responses based upon information supplied to me by others and upon JJHCS's
documents, books, and records, I believe those answers to be true.

I certify that the foregoing is true and correct.

Dated: January 17, 2022
Piscataway, NJ

John Paul Franz

# Exhibit 15



www.pbwt.com

January 19, 2024

Sara Arrow
(212) 336-2031

**By Email**

Hannah Miles, Esq.
Selendy Gay Elsberg, PLLC
1290 Avenue of the Americas
New York, NY 10104

    **Re:** *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,*
      **Case No. 2:22-cv-02632-JKS-CLW**

Dear Hannah:

    We write on behalf of TrialCard in response to your January 18, 2024 letter regarding TrialCard's production of benefits investigations.

    You assert in your January 18 letter that TrialCard has not produced the benefits investigations that it agreed to produce.  That is incorrect.  As part of its January 12, 2024 production, TrialCard produced TRIALCARD_00008931, which contains, among other things, the record of 3,908 benefits investigations as they are maintained by TrialCard in the normal course of business.  In particular, benefits investigations that TrialCard conducts are maintained on a SalesForce application, and TRIALCARD_00008931 contains an export of the relevant data fields associated with those benefits investigations.

        Very truly yours,

        */s/ Sara A. Arrow*
        Sara A. Arrow

# Exhibit 16



www.pbwt.com

March 12, 2024

Sara A. Arrow
(212) 336-2031

**By Email**

Hannah Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    **TrialCard's Production of Benefits Investigations**
       *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
       *Case No. 2:22-cv-02632 (JKS) (CLW)*

Dear Hannah:

On behalf of TrialCard, we write in response to your February 13, 2024 letter regarding TrialCard's production of benefits investigations.

You object to TrialCard's production of benefits investigations on the basis that TRIALCARD_00008931 is a "summary of the results of a benefits investigation, [which] is not the same as the final Benefits Investigations that you agreed to produce."[1]  This is inaccurate. TRIALCARD_00008931 reflects ███████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████  *See* Jan. 19, 2024 Ltr. from S. Arrow to H. Miles; *see also* Oct. 20, 2023 Ltr. from S. Arrow to E. Holland at 1.  It is not a "summary" at all—it contains ████████████████████

---

[1]  SaveOnSP relatedly asserts that "[p]roducing TRIALCARD_00008931 does not fulfill [JJHCS's] representation to the Court" to produce relevant benefits investigations.  As both TrialCard and JJHCS have made clear, TrialCard agreed to produce the relevant benefits investigations "pursuant to the third-party subpoena served on TrialCard by SaveOnSP."  *See* Oct. 23, 2023 Ltr. from H. Sandick (on behalf of JJHCS) to A. Dunlap; *see also* Oct. 20, 2023 Ltr. from S. Arrow to E. Holland at 1 (describing scope of TrialCard's production in response to the subpoena served on it).  Regardless, even if TrialCard were producing such documents at JJHCS's request or on its behalf, that would not impact the sufficiency of production for the reasons identified herein.  Finally, as you know, we have repeatedly asked you not to blur the lines between our firm's two clients, JJHCS and TrialCard, which are separate entities.  As a result, to the extent you have further questions related to JJHCS's representations to the Court, we once again ask you to direct them to JJHCS in separate correspondence.

---

Patterson Belknap Webb & Tyler LLP    1133 Avenue of the Americas, New York, NY 10036    T 212.336.2000    F 212.336.2222

Hannah Miles, Esq.
March 12, 2024
Page 2

███████████████ *See* Jan. 19, 2024 Ltr. from S. Arrow to H. Miles.  Documents are to be produced in the manner in which they are kept, which is what TrialCard has done here.

You next request that TrialCard re-produce the benefits investigation spreadsheet with additional categories of information, namely: ████████████████████████████████ *See* Feb. 13, 2024 Ltr. from S. Arrow to H. Miles at 2.  TrialCard confirms that it will re-produce the benefits investigation spreadsheet with the additional requested categories of information, to the extent such information is available in the normal course of business.[2]

Finally, you note that TRIALCARD_00008931 omits the results of a specific benefits investigation identified in a de-identified document produced by JJHCS.  *See* JJHCS_00003356.  This was inadvertent.  We have investigated the issue and understand that certain benefits investigations conducted for the period January 2022 to June 2022 were entered into the SalesForce application using a manual process.  Following investigation, we have taken reasonable steps to confirm that our search parameters are designed to capture such manually entered benefits investigations, to the extent they are not already captured in TRIALCARD_00008931.  TrialCard will re-produce TRIALCARD_00008931 to include an entry for the benefits investigation reflected in JJHCS_00003356, along with any additional relevant benefits investigations that TrialCard locates after reasonable investigation that were inadvertently omitted from TRIALCARD_00008931.  TrialCard expects to re-produce the benefits investigation spreadsheet on or around March 29, 2024.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

---

[2] Certain requested information may not be available in all circumstances—for example, ████████████████████████ To the extent such additional data fields exist for any given benefit investigation, TrialCard will produce those fields.

# Exhibit 17

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

February 13, 2024

**Via E-mail**

Sara A. Arrow
Patterson Belknap Webb & Taylor LLP
1133 Avenue of the Americas
New York, NY 10036
sarrow@pbwt.com

**Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Sara,

   We write to you as counsel for TrialCard, Inc. ("TrialCard") and Johnson &
Johnson Health Care Systems, Inc. (with its affiliates, "J&J"), in response to your
January 19, 2024 letter regarding TrialCard's production of benefits investiga-
tions.

   You assert that TRIALCARD_00008931, an excel file produced on January
12, 2024, fulfills your promise to produce final Benefits Investigations that identify
or attempt to identify whether a patient is on a maximizer plan, an accumulator
plan, or a plan advised by SaveOn. But a summary of the results of a benefits in-
vestigation is not the same as the final Benefits Investigations that you agreed to
produce. *See* Oct. 30, 2023 Tr. at 62:9-13. You identified what a Benefits Investi-
gation is to the Court: "[T]he first exhibit [in SaveOn's handout], this document is
what he just took you through, this is a benefits investigation." *Id.* at 79:13−15 (ref-
erencing JJCHS_00003355, a redacted Benefits Investigation). And you stated
that you were "voluntarily going to give [SaveOn] all of these, all the way through
to the present already." *Id.* at 79:17−19; *see also* Jan. 24, 2024 Tr. at 21:10−17
("[W]e have already agreed to produce[,] ... either directly through us or by asking
our vendor, a company called TrialCard, to produce what are known as benefits
investigations. And those are the enforcement documents. We're in the process of
making those productions for the relevant time period right now."). Producing
TRIALCARD_00008931 does not fulfill your representation to the Court.

Sara A. Arrow
February 13, 2024

TRIALCARD_00008931 also omits key data.

TRIAL-
CARD_00008931 also does not appear to include information from the Benefits
Investigation that you previously produced at JJHCS_00003356 (based on a com-
parison of the relevant CarePath Patient ID), indicating that the excel is incom-
plete.

By February 16, 2024, please confirm that you will produce the complete set
of Benefits Investigations and state the date by which you will complete that pro-
duction.

Sincerely,

Hannah Miles

Hannah R. Miles
Associate

# Exhibit 18

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of New Jersey

| | |
|---|---|
| Johnson & Johnson Health Care Systems Inc. | ) |
| *Plaintiff* | ) |
| v. | ) |
| Save On SP, LLC | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.  22-2632 (JMV) (CLW)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                                    TrialCard Inc.
2250 Perimeter Park Dr., #300, Morrisville, NC 27560

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached requests for production.

| Place: Weno Process c/o Marcus Lawing<br> 4711 Hope Valley Rd, Ste. 4F-604<br> Durham, NC 27707 | Date and Time:<br><br>03/07/2023 5:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  02/17/2023

|  *CLERK OF COURT* | OR | /s/ E. Evans Wohlforth, Jr. |
|---|---|---|
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Defendant Save On SP, LLC                                    , who issues or requests this subpoena, are:

E. Evans Wohlforth, Jr., Gibbons P.C., One Gateway Center, Newark, NY 07102-5310

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   22-2632 (JMV) (CLW)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

David Elsberg
Andrew R. Dunlap
Meredith Nelson
Elizabeth H. Snow
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

E. Evans Wohlforth, Jr.
ROBINSON & COLE LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
212-451-2954
ewohlforth@rc.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (ES) (CLW) <br><br> **NOTICE OF SUBPOENA FOR THE PRODUCTION OF DOCUMENTS** |

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26, 34, and 45 Defendant Save On SP, LLC ("SaveOnSP") requests TrialCard Inc. ("Trial-Card"), to produce for inspection and copying the documents listed in these Requests, to

the office of the undersigned on December 15, 2023 or at a time and place mutually agreed by the parties or ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that this demand for production of documents shall be deemed continuing in nature to require supplemental responses if Plaintiff or Plaintiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's responses are served.

Dated:  December 1, 2023          By:  /s/_____

E. Evans Wohlforth, Jr.
ROBINSON & COLE LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
212-451-2954
ewohlforth@rc.com

David Elsberg
Andrew R. Dunlap
Meredith Nelson
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

## <u>DEFINITIONS</u>

1.    The singular form of a word includes the plural, and vice versa.

2.    Any tense of a verb includes all tenses.

3.    Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.    Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.    "<u>Action</u>" means this litigation styled as "Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (ES) (CLW).

6.    "<u>Affordable Care Act</u>" means the Patient Protection and Affordable Care Act, Pub. L. 148, 124 Stat. 119.

7.    "<u>All</u>," "<u>any</u>," and "<u>each</u>" mean any and all.

8.    "<u>And</u>" and "<u>or</u>" are construed both conjunctively and disjunctively.

9.    "<u>Benefits Investigation</u>" means any process by which TrialCard, or any entity acting on its behalf, receives information regarding the pharmacy benefits provided by a health plan, including information regarding prior authorization costs, Essential Health Benefits status, patient eligibility, and related information.

10.    "<u>CarePath</u>" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty

3

drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

11.    "CarePath Care Coordinator" means any person or entity encompassed by that term as used on CarePath's "Contact Us" webpage,[1] as well as any person responsible for communicating with patients who contact CarePath via an advertised help number (*e.g.*, 877-CarePath).

12.    "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

13.    "Complaint" means JJHCS's May 4, 2022 Complaint [ECF No. 1] or any subsequently amended Complaint in this Action.

14.    "Copay Accumulator Service" means (a) any service provided by Pharmacy Benefit Mangers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

15.    "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

---

[1] *See* Contact Us, https://www.janssencarepath.com/patient/contact-us (last visited November 20, 2023).

16.    "Copay Maximizer Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maximizer."

17.    "Document" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

18.    "Essential Health Benefit: means, in the context of prescription drug benefits at issue in this case, (a) a prescription drug benefit that satisfies the requirement for a plan to provide essential prescription drug benefits under the Affordable Care Act or that is treated as such by a plan;[2] and (b) any definition JJHCS ascribes to the term "essential health benefit" as used in the Complaint.

19.    "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

---

[2] 45 C.F.R. §§ 156.122, 156.115

20.    "<u>Including</u>" means including but not limited to.

21.    "<u>Janssen</u>" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

22.    "<u>Janssen Drug</u>" means any Specialty Drug manufactured or sold by Janssen from any time for which patients may receive copay assistance, including BALVERSA, DARZELEX, DARZELEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, PREZCOBIX, REMICADE, RYBREVANT, SIMPONI, STELARA, SYMTUZA, TRACLEER, TREMFYA, UPTRAVI, VENTAVIS, ZYTIGA, as well as any other specialty drugs that JJHCS asserts are at issue in this Action.

23.    "<u>JJHCS</u>" means Johnson & Johnson Health Care Systems Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Johnson & Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and Janssen Research & Development LLC.

6

24.    "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer, in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of such an entity.

25.    "Lash Group" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

26.    "Non-Essential Health Benefits" means, in the context of prescription drug benefits at issue in this case, (a) any prescription drug benefit covered by a plan in excess of those necessary for a plan to satisfy the requirements for providing essential prescription drug health benefits under the Affordable Care Act[3] and designated by the plan as a non-essential health benefit; and (b) any definition JJHCS ascribes to the term "non-essential health benefits" as used in the Complaint.

27.    "Patient" means a natural person prescribed or eligible to be prescribed any Janssen Drug, whether or not they use CarePath or are a participant in a health plan advised by SaveOnSP.

28.    "Person" means a natural person or legal entity including any business or governmental entity or association.

---

[3] *See* 45 C.F.R. §§ 156.122, 15.115

7

29.    "Regarding" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

30.    "Request" means any of these Requests for Production.

31.    "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Save On SP, LLC.

32.    "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

33.    "Stelara" means the Janssen Drugs sold under that name.

34.    "Tremfya" means the Janssen Drug sold under that name.

35.    "TrialCard" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

8

36.    "<u>TrialCard's Employee Health Plans</u>" means any health plans offered by TrialCard to its employees.

37.    "<u>You</u>" and "<u>Your</u>" means TrialCard.

## INSTRUCTIONS

1.    These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii).

2.    These Requests seek production of nonprivileged material. Fed. R. Civ. P. 26(b)(1).

3.    These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4.    For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 45(d)(2)(B).

5.    An objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. Fed. R. Civ. P. 45(d)(2)(B).

6.    If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection.

7.    If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest.

8.    If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 45(e)(2)(A), including by indicating whether any document

9

exists regarding the information re- quested and stating, to the extent the privilege is be-ing asserted in connection with a claim or defense governed by state law, the state privi-lege rule being invoked, Local Rule 34.1.

9.     If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction, the reason for its destruction, the name of the person who requested or authorized its destruction, and the name of the person who destroyed it.

10.     Produce documents as they are kept in the usual course of business or in a form specified in this subpoena. Fed. R. Civ. P. 45(e)(1)(b). For each document, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

11.     Produce electronically stored information in the form and manner required by any agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

12.     Produce each document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

13.     Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notations, revisions, enclo-sures, attachments, underlining, highlighting, or otherwise.

14. These Requests are deemed continuing. If after responding to any Request you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner.

## TIME PERIOD

Unless otherwise specified, these Requests cover from and including April 1, 2016, through the present.

## REQUESTS

1. Documents sufficient to show the identity of all drug makers for which TrialCard performs Benefits Investigations.

2. Documents sufficient to show the identity of all drug makers for which TrialCard has performed investigations, including but not limited to Benefits Investigations, that identify or attempt to identify if patients are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service.

3. Documents sufficient to show the methods by which TrialCard identifies or attempts to identify if patients are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service.

4. All Documents and Communications between TrialCard and JJHCS regarding identification or attempts to identify patients who are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service, including without limitation proposals to perform such work.

5. All Communications with patients receiving Stelara or Tremfya, including without limitation recordings of calls.

6. Documents sufficient to show the methods by which TrialCard responded to Benefits Investigations that revealed or suggested that a patient was a member of a plan

advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service, including without limitation regarding the criteria by which TrialCard determined to send the letter previously produced at TRIALCARD_00000074—77.

7.    All Communications between TrialCard and SaveOnSP, including without limitation recordings of calls.

8.    All Documents and Communications regarding the creation or attempted creation of a response to SaveOnSP, Copay Accumulator Services, and/or Copay Maximizer Services, including without limitation the creation or attempted creation of a ███

██████████████████████████████████████████████████

████████████████████████████████████████████, *see, e.g.*, TRIALCARD_00001815 ████████████████████████████

███  ████████  ███  ████████  ████████); TRIALCARD_00002256; TRIAL-CARD_00002725, as well as Documents and Communications regarding the sale or attempted sale of such a program to drug makers.

# Exhibit 19



www.pbwt.com

March 1, 2024

Sara Arrow
(212) 336-2031

**By Email**

Hannah Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:   **TrialCard's December 1, 2023 Subpoena**
        *Johnson & Johnson Health Care Services, Inc. v. Save On SP, LLC,*
        **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Hannah:

On behalf of TrialCard, we write in response to SaveOnSP's February 16, 2024 letter regarding the December 1, 2023 Subpoena issued to TrialCard.

## I.   General Objections

**Time Period.**  SaveOnSP continues to insist that TrialCard produce documents beyond July 1, 2022, the parties' agreed-upon cut-off date for discovery.  However, nothing in Judge Waldor's November 7, 2023 Order directs third parties, such as TrialCard, to update its discovery responses.  That Order only directs "both parties" to "supplement their discovery responses in accordance with the Federal Rules of Civil Procedure."  *See Johnson & Johnson Health Care Sys., Inc. v. Save On SP, LLC*, ECF No. 173.  This does not obligate TrialCard to update its discovery responses, as TrialCard is not a party to the underlying litigation.  It certainly does not provide any basis for TrialCard to produce documents ***beyond*** the cutoff date for party discovery (November 7, 2023), as SaveOnSP now insists.

SaveOnSP also states that "TrialCard has not raised any valid burden objection" to extending the time period beyond July 1, 2022.  That is not accurate.  In its Responses and Objections to the December 1, 2023 Subpoena, TrialCard did so, objecting to SaveOnSP's Requests as "overbroad, ***unduly burdensome***, and not relevant to the subject matter of this Action to the extent they call for documents from before April 1, 2016 or after July 1, 2022" (emphasis supplied).  Furthermore, TrialCard reiterated its burden objection during the January 12, 2024 meet and confer.  For the avoidance of doubt, TrialCard asserts relevance, breadth, and burden objections to SaveOnSP's demand that TrialCard produce documents beyond July 1, 2022.

Hannah Miles, Esq.
March 1, 2024
Page 2

SaveOnSP next suggests that TrialCard should be required to produce documents beyond July 1, 2022 because it "is central to the litigation." However, TrialCard is a third party, and is far more removed from the SaveOnSP scheme at issue than SaveOnSP's own business partners, ESI and Accredo—yet SaveOnSP apparently does not believe that ESI and Accredo should update their productions. *See* Jan. 11, 2024 Email from H. Miles to S. Arrow. TrialCard's role in administering the CarePath program, at the direction of JJCHS, does not impose on it unique obligations that are different than those applicable to other third parties.

Nevertheless, in the interest of compromise, TrialCard has agreed to produce, through November 7, 2023, thousands of benefits investigations ███████████████████ ████████████████████████████████████████████████████████ *See* TRIALCARD_00008931. In addition, TrialCard agrees to "refresh" certain CarePath claims data through November 7, 2023. We are currently investigating the full scope of this data "refresh" and will revert when we have additional information.

**General References to Accumulators and Maximizers.** SaveOnSP also seeks documents that relate generally to copay accumulators and maximizers without any reference to SaveOnSP. SaveOnSP has failed to justify its insistence that TrialCard must produce documents that do not mention SaveOnSP, and TrialCard declines to engage in an overbroad, unduly burdensome review of them.[1]

## II.    TrialCard's Ability to Identify Patients

**Request Nos. 1 and 2.** Requests Nos. 1 and 2 seek documents sufficient to show the identity of all drug makers for which TrialCard performed investigations, including benefits investigations, that identify or attempt to identify if a patient is on a health plan affiliated with a copay maximizer, accumulator, or SaveOnSP. SaveOnSP's reference to general investigations (beyond benefits investigations) is vague and ambiguous. In any event, TrialCard's purported actions with respect to clients other than JJHCS are irrelevant to the underlying litigation, which only concerns the administration of CarePath, and not copay assistance programs offered by other pharmaceutical manufacturers. SaveOnSP has failed to articulate the relevance of documents sought by this request, and has similarly failed to explain how TrialCard's work performed for

---

[1] As you know, Judge Waldor's November 7, 2023 Order imposed a limitation that documents related to JJHCS's CAP Program must also mention SaveOnSP. *See* Dkt. No. 173 at 2–3 ("Plaintiff shall run custodial document searches fashioning a search designed to capture documents wherein the terms 'CAP A', 'CAP M', or 'adjustment program,' (or reasonable variations of those terms) are found *in the same documents as the term 'SaveOn'* (or reasonable variations / abbreviations)." (emphasis supplied)). While this Order is only applicable to party discovery, it suggests that expanding third party discovery to documents that do not mention or refer to SaveOnSP is improper and disproportionate to the needs of the case.

Hannah Miles, Esq.
March 1, 2024
Page 3

clients other than SaveOnSP has any relevance whatsoever to JJHCS or CarePath. TrialCard will
not search for or produce documents responsive to Requests 1 or 2.

      **Request No. 3.** Request No. 3 seeks documents sufficient to show the methods by
which TrialCard identifies or attempts to identify if patients are members of health plans affiliated
with copay accumulators, maximizers, or SaveOnSP. As you know, TrialCard produced thousands
of benefits investigations on January 12, 2024. *See* TRIALCARD_00008931. As we have
discussed, TrialCard is also in the process of identifying whether additional data fields exist for
these benefits investigations.

      SaveOnSP nevertheless asserts that the benefits investigations do not satisfy this
Request because "this request seeks 'method**s**,' plural." Feb. 16, 2024 Ltr. from H. Miles to S.
Arrow at 3. SaveOnSP identifies two documents wherein TrialCard employees discuss potential
methods for identifying patients on a copay accumulator, maximizer, or SaveOnSP and claims that
it "needs to know if those, or other methods, were ever used to identify or attempt to identify if
patients are members of plans advised by SaveOn, accumulators, or maximizers." However, as
SaveOnSP acknowledges, the documents that SaveOnSP cites reflect ▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.*;
▮▮▮▮▮▮TRIALCARD_00003417. As we have explained, to the extent such ▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮ they are only relevant to the extent they were provided to JJHCS. Accordingly,
such documents are more properly obtained through party discovery.

      Accordingly, we decline to review documents to identify general identification
"methods" of SaveOnSP patients that TrialCard may have considered. To the extent SaveOnSP
seeks to propose a more narrowly tailored request concerning other methods of identification that
TrialCard may have developed with respect to CarePath, we remain open to considering such a
request.

      **Request No. 4.** Request No. 4 seeks documents and communications between
TrialCard and JJHCS regarding the identification or attempted identification of patients who are
members of plans affiliated with copay accumulators, maximizers, or SaveOnSP. As we have
explained repeatedly, documents and communications between TrialCard and JJHCS are more
appropriately sought through party discovery. TrialCard makes no representations as to the
contents of JJHCS's productions, and further takes no position as to whether these documents
would be relevant.

**III.    TrialCard's Responses to Patients Once Identified**

      **Request No. 6.** Request No. 6 seeks documents sufficient to show the methods by
which TrialCard responded to benefits investigations that revealed or suggested that a patient was
a member of a health plan that was affiliated with a copay accumulator, maximizer, or SaveOnSP.
SaveOnSP asserts that TrialCard has not satisfied this Request. This is incorrect. TrialCard has
produced multiple letter templates that it has sent to patients in connection with the benefits
investigation process, including following identification of a patient as affiliated with a copay

Hannah Miles, Esq.
March 1, 2024
Page 4

accumulator, maximizer, or SaveOnSP.  TrialCard has further satisfied this Request by providing
the CarePath IDs of the patient recipients of these letters and the dates on which those letters were
sent.  *See* TRIALCARD_00008931 ("Tasks").  Because Request No. 6 seeks "documents
sufficient to show," these documents satisfy this request.

    **Request No. 8.**  Request No. 8 seeks documents and communications regarding
TrialCard's creation or attempted creation of a response to SaveOnSP and/or copay accumulators
or maximizers.  This overbroad request seeks documents and communications that are irrelevant
to any claim or defense in the underlying litigation.  SaveOnSP is not entitled to go on a fishing
expedition of all efforts TrialCard contemplated or took with respect to copay maximizers,
accumulators, or even SaveOnSP.  TrialCard is a vendor for JJHCS, and only the work that
TrialCard work performed for JJHCS is relevant to this litigation.  Further, documents regarding
what responses or solutions TrialCard purportedly offered to JJHCS, to the extent they exist, are
more appropriately sought through party discovery.

    Further, SaveOnSP has not shown how any responses or solutions that TrialCard
may have contemplated or developed for copay assistance programs other than CarePath have any
applicability to CarePath.  Once again, we remain open to considering a request that concerns
TrialCard's responses to SaveOnSP with respect to JJHCS and the CarePath Program, but absent
such a request, we decline to produce documents in response to this Request.

## IV. Communications Between TrialCard and SaveOnSP

    Request No. 7 seeks all communications between TrialCard and SaveOnSP.  To the
extent these communications occurred, SaveOnSP can search its own records to locate them.
SaveOnSP has not explained why it needs a third party to search for and produce documents that
should be within its own files.  Accordingly, TrialCard declines to undertake the undue burden of
searching for and producing communications sought by Request No. 7.

*  *  *  *

    Finally, for avoidance of doubt, TrialCard does not agree that the parties are at
impasse with respect to the December 1, 2023 Subpoena.  We reserve all rights and are available
to meet and confer.

              Very truly yours,

              */s/ Sara A. Arrow*
              Sara A. Arrow

# Exhibit 20

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
Sara A. Arrow, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036

*Attorneys for TrialCard Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (ES) (CLW) <br><br> **NON-PARTY TRIALCARD INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS** |

**GENERAL OBJECTIONS**

TrialCard Incorporated ("TrialCard") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in TrialCard objections to a specific Request.

TrialCard reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action. The following responses and objections are based upon information known at this time.

1.    TrialCard is not a party to the above-captioned litigation pending in the District of New Jersey (the "Action") and objects to the Subpoena's imposition of significant burden on it because the vast majority of Requests in the Subpoena can be satisfied by obtaining documents directly from Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), a party to the Action. TrialCard notes that several of the requests in the Subpoena are nearly identical to document requests made by SaveOnSP to JJHCS in the Action. TrialCard objects to producing any documents unless and until SaveOnSP can demonstrate that it has not been able to obtain these documents in party discovery.

2.    TrialCard objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the First Amendment privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. The inadvertent production by TrialCard of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of

competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

3.    TrialCard objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response TrialCard makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

4.    TrialCard objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

5.    TrialCard objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that TrialCard agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of TrialCard.  Instead, it means that TrialCard will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

6.    TrialCard objects to the Requests to the extent that they seek information that is obtainable from sources other than TrialCard in a manner that is more convenient, less burdensome, or less expensive.

7.      TrialCard objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

8.      TrialCard objects to the Requests to the extent that they are vague and/or ambiguous.

9.      TrialCard objects to the Requests to the extent that they require interpretation by it in providing a response.  TrialCard responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that differs from TrialCard's understanding of that Request, TrialCard reserves the right to modify or supplement its objections and responses.

10.     TrialCard objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests, including the requests contained within the subpoena served on TrialCard dated February 17, 2023 (the "February 2023 Subpoena").

11.     TrialCard objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. TrialCard further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

12.     TrialCard objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

13.     TrialCard objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

14.     TrialCard objects to the Requests to the extent that they seek the production of documents that are not in TrialCard's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.     TrialCard objects to the definition of the term "Benefits Investigation" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any means by which TrialCard, or any entity acting on its behalf, receives information regarding the pharmacy benefits provided by a health plan, including information regarding prior authorization costs, Essential Health Benefits status, patient eligibility, and related information" or purports to include entities and persons acting or purporting to act on behalf of or under the control of TrialCard.

2.     TrialCard objects to the definition of the term "Janssen" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf" of those entities.

3.     TrialCard objects to the definition of the term "JJHCS" as overbroad, unduly burdensome, and not proportional to the needs of the case to extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or] representatives" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development,

5

LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc.,

Janssen BioPharma LLC, and Janssen Research & Development LLC.

4.      TrialCard objects to the definition of the term "JJHCS Hub Entity" as vague and

as irrelevant to the extent it purports to include entities other than those responsible for

administering CarePath during the Relevant Time Period.  TrialCard further objects to the

definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it includes "any and all predecessors and successors in interest, assignees, parents,

subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers,

employees, committees, attorneys, accountants and all persons or entities acting or purporting to

act on behalf" of those entities.  TrialCard further objects to the extent the term is used to seek

documents and communications concerning entities other than JJHCS.

5.      TrialCard objects to the definition of the term "Lash Group" as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it includes "any

and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates,

divisions or departments, agents, representatives, directors, officers, employees, committees,

attorneys, accountants and all persons or entities acting or purporting to act on behalf or under

the control of The Lash Group, Inc."

6.      TrialCard objects to the definition of the term "TrialCard" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of TrialCard Inc." TrialCard further objects to the extent the term is used to seek documents and communications in the possession of entities other than TrialCard.

## OBJECTIONS TO INSTRUCTIONS

1.    TrialCard objects to the Instructions to the extent that they impose requirements on TrialCard beyond those required by the Federal Rules of Civil Procedure.

2.    TrialCard objects to Instruction No. 14 to the extent that SaveOnSP attempts to impose requirements on TrialCard beyond those required by the Federal Rules of Civil Procedure or ordered by the Court. Rule 34, which contains a duty to supplement responses, does not apply to requests for production directed to a non-party, and Rule 45 contains no duty to supplement.

## OBJECTIONS TO THE TIME PERIOD FOR SPECIFIC REQUESTS

1.    TrialCard objects to SaveOnSP's Requests as overbroad, unduly burdensome, and not relevant to the subject matter of this Action to the extent they call for documents from before April 1, 2016 or after July 1, 2022. Except where expressly noted, TrialCard will only produce documents for the period April 1, 2016 to July 1, 2022 (the "Relevant Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

**Request No. 1**

Documents sufficient to show the identity of all drug makers for which TrialCard performed Benefits Investigations.

**Response to Request No. 1**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad and irrelevant to any claim or defense in this Action. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. TrialCard further objects to this Request to the extent it uses the terms "Benefits Investigations" and "TrialCard" for the reasons stated in TrialCard's

7

Objections to Definitions.  TrialCard further objects to this Request on the grounds that the term "drug makers" is undefined.  TrialCard further objects to this Request because it would require the disclosure of confidential business information, including information about other TrialCard clients, that has no relevance to this Action and is subject to confidentiality agreements between TrialCard and its other clients.

TrialCard will not search for or produce documents in response to this Request.

**Request No. 2**

Documents sufficient to show the identity of all drug makers for which TrialCard has performed investigations, including but not limited to Benefits Investigations, that identify or attempt to identify if patients are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service.

**Response to Request No. 2**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad and irrelevant to any claim or defense in this Action, insofar as it seeks documents related to efforts to identify or attempt to identify patients unaffiliated with SaveOnSP. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege.  TrialCard further objects to this Request to the extent it uses the terms "Benefits Investigations" and "TrialCard" for the reasons stated in TrialCard's Objections to Definitions.  TrialCard further objects to this Request on grounds that the terms "investigations" and "drug makers" are undefined and/or vague and ambiguous. TrialCard further objects to this Request because it would require the disclosure of confidential business information, including information about other TrialCard clients, that has no relevance to this Action and is subject to confidentiality agreements between TrialCard and its other clients.

TrialCard will not search for or produce documents responsive to this Request.

**Request No. 3**

Documents sufficient to show the methods by which TrialCard identifies or attempts to identify if patients are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service.

**Response to Request No. 3**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant to any claim or defense in this Action, insofar as it seeks information about services that TrialCard provides to clients other than JJHCS and in relation to patients unaffiliated with SaveOnSP. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. TrialCard further objects to this Request to the extent it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome to TrialCard. TrialCard further objects to this Request to the extent it uses the term "TrialCard" for the reasons stated in TrialCard's Objections to Definitions.

Subject to the foregoing objections and without prejudice to those objections, to the extent that documents responsive to this Request are also arguably responsive to existing Requests for Production Numbers 20 and 22 in the February 2023 Subpoena, TrialCard has already agreed to produce certain documents subject to TrialCard's prior objections. Specifically, to the extent such documents have not already been produced by JJHCS, TrialCard has agreed to produce (1) non-privileged documents from certain agreed-upon TrialCard custodians that are responsive to Requests for Production Numbers 20 and 22 for the Relevant Time Period; and (2) Benefits

Investigations performed for JJHCS that sought to determine whether Stelara or Tremfya patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan, to the extent such non-privileged documents exist for the period January 1, 2022 to November 7, 2023. TrialCard will not otherwise search for or produce documents or communications responsive to this Request.

### Request No. 4

All Documents and Communications between TrialCard and JJHCS regarding identification or attempts to identify patients who are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service, including without limitation proposals to perform such work.

### Response to Request No. 4

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant to any claim or defense in this Action, insofar as it seeks documents unrelated to SaveOnSP. TrialCard further objects to this Request to the extent it seeks the production of documents and communications that are available from parties to the Action and, therefore, is unduly burdensome to TrialCard. TrialCard further objects to this Request to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. TrialCard further objects to this Request to the extent it uses the terms "TrialCard" and "JJHCS" for the reasons stated in TrialCard's Objections to Definitions.

Subject to the foregoing objections and without prejudice to those objections, to the extent that documents responsive to this Request are also arguably responsive to existing Requests for Production Numbers 20 and 22 in the February 2023 Subpoena, TrialCard has already agreed to

produce certain documents subject to TrialCard's prior objections. Specifically, to the extent such documents have not already been produced by JJHCS, TrialCard has agreed to produce (1) certain non-privileged documents from certain agreed-upon TrialCard custodians that are responsive to Requests for Production Numbers 20 and 22 for the Relevant Time Period; and (2) Benefits Investigations performed for JJHCS that sought to determine whether Stelara or Tremfya patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan, to the extent such non-privileged documents exist for the period January 1, 2022 to November 7, 2023. TrialCard will not otherwise search for or produce documents responsive to this Request.

**Request No. 5**

All Communications with patients receiving Stelara and Tremfya, including without limitation recordings of calls.

**Response to Request No. 5**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant to any claim or defense in this Action, insofar as it seeks communications unrelated to the CarePath program (and the "withMe" programs) and/or with patients unaffiliated with SaveOnSP. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" communications regarding a broad subject matter. TrialCard further objects to this Request to the extent that it seeks the production of communications that are available from parties to the Action (specifically, SaveOnSP) and, therefore, is unduly burdensome to TrialCard.

Subject to the foregoing objections and without prejudice to those objections, to the extent that documents responsive to this Request are also arguably responsive to existing Request for

11

Production Number 3 in the February 2023 Subpoena, TrialCard has already agreed to produce certain documents subject to TrialCard's prior objections.  Specifically, to the extent such documents have not already been produced by JJHCS, TrialCard has agreed to produce (1) case and task notes reflecting communications between TrialCard and patients taking at least one Janssen Drug for the Relevant Time Period; and (2) for the period January 1, 2022 to November 7, 2023, certain documents sufficient to show written communications to patients receiving Stelara or Tremfya to the extent such communications concern whether those patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan.  TrialCard will not otherwise search for or produce communications responsive to this Request.

**Request No. 6**

Documents sufficient to show the methods by which TrialCard responded to Benefits Investigations that revealed or suggested that a patient was a member of a plan advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service, including without limitation regarding the criteria by which TrialCard determined to send the letter previously produced at TRIALCARD_00000074–77.

**Response to Request No. 6**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant to any claim or defense in this Action, insofar as it seeks documents unrelated to SaveOnSP. TrialCard further objects to this Request to the extent it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome to TrialCard.  TrialCard further objects to this Request on the ground that the phrase "methods by which TrialCard responded to Benefits Investigations" is vague and ambiguous.  TrialCard further

12

objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. TrialCard further objects to this Request to the extent it uses the terms "Benefits Investigations" and "TrialCard" for the reasons stated in TrialCard's Objections to Definitions.

Subject to the foregoing objections and without prejudice to those objections, to the extent that documents responsive to this Request are also arguably responsive to existing Requests for Production Numbers 20 and 22 in the February 2023 Subpoena, TrialCard has already agreed to produce certain documents subject to TrialCard's prior objections. Specifically, to the extent such documents have not already been produced by JJHCS, TrialCard has agreed to produce (1) certain non-privileged documents from certain agreed-upon TrialCard custodians that are responsive to Requests for Production Numbers 20 and 22 for the Relevant Time Period; and (2) for the period January 1, 2022 to November 7, 2023, certain documents sufficient to show written communications to patients receiving Stelara or Tremfya to the extent such communications concern whether those patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan. TrialCard will not further search for or produce documents in response to this Request.

**Request No. 7**

All Communications between TrialCard and SaveOnSP, including without limitation recordings of calls.

**Response to Request No. 7**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant to any claim or defense in this Action, insofar as it seeks communications unrelated to any Janssen

13

Drug or to the CarePath (and the "withMe" programs). TrialCard further objects to the extent this Request seeks the production of documents and communications that are available from parties to the Action, in particular from SaveOnSP. TrialCard further objects to this Request to the extent it seeks documents and communications in the possession of entities other than TrialCard or outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" communications regarding a broad subject matter. TrialCard further objects to this Request to the extent it uses the term "TrialCard" for the reasons stated in TrialCard's Objections to Definitions.

TrialCard further objects to this Request as unduly burdensome because it requires TrialCard to identify recordings of calls without the benefit of identifying information—specifically, all names and phone numbers used by SaveOnSP employees who communicated with TrialCard and its affiliates—that SaveOnSP has not provided. TrialCard further objects to this Request as duplicative of Request No. 5 to the extent communications between TrialCard and SaveOnSP included patients.

Subject to the foregoing objections, TrialCard will produce certain responsive call recordings as requested by JJHCS. TrialCard will not otherwise search for or produce documents or communications responsive to this Request.

**Request No. 8**

All Documents and Communications regarding the creation or attempted creation of a response to SaveOnSP, Copay Accumulator Services, and/or Copay Maximizer Services, including without limitation the creation or attempted creation of a ███████████████

███████████████████████████████████████

████████████████████████████████████, *see, e.g.,* TRIALCARD_00001815 (████████

██████████████████████████████████████████████████████████████████████

TRIALCARD_00002256; TRIALCARD_00002725, as well as Documents and Communications

regarding the sale or attempted sale of such a program to drug makers.

**<u>Response to Request No. 8</u>**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this

Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant

to any claim or defense in this Action, insofar as it seeks information about services that TrialCard

provides to clients other than JJHCS and/or in relation to patients unaffiliated with SaveOnSP.

TrialCard further objects to this Request as it seeks the production of documents and information

that are available to parties to the Action and, therefore, is unduly burdensome to TrialCard.

TrialCard further objects to this Request to the extent it seeks information that is exempt from

discovery and protected from disclosure by any privilege. TrialCard further objects to this Request

as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents responsive to this Request.

Dated: December 15, 2023

By:     */s/ Harry Sandick*_____

Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
Sara A. Arrow
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for TrialCard Inc.*

15

# Exhibit 21



www.pbwt.com

December 22, 2023

Sara Arrow
(212) 336-2031

**By Email**

Hannah Miles, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    *Johnson & Johnson Health Care Systems Inc. v. SaveOnSP, LLC,*
       *Case No. 2:22-cv-02632-ES-CLW*

Dear Hannah:

We write on behalf of TrialCard in response to your December 8, 2023 letter.[1]

As you know, TrialCard maintains that custodial collections are disproportionate to its status as a non-party, burdensome, and unnecessary. *See, e.g.*, July 6, 2023 Ltr. from K. Brisson to E. Holland; Aug. 3, 2023 Ltr. from K. Brisson to E. Holland. Despite this, and in the interest of compromise, TrialCard has undertaken such collections for four custodians: Holly Weischedel, Sini Abraham, Rick Fry, and Paul Esterline. These custodial collections are in addition to TrialCard's extensive non-custodial productions. Yet SaveOnSP now again demands that TrialCard supplement its custodial productions, this time to include seven more document custodians. Of the seven, TrialCard has previously declined to add six of them. *See* Aug. 3, 2023 Ltr. from K. Brisson to E. Holland.

*Jason Zemcik*: SaveOnSP asserts that JJHCS "asked Zemcik for guidance" or otherwise communicated with him regarding TrialCard deliverables. ███████████████████. *See, e.g.*, JJHCS_00026255; JJHCS_00005528; JJHCS_00008107; JJHCS_00001745; JJHCS_00007308. Further, several of the documents SaveOnSP cites do not even mention JJHCS or CarePath. *See, e.g.*, TRIALCARD_00001804; TRIALCARD_00001815; TRIALCARD_00001884; TRIALCARD_00003340; TRIALCARD_00001951;

---

[1] SaveOnSP's December 8 letter quotes several documents that JJHCS or TrialCard marked as Attorney's Eyes Only ("AEO") pursuant to the Protective Order, but the letter was designated as Confidential. We assume this was an oversight, and that SaveOnSP will treat the AEO portions of the letter as such. If this is not so, please inform us in writing by January 3, 2024.

Hannah Miles, Esq.
December 22, 2023
Page 2

TRIALCARD_00002804; TRIALCARD_00002931. Please explain why, in your view, abstract analyses unrelated to CarePath justify intrusive and voluminous discovery of Mr. Zemcik's custodial files. Relatedly, we note that to the extent Mr. Zemcik's custodial files contain relevant documents, they would be cumulative of those that TrialCard and JJHCS have produced from other agreed-upon custodians, including TrialCard custodians Fry (*see, e.g.*, TRIALCARD_00001804, TRIALCARD_00001884) and Weischedel (*see, e.g.*, JJHCS_00008107) and JJHCS custodians John King (*see, e.g.*, JJHCS_00026255) and Bill Robinson (*see, e.g.*, JJHCS_00005528).

> *Rick Ford*: SaveOnSP asserts that Mr. Ford provided ███████████████ ███████████████. However, as SaveOnSP acknowledges, ███████████████ ███████████████. *See* JJHCS_00035931. Furthermore, as with Mr. Zemcik, several of the documents SaveOnSP cites do not even mention JJHCS or CarePath. *See, e.g.*, TRIALCARD_00001951; TRIALCARD_00001811; TRIALCARD_00001966; TRIALCARD_00000348; TRIALCARD_00001881; TRIALCARD_00000356; TRIALCARD_00000362; TRIALCARD_00000389; TRIALCARD_00006722; TRIALCARD_00002552; TRIALCARD_00002430. Again, please explain why, in your view, abstract analyses unrelated to CarePath justify intrusive and voluminous discovery of Mr. Ford's custodial files—especially since, to the extent Mr. Ford's files contain relevant documents, they would be cumulative of those TrialCard and JJHCS have produced from other agreed-upon custodians, including TrialCard custodian Fry (*see, e.g.*, TRIALCARD_00001951, TRIALCARD_00001811, TRIALCARD_00000389) and JJHCS custodians Robinson and King (*see, e.g.*, JJHCS_00035931).

> *April Harrison*: SaveOnSP asserts that Ms. Harrison was involved in implementing JJHCS's CAP Program. Yet, as SaveOnSP acknowledges, ███████████████ ███████████████. *See, e.g.*, TRIALCARD_00002368. To the extent Ms. Harrison performed work for JJHCS in relation to its CAP program, documents related to that work are in JJHCS's possession. Additionally, to the extent Ms. Harrison's custodial files contain relevant documents, they would be captured by other existing TrialCard custodians, including Abraham, who is in Ms. Harrison's reporting line. SaveOnSP also asserts that Ms. Harrison purportedly assisted JJHCS in "efforts to modify copay assistance programs in responses to changes in the Best Price Rule." Yet, SaveOnSP has not articulated the purported relevance of such contemplated changes to the claims and defenses in this litigation; please provide this explanation.

> *Tommy Gooch*: SaveOnSP asserts that Mr. Gooch sent and received information from JJHCS and attended meetings with JJHCS employees. ███████████████ ███████████████. *See, e.g.*, JJHCS_00005784, JJHCS_00008104. Indeed, one document that SaveOnSP cites makes clear that ███████████████ ███████████ TRIALCARD_00005044. Finally, to the extent Mr. Gooch's custodial files contain relevant documents, they would be cumulative of those that TrialCard and JJHCS have produced from other agreed-upon custodians, including JJHCS custodian Robinson (*see, e.g.*, JJHCS_00008104) and TrialCard custodians Weischedel and Esterline (*see, e.g.*,

Hannah Miles, Esq.
December 22, 2023
Page 3

JJHCS_00008104; TRIALCARD_00007157).  In light of this additional information, if you still believe that cumulative discovery from Mr. Ford is necessary, please explain why.

_Lynsi Newton_:  SaveOnSP asserts that Ms. Newton was responsible for TrialCard's outreach regarding efforts to modify copay assistance programs in response to changes to the Best Price Rule.  As noted above, SaveOnSP has not articulated the relevance of documents relating to the Best Price Rule; again, please explain the purported relevance.  Further, ███████████████ ████████████████████████████████████████████████████████████████  _See_ JJHCS_00004607  (including  TrialCard  custodian  Weischedel);  JJHCS_00004608; JJHCS_00004611.  Similarly, ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████  .  _See_ TRIALCARD_00008354; TRIALCARD_00008594. SaveOnSP's citation to TRIALCARD_00008594 is particularly unavailing given the references therein to ████████████████████████████████████████████████████.  Finally, to the extent Ms. Newton's custodial files contain relevant documents, they would be captured by other existing TrialCard custodians, including Weischedel and Abraham, to whom Ms. Newton reported.  In light of this additional information, if you still believe that cumulative discovery from Ms. Newton is necessary, please explain why.

_Amber Maldonado_:  SaveOnSP asserts that Ms. Maldonado "played a key role in detecting and mitigating the alleged effects of maximizers and accumulators."  In fact, one of the documents SaveOnSP cites in support, JJHCS_00005061, ████████████████████████ █████████████████████████████████████████████████████████████████████ ██████████████████████████████.  Further, █████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████.  _See, e.g._, JJHCS_00006991.  Finally, to the extent Ms. Maldonado's custodial files contain relevant documents, they would be cumulative of those that TrialCard has produced from other agreed-upon custodians, including all existing TrialCard custodians.  _See, e.g._,  TRIALCARD_00006499  (including all four TrialCard custodians); TRIALCARD_00006511  (including  Weischedel  and  Esterline).   In light of this additional information, if you still believe that cumulative discovery from Ms. Maldonado is necessary, please explain why.

_Cosimo Cambi_:  SaveOnSP asserts that Mr. Cambi was the "████████████████████ ███████████"  However, both  TRIALCARD_00000334  and  TRIALCARD_00002656 indicate that ██████████████████████████████████████████████████████████  Again, TrialCard is a vendor.  Its understanding of the health insurance market and its opinions about its participants in the abstract is irrelevant to any actual work it performed implementing the CarePath program.  It cannot justify voluminous custodial discovery of the type SaveOnSP proposes.  Finally, ████████████ ████████████████████████████████████████████████████████████████████  .  _See_ TRIALCARD_00003079.  In light of this additional information, if you still believe that cumulative discovery from Mr. Cambi is necessary, please explain why.

Hannah Miles, Esq.
December 22, 2023
Page 4

*      *      *      *

We are available to meet and confer.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

# Exhibit 22

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

March 8, 2024

**Via E-mail**

Sara A. Arrow
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
sarrow@pbwt.com

Re:  ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Sara,

We write regarding SaveOn's second subpoena, to TrialCard, dated December 1, 2023, and to follow up on the parties' meet-and-confer on March 7, 2024.

**I.    Time Period**

SaveOn's subpoena—issued December 1, 2023—seeks documents through "the present," but TrialCard has generally refused to produce documents past July 1, 2022. We discussed SaveOn's position that TrialCard should produce documents through the present for all requests. TrialCard has provided no reasoned basis to explain the July 1, 2022 date—particularly for these requests which were served almost 18 months after that date.

In your March 1, 2024 letter and during the meet and confer, you pointed to the Benefits Investigations spreadsheet, where you have agreed to produce records through November 7, 2023, as an instance where you agreed to go beyond TrialCard's obligations "in the interest of compromise." But, as we stated, TrialCard is producing those records on behalf of J&J, which has been ordered by the Court to produce responsive documents through November 7, 2023. *See* Jan. 24, 2024 Tr. at 21:10–17 ("[W]e [J&J] have already agreed to produce[,] … either directly through us or by asking our vendor, a company called TrialCard, to produce what are known as benefits investigations. And those are the enforcement documents. We're in the process of making those productions for the relevant time period right now."); *see also* Oct. 30, 2023 Tr., at 62:8–13 ("[W]e [J&J] will also give

Sara A. Arrow
March 8, 2024

them through a production from TrialCard, which is our vendor, who we also represent and is subject to a subpoena, we'll give them benefits investigations that find any patient in a maximizer or accumulator through to the present. Through to the present.").

In addition, TrialCard represented that it intends to produce certain updated or refreshed CarePath claims data through November 7, 2023. You indicated that you were still exploring the scope of the refresh. Please let us know when we can expect that updated data, and whether you are producing claims data on behalf of TrialCard or J&J.

## II.    TrialCard's Ability to Identify Patients

Next, we discussed SaveOn's Requests 1, 2, 3, and 4, which seek documents related to TrialCard's ability to identify patients on accumulators, maximizers, or health plans advised by SaveOn. You continued to state that the information that we request in these RFPs is not relevant.

For Request 3, which requests "[d]ocuments sufficient to show the methods by which TrialCard identifies or attempts to identify if patients are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service," you pointed to the Benefits Investigations spreadsheet that you previously produced. But you were not able to represent that Benefits Investigations are the only method that TrialCard uses to identify or attempt to identify such patients, and refused to search for additional documents responsive to this request. As we explained, it is not our burden to tell you exactly what methods we are looking for—only TrialCard has that information.

How TrialCard could identify patients on SaveOn-advised plans is highly relevant to our failure-to-mitigate defense. You responded that the only methods to identify patients that may be relevant are those that were squarely presented to J&J and thus that we could get anything we needed from party discovery. That misunderstands our failure-to-mitigate affirmative defense. "To prove a failure to mitigate, one must show: (1) what reasonable actions the plaintiff ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced." *Prusky v. ReliaSatar Life Ins.*, 532 F.3d 252, 258–59 (3d Cir. 2008) (quotation marks omitted). "Damages that could have been 'avoided with reasonable effort without undue risk, expense, burden, or humiliation will be considered ... as not chargeable against the defendant.'" *Id.* at 259 (quoting Williston on Contracts, § 64:27, at 195). "Reasonableness is to be determined from all the facts and circumstances of each case, and must be judged in the light of one viewing the situation at the time the problem was presented." *Id.*; *see also Grubbs v. Knoll*, 376 N.J. Super. 420, 437 (N.J. App. 2005) ("Injured parties have a duty to take reasonable steps to mitigate damages ... The reasonableness of the plaintiff's actions is measured by a subjective standard."). If TrialCard, J&J's vendor, used other methods to identify patients on SaveOn-advised plans, maximizers, and accumulators, those methods are relevant to our

Sara A. Arrow
March 8, 2024

failure-to-mitigate defense as "reasonable actions the plaintiff ought to have taken," whether or not there is direct evidence that the option was put in front of J&J.

The parties are at impasse on this issue.

## III. TrialCard's Responses to Identifying Patients

Requests 6 and 8 seek documents related to TrialCard's responses to accumulators, maximizers, and plans advised by SaveOn. For Request 6, which asks for "[d]ocuments sufficient to show the methods by which TrialCard responded to Benefits Investigations that revealed or suggested that a patient was a member of a plan advised by SaveOnSP, any Copay Accumulator service, and/or any Copay Maximizer," you pointed to the form letters that TrialCard sent to Stelara and Tremfya patients after the patients were identified through Benefits Investigations. We asked if sending those letters (and the actions described in the letters) are the only methods or actions taken to respond to such Benefits Investigations. You did not confirm that, nor did you agree to produce documents reflecting other methods. You stated that we should seek this material from J&J because, as a vendor, TrialCard acted only according to J&J's direction in operating the CarePath program. As we stated, we are entitled to investigate both what J&J directed (through party discovery), and what TrialCard actually did (through third-party discovery). The parties are at impasse on this issue.

Request 8 seeks documents and communications regarding the creation or attempted creation of ███████████████████. You again stated that TrialCard's responses or solutions are only relevant to the extent that they were proposed or presented to J&J. For the reasons explained above, if TrialCard had developed responses or solutions that other drugs manufacturers were using or considered using to mitigate alleged losses relating to similar copay assistance program, that is relevant to our failure to mitigate defense, regardless of whether the option was directly pitched to J&J. TrialCard's capabilities are relevant. You suggested that we propose search terms for this request. Please see Appendix A. Please tell us by March 15, 2024 if you agree to run these search terms.

## IV. Communications with Stelara and Tremfya Patients

In response to Request 5, which seeks all communications with patients receiving Stelara and Tremfya, including recordings of calls, you pointed to your previous productions of "(1) case and task notes reflecting communications between TrialCard and patients taking at least one Janssen drug [to January 1, 2022]; and (2) for the period January 1, 2022 to November 7, 2023, certain documents sufficient to show written communications to patients receiving Stelara and Tremfya to the extent such communications concern whether those patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan." TrialCard's R&Os, at 12 (Dec. 15, 2023). You clarified that, based on your reasonable investigation,

3

Sara A. Arrow
March 8, 2024

the letters that TrialCard produced were the only communications sent to Stelara and Tremfya patients regarding whether those patients were in a SaveOn-advised plan, a maximizer or an accumulator.

We asked you to please update the case and task notes to the present. You stated that you would like the request back but were open to such a refresh, if we agreed that doing so would resolve this Request. When you produced the original set of case and task notes, you explained that you "filtered these notes for the Janssen Drugs at issue in this litigation and [then] further search[ed] these notes for responsive material" using search terms. *See* May 12, 2023 Ltr. from G. Carotenuto to A. Dunlap, at 2. You then "invite[d] [SaveOn] to use these records to identify a reasonable number of calls for which you would like TrialCard to attempt to produce the associated audio recording and/or transcript, where available." *Id.* If you refresh the call and task notes, subject to the same procedures in the May 12, 2023 letter, and agree that SaveOn reserves its rights to request call recordings and transcripts in the future, that would indeed resolve this Request.

## V.    Communications Between TrialCard and SaveOn

Finally, we discussed Request 7, which asks for "[a]ll communications between TrialCard and SaveOnSP, including without limitation recordings of calls." You asked whether SaveOn itself has these call records, such that any request for TrialCard to produce them would be duplicative. To the extent that SaveOn employees contacted the CarePath call center run by TrialCard on behalf of J&J, those outbound calls may not have been recorded by SaveOn. That is why we have requested these call records from TrialCard, which we believe records incoming calls to its call center as a regular practice.

In addition, we discussed the 16 call records that TrialCard produced on January 12, 2024, marked as TRIALCARD_00008915-8930. We explained that we believe that these were the "certain responsive call recordings as requested by JJHCS" that TrialCard agreed to produce in its R&Os in response to Request 7. We explained that it was our understanding that J&J possessed and used these call recordings long before they were produced by TrialCard to SaveOn on January 12, 2024. We asked how it was that J&J had come to possess these call recordings, and what the nature of the request was that J&J made to TrialCard that led to it producing the call recordings to us. You stated that you were not prepared to answer those questions but that you would look into it. We then asked whether it is TrialCard's general practice to share recordings of calls with or regarding CarePath patients with J&J, whether those calls were shared as part of this litigation, or whether these 16 calls were specifically identified and shared.

Please tell us (1) how J&J came to possess the call recordings before they were produced in this litigation by TrialCard, (2) what the nature of J&J's request to TrialCard was that led it to produce the call recordings to SaveOn, and (3) whether it is TrialCard's general practice to share recordings of calls with or

Sara A. Arrow
March 8, 2024

regarding CarePath patients with J&J, whether those calls were shared as part of
this litigation, or whether these 16 calls were specifically identified and shared.

We request a response by March 15, 2024.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

Sara A. Arrow
March 8, 2024

## **Appendix A**

- Proposed Custodians: Holly Weischedel, Sini Abraham, Paul Esterline, Rick Fry, Jason Zemcik, Rick Ford, April Harrison, Tommy Gooch, Lynsi Newton, Amber Maldonado, Cosimo Cambi.

- Search term:

    (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP) OR (accumulate* OR maximiz*) OR ("Essential Health Benefit*" OR NEHB OR EHB OR (variable /5 copay)) /20 (solution* OR response* OR shield* OR circumvent* OR prevent* OR avoid*)

6

# Exhibit 23

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Emma Holland
Associate
212 390 9364
eholland@selendygay.com

July 5, 2023

**<u>Via E-mail</u>**

Katherine Brisson
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
kbrisson@pbwt.com

**Re:**    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear Katherine,

We write in response to your June 30, 2023 letter regarding the subpoena Save On SP, LLC ("SaveOnSP") issued to TrialCard, Inc. ("TrialCard") in the above-captioned matter.

*First*, you confirm that TrialCard has not searched any of its custodial documents in response to any of the document requests contained in SaveOnSP's subpoena. You assert that, after a reasonable investigation, you concluded that Trial-Card did not need to search its custodial documents. We disagree that TrialCard's investigation was reasonable or that it was not required to search its custodial documents in the first instance.

*Second*, you assert that SaveOnSP refused to identify any specific gaps in TrialCard's production or to identify any specific requests that merit custodial production. We disagree that it is SaveOnSP's burden to do so. It is TrialCard's obligation in the first instance to conduct a reasonable search and identify custodians with documents responsive to SaveOnSP's requests, which TrialCard has not done.

*Third*, you say that you will let us know "as soon as possible" "whether there is anything more to be done to satisfy the concerns raised in your letter." We have been discussing these issues for weeks, and TrialCard has repeatedly stated that it believes that it does not need to search for custodial documents in the first instance (that is, unless SaveOnSP identifies specific requests that it believes require custodial production). We thus understand the parties to be at impasse on this point.

Katherine Brisson
July 5, 2023

We have also asked you twice whether TrialCard consents to proceeding before Magistrate Judge Waldor, and you have failed to respond twice. We thus understand that TrialCard does not consent. If TrialCard now agrees to search custodial documents in the first instance or if it consents to proceed before Magistrate Judge Waldor, please let us know promptly.

*Fourth*, you mischaracterize our discussion regarding JJHCS's subpoenas to Express Scripts Inc. ("ESI") and Accredo HealthGroup, Inc. ("Accredo"). Among other things, you assert that SaveOnSP takes the position that third parties must always produce custodial documents in response to subpoenas. In fact, we take the position that TrialCard must produce custodial documents in response to SaveOnSP's subpoena.

*Finally*, you refuse to identify who is paying TrialCard's fees and costs relating to its response to SaveOnSP's subpoena, calling our request that it do so "remarkable." We asked this question only after you asserted during our meet-and-confer that conducting a custodial search would be burdensome, as whether TrialCard is bearing its fees and costs is relevant to its burden. Please either identify who is paying TrialCard's fees and costs or state that TrialCard does not assert a burden objection in responding to SaveOnSP's subpoena.

Best,

/s/ Emma Holland

Emma C. Holland
Associate

2

# Exhibit 24



June 16, 2023

Katherine Brisson
(212) 336-2552

**VIA EMAIL**

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
         *No. 2:22-cv-02632 (ES) (CLW)*

Dear Emma:

On behalf of TrialCard, we write in response to your June 14, 2023 letter concerning TrialCard's productions in the above-captioned matter.

**I.      Non-Custodial Documents**

In your May 31, 2023 letter, SaveOnSP requested that TrialCard identify the individual custodian or the specific noncustodial source for each document it has produced. In response to that request, TrialCard explained that it would not identify the specific sources for noncustodial documents—an approach entirely consistent with the parties' practices in this litigation. *See* Ltr. from K. Brisson to E. Holland dated June 7, 2023. Indeed, SaveOnSP has not identified the specific sources for any non-custodial document it has produced in this litigation. SaveOnSP can hardly place demands on a third party for format requirements that it has not even complied with itself in party discovery.

The documents that TrialCard has produced in this matter consist of, among other things: (1) organizational charts, (2) CarePath claims and enrollment data, (3) template letters and related communications to patients; (4) patient call notes; and (5) a document retention policy. To identify and collect such documents, we worked closely with our client to identify responsive materials and the repositories in which they are maintained. For example, we worked with the Chief Compliance Officer and General Counsel to identify organizational charts and the document retention policy. Similarly, we worked with Quality Assurance and Quality Control personnel to source call data from a dedicated database and with appropriate client service representatives to retrieve enrollment and claims data from a centralized location. We can discern no basis for SaveOnSP's request for additional information about the specific sources for these documents. Nevertheless, we are willing to consider a reasoned request for additional source information on a case-by-case basis.

Emma Holland, Esq.
June 16, 2023
Page 2

## II.     Custodial Documents

TrialCard has engaged in substantial efforts to identify and produce documents
responsive to the SaveOnSP's subpoena, including producing over 19,000 call notes and over 100
responsive non-custodial documents.  *See, e.g.*, Ltr. from K. Brisson to E. Holland dated June 7,
2023.  JJHCS has also produced a substantial number of documents, including more than 4,000
communications (and related materials) between JJHCS and TrialCard, that are responsive to
SaveOnSP's subpoena to TrialCard.  As we have repeatedly explained, TrialCard, as a third party,
need not produce documents duplicative of those JJHCS has produced—a position SaveOnSP has
fully embraced in ongoing third-party motion practice.

Indeed, as you know, JJHCS served third party subpoenas on SaveOnSP's business
partners, Express Scripts Inc. ("ESI") and Accredo Health Group, Inc. ("Accredo").  In stark
contrast to TrialCard, neither ESI nor Accredo have produced ***any*** documents in response to those
subpoenas, arguing in part that third parties need not duplicate party productions.  SaveOnSP has
even gone out of its way to support ESI and Accredo's efforts to resist discovery, including by
submitting its own affidavits detailing the number of documents SaveOnSP has produced in this
litigation.  *See* Dunlap Aff., *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*,
No. 4:23-mc-527-SEP (E.D. Mo.), D.E. 13-10 (declaration from SaveOnSP's lead trial counsel in
support of ESI's Opposition to JJHCS's Motion to Compel); Dunlap Aff.*, Johnson & Johnson
Health Care Systems, Inc. v. Save On SP, LLC*, No. 2:23-mc-00019-JTF-tmp (W.D. Tenn.), D.E.
19 (same in support of Accredo).  SaveOnSP nevertheless expects TrialCard to bear far more
burdensome discovery than its own business partners are willing to undertake.

Despite TrialCard's considerable efforts to comply with the subpoena (and
SaveOnSP's business partners' complete failure to do the same), SaveOnSP now apparently
wishes to move to compel additional custodial documents from TrialCard.  Any such motion would
be grossly unripe and meritless.  SaveOnSP has not identified any gaps in TrialCard's productions,
nor has it identified specific documents that it seeks from any specific custodian.  While TrialCard
is willing to consider targeted custodial collections, it cannot do so entirely in the abstract and
without any direction whatsoever as to which of SaveOnSP's thirty-two document requests
purportedly warrants a custodian.

TrialCard has carefully reviewed the subpoena, delineated its objections and scope
of production, and produced responsive documents.  If SaveOnSP believes some particular
document request still requires a supplemental TrialCard custodial production despite the party
and non-party productions to date, please identify those requests, why they purportedly require
custodial production, and which custodians you seek.  We will then consider any such request.

## III.    Request for Consent to File Joint Letter

Finally, SaveOnSP has asked for TrialCard's consent to submit a joint letter on
these issues before Magistrate Judge Waldor in the District of New Jersey.  As you are well aware,
TrialCard, which is headquartered in North Carolina, is a nonparty in this case.  While TrialCard
is willing to consider a request to proceed before Judge Waldor rather than in North Carolina, it
cannot do so without additional information concerning the scope of a dispute, once ripe, and the

Emma Holland, Esq.
June 16, 2023
Page 3

specific relief SaveOnSP intends to seek.  This is particularly so given your acknowledgement in
the June 14 letter that you are still reviewing our May 31 letter.

Very truly yours,

*/s/ Katherine Brisson*
Katherine Brisson

# Exhibit 25

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

selendy
gay
elsberg

Elizabeth H. Snow
Associate
212 390 9330
esnow@selendygay.com

December 27, 2023

**Via E-mail**

Sara Arrow
Patterson Belknap Webb & Tyler LLP
133 Avenue of the Americas
New York, NY 10036
Sarrow@pbwt.com

Re:     ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
        LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear Sara,

We write in response to your December 22, 2023 letter concerning the sub-poena issued to TrialCard, Inc. ("TrialCard") by Save On SP, LLC ("SaveOn") on February 18, 2023 (the "Subpoena"), and to follow up on the parties' December 12, 2023 meet and confer.

We stated in our December 14, 2023 letter that, following the parties' meet and confer, the parties are at impasse on the question of whether TrialCard will produce documents through November 7, 2023, the date ordered by the Court for a refreshed party production. TrialCard's responses do not change this conclusion.

*First*, the May 31, 2023 letter that TrialCard cites to purportedly show that SaveOn "accepted [April 1, 2016 to July 1, 2022] as the Relevant Time," offers no support for its assertion that SaveOn agreed to a July 1, 2002 cutoff for TrialCard's production. The quoted language merely summarized TrialCard's position: "You replied that TrialCard will produce documents responsive to this request from April 1, 2016 through July 1, 2022 (the 'Relevant Time Period')." *See* May 31, 2023 Ltr. from E. Holland to G. Carotenuto at 1. Similarly, the July 26, 2023 letter simply proposed supplemental search terms to add to the search that TrialCard had agreed to conduct, reserving all rights. *See* July 26, 2023 Ltr. from E. Holland to K. Brisson at 7 n.1.

*Second*, while TrialCard asserts that it is improper to extend the scope of the subpoena beyond the date of service, federal courts have ordered third parties

Sara A. Arrow
December 27, 2023

to produce documents created after the return date or service date of subpoenas. *See, e.g.*, *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 449 (S.D.N.Y. 2011); *United States v. Int'l Bus. Machines Corp.*, 83 F.R.D. 92, 96 (S.D.N.Y. 1979); *Addison v. Monarch & Assocs., Inc.*, No. 14-CV-00358 (GW) (JEM), 2016 WL 11530426, at *1 (C.D. Cal. Dec. 12, 2016). Even were it otherwise, SaveOn could simply serve an updated subpoena covering the updated timeframe; TrialCard's position serves only to delay production of clearly relevant documents.

*Third*, while TrialCard points out that the Court's November 7, 2023 Order did not direct it to update its discovery responses, that issue was not before the Court. Now that the parties have been ordered to refresh their productions through November 7, 2023, the question is whether TrialCard—J&J's main vendor for CarePath—should produce documents from the same time period, and it should. TrialCard asserts that no other third party has updated its production through November 7; in fact, Archbow has agreed to do so, and TrialCard should as well.

In sum, the parties did not agree that TrialCard's production would not extend past July 1, 2022. TrialCard has not articulated a relevance or burden objection. The parties are thus at impasse on this issue. SaveOn requests that TrialCard consents to submit this dispute to Special Master Freda L. Wolfson.

We request a response by January 3, 2023.

Best,


Elizabeth H. Snow
Associate

# Exhibit 26

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy | Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

March 4, 2024

**<u>Via E-mail</u>**

Sara A. Arrow
Patterson Belknap Webb & Tyler LLP
133 Avenue of the Americas
New York, NY 10036
sarrow@pbwt.com

**Re:**    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Sara,

We write to you in your capacity as counsel for J&J to request J&J's consent under paragraph 4 of the Discovery Confidentiality Order entered in this case, Dkt. No. 62 (Nov. 22, 2022), to include some of J&J's produced documents in this case designated as confidential or attorneys' eyes only, listed in the attached Appendix, in a forthcoming filing in a proceeding seeking enforcement of the subpoena that SaveOn has served on TrialCard. Consistent with Local Rule 79.2 of the United States District Court for the Eastern District of North Carolina, we intend to seek leave to file the documents under seal.

Please let us know by March 8, 2024 whether you consent.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

Sara A. Arrow
March 4, 2024

## <u>Appendix</u>

- JJHCS_00001745

- JJHCS_00002336

- JJHCS_00004607

- JJHCS_00004608

- JJHCS_00004611

- JJHCS_00005528

- JJHCS_00006991

- JJHCS_00007308

- JJHCS_00008107

- JJHCS_00026255

- JJHCS_00026339

- JJHCS_00035931

- JJHCS_00152075

- JJHCS_00156688

- JJHCS_00150660

- JJHCS_00150666

- JJHCS_00150687

- JJHCS_00151235

- JJHCS_00152075

- Pl.'s Responses, Interrog. Nos. 1, 5, 6, (January 17, 2023)

# Exhibit 27

| | |
|---|---|
| **From:** | Sternberg, Jeremy M (BOS - X71476) <Jeremy.Sternberg@hklaw.com> |
| **Sent:** | Friday, April 7, 2023 9:00 AM |
| **To:** | Carotenuto, George (Departed User); Rajkumar, Krithika (BOS - X75857); Sandick, Harry (x2723) |
| **Cc:** | ~jgreenbaum@sillscummis.com |
| **Subject:** | RE: Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC | ESI Subpoena |

> **Caution: External Email!**

George,
Thank you for your letter.  Express Scripts and Accredo have considered your proposal and decline to consent to having any motion practice on the subpoenas directed to them in the above-referenced case heard in the District of New Jersey.  When you make your filings in the appropriate district called for by Fed. R. Civ. P. 45, please serve the papers on us.
Regards,
Jeremy

**Jeremy Sternberg** | **Holland & Knight**
Partner
Holland & Knight LLP
10 St. James Avenue, 11th Floor | Boston, Massachusetts 02116
Phone 617.854.1476 | Fax 617.523.6850
jeremy.sternberg@hklaw.com | www.hklaw.com

**From:** Carotenuto, George (x2547) <gcarotenuto@pbwt.com>
**Sent:** Thursday, March 30, 2023 6:21 PM
**To:** Rajkumar, Krithika (BOS - X75857) <Krithika.Rajkumar@hklaw.com>; Sternberg, Jeremy M (BOS - X71476) <Jeremy.Sternberg@hklaw.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>
**Cc:** Jeffrey Greenbaum <JGREENBAUM@sillscummis.com>
**Subject:** RE: Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC | ESI Subpoena

*[External email]*
Counsel,

Please see the attached correspondence.

Best,
George

**From:** Rajkumar, Krithika (BOS - X75857) <Krithika.Rajkumar@hklaw.com>
**Sent:** Friday, March 24, 2023 10:45 PM
**To:** Carotenuto, George (x2547) <gcarotenuto@pbwt.com>; Sternberg, Jeremy M (BOS - X71476)

1

<Jeremy.Sternberg@hklaw.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>
**Cc:** Jeffrey Greenbaum <JGREENBAUM@sillscummis.com>
**Subject:** RE: Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC | ESI Subpoena

*Caution: External Email!*

Counsel,

Apologies for the evening interruption. Please see the attached correspondence.

Thank you,

Krithika

**Krithika Rajkumar** | **Holland & Knight**
Associate
Holland & Knight LLP
10 St. James Avenue, 11th Floor | Boston, Massachusetts 02116
Phone 617.573.5857 | Fax 617.523.6850
krithika.rajkumar@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Carotenuto, George (x2547) <gcarotenuto@pbwt.com>
**Sent:** Friday, March 17, 2023 4:40 PM
**To:** Sternberg, Jeremy M (BOS - X71476) <Jeremy.Sternberg@hklaw.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>
**Cc:** Rajkumar, Krithika (BOS - X75857) <Krithika.Rajkumar@hklaw.com>; Jeffrey Greenbaum <JGREENBAUM@sillscummis.com>
**Subject:** RE: Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC | ESI Subpoena

*[External email]*
Counsel,

Please see the attached correspondence.

Best,
George

**George Carotenuto**
He | Him | His
Associate
**Patterson Belknap Webb & Tyler LLP**
1133 Avenue of the Americas | New York, NY  10036
T: 212.336.2547
gcarotenuto@pbwt.com | www.pbwt.com

**From:** Sternberg, Jeremy M (BOS - X71476) <Jeremy.Sternberg@hklaw.com>
**Sent:** Sunday, March 12, 2023 4:22 PM
**To:** Sandick, Harry (x2723) <hsandick@pbwt.com>; Carotenuto, George (x2547) <gcarotenuto@pbwt.com>
**Cc:** Rajkumar, Krithika (BOS - X75857) <Krithika.Rajkumar@hklaw.com>; Jeffrey Greenbaum <JGREENBAUM@sillscummis.com>
**Subject:** RE: Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC | ESI Subpoena

*Caution: External Email!*

Harry,

I appreciate your courtesy with respect to the scheduling issue I had last week.

Since our last call we have learned a few things that likely alter the course we were discussing and that you reference below:

1. it has come to our attention that SaveOn has a number of documents that you were positing as possibly unique to Express Scripts (and we understand SaveOn is making a substantial production to you this coming week)
2. the burden to Express Scripts of searching for certain documents that you posit as unique to Express Scripts is high (and in our view outweighed at present by: (a) the likelihood that SaveOn's imminent production will contain many of them); and (2) the efficiencies to be gained by J&J's review of that production to determine what is actually not included that ESI might reasonably have and then seeking that focused set of documents from ESI)
3. our understanding that generally (and in this district), third party discovery ought not burden third parties with duplication of what can be achieved by party discovery and that it should generally be sequenced (in the way we originally suggested) to seek that which was not achieved in party discovery in a focused manner
4. it is our sense that the current discovery deadline in your case will not hold and that whatever new deadline you obtain will sensibly accommodate the sequenced approach we are suggesting; to be clear ESI is amenable to producing relevant (and we may well have a quite different view of relevance than you do) focused documents that cannot be obtained from party discovery

Regards,
Jeremy

**Jeremy Sternberg | Holland & Knight**
Partner
Holland & Knight LLP
10 St. James Avenue, 11th Floor | Boston, Massachusetts 02116
Phone 617.854.1476 | Fax 617.523.6850
jeremy.sternberg@hklaw.com | www.hklaw.com

**From:** Sandick, Harry (x2723) <hsandick@pbwt.com>
**Sent:** Thursday, March 9, 2023 10:43 AM

**To:** Sternberg, Jeremy M (BOS - X71476) <Jeremy.Sternberg@hklaw.com>; Carotenuto, George (x2547)
<gcarotenuto@pbwt.com>
**Cc:** Rajkumar, Krithika (BOS - X75857) <Krithika.Rajkumar@hklaw.com>; Jeffrey Greenbaum
<JGREENBAUM@sillscummis.com>
**Subject:** RE: Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC | ESI Subpoena

*[External email]*
Jeremy,

Thanks for letting us know about your scheduling conflict.  We should reschedule the call as soon as you are
available.  Regardless of when we meet and confer again, we would like to review, as soon as possible, a list of the
categories of documents for which ESI is willing to make a parallel production in this matter.  Please let us know when you
can provide that information so that we can avoid or minimize the need for motion practice on this subpoena.

Thanks again.

Best regards,

Harry

Harry Sandick
Patterson Belknap Webb & Tyler LLP

-----Original Appointment-----
**From:** Sternberg, Jeremy M (BOS - X71476) <Jeremy.Sternberg@hklaw.com>
**Sent:** Wednesday, March 8, 2023 9:22 PM
**To:** Carotenuto, George (x2547)
**Cc:** Rajkumar, Krithika (BOS - X75857); Sandick, Harry (x2723); Jeffrey Greenbaum
**Subject:** Declined: Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC | ESI Subpoena
**When:** Thursday, March 9, 2023 11:30 AM-12:00 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** 888-788-0099,,2123362723

**Caution: External Email!**

Dear All,
I have had something emergent come up for tomorrow and will not be able to make this scheduled call.  I will be in
touch later tomorrow with a new proposed time.
Jeremy

---

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is
addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and
do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client
unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If
you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to
preserve the attorney-client or work product privilege that may be available to protect confidentiality.

---

Privileged/Confidential Information may be contained in this message. If you are not
the addressee indicated in this message (or responsible for delivery of the message to
such person), you may not copy or deliver this message to anyone. In such case, you
should destroy this message and kindly notify the sender by reply email. Please advise

immediately if you or your employer do not consent to receiving email messages of this kind.

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

# Exhibit 28



April 12, 2024

Saniya Suri
(212) 336-2226

**VIA EMAIL**

Hannah R. Miles, Esq.
Selendy Gay, PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re: **Possession, Custody, and Control of TrialCard's Documents**
> *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,*
> **2:23-cv-02632 (JKS) (CLW)**

Dear Hannah:

We write in response to SaveOnSP's March 13, 2024 letter regarding whether JJHCS has possession, custody, or control of documents held by TrialCard, Inc. ("TrialCard").

In your letter, you claim that JJHCS has the legal right to obtain upon demand, and thus controls, all "documents in TrialCard's possession relating to TrialCard's services for [JJHCS]." Mar. 13, 2024 Ltr. from H. Miles to S. Arrow at 3. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See, e.g.*, JJHCS_00011325, JJHCS_00011339 JJHCS_00011346, JJHCS_00011352, JJHCS_00011354, JJHCS_00011355, JJHCS_00011357, JJHCS_00011358, JJHCS_00011319, JJHCS_00011320, JJHCS_00025068, JJHCS_00025072.

Based on our reasonable investigation, we understand that the Amended and Restated Master Services Agreement dated November 30, 2023 (the "2024 MSA") is the current operative agreement between JJHCS and TrialCard, and that it went into effect on January 1, 2024. JJHCS has attached the relevant agreement to this letter as Exhibit A and intends to produce it to SaveOnSP on or before May 10, 2024.

In any event, we do not agree that, as a categorical matter, JJHCS has control over all of TrialCard's documents relating to its services for JJHCS. Rather, under the 2024 MSA, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See* 2024 MSA § 17.1. There may

Hannah R. Miles, Esq.
April 12, 2024
Page 2

well be other types of documents relating to TrialCard's services for JJHCS that are not covered by § 17.1.[1]

      Absent from your letter is an explanation of what categories of documents SaveOnSP seeks to obtain from TrialCard.  As you acknowledge, TrialCard has been cooperative and produced documents in response to SaveOnSP's third-party subpoena and at the request of JJHCS.  Given that JJHCS has no categorical right to TrialCard's files, please let us know with specificity what additional categories of documents SaveOnSP seeks so that JJHCS can assess whether those documents fall within the ambit of the relevant MSA.

      Once SaveOnSP clarifies which documents it seeks, JJHCS will determine whether it agrees that those documents are subject to the relevant MSA and confer further with TrialCard concerning this subject.

            Very truly yours,


            */s/ Saniya Suri*
            Saniya Suri

---

[1] For the avoidance of doubt, JJHCS does not have possession or custody of these documents.  *See* Fed. R. Civ. P. 34(a).

15055563

# Exhibit 29



www.pbwt.com

July 19, 2023

Katherine Brisson
(212) 336-2552

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

> **Re:** *Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC*
> <u>**Case No. 2:22-cv-02632 (ES) (CLW)**</u>

Dear Emma:

On behalf of TrialCard, we write further to our letter of July 13, 2023 to provide additional information concerning the search terms we intend to use to identify responsive materials from the TrialCard custodians identified in our prior correspondence.

We intend to use the following search terms:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP

- ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy")

- (CarePath OR "Care Path") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy")

- (Accumulator OR Maximizer) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy")

Very truly yours,

*/s/ Katherine Brisson*
Katherine Brisson

---

Patterson Belknap Webb & Tyler LLP    1133 Avenue of the Americas, New York, NY 10036    T 212.336.2000    F 212.336.2222

# EXHIBIT 30
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 31

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Andrew R. Dunlap
Partner
212.390.9005
adunlap@selendygay.com

March 29, 2023

**Via E-mail**

Harry Sandick
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
hsandick@pbwt.com

Re:    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC***
       **(Case No. 2:22-cv-02632-JMV-CLW)**

Dear Harry,

We write in response to your March 9, 2023 letter regarding SaveOnSP's organizational charts, proposed custodians, and proposed collection and search protocol, and to your March 22, 2023 letter regarding potential additional search terms.

## I.    Organization Charts

You say that JJHCS was unable to read several of the organization charts in our February 22, 2023 production. We produced the documents as they were collected and in accordance with the November 22, 2022 ESI Protocol; we are working to see if it is possible to re-image them. We will produce any re-imaged documents as soon as we are able.

You note that we have not produced organization charts covering the period of January 1, 2017 to January 29, 2018. Our searches have not identified any organization charts for this period; if we identify any such charts, we will produce them.

## II.    Custodians

You ask if we have conducted a reasonable investigation of whether SaveOnSP's custodian Danielle Wagner would have been included on relevant communications received by Ted Mighells and Sarah Segerson, both of whom JJHCS requested as additional custodians. We have. Based on that investigation, it is unlikely that Mighells received unique relevant communications not also received by Wagner. There is some chance that Segerson received unique relevant communications; we will add her as a custodian.

You ask that we add three more custodians (Gary Meyn, Jennifer Menz, and Mariah DuRant) in addition to the four we agreed to add in our March 3, 2023 letter (Nicole Haas, Sarah Kancar, Brianna Reed, Laura McClung).

We will not add Gary Meyn as a custodian. Meyn stopped working for SaveOnSP on March 1, 2021. After a reasonable investigation, we do not believe that SaveOnSP retained Meyn's files.

We will also not add Jennifer Menz or Mariah DuRant as custodians. After a reasonable investigation, we believe they are unlikely to possess unique relevant documents.

## III.    Search Methodology

You ask if we will add four search terms proposed by JJHCS in its February 17, 2023 letter that we accepted in our March 3, 2023 letter (but inadvertently reproduced with minor variations) exactly as requested by JJHCS. We confirm we will run these searches exactly as requested by JJHCS, as follows:

- ((essential or "non-essential" or nonessential) W/10 (benefit*)) or EHB* OR NEHB*

- "non-med* switch*" OR "nonmed* switch*" OR ((patient OR non-med* OR non-med*) W/15 switch*) OR ((patient* OR chang* OR mov* OR switch*) W/30 (new W/5 (drug* OR med* OR brand*)))

- "open enrollment" OR ((summar* OR term) W/30 (program* OR plan* OR benefit* OR coverage* OR coinsurance OR deductible OR OOP OR "out-of-pocket"))

- "Intergovernmental Personnel Benefit Cooperative" OR IPBC OR (Rachel W/2 Harmon) OR rharmon@express-scripts.com OR ((presentation OR training OR video) W/5 (ESI OR "Express Scripts"))

You ask us to use seven additional or modified search terms (two requested in your February 17, 2023 letter and five in your March 9, 2023 letter). We will add the following terms:

- (("transfer*" OR reject* OR POS OR "point of sale" OR step edit*) W/15 pharm*) OR "Error Code 73" OR ((drug* OR med* OR fill*) W/15 (cover*))

- (adher* OR complian* OR comply* OR discontinue*) W/10 (trend* OR rate* or stat*)

- Accredo W/15 (transfer* OR assistance OR "savings card" OR "copay card" OR "co-pay card" OR enroll* OR accumulat* OR maximiz*)

- https://www.saveonsp.com* OR www.saveonsp.com* OR "reduce this exorbitant cost" OR "we offer an innovative specialty solution" OR "is committed to making

expensive medications more affordable for companies" OR "modifying their plan design" OR "how will our plan see savings generated"

We will not add the remaining terms, which generate an unduly burdensome number of additional unique documents:

| Search Proposed by JJHCS | Unique Additional Documents |
|---|---|
| ((infla* OR incr* OR 1,250 OR 1250 OR 1,666 OR 1666 OR 2,000 OR 2000 OR 5000 OR 5,000 OR 30%) W/30 (copay* OR co-pay* OR coins* OR co-ins* OR "out of pocket" OR OOP OR bucket*)) OR "ingredient cost" | 22,634 |
| (ESI OR "Express Scripts" OR Evernorth) W/15 (fee* OR ((master W/2 agreement) OR assistance OR "copay card" OR "co-pay card" OR "savings card" OR enroll* OR accumulat* OR maximiz* OR @express-scripts.com)) | 221,797 |
| exhaust* OR 'us* up" OR drain* OR complain* OR "r*n out" W/15 co-pay OR copay* OR support* OR cover* | 43,425 |

You ask (in your March 22, 2023 letter) if we intend to add any search terms or custodians following the parties' resolution of several outstanding RFP disputes. We will not add additional custodians. We will add the following search terms, which are names of Janssen drugs not yet represented in our search terms:

- Prezcobix

- Symtuza

- Valchlor

A full list of agreed custodians and search terms is attached as Appendix 1. These search parameters are more than sufficient to identify documents potentially responsive to JJHCS's requests. All told, using these parameters produces a total of almost 600,000 unique custodial documents for review.

## IV.     Non-Custodial Sources

You ask us to confirm that we will produce custodial documents in response to JJHCS's RFP No. 31. We will.

## V.     Call Center Recordings and Transcripts

You ask about our collection and production of call center records.

As background, following a reasonable investigation, we have determined that SaveOnSP



. It would thus take SaveOnSP's systems, running 24 hours a day, well over a year to export all audio recordings and transcripts, which would be unduly burdensome and vastly disproportionate. (We continue to investigate ways to expedite the export process.)

We intend to proceed as follows. We will search Salesforce records using the names of members of SaveOnSP-advised plans who use a Janssen drug. We will produce the relevant portions of the Salesforce records for those plan members. We invite you to use these records to identify a reasonable number of calls for which you would like us to attempt to identify and produce the associated audio recording and/or transcript. We will attempt to identify those recordings or transcripts using the dates and times recorded in Salesforce of when those members spoke with SaveOnSP. We will then export from Chronicall and Calabrio the audio recordings and/or transcripts in those systems that match those dates and times and review them for production.

We reserve all rights and are available to meet and confer.

Best,

/s/ Andrew R. Dunlap

Andrew R. Dunlap
Partner

**Appendix 1**

Agreed custodians as of March 29, 2023:

- Jody Miller
- Claudia Dunbar
- Ron Krawczyk
- Robert Saeli
- Nick Morrissey
- Jill Stearns
- Florencio Calderon
- Jenna Ordonez
- Amanda Larsen
- Emily Reckinger
- Jenna Benkelman
- Dave Chelus
- Alissa Langley
- Melanie Jerred
- Danielle Wagner
- Michelle Tabone
- Michael Heinrichs
- Nicole Haas
- Sarah Kancar
- Laura McClung
- Brianna Reed
- Sarah Segerson


Agreed search terms as of March 29, 2023:

- adherence W/5 trend*
- "Affordable Care Act" OR ACA
- analy* OR "white paper*" OR "research" OR report* OR publication* OR review* OR article* OR study OR studies W/15 "specialty med*" OR "specialty drug*" OR biolog* OR infus* or accumul* OR maximizer* OR copay* OR co-pay* OR coins* OR co-ins*
- BALVERSA OR erdafitinib
- benchmark* /10 (plan OR state OR EHB OR essential* OR NEHB or non-essential* OR non-essential*)
- CarePath OR Carpath OR Carepth
- care W/2 path
- (chang* or edit*) W/25 website
- "DARZALEX FASPRO" OR DARZALEX OR daratumumab OR hyaluronidase*
- email W/10 template

- ERLEADA OR apalutamide
- ESI W/10 fees
- ((essential or "non-essential" or nonessential) W/10 (benefit*)) or EHB* OR NEHB*
- "https://saveonsp.com"
- IMBRUVICA OR ibrutinib
- (inc* W/10 (save* OR saving*) W/15 manuf* OR assist*
- (inclu* OR add* OR remov* OR Structure) W/10 (benefit* OR "drug list*")
- "Intergovernmental Personnel Benefit Cooperative" OR IPBC OR (Rachel W/2 Harmon) OR rharmon@expressscripts.com OR ((presentation OR training OR video) W/5 (ESI OR "Express Scripts"))
- its.jnj.com
- J&J OR JnJ
- Janssen OR Jannsen OR Jansen OR Jannssen
- JJHCS OR JHCS OR JJCHS OR JJHS
- "Johnson & Johnson" OR "Johnson and Johnson"
- "Lash Group"
- "non-med* switch*" OR "nonmed* switch*" OR ((patient OR non-med* OR nonmed*) W/15 switch*) OR ((patient* OR chang* OR mov* OR switch*) W/30 (new W/5 (drug* OR med* OR brand*)))
- "open enrollment" OR ((summar* OR term) W/30 (program* OR plan* OR benefit* OR coverage* OR coinsurance OR deductible OR OOP OR "out-of-pocket"))
- OPSUMIT OR macitentan
- (patient* OR member*) W/5 (adher* OR complian* OR comply* OR dis-continu*)
- REMICADE OR infliximab
- RYBREVANT OR amivantamab*
- SIMPONI OR golimumab
- STELARA OR ustekinumab
- structure* W/4 (benefit* OR "drug list*")
- "Summary of Benefits"
- "Summary Plan"
- TRACLEER OR bosentan
- TREMFYA OR guselkumab
- TrialCard OR "Trial Card"
- UPTRAVI OR selexipag
- Ventavis OR iloprost
- ZYTIGA OR abiraterone
- (("transfer*" OR reject* OR POS OR "point of sale" OR step edit*) W/15 pharm*) OR "Error Code 73" OR ((drug* OR med* OR fill*) W/15 (cover*))
- (adher* OR complian* OR comply* OR discontinue*) W/10 (trend* OR rate* or stat*)

- Accredo W/15 (transfer* OR assistance OR "savings card" OR "copay card" OR "co-pay card" OR enroll* OR accumulat* OR maximiz*)
- https://www.saveonsp.com* OR www.saveonsp.com* OR "reduce this exorbitant cost" OR "we offer an innovative specialty solution" OR "is committed to making expensive medications more affordable for companies" OR "modifying their plan design" OR "how will our plan see savings generated"
- Prezcobix
- Symtuza
- Valchlor

# Exhibit 32

| From: | Brisson, Katherine (x2552) |
|---|---|
| To: | "Hannah Miles"; Arrow, Sara (x2031); Mangi, Adeel A. (x2563); Sandick, Harry (x2723); LoBiondo, George (x2008); Long, Julia (x2878); ~jgreenbaum@sillscummis.com; ~klieb@sillscummis.com; _cg J&J-SaveOn |
| Cc: | Philippe Selendy; Andrew Dunlap; Meredith Nelson; Elizabeth Snow; EWohlforth@rc.com |
| Bcc: | "_J5400_001748_JOHNSON_JOHNSON_SaveOnSP 00_Emails_J5400_001748_" |
| Subject: | RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW) |
| Date: | Tuesday, April 9, 2024 2:01:54 PM |

Counsel:

On behalf of TrialCard, we are in receipt of your request that TrialCard identify the recordings associated with 1,528 call notes.  Given the significant volume of call recordings requested, we are continuing to investigate the feasibility of your request.

Best,
Katherine

---

**From:** Hannah Miles <hmiles@selendygay.com>
**Sent:** Tuesday, March 26, 2024 6:19 PM
**To:** Arrow, Sara (x2031) <sarrow@pbwt.com>; Brisson, Katherine (x2552) <kbrisson@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Long, Julia (x2878) <jlong@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; EWohlforth@rc.com
**Subject:** JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)


**Caution: External Email!**


Counsel,

Please see the attached letter.

Best,
Hannah

**Hannah Miles**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: she, her, hers
--------------------------------------------

+1 212.390.9055 [O]
+1 347.731.1404  [M]

# Exhibit 33



**www.pbwt.com**

May 7, 2024

Elisabeth Shane
(212) 336-2659

**By Email**

Hannah Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:     **SaveOnSP's Call Recordings**
> *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
> **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Hannah:

We write in response to your April 26, 2024 letter and further to our prior correspondence regarding the same.

As you know, JJHCS recently requested that SaveOnSP produce recorded calls and transcripts with patients who spoke to SaveOnSP and were prescribed a Janssen drug. *See* Apr. 23, 2024 Ltr. from E. Shane to H. Miles. We understand that, although SaveOnSP seeks the equivalent production from TrialCard (namely, communications with persons likely enrolled in CarePath relating to SaveOnSP), it objects to JJHCS's request on the basis of the purported burden. In light of this objection, please specify, in as much detail as possible, the burden associated with producing the call recordings and transcripts that JJCHS requested in its April 23 letter. Please also explain what steps SaveOnSP has taken over the last thirteen months to "investigate ways to expedite the export" of responsive call recordings and transcripts, including any strategies it has identified to do so. Mar. 29, 2023 Ltr. from A. Dunlap to H. Sandick at 4. We appreciate that there can be burdens associated with producing call records on both sides and would like to work with you to find a mutually acceptable solution.

To facilitate our discussion, please also let us know if SaveOnSP's burden concerns would be alleviated if its production were limited to the following two categories. *First*, all call recordings and transcripts associated with calls to TrialCard with or without a patient on the line regarding a Janssen drug. For the avoidance of doubt, this includes, but is not limited to, recordings and transcripts of all calls designated as "manufacturer calls" within Column P of the attached "JJHCS Requested Recordings" spreadsheet. *Second*, to the extent these recordings and transcripts are not captured by the prior request, all recordings and transcripts associated with the calls identified in the attached spreadsheet.

---

Hannah Miles, Esq.
May 7, 2024
Page 2


We look forward to hearing from you and discussing these matters further.

Very truly yours,


*/s/ Elisabeth Shane*
Elisabeth Shane

15064980

# Exhibit 34



March 22, 2024

Sara A. Arrow
(212) 336-2031

**By Email**

Hannah Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:    **December 1, 2023 Subpoena to TrialCard**
> *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
> **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Hannah:

On behalf of TrialCard, we write in response to SaveOnSP's March 8, 2024 letter regarding the subpoena dated December 1, 2023 (the "Second Subpoena").

### I.    Time Period

SaveOnSP asserts that TrialCard has provided "no reasoned basis" to justify a July 1, 2022 cutoff date. Not so: we have explained our position on this issue repeatedly in written correspondence and during meet and confers. *See, e.g.*, Mar. 1, 2024 Ltr. from S. Arrow to H. Miles; Jan. 12, 2024 Ltr. from S. Arrow to H. Miles; *see also* Dec. 22, 2023 Ltr. from S. Arrow to H. Miles. Specifically, as it relates to the February 17, 2023 subpoena (the "First Subpoena"), SaveOnSP **agreed** to July 1, 2022 as the cut-off date. *See* May 31, 2023 Ltr. from E. Holland to G. Carotenuto at 1 (referring to April 1, 2016 to July 1, 2022 as the "Relevant Time Period"); July 26, 2023 Ltr. from E. Holland to K. Brisson at 7 n.1 (proposing search terms for the "Relevant Time Period" defined as April 1, 2016 to July 1, 2022).

Belatedly disappointed with the agreement it struck, SaveOnSP then sought to circumvent this agreed-upon time period by propounding the Second Subpoena—containing several requests that overlapped with those in the First Subpoena and imposing a new "refresh" time period to partially match the "refresh" time period to which the parties are bound. But as SaveOnSP acknowledges, TrialCard, as a third party, is not bound by Judge Waldor's November 7, 2023 Order extending party discovery. *See* Jan. 11, 2024 Email from H. Miles to S. Arrow. Nor has SaveOnSP explained why TrialCard, as a third party, should be subject to such expansive discovery far beyond the initial agreed-upon cut-off date. SaveOnSP has already refused to say whether its own co-conspirators and business partners—Express Scripts, Inc. and Accredo Health

Hannah Miles, Esq.
March 22, 2024
Page 2

Group—should be required to update its third-party productions through November 7, 2023.  *See id.*  And perhaps most egregious, SaveOnSP has provided no basis whatsoever for why TrialCard must produce documents even ***beyond*** the cutoff date for party discovery (November 7, 2023), as SaveOnSP now insists.

Despite these objections, TrialCard has nevertheless agreed to produce multiple categories of documents through November 7, 2023 in the interest of compromise.  *See, e.g.*, Mar. 1, 2024 Ltr. from S. Arrow to H. Miles at 1–2.  For example, TrialCard has agreed to produce the results of thousands of benefits investigations to comply with the First and Second Subpoenas. *See* Mar. 12, 2024 Ltr. from S. Arrow to H. Miles at 1 n.1; Oct. 20, 2023 Ltr. from S. Arrow to E. Holland at 1.  Further, as discussed in greater detail below, TrialCard has agreed to refresh its production of CarePath enrollment data[1] and case and task notes for Stelara and Tremfya patients through November 7, 2023.  These productions, which are voluminous, represent a good-faith effort to comply with SaveOnSP's subpoenas in a manner proportional to its role as a third party.

Finally, if there are specific, targeted categories of documents that you seek through November 7, 2023, please so advise so that we can evaluate that request.  If you present a reasonable proposal, we are certainly willing to consider it—but we cannot agree to a wholesale expansion of the discovery cutoff without any justification or reasonable limitation.

## II.    TrialCard's Ability to Identify Patients

**Request Nos. 1 and 2** seek documents sufficient to show the identities of all drug makers for which TrialCard performed investigations, including benefits investigations, that identify or attempt to identify if a patient is on a health plan affiliated with a copay maximizer, accumulator, or SaveOnSP.  As we have explained, any actions that TrialCard may or may not have taken for clients other than JJHCS are irrelevant.  SaveOnSP has not explained how TrialCard's work performed for its non-JJHCS clients has any relevance whatsoever to JJHCS or CarePath.  Please so do and we will consider your position.

**Request No. 3** seeks documents sufficient to show the methods by which TrialCard identifies or attempts to identify whether patients are members of health plans affiliated with copay accumulators, maximizers, or SaveOnSP.  Despite TrialCard's production of the results of thousands of benefits investigations performed for patients taking Stelara or Tremfya, *see* TRIALCARD_00008931, SaveOnSP insists that TrialCard has not satisfied Request No. 3.  We disagree. ███████████████████████████████████████

---

[1] Specifically, TrialCard agrees to refresh its prior production of CarePath enrollment data for the time period July 1, 2022 through November 7, 2023.  *See* TRIALCARD_00000001; TRIALCARD_00000004;  TRIALCARD_00000005;  TRIALCARD_00000006; TRIALCARD_00000007; TRIALCARD_00000008; and TRIALCARD_00000009.

Hannah Miles, Esq.
March 22, 2024
Page 3

███████████████████████████████████████████  TrialCard's production of the
results of those benefits investigation therefore satisfies this request.

SaveOnSP nevertheless asserts that it is entitled to documents concerning some
"methods" that TrialCard hypothetically employed to identify SaveOnSP-affiliated patients
because SaveOnSP has asserted a "failure to mitigate defense."[2]  This argument rests on several
unsubstantiated assumptions, including that (1) TrialCard developed other "methods" of
identifying SaveOnSP patients; (2) such methods would be applicable to JJHCS and the CarePath
program; (3) it disclosed those methods to JJHCS; and (4) having learned of those methods, JJHCS
declined to implement them.  Each of these assumptions rests on pure speculation.  TrialCard,
therefore, declines to go on a fishing expedition to satisfy SaveOnSP's curiosity into its business
entirely unrelated to JJHCS or CarePath.

**Request No. 4** seeks documents and communications "between TrialCard and
JJHCS" regarding the identification or attempted identification of patients who are members of
plans affiliated with copay accumulators, maximizers, or SaveOnSP.  As we explained during the
March 7 meet and confer, such documents—which necessarily would have been provided to
JJHCS—can be obtained through party discovery.

SaveOnSP nevertheless insisted during the March 7 meet and confer that this
request encompasses internal documents that "reflect" communications between TrialCard and
JJHCS, including notes that TrialCard personnel may have taken during a phone call or meeting.
As we discussed during the meet and confer, however, the plain language of this Request is not so
expansive:  it seeks only Communications—i.e., "the transmittal of information"—***between*** JJHCS
and TrialCard.  It does not request purely internal documents reflecting the contents of those
transmittals.  *See* Second Subpoena at 4.

### III.    TrialCard's Responses to Identifying Patients

**Request No. 6** seeks documents sufficient to show the methods by which TrialCard
responded to benefits investigations that revealed or suggested that a patient was a member of a
health plan that was affiliated with a copay accumulator, maximizer, or SaveOnSP.  As we have
explained in previous correspondence and during the March 7 meet and confer, TrialCard has
produced multiple letter templates that it sent to SaveOnSP-patients in connection with the benefits
investigation process.    TrialCard    also    produced    a    catalogue    of    these    letters.    *See*
TRIALCARD_0008931 ("Tasks").  Based on our reasonable investigation to date, we are unaware

---

[2] We note that the caselaw you cite in support of this argument appears inapposite.  *See Prusky v. Reliastar
Life Ins.*, 532 F.3d 252, 258–59 (3d Cir. 2008) (discussing the failure to mitigate defense in the context of
a breach of contract claim asserted under Pennsylvania law); *Grubbs v. Knoll*, 376 N.J. Super. 420, 437
(N.J. App. 2005) (discussing whether a jury instruction on the failure to mitigate defense is appropriate).
Neither case stands for the broad proposition that a third party is obligated to produce any document that
may have some hypothetical bearing on whether the plaintiff could have mitigated its damages.

Hannah Miles, Esq.
March 22, 2024
Page 4

of any other systematic "method" that TrialCard undertook to respond to the results of benefits investigations identifying patients as SaveOnSP-affiliated; to the extent JJHCS undertook such methods, JJHCS is the proper source for such discovery. We trust that this resolves any dispute with respect to Request No. 6.

**Request No. 8** seeks documents and communications regarding the creation or attempted creation of a response or "solution" to copay maximizers, accumulators, or SaveOnSP. The search term that you have proposed is untethered to the claims at issue in this litigation: it seeks documents related to any maximizer or accumulator irrespective of whether such documents concern SaveOnSP. In the event you wish to pursue this request, please provide an appropriately narrowed term that addresses the relevant issues in this litigation.

## IV. Communications with Stelara and Tremfya Patients

**Request No. 5** seeks "[a]ll Communications with patients receiving Stelara and Tremfya, including without limitation recordings of calls." You have represented that if TrialCard "refresh[es] the call and task notes, subject to the same procedures in the May 12, 2023 letter, and agree that SaveOn reserves it rights to request call recordings and transcripts in the future, that would" resolve any dispute with respect to Request No. 5.

TrialCard agrees to refresh its production of case and task notes through November 7, 2023 using the same collection methodology we used during the initial collection of case and task notes, which involved filtering the records for the Janssen Drugs at issue in this litigation and further searching them for responsive material using the search terms listed the May 12, 2023 letter. *See* May 12, 2023 Ltr. from G. Carotenuto to A. Dunlap at 2. Additionally, as we did with the initial production of case and task notes, we invite SaveOnSP to use these records to identify a reasonable number of calls for which you would like TrialCard to attempt to locate and produce the associated audio recording and/or transcript, where available. *See id.*

## V. Communications Between TrialCard and SaveOnSP

**Request No. 7** seeks all communications between TrialCard and SaveOnSP. As we have explained, SaveOnSP can search its own records for communications responsive to this request, including call recordings. *See* TrialCard's Responses and Objections to RFP No. 5 ("TrialCard further objects to the extent this Request seeks the production of documents and communications that are available from parties to the Action, in particular from SaveOnSP."); *see also* Mar. 1, 2024 Ltr. from S. Arrow to H. Miles at 4.

In your March 8 letter, you clarified why you believe SaveOnSP would not possess the documents it seeks with this request. Specifically, you confirmed that certain "outbound calls

Hannah Miles, Esq.
March 22, 2024
Page 5

may not have been recorded by SaveOn."[3]  Please explain, in as much detail as possible, which types of calls are recorded and which are not.  This will allow TrialCard to evaluate whether there are certain recordings that only TrialCard maintains that are not in SaveOnSP's possession.  To the extent you seek production of such recordings, please also provide identifying information that would allow TrialCard to identify the relevant calls—specifically, all names and phone numbers used by SaveOnSP employees to communicate with TrialCard.  Absent such information, TrialCard lacks identifying information to isolate responsive recordings without undertaking the enormous burden of assessing every incoming call that it received.

You also ask a series of questions regarding the 16 call recordings that TrialCard produced on January 12, 2024.  We confirm that, at JJHCS's request, TrialCard agreed to produce these 16 call recordings.  Please direct any further questions regarding these call recordings to JJHCS.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

---

[3] Based on our meet and confer and SaveOnSP's March 8 letter, we understand that SaveOnSP has narrowed Request No. 7 to seek only this subset of call recordings—i.e., those that SaveOnSP did not record and thus does not have in its possession.  Please promptly clarify if this understanding is incorrect.

# Exhibit 35



February 1, 2024

Sara A. Arrow
(212) 336-2031

**By Email**

Elizabeth Snow, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:    **January 12, 2024 Meet and Confer**
> *Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC*
> **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Elizabeth:

We write in response to your January 30, 2024 letter concerning the January 12, 2024 meet and confer between SaveOnSP and TrialCard.

Your assertion that JJHCS has violated the Discovery Confidentiality Order ("DCO") is baseless. JJHCS has not provided Ayesha Zulqarnain's deposition transcript to TrialCard, nor has it summarized its contents to TrialCard or otherwise provided to TrialCard any other materials designated by SaveOnSP as Confidential or Attorney's Eyes Only ("AEO") under the DCO. As we have previously explained, your resort to unfounded accusations is disappointing and not collegial. *See* Aug. 16, 2023 Email from G. LoBiondo to E. Snow.

Your letter also misrepresents the discussion that we had during the January 12 meet and confer. Specifically, Request No. 7 requested all communications between TrialCard and SaveOnSP, including recordings of calls. While discussing TrialCard's burden objections to producing documents in response to that request, we, in our capacity as counsel to TrialCard, noted that TrialCard could not identify recordings of such calls without the benefit of identifying information, including the names and phone numbers SaveOnSP has used to communicate with TrialCard. We invited SaveOnSP to provide this information to TrialCard to assist it in its efforts to locate responsive documents. We further mentioned in passing that, in our capacity as counsel for JJHCS, we were aware that SaveOnSP routinely employs deceptive tactics— including using fake names, fake affiliations, and phone numbers unassociated with SaveOnSP—to obscure their agents' affiliation with SaveOnSP to TrialCard call center agents. We observed that such deception contributes to the burden TrialCard faces in producing the calls sought by Request No. 7. At no point did we suggest or imply that TrialCard was in possession of Ms. Zulqarnain's deposition testimony; quite to the contrary, we recognized during the meet and confer, as we have throughout this litigation, that JJHCS and TrialCard are separate entities.

Elizabeth Snow, Esq.
February 1, 2024
Page 2


Finally, in light of the issues raised in the January 30 letter, we note that SaveOnSP has itself repeatedly attempted to blur the lines between JJHCS and TrialCard.  For example, SaveOnSP has cited JJHCS materials designated as AEO in letters to TrialCard (including even after we advised you that such an approach raised confidentiality concerns)[1] and by attempting to link issues involving TrialCard to unrelated issues involving JJHCS, *see* Jan. 19, 2024 Ltr. from H. Sandick to E. Snow.  We again caution you against this approach and ask you to observe the boundaries between JJHCS and TrialCard.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

---

[1] For example, your December 8, 2023 letter to TrialCard quoted from documents that JJHCS had designated as AEO, without recognition of that designation or of TrialCard's status as a third party.  Instead of jumping to conclusions—as SaveOnSP does in the January 30 letter—we recognized that this may have been an oversight and asked you to act in accordance with the DCO going forward.  *See* Dec. 22, 2023 Ltr. from S. Arrow to H. Miles at 1 n.1.  In two subsequent letters to TrialCard, SaveOnSP proceeded to ignore the concern we had raised in the December 22 letter.  *See* Jan. 5, 2024 Ltr. from H. Miles to K. Brisson (quoting JJHCS's AEO-designated documents to TrialCard without noting the confidentiality designation); Jan. 30, 2024 Ltr. from H. Miles to S. Arrow (same).

# Exhibit 36



www.pbwt.com

February 16, 2024                                                    Harry Sandick
                                                                    (212) 336-2723

**By Email**

Elizabeth Snow, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

                    Re:     **Disclosure of Documents to ESI**
                            ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,***
                            ***Case No. 2:22-cv-02632-JKS-CLW***

Dear Elizabeth:

On behalf of TrialCard, we write in response to your February 5, 2024 letter regarding SaveOnSP's request to share TRIALCARD_00008931 with ESI's and Accredo's counsel.

We do not consent to your request for disclosure.  TRIALCARD_00008931 contains, ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████  Unlike the twelve JJHCS documents that you identify in your letter, TRIALCARD_00008931 contains highly sensitive patient-identifying information that is not necessary or appropriate to disclose simply "to help ESI identify discovery."  *See* Feb. 5, 2024 Letter from E. Snow to H. Sandick at 1.  By contrast, the twelve documents that JJHCS produced to ESI were anonymized and did not contain such information.  TRIALCARD_00008931 also contains ██████████ █████  As a result, we disagree with your assertion that TRIALCARD_00008931 is comparable to the twelve documents JJHCS previously disclosed to ESI or that the same result is compelled here.

For similar reasons, we do not understand your suggestion that showing TRIALCARD_00008931 to ESI's and Accredo's counsel is necessary to enable them to identify and gather relevant documents in response to SaveOnSP's subpoenas.  It strains credulity that counsel for ESI and Accredo would need ***internal*** TrialCard documents to identify its own clients' relevant ***external*** communications.  We are confident that counsel can conduct a reasonable investigation into the contents of its own clients' files in order to comply with their subpoena obligations to SaveOnSP.

Finally, we once again reject your attempt to link JJHCS's request with SaveOnSP's request to disclose a document produced by non-party TrialCard—a separate entity

Elizabeth Snow, Esq.
February 16, 2024
Page 2


from JJHCS, a party to this litigation.  *See* Jan. 19, 2024 Ltr. from H. Sandick to E. Snow.  That
JJHCS and TrialCard share the same counsel or that JJHCS has requested that its vendor,
TrialCard, produce certain documents solely in TrialCard's possession have no bearing whatsoever
on whether disclosure of SOSP_0054924 and SOSP_0399869 to ESI is warranted.  On behalf of
JJHCS, we appreciate that you are "glad" to share SOSP_0054924 and SOSP_0399869 with ESI
for the purposes of "pursuing discovery."  However, we ask that you do so without condition.  If
you intend to maintain your refusal to consent to JJHCS's disclosure of SOSP_0054924 and
SOSP_0399869 to ESI, please provide, by February 23, 2024, a reasoned justification for your
position.  In the event you fail to do so, we will consider the parties at impasse on this issue.

Very truly yours,


*/s/ Harry Sandick*
Harry Sandick

14921947

# Exhibit 37

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

selendy
gay
elsberg

Emma Holland
Associate
212 390 9364
eholland@selendygay.com

May 31, 2023

**Via E-mail**

George Carotenuto
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
gcarotenuto@pbwt.com

**Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,***
   ***LLC*** **(Case No. 2:22-cv-02632-ES-CLW)**

Dear George,

   We write in response to your May 12, 2023 letter regarding the subpoena issued to TrialCard, Inc. ("TrialCard") in the above-captioned matter and Trial-Card's April 24, 2023 document production.[1]

## I.   Requests for which TrialCard Agreed to Produce Documents

### A.   Request No. 1

   In our April 28, 2023 letter we asked for confirmation that TrialCard would produce all documents responsive to RFP No. 1. Apr. 28, 2023 Ltr. at 2. You replied that TrialCard will produce documents responsive to this request from April 1, 2016 through July 1, 2022 (the "Relevant Time Period"). May 12, 2023 Ltr. at 1. We understand that TrialCard will not withhold responsive documents from this production on any basis other than privilege. Please notify us if this is incorrect.

---

[1] We write to you in your capacity as attorneys for both TrialCard and JJHCS. We briefly described documents in JJHCS's production, though they are protected by the Discovery Confidentiality Order ("DCO") in the above-captioned matter, Dkt. 62, because, as JJHCS's counsel, you have reviewed and produced such documents.

George Carotenuto
May 31, 2023

## B.    Request No. 3

RFP No. 3 seeks all documents and communications with or regarding Save On SP, LLC ("SaveOnSP"), including those between You and Johnson & Johnson Health Care Systems Inc. ("JJHCS"), You and any patients, and You and any other Hub Entity. In your May 12 letter, you explain TrialCard's search methodology for some records responsive to RFP No. 3—calls between TrialCard and patients. *See* May 12 Ltr. at 2. You state that, as a first step, TrialCard has filtered case and task notes created by TrialCard call agents for patients taking "the Janssen Drugs at issue in this litigation," representing calls with those patients. *Id.* We understand that "the Janssen Drugs at issue in this litigation" includes Balversa, Darzelex, Darzelex Faspro, Erleada, Imbruvica, Opsumit, Prezcobix, Remicade, Rybrevant, Simponi, Stelara, Symtuza, Tracleer, Tremfya, Uptravi, Valchlor, Ventavis, and Zytiga. Please let us know if this is incorrect. Please also explain TrialCard's filtering process—including any search terms used—and confirm that your searches will include case and task notes related to patients who take both a Janssen drug at issue in the litigation and also another drug.

As a second step, you proposed searching the call agents' case and task notes, filtered for the relevant Janssen drugs with the following terms:

- maximiz*
- designat*
- ESI
- Obamacare
- ACA
- Save*
- accumulat*
- Accredo
- Express Script*
- EHB
- Affordable Care Act
- essential

We agree that TrialCard should use these search terms to identify responsive communications with patients. We propose that TrialCard add the terms "out-of-pocket" and, its abbreviation "OOP," which are mentioned frequently in sample patient letters regarding SaveOnSP. *See, e.g.*, TRIALCARD_00000113, TRIAL-CARD_00000119, TRIALCARD_00000121. For example, ████████████████

2

George Carotenuto
May 31, 2023

██████████████████████████.” *See* TRIALCARD_00000119 at -119 (Stelara); *see also* TRIALCARD_00000121 at -121 (Tremfya). Other letters ████████████████████████████████████████████████████. *See, e.g.*, TRIALCARD_00000115, TRIALCARD_00000117. Although SaveOnSP does not concede it is an accumulator or a maximizer, TrialCard and JJHCS refer to SaveOnSP as such. After receiving these letters, members of SaveOn-advised health plans may have called TrialCard call agents with questions about out-of-pocket costs or an out-of-pocket requirement, without naming SaveOnSP, Express Scripts or Accredo specifically.

In your April 7, 2023 letter, you wrote that other materials responsive to RFP No. 3 "should be pursued through party discovery." Apr. 7, 2023 Ltr. at 3. Additional documents responsive to RFP No. 3 include any other patient communications regarding SaveOnSP, communications between TrialCard and JJHCS and TrialCard and any other Hub Entity regarding SaveOnSP, and communications between TrialCard and SaveOnSP. Please tell us whether TrialCard has investigated whether it possesses documents responsive to RFP No. 3 beyond the above-described patient calls and the results of that investigation.

## II.  TrialCard's Investigation Regarding Other RFPs

During our April 26, 2023 meet and confer, you agreed to investigate whether TrialCard has any documents responsive to RFP Nos. 5-17, 20-22, 24-27, 29, and 32 that are not also in JJHCS's possession.

In your May 12, 2023 letter, you state that you do not believe TrialCard has any documents responsive to RFP Nos. 8, 10-17, 20, 22, 24-25, 27, and 32 that are not also in the possession of JJHCS other than those documents that TrialCard has already agreed to produce. We understand this to be a representation that TrialCard does not have any documents responsive to the requests as written, and that TrialCard is not excluding documents from these representations on any basis including relevance and burden. Please tell us if this is incorrect. We also understand that if TrialCard becomes aware of documents in its possession responsive to these requests that JJHCS does not possess, it will promptly notify SaveOnSP. Please tell us if this is incorrect.

Regarding RFP Nos. 5, 6, & 21 you make a similar representation but with slightly different language. You state that "[you] do not believe that any documents responsive [to] these requests exist at TrialCard that are not also in the possession of JJHCS." May 12, 2023 Ltr. at 3. We understand this to be a representation that TrialCard does not have any documents responsive to these requests that JJHCS does not also have and that TrialCard is not excluding documents from this representation on any basis including relevance and burden. Please tell us if this is incorrect.

George Carotenuto
May 31, 2023

Regarding RFP Nos. 7, 9, & 29, you state that, though TrialCard has published white papers on accumulator and maximizer programs, "[you] do not believe that TrialCard has any documents responsive to these requests that relate to TrialCard's implementation of the CarePath program." *Id.* at 3. Those RFPs are not limited to documents that relate to TrialCard's implementation of CarePath. Please tell us if TrialCard has documents responsive to RFP Nos. 7, 9, & 29 without any qualification or limitation.

Regarding RFP Nos. 13-15, 17, 20, & 22, you state that "[b]ased on [your] investigation, to the extent that TrialCard participated in the analysis of these questions, it would have been done at the request of, or in consultation with, JJHCS" and conclude that you "do not believe that TrialCard has documents responsive to these requests that are not also in the possession of JJHCS." *Id.* at 4. Your conclusion does not follow from your premise. Vendors who conduct analyses for a client often maintain documents related to those analyses that they do not share with the client. JJHCS has produced documents showing ███████████ ███████████████████████████████████████████████████ JJHCS_00004621, JJHCS_00037297. These documents reflect ████████████████████████████████████████████████████████ ████████████████████████████████████ *See, e.g.*, JJHCS_00004621 at -622, JJHCS_00003059 at -065, -069-72, JJHCS_00000638. This strongly indicates that TrialCard has documents responsive to these RFPs that would not be in JJHCS's possession. Please let us know promptly if TrialCard maintains its representation that it has no documents responsive to RFP Nos. 13-15, 17, 20, & 22 that are not also in the possession of JJHCS. If so, please describe in detail the investigation that you conducted to reach that conclusion and also specifically confirm that TrialCard has no documents relating to the CAPa or CAPm strategies that are not also in the possession of JJHCS.

Regarding RFP No. 26, you state that "no analysis responsive to this request exists at TrialCard" because TrialCard does not affirmatively reach out to patients or track what percentage of patients ultimately enroll after being contacted by TrialCard. *Id.* at 4. RFP No. 26 is not limited to data following outreach by TrialCard to patients. It seeks data following any contact regarding CarePath with patients by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs. Please tell us promptly if TrialCard has documents responsive to RFP No. 26 without any qualification or limitation. Please also let us know if TrialCard has information about enrollment after *any* contact regarding CarePath with the above-mentioned entities.

## III.   Vague and Ambiguous Objections

In TrialCard's Responses and Objections ("TrialCard R&Os") you objected to portions of RFP Nos. 4, 8, 9, 15, 16, 18, 19, 21, 26, 27, 31 and 32 as vague and ambiguous. During the April 25, 2023 and April 26, 2023 meet and confers, you

4

George Carotenuto
May 31, 2023

agreed to tell us how TrialCard interprets any terms in those RFPs that it maintains are vague or ambiguous. You explained that you would not provide an explanation for any of these RFPs because TrialCard is currently refusing to produce documents responsive to these requests. May 12, 2023 Ltr. at 5. We understand that TrialCard is not withholding any documents on the basis of its vague and ambiguous objections. Please notify us if this is incorrect.

## IV.    TrialCard's April 24, 2023 Production

TrialCard stated that it will produce documents responsive to RFP Nos. 1-3, 18(i)-(m), and 30 from the Relevant Time Period. *See* May 12, 2023 Ltr. at 1, 3; Apr. 7, 2023 Ltr. at 3. TrialCard has made one production of documents on April 24, 2023. We have several questions regarding that production.

RFP No. 1 and 2 seek documents sufficient to show the organizational structure of TrialCard and the organizational structure of any group or division within TrialCard involved in developing, managing, marketing, or administering Care-Path and to identify their employees, respectively. So far, TrialCard has produced only one organizational chart, dated October 20, 2022, which does not indicate which groups and individuals are involved in developing, managing, marketing, or administering CarePath. *See* TRIALCARD_00000002. Please produce responsive organizational charts from the entire Relevant Time Period or otherwise identify the groups and individuals that were involved in CarePath during that time.

RFP No. 3 seeks all documents and communications with or regarding Save-OnSP, including those between You and JJHCS, You and any patients, and You and any other Hub Entity. TrialCard has produced several CarePath form letters to patients regarding SaveOn, *see, e.g.*, TRIALCARD_00000113, TRIAL-CARD_00000119, TRIALCARD_00000121, and has stated its intention to produce call logs but has not yet done so, *see* May 12 Ltr. at 2. Please tell us whether TrialCard has completed its production of patient letters responsive to RFP No. 3.[2]

RFP No. 18(i)-(m) seeks documents sufficient to show (i) all Patients enrolled in the CarePath program for the Janssen Drug; (j) the dates on which each Patient was enrolled in CarePath; (k) the amounts of copay assistance funds that JJHCS offered to each Patient enrolled in CarePath; (l) the Janssen Drugs for which each Patient enrolled in CarePath received; and (m) all copay assistance payments that JJHCS made to or on behalf each Patient enrolled in CarePath. Trial-Card has produced several spreadsheets with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* TRIALCARD_00000001, TRIALCARD_00000139,    TRIALCARD_00000140,    TRIALCARD_00000141, TRIALCARD_00000142,    TRIALCARD_00000143,    TRIALCARD_00000162, TRIALCARD_00000165. Please tell us whether TrialCard has completed its production of documents responsive to RFP No. 18(i)-(m), and if so, whether these spreadsheets represent the information sought in RFP No. 18(i)-(m) for all patients

---

[2] *See* further discussion of RFP No. 3 *supra* 2-3.

George Carotenuto
May 31, 2023

enrolled in CarePath for all Janssen drugs at issue in this litigation during the Relevant Time Period.

RFP No. 30 seeks TrialCard's document retention policies. TrialCard produced one retention policy from 2023. *See* TRIALCARD_00000125. Please produce all retention policies in place during the Relevant Time Period.

Each of the documents TrialCard produced name "Trial Card" as its custodian. For each produced document, please identify the individual custodian or the specific noncustodial source.

*        *        *

We request that TrialCard respond by June 7, 2023. We reserve all rights and are available to meet and confer.

Best,

/s/ Emma Holland

Emma C. Holland
Associate

# Exhibit 38

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Elizabeth H. Snow
Associate
212.390.9330
esnow@selendygay.com

February 16, 2024

**Via E-mail**

Sara A. Arrow
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

Re:    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC*** **(Case No. 2:22-cv-02632-JKS-CLW)**

Dear Sara,

We write in response to your February 1, 2024 letter concerning the January 12, 2024 meet-and-confer between SaveOn and TrialCard.

Even in your retelling of the meet-and-confer, you admit that you violated the DCO. You acknowledge that, while acting as counsel for TrialCard, you "mentioned in passing that, in our capacity as counsel for JJHCS, we were aware that SaveOnSP routinely employs deceptive tactics—including using fake names, fake affiliations, and phone numbers unassociated with SaveOnSP—to obscure their agents' affiliations." Feb. 1, 2024 Ltr. from S. Arrow to E. Snow, at 1. You do not dispute that you cited Ayesha Zulqarnain's deposition, which SaveOn had designated as at least Confidential, on behalf of TrialCard to support this assertion.[1] Even though you deny that you shared Zulqarnain's deposition testimony with TrialCard, this conduct unambiguously violated the DCO, which prohibits you from ***using*** Confidential information that you acquired through your representation of J&J for any purpose other than its prosecution of this action, including on behalf of a third party resisting a subpoena. ECF No. 62 ("DCO"), ¶ 4. Your attempt to minimize the violation by stating you mentioned the testimony "in passing" does

---

[1] To be clear, your characterization of Zulqarnain's testimony is inaccurate: she testified only about her own conduct in calls that had nothing to do with the claims at issue in this case.

Sara A. Arrow
February 16, 2024

not work—you cited the testimony to justify TrialCard's refusal to produce documents responsive to SaveOn's subpoena.

You point to the fact that SaveOn has "cited JJHCS materials designated as AEO in letters to TrialCard." *Id.* In our first such letter, we specifically stated we did so based on the understanding that you, as counsel to both entities, had access to the documents, May 31, 2023 Ltr. from E. Holland to G. Carotenuto, at 1 n.1, and in the nine months since you did not object. Our citation of J&J's information to attorneys who had already seen it does not excuse your use of SaveOn's information on behalf of a purportedly separate client who had not seen it.

Your characterization of the parties' correspondence of December 8 and 22, 2023 is inaccurate. On December 8, 2023, we sent you, as counsel for TrialCard, a letter that was inadvertently marked "Confidential" when it referred to materials from TrialCard and JJHCS marked "Attorneys Eyes Only." You stated that you assumed that this Confidentiality designation "was an oversight, and that SaveOnSP will treat the AEO potions of the letter as such." This exchange has nothing to do with your statements during the January 12, 2024 meet-and-confer.

Finally, we requested in our January 30, 2024 letter that you tell us what steps you will take to ensure that similar violations of the DCO do not occur in the future. You have not responded to this request. Given your violation of the DCO and your failure to provide any assurance against future violations, we ask that Patterson agree to fully wall off its attorneys representing J&J in this matter from those representing TrialCard on this matter, and ensure that those Patterson attorneys representing TrialCard have no access to Confidential information produced by SaveOn to J&J.

Please respond by February 23, 2024.

Sincerely,

Elizabeth Snow

Elizabeth H. Snow
Associate

# EXHIBIT 39
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 40A

File No. 2375257

EXHIBIT

AZ43

1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

2

3  Johnson & Johnson
   Health Care Systems,
   Inc.,

4                                  Case No. 2:22-cv-02632
             Plaintiff,    (ES) (CLW)

5        v.

6  Save On SP, LLC,

7

8                  Defendant.

9

                  AUDIO TRANSCRIPTION

10                 FILE NO. 2375257

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  TRANSCRIBED BY:  AMANDA GORRONO, CLR
    CLR NO. 052005-01

File No. 2375257

 1          AUTOMATED MESSAGE:  Incoming
 2    call.
 3          SPEAKER 1:  Good morning.  Thank
 4    you for contacting Janssen CarePath.
 5    My name is Shamaya (phonetic).  How
 6    may I help you?
 7          SPEAKER 2:  Hi, good morning.
 8    My name is Zara (phonetic).  I'm a
 9    pharmacist at Express Scripts.  I have
10    a quick question regarding STELARA®'s
11    co-pay program.
12          SPEAKER 1:  No problem, Zara.
13    What questions do you have?
14          SPEAKER 2:  I just wanted to
15    know, we do enroll patients online on
16    your website, and once they enroll, we
17    can just start processing the claim,
18    right?  They will have $20,000 to
19    utilize?
20          SPEAKER 1:  It depends.  What is
21    the pharmacy you're calling from?
22          SPEAKER 2:  Express Scripts.
23          SPEAKER 1:  What's the address
24    for that location?
25          SPEAKER 2:  Give me one second.

File No. 2375257

1    Wait, you want the corporate address

2    or the --

3            SPEAKER 1:  Wherever you guys

4    are enrolling patients from because

5    you guys should have a Business

6    Associate Agreement on file, in order

7    to be authorized to enroll patients.

8            Other than that, the patient

9    should either be calling themselves or

10   be present on the line or going online

11   to the patient portal and enrolling

12   themselves.

13           But the benefits are $20,000

14   with a $5 co-pay.

15           SPEAKER 2:  Okay.  Got it.  I

16   don't think we have that.  I think we

17   would have to invite the patient to

18   get enrolled.

19           Once they are enrolled,

20   they're -- you said $20,000 and then

21   the co-pay will be $5, correct?

22           SPEAKER 1:  Yes, ma'am.  And

23   that will cover the --

24           SPEAKER 2:  Perfect.

25           SPEAKER 1:  -- coinsurance or

File No. 2375257

1    deductible, whichever is applicable.

2         SPEAKER 2:  Okay.  And do we

3    need to have them get enrolled every

4    year or will it automatically restart

5    each year?

6         SPEAKER 1:  It should be an auto

7    enrollment, unless otherwise specified

8    by mail.  The qualifications is that

9    the patient has to be covered under a

10   commercial private health insurance

11   plan that is covering the drug.

12        SPEAKER 2:  Got it.  So if a

13   patient does have commercial insurance

14   that is covering the drug, now they

15   have Medicare and be a secondary that

16   goes towards a hospital and doctors'

17   visits, we can still advise them to

18   got enrolled, correct?

19        SPEAKER 1:  If they're covered

20   under Medicare and that -- and that

21   plan that they have is a supplemental

22   or an Advantage plan, no.

23        SPEAKER 2:  Okay.  Medicare,

24   even if secondary supplemental or

25   Advantage.  But if it's like a regular

1  that's not paying for the drug, then

2  they are okay?

3      SPEAKER 1:  Right.  Like, if the

4  patient -- let's just say the patient

5  is Medicare eligible and they have

6  Part A and B but they still have --

7  they may be covered under a spouse's

8  employment benefit or they may still

9  have retirement benefits from their

10  job, which allow them to stay on that

11  commercial plan --

12      SPEAKER 2:  Yeah.

13      SPEAKER 1:  -- then yes, they

14  would still be eligible.  But if they

15  have A and B and a supplemental plan,

16  or an Advantage plan, or just simply

17  Medicare A and B and nothing else

18  then -- or in the Medicare Part B

19  plan, then they're not going to be

20  eligible.

21      SPEAKER 2:  Yes.

22      SPEAKER 1:  Or Medicaid or any

23  type of government-funded health

24  insurance.

25      SPEAKER 2:  Perfect.  And can we

File No. 2375257

1    be on the phone with the patient, when

2    they enroll or do you want to only

3    speak with the patient?

4         SPEAKER 1:  Yes, ma'am.

5         SPEAKER 2:  Oh, we can be, okay,

6    perfect.  Thank you so much.  I really

7    appreciate your help.

8         SPEAKER 1:  You're very welcome,

9    Zara.  Was there anything else I can

10   look into or answer for you?

11        SPEAKER 2:  No, you've been

12   great.  Thank you.

13        SPEAKER 1:  You're very welcome.

14   If you need anything else, we are here

15   8:00 a.m. to 8:00 p.m. Eastern

16   Standard Time, Monday through Friday.

17        Would you mind remaining on the

18   line to participate in a brief

19   three-question satisfactory survey to

20   grade your experience with me today?

21        SPEAKER 2:  Sure.

22        SPEAKER 1:  Thank you so much.

23   Have a good rest of your day and

24   weekend.

25        (End of audio file 2375257.)

File No. 2375257

1          CERTIFICATE OF SHORTHAND REPORTER
2                   NOTARY PUBLIC
3              I, Amanda Gorrono, the officer
4       before whom the foregoing audio
5       recordings were transcribed, do hereby
6       certify that the foregoing transcript
7       is a true and correct record of the
8       testimony given; that said testimony
9       was taken by me stenographically and
10      thereafter reduced to typewriting
11      under my direction; and that I am
12      neither counsel for, related to, nor
13      employed by any of the parties to this
14      case and have no interest, financial
15      or otherwise, in its outcome.
16             IN WITNESS WHEREOF, I have
17      hereunto set my hand this 17th day of
18      July, 2023.
19
20
21      _____
22      AMANDA GORRONO, CLR
        CLR NO:  052005 - 01
23      Notary Public in and for
        The State of New York
24      County of Suffolk
        My Commission No.  01G06041701
25      Expires:  01/07/2027

# Exhibit 41A

File No. 2395866

EXHIBIT
AZ 46

1
2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

3   Johnson & Johnson
    Health Care Systems,
    Inc.,

4                          Case No. 2:22-cv-02632
5         Plaintiff,       (ES) (CLW)
          v.

6   Save On SP, LLC,

7
8                     Defendant.

9

10              AUDIO TRANSCRIPTION

11              FILE NO. 2395866

12
13
14
15
16
17
18
19
20
21
22
23
24

25    TRANSCRIBED BY:  AMANDA GORRONO, CLR
      CLR NO. 052005-01

File No. 2395866

```
1          AUTOMATED MESSAGE:  Incoming
2    call.
3          SPEAKER 1:  Good morning.  Thank
4    you for calling Janssen CarePath.  My
5    name is LaToya.  How can I help you
6    today?
7          SPEAKER 2:  Hi, LaToya.  My name
8    is Briana (phonetic) and I'm a PharmD
9    at Accredo Pharmacy.  I have a quick
10   question regarding TREMFYA®'s co-pay
11   assistance program for commercially
12   insured members.
13         SPEAKER 1:  Okay, Briana.  I'll
14   be happy to help.
15         SPEAKER 2:  Thank you.  I have a
16   patient here who was enrolled into the
17   TREMFYA® co-pay program.  And we have
18   a couple of claims that are not being
19   covered, and the patient is stating
20   they were advised by Janssen, it's
21   because they didn't activate their
22   co-pay card.  I don't know if that's a
23   thing because --
24         SPEAKER 1:  Okay.
25         SPEAKER 2:  -- usually we enroll
```

File No. 2395866

1    members or they enroll themselves

2    online, and we are able to process

3    claims right away.

4         SPEAKER 1:  Right, yeah.  So for

5    the TREMFYA®, once a patient is

6    enrolled, their card would be

7    automatically activated.  I can look

8    into the patient's account to see

9    what's going on --

10        SPEAKER 2:  Thank you.

11        SPEAKER 1:  -- with the claims.

12   No problem.

13        Briana, can you spell the

14   patient's first and last name, please.

15   ████████████████████████████████████

16   ████████████████████████████████████

17        SPEAKER 1:  Thank you.

18        Do you have a patient date of

19   birth and mailing address?

20   ████████████████████████████████████

21   ████████████████████████████████████

22        SPEAKER 1:  Okay.  Thank you.

23        SPEAKER 2:  You're welcome.

24        SPEAKER 1:  One moment, please.

25        (Pause in audio.)

File No. 2395866

1    SPEAKER 1:  Okay.  What is the

2    member ID number you're showing for

3    TREMFYA®?

4    ████████████████████

5    SPEAKER 1:  Okay.  One second.

6    Okay.

7    We don't have any information

8    associated with that number, but I do

9    have a different number for the

10   TREMFYA® ID.  Can I give that to you,

11   and perhaps that should work for you.

12   SPEAKER 2:  Yeah.  What's the ID

13   number that you have?

14   SPEAKER 1:  Okay.  So I have

15   ████████████

16   SPEAKER 2:  Okay.  ████████

17   SPEAKER 1:  Correct, yes.

18   SPEAKER 2:  Okay.  So that

19   47130047309, that's not their co-pay

20   card?

21   SPEAKER 1:  No, I'm not showing

22   anything with that number.

23   SPEAKER 2:  Okay.  And what

24   group do you have?

25   SPEAKER 1:  Group number is

Pixel Court Reporting, LLC

Page: 4

File No. 2395866

1    99992553.

2         SPEAKER 2:   Thank you.   And BIN?

3         SPEAKER 1:   BIN number should be

4    610020.

5         SPEAKER 2:   And when did the

6    patient enroll?

7         SPEAKER 1:   Let's see.

8    February 21st of this year.

9         SPEAKER 2:   Okay.   Let me see

10   here.   Okay.   And will you guys

11   backdate?

12        SPEAKER 1:   Yes, we have a

13   120-day lookback period.

14        SPEAKER 2:   Okay.

15        Perfect.   Thank you so much.   I

16   appreciate it.

17        SPEAKER 1:   Okay.   No problem.

18   Thank you for calling Janssen

19   CarePath.   Just letting you know,

20   we're open Monday through Friday 8:00

21   a.m. to 8:00 p.m. Eastern Standard

22   Time.

23        If you can, please remain on the

24   line to take a brief survey.   You have

25   a good day.   Take care.

File No. 2395866

```
 1              SPEAKER 2:  Sure.  Thank you.
 2              SPEAKER 1:  Thank you.  Bye-bye.
 3              (End of audio recording
 4         2395866.)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

File No. 2395866

```
 1          CERTIFICATE OF SHORTHAND REPORTER
 2                  NOTARY PUBLIC
 3             I, Amanda Gorrono, the officer
 4      before whom the foregoing audio
 5      recordings were transcribed, do hereby
 6      certify that the foregoing transcript
 7      is a true and correct record of the
 8      testimony given; that said testimony
 9      was taken by me stenographically and
10      thereafter reduced to typewriting
11      under my direction; and that I am
12      neither counsel for, related to, nor
13      employed by any of the parties to this
14      case and have no interest, financial
15      or otherwise, in its outcome.
16             IN WITNESS WHEREOF, I have
17      hereunto set my hand this 17th day of
18      July, 2023.
19
20      [signature: Amanda Gorrono]
21      _____
22      AMANDA GORRONO, CLR
        CLR NO:  052005 - 01
23      Notary Public in and for
        The State of New York
24      County of Suffolk
        My Commission No.  01G06041701
25      Expires:  01/07/2027
```

Pixel Court Reporting, LLC                                    Page: 7

# Exhibit 42A

File No. 5736714

EXHIBIT
A2 16

1

2
UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

3
Johnson & Johnson
Health Care Systems,
Inc.

4
                              Case No. 2:22-cv-02632
          Plaintiff,    (ES) (CLW)

5
     v.

6
Save On SP, LLC,

7

8
          Defendant.

9

10
          AUDIO TRANSCRIPTION

          FILE NO. 5736714

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
TRANSCRIBED BY:  AMANDA GORRONO, CLR
CLR NO. 052005-01

File No. 5736714

```
 1              AUTOMATED MESSAGE:  Incoming
 2    call.
 3              SPEAKER 1:  Good afternoon.
 4    Thank you for calling SYMTUZA® withMe.
 5    This is Tinazia (phonetic).  How can I
 6    help you?
 7              SPEAKER 2:  Good afternoon.  My
 8    name is Isha (phonetic), and I'm A
 9    Pharm.D. at Accredo.  I have a patient
10    who's enrolled in SYMTUZA® co-pay
11    card.  I just have to verify their
12    group number.
13              SPEAKER 1:  Okay.  What's the
14    patient's name?
15              SPEAKER 2:  The first name is
16    ███████████████████████████████████
17    ███████████████████████████████████
18              SPEAKER 1:  Hold on one moment.
19              SPEAKER 2:  Sure.
20    ████████████████████████████████████
21    ████████████████████████████████████
22    █████████████████████████████
23    █████████████████████████████
24              SPEAKER 1:  Hold on.  I'm so
25    sorry, one more time.  The words are
```

File No. 5736714

1    sounding --

2            SPEAKER 2:  Sure.

3            SPEAKER 1:  -- together.

4    ████████████████████████████████

5            SPEAKER 1:  Okay.  What is his

6    date of birth?

7    ███████████████████████

8            SPEAKER 1:  And his mailing

9    address?

10   ████████████████████████████████

11   ████████████████████████████████

12           SPEAKER 1:  All right.  Let me

13   get you over to the department who can

14   assist you.  One moment, okay?

15           SPEAKER 2:  Thank you.

16           SPEAKER 1:  You're welcome.

17           (Pause in audio.)

18           AUTOMATED MESSAGE:  Thank you

19   for calling.  Please note your call

20   may be monitored or recorded for

21   quality assurance and training

22   purposes.  Please hold for the next

23   available representative.

24           (Music playing.)

25           AUTOMATED MESSAGE:  We

File No. 5736714

```
 1        appreciate your patience.  A
 2        representative will be with you as
 3        quickly as possible.
 4            (Music playing.)
 5            AUTOMATED MESSAGE:  We
 6        appreciate your patience.  A
 7        representative will be with you as
 8        quickly as possible.
 9            (Music playing.)
10            AUTOMATED MESSAGE:  We
11        appreciate your patience.  A
12        representative will be with you as
13        quickly as possible.
14            (Music playing.)
15            AUTOMATED MESSAGE:  We
16        appreciate your patience.  A
17        representative will be with you as
18        quickly as possible.
19            (Music playing.)
20            AUTOMATED MESSAGE:  We --
21            SPEAKER 1:  All right.  Thank
22        you for holding.
23            So I'm just letting you know
24        that I am on hold waiting for someone
25        from that department.
```

File No. 5736714

1        SPEAKER 2:  Okay.

2        SPEAKER 1:  As soon as I get

3    someone, I'll get you transferred,

4    okay?

5        SPEAKER 2:  Just a quick

6    question for you:  Are you aware that

7    the TREMFYA® now has two different

8    group numbers or will they be the ones

9    answering that question?

10        SPEAKER 1:  Well, because of

11    how -- because of the department that

12    her account is in at this moment,

13    there is different processing

14    information than the regular co-pay

15    assistance.

16        SPEAKER 2:  Is it -- is it the

17    maximizer program she's in?

18        SPEAKER 1:  They're in the cap

19    program.

20        SPEAKER 2:  And I'm sorry?

21    Maximizer, right?  I'm sorry.  Cap,

22    you said?

23        SPEAKER 1:  Well, the cap -- the

24    cap and the maximizer is two different

25    ones.

File No. 5736714

1      SPEAKER 2:  Okay.  So how do we

2  get her enrolled in the regular

3  co-pay?

4      SPEAKER 1:  It always -- it

5  always -- it's -- it goes off of her

6  insurance so somehow, someway right

7  now because of her insurance, she's in

8  the cap program.

9      SPEAKER 2:  And a cap means like

10  she only gets limited funding?

11      SPEAKER 1:  Correct.

12      SPEAKER 2:  Okay, yeah.  If you

13  can connect with me with that

14  department, that would be awesome.

15      SPEAKER 1:  All right.  I'm just

16  on hold waiting for someone.  As soon

17  as I get someone, I'll get you

18  transferred.

19      SPEAKER 2:  Great.  Thank you.

20      (Music playing.)

21      AUTOMATED MESSAGE:  We

22  appreciate your patience.  A

23  representative will be with you as

24  quickly as possible.

25      (Music playing.)

File No. 5736714

```
1              (Ringing.)
2              SPEAKER 3:  Thank you for
3     calling the TREMFYA® cap program.
4              My name is Jenay (phonetic).
5     How may I help you.
6              SPEAKER 1:  Hey, Jenay.  This is
7     Tinazia.  I have a Isha from Accredo
8     calling to verify the processing
9     information, more specifically the
10    group number for a patient's account,
11    but they are in the cap program.
12             SPEAKER 3:  Okay.  I'll be happy
13    to assist, Tinazia.
14             Do you have the ID number for
15    the patient.
16             SPEAKER 1:  Yeah, it is
17    ███████████████████████
18             SPEAKER 3:  All right.  You can
19    get them transferred over and I'll be
20    happy to assist.
21             SPEAKER 1:  Thank you.
22             SPEAKER 3:  Thank you.
23             SPEAKER 1:  All right.  Isha, I
24    have Jenay on the line to further
25    assist.
```

File No. 5736714

```
 1              SPEAKER 2:  Okay.  Thank you.

 2              SPEAKER 1:  You're welcome.

 3              (End of audio file 5736714.)

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

File No. 5736714

```
 1        CERTIFICATE OF SHORTHAND REPORTER
 2              NOTARY PUBLIC
 3        I, Amanda Gorrono, the officer
 4    before whom the foregoing audio
 5    recordings were transcribed, do hereby
 6    certify that the foregoing transcript
 7    is a true and correct record of the
 8    testimony given; that said testimony
 9    was taken by me stenographically and
10    thereafter reduced to typewriting
11    under my direction; and that I am
12    neither counsel for, related to, nor
13    employed by any of the parties to this
14    case and have no interest, financial
15    or otherwise, in its outcome.
16        IN WITNESS WHEREOF, I have
17    hereunto set my hand this 17th day of
18    July, 2023.
19
20
21    _____
22    AMANDA GORRONO, CLR
      CLR NO:  052005 - 01
23    Notary Public in and for
      The State of New York
24    County of Suffolk
      My Commission No.  01G06041701
25    Expires:  01/07/2027
```

# EXHIBIT 43
# CONFIDENTIAL – FILED UNDER SEAL

# Robinson+Cole

E. Evans Wohlforth, Jr.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

May 14, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
       **No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Defendant Save On SP, LLC ("SaveOn"), we write in reply to Plaintiff John-

son & Johnson Health Care Systems, Inc.'s (with its affiliates, "J&J") opposition to SaveOn's

motion to compel J&J to produce responsive documents in the possession of its vendor TrialCard,

Inc. ("TrialCard"), related to work performed by TrialCard for J&J.

J&J's opposition confirms that Your Honor should grant SaveOn's motion.

*First*, SaveOn showed that J&J's Master Services Agreement ("MSA") gives it legal con-

trol over TrialCard's documents relating to TrialCard's work for J&J. J&J barely addresses the

text of the MSA, and most of its arguments go to its practical ability to access the documents, not

its legal control of those materials.

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

*Second*, SaveOn showed that J&J has the practical ability to obtain TrialCard's documents, as it has done multiple times in this litigation for its own advantage. J&J asks Your Honor to not apply the "practical ability" test, but that test is an independent basis to determine control, and J&J does not seriously dispute the facts showing that it has practical control here.

*Third*, J&J has no substantive basis to resist production of the documents that SaveOn seeks in TrialCard's possession: (1) documents from the "refresh" period of July 1, 2022 to November 7, 2023 of the sort that J&J already agreed to produce from the earlier discovery period; and (2) additional documents regarding TrialCard's involvement in the CAP Program, of the sort that Judge Waldor and Your Honor already compelled J&J to produce. These documents are plainly relevant and J&J does not show that producing them would be unduly burdensome to J&J.

*Finally*, if Your Honor determines that J&J does not control TrialCard's documents, SaveOn showed why Your Honor should require Patterson Belknap Webb & Tyler LLP ("<u>Patter</u><u>son</u>") to impose an ethical wall between its attorneys representing J&J and those representing TrialCard. J&J's main objection is that SaveOn does not show that Patterson should be disqualified, but SaveOn does not seek that relief—only an ethical wall to prevent future violations of the Discovery Confidentiality Order ("<u>DCO</u>").

**Argument**

## I.    J&J Controls TrialCard's Documents Regarding TrialCard's Work for J&J

A party must produce relevant documents within its "possession, custody, or control." Fed. R. Civ. P. 34(a). Control is construed "very broadly" under the federal rules, *Haskins v. First Am. Title Ins. Co.*, 2012 WL 5183908, at *1 (D.N.J. Oct. 18, 2012); a party has control over documents if it has (1) "the legal right" to the documents, or (2) the "ability to obtain the documents from another source upon demand." *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004). Under either test, J&J has control over TrialCard's documents relating to its work for J&J.

Hon. Freda L. Wolfson                                                          Page 3

### A.    J&J Has a Legal Right to TrialCard's Documents

J&J has control under Rule 34(a) of TrialCard's documents related to its work for J&J under the "legal right" test because "a contractual obligation requires a non-party [TrialCard] to provide requested documents to the litigating party [J&J] upon demand." *Haskins*, 2012 WL 5183908, at *1; *see also Moretti v. Hertz Corp.*, 2018 WL 4693473, at *2 (D. Del. Sept. 30, 2018) ("A contractual right to obtain documents in the possession of a third party can constitute control for Rule 34 purposes.") (collecting cases).

The MSA, under which TrialCard performs its work for J&J, gives J&J  MSA § 17.1. Those documents include

*Id*. The MSA also requires Trial-Card

*Id*. § 8.2. As J&J admits, it has "asked TrialCard to produce itself some subset of documents in this litigation." Opp. 12.

This easily gives J&J legal control over the documents at issue. Mot. 13-15. *See Haskins*, 2012 WL 5183908 (finding contract "plainly" established litigant's control over agent's documents where it required agent to maintain books and records, gave litigant the right to examine the books and records, and required agent to cooperate in litigation); *Calhoun v. Invention Submission Corp.*, 2021 WL 640759, at *2 (W.D. Pa. Jan. 13, 2021) ("The Court concludes that based upon [litigant's] right to examine the business records of any [non-party], [litigant] has, or had, sufficient control of any insurance policies in which it was named, and therefore must undertake efforts to

Hon. Freda L. Wolfson                                                                    Page 4

obtain copies…"); *Hertz Corp.*, 2018 WL 4693473, at *3 (contractual provisions granting litigant

"the right 'to inspect' and 'to examine' [third party's] 'records' and 'any-other information re-

quired by [litigant] with respect to the' business [third party] engages in with [defendant]" suffi-

cient to establish control).

        In its opposition, J&J fails to show that the plain language of the MSA does not give it

legal control over the requested documents.

        *First*, J&J asserts that the MSA gives it the right to ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████ Opp. 10 (citing MSA § 17.1). The MSA does

much more than that. ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████ MSA § 17.1—effectively all

documents relating to that work. The MSA also does not limit J&J to reviewing "whether Trial-

Card is performing under the agreement," Opp. 10—it ██████████████████████████

████████████████████████████████████████ MSA § 17.1; *cf. Hertz*

*Corp.*, 2018 WL 4693473, at *3 (rejecting plaintiff's argument that its access was limited to audit

purposes because contract did not specify that its right to obtain documents was limited to any

"particular purpose[] set forth in the agreements"). The MSA additionally requires TrialCard █

████████████████████████████████████████████████████████████████████

████████████████████████████████████ MSA § 8.2; *see also id.* § 17.2. This estab-

Hon. Freda L. Wolfson                                                                    Page 5

lishes J&J's legal control. *See Haskins*, 2012 WL 5183908, at *4 n.4 (D.N.J. Oct. 18, 2012) (con-

tractual agreements to cooperate in litigation "further demonstrate" control because non-parties

must comply with requests to share documents.)

      *Second*, J&J asserts that SaveOn fails to show "that JJHCS ordinarily requests internal

TrialCard communications in the normal course of business." Opp. 12. Even were this true (it is

not, *see* Part I.B), it would go only to J&J's practical ability to access the documents, not to its

legal right to do so. The "legal right" test is separate from the "practical ability" test and provides

an independent and sufficient basis for Your Honor to find control. *See Mercy Catholic Med. Ctr.*,

380 F.3d at 160 ("In the context of Fed. R. Civ. P. 34(a), so long as the party has the legal right *or*

ability to obtain the documents from another source upon demand, that party is deemed to have

control" (emphasis added)); *Invention Submission Corp.*, 2021 WL 640759, at *2 ("documents are

considered to be under a party's control when that party has the right, authority, *or* practical ability

to obtain the documents from a non-party in the action." (emphasis added)). The legal right test

thus does not look at the "normal course of business," Opp. 12, so J&J's argument on this point is

irrelevant.[1]

---

[1] J&J's assertion that the MSA ███████████████████████████████████████████
███████ Opp. 3, 13 n.7, is beside the point, as "[t]he rights" SaveOn asks "the Court [to] order[]
[J&J] to exercise arise from contract, not from any purportedly broader princip[al]-agent relation-
ship." *Hertz Corp.*, 2018 WL 4693473, at *4 (citing *McKesson Corp. v. Islamic Republic of Iran*,
185 F.R.D. 70, 78 (D.D.C. 1999) ("[W]hile the control required for Rule 34 purposes may be
established by virtue of a principal-agent relationship, a Rule 34 request only requires a showing
of control, not proof of a principal-agent relationship.")). To the extent Your Honor looks to the
language of the contract, under New York law ████████████████████ such "labels are
not dispositive, rather the facts and circumstances of the parties' relationship determines whether
an agent-principal relationship existed." *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp.
2d 94, 103 (S.D.N.Y. 2013). The MSA also ████████████████████████ and so
lacks the "express and unambiguous" language that New York courts generally credit to disclaim
agency. *See Supreme Showroom, Inc. v. Branded Apparel Grp. LLC*, No. 16 CIV. 5211 (PAE),

Hon. Freda L. Wolfson                                                      Page 6

*Third*, J&J asserts that HIPAA and the MSA prevent it from ████████████
███████████████████████████████████████████████████████. Opp. 12. Even if true (and

it is not), this would not affect whether J&J has **control** over such information; J&J could still

direct TrialCard to produce that information to SaveOn and restrict PHI access to the parties' out-

side litigation counsel—as J&J admits that it already has, *id.*, directing TrialCard to produce the

results of various benefits investigations and transaction-level data to SaveOn. *See generally An-*

*drews v. Holloway*, 256 F.R.D. 136, 145 n.13 (D.N.J. 2009) (where documents are "in the posses-

sion of others (such as a financial institution, attorney, business associate, spouse …), [defendant]

has the obligation to … authorize Plaintiffs to obtain the documents from such source").

J&J's assertion is incorrect in any event. J&J fails to explain how HIPPA might bar its

vendor from sharing information with J&J that the vendor obtained on J&J's behalf. While the

MSA states that ███████████████████████████████████████████████████████

██████████████████ MSA § 5.3.2—and ███████████████████████████████████,

*id.* § 5.3.3 ████████████████████████████████████████████

████████████████████████████████████); *id.* § 17.1

███████████████████████████████████████████████████

███████████████████████████████████████████████). In

---

2018 WL 3148357, at *9 (S.D.N.Y. June 27, 2018) (collecting cases). Calling TrialCard an "inde-
pendent contractor" does not disclaim agency, as independent contractors can also be agents. *See*
*CBS Inc. v. Stokeley-Van Camp, Inc.*, 522 F.2d 369, 375 n.14 (2d Cir. 1975) ("[I]t is only collo-
quially that the terms independent contractor and agent are necessarily distinct.").

Hon. Freda L. Wolfson                                                                Page 7

fact, discovery shows that TrialCard shared PHI with J&J for approximately 15,000 Stelara pa-

tients and approximately 8,000 Tremfya patients. Ex. 56 (JJHCS_00152367).[2] And, of course, any

self-imposed limit on J&J's ability to view PHI would not affect its control of documents without

PHI.

      *Fourth*, only one of J&J's cited cases even applied the legal control test, *Inline Connection*

*Corp. v. AOL Time Warner Inc.*, 2006 WL 2864586 (D. Del. Oc. 5, 2006) (cited Opp. 10, 13 n.7,

14), and it is easily distinguishable. Opp. 10-12. The contract in *Inline* required a non-party to

provide information only "where feasible" and did not require it to cooperate with the requesting

party in litigation, *Inline Connection Corp.*, 2006 WL 2864586, at *4; the MSA here, in contrast,

███████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████[3] In addition,

in *Inline* the non-party—defendants' competitor—had previously refused to provide information

defendants requested; there is no concern here that TrialCard—J&J's vendor—would not provide

information to J&J or produce it at J&J's direction. *Inline*, 2006 WL 2864586, at *4. J&J's other

---

[2] This spreadsheet was produced natively; PHI is accessible in links in that spreadsheet. Ex. 56 includes a PDF of the original spreadsheet and an excerpt of a linked spreadsheets containing PHI. SaveOn can provide the native file at Your Honor's request.

[3] J&J quotes *Inline* for the proposition that a contract that authorizes a party to access a non-party's information, "without more, is insufficient to establish legal control in the Third Circuit." Opp. 10 (citing *Inline*, 2006 WL 2864586 at *4). That assertion was *dicta*, as there was no such right of access in the contract at issue there. *Inline*, 2006 WL 2864586 at *3 ("[A] right of access … is irrelevant to the determination of whether [defendants] presently have or had legal control of the … information because there is no evidence that such a contractual provision exists").

Hon. Freda L. Wolfson                                                                 Page 8

cited cases, Opp. 11, do not apply the legal control test or examine contractual language, and so are irrelevant.[4]

Finally, J&J asserts that SaveOn refused to confer with it about "about any specific subset of documents" which "makes it impossible" to determine if the MSA gives J&J control over "some more limited subset of documents." Opp. 13-14. In reality, SaveOn negotiated with TrialCard for months over the documents at issue and TrialCard refused to produce them. See, e.g., Ex. 57 (Dec. 6, 2023 Letter) (TrialCard refusing to refresh its document productions through November 7, 2023); Ex. 58 (Dec. 22, 2023 Letter) (TrialCard refusing to add custodians). J&J's counsel— the same counsel representing TrialCard in those negotiations—knows exactly what those documents are. SaveOn asked J&J if it had control over those documents, Ex. 53, and J&J denied that it controlled them all, Ex. 5. If J&J believed that it controlled a subset of the documents, J&J should have identified them during the month it took to reply, but it did not. The parties are squarely at impasse on whether J&J has legal control over TrialCard's documents related to TrialCard's work for J&J—and it does.

### B.    J&J Has the Practical Ability to Obtain the Requested Documents

The "practical ability" test provides an independent and sufficient basis under Rule 34(a) to find that J&J has control over TrialCard's documents concerning its work for J&J because J&J has repeatedly shown that it can obtain such documents. "[A] company's ability to demand and

---

[4] See Princeton Digital Image Corp. v. Konami Dig. Ent. Inc., 316 F.R.D. 89, 92 (D. Del. 2016) (finding no practical control where plaintiff argued that defendant has been able to obtain documents in the past); Maniscalco v. Brother Int'l Corp., 2010 WL 762194, at *11 (D.N.J. Mar. 5, 2010) (finding no practical control where plaintiff had requested documents but there was "not one instance in which documents of the nature sought were ever supplied" by the defendant); Block v. Jaguar Land Rover N. Am., 2017 WL 11696617, at *1-2 (D.N.J. Aug. 23, 2017) (finding no practical control because "Plaintiffs have pointed to no evidence that [defendant] has control over the specific documents at issue, nor access to them in the ordinary course of business").

have access to documents in the normal course of business gives rise to the presumption that such documents are in the litigating corporation's control." *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 443 (D.N.J. 1991); *see also* 7 Moore's Fed. Pr.—Civ. § 34.14 (2024) ("[C]ontrol by a party over the person or entity in possession of the documents is sufficient to require that the party produce the documents.").

This reason why is simple fairness: "Where the relationship is such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party." *Gerling Int'l Ins. v. Comm'r*, 839 F.2d 131, 141 (3d Cir. 1988); *see also Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 396 (D.N.J. 2011) ("Sandoz cannot use its foreign affiliation with Lek as both a sword and a shield. Sandoz has relied on Lek … [but] now attempts to block discovery of these very activities because it claims this information is not 'reasonably available.' … Sandoz cannot have it both ways. Common sense and traditional notions of justice demand that Sandoz is required to provide discovery about Lek in this litigation.").

As SaveOn showed, J&J has strategically controlled production of TrialCard's documents, readily establishing its practical ability to obtain them. J&J used this power defensively, for example by directing TrialCard to make productions that it argued satisfied J&J's production obligations. *See, e.g.*, Mot. 6 (TrialCard "already agreed" to produce "through JJHCS" data that SaveOn sought from J&J); *id*. at 7 (J&J promised a forthcoming TrialCard production of Benefits Investigations to avoid its own production in response to SaveOn's request). J&J has wielded this power offensively, for example by suggesting that TrialCard will produce approximately 1,500 call re-

cordings identified by SaveOn only if SaveOn produces to J&J approximately 30,000 call record-

ings—which J&J termed an "equivalent production." *See* Ex. 59 (Mar. 26, 2024 Letter); Ex. 60

(Apr. 23, 2024 Letter); Ex. 61 (May 7, 2024 Letter). J&J has also used this power to circumvent

the discovery process, obtaining documents from TrialCard that TrialCard did not provide to

SaveOn that J&J then used to surprise a deponent in the litigation. *See* Mot. 9-10 (TrialCard pro-

duced call recordings "at JJHCS's request" only after J&J used them at a deposition of SaveOn's

witness). J&J clearly has "easy and customary access to [TrialCard's] documents" and can use

them "for its usual business needs," which include "to provide highly relevant documents in this

litigation." *Camden Iron*, 138 F.R.D. at 443-44. J&J's self-serving direction of TrialCard's pro-

ductions is precisely the gamesmanship that the practical ability test exists to remedy.

 J&J's arguments to the contrary are unavailing.

 *First*, J&J asserts that the Third Circuit does not recognize the practical ability test, citing

two non-binding cases from the District of Delaware[5] and one secondary source.[6] Opp. 14. In re-

ality, the Third Circuit recognizes that test, *see Mercy Cath. Med. Ctr. v. Thompson*, 380 F.3d 142,

---

[5] J&J's cases are also distinguishable. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005) noted that "parent corporations have been required to produce documents held by their subsidiaries" but that "the converse is not true. A subsidiary, by definition, does not control its parent corporation." *Id*. But the court did not apply the "practical ability" test under Rule 34(a): the case dealt with a plaintiff trying to force a non-party to gather documents from its parent company, and the court held that Rule 34(a) did not deal with control between two non-parties. *Id. Inline Connections*, in turn, relied on *Power Integrations. See Inline Connections Corp. v. AOL Time Warner Inc.*, 2006 WL 2864586, at *2 (D. Del. Oct. 5, 2006) ("More importantly, Inline's assertion that the law of the Third Circuit does not reject the Second Circuit's 'practical ability' approach is clearly contradicted by *Power Integrations, Inc.*").

[6] The secondary source J&J cites, *Commentary on Rule 34 and Rule 45 "Possession, Custody, or Control,"* 25 Sedona Conf. J. 1, 28 (2024), affirmatively recognized that some courts in the Third Circuit apply the practical ability test, citing *Barton v. RCI, LLC*, 2013 WL 1338235, at *6 (D.N.J. Apr. 1, 2013) (noting "[i]f the producing party has the legal right ***or practical ability*** to obtain the

160 (3d Cir. 2004) ("In the context of Fed.R.Civ.P. 34(a), so long as the party has the legal right

or ability to obtain the documents from another source upon demand, that party is deemed to have

control"), and the District of New Jersey regularly applies it, *see Camden Iron*, 138 F.R.D. at 443

("Control is defined as the legal right, authority or ability to obtain documents upon demand.");

*see also Sanofi-Aventis*, 272 F.R.D. at 395 ("Direct, legal control over the related entity is not

required… The availability of information in the possession of a related company turns on the facts

of each case, in particular as they relate [to] the 'control' standard of Rule 34(a)."). J&J's cases

show, at most, that the District of Delaware interpreted *Gerling,* 839 F.2d 131, more restrictively

than did the District of New Jersey. *Compare Power Integrations,* 233 F.R.D. at 145 (interpreting

*Gerling* to say "the separate and distinct corporate identities of a parent and its subsidiary are not

readily disregarded, except in rare circumstances") *with Camden Iron*, 138 F.R.D. at 441-42 (in-

terpreting *Gerling* to provide five grounds to establish control, including "access to documents

when the need arises in the ordinary course of business").[7]

    *Second*, J&J asserts that courts fail to find practical control where the party and non-party

are not corporate affiliates and that TrialCard is an "independent company." Opp. 3, 15. But courts

look to whether the relationship between the parties is "***akin to*** a case where an entity has been

found to have control over the records of its parent, subsidiary, or sister corporation." *In re Novo

Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 502-03 (D.N.J. 2021) (emphasis added). And the facts

---

documents, then it is deemed to have 'control' … even if the documents are actually in the pos-
session of a non-party" (emphasis added)).

[7] Even were this relevant, it is no longer accurate. The District of Delaware has expanded its use
of the practical ability test in the past twenty years. *See Moretti v. Hertz Corp*., 2018 WL 4693473
at *5 (D. Del. Sept. 30, 2018) (finding "some support in this District" that courts can inquire into
a party's practical ability to obtain documents to determine control).

show that TrialCard is anything but "independent" of J&J. Among other things: (1) █████████

████████████████████████████████████, MSA § 1.8; (2) ████████████████████████████████

████████████████████████████████████████████████, *id.* § 1.9; (3) ████████████████████

████████████████████████, *id.* § 5.3.1; (4) ████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████████

████████; Ex. 62 at -992 (JJHCS_00073990); (5) ████████████████████████████████████████,

Ex. 63 (JJHCS_00112408) (████████████████████████████████████████████████████████████

████████████████); (6) ██████████████████████████████████████████████████████████████,

Ex. 64 § 1.d (JJHCS_00045387); (7) J&J regularly "facilitates" or directs TrialCard to produce

documents in this litigation, Mot. 15-16; and (8) J&J asserts that TrialCard's employees are the

"functional equivalent" of J&J's employees, Ex. 31 at 4. This is more than enough to establish

J&J's practical ability to obtain the relevant documents from TrialCard. *See Sanofi-Aventis*, 272

F.R.D. at 395 (finding "evidence of an even closer relationship" than "corporate sisters" sufficient

to find control where non-party's "website projects itself to the general public as a 'Sandoz' com-

pany" and the "corporate logo of Sandoz is prominently displayed in several locations throughout

its homepage").

     *Third*, J&J asserts that SaveOn "identifies no types of documents suppressed by TrialCard

at JJHCS's behest or based on their content." Opp. 16. SaveOn does identify them: TrialCard

refuses to produce the documents at issue here and there is ample evidence that TrialCard generally

produces or withholds documents at J&J's behest. For example, TrialCard refused to produce Ben-

efits Investigations, Ex. 65 (Sep. 29, 2023 Letter), until J&J announced at a discovery conference

before Judge Waldor that, as an "additional concession" to avoid being ordered to produce CAP

documents, it would "give [SaveOn] through a production from TrialCard, which is our vendor,

Hon. Freda L. Wolfson                                                          Page 13

who we also represent and is subject to a subpoena, we'll give them benefits investigations." Oct.

30, 2023 Hr'g Tr. at 62:7-13.[8] TrialCard similarly refused to produce recordings of calls between

it and SaveOn until after it provided 16 recordings to J&J for J&J's surprise use in a November

10, 2023 deposition of SaveOn's witness. *See* Ex 42 at 5 (confirming that TrialCard produced these

16 call recordings on January 12, 2024 "at JJHCS's request"). J&J also directed TrialCard to pro-

duce patient claims data to fulfill J&J's obligation to produce such data for relevant Janssen drug.

*See* Ex. 44 at 24-25; Ex. 54 at 11-12 (promising J&J would produce such data); Ex. 24 at 17-19

(stating TrialCard "has already agreed to produce through JJHCS" relevant claims data). This

strong inference of control is bolstered by J&J's contractual obligation to ██████████████

████████████████████, *see* MSA § 17.2, as TrialCard has no financial incentive to

withhold documents while J&J has both a financial and strategic incentive for it to do so.

       *Fourth*, J&J asserts that SaveOn "has long been on notice to (and has not objected to)

TrialCard's search parameters." Opp. 16. Not so. After extensive negotiation, SaveOn and Trial-

Card reached impasse regarding TrialCard's custodians and the time frame of its production.

Ex. 66 (Jan. 12, 2024 Letter); Ex. 6. J&J cites a July 19, 2023 letter from TrialCard identifying

search terms that SaveOn purportedly did not object to, J&J Ex. 29, but it omits a July 26, 2023

letter back from SaveOn in which SaveOn continued to object to TrialCard's search terms, includ-

ing by asking TrialCard to add four terms ("zero out-of-pocket," "zero OOP," "no OOP," and "no

---

[8] J&J's assertion that TrialCard's production of "over 4,800 benefits investigations" is evidence
that TrialCard produces "documents without regard to whether those documents are helpful or
harmful to JJHCS," Opp. 16, is completely wrong. TrialCard refused to produce the benefits in-
vestigations until J&J directed it to produce them, and only after J&J determined that doing so
might help it argue against having to produce other documents as well.

out-of-pocket") and to identify additional custodians, Ex. 67 (Jul. 26, 2023 Letter), which Trial-Card refused to do. *See* Ex. 26 at 2-3.

*Fifth*, J&J mischaracterizes SaveOn's position, saying that SaveOn argues "that Trial-Card's purportedly 'significant role' in the subject matter in this litigation "independently" confers on JJHCS control over [TrialCard's] documents." Opp. 16 (citing Mot. 16). SaveOn did not say this. SaveOn said: "The overwhelming evidence that J&J can obtain documents from ***TrialCard, which plays a 'significant role' in the subject matter in this litigation***, is an independently sufficient basis to conclude that J&J has possession, custody or control over TrialCard's documents regarding TrialCard's work for J&J." Mot 16 (emphasis added). That is, SaveOn described Trial-Card as "play[ing] a significant role in the subject matter in this litigation"; the independent basis for Your Honor to grant SaveOn's motion is "[t]he overwhelming evidence that J&J can obtain documents from TrialCard."

*Finally*, J&J says that "no authority" holds that its argument that TrialCard employees are the "functional equivalent" of J&J employees for purposes of privilege means that J&J has control of TrialCard's documents. Opp. 17. But whether J&J can in fact control TrialCard's employees is a factor in determining if it has the practical ability to obtain TrialCard's documents. In *Sanofi-Aventis*, for example, the court found practical control based in part on the fact that "Sandoz lists several Lek witnesses as 'Sandoz employee[s]' in its privilege log" as evidence for a finding of control. 272 F.R.D. at 395; J&J has asserted that—as a matter of fact—TrialCard's employees who work on J&J matters are the functional equivalent of J&J's own employees and J&J has claimed privilege on that basis. This is strong additional evidence that J&J has practical control over Trial-Card's documents concerning TrialCard's work for J&J. *See id.* at 396 ("Sandoz asserts privilege over communications held with Lek scientists because they were held with 'Sandoz employee[s].'

Hon. Freda L. Wolfson                                                                    Page 15

Yet it now argues that Lek is an entirely distinct legal entity for purposes of Rule 30(b)(6). Sandoz

cannot have it both ways."). J&J points to a provision in the MSA that states that ███████████

████████████████████████████████████████████████████████████████

Opp. 17 (quoting MSA § 12), but this says nothing about whether TrialCard's employees will be

the functional equivalent of J&J's employees.

## II.    The Requested Documents are Relevant and Not Burdensome

Once Your Honor determines that J&J controls TrialCard's documents, she should then

consider if the documents that SaveOn seeks are relevant and if J&J raises any valid objection of

burden or proportionality. The documents are clearly relevant—they seek information on topics

that the Court and/or Your Honor has already ruled are relevant—and J&J makes no serious argu-

ments that production would be burdensome or disproportionate.

### A.    J&J Must Produce TrialCard's Documents from the "Refresh" Time Period of July 1, 2022 to November 7, 2023

In response to SaveOn's subpoena, TrialCard eventually agreed to produce five categories

of documents: (1) documents and communications from four custodians; (2) some records of

phone calls; (3) records of some Benefits Investigations; (4) patient letters; and (5) CarePath en-

rollment and claims data. Opp. 5-6. Although TrialCard had agreed to produce documents to the

same extent as J&J, Mot. 6, it now refuses to produce custodial documents through the Court-

ordered "refresh" period of July 1, 2022 to November 7, 2023, J&J Ex. 35 at 2. TrialCard's main

objection is that the Court's "refresh" order did not apply to non-parties, Ex. 68 at 1 (Mar. 22, 2024

Letter), but this objection is moot if Your Honor determines that J&J controls the documents.

J&J does not contest that these documents, of the same sort that TrialCard already pro-

duced, are relevant. As J&J acknowledged, the four custodians from whom it agreed to produce

documents are "TrialCard employees with key responsibilities for the administration of CarePath."

Hon. Freda L. Wolfson                                                                    Page 16

Opp. 5.[9] There is no principled basis to cut off custodial productions from these important indi-

viduals on July 1, 2022, especially when that date only captures a few months of the CAP Pro-

gram—which went into effect in January 2022 and continues through the present. J&J also does

not assert that production would be burdensome or disproportionate. J&J thus has no basis to with-

hold these documents.

### B.    J&J Must Produce TrialCard's Documents and Communications Related to the CAP Program, Benefits Investigations, and Other Efforts to Identify Patients on SaveOn-Advised Plans

The Court held that J&J's CAP Program and Benefits Investigations into whether patients

taking drugs at issue were on SaveOn-advised plans are relevant, *see* Apr. 10, 2024 Order at 2

(CAP-related documents are "highly relevant"); Feb. 6, 2024 Order at 24-26 (quoting guidance

from Judge Waldor's Chambers and ordering search terms that "capture…CAP discussions"), and

the Court and Your Honor have ordered J&J to produce documents on both topics, including or-

dering it to add multiple sets of "CAP custodians" and to use search terms targeted at documents

regarding the CAP Program, *see* Dkt. 173 at 2; April 10, 2024 Order at 1-3. J&J has no valid

argument that TrialCard's documents on these same topics are somehow not relevant.

J&J asserts that TrialCard's internal communications are irrelevant because "it is JJHCS's

directions—not [TrialCard's] internal communications about those directions—that are germane

---

[9] J&J claims that its four existing custodians are adequate because it "agreed to a custodian for every interrogatory for which JJHCS identified responsible TrialCard employees." Opp. 5 n.2. But J&J identified ███████████████████████████████████████████████████ ███████████ Ex. XX at 5-6 (Jan. 17, 2023 J&J R&Os to SaveOn's First Interrogatories), ████████ *id.* at 15, and ████████████████████████████████ *id.* at 16. SaveOn has reserved its rights to seek documents from additional TrialCard custodians.

Hon. Freda L. Wolfson                                                    Page 17

to the claims here." Opp. 18. As J&J previously argued to the Court, however, "[i]nternal communications are a standard part of discovery—indeed, in many ways, they are the whole point of discovery." Dkt. 65 at 16 (Jan. 5, 2023 Joint Letter). TrialCard's internal communications here could reflect discussions between it and J&J not captured in written communications between them, and could help show how TrialCard implemented the CAP Program in practice. *See* Ex. 69 at 3 (Mar. 8, 2024 Letter).[10]

J&J next asserts that additional TrialCard documents relating to the CAP Program are irrelevant or unnecessary because J&J is producing "CAP-related discovery" from its own files. Opp. 18-19. But there is extensive evidence that TrialCard was deeply involved in creating and implementing the CAP Program, Mot. 4-5, which easily shows that TrialCard's employees are likely to have relevant documents in addition to the documents of J&J's employees.[11]

J&J also asserts that SaveOn does not need broad discovery into TrialCard's patient-identification efforts because ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████ Opp. 19-20 n.11 (emphasis added). But discovery is not limited to TrialCard's █████████████████████████████████████████████████████████

---

[10] In its opening brief, SaveOn cited an email where TrialCard ████████████████████
███████████████████████████████████. Mot. 5. J&J ████████████████████████. Opp. 18 n.9. In fact, SaveOn noted that TrialCard had not produced █████████████████
██████████████████████████, Mot. 5; SaveOn said nothing about ███████████████.

[11] J&J asserts that TrialCard does not "independently craft[] strategies for [J&J] to respond to [SaveOn's] misappropriation." Opp. 3. In so doing, J&J appears to concede that TrialCard crafts such strategies along with J&J—as the documents that SaveOn cites confirm. Mot. at 3-4

██████████████████████ SaveOn is entitled to discover **all** methods that TrialCard used or considered using in identifying such patients for J&J, as J&J's failure to use reasonably available methods to identify those patients could show that J&J failed to mitigate its purported damages.

J&J offers no valid burden argument. It asks Your Honor to account for "the existing burdens that TrialCard has already been forced to endure as part of third-party discovery." Opp. 18; *see also id.* at 2 (arguing that "TrialCard should not be forced to endure undue burden"). But Your Honor will reach questions of burden in this motion only if Your Honor first finds that J&J controls TrialCard's documents. In that case, the only relevant burden is the burden on **J&J**, as the party from which discovery is sought, not the burden on TrialCard.[12] J&J does not assert, let alone quantify, its burden in producing these documents. It is also not clear how J&J could do so, as Patterson (either as J&J's counsel or as TrialCard's counsel) has refused to identify additional TrialCard custodians or collect their documents. Ex. 70 at 1 (Mar. 8, 2024 Letter). J&J must produce these documents.

### III.   If J&J Does Not Control TrialCard's Documents Concerning Its Work for J&J, Then Patterson Should Impose an Ethical Wall

J&J's lawyers at Patterson have access to SaveOn's confidential information pursuant to the DCO in this case. Dkt. 62. Contrary to the terms of the DCO, those same lawyers used SaveOn's confidential information on behalf of TrialCard to resist discovery by SaveOn. If Your Honor finds that J&J does not control TrialCard's documents related to its work for J&J, Patterson

---

[12] Even were TrialCard's burden somehow relevant here, it is not clear that it has endured any meaningful burden to date. The MSA provides that ██████████████████████████████ ████████████████████, MSA § 17.2, and both J&J and Patterson have refused to say that TrialCard is paying its own fees and costs in this case, strongly indicating that J&J is paying. Ex. 33 at 2 (Jun. 30, 2023 Ltr.).

should implement an ethical wall such that its lawyers representing J&J do not represent TrialCard. J&J's arguments to the contrary are unavailing.

*First*, J&J asserts, without citation, that "[c]ounsel routinely represents both parties and related third parties in commercial litigation." Opp. 21. While it is common for a company's counsel to represent the company's former employees, it is unusual for them to represent the company's vendors. In any event, when a lawyer represents a nonparty in litigation in which she also represents a party, "there is a risk that a lawyer's representation of one client might materially limit [their] ability to fulfill [their] responsibility to the other client." *Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.*, 2009 WL 1211440, at *4 (E.D. Ark. May 4, 2009). For example, "[i]f a lawyer for a party interviews a witness, the lawyer is free to tell the client what the witness said, and he may even be obligated to do so, but if the lawyer represents the witness, the lawyer may be prohibited from telling anyone, including his client who is a party in the case, what the witness said." *Id.*; *see also Sapia v. Bd. of Educ. of City of Chicago*, 351 F. Supp. 3d 1125, 1131 (N.D. Ill. 2019) (whether to prohibit simultaneous representation is "decided on facts," though "[w]hether the practice in any given case is wise is, however, another matter."); *Adkisson v. Jacobs Eng'g Grp., Inc.*, 2016 WL 6534273, at *5 (E.D. Tenn. Nov. 1, 2016) (simultaneous representation "is fraught with ethical peril" requiring counsel to take "precautions"); *ChemFree Corp. v. J. Walter, Inc.*, 2008 WL 5234252, at *5 (N.D. Ga. June 11, 2008) (counsel could have "avoided any appearance of unethical conduct" by "refer[ring] the [non-parties] to alternative counsel"). This case presents an even more intractable problem, as J&J is prohibited by the DCO from consenting to its lawyers using SaveOn's confidential information on TrialCard's behalf, as they did.

*Second*, J&J says that SaveOn does not show that Patterson should be disqualified. Opp. 21-22 & n.13. This is a strawman. SaveOn does not seek to disqualify Patterson from representing J&J or TrialCard or both. SaveOn rather asks, in the alternative, that Patterson be required to "impose an ethical wall between the attorneys representing the entities, ensuring that no attorney representing TrialCard has (or had) access to SaveOn's confidential information." Mot. 18. SaveOn cited several cases in which courts required ethical walls, Mot. 18-19; while J&J notes that those cases did not order disqualification, Opp. 22 n.13, it has no answer to their imposition of ethical walls, the only relief that SaveOn seeks.

*Third*, J&J asserts that there is no conflict between it and TrialCard, that Patterson has "obtained appropriate waivers" from TrialCard, and that Patterson thus is not "torn between its obligations to" its two clients. Opp. 21-23. This misses the point. SaveOn does not argue that there is a conflict between J&J and TrialCard; it argues that there is a conflict between Patterson's obligations to its clients and its obligations to SaveOn—and the Court. Patterson's obligation to zealously represent TrialCard conflicts with its obligation under the DCO to not use SaveOn's confidential information on behalf of any party other than J&J. J&J's close coordination of legal strategy with TrialCard—to the point of waiving conflicts between them—increases the risk of continued misuse. If J&J does not control TrialCard's documents, the best cure is an ethical wall.

J&J also says that Patterson did not violate the DCO. But J&J admits to all the material facts: Patterson learned SaveOn's confidential information in Ayesha Zulqarnian's deposition as J&J's counsel and then used that information as TrialCard's counsel in resisting production of documents in a meet-and-confer session with SaveOn. Opp. 23-24. This is a plain violation of the DCO, which restricts disclosure of designated confidential information to specifically listed persons and entities. J&J's attempted excuses for this violation fail.

*First*, J&J asserts that Patterson had access to the information and was "permitted to discuss" it with SaveOn's counsel by the DCO. Opp. 24. This argument underscores why an ethical wall is necessary if J&J does not control TrialCard's documents. Patterson had access to SaveOn's confidential information and was permitted to discuss it with SaveOn only ***on behalf of J&J***. J&J's continuing failure to distinguish between Patterson's roles as J&J's counsel and as TrialCard's counsel and J&J's claim that Patterson was permitted to use SaveOn's information in this way shows the continuing risk that Patterson might again use SaveOn's confidential information on behalf of TrialCard.[13] J&J's argument, if accepted, would also create a perverse incentive for parties to have their counsel represent non-parties and use the opposing party's information on the non-parties' behalf to resist producing documents.

*Second*, J&J tries to retroactively justify Patterson's conduct. It says that Patterson simply told SaveOn's counsel that it needed SaveOn to provide phone numbers so that TrialCard could identify calls that it received from those numbers. Opp. 24. In fact, Patterson, as TrialCard's counsel, said that Zulqarnain's use of fake names prevented TrialCard from identifying records of calls that she, and potentially other SaveOn employees, made to TrialCard, Ex. 45 at 1—an assertion it could not have made without access to Zulqarnain's deposition. J&J asserts that TrialCard had its own records of Zulqarnain registering for CarePath and of a caller using different names and affiliations when calling from the same cell number. Opp. 24. But TrialCard did not know from its

---

[13] Contrary to J&J's claim, its counsel has only very recently requested SaveOn to "respect this separation." Opp. 23 n. 14. Indeed, its first such request was in February 2024, as demonstrated by J&J's citations. *Id*. Communications—both before and after February 2024—show that Patterson has not respected these separate roles when helpful to J&J. *See, e.g.*, June 27, 2023 Hr'g Tr. at 90:2-6 (J&J explaining, "we've made a document production from" TrialCard to resist discovery into non-JJHCS entities at J&J); Ex. 61 (May 7, 2024 Letter) (addressing SaveOn's burden argument associated with producing recorded calls by referencing SaveOn's allegedly "equivalent" request to TrialCard).

Hon. Freda L. Wolfson                                                        Page 22

own files that Zulqarnain used multiple names when calling CarePath to obtain information on

terms and conditions; Patterson learned that information exclusively from her deposition, as it

stated in the meet-and-confer sessions with SaveOn's counsel. Ex. 45 at 1.

*Finally*, J&J's string of technical excuses for why Patterson did not violate the DCO fails.

J&J says that Patterson did not share the deposition transcript with TrialCard (SaveOn did not

allege that it did), Opp. 23—but Patterson used confidential information from the deposition on

TrialCard's behalf. J&J says that the information was "undisputed," Opp. 24—but, disputed or

not, the information was confidential, so Patterson could not use it on behalf of TrialCard. J&J says

that Patterson did not "use" the information on TrialCard's behalf, Opp. 24—but it did, citing that

information as a basis to withhold documents. J&J says that Patterson's "stray reference" to the

information did not "amount to 'use,'" Opp. 24 n.15—but citing information on a party's behalf

is "use" by any reasonable definition.

The Special Master should grant SaveOn's motion, recognizing that J&J has control over

TrialCard's documents regarding its work for J&J for purposes of Rule 34(a). In the alternative,

Your Honor should direct Patterson to implement an ethical wall separating attorneys who repre-

sent J&J from those who represent TrialCard.

                              Respectfully submitted,


                              /s/ E. Evans Wohlforth, Jr.
                              E. Evans Wohlforth, Jr.
                              Robinson & Cole LLP
                              666 Third Avenue, 20th floor
                              New York, NY 10017-4132
                              Main (212) 451-2900
                              Fax (212) 451-2999
                              ewohlforth@rc.com

Hon. Freda L. Wolfson                                                                                    Page 23

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# EXHIBIT 56
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 57



www.pbwt.com

December 6, 2023

Sara Arrow
(212) 336-2031

**By Email**

Hannah Miles, Esq.
Selendy Gay Elsberg, PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re: *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,*
> **Case No. 2:22-cv-02632-ES-CLW**

Dear Hannah:

We write on behalf of TrialCard in response to your November 30 letter regarding the applicable time period for TrialCard's document productions in response to the subpoena dated February 17, 2023.

You claim that, during a meet and confer on April 25, 2023, we "agreed that TrialCard's productions would generally conform to the Court's orders as to JJHCS, including adjusting the time period for TrialCard's productions in line with JJHCS's." Suffice it to say, we disagree with your characterization of TrialCard's assertions during the April 25 meet and confer. At no point during the meet and confer did TrialCard and SaveOnSP contemplate or discuss a complete update of all discovery responses through November 7, 2023, much less agree to undertake the same.

In any event, the Court's November 7, 2023 Order does not impose obligations on TrialCard as a third party, nor are we aware of any other third party (including your business partners, Express Scripts Inc. or Accredo Health Group, Inc.) undertaking a comparable production update pursuant to that Order. As a result, we decline your invitation to update our discovery responses, including productions, through November 7, 2023.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

# Exhibit 58



www.pbwt.com

December 22, 2023

Sara Arrow
(212) 336-2031

**By Email**

Hannah Miles, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    *Johnson & Johnson Health Care Systems Inc. v. SaveOnSP, LLC,*
       *Case No. 2:22-cv-02632-ES-CLW*

Dear Hannah:

We write on behalf of TrialCard in response to your December 8, 2023 letter.[1]

As you know, TrialCard maintains that custodial collections are disproportionate to its status as a non-party, burdensome, and unnecessary. *See, e.g.*, July 6, 2023 Ltr. from K. Brisson to E. Holland; Aug. 3, 2023 Ltr. from K. Brisson to E. Holland. Despite this, and in the interest of compromise, TrialCard has undertaken such collections for four custodians: Holly Weischedel, Sini Abraham, Rick Fry, and Paul Esterline. These custodial collections are in addition to TrialCard's extensive non-custodial productions. Yet SaveOnSP now again demands that TrialCard supplement its custodial productions, this time to include seven more document custodians. Of the seven, TrialCard has previously declined to add six of them. *See* Aug. 3, 2023 Ltr. from K. Brisson to E. Holland.

*Jason Zemcik*: SaveOnSP asserts that JJHCS "asked Zemcik for guidance" or otherwise communicated with him regarding TrialCard deliverables. ███████████████ *See, e.g.*, JJHCS_00026255; JJHCS_00005528; JJHCS_00008107; JJHCS_00001745; JJHCS_00007308. Further, several of the documents SaveOnSP cites do not even mention JJHCS or CarePath. *See, e.g.*, TRIALCARD_00001804; TRIALCARD_00001815; TRIALCARD_00001884; TRIALCARD_00003340; TRIALCARD_00001951;

---

[1] SaveOnSP's December 8 letter quotes several documents that JJHCS or TrialCard marked as Attorney's Eyes Only ("AEO") pursuant to the Protective Order, but the letter was designated as Confidential. We assume this was an oversight, and that SaveOnSP will treat the AEO portions of the letter as such. If this is not so, please inform us in writing by January 3, 2024.

Hannah Miles, Esq.
December 22, 2023
Page 2

TRIALCARD_00002804; TRIALCARD_00002931.  Please explain why, in your view, abstract analyses unrelated to CarePath justify intrusive and voluminous discovery of Mr. Zemcik's custodial files.  Relatedly, we note that to the extent Mr. Zemcik's custodial files contain relevant documents, they would be cumulative of those that TrialCard and JJHCS have produced from other agreed-upon custodians, including TrialCard custodians Fry (*see, e.g.*, TRIALCARD_00001804, TRIALCARD_00001884) and Weischedel (*see, e.g.*, JJHCS_00008107) and JJHCS custodians John King (*see, e.g.*, JJHCS_00026255) and Bill Robinson (*see, e.g.*, JJHCS_00005528).

> *Rick Ford*:  SaveOnSP asserts that Mr. Ford provided ███████████████ ████████████.  However, as SaveOnSP acknowledges, ████████████████ ████████████████.  *See* JJHCS_00035931.  Furthermore, as with Mr. Zemcik, several of the documents SaveOnSP cites do not even mention JJHCS or CarePath.  *See, e.g.*, TRIALCARD_00001951;          TRIALCARD_00001811;          TRIALCARD_00001966; TRIALCARD_00000348;          TRIALCARD_00001881;          TRIALCARD_00000356; TRIALCARD_00000362;          TRIALCARD_00000389;          TRIALCARD_00006722; TRIALCARD_00002552; TRIALCARD_00002430.  Again, please explain why, in your view, abstract analyses unrelated to CarePath justify intrusive and voluminous discovery of Mr. Ford's custodial files—especially since, to the extent Mr. Ford's files contain relevant documents, they would be cumulative of those TrialCard and JJHCS have produced from other agreed-upon custodians, including TrialCard custodian Fry (*see, e.g.*, TRIALCARD_00001951, TRIALCARD_00001811, TRIALCARD_00000389) and JJHCS custodians Robinson and King (*see, e.g.*, JJHCS_00035931).

> *April Harrison*:  SaveOnSP asserts that Ms. Harrison was involved in implementing JJHCS's CAP Program.  Yet, as SaveOnSP acknowledges, ██████████████████ ████████████████████████████████████████████████████████████.  *See, e.g.*, TRIALCARD_00002368.  To the extent Ms. Harrison performed work for JJHCS in relation to its CAP program, documents related to that work are in JJHCS's possession.  Additionally, to the extent Ms. Harrison's custodial files contain relevant documents, they would be captured by other existing TrialCard custodians, including Abraham, who is in Ms. Harrison's reporting line. SaveOnSP also asserts that Ms. Harrison purportedly assisted JJHCS in "efforts to modify copay assistance programs in responses to changes in the Best Price Rule."  Yet, SaveOnSP has not articulated the purported relevance of such contemplated changes to the claims and defenses in this litigation; please provide this explanation.

> *Tommy Gooch*:  SaveOnSP asserts that Mr. Gooch sent and received information from JJHCS and attended meetings with JJHCS employees.  ██████████████████ ████████████████████████████████████████████████████████████. *See, e.g.*, JJHCS_00005784, JJHCS_00008104.  Indeed, one document that SaveOnSP cites makes clear that ██████████████████████ TRIALCARD_00005044.  Finally, to the extent Mr. Gooch's custodial files contain relevant documents, they would be cumulative of those that TrialCard and JJHCS have produced from other agreed-upon custodians, including JJHCS custodian Robinson (*see, e.g.*, JJHCS_00008104) and TrialCard custodians Weischedel and Esterline (*see, e.g.*,

Hannah Miles, Esq.
December 22, 2023
Page 3

JJHCS_00008104; TRIALCARD_00007157).  In light of this additional information, if you still believe that cumulative discovery from Mr. Ford is necessary, please explain why.

      *Lynsi Newton*:  SaveOnSP asserts that Ms. Newton was responsible for TrialCard's outreach regarding efforts to modify copay assistance programs in response to changes to the Best Price Rule.  As noted above, SaveOnSP has not articulated the relevance of documents relating to the Best Price Rule; again, please explain the purported relevance.  Further, ███████████████ ██████████████████████████████████████████████████████████████████  *See* JJHCS_00004607 (including TrialCard custodian Weischedel); JJHCS_00004608; JJHCS_00004611.  Similarly, ████████████████████████████████████████████████ ███████████████████████████████████████.  *See* TRIALCARD_00008354; TRIALCARD_00008594. SaveOnSP's citation to TRIALCARD_00008594 is particularly unavailing given the references therein to ██████████████████████████████████████████████████.  Finally, to the extent Ms. Newton's custodial files contain relevant documents, they would be captured by other existing TrialCard custodians, including Weischedel and Abraham, to whom Ms. Newton reported.  In light of this additional information, if you still believe that cumulative discovery from Ms. Newton is necessary, please explain why.

      *Amber Maldonado*:  SaveOnSP asserts that Ms. Maldonado "played a key role in detecting and mitigating the alleged effects of maximizers and accumulators."  In fact, one of the documents SaveOnSP cites in support, JJHCS_00005061, ██████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████.  Further, ████████████████████████████████████████████████████████████████████ ████████████████████████████████.  *See, e.g.*, JJHCS_00006991.  Finally, to the extent Ms. Maldonado's custodial files contain relevant documents, they would be cumulative of those that TrialCard has produced from other agreed-upon custodians, including all existing TrialCard custodians.  *See, e.g.*, TRIALCARD_00006499 (including all four TrialCard custodians); TRIALCARD_00006511 (including Weischedel and Esterline).  In light of this additional information, if you still believe that cumulative discovery from Ms. Maldonado is necessary, please explain why.

      *Cosimo Cambi*:  SaveOnSP asserts that Mr. Cambi was the "███████████████████ ██████████"  However, both TRIALCARD_00000334 and TRIALCARD_00002656 indicate that ███████████████████████████████████████████████████████████ ████████████████████████████████████████████  Again, TrialCard is a vendor.  Its understanding of the health insurance market and its opinions about its participants in the abstract is irrelevant to any actual work it performed implementing the CarePath program.  It cannot justify voluminous custodial discovery of the type SaveOnSP proposes.  Finally, ████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████.  *See* TRIALCARD_00003079.  In light of this additional information, if you still believe that cumulative discovery from Mr. Cambi is necessary, please explain why.

Hannah Miles, Esq.
December 22, 2023
Page 4

\*       \*       \*       \*

We are available to meet and confer.

Very truly yours,

_/s/ Sara A. Arrow_
Sara A. Arrow

# Exhibit 59

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

March 26, 2024

**Via E-mail**

Sara A. Arrow
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
sarrow@pbwt.com

**Re:** ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC*** **(Case No. 2:22-cv-02632-JKS-CLW)**

Dear Sara,

We write to you in your capacity as counsel for TrialCard. Upon review of
the 19,930 case and task notes that TrialCard produced, we have identified 1,528
for which we would like TrialCard to produce the associated audio recording
and/or transcript. *See* May 12, 2023 Ltr. from G. Carotenuto to A. Dunlap, at 2.
Those calls are identified in the attached spreadsheet.

Please let us know by April 1, 2024 when you will be able to make this pro-
duction.

Sincerely,

Hannah Miles

Hannah R. Miles
Associate

# Exhibit 60



www.pbwt.com

April 23, 2024

Elisabeth Shane
(212) 336-2659

**By Email**

Hannah Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re: **TrialCard Call Recordings**
***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Hannah:

We understand that you have sent TrialCard a letter dated March 26, 2024 seeking the audio recordings and transcripts associated with 1,528 case and task notes produced by TrialCard. We write in our capacity as counsel for JJHCS to address related issues.

Based on our understanding of your request to TrialCard, it appears that SaveOnSP is seeking the recordings and transcripts associated with case and task notes produced by TrialCard that hit on the term SaveOnSP or any variation thereof.

As you will recall, SaveOnSP agreed to produce "recordings of communications with persons enrolled in health plans advised by SaveOnSP concerning SaveOnSP's services and either CarePath or Janssen Drugs, identified during a reasonable search, that are reasonably accessible." *See* SaveOnSP's Response to JJHCS's RFP No. 54. These recordings are the conceptual equivalent of what SaveOnSP now seeks from TrialCard—namely, communications with persons likely enrolled in CarePath relating to SaveOnSP. Yet, notwithstanding SaveOnSP's prior agreement to produce them, SaveOnSP later refused to do so. *See* Mar. 29, 2023 Ltr. from A. Dunlap to H. Sandick, at 4.

In light of SaveOnSP's March 26 demand for recordings, SaveOnSP's refusal to produce its own relevant recordings is untenable. Accordingly, please confirm that SaveOnSP will produce the recorded calls it has identified with patients who spoke to SaveOnSP and were prescribed a Janssen drug.

Hannah Miles, Esq.
April 23, 2024
Page 2

Very truly yours,

/s/ Elisabeth Shane
Elisabeth Shane

# Exhibit 61



www.pbwt.com

May 7, 2024

Elisabeth Shane
(212) 336-2659

**<u>By Email</u>**

Hannah Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:  **SaveOnSP's Call Recordings**
>  ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC**,*
>  <u>**Case No. 2:22-cv-02632 (JKS) (CLW)**</u>

Dear Hannah:

We write in response to your April 26, 2024 letter and further to our prior correspondence regarding the same.

As you know, JJHCS recently requested that SaveOnSP produce recorded calls and transcripts with patients who spoke to SaveOnSP and were prescribed a Janssen drug.  *See* Apr. 23, 2024 Ltr. from E. Shane to H. Miles.  We understand that, although SaveOnSP seeks the equivalent production from TrialCard (namely, communications with persons likely enrolled in CarePath relating to SaveOnSP), it objects to JJHCS's request on the basis of the purported burden.  In light of this objection, please specify, in as much detail as possible, the burden associated with producing the call recordings and transcripts that JJCHS requested in its April 23 letter.  Please also explain what steps SaveOnSP has taken over the last thirteen months to "investigate ways to expedite the export" of responsive call recordings and transcripts, including any strategies it has identified to do so.  Mar. 29, 2023 Ltr. from A. Dunlap to H. Sandick at 4.  We appreciate that there can be burdens associated with producing call records on both sides and would like to work with you to find a mutually acceptable solution.

To facilitate our discussion, please also let us know if SaveOnSP's burden concerns would be alleviated if its production were limited to the following two categories.  *First*, all call recordings and transcripts associated with calls to TrialCard with or without a patient on the line regarding a Janssen drug.  For the avoidance of doubt, this includes, but is not limited to, recordings and transcripts of all calls designated as "manufacturer calls" within Column P of the attached "JJHCS Requested Recordings" spreadsheet.  *Second*, to the extent these recordings and transcripts are not captured by the prior request, all recordings and transcripts associated with the calls identified in the attached spreadsheet.

Hannah Miles, Esq.
May 7, 2024
Page 2

We look forward to hearing from you and discussing these matters further.

Very truly yours,

*/s/ Elisabeth Shane*
Elisabeth Shane

# EXHIBITS 62-64
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 65



September 29, 2023

Katherine Brisson
(212) 336-2552

**BY EMAIL**

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
       (Case No. 2:22-cv-02632-ES-CLW)

Dear Emma:

      We write on behalf of TrialCard in response to your September 20, 2023 letter, and further to our correspondence on the same topic.

      Request Nos. 5, 20, 22, and 27.  TrialCard will produce documents that are responsive to Request Nos. 5, 20, 22, and 27 and that hit on the search terms identified in our August 24 letter.  *See* Aug. 24, 2023 Ltr. from K. Brisson to E. Holland at 2, n.1.  These search terms were designed to yield documents responsive to these specific Requests.  TrialCard will produce responsive, non-privileged documents that hit on these search terms whether or not they relate to benefits investigations; however, we otherwise decline to specifically search for, collect, and produce documents relating to benefits investigations.

      Request No. 3.  TrialCard agrees to produce case and task notes that are responsive to SaveOnSP's proposed search terms "zero out of pocket," "zero OOP," and "zero out-of-pocket."  We trust that this resolves any remaining dispute on this issue.

      Custodians.  As we have explained at length, the four existing TrialCard custodians—Sini Abraham, Paul Esterline, Rick Fry, and Holly Weischedel—had operational and strategic responsibilities for the issues about which you have sought document production.  During the relevant time period, Ms. Weischedel held multiple roles at TrialCard, including positions in Client Services and Strategic Accounts.  Ms. Abraham has similarly held roles in Client Services, Market Access Operations, and Hub Services.  Mr. Esterline has held various roles in Analytics and Strategic Accounts.  And Mr. Fry has held roles in both Client Solutions and Client Services. Again, we encourage you to review the documents TrialCard produces from these four custodians to make an informed assessment about whether additional custodians are warranted.

Emma Holland, Esq.
September 29, 2023
Page 2

        You nevertheless assert that additional custodians are required because the existing custodians "do not appear to be involved in communications with CarePath patients or tracking CarePath and copay assistance payments." Sept. 20, 2023 Ltr. from E. Holland to K. Brisson at 2. This concern does not justify your expansive request. As you know, TrialCard has already produced over 19,000 call and task notes describing communications with CarePath patients, and we have agreed to supplement that production as described above. We have similarly produced CarePath claims and enrollment data. These productions, along with the custodial productions described above, adequately address the issues you have raised.

        Further, we decline to provide hit counts for each of the twelve additional custodians you have proposed. As you know, TrialCard cannot simply run a hit report without first collecting the custodial files of all of SaveOnSP's proposed custodians. This step is itself a burdensome and unnecessary undertaking for the reasons we have explained at length in our prior correspondence and herein. You also suggest that there is some "magical" number of documents— which you apparently believe to be greater than 37,000—that a third-party must review to satisfy its discovery obligations. Suffice it to say, we disagree (as do your business partners at Express Scripts, Inc. and Accredo Health Group, which have yet to make any custodial productions, aided in their efforts to avoid discovery by supporting affidavits from SaveOnSP counsel). Finally, we refer you to our prior correspondence on the issue of fees and costs.

        <u>Custodial Search Terms.</u> TrialCard declines to add your proposed search terms as they are irrelevant to the requests for which TrialCard has agreed to produce custodial documents. As we have explained, TrialCard will not produce documents that generally relate to copay accumulator and maximizer programs, nor will it produce documents that mention Express Scripts or Accredo absent reference to SaveOnSP. *See* July 13, 2023 Ltr. from K. Brisson to E. Holland at 1 ("TrialCard agrees to search for and produce nonprivileged custodial documents expressly referencing SaveOnSP in response to Request Nos. 8, 9, 11, 12, 13, 14, and 15."). Contrary to your assertion, TrialCard's discovery obligations do not require it to undertake a large-scale substantive document review to determine whether a document "capture[s] discussions of SaveOnSP when it is not expressly mentioned." Sept. 20, 2023 Ltr. from E. Holland to K. Brisson at 2. First of all, we do not see how this suggestion is even feasible, as it would require an exercise in mind-reading to know when someone is secretly referring to SaveOnSP. In any event, this proposal is disproportionate to TrialCard's obligations as a third-party, and TrialCard will not undertake to do so.

        As previously explained, we have produced all retention documents we have been able to identify based on a reasonable investigation for the applicable timeframe. We have added "retention policy" out of a good faith effort to satisfy any lingering concerns you may have but we are unwilling to adopt your proposed stand-alone "Retention Polic*" search term.

        Finally, Request Nos. 18(i)-(m), which seek such information as the dates on which Patients were enrolled in CarePath, the amounts of co-pay assistance provided to those Patients, and the Janssen Drugs for which they received assistance, do not require a custodial production. These documents are centrally stored and those documents have been or will be produced, either

Emma Holland, Esq.
September 29, 2023
Page 3


by TrialCard, JJHCS, or both.  As we have stated previously, to the extent the custodial files of
Abraham, Esterline, Fry, and Weischedel include non-privileged documents responsive to Request
Nos. 18(i)-(m), we will produce them.  *See* July 13, 2023 Ltr. from K. Brisson to E. Holland at 1.
We decline, however, to add new custodians or run additional search terms specific to this Request.

Very truly yours,


*/s/ Katherine Brisson*
Katherine Brisson

# Exhibit 66



January 12, 2024

Sara A. Arrow
(212) 336-2031

**<u>By Email</u>**

Elizabeth Snow, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
       <u>**Case No. 2:22-cv-02632 (JKS) (CLW)**</u>

Dear Elizabeth:

On behalf of TrialCard, we write in response to your December 27, 2023 letter concerning the February 17, 2023 subpoena (the "Subpoena") served on TrialCard and our related email correspondence.

Suffice it to say, we disagree with the statements in your December 27 letter, including for the reasons we have explained at length in discovery letters and during the conferral process. *See, e.g.*, Dec. 6, 2022 Ltr. from S. Arrow to H. Miles; Dec. 22, 2023 Ltr. from S. Arrow to E. Snow. As we have explained, SaveOnSP's request to the extend the scope of the Subpoena at least nine months beyond the service date is improper and contrary to the Federal Rules of Civil Procedure.

In the interest of finality, we write to confirm that we are at impasse with respect to the applicable time period for the Subpoena. TrialCard does not consent to submit this dispute to Judge Wolfson.

TrialCard reserves all rights.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

# Exhibit 67

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

selendy
gay
elsberg

Emma Holland
Associate
212 390 9364
eholland@selendygay.com

July 26, 2023

**Via E-mail**

Katherine Brisson
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
kbrisson@pbwt.com

**Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear Katherine,

We write in response to your July 13, 2023 and July 19, 2023 letter regarding TrialCard, Inc.'s ("TrialCard") response to the subpoena served by Save On SP, LLC ("SaveOnSP") and in further response to your June 7, 2023 letter on that subject.

*First*, in your July 13 letter, you state that TrialCard agrees to produce documents from non-custodial sources in response to Request No. 3, but, to the extent custodial files include non-privileged documents responsive to those requests, you will produce them. This is not sufficient. Request No. 3 seeks documents and communications "with or regarding SaveOnSP, including those between You and JJHCS, You and any patients, and You and any other Hub Entity." A reasonable search for documents responsive to this Request must include a search of custodial files that are likely to contain such communications. Please confirm that TrialCard will add custodians likely to have documents responsive to this Request and will produce such documents. Also in your June 7 letter, regarding Request No. 3, you decline to add the search terms "OOP" and "out-of-pocket." We propose that TrialCard instead use the terms "zero out-of-pocket," which is mentioned frequently in sample patient letters regarding SaveOnSP, *see, e.g.*, TRIALCARD_00000119, and the similar terms "zero OOP", "no OOP", and "no out-of-pocket." Please confirm that TrialCard will add these four search terms.

*Second*, in your June 7 letter, you stated that TrialCard did not have any documents responsive to Request Nos. 5, 6, 7, 8, 10–17, 20–22, 24–25, 29, and 32

Katherine Brisson
July 26, 2023

beyond those that it had agreed to produce at that point. In your July 13 letter, you state that TrialCard will now perform a custodial search for documents responsive to Request Nos. 8-9 and 11-15, which includes six of those Requests. Please tell us if TrialCard will produce documents responsive to Request Nos. 5, 6, 7, 16–17, 20–22, 24–25, 29, and 32 beyond those that it has already agreed to produce.

*Third*, in your June 7, 2023 letter, you stated that TrialCard would not produce documents responsive to Request Nos. 13-15, 17, 20, and 22, stating that "TrialCard would have furnished any such deliverables to JJHCS, which in turn would be captured by JJHCS's document production" and documents "not furnished to JJHCS" are irrelevant. In your July 13 letter, you state that TrialCard will now perform a custodial search for documents responsive to Request Nos. 8-9 and 11-15, which includes three of those Requests. Please tell us if TrialCard will produce documents responsive to Request Nos. 17, 20, and 22.

Regarding Request No. 22 specifically, which seeks all Documents and Communications regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans, JJHCS recently disclosed that TrialCard has responsive material. JJHCS has stated in its Responses and Objections to SaveOnSP's Second Set of Interrogatories, that ███████████████████████ ████████████████████████████████████████████████ ███████████████████████ *See* JJHCS's R&Os to SaveOnSP's Second Set of Interrogatories at 4. Those ████████████ ███████████████████████████████████ are responsive to this request and relevant to the claim and defenses at issue. Please tell us whether TrialCard will produce them.

*Fourth*, you state that TrialCard will perform a custodial search for documents responsive to Request Nos. 8, 9, and 11-15 but only those that expressly reference SaveOnSP. This is insufficient, as documents regarding SaveOnSP may well not reference SaveOnSP expressly. For example, TrialCard should produce documents referring to maximizers and Express Scripts, ███████████████████ ███████████. *See, e.g.*, JJHCS_00081459 (JJHCS email saying that ████████████████████████████████████████████████ ███), JJHCS_00081461 (report attached to JJHCS_00081459 stating that ███████████ ████████████████████████████████), JJHCS_00008991 (JJHCS email referring to ██████████████████████████). Please confirm that TrialCard will search for documents relating to SaveOnSP beyond those expressly referencing SaveOnSP.

*Fifth*, in your July 19, 2023 letter you propose a handful of search terms that TrialCard intends to use for its custodial search. You propose the term SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP as an independent search but use (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org*

Katherine Brisson
July 26, 2023

chart" OR "retention policy") to limit all three other proposed searches. In effect, you propose only SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP as a search term, plus a few searches for "org* chart" OR "retention policy." In searching for documents responsive to Request Nos. 8, 9, and 11-15, TrialCard should search for documents referring to SaveOnSP, without expressly naming it. We request that TrialCard supplement its list of proposed search terms with the terms on Appendix A. If JJHCS refuses to use any of these terms, please explain why. If JJHCS asserts that using any of these terms would be unduly burdensome, please provide a hit count of how many unique documents the proposed term generates.

*Sixth*, in your July 13, 2023 letter, you state that TrialCard does not intend to produce any documents that are also in the possession of JJHCS. This is insufficient. A non-party may not withhold documents simply because it shared those documents with a party to the litigation. *See Wyeth v. Abbott Lab'ys*, No. 08-230 (JAP), 2011 WL 2429318, at *8 (D.N.J. June 13, 2011). You also do not confirm that JJHCS has produced all relevant documents that are in the possession of both JJHCS and Trial Card. Please confirm that TrialCard will not withhold responsive documents on the basis that it believes that they are in JJHCS's possession.

*Seventh*, in your July 13, 2023 letter, you propose that Trial Card designate only Holly Weischedel and Sini Abraham as custodians. We propose that TrialCard also add the following individuals as custodians, as JJHCS's production shows that they have relevant documents. Please confirm that TrialCard will add:

- **Richard ("Rick") Ford.** Ford is the Vice President of Market Access at TrialCard and ████████████████. *See, e.g.*, JJHCS_00011226 (████████████████████████████). Ford also explained to other TrialCard vice presidents how ████████████████ *Id.*, JJHCS_00003009.



- **Jason Zemcik.** Zemcik is the Senior Director of Product Management, JJHCS_00001595, and ████████████████ *See* JJHCS_00003059. ████████████ *See* JJHCS_00026255.



- **Rick Fry.** ████████████████

3

Katherine Brisson
July 26, 2023



- **Jimmar Wilson.** Wilson is a Training Manager. *See* JJHCS_00058358.

- **Dorothy Williams.** Williams is a Trainer whose work includes Care-Path training. *See* JJHCS_00126193.

- **Amber Maldonaldo**. Based on email communications Maldonaldo sent to other TrialCard employees and to employees at JJHCS, JJHCS_00006991, JJHCS_00005061. Maldonaldo both sent and received information that is directly relevant to JJHCS's response to SaveOnSP. JJHCS_00006991, JJHCS_00005543.

- **April Harrison.** April Harrison is an Associate Director of Client Services at TrialCard, JJHCS_00104674, and as such, *See, e.g.,* JJHCS_00008733, JJHCS_00008584. Harrison has been *See* JJHCS_00002344.

- **Tony McInnis.** As the Escalation Manager, McInnis . *See* JJHCS_00002774. These patient communications would very likely include patient complaints, to the extent there are any, regarding stress, confusion or other harm. McInnis has received emails that . *See* JJHCS_0005543.

- **Tommy Gooch**. As TrialCard's Implementation Project Manager, JJHCS_00001885, *See, e.g.,* JJHCS_00005784, JJHCS_00008104. Gooch also communicated with JJHCS and TrialCard employees regarding

Katherine Brisson
July 26, 2023



*See* JJHCS_00008050, JJHCS_00004076.

- **Paul Esterline**. Esterline received inquiries from JJHCS employees regarding ████ JJHCS_00007521. Esterline also ████ JJHCS_00008104, and another email and discussion regarding ████, JJHCS_00005543.

- **Lynsi Newton**. Newton ████. TRIALCARD_00000201. ████ *See* JJHCS_00004607, JJHCS_00004608, JJHCS_00004611.

- **Kimberly Spencer**. Spencer ████ TRIALCARD_00000201. ████, JJHCS_00122619, and thus may have information regarding SaveOnSP's alleged financial harm to JJHCS.

- **JeLisa Irving**. Irving ████ TRIALCARD_00000201. Irving is ████ JJHCS_00126221. ████

- **Philip Sloate**. Sloate ████. TRIALCARD_00000201. ████

- **Samone Evans**. Evans ████

Katherine Brisson
July 26, 2023

> TRIALCARD_00000201. ███████████████████████████
> ████████████████████████████████████████████████
> ██████████████████████████████████████████ *see*,
> JJHCS_00104997, JJHCS_00105016, so she is likely to have infor-
> mation on any complaints about SaveOnSP.

- **Mariel Chahin**. Chahin is an Associate Program Director at TrialCard. JJHCS_00004713. Chahin communicated with JJHCS employees related to ████████████████████████████████████████████████
████████████████████████████████████████ *Id*. Chahin was also involved in ███████ JJHCS_00073983, JJHCS_00082761. Chahin's records will likely include any comments by patients regarding SaveOnSP or Save-OnSP's alleged harm to JJHCS.

*Eighth*, in your June 7, 2023 letter, you state that TrialCard produced its only company-wide document retention policy, which was published in 2023. Please either produce retention policy was operative from April 1, 2016 to July 1, 2022 or state that TrialCard had no such policies prior to 2023.

*Ninth*, the organizational chart that TrialCard provided at TRIAL-CARD_00000200, is illegible as produced. Please reproduce this document in a legible form.

*Finally*, please confirm that you will produce data dictionaries for data you produce in response to Request No. 31.

We request a response by August 2, 2023. We reserve all rights and are available to meet and confer.

Best,

/s/ Emma Holland

Emma C. Holland
Associate

Katherine Brisson
July 26, 2023

**Appendix A**

| No. | JJHSC's Proposed Search Terms[1] | New Search Term | Basis |
|---|---|---|---|
| 1 | SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP | SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "Save OnSP" OR Maximize* OR ("Express Scripts" OR ESI) OR Accredo OR CAP* | As explained above, TrialCard should produce documents referring to SaveOnSP without referencing it explicitly. |
| 2 | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | Note for all of these searches, the only documents that will not be captured by the first search term is documents with the terms "org* chart" OR "retention policy" which will return documents responsive to Request Nos. 1, 2, and 30. However, in your July 13 letter, you state that TrialCard agreed to produce documents from non-custodial sources in response to Request Nos. 1, 2, 3, 18(i)-(m), and 30, but would not directly search custodial records for responsive documents. |
| 3 | (CarePath OR "Care Path") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | (CarePath OR "Care Path") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | |
| 4 | (Accumulator OR Maximizer) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | (Accumulator OR Maximizer) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | |

[1] All proposed search terms cover the period of April 1, 2016 to July 1, 2022 (the "Relevant Time Period"). Please tell us if you do not agree to search all documents during this time period.

Katherine Brisson
July 26, 2023

| No. | JJHSC's Proposed Search Terms[1] | New Search Term | Basis |
|---|---|---|---|
| 5 | | "Retention Polic*" | To the extent TrialCard intends to search custodial documents for retention policies published prior to 2023 we do not believe that limiting your search to policies that mention Johnson & Johnson, JJHCS, CarePath, Accumulators, or Maximizers will return retention policies applicable to all of TrialCard. |

# Exhibit 68



January 26, 2024

Caroline Zielinski
(212) 336-2206

**By Email**

Taylor Stone, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

    Re: ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
       **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Taylor,

    We write in response to your January 2, 2024 letter concerning JJHCS's privilege log and further to related correspondence.[1]

    After reviewing the documents that you identified in your letter, we no longer seek to fully withhold or maintain all of the redactions in the documents listed in Appendix A to this letter. Accordingly, JJHCS will produce these documents either in full or with more limited redactions in a forthcoming production.

    With respect to the documents you identified that are not listed in Appendix A, we disagree with the assertions raised in your letter. These documents were properly withheld pursuant to applicable privileges, including the attorney-client and/or the work product privileges. To address your contentions, JJHCS provides additional information about those documents below.

    **Exhibit 1 Documents.** SaveOnSP first asserts that approximately 160 documents on Exhibit 1 were improperly withheld based on attorney-client privilege "without indicating that they involve communications with counsel." Contrary to SaveOnSP's assertion, JJHCS's privilege log indicates that an attorney was the author or recipient of multiple of the identified documents in this category. *See* PL000002020 (email in which S. Harris is the author); PL000002021 (email in which S. Harris is the recipient); and PL000001630 (email in which C. Bosch is copied). In addition, Exhibit 1 includes draft documents properly withheld pursuant

---

[1] We have separately addressed SaveOnSP's request for an updated privilege log and a log of all partially redacted documents. *See* Jan. 11, 2024 Ltr. from J. Long to E. Snow.

Taylor Stone, Esq.
January 26, 2024
Page 2

to the attorney-client privilege because they include comments from JJHCS's in-house attorneys reflecting legal advice related to the operation of JJHCS's copay assistance programs, including training modules, work orders, and terms and conditions.  *See, e.g.*, PL000000049 (comments from J. De Camara), PL000002012 (comments from C. Bosch); PL000002762 (comments from M. Shea).  Assertion of the attorney-client privilege in this circumstance is based on well-established law.  *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prods. Mtking, Sales Practices, & Prods. Liability Litig.*, 2021 WL 3144945, at *6 (D.N.J. July 26, 2021) (sustaining attorney-client privilege assertions with respect to "draft documents containing [an in-house attorney's] comments" as they "reflect [their] legal input and analysis").

Moreover, whether an attorney is listed as an author or recipient of a document does not determine whether a document is properly withheld pursuant to the attorney-client privilege. The attorney-client privilege extends to communications comprising a discussion of legal analysis regardless of whether an attorney is included on the communication.  *See, e.g.*, *Engage Health Comms., LLC v. Intellisphere, LLC*, 2017 WL 10259770, at *3 (D.N.J. Sept. 12, 2017), *report & recommendation adopted* 2017 WL 10259774 (Nov. 21, 2017) (explaining that a document comes within the attorney-client privilege even if it reflects a "communication between two non-attorneys" as long as it "reflect[s] the [provision of] legal advice").  JJHCS has properly withheld documents included in Exhibit 1 that reflect legal analysis and incorporate requests for legal advice pertaining to the design and implementation of JJHCS's copay assistance programs.  *See, e.g.*, PL000000256; PL000000226; PL000000244; PL000000246; PL000000227.  *See also In re Johnson & Johnson*, 2021 WL 3144945, at *10 (explaining that the "absence of an attorney on a document is not necessarily determinative" as "[c]ommunications remain privileged if they assist [an] attorney to formulate and render legal advice" (internal quotation marks and citation omitted)).

**Exhibit 2 Documents.**  SaveOnSP next argues that JJHCS improperly withheld information in approximately 90 documents on Exhibit 2, because the documents "do not appear privileged based on their descriptions."  SaveOnSP provides no legal authority for its suggestion that the provision of legal advice must be apparent from the document's description.  To the contrary, the privilege determination depends on an assessment of whether the underlying document includes disclosures "necessary to obtain informed legal advice."  *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *4 (D.N.J. Dec. 5, 2016), *on reconsideration in part*, 2017 WL 11633446 (D.N.J. Jan. 5, 2017) (quoting *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423-24 (3d Cir. 1991)).  As with Exhibit 1, many of the documents on Exhibit 2 were properly withheld because they convey legal advice from JJHCS's in-house attorneys, *see, e.g.*, PL000001075 (reflecting legal advice from J. Williams on draft presentation); PL000000424 (conveying legal advice from J. De Camara); PL000000097 (reflecting J. De Camara's legal advice), or reflect requests for legal advice, *see, e.g.*, PL000000097 (identifying areas for which legal advice was required); PL000000427 (same); PL000000414 (same).  In addition, as JJHCS's privilege log indicates, PL000002242 was properly withheld pursuant to the attorney-client and work product privileges as it reflects an attorney-client communication relating to litigation strategy.

Taylor Stone, Esq.
January 26, 2024
Page 3

**Exhibit 3 Documents.** SaveOnSP contests that JJHCS improperly withheld approximately 130 "calendar invites" included in Exhibit 3. Although neither the attorney-client nor the work product privilege applies to "the facts underlying any given communication," a "communication concerning that fact is entirely different." *La. Mun. Police Employees Retirement Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 305 (D.N.J. 2008); *In re Johnson & Johnson*, 2021 WL 3144945, at *4. Email communications accompanying the calendar invitations at issue in Exhibit 3 were properly withheld when they reflect discussions with JJHCS's legal team regarding strategies for this litigation. *See* PL000001253 (email communication with S. Harris regarding strategy for current litigation); PL000001257 (same); PL000002117 (email from S. Harris explaining purpose of meeting tied to litigation strategy); PL000001913 (same); PL000001919 (same); PL000001920 (same). Likewise, information underlying requests for legal advice, to be discussed at upcoming meetings with counsel, was also properly withheld. *See, e.g.*, PL000000398 (email reflecting areas for legal input for discussion at meeting with in-house counsel); PL000001217 (email explaining topics for discussion at upcoming meeting with S. Harris); PL000000820 (same); PL000000821 (same); PL000001938 (email explaining purpose of call regarding legal questions for S. Harris). That said, after further review, JJHCS will be producing certain calendar invitations previously withheld in redacted form.

**Exhibit 4 Documents.** SaveOnSP identifies approximately 60 documents on Exhibit 4 that it contends were improperly withheld pursuant to the work product privilege. As indicated in JJHCS's privilege log, however, Exhibit 4 includes documents prepared in anticipation of JJHCS's litigation against SaveOnSP. *See, e.g.*, PL000001086 (Oct. 2021 email communication with S. Harris discussing litigation strategy); PL000001108 (same); PL000001088 (October 2021 email communication between S. Harris and outside counsel discussing litigation strategy). Furthermore, contrary to SaveOnSP's description that Exhibit 4 "contains a list of documents withheld solely on the basis of the work product privilege," JJHCS's privilege log indicates that many documents included in Exhibit 4 were also withheld based on application of the attorney-client privilege. These documents include communications with JJHCS's counsel that reflect requests for legal advice or convey counsel's legal analysis regarding the implementation of JJHCS's patient assistance programs. *See, e.g.*, PL000000224 (email with J. De Camara requesting legal advice); PL000001045 (email with J. De Camara reflecting legal analysis).

**Exhibit 5 Documents**. SaveOnSP argues that JJHCS has improperly withheld or redacted approximately 240 documents on Exhibit 5 because the attorney-client privilege was waived through disclosure of these documents to third parties. As an initial matter, Exhibit 5 contains many emails in which no third parties are included on the latest-in-time communications. In those instances, JJHCS employees have forwarded a communication with a third party to JJHCS's in-house counsel to request their legal analysis. *See, e.g.*, PL000001869 (email communication with third party forwarded to S. Harris requesting legal analysis); PL000001854 (same). These documents were properly withheld, as the attorney-client privilege extends to emails which "forward[] [to counsel] prior non-privileged emails" that underlie the request for legal advice and assist the attorney in providing their analysis. *Engage Health*, 2017 WL 10259770, at *3 ("[E]ven though one email is not privileged, a subsequent and privileged email

Taylor Stone, Esq.
January 26, 2024
Page 4

which forwards that prior non-privileged email, will allow the privilege to attach to the entire email chain, including the non-privileged prior email messages." (quoting *Rhoads Indus. Inc. v. Building Materials Corp. of Am.*, 254 F.R.D. 238, 240 (E.D. Pa. 2008)).

　　　　With respect to documents shared with third parties, the attorney-client privilege is maintained when an independent consultant acts as the "functional equivalent" of the party's employee and the communication with the third party was "kept confidential and made for the purpose of obtaining or providing legal advice."  *In re Johnson & Johnson*, 2021 WL 3144945, at *9 (citing *In re Flonase Antitrust Litig.*, 879 F. Supp. 2d 454, 460 (E.D. Pa. 2012)); *see id.* (explaining that communications between Johnson & Johnson and its consultants, "even in the absence of an attorney . . . may be privileged if they are necessary for the client to obtain[] informed legal advice"); *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *6, *8 (applying functional equivalent doctrine to documents between party and public relations and communications consultants).

　　　　This legal principle recognizes that "in-house counsel should be able to communicate freely with consultants about legal issues without being chilled by the prospect that their communications will be produced to an adversary in discovery."  *In re Johnson & Johnson*, 2021 WL 3144945, at *9.  Documents listed in Exhibit 5 were appropriately withheld pursuant to this standard because they include confidential communications between JJHCS and third parties relating to information requested by or provided to JJHCS's attorneys to assist in their analysis of legal issues.  *See, e.g.*, PL000002658 (email in which third party provides information requested by JJHCS's counsel to assist in the provision of legal advice); PL000002370 (same); PL000002292 (email in which JJHCS's counsel requests information necessary to provision of legal advice); *see also In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *9 (holding that information provided by third party "needed by [party's] attorneys to render legal advice" is privileged).  Exhibit 5 also includes documents protected by the attorney-client privilege because they convey the legal analysis of JJHCS's attorneys.  *See, e.g.*, PL000001908 (email conveying legal advice); PL000001750 (draft document reflecting legal advice); PL000001751 (same).  *See also In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *10 (finding documents shared with third party were privileged where the "documents indicate[d] actual legal advice was conveyed" including an "email asking for legal insight" or an "email referring to attorney advice"); *In re Johnson & Johnson*, 2021 WL 3144945, at *7 (finding documents shared with third party privileged where they were reviewed by counsel "with a view towards legal issues").

　　　　　　　　　　*　　　*　　　*

　　　　Finally, based on our review of SaveOnSP's revised privilege log dated October 10, 2023, we have identified several areas of concern, where it appears that SaveOnSP has inappropriately redacted or withheld certain documents that should have been produced.  For example, the following documents appear on SaveOnSP's privilege log:

- **Emails that were sent to or from third parties.** *See, e.g.*, SOSP_0817331 (an email fully withheld for privilege from an individual with a "RideMetro.Org"

14884356

Taylor Stone, Esq.
January 26, 2024
Page 5

domain to Claudia Dunbar, Ron Krawczyk, Jill Stearns, and two individuals at
Express Scripts Inc. ("ESI")); SOSP_0827911 (an email redacted for privilege
including Michael Kirchhoff with an ESI domain); SOSP_0828613 (an email
redacted for privilege including Aaron Mallin with an ESI domain);

- **Inconsistent privilege calls.**  *See* SOSP_0832627, which is an attachment titled
  "JnJ letter page 2.pdf."  This document was withheld as privileged even though
  "page 1" of this same attachment was produced; and

We have identified similar issues for the following documents that have not yet
been logged on SaveOnSP's privilege log:

- SOSP_0940021, which is a spreadsheet reflecting notes on SaveOnSP calls with
  external parties, including Allina Health System, International Association of Heat
  and Frost Insulators Local 17 Welfare Fund, SKC, Inc., AmerisourceBergen
  Corporation, and HealthSmart; and

- SOSP_1034728, which is text message exchange involving no lawyers that was
  sent to and from a third party.

Please explain by February 2, 2024 why you have withheld or redacted the specific
documents identified above.  In the event you no longer wish to assert privilege over any of the
documents identified herein, please promptly produce them.

Finally, in response to your SaveOnSP's January 25, 2024 letter, we can confirm
that JJHCS has included, and will continue to include, all thread participants on emails included
on its privilege logs.  Thank you for confirming that SaveOnSP will correct its privilege log to
address this issue and to adopt this practice moving forward.  *See* Jan. 25, 2024 Ltr. from E. Snow
to J. Long.  Please confirm that you will provide the corrected version of your privilege log by
February 13, 2024.

Very truly yours,


*/s/Caroline Zielinski*
Caroline Zielinski

14884356