

www.pbwt.com

January 22, 2024

Harry Sandick
Partner
(212) 336-2723
hsandick@pbwt.com

**By Email**

Hon. Freda L. Wolfson
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

> Re:    **JJHCS's Opposition to SaveOnSP's January 16 Motion to Compel**
> *Johnson and Johnson Health Care Systems, Inc. v. SaveOnSP, LLC*
> <u>**No. 2:22-cv-02632 (JKS) (CLW)**</u>

Dear Judge Wolfson:

On behalf of Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), we write in opposition to the January 16, 2024 letter motion by Defendant SaveOnSP, LLC ("SaveOnSP") seeking additional relief on the six "CAP custodians" that were the subject of previous motion practice and Judge Waldor's November 7, 2023 order.

Once again, SaveOnSP is making motions that misstate the record and seek the production of documents that go well beyond what was previously briefed and decided. SaveOnSP asked Judge Waldor to compel JJHCS to produce additional discovery relating to its "CAP program," beginning in 2021, including through custodians who SaveOnSP insisted were "likely to have unique documents relating to the CAP program." D.E. 165 at 7–8; D.E. 166 at 2–3. At oral argument on October 30, SaveOnSP explained that it sought the designation of "seven custodians who we specifically identified as related to the CAP program," as well as CAP-focused search terms covering a "year and a half," starting "in 2022"—as counsel acknowledged, "we are not talking about a very long time period here." Oct. 30 Tr. at 76:3–78:20. Judge Waldor granted

Hon. Freda L. Wolfson
January 22, 2024
Page 2

some but not all of the CAP-focused relief SaveOnSP sought. She decided to "open the doors on CAP," directed JJHCS to add six custodians "with respect to the CAP program," and even provided search parameters and a time period of "January 1, 2022 through the present" for additional CAP discovery. *See* Oct. 30 Tr. at 56:1; D.E. 173 at 2–3. JJHCS has followed this ruling to the letter.

Yet now SaveOnSP claims that Judge Waldor actually wanted JJHCS to produce documents from these "CAP custodians" not just about the CAP program, but on all manner of topics going back to April 1, 2016—*five years* before the CAP program began. SaveOnSP's expansive reinterpretation is inconsistent with its own previous arguments and irreconcilable with Judge Waldor's ruling. Indeed, this is the third letter brief to Your Honor in which SaveOnSP has claimed to construe Judge Waldor's intent while studiously avoiding any citation to the October 30 conference, at which these very issues were discussed for several hours. That omission is telling. The full record shows that Judge Waldor granted limited relief as to the CAP program and related custodians; there is no basis to disturb her ruling. Accordingly, Your Honor should deny SaveOnSP's motion. SaveOnSP should focus its considerable energies not on meritless discovery motions but rather on timely completing its own discovery obligations without further delay or distraction.

I.    **SaveOnSP Sought Narrow Relief Related to the CAP Program**

SaveOnSP asked Judge Waldor to compel JJHCS to add certain custodians due to their ostensible involvement in the "CAP Program," beginning "in or around 2021"—in particular, because SaveOnSP insisted that documents about the CAP program were "crucial." D.E. 165 at 7–8. The relevant portion of SaveOnSP's motion is excerpted below:

Hon. Freda L. Wolfson
January 22, 2024
Page 3



*Id.* (highlighting supplied).

SaveOnSP then repeated this rationale as to the individual custodians—that each was "likely to have unique documents regarding the CAP program," which, again, was created "in or around 2021." *See, e.g.*, *id.* at 8 ("Kinne is likely to have unique documents regarding the CAP program"), 9 ("Longbothum is likely to have unique documents regarding the CAP program"), *et seq.* And SaveOnSP expressly linked its motion to a "forthcoming submission," i.e., a follow-on SaveOnSP motion on the same subject of CAP program discovery:

| SaveOnSP Motion, D.E. 165, at p. 7 | SaveOnSP Motion, D.E. 166, at pp. 2–3 |
|---|---|
| As described in more detail in a forthcoming submission, in or around 2021, JJHCS created its CAP program as part of an effort to respond to accumulators and maximizers… | In or around 2021, J&J created a program called a "cost adjustment program" or "copay adjustment program" ("CAP"), as part of an effort to "adjust" the amount of copay assistance payments that J&J made to patients who were on accumulators and maximizers…. |

Hon. Freda L. Wolfson
January 22, 2024
Page 4

## II. Judge Waldor Addressed and Resolved Both CAP Motions Together, Ordering Narrower Relief than SaveOnSP Sought

Because SaveOnSP had filed two motions on the same topic, Judge Waldor chose to address them together, and took up SaveOnSP's requested "CAP custodians" during an extended colloquy about what JJHCS should produce "in terms of CAP." *See* Oct. 30 Tr. at 54:8–56:6 *et seq.* As part of that colloquy, after SaveOnSP's counsel described his request for CAP-focused search terms, he characterized SaveOnSP's ask as modest and focused:

> MR. ELSBERG: …the CAP program started in -- thank you -- in 2022. So we are not talking about a very long time period here.
>
> THE COURT: So in terms of search terms for CAP A, CAP M, and adjustment programs, it's 2022 through today.
>
> MR. ELSBERG: Yes. It's 2022 through whatever date it is that they're seeking damages.

*Id.* at 77:4–12. Judge Waldor then again sought to confirm the CAP relief SaveOnSP requested as to the so-called CAP custodians. *Id.* at 77:16–17 ("THE COURT: What about these seven custodians that we were talking about before?"). Notably, SaveOnSP's counsel did ***not*** say that the seven employees were relevant to issues other than CAP, or that Judge Waldor should compel JJHCS to produce documents from them going back five years before the CAP program began. Just the opposite: SaveOnSP's entire argument was that these employees should be added because they were "***specifically identified as related to the CAP program***," and asked Judge Waldor to grant the motion as to the "six custodians where we have strong evidence of their [involvement] in CAP." *Id.* at 77:21–20 (emphasis supplied).

It is in this context—an extended discussion of CAP-related discovery across two overlapping motions—that Judge Waldor's November 7 order arose. In that order, she directed

Hon. Freda L. Wolfson
January 22, 2024
Page 5

JJHCS to add "six of the custodians that SaveOnSp identified with regard to the CAP program," as SaveOnSP's counsel had specifically requested. D.E. 173 at 2. And she ordered JJHCS to run specific "custodial document searches," directly tied to the CAP-related terms discussed at the conference,[1] for the narrow time period of "January 1, 2022 to the present." *Id.* at 2–3.

Thus, SaveOnSP's present insistence that the two motions were "separate" and that "Judge Waldor resolved them separately" is refuted by the record. This is why SaveOnSP completely ignores the October 30 transcript when it insists that Judge Waldor intended to order extremely broad discovery from these CAP custodians going back to 2016, five years before the CAP program began. One will search the October 30 transcript in vain for any evidence that this was Judge Waldor's intent. Instead, she said the opposite: "I'm going to open the doors **on CAP**." Oct. 30 Tr. at 56:1 (emphasis supplied).[2]

---

[1] Although it is not material to this dispute, for purposes of ensuring a clear record we note that SaveOnSP's letter incorrectly describes the search string Judge Waldor ordered JJHCS to run. *See* SaveOnSP Jan. 16, 2024 Letter at 2 n.1. Citing its own previous motion, D.E. 166, SaveOnSP claims that Judge Waldor ordered JJHCS to run the terms listed in footnote 2 of its letter ("CAPa" OR "CAPm" or "adjustment program"). That is not accurate. In fact, Judge Waldor compelled a narrower search of only documents that hit those terms **and** "the term 'SaveOn' (or reasonable variations / abbreviations)." D.E. 173 at 2–3. This was another topic of discussion at the October 30 conference, with SaveOnSP's counsel repeatedly trying to change the "**and** SaveOn" to "**or** SaveOn" to vastly broaden the scope of the search, and Judge Waldor repeatedly and unequivocally declining to do so. *See* Oct. 30 Tr. at 101:14–108:22.

[2] For this reason, SaveOnSP is not helped by its repeated reliance on a single line in D.E. 165, in which it asked the Court "to compel JJHCS to add the above twelve custodians and run all agreed-upon or Court-ordered search terms . . . over their files." D.E. 165 at 15. Simply put, Judge Waldor did not grant that relief. Instead, she ordered JJHCS to produce documents from a smaller number of custodians "with regard to the CAP program" using the far narrower search parameters discussed above.

Hon. Freda L. Wolfson
January 22, 2024
Page 6

### III. There Is No Basis to Expand the Scope of Judge Waldor's Ruling to Unrelated Topics and Irrelevant Time Periods

In the alternative, SaveOnSP seeks a do-over on the grounds that "these custodians have relevant documents that do not contain the terms that J&J says it will use." SaveOnSP Jan. 16, 2024 Letter at 3. The do-over attempt is improper and the justification is a strawman. The real question—particularly now, as this case approaches its two-year anniversary—is whether the employees at issue would have *unique* relevant documents, i.e., documents that are not merely cumulative of what JJHCS has already produced from its sixteen full custodians. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (barring "unreasonably cumulative or duplicative" discovery); *Sugg v. Virtusa*, 2020 WL 6585872, at *2 (D.N.J. Nov. 10, 2020) (denying motion to compel where, as here, the existing custodians included "high-ranking executives in the company, as well as the heads of several relevant business groups," and the movant failed to show that additional requested custodians had "any unique knowledge"). And the answer to the question whether this review would lead to unique documents is no: as JJHCS explained to SaveOnSP in March of 2023, when SaveOnSP first began asking for some of these employees to be added, we have no reason to believe that any of them would have unique, non-privileged documents or communications going back to 2016 that relate to the non-CAP issues in this lawsuit.[3]

---

[3] SaveOnSP itself has observed that, even though JJHCS has designated sixteen "full" custodians, most of its custodial documents came from the files of a core group of four employees most directly involved in the relevant issues. *See* D.E. 165 at 2 (SaveOnSP complaining that "the vast majority" of JJHCS's production "came from only *four* custodians or from noncustodial files"); *id.* at 16 (JJHCS explaining that "[i]f anything, this reflects simply that the relevant knowledge about SaveOnSP's operations was limited to a small number of people at JJHCS, which is not surprising given SaveOnSP's self-professed goal of operating in the shadows"). This prospect of diminishing returns is presumably why Judge Waldor rejected SaveOnSP's blunderbuss demand for twelve more JJHCS custodians after the substantial completion deadline for document production had

Hon. Freda L. Wolfson
January 22, 2024
Page 7

None of the exhibits to SaveOnSP's letter support a different conclusion. For starters, SaveOnSP has had some of the documents it now cites for more than ten months—they were part of JJHCS's very first custodial production—demonstrating how stale SaveOnSP's arguments are. These are documents that could have been presented to Judge Waldor by SaveOnSP in support of its prior motions; SaveOnSP chose not to do so. Moreover, in most of the email chains cited by SaveOnSP, the email involving the CAP custodian at issue is fully redacted for privilege. *See* Ex. 3 at -227; Ex. 5 at -963–64; Ex. 6 at -275. There is, of course, no good reason to add ever-more custodians whose relevant communications are privileged and therefore will not be produced regardless. All else aside, the fact remains that every single JJHCS document now cited by SaveOnSP was already produced from the files of at least one existing JJHCS custodian.[4] Taken together, they confirm that SaveOnSP already has full coverage from JJHCS's existing custodians. There is no reason, other than harassment and delay, for SaveOnSP to demand more.

\*     \*     \*

It is time for this case to move forward, and JJHCS is committed to making that happen. We expect to substantially complete JJHCS's production of documents by the end of January, so that the parties can meet the Court's fact discovery deadline of April 25, 2024. Unfortunately, SaveOnSP has no intention of meeting that deadline. After our last appearance

---

already elapsed, and instead directed JJHCS only to produce additional discovery that was specific to the CAP program.

[4] SaveOnSP also attaches one document produced by a third party, ██████████████████████ ████████████████████████t—who is already a "full" JJHCS custodian.

Hon. Freda L. Wolfson
January 22, 2024
Page 8

before Your Honor, SaveOnSP announced that it "intends" to substantially complete its own

refresh production "by March 31, 2024." That obviously will not leave the parties with enough

time to complete all fact depositions by April 25 as the Court ordered. And the delay is the point.

Every month that this litigation continues is another month that SaveOnSP is able to

misappropriate millions of dollars from JJHCS's patient assistance programs, harming patients

and JJHCS alike. Indeed, SaveOnSP is only making a "refresh production" in the first place

because it renounced the parties' previous agreement on a cutoff date, and unilaterally insisted that

custodial discovery must be carried forward into the present. *See, e.g.*, Oct. 30 Tr. at 97:14–98:2.

Having eagerly sought out that obligation, SaveOnSP cannot use it as an excuse for noncompliance

with yet another discovery deadline.

In light of this development, we request that Your Honor direct SaveOnSP to

substantially complete its production by February 15, so that depositions can proceed and fact

discovery can finally end. SaveOnSP has ample resources to meet the Court's deadline if it focuses

its energies on compliance, and not on the endless re-litigation of meritless motions to compel.

We appreciate Your Honor's attention to this matter, and we are available to answer

any questions.

Respectfully submitted,

*/s/ Harry Sandick*
Harry Sandick

cc:      Counsel for SaveOnSP