# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

February 20, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

<div style="text-align:center">

Re:    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
No. 2:22-cv-02632 (JKS) (CLW)

</div>

Dear Judge Wolfson:

Defendant Save On SP, LLC ("SaveOn") writes to request clarification of portions of Your

Honor's February 6, 2024 Order, Dkt. 192, (the "Order") and reconsideration of other portions.

SaveOn requests three clarifications of the Order. *First*, SaveOn requests clarification that

J&J's enforcement of all CarePath eligibility criteria is relevant, including age limits and re-

strictions against membership in government health pelans, which were discussed at the January

24, 2024 conference before Your Honor. Section I.A. *Second*, SaveOn asks for clarification that

documents relating to CarePath's financial viability are relevant, including those concerning how

J&J sets the annual maximum amount of copay assistance that it offers to patients and how much

money J&J makes from its investment in CarePath even after paying more to patients on SaveOn-

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

advised plans. SaveOn understood Your Honor to rule at the conference that such documents were relevant. Section I.B. *Third*, SaveOn seeks clarification that J&J must produce information sufficient to quantify the monetary benefit SaveOn's conduct generates for J&J. SaveOn understood such information to be part of Your Honor's ruling that J&J must produce documents showing the impact of SaveOn on J&J's sales of the drugs at issue. Section I.C.

SaveOn also requests reconsideration on three points of the Order. *First*, SaveOn asks Your Honor to rule that the reasons why J&J set the annual maximum amounts of copay assistance for the drugs at issue at the levels it did and why J&J chose to maintain those levels after learning of SaveOn's services are relevant to SaveOn's mitigation defense. J&J's failure to change those maximums, especially after considering implementing such changes, would show that it did not take reasonable efforts to avoid any purported damages caused by SaveOn's conduct. Section II.A. *Second*, SaveOn asks Your Honor to rule that discovery relating to CarePath's purpose is relevant to J&J's allegations of public harm as part of its GBL claim. Under New York law, J&J must show that the same conduct that purportedly injured it also injured the public, and showing that CarePath does not benefit the public (only J&J) would refute any allegation of public harm. Section II.B. *Third*, SaveOn asks Your Honor to rule that J&J cannot withhold information about its specialty drug pricing if it reserves the right to use such information to rebut arguments that it knows SaveOn will make at trial. Section II.C.

## I.     Requests for Clarification

A court may grant a motion for clarification "to explain or clarify something ambiguous or vague" about a prior order. *Alberts v. Bumgardner*, No. CV-13-5538(JXN)(JBC), 2022 WL 2833828, at *1 (D.N.J. July 19, 2022). SaveOn seeks clarification of three points.

### A.    J&J Should Produce Documents Relating to <u>All</u> Eligibility Criteria for Care-Path's General T&Cs

In the joint letter filed at Docket 146, SaveOn moved the Court to compel J&J to produce documents relating to its enforcement of its General T&Cs. Dkt. 146 at 8-9. The Court declined to construe those contractual provisions as a matter of law at the pleadings stage, Dkt. 68 at 16, and J&J's course of conduct in enforcing them is relevant extrinsic evidence of their meaning. Dkt. 146 at 8 (citing *Quick v. N.L.R.B.*, 245 F.3d 231, 247 (3d Cir. 2001); *Int'l Paper Co. v. Rexam, Inc.*, No. 3:11-CV-6494(JAP), 2013 WL 3043638, at *5 (D.N.J. June 17, 2013)). As SaveOn explained at the January 24, 2024 conference, if J&J did not enforce the "other offer" term against members of SaveOn-advised health plans until it contemplated this lawsuit, but during that same time enforced other CarePath eligibility criteria, that would be strong evidence that J&J did not genuinely believe that members of SaveOn-advised plans were ineligible for CarePath. *See* Tr. 20:7-21:7. Such evidence would undermine J&J's tortious interference with contract claim.

SaveOn understood Your Honor to rule at the conference that documents relating to J&J's enforcement of CarePath's eligibility criteria were relevant. Tr. 31:5-13 ("I believe [SaveOn is] entitled to documents that show what policies [J&J] had with regard to enforcement of eligibility criteria beyond 'other offer.'"); *see also id.* at 31:12-13 ("Those documents I believe would be relevant."). SaveOn understood this ruling to apply to J&J's enforcement of *all* CarePath eligibility criteria. The Order, however, could be read as including only *some* criteria:

> [I]t is appropriate for Plaintiff to search for, and produce, documents reflecting the company's enforcement instructions and policy, during the entirety of the agreed upon discovery time frame (April 2016-November 2023), concerning eligibility criteria set forth in the provision: "may not be used with any other coupon, discount, prescription savings card, free trial, or other offer."

Dkt. 192 at 13.

SaveOn asks Your Honor to clarify that J&J's enforcement of **all** CarePath eligibility criteria is relevant, not just its enforcement of those criteria contained in the "may not be used" provision. These other criteria include requirements that patients not be enrolled in Medicare or Medicaid and must meet age requirements.[1] At the conference, both J&J and SaveOn discussed these additional eligibility criteria, Tr. 18:8-16, 20:19-25; Your Honor indicated that they were at issue, *id.* at 23:15-25; and Your Honor indicated that no criteria were to be excluded, *id.* at 34:7-12 ("MR. DUNLAP: … I've heard my friend on the other side say he thinks enforcement is only relevant as to 'other offer.' JUDGE WOLFSON: I already said no. MR. DUNLAP: I just wanted to clarify it goes to the other eligibility criteria as well.").

SaveOn does not ask for clarification or reconsideration of Your Honor's ruling that J&J need not "search and produce records of each individual patient's call history," Dkt. 192 at 12-13; *see also* Tr. 35:3-12, or that the parties must meet and confer on search parameters for documents relevant to J&J's enforcement of CarePath's eligibility criteria, Dkt. 192 at 13; *see also* Tr. 30:25-31:13. SaveOn simply asks Your Honor to clarify that J&J's enforcement of all eligibility criteria is relevant. SaveOn will work with J&J to craft appropriate search parameters.[2]

---

[1] *See* Ex. 1 (Tremfya Savings Program Overview) ("This program is only for people **age 18 or older** using commercial or private health insurance who must pay an out-of-pocket cost for their Janssen medication. This includes plans from the Health Insurance Marketplace. This program is **not for people who use any state or federal government-funded healthcare program**. Examples of these programs are Medicare, Medicaid, TRICARE, Department of Defense, and Veterans Administration.") (emphases added); *see also* Ex. 2 (Stelara Savings Program Overview) (same).

[2] If Your Honor intended to exclude eligibility criteria such as enrollment in federal healthcare programs and age requirements, SaveOn submits (in the alternative) that Your Honor should reconsider that ruling based on documents produced after the parties submitted their joint letter. ███████████████ *. See, e.g.*, Ex. 3 (TRIAL-CARD_00002400) ███████████████).

**B.    J&J Should Produce Documents Relating to CarePath's Viability, Even if Such Documents Also Relate to CarePath's Budget or Return on Investment**

In the joint letter filed at Docket 150, SaveOn moved the Court to compel J&J to produce documents relating to CarePath's financial viability. Dkt. 150 at 4-6. J&J put this issue front and center in its Complaint. In its GBL claim, J&J alleges that SaveOn's conduct "jeopardiz[es] the viability of patient assistance programs like CarePath by making them prohibitively expensive." Compl. ¶ 114. To rebut this claim, SaveOn sought information going to CarePath's financial via-bility, including "[d]ocuments regarding JJHCS's determination of the CarePath budget, and its communications regarding that budget," Dkt. 150 at 4-5, and documents regarding "CarePath's profitably [*sic*] and return on investment," *id.* at 6.

In the Order, Your Honor ruled that "communications involving the viability of CarePath is a relevant topic which [SaveOn] may explore." Dkt. 192 at 19. Your Honor also ruled, however, that "communications of budgetary decisions are not relevant," *id.*, and that "[J&J's] alleged harm is not related to the profitability of any Janssen drugs," *id.* at 22. Citing these latter rulings, J&J now says that it will not produce any new documents relating to CarePath's budget or any docu-ments relating to its return on investment for CarePath. Ex. 5 (Feb. 8, 2024 Ltr. from J. Long to E. Snow) at 1-2; Ex. 6 (Feb. 14, 2024 Ltr. from E. Snow to J. Long) at 1-2.



SaveOn is entitled to discover additional such evidence.

SaveOn asks Your Honor to clarify that documents relating to CarePath's financial viability are relevant, even if they also relate to CarePath's budget (that is, how J&J sets the annual maximum amount of copay assistance that it offers to patients) and to J&J's return on investment from CarePath (that is, how much money J&J makes from its investment in CarePath, even after paying more to patients on SaveOn-advised plans).

At the conference, Your Honor said that SaveOn's effect on CarePath's viability included relevant information about both CarePath's budget and SaveOn's impact on J&J's "bottom line":

> JUDGE WOLFSON: … I think to the extent that the harm being alleged is a financial harm to the CarePath program and, as you call it, the viability of the program, there could be communications that could be relevant. It's not just what the budget is, but if people are saying, you know, this is going to hurt our bottom line, we're going to be okay, but it's going to hurt our bottom line, that could go to your viability argument.

Tr. 64:3-11. Your Honor confirmed this understanding in discussion with SaveOn's counsel:

> JUDGE WOLFSON: … So, with regard to CarePath specifically, what do you think you're missing that you need to give you the discovery you require to show how this impacts the viability of CarePath?
>
> MR. DUNLAP: We need to understand how Johnson & Johnson sets the CarePath levels, how it decides on the budget, where that is done, the factors that go into it, and relevant communications about that.
>
> JUDGE WOLFSON: Okay. Frankly, I find that okay. So that's where we are.

Tr. 69:20-70:6. SaveOn asks Your Honor to reaffirm this guidance.

As a practical matter, allowing J&J to withhold all documents about CarePath's budget and return on investment would allow it to withhold the most relevant information about CarePath's financial viability. If, for example, J&J once made $5 in drug sales for every $1 it invested in CarePath, but SaveOn's conduct led it to now make $4 for every $1 it invests, then CarePath would

not be "prohibitively expensive" as J&J alleges, Compl. ¶ 114. CarePath instead would be still

viable because it continues to earn J&J a healthy return on its investment. In these circumstances,

J&J may well have consciously chosen not to lower its CarePath annual maximums for patients

on SaveOn-advised plans because, even when paying out more in copay assistance than it other-

wise would have, CarePath was still a profit driver for J&J.[3]



. Ex. 7 (JJHCS_00162536) (

); Ex. 8 at -378 (JJHCS_00146376) (

; Ex. 9

(JJHCS_00140340) at 38

); Ex. 10 (JJHCS_00156898) at -905 (

---

[3] Public documents indicate that most leading drug manufacturers keep track of the return on their investments in copay assistance by tracking increases in drug sales. A December 2021 Congressional Report noted that Teva's copay program for Copaxone had an average return on investment of 451 percent for commercial patients. Staff of House Committee on Oversight and Reform, 117th Cong., Drug Pricing Investigation, 154 (December 2021), https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/DRUG%20PRICING%20REPORT%20WITH%20APPENDIX%20v3.pdf. Similarly, Novartis valued its patient assistance program as providing "a return on investment of $8.90 for everyone dollar spent on the program" starting six months before the loss of exclusivity for the drug. *Id.* at 157. Documents cited in this report suggest that J&J also considers how its investments in copay assistance can be used to "optim[ize] … sales growth." *Id.* at 159.



); Ex. 11 (JJHCS_00141359)

). J&J should not be allowed to withhold information showing that its allegations that SaveOn threatens CarePath's viability are patently false.

In moving for this clarification, SaveOn does not ask Your Honor to alter Your Honor's rulings that CarePath's budget and the profitability of Janssen drugs are not relevant *other than* as they relate to the financial viability of CarePath. SaveOn separately moves Your Honor to reconsider portions of those rulings for other reasons, *see* Section II, *below*, but its motion for clarification of the scope of Your Honor's ruling on CarePath's financial viability is not based on (and does not depend on) the outcome of those reconsideration motions.

### C. J&J Should Produce Data Sufficient for SaveOn to Quantify the Monetary Benefit that SaveOn's Conduct Creates for J&J

In the joint letter filed at Docket 150, SaveOn moved the Court to compel J&J to produce documents regarding J&J's return on investment from the CarePath program. Dkt. 150 at 6. One of the ways in which this information is relevant, SaveOn argued, is that:

> SaveOnSP believes that what JJHCS calls the "SaveOnSP Program" increases the total number of patients who take Janssen drugs and increases the frequency with which patients take those drugs. Johnson & Johnson's revenue from its increased sales of Janssen drugs to those patients may well exceed the increase in its total expenditures of CarePath funds that it tries to pin on SaveOnSP—in which case, SaveOnSP's conduct would not injure JJHCS at all. And even if the total revenue from new sales does not exceed the total increased CarePath patients, that revenue may well offset a large chunk of JJHCS's alleged damages.

*Id.* To explore this theory, SaveOn sought information showing any additional sales of the J&J drugs at issue that are attributable to SaveOn's conduct and the revenue that J&J receives from those sales. *See, e.g.,* Tr. 80:2-6, 81:21-25, 82:11-15, 83:24-84:10.

Ruling on this portion of SaveOn's motion, Your Honor opened a "small window for De-
fendant to explore documents that may reflect whether more patients are taking Janssen drugs as
a result of being on the SaveOnSp Program." Dkt. 192 at 22. This ruling was consistent with black
letter law that if a plaintiff alleges that a defendant's conduct caused it financial harm, the defend-
ant is entitled to prove that very same conduct caused the plaintiff a financial benefit that wholly
or partially offsets the alleged harm. *See, e.g.,* Restatement (Third) of Torts: Remedies § 9 Am. L.
Inst., Tentative Draft No. 2, 2023) ("If a defendant's tort harms the plaintiff and also causes or
enables the plaintiff to receive a benefit that the plaintiff could not have received but for the tort,
the plaintiff's damages generally should be reduced by the amount of the benefit."); Restatement
(Second) of Torts § 920 (Am. L. Inst. 1979).[4]

SaveOn asks Your Honor to clarify that the documents J&J must produce on this subject
include information sufficient to quantify the monetary benefit that SaveOn's conduct generates
for J&J. This specifically includes data showing the revenue that J&J received from sales of those
drugs to members of SaveOn-advised plans during the relevant period.

---

[4] *See also Ronson v. David S. Talesnick, CPA*, 33 F.Supp.2d 347, 355 (D.N.J. 1999) (holding that,
for tort claim, "defendants should be permitted to come forward with evidence of benefit from the
[tort] that could be applied to reduce a plaintiff's recovery. This conclusion properly balances the
public policy of preventing injured plaintiffs from recovering a windfall and the public policy
against permitting tortfeasors to escape liability deriving from their tortious actions[.]"); *In re:
Fisher-Price Rock 'N Play Sleeper Marketing, Sales Practices, and Products Liability Litigation*,
MDL No. 1:19-md-2903, 2023 WL 1822239, at *3 (S.D.N.Y., Feb. 8, 2023) (holding that, for NY
GBL § 349 claim based on sale of defective child's toy, "[t]he defendants are entitled to introduce
evidence of [plaintiff's] positive experiences with the [defective toy] and whatever offset they can
establish through the receipt of the plush toy [provided as a replacement]. These may reduce the
damages to zero or a jury may give them less weight.").

Discovery supports SaveOn's theory that its conduct increases drug sales for J&J. Before it was sued in May 2022, SaveOn analyzed this issue and concluded that "



" Ex. 12 (SOSP_0167735) at 8.

Ex. 13 (JJHCS_00036487) at 5.

*Id.* at 8.

Ex. 9 (JJHCS_00140340) at 22.

It makes sense that patients on SaveOn-advised plans have better adherence rates, because SaveOn can directly contact members of the plans that it advises to help them enroll in CarePath, while J&J cannot. Once a member of a SaveOn-advised plan enrolls in CarePath and qualifies for the copay assistance benefit that SaveOn administers, that member pays nothing for their specialty drug, increasing the likelihood that they will continue to take it. If SaveOn's conduct results in a member taking a drug who otherwise would not have taken in, or filling a drug more often than they otherwise would have, then that conduct creates additional revenue for J&J. To quantify the effect of its conduct, SaveOn needs data showing the additional revenue that J&J makes from those additional sales.

In seeking this clarification, SaveOn does not seek to alter Your Honor's ruling that the profitability of J&J's drugs is generally not relevant. Dkt. 192 at 19-22. SaveOn does not argue that J&J's profits from selling the drugs at issue eliminate J&J's injury for purposes of its GBL claim, *contra id.* at 22, or excuse SaveOn's conduct for purposes of its tortious interference claim, *contra id.* at 23. SaveOn submits only that if the same conduct that J&J says caused it a financial

injury *also* caused J&J a financial benefit, SaveOn is entitled to quantify that benefit and present it as an offset to J&J's alleged damages. SaveOn asks Your Honor to clarify this point.

## II.    Requests for Reconsideration

Requests for reconsideration, governed by Local Civil Rule 7.1(i), may be granted when "(1) an intervening change in controlling law has occurred; (2) evidence not previously available has become available; [or] (3) it is necessary to correct a clear error of law or prevent manifest injustice." *Bricklayers and Allied Craftworkers Loc. 5 of N.J. Pension & Annuity Funds v. Chanree Constr. Co., Inc.*, No. 3:12-CV-03897-FLW-LHG, 2013 WL 6528776, at *2 (D.N.J. Dec. 12, 2013). Reconsideration "is within the Court's inherent powers" and "the [C]ourt retains a good deal of discretion." *U.S. ex rel. Silver v. Omincare, Inc.*, No. 1:11-cv-01326-NLH-JS, 2021 WL 9848445, at *1 (D.N.J. Apr. 13, 2021) (citing *In re Anthanassious*, 418 F. App'x. 91, 95 (3d Cir. 2011) *and* Fed. R. Civ. P. 54(b)). SaveOn seeks reconsideration of three portions of Your Honor's rulings on SaveOn's requests for J&J's financial information.

### A.    Evidence That J&J Failed to Adjust CarePath's Budget in Response to SaveOn's Conduct Is Relevant to SaveOn's Mitigation Defense

In the joint letter filed at Docket 150, SaveOn sought documents related to CarePath's budget that would show that "JJHCS could have reduced the CarePath budget but chose not to do so." Dkt. 150 at 5. In ruling on that motion, Your Honor ruled that, while "communications involving the viability of CarePath" were relevant, "communications of budgetary decisions" unrelated to viability were not. Dkt. 192 at 19. In this latter ruling, Your Honor stated: "What matters for purposes of liability and damages are not the changes that Plaintiff contemplated implementing, but actual changes that occurred." *Id.*

SaveOn asks Your Honor to reconsider a portion of this latter ruling: It asks Your Honor to rule that the reasons why J&J set the annual maximum amounts of copay assistance for the drugs

at issue at the levels that it did, and why J&J chose to maintain those levels after learning of SaveOn's services (and those of so-called accumulators and maximizers), are relevant to SaveOn's defense that J&J failed to mitigate its purported damages.

To determine an injured party's "reasonableness" in mitigating damages, courts look at all the facts and circumstances and judge the reasonableness of the party's actions "in the light of one viewing the situation at the time the problem was presented." *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 259 (3d Cir. 2008); *see also Williams v. Benshetrit*, No. 19-CV-00797, 2022 WL 138007, at *9 (E.D. Pa. Jan. 14, 2022), *reconsideration denied*, No. 19-CV-00797, 2022 WL 20742777 (E.D. Pa. Mar. 14, 2022) ("Evidence that Plaintiff failed to mitigate his damages by failing to [take actions his doctor recommended] for eighteen months is relevant"); Restatement (Second) of Torts § 918 cmt. e (Am. L. Inst. 1979) (Avoidable Consequences) (different factual circumstances are relevant to assessing whether a party reasonably mitigated its damages).

Documents produced since SaveOn filed its motion show that ███████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
███████████████████████████████. Ex. 11 (JJHCS_00141359) at -360. ██████████
████████████████████████████████████████████████████████████████████████
██████████████████████████. *Id.* ████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
███████████████████████████████████████ SaveOn-advised plans did not count copay

assistance towards plan limits on patients' out-of-pocket responsibility, and thus knew that Care-Path would spend more in copay assistance to members of such plans as a result—the very harm that J&J alleges in its Complaint, Compl. ¶¶ 110, 115. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 11 (JJHCS_00141359)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

There are other examples too. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮.[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 18 (JJHCS_00164633) at -633 ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Even now, annual maximums for most drugs at

---

[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Ex. 14 (TRIALCARD_00001884) at -885. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮ See Ex. 15 (TRIALCARD_00002732) at -733 (2▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮); Ex. 16 (TRIALCARD_00004935) at -934-35 (▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Ex. 17 (TRIAL-
CARD_00003383) at -383-84.

issue remain unchanged. *See, e.g.*, Ex. 19 (Savings Program Overview for Opsumit, Uptravi, and Tracleer); Ex. 20 (Savings Program Overview for Darzalex and Darzalex Faspro).

J&J should not be allowed to withhold evidence that it could have reduced these annual maximums—especially that it considered doing so in response to maximizers and accumulators and SaveOn but affirmatively decided not to. Such evidence could significantly reduce or eliminate J&J's purported damages. *See Sean Wood, L.L.C. v. Hegarty Grp., Inc.*, 422 N.J. Super. 500, 519 (App. Div. 2011) ("Damages will not be recovered to the extent that the injured party could have avoided his losses through reasonable efforts without undue risk, burden or humiliation.").

In this request for reconsideration, SaveOn does not seek all documents and communications regarding the CarePath budget. It seeks only documents going to why J&J set CarePath's annual maximums at the levels it did during the relevant time period and ███████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████.

## B. Evidence Of CarePath's Purpose Is Relevant to SaveOn's Defenses Against J&J's GBL Claim

In the joint letter filed at Docket 150, SaveOn sought documents relating to J&J's CarePath budget that could show that "JJHCS[] offers these [copay assistance] funds primarily as a marketing program to increase the sales of Janssen drugs." Dkt. 150 at 4-5. In the Order, Your Honor held that CarePath budget documents other than those going to CarePath's viability were not relevant. Dkt. 192 at 19. In a separate portion of the Order, Your Honor ruled that "even if [J&J's] program is created for the purposes of promoting J&J's drugs, [J&J] may sustain its GBL Claim by proving that [SaveOn's] alleged conduct injured [J&J] in some way." *Id.* at 21.

SaveOn does *not* ask Your Honor to revisit the ruling that CarePath's purpose is irrelevant to J&J's alleged harm for its GBL claim. To prevail on a GBL claim, "a plaintiff must allege that

(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Dkt. 192 at 20 (citing and quoting Dkt. 68 at 12). In deciding SaveOn's motion to dismiss, the Court held that J&J had sufficiently alleged the third element—injury to J&J—by alleging that SaveOn caused J&J to pay out more in CarePath funds than it otherwise would. *See id.* at 20-21. In this context, Your Honor held that even if J&J created CarePath to sell more drugs, that fact would not affect J&J's allegations that SaveOn's conduct injured J&J or affect J&J's purported damages. *Id.* at 21. SaveOn agrees.

To the extent that Your Honor held that CarePath's purpose was fully irrelevant to J&J's GBL claim, however, SaveOn moves Your Honor to reconsider. J&J cannot prevail on its GBL claim simply by showing that SaveOn injured it. *Ideal You Weight Loss Ctr., LLC v. Zillioux*, 106 N.Y.S.3d 495, 497-98 (N.Y. App. Div. 2019) (dismissing GBL § 349 claim where "the gravamen of the complaint is not consumer injury or harm to the public interest but, rather, harm to plaintiff's business"). As an independent element of its claim, J&J must show that the same conduct that injured it ***also*** injured the consuming public. *City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 839 (N.Y. 2009) ("Plaintiffs must demonstrate that the complained-of acts or practices have a broader impact on consumers at large").

Your Honor held that J&J's allegations of public harm were "tethered to the viability of the CarePath program vis-à-vis the availability of funds generally available to patients in need." Dkt. 192 at 21-22. This is consistent with J&J's Complaint, in which it alleges that CarePath exists "to help commercially insured patients afford the costs of valuable and life-saving therapies," Compl. ¶ 2; "CarePath funds [are] intended to help patients afford their Janssen medication," *id.* ¶ 23; and "CarePath helps patients afford out-of-pocket costs for 44 Janssen drugs," *id.* ¶ 47.

Case 2:22-cv-02632-CCC-CLW Document 300-5 Filed 06/10/24 Page 17 of 46 PageID: 32636
Case 2:22-cv-02632-JKS-CLW Document 300-5 Filed 06/18/24 Page 263 of 458 PageID: 32636

SaveOn is entitled to disprove J&J's allegations of public harm by showing that, even if it is true that SaveOn harms CarePath's viability (a point which SaveOn also disputes, *see above* Section I.B), harming CarePath's viability does ***not*** harm the public. SaveOn believes that discovery will show that: CarePath is not intended to benefit patients; it is intended to benefit J&J by helping J&J to sell more drugs to patients who would otherwise buy a competitor's drugs. CarePath does not target payments to patients "in need;" it gives money to patients of any income level who might otherwise purchase a competitor's drugs to encourage them to buy J&J's drugs. (J&J has a separate program designed to provide drugs to low-income patients.[6]) And, most critically, CarePath allows J&J to raise drug prices by insulating those plan members who take specialty drugs from the immediate effects of paying higher prices for those drugs—allowing J&J to charge higher prices for those drugs that ultimately drive up overall health care costs for all other plan members. Simply put, CarePath does not benefit the public; it benefits J&J at the public's expense.

This is not hypothetical: A recent Congressional Oversight Committee report found that though "[d]rug companies often highlight the generosity of their patient assistance programs . . . companies emphasized the significant returns on investment from these programs in the form of increased sales." *See* Staff of House Committee on Oversight and Reform, 117th Cong., Drug Pricing Investigation 149 (December 2021).[7] That report emphasizes how those returns on investment for pharmaceutical companies come at the expense of health plans and patients:

> These programs allow the [drug] companies to generate higher revenues by maintaining demand while raising prices. Although these programs defray some patients' out-of-pocket costs, ***the overall cost***

---

[6] JOHNSON & JOHNSON PATIENT ASSISTANCE FOUNDATION, INC., https://www.jjpaf.org/ (last visited Feb. 20, 2024).

[7] https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/DRUG%20PRICING%20REPORT%20WITH%20APPENDIX%20v3.pdf.

> ***to the health care system increases due to price increases***. This cost
> is in turn passed on to all patients in the form of higher insurance
> premiums.

*Id.* at 159 (emphasis added). The Committee concluded that "the pharmaceutical industry has used

patient assistance programs to distract from price increases, even when company representatives

privately acknowledged that lowering prices would be more helpful to patients." *Id.* at 163.



SaveOn therefore asks Your Honor to rule that discovery relating to CarePath's purpose is

relevant to J&J's allegations of public harm. Your Honor did not address this argument in the

Order, and the recently produced documents cited above provide an ample basis for reconsidera-

tion. SaveOn should be allowed to pursue discovery on this topic, as New York courts routinely

reject attempts to turn purely business harms into GBL claims. *See, e.g., Ideal You Weight Loss*

*Ctr*, 106 N.Y.S.3d 495, 497-98; *Emergency Enclosures, Inc. v. Nat'l Fire Adj. Co., Inc.*, 893

N.Y.S.2d 414, 417-18 (N.Y. App. Div. 2009); *H2O Swimwear v. Lomas*, 560 N.Y.S.2d 19, 21

(N.Y. App. Div. 1990). SaveOn will meet and confer with J&J on appropriate search parameters.

> ### C.  J&J Cannot Withhold Information About Its Specialty Drug Pricing Unless It Represents That It Will Not Use Such Information to Rebut SaveOn's Arguments at Trial

In the joint letter filed at Docket 150, SaveOn sought information relating to J&J's drug

pricing because J&J alleged in its Complaint that it reduced the "net price" of its drugs and because

J&J's use of CarePath to raise drug prices helps show that any alleged harm to CarePath does not

harm the public. Dkt. 150 at 7-8. In the Order, Your Honor denied that request, Dkt. 192 at 24,

based in large part on J&J's representation at the conference that it would not "rely on the pricing

of Janssen drugs as a basis to prove its claims," *id.*

SaveOn asks Your Honor to reconsider a portion of this ruling. At trial, to counter J&J's

GBL claim, SaveOn intends to present evidence that J&J uses CarePath in part to raise drug prices;

if J&J reserves the right to rebut that presentation, it must produce information now showing the

connection between CarePath and its pricing of the 14 drugs at issue.

As Your Honor noted, Dkt. 192 at 5, 21, J&J alleges that SaveOn harms the public, in part,

by "making other patient healthcare needs more expensive by not counting any of the [CarePath]

funds spent on patients' medication towards their ACA maximum or deductible." Compl. ¶ 114.

SaveOn intends to counter this allegation as follows: In recent years, drug makers like J&J

increased specialty drug prices far beyond the cost of inflation.[8] Drug makers like J&J used their

---

[8] For instance, a Congressional report on drug pricing found that as of 2021, "AbbVie and Janssen charge over $181,529 for a year's supply of Imbruvica—82% more than when the drug was launched in 2013." Staff of House Committee on Oversight and Reform, 117th Cong., Drug Pric-

copay assistance programs to support these price increases by covering large portions of patients'

copays, insulating them from higher prices and encouraging them to buy the manufacturers' drugs

instead of competitors' drugs.[9] Because commercial health plans pay the vast majority of the cost

when their members fill these drugs, increased drug prices caused the plans' spending on pharmacy

benefits—overwhelmingly driven by specialty drugs—to skyrocket.[10] This hurt plan members, as

the plans had less money available for healthcare benefits.

As fiduciaries managing plan assets for the benefit of all members, plan sponsors looked

for ways to manage rising specialty drug costs. One way is the copay assistance benefit that

SaveOn administers: It helps use all copay assistance funds that a drug maker voluntarily makes

available while ensuring that members get their specialty drugs for free. An aspect of this benefit

is that the plans choose not to count copay assistance funds towards members' maximums or de-

ductibles. J&J asserts that this plan benefit hurts the few plan members taking specialty drugs

because it requires them to pay for their other healthcare (just as other plan members do). But this

same plan benefit helps all other plan members—the vast majority—by leaving the plans more

---

ing Investigation, AbbVie—Humira and Imbruvica at i (May 2021), https://docs.house.gov/meet-ings/GO/GO00/20210518/112631/HHRG-117-GO00-20210518-SD007.pdf. Imbruvica is one of the drugs at issue in this litigation.

[9] *See, e.g.*, Staff of House Committee on Oversight and Reform, 117th Cong., Drug Pricing Investigation 149 (December 2021), https://oversightdemocrats.house.gov/sites/democrats.over-sight.house.gov/files/DRUG%20PRICING%20REPORT%20WITH%20APPENDIX%20v3.pdf. As discussed above, documents recently produced by J&J show J&J internally describing copay assistance as a vehicle to "insulate" patients from high costs. Ex. 22 (JJHCS_00141442).

[10] *See, e.g.*, Department of Health and Human Services, Assistant Secretary for Planning and Evaluation, Trends in Prescription Drug Spending, 2016-2021 (September 2022), https://aspe.hhs.gov/sites/default/files/documents/88c547c976e915fc31fe2c6903ac0bc9/sdp-trends-prescription-drug-spending.pdf.

money to spend on healthcare benefits. Far from raising the public's healthcare costs, SaveOn's conduct helps **lower** those costs for the vast majority of commercial health plan members.

This presentation will necessarily involve showing that the plan benefit that SaveOn administers was a reaction to drug makers raising specialty drug prices. At the conference, while promising not to affirmatively rely on drug pricing evidence, J&J's counsel said: "I want to leave myself one out, your Honor. If they start making allegations about the greedy drug companies that have raised prices, I think we're allowed to reply to that." Tr. at 97:23-98:1. J&J **knows** that SaveOn intends to make such a presentation—SaveOn told J&J and the Court as much a year ago. *E.g.*, Dkt. 79 (February 24, 2023 Joint Letter) at 14.

Allowing J&J to rebut SaveOn's presentation about rising specialty drug prices while denying SaveOn discovery of information relevant to that rebuttal would be manifestly unjust, which is not what SaveOn believes Your Honor intended. If J&J will disclaim any rebuttal to SaveOn's anticipated showing that J&J and other drug makers have raised specialty drug prices—fully eliminating the "out" that its counsel reserved—then no discovery on this point is necessary. But if J&J continues to reserve itself the right to present rebuttal evidence that it has lowered (or not increased) those prices, then SaveOn submits that J&J must produce discovery on this topic now, including the data underlying any such assertions. SaveOn seeks reconsideration of Your Honor's ruling to the extent necessary to declare that such evidence is relevant. SaveOn will work with J&J to craft appropriate search parameters to gather and produce this information.

Respectfully submitted,

/s/ E. Evans Wohlforth
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# Exhibit 1

Case 2:22-cv-02632-KSH-CLW   Document 300-5   Filed 06/09/23   Page 23 of 44 PageID: 32643



# Savings Program
## for eligible commercially insured patients
# Pay $5 per injection

Maximum program benefit per calendar year shall apply.
Terms expire at the end of each calendar year and may change.
See program requirements on next page.

**Get instant savings on your out-of-pocket costs for your Janssen medication. Depending on your health insurance plan, savings may apply toward co-pay, co-insurance, or deductible.**



# Get started

## Mobile Enrollment Available

**Text "SAVINGS" to 56011**
(message and data rates may apply*)

**Express Enrollment**
MyJanssenCarePath.com/Express

Check eligibility, enroll, and receive an electronic Savings Program card that can be saved to your digital wallet on your iPhone or Android device.

You can use your Savings Program card when filling your prescription at a specialty or retail pharmacy.
If for any reason your pharmacy cannot process your card, please submit a **Rebate Form** to receive a check.

**Learn more about TREMFYA withMe – the support program built around you.**

Through the dedicated support of a TREMFYA withMe Guide, a qualified healthcare professional, you will get additional resources to help you with prescription cost and treatment support.

**You can also create a personalized Patient Account at MyJanssenCarePath.com where you can:**

- Enroll in the TREMFYA withMe Savings Program
- View and manage your Savings Program benefits
- Learn about your insurance coverage
- Sign up for treatment support

If you enroll in the Savings Program via Mobile or Express Enrollment, you will not be able to view and manage your Savings Program benefits until you create an account at **MyJanssenCarePath.com**.

**Care Team members, such as Providers and Pharmacists, can enroll patients in the Savings Program at JanssenCarePathPortal.com/Express**

*See **Terms** and **Privacy Policy**.

**Please read the full Prescribing Information and Medication Guide for TREMFYA®, and discuss any questions you have with your doctor.**





# Savings Program

## Am I eligible?

You may be eligible for the TREMFYA withMe Savings Program if you are age 18 or older and use commercial or private health insurance for TREMFYA® and must pay an out-of-pocket cost for your medication.

There is no income requirement.

## Other requirements

- **This program is only for people age 18 or older using commercial or private health insurance who must pay an out-of-pocket cost for their Janssen medication. This includes plans from the Health Insurance Marketplace.** This program is not for people who use any state or federal government-funded healthcare program. Examples of these programs are Medicare, Medicaid, TRICARE, Department of Defense, and Veterans Administration.

- You may not seek payment for the value received from this program from any health plan, patient assistance foundation, flexible spending account, or healthcare savings account.

- You must meet the program requirements every time you use the card.

- Program terms will expire at the end of each calendar year. The program may change or end without notice, including in specific states.

- Patients who are members of health plans (often termed "maximizer" plans) that claim to **reduce** their patients' out-of-pocket costs will have a reduced maximum program benefit of $6,000 per calendar year. Out-of-pocket costs may be co-pay, co-insurance, or deductible. If you have enrolled in one of these plans, please inform TREMFYA withMe at 833-withMe1 (833-948-4631).

- Patients who are members of health plans that claim to **eliminate** their out-of-pocket costs are not eligible for cost support. If you have enrolled in one of these plans, please inform TREMFYA withMe at 833-withMe1 (833-948-4631).

- To use this program, you must follow any health plan requirements, including telling your health plan how much co-payment support you get from this program. By using the Savings Program card, you confirm that you have read, understood, and agree to the program requirements on this page, and you are giving permission for information related to your Savings Program transactions to be shared with your healthcare provider(s). These transactions include rebates and any funds placed on the card or balance remaining on the card.

- Before you enroll in the program, you will be asked to provide personal information that may include your name, address, phone number, email address, and information related to your prescription medication insurance and treatment. This information is needed for Janssen Biotech, Inc., the maker of TREMFYA®, and our service providers to enroll you in the TREMFYA withMe Savings Program. We may also use the information you give us to learn more about the people who use TREMFYA®, and to improve the information we give them. Janssen Biotech, Inc., will not share your information with anyone else except where legally allowed.

- This program offer may not be used with any other coupon, discount, prescription savings card, free trial, or other offer. Offer good only in the United States and its territories. Void where prohibited, taxed, or limited by law.

You may end your participation in TREMFYA withMe at any time by calling 833-withMe1 (833-948-4631).

### Get started at **MyJanssenCarePath.com/Express**

 **Need help?**  Call **833-withMe1** (833-948-4631)
Monday–Friday, 8:00 AM–11:00 PM ET
Visit JanssenCarePath.com/Tremfya

**Please read the full Prescribing Information and Medication Guide  for TREMFYA®,
and discuss any questions you have with your doctor.**

© Janssen Biotech, Inc. 2022   03/22   cp-05009v10



# Exhibit 2



# Janssen CarePath



## Savings Program
### for eligible commercially insured patients
## Pay $5 per dose

Maximum program benefit per calendar year shall apply.
Terms expire at the end of each calendar year and may change.
See program requirements below.

**Get savings on your out-of-pocket medication costs for STELARA®. Depending on your health insurance plan, savings may apply toward deductible, co-pay, and co-insurance.**

**Program does not cover costs to give you your treatment.**

## ① Enroll in the Savings Program

### 3 ways to enroll

 **By creating an online account** and enrolling at **MyJanssenCarePath.com**

 **By phone** 877-CarePath (877-227-3728)

 **By fax or mail** Complete **Patient Enrollment Form**†
†You will activate your card upon receipt of enrollment confirmation by mail.

## Am I eligible?
You may be eligible for the Janssen CarePath Savings Program if you are age 6 or older and currently use commercial or private health insurance for STELARA®, and must pay an out-of-pocket cost for your medication. There is no income requirement.
Janssen CarePath Savings Program for STELARA® is based on medication costs only and does not include costs to give you your treatment.

## Other requirements
· This program is only for people age 6 or older using commercial or private health insurance for their Janssen medication. This includes plans from the Health Insurance Marketplace. This program is not for people who use any state or federal government-funded healthcare program. Examples of these programs are Medicare, Medicaid, TRICARE, Department of Defense, and Veterans Administration.
· You may not seek payment for the value received from this program from any health plan, patient assistance foundation, flexible spending account, or healthcare savings account.
· You must meet the program requirements every time you use the program.
· Program terms will expire at the end of each calendar year. The program may change or end without notice, including in specific states.
· Patients who are members of health plans (often termed "maximizer" plans) that claim to **reduce** their patients' out-of-pocket costs will have a reduced maximum program benefit of $6,000 per calendar year. Out-of-pocket costs may be co-pay, co-insurance, or deductible. If you have enrolled in one of these plans, please inform Janssen CarePath at 877-CarePath (877-227-3728).
· Patients who are members of health plans that claim to **eliminate** their out-of-pocket costs are not eligible for cost support. If you have enrolled in one of these plans, please inform Janssen CarePath at 877-CarePath (877-227-3728).
· To use this program, you must follow any health plan requirements, including telling your health plan how much co-payment support you get from this program. By getting a Savings Program benefit, you confirm that you have read, understood, and agree to the program requirements on this page, and you are giving permission for information related to your Savings Program transactions to be shared with your healthcare provider(s). These transactions include rebates and any funds placed on the card or balance remaining on the card.
· Before you activate your card, you will be asked to provide personal information that may include your name, address, phone number, email address, and information related to your prescription medication insurance and treatment. This information is needed for Janssen Biotech, Inc., the maker of STELARA®, and our service providers to enroll you in the Janssen CarePath Savings Program. We may also use the information you give us to learn more about the people who use STELARA®, and to improve the information we give them. Janssen Biotech, Inc., will not share your information with anyone else except where legally allowed.
· If you use medical/primary insurance to pay for your medication, you need to submit a rebate request with an Explanation of Benefits (EOB) to get payment from the Savings Program. With your permission, your provider may submit the rebate request and EOB for you. Please make sure you and your provider know who will submit the rebate request.
· This program offer may not be used with any other coupon, discount, prescription savings card, free trial, or other offer. Offer good only in the United States and its territories. Void where prohibited, taxed, or limited by law.
You may end your participation in Janssen CarePath at any time by calling 877-CarePath (877-227-3728).

Janssen Biotech, Inc., is not liable for unintended or unauthorized use of the STELARA® Mastercard®, if it is lost or stolen. The Janssen CarePath Savings Program for STELARA® Prepaid Mastercard is issued by MetaBank®, N.A., Member FDIC, pursuant to license by Mastercard International Incorporated. Mastercard is a registered trademark, and the circles design is a trademark of Mastercard International Incorporated. Janssen CarePath Savings Program is not a MetaBank or Mastercard product or service, nor is the optional offer endorsed by them.

**Please read the full Prescribing Information and Medication Guide for STELARA®, and discuss any questions you have with your doctor.**

(2) How to use your Savings Program benefits

## How your card can be used depends on the insurance you use to pay for your medication:

 If you use your **pharmacy/prescription insurance** to pay for your medication from a pharmacy:
- You may use your card (provide your Member ID #, Rx BIN #, and Group #) to receive instant savings off the cost of your medication
- The pharmacy will collect your co-pay

 If you use your **medical/primary insurance** to pay for your medication through your doctor, treatment provider, or pharmacy:
- You may use your card to receive a rebate, **OR**
- You may assign your benefits directly to your treatment provider. Please discuss this option with your provider

### How it works:
- Your provider or pharmacy may or may not collect your co-pay, based on your insurance coverage
- You receive your treatment with STELARA® (ustekinumab)
  - Your provider or pharmacy submits your claim to your healthcare insurance provider
- You and your provider receive an EOB statement from your insurance
  - You are responsible for submitting the EOB to Janssen CarePath Savings Program, or you can request your provider to submit the EOB on your behalf (see *How to submit a rebate request* below)
- Janssen CarePath Savings Program reviews your EOB, and issues rebate to your card, to you by check, or to your provider if you have assigned your benefits to your provider

**Remember to bring your card to your treatment appointment. Your card is not a credit card. There is no charge for your card.**

**If for any reason your provider or pharmacy cannot process your card, please call us at 877-CarePath (877-227-3728). You may be able to submit a Rebate Form to receive a check. Proof of medication payment required.**

---

**With a Janssen CarePath online account, you can manage your Savings Program benefits**


- Review your available benefits
- Submit Savings Program requests
- View benefit payment transactions
- Receive timely alerts and program updates

**Get started now...**

 **Need help?** Visit **JanssenCarePath.com/Stelara**
Call **877-CarePath** (877-227-3728)
Monday–Friday, 8:00 AM–8:00 PM ET

---

How to submit a rebate request If you have created an online Janssen CarePath Patient Account, you may submit online in your account. If you would like to receive a rebate check payable to you by mail, you must complete a **Rebate Request Form** and provide proof of medication payment.

**At your request, your provider may submit rebate requests to the Savings Program on your behalf via the Provider Portal or by fax or mail.**

 **Online:**
**MyJanssenCarePath.com**

 **Fax:**
844-250-7193

 **Mail:**
Janssen CarePath Savings Program
2250 Perimeter Park Drive, Suite 300
Morrisville, NC 27560

Confirm with your provider who will submit rebate requests to the program—you or your provider at your request.

**Please read the full Prescribing Information and Medication Guide for STELARA®, and discuss any questions you have with your doctor.**

© Janssen Biotech, Inc. 2021    12/21    cp-54244v7



**EXHIBITS 3-4**

**CONFIDENTIAL – FILED UNDER SEAL**

# Exhibit 5



www.pbwt.com

February 8, 2024

Julia Long
(212) 336-2878

**<u>VIA EMAIL</u>**

Elizabeth H. Snow, Esq.
Selendy Gay Elsberg, PLLC
1290 Avenue of the Americas
New York, NY 10104

<p style="margin-left: 2em;">Re: ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***,<br>   **2:23-cv-02632 (JKS) (CLW)**</p>

Dear Elizabeth:

We write in response to SaveOnSP's January 29, 2024 letter regarding Judge Wolfson's rulings on SaveOnSP's requests for ancillary financial documents at the January 24, 2024 conference and as memorialized in Judge Wolfson's February 6, 2024 Order.

### I. CarePath's Budget

SaveOnSP continues to demand JJHCS "produce documents showing how J&J sets the level of CarePath copay assistance funds that it offers patients, how it decides on the CarePath budget including the factors that go into this decision, where that decision is made, and the relevant communications about the budget." *See* Jan. 29, 2024 Ltr. from E. Snow to J. Long at 1. Not only do we reject this request, but Judge Wolfson and Judge Waldor have also rejected it. Judge Wolfson found that as to issues concerning CarePath's budget, "[JJHCS] has the better argument" and "communications of budgetary decisions are not relevant to Defendant's defenses or Plaintiff's claims." Dkt. No. 192 at 19.

Despite SaveOnSP's protests otherwise, it is clear from the February 6, 2024 Order that Judge Wolfson only directed JJHCS to produce a narrow subset of communications relevant to the action—i.e., those "communications involving the viability of Carepath." *Id.* Judge Wolfson further directed the parties to "meet and confer and agree on a narrow set of search terms in order to identify those communications." *Id.*

The remaining demands in SaveOnSP's letter—including production of broader categories of documents, identification of new custodians, and search terms wholly untethered from issues related to the viability of CarePath—are in direct conflict with Judge Wolfson's February 6 Order. For example, SaveOnSP proposes two search strings (copied below), but neither is tailored to the "narrow" issue on which Judge Wolfson permitted discovery. Rather, these terms

Elizabeth H. Snow, Esq.
February 8, 2024
Page 2

are explicitly designed to result in any document discussing the term "budget" within proximity to CarePath—not CarePath's viability—and there is no basis to include terms related to "chang[es]" (including "increase[es]," "decreas[es]," or "adjust[ments]") to the annual maximum benefit of any "immunology," "oncology," or "infectious disease" related drug—without even a basic limitation for those drugs that are at issue in the litigation.

- Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me) OR PAS OR "Patient Access Solutions")

- ("20,000" OR "20k" OR "6,000" OR "6k" OR "9,100") w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas* OR maintain* OR update*) AND (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me) OR PAS OR "Patient Access Solutions" OR immunology OR IMM OR oncology OR ONC OR (Pulmonary w/2 Hypertension) OR PH OR PAH OR "infectious disease" OR ID OR Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga)

Finally, to the extent that SaveOnSP now asks JJHCS to refresh certain data productions previously provided, JJHCS notes that it has sent two letters—both unanswered—to SaveOnSP proposing a date for the exchange of this refreshed data. *See* Jan. 10, 2024 Ltr. from J. Long to E. Snow; Jan. 22, 2024 Ltr. from J. Long to E. Snow. Subject to SaveOnSP agreeing to prioritize its refresh, JJHCS will do the same.

## II.     Return on Investment

SaveOnSP's letter also demands that JJHCS "produce documents and communications regarding [JJHCS's] actual and projected return on investment," including "documents and communications regarding accumulators' and maximizer's effect on [JJHCS's] ROI." Jan. 29, 2024 Ltr. from E. Snow to J. Long at 3. Again, this demand finds no basis in Judge Wolfson's February 6 Order. Here, too, Judge Wolfson unambiguously rejected SaveOnSP's arguments, finding that JJHCS's "alleged harm is not related to the profitability of any Janssen drugs. Put differently, even if J&J and its [affiliates] ultimately derive profits . . . from selling the drugs at issue, that fact does not disprove Plaintiff's alleged harm in this case, either to itself or to the public." (Dkt. No. 192 at 22.)

Judge Wolfson only permitted discovery on a "small window" of "documents that may reflect whether more patients are taking Janssen drugs as a result of being on the SaveOnSp Program." *Id.* But SaveOnSP's proposed search terms—with direct references to "ROI"—and demands for additional custodians related to ROI, are wholly untethered from Judge Wolfson's Order. If SaveOnSP is willing to meet and confer in good-faith and to propose search terms related to the "small window" that Judge Wolfson opened, JJHCS will run those search terms and provide hit counts, as appropriate. But JJHCS will not provide hit counts where SaveOnSP refuses to

Elizabeth H. Snow, Esq.
February 8, 2024
Page 3


recognize the clear limitations on an issue already twice litigated—and on which JJHCS has twice prevailed.

Very truly yours,


*/s/ Julia Long*
Julia Long

# Exhibit 6

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy | Gay

Elizabeth Snow
Associate
212.390.9330
esnow@selendygay.com

February 14, 2024

**Via E-mail**

Julia Long
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jlong@pbwt.com

Re:   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
     LLC*** (Case No. 2:22-cv-02632-ES-CLW)

Dear Julia,

We write regarding our discussion of financial data during Monday's meet
and confer.

*First*, we noted that your most recent February 8, 2024 letter takes issue
with our proposed search terms, custodians, and noncustodial documents without
proposing any alternatives.

*Second*, we discussed Judge Wolfson's order requiring J&J to produce com-
munications about the viability of CarePath. *See* Feb. 6, 2024 Wolfson Order, Dkt.
192 at 19. Judge Wolfson directed the parties "to meet and confer and agree on a
narrow set of search terms in order to identify those communications related to
the viability of CarePath." *Id.* You stated that you believed any communications
regarding CarePath's budget were outside the scope of "communications related to
the viability of CarePath," citing to Judge Wolfson's holding that communications
regarding budgetary decisions generally are not relevant. We stated that some doc-
uments regarding the budget are relevant to Judge Wolfson's ruling because Save-
OnSP ("SaveOn") understands that some documents regarding CarePath's budget
are likely to bear on the viability of CarePath. We asked you to explain what you
meant by your allegation that SaveOn jeopardizes the viability of CarePath by mak-
ing it prohibitively expensive, *see* Comp. ¶ 114, and what documents you believe

Julia Long
February 14, 2024

are relevant to Judge Wolfson's ruling that J&J must produce documents regarding CarePath's viability.[1] Please provide those explanations promptly.

*Third*, we discussed Judge Wolfson's order requiring J&J to produce documents that reflect whether more patients are taking Janssen drugs as a result of being on health plans advised by SaveOn. *See* Dkt. 192 at 22. We pointed out that though you rejected the search terms we initially proposed on this topic, you did not propose alternative search terms in your February 8, 2024 letter.

We explained that documents regarding whether more patients are taking Janssen drugs because they are on health plans advised by SaveOn are relevant whether or not J&J itself conclusively identified the patient as on a SaveOn-advised plan or simply included those patients in its analysis, having identified the patient as using an accumulator or a maximizer. Judge Wolfson agreed with us that J&J uses these terms to refer to SaveOn. *See* Jan. 24, 2024 Tr. at 131; Dkt. 192 at 29. You stated that Judge Wolfson's comment was irrelevant because it did not appear in her order on this topic. You also stated that you would not produce documents showing how all accumulators or maximizers affect J&J even if those analyses included patients on SaveOn-advised plans.

The words "maximizer" and "accumulator" should be included in any search term aimed at identifying documents regarding whether more patients are taking Janssen drugs as a result of SaveOn because J&J often uses those words to refer to SaveOn. *See* Dkt. 192 at 29. You agreed that you would consider proposed search terms. We propose the following search terms:

- (additional OR more OR number* OR quantit* OR greater OR increas* impact OR effect OR frequency) w/20 (patient* OR sales OR fill* OR lives OR spend*) AND ((accumulat*) OR (maximiz*))

We also asked you to confirm that you would search noncustodial documents and identify relevant custodians to the extent there are additional sources with responsive data. You stated that you did not believe this was required by Judge Wolfson's order. We explained that it was incumbent on you to identify relevant sources of information to locate "documents that may reflect whether more patients are taking Janssen drugs as a result of being on the SaveOnSp Program." *See* Dkt. 192 at 22. Please tell us whether you will identify relevant noncustodial sources and any additional custodians with responsive documents.

---

[1] As SaveOn explained during the meet and confer, without a clear understanding of and agreement on the substantive scope of documents encompassed by the viability of CarePath, it cannot propose search terms.

Julia Long
February 14, 2024

We reserve all rights. Please respond by Tuesday, February 20.

Best,

/s/ Elizabeth Snow

Elizabeth H. Snow
Associate

**EXHIBITS 7-18**

**CONFIDENTIAL – FILED UNDER SEAL**

# Exhibit 19






# Savings Program
## for eligible commercially insured patients
## Pay $5 per prescription fill

$20,000 maximum program benefit per calendar year across all oral PAH therapies in the program. Not valid for patients using Medicare, Medicaid, or other government-funded programs to pay for their medications. Terms expire at the end of each calendar year and may change. Offer not valid for TRACLEER® in CA or MA, or for MA residents (62.5 mg and 125 mg only). There is no income requirement. See program requirements on next page.



Get savings on your out-of-pocket medication costs for OPSUMIT®, UPTRAVI®, or TRACLEER®. Depending on the health insurance plan, savings may apply toward co-pay, co-insurance, or deductible.

Call a Janssen CarePath Care Coordinator at
**866-228-3546** or visit **JanssenCarePath.com** for more information about affordability programs that may be available.

Please read the full Prescribing Information for **OPSUMIT®** and Medication Guide for **OPSUMIT®**, including an Important Warning about Serious Birth Defects. Please read the full Prescribing Information, including Boxed Warning about liver injury and birth defects, for **TRACLEER®** and Medication Guide for **TRACLEER®**. Please read full Prescribing Information for **UPTRAVI®** and Patient Product Information for **UPTRAVI®**.

   

# Savings Program

## Am I eligible?

**You may be eligible for the Janssen CarePath Oral PAH Savings Program if you:**

• Are age 18 or older (age 3 or older for TRACLEER® 32 mg) and currently use commercial or private health insurance for your medication costs

• (Female patients only) Are enrolled in the Macitentan REMS Program for OPSUMIT®. Learn more at **MacitentanREMS.com**

• Are enrolled in the Bosentan REMS Program for TRACLEER®. Learn more at **BosentanREMSProgram.com**

## Other requirements

• **This program is only available to individuals age 18 or older (age 3 or older for TRACLEER® 32 mg) using commercial or private health insurance for their Janssen medication, including plans available through state and federal healthcare exchanges.** This program is not available to individuals who use any state or federal government-funded healthcare program to cover a portion of medication costs, such as Medicare, Medicaid, TRICARE, Department of Defense, or Veterans Administration

• Eligibility to receive a Savings Program benefit is subject to meeting the program requirements at the time of each use

• Program terms will expire at the end of each calendar year. Program subject to change or discontinuation without notice, including in specific states. Offer not valid for TRACLEER® in CA or MA or for MA residents (for 62.5 mg and 125 mg only)

• As a condition of participating in this program, you must ensure that you comply with any co-payment disclosure requirements of your insurance carrier or third-party payer, including disclosing to your insurer the amount of co-payment support received from this program. By receiving a Savings Program benefit, you are giving permission for information related to your Savings Program enrollment to be shared with your healthcare provider(s)

• Before using the program, it is important that you understand that Actelion Pharmaceuticals US, Inc., will not share information with anyone else except as required by law. This program offer may not be combined with any other coupon, discount, prescription savings card, free trial, or other offer. The selling, purchasing, trading, or counterfeiting of this card is prohibited. Offer good only in the United States and the Commonwealth of Puerto Rico, excluding states noted above. Void where prohibited, taxed, or otherwise restricted by law

Janssen CarePath is in no way an extension of medical treatment provided by healthcare professionals to individual patients. You may discontinue your participation at any time by calling 866-228-3546, Monday–Friday, 8:00 AM–8:00 PM ET



**Need help?** Call **866-228-3546**
Monday–Friday, 8:00 AM–8:00 PM ET
Multilingual phone support available

**Please read the full Prescribing Information for OPSUMIT® and Medication Guide for OPSUMIT®, including an Important Warning about Serious Birth Defects. Please read the full Prescribing Information, including Boxed Warning about liver injury and birth defects, for TRACLEER® and Medication Guide for TRACLEER®. Please read full Prescribing Information for UPTRAVI® and Patient Product Information for UPTRAVI®.**

© Actelion Pharmaceuticals US, Inc. 2023   07/23   cp-184256v3



# Exhibit 20









# Savings Program
## for eligible commercially insured patients
## Pay $5 per dose

$26,000 maximum program benefit per calendar year.
Terms expire at the end of each calendar year and may change.
See program requirements below.

**Get savings on your out-of-pocket medication costs for your Janssen medication. Depending on your health insurance plan, savings may apply toward co-pay, co-insurance, or deductible.**

**Program does not cover costs to give you your treatment.**

## ① Enroll in the Savings Program

**By phone**
877-CarePath (877-227-3728)

— OR —

**Online at**
**MyJanssenCarePath.com**

### Am I eligible?
You may be eligible for the Janssen CarePath Savings Program if you meet the minimum age requirements in product labeling — age 18 or older for TALVEY™ and TECVAYLI® — and currently use commercial or private health insurance for DARZALEX®, DARZALEX FASPRO®, TALVEY™, or TECVAYLI®. There is no income requirement.

The Janssen CarePath Savings Program is based on medication costs only and does not include costs to give you your injections.

### Other requirements
- This program is only for people who meet the minimum age requirements (see above) and are using commercial or private health insurance for their Janssen medication. This includes plans from the Health Insurance Marketplace. This program is not for people who use any state or federal government-funded healthcare program. Examples of these programs are Medicare, Medicaid, TRICARE, Department of Defense, and Veterans Administration.
- You may not seek payment for the value received from this program from any health plan, patient assistance foundation, flexible spending account, or healthcare savings account.
- You must meet the program requirements every time you use the program.
- Program terms will expire at the end of each calendar year. The program may change or end without notice, including in specific states.
- To use this program, you must follow any health plan requirements, including telling your health plan how much co-payment support you get from this program. By getting a Savings Program benefit, you confirm that you have read, understood, and agree to the program requirements on this page, and you are giving permission for information about your Savings Program transactions to be shared with your healthcare provider(s). These transactions include rebates and any funds placed on the card or balance remaining on the card.
- Before you enroll in the program, you will be asked to provide personal information that may include your name, address, phone number, email address, and information related to your prescription medication insurance and treatment. This information is needed for Janssen Biotech, Inc., the maker of DARZALEX®, DARZALEX FASPRO®, TALVEY™, and TECVAYLI®, and our service providers to enroll you in the Janssen CarePath Savings Program. We may also use the information you give us to learn more about the people who use DARZALEX®, DARZALEX FASPRO®, TALVEY™, and TECVAYLI®, and to improve the information we give them. Janssen Biotech, Inc., will not share your information with anyone else except where legally allowed.
- If you use medical/primary insurance to pay for your medication, you need to submit a rebate request with an Explanation of Benefits (EOB) to get payment from the Savings Program. With your permission, your provider may submit the rebate request and EOB for you. Please make sure you and your provider know who will submit the rebate request.
- This program offer may not be used with any other coupon, discount, prescription savings card, free trial, or other offer. Offer good only in the United States and its territories. Void where prohibited, taxed, or limited by law.

You may end your participation in Janssen CarePath at any time by calling 877-CarePath (877-227-3728).

**Please read the full Prescribing Information for DARZALEX® and DARZALEX FASPRO® and discuss any questions you have with your doctor.**

**Please read full Prescribing Information, including Boxed Warning, and Medication Guides for TALVEY™ and TECVAYLI® and discuss any questions you have with your doctor.**

# ② How to use your Savings Program benefits

## Use our streamlined process for requesting a rebate

**Here's how it works:**

- Your provider or pharmacy may or may not collect your co-pay, based on your insurance coverage

- You receive your treatment with DARZALEX® (daratumumab), DARZALEX *FASPRO*® (daratumumab and hyaluronidase-fihj), TALVEY™ (talquetamab-tgvs), or TECVAYLI® (teclistamab-cqyv)
  - Your provider or pharmacy submits your claim to your healthcare insurance provider

- You and your provider receive an Explanation of Benefits (EOB) statement from your insurance
  - You are responsible for submitting the EOB to the Janssen CarePath Savings Program, or you can request your provider to submit the EOB on your behalf (see *How to submit a rebate request* below)

- The Janssen CarePath Savings Program reviews your EOB and issues rebate to your card, to you by check, or to your provider if you have assigned your benefits to your provider.

  NOTE: Your provider must provide a copy of the Health Insurance Claim Form—CMS-1500 (HICF) or Uniform Billing Form—CMS-1450 (UB-04) with EOB submissions.

Your Janssen CarePath Savings Program Virtual Payment Card can be used for DARZALEX®, DARZALEX *FASPRO*®, TALVEY™, and TECVAYLI®. **Your card is not a credit card. There is no charge for your card.** If your physician makes any changes to your medication, you must confirm your eligibility for the Savings Program, either online or by phone.

Your healthcare provider can visit **JanssenCarePathPortal.com** to create a Provider Portal Account to enroll you in the Janssen CarePath Savings Program, upload EOB forms from your insurance provider, and view your Savings Program requests and transactions.

**With a Janssen CarePath online account, you can manage your Savings Program benefits**



- Review your available benefits
- Submit Savings Program requests
- View benefit payment transactions
- Receive timely alerts and program updates

**Get started now...**
Visit **MyJanssenCarePath.com**

 **Need help?** Call **877-CarePath** (877-227-3728) Monday–Friday, 8:00 ᴀᴍ–8:00 ᴘᴍ ET

If you only want to check your eligibility and enroll in the Janssen CarePath Savings Program, visit **MyJanssenCarePath.com/express** or call 877-CarePath (877-227-3728).

---

## How to submit a rebate request

If you have created an online account, you may submit rebate requests online in your account. You can also submit your EOB by fax or by mail.

**At your request, your provider may submit rebate requests to the Savings Program on your behalf via the Provider Portal or by fax or mail.**

 **Online:**
**MyJanssenCarePath.com**

 **Fax:**
833-871-5345

 **Mail:**
Janssen CarePath Savings Program
2250 Perimeter Park Drive, Suite 300
Morrisville, NC 27560

Confirm with your provider who will submit rebate requests to the program—you or your provider at your request.

**Please read the full Prescribing Information for DARZALEX® and DARZALEX *FASPRO*® and discuss any questions you have with your doctor.**

**Please read full Prescribing Information, including Boxed Warning, and Medication Guides for TALVEY™ and TECVAYLI® and discuss any questions you have with your doctor.**

© Janssen Biotech, Inc. 2023   11/23   cp-381095v2



**EXHIBITS 21-23**

**CONFIDENTIAL – FILED UNDER SEAL**