

www.pbwt.com

March 1, 2024

Harry Sandick
Partner
(212) 336-2723
hsandick@pbwt.com

**By Email**

Hon. Freda L. Wolfson
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

> Re:     JJHCS's Opposition to SaveOnSP's February 20, 2024
> Motion for Clarification and Reconsideration
> *Johnson and Johnson Health Care Systems, Inc. v. Save On SP, LLC*
> No. 2:22-cv-02632 (JKS) (CLW)

Dear Judge Wolfson:

On behalf of Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), we write in opposition to the February 20, 2024 letter motion by Defendant Save On SP, LLC ("SaveOnSP") seeking clarification or reconsideration of portions of the Court's February 6, 2024 Order, Dkt. No. 192 (the "February 6 Order"). SaveOnSP's motion should be denied and the Court should leave its February 6 Order in place.

The February 6 Order was based on a careful review of the parties' contentions, which were presented through lengthy written submissions and oral argument. The Court's written decision contained some rulings in favor of each party and thereby brought to an end months of disputes over a host of issues. That Order also provided guidance and a path forward for the parties to address those and similar issues in the future.

Now, in the immediate aftermath of the decision, SaveOnSP asks the Court for a "do-over" on no fewer than six different aspects of the Court's February 6 Order. Simply put,

Hon. Freda L. Wolfson
March 1, 2024
Page 2

SaveOnSP is asking the Court to revisit virtually every issue on which it did not prevail. But the law does not allow litigants to make the same arguments, based on the same evidence, over and over again. Rather, the discovery process depends on parties accepting that they will win some and lose some, and that as to the latter, they must move on with the case as best they can. This is how JJHCS has responded to the portions of the February 6 Order in which SaveOnSP prevailed. Rather than submit a 21-page brief asking the Court to reverse itself on every issue it lost, JJHCS has taken extensive efforts to comply with the Court's order by collecting new documents, running search terms, and engaging in meet-and-confer discussions with SaveOnSP counsel. Whether or not we agreed with each specific aspect of the Court's ruling, we respect it and will abide by it. SaveOnSP should not be permitted to do otherwise.

SaveOnSP can have no legitimate complaints as to process or substance. As to process, the February 6 Order was only decided after both sides had ample opportunity to present their arguments. For example, on both the issues of (1) terms and conditions and (2) ancillary financial documents, there was full briefing by the parties on two occasions—first in February 2023, (Dkt. No. 79), and again in August and September 2023, (Dkt. Nos. 146 and 150). In both March 2023 and October 2023, when Judge Waldor heard arguments on the issues presented by these motions, she declined to grant the motions, telling SaveOnSP's counsel that it needed to narrow its requests. (Mar. 17, 2023 Tr. at 34:5–35:21, 46:14–47:1; Dkt. No. 173). For weeks, SaveOnSP ignored Judge Waldor's order, and then elected only to propose somewhat narrowed search terms, leaving its broad requests in place just as they were at the outset of discovery. Finally, in January 2024, Your Honor heard argument for more than two hours on the issues raised in the current motion and then issued a thorough 30-page opinion in which each argument made

Hon. Freda L. Wolfson
March 1, 2024
Page 3

by counsel was described, analyzed, and decided. After all of this process and opportunity to be heard, there is no need for further briefing or argument on the merits of the issues raised in SaveOnSP's current motion. Win or lose, it is time for the parties to move on.

As to substance, the law mandates denial of this motion. Reconsideration only can be granted when there are new facts, new law, or a clear error of fact or law in the underlying opinion. None of these are present here. SaveOnSP does not even allege that there has been a change in the law or that the February 6 Order includes a clear error of fact or law. SaveOnSP does make some intermittent efforts to identify new facts, but as demonstrated below, while there are occasionally new *documents* identified by SaveOnSP, there are no new *facts* presented. A motion for clarification, to the extent that courts entertain them at all, must comply with the same requirements as a motion for reconsideration; at a minimum, there must be some actual ambiguity in the order being addressed, and no such ambiguity exists in the February 6 Order.

Finally, to grant SaveOnSP's motion, even in part, will only encourage this strategy of endless relitigation. Once the parties learn that serial motion practice is rewarded even with partial victories, the incentives are created to do what SaveOnSP has done here: to contest every defeat, imposing unnecessary cost and burden on the prevailing party and the Court, keeping on until some of the losses are flipped into victories. Nor is this the first time that SaveOnSP has sought to relitigate issues already decided by the Court.[1] For all of these reasons, we ask the Court to deny the motion.

---

[1] *See, e.g.*, Dec. 28, 2023 Ltr. from E. Wohlforth to Hon. Wolfson (relitigating custodian issue); Jan. 16, 2024 Ltr. from E. Wohlforth to Hon. Wolfson (search terms for CAP custodians); Feb. 7, 2024 Ltr. from E. Wohlforth to Hon. Wolfson (relitigating SaveOnSP modifier in CAP search string); Feb. 16, 2024 Ltr. from E. Wohlforth to Hon. Wolfson (same).

Hon. Freda L. Wolfson
March 1, 2024
Page 4


I.     **SaveOnSP Misstates The Applicable Legal Standard For Its "Motion For Clarification"**

SaveOnSP ignores the clear standard in this District, repeatedly affirmed by many courts, that motions for clarification are "evaluated under the standard for a motion for reconsideration in this jurisdiction." *Lynch v. Tropicana Prods., Inc.*, 2013 WL 4804528, at *1 (D.N.J. Sept. 9, 2013); *see, e.g.*, *Fastware, LLC v. Gold Type Bus. Machs., Inc.*, 2009 WL 2151753, at *2 (D.N.J. July 14, 2009); *Nye v. Ingersoll Rand Co.*, 2011 WL 253957, at *3 (D.N.J. Jan. 25, 2011). SaveOnSP cannot avoid complying with that demanding standard simply by slapping the label of "clarification" on what is in essence a motion for reconsideration.

"Reconsideration is 'an extraordinary remedy' that is to be granted 'very sparingly.'" *Asirifi v. Omni Asset Mgmt., LLC*, 2013 WL 4858711, at *1 (D.N.J. Sept. 11, 2013) (citations omitted). Local Rule 7.1(i), which governs motions for reconsideration, requires that the moving party must demonstrate either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Andreyko v. Sunrise Senior Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014) (alteration in original) (citations omitted). In other words, motions for reconsideration are meant to "correct manifest errors of law or fact or to present newly discovered evidence." *Mid-Am. Salt, LLC v. Morris Cnty. Cooperative Pricing Council*, 964 F.3d 218, 230 (3d Cir. 2020).

Reconsideration "is not warranted where (1) the movant simply repeats the cases and arguments previously analyzed by the court, or (2) the movant has filed the motion merely to disagree with or relitigate the court's initial decision." *E.g.*, *Ebert v. Twp. of Hamilton*, 2019 WL

Hon. Freda L. Wolfson
March 1, 2024
Page 5

5782872, at *2 (D.N.J. Nov. 6, 2019); *see also Echols v. United States*, 2022 WL 16576489, at *1 (D.N.J. Nov. 1, 2022) ("Mere disagreement with a court's decision is not an appropriate basis upon which to bring a motion of reconsideration."); *Lynch*, 2013 WL 4804528, at *1 ("Local Rule 7.1(i) . . . does not contemplate a recapitulation of arguments considered by the Court before rendering its original decision."); *Tehan v. Disability Mgmt. Servs., Inc.*, 111 F. Supp. 2d 542, 549 (D.N.J. 2000) (noting that a motion for reconsideration "will not be granted where a party simply asks the court to analyze the same facts and cases it had already considered" to come to a different conclusion; *Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990) ("A motion for reconsideration is improper when it is used to ask Court to rethink what it had already thought through—rightly or wrongly." (citations omitted)). For the reasons discussed below, SaveOnSP does not even approach this legal standard.

## II.     The Court's Order Requires No Clarification

### A.     There Is No Ambiguity In The Court's Order That JJHCS Produce Documents Reflecting JJHCS Enforcement Instructions And Policy That Concern A Single Terms & Conditions Provision

The February 6 Order is pellucid with respect to JJHCS's discovery obligations. There the Court concluded:

> *to strike the proper balance and considering proportionality*, it is appropriate for Plaintiff to search for, and produce, documents reflecting the company's enforcement instructions and policy, during the entirety of the agreed upon discovery time frame (April 2016-November 2023), *concerning eligibility criteria set forth in the provision: "may not be used with any other coupon, discount, prescription savings card, free trial, or other offer."*

Dkt. No. 192 at 12–13 (emphasis added). JJHCS's obligations under the Order are plain: they relate to the key provision in the CarePath terms and conditions and not to all eligibility provisions

Hon. Freda L. Wolfson
March 1, 2024
Page 6

that CarePath uses.  The Court did not require JJHCS to produce documents concerning other eligibility criteria, such as whether a patient was enrolled in Medicare or Medicaid, which are not relevant.

   In the absence of any basis for reconsideration, SaveOnSP asks for "clarification" that Your Honor *sub silentio* intended to order JJHCS to produce documents regarding its enforcement of *all* CarePath eligibility criteria.  Mot. at 4.[2]  SaveOnSP's motion does not withstand even minimal scrutiny.  The Court's ruling could scarcely have been more clear:  JJHCS must produce documents "concerning eligibility criteria set forth **in the provision**: 'may not be used with any other coupon, discount, prescription savings card, free trial, or other offer.'"  Dkt. No. 192 at 13 (emphasis added).  This is not something that requires clarification.  Nor has there been a change in the law, new evidence, or a "clear error of law or fact or to prevent manifest injustice" such that reconsideration is appropriate.  *See Ebert*, 2019 WL 5782872, at *2.  SaveOnSP raised nearly identical arguments in the parties' joint August 24, 2023 submission, Dkt. No. 146 at 8–9, and the Court addressed those arguments both at the January 24 conference and in the February 6 Order.  SaveOnSP brought this motion "merely" because it "disagree[s] with" the February 6 Order and wishes to "relitigate the [C]ourt's initial decisions."  *Ebert*, 2019 WL 5782872, at *2.  This is plainly improper.

---

[2] In a footnote, SaveOnSP argues in the alternative that, if the Court intended to limit its ruling to enforcement of the "coupon, discount, prescription savings card, free trial, or other offer" provision, then "Your Honor should reconsider that ruling based on documents produced after the parties submitted their joint letter."  *Mot.* at 4 n.2.  SaveOnSP raises this request only in a footnote, which is improper and provides another basis to reject SaveOnSP's extraordinary relief.  *See John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.").  Regardless, the argument is meritless for the reasons discussed above.  *See* pp. 5–6.

Hon. Freda L. Wolfson
March 1, 2024
Page 7

Moreover, during the hearing, the Court repeatedly emphasized that although SaveOnSP may be entitled to "some understanding of, generally what are [JJHCS's] enforcement efforts that [it] take[s] with regard to eligibility criteria," discovery on this issue must "be cabined in some way."  Jan. 24, 2024 Tr. at 28:9–19 ("I don't want it to be so broad because there are lots of things here and much of it may not be relevant.  So I think . . . they have to understand, how do you go about enforcing, when do you do so, and there is more information that is needed.").  The February 6 Order reflects this balancing, stating that "to strike the proper balance and considering proportionality," JJHCS need only produce documents concerning eligibility criteria set forth "in the provision . . . 'may not be used with any other coupon, discount, prescription savings card, free trial, or other offer.'"  Dkt. No. 192 at 12–13.

Even if this Court were to grant SaveOnSP's wish and hear this motion anew, SaveOnSP's motion should still be denied on the merits for the same reasons that underlie the Court's February 6 Order:  the additional documents SaveOnSP seeks about enforcement of eligibility criteria that are not at issue are irrelevant.  SaveOnSP argues that if JJHCS did not enforce the "other offer" provision against individuals enrolled in SaveOnSP until shortly before it filed this lawsuit, but did enforce other CarePath eligibility criteria like age or enrollment in government-funded health plans, then this would be evidence that JJHCS did not actually believe that SaveOnSP members were ineligible for CarePath under the applicable terms and conditions.  Mot. at 3.  This is an obvious *non sequitur*.  Whether JJHCS enforced the Medicare and Medicaid eligibility provisions (which implicate wholly distinct regulatory considerations) has no bearing, and gives no indication, regarding the meaning or enforcement of the "coupon, discount, prescription savings card, free trial, or other offer" provision at issue in this litigation.

Hon. Freda L. Wolfson
March 1, 2024
Page 8

Moreover, "[i]t is hornbook law that '[t]he waiver of one right under a contract does not necessarily waive other rights under the contract; rather, the parties to a contract may waive parts of its provisions.'" *Mister Softee, Inc. v. Amanollahi*, 2016 WL 5745105, at *18 (D.N.J. Sept. 30, 2016) (second alteration in original) (quoting Williston on Contracts § 39:18 (4th ed.)). For example, "a waiver of the right to timely performance under one provision of a contract does not necessarily operate to waive of all of the contract's time specifications." Williston on Contracts § 39:18 (4th ed.). Ultimately, the tortious interference claim in this case does not turn on the consistency of JJHCS's enforcement across different portions of the terms and conditions; rather it turns on whether SaveOnSP tortiously interfered, and these documents are irrelevant to determining this issue.

**B.    There Is No Ambiguity In The Court's Order Relating To Financial Viability Documents, Which Does Not Require JJHCS To Produce Budget-Related Communications Or "Return On Investment" Documents**

SaveOnSP next claims that it is seeking "clarification" that JJHCS documents that relate to CarePath's budget communications and return on investment must be produced, based on the Court's ruling that certain documents relating to financial viability must be produced. Mot. at 5–8. Again, SaveOnSP fails to demonstrate any ambiguity in the Court's rulings and rather seeks a do-over based on "a recapitulation of arguments considered by the Court before rendering its original decision." *Lynch*, 2013 WL 4804528, at *1.

The Court's ruling on the subject of budget-related communications and financial viability documents is clear:

> What matters for purposes of liability and damages are not the changes that Plaintiff contemplated implementing, but actual changes that occurred, and in that regard, Plaintiff has produced documents . . . . For the same reasons,

14937676

Hon. Freda L. Wolfson
March 1, 2024
Page 9

> I find that the ***communications of budgetary decisions are not relevant*** to Defendant's defenses or Plaintiff's claims; however, as I expressed during the hearing, I do find that communications involving the ***viability of CarePath is a relevant topic which Defendant may explore***. As such, in addition to the documents that Plaintiff has already produced, the parties are directed . . . to identify those communications related to the viability of CarePath.

Dkt. 192 at 19 (emphasis added). The same is true for the Court's ruling denying SaveOnSP's request for documents relating to the so-called CarePath "return on investment." *Id.* at 22 (rejecting SaveOnSP's request that JJHCS produce return on investment documents because "even if J&J and its entities ultimately derive profits—even very generous ones—from selling the drugs at issue, that fact does not disprove Plaintiff's alleged harm in this case, either to itself or to the public").

The Court's written Order is no different from what the Court stated at the hearing, and is equally clear. *See, e.g.*, Jan. 24, 2024 Tr. at 68:3–10 ("I am saying discovery about the viability of the program is fine. That is the limitation. And so that's what I'm focused on. But that's why I'm saying, ***things that you're saying about, oh, but let's see how much money J&J makes on Stelara, let's see how much money J&J makes overall, is really not the issue. I want to focus on the program itself***." (emphasis added)).

The Court need go no further than this in order to deny SaveOnSP's motion for clarification. There is nothing to clarify. If the Court does consider the merits, we note that SaveOnSP mischaracterizes the parties' meet-and-confer discussions, which it claims supports undoing the Court's February 6 Order. What happened in the meet-and-confer discussions after the January 24 Conference is that SaveOnSP insisted that JJHCS (1) produce documents that the Court refused to compel and expressly did not order JJHCS to produce, and (2) use search terms

Hon. Freda L. Wolfson
March 1, 2024
Page 10

aimed at locating these irrelevant documents.[3]  SaveOnSP proposed search terms aimed not at

financial viability issues but at the budget-related communications that the Court just ruled

SaveOnSP was not entitled to receive.  For example, SaveOnSP asked to JJHCS to search any

document in which the term "budget" was used within close proximity to generic terms such as

"chang[es]," "increase[es]," "decreas[es]," or "adjust[ments]."  That SaveOnSP continued to insist

on receiving the very documents that that were the subject of its unsuccessful motion does not

reflect any lack of clarity in the Court's ruling.  Rather, it showcases SaveOnSP's intransigence

and its latest refusal to abide by a court order.

JJHCS has already told SaveOnSP that it will comply with the Court's Order and

produce documents related to CarePath's financial viability.  And to be clear, if JJHCS identifies

responsive, non-privileged documents discussing *both* relevant topics (e.g., CarePath's viability)

and irrelevant topics (e.g., return on investment or budget-related communications), JJHCS will

produce those documents.  What JJHCS is unwilling to do and is not required to do is to use

SaveOnSP's search terms, which are aimed at producing the very documents this Court held

SaveOnSP was not entitled to receive.

**C.    There Is No Ambiguity In The Court's Order Relating To Patient Adherence
Documents**

SaveOnSP also seeks "clarification" that JJHCS must produce documents

containing information sufficient to quantify the monetary benefit that SaveOnSP generated for

---

[3] In a January 29 letter, SaveOnSP demanded that JJHCS "produce documents showing how J&J sets the level of CarePath copay assistance funds that it offers patients, how it decides on the CarePath budget including the factors that go into this decision, where that decision is made, and the relevant communications about the budget."  Ex. 1, Jan. 29, 2024 Ltr. from E. Snow to J. Long at 1.

Hon. Freda L. Wolfson
March 1, 2024
Page 11

JJHCS, such as data showing the revenue that JJHCS received from drug sales that members of SaveOn-advised plans used.  Mot. at 9–11.  Just as with SaveOnSP's other points, this issue requires no clarification.  That much is clear even from SaveOnSP's motion, which explicitly quotes from Your Honor's ruling that "opened a '*small window* for Defendant to explore *documents that may reflect whether more patients are taking Janssen drugs as a result of being on the SaveOnSp Program*.'"  Mot. at 9 (emphasis added) (quoting Dkt. 192 at 22).

Notwithstanding this unmistakable instruction, SaveOnSP cites to its August 2023 moving papers and argues that "if the same conduct that [JJHCS] says caused it a financial injury *also* caused J&J a financial benefit, SaveOn is entitled to quantify that benefit and present it as an offset to J&J's alleged damages."  Mot. at 9, 11 (emphasis in original).  In so doing, SaveOnSP again runs afoul of the applicable legal standard.  *See Ebert*, 2019 WL 5782872, at *2 (reconsideration "is not warranted where (1) the movant simply repeats the cases and arguments previously analyzed by the court, or (2) the movant has filed the motion merely to disagree with or relitigate the court's initial decision").  There is no new law cited, no asserted clear error of fact or law, no new evidence, nothing at all other than another request for a do-over.  *See Oritani*, 744 F. Supp. at 1314 ("A motion for reconsideration is improper when it is used to ask Court to rethink what it had already thought through—rightly or wrongly.").

The Court already heard and rejected this same argument in January, explaining that "even if J&J and its entities ultimately derive profits – even very generous ones – from selling the drugs at issue, that fact does not disprove Plaintiff's alleged harm in this case, either to itself or to the public."  Dkt. No. 192 at 22.  SaveOnSP cannot argue that this direct ruling, which forecloses discovery on the issue, is somehow vague.

14937676

Hon. Freda L. Wolfson
March 1, 2024
Page 12

Again, the Court can and should stop here and deny SaveOnSP's motion for
clarification without revisiting the underlying merits of the February 6 Order.  Even if the Court
again considers the merits, however, the motion still fails.  As with its other requests, SaveOnSP
fails to identify a shred of new evidence in support of its motion.  Rather, the two documents on
which it relies—JJHCS_00036487 and JJHCS_00140340—were produced on April 28, 2023
(months before its August brief) and December 22, 2023 (more than a month prior to Your Honor's
ruling).  Neither present a basis to reopen the issue.  In any event, SaveOnSP would not need
JJHCS's documents if it sought to advance an adherence argument at trial (that is, to argue that its
actions somehow result in increased adherence by patients and, therefore, more utilization of
JJHCS drugs).  SaveOnSP—and its business partner—already have produced documents showing

██████████████████████████████████████████████████████████████

████████████████████.  *E.g.*, Ex. 2 (SOSP_0695753) ("██████████████████████

████████████).[4]  Therefore, the purported relevance of these documents is unfounded,
and SaveOnSP's motion should be denied.

## III.    SaveOnSP's Motion For Reconsideration Should Be Denied

SaveOnSP similarly falls far short of the reconsideration standard in each of its
three sub-motions where it expressly seeks reconsideration.

---

[4] ██████████████████████████████████████████████████   *E.g.*,  Ex.  3
(ACCREDO00013591) ██████████████████████████████████████████████████████████
Ex. 4 (ACCREDO00013597) ██████████████████████████████████████████████████
████████████████████████████████████████████████████).

Hon. Freda L. Wolfson
March 1, 2024
Page 13

**A.   There Is No Basis For Reconsideration With Respect To The Production Of Budget-Related Communications**

In the February 6 Order, Your Honor concluded that as to issues concerning CarePath's budget communications, "[JJHCS] has the better argument" and "communications of budgetary decisions are not relevant to Defendant's defenses or Plaintiff's claims." Dkt. No. 192 at 19. As discussed above at *infra* § II.B, SaveOnSP tries to evade this ruling in the first part of its motion for clarification by contending that budget-related communications must be produced in order to ensure that JJHCS complies with the Court's order that it produce documents relating to the financial viability of CarePath. That portion of SaveOnSP's motion should be denied. There is nothing unclear or incorrect about the Court's order, which specifically rejected the relief that SaveOnSP seeks.

Now, through the first part of its motion for reconsideration, SaveOnSP proposes another way to evade the Court's order by asking that the Court direct JJHCS to produce one category of budget-related communications that the Court already deemed irrelevant: documents concerning the "reasons why J&J set the annual maximum amounts of copay assistance for the drugs at issue at the levels that it did, and why J&J chose to maintain those levels after learning of SaveOn's services (and those of so-called accumulators and maximizers)." Mot. at 11–12. SaveOnSP claims that these documents are necessary to support its so-called "mitigation defense." But SaveOnSP has not satisfied the high bar for a motion for reconsideration.

SaveOnSP does not—and cannot—claim an intervening change in the law or a clear error of law and fact. Therefore, reconsideration only can be entertained based on new evidence. None exists here. While SaveOnSP identifies six documents that it claims are newly discovered

Hon. Freda L. Wolfson
March 1, 2024
Page 14

evidence meriting reconsideration, Mot. at 12–14, reconsideration may only be granted because of

newly discovered evidence when "new evidence was not available when the court [issued its

order]," *Andreyko*, 993 F. Supp. 2d at 478 (alteration in original).  Much of this purported newly

discovered evidence was available well before the Court denied SaveOnSP's motion to compel.

   For example, SaveOnSP claims that reconsideration is warranted because

"[d]ocuments produced since SaveOn filed its motion show that ███████████████████

████████████████████████████████████████████████████████████████████

██████████  Mot. at 12.  This is not "new evidence"—SaveOnSP made an identical argument

nearly ***six months ago*** based on documents making the same points that it had already received in

discovery.  *See* Dkt. 150 at 5 (claiming, based on two JJHCS-produced documents, that SaveOnSP

was entitled to more documents on the CarePath budget because they could show "JJHCS was not

injured, and failed to mitigate its damages, in part because JJHCS could have reduced the CarePath

budget but chose not to do so").

   In addition, four of the cited documents (TRIALCARD_00001884;

TRIALCARD_00002732; TRIALCARD_00003383; TRIALCARD_00004935) were produced

on October 26, 2023, and one (JJHCS_00141359) was produced on December 19, 2023.[5]  If

SaveOnSP wished to bring these documents to Your Honor's attention, SaveOnSP should have

sought leave to file a supplemental brief before the January 24 conference, or at least addressed

---

[5] Only one (JJHCS_00164633) was produced after Your Honor's oral ruling on SaveOnSP's
motion to compel.  And, as SaveOnSP acknowledges, ██████████████████████████████
██████████████████████████████████████████████████████████.  *See* Mot. at
12 (describing the cited document as ████████████████████
██████████████████████████████████████████████████").

Hon. Freda L. Wolfson
March 1, 2024
Page 15

them at the January 24 conference.  *See Polizzi Meats, Inc. v. Aetna Life & Cas. Co.*, 931 F. Supp. 328, 339 (D.N.J. 1996) (explaining that "[i]t is not the purpose of [a motion for reconsideration] to allow the losing party on a motion an opportunity to supplement its brief on the issues presented in the original motion" or bring to the Court's attention matters that "were overlooked by counsel").

       To the extent that SaveOnSP's motion is based on a theory that that the Court never really knew that SaveOnSP wanted budget-related communications for use in mitigation, this is incorrect.  In fact, the February 6 Order acknowledges that SaveOnSP sought the documents at issue to bolster an intended mitigation defense, and nonetheless denied SaveOnSP's motion to compel production of those documents.  *See* Feb. 6, 2024 Order at 18 ("Defendant claims that Plaintiff was not injured and has failed to mitigate its damages by not reducing CarePath's budget when it had the choice to do so.").[6]  The record thus reflects that Your Honor did not overlook the potential mitigation issue in denying SaveOnSP's motion to compel.  The Court already considered and rejected the argument made by SaveOnSP in this motion.

       At any rate, if the Court nonetheless reaches the merits for a do-over, the motion should be denied because the requested documents are irrelevant to SaveOnSP's proposed mitigation defense.  SaveOnSP claims that it is entitled to documents regarding the overall

---

[6] It is no surprise that the Court acknowledged this claim, as SaveOnSP made in several places, including in a submission to the Court and at oral argument.  Dkt. 165 (October 25, 2023 Joint Letter) at 2 (claiming that JJHCS must produce documents from additional custodians because those documents "dispense of [JJHCS's] claims by showing that it failed to mitigate its supposed damages"); Oct. 30, 2023 Tr. at 8:11–15 ("[O]ne of the issues in the case is whether Johnson & Johnson can identify people who take Janssen drugs who are members of SaveOn pharmacy. It's a critical issue in the case because if they can do that, yet they continue to pay them, CarePath funds, that's a failure to mitigate.").

Hon. Freda L. Wolfson
March 1, 2024
Page 16

CarePath budget because it has identified documents indicating that JJHCS ███████████

████████████████████████████████████████████████████

████████████████████████████████████████.” Mot. at 12. However, SaveOnSP does

not explain why the ostensible relevance of JJHCS's decision-making regarding annual maximum

benefits for *individual participants* in the CarePath program who are also enrolled in the

SaveOnSP program entitles it to irrelevant communications regarding the *overall budget* for the

CarePath program. Nor would there have been any reason for JJHCS to have responded to

SaveOnSP's wrongdoing by reducing the CarePath annual maximums for all patients, including

those who were not coerced to enroll in the SaveOnSP program. SaveOnSP has no argument for

the relevance of documents regarding the overall CarePath budget, which is why the Court denied

this motion in the first place.

> **B.** **There Is No Basis For Reconsideration With Respect To The Production Of Documents Relating To The Purpose of CarePath**

During oral argument on January 24, 2024, counsel for SaveOnSP made precisely

the same argument that it has been making for months: that SaveOnSP is entitled to discovery on

the purpose of CarePath because "CarePath is actually the marketing program," such that

threatening the viability of CarePath does not cause public harm as required to violate General

Business Law Section 349. *See* Jan. 24, 2024 Tr. at 60:9–18. After hearing from both parties, the

Court rejected this argument, finding that "even if J&J and its entities ultimately derive profits—

14937676

Hon. Freda L. Wolfson
March 1, 2024
Page 17

even very generous ones—from selling the drugs at issue, that fact does not disprove Plaintiff's

alleged harm in this case, either to itself or to the public." Dkt. No. 192 at 22.[7]

As with the other issues presented, the Court can and should deny the motion for

reconsideration at this point; the legal standard for reconsideration has not been satisfied. If the

Court is inclined to reach the merits, the question whether CarePath operates for a charitable or a

business purpose is categorically irrelevant to JJHCS's claim under GBL, as Your Honor already

has ruled. *See* Dkt. No. 192 at 21; *see also Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d

256, 264 (2d Cir. 1995) (affirming injunctive relief granted to corporate competitor and clarifying

that "[t]he critical question, then, is whether the matter affects the public interest in New York, not

whether the suit is brought by a consumer or a competitor"). The relevant inquiry, as Judge

Vazquez emphasized in denying SaveOnSP's motion to dismiss, is whether SaveOnSP engaged in

deceptive trade practices and if so, whether that conduct (1) caused JJHCS to suffer damages, and

(2) the public to suffer harm. *See* Dkt. No. 68 at 13 (concluding that JJHCS sustained its burden

by alleging that it suffered a direct harm as a result of SaveOnSP's conduct and "some harm to the

public at large"). The purpose of the CarePath program has no bearing on these issues.

---

[7] In support of its reconsideration bid, SaveOnSP cites a "recent" Congressional report on drug pricing. Mot. at 16–17. Far from being "recent," this Congressional report is dated December 2021, and it is improper for SaveOnSP to mischaracterize it as new evidence supporting reconsideration. *See Andreyko*, 993 F. Supp. 2d at 478; *Polizzi Meats*, 931 F. Supp. at 339. Even if the report were properly before the Court and relevant to this case (and it is neither of those things), SaveOnSP's warped view of the world would not carry the day. The very portion quoted by SaveOnSP recognizes that patient assistance programs "defray some patients' out of pocket costs"—and indeed, it goes on to characterize such programs as "***an important lifeline*** for some patients." *See* Staff of House Committee on Oversight and Reform, 117th Cong., Drug Pricing Investigation (Dec. 2021), at 159–60 (emphasis added).

Hon. Freda L. Wolfson
March 1, 2024
Page 18

The cases on which SaveOnSP relies stand for the unremarkable proposition that to succeed, the gravamen of JJHCS's claim under Section 349 must be harm to the public, rather than harm only to JJHCS's business.  There is ample evidence of the type of public harm that flows from SaveOnSP's conduct, beginning with the undue stress and confusion that SaveOnSP causes patients to suffer by "engineering a false denial of coverage at the point of sale to coerce patients into enrolling in the SaveOnSP Program."  Comp. ¶ 113.  Discovery has not only confirmed this source of public harm, but also revealed that the public harm SaveOnSP causes includes its complicated enrollment process, delayed shipments of medication, and financial harm to patients. The purpose of CarePath is irrelevant to the Section 349 claim, and there is no basis to disturb the Court's February 6 Order.

      **C.**      **There Is No Basis For Reconsideration With Respect To The Production Of Documents Relating To Drug Pricing**

SaveOnSP also moves for reconsideration with respect to the Court's denial of discovery relating to the specialty drug pricing of certain Janssen drugs.  On this issue as with all of the issues in SaveOnSP's motion, the February 6 Order was clear.  The Court concluded that SaveOnSP's "arguments on this issue are not persuasive."  Dkt. No. 192 at 23.  Instead, the Court credited JJHCS's argument that "***the sales and profitability of Janssen drugs is not a justification for Defendant's alleged tortious conduct***" and "[i]ndeed, information on the pricing of the drugs does not shed light on Plaintiff's alleged harm to the CarePath program or somehow support Defendant's theory."  *Id.* at 23 (emphasis added).

Again, SaveOnSP has not identified any "intervening change in controlling law" or any "new evidence not previously available" that could support a successful motion for

Hon. Freda L. Wolfson
March 1, 2024
Page 19

reconsideration.  *Ebert*, 2019 WL 5782872, at *2.  As noted above, SaveOnSP only points instead

to several government reports that are not new, having been released to the public in 2021 and

2022, well in advance of SaveOnSP's motion to compel.  SaveOnSP cannot now use a motion for

reconsideration as a means of saying what it wishes it could have said in its briefing on the motion

to compel.  *Groark v. Timek*, 2014 WL 12908801, at *2 (D.N.J. Oct. 2, 2014) (explaining that a

party must "include[] all its reasons in support of" a motion to compel in its initial motion and

"does not get a 'do over' after its motion was denied").  SaveOnSP also cites certain arguments

made by JJHCS at the January 24 conference as new evidence supporting reconsideration.  But, of

course, the "statements at oral argument of . . . counsel are not evidence."  *Altice USA, Inc. v. N.J.

Bd. of Pub. Utils.*, 2020 WL 359398, at *9 n.10 (D.N.J. Jan. 22, 2020).  Therefore, such statements

cannot be new evidence supporting a motion for reconsideration.  SaveOnSP should not be

permitted to divert the Court's attention from the impact of its own conduct by creating a side

show about drug pricing.

       In any event, SaveOnSP has no credible argument that the demanded pricing data

is relevant to this case.  As JJHCS has previously explained, pricing data is irrelevant because

"JJHCS has not alleged that the price of Janssen Drugs has changed due to an increased utilization

of CarePath funds or, more specifically, due to SaveOnSP's conduct," and JJHCS has not sought

from SaveOnSP damages on "lost profits on Janssen Drugs."  Dkt. No. 150 at 17.  SaveOnSP

offered a variety of speculative and unsupported theories for the relevance of these documents,

including that "the alleged benefit design of SaveOnSP-advised plans increases the sales of Janssen

Drugs."  *Id*. at 18.  But the Court rejected all of these SaveOnSP theories in denying SaveOnSP's

motion to compel, holding that "Defendant has not shown that documents on pricing of Janssen

Hon. Freda L. Wolfson
March 1, 2024
Page 20

drugs are relevant to Plaintiff's claims or Defendant's defenses" because JJHCS's "theory of harm does not relate in any way to lost profits or lowering drug prices."  Dkt. No. 192 at 24.

SaveOnSP now returns with yet another speculative theory on the relevance of these documents, contending without evidence or citation that "SaveOn's conduct helps lower [health care] costs for the vast majority of commercial health plan members."  Mot. at 20 (emphasis omitted).  This second bite at the apple fares no better than the first because it has the same fundamental defect: this contention is simply irrelevant to JJHCS's theory of harm.

SaveOnSP's remaining claim is that if evidence of drug pricing is admitted at trial, and if SaveOnSP makes false claims about JJHCS's drug pricing, JJHCS should not be permitted to rebut such arguments unless JJHCS also agrees today to produce entirely irrelevant documents to SaveOnSP.  This argument by SaveOnSP satisfies none of the three possible grounds for reconsideration:  no new evidence, no new law, no clear error by the trial court.  In addition, JJHCS repeatedly has made clear—including at the very conference cited by SaveOnSP—that it is "not planning to prove a case about our drug prices" and that evidence regarding drug pricing is "not something [it is] planning to present."  Jan. 24, 2024 Conf. Tr. 97:5–7, 98:1–2.  Indeed, we anticipate that at the appropriate time, JJHCS will make a motion *in limine* to exclude all evidence relating to the appropriateness of the pricing of Janssen drugs.

* * * *

Hon. Freda L. Wolfson
March 1, 2024
Page 21

       We appreciate Your Honor's attention to this matter, and we are available to answer

any questions.

                                       Respectfully submitted,

                                       */s/ Harry Sandick*
                                       Harry Sandick

cc:     Counsel for SaveOnSP

# Exhibit 1



Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Elizabeth Snow
Associate
212 390 9330
esnow@selendygay.com

January 29, 2024

**<u>Via E-mail</u>**

Julia Long
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jlong@pbwt.com

**Re:** ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC*** **(Case No. 2:22-cv-02632-ES-CLW)**

Dear Julia,

We write regarding Judge Wolfson's rulings regarding Johnson & Johnson's
("<u>J&J</u>") financial information at the January 24, 2024 conference.

## I.   CarePath Budget

Judge Wolfson ordered J&J to produce documents showing how J&J sets
the level of CarePath copay assistance funds that it offers patients, how it decides
on the CarePath budget including the factors that go into this decision, where that
decision is made, and the relevant communications about the budget. *See* Tr.
69:24-70:7.

*First*, please produce noncustodial documents including:

- ███████████████████████████ JJHCS_00026191, for Imbru-
  vica, Opsumit, Prezcobix, Tracleer, Uptravi, and Ventavis, and for all
  drugs at issue in this case through November 7, 2023;

- █████████████████████████████████████████████
  JJHCS_00130090, for Imbruvica and Rybrevant and for all drugs at is-
  sue in this case through November 7, 2023;

Julia Long
January 29, 2024

- ████████████████████████████████████████████
  JJHCS_00130090, for Imbruvica, Tracleer, Uptravi, and Ventavis and
  for all drugs at issue in this case through November 7, 2023; and

- any presentations and meeting minutes regarding meetings in which
  J&J discussed the annual copay assistance maximum benefit for each
  drug at issue in this case.

*Second*, please identify custodians within J&J who are likely to have docu-
ments and communications relevant to these subjects (including custodians who
might work for J&J entities other than JJHCS, such as Janssen). In doing so,
please identify ████████████████████████████████████████████
███████████████████████████████████, JJHCS_00080656, you
will add as custodians. At a minimum, ███████████████████████
███████████████████: (1) in
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
███████████████, *see* JJHCS_00141359; and (2)
█████████████████████████████████████████████████████
█████████████████████ JJHCS_00142489 at -491-92.

*Third*, please run the following search terms over the documents of the rel-
evant custodians from April 1, 2016 to November 7, 2023:

- Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth
  OR CP OR "WithMe" OR (with w/2 me) OR PAS OR "Patient Access So-
  lutions")

- ("20,000" OR "20k" OR "6,000" OR "6k" OR "9,100") w/10 (set* OR
  chang* OR determin* OR adjust* OR increas* OR decreas* OR main-
  tain* OR update*) AND (CarePath OR (care w/2 path) OR Carpath OR
  Carepth OR CP OR "WithMe" OR (with w/2 me) OR PAS OR "Patient
  Access Solutions" OR immunology OR IMM OR oncology OR ONC OR
  (Pulmonary w/2 Hypertension) OR PH OR PAH OR "infectious disease"
  OR ID OR Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica
  OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR
  Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis
  OR Zytiga)

If you object to adding any of these search terms on the basis of burden,
please provide hit counts of the unique documents identified by each term for each
custodian and in the aggregate for each custodian and all custodians.

*Fourth*, to the extent that J&J previously reviewed any documents identified
by these search terms and concluded that they were not responsive, please review
those documents again in light of Judge Wolfson's order.

Julia Long
January 29, 2024

SaveOn asks that J&J prioritize production of these documents.

## II.    Return on Investment

Special Master Wolfson also ordered J&J to produce documents and communications regarding J&J's actual and projected return on investment ("ROI") for CarePath as they relate to SaveOnSP. *See* Tr. 86:9-12, 88:13-16; RFP No. 29(i). We understand that this includes documents and communications regarding accumulators' and maximizers' effect on J&J's ROI, as J&J often used those phrases to refer to SaveOn. *See* Tr. 131:11-21.

*First*, please produce from noncustodial sources any analyses of J&J's actual or projected ROI for CarePath for any of the drugs at issue that refer to SaveOn, accumulators, or maximizers from April 1, 2016 through November 7, 2023.

*Second*, please identify the custodians likely to have documents and communications relating to J&J's actual or projected ROI for CarePath for any of the drugs at issue that refer to SaveOn, accumulators, or maximizers (including custodians who might work for J&J entities other than JJHCS, such as Janssen). Please include Blaisine Penkowski and ██████████████████████████████████████████████████████████████████████ *See* JJHCS_00132628.

*Third*, please run the following search terms over the documents of the relevant custodians from April 1, 2016 to November 7, 2023:

- ((lose* OR loss* OR (return w/4 investment) OR "ROI" OR returns OR (negative w/5 impact) OR (positive w/5 impact) OR (gross w/5 impact) OR (net w/5 impact) OR GTN OR "gross to net" OR (increase w/5 sales)) w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR PAS OR "Patient Access Solutions")) AND ("Save On" OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR accumulat* OR maximiz*)

- (((rebate* w/3 program*) OR (market* w/3 program*)) w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR PAS OR "Patient Access Solutions")) AND ("Save On" OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR accumulat* OR maximiz*)

*Fourth*, to the extent that J&J previously reviewed any documents identified by these search terms and concluded that they were not responsive, please review those documents again in light of Judge Wolfson's order.

Julia Long
January 29, 2024

       If you object to adding any of these search terms on the basis of burden, please provide hit counts of the unique documents identified by each term for each custodian and in the aggregate for each custodian and all custodians.

       We reserve all rights and ask for a response by February 5, 2024.

Best,

/s/ Elizabeth Snow

Elizabeth H. Snow
Associate

**EXHIBITS 2-4**

**CONFIDENTIAL – FILED UNDER SEAL**