# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

February 16, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

Re:  *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
     *No. 2:22-cv-02632 (JKS) (CLW)*

Dear Judge Wolfson:

In a motion on February 7, 2024, Defendant Save On SP, LLC ("**SaveOn**") moved Your Honor to compel Johnson & Johnson Health Care Systems, Inc. (with its affiliates, "**J&J**") to run the following search terms—"CAPa" OR "CAPm" OR "adjustment program" (the "CAP Terms")—over the files of its existing custodians, without any limitation, from July 1, 2022 to November 7, 2023, as part of J&J's refresh production. Since then, J&J has also refused to run the unlimited CAP Terms over the files of newly ordered custodians Quinton Kinne, Daphne Long-bothum, William Shontz, John Hoffman, L.D. Platt, Alison Barklage, Scott White, Blasine Pen-kowski, and Karen Lade for any time period. SaveOn thus brings this additional motion to compel J&J to run the unlimited CAP Terms for its new custodians as well.

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                                    Page 2

The Cost Adjustment Program or Copay Adjustment Program (the "CAP Program") is J&J's formal response to "accumulators" and "maximizers," which it believes includes SaveOn. Dkt. 166 at 4. Documents about the CAP Program go to the heart of SaveOn's mitigation defense: J&J used it to identify patients on SaveOn-advised plans or plans that it believed were maximizers or accumulators, Dkt. 166 Ex. 1, but it disbursed copay assistance funds to them anyway. Such evidence could limit or even eliminate J&J's claims for damages. Judge Waldor and Your Honor have both recognized the CAP Program's relevance. Dkt. 173 at 2-3; Dkt. 192 at 25-26.

In her November 7, 2023 Order, Judge Waldor ordered J&J to add Kinne, Longbothum, Shontz, Hoffman, Platt, and Barklage as custodians, noting that each was "identified with regard to the CAP program," Dkt 173 at 2; *see also* Ex. 1 at 110:20-111:5 (Jan. 24, 2024 Hr'g Tr.) ("[T]hese are CAP people."). In Your Honor's February 6, 2024 Order, Your Honor ordered J&J to add White, Penkowski, and Lade, who also had relevant documents regarding the CAP Program in particular and J&J's responses to accumulators, maximizers, and SaveOn generally. Dkt. 192 at 28-29.

In SaveOn's motions asking the Court to compel J&J to add these custodians, SaveOn asked that J&J run all previously agreed-upon search terms over their files. *See* Dkt 165 at 15; Ex. 2 (Dec. 28, 2023 Ltr.); Ex. 3 (Jan. 16, 2024 Ltr.). J&J previously agreed to run the CAP Terms for its existing custodians for the period from April 1, 2016 to July 1, 2022. Ex. 4 at App'x 1 & n.7 (Dec. 22, 2023 Ltr.). Remarkably, however, J&J now refuses to run the CAP Terms over any time

Hon. Freda L. Wolfson                                                                    Page 3

period for any new custodian without the limitation that the document also explicitly mention SaveOnSP. Ex. 5 (Feb. 14, 2024 Ltr.).[1]

      By refusing to run the CAP Terms without a SaveOn limiter, J&J renders the CAP Terms meaningless. J&J is already running search terms like SaveOnSP, SaveOn, SOSP, and other variations on SaveOn's name. *See* Ex. 4 at App'x 1 (Dec. 22, 2023 Ltr.). Running the CAP Terms limited to documents that already mention SaveOnSP means that J&J's proposed modification to the CAP Terms will result in ***no new documents***. This would be a highly perverse result: J&J would effectively run no new search terms related to the CAP Program across the files of the new custodians, who were found to be highly relevant to that program.

      Documents related to the CAP Program are relevant whether they explicitly mention SaveOn or not, because the purpose of the CAP Program is to respond to SaveOn and businesses like it. *See, e.g.,* Ex. 6, at 1, 2, 8 (TRIALCARD_00005044) (███████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████). From other custodians, J&J has produced documents relevant to that program that do not refer directly to SaveOn. *See, e.g.*, Ex. 7 (JJHCS_00142757) (█████████████

█████████████████████████████████████████████████████████████████████████);

Ex. 8 (JJHCS_00001497) (██████████████████████████████████████████████

██████████████████████████████████) Ex. 9 (JJHCS_00002774) (███████████

_____

[1] The only terms regarding the CAP program that J&J has indicated a willingness to run are: (1) (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP) and (2) ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (case sensitive).

███████████████████████████████████████████████████████████████

████████████████████████████████████ J&J's proposal to use a SaveOn limiter would

let J&J withhold such documents in the new custodians' files.

J&J has not advanced any claim that running the unlimited CAP Terms for the new custo-

dians would be burdensome. It agreed to run those terms for its previous custodians from April 1,

2016 to July 1, 2022 without such an objection. SaveOn asked that, if J&J objected on burden

grounds, it provide hit counts for any term it refused to add, Ex. 10 at 2 (Jan. 29, 2024 Ltr.); J&J

did not do so, Ex. 5 (Feb. 14, 2024 Ltr.).

J&J's sole basis for its position is to cite Paragraph 2 of Judge Waldor's November 7, 2023

Order regarding Docket Entry No. 166, which compelled J&J to run the CAP Terms with a SaveOn

limiter for its existing custodians from January 1, 2022 to the present, Ex. 11 (Feb. 15, 2024 Ltr.).

Paragraph 2 does not support J&J's position. *First*, by its terms, it did not apply to documents

before 2022, so it is no basis for J&J to refuse to run the unlimited CAP Terms before then. (In

Dkt. 166, SaveOn moved for the CAP Terms to be run from July 1, 2022 to the present because,

at the time, the parties had generally agreed to cut off discovery at July 1, 2022.) *Second*, Judge

Waldor's Order could not have applied to White, Penkowski, and Lade because she did not order

J&J to add them as custodians; Your Honor would not do that until January 2024. *Third*, J&J

previously argued that Paragraph 2 allowed it to apply a SaveOn limiter to the CAP Terms for

other custodians, Ex. 12 at 5 n.1 (Jan. 22, 2024 Ltr.), and Your Honor disagreed, holding that J&J

had to apply a broader set of search terms related to the CAP Program. Dkt. 192 at 26. *Fourth*, as

stated in SaveOn's motion regarding J&J's refusal to run the unlimited CAP Terms for its existing

custodians, Paragraph 2 does not trump Paragraph 3's order that J&J update its production "*with-*

*out limitation*," which includes running the unlimited CAP Terms to which it previously agreed.

Hon. Freda L. Wolfson                                                                                      Page 5

Ex. 13 at 1-2 (Feb. 7, 2024 Ltr.). *Finally*, in any event, J&J should run the unlimited CAP Terms here because the new custodians were specifically identified as being involved with the CAP Program and thus are highly likely to have relevant documents regarding that program.

  J&J's position here is part of an ongoing effort to withhold documents about the CAP Program that could cripple J&J's claims. Although the program took effect months before J&J filed its Complaint, J&J concealed the existence of that program when the parties initially agreed on discovery parameters. Once SaveOn learned of the program, J&J resisted adding search terms and custodians related to that program for months, agreeing finally to run the CAP Terms over the custodial files of the existing custodians from April 1, 2016 through July 1, 2022. Ex. 14 (Sept. 29, 2023 Email from J. Long to E. Snow). Judge Waldor ordered the parties to refresh their productions through November 7, 2023 "*without limitation*," Dkt. 173 at 3, but J&J is now trying to back out of its previous agreement to run the unlimited CAP Terms both by refusing to run those terms for its prior custodians from July 1, 2022 to the present, Feb. 7, 2024 Ltr, and now by refusing to run those terms for its new custodians during any time period.[2] This must stop. The CAP Program is highly relevant, and J&J must apply the unlimited CAP Terms in searching its custodians' documents.

  SaveOn appreciates Your Honor's attention to this matter.

      Respectfully submitted,

      /s/ E. Evans Wohlforth, Jr.
      E. Evans Wohlforth, Jr.
      Robinson & Cole LLP
      666 Third Avenue, 20th floor

---

[2] J&J asserts that this dispute will be decided by Your Honor's ruling on SaveOn's February 7, 2024 letter. In fact, that letter addressed only J&J's refusal to run the unlimited CAP Terms for its existing custodians from July 1, 2022 to November 7, 2023. This motion addresses J&J's subsequent refusal to run the unlimited CAP Terms for its new custodians during any time period.

New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# EXHIBIT 1

Page 1

```
 1            UNITED STATES DISTRICT COURT

 2            DISTRICT OF NEW JERSEY

 3            CIVIL ACTION NO. 22-2632

 4    JOHNSON & JOHNSON HEALTH CARE

 5    SYSTEMS, INC.,

 6         Plaintiff,                    TRANSCRIPT

 7         vs.                                OF

 8    SAVE ON SP, LLC,                   PROCEEDINGS

 9         Defendant.

10    - - - - - - - - - - - - - - - -

11

12            TRANSCRIPT of the stenographic notes of

13    the proceedings in the above-entitled matter as

14    taken by and before RUTHANNE UNGERLEIDER, a

15    Certified Court Reporter and Notary Public of the

16    State of New Jersey, held at the office of

17    LOWENSTEIN SANDLER LLP, One Lowenstein Drive,

18    Roseland, New Jersey, on Wednesday, January 24,

19    2024, commencing at approximately 10:00 in the

20    forenoon.

21

22

23

24

25
```

```
 1  B E F O R E:
 2  HONORABLE FREDA L. WOLFSON
 3  A P P E A R A N C E S:
 4  PATTERSON BELKNAP WEBB & TYLER LLP
    1133 Avenue of the Americas
 5  New York, New York  10036
         BY:  HARRY SANDICK, ESQ.
 6              JULIA LONG, ESQ.
                GEORGE A. LoBIONDO, ESQ.
 7              SARA A. ARROW, ESQ.
    Attorneys for Plaintiff
 8
    SILLS CUMMIS & GROSS P.C.
 9  The Legal Center
    One Riverfront Plaza
10  Newark, New Jersey  07102
         BY:  JEFFREY J. GREENBAUM, ESQ. (VIA ZOOM)
11  Attorneys for Plaintiff
12  SILLS CUMMIS & GROSS P.C.
    101 Park Avenue, 28th Floor
13  New York, New York  10178
         BY:  KATHERINE M. LIEB, ESQ.
14  Attorneys for Plaintiff
15  SELENDY GAY ELSBERG PLLC
    1290 Avenue of the Americas
16  New York, New York  10104
         BY:  ANDREW R. DUNLAP, ESQ.
17              ELIZABETH SNOW, ESQ.
                HANNAH MILES, ESQ.
18  Attorneys for Defendant
19  ROBINSON & COLE LLP
    666 Third Avenue 20th Floor
20  New York, New York  10017
         BY:  E. EVANS WOHLFORTH, JR., ESQ.
21  Attorneys for Defendant
22
23  ALSO PRESENT:
    SHERYN GEORGE, JJHCS In-House Counsel
24  WAYNE FANG, ESQ., Lowenstein Sandler
25
```

```
 1              JUDGE WOLFSON:  All right.

 2              We're here today in connection with the

 3   outstanding disputes, and when we had our Zoom

 4   conference several weeks ago I indicated I wanted to

 5   address whatever had been left open by Judge Waldor.

 6   She's had many, many conferences in this case,

 7   resolved many issues on the record, entered some

 8   orders, and there were a couple of substantial issues

 9   that have really been kicking around for a while

10   where she was looking for everyone to meet and confer

11   and see where you ended up.  And, primarily, they're

12   going to relate to discovery regarding the terms and

13   conditions, there was financial information, and now

14   there are other things to do with custodians, and I'm

15   going to try to get to everything.  But I want to

16   deal with this, in the first instance, with regard to

17   those pending discovery disputes, let me turn first

18   to the documents dealing with the CarePath terms and

19   conditions that have been talked about for quite a

20   while now and what should be discoverable with regard

21   to the drafting, understanding enforcement of the

22   terms and conditions.

23              We know that, in particular, what's

24   being looked at is that this program is supposed to

25   fall under the "Other Offer" category.  It's not the
```

1  coupon.  No one is asserting that it falls within the

2  other language.  Right?  Everybody agrees?  Yes?  So

3  it's all about the other offer.

4          MR. GREENBAUM:  Your Honor, may I make

5  two short preliminary points for context to just kind

6  of set the table at least from our perspective?

7          JUDGE WOLFSON:  I don't think it's

8  necessary at this point.

9          Let me move forward.

10          And I will say this -- can I go off the

11  record one moment?

12          (Brief recess taken.)

13          JUDGE WOLFSON:  So let's break this down

14  into what's there.

15          There's no doubt -- or there's no

16  dispute that there certainly is relevance to evidence

17  regarding what this term means.  The question is, how

18  much discovery is to be given, and where does it go,

19  and what are our time tables for doing that, et

20  cetera?  And we're going to get to that.

21          The Plaintiff has said that it produced

22  thousands of pages of documents, approximately 1200,

23  in response to search terms that were used to find

24  documents relating to terms and conditions from

25  April 2016 to July 1, 2022 that had been an agreed

1   upon discovery period, however, the Court at the last

2   hearing had directed the parties to continue to

3   update discovery through October 2023.

4                So now we're all dealing with updating,

5   updating.

6                Okay.

7                There were requests also for documents

8   that bear on -- if I can, for short, I know it's

9   JJHCS -- if I can say J&J for purposes of the

10  hearing.  We know it's a different entity, but just

11  for ease -- J&J's enforcement and understanding of

12  the relevant terms and conditions.  And Plaintiff

13  says also that J&J has investigated availability of

14  additional documents and based on that investigation

15  understands that the terms and conditions at issue

16  are standard, uncontroversial terms, used in most, if

17  not all, manufacturer co-pay support programs that

18  long predate the time period of 2016 to 2023.  And

19  J&J has offered to review additional documents to see

20  what else might fall within that relevant time frame.

21                J&J has indicated that documents that go

22  further back to 2009, which is what really I think

23  SaveOn has been talking about, argues that either

24  they're irrelevant and also enforcement of terms and

25  conditions relating to other terms besides "other

```
 1   offer."  I mean, I have all the arguments here.
 2              So let's move into this.
 3              Now, in this connection too we have
 4   custodian issues, and you agreed to some
 5   modifications.
 6              I think what we have here is Defendant
 7   asked Plaintiff to conduct a search for documents
 8   relating to the drafting of the general T&C's to add
 9   additional search terms used designed to identify
10   documents relating to drafting, understanding and
11   enforcement, and add two custodians that J&J
12   identified as responsible for drafting the new
13   Stelara and Tremfya T&C's and to extend a search for
14   documents relating to enforcement of the new Stelara
15   and Tremfya T&C's.
16              Plaintiff has indicated that it will
17   search eight more months of one custodian's documents
18   and add two limited search terms.
19              So let's talk about where we are.
20              With regard to the requests, it was
21   requested that Plaintiffs identify predecessor
22   programs from which CarePath's general T&C's were
23   drawn.  And I think there are also interrogatories on
24   that topic.  Right?
25              MR. DUNLAP:  Yes, are honor.
```

```
 1              MR. SANDICK:  I don't think that there
 2    is an interrogatory that specifically tracks what
 3    they asked for in our discovery letters.  And not to
 4    get sidetracked, but one of the points of contention
 5    is that if they want detailed historical information
 6    about things within JJHCS, I think the discovery
 7    device for that is an interrogatory.  If they
 8    propound one, we'll answer it subject to objections.
 9    But I don't think that they have propounded one that
10    would cover all of the issues that they have raised
11    and have tried to use discovery correspondence as a
12    mechanism essentially as a substitute for
13    interrogatories.  And they're not at their
14    interrogatory cap.  They could propound
15    interrogatories.
16              MR. DUNLAP:  Could I respond to that,
17    your Honor?
18              JUDGE WOLFSON:  Sure.
19              MR. DUNLAP:  Just briefly.
20              We served document requests asking for
21    documents relating to the drafting of the terms and
22    conditions.  We served interrogatories asking them to
23    identify individuals with responsibility for the
24    drafting of the terms and conditions.  It turns out
25    that this specific term and condition, which is the
```

1    heart of part of the case, ███████████████

     ████████████████████████   We think our

3    existing interrogatory and document requests are

4    broad enough to cover whoever drafted it, whether

5    they were working at JJHCS or some other predecessor

6    program.  So we think it's covered.

7                    JUDGE WOLFSON:  Okay.

8                    We're going to talk about it today,

9    whether it was specifically asked in that way or not,

10   but I'm going to get to the bottom of this and be

11   done with it so that we have this resolved.

12                   Now, in that regard, you've asked for I

13   think January 1, 2009 to the present, right?

14                   MR. DUNLAP:  Yes.

15                   JUDGE WOLFSON:  Because it would include

16   predecessor programs.

17                   MR. DUNLAP:  Because that is our

18   understanding of when it began.  Obviously, if the

19   program began earlier, at some other time, then we

20   would want it to be tailored, our issue, but they

21   haven't given us information, so it's hard for us to

22   tailor our understanding of when the program started.

23                   JUDGE WOLFSON:  Okay.

24                   Why would you, Mr. Sandick, believe

25   that -- you know, we're looking for what the meaning

1  of this is -- that if you had predecessor programs
2  that used the same term, why would that not be
3  relevant at a discovery stage?
4          MR. SANDICK:  So, a couple of things.
5          It's not so much that we're saying it
6  would be irrelevant.  What we're saying is, number
7  one, as we've explained to the Defendants before, we
8  do not have consistent record keeping within our
9  client's files.
10         JUDGE WOLFSON:  I'm going to get to
11  retention.
12         What I'm saying is, I want to take this
13  piece by piece.  Which is, if we start with
14  relevancy, now let's go to what the problems are with
15  producing it.
16         MR. SANDICK:  Sure.
17         I think the relevance issue is this:  As
18  to the meaning of "other offer" in the context of a
19  program like SaveOn, an accumulator or maximizer
20  program, those programs did not exist back in --
21  SaveOn was created in 2016.  So trying to figure out
22  prior to 2016 what the terms and conditions meant
23  with respect to a company like SaveOn I think is not
24  a productive project.
25         Also, for that matter, the current

1   CarePath system, which started in around 2016, also
2   did not exist prior to that.
3          To be short, J&J through JJHCS has tried
4   to help patients pay for co-pay support, help them
5   pay their deductibles on drugs for many years, but
6   the program was different.
7          So we're going to a time period when
8   SaveOn did not exist, when the CarePath program we're
9   talking about did not exist, and in a time period
10  where -- and I know your Honor said you'll get to
11  this -- but where the document record is not what it
12  is in more recent years because 2013 is a long time
13  ago.
14          JUDGE WOLFSON:  And I'll deal with that,
15  but I have to say I don't agree with your position
16  on -- that it would not be relevant simply because
17  programs like SaveOn didn't exist, whether
18  accumulator or maximizer programs, or CarePath didn't
19  come into being.
20          You know, you have indicated that these
21  are terms, that is the position you have taken, that,
22  you know, through maybe time, this is a term that is
23  used.  So in creating that, how broad a meaning you
24  thought that had, what it meant outside of the other
25  things you described, coupons, rebates, et cetera,

1    that it could encompass, it may have nothing to do

2    with this, but that is okay.  So we need to answer

3    that question.

4              I do not agree with you.  I do agree

5    with SaveOn that I believe that going back in time is

6    relevant to the extent it was included in predecessor

7    programs.  It had to have a meaning.  If anyone even

8    discussed it.  Maybe they didn't.  And maybe that is

9    what will turn up.  But that is an answer in itself.

10             Now, talking about availability of

11   documents, because you have indicated that there are

12   preservation of retention issues, but I don't know

13   that you have provided anything that tells us what

14   those retention policies are or the issues as to why

15   they don't exist or how limited they are.

16             That has to be provided so that I could

17   determine, or your adversaries can determine, what

18   was done, and what the policy was, and whether it was

19   followed here.

20             That is always what we do when you have

21   a relevant document and a relevant time period and

22   there may be an issue.

23             So you're going to have to produce that

24   retention policy.

25             To the extent that you do find the

1   documents regardless of that retention policy, I'm

2   ordering that they be produced.

3           Now, you've also indicated it's too

4   cumbersome, but you haven't done a search going back

5   because you haven't thought you had to produce them,

6   and the burden is on you to explain why it would be

7   burdensome.  And, frankly, if you're telling me you

8   may have nothing before 2013, it doesn't sound very

9   burdensome to me.  So I'm not buying that at the

10  moment without more.

11          For me, when I look at all of this,

12  rather this one seemed like an easy one, and I think

13  it's totally appropriate.

14          The crux of this case is going to be

15  what "other offer" means.  And in Judge Vazquez's

16  opinion in very short order in that last paragraph it

17  said this is going to need discovery and it could be

18  the subject of a summary judgment motion, but not a

19  dismissal motion, or maybe it goes to a trial, but he

20  noted that that was something that required

21  discovery.  And that term is going to be critical

22  here.

23          MR. SANDICK:  So, your Honor, we will

24  come back to you then with a submission on the

25  subject of burden and accessibility because I do

1  believe those are substantial issues here.  That, you

2  know, very few companies would have sort of coherent

3  organized records going back 15 years or longer.  And

4  so I do think we have an issue that we need to bring

5  to your Honor's attention on this.

6  JUDGE WOLFSON:  Okay.

7  You're going to have to really convince

8  me because, first of all, I don't know what your

9  retention policy is, but on the burdenness, I know

10  that Judge Waldor kept putting burden to the side.

11  She said, a hundred million dollar case, it's a big

12  case, big companies, don't argue burden to me.

13  I'm not quite sure I always agree with

14  that because burden is something you are allowed to

15  assert.  I'm not preventing you from doing so, but I

16  think you have a high hurdle there.

17  So you want to move this along, I want

18  to also, so those answers you're going to have to get

19  to me pretty quickly.

20  MR. SANDICK:  We'll do that, your Honor.

21  JUDGE WOLFSON:  Okay, when?

22  MR. SANDICK:  I would like to talk to

23  people internally to figure out, but today is

24  Wednesday.  Next week?

25  JUDGE WOLFSON:  Sure.

1              MR. SANDICK:  Okay.

2              JUDGE WOLFSON:  That would be fine.

3              You want a week from today?

4              The end of next week?

5              MR. SANDICK:  Let me just confer for a

6    moment.

7              Next Friday.

8              JUDGE WOLFSON:  Next Friday is fine.

9              MR. DUNLAP:  I assume you would want us

10   to meet and confer about this.

11             JUDGE WOLFSON:  Yes.

12             MR. DUNLAP:  Part of our concern is that

13   they haven't been really forthcoming in explaining to

14   us what their preservation or retention issues are.

15             JUDGE WOLFSON:  Now you're going to get

16   it.

17             MR. DUNLAP:  I assume you want the

18   parties to meet and confer before they file the

19   motion.

20             JUDGE WOLFSON:  Yeah.

21             MR. SANDICK:  I mean, I'm happy to talk

22   to Andrew any time.  We're going to file something on

23   this.  And I do not agree that we have been not

24   forthcoming.  We explained that 2013 is the crucial

25   time period for our client when there were changes in

1    the record keeping system and that before that time,

2    all though I can't say that there aren't documents

3    here and there sort of lying around, so to speak, the

4    digital equivalent of that, there is no consistent

5    effort to retain documents from that time period.

6              JUDGE WOLFSON:  Look, they haven't

7    gotten that, and, you know, simply indicating that is

8    not enough.

9              They said they would have an answer by

10   next Friday.  So what I'll direct is that information

11   be given to you, as to burden and retention, you can

12   meet and confer, and then tee it up for me.

13             MR. SANDICK:  Would you like us to

14   submit it to your Honor in parallel next Friday?

15             JUDGE WOLFSON:  I would love to see it.

16             MR. SANDICK:  We will send it to you and

17   of course copy defense counsel by next Friday.

18             JUDGE WOLFSON:  Okay.

19             And then you can meet and confer and

20   we'll see if we have an issue.

21             As I said, but from my perspective on

22   the burden aspect, it's going to have to be a pretty

23   darn heavy burden because I think this is highly

24   relevant information, and so on a weighing here as to

25   the relevance versus the burden on you, I think you

```
 1    know where I'm going to come out.

 2                  All right.  Let's move onto the next

 3    topic.

 4                  These are, quote, the enforcement

 5    documents.

 6                  So let's talk about this issue.

 7                  This is I think where it -- the issue is

 8    whether it's enforcing all of the terms of that or

 9    only the other offer, correct?  That's where we are.

10                  MR. DUNLAP:  I think that is part of it.

11    Part of it is also what search terms they employ.

12    Since this submission went in we met and conferred

13    with the other side and narrowed the search terms.

14    It cuts out about 20 percent of the documents that

15    were identified in my previous submission.

16                  JUDGE WOLFSON:  Okay.

17                  So tell me what is left on this issue

18    that you want to argue today.

19                  MR. DUNLAP:  Well, we believe that they

20    should run a broader search for documents relating to

21    the meaning and understanding and enforcement of the

22    general terms and conditions, the "other offer"

23    provision.

24                  JUDGE WOLFSON:  The "other offer"

25    provision is good.
```

1          MR. DUNLAP:  Yes.

2          Well, we think there are other portions

3     of the general terms and conditions that are relevant

4     as well.

5          So the way this works is that a lot of

6     the -- they call this the SaveOn program, but a lot

7     of the things they're complaining about, the setting

8     of the co-pays, the not counting towards

9     out-of-pocket max, are actually plan terms.  Those

10    are part of what the commercial plan sets as terms

11    for their members.  And there are references within

12    the terms and conditions health plans.  And we

13    think -- part of our argument is that that indicates

14    whatever "other offer" means, it can't mean plan

15    terms.  So we think it can't be limited just to the

16    "other offer" provision.  That is point one.

17         Point two is, based on what we have seen

18    in the documents we don't --

19         JUDGE WOLFSON:  So let me think of

20    though what you're looking for in that regard.

21         You're not interested in coupons,

22    rebates, and the other things that are in there.

23         I want to make sure how we're limiting

24    this.

25         MR. DUNLAP:  Well, we are to the extent

1   that we want to understand, there is an affirmative

2   case did they actually believe SaveOn was a coupon or

3   other offer or a program.

4           JUDGE WOLFSON:  I think we are clear

5   that you said it's only other offer.

6           MR. SANDICK:  The other offer is the

7   only term that we're doing.

8           There is a long list of terms and

9   conditions that patients have to agree, most of them

10  have nothing to do in not even any conceivable way

11  with this case.

12          For example, you cannot by federal law

13  be on Medicare or Medicaid and be part of SaveOn.

14  That is prohibition.  Children are not eligible to

15  receive drugs through this program.  And there are a

16  number of other things.  None of them are within the

17  scope of what we are alleging to be the contract that

18  was tortiously interfered with.  That's why the focus

19  has been -- in Judge Vasquez's decision and in our

20  complaint -- on the "other offer" language that your

21  Honor has spotlighted.

22          JUDGE WOLFSON:  So we're limiting it to

23  the only contractual term that they think is "other

24  offer."

25          MR. DUNLAP:  Right.

1          And I think we have a couple of issues

2    with that.

3          So, first, as you may have seen if

4    you've looked at the Motion to Dismiss briefing,

5    "other offer" appears in a string of other terms,

6    coupon, et cetera.  And under ejusdem generis, if I'm

7    pronouncing that doctrine correctly, you would

8    understand what "other offer" means by looking at

9    what the other terms in that clause mean.

10         So what they understand a coupon to

11   mean, what they understand another offer of financial

12   assistance to mean, is relevant to determining what

13   in context the "other offer" provision means.

14         So we do want to understand what they

15   think that means.

16         I would also make the point that --

17         JUDGE WOLFSON:  But we're on the

18   enforcement documents now, not on the actual

19   interpretation, terms, conditions.

20         MR. DUNLAP:  Well, but that period we're

21   talking about from 2016 through 2022 we're not just

22   looking for documents on enforcement, it also goes to

23   the meaning and their understanding of what the

24   "other offer" provision meant during that time

25   period.  And we submit to understand that you have to

Page 20

1    look not just at "other offer," but also at the other
2    terms that are in the clause where it appears other
3    provisions in the terms and conditions that relate to
4    health plans, there is a lot of contractual context
5    that we need in order to argue about what "other
6    offer" means.
7            But I do want to turn to enforcement
8    also.
9            So as Mr. Sandick said, there are other
10   eligibility requirements that are not at issue.  For
11   example, if you're on Medicare or Medicaid, or you're
12   not of a certain age, et cetera.
13           Part of our argument is that until they
14   decided to bring this lawsuit we don't think J&J
15   actually ever contemplated that the "other offer"
16   provision covered members on SaveOn plans.  They
17   never actually thought that being on a SaveOn plan
18   ran afoul of the "other offer" provision.
19           And part of the evidence of that will be
20   that they did enforce eligibility criteria.  That
21   they were able to enforce other parts of the terms
22   and conditions, on Medicare, Medicaid, on age
23   requirements, et cetera, but they never sought to
24   enforce their new position on SaveOn until they
25   brought this lawsuit.

Page 21

1          We think that information is highly

2     relevant circumstantial evidence to show their course

3     of performance was they didn't actually believe that

4     "other offer" applied to the SaveOn program.

5          And so we need to see what they were

6     doing in terms of enforcing the terms and conditions

7     generally not just on "other offer."

8          MR. SANDICK:  Your Honor, two things:

9     First of all, on the subject of enforcement, since

10    these letters were submitted I think in August we

11    have already agreed to produce what are either

12    directly through us or by asking our vendor, a

13    company called Trial Card, to produce what are known

14    as benefits investigations.  And those are the

15    enforcement documents.  We're in the process of

16    making those productions for the relevant time period

17    right now.

18          So the enforcement issue I think by

19    virtue of concessions made by HCS, by J&J, is already

20    being addressed.

21          I want to also though pause for a moment

22    on the subject of whether the other terms next to

23    "other offer" in that particular term and condition

24    are relevant.

25          I think it's important to say two

1  things.  First of all, this particular language,

2  coupon, discount, prescription savings card, free

3  trial, those are primarily what is driving the hit

4  count for the search terms they have proposed.

5  Something like maybe two-thirds or three-quarters of

6  the documents that they are asking to be reviewed

7  relate not to "other offer," which, by the way, have

8  already been the subject of search terms.  That's

9  why, as your Honor pointed out, we have already

10  produced thousands of pages of documents.  But the

11  search terms that they are proposing go way beyond

12  that, into any time that someone uses the word

13  "coupon" and the word "Janssen," we would have to

14  produce those documents.

15          That is why Judge Waldor told -- well,

16  one of the reasons why she told them back in October

17  and in the order that they needed to narrow their

18  requests, not just the search terms, but the requests

19  themselves, that this is too broad, it goes beyond

20  the scope of what is actually necessary to resolve

21  this case.

22          And if we were focusing on things like

23  "other offer" language, again, we've already made a

24  lot of production on that.  And we had offered

25  before, as your Honor pointed out, to do some

1    additional production on that subject.

2              It's when you blow it open into

3    everything -- every word that is used on the sheet of

4    terms and conditions that the burden in terms of

5    document review goes through the roof.  And as we

6    pointed out, probably for very little benefit.

7    Because these are standard industry terms that are

8    used in the co-pay program area and also used in all

9    sorts of other consumer areas.  The ABA said this is

10   a standard term in all consumer discount programs.

11             JUDGE WOLFSON:  So what I'm hearing is,

12   but what I want to understand too, is you are going

13   to produce documents with regard to this, quote,

14   benefits investigation.

15             What I want to get back to you here, Mr.

16   Dunlap, what you said a couple of moments ago is what

17   is important to you is to give definition to what

18   they're enforcing and what they're not enforcing, you

19   want to know, well, were you enforcing all of these

20   other programs that you have listed, whether they

21   were Medicare, Medicaid, and all the various coupons

22   and other things, right?

23             MR. DUNLAP:  The eligibility questions.

24             JUDGE WOLFSON:  The eligibility

25   questions.

1          You want to know, were you diligently

2     and regularly enforcing.  You knew SaveOn was there

3     and you didn't do it.  And you want to make an

4     argument, so guess what, we're going to tell you, you

5     never thought of any of these exclusions.

6          I hear what you're saying.  The question

7     is, how many documents do we need?  If they're going

8     to give you what we would call the benefits

9     investigations, would that not turn up every time

10    that they questioned eligibility?

11         MR. DUNLAP:  We don't think so, your

12    Honor.

13         Let me talk about the benefits

14    investigations.

15         So what they said at the last conference

16    was that ███████████████████████████████

██ ██████████████████████████████████████

██ ██████████████████████████████████████

██ ████████████████████████████████████████

██ ████████████████     ████████████████████

██ ██████████████████████████████████████

██ ████████████████████████████████████

██ ████████████████████████████████████████

██ ████████████████████████████████████████

██ █████████████████████

1         They have so far declined to give us any

2    documents related to those investigations, just the

3    final reports themselves.

4         We got a production the other day.  We

5    had some issues with that.

6         What they're offering to give us is

7    very, very narrow.  They are not offering to give us

8    benefits investigations going to the full relevant

9    time period of this case from 2016 to present.  ████

████       ████████████████████████████████████████████████

████       ██████████████████████████████████  And they're

12   not offering to give us any documents, there are no

13   enforcement search terms, for example, that go to the

14   enforcement of eligibility criteria or the meaning of

15   things like coupon or discount or benefit card.

16         And I hear what opposing counsel is

17   saying about the search terms.

18         We have proposed search terms to them.

19   We have narrowed those search terms since we put in

20   our letter by about 20 percent.  We have not received

21   I believe a counteroffer from the other side about

22   which of our search terms they would be willing to

23   run.  Their response has generally been no.

24   Certainly inviting us to negotiate against ourselves.

25         We're always glad to talk about

Page 26

1  appropriate search terms here, but we don't have

2  anything on enforcement.  We're not convinced that

3  just the benefits investigations process will give us

4  what we need here.

5              I'm glad to address the other points he

6  made, but I think those are the main ones.

7              MR. SANDICK:  Your Honor, I think there

8  are a few things I would like to address and correct.

9              So, first of all, it's not true that we

10  aren't giving other documents relating to the subject

11  of enforcement of the terms and conditions against

12  accumulator and maximizer programs.  We are running

13  to some extent voluntarily and to some extent in

14  response to Judge Waldor's order the so-called CAP

15  terms.

16  ███████████████████████████

███

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████

███████████████████████████████

███████████████████████████

███████████████████████

1    As we said in some of our papers, SaveOn

2  goes to great effort to prevent anyone from finding

3  out which patients are in the program. ████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████  they go to great length to

7  prevent us from figuring out who is in the program.

8            ██████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████  That's why we have been producing for that

13  category from 2022, the beginning of the year, now up

14  through the date of Judge Waldor's order.

15            JUDGE WOLFSON:  Well, let me go back a

16  moment.

17            We got two things going on.  Now we're

18  talking about dates, how far back we go, but the

19  other is the various enforcement efforts with regard

20  to eligibility, which they have been talking about.

21  And the position there is, SaveOn was in existence

22  prior to 2022.  The fact that you started to take

23  some steps in response to what you believe was a

24  problematic program and would violate your terms in

25  that time frame doesn't address their concern, which

1   is, okay, we were around before, and you also came to

2   this conclusion in 2022, whatever, but we'd like to

3   see what generally did you do as enforcement efforts

4   with regard to other eligibility criteria.  Do you

5   police generally?  Do you let things go?

6                    I mean, these are some of the arguments.

7                    I know you have some defenses you also

8   want to raise on, you know, latches, mitigations,

9   whatever, steps that were not taking, but I think

10  that there needs to be some understanding of,

11  generally, what are your enforcement efforts that you

12  take with regard to eligibility criteria.

13                   Now, it has to be cabined in some way.

14  I don't want it to be so broad because there are lots

15  of things here and much of it may not be relevant.

16  So I think we have to understand, or they have to

17  understand, how do you go about enforcing, when do

18  you do so, and there is more information that is

19  needed.

20                   MR. SANDICK:  So, your Honor, a couple

21  of things:  First of all, the subject of benefits

22  investigations.  Benefits investigations are,

23  generally speaking, not relevant to this case because

24  they don't touch on the application of the "other

25  offer" term, they don't touch on how that's applied

Page 29

1   in the context of a so-called maximizer or

2   accumulator program like SaveOn.

3             So what that would lead to, your Honor,

4   if there were to be some expansion of benefits

5   investigations, would be, essentially, meaningless

6   documents about, "Oh, this person is on Medicare.  We

7   can't cover that."  Things having nothing at all to

8   do with the scope of this case.

9             The other thing is, the questions that

10  Mr. Dunlap is raising, if he serves an interrogatory

11  on us that asks those questions, we'd be obliged to

12  answer those questions in a way that would be binding

13  as an admission on JJHCS.

14            To, you know, beat it back and forth in

15  discovery letters doesn't lead to that outcome.

16            JUDGE WOLFSON:  What would that

17  discovery interrogatory look like?

18            MR. SANDICK:  Sure.

19            It would be an interrogatory asking for

20  a statement of what the company's policy was on the

21  issue of enforcement of the terms and conditions.

22            It could ask for --

23            JUDGE WOLFSON:  And then they're going

24  to ask for all the documents that support what that

25  policy is and explain that policy and discuss the

1  policy.

2          MR. SANDICK:  And we produced those.

3          JUDGE WOLFSON:  There will be a document

4  request.

5          MR. SANDICK:  As to "other offer," we

6  produced those documents already.

7          JUDGE WOLFSON:  I'm not so limiting it

8  at this point.

9          MR. SANDICK:  So, in any event, the

10  point I'm making is that, the subject of benefits

11  investigation is, unless it has something to do with

12  SaveOn, or maximizer, or accumulator programs, is

13  really just completely irrelevant to this case, and

14  it's going to lead to the production of documents

15  that talk about issues that have nothing to do with

16  the "other offer" term, nothing to do with SaveOn,

17  that just simply show that, you know, there are a

18  host of different eligibility requirements, and can

19  see this patient passing the test, this patient not

20  passing the test, but none of it relating to SaveOn,

21  none of it relating to maximizer or accumulator

22  programs, other than from the time period of 2022 to

23  the present, which we're already engaged in producing

24  documents for.

25          JUDGE WOLFSON:  I think that -- and I

1  know that Judge Waldor would constantly say go meet

2  and confer, but I hate kicking the can down the road

3  and keep doing this, but I'm prepared to do it or

4  discuss it with you now, but I think you need to

5  narrow your request.  I believe we got to the crux of

6  it a moment ago, which is, I believe you're entitled

7  to documents that show what policies they had with

8  regard to enforcement of eligibility criteria beyond

9  "other offer."

10            They need a comparison here to what were

11  your policies.

12            Those documents I believe would be

13  relevant.

14            It doesn't mean, therefore, and now we

15  eliminate the burden of going through every time you

16  actually took an individual's eligibility criteria

17  and looked at it.

18            I think let's start with documents that

19  reflect what their policies were and anything that

20  reflects how they would go about enforcing it or

21  instructions given to enforce it, and it will also

22  identify, therefore, for you what areas that they

23  thought were important to enforce.

24            That is of a more general nature.

25            You said they could ask an interrogatory

1  as to that.  The document request is going to follow,

2  so I'm saying go ahead with the document request

3  right now.  And it won't be involved with the

4  individual benefits investigations.

5           MR. SANDICK:  So what your Honor is

6  proposing is something limited, essentially, to

7  policy or discussion of policy.

8           My concern is that it really should be

9  tied to "other offer" because once it moves into

10  things like discount, or free trial, or coupon, the

11  burden escalates dramatically.

12           We're talking about the review of

13  perhaps a quarter of a million documents.  And we

14  told them this.

15           We haven't failed to engage them in meet

16  and confer.  I'm happy to relate the history of that,

17  your Honor, if you would like to hear it.  But we

18  have tried throughout to engage them in meet and

19  confer and for months the only position they took

20  was, these are our terms, you need to run them all.

21  Even for two months after Judge Waldor told them to

22  narrow their search terms, told them in court, told

23  them in a written order.  They did not even provide

24  us with narrow search terms, let alone narrowing the

25  request, which is what her order said, that they're

```
1    going too far, they're taking extreme positions.
2              JUDGE WOLFSON:  I read every single
3    transcript, not just the October one.
4              MR. SANDICK:  Yes.
5              It was in March too.
6              JUDGE WOLFSON:  Okay.
7              But you understand what I am saying is
8    relevant.  I appreciate we don't want every little
9    document every time they discuss a discount.
10             When you're talking about policies and
11   discussions with regard to enforcing those policies,
12   no, I don't believe that we're talking about millions
13   of documents.
14             So come up with better.  I'm not going
15   to create them for you, I mean, I have given general
16   categories about this.  You know, from my
17   perspective, the world has become search terms.  Not
18   how I grew up, or when I was a Magistrate judge, we
19   didn't have search terms.  Okay?  You made a document
20   request and everybody understood what it meant and go
21   find them, wherever they are.  Now everyone needs to
22   define custodians and search terms to make sure that
23   you have done it a certain way.
24             I have given you what the subject matter
25   is.
```

1         So you think you need search terms to do
2    it, talk about what they are.
3              MR. DUNLAP:  Your Honor, can I ask a
4    clarifying question?
5              JUDGE WOLFSON:  Yes, go ahead.
6              MR. DUNLAP:  So you said that policies
7    regarding enforcement would be relevant.  I've heard
8    my friend on the other side say he thinks enforcement
9    is only relevant as to "other offer."
10             JUDGE WOLFSON:  I already said no.
11             MR. DUNLAP:  I just wanted to clarify it
12   goes to other eligibility criteria as well.
13             Now, we still had -- within the request
14   for this 2016 to 2022 time period, part of our
15   request was also about their understanding and
16   meaning of things like coupon or discount or other
17   terms as well, which I don't believe your Honor
18   addressed in talking about the enforcement side of
19   the request.
20             So we would ask that whatever they do in
21   terms of running additional search terms, and we're
22   glad to continue meeting and conferring with them
23   about that, that there be an understanding that --
24   their understanding, their enforcement -- the meaning
25   of the other terms in that clause, coupon, discount

1    and the others, is also relevant and something they

2    look for.

3              MR. SANDICK:  Your Honor, that's really

4    where the heart of the burden comes in.  If they're

5    asking for every time that someone at JJHCS talks

6    about the word discount in the context of Janssen,

7    you can just imagine the burden that that will

8    create.

9              JUDGE WOLFSON:  I don't want it that

10   broad, I agree.  So we have to figure out a way to

11   narrow that because, yes, we don't want to bring in

12   things that are not going to be relevant.

13             So you're going to go back and work as

14   to how to narrow this with the understanding of, I

15   appreciate your argument is, we want to see how they

16   define these terms or interpret them and then use

17   them.

18             They've already conceded, however, that

19   SaveOn doesn't fall within any of those terms, they

20   only fall within the "other offer."

21             So I understand -- what I'm trying to

22   figure out is what more that's relevant about

23   understanding how they interpreted coupon, rebate,

24   discount is important to your case?

25             MR. DUNLAP:  Sure.

Page 36

1          So, as you said, the "other offer"
2    provision is a big piece of this case.  It's a big
3    piece of the tortious interference claim.  What did
4    "other offer" mean?
5          They say it applies to SaveOn services.
6    We say it does not apply to SaveOn services.
7          So to the extent that the court finds
8    that term ambiguous, one of the standard tools of
9    construction that it may use is looking at the terms
10   that go along with it in that same clause.
11         And I'm sure you are familiar with that
12   doctrine.
13         JUDGE WOLFSON:  Absolutely.
14         MR. DUNLAP:  So in order to determine
15   whether or not other offer -- the scope of other
16   offer is like a coupon or discount savings card we
17   need to understand what they believe a coupon or
18   discount savings card meant.
19         So we don't want every time anyone at
20   Johnson & Johnson used the word "coupon."  What we
21   want to understand is, what did they believe, what
22   did they understand those terms within the context of
23   the general terms and conditions meant.
24         We believe that that is relevant.  And
25   if you can give us guidance that that is relevant,

Page 37

1   then we're glad to go back and continue meeting and
2   conferring with them on the search terms that are
3   designed to try and capture that.
4           MR. SANDICK:  Your Honor, Mr. Dunlap
5   said a moment ago words to the effect of, we're not
6   looking for every time that somebody mentioned
7   discount or coupon, but the search terms that they
8   proposed even after Judge Waldor ordered them to
9   narrow their request are exactly what Mr. Dunlap just
10  said --
11          JUDGE WOLFSON:  It's not going to
12  happen.
13          MR. SANDICK:  Okay.
14          Because I think what he is saying is,
15  I'd like guidance.  What I hear him saying is, he
16  would like you to say something that contradicts what
17  you said a moment ago.  And we'd ask you not to do
18  that.
19          JUDGE WOLFSON:  I got it.
20          MR. DUNLAP:  That is not what I said or
21  I asked for.
22          JUDGE WOLFSON:  We have what the
23  position is.  I appreciate your argument.
24          And this is also going again back to
25  interpreting what the terms and conditions mean.  And

1    I do appreciate that one of the arguments is going to

2    be, if you look at this entire phrase, and the things

3    that they really wanted to exclude, it gives meaning

4    to "other offer."

5              I know that is your argument, and I

6    understand that, which is why I would permit the

7    discovery on what does that mean.

8              That is different than enforcement.

9              We have gone backwards now.  We are

10   going back to terms and conditions and what this

11   sentence means.  I was on enforcement for a moment.

12   We'll return to enforcement.  But, yes, I do.  But

13   we're not going to have search terms that you're

14   right that every time that phrase comes up it gets

15   produced.  It has to in some way be cabined to

16   capture what we are talking about, which is, what was

17   the understanding of those terms when they were

18   placed into these various agreements, plans,

19   whatever, and documents that reflect what that

20   understanding was and the intent of it.

21             MR. SANDICK:  And we've already produced

22   documents to the extent they exist, to the extent

23   that we have non-privileged documents, from the

24   period of 2016 to 2022.  We've already produced those

25   documents.

 1            JUDGE WOLFSON:  And I guess you're going

 2    to have a privilege log.

 3            MR. SANDICK:  We do have a privilege

 4    log.  We're going to meet and confer on that subject.

 5    I'm sure that will go on too.

 6            JUDGE WOLFSON:  I would like to go back

 7    now to enforcement.

 8            It's of a similar nature, which is that

 9    the idea is, here, you want to know how vigilant were

10    they about enforcing these various terms that appear

11    here, or whatever the eligibility criteria are.

12            You don't need the underlying

13    investigations on all the other terms.  Right?  It's

14    really to figure out how they decided, one, if there

15    are documents that reflect, we are going to

16    aggressively pursue these terms.  You know, people

17    that get the coupons or whatever.  And do you

18    actually go about enforcing.  You know, because they

19    are going to make an argument you sat back on this

20    one.  Do you sit back on others too, is this kind of

21    what you do, or do you aggressively enforce that and

22    you didn't come about doing this for a few years.

23            These are, again, of a more general

24    nature than every individual one that they do.

25            So, go to work on figuring out -- I

Page 40

```
1   would do it in general categories like I did in the
2   old days, but you'll come up with search terms
3   instead that create all these issues for us -- work
4   on those search terms that capture what I just said.
5                Okay?
6                MR. DUNLAP:  Yes, your Honor.
7                MR. SANDICK:  Okay.
8                JUDGE WOLFSON:  Next.
9                So then, I guess, part of this problem
10  has been we're still talking about the understanding
11  of what "other offer" means, how that overlaps with
12  the specific categories.  We're back to all these
13  search terms.  And I think you found 188,000
14  documents on using certain of the search terms they
15  gave you, and you say, hey, that is too burdensome.
16               MR. SANDICK:  Yes.
17               And after Judge Waldor asked them to
18  narrow their requests, they never narrowed their
19  requests, but they gave us somewhat narrower terms.
20               From an apples to apples comparison, if
21  we look at the same time period and the same
22  custodians, they went from about 180,000 to about
23  150,000.
24               The terms themselves are only slightly
25  narrowed.  The nature of the requests are not
```

 1   narrowed at all.  In our view, they have not complied

 2   with what Judge Waldor asked them to do.

 3          JUDGE WOLFSON:  I could sit here and we

 4   could go through search terms and say, how can we

 5   better do this, but the goal here is to come up with

 6   the documents you need, and not more than you need,

 7   which is going to be of no help for you either to

 8   review.

 9          So -- I hate to send you back to meet

10   and confer.

11          I've given you guidance on what

12   categories or subjects I think are relevant.  Based

13   on that, maybe you can do search terms that are honed

14   better to that.

15          But I want this meet and confer to

16   happen within the next week.  We're back and forth

17   too much.  And to the extent you can't agree, I'll do

18   a Zoom with you.  But we need to move this ahead.

19   Keeping in mind that I've defined for you areas that

20   I think are relevant.

21          Okay?

22          MR. DUNLAP:  We understand, your Honor,

23   yes.

24          Thank you.

25          JUDGE WOLFSON:  Okay, good.

Page 42

1          Now, I guess in January of 2022 there
2    were new terms and conditions for Stelara and Tremfya
3    medications that specifically excluded members of the
4    Defendant plans from CarePath.
5          I know SaveOn has argued that Plaintiff
6    didn't implement new terms and conditions for other
7    drugs.  Kind of a selective enforcement argument
8    maybe being made here.  And I guess you've asked for
9    documents reflecting the decision to revise those
10   terms and conditions for those two drugs, how it's
11   being enforced and implemented.
12          Okay.
13          I think the argument here is that there
14   have been -- the production is deficient, restrictive
15   search terms were used, and custodians, such as
16   Jennifer De Camara and Harman Grossman and Savaria
17   Harris were not added because they are attorneys, but
18   I don't think there has been a privilege log.
19          MR. SANDICK:  So a privilege log has
20   been sent.  They sent us a letter critiquing some of
21   it and we are going to this week, by the end of
22   Friday, send them back a response.  They identified
23   several hundred documents, we've reviewed every one,
24   and we have a response planned for them by Friday
25   close of business, so Friday the end of the day.

1         JUDGE WOLFSON:  And then if there are
2    still documents upon which there is disagreement, I'm
3    going to do an in camera review of them.
4         MR. DUNLAP:  Yes, your Honor.
5         MR. SANDICK:  That is something we're
6    working through, and, of course, we'll bring it to
7    your Honor.
8         On the subject, your Honor, of the
9    Stelara and Tremfya terms and conditions, this is
10   really related to the CAP issue that was the subject
11   of movement at the October conference.  So we have
12   already produced documents that relate to this issue,
13   documents that show the changes in the Tremfya terms
14   and conditions, documents that show how the CAP
15   program operated, and that is going to be updated
16   right through, as Judge Waldor said, through
17   November 7.
18        So I think this issue is one that I
19   think has been kind of overtaken by events, so to
20   speak, since the letters in August.
21        MR. DUNLAP:  I agree to some extent.
22        Part of the original dispute was were
23   they going to search past July of 2022.  Judge Waldor
24   sort of took that out of everyone's hands by saying
25   go through November, and we understand they're going

1  to be running all their search terms, so that should

2  capture a lot of it.  I think there are a few pieces

3  that still remain.  One is the issue of these two

4  custodians who are attorneys but there is evidence

5  they worked in a business role at some point.  So we

6  ask that they be added.

7          There are two additional points.

8          We had asked that they run --

9          JUDGE WOLFSON:  Well, I'm assuming, by

10  what I was just asking about, because we always know,

11  in-house attorneys in particular, we have to decide

12  are they acting in their role as an attorney or in a

13  business sense?

14          I am assuming this is part of the

15  privilege log.  You did go through their documents.

16          MR. DUNLAP:  No.

17          MR. SANDICK:  So, your Honor, we have

18  not added these people as custodians.

19          Mr. Dunlap is wrong.  They play no

20  business role.  They are lawyers.  They are not,

21  let's say, JD's doing business, or former lawyers

22  doing business.  They work in a legal capacity as

23  lawyers for JJHCS.  So their documents do come up

24  from time to time because they will be in

25  communication with the people who are custodians in

1    this case, the business people, and when they are,

2    those documents will be withheld or redacted for

3    privilege as appropriate.

4              On very rare occasions they may be in

5    communications with both the business people and

6    people external to JJHCS, and in some of those cases

7    the documents are produced because, obviously, if a

8    lawyer is talking to a complete stranger, that might

9    not be privileged.

10             We have not added them as custodians.

11   In other words, we have not undertaken specifically

12   to review all of the lawyers' files.  And let me tell

13   you why.  It's because, given that they are attorneys

14   working as attorneys, if we are reviewing all of

15   their documents, all we are going to wind up doing is

16   creating a massive privilege log problem for us, and

17   in the end I suppose for them, because their files

18   are going to be, if not exclusively, overwhelmingly

19   privileged, because what they do when they talk to

20   people within the company is going to be conveying

21   legal advice or receiving requests for legal advice.

22             To the extent that they have

23   communications with business people and those are not

24   privileged, those would be produced.

25             JUDGE WOLFSON:  How do you search for

 1   those, though?  If you're saying you're not doing a

 2   search for them as a custodian, how are you

 3   determining which I falls in which category?

 4              MR. SANDICK:  Sure.

 5              Let's take an example.

 6              You have a custodian at the company, an

 7   employee named Heith Jeffcoat.  If he has e-mails

 8   with Savaria Harris, who is the lawyer for JJHCS, we

 9   may see those e-mails when we review Heith Jeffcoat's

10   files, and to the extent those documents are

11   privileged, they will be marked privilege, they will

12   be put on the log, they will either be withheld or

13   redacted, depending on the nature of the privilege

14   assertion.

15              What we're not doing is specifically

16   collecting all of Ms. Harris' e-mails and looking at

17   those separately.

18              JUDGE WOLFSON:  How about though -- we

19   use Ms. Harris as an example.  She's having

20   communications with Trial Card, she's having

21   communications with a third party outside that it

22   doesn't have a business person on it, so you're not

23   capturing it there, but if you're not doing a search

24   on her, you're not capturing Trial Card because

25   they're not part of the search.

Page 47

1        MR. SANDICK:  So Trial Card is producing

2   documents, actually, they're producing custodial

3   documents from the most important people at Trial

4   Card.  There has been a separate third-party subpoena

5   back and forth between Trial Card and SaveOn.  But

6   Trial Card is producing documents, number one.

7        JUDGE WOLFSON:  I only gave that as an

8   example.

9        Any third party on the outside that she

10  is having a communication with, if you're not doing a

11  search on her, you're not going to capture any of

12  those communications that would not be protected by

13  the privilege.

14       MR. SANDICK:  Well, what we have seen is

15  that her communications will inevitably have business

16  people on them.  She is not doing business work on

17  her own.  She is the legal advisor to JJHCS.  So to

18  the extent that JJHCS is doing business-related work,

19  that is going to be conducted by the business

20  personnel.  And if Ms. Harris is copied on an e-mail,

21  and the e-mail is not a request for legal advice, or

22  the rendering of legal advice, then there will be no

23  privilege assertion.  That is how they have gotten

24  some documents that Ms. Harris is on.  Because not

25  every communication that she is copied on is

1    necessarily going to be privileged.

2              But the issue is this:  Should we have

3    to undertake separately the burden of reviewing

4    attorney e-mails, which is very unusual in this

5    context.  It's common when the attorney is not really

6    functioning as an attorney, when the attorney is

7    really -- they have a JD, but they're doing business

8    work.

9              That is not the case here.  These are

10   in-house lawyers for J&J.

11             So if we are required to review their

12   documents separate from reviewing the business

13   people's documents, what we're going to do, you know,

14   we'll have someone sitting at a computer, privilege,

15   privilege, privilege, and at the end they will get

16   thousands more entries.

17             The cost of that to us is significant.

18   The benefit to them will be negligible or

19   non-existent, because these are people engaged in

20   legal work.  They're not doing business work for the

21   company.  They're lawyers practicing as lawyers.

22             MR. DUNLAP:  Your Honor, may I respond

23   briefly to that?

24             JUDGE WOLFSON:  Yes.

25             MR. DUNLAP:  So since the letter went

1   out we have seen documents indicating that a couple

2   of these folks did have communications with third

3   parties, not just Trial Card, but another J&J

4   consultant called Archbow.

5           Where I think your Honor is going, and

6   this might be something we can discuss, is something

7   where they don't have to review, in the first

8   instance at least, all the internal e-mails, which

9   really seems to be Mr. Sandick's concern, but start

10  with the production of their communications with

11  third parties outside of JJHCS limited by search

12  terms, specifically folks like Archbow or Trial Card

13  or the other consultants that we know were involved

14  in discussions like this.  That might be a place to

15  start.

16          I just want to note that we have dropped

17  our request for the one in-house lawyer who

18  apparently functioned in a litigation function.

19          JUDGE WOLFSON:  Mr. Grossman?

20          MR. DUNLAP:  Mr. Grossman, yes.

21          So we're only down to these other two.

22  So we would think that that might be a place to

23  start.

24          MR. SANDICK:  Your Honor, even on the

25  issue of external communications there is, of course,

1   a privilege doctrine that when someone working

2   outside of the company is either serving,

3   essentially, as a functional employee of the company

4   because of the nature of the work that they're doing,

5   or is part of a discussion in anticipation of

6   litigation, those e-mails involving the lawyer will

7   also be protected.

8              So even the screen that Mr. Dunlap is

9   proposing is a very -- it's a very poor tool for

10  limiting the burden on us.

11             What they are getting is, to the extent

12  that Ms. Harris is on communications with external

13  parties, for instance, let's say -- going to

14  Mr. Jeffcoat again, to use him as an example, he

15  wants to enter into some kind of a contract to help

16  manage the CarePath program, he has back and forth

17  with his business counterpart at this other company,

18  at some point he will copy Ms. Harris on that e-mail,

19  and then there will be some external discussions.

20  But those aren't discussions that drop the business

21  people.  The business people are always involved.

22  Ms. Harris is just there maybe to look at a contract

23  or provide legal advice offline to Mr. Jeffcoat about

24  the nature of the business that is being proposed.

25             So we do object to the inclusion of

```
 1    lawyer custodians when we know that these are lawyers
 2    doing legal work, not business work.
 3              JUDGE WOLFSON:  I want to go back to the
 4    limitation that Mr. Dunlap raised, which is as to
 5    third parties.
 6              Address that.
 7              I know you said they subpoenaed Trial
 8    Card.
 9              That doesn't relieve you.
10              As you know, more than one party could
11    have a document, and sometimes one of the parties
12    doesn't maintain the documents properly.  It doesn't
13    relieve your obligation to produce them as well.
14              So I want to address communications with
15    third parties.
16              And I know you said, well, there could
17    be an occasion where she is having a communication
18    with a third party, but we still believe privilege
19    applies.  And that's when you put it on a privilege
20    log though.  It doesn't mean you produce it, it ends
21    up on a privilege log.
22              What is the problem with the third-party
23    communications?
24              MR. SANDICK:  So third-party
25    communication issue, number one, they are going to
```

1    have -- just saying based on our investigation for a

2    long time in this matter -- Ms. Harris'

3    communications with third parties when she has been

4    copied on an e-mail, or is the recipient of an

5    e-mail, they are going to be business people who are

6    already custodians in this case.  So we are doing

7    this work for no additional advantage.  We're going

8    to be reviewing documents that are already in the

9    files of the business people at JJHCS.

10               JUDGE WOLFSON:  I hope.

11               MR. SANDICK:  Well, or at least

12    overwhelmingly so.

13               I can't sit here and say that there

14    might not be one document that falls outside of what

15    I'm describing, but, again, the question is, what is

16    reasonable and proportional in this context?

17               They have 16 business unit custodians.

18    They are getting some more as a result of the Court's

19    order.  So they will be getting more production over

20    the next month.

21               But the question is whether we should be

22    required to review all of the in-house lawyer e-mails

23    for the narrow purpose of seeing if maybe once in a

24    while she has done this.

25               JUDGE WOLFSON:  I hope not all e-mails.

 1              What are the search terms you're using?

 2              MR. DUNLAP:  Your Honor, may I respond

 3    to that?

 4              JUDGE WOLFSON:  Yes.

 5              MR. DUNLAP:  It's not all of their

 6    in-house lawyers.  It's not all of their e-mails.

 7    It's just the third-party communications at this

 8    point.

 9              JUDGE WOLFSON:  Third-party

10    communications on what subject?

11              MR. DUNLAP:  Well, we will limit it to

12    search terms.

13              The reason we're interested in these

14    folks specifically is because the other side has

15    indicated they were involved in revising the Stelara

16    and Tremfya search terms.  So communications they had

17    about the meaning of those terms outside of JJHCS

18    would be very relevant to us.

19              And Mr. Sandick said, well, you know, a

20    lot of times when they communicate outside, they have

21    copied existing custodians.

22              Well, if they have, then those documents

23    will be de-dupped, they will be taken out, they have

24    already been identified for review if they hit on our

25    search terms.

1          So we think at least in the first
2     instance they should gather the documents, we can
3     talk about tailored search terms for those
4     custodians, and then give us the numbers, and then
5     they can make a burden argument that is based on
6     actual numbers.
7          JUDGE WOLFSON:  All right, this is where
8     we're going on this.
9          It's only as to two attorneys, it's
10    Jennifer De Camara and Savaria Harris, correct?
11         MR. DUNLAP:  Yes.
12         JUDGE WOLFSON:  Okay.
13         As to them we're only looking at
14    communications to third parties on narrowly-defined
15    search terms, which I don't know what they are yet.
16         MR. DUNLAP:  We're glad to meet and
17    confer.
18         JUDGE WOLFSON:  You will.
19         MR. SANDICK:  And one other thing that
20    is important here, this is only terms and conditions
21    related discovery, that's what their request was, not
22    the whole world of SaveOn.
23         JUDGE WOLFSON:  Yes.
24         MR. SANDICK:  So communications with
25    third parties relating to terms and conditions is

Page 55

1    what your Honor is asking for?

2                JUDGE WOLFSON:  And I think this was

3    really within the Stelara and Tremfya area.

4                MR. SANDICK:  Right.

5                MR. DUNLAP:  Yes, that's why we were

6    interested in them.

7                I will say, if they mention SaveOn to a

8    third party, we do want to know about that.

9                MR. SANDICK:  What is the entitlement to

10   that?

11               MR. DUNLAP:  Because it goes to J&J's

12   awareness of SaveOn and their responses to SaveOn.

13               MR. SANDICK:  This has never been

14   briefed, your Honor.

15               JUDGE WOLFSON:  Yeah, I'm not addressing

16   that today.  If you want to address that with them,

17   you can address that with them.

18               MR. DUNLAP:  I think there are two other

19   issues that I think linger from the later time

20   period.  The custodians was one of the three.

21               So in our original request we had ask

22   that they run I think five search terms during this

23   later time period.  Four of those they had already

24   agreed to run for the earlier time period, but there

25   is one search term that we had asked them to run for

1    the 2022 time period forward that was not caught up

2    by Judge Waldor's order, and it's my understanding

3    that they're declining to run it, and it's one that

4    we think is very important, and it is a term that

5    asks for the term EI, which is benefits

6    investigations, which is what Mr. Sandick discussed

7    earlier, within the same document as Stelara and

8    Tremfya.

9           So you may have recalled him saying that

10   through Trial Card they are producing information or

11   copies of benefits investigations they conducted for

12   Stelara and Tremfya because at that point they

13   specifically started asking to look for whether

14   people were on SaveOn advised plans or not.

15          So we want documents relating to those

16   investigations, which is why we asked them to include

17   the search term.

18          I believe they're declining to run it

19   and we think that they should.

20          MR. SANDICK:  Your Honor, they are going

21   to be getting benefits investigations documents

22   relating to Stelara and Tremfya as a result of Judge

23   Waldor's order.  What they need beyond that I do not

24   perceive it or understand it, but maybe they should

25   wait to see what our production is.

1           JUDGE WOLFSON:  See what their

2    production is, and if there is still an issue, I'll

3    resolve it.

4           MR. DUNLAP:  Glad to reserve that.

5           There is just one other issue that I

6    believe is still out there, which is within the

7    documents that they reviewed for this later period,

8    2022 through November of last year, we believe that

9    they should be looking for and producing documents

10   identified by the search terms that go to their

11   enforcement of the Stelara and Tremfya conditions.

12          I believe there was an indication in

13   some of their correspondence that they weren't going

14   to do that.  We don't think there is a basis for

15   that.  We think that if there is a document

16   identified by the search terms and it goes to

17   enforcement of these terms, we need to see it,

18   because we have seen some documents from that time

19   period indicating ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

24          We just want to make sure that they're

25   producing documents relating to the enforcement of

Page 58

1  those terms.

2          MR. SANDICK:  The first time that I ever

3  heard this issue raised was right now.

4          I have in front of me the search

5  terms that they proposed on terms and conditions.  I

6  don't know what he's saying, how it connects to any

7  of this.  I'm just totally surprised by what he's

8  proposing.

9          JUDGE WOLFSON:  Then talk after we're

10  done.

11          MR. DUNLAP:  Sure.

12          We have met and conferred about this,

13  but we'll do it again.

14          JUDGE WOLFSON:  Okay.

15          Let's turn to the financial documents.

16  I think that's the next thing.

17          Now, what I understand is Plaintiff has

18  produced documents that bear on the following:  The

19  extent of the harm that SaveOn has caused J&J during

20  the relevant time period; and then a number of other

21  things.

22          What are those documents?  That is a

23  general description.  What does that mean?  What are

24  you producing to them?

25          MR. SANDICK:  So what we've produced to

1    them is ██████████████████████████████

     ████████████      ████████████████████████

     ████████████████████████    We have, of course,

4    agreed to update that through the present.

5                    ████████████████████████████

     ██████████████████████████████████

     ██████████████████████████████

8              What they are asking for is -- going

9    back at one point at least to 2009 -- all documents

10   and communications about those budgets.  And they've

11   offered no rational for why they need all documents

12   and communications about the budget.

13              So this is one where we do object on the

14   basis of relevance.

15              What matters is what budget was set; how

16   much was paid.

17                    ████████████████████████████████

     ████████████████████████████████████

     ██████████████████████████.  So we've already

20   produced substantial budget data.

21              What we haven't produced is all

22   communications ever about how much money was going to

23   be spent.  We don't think that is necessary for the

24   case.  It creates burden for no benefit.

25              JUDGE WOLFSON:  Okay.

1          MR. DUNLAP:  So, they bring a GBL claim

2     against us alleging that we caused public harm.

3          One of the things that they allege that

4     we do is that we threaten the financial viability of

5     CarePath.

6          That is right in their complaint.

7          We don't think that SaveOn threatens the

8     financial viability of CarePath, number one.

9          And number two, we don't think that this

10    is a public harm, because CarePath is actually the

11    marketing program.  It is designed to encourage

12    patients to buy Johnson & Johnson's drugs instead to

13    competitors' drugs.

14         And there is case law saying that if

15    what you're really doing is impacting somebody's

16    business, that is not a harm recognizable under the

17    general business law, which is about protecting the

18    public.

19         We need documents showing who sets the

20    budget, why is it set, where do the funds come from.

21         JJHCS is a division of Johnson & Johnson

22    that as far as we know doesn't make any products or

23    offer any services outside of Johnson & Johnson.

24    It's an administrative entity that serves other J&J

25    entities.

Page 61

1         If, in fact, the budget for CarePath is
2    part of the marketing budget, if, in fact, it is not
3    part of some sort of public or charitable effort,
4    that goes a long way in showing that this was a
5    marketing program.
6         If, in fact, we can show that the
7    budget -- the factors that go into setting the budget
8    are not actually impacted by what SaveOn is doing and
9    they're going to keep funding this anyway, that could
10   go a long way in showing that we don't actually
11   threaten their financial viability.
12        What they have produced are a limited
13   number of documents showing amounts paid out under
14   the CarePath program and some budgeting documents,
15   but they're just numbers, they don't show us why the
16   budgets were set, we don't know who sets the budgets,
17   there is no documents indicating any of that.
18        We're not asking for every single
19   communication under the sun about this.  It's a
20   question of whether this is relevant.  And we think
21   it's squarely relevant.
22        And if we can establish that, then we're
23   glad to work on determining who the right custodians
24   are and the search terms and all of that.
25        JUDGE WOLFSON:  Let me first stop you.

1            Judge Vazquez talked about public harm

2   in his opinion, and the way he analyzed it was -- he

3   said that "Plaintiffs plausibly allege at least two

4   deceptions as to consumers:  One, enlisting

5   pharmacies to reject Plaintiffs' claims for their

6   prescriptions at the point of sale; and two, failing

7   to inform patients that by enrolling in SaveOn SP can

8   breach the CarePath terms and conditions."

9            The things you're looking to do don't

10   answer those public harm questions.

11            So I want to get away from that for a

12   moment.

13            I think really the focus here is on the

14   harm to the Plaintiff itself and how the discovery

15   relates to that.

16            So let's focus on that.

17            I know that one of the arguments is the

18   viability, economic viability of the program.

19            Okay.

20            Yeah.  Documents that go to that are

21   important.

22            Could be communications go to it.

23            I think at this point what you've

24   done -- I don't know if you have produced any

25   communications.  You have given budgets.  You have

1   given I think you know -- let's see -- data.

2                   What have you given?

3                   MR. SANDICK:  We have given them

4   documents about how co-pay assistance is determined.

5   We answered interrogatory on this subject.

6                   They said we don't know who makes the

7   decisions.

8                   Literally that exact question of who

9   makes the decisions was the subject of our

10  interrogatory response that we provided this summer

11  after Judge Waldor told us that she wanted us to

12  broaden our response on that.

13                  JUDGE WOLFSON:  Okay.

14                  MR. SANDICK:  Patient level data to show

15  every patient enrolled, dates of enrollment, the

16  amounts of assistance, the drugs they took, all of

17  this for a six-and-a-half year period.

18                  You know, why would they need

19  communications within various parts of the J&J

20  company, not just JJHCS, but other components of the

21  company, why would they need that to figure out what

22  damages are?  There is no need for that.

23                  JUDGE WOLFSON:  I will tell you, I think

24  that your requests in the financial area are over

25  broad.

1           There may be areas that are pertinent,

2   and I want to define what they are.

3           I think to the extent that the harm

4   being alleged is a financial harm to the CarePath

5   program and, as you call it, the viability of the

6   program, there could be communications that could be

7   relevant.  It's not just what the budget is, but if

8   people are saying, you know, this is going to hurt

9   our bottom line, we're going to be okay, but it's

10  going to hurt our bottom line, that could go to your

11  viability argument.

12          There certainly could be communications.

13          So what I would like is a better or more

14  narrow request for what those communications are as

15  opposed to the entire world.

16          Frankly, the success of these drugs is

17  really not the issue for me or for this case.  These

18  are about programs.

19          I know you say this is really a

20  marketing tool, it's not to help the patient.

21          Maybe.

22          Maybe they're not such good guys.  I

23  don't know, that is not my determination today.  That

24  is not what this is about.

25          They created a program.  They are, you

 1  know, entitled to enforce the program how they'd

 2  like.

 3          And this is not a determination of, as I

 4  said, are they benevolent here in doing something

 5  great or not.  That is not the inquiry.  It's an

 6  economic harm that is being alleged.

 7          Right?

 8          MR. DUNLAP:  Your Honor, may I respond

 9  to that?

10          JUDGE WOLFSON:  Yeah.

11          MR. DUNLAP:  So I believe you said

12  that -- and you cited the Court's opinion in talking

13  about the harm and pointing to things like failing to

14  say that signing up for whatever it is allegedly

15  breaches the contract.

16          I just want to clarify the elements of

17  the GBL claim.

18          I believe when Judge Vazquez was talking

19  about those things he was talking about the

20  underlying acts.

21          The elements are, you have to have an

22  act that is consumer facing, public facing, that is

23  deceptive or missing.

24          That is one.

25          Two, that act has to cause some sort of

1    harm to the public.

2              And then third, that act also has to

3    cause some sort of harm to the Plaintiff bringing the

4    suit.

5              So when he was talking about failing to

6    tell patients that they breached their contract, he

7    was talking about the deceptive act, one of the

8    alleged deceptive acts.  He wasn't talking about the

9    harm that they allege.

10             The harm that they allege, if you look

11   at the complaint --

12             JUDGE WOLFSON:  Yeah, but I'm looking at

13   his opinion right here.

14             You're right, he is talking about the

15   deception.

16             But turning to Defendant's argument.

17             "The Court first agrees with Plaintiff

18   that a plausible belief that Defendant deceived

19   participants already enrolled in CarePath.

20   Similarly, the Court disagrees with Defendant's

21   reading that the statute requires a threat to the

22   health or safety of the public at large.  While

23   Plaintiff must plausibly allege some harm to the

24   public at large, while a threat to the health or

25   safety of the public is certainly a way to meet this

1   obligation, the statute is not related to health and

2   safety harms," and then it goes on to say what he

3   says.

4           Now, you may think that his opinion

5   didn't adequately address harm, but we have what he

6   did.  And, you know, it's not a lengthy opinion, and,

7   you know, but it is what is, and that is how he did

8   it.

9           But I want to get to, I think that -- I

10  believe that this financial information overall, your

11  request 28, 29, and I think 30, are over broad, and I

12  want to talk about what narrow requests could be

13  relevant to your claim.

14          MR. DUNLAP:  Your Honor, I don't want to

15  belabor this, but just in response to what you said,

16  which is, what the Court did was it disagreed with

17  our basis to dismiss the complaint in terms of

18  allegations of harm to the public.  So as I

19  understand it, he allowed J&J's allegations to go

20  through to discovery.

21          Those allegations of harm, paragraph 114

22  of their complaint, says SaveOn causes damage to the

23  public, including patients, through a series of

24  things, one of which is jeopardizing the viability of

25  patient assistance programs like CarePath by making

 1    them prohibitively expensive.

 2              JUDGE WOLFSON:  But that is the point.

 3              I am saying discovery about the

 4    viability of the program is fine.  That is the

 5    limitation.  And so that's what I'm focused on.  But

 6    that's why I'm saying, things that you're saying

 7    about, oh, but let's see how much money J&J makes on

 8    Stelara, let's see how much money J&J makes overall,

 9    is really not the issue.  I want to focus on the

10    program itself.

11              MR. SANDICK:  And, your Honor, just to

12    clarify the subject of the public harm that we're

13    alleging.

14              The public harm in this case is not even

15    exclusively or primarily this viability issue, what

16    it is, and as we have seen in discovery, is across

17    the country patients who come into contact with the

18    SaveOn program find their lives made much worse by

19    it.  ███████████████████████████████████████

20    █████████████████████████████████████████

21    ███████████████████████████████████████████

22    ██████████████████████████████████████████

23    ████████████████████████████████████████████

24    ██████████████████████████████████████████████

25    █████████████████████████████████████

Page 69

1          So the idea that somehow this will be a
2    case primarily about the viability of SaveOn, 349, as
3    I'm sure the Court knows, is a statute about consumer
4    harm, and consumer fraud, and the consumers have been
5    very badly harmed.
6          That evidence will be what this trial is
7    about.
8          JUDGE WOLFSON:  That is fine, but I want
9    to now get to the other aspect, which was what his
10   requests were about, which is the viability of
11   CarePath and what documents are necessary to talk
12   about that economic harm that challenged the
13   viability of CarePath.  And let's come up with
14   requests that are more narrowly tailored to that.
15         I don't think getting discovery on, you
16   know, gee, you're making -- you know, this is really
17   a marketing program, or, more broadly, J&J makes a
18   lot of money on these drugs.
19         Let's break it down.
20         So, with regard to CarePath
21   specifically, what do you think you're missing that
22   you need to give you the discovery you require to
23   show how this impacts the viability of CarePath.
24         MR. DUNLAP:  We need to understand how
25   Johnson & Johnson sets the CarePath levels, how it

1    decides on the budget, where that is done, the

2    factors that go into it, and relevant communications

3    about that.

4              JUDGE WOLFSON:  Okay.

5              Frankly, I find that okay.

6              So that's where we are.

7              Let's move onto the next.

8              J&J's return on investment from

9    CarePath.

10             MR. DUNLAP:  I'm glad to speak about it.

11             Return on investment documents we think

12   goes to fundamental issues of injury and damages.

13             Fundamental issues of injury and

14   damages.

15             Their allegation is that somehow what we

16   do causes them to pay out more in CarePath, in these

17   co-pay assistance funds, and they say, we don't want

18   to be paying this much money, it costs us however

19   much it costs us, that is our injury, and those are

20   our damages.  We will figure that out.

21             Part of what SaveOn does on behalf of

22   its plan clients is it helps more people enroll in

23   CarePath and take more Janssen drugs.

24             So we believe that if you look at the

25   additional patients who have signed up for CarePath,

1    the additional patients who have bought more Janssen
2    drugs as a result of what we are doing on behalf of
3    our clients, that Johnson & Johnson has made much
4    more money in terms of drug sales, new drug sales, it
5    otherwise would not have made than in the money that
6    it pays out.
7             Now, it has been well documented,
8    including congressional hearings, that a lot of drug
9    companies specifically monitor their return on
10   investment.
11            You can spend a little bit of money to
12   help patients take your drugs as opposed to a
13   competitors.  You can sell many more of these drugs
14   that the commercial health plans then basically pay
15   for.
16            That's why they do this, it's part of
17   the purpose of the program, not to benefit the
18   public, but to make this amazing investment, this
19   amazing return for themselves.
20            So that goes to whether it's a public
21   harm.
22            But it also goes to the question of
23   injury and damages.
24            If we are signing more people up and
25   they are paying more in CarePath assistance funds,

1    but they're making much more in drug sales, we think

2    that offsets or eliminates their damages, and it

3    might offset or eliminate their entire injury.

4            These return on investment documents are

5    absolutely critical to us.  We can talk about the

6    scope of how we get them, the type of data they

7    produce, the type of communication they produce, but

8    the subject of return on investment is critical to

9    our defenses on injury and damages, and it's relevant

10   to questions of public harm and GBL.

11           MR. SANDICK:  Judge, I would like to

12   respond.

13           JUDGE WOLFSON:  Sure.

14           MR. SANDICK:  This argument is

15   essentially that if CarePath, you know, and Johnson &

16   Johnson are still able to make money despite the

17   looting of the program that his client has engaged

18   in, then, you know, it's okay.  It's okay to steal

19   from someone, and to loot a program, so long as at

20   the end of the day they're still making money.

21           If this program was helping the

22   pharmaceutical manufacturers, as Mr. Dunlap suggests,

23   why have they gone through such extensive efforts to

24   hide their existence, to prevent us from knowing who

25   was in the program?

Page 73

```
 1           If these were something that, you know,
 2   advanced the profitability of the CarePath program,
 3   or of pharmaceutical industry generally, why are they
 4   hiding this from everyone?
 5           This is a made for litigation argument
 6   to obtain documents that have nothing to do with the
 7   case in an effort to shift the case from a fairly
 8   specific question, do their efforts lead CarePath to
 9   pay more money than it would pay in the absence of
10   CarePath, into a huge question about how much money
11   is J&J making on its drugs, can it afford to absorb
12   some losses here because they're generally a
13   profitable company, things that are just totally
14   irrelevant.
15           Also, just for a moment on the burden
16   issue.
17           The question of how much money does a
18   drug company make on a particular drug is not a
19   simple question, you know, residing in a couple of
20   paper files in someone's office.  This is a massively
21   complicated question that goes to virtually every
22   corner of the entire J&J company to figure out, you
23   know, is a drug profitable relative to what?  To
24   other investments?  To other potential drugs?
25           It's an effort to place a huge burden on
```

1  us for no benefit in the lawsuit.  It's totally

2  irrelevant to the lawsuit whether or not the whole

3  company of Johnson & Johnson makes more money or less

4  money.

5           The question is, are they inducing

6  people to breach the terms and conditions, the

7  patients, are they forcing them to do this in order

8  to get their medication, are they causing harm to

9  those patients, and does this lead to an increase in

10  the amount of co-pay support that we would pay absent

11  that?

12           They are reframing this to entities, by

13  the way, that are not part of this lawsuit.

14           JUDGE WOLFSON:  Well, that's why I want

15  to ask a question.

16           May I stop you there for a minute?

17           MR. SANDICK:  Sure.

18           JUDGE WOLFSON:  I find this curious, and

19  I have been wondering about this as I've looked at

20  this case since the beginning, the only Plaintiff in

21  this case is JJHCS, not J&J.  So the question is, you

22  have just defined, Mr. Sandick, that this is a very

23  narrow harm, narrow in the sense of to this one

24  subsidiary or affiliate that runs the CarePath

25  program.

```
 1              You want to argument more broadly, it's
 2    much more than that.  J&J is making a lot of money.
 3              So, first of all, who funds the CarePath
 4    program?
 5              MR. SANDICK:  So -- I'm not actually
 6    sure what the -- it's something within the Johnson &
 7    Johnson family of companies, but I couldn't say
 8    specifically.  I think there are specific drugs that
 9    fund -- essentially that fund their own co-pay
10    support, it's not decided in one person's office
11    sitting alone.
12              JUDGE WOLFSON:  Okay.
13              So those decisions are made somewhere
14    else within corporate J&J perhaps, it's not limited
15    to this one entity who is the Plaintiff in the case,
16    but who may be the one administering it.
17              I understand your arguments, Mr. Dunlap.
18    I'm not buying it at the moment.
19              What I don't want to see happen too in
20    this case is that this becomes, essentially, J&J is a
21    big company that makes a lot of money.  Don't cry for
22    them.
23              And I don't think, by the way, any juror
24    is going to believe that anyway, that you're doing
25    something that's greatly going to harm the overall
```

1   J&J company.

2             So that's why I'm trying to figure out,

3   if you're narrowing harm as to the CarePath program

4   itself that exists within this one entity.

5             MR. SANDICK:  That is the case.

6             We are not, for example, this is not a

7   case about lost profits.  This is not a case about

8   the harm, more broadly, to Johnson & Johnson.  This

9   is a program that says, well, the program gets this

10  amount of money.  As a result of SaveOn, they need to

11  spend this amount of money.  And that delta is the

12  financial damage.  And then the patient harm is what

13  we talked about before.

14            JUDGE WOLFSON:  Yeah, that's what I'm

15  dealing with now on financials.

16            MR. DUNLAP:  So I have to reiterate how

17  strongly we believe this is relevant and how

18  important we think these documents are.  And, again,

19  we're glad to talk about exactly which documents they

20  would produce, what sort of data, et cetera.

21            But the name of the program, or it used

22  to be, it was not just CarePath, but Janssen

23  CarePath.  Janssen being the entity that actually

24  sells the drug.

25            They decided to arrange their business

```
 1    so that this entity develops and sells the drug,
 2    Janssen, and this entity administers the CarePath
 3    program, but the two are related.  Of course they
 4    analyze their return on investment.  There is, again,
 5    congressional testimony showing that a number of
 6    these drug companies do that.  And we haven't heard
 7    them say that they don't have return on investment
 8    related documents.  They figure out how much they're
 9    going to give to CarePath to give to patients.  They
10    figure out how much that helps them drive additional
11    sales over in the Janssen entity.
12              We don't think that they should be able
13    to say, well, nothing that happens over in Janssen in
14    terms of additional sales is relevant because they
15    decided to put the CarePath program under JJHCS.
16              We're not trying to stand up and say,
17    oh, J&J makes a huge amount of money generally.
18    We're not interested in baby powder sales or shampoo
19    sales or anything.
20              JUDGE WOLFSON:  I know that.
21              MR. DUNLAP:  But we do think that this
22    fundamentally goes to what the purpose of this
23    program is and what the financial consequences of it
24    are.
25              They want to stand up and tell a story
```

that says, J&J provides this money to help patients for their drugs and SaveOn comes in and loots and steals and all the other pejorative terms Mr. Sandick used.

We think that that is not true.

What we want to be able to stand up and say, they don't offer this program to help patients. They offer this program to help persuade people to buy their drugs instead of their competitors.

And what SaveOn does on behalf of its plans actually winds up with them making more money. It's not, oh, they make lot of money, they can afford this. It's that the direct consequences of the actions that they have put at issue causes them to make more money. That there is an offset through the additional drug sales that we are able to drive by signing more people up for CarePath that more than offsets the additional CarePath funds that they're spending.

This isn't some general argument, they make a lot of money, they can afford it. That is not what it is. It is directly tied to the allegations in the complaint.

And I have to underscore -- you know, we're glad to narrow, as I said, the search terms,

1     the types of requests that we go after here.

2                    JUDGE WOLFSON:  Tell me what that

3     narrowing would be.  Let me hear that.

4                    And I do appreciate, but I'm assuming

5     you are producing documents about CarePath being

6     created and what it's intended to do and how it's

7     being funded.

8                    MR. SANDICK:  Absolutely.

9                    And the reason, by the way, it's named

10    Janssen CarePath is not like some secret thing, it's

11    because patients know the company as Janssen.  So if

12    you take Darzalex, you know that is a Janssen drug.

13    Janssen CarePath helps you pay for it.

14                   That is the reason that at one time

15    Janssen was part of the name, it's not some broad

16    conspiracy theory.

17                   MR. DUNLAP:  We're not alleging a

18    conspiracy theory.

19                   JUDGE WOLFSON:  What is the narrow terms

20    you would say?

21                   MR. DUNLAP:  We need documents showing

22    Johnson & Johnson's analysis of its return on

23    investment for CarePath.  Not just the data about

24    what it's paid out.  We know thing going to produce

25    that because that's driving their damages.

1          JUDGE WOLFSON:  Repeat that.

2          MR. DUNLAP:  We need Johnson & Johnson's

3    analysis of its return on investment for the CarePath

4    program, including how it helps patients adhere to

5    Janssen drugs once they enroll in CarePath, and we

6    want relevant communications on that topic as well.

7          MR. SANDICK:  Your Honor, what that

8    would require is, essentially, a company wide X-ray

9    of how much money the company makes on all of these

10   different drugs, how much it costs to make these

11   drugs, how much it costs to market these drugs.  All

12   of that information would be necessary.  A vast

13   project, totally irrelevant to the case.

14          And on the subject of adherence, by the

15   way, this is something that is very important for

16   your Honor to know, ████████████████████████████

17   ████████████████████████████████

18   ████████████████████████████████████████

19   ████████████████████     We have documents.  We can

20   produce those to the Court if that is relevant, I

21   don't think it is necessary to reach this.  But the

22   notion that the adherence story somehow resides

23   within JJHCS, they've looked at it.  They know

24   already.  Their partner is Express Scripts.  They get

25   all sorts of tremendous industry wide data.  Express

```
 1   Scripts manages pharmaceutical benefits for more
 2   Americans than any other company.  So if there is an
 3   adherence story, they would know it.  And what
 4   they've have figured out was it's nonsense.  There is
 5   no adherence story.
 6              And what he said is not a narrowing of
 7   the request, when he said, "oh, this is my narrowed
 8   request."  It is almost verbatim what they've asked
 9   for in the requests, in the discovery correspondence,
10   before Judge Waldor.  It's not a narrowing at all in
11   any regard.
12              MR. DUNLAP:  Can I respond to those
13   points, your Honor?
14              JUDGE WOLFSON:  Go ahead.
15              MR. DUNLAP:  So, first, he's acting as
16   if we're asking him to create a return on investment
17   analysis from scratch and just go out into the
18   company and all the various corners of it and try to
19   figure this out.
20              No.
21              We want whatever analyses they have
22   already done on their return on investment for
23   CarePath.  There has to be existing work product on
24   this.  Whatever finance teams or product teams drive
25   it must have done something.
```

1      JUDGE WOLFSON:  He's limiting it to
2  CarePath not on your drugs.
3      MR. SANDICK:  Well, in order to figure
4  out the question of whether CarePath is helpful you
5  have to look at all of these other issues relating to
6  the manufacturing, development, marketing, and sale
7  of the drugs, and I don't think -- I know Mr. Dunlap
8  keeps saying there is one piece of paper and it will
9  have all the answers -- I don't think that is true,
10  not based on anything I have seen.
11      MR. DUNLAP:  So the return on investment
12  documents would say, we put this much money into
13  CarePath, and then we make this much money in terms
14  of selling additional drugs to patients over in the
15  Janssen entity.
16      We're not asking him to, you know,
17  search every single corner for documents that are
18  irrelevant or -- we want whatever analysis they have
19  done.
20      They do CarePath for a reason.  There
21  must be some analysis of the benefit that CarePath
22  has on Janssen's product line.
23      MR. SANDICK:  The question of whether
24  CarePath operates for charitable purposes or for
25  business purposes is not really relevant to the case

1   if they're taking money from it.

2           If you run a car dealership and someone

3   steals a car once a week from your lot, it doesn't

4   matter whether as an overall matter the dealership is

5   still making money, it's still wrong to take cars

6   from people's lots, and it's wrong to induce people

7   to breach their terms and conditions in order to make

8   more money.

9           So the idea that somehow it matters how

10  profitable CarePath is or whether it's prudent for

11  J&J to run it, it's just moving the case far, far

12  away afield from anything in the complaint, the

13  judge's order, into this other subject of, is this

14  segment of J&J's business, the drug segment, is it

15  profitable, and is this just some gold dust from the

16  machine that it's okay for SaveOn to take.

17          Whether CarePath has a huge return on

18  investment or has no return on investment, it still

19  has no bearing on whether they're allowed to do this.

20  It's irrelevant to the case.

21          MR. DUNLAP:  Your Honor, if I could just

22  respond quickly.

23          JUDGE WOLFSON:  Yes.

24          MR. DUNLAP:  It has a huge bearing on

25  whether we have actually damaged them because if the

1   action we take by signing someone up for CarePath,

2   what they call the SaveOn program, resulted in a new

3   patient signing up for CarePath, they're saying, wait

4   a minute, we have paid more to that patient than we

5   otherwise would have.  But if by signing them up we

6   gave them more drug sales, we produced more drug

7   sales for Janssen, which is a J&J entity, then that

8   additional money eliminates whatever damage we say

9   was caused -- they say was caused by the additional

10  expenditure of CarePath funds.

11            Now, of course it's fine for him to

12  argument differently at trial if he wants to, but we

13  need these documents to show that we're not actually

14  injuring them.

15            And the car dealership scenario he

16  provides makes no sense, frankly.  If you steal a car

17  a week from a car dealership, that might be illegal,

18  but it's not a GBL claim.

19            JUDGE WOLFSON:  Let me ask you this

20  question:  Mr. Sandick, is there any analysis --

21  their position is, guess what, we make more sales for

22  you.  More people sign up because of the SaveOn

23  program.  And that may not be accurate.  You may

24  dispute it.

25            Is there a document or do you have

```
 1   documents that show whether, indeed, as a result of
 2   --
 3                MR. SANDICK:  If we do and it talks
 4   about SaveOn, it would have already been produced.
 5                MR. DUNLAP:  Aw, if it talks about
 6   SaveOn.  That is the critical point.
 7                MR. SANDICK:  Well, yeah, this is a case
 8   about SaveOn.
 9                There is literally no way to search as a
10   practical matter without going to every corner of the
11   business to generate the information that Mr. Dunlap
12   wants to be generated for this case.
13                JUDGE WOLFSON:  I didn't ask you to
14   generate it.  What I asked was, has anyone done an
15   analysis for documents that exist as to whether there
16   are more patients signing up for your drugs or
17   getting the drugs who are SaveOn customers?
18                MR. SANDICK:  I have seen that analysis
19   in their files stating that it's not true.
20                They have, along with their business
21   partner --
22                JUDGE WOLFSON:  I asked if you have it?
23                MR. SANDICK:  I haven't seen that
24   document.
25                JUDGE WOLFSON:  Answer that question.
```

1        MR. SANDICK:  I have not seen that
2   document.
3        JUDGE WOLFSON:  I'm asking if there are.
4        Do a search for that.
5        I want to start in that instance.  I
6   think that is a starting point.
7        MR. SANDICK:  What is the search, your
8   Honor?
9        JUDGE WOLFSON:  Whether there are
10   documents that exist that have looked at whether
11   there are more patients taking your drugs as a result
12   of being in the SaveOn program.  That's the inquiry.
13        MR. DUNLAP:  Your Honor, may I?
14        JUDGE WOLFSON:  Yes.
15        MR. DUNLAP:  I think it is necessary for
16   them to do that search, but we don't think it should
17   be limited to that.  And let me tell you why.
18        JUDGE WOLFSON:  I'm going to start with
19   that.
20        MR. DUNLAP:  Limiting it to the SaveOn
21   program we think has too narrow a net because if they
22   have documents that say, you know, for every
23   additional hundred people we sign up for taking
24   Stelara, we make this much money, that may not
25   mention SaveOn, but if we could find those documents,

1   if we could find that analysis, and then we compare

2   that with our own separate analysis of how many new

3   patients we got to sign up, we can show additional

4   profits to them as well.

5          So the relevant documents may not

6   mention SaveOn.  I understand you want to start

7   narrow, but I just want to put a stake in the ground

8   that we don't think limiting return on investment

9   information to SaveOn is sufficient.

10          MR. SANDICK:  Yeah, I mean, if it

11  doesn't mention SaveOn, then I don't see what it has

12  to do with this issue.

13          I should also point out that going back

14  right to the start of the case we made some requests

15  to SaveOn, saying, we want to know about how your

16  program operates with other pharmaceutical companies,

17  because the public harm in the GBL 349 claim is not

18  limited to harm to patients taking our drugs, it

19  could be patients taking Pfizer's drugs, or some

20  other company's drugs, those could also be harmed

21  under 349.

22          They objected and said, anything beyond

23  Janssen and SaveOn, CarePath and SaveOn, we object

24  to.  And Judge Waldor heard argument and ruled in

25  their favor and said, absent some very specific

1    showing, and a couple of times that showing has been

2    made, they don't have to tell you about their program

3    as it ties to other drug companies.  But now they are

4    making the mirrored request saying we have to do

5    something that has nothing to do with SaveOn.

6              MR. DUNLAP:  The mirrored request is

7    about Janssen drugs.  We're not asking them for all

8    kinds -- the draft drugs at issue in this case.

9    We're not asking for return on investment on a whole

10   bunch of drugs that aren't at issue.  What is their

11   return on investment for the drugs at issue, those 14

12   drugs.

13             JUDGE WOLFSON:  I need it to be honed in

14   on SaveOn at the moment, and I'm limiting it to that.

15   You're certainly free to come back to me depending on

16   what we get.  I know we're not done.

17             MR. DUNLAP:  Thank you, your Honor.

18             JUDGE WOLFSON:  All right.

19             But answer that, please.

20             MR. SANDICK:  Okay.

21             JUDGE WOLFSON:  Are those all the old

22   requests?

23             MR. DUNLAP:  Well, I think there was

24   also a pricing issue, a pricing data issue.

25             JUDGE WOLFSON:  The pricing of Janssen

Page 89

```
 1    drugs.
 2                MR. DUNLAP:  I could address that
 3    briefly.
 4                JUDGE WOLFSON:  Go ahead.
 5                MR. DUNLAP:  So they allege in their
 6    complaint that they have actually lowered the cost of
 7    Janssen drugs, and they cite for that something that
 8    they call a transparency report, which is a
 9    publicly-available document that they put up on a
10    website that says, we have lowered the cost of
11    Janssen drugs, but it provides no actual data.  And,
12    in fact, if you go and look at those reports, it
13    drops footnotes that says, we base this on internal
14    Janssen financials.  But they haven't produced the
15    backup for them.  And, in fact, we think that they
16    don't actually reduce drug prices, that they increase
17    drug prices.  Which is relevant to why these plans
18    are fighting back, because the prices that Johnson &
19    Johnson continues to raise, continues to put
20    financial pressure on the plans.
21                We also think that there is information
22    showing that one of the reasons they're able to keep
23    raising drug prices is because of the CarePath
24    program and the fact that they're able to get more
25    people through that program to stay on their drugs as
```

1   opposed to taking competitors' drugs.

2           We think that that is highly relevant to

3   their allegations here.

4           MR. SANDICK:  Your Honor, I think your

5   Honor may have said a few minutes ago that you didn't

6   think that the price of drugs was relevant in this

7   case, and it's not.

8           We produced the transparency reports as

9   a way of trying to give them something on an issue

10  that is actually irrelevant.

11          What they have asked for is, they say,

12  all internal data that supports the net price values.

13          Net price is, essentially, the price

14  that matters when we're talking about drug pricing.

15          And all internal data that supports it.

16          Again, this would require us to go well

17  outside of JJHCS to go through the entire company and

18  to try to explain what the pricing is, how it changes

19  over time.

20          First of all, they have a lot of this

21  information already through their business partners,

22  Express Scripts, and Accredo.  Accredo is a pharmacy.

23  The pharmacy collects payment on these drugs.  They

24  know, and their business partners know, what the drug

25  prices are.

1          But the case is not about what we charge

2     for the medication, is that a fair price, should be

3     charge something more or something less.

4          JUDGE WOLFSON:  You're not going to

5     argue that your drug pricing was affected by their

6     program?

7          MR. SANDICK:  No.  The drug pricing --

8     we're not seeking lost profits.  Drug pricing is set

9     by reference to a million factors.  SaveOn is not one

10    of them.

11         MR. DUNLAP:  If I could respond on that.

12         JUDGE WOLFSON:  Yeah.

13         MR. DUNLAP:  They say they produced

14    these transparency reports.  Of course they're on the

15    website.  This wasn't really much of a production.

16    It was something that was already available.  And

17    they say the net price is what matters.  And they

18    also say, oh, we have to go outside of JJHCS.  We

19    have to do this wide range search.

20         They put these numbers into the

21    transparency reports.

22         JUDGE WOLFSON:  But I want to know what

23    is the relevance of it.

24         MR. DUNLAP:  It's relevant -- first,

25    it's relevant because we believe it will show that

1    their allegation that they actually lowered real

2    prices over the course of these years, something

3    they're intending to tell the jury --

4                    JUDGE WOLFSON:  Well, I hope not.  I

5    just asked that.  And I'm going to put that right out

6    there again to Mr. Sandick.

7                    Are you in any way going to put to a

8    jury that you lowered prices and put that up to

9    suggest implicitly or explicitly it's because of

10   SaveOn.

11                   MR. SANDICK:  This is not a lost profits

12   case.  This is about the CarePath program and whether

13   that funding has had to go up over time because of

14   their efforts.

15                   I think that answers your Honor's

16   question.

17                   JUDGE WOLFSON:  But you're not going to

18   argue, and by that funding, we've now lowered prices,

19   or we've raised prices, or anything else?

20                   MR. SANDICK:  No.  The drug pricing is

21   not set by reference to SaveOn, it's set by reference

22   to a million other things, but not SaveOn.

23                   JUDGE WOLFSON:  I'm going to put this

24   right out, Mr. Dunlap, we're on the record today:  If

25   there will be no argument in this case at a trial, or

1    at a motion for summary judgment, or wherever it

2    might be, that CarePath in any way has impacted the

3    pricing of these drugs, it's a non-issue.

4            MR. DUNLAP:  Well, they're going to

5    stand up --

6            JUDGE WOLFSON:  I'm asking.

7            I want that representation.

8            MR. SANDICK:  Yes, that is not the

9    theory of our damages.

10           JUDGE WOLFSON:  I ask for a

11   representation that you will not make that argument.

12           MR. SANDICK:  Yes, we are not going to

13   argue that our drug prices were lowered due to what

14   SaveOn has done.

15           The only argument we will make about

16   damages is how the funding for the CarePath program

17   within JJHCS has changed as a result of their

18   conduct.

19           MR. DUNLAP:  Paragraph 80 of their

20   complaint they say, "SaveOn SP has inflated patients'

21   drug co-pay obligations even as JJHCS has

22   consistently decreased the price of the drugs

23   targeted by the SaveOn SP program," and it cites its

24   own transparency report, a quote that says, "Net

25   prices for Janssen medicines has declined for the

Page 94

1   fifth year in a row."

2            MR. SANDICK:  But that is not in any way

3   different from what I just said a moment ago, your

4   Honor.  What we say there is that they have taken a

5   bigger share of the CarePath program payments even

6   while we have reduced drug prices, but we are not

7   alleging that the drug price reduction was caused by,

8   was driven by, is related to SaveOn's program.  The

9   drug prices are set not by reference to what SaveOn

10  is doing, by reference to lots of other things, but

11  not that.

12           MR. DUNLAP:  The issue, your Honor, is

13  that we don't think that allegation is true.  We

14  think that, in fact, they have raised drug prices.

15           JUDGE WOLFSON:  Well, I want to know

16  what you're going to do with allegation number 80.

17           MR. SANDICK:  What am I going to do with

18  allegation number 80?

19           JUDGE WOLFSON:  Yeah.

20           MR. SANDICK:  What I'm going to do with

21  allegation number 80 is show that they are taking an

22  increased piece of the co-pay support program.

23           We are not intending --

24           JUDGE WOLFSON:  And that is not

25  impacting your pricing?

Page 95

```
 1            MR. SANDICK:  No.

 2            JUDGE WOLFSON:  Lowering your pricing or

 3    raising your pricing?

 4            MR. SANDICK:  No.

 5            That line in there, which is far from

 6    central to what our case is going to be about, what

 7    that line in there is meant to say is that it is

 8    commonly the case in sort of the market of public

 9    discourse for insurance companies to say, oh, yes, we

10    know that your drug prices have gone up, but that is

11    not our fault, that is the drug company's fault that

12    raise their prices every year.

13            So we made this sort of rhetorical

14    aside.

15            We are not intending to show, will not

16    show, or not alleging that the cause of drug prices

17    moving up or down is because of SaveOn.

18            MR. DUNLAP:  Well, no, because they are

19    going to stand up and they're going to say, we have

20    been lowering our prices, and then they're going to

21    come in and say, while we have been lowering our

22    prices SaveOn has come in and taken a bunch of our

23    CarePath assistance programs --

24            JUDGE WOLFSON:  I think I heard you're

25    not going to say that.
```

 1              MR. DUNLAP:  Well, I thought he said he

 2     wasn't limiting it to the damages or the cause of the

 3     increase.

 4              MR. SANDICK:  No, we are not going to

 5     argue that our damages are in the form of lost

 6     profits by having reduced prices due to SaveOn.  That

 7     is not our theory of the case, our damages, or

 8     anything else like that.

 9              If they make arguments in their case

10     using SaveOn data about drug pricing, say, no, no,

11     no, actually, these guys are -- you know, they're

12     ganas, they're taking from everyone, then we will be

13     able to come back and say something.  But our case is

14     not about the drug prices being set by reference to

15     anything that SaveOn does.  I want to make that very

16     clear.

17              MR. DUNLAP:  He keeps trying to link it

18     to SaveOn.

19              Put SaveOn aside for a second.

20              He is going to stand up at trial, if it

21     gets there, and say, Johnson & Johnson has been

22     lowering its drug prices.

23              JUDGE WOLFSON:  Why would you say that?

24              MR. SANDICK:  I don't think that we're

25     going to say that.

```
 1              MR. DUNLAP:  It's in his complaint.

 2              JUDGE WOLFSON:  I hear it's in the

 3    complaint.  Just because it's in the complaint --

 4    that's why I'm looking for representations today.

 5              MR. SANDICK:  We're not planning to

 6    prove a case about our drug prices.  The case that

 7    we're going to prove on damages, just to spell it out

 8    --

 9              JUDGE WOLFSON:  You're not going to open

10    and say, and you're not going to close and say, we're

11    such good guys, we keep reducing the price, but they

12    stealing from us?

13              MR. SANDICK:  No.

14              JUDGE WOLFSON:  Do you agree you're not

15    going to do that?

16              MR. SANDICK:  I agree that we're not

17    going to do that.  That's not the theory of our case.

18              MR. DUNLAP:  I just want to make clear,

19    he is not going to make any representation that they

20    have been lowering drug prices?

21              MR. SANDICK:  We are not going to make

22    that representation.

23              I want to leave myself one out, your

24    Honor.  If they start making allegations about the

25    greedy drug companies that have raised prices, I
```

1    think we're allowed to reply to that.  But that is

2    not something we're planning to present.  And, in any

3    event, they and their business partners have tons of

4    data about this. ████████████████████████████

5    ████████████████████████████████████████████

6    ████████████████████████████████  ███████

7    █████████████████████  ███████████████████

8    ███████████████████████████████ Why all the

9    lies and the deception?

10             MR. DUNLAP:  Well, I'm not getting into

11    all those false accusations.

12             Look, we had raised the drug pricing for

13    two reasons.  One is that they allege that they were

14    increasing these prices.  And if they are going to

15    make that allegation, we want to see the data on

16    which they are basing that.

17             JUDGE WOLFSON:  Okay.  I have just

18    gotten a commitment that they weren't.

19             MR. DUNLAP:  We also want to make the

20    point that it's our understanding that one of the

21    reasons Johnson & Johnson can, in fact, continue to

22    increase its drug prices is because it is able to get

23    patients to commit to taking its drugs through the

24    CarePath program.  That the CarePath program, one of

25    the consequences of it is, that it allows Johnson &

 1  Johnson to increase drug prices.  That they don't

 2  exist separately, that, in fact, it's part of Johnson

 3  & Johnson's strategy, that they've increased prices

 4  for reasons having nothing to do with material costs

 5  or efficacy or anything like that, but just because

 6  they can.  And one of the reasons they can do that is

 7  because they made the patients pricing sensitive to

 8  this program and they keep buying more drugs.  And

 9  the cost of that is borne by the employers.  And we

10  think that evidence goes to whether or not this is

11  actually a public harm or not or whether it's a

12  program designed to benefit J&J through increased

13  drug prices.  And we also think it could go to

14  damages and injury if we can show that by adding new

15  patients to the CarePath rolls, where they are able

16  to raise their prices more, not just make more sales,

17  but make more sales at a higher price.  That could

18  offset damages.

19              JUDGE WOLFSON:  Did you want to take a

20  break?

21              COURT REPORTER:  Yes, I would love to.

22              JUDGE WOLFSON:  Okay.

23              (Brief recess taken.)

24              JUDGE WOLFSON:  Mr. Dunlap, you got one

25  minute to summarize.  Before we took the break we

Page 100

1    kind of interrupted you.

2            MR. DUNLAP:  I think I just finished

3    making another pitch about why we thought drug

4    pricing was relevant even if they are not going to

5    affirmatively say that they have been decreasing

6    prices.

7            One other point I just want to make on

8    the financial stuff generally to the extent that your

9    Honor is going back and forth about whether or not

10   it's relevant or wants to put it off.

11           We have seen a number of documents that

12   have been produced since we submitted the letter and

13   since the conference occurred that we think

14   underscores that they do look at return on

15   investments.  And we're glad to make a supplemental

16   submission to you summarizing those documents, and

17   we're happy to do that promptly if that will help

18   you.

19           JUDGE WOLFSON:  Okay.

20           For today I'm not directing that

21   anything further be provided on the financial.  I

22   don't foreclose you if you got something else that

23   you want to submit to me that you think would be

24   convincing, but, first, would you please speak to the

25   other side and confer as to, based on that, why you

Page 101

1  think.

2               MR. DUNLAP:  This is on the drug

3  pricing?

4               JUDGE WOLFSON:  Yes.

5               MR. DUNLAP:  Okay.

6               JUDGE WOLFSON:  Okay, I think the next

7  thing now is with regard to this issue that's been

8  briefed the last week or so on custodians.

9               MR. DUNLAP:  And my associate Ms. Snow

10  is going to present argument on that.

11              JUDGE WOLFSON:  Okay.

12              All right.  So we got a couple of

13  disputes here.  This started with, I guess, 12

14  custodians, et cetera.  November 7 Judge Waldor

15  granted the motion as to six custodians.  And in that

16  regard the Plaintiff is now -- and I think you

17  reached some agreement on that, but the question is

18  the scope of the search terms.  Right now they have

19  been as to the CAP program, the Plaintiff has said,

20  right?

21              MS. SNOW:  Yes, just two narrow terms as

22  to the CAP program.

23              JUDGE WOLFSON:  And I think that you

24  have gone back and forth as to what did Judge Waldor

25  mean.

Page 102

1      Well, guess what?  As Judge Waldor had

2 put in her order, you know, I had the opportunity if

3 I would like to speak to her.  Actually, Wayne

4 communicated with her chambers and we got a response

5 that told us -- well, you know what, I'll let Wayne

6 put into the record because you communicated with

7 them about it.

8      MR. FANG:  The law clerk sent

9 correspondence back to my inquiry.

10      JUDGE WOLFSON:  Tim.

11      MR. FANG:  Tim.

12      And he summarized the dispute as he

13 understands it, and he spoke to Judge Waldor about

14 the differing interpretations, the parties'

15 interpretation of her order.  So, ultimately, what

16 she first said -- what he first said was, and

17 Defendant was right, that the judge did not

18 specifically order specifics regarding new custodian

19 searches, because the judge had asked the parties to

20 work up logistics, but upon reviewing and considering

21 the parties' dispute, Judge Waldor agrees -- and I'm

22 reading his e-mail -- that "Johnson & Johnson's

23 position is the only one that makes sense from a

24 proportionality standpoint.  We were only adding the

25 new custodians because of their association with the

Page 103

```
 1    CAP program. ███████████████████████████████

 2    ██████████████████████████████████████████████

 3    █████████████████████████████████████████

 4    ██████████.  Similarly, we will limit the searches

 5    of the new custodians' records to the CAP related

 6    term that Judge Waldor specified since that is the

 7    only reason these people are involved in the

 8    discovery in the first place."

 9                 MS. SNOW:  Your Honor, you know, I hear

10    what she is saying.

11                       ████████████████████████████████

12    ██████████████████████████████████████████

13    ██████████████████████████████████████████████

14    ██████████████

15                 I would ask that we be allowed discovery

16    on that earlier time period.

17                 Additionally, I think we did raise new

18    evidence that demonstrates why the two narrow

19    searches --

20                 JUDGE WOLFSON:  I'm going to address

21    that in a moment.  Okay?

22                       ██████████████████████

23                 MR. SANDICK:  Let me pass it off to

24    Ms. Long.  I have had enough.  I don't want to say

25    anything else for the rest of the day.
```

```
1            MS. LONG:  I just wanted to clarify, I
2    think as to the search terms at issue in the
3    November 7 order we did meet and confer where we were
4    considering the position that was offered by SaveOn
5    and a potential for compromise in the middle.
6    Ultimately we did not make that compromise.  But
7    prior to the October 30 conference we had agreed to
8    run a specific CAP search term which did not include
9    a SaveOn modifier for the 2016 to 2022 period.  We
10   did that to try to avoid the dispute that ultimately
11   went before Judge Waldor.  And what we took back from
12   the meet and confer was whether to consider running
13   that term over some period of these CAP custodians
14   earlier.
15            Ultimately we said back to Ms. Snow, and
16   we've had several meet and confers on this point,
17   that we did not consider that is what Judge Waldor
18   had ordered us to do so we declined to run the term.
19   ████████████████████████████████████████
20   ████████████████████████████████████████████████
21   ████████████████████████████████████████████████
22   ██████████████████████████████████
23            It is always possible that there is some
24   correspondence just outside of that window, but
25   consistent with our meet and confer our position has
```

1    been, as Mr. Fang just said, the order prescribed
2    only these search terms and only for that time
3    period, and that is why we cabined our searches
4    accordingly.
5                    JUDGE WOLFSON:  She didn't say that,
6    though.  What she said is -- she didn't give a
7    specific order on it, but she said what makes sense
8    to her based on the discussion.
9                    So it was not ruled upon.  So to the
10   extent you went back and forth, you're right, I think
11   you're interpreting what her meaning might be, but it
12   does say, the short answer is, "we did not order
13   specifics regarding the new custodian searches.  We
14   wanted the parties to work it out."  And then the
15   rest of the response was her kind of weighing in on
16   proportionality though.
17                   So it's not necessarily a done deal.
18                   So, let's talk about, is there
19   compromise in here?  That is really where we are.
20   And, one, I want to talk about dates.  I don't
21   understand this whole thing about before 2022.  There
22   is some earlier date involved or not.
23                   MS. LONG:  ████████████████████████
24   ████████████████
25                   JUDGE WOLFSON:  ████████████████████████

Page 106

1　████████████████████████

2　　　　　MS. LONG:  ████████████

3　████████████████████████████████

4　████████████████████████

5　　　　　MS. SNOW:  If I can speak on that.  Two

6　points on that.

7　　████████████████████████████████

8　████████████████████████████████

9　████████████.

10　　　　　JUDGE WOLFSON:  ████████████████

11　████████████████████████

12　　　　　MR. LoBIONDO:  We'll search for those.

13　　　　　JUDGE WOLFSON:  You're going to search

14　for those.

15　　　　　MR. LoBIONDO:  ████████████████

16　████████████████████████

17　　　　　MS. SNOW:  So I think my second point is

18　that, really, it's about the essence of the CAP

19　program, and ████████████████████████

20　████████████████████████████

21　████████████████████████████

22　████████████  ██████████████

23　████████████████████████████████

24　████████████  And that is what we are -- that is what

25　we believe we're entitled to discovery on.

Page 107

1      And I think that for those custodians we
2  do need to go back further.  It is clear that, like,
3  for example, John Hoffman was working on the response
4  to accumulators and maximizers in 2020.
5      And I think there is another additional
6  point I have here, which is that the search terms
7  that they have agreed to run just on the CAP program
8  do not actually capture all of the documents that
9  would be involved in that response, which ultimately
10  turned into that program.
11      JUDGE WOLFSON:  Okay.
12      So you're saying there could be other
13  documents because perhaps even there wasn't a name of
14  a CAP program but the idea of what this program could
15  be was out there and maybe it's not being captured by
16  the search terms?
17      MS. SNOW:  Yes.
18      JUDGE WOLFSON:  What are the search
19  terms?
20      MS. SNOW:  So I believe they're
21  referring to the two additional search terms that
22  were requested in SaveOn's other motion regarding the
23  CAP program, and there is this additional term which
24  they agreed to starting -- they agreed to it in
25  September, which was also covering the CAP program

Page 108

```
 1    specifically, but there are a number of other terms
 2    that I'm happy to get into the specifics on but that
 3    encompass mentions of SaveOn, mentions of ESI and of
 4    accumulator because, of course, many of the documents
 5    reveal that ███████████████████████████████████████
 6    ██████████████████████████████████████.
 7              JUDGE WOLFSON:  And you haven't reached
 8    agreement on these?
 9              MS. LONG:  I want to be clear that we're
10    limited as to the new CAP custodians.  We have run
11    these search terms for the original time period and
12    through the refresh as to 17 other custodians.
13              JUDGE WOLFSON:  Why wouldn't you run
14    them for these?
15              MS. LONG:  Because, respectfully, their
16    request was cabined -- was about the CAP program.
17    Judge Waldor opened the door about CAP.
18              We're happy to take the terms back to
19    mid-2021 or to another date, and we can investigate
20    what that date was.
21              JUDGE WOLFSON:  Well, the reason I asked
22    that is, if these were the people that were somehow
23    involved with the CAP program, they may have been
24    involved in the discussions at an earlier date as
25    well and may be relevant custodians.
```

Page 109

 1            So I'm going to direct that it happen,
 2   that you run them for these additional custodians as
 3   well.
 4            I can't believe they just suddenly
 5   appeared just for CAP and didn't have involvement
 6   before.
 7            MR. LoBIONDO:  They were certainly
 8   relevant, your Honor.
 9            The argument we made before Judge Waldor
10   and she agreed with was, as I understand it, was, we
11   have custodians that are covering these issues.
12   These people would be cumulative of what we already
13   produced.  And she decided they were not cumulative
14   as to CAP, which is why she thought that they should
15   be added not with respect to proportionality, only as
16   to CAP.
17            JUDGE WOLFSON:  It's four more.  I'm not
18   worried about it.  I'm doing it.
19            MR. LoBIONDO:  It's six more for five
20   years.
21            MS. LONG:  Are we talking about number
22   of custodians or the search terms as to the CAP
23   custodians?
24            JUDGE WOLFSON:  Those custodians that
25   we've agreed to, but running the additional search

Page 110

1  terms on them.

2          MS. LONG:  Back to 2016?

3          JUDGE WOLFSON:  Right, what the

4  attorneys agreed to, correct.

5          MR. SANDICK:  So all of the search terms

6  that we've used in the case, that is your Honor's

7  ruling?

8          JUDGE WOLFSON:  I don't know of all the

9  search terms, it's whatever is related --

10          MR. SANDICK:  Because that is the core

11  issue.

12          MR. LoBIONDO:  This is part of the

13  issue, frankly, that we've been having, which is

14  that, we brief up an issue, they get a ruling they

15  don't like.  They say, no, Judge Waldor actually

16  meant something else.  Judge Waldor said, no, this is

17  what I meant.  And now we're re-litigating it for a

18  third time until they've finally gotten a ruling that

19  is going to give them everything they asked for.

20          JUDGE WOLFSON:  I don't know about

21  everything.  All I heard was the terms that would be

22  relevant to them would be referring to SaveOn,

23  referring to ESI.  It's not the world.

24          What I'm trying to capture with them,

25  the only reason is, that I'm saying it, is these are

1  CAP people.  The likelihood is that they were

2  involved somehow before this in looking at these

3  issues, and to the extent they were, they should

4  produce documents.  But I want to limit it then to

5  this world, not every search term.

6          MR. LoBIONDO:  Okay.

7          JUDGE WOLFSON:  So come up with the

8  search terms that relate to this and confer on it.

9          MS. SNOW:  Your Honor, we're happy to

10  make a narrow proposal of search terms.

11          JUDGE WOLFSON:  Okay, let's do it.

12          New custodians that were brought up in a

13  letter.

14          I guess you brought up Scott White,

15  Blasine Penkowski, Karen Lade, and Juliette Deshaies.

16          I think Plaintiff is saying that Judge

17  Waldor rejected proposal of these additional

18  custodians, that they were part of that motion to

19  compel 12, and she ordered only half basically,

20  right?

21          Okay.

22          And now what you're claiming is that

23  there are new documents that were not part of the

24  motion before Judge Waldor that show that these

25  proposed custodians have more knowledge than you

1   previously knew and presented to her and that you
2   want them to be added, right?
3                  MS. SNOW:  Yes, your Honor.
4                  There are actually five remaining
5   custodians that were left undecided, and we have
6   renewed our motion as to all five, however, in the
7   event you determine that Judge Waldor did resolve as
8   to -- you know, we don't think the order states
9   that -- it doesn't name those custodians at all.  At
10  the conference she didn't issue a ruling as to those
11  custodians, and so we don't think she's decided
12  those.  But we have also put forth significant new
13  evidence as to White, Penkowski, Lade and Deshaies,
14  as we've mentioned.
15                 JUDGE WOLFSON:  Ms. Long.
16                 MS. LONG:  Yeah.
17                 I think your Honor said our position
18  fairly succinctly.  We believe Judge Waldor already
19  decided this.  I think that is fairly clear from the
20  text of her order.  This issue was part of 27 single
21  spaces of briefing and 146 exhibits that went before
22  Judge Waldor, and ultimately Judge Waldor split the
23  issue.  As your Honor said, there were 12 custodians
24  that were at issue in the motion.  She ordered us to
25  provide six of seven.  We later conferred on which

```
 1   six those would be and agreed and resolved as to
 2   those.  And I just don't think there is anything
 3   ambiguous about the order and what was resolved.
 4             JUDGE WOLFSON:  Do you think that --
 5   their position is we've identified, now based on new
 6   documents I'm assuming that you could not have
 7   presented to her at the time because you didn't have
 8   them, that based on new documents this is a new and
 9   different argument to be made?
10             MS. LONG:  No.
11             If I could take the custodians in turn.
12             First, as to Ernie Knewitz, there are no
13   new documents.  There are no new documents in
14   SaveOn's opening brief.  There are no new documents
15   on the reply brief.
16             As to the remaining custodians that are
17   at issue --
18             JUDGE WOLFSON:  Yeah.
19             Let's start with White and Penkowski.
20             MS. LONG:  Sure.
21             They're the same types of documents that
22   were at issue, for example, calender invitations
23   concerning JALT, et cetera.  And as was before Judge
24   Waldor, the issue with Mr. Knewitz and Mr. White and
25   Ms. Penkowski are all that they serve on what's
```

Page 114

1    called the JALT.

2              We have a senior executive who was on

3    the JALT.  Her name is Katie Mazuk.  She has already

4    been designated as a custodian in this case on all

5    relevant issues on all agreed upon search terms.  And

6    so any discovery that would be relevant, anything

7    that the JALT considered, will be produced from Ms.

8    Mazuk's files.  That is something that was before

9    Judge Waldor.  That is consistent with the documents

10   that are still before your Honor.  Ms. Mazuk is the

11   senior most executive with responsibility for making

12   decisions about the CarePath program.

13             As to Mr. White.  Mr. White is one of

14   the highest ranking executives in the Johnson &

15   Johnson family of companies and he has no

16   responsibilities day to day for CarePath.

17             Mr. White came up first in a motion that

18   SaveOn brought in June about our interrogatory

19   responses, that was also at issue at the October

20   conference, where we have consistently provided

21   representation to the other side that Mr. White does

22   not have responsibility for -- does not have day to

23   day responsibility for the CarePath program.  He has

24   no unique documents because, again, he is on the

25   JALT, which is the main piece of evidence that SaveOn

Page 115

1    cites.  So is Ms. Mazuk.  And all of the documents
2    that SaveOn has cited Ms. Mazuk is either on or is a
3    custodian of.  The calendar invitations include
4    Ms. Mazuk.  And so the only --
5                JUDGE WOLFSON:  So let me ask you this
6    question:  The documents that they now provided say
7    that -- you know, forget the day to day
8    responsibility -- that White may have been involved
9    in the high level discussions about CarePath,
10   SaveOn's role and how it was impacting Plaintiff's
11   program, litigation.
12               Why do you think that White would not
13   have relevant documents?
14               MS. LONG:  ███████████████████████
15   ████████████████████████████████████████████
16   ███████████  ████████████████████████  █████
17   ██████████████████████████████████████████████
18   ██████████████████  █████████████████████████
19   ██████████████████████████████████████████████
20   ████████████████.
21               And that is consistent with all of the
22   documents that we've cited, including decks and
23   other -- the evidence that is at issue before your
24   Honor today.
25               The other evidence comes down to being a

```
 1    counterparty on certain work orders with Trial Card,
 2    and, again, I don't see how that is relevant here.
 3              And I think the last category of new
 4    documents, which, you know, SaveOn points to as kind
 5    of a smoking gun by a third party is an █████
 6    ███████████████████████████████████████
 7    ███████████████████████████████████████
 8    ████████████████████████████████████████
 9    ██████████████████████████████████████████et
10    ████████████████████████████████████████
11    ██████████████████████.
12              First, we've now found the calendar
13    invitation -- what we believe is the calendar
14    invitation for this meeting.  It does not include any
15    of those individuals.  ███████████████████████
16    ████████████████████.  And, also, as
17    your Honor just ordered, █████████████████████
18    ████████████████████████████████████████
19    ██████████████████████████████
20    ██████████████████████.  John Hoffman is one of
21    the CAP custodians that you just ordered additional
22    search terms be run over.
23              So there is not a gap in our production
24    here.
25              I don't see in the document what SaveOn
```

1  is claiming, but even if it was true, those files

2  would be produced already.

3          And I think when we're looking at

4  someone as senior was Mr. White and Ms. Penkowski,

5  and the same would apply for Mr. Knewitz, there is a

6  particular concern about Apex custodians.  And I

7  recognize that the Apex doctrine comes up more so in

8  the context of depositions, but if we're talking

9  about cumulative files from very senior people, I

10  don't think that SaveOn has met that showing.

11  ████████████████████████████████████

12  ████████████████████████████████████  ██

13  ███████████████  ██████████████████████

14  █████████████████  There is no additional

15  benefit to these other custodians.

16          JUDGE WOLFSON:  Ms. Snow.

17          MS. SNOW:  Yes.

18          So, first of all, I just want to address

19  the point that ████████████████████████

20  ████████████████████.  That's because

21  that's who they actually have produced documents

22  from.  That doesn't mean that that's the only place

23  there are relevant documents.

24  ████████████████████████████████████

25  █████████████

1  ████████████████████████████████

2  ████████████████████████████

3  ████████    You would -- I have a copy if you'd

4  like.

5           JUDGE WOLFSON:  I have it here too.

6           MS. SNOW:  ████████████████████████,

7  ████████████████████████████████

8           And I also want to make a point about

9  this document.

10           This is the only -- ████████████████

11  ████████████████████████████████

12  ████████████████████████████████

13           There is not a single document produced

14  before January 2022 that suggests this idea.

15           So what this document shows us is that

16  ████████████████████████████████

17  ████████████████████████████████

18  ████████████████████████████████

19           For that reason alone I think he's

20  highly likely to have relevant documents.

21           And just addressing the Trial Card work

22  order.

23           I think we brought up Trial Card a few

24  times today.

25           ████████████████████████████████

Page 119

1 ███████████████████████████████████████████

2 ███████████████████████████████████████████

3 Those are very key aspects of how you actually run a

4 program like this. ████████████████████████████ a

5 ███████████████████████████████████████

6 ████████████████ ███████████████████████████████

7 ██████████████████████

8            ████████████████████████████████████

9 ████████████████████████████████████████

10 █████████████████████

11            That goes to the viability we have been

12 discussing.  It goes to the harm, because they're

13 having to -- you know, J&J alleges that they're

14 having to up the amount that they're reimbursing

15 patients.

16            JUDGE WOLFSON:  Yeah, so let me ask you

17 this question:  So Scott White is apparently the

18 company group chairman of North America

19 Pharmaceuticals, right?  So one of the highest

20 ranking executives.

21            ████████████████████████████████████████

22 ██████████████████████████████████████

23 █████████████████████████████████████

24            MS. SNOW:  ████████████████████████████

25 █████████████████████████████████████

Page 120



1  ████████████████████████████████

2  ██████████████  So we see in numerous documents --

3  JUDGE WOLFSON:  At the what level?

4  MS. SNOW:  ██████████  ██████  ████

5  ████████████████████████████████

6  ███

7  You know, they make a point about us

8  going after so many executives.  ██████████████

9  ████████████████████  ██████████████████

10  ████████████████████████████

11  ████████████████████████████

12  ████████████████████████████.

13  ████████████████████████████

14  ████████████████████████████████

15  ██████████████.

16  JUDGE WOLFSON:  What is it precisely

17  you're looking for Mr. White to produce?

18  MS. SNOW:  Well, I think we've been

19  missing many documents to show who actually -- like

20  the decisions being made.

21  You know,  ████████████████████████

22  ██████████████████  and we're not disputing that.

23  ████████████████████████████████

24  ████████████████████████████

25  ██████████  ████████████████████

Page 121

1   ████████████████████   ████████████████

2   ███████████████████████████████████████

3   ████████████████████████████████████

4   ████████████████████████████████████

5   █████████

6       ██████████████████████████████████

7   █████████████████████████████████

8   ████████████████████

9           MS. LONG:  May I respond?

10          JUDGE WOLFSON:  Yes.

11          MS. LONG:  ████████████

12          Let's start with just a brief look at

13  Exhibit 2.

14      ██████████████████████████████████

15  ████████████████████████████████████████

16  ██████████████████████

17      ██████████████████████████████████

18  ███████████████    ████████████████

19  ████████████████████████████████████

20  ████████████████████████████████████████

21  ████████████████    ████████████████.

22          What Ms. Snow was talking about,████████

23  ████████████████████████████████████

24  ███████████████████████████████

25  ██████████████████████.   ████████████████

Page 122

1 ████████████████████████████████████████

2 ████████████████████████ ████████████ ,

3 ████████████████████████ ██████████████

4 ████████████████████████████████

5 ██████████████████████████████████████████

6 ██████████████████ .

7          JUDGE WOLFSON:  But how was that meeting

8 captured?

9          MS. LONG:  Sure.

10          So there are a couple of ways that the

11 meeting was captured.  There are, first, these

12 calendar invites.  Usually attaching a presentation.

13 The presentation has content, sometimes relevant to

14 the CAP program, for example.

15          Ms. Mazuk was on the calendar

16 invitation, was on the e-mail where those decks were

17 communicated.

18          JUDGE WOLFSON:  But what happens at the

19 meeting, and where is that document?

20          MS. LONG:  So what happened at the

21 meeting I believe is that the presentation -- the

22 deck is presented and there is a discussion.  I am

23 not aware of any minutes, for example, that come out

24 of that meeting, but if there was subsequent e-mail

25 discussion, it would presumably be as we've seen in

Page 123

1    the documents amongst ████████████████████████

2    ████████████████

3    ███████████████████████████████

4    ██████████████████████████████████,

5    █████████████████████████████ for

6    ██████████████ -- this was at issue with

7    respect to our interrogatories -- different areas of

8    the company that have absolutely nothing to do with

9    the CarePath program.

10                And just, again, to emphasis, as to

11   Mr. Knewitz, we have also stated, for example, that

12   he has nothing to do with CarePath.  He occasionally

13   made statements regarding the lawsuit, and that is

14   the limitation.  We have represented that in

15   interrogatory responses.

16                JUDGE WOLFSON:  Which one are you

17   referring to?

18                MS. LONG:  Mr. Knewitz.  It's

19   K-N-E-W-I-T-Z.

20                JUDGE WOLFSON:  Okay.

21                MS. LONG:  And then as to the remaining

22   folks, again, those decisions would be captured -- to

23   the extent that there are documents, which I think if

24   ████████████████████████████████████

25   ██████████████████████████

1    ████████████████████████, but certainly SaveOn is

2    welcomed, as I'm sure they will, to depose Ms. Mazuk

3    to learn about those discussions, but I don't have

4    any evidence, nor do they, that those discussions

5    were otherwise memorialized in e-mails that have

6    somehow been withheld from our productions.

7              If there are relevant communications, if

8    there are relevant documents, decks, minutes, those

9    would have already been produced to opposing counsel.

10             MS. SNOW:  I just have a few quick

11   responses.

12             First of all, to the last point, we need

13   documents before we're taking depositions.  And the

14   standard that is at issue is, have we shown that

15   these individuals are likely to have relevant

16   documents.

17             Going to the point that Ms. Long was

18   making, while it's not in the new evidence, there are

19   ████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████

21   ██████████████████████████████████████████

22             JUDGE WOLFSON:  Did you present that to

23   Judge Waldor?

24             I don't want to go over ground that she

25   already decided.  So I don't want to do that.

Page 125

1        I'm only looking at if they're new

2    documents and you have a new argument to make,

3    because she obviously considered this already.

4            MS. SNOW:  Your Honor, if we could just

5    look at the old documents in the context of the new

6    documents.  There is evidence that shows that these

7    ███████████████████████████████████████████████████

8    ██████

9                      ██████████████████████████████████

10   █████████████

11                    I████████████████████████████████████

12   ███████████████████████████████████████████

13   ████████████████████████████████ .  ██████████

14   ██████████████████████████████████████████  █

15   ████████████████████████████████████████████████████

16   ████████████████  ████████████████████████████ ,

17   ████████████████████████████████████████████ now,

18   ██████████████████████████████████████████

19   ████████████

20           JUDGE WOLFSON:  I don't know if you want

21   to take these one by one or as a group, I mean, you

22   dealt with them kind of as a group overall, but I

23   have a couple of concerns here.  I certainly don't

24   want to go over ground that Judge Waldor actually

25   dealt with unless, as I said, there was something new

Page 126

1  and there was a reason to do so and to revisit it.

2  Respectfully, I don't think it would be otherwise

3  appropriate.

4              Now, I don't know how well this was

5  addressed or simply if it was, like, get these, this

6  is all you're getting.  You know, you get six

7  custodians, I'm not giving you more, or whatever it

8  might be.

9              MS. SNOW:  So, actually, in the

10  transcript she said, I'm going to order some to

11  start, and then we'll deal with the Apex custodians

12  later, so I think today is that later.

13              JUDGE WOLFSON:  Did she leave that

14  opening?

15              They're seeming to shake their head no

16  on the other side of the table.

17              MS. LONG:  The transcript, your Honor,

18  is long.  In that context, we disagree with what was

19  set forth by Ms. Snow.

20              JUDGE WOLFSON:  Is it the October

21  transcript?

22              MS. LONG:  Yes, it is the October

23  transcript.  We agree on that.

24              But, your Honor, specifically Judge

25  Waldor said, "Well, I thought CAP -- the 12 new

1  custodians included CAP custodians, I'm going to open

2  the doors on CAP," and then later, "I'm going to

3  permit additional custodians.  I know we're down to

4  six."  Referencing the six custodians that ultimately

5  Judge Waldor ordered.

6           I think that is also consistent with,

7  frankly, the natural reading of the order that

8  followed the conference.  Here the order read, "With

9  regard to SaveOn's requested relief as set forth in

10  docket entry number 165, custodians' motion, the

11  Court will require" --

12           JUDGE WOLFSON:  I'm looking at the

13  transcript, I'm reading, so if you could wait a

14  moment, please, I'm reading the portion of the

15  transcript.

16           Well, this is what she says, she said,

17  "I said start with four.  Mr. Mangi will talk to them

18  about it.  And then we can discuss the two that

19  you're trying to protect with the Apex doctrine,

20  which is, according to adversary, inapplicable to

21  documents."

22           Mr. Mangi, "Yeah."

23           The Court, "I assume ultimately you're

24  going to want to depose them."

25           MS. ARROW:  Your Honor, what page are

```
 1   you on?
 2               JUDGE WOLFSON:  119, 120.
 3               Well, it doesn't look like she
 4   definitively closed the door, that is true.  So I
 5   don't think I should look at it that way.  It clearly
 6   was a start.  So I don't want to rely on that.
 7               So let's talk about the merits of the
 8   issue.
 9               Now, what are the limited search terms
10   with regard to White and Penkowski that you want to
11   use?
12               MS. SNOW:  We're happy to provide a
13   proposal on that.
14               JUDGE WOLFSON:  Very limited.
15               MS. SNOW:  Very limited, yes, your
16   Honor.
17               JUDGE WOLFSON:  Very limited.
18               Confer with your adversary.
19               MS. SNOW:  And for the time period --
20   the full time period that they've used for every
21   other custodian?
22               JUDGE WOLFSON:  That's fine, but, as I
23   said, these are going to be limited search terms.  I
24   do understand they are high level executives and may
25   be duplicative of what others have, but I also know
```

1   people sometimes write e-mails and do things that
2   don't include everybody else when they want to talk
3   to someone else in the company, and it happens, so
4   there could be other documents, but, please, limit
5   it.
6          Now we've got -- in fact, I mean,
7   ████████████████████████████████████████████████
8   ████████.  Very relevant.  I've got quotes from her in
9   e-mails.  I understand others may have gotten them,
10  but that is an important person.
11         Yeah, do your search terms and I'm going
12  to allow it.
13         MS. SNOW:  Thank you, your Honor.
14         JUDGE WOLFSON:  Then we've got Lade,
15  L-A-D-E.
16         MS. SNOW:  Yes.
17         So just to start about the so-called
18  brand employees.
19         There's new evidence -- if you look at
20  Exhibit 6, it includes the e-mail, actually, that
21  ████████████████████████    ████████████████████████
22  ████████████████████  -- I can give you a copy of the
23  exhibit.
24         JUDGE WOLFSON:  I have them here, it's
25  just finding where 6 starts.

```
                                                    Page 130

 1                   Thank you, Wayne.

 2                   Okay, I got it.

 3              MS. SNOW:  If you look at the -- I

 4       believe the very bottom of that first page, it says,

 5       ████████████████████████████████████████████████

 6       ████████████████████████████████████████

 7       ██████████████████████████████████████████████

 8       ██████████████████████████████████

 9                   So Ms. Lade is a brand employee, and I

10       think -- you know, turning to just looking at the new

11       evidence, in May of 2017 -- if you look at Exhibit

12       11.

13                   I'm happy to also give you a copy.

14              JUDGE WOLFSON:  Now, these documents

15       were produced to you because they came through other

16       custodians?

17              MS. SNOW:  Yes.

18                   But if you look at Exhibit 11, there's

19       an e-mail -- I'll give you a minute.

20              JUDGE WOLFSON:  Okay, I'm up to 11.

21                   Go ahead.

22              MS. SNOW:  So if you look at the second

23       page of that exhibit, there's an e-mail that Ms. Lade

24       sent and there is not a single current custodian on

25       that e-mail, and it's all about --
```

Page 131

```
 1              JUDGE WOLFSON:  So how did you get it?
 2              MS. SNOW:  Because later in the thread
 3   it was forwarded to a custodian.
 4              JUDGE WOLFSON:  Okay.
 5              I see you shaking your heads on this
 6   side, but that's happenstance, that it ended up being
 7   forwarded to someone.  She authored an e-mail, and if
 8   it's relevant -- and she's authoring a lot of
 9   documents.  I don't know why she would not be a
10   custodian to search if it's relevant material.
11              MS. LONG:  Your Honor, one, there is no
12   mention of SaveOn in this document; and two, I want
13   to be ███████████████████████████████████████
14   ██████████████████   ████████████████████████████
15   ███████████████████████████████████████████████
16   ██████████████████   ███████████████████████
17   ████████████████████████████████████
18              JUDGE WOLFSON:  Yes, but you take the
19   position that they are.  Yes, you do.  So the fact
20   that they don't isn't really the issue because you
21   are going to be arguing they are.
22              Look, you know what, I have enough on
23   this.  This is someone who you should be getting
24   documents from.  I'm adding it.
25              You know, everybody wants to slice this
```

Page 132

1   so finely.  It's a huge case.  There is a lot of

2   discovery on both sides.  Let's just do it instead of

3   fighting over it.  It will take you less time to

4   produce and move on than to fight.

5              MS. SNOW:  And, your Honor, to be clear

6   on those, for the regular set of search terms and the

7   full regular time period?

8              JUDGE WOLFSON:  Regular time period, but

9   I don't know about all the search terms.  You have to

10  hone something that is appropriate for her, it cannot

11  be a universe.  I have to have some limitations.

12             So work on those search terms with your

13  adversary please.

14             Okay?

15             MS. SNOW:  And turning to Ms. Deshaies.

16             JUDGE WOLFSON:  Yes.

17             MS. SNOW:  So her primary -- or her

18  relevance in the new additional document is she was

19  working with a really important third party.  The

20  third party is named Archbow.  It's all one word,

21  A-R-C-H-B-O-W.  That third party was working on the

22  ████████████████████████████████████████████

23  ██████████████   ████████████████████████████████

24  ████████████████████████████████████████████

25  ████████████████████████████████████████████

Page 133



18          JUDGE WOLFSON:  Why is that critical?

19          MS. SNOW:  It's critical to our

20   mitigation defense.

21          They have these ways that they're trying

22   to use to limit their damages.

23          JUDGE WOLFSON:  Aren't there others

24   involved in this issue that are already custodians?

25          MS. SNOW:  There are others involved in

1    the CAP program. ████████████████████████

2    ████████████████████████        █████████████

3    ████████████████████████████████████████████

4    ██████████████████████████████████████

5             JUDGE WOLFSON:  I never understood

6    Erleada to be the driving drug in this whole case.

7             I'm not buying this one.  I have to have

8    some limits.  So I'm not ordering that to be done.

9             Does that take care of all our new

10   custodians?

11            Go ahead.

12            MS. LONG:  I think Mr. Knewitz is still

13   at issue, your Honor.  That was the custodian without

14   any new evidence that we had discussed earlier.  I

15   believe you████████████████████████████████████

16   ████████████████████████████.

17            Mr. Knewitz is essentially a PR

18   professional. ████████████████████████

19   ██████████████      ████████████████████

20            JUDGE WOLFSON:  I'm not adding him.

21            You have the ones we've added, Lade,

22   Penkowski and White, but you're going to confer on

23   search terms, please.

24            MS. SNOW:  Yes.

25            Thank you.

Page 135

1           JUDGE WOLFSON:  Anything else open?

2           MR. SANDICK:  No.

3           Thank you, your Honor.  We really

4   appreciate the evident time you spend reading all of

5   this paper and helping us resolve the issues.

6           Thank you very much.

7           JUDGE WOLFSON:  No problem.

8           MR. DUNLAP:  We greatly appreciate your

9   attention to this.

10          (Proceedings concluded at 1 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 136

```
 1                    C E R T I F I C A T E

 2

 3          I, RUTHANNE UNGERLEIDER, a Certified Court

 4     Reporter and Notary Public of the State of New

 5     Jersey, certify that the foregoing is a true and

 6     accurate transcript of the stenographic notes of the

 7     deposition of said witness who was first duly sworn

 8     by me, on the date and place hereinbefore set forth.

 9          I FURTHER CERTIFY that I am neither

10     attorney, nor counsel for, nor related to or

11     employed by, any of the parties to the action in

12     which this deposition was taken, and further that I

13     am not a relative or employee of any attorney or

14     counsel in this case, nor am I financially

15     interested in this case.

16

17

18

19

20

       RUTHANNE UNGERLEIDER, C.C.R., C.R.R.

21     LICENSE NO. XIO1634, XIO0115

22

23

24

25
```

| & | | | a |
|---|---|---|---|
| **&** 1:4 2:4,8,12 2:19 36:20 60:12,21,23 69:25 71:3 72:15 74:3 75:6 76:8 79:22 80:2 89:18 96:21 98:21,25 99:3 102:22 103:12 114:14 | **1290** 2:15 **14** 88:11 **146** 112:21 **15** 13:3 **150,000** 40:23 **16** 52:17 **165** 127:10 **17** 108:12 **180,000** 40:22 **188,000** 40:13 | 30:22 34:14 38:24 42:1 43:23 56:1 57:8 103:2,14 103:22 104:9 104:22 105:21 105:24 106:1 106:11,16 118:14 **2023** 5:3,18 24:24 | **aba** 23:9 **able** 20:21 72:16 77:12 78:6,16 89:22 89:24 96:13 98:22 99:15 132:25 **above** 1:13 **absence** 73:9 |
| **0** | **2** | **2024** 1:19 | **absent** 74:10 87:25 |
| **07102** 2:10 | **2** 119:5 121:13 **20** 16:14 25:20 120:9 | **20th** 2:19 **22-2632** 1:3 **24** 1:18 | **absolutely** 36:13 72:5 79:8 123:8 |
| **1** | **20,000** 121:3 **200** 119:7 | **27** 112:20 **28** 67:11 | **absorb** 73:11 **accessibility** 12:25 |
| **1** 4:25 8:13 135:10 **10017** 2:20 **10036** 2:5 **101** 2:12 **10104** 2:16 **10178** 2:13 **10:00** 1:19 **11** 130:12,18,20 **1133** 2:4 **114** 67:21 **11883** 136:20 **119** 128:2 **12** 101:13 111:19 112:23 126:25 **120** 128:2 **1200** 4:22 | 125:12,18 **2009** 5:22 8:13 59:9 **2013** 10:12 12:8 14:24 **2016** 4:25 5:18 9:21,22 10:1 19:21 25:9 34:14 38:24 103:4 104:9 106:4,16 110:2 **2017** 130:11 **2020** 107:4 **2021** 106:3,9,20 108:19 **2022** 4:25 19:21 24:16,23 26:18 27:8,13 27:22 28:2 | 28th 2:12 **29** 67:11 **3** **30** 67:11 104:7 **349** 69:2 87:17 87:21 **6** **6** 129:20,25 **6,000** 121:3 **666** 2:19 **7** **7** 24:24 43:17 101:14 104:3 **8** **80** 93:19 94:16 94:18,21 | **accredo** 90:22 90:22 **accumulator** 9:19 10:18 26:12 29:2 30:12,21 108:4 108:5 129:7 130:7 131:13 131:15 **accumulators** 57:23 106:21 107:4 132:22 **accurate** 84:23 136:6 **accusations** 98:11 |

| | | | |
|---|---|---|---|
| **act** 65:22,25 66:2,7 | **adding** 99:14 102:24 131:24 134:20 | **adjustment** 26:16 106:23 130:7 131:14 131:16 | **age** 20:12,22 |
| **acting** 44:12 81:15 | **additional** 5:14 5:19 6:9 23:1 | **administering** 75:16 | **aggressively** 39:16,21 |
| **action** 1:3 84:1 136:11 | 34:21 44:7 52:7 70:25 | **administers** 77:2 118:25 | **ago** 3:4 10:13 23:16 31:6 37:5,17 90:5 94:3 |
| **actions** 78:14 | 71:1 77:10,14 78:16,18 82:14 | **administrative** 60:24 68:24 | **agree** 10:15 11:4,4 13:13 14:23 18:9 35:10 41:17 43:21 97:14,16 126:23 |
| **acts** 65:20 66:8 | 84:8,9 86:23 | **admission** 29:13 | |
| **actual** 19:18 54:6 59:3 89:11 120:1 121:20 | 87:3 107:5,21 107:23 109:2 109:25 111:17 116:21 117:14 127:3 132:18 | **advanced** 73:2 **advantage** 52:7 **adversaries** 11:17 | **agreed** 4:25 6:4 21:11 55:24 59:4 104:7 107:7,24,24 109:10,25 110:4 113:1 114:5 |
| **actually** 17:9 18:2 20:15,17 21:3 22:20 31:16 39:18 47:2 60:10 61:8,10 75:5 76:23 78:11 83:25 84:13 89:6,16 90:10 92:1 96:11 99:11 102:3 103:13 107:8 110:15 112:4 117:21 118:25 119:3,5 120:19 125:24 126:9 129:20 | **additionally** 103:17 **address** 3:5 26:5,8 27:25 51:6,14 55:16 55:17 67:5 89:2 103:20 117:18 **addressed** 21:20 34:18 126:5 **addressing** 55:15 118:21 **adequately** 67:5 | **adversary** 127:20 128:18 132:13 **advice** 45:21,21 47:21,22 50:23 **advised** 24:18 56:14 **advisor** 47:17 **affected** 91:5 **affiliate** 74:24 **affirmative** 18:1 **affirmatively** 100:5 | **agreement** 101:17 108:8 **agreements** 38:18 **agrees** 4:2 66:17 102:21 **ahead** 32:2 34:5 41:18 81:14 89:4 130:21 134:11 |
| **add** 6:8,11,18 **added** 42:17 44:6,18 45:10 109:15 112:2 134:21 | **adhere** 80:4 **adherence** 80:14,18,22 81:3,5 98:5,6 | **afford** 73:11 78:12,21 **afield** 83:12 **afoul** 20:18 | **allegation** 70:15 92:1 94:13,16,18,21 98:15 |

| | | | |
|---|---|---|---|
| **allegations** 67:18,19,21 78:22 90:3 97:24 | 125:18 **amounts** 61:13 63:16 **analyses** 81:21 | **appears** 19:5 20:2 121:15,15 **apples** 40:20,20 **application** | **argued** 42:5 **argues** 5:23 **arguing** 131:21 **argument** |
| **allege** 60:3 62:3 66:9,10,23 89:5 98:13 | **analysis** 79:22 80:3 81:17 82:18,21 84:20 85:15,18 87:1 | 28:24 **applied** 21:4 28:25 **applies** 36:5 | 17:13 20:13 24:4 35:15 37:23 38:5 39:19 42:7,13 |
| **alleged** 64:4 65:6 66:8 | 87:2 **analyze** 77:4 | 51:19 **apply** 36:6 | 54:5 64:11 66:16 72:14 |
| **allegedly** 65:14 116:19 | **analyzed** 62:2 **andrew** 2:16 | 117:5 **appreciate** 33:8 | 73:5 75:1 78:20 84:12 |
| **alleges** 119:13 **alleging** 18:17 | 14:22 **answer** 7:8 | 35:15 37:23 38:1 79:4 | 87:24 92:25 93:11,15 |
| 60:2 68:13 79:17 94:7 95:16 | 11:2,9 15:9 29:12 62:10 85:25 88:19 | 135:4,8 **appropriate** 12:13 26:1 | 101:10 109:9 113:9 125:2 131:16 |
| **allow** 129:12 133:1 | 105:12 **answered** 63:5 | 45:3 126:3 130:8 132:10 | **arguments** 6:1 28:6 38:1 |
| **allowed** 13:14 67:19 83:19 98:1 103:15 | **answers** 13:18 82:9 92:15 **anticipation** | **approximately** 1:19 4:22 24:22 | 62:17 75:17 96:9 **arrange** 76:25 |
| **allows** 98:25 **amazing** 71:18 | 50:5 **anyone's** | **april** 4:25 **archbow** 49:4 | **arrow** 2:7 127:25 |
| 71:19 **ambiguous** | 123:25 **anyway** 57:22 | 49:12 116:5,10 132:20 | **aside** 95:14 96:19 |
| 36:8 113:3 **america** 119:18 | 61:9 75:24 **apex** 117:6,7 | **area** 23:8 55:3 63:24 122:6 | **asked** 6:7 7:3 8:9,12 37:21 |
| **american** 123:6 **americans** 81:2 | 126:11 127:19 **apologies** 116:8 | **areas** 23:9 31:22 41:19 | 40:17 41:2 42:8 44:8 |
| **americas** 2:4 2:15 120:5 | **apparently** 49:18 119:17 | 64:1 123:7 **argue** 13:12 | 55:25 56:16 81:8 85:14,22 |
| **amount** 74:10 76:10,11 77:17 119:14,22 121:2,4,23 | **appear** 39:10 **appeared** 109:5 | 16:18 20:5 91:5 92:18 93:13 96:5 | 90:11 92:5 102:19 108:21 110:19 |

| | | | |
|---|---|---|---|
| **asking** 7:20,22 | **attention** 13:5 | 23:15 27:15,18 | **beat** 29:14 |
| 21:12 22:6 | 135:9 | 29:14 35:13 | **began** 8:18,19 |
| 29:19 35:5 | **attorney** 44:12 | 37:1,24 38:10 | 24:16 27:12 |
| 44:10 55:1 | 48:4,5,6,6 | 39:6,19,20 | **beginning** |
| 56:13 59:8 | 136:10,13 | 40:12 41:9,16 | 24:23 27:13 |
| 61:18 81:16 | **attorneys** 2:7 | 42:22 47:5 | 74:20 |
| 82:16 86:3 | 2:11,14,18,21 | 50:16 51:3 | **behalf** 70:21 |
| 88:7,9 93:6 | 42:17 44:4,11 | 59:9 87:13 | 71:2 78:10 |
| **asks** 29:11 56:5 | 45:13,14 54:9 | 88:15 89:18 | **belabor** 67:15 |
| **aspect** 15:22 | 110:4 | 96:13 100:9 | **belief** 66:18 |
| 69:9 | **august** 21:10 | 101:24 102:9 | **believe** 8:24 |
| **aspects** 119:3 | 43:20 103:4 | 104:11,15 | 11:5 13:1 |
| 134:3 | **authored** 131:7 | 105:10 106:15 | 16:19 18:2 |
| **assert** 13:15 | **authoring** | 107:2 108:18 | 21:3 25:21 |
| **asserting** 4:1 | 131:8 | 110:2 125:9 | 27:23 31:5,6 |
| **assertion** 46:14 | **authority** | **backup** 89:15 | 31:12 33:12 |
| 47:23 | 121:18,20 | **backwards** | 34:17 36:17,21 |
| **assistance** | 125:12 | 38:9 | 36:24 51:18 |
| 19:12 59:1 | **availability** | **badly** 69:5 | 56:18 57:6,8 |
| 63:4,16 67:25 | 5:13 11:10 | **bag** 68:22 | 57:12 65:11,18 |
| 70:17 71:25 | **available** 89:9 | **base** 89:13 | 67:10 70:24 |
| 95:23 121:2,4 | 91:16 121:2 | **based** 5:14 | 75:24 76:17 |
| **assistant** | **avenue** 2:4,12 | 17:17 41:12 | 91:25 103:11 |
| 121:16 125:14 | 2:15,19 | 52:1 54:5 | 106:25 107:20 |
| **associate** 101:9 | **avoid** 104:10 | 82:10 100:25 | 109:4 112:18 |
| **association** | **aw** 85:5 | 105:8 113:5,8 | 116:13,18 |
| 102:25 | **aware** 122:23 | **basically** 71:14 | 122:21 130:4 |
| **assume** 14:9,17 | **awareness** | 111:19 | 134:15 |
| 125:11,15,16 | 55:12 | **basing** 98:16 | **belknap** 2:4 |
| 127:23 | **b** | **basis** 57:14 | **benefit** 23:6 |
| **assuming** 44:9 | **b** 2:1 132:21 | 59:14 67:17 | 25:15 48:18 |
| 44:14 79:4 | **baby** 77:18 | **bear** 5:8 58:18 | 59:24 71:17 |
| 113:6 | **back** 5:22 9:20 | **bearing** 83:19 | 74:1 82:21 |
| **attaching** | 11:5 12:4,24 | 83:24 | 99:12 117:15 |
| 122:12 | 13:3 22:16 | | |

[benefits - cap]

Page 5

| benefits 21:14 | breached 66:6 | budgeting | c |
|---|---|---|---|
| 23:14 24:8,13 | breaches 65:15 | 61:14 | |
| 24:17,21 25:8 | break 4:13 | budgets 59:3 | c 2:3 132:21 |
| 26:3 28:21,22 | 69:19 99:20,25 | 59:10 61:16,16 | 136:1,1 |
| 29:4 30:10 | brief 4:12 | 62:25 | c.c.r. 136:20 |
| 32:4 56:5,11 | 99:23 110:14 | bunch 88:10 | c.r.r. 136:20 |
| 56:21 81:1 | 113:14,15 | 95:22 | cabined 28:13 |
| 98:6 104:20 | 121:12 | burden 12:6,25 | 38:15 105:3 |
| benevolent | briefed 55:14 | 13:10,12,14 | 108:16 |
| 65:4 | 101:8 | 15:11,22,23,25 | calendar 115:3 |
| best 26:20 | briefing 19:4 | 23:4 31:15 | 116:12,13 |
| better 33:14 | 112:21 | 32:11 35:4,7 | 122:12,15 |
| 41:5,14 64:13 | briefly 7:19 | 48:3 50:10 | calender |
| beyond 22:11 | 48:23 89:3 | 54:5 59:24 | 113:22 |
| 22:19 31:8 | bring 13:4 | 73:15,25 | call 17:6 24:8 |
| 56:23 87:22 | 20:14 35:11 | burdenness | 64:5 84:2 89:8 |
| big 13:11,12 | 43:6 60:1 | 13:9 | called 21:13 |
| 36:2,2 75:21 | 120:21 | burdensome | 26:14 29:1 |
| bigger 94:5 | bringing 66:3 | 12:7,9 40:15 | 49:4 114:1 |
| binding 29:12 | broad 8:4 | business 42:25 | 129:17 133:7 |
| 119:6 | 10:23 22:19 | 44:5,13,20,21 | camara 42:16 |
| bit 71:11 | 28:14 35:10 | 44:22 45:1,5 | 54:10 |
| blasine 111:15 | 63:25 67:11 | 45:23 46:22 | camera 43:3 |
| 116:8 | 79:15 | 47:15,16,18,19 | camouflage |
| blow 23:2 | broaden 63:12 | 48:7,12,20 | 27:5 |
| blowback | broader 16:20 | 50:17,20,21,24 | cap 7:14 26:14 |
| 133:12 | broadly 69:17 | 51:2 52:5,9,17 | 26:16 43:10,14 |
| borne 99:9 | 75:1 76:8 | 60:16,17 68:25 | 101:19,22 |
| bottom 8:10 | brought 20:25 | 76:25 82:25 | 103:1,5,13 |
| 64:9,10 130:4 | 111:12,14 | 83:14 85:11,20 | 104:8,13,19 |
| bought 71:1 | 114:18 118:23 | 90:21,24 98:3 | 106:9,18,19 |
| brand 129:18 | budget 59:2,12 | buy 60:12 78:9 | 107:7,14,23,25 |
| 130:6,9 | 59:15,20 60:20 | buying 12:9 | 108:10,16,17 |
| breach 62:8 | 61:1,2,7,7 64:7 | 75:18 99:8 | 108:23 109:5 |
| 74:6 83:7 | 70:1 | 134:7 | 109:14,16,22 |
| | | | 111:1 116:21 |

120:24 121:23
122:14 126:25
127:1,2 132:22
133:7,10,12,14
133:16 134:1,2
**capacity**  44:22
**capture**  37:3
38:16 40:4
44:2 47:11
107:8 110:24
124:1
**captured**
107:15 122:8
122:11 123:22
**capturing**
46:23,24
**car**  83:2,3
84:15,16,17
**card**  21:13 22:2
25:15 36:16,18
46:20,24 47:1
47:4,5,6 49:3
49:12 51:8
56:10 116:1
118:21,23,25
119:6 125:19
**care**  1:4 134:9
**careful**  131:13
**carepath**  3:18
10:1,8,18 42:4
50:16 60:5,8
60:10 61:1,14
62:8 64:4
66:19 67:25
69:11,13,20,23

69:25 70:9,16
70:23,25 71:25
72:15 73:2,8
73:10 74:24
75:3 76:3,22
76:23 77:2,9
77:15 78:17,18
79:5,10,13,23
80:3,5 81:23
82:2,4,13,20,21
82:24 83:10,17
84:1,3,10
87:23 89:23
92:12 93:2,16
94:5 95:23
98:24,24 99:15
114:12,16,23
115:9,18,19
119:1,10 121:7
121:21 123:9
123:12 132:25
133:13 134:4
**carepath's**  6:22
118:12,18
120:14
**cars**  83:5
**case**  3:6 8:1
12:14 13:11,12
18:2,11 22:21
25:9 28:23
29:8 30:13
35:24 36:2
45:1 48:9 52:6
59:24 60:14
64:17 68:14

69:2 73:7,7
74:20,21 75:15
75:20 76:5,7,7
80:13 82:25
83:11,20 85:7
85:12 87:14
88:8 90:7 91:1
92:12,25 95:6
95:8 96:7,9,13
97:6,6,17
110:6 114:4
116:16 132:1
134:6 136:14
136:15
**cases**  45:6
**categories**
33:16 40:1,12
41:12
**category**  3:25
27:13 46:3
116:3
**caught**  56:1
**cause**  65:25
66:3 95:16
96:2
**caused**  58:19
60:2 84:9,9
94:7
**causes**  67:22
70:16 78:14
**causing**  74:8
**center**  2:9
**central**  95:6
**certain**  20:12
33:23 40:14

59:18 116:1
117:13 118:2
119:22
**certainly**  4:16
25:24 64:12
66:25 88:15
106:4,7 109:7
118:1 124:1
125:23
**certified**  1:15
136:3
**certify**  136:5,9
**cetera**  4:20
10:25 19:6
20:12,23 76:20
101:14 113:23
**chairman**
119:18
**challenged**
69:12
**chambers**
102:4
**change**  104:20
120:25 121:1,4
**changed**  93:17
**changes**  14:25
43:13 90:18
121:22,23
133:13
**charge**  91:1,3
**charitable**  61:3
82:24
**children**  18:14
**circumstantial**
21:2

| | | | |
|---|---|---|---|
| **cite** 89:7 | **closely** 130:7 | **communicated** | 123:8 129:3 |
| **cited** 65:12 | **coherent** 13:2 | 102:4,6 122:17 | **company's** |
| 115:2,22 | **cole** 2:19 | **communication** | 29:20 87:20 |
| **cites** 93:23 | **collecting** | 44:25 47:10,25 | 95:11 |
| 115:1 | 46:16 | 51:17,25 61:19 | **compare** 87:1 |
| **citing** 133:5 | **collects** 90:23 | 72:7 | **comparison** |
| **civil** 1:3 | **colon** 68:22 | **communicati...** | 31:10 40:20 |
| **claim** 36:3 60:1 | **colostomy** | 45:5,23 46:20 | **compel** 111:19 |
| 65:17 67:13 | 68:22 | 46:21 47:12,15 | **competitors** |
| 84:18 87:17 | **come** 10:19 | 49:2,10,25 | 60:13 71:13 |
| **claiming** | 12:24 16:1 | 50:12 51:14,23 | 78:9 90:1 |
| 111:22 117:1 | 33:14 39:22 | 52:3 53:7,10 | **complaining** |
| **claims** 62:5 | 40:2 41:5 | 53:16 54:14,24 | 17:7 |
| **clarify** 34:11 | 44:23 60:20 | 59:10,12,22 | **complaint** |
| 65:16 68:12 | 68:17 69:13 | 62:22,25 63:19 | 18:20 60:6 |
| 104:1 121:19 | 88:15 95:21,22 | 64:6,12,14 | 66:11 67:17,22 |
| **clarifying** 34:4 | 96:13 111:7 | 70:2 80:6 | 78:23 83:12 |
| **clause** 19:9 | 117:20 122:5 | 115:15 116:11 | 89:6 93:20 |
| 20:2 34:25 | 122:23 | 124:7 134:19 | 97:1,3,3 |
| 36:10 | **comes** 35:4 | **companies** 13:2 | **complete** 45:8 |
| **clear** 18:4 | 38:14 78:2 | 13:12 71:9 | **completely** |
| 96:16 97:18 | 115:25 117:7 | 75:7 77:6 | 30:13 |
| 107:2 108:9 | 133:3 | 87:16 88:3 | **complicated** |
| 112:19 132:5 | **commencing** | 95:9 97:25 | 73:21 |
| **clearly** 128:5 | 1:19 | 98:7,8 114:15 | **complied** 41:1 |
| **clerk** 102:8 | **commercial** | **company** 9:23 | **components** |
| **client** 14:25 | 17:10 71:14 | 21:13 45:20 | 63:20 |
| 72:17 | **commit** 98:23 | 46:6 48:21 | **comprised** |
| **client's** 9:9 | **commitment** | 50:2,3,17 | 130:5 |
| **clients** 70:22 | 98:18 | 63:20,21 73:13 | **compromise** |
| 71:3 | **common** 48:5 | 73:18,22 74:3 | 104:5,6 105:19 |
| **close** 42:25 | **commonly** 95:8 | 75:21 76:1 | **computer** |
| 97:10 | **communicate** | 79:11 80:8,9 | 48:14 |
| **closed** 128:4 | 53:20 | 81:2,18 90:17 | **concede** 121:17 |
| | | 119:18 121:7 | |

conceded 35:18
conceivable 18:10
conceptualize 123:3
concern 14:12 27:25 32:8 49:9 117:6
concerned 133:11
concerning 113:23
concerns 125:23
concessions 21:19
concluded 98:5 135:10
conclusion 28:2
condition 7:25 21:23
conditions 3:13 3:19,22 4:24 5:12,15,25 7:22,24 9:22 16:22 17:3,12 18:9 19:19 20:3,22 21:6 23:4 26:11,25 29:21 36:23 37:25 38:10 42:2,6,10 43:9 43:14 54:20,25 57:11 58:5 62:8 74:6 83:7

118:12,18 120:15 121:1
conduct 6:7 93:18
conducted 24:22 47:19 56:11
conducting 24:17
confer 3:10 14:5,10,18 15:12,19 31:2 32:16,19 39:4 41:10,15 54:17 100:25 103:11 104:3,12,25 111:8 128:18 134:22
conference 3:4 24:15 43:11 100:13 104:7 112:10 114:20 127:8
conferences 3:6
conferred 16:12 58:12 112:25
conferring 34:22 37:2
confers 104:16
congressional 71:8 77:5
connection 3:2 6:3

connects 58:6
consequences 77:23 78:13 98:25
consider 104:12,17
considered 106:21 114:7 125:3
considering 102:20 104:4 120:13
consistent 9:8 15:4 104:25 114:9 115:21 127:6
consistently 93:22 114:20 117:11 131:14
conspiracy 79:16,18
constantly 31:1
construction 36:9
consultant 49:4
consultants 49:13
consumer 23:9 23:10 65:22 69:3,4
consumers 62:4 69:4
contact 68:17
contemplated 20:15

content 122:13
contention 7:4
context 4:5 9:18 19:13 20:4 29:1 35:6 36:22 48:5 52:16 117:8 125:5 126:18
continue 5:2 34:22 37:1 98:21
continues 89:19,19
contract 18:17 50:15,22 65:15 66:6 125:13
contractual 18:23 20:4
contradicts 37:16
conveying 45:20
convince 13:7
convinced 26:2
convincing 100:24
copied 47:20,25 52:4 53:21
copies 56:11
copy 15:17 50:18 118:3 129:22 130:13
core 110:10
corner 73:22 82:17 85:10

**corners** 81:18
**corporate**
75:14
**correct** 16:9
26:8 54:10
110:4
**correctly** 19:7
**corresponden...**
7:11 57:13
81:9 102:9
104:24
**cost** 48:17 89:6
89:10 99:9
106:22 133:1
**costs** 70:18,19
80:10,11 99:4
**counsel** 2:23
15:17 25:16
103:12 121:19
124:9 125:14
136:10,14
**count** 22:4
**counter** 119:5
**counteroffer**
25:21
**counterpart**
50:17
**counterparty**
116:1
**counting** 17:8
**country** 68:17
**couple** 3:8 9:4
19:1 23:16
28:20 49:1
73:19 88:1

101:12 122:10
125:23
**coupon** 4:1
18:2 19:6,10
22:2,13 25:15
32:10 34:16,25
35:23 36:16,17
36:20 37:7
**coupons** 10:25
17:21 23:21
39:17
**course** 15:17
21:2 43:6
49:25 59:3
77:3 84:11
91:14 92:2
108:4
**court** 1:1,15
5:1 32:22 36:7
66:17,20 67:16
69:3 80:20
99:21 127:11
127:23 136:3
**court's** 52:18
65:12
**cover** 7:10 8:4
29:7
**covered** 8:6
20:16
**covering**
107:25 109:11
**create** 33:15
35:8 40:3
68:25 81:16

**created** 9:21
64:25 79:6
**creates** 59:24
**creating** 10:23
45:16
**criteria** 20:20
25:14 28:4,12
31:8,16 34:12
39:11
**critical** 12:21
72:5,8 85:6
133:18,19
**critiquing**
42:20
**crucial** 14:24
133:15
**crux** 12:14 31:5
**cry** 75:21
**cumbersome**
12:4
**cummis** 2:8,12
**cumulative**
109:12,13
117:9
**curious** 74:18
**current** 9:25
130:24
**custodial** 47:2
**custodian** 6:4
46:2,6 102:18
105:13 114:4
115:3 116:16
128:21 130:24
131:3,10
134:13

**custodian's**
6:17
**custodians** 3:14
6:11 33:22
40:22 42:15
44:4,18,25
45:10 51:1
52:6,17 53:21
54:4 55:20
61:23 101:8,14
101:15 102:25
103:3,5 104:13
107:1 108:10
108:12,25
109:2,11,22,23
109:24 111:12
111:18,25
112:5,9,11,23
113:11,16
116:21 117:6
117:15 126:7
126:11 127:1,1
127:3,4,10
130:16 133:24
134:10
**customer** 130:6
**customers**
85:17
**cutoff** 24:24
**cuts** 16:14

**d**

**d** 129:15 133:8
**damage** 67:22
76:12 84:8

[damaged - develops]                                              Page 10

| | | | |
|---|---|---|---|
| **damaged** 83:25 | **dealing** 3:18 | **decreased** | **depositions** |
| **damages** 63:22 | 5:4 76:15 | 93:22 | 117:8 124:13 |
| 70:12,14,20 | **dealt** 125:22,25 | **decreasing** | **deprived** 68:19 |
| 71:23 72:2,9 | **deceived** 66:18 | 100:5 | 68:23 |
| 79:25 93:9,16 | **deception** | **deductibles** | **described** |
| 96:2,5,7 97:7 | 66:15 98:9 | 10:5 | 10:25 |
| 99:14,18 | **deceptions** 62:4 | **defendant** 1:9 | **describing** |
| 133:22 | **deceptive** 65:23 | 2:18,21 6:6 | 52:15 |
| **darn** 15:23 | 66:7,8 | 42:4 66:18 | **description** |
| **darzalex** 79:12 | **decide** 44:11 | 102:17 | 58:23 |
| **data** 59:2,20 | 133:9 | **defendant's** | **deshaies** |
| 63:1,14 72:6 | **decided** 20:14 | 66:16,20 | 111:15 112:13 |
| 76:20 79:23 | 39:14 57:20,21 | **defendants** 9:7 | 132:15 133:3 |
| 80:25 88:24 | 75:10 76:25 | **defense** 15:17 | **designated** |
| 89:11 90:12,15 | 77:15 109:13 | 133:20 | 114:4 |
| 96:10 98:4,15 | 112:11,19 | **defenses** 28:7 | **designed** 6:9 |
| **date** 24:24 27:9 | 124:25 | 72:9 | 37:3 60:11 |
| 27:14 105:22 | **decides** 70:1 | **deficient** 42:14 | 99:12 |
| 108:19,20,24 | **decision** 18:19 | **define** 33:22 | **despite** 72:16 |
| 118:6 136:8 | 42:9 119:21,25 | 35:16 64:2 | **detailed** 7:5 |
| **dates** 27:18 | 120:1 134:2 | **defined** 41:19 | **determination** |
| 63:15 105:20 | **decisions** 63:7 | 54:14 74:22 | 64:23 65:3 |
| **day** 25:4 42:25 | 63:9 75:13 | **definition** | 119:8 |
| 72:20 103:25 | 114:12 115:18 | 23:17 | **determine** |
| 114:16,16,22 | 120:12,20 | **definitively** | 11:17,17 24:18 |
| 114:23 115:7,7 | 121:6,20,25 | 128:4 | 36:14 112:7 |
| 120:21,22 | 123:22 | **delta** 76:11 | **determined** |
| **days** 40:2 | **deck** 122:22 | **demonstrates** | 63:4 |
| **de** 42:16 53:23 | **decks** 115:22 | 103:18 | **determining** |
| 54:10 | 122:2,16 124:8 | **depending** | 19:12 46:3 |
| **deal** 3:16 10:14 | **declined** 25:1 | 46:13 88:15 | 61:23 133:6 |
| 105:17 126:11 | 93:25 104:18 | **depose** 117:14 | **development** |
| **dealership** 83:2 | **declining** 56:3 | 124:2 127:24 | 82:6 |
| 83:4 84:15,17 | 56:18 | **deposition** | **develops** 77:1 |
| | | 136:7,12 | |

[device - documents]                                        Page 11

| | | | |
|---|---|---|---|
| **device** 7:7 | **discourse** 95:9 | **dismissal** 12:19 | 5:7,14,19,21 |
| **different** 5:10 | **discoverable** | **dispute** 4:16 | 6:7,10,14,17 |
| 10:6 30:18 | 3:20 | 43:22 84:24 | 7:21 11:11 |
| 38:8 80:10 | **discovery** 3:12 | 102:12,21 | 12:1 15:2,5 |
| 94:3 113:9 | 3:17 4:18 5:1,3 | 104:10 | 16:5,14,20 |
| 116:11 123:7 | 7:3,6,11 9:3 | **disputes** 3:3,17 | 17:18 19:18,22 |
| **differently** | 12:17,21 29:15 | 101:13 | 21:15 22:6,10 |
| 84:12 | 29:17 38:7 | **disputing** | 22:14 23:13 |
| **differing** | 54:21 62:14 | 120:22,23 | 24:7 25:2,12 |
| 102:14 | 67:20 68:3,16 | **district** 1:1,2 | 26:10 27:4 |
| **dig** 26:20 | 69:15,22 81:9 | **division** 60:21 | 29:6,24 30:6 |
| **digital** 15:4 | 103:8,15 | **docket** 127:10 | 30:14,24 31:7 |
| **diligently** 24:1 | 106:25 114:6 | **doctrine** 19:7 | 31:12,18 32:13 |
| **direct** 15:10 | 132:2 | 36:12 50:1 | 33:13 38:19,22 |
| 78:13 109:1 | **discuss** 29:25 | 117:7 127:19 | 38:23,25 39:15 |
| **directed** 5:2 | 31:4 33:9 49:6 | **document** 7:20 | 40:14 41:6 |
| **directing** | 127:18 | 8:3 10:11 | 42:9,23 43:2 |
| 100:20 | **discussed** 11:8 | 11:21 23:5 | 43:12,13,14 |
| **directly** 21:12 | 56:6 134:14 | 27:9 30:3 32:1 | 44:15,23 45:2 |
| 78:22 | **discussing** | 32:2 33:9,19 | 45:7,15 46:10 |
| **disagree** | 119:12 | 51:11 52:14 | 47:2,3,6,24 |
| 126:18 | **discussion** 32:7 | 56:7 57:15 | 48:12,13 49:1 |
| **disagreed** | 50:5 105:8 | 59:1,5 84:25 | 51:12 52:8 |
| 67:16 | 118:17 122:22 | 85:24 86:2 | 53:22 54:2 |
| **disagreement** | 122:25 123:24 | 89:9 116:6,20 | 56:15,21 57:7 |
| 43:2 | **discussions** | 116:25 118:9 | 57:9,18,25 |
| **disagrees** 66:20 | 33:11 49:14 | 118:13,15 | 58:15,18,22 |
| **disburses** 119:1 | 50:19,20 106:1 | 121:15,16 | 59:9,11,17 |
| **discount** 22:2 | 106:3,4,7 | 122:19 125:16 | 60:19 61:13,14 |
| 23:10 25:15 | 108:24 115:9 | 131:12,17 | 61:17 62:20 |
| 32:10 33:9 | 122:2 124:3,4 | 132:18 | 63:4 69:11 |
| 34:16,25 35:6 | 124:20,21 | **documented** | 70:11 72:4 |
| 35:24 36:16,18 | 125:7 | 71:7 | 73:6 76:18,19 |
| 37:7 | **dismiss** 19:4 | **documents** | 77:8 79:5,21 |
| | 67:17 | 3:18 4:22,24 | 80:16,19 82:12 |

[documents - e]                                                    Page 12

| | | | |
|---|---|---|---|
| 82:17 84:13 | **door** 108:17 | 98:7,8,12,22 | 37:20 40:6 |
| 85:1,15 86:10 | 128:4 | 99:1,13 100:3 | 41:22 43:4,21 |
| 86:22,25 87:5 | **doors** 127:2 | 101:2 133:7,17 | 44:16,19 48:22 |
| 100:11,16 | **doubt** 4:15 | 134:6 | 48:25 49:20 |
| 107:8,13 108:4 | **draft** 88:8 | **drugs** 10:5 | 50:8 51:4 53:2 |
| 111:4,23 113:6 | **drafted** 8:1,4 | 18:15 24:19,25 | 53:5,11 54:11 |
| 113:8,13,13,14 | **drafting** 3:21 | 25:11 42:7,10 | 54:16 55:5,11 |
| 113:21 114:9 | 6:8,10,12 7:21 | 60:12,13 63:16 | 55:18 57:4 |
| 114:24 115:1,6 | 7:24 | 64:16 68:24 | 58:11 60:1 |
| 115:13,22 | **dramatically** | 69:18 70:23 | 65:8,11 67:14 |
| 116:4 117:19 | 32:11 | 71:2,12,13 | 69:24 70:10 |
| 117:21,23 | **drawn** 6:23 | 73:11,24 75:8 | 72:22 75:17 |
| 118:20 120:2 | **drive** 1:17 | 78:2,9 80:5,10 | 76:16 77:21 |
| 120:11,19 | 77:10 78:16 | 80:11,11 82:2 | 79:17,21 80:2 |
| 123:1,23 124:8 | 81:24 | 82:7,14 85:16 | 81:12,15 82:7 |
| 124:13,16 | **driven** 94:8 | 85:17 86:11 | 82:11 83:21,24 |
| 125:2,5,6 | **driving** 22:3 | 87:18,19,20 | 85:5,11 86:13 |
| 127:21 129:4 | 79:25 134:6 | 88:7,8,10,11,12 | 86:15,20 88:6 |
| 130:14 131:9 | **drop** 50:20 | 89:1,7,11,25 | 88:17,23 89:2 |
| 131:24 133:11 | **dropped** 49:16 | 90:1,6,23 93:3 | 89:5 91:11,13 |
| **doing** 4:19 | **drops** 89:13 | 93:22 98:23 | 91:24 92:24 |
| 13:15 18:7 | **drug** 71:4,4,8 | 99:8 121:5 | 93:4,19 94:12 |
| 21:6 31:3 | 72:1 73:18,18 | 123:6 | 95:18 96:1,17 |
| 39:22 44:21,22 | 73:23 76:24 | **due** 93:13 96:6 | 97:1,18 98:10 |
| 45:15 46:1,15 | 77:1,6 78:16 | **duly** 136:7 | 98:19 99:24 |
| 46:23 47:10,16 | 79:12 83:14 | **dunlap** 2:16 | 100:2 101:2,5 |
| 47:18 48:7,20 | 84:6,6 88:3 | 6:25 7:16,19 | 101:9 135:8 |
| 50:4 51:2 52:6 | 89:16,17,23 | 8:14,17 14:9 | **duplicative** |
| 60:15 61:8 | 90:14,24 91:5 | 14:12,17 16:10 | 128:25 |
| 65:4 71:2 | 91:7,8 92:20 | 16:19 17:1,25 | **dupped** 53:23 |
| 75:24 94:10 | 93:13,21 94:6 | 18:25 19:20 | **dust** 83:15 |
| 109:18 | 94:7,9,14 | 23:16,23 24:11 | **e** |
| **dollar** 13:11 | 95:10,11,16 | 29:10 34:3,6 | **e** 2:1,1,3,3,20 |
| 125:12 | 96:10,14,22 | 34:11 35:25 | 46:7,9,16 |
| | 97:6,20,25 | 36:14 37:4,9 | 47:20,21 48:4 |

| | | | |
|---|---|---|---|
| 49:8 50:6,18 | 50:2 115:2 | **ends** 51:20 | **enrollment** |
| 52:4,5,22,25 | **ejusdem** 19:6 | **enforce** 20:20 | 63:15 |
| 53:6 102:22 | **elements** 65:16 | 20:21,24 31:21 | **enter** 50:15 |
| 122:16,24 | 65:21 | 31:23 39:21 | **entered** 3:7 |
| 123:19,25 | **eligibility** 20:10 | 57:21 65:1 | **entire** 38:2 |
| 124:5,19 129:1 | 20:20 23:23,24 | **enforced** 42:11 | 64:15 72:3 |
| 129:7,9,15,20 | 24:10 25:14 | **enforcement** | 73:22 90:17 |
| 130:19,23,25 | 27:20 28:4,12 | 3:21 5:11,24 | **entities** 60:25 |
| 131:7 132:23 | 30:18 31:8,16 | 6:11,14 16:4 | 74:12 |
| 133:8,8 136:1 | 34:12 39:11 | 16:21 19:18,22 | **entitled** 1:13 |
| 136:1 | **eligible** 18:14 | 20:7 21:9,15 | 31:6 65:1 |
| **earlier** 8:19 | **eliminate** 31:15 | 21:18 25:13,14 | 106:25 |
| 55:24 56:7 | 72:3 | 26:2,11 27:19 | **entitlement** |
| 103:14,16,22 | **eliminates** 72:2 | 28:3,11 29:21 | 55:9 |
| 104:14 105:22 | 84:8 | 31:8 34:7,8,18 | **entity** 5:10 |
| 108:24 134:14 | **elizabeth** 2:17 | 34:24 38:8,11 | 60:24 75:15 |
| **early** 26:18 | **elsberg** 2:15 | 38:12 39:7 | 76:4,23 77:1,2 |
| **ease** 5:11 | **emphasis** | 42:7 57:11,17 | 77:11 82:15 |
| **easy** 12:12 | 123:10 | 57:19,25 | 84:7 |
| **economic** 62:18 | **employ** 16:11 | **enforcing** 16:8 | **entries** 48:16 |
| 65:6 69:12 | **employed** | 21:6 23:18,18 | **entry** 127:10 |
| **effect** 37:5 | 136:11 | 23:19 24:2 | **equivalent** 15:4 |
| 104:22 105:23 | **employee** 46:7 | 28:17 31:20 | **erleada** 133:8 |
| 106:11 | 50:3 130:9 | 33:11 39:10,18 | 133:10 134:2,4 |
| **efficacy** 99:5 | 136:13 | **engage** 32:15 | 134:6 |
| **effort** 15:5 27:2 | **employees** | 32:18 | **ernie** 113:12 |
| 61:3 73:7,25 | 129:18 | **engaged** 30:23 | **escalates** 32:11 |
| **efforts** 27:19 | **employers** 99:9 | 48:19 72:17 | **esi** 108:3 |
| 28:3,11 72:23 | **encompass** | **enlisting** 62:4 | 110:23 |
| 73:8 92:14 | 11:1 108:3 | **enroll** 70:22 | **esi's** 108:5,6 |
| **ei** 56:5 | **encourage** | 80:5 | **esq** 2:5,6,6,7,10 |
| **eight** 6:17 | 26:23 60:11 | **enrolled** 63:15 | 2:13,16,17,17 |
| **either** 5:23 | **ended** 3:11 | 66:19 | 2:20,24 |
| 21:11 26:22 | 131:6 | **enrolling** 62:7 | **essence** 106:18 |
| 41:7 46:12 | | | 106:22 |

**essentially** 7:12 29:5 32:6 50:3 72:15 75:9,20 80:8 90:13 106:24 134:17
**establish** 61:22
**et** 4:19 10:25 19:6 20:12,23 76:20 101:14 113:23
**evans** 2:20
**event** 30:9 98:3 112:7
**events** 43:19
**everybody** 4:2 33:20 129:2 131:25
**everyone's** 43:24
**evidence** 4:16 20:19 21:2 44:4 69:6 99:10 103:18 112:13 114:25 115:23,25 124:4,18 125:6 129:19 130:11 134:14
**evident** 135:4
**exact** 63:8
**exactly** 37:9 76:19
**example** 18:12 20:11 25:13 46:5,19 47:8

50:14 76:6 107:3 113:22 122:14,23 123:11
**exclude** 38:3 121:1
**excluded** 42:3
**exclusions** 24:5
**exclusively** 45:18 68:15
**executive** 114:2 114:11 115:16
**executives** 27:4 114:14 119:20 120:8 122:4 128:24
**exhibit** 119:5 121:13 129:20 129:23 130:11 130:18,23
**exhibits** 112:21
**exist** 9:20 10:2 10:8,9,17 11:15 38:22 85:15 86:10 99:2
**existence** 27:21 72:24
**existent** 48:19
**existing** 8:3 53:21 81:23
**exists** 76:4
**expansion** 29:4
**expenditure** 84:10

**expensive** 68:1
**explain** 12:6 29:25 90:18
**explained** 9:7 14:24
**explaining** 14:13
**explicitly** 92:9
**express** 80:24 80:25 90:22
**extend** 6:13
**extensive** 72:23
**extent** 11:6,25 17:25 26:13,13 36:7 38:22,22 41:17 43:21 45:22 46:10 47:18 50:11 58:19 64:3 100:8 105:10 111:3 121:25 123:23
**external** 45:6 49:25 50:12,19
**extreme** 33:1

**f**

**f** 2:1 136:1
**facing** 65:22,22
**fact** 27:22 61:1 61:2,6 89:12 89:15,24 94:14 98:5,21 99:2 124:19 129:6 131:19 133:4

**factors** 61:7 70:2 91:9
**failed** 32:15
**failing** 62:6 65:13 66:5
**fair** 91:2 125:11
**fairly** 73:7 112:18,19
**fall** 3:25 5:20 35:19,20 106:3
**falls** 4:1 46:3 52:14
**false** 80:18 98:11
**familiar** 36:11
**family** 75:7 114:15
**fang** 2:24 102:8 102:11 105:1
**far** 25:1 27:18 33:1 60:22 83:11,11 95:5
**fault** 95:11,11
**favor** 87:25
**federal** 18:12
**fifth** 94:1
**fight** 132:4
**fighting** 89:18 132:3
**figure** 9:21 13:23 26:20 35:10,22 39:14 63:21 70:20 73:22 76:2

77:8,10 81:19
82:3
**figured** 81:4
**figuring** 27:7
39:25
**file** 14:18,22
**files** 9:9 45:12
45:17 46:10
52:9 73:20
85:19 114:8
115:20 117:1,9
117:13,20
122:3 123:25
**final** 24:21 25:3
**finally** 110:18
**finance** 81:24
130:6
**financial** 3:13
19:11 58:15
60:4,8 61:11
63:24 64:4
67:10 76:12
77:23 89:20
100:8,21
**financially**
136:14
**financials**
76:15 89:14
**find** 4:23 11:25
33:21 68:18
70:5 74:18
80:19 86:25
87:1
**finding** 27:2
129:25

**finds** 36:7
**fine** 14:2,8 68:4
69:8 84:11
128:22
**finely** 132:1
**finished** 100:2
**first** 3:16,17
13:8 19:3 21:9
22:1 26:9
28:21 49:7
54:1 58:2
61:25 66:17
75:3 81:15
90:20 91:24
100:24 102:16
102:16 103:8
113:12 114:17
116:12 117:18
118:11 122:11
124:12 130:4
136:7
**five** 55:22
109:19 112:4,6
**floor** 2:12,19
**focus** 18:18
62:13,16 68:9
**focused** 68:5
**focusing** 22:22
**folks** 49:2,12
53:14 116:9
123:5,22
**follow** 32:1
**followed** 11:19
127:8

**following** 58:18
**footnotes** 89:13
**forcing** 74:7
**forecasted** 59:3
**foreclose**
100:22
**foregoing**
136:5
**forenoon** 1:20
**forget** 115:7
**form** 96:5
**former** 44:21
**forth** 29:14
41:16 47:5
50:16 100:9
101:24 105:10
112:12 126:19
127:9 136:8
**forthcoming**
14:13,24
**forward** 4:9
56:1
**forwarded**
131:3,7
**found** 40:13
116:12
**four** 55:23
109:17 127:17
**frame** 5:20
27:25
**frankly** 12:7
64:16 70:5
84:16 110:13
127:7

**fraud** 69:4
**freda** 2:2
**free** 22:2 32:10
88:15
**friday** 14:7,8
15:10,14,17
42:22,24,25
**friend** 34:8
**front** 58:4
**full** 25:8 128:20
132:7
**function** 49:18
**functional** 50:3
**functioned**
49:18
**functioning**
48:6
**fund** 75:9,9
**fundamental**
70:12,13
**fundamentally**
77:22
**funded** 79:7
**funding** 61:9
92:13,18 93:16
**funds** 60:20
70:17 71:25
75:3 78:18
84:10 119:1
**further** 5:22
100:21 107:2
136:9,12

| g | | | |
|---|---|---|---|
| **ganas** 96:12 | 25:10,12 26:3 | 79:1 81:14,17 | 45:18,20 47:11 |
| **gap** 116:23 | 36:25 54:4 | 89:4,12 90:16 | 47:19 48:1,13 |
| **gather** 54:2 | 69:22 77:9,9 | 90:17 91:18 | 49:5 50:13 |
| **gay** 2:15 | 90:9 105:6 | 92:13 99:13 | 51:25 52:5,7 |
| **gbl** 60:1 65:17 | 110:19 129:22 | 107:2 124:24 | 54:8 56:20 |
| 72:10 84:18 | 130:13,19 | 125:24 130:21 | 57:13 59:8,22 |
| 87:17 | **given** 4:18 8:21 | 134:11 | 61:9 64:8,9,10 |
| **gee** 69:16 | 15:11 31:21 | **goal** 41:5 | 75:24,25 77:9 |
| **general** 6:8,22 | 33:15,24 41:11 | **goes** 12:19 | 79:24 85:10 |
| 16:22 17:3 | 45:13 62:25 | 19:22 22:19 | 86:18 87:13 |
| 31:24 33:15 | 63:1,2,3 | 23:5 27:2 | 91:4 92:5,7,17 |
| 36:23 39:23 | **gives** 38:3 | 34:12 55:11 | 92:23 93:4,12 |
| 40:1 58:23 | **giving** 26:10 | 57:16 61:4 | 94:16,17,20 |
| 60:17 78:20 | 125:15,17,18 | 67:2 70:12 | 95:6,19,19,20 |
| **generally** 21:7 | 126:7 | 71:20,22 73:21 | 95:25 96:4,20 |
| 25:23 28:3,5 | **glad** 25:25 26:5 | 77:22 99:10 | 96:25 97:7,9 |
| 28:11,23 73:3 | 34:22 37:1 | 119:11,12 | 97:10,15,17,19 |
| 73:12 77:17 | 54:16 57:4 | **going** 3:12,15 | 97:21 98:14 |
| 100:8 | 61:23 70:10 | 4:20 8:8,10 | 100:4,9 101:10 |
| **generate** 85:11 | 76:19 78:25 | 9:10 10:7 11:5 | 103:20 106:13 |
| 85:14 | 100:15 | 11:23 12:4,14 | 106:15 109:1 |
| **generated** | **go** 4:10,18 5:21 | 12:17,21 13:3 | 110:19 119:9 |
| 85:12 103:3 | 9:14 22:11 | 13:7,18 14:15 | 120:8,9,24,25 |
| **generating** | 25:13 27:6,15 | 14:22 15:22 | 121:1,3 124:17 |
| 118:17 | 27:18 28:5,17 | 16:1 23:12 | 126:10 127:1,2 |
| **generis** 19:6 | 31:1,20 32:2 | 24:4,7 25:8 | 127:24 128:23 |
| **george** 2:6,23 | 33:20 34:5 | 27:17 29:23 | 129:11 131:21 |
| **getting** 50:11 | 35:13 36:10 | 30:14 31:15 | 134:22 |
| 52:18,19 56:21 | 37:1 39:5,6,18 | 32:1 33:1,14 | **gold** 83:15 |
| 69:15 85:17 | 39:25 41:4 | 35:12,13 37:11 | **good** 16:25 |
| 98:10 126:6 | 43:25 44:15 | 37:24 38:1,10 | 41:25 64:22 |
| 131:23 | 51:3 57:10 | 38:13 39:1,4 | 97:11 98:7 |
| **give** 23:17 24:8 | 61:7,10 62:20 | 39:15,19 41:7 | **gotten** 15:7 |
| 24:21 25:1,6,7 | 62:22 64:10 | 42:21 43:3,15 | 47:23 98:18 |
| | 67:19 70:2 | 43:23,25 45:15 | 110:18 129:9 |

| | | | |
|---|---|---|---|
| **granted** 101:15 | **happen** 37:12 | **harry** 2:5 | **hereinbefore** |
| **granular** | 41:16 75:19 | **hate** 31:2 41:9 | 136:8 |
| 119:21 | 109:1 | **hcs** 21:19 | **hey** 40:15 |
| **great** 27:2,6,6 | **happened** | **head** 126:15 | **hide** 72:24 98:7 |
| 65:5 | 115:15 122:20 | **heads** 131:5 | **hiding** 73:4 |
| **greatly** 75:25 | **happens** 77:13 | **health** 1:4 | 98:8 |
| 135:8 | 122:18 129:3 | 17:12 20:4 | **high** 13:16 |
| **greedy** 97:25 | **happenstance** | 66:22,24 67:1 | 115:9 120:13 |
| **greenbaum** | 131:6 | 71:14 | 128:24 |
| 2:10 4:4 | **happy** 14:21 | **hear** 24:6 25:16 | **higher** 99:17 |
| **grew** 33:18 | 32:16 100:17 | 32:17 37:15 | **highest** 114:14 |
| **gross** 2:8,12 | 108:2,18 111:9 | 79:3 97:2 | 119:19 |
| **grossman** | 128:12 130:13 | 103:9 | **highly** 15:23 |
| 42:16 49:19,20 | **hard** 8:21 | **heard** 34:7 58:3 | 21:1 90:2 |
| **ground** 87:7 | **harm** 58:19 | 77:6 87:24 | 118:20 |
| 124:24 125:24 | 60:2,10,16 | 95:24 110:21 | **historical** 7:5 |
| **group** 119:18 | 62:1,10,14 | **hearing** 5:2,10 | **history** 32:16 |
| 125:21,22 | 64:3,4 65:6,13 | 23:11 | **hit** 22:3 53:24 |
| 129:22 130:5,6 | 66:1,3,9,10,23 | **hearings** 71:8 | **hoffman** 107:3 |
| **guess** 24:4 39:1 | 67:5,18,21 | **heart** 8:1 35:4 | 116:8,17,20 |
| 40:9 42:1,8 | 68:12,14 69:4 | **heavy** 15:23 | **hone** 132:10 |
| 84:21 101:13 | 69:12 71:21 | **heith** 46:7,9 | **honed** 41:13 |
| 102:1 111:14 | 72:10 74:8,23 | **held** 1:16 | 88:13 |
| **guidance** 36:25 | 75:25 76:3,8 | **help** 10:4,4 | **honor** 4:4 6:25 |
| 37:15 41:11 | 76:12 87:17,18 | 41:7 50:15 | 7:17 10:10 |
| **gun** 116:5 | 99:11 119:12 | 64:20 71:12 | 12:23 13:20 |
| **guys** 64:22 | **harman** 42:16 | 78:1,7,8 | 15:14 18:21 |
| 96:11 97:11 | **harmed** 69:5 | 100:17 | 21:8 22:9,25 |
| **h** | 87:20 | **helpful** 82:4 | 24:12 26:7 |
| **h** 132:21 | **harms** 67:2 | **helping** 72:21 | 28:20 29:3 |
| **half** 63:17 | **harris** 42:17 | 135:5 | 32:5,17 34:3 |
| 111:19 | 46:8,16,19 | **helps** 70:22 | 34:17 35:3 |
| **hands** 43:24 | 47:20,24 50:12 | 77:10 79:13 | 37:4 40:6 |
| **hannah** 2:17 | 50:18,22 52:2 | 80:4 | 41:22 43:4,7,8 |
| | 54:10 | | 44:17 48:22 |

Case 2:22-cv-02632-CCC-CLW Document 367 Filed 06/10/24 Page 162 of 270 PageID: 24675

| | | | |
|---|---|---|---|
| 49:5,24 53:2 55:1,14 56:20 65:8 67:14 68:11 80:7,16 81:13 83:21 86:8,13 88:17 90:4,5 94:4,12 97:24 100:9 103:9 109:8 111:9 112:3,17 112:23 114:10 115:24 116:17 119:24 125:4 126:17,24 127:25 128:16 129:13 131:11 132:5 134:13 135:3 **honor's** 13:5 92:15 110:6 **honorable** 2:2 **hope** 52:10,25 92:4 **host** 30:18 **house** 2:23 44:11 48:10 49:17 52:22 53:6 **huge** 73:10,25 77:17 83:17,24 132:1 **hundred** 13:11 42:23 86:23 **hurdle** 13:16 | **hurt** 64:8,10 **i** **idea** 39:9 69:1 83:9 107:14 118:11,14,17 **identified** 6:12 16:15 42:22 53:24 57:10,16 113:5 **identify** 6:9,21 7:23 31:22 **illegal** 84:17 **imagine** 35:7 **impacted** 61:8 93:2 **impacting** 60:15 94:25 115:10 **impacts** 69:23 **implement** 42:6 120:24 133:7 133:10,16 **implemented** 42:11 **implicitly** 92:9 **important** 21:25 23:17 27:8 31:23 35:24 47:3 54:20 56:4 62:21 76:18 80:15 129:10 132:19 **inapplicable** 127:20 | **include** 8:15 56:16 104:8 115:3 116:14 129:2 **included** 11:6 127:1 **includes** 59:2 116:15 129:20 **including** 67:23 71:8 80:4 115:22 123:2 134:4 **inclusion** 50:25 **inconsistent** 26:25 **increase** 74:9 89:16 96:3 98:22 99:1 **increased** 94:22 99:3,12 **increasing** 98:14 125:18 **indicate** 80:17 **indicated** 3:4 5:21 6:16 10:20 11:11 12:3 53:15 **indicates** 17:13 **indicating** 15:7 49:1 57:19 61:17 **indication** 57:12 **individual** 32:4 39:24 | **individual's** 31:16 **individuals** 7:23 116:15 118:3 120:12 123:1 124:15 125:7 **induce** 83:6 **inducing** 74:5 **industry** 23:7 73:3 80:25 **inevitably** 47:15 **inflated** 93:20 **inform** 62:7 **information** 3:13 7:5 8:21 15:10,24 21:1 28:18 56:10 67:10 80:12 85:11 87:9 89:21 90:21 **inherently** 122:5 **injuring** 84:14 **injury** 70:12,13 70:19 71:23 72:3,9 99:14 **inquiry** 65:5 86:12 102:9 **instance** 3:16 49:8 50:13 54:2 86:5 **instructions** 31:21 |

| | | | |
|---|---|---|---|
| **insurance** 95:9 | **interrupted** | 53:15 103:7 | 113:22,24 |
| **intended** 79:6 | 100:1 | 105:22 107:9 | 114:19 115:23 |
| **intending** 92:3 | **investigate** | 108:23,24 | 123:6 124:14 |
| 94:23 95:15 | 108:19 | 111:2 115:8 | 128:8 131:20 |
| **intent** 38:20 | **investigated** | 118:16 120:12 | 133:24 134:13 |
| **interested** | 5:13 | 133:24,25 | **issues** 3:7,8 6:4 |
| 17:21 53:13 | **investigation** | 134:1,3,18 | 7:10 11:12,14 |
| 55:6 77:18 | 5:14 23:14 | **involvement** | 13:1 14:14 |
| 136:15 | 30:11 52:1 | 109:5 | 19:1 25:5 |
| **interfered** | **investigations** | **involving** 50:6 | 30:15 40:3 |
| 18:18 | 21:14 24:9,14 | **irrelevant** 5:24 | 55:19 70:12,13 |
| **interference** | 24:17,21 25:2 | 9:6 30:13 | 82:5 98:5 |
| 36:3 | 25:8,10 26:3 | 73:14 74:2 | 109:11 111:3 |
| **internal** 27:4 | 28:22,22 29:5 | 80:13 82:18 | 114:5 135:5 |
| 49:8 89:13 | 32:4 39:13 | 83:20 90:10 | **j** |
| 90:12,15 | 56:6,11,16,21 | **issue** 5:15 8:20 | |
| **internally** | 104:20 | 9:17 11:22 | **j** 2:10 |
| 13:23 | **investment** | 13:4 15:20 | **j&j** 5:9,13,19 |
| **interpret** 35:16 | 70:8,11 71:10 | 16:6,7,17 | 5:21 6:11 8:1 |
| **interpretation** | 71:18 72:4,8 | 20:10 21:18 | 10:3 20:14 |
| 19:19 102:15 | 77:4,7 79:23 | 24:19 27:5 | 21:19 26:19 |
| **interpretations** | 80:3 81:16,22 | 29:21 43:10,12 | 48:10 49:3 |
| 102:14 | 82:11 83:18,18 | 43:18 44:3 | 58:19 60:24 |
| **interpreted** | 87:8 88:9,11 | 48:2 49:25 | 63:19 68:7,8 |
| 35:23 | **investments** | 51:25 57:2,5 | 69:17 73:11,22 |
| **interpreting** | 73:24 100:15 | 58:3 64:17 | 74:21 75:2,14 |
| 37:25 105:11 | **invitation** | 68:9,15 73:16 | 75:20 76:1 |
| **interrogatories** | 116:13,14 | 78:14 87:12 | 77:17 78:1 |
| 6:23 7:13,15 | 122:16 | 88:8,10,11,24 | 83:11 84:7 |
| 7:22 123:7 | **invitations** | 88:24 90:9 | 99:12 108:5 |
| **interrogatory** | 113:22 115:3 | 93:3 94:12 | 119:6,13 133:1 |
| 7:2,7,14 8:3 | **invites** 122:12 | 101:7 104:2,19 | 133:9 |
| 29:10,17,19 | **inviting** 25:24 | 110:11,13,14 | **j&j's** 5:11 |
| 31:25 63:5,10 | **involved** 32:3 | 112:10,20,23 | 55:11 67:19 |
| 114:18 123:15 | 49:13 50:21 | 112:24 113:17 | 70:8 83:14 |
| | | | 106:8,20 |

125:13
**jalt** 113:23
114:1,3,7,25
117:19 120:2,4
120:9 121:11
122:1 123:2,4
123:24 134:16
134:19
**janssen** 22:13
35:6 70:23
71:1 76:22,23
77:2,11,13
79:10,11,12,13
79:15 80:5
82:15 84:7
87:23 88:7,25
89:7,11,14
93:25 120:5
**janssen's** 82:22
**january** 1:18
8:13 24:16
42:1 104:22
105:24 106:1
106:11 118:14
**jd** 48:7
**jd's** 44:21
**jeffcoat** 46:7
50:14,23
116:15
**jeffcoat's** 46:9
**jeffrey** 2:10
**jennifer** 42:16
54:10
**jeopardizing**
67:24

**jersey** 1:2,16
1:18 2:10
136:5
**jjhcs** 2:23 5:9
7:6 8:5 10:3
27:10 29:13
35:5 44:23
45:6 46:8
47:17,18 49:11
52:9 53:17
60:21 63:20
74:21 77:15
80:23 90:17
91:18 93:17,21
**john** 107:3
116:8,17,20
**johnson** 1:4,4
36:20,20 60:12
60:21,21,23,23
69:25,25 71:3
71:3 72:15,16
74:3,3 75:6,7
76:8,8 79:22
80:2 89:18,19
96:21,21 98:21
98:21,25 99:1
99:2 102:22
103:12,12
114:14,15
**johnson's**
60:12 79:22
80:2 99:3
102:22
**jr** 2:20

**judge** 3:1,5 4:7
4:13 7:18 8:7
8:15,23 9:10
10:14 12:15
13:6,10,21,25
14:2,8,11,15,20
15:6,15,18
16:16,24 17:19
18:4,19,22
19:17 22:15
23:11,24 26:14
27:14,15 29:16
29:23 30:3,7
30:25 31:1
32:21 33:2,6
33:18 34:5,10
35:9 36:13
37:8,11,19,22
39:1,6 40:8,17
41:2,3,25 43:1
43:16,23 44:9
45:25 46:18
47:7 48:24
49:19 51:3
52:10,25 53:4
53:9 54:7,12
54:18,23 55:2
55:15 56:2,22
57:1 58:9,14
59:25 61:25
62:1 63:11,13
63:23 65:10,18
66:12 68:2
69:8 70:4
72:11,13 74:14

74:18 75:12
76:14 77:20
79:2,19 80:1
81:10,14 82:1
83:23 84:19
85:13,22,25
86:3,9,14,18
87:24 88:13,18
88:21,25 89:4
91:4,12,22
92:4,17,23
93:6,10 94:15
94:19,24 95:2
95:24 96:23
97:2,9,14
98:17 99:19,22
99:24 100:19
101:4,6,11,14
101:23,24
102:1,10,13,17
102:19,21
103:6,20
104:11,17
105:5,25
106:10,13
107:11,18
108:7,13,17,21
109:9,17,24
110:3,8,15,16
110:20 111:7
111:11,16,24
112:7,15,18,22
112:22 113:4
113:18,23
114:9 115:5

| | | | |
|---|---|---|---|
| 117:16 118:5 | **keeping** 9:8 | 58:6 60:22 | 130:9,23 |
| 119:16 120:3 | 15:1 41:19 | 61:16 62:17,24 | 134:21 |
| 120:16 121:10 | **keeps** 82:8 | 63:1,6,18 64:8 | **language** 4:2 |
| 122:7,18 | 96:17 | 64:19,23 65:1 | 18:20 22:1,23 |
| 123:16,20 | **kept** 13:10 | 67:6,7 69:16 | **large** 66:22,24 |
| 124:22,23 | **key** 119:3 130:5 | 69:16 72:15,18 | **latches** 28:8 |
| 125:20,24 | **kicking** 3:9 | 73:1,19,23 | **law** 18:12 |
| 126:13,20,24 | 31:2 | 77:20 78:24 | 60:14,17 102:8 |
| 127:5,12 128:2 | **kind** 4:5 39:20 | 79:11,12,24 | **lawsuit** 20:14 |
| 128:14,17,22 | 42:7 43:19 | 80:16,17,23 | 20:25 59:7 |
| 129:14,24 | 50:15 100:1 | 81:3 82:7,16 | 74:1,2,13 |
| 130:14,20 | 105:15 116:4 | 86:22 87:15 | 123:13 |
| 131:1,4,18 | 125:22 | 88:16 90:24,24 | **lawyer** 45:8 |
| 132:8,16 | **kinds** 88:8 | 91:22 94:15 | 46:8 49:17 |
| 133:18,23 | **knew** 24:2 | 95:10 96:11 | 50:6 51:1 |
| 134:5,20 135:1 | 112:1 125:17 | 98:4 102:2,5 | 52:22 |
| 135:7 | **knewitz** 113:12 | 103:9 110:8,20 | **lawyers** 44:20 |
| **judge's** 83:13 | 113:24 117:5 | 112:8 115:7 | 44:21,23 45:12 |
| **judgment** | 123:11,18 | 116:4 119:13 | 48:10,21,21 |
| 12:18 93:1 | 134:12,17 | 120:7,14,21 | 51:1 53:6 |
| **julia** 2:6 | **know** 3:23 5:8 | 125:13,17,20 | **lead** 29:3,15 |
| **juliette** 111:15 | 5:10 8:25 | 126:4,6 127:3 | 30:14 73:8 |
| **july** 4:25 43:23 | 10:10,20,22 | 128:25 130:10 | 74:9 |
| **june** 114:18 | 11:12 13:2,8,9 | 131:9,22,25 | **leadership** |
| **juror** 75:23 | 15:7 16:1 | 132:9 | 120:5 123:4 |
| **jury** 92:3,8 | 23:19 24:1 | **knowing** 72:24 | **learn** 124:3 |
| **k** | 26:18 28:7,8 | **knowledge** | **leave** 26:24 |
| **k** 123:19 | 29:14 30:17 | 111:25 | 97:23 126:13 |
| **karen** 111:15 | 31:1 33:16 | **known** 21:13 | **left** 3:5 16:17 |
| **katherine** 2:13 | 38:5 39:9,16 | **knows** 69:3 | 68:22 112:5 |
| **katie** 114:3 | 39:18 42:5 | **l** | **legal** 2:9 44:22 |
| 116:7,19,20 | 44:10 48:13 | **l** 2:2 129:15 | 45:21,21 47:17 |
| **keep** 31:3 57:21 | 49:13 51:1,7 | 133:8 | 47:21,22 48:20 |
| 61:9 89:22 | 51:10,16 53:19 | **lade** 111:15 | 50:23 51:2 |
| 97:11 99:8 | 54:15 55:8 | 112:13 129:14 | |

length 27:6
lengthy 67:6
letter 25:20
   42:20 48:25
   100:12 111:13
letters 7:3
   21:10 29:15
   43:20 119:2
level 63:14
   115:9 120:2,3
   120:13 123:3
   128:24
levels 69:25
license 136:21
lieb 2:13
lies 98:9
light 26:18
likelihood
   111:1
likely 118:20
   124:15
limit 53:11
   103:4 111:4
   129:4 133:22
limitation 51:4
   68:5 123:14
limitations
   132:11
limited 6:18
   11:15 17:15
   26:22 32:6
   49:11 61:12
   75:14 86:17
   87:18 108:10
   128:9,14,15,17

   128:23
limiting 17:23
   18:22 30:7
   50:10 82:1
   86:20 87:8
   88:14 96:2
limits 134:8
line 59:2,2 64:9
   64:10 82:22
   95:5,7
linger 55:19
link 96:17
list 18:8
listed 23:20
literally 63:8
   85:9
litigating
   110:17
litigation 49:18
   50:6 73:5
   115:11
little 23:6 33:8
   71:11
lives 68:18
llc 1:8
llp 1:17 2:4,19
lobiondo 2:6
   106:12,15
   109:7,19
   110:12 111:6
log 39:2,4
   42:18,19 44:15
   45:16 46:12
   51:20,21

logistics 102:20
long 2:6 5:18
   10:12 18:8
   52:2 61:4,10
   72:19 103:24
   104:1 105:23
   106:2 108:9,15
   109:21 110:2
   112:15,16
   113:10,20
   115:14 121:9
   121:11 122:9
   122:20 123:18
   123:21 124:17
   126:17,18,22
   131:11 134:12
longer 13:3
look 12:11 15:6
   20:1 29:17
   35:2 38:2
   40:21 50:22
   56:13 66:10
   70:24 82:5
   89:12 98:12
   100:14 121:12
   125:5 128:3,5
   129:19 130:3
   130:11,18,22
   131:22
looked 3:24
   19:4 31:17
   74:19 80:18,23
   86:10 98:4
looking 3:10
   8:25 17:20

   19:8,22 36:9
   37:6 46:16
   54:13 57:9
   62:9 66:12
   97:4 111:2
   117:3 120:17
   121:6 125:1
   127:12 130:10
looks 118:1
loot 72:19
looting 72:17
loots 78:2
losses 73:12
lost 76:7 91:8
   92:11 96:5
lot 17:5,6 20:4
   22:24 44:2
   53:20 69:18
   71:8 75:2,21
   78:12,21 83:3
   90:20 131:8
   132:1
lots 28:14 83:6
   94:10
love 15:15
   99:21
lowenstein 1:17
   1:17 2:24
lowered 89:6
   89:10 92:1,8
   92:18 93:13
lowering 95:2
   95:20,21 96:22
   97:20

| | | | |
|---|---|---|---|
| **lying** 15:3 | 54:5 57:24 | **manufacturer** | **mazuk** 114:3 |
| **m** | 60:22 71:18 | 5:17 | 114:10 115:1,2 |
| | 72:16 73:18 | **manufacturers** | 115:4,16 |
| **m** 2:13 | 78:12,15,21 | 72:22 | 116:20 117:12 |
| **machine** 83:16 | 80:10 82:13 | **manufacturing** | 117:14,20 |
| **made** 21:19 | 83:7 84:21 | 82:6 | 121:21,25 |
| 22:23 26:6 | 86:24 93:11,15 | **march** 33:5 | 122:1,5,15 |
| 33:19 42:8 | 96:9,15 97:18 | **mark** 116:8 | 123:2 124:2,20 |
| 68:18 71:3,5 | 97:19,21 98:15 | **marked** 46:11 | 125:7 |
| 73:5 75:13 | 98:19 99:16,17 | **market** 80:11 | **mazuk's** 114:8 |
| 87:14 88:2 | 100:7,15 103:2 | 95:8 | 115:20 |
| 95:13 99:7 | 104:6 111:10 | **marketing** | **mean** 6:1 14:21 |
| 109:9 113:9 | 118:8 120:7 | 60:11 61:2,5 | 17:14 19:9,11 |
| 115:19 120:20 | 125:2 133:13 | 64:20 69:17 | 19:12 28:6 |
| 121:7 123:13 | **makes** 63:6,9 | 82:6 134:4 | 31:14 33:15 |
| 134:15 | 68:7,8 69:17 | **massive** 45:16 | 36:4 37:25 |
| **magistrate** | 74:3 75:21 | **massively** | 38:7 51:20 |
| 33:18 | 77:17 80:9 | 73:20 | 58:23 87:10 |
| **mail** 47:20,21 | 84:16 102:23 | **material** 99:4 | 101:25 117:22 |
| 50:18 52:4,5 | 105:7 | 131:10 | 125:21 129:6 |
| 102:22 122:16 | **making** 21:16 | **matter** 1:13 | **meaning** 8:25 |
| 122:24 123:25 | 30:10 67:25 | 9:25 33:24 | 9:18 10:23 |
| 129:20 130:19 | 69:16 72:1,20 | 52:2 83:4,4 | 11:7 16:21 |
| 130:23,25 | 73:11 75:2 | 85:10 | 19:23 25:14 |
| 131:7 132:23 | 78:11 83:5 | **matters** 59:15 | 34:16,24 38:3 |
| **mails** 46:7,9,16 | 88:4 97:24 | 83:9 90:14 | 53:17 105:11 |
| 48:4 49:8 50:6 | 100:3 114:11 | 91:17 | **meaningless** |
| 52:22,25 53:6 | 119:22,25 | **max** 17:9 | 29:5 |
| 124:5,19 129:1 | 120:1,12 | **maximizer** 9:19 | **means** 4:17 |
| 129:7,9 | 124:18 | 10:18 26:12 | 12:15 17:14 |
| **main** 26:6 | **manage** 50:16 | 29:1 30:12,21 | 19:8,13,15 |
| 114:25 | **manages** 81:1 | 108:6 | 20:6 38:11 |
| **maintain** 51:12 | **mangi** 127:17 | **maximizers** | 40:11 |
| **make** 4:4 17:23 | 127:22 | 57:23 106:21 | **meant** 9:22 |
| 19:16 24:3 | | 107:4 132:23 | 10:24 19:24 |
| 33:22 39:19 | | | |

33:20 36:18,23
95:7 110:16,17
**mechanism**
7:12
**medicaid** 18:13
20:11,22 23:21
**medicare** 18:13
20:11,22 23:21
29:6
**medication**
68:21 74:8
91:2
**medications**
42:3
**medicines**
93:25
**meet** 3:10
14:10,18 15:12
15:19 31:1
32:15,18 39:4
41:9,15 54:16
66:25 103:11
104:3,12,16,25
**meeting** 34:22
37:1 116:14,18
116:18 117:24
118:2 122:7,11
122:19,21,24
123:24
**members** 17:11
20:16 42:3
**memorialized**
124:5
**mention** 55:7
86:25 87:6,11

118:11 131:12
**mentioned** 37:6
112:14
**mentions** 108:3
108:3
**merits** 128:7
**met** 16:12
58:12 116:9
117:10
**mid** 108:19
**middle** 104:5
**miles** 2:17
**million** 13:11
32:13 91:9
92:22 119:7
125:12,18
**millions** 33:12
**mind** 41:19
**minute** 74:16
84:4 99:25
130:19
**minutes** 90:5
122:23 124:8
**mirrored** 88:4
88:6
**missing** 65:23
69:21 120:19
**mitigation**
133:20
**mitigations**
28:8
**modifications**
6:5
**modifier** 104:9

**moment** 4:11
12:10 14:6
21:21 27:16
31:6 37:5,17
38:11 62:12
73:15 75:18
88:14 94:3
103:21 127:14
**moments** 23:16
**money** 59:6,22
68:7,8 69:18
70:18 71:4,5
71:11 72:16,20
73:9,10,17
74:3,4 75:2,21
76:10,11 77:17
78:1,11,12,15
78:21 80:9
82:12,13 83:1
83:5,8 84:8
86:24 119:9,23
**monitor** 71:9
**monitoring**
130:7
**month** 52:20
**months** 6:17
32:19,21
**motion** 12:18
12:19 14:19
19:4 93:1
101:15 107:22
111:18,24
112:6,24
114:17 127:10
133:5

**move** 4:9 6:2
13:17 16:2
41:18 70:7
132:4
**movement**
43:11
**moves** 32:9
**moving** 83:11
95:17

**n**

**n** 2:3 123:19
**name** 76:21
79:15 106:20
107:13 112:9
114:3
**named** 46:7
79:9 132:20
**narrow** 22:17
25:7 31:5
32:22,24 35:11
35:14 37:9
40:18 52:23
64:14 67:12
74:23,23 78:25
79:19 86:21
87:7 101:21
103:18 111:10
**narrowed**
16:13 25:19
40:18,25 41:1
81:7
**narrower**
40:19
**narrowing**
32:24 76:3

79:3 81:6,10
**narrowly** 54:14
69:14
**natural** 127:7
**nature** 31:24
39:8,24 40:25
46:13 50:4,24
**necessarily**
48:1 105:17
115:15 123:25
**necessary** 4:8
22:20 59:23
69:11 80:12,21
86:15
**need** 11:2 12:17
13:4 20:5 21:5
24:7 26:4 27:5
31:4,10 32:20
34:1 36:17
39:12 41:6,6
41:18 56:23
57:17 59:11
60:19 63:18,21
63:22 69:22,24
76:10 79:21
80:2 84:13
88:13 107:2
124:12
**needed** 22:17
28:19 68:21
**needs** 28:10
33:21
**negligible**
48:18

**negotiate** 25:24
**neither** 136:9
**net** 86:21 90:12
90:13 91:17
93:24
**never** 20:17,23
24:5 40:18
55:13 134:5
**new** 1:2,16,18
2:5,5,10,13,13
2:16,16,20,20
6:12,14 20:24
42:2,6 71:4
84:2 87:2
99:14 102:18
102:25 103:5
103:17 105:13
108:10 111:12
111:23 112:12
113:5,8,8,13,13
113:14 116:3
124:18 125:1,2
125:5,25
126:25 129:19
130:10 132:18
134:9,14 136:4
**newark** 2:10
**non** 38:23
48:19 93:3
**nonsense** 81:4
**north** 119:18
**notary** 1:15
136:4
**note** 49:16
118:7

**notebook** 116:7
117:25
**noted** 12:20
**notes** 1:12
118:2,7 136:6
**notion** 80:22
**november**
24:24 43:17,25
57:8 101:14
104:3
**number** 9:6
18:16 47:6
51:25 58:20
60:8,9 61:13
77:5 94:16,18
94:21 100:11
108:1 109:21
120:10 127:10
**numbers** 54:4,6
61:15 91:20
**numerous**
120:2

**o**

**o** 2:1 132:21
**object** 50:25
59:13 87:23
**objected** 87:22
**objections** 7:8
**obligation**
51:13 67:1
**obligations**
93:21
**obliged** 29:11
**obtain** 73:6

**obviously** 8:18
45:7 125:3
**occasion** 51:17
**occasionally**
123:12
**occasions** 45:4
**occurred**
100:13 116:19
**occurring**
120:1
**october** 5:3
22:16 33:3
43:11 104:7
114:19 126:20
126:22
**offer** 3:25 4:3
6:1 9:18 12:15
16:9,22,24
17:14,16 18:3
18:5,6,20,24
19:5,8,11,13,24
20:1,6,15,18
21:4,7,23 22:7
22:23 28:25
30:5,16 31:9
32:9 34:9
35:20 36:1,4
36:15,16 38:4
40:11 60:23
78:7,8
**offered** 5:19
22:24 59:11
104:4 121:24
**offering** 25:6,7
25:10,12

[office - part]                                                    Page 26

**office** 1:16 73:20 75:10
**offline** 50:23
**offset** 72:3 78:15 99:18
**offsets** 72:2 78:18
**oh** 29:6 68:7 77:17 78:12 81:7 91:18 95:9
**okay** 5:6 8:7,23 11:2 13:6,21 14:1 15:18 16:16 28:1 33:6,19 37:13 40:5,7 41:21 41:25 42:12 54:12 58:14 59:25 62:19 63:13 64:9 70:4,5 72:18 72:18 75:12 83:16 88:20 98:17 99:22 100:19 101:5,6 101:11 103:21 107:11 111:6 111:11,21 123:20 130:2 130:20 131:4 132:14
**old** 40:2 88:21 124:19 125:5

**once** 32:9 52:23 80:5 83:3
**oncology** 68:23
**ones** 26:6 134:21
**open** 3:5 23:2 97:9 127:1 135:1
**opened** 108:17
**opening** 113:14 126:14
**operated** 43:15
**operates** 82:24 87:16
**operation** 68:22
**opinion** 12:16 62:2 65:12 66:13 67:4,6
**opportunity** 102:2
**opposed** 64:15 71:12 90:1 119:22
**opposing** 25:16 121:19 124:9
**order** 12:16 20:5 22:17 26:14 27:14 32:23,25 36:14 52:19 56:2,23 74:7 82:3 83:7 83:13 102:2,15 102:18 104:3 105:1,7,12

112:8,20 113:3 118:22 125:10 125:15 126:10 127:7,8
**ordered** 37:8 104:18 111:19 112:24 116:17 116:21 127:5
**ordering** 12:2 134:8
**orders** 3:8 116:1
**organized** 13:3
**original** 43:22 55:21 108:11 118:16
**outcome** 29:15
**outside** 10:24 46:21 47:9 49:11 50:2 52:14 53:17,20 60:23 90:17 91:18 104:24
**outstanding** 3:3
**overall** 67:10 68:8 75:25 83:4 125:22
**overlaps** 40:11
**overtaken** 43:19
**overwhelmin...** 45:18 52:12
**own** 47:17 75:9 87:2 93:24

131:16

**p**

**p** 2:3,3
**p.c.** 2:8,12
**p.m.** 135:10
**page** 117:25 127:25 130:4 130:23
**pages** 4:22 22:10
**paid** 59:2,16 61:13 79:24 84:4 119:9
**paper** 73:20 82:8 116:6 135:5
**papers** 27:1
**paragraph** 12:16 67:21 93:19
**parallel** 15:14
**park** 2:12
**part** 8:1 14:12 16:10,11 17:10 17:13 18:13 20:13,19 34:14 40:9 43:22 44:14 46:25 50:5 61:2,3 70:21 71:16 74:13 79:15 99:2 110:12 111:18,23 112:20 119:8 132:23,23

133:5,13

**partially**
119:25

**participants**
27:11 66:19
118:7

**participated**
122:2

**particular** 3:23
21:23 22:1
44:11 73:18
117:6

**parties** 5:2
14:18 49:3,11
50:13 51:5,11
51:15 52:3
54:14,25
102:14,19,21
105:14 136:11

**partner** 80:24
85:21

**partners** 68:25
90:21,24 98:3

**parts** 20:21
63:19

**party** 46:21
47:4,9 51:10
51:18,22,24
53:7,9 55:8
116:5,10 119:5
132:19,20,21

**pass** 103:23

**passing** 30:19
30:20

**past** 43:23

**patient** 30:19
30:19 63:14,15
64:20 67:25
76:12 84:3,4
133:1,12

**patients** 10:4
18:9 24:18
26:21,23 27:3
57:22 60:12
62:7 66:6
67:23 68:17,23
70:25 71:1,12
74:7,9 77:9
78:1,7 79:11
80:4 82:14
85:16 86:11
87:3,18,19
93:20 98:23
99:7,15 119:2
119:2,9,15
121:24

**patterson** 2:4

**pause** 21:21

**pay** 5:17 10:4,4
10:5 23:8
26:16,22 59:1
59:6,19 63:4
70:16,17 71:14
73:9,9 74:10
74:10 75:9
79:13 93:21
94:22 121:2,4

**paying** 57:21
70:18 71:25

**payment** 90:23

**payments** 94:5

**pays** 17:8 71:6

**pejorative** 78:3

**pending** 3:17

**penkowski**
111:15 112:13
113:19,25
117:4 118:16
121:17 124:20
128:10 129:7
129:21 134:16
134:22

**people** 13:23
39:16 44:18,25
45:1,5,6,20,23
47:3,16 48:19
50:21,21 52:5
52:9 56:14
64:8 68:19
70:22 71:24
74:6 78:8,17
83:6 84:22
86:23 89:25
103:7 108:22
109:12 111:1
117:9 120:9
129:1

**people's** 48:13
83:6

**perceive** 56:24

**percent** 16:14
25:20

**performance**
21:3

**period** 5:1,18
10:7,9 11:21
14:25 15:5
19:20,25 21:16
24:22 25:9
30:22 34:14
38:24 40:21
55:20,23,24
56:1 57:7,19
58:20 63:17
103:16 104:9
104:13 105:3
108:11 128:19
128:20 132:7,8

**permit** 38:6
127:3

**person** 29:6
46:22 117:12
129:10 133:6

**person's** 75:10

**personnel**
47:20

**perspective** 4:6
15:21 33:17

**persuade** 78:8

**pertinent** 64:1

**pfizer's** 87:19

**pharmaceutical**
72:22 73:3
81:1 87:16

**pharmaceutic...**
119:19

**pharmacies**
62:5

**pharmacy**
90:22,23
**phrase** 38:2,14
**piece** 9:13,13
36:2,3 82:8
94:22 114:25
116:6
**pieces** 44:2
**pitch** 100:3
**place** 49:14,22
73:25 103:8
117:22 136:8
**placed** 38:18
**plaintiff** 1:6 2:7
2:11,14 4:21
5:12 6:7,16
42:5 58:17
62:14 66:3,17
66:23 74:20
75:15 101:16
101:19 111:16
**plaintiff's**
115:10
**plaintiffs** 6:21
62:3,5
**plan** 17:9,10,14
20:17 70:22
**planned** 42:24
**planning** 97:5
98:2
**plans** 17:12
20:4,16 24:18
38:18 42:4
56:14 71:14
78:11 89:17,20

**plausible** 66:18
**plausibly** 62:3
66:23
**play** 44:19
**plaza** 2:9
**please** 88:19
100:24 127:14
129:4 132:13
134:23
**pllc** 2:15
**pocket** 17:9
**point** 4:8 17:16
17:17 19:16
30:8,10 44:5
50:18 53:8
56:12 59:9
62:6,23 68:2
85:6 86:6
87:13 98:20
100:7 104:16
106:17 107:6
117:19 118:8
120:7 124:12
124:17 125:9
**pointed** 22:9,25
23:6
**pointing** 65:13
**points** 4:5 7:4
26:5 44:7
81:13 106:6
116:4
**police** 28:5
**policies** 11:14
31:7,11,19
33:10,11 34:6

**policy** 11:18,24
12:1 13:9
29:20,25,25
30:1 32:7,7
**poor** 50:9
**portion** 127:14
**portions** 17:2
**position** 10:15
10:21 20:24
27:21 32:19
37:23 84:21
102:23 104:4
104:25 112:17
113:5 131:15
131:19
**positions** 33:1
**possible** 104:23
**potential** 73:24
104:5
**powder** 77:18
**pr** 134:17
**practical** 85:10
**practicing**
48:21
**precisely**
120:16
**predate** 5:18
**predecessor**
6:21 8:2,5,16
9:1 11:6
**preliminary**
4:5
**prepared** 31:3
**prescribed**
105:1

**prescription**
22:2
**prescriptions**
62:6
**present** 2:23
8:13 24:23
25:9 30:23
59:4 98:2
101:10 124:22
**presentation**
122:12,13,21
132:24
**presentations**
122:3
**presented**
112:1 113:7
122:1,22
**preservation**
11:12 14:14
**pressure** 89:20
**presumably**
122:25
**pretty** 13:19
15:22
**prevent** 27:2,7
72:24
**preventing**
13:15
**previous** 16:15
**previously**
112:1
**price** 90:6,12
90:13,13 91:2
91:17 93:22
94:7 97:11

[price - program]                                                                    Page 29

99:17
**prices** 89:16,17
89:18,23 90:25
92:2,8,18,19
93:13,25 94:6
94:9,14 95:10
95:12,16,20,22
96:6,14,22
97:6,20,25
98:14,22 99:1
99:3,13,16
100:6 133:1
**pricing** 88:24
88:24,25 90:14
90:18 91:5,7,8
92:20 93:3
94:25 95:2,3
96:10 98:12
99:7 100:4
101:3
**primarily** 3:11
22:3 68:15
69:2
**primary**
132:17
**prior** 9:22 10:2
27:22 104:7
133:5
**privilege** 39:2,3
42:18,19 44:15
45:3,16 46:11
46:13 47:13,23
48:14,15,15
50:1 51:18,19
51:21

**privileged**
38:23 45:9,19
45:24 46:11
48:1
**probably** 23:6
119:23
**problem** 40:9
45:16 51:22
135:7
**problematic**
27:24
**problems** 9:14
**proceedings**
1:8,13 135:10
**process** 21:15
26:3
**produce** 11:23
12:5 21:11,13
22:14 23:13
51:13,20 72:7
72:7 76:20
79:24 80:20
111:4 120:17
132:4
**produced** 4:21
12:2 22:10
30:2,6 38:15
38:21,24 43:12
45:7,24 58:18
58:25 59:5,17
59:20,21 61:12
62:24 80:16
84:6 85:4
89:14 90:8
91:13 100:12

109:13 114:7
117:2,21
118:13 124:9
130:15
**producing** 9:15
27:12 30:23
47:1,2,6 56:10
57:9,25 58:24
79:5
**product** 81:23
81:24 82:22
**production**
22:24 23:1
25:4 27:9
30:14 42:14
49:10 52:19
56:25 57:2
91:15 106:8
116:23
**productions**
21:16 124:6
**productive**
9:24
**products** 60:22
**professional**
134:18
**profitability**
73:2
**profitable**
73:13,23 83:10
83:15
**profits** 76:7
87:4 91:8
92:11 96:6

**program** 3:24
8:6,19,22 9:19
9:20 10:6,8
17:6 18:3,15
21:4 23:8
26:17,24 27:3
27:7,24 29:2
43:15 50:16
59:7 60:11
61:5,14 62:18
64:5,6,25 65:1
68:4,10,18
69:17 71:17
72:17,19,21,25
73:2 74:25
75:4 76:3,9,9
76:21 77:3,15
77:23 78:7,8
80:4 84:2,23
86:12,21 87:16
88:2 89:24,25
91:6 92:12
93:16,23 94:5
94:8,22 98:6
98:24,24 99:8
99:12 101:19
101:22 103:1,1
103:13 105:23
106:9,10,16,19
106:19,23
107:7,10,14,14
107:23,25
108:6,6,16,23
114:12,23
115:11,18,19

119:1,4,10
120:25 121:8
121:21,23
122:14 123:9
129:8 131:14
131:16 132:22
133:7,10,12,14
133:16 134:1
**programs** 5:17
6:22 8:2,16 9:1
9:20 10:17,18
11:7 23:10,20
26:12,19,21
27:10,11 30:12
30:22 64:18
67:25 95:23
130:7
**prohibition**
18:14
**prohibitively**
68:1
**project** 9:24
80:13
**promising**
119:6
**promptly**
100:17
**pronouncing**
19:7
**properly** 51:12
**proportional**
52:16
**proportionality**
102:24 105:16
109:15

**proposal**
111:10,17
128:13
**proposed** 22:4
25:18 37:8
50:24 58:5
111:25
**proposing**
22:11 32:6
50:9 58:8
**propound** 7:8
7:14
**propounded**
7:9
**protect** 127:19
**protected**
47:12 50:7
**protecting**
60:17
**prove** 97:6,7
**provide** 32:23
50:23 112:25
128:12 130:8
**provided** 11:13
11:16 63:10
100:21 114:20
115:6 117:13
**provides** 78:1
84:16 89:11
**provision** 16:23
16:25 17:16
19:13,24 20:16
20:18 36:2
**provisions** 20:3

**prudent** 83:10
**public** 1:15
60:2,10,18
61:3 62:1,10
65:22 66:1,22
66:24,25 67:18
67:23 68:12,14
71:18,20 72:10
87:17 95:8
99:11 136:4
**publicly** 89:9
**purpose** 52:23
71:17 77:22
132:25
**purposes** 5:9
82:24,25
**pursue** 39:16
**put** 25:19 46:12
51:19 77:15
78:14 82:12
87:7 89:9,19
91:20 92:5,7,8
92:23 96:19
100:10 102:2,6
112:12 118:6
**putting** 13:10

**q**

**quarter** 32:13
**quarters** 22:5
**question** 4:17
11:3 24:6 34:4
52:15,21 61:20
63:8 71:22
73:8,10,17,19
73:21 74:5,15

74:21 82:4,23
84:20 85:25
92:16 101:17
115:6 116:8
119:17
**questioned**
24:10
**questions** 23:23
23:25 29:9,11
29:12 62:10
72:10 122:4
**quick** 124:10
**quickly** 13:19
83:22
**quite** 3:19
13:13
**quote** 16:4
23:13 93:24
**quotes** 129:8

**r**

**r** 2:1,3,16
132:21 133:8
136:1
**raise** 28:8
89:19 95:12
99:16 103:12
103:17 133:1
**raised** 7:10
51:4 58:3
92:19 94:14
97:25 98:12
**raising** 29:10
89:23 95:3
**ran** 20:18

| | | | |
|---|---|---|---|
| **range** 91:19 | **reasonable** 52:16 | 94:10 96:14 116:19 131:13 | **reimbursing** 119:14 |
| **ranking** 114:14 119:20 | **reasons** 22:16 89:22 98:13,21 99:4,6 | **references** 17:11 | **reiterate** 76:16 |
| **rare** 45:4 | **rebate** 35:23 | **referencing** 127:4 | **reject** 62:5 |
| **rather** 12:12 | **rebates** 10:25 17:22 | **referring** 107:21 110:22 110:23 123:17 | **rejected** 111:17 |
| **rational** 59:11 | | | **relate** 3:12 20:3 22:7 32:16 43:12 111:8 |
| **ray** 80:8 | **recalled** 56:9 | **refers** 108:5 | **related** 25:2 43:10 47:18 54:21 67:1 77:3,8 94:8 103:5 110:9 136:10 |
| **reach** 80:21 | **receive** 18:15 | **reflect** 31:19 38:19 39:15 | |
| **reached** 101:17 108:7 | **received** 25:20 | **reflecting** 42:9 | |
| **read** 33:2 127:8 | **receiving** 45:21 | **reflects** 31:20 | |
| **reading** 66:21 102:22 127:7 127:13,14 135:4 | **recent** 10:12 | **reframing** 74:12 | **relates** 62:15 104:20 |
| | **recess** 4:12 99:23 | **refresh** 108:12 | **relating** 4:24 5:25 6:8,10,14 7:21 16:20 26:10 30:20,21 54:25 56:15,22 57:25 82:5 |
| **real** 92:1 | **recipient** 52:4 | **regard** 3:16,20 6:20 8:12 17:20 23:13 27:19 28:4,12 31:8 33:11 69:20 81:11 101:7,16 127:9 128:10 | |
| **really** 3:9 5:22 13:7 14:13 26:20 30:13 32:8 35:3 38:3 39:14 43:10 48:5,7 49:9 55:3 60:15 62:13 64:17,19 68:9 69:16 82:25 91:15 105:19 106:18 131:20 132:19 135:3 | **recognizable** 60:16 | | |
| | **recognize** 117:7 | | |
| | **record** 3:7 4:11 9:8 10:11 15:1 92:24 102:6 | | **relative** 73:23 136:13 |
| | **records** 13:3 103:3,5 | **regarding** 3:12 4:17 34:7 102:18 105:13 107:22 123:13 | **relevance** 4:16 9:17 15:25 59:14 91:23 132:18 133:3 |
| | **redacted** 45:2 46:13 | **regardless** 12:1 | |
| | **reduce** 89:16 | **regular** 132:6,7 132:8 | **relevancy** 9:14 |
| **reason** 27:8 53:13 79:9,14 82:20 103:7 108:21 110:25 118:19 126:1 | **reduced** 94:6 96:6 | **regularly** 24:2 | **relevant** 5:12 5:20 9:3 10:16 11:6,21,21 15:24 17:3 19:12 21:2,16 21:24 25:8 |
| | **reducing** 97:11 | **reimburse** 119:6 | |
| | **reduction** 94:7 | | |
| | **refer** 124:19 | | |
| | **reference** 91:9 92:21,21 94:9 | | |

[relevant - return]                                          Page 32

28:15,23 31:13
33:8 34:7,9
35:1,12,22
36:24,25 41:12
41:20 53:18
58:20 61:20,21
64:7 67:13
70:2 72:9
76:17 77:14
80:6,20 82:25
87:5 89:17
90:2,6 91:24
91:25 100:4,10
108:25 109:8
110:22 114:5,6
115:13 116:2
117:23 118:20
122:13 124:7,8
124:15 129:8
131:8,10,17
134:3
**relief** 127:9
**relieve** 51:9,13
**rely** 128:6
**remain** 44:3
**remaining**
112:4 113:16
123:21
**rendering**
47:22
**renewed** 112:6
**repeat** 80:1
**reply** 98:1
113:15

**report** 89:8
93:24
**reporter** 1:15
99:21 136:4
**reports** 25:3
89:12 90:8
91:14,21
115:17
**representation**
93:7,11 97:19
97:22 114:21
**representations**
97:4
**represented**
123:14
**request** 30:4
31:5 32:1,2,25
33:20 34:13,15
34:19 37:9
47:21 49:17
54:21 55:21
64:14 67:11
81:7,8 88:4,6
108:16
**requested** 6:21
107:22 127:9
**requests** 5:7
6:20 7:20 8:3
22:18,18 40:18
40:19,25 45:21
63:24 67:12
69:10,14 79:1
81:9 87:14
88:22

**require** 69:22
80:8 90:16
127:11
**required** 12:20
48:11 52:22
**requirements**
20:10,23 30:18
**requires** 66:21
**reserve** 57:4
**resided** 121:25
**resides** 80:22
**residing** 73:19
**resolve** 22:20
57:3 112:7
135:5
**resolved** 3:7
8:11 113:1,3
**respect** 9:23
109:15 121:20
123:7
**respectfully**
108:15 126:2
**respond** 7:16
48:22 53:2
65:8 72:12
81:12 83:22
91:11 121:9
**response** 4:23
25:23 26:14
27:23 42:22,24
63:10,12 67:15
102:4 105:15
106:20,23
107:3,9 132:22

**responses**
55:12 114:19
123:15 124:11
**responsibilities**
114:16 120:22
**responsibility**
7:23 114:11,22
114:23 115:8
115:17 122:6
123:5
**responsible**
6:12
**rest** 103:25
105:15
**restrictive**
42:14
**result** 52:18
56:22 68:20
71:2 76:10
85:1 86:11
93:17
**resulted** 84:2
**retain** 15:5
**retention** 9:11
11:12,14,24
12:1 13:9
14:14 15:11
**return** 38:12
70:8,11 71:9
71:19 72:4,8
77:4,7 79:22
80:3 81:16,22
82:11 83:17,18
87:8 88:9,11
100:14

**reveal** 108:5
**review** 5:19
  23:5 32:12
  41:8 43:3
  45:12 46:9
  48:11 49:7
  52:22 53:24
**reviewed** 22:6
  42:23 57:7
**reviewing**
  45:14 48:3,12
  52:8 102:20
**revise** 42:9
**revising** 53:15
**revisit** 126:1
**rhetorical**
  95:13
**right** 3:1 4:2
  6:24 8:13 16:2
  18:25 21:17
  23:22 32:3
  38:14 39:13
  43:16 54:7
  55:4 58:3 60:6
  61:23 65:7
  66:13,14 87:14
  88:18 92:5,24
  101:12,18,20
  102:17 105:10
  110:3 111:20
  112:2 119:19
**riverfront** 2:9
**road** 31:2
**robinson** 2:19

**role** 44:5,12,20
  115:10
**rolls** 99:15
**roof** 23:5
**root** 27:10
**roseland** 1:18
**row** 94:1
**ruled** 87:24
  105:9
**rules** 59:18
**ruling** 110:7,14
  110:18 112:10
  134:15
**run** 16:20
  25:23 32:20
  44:8 55:22,24
  55:25 56:3,18
  83:2,11 104:8
  104:18 107:7
  108:10,13
  109:2 116:22
  119:3
**running** 26:12
  34:21 44:1
  104:12 109:25
**runs** 74:24
**ruthanne** 1:14
  136:3,20

**s**

**s** 2:3
**safety** 66:22,25
  67:2
**sale** 62:6 82:6
**sales** 71:4,4
  72:1 77:11,14

  77:18,19 78:16
  84:6,7,21
  99:16,17
**sandick** 2:5 7:1
  8:24 9:4,16
  12:23 13:20,22
  14:1,5,21
  15:13,16 18:6
  20:9 21:8 26:7
  28:20 29:18
  30:2,5,9 32:5
  33:4 35:3 37:4
  37:13 38:21
  39:3 40:7,16
  42:19 43:5
  44:17 46:4
  47:1,14 49:24
  51:24 52:11
  53:19 54:19,24
  55:4,9,13 56:6
  56:20 58:2,25
  63:3,14 68:11
  72:11,14 74:17
  74:22 75:5
  76:5 78:3 79:8
  80:7 82:3,23
  84:20 85:3,7
  85:18,23 86:1
  86:7 87:10
  88:20 90:4
  91:7 92:6,11
  92:20 93:8,12
  94:2,17,20
  95:1,4 96:4,24
  97:5,13,16,21

  103:23 110:5
  110:10 135:2
**sandick's** 49:9
**sandler** 1:17
  2:24
**sara** 2:7
**sat** 39:19
**savaria** 42:16
  46:8 54:10
**save** 1:8
**saveon** 5:23
  9:19,21,23
  10:8,17 11:5
  17:6 18:2,13
  20:16,17,24
  21:4 24:2,18
  26:19,24 27:1
  27:4,11,21
  29:2 30:12,16
  30:20 35:19
  36:5,6 42:5
  47:5 54:22
  55:7,12,12
  56:14 58:19
  60:7 61:8 62:7
  67:22 68:18,25
  69:2 70:21
  76:10 78:2,10
  80:17 83:16
  84:2,22 85:4,6
  85:8,17 86:12
  86:20,25 87:6
  87:9,11,15,23
  87:23 88:5,14
  91:9 92:10,21

92:22 93:14,20
93:23 94:9
95:17,22 96:6
96:10,15,18,19
104:4,9 106:21
106:23 108:3,5
110:22 114:18
114:25 115:2
116:4,25
117:10 121:1
124:1 131:12
131:14,17
**saveon's** 94:8
107:22 113:14
115:10 118:11
118:17 120:14
127:9
**savings** 22:2
36:16,18
**saying** 9:5,6,12
24:6 25:17
32:2 33:7
37:14,15 43:24
46:1 52:1 56:9
58:6 60:14
64:8 68:3,6,6
82:8 84:3
87:15 88:4
103:10 107:12
110:25 111:16
**says** 5:13 67:3
67:22 76:9
78:1 89:10,13
93:24 116:7
127:16 129:21

130:4
**scenario** 84:15
**scg** 130:5
**scope** 18:17
22:20 29:8
36:15 72:6
101:18
**scott** 111:14
116:7 119:4,17
121:8,14
**scratch** 81:17
**screen** 50:8
**scripts** 80:24
81:1 90:22
**search** 4:23 6:7
6:9,13,17,18
12:4 16:11,13
16:20 22:4,8
22:11,18 25:13
25:17,18,19,22
26:1 32:22,24
33:17,19,22
34:1,21 37:2,7
38:13 40:2,4
40:13,14 41:4
41:13 42:15
43:23 44:1
45:25 46:2,23
46:25 47:11
49:11 53:1,12
53:16,25 54:3
54:15 55:22,25
56:17 57:10,16
58:4 61:24
78:25 82:17

85:9 86:4,7,16
91:19 101:18
103:2 104:2,8
105:2 106:12
106:13 107:6
107:16,18,21
108:11 109:22
109:25 110:5,9
111:5,8,10
114:5 116:22
128:9,23
129:11 131:10
132:6,9,12
134:23
**searches**
102:19 103:4
103:19 105:3
105:13
**second** 96:19
106:17 130:22
**secret** 79:10
**see** 3:11 5:19
15:15,20 21:5
28:3 30:19
35:15 46:9
56:25 57:1,17
63:1 68:7,8
75:19 87:11
98:15 116:2,25
119:4 120:2
131:5
**seeing** 52:23
**seeking** 91:8
120:10

**seemed** 12:12
**seeming** 126:15
**seems** 49:9
**seen** 17:17 19:3
47:14 49:1
57:18 68:16
82:10 85:18,23
86:1 100:11
106:8 122:25
**segment** 83:14
83:14
**selective** 42:7
**selendy** 2:15
**sell** 71:13
**selling** 82:14
**sells** 76:24 77:1
**send** 15:16 41:9
42:22
**sends** 119:2
**senior** 27:4
114:2,11
115:16 117:4,9
122:4
**sense** 44:13
74:23 84:16
102:23 103:2
105:7
**sensitive** 99:7
**sensitivity**
133:2
**sent** 42:20,20
102:8 130:24
**sentence** 38:11
**separate** 47:4
48:12 87:2

| | | | |
|---|---|---|---|
| 124:21 | sheryn 2:23 | signature | small 120:10,10 |
| separately | shift 73:7 | 121:14 136:20 | 133:5 |
| 46:17 48:3 | short 4:5 5:8 | signed 70:25 | smoking 116:5 |
| 99:2 | 10:3 12:16 | 121:16 125:16 | snow 2:17 |
| september | 105:12 | significant | 101:9,21 103:9 |
| 107:25 | show 21:2 | 48:17 112:12 | 104:15 106:5 |
| series 67:23 | 30:17 31:7 | signing 65:14 | 106:17 107:17 |
| serve 113:25 | 43:13,14 59:17 | 71:24 78:17 | 107:20 111:9 |
| served 7:20,22 | 61:6,15 63:14 | 84:1,3,5 85:16 | 112:3 117:16 |
| serves 29:10 | 69:23 84:13 | 125:12,13 | 117:17 118:6 |
| 60:24 | 85:1 87:3 | sills 2:8,12 | 119:24 120:4 |
| services 36:5,6 | 91:25 94:21 | similar 39:8 | 120:18 121:22 |
| 60:23 118:11 | 95:15,16 99:14 | similarly 66:20 | 124:10 125:4 |
| 118:18 120:14 | 111:24 120:19 | 103:4 | 126:9,19 |
| serving 50:2 | showing 59:1,5 | simple 73:19 | 128:12,15,19 |
| set 4:6 59:15,18 | 60:19 61:4,10 | simply 10:16 | 129:13,16 |
| 60:20 61:16 | 61:13 77:5 | 15:7 30:17 | 130:3,17,22 |
| 91:8 92:21,21 | 79:21 88:1,1 | 126:5 | 131:2 132:5,15 |
| 94:9 96:14 | 89:22 117:10 | single 33:2 | 132:17 133:19 |
| 126:19 127:9 | shown 120:11 | 61:18 82:17 | 133:25 134:24 |
| 132:6 136:8 | 124:14 | 112:20 116:6 | somebody 37:6 |
| sets 17:10 | shows 118:15 | 118:10,13 | somebody's |
| 60:19 61:16 | 125:6 | 130:24 | 60:15 |
| 69:25 | side 13:10 | sit 39:20 41:3 | someone's |
| setting 17:7 | 16:13 25:21 | 52:13 | 73:20 |
| 61:7 | 34:8,18 53:14 | sits 120:5 | somewhat |
| seven 112:25 | 100:25 114:21 | sitting 48:14 | 40:19 |
| several 3:4 | 126:16 131:6 | 75:11 | sorry 120:4 |
| 42:23 104:16 | sides 132:2 | six 63:17 | sort 13:2 15:3 |
| shake 126:15 | sidetracked 7:4 | 101:15 109:19 | 43:24 61:3 |
| shaking 131:5 | sign 84:22 | 112:25 113:1 | 65:25 66:3 |
| shampoo 77:18 | 86:23 87:3 | 126:6 127:4,4 | 76:20 95:8,13 |
| share 94:5 | 119:23 120:24 | slice 131:25 | 134:3 |
| sheet 23:3 | signatory | slightly 40:24 | sorts 23:9 |
| | 121:18 | | 80:25 |

sought  20:23
sound  12:8
south  123:6
sp  1:8 62:7
  93:20,23
spaces  112:21
speak  15:3
  43:20 70:10
  100:24 102:3
  106:5 117:12
speaking  28:23
specific  7:25
  40:12 73:8
  75:8 87:25
  104:8 105:7
specifically  7:2
  8:9 24:17 42:3
  45:11 46:15
  49:12 53:14
  56:13 69:21
  71:9 75:8
  102:18 108:1
  126:24 134:1
specifics
  102:18 105:13
  108:2
specified  103:6
spell  97:7
spend  71:11
  76:11 135:4
spending  78:19
spent  59:6,23
split  112:22
spoke  102:13

sporadic  57:20
spotlighted
  18:21
squarely  61:21
stage  9:3
stake  87:7
stand  77:16,25
  78:6 93:5
  95:19 96:20
standard  5:16
  23:7,10 36:8
  124:14
standpoint
  102:24
stands  26:16
start  9:13
  31:18 49:9,15
  49:23 86:5,18
  87:6,14 97:24
  113:19 121:12
  126:11 127:17
  128:6 129:17
started  8:22
  10:1 26:19
  27:22 56:13
  101:13 103:13
  106:16
starting  24:16
  86:6 107:24
starts  129:25
state  1:16
  136:4
stated  123:11
statement
  29:20

statements
  123:13
states  1:1 112:8
stating  85:19
statute  66:21
  67:1 69:3
stay  89:25
steal  72:18
  84:16
stealing  97:12
steals  78:3 83:3
stelara  6:13,14
  24:19 25:11
  42:2 43:9
  53:15 55:3
  56:7,12,22
  57:11 68:8,20
  86:24 104:21
  121:2,24
stenographic
  1:12 136:6
steps  27:6,23
  28:9
stop  61:25
  74:16
story  77:25
  80:18,22 81:3
  81:5
stranger  45:8
strategic  130:6
strategy  99:3
string  19:5
strongly  76:17
stuff  100:8

subject  7:8
  12:18,25 21:9
  21:22 22:8
  23:1 26:10
  28:21 30:10
  33:24 39:4
  43:8,10 53:10
  59:7 63:5,9
  68:12 72:8
  80:14 83:13
subjects  41:12
submission
  12:24 16:12,15
  100:16
submit  15:14
  19:25 100:23
submitted
  21:10 100:12
subpoena  47:4
subpoenaed
  51:7
subsequent
  122:24
subsidiary
  74:24
substantial  3:8
  13:1 59:20
substitute  7:12
success  64:16
succinctly
  112:18
suddenly  109:4
sufficient  87:9
suggest  92:9
  133:11

**suggests** 72:22
118:14
**suit** 66:4
**summarize**
99:25
**summarized**
102:12
**summarizing**
100:16
**summary** 12:18
93:1
**summer** 63:10
**sun** 61:19
**supplemental**
100:15
**support** 5:17
10:4 26:22
29:24 59:6,19
74:10 75:10
94:22
**supports** 90:12
90:15 116:9
**suppose** 45:17
**supposed** 3:24
**sure** 7:18 9:16
13:13,25 17:23
29:18 33:22
35:25 36:11
39:5 46:4
57:24 58:11
69:3 72:13
74:17 75:6
113:20 122:9
124:2

**surprised** 58:7
**sworn** 136:7
**system** 10:1
15:1
**systems** 1:5

**t**

**t** 123:19 136:1
136:1
**t&c's** 6:8,13,15
6:22
**table** 4:6
126:16
**tables** 4:19
**tailor** 8:22
**tailored** 8:20
54:3 69:14
**take** 9:12 27:6
27:22 28:12
46:5 70:23
71:12 79:12
83:5,16 84:1
99:19 106:10
108:18 113:11
118:2,7 125:21
131:18 132:3
134:9
**taken** 1:14 4:12
10:21 53:23
94:4 95:22
99:23 131:15
136:12
**talk** 6:19 8:8
13:22 14:21
16:6 24:13
25:25 30:15

34:2 45:19
54:3 58:9
67:12 69:11
72:5 76:19
105:18,20
127:17 128:7
129:2
**talked** 3:19
62:1 76:13
**talking** 5:23
10:9 11:10
19:21 27:18,20
32:12 33:10,12
34:18 38:16
40:10 45:8
65:12,18,19
66:5,7,8,14
90:14 109:21
117:8 121:22
123:4,5
**talks** 35:5 85:3
85:5
**targeted** 93:23
**team** 120:5
133:6,6
**teams** 81:24,24
**tee** 15:12
**tell** 16:17 24:4
45:12 63:23
66:6 77:25
79:2 86:17
88:2 92:3
**telling** 12:7
**tells** 11:13

**term** 4:17 7:25
9:2 10:22
12:21 18:7,23
21:23 23:10
28:25 30:16
36:8 55:25
56:4,5,17
103:6 104:8,13
104:18,19
107:23 111:5
**terminated**
26:23
**terms** 3:12,18
3:22 4:23,24
5:12,15,16,24
5:25 6:9,18
7:21,24 9:22
10:21 16:8,11
16:13,22 17:3
17:9,10,12,15
18:8 19:5,9,19
20:2,3,21 21:6
21:6,22 22:4,8
22:11,18 23:4
23:4,7 25:13
25:17,18,19,22
26:1,11,15,25
27:9,24 29:21
32:20,22,24
33:17,19,22
34:1,17,21,21
34:25 35:16,19
36:9,22,23
37:2,7,25
38:10,13,17

Case 2:22-cv-02263-KS-CCW Document 236 Filed 06/10/24 Page 182 of 270 Page ID: Page 46955

| | | | |
|---|---|---|---|
| 39:10,13,16 | 135:3,6 | 28:9,16 30:25 | 119:21,24 |
| 40:2,4,13,14,19 | **theory** 79:16,18 | 31:4,18 34:1 | 120:9,18 |
| 40:24 41:4,13 | 93:9 96:7 | 37:14 40:13 | 123:23 125:11 |
| 42:2,6,10,15 | 97:17 116:9 | 41:12,20 42:13 | 126:2,12 127:6 |
| 43:9,13 44:1 | **thicket** 68:24 | 42:18 43:18,19 | 128:5 130:10 |
| 49:12 53:1,12 | **thing** 29:9 | 44:2 49:5,22 | 131:14 133:10 |
| 53:16,17,25 | 54:19 58:16 | 54:1 55:2,18 | 134:12 |
| 54:3,15,20,25 | 79:10,24 101:7 | 55:19,22 56:4 | **thinks** 34:8 |
| 55:22 57:10,16 | 105:21 | 56:19 57:14,15 | **third** 2:19 |
| 57:17,20 58:1 | **things** 3:14 7:6 | 58:16 59:23 | 46:21 47:4,9 |
| 58:5,5 59:18 | 9:4 10:25 17:7 | 60:7,9 61:20 | 49:2,11 51:5 |
| 61:24 62:8 | 17:22 18:16 | 62:13,23 63:1 | 51:15,18,22,24 |
| 67:17 71:4 | 21:8 22:1,22 | 63:23 64:3 | 52:3 53:7,9 |
| 74:6 77:14 | 23:22 25:15 | 67:4,9,11 | 54:14,25 55:8 |
| 78:3,25 79:19 | 26:8 27:17 | 69:15,21 70:11 | 66:2 110:18 |
| 82:13 83:7 | 28:5,15,21 | 72:1 75:8,23 | 116:5,10 |
| 101:18,21 | 29:7 32:10 | 76:18 77:12,21 | 132:19,20,21 |
| 104:2,21 105:2 | 34:16 35:12 | 78:5 80:21 | **thirds** 22:5 |
| 107:6,16,19,21 | 38:2 58:21 | 82:7,9 86:6,15 | **thought** 10:24 |
| 108:1,11,18 | 60:3 62:9 | 86:16,21 87:8 | 12:5 20:17 |
| 109:22 110:1,5 | 65:13,19 67:24 | 88:23 89:15,21 | 24:5 31:23 |
| 110:9,21 111:8 | 68:6 73:13 | 90:2,4,6 92:15 | 96:1 100:3 |
| 111:10 114:5 | 92:22 94:10 | 94:13,14 95:24 | 103:13 109:14 |
| 116:22 118:12 | 129:1 | 96:24 98:1 | 126:25 |
| 118:18 120:14 | **think** 4:7 5:22 | 99:10,13 100:2 | **thousands** 4:22 |
| 120:25 128:9 | 6:6,23 7:1,6,9 | 100:13,23 | 22:10 48:16 |
| 128:23 129:11 | 8:2,6,13 9:17 | 101:1,6,16,23 | **thread** 131:2 |
| 132:6,9,12 | 9:23 12:12 | 103:17 104:2 | **threat** 66:21,24 |
| 134:23 | 13:4,16 15:23 | 105:10 106:17 | **threaten** 60:4 |
| **test** 30:19,20 | 15:25 16:7,10 | 107:1,5 111:16 | 61:11 |
| **testimony** 77:5 | 17:2,13,15,19 | 112:8,11,17,19 | **threatens** 60:7 |
| **text** 112:20 | 18:4,23 19:1 | 113:2,4 115:12 | **three** 22:5 |
| **thank** 41:24 | 19:15 20:14 | 115:14 116:3 | 55:20 133:6 |
| 88:17 129:13 | 21:1,10,18,25 | 117:3,10 | **tied** 32:9 78:22 |
| 130:1 134:25 | 24:11 26:6,7 | 118:19,23 | |

| | | | |
|---|---|---|---|
| **ties** 88:3 | **told** 22:15,16 | **tremfya** 6:13 | **turn** 3:17 11:9 |
| **tim** 102:10,11 | 32:14,21,22,22 | 6:15 24:19 | 20:7 24:9 |
| **time** 4:19 5:18 | 63:11 102:5 | 25:11 42:2 | 58:15 113:11 |
| 5:20 8:19 10:7 | 117:11 | 43:9,13 53:16 | **turned** 107:10 |
| 10:9,12,22 | **tons** 98:3 | 55:3 56:8,12 | **turning** 66:16 |
| 11:5,21 14:22 | **took** 31:16 | 56:22 57:11 | 117:24 130:10 |
| 14:25 15:1,5 | 32:19 43:24 | 68:20 104:21 | 132:15 |
| 19:24 21:16 | 63:16 99:25 | 121:3,24 | **turns** 7:24 |
| 22:12 24:9 | 104:11 105:23 | **trial** 12:19 | **two** 4:5 6:11,18 |
| 25:9 27:25 | 106:19 | 21:13 22:3 | 17:17 21:8,25 |
| 30:22 31:15 | **tool** 50:9 64:20 | 32:10 46:20,24 | 22:5 24:19,22 |
| 33:9 34:14 | **tools** 36:8 | 47:1,3,5,6 49:3 | 24:25 27:17 |
| 35:5 36:19 | **top** 116:7 118:6 | 49:12 51:7 | 32:21 42:10 |
| 37:6 38:14 | **topic** 6:24 16:3 | 56:10 69:6 | 44:3,7 49:21 |
| 40:21 44:24,24 | 80:6 | 84:12 92:25 | 54:9 55:18 |
| 52:2 55:19,23 | **tortious** 36:3 | 96:20 116:1 | 60:9 62:3,6 |
| 55:24 56:1 | **tortiously** | 118:21,23,25 | 65:25 77:3 |
| 57:18 58:2,20 | 18:18 | 119:6 125:19 | 98:13 101:21 |
| 79:14 90:19 | **totally** 12:13 | **tried** 7:11 10:3 | 103:18 106:5 |
| 92:13 103:16 | 58:7 73:13 | 32:18 | 107:21 127:18 |
| 105:2 108:11 | 74:1 80:13 | **true** 26:9 78:5 | 131:12 |
| 110:18 113:7 | **touch** 28:24,25 | 82:9 85:19 | **tyler** 2:4 |
| 128:19,20 | **towards** 17:8 | 94:13 117:1 | **type** 72:6,7 |
| 132:3,7,8 | **tracks** 7:2 | 128:4 132:25 | **types** 79:1 |
| 135:4 | **transcript** 1:6 | 136:5 | 113:21 |
| **times** 53:20 | 1:12 33:3 | **try** 3:15 26:20 | |
| 88:1 118:24 | 126:10,17,21 | 27:10 37:3 | **u** |
| **today** 3:2 8:8 | 126:23 127:13 | 81:18 90:18 | **ultimately** |
| 13:23 14:3 | 127:15 136:6 | 104:10 | 102:15 104:6 |
| 16:18 55:16 | **transparency** | **trying** 9:21 | 104:10,15 |
| 64:23 92:24 | 89:8 90:8 | 35:21 76:2 | 106:19 107:9 |
| 97:4 100:20 | 91:14,21 93:24 | 77:16 90:9 | 112:22 127:4 |
| 115:24 118:24 | **tremendous** | 96:17 110:24 | 127:23 133:9 |
| 126:12 | 80:25 | 121:18 127:19 | **uncontrovers...** |
| | | 133:21 | 5:16 |

| | | v | w |
|---|---|---|---|
| **undecided** | **understands** | **values** 90:12 | **w** 123:19 |
| 112:5 | 5:15 102:13 | **various** 23:21 | 132:21 |
| **under** 3:25 | **understood** | 27:19 38:18 | **wait** 56:25 84:3 |
| 19:6 60:16 | 33:20 57:22 | 39:10 63:19 | 127:13 |
| 61:13,19 77:15 | 134:5 | 81:18 | **waldor** 3:5 |
| 87:21 | **undertake** 48:3 | **vasquez's** | 13:10 22:15 |
| **underlying** | **undertaken** | 18:19 | 31:1 32:21 |
| 39:12 65:20 | 45:11 | **vast** 80:12 | 37:8 40:17 |
| **underscore** | **ungerleider** | **vazquez** 62:1 | 41:2 43:16,23 |
| 78:24 | 1:14 136:3,20 | 65:18 | 63:11 81:10 |
| **underscores** | **unique** 114:24 | **vazquez's** | 87:24 101:14 |
| 100:14 | **unit** 52:17 | 12:15 | 101:24 102:1 |
| **understand** | **united** 1:1 | **vendor** 21:12 | 102:13,21 |
| 18:1 19:8,10 | **universe** | **verbatim** 81:8 | 103:6 104:11 |
| 19:11,14,25 | 132:11 | **versus** 15:25 | 104:17 108:17 |
| 23:12 28:16,17 | **unusual** 48:4 | **viability** 60:4,8 | 109:9 110:15 |
| 33:7 35:21 | **update** 5:3 59:4 | 61:11 62:18,18 | 110:16 111:17 |
| 36:17,21,22 | **updated** 43:15 | 64:5,11 67:24 | 111:24 112:7 |
| 38:6 41:22 | **updates** 130:8 | 68:4,15 69:2 | 112:18,22,22 |
| 43:25 56:24 | **updating** 5:4,5 | 69:10,13,23 | 113:24 114:9 |
| 58:17 67:19 | **use** 7:11 35:16 | 119:11 | 124:23 125:24 |
| 69:24 75:17 | 36:9 46:19 | **view** 26:24 41:1 | 126:25 127:5 |
| 87:6 105:21 | 50:14 128:11 | **vigilant** 39:9 | **waldor's** 26:14 |
| 109:10 128:24 | 133:22 | **violate** 27:24 | 27:14 56:2,23 |
| 129:9 | **used** 4:23 5:16 | 118:12,18 | **want** 3:15 7:5 |
| **understanding** | 6:9 9:2 10:23 | 120:14 | 8:20 9:12 |
| 3:21 5:11 6:10 | 23:3,8,8 36:20 | **virtually** 73:21 | 13:17,17 14:3 |
| 8:18,22 16:21 | 42:15 76:21 | **virtue** 21:19 | 14:9,17 16:18 |
| 19:23 28:10 | 78:4 110:6 | **voluntarily** | 17:23 18:1 |
| 34:15,23,24 | 128:20 | 26:13 | 19:14 20:7 |
| 35:14,23 38:17 | **uses** 22:12 | **vs** 1:7 | 21:21 23:12,15 |
| 38:20 40:10 | **using** 40:14 | | 23:19 24:1,3 |
| 56:2 98:20 | 53:1 96:10 | | 28:8,14 33:8 |
| 104:21 132:24 | **usually** 122:12 | | 35:9,11,15 |
| 133:15 | | | |

36:19,21 39:9
41:15 49:16
51:3,14 55:8
55:16 56:15
57:24 62:11
64:2 65:16
67:9,12,14
68:9 69:8
70:17 74:14
75:1,19 77:25
78:6 80:6
81:21 82:18
86:5 87:6,7,15
91:22 93:7
94:15 96:15
97:18,23 98:15
98:19 99:19
100:7,23
103:24 105:20
108:9 111:4
112:2 117:12
117:18 118:8
124:24,25
125:20,24
127:24 128:6
128:10 129:2
131:12
**wanted** 3:4
34:11 38:3
63:11 104:1
105:14
**wants** 50:15
84:12 85:12
100:10 131:25

**way** 8:9 17:5
18:10 22:7,11
28:13 29:12
33:23 35:10
38:15 61:4,10
62:2 66:25
74:13 75:23
79:9 80:15
85:9 90:9 92:7
93:2 94:2
118:1 128:5
**wayne** 2:24
102:3,5 130:1
**ways** 122:10
133:21
**we've** 9:7 22:23
38:21,24 42:23
58:25 59:5,19
92:18,19
104:16 109:25
110:6,13
112:14 113:5
115:22 116:12
120:18 122:25
129:6,14
134:21
**webb** 2:4
**website** 89:10
91:15
**wednesday**
1:18 13:24
**week** 13:24
14:3,4 41:16
42:21 83:3
84:17 101:8

103:12
**weeks** 3:4
68:20,24
**weighing** 15:24
105:15
**welcomed**
124:2
**went** 16:12
40:22 48:25
104:11 105:10
112:21
**white** 111:14
112:13 113:19
113:24 114:13
114:13,17,21
115:8,12,17
117:4 118:16
119:4,17
120:17 121:8
121:14,17
124:19 125:15
128:10 134:15
134:22
**white's** 125:14
**wide** 80:8,25
91:19
**willing** 25:22
**wind** 45:15
**window** 104:24
**winds** 78:11
**withheld** 45:2
46:12 124:6
**witness** 136:7
**wohlforth** 2:20

**wolfson** 2:2 3:1
4:7,13 7:18 8:7
8:15,23 9:10
10:14 13:6,21
13:25 14:2,8
14:11,15,20
15:6,15,18
16:16,24 17:19
18:4,22 19:17
23:11,24 27:15
29:16,23 30:3
30:7,25 33:2,6
34:5,10 35:9
36:13 37:11,19
37:22 39:1,6
40:8 41:3,25
43:1 44:9
45:25 46:18
47:7 48:24
49:19 51:3
52:10,25 53:4
53:9 54:7,12
54:18,23 55:2
55:15 57:1
58:9,14 59:25
61:25 63:13,23
65:10 66:12
68:2 69:8 70:4
72:13 74:14,18
75:12 76:14
77:20 79:2,19
80:1 81:14
82:1 83:23
84:19 85:13,22
85:25 86:3,9

| | | |
|---|---|---|
| 86:14,18 88:13 | 134:5,20 135:1 | **written** 32:23 |
| 88:18,21,25 | 135:7 | **wrong** 44:19 |
| 89:4 91:4,12 | **wondering** | 83:5,6 |
| 91:22 92:4,17 | 74:19 | **wrote** 129:21 |
| 92:23 93:6,10 | **word** 22:12,13 | **x** |
| 94:15,19,24 | 23:3 35:6 | |
| 95:2,24 96:23 | 36:20 132:20 | **x** 80:8 |
| 97:2,9,14 | **words** 37:5 | **xio0115** 136:21 |
| 98:17 99:19,22 | 45:11 | **xio1634** 136:21 |
| 99:24 100:19 | **work** 35:13 | **y** |
| 101:4,6,11,23 | 39:25 40:3 | |
| 102:10 103:20 | 44:22 47:16,18 | **yeah** 14:20 |
| 105:5,25 | 48:8,20,20 | 55:15 62:20 |
| 106:10,13 | 50:4 51:2,2 | 65:10 66:12 |
| 107:11,18 | 52:7 61:23 | 76:14 85:7 |
| 108:7,13,21 | 81:23 102:20 | 87:10 91:12 |
| 109:17,24 | 105:14 116:1 | 94:19 112:16 |
| 110:3,8,20 | 118:21 125:10 | 113:18 119:16 |
| 111:7,11 | 132:12 | 127:22 129:11 |
| 112:15 113:4 | **worked** 44:5 | **year** 24:22 |
| 113:18 115:5 | 133:4 | 27:13 57:8 |
| 117:16 118:5 | **working** 8:5 | 63:17 94:1 |
| 119:16 120:3 | 43:6 45:14 | 95:12 |
| 120:16 121:10 | 50:1 107:3 | **years** 10:5,12 |
| 122:7,18 | 129:22 130:5 | 13:3 39:22 |
| 123:16,20 | 132:19,21 | 92:2 109:20 |
| 124:22 125:20 | **works** 17:5 | **york** 2:5,5,13 |
| 126:13,20 | **world** 33:17 | 2:13,16,16,20 |
| 127:12 128:2 | 54:22 64:15 | 2:20 |
| 128:14,17,22 | 110:23 111:5 | **z** |
| 129:14,24 | **worried** 109:18 | |
| 130:14,20 | **worse** 68:18 | **z** 123:19 |
| 131:1,4,18 | **write** 129:1 | **zoom** 2:10 3:3 |
| 132:8,16 | **writing** 129:7 | 41:18 |
| 133:18,23 | | |

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

# EXHIBIT 2

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

December 28, 2023

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

        Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
               **No. 2:22-cv-02632 (ES) (CLW)**

Dear Special Master Wolfson:

      Defendant Save On SP, LLC ("**SaveOn**") submits this letter pursuant to Your Honor's

request during the status conference on December 21, 2023.

      The November 7 Order did not decide SaveOn's motion to compel Plaintiff Johnson &

Johnson Health Care Systems, Inc. (with its affiliates, "**J&J**") to designate additional custodians

as to five custodians. Dkt No. 165.[1] As SaveOn noted in the December 21 conference, after it

---

[1] The Court's November 7, 2023 Order required J&J to add six of seven custodians identified in
that Order. Dkt No. 173 at 2. Where the Court denied requests for relief in the November 7 Order,
it did so explicitly. Dkt. No. 173 at 2 ("SaveOn's request for relief set forth in Docket Entry No.
162 is DENIED"). In addressing SaveOn's motion regarding additional custodians, in contrast, the

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                    Page 2

submitted its motion, J&J and third parties produced additional documents confirming the rele-

vance of four of those custodians: Scott White, Blasine Penkowski, Karen Lade, and Juliette

Deshaies.

This new evidence demonstrates that:

- **White** and **Penkowski** discussed whether SaveOn's services purportedly violate
  CarePath's terms and conditions—which goes to J&J's understanding of those
  provisions (which J&J unilaterally drafted), the disputed meaning of which is at
  the heart of J&J's claim that SaveOn induced plan members to violate them.

- **Lade** was involved with telling patients about accumulators, maximizers, and
  SaveOn in 2018 but did not tell them that those services violated CarePath's terms
  and conditions—which goes to J&J's claim that SaveOn's conduct violates those
  contract terms and SaveOn's defense that J&J's claim is a recently concocted,
  made-for-litigation position.

- **White** and **Penkowski** were counterparties for J&J on contracts with TrialCard,
  the J&J vendor that administered the CarePath Program, so had authority over
  CarePath's payments to patients via TrialCard—which goes to J&J's allegations
  that SaveOn caused it to make increased payments that injured it and threatened
  CarePath's financial viability and to SaveOn's defenses that J&J's own CarePath
  budget was the cause of these payments (not SaveOn) and that J&J could continue

---

Court stated that it "will require" J&J to add six additional custodians but said nothing regarding
the other five requested custodians.

making CarePath payments.

- **Penkowski** and **Lade** were involved with J&J's earliest formulation of a response to SaveOn's services—which goes to SaveOn's defense that J&J could have reduced or stopped payments to patients on SaveOn-advised plans but did not, thus failing to mitigate J&J's damages.

- **White** and **Deshaies** know that CarePath is a marketing program that generates a return for J&J by selling more drugs and raising drug prices (by making patients less cost sensitive to drug costs)—which goes to SaveOn's defenses that SaveOn's conduct does not threaten CarePath's financial viability, and that helping more patients enroll in CarePath financially benefits J&J (offsetting some or all of its alleged injury and damages), and any harm to CarePath is a commercial harm and not a public harm under the GBL.

The details follow.

**White** and **Penkowski** met with third party Archbow Consulting in January 2022, a few months before J&J filed this lawsuit, ███████████████████████████████████ ███████████████████████████████. The document that shows this, Exhibit 1 (ARCHBOW_000443),[2] produced by Archbow, is the earliest document produced from before the filing of this lawsuit that reflects any understanding by J&J that SaveOn purportedly induced

---

[2] Archbow produced this document on October 30, 2023 following the Court conference on SaveOn's motion. ███████████████████████████████████████

breaches of CarePath's terms and conditions. The document's context strongly indicates that this

was a made-for-litigation position. It is relevant when and why White and Penkowski formed that

understanding on behalf of J&J, which they then shared outside of J&J.

**White** played key roles with CarePath's budget and J&J's "investment" in that program.



Ex. 2 (TRIAL-

CARD_00002367).[3]

Ex. 3

(JJHCS_00140480) (attaching Ex. 4 (JJHCS_00140485)).[4]

Ex. 4

(JJHCS_00140485) (emphasis added).                                    for

drugs at issue, (i) countering allegations that SaveOn's conduct caused it to pay more in CarePath

funds, Compl. ¶¶ 23, 115, and (ii) undermining any suggestion that SaveOn threatens CarePath's

financial viability, *id.* ¶ 114. They also show that CarePath is a marketing program, countering

J&J's claim that harm to CarePath is a public harm, necessary to its GBL claim. Compl. ¶¶ 113-

15.

---

[3] All documents with the Bates TRIALCARD_ cited in this letter were produced by TrialCard on October 27, 2023—after the submission of SaveOn's motion to compel.

[4] All documents cited from J&J's production, with the Bates JJHCS_, were produced by J&J on December 22, 2023.

**Penkowski** was integral to J&J's response to accumulators, maximizers, and SaveOn as early as May of 2018—four years before the filing of this lawsuit.[5] ██████████████

████████████████████████████████████████████████████████████

██ Ex. 6 (JJHCS_00140929); *see also* Ex. 7 (JJHCS_00142063) (████████████

██████████████████████████████).

████████████████████████████████████████████████████████████

██████████████████████████. Ex. 8 (TRIALCARD_00002400). But, █████████████

███████████████████████████████ countering J&J's allegation that

it believed such members were ineligible for CarePath. *See* Compl. ¶¶ 48, 108, and illustrating

J&J's failure to mitigate its purported damages. Aff. Defs. ¶¶ 24-29.

████████████████████████████████████████████████████████████

████████████████████████████. Ex. 9 (TRIALCARD_00003383); Ex. 10

(JJHCS_00142033). ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████. Ex. 9 (TRIAL-

CARD_00003383). Among other things, █████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ *Id.* at -384. This indicates that █████████████████████

████████████████ which tend to disprove J&J's allegations that SaveOn's conduct harms plan

---

[5] ████████████████████████████████████████████████████████ Ex. 5
(JJHCS_00142781).

members, Compl. ¶ 114, and that the so-called "SaveOnSP Program" is different from plan ben-efit design, Compl. ¶¶ 1, 3. Further, it bolsters SaveOn's defense that J&J failed to mitigate its damages, Aff. Defs. ¶¶ 24-29.

**Lade** was involved with J&J's response to accumulators, maximizers, and SaveOn at least early as May of 2017—and apparently did ***not*** believe that SaveOn's services violated CarePath's terms and conditions in 2018.



Ex. 11 at -360 (JJHCS_00141359).

*Id.* This shows that J&J was fully aware of accumulator and maximizer programs but decided not to reduce its CarePath budget, failing to mitigate its purported damages, Aff. Defs. ¶¶ 27-28,

, *see, e.g.*, Ex. 12 (JJHCS_00144460) (at-taching Ex. 13 (JJHCS_00144463)), counter to J&Js allegations, *see* Compl. ¶¶ 48, 108.

Ex. 13 (JJHCS_00144463). This is directly contrary to J&J's allegations that SaveOn could set those terms. Compl. ¶¶ 3, 10.

**Deshaies** helped formulate J&J's response to accumulators and maximizers,



. Ex. 14 (JJHCS_00141440) (attaching Ex. 15 (JJHCS_00141442)). ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ Ex. 15 (JJHCS_00141442). J&J has alleged that copay assistance is to benefit the patient, not a marketing program, Compl. ¶¶ 113-15, ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮.

These documents confirm the relevance of these four individuals, whom the Special Master should compel J&J to designate as custodians, running all agreed or ordered search terms from April 1, 2016 to November 7, 2023. SaveOn stands on its prior motion as to Ernie Knewitz.

SaveOn appreciates the Court's attention to this matter.

Respectfully submitted,

/s/ E. Evans Wohlforth, Jr.
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Hon. Freda L. Wolfson                                                               Page 8

> David Elsberg (admitted *pro hac vice*)
> Andrew R. Dunlap (admitted *pro hac vice*)
> Meredith Nelson (admitted *pro hac vice*)
> Elizabeth H. Snow (admitted *pro hac vice*)
> SELENDY GAY ELSBERG PLLC
> 1290 Avenue of the Americas
> New York, NY 10104
> (212) 390-9000
> deslberg@selendygay.com
> adunlap@selendygay.com
> mnelson@selendygay.com
> esnow@selendygay.com
>
> *Attorneys for Defendant Save On SP, LLC*

# EXHIBIT 3

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

January 16, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

> Re: ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
> **No. 2:22-cv-02632 (ES) (CLW)**

Dear Special Master Wolfson:

      On behalf of Defendant Save On SP LLC ("**SaveOn**"), we write to ask you to compel Plaintiff Johnson & Johnson Health Care Systems, Inc. (with its affiliates, "**J&J**") to fully comply with that portion of the Court's November 7, 2023 Order compelling J&J to add six additional document custodians and to run previously-agreed or ordered search terms over their documents. Dkt No. 173 at 2. Contrary to the Order, while J&J agreed to add the custodians, it refuses to run all search terms over their documents.

      SaveOn moved the Court "to compel JJHCS to add the above twelve custodians and run ***all*** agreed-upon or Court-ordered search terms and any future agreed-upon or Court-ordered search terms over their files." Dkt No. 165 at 15 (emphasis added). On November 7, 2023, Judge

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Waldor granted that motion as to six of seven custodians, without limitation.[1] Yet J&J refuses

run all search terms during the current discovery period of April 1, 2016 to November 7, 2023

for those custodians, saying it will instead run only two search terms related to its CAP program

and only from January 1, 2022 to November 7, 2023. Ex. 1 (January 8-12, 2024 Email Chain).

J&J's position is baseless. It argues that a different part of the Order, compelling it to run

three search terms related to its CAP program (the "CAP terms")[2] for all custodians from July 1,

2022 to October 30, 2023, Dkt. No. 166 at 5, somehow limits its searches for the six new custo-

dians to those same restricted terms and time period. Ex. 1 (January 8-12, 2024 Email Chain).

Not so. SaveOn's motion for new custodians, Dkt. No. 165, and its motion for the CAP terms,

Dkt No. 166, were separate. Judge Waldor resolved them separately. *Compare* Dkt. 173 at 2

(ruling "with regard to SaveOnSp's request for relief as set forth in Docket Entry No. 165") *with*

*id.* at 2-3 ("resolv[ing] the issues set forth in Docket Entry No. 166"). J&J has no basis to conflate

the two; the Court's ruling on SaveOn's custodians motion stands on its own.

SaveOn's custodian motion asked that J&J run *all* search terms for new custodians, Dkt.

165 at 15, and Judge Waldor granted that motion as to the six custodians without limitation, Dkt

No. 173 at 2. Judge Waldor separately imposed a time period starting in 2022 for the CAP terms,

Dkt. 173 at 2-3, because SaveOn sought a similar time period in its CAP terms motion, Dkt. No.

166 at 5, but SaveOn sought no such limit in its custodians motion, Dkt. 165 at 15, and Judge

Waldor imposed none. Where the Court imposed time limits, Dkt. 173 at 2-3 (setting "temporal

scope" of CAP terms), or denied relief, *id.* at 2 ("SaveOnSP's request for relief set forth in Docket

---

[1] The parties agreed to add the following six custodians: Quinton Kinne, Daphne Longbothum, William Shontz, Alison Barklage, John Hoffman, and L.D. Platt.

[2] The terms are: "CAPm" OR "CAPa" OR "adjustment program." Dkt No. 166 at 5.

Entry No. 162 is DENIED"), it did so expressly, but it did not do so here.

Even were the Order ambiguous (it is not), there is no basis to limit searches for these custodians to the CAP terms or to exclude documents before 2022. J&J does not represent that these individuals' relevant work was only on the CAP program and only in that time period. *See* Dkt. No. 165 at 22-25. In its custodians motion, to the contrary, SaveOn cited evidence of their broader relevance. *See, e.g.,* Dkt. No. 165 at 8-13 (█████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████).

Unsurprisingly, then, these custodians have relevant documents that do not contain the CAP terms that J&J says it will use. Shontz, for instance, ██████████████████████████████ ██████████████████████████████████████████████████████████████. Ex. 2 (JJHCS_00002339) ("██████████████████████████████████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████ ████████). This is strong evidence that J&J never believed that the existing CarePath language proscribed SaveOn, devastating to the tortious interference claim. Solely running the terms "CAPa," "CAPm," or "adjustment program," would exclude this plainly relevant email. So too would it exclude ██████████████████████████████████, Ex. 3 (JJHCS_00011226), and ██████████████████████████████████ Ex. 4 (JJHCS_00001206), both of which demonstrate J&J's awareness of how SaveOn works and go towards SaveOn's mitigation defense. Aff. Defs. ¶¶ 24-29. J&J has no basis to restrict its searches of the custodians'

Hon. Freda L. Wolfson                                                                Page 4

documents to the three CAP terms.

These custodians also have relevant documents from before 2022, the date from which

J&J declares it will begin running its searches. ███████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████. Dkt. No. 165 Ex. 126 (JJHCS_00069171);

Compl. ¶¶ 93, 96, 102. ███████████████████████████████████████████████████████

████████████████████████████████████████ for a J&J drug at issue in this case. Ex.

5 (JJHCS_00104963); Compl. ¶ 91. ███████████████████████████████████████████

████████████████████████████. Ex. 6 (JJHCS_00142275). █████████████████████

██████████████████████████ Ex. 7 (ARCHBOW_000436), and ███████████████████

███████████████████████████████████. Ex. 8 (JJHCS_00156513). Such docu-

ments concerning cost support and J&J's responses to accumulators and maximizers go to J&J's

damages and SaveOn's mitigation affirmative defense. *See* Aff. Defs. ¶¶ 24-29. J&J has no basis

to exclude the six custodians' documents from before 2022.

SaveOn thus respectfully requests that, consistent with the Order, Your Honor compel

J&J to run all agreed-upon or court-ordered search terms for Shontz, Hoffman, Barklage, Long-

bothum, Kinne, Platt for the full discovery timer period of April 1, 2016 to November 7, 2023.

SaveOn appreciates the Court's attention to this matter.

Respectfully submitted,

/s/ E. Evans Wohlforth
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

4

Hon. Freda L. Wolfson                                                                 Page 5

> David Elsberg (admitted *pro hac vice*)
> Andrew R. Dunlap (admitted *pro hac vice*)
> Meredith Nelson (admitted *pro hac vice*)
> Elizabeth H. Snow (admitted *pro hac vice*)
> SELENDY GAY ELSBERG PLLC
> 1290 Avenue of the Americas
> New York, NY 10104
> (212) 390-9000
> deslberg@selendygay.com
> adunlap@selendygay.com
> mnelson@selendygay.com
> esnow@selendygay.com
>
> *Attorneys for Defendant Save On SP, LLC*

# EXHIBIT 4



www.pbwt.com

December 22, 2023

Julia Long
(212) 336-2878

**BY EMAIL**

Elizabeth Snow, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re: *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*,
2:23-cv-02632 (ES) (CLW)

Dear Elizabeth:

   We write in response to your December 15, 2023 letter concerning our November 27, 2023 meet and confer, and further to our November 28 letter on the same topic.

**I.  SaveOnSP's Requests as to Terms & Conditions and Financial Information**

   In its December 15, 2023 letter, SaveOnSP asserts that "[n]othing in the Court's Order required SaveOnSP to further limit its request [on terms and conditions] as JJHCS suggests." Dec. 15, 2023 Letter from E. Snow to J. Long at 2. This assertion is refuted by the plain text of the Court's Order and Judge Waldor's direction at the October 30, 2023 conference. The Court's November 7, 2023 Order admonished SaveOnSP "to narrow the scope of its requests" with respect to "Docket Entry Nos. 146 (regarding CarePath terms and conditions) and 150 (seeking financial information and data on patient drug adherence)." ECF No. 173 at 1. Indeed, at the conference, Judge Waldor made clear that SaveOnSP ignored prior instructions from March 2023 "to review and modify [its requests related to terms and conditions] so that [SaveOnSP] [wasn't] asking for everything in the world." Oct. 30, 2023 Tr. at 43:2-5.

   As you know, Judge Wolfson has directed SaveOnSP to provide JJHCS with narrowed requests as to both the terms and conditions and the financial information by Tuesday, December 26. In our call with Judge Wolfson, we were surprised to hear SaveOnSP assert that such a letter already was sent to JJHCS. The letter to which SaveOnSP appeared to refer during our call with Judge Wolfson did not narrow SaveOnSP's requests with respect to the terms and conditions requests, or even mention the financial information requests. In any event, JJHCS will promptly review SaveOnSP's narrowed requests when they are received. Please provide your availability to meet and confer so that the parties can discuss any remaining issues in advance of the January 24 conference before Judge Wolfson.

Elizabeth Snow, Esq.
December 22, 2023
Page 2

## II.   CAP Custodians

As you know, Judge Waldor's November 7 Order resolved SaveOnSP's motion requesting the addition of "CAP" custodians, i.e., individuals that SaveOnSP claimed were relevant due to their purported involvement in the CAP program.  Pursuant to that Order, Judge Waldor directed JJHCS to add six of the seven "CAP" custodians and further directed the parties to "meet and confer regarding the *identities* of the additional custodians and *to work out any necessary logistics*."  ECF No. 173 at 2 (emphasis added).  Judge Waldor further directed the parties to fashion "a search designed to capture documents wherein the terms 'CAP A', 'CAP M', or 'adjustment program' (or reasonable variations of those terms) are found in the same documents as the term 'SaveOn' (or reasonable variations / abbreviations)."  ECF. No. 173 at 2-3.

JJHCS has complied with that order.  *First*, following the November 27, 2023 meet and confer, JJHCS accepted SaveOnSP's proposal that JJHCS add Kinne, Longbothom, Shontz, Barklage, Hoffman, and Platt as CAP custodians.  *See* Nov. 28, 2023 Letter from J. Long to M. Nelson at 2.  *Second*, JJHCS also proposed two search strings for those custodians designed to conform specifically to the text of the November 7 Order and to capture documents related to the CAP program:

- ("CAPa" OR "CAPm" OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (case sensitive)

Despite JJHCS's strict compliance with Judge Waldor's instruction, SaveOnSP now claims that "only using the two search strings listed [above]" would purportedly "violate the Court's Order."  Dec. 15, 2023 Letter from E. Snow to J. Long at 1.  Apparently dissatisfied with the ruling and refusing to follow it, SaveOnSP even suggests that the "[t]he Court granted SaveOnSP's motion as to the six CAP custodians "without limitation as to time periods or search terms."  Dec. 15, 2023 Letter from E. Snow to J. Long at 1-2.  This argument has no support in the text of Judge Waldor's Order, and JJHCS declines to accept it.  Indeed, SaveOnSP's own motion to compel the addition of these custodians concedes that JJHCS's CAP program was not created until "in or around 2021."  ECF No. 165 at 7.  SaveOnSP cites to no authority in support of its characterization of Judge Waldor's order, because no such support exists.  Contrary to SaveOnSP's insistence, the November 7 Order only requires the parties to "work out any necessary logistics" concerning the additional custodians.  ECF No. 173 at 2.  JJHCS remains available to do so.

## III.   Document Refresh

JJHCS is fully complying with the Court's November 7 Order that calls for a "update" of "discovery responses (including productions), *without limitation*, through the date of this Order[.]"  ECF No. 173 at 3 (emphasis in original).  JJHCS already has begun to update its collection and review of documents—from both custodial and noncustodial sources—through November 7, 2023 using the parties' agreed-upon search parameters.   JJHCS intends to

Elizabeth Snow, Esq.
December 22, 2023
Page 3

substantially complete its production of these documents by the end of January 2024. Consistent with Judge Waldor's order and Judge Wolfson's further instruction at the December 21 conference, JJHCS also intends to supplement its Interrogatory responses. JJHCS will do so by the end of January 2024, as Judge Wolfson proposed, subject to SaveOnSP's confirmation that it will do the same. Please confirm.

We also address below several specific aspects of the "refresh" portion of Judge Waldor's order.

### A.   JJHCS Search Terms and Noncustodial Collections

In its December 15, 2023 letter, SaveOnSP requests confirmation that JJHCS will run "at a minimum" the search terms listed in Exhibit 1 to that letter. As outlined below, SaveOnSP's exhibit contains at least three errors. A corrected list of search terms that JJHCS has agreed to run appears in **Appendix 1** to this letter.

*First*, SaveOnSP's Exhibit 1 implies that JJHCS agreed to add Silas Martin as a full custodian. This is incorrect. As JJHCS has twice clarified, JJHCS ran specific search terms over Silas Martin's documents to satisfy its discovery obligations as to RFP No. 20. *See* Sept. 6, 2023 Letter from E. Shane to E. Snow at 2; Sept. 11, 2023 Letter from J. Long to E. Snow at 8. As part of JJHCS's ongoing refresh, JJHCS will re-run those Martin-specific search terms from July 2, 2022 to November 7, 2023. *See* Appendix 1.

*Second*, SaveOnSP's Exhibit 1 also incorrectly suggests that JJHCS agreed to run three Silas Martin-specific search terms over all custodians.[1] As outlined in the same September 6, 2023 letter, JJHCS agreed to run the following terms "over Silas Martin's custodial data, to satisfy its discovery obligations as to RFP No. 20." At no point did JJHCS agree to run these terms over other existing JJHCS custodians, and we will not do so.

*Third*, as noted above, SaveOnSP's Exhibit 1 ignores the Court's November 7 Order with respect to the "CAP" search terms. Prior to the October 30 conference, in an effort to avoid motions practice on the issue, JJHCS agreed to run the search string "CAPa" OR "CAPm"

---

[1] The three terms are as follows:

- (accumulator* OR maximizer* OR copay OR co-pay OR CAP) w/25 (impact* OR effect* OR patient* OR equity)

- (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit" OR NEHB* OR "Affordable Care Act" OR ACA OR Obamacare) w/25 (report* OR article* OR post* OR "white paper" OR WP OR analy* OR sponsor* OR partner*)

- (IQVIA OR Excenda OR "Analysis Group" OR Xcenda OR "The Eagle Force") w/25 (accumulator* OR maximizer* OR copay OR co-pay OR CAP)

Elizabeth Snow, Esq.
December 22, 2023
Page 4

or "adjustment program," without a SaveOnSP limitation, as to the then-existing custodians for
the time period April 1, 2016 to July 1, 2022. *See* ECF No. 166 at 8. SaveOnSP then moved to
compel JJHCS to "review documents from July 1, 2022 through October 30, 2023 hit by the search
'CAPm' OR 'CAPa' OR 'adjustment program.'" *Id.* at 5. As you know, the Court denied this
request and instead directed JJHCS to review documents wherein the terms "CAPa" OR "CAPm"
or "adjustment program" "***are found in the same documents as the term 'SaveOn' (or reasonable
variations / abbreviations)***." ECF No. 173 at 2-3 (emphasis added).

        In light of the Court's Order, we will run the two search terms as set forth above in
bullets in Section II, for the period January 1, 2022 through November 7, 2023, for both the new
"CAP" custodians and previously agreed-upon JJHCS custodians.[2] A complete list of the search
terms that JJHCS has agreed to run appears in Appendix 1.

        As to other categories of collections, including those from noncustodial sources,
JJHCS reiterates that it will refresh its production of those documents and data consistent with
JJHCS's prior representations and agreements between the parties. To the extent that SaveOnSP's
Exhibit 2 attempts to expand the scope of these productions, JJHCS rejects that expanded scope.
The Court's November 7 Order is clear: the order directs the parties to update discovery responses,
including noncustodial productions, through the date of the Order, and otherwise does not expand
the scope of either party's existing requests. *See* ECF No. 173 at 3.

**B.**      **SaveOnSP's Search Terms and Noncustodial Collections**

        As you know, the November 7 Order required "both parties [to] update their
discovery responses (including productions), *without limitation*" through the date of the Order.
*See* ECF No. 173 at 3 (emphasis in original). In the November 28 letter, JJHCS requested that
SaveOnSP confirm that: (1) SaveOnSP has completed a full collection of every custodian's
documents through November 7, 2023; (2) SaveOnSP will supplement its production of
documents using all previously agreed upon search terms for all previously agreed-upon
SaveOnSP custodians through that date; and (3) SaveOnSP is making every effort to produce these
documents expeditiously, so that the parties can complete fact discovery—including fact witness
depositions—by April 25, 2024.

        SaveOnSP has refused to do so. Instead, in its December 15 letter, SaveOnSP
asserts that "***[s]ubject to JJHCS's confirmation of its production parameters***, SaveOnSP will

---

[2] Consistent with its representations to SaveOnSP and the Court, JJHCS will continue to run the term
("CAPa" OR "CAPm" OR "adjustment program") for previously agreed-upon custodians (Lindsey
Anderson, Spilios Asimakopoulos, John Franz, Evelyn Hall, Brandon Jeffcoat, John King, Jeremy Mann,
Katie Mazuk, Silviya McCool, Hattie McKelvey, Adrienne Minecci, Lauren Pennington, William Robinson
III, Nidhi Saxena, Heather Schoenly, Carol Scholz, and Jasmeet Singh) for the period April 1, 2016 to July
1, 2022. *See* Dec. 1, 2023 Letter from J. Long to E. Snow at 1.

Elizabeth Snow, Esq.
December 22, 2023
Page 5

refresh its production running the search terms on Exhibit 4 for the custodians listed on that Exhibit through November 7."  Dec. 15, 2023 Letter from E. Snow to J. Long at 2 (emphasis added).

At the outset, it is not appropriate for SaveOnSP to condition its compliance with the Court's November 7 Order on anything, let alone "JJHCS's confirmation of its production parameters," including, e.g., demands that JJHCS "identify how many documents [JJHCS's] terms generate for review."  *Id.*  SaveOnSP's equivocation is especially troubling given Judge Waldor's instruction that both parties update their "discovery responses . . . *without limitation*[.]"  *See* ECF No. 173 at 3 (emphasis in original).  Just as in the case of its motion relating to the so-called "Janssen Interrogatories" (ECF No. 162), SaveOnSP has incorrectly described the Court's order and then insisted that JJHCS comply with an order that does not exist.  JJHCS will not do so.

Additionally, based on yesterday's colloquy between SaveOnSP and Judge Wolfson, we understand that SaveOnSP understands its obligation to update *all* of its discovery, including its production of documents and data collected from non-custodial sources.  But to ensure that the record is clear, by January 5, 2023, please confirm that SaveOnSP will refresh its collection of documents listed in **Appendix 2** to this letter, including *inter alia* updating SaveOnSP's productions of its business plans and claims data through November 7, 2023.  SaveOnSP also produced several categories of information for the time period April 1, 2016 to July 1, 2022, including SaveOnSP's patient list, call notes, client list, terminated client list, and drug lists.  Please confirm that SaveOnSP will comply with Judge Waldor's order to update these discovery responses through November 7, 2023 as well.  *See* Appendix 2.

Finally, SaveOnSP's Exhibit 4 omits nineteen search terms and phrases which SaveOnSP previously agreed to run through its custodial documents, including emails, text messages, mobile data, Chatter, Teams messages, hard drive data, and personal email collections, consistent with the Court's prior orders and SaveOnSP's prior representations.  *See* ECF No. 144. The search terms with missing phrases appears in red font below.

- ("don't" OR "not" OR allowed OR never OR permit OR "can't" OR cannot) W/5 (mention OR disclose OR say OR inform* OR divulge) W/15 (SaveOn OR SaveOnSP OR SOSP OR Save On OR manufacturer* OR mfgr* OR program)

- (avoid* OR conceal*) AND (co-insurance OR variable OR copay OR "co-pay")

- (Business w/15 plan) OR "Business plan"

- (copay* OR co-pay* OR coins* OR co-ins* OR "cost share") W/15 (zero OR 0 OR $0 OR "no cost" OR "free of charge")

- (counter* OR strateg* OR "course correct" OR "bypass" OR respon* OR solution OR solv*) W/25 (manufacturer OR mfgr* OR Biogen OR Abbvie OR Amgen OR Vertex OR Exelixis OR Takeda OR Sanofi OR Novartis)

Elizabeth Snow, Esq.
December 22, 2023
Page 6

- (detect* OR evade* OR avoid* OR hide OR conceal*) AND (manufacturer OR mfgr* OR Biogen OR Abbvie OR Amgen OR Vertex OR Exelixis OR Takeda OR Sanofi OR Novartis)

- (detect* OR evade* OR hide OR conceal*) AND (co-insurance OR coinsurance OR variable)

- (manufacturer OR mfgr* OR Biogen OR Abbvie OR Amgen OR Vertex OR Exelixis OR Takeda OR Sanofi OR Novartis) w/25 (maximizer* OR accumulator* OR reduce* OR modif* OR change*)

- (Premera AND ("drug list" OR list)) W/25 (Janssen OR JJHCS OR Erleada OR Simponi OR Stelara OR Tremfya OR Zytiga)[3]

- (Premera AND (remove OR change)) W/25 (Janssen OR JJHCS OR Erleada OR Simponi OR Stelara OR Tremfya OR Zytiga)[4]

- "@express-scripts.com"[5]

- "@notionpartners.com"

- "strategy plan" OR (strategy /15 plan) OR "monthly plan" OR (monthly /15 plan) OR "transition plan" OR (growth /15 plan)

- Cobicistat

- Darunavir

- Emitricitabine

- manufacturer* w/10 (maximizer* OR accumulator*)

- Tenofovir Alafenamide

---

[3] SaveOnSP agreed to run this term over Melanie Jerred's custodial documents from July 1, 2022 to October 1, 2023.

[4] SaveOnSP also agreed to run this term over Melanie Jerred's custodial documents from July 1, 2022 to October 1, 2023.

[5] For the period December 2015 through August 31, 2016. Unless otherwise noted, the terms listed above do not have a date limitation that was more narrow than the previously applicable time period of April 1, 2016 to July 1, 2022.

Elizabeth Snow, Esq.
December 22, 2023
Page 7

- **UPTRAVI OR selexipag**

Please promptly confirm that (1) SaveOnSP did in fact run all of the terms listed in **Appendix 3** to this letter, as agreed by the parties, for the period April 1, 2016 to July 1, 2022; (2) SaveOnSP did in fact substantially complete production of all non-privileged, responsive documents hitting on all of these terms for the original time period; and (3) SaveOnSP will use this full set of terms for the purposes of its refresh collection.

*       *       *       *

Please respond by January 5, 2023.  We remain available to meet and confer.

Very truly yours,

*/s/ Julia Long*
Julia Long

14734540

# APPENDIX 1

## JJHCS Search Terms[6]

### Search Terms for JJHCS Existing Custodians

- **Custodians**:  Lindsey Anderson, Spilios Asimakopoulos, John Franz, Evelyn Hall, Brandon Jeffcoat, John King, Jeremy Mann, Katie Mazuk, Silviya McCool, Hattie McKelvey, Adrienne Minecci, Lauren Pennington, William Robinson III, Nidhi Saxena, Heather Schoenly, Carol Scholz, and Jasmeet Singh

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB*

- (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate)

- "This program offer may not be used with any other coupon, discount, prescription savings card, free trial, or other offer"

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- "Save On" *(case sensitive)*

- "other offer" w/5 (accumulat* OR maximiz* OR "health plan*" OR insur*)

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

- (essential OR nonessential OR non-essential OR "non essential") w/50 ("Affordable Care Act" OR ACA OR Obamacare)

- (Fein OR Pembroke OR Adam OR "Drug Channels") AND afein@drugchannels.net AND (SaveOnSP OR accumulat* OR maximiz*)

- CAPa OR CAPm OR "adjustment program"[7]

---

[6] Unless otherwise noted, the time period applicable for the terms is April 1, 2016 to November 7, 2023.

[7] JJHCS agreed to run this term for April 1, 2016 to July 1, 2022 period only.

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)[8]

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" *(case sensitive)*[9]

## Search Terms for "CAP" Custodians

- **Custodians**: Quinton Kinne, Daphne Longbothum, Allison Barklage, John Hoffman, William Shontz, and L.D. Platt

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)[10]

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" *(case sensitive)*[11]

## Silas Martin Search Terms

- **Custodians**: Silas Martin

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP

- (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit" OR NEHB* OR "Affordable Care Act" OR ACA OR Obamacare) w/25 (report* OR article* OR post* OR "white paper" OR WP OR analy* OR sponsor* OR partner*)

- (accumulator* OR maximizer* OR copay OR co-pay OR CAP) w/25 (impact* OR effect* OR patient* OR equity)

- (IQVIA OR Excenda OR "Analysis Group" OR Xcenda OR "The Eagle Force") w/25 (accumulator* OR maximizer* OR copay OR co-pay OR CAP)

---

[8] January 1, 2022 to November 7, 2023.

[9] January 1, 2022 to November 7, 2023.

[10] January 1, 2022 to November 7, 2023.

[11] January 1, 2022 to November 7, 2023.

## APPENDIX 2

### SaveOnSP's Non-Custodial Collections

- Documents sufficient to show SaveOnSP's organizational structure, including organization charts

- SalesForce records for members of SaveOnSP-advised plans who were prescribed at least one Janssen Drug

- Data responsive to Request for Production No. 41:  (1) manufacturer; (2) brand name; (3) national drug code; (4) recipient of manufacturer assistance; (5) patient identifier; (6) pharmacy for relevant drug fill; (7) pharmacy address; (8) prescription number; (9) prescription fill date; (10) number of unites; (11) days of supply; (12) unit of measure; (13) copay or coinsurance amount; (14) patient names; (15) patient dates of birth; (16) patient TrialCard enrollment numbers; and (17) Patient Identifier (Cardholder ID)

- Data responsive to Request for Production No. 42:  (1) pharmacy name; (2) pharmacy address; (3) patient identification; (4) patient state of residence; (5) identifier of whether patient is on a SaveOnSP Program; (6) insurance/health plan name; (7) insurance/health plan member ID; (8) health/insurance plan group name; (9) insurance/health plan group number; (11) product description; (12) NDC; (13) product form; (14) product strength; (15) number of units; (16) days of supply; (17) unit of measure; (18) date of prescription fill; (19) patient copayment; (20) patient coinsurance payment; (21) patient deductible payment; (22) copay coupon/manufacturer assistance amount applied to the prescription cost; (23) patient names; (24) patient dates of birth; (25) patient TrialCard enrollment numbers; and (26) Patient Identifier (Cardholder ID)

- All agreements between SaveOnSP and Express Scripts or related entities

- List of patients who were entered into SaveOnSP's system and were prescribed at least one Janssen Drug (the "Patient List")

- List of SaveOnSP's call center locations

- List of clients who engaged SaveOnSP's services

- Final versions of Annual Reviews

- Documents sufficient to show the identities of patients whose claims were put on hold or rejected because the patient was not enrolled in the SaveOnSP program

- Documents sufficient to show the identities of patients whose claims were put on hold or rejected because the patient was not enrolled in the SaveOnSP program, but whose claim was later permitted to proceed after that patient was enrolled

- SaveOnSP's operating agreements and any amendments thereto

14734540

- SaveOnSP's business plans and "business plan-like" documents, including any draft business plans

- Breakwall Holdings LLC's operating agreements

- Video and audio recordings of training sessions, including daily "huddle" sessions

- All SaveOnSP Drug Lists

- Documents or data received from third parties as part of a formal production or otherwise

- All Master Services Agreements between ESI, SaveOnSP, and Prime Therapeutics

- List of former clients who terminated their agreements with SaveOnSP

- SaveOnSP Privacy and Data Security Policy

- May 2023 Updated Confidentiality and Nondisclosure Policy

# APPENDIX 3

## SaveOnSP Search Terms[12]

- "Project Recapture" OR "Rescue Study" OR "adherence data"

- "zero cost share" OR "$0 cost share"

- (("transfer*" OR reject* OR POS OR "point of sale" OR step edit*) W/15 pharm*) OR "Error Code 73" OR ((drug* OR med* OR fill*) W/15 (cover*))

- ((essential OR "non-essential" OR nonessential) W/10 (benefit*)) OR EHB* OR NEHB*

- ((patient* OR chang* OR mov* OR switch*) W/30 (new W/5 (drug* OR med* OR brand*)))

- ((SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP) w/15 ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen)) w/5 (revenue OR sales OR profits OR "return on investment" OR "ROI")

- ("don't" OR "not" OR allowed OR never OR permit OR "can't" OR cannot) W/5 (mention OR disclose OR say OR inform* OR divulge) W/15 (SaveOn OR SaveOnSP OR SOSP OR Save On OR manufacturer* OR mfgr* OR program)

- (Accredo OR "accredo.com") W/30 (agr* OR contract OR memor* OR fee* OR shar* OR relat*)

- (adher* OR complian* OR comply* OR discontinue*) W/10 (trend* OR rate* or stat*)

- (avoid* OR conceal*) AND (co-insurance OR variable OR copay OR "co-pay")

- (Business w/15 plan) OR "Business plan"

- (chang* or edit*) W/25 website

- (copay* OR co-pay* OR coins* OR co-ins* OR "cost share" OR "specialty med*" OR "specialty drug*" OR biolog* OR infus*) W/15 (OR transfer* OR reduc* OR saving*)

- (copay* OR co-pay* OR coins* OR co-ins* OR "cost share") W/15 (zero OR 0 OR $0 OR "no cost" OR "free of charge")

---

[12] Unless otherwise noted, these time period applicable for these terms is April 1, 2016 to November 7, 2023.

14734540

- (copay* OR co-pay* OR coins* OR co-ins* OR "out of pocket" OR OOP OR bucket* OR "ingredient cost") W/30 (infla* OR increase)

- (counter* OR strateg* OR "course correct" OR "bypass" OR respon* OR solution OR solv*) W/25 (manufacturer OR mfgr* OR Biogen OR Abbvie OR Amgen OR Vertex OR Exelixis OR Takeda OR Sanofi OR Novartis)

- (detect* OR evade* OR avoid* OR hide OR conceal*) AND (manufacturer OR mfgr* OR Biogen OR Abbvie OR Amgen OR Vertex OR Exelixis OR Takeda OR Sanofi OR Novartis)

- (detect* OR evade* OR avoid* OR hide OR conceal*) W/15 (manufacturer*)

- (detect* OR evade* OR hide OR conceal*) AND (co-insurance OR coinsurance OR variable)

- (ESI OR "Express Scripts" OR Evernorth) w/15 (fee* OR ((master w/2 agreement) OR assistance OR "copay card" OR "co-pay card" OR "savings card" OR enroll* OR accumulat* OR maximiz*))

- (exhaust* OR drain* OR complain*) w/ 15 (co-pay OR copay* OR support* OR cover*)

- (FirstView OR "First View") w/10 card

- (FirstView OR "First View") AND (credit w/2 card)

- (inc* W/10 (save* OR saving*) W/15 manuf* OR assist*

- (inclu* OR add* OR remov* OR Structure) W/10 (benefit* OR "drug list*")

- (manufacturer OR mfgr* OR Biogen OR Abbvie OR Amgen OR Vertex OR Exelixis OR Takeda OR Sanofi OR Novartis) w/25 (maximizer* OR accumulator* OR reduce* OR modif* OR change*)

- (Passthrough OR pass through* OR pass thru OR passthru OR passthrus)

- (patient* OR member*) W/5 (adher* OR complian* OR comply* OR discontinu*)

- (Premera AND ("drug list" OR list)) W/25 (Janssen OR JJHCS OR Erleada OR Simponi OR Stelara OR Tremfya OR Zytiga)[13]

---

[13] SaveOnSP agreed to run this term over Melanie Jerred's custodial documents from July 1, 2022 to October 1, 2023.

- (Premera AND (remove OR change)) W/25 (Janssen OR JJHCS OR Erleada OR Simponi OR Stelara OR Tremfya OR Zytiga)[14]

- (therap* or drug* OR medication) w/15 (adhere* OR continu* OR discontinu*)

- (therap* OR drug* OR medication) w/15 (transition OR "same class" OR "same category")

- "@express-scripts.com"[15]

- "@notionpartners.com"

- "Affordable Care Act" OR ACA

- "DARZALEX FASPRO" OR DARZALEX OR daratumumab OR hyaluronidase*

- "Intergovernmental Personnel Benefit Cooperative" OR IPBC OR (Rachel W/2 Harmon) OR rharmon@expressscripts.com OR ((presentation OR training OR video) W/5 (ESI OR "Express Scripts"))

- "Johnson & Johnson" OR "Johnson and Johnson"

- "Lash Group"

- "non-med* switch*" OR "nonmed* switch*" OR ((patient OR non-med*OR nonmed*) W/15 switch*) OR "switch rationale" OR "switch card" OR "economic switch*" OR (("force* or mandate*) w/5 switch*")"

- "open enrollment" OR ((summar* OR term) W/30 (program* OR plan* OR benefit* OR coverage* OR coinsurance OR deductible OR OOP OR "out-of-pocket"))

- "SaveOnSP Program Impacted" OR (Premera W/15 (article OR alert* OR news*)) OR ("close*" W/15 ("business OR "customer*"))

- "strategic steering committee" OR "steering committee" OR (strateg* w/10 (monthly OR meet*))

- "strategy plan" OR (strategy /15 plan) OR "monthly plan" OR (monthly /15 plan) OR "transition plan" OR (growth /15 plan)

- "Summary of Benefits"

---

[14] SaveOnSP agreed to run this term over Melanie Jerred's custodial documents from July 1, 2022 to October 1, 2023.

[15] For the period December 2015 through August 31, 2016. Unless otherwise noted, the terms listed above do not have a date limitation.

- "Summary Plan"

- Accredo W/15 (transfer* OR assistance OR "savings card" OR "copay card" OR "co-pay card" OR enroll* OR accumulat* OR maximiz*)

- analy* OR "white paper*" OR "research" OR report* OR publication* OR review* OR article* OR study OR studies W/15 "specialty med*" OR "specialty drug*" OR biolog* OR infus* or accumul* OR maximizer* OR copay* OR co-pay* OR coins* OR co-ins*

- BALVERSA OR erdafitinib

- benchmark* /10 (plan OR state OR EHB OR essential* OR NEHB or nonessential* OR non-essential*)

- bi-weekly W/2 (call* OR meeting*)

- care W/2 path

- CarePath OR Carpath OR Carepth

- <span style="color:red">Cobicistat</span>

- <span style="color:red">Darunavir</span>

- EJR AND emilyjreckinger@gmail.com

- email W/10 template

- <span style="color:red">Emitricitabine</span>

- ERLEADA OR apalutamide

- https://www.saveonsp.com* OR www.saveonsp.com* OR "reduce this exorbitant cost" OR "we offer an innovative specialty solution" OR "is committed to making expensive medications more affordable for companies" OR "modifying their plan design" OR "how will our plan see savings generated"

- IMBRUVICA OR ibrutinib

- its.jnj.com

- J&J or JNJ

- Janssen OR Jannsen OR Jansen OR Jannssen

- JJHCS OR JHCS or JJCHS OR JJHS

- manufacturer\* w/10 (maximizer\* OR accumulator\*)

- OPSUMIT OR macitentan

- Prezcobix

- QuestEx

- Reject\* w/2 73

- REMICADE OR infliximab

- RYBREVANT OR amivantamab\*

- SIMPONI OR golimumab

- STELARA OR ustekinumab

- structure\* W/4 (benefit\* OR "drug list\*")

- Symtuza

- Tenofovir Alafenamide

- TRACLEER OR bosentan

- TREMFYA OR guselkumab

- TrialCard OR "Trial Card"

- UPTRAVI OR selexipag

- Ventavis OR iloprost

- ZYTIGA OR abiraterone

# EXHIBIT 5



www.pbwt.com

February 14, 2024

Harry Sandick
Partner
(212) 336-2723
hsandick@pbwt.com

**By Email**

Hon. Freda L. Wolfson
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

　　　Re:　　**JJHCS's Opposition to SaveOnSP's February 7 Motion to Compel**
　　　　　　*Johnson and Johnson Health Care Systems, Inc. v. Save On SP, LLC*
　　　　　　**No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

　　　　　　On behalf of Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), we write in opposition to the February 7, 2024 letter motion by Defendant Save On SP, LLC ("SaveOnSP") seeking to "resolve a potential ambiguity" in the Court's November 7, 2023 Order (Dkt. No. 173). There is no ambiguity in the Court's Order. That Order directed JJHCS to fashion

> a search designed to capture documents wherein the terms 'CAP A,' 'CAP M,' or 'adjustment program' (or reasonable variations of those terms) are found in the same documents as the term 'SaveOn' (or reasonable variations / abbreviations).

　　　　　　There is nothing unclear about this instruction. In fact, as detailed below, SaveOnSP agreed **on the record** to accept the narrower string that the Court imposed. SaveOnSP should not be permitted to endlessly relitigate issues that the Court has ruled upon. Your Honor should deny SaveOnSP's motion and should leave Judge Waldor's clear ruling with respect to Dkt. No. 166 in place.

Hon. Freda L. Wolfson
February 14, 2024
Page 2

### I. Judge Waldor Directed JJHCS to Review Documents Wherein the Terms "CAP A," "CAP M," or "Adjustment Program" Appear in the Same Document as SaveOnSP

In its October motion, █████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████   *See* Dkt. No. 166.

At the October conference, Judge Waldor considered SaveOnSP's request for the July 1, 2022 to present time period, and ultimately compelled JJHCS to review only those documents that hit the terms "CAPa" OR "CAPm" OR "adjustment program" *and* "the term 'SaveOn' (or reasonable variations / abbreviations)."  Dkt. No. 173 at 2–3.[1]  At the conference, SaveOnSP counsel made the same arguments it now makes to Your Honor about whether JJHCS should only review documents that mention SaveOnSP.  SaveOnSP's counsel repeatedly argued against the inclusion of the SaveOnSP modifier.  First, SaveOnSP asked that the Court require JJHCS to review all documents with any reference to "maximizers" or "accumulators," regardless of whether those documents mentioned SaveOnSP.  *See* Oct. 30. Tr. at 101:20–22.  Then he argued that the term "*and* SaveOn" should be replaced with "*or* SaveOn," which would have broadened the scope of the search to include literally every document that mentioned SaveOnSP.  *See id.* at 102:2–3.

Rejecting SaveOnSP's arguments, Judge Waldor repeatedly and unequivocally declined to order JJHCS to review documents that did not mention SaveOnSP.  On at least three

---

[1] JJHCS has followed this ruling to the letter.  In fact, SaveOnSP has never once objected to the "reasonable variations" of the search terms JJHCS proposed months ago to fulfill its discovery obligations.  *See* JJHCS Exhibit A (Nov. 28, 2023 Ltr. from J. Long to M. Nelson at 2); JJHCS Exhibit B (Dec. 22, 2023 Ltr. from J. Long to E. Snow at 3–4).

Hon. Freda L. Wolfson
February 14, 2024
Page 3

occasions, she ordered that the SaveOn search term be used.  *See id.* at 101:10 ("THE COURT:

***I'm going to order that they search CAP A and CAP M and adjustment programs but related to***

***SaveOn.***"  (emphasis added)); *id.* 102:11–15 (rejecting SaveOnSP's request for "***or***" SaveOn); *id.*

102:24–103:4 (ruling that the documents must be "***[r]elated to SaveOn.  Qualified by SaveOn.***").

Judge Waldor similarly considered and ultimately rejected SaveOnSP's argument that, because

JJHCS employees "don't always use the word 'SaveOn' or 'SOSP'" and instead use the phrases

"ESI's maximizer" or "maximizer program[,]" those terms should be added to the CAP search

string.  *Id.* at 105:16–106:6.[2]

On the record and after lengthy argument before Judge Waldor, SaveOnSP's own

counsel agreed that documents "talking about SaveOn" would be "sufficient" for SaveOnSP's

motion:

> THE COURT: What was the agreement you suspect we might have arrive at?
>
> MR. ELSBERG: Yeah, so this is what I'm thinking, Your Honor. We could -- we could agree to do what counsel just said except instead of saying within the same sentence, ***I think it's fair to say SaveOn and variations on it, if it's in the same document, we should get the document, because it's talking about SaveOn***. It doesn't need to be in the sentence. It could be three paragraphs later. It could be the next page.
>
> THE COURT: Okay. That's an agreement. You've just agreed to that.
>
> MR. ELSBERG: And, Your Honor, I would then say I hope that's going to be sufficient. And --
>
> THE COURT: Well, I don't want to talk about what-ifs or tomorrow.

---

[2]  SaveOnSP's argument that the "***and*** SaveOn" term would not lead to review of certain documents is not new.  SaveOnSP presented this argument to Judge Waldor at the October 30 conference and Judge Waldor was unpersuaded.  *See* Oct. 30 Tr. at 101:10–108:23.

Hon. Freda L. Wolfson
February 14, 2024
Page 4

    MR. ELSBERG: Fine.

    THE COURT: And let's not get hyperbolic about anything in terms of what that's going to uncover and produce because ***the points that's really being [made] here is there's going to be a stop at some point. There is got to be.*** So let's just minimize -- minimize -- let's do the search that was suggested if CAP M and CAP A.

    MR. ELSBERG: And adjustment program.

    THE COURT: And adjustment programs.

    MR. ELSBERG: ***With variations of SaveOn in the document.***

    THE COURT: ***And that's an agreement. Right?*** Yes. Okay. Good.

    MR. ELSBERG: ***All right.*** Thank you, Your Honor.

Oct. 30 Tr. at 107:21–108:23 (emphasis added). SaveOnSP never sought clarification or timely moved for reconsideration of the issue before Judge Waldor, either immediately after the October 30, 2023 conference, or after Judge Waldor issued her order on November 7, 2023. Nor could it, given that it expressly agreed to accept that limitation. SaveOnSP's expansive reinterpretation of the Court's November 7 Order cannot be reconciled with the Court's November 7 Order, which is unambiguous.

        Nor should Your Honor credit SaveOnSP's claim that there is some internal inconsistency in Judge Waldor's order in light of her ruling that the parties needed to update their discovery responses through November 7. First, the November 7 Order (issued after the October 30 colloquy above) maintained the SaveOnSP limiter with respect to CAP, even as Judge Waldor ordered a full refresh. Second, if SaveOnSP truly believed these rulings created an "ambiguity," SaveOnSP had no reason to delay raising this issue for more than three months.

        We pause to note that this is not the first time that SaveOnSP has sought to relitigate Judge Waldor's prior orders based on incorrect and improbable interpretations of those orders.

Hon. Freda L. Wolfson
February 14, 2024
Page 5

Judge Waldor even recognized this at the October 30 conference—ironically, during SaveOnSP's argument on this same issue, when she correctly predicted that SaveOnSP would try to return to the well even after she rejected SaveOnSP's position. *See* Oct. 30 Tr. at 108:11–14 ("Let's not get hyperbolic about anything in terms of what that's going to uncover and produce because the point[] that's really being [made] here is there's going to be a stop at some point. There is got to be."). Yet, rather than heeding this admonition by Judge Waldor, SaveOnSP is simply now redirecting that same hyperbole to Your Honor. Your Honor should reject this approach to discovery and deny SaveOnSP's motion.

## II. There Is No Basis to Revisit Judge Waldor's Ruling

In the alternative, SaveOnSP claims that "documents produced since the October 30 conference would provide ample grounds to reconsider that decision." Despite the parties' having met and conferred on the "CAP" search terms several times, SaveOnSP never raised this argument with us. *See* JJHCS Exhibit C (Jan. 5, 2024 Ltr. from E. Snow to J. Long); JJHCS Exhibit D (Jan. 11, 2024 Ltr. from J. Long to E. Snow). Had SaveOnSP raised the "new evidence" with JJHCS prior to moving before Your Honor, JJHCS would have addressed the purported relevance of the documents SaveOnSP now claims are "highly relevant" to the parties' claims and defenses.

For example, although SaveOnSP claims that its requested search string is essential to capture documents like Exhibit 3, which ███████ █ █ ████████████████████████ ████████████████████████████████████████████ ██████ this is flatly incorrect. JJHCS already has agreed to produce—and indeed has produced—monthly "CAP Reporting" through November 7, 2023 from non-custodial sources.

Hon. Freda L. Wolfson
February 14, 2024
Page 6

*See* JJHCS Exhibit E (JJHCS_00139021) and JJHCS Exhibit F (JJHCS_00139023).  But even absent that agreement, the same documents would have been produced using the very search terms that Judge Waldor's November 7 Order is meant to capture, because since May 2022 these reports have expressly included the term "SaveOn SP," and so would be picked up by the search string Judge Waldor ordered.  *See* JJHCS Exhibit G (JJHCS_00000404) (███████████████████ ██████████████████████████████████████████████████).  In other words, the more recent versions of the same report would be captured by the term ordered by Judge Waldor in the November 7 Order.

SaveOnSP's exhibits also belie its claims of "ample" new evidence on this point to revisit Judge Waldor's directive.  There is nothing new about many of the documents on which SaveOnSP relies in its motion.  Despite SaveOnSP's protestations that new productions "since the October 30 conference" warrant revisiting the issue, JJHCS first produced versions of the "highly relevant" monthly CAP reporting in Exhibit G (JJHCS_00000404) on March 3, 2023, nearly a year ago.  SaveOnSP had every ability to review this production for seven months before Judge Waldor issued the November 7 Order.

SaveOnSP's remaining citations, relegated to a string cite in a footnote, fare no better.  SaveOnSP baldly claims that these documents are "relevant to mitigation and acquiescence" but makes no arguments about how these documents support their motion.  This omission is telling.  For example, Exhibit 4 (JJHCS_00142279) has nothing to do with the claims or defenses in this litigation ██████████████████████████████████ ███████████████████████████████████████████████████████████████

Hon. Freda L. Wolfson
February 14, 2024
Page 7

███████████████████   *See* Exhibit 4 (JJHCS_00142279).  It is thus of no consequence that this

document contains the search term "adjustment program" without a SaveOnSP limiter.

Similarly,  Exhibit  11  (JJHCS_00139311),  ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████   Simply put, nothing in Exhibit 11

supports SaveOnSP's purported defenses, nor does Exhibit 11 weigh in favor of additional search

terms.  Accordingly, Judge Waldor's "SaveOnSP" limiter should be kept in place, and the rulings

she made on this issue after extended oral argument should not be disturbed.

<div align="center">*     *     *</div>

Having produced more than 56,000 pages of documents (excluding those produced

in native formats) on CAP issues and the discovery refresh since December 22, 2023, JJHCS did

what it was ordered to do.  At the October 30 conference, as memorialized in the Court's November

7 Order, Judge Waldor directed JJHCS to run the search terms "CAPa" OR "CAPm" or

"adjustment program" to capture all documents also containing the term "SaveOnSP" (or

reasonable variations thereof).  There is no ambiguity in the Court's Order and no reason to re-

open an issue that Judge Waldor directly considered and decided.  SaveOnSP already agreed **on

the record** to accept the limitation that the Court imposed and should be held to its agreement.

We appreciate Your Honor's attention to this matter, and we are available to answer

any questions.

14915802

Hon. Freda L. Wolfson
February 14, 2024
Page 8

                                        Respectfully submitted,


                                        */s/ Harry Sandick*
                                        Harry Sandick

cc:     Counsel for SaveOnSP

**EXHIBITS 6-9**
**CONFIDENTIAL – FILED**
**UNDER SEAL**

# Exhibit 10

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Elizabeth Snow
Associate
212 390 9330
esnow@selendygay.com

January 29, 2024

**Via E-mail**

Julia Long
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jlong@pbwt.com

Re:  *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC* (Case No. 2:22-cv-02632-JKS-CLW)

Dear Julia,

We write to propose search terms for the custodians discussed at and ordered to be added at during the January 24, 2024 conference in front of Special Master Wolfson.

*First*, as to Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, Alison Barklage, and L.D. Platt, Judge Wolfson ordered SaveOn to propose a set of search terms that relate to the CAP program and to discussions regarding J&J's response to SaveOn, accumulators, and maximizers, Tr. at 107:1-111:10, to be run for the full discovery period of April 1, 2016 through November 7, 2023, *id*. 108:21-109:18. SaveOn proposes these terms in Exhibit 1.

*Second*, as to Scott White, Blasine Penkowski, and Karen Lade, Judge Wolfson ordered J&J to add them as custodians for the full time period and ordered SaveOn to propose targeted search terms for each new custodian. Tr. 128:9-129:13, 131:22-132:13. SaveOn's proposes these terms in Exhibits 2-4.

*Third*, as to Savaria Harris and Jennifer De Camara, Judge Wolfson ordered that J&J add them as custodian and ordered that SaveOn propose a set of search terms to be run over their communications with third parties from January 1, 2021 through November 7, 2023. Tr. 54:12-23. SaveOn proposes these terms in Exhibit 5.

Julia Long
January 29, 2024

   Please let us know by February 2, 2024 if J&J will agree to run these proposed search terms. If J&J objects to running any search term, please provide hit counts that identify the total number of unique documents identified by SaveOn's proposed terms, both individually and in the aggregate.

   We reserve all rights and are available to meet and confer.

Best,

/s/ Elizabeth Snow

Elizabeth H. Snow
Associate

# Exhibit 1

**JJHCS v. SaveOnSP**
Search Terms for Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, Alison Barklage, and L.D. Platt
Case No. 2:22-cv-02632-JKS-CLW

| Search Terms |
|---|
| "essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB* |
| (essential OR nonessential OR non-essential OR "non essential") w/50 ("Affordable Care Act" OR ACA OR Obamacare) |
| "Save On" (case sensitive) |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) |
| "other offer" W/5 (accumulat* OR maximiz*) |
| CAPa |
| CAPm |
| "adjustment program" |
| (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP) |
| ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*) |

# Exhibit 2

## JJHCS v. SaveOnSP
Search Terms for Scott White
Case No. 2:22-cv-02632-JKS-CLW

| Search Terms |
| --- |
| "Save On" (case sensitive) |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) |
| "CAPa" OR "CAPm" OR "adjustment program" |
| (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate) |
| ("TrialCard" OR "Trial Card" OR TC) AND ((statement* /5 work) OR "SOW*" OR contract*) AND (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR JCP OR "Savings Program" OR "WithMe" OR (with w/2 me)) |

# Exhibit 3

## JJHCS v. SaveOnSP
### Search Terms for Blaine Penkowski
### Case No. 2:22-cv-02632-JKS-CLW

| Search Terms |
| --- |
| "Save On" (case sensitive) |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) |
| "CAPa" OR "CAPm" OR "adjustment program" |
| (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate) |
| ("TrialCard" OR "Trial Card" OR TC) AND ((statement* /5 work) OR "SOW*" OR contract*) AND (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR JCP OR "Savings Program" OR "WithMe" OR (with w/2 me)) |
| (brand* OR finance* OR "SCG" OR (strategic /5 customer)) AND (accumulat* OR maximiz*) |
| ((lose* OR loss* OR (return w/4 investment) OR "ROI" OR (negative w/5 impact) OR (gross w/5 impact) OR (net w/5 impact) OR (GTN w/5 impact)) w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe")) AND ("Save On" OR Save-OnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR accumulat* OR maximiz*) |
| Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me)) |
| (($20,000 OR 20k OR $6,000 OR 6k) w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas*)) AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga) |

# Exhibit 4

## JJHCS v. SaveOnSP
### Search Terms for Karen Lade
Case No. 2:22-cv-02632-JKS-CLW

| Search Terms |
| --- |
| "Save On" (case sensitive) |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) |
| "CAPa" OR "CAPm" OR "adjustment program" |
| (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate) |
| (($20,000 OR 20k OR $6,000 OR 6k) w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas*)) AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga) |
| Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me)) |
| "other offer" w/5 (accumulat* OR maximiz* OR "health plan*" OR insur*) |
| (accumulator /5 prog*) |
| PBM* AND (copay* or co-pay*) AND deductible |
| (Max* /15 benefit*) AND ($20,000 OR $20K OR 20k) |

# Exhibit 5

## JJHCS v. SaveOnSP
Search Terms for Savaria Harris & Jennifer De Camara
Case No. 2:22-cv-02632-JKS-CLW

| Search Terms |
|---|
| "Save On" (case sensitive) |
| "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") |
| SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk" |
| ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) |
| (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) |
| "other offer" W/5 (accumulat* OR maximiz* OR "health plan*" OR insur*) |
| (eligib* or ineligib*) AND "out-of-pocket cost" |
| (maximiz* OR optimiz*) AND ($6,000 OR "maximum program benefit") |
| ($6,000 OR $6k OR 6k OR $9,100 OR $8,900 OR (OOP) OR (out-of-pocket)) AND (Stelara OR Tremfya) |
| (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") AND ((term* w/3 condition) OR "T&C" OR "TNC" OR "other offer") |
| ("coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*") AND (accumulat* OR maximiz* OR "health plan*" OR insur* OR OR Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program" OR program) |

# Exhibit 11



www.pbwt.com

February 15, 2024

Julia Long
(212) 336-2878

**VIA EMAIL**

Elizabeth H. Snow, Esq.
Selendy Gay, PLLC
1290 Avenue of the Americas
New York, NY 10104

               Re:     ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,***
                         ***2:23-cv-02632 (JKS) (CLW)***

Dear Elizabeth:

      We write in response to SaveOnSP's January 29, 2024 letter regarding search terms for the new custodians added during the January 24, 2024 conference before Judge Wolfson as well as new search terms for the "CAP" custodians.

    **I.**       **CAP Custodians**

      SaveOnSP's January 29 letter requests that JJHCS add thirteen search terms that it contends "relate to the CAP program" and concern "discussions regarding J&J's response to SaveOn, accumulators, and maximizers" for Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, Alison Barklage, and L.D. Platt (the "CAP" Custodians) for the period April 1, 2016 to November 7, 2023. *See* Jan. 29, 2024 Ltr. from E. Snow to J. Long at 1.

      SaveOnSP's proposed search terms go well beyond Judge Wolfson's order, which only required JJHCS to "use CAP-related search terms, including terms that capture discussions by the custodians prior to the creation of the CAP program." Dkt. No. 192 at 26. In keeping with the Court's order, JJHCS agrees to add the following search strings for the time period April 1, 2016 to November 7, 2023:

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*)

To the extent SaveOnSP also seeks the addition of the term "CAPa" OR "CAPm" OR "adjustment program," without a SaveOnSP limiter, this proposal is inconsistent with the Court's November 7, 2023 Order. (*See* Dkt. No. 173 at 2-3.) In addition, SaveOnSP now has made an additional motion

Elizabeth H. Snow, Esq.
February 15, 2024
Page 2

to Judge Wolfson to expand the scope of the November 7, 2023 Order. For the reasons discussed in JJHCS's opposition brief filed on February 14, SaveOnSP has no basis to relitigate the November 7, 2023 Order. For the avoidance of doubt, should Judge Wolfson expand the scope of the Court's November 7 Order with respect to the CAP search terms, JJHCS will adopt that application to the CAP custodians for the full time period as well.

        As a compromise, JJHCS is prepared to run the following terms:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- "Save On" (*case sensitive*)

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- "other offer" W/5 (accumulat* OR maximiz*)

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

        However, JJHCS declines to run the following search terms, which have no relation to JJHCS's CAP-related efforts. Indeed, SaveOnSP acknowledged the lack of any connection during the parties' February 12, 2024 meet and confer, when SaveOnSP claimed these terms describe SaveOnSP's "business model." As SaveOnSP well knows, the Court did not direct further discovery on that issue.

- "essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*

- (essential OR nonessential OR non-essential OR "non essential") w/50 ("Affordable Care Act" OR ACA OR Obamacare)

## II.      Scott White and Blasine Penkowski

        SaveOnSP's letter also requests search terms to be added with respect to two apex custodians, Scott White and Blasine Penkowski. As to Mr. White and Ms. Penkowski, JJHCS agrees to run the following terms:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- "Save On" (*case sensitive*)

Elizabeth H. Snow, Esq.
February 15, 2024
Page 3

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

- (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate)

JJHCS declines to run the "CAP" search term over Mr. White's and Ms. Penkowski's documents without a SaveOnSP limiter, for the reasons previously discussed, but will agree to run the following search strings for the full April 1, 2016 to November 7, 2023 period consistent with the Court's November 7 Order:

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*)

JJHCS also declines to run the following search terms over Mr. White's and Ms. Penkowski's documents, but will search for and produce final contracts and statements of work with Trial Card from non-custodial sources consistent with its January 29, 2024 responses and objections to SaveOnSP's discovery requests:

- ("TrialCard" OR "Trial Card" OR TC) AND ((statement* /5 work) OR "SOW*" OR contract*) AND (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR JCP OR "Savings Program" OR "WithMe" OR (with w/2 me))

Finally, JJHCS declines to add certain proposed financial-related terms, which SaveOnSP requested only as to Ms. Penkowski's documents. As outlined in JJHCS's February 8, 2024 letter, and as discussed during the parties' February 12, 2024 meet and confer, SaveOnSP's insistence that JJHCS produce these documents is inconsistent with Judge Wolfson's February 6, 2024 Order. For example, as to issues concerning CarePath's budget, Judge Wolfson concluded that "[JJHCS] has the better argument" and "communications of budgetary decisions are not relevant to Defendant's defenses or Plaintiff's claims." Dkt. No. 192 at 19. Similarly, as to issues related to return on investment (or "ROI"), Judge Wolfson unambiguously rejected SaveOnSP's arguments, finding that JJHCS's "alleged harm is not related to the profitability of any Janssen drugs. Put differently, even if J&J and its [affiliates] ultimately derive profits . . . from selling the drugs at issue, that fact does not disprove Plaintiff's alleged harm in this case, either to itself or to the public." *Id.* at 22.

Elizabeth H. Snow, Esq.
February 15, 2024
Page 4

      Accordingly, JJHCS will not run the following terms:

- (brand* OR finance* OR SCG OR (strategic w/5 customer)) AND (accumulat* OR maximiz*)

- ((lose* OR loss* OR (return w/4 investment) OR "ROI" OR (negative w/5 impact) OR (gross w/5 impact) OR (net w/5 impact) OR (GTN w/5 impact)) w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe")) AND ("Save On" OR Save-OnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR accumulat* OR maximiz*)

- Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me))

- (($20,000 OR 20k OR $6,000 OR 6k) w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas*)) AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga)

      As discussed during the parties' February 12, 2024 meet and confer, SaveOnSP's proposal of these terms demonstrates that SaveOnSP refuses to accept the Court's rulings on an issue already twice litigated—and on which JJHCS has twice prevailed. JJHCS will not provide hit counts for these searches, as they seek documents that are beyond the scope of what Judge Wolfson ordered. If SaveOnSP is willing to meet and confer in good-faith and to propose search terms related to the "small window" that Judge Wolfson opened with respect to budget and financials issues, JJHCS will run SaveOnSP's requested search terms and provide hit counts, as appropriate. *See* Feb. 8, 2024 Ltr. From J. Long to E. Snow at 2-3.

**III.**     **Karen Lade**

      SaveOnSP proposed thirteen search terms with respect to Ms. Lade's documents. JJHCS agrees to run the following search terms:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- "Save On" (*case sensitive*)

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

Elizabeth H. Snow, Esq.
February 15, 2024
Page 5

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

- (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate)

- "other offer" w/5 (accumulat* OR maximiz* OR "health plan*" OR insur*)

- accumulator w/5 prog*

    For the reasons cited above, JJHCS declines (1) to run the "CAP" search term over Ms. Lade's documents without a SaveOnSP limiter; and (2) to run financial-related search strings over Ms. Lade's documents.[1]  As with Mr. White and Ms. Penkowski, JJHCS agrees to run the following terms with respect to the CAP program for the April 1, 2016 to November 7, 2023 time period:

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*)

    As discussed at the parties' February 12, 2024 meet and confer, JJHCS will consider running two final Lade-specific search strings if those are modified to capture the documents SaveOnSP explained it was seeking.  JJHCS offers to run these modified terms, subject to SaveOnSP's agreement that these strings resolve SaveOnSP's requests with respect to these strings.

| SaveOnSP Proposal | JJHCS Modification |
|---|---|
| PBM* AND (copay* or co-pay*) AND deductible | PBM* w/50 ((chang* OR increas* OR decreas*) AND (copay* OR co-pay*) AND deductible) |

---

[1] JJHCS declines to run the following financial-related strings, which are beyond the scope of Judge Wolfson's order:

- (($20,000 OR 20k OR $6,000 OR 6k) w/10 (set* OR chang* OR determin* OR adjust* OR increas* OR decreas*)) AND (Balversa OR Darzelex OR Faspro OR Erleada OR Imbruvica OR Opsumit OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Stelara OR Symtuza OR Tracleer OR Tremfya OR Uptravi OR Ventavis OR Zytiga)

- Budget* w/10 (CarePath OR (care w/2 path) OR Carpath OR Carepth OR CP OR "WithMe" OR (with w/2 me))

Elizabeth H. Snow, Esq.
February 15, 2024
Page 6

| (Max* /15 benefit*) AND ($20,000 OR $20K OR 20k) | (Max* /15 benefit*) w/50 ((chang* OR increas* OR decreas*) AND ($20,000 OR $20K OR 20k)) |
|---|---|

## IV.       Savaria Harris and Jennifer De Camara

      Judge Wolfson ordered production from Ms. Harris and Ms. De Camara's custodial files on a single, narrow issue:  (1) documents and communications between the attorneys and any third-party entities *and* (2) that concern the "new terms and conditions for both its Stelara and Tremfya medications" implemented in January 2022.  Dkt. No. 192 at 13-14.  SaveOnSP's requested terms go well beyond these limitations.

      For example, SaveOnSP continues to insist on documents with any reference in which "coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*" appear in the same document as the terms "Janssen" or "CarePath" (or variations thereof)—despite Judge Waldor explicitly rejecting that a narrower version of that term at the January 24, 2024 conference. Jan. 24 Tr. at 35:3-37:1 ("MR. SANDICK: Your Honor, Mr. Dunlap said a moment ago words to the effect of, we're not looking for every time that somebody mentioned discount or coupon, but the search terms that they proposed even after Judge Waldor ordered them to narrow their request are exactly what Mr. Dunlap just said -- JUDGE WOLFSON: It's not going to happen."). Accordingly, JJHCS declines to run the following terms:

- ("coupon*" OR "discount*" OR "prescription savings card*" OR "free trial*") AND (accumulat* OR maximiz* OR "health plan*" OR insur* OR OR Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program" OR program)

- (Janssen OR Jannsen OR Jansen OR CarePath OR "Care Path" OR CP OR JCP OR "Savings Program") AND ((term* w/3 condition) OR "T&C" OR "TNC" OR "other offer")

      For the same reason, JJHCS also declines to run the following terms, which are not designed to capture documents concerning the "new terms and conditions for both its Stelara and Tremfya medications":

- Save On" (*case sensitive*)

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

Elizabeth H. Snow, Esq.
February 15, 2024
Page 7

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

      JJHCS agrees to the remainder of SaveOnSP's proposed terms for the period proposed by SaveOnSP (January 1, 2021 to November 7, 2023), so long as those documents also mention Stelara and Tremfya (as modified in red font below):

- "other offer" W/5 (accumulat* OR maximiz* OR "health plan*" OR insur*) AND (Stelara OR Tremfya)

- (eligib* or ineligib*) AND "out-of-pocket cost" AND (Stelara OR Tremfya)

- (maximiz* OR optimiz*) AND ($6,000 OR "maximum program benefit") AND (Stelara OR Tremfya)

- ($6,000 OR $6k OR 6k OR $9,100 OR $8,900 OR (OOP) OR (out-of-pocket)) AND (Stelara OR Tremfya)

      In addition, JJHCS will consider running the following terms for the period proposed by SaveOnSP (January 1, 2021 to November 7, 2023), subject to SaveOnSP's agreement that these modifications will resolve SaveOnSP's requests with respect to Ms. Harris and Ms. De Camara:

- (Stelara OR Tremfya) W/25 ((term* w/3 condition*) OR "T&C*" OR "other offer"))

*    *    *

      JJHCS remains available to meet and confer with respect to SaveOnSP's proposed search terms.

Very truly yours,

*/s/ Julia Long*
Julia Long

14922008

# **EXHIBIT 12**



www.pbwt.com

January 22, 2024

Harry Sandick
Partner
(212) 336-2723
hsandick@pbwt.com

**By Email**

Hon. Freda L. Wolfson
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

> Re: **JJHCS's Opposition to SaveOnSP's January 16 Motion to Compel**
> *Johnson and Johnson Health Care Systems, Inc. v. SaveOnSP, LLC*
> **No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), we write in opposition to the January 16, 2024 letter motion by Defendant SaveOnSP, LLC ("SaveOnSP") seeking additional relief on the six "CAP custodians" that were the subject of previous motion practice and Judge Waldor's November 7, 2023 order.

Once again, SaveOnSP is making motions that misstate the record and seek the production of documents that go well beyond what was previously briefed and decided. SaveOnSP asked Judge Waldor to compel JJHCS to produce additional discovery relating to its "CAP program," beginning in 2021, including through custodians who SaveOnSP insisted were "likely to have unique documents relating to the CAP program." D.E. 165 at 7–8; D.E. 166 at 2–3. At oral argument on October 30, SaveOnSP explained that it sought the designation of "seven custodians who we specifically identified as related to the CAP program," as well as CAP-focused search terms covering a "year and a half," starting "in 2022"—as counsel acknowledged, "we are not talking about a very long time period here." Oct. 30 Tr. at 76:3–78:20. Judge Waldor granted

Hon. Freda L. Wolfson
January 22, 2024
Page 2

some but not all of the CAP-focused relief SaveOnSP sought.  She decided to "open the doors on CAP," directed JJHCS to add six custodians "with respect to the CAP program," and even provided search parameters and a time period of "January 1, 2022 through the present" for additional CAP discovery.  *See* Oct. 30 Tr. at 56:1; D.E. 173 at 2–3.  JJHCS has followed this ruling to the letter.

Yet now SaveOnSP claims that Judge Waldor actually wanted JJHCS to produce documents from these "CAP custodians" not just about the CAP program, but on all manner of topics going back to April 1, 2016—*five years* before the CAP program began.  SaveOnSP's expansive reinterpretation is inconsistent with its own previous arguments and irreconcilable with Judge Waldor's ruling.  Indeed, this is the third letter brief to Your Honor in which SaveOnSP has claimed to construe Judge Waldor's intent while studiously avoiding any citation to the October 30 conference, at which these very issues were discussed for several hours.  That omission is telling.  The full record shows that Judge Waldor granted limited relief as to the CAP program and related custodians; there is no basis to disturb her ruling.  Accordingly, Your Honor should deny SaveOnSP's motion.  SaveOnSP should focus its considerable energies not on meritless discovery motions but rather on timely completing its own discovery obligations without further delay or distraction.

## I.     SaveOnSP Sought Narrow Relief Related to the CAP Program

SaveOnSP asked Judge Waldor to compel JJHCS to add certain custodians due to their ostensible involvement in the "CAP Program," beginning "in or around 2021"—in particular, because SaveOnSP insisted that documents about the CAP program were "crucial."  D.E. 165 at 7–8.  The relevant portion of SaveOnSP's motion is excerpted below:

Hon. Freda L. Wolfson
January 22, 2024
Page 3



*Id.* (highlighting supplied).

SaveOnSP then repeated this rationale as to the individual custodians—that each was "likely to have unique documents regarding the CAP program," which, again, was created "in or around 2021." *See, e.g.*, *id.* at 8 ("Kinne is likely to have unique documents regarding the CAP program"), 9 ("Longbothum is likely to have unique documents regarding the CAP program"), *et seq.* And SaveOnSP expressly linked its motion to a "forthcoming submission," i.e., a follow-on SaveOnSP motion on the same subject of CAP program discovery:

| SaveOnSP Motion, D.E. 165, at p. 7 | SaveOnSP Motion, D.E. 166, at pp. 2–3 |
| --- | --- |
| As described in more detail in a forthcoming submission, in or around 2021, JJHCS created its CAP program as part of an effort to respond to accumulators and maximizers… | In or around 2021, J&J created a program called a "cost adjustment program" or "copay adjustment program" ("CAP"), as part of an effort to "adjust" the amount of copay assistance payments that J&J made to patients who were on accumulators and maximizers…. |

Hon. Freda L. Wolfson
January 22, 2024
Page 4

## II. Judge Waldor Addressed and Resolved Both CAP Motions Together, Ordering Narrower Relief than SaveOnSP Sought

Because SaveOnSP had filed two motions on the same topic, Judge Waldor chose to address them together, and took up SaveOnSP's requested "CAP custodians" during an extended colloquy about what JJHCS should produce "in terms of CAP." *See* Oct. 30 Tr. at 54:8–56:6 *et seq.*  As part of that colloquy, after SaveOnSP's counsel described his request for CAP-focused search terms, he characterized SaveOnSP's ask as modest and focused:

> MR. ELSBERG: …the CAP program started in -- thank you -- in 2022. So we are not talking about a very long time period here.
>
> THE COURT: So in terms of search terms for CAP A, CAP M, and adjustment programs, it's 2022 through today.
>
> MR. ELSBERG: Yes. It's 2022 through whatever date it is that they're seeking damages.

*Id*. at 77:4–12.  Judge Waldor then again sought to confirm the CAP relief SaveOnSP requested as to the so-called CAP custodians.  *Id.* at 77:16–17 ("THE COURT:  What about these seven custodians that we were talking about before?").  Notably, SaveOnSP's counsel did ***not*** say that the seven employees were relevant to issues other than CAP, or that Judge Waldor should compel JJHCS to produce documents from them going back five years before the CAP program began.  Just the opposite:  SaveOnSP's entire argument was that these employees should be added because they were "***specifically identified as related to the CAP program***," and asked Judge Waldor to grant the motion as to the "six custodians where we have strong evidence of their [involvement] in CAP." *Id.* at 77:21–20 (emphasis supplied).

It is in this context—an extended discussion of CAP-related discovery across two overlapping motions—that Judge Waldor's November 7 order arose.  In that order, she directed

Hon. Freda L. Wolfson
January 22, 2024
Page 5

JJHCS to add "six of the custodians that SaveOnSp identified with regard to the CAP program,"

as SaveOnSP's counsel had specifically requested. D.E. 173 at 2. And she ordered JJHCS to run

specific "custodial document searches," directly tied to the CAP-related terms discussed at the

conference,[1] for the narrow time period of "January 1, 2022 to the present." *Id.* at 2–3.

Thus, SaveOnSP's present insistence that the two motions were "separate" and that

"Judge Waldor resolved them separately" is refuted by the record. This is why SaveOnSP

completely ignores the October 30 transcript when it insists that Judge Waldor intended to order

extremely broad discovery from these CAP custodians going back to 2016, five years before the

CAP program began. One will search the October 30 transcript in vain for any evidence that this

was Judge Waldor's intent. Instead, she said the opposite: "I'm going to open the doors **on CAP**."

Oct. 30 Tr. at 56:1 (emphasis supplied).[2]

---

[1] Although it is not material to this dispute, for purposes of ensuring a clear record we note that SaveOnSP's letter incorrectly describes the search string Judge Waldor ordered JJHCS to run. *See* SaveOnSP Jan. 16, 2024 Letter at 2 n.1. Citing its own previous motion, D.E. 166, SaveOnSP claims that Judge Waldor ordered JJHCS to run the terms listed in footnote 2 of its letter ("CAPa" OR "CAPm" or "adjustment program"). That is not accurate. In fact, Judge Waldor compelled a narrower search of only documents that hit those terms **and** "the term 'SaveOn' (or reasonable variations / abbreviations)." D.E. 173 at 2–3. This was another topic of discussion at the October 30 conference, with SaveOnSP's counsel repeatedly trying to change the "**and** SaveOn" to "**or** SaveOn" to vastly broaden the scope of the search, and Judge Waldor repeatedly and unequivocally declining to do so. *See* Oct. 30 Tr. at 101:14–108:22.

[2] For this reason, SaveOnSP is not helped by its repeated reliance on a single line in D.E. 165, in which it asked the Court "to compel JJHCS to add the above twelve custodians and run all agreed-upon or Court-ordered search terms . . . over their files." D.E. 165 at 15. Simply put, Judge Waldor did not grant that relief. Instead, she ordered JJHCS to produce documents from a smaller number of custodians "with regard to the CAP program" using the far narrower search parameters discussed above.

Hon. Freda L. Wolfson
January 22, 2024
Page 6

### III.     There Is No Basis to Expand the Scope of Judge Waldor's Ruling to Unrelated Topics and Irrelevant Time Periods

In the alternative, SaveOnSP seeks a do-over on the grounds that "these custodians have relevant documents that do not contain the terms that J&J says it will use."  SaveOnSP Jan. 16, 2024 Letter at 3.  The do-over attempt is improper and the justification is a strawman.  The real question—particularly now, as this case approaches its two-year anniversary—is whether the employees at issue would have *unique* relevant documents, i.e., documents that are not merely cumulative of what JJHCS has already produced from its sixteen full custodians.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (barring "unreasonably cumulative or duplicative" discovery); *Sugg v. Virtusa*, 2020 WL 6585872, at *2 (D.N.J. Nov. 10, 2020) (denying motion to compel where, as here, the existing custodians included "high-ranking executives in the company, as well as the heads of several relevant business groups," and the movant failed to show that additional requested custodians had "any unique knowledge").  And the answer to the question whether this review would lead to unique documents is no:  as JJHCS explained to SaveOnSP in March of 2023, when SaveOnSP first began asking for some of these employees to be added, we have no reason to believe that any of them would have unique, non-privileged documents or communications going back to 2016 that relate to the non-CAP issues in this lawsuit.[3]

---

[3] SaveOnSP itself has observed that, even though JJHCS has designated sixteen "full" custodians, most of its custodial documents came from the files of a core group of four employees most directly involved in the relevant issues.  *See* D.E. 165 at 2 (SaveOnSP complaining that "the vast majority" of JJHCS's production "came from only *four* custodians or from noncustodial files"); *id.* at 16 (JJHCS explaining that "[i]f anything, this reflects simply that the relevant knowledge about SaveOnSP's operations was limited to a small number of people at JJHCS, which is not surprising given SaveOnSP's self-professed goal of operating in the shadows").  This prospect of diminishing returns is presumably why Judge Waldor rejected SaveOnSP's blunderbuss demand for twelve more JJHCS custodians after the substantial completion deadline for document production had

Hon. Freda L. Wolfson
January 22, 2024
Page 7

None of the exhibits to SaveOnSP's letter support a different conclusion.  For starters, SaveOnSP has had some of the documents it now cites for more than ten months—they were part of JJHCS's very first custodial production—demonstrating how stale SaveOnSP's arguments are.  These are documents that could have been presented to Judge Waldor by SaveOnSP in support of its prior motions; SaveOnSP chose not to do so.  Moreover, in most of the email chains cited by SaveOnSP, the email involving the CAP custodian at issue is fully redacted for privilege.  *See* Ex. 3 at -227; Ex. 5 at -963–64; Ex. 6 at -275.  There is, of course, no good reason to add ever-more custodians whose relevant communications are privileged and therefore will not be produced regardless.  All else aside, the fact remains that every single JJHCS document now cited by SaveOnSP was already produced from the files of at least one existing JJHCS custodian.[4]  Taken together, they confirm that SaveOnSP already has full coverage from JJHCS's existing custodians.  There is no reason, other than harassment and delay, for SaveOnSP to demand more.

<p style="text-align:center">*     *     *</p>

It is time for this case to move forward, and JJHCS is committed to making that happen.  We expect to substantially complete JJHCS's production of documents by the end of January, so that the parties can meet the Court's fact discovery deadline of April 25, 2024.  Unfortunately, SaveOnSP has no intention of meeting that deadline.  After our last appearance

---

already elapsed, and instead directed JJHCS only to produce additional discovery that was specific to the CAP program.

[4] SaveOnSP also attaches one document produced by a third party, ████████████████████ ████████████████████t—who is already a "full" JJHCS custodian.

Hon. Freda L. Wolfson
January 22, 2024
Page 8

before Your Honor, SaveOnSP announced that it "intends" to substantially complete its own

refresh production "by March 31, 2024." That obviously will not leave the parties with enough

time to complete all fact depositions by April 25 as the Court ordered. And the delay is the point.

Every month that this litigation continues is another month that SaveOnSP is able to

misappropriate millions of dollars from JJHCS's patient assistance programs, harming patients

and JJHCS alike. Indeed, SaveOnSP is only making a "refresh production" in the first place

because it renounced the parties' previous agreement on a cutoff date, and unilaterally insisted that

custodial discovery must be carried forward into the present. *See, e.g.*, Oct. 30 Tr. at 97:14–98:2.

Having eagerly sought out that obligation, SaveOnSP cannot use it as an excuse for noncompliance

with yet another discovery deadline.

      In light of this development, we request that Your Honor direct SaveOnSP to

substantially complete its production by February 15, so that depositions can proceed and fact

discovery can finally end. SaveOnSP has ample resources to meet the Court's deadline if it focuses

its energies on compliance, and not on the endless re-litigation of meritless motions to compel.

      We appreciate Your Honor's attention to this matter, and we are available to answer

any questions.

Respectfully submitted,

*/s/ Harry Sandick*
Harry Sandick

cc:     Counsel for SaveOnSP

Case 2:22-cv-02632-JKS-CLW   Document 317-36   Filed 09/03/24   Page 263 of 276 PageID: 18185

# EXHIBIT 13

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

February 7, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

> Re:     ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
> ***No. 2:22-cv-02632 (JKS) (CLW)***

Dear Judge Wolfson:

On behalf of Defendant Save On SP LLC ("**SaveOn**"), we ask you to resolve a potential ambiguity in the Court's November 7, 2023 Order, Dkt. 173 ("the Order"), issued after the October 30, 2023 discovery conference, and compel Johnson & Johnson Health Care Systems, Inc. (with its affiliates, "**J&J**") to refresh its document production from July 1, 2022 through November 7, 2023 using all search terms to which it previously agreed.

The potential ambiguity is this: In the second paragraph of the portion of the Order ruling on the issues raised in Docket Entry No. 166 ("Paragraph 2"), the Court compelled J&J to run three search terms—"CAPa" OR "CAPm" OR "adjustment program" (the "CAP Terms")—to

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

the extent that they "are found in documents as the term 'SaveOn' (or reasonable variations / ab-

breviations)," through November 7, 2023. Dkt. 173 at 2-3. In the next paragraph ("Paragraph 3"),

the Court ordered both parties, including J&J, to "update their discovery responses (including

productions)" *without limitation*," also through November 7, 2023. *Id.* at 3 (original emphasis).

Because J&J had already agreed to run the CAP Terms without a "SaveOn limiter" through July

1, 2022, Paragraph 3 compels it to run those same terms over its updated production without a

limiter. J&J argues, however, that Paragraph 2 allows it to run the CAP terms *with* a "SaveOn

limiter" for its updated production.

    Documents concerning the CAP program are key to SaveOn's defenses. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮, Dkt. 166 at 2, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 166 at 2. The CAP pro-

gram is highly relevant: If J&J identified patients on SaveOn-advised plans and paid them any-

way, then J&J failed to mitigate its purported damages. J&J did not disclose the existence of the

CAP program during the initial stages of discovery and did not propose any search terms to cap-

ture documents related to it. On September 29, 2023, after extensive meeting and conferring, J&J

agreed to run three search terms—"CAPa" OR "CAPm" OR "adjustment program"—for its cus-

todians over the originally agreed-upon discovery period of April 1, 2016 through July 1, 2022.

Ex. 1 (Sept. 29, 2023 Email from J. Long to E. Snow), notably, without the SaveOn limiter.

    Because J&J did not implement the CAP program until late 2021, SaveOn asked J&J to

run the CAP search terms from July 1, 2022 to the present.  Sept. 27, 2023 Email from E. Snow

to J. Long. J&J refused and SaveOn moved to compel in the joint letter filed as Docket Entry No.

166. At the October 30, 2023 discovery conference, Judge Waldor granted SaveOn's motion in

part and ordered J&J to run the CAP terms through the present, but only for documents in which

the term "SaveOn," or some variation, appeared. Dkt. 171 at 108. This ruling was memorialized in Paragraph 2 of the Court's November 7 Order.

But that was not the end of Judge Waldor's rulings during the October 30 conference. After Judge Waldor ruled on SaveOn's motion, J&J orally moved the Court to compel SaveOn to "update their searching through to the present." Dkt. 171 at 109. J&J made this oral motion without prior notice to SaveOn, without meeting and conferring, and without filing a joint letter seeking that relief. After discussion, Judge Waldor stated that both parties should update their productions through the present "*without limitation*." Dkt. 171 at 114. That ruling was memorialized in Paragraph 3 of the Court's November 7 order. Dkt. 173 at 3.

Because J&J raised the issue of a full refresh at the conference without notice to SaveOn or written submission to the Court, Judge Waldor was not made aware that the existing search terms that J&J had already agreed to run (and which it is obligated to run under Paragraph 3 of the Order) included both (1) variations on "SaveOn" and (2) the CAP Terms as independent terms. These terms make sense: Documents that explicitly mention SaveOn are likely to be relevant. Documents that mention the CAP program are also likely to be relevant (even if they do not explicitly mention SaveOn), because the entire purpose of the CAP program is to respond to SaveOn and other similar businesses. Further, by refusing to run the CAP Terms over documents that do not explicitly mention SaveOn, J&J has rendered Paragraph 2 of Judge Waldor's Order meaningless, because every single document covered by that Paragraph 2 of that Order would have already been captured by the standalone "SaveOn" search term, which J&J acknowledges it is obligated to run per Paragraph 3 of the Order.

Even if J&J's reading of the Order were correct, documents produced since the October 30 conference would provide ample grounds to reconsider that decision, as they show that applying the "SaveOn" limiter to the CAP Term would exclude from discovery highly relevant documents. Take, for example, Exhibit 2 (JJHCS_00146512). ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████ As another example,

consider Exhibit 3 (JJHCS_00145741). ███████████████████████████

███████████████████████████████████████████████

████████████ Whether J&J has made such identifications since July 1, 2022 is also relevant to mitigation and acquiescence. Both documents use one or more individual term of the CAP Term, but not a variation of the term "SaveOn," so running the CAP Terms with a "SaveOn" limiter would exclude such documents.[1] To ensure that such documents are captured in J&J's refreshed production, the Court should compel it to run the CAP Terms without any limitation.

---

[1] There are numerous other examples of such documents in J&J's productions since the October 30, 2023 conference. *See, e.g.*, Ex. 4 (JJHCS_00142279) (██████████████████████████████

██████████████████); Ex. 5 (JJHCS_00156936) (██████████

███████████); Ex. 6 (JJHCS_00146145) (██████████████

████████████████████████████████████████); Ex. 7 (JJHCS_00150735) (██████████████████████████████████); Ex. 8 (JJHCS_00140763) (████████████████████████); Ex. 9 (JJHCS_00141346) (████████

████████); Ex. 10 (JJHCS_00145571) (████████████████████████████

████████); Ex. 11 (JJHCS_00139311) (█████

Hon. Freda L. Wolfson                                                                    Page 5

SaveOn appreciates the Court's attention to this matter.

Respectfully submitted,

/s/ E. Evans Wohlforth, Jr.
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

_____

█████████████████████████████████████████████).

5

# EXHIBIT 14

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Friday, September 29, 2023 6:23:35 PM
**To:** Elizabeth Snow <esnow@selendygay.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; David Elsberg <delsberg@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW)

Counsel:

In an effort to reach compromise and reduce the number of disputes before Judge Waldor at our October 30 conference, JJHCS agrees to run the terms "CAPa," "CAPm" and "adjustment program" for the agreed-upon relevant time period, April 1, 2016 to July 1, 2022.

We hope that this will resolve the dispute. We do not think a demand through to the present by SaveOnSP is appropriate or feasible. As JJHCS has no direct knowledge of SaveOnSP's conduct at issue, JJHCS's documents primarily relate to its awareness and response to SaveOnSP, and this demand amounts to a wholesale update of the production. We note SaveOnSP has rejected even several discrete updates, let alone a wholesale update, of its own production.

Please let us know if our proposed production resolves this dispute.

JJHCS will respond separately to your joint letter on SaveOnSP's interrogatories next week.

Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jlong@pbwt.com**

---

**From:** Elizabeth Snow <esnow@selendygay.com>
**Sent:** Wednesday, September 27, 2023 12:12 PM
**To:** Long, Julia (x2878) <jlong@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; ~delsberg@selendygay.com <delsberg@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>
**Subject:** JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW)

> *Caution: External Email!*

Counsel,

Please find attached a joint letter that SaveOnSP intends to file with the Court. We ask that you please provide JJHCS's portion by end of day Monday, October 2. We reserve the right to revise in response to any revisions.

Thanks,

Elizabeth

**Elizabeth Snow**
Associate  [Email]
Selendy Gay Elsberg PLLC  [Web]
Pronouns: she, her, hers
------------------------------------------------
+1 212.390.9330  [O]
+1 540.409.7257  [M]

---

Privileged/Confidential Information may be contained in this message. If you are not

the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

---