# Sills Cummis & Gross
### A Professional Corporation

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102-5400**
**Tel: 973-643-7000**
**Fax: 973-643-6500**

**Jeffrey J. Greenbaum**
**Member**
**Direct Dial: (973) 643-5430**
**E-mail: jgreenbaum@sillscummis.com**

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL**
**UNDER THE DISCOVERY CONFIDENTIALITY ORDER**

August 9, 2024

**Via Email and ECF**

Honorable Freda L. Wolfson, U.S.D.J.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

Re: **Motion to Compel SaveOnSP to Produce Document Retention Policies**
*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
**Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

JJHCS moves to compel SaveOnSP to produce its document retention policies. JJHCS is entitled to these policies given SaveOnSP's repeated representations to JJHCS that it no longer possesses key documents that it once retained. As Your Honor has already made clear, production of retention policies is appropriate in such circumstances, and JJHCS has produced its own policies going back 15 years. But SaveOnSP has refused to produce its retention policies—even after requesting and receiving them from JJHCS and multiple third parties. SaveOnSP now insists that it need only produce its own retention policies upon some "suggestion of spoliation"—a new standard SaveOnSP is invoking to avoid producing documents it has demanded from everyone else. And even if that were the standard, it is met here, given SaveOnSP's serial failures to preserve important, highly relevant documents and data. Your Honor should compel SaveOnSP to produce its retention policies.

Honorable Freda L. Wolfson, U.S.D.J.
August 9, 2024
Page 2

### *SaveOnSP's Missing Evidence Requires Production of SaveOnSP's Retention Policies Under the Court's Prior Rulings*

SaveOnSP has repeatedly informed JJHCS that it cannot provide important discovery because it no longer possesses the documents or communications requested. These apparently deleted materials both pre-date and post-date the filing of this action. Some examples follow.

- SaveOnSP apparently destroyed all files and data belonging to Gary Meyn, its former Director of Operations, sometime after he left the company in 2021. Ex. 1 (Mar. 29, 2023 Ltr. from A. Dunlap to H. Sandick) at 2.

- SaveOnSP could not produce "Chatter" messages—instant messages sent between employees using the Salesforce platform—because SaveOnSP did not retain Chatter messages exchanged prior to June 2021. Ex. 2 (Feb. 20, 2024 Ltr. from E. Snow to S. Arrow) at 1.

- SaveOnSP could not produce complete ▆▆▆▆▆▆▆▆ regarding, among other things, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *See* Ex. 3 (September 20, 2023 Ltr. from M. Nelson to C. Deskus) at 2; Ex. 4 (March 8, 2024 Ltr. from M. Nelson to J. Long) at 1.

- SaveOnSP has disclosed that several key custodians for whom it agreed to produce text messages failed to preserve their text messages after this litigation commenced. *See* Ex. 5 (Mar. 21, 2024 Ltr. from E. Snow to S. Arrow); Ex. 6 (May 10, 2024 Ltr. from E. Snow to K. Brisson); *see also* Ex. 7 (Apr. 17, 2024 Ltr. from K. Brisson to E. Snow) (discussing SaveOnSP's representations regarding production of text messages from these custodians).

- Only last week, SaveOnSP informed JJHCS that it cannot locate call recordings that JJHCS has identified based on call note spreadsheet entries and requested that SaveOnSP produce. *See* Ex. 8 (Aug. 2, 2024 Ltr. from M. Nelson to E. Shane) at 1.

Following several of these disclosures, JJHCS served Request No. 118, which sought "[d]ocuments sufficient to show SaveOnSP's document retention policies, including but not limited to all final versions of any document retention policy that SaveOnSP may have maintained during the Relevant Time Period." Ex. 9 (SaveOnSP's Responses & Objections to JJHCS's 12th Set of RFPs, Request No. 118). In light of SaveOnSP's representations regarding responsive documents that it has not retained, JJHCS is entitled to explore SaveOnSP's retention policies and what they required of

2

Honorable Freda L. Wolfson, U.S.D.J.
August 9, 2024
Page 3

the company and its employees. Indeed, Your Honor has already ruled that where a party "has indicated that there are preservation o[r] retention issues," retention policies must be produced so the parties "can determine … what the policy was, and whether it was followed here." Jan. 24, 2024 Tr. 11:10-22; *see also* ECF No. 192 at 10 (ordering JJHCS to "identify and produce its retention policy" if "some or all relevant documents were not preserved prior to 2013").[1] That ruling governs JJHCS's instant request. Nevertheless, SaveOnSP objected to JJHCS's Request No. 118 on relevance and burden grounds and refused to produce any responsive documents. Ex. 9 (SaveOnSP's Responses & Objections to JJHCS's 12th Set of RFPs, Response to Request No. 118).

***SaveOnSP's Refusal to Produce Its Retention Policies Is Groundless and Hypocritical***

When the parties met and conferred over SaveOnSP's objections, SaveOnSP acknowledged that its retention policies likely were stored in a centralized noncustodial location, such that any burden associated with production would be minimal. But SaveOnSP dug in on its refusal to produce the policies, this time grounding that refusal in the proposition that "retention policies are generally irrelevant absent a suggestion of spoliation." *See* Ex. 10 (June 7, 2024 Ltr. from M. Nelson to B. Robinson) at 2. That assertion cannot be reconciled with Your Honor's ruling, which makes clear that where documents sought in discovery have not been preserved, production of retention policies "is always what we do"—even if the failure to preserve occurred long before litigation commenced. Jan. 24, 2024 Tr. 11:16-22. And Your Honor's ruling is no outlier: courts regularly require production of retention policies, particularly when discovery raises questions about the existence or non-existence of requested documents. *See, e.g.*, *Barton v. RCI, LLC*, 2013 WL 1338235, at *20–21

---

[1] Pursuant to Your Honor's ruling, JJHCS has produced its own retention policies going back 15 years, in connection with SaveOnSP's requests for certain documents dating back to that time.

3

Honorable Freda L. Wolfson, U.S.D.J.
August 9, 2024
Page 4

(D.N.J. Apr. 1, 2013) (agreeing that production of retention policies may "assist[] in disputes over what information is in Defendant's possession, custody, or control" and help narrow future discovery requests); *United States v. Coburn*, 2022 WL 357217, at *6 (D.N.J. Feb. 1, 2022) (requiring production of retention policies because they "are relevant to understanding the document production itself"); *see also Nike, Inc. v. Brandmania.com, Inc.*, 2002 WL 32348549, at *12 (E.D. Pa. Oct. 7, 2002) (ordering production of document retention policies where party sought to explore claim that categories of requested document did not exist, and noting that "retention policies have been held discoverable in other cases").

Moreover, SaveOnSP's refusal to produce its own retention policies is at odds with SaveOnSP's own approach to discovery. Throughout this litigation, SaveOnSP has understood that discovery of retention policies is fair game, even absent any hint of a preservation issue. SaveOnSP's very first set of document requests to JJHCS included a request for JJHCS's (and other entities') document retention policies, and JJHCS agreed to produce its own retention policies for the time period relevant to this litigation. *See* Ex. 11 (JJHCS's Responses and Objections to SaveOnSP's First Set of Requests for Production, Request No. 45 & Response to Request No. 45). SaveOnSP has also requested retention policies from various third parties for no reason beyond its apparent belief that retention policies are generally relevant and discoverable. *See, e.g.*, Ex. 12 (Lash Group Subpoena, Request No. 30; Ex. 13 (TrialCard Subpoena, Request No. 30). SaveOnSP cannot have its cake and eat it too. If SaveOnSP is entitled to document retention policies from JJHCS and even from third parties in the normal course of discovery, then SaveOnSP must produce its own retention policies when those policies are requested. Production should be required on that basis alone.

Honorable Freda L. Wolfson, U.S.D.J.
August 9, 2024
Page 5

In any event, SaveOnSP's attempt to carve out only a narrow circumstance in which discovery of retention policies is appropriate is as ironic as it is hypocritical, for discovery thus far has established exactly the "suggestion of spoliation" that SaveOnSP now claims is needed. *See supra* p.2. Even if Your Honor's prior ruling did not dictate the outcome here, and even if SaveOnSP had not already acknowledged the relevance of document retention policies by serving its own parallel requests, SaveOnSP's disclosures squarely raise the "suggestion of spoliation" that even SaveOnSP agrees warrants production of document retention policies.

\* \* \*

For the foregoing reasons, we request that Your Honor compel SaveOnSP to produce its document retention policies.

We appreciate Your Honor's consideration of this matter.

                                                                                 Respectfully submitted,

                                                           */s/ Jeffrey J. Greenbaum*
                                                           Jeffrey J. Greenbaum

cc: All counsel of record for SaveOnSP