# Exhibit 5

# Sills Cummis & Gross
A Professional Corporation

The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102-5400
Tel: 973-643-7000
Fax: 973-643-6500

**Jeffrey J. Greenbaum**
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL
UNDER THE DISCOVERY CONFIDENTIALITY ORDER**

August 12, 2024

<u>Via Email and ECF</u>

Honorable Freda L. Wolfson, U.S.D.J.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

Re:   Motion to Compel SaveOnSP to Produce Pre-April 2016 Documents
      *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
      Case No. 2:22-cv-02632 (JKS) (CLW)

Dear Judge Wolfson:

On behalf of JJHCS, we move to compel SaveOnSP to produce relevant documents from the files of four existing custodians for the eight-month period of August 1, 2015 to April 1, 2016.

The current "start date" of April 1, 2016 for SaveOnSP's productions was the subject of negotiation among the parties in 2023, and JJHCS accepted that date only after SaveOnSP repeatedly represented that it was unlikely to have relevant documents before then. That representation has proven false: it is now clear that SaveOnSP's founder, and at least three other custodians, were hard at work developing the scheme at least as early as August 2015. In fact, SaveOnSP recently disclosed that those four custodians possess about 3,200 unreviewed documents hitting on the parties' agreed-upon search terms from that eight-month period. SaveOnSP does not dispute that the documents are relevant, nor has it claimed that producing them would be unduly burdensome.

Honorable Freda L. Wolfson, U.S.D.J.
August 12, 2024
Page 2

Yet SaveOnSP has refused to rectify its failures unless JJHCS agrees to producing additional documents from *all* of its own custodians for the same period. This tit-for-tat demand is groundless: there is no gap in JJHCS's production as there is in SaveOnSP's. Regardless, JJHCS is already producing various categories of documents going back to 2009, and there is no basis in the record for SaveOnSP to demand yet more from JJHCS.

The parties conferred regarding this dispute but were unable to reach agreement. Accordingly, we respectfully request that the Court compel SaveOnSP to expand its production of files from these four custodians for an additional eight months, back to August 1, 2015.

## STATEMENT OF FACTS

**A.     SaveOnSP Misleads JJHCS and the Court About When It Began Operations**

There is a long history of misrepresentations by SaveOnSP regarding when it began operations, the effect of which has been to improperly shield important evidence regarding the origins of SaveOnSP's scheme from discovery.

JJHCS's initial requests for production asked SaveOnSP to produce documents starting from January 1, 2017, based on publicly available information indicating that SaveOnSP executed its Master Program Agreements with Express Scripts ("ESI") in November 2017. *See* Compl. ¶ 52. JJHCS repeatedly made clear to SaveOnSP that it chose that start date on the understanding that "SaveOnSP began operations … in or about November 2017, when SaveOnSP executed its Master Program Agreement with Express Scripts Inc." Ex. 1 (Jan. 6, 2023 Ltr. from H. Sandick to M. Nelson) at 2; *see also* Ex. 2 (Feb. 14, 2023 Ltr. from A. LoMonaco to M. Nelson) at 6. SaveOnSP—which, of course, is best situated to know when it in fact began operating—never suggested that JJHCS's understanding was inaccurate. To the contrary, SaveOnSP expressly stated to JJHCS that "SaveOnSP

Honorable Freda L. Wolfson, U.S.D.J.
August 12, 2024
Page 3

did not exist until 2017." Ex. 3 (Jan. 20, 2023 Ltr. from M. Nelson to A. LoMonaco) at 5. SaveOnSP repeated that line to the Court, representing "that SaveOnSP began operations in 2017." Dkt. No. 79 at 26. These statements could not be more direct or explicit.

But as discovery continued, it became clear that, contrary to SaveOnSP's representations, SaveOnSP's scheme was already well under way at least as early as September 2016. For example, one document indicated that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex 4 (SOSP_0000259) at -261. In another, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Ex. 5 (SOSP_0013722) at -723. Yet another document stated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. 6 (SOSP_0001032) at -033.

JJHCS brought this issue to SaveOnSP's attention and, highlighting the above documents, requested that SaveOnSP "provide the date on which SaveOnSP began operations"—*i.e.*, when SaveOnSP "conceived of its scheme, hired employees, drafted materials, marketed its scheme to health plans, invested in call centers and related technology, and otherwise [got] ready to begin meddling with patient access to therapy." Ex. 7 (Mar. 27, 2023 Ltr. from G. LoBiondo to A. Dunlap); Ex. 8 (Apr. 7, 2023 (10:22 am) email from G. LoBiondo to M. Nelson). SaveOnSP eventually claimed that "the earliest communications SaveOnSP had with its first client was in May 2016, that it would have drafted any marketing materials shortly in advance of those communications, and that it hired its first employees and set up its first call centers after that date." *Id.* (Apr. 10, 2023 (3:00 pm) email from M. Nelson to G. LoBiondo).

Honorable Freda L. Wolfson, U.S.D.J.
August 12, 2024
Page 4

SaveOnSP proposed to resolve the issue of its deficient production by "extend[ing] the general start date of its document production to April 2016"—a date that, SaveOnSP insisted, was "over a month before SaveOnSP's first contact with its first client." *Id.* Relying explicitly on SaveOnSP's representation that it "and its personnel are unlikely to have generated documents relevant to the issues in this lawsuit before April 2016," JJHCS accepted SaveOnSP's proposal. *Id.* (Apr. 10, 2023 (10:34 pm) email from G. LoBiondo to M. Nelson). JJHCS also made clear that it reserved the right to seek documents from before April 1, 2016, if it turned out that relevant documents from before that date existed. *Id.*

Shortly thereafter, in response to JJHCS's request for "all documents and communications concerning the origin of the relationship between SaveOnSP and ESI," SaveOnSP told JJHCS that it had investigated the origins of that relationship and that it had "had some limited communications with ESI before [April 1, 2016], starting in December 2015." Ex. 9 (May 26, 2023 Ltr. from G. LoBiondo to A. Dunlap) at 1; Ex. 10 (June 6, 2023 Ltr. from A. Dunlap to G. LoBiondo) at 1. SaveOnSP still did not suggest that it had any other relevant documents from before April 1, 2016.

**B.     The Evidence Again Belies SaveOnSP's Representations**

As it turned out, however, relevant documents from before that date do exist and apparently in significant quantities. Various documents produced by SaveOnSP and third parties reveal that, even before April 1, 2016, SaveOnSP was not just having "some limited communications with ESI"; rather, it was developing its program and its personnel were generating documents relevant to this lawsuit. Those documents include:

- Ex. 11 (SOSP_0622487), a document ████████████████████████████████████████████████████████████████████████████.

Honorable Freda L. Wolfson, U.S.D.J.
August 12, 2024
Page 5



- Ex. 12 (SOSP_0523594), ... *Id.* at slide 12.
- Ex. 13 (SOSP_0523623), ..."
- Ex. 14 (SOSP_0523598), ... (emphasis supplied).
- Ex. 15 (SOSP_0523599), ...
- Ex. 16 (SOSP_0622489), ..."
- Ex. 17 (Keenan_0030457), an email thread that includes an *April 6, 2016* email from Miller suggesting that, by then, SaveOnSP had been communicating with ESI and Prime Therapeutics (another PBM) for quite some time. For instance, Miller wrote that "we are close on the ESI portion of getting the program launched. … As you can imagine much has changed since we last spoke." *Id.* at -459. He further wrote that he had "been working with Dr Patel the CMO at Prime on a number of projects" and that "he has been trying to get his benefits manager to follow up for a couple of weeks." *Id.* And Miller boasted that he already had "a number of clients who I want to get in early and save the most vs. ESI house accounts" and that "[t]he lawyers have all (and I mean a lot of them) have determined how to operationalize at ESI and Accredo." *Id.*

SaveOnSP produced some of these documents because they were attached to post-April 2016 emails; as for others, it is not clear why they were produced. In any event, these documents

Honorable Freda L. Wolfson, U.S.D.J.
August 12, 2024
Page 6

demonstrate that, contrary to SaveOnSP's prior representations to JJHCS, it had already been operating and generating relevant documents and communications before April 2016; indeed, it was seemingly doing so at least as early as August 2015. JJHCS therefore requested that SaveOnSP update its custodial productions from the files of four SaveOnSP custodians—Jody Miller, Claudia Dunbar, Jill Stearns, and Jenna Ordonez—to include all responsive documents from August 1, 2015 to April 1, 2016. *See* Ex. 18 (June 21, 2024 Ltr. from J. Chefitz to M. Nelson) at 2–3. JJHCS requested those four custodians because they all appear in many of the documents described above and are thus the custodians most likely to have relevant evidence from before April 2016. JJHCS still does not have clarity on when SaveOnSP actually commenced operations, but has chosen August 1, 2015 based on the substantive documents it has seen to date. JJHCS relies on SaveOnSP to clarify if in fact it started even earlier.

### C. SaveOnSP Admits that It Possesses Relevant Pre-April 2016 Documents

Faced with this clear documentary record, SaveOnSP now concedes that its operations began before April 2016. It admits that it had, in fact, communicated with potential clients before "the spring of 2016" and that it possesses those communications; that, █████████████████ █████████████████████████████████████████████████████████████████████████████ ██████████████████████████████"; that █████████████████████████████████████ █████████████████████████████"; and that, ████████████████████████████ █████████████████████████████████████████████████████████████████████████████ ███████████████████████. Ex. 19 (July 18, 2024 Ltr. from M. Nelson to J. Chefitz) at 1–2. And, after insisting that it had *no* documents from this eight-month period, SaveOnSP recently disclosed that it possesses 3,214 unreviewed documents hitting on the parties' agreed-upon search

terms, suggesting that the documents described above are just the tip of the iceberg. Ex. 20 (July 30, 2024 Ltr. from M. Nelson to J. Chefitz) at 1.

But instead of simply agreeing to produce these responsive documents, SaveOnSP has refused to do so unless JJHCS agrees to review and produce documents from *all* of its custodians from the August 1, 2015–April 1, 2016 time period hitting on a set of several search terms. *Id.* SaveOnSP also refuses to identify the communications it admitted to having "with a handful of potential clients from before the spring of 2016" unless JJHCS agrees to engage in the above further custodial discovery. *Id.*

## ARGUMENT

### I. SaveOnSP Must Produce Its Relevant Documents from Before April 2016

JJHCS is "entitled to discovery on any acts that Defendant employed to effectuate or implement the [SaveOnSP] scheme," Apr. 10, 2024 Discovery Order at 8 n.4, as well as documents that "go to [SaveOnSP's] intent," Dkt. 131, June 27, 2023 Tr. at 30:3–12. *See generally* Compl. ¶ 2 (alleging that "with the deliberate intent to manipulate and thwart the purpose of JJHCS's program, SaveOnSP devised and implemented a scheme (the 'SaveOnSP Program') to inflate and misappropriate the funding JJHCS provides for patients"); Jan. 25, 2023 Op. & Order, Dkt. No. 68 at 15 (explaining that tortious interference with contract requires showing "intentional and malicious interference with that relationship").

There can be no serious dispute at this point that from at least ███████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████; and communicating and negotiating with Prime and ESI, SaveOnSP's eventual business partner in executing the SaveOnSP program. *See supra* at 4–5.

Honorable Freda L. Wolfson, U.S.D.J.
August 12, 2024
Page 8

SaveOnSP has even admitted that, ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████. *See supra* at 6.  And SaveOnSP has confirmed that the parties' agreed-upon search terms hit on **3,214** unreviewed documents from the files of the four custodians JJHCS has requested for the August 1, 2015 to April 1, 2016 period.  *Id.*

Those four custodians, in particular, are highly likely to have relevant documents.  Jody Miler is SaveOnSP's founder and President.  *See generally* June 20, 2024 JJHCS Motion for In Camera Review of SaveOnSP Text Messages at 2 (detailing Miller's role and direct involvement in every aspect of the SaveOnSP scheme). ██████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████.  *See* Ex. 15 (SOSP_0523599) at slides 3 & 44.  ████████████

███████████████████████████████████████████████████████████████

██████████.  *Id.* at slides 3 & 45.  And ██████████████████████████████

█████████████████████████████, including Exhibit 12 (SOSP_0523594).  All four of these custodians were ████████████████████████████████████████████

████████████████████████████.  *See, e.g.*, Ex. 16 (SOSP_0622489) (████████

███████████████████████████████████████).

SaveOnSP has articulated no basis to withhold any of those documents that are responsive and non-privileged.  And none exists.  SaveOnSP does not and cannot object to reviewing these documents on relevance grounds.  And SaveOnSP does not raise any burden objection either.  (Any burden objection would be quite rich, given SaveOnSP's long insistence that it was unlikely to have

Honorable Freda L. Wolfson, U.S.D.J.
August 12, 2024
Page 9

*any* responsive documents from before April 2016.)  The Court should order SaveOnSP to produce the responsive documents it possesses.

**II.     SaveOnSP Cannot Condition Its Production of Responsive Documents on JJHCS Engaging in Baseless Further Discovery**

Instead of simply producing the responsive documents it possesses, SaveOnSP refuses to do so unless JJHCS agrees to further custodial discovery.  This is improper and not a valid basis on which to withhold responsive documents.  SaveOnSP's demand is particularly inappropriate given that SaveOnSP has long been misleading JJHCS about when SaveOnSP began operations and the extent and nature of its pre-April 2016 activities.  SaveOnSP and its leadership surely know when the company first began planning its program, developing marketing materials, and reaching out to potential clients and partners.  Indeed, key personnel that have been with SaveOnSP from the beginning, including founder and president Jody Miller, are still there.  Yet SaveOnSP repeatedly evaded JJHCS's attempts to learn when the company began its operations, repeatedly misrepresenting the relevant date to both JJHCS and the Court.  It should not now be permitted to use its own misrepresentations as a basis to demand more discovery from JJHCS.

SaveOnSP's tit-for-tat demand is not even reciprocal.  JJHCS is not seeking a general expansion of the discovery period to include all responsive documents from August 1, 2015; rather, its request here is highly targeted.  JJHCS seeks responsive documents from just four of SaveOnSP's custodians, and it has selected those four custodians because the documents show (and the hit counts provided by SaveOnSP confirm) that they are highly likely to have relevant documents from before April 2016.  By contrast, SaveOnSP demands pre-2016 documents from *all* of JJHCS's custodians, despite providing no basis for this demand and identifying no evidence that any of JJHCS's custodians even knew about SaveOnSP before April 2016.

Honorable Freda L. Wolfson, U.S.D.J.
August 12, 2024
Page 10

SaveOnSP's refusal to produce its responsive pre-April 2016 documents is all the more egregious given that SaveOnSP has requested—and JJHCS is producing—documents going back to January 1, 2009 for several JJHCS custodians, notwithstanding the parties' general agreement to an April 1, 2016 discovery cutoff. Having already sought and received documents going back 15 years, SaveOnSP should not now be heard to complain about producing highly relevant documents from an additional eight-month period.

* * *

JJHCS therefore requests that Your Honor order SaveOnSP to produce, without condition, the responsive documents that SaveOnSP has identified from the August 1, 2015 to April 1, 2016 period. We appreciate Your Honor's consideration of this matter.

                                                  Respectfully submitted,

                                                  */s/ Jeffrey J. Greenbaum*
                                                  Jeffrey J. Greenbaum

cc: All counsel of record for SaveOnSP