# Sills Cummis & Gross

A Professional Corporation

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102-5400**
**Tel: 973-643-7000**
**Fax: 973-643-6500**

Jeffrey J. Greenbaum
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL**
**UNDER THE DISCOVERY CONFIDENTIALITY ORDER**

August 9, 2024

<u>**Via Email and ECF**</u>

Honorable Freda L. Wolfson, U.S.D.J.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

> Re: **Motion to Compel SaveOnSP to Produce Document Retention Policies**
> *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
> <u>Case No. 2:22-cv-02632 (JKS) (CLW)</u>

Dear Judge Wolfson:

JJHCS moves to compel SaveOnSP to produce its document retention policies. JJHCS is entitled to these policies given SaveOnSP's repeated representations to JJHCS that it no longer possesses key documents that it once retained. As Your Honor has already made clear, production of retention policies is appropriate in such circumstances, and JJHCS has produced its own policies going back 15 years. But SaveOnSP has refused to produce its retention policies—even after requesting and receiving them from JJHCS and multiple third parties. SaveOnSP now insists that it need only produce its own retention policies upon some "suggestion of spoliation"—a new standard SaveOnSP is invoking to avoid producing documents it has demanded from everyone else. And even if that were the standard, it is met here, given SaveOnSP's serial failures to preserve important, highly relevant documents and data. Your Honor should compel SaveOnSP to produce its retention policies.

Honorable Freda L. Wolfson, U.S.D.J.
August 9, 2024
Page 2

### *SaveOnSP's Missing Evidence Requires Production of SaveOnSP's Retention Policies Under the Court's Prior Rulings*

SaveOnSP has repeatedly informed JJHCS that it cannot provide important discovery because it no longer possesses the documents or communications requested. These apparently deleted materials both pre-date and post-date the filing of this action. Some examples follow.

- SaveOnSP apparently destroyed all files and data belonging to Gary Meyn, its former Director of Operations, sometime after he left the company in 2021. Ex. 1 (Mar. 29, 2023 Ltr. from A. Dunlap to H. Sandick) at 2.

- SaveOnSP could not produce "Chatter" messages—instant messages sent between employees using the Salesforce platform—because SaveOnSP did not retain Chatter messages exchanged prior to June 2021. Ex. 2 (Feb. 20, 2024 Ltr. from E. Snow to S. Arrow) at 1.

- SaveOnSP could not produce complete ███████████████ regarding, among other things, ███ ████████████████████████. *See* Ex. 3 (September 20, 2023 Ltr. from M. Nelson to C. Deskus) at 2; Ex. 4 (March 8, 2024 Ltr. from M. Nelson to J. Long) at 1.

- SaveOnSP has disclosed that several key custodians for whom it agreed to produce text messages failed to preserve their text messages after this litigation commenced. *See* Ex. 5 (Mar. 21, 2024 Ltr. from E. Snow to S. Arrow); Ex. 6 (May 10, 2024 Ltr. from E. Snow to K. Brisson); *see also* Ex. 7 (Apr. 17, 2024 Ltr. from K. Brisson to E. Snow) (discussing SaveOnSP's representations regarding production of text messages from these custodians).

- Only last week, SaveOnSP informed JJHCS that it cannot locate call recordings that JJHCS has identified based on call note spreadsheet entries and requested that SaveOnSP produce. *See* Ex. 8 (Aug. 2, 2024 Ltr. from M. Nelson to E. Shane) at 1.

Following several of these disclosures, JJHCS served Request No. 118, which sought "[d]ocuments sufficient to show SaveOnSP's document retention policies, including but not limited to all final versions of any document retention policy that SaveOnSP may have maintained during the Relevant Time Period." Ex. 9 (SaveOnSP's Responses & Objections to JJHCS's 12th Set of RFPs, Request No. 118). In light of SaveOnSP's representations regarding responsive documents that it has not retained, JJHCS is entitled to explore SaveOnSP's retention policies and what they required of

Honorable Freda L. Wolfson, U.S.D.J.
August 9, 2024
Page 3

the company and its employees. Indeed, Your Honor has already ruled that where a party "has

indicated that there are preservation o[r] retention issues," retention policies must be produced so the

parties "can determine … what the policy was, and whether it was followed here." Jan. 24, 2024 Tr.

11:10-22; *see also* ECF No. 192 at 10 (ordering JJHCS to "identify and produce its retention policy"

if "some or all relevant documents were not preserved prior to 2013").[1] That ruling governs JJHCS's

instant request. Nevertheless, SaveOnSP objected to JJHCS's Request No. 118 on relevance and

burden grounds and refused to produce any responsive documents. Ex. 9 (SaveOnSP's Responses &

Objections to JJHCS's 12th Set of RFPs, Response to Request No. 118).

### *SaveOnSP's Refusal to Produce Its Retention Policies Is Groundless and Hypocritical*

When the parties met and conferred over SaveOnSP's objections, SaveOnSP acknowledged

that its retention policies likely were stored in a centralized noncustodial location, such that any

burden associated with production would be minimal. But SaveOnSP dug in on its refusal to produce

the policies, this time grounding that refusal in the proposition that "retention policies are generally

irrelevant absent a suggestion of spoliation." *See* Ex. 10 (June 7, 2024 Ltr. from M. Nelson to B.

Robinson) at 2. That assertion cannot be reconciled with Your Honor's ruling, which makes clear

that where documents sought in discovery have not been preserved, production of retention policies

"is always what we do"—even if the failure to preserve occurred long before litigation commenced.

Jan. 24, 2024 Tr. 11:16-22. And Your Honor's ruling is no outlier: courts regularly require

production of retention policies, particularly when discovery raises questions about the existence or

non-existence of requested documents. *See, e.g.*, *Barton v. RCI, LLC*, 2013 WL 1338235, at *20–21

---

[1] Pursuant to Your Honor's ruling, JJHCS has produced its own retention policies going back 15 years, in connection with SaveOnSP's requests for certain documents dating back to that time.

Honorable Freda L. Wolfson, U.S.D.J.
August 9, 2024
Page 4

(D.N.J. Apr. 1, 2013) (agreeing that production of retention policies may "assist[] in disputes over what information is in Defendant's possession, custody, or control" and help narrow future discovery requests); *United States v. Coburn*, 2022 WL 357217, at *6 (D.N.J. Feb. 1, 2022) (requiring production of retention policies because they "are relevant to understanding the document production itself"); *see also Nike, Inc. v. Brandmania.com, Inc*., 2002 WL 32348549, at *12 (E.D. Pa. Oct. 7, 2002) (ordering production of document retention policies where party sought to explore claim that categories of requested document did not exist, and noting that "retention policies have been held discoverable in other cases").

Moreover, SaveOnSP's refusal to produce its own retention policies is at odds with SaveOnSP's own approach to discovery. Throughout this litigation, SaveOnSP has understood that discovery of retention policies is fair game, even absent any hint of a preservation issue. SaveOnSP's very first set of document requests to JJHCS included a request for JJHCS's (and other entities') document retention policies, and JJHCS agreed to produce its own retention policies for the time period relevant to this litigation. *See* Ex. 11 (JJHCS's Responses and Objections to SaveOnSP's First Set of Requests for Production, Request No. 45 & Response to Request No. 45). SaveOnSP has also requested retention policies from various third parties for no reason beyond its apparent belief that retention policies are generally relevant and discoverable. *See, e.g*., Ex. 12 (Lash Group Subpoena, Request No. 30; Ex. 13 (TrialCard Subpoena, Request No. 30). SaveOnSP cannot have its cake and eat it too. If SaveOnSP is entitled to document retention policies from JJHCS and even from third parties in the normal course of discovery, then SaveOnSP must produce its own retention policies when those policies are requested. Production should be required on that basis alone.

Honorable Freda L. Wolfson, U.S.D.J.
August 9, 2024
Page 5

In any event, SaveOnSP's attempt to carve out only a narrow circumstance in which discovery of retention policies is appropriate is as ironic as it is hypocritical, for discovery thus far has established exactly the "suggestion of spoliation" that SaveOnSP now claims is needed. *See supra* p.2. Even if Your Honor's prior ruling did not dictate the outcome here, and even if SaveOnSP had not already acknowledged the relevance of document retention policies by serving its own parallel requests, SaveOnSP's disclosures squarely raise the "suggestion of spoliation" that even SaveOnSP agrees warrants production of document retention policies.

\*     \*     \*

For the foregoing reasons, we request that Your Honor compel SaveOnSP to produce its document retention policies.

We appreciate Your Honor's consideration of this matter.

Respectfully submitted,

 */s/ Jeffrey J. Greenbaum*
Jeffrey J. Greenbaum

cc:  All counsel of record for SaveOnSP

# Exhibit 1



Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Andrew R. Dunlap
Partner
212.390.9005
adunlap@selendygay.com

March 29, 2023

**Via E-mail**

Harry Sandick
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
hsandick@pbwt.com

**Re:** ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC***
**(Case No. 2:22-cv-02632-JMV-CLW)**

Dear Harry,

We write in response to your March 9, 2023 letter regarding SaveOnSP's organizational charts, proposed custodians, and proposed collection and search protocol, and to your March 22, 2023 letter regarding potential additional search terms.

## I.  Organization Charts

You say that JJHCS was unable to read several of the organization charts in our February 22, 2023 production. We produced the documents as they were collected and in accordance with the November 22, 2022 ESI Protocol; we are working to see if it is possible to re-image them. We will produce any re-imaged documents as soon as we are able.

You note that we have not produced organization charts covering the period of January 1, 2017 to January 29, 2018. Our searches have not identified any organization charts for this period; if we identify any such charts, we will produce them.

## II.  Custodians

You ask if we have conducted a reasonable investigation of whether SaveOnSP's custodian Danielle Wagner would have been included on relevant communications received by Ted Mighells and Sarah Segerson, both of whom JJHCS requested as additional custodians. We have. Based on that investigation, it is unlikely that Mighells received unique relevant communications not also received by Wagner. There is some chance that Segerson received unique relevant communications; we will add her as a custodian.

You ask that we add three more custodians (Gary Meyn, Jennifer Menz, and Mariah DuRant) in addition to the four we agreed to add in our March 3, 2023 letter (Nicole Haas, Sarah Kancar, Brianna Reed, Laura McClung).

We will not add Gary Meyn as a custodian. Meyn stopped working for SaveOnSP on March 1, 2021. After a reasonable investigation, we do not believe that SaveOnSP retained Meyn's files.

We will also not add Jennifer Menz or Mariah DuRant as custodians. After a reasonable investigation, we believe they are unlikely to possess unique relevant documents.

## III.  Search Methodology

You ask if we will add four search terms proposed by JJHCS in its February 17, 2023 letter that we accepted in our March 3, 2023 letter (but inadvertently reproduced with minor variations) exactly as requested by JJHCS. We confirm we will run these searches exactly as requested by JJHCS, as follows:

- ((essential or "non-essential" or nonessential) W/10 (benefit*)) or EHB* OR NEHB*

- "non-med* switch*" OR "nonmed* switch*" OR ((patient OR non-med* OR non-med*) W/15 switch*) OR ((patient* OR chang* OR mov* OR switch*) W/30 (new W/5 (drug* OR med* OR brand*)))

- "open enrollment" OR ((summar* OR term) W/30 (program* OR plan* OR benefit* OR coverage* OR coinsurance OR deductible OR OOP OR "out-of-pocket"))

- "Intergovernmental Personnel Benefit Cooperative" OR IPBC OR (Rachel W/2 Harmon) OR rharmon@express-scripts.com OR ((presentation OR training OR video) W/5 (ESI OR "Express Scripts"))

You ask us to use seven additional or modified search terms (two requested in your February 17, 2023 letter and five in your March 9, 2023 letter). We will add the following terms:

- (("transfer*" OR reject* OR POS OR "point of sale" OR step edit*) W/15 pharm*) OR "Error Code 73" OR ((drug* OR med* OR fill*) W/15 (cover*))

- (adher* OR complian* OR comply* OR discontinue*) W/10 (trend* OR rate* or stat*)

- Accredo W/15 (transfer* OR assistance OR "savings card" OR "copay card" OR "co-pay card" OR enroll* OR accumulat* OR maximiz*)

- https://www.saveonsp.com* OR www.saveonsp.com* OR "reduce this exorbitant cost" OR "we offer an innovative specialty solution" OR "is committed to making

2

expensive medications more affordable for companies" OR "modifying their plan design" OR "how will our plan see savings generated"

We will not add the remaining terms, which generate an unduly burdensome number of additional unique documents:

| Search Proposed by JJHCS | Unique Additional Documents |
|---|---|
| ((infla* OR incr* OR 1,250 OR 1250 OR 1,666 OR 1666 OR 2,000 OR 2000 OR 5000 OR 5,000 OR 30%) W/30 (copay* OR co-pay* OR coins* OR co-ins* OR "out of pocket" OR OOP OR bucket*)) OR "ingredient cost" | 22,634 |
| (ESI OR "Express Scripts" OR Evernorth) W/15 (fee* OR ((master W/2 agreement) OR assistance OR "copay card" OR "co-pay card" OR "savings card" OR enroll* OR accumulat* OR maximiz* OR @express-scripts.com)) | 221,797 |
| exhaust* OR 'us* up" OR drain* OR complain* OR "r*n out" W/15 co-pay OR copay* OR support* OR cover* | 43,425 |

You ask (in your March 22, 2023 letter) if we intend to add any search terms or custodians following the parties' resolution of several outstanding RFP disputes. We will not add additional custodians. We will add the following search terms, which are names of Janssen drugs not yet represented in our search terms:

- Prezcobix

- Symtuza

- Valchlor

A full list of agreed custodians and search terms is attached as Appendix 1. These search parameters are more than sufficient to identify documents potentially responsive to JJHCS's requests. All told, using these parameters produces a total of almost 600,000 unique custodial documents for review.

## IV.    Non-Custodial Sources

You ask us to confirm that we will produce custodial documents in response to JJHCS's RFP No. 31. We will.

## V.    Call Center Recordings and Transcripts

You ask about our collection and production of call center records.

As background, following a reasonable investigation, we have determined that SaveOnSP stores information about calls with members of SaveOnSP-advised plans in three sources:  No platform's records contain metadata that would permit us to precisely identify only those call records relevant to this litigation without listening to each recording or reading each transcript.

Using Salesforce, we have identified 222,834 calls with patients who were prescribed a Janssen drug. For those patients who were also prescribed non-Janssen drugs, we cannot identify whether a call concerned a Janssen drug without listening to the associated audio recording or (if stored in Calabrio) reviewing the transcript. Based on our investigation so far, it appears that each audio recording or transcript requires several minutes to export from the platform on which it is stored. It would thus take SaveOnSP's systems, running 24 hours a day, well over a year to export all audio recordings and transcripts, which would be unduly burdensome and vastly disproportionate. (We continue to investigate ways to expedite the export process.)

We intend to proceed as follows. We will search Salesforce records using the names of members of SaveOnSP-advised plans who use a Janssen drug. We will produce the relevant portions of the Salesforce records for those plan members. We invite you to use these records to identify a reasonable number of calls for which you would like us to attempt to identify and produce the associated audio recording and/or transcript. We will attempt to identify those recordings or transcripts using the dates and times recorded in Salesforce of when those members spoke with SaveOnSP. We will then export from Chronicall and Calabrio the audio recordings and/or transcripts in those systems that match those dates and times and review them for production.

4

We reserve all rights and are available to meet and confer.

Best,

/s/ Andrew R. Dunlap

Andrew R. Dunlap
Partner

# Appendix 1

Agreed custodians as of March 29, 2023:

- Jody Miller
- Claudia Dunbar
- Ron Krawczyk
- Robert Saeli
- Nick Morrissey
- Jill Stearns
- Florencio Calderon
- Jenna Ordonez
- Amanda Larsen
- Emily Reckinger
- Jenna Benkelman
- Dave Chelus
- Alissa Langley
- Melanie Jerred
- Danielle Wagner
- Michelle Tabone
- Michael Heinrichs
- Nicole Haas
- Sarah Kancar
- Laura McClung
- Brianna Reed
- Sarah Segerson


Agreed search terms as of March 29, 2023:

- adherence W/5 trend*
- "Affordable Care Act" OR ACA
- analy* OR "white paper*" OR "research" OR report* OR publication* OR review* OR article* OR study OR studies W/15 "specialty med*" OR "specialty drug*" OR biolog* OR infus* or accumul* OR maximizer* OR copay* OR co-pay* OR coins* OR co-ins*
- BALVERSA OR erdafitinib
- benchmark* /10 (plan OR state OR EHB OR essential* OR NEHB or non-essential* OR non-essential*)
- CarePath OR Carpath OR Carepth
- care W/2 path
- (chang* or edit*) W/25 website
- "DARZALEX FASPRO" OR DARZALEX OR daratumumab OR hyaluronidase*
- email W/10 template

- ERLEADA OR apalutamide
- ESI W/10 fees
- ((essential or "non-essential" or nonessential) W/10 (benefit*)) or EHB* OR NEHB*
- "https://saveonsp.com"
- IMBRUVICA OR ibrutinib
- (inc* W/10 (save* OR saving*) W/15 manuf* OR assist*
- (inclu* OR add* OR remov* OR Structure) W/10 (benefit* OR "drug list*")
- "Intergovernmental Personnel Benefit Cooperative" OR IPBC OR (Rachel W/2 Harmon) OR rharmon@expressscripts.com OR ((presentation OR training OR video) W/5 (ESI OR "Express Scripts"))
- its.jnj.com
- J&J OR JnJ
- Janssen OR Jannsen OR Jansen OR Jannssen
- JJHCS OR JHCS OR JJCHS OR JJHS
- "Johnson & Johnson" OR "Johnson and Johnson"
- "Lash Group"
- "non-med* switch*" OR "nonmed* switch*" OR ((patient OR non-med* OR nonmed*) W/15 switch*) OR ((patient* OR chang* OR mov* OR switch*) W/30 (new W/5 (drug* OR med* OR brand*)))
- "open enrollment" OR ((summar* OR term) W/30 (program* OR plan* OR benefit* OR coverage* OR coinsurance OR deductible OR OOP OR "out-of-pocket"))
- OPSUMIT OR macitentan
- (patient* OR member*) W/5 (adher* OR complian* OR comply* OR dis-continu*)
- REMICADE OR infliximab
- RYBREVANT OR amivantamab*
- SIMPONI OR golimumab
- STELARA OR ustekinumab
- structure* W/4 (benefit* OR "drug list*")
- "Summary of Benefits"
- "Summary Plan"
- TRACLEER OR bosentan
- TREMFYA OR guselkumab
- TrialCard OR "Trial Card"
- UPTRAVI OR selexipag
- Ventavis OR iloprost
- ZYTIGA OR abiraterone
- (("transfer*" OR reject* OR POS OR "point of sale" OR step edit*) W/15 pharm*) OR "Error Code 73" OR ((drug* OR med* OR fill*) W/15 (cover*))
- (adher* OR complian* OR comply* OR discontinue*) W/10 (trend* OR rate* or stat*)

- Accredo W/15 (transfer* OR assistance OR "savings card" OR "copay card" OR "co-pay card" OR enroll* OR accumulat* OR maximiz*)
- https://www.saveonsp.com* OR www.saveonsp.com* OR "reduce this exorbitant cost" OR "we offer an innovative specialty solution" OR "is committed to making expensive medications more affordable for companies" OR "modifying their plan design" OR "how will our plan see savings generated"
- Prezcobix
- Symtuza
- Valchlor

# Exhibit 2

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Elizabeth H. Snow
Associate
212.390.9330
esnow@selendygay.com

February 20, 2024

**Via E-mail**

Sara Arrow
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
sarrow@pbwt.com

Re:   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
      LLC*** **(Case No. 2:22-cv-02632-JKS-CLW)**

Dear Sara,

   We write in response to your February 9, 2024 letter regarding Chatter messages.

   *First*, as we have explained, SaveOn accurately represented that it "preserved all communications on the 'Chatter' platform and will produce relevant communications therefrom." May 12, 2023 Ltr. from A. Dunlap to H. Sandick at 1. To the extent that you misunderstood us to represent that SaveOn had preserved all communications ever made on the Chatter platform, we have now clarified that point several times. As we have explained, SaveOn transferred from one Salesforce platform to another in June 2021, eleven months prior to this litigation, as part of which Chatter messages prior to that date were not retained. Any pre-June 2021 Chatter messages in SaveOn's possession exist solely in the "████████" emails that SaveOn has produced.

   *Second*, you accuse us of a "lie" that SaveOn's prior productions contained all responsive Chatter messages from after June 2021, because we agreed to produce three Chatter messages that you said were "missing" from those prior productions. Not so. We included those messages in our prior productions as part of SaveOn's "████████," as you note in your January 26 Letter; *see* SOSP_0710014 (████████████████); SOSP_0771243 (████████ ██████████████); SOSP_0778531 (██████████████████). We simply agreed to produce them again in a different format at your request.



Sara Arrow
February 20, 2024

*Third*, you ask us to investigate whether SaveOn has not produced any relevant Chatter messages. We will review SaveOn's Chatter messages—again—and will produce any additional relevant, non-privileged messages.

*Finally*, you say that SaveOn appears to have produced only standalone Chatter messages and not same-day surrounding messages and you ask us to produce the latter. The majority of Chatter messages produced in SOSP_1004931 are either the sole message sent in the conversation that day or cover distinct topics from other messages sent in the same conversation that day. To avoid a dispute, however, SaveOn will produce same-day Chatter messages between the same senders and recipients for all responsive standalone Chatter messages.

We reserve all rights and are available to meet and confer.

Best,

/s/ Elizabeth H. Snow

Elizabeth H. Snow
Associate

# Exhibit 3

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Meredith Nelson
Associate
212 390 9069
mnelson@selendygay.com

September 20, 2023

**<u>Via E-mail</u>**          ATTORNEYS' EYES ONLY

Cassie Deskus
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
cdeskus@pbwt.com

**Re:** ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear Cassie,

We write in response to your August 25, 2023 letter concerning SaveOnSP's data production.

## I.     Patient Identifying Data

JJHCS requests that SaveOnSP produce data sufficient to identify a given patient in both SaveOnSP's and JJHCS's produced data, including the individual patient's TrialCard enrollment number, name, date of birth, and social security number ("SSN"). SaveOnSP will provide names and dates of birth for patients who appear in SaveOnSP's data. SaveOnSP possesses TrialCard enrollment numbers for most, but not all, patients who appear in its produced data. SaveOnSP will produce the TrialCard enrollment numbers that it has. SaveOnSP does not possess patient SSNs.

## II.     SaveOnSP's Enrollment Data

You state that SaveOnSP's data does not contain a field identifying whether a patient is enrolled in the SaveOnSP program. SaveOnSP possesses data only for patients who are using the copay assistance benefit administered by SaveOnSP. All data SaveOnSP has produced is for patients using that benefit.

## III.   Data Timeframe

You note that SaveOnSP's data production contains limited transactions from 2017 and no transactions from 2016. JJHCS asks SaveOnSP to produce data from these years. The data SaveOnSP has produced to date is the data currently available on SaveOnSP's Salesforce system. Based on our investigation, data from earlier years was not migrated to SaveOnSP's current system and may not have been preserved. SaveOnSP is currently investigating whether there are any other sources from which transaction-level data from 2016 or 2017 can be extracted.

You also ask that SaveOnSP agree to refresh its data production through the present. As we have discussed previously, SaveOnSP is willing to refresh its data production through the present on a mutually agreed date.

## IV.   Additional Payment Data

You state that SaveOnSP's data does not contain sufficient data for JJHCS to determine the amount paid by SaveOnSP or the plan sponsor for a given transaction and ask that SaveOnSP provide this information. SaveOnSP does not pay any amount in any transaction.



As we have explained previously, if a patient attempts to sign up for copay assistance and consents to SaveOnSP monitoring their pharmacy account, then they qualify for the copay assistance benefit administered by SaveOnSP and their plan will cover any outstanding costs of their medication after copay assistance is applied.

You ask that we provide transaction-level data indicating the type of insurance plan (*e.g.*, PPO, HMO, etc.). As we stated in our March 31, 2023 letter, Save-OnSP does not possess this data. You also ask that we provide copay schedules for all relevant years. Our clarification that the copay amount for each transaction in



## V.   Payment Data

*First*, you ask us to confirm that the value in the ▮▮▮▮▮▮▮▮▮▮ That is correct.

*Second*, you ask us to confirm that the ▮▮▮▮▮▮▮▮▮▮ That is not correct. The "▮▮▮▮▮▮▮▮▮▮" is the

Cassie Deskus
September 20, 2023



*Third*, you ask us to confirm that

That is not correct. As stated above,

*Fourth*, you ask us to confirm

That is not correct.

*Fifth*, you state that you have

*Sixth*, you state that you have

. You ask us to confirm whether this understanding is correct. We are investigating this issue.

*Seventh*, you ask us to confirm that

*Finally*, you ask us to confirm that

Cassie Deskus
September 20, 2023

## VI.    Additional Clarifying Information

*First*, you ask us to provide a data dictionary. We will do so.

*Second*, 

*Third*,

*Fourth*,

Regards,

/s/ Meredith Nelson

Meredith Nelson
Associate

4

# **Exhibit 4**

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Meredith Nelson
Associate
212.390.9069
mnelson@selendygay.com

March 8, 2024

**Via E-mail**

Julia Long
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jlong@pbwt.com

Re:  *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC* **(Case No. 2:22-cv-02632-JKS-CLW)**

Dear Julia,

We write regarding SaveOn's production of data in response to J&J's Requests for Production Nos. 41 and 42, as well as in response to your January 10, 2024 letter and subsequent emails.

*First*, SaveOn is producing today updated spreadsheets containing the ▓▓▓▓▓▓▓▓▓▓▓▓ that it previously produced on June 2, 2023. These spreadsheets now include the ▓▓▓▓▓▓▓▓▓▓ that SaveOn has agreed to produce.

*Second*, we write with additional information regarding the 2016 and 2017 data that SaveOn produced last week. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Based on our investigation, it is our understanding that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Sincerely,

/s/ Meredith Nelson

Meredith Nelson

Julia Long
March 8, 2024


Associate

# Exhibit 5



Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Elizabeth Snow
Associate
212 390 9330
esnow@selendygay.com

March 21, 2024

**<u>Via E-mail</u>**

Sara Arrow
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
sarrow@pbwt.com

**Re:** ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear Sara,

We write regarding SaveOn's production of text messages. Based on an investigation, we have learned the following.

*First,* until December 14, 2023, Jill Stearns unwittingly maintained an auto-delete feature on her phone that deleted texts more than a year old; she disabled this feature in December 2023. Stearns's messages prior to December 2022 were not preserved. Our investigation indicates that Stearns rarely texts as part of her work for SaveOn and we have identified no responsive text message threads involving Stearns between May 2022 (when the Complaint in this case was filed) and December 2022 that were produced from the files of other custodians. Stearns has preserved all potentially responsive texts from December 2022 forward.

*Second*, before November 2023, Nick Morrissey did not preserve his text messages. Our investigation indicates that Morrissey rarely texted for work, and we have identified only one responsive text message conversation involving Morrissey between May 2022 and November 2023 that was produced from the files of other custodians. Morrissey has preserved all potentially responsive texts from November 2023 forward.

*Third*, Ron Krawczyk likely preserved all relevant text messages, but may not have. Krawczyk purchased a new phone in March 2022, prior to the initiation of this litigation, and his text messages apparently were not transferred to his new phone. Krawczyk may have deleted text messages when dealing with storage

Sara Arrow
March 21, 2024

capacity issues on his phone. He did not target messages involving SaveOn for deletion and we have no reason to believe that Krawczyk deleted responsive texts. Krawczyk stopped this practice on March 11, 2024. Our investigation indicates that Krawczyk does not text often, for work or otherwise and we have identified no responsive text message threads involving Krawczyk between May 2022 and November 2023 that were produced from the files of other custodians. Krawczyk has preserved all potentially responsive texts from March 2024 forward.

To avoid doubt, each of these custodians received and acknowledged a litigation hold notice sent by SaveOn its officers and employees at the beginning of this litigation. The litigation hold notice informed them of their duty to preserve all relevant documents and communications, including text messages.

Best,

/s/ Elizabeth Snow

Elizabeth H. Snow
Associate

# Exhibit 6

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Elizabeth Snow
Associate
212 390 9330
esnow@selendygay.com

May 10, 2024

**Via E-mail**

Katherine Brisson
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
kbrisson@pbwt.com

**Re:** ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear Katherine,

We write in response to Johnson & Johnson Health Care Systems, Inc.'s
(with its affiliates, "J&J") April 17, 2024 letter regarding Save On SP, LLC's
("SaveOn") custodian text messages.

*First*, you assert that SaveOn's statement on September 25, 2023 that it had
gathered and reviewed its custodians' text messages was "evidently false," at least
as applied to Ron Krawczyk, Nick Morrissey, and Jill Stearns. As we explained in
our March 21, 2024 letter, SaveOn took reasonable steps to preserve the text mes-
sages of all custodians, including those of Krawczyk, Morrissey, and Stearns.
SaveOn sent each of these custodians a litigation hold, which specifically instructed
the recipients to preserve text messages, and each affirmatively replied that they
would comply with it. These custodians' failure to preserve portions of their texts
was inadvertent. SaveOn was unaware of these issues when it wrote its September
25, 2023 letter. Once SaveOn subsequently learned of these issues it corrected
them and informed J&J.

*Second*, you ask about SaveOn's preservation and collection of Krawczyk's
texts. As we explained, SaveOn instructed Krawczyk to preserve all relevant docu-
ments in a litigation hold and he responded that he would do so. Krawczyk pre-
served some text messages before March 2024, but none hit on our agreed-upon
search terms. Krawczyk recalls deleting some texts from the relevant time period
but we do not know what those texts are. SaveOn collected all text messages that

Krawczyk preserved from April 1, 2016 to November 7, 2023. We reviewed those messages and determined that none are responsive.

*Third,* you ask about SaveOn's preservation of and production of Stearns's texts. You say that SaveOn declined to respond to gaps in the production of those texts that J&J identified; in fact we did respond, stating that "[w]e have investigated the six purported 'gaps' that you identified in your January 26, 2023 letter and found no additional responsive text messages." *See* March 22, 2024 Ltr. from E. Snow to S. Arrow at 2. During our investigation, we identified unproduced text messages referenced in four of the documents you cited, *see* SOSP_0623834, SOSP_0511081, SOSP_0862836, SOSP_0052489, one of which referenced Stearns's texts, *see* SOSP_0052489. We determined each of those text messages was not responsive. We were unable to locate the text messages referenced in two emails you that cited. *See* SOSP_0419540, SOSP_0738033.

You say that J&J identified "numerous" instances of Stearns "regularly texting" as part of her SaveOn work, citing to four of the six emails you identified as showing "gaps" in the text message production. *See* SOSP_0862836; SOSP_0419540; SOSP_0738033; SOSP_0052489. One does not show that Stearns texted. *See* SOSP_0862836. The remaining three do not amount to "numerous instances" of texting or proof of "regular[] texting."

You also say that SaveOn "failed to disclose" that Stearns deleted text messages until six weeks after you identified these gaps in our February 16, 2024 letter; in fact, prior to February 16, 2024, we were working on identifying potential issues with text message preservation for Stearns, Morrissey, and Krawczyk and we disclosed those issues once we completed the investigation.

You ask whether SaveOn has preserved and collected any text messages from Stearns and, if so, from when. SaveOn has preserved her texts from November 27, 2022 forward.[1] You ask whether SaveOn is still in the process of collecting and preserving Stearns' text messages prior to December 14, 2023; SaveOn has preserved those messages and has finished collecting any of Steans' preserved messages that were sent on or before November 7, 2023, the end of the current discovery period.

*Fourth,* you stated that "[we] have repeatedly represented that [we] would produce text messages from Morrissey without qualification" citing to our November 17, 2023 letter, our Dec. 15, 2023 letter, and our February 16, 2024 letter. That is not accurate. In our November 17, 2023 letter, prior to learning about Morrissey's failure to preserve some text messages, we stated that "[w]e have produced or will produce any non-privileged, responsive texts from the following custodians

---

[1] Note, we previously stated that "Stearns's messages prior to December 2022 were not preserved." March 21, 2023 Ltr. from E. Snow to S. Arrow re. Text Messages at 1. We now understand that, upon collection, SaveOn preserved Stearns's texts from November 27, 2022 forward.

George LoBiondo
May 10, 2024

[including] Nick Morrissey." In our December 15, 2023 letter, we did not address Morrissey's texts; we stated that we intended to finalize our text message productions for the pre-refresh collection time period by January 15, 2023. In our February 16, 2024 letter, we stated that "[w]e are in the process of collecting and reviewing all responsive, non-privileged text messages identified by our search terms through November 7, 2023" and "[w]e intend to complete our production of those texts by March 31, 2024." Each statement was consistent with our understanding at the time and our ongoing investigation into preservation issues.

You also ask why Morrissey's text messages were not preserved before November 2023. As explained, we took reasonable steps to preserve Morrissey's documents, including by sending him a litigation hold notice, which he read and acknowledged. We were unaware of any potential issue with Morrissey's preservation before the end of November 2023.

*Fifth,* you state that SaveOn has not produced text messages from Emily Reckinger, Amanda Larsen, or Sarah Kancar. We collected their text messages, reviewed them, and determined that none were responsive. We have identified no issues with the preservation of Sarah Kancar's text messages but recently learned that a small number might not have been collected; we intend to collect those texts and will produce any that are responsive and non-privileged. We have no reason to believe there are any preservation or collection issues with Amanda Larsen's text messages.

We recently identified one issue with preservation of Emily Reckinger's text messages. On May 7, 2024, Reckinger notified us for the first time that she had recently enabled an auto-delete feature on her phone that deleted texts more than a year old; as a result, Reckinger's messages prior to November 2022 were not preserved. When she enabled this feature, she did not understand that doing so might violate the litigation hold that she received from SaveOn. She disabled this feature on May 7, 2024. Reckinger has preserved all potentially responsive texts from November 2022 forward.

*Finally,* you ask us to identify (1) every custodian from whom we collected text messages and other mobile data; (2) the time periods of preservation; (3) the date by which we intend to finish producing relevant, non-privileged texts; and (4) any additional undisclosed gaps or deficiencies in SaveOn's preservation and collection of text messages and mobile data. We respond as follows: (1) SaveOn has collected text messages from Jody Miller, Claudia Dunbar, Rob Saeli, Ron Krawczyk, Michael Heinrichs, Amanda Larsen, Sarah Kancar, Ayesha Zulqarnain, Alissa Langley, Jill Stearns, Jenna Ordonez, Emily Reckinger, Danielle Wagner, and Brianna Reed; (2) SaveOn preserved texts for the discovery period from April 1, 2016 forward, except as otherwise disclosed; (3) SaveOn has completed production of texts except for Kancar's text messages; and (4) we are not aware of any additional gaps or deficiencies in preservation of text messages.

George LoBiondo
May 10, 2024

      We reserve all rights and are available to meet and confer.

Best,

/s/ Elizabeth Snow

Elizabeth H. Snow
Associate

# Exhibit 7



April 17, 2024

Katherine Brisson
(212) 336-2552

**By Email**

Elizabeth Snow, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:     **SaveOnSP's Deficient Text Message Production**
           *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
           Case No. 2:22-cv-02632 (JKS) (CLW)

Dear Elizabeth:

We write in response to your March 21, 2024 letter regarding SaveOnSP's production of text messages.

As you know, discovery of text messages has been the subject of extensive correspondence between the parties. For over one year, SaveOnSP has repeatedly represented that it would review and produce relevant text messages—including from custodians Jill Stearns, Ron Krawczyk, and Nick Morrisey—and was in the process of doing so. In fact, as discovery progressed, SaveOnSP assured JJHCS that this review and production process was proceeding as planned and was at or nearing completion.[1]

---

[1] In your February 6, 2023 letter, you committed to producing text messages and other mobile data for Jody Miller, Claudia Dunbar, Ron Krawczyk, and Rob Saeli. Feb. 6, 2023 Ltr. from M. Nelson to H. Sandick at 3 n.2. For months following this representation, you confirmed that you were continually reviewing text messages and other mobile data and would make productions on a rolling basis. *See, e.g.*, May 12, 2023 Ltr. from A. Dunlap to H. Sandick at 1 (confirming that SaveOnSP "will produce relevant text messages and other mobile data for the four custodians we identified in our February 6, 2023 letter" and that SaveOnSP will produce text messages for custodians added after February 6, 2023 if those custodians used text messages to conduct SaveOnSP business); June 30, 2023 Ltr. from E. Snow to G. LoBiondo 1 (noting that SaveOnSP "continue[s] to review [text messages]" and "will continue to make productions on a rolling basis"); July 26, 2023 Ltr. from E. Snow to K. Brisson at 2 ("SaveOnSP will produce [text] messages on or before September 24, 2023."); Sept. 25, 2023 Ltr. from E. Snow to G. LoBiondo at 1 (confirming that SaveOnSP "gathered and reviewed that data [and] are producing any relevant, non-privileged text messages or data" for the custodians who texted for SaveOnSP-related business); Oct. 13, 2023 Ltr. from E. Snow to S. Arrow at 2 ("SaveOnSP has reviewed and produced the text messages of several custodians and will

---

Elizabeth Snow, Esq.
April 17, 2024
Page 2

Despite these ongoing representations, you disclosed for the very first time in your March 21, 2024 letter that SaveOnSP did not preserve the text messages and other mobile data of several SaveOnSP custodians who conduct SaveOnSP business using their mobile phones. Specifically, you advised that the text messages and mobile data associated with Ron Krawczyk, Jill Stearns, and Nick Morrissey either were deleted or may have been deleted. These representations directly contradict your previous correspondence on the topic. In fact, on September 25, 2023, you represented that, for custodians who used texts and other mobile data for SaveOnSP business, you "*gathered and reviewed* that data [and] are producing any relevant, non-privileged text messages or data." Sept. 25, 2023 Ltr. from E. Snow to G. LoBiondo at 1 (emphasis supplied). Based on your March 21 letter, this is evidently false, at least as applied to Krawczyk, Stearns, and Morrissey.

This is particularly egregious as it pertains to Krawczyk's text messages. SaveOnSP identified Krawczyk as a custodian from whom it would collect text messages more than a year ago. *See* Feb. 6, 2023 Ltr. from M. Nelson to H. Sandick at 3 n.2. You now state that Mr. Krawczyk "may not have" preserved his text messages during the relevant period and has only begun to do so from March 2024 forward. March 21, 2024 Ltr. from E. Snow to S. Arrow at 1–2. Moreover, to date, you have not produced a single text message for which Krawczyk is the custodian. Please explain if you have preserved any text messages from Krawczyk, and if so, the time period applicable to the preserved text messages. If you failed to collect and preserve Krawczyk's text messages prior to March 11, 2024, the date on which you claim Krawczyk stopped his "practice" of deleting text messages, please explain why you failed to do so.

With respect to Stearns, we specifically highlighted the gaps in your production of text messages from Stearns in our January 26, 2024 letter. *See* Jan. 26, 2024 Ltr. from K. Brisson to E. Snow at 2. You declined to respond to any of the discrepancies we identified in your production as they pertain to Stearns' text messages. You similarly failed to disclose that Stearns deleted all text messages on her phone prior to December 2023, only revealing this information six weeks after our identification of these gaps. *See* Feb. 16, 2024 Ltr. from E. Snow to K. Brisson at 1; Mar. 21, 2024 Ltr. from E. Snow to S. Arrow at 1. Furthermore, although you claim that Stearns "rarely texts as part of her work for SaveOn," JJHCS has identified numerous instances of Stearns regularly texting as part of her work at SaveOnSP. *See* Jan. 26, 2024 Ltr. from K. Brisson to E. Snow at 2 (citing SOSP_0862836; SOSP_0419540; SOSP_0738033; SOSP_005489). Accordingly, please explain whether you have preserved any text messages from Stearns and, if

---

complete production of text messages promptly."); Nov. 17, 2023 Ltr. from E. Snow to S. Arrow at 1 (noting that SaveOnSP "[has] produced or will produce any non-privileged, responsive texts from the following custodians: Nick Morrissey, Jenna Ordonez, Emily Reckinger, Danielle Wagner, Jill Stearns, Alissa Langley, Michael Heinrichs, Amanda Larsen, Sarah Kancar, and Ayesha Zulqarnain."); Dec. 15, 2023 Ltr. from E. Snow to S. Arrow at 1 (noting that SaveOnSP intended to complete its "pre-refresh" production of text messages by January 15, 2024); Feb. 16, 2024 Ltr. from E. Snow to K. Brisson at 1 (noting that SaveOnSP intended to complete its production of text messages through the refresh time period by March 31, 2024).

Elizabeth Snow, Esq.
April 17, 2024
Page 3

so, the time period applicable to those preserved text messages.  If you are still in the process of collecting and preserving Stearns' text messages prior to December 14, 2023, the date on which Stearns disabled her phone's auto-delete feature, please explain why.

With respect to Morrissey, you have yet to produce a single text message on which he is listed as a custodian—despite representing over four months ago that you had or would do so.  *See* Nov. 17, 2023 Ltr. from E. Snow to S. Arrow at 1.  Although you claim that "Morrissey did not preserve his text messages," you have repeatedly represented that you would produce text messages from Morrissey without qualification.  *See id.*; Dec. 15, 2023 Ltr. from E. Snow to S. Arrow at 1; Feb. 16, 2024 Ltr. from E. Snow to K. Brisson at 1.  Please explain, in as much detail as possible, why Morrissey's text messages were not preserved before November 2023.

Finally, you have also stated that you would produce text messages from, among others, Emily Reckinger, Amanda Larsen, and Sarah Kancar.  *See* Nov. 17, 2023 Ltr. from E. Snow to S. Arrow at 1.  To date, you have not produced any text messages that list Reckinger, Larsen, or Kancar as a custodian.[2]

In light of the numerous exchanges we have had with respect to SaveOnSP's preservation, collection, review, and production of text messages, please confirm (1) every custodian from whom you have collected text messages and other mobile data; (2) the time period for which you have preserved each custodian's text messages and mobile data; (3) the date on which you intend to complete your production of all relevant, non-privileged, text messages from June 1, 2016 through November 7, 2023; and (4) any additional undisclosed gaps or deficiencies in your preservation and collection of text messages and mobile data.

Please respond by April 24.

Very truly yours,

*/s/ Katherine Brisson*
Katherine Brisson

---

[2] On April 5, 2024, you represented that SaveOnSP "will produce responsive documents and communications from Ms. Reckinger's personal email account and personal computer."  *See* Apr. 5, 2024 Ltr. from E. Snow to K. Brisson at 1.  Nearly six months ago, however, you also agreed to produce text messages and mobile data from Reckinger.  *See* Nov. 17, 2023 Ltr. from E. Snow to S. Arrow at 1.  Please confirm that you will collect and produce relevant text messages and mobile data from Reckinger.

# Exhibit 8

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

**Selendy|Gay**

Meredith Nelson
Associate
212.390.9069
mnelson@selendygay.com

August 2, 2024

**Via E-mail**

Elisabeth Shane
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
eshane@pbwt.com

Re: *Johnson & Johnson Health Care Systems Inc. v. Save On SP,*
*LLC* (Case No. 2:22-cv-02632-JKS-CLW)

Dear Elisabeth,

We write in response to your July 16 letter regarding SaveOn's call record-ings.

As you are aware, we have been investigating the feasibility of identifying and producing call recordings associated with the Salesforce entries J&J identified in its letter. SaveOn has expended considerable efforts to identify these calls and has developed a process by which it can match call records to Salesforce entries using certain criteria, including the call date and the phone number associated with the call. This process requires a significant amount of time because, among other things, it requires SaveOn to download the entire universe of call recordings asso-ciated with SaveOn's call centers before it can match those calls to Salesforce rec-ords using metadata.

Based on the results of this process so far, we do not anticipate that SaveOn will be able to locate call records for each Salesforce entry J&J has identified. This is so for several reasons, including that (1) some entries do not reflect calls, *e.g.*, Row 3690; (2) some entries are duplicates, *e.g.*, Rows 749-752; (3) some record-ings are reflected in more than one Salesforce entry; and (4) for some entries, no corresponding recording can be located despite considerable effort. We currently expect that the process of determining what call records SaveOn can locate will take several more weeks. We will provide an update once that process is complete.

Elisabeth Shane
August 2, 2024

While we reserve all rights, we are willing in principle to produce available call recordings that are responsive to J&J's narrowed request in exchange for J&J's agreement to produce call recordings requested by SaveOn. SaveOn's original request was made to J&J for call recordings, however, was made in March 2024, before J&J produced any call notes from the refresh period. J&J's request for call recordings covers both the pre-refresh and refresh time periods. To ensure that the parties' agreement is reciprocal, SaveOn is in the process of reviewing the refresh period call notes that J&J has since produced and will identify the additional recordings from the refresh period that it believes J&J should produce. SaveOn will make those additional requests to J&J once we have completed our review.

Finally, we have repeatedly asked J&J and TrialCard to provide us with information about the feasibility of locating and producing the 1,500 call recordings we previously requested. It has been nearly four months since TrialCard told us that it was investigating the feasibility of producing these recordings. Please provide that information without further delay.

We reserve all rights.


Regards,

/s/ Meredith Nelson

Meredith Nelson
Associate

# **Exhibit 9**

E. Evans Wohlforth, Jr.
ROBINSON & COLE LLP
666 Third Avenue, 20th Floor
New York, NY 10174
212-451-2954
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth Snow (admitted *pro hac vice*)
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JKS) (CLW) <br><br> **DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S TWELFTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

To:     Jeffrey J. Greenbaum, Esq.
        SILLS CUMMIS & GROSS, P.C.
        One Riverfront Plaza
        Newark, New Jersey 07102
        973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New York

*Attorneys for Plaintiff Johnson & Johnson*
*Health Care Systems Inc.*

Pursuant to Federal Rule of Civil Procedure 34, Defendant Save On SP, LLC ("Save-OnSP"), by and through its undersigned counsel, responds and objects to Plaintiff Johnson & Johnson Health Care Systems Inc.'s ("JJHCS") Twelfth Set of Requests for Production, dated April 12, 2024 (the "Requests"). If SaveOnSP learns that in some material respect its responses are incomplete or incorrect, SaveOnSP will correct them if the additional or corrective information has not otherwise been made known to JJHCS during the discovery process or in writing. Fed. R. Civ. P. 26(e)(1)(A).

## OBJECTIONS TO DEFINITIONS

1. SaveOnSP objects to the definition of the term "SaveOnSP" as including attorneys and accountants who may be outside of SaveOnSP's possession, custody, and control. SaveOnSP interprets the term "SaveOnSP" to mean SaveOnSP, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, and all persons or entities acting or purporting to act on behalf or under the control of SaveOnSP.

2. SaveOnSP objects to the definition of "You" and "Your" to the same extent that it objects to the definition of "SaveOnSP."

3. SaveOnSP objects to the definition of "SaveOnSP Program," as described in Complaint ¶¶ 9-17 and ¶¶ 50-88, because it mischaracterizes SaveOnSP's services. SaveOnSP will not

2

use this definition. SaveOnSP instead interprets this term to mean the services that it provides to health plans.

4.     SaveOnSP objects to the definition of "SaveOnSP Client" to the same extent that it objects to the definition of "SaveOnSP Program." SaveOnSP instead interprets this term to mean any entity that has entered an agreement with SaveOnSP to provide the services at issue in this case.

**OBJECTIONS TO INSTRUCTIONS**

5.     SaveOnSP objects to Instruction No. 12 to the extent that JJHCS attempts to impose requirements on SaveOnSP beyond those required by the Federal Rules of Civil Procedure, agreed to by the parties, or ordered by the Court.

6.     SaveOnSP objects to Instruction No. 14 to the extent that it asks SaveOnSP to produce Documents and Communications outside of its possession, custody, and control or asks SaveOnSP to provide information beyond that which SaveOnSP can identify after a reasonable search. SaveOnSP will produce relevant, non-privileged documents within its possession, custody, or control that it can identify after a reasonable search.

7.     SaveOnSP objects to Instruction No. 16 to the extent that JJHCS attempts to impose requirements on SaveOnSP beyond those required by the Federal Rules of Civil Procedure, agreed to by the parties, or ordered by the Court.

**SPECIFIC RESPONSES AND OBJECTIONS**

**REQUEST NO. 116:** All Documents or Communications regarding any actual or contemplated efforts to provide money, gift cards, or any other benefit to any person enrolled in a health or pharmacy benefit plan offered by a SaveOnSP Client, as an incentive to enroll in or use the SaveOnSP Program or any other service that SaveOnSP offers or provides.

**RESPONSE:** SaveOnSP objects to this Request because there is no "SaveOnSP Program" as defined in the Requests. SaveOnSP interprets this term to mean the services that it provides to

3

health plans. SaveOnSP interprets "SaveOnSP Client" to mean health plans that receive the services at issue in this case.

SaveOnSP objects to this Request to as seeking documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request as not proportional to the needs of the case. The burden and expense of producing all such documents outweighs any marginal relevance of the material requested.

SaveOnSP will not produce documents in response to this Request.

**REQUEST NO. 117:** All Documents and Communications related to the "███████████████████████████████████████████████████" described in SOSP_0815168, as well as all Documents and Communications related to ████████████████████████.

**RESPONSE:** SaveOnSP objects to this Request as seeking documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request to the extent that it seeks documents that are privileged.

SaveOnSP objects to this Request as not proportional to the needs of the case. The burden and expense of producing all such documents outweighs any marginal relevance of the material requested.

SaveOnSP will not produce documents in response to this Request.

**REQUEST NO. 118:** Documents sufficient to show SaveOnSP's document retention policies, including but not limited to all final versions of any document retention policy that SaveOnSP may have maintained during the Relevant Time Period.

**RESPONSE:** SaveOnSP objects to this Request as seeking documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request as not proportional to the needs of the case. The burden and expense of producing such documents outweighs any marginal relevance of the material requested.

4

SaveOnSP will not produce documents in response to this Request.

**REQUEST NO. 119:** For the period March 1, 2023 to the present, all Documents and Communications relating to every reason why ███████████████████████████████ █████████████ . *See* Apr. 10, 2024 Special Master Memorandum Order at 7.

**RESPONSE:** SaveOnSP objects to this Request as seeking documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request to the extent that it seeks documents that are privileged.

SaveOnSP objects to this Request as not proportional to the needs of the case. The burden and expense of producing all such documents outweighs any marginal relevance of the material requested.

SaveOnSP will not produce documents in response to this Request.

**REQUEST NO. 120:** For the period May 1, 2022 to the present, all Documents and Communications related to any actual or contemplated efforts to prevent employees from discussing patient harm associated with the SaveOnSP Program, or JJHCS's claims or allegations regarding SaveOnSP at issue in this Action, outside of SaveOnSP. *See* Apr. 3, 2024 Tr. at 119:19–25.

**RESPONSE:** SaveOnSP objects to this Request because there is no "SaveOnSP Program" as defined in the Requests. SaveOnSP interprets this term to mean the services that it provides to health plans.

SaveOnSP objects to this Request as seeking documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request as not proportional to the needs of the case. The burden and expense of searching for and producing such documents outweighs any marginal relevance of the material requested.

SaveOnSP will not produce documents in response to this Request.

**REQUEST NO. 121:** For the period May 1, 2022 to the present, all Documents and Communications concerning any contemplated or actual efforts to discipline, fire, sue, retaliate

against, or take any other adverse action against ███████████████████████████████ ████████████████████ *See* Apr. 3, 2024 Tr. at 111:15–25.

**RESPONSE:** SaveOnSP objects to this Request as seeking documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request to the extent that it seeks documents that are privileged.

SaveOnSP objects to this Request as not proportional to the needs of the case. The burden and expense of producing all such documents outweighs any marginal relevance of the material requested.

SaveOnSP will not produce documents in response to this Request.

**REQUEST NO. 122:** For the period May 1, 2022 to the present, all Documents and Communications concerning ███████████████████████████████ (other than Theodore Mighells or Paula Mighells) ███████████████████ █████████████████████████

**RESPONSE:** SaveOnSP objects to this Request as seeking documents that are irrelevant to the claims or defenses in this action.

SaveOnSP objects to this Request to the extent that it seeks documents that are privileged.

SaveOnSP objects to this Request as not proportional to the needs of the case. The burden and expense of producing all such documents outweighs any marginal relevance of the material requested.

SaveOnSP will not produce documents in response to this Request.

Dated:  May 13, 2024         By:  /s/    <u>E. Evans Wohlforth, Jr.       </u>
                                              E. Evans Wohlforth, Jr.
                                              ROBINSON & COLE LLP
                                              666 Third Avenue, 20th Floor
                                              New York, NY 10174
                                              212-451-2954
                                              ewohlforth@rc.com

                                              Philippe Z. Selendy
                                              Andrew R. Dunlap
                                              Meredith Nelson
                                              Elizabeth Snow
                                              SELENDY GAY ELSBERG, PLLC
                                              1290 Avenue of the Americas
                                              New York, NY 10104
                                              212-390-9000
                                              pselendy@selendygay.com
                                              adunlap@selendygay.com
                                              mnelson@selendygay.com
                                              esnow@selendygay.com

                                              *Attorneys for Defendant Save On SP, LLC*

# Exhibit 10

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Meredith Nelson
Associate
212.390.9069
mnelson@selendygay.com

June 7, 2024

**Via E-mail**

Bonita L. Robinson
Patterson Belknap Webb & Tyler, LLP
1133 Avenue of the Americas
New York, NY 10036
brobinson@pbwt.com

Re:  ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
     LLC**, Case No. 2:22-cv-02632 (JKS) (CLW)*

Dear Bonnie,

  We write concerning J&J's May 24, 2024 letter regarding J&J's 12th RFPs.
As requested, please find below SaveOn's counterproposals, including the results
of our investigations discussed at the parties' May 20, 2024 meet-and-confer.

  **Request No. 116.** You ask SaveOn to confirm the results of its investiga-
tion for evidence of "incentives for member enrollment other than gift cards." May
24, 2024 Ltr. at 1. Based on our investigation, the incentive discussed during the
parties' May 20, 2024 meet-and-confer was the only effort responsive to this Re-
quest. SaveOn has produced multiple documents related to this incentive. *See, e.g.*,
SOSP_0942283, SOSP_0354799, SOSP_0355240, SOSP_0355549,
SOSP_0425206, and SOSP_1053132. SaveOn proposes the following search term
to capture any additional responsive documents, run over all custodians from April
1, 2016 to November 7, 2023: ("gift card" AND incentiv*) W/20 (enroll* OR join*
OR use OR "sign up" OR signup OR regist*).

  **Request No. 117.** You ask SaveOn to confirm that it did not draft or circu-
late a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in SOSP_0815168. May 24, 2024 Ltr. at 2.
Based on our investigation, SaveOn did not ▮▮▮▮▮▮▮▮▮▮. SaveOn will
therefore not produce documents responsive to this Request.

  **Request No. 118.** SaveOn declines to produce documents in response to
this Request. Document retention policies are generally irrelevant absent a

Bonita L. Robinson
June 7, 2024

suggestion of spoliation. *See, e.g.*, *Sanchez v. SunGard Availability Servs., LP*, 2008 WL 11510305, at *5 (D.N.J. Mar. 31, 2008) (refusing to order production of defendant's retention policy when "[t]here are no facts in the motion papers from which the Court could reasonably conclude that the Defendants deliberately failed to provide requested discovery or engaged in the spoliation of evidence."); *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 111 (E.D. Pa. 2010) (same). The issues you mention do not suggest spoliation. SaveOn has no reason to believe that any relevant ███████ has been deleted. Mar. 8, 2024 Ltr. from M. Nelson to J. Long. SaveOn deleted Chatter messages in June 2021, long before J&J brought this lawsuit and SaveOn anticipated litigation. Jan. 26, 2024 Letter from E. Snow to K. Brisson. Any potential issues where SaveOn employees deleted text messages from their personal cell phones would not be covered by any retention policies for company documents.

**Request Nos. 119-22.** These requests concern SaveOn's decision-making regarding its confidentiality and non-disclosure policies, including ████████ ███████ and any efforts (or contemplated efforts) to enforce those policies in various contexts. Based on our investigation, we have identified three custodians likely to have documents responsive to this request: Jody Miller, Claudia Dunbar, and Rob Saeli. To satisfy Request Nos. 119-21, SaveOn proposes to run the following three search terms over those three custodians' files:

- (confident* OR nondisclosure OR "non-disclosure" OR NDA) W/25 ((polic* OR rule* OR "handbook") AND (updat* OR revis* OR new OR amend* OR chang* OR modif*))

  o Time period: March 1, 2023 to November 7, 2023.

- (NDA OR gag OR prevent* OR stop* OR block* OR ban* OR forbid* OR preclu* OR punish* OR permi*) W/35 ((discuss* OR shar* OR talk* OR post* OR reveal* OR disclos* OR leak*) W/35 (injury OR harm OR patient OR client OR customer OR case OR lawsuit OR "law suit" OR litigat* OR action OR "Johnson & Johnson" OR "Johnson and Johnson" OR "J&J" or JNJ OR Janssen OR Jannsen OR Jansen OR Jannssen OR JJHCS OR JHCS or JJCHS OR JJHS))

  o Time period: May 1, 2022 to November 7, 2023.

- (Mighells OR Ted OR Theodore OR Paula) W/20 (fir* OR terminat* OR discharg* OR disciplin* OR punish* OR suspen* OR sue* OR suing OR lawsuit* OR "law suit" OR litigat* OR retaliat* OR "cease and desist")[1]

---

[1] The first two search terms are the same as J&J proposed. *See* Apr. 12, 2024 Ltr. from I. Eppler to E. Snow. The third search term is narrowed to remove the term "employ*", which draws in significant numbers of irrelevant documents.

Bonita L. Robinson
June 7, 2024

    ○  Time period: May 1, 2022 to November 7, 2023.

        As discussed on our call, SaveOn's position is that J&J's Request No. 122, which seeks all documents related to ██████ ████████████, is irrelevant. SaveOn's ██████ has no bearing on the claims and defenses in this action. J&J's proposed search term for this Request, moreover, would require SaveOn to review an additional 15,748 documents, which would be unduly burdensome. Also, based on our investigation, ████████████ ██████. SaveOn will therefore not produce documents in response to this Request.

        Finally, we write to provide the number of de-duplicated hit counts from J&J's proposal, as requested. That number is 85,010. We are available to meet and confer.

Sincerely,

/s/ Meredith Nelson

Meredith Nelson
Associate

# Exhibit 11

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza Newark,
New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for Plaintiff Johnson & Johnson Health Care*
*Systems Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JMV) (CLW) <br><br> **PLAINTFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** |

**GENERAL OBJECTIONS**

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing. It reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action. The following responses and objections are based upon information known at this time.

1.      JJHCS objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. The inadvertent production by JJHCS of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.      JJHCS objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response JJHCS makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

2

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.      JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.     JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.     JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.     JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

13.     JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.      JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.

3

2.      JJHCS objects to the definition of the term "Janssen Drug" as irrelevant to the extent it purports to include drugs that are not covered by CarePath. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any Specialty Drug manufactured or sold by Janssen from any time."

3.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to include attorneys and accountants who may be outside of JJHCS's possession, custody, and control. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or] representatives" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and Janssen Research & Development LLC.

4.      JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and as irrelevant to the extent it purports to include entities other than those responsible for administering CarePath during the relevant Time Period. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to

4

act on behalf" of those entities.  JJHCS further objects on the ground that the phrase

"administer, in whole or in part, CarePath" is vague and ambiguous.  JJHCS further objects to

the extent the term is used to seek documents and communications in the possession of entities

other than JJHCS.

5.      JJHCS objects to the definition of the term "Lash Group" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of The Lash Group, Inc."  JJHCS further objects to the extent the term is used to seek

documents and communications in the possession of entities other than JJHCS.

6.      JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of TrialCard Inc."  JJHCS further objects to the extent the term is used to seek documents and

communications in the possession of entities other than JJHCS.

### OBJECTIONS TO THE TIME PERIOD FOR SPECIFIC REQUESTS

1.      JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome,

and not relevant to the subject matter of this Action to the extent they call for documents from

before January 1, 2017.  Unless otherwise noted, JJHCS will only produce documents from

January 1, 2017 through the July 1, 2022 (the "Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

**Request No. 1**

From January 1, 2009 through the present, Documents sufficient to show JJHCS's organizational structure, including organizational charts.

**Response to Request No. 1**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show the organizational structure of the JJHCS groups responsible for the administration of CarePath for the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 2**

From January 1, 2009 through the present, Documents sufficient to show Janssen's organizational structure, including organizational charts.

**Response to Request No. 2**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 3**

From January 1, 2009 through the present, Documents sufficient to show the organizational structure of each JJHCS Hub Entity.

**Response to Request No. 3**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 4**

From January 1, 2009 through the present, Documents sufficient to show the organizational structure of any group or division within JJHCS, Janssen, or any JJHCS Hub Entity involved in developing, managing, marketing, or administering CarePath or any other copay assistance program offered for Janssen Drugs, and to identify their employees.

**Response to Request No. 4**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request on the ground that the phrase "any other copay assistance program offered for Janssen Drugs" is vague and ambiguous.  JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show the organizational structure of the JJHCS groups responsible for the administration of CarePath for the relevant Time Period, to the extent such documents exist and can be located after a reasonable search.  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

## Request No. 5

From January 1, 2009 through the present, Documents sufficient to show the organizational structure of JJHCS's Health Economics, Access, and Outcome Groups and to identify employees working in those groups.

## Response to Request No. 5

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show the organizational structure of the JJHCS groups responsible for the administration of CarePath for the relevant Time Period, to the extent such documents exist

and can be located after a reasonable search.  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 6**

From January 1, 2009 through the present, Documents sufficient to show the organizational structure of the drug product team for each Janssen Drug, and to identify employees working on those teams.

**Response to Request No. 6**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request on the ground that the phrase "drug product team" is vague and ambiguous.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 7**

From January 1, 2009 through the present, documents sufficient to identify all natural persons with decisionmaking authority over the sale or marketing of Janssen Drugs.

**Response to Request No. 7**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this

9

Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 8**

All Documents and Communications with or regarding SaveOnSP.

**Response to Request No. 8**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents related to any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period, to the extent such documents and communications exist and can be located after a reasonable search. However, notwithstanding the foregoing, JJHCS will not produce any documents or communications responsive to Request for Production No. 21, which seeks

documents that are irrelevant to any claim or defense in this Action. JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

**Request No. 9**

All Communications by JJHCS or Janssen with any Patient regarding SaveOnSP, including any Documents regarding those Communications.

**Response to Request No. 9**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 10**

All Documents and Communications regarding any presentation, document, or information regarding SaveOnSP referenced in the Complaint, including the "SaveOnSP IPBC Video" and the materials referenced in Complaint ¶¶ 82-88.

**Response to Request No. 10**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents related to any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a

broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

## Request No. 11

From January 1, 2009 through the present, all Documents and Communications regarding the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

## Response to Request No. 11

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request on the ground that the phrase "any other copay assistance program offered for Janssen Drugs" is vague and ambiguous.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to CarePath.

JJHCS will not search for or produce documents or communications responsive to this Request.  JJHCS is, however, willing to meet and confer to determine if this Request can be appropriately narrowed.

**Request No. 12**

From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) JJHCS's decision to revise any of its CarePath terms and conditions for any Janssen Drug; and (d) JJHCS's understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

**Response to Request No. 12**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the final CarePath terms and conditions at issue. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it calls for JJHCS's understanding of any particular term, as such a contention interrogatory would be premature at this point in the litigation pursuant to Local Rule 33.1(d).

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show all final versions of CarePath's terms and conditions for each Janssen Drug during the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 13**

From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen

Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

**Response to Request No. 13**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the final CarePath terms and conditions at issue. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show all final versions of CarePath's terms and conditions for each Janssen Drug during the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 14**

From January 1, 2015 through the present, all Documents and Communications regarding JJHCS's or any JJHCS Hub Entity's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

**Response to Request No. 14**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for views on a legal

question.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks "all" documents and communications

regarding a broad subject matter.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period.  JJHCS further objects to this Request to

the extent it seeks documents and communications in the possession of entities other than

JJHCS.  JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity"

for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents

and communications in its possession regarding SaveOnSP's designation of specialty drugs as

Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its

regulations during the relevant Time Period, to the extent such documents and communications

exist and can be located after a reasonable search.  However, notwithstanding the foregoing,

JJHCS will not produce any documents responsive to Request for Production No. 21, which is

irrelevant to any claim or defense in this Action.  JJHCS will not otherwise search for or produce

documents and communications responsive to this Request.

## Request No. 15

All Documents and Communications regarding SaveOnSP's communications with
Patients regarding CarePath, including Documents and Communications regarding JJHCS's
allegations in Complaint ¶¶ 60-67, 109.

## Response to Request No. 15

In addition to the foregoing general objections, JJHCS objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 16**

All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 72.

**Response to Request No. 16**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request on the ground that the phrase "SaveOnSP's provision of services to qualified high deductible or health savings account plans" is vague and ambiguous.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 17**.

All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

**Response to Request No. 17**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information about JJHCS's payment of funds to patients enrolled in qualified high deductible or health savings account plans as opposed to SaveOnSP's exploitation of a purported legal gray area with respect to those plans. JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 18**

All Documents and Communications regarding any allegedly misleading or confusing communications between SaveOnSP and Patients, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 13, 75-77, 85-88.

**Response to Request No. 18**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents related to any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it seeks "misleading or confusing communications," as those terms are vague and ambiguous.

17

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 19**

All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 19**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 20**

All Documents and Communications regarding any publicly distributed material (including, for example, articles, op-eds, white papers, and online postings) regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services, including Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect involvement with such material and JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect funding of the authors, publishers, or distributors of such material.

**Response to Request No. 20**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information about JJHCS's or any other entity's relationship or connection, if any, to materials about SaveOnSP's conduct,

18

as opposed to information about SaveOnSP's conduct itself. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information relating to Copay Accumulator Services or Copay Maximizer Services other than SaveOnSP's. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects on the ground that the phrases "direct or indirect involvement" and "direct or indirect funding" are vague and ambiguous. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS or that are publicly available and therefore equally available to SaveOnSP. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 21**

All Documents and Communications regarding any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services.

**Response to Request No. 21**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information about JJHCS's advocacy to or communication with any governmental or regulatory body regarding SaveOnSP as opposed to information about SaveOnSP's conduct itself. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information relating to Copay Accumulator Services or Copay Maximizer Services other than SaveOnSP's.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

JJHCS will not search for or produce documents and communications responsive to this Request.

### Request No. 22

All Documents and Communications regarding any alleged harm caused by SaveOnSP to any Patient by allegedly making their healthcare more expensive, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

### Response to Request No. 22

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 23**

     All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 23**

     In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

     Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 24**

     All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 24**

     In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information about the financial viability of any Copay Assistance Program other than CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

21

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 25**

All Documents and Communications regarding any alleged harm caused by SaveOnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 110, 115.

**Response to Request No. 25**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request on the ground that the phrase "any alleged harm" is vague and ambiguous. For the purposes of its response, JJHCS shall interpret the phrase "any alleged harm" to mean the damages identified by JJHCS relating to the increased average amount of CarePath expenditures incurred for patients enrolled in the SaveOnSP Program.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications in its possession relating to the extent of the harm SaveOnSP has caused JJHCS during the relevant Time Period, including the extent to which SaveOnSP has caused JJHCS to pay more in copay assistance than it otherwise would have, to the extent such documents exist and can be located after a reasonable search. However, notwithstanding the foregoing, JJHCS will not produce any documents responsive to Request for Production No. 21, which is irrelevant to any claim or defense in this Action. JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

22

**Request No. 26**

      All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

**Response to Request No. 26**

      In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum" is vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

      JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 27**

      All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

**Response to Request No. 27**

      In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter and seeks "complete databases from which [] data was drawn." JJHCS further objects to this Request to

the extent it seeks documents and communications in the possession of entities other than

JJHCS. JJHCS further objects to this Request as duplicative of Request No. 25.

Subject to the foregoing objections, JJHCS will produce the data that formed the basis for

the allegations in Complaint ¶¶ 92-100. Otherwise, JJHCS will not search for or produce

documents and communications responsive to this Request.

**Request No. 28**

From January 1, 2009 through the present, for each Janssen Drug for each year,
Documents sufficient to show:

a.     all Patients receiving the Janssen Drug;

b.     the number of fills of the Janssen Drug received by each such Patient;

c.     the dosage of the Janssen Drug received by each such Patient for each fill;

d.     the projected number of Patients, average number of fills, and average dosage for the Janssen Drug;

e.     the cost to manufacture the Janssen Drug;

f.     the sales and marketing budget for the Janssen Drug;

g.     the price of the Janssen Drug;

h.     the revenue received by JJHCS from the Janssen Drug;

i.     all Patients enrolled in the CarePath program for the Janssen Drug;

j.     the dates on which each Patient was enrolled in CarePath;

k.     the amounts of copay assistance funds that JJHCS offered to each Patient enrolled in CarePath;

l.     the Janssen Drugs for which each Patient enrolled in CarePath received copay assistance;

m.     all copay assistance payments that JJHCS made to or on behalf each Patient enrolled in CarePath; and

**Response to Request No. 28**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP's misconduct, including information relating to Patient fills, the cost of manufacturing Janssen Drugs, the sales and marketing budgets for Janssen drugs, and pricing and revenue generated by Janssen Drugs. JJHCS further objects to this Request on the ground that the phrases "the projected number of Patients, average number of fills, and average dosage for the Janssen Drug," "the cost to manufacture the Janssen Drug," and "the price of the Janssen Drug" are vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a variety of extremely broad subject matters. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS will produce Janssen Transparency Reports for the relevant Time Period. Further, JJHCS is willing to meet and confer to discuss subparts (i) through (m). Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 29**

From January 1, 2009 through the present, for each Janssen Drug for each year, all Documents and Communications regarding:

    a.    JJHCS's determination of the amounts of copay assistance funds that JJHCS offered to Patients enrolled in CarePath, including the determination of the maximum program benefit per calendar year for the Janssen Drug;

      b.      JJHCS's budget for CarePath, including the sales and marketing budget;

      c.      JJHCS's actual and projected annual costs for CarePath;

      d.      JJHCS's use of or accounting for unused CarePath funds;

      e.      the impact of the Affordable Care Act on JJHCS's CarePath budget or funding, including the impact of laws and regulations regarding out-of-pocket maximums;

      f.      JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath;

      g.      the impact of CarePath on Janssen's sales of any Janssen Drug;

      h.      the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

      i.      JJHCS's or Janssen's actual and projected return on investment for CarePath; and

      j.      any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by SaveOnSP.

**<u>Response to Request No. 29</u>**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP's misconduct, including information relating to the sales and marketing budget for CarePath, JJHCS's uses of or accounting for unused CarePath funds, the impact of the Affordable Care Act or other laws and regulations on CarePath's budget or funding, JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath, the impact of CarePath on Janssen's sales of any Janssen Drug, the impact of CarePath on JJHCS's or Janssen's gross to net calculations, JJHCS's or Janssen's actual and projected return on investment for CarePath, and the adherence rates of Patients enrolled in CarePath to Janssen Drugs. JJHCS further objects to this Request on the ground that the phrases "the projected number of Patients, average number of fills, and average dosage for the Janssen Drug," "JJHCS's or Janssen's gross to net calculations," and "JJHCS's or Janssen's actual and projected return on investment for CarePath" are vague and ambiguous. JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks "all" documents and communications regarding a variety of broad subject matters.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks documents and communications outside of the relevant

Time Period.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession for the relevant Time Period sufficient to show (1) how JJHCS determines the

amounts of copay assistance funds that JJHCS offers to Patients enrolled in CarePath,

(2) JJHCS's budget for copay assistance through CarePath, and (3) JJHCS's actual and projected

annual costs for CarePath, to the extent such documents exist and can be located after a

reasonable search.  Otherwise, JJHCS will not search for or produce documents responsive to

this Request.

### Request No. 30

From January 1, 2009 through the present, for each year for each Janssen Drug, all
Documents and Communications regarding the basis for Janssen's decision to raise or lower the
price of the Janssen Drug, including labor or manufacturing costs or the increase in efficacy of the
Janssen Drug.

### Response to Request No. 30

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to

SaveOnSP's misconduct, including information related to the pricing of Janssen Drugs.  JJHCS

further objects to this Request on the ground that the phrases "the price of the Janssen Drug" and

"the increase in efficacy of the Janssen Drug" are vague and ambiguous.  JJHCS further objects

to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to

the extent it seeks "all" documents and communications regarding a broad subject matter.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks documents and communications outside of the relevant

Time Period.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

     JJHCS will not search for or produce documents responsive to this Request.

## Request No. 31

All Documents and Communications regarding JJHCS's attempts to limit or eliminate the amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs, including Documents and Communications regarding JJHCS's attempts to limit or eliminate the availability of CarePath copay assistance funds available to Patients enrolled in health plans advised by SaveOnSP.

## Response to Request No. 31

     In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information beyond the

final CarePath terms and conditions at issue.  JJHCS further objects to this Request as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all"

documents and communications regarding a broad subject matter.  JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other

than JJHCS.

     Subject to the foregoing objections, JJHCS will produce non-privileged documents and

communications in its possession relating to JJHCS's decision to limit or eliminate the amount of

copay assistance funds available to Patients using Stelara or Tremfya who are also enrolled in the

SaveOnSP Program, to the extent such documents and communications exist and can be located

28

after a reasonable search.  JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

**Request No. 32**

All Documents and Communications regarding any offer by JJHCS to provide to any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance funds available to a Patient.

**Response to Request No. 32**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the extent to which SaveOnSP has caused JJHCS to pay more in copay assistance than it otherwise would have.  JJHCS further objects to this Request on the ground that the phrases "CarePath funds greater than the amounts that JJHCS generally offers to CarePath Patients" and "to waive any limitation on or elimination of the amount of CarePath copay assistance funds available" are vague and ambiguous.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 33**

All Documents and Communications regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans.

**Response to Request No. 33**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to

SaveOnSP's misconduct. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

## Request No. 34

From any time, all Documents and Communications regarding JJHCS's or Janssen's negotiations or agreements regarding the potential use of SaveOnSP's services, or the services of any Copay Maximizer Service or Copay Accumulator Service, for JJHCS's Employee Health Plans, including JJHCS's abandonment of those negotiations or agreements.

## Response to Request No. 34

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information about other "services of Copay Maximizer Service[s] or Copay Accumulator Service[s]" and unrelated to SaveOnSP's misconduct. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint

30

defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local

Rules of the Court, and relevant case law.

JJHCS will not search for or produce documents and communications responsive to this

Request.

### Request No. 35

Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coordinators.

### Response to Request No. 35

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about

JJHCS "Hub Entities" or "CarePath Care Coordinators" that are not implicated in this litigation.

JJHCS further objects to this Request to the extent it seeks documents and communications in

the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it

uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to identify the entities responsible for administering CarePath during the

relevant Time Period, to the extent such documents exist and can be located after a reasonable

search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

### Request No. 36

From January 1, 2009 through the present, Documents sufficient to show the economic
terms of JJHCS's retention of or agreements with any JJHCS Hub Entity or CarePath Care
Coordinator regarding CarePath, including any assessment of the fair market value of those
services.

### Response to Request No. 36

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about

JJHCS "Hub Entities" or "CarePath Care Coordinators" that are not implicated in this litigation.

JJHCS further objects to this Request on the ground that "any assessment of the fair market value

of those services" is irrelevant. JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period. JJHCS further objects to this Request to

the extent it seeks documents and communications in the possession of entities other than

JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity"

for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this

Request to the extent it seeks information that is exempt from discovery and protected from

disclosure by a privilege including, without limitation, the attorney-client privilege, the work-

product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of

Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce agreements in its possession

between JJHCS and the entities responsible for administering CarePath during the relevant Time

Period, to the extent such documents exist and can be located after a reasonable search.

Otherwise, JJHCS will not search for or produce documents and communications responsive to

this Request.

**Request No. 37**

From January 1, 2009 through the present, documents sufficient to show the percentage
of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub
Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs.

**Response to Request No. 37**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to

SaveOnSP's misconduct, including information about JJHCS's advertising or marketing of

32

CarePath or Janssen Drugs. JJHCS further objects to this Request on the ground that the phrase "Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs" is vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents and communications responsive to this Request.

### Request No. 38

From January 1, 2009 through the present, all Documents and Communications received by JJHCS from any JJHCS Hub Entity or sent by JJHCS to any JJHCS Hub Entity regarding SaveOnSP or CarePath.

### Response to Request No. 38

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information about CarePath without relation to SaveOnSP. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent

it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 39**

All Documents and Communications received by JJHCS from any CarePath Care Coordinator regarding SaveOnSP.

**Response to Request No. 39**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 40**

All Communications by any JJHCS Hub Entity or CarePath Care Coordinator with any Patient regarding SaveOnSP, including any Documents regarding those Communications and talk tracks or scripts prepared for use during those Communications.

34

**Response to Request No. 40**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 41**

From January 1, 2015 through the present, all Documents and Communications relating to Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's return on investment for copay assistance dollars.

**Response to Request No. 41**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information about other "Copay Accumulator Services and Copay Accumulator Services" and information unrelated to SaveOnSP's misconduct. JJHCS further objects to this Request on the ground that the phrase "JJHCS's return on investment for copay assistance dollars" is vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the

35

needs of the case to the extent it seeks "all" documents and communications regarding a broad

subject matter.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks documents and communications

outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks

documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

**Request No. 42**

From January 1, 2015 through the present, all Documents and Communications relating

to JJHCS's or any JJHCS Hub Entity's understanding of the terms "copay accumulator" and

"copay maximizer."

**Response to Request No. 42**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to

SaveOnSP's misconduct.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter.  JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents and communications outside of the relevant Time Period.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of

entities other than JJHCS.  JJHCS further objects to this Request to the extent it uses the term

"JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by a privilege including, without limitation, the attorney-client

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications in JJHCS's possession during the relevant Time Period relating to JJHCS's understanding of whether the terms "copay accumulator" or "copay maximizer" apply to SaveOnSP. However, notwithstanding the foregoing, JJHCS will not produce any documents or communications responsive to Request for Production No. 21, which is irrelevant to any claim or defense in this Action. JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

## Request No. 43

All Documents and Communications concerning non-medical switching by participants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

## Response to Request No. 43

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information about any other "Copay Accumulator Service" or "Copay Maximizer Service" and information unrelated to SaveOnSP's misconduct. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 44**

To the extent not requested above, Documents and Communications of any JJHCS Hub Entity or CarePath Care Coordinator regarding the topics of all Requests listed above.

**Response to Request No. 44**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "regarding the topics of all Requests listed above" is vague and ambiguous. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 45**

JJHCS's, Janssen's, any JJHCS Hub Entity's, and any CarePath Care Coordinator's document retention policies.

**Response to Request No. 45**

In addition to the foregoing general objections, JJHCS objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce its document retention policies for the relevant Time Period. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 46**

Complete data dictionaries for any data that You produce.

**Response to Request No. 46**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "data dictionaries for any data that You produce" is vague and ambiguous. JJHCS further objects to this Request to the extent that it purports to require the creation of any document or record in a format not kept by JJHCS or seeks to impose production obligations that exceed those required by the Rules of Federal Procedure, the Local Rules of the Court, this Court's Orders, or with any applicable agreement among the parties.

JJHCS will not search for or produce documents or communications responsive to this Request. JJHCS is, however, willing to meet and confer to determine if this Request can be appropriately narrowed.

**Request No. 47**

From any time, all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP, including in response to subpoenas served in this Action.

**Response to Request No. 47**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP" is vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject

matter.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce documents obtained via third-party subpoenas it serves in this Action.  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

## Request No. 48

To the extent not requested above, from any time, all Documents and Communications upon which you may rely in this Action.

## Response to Request No. 48

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "all Documents and Communications upon which you may rely in this Action" is vague and ambiguous.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications upon which it intends to rely at trial in compliance with the schedule set by the Court.  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

Dated: December 12, 2022

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By: /s/Jeffrey J. Greenbaum
JEFFREY J. GREENBAUM
KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

# Exhibit 12

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

| | | |
|---|---|---|
| Johnson & Johnson Health Care Systems Inc. | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No. 22-2632 (JMV) (CLW) |
| Save On SP, LLC | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
The Lash Group, Inc.
1 West 1st Avenue, Conshohocken, PA 19428

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached requests for production.

| Place: Gibbons P.C., One Gateway Center, Newark, NY 07102-5310 | Date and Time: 03/07/2023 5:00 pm |
|---|---|

❑ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 02/17/2023

| _CLERK OF COURT_ | | |
|---|---|---|
| | OR | |
| _Signature of Clerk or Deputy Clerk_ | | /s/ E. Evans Wohlforth, Jr. |
| | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ Defendant Save On SP, LLC , who issues or requests this subpoena, are:

E. Evans Wohlforth, Jr., Gibbons P.C., One Gateway Center, Newark, NY 07102-5310

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.  22-2632 (JMV) (CLW)

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

David Elsberg
Andrew R. Dunlap
Meredith Nelson
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

E. Evans Wohlforth, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JMV) (CLW) <br><br> **NOTICE OF SUBPOENA FOR THE PRODUCTION OF DOCUMENTS** |

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26, 34, and 45 Defendant Save On SP, LLC ("SaveOnSP") requests The Lash Group, Inc. ("Lash Group"), to produce for inspection and copying the documents listed in these Requests, to the office of the

1

undersigned within 30 days of being served or at a time and place mutually agreed by the parties

or ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that this demand for production of documents

shall be deemed continuing in nature to require supplemental responses if Plaintiff or Plaintiff's

counsel obtain or locate further or additional documents subsequent to the time Plaintiff's re-

sponses are served.

Dated:  February 17, 2023            By:  /s/ E. Evans Wohlforth, Jr._____
                                         E. Evans Wohlforth, Jr.
                                         GIBBONS P.C.
                                         One Gateway Center
                                         Newark, NJ 07102-5310
                                         973-596-4500
                                         ewohlforth@gibbonslaw.com

                                         David Elsberg
                                         Andrew R. Dunlap
                                         Meredith Nelson
                                         SELENDY GAY ELSBERG, PLLC
                                         1290 Avenue of the Americas
                                         New York, NY 10104
                                         212-390-9000
                                         deslberg@selendygay.com
                                         adunlap@selendygay.com
                                         mnelson@selendygay.com

                                         *Attorneys for Defendant Save On SP, LLC*

## **DEFINITIONS**

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses.

3.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.      "Action" means this litigation styled as "*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (JMV) (CLW).

6.      "Affordable Care Act" means the Patient Protection and Affordable Care Act, Pub. L. 148, 124 Stat. 119.

7.      "All," "any," and "each" mean any and all.

8.      "And" and "or" are construed both conjunctively and disjunctively.

9.      "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

3

10.    "CarePath Care Coordinator" means any person or entity encompassed by that term as used on CarePath's "Contact Us" webpage,[1] as well as any person responsible for communicating with patients who contact CarePath via an advertised help number (*e.g.*, 877-CarePath).

11.    "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

12.    "Complaint" means JJHCS's May 4, 2022 Complaint [ECF No. 1] or any subsequently amended Complaint in this Action.

13.    "Copay Accumulator Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

14.    "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

15.    "Copay Maximizer Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay

---

[1] *See* Contact Us, https://www.janssencarepath.com/patient/contact-us (last visited October 25, 2022).

4

assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maximizer."

16.    "Document" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

17.    "Essential Health Benefit" means, in the context of prescription drug benefits at issue in this case, (a) a prescription drug benefit that satisfies the requirement for a plan to provide essential prescription drug benefits under the Affordable Care Act or that is treated as such by a plan;[2] and (b) any definition JJHCS ascribes to the term "essential health benefit" as used in the Complaint.

18.    "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

19.    "Including" means including but not limited to.

20.    "Janssen" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons

---

[2] 45 C.F.R. §§ 156.122, 156.115.

5

or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc.,

Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

21.     "Janssen Drug" means any Specialty Drug manufactured or sold by Janssen from

any time for which patients may receive copay assistance, including BALVERSA, DARZALEX,

DARZALEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, REMICADE, RYBREVANT,

SIMPONI, STELARA, TRACLEER, TREMFYA, UPTRAVI, and ZYTIGA, as well as any other

specialty drugs that JJHCS asserts are at issue in this Action.

22.     "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all pre-

decessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or depart-

ments, agents, representatives, directors, officers, employees, committees, attorneys, accountants,

and all persons or entities acting or purporting to act on behalf or under the control of Johnson &

Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil

Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals,

Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development,

LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc.,

Janssen BioPharma LLC, and Janssen Research & Development LLC.

23.     "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer,

in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors

and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments,

agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all

persons or entities acting or purporting to act on behalf of such an entity.

6

24.    "<u>Lash Group</u>" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

25.    "<u>Non-Essential Health Benefits</u>" means, in the context of prescription drug benefits at issue in this case, (a) any prescription drug benefit covered by a plan in excess of those necessary for a plan to satisfy the requirements for providing essential prescription drug health benefits under the Affordable Care Act[3] and designated by the plan as a non-essential health benefit; and (b) any definition JJHCS ascribes to the term "non-essential health benefits" as used in the Complaint.

26.    "<u>Patient</u>" means a natural person prescribed or eligible to be prescribed any Janssen Drug, whether or not they use CarePath or are a participant in a health plan advised by SaveOnSP.

27.    "<u>Person</u>" means a natural person or legal entity including any business or governmental entity or association.

28.    "<u>Regarding</u>" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

29.    "<u>Request</u>" means any of these Requests for Production.

---

[3] *See* 45 C.F.R. §§ 156.122, 156.115.

7

30.    "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Save On SP, LLC.

31.    "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

32.    "Stelara" means the Janssen Drug sold under that name.

33.    "Tremfya" means the Janssen Drug sold under that name.

34.    "TrialCard" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

35.    "Lash Group's Employee Health Plans" means any health plan offered by Lash Group to its employees.

36.    "You" and "Your" means Lash Group.

## INSTRUCTIONS

1.    These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii).

2.    These Requests seek production of nonprivileged material. Fed. R. Civ. P. 26(b)(1).

3.    These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4.    For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 45(d)(2)(B).

5.      An objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. Fed. R. Civ. P. 45(d)(2)(B).

6.      If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection.

7.      If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest.

8.      If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 45(e)(2)(A), including by indicating whether any document exists regarding the information requested and stating, to the extent the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked, Local Rule 34.1.

9.      If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction, the reason for its destruction, the name of the person who requested or authorized its destruction, and the name of the person who destroyed it.

10.      Produce documents as they are kept in the usual course of business or in a form specified in this subpoena. Fed. R. Civ. P. 45(e)(1)(b). For each document, identify the file or

location from which it was taken and the name, affiliation, and position of the producing custodian
or non-custodial source.

11.    Produce electronically stored information in the form and manner required by any
agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

12.    Produce each document in its entirety, without abbreviation or redaction, including
all attachments or materials attached thereto.

13.    Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notations, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

14.    These Requests are deemed continuing. If after responding to any Request you learn
that your response is in some material respect incomplete or incorrect, supplement or correct your
response in a timely manner.

## TIME PERIOD

Unless otherwise specified, these Requests cover from and including January 1, 2017,
through the present.

## REQUESTS

1.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of Lash Group.

2.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of any group or division within Lash Group involved in developing, managing, marketing, or administering CarePath and to identify their employees.

3.    All Documents and Communications with or regarding SaveOnSP, including those
between You and JJHCS, You and any patients, and You and any other Hub Entity.

10

4.     From January 1, 2009 through the present, all Documents and Communications regarding the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

5.     From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) revisions to any of the CarePath terms and conditions for any Janssen Drug; and (d) Your understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

6.     From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

7.     From January 1, 2015 through the present, all Documents and Communications regarding Your understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

8.     All Documents and Communications regarding SaveOnSP's communications with Patients regarding CarePath, including allegedly misleading or confusing communications and JJHCS's allegations in Complaint ¶¶ 60-67, 109, ¶¶ 13, 75-77, 85-88.

9.  All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including JJHCS's allegations in Complaint ¶ 72.

10. All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

11. All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including JJHCS's allegations in Complaint ¶ 114.

12. All Documents and Communications regarding any alleged harm caused by Save-OnSP to any Patient by allegedly making their healthcare more expensive, including JJHCS's allegations in Complaint ¶ 114.

13. All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

14. All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than Care-Path, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

15. All Documents and Communications regarding any alleged harm caused by Save-OnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 110, 115.

16. All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

17. All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

18. From January 1, 2009 through the present, for each Janssen Drug for each year, Documents sufficient to show:

      a.      all Patients receiving the Janssen Drug;

      b.      the number of fills of the Janssen Drug received by each such Patient;

      c.      the dosage of the Janssen Drug received by each such Patient for each fill;

      d.      the projected number of Patients, average number of fills, and average dosage for the Janssen Drug;

      e.      the cost to manufacture the Janssen Drug;

      f.      the sales and marketing budget for the Janssen Drug;

      g.      the price of the Janssen Drug;

      h.      the revenue received by JJHCS from the Janssen Drug;

      i.      all Patients enrolled in the CarePath program for the Janssen Drug;

      j.      the dates on which each Patient was enrolled in CarePath;

      k.      the amounts of copay assistance funds that JJHCS offered to each Patient enrolled in CarePath;

      l.      the Janssen Drugs for which each Patient enrolled in CarePath received copay assistance; and

13

m. all copay assistance payments that JJHCS made to or on behalf each Patient enrolled in CarePath.

19. From January 1, 2009 through the present, for each Janssen Drug for each year, all Documents and Communications regarding:

a. JJHCS's determination of the amounts of copay assistance funds that JJHCS offered to Patients enrolled in CarePath, including the determination of the maximum program benefit per calendar year for the Janssen Drug;

b. JJHCS's budget for CarePath, including the sales and marketing budget;

c. JJHCS's actual and projected annual costs for CarePath;

d. JJHCS's use of or accounting for unused CarePath funds;

e. the impact of the Affordable Care Act on JJHCS's CarePath budget or funding, including the impact of laws and regulations regarding out-of-pocket maximums;

f. JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath;

g. the impact of CarePath on Janssen's sales of any Janssen Drug;

h. the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

i. JJHCS's or Janssen's actual and projected return on investment for Care-Path; and

j. any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by Save-OnSP.

14

20.    All Documents and Communications regarding JJHCS's attempts to limit or elim-
inate the amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya
based on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs,
including Documents and Communications regarding JJHCS's attempts to limit or eliminate the
availability of CarePath copay assistance funds available to Patients enrolled in health plans ad-
vised by SaveOnSP.

21.    All Documents and Communications regarding any offer by JJHCS to provide to
any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath
Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance
funds available to a Patient.

22.    All Documents and Communications regarding JJHCS's attempts to identify health
plans advised by SaveOnSP or Patients enrolled in such plans.

23.    From any time, all Documents and Communications regarding Lash Group's nego-
tiations or agreements regarding the potential use of any Copay Maximizer Service or Copay Ac-
cumulator Service, for Lash Group's Employee Health Plans, including any abandonment of those
negotiations or agreements.

24.    Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coor-
dinators.

25.    From January 1, 2009 through the present, Documents sufficient to show the eco-
nomic terms of JJHCS's retention of or agreements with You, including any assessment of the fair
market value of those services.

15

26.    From January 1, 2009 through the present, documents sufficient to show the per-centage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs.

27.    From January 1, 2015 through the present, all Documents and Communications relating to Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's return on investment for copay assistance dollars.

28.    From January 1, 2015 through the present, all Documents and Communications relating to Your understanding of the terms "copay accumulator" and "copay maximizer."

29.    All Documents and Communications concerning non-medical switching by partic-ipants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

30.    Your document retention policies.

31.    Complete data dictionaries for any data that You produce.

32.    From any time, all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP, including in response to subpoenas served in this Action.

16

# Exhibit 13

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of New Jersey

| | | |
|---|---|---|
| Johnson & Johnson Health Care Systems Inc. | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.  22-2632 (JMV) (CLW) |
| Save On SP, LLC | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                                    TrialCard Inc.
                     2250 Perimeter Park Dr., #300, Morrisville, NC 27560
_____
                            _(Name of person to whom this subpoena is directed)_

    ✔ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached requests for production.

| Place: Weno Process c/o Marcus Lawing<br>     4711 Hope Valley Road, Ste. 4F-604<br>     Durham, NC 27707 | Date and Time:<br><br>     03/07/2023 5:00 pm |
|---|---|

    ❒ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

    The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  02/17/2023

              _CLERK OF COURT_
                                                       OR
         _____          ___/s/ E. Evans Wohlforth, Jr._____
          _Signature of Clerk or Deputy Clerk_                _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_  Defendant
Save On SP, LLC_____ , who issues or requests this subpoena, are:
E. Evans Wohlforth, Jr., Gibbons P.C., One Gateway Center, Newark, NY 07102-5310

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 22-2632 (JMV) (CLW)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

David Elsberg
Andrew R. Dunlap
Meredith Nelson
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

E. Evans Wohlforth, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., | Civil Action No. 22-2632 (JMV) (CLW) |
| Plaintiff, | **NOTICE OF SUBPOENA FOR THE PRODUCTION OF DOCUMENTS** |
| v. | |
| SAVE ON SP, LLC, | |
| Defendant. | |

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26, 34, and

45 Defendant Save On SP, LLC ("SaveOnSP") requests TrialCard Inc. ("TrialCard"), to produce

for inspection and copying the documents listed in these Requests, to the office of the undersigned

1

within 30 days of being served or at a time and place mutually agreed by the parties or ordered by the Court.

PLEASE TAKE FURTHER NOTICE that this demand for production of documents shall be deemed continuing in nature to require supplemental responses if Plaintiff or Plaintiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's responses are served.

Dated: February 17, 2023          By: /s/ E. Evans Wohlforth, Jr.
                                       E. Evans Wohlforth, Jr.
                                       GIBBONS P.C.
                                       One Gateway Center
                                       Newark, NJ 07102-5310
                                       973-596-4500
                                       ewohlforth@gibbonslaw.com

                                       David Elsberg
                                       Andrew R. Dunlap
                                       Meredith Nelson
                                       SELENDY GAY ELSBERG, PLLC
                                       1290 Avenue of the Americas
                                       New York, NY 10104
                                       212-390-9000
                                       deslberg@selendygay.com
                                       adunlap@selendygay.com
                                       mnelson@selendygay.com

                                       *Attorneys for Defendant Save On SP, LLC*

## **DEFINITIONS**

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses.

3.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.      "Action" means this litigation styled as "*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (JMV) (CLW).

6.      "Affordable Care Act" means the Patient Protection and Affordable Care Act, Pub. L. 148, 124 Stat. 119.

7.      "All," "any," and "each" mean any and all.

8.      "And" and "or" are construed both conjunctively and disjunctively.

9.      "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

3

10. "CarePath Care Coordinator" means any person or entity encompassed by that term as used on CarePath's "Contact Us" webpage,[1] as well as any person responsible for communicating with patients who contact CarePath via an advertised help number (*e.g.*, 877-CarePath).

11. "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

12. "Complaint" means JJHCS's May 4, 2022 Complaint [ECF No. 1] or any subsequently amended Complaint in this Action.

13. "Copay Accumulator Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

14. "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

15. "Copay Maximizer Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay

---

[1] *See* Contact Us, https://www.janssencarepath.com/patient/contact-us (last visited October 25, 2022).

4

assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maxi-

mizer."

16.    "Document" means "document" and "electronically stored information" as defined

in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within

the meaning of this term.

17.    "Essential Health Benefit" means, in the context of prescription drug benefits at

issue in this case, (a) a prescription drug benefit that satisfies the requirement for a plan to provide

essential prescription drug benefits under the Affordable Care Act or that is treated as such by a

plan;[2] and (b) any definition JJHCS ascribes to the term "essential health benefit" as used in the

Complaint.

18.    "Identify" means (a) with respect to persons, to give, to the extent known, the per-

son's full name, present or last known address, and when referring to a natural person, additionally,

the present or last known place of employment; (b) with respect to documents, either (i) to give,

to the extent known, the (A) type of document; (B) general subject matter; (C) date of the docu-

ment; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together

with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

19.    "Including" means including but not limited to.

20.    "Janssen" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen

Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and

successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents,

representatives, directors, officers, employees, committees, attorneys, accountants, and all persons

---

[2] 45 C.F.R. §§ 156.122, 156.115.

5

or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc.,

Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

21.    "Janssen Drug" means any Specialty Drug manufactured or sold by Janssen from

any time for which patients may receive copay assistance, including BALVERSA, DARZALEX,

DARZALEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, REMICADE, RYBREVANT,

SIMPONI, STELARA, TRACLEER, TREMFYA, UPTRAVI, and ZYTIGA, as well as any other

specialty drugs that JJHCS asserts are at issue in this Action.

22.    "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all pre-

decessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or depart-

ments, agents, representatives, directors, officers, employees, committees, attorneys, accountants,

and all persons or entities acting or purporting to act on behalf or under the control of Johnson &

Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil

Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals,

Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development,

LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc.,

Janssen BioPharma LLC, and Janssen Research & Development LLC.

23.    "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer,

in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors

and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments,

agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all

persons or entities acting or purporting to act on behalf of such an entity.

6

24.  "Lash Group" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

25.  "Non-Essential Health Benefits" means, in the context of prescription drug benefits at issue in this case, (a) any prescription drug benefit covered by a plan in excess of those necessary for a plan to satisfy the requirements for providing essential prescription drug health benefits under the Affordable Care Act[3] and designated by the plan as a non-essential health benefit; and (b) any definition JJHCS ascribes to the term "non-essential health benefits" as used in the Complaint.

26.  "Patient" means a natural person prescribed or eligible to be prescribed any Janssen Drug, whether or not they use CarePath or are a participant in a health plan advised by SaveOnSP.

27.  "Person" means a natural person or legal entity including any business or governmental entity or association.

28.  "Regarding" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

29.  "Request" means any of these Requests for Production.

---

[3] *See* 45 C.F.R. §§ 156.122, 156.115.

30.    "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Save On SP, LLC.

31.    "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

32.    "Stelara" means the Janssen Drug sold under that name.

33.    "Tremfya" means the Janssen Drug sold under that name.

34.    "TrialCard" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

35.    "TrialCard's Employee Health Plans" means any health plan offered by TrialCard to its employees.

36.    "You" and "Your" means TrialCard.

## INSTRUCTIONS

1.    These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii).

2.    These Requests seek production of nonprivileged material. Fed. R. Civ. P. 26(b)(1).

3.    These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4.    For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 45(d)(2)(B).

8

5.      An objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. Fed. R. Civ. P. 45(d)(2)(B).

6.      If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection.

7.      If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest.

8.      If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 45(e)(2)(A), including by indicating whether any document exists regarding the information requested and stating, to the extent the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked, Local Rule 34.1.

9.      If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction, the reason for its destruction, the name of the person who requested or authorized its destruction, and the name of the person who destroyed it.

10.      Produce documents as they are kept in the usual course of business or in a form specified in this subpoena. Fed. R. Civ. P. 45(e)(1)(b). For each document, identify the file or

location from which it was taken and the name, affiliation, and position of the producing custodian
or non-custodial source.

11.    Produce electronically stored information in the form and manner required by any
agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of produc-
tion, consult SaveOnSP for further instruction.

12.    Produce each document in its entirety, without abbreviation or redaction, including
all attachments or materials attached thereto.

13.    Produce all versions of each document that are not identical to the original docu-
ment (including all drafts) whether due to handwritten notations, revisions, enclosures, attach-
ments, underlining, highlighting, or otherwise.

14.    These Requests are deemed continuing. If after responding to any Request you learn
that your response is in some material respect incomplete or incorrect, supplement or correct your
response in a timely manner.

## TIME PERIOD

Unless otherwise specified, these Requests cover from and including January 1, 2017,
through the present.

## REQUESTS

1.    From January 1, 2009 through the present, Documents sufficient to show the or-
ganizational structure of TrialCard.

2.    From January 1, 2009 through the present, Documents sufficient to show the or-
ganizational structure of any group or division within TrialCard involved in developing, managing,
marketing, or administering CarePath and to identify their employees.

3.    All Documents and Communications with or regarding SaveOnSP, including those
between You and JJHCS, You and any patients, and You and any other Hub Entity.

10

4.      From January 1, 2009 through the present, all Documents and Communications regarding the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

5.      From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) revisions to any of the CarePath terms and conditions for any Janssen Drug; and (d) Your understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

6.      From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

7.      From January 1, 2015 through the present, all Documents and Communications regarding Your understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

8.      All Documents and Communications regarding SaveOnSP's communications with Patients regarding CarePath, including allegedly misleading or confusing communications and JJHCS's allegations in Complaint ¶¶ 60-67, 109, ¶¶ 13, 75-77, 85-88.

11

9. All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including JJHCS's allegations in Complaint ¶ 72.

10. All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

11. All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including JJHCS's allegations in Complaint ¶ 114.

12. All Documents and Communications regarding any alleged harm caused by SaveOnSP to any Patient by allegedly making their healthcare more expensive, including JJHCS's allegations in Complaint ¶ 114.

13. All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

14. All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than Care-Path, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

15. All Documents and Communications regarding any alleged harm caused by SaveOnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 110, 115.

12

16.     All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

17.     All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

18.     From January 1, 2009 through the present, for each Janssen Drug for each year, Documents sufficient to show:

      a.     all Patients receiving the Janssen Drug;

      b.     the number of fills of the Janssen Drug received by each such Patient;

      c.     the dosage of the Janssen Drug received by each such Patient for each fill;

      d.     the projected number of Patients, average number of fills, and average dosage for the Janssen Drug;

      e.     the cost to manufacture the Janssen Drug;

      f.     the sales and marketing budget for the Janssen Drug;

      g.     the price of the Janssen Drug;

      h.     the revenue received by JJHCS from the Janssen Drug;

      i.     all Patients enrolled in the CarePath program for the Janssen Drug;

      j.     the dates on which each Patient was enrolled in CarePath;

      k.     the amounts of copay assistance funds that JJHCS offered to each Patient enrolled in CarePath;

      l.     the Janssen Drugs for which each Patient enrolled in CarePath received copay assistance; and

13

       m.     all copay assistance payments that JJHCS made to or on behalf each Patient enrolled in CarePath.

19.    From January 1, 2009 through the present, for each Janssen Drug for each year, all Documents and Communications regarding:

       a.     JJHCS's determination of the amounts of copay assistance funds that JJHCS offered to Patients enrolled in CarePath, including the determination of the maximum program benefit per calendar year for the Janssen Drug;

       b.     JJHCS's budget for CarePath, including the sales and marketing budget;

       c.     JJHCS's actual and projected annual costs for CarePath;

       d.     JJHCS's use of or accounting for unused CarePath funds;

       e.     the impact of the Affordable Care Act on JJHCS's CarePath budget or funding, including the impact of laws and regulations regarding out-of-pocket maximums;

       f.     JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath;

       g.     the impact of CarePath on Janssen's sales of any Janssen Drug;

       h.     the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

       i.     JJHCS's or Janssen's actual and projected return on investment for CarePath; and

       j.     any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by SaveOnSP.

14

20.     All Documents and Communications regarding JJHCS's attempts to limit or elim-inate the amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs, including Documents and Communications regarding JJHCS's attempts to limit or eliminate the availability of CarePath copay assistance funds available to Patients enrolled in health plans ad-vised by SaveOnSP.

21.     All Documents and Communications regarding any offer by JJHCS to provide to any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance funds available to a Patient.

22.     All Documents and Communications regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans.

23.     From any time, all Documents and Communications regarding TrialCard's negoti-ations or agreements regarding the potential use of any Copay Maximizer Service or Copay Ac-cumulator Service, for TrialCard's Employee Health Plans, including any abandonment of those negotiations or agreements.

24.     Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coor-dinators.

25.     From January 1, 2009 through the present, Documents sufficient to show the eco-nomic terms of JJHCS's retention of or agreements with You, including any assessment of the fair market value of those services.

15

26.     From January 1, 2009 through the present, documents sufficient to show the percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs.

27.     From January 1, 2015 through the present, all Documents and Communications relating to Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's return on investment for copay assistance dollars.

28.     From January 1, 2015 through the present, all Documents and Communications relating to Your understanding of the terms "copay accumulator" and "copay maximizer."

29.     All Documents and Communications concerning non-medical switching by participants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

30.     Your document retention policies.

31.     Complete data dictionaries for any data that You produce.

32.     From any time, all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP, including in response to subpoenas served in this Action.