# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

August 19, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

    Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
           ***No. 2:22-cv-02632 (JKS) (CLW)***

Dear Judge Wolfson:

On behalf of Defendant Save On SP, LLC ("SaveOn"), we write in response to Plaintiff

Johnson and Johnson Health Care Systems, Inc.'s (with its affiliates, "J&J") motion to compel

production of SaveOn's document retention policy.

SaveOn's document retention policy would be relevant only if there were a suggestion that

SaveOn had not preserved relevant documents covered by the policy or if the policy were neces-

sary to identify relevant documents.[1] SaveOn asked J&J to identify what documents it believed

---

[1] *See Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 189 (E.D. Pa. 2004) (ordering production
of defendant's document retention policy when plaintiff contended defendant did not follow it);

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

were not preserved that might implicate the policy; J&J suggested that there were issues with SaveOn's retention of three custodians' personal text messages, Chatter messages, and transaction data from 2016 and 2017. Ex. 2 at 2 (May 24, 2024 Ltr. from B. Robinson to M. Nelson). SaveOn represented that its policy was unrelated to retention of employee text messages (a few were inadvertently deleted because of auto-delete settings on employees' personal phones) or Chatter messages (some were deleted as part of a system upgrade in 2021) and explained that, based on an investigation, it did not believe that any transaction data had been deleted. J&J Ex. 10 at 2; Ex. 3 at 1 (June 21, 2024 Ltr. from M. Nelson to B. Robinson). J&J declared impasse and moved six weeks later, improperly citing two additional purported gaps in SaveOn's production that J&J had not raised during the parties' discussions: Gary Meyn's files and various call recordings. Mot. 2.[2]

---

*Sanchez v. SunGard Availability Servs., LP*, 2008 WL 11510305, at *5 (D.N.J. Mar. 31, 2008) (denying request for retention policies when there was no suggestion of spoliation); *Micron Technology, Inc. v. Rambus Inc.*, 2007 WL 9771134, at *1 (D. Del. Aug. 29, 2007) (denying the request for retention policies when the moving party failed to prove relevance); *Barton v. RCI, LLC*, 2013 WL 1338235, at *20 (D.N.J. Apr. 1, 2013) (ordering production of retention policy when it would assist the requesting party in narrowing discovery requests).

The other cases that J&J cites, *United States v. Coburn*, 2022 WL 357217 (D.N.J. Feb. 1, 2022) and *Nike, Inc. v. Brandmania.com, Inc*, 2002 WL 32348549 (E.D. Pa. Oct. 7, 2002) are inapposite. *Coburn* concerned the production of litigation hold notices, which are not at issue here, 2022 WL 357217, at *6, and the court in *Nike* ordered production of the plaintiff's document retention policies because the plaintiff failed to explain its objection to the request. 2002 WL 32348549, at *12.

[2] While J&J asserted that SaveOn must produce its document retention policy because J&J produced some of its own policies, Ex. 4 at 2 (June 12, 2024 Ltr. from B. Robinson to M. Nelson); Ex. 5 at 1 (June 25, 2024 Ltr. from B. Robinson to M. Nelson); Mot. 1, 4, J&J put its own policies at issue when it asserted that "due to applicable preservation and/or retention capabilities, [J&J was] not in a position to produce documents or communications created before 2013." Ex. 6 at 2 (July 17, 2023 Ltr. from H. Sandick to A. Dunlap); Dkt. 146 at 22 ("JJHCS advised SaveOnSP that JJHCS is not even able to make a production of documents from a time period earlier than 2013 due to applicable preservation and/or retention capabilities"). SaveOn has not made such an assertion.

Hon. Freda L. Wolfson                                                            Page 3

While J&J fails to show why SaveOn's document policy is relevant, to avoid a dispute,

SaveOn has now produced it to J&J and attaches it here as Exhibit 1. SaveOn's policy applies only

to limited categories of its clients' data. Consistent with SaveOn's representations to J&J, that

policy is irrelevant to the issues that J&J raises, none of which raises an inference of spoliation in

violation of the policy: (1) the policy does not apply to emails, including Meyn's emails (which

were not preserved when he left the company in March 2021); (2) it does not apply to Chatter

messages (which were not preserved when SaveOn migrated systems in June 2021); (3) it does not

apply to SaveOn employees' personal text messages; (4) adopted in April 2021, it would not apply

to prior deletion of any transaction data from 2016 and 2017 and, in any event, based on an inves-

tigation, SaveOn believes that it has preserved and produced all such relevant data; and (5) it does

not apply to call recordings.[3] *See* Ex. 7 at 1 (Apr. 24, 2023 Ltr. from A. Dunlap to H. Sandick);

Ex. 8 at 2 (May 3, 2024 Ltr. from M. Nelson to K. Brisson); J&J Ex. 10 at 2; Ex. 3 at 1; J&J Ex.

4; J&J Ex. 8.

---

[3] As SaveOn told J&J, many of the "call recordings" that J&J asserts are missing are not actually
unique recordings. SaveOn is still in the process of search for the recordings that J&J did request.

Hon. Freda L. Wolfson                                                    Page 4

We appreciate Your Honor's attention to this matter.

Respectfully submitted,


/s/ *E. Evans Wohlforth*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com


Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# Exhibit 1



| | |
|---|---|
| **Title:** Data Retention and Termination | **Category:** Operations / IT Security |
| **Policy No. 71** | **Approval Date**: 4/27/2021 |
| **Approval Authority:** SaveOnSP Management Team | **Revision Date(s):** |

## Purpose

The purpose of this policy is to outline data retained by SaveOnSP, LLC. By listing which information to keep and how long documents must be retained, we are ensuring the accuracy and security of protected data. This Policy is also for the purpose of aiding employees to uphold this policy and follow the guidelines detailed below.

## Policy

1. Pre-go live data – specialty drug and member extract (whole population) NEEDS to be deleted as a priority.
   a. Pre-go live data; including but not limited to the client Member Extract and Claims Lookback files are to be deleted from all sources thirty days after the go-live date

2. Client termination - SOSP keeps client live for up to 12 months from the termination date due to claims being processed.
   After the predetermined amount of time member data needs to be retrieved through Capture
   a. All data elements need to be identified that house member data in Salesforce and any other cloud-based applications.
   b. Member data will reside internally on the SQL server and be removed from Salesforce and any other cloud-based applications.
   c. Member data residing on the SQL server will be stored and maintained in accordance with HIPAA as noted herein.

3. HIPAA – 6 years from creation or from last use (client service termination): Needs to be saved for 6 years after termination. Finance – 3 years *(not applicable for contract language)*
   6 years from the day of Client contract termination
   a. All member / client data stored on internal servers or back-up devices will be purged permanently or maintained longer as necessary for legal or compliance purposes.



Confidential Information



| Implemented by: | Jillian Vincheski |
|---|---|
| Dept./Type: | IT Security Analyst |
| Signature: | *(signature)* |
| Date: | 4/27/2021 |
| Approved By: | Robert Saeli |
| Title: | Sr. Vice President, Business Operations |
| Signature: | *(signature)* |
| Date: | 4/27/2021 |



Confidential Information

# Exhibit 2



www.pbwt.com

May 24, 2024

Bonita L. Robinson
(212) 336-2554

**By Email**

Meredith Nelson, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:     **SaveOnSP's Responses & Objections to JJHCS's 12th Set of Requests for Production,**
        *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
        **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Meredith:

We write to memorialize our conferral on May 20, 2024 regarding SaveOnSP's Responses & Objections to JJHCS's Twelfth Set of Requests for Production and further to our correspondence regarding the same. We also request, again, that SaveOnSP provide hit counts, individually and in the aggregate, for each of our proposed searches. *See* Apr. 12, 2024 Ltr. from I. Eppler to E. Snow.

As you know, SaveOnSP asserted in its R&Os that it would not produce any documents at all in response to any of JJHCS's seven Requests. During the meet and confer, you stated that you have investigated or are in the process of investigating the matters underlying each of JJHCS's Requests; that SaveOnSP is amenable to producing a subset of the requested documents; and that you will make counterproposals to JJHCS shortly after the Memorial Day holiday. Below, we have summarized specific items we discussed as to each Request.

**Request No. 116.** This Request seeks "[a]ll Documents or Communications regarding any actual or contemplated efforts to provide money, gift cards, or any other benefit to any person enrolled in a health or pharmacy benefit plan offered by a SaveOnSP Client, as an incentive to enroll in or use the SaveOnSP Program or any other service that SaveOnSP offers or provides." You stated that you are investigating this Request and noted that JJHCS's proposed search terms generate approximately 40,000 documents. You intend to make a counterproposal. You also noted that your investigation has not thus far uncovered evidence of discussions of incentives for member enrollment other than gift cards. Please confirm the results of your investigation.

Meredith Nelson, Esq.
May 24, 2024
Page 2

**Request No. 117.** This Request seeks "[a]ll Documents and Communications related to the  described in SOSP_0815168, as well as all Documents and Communications related to ████████████ You confirmed that you understand the Request to cover documents and communications relating to drafts of the referenced "talk track," not merely final, circulated versions. You further stated that you have extensively investigated the subject of this Request and represented that, while you still have further investigation to do, at this time you do not believe that a "talk track" was actually drafted or circulated. Please confirm the final results of your investigation. You further stated JJHCS's proposed search terms for this Request only hit on one document. Please confirm that you will produce that document if it is responsive.

**Request No. 118.** This Request seeks "[d]ocuments sufficient to show SaveOnSP's document retention policies, including but not limited to all final versions of any document retention policy that SaveOnSP may have maintained during the Relevant Time Period." You stated that you have identified case law that you believe may be relevant this Request; we remain willing to consider such authority. You further agreed that there presently are some "issues" on SaveOnSP's end regarding, at a minimum, the retention of text messages. We also note that during the course of discovery, you have identified a number of issues related to SaveOnSP's retention of certain data. *See, e.g.*, Jan. 10, 2024 Ltr. from J. Long to E. Snow (deleted transaction data); Jan. 26, 2024 Ltr. from S. Arrow to E. Snow (deleted Chatter messages). You also acknowledged the Request is not burdensome, because such policies likely would be located in a centralized noncustodial source. Finally, you suggested that it is not necessary to employ search terms in connection with this Request. As we stated, we are willing to consider a counterproposal.

**Request Nos. 119–22.** We discussed certain issues applicable to Requests 119–22. We explained that these Requests were the product of our efforts to narrow prior Requests (Nos. 95 and 96) to comply with guidance from Special Master Wolfson, and you recognized that these Requests reflect such efforts. You further noted that our proposed search terms for these four requests hit on roughly 17,000 to 20,000 documents when run across all custodians. You suggested that, in connection with these Requests, search terms should be run only on a subset of custodians because the Requests seek documents and communications that likely would have been discussed among only a handful of individuals at a higher level of the company. We stated that we are open to considering a narrower custodian list, but that we would need to understand on what basis you have identified the relevant custodians.

We also discussed matters specific to certain of these four Requests.

As to **Request No. 120**, which seeks, "[f]or the period May 1, 2022 to the present, all Documents and Communications related to any actual or contemplated efforts to prevent employees from discussing patient harm associated with the SaveOnSP Program, or JJHCS's claims or allegations regarding SaveOnSP at issue in this Action, outside of SaveOnSP," you contended that the Request is similar to an interrogatory to which SaveOnSP has previously responded. You acknowledged that this Request differs from the interrogatory in question because

Meredith Nelson, Esq.
May 24, 2024
Page 3

the latter did not encompass "*contemplated* efforts," but noted that you were not aware of any such contemplated efforts.  You intend to share a counterproposal to address this Request.  We stated that we would be willing to consider a counterproposal, but that we would not agree to any counterproposal without understanding how you sought to identify "contemplated efforts" to prevent employees from discussing patient harm associated with the SaveOnSP Program, or JJHCS's claims or allegations regarding SaveOnSP at issue in this Action.

As to **Request No. 121**, which seeks, "[f]or the period May 1, 2022 to the present, all Documents and Communications concerning any contemplated or actual efforts to discipline, fire, sue, retaliate against, or take any other adverse action against ████████████ ████████████████████████████████████ you agreed that the documents sought are relevant in light of remarks that you made to the Special Master on the subject.  You stated that you have conducted extensive investigation with respect to the subject matter of this Request and intend to make a counterproposal.  You also represented that this Request, in particular, involved decisions at a very high level of the company.  We pointed out that custodians who were not at a high level (like Paula Mighells) would also be appropriate.

As to **Request No. 122**, which seeks "[f]or the period May 1, 2022 to the present, all Documents and Communications concerning any contemplated or actual efforts to enforce against any person ███████████████████████████ any confidentiality or nondisclosure policy that SaveOnSP may have maintained," you stated that our proposed search terms were hitting on "many" documents and that you were not inclined to agree to those terms because SaveOnSP had already represented that it did not take actual enforcement action against persons other than ██████████ and that you were not presently aware of any contemplated actions.  You will identify whether particular search terms are responsible for generating many of the hits and intend to share a counterproposal.  We emphasized, as with respect to Request No. 120, that we would be willing to consider a counterproposal but that we would not agree to any such proposal without an understanding of how you fully investigated the existence of any contemplated enforcement efforts.  Moreover, to the extent SaveOnSP did contemplate such efforts, the relevant custodians may be broader than senior employees.

We look forward to receiving hit count information and your counterproposals.

Very truly yours,

*/s/ Bonita Robinson*
Bonita L.  Robinson

15109325

# Exhibit 3

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Meredith Nelson
Associate
212 390 9069
mnelson@selendygay.com

June 21, 2024

**Via E-mail**

Bonita Robinson
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas New York,
NY 10036
brobinson@pbwt.com

Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC*, Case No. 2:22-cv-02632 (JKS) (CLW)

Dear Bonnie,

    We write in response to J&J's June 12, 2024 letter regarding J&J's Twelfth
Set of RFPs.

    **Request No. 116.** J&J's proposed search term—("gift card" w/20 (enroll*
OR join* OR use OR "sign up" or regist*))—returned 2,533 hits, 3,772 including
families. Upon investigation, most of these hits were irrelevant, such as spam pro-
motional emails from airlines or credit card companies to different custodians.
SaveOn proposes the search term "gift card" w/20 ((enroll* OR join* OR use OR
"sign up" or regist*) AND (patient* OR member*)), which returned 148 hits, 179
including families. This search term is targeted towards documents about gift cards
intended for members of SaveOn-advised health plans.

    **Request No. 117.** SaveOn confirms J&J's understanding of its representa-
tion.

    **Request No. 118.** SaveOn stands by its relevance objection. SaveOn has
further investigated this issue and confirms, based on that investigation, that the
deletion of text messages on employees' personal devices is not addressed by any
company retention policy. While J&J "disagree[s]" with SaveOn's contention that
there is no suggestion of spoliation regarding transaction data or Chatter mes-
sages, June 12, 2024 Ltr. from B. Robinson to M. Nelson at 2, n.1, J&J has not
explained the basis for that disagreement.

Bonita Robinson
June 21, 2024

**Request Nos. 119-121.** SaveOn provides the following hit counts for the two search terms that J&J proposed and SaveOn's proposed narrowed version of J&J's proposed search term for RFP No. 121.

| | Deduplicated hit counts across all custodians | Deduplicated hit counts across custodial files of Jody Miller, Claudia Dunbar, and Rob Saeli |
|---|---|---|
| **Time Period 3/1/2023 to 11/7/2023:** (confident* OR nondisclosure OR "non-disclosure" OR NDA) W/25 ((polic* OR rule* OR "handbook") AND (updat* OR revis* OR new OR amend* OR chang* OR modif*)) | 1,460 hits, 3,701 including families | 189 hits, 273 including families |
| **Time Period 5/1/2022 to 11/7/2023:** (NDA OR gag OR prevent* OR stop* OR block* OR ban* OR forbid* OR preclu* OR punish* OR permi*) W/35 ((discuss* OR shar* OR talk* OR post* OR reveal* OR disclos* OR leak*) W/35 (injury OR harm OR patient OR client OR customer OR case OR lawsuit OR "law suit" OR litigat* OR action OR "Johnson & Johnson" OR "Johnson and Johnson" OR "J&"J or JNJ OR Janssen OR Jannsen OR Jansen OR Jannssen OR JJHCS OR JHCS or JJCHS OR JJHS)) | | |
| **Time Period 5/1/2022 to 11/7/2023:** (Mighells OR Ted OR Theodore OR Paula) W/20 (fir* OR terminat* OR discharg* OR disciplin* OR punish* OR suspen* OR sue* OR suing OR lawsuit* OR "law suit" OR litigat* OR retaliat* OR "cease and desist") | | |

2

Bonita Robinson
June 21, 2024

|  | Hit counts across all custodians | Hit counts across custodial files of Jody Miller, Claudia Dunbar, and Rob Saeli |
|---|---|---|
| **Time Period 5/1/2022 to 11/7/2023:** (Mighells OR Ted OR Theodore OR Paula) W/20 (fir* OR terminat* OR discharg* OR disciplin* OR punish* OR suspen* OR sue* OR suing OR lawsuit* OR "law suit" OR litigat* OR retaliat* OR "cease and desist") | 224 hits, 372 including families | 75 hits, 106 including families |

As we previously stated, SaveOn's investigation showed that the individuals responsible for the decision-making processes referenced in RFP Nos. 119-121 were Jody Miller, Claudia Dunbar, and Rob Saeli. SaveOn's investigation further showed that running these terms over the files of other custodians generates significant numbers of false hits. Because our investigation gave no reason to believe that any individuals besides Miller, Dunbar, and Saeli have unique relevant documents, SaveOn will not provide hit counts for its other custodians.

We disagree with your suggestion that Paula Mighells is an appropriate custodian for these Requests. *First*, SaveOn has no reason to believe that Mighells would have any documents responsive to RFP No. 119, which asks for documents relating to the reasons that SaveOn implemented its May 2023 confidentiality policy—a decision in which Mighells was not involved. *Second*, the proposed search term related to RFP No. 121 would likely generate a significant number of false hits if run over her files, as it includes her name. *Finally*, Mighells is not an existing custodian. Given the at most marginal relevance of the documents sought by RFPs 119-121, SaveOn does not believe that the burden of collecting and processing her documents is appropriate.

We are available to meet and confer.

Sincerely,

/s/ Meredith Nelson

Meredith Nelson
Associate

# Exhibit 4



June 12, 2024

Bonita L. Robinson
(212) 336-2554

**By Email**

Meredith Nelson, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:     **SaveOnSP's Responses & Objections to JJHCS's 12th Set of Requests
for Production**
*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
**Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Meredith:

We write in response to SaveOnSP's June 7, 2024 letter regarding JJHCS's Twelfth Set of Requests for Production.

Thank you for providing your counterproposals to these Requests and for confirming the results of SaveOnSP's factual investigations relevant to them. As discussed in response to specific Requests, we cannot fully evaluate several of your counterproposals without reviewing the hit counts associated with each. Please provide that information by this Friday, June 14. In the interim, however, and subject to reviewing those hit counts, we provide the below responses to your letter.

**Request No. 116.** We understand from your letter that, based on your investigation, you have concluded that the only incentive for enrollment in SaveOnSP that SaveOnSP provided or contemplated providing to members of plans offered by SaveOnSP clients was gift cards. Based on your representation, we are willing to narrow our proposed search term so as to focus on documents and communications that capture gift cards, rather than other incentives. However, SaveOnSP's counterproposal—(("gift card" AND incentiv*) w/20 (enroll* OR join* OR use OR "sign up" or regist*))—is too narrow. The term "gift card" itself conveys an incentive and it is unduly limiting to require that this term be coupled with some variation of the term "incentiv*." We propose the following search term instead: ("gift card" w/20 (enroll* OR join* OR use OR "sign up" or regist*)). Please provide us with the hit count information for both your counterproposal and JJHCS's narrowed proposal.

Meredith Nelson, Esq.
June 12, 2024
Page 2

**Request No. 117.** As your letter notes, we sought confirmation that SaveOnSP "did not draft or circulate a talk track" regarding this litigation. *See* June 7, 2024 Letter from M. Nelson to B. Robinson at 1. You state that SaveOnSP did not draft such a talk track. *See id.* We understand your response to mean that SaveOnSP neither drafted such a talk track nor circulated a talk track on this subject prepared by any other party. Please confirm that our understanding is correct. If it is, we can agree not to pursue this Request further at present, through it remains a pending Request in the event that responsive materials are later generated. Of course, should we subsequently learn of information suggesting that a talk track regarding this litigation was drafted or circulated, we reserve the right to revisit this Request.

**Request No. 118.** Despite SaveOnSP's acknowledgement at our May 20, 2024 conferral that this Request is not burdensome and its concession that there have been "issues" with retention of its custodians' text messages, *see* May 24, 2024 Letter from B. Robinson to M. Nelson at 2, SaveOnSP refuses even to provide a counterproposal. Even assuming that the proffered reason for SaveOnSP's refusal—that document retention policies "are generally irrelevant absent a suggestion of spoliation," June 7, 2024 Letter from M. Nelson to B. Robinson at 1–2—is accurate, that does not support SaveOnSP's position. The acknowledged deletion of text messages by SaveOnSP's custodians alone raises "a suggestion of spoliation."[1] JJHCS thus is entitled to explore the content of SaveOnSP's retention policies, notwithstanding SaveOnSP's self-serving contention that deletion of text messages "would not be covered" by such policies. In addition, the Court has made clear in other contexts that it believes that retention policies are a fair subject of discovery. SaveOnSP itself has asked JJHCS and even many third-party witnesses to produce such policies. Discovery must be a two-way street. Please confirm by this Friday, June 14, that SaveOnSP will produce its retention policies, otherwise we will understand the parties to be at an impasse.

**Request Nos. 119–21.** SaveOnSP has identified three custodians likely to have documents responsive to these Requests and proposes to run three search terms over those custodians, the first two of which were proposed by JJHCS and the third of which is a narrowed version of JJHCS's search term associated with Request No. 121. While we are willing to consider both limiting these Requests to a subset of SaveOnSP's custodians and narrowing JJHCS's search term for Request No. 121, we cannot agree to SaveOnSP's proposals without hit count information, particularly given that the total number of hits associated with each of JJHCS's proposed search terms across *all* custodians is quite modest. Please provide a breakdown of search hits by custodian for each of JJHCS's proposed search terms, as well as for the narrowed term that SaveOnSP has proposed in connection with Request No. 121. Please also provide the total deduplicated hit count associated with these three Requests as proposed by JJHCS, along with the total deduplicated hit

---

[1] To the extent SaveOnSP suggests that issues regarding retention of text messages are the only issues raising "a suggestion of spoliation," we disagree—but that is inconsequential for purposes of this Request because, as described above, the "issues" regarding deletion of text messages alone warrants production of SaveOnSP's retention policies.

Meredith Nelson, Esq.
June 12, 2024
Page 3

count associated with SaveOnSP's counterproposal.  Finally, as we indicated during our conferral, we are unlikely to agree to any narrowed set of custodians that does not include Paula Mighells.

      **Request No. 122.**  SaveOnSP refuses to produce documents in response to this Request because, among other reasons, you have concluded that SaveOnSP "has not enforced or considered enforcing its confidentiality policies against individuals ███████████████████ ██████."  June 7, 2024 Letter from M. Nelson to B. Robinson at 3.  Based on this representation, and subject to our reaching agreement on Request Nos. 119–21, we can agree not to pursue this Request.  We reserve the right to revisit this Request if we learn of information that contradicts your representation.

      We look forward to receiving the requested hit count information by this Friday, June 14.  We are available to meet and confer.

      Very truly yours,

      */s/ Bonita Robinson*
      Bonita L.  Robinson

# Exhibit 5




www.pbwt.com

June 25, 2024

Bonita L. Robinson
(212) 336-2554

**<u>By Email</u>**

Meredith Nelson, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:     **SaveOnSP's Responses & Objections to JJHCS's Twelfth Set of Requests for Production**
> ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
> Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Meredith:

       We write in connection with SaveOnSP's June 21, 2024 letter regarding JJHCS's Twelfth Set of Requests for Production. We provide the below responses regarding each Request that remains in dispute.

       **Request No. 116.** We are willing to narrow further the search term we proposed in our June 12, 2024 letter in order to "target[] … documents about gift cards intended for members of SaveOn-advised health plans," as you suggested. *See* June 21, 2024 Ltr. from M. Nelson to B. Robinson at 1. Your proposed search string—("gift card" w/20 ((enroll* OR join* OR use OR "sign up" OR regist*) AND (patient* OR member*)))—goes too far in requiring that variations of the terms "patient" or "member" be found within a 20-word limiter. We propose the following search string, which targets members of SaveOnSP-advised health plans without unduly limiting the universe of potentially responsive documents: ("gift card" w/20 (enroll* OR join* OR use OR "sign up" OR regist*)) AND (patient* OR member*). Please confirm whether you agree to run this search string, and provide hit count information for the same by Thursday, June 27.

       **Request No. 117.** In light of your confirmation that SaveOnSP neither drafted any talk track regarding this litigation nor circulated such a talk track prepared by another party, we agree not to pursue this Request further, subject to the same reservations set forth in our June 12, 2024 letter. *See* June 12, 2024 Ltr. from Br. Robinson to M. Nelson at 2.

       **Request No. 118.** You maintain that SaveOnSP's retention policies are not relevant even though SaveOnSP has requested and received retention policies from both JJHCS and third parties. *See, e.g.*, SaveOnSP's First Set of Requests for Production, Request No. 45;

Meredith Nelson, Esq.
June 25, 2024
Page 2

SaveOnSP's Feb. 17, 2023 Subpoena to TrialCard, Request No. 30.  Indeed, SaveOnSP even insisted upon and received JJHCS's retention policies from the pre-2013 time period.  *See* SaveOnSP's March 12, 2024 Letter Motion; Special Master's April 10, 2024 Memorandum Order. SaveOnSP requested all of these retention policies without even a hint of intentional destruction on the part of JJHCS or any third party—while JJHCS served its Request No. 118 amid conceded "issues" regarding SaveOnSP custodians' retention of text messages.  You have not articulated any reason why SaveOnSP should be entitled to request and receive document retention policies in the ordinary course of discovery but should be able to withhold its own such policies when it receives the same requests (and in circumstances where SaveOnSP's policies are particularly relevant).  To the extent you contend that such retention policies do not apply to the text messages in question, that can only be assessed by reviewing the retention policies themselves, which is another reason why they must be produced.  We are at an impasse.

### Request Nos. 119–21.

As the hit counts you have provided make plain, it is not burdensome for SaveOnSP to run JJHCS's initially requested search strings across all SaveOnSP custodians:  those search strings generate only 1,460 search hits.  Nevertheless, you insist that SaveOnSP's search, review, and production in response to Request Nos. 119–21 should be limited to just three custodians—Jody Miller, Claudia Dunbar, and Rob Saeli—whose custodial files collectively contain fewer than 13 percent of all search hits.  You take this position on the ostensible ground that there are "significant numbers of false hits" for other custodians, and because these were the three custodians "responsible for the decision-making processes referenced in" the Requests at issue. *See* June 21, 2024 Ltr. from M. Nelson to B. Robinson at 3.  These are not bases for so severely narrowing the scope of JJHCS's requests.

First, as you know, the use of any search term is likely to generate "significant numbers of false hits."  That is the nature of electronic discovery, and it is not a reason to cut out custodians where, as here, the total number of search hits is not burdensome.  Second, the custodial files of individuals who were not "responsible for" decision-making regarding SaveOnSP's confidentiality policies and/or enforcement efforts may very well contain information responsive to JJHCS's Requests.  For example, SaveOnSP employees may have memorialized in e-mail or chat communications information that Mr. Miller, Ms. Dunbar, or Mr. Saeli orally conveyed about changes to SaveOnSP's confidentiality and nondisclosure policy and the reasons for such changes. These personnel also may have discussed with one another, but not with Mr. Miller, Ms. Dunbar, or Mr. Saeli, efforts they experienced or observed to prevent employees from discussing patient harm resulting from SaveOnSP's program or from discussing other problems with the program that are consistent with JJHCS's allegations in this case.  Such documents would be squarely responsive to JJHCS's Requests.  We reiterate that we are willing to consider limiting these Requests to a subset of SaveOnSP's custodians.  But we cannot meaningfully evaluate SaveOnSP's proposal without even reviewing hit counts for SaveOnSP's other custodians.  For reasons that remain a mystery to us, you refuse to provide those hit counts.  Please provide them by Thursday, June 27.

Meredith Nelson, Esq.
June 25, 2024
Page 3

   Relatedly, you state that Paula Mighells is not an appropriate custodian.  We disagree.  Indeed, as to Request No. 121—which seeks documents and communications concerning, among other things "contemplated or actual efforts to discipline, fire, sue, retaliate against, or take any other adverse action against … Paula Mighells"—there is no more appropriate custodian.  Please provide hit counts for Ms. Mighells for all of JJHCS's proposed search strings relating to RFP Nos. 119–21 by Thursday, June 27.  To the extent you have concerns regarding the proposed search string associated with Request No. 121, we are happy to discuss adaptations to the string, but it does not make sense to do so before reviewing the hit counts.

   Finally, we previously requested that SaveOnSP provide hit counts associated with JJHCS's original proposed search string, including its search string associated with Request No. 121, and SaveOnSP's narrowed version of the search string associated with that Request.  *See* June 12, 2024 Ltr. from B. Robinson to M. Nelson at 2.  However, you have not provided hit counts associated with JJHCS's initial version of the search string for Request No. 121.  Please provide those hit counts by Thursday, June 27 so that JJHCS may evaluate the propriety of your narrowed proposal.

   We look forward to receiving the requested hit count information. We remain available to confer regarding RFP Nos. 116 and 119–21.

       Very truly yours,

       */s/ Bonita Robinson*
       Bonita L.  Robinson

# Exhibit 6





July 17, 2023

Harry Sandick
(212) 336-2723
hsandick@pbwt.com

Andrew Dunlap, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:     **Production of Terms and Conditions Discovery**
         *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
         No. 22 Civ. 2632 (ES) (CLW)

Dear Andrew:

We write in response to your June 29, 2023 letter regarding JJHCS's production of documents regarding CarePath's terms and conditions in response to SaveOnSP's Requests for Production Nos. 12 and 13.

For the reasons discussed below and in our prior correspondence, JJHCS has taken reasonable steps in accordance with the Federal Rules of Civil Procedure in order to respond to RFP Nos. 12 and 13. SaveOnSP's asserted dissatisfaction with the documents produced thus far is not a basis for requiring JJHCS to embark on a wild-goose chase in search of documents that never existed and therefore cannot be collected and produced.

Nevertheless, in keeping with the Court's admonition to seek to resolve discovery disputes through negotiation rather than motion practice, we offer in this letter several proposals that, taken together, are more than sufficient to resolve your outstanding concerns. We make these proposals contingent on your agreement that taking these steps will resolve this dispute and allow the parties to avoid unnecessary motion practice.

## I.  Documents Regarding the Drafting of Terms and Conditions

At the outset, JJHCS disagrees with your characterization of various aspects of our June 23 meet and confer. To begin with, we did not agree to "identify the predecessor programs from which the CarePath terms and conditions were drawn." June 29, 2023 Ltr. from A. Dunlap to H. Sandick. Rather, we stated that we would consider your request that we do so.

Having considered it, we are not prepared to agree to this request. As JJHCS has stated, the terms and conditions at issue in this litigation long pre-date the relevant time period. At no point have we identified any further documents regarding their drafting or the specific programs for which those terms and conditions were originally employed, nor do we have any reason to think such documents exist.

Andrew Dunlap, Esq.
July 17, 2023
Page 2

        During our meet and confer, we did agree to identify how far back JJHCS typically
retains business records and to what extent communications pre-dating 2016 are still accessible.
This would allow us to assess the feasibility of agreeing to your request.  We did not agree to
"identify the document sources that JJHCS has for those [predecessor] programs" or identify "the
custodians or non-custodial sources of those records" as stated in your letter.  *See* June 29, 2023
Ltr. from A. Dunlap to H. Sandick.  Based on our reasonable investigation, we understand that,
due to applicable preservation and/or retention capabilities, we are not in a position to produce
documents or communications created before 2013.

        At any rate, even if such documents were accessible, it is far from clear that they
would shed any light on the disputed issues in this lawsuit.  The "other offer" language is standard
fare across many manufacturers' copay assistance programs, further confirming that the term is of
an old vintage, ubiquitous in its use, and unambiguous in its meaning.  In our May 26 letter, we
cited just a few examples, including AstraZeneca,[1] Novartis,[2] Bristol Myers Squibb,[3] and Pfizer.[4]

        Nonetheless, in a good-faith effort to reach agreement on this issue, JJHCS will
agree to expand the time period for the production of documents from Adrienne Minecci to include
August 1, 2015 to July 1, 2022—subject to SaveOnSP's agreement that this expansion and the
additional search terms discussed, *infra* at 4—will satisfy JJHCS's obligations with respect to
Request Nos. 12 and 13.  Consistent with JJHCS response to SaveOnSP's Interrogatory No. 3,
Ms. Minecci had responsibility for the drafting and revision of the CarePath terms and conditions
referenced in the Complaint and also was involved in the process of transitioning at least one
predecessor co-pay support program to the CarePath program, including the introduction of the
relevant terms and conditions.

---

[1] *See* AstraZeneca Patient Savings Programs for Specialty Products (last updated March 2023),
https://www.astrazenecaspecialtysavings.com/ (copay assistance "cannot be combined with any other
offer").

[2] Novartis, Patient Copay Savings, https://www.copay.novartispharma.com/nvscopay/eligibility.html#
(last accessed May 22, 2023) ("Program may not be combined with any third-party rebate, coupon, or
offer.").

[3] Bristol Myers Squibb, Access Support Co-Pay Assistance Program Terms & Conditions (October 2022),
https://www.bmsaccesssupport.bmscustomerconnect.com/servlet/servlet.FileDownload?file=00Pi000000
omiYSEAY ("This offer cannot be combined with any other offer, rebate, coupon or free trial.").

[4] *See, e.g.*, Pfizer, Nivestym Patient Resources ("This program cannot be combined with any other
savings, free trial or similar offer for the specified prescription."), https://www.nivestym.com/patient-
resources (last accessed May 22, 2023).

Andrew Dunlap, Esq.
July 17, 2023
Page 3


## II.    Attorney Custodians

SaveOnSP also mischaracterizes our discussion of the three attorneys—Jennifer De Camara, Harman Grossman, and Savaria Harris—who SaveOnSP now seeks to add as custodians. As stated on our call and as confirmed in our subsequent investigation, all three individuals are employed by the company as attorneys who provide legal advice—not business advice—and therefore none are proper custodians in this matter. Any relevant documents or communications would be protected by the attorney-client privilege, work product doctrine, or another applicable privilege or protection from disclosure.

For example, during the relevant period, Mr. Grossman served as "Assistant General Counsel, Litigation" at Johnson & Johnson. In that role, Mr. Grossman managed a portfolio of complex civil and patent litigations involving the Company. To the extent Mr. Grossman was "involved in revisions of the terms and conditions for Stelara and Tremfya," as disclosed in our January 17, 2022 responses to SaveOnSP's Interrogatories, that involvement was in his role as in-house counsel providing legal advice to JJHCS and his communications are protected by the attorney-client privilege. *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) ("[W]hile the attorney's advice may be relevant to the matters in issue," the privilege continues to apply "as the interests it is intended to protect are still served by confidentiality."); *Prestige Management Servs., Inc.*, No. 14-3451, 2017 WL 1084523, at *5 (D.N.J. Mar. 21, 2017) (Salas, J.) (concluding there was no implied waiver of privilege where defendant did not raise any relevant affirmative defense or "selectively produce[] some privileged documents while withholding others"). In addition, given his role as a litigation in-house counsel, many of his communications during the relevant time period are protected by the work product doctrine as well. *Harrington v. Bergen Cnty.*, 2016 WL 4820625, at *3 (D.N.J. Sept. 13, 2016) (Waldor, J.) ("The work product doctrine is governed by a uniform federal standard set forth in Fed.R.Civ.P. 26(b)(3) and shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." (quoting *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003)).

As stated in JJHCS's May 26 letter and our June 23 meet and confer, Savaria Harris and Jennifer De Camera served as attorneys embedded within JJHCS to provide legal advice to the relevant business units. To the extent Ms. Harris and Ms. De Camera were "involved in revisions of the terms and conditions for Stelara and Tremfya," that involvement was in their role as attorneys providing legal advice to the relevant business units within JJHCS. As such, their communications are protected by the attorney-client privilege. *See Rhone-Poulenc Rorer*, 32 F.3d at 864; *Rowe v E.I. duPont de Nemours and Co.*, No. CIV. 06-1810-RMD-AMD, 2008 WL 4514092, at *5 (D.N.J. Sept. 30, 2008) (attorney-client privilege applies when attorneys are acting as lawyers "giving advice with respect to the legal implications of a proposed course of conduct").

14325913

Andrew Dunlap, Esq.
July 17, 2023
Page 4

In your June 29 letter, SaveOnSP also asked whether these attorneys "were involved in non-privileged business conversations." June 29, 2023 Ltr. from A. Dunlap to H. Sandick. We do not know of such communications. Nothing beyond speculation justifies the unusual step of the collection or production of documents from these attorneys.

## III.    Search Terms

JJHCS agrees to add the following search strings proposed by SaveOnSP in its June 23 letter, subject to SaveOnSP's agreement that this expansion and the additional search terms discussed will satisfy SaveOnSP's production obligations with respect to these Requests.

- "Care Path" AND "other offer*"

- "Care Path" AND (term* w/3 condition)

- "Care Path" AND T&C

- "Care Path" AND TNC

- CarePath AND "other offer*"

- CarePath AND (term* w/3 condition)

- CarePath AND T&C

- CarePath AND TNC

As explained in JJHCS's May 26 letter and again during our June 23 meet and confer, *none* of these search strings are likely to produce responsive materials. Nonetheless, in an effort to resolve the instant dispute, JJHCS will is prepared to employ these search terms and to make an additional production of non-privileged documents responsive to Requests 12 and 13. In addition, JJHCS encloses an updated hit count for the proposed search terms as Exhibit A to this letter.

JJHCS declines to add the remaining search strings based on the unduly burdensome number of additional unique documents hitting on these terms for the April 1, 2016 to July 1, 2022 time period, as summarized in Exhibit A. The ninety search strings requested by SaveOnSP would require JJHCS to review a total of 133,138 unique documents including families. This is unwarranted given the unlikelihood of identifying any responsive documents that will bear on the issue of the meaning of the CarePath terms and conditions. We therefore decline to agree to these additional search terms.

14325913

Andrew Dunlap, Esq.
July 17, 2023
Page 5


**IV.     Total Documents Reviewed and Produced**

       Finally, at no point during our meet and confer did JJHCS "agree[] to provide SaveOnSP with the number of documents that JJHCS has reviewed to date."  *See* June 29, 2023 Ltr. from A. Dunlap to H. Sandick.  This is a misstatement, as we only agreed to consider this request.  Having considered the request, JJHCS declines to do provide this information.  As Judge Waldor has made clear as recently as our June 27, 2023 conference, the total number of documents each party has reviewed or produced is "doesn't matter" to her assessment of the merits of discovery disputes.  June 27, 2023 Tr. 96:17-19.


                                                 Very truly yours,


                                                 Harry Sandick

14325913

**Exhibit A: Hit Count for Requested Search Terms**

| Search Term Proposed by SaveOnSP | Additional Documents Hitting on Term[5] | Additional Documents Hitting on Term + Families |
|---|---|---|
| "Benefits Investigation*" AND Balversa | 571 | 2,618 |
| "Benefits Investigation*" AND Darzelex | 20 | 50 |
| "Benefits Investigation*" AND Erleada | 2,070 | 8,401 |
| "Benefits Investigation*" AND Faspro | 888 | 4,627 |
| "Benefits Investigation*" AND Imbruvica | 402 | 2,010 |
| "Benefits Investigation*" AND Opsumit | 729 | 3,151 |
| "Benefits Investigation*" AND Precobix | 1 | 2 |
| "Benefits Investigation*" AND Remicade | 5,483 | 24,566 |
| "Benefits Investigation*" AND Rybrevant | 536 | 2,807 |
| "Benefits Investigation*" AND Simponi | 6,376 | 26,504 |
| "Benefits Investigation*" AND Stelara | 9,408 | 36,503 |
| "Benefits Investigation*" AND Symtuza | 1,171 | 3,288 |
| "Benefits Investigation*" AND Tracleer | 332 | 1,750 |
| "Benefits Investigation*" AND Tremfya | 6,472 | 22,469 |
| "Benefits Investigation*" AND Uptravi | 717 | 3,131 |
| "Benefits Investigation*" AND Ventavis | 278 | 1,481 |
| "Benefits Investigation*" AND Zytiga | 2,601 | 13,397 |
| "Care Path" AND "other offer*" | 261 | 1,603 |
| "Care Path" AND (term* w/3 condition) | 40 | 133 |
| "Care Path" AND T&C | 18 | 56 |

---

[5] These hit counts exclude documents that have already been reviewed in the course of this litigation.

| Search Term Proposed by SaveOnSP | Additional Documents Hitting on Term[5] | Additional Documents Hitting on Term + Families |
|---|---|---|
| "Care Path" AND TNC | 9 | 23 |
| "free trial*" AND "Care Path" | 410 | 2,237 |
| "free trial*" AND "health plan*" | 1,042 | 4,620 |
| "free trial*" AND "Savings Program" | 3,866 | 10,835 |
| "free trial*" AND accumulat* | 321 | 1,144 |
| "free trial*" AND CarePath | 4,995 | 14,673 |
| "free trial*" AND CP | 2,667 | 5,330 |
| "free trial*" AND insur* | 5,030 | 18,170 |
| "free trial*" AND Jannsen | 156 | 515 |
| "free trial*" AND Jansen | 193 | 539 |
| "free trial*" AND Janssen | 6,512 | 21,339 |
| "free trial*" AND JCP | 2,457 | 7,246 |
| "free trial*" AND maximiz* | 504 | 2,527 |
| "free trial*" AND program | 6,769 | 21,770 |
| "prescription savings card*" AND "Care Path" | 163 | 1,168 |
| "prescription savings card*" AND "health plan*" | 481 | 1,541 |
| "prescription savings card*" AND "Savings Program" | 2,426 | 5,424 |
| "prescription savings card*" AND accumulat* | 48 | 99 |
| "prescription savings card*" AND CarePath | 2,656 | 5,879 |

| Search Term Proposed by SaveOnSP | Additional Documents Hitting on Term[5] | Additional Documents Hitting on Term + Families |
|---|---|---|
| "prescription savings card*" AND CP | 1,744 | 3,259 |
| "prescription savings card*" AND insur* | 2,762 | 6,335 |
| "prescription savings card*" AND Jannsen | 3 | 16 |
| "prescription savings card*" AND Jansen | 28 | 60 |
| "prescription savings card*" AND Janssen | 2,802 | 6,318 |
| "prescription savings card*" AND JCP | 1,329 | 3,162 |
| "prescription savings card*" AND maximiz* | 98 | 382 |
| "prescription savings card*" AND program | 2,829 | 6,379 |
| "Savings Program" AND "other offer*" | 2,843 | 7,222 |
| "Savings Program" AND (term* w/3 condition) | 201 | 511 |
| "Savings Program" AND T&C | 900 | 1,559 |
| "Savings Program" AND TNC | 41 | 94 |
| CarePath AND "other offer*" | 3,357 | 8,627 |
| CarePath AND (term* w/3 condition) | 218 | 603 |
| CarePath AND T&C | 991 | 1,943 |
| CarePath AND TNC | 60 | 204 |
| coupon* AND "Care Path" | 4,066 | 5,877 |
| coupon* AND "health plan*" | 2,249 | 13,779 |
| coupon* AND "Savings Program" | 9,720 | 23,597 |

| Search Term Proposed by SaveOnSP | Additional Documents Hitting on Term[5] | Additional Documents Hitting on Term + Families |
|---|---|---|
| coupon* AND accumulat* | 1,879 | 7,051 |
| coupon* AND CarePath | 11,079 | 27,666 |
| coupon* AND CP | 7,193 | 12,381 |
| coupon* AND insur* | 11,944 | 38,797 |
| coupon* AND Jannsen | 185 | 1,540 |
| coupon* AND Jansen | 602 | 3,463 |
| coupon* AND Janssen | 16,695 | 46,710 |
| coupon* AND JCP | 6,864 | 13,217 |
| coupon* AND maximiz* | 4,189 | 11,808 |
| coupon* AND program | 18,595 | 50,405 |
| CP AND "other offer*" | 2,027 | 4,080 |
| CP AND (term* w/3 condition) | 200 | 831 |
| CP AND T&C | 468 | 1,072 |
| CP AND TNC | 66 | 143 |
| discount* AND accumulat* | 2,244 | 9,464 |
| discount* AND maximiz* | 4,780 | 22,216 |
| Jannsen AND "other offer*" | 4 | 19 |
| Jannsen AND (term* w/3 condition) | 64 | 345 |
| Jannsen AND T&C | 14 | 62 |
| Jannsen AND TNC | 16 | 34 |
| Jansen AND "other offer*" | 55 | 741 |
| Jansen AND (term* w/3 condition) | 60 | 353 |

14325913

| Search Term Proposed by SaveOnSP | Additional Documents Hitting on Term[5] | Additional Documents Hitting on Term + Families |
|---|---|---|
| Jansen AND T&C | 29 | 106 |
| Jansen AND TNC | 28 | 66 |
| Janssen AND "other offer*" | 4,018 | 11,394 |
| Janssen AND (term* w/3 condition) | 765 | 2,591 |
| Janssen AND T&C | 1,757 | 3,663 |
| Janssen AND TNC | 292 | 3,241 |
| JCP AND "other offer*" | 1,627 | 4,677 |
| JCP AND (term* w/3 condition) | 234 | 602 |
| JCP AND T&C | 711 | 1,386 |
| JCP AND TNC | 51 | 127 |

14325913

# Exhibit 7

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

selendy
gay
elsberg

Andrew Dunlap
Partner
212 390 9069
adunlap@selendygay.com

April 24, 2023                    CONFIDENTIAL

**Via E-mail**

Harry Sandick
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
hsandick@pbwt.com

**Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC*** (Case No. 2:22-cv-02632-JMV-CLW)

Dear Harry,

We write in response to your April 11, 2023 letter regarding SaveOnSP's
custodians, search terms, and ongoing document productions.

## I.    Organizational Charts

JJHCS asks that we provide an organizational chart for the period from
2015 through 2017. Apr. 11, 2023 Ltr. at 1. SaveOnSP produced that information
under a separate cover on April 20, 2023.

## II.    Custodians

SaveOnSP is currently reviewing the documents of 22 custodians—five of
whom were added at the request of JJHCS.

JJHCS requests, again, that we add Jennifer Menz and Mariah DuRant as
custodians. Apr. 11, 2023 Ltr. at 2. While we continue to believe that they are un-
likely to have unique, relevant documents, we will add them as custodians.

JJHCS requests that SaveOnSP identify and add an alternative custodian or
custodians to Gary Meyn whose files will contain similar documents throughout
the relevant time period. Apr. 11, 2023 Ltr. at 2. We understand that Gary Meyn
would only have emailed within SaveOnSP and so would not emailed with clients
or patients. We understand that the custodians we have already agreed to should
capture Gary Meyn's relevant emails, if any.

Harry Sandick
April 24, 2023

## III.  Search Terms

*First*, as you request, we have removed Valchlor as a search term, and have added darunavir, cobicistat, emitricitabine, and tenofovir alafenamide as search terms.

*Second*, JJHCS asks that SaveOnSP add the following search term:

(ESI OR "Express Scripts" OR Evernorth) W/15 (fee* OR ((master W/2 agreement) OR assistance OR "copay card" OR "co-pay card" OR "savings card" OR enroll* OR accumulat* OR maximiz* OR @express-scripts.com)).

We will agree to add the following search term:

(ESI OR "Express Scripts" OR Evernorth) W/15 (fees OR assistance OR "savings card" OR "copay card" OR "co-pay card" OR enroll* OR accumulat* OR maximiz*).

We will not agree to add the following search term:

(ESI OR "Express Scripts" OR Evernorth) W/15 @express-scripts.com.

That term hits on 152,072 unique documents and would include almost every email ever received from ESI. These documents would be unlikely to contain unique relevant information, would be unduly burdensome to review, and would be disproportionate to the needs of the case.

*Third*, JJHCS also asks that SaveOnSP add the following search term to capture documents responsive to JJHCS's RFP No. 34: (exhaust* OR "us* up" OR drain* OR complain* OR "r*n out") W/15 (co-pay OR copay* OR support* or cover*). JJHCS says that it seeks this additional term to capture documents responsive to Request No. 34. Request No. 34 seeks "[a]ll documents and communications concerning SaveOnSP's coverage for drugs after the exhaustion of available manufacturer's copay assistance." This term is unlikely to disclose unique, relevant documents. SaveOnSP is already using multiple permutations of CarePath, multiple permutations of Janssen and J&J, and the names of all Janssen Drugs and their chemical analogs, which would capture any relevant complaints. Nevertheless, SaveOnSP agrees to add the following term: (exhaust* OR drain* OR complain*) W/15 (co-pay OR copay* OR support* or cover*). SaveOnSP declines to add (us* up" OR "r*n out") W/15 (co-pay OR copay* OR support* or cover*) because that term is unlikely to identify unique, relevant documents not identified by other terms and it would add an additional 33,042 unique documents for review, which would be unduly burdensome to review and would be disproportionate to the needs of the case.

*Fourth*, JJHCS asks that SaveOnSP add four additional search terms to capture certain categories of documents which SaveOnSP recently agreed to produce:

- (Accredo OR "accredo.com") W/30 (agr* OR contract OR memor* OR fee* OR shar* OR relat*)

- (copay* OR co-pay* OR coins* OR co-ins* OR "cost share") W/15 (zero OR "no cost" OR "free of charge")

- (copay* OR co-pay* OR coins* OR co-ins* OR "out of pocket" OR OOP OR bucket* OR "ingredient cost") W/30 (infla* OR increase)

- (copay* OR co-pay* OR coins* OR co-ins* OR "cost share" OR "specialty med*" OR "specialty drug*" OR biolog* OR infus*) W/15 (transfer* OR reduc* OR saving*).

SaveOnSP will add these search terms.

SaveOnSP has now agreed to use search terms, custodians, and time frame that identify over 560,000 custodial documents and families for review.

## IV. Call Center Recordings and Transcripts

JJHCS asks that SaveOnSP "produce, on an expedited basis, a random sample of at least [ ] 250 Salesforce records relating to Janssen drugs so that [JJHCS] can better understand the information contained therein and thereby evaluate whether SaveOnSP's proposal is acceptable." While we will not commit to producing a scientifically random sample, we will expedite production of sufficient Salesforce records for JJHCS to analyze the information they contain.

JJHCS asks if SaveOnSP intends to withhold portions of the Salesforce records. SaveOnSP intends to produce all Salesforce data relating to call center calls concerning Janssen drugs, including the patient's name, cardholder ID, plan client name, name of the Janssen drug prescribed to the patient, whether the patient is enrolled in copay assistance, the date of enrollment in a copay assistance program, dates of any status changes, the date of the call, the name of the SaveOnSP representative who took the call, a "description" field containing any comments entered by the SaveOnSP representative during the call, the reason for the call, the call type (e.g., inbound or outbound), and how the call was resolved (e.g., if a message was left for an outgoing call).

## V. Agreements with ESI

JJHCS asks SaveOnSP to produce all agreements between it and ESI by April 25, 2023. SaveOnSP has already prioritized production of its agreements with ESI and related entities. *See, e.g.,* SOSP_0000061-0000078 (produced on November 23, 2023); SOSP_0000098-0000113 (produced on February 22, 2023). SaveOnSP agreed to prioritize the production of all agreements between SaveOnSP and Express Scripts or related entities. SaveOnSP will continue to prioritize production of those agreements and intends to complete producing them within the next month.

3

Harry Sandick
April 24, 2023

## VI.     Vendors and Consultants

JJHCS asks additional questions regarding SaveOnSP's vendors and consultants. SaveOnSP provides the following additional responses, which reflect our best understanding based on a reasonable investigation:



## VII.     Standing Meetings with ESI

JJHCS asks that SaveOnSP make a reasonable and diligent effort to identify and produce materials related to its Weekly Touch Base meetings with ESI and bi-weekly calls among SaveOnSp, ESI, and Accredo. ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ SaveOnSP will not engage in additional efforts to search for material that is highly likely to be irrelevant.

## VIII.     Training Materials

JJHCS asks SaveOnSP to confirm that it "will not withhold any training materials responsive to this request, including but not limited to any training materials and scripts used by call center employees concerning communications with patients about SaveOnSP or about CarePath." SaveOnSP will produce all such documents.

We reserve all rights and are available to meet and confer.

Best,

/s/ Andrew Dunlap

Andrew R. Dunlap
Partner

4

# Exhibit 8

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Meredith Nelson
Associate
212.390.9069
mnelson@selendygay.com

May 3, 2024

**Via E-mail**

Katherine Brisson
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
kbrisson@pbwt.com

**Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Katherine,

We write in response to your April 12, 2024 letter regarding SaveOn's pro-
duction of Chatter messages. Your assertions that this production is deficient are
inaccurate.

*First*, you cite several emails from SaveOn's recent productions that it
claims reflect unproduced Chatter messages and ask why those messages were not
produced. In fact, the Daily Digests that J&J cites—SOSP_1155568,
SOSP_1160832, SOSP_1168300, and SOSP_1194649—do not reflect Chatter mes-
sages; ███████████████████████████████████████████████████████
████. SaveOn has produced relevant information about ████████████████
███████████████████████████████████ referenced in SOSP_1194649 are re-
flected in the spreadsheet produced as SOSP_0790458. You also ask us to confirm
that SaveOn will produce surrounding same-day Chatter message for all respon-
sive messages and to confirm the date by which it will do so. As of today, SaveOn
has finished producing responsive, non-privileged Chatter messages and same-day
messages.[1]

---

[1]While SaveOn previously produced all responsive messages and almost all
surrounding same-day non-responsive messages, it inadvertently did not produce
a handful of same-day non-responsive messages. SaveOn produces them as a
replacement version of SOSP_1320401 today.

Katherine Brisson
May 3, 2024

*Second*, you assert that "Chatter appears to have been a feature of daily usage" at SaveOn, citing three SaveOn training documents ████████████ ██████████ SOSP_1150330; SOSP_1150335; SOSP_1150320. In fact, we have investigated and found that Chatter was not frequently used after June 2021. Consistent with that investigation, we found that SaveOn employees sent a total of only 752 Chatter messages since June 2021. We reviewed those messages and produced any that are responsive and not privileged.

*Finally*, you state that there are relevant communications in the SaveOnSP MSR Communication group after June 2021, citing five Daily Digests— SOSP_0710007, SOSP_0750379, SOSP_0771248, SOSP_0778536, SOSP_1160690—and ask SaveOn to confirm that it has searched for and will produce all responsive Chatter messages in its next production. We have collected all Chatter messages from after June 2021 and reviewed and produced all responsive non-privileged messages that hit on SaveOn's search terms.

We reserve all rights.

Best,

/s/ Meredith Nelson

Meredith Nelson
Associate

---