# EXHIBIT B

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

August 26, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

Re: *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
**No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

Save On SP, LLC ("Save On") moves to compel Johnson & Johnson Health Care Systems, Inc. (with its affiliates, "J&J") to add Joseph Incelli and Norhaan (Nora) Khalil as custodians and to run a set of tailored search terms over their files. Each performed significant work on J&J's CAP program.

## I. Joseph Incelli

Incelli is likely to have unique, relevant documents regarding the CAP program. SaveOn requested documents about the CAP program in RFP Nos. 33, 41, 49, 58, 59, and 64. *See* Ex. 1 at 30, 36, 48, 68, 69, 82 (J&J's Compiled Responses and Objections to SaveOn's Requests for Production). J&J has already agreed, or been ordered, to produce discovery about the CAP program

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                    Page 2

in response to those RFPs. *See* Dkt. 307 at 10; Dkt. 305 at 2; Dkt. 192 at 24-26. In over six weeks

of negotiations, J&J did not dispute Incelli's relevance.[1] *See* Ex. 4 (Aug. 16, 2024 Email from K.

Cryan to J. Long).

### A.     Incelli Likely Possesses Relevant, Non-Duplicative Documents

Incelli works on J&J's finance team. *See* Ex. 5 (JJHCS_00001173)



Before J&J launched the CAP program,

---

[1] J&J said that it would be willing to add Incelli as a custodian, subject to agreement on search terms, if SaveOn would add Leslie Kaufman as a "full" custodian, running *all* search terms over her files, while J&J ran limited terms over Incelli's files. *See* Ex. 2 (July 18, 2024 Email from J. Long to E. Snow). SaveOn declined this lopsided offer. *See* Ex. 3 (Aug. 15, 2024 Email from K. Cryan to B. Robinson).

[2] Your Honor and Judge Waldor recognized the relevance of the CAP program. *See* Dkt. 192 at 24-26. As part of the CAP program starting in 2022, J&J first took steps to enforce its terms and conditions against patients on SaveOn-advised plans and mitigate its damages—including through attempts to identify patients on SaveOn-advised plans. *See id.* at 25 (CAP program summary by Judge Waldor). This is relevant to the meaning of the terms and conditions and SaveOn's mitigation defense.

Hon. Freda L. Wolfson                                                           Page 3

After the CAP program officially launched in January 2022, Incelli worked on at least three

separate CAP-related projects that show he likely has relevant, non-duplicative documents.

███████████████████████████████████████████████████████████

███████████████████████ This work is relevant to SaveOn's mitigation defense and calcu-

lation of damages, which requires accurate financial modeling. *See* Dkt. 192 at 14 (finding docu-

ments relevant where they support SaveOn's mitigation defense).████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████ SaveOn is entitled to such doc-

uments showing how J&J measured the success of its mitigation strategies.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

_____

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

Hon. Freda L. Wolfson                                                                                    Page 4

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████ These documents are also relevant to SaveOn's

mitigation defense.

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████

───────────────────────

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████ It is also relevant to SaveOn's unclean hands defense, ██████████ involved
knowingly deceptive conduct by J&J.

4

Hon. Freda L. Wolfson                                                      Page 5



**B.     Search Terms for Incelli**

SaveOn proposes a narrow set of search terms for J&J to run over Incelli's files, tailored to his work on the CAP program and on any similar efforts. SaveOn asks that J&J run these for the full relevant time period from April 1, 2016 to November 7, 2023:

• The search terms applicable to all other CAP custodians, *see* Appendix 1.



SaveOn sent similar proposed search terms to J&J and asked that it provide hit counts if it objected on burden grounds. *See* Ex. 25 at 6 (June 28, 2024 Ltr.). J&J refused to do so, *see* Ex. 26

at -2 (July 25, 2024 Ltr. from B. Robinson to M. Nelson), resulting in an "[u]nsubstantiated claim[]

of burden and expense" that is "insufficient to withhold otherwise relevant discovery." Dkt. 305

at 5 (*quoting Taro Pharm. v. Lupin Ltd*., 2019 U.S. Dist. LEXIS 41915, at *4 (D.N.J. Mar. 12,

2019)).

## II.    Norhaan (Nora) Khalil

Khalil is also likely to have unique, relevant documents regarding the CAP program. Her

documents are responsive to SaveOn's RFP Nos. 33, 41, 49, 58, and 59 because they concern two

studies ███████████████████████████████. Ex. 1 at 30, 36, 48, 68, 69 (J&J's

Compiled Responses and Objections to SaveOn's Requests for Production). They are also respon-

sive to RFP No. 8, *id*. at 11, because the studies refer to SaveOn, to RFP No. 42, *id*. at 37, because

they relate to J&J's understanding of accumulators and maximizers, and to RFP No. 75, *id*. at 91,

because they expressly discuss this litigation. ████████████████████████████

██████████████████████ *id*. at 19, which seeks documents and communications

related to J&J's allegations of patient harm. J&J has not disputed Khalil's relevance. *See* Ex. 27

at 6-7 (Aug. 13, 2024 Ltr. from I. Eppler to E. Snow).

### A.    Khalil Likely Possesses Relevant, Non-Duplicative Documents

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████ In that capacity, Khalil served as the point person for two studies that J&J commis-

sioned ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Hon. Freda L. Wolfson                                                    Page 7



This is relevant to—and directly contradicts—J&J's allegations that SaveOn causes patient stress and confusion. *See* Dkt. 1 ¶ 114.

This is relevant to J&J's understanding of its T&Cs, which it has said are

---

[4] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ J&J recently agreed to produce the final version of this study. *See* Ex. 27 at 6-7 (Aug. 13, 2024 Ltr.).

Hon. Freda L. Wolfson                                                                    Page 8

similar to other terms and conditions used in the industry, *see* Dkt. 146 at 18-19 (comparing to

AstraZeneca, Novartis, Bristol Meyers Squibb and Pfizer), because it could show that J&J knew

that no other manufacturers interpreted similar terms and conditions to exclude accumulators, max-

imizers, or SaveOn. ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████ This is relevant to—and contradicts—J&J's assertions that SaveOn and its

clients somehow violate the ACA. *See* Dkt. 1 ¶ 59.

      As point person for both studies, Khalil has unique documents related to their development.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

Hon. Freda L. Wolfson                                                    Page 9

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████

### B.     Search Terms for Khalil

SaveOn proposes a narrow set of search terms for J&J to run over Khalil's files, tailored to her work on the CAP program and on any similar efforts. SaveOn asks that J&J run these terms for the period that she worked at J&J, from June 1, 2021 through July 31, 2023.[5]

• The search terms applicable to all other CAP custodians, *see* Appendix 1.



SaveOn sent similar proposed terms to J&J and asked it to provide hit counts if it objected on burden, *see* Ex. 25 at 6 (June 28, 2024 Ltr.), but J&J refused to do so, *see* Ex. 27 at 7, n. 3 (Aug. 13, 2024 Ltr.); *see also* Ex. 4 (Aug. 16, 2024 Email from K. Cryan to J. Long). J&J thus failed to substantiate any burden claim. *See* Dkt. 307 at 5.

---

[5] J&J represented that Khalil worked at J&J only during this timeframe. See Ex. 27 at 6 (Aug. 13, 2024 Ltr.). SaveOn reserves the right to request additional time if additional discovery reveals that Khalil performed work for J&J before or after this timeframe.

█

Hon. Freda L. Wolfson                                                          Page 10

***

We appreciate Your Honor's attention to this matter.

Respectfully submitted,


/s/ *E. Evans Wohlforth*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com


Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

Hon. Freda L. Wolfson                                                                      Page 11

## **Appendix 1**

*Search terms applicable to all CAP custodians*

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR accumulat* OR maximiz*)

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*)

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- "Save On" (*case sensitive*)

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- "other offer" W/5 (accumulat* OR maximiz*)

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

- ("essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*) W/50 ("CAPa OR CAPm" OR "adjustment program" OR accumulat* OR maximiz*)

# Exhibit 1

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza Newark,
New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for Plaintiff Johnson & Johnson Health Care
Systems Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JMV) (CLW) <br><br> **PLAINTFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** |

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the

General Objections below into its specific objections to each Request, whether or not each such

General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing. It reserves the right to

supplement, amend, modify, or correct its responses under Rule 26(e) should it discover

additional information or grounds for objections at any time prior to the conclusion of this

Action. The following responses and objections are based upon information known at this time.

1.    JJHCS objects to the Requests to the extent that they seek documents or

information protected from disclosure by a privilege including, without limitation, the First

Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense

privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules

of the Court, and relevant case law. The inadvertent production by JJHCS of information,

documents, materials, or things covered by any privilege or doctrine shall not constitute a

waiver of any applicable privilege or doctrine, including but not limited to, objections on the

basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or

admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.    JJHCS objects to the Requests to the extent that they seek documents or

information that are not relevant to a claim or defense or to the subject matter of this litigation.

Any response JJHCS makes to any Request shall not be deemed an admission that the response,

information, document, or thing produced is relevant to a claim or defense or to the subject

matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence,

is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

2

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.      JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.     JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.     JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.     JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

13.     JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## **OBJECTIONS TO DEFINITIONS**

1.      JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.

3

2.      JJHCS objects to the definition of the term "Janssen Drug" as irrelevant to the extent it purports to include drugs that are not covered by CarePath.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any Specialty Drug manufactured or sold by Janssen from any time."

3.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to include attorneys and accountants who may be outside of JJHCS's possession, custody, and control.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or] representatives" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and Janssen Research & Development LLC.

4.      JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and as irrelevant to the extent it purports to include entities other than those responsible for administering CarePath during the relevant Time Period.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to

4

act on behalf" of those entities.  JJHCS further objects on the ground that the phrase

"administer, in whole or in part, CarePath" is vague and ambiguous.  JJHCS further objects to

the extent the term is used to seek documents and communications in the possession of entities

other than JJHCS.

5.        JJHCS objects to the definition of the term "Lash Group" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of The Lash Group, Inc."  JJHCS further objects to the extent the term is used to seek

documents and communications in the possession of entities other than JJHCS.

6.        JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of TrialCard Inc."  JJHCS further objects to the extent the term is used to seek documents and

communications in the possession of entities other than JJHCS.

## OBJECTIONS TO THE TIME PERIOD FOR SPECIFIC REQUESTS

1.        JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome,

and not relevant to the subject matter of this Action to the extent they call for documents from

before January 1, 2017.  Unless otherwise noted, JJHCS will only produce documents from

January 1, 2017 through the July 1, 2022 (the "Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

**Request No. 1**

From January 1, 2009 through the present, Documents sufficient to show JJHCS's organizational structure, including organizational charts.

**Response to Request No. 1**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show the organizational structure of the JJHCS groups responsible for the administration of CarePath for the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 2**

From January 1, 2009 through the present, Documents sufficient to show Janssen's organizational structure, including organizational charts.

**Response to Request No. 2**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 3**

From January 1, 2009 through the present, Documents sufficient to show the organizational structure of each JJHCS Hub Entity.

**Response to Request No. 3**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 4**

From January 1, 2009 through the present, Documents sufficient to show the organizational structure of any group or division within JJHCS, Janssen, or any JJHCS Hub Entity involved in developing, managing, marketing, or administering CarePath or any other copay assistance program offered for Janssen Drugs, and to identify their employees.

**Response to Request No. 4**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

7

extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other

than JJHCS.  JJHCS further objects to this Request on the ground that the phrase "any other

copay assistance program offered for Janssen Drugs" is vague and ambiguous.  JJHCS further

objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in

JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to show the organizational structure of the JJHCS groups responsible for

the administration of CarePath for the relevant Time Period, to the extent such documents exist

and can be located after a reasonable search.  Otherwise, JJHCS will not search for or produce

documents responsive to this Request.

**Request No. 5**

From January 1, 2009 through the present, Documents sufficient to show the
organizational structure of JJHCS's Health Economics, Access, and Outcome Groups and to
identify employees working in those groups.

**Response to Request No. 5**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the

JJHCS groups responsible for the administration of CarePath.  JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents outside of the relevant Time Period.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to show the organizational structure of the JJHCS groups responsible for

the administration of CarePath for the relevant Time Period, to the extent such documents exist

and can be located after a reasonable search.  Otherwise, JJHCS will not search for or produce

documents responsive to this Request.

**Request No. 6**

From January 1, 2009 through the present, Documents sufficient to show the organizational structure of the drug product team for each Janssen Drug, and to identify employees working on those teams.

**Response to Request No. 6**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the

JJHCS groups responsible for the administration of CarePath.  JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other

than JJHCS.  JJHCS further objects to this Request on the ground that the phrase "drug product

team" is vague and ambiguous.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 7**

From January 1, 2009 through the present, documents sufficient to identify all natural persons with decisionmaking authority over the sale or marketing of Janssen Drugs.

**Response to Request No. 7**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the

JJHCS groups responsible for the administration of CarePath.  JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 8**

All Documents and Communications with or regarding SaveOnSP.

**Response to Request No. 8**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents related to any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period, to the extent such documents and communications exist and can be located after a reasonable search. However, notwithstanding the foregoing, JJHCS will not produce any documents or communications responsive to Request for Production No. 21, which seeks

10

documents that are irrelevant to any claim or defense in this Action.  JJHCS will not otherwise

search for or produce documents and communications responsive to this Request.

**Request No. 9**

All Communications by JJHCS or Janssen with any Patient regarding SaveOnSP,
including any Documents regarding those Communications.

**Response to Request No. 9**

In addition to the foregoing general objections, JJHCS objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of

entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

**Request No. 10**

All Documents and Communications regarding any presentation, document, or in-
formation regarding SaveOnSP referenced in the Complaint, including the "SaveOnSP IPBC
Video" and the materials referenced in Complaint ¶¶ 82-88.

**Response to Request No. 10**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks documents related to any

advocacy to or communication with any governmental or regulatory body regarding SaveOnSP.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks "all" documents and communications regarding a

11

broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

**Request No. 11**

From January 1, 2009 through the present, all Documents and Communications regarding
the development, management, and marketing of CarePath or any other copay assistance program
offered for Janssen Drugs, including Documents and Communications regarding JJHCS's
allegations in Complaint ¶¶ 6-7, 36-49.

**Response to Request No. 11**

In addition to the foregoing general objections, JJHCS objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of

the case to the extent it seeks documents and communications outside of the relevant Time

Period.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.  JJHCS further objects to this

Request on the ground that the phrase "any other copay assistance program offered for Janssen

Drugs" is vague and ambiguous.  JJHCS further objects to this Request as irrelevant to any claim

or defense in this Action to the extent it seeks documents unrelated to CarePath.

JJHCS will not search for or produce documents or communications responsive to this

Request.  JJHCS is, however, willing to meet and confer to determine if this Request can be

appropriately narrowed.

## Request No. 12

From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) JJHCS's decision to revise any of its CarePath terms and conditions for any Janssen Drug; and (d) JJHCS's understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

## Response to Request No. 12

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the final CarePath terms and conditions at issue. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it calls for JJHCS's understanding of any particular term, as such a contention interrogatory would be premature at this point in the litigation pursuant to Local Rule 33.1(d).

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show all final versions of CarePath's terms and conditions for each Janssen Drug during the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

## Request No. 13

From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen

Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

**Response to Request No. 13**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the final CarePath terms and conditions at issue. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show all final versions of CarePath's terms and conditions for each Janssen Drug during the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 14**

From January 1, 2015 through the present, all Documents and Communications regarding JJHCS's or any JJHCS Hub Entity's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

**Response to Request No. 14**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for views on a legal

question.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications in its possession regarding SaveOnSP's designation of specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its regulations during the relevant Time Period, to the extent such documents and communications exist and can be located after a reasonable search.  However, notwithstanding the foregoing, JJHCS will not produce any documents responsive to Request for Production No. 21, which is irrelevant to any claim or defense in this Action.  JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

**Request No. 15**

All Documents and Communications regarding SaveOnSP's communications with Patients regarding CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 60-67, 109.

**Response to Request No. 15**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

15

objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 16**

All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 72.

**Response to Request No. 16**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request on the ground that the phrase "SaveOnSP's provision of services to qualified high deductible or health savings account plans" is vague and ambiguous. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 17**.

All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

**Response to Request No. 17**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks information about JJHCS's

payment of funds to patients enrolled in qualified high deductible or health savings account plans

as opposed to SaveOnSP's exploitation of a purported legal gray area with respect to those plans.

JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the

needs of the case to the extent it seeks "all" documents and communications regarding a broad

subject matter.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents and communications responsive to this

Request.

**Request No. 18**

All Documents and Communications regarding any allegedly misleading or confusing
communications between SaveOnSP and Patients, including Documents and Communications
regarding JJHCS's allegations in Complaint ¶¶ 13, 75-77, 85-88.

**Response to Request No. 18**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks documents related to any

advocacy to or communication with any governmental or regulatory body regarding SaveOnSP.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks "all" documents and communications regarding a

broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.  JJHCS further objects to this

Request to the extent it seeks "misleading or confusing communications," as those terms are

vague and ambiguous.

17

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 19**

All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 19**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 20**

All Documents and Communications regarding any publicly distributed material (including, for example, articles, op-eds, white papers, and online postings) regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services, including Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect involvement with such material and JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect funding of the authors, publishers, or distributors of such material.

**Response to Request No. 20**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information about JJHCS's or any other entity's relationship or connection, if any, to materials about SaveOnSP's conduct,

as opposed to information about SaveOnSP's conduct itself. JJHCS further objects to this

Request as irrelevant to any claim or defense in this Action to the extent it seeks information

relating to Copay Accumulator Services or Copay Maximizer Services other than SaveOnSP's.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks "all" documents and communications regarding a

broad subject matter. JJHCS further objects on the ground that the phrases "direct or indirect

involvement" and "direct or indirect funding" are vague and ambiguous. JJHCS further objects

to this Request to the extent it seeks documents and communications in the possession of entities

other than JJHCS or that are publicly available and therefore equally available to SaveOnSP.

JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the

reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

**Request No. 21**

All Documents and Communications regarding any advocacy to or communication with
any governmental or regulatory body regarding SaveOnSP, Copay Accumulator Services, or
Copay Maximizer Services.

**Response to Request No. 21**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks information about JJHCS's

advocacy to or communication with any governmental or regulatory body regarding SaveOnSP

as opposed to information about SaveOnSP's conduct itself. JJHCS further objects to this

Request as irrelevant to any claim or defense in this Action to the extent it seeks information

relating to Copay Accumulator Services or Copay Maximizer Services other than SaveOnSP's.

19

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 22**

All Documents and Communications regarding any alleged harm caused by SaveOnSP to any Patient by allegedly making their healthcare more expensive, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 22**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 23**

All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 23**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 24**

All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 24**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information about the financial viability of any Copay Assistance Program other than CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

21

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 25**

All Documents and Communications regarding any alleged harm caused by SaveOnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 110, 115.

**Response to Request No. 25**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request on the ground that the phrase "any alleged harm" is vague and ambiguous. For the purposes of its response, JJHCS shall interpret the phrase "any alleged harm" to mean the damages identified by JJHCS relating to the increased average amount of CarePath expenditures incurred for patients enrolled in the SaveOnSP Program.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications in its possession relating to the extent of the harm SaveOnSP has caused JJHCS during the relevant Time Period, including the extent to which SaveOnSP has caused JJHCS to pay more in copay assistance than it otherwise would have, to the extent such documents exist and can be located after a reasonable search. However, notwithstanding the foregoing, JJHCS will not produce any documents responsive to Request for Production No. 21, which is irrelevant to any claim or defense in this Action. JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

22

**Request No. 26**

All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

**Response to Request No. 26**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum" is vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 27**

All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

**Response to Request No. 27**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter and seeks "complete databases from which [] data was drawn." JJHCS further objects to this Request to

23

the extent it seeks documents and communications in the possession of entities other than

JJHCS. JJHCS further objects to this Request as duplicative of Request No. 25.

Subject to the foregoing objections, JJHCS will produce the data that formed the basis for

the allegations in Complaint ¶¶ 92-100. Otherwise, JJHCS will not search for or produce

documents and communications responsive to this Request.

## Request No. 28

From January 1, 2009 through the present, for each Janssen Drug for each year,
Documents sufficient to show:

    a.     all Patients receiving the Janssen Drug;

    b.     the number of fills of the Janssen Drug received by each such Patient;

    c.     the dosage of the Janssen Drug received by each such Patient for each fill;

    d.     the projected number of Patients, average number of fills, and average dosage for
the Janssen Drug;

    e.     the cost to manufacture the Janssen Drug;

    f.     the sales and marketing budget for the Janssen Drug;

    g.     the price of the Janssen Drug;

    h.     the revenue received by JJHCS from the Janssen Drug;

    i.     all Patients enrolled in the CarePath program for the Janssen Drug;

    j.     the dates on which each Patient was enrolled in CarePath;

    k.     the amounts of copay assistance funds that JJHCS offered to each Patient enrolled
in CarePath;

    l.     the Janssen Drugs for which each Patient enrolled in CarePath received copay
assistance;

    m.     all copay assistance payments that JJHCS made to or on behalf each Patient
enrolled in CarePath; and

**Response to Request No. 28**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP's misconduct, including information relating to Patient fills, the cost of manufacturing Janssen Drugs, the sales and marketing budgets for Janssen drugs, and pricing and revenue generated by Janssen Drugs.  JJHCS further objects to this Request on the ground that the phrases "the projected number of Patients, average number of fills, and average dosage for the Janssen Drug," "the cost to manufacture the Janssen Drug," and "the price of the Janssen Drug" are vague and ambiguous.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a variety of extremely broad subject matters.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS will produce Janssen Transparency Reports for the relevant Time Period.  Further, JJHCS is willing to meet and confer to discuss subparts (i) through (m).  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 29**

From January 1, 2009 through the present, for each Janssen Drug for each year, all Documents and Communications regarding:

    a.    JJHCS's determination of the amounts of copay assistance funds that JJHCS offered to Patients enrolled in CarePath, including the determination of the maximum program benefit per calendar year for the Janssen Drug;

b.      JJHCS's budget for CarePath, including the sales and marketing budget;

c.      JJHCS's actual and projected annual costs for CarePath;

d.      JJHCS's use of or accounting for unused CarePath funds;

e.      the impact of the Affordable Care Act on JJHCS's CarePath budget or funding, including the impact of laws and regulations regarding out-of-pocket maximums;

f.      JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath;

g.      the impact of CarePath on Janssen's sales of any Janssen Drug;

h.      the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

i.      JJHCS's or Janssen's actual and projected return on investment for CarePath; and

j.      any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by SaveOnSP.

**<u>Response to Request No. 29</u>**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP's misconduct, including information relating to the sales and marketing budget for CarePath, JJHCS's uses of or accounting for unused CarePath funds, the impact of the Affordable Care Act or other laws and regulations on CarePath's budget or funding, JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath, the impact of CarePath on Janssen's sales of any Janssen Drug, the impact of CarePath on JJHCS's or Janssen's gross to net calculations, JJHCS's or Janssen's actual and projected return on investment for CarePath, and the adherence rates of Patients enrolled in CarePath to Janssen Drugs.  JJHCS further objects to this Request on the ground that the phrases "the projected number of Patients, average number of fills, and average dosage for the Janssen Drug," "JJHCS's or Janssen's gross to net calculations," and "JJHCS's or Janssen's actual and projected return on investment for CarePath" are vague and ambiguous.  JJHCS further objects to this

26

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks "all" documents and communications regarding a variety of broad subject matters.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks documents and communications outside of the relevant

Time Period.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

       Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession for the relevant Time Period sufficient to show (1) how JJHCS determines the

amounts of copay assistance funds that JJHCS offers to Patients enrolled in CarePath,

(2) JJHCS's budget for copay assistance through CarePath, and (3) JJHCS's actual and projected

annual costs for CarePath, to the extent such documents exist and can be located after a

reasonable search.  Otherwise, JJHCS will not search for or produce documents responsive to

this Request.

**Request No. 30**

       From January 1, 2009 through the present, for each year for each Janssen Drug, all
Documents and Communications regarding the basis for Janssen's decision to raise or lower the
price of the Janssen Drug, including labor or manufacturing costs or the increase in efficacy of the
Janssen Drug.

**Response to Request No. 30**

       In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to

SaveOnSP's misconduct, including information related to the pricing of Janssen Drugs.  JJHCS

further objects to this Request on the ground that the phrases "the price of the Janssen Drug" and

"the increase in efficacy of the Janssen Drug" are vague and ambiguous.  JJHCS further objects

to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to

27

the extent it seeks "all" documents and communications regarding a broad subject matter.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks documents and communications outside of the relevant

Time Period.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents responsive to this Request.

### Request No. 31

All Documents and Communications regarding JJHCS's attempts to limit or eliminate the
amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based
on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs,
including Documents and Communications regarding JJHCS's attempts to limit or eliminate the
availability of CarePath copay assistance funds available to Patients enrolled in health plans
advised by SaveOnSP.

### Response to Request No. 31

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information beyond the

final CarePath terms and conditions at issue.  JJHCS further objects to this Request as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all"

documents and communications regarding a broad subject matter.  JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other

than JJHCS.

Subject to the foregoing objections, JJHCS will produce non-privileged documents and

communications in its possession relating to JJHCS's decision to limit or eliminate the amount of

copay assistance funds available to Patients using Stelara or Tremfya who are also enrolled in the

SaveOnSP Program, to the extent such documents and communications exist and can be located

28

after a reasonable search.  JJHCS will not otherwise search for or produce documents and
communications responsive to this Request.

**Request No. 32**

All Documents and Communications regarding any offer by JJHCS to provide to any
Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath
Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance
funds available to a Patient.

**Response to Request No. 32**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information beyond the

extent to which SaveOnSP has caused JJHCS to pay more in copay assistance than it otherwise

would have.  JJHCS further objects to this Request on the ground that the phrases "CarePath

funds greater than the amounts that JJHCS generally offers to CarePath Patients" and "to waive

any limitation on or elimination of the amount of CarePath copay assistance funds available" are

vague and ambiguous.  JJHCS further objects to this Request as overbroad, unduly burdensome,

and not proportional to the needs of the case to the extent it seeks "all" documents and

communications regarding a broad subject matter.  JJHCS further objects to this Request to the

extent it seeks documents and communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents and communications responsive to this

Request.

**Request No. 33**

All Documents and Communications regarding JJHCS's attempts to identify health plans
advised by SaveOnSP or Patients enrolled in such plans.

**Response to Request No. 33**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to

29

SaveOnSP's misconduct. JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter. JJHCS further objects to this Request to

the extent it seeks documents and communications in the possession of entities other than JJHCS

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

## Request No. 34

From any time, all Documents and Communications regarding JJHCS's or Janssen's
negotiations or agreements regarding the potential use of SaveOnSP's services, or the services of
any Copay Maximizer Service or Copay Accumulator Service, for JJHCS's Employee Health
Plans, including JJHCS's abandonment of those negotiations or agreements.

## Response to Request No. 34

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about other

"services of Copay Maximizer Service[s] or Copay Accumulator Service[s]" and unrelated to

SaveOnSP's misconduct. JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter. JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents and communications outside of the relevant Time Period. JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of

entities other than JJHCS. JJHCS further objects to this Request to the extent it seeks

information that is exempt from discovery and protected from disclosure by a privilege

including, without limitation, the attorney-client privilege, the work-product doctrine, the joint

30

defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local

Rules of the Court, and relevant case law.

JJHCS will not search for or produce documents and communications responsive to this

Request.

**Request No. 35**

Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coordinators.

**Response to Request No. 35**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about

JJHCS "Hub Entities" or "CarePath Care Coordinators" that are not implicated in this litigation.

JJHCS further objects to this Request to the extent it seeks documents and communications in

the possession of entities other than JJHCS.  JJHCS further objects to this Request to the extent it

uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to identify the entities responsible for administering CarePath during the

relevant Time Period, to the extent such documents exist and can be located after a reasonable

search.  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 36**

From January 1, 2009 through the present, Documents sufficient to show the economic
terms of JJHCS's retention of or agreements with any JJHCS Hub Entity or CarePath Care
Coordinator regarding CarePath, including any assessment of the fair market value of those
services.

**Response to Request No. 36**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about

JJHCS "Hub Entities" or "CarePath Care Coordinators" that are not implicated in this litigation.

JJHCS further objects to this Request on the ground that "any assessment of the fair market value

of those services" is irrelevant.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period.  JJHCS further objects to this Request to

the extent it seeks documents and communications in the possession of entities other than

JJHCS.  JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity"

for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this

Request to the extent it seeks information that is exempt from discovery and protected from

disclosure by a privilege including, without limitation, the attorney-client privilege, the work-

product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of

Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce agreements in its possession

between JJHCS and the entities responsible for administering CarePath during the relevant Time

Period, to the extent such documents exist and can be located after a reasonable search.

Otherwise, JJHCS will not search for or produce documents and communications responsive to

this Request.

**Request No. 37**

From January 1, 2009 through the present, documents sufficient to show the percentage
of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub
Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs.

**Response to Request No. 37**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to

SaveOnSP's misconduct, including information about JJHCS's advertising or marketing of

CarePath or Janssen Drugs. JJHCS further objects to this Request on the ground that the phrase "Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs" is vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents and communications responsive to this Request.

### Request No. 38

From January 1, 2009 through the present, all Documents and Communications received by JJHCS from any JJHCS Hub Entity or sent by JJHCS to any JJHCS Hub Entity regarding SaveOnSP or CarePath.

### Response to Request No. 38

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information about CarePath without relation to SaveOnSP. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent

33

it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 39**

All Documents and Communications received by JJHCS from any CarePath Care Coordinator regarding SaveOnSP.

**Response to Request No. 39**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 40**

All Communications by any JJHCS Hub Entity or CarePath Care Coordinator with any Patient regarding SaveOnSP, including any Documents regarding those Communications and talk tracks or scripts prepared for use during those Communications.

34

**Response to Request No. 40**

In addition to the foregoing general objections, JJHCS objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of

entities other than JJHCS.  JJHCS further objects to this Request to the extent it uses the term

"JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by a privilege including, without limitation, the attorney-client

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege,

the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

**Request No. 41**

From January 1, 2015 through the present, all Documents and Communications relating
to Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's
return on investment for copay assistance dollars.

**Response to Request No. 41**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about other

"Copay Accumulator Services and Copay Accumulator Services" and information unrelated to

SaveOnSP's misconduct.  JJHCS further objects to this Request on the ground that the phrase

"JJHCS's return on investment for copay assistance dollars" is vague and ambiguous.  JJHCS

further objects to this Request as overbroad, unduly burdensome, and not proportional to the

35

needs of the case to the extent it seeks "all" documents and communications regarding a broad

subject matter.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks documents and communications

outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks

documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

## Request No. 42

From January 1, 2015 through the present, all Documents and Communications relating
to JJHCS's or any JJHCS Hub Entity's understanding of the terms "copay accumulator" and
"copay maximizer."

## Response to Request No. 42

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to

SaveOnSP's misconduct.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter.  JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents and communications outside of the relevant Time Period.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of

entities other than JJHCS.  JJHCS further objects to this Request to the extent it uses the term

"JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by a privilege including, without limitation, the attorney-client

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications in JJHCS's possession during the relevant Time Period relating to JJHCS's understanding of whether the terms "copay accumulator" or "copay maximizer" apply to SaveOnSP. However, notwithstanding the foregoing, JJHCS will not produce any documents or communications responsive to Request for Production No. 21, which is irrelevant to any claim or defense in this Action. JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

## Request No. 43

All Documents and Communications concerning non-medical switching by participants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

## Response to Request No. 43

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information about any other "Copay Accumulator Service" or "Copay Maximizer Service" and information unrelated to SaveOnSP's misconduct. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

37

**Request No. 44**

To the extent not requested above, Documents and Communications of any JJHCS Hub Entity or CarePath Care Coordinator regarding the topics of all Requests listed above.

**Response to Request No. 44**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "regarding the topics of all Requests listed above" is vague and ambiguous. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 45**

JJHCS's, Janssen's, any JJHCS Hub Entity's, and any CarePath Care Coordinator's document retention policies.

**Response to Request No. 45**

In addition to the foregoing general objections, JJHCS objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

38

Subject to the foregoing objections, JJHCS will produce its document retention policies for the relevant Time Period. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 46**

Complete data dictionaries for any data that You produce.

**Response to Request No. 46**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "data dictionaries for any data that You produce" is vague and ambiguous. JJHCS further objects to this Request to the extent that it purports to require the creation of any document or record in a format not kept by JJHCS or seeks to impose production obligations that exceed those required by the Rules of Federal Procedure, the Local Rules of the Court, this Court's Orders, or with any applicable agreement among the parties.

JJHCS will not search for or produce documents or communications responsive to this Request. JJHCS is, however, willing to meet and confer to determine if this Request can be appropriately narrowed.

**Request No. 47**

From any time, all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP, including in response to subpoenas served in this Action.

**Response to Request No. 47**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP" is vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject

39

matter.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks documents and communications

outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks

information that is exempt from discovery and protected from disclosure by a privilege

including, without limitation, the attorney-client privilege, the work-product doctrine, the joint

defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local

Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce documents obtained via third-

party subpoenas it serves in this Action.  Otherwise, JJHCS will not search for or produce

documents responsive to this Request.

## Request No. 48

To the extent not requested above, from any time, all Documents and Communications
upon which you may rely in this Action.

## Response to Request No. 48

In addition to the foregoing general objections, JJHCS objects to this Request on the

ground that the phrase "all Documents and Communications upon which you may rely in this

Action" is vague and ambiguous.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter.  JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents and communications outside of the relevant Time Period.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by a privilege including, without limitation, the attorney-client

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege,

the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents

and communications upon which it intends to rely at trial in compliance with the schedule set by

the Court.  Otherwise, JJHCS will not search for or produce documents responsive to this

Request.

Dated: December 12, 2022

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:    /s/Jeffrey J. Greenbaum
       JEFFREY J. GREENBAUM
       KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza Newark,
New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for Plaintiff Johnson & Johnson Health Care
Systems Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.,<br><br>Plaintiff,<br><br>v.<br><br>SAVE ON SP, LLC,<br><br>Defendant. | Civil Action No. 22-2632 (JMV) (CLW)<br><br>**PLAINTFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS** |

14425583

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing.  It reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action.  The following responses and objections are based upon information known at this time.

1.       JJHCS objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.  The inadvertent production by JJHCS of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.       JJHCS objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response JJHCS makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

2

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.     JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.     JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.     JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.     JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

13.     JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.     JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.

2.     JJHCS objects to the definition of the term "JJHCS" to the extent it purports to

3

include attorneys and accountants who may be outside of JJHCS's possession, custody, and control. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or] representatives" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and Janssen Research & Development LLC.

3.      JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and as irrelevant to the extent it purports to include entities other than those responsible for administering CarePath during the relevant Time Period. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities. JJHCS further objects on the ground that the phrase "administer, in whole or in part, CarePath" is vague and ambiguous. JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

4.      JJHCS objects to the definition of the term "Lash Group" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of The Lash Group, Inc."  JJHCS further objects to the extent the term is used to seek

documents and communications in the possession of entities other than JJHCS.

5.      JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of TrialCard Inc."  JJHCS further objects to the extent the term is used to seek documents and

communications in the possession of entities other than JJHCS.

## SPECIFIC RESPONSES AND OBJECTIONS

### Request No. 49

All Documents and Communications regarding efforts by JJHCS, Janssen, a JJHCS Hub
Entity, or other entity working on any of their behalves to (a) identify (through non-litigation
means) individuals enrolled in CarePath as members of SaveOnSP-advised plans; or (b) to
enforce CarePath's terms and conditions against those individuals, including without limitation
by reducing the amount of copay assistance funds provided to those individuals or by
disenrolling those individuals from CarePath.

### Response to Request No. 49

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by any privilege including, without limitation, the First Amendment

privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the

common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court,

and relevant case law.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to show (i) final versions of reports received by JJHCS from external

vendors in response to JJHCS's request that they analyze CarePath enrollment and claims data to

assess whether it is possible to identify individuals enrolled in SaveOnSP; and (ii) JJHCS's

internal analyses to assess whether it is possible to identify individuals enrolled in accumulator

or maximizer programs generally.  JJHCS will further produce documents sufficient to show any

attempts to enforce CarePath's terms and conditions against those individuals to the extent that

any such documents exist.  Otherwise, JJHCS will not search for or produce documents

responsive to this Request.

Dated: July 24, 2023

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:  /s/Jeffrey J. Greenbaum
JEFFREY J. GREENBAUM
KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

14425583

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza Newark,
New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for Plaintiff Johnson & Johnson Health Care*
*Systems Inc.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JMV) (CLW) <br><br> **PLAINTFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS** |

14447128

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the

General Objections below into its specific objections to each Request, whether or not each such

General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing.  It reserves the right to

supplement, amend, modify, or correct its responses under Rule 26(e) should it discover

additional information or grounds for objections at any time prior to the conclusion of this

Action.  The following responses and objections are based upon information known at this time.

1.      JJHCS objects to the Requests to the extent that they seek documents or

information protected from disclosure by a privilege including, without limitation, the First

Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense

privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules

of the Court, and relevant case law.  The inadvertent production by JJHCS of information,

documents, materials, or things covered by any privilege or doctrine shall not constitute a

waiver of any applicable privilege or doctrine, including but not limited to, objections on the

basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or

admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.      JJHCS objects to the Requests to the extent that they seek documents or

information that are not relevant to a claim or defense or to the subject matter of this litigation.

Any response JJHCS makes to any Request shall not be deemed an admission that the response,

information, document, or thing produced is relevant to a claim or defense or to the subject

matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence,

is material, or is admissible as evidence.

14447128

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

14447128

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.    JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.    JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.    JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.    JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

13.    JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.    JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.

2.    JJHCS objects to the definition of the term "JJHCS" to the extent it purports to

14447128

include attorneys and accountants who may be outside of JJHCS's possession, custody, and

control.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not

proportional to the needs of the case to extent it purports to include "any and all predecessors

and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or]

representatives" or purports to include entities and persons acting or purporting to act on behalf

of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc.,

including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil

Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech,

Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals,

Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and

Janssen Research & Development LLC.

## OBJECTIONS TO THE TIME PERIOD

1.     JJHCS objects to SaveOnSP's Interrogatories as overbroad, unduly burdensome,

and not relevant to the subject matter of this Action to the extent they call for documents from

after July 1, 2022.  Unless otherwise noted, JJHCS will only provide information from April 1,

2016 through July 1, 2022 (the "Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

### Request No. 50

All Documents and Communications regarding the development of Stelara withMe,
including the decision to create the Stelara withMe program.

### Response to Request No. 50

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by any privilege including, without limitation, the First Amendment

privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the

common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court,

and relevant case law.  JJHCS further objects to this Request as overbroad, unduly burdensome,

and not proportional to the needs of the case to the extent it seeks documents outside of the

relevant Time Period.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to show why JJHCS decided to create Stelara withMe.  Otherwise, JJHCS

will not search for or produce documents responsive to this Request.

## Request No. 51

All Documents and Communications regarding all Stelara withMe terms and conditions,
including between Patients and Care Coordinators and including Documents and
Communications regarding (a) JJHCS's decision to revise any terms and conditions that apply or
have applied to Stelara; (b) JJHCS's understanding of the term "offer" or "health plan" as used in
any terms and conditions that apply or have applied to Stelara; and (c) JJHCS's understanding of
any terms regarding maximizers as used in terms and conditions that apply or have applied to
Stelara.

## Response to Request No. 51

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by any privilege including, without limitation, the First Amendment

privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the

common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court,

and relevant case law.  JJHCS further objects to this Request as overbroad, unduly burdensome,

14447128

and not proportional to the needs of the case to the extent it seeks documents outside of the

relevant Time Period.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to show the terms and conditions of Stelara withMe.  Otherwise, JJHCS

will not search for or produce documents responsive to this Request.

## Request No. 52

All Documents and Communications regarding JJHCS's determination of the amounts of
copay assistance funds that JJHCS offers to patients enrolled in Stelara withMe, including
determination of the maximum program benefit per year, the algorithm used to identify Patients
on maximizer programs, and the CAP Program.

## Response to Request No. 52

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by any privilege including, without limitation, the First Amendment

privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the

common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court,

and relevant case law.  JJHCS further objects to this request as duplicative of RFP Nos. 29 and

49.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks documents outside of the relevant

Time Period.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to show the maximum amounts of co-pay assistance offered to patients

enrolled in Stelara withMe. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 53**

All Documents and Communications regarding the development of Tremfya withMe, including the decision to create Tremfya withMe.

**Response to Request No. 53**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to demonstrate why JJHCS decided to create Tremfya withMe. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 54**

All Documents and Communications regarding all Tremfya withMe terms and conditions, including between Patients and Care Coordinators and including Documents and Communications regarding (a) JJHCS's decision to revise any terms and conditions that apply or have applied to Tremfya; (b) JJHCS's understanding of the term "offer" or "health plan" as used in any terms and conditions that apply or have applied to Tremfya; and (c) JJHCS's understanding of any terms regarding maximizers as used in the terms and conditions that apply or have applied to Tremfya.

14447128

**Response to Request No. 54**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show the terms and conditions of Tremfya withMe. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 55**

All Documents and Communications regarding JJHCS's determination of the amounts of copay assistance funds that JJHCS offers to patients enrolled in Tremfya withMe, including determination of the maximum program benefit per year, the algorithm used to identify Patients on maximizer programs, and the CAP program.

**Response to Request No. 55**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the First Amendment

8

privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. JJHCS further objects to this request as duplicative of RFP Nos. 29 and 49. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show the maximum amounts of co-pay assistance offered to patients enrolled in Tremfya withMe.

## Request No. 56

All Documents and Communications regarding the development of Janssen Compass, including the decision to create the Janssen Compass program.

## Response to Request No. 56

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

9

Janssen Compass is irrelevant to this Action for the reasons stated in our letter of August

28, 2023.  JJHCS will not search for or produce documents or communications responsive to this

Request.

## Request No. 57

All Documents and Communications regarding Janssen Compass and CarePath, SaveOnSP, maximizers, or accumulators, including any Communications by any Janssen Compass Care Navigator with any Patient, and FAQs, talk tracks, or scripts prepared for use during those Communications.

## Response to Request No. 57

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by any privilege including, without limitation, the First Amendment

privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the

common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court,

and relevant case law.  JJHCS further objects to this Request as overbroad, unduly burdensome,

and not proportional to the needs of the case to the extent it seeks documents outside of the

relevant Time Period.  JJHCS further objects to this request as duplicative of RFP No. 9.

Janssen Compass is irrelevant to this Action for the reasons stated in our letter of August

28, 2023.  JJHCS will not search for or produce documents responsive to this Request.


Dated: August 28, 2023

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

14447128

By:     /s/Jeffrey J. Greenbaum
        JEFFREY J. GREENBAUM
        KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

11

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (ES) (CLW) <br><br> **PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS** |

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing. It reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action. The following responses and objections are based upon information known at this time.

1.      JJHCS objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. The inadvertent production by JJHCS of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.      JJHCS objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response JJHCS makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

1

3.    JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.    JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.    JJHCS objects to the Requests to the extent that they seek information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.    JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.    JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.    JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

2

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.      JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.     JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.     JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.     JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

13.     JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.      JJHCS objects to the definition of the term "Benefits Investigation" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to the definition on the grounds that the phrase "receives information regarding the pharmacy benefits provided by a health plan" is vague and ambiguous and construes this phrase to refer to information received through investigations into whether a patient is affiliated with SaveOnSP or another copay accumulator or maximizer service.  JJHCS further objects to the definition as irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it encompasses instances in

which JJHCS may receive "information regarding the pharmacy benefits provided by a health

plan" for purposes other than establishing whether a patient is affiliated with SaveOnSP or

another copay accumulator or maximizer service.

2.      JJHCS objects to the definition of the term "Janssen" to the extent the term is

used to seek documents and communications in the possession of entities other than JJHCS.

JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional

to the needs of the case to the extent it purports to include "any and all predecessors and

successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments,

agents, representatives, directors, officers, employees, committees, attorneys, accountants and

all persons or entities acting or purporting to act on behalf" of those entities.

3.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to

include attorneys and accountants who may be outside of JJHCS's possession, custody, and

control.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not

proportional to the needs of the case to extent it purports to include "any and all predecessors

and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or]

representatives" or purports to include entities and persons acting or purporting to act on behalf

of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc.,

including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil

Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech,

Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals,

Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and

Janssen Research & Development LLC.

4.      JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and

as irrelevant to the extent it purports to include entities other than those responsible for

administering CarePath during the relevant Time Period.  JJHCS further objects to the

definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it includes "any and all predecessors and successors in interest, assignees, parents,

subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers,

employees, committees, attorneys, accountants and all persons or entities acting or purporting to

act on behalf" of those entities.  JJHCS further objects on the ground that the phrase

"administer, in whole or in part, CarePath" is vague and ambiguous.  JJHCS further objects to

the extent the term is used to seek documents and communications in the possession of entities

other than JJHCS.

5.      JJHCS objects to the definition of the term "Lash Group" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of The Lash Group, Inc."  JJHCS further objects to the extent the term is used to seek

documents and communications in the possession of entities other than JJHCS.

6.      JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of TrialCard Inc."  JJHCS further objects to the extent the term is used to seek documents and

communications in the possession of entities other than JJHCS.

## OBJECTIONS TO THE TIME PERIOD

1.      JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome, and

not relevant to the subject matter of this Action to the extent they call for documents from after

November 7, 2023.  Unless otherwise noted, JJHCS will only provide information from April

1, 2016 through November 7, 2023 (the "Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

**Request No. 58**

All documents or communications related to Benefits Investigations undertaken by
JJHCS or any JJHCS Hub Entity that identified or attempted to identify whether a Person
enrolled in CarePath was or could be a member of a health plan advised by SaveOnSP.

**Response to Request No. 58**

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by any privilege including, without limitation, the First Amendment

privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the

common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court,

and relevant case law.  JJHCS further objects to this Request to the extent it uses the terms

"Benefits Investigations," "JJHCS," and "JJHCS Hub Entity" for the reasons stated in JJHCS's

Objections to Definitions.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents

outside of the relevant Time Period.

Subject to the foregoing objections, JJHCS will ask TrialCard, Inc. to produce all benefits

investigation reports from the Time Period that reflect inquiries about whether a patient taking

Stelara or Tremfya is enrolled in an accumulator or maximizer program (including SaveOnSP),

to the extent such documents exist and can be located after a reasonable search.  Otherwise,

JJHCS will not search for or produce documents responsive to this Request.

**Request No. 59**

To the extent not covered by the previous Request, all documents or communications
related to Benefits Investigations undertaken by JJHCS or any JJHCS Hub Entity that identified
or attempted to identify whether a Person enrolled in CarePath was or could be a member of a
Maximizer or Accumulator health plan.

**Response to Request No. 59**

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by any privilege including, without limitation, the First Amendment

privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the

common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court,

and relevant case law.  JJHCS further objects to this Request as overbroad, unduly burdensome,

and not proportional to the needs of the case to the extent it seeks documents outside of the

relevant Time Period.  JJHCS further objects to this Request to the extent it uses the terms

"Benefits Investigations," "JJHCS," and "JJHCS Hub Entity" for the reasons stated in JJHCS's

Objections to Definitions.  JJHCS further objects to this Request as irrelevant to any claim or

defense in this Action to the extent it seeks documents unrelated to SaveOnSP.  JJHCS further

objects to this Request as duplicative of Request No. 58.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 58.  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 60**

Documents sufficient to show any agreements entered into or in place during the relevant time period between JJHCS or any JJHCS Hub Entity, on the one hand, and Accredo or ESI, on the other hand, regarding the provision of patient information or data.

**Response to Request No. 60**

In addition to the foregoing general objections, JJHCS objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show any agreements entered into or in place during the relevant time period between JJHCS or any JJHCS Hub Entity, on the one hand, and Accredo or ESI, on the other hand, regarding the provision of patient information or data during the relevant Time Period, to the extent that such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 61**

Any patient information or data provided by Accredo or ESI to JJHCS or any JJHCS Hub

Entity regarding Persons enrolled in CarePath.

**Response to Request No. 61**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "any" information or data regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to the extent that it seeks "patient information or data . . . regarding Persons enrolled in CarePath" that is unrelated to Benefits Investigations. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 58. To the extent that documents responsive to this Request are also responsive to prior Requests for Production from JJHCS or TrialCard, subject to prior objections and those presented here, JJHCS and TrialCard have already agreed to produce those documents from the relevant Time Period. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 62**

Documents sufficient to show any negotiations engaged in by JJHCS or any JJHCS Hub Entity to obtain data from ESI or Accredo regarding Persons enrolled in CarePath, including without limitation JJHCS's or any JJHCS Hub Entity's knowledge of the information available

9

in such data.

**Response to Request No. 62**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents sufficient to show "any" negotiations regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to the extent that it seeks information related to "negotiations engaged in by JJHCS or any JJHCS Hub Entity to obtain data" that is unrelated to Benefits Investigations. JJHCS further objects to this Request on the ground that the phrase "show any negotiations engaged in . . . to obtain data" is vague and ambiguous. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 58. To the extent that documents or communications responsive to this Request are also responsive to prior Requests for Production, subject to prior objections and those presented here, JJHCS has already agreed to produce those responsive documents from the relevant Time Period. Otherwise, JJHCS will not search for or produce documents or communications responsive to this Request.

Dated: November 20, 2023

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:    /s/Jeffrey J. Greenbaum
       JEFFREY J. GREENBAUM
       KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

11

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (ES) (CLW) <br><br> **PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIFTH REQUEST FOR PRODUCTION OF DOCUMENTS** |

**GENERAL OBJECTIONS**

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the

General Objections below into its specific objections to each Request, whether or not each such

General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing.  It reserves the right to

supplement, amend, modify, or correct its responses under Rule 26(e) should it discover

additional information or grounds for objections at any time prior to the conclusion of this

Action.  The following responses and objections are based upon information known at this time.

1.     JJHCS objects to the Requests to the extent that they seek documents or

information protected from disclosure by a privilege including, without limitation, the attorney-

client privilege, the work-product doctrine, the joint defense privilege, the common interest

privilege, the First Amendment privilege, the Federal Rules of Civil Procedure, the Local Rules

of the Court, and relevant case law.  The inadvertent production by JJHCS of information,

documents, materials, or things covered by any privilege or doctrine shall not constitute a

waiver of any applicable privilege or doctrine, including but not limited to, objections on the

basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or

admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.     JJHCS objects to the Requests to the extent that they seek documents or

information that are not relevant to a claim or defense or to the subject matter of this litigation.

Any response JJHCS makes to any Request shall not be deemed an admission that the response,

information, document, or thing produced is relevant to a claim or defense or to the subject

matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence,

is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek documents or information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

2

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.     JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.     JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.     JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.     JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

13.     JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.     JJHCS objects to the definition of the term "Archbow" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of Archbow." JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS or documents that have already

3

been produced in response to discovery requests made by SaveOnSP to other entities, including but not limited to Archbow.

2.      JJHCS objects to the definition of the term "Benefits Investigation" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to the definition on the grounds that the phrase "receives information regarding the pharmacy benefits provided by a health plan" is vague and ambiguous; JJHCS construes this phrase in the context of this case to refer to information received through investigations into whether a patient is affiliated with SaveOnSP or another copay accumulator or maximizer service.  JJHCS further objects to the definition as irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it encompasses instances in which JJHCS may receive "information regarding the pharmacy benefits provided by a health plan" for purposes other than establishing whether a patient is affiliated with SaveOnSP or another copay accumulator or maximizer service.

3.      JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.

4.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to include attorneys and accountants whose documents and communications may be outside of JJHCS's possession, custody, and control.  JJHCS further objects to the definition as overbroad,

unduly burdensome, and not proportional to the needs of the case to extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or] representatives" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc., including Centocor, Inc.; Ortho Biotech Products LP; McNeil Pharmaceutical; Ortho-McNeil Pharmaceutical, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc.; Scios Inc.; Janssen Biotech, Inc.; Janssen Oncology, Inc.; Janssen Research & Development, LLC; Janssen Pharmaceuticals, Inc.; Janssen Products, LP; Actelion Pharmaceuticals U.S., Inc.; Janssen BioPharma LLC; and Janssen Research & Development LLC.

5.      JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and as irrelevant to the extent it purports to include entities other than those responsible for administering CarePath during the relevant Time Period.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.  JJHCS further objects on the ground that the phrase "administer, in whole or in part, CarePath" is vague and ambiguous.  JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

6.      JJHCS objects to the definition of the term "Lash Group" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

5

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of The Lash Group, Inc." JJHCS further objects to the extent the term is used to seek

documents and communications in the possession of entities other than JJHCS.

7.     JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of TrialCard Inc." JJHCS further objects to the extent the term is used to seek documents and

communications in the possession of entities other than JJHCS.

## OBJECTIONS TO THE TIME PERIOD

1.     JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome, and

not relevant to the subject matter of this Action to the extent they call for documents from after

November 7, 2023.  Unless otherwise noted, JJHCS will only provide information from April

1, 2016 through November 7, 2023 (the "Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

**Request No. 63**

All Documents and Communications regarding JJHCS's efforts to directly reimburse
patients for out-of-pocket costs after the patient acquires a Janssen Drug.

**Response to Request No. 63**

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS objects to

this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to JJHCS's efforts to provide copay assistance funds to patients and unrelated to the CarePath program (and the "withMe" programs). JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it uses the term "Janssen" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications related to "efforts to directly reimburse patients for out-of-pocket costs" that are unrelated to SaveOnSP. JJHCS further objects to this request as duplicative of Request Nos. 26 and 28; in response to those Requests, subject to objections made thereto, JJHCS already has produced data regarding payments to patients to reimburse them for their out-of-pocket costs.

Subject to the foregoing objections, JJHCS incorporates by reference its responses to Request Nos. 26 and 28. *See also* Feb. 17, 2023 Letter from A. LoMonaco to M. Nelson; Mar. 7, 2023 Letter from A. Dunlap to H. Sandick. To the extent that documents responsive to this Request are also responsive to prior Requests for Production, JJHCS has already agreed to produce those documents from the relevant Time Period, subject to prior objections and those presented here. JJHCS will update its production of data in responsive to Request Nos. 26 and 28 pursuant to the Court's November 7, 2023 Order. (*See* Dkt. No. 173.) Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 64**

██████████████████████████████████████
██████████████████████████████████████
███████████

**Response to Request No. 64**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it uses the term "Janssen" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request as duplicative of Request Nos. 8, 31, 33, 49, 51, 52, 54, and 55.

Subject to the foregoing objections, JJHCS incorporates by reference its responses to Request Nos. 8, 31, 33, 49, 51, 52, 54, and 55.  To the extent that documents or communications responsive to this Request are also responsive to prior Requests for Production, JJHCS has already agreed to produce responsive, non-privileged documents, subject to prior objections and those presented here, including but not limited to those documents related to the CAP Program,

consistent with the Court's November 7, 2023 Order.  (*See* Dkt. No. 173.)  Otherwise, JJHCS

will not search for or produce documents responsive to this Request.

**Request No. 65**

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

**Response to Request No. 65**

        In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks documents and communications that are exempt

from discovery and protected from disclosure by any privilege.  JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this

Request to the extent it uses the term "Janssen" for the reasons stated in JJHCS's Objections to

Definitions.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.  JJHCS further objects to this

Request as duplicative of Request Nos. 8, 31, 33, 49, 64, and 66.

        Subject to the foregoing objections, JJHCS incorporates by reference its responses to

Request Nos. 8, 31, 33, 49, 64, and 66.  To the extent that documents responsive to this Request

are also responsive to prior Requests for Production, JJHCS has already agreed to produce those

documents from the relevant Time Period, subject to JJHCS's prior objections and those

presented here.  JJHCS will update its production pursuant to the Court's November 7, 2023

Order.  (*See* Dkt. No. 173.)  Otherwise, JJHCS will not search for or produce documents

responsive to this Request.

**Request No. 66**

All Documents and Communications regarding attempts by JJHCS to prevent health plans, PBMs (including without limitation Express Scripts), pharmacies (including without limitation Accredo), or SaveOnSP, from being able to detect JJHCS's provision of funds to patients.

**Response to Request No. 66**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP, Express Scripts, or Accredo. JJHCS further objects to this Request as duplicative of Request Nos. 8, 31, 33, 49, 64 and 65.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request Nos. 8, 31, 33, 49, 64 and 65. To the extent that documents responsive to this Request are also responsive to prior Requests for Production, JJHCS has already agreed to produce those documents from the relevant Time Period subject to JJHCS's prior objections. JJHCS will update its production pursuant to the Court's November 7, 2023 Order. (*See* Dkt. No. 173.) Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 67**

Documents sufficient to show all payments or reimbursements made by JJHCS to patients taking Janssen Drugs other than copay assistance payments provided via CarePath.

**Response to Request No. 67**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and information unrelated to SaveOnSP. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "Janssen" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and information that is unrelated to the CarePath program and any withMe programs. JJHCS further objects to this Request as duplicative of Request Nos. 26 and 28; in response to those Requests, JJHCS already has produced data regarding payments to patients.

Subject to the foregoing objections, JJHCS incorporates by reference its responses to Request Nos. 26 and 28. *See also* Feb. 17, 2023 Letter from A. LoMonaco to M. Nelson; Mar. 7, 2023 Letter from A. Dunlap to H. Sandick. To the extent that documents responsive to this Request are also responsive to prior Requests for Production, JJHCS has already agreed to produce those documents from the relevant Time Period, subject to prior objections and those presented here. JJHCS will update its production of data in responsive to Request Nos. 26 and 28 pursuant to the Court's November 7, 2023 Order. (*See* Dkt. No. 173.) Otherwise, JJHCS will not search for or produce documents or communications responsive to this Request.

11

**Request No. 68**

All Documents and Communications between JJHCS and Archbow regarding CarePath, copay assistance, or provision of funds to patients enrolled in CarePath.

**Response to Request No. 68**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to the extent that it seeks documents and communications between JJHCS and Archbow that are unrelated to SaveOnSP. JJHCS further objects to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "Archbow" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections and to objections to other Requests, JJHCS has already agreed to produce responsive, non-privileged documents that relate to SaveOnSP, including those documents related to the CAP Program consistent with the Court's November 7, 2023 Order. (*See* Dkt. No. 173.) Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 69**

████████████████████████████████████████████
███████████████████

**Response to Request No. 69**

      In addition to the foregoing general objections, JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it uses the term "Archbow" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request as duplicative of Request No. 8.

      Subject to the foregoing objections, JJHCS incorporates by reference its response to Request No. 8.  To the extent that documents or communications responsive to this Request are also responsive to prior Requests for Production, subject to prior objections and those presented here, JJHCS has already agreed to produce responsive, non-privileged documents, including those related to the CAP Program, consistent with the Court's November 7, 2023 Order.  (*See* Dkt. No. 173.)  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 70**

      All Documents and Communications regarding manufacturer copay assistance program funds counting towards the calculation of a drug's Best Price, including the anticipated impact of the 2023 Best Price Rule on JJHCS, including without limitation the impact on CarePath.

**Response to Request No. 70**

      In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all documents and communications" regarding a broad subject matter.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action.  JJHCS further objects

13

to this Request to the extent it seeks documents and communications that are exempt from

discovery and protected from disclosure by any privilege. JJHCS further objects to this Request

to the extent it uses the terms "JJHCS" and "Best Price" for the reasons stated in JJHCS's

Objections to Definitions.

JJHCS will not search for or produce documents or communications responsive to this

Request.

**Request No. 71**

Documents sufficient to show how JJHCS records, books, accounts for, or refers to copay
assistance payments and other provision of funds to patients for the purpose of internal reports,
bookkeeping, internal or external financial reporting, including without limitation reporting for
tax purposes or compliance with any other law, including without limitation whether JJHCS
accounts for those payments as charity, charitable contributions, business expenses, rebates,
discounts, marketing, or otherwise.

**Response to Request No. 71**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action. JJHCS further objects to this Request to the

extent it seeks information that is exempt from discovery and protected from disclosure by any

privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks documents outside of the relevant

Time Period. JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the

reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents or communications responsive to this

Request.

**Request No. 72**

14

**Response to Request No. 72**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all documents and communications" regarding a broad subject matter.  JJHCS further objects to this Request as irrelevant to the extent that it seeks information unrelated to SaveOnSP.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it uses the term "Archbow" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request as duplicative of Request No. 68.

JJHCS will not search for or produce documents or communications responsive to this Request.

**Request No. 73**

███████████████████████████████████████████
███████████████████████████████████████████

**Response to Request No. 73**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents sufficient to show "all documents and communications" regarding a broad subject matter.  JJHCS further objects to this Request as irrelevant to the extent that it seeks information unrelated to SaveOnSP and the CarePath program and any withMe programs.

JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "Archbow" and "Janssen" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request as duplicative of Request Nos. 20, 41, 42 and 68.

Subject to the foregoing objections, to the extent that documents responsive to this Request are also responsive to prior Requests for Production, JJHCS has already agreed to produce those documents from the relevant Time Period, subject to JJHCS's prior objections. JJHCS will update its production of responsive, non-privileged documents to those Requests pursuant to the Court's November 7, 2023 Order. (*See* Dkt. No. 173.) Otherwise, JJHCS will not search for or produce documents or communications responsive to this Request.

**Request No. 74**



**Response to Request No. 74**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents sufficient to show "all documents and communications" regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to the extent that it seeks information unrelated to SaveOnSP and unrelated to the CarePath program and any withMe

programs.  JJHCS further objects to this Request to the extent it seeks information that is exempt

from discovery and protected from disclosure by any privilege.  JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this

Request to the extent it uses the terms "JJHCS," "Janssen," and "Archbow" for the reasons stated

in JJHCS's Objections to Definitions.  JJHCS further objects to this Request to the extent it seeks

documents and communications in the possession of entities other than JJHCS.  JJHCS further

objects to this Request as duplicative of Request Nos. 29 and 41.  JJHCS also objects to this

Request to the extent that it seeks documents that the Court specifically declined to order JJHCS

to produce on March 17 and October 30, 2023.

　　　　JJHCS will not search for or produce documents or communications responsive to this

Request.

**Request No. 75**



**Response to Request No. 75**

　　　　In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents sufficient to show "all documents and communications" regarding a broad

subject matter.  JJHCS further objects to this Request to the extent it seeks information that is

exempt from discovery and protected from disclosure by any privilege, including without

limitation the attorney-client privilege, the work-product doctrine, the joint defense privilege, the

common interest privilege, the First Amendment privilege, the Federal Rules of Civil Procedure,

the Local Rules of the Court, and relevant case law.  JJHCS further objects to this Request as

17

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "Archbow" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request as duplicative of Request No. 8.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request No. 8.  To the extent that documents responsive to this Request are also responsive to prior Requests for Production, JJHCS has already agreed to produce those documents from the relevant Time Period, subject to JJHCS's prior objections and those objections presented here. JJHCS will update its production pursuant to the Court's November 7, 2023 Order.  (*See* Dkt. No. 173.)  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 76**

All recordings of calls between SaveOnSP or any employee of SaveOnSP, on the one hand, and JJHCS or any Hub Entity, on the other hand.

**Response to Request No. 76**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents sufficient to show "all" recordings regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request as unduly burdensome because it requires JJHCS to identify recordings of calls without the benefit of identifying information—specifically, all names (including the many pseudonyms and false

claims of affiliation with various health plans, insurance companies and pharmacies made by

SaveOnSP) and phone numbers used by SaveOnSP employees who called JJHCS and its

affiliates—that SaveOnSP has not provided.  JJHCS further objects to this Request to the extent

it uses the terms "JJHCS" and "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections

to Definitions.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents or communications responsive to this

Request.

Dated: December 18, 2023

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:    /s/Jeffrey J. Greenbaum
       JEFFREY J. GREENBAUM
       KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036

*Attorneys for Plaintiff Johnson & Johnson Health Care
Systems Inc.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JKS) (CLW) <br><br> **PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S SIXTH REQUEST FOR PRODUCTION OF DOCUMENTS** |

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the

General Objections below into its specific objections to each Request, whether or not each such

General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing.  It reserves the right to

supplement, amend, modify, or correct its responses under Rule 26(e) should it discover

additional information or grounds for objections at any time prior to the conclusion of this

Action.  The following responses and objections are based upon information known at this time.

1.      JJHCS objects to the Requests to the extent that they seek documents or

information protected from disclosure by a privilege including, without limitation, the attorney-

client privilege, the work-product doctrine, the joint defense privilege, the common interest

privilege, the First Amendment privilege, the Federal Rules of Civil Procedure, the Local Rules

of the Court, and relevant case law.  The inadvertent production by JJHCS of information,

documents, materials, or things covered by any privilege or doctrine shall not constitute a

waiver of any applicable privilege or doctrine, including but not limited to, objections on the

basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or

admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.      JJHCS objects to the Requests to the extent that they seek documents or

information that are not relevant to a claim or defense or to the subject matter of this litigation.

Any response JJHCS makes to any Request shall not be deemed an admission that the response,

information, document, or thing produced is relevant to a claim or defense or to the subject

matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence,

is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek documents or information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

2

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.      JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.     JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.     JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.     JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

13.     JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.      JJHCS objects to the definition of the term "Archbow" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of Archbow." JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS or documents that have already

3

been produced in response to discovery requests made by SaveOnSP to other entities, including but not limited to Archbow.

2.      JJHCS objects to the definition of the term "Avalere" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of Avalere." JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS or documents that have already been produced in response to discovery requests made by SaveOnSP to other entities, including but not limited to Avalere.

3.      JJHCS objects to the definition of the term "Benefits Investigation" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition on the grounds that the phrase "receives information regarding the pharmacy benefits provided by a health plan" is vague and ambiguous; JJHCS construes this phrase in the context of this case to refer to information received through investigations into whether a patient is affiliated with SaveOnSP or another copay accumulator or maximizer service. JJHCS further objects to the definition as irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it encompasses instances in which JJHCS may receive "information regarding the pharmacy benefits provided by a health plan" for purposes other than establishing whether a patient is affiliated with SaveOnSP or another copay accumulator or maximizer service.

4

4.      JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.

5.      JJHCS objects to the definition of the term "Janssen Drug" as irrelevant to the extent it purports to include drugs that are not covered by CarePath or otherwise implicated in SaveOnSP's scheme to misuse copay assistance funds.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any Specialty Drug manufactured or sold by Janssen from any time for which patients may receive copay assistance," even if the drug is not covered by CarePath or otherwise implicated in SaveOnSP's scheme to misuse copay assistance funds.

6.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to include attorneys and accountants whose documents and communications may be outside of JJHCS's possession, custody, and control.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or] representatives" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc., including Centocor, Inc.; Ortho Biotech Products LP; McNeil Pharmaceutical; Ortho-McNeil Pharmaceutical, Inc.; Ortho-McNeil-Janssen Pharmaceuticals,

Inc.; Scios Inc.; Janssen Biotech, Inc.; Janssen Oncology, Inc.; Janssen Research &

Development, LLC; Janssen Pharmaceuticals, Inc.; Janssen Products, LP; Actelion

Pharmaceuticals U.S., Inc.; Janssen BioPharma LLC; and Janssen Research & Development

LLC.

   7.  JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and

as irrelevant to the extent it purports to include entities other than those responsible for

administering CarePath during the relevant Time Period.  JJHCS further objects to the

definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it includes "any and all predecessors and successors in interest, assignees, parents,

subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers,

employees, committees, attorneys, accountants and all persons or entities acting or purporting to

act on behalf" of those entities.  JJHCS further objects on the ground that the phrase

"administer, in whole or in part, CarePath" is vague and ambiguous.  JJHCS further objects to

the extent the term is used to seek documents and communications in the possession of entities

other than JJHCS.

   8.  JJHCS objects to the definition of the term "Lash Group" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of The Lash Group, Inc."  JJHCS further objects to the extent the term is used to seek

documents and communications in the possession of entities other than JJHCS.

9.      JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of TrialCard Inc."  JJHCS further objects to the extent the term is used to seek documents and

communications in the possession of entities other than JJHCS.

## OBJECTIONS TO THE TIME PERIOD

1.      JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome, and

not relevant to the subject matter of this Action to the extent they call for documents from after

November 7, 2023.  Unless otherwise noted, JJHCS will only provide information from April

1, 2016 through November 7, 2023 (the "Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

### Request No. 77

All Documents and Communications regarding efforts by JJHCS to work with, inform,
sponsor, or influence patient advocacy groups regarding those organizations' public statements,
patient outreach, or lobbying in any form about Copay Assistance programs, Copay Maximizers,
Copay Accumulators, and/or SaveOnSP (including but not limited to AIDS Foundation of
Chicago, AIDS Institute, Aimed Alliance, American Cancer Society Cancer Action Network,
American Chronic Pain Association, American College of Rheumatology, American Diabetes
Association, American Kidney Fund, American Lung Association, American Society of Clinical
Oncology, Arthritis Foundation, Coalition of State Rheumatology Organizations, Crohn's &
Colitis Foundation, Cystic Fibrosis Research Institute, Connecticut Oncology Association,
COPD Foundation, Epilepsy Foundation, Gay Men's Health Crisis, HealthyWomen, HIV +
Hepatitis Policy Institute, Immune Deficiency Foundation, International Myeloma Foundation,
Leukemia & Lymphoma Society, LUNGevity Foundation, Lupus Research Alliance, Lupus
Foundation of America, Lupus Alliance Research, Mary M. Gooley Treatment Center, Men's
Health Network, Multiple Sclerosis Association of America, Nashville CARES, National
Alopecia Areata Foundation, National Multiple Sclerosis Association of America, National
Multiple Sclerosis Society, National Oncology State Network, National Organization of Rare
Disorders, National Psoriasis Foundation, Prevent Blindness, Pulmonary Hypertension
Association, Rheumatology Research Foundation, Scleroderma Foundation, Stand Up To

Cancer, Susan G. Komen, The ALS Association, Treatment Action Group, Triage Cancer, U.S. Pain Foundation, Vasculitis Foundation, and ZERO Prostate Cancer).

**Response to Request No. 77**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP and communications with multiple entities whose relevance has not been established. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this request as duplicative of Request Nos. 8, 20, and 21, and JJHCS incorporates by reference its response to those Requests.

To the extent that documents responsive to this Request are also responsive to Request No. 8, JJHCS has already agreed to produce, subject to prior objections, "all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period." *See* JJHCS's Responses and Objections to Defendant's First Request for Production of Documents. To the extent that documents responsive to this Request are also responsive to Request No. 20, JJHCS has already agreed to produce, subject to prior objections, "studies, reports, and publications that JJHCS has funded or supported regarding accumulator and maximizer programs generally, as well as internal communications about such documents."

*See* Feb. 17, 2023 Letter from A. LoMonaco to M. Nelson. Subject to prior objections and those presented here, JJHCS has or will update its production of any documents responsive to Request Nos. 8 and 20 pursuant to the Court's November 7, 2023 Order. *See* Dkt. No. 173. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

## Request No. 78

All Documents and Communications regarding efforts by JJHCS to work with, inform, sponsor, or influence pharmaceutical industry associations or groups regarding those organizations' public statements, patient outreach, or lobbying in any form about Copay Assistance programs, Copay Maximizers, Copay Accumulators, and/or SaveOnSP (including but not limited to Biotechnology Innovation Organization, Pharmaceutical Care Management Association, and Pharmaceutical Research and Manufacturers of America).

## Response to Request No. 78

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP and communications with multiple entities whose relevance has not been established. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this request as duplicative of Request Nos. 8, 20, and 21, and JJHCS incorporates by reference its response to those Requests.

9

To the extent that documents responsive to this Request are also responsive to Request No. 8, JJHCS has already agreed to produce, subject to prior objections, "all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period." *See* JJHCS's Responses and Objections to Defendant's First Request for Production of Documents.  To the extent that documents responsive to this Request are also responsive to Request No. 20, JJHCS has already agreed to produce, subject to prior objections, "studies, reports, and publications that JJHCS has funded or supported regarding accumulator and maximizer programs generally, as well as internal communications about such documents." *See* Feb. 17, 2023 Letter from A. LoMonaco to M. Nelson.  Subject to prior objections and those presented here, JJHCS has or will update its production of any documents responsive to Request Nos. 8 and 20 pursuant to the Court's November 7, 2023 Order.  *See* Dkt. No. 173.  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 79**

All Best Price Quarterly Reports created or submitted by JJHCS, Janssen, or their affiliates for each Janssen Drug.

**Response to Request No. 79**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to the extent it seeks information unrelated to the claims and defenses in this Action, including information related to the calculation of Best Price for each Janssen Drug.  Issues related to "Best Price" are completely irrelevant to this action.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to

10

this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "Janssen Drug" and "JJHCS" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it is duplicative of Request No. 28, and JJHCS incorporates by reference its response to that Request and its subsequent representations regarding that Request.

JJHCS will not search for or produce documents responsive to this Request.

**Request No. 80**

A copy of each final contract executed between JJHCS and TrialCard regarding CarePath, including without limitation any final work order.

**Response to Request No. 80**

In addition to the foregoing general objections, JJHCS objects to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "TrialCard" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP or copay assistance provided through the CarePath program. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS will produce non-privileged final contracts between JJHCS and TrialCard from the Time Period concerning copay assistance provided through the CarePath program, to the extent that such contracts exist, are in JJHCS's possession, and can be located after a reasonable search.  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 81**

All draft contracts exchanged between JJHCS and TrialCard regarding Copay Maximizers, Copay Accumulators, and/or SaveOnSP, including without limitation any draft work orders.

**Response to Request No. 81**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "TrialCard" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks non-final, draft contracts that were never adopted or that do not concern Copay Assistance or SaveOnSP.  JJHCS further objects to this Request as duplicative of Request No. 80.

JJHCS will not search for or produce documents or communications responsive to this

Request.

**Request No. 82**

All Documents and Communications between JJHCS and Avalere regarding CarePath or
Copay Assistance Programs, including regarding (1) Copay Maximizers, Copay Accumulators,
and/or SaveOnSP, (2) patient satisfaction with Copay Assistance Programs, including but not
limited to CarePath, (3) the impact of Copay Assistance Programs on patient adherence to
medication, and (4) reevaluating or changing Copay Assistance Programs based on expected
changes to the Best Price Rule.

**Response to Request No. 82**

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter. JJHCS further

objects to this Request as irrelevant to any claim or defense in this Action insofar as it seeks

information related to patient satisfaction with copay assistance programs (including copay

assistance programs not at issue in this Action), the impact of copay assistance programs on

patient adherence to medication, and purported changes to CarePath's copay assistance program

based on expected changes to the Best Price Rule. JJHCS further objects to this Request as

irrelevant to the extent that it seeks documents and communications between JJHCS and Avalere

that are unrelated to SaveOnSP. JJHCS further objects to this Request to the extent it seeks

documents and communications that are exempt from discovery and protected from disclosure

by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and

not proportional to the needs of the case to the extent it seeks documents outside of the relevant

Time Period. JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and

"Avalere" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to

this Request to the extent it seeks documents and communications in the possession of entities

other than JJHCS.

JJHCS will not search for or produce documents responsive to this Request.

Dated: January 29, 2024

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:    /s/Jeffrey J. Greenbaum
       JEFFREY J. GREENBAUM
       KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

14

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036

*Attorneys for Plaintiff Johnson & Johnson Health Care
Systems Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JKS) (CLW) <br><br> **PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S SEVENTH REQUEST FOR PRODUCTION OF DOCUMENTS** |

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing. It reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action. The following responses and objections are based upon information known at this time.

1.    JJHCS objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the First Amendment privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. The inadvertent production by JJHCS of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.    JJHCS objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response JJHCS makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek documents or information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.      JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.     JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.     JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.     JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

13.     JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.      JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.

2.      JJHCS objects to the definition of the term "Janssen Drug" as irrelevant to the extent it purports to include drugs that are not covered by CarePath or otherwise implicated in SaveOnSP's scheme to misuse copay assistance funds.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any Specialty Drug manufactured or sold by Janssen from any time for which patients may receive copay assistance," even if the drug is not covered by CarePath or otherwise implicated in SaveOnSP's scheme to misuse copay assistance funds.

3.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to include attorneys and accountants whose documents and communications may be outside of JJHCS's possession, custody, and control.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, … agents, [or] representatives" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc., including Centocor, Inc.; Ortho Biotech Products LP; McNeil Pharmaceutical; Ortho-McNeil Pharmaceutical, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc.; Scios Inc.; Janssen Biotech, Inc.; Janssen Oncology, Inc.; Janssen Research & Development, LLC; Janssen Pharmaceuticals, Inc.; Janssen Products, LP; Actelion Pharmaceuticals U.S., Inc.; Janssen BioPharma LLC; and Janssen Research & Development LLC.

## OBJECTIONS TO THE TIME PERIOD

1.      JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome, and not relevant to the subject matter of this Action to the extent they call for documents from after

November 7, 2023.  Unless otherwise noted, JJHCS will only provide information from April 1, 2016 through November 7, 2023 (the "Time Period").

**SPECIFIC RESPONSES AND OBJECTIONS**

**Request No. 83**

All Documents and Communications cited, quoted, or referenced in JJHCS's proposed Amended Complaint, Dkt. 219, including without limitation those referenced in ¶¶ 15, 18, 27, 63, 66, 69-74, 97, 116, 118, 143.

**Response to Request No. 83**

In addition to the foregoing general objections, JJHCS objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS, including documents and communications already produced by SaveOn.  JJHCS further objects to this Request to the extent it seeks publicly available documents or communications for which JJHCS's proposed Amended Complaint already includes citations and are already accessible to SaveOn. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as premature, as the Court has not yet ruled on JJHCS's motion seeking leave to file the proposed Amended Complaint.

Subject to the foregoing objections, JJHCS responds that, other than documents or communications for which the proposed Amended Complaint already includes citations, the documents and communications cited, quoted, or referenced in the proposed Amended Complaint are documents that have already been produced in this litigation by SaveOnSP or third parties.  A list of those documents is attached as Appendix A.  JJHCS will not otherwise search for or produce documents responsive to this Request.

5

**Request No. 84**

All Documents and Communications concerning any individual cited, quoted, or referenced in JJHCS's proposed Amended Complaint, Dkt. 219, including without limitation those referenced in ¶¶ 20-22, 97, 102, 104, 107, 110, 138-142, 145-146, 149. This includes without limitation any records of discussions between such individuals and JJHCS's counsel.

**Response to Request No. 84**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks "any records of discussions between … individuals and JJHCS's counsel," as such records are exempted from discovery and protected from disclosure by the work product doctrine, the attorney-client privilege, and/or other applicable privileges and protections. JJHCS further objects to this Request to the extent it seeks any other information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP. JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request as premature, as the Court has not yet ruled on JJHCS's motion seeking leave to file the proposed Amended Complaint.

Subject to the foregoing objections, JJHCS refers SaveOn to the attached Appendix A. JJHCS will not otherwise search for or produce documents responsive to this request.

**Request No. 85**

███████████████████████████████████████████████████████████

**Response to Request No. 85**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request because it mischaracterizes the documents it cites, none of which mention maximizers or SaveOnSP.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of other entities other than JJHCS.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession relating to JJHCS's lack of control over commercial health plans' use of SaveOnSP, to the extent such documents and communications exist and can be located after a reasonable search of JJHCS's existing custodial collections.  JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

**Request No. 86**

All Documents and Communications regarding all proposed and enacted federal rules and regulations cited, quoted, or referenced in the proposed Amended Complaint, Dkt. 219, including any rules proposed or enacted pursuant to the ACA.

**Response to Request No. 86**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of other entities other than JJHCS. JJHCS further objects to this Request on the ground that the Court has already ruled that compliance with government regulations is irrelevant to any claim or defense in this Action. *See* Mar. 17, 2023 Hearing Tr. at 23:1-3. JJHCS further objects to this Request on the ground that SaveOnSP has previously argued that compliance with statutes is "completely tangential" to this Action. *See id.* at 20:16; *see also* Dkt. No. 66 at 7-8. SaveOnSP is judicially estopped from arguing otherwise here. JJHCS further objects to this Request as premature, as the Court has not yet ruled on JJHCS's motion seeking leave to file the proposed Amended Complaint. JJHCS further objects to this Request to the extent it is duplicative of Request No. 14, and JJHCS incorporates by reference its response to that Request.

To the extent this Request is duplicative of Request No. 14, JJHCS has already agreed to produce and has produced, subject to prior objections, non-privileged documents relating to JJHCS's understanding of commercial health plans' ability to designate specialty drugs. To the extent this Request is not duplicative of Request No. 14, any documents or communications that are responsive to this Request and relate to SaveOnSP will have already been captured by the custodial productions that JJHCS has already agreed to produce, subject to prior objections. JJHCS will not otherwise search for or produce documents responsive to this Request.

8

**Request No. 87**

All Documents and Communications regarding communications by JJHCS or its counsel with members of SaveOnSP-advised health plans or with representatives of health plan sponsors regarding SaveOnSP, including but not limited to communications with the individuals referenced in JJHCS's February 16, 2024 Letter from H. Sandick to A. Dunlap. This includes without limitation any notes or records of communications with such members with JJHCS's counsel.

**Response to Request No. 87**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks any documents or communications regarding communications by JJHCS's counsel, as such documents and communications are exempted from discovery and protected from disclosure by the work product doctrine, the attorney-client privilege, and/or other applicable privileges and protections. JJHCS further objects to this Request to the extent it seeks any other information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request on the ground that the phrase "representative of health plan sponsors" is vague and ambiguous. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP. JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request as seeking information beyond the scope of the Court's April 27, 2023 order, which provided that "JJHCS may contact any health plan or patient" without any restraint and required that JJHCS only "keep SaveOnSP regularly apprised of the volume of outreach it has made to patients and health plans." Dkt. No. 102 at 2. JJHCS

further objects to this request as duplicative of Request No. 8, and JJHCS incorporates by reference its response to that Request.

To the extent documents responsive to this Request are also responsive to Request No. 8, JJHCS has already agreed to produce, subject to prior objections and the Court's orders, "non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period" and has agreed to run SaveOnSP related search terms over the files of more than twenty-five custodians. *See* JJHCS's Responses and Objections to Defendant's First Request for Production of Documents; *see also* Mar. 1, 2024 Letter from J. Long to E. Snow at 5. In addition, SaveOnSP has also already received from TrialCard nearly 20,000 patient call notes, as well as the results of more than 3,900 Benefits Investigations that TrialCard conducted. *See* Feb. 16, 2024 Letter from K. Brisson to H. Miles at 1. JJHCS will not otherwise search for or produce documents responsive to this Request.

**Request No. 88**

All Documents and Communications regarding any methods that JJHCS used to identify CarePath patients on accumulators, maximizers, or SaveOnSP-advised health plans.

**Response to Request No. 88**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated

10

in JJHCS's Objections to Definitions.  JJHCS further objects to this request as duplicative of Requests No. 8, and JJHCS incorporates by reference its response to that Request.

To the extent documents responsive to this Request are also responsive to Request No. 8, JJHCS has already agreed to produce, subject to prior objections and the Court's orders, "non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period" and has agreed to run SaveOnSP related search terms over the files of twenty-five custodians.  *See* JJHCS's Responses and Objections to Defendant's First Request for Production of Documents; *see also* Mar. 1, 2024 Letter from J. Long to E. Snow at 5.  ██████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████    To the extent that non-privileged, responsive "enforcement" policies exist, JJHCS has produced them, and JJHCS has offered to run additional search terms to identify further "enforcement" documents.  *See* May 24, 2024 Letter from J. Long to E. Snow at 2.  To the extent this Request seeks documents and communications related to CAP (or predecessor programs), JJHCS has already or will produce them, consistent with the terms of the Court's February 6, 2024 Order and the parties' subsequent negotiations.  *See, e.g.*, Apr. 9, 2024 Letter from I. Eppler to E. Snow at 3.  JJHCS will not otherwise search for or produce documents responsive to this Request.

**Request No. 89**

All Documents and Communications regarding any methods that JJHCS considered using to identify CarePath patients on accumulators, maximizers, or SaveOnSP-advised health plans.

**Response to Request No. 89**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all"

documents and communications regarding a broad subject matter.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this request as duplicative of Requests No. 8, and JJHCS incorporates by reference its response to that Request.

To the extent documents responsive to this Request are also responsive to Request No. 8, JJHCS has already agreed to produce, subject to prior objections and the Court's orders, "non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period" and has agreed to run SaveOnSP related search terms over the files of twenty-five custodians.  *See* JJHCS's Responses and Objections to Defendant's First Request for Production of Documents; *see also* Mar. 1, 2024 Letter from J. Long to E. Snow at 5.  ██████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████   To the extent that non-privileged, responsive "enforcement" policies exist, JJHCS has produced them, and JJHCS has offered to run additional search terms to identify further "enforcement" documents.  *See* May 24, 2024 Letter from J. Long to E. Snow at 2.  To the extent that this Request seeks documents and communications regarding methods that JJHCS only considered using, it is barred by Judge Wolfson's rulings that "[w]hat matters for purposes of liability and damages are not the changes that Plaintiff contemplated implementing, but actual changes that occurred," Feb. 6, 2024 Order, Dkt. No. 192, at 19, and that "Defendant does not

require communications as to why Plaintiff or J&J did not make certain decisions or vice versa; rather, it will need evidence as to actual changes that occurred," Apr. 25, 2024 Order, Dkt. No. 264, at 5. To the extent this Request seeks documents and communications related to CAP (or predecessor programs), JJHCS has already or will produce them, consistent with the terms of the Court's February 6, 2024 Order and the parties' subsequent negotiations. *See, e.g.*, Apr. 9, 2024 Letter from I. Eppler to E. Snow at 3. JJHCS will not otherwise search for or produce documents responsive to this Request.

### Request No. 90

All Documents and Communications regarding any steps that JJHCS took regarding copay assistance payments to CarePath patients that JJHCS identified or suspected as being on accumulators, maximizers, or SaveOnSP-advised health plans, including without limitation steps to reduce such payments, claw back such payments, remove such patients from CarePath, or provide alternative financial assistance to such patients.

### Response to Request No. 90

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this request as duplicative of Requests No. 8, and JJHCS incorporates by reference its response to that Request.

To the extent documents responsive to this Request are also responsive to Request No. 8, JJHCS has already agreed to produce, subject to prior objections and the Court's orders, "non-privileged documents and communications in its possession with or regarding SaveOnSP from the

13

relevant Time Period" and has agreed to run SaveOnSP related search terms over the files of twenty-five custodians. *See* JJHCS's Responses and Objections to Defendant's First Request for Production of Documents; *see also* Mar. 1, 2024 Letter from J. Long to E. Snow at 5. ████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████    To the extent that non-privileged, responsive "enforcement" policies exist, JJHCS has produced them, and JJHCS has offered to run additional search terms to identify further "enforcement" documents. *See* May 24, 2024 Letter from J. Long to E. Snow at 2. To the extent this Request seeks documents and communications related to CAP (or predecessor programs), JJHCS has already or will produce them, consistent with the terms of the Court's February 6, 2024 Order and the parties' subsequent negotiations. *See, e.g.*, Apr. 9, 2024 Letter from I. Eppler to E. Snow at 3. JJHCS will not otherwise search for or produce documents responsive to this Request.

**Request No. 91**

All Documents and Communications regarding any steps that JJHCS considered taking regarding copay assistance payments to CarePath patients on accumulators, maximizers, or SaveOnSP-advised health plans, including without limitation steps to reduce such payments, claw back such payments, remove such patients from CarePath, or provide alternative financial assistance to such patients.

**Response to Request No. 91**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege.

JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this request as duplicative of Requests No. 8, and JJHCS incorporates by reference its response to that Request.

To the extent documents responsive to this Request are also responsive to Request No. 8, JJHCS has already agreed to produce, subject to prior objections and the Court's orders, "non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period" and has agreed to run SaveOnSP related search terms over the files of twenty-five custodians. *See* JJHCS's Responses and Objections to Defendant's First Request for Production of Documents; *see also* Mar. 1, 2024 Letter from J. Long to E. Snow at 5. ███████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████ To the extent that non-privileged, responsive "enforcement" policies exist, JJHCS has produced them, and JJHCS has offered to run additional search terms to identify further "enforcement" documents. *See* May 24, 2024 Letter from J. Long to E. Snow at 2. To the extent that this Request seeks documents and communications regarding methods that JJHCS only considered using, it is barred by Judge Wolfson's rulings that "[w]hat matters for purposes of liability and damages are not the changes that Plaintiff contemplated implementing, but actual changes that occurred," Feb. 6, 2024 Order, Dkt. No. 192, at 19, and that "Defendant does not require communications as to why Plaintiff or J&J did not make certain decisions or vice versa; rather, it will need evidence as to actual changes that occurred," Apr. 25, 2024 Order, Dkt. No. 264, at 5. To the extent this Request seeks documents and communications related to CAP (or predecessor programs), JJHCS has already or will produce them, consistent with the terms of the

Court's February 6, 2024 Order and the parties' subsequent negotiations.  *See, e.g.*, Apr. 9, 2024

Letter from I. Eppler to E. Snow at 3.  JJHCS will not otherwise search for or produce documents

responsive to this Request.

Dated: June 10, 2024

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:      /s/Jeffrey J. Greenbaum
         JEFFREY J. GREENBAUM
         KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

16

# APPENDIX A

ACCREDO00006273
ACCREDO00011834
ACCREDO00019957
ACCREDO00019968
ACCREDO00022446
ACCREDO00022995
MIGH000014
SOSP_0000061
SOSP_0014806
SOSP_0029085
SOSP_0029592
SOSP_0053837
SOSP_0054166
SOSP_0058302
SOSP_0059982
SOSP_0076294
SOSP_0076301
SOSP_0076310
SOSP_0079867
SOSP_0079870
SOSP_0081786
SOSP_0086094
SOSP_0089579
SOSP_0091898
SOSP_0122928
SOSP_0157104
SOSP_0157125
SOSP_0162987
SOSP_0261653
SOSP_0261654
SOSP_0262295
SOSP_0272882
SOSP_0274561
SOSP_0307960
SOSP_0315578
SOSP_0315944
SOSP_0317739
SOSP_0325550
SOSP_0326508

SOSP_0331032
SOSP_0352545
SOSP_0353410
SOSP_0387608
SOSP_0391775
SOSP_0407317
SOSP_0408779
SOSP_0409971
SOSP_0423114
SOSP_0445843
SOSP_0450576
SOSP_0472221
SOSP_0508643
SOSP_0511419
SOSP_0515649
SOSP_0521309
SOSP_0550070
SOSP_0556254
SOSP_0556256
SOSP_0557687
SOSP_0558495
SOSP_0587225
SOSP_0587229
SOSP_0591965
SOSP_0598389
SOSP_0607845
SOSP_0612757
SOSP_0615916
SOSP_0676161
SOSP_0676710
SOSP_0677260
SOSP_0684967
SOSP_0685449
SOSP_0685665
SOSP_0685667
SOSP_0694247
SOSP_0695753
SOSP_0703265
SOSP_0707729
SOSP_0721377
SOSP_0737745

SOSP_0741907
SOSP_0757654
SOSP_0759120
SOSP_0759420
SOSP_0759749
SOSP_0767749
SOSP_0774805
SOSP_0794313
SOSP_0813540
SOSP_0814054
SOSP_0828860
SOSP_0851109
SOSP_0854270
SOSP_0854367
SOSP_0857490
SOSP_0859169
SOSP_0859572
SOSP_0861633
SOSP_0871091
SOSP_0877166
SOSP_0878913
SOSP_0880855
SOSP_0880859
SOSP_0880861
SOSP_0880865
SOSP_0880868
SOSP_0880870
SOSP_0880873
SOSP_0884139
SOSP_0932805
SOSP_0932823
SOSP_0934905
SOSP_0939207
SOSP_0940041
SOSP_0942726
SOSP_0943232
SOSP_0944308
SOSP_0944587
SOSP_1028357
SOSP_1032705
SOSP_1034736

SOSP_1038106
SOSP_1040397
SOSP_1045896
SOSP_1049360
SOSP_1052472
SOSP_1053908
SOSP_1068121
SOSP_1069471
SOSP_1069472
SOSP_1095525
SOSP_1114963
SOSP_1116056
TRIALCARD_00008915
TRIALCARD_00008916
TRIALCARD_00008917
TRIALCARD_00008918
TRIALCARD_00008919
TRIALCARD_00008920
TRIALCARD_00008921
TRIALCARD_00008922
TRIALCARD_00008923
TRIALCARD_00008924
TRIALCARD_00008925
TRIALCARD_00008926
TRIALCARD_00008927
TRIALCARD_00008928
TRIALCARD_00008929
TRIALCARD_00008930

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036

*Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JKS) (CLW) <br><br> **PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S EIGHTH REQUEST FOR PRODUCTION OF DOCUMENTS** |

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing.  It reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action.  The following responses and objections are based upon information known at this time.

1.    JJHCS objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the First Amendment privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.  The inadvertent production by JJHCS of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.    JJHCS objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response JJHCS makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek documents or information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.    JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.    JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.    JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.    JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" documents where a subset of documents would be sufficient to provide the relevant information.

13.    JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.    JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition of the term as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities" or purports to include entities and persons acting or purporting to act on

behalf of or under the control of entities other than JJHCS, including Janssen Biotech, Inc.,

Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

2.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to

include attorneys and accountants whose documents and communications may be outside of

JJHCS's possession, custody, and control.  JJHCS further objects to the definition of the term as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

purports to include "any and all predecessors and successors in interest, assignees, parents,

subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers,

employees, committees, attorneys, accountants, and all persons or entities" or purports to include

entities and persons acting or purporting to act on behalf of or under the control of entities other

than JJHCS, including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical,

Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc.,

Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen

Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen

BioPharma LLC, Janssen Research & Development LLC, and TrialCard.  JJHCS further objects

to this definition of "JJHCS" to the extent it purports to include "TrialCard and any other vendor

over whom JJHCS has legal contract of documents."

3.      JJHCS objects to the definition of the term "CarePath" to the extent the term is

used to seek documents and communications in the possession of entities other than JJHCS.

JJHCS further objects to this definition to the extent that the definition of the term "CarePath" to

the extent it purports to include the term "Janssen" for the reasons stated in JJHCS's Objections

to Definitions.

4.      JJHCS objects to the definition of the term "Lash Group" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition of the term as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc."

5.      JJHCS objects to the inclusion of the term "TrialCard" to the extent that neither Request No. 92 nor Request No. 93 references it.  JJHCS further objects to the definition of the term "TrialCard" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc."  JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

## OBJECTIONS TO THE TIME PERIOD

1.      JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome, and not relevant to the subject matter of this Action to the extent they call for documents from after November 7, 2023.  Unless otherwise noted, JJHCS will only provide documents from April 1, 2016 through November 7, 2023 (the "Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

### Request No. 92

All final Master Service Agreements (MSAs) with third parties involved the [sic] administration,    management,    design,    and    marketing    of    CarePath,    including



### Response to Request No. 92

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant

to any claim or defense in this Action to the extent it seeks documents unrelated to SaveOnSP and

6

co-pay assistance provided through the CarePath program and Master Service Agreements with multiple entities whose relevance has not been established. To the extent that documents responsive to this Request are also responsive to Request No. 8, JJHCS has already agreed to produce, subject to prior objections, "all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period." *See* JJHCS's Responses and Objections to Defendant's First Request for Production of Documents. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

JJHCS further objects to this Request to the extent it uses the term "CarePath" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it uses the term "Lash Group" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request on the ground that the phrase "third parties involved the [sic] administration, management, design, and marketing of CarePath" is vague and ambiguous. JJHCS further objects to this Request to the extent that "third parties involved the [sic] administration, management, design, and marketing of CarePath" mischaracterizes the role, if any, of the entities listed in Requests Nos. 92(a)-(gg). JJHCS further objects to this Request to the extent that the terms listed in Request Nos. 92(a)-(gg) are vague, ambiguous, or incorrect.

Subject to the foregoing objections, and based on its investigation conducted to date, JJHCS will produce non-privileged final Master Service Agreements between JJHCS and the entities set forth in Request Nos. 92(a)-(f), 92(j), 92(v), and 92(bb) from the Time Period

concerning co-pay assistance provided through the CarePath program, to the extent that such documents exist, are in JJHCS's possession, can be located after a reasonable search, and have not already been produced.

Subject to the foregoing objections, and based on its investigation conducted to date, as to Request No. 92(x), JJHCS will produce non-privileged final Master Service Agreements relating to business consulting between JJHCS and ██████████ from the Time Period concerning co-pay assistance provided through the CarePath program, to the extent that such documents exist, are in JJHCS's possession, can be located after a reasonable search, and have not already been produced.  JJHCS otherwise objects to Request No. 92(x) to the extent it seeks premature expert discovery prior to the schedule set in the Case Management Order, or documents or information protected from disclosure by Federal Rules of Civil Procedure 26(b)(3)(A), 26(b)(3)(B), 26(b)(4)(B), 26(b)(4)(C) or 26(b)(4)(D).    JJHCS will not otherwise search for or produce documents responsive to Request Nos. 92(x).

JJHCS objects to Request Nos. 92(y) and 92(gg) because they seek premature expert discovery prior to the schedule set in the Case Management Order, or documents or information protected from disclosure by Federal Rules of Civil Procedure 26(b)(3)(A), 26(b)(3)(B), 26(b)(4)(B), 26(b)(4)(C) or 26(b)(4)(D).  The ██████████████████████ have been retained as experts in this matter by counsel for JJHCS.  JJHCS will not search for or produce documents responsive to Request Nos. 92(y) and 92(gg).

JJHCS objects to Request Nos. 92(g)-(i); 92(k)-(u), 92(w), 92(z), 92(aa), 92(cc)-(ff) as irrelevant to any claim or defense in this Action because they seek information unrelated to SaveOnSP and this lawsuit.  JJHCS will not search for or produce documents responsive to Request Nos. 92(g)-(i), 92(k)-(u), 92(w), 92(z), 92(aa), 92(cc)-(ff).

8

**Request No. 93**

Documents sufficient to show all final contracts, including Work Orders (WOs), Statements of Work (SOWs), and Change Orders (COs), with third parties involved the [sic] administration, management, design, and marketing of CarePath, including



**Response to Request No. 93**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to SaveOnSP and co-pay assistance provided through the CarePath program and final contracts, including Work

Orders (WOs), Statements of Work (SOWs), and Change Orders (COs), with multiple entities whose relevance has not been established. To the extent that documents responsive to this Request are also responsive to Request No. 8, JJHCS has already agreed to produce, subject to prior objections, "all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period." *See* JJHCS's Responses and Objections to Defendant's First Request for Production of Documents. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

JJHCS further objects to this Request to the extent it uses the term "CarePath" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it uses the term "Lash Group" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request on the ground that the phrase "third parties involved the [sic] administration, management, design, and marketing of CarePath" is vague and ambiguous. JJHCS further objects to this Request to the extent that "third parties involved the [sic] administration, management, design, and marketing of CarePath" mischaracterizes the role, if any, of the entities listed in Requests Nos. 93(a)-(gg). JJHCS further objects to this Request on the ground that each of the terms listed in Request Nos. 93(a), Request Nos. 93(c)-(gg) is vague and ambiguous.

Subject to the foregoing objections, and based on its investigation conducted to date, JJHCS will produce non-privileged documents sufficient to show final contracts between JJHCS and the entities set forth in Request Nos. 93(a)-(f), 93(j), 93(v), and 93(bb) from the Time Period

concerning co-pay assistance provided through the CarePath program, to the extent that such documents exist, are in JJHCS's possession, can be located after a reasonable search, and have not already been produced.

Subject to the foregoing objections, and based on its investigation conducted to date, as to Request No. 93(x), JJHCS will produce non-privileged final Master Service Agreements relating to business consulting between JJHCS and ███████████ from the Time Period concerning co-pay assistance provided through the CarePath program, to the extent that such documents exist, are in JJHCS's possession, can be located after a reasonable search, and have not already been produced. JJHCS otherwise objects to Request No. 93(x) to the extent it seeks premature expert discovery prior to the schedule set in the Case Management Order, or documents or information protected from disclosure by Federal Rules of Civil Procedure 26(b)(3)(A), 26(b)(3)(B), 26(b)(4)(B), 26(b)(4)(C) or 26(b)(4)(D). JJHCS will not otherwise search for or produce documents responsive to Request No. 93(x).

JJHCS objects to Request Nos. 93(y) and 93(gg) because they seek premature expert discovery prior to the schedule set in the Case Management Order, or documents or information protected from disclosure by Federal Rules of Civil Procedure 26(b)(3)(A), 26(b)(3)(B), 26(b)(4)(B), 26(b)(4)(C) or 26(b)(4)(D). ██████████████████████████ have been retained as experts in this matter by counsel for JJHCS. JJHCS will not search for or produce documents responsive to Request Nos. 93(y) and 93(gg).

JJHCS objects to Request Nos. 93(g)-(i), 93(k)-(u), 93(w), 93(z), 93(aa), 93(cc)-(ff) as irrelevant to any claim or defense in this Action because they seek information unrelated to SaveOnSP and this lawsuit. JJHCS will not search for or produce documents responsive to Request Nos. 93(g)-(i), 93(k)-(u), 93(w), 93(z), 93(aa), 93(cc)-(ff).

Dated: July 1, 2024

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:     /s/Jeffrey J. Greenbaum
        JEFFREY J. GREENBAUM
        KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036

*Attorneys for Plaintiff Johnson & Johnson Health Care
Systems Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.,<br><br>Plaintiff,<br><br>v.<br><br>SAVE ON SP, LLC,<br><br>Defendant. | Civil Action No. 22-2632 (JKS) (CLW)<br><br>**PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S NINTH REQUEST FOR PRODUCTION OF DOCUMENTS** |

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing.  It reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action.  The following responses and objections are based upon information known at this time.

1.      JJHCS objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the First Amendment privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.  The inadvertent production by JJHCS of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.      JJHCS objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response JJHCS makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek documents or information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.      JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.     JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.     JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.     JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" documents where a subset of documents would be sufficient to provide the relevant information.

13.     JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.      JJHCS objects to the definition of the term "Appeals Process" as vague and ambiguous and construes this term to refer to benefits investigations that TrialCard performed to determine whether patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan.

2.      █████████████████████████████████████████████████
███████████████████████████████████████████████████████

3.      JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS beyond

3

the scope of the Court's July 15, 2024 Letter Order. JJHCS further objects to the definition of the term as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than JJHCS, including Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

4.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to include attorneys and accountants whose documents and communications may be outside of JJHCS's possession, custody, and control. JJHCS further objects to the definition of the term as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than JJHCS, including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, Janssen Research & Development LLC, and TrialCard. JJHCS further objects to this definition of "JJHCS" to the extent it purports to include "TrialCard and any other vendor over whom JJHCS has legal contract of documents."

4

5.     JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and as irrelevant to the extent it purports to include entities other than those responsible for administering CarePath during the relevant Time Period.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.  JJHCS further objects on the ground that the phrase "administer, in whole or in part, CarePath" is vague and ambiguous.  JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

6.     JJHCS objects to the definition of the term "CarePath" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this definition to the extent that the definition of the term "CarePath" to the extent it purports to include the term "Janssen" for the reasons stated in JJHCS's Objections to Definitions.

7.     JJHCS objects to the definition of the term "Lash Group" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition of the term as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc."

5

8.      JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc."  JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

## OBJECTIONS TO THE TIME PERIOD

1.      JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome, and not relevant to the subject matter of this Action to the extent they call for documents from after November 7, 2023.  Unless otherwise noted, JJHCS will only provide information from April 1, 2016 through November 7, 2023 (the "Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

### Request No. 94

Documents sufficient to show business plans reflecting the total Co-Pay Spend, both anticipated and actual, for each Janssen Drug.

### Response to Request No. 94

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents related to any drug manufactured or sold by Janssen that is not covered by CarePath or otherwise implicated in SaveOnSP's scheme to misuse copay assistance funds.  JJHCS further objects to this Request to the extent it uses the term "Janssen" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as duplicative of Requests Nos. 28(k), (m) and 29(a)–(c), and JJHCS incorporates by reference its responses to those Requests.  JJHCS further objects to the

6

Request to the extent it seeks financial documents that the Court, in its February 6, 2024 and April

25, 2024 orders, has ruled are outside the scope of discovery in this case.  *See* Dkt. No 264 at 3–

9; Dkt. No. 192 at 15–24.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██  ████████████  *see also* July 24, 2023 Ltr. From H. Sandick to A. Dunlap at 2, 5.  JJHCS

will not otherwise search for or produce documents and communications responsive to this

Request.

**Request No. 95**

All Documents and Communications regarding any expenses incurred by JJHCS to mitigate any purported harm caused by SaveOnSP to JJHCS, including the expenditures of resources to identify members of plans advised by SaveOnSP.

**Response to Request No. 95**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all"

documents and communications regarding a broad subject matter.  JJHCS further objects to this

Request to the extent it seeks information that is exempt from discovery and protected from

disclosure by any privilege.  JJHCS further objects to this Request to the extent it uses the term

"JJHCS" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession from the Time Period sufficient to show the expenses incurred by JJHCS to identify

patients enrolled in the SaveOnSP Program, to the extent such documents exist and can be located

after a reasonable search.  JJHCS will not otherwise search for or produce documents and

communications responsive to this Request.

**Request No. 96**

All Documents and Communications regarding setting $9,100 as the maximum benefit for Copay Assistance for any Janssen Drug, including any decision to not publish that maximum benefit publicly.

**Response to Request No. 96**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents related to any drug manufactured or sold by Janssen that is not covered by CarePath or otherwise implicated in SaveOnSP's scheme to misuse copay assistance funds. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as duplicative of Requests Nos. 29(a) and 31, and JJHCS incorporates by reference its responses to those Requests.

█████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████ JJHCS has also already agreed to search Savaria Harris's and Jennifer De Camara's communications with third parties, from January 1, 2021 through November 7, 2023, for documents hitting on the search term ($6,000 OR $6k OR 6k OR $9,100 OR $8,900 OR (OOP) OR (out-of-pocket)) AND (Stelara OR Tremfya). *See* Mar. 1, 2024 Ltr. from J. Long to E. Snow at 3–4. And JJHCS has already produced an extensive amount of documents relating to the CAP program from its agreed-upon custodians, including responsive, non-privileged documents hitting on the term (STELARA* OR TREMFYA* OR

CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate), among several other search terms. Subject to the foregoing objections, JJHCS is willing to meet and confer on a narrow supplemental search that targets documents and communications responsive to this Request, but JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

**Request No. 97**

All Documents and Communications regarding the Appeals Process.

**Response to Request No. 97**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it uses the term "Appeals Process" for the reasons stated in JJHCS's Objections to Definitions. As stated therein, JJHCS will construe that term as referring to the benefits investigations that TrialCard performed to determine whether patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan. JJHCS further objects to this Request as duplicative of Requests Nos. 58 and 59, and JJHCS incorporates by reference its responses to those Requests.

SaveOnSP has already received from TrialCard the results of over 4,800 benefits investigations that TrialCard performed to determine whether patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan. To the extent this Request seeks other documents and communications related to the identification of patients, through the CAP program,

9

as being in any such plan, JJHCS has already produced an extensive amount of documents relating to the CAP program from its agreed-upon custodians, including responsive, non-privileged documents hitting on the search term ("CAPa" OR "CAPm" OR "adjustment program") AND (SaveOnSP OR SaveOn OR "SaveOn SP" OR "Save OnSP" OR Save-On OR SOSP OR accumulat* OR maximiz*), among several other search terms.  JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

Dated: July 22, 2024

                                SILLS CUMMIS & GROSS P.C.
                                One Riverfront Plaza
                                Newark, New Jersey 07102
                                (973) 643-7000

                                By:     /s/Jeffrey J. Greenbaum
                                        JEFFREY J. GREENBAUM
                                        KATHERINE M. LIEB

                                PATTERSON BELKNAP WEBB & TYLER LLP
                                Adeel A. Mangi
                                Harry Sandick (admitted *pro hac vice*)
                                George LoBiondo
                                1133 Avenue of the Americas
                                New York, New York 10036
                                (212) 336-2000

                                *Attorneys for Plaintiff*
                                *Johnson & Johnson Health Care Systems Inc.*

*Draft*
*PRIVILEGED & CONFIDENTIAL*
*ATTORNEY WORK PRODUCT*

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036

*Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.,<br><br>Plaintiff,<br><br>v.<br><br>SAVE ON SP, LLC,<br><br>Defendant. | Civil Action No. 22-2632 (JKS) (CLW)<br><br>**PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S TENTH REQUEST FOR PRODUCTION OF DOCUMENTS** |

**GENERAL OBJECTIONS**

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing. It reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action. The following responses and objections are based upon information known at this time.

1.      JJHCS objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the First Amendment privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. The inadvertent production by JJHCS of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.      JJHCS objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response JJHCS makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek documents or information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.    JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.    JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.    JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.    JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" documents where a subset of documents would be sufficient to provide the relevant information.

13.    JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

**OBJECTIONS TO DEFINITIONS**

1.    JJHCS objects to the definition of the term "Appeals Process" as vague and ambiguous and construes this term to refer to benefits investigations that TrialCard performed to determine whether patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan.

2.    JJHCS objects to the definition of "Co-Pay Spend" to the extent the definition of that term purports to characterize the meaning of "Co-Pay Spend" as used in JJHCS_00230997.

3.    JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS beyond

the scope of the Court's July 15, 2024 Letter Order.  JJHCS further objects to the definition of

the term as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it purports to include "any and all predecessors and successors in interest, assignees,

parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors,

officers, employees, committees, attorneys, accountants, and all persons or entities" or purports

to include entities and persons acting or purporting to act on behalf of or under the control of

entities other than JJHCS, including Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen

Products, LP, or Actelion Pharmaceuticals U.S., Inc.

      4.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to

include attorneys and accountants whose documents and communications may be outside of

JJHCS's possession, custody, and control.  JJHCS further objects to the definition of the term as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

purports to include "any and all predecessors and successors in interest, assignees, parents,

subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers,

employees, committees, attorneys, accountants, and all persons or entities" or purports to include

entities and persons acting or purporting to act on behalf of or under the control of entities other

than JJHCS, including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical,

Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc.,

Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen

Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen

BioPharma LLC, Janssen Research & Development LLC, and TrialCard.  JJHCS further objects

to this definition of "JJHCS" to the extent it purports to include "TrialCard . . . and any other

entity to the extent that any J&J entity has legal control over [their] documents."

5.      JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and as irrelevant to the extent it purports to include entities other than those responsible for administering CarePath during the relevant Time Period.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.  JJHCS further objects on the ground that the phrase "administer, in whole or in part, CarePath" is vague and ambiguous.  JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

6.      JJHCS objects to the definition of the term "CarePath" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this definition to the extent that the definition of the term "CarePath" to the extent it purports to include the term "Janssen" for the reasons stated in JJHCS's Objections to Definitions.

7.      JJHCS objects to the definition of the term "Lash Group" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to the definition of the term as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc."

5

8.      JJHCS objects to the definition of the term "Patient" to the extent that it purports to include the term "CarePath" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this definition to the extent it purports to include the term "Janssen Drug," a term that is not defined in SaveOnSP's Definitions.

9.      JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc."  JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

<u>**OBJECTIONS TO THE TIME PERIOD**</u>

1.      JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome, and not relevant to the subject matter of this Action to the extent they call for documents from after November 7, 2023.  Unless otherwise noted, JJHCS will only provide information from April 1, 2016 through November 7, 2023 (the "Time Period").

<u>**SPECIFIC RESPONSES AND OBJECTIONS**</u>

<u>**Request No. 98**</u>

███████████████████████████████████████████████████
███████████████████████████████████████████████.

<u>**Response to Request No. 98**</u>

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this

Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege, including, but not limited to, the First Amendment privilege, the attorney-client privilege, and the work-product doctrine. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP. JJHCS further objects to this Request to the extent that it calls for documents and communications in the possession of non-JJHCS entities in the Johnson & Johnson family of companies and are not within the scope of the Court's July 15, 2024 Letter Order. JJHCS further objects to this Request, which calls for documents and communications regarding a working group that existed to oversee advocacy and lobbying efforts related to copay assistance diversion programs, as duplicative of Request Nos. 8, 20, 21, 77, and 78, and JJHCS incorporates by reference its responses to those Requests.

To the extent that documents responsive to this Request are also responsive to Request No. 8, JJHCS has already produced or agreed to produce, subject to prior objections, "all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period." *See* JJHCS's Responses and Objections to Defendant's First Request for Production of Documents. To the extent that documents responsive to this Request are also responsive to Request No. 20, JJHCS has already produced or agreed to produce, subject to prior objections, "studies, reports, and publications that JJHCS has funded or supported regarding accumulator and maximizer programs generally, as well as internal communications about such documents." *See* Feb. 17, 2023 Letter from A. LoMonaco to M. Nelson. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 99**

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

**Response to Request No. 99**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications regarding other accumulators unrelated to SaveOnSP. JJHCS further objects to this Request to the extent that it calls for documents and communications in the possession of non-JJHCS entities in the Johnson & Johnson family of companies and are not within the scope of the Court's July 15, 2024 Letter Order.

Subject to the foregoing objections, and to the extent that documents responsive to this Request are also responsive to Request No. 8, JJHCS has already produced or agreed to produce, subject to prior objections, "all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period." *See* JJHCS's Responses and Objections to Defendant's First Request for Production of Documents. ███████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████ JJHCS will not search for or produce additional documents responsive to this Request.

**Request No. 100**

Documents sufficient to show when and how JJHCS came to understand that the May-Not-Use Provision purportedly bars patients on Accumulators, Maximizers, or SaveOnSP-advised plans from participating in CarePath.

**Response to Request No. 100**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it uses the term "CarePath" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent that it is duplicative of Request Nos. 8, 12, 51, and 54, and JJHCS incorporates by reference its responses to those Requests.

JJHCS "already has produced non-privileged, responsive documents concerning the '[m]eaning' of the 'May-Not-Use Provision' for the period April 1, 2016 to November 7, 2023" and "will produce documents reflecting the 'drafting' or 'meaning' of the 'May-Not-Use Provision'" for the period from January 1, 2009 to April 1, 2016, "subject to the parties' agreement on appropriate search parameters." *See* June 14, 2024 Ltr. from J. Long to E. Snow at 1. Additionally, JJHCS has already agreed to produce, in response to SaveOnSP's Request No. 8 and subject to prior objections, "all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period." Accordingly, JJHCS will not search for or produce additional documents and communications responsive to this Request.

**Request No. 101**

All Documents and Communications from before January 1, 2022 which reflect JJHCS's alleged understanding that the May-Not-Use Provision bars patients on Accumulators,

Maximizers, or SaveOnSP-advised plans from participating in CarePath.

**Response to Request No. 101**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it uses the term "CarePath" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request to the extent that it is duplicative of Request Nos. 8, 12, 51, and 54, and JJHCS incorporates by reference its responses to those Requests.

JJHCS "already has produced non-privileged, responsive documents concerning the '[m]eaning' of the 'May-Not-Use Provision' for the period April 1, 2016 to November 7, 2023" and "will produce documents reflecting the 'drafting' or 'meaning' of the 'May-Not-Use Provision'" for the period from January 1, 2009 to April 1, 2016, "subject to the parties' agreement on appropriate search parameters."  *See* June 14, 2024 Ltr. from J. Long to E. Snow at 1. Additionally, JJHCS has already agreed to produce, in response to SaveOnSP's Request No. 8 and subject to prior objections, "all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period."  Accordingly, JJHCS will not search for or produce documents and communications responsive to this Request.

Dated: July 31, 2024

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By: /s/Jeffrey J. Greenbaum
   JEFFREY J. GREENBAUM
   KATHERINE M. LIEB

PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

# Exhibit 2

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Thursday, July 18, 2024 4:21 PM
**To:** Matthew Nussbaum <mnussbaum@selendygay.com>; Mangi, Adeel A. (x2563)
<aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008)
<globiondo@pbwt.com>; Eppler, Ian (x2205) <ieppler@pbwt.com>; Chefitz, Jacob (x2474)
<jchefitz@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com
<jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>;
Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah
Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; Galli, Sabrina M.
<SGalli@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

Matt,

Thanks again for your email on Friday. We still haven't heard back from you on the enclosed letters
—despite SaveOnSP sending JJHCS scores of offensive letters in the same period, including four
yesterday alone. We understand that SaveOnSP will respond to our June 21 and June 25 letters this
week, and look forward to conferring promptly on any remaining disputes between the parties.

As you know, in our June 28 letter, among other issues, we requested that you add Leslie Kauffman
as a custodian based on her central role in SaveOnSP's efforts to evade detection by drug
manufacturers. SaveOnSP has produced numerous documents demonstrating that Ms. Kauffman
was involved in (among other relevant subjects) monitoring changes to manufacturer terms and
conditions, providing instructions to member services representatives to avoid manufacturer
detection, and relaying information on these subjects to SaveOnSP's upper management. The
documents that SaveOnSP has produced, moreover, make apparent that Ms. Kauffman's custodial
files contain important and responsive documents that have not been produced to us from other
custodians. ███████████████████████████████████



In an effort to reach agreement on this issue, and subject to agreement on appropriate search terms, JJHCS is prepared to add Joseph Incelli as a custodian, subject to SaveOnSP's agreement to add Leslie Kauffman as a document custodian.

Please let us know if SaveOnSP agrees to this proposal by July 23, 2024.  If not, please provide your availability to confer on July 24 or 25, 2024.

Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jlong@pbwt.com**

---

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Friday, July 12, 2024 6:45 PM
**To:** Matthew Nussbaum <mnussbaum@selendygay.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Eppler, Ian (x2205) <ieppler@pbwt.com>; Chefitz, Jacob (x2474) <jchefitz@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; Galli, Sabrina M. <SGalli@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

Matt,

Thanks for your email, and we look forward to receiving SaveOnSP's responses to our June 21 and

June 25 letters next week.  As you know, by then, both will be just shy of a month old.  Can you confirm when SaveOnSP will respond to the balance of our correspondence, including the June 28 letter enclosed here?

We also look forward to receiving SaveOnSP's forthcoming production of adherence data, which you represented would be in a "forthcoming production" on April 16.  Please let us know if SaveOnSP's intended production date slips further.  As to SaveOnSP's forthcoming Teams production, SaveOnSP "anticipated" that the entirety of its Teams production would "take about a month" on June 20, as part of the parties' agreement.  You now state that SaveOnSP is "in the process of preparing our first rolling Teams production."  When can we expect the balance?

Finally, we anticipate providing a narrowed proposal as to call recordings early next week.


Best,
Julia


**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jlong@pbwt.com**

---

**From:** Matthew Nussbaum <mnussbaum@selendygay.com>
**Sent:** Friday, July 12, 2024 6:07 PM
**To:** Long, Julia (x2878) <jlong@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Eppler, Ian (x2205) <ieppler@pbwt.com>; Chefitz, Jacob (x2474) <jchefitz@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; Galli, Sabrina M. <SGalli@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)


🟨**External: Think before you click.**🟨


Julia,
Thank you for your email. We look forward to your responses to the letters we referenced.

SaveOn intends to produce the relevant adherence data next week and the Johnson and Leger documents by the end of this month. We are in the process of preparing our first rolling Teams production and will update you when we have more information on when we will be able to make that production.

SaveOn intends to respond to both J&J's June 21 letter, which requests an extension of the discovery period, ███████████████████████████████████████████████████ ████████████████████████ As to the remaining letters, SaveOn continues to investigate the issues raised and will respond when we have finished our investigations. Regarding call recordings, you stated that J&J would provide a narrowed proposal this week. *See* July 3, 2024 Email from I. Eppler to M. Nussbaum. Please let us know when you will provide that proposal. Thank you,

Matt

**Matthew Nussbaum**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
--------------------------------------------
+1 212.390.9062  [O]
+1 856.534.8606  [M]

---

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Thursday, July 11, 2024 6:11 PM
**To:** Hannah Miles <hmiles@selendygay.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Eppler, Ian (x2205) <ieppler@pbwt.com>; Chefitz, Jacob (x2474) <jchefitz@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

Hannah,

Thanks for your email.  As you know, we have already acknowledged receipt of four of these letters to let you know we are investigating the issues cited therein.  We will respond to those inquiries as promptly as feasible.  For the avoidance of doubt, we are also in receipt of your June 28 letter on TrialCard custodians, and anticipate responding to that letter on the same timeframe.

Can you confirm when your team will respond to the attached correspondence?  As you will see, most of these pre-date the letters cited in your email.  In addition, we'd appreciate if you could confirm when we'll hear back on the adherence data you referenced in an April 16 email; when we can expect your production of documents from Ms. Johnson's and Ms. Leger's emails; and when you

will commence your rolling productions of threaded Teams messages referenced in Meredith's June 21 email.

Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jlong@pbwt.com**

---

**From:** Hannah Miles <hmiles@selendygay.com>
**Sent:** Thursday, July 11, 2024 5:10 PM
**To:** Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Long, Julia (x2878) <jlong@pbwt.com>; Eppler, Ian (x2205) <ieppler@pbwt.com>; Chefitz, Jacob (x2474) <jchefitz@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>
**Subject:** JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

🟨 **External: Think before you click.**

Counsel,

We requested responses to the attached letters regarding (1) J&J's withholding and redacting documents for relevance; (2) TrialCard's CAP custodians; (3) mitigation documents; and (4) Adam Fein search terms, by July 8. We requested a response to the attached letter regarding PAFA+ by July 3.

Please let us know when you intend to respond.

Best,
Hannah

**Hannah Miles**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: she, her, hers
-----------------------------------------------------
+1 212.390.9055 [O]
+1 347.731.1404  [M]

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

# Exhibit 3

**From:** Kevin Cryan
**Sent:** Thursday, August 15, 2024 11:27 AM
**To:** Matthew Nussbaum <mnussbaum@selendygay.com>; Robinson, Bonita (x2554)
<brobinson@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723)
<hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Arrow, Sara (x2031)
<sarrow@pbwt.com>; Eppler, Ian (x2205) <ieppler@pbwt.com>; Long, Julia (x2878)
<jlong@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>;
~klieb@sillscummis.com <klieb@sillscummis.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>;
Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>;
Wohlforth, E. Evans <EWohlforth@rc.com>; Galli, Sabrina M. <SGalli@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP // Production Deficiencies

Bonnie,

We understand J&J's position is that it will not add Joseph Incelli as a custodian unless SaveOn
agrees to add Leslie Kauffman as a full custodian. For the reasons we have stated previously,
SaveOn declines to add Kauffman as a full custodian. We understand, therefore, that J&J is refusing
to add Incelli as a custodian and that the parties are at impasse on this issue. We're happy to discuss
this issue further on our meet and confer this afternoon.

Best,
Kevin Cryan

**Kevin Cryan**
Law Clerk  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he/him/his
--------------------------------------------
+1 212.390.9373 [O]
+1 332.201.6763 [M]

**From:** Matthew Nussbaum <mnussbaum@selendygay.com>

**Sent:** Thursday, August 8, 2024 6:11 PM
**To:** Robinson, Bonita (x2554) <brobinson@pbwt.com>; Mangi, Adeel A. (x2563)
<aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008)
<globiondo@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; Eppler, Ian (x2205)
<ieppler@pbwt.com>; Long, Julia (x2878) <jlong@pbwt.com>; ~jgreenbaum@sillscummis.com
<jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>; _cg J&J-
SaveOn <JJSaveOn@pbwt.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>;
Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Kevin
Cryan <kcryan@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; Galli, Sabrina M.
<SGalli@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP // Production Deficiencies

Bonnie,

We are in receipt of the below correspondence and intend to respond next week.

Thank you,

Matt

**Matthew Nussbaum**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
------------------------------------------------
+1 212.390.9062  [O]
+1 856.534.8606  [M]

**From:** Robinson, Bonita (x2554) <brobinson@pbwt.com>
**Sent:** Monday, August 5, 2024 5:44 PM
**To:** Kevin Cryan <kcryan@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Eppler,
Ian (x2205) <ieppler@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry
(x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Arrow, Sara
(x2031) <sarrow@pbwt.com>; Long, Julia (x2878) <jlong@pbwt.com>;
~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com
<klieb@sillscummis.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>;
Philippe Selendy <pselendy@selendygay.com>; Wohlforth, E. Evans <Ewohlforth@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP // Production Deficiencies

Kevin and Meredith,

Please see the attached letter.

Best,
Bonnie

**Bonita L. Robinson**
She | Her | Hers
**Patterson Belknap Webb & Tyler LLP**
1133 Avenue of the Americas | New York, NY  10036
T: 212.336.2554
brobinson@pbwt.com | www.pbwt.com

---

**From:** Kevin Cryan <kcryan@selendygay.com>
**Sent:** Thursday, August 1, 2024 9:59 PM
**To:** Robinson, Bonita (x2554) <brobinson@pbwt.com>; Meredith Nelson
<mnelson@selendygay.com>; Eppler, Ian (x2205) <ieppler@pbwt.com>; Mangi, Adeel A. (x2563)
<aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008)
<globiondo@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; Long, Julia (x2878)
<jlong@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>;
~klieb@sillscummis.com <klieb@sillscummis.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>;
Philippe Selendy <pselendy@selendygay.com>; Wohlforth, E. Evans <Ewohlforth@rc.com>
**Subject:** Re: JJHCS v. SaveOnSP // Production Deficiencies

External: Think before you click.

Bonnie,

Please see the attached correspondence.

Best,
Kevin

**Kevin Cryan**
Law Clerk  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he/him/his
- - - - - - - - - - - - - - - - - - - - - - - - - -
+1 212.390.9373  [O]
+1 332.201.6763  [M]

---

**From:** Robinson, Bonita (x2554) <brobinson@pbwt.com>
**Sent:** Thursday, July 25, 2024 3:57:15 PM
**To:** Meredith Nelson <mnelson@selendygay.com>; Kevin Cryan <kcryan@selendygay.com>; Eppler,

Ian (x2205) <ieppler@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; Long, Julia (x2878) <jlong@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>

**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Wohlforth, E. Evans <Ewohlforth@rc.com>

**Subject:** RE: JJHCS v. SaveOnSP // Production Deficiencies

Meredith,

Please see the attached correspondence.

Best,
Bonnie

**Bonita L. Robinson**
She | Her | Hers
**Patterson Belknap Webb & Tyler LLP**
1133 Avenue of the Americas | New York, NY 10036
T: 212.336.2554
brobinson@pbwt.com | www.pbwt.com

---

**From:** Meredith Nelson <mnelson@selendygay.com>
**Sent:** Friday, July 19, 2024 5:13 PM
**To:** Robinson, Bonita (x2554) <brobinson@pbwt.com>; Kevin Cryan <kcryan@selendygay.com>; Eppler, Ian (x2205) <ieppler@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; Long, Julia (x2878) <jlong@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Wohlforth, E. Evans <Ewohlforth@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP // Zulqarnain Call Recordings

**External: Think before you click.**

Counsel,

Please see the attached letter.

Regards,
Meredith

**Meredith Nelson**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: she, her, hers
----------------------------------------------
+1 212.390.9069 [O]
+1 918.200.3148 [M]

---

**From:** Robinson, Bonita (x2554) <brobinson@pbwt.com>
**Sent:** Wednesday, July 17, 2024 6:08 PM
**To:** Kevin Cryan <kcryan@selendygay.com>; Eppler, Ian (x2205) <ieppler@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; Long, Julia (x2878) <jlong@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Wohlforth, E. Evans <Ewohlforth@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP // Zulqarnain Call Recordings

Counsel,

Please see the attached letter.

Best,
Bonnie

**Bonita L. Robinson**
She | Her | Hers
**Patterson Belknap Webb & Tyler LLP**
1133 Avenue of the Americas | New York, NY 10036
T: 212.336.2554
brobinson@pbwt.com | www.pbwt.com

---

**From:** Kevin Cryan <kcryan@selendygay.com>
**Sent:** Monday, July 15, 2024 5:05 PM
**To:** Eppler, Ian (x2205) <ieppler@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; Long, Julia (x2878) <jlong@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Wohlforth, E. Evans <Ewohlforth@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP // JJHCS's Thirteenth Set of RFPs

**External: Think before you click.**

Counsel,

Please find attached SaveOnSP's R&O's to JJHCS's 13th Set of Requests for Production.
Please also see the attached correspondence.

Best,
Kevin Cryan

**Kevin Cryan**
Law Clerk  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he/him/his
--------------------------------------------------
+1 212.390.9373 [O]
+1 332.201.6763 [M]

---

**From:** Kevin Cryan
**Sent:** Tuesday, June 18, 2024 3:50 PM
**To:** Eppler, Ian (x2205) <ieppler@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>;
Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>;
Arrow, Sara (x2031) <sarrow@pbwt.com>; Long, Julia (x2878) <jlong@pbwt.com>;
~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com
<klieb@sillscummis.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>;
Elizabeth Snow <esnow@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>;
Wohlforth, E. Evans <Ewohlforth@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP // JJHCS's Thirteenth Set of RFPs

Ian,

Thank you for sending these re-numbered RFPs. SaveOn agrees that this scrivener's error does
not affect SaveOn's timeline for serving R&Os.

Best,
Kevin

**Kevin Cryan**
Law Clerk  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he/him/his
--------------------------------------------------

+1 212.390.9373 [O]

+1 332.201.6763 [M]

---

**From:** Eppler, Ian (x2205) <ieppler@pbwt.com>
**Sent:** Monday, June 17, 2024 4:51 PM
**To:** Kevin Cryan <kcryan@selendygay.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>;
Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>;
Arrow, Sara (x2031) <sarrow@pbwt.com>; Long, Julia (x2878) <jlong@pbwt.com>;
~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com
<klieb@sillscummis.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>;
Elizabeth Snow <esnow@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>;
Wohlforth, E. Evans <Ewohlforth@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP // JJHCS's Thirteenth Set of RFPs

Kevin,

Please find attached an updated copy of JJHCS's Thirteenth Set of RFPs.

Because JJHCS served its Thirteenth Set of RFPs on Friday, June 14, and this document is a non-substantive correction of a scrivener's error in JJHCS's Thirteenth Set of RFPs that was undertaken at the request of SaveOnSP, we expect that SaveOnSP will serve its Responses and Objections to JJHCS's Thirteenth Set of RFPs by Monday, July 15. *See* Fed. R. Civ. P. 34(b)(2)(A).

Best,
Ian

---

**From:** Kevin Cryan <kcryan@selendygay.com>
**Sent:** Monday, June 17, 2024 3:44 PM
**To:** Eppler, Ian (x2205) <ieppler@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>;
Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>;
Arrow, Sara (x2031) <sarrow@pbwt.com>; Long, Julia (x2878) <jlong@pbwt.com>;
~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com
<klieb@sillscummis.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>;
Elizabeth Snow <esnow@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>;
Wohlforth, E. Evans <Ewohlforth@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP // JJHCS's Thirteenth Set of RFPs

**External: Think before you click.**

Ian,

We are in receipt of J&J's 13th set of RFPs. We noticed that the numbering overlaps with J&J's 12th set of RFPs, which also begin at No. 116.

We assume this was inadvertent; please re-send these 13th RFPs so that they begin with No. 123.

Thank you,
Kevin Cryan

**Kevin Cryan**
Law Clerk  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he/him/his
------------------------------------------
+1 212.390.9373 [O]
+1 332.201.6763 [M]

---

**From:** Eppler, Ian (x2205) <ieppler@pbwt.com>
**Sent:** Friday, June 14, 2024 5:30:32 PM
**To:** Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>
**Cc:** Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; Long, Julia (x2878) <jlong@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>
**Subject:** JJHCS v. SaveOnSP // JJHCS's Thirteenth Set of RFPs

Counsel,

Please find attached JJHCS's Thirteenth Set of Requests for Production of Documents.

Best,
Ian

**Ian D. Eppler**
He | Him | His
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Tel.: 212.336.2205

ieppler@pbwt.com

---

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

---

---

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

---

---

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

---

---

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

---

---

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

# Exhibit 4

**From:** Kevin Cryan
**Sent:** Friday, August 16, 2024 10:22 AM
**To:** Long, Julia (x2878) <jlong@pbwt.com>; Suri, Saniya (x2226) <ssuri@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008 <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Matthew Nussbaum <mnussbaum@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <Ewohlforth@rc.com>; Galli, Sabrina M. <SGalli@rc.com>; Emma Ashe O'Toole <eashe@selendygay.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

Julia,

Thank you for meeting with us yesterday. We write to memorialize that, as discussed on the call, the parties are at impasse regarding adding Joseph Incelli and Norhaan Khalil as custodians.

Regarding Incelli, you stated that—because SaveOn declined to add Leslie Kauffman as a "full" custodian—J&J declined to add Incelli as a custodian at all, confirming SaveOn's earlier correspondence that the parties are at impasse. *See* Aug. 15, 2024 Email from K. Cryan to B. Robinson. Regarding Khalil, we asked if you were willing to reconsider your refusal to add her as a custodian if SaveOn agreed to narrow its search terms to the 2-year period you represented she worked at J&J. *See* Aug. 13, 2024 Ltr. from I. Eppler to E. Snow at 6-7. You stated you were not willing to reconsider your refusal and confirmed the parties are at impasse.

Best,

Kevin Cryan

**Kevin Cryan**
Law Clerk  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he/him/his
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
+1 212.390.9373  [O]
+1 332.201.6763  [M]

---

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Wednesday, August 14, 2024 6:43 PM
**To:** Matthew Nussbaum <mnussbaum@selendygay.com>; Suri, Saniya (x2226) <ssuri@pbwt.com>;
Andrew Dunlap <adunlap@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>;
Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah
Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <ewohlforth@rc.com>; Galli, Sabrina M.
<sgalli@rc.com>; Emma Ashe O'Toole <eashe@selendygay.com>
**Cc:** Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>;
LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>;
~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com
<klieb@sillscummis.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

Matt,

Thanks for your email.  Tomorrow at 4:00 p.m. works for us.

Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jlong@pbwt.com**

---

**From:** Matthew Nussbaum <mnussbaum@selendygay.com>
**Sent:** Wednesday, August 14, 2024 3:05 PM
**To:** Long, Julia (x2878) <jlong@pbwt.com>; Suri, Saniya (x2226) <ssuri@pbwt.com>; Andrew Dunlap
<adunlap@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Meredith Nelson
<mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles

<hmiles@selendygay.com>; Wohlforth, E. Evans <ewohlforth@rc.com>; Galli, Sabrina M.
<sgalli@rc.com>; Emma Ashe O'Toole <eashe@selendygay.com>
**Cc:** Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>;
LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>;
~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com
<klieb@sillscummis.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)


▌**External: Think before you click.**


Julia,

We are available to meet and confer at 4 p.m. tomorrow. Please let us know if that works and
we will circulate a dial-in.

Thank you,

Matt

**Matthew Nussbaum**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
---------------------------------------------
+1 212.390.9062 [O]
+1 856.534.8606 [M]

---

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Tuesday, August 13, 2024 6:08 PM
**To:** Matthew Nussbaum <mnussbaum@selendygay.com>; Suri, Saniya (x2226) <ssuri@pbwt.com>;
Andrew Dunlap <adunlap@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>;
Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah
Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <ewohlforth@rc.com>; Galli, Sabrina M.
<sgalli@rc.com>; Emma Ashe O'Toole <eashe@selendygay.com>
**Cc:** Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>;
LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>;
~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com
<klieb@sillscummis.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)


Matt,

Thanks for your email.  We disagree that it would be productive to discuss 31 custodians in a single conferral.  Nonetheless, you now have our position in response to your requests that we add 26 custodians.

In an effort to avoid impasse and to plan sufficient time this week, please provide your availability for a conferral Thursday or Friday.  To the extent that your colleague, Elizabeth, also would like to discuss our August 7 letter on SaveOnSP's requested search term, we are happy to add that to our agenda as well.

Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jlong@pbwt.com**

---

**From:** Matthew Nussbaum <mnussbaum@selendygay.com>
**Sent:** Tuesday, August 13, 2024 8:36 AM
**To:** Long, Julia (x2878) <jlong@pbwt.com>; Suri, Saniya (x2226) <ssuri@pbwt.com>; Andrew Dunlap <adunlap@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <ewohlforth@rc.com>; Galli, Sabrina M. <sgalli@rc.com>; Emma Ashe O'Toole <eashe@selendygay.com>
**Cc:** Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

<mark>External: Think before you click.</mark>

Good morning, Julia,
Thank you for your email. In the interest of efficiency, we propose that the meet-and-confer regarding J&J's proposed addition of five custodians take place at the same time as the anticipated meet-and-confer regarding SaveOn's July 19, 2024 proposed addition of 26 custodians.
You told us that J&J would provide its response on those custodians early this week. *See* Aug.

8, 2024 Email from J. Long to H. Miles. Once we have had the chance to review that response, we will propose availability for a meet-and-confer covering both sides' requests.

Thank you,


Matt

**Matthew Nussbaum**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
----------------------------------------------
+1 212.390.9062 [O]
+1 856.534.8606 [M]

---

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Monday, August 12, 2024 1:30 PM
**To:** Matthew Nussbaum <mnussbaum@selendygay.com>; Suri, Saniya (x2226) <ssuri@pbwt.com>; Andrew Dunlap <adunlap@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <ewohlforth@rc.com>; Galli, Sabrina M. <sgalli@rc.com>; Emma Ashe O'Toole <eashe@selendygay.com>
**Cc:** Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)


Counsel,

We are in receipt of your August 9, 2024 letter regarding our request that SaveOnSP add Jenna Quinn, Ingrid Vasquez, Brandon Bartz, Shannon Sommer, and Hailey Kramer as custodians, and would like to meet and confer.  Are you available on Wednesday, August 14 after 2:00 p.m. or Thursday, August 15 between 12:00 p.m. and 3:00 p.m.?


Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

jlong@pbwt.com

---

**From:** Matthew Nussbaum <mnussbaum@selendygay.com>
**Sent:** Friday, August 9, 2024 4:41 PM
**To:** Suri, Saniya (x2226) <ssuri@pbwt.com>; Andrew Dunlap <adunlap@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <ewohlforth@rc.com>; Galli, Sabrina M. <sgalli@rc.com>; Emma Ashe O'Toole <eashe@selendygay.com>
**Cc:** Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Long, Julia (x2878) <jlong@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)


⬛ **External: Think before you click.**



Good afternoon, Saniya,

Please see the attached correspondence.

Thank you,

Matt

**Matthew Nussbaum**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
------------------------------------------------
+1 212.390.9062 [O]
+1 856.534.8606 [M]

---

**From:** Suri, Saniya (x2226) <ssuri@pbwt.com>
**Sent:** Friday, July 19, 2024 5:10 PM
**To:** Andrew Dunlap <adunlap@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Matthew Nussbaum <mnussbaum@selendygay.com>; Wohlforth, E. Evans <ewohlforth@rc.com>; Galli, Sabrina M. <sgalli@rc.com>; Emma Ashe O'Toole <eashe@selendygay.com>
**Cc:** Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Long, Julia (x2878) <jlong@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>;

~klieb@sillscummis.com <klieb@sillscummis.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

Counsel,

Please see the attached correspondence.

Sincerely,
Saniya Suri


**Saniya Suri**
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2226

**ssuri@pbwt.com**


---

**From:** Emma Ashe O'Toole <eashe@selendygay.com>
**Sent:** Wednesday, July 3, 2024 11:27 AM
**To:** Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>;
LoBiondo, George (x2008) <globiondo@pbwt.com>; Suri, Saniya (x2226) <ssuri@pbwt.com>; Long,
Julia (x2878) <jlong@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>;
~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com
<klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>;
Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah
Miles <hmiles@selendygay.com>; Matthew Nussbaum <mnussbaum@selendygay.com>; Wohlforth,
E. Evans <ewohlforth@rc.com>; Galli, Sabrina M. <sgalli@rc.com>
**Subject:** JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)


<mark>**External: Think before you click.**</mark>


Counsel,

Please find attached a letter in the above-captioned matter.

Best,

Emma

**Emma Ashe O'Toole**
Associate [Email]
Selendy Gay PLLC [Web]
Pronouns: she, her, hers

-------------------------------------------------

+1 212.390.9339 [O]
+1 646.417.3643 [M]

---

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

---

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

---

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

Privileged/Confidential Information may be contained in this message. If you are not
the addressee indicated in this message (or responsible for delivery of the message to
such person), you may not copy or deliver this message to anyone. In such case, you
should destroy this message and kindly notify the sender by reply email. Please advise
immediately if you or your employer do not consent to receiving email messages of this
kind.

# EXHIBITS 5-24
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 25

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Elizabeth H. Snow
Associate
212 390 9330
esnow@selendygay.com

June 28, 2024

<u>**Via E-mail**</u>

Julia Long
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jlong@pbwt.com

**Re:    Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC (Case No. 2:22-cv-02632-JMV-CLW)**

Dear Julia,

SaveOn writes to request that J&J add Norhaan Khalil and Joseph Incelli as
custodians. We have reviewed J&J's latest productions and, for the reasons de-
scribed below, believe they are likely to have unique, relevant documents related
to the development of the CAP program. All cited documents come from J&J's pro-
duction 10 (December 22, 2023) or later.

**I.    Norhaan Khalil**



Judge Wolfson and Judge Waldor have consist-
ently found the CAP Program relevant to J&J's mitigation efforts. *See* May 28,
2024 Order at 10 ("I reiterate that the requested discovery is relevant as the docu-
ments at issue relate to the creation and implementation of the CAP Program");
Apr. 10, 2024 Order at 2 (expanding CAP search terms to capture "highly relevant

Julia Long
June 28, 2024

documents to Defendant's defense"); Feb. 6, 2024 Order at 25-26 (ordering CAP-related search terms for custodians added "because of their association with the CAP program").



Additionally, SaveOn notes two production deficiencies related to these studies.

Even if J&J does not currently possess this underlying data, J&J had—and continues to have—control through its right to obtain them upon demand. *See Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004). ▮ are responsive to RFP No. 8, because they relate

2

Julia Long
June 28, 2024

to SaveOn, RFP No. 42, because they relate to J&J's understanding of accumulators and maximizers, and RFP No. 75, because they explicitly discuss this litigation.



## II.    Joseph Incelli



Julia Long
June 28, 2024



SaveOn requested documents about the CAP Program in RFP Nos. 33, 41, 49, 58, 59, and 64. J&J has already agreed, or been ordered, to produce discovery about the CAP program in response to those RFPs. *See* May 28, 2024 Order at 10; Apr. 10, 2024 Order at 2; Feb. 6, 2024 Order at 25-26. Incelli is likely to have unique, relevant documents to satisfy J&J's production obligations regarding the CAP Program.

## III.    Proposed Search Terms

### A.    CAP Custodian Search Terms

SaveOn requests that J&J run the following search terms across the custodial files of Khalil and Incelli across the full Relevant Time Period. SaveOn notes that the parties already agreed, or have been ordered, to run the same search terms over the files of all CAP custodians. *See* Feb. 15, 2024 Ltr. from J. Long to E. Snow; Apr. 5, 2024 Ltr. from J. Long to E. Snow; Apr. 26, 2024 Ltr. from I. Eppler to E. Snow.

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR accumulat* OR maximiz*)

- ("CAPa" OR "CAPm" OR "adjustment program") AND "Save On" (*case sensitive*)

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- "Save On" (*case sensitive*)

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- "other offer" W/5 (accumulat* OR maximiz*)

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

Julia Long
June 28, 2024

- ("essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*) W/50 ("CAPa" OR CAPm" OR "adjustment program" OR accumulat* OR maximiz*)

- Archbow w/50 (accumulator* OR maximizer* OR mitigat* OR "NEHB" OR (variable /5 "EHB") OR "CAPa" OR "CAPm" OR "adjustment program")

- Archbow w/50 "other offer"

- Avalere w/50 (accumulator* OR maximizer* OR mitigat* OR "NEHB" OR (variable /5 "EHB") OR "CAPa" OR "CAPm" OR "adjustment program")

- Avalere w/50 "other offer"

SaveOn also requests an additional term be run over the custodial files of both Khalil and Incelli from January 1, 2022 to November 7, 2023 due to their involvement ██████████

██ ████████████████████████

**B.    Norhaan Khalil**

SaveOn also requests the following search terms be run over the files of Khalil specifically, across the Relevant Time Period, due to her involvement with the ██████████████████

████████████████



██ ██████████████████████

**C.    Joseph Incelli**

SaveOn also requests the following search terms be run over the files of Incelli specifically, across the Relevant Time Period, due to his involvement with ██████████████████████

██ ████████████

██

Julia Long
June 28, 2024



If J&J objects to adding either individual on the ground that doing so would be unduly burdensome or that their documents would be duplicative or cumulative of those of another custodian, please provide hit counts of how many unique, relevant documents would be identified for that individual by each of SaveOn's proposed search terms. *See Steven Madden, Ltd. v. Jasmin Larian, LLC,* 2019 WL 3940112, at *2 (S.D.N.Y. July 8, 2019) (finding vague assertions that proposed custodians' documents would be duplicative "unsupported by evidence and meritless").

We request a response by July 8, 2024. We reserve all rights and are available to meet and confer.

Sincerely,

/s/ Elizabeth H. Snow

Elizabeth H. Snow
Associate

# Exhibit 26



www.pbwt.com

July 25, 2024

Bonita L. Robinson
(212) 336-2554

**By Email**

Meredith Nelson, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:     **Apparent Deficiencies in SaveOnSP's Document Productions**
        *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
        *Case No. 2:22-cv-02632 (JKS) (CLW)*

Dear Meredith:

We write in response to your July 19, 2024 letter and in furtherance of our June 28, 2024 letter regarding various deficiencies in SaveOnSP's productions.  We will address the portion of your letter that concerns Ms. Zulqarnain's call recordings under separate cover.

First, as described in our June 28, 2024 letter,  We are surprised by your position that communications in connection with SaveOnSP members' apparent violation of manufacturer terms and conditions—and SaveOnSP's attempts to prevent manufacturers from learning of such violations—are nonresponsive and irrelevant.  Indeed, this position raises serious doubts regarding the responsiveness criteria that SaveOnSP has applied to JJHCS's requests to date.  Please explain the basis for your assertion that an email about manufacturer terms and conditions is not relevant to this litigation about whether the SaveOnSP Program causes members to violate manufacturer terms and conditions.

Second, our June 28 letter requested that you add Leslie Kauffman as a custodian, given that even SaveOnSP's existing productions make plain that Ms. Kauffman played a central

Meredith Nelson, Esq.
July 25, 2024
Page 2

role in SaveOnSP's tracking of and efforts to evade manufacturer terms and conditions. *See* June 28, 2024 Ltr. from B. Robinson to M. Nelson at 2.



Three weeks after we made our request—having received no response to our request, but numerous demands from SaveOnSP in the interim that JJHCS add new custodians—we wrote to you that we would agree to add Joseph Incelli as a custodian provided that SaveOnSP confirm it would add Ms. Kauffman. *See* July 18, 2024 E-mail from J. Long to M. Nussbaum. In response, you refuse to add Ms. Kauffman as a full custodian and suggest that we offer a "narrowed proposal" that is "similar[]" to SaveOnSP's proposal regarding Mr. Incelli. July 19, 2024 Ltr. from M. Nelson to B. Robinson at 2. As an initial matter, your proposal regarding Mr. Incelli was hardly narrow: You requested that JJHCS run a lengthy set of expansive search terms[1] over Mr. Incelli's custodial files "across the full Relevant Time Period" of more than seven years. June 28, 2024 Ltr. from E. Snow to J. Long at 4–6. In any event, Ms. Kauffman's manufacturer evasion efforts appear to have spanned much of her career at SaveOnSP, and while those efforts are particularly noteworthy (and SaveOnSP's failure to identify Ms. Kauffman as a custodian thus particularly troubling), Ms. Kauffman's custodial files are likely to contain other important and relevant documents from throughout her tenure at SaveOnSP. Accordingly, we decline to agree to the addition of Ms. Kauffman as only a limited custodian. Please confirm that you will add Ms. Kauffman as a full custodian.

Finally, thank you for your explanation regarding the "PRC." Based on your representations, we will not pursue the requested PRC documents further at this time. Of course, we may revisit this request if it appears that relevant material regarding the PRC's review has not been captured by SaveOnSP's existing custodians and search terms.

We request a response by August 1, 2024, and remain available to meet and confer.

---

[1] To be clear, our July 18, 2024 proposal did not accept SaveOnSP's proposed search terms, but was expressly "subject to agreement on appropriate search terms." July 18, 2024 E-mail from J. Long to M. Nussbaum.

Meredith Nelson, Esq.
July 25, 2024
Page 3

Very truly yours,

*/s/ Bonita Robinson*
Bonita L.  Robinson

# Exhibit 27



www.pbwt.com

August 13, 2024

Ian Eppler
(212) 336-2205

**VIA EMAIL**

Elizabeth H. Snow, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:  **SaveOnSP's Requests for 27 Additional Custodians**
> *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
> No. 2:22-cv-02632-JKS-CLW

Dear Elizabeth:

We write in response to your three letters demanding that JJHCS add a total of 27 additional custodians:  your June 28, 2024 letter requesting that JJHCS add Norhaan Khalil and Joseph Incelli, your July 19, 2024 letter requesting that JJHCS add 22 additional custodians (the "Non-JJHCS Custodian Letter"), and your July 19, 2024 letter asking that JJHCS add purported Janssen Scientific Affairs employees Mike Ingham, Kay Sadik, and Bridget Doherty as custodians (the "Janssen Scientific Affairs Letter").

As an initial matter, JJHCS objects to SaveOnSP's request as unduly burdensome. JJHCS already has agreed to produce documents from 37 custodians.  Some of these agreed-upon custodians are employed by non-JJHCS entities within the Johnson & Johnson family of companies that are not parties to this litigation; others are high-ranking executives; and still others are attorneys whose documents necessitate intricate privilege review.  Now, after more than a year of discovery, SaveOnSP demands that JJHCS nearly double its list of custodians by adding 27 additional custodians, most of whom have no responsibility for the CarePath co-pay assistance program or the changes that JJHCS made to that program to defend it against bad actors like SaveOnSP.

SaveOnSP's primary justification for this sweeping expansion of discovery is "Judge Wolfson's July 16, 2024 Order."  Non-JJHCS Custodian Letter at 1.  But SaveOnSP's demands go far beyond Judge Wolfson's order.  In denying SaveOnSP's motion to compel, Judge Wolfson declined to order the comprehensive expansion of discovery that SaveOnSP sought and instead directed SaveOnSP to "serve a list of proposed custodians to [JJHCS], from other Janssen entities, who may have relevant documents."  July 16, 2024 Order at 2.  Judge Wolfson also suggested that the parties focus on six individuals who were named in SaveOnSP's moving papers.

Elizabeth H. Snow, Esq.
August 13, 2024
Page 2

In so doing, Judge Wolfson rejected the need to add as custodians the overwhelming majority of individuals mentioned in SaveOnSP's motion. Instead, "based on [her] review of all 105 exhibits submitted" by SaveOnSP, Judge Wolfson suggested that SaveOnSP request (and JJHCS consider) adding six custodians "who *may* have relevant documents." *Id*. (emphasis in original). Rather than submit a narrowed list of custodians in line with Judge Wolfson's order, SaveOnSP has doubled down on its overbroad and unduly burdensome demand for a far-reaching expansion of discovery, including by demanding that JJHCS add several new proposed custodians who were not even named in SaveOnSP's prior papers. In sum, SaveOnSP's latest wish list is not only unduly burdensome, but seems purposely designed to be so.

JJHCS has investigated SaveOnSP's expansive ask. We disagree that these additional custodians are necessary or warranted given the claims and defenses in the litigation. Nevertheless, in the interest of compromise and in keeping with Judge Wolfson's order, JJHCS agrees to add six of SaveOnSP's requested custodians. JJHCS also provides further context for the remaining 21 custodians at-issue.[1]

## I.    JJHCS's Counterproposal

In response to the Non-JJHCS Custodian Letter, JJHCS agrees to add the following six additional individuals as custodians, most of whom Judge Wolfson suggested in her July 16, 2024 order: Sylvia Shubert, Jennifer Goldsack, Michelle Barnard, Cherilyn Nichols, and Pinal Shah. In an effort to resolve the issues addressed in the Janssen Scientific Affairs Letter, JJHCS also agrees to add Mike Ingham as a custodian.

JJHCS's agreement to add these additional custodians is subject to the parties' agreement on additional search terms. JJHCS reserves all rights to object, on relevance and/or burden grounds, to any search terms that SaveOnSP may propose for these custodians.

## II.    Remaining Custodians

JJHCS will not add the remaining 21 custodians that SaveOnSP has demanded.[2] As detailed below, either these individuals are irrelevant to this litigation or their documents are duplicative of those in the custody of previously agreed-upon custodians. Moreover, the documents cited by SaveOnSP in the Non-JJHCS Custodian Letter and the Janssen Scientific Affairs Letter do not justify adding these individuals as additional custodians.

---

[1] JJHCS separately provided its response as to Joseph Incelli. *See* July 18, 2024 Email from J. Long to M. Nussbaum. The remaining 20 custodians are addressed in this letter.

[2] Sabrina Ade, Claudia Adomah, Mitch Akright, Kassandra Cruz, Camille Dorsey, Bridget Doherty, Jane Frechette, Katie Hanculak, Norhaan Khalil, Kevin Kleemeier, Elizabeth Kruel-Starr, Thao Mazrullo, Barbara McCabe, Kay Sadik, Matthew Saggese, Casey Sasse, Brian Taft, Cecila Trybus, Bryan Weinlein, and Mark Wiley.

Elizabeth H. Snow, Esq.
August 13, 2024
Page 3

### a. Sabrina Ade

JJHCS will not add Sabrina Ade as an additional custodian.



For the same reasons as stated in our prior objection and correspondence, SaveOnSP has not shown that Ms. Ade is the custodian of unique, relevant documents.

### b. Claudia Adomah



Accordingly, responsive documents in Ms. Adomah's custodial files are likely to be cumulative of those in the files of existing JJHCS custodians, including Lauren Pennington, Jasmeet Singh, and Heith Jeffcoat.

In addition, although SaveOnSP claims that Ms. Adomah had a role in mitigation, "revisions of CarePath's T&Cs," and "J&J's damages,"

Elizabeth H. Snow, Esq.
August 13, 2024
Page 4

### c.   Mitchell Akright



Accordingly, Mr. Akright is unlikely to possess unique, relevant documents, and JJHCS will not add him as a custodian.

### d.   Kassandra Cruz

Ms. Cruz, like several other custodians requested by SaveOnSP, was involved in issues related                    JJHCS therefore declines to add Ms. Cruz as a custodian because she is unlikely to have unique, relevant documents in her custodial files.

### e.   Camille Dorsey

JJHCS will not add Camille Dorsey as a custodian.

Elizabeth H. Snow, Esq.
August 13, 2024
Page 5



    **f.  Bridget Doherty**

    JJHCS declines to add Ms. Doherty as an additional custodian.



    **g.  Jane Frechette**

    JJHCS will not add Ms. Frechette as a custodian.



Elizabeth H. Snow, Esq.
August 13, 2024
Page 6

any relevant documents in Ms. Frechette's custody are likely to be duplicative of those in the possession of current custodians.

### h.  Katie Hanculak



Because relevant documents in Ms. Hanculak's custodian files are cumulative of those produced by JJHCS from other custodians, JJHCS will not add her as a custodian.

### i.  Norhaan Khalil

SaveOnSP asked that JJHCS add Norhaan ("Nora") Khalil as a "CAP" custodian based on her

Elizabeth H. Snow, Esq.
August 13, 2024
Page 7



Otherwise, JJHCS will not add Ms. Khalil as a custodian or otherwise search her files.[3]

### j.  Kevin Kleemeier



There is no evidence that there are unique and relevant documents in the custody of Mr. Kleemeier, and JJHCS will not add him as a custodian.

### k.  Elizabeth Kruel-Starr



produced, and JJHCS will not add her as a custodian.

---

[3] For the avoidance of doubt, JJHCS also objects to SaveOnSP's proposed search terms, which are facially overbroad. *See, e.g.*, June 28, 2024 Ltr. from E. Snow to J. Long at 5 (requesting that JJHCS add the search term "(Question* OR "feedback" OR "feed back") AND present*").

Elizabeth H. Snow, Esq.
August 13, 2024
Page 8

### l. Thao Mazrullo



The request for Ms. Mazrullo to be added as a custodian is not a serious request and cannot be understood as anything other than an effort to impose unwarranted burden on JJHCS.

### m. Barbara McCabe



Accordingly, any documents in Ms. McCabe's custody would be cumulative of those already produced, and JJHCS will not add her as a custodian.

Elizabeth H. Snow, Esq.
August 13, 2024
Page 9

### n. Kay Sadik

JJHCS declines to add Ms. Sadik as an additional custodian.



Accordingly, JJHCS will not add Ms. Sadik as a custodian.

### o. Matthew Saggese

JJHCS will not add Mr. Saggese as a custodian.

### p. Casey Sasse



Elizabeth H. Snow, Esq.
August 13, 2024
Page 10

 Accordingly, JJHCS will not add her as a custodian.

**q. Brian Taft**

 Accordingly, JJHCS will not add Mr. Taft as a custodian.

**r. Cecila Trybus**

JJHCS declines to add Ms. Trybus as an additional custodian. 

Elizabeth H. Snow, Esq.
August 13, 2024
Page 11

### s.  Bryan Weinlein

JJHCS will not add Mr. Weinlein as a custodian.



### t.  Mark Wiley



Accordingly, JJHCS will not add him as a custodian.

*    *    *

JJHCS reserves all rights and is available to meet and confer.

Very truly yours,

Ian Eppler

# EXHIBITS 28-33
# CONFIDENTIAL – FILED UNDER SEAL

# Sills Cummis & Gross

### A Professional Corporation

**The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102-5400
Tel: 973-643-7000
Fax: 973-643-6500**

Jeffrey J. Greenbaum
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

September 10, 2024

<u>**By Email**</u>

Hon. Freda L. Wolfson
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL
UNDER THE DISCOVERY CONFIDENTIALITY ORDER**

**Re:    Opposition to SaveOnSP's August 26, 2024 Motion to Compel
*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
<u>Civil Action No. 22-2632 (JKS) (CLW)</u>**

Dear Judge Wolfson:

On behalf of JJHCS, we write in opposition to SaveOnSP's August 26, 2024 letter-motion to compel JJHCS to add Joe Incelli and Norhaan Khalil as custodians and produce the documents elicited by an exceptionally broad range of search terms run over an extended time period. To be clear, while today's motion is presented as a modest proposal that concerns two people, it is only the first salvo. SaveOnSP has recently demanded that JJHCS add ***thirty*** additional custodians, which would essentially double JJHCS's custodial production more than two years into this case, and without any valid justification. Make no mistake: SaveOnSP is engaged in "salami tactics" by starting with two custodians without disclosing its larger project to the Court. Not only that, but many of the employees SaveOnSP is targeting are patently irrelevant, and it appears that

Honorable Freda L. Wolfson, U.S.D.J.
September 10, 2024
Page 2

SaveOnSP is trying to inject them into the case for no other reason than to manufacture even more delay and expense to JJHCS, and thus forestall the completion of discovery and ultimate trial in this matter.

There is a reason for all of this. Recent productions from SaveOnSP have produced a steady drumbeat of extraordinary and incriminating documents that will come before Your Honor in future motions. SaveOnSP email and chat messages reflect its employees openly and brazenly talking about lying to manufacturers, working deliberately and systematically to evade manufacturer efforts to limit their misappropriation, and coordinating their egregious conduct with ESI and Accredo. The case on the merits against SaveOnSP is coming into focus—and it is not an appetizing prospect for SaveOnSP. So SaveOnSP is determined to delay trial, continue to misappropriate as much as it can in the interim, and impose as much cost on JJHCS as the Court will allow in order to disincentivize any other manufacturers from seeking to hold it accountable. The Court must not allow this to continue. SaveOnSP ran a scheme of which JJHCS knew very little, but JJHCS is nonetheless producing tens of thousands of documents from *43* custodians. That is more than sufficient to give SaveOnSP all the information it needs to defend this action.

This motion demonstrates just why SaveOnSP's additional custodian demands are unreasonable and disproportionate. Mr. Incelli and Ms. Khalil worked on narrow issues that are largely irrelevant to this litigation: Mr. Incelli worked on financial modeling, and Ms. Khalil was a consultant who briefly assisted with two studies on copay assistance policy. In the case of Mr. Incelli, it appears that SaveOnSP is using a request for his documents to circumvent this Court's prior ruling that largely prevents SaveOnSP from ███████████████████████

Given their narrow roles, any relevant documents in the custody of Mr. Incelli and Ms. Khalil are

Honorable Freda L. Wolfson, U.S.D.J.
September 10, 2024
Page 3

likely to be duplicative of those produced from existing custodians. Worse, SaveOnSP has asked that this Court order JJHCS to run a series of overbroad search terms over their documents, eliciting a vast corpus of irrelevant documents whose review and production would pose an undue burden to JJHCS. SaveOnSP's motion should be denied.

## DISCUSSION

JJHCS is producing documents from 43 custodians. Many of these were added at SaveOnSP's insistence, notwithstanding their marginal or highly attenuated connection to the core claims at issue in this case. Some of these custodians are employed by non-JJHCS entities within the J&J family of companies that are not parties to this litigation; others are high-ranking executives; and still others are attorneys whose documents necessitate intricate privilege review.

Nevertheless, over the past several weeks, SaveOnSP has demanded that JJHCS nearly double that total by adding 30 additional custodians—most of whom are not employed by JJHCS, the company within J&J that has responsibility for the CarePath co-pay assistance program. Perhaps recognizing that its aggregate demands are unreasonable, SaveOnSP has divided its demand for 30 additional custodians into four waves. *See* Ex. 1 (Aug. 28, 2024 Ltr. from E. Snow to I. Eppler) at 2 (demanding that JJHCS add a single additional custodian); Ex. 2 (Jul. 19, 2024 Ltr from E. Snow to J. Long) (demanding that JJHCS add three additional custodians); Ex. 3 (Jul. 19, 2024 Ltr from E. Snow to J. Long) (demanding that JJHCS add 22 additional custodians); SaveOnSP Ex. 25 (Jun. 28, 2024 Ltr. from E. Snow to J. Long) (demanding that JJHCS add Mr. Incelli and Ms. Khalil as custodians).

JJHCS carefully considered each of the individuals raised by SaveOnSP, and determined that, to try and avoid multiplying disputes before the Court, it was appropriate to add six of the 30

Honorable Freda L. Wolfson, U.S.D.J.
September 10, 2024
Page 4

as document custodians in this case.  SaveOnSP Ex. 27.  Mr. Incelli and Ms. Khalil, the subjects

of the instant motion, were not among them.  JJHCS tried to find compromise resolutions on them

too, but SaveOnSP insisted that nothing other than full and unconditional compliance with its

extraordinary demands would suffice.  This motion ensued.

**I.    SaveOnSP Has Not Shown that Incelli or Khalil Possess Unique, Relevant Documents**

For the following reasons, SaveOnSP has not shown that Mr. Incelli or Ms. Khalil possess

unique documents that are relevant to this case.  Accordingly, the Court should deny SaveOnSP's

motion to compel JJHCS to add them as custodians.

**A.  Joe Incelli**

██████████████████████████████████████████████████████

██████████████████████████████████████████████████  But contrary

to SaveOnSP's suggestion, that does not mean that he is an appropriate custodian.  Rather, the

Court has already held that documents and communications related to finance-related issues such

as the CarePath budget, JJHCS's return on investment from CarePath, and drug prices are largely

irrelevant and declined to order discovery into them.  Dkt. No. 192 at 19-24.  The Court has only

allowed discovery into a narrow set of finance-related issues: the financial viability of CarePath,

Dkt. No. 192 at 19, and a "small window for [SaveOnSP] to explore documents that may reflect

whether more patients are taking Janssen drugs as a result of being on the SaveOnSp Program,"

Dkt. No. 192 at 22.  SaveOnSP now seeks to circumvent the Court's prior ruling that sharply

limited discovery into finance-related issues by moving to add Mr. Incelli as a custodian and

demanding that JJHCS produce documents elicited by an extremely overbroad search term that

will capture a wide variety of financial documents completely unrelated to this case.

Honorable Freda L. Wolfson, U.S.D.J.
September 10, 2024
Page 5

SaveOnSP has not even suggested that Mr. Incelli has documents related to either of the two discrete, discoverable finance-related issues, instead claiming only that it is entitled to the financial documents in Mr. Incelli's possession to explore how JJHCS "measured the success of its mitigation strategies," Mot. at 3, and to support a "mitigation defense," Mot. at 4. But the Court has already recognized that SaveOnSP cannot incant "mitigation" as a magic word to unlock a slew of irrelevant financial documents. Dkt. No. 192 at 15 (rejecting SaveOnSP's argument "that it is entitled to [a broad range of] financial documents to support its defense . . . [that] JJHCS failed to use reasonable means to prevent and/or mitigate any alleged damages"). This limitation makes sense given that the relevant legal standard for SaveOnSP's intended mitigation defense imposes a relatively lenient burden on JJHCS. For SaveOnSP's mitigation defense to fail, JJHCS must have taken only "reasonable efforts to avoid the loss" resulting from SaveOnSP's misconduct. *See Martin Marietta Corp. v. New Jersey Nat. Bank*, 653 F.2d 779, 785 (3d Cir. 1981). Because JJHCS's mitigation efforts are measured against a standard of reasonableness, it is unnecessary for SaveOnSP to take discovery into every possible document anywhere in the J&J family of companies that may bear on hypothetical steps JJHCS could have taken to mitigate its damages. JJHCS has already produced a wide range of discovery from a slew of custodians relating to the steps it actually took to address SaveOnSP's conduct. For example, JJHCS has added six custodians specific to the CAP program, and it has reviewed over 54,000 documents (inclusive of families) responsive to search terms specific to the CAP program. Nothing further should be permitted.

SaveOnSP also claims it is entitled to Mr. Incelli's documents to support "accurate financial modeling" in support of "SaveOn's mitigation defense and calculation of damages."

5

Honorable Freda L. Wolfson, U.S.D.J.
September 10, 2024
Page 6

Mot. at 3. ███████████████████████████████████████████████████

████████████████████████████████, and JJHCS has already agreed to produce a variety of

patient-level data on the CarePath program reflecting every transaction at issue. *See* Ex. 5 (Feb.

17, 2023 Ltr. from A. LoMonaco to M. Nelson) at 3. SaveOnSP does not explain why it needs

Mr. Incelli's custodial documents to perform "accurate financial modeling," especially given that

it already has the aforementioned trove of relevant data.

Even if the Court had not already rejected SaveOnSP's efforts to procure irrelevant finance-

related documents akin to those associated with Mr. Incelli's duties, SaveOnSP's motion to add

Mr. Incelli as a custodian would fail because the very documents cited by SaveOnSP show that

Mr. Incelli is unlikely to be the custodian of unique, relevant documents. The documents cited by

SaveOnSP show that ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████ JJHCS has already

added as custodians a series of other members of the same JJHCS team responsible for the CAP

program, including Lauren Pennington, Lindsey Anderson, Adrienne Minecci, William Robinson,

and Spilios Asimakopoulos. Mr. Incelli's documents are highly likely to be duplicative of those

in the files of these existing custodians.

Consistent with JJHCS's ███████████████████████████████████████

and Mr. Incelli's ██████████████████████████████████████████████████

Honorable Freda L. Wolfson, U.S.D.J.
September 10, 2024
Page 7

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████     ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████     Therefore,

the relevant documents regarding those decisions are in the custody of other existing custodians

and have already been produced.  Mr. Incelli would not have ████████████████████

about CarePath or the CAP Program and then kept them to himself—he would have sent them to

the people responsible for those issues who he was supporting and who are already custodians.

███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████,██████████████████

███████████████████████████████████████████████████████

██████████████████████████████████     ███████████████

Honorable Freda L. Wolfson, U.S.D.J.
September 10, 2024
Page 8

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

    **B.  Norhaan Khalil**

As SaveOnSP acknowledges in its motion, Ms. Khalil was not even a J&J employee, but

was merely engaged as a contractor for a limited period.   Mot. at 6.   ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████Ms. Khalil should not be added as a custodian because, for two reasons, SaveOnSP

has not shown that Ms. Khalil possesses unique, relevant documents.

    *First*, SaveOnSP has not shown that the ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█

Honorable Freda L. Wolfson, U.S.D.J.
September 10, 2024
Page 9

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

SaveOnSP claims it is entitled to take discovery ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

_____

[1] ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████

Honorable Freda L. Wolfson, U.S.D.J.
September 10, 2024
Page 10



Indeed, SaveOnSP itself appears to have little interest in these studies themselves.  JJHCS has already produced the 

 SaveOnSP Ex. 28 (JJHCS_00161583) (p███████████████████████); SaveOnSP Ex. 29 (JJHCS_00189580) (████████████████████████████████████████).  JJHCS has already explained that the studies are irrelevant, but to the extent that these studies are tangentially relevant, SaveOnSP has all of the same information regarding the studies that key JJHCS decision-makers had.[2]  But in an effort to resolve this dispute, JJHCS was willing to go even further.  Even though the studies are irrelevant, and even though the presentations on the study results (and not the underlying data) were what could have influenced key JJHCS decision-makers, JJHCS offered to investigate the existence of underlying data associated with the two studies in which Ms. Khalil was involved.  SaveOnSP Ex. 27 (Aug. 13, 2024 Ltr. from I. Eppler to E. Snow) at 6-7.  SaveOnSP rejected the offer.

---

[2] ████████████████████████████████████████████████████████████████ Instead of accepting this reasonable compromise, SaveOnSP filed this motion.

Honorable Freda L. Wolfson, U.S.D.J.
September 10, 2024
Page 11

*Second*, even if ███████████████████████████ involved relevant issues, SaveOnSP has not shown that Ms. Khalil possesses unique documents related to the studies. Unsurprisingly, given her short-term consulting engagement, the documents cited by SaveOnSP in support of its demand that Ms. Khalil be added as a custodian show that ████████████ ████████████████████████████████. *See, e.g.*, SaveOnSP Ex. 29 (JJHCS_00189580) at -580 (███████████████████████████████████████ ████████████████████████████); SaveOnSP Ex. 30 (JJHCS_00159556) at ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ These documents show that documents in Ms. Khalil's files would be duplicative of those already produced from existing custodians.

## II. SaveOnSP Demands Overbroad, Unduly Burdensome Search Terms That Elicit Irrelevant Documents

SaveOnSP has not shown that Incelli and Khalil possess unique, relevant documents, and the Court can deny SaveOnSP's motion on that basis alone.  But even if the Court compels JJHCS to add Incelli and Khalil as custodians, it should not bless SaveOnSP's requested search terms. For the following reasons, the search parameters demanded by SaveOnSP are overbroad and impose an undue burden on JJHCS.

The motion demands that JJHCS run sixteen distinct search terms (nine over the documents of both proposed custodians, four over Incelli's documents alone, and three over Khalil's

Honorable Freda L. Wolfson, U.S.D.J.
September 10, 2024
Page 12

documents).  Several of these search terms bear no connection to any tertiary roles that Incelli and

Khalil played, even arguably, in this case.

Two specific terms are illustrative of the impropriety of SaveOnSP's requested relief.  One

search string[3] SaveOnSP requests as to Mr. Incelli—who, again, works in finance—would capture

*all* documents referring to "forecasts" or "calculations" associated with Stelara or Tremfya,

including irrelevant documents addressing "forecasts" or "calculations" that have nothing to do

with SaveOnSP, copay assistance, or any other issue in this case.  This search string is transparently

a backdoor means of capturing financial documents related to the pricing and profitability of

Stelara and Tremfya after the Court rejected SaveOnSP's prior efforts to compel their production.

*See* Dkt. No. 192 at 22-24.  Perhaps unsurprisingly given its facial overbreadth, this search term

alone returns 19,743 documents (inclusive of families), an unduly burdensome volume.

Similarly, as to Ms. Khalil, SaveOnSP requests a search string[4] that would capture *any*

document related to "research" or "studies" regarding "competitors" or "manufacturers," including

"research" or "studies" not relevant to any issue in this case.  This facially overbroad term alone

returns an unduly burdensome volume of documents:  16,360 (inclusive of families).

The other search terms fare no better.  For instance, SaveOnSP demands that JJHCS search

Khalil's documents for the names of two SaveOnSP executives who previously worked for J&J

---

[3] (mitigat* OR cost* OR calculat* OR forecast* OR saving* OR prefund* OR "pre fund*") w/50
(CAP OR CAPa OR CAPm OR "adjustment program" OR TrialCard OR "Trial Card" OR "2
card" OR 2-card OR 6k OR 6,000 OR 9,100 OR "new solution" OR CarePath OR "Care Path"
OR Stelara OR Tremfya).

[4] (research* OR stud* OR slide* OR present* OR transcript* OR interview* OR insight* OR
intel* OR KBQ*) w/50 (competitor* OR manufacturer* OR CAP OR CAPs OR CAAP* OR
accumulat* OR maximiz* OR "adjustment program*").

Honorable Freda L. Wolfson, U.S.D.J.
September 10, 2024
Page 13

companies. It is unclear why SaveOnSP believes that Khalil—a consultant who worked with J&J for a limited period of time on a narrow set of issues—would possess documents discussing SaveOnSP executives by name. The search proposal also demands that JJHCS produce documents from Mr. Incelli's files going back to April 1, 2016, despite an absence of any evidence that Mr. Incelli was involved in relevant issues before 2021.[5] Additionally, it demands JJHCS run terms containing "w/50" proximity limiters, in contravention of the Court's admonition that the use of such proximity limiters may be overly broad absent specific justification. *See* Dkt. No. 283 at 3. Unsurprisingly, SaveOnSP's blunderbuss search term demand returns 37,478 documents (inclusive of families), 20,903 of which are in the custody of Incelli and 16,575 of which are in the custody of Khalil. This would impose an undue burden on JJHCS given the irrelevance of these individuals.

## CONCLUSION

For the foregoing reasons, Your Honor should deny SaveOnSP's August 26, 2024 motion.

Respectfully submitted,

s/ *Jeffrey J. Greenbaum*
JEFFREY J. GREENBAUM

cc:     Counsel of record for SaveOnSP

---

[5] Based on a reasonable investigation, JJHCS understands that Mr. Incelli did not start in the relevant role until approximately April 2021.

# Exhibit 1

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Elizabeth H. Snow
Associate
212.390.9330
esnow@selendygay.com

August 28, 2024

**Via E-mail**

Ian Eppler
Patterson Belknap Webb & Tyler, LLP
1133 Avenue of the Americas
New York, NY 10036

**Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Ian,

We write regarding J&J's July 31, 2024 Responses and Objections ("R&Os")
to RFP Nos. 98 and 99.

**RFP No. 98** ███████████████████████████████████████ You say
that J&J has produced or will produce documents responsive to this request to the
extent that they are also responsive to RFP No. 8 (all documents and communica-
tions with or regarding SaveOn) and No. 20 (studies, reports, and publications that
JJHCS has funded or supported regarding accumulator and maximizer programs
generally). R&Os at 7.

*First*, RFP No. 98 concerns a ██████████████████████████
████████████████████████████ Please confirm that J&J will produce doc-
uments regarding ███████████ beyond just those that expressly mention
SaveOn or include a study, report, or publication on an accumulator or maximizer
program.

*Second*, although J&J represents that documents concerning ███████
████ would have previously been produced in response to RFP Nos. 8 and 20, we
have not identified additional documents in J&J's productions concerning ███
████████ If J&J maintains that it has produced such documents, please iden-
tify them by Bates number.

Ian Eppler
August 28, 2024

*Third*, █████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████ .

     **RFP No. 99** ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

     *See* Dkt. 192 at 29 ("newly produced documents confirm that Penkow-ski is an appropriate custodian: for example, documents show [Penkowski's] role in responding to 'accumulators,' a term that Plaintiff used internally to refer to SaveOnSP's programs").

     *First*, J&J objects to this Request "as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications regarding other accumulators unrelated to SaveOnSP." R&Os at 8. Please confirm that J&J will not withhold documents simply because they do not expressly mention SaveOn. *See* Dkt. 192 at 29 ("Contrary to Plaintiff's argument, Defendant's denial that it is an accumulator does not change the fact that Plaintiff refers to Defendant's program in that manner, and therefore, Defendant is entitled to discovery from representa-tives who were internally involved in responding to accumulator programs.").

     *Second*, ███████████████████████████████████
████████████████████████████████████████████████
███████████████████ .

     *Third*, ████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

     *Fourth*, we do not find documents in J&J's production that ██████████████████████████████████ . Please provide the ████████████████████████████████████ . Please ████████████████████████████████ .

             \*         \*         \*

     We request a response by September 4, 2024. We are available to meet and confer. We reserve all rights.

2

Ian Eppler
August 28, 2024

Sincerely,

/s/ Elizabeth H. Snow

Elizabeth H. Snow
Associate

Exhibit 2

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Elizabeth Snow
Associate
212.390.9330
esnow@selendygay.com

July 19, 2024

**Via E-mail**

Julia Long
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

Re:    *JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)*

Dear Julia,

    We write pursuant to Judge Wolfson's order regarding Janssen Scientific
Affairs ("Scientific").

    *First*, we ask that J&J add Scientific employees Mike Ingham, Kay Sadik,
and Bridget Doherty as custodians. ██████████████████████████
██████████████████      Doherty was involved in

---

[1] *See, e.g.,*

Julia Long
July 19, 2024



We propose the following search terms for their documents for the full discovery time period of April 1, 2016 to November 7, 2023:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP

- 

- 

- 

- (CAPa OR CAPm OR "adjustment program") AND (accumulat* OR maximiz*)

*Second*, we ask that J&J produce from non-custodial sources documents associated with the following requests, also from the full discovery time period:

- Request No. 3: Documents Sufficient to show Janssen Scientific Affairs' organizational structure, including organizational charts.

- Request No. 8: All documents and Communications with or regarding SaveOnSP.

---

² *See also* 

Julia Long
July 19, 2024

- Request No. 20: All Documents and Communications regarding any publicly distributed material (including, for example, articles, op-eds, white papers, and online postings) regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services, including Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect involvement with such material and JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect funding of the authors, publishers, or distributors of such material.

- Request No. 22: All Documents and Communications regarding any alleged harm caused by SaveOnSP to any Patient by allegedly making their healthcare more expensive, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

- Request No. 25: All Documents and Communications regarding any alleged harm caused by SaveOnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 110, 115.

- Request No. 42: All Documents and Communications relating to JJHCS's or any JJHCS Hub Entity's understanding of the terms "copay accumulator" and "copay maximizer."

- Request No. 49: All Documents and Communications regarding efforts by JJHCS, Janssen, a JJHCS Hub Entity, or other entity working on any of their behalves to (a) identify (through non-litigation means) individuals enrolled in CarePath as members of SaveOnSP-advised plans; or (b) to enforce CarePath's terms and conditions against those individuals, including without limitation by reducing the amount of copay assistance funds provided to those individuals or by disenrolling those individuals from CarePath.

*Finally*, if Scientific employees other than Ingham, Sadick, and Doherty worked on these topics, please identify them.

We ask that you respond by July 26, 2024. We reserve all rights, and are available to meet and confer.

Sincerely,

/s/ Elizabeth H. Snow

Elizabeth H. Snow
Associate

Exhibit 3

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Elizabeth H. Snow
Associate
212 390 9330
esnow@selendygay.com

July 19, 2024

**<u>Via E-mail</u>**

Julia Long
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jlong@pbwt.com

**Re:    Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Julia,

Pursuant to Judge Wolfson's July 16, 2024 Order, SaveOn writes to request that J&J add the following custodians:

**<u>Sylvia Shubert</u>**.



Shubert's work on the CAP program is relevant to J&J's mitigation efforts.

Julia Long
July 19, 2024



**Jennifer    Goldsack**. 

Julia Long
July 19, 2024



**Mark Wiley**.

**Michelle Barnard**.

**Mitchell Akright**.

Julia Long
July 19, 2024



**Cherilyn Nichols**.



**Katie Hanculak**.



Julia Long
July 19, 2024



**<u>Kevin Kleemeier</u>**.



**<u>Matthew Saggese</u>**.



Julia Long
July 19, 2024

**<u>Pinal Shah</u>**.



**<u>Claudia Adomah</u>**.



**<u>Sabrina Ade</u>**.

Julia Long
July 19, 2024



**Barbara McCabe**.



**Casey Sasse**.



Julia Long
July 19, 2024

**<u>Elizabeth Kreul-Starr</u>**.



**<u>Camille  Dorsey</u>**.



**<u>Kassandra  Cruz</u>**.



8

Julia Long
July 19, 2024



**<u>Bryan   Weinlein</u>**.



**<u>Cecelia Trybus</u>**.



Julia Long
July 19, 2024



**<u>Jane Frechette</u>**.



**<u>Brian Taft</u>**.



Julia Long
July 19, 2024



**<u>Thao Mazrullo</u>**.

Please let us know if J&J will agree to add these individuals as custodians.

We request a response by July 26, 2024. We reserve all rights and are available to meet and confer.

Sincerely,

/s/ Elizabeth H. Snow

Elizabeth H. Snow
Associate

11

# EXHIBIT 4
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 5

## Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

February 17, 2023

Anthony C. LoMonaco
Associate
(212) 336-2642
alomonaco@pbwt.com

**VIA EMAIL**

Meredith Nelson, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
mnelson@selendygay.com

> Re:    **SaveOnSP's Requests For Production and Interrogatories**
> *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
> No. 22 Civ. 2632 (JMV) (CLW)

Dear Meredith:

We write in response to your letter dated February 15, 2023 regarding Save On SP, LLC's ("SaveOnSP") First Set of Requests for Production and First Set of Interrogatories. We agree with you that the parties are at an impasse on the issues in Section I of your letter. Please promptly send us your joint letter sections on those issues.

With respect to the issues in Section II of your letter, we address those issues in turn below.

## I.    ISSUES WHERE THE PARTIES ARE NOT CURRENTLY AT IMPASSE

### A.    Documents and Information Related to Accumulators and Maximizers (RFP Nos. 20 and 41-43; Interrogatory No. 7)

*First*, we write to confirm that in exchange for JJHCS's production of "studies, reports, and publications that JJHCS has funded or supported regarding accumulator and maximizer programs generally, as well as internal communications about such documents" in response to SaveOnSP's RFP No. 20, SaveOnSP will agree to produce all documents in response to JJHCS's RFP No. 45, which requests all documents and communications relating to studies, reports, publications, analyses, research, white papers, reviews, or other written work product that SaveOnSP has created, commissioned, paid for, sponsored, or otherwise procured or supported regarding (i) specialty medication costs, (ii) copayment and coinsurance rates, (iii) accumulator programs, (iv) maximizer programs, or (v) strategies to manage specialty medication costs.

*Second*, SaveOnSP proposes that the parties continue to meet and confer on (1) SaveOnSP's RFP Nos. 41 through 43 and its Interrogatory No. 7, which request documents and

Meredith Nelson, Esq.
February 17, 2023
Page 2

information about accumulator and maximizer programs generally, and (2) JJHCS's RFP No. 43, which requests documents relating to how SaveOnSP operates in jurisdictions with statutes or regulations that ban or limit accumulator adjustment programs, and that SaveOnSP.

With respect toSaveOnSP's RFP Nos. 41 through 43, as well as SaveOnSP's Interrogatory No. 7, JJHCS supports SaveOnSP's call for further meet-and-confer discussions. Indeed, the parties have not yet met-and-conferred on Interrogatory No. 7 at all, to which JJHCS objected because it is unclear what SaveOnSP is requesting when it asks for the identities of "each person who participated in or had responsibility for" JJHCS's "understanding of the terms 'copay accumulator' and 'copay maximizer.'" *See* R&O to SaveOnSP's Interrogatory No. 7.

With respect to JJHCS's RFP No. 43, JJHCS does not intend to withdraw its pending motion. JJHCS has explained at length why it is entitled to documents responsive to that request and the issue is ripe for judicial intervention, and it will not repeat those points here.

**B.    RFP Nos. 12 and 13**

In exchange for JJHCS's agreement to produce documents and communications in response to SaveOnSP's RFP Nos. 12 and 13, SaveOnSP states that in response to JJHCS's RFP No. 17, it intends to produce internal communications regarding:

- the treatment of CarePath drugs under the terms of the SaveOnSP Program;

- the designation of Janssen Drugs as Essential or Non-Essential;

- the monetary split between SaveOnSP an Express Scripts on the one hand, and between SaveOnSP and the health insurance plan sponsors, on the other; and

- instances where the Plan Member uses the entire annual allotment of CarePath funds for a given Janssen medication after enrolling the SaveOnSP Program.

SaveOnSP does not, however, intend to produce internal communications regarding its operations in states where copay accumulator and maximizer programs have been banned.

We are willing to accept the following compromise: In exchange for SaveOnSP's agreement to produce documents, including internal communications, regarding the four bullets above, JJHCS agrees to produce internal documents and communications relating to the drafting of CarePath's terms and conditions during the relevant time period of January 1, 2017 to July 1, 2022, to the extent such non-privileged documents exist and can be identified after a reasonable search.

Meredith Nelson, Esq.
February 17, 2023
Page 3

However, JJHCS will not withdraw its motion to compel the production of internal documents and communications relating to how SaveOnSP operates in jurisdictions with statutes or regulations that ban or limit accumulator adjustment programs. Further, as noted in our February 9, 2023 letter, JJHCS reserves the right to issue follow up requests for additional documents based on information learned in discovery or fact investigation.

**C.     RFP Nos. 26 and 32**

SaveOnSP states that it is willing to accept JJHCS's proposal that JJHCS produce the data requested in SaveOnSP's RFP No. 28(i)-(m) in response to RFP Nos. 26 and 32 provided that (1) the parties can agree on the scope of the data JJHCS will produce in response to SaveOnSP's RFP Nos. 28(i)-(m) and (2) JJHCS agree to produce that data by a mutually-agreed date certain early in the discovery period.

With respect to the scope, we provide further detail on the scope of JJHCS's production of the data requested in SaveOnSP's RFP No. 28(i)-(m), as well as the data JJHCS requests from SaveOnSP in exchange for that production, in Section I.D, *infra*.

With respect to the date for production of the data, JJHCS will take all steps to produce this data as soon as possible, and in any event before April 30, 2023.

**D.     RFP Nos. 28 and 29**

We write to confirm that we will accept the compromise proposed in your February 15, 2023 letter: If SaveOnSP will produce all data, including patient-level transactional data, responsive to JJHCS's RFP No. 41 for the time period of January 1, 2016 to July 1, 2022, JJHCS will produce all patient-level data for the time period of January 1, 2016 to July 1, 2022 responsive to parts (i) through (m) of SaveOnSP's RFP No. 28, which seeks documents sufficient to show the following: (i) all patients enrolled in CarePath for each Janssen Drug; (j) the dates on which each patient was enrolled in CarePath; (k) the amounts of copay assistance funds that JJHCS offered to each Patient enrolled in CarePath; (l) the Janssen Drug for which each patient enrolled in CarePath received copay assistance; and (m) all CarePath copay assistance payments made to each patient.

SaveOnSP also notes that this compromise does not resolve the issues relating to SaveOnSP's RFP No. 28(a)-(h) and RFP No. 29 or JJHCS's RFP No. 42, but invites JJHCS to continue meeting and conferring on those issues. While we are willing to continue meeting and conferring on these issues in advance of the conference, we are not inclined to withdraw JJHCS's motion with respect to RFP No. 42 at this time. Production of the data requested in JJHCS's RFP No. 42 is not burdensome and the information sought relevant to the lawsuit for the reasons discussed in prior correspondence. The only objection lodged by SaveOnSP to this request in its section of the letter to Judge Waldor was based on JJHCS's objection to so-called "reciprocal discovery" in SaveOnSP's RFPs 28 and 29. *See* Specific Ltr., Dkt. No. 66, at 5-6. This

Meredith Nelson, Esq.
February 17, 2023
Page 4

objection was lodged before there was any meet-and-confer on SaveOnSP's RFPs.  With JJHCS having agreed to produce certain information in response to these requests, SaveOnSP's objection to JJHCS's RFP No. 42 has been addressed.

> **E.    RFP No. 37**

SaveOnSP's RFP No. 37 seeks "documents sufficient to show the percentage of patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs."  As we have previously explained on numerous occasions, JJHCS does not track data responsive to this request.  Nonetheless, SaveOnSP insists that JJHCS can "produce documents, such as enrollment records, which would allow SaveOnSP to calculate the proportion of patients who enroll in CarePath after being contacted by JJHCS or its affiliates."  As explained in Section I.D., *supra*, and as noted in your February 15 letter, JJHCS is willing to provide CarePath patient enrollment data in response to SaveOnSP's RFP No. 28 subject to SaveOnSP's agreement to produce data responsive to JJHCS's RFP No. 42.  This should resolve the parties' dispute.

* * *

We look forward to your response.

Very truly yours,

*/s/Anthony C. LoMonaco*
Anthony C. LoMonaco

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

September 19, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

> Re:    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
>        **No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Save On SP, LLC ("SaveOn"), we write in reply to Plaintiff Johnson & Johnson Health Care Systems, Inc.'s ("JJHCS," and, with its affiliates, "J&J") opposition to SaveOn's motion to compel J&J to add Joseph Incelli and Norhaan (Nora) Khalil as custodians and to run a set of tailored search terms over their files. The discovery record shows that Incelli and Khalil are each likely to have unique, relevant documents.[1]

---

[1] Instead of simply engaging with the merits of SaveOn's request, J&J offers a series of unsubstantiated atmospheric attacks. *First*, J&J says that SaveOn is pursuing "salami tactics" by moving to compel the addition of Incelli and Khalil while negotiating with J&J to add other custodians, Opp. at 1, but there is nothing unusual about a party raising issues as they arise (as both J&J and

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                    Page 2

## I.    Incelli and Khalil Are Likely To Have Unique, Relevant Documents

J&J agrees with the basic facts that establish the relevance of Incelli and Khalil: Incelli, a finance specialist, worked on CarePath and the CAP program, Opp. at 4, 6-7, while Khalil "liaised" between J&J and the vendors who conducted relevant studies regarding ████████████, *id*. at 8. J&J seeks to cast their involvement in its mitigation efforts as "tangential," *id*. at 7, 10, and their documents as duplicative of those produced from other custodians, *id*. at 2-3, but J&J's documents show otherwise.

### A.    Incelli

J&J concedes that Incelli worked on CarePath. *Id*. at 4. ███████████



_____

SaveOn have done throughout this case). SaveOn first requested that J&J add Khalil and Incelli nearly three months ago; J&J refused to add them, the parties are at impasse, and there is no reason to further delay resolution of this issue. *Second*, J&J asserts that SaveOn is trying to forestall trial, Opp. at 2, but adding custodians is unlikely to impact the case schedule, as J&J has said that it wants a longer discovery period because of its decision to add ESI and Accredo as defendants, *see* Ex. 7 at 233:16-25 (July 15, 2024 Hr'g Tr.). *Third*, J&J complains about the number of custodians it has already designated and the documents that it has already produced, Opp. at 3, but J&J has still reviewed only a small fraction of the more than 1.2 million documents that SaveOn has reviewed, and it continues to seek additional discovery from SaveOn. *Fourth*, J&J says that it tried to find "compromise resolutions," Opp. at 4, but this consisted of offering to add Incelli as a custodian if SaveOn would add one more custodian, *see* Ex. 2 at 3 (July 18, 2024 Email from, J. Long to M. Nussbaum), then offering to add Khalil if SaveOn would add seven more custodians, *see* Ex. 34 (July 25, 2024 Email from J. Long to K. Cryan). SaveOn properly declined both offers, as the individuals whom J&J named were unlikely to have unique, relevant documents—unlike Incelli and Khalil. *See* Ex. 4 (Aug. 16, 2024 Email from K. Cryan to J. Long).

Hon. Freda L. Wolfson                                                      Page 3



Despite this, J&J implausibly contends that Incelli only "occasionally worked on issues related to aspects of CarePath" and that he was not a "core member" of the team responsible for CAP. Opp. at 4, 6.[2]





Hon. Freda L. Wolfson                                                    Page 4



J&J tries to withhold Incelli's documents by asserting that Your Honor's February 6, 2024

Order "limited discovery into finance-related issues," Opp. at 4, but that Order did not address the

financial information at issue here— ████████████████████████████████████████████

██████████████████████████ █ ████████  As Your Honor explained, J&J's financial information

is relevant when it affects "the [CarePath] program itself." Ex. 40 at 68:8-10 (Jan. 24, 2024 Hr'g

Tr.). While J&J misleadingly argues that SaveOn already has data on how much copay assistance

J&J **actually paid** to its patients, Opp. at 5-6, SaveOn seeks Incelli's analyses to understand dif-

ferent topics: (1) how much copay assistance J&J **intended to pay**—which J&J put at issue as the

basis of its damages, Compl. ¶¶ 110, 115; Prop. Am. Compl. ¶¶ 186, 192, 203 (alleging that

SaveOn damaged J&J by causing it to pay more than it intended in CarePath funds); and ████████

████████████████████████████████████████████████████████████████████████

████████████, *see, e.g.*, *O'Brien v. Biobanc USA*, 2011 WL 2532465, at *7-8 (D.N.J. June 23,

---

4 ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

Hon. Freda L. Wolfson                                                    Page 5

2011) (ordering an evidentiary hearing to determine the value of a mitigating measure when cal-

culating damages).[5]

      J&J also offers several arguments that Incelli's documents will be duplicative of existing

discovery. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████

       ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[5] J&J claims that SaveOn is not entitled to "every possible document…that may bear on hypothet-ical [mitigation] steps," Opp. at 5, but Incelli's documents concern J&J's *actual* mitigation steps—the CAP program.

Hon. Freda L. Wolfson                                                    Page 6

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

Finally, J&J asserts that it has already reviewed 54,000 documents responsive to CAP-related search terms, Opp. at 5, but this cannot justify withholding unique documents relevant to a mitigation defense that could dispense with hundreds of millions of dollars in purported damages.

**B.     Khalil**

J&J does not dispute that Khalil was the point person for two studies ██████████████ ██████████████████████████████████. Mot. at 6-8. Her files are relevant to J&J's mitigation efforts and, importantly, its credibility. ██████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████ J&J's allegations in its original Complaint and its Amended Complaint that SaveOn violates the ACA and harms patients. *See* Compl. ¶ 59, 114; Am. Compl. ¶ 84, 202. SaveOn is entitled to test J&J's knowledge of the falsity of its allegations.

███████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Hon. Freda L. Wolfson                                                          Page 7

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████

        J&J tries to minimize the relevance of the studies. ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[6] J&J asserts that SaveOn did not accept its "offer" to produce the final version of ████████████
study or the underlying data for both studies, Opp. at 10 & n.2, but J&J never made such an offer.
J&J rather "agree[d] to investigate the existence of underlying data associated with both studies
and to produce the final ████████████████████ without condition. Ex. 27 at 6-7 (Aug. 13,
2024 Ltr.).



Because J&J allowed the recordings of these presentations to be destroyed, Khalil's files are the best available means of showing how these slides were presented or received at all. *See* Ex. 42 at 1-2 (May 31, 2024 Ltr. from J. Long to E. Snow) (explaining that J&J only extended its litigation hold to Zoom recordings in April 2024 when SaveOn specifically requested those files);

## II.    The Requested Search Terms Are Appropriate

Although SaveOn asked J&J, for months, to provide hit counts for its proposed search terms, *see* Ex. 25 at 6 (June 28, 2024 Ltr.), J&J did not do so, instead waiting to reveal them for

[7]

Hon. Freda L. Wolfson                                                    Page 9

the first time in its opposition: 20,903 for Incelli, and 16,575 for Khalil. Opp. at 13. Gamesmanship

aside, these totals contradict J&J's assertions that their files likely are duplicative of current cus-

todians; if that were true, the requested search terms would not identify thousands of unique doc-

uments for review.[8] In any event, these numbers are not excessive for J&J, which has eye-popping

resources, or in the context of this case, where hundreds of millions of dollars are at issue. They

are also not out of proportion here, where J&J has reviewed only a small fraction of the 1.2 million

documents that it demanded SaveOn review.

J&J calls the proposed search terms overbroad but has nothing to say about 13 of 16 of

them. It complains that one term, which combines "forecast*" in close proximity with "Stelara,"

could pick up irrelevant documents, Opp. at 12, but omitting that term would exclude relevant

ones. Exhibit 12, for example, would be identified only by this term:



Ex. 12. at -716 (JJHCS_00231715) (emphases added). If this document had not happened to be

placed in a family with a document that hit on other search terms, it would not have been produced.

J&J complains that a second term combines "research" or "studies" with "competitors" or "man-

ufacturers" could pick up studies irrelevant to this case, Opp. 12, but it does not represent that

Khalil worked on any other studies during her "limited period of time," Opp. at 13, working for

---

[8] SaveOn understands that J&J's hit counts represent the additional documents it would have to
review if it ran SaveOn's proposed search terms, subtracting those already reviewed for previous
custodians. *See* Ex. 43 at 7 (Sep. 9, 2024 Opposition to SaveOn's Motion to Compel Mitigation
Search Terms) (representing that search terms for Incelli and Khalil "would require JJHCS to re-
view over 37,000 additional documents.").

Hon. Freda L. Wolfson                                                      Page 10

J&J. J&J also complains that a third term includes the names of SaveOn executives, Opp. at 13, but it is hard to think of terms more narrowly tailored to this case.

J&J also now says for the first time that Incelli began his "relevant role" in "approximately April 2021," Opp. at 13, n.5—something else that J&J did not disclose during the parties' discussions. SaveOn agrees that the searches should be limited to the time of his involvement; accounting for the "approximate" nature of J&J's representation, SaveOn proposes that J&J run the terms for Incelli from January 1, 2021 to November 7, 2023.

***

We appreciate Your Honor's attention to this matter.

Respectfully submitted,

/s/ *E. Evans Wohlforth*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# Exhibit 34

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Thursday, July 25, 2024 3:30 PM
**To:** Kevin Cryan <kcryan@selendygay.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Matthew Nussbaum <mnussbaum@selendygay.com>; Wohlforth, E. Evans <Ewohlforth@rc.com>; Galli, Sabrina M. <SGalli@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

Kevin,

Thanks for your email.  As you know, your June 28 letter demanded that JJHCS add two custodians:  Joseph Incelli and Norhaan Khalil.  On July 18, citing SaveOnSP's failure to respond to our June 25 letter requesting that SaveOnSP add Leslie Kauffman as a custodian, I stated that "subject to agreement on appropriate search terms, JJHCS is prepared to add Joseph Incelli as a custodian, subject to SaveOnSP's agreement to add Leslie Kauffman as a document custodian."  July 18, 2024 Email from J. Long to M. Nussbaum.  Our colleagues continue to trade letters regarding whether SaveOnSP will in fact agree to add Ms. Kauffman as a custodian, as I suggested last week.

Since that time, JJHCS also has requested that SaveOnSP add five custodians that SaveOnSP previously represented were already added as a custodian:  Brandon Bartz, Hailey Kramer, Sandy Mozrall, Jenna Quinn, Lauren Pacillo, Shannon Sommer, and Ingrid Vasquez.  *See* July 19, 2024 Ltr. from S. Suri to M. Nelson at 1.  Should SaveOnSP seek to propose an agreement whereby JJHCS adds Ms. Khalil as a custodian in exchange for SaveOnSP adding custodians that we have requested, JJHCS is open to considering that proposal.  But it is not tenable for SaveOnSP to demand that JJHCS add nearly **thirty** custodians over the course of four letters in the last month, all requesting five business-day turnarounds, while SaveOnSP slow walks JJHCS's requests.

For example, a week ago, I asked your colleague Matt a simple question regarding SaveOnSP's forthcoming Teams production, which I'll repeat here.  As part of the parties' agreement, SaveOnSP represented that the entirety of its Teams production would "take about a month" on June 20.  Nearly two weeks ago, Matt responded that

SaveOnSP is "in the process of preparing our first rolling Teams production."  I then asked when SaveOnSP intended to make its full production.  No one from your team has responded.  When can we expect SaveOnSP's Teams production?



If it would be more productive to confer on any of the above, we remain available to do so.

Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jlong@pbwt.com**

---

**From:** Kevin Cryan <kcryan@selendygay.com>
**Sent:** Wednesday, July 24, 2024 12:00 PM
**To:** Long, Julia (x2878) <jlong@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Matthew Nussbaum <mnussbaum@selendygay.com>; Wohlforth, E. Evans <Ewohlforth@rc.com>; Galli, Sabrina M. <SGalli@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

**External: Think before you click.**

Julia,

We requested a response to this letter about adding Joseph Incelli and Norhaan Khalil as custodians by July 8. We still have not received J&J's position regarding Khalil.

Please let us know when you intend to respond.

Best,
Kevin

**Kevin Cryan**
Law Clerk  [Email]

Selendy Gay PLLC  [Web]
Pronouns: he/him/his

+1 212.390.9373  [O]
+1 332.201.6763  [M]

---

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Monday, July 8, 2024 6:16 PM
**To:** Kevin Cryan <kcryan@selendygay.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry
(x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn
<JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>;
~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Meredith Nelson
<mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles
<hmiles@selendygay.com>; Matthew Nussbaum <mnussbaum@selendygay.com>; Wohlforth, E. Evans
<Ewohlforth@rc.com>; Galli, Sabrina M. <SGalli@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

Kevin,

We are in receipt of your June 28, 2024 letter and are continuing to investigate the issues cited therein.

Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jlong@pbwt.com**

---

**From:** Kevin Cryan <kcryan@selendygay.com>
**Sent:** Friday, June 28, 2024 7:36 PM
**To:** Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo,
George (x2008) <globiondo@pbwt.com>; Long, Julia (x2878) <jlong@pbwt.com>; _cg J&J-SaveOn
<JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>;
~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Meredith Nelson
<mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles
<hmiles@selendygay.com>; Matthew Nussbaum <mnussbaum@selendygay.com>; Wohlforth, E. Evans
<Ewohlforth@rc.com>; Galli, Sabrina M. <SGalli@rc.com>
**Subject:** JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

**External: Think before you click.**

Counsel,

Please see the attached correspondence.

Best,
Kevin

**Kevin Cryan**
Law Clerk  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he/him/his
---------------------------------------------
+1 212.390.9373  [O]
+1 332.201.6763  [M]

Privileged/Confidential Information may be contained in this message. If you are not
the addressee indicated in this message (or responsible for delivery of the message to
such person), you may not copy or deliver this message to anyone. In such case, you
should destroy this message and kindly notify the sender by reply email. Please advise
immediately if you or your employer do not consent to receiving email messages of this
kind.

Privileged/Confidential Information may be contained in this message. If you are not
the addressee indicated in this message (or responsible for delivery of the message to
such person), you may not copy or deliver this message to anyone. In such case, you
should destroy this message and kindly notify the sender by reply email. Please advise
immediately if you or your employer do not consent to receiving email messages of this
kind.

# EXHIBITS 35-39
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 40

```
                                              Page 1

 1          UNITED STATES DISTRICT COURT

 2          DISTRICT OF NEW JERSEY

 3          CIVIL ACTION NO. 22-2632

 4    JOHNSON & JOHNSON HEALTH CARE

 5    SYSTEMS, INC.,

 6        Plaintiff,                TRANSCRIPT

 7        vs.                           OF

 8    SAVE ON SP, LLC,            PROCEEDINGS

 9        Defendant.

10    - - - - - - - - - - - - - - - - -

11

12          TRANSCRIPT of the stenographic notes of

13    the proceedings in the above-entitled matter as

14    taken by and before RUTHANNE UNGERLEIDER, a

15    Certified Court Reporter and Notary Public of the

16    State of New Jersey, held at the office of

17    LOWENSTEIN SANDLER LLP, One Lowenstein Drive,

18    Roseland, New Jersey, on Wednesday, January 24,

19    2024, commencing at approximately 10:00 in the

20    forenoon.

21

22

23

24

25
```

```
                                        Page 2
 1   B E F O R E:
 2   HONORABLE FREDA L. WOLFSON
 3   A P P E A R A N C E S:
 4   PATTERSON BELKNAP WEBB & TYLER LLP
     1133 Avenue of the Americas
 5   New York, New York  10036
          BY:  HARRY SANDICK, ESQ.
 6               JULIA LONG, ESQ.
                 GEORGE A. LoBIONDO, ESQ.
 7               SARA A. ARROW, ESQ.
     Attorneys for Plaintiff
 8
     SILLS CUMMIS & GROSS P.C.
 9   The Legal Center
     One Riverfront Plaza
10   Newark, New Jersey  07102
          BY:  JEFFREY J. GREENBAUM, ESQ. (VIA ZOOM)
11   Attorneys for Plaintiff
12   SILLS CUMMIS & GROSS P.C.
     101 Park Avenue, 28th Floor
13   New York, New York  10178
          BY:  KATHERINE M. LIEB, ESQ.
14   Attorneys for Plaintiff
15   SELENDY GAY ELSBERG PLLC
     1290 Avenue of the Americas
16   New York, New York  10104
          BY:  ANDREW R. DUNLAP, ESQ.
17               ELIZABETH SNOW, ESQ.
                 HANNAH MILES, ESQ.
18   Attorneys for Defendant
19   ROBINSON & COLE LLP
     666 Third Avenue 20th Floor
20   New York, New York  10017
          BY:  E. EVANS WOHLFORTH, JR., ESQ.
21   Attorneys for Defendant
22
23   ALSO PRESENT:
     SHERYN GEORGE, JJHCS In-House Counsel
24   WAYNE FANG, ESQ., Lowenstein Sandler
25
```

Page 3

1            JUDGE WOLFSON:  All right.

2            We're here today in connection with the

3    outstanding disputes, and when we had our Zoom

4    conference several weeks ago I indicated I wanted to

5    address whatever had been left open by Judge Waldor.

6    She's had many, many conferences in this case,

7    resolved many issues on the record, entered some

8    orders, and there were a couple of substantial issues

9    that have really been kicking around for a while

10   where she was looking for everyone to meet and confer

11   and see where you ended up.  And, primarily, they're

12   going to relate to discovery regarding the terms and

13   conditions, there was financial information, and now

14   there are other things to do with custodians, and I'm

15   going to try to get to everything.  But I want to

16   deal with this, in the first instance, with regard to

17   those pending discovery disputes, let me turn first

18   to the documents dealing with the CarePath terms and

19   conditions that have been talked about for quite a

20   while now and what should be discoverable with regard

21   to the drafting, understanding enforcement of the

22   terms and conditions.

23           We know that, in particular, what's

24   being looked at is that this program is supposed to

25   fall under the "Other Offer" category.  It's not the

Page 4

1    coupon.  No one is asserting that it falls within the

2    other language.  Right?  Everybody agrees?  Yes?  So

3    it's all about the other offer.

4                    MR. GREENBAUM:  Your Honor, may I make

5    two short preliminary points for context to just kind

6    of set the table at least from our perspective?

7                    JUDGE WOLFSON:  I don't think it's

8    necessary at this point.

9                    Let me move forward.

10                   And I will say this -- can I go off the

11   record one moment?

12                   (Brief recess taken.)

13                   JUDGE WOLFSON:  So let's break this down

14   into what's there.

15                   There's no doubt -- or there's no

16   dispute that there certainly is relevance to evidence

17   regarding what this term means.  The question is, how

18   much discovery is to be given, and where does it go,

19   and what are our time tables for doing that, et

20   cetera?  And we're going to get to that.

21                   The Plaintiff has said that it produced

22   thousands of pages of documents, approximately 1200,

23   in response to search terms that were used to find

24   documents relating to terms and conditions from

25   April 2016 to July 1, 2022 that had been an agreed

Page 5

1    upon discovery period, however, the Court at the last

2    hearing had directed the parties to continue to

3    update discovery through October 2023.

4              So now we're all dealing with updating,

5    updating.

6              Okay.

7              There were requests also for documents

8    that bear on -- if I can, for short, I know it's

9    JJHCS -- if I can say J&J for purposes of the

10   hearing.  We know it's a different entity, but just

11   for ease -- J&J's enforcement and understanding of

12   the relevant terms and conditions.  And Plaintiff

13   says also that J&J has investigated availability of

14   additional documents and based on that investigation

15   understands that the terms and conditions at issue

16   are standard, uncontroversial terms, used in most, if

17   not all, manufacturer co-pay support programs that

18   long predate the time period of 2016 to 2023.  And

19   J&J has offered to review additional documents to see

20   what else might fall within that relevant time frame.

21             J&J has indicated that documents that go

22   further back to 2009, which is what really I think

23   SaveOn has been talking about, argues that either

24   they're irrelevant and also enforcement of terms and

25   conditions relating to other terms besides "other

Page 6

1    offer."  I mean, I have all the arguments here.

2              So let's move into this.

3              Now, in this connection too we have

4    custodian issues, and you agreed to some

5    modifications.

6              I think what we have here is Defendant

7    asked Plaintiff to conduct a search for documents

8    relating to the drafting of the general T&C's to add

9    additional search terms used designed to identify

10   documents relating to drafting, understanding and

11   enforcement, and add two custodians that J&J

12   identified as responsible for drafting the new

13   Stelara and Tremfya T&C's and to extend a search for

14   documents relating to enforcement of the new Stelara

15   and Tremfya T&C's.

16             Plaintiff has indicated that it will

17   search eight more months of one custodian's documents

18   and add two limited search terms.

19             So let's talk about where we are.

20             With regard to the requests, it was

21   requested that Plaintiffs identify predecessor

22   programs from which CarePath's general T&C's were

23   drawn.  And I think there are also interrogatories on

24   that topic.  Right?

25             MR. DUNLAP:  Yes, are honor.

Page 7

1              MR. SANDICK:  I don't think that there

2      is an interrogatory that specifically tracks what

3      they asked for in our discovery letters.  And not to

4      get sidetracked, but one of the points of contention

5      is that if they want detailed historical information

6      about things within JJHCS, I think the discovery

7      device for that is an interrogatory.  If they

8      propound one, we'll answer it subject to objections.

9      But I don't think that they have propounded one that

10     would cover all of the issues that they have raised

11     and have tried to use discovery correspondence as a

12     mechanism essentially as a substitute for

13     interrogatories.  And they're not at their

14     interrogatory cap.  They could propound

15     interrogatories.

16              MR. DUNLAP:  Could I respond to that,

17     your Honor?

18              JUDGE WOLFSON:  Sure.

19              MR. DUNLAP:  Just briefly.

20              We served document requests asking for

21     documents relating to the drafting of the terms and

22     conditions.  We served interrogatories asking them to

23     identify individuals with responsibility for the

24     drafting of the terms and conditions.  It turns out

25     that this specific term and condition, which is the

1  heart of part of the case, ███████████████████

   ██████████████████████████         We think our

3  existing interrogatory and document requests are

4  broad enough to cover whoever drafted it, whether

5  they were working at JJHCS or some other predecessor

6  program.  So we think it's covered.

7              JUDGE WOLFSON:  Okay.

8              We're going to talk about it today,

9  whether it was specifically asked in that way or not,

10 but I'm going to get to the bottom of this and be

11 done with it so that we have this resolved.

12             Now, in that regard, you've asked for I

13 think January 1, 2009 to the present, right?

14             MR. DUNLAP:  Yes.

15             JUDGE WOLFSON:  Because it would include

16 predecessor programs.

17             MR. DUNLAP:  Because that is our

18 understanding of when it began.  Obviously, if the

19 program began earlier, at some other time, then we

20 would want it to be tailored, our issue, but they

21 haven't given us information, so it's hard for us to

22 tailor our understanding of when the program started.

23             JUDGE WOLFSON:  Okay.

24             Why would you, Mr. Sandick, believe

25 that -- you know, we're looking for what the meaning

Page 9

```
 1   of this is -- that if you had predecessor programs

 2   that used the same term, why would that not be

 3   relevant at a discovery stage?

 4              MR. SANDICK:  So, a couple of things.

 5              It's not so much that we're saying it

 6   would be irrelevant.  What we're saying is, number

 7   one, as we've explained to the Defendants before, we

 8   do not have consistent record keeping within our

 9   client's files.

10              JUDGE WOLFSON:  I'm going to get to

11   retention.

12              What I'm saying is, I want to take this

13   piece by piece.  Which is, if we start with

14   relevancy, now let's go to what the problems are with

15   producing it.

16              MR. SANDICK:  Sure.

17              I think the relevance issue is this:  As

18   to the meaning of "other offer" in the context of a

19   program like SaveOn, an accumulator or maximizer

20   program, those programs did not exist back in --

21   SaveOn was created in 2016.  So trying to figure out

22   prior to 2016 what the terms and conditions meant

23   with respect to a company like SaveOn I think is not

24   a productive project.

25              Also, for that matter, the current
```

Page 10

1    CarePath system, which started in around 2016, also

2    did not exist prior to that.

3            To be short, J&J through JJHCS has tried

4    to help patients pay for co-pay support, help them

5    pay their deductibles on drugs for many years, but

6    the program was different.

7            So we're going to a time period when

8    SaveOn did not exist, when the CarePath program we're

9    talking about did not exist, and in a time period

10   where -- and I know your Honor said you'll get to

11   this -- but where the document record is not what it

12   is in more recent years because 2013 is a long time

13   ago.

14           JUDGE WOLFSON:  And I'll deal with that,

15   but I have to say I don't agree with your position

16   on -- that it would not be relevant simply because

17   programs like SaveOn didn't exist, whether

18   accumulator or maximizer programs, or CarePath didn't

19   come into being.

20           You know, you have indicated that these

21   are terms, that is the position you have taken, that,

22   you know, through maybe time, this is a term that is

23   used.  So in creating that, how broad a meaning you

24   thought that had, what it meant outside of the other

25   things you described, coupons, rebates, et cetera,

Page 11

1    that it could encompass, it may have nothing to do

2    with this, but that is okay.  So we need to answer

3    that question.

4             I do not agree with you.  I do agree

5    with SaveOn that I believe that going back in time is

6    relevant to the extent it was included in predecessor

7    programs.  It had to have a meaning.  If anyone even

8    discussed it.  Maybe they didn't.  And maybe that is

9    what will turn up.  But that is an answer in itself.

10            Now, talking about availability of

11   documents, because you have indicated that there are

12   preservation of retention issues, but I don't know

13   that you have provided anything that tells us what

14   those retention policies are or the issues as to why

15   they don't exist or how limited they are.

16            That has to be provided so that I could

17   determine, or your adversaries can determine, what

18   was done, and what the policy was, and whether it was

19   followed here.

20            That is always what we do when you have

21   a relevant document and a relevant time period and

22   there may be an issue.

23            So you're going to have to produce that

24   retention policy.

25            To the extent that you do find the

Page 12

1   documents regardless of that retention policy, I'm

2   ordering that they be produced.

3            Now, you've also indicated it's too

4   cumbersome, but you haven't done a search going back

5   because you haven't thought you had to produce them,

6   and the burden is on you to explain why it would be

7   burdensome.  And, frankly, if you're telling me you

8   may have nothing before 2013, it doesn't sound very

9   burdensome to me.  So I'm not buying that at the

10  moment without more.

11           For me, when I look at all of this,

12  rather this one seemed like an easy one, and I think

13  it's totally appropriate.

14           The crux of this case is going to be

15  what "other offer" means.  And in Judge Vazquez's

16  opinion in very short order in that last paragraph it

17  said this is going to need discovery and it could be

18  the subject of a summary judgment motion, but not a

19  dismissal motion, or maybe it goes to a trial, but he

20  noted that that was something that required

21  discovery.  And that term is going to be critical

22  here.

23           MR. SANDICK:  So, your Honor, we will

24  come back to you then with a submission on the

25  subject of burden and accessibility because I do

Page 13

1  believe those are substantial issues here.  That, you
2  know, very few companies would have sort of coherent
3  organized records going back 15 years or longer.  And
4  so I do think we have an issue that we need to bring
5  to your Honor's attention on this.
6           JUDGE WOLFSON:  Okay.
7           You're going to have to really convince
8  me because, first of all, I don't know what your
9  retention policy is, but on the burdenness, I know
10 that Judge Waldor kept putting burden to the side.
11 She said, a hundred million dollar case, it's a big
12 case, big companies, don't argue burden to me.
13          I'm not quite sure I always agree with
14 that because burden is something you are allowed to
15 assert.  I'm not preventing you from doing so, but I
16 think you have a high hurdle there.
17          So you want to move this along, I want
18 to also, so those answers you're going to have to get
19 to me pretty quickly.
20          MR. SANDICK:  We'll do that, your Honor.
21          JUDGE WOLFSON:  Okay, when?
22          MR. SANDICK:  I would like to talk to
23 people internally to figure out, but today is
24 Wednesday.  Next week?
25          JUDGE WOLFSON:  Sure.

Page 14

1                    MR. SANDICK:  Okay.

2                    JUDGE WOLFSON:  That would be fine.

3                    You want a week from today?

4                    The end of next week?

5                    MR. SANDICK:  Let me just confer for a

6      moment.

7                    Next Friday.

8                    JUDGE WOLFSON:  Next Friday is fine.

9                    MR. DUNLAP:  I assume you would want us

10     to meet and confer about this.

11                   JUDGE WOLFSON:  Yes.

12                   MR. DUNLAP:  Part of our concern is that

13     they haven't been really forthcoming in explaining to

14     us what their preservation or retention issues are.

15                   JUDGE WOLFSON:  Now you're going to get

16     it.

17                   MR. DUNLAP:  I assume you want the

18     parties to meet and confer before they file the

19     motion.

20                   JUDGE WOLFSON:  Yeah.

21                   MR. SANDICK:  I mean, I'm happy to talk

22     to Andrew any time.  We're going to file something on

23     this.  And I do not agree that we have been not

24     forthcoming.  We explained that 2013 is the crucial

25     time period for our client when there were changes in

Page 15

1    the record keeping system and that before that time,

2    all though I can't say that there aren't documents

3    here and there sort of lying around, so to speak, the

4    digital equivalent of that, there is no consistent

5    effort to retain documents from that time period.

6                    JUDGE WOLFSON:  Look, they haven't

7    gotten that, and, you know, simply indicating that is

8    not enough.

9                    They said they would have an answer by

10   next Friday.  So what I'll direct is that information

11   be given to you, as to burden and retention, you can

12   meet and confer, and then tee it up for me.

13                   MR. SANDICK:  Would you like us to

14   submit it to your Honor in parallel next Friday?

15                   JUDGE WOLFSON:  I would love to see it.

16                   MR. SANDICK:  We will send it to you and

17   of course copy defense counsel by next Friday.

18                   JUDGE WOLFSON:  Okay.

19                   And then you can meet and confer and

20   we'll see if we have an issue.

21                   As I said, but from my perspective on

22   the burden aspect, it's going to have to be a pretty

23   darn heavy burden because I think this is highly

24   relevant information, and so on a weighing here as to

25   the relevance versus the burden on you, I think you

Page 16

1    know where I'm going to come out.

2                  All right.  Let's move onto the next

3    topic.

4                  These are, quote, the enforcement

5    documents.

6                  So let's talk about this issue.

7                  This is I think where it -- the issue is

8    whether it's enforcing all of the terms of that or

9    only the other offer, correct?  That's where we are.

10                  MR. DUNLAP:  I think that is part of it.

11   Part of it is also what search terms they employ.

12   Since this submission went in we met and conferred

13   with the other side and narrowed the search terms.

14   It cuts out about 20 percent of the documents that

15   were identified in my previous submission.

16                  JUDGE WOLFSON:  Okay.

17                  So tell me what is left on this issue

18   that you want to argue today.

19                  MR. DUNLAP:  Well, we believe that they

20   should run a broader search for documents relating to

21   the meaning and understanding and enforcement of the

22   general terms and conditions, the "other offer"

23   provision.

24                  JUDGE WOLFSON:  The "other offer"

25   provision is good.

Page 17

1            MR. DUNLAP:  Yes.

2            Well, we think there are other portions

3     of the general terms and conditions that are relevant

4     as well.

5            So the way this works is that a lot of

6     the -- they call this the SaveOn program, but a lot

7     of the things they're complaining about, the setting

8     of the co-pays, the not counting towards

9     out-of-pocket max, are actually plan terms.  Those

10    are part of what the commercial plan sets as terms

11    for their members.  And there are references within

12    the terms and conditions health plans.  And we

13    think -- part of our argument is that that indicates

14    whatever "other offer" means, it can't mean plan

15    terms.  So we think it can't be limited just to the

16    "other offer" provision.  That is point one.

17            Point two is, based on what we have seen

18    in the documents we don't --

19            JUDGE WOLFSON:  So let me think of

20    though what you're looking for in that regard.

21            You're not interested in coupons,

22    rebates, and the other things that are in there.

23            I want to make sure how we're limiting

24    this.

25            MR. DUNLAP:  Well, we are to the extent

Page 18

 1    that we want to understand, there is an affirmative

 2    case did they actually believe SaveOn was a coupon or

 3    other offer or a program.

 4                JUDGE WOLFSON:  I think we are clear

 5    that you said it's only other offer.

 6                MR. SANDICK:  The other offer is the

 7    only term that we're doing.

 8                There is a long list of terms and

 9    conditions that patients have to agree, most of them

10    have nothing to do in not even any conceivable way

11    with this case.

12                For example, you cannot by federal law

13    be on Medicare or Medicaid and be part of SaveOn.

14    That is prohibition.  Children are not eligible to

15    receive drugs through this program.  And there are a

16    number of other things.  None of them are within the

17    scope of what we are alleging to be the contract that

18    was tortiously interfered with.  That's why the focus

19    has been -- in Judge Vasquez's decision and in our

20    complaint -- on the "other offer" language that your

21    Honor has spotlighted.

22                JUDGE WOLFSON:  So we're limiting it to

23    the only contractual term that they think is "other

24    offer."

25                MR. DUNLAP:  Right.

Page 19

```
 1              And I think we have a couple of issues
 2    with that.
 3              So, first, as you may have seen if
 4    you've looked at the Motion to Dismiss briefing,
 5    "other offer" appears in a string of other terms,
 6    coupon, et cetera.  And under ejusdem generis, if I'm
 7    pronouncing that doctrine correctly, you would
 8    understand what "other offer" means by looking at
 9    what the other terms in that clause mean.
10              So what they understand a coupon to
11    mean, what they understand another offer of financial
12    assistance to mean, is relevant to determining what
13    in context the "other offer" provision means.
14              So we do want to understand what they
15    think that means.
16              I would also make the point that --
17              JUDGE WOLFSON:  But we're on the
18    enforcement documents now, not on the actual
19    interpretation, terms, conditions.
20              MR. DUNLAP:  Well, but that period we're
21    talking about from 2016 through 2022 we're not just
22    looking for documents on enforcement, it also goes to
23    the meaning and their understanding of what the
24    "other offer" provision meant during that time
25    period.  And we submit to understand that you have to
```

Page 20

1    look not just at "other offer," but also at the other

2    terms that are in the clause where it appears other

3    provisions in the terms and conditions that relate to

4    health plans, there is a lot of contractual context

5    that we need in order to argue about what "other

6    offer" means.

7              But I do want to turn to enforcement

8    also.

9              So as Mr. Sandick said, there are other

10   eligibility requirements that are not at issue.  For

11   example, if you're on Medicare or Medicaid, or you're

12   not of a certain age, et cetera.

13             Part of our argument is that until they

14   decided to bring this lawsuit we don't think J&J

15   actually ever contemplated that the "other offer"

16   provision covered members on SaveOn plans.  They

17   never actually thought that being on a SaveOn plan

18   ran afoul of the "other offer" provision.

19             And part of the evidence of that will be

20   that they did enforce eligibility criteria.  That

21   they were able to enforce other parts of the terms

22   and conditions, on Medicare, Medicaid, on age

23   requirements, et cetera, but they never sought to

24   enforce their new position on SaveOn until they

25   brought this lawsuit.

Page 21

1          We think that information is highly

2     relevant circumstantial evidence to show their course

3     of performance was they didn't actually believe that

4     "other offer" applied to the SaveOn program.

5          And so we need to see what they were

6     doing in terms of enforcing the terms and conditions

7     generally not just on "other offer."

8          MR. SANDICK:  Your Honor, two things:

9     First of all, on the subject of enforcement, since

10    these letters were submitted I think in August we

11    have already agreed to produce what are either

12    directly through us or by asking our vendor, a

13    company called Trial Card, to produce what are known

14    as benefits investigations.  And those are the

15    enforcement documents.  We're in the process of

16    making those productions for the relevant time period

17    right now.

18          So the enforcement issue I think by

19    virtue of concessions made by HCS, by J&J, is already

20    being addressed.

21          I want to also though pause for a moment

22    on the subject of whether the other terms next to

23    "other offer" in that particular term and condition

24    are relevant.

25          I think it's important to say two

Page 22

1    things.  First of all, this particular language,

2    coupon, discount, prescription savings card, free

3    trial, those are primarily what is driving the hit

4    count for the search terms they have proposed.

5    Something like maybe two-thirds or three-quarters of

6    the documents that they are asking to be reviewed

7    relate not to "other offer," which, by the way, have

8    already been the subject of search terms.  That's

9    why, as your Honor pointed out, we have already

10   produced thousands of pages of documents.  But the

11   search terms that they are proposing go way beyond

12   that, into any time that someone uses the word

13   "coupon" and the word "Janssen," we would have to

14   produce those documents.

15           That is why Judge Waldor told -- well,

16   one of the reasons why she told them back in October

17   and in the order that they needed to narrow their

18   requests, not just the search terms, but the requests

19   themselves, that this is too broad, it goes beyond

20   the scope of what is actually necessary to resolve

21   this case.

22           And if we were focusing on things like

23   "other offer" language, again, we've already made a

24   lot of production on that.  And we had offered

25   before, as your Honor pointed out, to do some

Page 23

1    additional production on that subject.

2            It's when you blow it open into

3    everything -- every word that is used on the sheet of

4    terms and conditions that the burden in terms of

5    document review goes through the roof.  And as we

6    pointed out, probably for very little benefit.

7    Because these are standard industry terms that are

8    used in the co-pay program area and also used in all

9    sorts of other consumer areas.  The ABA said this is

10   a standard term in all consumer discount programs.

11           JUDGE WOLFSON:  So what I'm hearing is,

12   but what I want to understand too, is you are going

13   to produce documents with regard to this, quote,

14   benefits investigation.

15           What I want to get back to you here, Mr.

16   Dunlap, what you said a couple of moments ago is what

17   is important to you is to give definition to what

18   they're enforcing and what they're not enforcing, you

19   want to know, well, were you enforcing all of these

20   other programs that you have listed, whether they

21   were Medicare, Medicaid, and all the various coupons

22   and other things, right?

23           MR. DUNLAP:  The eligibility questions.

24           JUDGE WOLFSON:  The eligibility

25   questions.

Page 24

```
 1              You want to know, were you diligently

 2      and regularly enforcing.  You knew SaveOn was there

 3      and you didn't do it.  And you want to make an

 4      argument, so guess what, we're going to tell you, you

 5      never thought of any of these exclusions.

 6              I hear what you're saying.  The question

 7      is, how many documents do we need?  If they're going

 8      to give you what we would call the benefits

 9      investigations, would that not turn up every time

10      that they questioned eligibility?

11              MR. DUNLAP:  We don't think so, your

12      Honor.

13              Let me talk about the benefits

14      investigations.

15              So what they said at the last conference

16      was that ███████████████████████████████
```

Page 25

1            They have so far declined to give us any

2    documents related to those investigations, just the

3    final reports themselves.

4            We got a production the other day.  We

5    had some issues with that.

6            What they're offering to give us is

7    very, very narrow.  They are not offering to give us

8    benefits investigations going to the full relevant

9    time period of this case from 2016 to present.  ████

     ████████████████████████████████████████████████

     ████████████████████████████████████  And they're

12   not offering to give us any documents, there are no

13   enforcement search terms, for example, that go to the

14   enforcement of eligibility criteria or the meaning of

15   things like coupon or discount or benefit card.

16            And I hear what opposing counsel is

17   saying about the search terms.

18            We have proposed search terms to them.

19   We have narrowed those search terms since we put in

20   our letter by about 20 percent.  We have not received

21   I believe a counteroffer from the other side about

22   which of our search terms they would be willing to

23   run.  Their response has generally been no.

24   Certainly inviting us to negotiate against ourselves.

25            We're always glad to talk about

Page 26

```
 1    appropriate search terms here, but we don't have

 2    anything on enforcement.  We're not convinced that

 3    just the benefits investigations process will give us

 4    what we need here.

 5             I'm glad to address the other points he

 6    made, but I think those are the main ones.

 7             MR. SANDICK:  Your Honor, I think there

 8    are a few things I would like to address and correct.

 9             So, first of all, it's not true that we

10    aren't giving other documents relating to the subject

11    of enforcement of the terms and conditions against

12    accumulator and maximizer programs.  We are running

13    to some extent voluntarily and to some extent in

14    response to Judge Waldor's order the so-called CAP

15    terms.

16    ████████████████████████

      ████████

      ████████████████████████████

      █████████████████████████

      █████████████████████████

      █████████████████████████

      ██████████████████████

      ██████████████████████████

      ████████████████████

      █████████████████
```

Page 27

1      As we said in some of our papers, SaveOn

2   goes to great effort to prevent anyone from finding

3   out which patients are in the program. ██████████

   ████████████████████████████████████████████

   ███████████████████████████████████████

   █████████████████████ they go to great length to

7   prevent us from figuring out who is in the program.

8            ███████████████████████████████████

   ████████████████████████████████████████

   ████████████████████████████████████████████

   ████████████████████████████████████████████

   ████████  That's why we have been producing for that

13  category from 2022, the beginning of the year, now up

14  through the date of Judge Waldor's order.

15           JUDGE WOLFSON:  Well, let me go back a

16  moment.

17           We got two things going on.  Now we're

18  talking about dates, how far back we go, but the

19  other is the various enforcement efforts with regard

20  to eligibility, which they have been talking about.

21  And the position there is, SaveOn was in existence

22  prior to 2022.  The fact that you started to take

23  some steps in response to what you believe was a

24  problematic program and would violate your terms in

25  that time frame doesn't address their concern, which

Page 28

1    is, okay, we were around before, and you also came to

2    this conclusion in 2022, whatever, but we'd like to

3    see what generally did you do as enforcement efforts

4    with regard to other eligibility criteria.  Do you

5    police generally?  Do you let things go?

6                    I mean, these are some of the arguments.

7                    I know you have some defenses you also

8    want to raise on, you know, latches, mitigations,

9    whatever, steps that were not taking, but I think

10   that there needs to be some understanding of,

11   generally, what are your enforcement efforts that you

12   take with regard to eligibility criteria.

13                   Now, it has to be cabined in some way.

14   I don't want it to be so broad because there are lots

15   of things here and much of it may not be relevant.

16   So I think we have to understand, or they have to

17   understand, how do you go about enforcing, when do

18   you do so, and there is more information that is

19   needed.

20                   MR. SANDICK:  So, your Honor, a couple

21   of things:  First of all, the subject of benefits

22   investigations.  Benefits investigations are,

23   generally speaking, not relevant to this case because

24   they don't touch on the application of the "other

25   offer" term, they don't touch on how that's applied

Page 29

1    in the context of a so-called maximizer or

2    accumulator program like SaveOn.

3              So what that would lead to, your Honor,

4    if there were to be some expansion of benefits

5    investigations, would be, essentially, meaningless

6    documents about, "Oh, this person is on Medicare.  We

7    can't cover that."  Things having nothing at all to

8    do with the scope of this case.

9              The other thing is, the questions that

10   Mr. Dunlap is raising, if he serves an interrogatory

11   on us that asks those questions, we'd be obliged to

12   answer those questions in a way that would be binding

13   as an admission on JJHCS.

14             To, you know, beat it back and forth in

15   discovery letters doesn't lead to that outcome.

16             JUDGE WOLFSON:  What would that

17   discovery interrogatory look like?

18             MR. SANDICK:  Sure.

19             It would be an interrogatory asking for

20   a statement of what the company's policy was on the

21   issue of enforcement of the terms and conditions.

22             It could ask for --

23             JUDGE WOLFSON:  And then they're going

24   to ask for all the documents that support what that

25   policy is and explain that policy and discuss the

Page 30

 1    policy.

 2              MR. SANDICK:  And we produced those.

 3              JUDGE WOLFSON:  There will be a document

 4    request.

 5              MR. SANDICK:  As to "other offer," we

 6    produced those documents already.

 7              JUDGE WOLFSON:  I'm not so limiting it

 8    at this point.

 9              MR. SANDICK:  So, in any event, the

10    point I'm making is that, the subject of benefits

11    investigation is, unless it has something to do with

12    SaveOn, or maximizer, or accumulator programs, is

13    really just completely irrelevant to this case, and

14    it's going to lead to the production of documents

15    that talk about issues that have nothing to do with

16    the "other offer" term, nothing to do with SaveOn,

17    that just simply show that, you know, there are a

18    host of different eligibility requirements, and can

19    see this patient passing the test, this patient not

20    passing the test, but none of it relating to SaveOn,

21    none of it relating to maximizer or accumulator

22    programs, other than from the time period of 2022 to

23    the present, which we're already engaged in producing

24    documents for.

25              JUDGE WOLFSON:  I think that -- and I

Page 31

1    know that Judge Waldor would constantly say go meet

2    and confer, but I hate kicking the can down the road

3    and keep doing this, but I'm prepared to do it or

4    discuss it with you now, but I think you need to

5    narrow your request.  I believe we got to the crux of

6    it a moment ago, which is, I believe you're entitled

7    to documents that show what policies they had with

8    regard to enforcement of eligibility criteria beyond

9    "other offer."

10              They need a comparison here to what were

11   your policies.

12              Those documents I believe would be

13   relevant.

14              It doesn't mean, therefore, and now we

15   eliminate the burden of going through every time you

16   actually took an individual's eligibility criteria

17   and looked at it.

18              I think let's start with documents that

19   reflect what their policies were and anything that

20   reflects how they would go about enforcing it or

21   instructions given to enforce it, and it will also

22   identify, therefore, for you what areas that they

23   thought were important to enforce.

24              That is of a more general nature.

25              You said they could ask an interrogatory

Page 32

 1    as to that.  The document request is going to follow,

 2    so I'm saying go ahead with the document request

 3    right now.  And it won't be involved with the

 4    individual benefits investigations.

 5                MR. SANDICK:  So what your Honor is

 6    proposing is something limited, essentially, to

 7    policy or discussion of policy.

 8                My concern is that it really should be

 9    tied to "other offer" because once it moves into

10    things like discount, or free trial, or coupon, the

11    burden escalates dramatically.

12                We're talking about the review of

13    perhaps a quarter of a million documents.  And we

14    told them this.

15                We haven't failed to engage them in meet

16    and confer.  I'm happy to relate the history of that,

17    your Honor, if you would like to hear it.  But we

18    have tried throughout to engage them in meet and

19    confer and for months the only position they took

20    was, these are our terms, you need to run them all.

21    Even for two months after Judge Waldor told them to

22    narrow their search terms, told them in court, told

23    them in a written order.  They did not even provide

24    us with narrow search terms, let alone narrowing the

25    request, which is what her order said, that they're

Page 33

 1   going too far, they're taking extreme positions.

 2                  JUDGE WOLFSON:  I read every single

 3   transcript, not just the October one.

 4                  MR. SANDICK:  Yes.

 5                  It was in March too.

 6                  JUDGE WOLFSON:  Okay.

 7                  But you understand what I am saying is

 8   relevant.  I appreciate we don't want every little

 9   document every time they discuss a discount.

10                  When you're talking about policies and

11   discussions with regard to enforcing those policies,

12   no, I don't believe that we're talking about millions

13   of documents.

14                  So come up with better.  I'm not going

15   to create them for you, I mean, I have given general

16   categories about this.  You know, from my

17   perspective, the world has become search terms.  Not

18   how I grew up, or when I was a Magistrate judge, we

19   didn't have search terms.  Okay?  You made a document

20   request and everybody understood what it meant and go

21   find them, wherever they are.  Now everyone needs to

22   define custodians and search terms to make sure that

23   you have done it a certain way.

24                  I have given you what the subject matter

25   is.

Page 34

1              So you think you need search terms to do
2    it, talk about what they are.
3              MR. DUNLAP:  Your Honor, can I ask a
4    clarifying question?
5              JUDGE WOLFSON:  Yes, go ahead.
6              MR. DUNLAP:  So you said that policies
7    regarding enforcement would be relevant.  I've heard
8    my friend on the other side say he thinks enforcement
9    is only relevant as to "other offer."
10              JUDGE WOLFSON:  I already said no.
11              MR. DUNLAP:  I just wanted to clarify it
12    goes to other eligibility criteria as well.
13              Now, we still had -- within the request
14    for this 2016 to 2022 time period, part of our
15    request was also about their understanding and
16    meaning of things like coupon or discount or other
17    terms as well, which I don't believe your Honor
18    addressed in talking about the enforcement side of
19    the request.
20              So we would ask that whatever they do in
21    terms of running additional search terms, and we're
22    glad to continue meeting and conferring with them
23    about that, that there be an understanding that --
24    their understanding, their enforcement -- the meaning
25    of the other terms in that clause, coupon, discount

Page 35

1    and the others, is also relevant and something they

2    look for.

3                    MR. SANDICK:  Your Honor, that's really

4    where the heart of the burden comes in.  If they're

5    asking for every time that someone at JJHCS talks

6    about the word discount in the context of Janssen,

7    you can just imagine the burden that that will

8    create.

9                    JUDGE WOLFSON:  I don't want it that

10   broad, I agree.  So we have to figure out a way to

11   narrow that because, yes, we don't want to bring in

12   things that are not going to be relevant.

13                   So you're going to go back and work as

14   to how to narrow this with the understanding of, I

15   appreciate your argument is, we want to see how they

16   define these terms or interpret them and then use

17   them.

18                   They've already conceded, however, that

19   SaveOn doesn't fall within any of those terms, they

20   only fall within the "other offer."

21                   So I understand -- what I'm trying to

22   figure out is what more that's relevant about

23   understanding how they interpreted coupon, rebate,

24   discount is important to your case?

25                   MR. DUNLAP:  Sure.

Page 36

1          So, as you said, the "other offer"
2    provision is a big piece of this case.  It's a big
3    piece of the tortious interference claim.  What did
4    "other offer" mean?
5          They say it applies to SaveOn services.
6    We say it does not apply to SaveOn services.
7          So to the extent that the court finds
8    that term ambiguous, one of the standard tools of
9    construction that it may use is looking at the terms
10   that go along with it in that same clause.
11          And I'm sure you are familiar with that
12   doctrine.
13          JUDGE WOLFSON:  Absolutely.
14          MR. DUNLAP:  So in order to determine
15   whether or not other offer -- the scope of other
16   offer is like a coupon or discount savings card we
17   need to understand what they believe a coupon or
18   discount savings card meant.
19          So we don't want every time anyone at
20   Johnson & Johnson used the word "coupon."  What we
21   want to understand is, what did they believe, what
22   did they understand those terms within the context of
23   the general terms and conditions meant.
24          We believe that that is relevant.  And
25   if you can give us guidance that that is relevant,

Page 37

1    then we're glad to go back and continue meeting and

2    conferring with them on the search terms that are

3    designed to try and capture that.

4              MR. SANDICK:  Your Honor, Mr. Dunlap

5    said a moment ago words to the effect of, we're not

6    looking for every time that somebody mentioned

7    discount or coupon, but the search terms that they

8    proposed even after Judge Waldor ordered them to

9    narrow their request are exactly what Mr. Dunlap just

10   said --

11             JUDGE WOLFSON:  It's not going to

12   happen.

13             MR. SANDICK:  Okay.

14             Because I think what he is saying is,

15   I'd like guidance.  What I hear him saying is, he

16   would like you to say something that contradicts what

17   you said a moment ago.  And we'd ask you not to do

18   that.

19             JUDGE WOLFSON:  I got it.

20             MR. DUNLAP:  That is not what I said or

21   I asked for.

22             JUDGE WOLFSON:  We have what the

23   position is.  I appreciate your argument.

24             And this is also going again back to

25   interpreting what the terms and conditions mean.  And

Page 38

1    I do appreciate that one of the arguments is going to

2    be, if you look at this entire phrase, and the things

3    that they really wanted to exclude, it gives meaning

4    to "other offer."

5              I know that is your argument, and I

6    understand that, which is why I would permit the

7    discovery on what does that mean.

8              That is different than enforcement.

9              We have gone backwards now.  We are

10   going back to terms and conditions and what this

11   sentence means.  I was on enforcement for a moment.

12   We'll return to enforcement.  But, yes, I do.  But

13   we're not going to have search terms that you're

14   right that every time that phrase comes up it gets

15   produced.  It has to in some way be cabined to

16   capture what we are talking about, which is, what was

17   the understanding of those terms when they were

18   placed into these various agreements, plans,

19   whatever, and documents that reflect what that

20   understanding was and the intent of it.

21             MR. SANDICK:  And we've already produced

22   documents to the extent they exist, to the extent

23   that we have non-privileged documents, from the

24   period of 2016 to 2022.  We've already produced those

25   documents.

Page 39

```
 1              JUDGE WOLFSON:  And I guess you're going
 2    to have a privilege log.
 3              MR. SANDICK:  We do have a privilege
 4    log.  We're going to meet and confer on that subject.
 5    I'm sure that will go on too.
 6              JUDGE WOLFSON:  I would like to go back
 7    now to enforcement.
 8              It's of a similar nature, which is that
 9    the idea is, here, you want to know how vigilant were
10    they about enforcing these various terms that appear
11    here, or whatever the eligibility criteria are.
12              You don't need the underlying
13    investigations on all the other terms.  Right?  It's
14    really to figure out how they decided, one, if there
15    are documents that reflect, we are going to
16    aggressively pursue these terms.  You know, people
17    that get the coupons or whatever.  And do you
18    actually go about enforcing.  You know, because they
19    are going to make an argument you sat back on this
20    one.  Do you sit back on others too, is this kind of
21    what you do, or do you aggressively enforce that and
22    you didn't come about doing this for a few years.
23              These are, again, of a more general
24    nature than every individual one that they do.
25              So, go to work on figuring out -- I
```

Page 40

1    would do it in general categories like I did in the

2    old days, but you'll come up with search terms

3    instead that create all these issues for us -- work

4    on those search terms that capture what I just said.

5            Okay?

6            MR. DUNLAP:  Yes, your Honor.

7            MR. SANDICK:  Okay.

8            JUDGE WOLFSON:  Next.

9            So then, I guess, part of this problem

10   has been we're still talking about the understanding

11   of what "other offer" means, how that overlaps with

12   the specific categories.  We're back to all these

13   search terms.  And I think you found 188,000

14   documents on using certain of the search terms they

15   gave you, and you say, hey, that is too burdensome.

16           MR. SANDICK:  Yes.

17           And after Judge Waldor asked them to

18   narrow their requests, they never narrowed their

19   requests, but they gave us somewhat narrower terms.

20           From an apples to apples comparison, if

21   we look at the same time period and the same

22   custodians, they went from about 180,000 to about

23   150,000.

24           The terms themselves are only slightly

25   narrowed.  The nature of the requests are not

Page 41

1    narrowed at all.  In our view, they have not complied

2    with what Judge Waldor asked them to do.

3              JUDGE WOLFSON:  I could sit here and we

4    could go through search terms and say, how can we

5    better do this, but the goal here is to come up with

6    the documents you need, and not more than you need,

7    which is going to be of no help for you either to

8    review.

9              So -- I hate to send you back to meet

10   and confer.

11             I've given you guidance on what

12   categories or subjects I think are relevant.  Based

13   on that, maybe you can do search terms that are honed

14   better to that.

15             But I want this meet and confer to

16   happen within the next week.  We're back and forth

17   too much.  And to the extent you can't agree, I'll do

18   a Zoom with you.  But we need to move this ahead.

19   Keeping in mind that I've defined for you areas that

20   I think are relevant.

21             Okay?

22             MR. DUNLAP:  We understand, your Honor,

23   yes.

24             Thank you.

25             JUDGE WOLFSON:  Okay, good.

Page 42

1           Now, I guess in January of 2022 there

2    were new terms and conditions for Stelara and Tremfya

3    medications that specifically excluded members of the

4    Defendant plans from CarePath.

5           I know SaveOn has argued that Plaintiff

6    didn't implement new terms and conditions for other

7    drugs.  Kind of a selective enforcement argument

8    maybe being made here.  And I guess you've asked for

9    documents reflecting the decision to revise those

10   terms and conditions for those two drugs, how it's

11   being enforced and implemented.

12          Okay.

13          I think the argument here is that there

14   have been -- the production is deficient, restrictive

15   search terms were used, and custodians, such as

16   Jennifer De Camara and Harman Grossman and Savaria

17   Harris were not added because they are attorneys, but

18   I don't think there has been a privilege log.

19          MR. SANDICK:  So a privilege log has

20   been sent.  They sent us a letter critiquing some of

21   it and we are going to this week, by the end of

22   Friday, send them back a response.  They identified

23   several hundred documents, we've reviewed every one,

24   and we have a response planned for them by Friday

25   close of business, so Friday the end of the day.

Page 43

```
 1              JUDGE WOLFSON:  And then if there are

 2   still documents upon which there is disagreement, I'm

 3   going to do an in camera review of them.

 4              MR. DUNLAP:  Yes, your Honor.

 5              MR. SANDICK:  That is something we're

 6   working through, and, of course, we'll bring it to

 7   your Honor.

 8              On the subject, your Honor, of the

 9   Stelara and Tremfya terms and conditions, this is

10   really related to the CAP issue that was the subject

11   of movement at the October conference.  So we have

12   already produced documents that relate to this issue,

13   documents that show the changes in the Tremfya terms

14   and conditions, documents that show how the CAP

15   program operated, and that is going to be updated

16   right through, as Judge Waldor said, through

17   November 7.

18              So I think this issue is one that I

19   think has been kind of overtaken by events, so to

20   speak, since the letters in August.

21              MR. DUNLAP:  I agree to some extent.

22              Part of the original dispute was were

23   they going to search past July of 2022.  Judge Waldor

24   sort of took that out of everyone's hands by saying

25   go through November, and we understand they're going
```

Page 44

1    to be running all their search terms, so that should

2    capture a lot of it.  I think there are a few pieces

3    that still remain.  One is the issue of these two

4    custodians who are attorneys but there is evidence

5    they worked in a business role at some point.  So we

6    ask that they be added.

7                  There are two additional points.

8                  We had asked that they run --

9                  JUDGE WOLFSON:  Well, I'm assuming, by

10   what I was just asking about, because we always know,

11   in-house attorneys in particular, we have to decide

12   are they acting in their role as an attorney or in a

13   business sense?

14                  I am assuming this is part of the

15   privilege log.  You did go through their documents.

16                  MR. DUNLAP:  No.

17                  MR. SANDICK:  So, your Honor, we have

18   not added these people as custodians.

19                  Mr. Dunlap is wrong.  They play no

20   business role.  They are lawyers.  They are not,

21   let's say, JD's doing business, or former lawyers

22   doing business.  They work in a legal capacity as

23   lawyers for JJHCS.  So their documents do come up

24   from time to time because they will be in

25   communication with the people who are custodians in

Page 45

1    this case, the business people, and when they are,

2    those documents will be withheld or redacted for

3    privilege as appropriate.

4             On very rare occasions they may be in

5    communications with both the business people and

6    people external to JJHCS, and in some of those cases

7    the documents are produced because, obviously, if a

8    lawyer is talking to a complete stranger, that might

9    not be privileged.

10            We have not added them as custodians.

11   In other words, we have not undertaken specifically

12   to review all of the lawyers' files.  And let me tell

13   you why.  It's because, given that they are attorneys

14   working as attorneys, if we are reviewing all of

15   their documents, all we are going to wind up doing is

16   creating a massive privilege log problem for us, and

17   in the end I suppose for them, because their files

18   are going to be, if not exclusively, overwhelmingly

19   privileged, because what they do when they talk to

20   people within the company is going to be conveying

21   legal advice or receiving requests for legal advice.

22            To the extent that they have

23   communications with business people and those are not

24   privileged, those would be produced.

25            JUDGE WOLFSON:  How do you search for

Page 46

1    those, though?  If you're saying you're not doing a

2    search for them as a custodian, how are you

3    determining which I falls in which category?

4                    MR. SANDICK:  Sure.

5                    Let's take an example.

6                    You have a custodian at the company, an

7    employee named Heith Jeffcoat.  If he has e-mails

8    with Savaria Harris, who is the lawyer for JJHCS, we

9    may see those e-mails when we review Heith Jeffcoat's

10   files, and to the extent those documents are

11   privileged, they will be marked privilege, they will

12   be put on the log, they will either be withheld or

13   redacted, depending on the nature of the privilege

14   assertion.

15                   What we're not doing is specifically

16   collecting all of Ms. Harris' e-mails and looking at

17   those separately.

18                   JUDGE WOLFSON:  How about though -- we

19   use Ms. Harris as an example.  She's having

20   communications with Trial Card, she's having

21   communications with a third party outside that it

22   doesn't have a business person on it, so you're not

23   capturing it there, but if you're not doing a search

24   on her, you're not capturing Trial Card because

25   they're not part of the search.

Page 47

 1          MR. SANDICK:  So Trial Card is producing

 2    documents, actually, they're producing custodial

 3    documents from the most important people at Trial

 4    Card.  There has been a separate third-party subpoena

 5    back and forth between Trial Card and SaveOn.  But

 6    Trial Card is producing documents, number one.

 7          JUDGE WOLFSON:  I only gave that as an

 8    example.

 9          Any third party on the outside that she

10    is having a communication with, if you're not doing a

11    search on her, you're not going to capture any of

12    those communications that would not be protected by

13    the privilege.

14          MR. SANDICK:  Well, what we have seen is

15    that her communications will inevitably have business

16    people on them.  She is not doing business work on

17    her own.  She is the legal advisor to JJHCS.  So to

18    the extent that JJHCS is doing business-related work,

19    that is going to be conducted by the business

20    personnel.  And if Ms. Harris is copied on an e-mail,

21    and the e-mail is not a request for legal advice, or

22    the rendering of legal advice, then there will be no

23    privilege assertion.  That is how they have gotten

24    some documents that Ms. Harris is on.  Because not

25    every communication that she is copied on is

Page 48

1    necessarily going to be privileged.

2              But the issue is this:  Should we have

3    to undertake separately the burden of reviewing

4    attorney e-mails, which is very unusual in this

5    context.  It's common when the attorney is not really

6    functioning as an attorney, when the attorney is

7    really -- they have a JD, but they're doing business

8    work.

9              That is not the case here.  These are

10   in-house lawyers for J&J.

11             So if we are required to review their

12   documents separate from reviewing the business

13   people's documents, what we're going to do, you know,

14   we'll have someone sitting at a computer, privilege,

15   privilege, privilege, and at the end they will get

16   thousands more entries.

17             The cost of that to us is significant.

18   The benefit to them will be negligible or

19   non-existent, because these are people engaged in

20   legal work.  They're not doing business work for the

21   company.  They're lawyers practicing as lawyers.

22             MR. DUNLAP:  Your Honor, may I respond

23   briefly to that?

24             JUDGE WOLFSON:  Yes.

25             MR. DUNLAP:  So since the letter went

Page 49

1    out we have seen documents indicating that a couple

2    of these folks did have communications with third

3    parties, not just Trial Card, but another J&J

4    consultant called Archbow.

5              Where I think your Honor is going, and

6    this might be something we can discuss, is something

7    where they don't have to review, in the first

8    instance at least, all the internal e-mails, which

9    really seems to be Mr. Sandick's concern, but start

10   with the production of their communications with

11   third parties outside of JJHCS limited by search

12   terms, specifically folks like Archbow or Trial Card

13   or the other consultants that we know were involved

14   in discussions like this.  That might be a place to

15   start.

16             I just want to note that we have dropped

17   our request for the one in-house lawyer who

18   apparently functioned in a litigation function.

19             JUDGE WOLFSON:  Mr. Grossman?

20             MR. DUNLAP:  Mr. Grossman, yes.

21             So we're only down to these other two.

22   So we would think that that might be a place to

23   start.

24             MR. SANDICK:  Your Honor, even on the

25   issue of external communications there is, of course,

Page 50

1    a privilege doctrine that when someone working

2    outside of the company is either serving,

3    essentially, as a functional employee of the company

4    because of the nature of the work that they're doing,

5    or is part of a discussion in anticipation of

6    litigation, those e-mails involving the lawyer will

7    also be protected.

8              So even the screen that Mr. Dunlap is

9    proposing is a very -- it's a very poor tool for

10   limiting the burden on us.

11             What they are getting is, to the extent

12   that Ms. Harris is on communications with external

13   parties, for instance, let's say -- going to

14   Mr. Jeffcoat again, to use him as an example, he

15   wants to enter into some kind of a contract to help

16   manage the CarePath program, he has back and forth

17   with his business counterpart at this other company,

18   at some point he will copy Ms. Harris on that e-mail,

19   and then there will be some external discussions.

20   But those aren't discussions that drop the business

21   people.  The business people are always involved.

22   Ms. Harris is just there maybe to look at a contract

23   or provide legal advice offline to Mr. Jeffcoat about

24   the nature of the business that is being proposed.

25             So we do object to the inclusion of

Page 51

1    lawyer custodians when we know that these are lawyers

2    doing legal work, not business work.

3              JUDGE WOLFSON:  I want to go back to the

4    limitation that Mr. Dunlap raised, which is as to

5    third parties.

6              Address that.

7              I know you said they subpoenaed Trial

8    Card.

9              That doesn't relieve you.

10             As you know, more than one party could

11   have a document, and sometimes one of the parties

12   doesn't maintain the documents properly.  It doesn't

13   relieve your obligation to produce them as well.

14             So I want to address communications with

15   third parties.

16             And I know you said, well, there could

17   be an occasion where she is having a communication

18   with a third party, but we still believe privilege

19   applies.  And that's when you put it on a privilege

20   log though.  It doesn't mean you produce it, it ends

21   up on a privilege log.

22             What is the problem with the third-party

23   communications?

24             MR. SANDICK:  So third-party

25   communication issue, number one, they are going to

Page 52

1    have -- just saying based on our investigation for a

2    long time in this matter -- Ms. Harris'

3    communications with third parties when she has been

4    copied on an e-mail, or is the recipient of an

5    e-mail, they are going to be business people who are

6    already custodians in this case.  So we are doing

7    this work for no additional advantage.  We're going

8    to be reviewing documents that are already in the

9    files of the business people at JJHCS.

10                   JUDGE WOLFSON:  I hope.

11                   MR. SANDICK:  Well, or at least

12   overwhelmingly so.

13                   I can't sit here and say that there

14   might not be one document that falls outside of what

15   I'm describing, but, again, the question is, what is

16   reasonable and proportional in this context?

17                   They have 16 business unit custodians.

18   They are getting some more as a result of the Court's

19   order.  So they will be getting more production over

20   the next month.

21                   But the question is whether we should be

22   required to review all of the in-house lawyer e-mails

23   for the narrow purpose of seeing if maybe once in a

24   while she has done this.

25                   JUDGE WOLFSON:  I hope not all e-mails.

Page 53

1                What are the search terms you're using?

2                MR. DUNLAP:  Your Honor, may I respond

3    to that?

4                JUDGE WOLFSON:  Yes.

5                MR. DUNLAP:  It's not all of their

6    in-house lawyers.  It's not all of their e-mails.

7    It's just the third-party communications at this

8    point.

9                JUDGE WOLFSON:  Third-party

10   communications on what subject?

11               MR. DUNLAP:  Well, we will limit it to

12   search terms.

13               The reason we're interested in these

14   folks specifically is because the other side has

15   indicated they were involved in revising the Stelara

16   and Tremfya search terms.  So communications they had

17   about the meaning of those terms outside of JJHCS

18   would be very relevant to us.

19               And Mr. Sandick said, well, you know, a

20   lot of times when they communicate outside, they have

21   copied existing custodians.

22               Well, if they have, then those documents

23   will be de-dupped, they will be taken out, they have

24   already been identified for review if they hit on our

25   search terms.

Page 54

1          So we think at least in the first
2    instance they should gather the documents, we can
3    talk about tailored search terms for those
4    custodians, and then give us the numbers, and then
5    they can make a burden argument that is based on
6    actual numbers.
7              JUDGE WOLFSON:  All right, this is where
8    we're going on this.
9              It's only as to two attorneys, it's
10   Jennifer De Camara and Savaria Harris, correct?
11             MR. DUNLAP:  Yes.
12             JUDGE WOLFSON:  Okay.
13             As to them we're only looking at
14   communications to third parties on narrowly-defined
15   search terms, which I don't know what they are yet.
16             MR. DUNLAP:  We're glad to meet and
17   confer.
18             JUDGE WOLFSON:  You will.
19             MR. SANDICK:  And one other thing that
20   is important here, this is only terms and conditions
21   related discovery, that's what their request was, not
22   the whole world of SaveOn.
23             JUDGE WOLFSON:  Yes.
24             MR. SANDICK:  So communications with
25   third parties relating to terms and conditions is

Page 55

1    what your Honor is asking for?

2                JUDGE WOLFSON:  And I think this was

3    really within the Stelara and Tremfya area.

4                MR. SANDICK:  Right.

5                MR. DUNLAP:  Yes, that's why we were

6    interested in them.

7                I will say, if they mention SaveOn to a

8    third party, we do want to know about that.

9                MR. SANDICK:  What is the entitlement to

10   that?

11               MR. DUNLAP:  Because it goes to J&J's

12   awareness of SaveOn and their responses to SaveOn.

13               MR. SANDICK:  This has never been

14   briefed, your Honor.

15               JUDGE WOLFSON:  Yeah, I'm not addressing

16   that today.  If you want to address that with them,

17   you can address that with them.

18               MR. DUNLAP:  I think there are two other

19   issues that I think linger from the later time

20   period.  The custodians was one of the three.

21               So in our original request we had ask

22   that they run I think five search terms during this

23   later time period.  Four of those they had already

24   agreed to run for the earlier time period, but there

25   is one search term that we had asked them to run for

Page 56

 1    the 2022 time period forward that was not caught up

 2    by Judge Waldor's order, and it's my understanding

 3    that they're declining to run it, and it's one that

 4    we think is very important, and it is a term that

 5    asks for the term EI, which is benefits

 6    investigations, which is what Mr. Sandick discussed

 7    earlier, within the same document as Stelara and

 8    Tremfya.

 9                So you may have recalled him saying that

10    through Trial Card they are producing information or

11    copies of benefits investigations they conducted for

12    Stelara and Tremfya because at that point they

13    specifically started asking to look for whether

14    people were on SaveOn advised plans or not.

15                So we want documents relating to those

16    investigations, which is why we asked them to include

17    the search term.

18                I believe they're declining to run it

19    and we think that they should.

20                MR. SANDICK:  Your Honor, they are going

21    to be getting benefits investigations documents

22    relating to Stelara and Tremfya as a result of Judge

23    Waldor's order.  What they need beyond that I do not

24    perceive it or understand it, but maybe they should

25    wait to see what our production is.

                                                        Page 57

1            JUDGE WOLFSON:  See what their

2    production is, and if there is still an issue, I'll

3    resolve it.

4            MR. DUNLAP:  Glad to reserve that.

5            There is just one other issue that I

6    believe is still out there, which is within the

7    documents that they reviewed for this later period,

8    2022 through November of last year, we believe that

9    they should be looking for and producing documents

10   identified by the search terms that go to their

11   enforcement of the Stelara and Tremfya conditions.

12           I believe there was an indication in

13   some of their correspondence that they weren't going

14   to do that.  We don't think there is a basis for

15   that.  We think that if there is a document

16   identified by the search terms and it goes to

17   enforcement of these terms, we need to see it,

18   because we have seen some documents from that time

19   period indicating ███████████████████████████

     ████████████████████████████████████████████

     ████████████████████████████████████████████

     ████████████████████████████████████████████

     ████████████████████████████████

24           We just want to make sure that they're

25   producing documents relating to the enforcement of

Page 58

```
 1   those terms.
 2            MR. SANDICK:  The first time that I ever
 3   heard this issue raised was right now.
 4            I have in front of me the search
 5   terms that they proposed on terms and conditions.  I
 6   don't know what he's saying, how it connects to any
 7   of this.  I'm just totally surprised by what he's
 8   proposing.
 9            JUDGE WOLFSON:  Then talk after we're
10   done.
11            MR. DUNLAP:  Sure.
12            We have met and conferred about this,
13   but we'll do it again.
14            JUDGE WOLFSON:  Okay.
15            Let's turn to the financial documents.
16   I think that's the next thing.
17            Now, what I understand is Plaintiff has
18   produced documents that bear on the following:  The
19   extent of the harm that SaveOn has caused J&J during
20   the relevant time period; and then a number of other
21   things.
22            What are those documents?  That is a
23   general description.  What does that mean?  What are
24   you producing to them?
25            MR. SANDICK:  So what we've produced to
```

Page 59

```
 1    them is ███████████████████████████████████

      ███████████   ███████████████████████████████

      ████████████████████████████████  We have, of course,

 4    agreed to update that through the present.

 5                  ████████████████████████████████████

      █████████████████████████████████████████████

      █████████████████████████████████████

 8          What they are asking for is -- going

 9    back at one point at least to 2009 -- all documents

10    and communications about those budgets.  And they've

11    offered no rational for why they need all documents

12    and communications about the budget.

13            So this is one where we do object on the

14    basis of relevance.

15            What matters is what budget was set; how

16    much was paid.

17                  ███████████████████████████████████████

      ████████████████████████████████████████████

      ███████████████████████████████.  So we've already

20    produced substantial budget data.

21            What we haven't produced is all

22    communications ever about how much money was going to

23    be spent.  We don't think that is necessary for the

24    case.  It creates burden for no benefit.

25            JUDGE WOLFSON:  Okay.
```

Page 60

1              MR. DUNLAP:  So, they bring a GBL claim

2      against us alleging that we caused public harm.

3              One of the things that they allege that

4      we do is that we threaten the financial viability of

5      CarePath.

6              That is right in their complaint.

7              We don't think that SaveOn threatens the

8      financial viability of CarePath, number one.

9              And number two, we don't think that this

10     is a public harm, because CarePath is actually the

11     marketing program.  It is designed to encourage

12     patients to buy Johnson & Johnson's drugs instead to

13     competitors' drugs.

14             And there is case law saying that if

15     what you're really doing is impacting somebody's

16     business, that is not a harm recognizable under the

17     general business law, which is about protecting the

18     public.

19             We need documents showing who sets the

20     budget, why is it set, where do the funds come from.

21             JJHCS is a division of Johnson & Johnson

22     that as far as we know doesn't make any products or

23     offer any services outside of Johnson & Johnson.

24     It's an administrative entity that serves other J&J

25     entities.

Page 61

1              If, in fact, the budget for CarePath is

2     part of the marketing budget, if, in fact, it is not

3     part of some sort of public or charitable effort,

4     that goes a long way in showing that this was a

5     marketing program.

6              If, in fact, we can show that the

7     budget -- the factors that go into setting the budget

8     are not actually impacted by what SaveOn is doing and

9     they're going to keep funding this anyway, that could

10    go a long way in showing that we don't actually

11    threaten their financial viability.

12             What they have produced are a limited

13    number of documents showing amounts paid out under

14    the CarePath program and some budgeting documents,

15    but they're just numbers, they don't show us why the

16    budgets were set, we don't know who sets the budgets,

17    there is no documents indicating any of that.

18             We're not asking for every single

19    communication under the sun about this.  It's a

20    question of whether this is relevant.  And we think

21    it's squarely relevant.

22             And if we can establish that, then we're

23    glad to work on determining who the right custodians

24    are and the search terms and all of that.

25             JUDGE WOLFSON:  Let me first stop you.

Page 62

1              Judge Vazquez talked about public harm

2     in his opinion, and the way he analyzed it was -- he

3     said that "Plaintiffs plausibly allege at least two

4     deceptions as to consumers:  One, enlisting

5     pharmacies to reject Plaintiffs' claims for their

6     prescriptions at the point of sale; and two, failing

7     to inform patients that by enrolling in SaveOn SP can

8     breach the CarePath terms and conditions."

9              The things you're looking to do don't

10    answer those public harm questions.

11             So I want to get away from that for a

12    moment.

13             I think really the focus here is on the

14    harm to the Plaintiff itself and how the discovery

15    relates to that.

16             So let's focus on that.

17             I know that one of the arguments is the

18    viability, economic viability of the program.

19             Okay.

20             Yeah.  Documents that go to that are

21    important.

22             Could be communications go to it.

23             I think at this point what you've

24    done -- I don't know if you have produced any

25    communications.  You have given budgets.  You have

Page 63

1   given I think you know -- let's see -- data.

2               What have you given?

3               MR. SANDICK:  We have given them

4   documents about how co-pay assistance is determined.

5   We answered interrogatory on this subject.

6               They said we don't know who makes the

7   decisions.

8               Literally that exact question of who

9   makes the decisions was the subject of our

10  interrogatory response that we provided this summer

11  after Judge Waldor told us that she wanted us to

12  broaden our response on that.

13              JUDGE WOLFSON:  Okay.

14              MR. SANDICK:  Patient level data to show

15  every patient enrolled, dates of enrollment, the

16  amounts of assistance, the drugs they took, all of

17  this for a six-and-a-half year period.

18              You know, why would they need

19  communications within various parts of the J&J

20  company, not just JJHCS, but other components of the

21  company, why would they need that to figure out what

22  damages are?  There is no need for that.

23              JUDGE WOLFSON:  I will tell you, I think

24  that your requests in the financial area are over

25  broad.

Page 64

1              There may be areas that are pertinent,

2     and I want to define what they are.

3              I think to the extent that the harm

4     being alleged is a financial harm to the CarePath

5     program and, as you call it, the viability of the

6     program, there could be communications that could be

7     relevant.  It's not just what the budget is, but if

8     people are saying, you know, this is going to hurt

9     our bottom line, we're going to be okay, but it's

10    going to hurt our bottom line, that could go to your

11    viability argument.

12              There certainly could be communications.

13              So what I would like is a better or more

14    narrow request for what those communications are as

15    opposed to the entire world.

16              Frankly, the success of these drugs is

17    really not the issue for me or for this case.  These

18    are about programs.

19              I know you say this is really a

20    marketing tool, it's not to help the patient.

21              Maybe.

22              Maybe they're not such good guys.  I

23    don't know, that is not my determination today.  That

24    is not what this is about.

25              They created a program.  They are, you

Page 65

1    know, entitled to enforce the program how they'd

2    like.

3              And this is not a determination of, as I

4    said, are they benevolent here in doing something

5    great or not.  That is not the inquiry.  It's an

6    economic harm that is being alleged.

7              Right?

8              MR. DUNLAP:  Your Honor, may I respond

9    to that?

10             JUDGE WOLFSON:  Yeah.

11             MR. DUNLAP:  So I believe you said

12   that -- and you cited the Court's opinion in talking

13   about the harm and pointing to things like failing to

14   say that signing up for whatever it is allegedly

15   breaches the contract.

16             I just want to clarify the elements of

17   the GBL claim.

18             I believe when Judge Vazquez was talking

19   about those things he was talking about the

20   underlying acts.

21             The elements are, you have to have an

22   act that is consumer facing, public facing, that is

23   deceptive or missing.

24             That is one.

25             Two, that act has to cause some sort of

Page 66

1    harm to the public.

2              And then third, that act also has to

3    cause some sort of harm to the Plaintiff bringing the

4    suit.

5              So when he was talking about failing to

6    tell patients that they breached their contract, he

7    was talking about the deceptive act, one of the

8    alleged deceptive acts.  He wasn't talking about the

9    harm that they allege.

10             The harm that they allege, if you look

11   at the complaint --

12             JUDGE WOLFSON:  Yeah, but I'm looking at

13   his opinion right here.

14             You're right, he is talking about the

15   deception.

16             But turning to Defendant's argument.

17             "The Court first agrees with Plaintiff

18   that a plausible belief that Defendant deceived

19   participants already enrolled in CarePath.

20   Similarly, the Court disagrees with Defendant's

21   reading that the statute requires a threat to the

22   health or safety of the public at large.  While

23   Plaintiff must plausibly allege some harm to the

24   public at large, while a threat to the health or

25   safety of the public is certainly a way to meet this

Page 67

1    obligation, the statute is not related to health and

2    safety harms," and then it goes on to say what he

3    says.

4              Now, you may think that his opinion

5    didn't adequately address harm, but we have what he

6    did.  And, you know, it's not a lengthy opinion, and,

7    you know, but it is what is, and that is how he did

8    it.

9              But I want to get to, I think that -- I

10   believe that this financial information overall, your

11   request 28, 29, and I think 30, are over broad, and I

12   want to talk about what narrow requests could be

13   relevant to your claim.

14             MR. DUNLAP:  Your Honor, I don't want to

15   belabor this, but just in response to what you said,

16   which is, what the Court did was it disagreed with

17   our basis to dismiss the complaint in terms of

18   allegations of harm to the public.  So as I

19   understand it, he allowed J&J's allegations to go

20   through to discovery.

21             Those allegations of harm, paragraph 114

22   of their complaint, says SaveOn causes damage to the

23   public, including patients, through a series of

24   things, one of which is jeopardizing the viability of

25   patient assistance programs like CarePath by making

Page 68

1    them prohibitively expensive.

2              JUDGE WOLFSON:  But that is the point.

3              I am saying discovery about the

4    viability of the program is fine.  That is the

5    limitation.  And so that's what I'm focused on.  But

6    that's why I'm saying, things that you're saying

7    about, oh, but let's see how much money J&J makes on

8    Stelara, let's see how much money J&J makes overall,

9    is really not the issue.  I want to focus on the

10   program itself.

11             MR. SANDICK:  And, your Honor, just to

12   clarify the subject of the public harm that we're

13   alleging.

14             The public harm in this case is not even

15   exclusively or primarily this viability issue, what

16   it is, and as we have seen in discovery, is across

17   the country patients who come into contact with the

18   SaveOn program find their lives made much worse by

19   it.  ████████████████████████████████████████

20   ██████████████████████████████████████

21   ████████████████████████████████████████████

22   ███████████████████████████████████████████

23   █████████████████████████████████████████████

24   ███████████████████████████████████████████████

25   ████████████████████████████████████

Page 69

1              So the idea that somehow this will be a

2     case primarily about the viability of SaveOn, 349, as

3     I'm sure the Court knows, is a statute about consumer

4     harm, and consumer fraud, and the consumers have been

5     very badly harmed.

6              That evidence will be what this trial is

7     about.

8              JUDGE WOLFSON:  That is fine, but I want

9     to now get to the other aspect, which was what his

10    requests were about, which is the viability of

11    CarePath and what documents are necessary to talk

12    about that economic harm that challenged the

13    viability of CarePath.  And let's come up with

14    requests that are more narrowly tailored to that.

15             I don't think getting discovery on, you

16    know, gee, you're making -- you know, this is really

17    a marketing program, or, more broadly, J&J makes a

18    lot of money on these drugs.

19             Let's break it down.

20             So, with regard to CarePath

21    specifically, what do you think you're missing that

22    you need to give you the discovery you require to

23    show how this impacts the viability of CarePath.

24             MR. DUNLAP:  We need to understand how

25    Johnson & Johnson sets the CarePath levels, how it

Page 70

1    decides on the budget, where that is done, the

2    factors that go into it, and relevant communications

3    about that.

4                    JUDGE WOLFSON:  Okay.

5                    Frankly, I find that okay.

6                    So that's where we are.

7                    Let's move onto the next.

8                    J&J's return on investment from

9    CarePath.

10                    MR. DUNLAP:  I'm glad to speak about it.

11                    Return on investment documents we think

12    goes to fundamental issues of injury and damages.

13                    Fundamental issues of injury and

14    damages.

15                    Their allegation is that somehow what we

16    do causes them to pay out more in CarePath, in these

17    co-pay assistance funds, and they say, we don't want

18    to be paying this much money, it costs us however

19    much it costs us, that is our injury, and those are

20    our damages.  We will figure that out.

21                    Part of what SaveOn does on behalf of

22    its plan clients is it helps more people enroll in

23    CarePath and take more Janssen drugs.

24                    So we believe that if you look at the

25    additional patients who have signed up for CarePath,

Page 71

1    the additional patients who have bought more Janssen

2    drugs as a result of what we are doing on behalf of

3    our clients, that Johnson & Johnson has made much

4    more money in terms of drug sales, new drug sales, it

5    otherwise would not have made than in the money that

6    it pays out.

7              Now, it has been well documented,

8    including congressional hearings, that a lot of drug

9    companies specifically monitor their return on

10   investment.

11             You can spend a little bit of money to

12   help patients take your drugs as opposed to a

13   competitors.  You can sell many more of these drugs

14   that the commercial health plans then basically pay

15   for.

16             That's why they do this, it's part of

17   the purpose of the program, not to benefit the

18   public, but to make this amazing investment, this

19   amazing return for themselves.

20             So that goes to whether it's a public

21   harm.

22             But it also goes to the question of

23   injury and damages.

24             If we are signing more people up and

25   they are paying more in CarePath assistance funds,

Page 72

1    but they're making much more in drug sales, we think

2    that offsets or eliminates their damages, and it

3    might offset or eliminate their entire injury.

4              These return on investment documents are

5    absolutely critical to us.  We can talk about the

6    scope of how we get them, the type of data they

7    produce, the type of communication they produce, but

8    the subject of return on investment is critical to

9    our defenses on injury and damages, and it's relevant

10   to questions of public harm and GBL.

11             MR. SANDICK:  Judge, I would like to

12   respond.

13             JUDGE WOLFSON:  Sure.

14             MR. SANDICK:  This argument is

15   essentially that if CarePath, you know, and Johnson &

16   Johnson are still able to make money despite the

17   looting of the program that his client has engaged

18   in, then, you know, it's okay.  It's okay to steal

19   from someone, and to loot a program, so long as at

20   the end of the day they're still making money.

21             If this program was helping the

22   pharmaceutical manufacturers, as Mr. Dunlap suggests,

23   why have they gone through such extensive efforts to

24   hide their existence, to prevent us from knowing who

25   was in the program?

Page 73

1              If these were something that, you know,

2    advanced the profitability of the CarePath program,

3    or of pharmaceutical industry generally, why are they

4    hiding this from everyone?

5              This is a made for litigation argument

6    to obtain documents that have nothing to do with the

7    case in an effort to shift the case from a fairly

8    specific question, do their efforts lead CarePath to

9    pay more money than it would pay in the absence of

10   CarePath, into a huge question about how much money

11   is J&J making on its drugs, can it afford to absorb

12   some losses here because they're generally a

13   profitable company, things that are just totally

14   irrelevant.

15             Also, just for a moment on the burden

16   issue.

17             The question of how much money does a

18   drug company make on a particular drug is not a

19   simple question, you know, residing in a couple of

20   paper files in someone's office.  This is a massively

21   complicated question that goes to virtually every

22   corner of the entire J&J company to figure out, you

23   know, is a drug profitable relative to what?  To

24   other investments?  To other potential drugs?

25             It's an effort to place a huge burden on

Page 74

1    us for no benefit in the lawsuit.  It's totally

2    irrelevant to the lawsuit whether or not the whole

3    company of Johnson & Johnson makes more money or less

4    money.

5             The question is, are they inducing

6    people to breach the terms and conditions, the

7    patients, are they forcing them to do this in order

8    to get their medication, are they causing harm to

9    those patients, and does this lead to an increase in

10   the amount of co-pay support that we would pay absent

11   that?

12            They are reframing this to entities, by

13   the way, that are not part of this lawsuit.

14            JUDGE WOLFSON:  Well, that's why I want

15   to ask a question.

16            May I stop you there for a minute?

17            MR. SANDICK:  Sure.

18            JUDGE WOLFSON:  I find this curious, and

19   I have been wondering about this as I've looked at

20   this case since the beginning, the only Plaintiff in

21   this case is JJHCS, not J&J.  So the question is, you

22   have just defined, Mr. Sandick, that this is a very

23   narrow harm, narrow in the sense of to this one

24   subsidiary or affiliate that runs the CarePath

25   program.

Page 75

 1              You want to argument more broadly, it's
 2    much more than that.  J&J is making a lot of money.
 3              So, first of all, who funds the CarePath
 4    program?
 5              MR. SANDICK:  So -- I'm not actually
 6    sure what the -- it's something within the Johnson &
 7    Johnson family of companies, but I couldn't say
 8    specifically.  I think there are specific drugs that
 9    fund -- essentially that fund their own co-pay
10    support, it's not decided in one person's office
11    sitting alone.
12              JUDGE WOLFSON:  Okay.
13              So those decisions are made somewhere
14    else within corporate J&J perhaps, it's not limited
15    to this one entity who is the Plaintiff in the case,
16    but who may be the one administering it.
17              I understand your arguments, Mr. Dunlap.
18    I'm not buying it at the moment.
19              What I don't want to see happen too in
20    this case is that this becomes, essentially, J&J is a
21    big company that makes a lot of money.  Don't cry for
22    them.
23              And I don't think, by the way, any juror
24    is going to believe that anyway, that you're doing
25    something that's greatly going to harm the overall

Page 76

1    J&J company.

2                So that's why I'm trying to figure out,

3    if you're narrowing harm as to the CarePath program

4    itself that exists within this one entity.

5                MR. SANDICK:  That is the case.

6                We are not, for example, this is not a

7    case about lost profits.  This is not a case about

8    the harm, more broadly, to Johnson & Johnson.  This

9    is a program that says, well, the program gets this

10   amount of money.  As a result of SaveOn, they need to

11   spend this amount of money.  And that delta is the

12   financial damage.  And then the patient harm is what

13   we talked about before.

14               JUDGE WOLFSON:  Yeah, that's what I'm

15   dealing with now on financials.

16               MR. DUNLAP:  So I have to reiterate how

17   strongly we believe this is relevant and how

18   important we think these documents are.  And, again,

19   we're glad to talk about exactly which documents they

20   would produce, what sort of data, et cetera.

21               But the name of the program, or it used

22   to be, it was not just CarePath, but Janssen

23   CarePath.  Janssen being the entity that actually

24   sells the drug.

25               They decided to arrange their business

Page 77

1    so that this entity develops and sells the drug,

2    Janssen, and this entity administers the CarePath

3    program, but the two are related.  Of course they

4    analyze their return on investment.  There is, again,

5    congressional testimony showing that a number of

6    these drug companies do that.  And we haven't heard

7    them say that they don't have return on investment

8    related documents.  They figure out how much they're

9    going to give to CarePath to give to patients.  They

10   figure out how much that helps them drive additional

11   sales over in the Janssen entity.

12              We don't think that they should be able

13   to say, well, nothing that happens over in Janssen in

14   terms of additional sales is relevant because they

15   decided to put the CarePath program under JJHCS.

16              We're not trying to stand up and say,

17   oh, J&J makes a huge amount of money generally.

18   We're not interested in baby powder sales or shampoo

19   sales or anything.

20              JUDGE WOLFSON:  I know that.

21              MR. DUNLAP:  But we do think that this

22   fundamentally goes to what the purpose of this

23   program is and what the financial consequences of it

24   are.

25              They want to stand up and tell a story

Page 78

1    that says, J&J provides this money to help patients

2    for their drugs and SaveOn comes in and loots and

3    steals and all the other pejorative terms Mr. Sandick

4    used.

5              We think that that is not true.

6              What we want to be able to stand up and

7    say, they don't offer this program to help patients.

8    They offer this program to help persuade people to

9    buy their drugs instead of their competitors.

10             And what SaveOn does on behalf of its

11   plans actually winds up with them making more money.

12   It's not, oh, they make lot of money, they can afford

13   this.  It's that the direct consequences of the

14   actions that they have put at issue causes them to

15   make more money.  That there is an offset through the

16   additional drug sales that we are able to drive by

17   signing more people up for CarePath that more than

18   offsets the additional CarePath funds that they're

19   spending.

20             This isn't some general argument, they

21   make a lot of money, they can afford it.  That is not

22   what it is.  It is directly tied to the allegations

23   in the complaint.

24             And I have to underscore -- you know,

25   we're glad to narrow, as I said, the search terms,

Page 79

1    the types of requests that we go after here.

2                JUDGE WOLFSON:  Tell me what that

3    narrowing would be.  Let me hear that.

4                And I do appreciate, but I'm assuming

5    you are producing documents about CarePath being

6    created and what it's intended to do and how it's

7    being funded.

8                MR. SANDICK:  Absolutely.

9                And the reason, by the way, it's named

10   Janssen CarePath is not like some secret thing, it's

11   because patients know the company as Janssen.  So if

12   you take Darzalex, you know that is a Janssen drug.

13   Janssen CarePath helps you pay for it.

14               That is the reason that at one time

15   Janssen was part of the name, it's not some broad

16   conspiracy theory.

17               MR. DUNLAP:  We're not alleging a

18   conspiracy theory.

19               JUDGE WOLFSON:  What is the narrow terms

20   you would say?

21               MR. DUNLAP:  We need documents showing

22   Johnson & Johnson's analysis of its return on

23   investment for CarePath.  Not just the data about

24   what it's paid out.  We know thing going to produce

25   that because that's driving their damages.

Page 80

```
 1              JUDGE WOLFSON:  Repeat that.

 2              MR. DUNLAP:  We need Johnson & Johnson's

 3    analysis of its return on investment for the CarePath

 4    program, including how it helps patients adhere to

 5    Janssen drugs once they enroll in CarePath, and we

 6    want relevant communications on that topic as well.

 7              MR. SANDICK:  Your Honor, what that

 8    would require is, essentially, a company wide X-ray

 9    of how much money the company makes on all of these

10    different drugs, how much it costs to make these

11    drugs, how much it costs to market these drugs.  All

12    of that information would be necessary.  A vast

13    project, totally irrelevant to the case.

14              And on the subject of adherence, by the

15    way, this is something that is very important for

16    your Honor to know, ████████████████████████

17    ████████████████████████████████

18    ████████████████████████████████████

19    ███████████████████      We have documents.  We can

20    produce those to the Court if that is relevant, I

21    don't think it is necessary to reach this.  But the

22    notion that the adherence story somehow resides

23    within JJHCS, they've looked at it.  They know

24    already.  Their partner is Express Scripts.  They get

25    all sorts of tremendous industry wide data.  Express
```

Page 81

1    Scripts manages pharmaceutical benefits for more
2    Americans than any other company.  So if there is an
3    adherence story, they would know it.  And what
4    they've have figured out was it's nonsense.  There is
5    no adherence story.
6              And what he said is not a narrowing of
7    the request, when he said, "oh, this is my narrowed
8    request."  It is almost verbatim what they've asked
9    for in the requests, in the discovery correspondence,
10   before Judge Waldor.  It's not a narrowing at all in
11   any regard.
12             MR. DUNLAP:  Can I respond to those
13   points, your Honor?
14             JUDGE WOLFSON:  Go ahead.
15             MR. DUNLAP:  So, first, he's acting as
16   if we're asking him to create a return on investment
17   analysis from scratch and just go out into the
18   company and all the various corners of it and try to
19   figure this out.
20             No.
21             We want whatever analyses they have
22   already done on their return on investment for
23   CarePath.  There has to be existing work product on
24   this.  Whatever finance teams or product teams drive
25   it must have done something.

Page 82

1              JUDGE WOLFSON:  He's limiting it to

2     CarePath not on your drugs.

3              MR. SANDICK:  Well, in order to figure

4     out the question of whether CarePath is helpful you

5     have to look at all of these other issues relating to

6     the manufacturing, development, marketing, and sale

7     of the drugs, and I don't think -- I know Mr. Dunlap

8     keeps saying there is one piece of paper and it will

9     have all the answers -- I don't think that is true,

10    not based on anything I have seen.

11             MR. DUNLAP:  So the return on investment

12    documents would say, we put this much money into

13    CarePath, and then we make this much money in terms

14    of selling additional drugs to patients over in the

15    Janssen entity.

16             We're not asking him to, you know,

17    search every single corner for documents that are

18    irrelevant or -- we want whatever analysis they have

19    done.

20             They do CarePath for a reason.  There

21    must be some analysis of the benefit that CarePath

22    has on Janssen's product line.

23             MR. SANDICK:  The question of whether

24    CarePath operates for charitable purposes or for

25    business purposes is not really relevant to the case

Page 83

1    if they're taking money from it.

2              If you run a car dealership and someone

3    steals a car once a week from your lot, it doesn't

4    matter whether as an overall matter the dealership is

5    still making money, it's still wrong to take cars

6    from people's lots, and it's wrong to induce people

7    to breach their terms and conditions in order to make

8    more money.

9              So the idea that somehow it matters how

10   profitable CarePath is or whether it's prudent for

11   J&J to run it, it's just moving the case far, far

12   away afield from anything in the complaint, the

13   judge's order, into this other subject of, is this

14   segment of J&J's business, the drug segment, is it

15   profitable, and is this just some gold dust from the

16   machine that it's okay for SaveOn to take.

17             Whether CarePath has a huge return on

18   investment or has no return on investment, it still

19   has no bearing on whether they're allowed to do this.

20   It's irrelevant to the case.

21             MR. DUNLAP:  Your Honor, if I could just

22   respond quickly.

23             JUDGE WOLFSON:  Yes.

24             MR. DUNLAP:  It has a huge bearing on

25   whether we have actually damaged them because if the

Page 84

1    action we take by signing someone up for CarePath,

2    what they call the SaveOn program, resulted in a new

3    patient signing up for CarePath, they're saying, wait

4    a minute, we have paid more to that patient than we

5    otherwise would have.  But if by signing them up we

6    gave them more drug sales, we produced more drug

7    sales for Janssen, which is a J&J entity, then that

8    additional money eliminates whatever damage we say

9    was caused -- they say was caused by the additional

10   expenditure of CarePath funds.

11            Now, of course it's fine for him to

12   argument differently at trial if he wants to, but we

13   need these documents to show that we're not actually

14   injuring them.

15            And the car dealership scenario he

16   provides makes no sense, frankly.  If you steal a car

17   a week from a car dealership, that might be illegal,

18   but it's not a GBL claim.

19            JUDGE WOLFSON:  Let me ask you this

20   question:  Mr. Sandick, is there any analysis --

21   their position is, guess what, we make more sales for

22   you.  More people sign up because of the SaveOn

23   program.  And that may not be accurate.  You may

24   dispute it.

25            Is there a document or do you have

Page 85

1    documents that show whether, indeed, as a result of

2    --

3             MR. SANDICK:  If we do and it talks

4    about SaveOn, it would have already been produced.

5             MR. DUNLAP:  Aw, if it talks about

6    SaveOn.  That is the critical point.

7             MR. SANDICK:  Well, yeah, this is a case

8    about SaveOn.

9             There is literally no way to search as a

10   practical matter without going to every corner of the

11   business to generate the information that Mr. Dunlap

12   wants to be generated for this case.

13            JUDGE WOLFSON:  I didn't ask you to

14   generate it.  What I asked was, has anyone done an

15   analysis for documents that exist as to whether there

16   are more patients signing up for your drugs or

17   getting the drugs who are SaveOn customers?

18            MR. SANDICK:  I have seen that analysis

19   in their files stating that it's not true.

20            They have, along with their business

21   partner --

22            JUDGE WOLFSON:  I asked if you have it?

23            MR. SANDICK:  I haven't seen that

24   document.

25            JUDGE WOLFSON:  Answer that question.

Page 86

 1              MR. SANDICK:  I have not seen that

 2    document.

 3              JUDGE WOLFSON:  I'm asking if there are.

 4              Do a search for that.

 5              I want to start in that instance.  I

 6    think that is a starting point.

 7              MR. SANDICK:  What is the search, your

 8    Honor?

 9              JUDGE WOLFSON:  Whether there are

10    documents that exist that have looked at whether

11    there are more patients taking your drugs as a result

12    of being in the SaveOn program.  That's the inquiry.

13              MR. DUNLAP:  Your Honor, may I?

14              JUDGE WOLFSON:  Yes.

15              MR. DUNLAP:  I think it is necessary for

16    them to do that search, but we don't think it should

17    be limited to that.  And let me tell you why.

18              JUDGE WOLFSON:  I'm going to start with

19    that.

20              MR. DUNLAP:  Limiting it to the SaveOn

21    program we think has too narrow a net because if they

22    have documents that say, you know, for every

23    additional hundred people we sign up for taking

24    Stelara, we make this much money, that may not

25    mention SaveOn, but if we could find those documents,

Page 87

1    if we could find that analysis, and then we compare

2    that with our own separate analysis of how many new

3    patients we got to sign up, we can show additional

4    profits to them as well.

5           So the relevant documents may not

6    mention SaveOn.  I understand you want to start

7    narrow, but I just want to put a stake in the ground

8    that we don't think limiting return on investment

9    information to SaveOn is sufficient.

10          MR. SANDICK:  Yeah, I mean, if it

11   doesn't mention SaveOn, then I don't see what it has

12   to do with this issue.

13          I should also point out that going back

14   right to the start of the case we made some requests

15   to SaveOn, saying, we want to know about how your

16   program operates with other pharmaceutical companies,

17   because the public harm in the GBL 349 claim is not

18   limited to harm to patients taking our drugs, it

19   could be patients taking Pfizer's drugs, or some

20   other company's drugs, those could also be harmed

21   under 349.

22          They objected and said, anything beyond

23   Janssen and SaveOn, CarePath and SaveOn, we object

24   to.  And Judge Waldor heard argument and ruled in

25   their favor and said, absent some very specific

Page 88

1    showing, and a couple of times that showing has been

2    made, they don't have to tell you about their program

3    as it ties to other drug companies.  But now they are

4    making the mirrored request saying we have to do

5    something that has nothing to do with SaveOn.

6            MR. DUNLAP:  The mirrored request is

7    about Janssen drugs.  We're not asking them for all

8    kinds -- the draft drugs at issue in this case.

9    We're not asking for return on investment on a whole

10   bunch of drugs that aren't at issue.  What is their

11   return on investment for the drugs at issue, those 14

12   drugs.

13           JUDGE WOLFSON:  I need it to be honed in

14   on SaveOn at the moment, and I'm limiting it to that.

15   You're certainly free to come back to me depending on

16   what we get.  I know we're not done.

17           MR. DUNLAP:  Thank you, your Honor.

18           JUDGE WOLFSON:  All right.

19           But answer that, please.

20           MR. SANDICK:  Okay.

21           JUDGE WOLFSON:  Are those all the old

22   requests?

23           MR. DUNLAP:  Well, I think there was

24   also a pricing issue, a pricing data issue.

25           JUDGE WOLFSON:  The pricing of Janssen

Page 89

1   drugs.

2                    MR. DUNLAP:  I could address that

3   briefly.

4                    JUDGE WOLFSON:  Go ahead.

5                    MR. DUNLAP:  So they allege in their

6   complaint that they have actually lowered the cost of

7   Janssen drugs, and they cite for that something that

8   they call a transparency report, which is a

9   publicly-available document that they put up on a

10  website that says, we have lowered the cost of

11  Janssen drugs, but it provides no actual data.  And,

12  in fact, if you go and look at those reports, it

13  drops footnotes that says, we base this on internal

14  Janssen financials.  But they haven't produced the

15  backup for them.  And, in fact, we think that they

16  don't actually reduce drug prices, that they increase

17  drug prices.  Which is relevant to why these plans

18  are fighting back, because the prices that Johnson &

19  Johnson continues to raise, continues to put

20  financial pressure on the plans.

21                   We also think that there is information

22  showing that one of the reasons they're able to keep

23  raising drug prices is because of the CarePath

24  program and the fact that they're able to get more

25  people through that program to stay on their drugs as

Page 90

1    opposed to taking competitors' drugs.

2                    We think that that is highly relevant to

3    their allegations here.

4                    MR. SANDICK:  Your Honor, I think your

5    Honor may have said a few minutes ago that you didn't

6    think that the price of drugs was relevant in this

7    case, and it's not.

8                    We produced the transparency reports as

9    a way of trying to give them something on an issue

10   that is actually irrelevant.

11                   What they have asked for is, they say,

12   all internal data that supports the net price values.

13                   Net price is, essentially, the price

14   that matters when we're talking about drug pricing.

15                   And all internal data that supports it.

16                   Again, this would require us to go well

17   outside of JJHCS to go through the entire company and

18   to try to explain what the pricing is, how it changes

19   over time.

20                   First of all, they have a lot of this

21   information already through their business partners,

22   Express Scripts, and Accredo.  Accredo is a pharmacy.

23   The pharmacy collects payment on these drugs.  They

24   know, and their business partners know, what the drug

25   prices are.

Page 91

1            But the case is not about what we charge

2    for the medication, is that a fair price, should be

3    charge something more or something less.

4            JUDGE WOLFSON:  You're not going to

5    argue that your drug pricing was affected by their

6    program?

7            MR. SANDICK:  No.  The drug pricing --

8    we're not seeking lost profits.  Drug pricing is set

9    by reference to a million factors.  SaveOn is not one

10   of them.

11           MR. DUNLAP:  If I could respond on that.

12           JUDGE WOLFSON:  Yeah.

13           MR. DUNLAP:  They say they produced

14   these transparency reports.  Of course they're on the

15   website.  This wasn't really much of a production.

16   It was something that was already available.  And

17   they say the net price is what matters.  And they

18   also say, oh, we have to go outside of JJHCS.  We

19   have to do this wide range search.

20           They put these numbers into the

21   transparency reports.

22           JUDGE WOLFSON:  But I want to know what

23   is the relevance of it.

24           MR. DUNLAP:  It's relevant -- first,

25   it's relevant because we believe it will show that

Page 92

 1   their allegation that they actually lowered real

 2   prices over the course of these years, something

 3   they're intending to tell the jury --

 4                JUDGE WOLFSON:  Well, I hope not.  I

 5   just asked that.  And I'm going to put that right out

 6   there again to Mr. Sandick.

 7                Are you in any way going to put to a

 8   jury that you lowered prices and put that up to

 9   suggest implicitly or explicitly it's because of

10   SaveOn.

11                MR. SANDICK:  This is not a lost profits

12   case.  This is about the CarePath program and whether

13   that funding has had to go up over time because of

14   their efforts.

15                I think that answers your Honor's

16   question.

17                JUDGE WOLFSON:  But you're not going to

18   argue, and by that funding, we've now lowered prices,

19   or we've raised prices, or anything else?

20                MR. SANDICK:  No.  The drug pricing is

21   not set by reference to SaveOn, it's set by reference

22   to a million other things, but not SaveOn.

23                JUDGE WOLFSON:  I'm going to put this

24   right out, Mr. Dunlap, we're on the record today:  If

25   there will be no argument in this case at a trial, or

Page 93

1    at a motion for summary judgment, or wherever it

2    might be, that CarePath in any way has impacted the

3    pricing of these drugs, it's a non-issue.

4                    MR. DUNLAP:  Well, they're going to

5    stand up --

6                    JUDGE WOLFSON:  I'm asking.

7                    I want that representation.

8                    MR. SANDICK:  Yes, that is not the

9    theory of our damages.

10                    JUDGE WOLFSON:  I ask for a

11    representation that you will not make that argument.

12                    MR. SANDICK:  Yes, we are not going to

13    argue that our drug prices were lowered due to what

14    SaveOn has done.

15                    The only argument we will make about

16    damages is how the funding for the CarePath program

17    within JJHCS has changed as a result of their

18    conduct.

19                    MR. DUNLAP:  Paragraph 80 of their

20    complaint they say, "SaveOn SP has inflated patients'

21    drug co-pay obligations even as JJHCS has

22    consistently decreased the price of the drugs

23    targeted by the SaveOn SP program," and it cites its

24    own transparency report, a quote that says, "Net

25    prices for Janssen medicines has declined for the

Page 94

1    fifth year in a row."

2              MR. SANDICK:  But that is not in any way

3    different from what I just said a moment ago, your

4    Honor.  What we say there is that they have taken a

5    bigger share of the CarePath program payments even

6    while we have reduced drug prices, but we are not

7    alleging that the drug price reduction was caused by,

8    was driven by, is related to SaveOn's program.  The

9    drug prices are set not by reference to what SaveOn

10   is doing, by reference to lots of other things, but

11   not that.

12             MR. DUNLAP:  The issue, your Honor, is

13   that we don't think that allegation is true.  We

14   think that, in fact, they have raised drug prices.

15             JUDGE WOLFSON:  Well, I want to know

16   what you're going to do with allegation number 80.

17             MR. SANDICK:  What am I going to do with

18   allegation number 80?

19             JUDGE WOLFSON:  Yeah.

20             MR. SANDICK:  What I'm going to do with

21   allegation number 80 is show that they are taking an

22   increased piece of the co-pay support program.

23             We are not intending --

24             JUDGE WOLFSON:  And that is not

25   impacting your pricing?

Page 95

1              MR. SANDICK:  No.

2              JUDGE WOLFSON:  Lowering your pricing or

3    raising your pricing?

4              MR. SANDICK:  No.

5              That line in there, which is far from

6    central to what our case is going to be about, what

7    that line in there is meant to say is that it is

8    commonly the case in sort of the market of public

9    discourse for insurance companies to say, oh, yes, we

10   know that your drug prices have gone up, but that is

11   not our fault, that is the drug company's fault that

12   raise their prices every year.

13             So we made this sort of rhetorical

14   aside.

15             We are not intending to show, will not

16   show, or not alleging that the cause of drug prices

17   moving up or down is because of SaveOn.

18             MR. DUNLAP:  Well, no, because they are

19   going to stand up and they're going to say, we have

20   been lowering our prices, and then they're going to

21   come in and say, while we have been lowering our

22   prices SaveOn has come in and taken a bunch of our

23   CarePath assistance programs --

24             JUDGE WOLFSON:  I think I heard you're

25   not going to say that.

Page 96

1              MR. DUNLAP:  Well, I thought he said he

2      wasn't limiting it to the damages or the cause of the

3      increase.

4              MR. SANDICK:  No, we are not going to

5      argue that our damages are in the form of lost

6      profits by having reduced prices due to SaveOn.  That

7      is not our theory of the case, our damages, or

8      anything else like that.

9              If they make arguments in their case

10     using SaveOn data about drug pricing, say, no, no,

11     no, actually, these guys are -- you know, they're

12     ganas, they're taking from everyone, then we will be

13     able to come back and say something.  But our case is

14     not about the drug prices being set by reference to

15     anything that SaveOn does.  I want to make that very

16     clear.

17             MR. DUNLAP:  He keeps trying to link it

18     to SaveOn.

19             Put SaveOn aside for a second.

20             He is going to stand up at trial, if it

21     gets there, and say, Johnson & Johnson has been

22     lowering its drug prices.

23             JUDGE WOLFSON:  Why would you say that?

24             MR. SANDICK:  I don't think that we're

25     going to say that.

Page 97

```
 1              MR. DUNLAP:  It's in his complaint.
 2              JUDGE WOLFSON:  I hear it's in the
 3    complaint.  Just because it's in the complaint --
 4    that's why I'm looking for representations today.
 5              MR. SANDICK:  We're not planning to
 6    prove a case about our drug prices.  The case that
 7    we're going to prove on damages, just to spell it out
 8    --
 9              JUDGE WOLFSON:  You're not going to open
10    and say, and you're not going to close and say, we're
11    such good guys, we keep reducing the price, but they
12    stealing from us?
13              MR. SANDICK:  No.
14              JUDGE WOLFSON:  Do you agree you're not
15    going to do that?
16              MR. SANDICK:  I agree that we're not
17    going to do that.  That's not the theory of our case.
18              MR. DUNLAP:  I just want to make clear,
19    he is not going to make any representation that they
20    have been lowering drug prices?
21              MR. SANDICK:  We are not going to make
22    that representation.
23              I want to leave myself one out, your
24    Honor.  If they start making allegations about the
25    greedy drug companies that have raised prices, I
```

Page 98

1    think we're allowed to reply to that.  But that is

2    not something we're planning to present.  And, in any

3    event, they and their business partners have tons of

4    data about this.  ██████████████████████████

5    ██████████████████████████████████████

6    ████████████████████████        ██████████

7    ████████████████████    ████████████████

8    ██████████████████████        Why all the

9    lies and the deception?

10                    MR. DUNLAP:  Well, I'm not getting into

11   all those false accusations.

12                    Look, we had raised the drug pricing for

13   two reasons.  One is that they allege that they were

14   increasing these prices.  And if they are going to

15   make that allegation, we want to see the data on

16   which they are basing that.

17                    JUDGE WOLFSON:  Okay.  I have just

18   gotten a commitment that they weren't.

19                    MR. DUNLAP:  We also want to make the

20   point that it's our understanding that one of the

21   reasons Johnson & Johnson can, in fact, continue to

22   increase its drug prices is because it is able to get

23   patients to commit to taking its drugs through the

24   CarePath program.  That the CarePath program, one of

25   the consequences of it is, that it allows Johnson &

Page 99

1    Johnson to increase drug prices.  That they don't

2    exist separately, that, in fact, it's part of Johnson

3    & Johnson's strategy, that they've increased prices

4    for reasons having nothing to do with material costs

5    or efficacy or anything like that, but just because

6    they can.  And one of the reasons they can do that is

7    because they made the patients pricing sensitive to

8    this program and they keep buying more drugs.  And

9    the cost of that is borne by the employers.  And we

10   think that evidence goes to whether or not this is

11   actually a public harm or not or whether it's a

12   program designed to benefit J&J through increased

13   drug prices.  And we also think it could go to

14   damages and injury if we can show that by adding new

15   patients to the CarePath rolls, where they are able

16   to raise their prices more, not just make more sales,

17   but make more sales at a higher price.  That could

18   offset damages.

19              JUDGE WOLFSON:  Did you want to take a

20   break?

21              COURT REPORTER:  Yes, I would love to.

22              JUDGE WOLFSON:  Okay.

23              (Brief recess taken.)

24              JUDGE WOLFSON:  Mr. Dunlap, you got one

25   minute to summarize.  Before we took the break we

Page 100

1    kind of interrupted you.

2              MR. DUNLAP:  I think I just finished

3    making another pitch about why we thought drug

4    pricing was relevant even if they are not going to

5    affirmatively say that they have been decreasing

6    prices.

7              One other point I just want to make on

8    the financial stuff generally to the extent that your

9    Honor is going back and forth about whether or not

10   it's relevant or wants to put it off.

11             We have seen a number of documents that

12   have been produced since we submitted the letter and

13   since the conference occurred that we think

14   underscores that they do look at return on

15   investments.  And we're glad to make a supplemental

16   submission to you summarizing those documents, and

17   we're happy to do that promptly if that will help

18   you.

19             JUDGE WOLFSON:  Okay.

20             For today I'm not directing that

21   anything further be provided on the financial.  I

22   don't foreclose you if you got something else that

23   you want to submit to me that you think would be

24   convincing, but, first, would you please speak to the

25   other side and confer as to, based on that, why you

Page 101

1    think.

2              MR. DUNLAP:  This is on the drug

3    pricing?

4              JUDGE WOLFSON:  Yes.

5              MR. DUNLAP:  Okay.

6              JUDGE WOLFSON:  Okay, I think the next

7    thing now is with regard to this issue that's been

8    briefed the last week or so on custodians.

9              MR. DUNLAP:  And my associate Ms. Snow

10   is going to present argument on that.

11             JUDGE WOLFSON:  Okay.

12             All right.  So we got a couple of

13   disputes here.  This started with, I guess, 12

14   custodians, et cetera.  November 7 Judge Waldor

15   granted the motion as to six custodians.  And in that

16   regard the Plaintiff is now -- and I think you

17   reached some agreement on that, but the question is

18   the scope of the search terms.  Right now they have

19   been as to the CAP program, the Plaintiff has said,

20   right?

21             MS. SNOW:  Yes, just two narrow terms as

22   to the CAP program.

23             JUDGE WOLFSON:  And I think that you

24   have gone back and forth as to what did Judge Waldor

25   mean.

Page 102

1          Well, guess what?  As Judge Waldor had

2    put in her order, you know, I had the opportunity if

3    I would like to speak to her.  Actually, Wayne

4    communicated with her chambers and we got a response

5    that told us -- well, you know what, I'll let Wayne

6    put into the record because you communicated with

7    them about it.

8          MR. FANG:  The law clerk sent

9    correspondence back to my inquiry.

10         JUDGE WOLFSON:  Tim.

11         MR. FANG:  Tim.

12         And he summarized the dispute as he

13   understands it, and he spoke to Judge Waldor about

14   the differing interpretations, the parties'

15   interpretation of her order.  So, ultimately, what

16   she first said -- what he first said was, and

17   Defendant was right, that the judge did not

18   specifically order specifics regarding new custodian

19   searches, because the judge had asked the parties to

20   work up logistics, but upon reviewing and considering

21   the parties' dispute, Judge Waldor agrees -- and I'm

22   reading his e-mail -- that "Johnson & Johnson's

23   position is the only one that makes sense from a

24   proportionality standpoint.  We were only adding the

25   new custodians because of their association with the

Page 103

1    CAP program. ███████████████████████████

2    ███████████████████████████████████████

3    ███████████████████████████████

4    ████████. Similarly, we will limit the searches

5    of the new custodians' records to the CAP related

6    term that Judge Waldor specified since that is the

7    only reason these people are involved in the

8    discovery in the first place."

9                MS. SNOW:  Your Honor, you know, I hear

10   what she is saying.

11   ████████████████████████████████████████

12   █████████████████████████████████████

13   ████████████████████████████████████████

14   ████████████████

15                I would ask that we be allowed discovery

16   on that earlier time period.

17                Additionally, I think we did raise new

18   evidence that demonstrates why the two narrow

19   searches --

20                JUDGE WOLFSON:  I'm going to address

21   that in a moment.  Okay?

22                ████████████████████

23                MR. SANDICK:  Let me pass it off to

24   Ms. Long.  I have had enough.  I don't want to say

25   anything else for the rest of the day.

Page 104

1          MS. LONG:  I just wanted to clarify, I

2     think as to the search terms at issue in the

3     November 7 order we did meet and confer where we were

4     considering the position that was offered by SaveOn

5     and a potential for compromise in the middle.

6     Ultimately we did not make that compromise.  But

7     prior to the October 30 conference we had agreed to

8     run a specific CAP search term which did not include

9     a SaveOn modifier for the 2016 to 2022 period.  We

10    did that to try to avoid the dispute that ultimately

11    went before Judge Waldor.  And what we took back from

12    the meet and confer was whether to consider running

13    that term over some period of these CAP custodians

14    earlier.

15          Ultimately we said back to Ms. Snow, and

16    we've had several meet and confers on this point,

17    that we did not consider that is what Judge Waldor

18    had ordered us to do so we declined to run the term.

19    ████████████████████████████████████

20    ████████████████████████████████████████████████

21    ████████████████████████████████████████████████

22    █████████████████████████████████

23          It is always possible that there is some

24    correspondence just outside of that window, but

25    consistent with our meet and confer our position has

Page 105

1    been, as Mr. Fang just said, the order prescribed

2    only these search terms and only for that time

3    period, and that is why we cabined our searches

4    accordingly.

5              JUDGE WOLFSON:  She didn't say that,

6    though.  What she said is -- she didn't give a

7    specific order on it, but she said what makes sense

8    to her based on the discussion.

9              So it was not ruled upon.  So to the

10   extent you went back and forth, you're right, I think

11   you're interpreting what her meaning might be, but it

12   does say, the short answer is, "we did not order

13   specifics regarding the new custodian searches.  We

14   wanted the parties to work it out."  And then the

15   rest of the response was her kind of weighing in on

16   proportionality though.

17             So it's not necessarily a done deal.

18             So, let's talk about, is there

19   compromise in here?  That is really where we are.

20   And, one, I want to talk about dates.  I don't

21   understand this whole thing about before 2022.  There

22   is some earlier date involved or not.

23             MS. LONG:  ███████████████████

24   ███████████

25             JUDGE WOLFSON:  ██████████████████

Page 106

1    ████████████████████████

2         MS. LONG:  ████████████

3    ███████████████████████████████

4    ██████████████████████

5         MS. SNOW:  If I can speak on that.  Two

6    points on that.

7         ███████████████████████████

8    ████████████████████████████████

9    ███████████████.

10        JUDGE WOLFSON:  ██████████████████

11   ███████████████████████

12        MR. LoBIONDO:  We'll search for those.

13        JUDGE WOLFSON:  You're going to search

14   for those.

15        MR. LoBIONDO:  ███████████████████

16   ███████████████████

17        MS. SNOW:  So I think my second point is

18   that, really, it's about the essence of the CAP

19   program, and ██████████████████████████

20   ████████████████████████████

21   ███████████████████████████████

22   ███████████  ████████████████

23   █████████████████████████████████

24   ██████████  And that is what we are -- that is what

25   we believe we're entitled to discovery on.

Page 107

1          And I think that for those custodians we

2    do need to go back further.  It is clear that, like,

3    for example, John Hoffman was working on the response

4    to accumulators and maximizers in 2020.

5          And I think there is another additional

6    point I have here, which is that the search terms

7    that they have agreed to run just on the CAP program

8    do not actually capture all of the documents that

9    would be involved in that response, which ultimately

10   turned into that program.

11              JUDGE WOLFSON:  Okay.

12          So you're saying there could be other

13   documents because perhaps even there wasn't a name of

14   a CAP program but the idea of what this program could

15   be was out there and maybe it's not being captured by

16   the search terms?

17              MS. SNOW:  Yes.

18              JUDGE WOLFSON:  What are the search

19   terms?

20              MS. SNOW:  So I believe they're

21   referring to the two additional search terms that

22   were requested in SaveOn's other motion regarding the

23   CAP program, and there is this additional term which

24   they agreed to starting -- they agreed to it in

25   September, which was also covering the CAP program

Page 108

1    specifically, but there are a number of other terms

2    that I'm happy to get into the specifics on but that

3    encompass mentions of SaveOn, mentions of ESI and of

4    accumulator because, of course, many of the documents

5    reveal that ████████████████████████████████████████

6    ████████████████████████████████████.

7                    JUDGE WOLFSON:  And you haven't reached

8    agreement on these?

9                    MS. LONG:  I want to be clear that we're

10   limited as to the new CAP custodians.  We have run

11   these search terms for the original time period and

12   through the refresh as to 17 other custodians.

13                   JUDGE WOLFSON:  Why wouldn't you run

14   them for these?

15                   MS. LONG:  Because, respectfully, their

16   request was cabined -- was about the CAP program.

17   Judge Waldor opened the door about CAP.

18                   We're happy to take the terms back to

19   mid-2021 or to another date, and we can investigate

20   what that date was.

21                   JUDGE WOLFSON:  Well, the reason I asked

22   that is, if these were the people that were somehow

23   involved with the CAP program, they may have been

24   involved in the discussions at an earlier date as

25   well and may be relevant custodians.

Page 109

1          So I'm going to direct that it happen,

2     that you run them for these additional custodians as

3     well.

4          I can't believe they just suddenly

5     appeared just for CAP and didn't have involvement

6     before.

7          MR. LoBIONDO:  They were certainly

8     relevant, your Honor.

9          The argument we made before Judge Waldor

10    and she agreed with was, as I understand it, was, we

11    have custodians that are covering these issues.

12    These people would be cumulative of what we already

13    produced.  And she decided they were not cumulative

14    as to CAP, which is why she thought that they should

15    be added not with respect to proportionality, only as

16    to CAP.

17         JUDGE WOLFSON:  It's four more.  I'm not

18    worried about it.  I'm doing it.

19         MR. LoBIONDO:  It's six more for five

20    years.

21         MS. LONG:  Are we talking about number

22    of custodians or the search terms as to the CAP

23    custodians?

24         JUDGE WOLFSON:  Those custodians that

25    we've agreed to, but running the additional search

Page 110

1    terms on them.

2                      MS. LONG:  Back to 2016?

3                      JUDGE WOLFSON:  Right, what the

4    attorneys agreed to, correct.

5                      MR. SANDICK:  So all of the search terms

6    that we've used in the case, that is your Honor's

7    ruling?

8                      JUDGE WOLFSON:  I don't know of all the

9    search terms, it's whatever is related --

10                     MR. SANDICK:  Because that is the core

11   issue.

12                     MR. LoBIONDO:  This is part of the

13   issue, frankly, that we've been having, which is

14   that, we brief up an issue, they get a ruling they

15   don't like.  They say, no, Judge Waldor actually

16   meant something else.  Judge Waldor said, no, this is

17   what I meant.  And now we're re-litigating it for a

18   third time until they've finally gotten a ruling that

19   is going to give them everything they asked for.

20                     JUDGE WOLFSON:  I don't know about

21   everything.  All I heard was the terms that would be

22   relevant to them would be referring to SaveOn,

23   referring to ESI.  It's not the world.

24                     What I'm trying to capture with them,

25   the only reason is, that I'm saying it, is these are

Page 111

1    CAP people.  The likelihood is that they were

2    involved somehow before this in looking at these

3    issues, and to the extent they were, they should

4    produce documents.  But I want to limit it then to

5    this world, not every search term.

6                    MR. LoBIONDO:  Okay.

7                    JUDGE WOLFSON:  So come up with the

8    search terms that relate to this and confer on it.

9                    MS. SNOW:  Your Honor, we're happy to

10   make a narrow proposal of search terms.

11                   JUDGE WOLFSON:  Okay, let's do it.

12                   New custodians that were brought up in a

13   letter.

14                   I guess you brought up Scott White,

15   Blasine Penkowski, Karen Lade, and Juliette Deshaies.

16                   I think Plaintiff is saying that Judge

17   Waldor rejected proposal of these additional

18   custodians, that they were part of that motion to

19   compel 12, and she ordered only half basically,

20   right?

21                   Okay.

22                   And now what you're claiming is that

23   there are new documents that were not part of the

24   motion before Judge Waldor that show that these

25   proposed custodians have more knowledge than you

Page 112

1    previously knew and presented to her and that you

2    want them to be added, right?

3              MS. SNOW:  Yes, your Honor.

4              There are actually five remaining

5    custodians that were left undecided, and we have

6    renewed our motion as to all five, however, in the

7    event you determine that Judge Waldor did resolve as

8    to -- you know, we don't think the order states

9    that -- it doesn't name those custodians at all.  At

10   the conference she didn't issue a ruling as to those

11   custodians, and so we don't think she's decided

12   those.  But we have also put forth significant new

13   evidence as to White, Penkowski, Lade and Deshaies,

14   as we've mentioned.

15             JUDGE WOLFSON:  Ms. Long.

16             MS. LONG:  Yeah.

17             I think your Honor said our position

18   fairly succinctly.  We believe Judge Waldor already

19   decided this.  I think that is fairly clear from the

20   text of her order.  This issue was part of 27 single

21   spaces of briefing and 146 exhibits that went before

22   Judge Waldor, and ultimately Judge Waldor split the

23   issue.  As your Honor said, there were 12 custodians

24   that were at issue in the motion.  She ordered us to

25   provide six of seven.  We later conferred on which

Page 113

1    six those would be and agreed and resolved as to

2    those.  And I just don't think there is anything

3    ambiguous about the order and what was resolved.

4           JUDGE WOLFSON:  Do you think that --

5    their position is we've identified, now based on new

6    documents I'm assuming that you could not have

7    presented to her at the time because you didn't have

8    them, that based on new documents this is a new and

9    different argument to be made?

10          MS. LONG:  No.

11          If I could take the custodians in turn.

12          First, as to Ernie Knewitz, there are no

13   new documents.  There are no new documents in

14   SaveOn's opening brief.  There are no new documents

15   on the reply brief.

16          As to the remaining custodians that are

17   at issue --

18          JUDGE WOLFSON:  Yeah.

19          Let's start with White and Penkowski.

20          MS. LONG:  Sure.

21          They're the same types of documents that

22   were at issue, for example, calender invitations

23   concerning JALT, et cetera.  And as was before Judge

24   Waldor, the issue with Mr. Knewitz and Mr. White and

25   Ms. Penkowski are all that they serve on what's

Page 114

 1   called the JALT.

 2           We have a senior executive who was on

 3   the JALT.  Her name is Katie Mazuk.  She has already

 4   been designated as a custodian in this case on all

 5   relevant issues on all agreed upon search terms.  And

 6   so any discovery that would be relevant, anything

 7   that the JALT considered, will be produced from Ms.

 8   Mazuk's files.  That is something that was before

 9   Judge Waldor.  That is consistent with the documents

10   that are still before your Honor.  Ms. Mazuk is the

11   senior most executive with responsibility for making

12   decisions about the CarePath program.

13           As to Mr. White.  Mr. White is one of

14   the highest ranking executives in the Johnson &

15   Johnson family of companies and he has no

16   responsibilities day to day for CarePath.

17           Mr. White came up first in a motion that

18   SaveOn brought in June about our interrogatory

19   responses, that was also at issue at the October

20   conference, where we have consistently provided

21   representation to the other side that Mr. White does

22   not have responsibility for -- does not have day to

23   day responsibility for the CarePath program.  He has

24   no unique documents because, again, he is on the

25   JALT, which is the main piece of evidence that SaveOn

Page 115

1  cites.  So is Ms. Mazuk.  And all of the documents

2  that SaveOn has cited Ms. Mazuk is either on or is a

3  custodian of.  The calendar invitations include

4  Ms. Mazuk.  And so the only --

5              JUDGE WOLFSON:  So let me ask you this

6  question:  The documents that they now provided say

7  that -- you know, forget the day to day

8  responsibility -- that White may have been involved

9  in the high level discussions about CarePath,

10 SaveOn's role and how it was impacting Plaintiff's

11 program, litigation.

12             Why do you think that White would not

13 have relevant documents?

14             MS. LONG:  ███████████████████████

15 █████████████████████████████████████████████

16 █████████  █████████████████████████  ██████

17 ████████████████████████████████████████████

18 ███████████████  ████████████████████████

19 ████████████████████████████████████████████

20 █████████████████.

21             And that is consistent with all of the

22 documents that we've cited, including decks and

23 other -- the evidence that is at issue before your

24 Honor today.

25             The other evidence comes down to being a

Page 116

1    counterparty on certain work orders with Trial Card,

2    and, again, I don't see how that is relevant here.

3                And I think the last category of new

4    documents, which, you know, SaveOn points to as kind

5    of a smoking gun by a third party is an ████████

6    ████████████████████████████████████████████

7    ████████████████████████████████████████████

8    ████████████████████████████████████████████████

9    ████████████████████████████████████████████████ et

10   ████████████████████████████████████████████

11   ██████████████████████████████.

12               First, we've now found the calendar

13   invitation -- what we believe is the calendar

14   invitation for this meeting.  It does not include any

15   of those individuals. ██████████████████████████████

16   ████████████████████████████████.  And, also, as

17   your Honor just ordered, ██████████████████████████

18   ████████████████████████████████████████████████

19   ████████████████████████████████████

20   ████████████████████████████.  John Hoffman is one of

21   the CAP custodians that you just ordered additional

22   search terms be run over.

23               So there is not a gap in our production

24   here.

25               I don't see in the document what SaveOn

Page 117

1    is claiming, but even if it was true, those files

2    would be produced already.

3            And I think when we're looking at

4    someone as senior was Mr. White and Ms. Penkowski,

5    and the same would apply for Mr. Knewitz, there is a

6    particular concern about Apex custodians.  And I

7    recognize that the Apex doctrine comes up more so in

8    the context of depositions, but if we're talking

9    about cumulative files from very senior people, I

10   don't think that SaveOn has met that showing.

11   ████████████████████████████████████████████

12   ████████████████████████████████████████████  ██

13   ████████████████████  ████████████████████████

14   ████████████████████  There is no additional

15   benefit to these other custodians.

16           JUDGE WOLFSON:  Ms. Snow.

17           MS. SNOW:  Yes.

18           So, first of all, I just want to address

19   the point that ██████████████████████████████

20   ██████████████████████████.  That's because

21   that's who they actually have produced documents

22   from.  That doesn't mean that that's the only place

23   there are relevant documents.

24   ████████████████████████████████████████████

25   ██████████████████

Page 118

1    ████████████████████████████

2    █████████████████████████

3    ███████    You would -- I have a copy if you'd

4    like.

5              JUDGE WOLFSON:  I have it here too.

6              MS. SNOW:  ████████████████████,

7    █████████████████████████████

8              And I also want to make a point about

9    this document.

10             This is the only -- █████████████

11   ████████████████████████████

12   ████████████████████████████

13             There is not a single document produced

14   before January 2022 that suggests this idea.

15             So what this document shows us is that

16   ███████████████████████████

17   █████████████████████████

18   ███████████████████████████

19             For that reason alone I think he's

20   highly likely to have relevant documents.

21             And just addressing the Trial Card work

22   order.

23             I think we brought up Trial Card a few

24   times today.

25   █████████████████████████████

Page 119



3    Those are very key aspects of how you actually run a

4    program like this. ████████████████████████ a

11          That goes to the viability we have been

12   discussing.  It goes to the harm, because they're

13   having to -- you know, J&J alleges that they're

14   having to up the amount that they're reimbursing

15   patients.

16          JUDGE WOLFSON:  Yeah, so let me ask you

17   this question:  So Scott White is apparently the

18   company group chairman of North America

19   Pharmaceuticals, right?  So one of the highest

20   ranking executives.

24          MS. SNOW:

Page 120

1    ██████████████████████████████████████████

2    ███████████████████    So we see in numerous documents --

3    JUDGE WOLFSON:  At the what level?

4    MS. SNOW:  ██████████    ████████    █████

5    ███████████████████████████████████████

6    ████

7    You know, they make a point about us

8    going after so many executives.  ████████████████

9    ██████████████████████████    █████████████████

10   ████████████████████████████████████

11   ██████████████████████████████████

12   ███████████████████████████████████.

13   ██████████████████████████████████

14   ████████████████████████████████████████

15   ████████████████.

16   JUDGE WOLFSON:  What is it precisely

17   you're looking for Mr. White to produce?

18   MS. SNOW:  Well, I think we've been

19   missing many documents to show who actually -- like

20   the decisions being made.

21   You know, ████████████████████████████

22   ███████████████████    and we're not disputing that.

23   █████████████████████████████████████

24   ██████████████████████████████████

25   ████████████    ████████████████████████

Page 121

1   ██████████████████████   ████████████████████

2   ██████████████████████████████████████████████

3   ██████████████████████████████████████████████

4   ████████████████████████████████████████

5   ██████████

6              ████████████████████████████████████

7   ████████████████████████████████████████

8   ██████████████████

9              MS. LONG:  May I respond?

10             JUDGE WOLFSON:  Yes.

11             MS. LONG:  ████████████

12             Let's start with just a brief look at

13  Exhibit 2.

14             ████████████████████████████

15  ████████████████████████████████████████

16  ██████████████████████

17             ████████████████████████████

18  ██████████████████  ████████████████████

19  ████████████████████████████████████████

20  ████████████████████████████████████████

21  ██████████████████  ██████████████████.

22             What Ms. Snow was talking about,████

23  ████████████████████████████████████████

24  ██████████████████████████████████

25  ████████████████████████.  ████████████████

```
                                                    Page 122
```

1  ████████████████████████████████████████████

2  ████████████████████████  ████████████ ,

3  ████████████████████████  ████████████

4  ████████████████████████████████

5  ███████████████████████████████████████████████

6  ████████████████ .

7                  JUDGE WOLFSON:  But how was that meeting

8  captured?

9                  MS. LONG:  Sure.

10                 So there are a couple of ways that the

11 meeting was captured.  There are, first, these

12 calendar invites.  Usually attaching a presentation.

13 The presentation has content, sometimes relevant to

14 the CAP program, for example.

15                 Ms. Mazuk was on the calendar

16 invitation, was on the e-mail where those decks were

17 communicated.

18                 JUDGE WOLFSON:  But what happens at the

19 meeting, and where is that document?

20                 MS. LONG:  So what happened at the

21 meeting I believe is that the presentation -- the

22 deck is presented and there is a discussion.  I am

23 not aware of any minutes, for example, that come out

24 of that meeting, but if there was subsequent e-mail

25 discussion, it would presumably be as we've seen in

Page 123

1    the documents amongst ███████████████████████

2    ████████████████

3         ███████████████████████████

4    ██████████████████████████████████,

5    ████████████████████████████████    for

6    █████████████████ -- this was at issue with

7    respect to our interrogatories -- different areas of

8    the company that have absolutely nothing to do with

9    the CarePath program.

10            And just, again, to emphasis, as to

11   Mr. Knewitz, we have also stated, for example, that

12   he has nothing to do with CarePath.  He occasionally

13   made statements regarding the lawsuit, and that is

14   the limitation.  We have represented that in

15   interrogatory responses.

16            JUDGE WOLFSON:  Which one are you

17   referring to?

18            MS. LONG:  Mr. Knewitz.  It's

19   K-N-E-W-I-T-Z.

20            JUDGE WOLFSON:  Okay.

21            MS. LONG:  And then as to the remaining

22   folks, again, those decisions would be captured -- to

23   the extent that there are documents, which I think if

24   ████████████████████████████████████

25   ██████████████████████████████

Page 124

1    ███████████████████, but certainly SaveOn is

2    welcomed, as I'm sure they will, to depose Ms. Mazuk

3    to learn about those discussions, but I don't have

4    any evidence, nor do they, that those discussions

5    were otherwise memorialized in e-mails that have

6    somehow been withheld from our productions.

7            If there are relevant communications, if

8    there are relevant documents, decks, minutes, those

9    would have already been produced to opposing counsel.

10           MS. SNOW:  I just have a few quick

11   responses.

12           First of all, to the last point, we need

13   documents before we're taking depositions.  And the

14   standard that is at issue is, have we shown that

15   these individuals are likely to have relevant

16   documents.

17           Going to the point that Ms. Long was

18   making, while it's not in the new evidence, there are

19   ████████████████████████████████████████████

20   ████████████████████████████████████████████

21   █████████████████████████████████

22           JUDGE WOLFSON:  Did you present that to

23   Judge Waldor?

24           I don't want to go over ground that she

25   already decided.  So I don't want to do that.

Page 125

1          I'm only looking at if they're new

2    documents and you have a new argument to make,

3    because she obviously considered this already.

4               MS. SNOW:  Your Honor, if we could just

5    look at the old documents in the context of the new

6    documents.  There is evidence that shows that these

7    ███████████████████████████████████████████████

8    ████████

9            ████████████████████████████████████████

10   ████████████

11              I████████████████████████████████████

12   ███████████████████████████████████

13   █████████████████████████.  ███████

14   ██████████████████████████████  █

15   █████████████████████████████████████

16   ██████████████  ████████████████████████,

17   █████████████████████████████████now,

18   █████████████████████████████████

19   ████████████

20              JUDGE WOLFSON:  I don't know if you want

21   to take these one by one or as a group, I mean, you

22   dealt with them kind of as a group overall, but I

23   have a couple of concerns here.  I certainly don't

24   want to go over ground that Judge Waldor actually

25   dealt with unless, as I said, there was something new

Page 126

1    and there was a reason to do so and to revisit it.

2    Respectfully, I don't think it would be otherwise

3    appropriate.

4              Now, I don't know how well this was

5    addressed or simply if it was, like, get these, this

6    is all you're getting.  You know, you get six

7    custodians, I'm not giving you more, or whatever it

8    might be.

9              MS. SNOW:  So, actually, in the

10   transcript she said, I'm going to order some to

11   start, and then we'll deal with the Apex custodians

12   later, so I think today is that later.

13             JUDGE WOLFSON:  Did she leave that

14   opening?

15             They're seeming to shake their head no

16   on the other side of the table.

17             MS. LONG:  The transcript, your Honor,

18   is long.  In that context, we disagree with what was

19   set forth by Ms. Snow.

20             JUDGE WOLFSON:  Is it the October

21   transcript?

22             MS. LONG:  Yes, it is the October

23   transcript.  We agree on that.

24             But, your Honor, specifically Judge

25   Waldor said, "Well, I thought CAP -- the 12 new

Page 127

1    custodians included CAP custodians, I'm going to open

2    the doors on CAP," and then later, "I'm going to

3    permit additional custodians.  I know we're down to

4    six."  Referencing the six custodians that ultimately

5    Judge Waldor ordered.

6              I think that is also consistent with,

7    frankly, the natural reading of the order that

8    followed the conference.  Here the order read, "With

9    regard to SaveOn's requested relief as set forth in

10   docket entry number 165, custodians' motion, the

11   Court will require" --

12             JUDGE WOLFSON:  I'm looking at the

13   transcript, I'm reading, so if you could wait a

14   moment, please, I'm reading the portion of the

15   transcript.

16             Well, this is what she says, she said,

17   "I said start with four.  Mr. Mangi will talk to them

18   about it.  And then we can discuss the two that

19   you're trying to protect with the Apex doctrine,

20   which is, according to adversary, inapplicable to

21   documents."

22             Mr. Mangi, "Yeah."

23             The Court, "I assume ultimately you're

24   going to want to depose them."

25             MS. ARROW:  Your Honor, what page are

Page 128

1   you on?

2              JUDGE WOLFSON:  119, 120.

3              Well, it doesn't look like she

4   definitively closed the door, that is true.  So I

5   don't think I should look at it that way.  It clearly

6   was a start.  So I don't want to rely on that.

7              So let's talk about the merits of the

8   issue.

9              Now, what are the limited search terms

10  with regard to White and Penkowski that you want to

11  use?

12             MS. SNOW:  We're happy to provide a

13  proposal on that.

14             JUDGE WOLFSON:  Very limited.

15             MS. SNOW:  Very limited, yes, your

16  Honor.

17             JUDGE WOLFSON:  Very limited.

18             Confer with your adversary.

19             MS. SNOW:  And for the time period --

20  the full time period that they've used for every

21  other custodian?

22             JUDGE WOLFSON:  That's fine, but, as I

23  said, these are going to be limited search terms.  I

24  do understand they are high level executives and may

25  be duplicative of what others have, but I also know

Page 129

1    people sometimes write e-mails and do things that

2    don't include everybody else when they want to talk

3    to someone else in the company, and it happens, so

4    there could be other documents, but, please, limit

5    it.

6              Now we've got -- in fact, I mean,

7    ████████████████████████████████████████████

8    ██████.  Very relevant.  I've got quotes from her in

9    e-mails.  I understand others may have gotten them,

10   but that is an important person.

11             Yeah, do your search terms and I'm going

12   to allow it.

13             MS. SNOW:  Thank you, your Honor.

14             JUDGE WOLFSON:  Then we've got Lade,

15   L-A-D-E.

16             MS. SNOW:  Yes.

17             So just to start about the so-called

18   brand employees.

19             There's new evidence -- if you look at

20   Exhibit 6, it includes the e-mail, actually, that

21   ████████████████████    ██████████████████████

22   ████████████████████ -- I can give you a copy of the

23   exhibit.

24             JUDGE WOLFSON:  I have them here, it's

25   just finding where 6 starts.

```
                                              Page 130

 1              Thank you, Wayne.

 2              Okay, I got it.

 3              MS. SNOW:  If you look at the -- I

 4     believe the very bottom of that first page, it says,

 5     ████████████████████████████████████████████████████

 6     ████████████████████████████████████████████

 7     ████████████████████████████████████████████████

 8     ██████████████████████████████████████

 9              So Ms. Lade is a brand employee, and I

10     think -- you know, turning to just looking at the new

11     evidence, in May of 2017 -- if you look at Exhibit

12     11.

13              I'm happy to also give you a copy.

14              JUDGE WOLFSON:  Now, these documents

15     were produced to you because they came through other

16     custodians?

17              MS. SNOW:  Yes.

18              But if you look at Exhibit 11, there's

19     an e-mail -- I'll give you a minute.

20              JUDGE WOLFSON:  Okay, I'm up to 11.

21              Go ahead.

22              MS. SNOW:  So if you look at the second

23     page of that exhibit, there's an e-mail that Ms. Lade

24     sent and there is not a single current custodian on

25     that e-mail, and it's all about --
```

Page 131

1          JUDGE WOLFSON:  So how did you get it?

2          MS. SNOW:  Because later in the thread

3     it was forwarded to a custodian.

4          JUDGE WOLFSON:  Okay.

5          I see you shaking your heads on this

6     side, but that's happenstance, that it ended up being

7     forwarded to someone.  She authored an e-mail, and if

8     it's relevant -- and she's authoring a lot of

9     documents.  I don't know why she would not be a

10    custodian to search if it's relevant material.

11         MS. LONG:  Your Honor, one, there is no

12    mention of SaveOn in this document; and two, I want

13    to be ███████████████████████████████████████

14    ██████████████████    ████████████████████████████

15    ███████████████████████████████████████████████

16    ██████████████████    ████████████████████████

17    ████████████████████████████████████████

18         JUDGE WOLFSON:  Yes, but you take the

19    position that they are.  Yes, you do.  So the fact

20    that they don't isn't really the issue because you

21    are going to be arguing they are.

22         Look, you know what, I have enough on

23    this.  This is someone who you should be getting

24    documents from.  I'm adding it.

25         You know, everybody wants to slice this

Page 132

1    so finely.  It's a huge case.  There is a lot of

2    discovery on both sides.  Let's just do it instead of

3    fighting over it.  It will take you less time to

4    produce and move on than to fight.

5              MS. SNOW:  And, your Honor, to be clear

6    on those, for the regular set of search terms and the

7    full regular time period?

8              JUDGE WOLFSON:  Regular time period, but

9    I don't know about all the search terms.  You have to

10   hone something that is appropriate for her, it cannot

11   be a universe.  I have to have some limitations.

12             So work on those search terms with your

13   adversary please.

14             Okay?

15             MS. SNOW:  And turning to Ms. Deshaies.

16             JUDGE WOLFSON:  Yes.

17             MS. SNOW:  So her primary -- or her

18   relevance in the new additional document is she was

19   working with a really important third party.  The

20   third party is named Archbow.  It's all one word,

21   A-R-C-H-B-O-W.  That third party was working on the

22   ████████████████████████████████████████████

23   ████████████████   ████████████████████████████████

24   ████████████████████████████████████████

25   ████████████████████████████████████████

Page 133

18    JUDGE WOLFSON:  Why is that critical?

19    MS. SNOW:  It's critical to our

20  mitigation defense.

21    They have these ways that they're trying

22  to use to limit their damages.

23    JUDGE WOLFSON:  Aren't there others

24  involved in this issue that are already custodians?

25    MS. SNOW:  There are others involved in

Page 134

1    the CAP program. ███████████████████████

2    ████████████████████████    ████████████

3    ████████████████████████████████████████

4    ██████████████████████████████████

5            JUDGE WOLFSON:  I never understood

6    Erleada to be the driving drug in this whole case.

7            I'm not buying this one.  I have to have

8    some limits.  So I'm not ordering that to be done.

9            Does that take care of all our new

10   custodians?

11           Go ahead.

12           MS. LONG:  I think Mr. Knewitz is still

13   at issue, your Honor.  That was the custodian without

14   any new evidence that we had discussed earlier.  I

15   believe you████████████████████████████████

16   ████████████████████████████.

17           Mr. Knewitz is essentially a PR

18   professional.  ██████████████████████

19   ████████████    ████████████████████

20           JUDGE WOLFSON:  I'm not adding him.

21           You have the ones we've added, Lade,

22   Penkowski and White, but you're going to confer on

23   search terms, please.

24           MS. SNOW:  Yes.

25           Thank you.

Page 135

1              JUDGE WOLFSON:  Anything else open?

2              MR. SANDICK:  No.

3              Thank you, your Honor.  We really

4    appreciate the evident time you spend reading all of

5    this paper and helping us resolve the issues.

6                   Thank you very much.

7              JUDGE WOLFSON:  No problem.

8              MR. DUNLAP:  We greatly appreciate your

9    attention to this.

10                  (Proceedings concluded at 1 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 136

```
 1              C E R T I F I C A T E

 2

 3          I, RUTHANNE UNGERLEIDER, a Certified Court

 4   Reporter and Notary Public of the State of New

 5   Jersey, certify that the foregoing is a true and

 6   accurate transcript of the stenographic notes of the

 7   deposition of said witness who was first duly sworn

 8   by me, on the date and place hereinbefore set forth.

 9          I FURTHER CERTIFY that I am neither

10   attorney, nor counsel for, nor related to or

11   employed by, any of the parties to the action in

12   which this deposition was taken, and further that I

13   am not a relative or employee of any attorney or

14   counsel in this case, nor am I financially

15   interested in this case.

16

17

18

19

20

         RUTHANNE UNGERLEIDER, C.C.R., C.R.R.

21       LICENSE NO. XIO1634, XIO0115

22

23

24

25
```

| & |
| --- |
| **&**   1:4 2:4,8,12 |
| 2:19 36:20 |
| 60:12,21,23 |
| 69:25 71:3 |
| 72:15 74:3 |
| 75:6 76:8 |
| 79:22 80:2 |
| 89:18 96:21 |
| 98:21,25 99:3 |
| 102:22 103:12 |
| 114:14 |

| 0 |
| --- |
| **07102**   2:10 |

| 1 |
| --- |
| **1**   4:25 8:13 |
| 135:10 |
| **10017**   2:20 |
| **10036**   2:5 |
| **101**   2:12 |
| **10104**   2:16 |
| **10178**   2:13 |
| **10:00**   1:19 |
| **11**   130:12,18,20 |
| **1133**   2:4 |
| **114**   67:21 |
| **11883**   136:20 |
| **119**   128:2 |
| **12**   101:13 |
| 111:19 112:23 |
| 126:25 |
| **120**   128:2 |
| **1200**   4:22 |

**1290**   2:15
**14**   88:11
**146**   112:21
**15**   13:3
**150,000**   40:23
**16**   52:17
**165**   127:10
**17**   108:12
**180,000**   40:22
**188,000**   40:13

| 2 |
| --- |
| **2**   119:5 121:13 |
| **20**   16:14 25:20 |
| 120:9 |
| **20,000**   121:3 |
| **200**   119:7 |
| 125:12,18 |
| **2009**   5:22 8:13 |
| 59:9 |
| **2013**   10:12 |
| 12:8 14:24 |
| **2016**   4:25 5:18 |
| 9:21,22 10:1 |
| 19:21 25:9 |
| 34:14 38:24 |
| 103:4 104:9 |
| 106:4,16 110:2 |
| **2017**   130:11 |
| **2020**   107:4 |
| **2021**   106:3,9,20 |
| 108:19 |
| **2022**   4:25 |
| 19:21 24:16,23 |
| 26:18 27:8,13 |
| 27:22 28:2 |

30:22 34:14
38:24 42:1
43:23 56:1
57:8 103:2,14
103:22 104:9
104:22 105:21
105:24 106:1
106:11,16
118:14
**2023**   5:3,18
24:24
**2024**   1:19
**20th**   2:19
**22-2632**   1:3
**24**   1:18
**27**   112:20
**28**   67:11
**28th**   2:12
**29**   67:11

| 3 |
| --- |
| **30**   67:11 104:7 |
| **349**   69:2 87:17 |
| 87:21 |

| 6 |
| --- |
| **6**   129:20,25 |
| **6,000**   121:3 |
| **666**   2:19 |

| 7 |
| --- |
| **7**   24:24 43:17 |
| 101:14 104:3 |

| 8 |
| --- |
| **80**   93:19 94:16 |
| 94:18,21 |

| a |
| --- |
| **aba**   23:9 |
| **able**   20:21 |
| 72:16 77:12 |
| 78:6,16 89:22 |
| 89:24 96:13 |
| 98:22 99:15 |
| 132:25 |
| **above**   1:13 |
| **absence**   73:9 |
| **absent**   74:10 |
| 87:25 |
| **absolutely** |
| 36:13 72:5 |
| 79:8 123:8 |
| **absorb**   73:11 |
| **accessibility** |
| 12:25 |
| **accredo**   90:22 |
| 90:22 |
| **accumulator** |
| 9:19 10:18 |
| 26:12 29:2 |
| 30:12,21 108:4 |
| 108:5 129:7 |
| 130:7 131:13 |
| 131:15 |
| **accumulators** |
| 57:23 106:21 |
| 107:4 132:22 |
| **accurate**   84:23 |
| 136:6 |
| **accusations** |
| 98:11 |

[act - allegation]                                                    Page 2

act  65:22,25
  66:2,7
acting  44:12
  81:15
action  1:3 84:1
  136:11
actions  78:14
acts  65:20 66:8
actual  19:18
  54:6 59:3
  89:11 120:1
  121:20
actually  17:9
  18:2 20:15,17
  21:3 22:20
  31:16 39:18
  47:2 60:10
  61:8,10 75:5
  76:23 78:11
  83:25 84:13
  89:6,16 90:10
  92:1 96:11
  99:11 102:3
  103:13 107:8
  110:15 112:4
  117:21 118:25
  119:3,5 120:19
  125:24 126:9
  129:20
add  6:8,11,18
added  42:17
  44:6,18 45:10
  109:15 112:2
  134:21

adding  99:14
  102:24 131:24
  134:20
additional  5:14
  5:19 6:9 23:1
  34:21 44:7
  52:7 70:25
  71:1 77:10,14
  78:16,18 82:14
  84:8,9 86:23
  87:3 107:5,21
  107:23 109:2
  109:25 111:17
  116:21 117:14
  127:3 132:18
additionally
  103:17
address  3:5
  26:5,8 27:25
  51:6,14 55:16
  55:17 67:5
  89:2 103:20
  117:18
addressed
  21:20 34:18
  126:5
addressing
  55:15 118:21
adequately
  67:5
adhere  80:4
adherence
  80:14,18,22
  81:3,5 98:5,6

adjustment
  26:16 106:23
  130:7 131:14
  131:16
administering
  75:16
administers
  77:2 118:25
administrative
  60:24 68:24
admission
  29:13
advanced  73:2
advantage  52:7
adversaries
  11:17
adversary
  127:20 128:18
  132:13
advice  45:21,21
  47:21,22 50:23
advised  24:18
  56:14
advisor  47:17
affected  91:5
affiliate  74:24
affirmative
  18:1
affirmatively
  100:5
afford  73:11
  78:12,21
afield  83:12
afoul  20:18

age  20:12,22
aggressively
  39:16,21
ago  3:4 10:13
  23:16 31:6
  37:5,17 90:5
  94:3
agree  10:15
  11:4,4 13:13
  14:23 18:9
  35:10 41:17
  43:21 97:14,16
  126:23
agreed  4:25 6:4
  21:11 55:24
  59:4 104:7
  107:7,24,24
  109:10,25
  110:4 113:1
  114:5
agreement
  101:17 108:8
agreements
  38:18
agrees  4:2
  66:17 102:21
ahead  32:2
  34:5 41:18
  81:14 89:4
  130:21 134:11
allegation
  70:15 92:1
  94:13,16,18,21
  98:15

**allegations**
67:18,19,21
78:22 90:3
97:24
**allege** 60:3 62:3
66:9,10,23
89:5 98:13
**alleged** 64:4
65:6 66:8
**allegedly** 65:14
116:19
**alleges** 119:13
**alleging** 18:17
60:2 68:13
79:17 94:7
95:16
**allow** 129:12
133:1
**allowed** 13:14
67:19 83:19
98:1 103:15
**allows** 98:25
**amazing** 71:18
71:19
**ambiguous**
36:8 113:3
**america** 119:18
**american** 123:6
**americans** 81:2
**americas** 2:4
2:15 120:5
**amount** 74:10
76:10,11 77:17
119:14,22
121:2,4,23

125:18
**amounts** 61:13
63:16
**analyses** 81:21
**analysis** 79:22
80:3 81:17
82:18,21 84:20
85:15,18 87:1
87:2
**analyze** 77:4
**analyzed** 62:2
**andrew** 2:16
14:22
**answer** 7:8
11:2,9 15:9
29:12 62:10
85:25 88:19
105:12
**answered** 63:5
**answers** 13:18
82:9 92:15
**anticipation**
50:5
**anyone's**
123:25
**anyway** 57:22
61:9 75:24
**apex** 117:6,7
126:11 127:19
**apologies** 116:8
**apparently**
49:18 119:17
**appear** 39:10
**appeared** 109:5

**appears** 19:5
20:2 121:15,15
**apples** 40:20,20
**application**
28:24
**applied** 21:4
28:25
**applies** 36:5
51:19
**apply** 36:6
117:5
**appreciate** 33:8
35:15 37:23
38:1 79:4
135:4,8
**appropriate**
12:13 26:1
45:3 126:3
130:8 132:10
**approximately**
1:19 4:22
24:22
**april** 4:25
**archbow** 49:4
49:12 116:5,10
132:20
**area** 23:8 55:3
63:24 122:6
**areas** 23:9
31:22 41:19
64:1 123:7
**argue** 13:12
16:18 20:5
91:5 92:18
93:13 96:5

**argued** 42:5
**argues** 5:23
**arguing** 131:21
**argument**
17:13 20:13
24:4 35:15
37:23 38:5
39:19 42:7,13
54:5 64:11
66:16 72:14
73:5 75:1
78:20 84:12
87:24 92:25
93:11,15
101:10 109:9
113:9 125:2
131:16
**arguments** 6:1
28:6 38:1
62:17 75:17
96:9
**arrange** 76:25
**arrow** 2:7
127:25
**aside** 95:14
96:19
**asked** 6:7 7:3
8:9,12 37:21
40:17 41:2
42:8 44:8
55:25 56:16
81:8 85:14,22
90:11 92:5
102:19 108:21
110:19

**asking** 7:20,22
  21:12 22:6
  29:19 35:5
  44:10 55:1
  56:13 59:8
  61:18 81:16
  82:16 86:3
  88:7,9 93:6
**asks** 29:11 56:5
**aspect** 15:22
  69:9
**aspects** 119:3
  134:3
**assert** 13:15
**asserting** 4:1
**assertion** 46:14
  47:23
**assistance**
  19:12 59:1
  63:4,16 67:25
  70:17 71:25
  95:23 121:2,4
**assistant**
  121:16 125:14
**associate** 101:9
**association**
  102:25
**assume** 14:9,17
  125:11,15,16
  127:23
**assuming** 44:9
  44:14 79:4
  113:6
**attaching**
  122:12

**attention** 13:5
  135:9
**attorney** 44:12
  48:4,5,6,6
  136:10,13
**attorneys** 2:7
  2:11,14,18,21
  42:17 44:4,11
  45:13,14 54:9
  110:4
**august** 21:10
  43:20 103:4
**authored** 131:7
**authoring**
  131:8
**authority**
  121:18,20
  125:12
**availability**
  5:13 11:10
**available** 89:9
  91:16 121:2
**avenue** 2:4,12
  2:15,19
**avoid** 104:10
**aw** 85:5
**aware** 122:23
**awareness**
  55:12

**b**

**b** 2:1 132:21
**baby** 77:18
**back** 5:22 9:20
  11:5 12:4,24
  13:3 22:16

23:15 27:15,18
  29:14 35:13
  37:1,24 38:10
  39:6,19,20
  40:12 41:9,16
  42:22 47:5
  50:16 51:3
  59:9 87:13
  88:15 89:18
  96:13 100:9
  101:24 102:9
  104:11,15
  105:10 106:15
  107:2 108:18
  110:2 125:9
**backup** 89:15
**backwards**
  38:9
**badly** 69:5
**bag** 68:22
**base** 89:13
**based** 5:14
  17:17 41:12
  52:1 54:5
  82:10 100:25
  105:8 113:5,8
**basically** 71:14
  111:19
**basing** 98:16
**basis** 57:14
  59:14 67:17
**bear** 5:8 58:18
**bearing** 83:19
  83:24

**beat** 29:14
**began** 8:18,19
  24:16 27:12
**beginning**
  24:23 27:13
  74:20
**behalf** 70:21
  71:2 78:10
**belabor** 67:15
**belief** 66:18
**believe** 8:24
  11:5 13:1
  16:19 18:2
  21:3 25:21
  27:23 31:5,6
  31:12 33:12
  34:17 36:17,21
  36:24 51:18
  56:18 57:6,8
  57:12 65:11,18
  67:10 70:24
  75:24 76:17
  91:25 103:11
  106:25 107:20
  109:4 112:18
  116:13,18
  122:21 130:4
  134:15
**belknap** 2:4
**benefit** 23:6
  25:15 48:18
  59:24 71:17
  74:1 82:21
  99:12 117:15

**[benefits - cap]**

**benefits** 21:14
23:14 24:8,13
24:17,21 25:8
26:3 28:21,22
29:4 30:10
32:4 56:5,11
56:21 81:1
98:6 104:20
**benevolent**
65:4
**best** 26:20
**better** 33:14
41:5,14 64:13
**beyond** 22:11
22:19 31:8
56:23 87:22
**big** 13:11,12
36:2,2 75:21
**bigger** 94:5
**binding** 29:12
119:6
**bit** 71:11
**blasine** 111:15
116:8
**blow** 23:2
**blowback**
133:12
**borne** 99:9
**bottom** 8:10
64:9,10 130:4
**bought** 71:1
**brand** 129:18
130:6,9
**breach** 62:8
74:6 83:7

**breached** 66:6
**breaches** 65:15
**break** 4:13
69:19 99:20,25
**brief** 4:12
99:23 110:14
113:14,15
121:12
**briefed** 55:14
101:8
**briefing** 19:4
112:21
**briefly** 7:19
48:23 89:3
**bring** 13:4
20:14 35:11
43:6 60:1
120:21
**bringing** 66:3
**broad** 8:4
10:23 22:19
28:14 35:10
63:25 67:11
79:15
**broaden** 63:12
**broader** 16:20
**broadly** 69:17
75:1 76:8
**brought** 20:25
111:12,14
114:18 118:23
**budget** 59:2,12
59:15,20 60:20
61:1,2,7,7 64:7
70:1

**budgeting**
61:14
**budgets** 59:3
59:10 61:16,16
62:25
**bunch** 88:10
95:22
**burden** 12:6,25
13:10,12,14
15:11,22,23,25
23:4 31:15
32:11 35:4,7
48:3 50:10
54:5 59:24
73:15,25
**burdenness**
13:9
**burdensome**
12:7,9 40:15
**business** 42:25
44:5,13,20,21
44:22 45:1,5
45:23 46:22
47:15,16,18,19
48:7,12,20
50:17,20,21,24
51:2 52:5,9,17
60:16,17 68:25
76:25 82:25
83:14 85:11,20
90:21,24 98:3
**buy** 60:12 78:9
**buying** 12:9
75:18 99:8
134:7

**c**

**c** 2:3 132:21
136:1,1
**c.c.r.** 136:20
**c.r.r.** 136:20
**cabined** 28:13
38:15 105:3
108:16
**calendar** 115:3
116:12,13
122:12,15
**calender**
113:22
**call** 17:6 24:8
64:5 84:2 89:8
**called** 21:13
26:14 29:1
49:4 114:1
129:17 133:7
**camara** 42:16
54:10
**camera** 43:3
**camouflage**
27:5
**cap** 7:14 26:14
26:16 43:10,14
101:19,22
103:1,5,13
104:8,13,19
106:9,18,19
107:7,14,23,25
108:10,16,17
108:23 109:5
109:14,16,22
111:1 116:21

[cap - circumstantial]                                                                 Page 6

120:24 121:23
122:14 126:25
127:1,2 132:22
133:7,10,12,14
133:16 134:1,2
**capacity** 44:22
**capture** 37:3
38:16 40:4
44:2 47:11
107:8 110:24
124:1
**captured**
107:15 122:8
122:11 123:22
**capturing**
46:23,24
**car** 83:2,3
84:15,16,17
**card** 21:13 22:2
25:15 36:16,18
46:20,24 47:1
47:4,5,6 49:3
49:12 51:8
56:10 116:1
118:21,23,25
119:6 125:19
**care** 1:4 134:9
**careful** 131:13
**carepath** 3:18
10:1,8,18 42:4
50:16 60:5,8
60:10 61:1,14
62:8 64:4
66:19 67:25
69:11,13,20,23

69:25 70:9,16
70:23,25 71:25
72:15 73:2,8
73:10 74:24
75:3 76:3,22
76:23 77:2,9
77:15 78:17,18
79:5,10,13,23
80:3,5 81:23
82:2,4,13,20,21
82:24 83:10,17
84:1,3,10
87:23 89:23
92:12 93:2,16
94:5 95:23
98:24,24 99:15
114:12,16,23
115:9,18,19
119:1,10 121:7
121:21 123:9
123:12 132:25
133:13 134:4
**carepath's** 6:22
118:12,18
120:14
**cars** 83:5
**case** 3:6 8:1
12:14 13:11,12
18:2,11 22:21
25:9 28:23
29:8 30:13
35:24 36:2
45:1 48:9 52:6
59:24 60:14
64:17 68:14

69:2 73:7,7
74:20,21 75:15
75:20 76:5,7,7
80:13 82:25
83:11,20 85:7
85:12 87:14
88:8 90:7 91:1
92:12,25 95:6
95:8 96:7,9,13
97:6,6,17
110:6 114:4
116:16 132:1
134:6 136:14
136:15
**cases** 45:6
**categories**
33:16 40:1,12
41:12
**category** 3:25
27:13 46:3
116:3
**caught** 56:1
**cause** 65:25
66:3 95:16
96:2
**caused** 58:19
60:2 84:9,9
94:7
**causes** 67:22
70:16 78:14
**causing** 74:8
**center** 2:9
**central** 95:6
**certain** 20:12
33:23 40:14

59:18 116:1
117:13 118:2
119:22
**certainly** 4:16
25:24 64:12
66:25 88:15
106:4,7 109:7
118:1 124:1
125:23
**certified** 1:15
136:3
**certify** 136:5,9
**cetera** 4:20
10:25 19:6
20:12,23 76:20
101:14 113:23
**chairman**
119:18
**challenged**
69:12
**chambers**
102:4
**change** 104:20
120:25 121:1,4
**changed** 93:17
**changes** 14:25
43:13 90:18
121:22,23
133:13
**charge** 91:1,3
**charitable** 61:3
82:24
**children** 18:14
**circumstantial**
21:2

cite 89:7
cited 65:12
  115:2,22
cites 93:23
  115:1
citing 133:5
civil 1:3
claim 36:3 60:1
  65:17 67:13
  84:18 87:17
claiming
  111:22 117:1
claims 62:5
clarify 34:11
  65:16 68:12
  104:1 121:19
clarifying 34:4
clause 19:9
  20:2 34:25
  36:10
clear 18:4
  96:16 97:18
  107:2 108:9
  112:19 132:5
clearly 128:5
clerk 102:8
client 14:25
  72:17
client's 9:9
clients 70:22
  71:3
close 42:25
  97:10
closed 128:4

closely 130:7
coherent 13:2
cole 2:19
collecting
  46:16
collects 90:23
colon 68:22
colostomy
  68:22
come 10:19
  12:24 16:1
  33:14 39:22
  40:2 41:5
  44:23 60:20
  68:17 69:13
  88:15 95:21,22
  96:13 111:7
  117:20 122:5
  122:23
comes 35:4
  38:14 78:2
  115:25 117:7
  133:3
commencing
  1:19
commercial
  17:10 71:14
commit 98:23
commitment
  98:18
common 48:5
commonly 95:8
communicate
  53:20

communicated
  102:4,6 122:17
communication
  44:25 47:10,25
  51:17,25 61:19
  72:7
communicati...
  45:5,23 46:20
  46:21 47:12,15
  49:2,10,25
  50:12 51:14,23
  52:3 53:7,10
  53:16 54:14,24
  59:10,12,22
  62:22,25 63:19
  64:6,12,14
  70:2 80:6
  115:15 116:11
  124:7 134:19
companies 13:2
  13:12 71:9
  75:7 77:6
  87:16 88:3
  95:9 97:25
  98:7,8 114:15
company 9:23
  21:13 45:20
  46:6 48:21
  50:2,3,17
  63:20,21 73:13
  73:18,22 74:3
  75:21 76:1
  79:11 80:8,9
  81:2,18 90:17
  119:18 121:7

123:8 129:3
company's
  29:20 87:20
  95:11
compare 87:1
comparison
  31:10 40:20
compel 111:19
competitors
  60:13 71:13
  78:9 90:1
complaining
  17:7
complaint
  18:20 60:6
  66:11 67:17,22
  78:23 83:12
  89:6 93:20
  97:1,3,3
complete 45:8
completely
  30:13
complicated
  73:21
complied 41:1
components
  63:20
comprised
  130:5
compromise
  104:5,6 105:19
computer
  48:14
concede 121:17

conceded 35:18
conceivable
  18:10
conceptualize
  123:3
concern 14:12
  27:25 32:8
  49:9 117:6
concerned
  133:11
concerning
  113:23
concerns
  125:23
concessions
  21:19
concluded 98:5
  135:10
conclusion 28:2
condition 7:25
  21:23
conditions 3:13
  3:19,22 4:24
  5:12,15,25
  7:22,24 9:22
  16:22 17:3,12
  18:9 19:19
  20:3,22 21:6
  23:4 26:11,25
  29:21 36:23
  37:25 38:10
  42:2,6,10 43:9
  43:14 54:20,25
  57:11 58:5
  62:8 74:6 83:7

118:12,18
120:15 121:1
conduct 6:7
93:18
conducted
  24:22 47:19
  56:11
conducting
  24:17
confer 3:10
  14:5,10,18
  15:12,19 31:2
  32:16,19 39:4
  41:10,15 54:17
  100:25 103:11
  104:3,12,25
  111:8 128:18
  134:22
conference 3:4
  24:15 43:11
  100:13 104:7
  112:10 114:20
  127:8
conferences 3:6
conferred
  16:12 58:12
  112:25
conferring
  34:22 37:2
confers 104:16
congressional
  71:8 77:5
connection 3:2
  6:3

connects 58:6
consequences
  77:23 78:13
  98:25
consider
  104:12,17
considered
  106:21 114:7
  125:3
considering
  102:20 104:4
  120:13
consistent 9:8
  15:4 104:25
  114:9 115:21
  127:6
consistently
  93:22 114:20
  117:11 131:14
conspiracy
  79:16,18
constantly 31:1
construction
  36:9
consultant 49:4
consultants
  49:13
consumer 23:9
  23:10 65:22
  69:3,4
consumers 62:4
  69:4
contact 68:17
contemplated
  20:15

content 122:13
contention 7:4
context 4:5
  9:18 19:13
  20:4 29:1 35:6
  36:22 48:5
  52:16 117:8
  125:5 126:18
continue 5:2
  34:22 37:1
  98:21
continues
  89:19,19
contract 18:17
  50:15,22 65:15
  66:6 125:13
contractual
  18:23 20:4
contradicts
  37:16
conveying
  45:20
convince 13:7
convinced 26:2
convincing
  100:24
copied 47:20,25
  52:4 53:21
copies 56:11
copy 15:17
  50:18 118:3
  129:22 130:13
core 110:10
corner 73:22
  82:17 85:10

[corners - damage]    Page 9

**corners** 81:18
**corporate**
  75:14
**correct** 16:9
  26:8 54:10
  110:4
**correctly** 19:7
**corresponden...**
  7:11 57:13
  81:9 102:9
  104:24
**cost** 48:17 89:6
  89:10 99:9
  106:22 133:1
**costs** 70:18,19
  80:10,11 99:4
**counsel** 2:23
  15:17 25:16
  103:12 121:19
  124:9 125:14
  136:10,14
**count** 22:4
**counter** 119:5
**counteroffer**
  25:21
**counterpart**
  50:17
**counterparty**
  116:1
**counting** 17:8
**country** 68:17
**couple** 3:8 9:4
  19:1 23:16
  28:20 49:1
  73:19 88:1

101:12 122:10
125:23
**coupon** 4:1
  18:2 19:6,10
  22:2,13 25:15
  32:10 34:16,25
  35:23 36:16,17
  36:20 37:7
**coupons** 10:25
  17:21 23:21
  39:17
**course** 15:17
  21:2 43:6
  49:25 59:3
  77:3 84:11
  91:14 92:2
  108:4
**court** 1:1,15
  5:1 32:22 36:7
  66:17,20 67:16
  69:3 80:20
  99:21 127:11
  127:23 136:3
**court's** 52:18
  65:12
**cover** 7:10 8:4
  29:7
**covered** 8:6
  20:16
**covering**
  107:25 109:11
**create** 33:15
  35:8 40:3
  68:25 81:16

**created** 9:21
  64:25 79:6
**creates** 59:24
**creating** 10:23
  45:16
**criteria** 20:20
  25:14 28:4,12
  31:8,16 34:12
  39:11
**critical** 12:21
  72:5,8 85:6
  133:18,19
**critiquing**
  42:20
**crucial** 14:24
  133:15
**crux** 12:14 31:5
**cry** 75:21
**cumbersome**
  12:4
**cummis** 2:8,12
**cumulative**
  109:12,13
  117:9
**curious** 74:18
**current** 9:25
  130:24
**custodial** 47:2
**custodian** 6:4
  46:2,6 102:18
  105:13 114:4
  115:3 116:16
  128:21 130:24
  131:3,10
  134:13

**custodian's**
  6:17
**custodians** 3:14
  6:11 33:22
  40:22 42:15
  44:4,18,25
  45:10 51:1
  52:6,17 53:21
  54:4 55:20
  61:23 101:8,14
  101:15 102:25
  103:3,5 104:13
  107:1 108:10
  108:12,25
  109:2,11,22,23
  109:24 111:12
  111:18,25
  112:5,9,11,23
  113:11,16
  116:21 117:6
  117:15 126:7
  126:11 127:1,1
  127:3,4,10
  130:16 133:24
  134:10
**customer** 130:6
**customers**
  85:17
**cutoff** 24:24
**cuts** 16:14

**d**

**d** 129:15 133:8
**damage** 67:22
  76:12 84:8

[damaged - develops]                                          Page 10

| | | | |
|---|---|---|---|
| **damaged** 83:25 | **dealing** 3:18 | **decreased** | **depositions** |
| **damages** 63:22 | 5:4 76:15 | 93:22 | 117:8 124:13 |
| 70:12,14,20 | **dealt** 125:22,25 | **decreasing** | **deprived** 68:19 |
| 71:23 72:2,9 | **deceived** 66:18 | 100:5 | 68:23 |
| 79:25 93:9,16 | **deception** | **deductibles** | **described** |
| 96:2,5,7 97:7 | 66:15 98:9 | 10:5 | 10:25 |
| 99:14,18 | **deceptions** 62:4 | **defendant** 1:9 | **describing** |
| 133:22 | **deceptive** 65:23 | 2:18,21 6:6 | 52:15 |
| **darn** 15:23 | 66:7,8 | 42:4 66:18 | **description** |
| **darzalex** 79:12 | **decide** 44:11 | 102:17 | 58:23 |
| **data** 59:2,20 | 133:9 | **defendant's** | **deshaies** |
| 63:1,14 72:6 | **decided** 20:14 | 66:16,20 | 111:15 112:13 |
| 76:20 79:23 | 39:14 57:20,21 | **defendants** 9:7 | 132:15 133:3 |
| 80:25 88:24 | 75:10 76:25 | **defense** 15:17 | **designated** |
| 89:11 90:12,15 | 77:15 109:13 | 133:20 | 114:4 |
| 96:10 98:4,15 | 112:11,19 | **defenses** 28:7 | **designed** 6:9 |
| **date** 24:24 27:9 | 124:25 | 72:9 | 37:3 60:11 |
| 27:14 105:22 | **decides** 70:1 | **deficient** 42:14 | 99:12 |
| 108:19,20,24 | **decision** 18:19 | **define** 33:22 | **despite** 72:16 |
| 118:6 136:8 | 42:9 119:21,25 | 35:16 64:2 | **detailed** 7:5 |
| **dates** 27:18 | 120:1 134:2 | **defined** 41:19 | **determination** |
| 63:15 105:20 | **decisions** 63:7 | 54:14 74:22 | 64:23 65:3 |
| **day** 25:4 42:25 | 63:9 75:13 | **definition** | 119:8 |
| 72:20 103:25 | 114:12 115:18 | 23:17 | **determine** |
| 114:16,16,22 | 120:12,20 | **definitively** | 11:17,17 24:18 |
| 114:23 115:7,7 | 121:6,20,25 | 128:4 | 36:14 112:7 |
| 120:21,22 | 123:22 | **delta** 76:11 | **determined** |
| **days** 40:2 | **deck** 122:22 | **demonstrates** | 63:4 |
| **de** 42:16 53:23 | **decks** 115:22 | 103:18 | **determining** |
| 54:10 | 122:2,16 124:8 | **depending** | 19:12 46:3 |
| **deal** 3:16 10:14 | **declined** 25:1 | 46:13 88:15 | 61:23 133:6 |
| 105:17 126:11 | 93:25 104:18 | **depose** 117:14 | **development** |
| **dealership** 83:2 | **declining** 56:3 | 124:2 127:24 | 82:6 |
| 83:4 84:15,17 | 56:18 | **deposition** | **develops** 77:1 |
| | | 136:7,12 | |

[device - documents]                                      Page 11

| | | | |
|---|---|---|---|
| **device** 7:7 | **discourse** 95:9 | **dismissal** 12:19 | 5:7,14,19,21 |
| **different** 5:10 | **discoverable** | **dispute** 4:16 | 6:7,10,14,17 |
| 10:6 30:18 | 3:20 | 43:22 84:24 | 7:21 11:11 |
| 38:8 80:10 | **discovery** 3:12 | 102:12,21 | 12:1 15:2,5 |
| 94:3 113:9 | 3:17 4:18 5:1,3 | 104:10 | 16:5,14,20 |
| 116:11 123:7 | 7:3,6,11 9:3 | **disputes** 3:3,17 | 17:18 19:18,22 |
| **differently** | 12:17,21 29:15 | 101:13 | 21:15 22:6,10 |
| 84:12 | 29:17 38:7 | **disputing** | 22:14 23:13 |
| **differing** | 54:21 62:14 | 120:22,23 | 24:7 25:2,12 |
| 102:14 | 67:20 68:3,16 | **district** 1:1,2 | 26:10 27:4 |
| **dig** 26:20 | 69:15,22 81:9 | **division** 60:21 | 29:6,24 30:6 |
| **digital** 15:4 | 103:8,15 | **docket** 127:10 | 30:14,24 31:7 |
| **diligently** 24:1 | 106:25 114:6 | **doctrine** 19:7 | 31:12,18 32:13 |
| **direct** 15:10 | 132:2 | 36:12 50:1 | 33:13 38:19,22 |
| 78:13 109:1 | **discuss** 29:25 | 117:7 127:19 | 38:23,25 39:15 |
| **directed** 5:2 | 31:4 33:9 49:6 | **document** 7:20 | 40:14 41:6 |
| **directing** | 127:18 | 8:3 10:11 | 42:9,23 43:2 |
| 100:20 | **discussed** 11:8 | 11:21 23:5 | 43:12,13,14 |
| **directly** 21:12 | 56:6 134:14 | 27:9 30:3 32:1 | 44:15,23 45:2 |
| 78:22 | **discussing** | 32:2 33:9,19 | 45:7,15 46:10 |
| **disagree** | 119:12 | 51:11 52:14 | 47:2,3,6,24 |
| 126:18 | **discussion** 32:7 | 56:7 57:15 | 48:12,13 49:1 |
| **disagreed** | 50:5 105:8 | 59:1,5 84:25 | 51:12 52:8 |
| 67:16 | 118:17 122:22 | 85:24 86:2 | 53:22 54:2 |
| **disagreement** | 122:25 123:24 | 89:9 116:6,20 | 56:15,21 57:7 |
| 43:2 | **discussions** | 116:25 118:9 | 57:9,18,25 |
| **disagrees** 66:20 | 33:11 49:14 | 118:13,15 | 58:15,18,22 |
| **disburses** 119:1 | 50:19,20 106:1 | 121:15,16 | 59:9,11,17 |
| **discount** 22:2 | 106:3,4,7 | 122:19 125:16 | 60:19 61:13,14 |
| 23:10 25:15 | 108:24 115:9 | 131:12,17 | 61:17 62:20 |
| 32:10 33:9 | 122:2 124:3,4 | 132:18 | 63:4 69:11 |
| 34:16,25 35:6 | 124:20,21 | **documented** | 70:11 72:4 |
| 35:24 36:16,18 | 125:7 | 71:7 | 73:6 76:18,19 |
| 37:7 | **dismiss** 19:4 | **documents** | 77:8 79:5,21 |
| | 67:17 | 3:18 4:22,24 | 80:16,19 82:12 |

82:17 84:13
85:1,15 86:10
86:22,25 87:5
100:11,16
107:8,13 108:4
111:4,23 113:6
113:8,13,13,14
113:21 114:9
114:24 115:1,6
115:13,22
116:4 117:19
117:21,23
118:20 120:2
120:11,19
123:1,23 124:8
124:13,16
125:2,5,6
127:21 129:4
130:14 131:9
131:24 133:11
**doing**  4:19
13:15 18:7
21:6 31:3
39:22 44:21,22
45:15 46:1,15
46:23 47:10,16
47:18 48:7,20
50:4 51:2 52:6
60:15 61:8
65:4 71:2
75:24 94:10
109:18
**dollar**  13:11
125:12

**door**  108:17
128:4
**doors**  127:2
**doubt**  4:15
**draft**  88:8
**drafted**  8:1,4
**drafting**  3:21
6:8,10,12 7:21
7:24
**dramatically**
32:11
**drawn**  6:23
**drive**  1:17
77:10 78:16
81:24
**driven**  94:8
**driving**  22:3
79:25 134:6
**drop**  50:20
**dropped**  49:16
**drops**  89:13
**drug**  71:4,4,8
72:1 73:18,18
73:23 76:24
77:1,6 78:16
79:12 83:14
84:6,6 88:3
89:16,17,23
90:14,24 91:5
91:7,8 92:20
93:13,21 94:6
94:7,9,14
95:10,11,16
96:10,14,22
97:6,20,25

98:7,8,12,22
99:1,13 100:3
101:2 133:7,17
134:6
**drugs**  10:5
18:15 24:19,25
25:11 42:7,10
60:12,13 63:16
64:16 68:24
69:18 70:23
71:2,12,13
73:11,24 75:8
78:2,9 80:5,10
80:11,11 82:2
82:7,14 85:16
85:17 86:11
87:18,19,20
88:7,8,10,11,12
89:1,7,11,25
90:1,6,23 93:3
93:22 98:23
99:8 121:5
123:6
**due**  93:13 96:6
**duly**  136:7
**dunlap**  2:16
6:25 7:16,19
8:14,17 14:9
14:12,17 16:10
16:19 17:1,25
18:25 19:20
23:16,23 24:11
29:10 34:3,6
34:11 35:25
36:14 37:4,9

37:20 40:6
41:22 43:4,21
44:16,19 48:22
48:25 49:20
50:8 51:4 53:2
53:5,11 54:11
54:16 55:5,11
55:18 57:4
58:11 60:1
65:8,11 67:14
69:24 70:10
72:22 75:17
76:16 77:21
79:17,21 80:2
81:12,15 82:7
82:11 83:21,24
85:5,11 86:13
86:15,20 88:6
88:17,23 89:2
89:5 91:11,13
91:24 92:24
93:4,19 94:12
95:18 96:1,17
97:1,18 98:10
98:19 99:24
100:2 101:2,5
101:9 135:8
**duplicative**
128:25
**dupped**  53:23
**dust**  83:15

**e**

**e**  2:1,1,3,3,20
46:7,9,16
47:20,21 48:4

49:8 50:6,18
52:4,5,22,25
53:6 102:22
122:16,24
123:19,25
124:5,19 129:1
129:7,9,15,20
130:19,23,25
131:7 132:23
133:8,8 136:1
136:1
**earlier**  8:19
55:24 56:7
103:14,16,22
104:14 105:22
108:24 134:14
**early**  26:18
**ease**  5:11
**easy**  12:12
**economic**  62:18
65:6 69:12
**effect**  37:5
104:22 105:23
106:11
**efficacy**  99:5
**effort**  15:5 27:2
61:3 73:7,25
**efforts**  27:19
28:3,11 72:23
73:8 92:14
**ei**  56:5
**eight**  6:17
**either**  5:23
21:11 26:22
41:7 46:12

50:2 115:2
**ejusdem**  19:6
**elements**  65:16
65:21
**eligibility**  20:10
20:20 23:23,24
24:10 25:14
27:20 28:4,12
30:18 31:8,16
34:12 39:11
**eligible**  18:14
**eliminate**  31:15
72:3
**eliminates**  72:2
84:8
**elizabeth**  2:17
**elsberg**  2:15
**emphasis**
123:10
**employ**  16:11
**employed**
136:11
**employee**  46:7
50:3 130:9
136:13
**employees**
129:18
**employers**  99:9
**encompass**
11:1 108:3
**encourage**
26:23 60:11
**ended**  3:11
131:6

**ends**  51:20
**enforce**  20:20
20:21,24 31:21
31:23 39:21
57:21 65:1
**enforced**  42:11
**enforcement**
3:21 5:11,24
6:11,14 16:4
16:21 19:18,22
20:7 21:9,15
21:18 25:13,14
26:2,11 27:19
28:3,11 29:21
31:8 34:7,8,18
34:24 38:8,11
38:12 39:7
42:7 57:11,17
57:19,25
**enforcing**  16:8
21:6 23:18,18
23:19 24:2
28:17 31:20
33:11 39:10,18
**engage**  32:15
32:18
**engaged**  30:23
48:19 72:17
**enlisting**  62:4
**enroll**  70:22
80:5
**enrolled**  63:15
66:19
**enrolling**  62:7

**enrollment**
63:15
**enter**  50:15
**entered**  3:7
**entire**  38:2
64:15 72:3
73:22 90:17
**entities**  60:25
74:12
**entitled**  1:13
31:6 65:1
106:25
**entitlement**
55:9
**entity**  5:10
60:24 75:15
76:4,23 77:1,2
77:11 82:15
84:7
**entries**  48:16
**entry**  127:10
**equivalent**  15:4
**erleada**  133:8
133:10 134:2,4
134:6
**ernie**  113:12
**escalates**  32:11
**esi**  108:3
110:23
**esi's**  108:5,6
**esq**  2:5,6,6,7,10
2:13,16,17,17
2:20,24
**essence**  106:18
106:22

[essentially - figure]                                              Page 14

**essentially** 7:12
29:5 32:6 50:3
72:15 75:9,20
80:8 90:13
106:24 134:17
**establish** 61:22
**et** 4:19 10:25
19:6 20:12,23
76:20 101:14
113:23
**evans** 2:20
**event** 30:9 98:3
112:7
**events** 43:19
**everybody** 4:2
33:20 129:2
131:25
**everyone's**
43:24
**evidence** 4:16
20:19 21:2
44:4 69:6
99:10 103:18
112:13 114:25
115:23,25
124:4,18 125:6
129:19 130:11
134:14
**evident** 135:4
**exact** 63:8
**exactly** 37:9
76:19
**example** 18:12
20:11 25:13
46:5,19 47:8

50:14 76:6
107:3 113:22
122:14,23
123:11
**exclude** 38:3
121:1
**excluded** 42:3
**exclusions** 24:5
**exclusively**
45:18 68:15
**executive** 114:2
114:11 115:16
**executives** 27:4
114:14 119:20
120:8 122:4
128:24
**exhibit** 119:5
121:13 129:20
129:23 130:11
130:18,23
**exhibits** 112:21
**exist** 9:20 10:2
10:8,9,17
11:15 38:22
85:15 86:10
99:2
**existence** 27:21
72:24
**existent** 48:19
**existing** 8:3
53:21 81:23
**exists** 76:4
**expansion** 29:4
**expenditure**
84:10

**expensive** 68:1
**explain** 12:6
29:25 90:18
**explained** 9:7
14:24
**explaining**
14:13
**explicitly** 92:9
**express** 80:24
80:25 90:22
**extend** 6:13
**extensive** 72:23
**extent** 11:6,25
17:25 26:13,13
36:7 38:22,22
41:17 43:21
45:22 46:10
47:18 50:11
58:19 64:3
100:8 105:10
111:3 121:25
123:23
**external** 45:6
49:25 50:12,19
**extreme** 33:1

**f**

**f** 2:1 136:1
**facing** 65:22,22
**fact** 27:22 61:1
61:2,6 89:12
89:15,24 94:14
98:5,21 99:2
124:19 129:6
131:19 133:4

**factors** 61:7
70:2 91:9
**failed** 32:15
**failing** 62:6
65:13 66:5
**fair** 91:2
125:11
**fairly** 73:7
112:18,19
**fall** 3:25 5:20
35:19,20 106:3
**falls** 4:1 46:3
52:14
**false** 80:18
98:11
**familiar** 36:11
**family** 75:7
114:15
**fang** 2:24 102:8
102:11 105:1
**far** 25:1 27:18
33:1 60:22
83:11,11 95:5
**fault** 95:11,11
**favor** 87:25
**federal** 18:12
**fifth** 94:1
**fight** 132:4
**fighting** 89:18
132:3
**figure** 9:21
13:23 26:20
35:10,22 39:14
63:21 70:20
73:22 76:2

**[figure - further]**                                                      Page 15

77:8,10 81:19
82:3
**figured**  81:4
**figuring**  27:7
39:25
**file**  14:18,22
**files**  9:9 45:12
45:17 46:10
52:9 73:20
85:19 114:8
115:20 117:1,9
117:13,20
122:3 123:25
**final**  24:21 25:3
**finally**  110:18
**finance**  81:24
130:6
**financial**  3:13
19:11 58:15
60:4,8 61:11
63:24 64:4
67:10 76:12
77:23 89:20
100:8,21
**financially**
136:14
**financials**
76:15 89:14
**find**  4:23 11:25
33:21 68:18
70:5 74:18
80:19 86:25
87:1
**finding**  27:2
129:25

**finds**  36:7
**fine**  14:2,8 68:4
69:8 84:11
128:22
**finely**  132:1
**finished**  100:2
**first**  3:16,17
13:8 19:3 21:9
22:1 26:9
28:21 49:7
54:1 58:2
61:25 66:17
75:3 81:15
90:20 91:24
100:24 102:16
102:16 103:8
113:12 114:17
116:12 117:18
118:11 122:11
124:12 130:4
136:7
**five**  55:22
109:19 112:4,6
**floor**  2:12,19
**focus**  18:18
62:13,16 68:9
**focused**  68:5
**focusing**  22:22
**folks**  49:2,12
53:14 116:9
123:5,22
**follow**  32:1
**followed**  11:19
127:8

**following**  58:18
**footnotes**  89:13
**forcing**  74:7
**forecasted**  59:3
**foreclose**
100:22
**foregoing**
136:5
**forenoon**  1:20
**forget**  115:7
**form**  96:5
**former**  44:21
**forth**  29:14
41:16 47:5
50:16 100:9
101:24 105:10
112:12 126:19
127:9 136:8
**forthcoming**
14:13,24
**forward**  4:9
56:1
**forwarded**
131:3,7
**found**  40:13
116:12
**four**  55:23
109:17 127:17
**frame**  5:20
27:25
**frankly**  12:7
64:16 70:5
84:16 110:13
127:7

**fraud**  69:4
**freda**  2:2
**free**  22:2 32:10
88:15
**friday**  14:7,8
15:10,14,17
42:22,24,25
**friend**  34:8
**front**  58:4
**full**  25:8 128:20
132:7
**function**  49:18
**functional**  50:3
**functioned**
49:18
**functioning**
48:6
**fund**  75:9,9
**fundamental**
70:12,13
**fundamentally**
77:22
**funded**  79:7
**funding**  61:9
92:13,18 93:16
**funds**  60:20
70:17 71:25
75:3 78:18
84:10 119:1
**further**  5:22
100:21 107:2
136:9,12

**[ganas - gotten]** Page 16

| **g** | 25:10,12 26:3 | 79:1 81:14,17 | 45:18,20 47:11 |
|---|---|---|---|
| **ganas** 96:12 | 36:25 54:4 | 89:4,12 90:16 | 47:19 48:1,13 |
| **gap** 116:23 | 69:22 77:9,9 | 90:17 91:18 | 49:5 50:13 |
| **gather** 54:2 | 90:9 105:6 | 92:13 99:13 | 51:25 52:5,7 |
| **gay** 2:15 | 110:19 129:22 | 107:2 124:24 | 54:8 56:20 |
| **gbl** 60:1 65:17 | 130:13,19 | 125:24 130:21 | 57:13 59:8,22 |
| 72:10 84:18 | **given** 4:18 8:21 | 134:11 | 61:9 64:8,9,10 |
| 87:17 | 15:11 31:21 | **goal** 41:5 | 75:24,25 77:9 |
| **gee** 69:16 | 33:15,24 41:11 | **goes** 12:19 | 79:24 85:10 |
| **general** 6:8,22 | 45:13 62:25 | 19:22 22:19 | 86:18 87:13 |
| 16:22 17:3 | 63:1,2,3 | 23:5 27:2 | 91:4 92:5,7,17 |
| 31:24 33:15 | **gives** 38:3 | 34:12 55:11 | 92:23 93:4,12 |
| 36:23 39:23 | **giving** 26:10 | 57:16 61:4 | 94:16,17,20 |
| 40:1 58:23 | 125:15,17,18 | 67:2 70:12 | 95:6,19,19,20 |
| 60:17 78:20 | 126:7 | 71:20,22 73:21 | 95:25 96:4,20 |
| **generally** 21:7 | **glad** 25:25 26:5 | 77:22 99:10 | 96:25 97:7,9 |
| 25:23 28:3,5 | 34:22 37:1 | 119:11,12 | 97:10,15,17,19 |
| 28:11,23 73:3 | 54:16 57:4 | **going** 3:12,15 | 97:21 98:14 |
| 73:12 77:17 | 61:23 70:10 | 4:20 8:8,10 | 100:4,9 101:10 |
| 100:8 | 76:19 78:25 | 9:10 10:7 11:5 | 103:20 106:13 |
| **generate** 85:11 | 100:15 | 11:23 12:4,14 | 106:15 109:1 |
| 85:14 | **go** 4:10,18 5:21 | 12:17,21 13:3 | 110:19 119:9 |
| **generated** | 9:14 22:11 | 13:7,18 14:15 | 120:8,9,24,25 |
| 85:12 103:3 | 25:13 27:6,15 | 14:22 15:22 | 121:1,3 124:17 |
| **generating** | 27:18 28:5,17 | 16:1 23:12 | 126:10 127:1,2 |
| 118:17 | 31:1,20 32:2 | 24:4,7 25:8 | 127:24 128:23 |
| **generis** 19:6 | 33:20 34:5 | 27:17 29:23 | 129:11 131:21 |
| **george** 2:6,23 | 35:13 36:10 | 30:14 31:15 | 134:22 |
| **getting** 50:11 | 37:1 39:5,6,18 | 32:1 33:1,14 | **gold** 83:15 |
| 52:18,19 56:21 | 39:25 41:4 | 35:12,13 37:11 | **good** 16:25 |
| 69:15 85:17 | 43:25 44:15 | 37:24 38:1,10 | 41:25 64:22 |
| 98:10 126:6 | 51:3 57:10 | 38:13 39:1,4 | 97:11 98:7 |
| 131:23 | 61:7,10 62:20 | 39:15,19 41:7 | **gotten** 15:7 |
| **give** 23:17 24:8 | 62:22 64:10 | 42:21 43:3,15 | 47:23 98:18 |
| 24:21 25:1,6,7 | 67:19 70:2 | 43:23,25 45:15 | 110:18 129:9 |

[granted - honor]                                                    Page 17

granted 101:15
granular
  119:21
great 27:2,6,6
  65:5
greatly 75:25
  135:8
greedy 97:25
greenbaum
  2:10 4:4
grew 33:18
gross 2:8,12
grossman
  42:16 49:19,20
ground 87:7
  124:24 125:24
group 119:18
  125:21,22
  129:22 130:5,6
guess 24:4 39:1
  40:9 42:1,8
  84:21 101:13
  102:1 111:14
guidance 36:25
  37:15 41:11
gun 116:5
guys 64:22
  96:11 97:11

h

h 132:21
half 63:17
  111:19
hands 43:24
hannah 2:17

happen 37:12
  41:16 75:19
  109:1
happened
  115:15 122:20
happens 77:13
  122:18 129:3
happenstance
  131:6
happy 14:21
  32:16 100:17
  108:2,18 111:9
  128:12 130:13
hard 8:21
harm 58:19
  60:2,10,16
  62:1,10,14
  64:3,4 65:6,13
  66:1,3,9,10,23
  67:5,18,21
  68:12,14 69:4
  69:12 71:21
  72:10 74:8,23
  75:25 76:3,8
  76:12 87:17,18
  99:11 119:12
harman 42:16
harmed 69:5
  87:20
harms 67:2
harris 42:17
  46:8,16,19
  47:20,24 50:12
  50:18,22 52:2
  54:10

harry 2:5
hate 31:2 41:9
hcs 21:19
head 126:15
heads 131:5
health 1:4
  17:12 20:4
  66:22,24 67:1
  71:14
hear 24:6 25:16
  32:17 37:15
  79:3 97:2
  103:9
heard 34:7 58:3
  77:6 87:24
  95:24 110:21
hearing 5:2,10
  23:11
hearings 71:8
heart 8:1 35:4
heavy 15:23
heith 46:7,9
held 1:16
help 10:4,4
  41:7 50:15
  64:20 71:12
  78:1,7,8
  100:17
helpful 82:4
helping 72:21
  135:5
helps 70:22
  77:10 79:13
  80:4

hereinbefore
  136:8
hey 40:15
hide 72:24 98:7
hiding 73:4
  98:8
high 13:16
  115:9 120:13
  128:24
higher 99:17
highest 114:14
  119:19
highly 15:23
  21:1 90:2
  118:20
historical 7:5
history 32:16
hit 22:3 53:24
hoffman 107:3
  116:8,17,20
hone 132:10
honed 41:13
  88:13
honor 4:4 6:25
  7:17 10:10
  12:23 13:20
  15:14 18:21
  21:8 22:9,25
  24:12 26:7
  28:20 29:3
  32:5,17 34:3
  34:17 35:3
  37:4 40:6
  41:22 43:4,7,8
  44:17 48:22

49:5,24 53:2
55:1,14 56:20
65:8 67:14
68:11 80:7,16
81:13 83:21
86:8,13 88:17
90:4,5 94:4,12
97:24 100:9
103:9 109:8
111:9 112:3,17
112:23 114:10
115:24 116:17
119:24 125:4
126:17,24
127:25 128:16
129:13 131:11
132:5 134:13
135:3
**honor's** 13:5
92:15 110:6
**honorable** 2:2
**hope** 52:10,25
92:4
**host** 30:18
**house** 2:23
44:11 48:10
49:17 52:22
53:6
**huge** 73:10,25
77:17 83:17,24
132:1
**hundred** 13:11
42:23 86:23
**hurdle** 13:16

**hurt** 64:8,10

**i**

**idea** 39:9 69:1
83:9 107:14
118:11,14,17
**identified** 6:12
16:15 42:22
53:24 57:10,16
113:5
**identify** 6:9,21
7:23 31:22
**illegal** 84:17
**imagine** 35:7
**impacted** 61:8
93:2
**impacting**
60:15 94:25
115:10
**impacts** 69:23
**implement** 42:6
120:24 133:7
133:10,16
**implemented**
42:11
**implicitly** 92:9
**important**
21:25 23:17
27:8 31:23
35:24 47:3
54:20 56:4
62:21 76:18
80:15 129:10
132:19
**inapplicable**
127:20

**include** 8:15
56:16 104:8
115:3 116:14
129:2
**included** 11:6
127:1
**includes** 59:2
116:15 129:20
**including** 67:23
71:8 80:4
115:22 123:2
134:4
**inclusion** 50:25
**inconsistent**
26:25
**increase** 74:9
89:16 96:3
98:22 99:1
**increased**
94:22 99:3,12
**increasing**
98:14 125:18
**indicate** 80:17
**indicated** 3:4
5:21 6:16
10:20 11:11
12:3 53:15
**indicates** 17:13
**indicating** 15:7
49:1 57:19
61:17
**indication**
57:12
**individual** 32:4
39:24

**individual's**
31:16
**individuals**
7:23 116:15
118:3 120:12
123:1 124:15
125:7
**induce** 83:6
**inducing** 74:5
**industry** 23:7
73:3 80:25
**inevitably**
47:15
**inflated** 93:20
**inform** 62:7
**information**
3:13 7:5 8:21
15:10,24 21:1
28:18 56:10
67:10 80:12
85:11 87:9
89:21 90:21
**inherently**
122:5
**injuring** 84:14
**injury** 70:12,13
70:19 71:23
72:3,9 99:14
**inquiry** 65:5
86:12 102:9
**instance** 3:16
49:8 50:13
54:2 86:5
**instructions**
31:21

**insurance** 95:9
**intended** 79:6
**intending** 92:3
  94:23 95:15
**intent** 38:20
**interested**
  17:21 53:13
  55:6 77:18
  136:15
**interfered**
  18:18
**interference**
  36:3
**internal** 27:4
  49:8 89:13
  90:12,15
**internally**
  13:23
**interpret** 35:16
**interpretation**
  19:19 102:15
**interpretations**
  102:14
**interpreted**
  35:23
**interpreting**
  37:25 105:11
**interrogatories**
  6:23 7:13,15
  7:22 123:7
**interrogatory**
  7:2,7,14 8:3
  29:10,17,19
  31:25 63:5,10
  114:18 123:15

**interrupted**
  100:1
**investigate**
  108:19
**investigated**
  5:13
**investigation**
  5:14 23:14
  30:11 52:1
**investigations**
  21:14 24:9,14
  24:17,21 25:2
  25:8,10 26:3
  28:22,22 29:5
  32:4 39:13
  56:6,11,16,21
  104:20
**investment**
  70:8,11 71:10
  71:18 72:4,8
  77:4,7 79:23
  80:3 81:16,22
  82:11 83:18,18
  87:8 88:9,11
**investments**
  73:24 100:15
**invitation**
  116:13,14
  122:16
**invitations**
  113:22 115:3
**invites** 122:12
**inviting** 25:24
**involved** 32:3
  49:13 50:21

53:15 103:7
105:22 107:9
108:23,24
111:2 115:8
118:16 120:12
133:24,25
134:1,3,18
**involvement**
  109:5
**involving** 50:6
**irrelevant** 5:24
  9:6 30:13
  73:14 74:2
  80:13 82:18
  83:20 90:10
**issue** 5:15 8:20
  9:17 11:22
  13:4 15:20
  16:6,7,17
  20:10 21:18
  24:19 27:5
  29:21 43:10,12
  43:18 44:3
  48:2 49:25
  51:25 57:2,5
  58:3 64:17
  68:9,15 73:16
  78:14 87:12
  88:8,10,11,24
  88:24 90:9
  93:3 94:12
  101:7 104:2,19
  110:11,13,14
  112:10,20,23
  112:24 113:17

113:22,24
114:19 115:23
123:6 124:14
128:8 131:20
133:24 134:13
**issues** 3:7,8 6:4
  7:10 11:12,14
  13:1 14:14
  19:1 25:5
  30:15 40:3
  55:19 70:12,13
  82:5 98:5
  109:11 111:3
  114:5 135:5

---

**j**

**j** 2:10
**j&j** 5:9,13,19
  5:21 6:11 8:1
  10:3 20:14
  21:19 26:19
  48:10 49:3
  58:19 60:24
  63:19 68:7,8
  69:17 73:11,22
  74:21 75:2,14
  75:20 76:1
  77:17 78:1
  83:11 84:7
  99:12 108:5
  119:6,13 133:1
  133:9
**j&j's** 5:11
  55:11 67:19
  70:8 83:14
  106:8,20

125:13
**jalt** 113:23
114:1,3,7,25
117:19 120:2,4
120:9 121:11
122:1 123:2,4
123:24 134:16
134:19
**janssen** 22:13
35:6 70:23
71:1 76:22,23
77:2,11,13
79:10,11,12,13
79:15 80:5
82:15 84:7
87:23 88:7,25
89:7,11,14
93:25 120:5
**janssen's** 82:22
**january** 1:18
8:13 24:16
42:1 104:22
105:24 106:1
106:11 118:14
**jd** 48:7
**jd's** 44:21
**jeffcoat** 46:7
50:14,23
116:15
**jeffcoat's** 46:9
**jeffrey** 2:10
**jennifer** 42:16
54:10
**jeopardizing**
67:24

**jersey** 1:2,16
1:18 2:10
136:5
**jjhcs** 2:23 5:9
7:6 8:5 10:3
27:10 29:13
35:5 44:23
45:6 46:8
47:17,18 49:11
52:9 53:17
60:21 63:20
74:21 77:15
80:23 90:17
91:18 93:17,21
**john** 107:3
116:8,17,20
**johnson** 1:4,4
36:20,20 60:12
60:21,21,23,23
69:25,25 71:3
71:3 72:15,16
74:3,3 75:6,7
76:8,8 79:22
80:2 89:18,19
96:21,21 98:21
98:21,25 99:1
99:2 102:22
103:12,12
114:14,15
**johnson's**
60:12 79:22
80:2 99:3
102:22
**jr** 2:20

**judge** 3:1,5 4:7
4:13 7:18 8:7
8:15,23 9:10
10:14 12:15
13:6,10,21,25
14:2,8,11,15,20
15:6,15,18
16:16,24 17:19
18:4,19,22
19:17 22:15
23:11,24 26:14
27:14,15 29:16
29:23 30:3,7
30:25 31:1
32:21 33:2,6
33:18 34:5,10
35:9 36:13
37:8,11,19,22
39:1,6 40:8,17
41:2,3,25 43:1
43:16,23 44:9
45:25 46:18
47:7 48:24
49:19 51:3
52:10,25 53:4
53:9 54:7,12
54:18,23 55:2
55:15 56:2,22
57:1 58:9,14
59:25 61:25
62:1 63:11,13
63:23 65:10,18
66:12 68:2
69:8 70:4
72:11,13 74:14

74:18 75:12
76:14 77:20
79:2,19 80:1
81:10,14 82:1
83:23 84:19
85:13,22,25
86:3,9,14,18
87:24 88:13,18
88:21,25 89:4
91:4,12,22
92:4,17,23
93:6,10 94:15
94:19,24 95:2
95:24 96:23
97:2,9,14
98:17 99:19,22
99:24 100:19
101:4,6,11,14
101:23,24
102:1,10,13,17
102:19,21
103:6,20
104:11,17
105:5,25
106:10,13
107:11,18
108:7,13,17,21
109:9,17,24
110:3,8,15,16
110:20 111:7
111:11,16,24
112:7,15,18,22
112:22 113:4
113:18,23
114:9 115:5

117:16 118:5
119:16 120:3
120:16 121:10
122:7,18
123:16,20
124:22,23
125:20,24
126:13,20,24
127:5,12 128:2
128:14,17,22
129:14,24
130:14,20
131:1,4,18
132:8,16
133:18,23
134:5,20 135:1
135:7
**judge's** 83:13
**judgment**
  12:18 93:1
**julia** 2:6
**juliette** 111:15
**july** 4:25 43:23
**june** 114:18
**juror** 75:23
**jury** 92:3,8

**k**

**k** 123:19
**karen** 111:15
**katherine** 2:13
**katie** 114:3
  116:7,19,20
**keep** 31:3 57:21
  61:9 89:22
  97:11 99:8

**keeping** 9:8
  15:1 41:19
**keeps** 82:8
  96:17
**kept** 13:10
**key** 119:3 130:5
**kicking** 3:9
  31:2
**kind** 4:5 39:20
  42:7 43:19
  50:15 100:1
  105:15 116:4
  125:22
**kinds** 88:8
**knew** 24:2
  112:1 125:17
**knewitz** 113:12
  113:24 117:5
  123:11,18
  134:12,17
**know** 3:23 5:8
  5:10 8:25
  10:10,20,22
  11:12 13:2,8,9
  15:7 16:1
  23:19 24:1
  26:18 28:7,8
  29:14 30:17
  31:1 33:16
  38:5 39:9,16
  39:18 42:5
  44:10 48:13
  49:13 51:1,7
  51:10,16 53:19
  54:15 55:8

58:6 60:22
61:16 62:17,24
63:1,6,18 64:8
64:19,23 65:1
67:6,7 69:16
69:16 72:15,18
73:1,19,23
77:20 78:24
79:11,12,24
80:16,17,23
81:3 82:7,16
86:22 87:15
88:16 90:24,24
91:22 94:15
95:10 96:11
98:4 102:2,5
103:9 110:8,20
112:8 115:7
116:4 119:13
120:7,14,21
125:13,17,20
126:4,6 127:3
128:25 130:10
131:9,22,25
132:9
**knowing** 72:24
**knowledge**
  111:25
**known** 21:13
**knows** 69:3

**l**

**l** 2:2 129:15
  133:8
**lade** 111:15
  112:13 129:14

130:9,23
134:21
**language** 4:2
  18:20 22:1,23
**large** 66:22,24
**latches** 28:8
**law** 18:12
  60:14,17 102:8
**lawsuit** 20:14
  20:25 59:7
  74:1,2,13
  123:13
**lawyer** 45:8
  46:8 49:17
  50:6 51:1
  52:22
**lawyers** 44:20
  44:21,23 45:12
  48:10,21,21
  51:1 53:6
**lead** 29:3,15
  30:14 73:8
  74:9
**leadership**
  120:5 123:4
**learn** 124:3
**leave** 26:24
  97:23 126:13
**left** 3:5 16:17
  68:22 112:5
**legal** 2:9 44:22
  45:21,21 47:17
  47:21,22 48:20
  50:23 51:2

[length - lowering]                                                    Page 22

| | | | |
|---|---|---|---|
| **length** 27:6 | 128:23 | **logistics** 102:20 | 19:8,22 36:9 |
| **lengthy** 67:6 | **limiting** 17:23 | **long** 2:6 5:18 | 37:6 46:16 |
| **letter** 25:20 | 18:22 30:7 | 10:12 18:8 | 54:13 57:9 |
| 42:20 48:25 | 50:10 82:1 | 52:2 61:4,10 | 62:9 66:12 |
| 100:12 111:13 | 86:20 87:8 | 72:19 103:24 | 97:4 111:2 |
| **letters** 7:3 | 88:14 96:2 | 104:1 105:23 | 117:3 120:17 |
| 21:10 29:15 | **limits** 134:8 | 106:2 108:9,15 | 121:6 125:1 |
| 43:20 119:2 | **line** 59:2,2 64:9 | 109:21 110:2 | 127:12 130:10 |
| **level** 63:14 | 64:10 82:22 | 112:15,16 | **looks** 118:1 |
| 115:9 120:2,3 | 95:5,7 | 113:10,20 | **loot** 72:19 |
| 120:13 123:3 | **linger** 55:19 | 115:14 121:9 | **looting** 72:17 |
| 128:24 | **link** 96:17 | 121:11 122:9 | **loots** 78:2 |
| **levels** 69:25 | **list** 18:8 | 122:20 123:18 | **losses** 73:12 |
| **license** 136:21 | **listed** 23:20 | 123:21 124:17 | **lost** 76:7 91:8 |
| **lieb** 2:13 | **literally** 63:8 | 126:17,18,22 | 92:11 96:5 |
| **lies** 98:9 | 85:9 | 131:11 134:12 | **lot** 17:5,6 20:4 |
| **light** 26:18 | **litigating** | **longer** 13:3 | 22:24 44:2 |
| **likelihood** | 110:17 | **look** 12:11 15:6 | 53:20 69:18 |
| 111:1 | **litigation** 49:18 | 20:1 29:17 | 71:8 75:2,21 |
| **likely** 118:20 | 50:6 73:5 | 35:2 38:2 | 78:12,21 83:3 |
| 124:15 | 115:11 | 40:21 50:22 | 90:20 131:8 |
| **limit** 53:11 | **little** 23:6 33:8 | 56:13 66:10 | 132:1 |
| 103:4 111:4 | 71:11 | 70:24 82:5 | **lots** 28:14 83:6 |
| 129:4 133:22 | **lives** 68:18 | 89:12 98:12 | 94:10 |
| **limitation** 51:4 | **llc** 1:8 | 100:14 121:12 | **love** 15:15 |
| 68:5 123:14 | **llp** 1:17 2:4,19 | 125:5 128:3,5 | 99:21 |
| **limitations** | **lobiondo** 2:6 | 129:19 130:3 | **lowenstein** 1:17 |
| 132:11 | 106:12,15 | 130:11,18,22 | 1:17 2:24 |
| **limited** 6:18 | 109:7,19 | 131:22 | **lowered** 89:6 |
| 11:15 17:15 | 110:12 111:6 | **looked** 3:24 | 89:10 92:1,8 |
| 26:22 32:6 | **log** 39:2,4 | 19:4 31:17 | 92:18 93:13 |
| 49:11 61:12 | 42:18,19 44:15 | 74:19 80:18,23 | **lowering** 95:2 |
| 75:14 86:17 | 45:16 46:12 | 86:10 98:4 | 95:20,21 96:22 |
| 87:18 108:10 | 51:20,21 | **looking** 3:10 | 97:20 |
| 128:9,14,15,17 | | 8:25 17:20 | |

[lying - meant]                                                    Page 23

| | | | |
|---|---|---|---|
| **lying** 15:3 | 54:5 57:24 | **manufacturer** | **mazuk** 114:3 |
| **m** | 60:22 71:18 | 5:17 | 114:10 115:1,2 |
| | 72:16 73:18 | **manufacturers** | 115:4,16 |
| **m** 2:13 | 78:12,15,21 | 72:22 | 116:20 117:12 |
| **machine** 83:16 | 80:10 82:13 | **manufacturing** | 117:14,20 |
| **made** 21:19 | 83:7 84:21 | 82:6 | 121:21,25 |
| 22:23 26:6 | 86:24 93:11,15 | **march** 33:5 | 122:1,5,15 |
| 33:19 42:8 | 96:9,15 97:18 | **mark** 116:8 | 123:2 124:2,20 |
| 68:18 71:3,5 | 97:19,21 98:15 | **marked** 46:11 | 125:7 |
| 73:5 75:13 | 98:19 99:16,17 | **market** 80:11 | **mazuk's** 114:8 |
| 87:14 88:2 | 100:7,15 103:2 | 95:8 | 115:20 |
| 95:13 99:7 | 104:6 111:10 | **marketing** | **mean** 6:1 14:21 |
| 109:9 113:9 | 118:8 120:7 | 60:11 61:2,5 | 17:14 19:9,11 |
| 115:19 120:20 | 125:2 133:13 | 64:20 69:17 | 19:12 28:6 |
| 121:7 123:13 | **makes** 63:6,9 | 82:6 134:4 | 31:14 33:15 |
| 134:15 | 68:7,8 69:17 | **massive** 45:16 | 36:4 37:25 |
| **magistrate** | 74:3 75:21 | **massively** | 38:7 51:20 |
| 33:18 | 77:17 80:9 | 73:20 | 58:23 87:10 |
| **mail** 47:20,21 | 84:16 102:23 | **material** 99:4 | 101:25 117:22 |
| 50:18 52:4,5 | 105:7 | 131:10 | 125:21 129:6 |
| 102:22 122:16 | **making** 21:16 | **matter** 1:13 | **meaning** 8:25 |
| 122:24 123:25 | 30:10 67:25 | 9:25 33:24 | 9:18 10:23 |
| 129:20 130:19 | 69:16 72:1,20 | 52:2 83:4,4 | 11:7 16:21 |
| 130:23,25 | 73:11 75:2 | 85:10 | 19:23 25:14 |
| 131:7 132:23 | 78:11 83:5 | **matters** 59:15 | 34:16,24 38:3 |
| **mails** 46:7,9,16 | 88:4 97:24 | 83:9 90:14 | 53:17 105:11 |
| 48:4 49:8 50:6 | 100:3 114:11 | 91:17 | **meaningless** |
| 52:22,25 53:6 | 119:22,25 | **max** 17:9 | 29:5 |
| 124:5,19 129:1 | 120:1,12 | **maximizer** 9:19 | **means** 4:17 |
| 129:7,9 | 124:18 | 10:18 26:12 | 12:15 17:14 |
| **main** 26:6 | **manage** 50:16 | 29:1 30:12,21 | 19:8,13,15 |
| 114:25 | **manages** 81:1 | 108:6 | 20:6 38:11 |
| **maintain** 51:12 | **mangi** 127:17 | **maximizers** | 40:11 |
| **make** 4:4 17:23 | 127:22 | 57:23 106:21 | **meant** 9:22 |
| 19:16 24:3 | | 107:4 132:23 | 10:24 19:24 |
| 33:22 39:19 | | | |

33:20 36:18,23
95:7 110:16,17
**mechanism**
7:12
**medicaid** 18:13
20:11,22 23:21
**medicare** 18:13
20:11,22 23:21
29:6
**medication**
68:21 74:8
91:2
**medications**
42:3
**medicines**
93:25
**meet** 3:10
14:10,18 15:12
15:19 31:1
32:15,18 39:4
41:9,15 54:16
66:25 103:11
104:3,12,16,25
**meeting** 34:22
37:1 116:14,18
116:18 117:24
118:2 122:7,11
122:19,21,24
123:24
**members** 17:11
20:16 42:3
**memorialized**
124:5
**mention** 55:7
86:25 87:6,11

118:11 131:12
**mentioned** 37:6
112:14
**mentions** 108:3
108:3
**merits** 128:7
**met** 16:12
58:12 116:9
117:10
**mid** 108:19
**middle** 104:5
**miles** 2:17
**million** 13:11
32:13 91:9
92:22 119:7
125:12,18
**millions** 33:12
**mind** 41:19
**minute** 74:16
84:4 99:25
130:19
**minutes** 90:5
122:23 124:8
**mirrored** 88:4
88:6
**missing** 65:23
69:21 120:19
**mitigation**
133:20
**mitigations**
28:8
**modifications**
6:5
**modifier** 104:9

**moment** 4:11
12:10 14:6
21:21 27:16
31:6 37:5,17
38:11 62:12
73:15 75:18
88:14 94:3
103:21 127:14
**moments** 23:16
**money** 59:6,22
68:7,8 69:18
70:18 71:4,5
71:11 72:16,20
73:9,10,17
74:3,4 75:2,21
76:10,11 77:17
78:1,11,12,15
78:21 80:9
82:12,13 83:1
83:5,8 84:8
86:24 119:9,23
**monitor** 71:9
**monitoring**
130:7
**month** 52:20
**months** 6:17
32:19,21
**motion** 12:18
12:19 14:19
19:4 93:1
101:15 107:22
111:18,24
112:6,24
114:17 127:10
133:5

**move** 4:9 6:2
13:17 16:2
41:18 70:7
132:4
**movement**
43:11
**moves** 32:9
**moving** 83:11
95:17

**n**

**n** 2:3 123:19
**name** 76:21
79:15 106:20
107:13 112:9
114:3
**named** 46:7
79:9 132:20
**narrow** 22:17
25:7 31:5
32:22,24 35:11
35:14 37:9
40:18 52:23
64:14 67:12
74:23,23 78:25
79:19 86:21
87:7 101:21
103:18 111:10
**narrowed**
16:13 25:19
40:18,25 41:1
81:7
**narrower**
40:19
**narrowing**
32:24 76:3

79:3 81:6,10
**narrowly** 54:14
  69:14
**natural** 127:7
**nature** 31:24
  39:8,24 40:25
  46:13 50:4,24
**necessarily**
  48:1 105:17
  115:15 123:25
**necessary** 4:8
  22:20 59:23
  69:11 80:12,21
  86:15
**need** 11:2 12:17
  13:4 20:5 21:5
  24:7 26:4 27:5
  31:4,10 32:20
  34:1 36:17
  39:12 41:6,6
  41:18 56:23
  57:17 59:11
  60:19 63:18,21
  63:22 69:22,24
  76:10 79:21
  80:2 84:13
  88:13 107:2
  124:12
**needed** 22:17
  28:19 68:21
**needs** 28:10
  33:21
**negligible**
  48:18

**negotiate** 25:24
**neither** 136:9
**net** 86:21 90:12
  90:13 91:17
  93:24
**never** 20:17,23
  24:5 40:18
  55:13 134:5
**new** 1:2,16,18
  2:5,5,10,13,13
  2:16,16,20,20
  6:12,14 20:24
  42:2,6 71:4
  84:2 87:2
  99:14 102:18
  102:25 103:5
  103:17 105:13
  108:10 111:12
  111:23 112:12
  113:5,8,8,13,13
  113:14 116:3
  124:18 125:1,2
  125:5,25
  126:25 129:19
  130:10 132:18
  134:9,14 136:4
**newark** 2:10
**non** 38:23
  48:19 93:3
**nonsense** 81:4
**north** 119:18
**notary** 1:15
  136:4
**note** 49:16
  118:7

**notebook** 116:7
  117:25
**noted** 12:20
**notes** 1:12
  118:2,7 136:6
**notion** 80:22
**november**
  24:24 43:17,25
  57:8 101:14
  104:3
**number** 9:6
  18:16 47:6
  51:25 58:20
  60:8,9 61:13
  77:5 94:16,18
  94:21 100:11
  108:1 109:21
  120:10 127:10
**numbers** 54:4,6
  61:15 91:20
**numerous**
  120:2

---

**o**

---

**o** 2:1 132:21
**object** 50:25
  59:13 87:23
**objected** 87:22
**objections** 7:8
**obligation**
  51:13 67:1
**obligations**
  93:21
**obliged** 29:11
**obtain** 73:6

**obviously** 8:18
  45:7 125:3
**occasion** 51:17
**occasionally**
  123:12
**occasions** 45:4
**occurred**
  100:13 116:19
**occurring**
  120:1
**october** 5:3
  22:16 33:3
  43:11 104:7
  114:19 126:20
  126:22
**offer** 3:25 4:3
  6:1 9:18 12:15
  16:9,22,24
  17:14,16 18:3
  18:5,6,20,24
  19:5,8,11,13,24
  20:1,6,15,18
  21:4,7,23 22:7
  22:23 28:25
  30:5,16 31:9
  32:9 34:9
  35:20 36:1,4
  36:15,16 38:4
  40:11 60:23
  78:7,8
**offered** 5:19
  22:24 59:11
  104:4 121:24
**offering** 25:6,7
  25:10,12

**office** 1:16
73:20 75:10
**offline** 50:23
**offset** 72:3
78:15 99:18
**offsets** 72:2
78:18
**oh** 29:6 68:7
77:17 78:12
81:7 91:18
95:9
**okay** 5:6 8:7,23
11:2 13:6,21
14:1 15:18
16:16 28:1
33:6,19 37:13
40:5,7 41:21
41:25 42:12
54:12 58:14
59:25 62:19
63:13 64:9
70:4,5 72:18
72:18 75:12
83:16 88:20
98:17 99:22
100:19 101:5,6
101:11 103:21
107:11 111:6
111:11,21
123:20 130:2
130:20 131:4
132:14
**old** 40:2 88:21
124:19 125:5

**once** 32:9 52:23
80:5 83:3
**oncology** 68:23
**ones** 26:6
134:21
**open** 3:5 23:2
97:9 127:1
135:1
**opened** 108:17
**opening** 113:14
126:14
**operated** 43:15
**operates** 82:24
87:16
**operation**
68:22
**opinion** 12:16
62:2 65:12
66:13 67:4,6
**opportunity**
102:2
**opposed** 64:15
71:12 90:1
119:22
**opposing** 25:16
121:19 124:9
**order** 12:16
20:5 22:17
26:14 27:14
32:23,25 36:14
52:19 56:2,23
74:7 82:3 83:7
83:13 102:2,15
102:18 104:3
105:1,7,12

112:8,20 113:3
118:22 125:10
125:15 126:10
127:7,8
**ordered** 37:8
104:18 111:19
112:24 116:17
116:21 127:5
**ordering** 12:2
134:8
**orders** 3:8
116:1
**organized** 13:3
**original** 43:22
55:21 108:11
118:16
**outcome** 29:15
**outside** 10:24
46:21 47:9
49:11 50:2
52:14 53:17,20
60:23 90:17
91:18 104:24
**outstanding**
3:3
**overall** 67:10
68:8 75:25
83:4 125:22
**overlaps** 40:11
**overtaken**
43:19
**overwhelmin...**
45:18 52:12
**own** 47:17 75:9
87:2 93:24

131:16

## p

**p** 2:3,3
**p.c.** 2:8,12
**p.m.** 135:10
**page** 117:25
127:25 130:4
130:23
**pages** 4:22
22:10
**paid** 59:2,16
61:13 79:24
84:4 119:9
**paper** 73:20
82:8 116:6
135:5
**papers** 27:1
**paragraph**
12:16 67:21
93:19
**parallel** 15:14
**park** 2:12
**part** 8:1 14:12
16:10,11 17:10
17:13 18:13
20:13,19 34:14
40:9 43:22
44:14 46:25
50:5 61:2,3
70:21 71:16
74:13 79:15
99:2 110:12
111:18,23
112:20 119:8
132:23,23

133:5,13
**partially**
119:25
**participants**
27:11 66:19
118:7
**participated**
122:2
**particular** 3:23
21:23 22:1
44:11 73:18
117:6
**parties** 5:2
14:18 49:3,11
50:13 51:5,11
51:15 52:3
54:14,25
102:14,19,21
105:14 136:11
**partner** 80:24
85:21
**partners** 68:25
90:21,24 98:3
**parts** 20:21
63:19
**party** 46:21
47:4,9 51:10
51:18,22,24
53:7,9 55:8
116:5,10 119:5
132:19,20,21
**pass** 103:23
**passing** 30:19
30:20

**past** 43:23
**patient** 30:19
30:19 63:14,15
64:20 67:25
76:12 84:3,4
133:1,12
**patients** 10:4
18:9 24:18
26:21,23 27:3
57:22 60:12
62:7 66:6
67:23 68:17,23
70:25 71:1,12
74:7,9 77:9
78:1,7 79:11
80:4 82:14
85:16 86:11
87:3,18,19
93:20 98:23
99:7,15 119:2
119:2,9,15
121:24
**patterson** 2:4
**pause** 21:21
**pay** 5:17 10:4,4
10:5 23:8
26:16,22 59:1
59:6,19 63:4
70:16,17 71:14
73:9,9 74:10
74:10 75:9
79:13 93:21
94:22 121:2,4
**paying** 57:21
70:18 71:25

**payment** 90:23
**payments** 94:5
**pays** 17:8 71:6
**pejorative** 78:3
**pending** 3:17
**penkowski**
111:15 112:13
113:19,25
117:4 118:16
121:17 124:20
128:10 129:7
129:21 134:16
134:22
**people** 13:23
39:16 44:18,25
45:1,5,6,20,23
47:3,16 48:19
50:21,21 52:5
52:9 56:14
64:8 68:19
70:22 71:24
74:6 78:8,17
83:6 84:22
86:23 89:25
103:7 108:22
109:12 111:1
117:9 120:9
129:1
**people's** 48:13
83:6
**perceive** 56:24
**percent** 16:14
25:20
**performance**
21:3

**period** 5:1,18
10:7,9 11:21
14:25 15:5
19:20,25 21:16
24:22 25:9
30:22 34:14
38:24 40:21
55:20,23,24
56:1 57:7,19
58:20 63:17
103:16 104:9
104:13 105:3
108:11 128:19
128:20 132:7,8
**permit** 38:6
127:3
**person** 29:6
46:22 117:12
129:10 133:6
**person's** 75:10
**personnel**
47:20
**perspective** 4:6
15:21 33:17
**persuade** 78:8
**pertinent** 64:1
**pfizer's** 87:19
**pharmaceutical**
72:22 73:3
81:1 87:16
**pharmaceutic...**
119:19
**pharmacies**
62:5

[pharmacy - price]                                                      Page 28

**pharmacy**
  90:22,23
**phrase**  38:2,14
**piece**  9:13,13
  36:2,3 82:8
  94:22 114:25
  116:6
**pieces**  44:2
**pitch**  100:3
**place**  49:14,22
  73:25 103:8
  117:22 136:8
**placed**  38:18
**plaintiff**  1:6 2:7
  2:11,14 4:21
  5:12 6:7,16
  42:5 58:17
  62:14 66:3,17
  66:23 74:20
  75:15 101:16
  101:19 111:16
**plaintiff's**
  115:10
**plaintiffs**  6:21
  62:3,5
**plan**  17:9,10,14
  20:17 70:22
**planned**  42:24
**planning**  97:5
  98:2
**plans**  17:12
  20:4,16 24:18
  38:18 42:4
  56:14 71:14
  78:11 89:17,20

**plausible**  66:18
**plausibly**  62:3
  66:23
**play**  44:19
**plaza**  2:9
**please**  88:19
  100:24 127:14
  129:4 132:13
  134:23
**pllc**  2:15
**pocket**  17:9
**point**  4:8 17:16
  17:17 19:16
  30:8,10 44:5
  50:18 53:8
  56:12 59:9
  62:6,23 68:2
  85:6 86:6
  87:13 98:20
  100:7 104:16
  106:17 107:6
  117:19 118:8
  120:7 124:12
  124:17 125:9
**pointed**  22:9,25
  23:6
**pointing**  65:13
**points**  4:5 7:4
  26:5 44:7
  81:13 106:6
  116:4
**police**  28:5
**policies**  11:14
  31:7,11,19
  33:10,11 34:6

**policy**  11:18,24
  12:1 13:9
  29:20,25,25
  30:1 32:7,7
**poor**  50:9
**portion**  127:14
**portions**  17:2
**position**  10:15
  10:21 20:24
  27:21 32:19
  37:23 84:21
  102:23 104:4
  104:25 112:17
  113:5 131:15
  131:19
**positions**  33:1
**possible**  104:23
**potential**  73:24
  104:5
**powder**  77:18
**pr**  134:17
**practical**  85:10
**practicing**
  48:21
**precisely**
  120:16
**predate**  5:18
**predecessor**
  6:21 8:2,5,16
  9:1 11:6
**preliminary**
  4:5
**prepared**  31:3
**prescribed**
  105:1

**prescription**
  22:2
**prescriptions**
  62:6
**present**  2:23
  8:13 24:23
  25:9 30:23
  59:4 98:2
  101:10 124:22
**presentation**
  122:12,13,21
  132:24
**presentations**
  122:3
**presented**
  112:1 113:7
  122:1,22
**preservation**
  11:12 14:14
**pressure**  89:20
**presumably**
  122:25
**pretty**  13:19
  15:22
**prevent**  27:2,7
  72:24
**preventing**
  13:15
**previous**  16:15
**previously**
  112:1
**price**  90:6,12
  90:13,13 91:2
  91:17 93:22
  94:7 97:11

99:17
**prices** 89:16,17
89:18,23 90:25
92:2,8,18,19
93:13,25 94:6
94:9,14 95:10
95:12,16,20,22
96:6,14,22
97:6,20,25
98:14,22 99:1
99:3,13,16
100:6 133:1
**pricing** 88:24
88:24,25 90:14
90:18 91:5,7,8
92:20 93:3
94:25 95:2,3
96:10 98:12
99:7 100:4
101:3
**primarily** 3:11
22:3 68:15
69:2
**primary**
132:17
**prior** 9:22 10:2
27:22 104:7
133:5
**privilege** 39:2,3
42:18,19 44:15
45:3,16 46:11
46:13 47:13,23
48:14,15,15
50:1 51:18,19
51:21

**privileged**
38:23 45:9,19
45:24 46:11
48:1
**probably** 23:6
119:23
**problem** 40:9
45:16 51:22
135:7
**problematic**
27:24
**problems** 9:14
**proceedings**
1:8,13 135:10
**process** 21:15
26:3
**produce** 11:23
12:5 21:11,13
22:14 23:13
51:13,20 72:7
72:7 76:20
79:24 80:20
111:4 120:17
132:4
**produced** 4:21
12:2 22:10
30:2,6 38:15
38:21,24 43:12
45:7,24 58:18
58:25 59:5,17
59:20,21 61:12
62:24 80:16
84:6 85:4
89:14 90:8
91:13 100:12

109:13 114:7
117:2,21
118:13 124:9
130:15
**producing** 9:15
27:12 30:23
47:1,2,6 56:10
57:9,25 58:24
79:5
**product** 81:23
81:24 82:22
**production**
22:24 23:1
25:4 27:9
30:14 42:14
49:10 52:19
56:25 57:2
91:15 106:8
116:23
**productions**
21:16 124:6
**productive**
9:24
**products** 60:22
**professional**
134:18
**profitability**
73:2
**profitable**
73:13,23 83:10
83:15
**profits** 76:7
87:4 91:8
92:11 96:6

**program** 3:24
8:6,19,22 9:19
9:20 10:6,8
17:6 18:3,15
21:4 23:8
26:17,24 27:3
27:7,24 29:2
43:15 50:16
59:7 60:11
61:5,14 62:18
64:5,6,25 65:1
68:4,10,18
69:17 71:17
72:17,19,21,25
73:2 74:25
75:4 76:3,9,9
76:21 77:3,15
77:23 78:7,8
80:4 84:2,23
86:12,21 87:16
88:2 89:24,25
91:6 92:12
93:16,23 94:5
94:8,22 98:6
98:24,24 99:8
99:12 101:19
101:22 103:1,1
103:13 105:23
106:9,10,16,19
106:19,23
107:7,10,14,14
107:23,25
108:6,6,16,23
114:12,23
115:11,18,19

[program - ran]                                                            Page 30

119:1,4,10
120:25 121:8
121:21,23
122:14 123:9
129:8 131:14
131:16 132:22
133:7,10,12,14
133:16 134:1
**programs** 5:17
6:22 8:2,16 9:1
9:20 10:17,18
11:7 23:10,20
26:12,19,21
27:10,11 30:12
30:22 64:18
67:25 95:23
130:7
**prohibition**
18:14
**prohibitively**
68:1
**project** 9:24
80:13
**promising**
119:6
**promptly**
100:17
**pronouncing**
19:7
**properly** 51:12
**proportional**
52:16
**proportionality**
102:24 105:16
109:15

**proposal**
111:10,17
128:13
**proposed** 22:4
25:18 37:8
50:24 58:5
111:25
**proposing**
22:11 32:6
50:9 58:8
**propound** 7:8
7:14
**propounded**
7:9
**protect** 127:19
**protected**
47:12 50:7
**protecting**
60:17
**prove** 97:6,7
**provide** 32:23
50:23 112:25
128:12 130:8
**provided** 11:13
11:16 63:10
100:21 114:20
115:6 117:13
**provides** 78:1
84:16 89:11
**provision** 16:23
16:25 17:16
19:13,24 20:16
20:18 36:2
**provisions** 20:3

**prudent** 83:10
**public** 1:15
60:2,10,18
61:3 62:1,10
65:22 66:1,22
66:24,25 67:18
67:23 68:12,14
71:18,20 72:10
87:17 95:8
99:11 136:4
**publicly** 89:9
**purpose** 52:23
71:17 77:22
132:25
**purposes** 5:9
82:24,25
**pursue** 39:16
**put** 25:19 46:12
51:19 77:15
78:14 82:12
87:7 89:9,19
91:20 92:5,7,8
92:23 96:19
100:10 102:2,6
112:12 118:6
**putting** 13:10

**q**

**quarter** 32:13
**quarters** 22:5
**question** 4:17
11:3 24:6 34:4
52:15,21 61:20
63:8 71:22
73:8,10,17,19
73:21 74:5,15

74:21 82:4,23
84:20 85:25
92:16 101:17
115:6 116:8
119:17
**questioned**
24:10
**questions** 23:23
23:25 29:9,11
29:12 62:10
72:10 122:4
**quick** 124:10
**quickly** 13:19
83:22
**quite** 3:19
13:13
**quote** 16:4
23:13 93:24
**quotes** 129:8

**r**

**r** 2:1,3,16
132:21 133:8
136:1
**raise** 28:8
89:19 95:12
99:16 103:12
103:17 133:1
**raised** 7:10
51:4 58:3
92:19 94:14
97:25 98:12
**raising** 29:10
89:23 95:3
**ran** 20:18

range  91:19
ranking  114:14
  119:20
rare  45:4
rather  12:12
rational  59:11
ray  80:8
reach  80:21
reached  101:17
  108:7
read  33:2 127:8
reading  66:21
  102:22 127:7
  127:13,14
  135:4
real  92:1
really  3:9 5:22
  13:7 14:13
  26:20 30:13
  32:8 35:3 38:3
  39:14 43:10
  48:5,7 49:9
  55:3 60:15
  62:13 64:17,19
  68:9 69:16
  82:25 91:15
  105:19 106:18
  131:20 132:19
  135:3
reason  27:8
  53:13 79:9,14
  82:20 103:7
  108:21 110:25
  118:19 126:1

reasonable
  52:16
reasons  22:16
  89:22 98:13,21
  99:4,6
rebate  35:23
rebates  10:25
  17:22
recalled  56:9
receive  18:15
received  25:20
receiving  45:21
recent  10:12
recess  4:12
  99:23
recipient  52:4
recognizable
  60:16
recognize
  117:7
record  3:7 4:11
  9:8 10:11 15:1
  92:24 102:6
records  13:3
  103:3,5
redacted  45:2
  46:13
reduce  89:16
reduced  94:6
  96:6
reducing  97:11
reduction  94:7
refer  124:19
reference  91:9
  92:21,21 94:9

94:10 96:14
  116:19 131:13
references
  17:11
referencing
  127:4
referring
  107:21 110:22
  110:23 123:17
refers  108:5
reflect  31:19
  38:19 39:15
reflecting  42:9
reflects  31:20
reframing
  74:12
refresh  108:12
regard  3:16,20
  6:20 8:12
  17:20 23:13
  27:19 28:4,12
  31:8 33:11
  69:20 81:11
  101:7,16 127:9
  128:10
regarding  3:12
  4:17 34:7
  102:18 105:13
  107:22 123:13
regardless  12:1
regular  132:6,7
  132:8
regularly  24:2
reimburse
  119:6

reimbursing
  119:14
reiterate  76:16
reject  62:5
rejected  111:17
relate  3:12 20:3
  22:7 32:16
  43:12 111:8
related  25:2
  43:10 47:18
  54:21 67:1
  77:3,8 94:8
  103:5 110:9
  136:10
relates  62:15
  104:20
relating  4:24
  5:25 6:8,10,14
  7:21 16:20
  26:10 30:20,21
  54:25 56:15,22
  57:25 82:5
relative  73:23
  136:13
relevance  4:16
  9:17 15:25
  59:14 91:23
  132:18 133:3
relevancy  9:14
relevant  5:12
  5:20 9:3 10:16
  11:6,21,21
  15:24 17:3
  19:12 21:2,16
  21:24 25:8

**[relevant - return]** Page 32

28:15,23 31:13
33:8 34:7,9
35:1,12,22
36:24,25 41:12
41:20 53:18
58:20 61:20,21
64:7 67:13
70:2 72:9
76:17 77:14
80:6,20 82:25
87:5 89:17
90:2,6 91:24
91:25 100:4,10
108:25 109:8
110:22 114:5,6
115:13 116:2
117:23 118:20
122:13 124:7,8
124:15 129:8
131:8,10,17
134:3
**relief**  127:9
**relieve**  51:9,13
**rely**  128:6
**remain**  44:3
**remaining**
112:4 113:16
123:21
**rendering**
47:22
**renewed**  112:6
**repeat**  80:1
**reply**  98:1
113:15

**report**  89:8
93:24
**reporter**  1:15
99:21 136:4
**reports**  25:3
89:12 90:8
91:14,21
115:17
**representation**
93:7,11 97:19
97:22 114:21
**representations**
97:4
**represented**
123:14
**request**  30:4
31:5 32:1,2,25
33:20 34:13,15
34:19 37:9
47:21 49:17
54:21 55:21
64:14 67:11
81:7,8 88:4,6
108:16
**requested**  6:21
107:22 127:9
**requests**  5:7
6:20 7:20 8:3
22:18,18 40:18
40:19,25 45:21
63:24 67:12
69:10,14 79:1
81:9 87:14
88:22

**require**  69:22
80:8 90:16
127:11
**required**  12:20
48:11 52:22
**requirements**
20:10,23 30:18
**requires**  66:21
**reserve**  57:4
**resided**  121:25
**resides**  80:22
**residing**  73:19
**resolve**  22:20
57:3 112:7
135:5
**resolved**  3:7
8:11 113:1,3
**respect**  9:23
109:15 121:20
123:7
**respectfully**
108:15 126:2
**respond**  7:16
48:22 53:2
65:8 72:12
81:12 83:22
91:11 121:9
**response**  4:23
25:23 26:14
27:23 42:22,24
63:10,12 67:15
102:4 105:15
106:20,23
107:3,9 132:22

**responses**
55:12 114:19
123:15 124:11
**responsibilities**
114:16 120:22
**responsibility**
7:23 114:11,22
114:23 115:8
115:17 122:6
123:5
**responsible**
6:12
**rest**  103:25
105:15
**restrictive**
42:14
**result**  52:18
56:22 68:20
71:2 76:10
85:1 86:11
93:17
**resulted**  84:2
**retain**  15:5
**retention**  9:11
11:12,14,24
12:1 13:9
14:14 15:11
**return**  38:12
70:8,11 71:9
71:19 72:4,8
77:4,7 79:22
80:3 81:16,22
82:11 83:17,18
87:8 88:9,11
100:14

**reveal** 108:5
**review** 5:19
  23:5 32:12
  41:8 43:3
  45:12 46:9
  48:11 49:7
  52:22 53:24
**reviewed** 22:6
  42:23 57:7
**reviewing**
  45:14 48:3,12
  52:8 102:20
**revise** 42:9
**revising** 53:15
**revisit** 126:1
**rhetorical**
  95:13
**right** 3:1 4:2
  6:24 8:13 16:2
  18:25 21:17
  23:22 32:3
  38:14 39:13
  43:16 54:7
  55:4 58:3 60:6
  61:23 65:7
  66:13,14 87:14
  88:18 92:5,24
  101:12,18,20
  102:17 105:10
  110:3 111:20
  112:2 119:19
**riverfront** 2:9
**road** 31:2
**robinson** 2:19

**role** 44:5,12,20
  115:10
**rolls** 99:15
**roof** 23:5
**root** 27:10
**roseland** 1:18
**row** 94:1
**ruled** 87:24
  105:9
**rules** 59:18
**ruling** 110:7,14
  110:18 112:10
  134:15
**run** 16:20
  25:23 32:20
  44:8 55:22,24
  55:25 56:3,18
  83:2,11 104:8
  104:18 107:7
  108:10,13
  109:2 116:22
  119:3
**running** 26:12
  34:21 44:1
  104:12 109:25
**runs** 74:24
**ruthanne** 1:14
  136:3,20

**s**

**s** 2:3
**safety** 66:22,25
  67:2
**sale** 62:6 82:6
**sales** 71:4,4
  72:1 77:11,14

  77:18,19 78:16
  84:6,7,21
  99:16,17
**sandick** 2:5 7:1
  8:24 9:4,16
  12:23 13:20,22
  14:1,5,21
  15:13,16 18:6
  20:9 21:8 26:7
  28:20 29:18
  30:2,5,9 32:5
  33:4 35:3 37:4
  37:13 38:21
  39:3 40:7,16
  42:19 43:5
  44:17 46:4
  47:1,14 49:24
  51:24 52:11
  53:19 54:19,24
  55:4,9,13 56:6
  56:20 58:2,25
  63:3,14 68:11
  72:11,14 74:17
  74:22 75:5
  76:5 78:3 79:8
  80:7 82:3,23
  84:20 85:3,7
  85:18,23 86:1
  86:7 87:10
  88:20 90:4
  91:7 92:6,11
  92:20 93:8,12
  94:2,17,20
  95:1,4 96:4,24
  97:5,13,16,21

  103:23 110:5
  110:10 135:2
**sandick's** 49:9
**sandler** 1:17
  2:24
**sara** 2:7
**sat** 39:19
**savaria** 42:16
  46:8 54:10
**save** 1:8
**saveon** 5:23
  9:19,21,23
  10:8,17 11:5
  17:6 18:2,13
  20:16,17,24
  21:4 24:2,18
  26:19,24 27:1
  27:4,11,21
  29:2 30:12,16
  30:20 35:19
  36:5,6 42:5
  47:5 54:22
  55:7,12,12
  56:14 58:19
  60:7 61:8 62:7
  67:22 68:18,25
  69:2 70:21
  76:10 78:2,10
  80:17 83:16
  84:2,22 85:4,6
  85:8,17 86:12
  86:20,25 87:6
  87:9,11,15,23
  87:23 88:5,14
  91:9 92:10,21

92:22 93:14,20
93:23 94:9
95:17,22 96:6
96:10,15,18,19
104:4,9 106:21
106:23 108:3,5
110:22 114:18
114:25 115:2
116:4,25
117:10 121:1
124:1 131:12
131:14,17
**saveon's** 94:8
107:22 113:14
115:10 118:11
118:17 120:14
127:9
**savings** 22:2
36:16,18
**saying** 9:5,6,12
24:6 25:17
32:2 33:7
37:14,15 43:24
46:1 52:1 56:9
58:6 60:14
64:8 68:3,6,6
82:8 84:3
87:15 88:4
103:10 107:12
110:25 111:16
**says** 5:13 67:3
67:22 76:9
78:1 89:10,13
93:24 116:7
127:16 129:21

130:4
**scenario** 84:15
**scg** 130:5
**scope** 18:17
22:20 29:8
36:15 72:6
101:18
**scott** 111:14
116:7 119:4,17
121:8,14
**scratch** 81:17
**screen** 50:8
**scripts** 80:24
81:1 90:22
**search** 4:23 6:7
6:9,13,17,18
12:4 16:11,13
16:20 22:4,8
22:11,18 25:13
25:17,18,19,22
26:1 32:22,24
33:17,19,22
34:1,21 37:2,7
38:13 40:2,4
40:13,14 41:4
41:13 42:15
43:23 44:1
45:25 46:2,23
46:25 47:11
49:11 53:1,12
53:16,25 54:3
54:15 55:22,25
56:17 57:10,16
58:4 61:24
78:25 82:17

85:9 86:4,7,16
91:19 101:18
103:2 104:2,8
105:2 106:12
106:13 107:6
107:16,18,21
108:11 109:22
109:25 110:5,9
111:5,8,10
114:5 116:22
128:9,23
129:11 131:10
132:6,9,12
134:23
**searches**
102:19 103:4
103:19 105:3
105:13
**second** 96:19
106:17 130:22
**secret** 79:10
**see** 3:11 5:19
15:15,20 21:5
28:3 30:19
35:15 46:9
56:25 57:1,17
63:1 68:7,8
75:19 87:11
98:15 116:2,25
119:4 120:2
131:5
**seeing** 52:23
**seeking** 91:8
120:10

**seemed** 12:12
**seeming** 126:15
**seems** 49:9
**seen** 17:17 19:3
47:14 49:1
57:18 68:16
82:10 85:18,23
86:1 100:11
106:8 122:25
**segment** 83:14
83:14
**selective** 42:7
**selendy** 2:15
**sell** 71:13
**selling** 82:14
**sells** 76:24 77:1
**send** 15:16 41:9
42:22
**sends** 119:2
**senior** 27:4
114:2,11
115:16 117:4,9
122:4
**sense** 44:13
74:23 84:16
102:23 103:2
105:7
**sensitive** 99:7
**sensitivity**
133:2
**sent** 42:20,20
102:8 130:24
**sentence** 38:11
**separate** 47:4
48:12 87:2

[separate - sorts]                                                    Page 35

124:21
**separately**
  46:17 48:3
  99:2
**september**
  107:25
**series** 67:23
**serve** 113:25
**served** 7:20,22
**serves** 29:10
  60:24
**services** 36:5,6
  60:23 118:11
  118:18 120:14
**serving** 50:2
**set** 4:6 59:15,18
  60:20 61:16
  91:8 92:21,21
  94:9 96:14
  126:19 127:9
  132:6 136:8
**sets** 17:10
  60:19 61:16
  69:25
**setting** 17:7
  61:7
**seven** 112:25
**several** 3:4
  42:23 104:16
**shake** 126:15
**shaking** 131:5
**shampoo** 77:18
**share** 94:5
**sheet** 23:3

**sheryn** 2:23
**shift** 73:7
**short** 4:5 5:8
  10:3 12:16
  105:12
**show** 21:2
  30:17 31:7
  43:13,14 59:17
  61:6,15 63:14
  69:23 84:13
  85:1 87:3
  91:25 94:21
  95:15,16 99:14
  111:24 120:19
**showing** 59:1,5
  60:19 61:4,10
  61:13 77:5
  79:21 88:1,1
  89:22 117:10
**shown** 120:11
  124:14
**shows** 118:15
  125:6
**side** 13:10
  16:13 25:21
  34:8,18 53:14
  100:25 114:21
  126:16 131:6
**sides** 132:2
**sidetracked** 7:4
**sign** 84:22
  86:23 87:3
  119:23 120:24
**signatory**
  121:18

**signature**
  121:14 136:20
**signed** 70:25
  121:16 125:16
**significant**
  48:17 112:12
**signing** 65:14
  71:24 78:17
  84:1,3,5 85:16
  125:12,13
**sills** 2:8,12
**similar** 39:8
**similarly** 66:20
  103:4
**simple** 73:19
**simply** 10:16
  15:7 30:17
  126:5
**single** 33:2
  61:18 82:17
  112:20 116:6
  118:10,13
  130:24
**sit** 39:20 41:3
  52:13
**sits** 120:5
**sitting** 48:14
  75:11
**six** 63:17
  101:15 109:19
  112:25 113:1
  126:6 127:4,4
**slice** 131:25
**slightly** 40:24

**small** 120:10,10
  133:5
**smoking** 116:5
**snow** 2:17
  101:9,21 103:9
  104:15 106:5
  106:17 107:17
  107:20 111:9
  112:3 117:16
  117:17 118:6
  119:24 120:4
  120:18 121:22
  124:10 125:4
  126:9,19
  128:12,15,19
  129:13,16
  130:3,17,22
  131:2 132:5,15
  132:17 133:19
  133:25 134:24
**somebody** 37:6
**somebody's**
  60:15
**someone's**
  73:20
**somewhat**
  40:19
**sorry** 120:4
**sort** 13:2 15:3
  43:24 61:3
  65:25 66:3
  76:20 95:8,13
  134:3
**sorts** 23:9
  80:25

sought 20:23
sound 12:8
south 123:6
sp 1:8 62:7
  93:20,23
spaces 112:21
speak 15:3
  43:20 70:10
  100:24 102:3
  106:5 117:12
speaking 28:23
specific 7:25
  40:12 73:8
  75:8 87:25
  104:8 105:7
specifically 7:2
  8:9 24:17 42:3
  45:11 46:15
  49:12 53:14
  56:13 69:21
  71:9 75:8
  102:18 108:1
  126:24 134:1
specifics
  102:18 105:13
  108:2
specified 103:6
spell 97:7
spend 71:11
  76:11 135:4
spending 78:19
spent 59:6,23
split 112:22
spoke 102:13

sporadic 57:20
spotlighted
  18:21
squarely 61:21
stage 9:3
stake 87:7
stand 77:16,25
  78:6 93:5
  95:19 96:20
standard 5:16
  23:7,10 36:8
  124:14
standpoint
  102:24
stands 26:16
start 9:13
  31:18 49:9,15
  49:23 86:5,18
  87:6,14 97:24
  113:19 121:12
  126:11 127:17
  128:6 129:17
started 8:22
  10:1 26:19
  27:22 56:13
  101:13 103:13
  106:16
starting 24:16
  86:6 107:24
starts 129:25
state 1:16
  136:4
stated 123:11
statement
  29:20

statements
  123:13
states 1:1 112:8
stating 85:19
statute 66:21
  67:1 69:3
stay 89:25
steal 72:18
  84:16
stealing 97:12
steals 78:3 83:3
stelara 6:13,14
  24:19 25:11
  42:2 43:9
  53:15 55:3
  56:7,12,22
  57:11 68:8,20
  86:24 104:21
  121:2,24
stenographic
  1:12 136:6
steps 27:6,23
  28:9
stop 61:25
  74:16
story 77:25
  80:18,22 81:3
  81:5
stranger 45:8
strategic 130:6
strategy 99:3
string 19:5
strongly 76:17
stuff 100:8

subject 7:8
  12:18,25 21:9
  21:22 22:8
  23:1 26:10
  28:21 30:10
  33:24 39:4
  43:8,10 53:10
  59:7 63:5,9
  68:12 72:8
  80:14 83:13
subjects 41:12
submission
  12:24 16:12,15
  100:16
submit 15:14
  19:25 100:23
submitted
  21:10 100:12
subpoena 47:4
subpoenaed
  51:7
subsequent
  122:24
subsidiary
  74:24
substantial 3:8
  13:1 59:20
substitute 7:12
success 64:16
succinctly
  112:18
suddenly 109:4
sufficient 87:9
suggest 92:9
  133:11

**suggests**  72:22
  118:14
**suit**  66:4
**summarize**
  99:25
**summarized**
  102:12
**summarizing**
  100:16
**summary**  12:18
  93:1
**summer**  63:10
**sun**  61:19
**supplemental**
  100:15
**support**  5:17
  10:4 26:22
  29:24 59:6,19
  74:10 75:10
  94:22
**supports**  90:12
  90:15 116:9
**suppose**  45:17
**supposed**  3:24
**sure**  7:18 9:16
  13:13,25 17:23
  29:18 33:22
  35:25 36:11
  39:5 46:4
  57:24 58:11
  69:3 72:13
  74:17 75:6
  113:20 122:9
  124:2

**surprised**  58:7
**sworn**  136:7
**system**  10:1
  15:1
**systems**  1:5

**t**

**t**  123:19 136:1
  136:1
**t&c's**  6:8,13,15
  6:22
**table**  4:6
  126:16
**tables**  4:19
**tailor**  8:22
**tailored**  8:20
  54:3 69:14
**take**  9:12 27:6
  27:22 28:12
  46:5 70:23
  71:12 79:12
  83:5,16 84:1
  99:19 106:10
  108:18 113:11
  118:2,7 125:21
  131:18 132:3
  134:9
**taken**  1:14 4:12
  10:21 53:23
  94:4 95:22
  99:23 131:15
  136:12
**talk**  6:19 8:8
  13:22 14:21
  16:6 24:13
  25:25 30:15

  34:2 45:19
  54:3 58:9
  67:12 69:11
  72:5 76:19
  105:18,20
  127:17 128:7
  129:2
**talked**  3:19
  62:1 76:13
**talking**  5:23
  10:9 11:10
  19:21 27:18,20
  32:12 33:10,12
  34:18 38:16
  40:10 45:8
  65:12,18,19
  66:5,7,8,14
  90:14 109:21
  117:8 121:22
  123:4,5
**talks**  35:5 85:3
  85:5
**targeted**  93:23
**team**  120:5
  133:6,6
**teams**  81:24,24
**tee**  15:12
**tell**  16:17 24:4
  45:12 63:23
  66:6 77:25
  79:2 86:17
  88:2 92:3
**telling**  12:7
**tells**  11:13

**term**  4:17 7:25
  9:2 10:22
  12:21 18:7,23
  21:23 23:10
  28:25 30:16
  36:8 55:25
  56:4,5,17
  103:6 104:8,13
  104:18,19
  107:23 111:5
**terminated**
  26:23
**terms**  3:12,18
  3:22 4:23,24
  5:12,15,16,24
  5:25 6:9,18
  7:21,24 9:22
  10:21 16:8,11
  16:13,22 17:3
  17:9,10,12,15
  18:8 19:5,9,19
  20:2,3,21 21:6
  21:6,22 22:4,8
  22:11,18 23:4
  23:4,7 25:13
  25:17,18,19,22
  26:1,11,15,25
  27:9,24 29:21
  32:20,22,24
  33:17,19,22
  34:1,17,21,21
  34:25 35:16,19
  36:9,22,23
  37:2,7,25
  38:10,13,17

39:10,13,16
40:2,4,13,14,19
40:24 41:4,13
42:2,6,10,15
43:9,13 44:1
49:12 53:1,12
53:16,17,25
54:3,15,20,25
55:22 57:10,16
57:17,20 58:1
58:5,5 59:18
61:24 62:8
67:17 71:4
74:6 77:14
78:3,25 79:19
82:13 83:7
101:18,21
104:2,21 105:2
107:6,16,19,21
108:1,11,18
109:22 110:1,5
110:9,21 111:8
111:10 114:5
116:22 118:12
118:18 120:14
120:25 128:9
128:23 129:11
132:6,9,12
134:23
**test** 30:19,20
**testimony** 77:5
**text** 112:20
**thank** 41:24
88:17 129:13
130:1 134:25

135:3,6
**theory** 79:16,18
93:9 96:7
97:17 116:9
**thicket** 68:24
**thing** 29:9
54:19 58:16
79:10,24 101:7
105:21
**things** 3:14 7:6
9:4 10:25 17:7
17:22 18:16
21:8 22:1,22
23:22 25:15
26:8 27:17
28:5,15,21
29:7 32:10
34:16 35:12
38:2 58:21
60:3 62:9
65:13,19 67:24
68:6 73:13
92:22 94:10
129:1
**think** 4:7 5:22
6:6,23 7:1,6,9
8:2,6,13 9:17
9:23 12:12
13:4,16 15:23
15:25 16:7,10
17:2,13,15,19
18:4,23 19:1
19:15 20:14
21:1,10,18,25
24:11 26:6,7

28:9,16 30:25
31:4,18 34:1
37:14 40:13
41:12,20 42:13
42:18 43:18,19
44:2 49:5,22
54:1 55:2,18
55:19,22 56:4
56:19 57:14,15
58:16 59:23
60:7,9 61:20
62:13,23 63:1
63:23 64:3
67:4,9,11
69:15,21 70:11
72:1 75:8,23
76:18 77:12,21
78:5 80:21
82:7,9 86:6,15
86:16,21 87:8
88:23 89:15,21
90:2,4,6 92:15
94:13,14 95:24
96:24 98:1
99:10,13 100:2
100:13,23
101:1,6,16,23
103:17 104:2
105:10 106:17
107:1,5 111:16
112:8,11,17,19
113:2,4 115:12
115:14 116:3
117:3,10
118:19,23

119:21,24
120:9,18
123:23 125:11
126:2,12 127:6
128:5 130:10
131:14 133:10
134:12
**thinks** 34:8
**third** 2:19
46:21 47:4,9
49:2,11 51:5
51:15,18,22,24
52:3 53:7,9
54:14,25 55:8
66:2 110:18
116:5,10
132:19,20,21
**thirds** 22:5
**thought** 10:24
12:5 20:17
24:5 31:23
96:1 100:3
103:13 109:14
126:25
**thousands** 4:22
22:10 48:16
**thread** 131:2
**threat** 66:21,24
**threaten** 60:4
61:11
**threatens** 60:7
**three** 22:5
55:20 133:6
**tied** 32:9 78:22

**ties** 88:3
**tim** 102:10,11
**time** 4:19 5:18
  5:20 8:19 10:7
  10:9,12,22
  11:5,21 14:22
  14:25 15:1,5
  19:24 21:16
  22:12 24:9
  25:9 27:25
  30:22 31:15
  33:9 34:14
  35:5 36:19
  37:6 38:14
  40:21 44:24,24
  52:2 55:19,23
  55:24 56:1
  57:18 58:2,20
  79:14 90:19
  92:13 103:16
  105:2 108:11
  110:18 113:7
  128:19,20
  132:3,7,8
  135:4
**times** 53:20
  88:1 118:24
**today** 3:2 8:8
  13:23 14:3
  16:18 55:16
  64:23 92:24
  97:4 100:20
  115:24 118:24
  126:12

**told** 22:15,16
  32:14,21,22,22
  63:11 102:5
  117:11
**tons** 98:3
**took** 31:16
  32:19 43:24
  63:16 99:25
  104:11 105:23
  106:19
**tool** 50:9 64:20
**tools** 36:8
**top** 116:7 118:6
**topic** 6:24 16:3
  80:6
**tortious** 36:3
**tortiously**
  18:18
**totally** 12:13
  58:7 73:13
  74:1 80:13
**touch** 28:24,25
**towards** 17:8
**tracks** 7:2
**transcript** 1:6
  1:12 33:3
  126:10,17,21
  126:23 127:13
  127:15 136:6
**transparency**
  89:8 90:8
  91:14,21 93:24
**tremendous**
  80:25

**tremfya** 6:13
  6:15 24:19
  25:11 42:2
  43:9,13 53:16
  55:3 56:8,12
  56:22 57:11
  68:20 104:21
  121:3,24
**trial** 12:19
  21:13 22:3
  32:10 46:20,24
  47:1,3,5,6 49:3
  49:12 51:7
  56:10 69:6
  84:12 92:25
  96:20 116:1
  118:21,23,25
  119:6 125:19
**tried** 7:11 10:3
  32:18
**true** 26:9 78:5
  82:9 85:19
  94:13 117:1
  128:4 132:25
  136:5
**try** 3:15 26:20
  27:10 37:3
  81:18 90:18
  104:10
**trying** 9:21
  35:21 76:2
  77:16 90:9
  96:17 110:24
  121:18 127:19
  133:21

**turn** 3:17 11:9
  20:7 24:9
  58:15 113:11
**turned** 107:10
**turning** 66:16
  117:24 130:10
  132:15
**turns** 7:24
**two** 4:5 6:11,18
  17:17 21:8,25
  22:5 24:19,22
  24:25 27:17
  32:21 42:10
  44:3,7 49:21
  54:9 55:18
  60:9 62:3,6
  65:25 77:3
  98:13 101:21
  103:18 106:5
  107:21 127:18
  131:12
**tyler** 2:4
**type** 72:6,7
**types** 79:1
  113:21

| u |
|---|

**ultimately**
  102:15 104:6
  104:10,15
  106:19 107:9
  112:22 127:4
  127:23 133:9
**uncontrovers...**
  5:16

**[undecided - want]**                                                    Page 40

| | | **v** | **w** |
|---|---|---|---|

**undecided**
  112:5
**under**  3:25
  19:6 60:16
  61:13,19 77:15
  87:21
**underlying**
  39:12 65:20
**underscore**
  78:24
**underscores**
  100:14
**understand**
  18:1 19:8,10
  19:11,14,25
  23:12 28:16,17
  33:7 35:21
  36:17,21,22
  38:6 41:22
  43:25 56:24
  58:17 67:19
  69:24 75:17
  87:6 105:21
  109:10 128:24
  129:9
**understanding**
  3:21 5:11 6:10
  8:18,22 16:21
  19:23 28:10
  34:15,23,24
  35:14,23 38:17
  38:20 40:10
  56:2 98:20
  104:21 132:24
  133:15

**understands**
  5:15 102:13
**understood**
  33:20 57:22
  134:5
**undertake**  48:3
**undertaken**
  45:11
**ungerleider**
  1:14 136:3,20
**unique**  114:24
**unit**  52:17
**united**  1:1
**universe**
  132:11
**unusual**  48:4
**update**  5:3 59:4
**updated**  43:15
**updates**  130:8
**updating**  5:4,5
**use**  7:11 35:16
  36:9 46:19
  50:14 128:11
  133:22
**used**  4:23 5:16
  6:9 9:2 10:23
  23:3,8,8 36:20
  42:15 76:21
  78:4 110:6
  128:20
**uses**  22:12
**using**  40:14
  53:1 96:10
**usually**  122:12

**values**  90:12
**various**  23:21
  27:19 38:18
  39:10 63:19
  81:18
**vasquez's**
  18:19
**vast**  80:12
**vazquez**  62:1
  65:18
**vazquez's**
  12:15
**vendor**  21:12
**verbatim**  81:8
**versus**  15:25
**viability**  60:4,8
  61:11 62:18,18
  64:5,11 67:24
  68:4,15 69:2
  69:10,13,23
  119:11
**view**  26:24 41:1
**vigilant**  39:9
**violate**  27:24
  118:12,18
  120:14
**virtually**  73:21
**virtue**  21:19
**voluntarily**
  26:13
**vs**  1:7

**w**  123:19
  132:21
**wait**  56:25 84:3
  127:13
**waldor**  3:5
  13:10 22:15
  31:1 32:21
  37:8 40:17
  41:2 43:16,23
  63:11 81:10
  87:24 101:14
  101:24 102:1
  102:13,21
  103:6 104:11
  104:17 108:17
  109:9 110:15
  110:16 111:17
  111:24 112:7
  112:18,22,22
  113:24 114:9
  124:23 125:24
  126:25 127:5
**waldor's**  26:14
  27:14 56:2,23
**want**  3:15 7:5
  8:20 9:12
  13:17,17 14:3
  14:9,17 16:18
  17:23 18:1
  19:14 20:7
  21:21 23:12,15
  23:19 24:1,3
  28:8,14 33:8
  35:9,11,15

36:19,21 39:9
41:15 49:16
51:3,14 55:8
55:16 56:15
57:24 62:11
64:2 65:16
67:9,12,14
68:9 69:8
70:17 74:14
75:1,19 77:25
78:6 80:6
81:21 82:18
86:5 87:6,7,15
91:22 93:7
94:15 96:15
97:18,23 98:15
98:19 99:19
100:7,23
103:24 105:20
108:9 111:4
112:2 117:12
117:18 118:8
124:24,25
125:20,24
127:24 128:6
128:10 129:2
131:12
**wanted** 3:4
34:11 38:3
63:11 104:1
105:14
**wants** 50:15
84:12 85:12
100:10 131:25

**way** 8:9 17:5
18:10 22:7,11
28:13 29:12
33:23 35:10
38:15 61:4,10
62:2 66:25
74:13 75:23
79:9 80:15
85:9 90:9 92:7
93:2 94:2
118:1 128:5
**wayne** 2:24
102:3,5 130:1
**ways** 122:10
133:21
**we've** 9:7 22:23
38:21,24 42:23
58:25 59:5,19
92:18,19
104:16 109:25
110:6,13
112:14 113:5
115:22 116:12
120:18 122:25
129:6,14
134:21
**webb** 2:4
**website** 89:10
91:15
**wednesday**
1:18 13:24
**week** 13:24
14:3,4 41:16
42:21 83:3
84:17 101:8

103:12
**weeks** 3:4
68:20,24
**weighing** 15:24
105:15
**welcomed**
124:2
**went** 16:12
40:22 48:25
104:11 105:10
112:21
**white** 111:14
112:13 113:19
113:24 114:13
114:13,17,21
115:8,12,17
117:4 118:16
119:4,17
120:17 121:8
121:14,17
124:19 125:15
128:10 134:15
134:22
**white's** 125:14
**wide** 80:8,25
91:19
**willing** 25:22
**wind** 45:15
**window** 104:24
**winds** 78:11
**withheld** 45:2
46:12 124:6
**witness** 136:7
**wohlforth** 2:20

**wolfson** 2:2 3:1
4:7,13 7:18 8:7
8:15,23 9:10
10:14 13:6,21
13:25 14:2,8
14:11,15,20
15:6,15,18
16:16,24 17:19
18:4,22 19:17
23:11,24 27:15
29:16,23 30:3
30:7,25 33:2,6
34:5,10 35:9
36:13 37:11,19
37:22 39:1,6
40:8 41:3,25
43:1 44:9
45:25 46:18
47:7 48:24
49:19 51:3
52:10,25 53:4
53:9 54:7,12
54:18,23 55:2
55:15 57:1
58:9,14 59:25
61:25 63:13,23
65:10 66:12
68:2 69:8 70:4
72:13 74:14,18
75:12 76:14
77:20 79:2,19
80:1 81:14
82:1 83:23
84:19 85:13,22
85:25 86:3,9

[wolfson - zoom]                                                    Page 42

| | | |
|---|---|---|
| 86:14,18 88:13 | 134:5,20 135:1 | **written** 32:23 |
| 88:18,21,25 | 135:7 | **wrong** 44:19 |
| 89:4 91:4,12 | **wondering** | 83:5,6 |
| 91:22 92:4,17 | 74:19 | **wrote** 129:21 |
| 92:23 93:6,10 | **word** 22:12,13 | **x** |
| 94:15,19,24 | 23:3 35:6 | |
| 95:2,24 96:23 | 36:20 132:20 | **x** 80:8 |
| 97:2,9,14 | **words** 37:5 | **xio0115** 136:21 |
| 98:17 99:19,22 | 45:11 | **xio1634** 136:21 |
| 99:24 100:19 | **work** 35:13 | **y** |
| 101:4,6,11,23 | 39:25 40:3 | |
| 102:10 103:20 | 44:22 47:16,18 | **yeah** 14:20 |
| 105:5,25 | 48:8,20,20 | 55:15 62:20 |
| 106:10,13 | 50:4 51:2,2 | 65:10 66:12 |
| 107:11,18 | 52:7 61:23 | 76:14 85:7 |
| 108:7,13,21 | 81:23 102:20 | 87:10 91:12 |
| 109:17,24 | 105:14 116:1 | 94:19 112:16 |
| 110:3,8,20 | 118:21 125:10 | 113:18 119:16 |
| 111:7,11 | 132:12 | 127:22 129:11 |
| 112:15 113:4 | **worked** 44:5 | **year** 24:22 |
| 113:18 115:5 | 133:4 | 27:13 57:8 |
| 117:16 118:5 | **working** 8:5 | 63:17 94:1 |
| 119:16 120:3 | 43:6 45:14 | 95:12 |
| 120:16 121:10 | 50:1 107:3 | **years** 10:5,12 |
| 122:7,18 | 129:22 130:5 | 13:3 39:22 |
| 123:16,20 | 132:19,21 | 92:2 109:20 |
| 124:22 125:20 | **works** 17:5 | **york** 2:5,5,13 |
| 126:13,20 | **world** 33:17 | 2:13,16,16,20 |
| 127:12 128:2 | 54:22 64:15 | 2:20 |
| 128:14,17,22 | 110:23 111:5 | **z** |
| 129:14,24 | **worried** 109:18 | |
| 130:14,20 | **worse** 68:18 | **z** 123:19 |
| 131:1,4,18 | **write** 129:1 | **zoom** 2:10 3:3 |
| 132:8,16 | **writing** 129:7 | 41:18 |
| 133:18,23 | | |

Veritext Legal Solutions

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2)  Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

# EXHIBIT 41
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 42



May 31, 2024

Julia Long
(212) 336-2878

**VIA EMAIL**

Elizabeth H. Snow, Esq.
Selendy Gay, PLLC
1290 Avenue of the Americas
New York, NY 10104

       **Re:**   **Meeting Recordings and Presentations**
            *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*,
            **2:23-cv-02632 (JKS) (CLW)**

Dear Elizabeth:

      We write in response to SaveOnSP's April 26, 2024 letter, in which you identify 454 meeting invitations that JJHCS has produced to date, and demand that JJHCS produce any meeting recordings associated with those meetings.

      First, there is no indication that the overwhelming majority of invitations cited by SaveOnSP were recorded. █████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
███████████████████████████████████ ██████████████████████
█████████████████████████████████

      Second, as to the meetings that did take place, as to most of them, there is still no reason to believe that they were recorded. ████████████████████████
██████████████████████████████████████████████████████████
████████████████████ ████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████

      Finally, ██████████████████████████████████████████████
██████████████████████████ ██████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████

Elizabeth H. Snow, Esq.
May 31, 2024
Page 2


███████████     In the course of our investigation, we determined that Zoom recordings are stored on Zoom servers, rather than on servers maintained by JJHCS or any other J&J entity.  Historically, recordings of meetings held on Zoom and Microsoft Teams were not stored on cloud networks for more than 120 days.  Since receiving your letter, JJHCS has taken additional steps to retain indefinitely recordings of meetings hosted by designated JJHCS custodians on these platforms. As to WebEx-based meetings, JJHCS stopped using that platform in early 2019, and the cloud storing those recordings was decommissioned in or around April 2019, more than three years prior to the commencement of this litigation.

        We remain available to meet and confer.

                                Very truly yours,


                                */s/ Julia Long*
                                Julia Long


15115202

## Appendix A

| | | | | |
|---|---|---|---|---|
| JJHCS_00224570 | JJHCS_00212044 | JJHCS_00035048 | JJHCS_00197560 | JJHCS_00162470 |
| JJHCS_00129893 | JJHCS_00146421 | JJHCS_00035063 | JJHCS_00218530 | JJHCS_00173128 |
| JJHCS_00210246 | JJHCS_00132701 | JJHCS_00035066 | JJHCS_00145727 | JJHCS_00217763 |
| JJHCS_00072600 | JJHCS_00010072 | JJHCS_00035035 | JJHCS_00008107 | JJHCS_00001244 |
| JJHCS_00072919 | JJHCS_00038608 | JJHCS_00043255 | JJHCS_00156575 | JJHCS_00011154 |
| JJHCS_00040329 | JJHCS_00104243 | JJHCS_00183953 | JJHCS_00003126 | JJHCS_00001704 |
| JJHCS_00084078 | JJHCS_00212214 | JJHCS_00140621 | JJHCS_00003136 | JJHCS_00183187 |
| JJHCS_00083321 | JJHCS_00212458 | JJHCS_00214211 | JJHCS_00007876 | JJHCS_00186391 |
| JJHCS_00061290 | JJHCS_00113376 | JJHCS_00139378 | JJHCS_00151894 | JJHCS_00182212 |
| JJHCS_00065334 | JJHCS_00132606 | JJHCS_00184713 | JJHCS_00196214 | JJHCS_00219230 |
| JJHCS_00037344 | JJHCS_00212528 | JJHCS_00217203 | JJHCS_00218466 | JJHCS_00160905 |
| JJHCS_00065349 | JJHCS_00120191 | JJHCS_00027853 | JJHCS_00130684 | JJHCS_00185944 |
| JJHCS_00000560 | JJHCS_00212013 | JJHCS_00218667 | JJHCS_00117378 | JJHCS_00190442 |
| JJHCS_00207947 | JJHCS_00141281 | JJHCS_00217160 | JJHCS_00082514 | JJHCS_00171134 |
| JJHCS_00220716 | JJHCS_00034992 | JJHCS_00143702 | JJHCS_00140480 | JJHCS_00168856 |
| JJHCS_00220725 | JJHCS_00034977 | JJHCS_00146447 | JJHCS_00203973 | JJHCS_00183449 |
| JJHCS_00112110 | JJHCS_00034980 | JJHCS_00133499 | JJHCS_00218426 | JJHCS_00191658 |
| JJHCS_00141034 | JJHCS_00034982 | JJHCS_00133495 | JJHCS_00008416 | JJHCS_00158518 |
| JJHCS_00209791 | JJHCS_00101284 | JJHCS_00187058 | JJHCS_00157205 | JJHCS_00187018 |
| JJHCS_00112120 | JJHCS_00034994 | JJHCS_00197565 | JJHCS_00070997 | JJHCS_00158514 |
| JJHCS_00111869 | JJHCS_00034984 | JJHCS_00200616 | JJHCS_00144198 | JJHCS_00172626 |
| JJHCS_00111928 | JJHCS_00034987 | JJHCS_00146183 | JJHCS_00146402 | JJHCS_00158432 |
| JJHCS_00064572 | JJHCS_00211947 | JJHCS_00150651 | JJHCS_00197569 | JJHCS_00182483 |
| JJHCS_00114312 | JJHCS_00143599 | JJHCS_00200597 | JJHCS_00151335 | JJHCS_00181951 |
| JJHCS_00060078 | JJHCS_00034989 | JJHCS_00198011 | JJHCS_00198064 | JJHCS_00161266 |
| JJHCS_00065715 | JJHCS_00121576 | JJHCS_00150698 | JJHCS_00035919 | JJHCS_00186205 |
| JJHCS_00111006 | JJHCS_00034999 | JJHCS_00008874 | JJHCS_00198261 | JJHCS_00185340 |
| JJHCS_00142069 | JJHCS_00146367 | JJHCS_00150729 | JJHCS_00182186 | JJHCS_00183033 |
| JJHCS_00111220 | JJHCS_00211917 | JJHCS_00118928 | JJHCS_00011191 | JJHCS_00182302 |
| JJHCS_00082355 | JJHCS_00034996 | JJHCS_00077791 | JJHCS_00071669 | JJHCS_00181700 |
| JJHCS_00059381 | JJHCS_00152459 | JJHCS_00143697 | JJHCS_00171108 | JJHCS_00158791 |
| JJHCS_00142311 | JJHCS_00132484 | JJHCS_00119044 | JJHCS_00198258 | JJHCS_00172254 |

| | | | | |
|---|---|---|---|---|
| JJHCS_00061949 | JJHCS_00152331 | JJHCS_00210654 | JJHCS_00170649 | JJHCS_00187039 |
| JJHCS_00065199 | JJHCS_00035001 | JJHCS_00139343 | JJHCS_00107700 | JJHCS_00172080 |
| JJHCS_00026529 | JJHCS_00152320 | JJHCS_00139396 | JJHCS_00129750 | JJHCS_00192721 |
| JJHCS_00035161 | JJHCS_00195885 | JJHCS_00139499 | JJHCS_00198018 | JJHCS_00160834 |
| JJHCS_00008253 | JJHCS_00006901 | JJHCS_00119174 | JJHCS_00219032 | JJHCS_00187012 |
| JJHCS_00117786 | JJHCS_00044594 | JJHCS_00008818 | JJHCS_00198047 | JJHCS_00187039 |
| JJHCS_00008262 | JJHCS_00044655 | JJHCS_00008733 | JJHCS_00198068 | JJHCS_00158810 |
| JJHCS_00213723 | JJHCS_00151263 | JJHCS_00150449 | JJHCS_00083793 | JJHCS_00165785 |
| JJHCS_00132917 | JJHCS_00035007 | JJHCS_00156868 | JJHCS_00182168 | JJHCS_00158920 |
| JJHCS_00208396 | JJHCS_00007131 | JJHCS_00145826 | JJHCS_00184650 | JJHCS_00192453 |
| JJHCS_00083211 | JJHCS_00035004 | JJHCS_00146452 | JJHCS_00185833 | JJHCS_00182510 |
| JJHCS_00080299 | JJHCS_00076057 | JJHCS_00141096 | JJHCS_00170120 | JJHCS_00167607 |
| JJHCS_00109712 | JJHCS_00035010 | JJHCS_00002474 | JJHCS_00169943 | JJHCS_00185806 |
| JJHCS_00008233 | JJHCS_00139245 | JJHCS_00150486 | JJHCS_00188806 | JJHCS_00178263 |
| JJHCS_0003506[1] | JJHCS_00035032 | JJHCS_00082952 | JJHCS_00161787 | JJHCS_00158785 |
| JJHCS_00102943 | JJHCS_00007201 | JJHCS_00033655 | JJHCS_00160327 | JJHCS_00165790 |
| JJHCS_00026514 | JJHCS_00211895 | JJHCS_00157602 | JJHCS_00173165 | JJHCS_00158357 |
| JJHCS_00156412 | JJHCS_00118668 | JJHCS_00150288 | JJHCS_00190079 | JJHCS_00161640 |
| JJHCS_00042623 | JJHCS_00152112 | JJHCS_00083748 | JJHCS_00190094 | JJHCS_00168472 |
| JJHCS_00126147 | JJHCS_00000545 | JJHCS_00157362 | JJHCS_00186618 | JJHCS_00161642 |
| JJHCS_00126196 | JJHCS_00197563 | JJHCS_00141195 | JJHCS_00163902 | JJHCS_00185823 |
| JJHCS_00026511 | JJHCS_00001391 | JJHCS_00008591 | JJHCS_00223778 | JJHCS_00192411 |
| JJHCS_00038618 | JJHCS_00121696 | JJHCS_00083751 | JJHCS_00189846 | JJHCS_00191219 |
| JJHCS_00104319 | JJHCS_00156381 | JJHCS_00218676 | JJHCS_00188812 | JJHCS_00160768 |
| JJHCS_00078220 | JJHCS_00152144 | JJHCS_00008639 | JJHCS_00163906 | JJHCS_00197716 |
| JJHCS_00081977 | JJHCS_00035019 | JJHCS_00002701 | JJHCS_00173284 | JJHCS_00161140 |
| JJHCS_00224069 | JJHCS_00000543 | JJHCS_00154319 | JJHCS_00189580 | JJHCS_00192331 |
| JJHCS_00038621 | JJHCS_00035016 | JJHCS_00083283 | JJHCS_00170668 | JJHCS_00168387 |
| JJHCS_00042017 | JJHCS_00006419 | JJHCS_00156376 | JJHCS_00182536 | JJHCS_00194265 |
| JJHCS_00065158 | JJHCS_00121511 | JJHCS_00150848 | JJHCS_00167018 | JJHCS_00161127 |
| JJHCS_00215320 | JJHCS_00079653 | JJHCS_00083798 | JJHCS_00189532 | JJHCS_00185062 |

---

[1] SaveOnSP referred to "JJHCS_0003506" in its April 26, 2024 letter.  It appears SaveOnSP meant to reference JJHCS_00035069.

ii

| | | | | |
|---|---|---|---|---|
| JJHCS_00008285 | JJHCS_00129745 | JJHCS_00142700 | JJHCS_00189630 | JJHCS_00192372 |
| JJHCS_00079615 | JJHCS_00208427 | JJHCS_00084400 | JJHCS_00169539 | JJHCS_00185384 |
| JJHCS_00126113 | JJHCS_00035042 | JJHCS_00117421 | JJHCS_00172620 | JJHCS_00172237 |
| JJHCS_00200605 | JJHCS_00152077 | JJHCS_00117387 | JJHCS_00172530 | JJHCS_00182245 |
| JJHCS_00065174 | JJHCS_00035039 | JJHCS_00122611 | JJHCS_00189536 | JJHCS_00185089 |
| JJHCS_00121937 | JJHCS_00132445 | JJHCS_00184677 | JJHCS_00182856 | TJP0000157 |
| JJHCS_00008273 | JJHCS_00074255 | JJHCS_00002627 | JJHCS_00186521 | JJHCS_00182310 |
| JJHCS_00008281 | JJHCS_00210418 | JJHCS_00075169 | JJHCS_00172217 | JJHCS_00169268 |
| JJHCS_00062924 | JJHCS_00035045 | JJHCS_00198058 | JJHCS_00189184 | JJHCS_00161056 |
| JJHCS_00121906 | JJHCS_00006704 | JJHCS_00034691 | JJHCS_00170301 | JJHCS_00185117 |
| JJHCS_00078194 | JJHCS_00196880 | JJHCS_00197031 | JJHCS_00169527 | JJHCS_00172268 |
| JJHCS_00121873 | JJHCS_00152296 | JJHCS_00083830 | JJHCS_00159021 | JJHCS_00161050 |
| JJHCS_00145630 | JJHCS_00035023 | JJHCS_00084193 | JJHCS_00160233 | JJHCS_00191968 |
| JJHCS_00132744 | JJHCS_00146314 | JJHCS_00210956 | JJHCS_00165391 | JJHCS_00193779 |
| JJHCS_00157053 | JJHCS_00035026 | JJHCS_00084222 | JJHCS_00159036 | JJHCS_00185411 |
| JJHCS_00026365 | JJHCS_00035029 | JJHCS_00084343 | JJHCS_00190562 | JJHCS_00194222 |
| JJHCS_00117129 | JJHCS_00035051 | JJHCS_00140608 | JJHCS_00190567 | JJHCS_00193711 |
| JJHCS_00212953 | JJHCS_00152049 | JJHCS_00001460 | JJHCS_00175320 | JJHCS_00193713 |
| JJHCS_00145653 | JJHCS_00035054 | JJHCS_00044277 | JJHCS_00170319 | JJHCS_00168147 |
| JJHCS_00212608 | JJHCS_00152084 | JJHCS_00118738 | JJHCS_00169115 | JJHCS_00160964 |
| JJHCS_00212858 | JJHCS_00151231 | JJHCS_00122792 | JJHCS_00169123 | JJHCS_00161650 |
| JJHCS_00101641 | JJHCS_00035057 | JJHCS_00200612 | JJHCS_00183846 | JJHCS_00197576 |
| JJHCS_00122740 | JJHCS_00217095 | JJHCS_00001239 | JJHCS_00174248 | JJHCS_00146146 |
| JJHCS_00212894 | JJHCS_00035060 | JJHCS_00037103 | JJHCS_00224351 | JJHCS_00182529 |
| JJHCS_00118671 | JJHCS_00122834 | JJHCS_00122559 | JJHCS_00183108 | JJHCS_00200592 |
| JJHCS_00174318 | | | | |

iii

# Exhibit 43

# Sills Cummis & Gross

### A Professional Corporation

**The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102-5400
Tel: 973-643-7000
Fax: 973-643-6500**

Jeffrey J. Greenbaum
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

September 9, 2024

**By Email**

Hon. Freda L. Wolfson
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL
UNDER THE DISCOVERY CONFIDENTIALITY ORDER**

Re:    **Opposition to SaveOnSP's August 30, 2024 Motion to Compel**
    *__Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC__,*
    __Civil Action No. 22-2632 (JKS) (CLW)__

Dear Judge Wolfson:

On behalf of JJHCS, we write to oppose SaveOnSP's August 30, 2024 letter motion to compel JJHCS to produce documents elicited by three search terms related to JJHCS's vendors TrialCard and RISRx. As explained herein, JJHCS has agreed to an enormous number of SaveOnSP's search term demands, or has accepted them with only limited modifications. And JJHCS has repeatedly offered compromises involving reasonable search terms that satisfy SaveOnSP's legitimate discovery needs. But the three terms SaveOnSP demands in this motion are hugely overbroad and unduly burdensome, violate the Court's previous guidance, and contradict SaveOnSP's positions as to what search terms it will run on its own documents. Discovery is not a one-way street, nor is it a mechanism to penalize a plaintiff for having brought

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 2

a lawsuit. SaveOnSP cannot shun reasonable compromises by JJHCS and insist on search terms of the kind that SaveOnSP has itself repeatedly refused to run. The Court should stand by its previous search term guidance and deny SaveOnSP's motion to compel the use of these flawed terms.

## DISCUSSION

SaveOnSP's opening brief makes numerous extraneous claims about JJHCS's mitigation efforts. Most are false.[1] But the truth is fast coming into focus through newly produced documents from SaveOnSP's and ESI's files: manufacturers could **never** effectively mitigate damages because SaveOnSP and ESI had a sophisticated and highly resourced operation dedicated to evading any manufacturer attempts to detect or thwart their scheme.[2] The instant motion, however, does not require the Court to address the propriety of mitigation-related discovery writ large. Accordingly, JJHCS does not endeavor here to correct every factual misstatement in SaveOnSP's

---

[1] For example, SaveOnSP misleadingly claims that the "only purported mitigation action that J&J has asserted that it took was attempts to identify patients on SaveOn-advised plans," but it cites a transcript colloquy describing the pled allegations about JJHCS's special damages, not mitigation efforts in general. Mot. at 2.

[2] *See, e.g.,* 

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 3

brief—that record will be presented at trial. On this motion, the Court need only address whether the additional, specific search terms at issue are proportionate and reasonably tailored. They are not.

According to SaveOnSP, the disputed search terms ostensibly relate to requests for production that SaveOnSP served almost a year ago, in October 2023. *See* Ex. 6 (Apr. 4, 2024 Ltr. from E. Snow to J. Long) at 5; Ex. 7 (SaveOnSP's Fourth Set of Requests for Production) at 10-11. The disputed search terms go far beyond the requests for production that allegedly support them. Nevertheless, over the past many months—going back to February—JJHCS agreed to search for even documents of marginal relevance to try and avoid burdening the Court with further discovery disputes.[3] And JJHCS has repeatedly offered to work with SaveOnSP to resolve remaining disputes by crafting search terms that meet SaveOnSP's legitimate discovery needs without unduly burdening JJHCS.

But despite JJHCS's productions and efforts at compromise, SaveOnSP now demands three more terms that are unduly burdensome and inconsistent with the Court's guidance on search term construction. Two of the three relate to TrialCard, and the third relates to RISRx (a vendor

---

[3] For instance, when SaveOnSP demanded that JJHCS run several search terms related to JJHCS vendors Archbow and Avalere, *see* Ex. 6 (Apr. 4, 2024 Ltr. from E. Snow to J. Long) at 3, JJHCS assented to SaveOnSP's demand, *see* Ex. 8 (Apr. 26, 2024 Ltr. from I. Eppler to E. Snow) at 2. The parties also reached agreement on a search term intended to satisfy SaveOnSP's demand for documents related to JJHCS's work with the vendor IQVIA. *See* SaveOnSP Ex. 21 (Aug. 1, 2024 Ltr. from I. Eppler to H. Miles) at 3. JJHCS reviewed 10,307 documents (inclusive of families) captured by that term. JJHCS also negotiated in good faith with SaveOnSP to establish workable RISRx search terms, repeatedly offering to run variations of search terms containing the phrase "RISRx or RIS." Ex. 8 (Apr. 26, 2024 Ltr. from I. Eppler to E. Snow) at 4; Ex. 9 (Jul. 3, 2024 Ltr. from J. Long to E. Snow) at 2; SaveOnSP Ex. 21 (Aug. 1, 2024 Ltr. from I. Eppler to E. Snow). The parties reached agreement on one term containing the phrase "RISRx OR RIS," as described further below.

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 4

that offers an algorithm that can be used to identify accumulator and maximizer patients based on

claims data).  As explained below, JJHCS should not be compelled to run any of the disputed

searches.

**I.    TrialCard Terms**

SaveOnSP seeks to impose the following TrialCard-related search terms:

- (TrialCard w/25 identif*) AND (accumulat* OR maximiz* OR CAPa OR CAPm OR "adjustment program" OR EHB OR NEHB)

- TrialCard w/40 (accumulator* OR maximizer* OR CAPm OR CAPa OR "adjustment program")

The former elicits 3,586 documents, and the latter elicits 11,304 documents (both inclusive of

families).  *See* SaveOnSP Ex. 21 (Aug. 1, 2024 Ltr. from I. Eppler to H. Miles) at 2.

The first problem with SaveOnSP's TrialCard search terms is that they are inconsistent

with the requests that allegedly support them.  SaveOnSP has claimed that these search terms are

necessary to fulfill Request Nos. 58 and 59.  *See* Ex. 6 (Apr. 4, 2024 Ltr. from E. Snow to J. Long)

at 5.  Those requests seek documents related to Benefits Investigations:

58.    All documents or communications related to Benefits Investigations undertaken by JJHCS or any JJHCS Hub Entity that identified or attempted to identify whether a Person enrolled in CarePath was or could be a member of a health plan advised by SaveOnSP.

59.    To the extent not covered by the previous Request, all documents or communications related to Benefits Investigations undertaken by JJHCS or any JJHCS Hub Entity that identified or attempted to identify whether a Person enrolled in CarePath was or could be a member of a Maximizer or Accumulator health plan.

Ex. 7 (SaveOnSP's Fourth Set of Requests for Production) at 10-11

Although these requests cover only the discrete issue of Benefits Investigations, SaveOnSP

has demanded search terms that will capture a wide range of documents completely unrelated to

Benefits Investigations.   Indeed, the search strings do not even include terms like "Benefits

4

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 5

Investigation" or "BI." The Court should reject SaveOnSP's attempt to shoehorn these overly broad search terms into far narrower requests for production.

These search terms are also an attempted end-run around this Court's previous ruling on CAP search terms. The Court rejected SaveOnSP's efforts to compel JJHCS to run an exceedingly broad search term—"CAPa OR CAPm OR 'adjustment program'"—and ruled that the CAP search string must include both one of those terms **and** a reference to accumulators and maximizers. Apr. 10, 2024 Order ¶ 2. The Court's Order was itself an expansion of permissible discovery—Judge Waldor had previously ruled that searches involving the CAP search string must include both one of those terms **and** a reference to SaveOnSP specifically (not just accumulators or maximizers generally). Dkt. No. 173 at 2-3. But SaveOnSP now seeks to ignore even the Court's prior order. Both searches in SaveOnSP's latest motion demands violate the Court's ruling—they would pick up documents hitting on CAPm **or** CAPa **or** "adjustment program" **or** accumulator **or** maximizer. And they are not saved by the insertion of the word "TrialCard." Due to its role, "TrialCard" likely appears in many documents containing those words or phrases "CAPm," "CAPa," or "adjustment program," and so practically speaking it is no meaningful limitation at all. For there to be any progress in discovery, it is essential that SaveOnSP not be rewarded for simply ignoring Court-ordered limitations on discovery or gain ground every time it insists on revising prior rulings.

Aside from being inconsistent with the Requests for Production that ostensibly support them and the Court's prior ruling, SaveOnSP's proposed searches are unnecessary and unduly burdensome. First, as the Court knows, documents from TrialCard are already being produced pursuant to subpoenas to TrialCard as well as document requests to JJHCS. TrialCard has produced nearly 10,000 pages in response to these requests, many of which focus on the same

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 6

mitigation issues in focus here, and SaveOnSP continues to pursue additional documents in the custody of TrialCard. Second, SaveOnSP has demanded that JJHCS run several search terms designed to capture documents related to the CAP program and JJHCS has done so, reviewing over 54,000 documents (inclusive of families) hitting on terms including the words and phrases "CAPm," "CAPa," or "adjustment program." SaveOnSP Ex. 21 (Aug. 1, 2024 Ltr. from I. Eppler to H. Miles) at 2. Third, JJHCS has also agreed to several search terms related to other vendors that SaveOnSP claims are involved in JJHCS's mitigation efforts, and has reviewed thousands of documents responsive to those terms. *See supra* n.3. Finally, SaveOnSP's proposed TrialCard searches cover an overly broad time period—going back to 2016 instead of late 2021, ███. *See* SaveOnSP Ex. 4 (TrialCard_00005044). Simply put, SaveOnSP has already taken endless discovery about CAPm, CAPa, TrialCard, and every other mitigation-related topic, and these overbroad and unduly burdensome search terms are superfluous.

In these circumstances, the review of over 13,000 additional TrialCard-related documents would pose an undue burden on JJHCS. SaveOnSP claims that this volume is "hardly burdensome," but when the shoe is on the other foot, SaveOnSP has routinely complained that a far smaller number of documents is too many. *See, e.g.*, Dkt. No. 358-8 (objecting to a search term eliciting an "additional 1,774 unique documents" as unduly burdensome); Dkt. No. 358-10 (claiming that a term "requir[ing] SaveOn to review 3,627 additional documents" "would . . . be unduly burdensome"). And SaveOnSP's demand for over 13,000 documents cannot be considered in isolation. It is part of an onslaught of highly burdensome discovery demands from SaveOnSP, including SaveOnSP's recent demand that JJHCS nearly double its custodian list by adding thirty

6

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 7

additional custodians.  Given that SaveOnSP's recent demands are complex and ever-changing,
JJHCS has not yet been able to assess the total burden associated with them.  But early indications
suggest that it will be overwhelming.  For example, only days before SaveOnSP filed the instant
motion, it moved to compel JJHCS to add Joe Incelli and Norhaan Khalil as custodians with a
lengthy list of broad search terms that would require JJHCS to review over 37,000 additional
documents.  So, while review of the 13,000 more documents implicated by this latest motion would
be unduly burdensome for JJHCS in and of itself, the cumulative effect of this additional review
*and* all of SaveOnSP's other demands would be even more so.

In arguing otherwise, SaveOnSP resorts to repeatedly mischaracterizing several JJHCS
documents.  None of these justify SaveOnSP's demands for ever-more discovery on these issues.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████  ████████████████████  █████████████

███████████████████████████████████████████

███████████████.  The document also significantly predates the period in which
TrialCard "work[ed] to design and implement the CAP program and to identify patients on
accumulators, maximizers, and plans advised by SaveOn," SaveOnSP's purported topic of interest.
Mot. at 3-4.  Regardless, it was captured by existing search parameters and has already been
produced.

███████████████████████████████████████

███████████████████████████████████████████

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 8



Even so, JJHCS repeatedly sought compromise with SaveOnSP by offering to run the following narrower TrialCard-specific term:

- (TrialCard w/25 identif*) /25 (accumulat* OR maximiz* OR CAPa OR CAPm OR "adjustment program" OR EHB OR NEHB)

*See* Ex. 10 (Jul. 12, 2024 Ltr. from I. Eppler to H. Miles) at 2-3; SaveOnSP Ex. 21 (Aug. 1, 2024 Ltr. from I. Eppler to H. Miles) at 2-3.  This term elicits 1,250 documents and is aligned with SaveOnSP's stated justification for TrialCard-specific search terms and the Court's instructions. SaveOnSP claims in its motion that "needs documents related to TrialCard's . . . efforts to identify patients on SaveOn-advised plans, accumulators, or maximizers."  Mot. at 3.  JJHCS's proposed term will capture documents that include the word "TrialCard" in proximity to variants of the words "identify," "accumulator," and "maximizer," giving SaveOnSP the documents it purports to need.  It also includes meaningful limits on the "CAPa OR CAPm OR 'adjustment program'" search string, as the Court required in its April 10, 2024 Order.

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 9

JJHCS has been clear: it is willing to produce documents elicited by a TrialCard-related term in the interests of finally ending these disputes. But SaveOnSP's demand that it review over 13,000 documents is unduly burdensome in light of other TrialCard-related discovery, the Court's prior rulings, and SaveOnSP's own positions on the burdens associated with document review.

## II. RISRx Term

SaveOnSP has moved to compel JJHCS to produce documents elicited by the following RISRx-related search term:

- ("RIS" OR "RISRx") w/50 (accumulator* OR maximizer* OR CAPm OR CAPa OR "adjustment program")

SaveOnSP insists that JJHCS run this search for the period from April 1, 2016 through November 7, 2023, Mot. at 6, even though it acknowledges in its motion that JJHCS did not commence work with RISRx on relevant issues ███████. Mot. at 2 (citing SaveOnSP Ex. 6 (JJHCS_00001200)).

This search term is improper and unnecessary. As is the case with its TrialCard search term, SaveOnSP attempts to justify this broad search term by reference to two requests for production involving Benefits Investigations, even though the search term does not even reference Benefits Investigations. Indeed, JJHCS offered to run two additional searches that would capture any work by RISRx relating to individual Benefits Investigations. (SaveOnSP did not bother to even respond to that offer and has ignored it for months.) Ex. 9 (Jul. 3, 2024 Ltr. from J. Long to E. Snow) at 2.[4] In any event, JJHCS has already reviewed tens of thousands of documents elicited

---

[4] Those two additional RISRx-specific search terms that JJHCS offered to run were:

- (RIS OR RISRx) AND ((Benefit* w/5 Investigation*) OR B.I. OR "BI's" OR BIs OR "B.I.'s")

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 10

by a series of broad search terms related to the CAP program as noted above, which would encompass documents involving RISRx. JJHCS also already ran an exceedingly broad search that would capture efforts by RISRx to identify anyone at all: "(RIS OR RISRx) /50 (identif*)." Ex. 11 (June 4, 2024 Ltr. from H. Miles to I. Eppler) at 2. JJHCS completed that search, reviewed the thousands of results, and produced all relevant and responsive documents. JJHCS has also made non-custodial productions of all the relevant RISRx reports provided to JJHCS related to attempts to identify patients on maximizers. Ex. 12 (Aug. 6, 2024 Ltr. from J. Long to M. Nussbaum). In view of the extensive work JJHCS has already done and offered to do, SaveOnSP has no basis to demand more.

SaveOnSP's motion to compel JJHCS to run *this* RISRx-specific search term should also be denied because it again is inconsistent with another of the Court's rulings. Specifically, in April 2024, JJHCS asked SaveOnSP to review 3,627 documents elicited by a search term containing a "w/50" proximity limiter. Dkt. No. 283 at 2. That search term was narrowly tailored, and JJHCS even agreed to substantially restrict the date range of the search to 2022–23. Dkt. No. 279 at 3. SaveOnSP refused to run the search, even though it had itself demanded that JJHCS run searches involving a w/50 proximity limiter, including just weeks earlier the very broad RISRx specific term described above. JJHCS sought relief from the Court, and when SaveOnSP opposed JJHCS's request, it argued that JJHCS's proposed term was overly broad because of its "w/50" proximity limiter. Dkt. No. 358-10 at 3. The Court agreed with SaveOnSP that "w/50 may be overly broad." Dkt. No. 283 at 3. In accordance with that ruling, JJHCS declined to run SaveOnSP's proposed

---

- (RIS OR RISRx) AND "BI" (case sensitive)

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 11

RISRx term with w/50 limiters, but repeatedly emphasized that it would be willing to run an

identical term with a narrower proximity limiter:  ("RIS" OR "RISRx") w/25 (accumulator* OR

maximizer* OR CAPm OR CAPa OR "adjustment program").  Ex. 10 (Jul. 12, 2024 Ltr. from I.

Eppler to H. Miles) at 2; SaveOnSP Ex. 21 (Aug. 1, 2024 Ltr. from I. Eppler to H. Miles) at 1-2.

SaveOnSP has no reasonable arguments for why JJHCS's counterproposal is insufficient.

And while it attempts to distinguish between the term it now seeks and the term that the Court

rejected as overly broad, the attempt does not withstand scrutiny.  SaveOnSP claims that the term

at issue in the May 9, 2024 Order was uniquely overbroad because the earlier term "featured the

commonly used word 'adapt,' so a 'w/50' connector might have picked up irrelevant documents."

Mot. at 7.  That is an oversimplification:  the earlier term sought documents featuring the word

"Adapt"—because that is the brand name *SaveOnSP* chose for one of its programs—near

uncommonly used health insurance industry terms related to that product.  Dkt. No. 283 at 2 n.2.

And unlike the search SaveOnSP seeks now, JJHCS's proposal was limited to a narrow, crucial

timeframe (2022–23).  But the Court still rejected it as overly broad.  *Id.* at 3.

SaveOnSP also contends that JJHCS has "insisted that SaveOn use a 'w/50' connector in

various searches" even after the Court's ruling.  Mot. at 7 n.1.  That is misleading.  Before the

Court issued its guidance on the proper use of proximity limiters, JJHCS requested "w/50"

proximity limiters in some instances in which they were appropriate due to the nature of the very

specific terms or custodians at issue, and where SaveOnSP has not objected to those agreed-upon

"w/50" proximity limiters in the wake of the Court's guidance JJHCS has not unilaterally sought

to revisit them.  SaveOnSP Ex. 21 (Aug. 1, 2024 Ltr. from I. Eppler to H. Miles) at 1 n.1.  And in

others, JJHCS has proposed multi-part terms that contain both "w/50" proximity limiters *and*

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 12

additional, narrower proximity limiters. *Id*. That is a far cry from what SaveOnSP has done here: successfully litigated a limit on overbroad search terms for itself, but refused to accept the Court's guidance as generally applicable.

JJHCS has reviewed and produced many documents regarding the CAP program, including many documents regarding RISRx's role in the CAP program. When SaveOnSP nonetheless demanded more, JJHCS proposed a reasonable compromise: it agreed to run SaveOnSP's proposed RISRx search term language with a narrowed proximity limiter rather than the "w/50" limiter that the Court has deemed overly broad. But instead of accepting JJHCS's invitation to compromise, SaveOnSP moved to compel, seeking to hold JJHCS to a standard regarding proximity limiters that is inconsistent with both the Court's guidance and SaveOnSP's own position. These tactics are counterproductive, vexatious, and should not be rewarded.

## CONCLUSION

For the foregoing reasons, SaveOnSP's August 30, 2024 motion should be denied.

Respectfully submitted,

s/ *Jeffrey J. Greenbaum*
JEFFREY J. GREENBAUM

cc:     Counsel of record for SaveOnSP