# Sills Cummis & Gross

A Professional Corporation

**The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102-5400
Tel: 973-643-7000
Fax: 973-643-6500**

Jeffrey J. Greenbaum
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

May 31, 2024

**By Email**

Hon. Freda L. Wolfson
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL
UNDER THE DISCOVERY CONFIDENTIALITY ORDER**

Re:    **Opposition to SaveOnSP's May 21, 2024 Motion to Compel
*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
Civil Action No. 22-2632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), we write in opposition to the May 21, 2024 letter-motion of Defendant Save On SP, LLC ("SaveOnSP") to compel the production of documents regarding accumulators and maximizers from "Janssen Market Research" and to identify related custodians. JJHCS is already producing "market research" documents that are relevant to this litigation from the custodians who would possess such material. And JJHCS is conducting supplemental searches to produce even market research of highly questionable relevance that does not even mention SaveOnSP. In other words, to the extent that there is discoverable information regarding market research, SaveOnSP already has or

Honorable Freda L. Wolfson, U.S.D.J.
May 31, 2024
Page 2

will soon receive that information, as discussed in greater detail below. Nothing more is reasonable or proportionate.

In fact, the entire premise of SaveOnSP's motion is mistaken. SaveOnSP posits the existence of an internal "Janssen Market Research" entity that was "deeply involved in core matters at issue in this case." Mot. at 11. SaveOnSP is incorrect. No such unit exists. In fact, any market research regarding accumulators or maximizers—the subject of SaveOnSP's relevant document request—would have been conducted by third party entities and their work-product shared with JJHCS's existing custodians, meaning that there are no new "Janssen Market Research" custodians for JJHCS to identify. Similarly, while SaveOnSP devotes the bulk of its motion to cataloguing the many exhibits it has appended, most of these exhibits simply contain stray references to "market research," often in the context of such plainly irrelevant topics as drug branding or the design of CarePath's online portal. In the few instances where SaveOnSP *does* cite to market research documents mentioning accumulators or maximizers, it is apparent from the context that JJHCS has produced those documents already.

Once these distortions are corrected, there is no basis for the Court to compel any further discovery from JJHCS. Insofar as there is market research that is relevant to this case, JJHCS has already produced (or will soon produce) those documents. Such documents are most likely found among the custodians that JJHCS has already identified and would be captured by the search terms that JJHCS has already agreed to run, including to capture communications with JJHCS vendors or consultants who prepared the research in question. And as set forth below, JJHCS is doing even more to produce even market research that does not mention SaveOnSP. To the extent SaveOnSP seeks more, its demands should be denied as unreasonable and disproportionate.

2

Honorable Freda L. Wolfson, U.S.D.J.
May 31, 2024
Page 3

## DISCUSSION

SaveOnSP's motion, as with other recent motions, is unclear as to what specific document requests it seeks to compel.  But to the extent the Court nonetheless reaches the merits, it should deny SaveOnSP's motion for three reasons.  *First*, SaveOnSP simply is wrong when it posits an internal market research entity at J&J dedicated to accumulators and maximizers, for which additional custodians need to be identified.  *Second*, to the limited extent that market research documents may touch on any issues in this case, JJHCS has agreed to produce (or actually has produced) such documents.  Further, to help moot this dispute, JJHCS is investigating the existence of any additional market research of even tangential relevance about accumulators and maximizers that does not mention SaveOnSP from noncustodial sources.  To the extent such research exists, JJHC will produce it too.  *Third*, to the extent SaveOnSP claims on reply to nonetheless need more documents, that demand should be denied.  SaveOnSP has not identified any tenable theory for the relevance of any market research documents beyond what JJHCS has already produced or agreed to produce.

### I.    SaveOnSP Has Not Tethered Its Demands to Relevant Document Requests

SaveOnSP obfuscates the discovery request that serves as the basis of its motion.  SaveOnSP waves its hands and mentions many different document requests in passing while suggesting they are all relevant to its motion.[1]  But SaveOnSP's arguments are unmoored from particular requests for production.  This is not a new issue, and it is one Your Honor noted when ruling on another recent SaveOnSP motion.  *See* May 23, 2024 Tr. at 57:8–13 (The Special Master:

---

[1] *See, e.g.*, Mot. at 1, 7, 9, 10–11.

Honorable Freda L. Wolfson, U.S.D.J.
May 31, 2024
Page 4

"So let's get to what we have in the RFPs that are actually in place. First of all, the motion to compel is with regard to the request number 8, numbers 70 and 79. I have to tell you number 8 doesn't seem to have anything to do with Best Price, so I'm not sure why that's falling under this rubric."); *id.* at 74:12–18 (reviewing SaveOnSP's RFP and noting that it did not request the documents sought in the motion).

SaveOnSP's long lists of document requests do include one that appears relevant to the substance of its motion: RFP No. 73, which is also the only request that SaveOnSP has served regarding "Janssen Market Research." This document request sought "[a]ll Documents and Communications by or for Janssen market research regarding Accumulators or Maximizers, including without limitation discussions with Archbow," a third party that conducted certain analyses of copay programs on behalf of JJHCS. *See* SaveOnSP Ex. 34, RFP No. 73. This document request did not define "Janssen market research" and SaveOnSP's broad and nebulous definition on this motion (accompanied by new capitalizations) does little to clarify things. Regardless, as discussed below there is no "Janssen Market Research" entity that conducts internal research regarding accumulators or maximizers, and JJHCS has already produced documents about "discussions with Archbow."

SaveOnSP was obliged to clearly set forth the document requests it seeks to compel and to tether its arguments to particular requests. It has failed to do so, and it should not be heard to do so for the first time on reply. SaveOnSP's motion can be denied on this basis alone. *See Bautista v. Carey*, No. 1:21-CV-00126, 2023 WL 157991, at *4 n.1 (M.D. Pa. Jan. 11, 2023) (motion to compel was "substantively deficient" and thus denied where party "d[id] not identify … which prior discovery request, if any, contained" the documents sought).

Honorable Freda L. Wolfson, U.S.D.J.
May 31, 2024
Page 5

**II.    There Is No Internal Market Research Entity Conducting Research and Analysis Regarding Accumulators and Maximizers for JJHCS**

To the extent the Court reaches the merits, SaveOnSP fares no better.  The foundation of SaveOnSP's motion is that J&J conducts its "own internal market research" regarding accumulators and maximizers through a particular unit.  Mot. at 3 n.1.  That is not true, and SaveOnSP cites no evidence to the contrary.  Indeed, the nearly 40 exhibits to SaveOnSP's motion reflect research that was led and conducted by third parties.  *See, e.g.*, SaveOnSP Ex. 17 at JJHCS_00219172 (describing ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████); SaveOnSP Ex. 18 at JJHCS_00200029, -32 (referring to ███████████████████).[2]  Such third-party research is shared with and used by one or more of JJHCS's custodians, because those are the people responsible for CarePath or for related projects and programs (like CAP) for which such research was conducted.

Moreover, most of SaveOnSP's exhibits concern market research in contexts that simply have nothing to do with the subject of SaveOnSP's RFP—or, indeed, with any issue in this case, such as ██████████████████████ (SaveOnSP Ex. 2); ███████████████████ (SaveOnSP Exs. 10, 11, 12); ████████████████████████████████████████████████████████ ██████████████████████████████ (SaveOnSP Exs. 7, 9); ██████████████████████████████████████████ █████████████████ (SaveOnSP Exs. 20, 32 (similar)); ████████████████████████████████ (SaveOnSP Exs. 3, 15).  Meanwhile, SaveOnSP mischaracterizes several other exhibits that *do*

---

[2] This is true for both the few exhibits that actually refer to market research about accumulators and maximizers, and for those that refer to market research regarding a wide array of other subjects. *See, e.g.*, SaveOnSP Ex. 15 (████████████████████████████████████████████).

Honorable Freda L. Wolfson, U.S.D.J.
May 31, 2024
Page 6

concern accumulators and maximizers by asserting that they reflect the influence or involvement of a "Janssen Market Research" entity, when nothing about the document suggests that this is so. *See, e.g.*, SaveOnSP Ex. 30 (no mention of market research); SaveOnSP Ex. 37 (no mention of market research); *see also* SaveOnSP Ex. 32 at JJHCS_00142681.0017 (discussing only ████ ████████████████). Accordingly, there is no basis to compel JJHCS to identify any new custodians relating to a purported "Janssen Market Research" entity.

## III. JJHCS Has Already Produced or Agreed to Produce any Potentially Relevant Documents that SaveOnSP Seeks

While market research regarding accumulators and maximizers is conducted by third parties, not a "Janssen Market Research" entity, there *are* individuals within JJHCS' control who are particularly likely to possess the products of such research: the custodians whom JJHCS has already identified.

JJHCS's custodians—more than thirty of them—are the individuals responsible for, among other things, administering CarePath, developing JJHCS's responses to accumulator and maximizer programs (including the reduction of copay assistance for certain drugs and the development of "CAP" programs), drafting CarePath's terms and conditions, and funding studies, reports, and other publications regarding SaveOnSP, accumulators, or maximizers. These custodians span the realm of personnel who would receive and make use of any relevant market research. Accordingly, SaveOnSP already has any market research conducted regarding SaveOnSP (and documents and communications regarding the same) because JJHCS ran variations of the term "SaveOn" across most of its custodians' files and agreed to produce nonprivileged hits on those terms.

Honorable Freda L. Wolfson, U.S.D.J.
May 31, 2024
Page 7

Market research about SaveOnSP is the only category of market research that is squarely relevant here: research at J&J conducted on accumulators and maximizers more generally—including research regarding patient perceptions of such programs, on which SaveOnSP hinges much of its basis for relevance—is not about SaveOnSP, as discussed in greater detail below.  *See infra* Part IV.  Nevertheless, because JJHCS employed broad and comprehensive search terms, JJHCS also has produced market research that concerns accumulators and maximizers generally.  Indeed, JJHCS has closely reviewed the few places in SaveOnSP's motion where SaveOnSP actually identifies a reference to such market research and confirmed that JJHCS has already produced the corresponding analyses.

For example, SaveOnSP discusses several exhibits that refer to .  *See, e.g.*, Mot. at 4 (discussing SaveOnSP Exs. 19, 23, 24, & 27).  One of these exhibits is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* SaveOnSP Ex. 24 at JJHCS_00223690.  As the attachment of ▮▮▮▮▮▮ as an exhibit makes clear, it was identified in custodial data and produced to SaveOnSP.  JJHCS is aware of only one other piece of market research conducted on this subject, memorialized in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮h.  *See* Ex. 1 (JJHCS_00198244).  This research, which found that ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see id.* at slide 28, is the research to which SaveOnSP's Ex. 19 refers: ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exhibits 23 and 27 appear to refer to the same research.  Similarly, SaveOnSP cites several exhibits purportedly involving JJHCS's strategy for responding to accumulators and

Honorable Freda L. Wolfson, U.S.D.J.
May 31, 2024
Page 8

maximizers and the responses' effect on patients.  *See* SaveOnSP Exs. 19, 29, & 33.  The market

research underlying both SaveOnSP Exhibits 19 and 29 is ████████████████████████████

████████████████.  *Compare* Ex. 19 at JJHCS_00002700.0009 *with* Ex. 1 (JJHCS_ 00198244) at

slide 47 of 49 (same); Ex. 29 at JJHCS_00002710.0007 *with* Ex. 1 (JJHCS_ 00198244) at slide 45

of 49 (same).  SaveOnSP's Exhibit 33, meanwhile, refers only to hypothetical research.

Because it is likely that any market research regarding SaveOnSP, or even regarding

accumulators and maximizers more generally, would already have been captured by JJHCS's

custodians and search terms, there is no reason for JJHCS to conduct any additional searches.

Indeed, SaveOnSP has practically conceded as much.  In connection with its RFP No. 73,

SaveOnSP requested that JJHCS run a set of proposed search terms over custodians from "Janssen

Market Research" to capture any relevant market research documents.  *See* Ex. 2 (4/4/24 Ltr. from

E. Snow to J. Long) at 3.  As explained above, JJHCS's existing custodians are the ones likely to

possess such documents—but SaveOnSP's proposed search terms are very similar to the ones that

JJHCS has *already run* over those custodians.  In other words, JJHCS has already in substance

conducted the searches that SaveOnSP asks to be utilized.

Moreover, JJHCS previously agreed to implement *additional* search terms and produce

responsive documents relating to certain third parties who conducted market research regarding

accumulators or maximizers (each of whom SaveOnSP has separately subpoenaed).  SaveOnSP

acknowledges in its motion, for example, that JJHCS has "agreed to run search terms targeted at

relevant market research performed by … Archbow and Avalere," two such entities.  Mot. at 3

n.1.  And JJHCS presently is negotiating with SaveOnSP the parameters of searches relating to

another such entity, IQVIA.  *See* Ex. 3 (5/24/24 Ltr. from J. Long to E. Snow).

8

Honorable Freda L. Wolfson, U.S.D.J.
May 31, 2024
Page 9

SaveOnSP thus identifies no gap in JJHCS's custodians or search terms. Nevertheless, to help moot this motion, JJHCS is also investigating whether any additional, unproduced market research regarding accumulators and maximizers that does not mention SaveOnSP exists in the relevant repositories for such research. If it does, JJHCS will produce it to SaveOnSP. To the extent any such research exists and SaveOnSP seeks anything else relating to it after that, JJHCS will certainly confer with SaveOnSP further regarding such requests.

**IV. Anything Else Is Irrelevant**

Given the above, it appears to JJHCS that SaveOnSP's motion is moot. To the extent that SaveOnSP claims on reply to need any documents beyond what JJHCS has already produced or agreed that it will produce, however, such demands should be denied. Any such demands would be unreasonable and disproportionate in view of what JJHCS has already agreed to produce. And it is also noteworthy that SaveOnSP's claims for why it needs any document about market research in the first place are flimsy. Those claims certainly cannot support a demand for anything beyond what JJHCS has already agreed to produce.

For example, SaveOnSP first claims that such documents concern the "public harm" element of JJHCS's GBL claim. But JJHCS's theories of patient harm focus on SaveOnSP's specific scheme, such as SaveOnSP's engineering false denials of coverage to coerce patient enrollment in its program, falsely informing patients that they cannot receive copay assistance without SaveOnSP, and failing to disclose material information about SaveOnSP. Compl. ¶ 114. JJHCS has already produced any market research specific to SaveOnSP, so to the extent such research is relevant to patient harm SaveOnSP has it already. And while JJHCS has produced or will produce any other market research about accumulators and maximizers generally to help moot

9

Honorable Freda L. Wolfson, U.S.D.J.
May 31, 2024
Page 10

this motion, that research is not about SaveOnSP.[3]  JJHCS certainly should not be compelled to

produce "all documents" about such general research, to the extent it even exists, before SaveOnSP

has received any such research and the parties have conferred over anything else SaveOnSP might

need.

SaveOnSP also insists that additional market research documents may reveal that "J&J's

actions … not SaveOnSP's actions, could cause patients stress and confusion."  Mot. at 7.  But

again, RFP No. 73 does not seek documents about "J&J's actions"—it asks only about

"Accumulators and Maximizers."  And as a practical matter, SaveOnSP's conjecture makes little

sense.  Again, JJHCS has already produced any market research about SaveOnSP, and there are

no claims in this case against JJHCS, let alone claims premised on it somehow causing stress and

confusion by providing its patients with money to help them get access to medicine.  This argument

provides no basis for JJHCS to do more.

Next, SaveOnSP next insists that it is "entitled to documents in Janssen Market Research's

possession regarding J&J's drafting and interpretation of the [CarePath] T&Cs," and specifically

the "other offer" term. Mot. at 9–10.  This argument bears no resemblance to the document request

at issue.  Nor has SaveOnSP provided any evidence to suggest there was ever any market research

---

[3] JJHCS has produced certain such market research already, as discussed above, and it does not
show what SaveOnSP contends.  *See* Ex. 1 (JJHCS_00198244); *supra* Part III.  Specifically, while
SaveOnSP contends that those market research findings show ██████████████████████████
████████████████████████ *see* Mot. at 7, none of the documents cited by
SaveOnSP mention ████████████████████████.
*See, e.g.*, SaveOnSP Ex. 19 at JJHCS_00002700.0011.  Moreover, as Ex. 1 makes clear, ████████
████████████████████████████████████████████████████████
████████████████████████████████████.  *See id.* at slides 3, 27, 28 of 49.

Honorable Freda L. Wolfson, U.S.D.J.
May 31, 2024
Page 11

relevant to the "other offer" term at issue.[4]  But regardless, the "other offer" provision has been the subject of extensive other discovery requests—and JJHCS has thoroughly searched for and is producing documents about the meaning of this term in the context of those requests.

Finally, SaveOnSP wrongly argues that documents and communications from groups or teams performing market research on behalf of JJHCS are relevant to its mitigation defense because they may show that JJHCS "rejected some mitigation proposals because it believed patients would not like them."  Mot. at 11.  As described above, JJHCS has already agreed to produce market research documents that bear on strategies for responding to SaveOnSP or accumulators and maximizers, which moots this argument.  But it also bears noting that Your Honor has specifically rejected SaveOnSP's relevance argument not once, but twice.  As Your Honor has held, "[w]hat matters for purposes of liability and damages are not the changes that Plaintiff contemplated implementing, but actual changes that occurred."  ECF No. 192 at 19.  Your Honor also rejected SaveOnSP's motion to reconsider that decision, "reiterat[ing]" that SaveOnSP "does not require communications as to why Plaintiff or J&J did not make certain decisions or vice-versa; rather, it will need evidence as to actual changes that occurred."  ECF No. 264 at 5; *see id.* ("It matters not—for mitigation purposes—how Plaintiff came to those … decisions.").

---

[4] Two of the three exhibits to its motion that SaveOnSP invokes in connection with this argument have nothing to do with the "other offer" language at all.  Instead, they concern ██████████ ████████████████████████████████████████████████████████████████████████████.  *See* SaveOnSP Exs. 28, 29.  The third exhibit, SaveOnSP Ex. 32, does not contain the language that SaveOnSP attributes to it, and concerns the irrelevant subject of ████████████"

Honorable Freda L. Wolfson, U.S.D.J.
May 31, 2024
Page 12

SaveOnSP remains bound by these rulings, which are fatal to its mitigation theory of relevance,

and therefore has no basis for demanding more.

**CONCLUSION**

For the foregoing reasons, Your Honor should deny SaveOnSP's May 21, 2024 motion.

Respectfully submitted,

s/ *Jeffrey J. Greenbaum*
JEFFREY J. GREENBAUM

cc:     Counsel of record for SaveOnSP

12

# EXHIBIT 1
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 2

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Elizabeth Snow
Associate
212.390.9330
esnow@selendygay.com

April 4, 2024

**Via E-mail**

Julia Long
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jlong@pbwt.com

**Re:** ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,***
***LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear Julia,

We write regarding SaveOn's Requests Nos. 58-62, 68, 73, and 82, and in response to J&J's February 22 and February 28, 2024 Letters. Each Request concerns J&J's mitigation efforts, which are highly relevant. *See* Dkt. 192 at 14 (acknowledging the change in CarePath's Terms and Conditions is relevant to, among other defenses, mitigation); 29 (recognizing that J&J's response to accumulators, maximizers, and SaveOn is relevant because it concerns mitigation); Dkt. 85 at 20 (SaveOn's Sixth Affirmative Defense: Failure to Mitigate). SaveOn seeks documents regarding J&J's development and implementation of mitigation strategies.

**I.      Documents Regarding J&J's Development of Mitigation Strategies (RFP Nos. 68, 73, 82)**

Request 68 seeks all documents and communications between J&J and Archbow regarding CarePath, copay assistance, or provision of funds to patients enrolled in CarePath. Request 73 seeks all documents and communications by or for Janssen market research regarding accumulators or maximizers. Request 82 seeks all documents and communications between J&J and Avalere regarding CarePath and copay assistance programs.

Avalere, Archbow, and Janssen market research ███████████████████████████████████████████. *See* JJHCS_00182926 (noting that ██████████████████████████████████████). For example, ███████████,

Julia Long
April 4, 2024

. JJHCS_00170081.

e. JJHCS_00145576 at 6

); *id.* at 11 (

). *See* JJHCS_00157058.

JJHCS_0027773.

*See, e.g.,*
JJHCS_00002700 (                                                    ). And

. *See* ARCHBOW_000439.

. *See, e.g.*, JJHCS_00011144.

*First*, J&J objects that SaveOn denies that it is a maximizer or accumulator, but now seeks discovery on J&J's response to both. As Judge Wolfson explained, it is irrelevant whether SaveOn disclaimed being a maximizer or accumulator because J&J referred to SaveOn as one. Jan. 24, 2024 Hr'g at 131:11-24. Notably, in its Complaint, J&J alleges that SaveOn is a maximizer. Compl. ¶ 88; *see also* Proposed Am. Compl. ¶¶ 66, 103.) Discovery on J&J's strategy to response to accumulators and maximizers is thus relevant to how J&J responded to SaveOn.

*Second*, J&J objects that Archbow's and Avalere's work was related to the 2023 Best Price Final Rule and so is irrelevant because the Rule was never effective. Setting aside that Rule (which SaveOn maintains is relevant), both consultants

*See, e.g.*, JJHCS_00145576.

. *See*
JJHCS_00170081 (

).

. JJHCS_00191982;
*see* JJHCS_00191981 (                                                    ).
Even if some of Archbow and Avalere's work was in response to the Rule and even were J&J's response to that Rule irrelevant (it is not), that would not immunize those consultants' relevant work on other subjects from discovery.

Please run the following search terms for the relevant time period over the custodial files of the following custodians, each of whom appears in an Archbow or Avalere document: Jeremy Mann, Heith Jeffcoat, Lauren Pennington, Adrienne Minecci, Silviya McCool, John Paul Franz, Lindsey Anderson, Alison Barklage, Spilios Asimakopoulos, Lynn Hall, Nidhi Saxena, Katie Mazuk, Jasmeet Singh, Debbie Kenworthy, Silas Martin, L.D. Platt, Daphne Longbothum, Hattie McKelvey, Heather Schoenly, John King, John Hoffman, and William Robinson:

Julia Long
April 4, 2024

- Archbow w/50 (accumulator* OR maximizer* OR mitigat* OR "NEHB" OR (variable /5 "EHB") OR "CAPa" OR "CAPm" OR "adjustment program")

- Archbow w/50 "other offer"

- Avalere w/50 (accumulator* OR maximizer* OR mitigat* OR "NEHB" OR (variable /5 "EHB") OR "CAPa" OR "CAPm" OR "adjustment program")

- Avalere w/50 "other offer"

Please also identify individuals who were involved in relevant work in the Janssen market research group, add them as custodians, and run the following search terms over their documents for the relevant time period:[1]

- (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate)

- ("essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*) w/50 (accumulat* OR maximiz* OR "CAPm" OR "CAPa" OR "adjustment program")

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo or Acredo) w/50 (accumulat* OR maximiz*)

- "other offer" w/5 (accumulator* OR maximizer* OR "health plan*" OR insur*)

- "research" w/20 (accumulator* OR maximizer*)

- "SaveOn" (*case sensitive*)

- "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP

---

[1] These search terms are a slightly refined version of the Exhibit 1 search terms SaveOn requested that J&J run in its January 26 and February 15, 2024 Letters.

- ("CAPa" OR "CAPm" OR "adjustment program") AND (accumulator* OR maximizer*)

## II.  Documents Regarding J&J's Implementation of Mitigation Strategies (RFP Nos. 58-62)

Requests 58 and 59 seek all documents and communications regarding Benefits Investigations undertaken by J&J or one of its vendors that identified or attempted to identify whether a patient was a member of an accumulator, maximizer, or SaveOn-advised plan.

In its Interrogatory responses, J&J identified TrialCard and RIS Rx as the vendors which identified patients on SaveOn advised plans. Jan. 31, 2024 Suppl. Rog Resps. at 4-6. Documents confirm that ███████████████████ ███ ███████████████.   TRIALCARD_00008931; JJHCS_00185180.

J&J's vendors have asserted that Benefits Investigations are the only or primary way that they attempted to identify patients on health plans advised by SaveOn. *See, e.g.*, Mar. 22, 2024 Ltr. from S. Arrow to H. Miles, at 2 ("Based on our reasonable investigation to date, the benefits investigations process was the only systematic method used by TrialCard on behalf of JJHCS to identify whether patients are affiliated with a copay accumulator, maximizer, or SaveOnSP."). If J&J identified a patient as on mitigation and accumulator, it could have taken mitigation measures, even if it did not confirm the patient was on SaveOn specifically.

SaveOn understands J&J's primary objection to be that SaveOn sought documents barred by the Court's February 6, 2024 Order. *See* Feb. 16, 2024 Ltr. from J. Long to H. Miles, at 1–2. Not so. Judge Wolfson ordered J&J to search for and produce documents reflecting the company's enforcement instructions and policy, during the full discovery time frame (April 2016-November 2023), concerning eligibility criteria set forth in the provision: "may not be used with any other coupon, discount, prescription savings card, free trial, or other offer." Dkt. 192 at 13. Judge Wolfson agreed with J&J that "it would be burdensome to search and produce records of each individual patient's call history," Dkt. 192 at 12-13, and SaveOn accordingly does not seek all such call records. SaveOn rather seeks documents "sufficient to show" the funding of enforcement efforts, the engagement of vendors to identify patients, instructions given to vendors regarding enforcement, and the steps vendors took after identifying a patient as on a SaveOn-advised plan, accumulator, or maximizer. This is perfectly consistent with Judge Wolfson's order that J&J produce "documents reflecting [J&J's] enforcement instructions and policy," not just the instructions and policies themselves. *Id.*

While reserving rights to seek additional documents for these Requests, we ask you to prioritize the following narrowed categories of documents:

4

- Documents sufficient to show the budget given to TrialCard and RIS Rx, including but not limited to line items showing the costs associated with attempts to identify patients on plans advised by SaveOn;

- All documents and communications about J&J's engagement of Trial-Card and RIS Rx to identify or attempt to identify patients on SaveOn-advised plans, accumulators, and maximizers;

- J&J's instructions to its vendors, including but not limited to TrialCard and RIS Rx, about enforcement of the eligibility criteria in the CarePath T&Cs, and communications and documents regarding the content or priorities of those enforcement instructions;

- All documents and communications regarding what TrialCard and RIS Rx did for each patient they identified as on a maximizer, accumulator, or SaveOn-advised plan.

To identify documents in these categories, please run the following search terms over the custodial files of the following individuals: Jeremy Mann, Heith Jeffcoat, Lauren Pennington, Adrienne Minecci, Silviya McCool, John Paul Franz, Lindsey Anderson, Alison Barklage, Spilios Asimakopoulos, Lynn Hall, Nidhi Saxena, Katie Mazuk, Jasmeet Singh, Silas Martin, L.D. Platt, Daphne Long-bothum, Hattie McKelvey, Heather Schoenly, John King, William Robinson, Scott White, Blasine Penkowski, Alison Barklage Quinton Kinne, William Shontz (each of whom appears on RIS Rx and TrialCard-related documents) from January 1, 2021 through November 7, 2023:

- ("RIS" OR "RISRx" OR "TrialCard") AND (accumulator* OR maximizer* OR "CAPm" OR "CAPa" OR "adjustment program")

- ("RIS" OR "RISRx" OR "TrialCard") AND (budget* OR identif*)

- ("RIS" OR "RISRx") AND ((Benefit* w/5 Investigation*) OR "B.I." OR "BI's" OR "BIs" OR "B.I.'s")[2]

- ("RIS" OR "RISRx") AND "BI" (*case sensitive*)

SaveOn also seeks to understand whether J&J used methods other than Benefits Investigations to identify or attempt to identify CarePath patients on accumulators, maximizers, or plans advised by SaveOn. As you know, SaveOn sought this information from TrialCard as the administrator of CarePath and was told that

---

[2] SaveOn understands that while TrialCard may have completed Benefits Investigations for other purposes for J&J, RIS Rx only completed Benefits Investigations to identify individuals on accumulators, maximizers, and SaveOn-advised plans.

"to the extent JJHCS undertook such methods, JJHCS is the proper source for such discovery." Mar. 22, 2024 Ltr. from S. Arrow to H. Miles, at 4. For the avoidance of doubt, in addition to documents regarding Benefits Investigations, SaveOn seeks documents regarding any other method that J&J used, attempted to use, or considered using, to identify CarePath patients on accumulators, maximizers, or plans advised by SaveOn. From the documents produced thus far, SaveOn believes that J&J ████████████████████████████████████████████. *See, e.g.*, JJHCS_00002555; JJHCS_00005373. There may also have been other mitigation methods that J&J has not disclosed to SaveOn. J&J must conduct a reasonable investigation into what methods existed or were considered and propose search terms targeted at those methods.

Requests 61 and 62 seek patient claims data provided by Accredo to J&J or any vendor regarding patients enrolled in CarePath, and documents sufficient to show negotiations regarding the same. ████████████████████. *See* JJHCS_00027773. ██████████████████████████████████████████████████████████████████████████████████████. Looking at this data, J&J likely would have been able to identify individuals on accumulators, maximizers, or SaveOn-advised plans. J&J also could have asked to purchase data from Accredo that would identify patients on accumulator, maximizer, or SaveOn-advised plans. SaveOn is entitled to understand whether J&J did so or sought to do so as part of its mitigation efforts.

SaveOn's current Requests seek all data provided by Accredo to J&J and its vendors: J&J objects on the basis of burden. While reserving all rights, in an effort to reach compromise, please produce in the first instance the following narrowed categories of documents:

- Documents sufficient to show data J&J purchases from Accredo regarding the Janssen Drugs at issue in this litigation, including so-called dispense, status, and inventory reports;

- Documents sufficient to show negotiations regarding the same.

For the second category of documents, please identify individuals who negotiate over the purchase of data from Accredo, including the dispense, status, and inventory reports, designated them as custodians, and to run following search string over their custodial files:

- ((dispense* OR status* OR inventory* OR data*) w/3 report*) AND (Accredo OR Acredo) AND (BALVERSA OR DARZALEX OR ERLEADA OR IMBRUVICA OR OPSUMIT OR PREZCOBIX OR REMICADE OR RYBREVANT OR SIMPONI OR STELARAOR OR SYMTUZA OR TRACLEER OR TREMFYA OR UPTRAVI OR VENTAVIS OR ZYTIGA)

\*          \*          \*

Julia Long
April 4, 2024

To the extent that J&J objects on the basis of burden for any of the requested sets of search terms, please provide hit counts for each search string and for each individual term within those strings.

We request a response by April 11, 2024. We reserve all rights and are available to meet and confer.

Best,

/s/ Elizabeth Snow

Elizabeth H. Snow
Associate

7

# EXHIBIT 3

**Patterson Belknap**

www.pbwt.com

May 24, 2024

Julia Long
(212) 336-2878

**By Email**

Elizabeth Snow, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC***,
          ___Case No. 2:22-cv-02632 (JKS) (CLW)___

Dear Elizabeth:

          We write in response to SaveOnSP's May 2, 2024 letter requesting additional discovery on JJHCS's mitigation efforts.

          In its May 2 letter, SaveOnSP requests that JJHCS run an IQVIA-specific search term—IQVIA w/25 (accumulator* OR maximizer* OR copay OR co-pay OR CAP)—over the custodial files of eleven custodians[1] for a time period that is longer than seven years (April 1, 2016 to November 7, 2023). SaveOnSP claims documents that contain these search terms are responsive to nine prior document requests, none of which reference IQVIA. JJHCS objects on both burden and relevance grounds.

          As a threshold matter, SaveOnSP's letter contains no basis for JJHCS to run this term over a seven-year period. While JJHCS rejects SaveOnSP's characterizations of the documents cited in its May 2 letter, none of those documents are dated before June 2021, and even that June 2021 document concerns only the Best Price Rule, which is not relevant to this litigation. *E.g.*, JJHCS_00001709 (June 2021); JJHCS_00139555 (October 2021 reference); JJHCS_ 00118663 (November 2021); JJHCS_00144401 (December 2021). SaveOnSP provides no basis to demand that JJHCS run SaveOnSP's proposed term going back to April 1, 2016.

          SaveOnSP's proposed term is also overbroad, pulling in 5,040 documents (family inclusive). In November 2023, SaveOnSP proposed a version of this term with a narrower proximity limiter—IQVIA /15 (accumulate* OR maximiz* OR CAP*). *See* Nov. 30, 2023 Ltr.

---

[1] Lauren Pennington, Jasmeet Singh, William Robinson, John Hoffman, Katie Mazuk, John King, Adrienne Minecci, Lindsey Anderson, Spilios Asimakopoulos, Karen Lade, and Silviya McCool

Patterson Belknap Webb & Tyler LLP    1133 Avenue of the Americas, New York, NY 10036    T 212.336.2000    F 212.336.2222

15107386

Elizabeth Snow, Esq.
May 24, 2024
Page 2

from E. Snow to G. LoBiondo at 2.  SaveOnSP's latest letter—half a year since its last outreach on this term—nowhere references or attempts to justify SaveOnSP's departure from its prior proposal that contained a "w/15" proximity limiter.

In the interest of compromise, and following a reasonable investigation, JJHCS is prepared to run the following term for the time period January 1, 2021 to November 7, 2023 for all eleven custodians requested in SaveOnSP's letter, subject to SaveOnSP's agreement that this resolves JJHCS's discovery obligations with respect to SaveOnSP's demand for IQVIA-related discovery.

- IQVIA w/15 (accumulator* OR maximizer* OR copay OR co-pay OR CAP)

Finally, SaveOnSP demands "final studies, reports, or analysis prepared by IQVIA relating to SaveOn, maximizers, accumulators, copay adjustment programs, and their impact on CarePath and patient adherence."  May 2, 2024 Ltr. from E. Snow to J. Long at 3.  This demand ignores Judge Wolfson's guidance concerning the relevance of adherence documents, which SaveOnSP sought to compel at the October 30, 2023 and January 24, 2024 conferences.  *See* Dkt. No. 192 at 22 ("open[ing] a small window for Defendant to explore documents that may reflect whether more patients are taking Janssen drugs as a result of being on the SaveOnSp Program").  For the avoidance of doubt, JJHCS does not agree to produce adherence outside of the narrow window previously ordered by the Court.  Nonetheless, in the interest of compromise, JJHCS is prepared to produce "final studies, reports, or analysis" prepared by IQVIA that relate to SaveOnSP specifically or to JJHCS's response to accumulators or maximizers, including the CAP program.

Very truly yours,

*/s/ Julia Long*
Julia Long