# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

June 7, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

> Re:  *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
>      No. 2:22-cv-02632 (JKS) (CLW)

Dear Judge Wolfson:

On behalf of Save On SP, LLC ("SaveOn"), we write in reply to Plaintiff Johnson & Johnson Health Care Systems, Inc.'s ("JJHCS," and, with its affiliates, "J&J") opposition to SaveOn's motion to compel J&J to search for and produce documents responsive to SaveOn's document requests from custodial and non-custodial sources from Janssen Market Research.

The documents at issue are relevant to core issues in this case—the alleged stress and confusion that SaveOn causes patients; changes to J&J's terms and conditions; and J&J's responses to accumulators, maximizers, and SaveOn. J&J has no valid basis to withhold them. While it asserts that SaveOn did not request the documents at issue, the documents fall within SaveOn's existing document requests. While J&J states that it has no independent market research entity,

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

SaveOn seeks the documents at issue from J&J employees involved with market research regardless of which specific J&J entities they worked for. And while J&J now offers for the first time to produce some limited additional documents, it still refuses to add new custodians or to produce anything beyond final research reports—the core relief that SaveOn seeks.

Your Honor should grant SaveOn's motion.

## I.      SaveOn Seeks Relevant Documents

In this motion, SaveOn seeks documents and communications regarding market research about three topics which are central to the parties' dispute.

*First*, SaveOn seeks documents regarding J&J's market research about patient stress and confusion, *see* Mot. at 6-7, relevant to J&J's allegation that SaveOn causes CarePath patients such stress and confusion, Compl. ¶ 114. J&J asserts that it need not produce "general research" about patient harm, only research about harms resulting from the "specific scheme" alleged in its complaint. Opp. at 9-10. In fact, "general research" showing that patients are stressed and confused for reasons having nothing to do with SaveOn is relevant to disprove J&J's allegations that SaveOn causes such harm. J&J says that it should not be compelled to produce documents about "general research" until it produces research going to the "specific scheme" and the parties then confer "over anything else SaveOnSP might need." Opp. 10. But SaveOn's requests have been pending for months, the parties have fully conferred, and J&J refuses to designate any new market research custodians or to produce the full range of requested market research. Any limited production by J&J would not resolve the parties' disputes over these issues.

*Second*, SaveOn seeks documents regarding market research about CarePath's terms and conditions ("T&Cs"), the contract that J&J alleges SaveOn induced patients to breach. Compl. ¶ 109. SaveOn is entitled to discovery on the meaning of the T&Cs, especially the "other offer" provision. *See, e.g.*, Jan. 24, 2024 Hr'g Tr. at 4:15-17 ("There's no doubt—or there's no dispute

that there certainly is relevance to evidence regarding what this term means."); *id.* at 38:16-20

(permitting discovery into "the understanding of those terms when they were placed into various

agreements … and documents that reflect what that understanding was and the intent of it"). While

J&J asserts that SaveOn provides "no evidence to suggest there was ever market research" on this

topic," Opp. at 10-11, SaveOn cites documents showing that ███████████████████████████████

███████████████, Mot. at 9 (citing Exs. 28, 29, 32),[1] and documents showing that

█████████████████████████████████████████████████████████████████████████████████████

██████████████, *see* Exs. 2, 3, 7, 9, 10, 11, 12, 15, 20.[2]

    *Third*, SaveOn seeks documents regarding J&J's market research into strategies to respond

to SaveOn, accumulators, or maximizers, which are relevant to its defenses of mitigation, laches,

and acquiescence. Ans. ¶¶ 24-38.[3] The relevance of these documents is undisputed: J&J concedes

---

[1] J&J asserts that SaveOn's Exhibit 32 "does not contain the language that SaveOnSP attributes to it, Opp. at 11 n.4—but it does. *See* Ex. 32 at -681.0016 ████████████████████████████████ ████████████), -681.0017 █████████████████████████████████████████████████████████████ ██████████). J&J also asserts that Exhibits 28 and 29 "have nothing to do with the 'other offer' language, Opp. at 11 n.4, but they show that █████████████████████████████████████████ ██████████████████████████████████████████, and Exhibit 29 specifically discusses ███████ ███████████████████████████████████ Ex. 29 at -710.0008. These exhibits thus indicate that ████████ ███████████████████████████████████████████████████.

[2] J&J asserts that Exhibits 30 and 37 do not mention market research. Opp. at 5-6. As SaveOn's brief makes clear, SaveOn referred to Exhibits 30 and 31 together because ██████████████████████ ████████████████████████████████████. Mot. at 5. Exhibit 31 discloses that, █████████████████ █████████████████████████████████████████████████████████████ Ex. 31; Exhibit 30 is ███████████████████████████████████████████████████████████████████████████████████████ ███████████████ Ex. 30 at 5. Exhibit 37, similarly, shows that ██████████████████████████████ ████████████████████████████████████████████████████████.

[3] For example, J&J claims that it could not identify patients on SaveOn-advised plans and remove them from the CarePath program because it could not reliably identify such patients, *see* Compl.

that that "market research documents that bear on strategies for responding to SaveOnSP or accumulators and maximizers" are relevant. Opp. at 11.

## II.   J&J Has No Valid Reason to Withhold the Requested Documents

### A.   SaveOn Requested the Documents

J&J asserts that SaveOn's motion is "unmoored from particular requests for production." Opp. at 3, that only Request 73 "appears relevant to the substance of its motion," *id.* at 4, and so J&J need not produce anything not sought in Request 73, *id.* In fact, as SaveOn explained in its motion, Mot. at 7 n.3, 9 n.5, 10 n.7, SaveOn seeks material that falls within its Requests 12, 19, 31, 33, 49, 51, 54 and 73.

*First*, SaveOn's request for market research about J&J's allegations of patient stress and confusion, Mot. at 6-7, is covered by SaveOn's Request 19 ("All Documents and Communications regarding any alleged stress and confusion caused by SaveOnSP to any member of the public, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114"). Ex. 34 at 15.

*Second*, SaveOn's request for market research about the T&Cs and the "other offer" provision, Mot at 8-9, is covered by (1) SaveOn's Request 12 ("All Documents and Communications

---

¶ 101, but J&J has produced documents ███████████████████████, *see, e.g.*, Ex. 38 at -541-2 (JJHCS_00134533) (explaining that, ████████████ ████████████████████████); Ex. 39 (JJHCS_00003355); Ex. 40 (JJHCS_00003430) (████████████████████████████), but ███ ████████████████, *see, e.g.*, Ex. 19 at -700.0012 (██████ ████████████████████████████████████████ ████████); Ex. 41 (JJHCS_00121598) (██████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████ ████████████████████).

regarding CarePath's terms and conditions, including Documents and Communications regarding … (d) JJHCS's understanding of the term 'offer' … as used in CarePath's terms and conditions"), Ex. 34 at 14; (2) Request 51 ("All Documents and Communications regarding all Stelara withMe terms and conditions, … including Documents and Communications regarding … (b) JJHCS's understanding of the term 'offer' … as used in any terms and conditions that apply or applied to Stelara."); *id.* at 40, and (3) Request 54 (same as Request 51, but for Tremfya), *id.* at 40.

*Third*, SaveOn's request for market research about J&J's responses to accumulators, maximizers, and SaveOn, including any market research about mitigation strategies, Mot. at 10-11, is covered by (1) SaveOn's Request 31 ("All Documents and Communications regarding … JJHCS's attempts to limit or eliminate the availability of CarePath copay assistance funds available to Patients enrolled in health plans advised by SaveOnSP"), Ex. 34 at 17; (2) Request 33 (same regarding "JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans"), *id.* at 19; (3) Request 49 (same re. "efforts by JJHCS, Janssen, a JJHCS Hub Entity, or other entity working on their behalves to (a) identify (through non-litigation means) individuals enrolled in CarePath as members of SaveOnSP-advised plans, or (b) to enforce CarePath's terms and conditions against those individuals, including without limitation by reducing the amount of copay assistance funds provided to those individuals or by disenrolling those individuals from CarePath"), *id.* at 30; and (4) Request 73 ("All Documents and Communications by or for Janssen market research regarding Accumulators or Maximizers"), *id.* at 64.

## B.     J&J Has Market Research Employees Who Are Likely to Have the Requested Documents

J&J asserts that it has no "internal market research entity" that researches accumulators, maximizers, or SaveOn, Opp. 5; *see also id.* (asserting that J&J does not conduct internal market research "though a particular unit"), so "the entire premise of SaveOnSP's motion is mistaken,"

*id.* at 2. In fact, SaveOn's motion does not depend on J&J having a separate entity that conducts such research. SaveOn seeks documents from whichever J&J employees were involved with J&J's market research on the topics at issue, regardless of which entity, unit, or group within J&J they worked for. Mot. at 2 (defining Janssen Market Research for purposes of the motion "as the group or groups performing market research on behalf of … any of the drugs at issue"). J&J does not deny that employees other than its existing custodians were involved with market research into the topics at issue—J&J must identify them and produce the requested materials from their files.[4]

J&J next asserts that all the documents that SaveOn cites "reflect research that was led and conducted by third parties." Opp. at 5. Not so. In SaveOn's Exhibit 5, for example,



Ex. 5 at -685 (emphasis added). *Id.*

J&J also asserts that third-party research "is shared with and used by one or more of JJHCS's custodians because those are the people responsible for CarePath or for related projects and programs[.]" Opp. at 5. J&J does not say, however, that all the requested market research was

---

[4] During the parties' negotiations, while J&J objected to producing market research documents that did not specifically mention SaveOn, *see* Ex. 42 at 5 (Feb. 8, 2024 Letter), and to producing any market research documents from non-JJHCS entities, Ex. 16 at 2 (Apr. 26, 2024 Letter), it never denied that J&J employees beyond its existing custodians were involved with market research on the topics at issue. J&J also never said that it did not have a separate market research "entity," even after SaveOn said that it intended to seek relief because J&J "refus[ed] to identify relevant custodians" involved with market research, Ex. 43 at 2 (May 7, 2024 Letter).

shared with existing custodians.[5] Even were all final third-party research reports shared with ex-isting custodians, moreover, the J&J employees who hired and oversaw the vendors are likely to have additional relevant documents—for example, communications in hiring the vendors, direct-ing their work, answering their questions, and reviewing initial research findings. And, of course, non-custodians involved with market research may have additional documents reacting to the find-ings and discussing how to implement or operationalize them. *See, e.g.*, Ex. 10 at -696 ███████ ████████ ████████ ████ ███████ █ ████████ ████████ ██ ██ ███████); Ex. 11 at -722.0014-15 (███████████████████████████████████████████████ ███████); Ex. 12 at -507.0011 (██████████████████████████████████████████ ██████████████████).

### C.      J&J Is Withholding the Requested Documents

During the parties' negotiations, J&J flatly refused to produce any market research material unless it specifically mentioned SaveOn. *E.g.*, Ex. 36 at 5 (Feb. 28, 2024 Letter) ("It is irrelevant whether some patient at some time may have liked a company which provides services similar to SaveOn.") (cleaned up). In its opposition, J&J now says:

> [T]o help moot this motion, JJHCS is also investigating whether any additional, unproduced market research regarding accumulators and maximizers that does not mention SaveOnSP exists in the relevant repositories for such research. If it does, JJHCS will produce it to SaveOnSP. To the extent any such research exists and SaveOnSP seeks anything else relating to it after that, JJHCS will certainly con-fer with SaveOnSP further regarding such requests.

---

[5] SaveOn cited documents showing that multiple J&J employees who are not currently custodians were involved in market research. *See, e.g.*, Ex. 1 (███████████); Ex. 5 (███████████); Ex. 6 (███ ███████████████); Ex. 7 (████████████████); Ex. 10 ████████████████████ Ex. 11 ███); Ex. 19 (████████████); Ex. 20 (█████████████████); Ex. 21 (████████████); Ex. 22 ████████████████████████████████████████████); Ex. 28 ███████████████████████████████; Ex. 33 ████████████████).

Case 2:22-cv-02632-CCC-CLW Document 413-2 Filed 10/27/24 Page 26 of 250 PageID: 41430

Opp. at 9. This is nowhere close to enough. J&J agrees to search only its existing "repositories"—that is, the custodians and non-custodial sources that it is already searching. *Id.* J&J must also identify J&J employees and sources involved with market research beyond its existing custodians and sources and produce documents from their files. J&J also agrees to produce only "market research"—that is, final market research findings. *Id.*; *see also id.* at 6 (asserting that its existing custodians are likely "to possess the products of such research"). J&J must also produce documents and communications relating to that research.

At bottom, J&J's obligation is to search files within its control that are reasonably likely to have relevant information. J&J's market research employees outside of JJHCS are likely to have documents relating to market research on the topics at issue. J&J must identify these individuals (and any non-custodial sources) outside of JJHCS, search their files, and produce documents on the requested topics.

SaveOn appreciates Your Honor's attention to this matter.

Respectfully submitted,

/s/ *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Hon. Freda L. Wolfson                                                                    Page 9

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

**EXHIBITS 38-41**
**CONFIDENTIAL – FILED UNDER SEAL**

# Exhibit 42



www.pbwt.com

February 8, 2024

Ian Eppler
(212) 336-2205

**VIA EMAIL**

Elizabeth H. Snow, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:     ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC***,
***No. 2:22-cv-02632 (JKS)(CLW)***

Dear Elizabeth:

We write regarding SaveOnSP's January 26, 2024 letter concerning JJHCS's responses and objections to SaveOnSP's Fifth Set of Requests for Production ("JJHCS's Dec. 18, 2023 Responses and Objections").

## I.     General Objections & Definitions

SaveOnSP requests confirmation that JJHCS is not withholding documents based on two of its general objections:  JJHCS's objection that SaveOnSP's requests seek documents or information "obtainable from sources other than JJHCS" in a more efficient manner, and JJHCS's objection that SaveOnSP's requests require JJHCS to disclose materials in a manner that would violate "a confidentiality agreement, court order, or applicable law."  *See* JJHCS's Dec. 18, 2023 Responses and Objections, at 2.  SaveOnSP asked these same questions in a prior letter on JJHCS's responses and objections to SaveOnSP's Fourth Set of Requests for Production, and consistent with JJHCS's prior response, JJHCS reiterates that its specific responses and objections to each of SaveOnSP's requests set forth how JJHCS plans to respond to each request, including with respect to what JJHCS is willing to produce.  *See* Jan. 2, 2024 Ltr. from J. Long to E. Snow at 1.  If you believe any of our responses or objections are unclear, please let us know.

As to JJHCS's objection concerning the definition of "Benefits Investigation," we understand SaveOnSP's letter to narrow the definition of that term to "the same definition that [JJHCS] used when it agreed to produce 'Benefits Investigations' [through TrialCard] on October 24, 2023."  Jan. 26, 2024 Ltr. from E. Snow to I. Eppler at 1–2.  For the avoidance of doubt, on October 24, 2023, JJHCS explained it would produce "benefits investigations from January 1, 2022 through July 1, 2022 . . . that reflect inquiries about whether a patient taking Stelara or Tremfya is enrolled in an accumulator or maximizer program (including SaveOnSP)."  (Dkt. No.

Elizabeth H. Snow, Esq.
February 8, 2024
Page 2

163.)  Please confirm that SaveOnSP plans to adopt the same definition.  Otherwise, JJHCS reiterates its objection to SaveOnSP's definition of "Benefits Investigation," which includes "any process by which JJHCS, or any entity acting on its behalf, receives information regarding the pharmacy benefits provided by a health plan," on relevance and burden grounds.

SaveOnSP also continues to take issue with JJHCS's objection to SaveOnSP's definition of Janssen.  As we stated in our January 2, 2024 letter, SaveOnSP's claim that the Court previously held that "J&J's discovery obligations include Janssen" finds no support in the Court's June 29, 2023 Order or June 27, 2023 conference transcript.  *See* Jan. 2, 2024 Ltr. from J. Long to E. Snow at 1–2.  As SaveOnSP well knows, at issue in June was SaveOnSP's motion to compel supplemental responses to certain interrogatories served on JJHCS.  The Court granted that motion in part, and clarified the limited implication of its ruling when SaveOnSP untimely sought reconsideration of the same issue at the October 30 conference.  As JJHCS repeatedly has made clear—including in its January 2, 2024 letter addressing the same issue—of roughly 200 J&J subsidiaries, "JJHCS is the sole relevant J&J entity involved in the development, marketing, [and] administration of CarePath."  *Id.* (quoting Dkt. No. 122 at 1; Dkt. No. 29 at 20).[1]

## II.  Request Nos. 63-67

These Requests call for a variety of documents and communications related to JJHCS's efforts to prevent the misuse of CarePath funds, including by considering or adopting changes to the CarePath program.  To the extent these Requests call for information regarding JJHCS's efforts to prevent the misuse of CarePath funds by SaveOnSP, they are duplicative of SaveOnSP's prior requests, as JJHCS explained in its Responses and Objections to SaveOnSP's Fifth Set of Requests for Production.  For example:

- **Request No. 63** calls for "[a]ll Documents and Communications regarding JJHCS's efforts to directly reimburse patients for out-of-pocket costs after the patient acquires a Janssen Drug."  To the extent that this Request calls for documents regarding JJHCS's efforts to mitigate harm caused to CarePath by SaveOnSP by modifying CarePath to reimburse patients for out-of-pocket costs, this Request is duplicative, as JJHCS has already agreed to run several search terms intended to identify documents related to SaveOnSP in response to Request No. 8.  Documents concerning these efforts also would be captured by search strings related to the CAP program.

- **Request No. 64** demands ."  If this Request is construed as calling for documents related to , it is

---

[1] SaveOnSP sent JJHCS a third letter on non-JJHCS discovery on February 5, 2024.  JJHCS will respond to that correspondence under separate cover and in due course.

Elizabeth H. Snow, Esq.
February 8, 2024
Page 3

duplicative for the reasons set forth in JJHCS's Responses and Objections. JJHCS has already agreed to run several search terms intended to identify documents related to SaveOnSP in response to Request No. 8, and documents involving "█████████████████████████████████████████████████" in connection with SaveOnSP would be captured by those terms. Insofar as it involves "████████████████████████████████████████" unrelated to SaveOnSP, JJHCS objects to this Request on the basis of relevance. *See* Transcript of March 17, 2023 Status Conf. at 32:23–34:10.

- **Request No. 65** is a demand for "[a]ll Documents and Communications regarding ██████████████████████████████████████'" JJHCS has already agreed to search for documents containing the term "SaveOn," including reasonable variations thereof. *See* Dec. 22, 2023 Ltr. from J. Long to E. Snow at 8. As you acknowledged at our February 8 meet and confer, documents regarding "████████████████████████████" would necessarily be included in the results of that search.

- **Request No. 66** is a call for "[a]ll Documents and Communications regarding attempts by JJHCS to prevent health plans, PBMs (including without limitation Express Scripts), pharmacies (including without limitation Accredo), or SaveOnSP, from being able to detect JJHCS's provision of funds to patients." Here, too, Request No. 66 is duplicative of Request No. 8, which concerns documents related to SaveOnSP, as well as requests related to the CAP program. As we discussed at our February 8 meet and confer, previously agreed-upon search terms intended to elicit documents related to SaveOnSP, the CAP program, Express Scripts, and Accredo will also produce documents responsive to this Request. To the extent that this Request demands documents unrelated to SaveOnSP, Express Scripts, or Accredo, JJHCS objects based on relevance.

- **Request No. 67** calls for "[d]ocuments sufficient to show all payments or reimbursements made by JJHCS to patients taking Janssen Drugs other than copay assistance payments provided via CarePath." Contrary to SaveOnSP's claim in its January 26 letter, the Request does **not** call for documents and communications related to these payments or reimbursements: it demands only documents sufficient to show payments or reimbursements. As JJHCS explained in its Responses and Objections and at our meet and confer of February 8, data on payments or reimbursements to patients taking the Janssen drugs at issue in this litigation was produced in response to SaveOnSP's Request Nos. 26 and 28. To the extent this Request calls for documents or data unrelated to the CarePath program, JJHCS reiterates that it objects to that request on the basis of relevance.

## III. Request No. 68

Request No. 68 calls for documents and communications "between JJHCS and Archbow regarding CarePath, copay assistance, or provision of funds to patients enrolled in CarePath." As stated in its responses and objections, JJHCS already has agreed to produce "responsive, non-privileged documents that relate to SaveOnSP," including "documents related to the CAP Program consistent with the Court's November 7, 2023 Order." *See* JJHCS's Dec. 18,

Elizabeth H. Snow, Esq.
February 8, 2024
Page 4

2023 Responses and Objections, at 12. SaveOnSP nonetheless claims this production is "insufficient," despite sending its letter five days before JJHCS substantially completed its production of CAP-related documents. As SaveOnSP no doubt knows, many of these documents reflect ███████████. *See, e.g.*, JJHCS_00073361; JJHCS_00117174; JJHCS_00073693. To the extent Request No. 68 calls for a broader set of communications between JJHCS and Archbow that address issues unrelated to CAP or SaveOnSP, including communications related to the Best Price Rule, JJHCS objects on relevance grounds.

**IV.    Request No. 69**

In response to Request No. 69, SaveOnSP insists JJHCS identify a ███████████" affiliated with Archbow and run search terms designed to identify documents related to that individual. As SaveOnSP acknowledges, the sole reference to this "███████████" is in an Archbow document, not a JJHCS document. We are not able to explain references in Archbow's document production.

**V.    Request No. 70**

SaveOnSP continues to demand "Documents and Communications regarding manufacturer copay assistance program funds counting towards the calculation of a drug's Best Price, including the anticipated impact of the 2023 Best Price Rule on JJHCS, including without limitation the impact on CarePath." As JJHCS has explained in other contexts, "[i]ssues related to 'Best Price' are completely irrelevant to this action." *See* JJHCS's Responses and Objections to SaveOnSP's Sixth Set of Requests for Production, at 10 (objecting to a request for "Best Price Quarterly Reports").

SaveOnSP's arguments do not change this conclusion. Despite SaveOnSP's insistence, the hypothetical question of how JJHCS might have responded if that proposed rule had in fact gone into effect is simply irrelevant to the claims and defenses. JJHCS has not adopted a "made-for-litigation position" with respect to the meaning of the CarePath terms and conditions. In any event, documents reflecting JJHCS's discussions of SaveOnSP's conduct—including communications regarding this lawsuit—would be captured by JJHCS's response to Request No. 8, to the extent that relevant, non-privileged documents exist. Accordingly, JJHCS reiterates that it will not produce documents responsive to this Request.

**VI.    Request Nos. 71 and 72**

Request Nos. 71 and 72 demand documents related to JJHCS's internal accounting treatment of copay assistance payments and documents related to ███████████ ███████████. SaveOnSP claims this information is relevant because it presents a potential defense to JJHCS's GBL claim, namely that JJHCS's GBL claim must fail if "CarePath is a marketing program" because "a harm to a business . . . cannot constitute public harm." Jan. 26, 2024 Ltr. from E. Snow to I. Eppler, at 6.

Elizabeth H. Snow, Esq.
February 8, 2024
Page 5

Judge Wolfson rejected this line of reasoning in her February 6, 2024 Order concerning similar requests for ancillary financial documents, including those related to return on investment. (Dkt. No. 192, at 19–22.) The argument is no more persuasive here. As is recognized in the authority cited by SaveOnSP, a business may bring a GBL claim based on "consumer injury or harm to the public interest" when that harm to the public interest results in harm to the business. *Ideal You Weight Loss Ctr., LLC v. Zillioux*, 174 A.D.3d 1473, 1475 (4th Dep't 2019). JJHCS's GBL claim is predicated on both the harm SaveOnSP inflicted upon consumers and the harm it inflicted upon CarePath, as the Court recognized when it rejected SaveOnSP's arguments for dismissal of this claim. *See Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*, 2023 WL 415092, at *6-7 (D.N.J. Jan. 25, 2023). Documents ostensibly demonstrating that CarePath is a "marketing program," even if they exist, would be irrelevant. JJHCS can bring a GBL claim to remedy SaveOnSP's harm to consumers even if CarePath were a "marketing program." Nor is there any reason to think that a marketing program cannot also provide a benefit to consumers. SaveOnSP's argument is nothing more than a pretext for unwarranted discovery on irrelevant issues.

## VII.    Request No. 73

Request No. 73 demands "[a]ll Documents and Communications by or for Janssen market research regarding Accumulators or Maximizers, including without limitation discussions with Archbow." In its letter, SaveOnSP claims that documents regarding "patient attitudes" towards accumulators and maximizers are relevant to this litigation and must be produced by JJHCS. Jan. 26, 2024 Ltr. from E. Snow to I. Eppler, at 6.

Setting aside whether such information is relevant (it is not), SaveOnSP misconstrues JJHCS's objection to this Request. As stated in its responses and objections, JJHCS objects to this Request because it calls for irrelevant "information unrelated to SaveOnSP and the CarePath program and any withMe programs." *See* JJHCS's Dec. 18, 2023 Responses and Objections, at 15. Any Janssen or JJHCS market research regarding patient satisfaction with other accumulators or maximizers is wholly irrelevant to the claims and defenses in this action, which involve JJHCS's allegations that SaveOnSP (and not some other unnamed accumulator or maximizer) deceived consumers and tortiously interfered with contracts between patients and JJHCS. Contrary to SaveOnSP's claims in its January 26, 2024 letter, JJHCS has not agreed to produce documents responsive to this irrelevant Request. However, to the extent this Request calls for documents and communications involving Janssen market research involving SaveOnSP, JJHCS has already agreed to search for documents containing the term "SaveOnSP," including reasonable variations thereof, so this Request is duplicative.

## VIII.    Request No. 74

This demand for all documents and communications "regarding the funds that JJHCS provides to patients taking Janssen Drugs . . . compared to the revenue that Janssen receives from the sales of Janssen Drugs" is yet another reformulation of SaveOnSP's ongoing quest for documents regarding JJHCS's return on investment from CarePath. *Compare* Jan. 26, 2024 Ltr.

Elizabeth H. Snow, Esq.
February 8, 2024
Page 6

from E. Snow to I. Eppler, at 7 ("SaveOn is entitled to discover all payments made . . . to demonstrate a lack of harm to J&J"); Dkt. No. 150, at 6 ("SaveOnSP believes that the documents sought will show that its conduct may not injure JJHCS at all or at least not damage it to the extent alleged."). JJHCS has consistently explained that this request is wholly irrelevant to JJHCS's claims in this action. (*See* Dkt. No. 150, at 14.) Judge Waldor and Judge Wolfson have consistently rejected SaveOnSP's arguments demanding discovery into these issues. (*See* Dkt. No. 192 at 22; Dkt. No. 173; Dkt. No. 89 at 34:10–19, 35:17–21.)

## IX. Request No. 75

Citing a page of handwritten notes produced by Archbow from its own files, SaveOnSP baselessly claims that JJHCS has breached its agreement to produce documents responsive to SaveOnSP's Request No. 8, which calls for "documents or communications with or regarding" SaveOnSP. To be clear, JJHCS has complied and continues to comply with its production obligations. JJHCS cannot answer questions or address concerns about the scope of Archbow's production. JJHCS will not undertake a further search for documents based on this Request.

## X. Request No. 76

This Request demands all recordings of calls between SaveOnSP or any of its employees and JJHCS or certain JJHCS affiliates. As JJHCS has repeatedly explained—including in its response to this very request, at the January 29 meet and confer, and at the February 8 meet and confer—it cannot feasibly identify these call recordings without identifying information from SaveOnSP, including the many pseudonyms and false claims of affiliation that SaveOnSP and its employees used when calling JJHCS and its affiliates. This additional information is also necessary for JJHCS to assess the burden of any such production. If SaveOnSP wants JJHCS to produce these call recordings, it must provide this critical information. The ball is in SaveOnSP's court.[2]

---

[2] On February 7, 2024, SaveOnSP sent JJHCS yet another letter concerning Request No. 76. It is unclear to us why SaveOnSP has now sent three overlapping letters with respect to the same set of RFPs. In any event, JJHCS will respond to that letter under separate cover in due course. Sending multiple letters about the same requests is unreasonable and vexatious; it only complicates the meet and confer process and delays the resolution of open issues.

Elizabeth H. Snow, Esq.
February 8, 2024
Page 7


We are available to meet and confer and reserve all rights.


Very truly yours,

*/s/ Ian Eppler*
Ian Eppler

# Exhibit 43

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

May 6, 2024

**Via E-mail**

Ian Eppler
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

Re:    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
       LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Ian,

          We write in response to J&J's April 26, 2024 letter and further to SaveOn's April 4, 2024 letter regarding discovery about J&J's mitigation efforts.

**I.     Documents Regarding J&J's Development of Mitigation
       Strategies**

          A.     **Requests 68 and 82**

          Request 68 seeks documents and communications between J&J and Archbow regarding CarePath, copay assistance, or the provision of funds to patients enrolled in CarePath. Request 82 seeks documents and communications between J&J and Avalere regarding CarePath or copay assistance.

          We appreciate your agreement to run the four search terms related to Archbow and Avalere, responsive to Requests 68 and 82. *See* Apr. 26, 2024 Ltr. from I. Eppler to E. Snow at 2. Though we understand you have objected to producing documents and communications that solely concern the Best Price Rule, please confirm that you will not withhold responsive documents or communications that touch on Best Price (e.g., an email discussing both the CAP program and Best Price). SaveOn reserves all rights to request additional search terms or documents in the future.

Ian Eppler
May 6, 2024

### B.     Requests 73

Request 73 seeks documents and communications by or for Janssen Market Research regarding accumulators and maximizers. We understand that J&J refuses to search for or produce documents in response to RFP No. 73, including refusing to identify relevant custodians. The parties are thus at impasse and SaveOn intends to seek relief from Judge Wolfson.

## II.     Documents Regarding J&J's Implementation of Mitigation Strategies

### A.     Requests 58 and 59

Requests 58 and 59 seek all documents and communications regarding Benefits Investigations undertaken by J&J or one of its vendors that identified or attempted to identify whether a patient was a member of an accumulator, maximizer, or SaveOn-advised plan. We asked you to run the following searches:

- ("RIS" OR "RISRx" OR "TrialCard") AND (accumulator* OR maximizer* OR "CAPm" OR "CAPa" OR "adjustment program")

- ("RIS" OR "RISRx" OR "TrialCard") AND (budget* OR identif*)

- ("RIS" OR "RISRx") AND ((Benefit* w/5 Investigation*) OR "B.I." OR "BI's" OR "BIs" OR "B.I.'s")

- ("RIS" OR "RISRx") AND "BI" (*case sensitive*)

J&J offers to run modified search terms over a subset of the custodians that SaveOn requested for RIS Rx and refuses to search for and produce any documents related to TrialCard (beyond those that J&J has already produced).

#### 1.     RIS Rx

SaveOn proposed two terms specific to RIS Rx and two terms that included both TrialCard and RIS Rx. Thank you for confirming that J&J will run the RIS-specific terms.

Please let us know if J&J will agree to run the following search terms, proposed by SaveOn, as restricted to RIS Rx:

- ("RIS" OR "RISRx") AND (accumulator* OR maximizer* OR "CAPm" OR "CAPa" OR "adjustment program")

- ("RIS" OR "RISRx") AND (budget* OR identif*)

If J&J objects on the basis of burden, please provide hit counts for these search terms, including for each individual term within the proposed searches, as well as

the full aggregate deduplicated number of documents for each string individually and the terms combined. *See* Appendix 1.

Please also provide hit counts for the alternative RIS-specific search terms that you proposed in your April 26, 2024 letter:

- (RIS OR RISRx) /50 (accumulator* OR maximizer*)

- (RIS OR RISRx) /50 (identif*)

J&J also objects to running its proposed search terms over the documents of Scott White and Blasine Penkowski, pursuant to the apex custodian doctrine. As SaveOn has repeatedly explained, the so-called apex doctrine is not applicable to document production. *See Sandoz, Inc. v. United Therapeutics Corp.*, 2020 WL 13830525, at *3 (D.N.J. Nov. 16, 2020) ("[T]he 'apex doctrine,' while it may be applicable to depositions, is not a protective shield that prohibits document discovery from high-ranking executives."). J&J provides no other reason to exclude White and Penkowski's documents from these searches. Please confirm that J&J will run any search terms agreed by the parties over White's and Penkowski's files.

## 2. TrialCard

J&J refuses to run *any* search terms to identify documents about Trial-Card's work identifying patients on SaveOn-advised plans, accumulators, and maximizers, including regarding J&J's instructions to TrialCard regarding enforcement of the eligibility criteria in CarePath's Terms &Conditions, and what TrialCard did after it identified a patient on a maximizer, accumulator, or SaveOn-advised plan.

J&J does not offer any explanation for why it would search for and produce documents related to RIS Rx but not to TrialCard, or why communications regarding Benefits Investigations performed by RIS Rx would be more relevant than communications about Benefits Investigations performed by TrialCard. Omitting TrialCard from these searches would be problematic, as TrialCard is the primary administrator for CarePath and TrialCard conducted thousands of Benefits Investigations for J&J.

J&J appears to object primarily on the basis of burden, citing hit counts for SaveOn's combined search terms. To facilitate a productive meet and confer process, please provide hit counts for the following terms individually and on an aggregate deduplicated basis for both each individual search string and both strings combined, *see* Appendix 1:

- TrialCard AND (accumulator* OR maximizer* OR "CAPm" OR "CAPa" OR "adjustment program")

- TrialCard AND (budget* OR identif*)

Ian Eppler
May 6, 2024

### B.    Requests 61 and 62

Requests 61 and 62 seek patient claims data provided by Accredo to J&J or any vendor regarding patients enrolled in CarePath, and documents sufficient to show negotiations regarding the same. J&J promises that it will produce "final, executed data-sharing contracts by May 10, 2024." Apr. 26 Ltr. at 5. SaveOn reserves all rights to request additional documents and communications responsive to these RFPs.

Please respond by May 14, 2024.

Sincerely,

Hannah Miles

Hannah R. Miles
Associate

**Appendix 1 – Search Strings**

Please provide hit counts for the following search terms, in grey below, including for each individual term within the proposed searches. Please also provide the full aggregate deduplicated number of documents for each string individually and the terms combined.

| |
|---|
| **("RIS" OR "RISRx") AND (accumulator* OR maximizer* OR "CAPm" OR "CAPa" OR "adjustment program")** |
| "RIS" AND accumulator* |
| "RISRx" AND accumulator* |
| "RIS" AND maximizer* |
| "RISRx" AND maximizer* |
| "RIS" AND "CAPm" |
| "RISRx" AND "CAPm" |
| "RIS" AND "CAPa" |
| "RISRx" AND "CAPa" |
| "RIS" AND "adjustment program" |
| "RISRx" AND "adjustment program" |
| **("RIS" OR "RISRx") AND (budget* OR identif*)** |
| "RIS" AND budget* |
| "RISRx" AND identif* |
| "RIS" AND budget* |
| "RISRx" AND identif* |
| **(RIS OR RISRx) /50 (accumulator* OR maximizer*)** |
| "RIS" /50 accumulator* |
| "RISRx" /50 accumulator* |

| |
|---|
| "RIS" /50 maximizer* |
| "RISRx" /50 maximizer* |
| **(RIS OR RISRx) /50 (identif*)** |
| "RIS" /50 identif* |
| "RISRx" /50 identif* |
| **TrialCard AND (accumulator* OR maximizer* OR "CAPm" OR "CAPa" OR "adjustment program")** |
| TrialCard AND accumulator* |
| TrialCard AND maximizer* |
| TrialCard AND "CAPm" |
| TrialCard AND "CAPa" |
| TrialCard AND "adjustment program" |
| **TrialCard AND (budget* OR identif*)** |
| TrialCard AND budget* |
| TrialCard AND identif* |