# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

May 9, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

    Re: *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
       No. 2:22-cv-02632 (JKS) (CLW)

Dear Judge Wolfson:

  On behalf of Defendant Save On SP, LLC ("**SaveOn**"), we write in reply to Plaintiff Johnson & Johnson Health Care Systems, Inc.'s (with its affiliates, "**J&J**") opposition to SaveOn's motion to compel J&J to produce documents related to the 2016 Best Price Rule and the 2023 Best Price Rule.[1]

---

[1] SaveOn uses the same definitions as in its opening brief. *See* Apr. 18, 2024 Mot. ("Mot.").

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com
Robinson & Cole LLP

"It is well recognized that the federal rules allow broad and liberal discovery." *Pacciti v. Macy's*, 193 F. 3d 766, 777 (3d Cir. 1999). "[C]ourts have construed [Federal Rule of Civil Procedure 26] liberally, creating a broad range for discovery which would encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *AdvanSix Inc. v. Allianz Glob. Risks US Ins. Co.*, No. 221-CV-07962-MCA-CLW, 2023 WL 179963, at *2 (D.N.J. Jan. 13, 2023) (Waldor, J.). "It is beyond dispute that Rule 26 should be construed in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage." Dkt. 192 at 5-6. Once the party seeking discovery shows "that the information sought is relevant to the subject matter of the action and may lead to admissible evidence, the party resisting discovery bears the burden of supporting its objections with clear explanations." *Id.* at 6 (citations and quotations omitted).

SaveOn has firmly established why the discovery it seeks is relevant.

The 2016 Best Price Rule, in effect throughout the relevant period of this case, required drug manufacturers like J&J to certify to the federal government that it sells its drugs to the government at the best price that it sells them to anyone else. Under that rule, J&J did not have to deduct copay assistance funds from its prices to government insurers as long as all those funds went exclusively to patients. J&J required internal certifications that all these funds went to patients, which strongly indicates that J&J certified the same thing to the government, either explicitly by stating as much or implicitly by reporting prices that did not account for copay assistance payments. Such certifications that patients receive all copay assistance funds would be directly contrary to J&J's assertions in this case that some of those funds went to SaveOn and its health plan clients, disproving those allegations and undercutting J&J's credibility. SaveOn thus seeks

the Quarterly Reports that J&J submitted to the government regarding its best prices and documents relating to the bases of J&J's representations.

The 2023 Best Price Rule, finalized at the end of 2020 and slated to go into effect in January 2023, would have required drug manufacturers like J&J to affirmatively "ensure" that no copay assistance funds went to non-patients. This gave J&J a compelling financial incentive to investigate if any such funds went to non-patients: if it did not ensure that this was so, it would have to discount its prices to the government to account for those payments, costing it billions. This flipped J&J's incentives from the 2016 Best Price Rule, under which J&J did not have to investigate where the funds went but did have to account for any payments to non-patients if it learned about them. Under this regime, J&J's incentive was to not investigate where the funds went; J&J's documents show that it instituted a policy that it "was not allowed to know" if any funds went to so-called accumulators or maximizers. Ex. 6 at -7510. This seemed to change with J&J's response to the 2023 Best Price Rule, which apparently included beginning to investigate if patients were on SaveOn-advised plans and bringing this lawsuit. Documents about that response—along with documents relating to the 2016 Best Price Rule—could show that, before the 2023 Best Price Rule was finalized, J&J affirmatively did not try to identify members of SaveOn-advised plans or to enforce its terms and conditions against them, showing that J&J failed to mitigate its damages, acquiesced to SaveOn's conduct, and did not believe that its terms applied to SaveOn's conduct. SaveOn thus seeks documents concerning J&J's response to the 2023 Best Price Rule,

In opposition, J&J provides no valid basis to withhold this discovery. Contrary to J&J's repeated assertions, SaveOn does not seek pricing data—SaveOn would agree that J&J can redact the dollar amounts of drug prices from its Quarterly Reports. It is also not true that SaveOn concedes that it takes copay assistance funds from J&J—SaveOn strongly disputes that it takes any of

Case 2:22-cv-02632-CCC-CLW   Document 1362-2   Filed 08/27/24   Page 4 of 18 PageID: 42531
Case 2:22-cv-02632-JKS-CLW   Document 436-2    Filed 10/17/24   Page 4 of 97 PageID: 14531164
Hon. Freda L. Wolfson                                                                   Page 4

those funds. J&J asserts that SaveOn misreads the Best Price regulations, but even were this true (it is not) it would be irrelevant—SaveOn does not contest J&J's compliance with the regulations here; it seeks discovery of the facts of what J&J did in response to them. J&J asks Your Honor to ignore documents showing what it did by offering competing interpretations of those materials, but at best for J&J this simply raises a factual dispute about J&J's conduct, which SaveOn is entitled to explore through discovery. J&J also tries asserting that it is already producing all relevant documents, but in fact it continues to withhold the documents at issue and refuses to even identify relevant custodians.

The Special Master should grant SaveOn's motion.

**I.    SaveOn Does Not Seek Drug Prices**

Contrary to J&J's repeated assertions, Opp. 2, 5, 6, 7, 19, SaveOn does not seek in this motion to discover the dollar amounts of J&J's drug prices. J&J asserts that SaveOn seeks this data by asking for J&J's Quarterly Reports, which J&J says contain "every relevant price, discount, and rebate" that it offers for the drugs at issue. Opp. 5-6; *see also id.* 6-7 (asserting RFP No. 79, seeking Quarterly Reports, "on its face seeks pricing data"). To assuage this concern, while reserving all rights, SaveOn would agree that J&J can *redact* the dollar amounts of its drug prices, discounts, and rebates from the versions of its Quarterly Reports that it produces in this case.[2]

J&J then asserts that Your Honor previously ruled that the information that SaveOn seeks is irrelevant. Opp. 6. Not so. In a prior motion, SaveOn sought "pricing data" to show the "true

---

[2] J&J asserts that all "Best Price documents are by definition all about the details of drug pricing." Opp. 2. In fact, J&J has produced documents regarding the Best Price Rule that do not contain pricing data. *See, e.g.*, Ex. 16 at 9 (JJHCS_00084277); Ex. 7 (JJHCS_00204199) at -4214 (April 7, 2022); Ex. 8 (JJHCS_00135354) at -5373 (December 15, 2021); Ex. 9 (JJHCS_00135950) at -5970 (March 31, 2022); Ex. 10 (JJHCS_00214452) at -4469 (Mar. 2, 2022).

price[s]" and "net price[s]" of the drugs at issue, *see* Dkt. No. 150 at 7-8, which Your Honor denied based on J&J's representation that it would not introduce evidence regarding its drug prices at trial. Dkt. 192 at 24. Because SaveOn does not seek any pricing data in this motion, let alone "the very same pricing information" that it previously sought, Opp. 6, that ruling has no bearing here.

As explained below, the reality is that SaveOn seeks documents regarding J&J's response to the Best Price Rule because they are relevant to issues in the case. J&J cannot use the false specter of producing pricing data to withhold this information.

## II. J&J Must Produce Documents Regarding Its Compliance with HHS's 2016 Best Price Rule

The 2016 Best Price Rule permits a drug manufacturer to exclude copay assistance funds from its best price calculations "to the extent that manufacturer ensures the program benefits are provided entirely to the patient and the pharmacy, agent, or other entity does not receive any price concession." 42 C.F.R. § 447.505(c)(10). J&J's internal checklists, in which it affirms that "[t]he full value of the [copay] assistance is passed on to the customer," strongly indicate that J&J represented the same facts to the federal government in its required Quarterly Reports, either explicitly or implicitly by reporting drug prices that reflect copay assistance funds going only to patients.[3] Mot. 3-4. Such representations would contradict J&J's allegations in this case—repeated even in its opposition, Opp. 2, 6-7—that SaveOn takes a portion of those funds.

SaveOn seeks discovery to explore this contradiction: (1) J&J's Best Price Quarterly Reports for the drugs at issue and documents going to the basis of J&J's assertions to the government

---

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.*, Ex. 7 (JJHCS_00204199) at -4214 (April 7, 2022); Ex. 8 (JJHCS_00135354) at -5373 (December 15, 2021); Ex. 10 (JJHCS_00214452) at -4469 (Mar. 2, 2022).

5

Case 2:22-cv-02632-CCC-CLW  Document 1362-2  Filed 10/21/24  Page 195 of 207 PageID: 42531
Case 3:22-cv-02632-JKS-CLW  Document 413-2  Filed 10/27/24  Page 6 of 8 PageID: 28531166

Hon. Freda L. Wolfson                                                                                           Page 6

that all its copay assistance funds go to patients; and (2) documents going to the basis of J&J's allegations in this case that some of its copay assistance funds go to SaveOn. Mot. 6-7. Documents showing that J&J knew that SaveOn does *not* receive any portion of its copay assistance funds would show that J&J's accusations are not true and undermine its credibility. *Id.*[4] Documents confirming that none of J&J's copay assistance funds flow to SaveOn, but rather to members of health plans, most of which are subject to ERISA, would show that J&J's claims as to those plans are preempted by ERISA. *See, e.g.*, *Pharm. Care Mgmt. Ass'n v. District of Columbia*, 613 F.3d 179, 185 (D.C. Cir. 2010) (recognizing ERISA preemption for state law claims that affect "the availability of funds for benefit payments"). And documents showing that J&J intentionally did not investigate if any of its copay assistance funds went to non-patients, to avoid having to report such facts to HHS, would show that J&J failed to mitigate its purported damages caused by payments to patients on SaveOn-advised plans. Mot. 10. J&J should produce this relevant information.

J&J's scattered arguments to the contrary are meritless.

*First*, J&J asserts that there is no need to test its allegations about who gets its copay assistance funds because SaveOn purportedly "does not dispute that it makes money by taking copay assistance funds for the benefit of itself and its partners." Opp. 7. In fact, SaveOn strongly disputes this accusation. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *E.g.*, Ex. 30 at -220 (SOSP_0000214)

---

[4] Such evidence could potentially lead the Court to estop J&J from asserting that SaveOn takes any of its copay assistance funds. *See, e.g.*, *McBurrows v. Verizon*, 2019 WL 6908014, at *10 (D.N.J. Dec. 19, 2019) (holding plaintiff "judicially estopped" from "asserting his accommodation claim" for disability discrimination because his submitted social security application represented that he was "not able to work"); *see generally Morton Intern. Inc. v. General Acc. Ins. Co. of America*, 629 A. 2d 831, 876 (N.J. 1993) (recognizing "estoppel doctrine in a regulatory context").

(██████████████████████████). ██████████████████████

██████████████████████████████████████████████. Saving money is not the same thing as "taking" it. By alleging that SaveOn "helps itself and its partners to … JJHCS's patient assistance funds," Opp. 7, J&J put at issue the questions of whether those funds ever flow to SaveOn and whether J&J knows that they do not. The discovery that SaveOn seeks is relevant to that disputed issue.

*Second*, J&J asserts that its Best Price representations under the 2016 Best Price Rule are irrelevant because it "had always understood" that the rule did not require drug manufacturers to report whether copay assistance funds were going to third parties "so long as they intended that all copay assistance go to patients." Opp. 9. This was the litigation position of the collective representing pharmaceutical companies in challenging the 2023 Best Price Rule, but █████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████ Ex. 6 at -7510 (emphasis added).[5] █████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████ Ex. 7 (JJHCS_00204199) at -4213. ██████████████

██████████████████████████████████████████████

---

[5] ████████████████████████████████████████
████████████████████████. Opp. 12 n.3. ███████████
████████████████████████ Ex. 6 at -7510 (JJHCS_00047500). █████
██████████████████████████████████████████████
██████████████████████████████████████████████.

███████████████████████████ At the very least, this is a disputed issue, and discovery is required to determine how J&J interpreted the rule and what it reported.[6]

*Third*, J&J says that its intent-based reading of the 2016 Best Price Rule was validated in *Pharmaceutical Research & Manufacturers of America v. Becerra* ("*PhRMA*"). Opp. 8-9; *see also id.* 12 n.3. This is a distraction. The question in this discovery motion is not legal—which of two competing interpretations of the 2016 Best Price Rule is correct—but factual—how did J&J interpret the 2016 Best Price Rule in practice, and what did it report to HHS in response to that rule. *PhRMA*'s ruling in May 2022 could not have retroactively changed those facts, and ███████

███████████████████████████████████████████████████████████████████████

*See* Ex. 6 (JJHCS_00047500) at -7510. SaveOn seeks these documents not to challenge J&J's legal compliance with the 2016 Best Price Rule in this litigation but to discover the facts of what J&J knew and what it represented about them.[7]

---

[6] Even if the Special Master were to agree with J&J's unsupported assertion that that 2016 Best Price Rule set an intent-based standard, and to further agree with J&J's counterfactual assertion that it always understood that this was the standard, Your Honor should still grant the motion. If J&J learned that any copay assistance funds went to non-patients, it would have had to stop those payments so it could act consistently with its intent. SaveOn is entitled to learn what J&J knew about where its payments went and what it represented to the government about them.

[7] Even if the legal conclusions of the *PhRMA* case were relevant (they are not), J&J fails to show that *PhRMA* sustained the intent-based interpretation of the 2016 Best Price Rule that it offers in its opposition. Plaintiffs in *PhRMA* challenged the 2023 Best Price Rule, not the 2016 rule. *PhRMA*, 2022 WL 1551924, at *5 (D.D.C. May 17, 2022). In ruling on standing, as J&J notes, Opp. 8-9, the court held that the 2023 Best Price Rule's requirement that drug manufacturers "ensure" that copay assistance funds go only to patients was a change from the 2016 Best Price Rule. *Id.* at 4. The court did ***not*** say that the 2016 Best Price Rule excused drug manufacturers from reporting if they knew that some funds went to non-patients or allowed them to conceal such information simply because they *intended* that all the funds go to patients. *See id.*

On the merits, the court enjoined the 2023 Best Price Rule, not because copay assistance funds are "intended to help patients" (as J&J asserts by citing the plaintiffs' own briefing, Opp. 9-10), but

Case 2:22-cv-02632-CCC-CLW Document 412-2 Filed 10/27/24 Page 19 of 20 PageID: 12561
Case 2:22-cv-02632-JKS-CLW Document 360-2 Filed 02/14/24 Page 10 of 17 PageID: 8569
Hon. Freda L. Wolfson                                                                           Page 9

*Fourth*, J&J asks the Special Master to disregard its internal checklists requiring certification that all copay assistance funds go to patients.[8] It asserts that these documents 

Opp. 11, ▮. Ex. 7 (JJHCS_00204199) at -4214 (▮"). Once again, at best, J&J has established that the parties have competing factual interpretations of these relevant documents, showing that SaveOn is entitled to discovery into them. *See In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. 527, 528 (D.N.J. 2015) (Waldor, J.) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). J&J also asserts that it did not

---

primarily because the court read the underlying statute as not requiring drug manufacturers to account for payments to patients at all, as it believed that they were not "eligible entities." *PhRMA*, 2022 WL 1551924, at *6. The court did ***not*** say that drug manufacturers' intent plays any role in their reporting obligations. *See id.* Even if it applied to the 2016 Best Price Rule, moreover, that non-binding ruling from one district court is not a dispositive interpretation of that rule; HHS's position remains "in essence, that the best price calculation must take account of a price made available *from* the manufacturer *to* the commercial health plan *through* an insured patient"—including copay assistance funds. *Id.* at 5 (original emphases). And even were this a binding interpretation of the 2016 Best Price Rule, that rule would still require J&J to report any payments that it knew went to ESI—which is an "eligible entity"—and J&J alleges here that ESI received a portion of those funds. Compl. ¶ 68. In any case, the Special Master should not indulge J&J's demand to resolve these complex legal questions in ruling on this discovery motion; at a minimum, there are disputed factual questions here that underscore the importance of the discovery that SaveOn seeks.

[8] Ex. 7 (JJHCS_00204199) at -4214 (▮ Ex. 8 (JJHCS_00135354) at -5373 (▮); Ex. 10 (JJHCS_00214452) at -4469 (▮). ▮Opp. 11 (citing Ex. 9) but ▮. *See, e.g.*, Ex. 31 at -7538 (JJHCS_00137524) (▮); Ex. 32 at -7559 (JJHCS_00137545) (▮.

submit these checklists to the government, Opp. 11, but this misses the point: ▇

▇

▇ Ex. 7 (JJHCS_00204199)

at -4213,[9] ▇

▇. Discovery is required to determine what J&J said to the government and its bases for doing so.

*Fifth*, J&J claims that it did not make the representations to the government that SaveOn posits that it made. Opp. 12. But J&J then says, carefully, that it did not submit anything to the government that "expressly states" that all its copay assistance funds go to patients. *Id.* Even were this true, J&J could have represented that fact to the government ***implicitly***. The 2016 Best Price Rule required J&J to account for any payments going to non-patients in calculating the prices that it submitted to HHS. If J&J calculated those prices as if all funds went to patients, then it implicitly represented that no funds went to non-patients. This implicit representation would contradict its allegations in this case that some of those funds went to SaveOn, ESI, and their health plan clients.

*Sixth*, J&J says that it is producing documents related to the CAP Program, Opp. 13-18, but this production would not capture the requested documents regarding the 2016 Best Price Rule. To start with, this production excludes the Quarterly Reports, which J&J admits that it withholds.

---

[9] *Compare* Ex. 7 (JJHCS_00204199) at -4214 (▇

▇ *with* 42 C.F.R. § 447.505(c)(10) (2016 Best Price Rule, permitting manufacturers to exclude copay assistance funds from their best price calculations "to the extent that the program benefits are provided entirely to the patient and the pharmacy, agent, or other entity does not receive any price concession").

*Id.* at 17-18. Also—critically—J&J's production excludes custodians involved with J&J's Best Price reports, who are most likely to have documents about the bases for those submissions, and whom J&J refuses to identify.[10] The production also excludes documents from before the beginning of the CAP Program in early 2022, omitting years' worth of documents about J&J's representations to, and relevant communications with, the government and J&J's evaluations of SaveOn and similar entities. The search terms that J&J is using regarding CAP would not capture documents on Best Price in the five years before the CAP Program existed. J&J must identify the relevant custodians and must use reasonable search parameters to search their files for the documents at issue.[11]

*Finally*, J&J briefly asserts that SaveOn's document requests do not cover the documents that it seeks regarding the 2016 Best Price Rule. Opp. 17-18. In fact, they do. SaveOn's RFP No. 79 squarely asks for J&J's Quarterly Reports. Ex. 13 at 12 (SaveOn's Sixth Set of RFPs). SaveOn's RFP No. 70 seeks all documents and communications regarding copay assistance funds counting towards the calculation of best price, Ex. 15 at 11, which easily encompasses the narrower set of documents and communications that SaveOne seeks here about those calculations. Mot. 6-7. To the extent that any of these documents refer directly to SaveOn, or refer to it indirectly by using terms like "maximizer" or "accumulator," *see, e.g.*, Apr. 10, 2024 Order at 2, they are also covered

---

[10] ███████████████████████████████████████████████████████████████████████████████████████████████. Ex. 31 at -541 (JJHCS_00137524); Ex. 32 at -562 (JJHCS_00137545).

[11] SaveOn proposes a single targeted search term to capture these documents: ("HHS" OR (Health /3 "Human Services") OR "CMS" OR ".gov") AND ("Best Price" OR "BP") AND (accumulat* OR maximiz* OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP). Mot. 7. Each document must on its face include a term regarding the relevant agencies; best price; and SaveOn, accumulators, or maximizers.

by SaveOn's RFP No. 8, which seeks all documents relating to SaveOn, Ex. 14 at 12 (SaveOn's First Set of RFPs). In addition to being wrong, J&J's technical arguments are pointless—even if SaveOn's current requests did not cover some portion of the documents at issue, Your Honor could confirm that they are relevant and SaveOn could seek them in a new request.

**III.    J&J Must Produce Documents Regarding Its Response to HHS's 2023 Best Price Rule**

Where the 2016 Best Price Rule required drug manufacturers to report the state of their knowledge regarding whether any of their copay assistance funds were going to non-patients, 42 C.F.R. § 447.505(c)(10), the 2023 Best Price Rule stated that they would have to "ensure[]" that this was so, 85 Fed. Reg. 87049. That is, drug manufacturers could no longer claim that they were permitted to be willfully blind to where their copay assistance funds were going; they would have to affirmatively make sure, for example, that those funds did not go to patients on "accumulator adjustment programs." 85 Fed. Reg. 87050. Under the new rule, ███████████ ███████████████████████████████████████, *see, e.g.*, Ex. 6 at -510 (JJHCS_00047500) (█████████████████████████████████████████████████████████████████████████████████████████), potentially costing it billions. The 2023 Best Price Rule, announced on December 31, 2021, gave drug manufacturers until January 1, 2023, to implement this approach. 85 Fed. Reg. 87057. As J&J acknowledges, the 2023 Best Price rule was "significant" and "controversial." Opp. 8. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Mot. 8-9 (citing Exs. 16-24).

SaveOn seeks limited additional discovery on this topic: It asks that J&J identify individuals with knowledge of J&J's response to the proposed 2023 Best Price Rule and run a single search term across their files.¹² Documents regarding J&J's response to the rule are relevant to SaveOn's affirmative defenses of mitigation, laches, and acquiescence, Mot. 10—J&J's reaction to the 2023 Best Price Rule, which would have no longer allowed drug manufacturers to be willfully blind of copay assistance funds flowing to non-patients, could show that J&J previously had a compelling financial incentive not to investigate whether patients were on SaveOn-advised plans, Ex. 16 (JJHCS_00084277) at -285 (███████████████████████████████████), and that it followed that incentive, failing to mitigate its purported damages and acquiescing to SaveOn's conduct. The documents are also relevant to J&J's understanding of the "other offer" provision underlying its tortious inference claim, which apparently changed along with its reaction to the 2023 Best Price Rule. Mot. 9.¹³

J&J's arguments resisting this discovery are meritless.

---

¹² ("copay" OR "co-pay" or fund* OR manufact*) /20 ("best price" or "BP") /20 (accumulat* OR maximiz* OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP).

¹³ ██████████████████████████████████████████████████████████████████████████████. Opp. 15 (citing J&J Ex. 1 (JJHCS_00224591)). This is not evidence of what J&J knew about where the funds actually went. Nor is it evidence that J&J believed that its "other offer" provision applied to SaveOn's services before the 2023 Best Price Rule came along. Discovery is required on both topics. ████████████████████████████████████████████████████████████████ J&J Ex. 1 at -608, ███████████████ ███████████████ *id.* at -613, contradicting J&J's allegations that "JJHCS funds copay assistance programs like CarePath to ease the burden on patients" Amend. Compl. ¶ 8, and help them "defray their copay costs and more easily afford their life-saving and life-improving therapies, *id.* ¶ 6.

*First*, J&J tries to dismiss the notion that "a never-effective 2023 Best Price Rule may have influenced [J&J's] behavior regarding [SaveOn]." Opp. 13-14. The rule's influence is straightforward. Because the 2016 Best Price Rule required drug manufacturers to report if copay assistance funds went to non-patients but did not require them to investigate whether that was the case, drug manufacturers had an incentive to remain willfully blind to where their funds went. Mot. 8; *see also* Ex. 6 (JJHCS_00047500) at -510. In the 2023 Best Price Rule, HHS eliminated this incentive. It stated that, starting in 2023, drug manufacturers would have an affirmative duty to investigate where their funds went—they would have to "ensure[]" that the full value of copay assistance went to patients. 85 Fed. Reg. 87049. For seventeen months, from when the 2023 Best Price Rule was promulgated on December 31, 2020 until it was enjoined on May 17, 2022, *see PhRMA*, 2022 WL 1551924 at *3, this was the law scheduled to take effect in 2023.[14] It is highly likely J&J reacted to this rule by preparing to implement it.

*Second*, J&J asserts that it is "fanciful" to suggest that its reaction to 2023 Best Price Rule motivated this lawsuit because the purported "damages" that SaveOn caused it were motive enough. Mot. 14. This is exactly SaveOn's point. J&J knew about SaveOn starting in at least 2017. Dkt. 192 at 14. If J&J believed that SaveOn was improperly increasing its copay assistance payments, then J&J had a financial incentive to sue SaveOn years before it did. But it did not. A highly plausible reason why it did not is that J&J had an even stronger financial incentive under the

---

[14] The 2023 Best Price Rule was not a "regulatory proposal." Opp. 14. It was a regulation that became the law on December 31, 2020. 85 Fed. Reg. 87000, 87048 through 87055, and 87102 through 87103. The regulation provided that this law would not become effective until 2023, *id.* at 87053, but the regulation itself was final, *id.* at 87057 ("[W]e are finalizing the proposed rule[.]"). The regulation was originally proposed on June 19, 2020, *id.* at 87000, went through the required notice-and-comment period, and was made final on December 31, 2020. *Id.* at 87057.

2016 Best Price Rule to not investigate whether its copay assistance payments were flowing to SaveOn (or to other non-patients).

Conversely, when it appeared that the 2023 Best Price Rule would eliminate this incentive and give J&J a new incentive to ensure that its copay assistance funds did not flow to so-called "accumulators," 85 Fed. Reg. 87000, 87054, it is highly plausible that J&J reacted in part by bringing this suit against SaveOn, which it internally referred to as an accumulator, Dkt. 166 at 3-4, to try and stop such payments. J&J has produced documents showing that this was likely the case. Mot. 8-9.[15]

*Third*, J&J argues that SaveOn cannot mount its laches affirmative defense because J&J purportedly brought its claims within the relevant statutes of limitations. Opp. 18-19. The Special Master need not reach this argument, as the requested documents are relevant to SaveOn's mitigation and acquiescence defenses. This merits argument is also inappropriate at the discovery stage: J&J could have moved to strike SaveOn's laches defense, *see Eagle View Techs., Inc. v. Xactware Sols., Inc.,* 325 F.R.D. 90, 95 (D.N.J. 2018), but did not, and SaveOn is entitled to discovery relevant to that defense. J&J also misstates the law: As the New Jersey Supreme Court case that J&J cites explains, "if a suit in equity raises claims as to which there is an applicable statute of limitations, there is nevertheless a role for the equitable doctrine of laches," *Fox v. Millman*, 210 N.J. 401, 419 (2012), and J&J here seeks the equitable remedy of an injunction, Compl. at 41 ¶ C; Am. Compl. 206 ¶ C.

---

[15] J&J also suggests that the 2023 Best Price Rule could not have been a motive in bringing this case because it continued the suit, and its CAP Program, after that rule was enjoined. Opp. 14. Of course, J&J could have decided to continue the suit and the program for other reasons, such as deciding that it would be more profitable to reduce its overall level of copay assistance spending. Discovery is required to determine what actually happened.

*Fourth*, J&J asserts that it is already producing documents related to the CAP Program, which it says should capture documents "address[ing] both a Best Price-related issue and CAP or other JJHCS efforts to mitigate harm." Opp. 15 (emphasis removed). The problem with this argument is **custodians**. J&J asks Your Honor to assume that its current custodians are the only ones who would have information regarding J&J's reaction to the 2023 Best Price Rule, but ▉ ▉. *See, e.g.*, Ex. 24 (▉ ▉); Ex. 26 (▉ ▉ ▉). J&J needs to identify the relevant custodians and apply SaveOn's proposed search term to their files.

*Finally*, J&J asserts that SaveOn's RFPs do not cover documents concerning the factual bases of its statements that SaveOn takes copay assistance funds, Opp. 16-17, but they do. RFP No. 8, for example, seeks all documents regarding SaveOn, which covers the documents at issue, and RFP No. 70 specifically asks for documents regarding "the anticipated impact of the 2023 Best Price Rule on JJHCS," Ex. 15 at 11-12 (Nov. 17, 2023 SaveOn's Fifth Set of RFPs). J&J asserts that it "agreed long ago," Opp. 16, to produce documents from twenty custodians in response to RFP No. 8, but SaveOn never agreed that J&J could limit its production to these custodians. To the contrary, when SaveOn has discovered that J&J withheld relevant documents— *e.g.*, failing to disclose its CAP Program, failing to disclose its Benefits Investigations, failing to disclose its predecessor programs in which it drafted the "other offer" provision—or that J&J has failed to designate relevant individuals as custodians—*e.g.*, Scott White, Blasine Penkowski, Karen Lade, Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, L.D. Platt, Alison Barklage, —SaveOn has sought and received additional discovery. Dkt. 173 at 2-3 (CAP program),

at 2 (Kinne, Longbothum, Shontz, Hoffman, Platt, and Barklage); 192 at 11-12 ("other offer"), at 12-13 (benefits investigations), at 27-29 (White, Penkowski, and Lade). J&J should provide the requested discovery here on its reaction to the 2023 Best Price Rule.

       Respectfully submitted,

       /s/ *E. Evans Wohlforth, Jr.*
       E. Evans Wohlforth, Jr.
       Robinson & Cole LLP
       666 Third Avenue, 20th floor
       New York, NY 10017-4132
       Main (212) 451-2900
       Fax (212) 451-2999
       ewohlforth@rc.com

       Philippe Z. Selendy (admitted *pro hac vice*)
       Andrew R. Dunlap (admitted *pro hac vice*)
       Meredith Nelson (admitted *pro hac vice*)
       Elizabeth H. Snow (admitted *pro hac vice*)
       SELENDY GAY PLLC
       1290 Avenue of the Americas
       New York, NY 10104
       (212) 390-9000

       pselendy@selendygay.com
       adunlap@selendygay.com
       mnelson@selendygay.com
       esnow@selendygay.com

       *Attorneys for Defendant Save On SP, LLC*

# EXHIBITS 30-32
# CONFIDENTIAL – FILED UNDER SEAL