# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

May 21, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

      Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
              **No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Defendant Save On SP LLC ("SaveOn") we write in response to Johnson & Johnson Health Care Systems, Inc.'s (with its affiliates, "J&J") May 14, 2024 opposition to SaveOn's April 22, 2024 motion to compel J&J to search for and produce documents responsive to SaveOn's document requests from custodians and non-custodial sources of: Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Scientific Affairs, LLC, Janssen Therapeutics, Actelion Pharmaceuticals US, Inc., Janssen Immunology, Janssen Products, L.P., and Janssen Global Services, LLC (the "Janssen Entities").

SaveOn presented extensive evidence showing that the Janssen Entities are likely to have information relevant to CarePath's terms and conditions ("T&Cs"), J&J's response to SaveOn,

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

and surveys of patients that could show the absence of alleged patient harm. In opposition, J&J first asserts that Judge Waldor previously denied this same request and that SaveOn failed to meet and confer. Neither assertion is true. J&J then tries to characterize SaveOn's request as overbroad and burdensome. In fact, SaveOn's request is tailored to eight Janssen Entities based on clear evidence of their relevance, and J&J fails to show how identifying custodians and producing documents from these entities would be burdensome—especially as J&J has not yet collected the entities' materials and run search terms to determine the number of documents to be reviewed. J&J finally tries to pick apart the extensive evidence supporting SaveOn's motion, but its efforts boil down to implausible readings of its documents and a series of unsupported factual assertions.

Your Honor should grant SaveOn's motion.

## I.      Your Honor May Resolve SaveOn's Motion

### A.      No Prior Order Applies to SaveOn's Request

J&J's primary argument in opposition is that Your Honor need not reach the substance of SaveOn's motion because Judge Waldor's prior orders supposedly foreclose the motion. J&J asserts that SaveOn purportedly has sought this same relief three times already, citing decisions from March, June, and October of 2023, Opp. 6-8, 9-10, and describing the motion as "an issue resolved three times prior by Judge Waldor," *id.* at 6.

A review of the record shows that this is not true.

On February 24, 2023, SaveOn moved to compel J&J to "identify all J&J entities involved in the development, marketing, or administration of CarePath or the development and marketing of Janssen drugs" and "produce relevant documents from all such J&J entities." Dkt. 79 at 19. In J&J's telling, Judge Waldor "denied SaveOnSP's motion" because she believed SaveOn's request "was 'awfully broad[,] not just temporally but otherwise.'" Opp. 6 (citing and quoting Mar. 17, 2023 Hr'g Tr. at 34:2-6). In fact, after counsel for J&J promised to produce documents

relating to J&J's alleged injuries, Mar. 17, 2023 Hr'g Tr. at 31:25-33:23, Judge Waldor declined

to rule on SaveOn's motion until after J&J made that production:

> THE COURT: … So what I think, Mr. Dunlap and Ms. Nelson, **this
> is a premature request. I am not going to rule on it**. I'll hear further
> argument once Mr. Sandick produces what he said he's going to
> produce and we can get a little more specific.
>
> I will tell you that I think it's an awfully broad not just temporally
> but otherwise broad request. I understand the background and the
> basis for the request, but **as I said**, not – **it's premature. Let's see
> what Mr. Sandick produces. And let's see if you can modify and
> streamline your arguments to me and your requests after that**.

Mar. 17, 2023 Hr'g Tr. at 34:1-10 (emphases added). Far from "den[ying]" SaveOn's request for

non-JJHCS documents, Opp. 6, Judge Waldor specifically invited SaveOn to ask for such docu-

ments; she simply encouraged SaveOn to "streamline" those requests after J&J made its produc-

tion.

In early June 2023, J&J said that it had substantially completed its document production of

discovery related to "financial documents and CarePath's terms and conditions," Ex. 84 (June 15,

2023 Email); it produced essentially no documents from entities outside of JJHCS. After reviewing

that production, SaveOn did not at that point seek to compel production of non-JJHCS documents;

instead, as the first step toward narrowing its requests for such documents, SaveOn moved on

June 23, 2023 to compel J&J to "identify individuals with relevant knowledge and to produce

documents from relevant custodians and non-custodial sources... for non-JJHCS entities." *See* Dkt.

122 at 5. In J&J's telling, Judge Waldor "rejected this extremely broad request" to identify non-

JJHCS individuals and "granted only a narrow form of relief." Opp. 7 (citing Dkt. 127 and June

27, 2023 Hr'g Tr. at 97:2-3). In fact, Judge Waldor asked SaveOn's counsel to clarify the relief

that SaveOn sought, and then granted it:

> THE COURT: I want to know specifically what you want him to do
> -- one, two, three.

MR. DUNLAP: I want him to conduct a reasonable investigation.

THE COURT: What do you mean by that?

MR. DUNLAP: I -- well, he has to talk to the folks at JJHCS about who they seek approvals for, coordinate, work with, the key topics in the case.

And I want him to talk to people at Janssen, however that's organized, about anything they do regarding CarePath or SaveOn.

And from there, I want him to answer the interrogatories without the restriction of JJHCS. And I want him to identify custodians who may have relevant materials outside of JJHCS.

Then we can negotiate about with which of those additional individuals become custodians --

…

THE COURT: ***I'm going to order you [J&J] to do exactly what he's outlining***.

June 27, 2023 Hr'g Tr. at 87:19-88:13 (emphasis added). In the portion of the transcript cited by

J&J, J&J's counsel asked Judge Waldor to narrow the scope of her order, and she refused:

THE COURT: … I'm making you do an investigation and find out if there are crossover or integrated -- I don't know if that's the right word -- people --

MR. SANDICK: We'll do that, Your Honor. And I think our specific focus, if it meets Your Honor's approval, will be things that have been specifically identified. This meeting of the JALT group in December --

THE COURT: No, he [SaveOn's counsel] wants you to do a full investigation.

MR. SANDICK: I understand that. But I think you -- as you've heard, we think we already have done what we were required to do here. We're now going back to do more because we want to be mindful of Your Honor's --

THE COURT: ***No, because I'm ordering you to do that and I'm the judge.***

June 27, 2023 Hr'g Tr at 97:3-17 (emphasis added); *see also id*. at 98:24-99:3 ("THE COURT: …

Answer the interrogatories … *If you're going to say you are not going out of Johnson Health Systems, you can't say that. That's not a good answer.*" (emphasis added)). In granting this request, Judge Waldor could not have "rejected" "the same type of broad relief [SaveOn] seeks here," as J&J asserts, *see* Opp. 6-7, because SaveOn did not seek documents, as it does now.

On October 11, 2023, after reviewing J&J's compelled supplementary interrogatory responses, SaveOn moved to compel J&J to further supplement those responses to "identify[] individuals who participated in decision-making on the topics identified in those Interrogatories." Dkt. 162 at 4. Judge Waldor denied that motion, finding that J&J had "complied with [the June] Order." Dkt. 173 at 2. J&J's assertion that, in not requiring further interrogatory responses, Judge Waldor "made clear" that she "considered this issue of discovery from non-JJHCS custodians to now be comprehensively resolved," Opp. 8, is nowhere close to true. To the contrary, at the same conference, Judge Waldor granted SaveOn's motion to compel J&J to add three new non-JJHCS custodians—John Hoffman, L.D. Platt, and Alison Barklage,[1] Dkt. 173 at 2—and deferred decision on its motion to compel two more—Scott White and Karen Lade,[2] Oct. 30, 2023 Hr'g Tr. at 119:17-24—whom Your Honor later compelled J&J to add in February 2024, Dkt. 192 at 28-29.

_____

[1] *See* Ex. 85 at 7 (JJHCS_00066692) (showing ███████████████████████ Ex. 20 at -407 (███████████████████████████████████████████████ at -419 (JJHCS_00132407) (showing ██████████████████████████████ (Exhibit 20 includes just JJHCS_00132407 and JJHCS_00132419, which are part of a larger family).); Ex. 86 at -150.0004 (JJHCS_00168150) (██████████████████████████████████████████████████████ ██████████████████████████████████

[2] Ex. 15 at -688 (JJHCS_00002688) (showing ██████████████████████████); Ex. 87 at -975 (JJHCS_00025974) (showing █████████████████████████.); *see also* Ex. 88 at -542.0002 (JJHCS_00001542) (showing ████████████████ ██████████████████████████████████████████).

As this record shows, at no point did Judge Waldor deny the relief that SaveOn seeks here. SaveOn moved generally for non-JJHCS documents once before; Judge Waldor declined to decide that motion, encouraging SaveOn to return with narrower requests. SaveOn did just that, returning with a request to add five specific non-JJHCS custodians. In granting that request, Judge Waldor and Your Honor credited evidence that these individuals were deeply involved with matters at issue, rejecting J&J's assertions that they would not have unique relevant documents. Dkt. 173 at 2; Dkt. 192 at 28-29. SaveOn now similarly asks Your Honor to compel J&J to search the eight specific Janssen Entities, based on extensive evidence of their involvement with key issues.

## B.     The Parties Have Met and Conferred

J&J accuses SaveOn of "fail[ing] to confer" before filing its motion because SaveOn did not continue negotiations after J&J confirmed its position in a February 13, 2024 letter that it would not search for documents outside of JJHCS. Opp. 8; *see also id.* 1, 6, 9, 10.

This is misleading and ignores the full discovery record.

In its Fourth Set of RFPs, SaveOn sought documents on benefits investigations and data that J&J or a J&J Hub Entity paid for from Accredo, which might have allowed J&J to identify patients on SaveOn-advised plans. Ex. 89 at 11 (Oct. 20, 2023 SaveOn's Fourth Set of RFPs). In its November 20, 2023 responses and objections, J&J objected to searching for documents in the possession of any entity other than JJHCS. Ex. 90 at 4 (Nov. 20, 2023 J&J R&Os to SaveOn's Fourth Set of RFPs).[3]

---

[3] J&J asserts that it "has worked with SaveOnSP to produce documents from select non-JJHCS custodians in instances where SaveOnSP could demonstrate their relevance." Opp. 9. In fact, J&J voluntarily added a single non-JJHCS custodian—Silas Martin—for whom it agreed to run very limited search terms in response to a single document request Ex. 91 at 8 (Sept. 11, 2024 Ltr.). Otherwise, J&J has refused to add any non-JJHCS custodian unless compelled to do so by the Court.

This was surprising, as Judge Waldor had, in February, invited SaveOn to make narrowed requests for non-JJHCS documents, Mar. 17, 2023 Hr'g Tr. at 34:1-10; in June had ordered J&J to identify individuals with knowledge outside of JJHCS, Dkt. 127; and in October had ordered J&J to add three non-JJHCS custodians, Dkt. 173 at 2. To ensure that this was not an outdated boilerplate objection, SaveOn asked J&J to "confirm that ... JJHCS will search for relevant documents within Janssen." Ex. 92 at 1 (Dec. 15, 2023 Ltr.). J&J replied that it stood by the objection, stating that "JJHCS is the sole relevant J&J entity involved in the development, marketing, or administration of CarePath." Ex. 93 at 2 (Jan. 2, 2024 Ltr.). J&J repeated this same objection in response to additional document requests. *See* Ex. 94 at 4 (Dec. 18, 2023 J&J R&Os to SaveOn's Fifth Set of RFPs); Ex. 95 at 5 (Jan. 29, 2024 J&J R&Os to SaveOn's Sixth Set of RFPs).

The parties met and conferred on January 29, 2024 at SaveOn's request. SaveOn asked again if J&J would search for and produce documents outside of JJHCS. *See* J&J Ex. 2 at 1 (Feb. 5, 2024 Ltr.). J&J stated again that it would not. *See id.* In a February 5, 2024 letter, SaveOn explained that "[d]ocuments J&J that has produced to date and its interrogatory responses show that JJHCS is not the sole relevant J&J entity," citing numerous documents produced in discovery, J&J's R&Os, and Your Honor's then-recent order compelling J&J to add additional non-JJHCS employees as custodians. *See id.* at 1-2.

J&J then sent a letter, stating, again, that "JJHCS is the sole relevant entity within Johnson & Johnson with respect to the development, marketing, and administration of CarePath," Ex. 2 at 1 (Feb. 13, 2024 Ltr.), asserting that Judge Waldor had already ruled that J&J need not produce documents from non-JJHCS entities, *id.*, and calling SaveOn's citation of documents showing that non-JJHCS individuals were involved with relevant topics an attempt "to relitigate issues that have already been foreclosed by prior orders," *id.* at 2.

It was only after these negotiations, and J&J's flat refusal, repeated multiple times, to produce any additional documents from non-JJHCS entities, that SaveOn moved to compel J&J to produce documents from the Janssen Entities. While J&J now complains that SaveOn did not propose specific non-JJHCS custodians, and complains that SaveOn waited too long to move, Opp. 8, J&J does not say that naming non-JJHCS custodians or moving sooner would have changed its blanket refusal to add any more non-JJHCS custodians—to the contrary, J&J reaffirms that refusal in its opposition. Opp. 3 ("JJHCS is the plaintiff in this lawsuit and it is the sole legal entity with the responsibility for operating and administering Janssen CarePath, the copay support program central to this lawsuit.").

As the discovery record shows, the parties have met and conferred, they are at a clear impasse, and SaveOn's motion is ripe for review.

## II.     The Janssen Entities Are Likely to Have Relevant Documents

### A.     SaveOn's Motion Is Tailored to the Janssen Entities

J&J asserts that SaveOn's motion is "overbr[oad]," Opp. 24, calling it a "fishing expedition," *id.* at 6, 8, a "scattershot approach to non-JJHCS discovery," *id.* at 10, and "a sweeping request for relief that would require JJHCS to go down a blind alley with no obvious stopping point," *id.* at 1. Not so. SaveOn's motion is limited to the eight specific Janssen Entities. The relief that SaveOn seeks is targeted at individuals employed at those entities with knowledge of relevant issues, not at everyone who works there. SaveOn is also decidedly not fishing—it bases its motion on extensive evidence that these entities were heavily involved with key issues in the case.[4]

---

[4] It is thus irrelevant that "J&J is one of the largest health care companies in the world," with "over 200 corporate entities in the J&J family of companies" and "over 140,000 employees around the globe," "[v]irtually none [of whom] has anything to do with CarePath, copay support, or any of the issues relevant to this lawsuit." Opp. 3. SaveOn's motion, limited to the Janssen Entities that

J&J also says that SaveOn's motion imposes an "immense burden" and raises "proportion-ality concerns," Opp. 8-9, *see also id.* at 10, but it does not explain why this is so. If SaveOn's motion is granted, J&J will have to identify individuals at the Janssen Entities who are likely to have responsive documents. J&J does not assert that this investigation would be burdensome. Once J&J identifies these individuals, it will have to gather their documents and run its search terms. J&J also does not assert that this gathering process would be burdensome; J&J has done the same for other custodians and proposed custodians. With hit counts in hand, the parties will then have to discuss which of these individuals should become custodians and which search parameters J&J should use to search their files and the Janssen Entities' non-custodial sources. If the parties cannot agree, they can then litigate any concerns that J&J might raise about burden or proportionality based on evidence of the actual burden involved. But there is no ground to deny or limit SaveOn's request now based on a burden that J&J has not explained or quantified.

**B.    Discovery Shows that Each of the Janssen Entities Was Involved with Key Issues in this Case.**

SaveOn laid out, in detail, evidence that the Janssen Entities were involved with CarePath's T&Cs, Mot. 3-5, were involved with J&J's response to accumulators, maximizers, and SaveOn, *id.* at 5-11, and have information relevant to J&J's allegations of patient harm, *id.* at 11-15.

---

demonstrably were involved with such issues, does not seek documents from employees at other J&J entities. While J&J characterizes the Janssen Entities as "nonparty affiliates throughout the J&J family of companies," *id.* at 2, all of the Janssen Entities and JJHCS are housed within Johnson & Johnson Innovative Medicine, previously known as the Janssen Pharmaceutical Companies of Johnson & Johnson. *Supplemental Privacy Notices*, JOHNSON & JOHNSON INNOVATIVE MED., https://www.janssen.com/us/privacy-policy#supplemental (last visited May 21, 2024); *Janssen is Now Johnson & Johnson Innovative Medicine*, JOHNSON & JOHNSON INNOVATIVE MED., https://www.janssen.com/johnson-johnson-innovative-medicine (last visited May 21, 2024).

SaveOn identified 33 individuals involved with these topics as being employed by one of the Janssen Entities.[5] J&J does not deny the employment at Janssen Entities of 24 of them.[6] *See* Opp. 10. J&J asserts that the other nine individuals were employees of JJHCS *id.* 10 & n.5. The discovery record strongly indicates that these nine individuals were employees of Janssen Entities—including multiple documents listing those entities in their signature blocks.[7] J&J provides no evidence to counter these documents.

J&J asks Your Honor to ignore the extensive documentary evidence backing SaveOn's motion by offering its own benign interpretations of various documents. But the documents more than plausibly show—both individually and in aggregate—that each Janssen Entity was involved with the topics at issue. This is easily enough to grant SaveOn's motion under the liberal discovery

---

[5] Aarti Patel, Arsalan Khan, Audrey Walker, Bridget Doherty, Bryan Weinlein, Camille Dorsey, Cecilia Trybus, Claudia Adomah, Dana Huettenmoser, Elizabeth Kreul-Starr, Gabrielle Geonnotti, Jane Frechette, Karen Lade, Kassandra Cruz, Katie Hanculak, Kay Sadik, Kevin Kleemeier, Lauren Hahn, Matthew Saggese, Melissa Shideleff, Michael Ingham, Michelle Barnard, Mitch Akright, Neeta Tandon, Robert A. Bailey, Shelly Orlacchio, Silas Martin, Steven Zona, Sylvia Shubert, Thao Marzullo, Tracey Atwood, Walid Tahir, and William Stone.

[6] Aarti Patel, Arsalan Khan, Audrey Walker, Bridget Doherty, Camille Dorsey, Claudia Adomah, Dana Huettenmoser, Gabrielle Geonnotti, Jane Frechette, Karen Lade, Katie Hanculak, Kay Sadik, Kevin Kleemeier, Melissa Shideleff, Michael Ingham, Mitch Akright, Neeta Tandon, Robert A. Bailey, Shelly Orlacchio, Silas Martin, Steven Zona, Sylvia Shubert, Thao Marzullo, Tracey Atwood.

[7] Michelle Barnard was employed at Janssen Pharmaceuticals, Inc. Ex. 32 at -523 (JJHCS_00162523). Elizabeth Kreul-Starr was employed at Janssen Biotech, Inc. Ex. 36 at -073 (JJHCS_00045073). Walid Tahir was employed at Janssen Immunology. Ex. 40 at -218 (JJHCS_00194218). Matthew Saggese was employed at Janssen Biotech, Inc. Ex. 41 at -853 (JJHCS_00181853). Cecelia Trybus was employed at Janssen Biotech, Inc. Ex. 43 at -843 (JJHCS_00157843). Kassandra Cruz was employed at Janssen Biotech, Inc. Ex. 44 at -173 (JJHCS_00120170). Lauren Hahn was employed at Janssen Biotech, Inc. Ex. 45 at -302 (JJHCS_00182302). Bryan Weinlein was employed at Janssen Therapeutics. Ex. 52 at -499 (JJHCS_00114498). William Stone was employed at Janssen Biotech, Inc. Ex. 53 at -042 (JJHCS_00110039).

standard. *AdvanSix Inc. v. Allianz Glob. Risks US Ins. Co.*, 2023 WL 179963, at *2 (D.N.J. Jan. 13, 2023) (Waldor, J.); *see also* Dkt. 192 at 6.

### 1.    Janssen Biotech, Inc.

Janssen Biotech, Inc. ("Biotech") sells ten drugs at issue in this case, including Stelara and Tremfya.[8] As SaveOn showed in its opening motion, ███████████████████████



████████████████████, Ex. 3 at -166 (JJHCS_00225165); Ex. 5 at -841, -842, -844 (JJHCS_00195841, JJHCS_00195842, JJHCS_00195844) (████████████████████████ ████████████████████████████████████████); Ex. 6 at -001 (JJHCS_00196999); Ex. 39 at -492-94 (JJHCS_00130492); Ex. 11 at -169 (JJHCS_00119169); Ex. 12 at -639 (JJHCS_00139616); Ex. 13 at 8 (JJHCS_00002710); ████████ ████████████████████████████ Ex. 16 at -274-75 (JJHCS_00221274); Ex. 56 at -733-736, (JJHCS_00118732); Ex. 57 at -969 (JJHCS_00034969); Ex. 83 at -664 (JJHCS_00002662);[9] ████████████████, Ex. 27 at 6, 8-9, 11-13 (JJHCS_00002700) (████ ███████████████████████████████████████████████████████████████████████

---

[8] Darzalex, Darzalex Faspro, Remicade, Rybrevant, Simponi, Simponi Aria, Stelara, Tremfya, Zytiga, Imbruvica, and Erleada. *See* Ex. 96 at -709 (JJHCS_00104708) ("Janssen Biotech, Inc., the maker of ERLEADA"); *Drug Pricing Investigation: Abbive—Humira and Imbruvica,* COMMITTEE ON OVERSIGHT AND ACCOUNTABILITY DEMOCRATS, https://oversightdemocrats.house.gov/sites/evo-subsites/democrats-oversight.house.gov/files/Committee%20on%20Oversight%20and%20Reform%20-%20AbbVie%20Staff%20Report.pdf at i ("AbbVie and its partner Janssen Biotech, Inc., a Johnson & Johnson subsidiary, are the sole U.S. manufacturers of Imbruvica[.]"); *NDC database file – Excel Version, National Drug Code Directory*, U.S. FOOD & DRUG ADMIN., https://www.accessdata.fda.gov/cder/ndcxls.zip (naming Janssen Biotech, Inc. as the "labeler" for each drug); *National Drug Code Database Background Information*, U.S. FOOD & DRUG ADMIN., https://www.fda.gov/drugs/development-approval-process-drugs/national-drug-code-database-background-information, (defining a "labeler" as "any firm that manufactures . . . or distributes (under its own name) the drug.").

[9] In its opening brief, SaveOn errantly referred to Exhibit 83 to as "Ex XX at -664 (JJHCS_00002662)," Mot. 11, and failed to attach it. That exhibit is attached to this reply.

██████████████████████).

    Among other things, █████████████████████████████████████,

Ex. 15 at -688 (JJHCS_00002688), ███████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████. Ex.

16 at -275 (JJHCS_00221274). ███████████████████████████████████

███████████████████████████████████████████████████████████.

Ex. 55 (JJHCS_00159266); Ex. 56 at -734 (JJHCS_00118732); Ex. 57 at -969 (JJHCS_00034969);

Ex. 83 at -664 (JJHCS_00002662).

    J&J fails to rebut this evidence.

    *First*, J&J asks Your Honor to ignore "signature block" documents that identify individuals

as working at Biotech, asserting that they "prove nothing at all." Opp. 15; *see also id.* at 20. In fact,

these documents help show Biotech's involvement with key subjects. Exhibit 4, for example,

██████████████████████████████████████. Ex. 4 at -138 (JJHCS_00157137). Exhibit 4

thus ██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████. Ex. 5

(JJHCS_00195841) at -841, (JJHCS_00195843) at 17. Biotech was part of those discussions.[10]

———————————

[10] Documents identifying individuals' employers in their signature blocks are especially relevant to determining where they worked because, as J&J explains, "[a]ll J&J employees, regardless of the legal entity that formally employs them, have email addresses at the same domain name (its.jnj.com). There is no way to identify the J&J legal entity with responsibility for administering a given program based solely on email addresses . . . Nor does the bracketed identifier following an employee's email address, e.g. the '[JANUS]' referring to Janssen Research & Development US in 'jsmith@its.jnj.com [JANUS]', provide definitive information concerning that employee's

*Second,* J&J asks Your Honor to ignore documents bearing Biotech's logo, asserting that branding a document with an entity's logo "do[es] not suggest that the entity was actually involved in the managerial work ... discussed in the underlying document." Opp. 12. Yes, it does: An entity's brand on a document is a strong indication that the document originated at that entity and that the entity was involved in creating it. J&J can argue differently to the fact-finder later, but this is not a basis to resist discovery now; a "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation," *In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. 527, 528 (D.N.J. 2015) (Waldor, J.) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)), and "allows each party to have a fair opportunity to present an effective case at trial," *id.*



J&J tries to rebut this showing by pointing to ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ and asks Your Honor to ignore that ▮▮▮▮▮▮ because, it says, they ▮▮▮▮▮▮. Opp. 13-14 (discussing SaveOn Exs. 13 and 14). But J&J has produced over a hundred documents from ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.*, Ex. 97 at -707 (JJHCS_00002706) (▮▮▮▮ ▮▮▮▮▮▮); Ex. 98 at -152 (JJHCS_00182152) (▮▮▮▮▮▮ ▮▮▮▮); Ex. 99 at -405 (JJHCS_00073405) (▮▮▮▮ ▮▮▮▮h). ▮▮▮▮. *See, e.g.*, Exs. 11, 13, 14, 27, 30. This strongly indicates that, J&J's assertions notwithstanding, ▮▮▮▮▮▮

---

role." Opp. 4-5 & n.4. SaveOn thus does not rely on email domains or "the bracketed identifier" to show any person's employment at a Janssen Entity; it cites signature blocks.

██████████████████████████████████████████████████████. While Pennington herself is

already a custodian, her involvement with these issues shows that her employer, Biotech, was

involved, indicating that other Biotech employees were likely working on the same subjects.

*Third*, J&J asks Your Honor to ignore work orders signed by Biotech employees, asserting

that such a signature "proves nothing about whether non-JJHCS employees actually handled the

engagement or did any relevant substantive work." Opp. 14. Yes, it does: The fact that an entity

signed a work order strongly indicates that the entity was involved with the work done pursuant to

that contract. Exhibit 6, for example, ████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████. Ex. 6 at -999, -001 (JJHCS_00196999) (████████████████████████████

████████████████████████████████████████████████████████████████████

██████████). This indicates that Biotech was involved with analyzing the T&Cs.

J&J asks Your Honor to ignore this evidence and instead conclude that all Archbow's work

was done for JJHCS. It points to ███████████████████████████████████████

████, Opp. 14-15 (citing Ex. 6 (JJHCS_00196999))—but this indicates that ██████████████

████████████████████████████. (If anything, ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████.)

J&J also points to a statement in Exhibit 19 that a ████████████████████████████

██████████████████████████████████ Opp. 18—but the document ████████████████

████████████████████████████████████████████████████████████████████

████████████████ Ex. 19 at -622 (JJHCS_00141621) and ████████████████████████

████████████████, Ex. 19 at 1 (JJHCS_00141620), indicating that Jeffcoat was soliciting the

work and proposal for ███████████████ .

  *Fourth*, J&J asks Your Honor to ignore emails in which ███████████████

██████████████s, saying that these "bystander" materials do not show that the recipients

"play[ed] an evident role in drafting, or even commenting" on the subject matter. Opp. 15; *see also*

*id.* at 18-19. The documents that J&J discusses show otherwise:



- Exhibit 5 shows ████████████████████████

██████████████████████████████████████

████████████████████████████████ .  Ex. 5

(JJHCS_00195841)  at  -841,  (JJHCS_00195842)  at  17-18,  28-32,

(JJHCS_00195844) at 21-25, 30-31 ("████████████████████

████████████████████).  While J&J calls Hanculak a ███████████

███████"  Opp. 15, █████████████████████████████

████████████████████████████████████████

T&Cs. Ex. 5 at -841 (JJHCS_00195841).[11]



- Exhibit 35 shows that ████████████████████████

████████████████████████████████  (which

J&J considers SaveOn to be, Jan. 24, 2024 Hr'g Tr. 108:4-6, 131:14-21), a████████

████████████████████████ . Ex. 35 at -624 (JJHCS_00132624). J&J con-

cedes  that  this  "███████████"  "involve[ed]  the  ████████████████

████████████,"  Opp. 19 n.8, conceding Biotech's involvement—████████

---

[11] In this argument, J&J asserts that Katie Hanculak was a "Janssen Pharmaceuticals employee."
Opp. 15. As noted above, Exhibit 4 ██████████████████████████ . Ex. 4 at -138
(JJHCS_00157137).



Ex. 35 at -624 (JJHCS_00132624).[12]

- Exhibit 55 shows that ███████████████████████████
  ████████████████████████████████████. Ex. 55
  (JJHCS_00159266). J&J says that this email ██████████████████
  █████████████████████████████████████████████████
  ██████████████████ Opp. 20. But the document shows that ███████
  █████████████████████████████████████████████████
  █████████████████████████ Ex. 55 at -266
  (JJHCS_00159266). Whether the email ██████████████████ misses the
  point—the evidence of the discussions █████████████████████.

- Exhibit 59 shows ███████████████████████████████
  █████████████████. As J&J tells it (1) this ██████████████████
  █████████████████████████████████, Opp. 19; (2)
  although ████████████████████████," █████████████████
  █████████████████████████████████████████████
  ███████████████████████" *id.*; and (3) the ██████████████████
  █████████████████████████████████████████████████
  ███████████████████ *id.* at 19-20. In reality, ████████████████
  █████████████████████████████████████████████████
  ███████████████████████e, Ex. 59 at -910 (JJHCS_00219908).

---

[12] J&J argues that Exhibit 35 does not present a basis to add additional members of the JALT as custodians. Opp. 19 n.8. The JALT is not one of the Janssen Entities at issue in this motion.

From there, 

*Id.* at -909.

. This shows Biotech employees in the mid-

dle of discussions about SaveOn.

*Fifth,* J&J accuses SaveOn of misrepresenting several exhibits. Opp. 16, 21-22. Not so:

- Exhibit 16 shows 

Ex. 16 at -275, -278-79 (JJHCS_00221274).

*Id.* at -275

(JJHCS_00221274). J&J accuses SaveOn of misrepresenting this document as

showing that non-JJHCS employees were "involved in the development or man-

agement of the CAP Program." Opp. 22. In fact, SaveOn cited this and other docu-

ments as evidence that

Mot. 5-6 (emphasis added)—Exhibit 16

---

[13] Ex. 100 at -445-46 (JJHCS_00183445).

shows that ███████████████████████████████████████████████

███████████████████████████████████ Remarkably, J&J says that Exhibit 16 ████

████████████████████████████████████████████████████████

███████████████████████████████████ Opp. 22. In fact, Exhibit 16 ████████

████████████████████████████████████████████████████████

███████████████████████████████. Ex. 16 at -275, -278-80

(JJHCS_00221274). This email chain is hardly about a ████████████t"—a ver-

sion of this same chain led Your Honor to compel JJHCS to add Lade as a custo-

dian, Jan. 24, 2024 Hr'g Tr. at 130:18-25 (citing Exhibit 11 to the Dec. 28, 2023

Mot., here Exhibit 101 (JJHCS_00141359)); 131:22-24 ("This is someone who you

should be getting documents from.").

- Exhibit 39—the document bearing the Bates stamp JJHCS_00130492—is, as

  SaveOn described it, "████████████████████████████████████████

  ████████████████████████████████████████████████████████

  ████████████████████████████████████████████████████████

  ████████████████████████████████ Mot. 4. On page 4 of its opening motion,

  SaveOn accurately cited this document's Bates number but errantly cited the wrong

  exhibit number—citing Exhibit 10 instead of Exhibit 39. This partial citation error

  is not a "misrepresent[ation]" of the underlying document. *See* Opp. 16.

- Exhibit 51 shows ████████████████████████████████████████████

  ███████████████████████████████████," Ex. 51 at -648-49

  (JJHCS_00002647). J&J asserts that ████████████████████. Opp. 22. But

  ████████████████████████████████████████████████████████



███████████████████████████████████

█████ Ex. 52 at -499 (JJHCS_00114498), and ██████████

███████████████████████████████████

█████, Ex. 102 at -791 (JJHCS_00002790).

• Exhibits 56 and 57 show that ████████████████████

███████████████████████████████████

████████████ Mot. 10-11; *see also* Ex. 56 at -734-35, -736

(JJHCS_00118732); Ex. 57 at -969-71 (JJHCS_00034969). J&J says that the ███

███████████████████████████████████

█████████████████████████████" Opp. 21.

If that were all they said, the documents would still show that ████████████

████████████████████," Mot. 10, even if they

then passed that feedback on to others. But the documents show that ██████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

█████████████████████████ Ex. 56 at -733

(JJHCS_00118732), and, in ███████████████████████

█████ Ex. 83 at -664 (JJHCS_00002662) ("███████████████

███████████████████████████████████

███████████████████████████████████

███████████████).

*Finally*, J&J asks Your Honor to ignore Exhibit 3, which SaveOn cited for the proposition

Hon. Freda L. Wolfson                                                    Page 20

that "█████████████████████████████████████████████████████

████████████████ Mot. 3 (citing Ex. 3 at -166 (JJHCS_00225165)) (emphasis removed).

J&J asserts that Exhibit 3 does not discuss the T&Cs, ████████████████████████████

██████████████████████████████████ Opp. 15-16 (quoting Ex. 3). In fact,

Exhibit 3 discusses ████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████ . *See* Ex. 3 at -168 (JJHCS_00225165) ("█

█████████████████████████████████████████████████████████

████████████████████████████████████ The document also shows

█████████████████████████████████████████████████████████

████████████████ . *Id.* at -166.

█████████████████████████████████

### 2.   Janssen Immunology

Janssen Immunology ("<u>Immunology</u>") was involved in assessing whether patient harm re-

sulted from copay accumulators or maximizers. Ex. 103 at -966.0017 (JJHCS_00130966)[14] (█

████████████████████████████████████████ ) and ████████

█████████████████████████████████████████████████████████

████████████████████████████ Ex. 34 at -252 (JJHCS_00130245). Immunology

was also involved in assessing the "████████████████████ and implementing solutions. Ex. 38

(JJHCS_00159199); Ex. 49 (JJHCS_00119847).

J&J fails to rebut this showing.

---

[14] In its opening brief, SaveOn's errantly described Exhibit 29 as JJHCS_00139659 instead of JJHCS_00130966. Mot. 8 Ex. 29; SaveOn attaches JJHCS_00130966 as Ex. 103 here.

*First,* J&J wrongly states that Exhibit 34 ████████████████████████████████

██████████████████████████████ Opp. 18-19—in fact, it shows that ███████████████

███████████████████████████████████████████████████████ Ex. 34 at -247

(JJHCS_00130245). J&J also asserts that █████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████. Ex. 34 at -284 (JJHCS_0013245) (███████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████ 1); *see also id.* at -286 (████████████████████████

███████████████████████). Similarly, J&J asserts that Exhibit 38 shows █████████████

██████████████████████████████████████████████████████████████████████████

███████████████████████████████" Opp. 20. That is not what it shows. In fact,

██████████████████████████████████████████████████████████████████████████

█████████████████████ ██████████████████████████████████ Ex. 38 at -

199 (JJHCS_00159199). █████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.*

*Second,* J&J says that some exhibits are "signature block documents" that are "otherwise

irrelevant to CAP" beyond identifying which entities individuals worked for. Opp. 20. J&J does

not dispute that the documents █████████████████████████████████████████████

█████████████████████████████████████. Exhibit 33 shows that ████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

---

[15] J&J asserts that ███████████████████ but Ex. 40 at -218 (JJHCS_00194218) leads us to
believe that ██████████████████████████████████."

Hon. Freda L. Wolfson                                                    Page 22

██████████████████████████████████████████████████████████████

████████.” Ex. 33 at -341 (JJHCS_00145337). And by showing that ████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████ Ex. 49 (JJHCS_00119847) ████████

████████████████████████████████████).

 *Third*, J&J asks Your Honor to ignore Exhibit 49, which ██████████████████

███████████████████████████████████████ Mot. 9 (citing Ex. 49

(JJHCS_00119847)). J&J says that the document shows merely that ██████████████

████████████████████████████ Opp. 20. J&J thus concedes that ████████

████████████████████████████. While J&J ███████████████████████

█████████████████████████ that question goes to the heart of this case—how J&J reacted to

accumulators, maximizers, and SaveOn.

### 3.   Janssen Pharmaceuticals, Inc.

 Janssen Pharmaceuticals, Inc. ("<u>Pharmaceuticals</u>") makes Ponvory and Invokana, two

drugs at issue.[16] It also █████████████████████████████████████████████

███████████████, Ex. 8 at -163 (JJHCS_00051161), and was ███████████████████

████████████████, Ex. 39 (JJHCS_00130492). Pharmaceuticals employee ███████████

---

[16] *See* Ex. 7 at -830 (JJHCS_00060829) (███████████████████████████████████████

████████████████); *NDC database file – Excel Version, National Drug Code Directory*, U.S.
FOOD & DRUG ADMIN., https://www.accessdata.fda.gov/cder/ndcxls.zip (naming Pharmaceuticals,
Inc. as the "labeler" for Ponvory); *National Drug Code Database Background Information*, U.S.
FOOD & DRUG ADMIN., https://www.fda.gov/drugs/development-approval-process-drugs/na-
tional-drug-code-database-background-information, (defining a "labeler" as "any firm that manu-
factures . . . or distributes (under its own name) the drug.").

Hon. Freda L. Wolfson                                                      Page 23



,” *see* Ex. 34 at -252 (JJHCS_00130245), and ██████████████ ████████████████████████, *see* Ex. 38 at -199 (JJHCS_00159199).[18]

J&J fails to rebut this evidence.

*First,* J&J asks Your Honor to ignore Exhibits 7 and 8. J&J "does not dispute" that the documents show that Pharmaceuticals makes Invokana and "███████████████," Opp. 15, but asserts that they "ha[ve] nothing to do with who administers CarePath." *Id.* In fact, Exhibit 7, a ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████." Ex. 7 at -830 (JJHCS_00060803). Exhibit 8 similarly shows that ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ Ex. 8 at -163 (JJHCS_00051161). The documents thus show that ████████████████████████████████████████

---

[17] ████████████████████████████████████████████████████ ████ Ex. 104 at -502 (JJHCS_00047500). ████████████████████ Ex. 105 at -044 (JJHCS_00117039). ████████████████ *Id.* at -044-45. ████████████████████████████████ *See* Ex. 34 at -252 (JJHCS_00130245).

[18] SaveOn cited JJHCS_00130492 to show that ████████████████████████ ██. Mot. 4. SaveOn errantly referred to this document as Exhibit 10, *id.*; it is Exhibit 39.

Hon. Freda L. Wolfson                                                      Page 24

███████████████████.

*Second,* J&J asks that Your Honor ignore Exhibit 38, asserting that ██████████████

███████████████████████████████████████████████████████████

█████████████████████████ Opp. 20. In fact, Exhibit 38 shows that

███████████████████████████████████████████████████████████

████████████████ Ex. 38 at -199 (JJHCS_00159199). ███████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████. *Id.*

*Finally,* J&J says that Exhibit 34 ██████████████████████████████████

███████████████████████ Opp. 18-19. In fact, it shows that Barnard, Ex. 32

(JJHCS_00162523), ████████████████████████████████████████

████████████████ Ex. 34 at -247 (JJHCS_00130245)—not a mere bystander. J&J also says that

Exhibit 34 ███████████████████████████████. Opp. 20. In fact, it also shows that ███████

███████████████████████████████████████████████████████████

███████ Ex. 34 at -284, 86 (█████████████████████████████████████████

██████████).

### 4.    Actelion Pharmaceuticals US, Inc.

Actelion Pharmaceuticals US, Inc. ("Actelion") is a J&J company that makes four drugs at

issue: Opsumit, Tracleer, Uptravi, and Ventavis.[19] Actelion ████████████████████████████████

---

[19] Opsumit, Tracleer, Uptravi, Ventavis. *See NDC database file – Excel Version, National Drug Code Directory*, U.S. FOOD & DRUG ADMIN., https://www.accessdata.fda.gov/cder/ndcxls.zip (naming Janssen Pharmaceuticals, Inc. as the "labeler" for each drug); *National Drug Code Data-*



████████████████████████████████████████████████████

████████████████. *See* Ex. 31 at -776 (JJHCS_00027774, JJHCS_00027776)[20];

Ex. 47 at -340 (JJHCS_00001340) (████████████████████████████

██████████████████████████████████.

    J&J does not rebut this showing.

    *First*, J&J asks Your Honor to ignore Exhibit 47 because, in its telling, ████████

██████████████████████████. Opp. 18-19. In fact, ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████. Ex. 47 at -340

(JJHCS_00001340). This shows that ████████████████████████

██████████████.

    *Second*, J&J says that ████████████████████████████

███ Exhibit 31 ████████████████████████████████████

████████████████████████. Opp. 17 (cleaned up). In fact, ████████████

████████████████████████████████████████████████████

████████████████████████. Ex. 31 at -776 (JJHCS_00027774), directly indicates that it

was involved with developing them and thus with ████████████████████████

██████. J&J does not explain why Your Honor should ignore this clear inference.

---

*base Background Information*, U.S. FOOD & DRUG ADMIN., https://www.fda.gov/drugs/develop-
ment-approval-process-drugs/national-drug-code-database-background-information, (defining a
"labeler" as "any firm that manufactures . . . or distributes (under its own name) the drug.").

[20] Exhibit 31 includes just JJHCS_00027774 and JJHCS_00027776, which are part of a larger
family.

*Finally*, J&J says Exhibit 48 was cited "█████████████████████████████████ ██████████████████ and is "otherwise irrelevant to CAP." Opp. 20. J&J does not dispute that ██████████████████████. More than that, Exhibit 48 shows that █████████████████ ███████████████████████████████████████████. *See, e.g.*, Ex. 48 at 1 (JJHCS_00001317). ██████████████████████████████ ████████████████████████ *Id*. at -317. This indicates that Actelion was involved in developing J&J's response to businesses like SaveOn.

<h3>5.   Janssen Products, LP and Janssen Therapeutics</h3>

Janssen Products, LP ("<u>Products</u>") makes five drugs at issue in this case: Prezcobix, Symtuza, Edurant, Balversa, and Intelence.[21] Janssen Therapeutics ("<u>Therapeutics</u>"), a division of Products, develops virology therapeutics for Hepatitis C and HIV. *See Tibotec Therapeutics Becomes Janssen Therapeutics, Part Of The Janssen Pharmaceutical Companies*, JOHNSON & JOHNSON, (June 22, 2011) https://www.jnj.com/media-center/press-releases/tibotec-therapeutics-becomes-janssen-therapeutics-part-of-the-janssen-pharmaceutical-companies; *Contact Us*, SYMTUZA, https://www.symtuza.com/contact-us/; Ex. 24 at -928 (JJHCS_00171928) (███████ ████████████████████████████. Therapeutics was involved in assessing and responding to maximizers and accumulators. Ex. 23 at -527 (JJHCS_00026527); Ex. 24 at -928 (JJHCS_00171928); Ex. 28 at -263 (JJHCS_00142263); Ex. 51 at -648-49 (JJHCS_00002647);

---

[21] Balversa, Prezcobix, Symtuza, Edurant, Intelence. *See N*DC database file – Excel Version, National Drug Code Directory*, U.S. FOOD & DRUG ADMIN., https://www.accessdata.fda.gov/cder/ndcxls.zip (naming Janssen Pharmaceuticals, Inc. as the "labeler" for each drug); *National Drug Code Database Background Information*, U.S. FOOD & DRUG ADMIN., https://www.fda.gov/drugs/development-approval-process-drugs/national-drug-code-database-background-information, (defining a "labeler" as "any firm that manufactures . . . or distributes (under its own name) the drug.").

Ex. 69 at -212.0006-08 (JJHCS_00041211, JJHCS_00041212).

J&J fails to rebut this showing.

*First*, J&J asks Your Honor to ignore Exhibits 23 and 28 because 

██████████████████████████████████████████████████████████████." Opp. 18-19. In

fact, in Exhibit 23, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ Ex. 23 at -527 (JJHCS_00026527). Exhibit 28 shows ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████. Ex. 28

at -263 (JJHCS_00142263). These documents thus show ████████████████████████

███████████████████████████████████.

*Second*, J&J alleges that SaveOn misrepresented several exhibits. Not so:

- J&J says that Exhibit 24 shows ████████████████████████████████████

  ██████████████████████████████████." Opp. 22. In fact, Exhibit 24

  shows that ████████████████████████████████████████████████

  ████████████████████████████████████████████████████████

  ████████ Ex. 24 at -928 (JJHCS_00171928). ████████████████████████

  ████████████████████████████████████████████████████████

  ████████████████████████ *Id.* ████████████████████████████████

  ████████████████████████████████████████████████████████

  ████████████████████████████████████████████████████████

  ████████████████████████

*Finally*, J&J says that Exhibit 69 is "█████████████████████████████████"
because it ████████████████████████████████████████████████████

██  Opp. 23-24. In fact, Exhibit 69 ████████████████████████████████████

███████████████████████████████  Ex. 69 (JJHCS_00041211, JJHCS_00041212),

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████  *id.*

at -006-08. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████, *see* Dkt.

192 at 29 (SaveOn is "entitled to discovery from representatives who were internally involved in

responding to accumulator programs").

### 6.    Janssen Scientific Affairs, LLC

Janssen Scientific Affairs, LLC ("<u>Scientific</u>") operates a medical information website.

Ex. 106 (Scientific S&P Global Market Intelligence Report). ████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████. Ex. 17 at –036-37

(JJHCS_00169034); Ex. 18 at 408-09 (JJHCS_00169408); Ex. 20 at -420, -421

(JJHCS_00132407); Ex. 60 at -917 (JJHCS_00132917); Ex. 62 at -685 (JJHCS_00132682); Ex.

64 (JJHCS_00132736); Ex. 65 at -950 (JJHCS_00132939); Ex. 66 at -933 (JJHCS_00132931).

████████████████████████████████████████████████████████████████████

███████████████. Ex. 26 at -501 (JJHCS_00168501); Ex. 67 at -340, -341.0002

(JJHCS_00132340); Ex. 68 at -936 (JJHCS_00132936). █████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████. Ex. 70

(JJHCS_00167968); Ex. 71 (JJHCS_00169177); Ex. 72 (JJHCS_00162661); Ex. 74

(JJHCS_00170333); Ex. 75 at -392 (JJHCS_00168391); Ex. 76 at -018 (JJHCS_00224008).

J&J does not rebut this showing.

*First*, J&J asks Your Honor to ignore Exhibits 17 and 18, ██████████████████

███████████████████. Opp. 18. J&J does not deny that these documents show that

███████████████████. *See* Ex. 17 at -034 (JJHCS_00169032); Ex. 18 at -417

(JJHCS_00169408). J&J says that Exhibit 17 ████████████████,” Opp. 18, but

████████████████████████████████████████

████████████████████████████████,” *see* Ex.

17 at -037 (JJHCS_00169032)—and ████████████████

█████████████, Dkt. 166 at 2-3; *see also* May 10, 2024 Discovery Order at 1-2. J&J says that

there is no ████████████████,” Opp. 18, which is hardly the point—but

██████████████████████d; in any event, Exhibit 18 at a minimum ████████

████████████████████████████████████████

███████████████████████████████████. Ex.

18 at -414 App'x A (JJHCS_00169408)

*Second*, J&J asks Your Honor to dismiss Exhibit 20, which is a ████████████

████████████████[22] Opp. 18. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Ex. 20 at -407 (JJHCS_00132407). This shows that ████████████████████,

which goes directly to J&J's responses to accumulators, maximizers, and SaveOn.

---

[22] Exhibit 20 includes just JJHCS_00132407 and JJHCS_00132419, which are part of a larger family.

*Third*, J&J says that SaveOn cites Exhibit 21 for the "sole reason" of identifying employees' affiliations with different Janssen entities and that the document is "otherwise irrelevant to CAP." Opp. 20. Exhibit 21 shows more: ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████ Ex. 21 at 10 (JJHCS_00167845).

*Fourth*, J&J says Exhibit 26 shows ████████████████████████████

████████████████ Opp. 18. In fact, it ████████████████████████████

████████████████████████████████████ Ex. 26 at -501 (JJHCS_00168501). ████

████████████████████████████████████████████████████████████████

████████ *Id.*

████████ and so with J&J's response to accumulators, maximizers, and SaveOn.

*Finally*, J&J asserts that several exhibits show "no basis for 'patient harm' discovery" from Scientific, Opp. 22-24 (citing Exs. 60, 62-68, 70-76), asserting that "most" are "simply irrelevant to SaveOnSP and to this litigation." Opp. 23 (citing Exs. 60, 62, 64, 67). Not so:



- Exhibit 60 ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████ Ex. 60 at -917 (JJHCS_00132917).

- Exhibit 62 ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ Ex. 62 at -682, -686

(JJHCS_00132682).

Hon. Freda L. Wolfson                                                      Page 31

- Exhibit 63 

  ████████████████████████. Ex. 63 at -701 (JJHCS_00132701).

- Exhibit 64 ██████████████████████████

  ████████████████████████████████

  ████████████████████████████ Ex. 64

  (JJHCS_00132736).

- Exhibit 65 is ████████████████████████

  ████████████████████████████████

  █████████████████ Ex. 65 at -939 (JJHCS_00132939).

- Exhibit 66 is ████████████████████████

  ████████████████████████████████

  ████████████████████████████████

  ███████ *Id.* at 7 (JJHCS_0013935).

- Exhibit 67 ████████████████████████████

  ████████████████████████████████

  █████████████ Ex. 67 at -340 (JJHCS_00132340).

- Exhibit 68 ████████████████████████████

  ████████████████████████████████

  ███████████████ Ex. 68 at -936 (JJHCS_00132936).

- Exhibits 70 and 71 ██████████████████████

  ████████████████████████████████

  ██████████████████████████████." *See*

  *Id.* at 12; Ex. 71 at -184 (JJHCS_00169177); *see also* Ex. 70 at 1

(JJHCS_00167968) ( ███████████████████████████████

████████████████████████████ ).

- Exhibit 72 is ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████ Ex. 72 at -661 (JJHCS_00162661).[23]

- Exhibit 74 shows ████████████████████████

████████████████████████████████████████

████████████████████████ . Ex. 74 at -333 (JJHCS_00170333).

- Exhibit 75 shows ████████████████████████

████████████████████████████████████████

██████ Ex. 75 at -392 (JJHCS_00168391).

- Exhibit 76 shows ████████████████████████

██████ Ex. 76 at -013 (JJHCS_00224008).

_____

[23] It is not clear why J&J accuses SaveOn of "entirely mischaracterizing the contents of" Exhibit 72. Opp. 23. SaveOn accurately described Exhibit 72 as an " ████████████

████████████████████████████████████████

████████████████ (emphasis removed). Mot. 14. Exhibit 72 shows ██████████████ ,
Ex. 72 at -661 (JJHCS_00162661), ████████████████████████████

████████████████████████████████████████ *id.* at -668, and it
shows that ██████ ████████████████████████ *id.* at -678 ( █████

████████████████████████ ), *id.* at -679 ( ██████

██████ , *id.* ( ████████████████████████████

████████████████████ ").



### 7.    Janssen Global Services, LLC

Janssen Global Services, LLC ("Global") oversees and leads the business practices of mul-

tiple other J&J entities, including in marketing, market access, global communication, public af-

fairs, and business development. Ex. 107 (Global Bloomberg Company Profile). 

, Ex. 25

at -356 (JJHCS_00011355).

. Ex. 58 at -468 (JJHCS_00184466); Ex. 108 at 1, 79-80 (JJHCS_00222613) (

); Ex. 109 at -621 (JJHCS_00222619). Global thus has relevant documents.

J&J fails to rebut this evidence.

*First*, J&J asks Your Honor to ignore that

. Opp. 17-18 (citing Ex. 25). Even though Exhibit 25

,

Ex. 25 at -355 (JJHCS_00011355), J&J says this d

Opp. 17-18. This citationless assertion is contrary to the most plau-

sible inference of the document—

J&J asserts that

Opp. 1718; *see also* Ex. 25 at -355 (JJHCS_00011355)—in fact, Exhibit 25

*Finally*, J&J again asks Your Honor to overlook branding. Opp. 17. Exhibit 58 contains

." Opp. 17.

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████ Ex. 58 at -467 (JJHCS_00184466). This indicates that Global was involved

█████████████████████████████.

*        *        *

A mountain of evidence shows that each Janssen Entity played an important role in developing and changing CarePath's T&Cs, responding to SaveOn and mitigating J&J's purported damages, and/or investigating patient harm allegedly caused by accumulators and maximizers. As such, these entities very likely have documents responsive to SaveOn's requests.

Your Honor should compel J&J to identify custodians and non-custodial sources at the Janssen Entities that are likely to have documents responsive to SaveOn's document requests and to search for and produce documents from those sources.

SaveOn appreciates Your Honor's attention to this matter.

Respectfully submitted,

/s/ *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# EXHIBIT 83
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 84

| From: | Elizabeth Snow |
|---|---|
| To: | SaveOn-Team |
| Subject: | FW: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW) |
| Date: | Thursday, June 15, 2023 7:22:01 PM |

**Elizabeth Snow**

Associate  [Email]

Selendy Gay Elsberg PLLC  [Web]

Pronouns: she, her, hers

------------------------------------------------

+1 212.390.9330  [O]

+1 540.409.7257  [M]

---

**From:** Haigney Long, Julia (x2878) <jhaigneylong@pbwt.com>
**Sent:** Thursday, June 15, 2023 7:21 PM
**To:** Elizabeth Snow <esnow@selendygay.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; Arrow, Sara (x2031) <sarrow@pbwt.com>; Shane, Beth (x2659) <eshane@pbwt.com>; Brisson, Katherine (x2552) <kbrisson@pbwt.com>; Hashmi, Kabir (x2701) <khashmi@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** David Elsberg <delsberg@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; Meredith Nelson <mnelson@selendygay.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW)

Elizabeth,

Consistent with Judge Waldor's rulings at the March 17, 2023 conference, JJHCS prioritized its agreed upon production of documents responsive to the priority topics referenced in your email and production of those categories of documents is now substantially complete for the expanded time period subsequently agreed to by the parties.

To the extent that we identify any additional, non-privileged documents that are responsive to these requests, we will continue to produce these documents as soon as possible, on a rolling basis.

Best,
Julia

**Julia Haigney Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jhaigneylong@pbwt.com**

---

**From:** Elizabeth Snow <esnow@selendygay.com>
**Sent:** Monday, June 12, 2023 5:07 PM
**To:** Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>;
Carotenuto, George (Departed User) <gcarotenuto@pbwt.com>; LoBiondo, George (x2008)
<globiondo@pbwt.com>; Shane, Beth (x2659) <eshane@pbwt.com>; Haigney Long, Julia (x2878)
<jhaigneylong@pbwt.com>; Brisson, Katherine (x2552) <kbrisson@pbwt.com>; Jeffrey Greenbaum
<JGREENBAUM@sillscummis.com>; Katherine Lieb <klieb@sillscummis.com>
**Cc:** ~delsberg@selendygay.com <delsberg@selendygay.com>; Andrew Dunlap
<adunlap@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; Meredith Nelson
<mnelson@selendygay.com>
**Subject:** JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-ES-CLW)

**Caution: External Email!**

Julia,

Thank you for your production of documents on June 9, 2023. We understand based upon your prior
representations that JJHCS's June 9, 2023 production completes JJHCS's production on the priority
topics (financial documents and Janssen CarePath's terms and conditions) ordered by the Court on
March 17, 2023. Please let us know if this is incorrect.

Thanks,

Elizabeth

**Elizabeth Snow**
Associate  [Email]
Selendy Gay Elsberg PLLC  [Web]
Pronouns: she, her, hers
-------------------------------------------
+1 212.390.9330  [O]
+1 540.409.7257  [M]

---

Privileged/Confidential Information may be contained in this message. If you are not
the addressee indicated in this message (or responsible for delivery of the message to
such person), you may not copy or deliver this message to anyone. In such case, you

should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

# EXHIBITS 85-88
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 89

E. Evans Wohlforth, Jr.
Katherine Katchen
ROBINSON & COLE LLP
666 3rd Avenue #20
New York, NY 10174
212-451-2999
ewolforth@rc.com
kkatchen@rc.com

David Elsberg
Andrew R. Dunlap
Meredith Nelson
Elizabeth Snow
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JMV) (CLW) <br><br> **DEFENDANT'S FOURTH REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

To:   Jeffrey J. Greenbaum, Esq.
       SILLS CUMMIS & GROSS, P.C.
       One Riverfront Plaza

Newark, NJ 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, NY

*Attorneys for Plaintiff Johnson & Johnson
Health Care Systems Inc.*

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26 and 34,

Defendant Save On SP, LLC ("SaveOnSP"), requests Plaintiff Johnson & Johnson Health Care

Systems Inc. ("JJHCS"), to produce for inspection and copying the documents listed in these Re-

quests, to the office of the undersigned within 30 days of being served or at a time and place mu-

tually agreed by the parties and ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that this demand for production of documents

shall be deemed continuing in nature so as to require supplemental responses if Plaintiff or Plain-

tiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's

responses are served.

2

Dated:  October 20, 2023                By:  */s/ E. Evans Wohlforth, Jr.*
                                             E. Evans Wohlforth, Jr.
                                             ROBINSON & COLE
                                             666 3rd Avenue #20
                                             New York, NY 10174
                                             212-451-2999
                                             ewolforth@rc.com

                                             David Elsberg
                                             Andrew R. Dunlap
                                             Meredith Nelson
                                             Elizabeth Snow
                                             SELENDY GAY ELSBERG, PLLC
                                             1290 Avenue of the Americas
                                             New York, NY 10104
                                             212-390-9000
                                             deslberg@selendygay.com
                                             adunlap@selendygay.com
                                             mnelson@selendygay.com
                                             esnow@selendygay.com

                                             *Attorneys for Defendant Save On SP, LLC*

## **DEFINITIONS**

1.       The singular form of a word includes the plural, and vice versa.

2.       Any tense of a verb includes all tenses.

3.       Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.       Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.       "Accredo" means Accredo Health Group, Inc. as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Accredo.

6.       "Accumulator" means a copay accumulator service, including (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

4

7.      "<u>Action</u>" means this litigation styled as "*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (JMV) (CLW).

8.      "<u>All</u>," "<u>any</u>," and "<u>each</u>" mean any and all.

9.      "<u>And</u>" and "<u>or</u>" are construed both conjunctively and disjunctively.

10.      "<u>Benefits Investigation</u>" means any process by which JJHCS, or any entity acting on its behalf, receives information regarding the pharmacy benefits provided by a health plan, including information regarding prior authorization, costs, Essential Health Benefits status, patient eligibility, and related information.

11.      "<u>CarePath</u>" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

12.      "<u>Communication</u>" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

13.      "<u>Copay Assistance</u>" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

14.      "<u>Document</u>" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

15.      "<u>ESI</u>" means Express Scripts, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents,

representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of ESI..

16.    "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

17.    "Including" means including but not limited to.

18.    "Janssen" means Johnson & Johnson Innovative Medicine, Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

19.    "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Johnson & Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Johnson & Johnson Innovative Medicine, Janssen Biotech, Inc., Janssen

6

Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc., Janssen

Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and Janssen Research

& Development LLC.

20.    "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer,

in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors

and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments,

agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all

persons or entities acting or purporting to act on behalf of such an entity.

21.    "Lash Group" means The Lash Group, Inc. and any and all predecessors and suc-

cessors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, rep-

resentatives, directors, officers, employees, committees, attorneys, accountants, and all persons or

entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

22.    "Maximizer" means copay maximizer service, including (a) any service provided

by Pharmacy Benefit Managers or insurance companies, or any third party providing services to

the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from

counting towards a patient's deductible and out-of-pocket maximum and under which members

do not remain responsible for all or most of their plans' copays, co-insurance requirements, and

deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to

the term "copay maximizer."

23.    "Person" means a natural person or legal entity including any business or govern-

mental entity or association.

24.    "Regarding" means (directly or indirectly, partially or wholly) about, alluding to,

assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to,

7

considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

25.     "Request" means any of these Requests for Production.

26.     "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Save On SP, LLC.

27.     "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

28.     "TrialCard" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

29.     "You" and "Your" means JJHCS.


**INSTRUCTIONS**

1.      These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 34(a)(1).

2.      These Requests seek production of nonprivileged information. Fed. R. Civ. P. 26(b)(1).

8

3.      These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4.      For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 34(b)(2)(C).

5.      If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

6.      If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest. Fed. R. Civ. P. 34(b)(2)(C).

7.      If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 26(b)(5)(A)(ii), including by indicating whether any document exists regarding the information, requested and stating, to the extent the privilege is being asserted in connection with a claim or defense governed by the state law, the state privilege rule being invoked, Local Rule 34.1.

8.      If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction, the reason for its destruction, the name of the person who requested or authorized its destruction, and the name of the person who destroyed it.

9

9.     Produce documents as they are kept in the usual course of business. Fed. R. Civ. P. 34(b)(E)(i). For each document, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

10.     Produce electronically stored information in the form and manner required by any agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

11.     Produce each document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

12.     Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notation, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

13.     These Requests are deemed continuing. If after responding to any Request you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).

## **TIME PERIOD**

Unless otherwise specified, these Interrogatories relate to the time period from and including April 1, 2016, through the present.

## **REQUESTS**

58.     All documents or communications related to Benefits Investigations undertaken by JJHCS or any JJHCS Hub Entity that identified or attempted to identify whether a Person enrolled in CarePath was or could be a member of a health plan advised by SaveOnSP.

59.     To the extent not covered by the previous Request, all documents or communications related to Benefits Investigations undertaken by JJHCS or any JJHCS Hub Entity that

10

identified or attempted to identify whether a Person enrolled in CarePath was or could be a member of a Maximizer or Accumulator health plan.

60.     Documents sufficient to show any agreements entered into or in place during the relevant time period between JJHCS or any JJHCS Hub Entity, on the one hand, and Accredo or ESI, on the other hand, regarding the provision of patient information or data.

61.     Any patient information or data provided by Accredo or ESI to JJHCS or any JJHCS Hub Entity regarding Persons enrolled in CarePath.

62.     Documents sufficient to show any negotiations engaged in by JJHCS or any JJHCS Hub Entity to obtain data from ESI or Accredo regarding Persons enrolled in CarePath, including without limitation JJHCS's or any JJHCS Hub Entity's knowledge of the information available in such data.

# Exhibit 90

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (ES) (CLW) <br><br> **PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS** |

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing.  It reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action.  The following responses and objections are based upon information known at this time.

1.       JJHCS objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.  The inadvertent production by JJHCS of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.       JJHCS objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response JJHCS makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

2

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.      JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.      JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.      JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.      JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

13.      JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.      JJHCS objects to the definition of the term "Benefits Investigation" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to the definition on the grounds that the phrase "receives information regarding the pharmacy benefits provided by a health plan" is vague and ambiguous and construes this phrase to refer to information received through investigations into whether a patient is affiliated with SaveOnSP or another copay accumulator or maximizer service.  JJHCS further objects to the definition as irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it encompasses instances in

3

which JJHCS may receive "information regarding the pharmacy benefits provided by a health plan" for purposes other than establishing whether a patient is affiliated with SaveOnSP or another copay accumulator or maximizer service.

2.  JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.

3.  JJHCS objects to the definition of the term "JJHCS" to the extent it purports to include attorneys and accountants who may be outside of JJHCS's possession, custody, and control.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or] representatives" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and Janssen Research & Development LLC.

4.  JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and

4

as irrelevant to the extent it purports to include entities other than those responsible for administering CarePath during the relevant Time Period.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.  JJHCS further objects on the ground that the phrase "administer, in whole or in part, CarePath" is vague and ambiguous.  JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

5.      JJHCS objects to the definition of the term "Lash Group" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc."  JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

6.      JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc."  JJHCS further objects to the extent the term is used to seek documents and

5

communications in the possession of entities other than JJHCS.

## OBJECTIONS TO THE TIME PERIOD

1.  JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome, and not relevant to the subject matter of this Action to the extent they call for documents from after November 7, 2023.  Unless otherwise noted, JJHCS will only provide information from April 1, 2016 through November 7, 2023 (the "Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

### Request No. 58

All documents or communications related to Benefits Investigations undertaken by JJHCS or any JJHCS Hub Entity that identified or attempted to identify whether a Person enrolled in CarePath was or could be a member of a health plan advised by SaveOnSP.

### Response to Request No. 58

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.  JJHCS further objects to this Request to the extent it uses the terms "Benefits Investigations," "JJHCS," and "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

6

Subject to the foregoing objections, JJHCS will ask TrialCard, Inc. to produce all benefits investigation reports from the Time Period that reflect inquiries about whether a patient taking Stelara or Tremfya is enrolled in an accumulator or maximizer program (including SaveOnSP), to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

## Request No. 59

To the extent not covered by the previous Request, all documents or communications related to Benefits Investigations undertaken by JJHCS or any JJHCS Hub Entity that identified or attempted to identify whether a Person enrolled in CarePath was or could be a member of a Maximizer or Accumulator health plan.

## Response to Request No. 59

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "Benefits Investigations," "JJHCS," and "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to SaveOnSP. JJHCS further objects to this Request as duplicative of Request No. 58.

7

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 58. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 60**

Documents sufficient to show any agreements entered into or in place during the relevant time period between JJHCS or any JJHCS Hub Entity, on the one hand, and Accredo or ESI, on the other hand, regarding the provision of patient information or data.

**Response to Request No. 60**

In addition to the foregoing general objections, JJHCS objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show any agreements entered into or in place during the relevant time period between JJHCS or any JJHCS Hub Entity, on the one hand, and Accredo or ESI, on the other hand, regarding the provision of patient information or data during the relevant Time Period, to the extent that such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 61**

Any patient information or data provided by Accredo or ESI to JJHCS or any JJHCS Hub

8

Entity regarding Persons enrolled in CarePath.

**Response to Request No. 61**

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "any" information or data regarding a broad subject matter.  JJHCS further objects to this

Request as irrelevant to the extent that it seeks "patient information or data . . . regarding Persons

enrolled in CarePath" that is unrelated to Benefits Investigations.  JJHCS further objects to this

Request to the extent it seeks information that is exempt from discovery and protected from

disclosure by any privilege including, without limitation, the First Amendment privilege, the

attorney-client privilege, the work-product doctrine, the joint defense privilege, the common

interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and

relevant case law.  JJHCS further objects to this Request as overbroad, unduly burdensome, and

not proportional to the needs of the case to the extent it seeks documents outside of the relevant

Time Period.  JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and

"JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 58.  To the extent that documents responsive to this Request are also

responsive to prior Requests for Production from JJHCS or TrialCard, subject to prior objections

and those presented here, JJHCS and TrialCard have already agreed to produce those documents

from the relevant Time Period.  Otherwise, JJHCS will not search for or produce documents

responsive to this Request.

**Request No. 62**

Documents sufficient to show any negotiations engaged in by JJHCS or any JJHCS Hub
Entity to obtain data from ESI or Accredo regarding Persons enrolled in CarePath, including
without limitation JJHCS's or any JJHCS Hub Entity's knowledge of the information available

9

in such data.

**Response to Request No. 62**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents sufficient to show "any" negotiations regarding a broad subject matter.  JJHCS further objects to this Request as irrelevant to the extent that it seeks information related to "negotiations engaged in by JJHCS or any JJHCS Hub Entity to obtain data" that is unrelated to Benefits Investigations.  JJHCS further objects to this Request on the ground that the phrase "show any negotiations engaged in . . . to obtain data" is vague and ambiguous.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 58.  To the extent that documents or communications responsive to this Request are also responsive to prior Requests for Production, subject to prior objections and those presented here, JJHCS has already agreed to produce those responsive documents from the relevant Time Period.  Otherwise, JJHCS will not search for or produce documents or communications responsive to this Request.

Dated: November 20, 2023

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:    /s/Jeffrey J. Greenbaum
       JEFFREY J. GREENBAUM
       KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

# Exhibit 91



www.pbwt.com

September 11, 2023

Julia Long
(212) 336-2878

**VIA EMAIL**

Elizabeth H. Snow, Esq.
Selendy Gay Elsberg, PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:   ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
***No. 2:22-cv-02632 (ES) (CLW)***

Dear Elizabeth:

We write in response to your August 28, 2023 letter demanding that JJHCS add thirteen more custodians.

At the outset, it must be said that SaveOnSP has not proceeded in good faith with respect to the issue of custodians. We met and conferred over several hours on August 8 and 9 related to various discovery issues and were scheduled to discuss six of the thirteen requested custodians during that meet and confer. Yet SaveOnSP refused to confer about its own request for these custodians until JJHCS provided a hit count—despite not asking for such a count in advance of our meet-and-confer. SaveOnSP also refused to discuss JJHCS's then-pending offer to withdraw its relevance and burden objections as to two custodians (Quinton Kinne and Daphne Longbothum) "subject to (1) those additions resolving this dispute about custodians and (2) SaveOnSP agreeing to add Ms. Ayesha Zulqarnain as an additional SaveOnSP custodian[.]" July 28, 2023 Ltr. from J. Long to E. Snow at 1. Following the August 8 and 9 meet and confers, JJHCS renewed this offer—and SaveOnSP again declined to accept the two-for-one custodian deal and doubled down on its requests to add four additional custodians.

Instead of negotiating in good faith or asking JJHCS to consider targeted additional custodians, SaveOnSP now demands that JJHCS add thirteen new custodians—mere weeks before the substantial completion deadline, and half a year after SaveOnSP first raised and then dropped several of the demands at issue. This appears to be part of SaveOnSP's ongoing and transparent campaign to restart the discovery clock. JJHCS timely produced thousands of documents from 17 custodians, and has substantially completed its discovery obligations on the Court's original schedule. And so, with one partial exception described in more detail below, JJHCS declines to add the requested individuals or to provide hit counts of their documents, which would require the full collection, processing, and analysis of thirteen custodians at this late stage. This burdensome exercise is not proportionate or merited given SaveOnSP's unwillingness to proceed in good faith and narrow or tailor its sweeping demands.

Elizabeth H. Snow, Esq.
September 11, 2023
Page 2

## I.      Custodians Addressed in Prior Correspondence

JJHCS declines to add Quinton Kinne, Daphne Longbothum, Juliette Deshaies, Leigh Wyszkowski, Willian Shontz and Alison Barklage as additional custodians.  As JJHCS has stated since SaveOnSP first raised this issue, these individuals are irrelevant to this litigation and the documents relied upon by SaveOnSP do not justify adding them as additional custodians.

### A.      Quinton Kinne

JJHCS declines to add Quinton Kinne as an additional custodian.  SaveOnSP first proposed Mr. Kinne as a custodian on March 7, 2023.  JJHCS declined this request in its March 16, 2023 and July 28, 2023 letters.  SaveOnSP yet again seeks his addition, relying on a near verbatim argument, a handful of previously cited documents, and interrogatory responses that SaveOnSP has had for nearly eight months.

These documents remain unpersuasive to justify adding Mr. Kinne as an additional custodian.  For example, ███████████████████████████████████ will be captured by other designated JJHCS custodians, including Lindsey Anderson and Bill Robinson, who are ███████████████████████████████████████.  *See* July 28 Ltr. from J. Long to E. Snow at 2.  The same is true for ████████████████████ ██████████████████████████████████████████████████ *See* JJHCS_00010098.  Non-privileged, responsive communications related to that work would be captured by Mr. Franz's documents.  And even if it were true that Mr. Kinne had "█████████ ██████████" with Ms. Wyszkowski or attended ████████████," it does not follow that those meetings would have generated relevant email traffic.

### B.      Daphne Longbothum

JJHCS declines to add Daphne Longbothum as an additional custodian.  SaveOnSP first proposed Ms. Longbothum as a custodian on May 9, 2023.  JJHCS declined this request in its May 19, 2023 and July 28, 2023 letters and informed SaveOnSP that "based on its investigation, JJHCS has no reason to believe that Ms. Longbothum would have unique documents or communications relating to SaveOnSP" and that her documents would be cumulative of "other custodians from whom JJHCS has agreed to produce documents, including Nidhi Saxena and Hattie McKelvey, to whom Ms. Longbothum reported."  *See* July 28 Ltr. from J. Long to E. Snow at 3 (quoting May 19, 2023 Ltr. from H. Sandick to E. Snow at 2).

None of the materials cited in SaveOnSP's August 28 letter change that conclusion.  SaveOnSP cites to ████████████████████████████████████████████████████ ███████████████," but fails to recognize ████████████████████████████ ███████████████████ *see* JJHCS_00000027, received the same communication.  *See* JJHCS_00008591.  The other documents cited by SaveOnSP are similarly unpersuasive.  For example, as JJHCS explained in its July 28, 2023 letter, SaveOnSP's reliance on JJHCS_00001391 and JJHCS_00034500 is peculiar because ██████████████████████████████████ ████████████████████████████████████████████████████.  In fact,



Elizabeth H. Snow, Esq.
September 11, 2023
Page 3

███████████████████████████████████████████████████
███████████████████████████████████████████.

SaveOnSP claims that Ms. Longbothum is nonetheless "likely to have unique documents" because Ms. Longbothum allegedly "spearheaded the effort to identify patients who were exhausting their copay assistance funds" but then cites to documents ███████████████████ *see* JJHCS_00001464, ███████████████, *see* JHCS_00008838, or ██████████████ *see* JJHCS_00008802 ("███████ ██████████). These documents do not support adding Ms. Longbothum as yet another custodian.

### C.    Leigh Wyszkowski

JJHCS declines to add Leigh Wyszkowski as an additional custodian.  SaveOnSP first proposed Ms. Wyszkowski as a custodian on March 7, 2023.  JJHCS declined this request in its March 16, 2023 and July 28, 2023 letters and informed SaveOnSP that Ms. Wyszkowski's documents and communications "will be captured by other custodians from whom JJHCS has agreed to produce documents, including John Paul Franz, to whom Ms. Wyszkowski reported." *See* July 28 Ltr. from J. Long to E. Snow at 2 (quoting May 19, 2023 Ltr. from H. Sandick to E. Snow at 4).

Nothing has changed in the last four months.  For example, SaveOnSP asserts that because ████████████████████████████████████████████████, *see* JJHCS_00000551, Leigh Wyszkowski is relevant to this litigation.  By that logic, anyone who received or read the Complaint would be a potential discovery target, since the Complaint cites this presentation.   This is untenable.   As JJHCS has repeatedly stated, Mr. Kinne and Ms. Wyszkowski are in the same reporting line and all responsive documents would be captured by John Paul Franz's documents.

### D.    William Shontz

JJHCS declines to add William Shontz as an additional custodian.  SaveOnSP first proposed Mr. Shontz as a custodian on May 9, 2023.  JJHCS declined this request in its May 19, 2023 and July 28, 2023 letters.  As JJHCS has repeatedly stated, "JJHCS has no reason to believe that Mr. Shontz would have unique documents or communications relevant to the litigation, or that any such documents would not be cumulative of those produced from existing JJHCS custodians, Hattie McKelvey and Silviya McCool, to whom he reports."  *See* July 28 Ltr. from J. Long to E. Snow at 3.

None of the documents cited by SaveOnSP merit adding Mr. Shonz.  As previously stated, to the extent Mr. Shontz was involved in relevant communications, those documents would be captured by existing JJHCS custodians.   For example, SaveOnSP cites ██████████████ █████████████████████████████████. *See* JJHCS_00104645.  In addition, SaveOnSP's reliance on JJHCS_00001202 to state that ██████████████████████████████████████████████. A

Elizabeth H. Snow, Esq.
September 11, 2023
Page 4

four-day absence falls woefully short as a justification to add Mr. Shontz as a custodian.  Other
cited communications—███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████.  JJHCS_00029708.
Furthermore, SaveOnSP's reliance on JJHCS_00008556 and JJHCS_00034500 is odd because
████████████████████████████████████████████████████████████████████████████████████
███████████████.

### E.   Alison Barklage

JJHCS declines to add Alison Barklage as an additional custodian.  As JJHCS stated in its
July 28 letter, we understand that Ms. Barklage served as a JJHCS contractor during the relevant
period with administrative responsibilities. ███████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████████████
████████████.  *See* JJHCS_00084174. ████████████████████████████████████████████████
███████████████████████████████.  *See id.*

In addition, SaveOnSP's reliance on a series of cites to ████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████
██████████.  *See* Aug. 28, 2023 Ltr. from E. Snow to J. Long at 6.  First, ███████████████
████████████████████████████████████████████.  *See* JJHCS_00084504; JJHCS_00084426;
JJHCS_00084507.  Second, ███████████████████████████████████████████████████████████████
██████████████████████.  *See* JJHCS_00084426.  Consistent with JJHCS's July 28 letter, to the extent
Ms. Barklage's custodial files contain relevant documents or communications, they would be
cumulative of those produced by JJHCS from other agreed-upon custodians, including, *inter alia*,
Heith Jeffcoat, to whom Ms. Barklage reported.

### F.   Juliette Deshaies

JJHCS also declines to add Juliette Deshaies as a custodian.  As JJHCS stated in its May
19 letter, SaveOnSP's own description of Ms. Deshaies's role, and the documents it cites, make
clear that Ms. Deshaies's primary responsibilities relate to marketing of certain immunology
drugs—not CarePath or any other issues relevant to this action.  For example, in JJHCS_0069842,
████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████  *See id.*

This is completely consistent with JJHCS's prior representations—████████████████████████
████████████████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████.  *See id.*  Again, to the
extent Ms. Deshaies's custodial files contain relevant documents or communications, they would
be cumulative of those documents JJHCS has produced from other agreed-upon custodians,
including Spilios Asimakopoulos, Heith Jeffcoat, Lynn Hall, and Adrienne Minecci.

Elizabeth H. Snow, Esq.
September 11, 2023
Page 5

## II.     New Custodians

### A.     Blaise Penkowski

JJHCS declines to add Blaise Penkowski, JJHCS's Chief Strategic Customer Officer, as an additional custodian.  SaveOnSP first raised Ms. Penkowski in the June 23, 2023 Joint Letter in support of its motion to expand the scope of discovery to companies besides JJHCS.  As JJHCS explained at that time, JJHCS has "no reason to believe that Ms. Penkowski would have unique documents or communications relating to the SaveOnSP or JJHCS's response to the SaveOnSP program."  (Dkt. No. 122 at 12.)

Nothing in SaveOnSP's August 28 letter alters that conclusion.  First, Ms. Penkowski's involvement with JALT is not relevant to this lawsuit and does not justify adding her as a custodian.  As we have repeatedly explained, responsibility for the CarePath program resides principally with Katie Mazuk, Vice President, Patient Engagement and Customer Solutions and her reporting line.  Ms. Mazuk is a member of JALT and an existing JJHCS custodian.  As a result, any JALT communications that reference CarePath copay assistance, SaveOnSP, or this litigation already are captured by Ms. Mazuk's documents.  (Dkt. No. 122 at 9.) ███████████████████ ███████████████████████████████  JJHCS_00101570, JJHCS_00001668, JJHCS_00001830, and JJHCS_00101641.

Second, SaveOnSP's citation to a ██████████████████████████  does not alter this conclusion.  For example, SaveOnSP describes JJHCS_00084221 as ████████████████████ ████████  *See* August 28, 2023 Ltr. from E. Snow to J. Long at 7.  This is an inaccurate characterization of the document, █████████████████████████████████████ ████████████████████████████████████████████████████████

Third, SaveOnSP's citation to documents alleging that Ms. Penkowski has "unique information" about SaveOnSP or TrialCard similarly fall flat.  Ms. Penkowski's ████████████████████████████████████████████████.  *See* JJHCS_00074697. ███████████████████████████████████████████████d.  *See* JJHCS_00025908; JJHCS_00025517; JJHCS_00025532; JJHCS_00024511; JJHCS_00025594. SaveOnSP argues that because ██████████████████████  that she somehow has "unique information" about JJHCS's relationship with TrialCard.  But that logic isn't borne out by the documents—nor is the nature of JJHCS's relationship with TrialCard central to the litigation.

Finally, none of the documents referenced in SaveOnSP's August 28 letter justifies discovery from apex personnel, i.e., high-level executives, like Ms. Penkowski.  *See, e.g.*, *Lauris v. Novartis AG*, 2016 WL 7178602, at *4 (E.D. Cal. Dec. 8, 2016) (requiring "more than mere speculation to order [the producing party] to include the apex custodians in [a] search protocol").  "Mere speculation" that Ms. Penkowski's position as "a senior executive might increase the relevance of [her] files" is not a basis for designating her as a custodian.  *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *3 (S.D.N.Y. May 18, 2017).

Elizabeth H. Snow, Esq.
September 11, 2023
Page 6

SaveOnSP offers no reason to believe that Ms. Penkowski would have unique documents or communications specific to SaveOnSP or JJHCS's response to the SaveOnSP program.

**B.    Scott White**

JJHCS declines to add Scott White as an additional custodian.  As JJHCS has previously represented to the Court and to SaveOnSP, Scott White is Company Group Chairman, North America Pharmaceuticals, a high-ranking executive with no day-to-day responsibilities for CarePath.  He is therefore entitled to protection from undue burden and harassment under the apex doctrine.  *See Lauris*, 2016 WL 7178602, at *4; *Mortg. Resol. Servicing, LLC*, 2017 WL 2305398, at *3.  SaveOnSP again relies on JJHCS_00001704 to state that ████████████████████████████████ .  And again, following that logic, any person who received, sent, saw, or heard the SaveOnSP video would be a potential custodian.

Moreover, any relevant documents in Mr. White's possession related to JALT would be found in documents belonging to Ms. Mazuk, a member of JALT and an existing custodian.  This ██████████████████████████████████  *See, e.g.*, JJHCS_00001704, JJHCS_00011154, JJHCS_00041213, JJHCS_00001830, and JJHCS_00001668, which all include Ms. Mazuk on the email chain.

SaveOnSP's claim that Mr. White is likely to have unique documents is unpersuasive. SaveOnSP relies on JJHCS_00100210 to show that ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████ .  Any related correspondence or follow-up regarding this complaint would be captured by Mr. King's documents.

Finally, SaveOnSP's citation to ████████████████████████████████
██████ .  *See* JHCS_00039767, JJHCS_00039772, JJHCS_00039696, JJHCS_00039374, JJHCS_00039378, JJHCS_00039382, JJHCS_00039625, and JJHCS_00039879. ████████
████████████████████████████████████████████ , TrialCard is already producing documents pursuant to a subpoena served by SaveOnSP.

**C.    Karen Lade**

JJHCS declines to add Karen Lade as an additional custodian.  SaveOnSP first proposed Ms. Lade in the June 23, 2023 Joint Letter.  Ms. Lade works as a Product Director, Rheumatology Marketing.  Based on its investigations to date, JJHCS has no reason to believe that Ms. Lade would have unique documents or communications relating to SaveOnSP or JJHCS's response to the SaveOnSP program.  To the extent Ms. Lade's custodial files contain relevant documents or communications, they would be cumulative of those produced by JJHCS from other agreed-upon

Elizabeth H. Snow, Esq.
September 11, 2023
Page 7

custodians, including Heith Jeffcoat, Silviya McCool, Lauren Pennington, and Spilios Asimakopoulos. ███████████████████████████████████████████████
JJHCS_00002688, JJHCS_00045468, JJHCS_00083180, JJHCS_00083894, JJHCS_00083929, JJHCS_00083931, and JJHCS_00105296 ██████████████████████████████████████
██████████████████████████████. At most, SaveOnSP has demonstrated that ████████
████████████████████████████████████████████████████████████████████████████
█████████████████████

### D.    L.D. Platt

JJHCS declines to add L.D. Platt as an additional custodian.  Based on its investigations to date, JJHCS has no reason to believe that Mr. Platt would have unique documents or communications relating to SaveOnSP or JJHCS's response to the SaveOnSP program.  As JJHCS explained in its July 28, 2023 Supplemental Responses and Objections to SaveOnSP's First Set of Interrogatories, Mr. Platt was "not involved in 'marketing of CarePath or other communications with the public regarding CarePath' on a regular basis outside of communications related to this Action."  JJHCS's July 28, 2023 Supplemental Responses & Objections to SaveOnSP's First Set of Interrogatories.  To the extent Mr. Platt has documents relating to this Action, those would be protected by the attorney-client privilege, work product doctrine, or another applicable privilege or protection from disclosure.  *See* JJHCS_00027974, JJHCS_00027996, and JJHCS_00027998. In addition, █████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████.

### E.    Ernie Knewitz

JJHCS declines to add Ernie Knewitz as an additional custodian.   Based on its investigations to date, JJHCS has no reason to believe that Mr. Knewitz would have unique documents or communications relating to SaveOnSP or JJHCS's response to the SaveOnSP program.  As JJHCS explained in its July 28, 2023 Supplemental Responses and Objections to SaveOnSP's First Set of Interrogatories, Mr. Knewitz was "not involved in 'marketing of CarePath or other communications with the public regarding CarePath' on a regular basis outside of communications related to this Action."  JJHCS's July 28, 2023 Supplemental Responses & Objections to SaveOnSP's First Set of Interrogatories.  To the extent Mr. Knewitz has documents relating to this Action, those would be protected by the attorney-client privilege, work product doctrine, or another applicable privilege or protection from disclosure.

In addition, Mr. Knewitz's involvement with JALT does not merit his addition as a custodian.  As JJHCS has made clear, responsibility for the CarePath program resides principally with Katie Mazuk, Vice President, Patient Engagement and Customer Solutions and her reporting line.  Ms. Mazuk is a member of JALT and an existing JJHCS custodian.  Any JALT communications that reference CarePath co-pay assistance, SaveOnSP, or this litigation, already are captured by Ms. Mazuk's documents.  (*See* Dkt. No. 122 at 9.)  Th██████████████████████
████████████████████████.  *See* JJHCS_00001859, JJHCS_00041213.

Elizabeth H. Snow, Esq.
September 11, 2023
Page 8

     Finally, SaveOnSP again relies on JJHCS 00001704 to state that ████████
██████████████████████████████████████████████.  That is a
nonstarter for the reasons discussed above.

**F.    John Hoffman**

     JJHCS declines to add John Hoffman as an additional custodian.  Based on its investigation
to date, JJHCS has no reason to believe that Mr. Hoffman would have unique documents or
communications relating to SaveOnSP or JJHCS's response to the SaveOnSP program.
SaveOnSP's reliance on JJHCS 00027236, JJHCS 00026852, JJHCS 00101570, and
JJHCS 00114446 ████████████████████████████████████████████
██████████████████████████████████████████████.  To the extent
Mr. Hoffman's custodial files contain relevant documents or communications, they would be
cumulative of those produced by JJHCS from other agreed-upon custodians, including John King
and Silas Martin.

**G.    Silas Martin**

     JJHCS ran specific search terms over Silas Martin's documents to satisfy its discovery
obligations as to RFP No. 20.  *See* Sept. 6, 2023 Ltr. from E. Shane to E. Snow at 2.  The production
of Mr. Martin's non-privileged documents responsive to RFP No. 20 were part of JJHCS's Eighth
Production of Documents on September 1, 2023, and will be substantially completed before the
September 24, 2023 substantial completion deadline.

     Very truly yours,

     */s/ Julia Long*
     Julia Long

14537228

# Exhibit 92

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

**selendy
gay
elsberg**

Elizabeth H. Snow
Associate
212 390 9330
esnow@selendygay.com

December 15, 2023             CONFIDENTIAL

**<u>Via E-mail</u>**

Sara Arrow
Patterson Belknap Webb & Tyler LLP
133 Avenue of the Americas
New York, NY 10036
sarrow@pbwt.com

Re:     ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*** (Case No.
        **2:22-cv-02632-ES-CLW)**

Dear Sara,

        We write concerning JJHCS's responses and objections to SaveOnSP's Fourth Set
of Requests for Production.

## I.     **General Objections & Definitions**

        *First*, JJHCS makes a litany of general objections, including (1) that certain docu-
ments or things are equally available to SaveOnSP, (2) that SaveOnSP can obtain docu-
ments or information from another source in a manner that is more convenient, less bur-
densome, or less expensive, and (3) to producing documents and information relating to
"any business affairs other those that are the subject of the Action." Please confirm that
JJHCS is not withholding any documents based on any general objection.

        *Second*, JJHCS objects to the definition of "Janssen" to the extent the term is used
to seek documents and communications in the possession of entities other than JJHCS.
During a June 27, 2023 discovery conference, the Court made clear that JJHCS's discovery
obligations include Janssen. *See* June 27, 2023 Tr., at 96–97. Please confirm that JJHCS is
not withholding documents or communications on the basis of this objection and that
JJHCS will search for relevant documents within Janssen.

        *Third*, please confirm that JJHCS will produce documents in response to these Re-
quests from April 1, 2016, through November 7, 2023. SaveOnSP reserves its right to seek
additional documents in the future.

## II.     Requests 58 and 59

SaveOnSP's RFP Nos. 58 and 59 seek all documents and communications related to Benefits Investigations undertaken by JJHCS or one of its Hub Entities that identified or attempted to identify whether a patient was a member of a plan advised by SaveOnSP or was a member of a maximizer or accumulator health plan. JJHCS says that it will ask TrialCard to produce "all benefits investigation reports that reflect inquiries about whether a patient taking Stelara or Tremfya was enrolled in an accumulator program, maximizer program (including SaveOnSP)." JJHCS refuses to produce any other documents responsive to these requests.

JJHCS does not say that the documents it withholds are irrelevant, nor could it. Communications between JJHCS and TrialCard are relevant, for example, to the extent of JJHCS's awareness of TrialCard's inquiries, including if and when JJHCS requested Trial-Card conduct these investigations, as well as when TrialCard began offering this service to JJHCS. JJHCS's internal documents and communications related to benefits investigations, including for example its records of communications with TrialCard, ESI, or Accredo, are relevant, for example, to its ability to identify members on such plans. Documents and communications related to investigations into Janssen drugs at issue other than Stelara and Tremfya are relevant, for example, to TrialCard's ability to conduct such investigations related to those drugs on behalf of JJHCS.

While JJHCS objects on the basis of burden, it does not substantiate that objection. SaveOnSP renews its requests that JJHCS run the search terms in the attached appendix over its custodial documents and provide hit counts for each requested term.

Please either (1) confirm that JJHCS will produce all documents and communication responsive to RFPs 58 and 59; or (2) if not, explain in detail JJHCS's bases for withholding those documents.

## III.     Request 61 and 62

SaveOnSP's RFP Nos. 61 and 62 seek any patient information or data provided by Accredo or ESI to JJHCS or any JJHCS Hub Entity regarding patients enrolled in CarePath, and documents sufficient to show negotiations between JJHCS and ESI or Accredo regarding obtaining patient data. As for RFP Nos. 58 and 59, JJHCS says that it will ask TrialCard to produce "all benefits investigation reports that reflect inquiries about whether a patient taking Stelara or Tremfya was enrolled in an accumulator program, maximizer program (including SaveOnSP)." JJHCS refuses to produce any other documents responsive to these requests.

JJHCS objects to producing patient data regarding persons enrolled in CarePath that is unrelated to Benefits Investigations as irrelevant. That objection is meritless. The requested data and information is relevant to showing whether JJHCS (or TrialCard, as its vendor) could use the data to identify patients on accumulators, maximizers, or plans advised by SaveOnSP. Documents sufficient to show any negotiations between JJHCS and

Sara Arrow
December 15, 2023

Accredo or ESI regarding patients enrolled in CarePath are relevant to showing whether
JJHCS (or TrialCard, as its vendor) knew that such data was available from ESI or Accredo.

JJHCS objects on the basis of burden, but does not substantiate that objection. If
TrialCard maintains its burden objection, SaveOnSP renews its requests that JJHCS run
the search terms in the attached appendix over its custodial documents and provide hit
counts for each requested term.

We remain hopeful that the parties can work through these issues to reach a mutu-
ally agreeable resolution. We reserve all rights and request a response by December 21,
2023.

Best,


Elizabeth H. Snow
Associate

Sara Arrow
December 15, 2023

## Proposed Search Terms

- Accredo AND ("contract*" OR "agreement*")

- "Benefits Investigation*" AND Accredo

- "Benefits Investigation*" AND "accumulator*"

- "Benefits Investigation*" AND ESI

- "Benefits Investigation*" AND "Express Scripts"

- "Benefits Investigation*" AND ExpressScripts

- "Benefits Investigation*" AND Balversa

- "Benefits Investigation*" AND Darzelex

- "Benefits Investigation*" AND Faspro

- "Benefits Investigation*" AND Erleada

- "Benefits Investigation*" AND Imbruvica

- "Benefits Investigation*" AND "maximizer*"

- "Benefits Investigation*" AND Opsumit

- "Benefits Investigation*" AND Precobix

- "Benefits Investigation*" AND Remicade

- "Benefits Investigation*" AND Rybrevant

- "Benefits Investigation*" AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR Save-On OR SOSP)

- "Benefits Investigation*" AND Simponi

- "Benefits Investigation*" AND Stelara

- "Benefits Investigation*" AND Symtuza

- "Benefits Investigation*" AND Tracleer

- "Benefits Investigation*" AND Tremfya

- "Benefits Investigation*" AND Uptravi

4

Sara Arrow
December 15, 2023

- "Benefits Investigation*" AND Ventavis

- "Benefits Investigation*" AND Zytiga

- (ESI OR ExpressScripts OR "Express Scripts") AND ("agreement*" OR "contract*")

5

# Exhibit 93



www.pbwt.com

January 2, 2024

Julia Long
(212) 336-2878

**VIA EMAIL**

Elizabeth H. Snow, Esq.
Selendy Gay Elsberg, PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:  *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
      **No. 2:22-cv-02632 (ES) (CLW)**

Dear Elizabeth:

We write in response to SaveOnSP's December 15, 2023 letter regarding JJHCS's responses and objections to SaveOnSP's Fourth Set of Requests for Production.

## I.    General Objections & Definitions

SaveOnSP asks for confirmation that "JJHCS will produce documents in response to these Requests from April 1, 2016 to November 7, 2023." Dec. 15, 2023 Ltr. from E. Snow to S. Arrow at 1. That is correct, and is consistent with JJHCS's responses and objections, which state that, "[u]nless otherwise noted," JJHCS will "provide information from April 1, 2016 to November 7, 2023." JJHCS's Nov. 20, 2023 Responses and Objections at 6.

SaveOnSP further asks for confirmation whether JJHCS is "withholding any documents based on any general objection." JJHCS's general objections include privilege, relevance, and burden objections, and JJHCS reserves all rights with respect to each general objection. *See id.* at 1-3. JJHCS's specific responses and objections to each request set forth how JJHCS plans to respond as to each, including with respect to what JJHCS is willing to produce. If you believe any of our responses or objections are unclear, please let us know.

SaveOnSP also takes issue with JJHCS's objection to the definition of "Janssen," claiming that the Court previously held that "JJHCS's discovery obligations include Janssen." *See* Dec. 15, 2023 Ltr. from E. Snow to S. Arrow at 1 (citing June 27 Tr. at 96-97). SaveOnSP's claim finds no support in the June 27, 2023 transcript. At issue in June was SaveOnSP's motion to compel supplemental responses to certain interrogatories served on JJHCS. As SaveOnSP well knows, the Court granted that motion in part, and clarified the limited implications of its rulings when SaveOnSP untimely sought reconsideration at the October 30 conference. As JJHCS

Elizabeth H. Snow, Esq.
January 2, 2024
Page 2

repeatedly has made clear—of roughly 200 subsidiaries—"JJHCS is the sole relevant J&J entity involved in the development, marketing, or administration of CarePath." ECF No. 122 at 1 (quoting ECF No. 79 at 20).

## II.   Requests 58 and 59

In its December 15 letter, SaveOnSP acknowledges that JJHCS has asked TrialCard to produce "all benefits investigation reports . . . that reflect inquiries about whether a patient taking Stelara or Tremfya was enrolled in an accumulator program or maximizer program (including SaveOnSP)." JJHCS's Nov. 20, 2023 Responses and Objections at 7-8. JJHCS understands that TrialCard has agreed to produce these materials through November 7, 2023.

Nonetheless, SaveOnSP insists that JJHCS "produce all documents and communications responsive to RFPs 58 and 59" using SaveOnSP's requested search terms. JJHCS declines to do so. As JJHCS has explained, the "vast majority of benefits investigations" conducted by TrialCard are irrelevant to this action and involve only "efforts to confirm a patient's insurance coverage and if the patient is required to make copayments for a particular medication." ECF No. 163 at 1. Several of SaveOnSP's requested search strings relate to drug names that JJHCS understands were not part of Trial Card's inquiries—nor are SaveOnSP's Requests 58 and 59 limited to the relevant date range for these inquiries (i.e., January 1, 2022 to November 7, 2023). *See id.* at 1-2. As a result, the overwhelming majority of SaveOnSP's search terms are unlikely to result in responsive documents.

JJHCS also objects to SaveOnSP's proposed search terms on the basis of burden. As outlined in Exhibits A and B, SaveOnSP's requested search terms would require JJHCS review approximately 146,000 additional documents (inclusive of families) if added for JJHCS's existing custodians and newly added CAP custodians. Given that most of these hits are unlikely to be relevant, it would be unduly burdensome and disproportionate to the needs of the case for JJHCS to review this many irrelevant documents.

## III.   Requests 61 and 62

SaveOnSP's Requests 61 and 62 seek any patient information or data provided by Accredo or ESI to JJHCS or any JJHCS Hub Entity regarding patients enrolled in CarePath, and documents sufficient to show negotiations between JJHCS and ESI or Accredo regarding obtaining patient data.

As to Request 61, SaveOnSP's claim that "JJHCS objects to producing patient data regarding persons enrolled in CarePath" is not accurate. *See* Dec. 15, 2023 Ltr. from E. Snow to S. Arrow at 2. To be clear, JJHCS already has agreed to produce many categories of data concerning CarePath enrollees, including claims data related to the drugs at issue in the SaveOnSP Program. JJHCS's objection to Request 61, by contrast, relates to SaveOnSP's request for "patient information or data provided by Accredo or ESI to JJHCS" which is unrelated to the benefits

Elizabeth H. Snow, Esq.
January 2, 2024
Page 3

investigations described above—i.e., TrialCard's inquiries about whether a patient taking Stelara or Tremfya was enrolled in an accumulator program or maximizer program.

As to Request 62, SaveOnSP claims that documents concerning "any negotiations between JJHCS and Accredo or ESI . . . are relevant to showing whether JJHCS (or TrialCard, as its vendor) knew that such data was available from ESI or Accredo." *See* Dec. 15, 2023 Ltr. from E. Snow to S. Arrow at 2-3. Not so. Assuming the requested contracts exist, any documents concerning any underlying negotiations would not provide further relevant information. As reflected in JJHCS's responses and objections to Request 60, JJHCS will produce non-privileged documents in its possession sufficient to show any agreements entered into or in place during the relevant time period between JJHCS or any JJHCS Hub Entity, on the one hand, and Accredo or ESI, on the other hand, regarding the provision of patient information or data during the relevant Time Period, to the extent that such documents exist and can be located after a reasonable search.

JJHCS also objects to SaveOnSP's proposed search terms on the basis of burden, as outlined in Exhibits A and B. SaveOnSP's proposed terms related to Accredo and ESI are extremely broad—and in no way are tailored to Requests 61 and 62. Indeed, each of these terms would require JJHCS to review every document concerning any Accredo or ESI agreement, the vast majority of which have nothing to do with JJHCS's copay assistance program. *See* Dec. 15, 2023 Ltr. from E. Snow to S. Arrow at 4-5 (suggesting the following terms: Accredo AND ("contract*" OR "agreement*") and (ESI OR ExpressScripts OR "Express Scripts") AND ("agreement*" OR "contract*")). Accordingly, JJHCS declines to add these additional terms.

Very truly yours,

*/s/ Julia Long*
Julia Long

**Exhibit A: Hit Count for Requested Search Terms as to Existing JJHCS Custodians[1]**

| Search Term Proposed by SaveOnSP | Additional Documents Hitting on Term | Additional Documents Hitting on Term + Families |
|---|---|---|
| Accredo AND (contract* OR agreement*) | 14,364 | 44,795 |
| "Benefits Investigation*" AND Accredo | 1,593 | 8,509 |
| "Benefits Investigation*" AND accumulator* | 1,427 | 5,721 |
| "Benefits Investigation*" AND ESI | 493 | 1,966 |
| "Benefits Investigation*" AND "Express Scripts" | 800 | 3,596 |
| "Benefits Investigation*" AND ExpressScripts | 24 | 439 |
| "Benefits Investigation*" AND Balversa | 780 | 2,938 |
| "Benefits Investigation*" AND Darzelex | 28 | 167 |
| "Benefits Investigation*" AND Faspro | 1,173 | 5,513 |
| "Benefits Investigation*" AND Erleada | 2,685 | 10,599 |
| "Benefits Investigation*" AND Imbruvica | 422 | 2,152 |
| "Benefits Investigation*" AND maximizer* | 930 | 5,225 |
| "Benefits Investigation*" AND Opsumit | 1,050 | 4,678 |
| "Benefits Investigation*" AND Precobix | 1 | 2 |
| "Benefits Investigation*" AND Remicade | 5,937 | 28,014 |
| "Benefits Investigation*" AND Rybrevant | 804 | 3,732 |
| "Benefits Investigation*" AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR Save-On OR SOSP) | 0 | 0 |

---

[1] **Custodians**: Lindsey Anderson, Spilios Asimakopoulos, John Franz, Evelyn Hall, Brandon Jeffcoat, John King, Jeremy Mann, Katie Mazuk, Silviya McCool, Hattie McKelvey, Adrienne Minecci, Lauren Pennington, William Robinson III, Nidhi Saxena, Heather Schoenly, Carol Scholz, and Jasmeet Singh

| Search Term Proposed by SaveOnSP | Additional Documents Hitting on Term | Additional Documents Hitting on Term + Families |
|---|---|---|
| "Benefits Investigation*" AND Simponi | 6,965 | 30,283 |
| "Benefits Investigation*" AND Stelara | 10,498 | 42,183 |
| "Benefits Investigation*" AND Symtuza | 1,348 | 3,708 |
| "Benefits Investigation*" AND Tracleer | 471 | 2,179 |
| "Benefits Investigation*" AND Tremfya | 7,354 | 27,580 |
| "Benefits Investigation*" AND Uptravi | 1,024 | 4,655 |
| "Benefits Investigation*" AND Ventavis | 366 | 1,668 |
| "Benefits Investigation*" AND Zytiga | 2,811 | 13,811 |
| (ESI OR ExpressScripts OR "Express Scripts") AND (agreement* OR contract*) | 12,472 | 43,034 |

**Exhibit B:  Hit Count for Requested Search Terms as to "CAP" Custodians[2]**

| Search Term Proposed by SaveOnSP | Additional Documents Hitting on Term | Additional Documents Hitting on Term + Families |
|---|---|---|
| Accredo AND (contract* OR agreement*) | 1,673 | 9,123 |
| "Benefits Investigation*" AND Accredo | 155 | 1,556 |
| "Benefits Investigation*" AND accumulator* | 771 | 2,753 |
| "Benefits Investigation*" AND ESI | 36 | 195 |
| "Benefits Investigation*" AND "Express Scripts" | 97 | 833 |
| "Benefits Investigation*" AND ExpressScripts | 8 | 400 |
| "Benefits Investigation*" AND Balversa | 403 | 1,790 |
| "Benefits Investigation*" AND Darzelex | 27 | 57 |
| "Benefits Investigation*" AND Faspro | 930 | 3,327 |
| "Benefits Investigation*" AND Erleada | 1,459 | 5,135 |
| "Benefits Investigation*" AND Imbruvica | 115 | 535 |
| "Benefits Investigation*" AND maximizer* | 441 | 1,648 |
| "Benefits Investigation*" AND Opsumit | 386 | 1,292 |
| "Benefits Investigation*" AND Precobix | 2 | 4 |
| "Benefits Investigation*" AND Remicade | 536 | 2,874 |
| "Benefits Investigation*" AND Rybrevant | 711 | 3,417 |
| "Benefits Investigation*" AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR Save-On OR SOSP) | 4 | 5 |
| "Benefits Investigation*" AND Simponi | 711 | 2,743 |

[2] **Custodians**:  Quinton Kinne, Daphne Longbothum, Allison Barklage, John Hoffman, William Shontz, and L.D. Platt

i

| Search Term Proposed by SaveOnSP | Additional Documents Hitting on Term | Additional Documents Hitting on Term + Families |
|---|---|---|
| "Benefits Investigation*" AND Stelara | 1,258 | 3,915 |
| "Benefits Investigation*" AND Symtuza | 313 | 810 |
| "Benefits Investigation*" AND Tracleer | 245 | 822 |
| "Benefits Investigation*" AND Tremfya | 951 | 2,791 |
| "Benefits Investigation*" AND Uptravi | 368 | 1,229 |
| "Benefits Investigation*" AND Ventavis | 98 | 278 |
| "Benefits Investigation*" AND Zytiga | 1,127 | 4,262 |
| (ESI OR ExpressScripts OR "Express Scripts") AND (agreement* OR contract*) | 4,434 | 15,288 |

# Exhibit 94

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for Plaintiff Johnson & Johnson Health Care
Systems Inc.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., | Civil Action No. 22-2632 (ES) (CLW) |
| Plaintiff, | **PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIFTH REQUEST FOR PRODUCTION OF DOCUMENTS** |
| v. | |
| SAVE ON SP, LLC, | |
| Defendant. | |

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the
General Objections below into its specific objections to each Request, whether or not each such
General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing.  It reserves the right to
supplement, amend, modify, or correct its responses under Rule 26(e) should it discover
additional information or grounds for objections at any time prior to the conclusion of this
Action.  The following responses and objections are based upon information known at this time.

1.      JJHCS objects to the Requests to the extent that they seek documents or
information protected from disclosure by a privilege including, without limitation, the attorney-
client privilege, the work-product doctrine, the joint defense privilege, the common interest
privilege, the First Amendment privilege, the Federal Rules of Civil Procedure, the Local Rules
of the Court, and relevant case law.  The inadvertent production by JJHCS of information,
documents, materials, or things covered by any privilege or doctrine shall not constitute a
waiver of any applicable privilege or doctrine, including but not limited to, objections on the
basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or
admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.      JJHCS objects to the Requests to the extent that they seek documents or
information that are not relevant to a claim or defense or to the subject matter of this litigation.
Any response JJHCS makes to any Request shall not be deemed an admission that the response,
information, document, or thing produced is relevant to a claim or defense or to the subject
matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence,
is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek documents or information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

2

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or

supplement its objections and responses.

9.      JJHCS objects to the Requests to the extent that they are duplicative of other

document requests, interrogatories, and/or other discovery requests.

10.      JJHCS objects to the Requests to the extent that they are argumentative, lack

foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action.

JJHCS further objects to the Requests to the extent that they assume facts that do not exist or

the occurrence of events that did not take place.

11.      JJHCS objects to the Requests to the extent that they seek documents and

information relating to any business affairs other than those that are the subject of the Action.

12.      JJHCS objects to the Requests as overbroad and unduly burdensome to the

extent they purport to require production of "all" or "any" documents where a subset of

documents would be sufficient to provide the relevant information.

13.      JJHCS objects to the Requests to the extent that they seek the production of

documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.       JJHCS objects to the definition of the term "Archbow" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of Archbow." JJHCS further objects to the extent the term is used to seek documents and

communications in the possession of entities other than JJHCS or documents that have already

been produced in response to discovery requests made by SaveOnSP to other entities, including

but not limited to Archbow.

2.      JJHCS objects to the definition of the term "Benefits Investigation" to the extent

the term is used to seek documents and communications in the possession of entities other than

JJHCS.  JJHCS further objects to the definition on the grounds that the phrase "receives

information regarding the pharmacy benefits provided by a health plan" is vague and

ambiguous; JJHCS construes this phrase in the context of this case to refer to information

received through investigations into whether a patient is affiliated with SaveOnSP or another

copay accumulator or maximizer service.  JJHCS further objects to the definition as irrelevant,

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it

encompasses instances in which JJHCS may receive "information regarding the pharmacy

benefits provided by a health plan" for purposes other than establishing whether a patient is

affiliated with SaveOnSP or another copay accumulator or maximizer service.

3.      JJHCS objects to the definition of the term "Janssen" to the extent the term is

used to seek documents and communications in the possession of entities other than JJHCS.

JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional

to the needs of the case to the extent it purports to include "any and all predecessors and

successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments,

agents, representatives, directors, officers, employees, committees, attorneys, accountants and

all persons or entities acting or purporting to act on behalf" of those entities.

4.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to

include attorneys and accountants whose documents and communications may be outside of

JJHCS's possession, custody, and control.  JJHCS further objects to the definition as overbroad,

4

unduly burdensome, and not proportional to the needs of the case to extent it purports to include

"any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, .

. . agents, [or] representatives" or purports to include entities and persons acting or purporting to

act on behalf of or under the control of entities other than Johnson & Johnson Healthcare

Systems, Inc., including Centocor, Inc.; Ortho Biotech Products LP; McNeil Pharmaceutical;

Ortho-McNeil Pharmaceutical, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc.; Scios Inc.;

Janssen Biotech, Inc.; Janssen Oncology, Inc.; Janssen Research & Development, LLC; Janssen

Pharmaceuticals, Inc.; Janssen Products, LP; Actelion Pharmaceuticals U.S., Inc.; Janssen

BioPharma LLC; and Janssen Research & Development LLC.

5.     JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and

as irrelevant to the extent it purports to include entities other than those responsible for

administering CarePath during the relevant Time Period.  JJHCS further objects to the

definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it includes "any and all predecessors and successors in interest, assignees, parents,

subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers,

employees, committees, attorneys, accountants and all persons or entities acting or purporting to

act on behalf" of those entities.  JJHCS further objects on the ground that the phrase

"administer, in whole or in part, CarePath" is vague and ambiguous.  JJHCS further objects to

the extent the term is used to seek documents and communications in the possession of entities

other than JJHCS.

6.     JJHCS objects to the definition of the term "Lash Group" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

5

departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc." JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

7.    JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc." JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

<u>**OBJECTIONS TO THE TIME PERIOD**</u>

1.    JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome, and not relevant to the subject matter of this Action to the extent they call for documents from after November 7, 2023. Unless otherwise noted, JJHCS will only provide information from April 1, 2016 through November 7, 2023 (the "Time Period").

<u>**SPECIFIC RESPONSES AND OBJECTIONS**</u>

<u>**Request No. 63**</u>

All Documents and Communications regarding JJHCS's efforts to directly reimburse patients for out-of-pocket costs after the patient acquires a Janssen Drug.

<u>**Response to Request No. 63**</u>

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS objects to

this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to JJHCS's efforts to provide copay assistance funds to patients and unrelated to the CarePath program (and the "withMe" programs). JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it uses the term "Janssen" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications related to "efforts to directly reimburse patients for out-of-pocket costs" that are unrelated to SaveOnSP. JJHCS further objects to this request as duplicative of Request Nos. 26 and 28; in response to those Requests, subject to objections made thereto, JJHCS already has produced data regarding payments to patients to reimburse them for their out-of-pocket costs.

Subject to the foregoing objections, JJHCS incorporates by reference its responses to Request Nos. 26 and 28. *See also* Feb. 17, 2023 Letter from A. LoMonaco to M. Nelson; Mar. 7, 2023 Letter from A. Dunlap to H. Sandick. To the extent that documents responsive to this Request are also responsive to prior Requests for Production, JJHCS has already agreed to produce those documents from the relevant Time Period, subject to prior objections and those presented here. JJHCS will update its production of data in responsive to Request Nos. 26 and 28 pursuant to the Court's November 7, 2023 Order. (*See* Dkt. No. 173.) Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 64**

All Documents and Communications regarding ███████████████████
████████████████████████████████████████████████████████████
███████████████████████████████████████████████████. *See*
ARCHBOW_000219.

**Response to Request No. 64**

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter. JJHCS further

objects to this Request to the extent it seeks documents and communications that are exempt

from discovery and protected from disclosure by any privilege. JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this

Request to the extent it uses the term "Janssen" for the reasons stated in JJHCS's Objections to

Definitions. JJHCS further objects to this Request as irrelevant to any claim or defense in this

Action to the extent it seeks documents and communications unrelated to SaveOnSP. JJHCS

further objects to this Request to the extent it seeks documents and communications in the

possession of entities other than JJHCS. JJHCS further objects to this Request as duplicative of

Request Nos. 8, 31, 33, 49, 51, 52, 54, and 55.

Subject to the foregoing objections, JJHCS incorporates by reference its responses to

Request Nos. 8, 31, 33, 49, 51, 52, 54, and 55. To the extent that documents or communications

responsive to this Request are also responsive to prior Requests for Production, JJHCS has

already agreed to produce responsive, non-privileged documents, subject to prior objections and

those presented here, including but not limited to those documents related to the CAP Program,

8

consistent with the Court's November 7, 2023 Order. (*See* Dkt. No. 173.) Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 65**

    All Documents and Communications regarding ██████████████████████ ████████████████████████████████████████████████████ *See* ARCHBOW_000241.

**Response to Request No. 65**

    In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the term "Janssen" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request as duplicative of Request Nos. 8, 31, 33, 49, 64, and 66.

    Subject to the foregoing objections, JJHCS incorporates by reference its responses to Request Nos. 8, 31, 33, 49, 64, and 66. To the extent that documents responsive to this Request are also responsive to prior Requests for Production, JJHCS has already agreed to produce those documents from the relevant Time Period, subject to JJHCS's prior objections and those presented here. JJHCS will update its production pursuant to the Court's November 7, 2023 Order. (*See* Dkt. No. 173.) Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 66**

All Documents and Communications regarding attempts by JJHCS to prevent health plans, PBMs (including without limitation Express Scripts), pharmacies (including without limitation Accredo), or SaveOnSP, from being able to detect JJHCS's provision of funds to patients.

**Response to Request No. 66**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP, Express Scripts, or Accredo.  JJHCS further objects to this Request as duplicative of Request Nos. 8, 31, 33, 49, 64 and 65.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request Nos. 8, 31, 33, 49, 64 and 65.  To the extent that documents responsive to this Request are also responsive to prior Requests for Production, JJHCS has already agreed to produce those documents from the relevant Time Period subject to JJHCS's prior objections.  JJHCS will update its production pursuant to the Court's November 7, 2023 Order.  (*See* Dkt. No. 173.) Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 67**

Documents sufficient to show all payments or reimbursements made by JJHCS to patients taking Janssen Drugs other than copay assistance payments provided via CarePath.

**Response to Request No. 67**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and information unrelated to SaveOnSP. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "Janssen" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and information that is unrelated to the CarePath program and any withMe programs. JJHCS further objects to this Request as duplicative of Request Nos. 26 and 28; in response to those Requests, JJHCS already has produced data regarding payments to patients.

Subject to the foregoing objections, JJHCS incorporates by reference its responses to Request Nos. 26 and 28. *See also* Feb. 17, 2023 Letter from A. LoMonaco to M. Nelson; Mar. 7, 2023 Letter from A. Dunlap to H. Sandick. To the extent that documents responsive to this Request are also responsive to prior Requests for Production, JJHCS has already agreed to produce those documents from the relevant Time Period, subject to prior objections and those presented here. JJHCS will update its production of data in responsive to Request Nos. 26 and 28 pursuant to the Court's November 7, 2023 Order. (*See* Dkt. No. 173.) Otherwise, JJHCS will not search for or produce documents or communications responsive to this Request.

11

**Request No. 68**

All Documents and Communications between JJHCS and Archbow regarding CarePath, copay assistance, or provision of funds to patients enrolled in CarePath.

**Response to Request No. 68**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request as irrelevant to the extent that it seeks documents and communications between JJHCS and Archbow that are unrelated to SaveOnSP.   JJHCS further objects to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "Archbow" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections and to objections to other Requests, JJHCS has already agreed to produce responsive, non-privileged documents that relate to SaveOnSP, including those documents related to the CAP Program consistent with the Court's November 7, 2023 Order.  (*See* Dkt. No. 173.)  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 69**

All Documents and Communications with or regarding ██████████████████████ *See* ARCHBOW_000103.

**Response to Request No. 69**

In addition to the foregoing general objections, JJHCS further objects to this Request to

the extent it seeks information that is exempt from discovery and protected from disclosure by

any privilege.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks documents and communications

outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it uses

the term "Archbow" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of

entities other than JJHCS.  JJHCS further objects to this Request as duplicative of Request No. 8.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request No. 8.  To the extent that documents or communications responsive to this Request are

also responsive to prior Requests for Production, subject to prior objections and those presented

here, JJHCS has already agreed to produce responsive, non-privileged documents, including

those related to the CAP Program, consistent with the Court's November 7, 2023 Order.  (*See*

Dkt. No. 173.)  Otherwise, JJHCS will not search for or produce documents responsive to this

Request.

**Request No. 70**

All Documents and Communications regarding manufacturer copay assistance program
funds counting towards the calculation of a drug's Best Price, including the anticipated impact of
the 2023 Best Price Rule on JJHCS, including without limitation the impact on CarePath.

**Response to Request No. 70**

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all documents and communications" regarding a broad subject matter.  JJHCS further

objects to this Request as irrelevant to any claim or defense in this Action.  JJHCS further objects

13

to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "Best Price" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents or communications responsive to this Request.

### Request No. 71

Documents sufficient to show how JJHCS records, books, accounts for, or refers to copay assistance payments and other provision of funds to patients for the purpose of internal reports, bookkeeping, internal or external financial reporting, including without limitation reporting for tax purposes or compliance with any other law, including without limitation whether JJHCS accounts for those payments as charity, charitable contributions, business expenses, rebates, discounts, marketing, or otherwise.

### Response to Request No. 71

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents or communications responsive to this Request.

### Request No. 72

All Documents and Communications regarding the ███████████████████████ ████████████████████████████████ *See* ARCHBOW_000438.

14

**Response to Request No. 72**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all documents and communications" regarding a broad subject matter.  JJHCS further objects to this Request as irrelevant to the extent that it seeks information unrelated to SaveOnSP.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it uses the term "Archbow" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request as duplicative of Request No. 68.

JJHCS will not search for or produce documents or communications responsive to this Request.

**Request No. 73**

All Documents and Communications by or for Janssen market research regarding Accumulators or Maximizers, including without limitation discussions with Archbow.  *See* ARCHBOW_000306; ARCHBOW_000439.

**Response to Request No. 73**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents sufficient to show "all documents and communications" regarding a broad subject matter.  JJHCS further objects to this Request as irrelevant to the extent that it seeks information unrelated to SaveOnSP and the CarePath program and any withMe programs.

15

JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "Archbow" and "Janssen" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request as duplicative of Request Nos. 20, 41, 42 and 68.

Subject to the foregoing objections, to the extent that documents responsive to this Request are also responsive to prior Requests for Production, JJHCS has already agreed to produce those documents from the relevant Time Period, subject to JJHCS's prior objections. JJHCS will update its production of responsive, non-privileged documents to those Requests pursuant to the Court's November 7, 2023 Order. (*See* Dkt. No. 173.) Otherwise, JJHCS will not search for or produce documents or communications responsive to this Request.

## Request No. 74

All Documents and Communications regarding the funds that JJHCS provides to patients taking Janssen Drugs (including without limitation CarePath funds and any other funds) compared to the revenue that Janssen receives from the sales of Janssen Drugs, including without limitations discussions with Archbow. *See* ARCHBOW_000440.

## Response to Request No. 74

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents sufficient to show "all documents and communications" regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to the extent that it seeks information unrelated to SaveOnSP and unrelated to the CarePath program and any withMe

16

programs.  JJHCS further objects to this Request to the extent it seeks information that is exempt

from discovery and protected from disclosure by any privilege.  JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this

Request to the extent it uses the terms "JJHCS," "Janssen," and "Archbow" for the reasons stated

in JJHCS's Objections to Definitions.  JJHCS further objects to this Request to the extent it seeks

documents and communications in the possession of entities other than JJHCS.  JJHCS further

objects to this Request as duplicative of Request Nos. 29 and 41.  JJHCS also objects to this

Request to the extent that it seeks documents that the Court specifically declined to order JJHCS

to produce on March 17 and October 30, 2023.

JJHCS will not search for or produce documents or communications responsive to this

Request.

**Request No. 75**

All Documents and Communications with entities other than JJHCS regarding the above-captioned lawsuit or any potential lawsuit against SaveOnSP, including without limitation discussions with Archbow. *See* ARCHBOW_000443.

**Response to Request No. 75**

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents sufficient to show "all documents and communications" regarding a broad

subject matter.  JJHCS further objects to this Request to the extent it seeks information that is

exempt from discovery and protected from disclosure by any privilege, including without

limitation the attorney-client privilege, the work-product doctrine, the joint defense privilege, the

common interest privilege, the First Amendment privilege, the Federal Rules of Civil Procedure,

the Local Rules of the Court, and relevant case law.  JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents outside of the relevant Time Period.  JJHCS further objects to this Request to

the extent it uses the terms "JJHCS" and "Archbow" for the reasons stated in JJHCS's

Objections to Definitions.  JJHCS further objects to this Request to the extent it seeks documents

and communications in the possession of entities other than JJHCS.  JJHCS further objects to

this Request as duplicative of Request No. 8.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request No. 8.  To the extent that documents responsive to this Request are also responsive to

prior Requests for Production, JJHCS has already agreed to produce those documents from the

relevant Time Period, subject to JJHCS's prior objections and those objections presented here.

JJHCS will update its production pursuant to the Court's November 7, 2023 Order.  (*See* Dkt.

No. 173.)  Otherwise, JJHCS will not search for or produce documents responsive to this

Request.

## Request No. 76

All recordings of calls between SaveOnSP or any employee of SaveOnSP, on the one
hand, and JJHCS or any Hub Entity, on the other hand.

## Response to Request No. 76

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents sufficient to show "all" recordings regarding a broad subject matter.  JJHCS

further objects to this Request to the extent it seeks information that is exempt from discovery

and protected from disclosure by any privilege.  JJHCS further objects to this Request as unduly

burdensome because it requires JJHCS to identify recordings of calls without the benefit of

identifying information—specifically, all names (including the many pseudonyms and false

claims of affiliation with various health plans, insurance companies and pharmacies made by

SaveOnSP) and phone numbers used by SaveOnSP employees who called JJHCS and its

affiliates—that SaveOnSP has not provided.  JJHCS further objects to this Request to the extent

it uses the terms "JJHCS" and "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections

to Definitions.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents or communications responsive to this

Request.

Dated: December 18, 2023

<div style="margin-left:40%">

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:     /s/Jeffrey J. Greenbaum
        JEFFREY J. GREENBAUM
        KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

</div>

# Exhibit 95

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036

*Attorneys for Plaintiff Johnson & Johnson Health Care
Systems Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JKS) (CLW) <br><br> **PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S SIXTH REQUEST FOR PRODUCTION OF DOCUMENTS** |

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing. It reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action. The following responses and objections are based upon information known at this time.

1.     JJHCS objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the First Amendment privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. The inadvertent production by JJHCS of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.     JJHCS objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response JJHCS makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek documents or information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

2

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.      JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.     JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.     JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.     JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

13.     JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

**OBJECTIONS TO DEFINITIONS**

1.      JJHCS objects to the definition of the term "Archbow" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of Archbow." JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS or documents that have already

3

been produced in response to discovery requests made by SaveOnSP to other entities, including but not limited to Archbow.

2.      JJHCS objects to the definition of the term "Avalere" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of Avalere." JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS or documents that have already been produced in response to discovery requests made by SaveOnSP to other entities, including but not limited to Avalere.

3.      JJHCS objects to the definition of the term "Benefits Investigation" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition on the grounds that the phrase "receives information regarding the pharmacy benefits provided by a health plan" is vague and ambiguous; JJHCS construes this phrase in the context of this case to refer to information received through investigations into whether a patient is affiliated with SaveOnSP or another copay accumulator or maximizer service. JJHCS further objects to the definition as irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it encompasses instances in which JJHCS may receive "information regarding the pharmacy benefits provided by a health plan" for purposes other than establishing whether a patient is affiliated with SaveOnSP or another copay accumulator or maximizer service.

4

4.      JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.

5.      JJHCS objects to the definition of the term "Janssen Drug" as irrelevant to the extent it purports to include drugs that are not covered by CarePath or otherwise implicated in SaveOnSP's scheme to misuse copay assistance funds.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any Specialty Drug manufactured or sold by Janssen from any time for which patients may receive copay assistance," even if the drug is not covered by CarePath or otherwise implicated in SaveOnSP's scheme to misuse copay assistance funds.

6.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to include attorneys and accountants whose documents and communications may be outside of JJHCS's possession, custody, and control.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or] representatives" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc., including Centocor, Inc.; Ortho Biotech Products LP; McNeil Pharmaceutical; Ortho-McNeil Pharmaceutical, Inc.; Ortho-McNeil-Janssen Pharmaceuticals,

Inc.; Scios Inc.; Janssen Biotech, Inc.; Janssen Oncology, Inc.; Janssen Research &

Development, LLC; Janssen Pharmaceuticals, Inc.; Janssen Products, LP; Actelion

Pharmaceuticals U.S., Inc.; Janssen BioPharma LLC; and Janssen Research & Development

LLC.

7.    JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and

as irrelevant to the extent it purports to include entities other than those responsible for

administering CarePath during the relevant Time Period.  JJHCS further objects to the

definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it includes "any and all predecessors and successors in interest, assignees, parents,

subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers,

employees, committees, attorneys, accountants and all persons or entities acting or purporting to

act on behalf" of those entities.  JJHCS further objects on the ground that the phrase

"administer, in whole or in part, CarePath" is vague and ambiguous.  JJHCS further objects to

the extent the term is used to seek documents and communications in the possession of entities

other than JJHCS.

8.    JJHCS objects to the definition of the term "Lash Group" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of The Lash Group, Inc."  JJHCS further objects to the extent the term is used to seek

documents and communications in the possession of entities other than JJHCS.

9.     JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc." JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

## OBJECTIONS TO THE TIME PERIOD

1.     JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome, and not relevant to the subject matter of this Action to the extent they call for documents from after November 7, 2023. Unless otherwise noted, JJHCS will only provide information from April 1, 2016 through November 7, 2023 (the "Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

### Request No. 77

All Documents and Communications regarding efforts by JJHCS to work with, inform, sponsor, or influence patient advocacy groups regarding those organizations' public statements, patient outreach, or lobbying in any form about Copay Assistance programs, Copay Maximizers, Copay Accumulators, and/or SaveOnSP (including but not limited to AIDS Foundation of Chicago, AIDS Institute, Aimed Alliance, American Cancer Society Cancer Action Network, American Chronic Pain Association, American College of Rheumatology, American Diabetes Association, American Kidney Fund, American Lung Association, American Society of Clinical Oncology, Arthritis Foundation, Coalition of State Rheumatology Organizations, Crohn's & Colitis Foundation, Cystic Fibrosis Research Institute, Connecticut Oncology Association, COPD Foundation, Epilepsy Foundation, Gay Men's Health Crisis, HealthyWomen, HIV + Hepatitis Policy Institute, Immune Deficiency Foundation, International Myeloma Foundation, Leukemia & Lymphoma Society, LUNGevity Foundation, Lupus Research Alliance, Lupus Foundation of America, Lupus Alliance Research, Mary M. Gooley Treatment Center, Men's Health Network, Multiple Sclerosis Association of America, Nashville CARES, National Alopecia Areata Foundation, National Multiple Sclerosis Association of America, National Multiple Sclerosis Society, National Oncology State Network, National Organization of Rare Disorders, National Psoriasis Foundation, Prevent Blindness, Pulmonary Hypertension Association, Rheumatology Research Foundation, Scleroderma Foundation, Stand Up To

Cancer, Susan G. Komen, The ALS Association, Treatment Action Group, Triage Cancer, U.S. Pain Foundation, Vasculitis Foundation, and ZERO Prostate Cancer).

**Response to Request No. 77**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP and communications with multiple entities whose relevance has not been established. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this request as duplicative of Request Nos. 8, 20, and 21, and JJHCS incorporates by reference its response to those Requests.

To the extent that documents responsive to this Request are also responsive to Request No. 8, JJHCS has already agreed to produce, subject to prior objections, "all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period." *See* JJHCS's Responses and Objections to Defendant's First Request for Production of Documents. To the extent that documents responsive to this Request are also responsive to Request No. 20, JJHCS has already agreed to produce, subject to prior objections, "studies, reports, and publications that JJHCS has funded or supported regarding accumulator and maximizer programs generally, as well as internal communications about such documents."

8

*See* Feb. 17, 2023 Letter from A. LoMonaco to M. Nelson.  Subject to prior objections and those

presented here, JJHCS has or will update its production of any documents responsive to Request

Nos. 8 and 20 pursuant to the Court's November 7, 2023 Order.  *See* Dkt. No. 173.  Otherwise,

JJHCS will not search for or produce documents responsive to this Request.

**Request No. 78**

      All Documents and Communications regarding efforts by JJHCS to work with, inform,
sponsor, or influence pharmaceutical industry associations or groups regarding those
organizations' public statements, patient outreach, or lobbying in any form about Copay
Assistance programs, Copay Maximizers, Copay Accumulators, and/or SaveOnSP (including but
not limited to Biotechnology Innovation Organization, Pharmaceutical Care Management
Association, and Pharmaceutical Research and Manufacturers of America).

**Response to Request No. 78**

      In addition to the foregoing general objections, JJHCS objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS objects to

this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents

and communications unrelated to SaveOnSP and communications with multiple entities whose

relevance has not been established.  JJHCS further objects to this Request to the extent it seeks

information that is exempt from discovery and protected from disclosure by any privilege.

JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons

stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it seeks

documents and communications outside of the relevant Time Period.  JJHCS further objects to

this request as duplicative of Request Nos. 8, 20, and 21, and JJHCS incorporates by reference its

response to those Requests.

To the extent that documents responsive to this Request are also responsive to Request No. 8, JJHCS has already agreed to produce, subject to prior objections, "all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period."  *See* JJHCS's Responses and Objections to Defendant's First Request for Production of Documents.  To the extent that documents responsive to this Request are also responsive to Request No. 20, JJHCS has already agreed to produce, subject to prior objections, "studies, reports, and publications that JJHCS has funded or supported regarding accumulator and maximizer programs generally, as well as internal communications about such documents." *See* Feb. 17, 2023 Letter from A. LoMonaco to M. Nelson.  Subject to prior objections and those presented here, JJHCS has or will update its production of any documents responsive to Request Nos. 8 and 20 pursuant to the Court's November 7, 2023 Order.  *See* Dkt. No. 173.  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 79**

All Best Price Quarterly Reports created or submitted by JJHCS, Janssen, or their affiliates for each Janssen Drug.

**Response to Request No. 79**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to the extent it seeks information unrelated to the claims and defenses in this Action, including information related to the calculation of Best Price for each Janssen Drug.  Issues related to "Best Price" are completely irrelevant to this action.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to

10

this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to

the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this

Request to the extent it uses the terms "Janssen Drug" and "JJHCS" for the reasons stated in

JJHCS's Objections to Definitions.  JJHCS further objects to this Request to the extent it seeks

documents and communications in the possession of entities other than JJHCS.  JJHCS further

objects to this Request to the extent it is duplicative of Request No. 28, and JJHCS incorporates

by reference its response to that Request and its subsequent representations regarding that

Request.

     JJHCS will not search for or produce documents responsive to this Request.

## Request No. 80

     A copy of each final contract executed between JJHCS and TrialCard regarding
CarePath, including without limitation any final work order.

## Response to Request No. 80

     In addition to the foregoing general objections, JJHCS objects to this Request to the

extent it seeks documents and communications that are exempt from discovery and protected

from disclosure by any privilege.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents

outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it uses

the terms "JJHCS" and "TrialCard" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the

extent it seeks documents and communications unrelated to SaveOnSP or copay assistance

provided through the CarePath program.  JJHCS further objects to this Request to the extent it

seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS will produce non-privileged final contracts between JJHCS and TrialCard from the Time Period concerning copay assistance provided through the CarePath program, to the extent that such contracts exist, are in JJHCS's possession, and can be located after a reasonable search.  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 81**

All draft contracts exchanged between JJHCS and TrialCard regarding Copay Maximizers, Copay Accumulators, and/or SaveOnSP, including without limitation any draft work orders.

**Response to Request No. 81**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "TrialCard" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks non-final, draft contracts that were never adopted or that do not concern Copay Assistance or SaveOnSP.  JJHCS further objects to this Request as duplicative of Request No. 80.

JJHCS will not search for or produce documents or communications responsive to this

Request.

**Request No. 82**

All Documents and Communications between JJHCS and Avalere regarding CarePath or Copay Assistance Programs, including regarding (1) Copay Maximizers, Copay Accumulators, and/or SaveOnSP, (2) patient satisfaction with Copay Assistance Programs, including but not limited to CarePath, (3) the impact of Copay Assistance Programs on patient adherence to medication, and (4) reevaluating or changing Copay Assistance Programs based on expected changes to the Best Price Rule.

**Response to Request No. 82**

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter. JJHCS further

objects to this Request as irrelevant to any claim or defense in this Action insofar as it seeks

information related to patient satisfaction with copay assistance programs (including copay

assistance programs not at issue in this Action), the impact of copay assistance programs on

patient adherence to medication, and purported changes to CarePath's copay assistance program

based on expected changes to the Best Price Rule. JJHCS further objects to this Request as

irrelevant to the extent that it seeks documents and communications between JJHCS and Avalere

that are unrelated to SaveOnSP. JJHCS further objects to this Request to the extent it seeks

documents and communications that are exempt from discovery and protected from disclosure

by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and

not proportional to the needs of the case to the extent it seeks documents outside of the relevant

Time Period. JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and

"Avalere" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to

this Request to the extent it seeks documents and communications in the possession of entities

other than JJHCS.

JJHCS will not search for or produce documents responsive to this Request.

Dated: January 29, 2024

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:    /s/Jeffrey J. Greenbaum
       JEFFREY J. GREENBAUM
       KATHERINE M. LIEB

PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

14

# EXHIBITS 96-105
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 106

## Janssen Scientific Affairs, LLC

| Health Care Technology | Employees: 17 | Ultimate Parent: Johnson & Johnson | Immediate Parent: Johnson & Johnson |
|---|---|---|---|

1125 Trenton-Harbourton Road
Titusville, New Jersey 08560-0200
United States
Phone: (800) 526-7736

Janssen Scientific Affairs, LLC operates a medical information Website for health care professionals in the United States. It provides on-line access to scientific and clinical information on products marketed in the United States from Ortho-McNeil-Janssen Pharmaceuticals, Inc. and Scios Inc. The company is based in Titusville, New Jersey. Janssen Scientific Affairs, LLC operates as a subsidiary of Johnson & Johnson.

### Latest Investors

| Investor | Latest Transaction Date | Transaction Size (USD in mm) | Amount Invested (USD in mm) | Status |
|---|---|---|---|---|
| Johnson & Johnson (NYSE:JNJ) | - | - | - | Current |

---

Date Created: May-10-2024

Copyright © 2024 S&P Global Market Intelligence, a division of S&P Global Inc. All Rights reserved.

**S&P Capital IQ**

Historical Equity Pricing Data supplied by Interactive Data Pricing and Reference Data LLCs

Credit Default Swaps data provided by ICE CMA

# Exhibit 107

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

# Bloomberg

# JANSSEN GLOBAL SERVICES LLC

| | |
|---|---|
| TICKER: | 0824774D US |
| CURRENCY: | USD |
| MARKET CAP: | 0.00 (M) |
| ENTERPRISE VALUE: | 0.00 (M) |
| GENERATED ON: | 05/10/2024 |

This report may not be modified or altered in any way. The BLOOMBERG PROFESSIONAL service and BLOOMBERG Data are owned and distributed locally by Bloomberg Finance LP ("BFLP") and its subsidiaries in all jurisdictions other than Argentina, Bermuda, China, India, Japan and Korea (the "BFLP Countries"). BFLP is a wholly-owned subsidiary of Bloomberg LP ("BLP"). BLP provides BFLP with all the global marketing and operational support and service for the Services and distributes the Services either directly or through a non-BFLP subsidiary in the BLP Countries. BFLP, BLP and their affiliates do not provide investment advice, and nothing herein shall constitute an offer of financial instruments by BFLP, BLP or their affiliates.

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

**Bloomberg**                                              Public Information Book: JANSSEN GLOBAL S

## TABLE OF CONTENTS

Company Profile                                                                        3
Management Information                                                                  7
Capital Structure                                                                      9
Comparables Analysis                                                                  11
Financial Analysis                                                                    13
Company News                                                                          15

This report may not be modified or altered in any way. The BLOOMBERG PROFESSIONAL service and BLOOMBERG Data are owned and distributed locally by Bloomberg Finance LP ("BFLP") and its subsidiaries in all jurisdictions other than Argentina, Bermuda, China, India, Japan and Korea (the "BFLP Countries"). BFLP is a wholly-owned subsidiary of Bloomberg LP ("BLP"). BLP provides BFLP with all the global marketing and operational support and service for the Services and distributes the Services either directly or through a non-BFLP subsidiary in the BLP Countries. BFLP, BLP and their affiliates do not provide investment advice, and nothing herein shall constitute an offer of financial instruments by BFLP, BLP or their affiliates.

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

# Company Profile

>>> Company Overview, Management & Board
>>> Market Activity Overview
>>> Key Financial Metrics & Comparables

This report may not be modified or altered in any way. The BLOOMBERG PROFESSIONAL service and BLOOMBERG Data are owned and distributed locally by Bloomberg Finance LP ("BFLP") and its subsidiaries in all jurisdictions other than Argentina, Bermuda, China, India, Japan and Korea (the "BFLP Countries"). BFLP is a wholly-owned subsidiary of Bloomberg LP ("BLP"). BLP provides BFLP with all the global marketing and operational support and service for the Services and distributes the Services either directly or through a non-BFLP subsidiary in the BLP Countries. BFLP, BLP and their affiliates do not provide investment advice, and nothing herein shall constitute an offer of financial instruments by BFLP, BLP or their affiliates.

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

| Bloomberg | Public Information Book: JANSSEN GLOBAL S |
|---|---|

## Janssen Global Services LLC

| | | |
|---|---|---|
| **Sector: N.A.** | **Industry: N.A.** | **Currency:**<br>**Primary Exchange:** |

Janssen Global Services LLC overseas and leads the business practices of a number of companies that fall under it's same parent company. The Company handles marketing, market access, global communication, public affairs, business development, and other areas.

### Summary

| | | | | | |
|---|---|---|---|---|---|
| Website | N.A. | Revenue(M) | 0.00 | YTD Return | 0.00 |
| Address | | Current Price | 0.00 | 52 Week Return | 0.00 |
| No of Employees | 0 | 52 Week High | 0.00 | Next Earnings | N.A. |
| | | 52 Week Low | 0.00 | Announcement | |
| | | Mkt Cap(M) | 0.00 | Prior Announcement | N.A. |

### Key Insights

5Y widened 2 bps to 21 bps
No halts
Sentiment unchanged last 8 hours
Normal readership vs last 30D
Normal publication vs last 45D

### One Year Daily Price and Volume

### Recent News

| | | |
|---|---|---|
| Janssen Confirms Does Not Intend to Make an Offer for Horizon | BFW | 3-Dec |
| Morphic, Janssen Expand Collaboration on Integrin Program | MTN | 5-Jan |
| Janssen Terminates Phase 3 Study of Lupus Drug Due to Lack of Efficacy | MTN | 26-Jun |
| FDA Approves Janssen's Xarelto for Preventing Blood Clots in Acutely Ill Patients | MTN | 14-Oct |

### Current Capitalization (USD Millions)

This report may not be modified or altered in any way. The BLOOMBERG PROFESSIONAL service and BLOOMBERG Data are owned and distributed locally by Bloomberg Finance LP ("BFLP") and its subsidiaries in all jurisdictions other than Argentina, Bermuda, China, India, Japan and Korea (the "BFLP Countries"). BFLP is a wholly-owned subsidiary of Bloomberg LP ("BLP"). BLP provides BFLP with all the global marketing and operational support and service for the Services and distributes the Services either directly or through a non-BFLP subsidiary in the BLP Countries. BFLP, BLP and their affiliates do not provide investment advice, and nothing herein shall constitute an offer of financial instruments by BFLP, BLP or their affiliates.

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

**Bloomberg**                                    Public Information Book: JANSSEN GLOBAL S

**Historical Analyst Recommendation and 12M Target Price**

**Firm Analyst Consensus**

| | |
|---|---|
| Consensus Rating | 0.00 |
| Buys | 0 |
| Holds | 0 |
| Sells | 0 |

This report may not be modified or altered in any way. The BLOOMBERG PROFESSIONAL service and BLOOMBERG Data are owned and distributed locally by Bloomberg Finance LP ("BFLP") and its subsidiaries in all jurisdictions other than Argentina, Bermuda, China, India, Japan and Korea (the "BFLP Countries"). BFLP is a wholly-owned subsidiary of Bloomberg LP ("BLP"). BLP provides BFLP with all the global marketing and operational support and service for the Services and distributes the Services either directly or through a non-BFLP subsidiary in the BLP Countries. BFLP, BLP and their affiliates do not provide investment advice, and nothing herein shall constitute an offer of financial instruments by BFLP, BLP or their affiliates.

Bloomberg                                            Public Information Book: JANSSEN GLOBAL S

**Fiscal Year Financial Performance and Estimates ( Millions)**

|  | - | - | - | - | - | - | - |
|---|---|---|---|---|---|---|---|
| **Revenue** | - | - | - | - | - | - | - |
| *Growth %* | - | - | - | - | - | - | - |
| **Gross Profit** | - | - | - | - | - | - | - |
| *Gross Margin %* | - | - | - | - | *N.A.* | *N.A.* | *N.A.* |
| **EBITDA** | - | - | - | - | - | - | - |
| *EBITDA Margin %* | - | - | - | - | - | - | - |
| **Operating Profit** | - | - | - | - | - | - | - |
| *Operating Margin %* | - | - | - | - | - | - | - |
| **Net Income (Adj)** | - | - | - | - | - | - | - |
| *Profit Margin %* | - | - | - | - | - | - | - |
| **Return On Assets %** | - | - | - | - | - | - | - |
| **Return On Equity %** | - | - | - | - | - | - | - |

**Credit Ratings**

|  | 0824774D |
|---|---|
| Fitch Rating | - |
| Moody's Rating | - |
| S&P Rating | - |

**Credit Ratios**

|  | 0824774D |
|---|---|
| Secured Debt/EBITDA | - |
| Unsecured Debt/EBITDA | - |
| Subordinated Debt/EBITDA | - |
| Total Debt/EBITDA | - |
| Net Debt / EBITDA | 0.0 |
| EBITDA / Tot Int Exp | 0.0 |

**Global Industry Classification Standard**

| Sector Code | Sector Name | Industry Group Name | Industry Name | Sub-Industry Name |
|---|---|---|---|---|
| N.A. | N.A. | N.A. | N.A. | N.A. |

This report may not be modified or altered in any way. The BLOOMBERG PROFESSIONAL service and BLOOMBERG Data are owned and distributed locally by Bloomberg Finance LP ("BFLP") and its subsidiaries in all jurisdictions other than Argentina, Bermuda, China, India, Japan and Korea (the "BFLP Countries"). BFLP is a wholly-owned subsidiary of Bloomberg LP ("BLP"). BLP provides BFLP with all the global marketing and operational support and service for the Services and distributes the Services either directly or through a non-BFLP subsidiary in the BLP Countries. BFLP, BLP and their affiliates do not provide investment advice, and nothing herein shall constitute an offer of financial instruments by BFLP, BLP or their affiliates.

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

| Bloomberg | Public Information Book: JANSSEN GLOBAL S |
|---|---|

# Management Information

>>> Overview
>>> Key Executives
>>> Board of Directors

This report may not be modified or altered in any way. The BLOOMBERG PROFESSIONAL service and BLOOMBERG Data are owned and distributed locally by Bloomberg Finance LP ("BFLP") and its subsidiaries in all jurisdictions other than Argentina, Bermuda, China, India, Japan and Korea (the "BFLP Countries"). BFLP is a wholly-owned subsidiary of Bloomberg LP ("BLP"). BLP provides BFLP with all the global marketing and operational support and service for the Services and distributes the Services either directly or through a non-BFLP subsidiary in the BLP Countries. BFLP, BLP and their affiliates do not provide investment advice, and nothing herein shall constitute an offer of financial instruments by BFLP, BLP or their affiliates.

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

| Bloomberg | Public Information Book: JANSSEN GLOBAL S |
|---|---|

# MANAGEMENT INFORMATION

### Overview

| Executives | |
|---|---|
| Number of Executives | 0.0 |
| Average Reported Compensation (MM) | |
| Average Age | |
| Average Tenure | |
| **Board Members** | |
| Number of Board Members | 0.0 |
| Independent Directors | 0.0 |
| Members Owning Shares | 0.0 |
| On Boards of Peers | 0.0 |
| On Boards of Other Companies | 0.0 |
| Average Age | |
| Average Tenure (Years) | |

This report may not be modified or altered in any way. The BLOOMBERG PROFESSIONAL service and BLOOMBERG Data are owned and distributed locally by Bloomberg Finance LP ("BFLP") and its subsidiaries in all jurisdictions other than Argentina, Bermuda, China, India, Japan and Korea (the "BFLP Countries"). BFLP is a wholly-owned subsidiary of Bloomberg LP ("BLP"). BLP provides BFLP with all the global marketing and operational support and service for the Services and distributes the Services either directly or through a non-BFLP subsidiary in the BLP Countries. BFLP, BLP and their affiliates do not provide investment advice, and nothing herein shall constitute an offer of financial instruments by BFLP, BLP or their affiliates.

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

# Capital Structure

>>> Capital Structure Distribution
>>> Debt Distribution

This report may not be modified or altered in any way. The BLOOMBERG PROFESSIONAL service and BLOOMBERG Data are owned and distributed locally by Bloomberg Finance LP ("BFLP") and its subsidiaries in all jurisdictions other than Argentina, Bermuda, China, India, Japan and Korea (the "BFLP Countries"). BFLP is a wholly-owned subsidiary of Bloomberg LP ("BLP"). BLP provides BFLP with all the global marketing and operational support and service for the Services and distributes the Services either directly or through a non-BFLP subsidiary in the BLP Countries. BFLP, BLP and their affiliates do not provide investment advice, and nothing herein shall constitute an offer of financial instruments by BFLP, BLP or their affiliates.

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

| Bloomberg | Public Information Book: JANSSEN GLOBAL S |
|---|---|

## CAPITAL STRUCTURE

This report may not be modified or altered in any way. The BLOOMBERG PROFESSIONAL service and BLOOMBERG Data are owned and distributed locally by Bloomberg Finance LP ("BFLP") and its subsidiaries in all jurisdictions other than Argentina, Bermuda, China, India, Japan and Korea (the "BFLP Countries"). BFLP is a wholly-owned subsidiary of Bloomberg LP ("BLP"). BLP provides BFLP with all the global marketing and operational support and service for the Services and distributes the Services either directly or through a non-BFLP subsidiary in the BLP Countries. BFLP, BLP and their affiliates do not provide investment advice, and nothing herein shall constitute an offer of financial instruments by BFLP, BLP or their affiliates.

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

# Comparables Analysis

>>> Revenue Breakdown by Industry
>>> Equity Comparables

This report may not be modified or altered in any way. The BLOOMBERG PROFESSIONAL service and BLOOMBERG Data are owned and distributed locally by Bloomberg Finance LP ("BFLP") and its subsidiaries in all jurisdictions other than Argentina, Bermuda, China, India, Japan and Korea (the "BFLP Countries"). BFLP is a wholly-owned subsidiary of Bloomberg LP ("BLP"). BLP provides BFLP with all the global marketing and operational support and service for the Services and distributes the Services either directly or through a non-BFLP subsidiary in the BLP Countries. BFLP, BLP and their affiliates do not provide investment advice, and nothing herein shall constitute an offer of financial instruments by BFLP, BLP or their affiliates.

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

| Bloomberg | Public Information Book: JANSSEN GLOBAL S |
|---|---|

## COMPARABLES ANALYSIS



This report may not be modified or altered in any way. The BLOOMBERG PROFESSIONAL service and BLOOMBERG Data are owned and distributed locally by Bloomberg Finance LP ("BFLP") and its subsidiaries in all jurisdictions other than Argentina, Bermuda, China, India, Japan and Korea (the "BFLP Countries"). BFLP is a wholly-owned subsidiary of Bloomberg LP ("BLP"). BLP provides BFLP with all the global marketing and operational support and service for the Services and distributes the Services either directly or through a non-BFLP subsidiary in the BLP Countries. BFLP, BLP and their affiliates do not provide investment advice, and nothing herein shall constitute an offer of financial instruments by BFLP, BLP or their affiliates.

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

# Financial Analysis

This report may not be modified or altered in any way. The BLOOMBERG PROFESSIONAL service and BLOOMBERG Data are owned and distributed locally by Bloomberg Finance LP ("BFLP") and its subsidiaries in all jurisdictions other than Argentina, Bermuda, China, India, Japan and Korea (the "BFLP Countries"). BFLP is a wholly-owned subsidiary of Bloomberg LP ("BLP"). BLP provides BFLP with all the global marketing and operational support and service for the Services and distributes the Services either directly or through a non-BFLP subsidiary in the BLP Countries. BFLP, BLP and their affiliates do not provide investment advice, and nothing herein shall constitute an offer of financial instruments by BFLP, BLP or their affiliates.

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

**Bloomberg**                                    Public Information Book: JANSSEN GLOBAL S

## FINANCIAL ANALYSIS
**There is no FA data for this security**

This report may not be modified or altered in any way. The BLOOMBERG PROFESSIONAL service and BLOOMBERG Data are owned and distributed locally by Bloomberg Finance LP ("BFLP") and its subsidiaries in all jurisdictions other than Argentina, Bermuda, China, India, Japan and Korea (the "BFLP Countries"). BFLP is a wholly-owned subsidiary of Bloomberg LP ("BLP"). BLP provides BFLP with all the global marketing and operational support and service for the Services and distributes the Services either directly or through a non-BFLP subsidiary in the BLP Countries. BFLP, BLP and their affiliates do not provide investment advice, and nothing herein shall constitute an offer of financial instruments by BFLP, BLP or their affiliates.

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

# Company News

>>> Tale of misleading advertising! From Patanjali, Cadbury, and Nestle to Johnson & Johnson
>>> Target Bandages Mislabeled as Sterile Contain PFAS, Suit Says
>>> MGTX: MeiraGTx reports Q1 EPS (32c) vs. (62c) last year

This report may not be modified or altered in any way. The BLOOMBERG PROFESSIONAL service and BLOOMBERG Data are owned and distributed locally by Bloomberg Finance LP ("BFLP") and its subsidiaries in all jurisdictions other than Argentina, Bermuda, China, India, Japan and Korea (the "BFLP Countries"). BFLP is a wholly-owned subsidiary of Bloomberg LP ("BLP"). BLP provides BFLP with all the global marketing and operational support and service for the Services and distributes the Services either directly or through a non-BFLP subsidiary in the BLP Countries. BFLP, BLP and their affiliates do not provide investment advice, and nothing herein shall constitute an offer of financial instruments by BFLP, BLP or their affiliates.

# Tale of misleading advertising! From Patanjali, Cadbury, and Nestle to Johnson & Johnson

Tale of misleading advertising! From Patanjali, Cadbury, and
Nestle to Johnson & Johnson

By Shailja Tiwari

May 10 (Financial Express) -- What is the role of an
advertisement? Simply place a brand in the spotlight to be able
to gain consumer attention. The advertisement is further built
on a narrative where claims are made to project its unique
proposition to consumers.  In a race to capture consumer's
share of the wallet, brands have often got it wrong with
misleading claims in their advertisements. Case in point: the
recent case of FMCG firm Patanjali being pulled up by the
Supreme Court for its misleading ads. Uttarakhand State
Licensing Authority (SLA) suspended the manufacturing licenses
of 14 Patanjali Ayurved Ltd and Divya Pharmacy products in
April 2024 which includes Swasri Gold Capsules, Swasari Vati,
Bronchom, Swasari Pravahi, Swasari Avaleh, Mukta Vati Extra
Power, Lipidom, BP Grit, Madhugrit, and Divya Eye drops, among
others. Furthermore, SC orders removal of online ads and halts
sale of suspended products on account of unsubstantiated health
claims. " Misleading ads have been on the rise and brands may
resort to misleading advertising for reasons which include to
garner higher market share, pressure to meet sales targets,
competition, and a lack of ethical guidelines. In today's hyper-
competitive market, companies may feel compelled to exaggerate
product benefits or make false claims to stand out and attract
customers. Additionally, there might be internal pressure from
stakeholders to achieve aggressive sales goals, leading to
shortcuts in marketing ethics," Smita Khanna, COO, Newton
Consulting, told BrandWagon Online.

It is here that the Advertising Standard Council of India
(ASCI) claims to play a proactive role in monitoring and
complaint-handling systems to identify and address a
significant number of misleading advertisements. In the year
2023-24, ASCI evaluated 8299 advertisements, of which 81% were
violations of Chapter I - misleading ads. 94% of these
violations were a result of our proactive monitoring.
Furthermore, 98% of the advertisements required modification,
while 49% of the advertisements were not contested; they were
promptly withdrawn or modified, it stated.

To be sure, this isn't the first time that brands have
been caught in such controversy. For instance, despite years of
advertising and building a brand Nestle faced a backlash in
2015 after the Food Safety and Standards Authority of India
(FSSAI) conducted tests on Maggi noodles and discovered
elevated levels of lead and monosodium glutamate (MSG) beyond
permissible limits. With hashtags like#BoycottMaggi trending

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

online to consumers protesting on the streets, the brand was also banned. The product returned to stores after a court lifted the restriction. Nestle has since then removed the claim, 'No added MSG'. And if this is anything but a drop in the ocean, it is rather difficult to forget the infamous Johnson & Johnson controversy surrounding its baby powder. The company is expected to end global sales of baby powder containing the mineral talc in 2023, switching to a formulation based on corn starch. The company is facing over 40,000 lawsuits in the US alleging that baby powder contaminated with asbestos-caused ovarian cancer or mesothelioma. Early this month, Johnson & Johnson, said it is moving forward with a $6.48 billion proposed settlement of tens of thousands of lawsuits alleging that its baby powder and other talc products contain asbestos and cause ovarian cancer.

The case of falling brands!

Industry experts acknowledge that when a company achieves brand status, especially becoming a household name like Patanjali products, Maggi noodles, Nestle baby food, or Bournvita drink, it reflects successful efforts in winning consumer trust and loyalty. The process of building brand recognition is considered pivotal as it creates a sense of familiarity and captures consumers' attention. Genuine brand loyalty, experts emphasise, is built on trust. In the competitive landscape, brands consistently aim to differentiate themselves from their competitors, and in order to do that, creative advertising gets launched."The initial intent of  any brand is not to mislead consumers but to establish a claim that differentiates its product in the market. However, if these claims lack substantiation with data and facts, they are now being questioned. It is crucial for brands to support their statements with honesty and factual evidence to build credibility. With numerous cases of false and misleading claims, brands cannot escape scrutiny, especially with today's consumer, particularly the younger generation, being well-informed," Anisha Motwani, strategic advisor, mentor and independent board director, said.

Experts suggest that Patanjali's market share may not be significantly impacted by the recent developments, as a large portion of their consumers is from tier 2, 3, and 4 cities which does not usually get affected by news. Patanjali's business model heavily relies on retail stores rather than e-commerce, with existing stocks readily available for sale." In the case of Fair & Lovely,  HUL (Hindustan Unilever) decided to go away with the 'fairness' proposition a couple of years back. But the promise of a fair skin within six weeks attracted innumberble Indians over the years. It was only in 2023 that there was a decline in the overall fairness cream market as consumers started demanding more inclusive brands," Khanna explained.

Industry experts believe that when brands face scrutiny

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

for false claims, consumer trust in the entire industry can erode. Additionally, legal cases and negative publicity can tarnish the reputation of e-commerce platforms and offline retailers that carry the implicated products, potentially leading to a loss of customer confidence and loyalty. Overall, the fallout from misleading advertising and legal cases can have ripple effects throughout the industry, impacting businesses across the supply chain. "ASCI participates in several discussions and consultations and works closely with regulatory bodies frequently. It recognises that brand reputation and consumer trust are interconnected and is vigilant in monitoring controversies or breaches of the ASCI Code. In the long-term advertisers who consistently breach the rules lose consumer trust and credibility. ASCI regularly shares the list of deliberate and repeat offenders with the government so that they can investigate and enforce appropriate legal penalties," Manisha Kapoor, CEO and secretary-general, ASCI, said.

Paint the town red!

When brands face backlash and potential boycotts from its audience, it is believed that the only viable option, other than shutting down, is to improve and rebrand by addressing the concerns. Historically, brands have taken initiatives to regain consumer trust and market share through such measures. For instance, Maggi received  a major boycott in 2015 after regulators found excessive levels of lead and MSG in their noodles and it relaunched itself after a year with improved product quality and transparent communication. Additionally, when Dettol and Lifebuoy were questioned for claiming exaggerated 100% germ killing they tweaked it as 99.9% germ killing and Fair&Lovely rebranded itself as Glow&Lovely after backlash from audiences. Similarly, Bournvita and Horlicks, known for their claims of boosting mental and physical growth, came under fire for lacking scientific backing; these brands adjusted their advertising to focus on being general health drinks.

After facing public scrutiny, brands often adjust their marketing and advertising strategies as part of their efforts to rebrand and reconnect with audiences. Industry experts assert that consumers feel a sense of betrayal when they have been loyal to a brand, entrusting their choices among various products offered. "In this dynamic landscape, brands need to exercise caution in their communication, as today's consumers are discerning and vocal. Instances of miscommunication or misleading claims have led to a loss of faith in brands in the past. Therefore, it is crucial for brands to take proactive steps to restore consumer trust if such issues arise, even if unintentional," Anita Nayyar, a media, branding and communication expert said.

Moreover, industry experts note that today's consumers are informed and conscientious. They read label claims and assess

18/21

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

nutritional values on packaging. In this, influencers and bloggers play a significant role in educating consumers about packaged food, discussing both its positive and negative aspects.

Can AI be an ad detective?

Experts believe that technology can address and identify cases of wrong labels, false claims, and misleading advertisements in today's digital age of transformation. ASCI claims to have invested in in AI and technology to enhance its monitoring capabilities and streamline case processing. In the fiscal year 2023-24, ASCI claims to have processed 8229 ads, with 99% of them requiring modification. Notably, 49% of these cases (3951) were not contested by the advertiser, leading to withdrawals or modifications of the ads. Comparatively, in 2022-23, out of 7828 ads reviewed, 97% needed modification, with 33% (2537) not being contested by the advertiser. " ASCI is one of the few self-regulatory organisations (SRO) in the world that use AI capabilities as part of its ongoing monitoring efforts to identify misleading advertisements as well as influencer violations. 80% of the advertisements processed in the previous fiscal year were from our digital suo moto efforts. AI and machine learning are also embedded in ASCI's complaints management system to help increase processing efficiency," Kapoor highlighted.

Moreover, industry experts advise that detection software and AI-powered algorithms can be trained to analyse ad content and detect deceptive claims or misleading information. Natural language processing (NLP) techniques can help identify inconsistencies or exaggerations in ad copy. Image recognition technology can flag manipulated or altered visuals. Furthermore, data analytics can be utilised to track consumer feedback and sentiment, helping to identify ads that are perceived as misleading. Collaboration between technology companies, regulatory bodies, and industry stakeholders can facilitate the development of standardised tools and protocols for identifying and reporting misleading ads. " In a world shifting towards transparency and digital engagement, educating consumers early on label understanding and product scrutiny is pivotal. Brands embracing authenticity and accountability will thrive by serving consumers better, every day," Alekhya Chakrabarty, VP - marketing, Unstop, concluded.

Copyright 2024 IE Online Media Services Pvt. Ltd., distributed by Contify.com

-0- May/10/2024 12:12 GMT

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

# Target Bandages Mislabeled as 'Sterile' Contain PFAS, Suit Says

By Shweta Watwe

(Bloomberg Law) -- Target Corp.'s Up & Up flexible bandages were deceptively marketed as "sterile" despite containing harmful per- and polyfluoroalkyl substances, a new proposed consumer class action alleges.

Nowhere on the bandage packaging or labels does Target disclose the presence of PFAS, the complaint, filed Wednesday in the US District Court for the Middle District of Florida, says. "Reasonable consumers would believe" the bandages "to be free of harmful toxins, plaintiff Brenda Gudgel says.

The complaint notes that the Environmental Protection Agency has said PFAS can be harmful even at very low levels of exposure, "including at near zero in some instances."

Gudgel brings claims for violations of Florida's Deceptive and Unfair Trade Practices Act, false advertising, and unjust enrichment. She seeks to represent both nationwide and Florida consumer classes and seeks damages.

The case is assigned to Judge Paul G. Byron.

Target didn't immediately respond to a request for comment.

Gudgel's lawsuit follows a similar one filed against Johnson & Johnson in April. Both proposed class actions ground their claims in a report from Mamavation, a consumer watchdog blog, that found elevated levels of PFAS in common bandage brands. The report says Target's bandages had 256 arts per million on the absorbent pad and 253 parts per million on the sticky flaps.

PFAS have been used in industrial processes and consumer products since the 1940s due to their non-stick, heat resistant, and water-repellent properties. The substances are also known as "forever chemicals" because they can take thousands of years to break down due to the strength of the carbon-fluorine bond.

PFAS exposure has been linked to increase risk of cancer and various immune system disruptions.

Multiple consumer product makers have been hit with lawsuits over PFAS in food packaging, cosmetics, and clothing.

Gudgel is represented by The Wright Law Office.

The case is Gudgel v. Target Corp., M.D. Fla., No. 6:24-cv-00870, complaint filed 5/8/24.

To contact the reporter on this story: Shweta Watwe in Washington at swatwe@bloombergindustry.com

To contact the editor responsible for this story: Nicholas Datlowe at ndatlowe@bloombergindustry.com

For the exclusive use of JACK WALT of SELENDY & GAY PLLC

# MGTX: MeiraGTx reports Q1 EPS (32c) vs. (62c) last year

Reports Q1 revenue $700K vs. $3.33M last year. "MeiraGTx's Q1 was highlighted by significant progress in our wholly-owned late stage clinical programs, including our pivotal xerostomia program and Parkinson's program as well as our riboswitch platform," said CEO Alexandria Forbes. "...Dosing in our pivotal Phase 2 AQUAx2 trial is ongoing, and we are pleased to have aligned with FDA on requirements for this Phase 2 study to be considered pivotal to support potential BLA filing for this significant unmet need...we remain on track to discuss Phase 3 study design with global regulators for Parkinson's disease in the second half of 2024. In addition, we continue to anticipate data from the large, multi-center Phase 3 study of bota-vec for XLRP-RPGR in collaboration with Janssen Pharmaceuticals, Inc. (Janssen) towards the end of this year, setting up the potential $285M in milestones under the asset purchase agreement we entered into with Janssen late last year...We are prioritizing moving one or more of these incretin, myokine and adipokine combinations towards the clinic to provide a completely differentiated approach to addressing obesity and metabolic disease."

This story was produced by The Fly. To learn more, or to request a free trial of The Fly's proprietary Events and Syndicate calendars, visit {TFOW}. For sales inquiries or API information, contact sales@thefly.com.

Provider ID: 3915197 -0- May/09/2024 12:08 GMT

# EXHIBITS 108-109
# CONFIDENTIAL – FILED UNDER SEAL