# Exhibit 3

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHNSON & JOHNSON HEALTH CARE
SYSTEMS INC.,

           Plaintiff,

    v.

SAVE ON SP, LLC,

           Defendant.

Case No. 2:22-cv-02632-JMV-CLW

## STIPULATION AND ORDER
## GOVERNING THE EXCHANGE OF ELECTRONICALLY STORED INFORMATION

Upon agreement of the Parties for entry of an order establishing a protocol for the exchange and production of documents in hard-copy format ("Documents") and electronically stored information ("ESI"), as those terms are used in the Federal Rules of Civil Procedure, plaintiff Johnson & Johnson Health Care Systems Inc. ("Plaintiff") and Defendant Save On SP, LLC ("Defendant") (each a "Party" and, collectively, the "Parties") hereby stipulate ("ESI Stipulation") and the Court orders as follows:

## I.    GENERAL PROVISIONS

A.    The Parties and non-parties producing Documents and ESI (each a "Producing Party") shall prepare their Documents and ESI for production to the Parties receiving the production (each a "Receiving Party") in accordance with this ESI Stipulation.

B.    If a provision of this agreement conflicts with the terms of the stipulated Discovery Confidentiality Order (ECF No. 62) (the "Confidentiality Stipulation") entered in this action,[1] the Confidentiality Stipulation will control absent further order of the Court.

---

[1] Defined terms in the Confidentiality Stipulation not otherwise defined herein are incorporated.

C. <u>Proportionality</u>

1. <u>Reasonable Discovery Limits</u>. The proportionality standard set forth in Rule 26(b)(1) shall apply to discovery in this action. Consistent with that proportionality standard, the Parties agree to cooperate in identifying appropriate limits on discovery, including phased discovery and reasonable limits on search terms and the number of custodians, on discoverable data sources, on the relevant period, and on the permissible scope of requests for production, specifically including the permissible scope of requests for emails. Requests for production of ESI, including requests for emails, shall be reasonably targeted, clear, and as specific as possible.

D. <u>No Designation of Discovery Requests</u>. Productions of Documents and ESI in the reasonably usable form set out in this protocol need not be organized and labeled to correspond to the categories in the requests.

## II.    PRODUCTION OF HARD COPY DOCUMENTS

A. <u>TIFFs</u>. Producing Parties shall produce Documents in the form of single-page, Group IV TIFFs at 300 dpi. They shall name each TIFF image as its corresponding Bates number. They shall maintain Original Document orientation (*i.e.,* portrait to portrait and landscape to landscape). They shall provide TIFF image files in a self-identified "Images" folder.

B. <u>OCR Text Files</u>. Producing Parties shall provide Optical Character Recognition ("<u>OCR</u>") text files as a single text file for each Document, not one text file per page. They shall name each file with the beginning Bates number assigned to its corresponding Document, followed by .txt. They shall provide OCR text files in a self-identified "Text" directory. To the extent that a Document is redacted, they shall produce OCR text files for that Document that shall not contain text for redacted portions.

2

C.      <u>Database Load Files/Cross-Reference Files</u>. Unless otherwise agreed by the Parties, Producing Parties shall provide Documents with Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files) using standard Concordance delimiters. They shall provide Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files) in a self-identified "Data" folder.

D.      <u>Coding Fields</u>. Producing Parties shall produce Documents with at least the following searchable information in accompanying delimited data files: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodians, (6) OCRTextPath, (7) Confidentiality, and (8) Source. When a Producing Party determines in good faith judgment that it is practicable to accompany Documents with other metadata fields in Table I, the Producing Party shall produce those Documents with the practicable metadata fields. Producing Parties shall identify custodians using any of the following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first name_last name"; or "FLast." Producing Parties shall use a uniform description of a particular custodian, and separate multiple custodians in the "Custodian" field by a semicolon. For Documents with no individual custodian (*e.g.*, centralized files, document management systems), Producing Parties shall (a) use the relevant entity name(s) in the "Custodian" field and (b) identify the source of the Documents in the "Source" field.

E.      <u>Bates Numbering</u>. Producing Parties shall assign each TIFF image a Bates number that: (1) is unique across the entire production; (2) maintains a constant length across the entire production (*i.e.*, padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given Document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

F. _Parent-Child Relationships_. Producing Parties shall preserve parent-child relationships (_i.e._, the association between an attachment and its parent Document), to the extent they exist in the manner in which the Documents are maintained in the ordinary course of business. For example, if a Producing Party produces a printout of an email with its attachments, it shall produce such attachments behind the email in the order in which they were attached.

G. _Color_. Producing Parties need not, in the first instance, produce Documents containing color in color format. The Receiving Party may request production of such Documents in color format by (1) providing a list of the Bates numbers of the Document(s); and (2) explaining the need for production of the Documents in color format. Consent to produce in color shall not be unreasonably withheld.

H. _Unitizing of Documents_. A Producing Party shall not, when scanning Documents: (1) merge distinct Documents into a single record; or (2) split single Documents into multiple records (_i.e._, Documents should be logically unitized).

## III. PRODUCTION OF ESI

A. _Technology Assisted Review ("TAR")_.

1. Any Producing Party that wishes to use TAR agrees to disclose that intent to the Receiving Party before the Producing Party employs any TAR and must meet-and-confer with the Receiving Party regarding an appropriate TAR protocol. The Producing Party will identify the universe of Documents or ESI to which it intends to apply TAR. The Producing Party may not use TAR to limit or cull Documents or ESI to be reviewed without the prior consent of the Receiving Party. If the parties are unable to reach agreement on an appropriate protocol, or if the Receiving Party withholds consent, any such disputes shall be resolved by the Court.

4

2.      The absence of a search term hit or retrieval by TAR methodology for a given ESI or Document does not automatically render it irrelevant. If any Producing Party identifies relevant ESI or Documents not hit upon by the search term filters noted above, it shall produce such non-privileged Documents and/or ESI, subject to the Producing Party's objections to discovery requests and rights under this ESI Protocol, the Local Rules, and this Court's individual rules.

3.      The fact that any electronic file has been identified in agreed-upon searches shall not prevent any Producing Party from withholding such file from production on the grounds that the file is not responsive or relevant, or that it is responsive or relevant but protected from disclosure by applicable privilege or immunity (in which case the Producing Party shall include it on a privilege log), or that the Protective Order entered in this Action allows the file to be withheld.

B.      Avoidance of Duplicate Production

1.      "Duplicate ESI" means files that are exact duplicates based on the files' MD5 hash, SHA-1 hash, email duplicate spare messages (as defined by Relativity), or SHA-256 hash values. The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (i.e., both within a particular custodian's files and across all custodians). Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When the same Duplicate ESI exists in the files of multiple custodians, the additional custodians shall be listed in the "All Custodians" field identified in Table I to the extent such information is available.

2.      The Parties may confer regarding other deduplication methods, such as the use of Textual Near Deduplication. Except for the removal of extracted logos, no custom deduplication method will be implemented without the consent of the Receiving Party, and such consent shall not be unreasonably withheld.

3.      If the Producing Party collects and processes additional ESI which contains duplicates of ESI previously produced, that Party also shall provide an overlay file to allow the Receiving Party to update the "All Custodians" field. The overlay file shall include both all custodians listed in the "All Custodians" field in prior productions and any custodians identified in the newly processed ESI.

C.    Email Threading

1.      Email threads are email communications that contain lesser-included email communications that also may exist separately in the Party's electronic document collection. A most-inclusive email is one that contains unique content and all the lesser-included emails, including attachments, for that branch of the email thread. The Parties agree that removal of available lesser-included emails from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting, and, when producing the most-inclusive email in a thread, the parties need not also produce lesser-included emails in the thread.

2.      Participants in lesser-included emails that otherwise would have been subject to review shall be listed in the most-inclusive email's "All Participants" field included in the data load file. With respect to an e-mail chain, the parties may produce the longest unique or most inclusive chain and the parties do not need to separately produce the lesser-included e-mails unless those lesser-included e-mails include unique attachments

6

not included in the longest chain or contain a BCC recipient not shown in the longest unique chain. If a lesser-included e-mail includes a unique attachment, or if the lesser-included email was modified in any way in a subsequent email, then the lesser-included e-mail must be separately produced with the attachment.

D.     <u>TIFFs</u>. Producing Parties shall produce ESI in the form of single-page, black and white, Group IV TIFFs at 300 dpi. They shall name each TIFF image as its corresponding Bates number. They shall maintain original document orientation (*i.e.*, portrait to portrait and landscape to landscape). They shall provide TIFF image files in a self-identified "Images" folder.

E.     <u>Parent-Child Relationships</u>. Producing Parties shall preserve parent-child relationships (*i.e.*, the association between an attachment and its parent file).

F.     <u>Metadata Fields and Processing</u>. Producing Parties shall produce each of the metadata and coding fields set forth in Table I that can be extracted from ESI for that ESI. They are not obligated to populate manually any of the fields in Table I if such fields cannot be extracted from the ESI, except for the following: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodians, (6) NativeLink, (7) Confidentiality, (8) Parent ID fields (which the Producing Party or its vendor may populate), and (9) Source. They shall identify custodians using any of the following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first name_last name"; or "FLast." A Producing Party shall use a uniform description of a particular custodian and separate multiple custodians by a semicolon in the "Custodians" field. For documents with no individual custodian (*e.g.*, centralized files, document management systems), Producing Parties shall (a) use the relevant entity name(s) in the "Custodian" field and (b) identify the source of the documents in the "Source" field.

G. Extracted Text Files. For all ESI (other than multimedia or graphic files), Producing Parties shall provide an extracted text file along with its corresponding TIFF image file(s) and metadata. They shall name each extracted text file such that it is identical to that of the first image page of its corresponding file, followed by .txt. They shall not use file names that contain special characters or embedded spaces and shall extract the text of native files directly from the native file. If a file contains redactions, however, the Producing Party may provide OCR of the redacted file in lieu of extracted text.

H. Database Load Files/Cross-Reference Files. Unless otherwise agreed to by the parties, Producing Parties shall include in each production (1) a metadata file (DAT file) using standard Concordance delimiters or carat pipe delimiters and (2) an image load file in Opticon format (.OPT file). They shall provide in a self-identified "Data" folder Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files).

I. Native Files. The following governs the production of native files.

1. Producing Parties shall produce PowerPoint presentations, source code, large diagrams, Excel files and/or .csv files, word processing files with tracked changes, comments, or hidden text (*e.g.*, Word), desktop databases (*e.g.*, Access), and audio/video multimedia files in native format ("Native Files"), unless they have redactions.

2. Producing Parties shall provide native files in a self-identified "Natives" directory. Producing Parties shall produce each native file with a corresponding single-page TIFF placeholder image, which shall state the ESI is being produced as a native file and provide the Confidentiality Designation, if any. Producing Parties shall name each native file with the beginning Bates number that is assigned to that specific record in the production.

8

3.     Producing Parties shall include a "NativeLink" entry for each native file in the .DAT load file indicating the relative file path to each native file on the production media. Producing Parties shall produce native files with extracted text and applicable metadata fields as set forth in Paragraphs III.E and III.F. Producing Parties may produce redacted files in either native format or as TIFF image files and OCR in lieu of a Native File, TIFF placeholder image and extracted text file. Producing Parties shall exclude any metadata fields for redacted files that would reveal privileged information.

4.     If produced as a TIFF, each Producing Party shall make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals hidden data from redacted native files that are produced as TIFF image files and ensures that redacted native files will be formatted to be readable. (For example, column widths should be formatted so that numbers do not appear as "#########").

J.     <u>Structured Data</u>. To the extent that responding to a discovery request requires production of ESI contained in a database, a Producing Party may query the database for discoverable information and generate and produce a report in a reasonably usable and exportable Excel or .csv format. The first line of each such file will, to the extent not unduly burdensome, show the column headers for each field of data included. The Parties shall meet and confer to finalize the appropriate data extraction and production format for specific information contained in a database.

K.     <u>Audio and Video Files.</u> Producing Parties shall produce audio and video files in a reasonably usable format as may be agreed upon by the Parties.

L.     <u>Requests for Other Native Files</u>. Other than as specifically set forth above, a Producing Party need not produce ESI in native format. The Receiving Party may request

production in native format of other documents by (1) providing a list of the Bates numbers of ESI it requests to be produced in native format; and (2) explaining the need for reviewing such ESI in native format.  The Responding Party may object and any disputes will be resolved by the Court. If the Producing Party agrees to produce such a native file, the Producing Party shall produce in response to such request each native file with corresponding production number fields and a "NativeLink" entry in the DAT load file indicating the relative file path to each native file on the production media, all extracted text (other than for multimedia or graphic files), and applicable metadata fields set forth in Table I.

### Table I-ESI Metadata Fields

| FIELD NAME | DESCRIPTION |
| --- | --- |
| **Author** | Author of document, if identified in metadata |
| **Begin Bates** | Unique document identifier and the starting page of a document (*e.g.*, ABC00000001) |
| **Bates End** | The end number of a document (*e.g.*, ABC0000099) |
| **Bates Beg Attach** | The starting number of a group or family of documents (*e.g.*, ABC0000001) |
| **Bates End Attach** | The end number of a group or family of the document (*e.g.*, ABC0000099) |
| **Custodian** | The owner of a document |
| **All Custodians** | List of all custodians who had custody of the document; when global de-duplication is used, these are custodians whose file has been de-duplicated; multiple custodians separated by semicolons |
| **All Participants** | For emails only, lists all participants included in lesser-included emails that, without email threading, would have been subject to review |
| **Filename** | The original name of the file |
| **File Extension** | File extension of document (*e.g.*, .msg, .docx, .xlsx, etc.) |
| **File Size** | The size of the file |

| FIELD NAME | DESCRIPTION |
|---|---|
| **Document Type** | Type of document (*e.g.*, email, e-document, attachment, hardcopy) |
| **Date Created** | Date document was created (*e.g.*, 01/01/2001) |
| **Time Created** | Time document was created (*e.g.*, 17:00) |
| **Date Last Modified** | Date the document was last modified (*e.g.*, 01/01/2001) |
| **Time Last Modified** | Time the document was last modified (*e.g.*, 17:00) |
| **Date Last Accessed** | Last access date of the document as extracted during processing from the file metadata |
| **Time Last Accessed** | Last access time of the document as extracted during processing from the file metadata |
| **Date Sent** | Date email was sent (*e.g.*, 01/01/2001) |
| **Time Sent** | Time email was sent (*e.g.*, 17:00) |
| **Date Received** | Date email was received (*e.g.*, 01/01/2001) |
| **Time Received** | Time email was sent (*e.g.*, 17:00) |
| **Email From** | Sender of email |
| **Email Subject** | Subject line of email |
| **Email To** | Recipient(s) of email |
| **Email BCC** | Blind-copied recipients of email |
| **Email CC** | Copied recipients of email |
| **MD5 Hash** | MD5 Hash Value of file |
| **Native Link** | Relative file path of native file |
| **File Path** | Original file path where file was kept (by the custodian) |
| **Pages** | Number of pages per document |

| FIELD NAME | DESCRIPTION |
|---|---|
| Confidenti-ality | Confidential, Confidential Health Information, or Attorneys' Eyes Only |
| Redactions | Yes/No |
| Source | Person, shared drive, or other source from whom files were collected |
| Prod Vol-ume | Volume in which the Document was produced (*e.g.*, VOL001) |

M.     Confidentiality Designations. If a Producing Party reduces native files or other ESI designated "Confidential," "Confidential Health Information," and/or "Attorneys' Eyes Only," as defined by the Confidentiality Stipulation, to Document form, it shall mark the Document with the appropriate designation. Producing Parties shall produce all ESI designated as "Confidential," "Confidential Health Information," and/or "Attorneys' Eyes Only" with the designation in the metadata field pursuant to Table I and in the ESI itself.

N.     Encryption of Production Media. To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media. The Receiving Parties in this matter are on notice that certain data produced may originate from custodians in the European Union and the Receiving Parties therefore agree to follow the strictest security standards in guarding access to such data.

O.     Time Zone. Producing Parties shall produce all ESI normalized to Eastern Standard Time (EST).

## IV. PROCESSING OF THIRD-PARTY DOCUMENTS

A. A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Stipulation with the subpoena and request that the non-party produce Documents and ESI in accordance with the specifications set forth herein. If an Issuing Party issued a non-party subpoena prior to the execution of this ESI Stipulation, that Issuing Party shall promptly forward a copy of this ESI Stipulation to the non-party and request that the non-party produce Documents and ESI in accordance with the specifications set forth herein.

B. The Issuing Party is responsible for producing to all other Parties any Documents and/or ESI obtained pursuant to a subpoena. If a non-party refuses to produce Documents and/or ESI in accordance with the specifications set forth here, the Issuing Party has no obligation to conform the non-party's production to such specifications.

C. Nothing in this ESI Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

## V. MISCELLANEOUS PROVISIONS

A. This ESI Stipulation is intended solely to address the format of Document and ESI productions. Nothing in this ESI Stipulation is intended to affect the rights of any Party to object to any requests or demand for production. Nothing in this ESI Stipulation shall constitute, or operate as, a waiver of any rights of any Party to object to, or to avoid, discovery or disclosure, in whole or in part, under the laws of the United States, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of New Jersey, the Individual Practices of Magistrate Judge Cathy L. Waldor, the Individual Practices of Judge John Michael Vazquez, or any other applicable law, rule, or order.

B.      Nothing in this ESI Stipulation establishes any agreement as to either the temporal or subject matter scope of discovery or as to the relevance or admissibility of any Document or ESI. Nothing in this ESI Stipulation shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI.

C.      The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Stipulation. If a Producing Party, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Stipulation or if compliance with such material aspect would be unreasonable, such Producing Party shall inform the Receiving Party in writing as to why compliance with the Stipulation is impossible or unreasonable as soon as reasonably practicable.

D.      Nothing herein is intended to, nor shall be construed to, diminish or otherwise affect any Party's discovery obligations.

E.      Any application to the Court under or regarding this ESI Stipulation shall be made pursuant to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of New Jersey, and the Individual Practices of Magistrate Judge Cathy L. Waldor.

Dated: Newark, New Jersey
     November 21, 2022

By:  */s/Jeffrey J. Greenbaum*
     Jeffrey J. Greenbaum
     Katherine M. Lieb
     SILLS CUMMIS & GROSS P.C.
     One Riverfront Plaza
     Newark, New Jersey 07102
     (973) 643-7000

     Adeel A. Mangi
     Harry Sandick
     George LoBiondo
     PATTERSON BELKNAP WEBB &
     TYLER LLP
     1133 Avenue of the Americas New
     York, New York 10036
     (212) 336-2000

     *Attorneys for Plaintiff Johnson &*
     *Johnson Health Care Systems Inc.*

By:  */s/ E. Evans Wohlforth, Jr.*
     E. Evans Wohlforth, Jr.
     GIBBONS P.C.
     One Gateway Center
     Newark, NJ 07102-5310
     ewohlforth@gibbonslaw.com

     David Elsberg
     Andrew R. Dunlap
     Meredith Nelson
     SELENDY GAY ELSBERG PLLC
     1290 Avenue of the Americas New
     York, NY 10104
     Tel: 212-390-9000

     *Attorneys for Defendant Save On SP,*
     *LLC*

SO ORDERED this 22nd day of November, 2022

     s/ Cathy L. Waldor
     HON. CATHY L. WALDOR
     United States Magistrate Judge

15

# Exhibit 24

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for TrialCard Inc.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., | Civil Action No. 22-2632 (JMV) (CLW) |
| Plaintiff, | **NON-PARTY TRIALCARD, INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** |
| v. | |
| SAVE ON SP, LLC, | |
| Defendant. | |

14168182

## GENERAL OBJECTIONS

TrialCard Incorporated ("TrialCard") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in TrialCard objections to a specific Request.

TrialCard reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action. The following responses and objections are based upon information known at this time.

1. TrialCard is not a party to the above-captioned litigation pending in the District of New Jersey (the "Action") and objects to the Subpoena's imposition of significant burden on it because the vast majority of Requests in the Subpoena can be satisfied by obtaining documents directly from Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), a party to the Action. TrialCard notes that the requests in the Subpoena are nearly identical to document requests made by SaveOnSP to JJHCS in the Action, and JJHCS has already agreed to facilitate a production of TrialCard documents in response to those requests in party discovery. TrialCard objects to producing any documents unless and until SaveOnSP can demonstrate that it has not been able to obtain these documents in party discovery.

2. TrialCard objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. The inadvertent production by TrialCard of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the

1

basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

3.      TrialCard objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response TrialCard makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

4.      TrialCard objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

5.      TrialCard objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that TrialCard agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of TrialCard. Instead, it means that TrialCard will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

6.      TrialCard objects to the Requests to the extent that they seek information that is obtainable from sources other than TrialCard in a manner that is more convenient, less burdensome, or less expensive.

2

7.      TrialCard objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

8.      TrialCard objects to the Requests to the extent that they are vague and/or ambiguous.

9.      TrialCard objects to the Requests to the extent that they require interpretation by it in providing a response.  TrialCard responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that differs from TrialCard's understanding of that Request, TrialCard reserves the right to modify or supplement its objections and responses.

10.     TrialCard objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

11.     TrialCard objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. TrialCard further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

12.     TrialCard objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

13.     TrialCard objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

14.     TrialCard objects to the Requests to the extent that they seek the production of documents that are not in TrialCard's possession, custody, or control.

3

14168182

## OBJECTIONS TO DEFINITIONS

1.      TrialCard objects to the definition of the term "Janssen" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it purports to include

"any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates,

divisions or departments, agents, representatives, directors, officers, employees, committees,

attorneys, accountants, and all persons or entities acting or purporting to act on behalf" of those

entities.

2.      TrialCard objects to the definition of the term "Janssen Drug" as irrelevant to

the extent it purports to include drugs that are not covered by CarePath.

3.      TrialCard objects to the definition of the term "JJHCS" as overbroad, unduly

burdensome, and not proportional to the needs of the case to extent it purports to include "any

and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, . . .

agents, [or] representatives" or purports to include entities and persons acting or purporting to

act on behalf of or under the control of entities other than Johnson & Johnson Healthcare

Systems, Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical,

Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc.,

Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen

Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen

BioPharma LLC, and Janssen Research & Development LLC.

4.      TrialCard objects to the definition of the term "JJHCS Hub Entity" as vague

and as irrelevant to the extent it purports to include entities other than those responsible for

administering CarePath during the relevant Time Period.  TrialCard further objects to the

definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it includes "any and all predecessors and successors in interest, assignees, parents,

4

subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers,

employees, committees, attorneys, accountants and all persons or entities acting or purporting to

act on behalf" of those entities.  TrialCard further objects to the extent the term is used to seek

documents and communications concerning entities other than JJHCS.

5.      TrialCard objects to the definition of the term "Lash Group" as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it includes "any

and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates,

divisions or departments, agents, representatives, directors, officers, employees, committees,

attorneys, accountants and all persons or entities acting or purporting to act on behalf or under

the control of The Lash Group, Inc."

6.      TrialCard objects to the definition of the term "TrialCard" as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it includes "any

and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates,

divisions or departments, agents, representatives, directors, officers, employees, committees,

attorneys, accountants and all persons or entities acting or purporting to act on behalf or under

the control of TrialCard Inc."  TrialCard further objects to the extent the term is used to seek

documents and communications in the possession of entities other than TrialCard.

## OBJECTIONS TO INSTRUCTIONS

1.      TrialCard objects to the Instructions to the extent that they impose

requirements on TrialCard beyond those required by the Federal Rules of Civil Procedure.

2.      TrialCard objects to Instruction No. 14 to the extent that SaveOnSP attempts to

impose requirements on TrialCard beyond those required by the Federal Rules of Civil

Procedure or ordered by the Court.  Rule 34, which contains a duty to supplement responses,

14168182

does not apply to requests for production directed to a non-party, and Rule 45 contains no duty

to supplement.

## OBJECTIONS TO THE TIME PERIOD FOR SPECIFIC REQUESTS

1.       TrialCard objects to SaveOnSP's Requests as overbroad, unduly burdensome,

and not relevant to the subject matter of this Action to the extent they call for documents from

before January 1, 2017 or after July 1, 2022.[1]

## SPECIFIC RESPONSES AND OBJECTIONS

**Request No. 1**

From January 1, 2009 through the present, Documents sufficient to show the organizational structure of TrialCard.

**Response to Request No. 1**

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as irrelevant to any claim or defense in this Action to the extent it seeks

documents unrelated to the JJHCS groups responsible for the administration of CarePath.

TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional

to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

TrialCard has already agreed to produce through JJHCS certain responsive

documents, subject to JJHCS's objections and to those presented here, from the relevant Time

Period.  TrialCard will not search for or produce documents in response to the Request.

**Request No. 2**

From January 1, 2009 through the present, Documents sufficient to show the organizational structure of any group or division within TrialCard involved in developing, managing, marketing, or administering CarePath and to identify their employees.

---

[1] For convenience, TrialCard refers to the period of January 1, 2017 to July 1, 2022 as the "Time Period."

14168182

**Response to Request No. 2**

         In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request to the extent it seeks the production of documents and information that are available from parties to the Action. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

         TrialCard has already agreed to produce through JJHCS certain responsive documents, subject to JJHCS's objections and to those presented here, from the relevant Time Period. TrialCard will not search for or produce documents responsive to this Request.

**Request No. 3**

         All Documents and Communications with or regarding SaveOnSP, including those between You and JJHCS, You and any patients, and You and any other Hub Entity.

**Response to Request No. 3**

         In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the attorney-client

7

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege,

the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

TrialCard has already agreed to produce through JJHCS certain responsive documents,

subject to JJHCS's objections and to those presented here, from the relevant Time Period.

TrialCard will not further search for or produce documents or communications in response to this

Request.

**Request No. 4**

From January 1, 2009 through the present, all Documents and Communications
regarding the development, management, and marketing of CarePath or any other copay
assistance program offered for Janssen Drugs, including Documents and Communications
regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

**Response to Request No. 4**

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as it seeks the production of documents and information relating to specific

allegations in the Complaint that are available from parties to the Action and, therefore, is unduly

burdensome on TrialCard.  TrialCard further objects to this Request insofar as it seeks the

production of documents and communications outside of TrialCard's possession, custody, and/or

control.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks "all" documents and communications

regarding a broad subject matter.  TrialCard further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period.  TrialCard further objects to this Request

on the ground that the phrase "any other copay assistance program offered for Janssen Drugs" is

vague and ambiguous.  TrialCard further objects to this Request as irrelevant to any claim or

defense in this Action to the extent it seeks documents unrelated to CarePath.

TrialCard will not search for or produce documents or communications responsive to this Request.

**Request No. 5**

From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) revisions to any of the CarePath terms and conditions for any Janssen Drug; and (d) Your understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

**Response to Request No. 5**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the final CarePath terms and conditions at issue. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.

TrialCard will not search for or produce documents or communications responsive to this Request.

9

14168182

**Request No. 6**

From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

**Response to Request No. 6**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the final CarePath terms and conditions at issue. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. TrialCard further objects to this Request to the extent it seeks documents and communications in the possession of entities other than TrialCard.

TrialCard will not search for or produce documents or communications responsive to this Request.

**Request No. 7**

From January 1, 2015 through the present, all Documents and Communications regarding Your understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its

10

regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

**Response to Request No. 7**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request to the extent it calls for views on a legal question. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.

TrialCard will not search for or produce documents or communications responsive to this Request.

**Request No. 8**

All Documents and Communications regarding SaveOnSP's communications with Patients regarding CarePath, including allegedly misleading or confusing communications and JJHCS's allegations in Complaint ¶¶ 60-67, 109, ¶¶ 13, 75-77, 85-88.

**Response to Request No. 8**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the

11

production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request to the extent it seeks "misleading or confusing communications," as those terms are vague and ambiguous.

TrialCard will not search for or produce documents or communications responsive to this Request.

## Request No. 9

All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including JJHCS's allegations in Complaint ¶ 72.

## Response to Request No. 9

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request on the ground that the phrase "SaveOnSP's provision of services to qualified high deductible or health savings account plans" is vague and ambiguous.

TrialCard will not search for or produce documents or communications responsive to this Request.

12

**Request No. 10**

All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

**Response to Request No. 10**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 11**

All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 11**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications

14168182

regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 12**

All Documents and Communications regarding any alleged harm caused by SaveOnSP by allegedly making their healthcare more expensive, including JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 12**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 13**

All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 13**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly

14

burdensome on TrialCard.  TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 14**

All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 14**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information about any Copay Assistance Program other than CarePath.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

14168182

**Request No. 15**

All Documents and Communications regarding any alleged harm caused by SaveOnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 110, 115.

**Response to Request No. 15**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. TrialCard further objects to this Request on the ground that the phrase "any alleged harm" is vague and ambiguous.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 16**

All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

**Response to Request No. 16**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this

16

Request on the ground that the phrase "payment of any Patient's costs including those that accumulate towards the Patient's deductible or out-of-pocket maximum" is vague and ambiguous.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 17**

All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

**Response to Request No. 17**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information relating to specific allegations in the Complaint that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter and seeks "complete databases from which [ ] data was drawn."

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 18**

From January 1, 2009 through the present, for each Janssen Drug for each year, Documents sufficient to show:

14168182

a.      all Patients receiving the Janssen Drug;

b.      the number of fills of the Janssen Drug received by each such Patient;

c.      the dosage of the Janssen Drug received by each such Patient for each fill;

d.      the projected number of Patients, average number of fills, and average dosage for the Janssen Drug;

e.      the cost to manufacture the Janssen Drug;

f.      the sales and marketing budget for the Janssen Drug;

g.      the price of the Janssen Drug;

h.      the revenue received by JJHCS from the Janssen Drug;

i.      all Patients enrolled in the CarePath program for the Janssen Drug;

j.      the dates on which each Patient was enrolled in CarePath;

k.      the amounts of copay assistance funds that JJHCS offered to each Patient enrolled in CarePath;

l.      the Janssen Drugs for which each Patient enrolled in CarePath received copay assistance; and

m.      all copay assistance payments that JJHCS made to or on behalf each Patient enrolled in CarePath.

## Response to Request No. 18

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP's conduct at issue, including information relating to Patient fills, the cost of manufacturing Janssen Drugs, the sales and marketing budgets for Janssen Drugs, and pricing

and revenue generated by Janssen Drugs.  TrialCard further objects to this Request on the ground

that the phrases "the projected number of Patients, average number of fills, and average dosage

for the Janssen Drug," "the cost to manufacture the Janssen Drug," and "the price of the Janssen

Drug" are vague and ambiguous.  TrialCard further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period.

TrialCard has already agreed to produce through JJHCS certain responsive

documents, subject to JJHCS's objections and to those presented here, from the relevant Time

Period.  TrialCard will not further search for or produce documents or communications in

response to this Request.

## Request No. 19

From January 1, 2009 through the present, for each Janssen Drug for each year,
all Documents and Communications regarding:

a.  JJHCS's determination of the amounts of copay assistance funds that JJHCS
    offered to Patients enrolled in CarePath, including the determination of the
    maximum program benefit per calendar year for the Janssen Drug;

b.  JJHCS's budget for CarePath, including the sales and marketing budget;

c.  JJHCS's actual and projected annual costs for CarePath;

d.  JJHCS's use of or accounting for unused CarePath funds;

e.  the impact of the Affordable Care Act on JJHCS's CarePath budget or funding,
    including the impact of laws and regulations regarding out-of-pocket maximums;

f.  JJHCS's and Janssen's revenue and revenue projections from fills by Patients
    enrolled in CarePath;

g.  the impact of CarePath on Janssen's sales of any Janssen Drug;

h.  the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

i.  JJHCS's or Janssen's actual and projected return on investment for CarePath; and

14168182

j.    any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by SaveOnSP.

**Response to Request No. 19**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP's conduct at issue, including information relating to the sales and marketing budget for CarePath, JJHCS's uses of or accounting for unused CarePath funds, the impact of the Affordable Care Act or other laws and regulations on CarePath's budget or funding, JJHCS's and Janssen's revenue and revenue projections from fills by patients enrolled in CarePath, the impact of CarePath on Janssen sales of any Janssen Drug, the impact of CarePath on JJHCS's or Janssen's gross to net calculations, JJHCS's or Janssen's actual or projected return on investment for CarePath, and the adherence rates of Patients enrolled in CarePath to Janssen Drugs.  TrialCard further objects to this Request on the ground that the phrases "the projected number of Patients, average number of fills, and average dosage for the Janssen Drug," "JJHCS's or Janssen's gross to net calculations," and "JJHCS's or Janssen's actual and projected return on investment for CarePath" are vague and ambiguous.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a variety of broad subject matters.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 20**

All Documents and Communications regarding JJHCS's attempts to limit or eliminate the amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs, including Documents and Communications regarding JJHCS's attempts to limit or eliminate the availability of CarePath copay assistance funds available to Patients enrolled in health plans advised by SaveOnSP.

**Response to Request No. 20**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information beyond the final CarePath terms and conditions at issue. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 21**

All Documents and Communications regarding any offer by JJHCS to provide to any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance funds available to a Patient.

21

**Response to Request No. 21**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the extent to which SaveOnSP has caused JJHCS to pay more in copay assistance than it otherwise would have. TrialCard further objects to this Request on the ground that the phrases "CarePath funds greater than the amounts that JJHCS generally offers CarePath Patients" and "to waive any limitation on or elimination of the amount of CarePath copay assistance funds available" are vague and ambiguous. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications responsive to this Request.

**Request No. 22**

All Documents and Communications regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans.

**Response to Request No. 22**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications

outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this

Request as irrelevant to any claim or defense in this Action to the extent it calls for information

unrelated to SaveOnSP's conduct at issue. TrialCard further objects to this request as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all"

documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents and communications

responsive to this Request.

### Request No. 23

From any time, all Documents and Communications regarding TrialCard's
negotiations or agreements regarding the potential use of any Copay Maximizer Service or
Copay Accumulator Service, for TrialCard's Employee Health Plans, including any
abandonment of those negotiations or agreements.

### Response to Request No. 23

In addition to the foregoing objections, TrialCard, as a third party, objects to this

Request as irrelevant to any claim or defense in this Action to the extent it seeks information

about "the potential use of any Copay Maximizer Service or Copay Accumulator Service,"

which is unrelated to SaveOnSP's conduct at issue. TrialCard further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter. TrialCard further

objects to this Request insofar as it seeks the production of documents and communications

outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents and communications outside of the relevant Time Period. TrialCard

further objects to this Request to the extent it seeks information that is exempt from discovery

and protected from disclosure by a privilege including, without limitation, the attorney-client

14168182

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court and relevant case law.

TrialCard will not search for or produce documents and communications responsive to this Request.

## Request No. 24

Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coordinators.

## Response to Request No. 24

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this request as irrelevant to any claim or defense in this Action to the extent it calls for information about "JJHCS Hub Entities" or "CarePath Care Coordinators" that are not implicated in this litigation. TrialCard further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in TrialCard's Objections to Definitions.

TrialCard will not search for or produce documents and communications responsive to this Request.

## Request No. 25

From January 1, 2009 through the present, Documents sufficient to show the economic terms of JJHCS's retention of or agreements with You, including any assessment of the fair market value of those services.

## Response to Request No. 25

In addition to the foregoing general objections, TrialCard, as a third party, objects

24

to this Request as it seeks the production of documents and information that are available from

parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further

objects to this Request insofar as it seeks the production of documents and communications

outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this

Request on the ground that "any assessment of the fair market value of those services" is

irrelevant.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks documents and communications

outside of the relevant Time Period.  TrialCard further objects to this Request to the extent it

seeks information that is exempt from discovery and protected from disclosure by a privilege

including, without limitation, the attorney-client privilege, the work product doctrine, the joint

defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local

Rules of the Court, and relevant case law.

TrialCard will not search for or produce documents and communications

responsive to this Request.

**Request No. 26**

From January 1, 2009 through the present, documents sufficient to show the
percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any
JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen
Drugs.

**Response to Request No. 26**

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as it seeks the production of documents and information that are available from

parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further

objects to this Request insofar as it seeks the production of documents and communications

outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this

25

Request as irrelevant to any claim or defense in this Action to the extent it calls for information

unrelated to SaveOnSP's misconduct, including information about JJHCS's advertising or

marketing of CarePath or Janssen Drugs. TrialCard further objects to this Request on the ground

that the phrase "Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any

JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen

Drugs" is vague and ambiguous. TrialCard further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period. TrialCard further objects to this Request to

the extent it uses the terms "JJHCS Hub Entity" for the reasons stated in TrialCard's Objections

to Definitions.

TrialCard will not search for or produce documents and communications

responsive to this Request.

### Request No. 27

From January 1, 2015 through the present, all Documents and Communications
relating to Copay Accumulator Services and Copay Maximizer Services and their effect on
JJHCS's return on investment for copay assistance dollars.

### Response to Request No. 27

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as it seeks the production of documents and information that are available from

parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further

objects to this Request insofar as it seeks the production of documents and communications

outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this

Request as irrelevant to any claim or defense in this Action to the extent it calls for information

about other "Copay Accumulator Services and Copay Maximizer Services" other than

SaveOnSP. TrialCard further objects to this Request on the ground that the phrase "JJHCS's

return on investment for copay assistance dollars" is vague and ambiguous.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.

TrialCard will not search for or produce documents and communications responsive to this Request.

## Request No. 28

From January 1, 2015 through the present, all Documents and Communications relating to Your understanding of the terms "copay accumulator" and "copay maximizer."

## Response to Request No. 28

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to SaveOnSP's conduct at issue.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  TrialCard further objects to this Request as unduly burdensome to the extent it seeks documents and communications outside of the relevant Time Period.  TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

TrialCard will not search for or produce documents and communications

14168182

responsive to this Request.

## Request No. 29

All Documents and Communications concerning non-medical switching by participants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

## Response to Request No. 29

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome on TrialCard. TrialCard further objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents or communications responsive to this Request.

## Request No. 30

Your document retention policies.

## Response to Request No. 30

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as it seeks the production of documents and information that are not relevant to the Action. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege,

28

14168182

the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the

Court, and relevant case law.

TrialCard will through JJHCS produce documents responsive to this Request for

the relevant Time Period.

## Request No. 31

Complete data dictionaries for any data that You produce.

## Response to Request No. 31

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as it seeks the production of documents and information that are not relevant to

the Action.  TrialCard further objects to this Request on the ground that "data dictionaries for

any data that You produce" is vague and ambiguous.  JJHCS further objects to this Request to

the extent that it purports to require the creation of any document or record in a format not kept

by TrialCard or seeks to impose production obligations that exceed those required by the Rules

of Federal Procedure, the Local Rules of the Court, this Court's or with any applicable

agreement among the parties.

TrialCard will not search for or produce documents responsive to this Request.

## Request No. 32

From any time, all Documents and Communications regarding this Action
provided to you by any person or entity other than SaveOnSP, including in response to
subpoenas served in this Action.

## Response to Request No. 32

In addition to the foregoing general objections, TrialCard, as a third party, objects

to this Request as it seeks the production of documents and information that are available from

parties to the Action and, therefore, is unduly burdensome on TrialCard.  TrialCard further

objects to this Request insofar as it seeks the production of documents and communications outside of TrialCard's possession, custody, and/or control.  TrialCard further objects to this Request on the ground that the phrase "all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP" is vague and ambiguous. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.  TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of Court, and relevant case law.

TrialCard will not search for or produce documents or communications responsive to this Request.

Dated: March 6, 2023

By:    /s/DRAFT_____

Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for TrialCard Inc.*

14168182

31

# Exhibit 25



www.pbwt.com

June 7, 2023

Katherine Brisson
(212) 336-2552

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:   *Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC*
      *Case No. 2:22-cv-02632 (ES) (CLW)*

Dear Emma:

We write in response to your May 31, 2023 letter regarding the subpoena issued to TrialCard, Inc. ("TrialCard") and TrialCard's April 24, 2023 document production.

## I.      Requests for Which TrialCard Agreed to Produce Documents

RFP No. 3:  TrialCard confirms that it has filtered its case and task notes by the Janssen drugs at issue in this litigation:  Balversa, Darzalex, Darzalex Faspro, Erleada, Imbruvica, Opsumit, Prezcobix, Remicade, Rybrevant, Simponi, Stelara, Symtuza, Tracleer, Tremfya, Uptravi, Ventavis, and Zytiga.[1]  The case and task notes that TrialCard anticipates producing will include patients who receive Janssen CarePath copay assistance for at least one Janssen drug at issue in this litigation, regardless of whether that is the only Janssen drug for which they receive copay assistance.  TrialCard anticipates producing over 19,000 call notes based on the application of the previously agreed-upon twelve search terms.

Despite TrialCard's extensive efforts to identify and produce responsive documents, SaveOnSP now proposes that TrialCard supplement its already broad search parameters to include two additional terms: "out-of-pocket" and "OOP."  TrialCard declines to do so.  These terms are overinclusive, and their application would present a substantial burden, which is particularly pronounced for a third-party like TrialCard.  Nearly every call with TrialCard relating to the CarePath program likely involves some mention or reference to the terms "out-of-pocket" or "OOP."  Indeed, providing financial assistance to enable patients to meet their out-of-pocket obligations is a primary service that the CarePath program provides.  SaveOnSP is not

---

[1] As we have noted several times, *e.g.*, Ltr. from H. Sandick (for JJCHS) to A. Dunlap dated Apr. 11, 2023, Valchlor is not a Janssen drug.

Emma Holland, Esq.
June 7, 2023
Page 2

entitled to every call concerning out-of-pocket costs without some reasonable subject matter limitation, which is precisely what TrialCard's existing search terms already establish.

SaveOnSP also asks TrialCard to confirm that it "has investigated whether it possesses documents responses to RFP No. 3 beyond the above-described patient calls and the results of that investigation." TrialCard has conducted a reasonable investigation and has determined that it possesses no additional responsive materials beyond what it understands has been or will be produced through JJHCS.

## II.    TrialCard's Investigation and Responses Regarding Other RFPs

RFP Nos. 5, 6, 8, 10–17, 20–22, 24–25, and 32:    Following a reasonable investigation, we confirm that TrialCard does not have any documents responsive to these RFPs other than what it has already agreed to produce. If TrialCard becomes aware of any responsive documents in its possession that are not also in the possession of JJHCS, it will notify SaveOnSP.

RFP Nos. 7, 9, and 29:    These requests each seek documents that improperly go beyond TrialCard's implementation of the Janssen CarePath program. In particular, RFP No. 7 seeks documents concerning TrialCard's "understanding" of commercial insurers' designation of specialty drugs; RFP No. 9 seeks TrialCard's documents concerning SaveOnSP's provision of services to qualified high deductible or health savings account plans; and RFP No. 29 seeks TrialCard's documents concerning the non-medical switching of patients who are subject to SaveOnSP's services or other accumulators or maximizers besides SaveOnSP. None of these requests have anything to do with TrialCard's provision of services to JJHCS. TrialCard's understanding of the health insurance market and its participants in the abstract is irrelevant to its actual implementation of the Janssen CarePath program and, thus, is immaterial to the claims at issue. Accordingly, TrialCard will limit its responses to these requests as previously described in its May 12 letter.

However, as also previously noted in our May 12 letter, TrialCard has published various written materials encompassing the subject of copay accumulator and maximizer programs generally, some of which may touch on the requests at issue. Without conceding the responsiveness or relevance of these documents, we note that they are publicly available at https://corp.trialcard.com/resources/.

RFP Nos. 13–15, 17, 20, and 22:    As we explained in our May 12 letter, TrialCard's contributions to any analyses responsive to these requests would have been provided at the request of, or in consultation with, JJHCS. Accordingly, TrialCard would have furnished any such deliverables to JJHCS, which, in turn, would be captured by JJHCS's document productions (since SaveOnSP has served virtually identical requests on JJHCS).

TrialCard understands that, to date, JJHCS has produced more than 4,000 communications between JJHCS and TrialCard and related documents. This includes work orders for the Cost Adjustment Program ("CAP") referenced in your May 31 letter, *e.g.*,

Emma Holland, Esq.
June 7, 2023
Page 3

JJHCS_00001497, JJHCS_00037297; the CAP project requirements and business rules that JJHCS provided to TrialCard, *e.g.*, JJHCS_00077384, JJHCS_00077393; and over 1,000 documents and communications regarding the implementation of CAP. These materials are more than sufficient for SaveOnSP to understand the scope and nature of the work that TrialCard performed at JJHCS's direction.

SaveOnSP nevertheless seeks discovery into TrialCard's documents generated outside of its relationship with JJHCS or not furnished to JJHCS. Such documents are entirely irrelevant to the claims and defenses at issues, and as a third-party, TrialCard need not produce such materials. Accordingly, TrialCard will not produce documents in response to these requests.

RFP No. 26: Following a reasonable investigation, TrialCard does not possess any data, analyses, or other information about patient enrollment in CarePath responsive to this RFP.

## III.    TrialCard's April 24, 2023 Production

RFP Nos. 1–2: TrialCard will produce additional organizational charts in a forthcoming production.

RFP No. 3: TrialCard has produced all responsive patient letters to SaveOnSP in its April 24 production. It has no additional materials to produce in response to RFP No. 3.

RFP No. 18(i)–(m): TrialCard anticipates producing additional medical benefit claims data responsive to this request in a forthcoming production.

RFP No. 30: In its April 24 production, TrialCard produced its only Company-wide document retention policy, which was published in 2023. *See* TRIALCARD_00000125. It has no additional materials to produce in response to RFP No. 30.

Identification of Custodians: TrialCard has conducted a reasonable investigation to respond to SaveOnSP's document requests and has produced documents from a variety of non-custodial repositories. TrialCard will not further identify the specific non-custodial source for each document it has produced.

Very truly yours,

*/s/Katherine Brisson*
Katherine Brisson

# Exhibit 26



www.pbwt.com

August 24, 2023

Katherine Brisson
(212) 336-2552

**By Email**

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the America
New York, NY 10104

>            Re:    **Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC**
>                   **(Case No. 2:22-cv-02632-ES-CLW)**

Dear Emma:

On behalf of TrialCard, we write further to our letter of August 3, 2023, and in response to your August 16, 2023 letter regarding the third party subpoena issued to TrialCard in the above-captioned action. We note that several of the issues you raise in your August 16 letter have been addressed at length in our prior correspondence, which we incorporate by reference as appropriate.

<u>Request No. 3.</u> As you know, we have already produced over 19,000 call notes based on the application of twelve existing search terms. This search methodology—which already includes the very broad term "Save\*"—was designed to be quite expansive in yielding potentially responsive documents. We believe that the application of this methodology represents a good faith effort to identify documents responsive to Request No. 3. Nevertheless, in the interest of avoiding an unnecessary dispute, we are continuing to explore the feasibility of adding the "OOP" terms you have proposed and will revert when we have additional information.

<u>Scope of Custodial Searches.</u> TrialCard and SaveOnSP have met and conferred multiple times and exchanged extensive discovery correspondence addressing the scope of the searches it will conduct to satisfy its discovery obligations, and, as relevant here, why TrialCard believes custodial discovery is unnecessary as to certain Requests for Production. Custodial discovery is unlikely to yield non-duplicative information that JJHCS has not already produced. Nevertheless, we have agreed to perform custodial searches in an effort to resolve SaveOnSP's concerns about the sufficiency of TrialCard's productions and to avoid unnecessary recourse to motion practice.

Patterson Belknap Webb & Tyler LLP    1133 Avenue of the Americas, New York, NY 10036    T 212.336.2000    F 212.336.2222

Emma Holland, Esq.
August 24, 2023
Page 2

      To address the questions you have raised concerning the specific RFPs you identify in your letter, we direct you to our May 12 letter, which describes at length the reasons why SaveOnSP's RFP Nos. 5–7, 10, 16, 17, 20–22, 24, 25, 27, 29, and 32 do not require additional collection and production of documents.  By way of summary, we reiterate the following:

- Based on our reasonable investigation, TrialCard does not believe that it possesses documents responsive to RFP Nos. 5, 6, 10, 17, 20–22, 27, and 32 that are not also in the possession of JJHCS.

- TrialCard does not believe it has any documents responsive to RFP Nos. 7 and 29 that relate to TrialCard's implementation of the CarePath program.

- TrialCard has already produced call notes for patient calls using search criteria designed to capture relevant communications concerning SaveOnSP.  After a reasonable investigation, TrialCard does not believe it has additional documents responsive to RFP No. 16.

- In response to RFP No. 24, TrialCard has produced organization charts for the portions of its business that oversee the administration of CarePath.  Based on a reasonable investigation, TrialCard does not believe it has other documents responsive to RFP No. 24 that are not also in the possession of JJHCS.

- JJHCS has agreed to produce its agreements, work orders, and associated documents with TrialCard.  These documents are responsive to RFP No. 25.  TrialCard does not believe it has other documents responsive to RFP No. 25 that are not also in the possession of JJHCS.

      <u>Documents Produced by JJHCS.</u>  TrialCard will not produce documents that it believes to be in the possession of JJHCS because such documents are duplicative of party discovery.  As we already explained at length our August 3 letter, SaveOnSP's reliance on *Wyeth v. Abbott Laboratories*—which SaveOnSP first cited in its July 26 letter—squarely supports TrialCard's position that a third-party is not required to duplicate party productions.  *See Wyeth v. Abbott Laby's*, 2011 WL 2429318, at *8 (D.N.J. June 13, 2011) ("To the extent Plaintiffs seek to compel Novartis to produce documents already produced by Abbott, Plaintiffs motions to enforce their subpoenas are denied as duplicative.").  As counsel to both JJHCS and TrialCard, we state that both JJHCS and TrialCard are complying with their respective discovery obligations and conducting searches as agreed upon with SaveOnSP.  Further, as we have previously explained, JJHCS has produced over 4,000 communications and related documents between JJHCS and TrialCard.

      <u>Additional Custodians and Custodial Search Terms.</u>  As you know, TrialCard has designated four custodians to address SaveOnSP's concerns and avoid an unnecessary dispute. Despite TrialCard's reasonable efforts to reach compromise, you persist in your unreasonable request for sixteen custodians.  Once again, this is disproportionate given TrialCard's very narrow

Emma Holland, Esq.
August 24, 2023
Page 3

role in the events relevant to this litigation, and we will not add the twelve additional custodians you have requested.

      You have also asked us to substantiate the burden of adding these additional custodians. TrialCard has run a hit report across its existing four custodians (Holly Weischedel, Sini Abraham, Paul Esterline, and Rick Fry) for the search terms proposed in Appendix A of SaveOnSP's July 26 letter. This report resulted in over 128,000 documents, inclusive of families. Given that tens of thousands of documents hit on these search terms for just these four custodians, it is self-evident that there will be a significant, undue burden associated with engaging in custodial discovery for all sixteen custodians you have requested. As such, we decline to designate the additional twelve TrialCard custodians you have proposed. We also suggest that you review the documents TrialCard produces from these four custodians in order to make an assessment about whether the additional proposed review is warranted.[1]

      <u>Retention Policy.</u> TrialCard has produced all retention documents that it has been able to identify based on reasonable investigation for the applicable time frame.[2]

      Very truly yours,

      <u>*/s/ Katherine Brisson*</u>
      Katherine Brisson

---

[1] In our letter of August 3, we stated that we would provide an evaluation of the search terms you proposed in Appendix A to your July 26 letter ("Appendix A"). TrialCard does not understand SaveOnSP to be disputing JJHCS's proposed Search Terms Nos. 2, 3, and 4 contained in Appendix A. Accordingly, we will run these mutually-agreed upon terms over the files of Weischedel, Abraham, Esterline, and Fry. TrialCard has run a hit report for SaveOnSP's proposed Search Term No. 1 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "Save OnSP" OR Maximize* OR ("Express Scripts" OR ESI) OR Accredo OR CAP*), and has concluded that the term is overinclusive, yielding over 91,000 search hits, family inclusive, for just the existing four custodians. As such, we decline to add it to our existing custodial search methodology. We will, however, run TrialCard's Search Term No. 1 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP).

[2] For this reason, we also decline to run SaveOnSP's proposed Search Term No. 5 in Appendix A. Nevertheless, in the interest of avoiding a dispute and to ensure that there are no other responsive documents from the four existing custodians, we will include the term "retention policy" as proposed in Search Terms Nos. 2, 3, and 4.

# Exhibit 27



www.pbwt.com

April 7, 2023

Harry Sandick
(212) 336-2723

**<u>VIA EMAIL</u>**

Andrew Dunlap, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
adunlap@selendygay.com

      Re:    **TrialCard's Responses and Objections to SaveOnSP's Subpoena**
              *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*,
              No. 22 Civ. 2632 (ES) (CLW)

Dear Andrew:

      We write on behalf of TrialCard in response to your March 15, 2023 letter regarding TrialCard's Responses and Objections to SaveOnSP's Third Party Subpoena.

      ***First***, SaveOnSP requests information as to whether "TrialCard is withholding any documents on the basis that it believes that they are available in party discovery" with regard to SaveOnSP's RFP Nos. 2-22, 24-27, 29, and 32. As an initial matter, TrialCard will not produce materials responsive to SaveOnSP's RFP Nos. 4, 18 (a)-(h), and 19, because the Court sustained JJHCS's objections to the documents and communications sought by these requests in the March 17, 2023 discovery conference. With respect to SaveOnSP's RFPs 2, 3, 18 (i)-(m), and 30, JJHCS has already agreed to produce responsive documents on TrialCard's behalf.

      With respect to the other RFPs, TrialCard is objecting to these requests because, among other things, these requests are targeted at issues that are logically explored only through party discovery and not through discovery from TrialCard. SaveOnSP's "cut-and-paste" document requests to TrialCard ignore the fact that while JJHCS's understanding of various issues may be relevant to the case, TrialCard's independent understanding of these issues will not be relevant, absent some reason to believe otherwise based on documents produced in party discovery. For this reason, the production of documents by TrialCard on these issues is not appropriate. This position is consistent with TrialCard's general and/or specific objections to all of SaveOnSP's requests based on relevance.

Andrew Dunlap, Esq.
April 7, 2023
Page 2

We provide further explanation of the nature of our objections below:

RFP 5:  This request seeks all documents and communications regarding CarePath terms and conditions.  While JJHCS is making a production of such documents, TrialCard was not involved in any decisions regarding the drafting or revision terms and conditions.  Nor is its interpretation of those terms relevant.  As a result, TrialCard will have no independent, relevant information about the terms and conditions, such as the terms "offer" or "health plan," and its understanding of those terms (if any) is irrelevant to this case.

RFP 6:  This request seeks information about CarePath's requirement that patients make some payment toward their copay.  TrialCard does not set the patient copay amounts.  TrialCard is not a party to the contract at issue in this case.

RFP 7:  This request seeks documents relating to how specialty drugs are designated under the Affordable Care Act.  JJHCS has agreed to produce certain documents that concern this issue.  There is no reason to believe that TrialCard would have documents relevant to JJHCS's understanding of these issues that are not available from JJHCS, and TrialCard's own understanding of these issues is irrelevant to this lawsuit.

RFPs 13 and 14:  These requests seek documents and communications about SaveOnSP's direct or indirect impact on the financial viability of CarePath.  TrialCard is not responsible for the financing of CarePath in any respect.  Moreover, JJHCS has already agreed to produce certain documents in response to these requests, and those documents will be produced in the coming weeks.

RFP 15:  This request seeks materials "regarding any alleged harm caused by SaveOnSP to JJHCS."  JJHCS is already producing documents that are responsive to a similar request.  This is not an appropriate subject for third-party discovery, as TrialCard's understanding of this issue, to the extent it even has one, is not relevant.

RFP 22:  This request seeks documents "regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans."  To the extent that TrialCard may have been involved in the efforts to identify these patients and health plans, JJHCS's production will capture such documents and communications in the first instance.

The same is true for the other RFPs identified in SaveOnSP's letter:  RFP 8 (SaveOnSP's misleading communications); RFPs 9-10 (payments to patients in high deductible or health savings account plans), RFP 11-12 (harm caused to patients in the SaveOnSP program), RFP 16 (payment of patient costs), RFP 17 (documents relating to internal JJHCS data), RFP 20 (Stelara and Tremfya program changes), RFP 21 (payments in excess of program caps), RFP 22 (efforts by JJHCS to identify patients in health plans advised by SaveOnSP), and RFP 32 (TrialCard's communications about the action).  TrialCard's understanding on the issues raised by these requests is not relevant to the lawsuit, and TrialCard should not be required to produce

14206013

Andrew Dunlap, Esq.
April 7, 2023
Page 3

documents in response to them unless party discovery demonstrates that TrialCard would have documents that bear on JJHCS's understanding of these issues.

      **Second**, SaveOnSP seeks additional information for RFP Nos. 1-3 and 18 to which TrialCard responded that it had already agreed to produce responsive documents through JJHCS, subject to objections already lodged by JJHCS.  TrialCard will address each RFP below.

      <u>RFPs 1 and 2</u>: TrialCard confirms that it will produce its organization charts for TrialCard between 2016 and 2022 through JJHCS.

      <u>RFP 3</u>: This request seeks all documents and communications "with or regarding SaveOnSP, including those between You and JJHCS, You and any patients, and You and any other Hub Entity."  TrialCard is available to meet and confer to discuss issues related to the collection of call notes, recording and related records to determine an appropriate approach given issues specific to the format in which those materials are maintained. Other responsive materials should be pursued through party discovery.

      <u>RFP 18</u>: TrialCard will produce through JJHCS documents responsive to SaveOnSP's RFP 18 subparts (i) through (m), which seeks CarePath enrollment and claims data. Pursuant to the Court's order, TrialCard will not produce through JJHCS or otherwise documents responsive to SaveOnSP's RFP 18 subparts (a) through (h).

      <u>Bates-stamp identifier</u>: TrialCard confirms that we will use a unique Bates-stamp identifier to distinguish its document production from those documents produced by JJHCS.

      **Third**, SaveOnSP raises concerns about TrialCard's relevance objections to SaveOnSP's RFPs 5, 6, 18 (i)-(m), 19, 20, 22, and 26.  As you observe, in some cases TrialCard's relevance objections are broader than JJHCS's relevance objections.  This is for the same reason noted above:  while JJHCS's understanding of various issues presented in this lawsuit may support valid document requests, TrialCard's understanding of these same issues will often be irrelevant. We have discussed the nature of TrialCard's objections to these requests earlier in this letter, except for RFP 26.  TrialCard will not produce documents responsive to this request due to its vague and ambiguous nature, and the undue burden presented by the request as we understand it.

      **Fourth**, TrialCard confirms that it intends for its objections to the Time Period applicable to SaveOnSP's RFP Nos. 1, 2, 5-6, 18, 19, and 25-28 to be consistent with JJHCS's objections that request similar information.  TrialCard will comply with any court order applicable to those RFPs.

      **Fifth**, as SaveOnSP has explained, TrialCard has lodged a specific objection to the vague and ambiguous nature of SaveOnSP's RFP 4, 8, 9, 15, 16, 18, 19, 21, 26, 27, 31, and 32. Many of these requests are also the subject of other objections.  To the extent that TrialCard makes a production in response to these RFPs, it will construe any vague or ambiguous terms in accordance with TrialCard's reasonable understanding of such terms and produce the responsive

14206013

Andrew Dunlap, Esq.
April 7, 2023
Page 4

documents.  If SaveOnSP wishes to clarify any of its requests, please advise us of any such
clarifications.

    *Sixth*, SaveOnSP asks whether TrialCard is withholding documents responsive to
RFP 7 based on our objection that it calls for views on a legal question.  As noted, TrialCard's
understanding of health plans' ability to designate specialty drugs as Essential Health Benefits or
Non-Essential Health Benefits is irrelevant.  TrialCard is a third-party with no insight into how
these designations are made and it has no influence over these designations—which of course are
not made by anyone at TrialCard.  These are the grounds for TrialCard's refusal to produce
documents at the present time, and not the fact that the request calls for legal interpretation.

    TrialCard is available to meet and confer on its responses and objections to
SaveOnSP's RFPs.

        Very truly yours,


        Harry Sandick

14206013

# Exhibit 28

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

selendy
gay
elsberg

Andrew Dunlap
Partner
212 390 9069
adunlap@selendygay.com

April 28, 2023

**Via E-mail**

George Carotenuto
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
gcarotenuto@pbwt.com

**Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,***
***LLC*** **(Case No. 2:22-cv-02632-JMV-CLW)**

Dear George,

     We write to follow up on our April 25 and 26 meet and confers regarding
TrialCard, Inc.'s ("TrialCard") responses and objections to Save On SP LLC's
("SaveOnSP") Requests for Production.

**I.     RFP Nos. 4, 18 (a)-(h), and 19**

     In its April 7, 2023 letter, TrialCard stated that it will not produce materials
responsive to RFP Nos. 4, 18(a)-(h), and 19 because the Court sustained Johnson
& Johnson Health Care Systems Inc.'s ("JJHCS") objections to the documents and
communications sought by these requests in the March 17, 2023 conference. We
explained that the court dismissed certain of SaveOnSP's motions to compel with-
out prejudice and SaveOnSP may renew its motion. As such, we asked whether
TrialCard would produce responsive documents if JJHCS was ordered to produce
documents responsive on the same topic. You stated that TrialCard will generally
produce documents to the same extent as JJHCS and will inform us if it does not.

**II.    Time Period**

     We asked whether TrialCard would adjust the time period for all responsive
documents to date back to April 2016.  You answered that that TrialCard would do
so. You also stated that TrialCard's first production on April 24, 2023 would in-
clude documents dated back to April 2016 and, if not, the next production would.

George Carotenuto
April 28, 2023

## III.  Requests for which TrialCard Agreed to Produce Responsive Documents

We noted that TrialCard, in its responses and objections ("R&Os"), stated that it would produce "certain responsive documents" through JJHCS for several requests. We asked whether, for those requests, TrialCard is withholding any responsive documents. You stated that, with regard to one part of RFP No. 3, Trial-Card's communications with patients regarding SaveOnSP, TrialCard is attempting to identify responsive audio recordings by running search terms similar to JJHCS's proposed search terms over call center notes. You stated that you would provide further information about this search next week, including the search terms that TrialCard is using. You otherwise confirmed that for RFP Nos. 2, 3, 18(i)-(m) and 30, TrialCard is not withholding any responsive documents.

Please also confirm that TrialCard will produce all documents responsive to RFP No. 1.

## IV.  Vague and Ambiguous Objections

In your R&Os you objected to portions of RFP Nos. 4, 8, 9, 15, 16, 18, 19, 21, 26, 27, 31 and 32 as vague and ambiguous.

RFP No. 26 seeks documents sufficient to show the percentage of patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs. We explained that it seeks records that show how many patients, after JJHCS (or its vendors, like TrialCard) encourage them to enroll in CarePath, do enroll in CarePath and how many do not. You stated that you would let us know if JJHCS still maintained that this request was vague or ambiguous. You also stated that you do not believe that TrialCard would have documents responsive to RFP No. 26 because you believe that JJHCS entities typically do not contact patients to get them to enroll in CarePath and that TrialCard conducts no such analysis to determine how many patients sign up after contact with JJHCS entities. We asked if you had investigated to reach this conclusion. You stated that you would investigate and let us know if JJHCS still maintains that TrialCard has no documents responsive to RFP No. 26.

For RFP Nos. 4, 8, 9, 15, 16, 18, 19, 21, 27, 31 and 32, we noted that in your April 7, 2023 letter, you said that, to the extent TrialCard makes a production in response to those requests, it will construe any vague or ambiguous terms in accordance with TrialCard's reasonable understanding of such terms. You agreed to tell us how TrialCard interprets any terms in those RFPs that it maintains are vague or ambiguous.

## V.  RFP Nos. 5, 6, and 7

SaveOnSP's RFP Nos. 5 and 6 seek, respectively, all documents and communications regarding CarePath's terms and conditions, and all documents and

George Carotenuto
April 28, 2023

communications regarding CarePath's requirement that patients enrolled in Care-Path make any payments towards Janssen Drugs. TrialCard has refused to produce documents responsive to these requests. During our meet and confer, we explained that gathering information on JJHCS's terms and conditions is key to the case because of JJHCS's tortious interference claim. You stated that TrialCard's understanding of JJHCS's terms and conditions is not relevant to the case because Trial-Card had no role in the drafting the terms and conditions. You confirmed that TrialCard communicates with patients regarding JJHCS's terms and conditions, following JJHCS's direction. We explained that TrialCard documents or communications about JJHCS's instructions on explaining terms to patients, or showing how TrialCard implements those terms is relevant to the meaning of those terms. You stated that you would let us know if JJHCS still maintains that TrialCard's documents on this topic are irrelevant.

SaveOnSP's RFP No. 7 seeks all documents and communications regarding TrialCard's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act ("ACA") and its regulations. During our meet and confer, we explained that, to the extent that JJHCS agrees that its understanding of this issue is relevant, TrialCard's understanding is relevant as well. We explained that if TrialCard's understanding of the ACA is different from JJHCS, that would go to the credibility of JJHCS's allegations. You stated that you think TrialCard's understanding of this issue is not relevant.

## VI.    RFP Nos. 5-17, 20-22, 24-27, 29, and 32

During our meet and confer, you agreed to investigate and tell us whether TrialCard has any documents responsive to RFP Nos. 5-17, 20-22, 24-27, 29, and 32 that are not also in the possession of JJHCS.

\* \* \*

We request your response by Friday, May 5 and are available to continue to meet and confer.


Sincerely,


/s/ Andrew Dunlap

Andrew Dunlap
Partner

3

# EXHIBITS 29-30
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 31



www.pbwt.com

January 26, 2024

Caroline Zielinski
(212) 336-2206

**<u>By Email</u>**

Taylor Stone, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
       <u>**Case No. 2:22-cv-02632 (JKS) (CLW)**</u>

Dear Taylor,

We write in response to your January 2, 2024 letter concerning JJHCS's privilege log and further to related correspondence.[1]

After reviewing the documents that you identified in your letter, we no longer seek to fully withhold or maintain all of the redactions in the documents listed in Appendix A to this letter. Accordingly, JJHCS will produce these documents either in full or with more limited redactions in a forthcoming production.

With respect to the documents you identified that are not listed in Appendix A, we disagree with the assertions raised in your letter. These documents were properly withheld pursuant to applicable privileges, including the attorney-client and/or the work product privileges. To address your contentions, JJHCS provides additional information about those documents below.

**Exhibit 1 Documents.** SaveOnSP first asserts that approximately 160 documents on Exhibit 1 were improperly withheld based on attorney-client privilege "without indicating that they involve communications with counsel." Contrary to SaveOnSP's assertion, JJHCS's privilege log indicates that an attorney was the author or recipient of multiple of the identified documents in this category. *See* PL000002020 (email in which S. Harris is the author); PL000002021 (email in which S. Harris is the recipient); and PL000001630 (email in which C. Bosch is copied). In addition, Exhibit 1 includes draft documents properly withheld pursuant

---

[1] We have separately addressed SaveOnSP's request for an updated privilege log and a log of all partially redacted documents. *See* Jan. 11, 2024 Ltr. from J. Long to E. Snow.

Taylor Stone, Esq.
January 26, 2024
Page 2

to the attorney-client privilege because they include comments from JJHCS's in-house attorneys reflecting legal advice related to the operation of JJHCS's copay assistance programs, including training modules, work orders, and terms and conditions. *See, e.g.*, PL000000049 (comments from J. De Camara), PL000002012 (comments from C. Bosch); PL000002762 (comments from M. Shea). Assertion of the attorney-client privilege in this circumstance is based on well-established law. *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prods. Mtking, Sales Practices, & Prods. Liability Litig.*, 2021 WL 3144945, at *6 (D.N.J. July 26, 2021) (sustaining attorney-client privilege assertions with respect to "draft documents containing [an in-house attorney's] comments" as they "reflect [their] legal input and analysis").

Moreover, whether an attorney is listed as an author or recipient of a document does not determine whether a document is properly withheld pursuant to the attorney-client privilege. The attorney-client privilege extends to communications comprising a discussion of legal analysis regardless of whether an attorney is included on the communication. *See, e.g.*, *Engage Health Comms., LLC v. Intellisphere, LLC*, 2017 WL 10259770, at *3 (D.N.J. Sept. 12, 2017), *report & recommendation adopted* 2017 WL 10259774 (Nov. 21, 2017) (explaining that a document comes within the attorney-client privilege even if it reflects a "communication between two non-attorneys" as long as it "reflect[s] the [provision of] legal advice"). JJHCS has properly withheld documents included in Exhibit 1 that reflect legal analysis and incorporate requests for legal advice pertaining to the design and implementation of JJHCS's copay assistance programs. *See, e.g.*, PL000000256; PL000000226; PL000000244; PL000000246; PL000000227. *See also In re Johnson & Johnson*, 2021 WL 3144945, at *10 (explaining that the "absence of an attorney on a document is not necessarily determinative" as "[c]ommunications remain privileged if they assist [an] attorney to formulate and render legal advice" (internal quotation marks and citation omitted)).

**Exhibit 2 Documents.** SaveOnSP next argues that JJHCS improperly withheld information in approximately 90 documents on Exhibit 2, because the documents "do not appear privileged based on their descriptions." SaveOnSP provides no legal authority for its suggestion that the provision of legal advice must be apparent from the document's description. To the contrary, the privilege determination depends on an assessment of whether the underlying document includes disclosures "necessary to obtain informed legal advice." *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *4 (D.N.J. Dec. 5, 2016), *on reconsideration in part*, 2017 WL 11633446 (D.N.J. Jan. 5, 2017) (quoting *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423-24 (3d Cir. 1991)). As with Exhibit 1, many of the documents on Exhibit 2 were properly withheld because they convey legal advice from JJHCS's in-house attorneys, *see, e.g.*, PL000001075 (reflecting legal advice from J. Williams on draft presentation); PL000000424 (conveying legal advice from J. De Camara); PL000000097 (reflecting J. De Camara's legal advice), or reflect requests for legal advice, *see, e.g.*, PL000000097 (identifying areas for which legal advice was required); PL000000427 (same); PL000000414 (same). In addition, as JJHCS's privilege log indicates, PL000002242 was properly withheld pursuant to the attorney-client and work product privileges as it reflects an attorney-client communication relating to litigation strategy.

Taylor Stone, Esq.
January 26, 2024
Page 3

**Exhibit 3 Documents.** SaveOnSP contests that JJHCS improperly withheld approximately 130 "calendar invites" included in Exhibit 3. Although neither the attorney-client nor the work product privilege applies to "the facts underlying any given communication," a "communication concerning that fact is entirely different." *La. Mun. Police Employees Retirement Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 305 (D.N.J. 2008); *In re Johnson & Johnson*, 2021 WL 3144945, at *4. Email communications accompanying the calendar invitations at issue in Exhibit 3 were properly withheld when they reflect discussions with JJHCS's legal team regarding strategies for this litigation. *See* PL000001253 (email communication with S. Harris regarding strategy for current litigation); PL000001257 (same); PL000002117 (email from S. Harris explaining purpose of meeting tied to litigation strategy); PL000001913 (same); PL000001919 (same); PL000001920 (same). Likewise, information underlying requests for legal advice, to be discussed at upcoming meetings with counsel, was also properly withheld. *See, e.g.*, PL000000398 (email reflecting areas for legal input for discussion at meeting with in-house counsel); PL000001217 (email explaining topics for discussion at upcoming meeting with S. Harris); PL000000820 (same); PL000000821 (same); PL000001938 (email explaining purpose of call regarding legal questions for S. Harris). That said, after further review, JJHCS will be producing certain calendar invitations previously withheld in redacted form.

**Exhibit 4 Documents.** SaveOnSP identifies approximately 60 documents on Exhibit 4 that it contends were improperly withheld pursuant to the work product privilege. As indicated in JJHCS's privilege log, however, Exhibit 4 includes documents prepared in anticipation of JJHCS's litigation against SaveOnSP. *See, e.g.*, PL000001086 (Oct. 2021 email communication with S. Harris discussing litigation strategy); PL000001108 (same); PL000001088 (October 2021 email communication between S. Harris and outside counsel discussing litigation strategy). Furthermore, contrary to SaveOnSP's description that Exhibit 4 "contains a list of documents withheld solely on the basis of the work product privilege," JJHCS's privilege log indicates that many documents included in Exhibit 4 were also withheld based on application of the attorney-client privilege. These documents include communications with JJHCS's counsel that reflect requests for legal advice or convey counsel's legal analysis regarding the implementation of JJHCS's patient assistance programs. *See, e.g.*, PL000000224 (email with J. De Camara requesting legal advice); PL000001045 (email with J. De Camara reflecting legal analysis).

**Exhibit 5 Documents**. SaveOnSP argues that JJHCS has improperly withheld or redacted approximately 240 documents on Exhibit 5 because the attorney-client privilege was waived through disclosure of these documents to third parties. As an initial matter, Exhibit 5 contains many emails in which no third parties are included on the latest-in-time communications. In those instances, JJHCS employees have forwarded a communication with a third party to JJHCS's in-house counsel to request their legal analysis. *See, e.g.*, PL000001869 (email communication with third party forwarded to S. Harris requesting legal analysis); PL000001854 (same). These documents were properly withheld, as the attorney-client privilege extends to emails which "forward[] [to counsel] prior non-privileged emails" that underlie the request for legal advice and assist the attorney in providing their analysis. *Engage Health*, 2017 WL 10259770, at *3 ("[E]ven though one email is not privileged, a subsequent and privileged email

Taylor Stone, Esq.
January 26, 2024
Page 4

which forwards that prior non-privileged email, will allow the privilege to attach to the entire email chain, including the non-privileged prior email messages." (quoting *Rhoads Indus. Inc. v. Building Materials Corp. of Am.*, 254 F.R.D. 238, 240 (E.D. Pa. 2008)).

   With respect to documents shared with third parties, the attorney-client privilege is maintained when an independent consultant acts as the "functional equivalent" of the party's employee and the communication with the third party was "kept confidential and made for the purpose of obtaining or providing legal advice." *In re Johnson & Johnson*, 2021 WL 3144945, at *9 (citing *In re Flonase Antitrust Litig.*, 879 F. Supp. 2d 454, 460 (E.D. Pa. 2012)); *see id.* (explaining that communications between Johnson & Johnson and its consultants, "even in the absence of an attorney . . . may be privileged if they are necessary for the client to obtain[] informed legal advice"); *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *6, *8 (applying functional equivalent doctrine to documents between party and public relations and communications consultants).

   This legal principle recognizes that "in-house counsel should be able to communicate freely with consultants about legal issues without being chilled by the prospect that their communications will be produced to an adversary in discovery." *In re Johnson & Johnson*, 2021 WL 3144945, at *9. Documents listed in Exhibit 5 were appropriately withheld pursuant to this standard because they include confidential communications between JJHCS and third parties relating to information requested by or provided to JJHCS's attorneys to assist in their analysis of legal issues. *See, e.g.*, PL000002658 (email in which third party provides information requested by JJHCS's counsel to assist in the provision of legal advice); PL000002370 (same); PL000002292 (email in which JJHCS's counsel requests information necessary to provision of legal advice); *see also In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *9 (holding that information provided by third party "needed by [party's] attorneys to render legal advice" is privileged). Exhibit 5 also includes documents protected by the attorney-client privilege because they convey the legal analysis of JJHCS's attorneys. *See, e.g.*, PL000001908 (email conveying legal advice); PL000001750 (draft document reflecting legal advice); PL000001751 (same). *See also In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *10 (finding documents shared with third party were privileged where the "documents indicate[d] actual legal advice was conveyed" including an "email asking for legal insight" or an "email referring to attorney advice"); *In re Johnson & Johnson*, 2021 WL 3144945, at *7 (finding documents shared with third party privileged where they were reviewed by counsel "with a view towards legal issues").

*   *   *

   Finally, based on our review of SaveOnSP's revised privilege log dated October 10, 2023, we have identified several areas of concern, where it appears that SaveOnSP has inappropriately redacted or withheld certain documents that should have been produced. For example, the following documents appear on SaveOnSP's privilege log:

- **Emails that were sent to or from third parties.** *See, e.g.*, SOSP_0817331 (an email fully withheld for privilege from an individual with a "RideMetro.Org"

Taylor Stone, Esq.
January 26, 2024
Page 5

domain to Claudia Dunbar, Ron Krawczyk, Jill Stearns, and two individuals at
Express Scripts Inc. ("ESI")); SOSP_0827911 (an email redacted for privilege
including Michael Kirchhoff with an ESI domain); SOSP_0828613 (an email
redacted for privilege including Aaron Mallin with an ESI domain);

- **Inconsistent privilege calls.** *See* SOSP_0832627, which is an attachment titled
  "JnJ letter page 2.pdf." This document was withheld as privileged even though
  "page 1" of this same attachment was produced; and

We have identified similar issues for the following documents that have not yet
been logged on SaveOnSP's privilege log:

- SOSP_0940021, which is a spreadsheet reflecting notes on SaveOnSP calls with
  external parties, including Allina Health System, International Association of Heat
  and Frost Insulators Local 17 Welfare Fund, SKC, Inc., AmerisourceBergen
  Corporation, and HealthSmart; and

- SOSP_1034728, which is text message exchange involving no lawyers that was
  sent to and from a third party.

Please explain by February 2, 2024 why you have withheld or redacted the specific
documents identified above. In the event you no longer wish to assert privilege over any of the
documents identified herein, please promptly produce them.

Finally, in response to your SaveOnSP's January 25, 2024 letter, we can confirm
that JJHCS has included, and will continue to include, all thread participants on emails included
on its privilege logs. Thank you for confirming that SaveOnSP will correct its privilege log to
address this issue and to adopt this practice moving forward. *See* Jan. 25, 2024 Ltr. from E. Snow
to J. Long. Please confirm that you will provide the corrected version of your privilege log by
February 13, 2024.

Very truly yours,

*/s/Caroline Zielinski*
Caroline Zielinski

14884356

# Exhibit 32



www.pbwt.com

June 16, 2023

Katherine Brisson
(212) 336-2552

**VIA EMAIL**

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:   *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
       **No. 2:22-cv-02632 (ES) (CLW)**

Dear Emma:

On behalf of TrialCard, we write in response to your June 14, 2023 letter concerning TrialCard's productions in the above-captioned matter.

## I.   Non-Custodial Documents

In your May 31, 2023 letter, SaveOnSP requested that TrialCard identify the individual custodian or the specific noncustodial source for each document it has produced. In response to that request, TrialCard explained that it would not identify the specific sources for noncustodial documents—an approach entirely consistent with the parties' practices in this litigation. *See* Ltr. from K. Brisson to E. Holland dated June 7, 2023. Indeed, SaveOnSP has not identified the specific sources for any non-custodial document it has produced in this litigation. SaveOnSP can hardly place demands on a third party for format requirements that it has not even complied with itself in party discovery.

The documents that TrialCard has produced in this matter consist of, among other things: (1) organizational charts, (2) CarePath claims and enrollment data, (3) template letters and related communications to patients; (4) patient call notes; and (5) a document retention policy. To identify and collect such documents, we worked closely with our client to identify responsive materials and the repositories in which they are maintained. For example, we worked with the Chief Compliance Officer and General Counsel to identify organizational charts and the document retention policy. Similarly, we worked with Quality Assurance and Quality Control personnel to source call data from a dedicated database and with appropriate client service representatives to retrieve enrollment and claims data from a centralized location. We can discern no basis for SaveOnSP's request for additional information about the specific sources for these documents. Nevertheless, we are willing to consider a reasoned request for additional source information on a case-by-case basis.

Emma Holland, Esq.
June 16, 2023
Page 2

## II.   **Custodial Documents**

TrialCard has engaged in substantial efforts to identify and produce documents responsive to the SaveOnSP's subpoena, including producing over 19,000 call notes and over 100 responsive non-custodial documents.  *See, e.g.*, Ltr. from K. Brisson to E. Holland dated June 7, 2023.  JJHCS has also produced a substantial number of documents, including more than 4,000 communications (and related materials) between JJHCS and TrialCard, that are responsive to SaveOnSP's subpoena to TrialCard.  As we have repeatedly explained, TrialCard, as a third party, need not produce documents duplicative of those JJHCS has produced—a position SaveOnSP has fully embraced in ongoing third-party motion practice.

Indeed, as you know, JJHCS served third party subpoenas on SaveOnSP's business partners, Express Scripts Inc. ("ESI") and Accredo Health Group, Inc. ("Accredo").  In stark contrast to TrialCard, neither ESI nor Accredo have produced ***any*** documents in response to those subpoenas, arguing in part that third parties need not duplicate party productions.  SaveOnSP has even gone out of its way to support ESI and Accredo's efforts to resist discovery, including by submitting its own affidavits detailing the number of documents SaveOnSP has produced in this litigation.  *See* Dunlap Aff., *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*, No. 4:23-mc-527-SEP (E.D. Mo.), D.E. 13-10 (declaration from SaveOnSP's lead trial counsel in support of ESI's Opposition to JJHCS's Motion to Compel); Dunlap Aff*., Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*, No. 2:23-mc-00019-JTF-tmp (W.D. Tenn.), D.E. 19 (same in support of Accredo).  SaveOnSP nevertheless expects TrialCard to bear far more burdensome discovery than its own business partners are willing to undertake.

Despite TrialCard's considerable efforts to comply with the subpoena (and SaveOnSP's business partners' complete failure to do the same), SaveOnSP now apparently wishes to move to compel additional custodial documents from TrialCard.  Any such motion would be grossly unripe and meritless.  SaveOnSP has not identified any gaps in TrialCard's productions, nor has it identified specific documents that it seeks from any specific custodian.  While TrialCard is willing to consider targeted custodial collections, it cannot do so entirely in the abstract and without any direction whatsoever as to which of SaveOnSP's thirty-two document requests purportedly warrants a custodian.

TrialCard has carefully reviewed the subpoena, delineated its objections and scope of production, and produced responsive documents.  If SaveOnSP believes some particular document request still requires a supplemental TrialCard custodial production despite the party and non-party productions to date, please identify those requests, why they purportedly require custodial production, and which custodians you seek.  We will then consider any such request.

## III.   **Request for Consent to File Joint Letter**

Finally, SaveOnSP has asked for TrialCard's consent to submit a joint letter on these issues before Magistrate Judge Waldor in the District of New Jersey.  As you are well aware, TrialCard, which is headquartered in North Carolina, is a nonparty in this case.  While TrialCard is willing to consider a request to proceed before Judge Waldor rather than in North Carolina, it cannot do so without additional information concerning the scope of a dispute, once ripe, and the

Emma Holland, Esq.
June 16, 2023
Page 3

specific relief SaveOnSP intends to seek.  This is particularly so given your acknowledgement in the June 14 letter that you are still reviewing our May 31 letter.

Very truly yours,

*/s/ Katherine Brisson*
Katherine Brisson

# Exhibit 33



June 30, 2023

Katherine Brisson
(212) 336-2552

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

> **Re:** ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
> **Case No. 2:22-cv-02632 (ES) (CLW)**

Dear Emma:

On behalf of TrialCard, Inc. ("TrialCard"), we write in response to your June 29, 2023 letter regarding our June 28, 2023 meet and confer concerning TrialCard's responses to Save On SP, LLC's (SaveOnSP) subpoena.

As a preliminary matter, we disagree with several of the assertions made in your June 29 letter. First, we did not categorically state that "the only relevant materials" in TrialCard's possession are "communications that it provides to JJHCS [Johnson & Johnson Health Care Systems, Inc.] during the normal course of business." Rather, we explained that because TrialCard is a vendor tasked with administering CarePath at the direction of JJHCS, responsive documents that it would possess would largely be in the possession of JJHCS as well. Indeed, as we have stated in our correspondence, TrialCard does not independently interpret the CarePath terms and conditions without direction from JJHCS, nor does it independently analyze the harm SaveOnSP has caused to JJHCS. *See* Ltr. from G. Carotenuto to A. Dunlap dated May 12, 2023 at 3–4.

Relatedly, as we explained at length previously and during the meet and confer, purely internal communications concerning issues that do not relate to TrialCard's implementation of the CarePath program are not relevant to the claims and defenses in the litigation. *See, e.g.*, Ltr. from K. Brisson to E. Holland dated June 7, 2023 at 2. Thus, for example, the documents sought by RFP Nos. 7, 9, and 29—which seek documents entirely unrelated to TrialCard's provision of services to JJHCS—are immaterial to the claims at issue. TrialCard should not be forced to search for them in any format, custodial or non-custodial.

In addition, you mischaracterize TrialCard's willingness to search for or produce custodial documents, stating inaccurately that we "refuse[]" to do so. Rather, we repeatedly stated that following reasonable investigation, we had concluded that such custodial discovery was unnecessary to fulfill our obligations under the subpoena. This is especially so in light of the substantial productions made to date, including the production of over 19,000 patient call notes,

Emma Holland, Esq.
June 30, 2023
Page 2

numerous patient form letters, and voluminous spreadsheets containing enrollment and claims data. In any event, we also repeatedly reiterated our willingness to search for and produce custodial documents, but noted that we could not do so entirely in the abstract, without any direction whatsoever as to which of your thirty-two requests merit custodial discovery. You refused to identify any purported gaps in our productions thus far, and you similarly refused to identify any specific requests that you believe merit a custodial production.

Your letter also fails to memorialize the discussion we had concerning the ongoing third-party motion practice involving JJHCS and Express Scripts Inc. ("ESI") and Accredo Health Group, Inc. ("Accredo"). During the meet and confer, we asked if you were willing to memorialize your apparent position that a third-party must always produce custodial documents to comply with its third-party subpoena obligations. You stated that despite submitting an affidavit in support of ESI's and Accredo's opposition to JJHCS's motions to compel, you had not read the oppositions in those cases, and you had no position on whether ESI or Accredo should be required to produce any discovery at all. Given your submission of affidavits in support of ESI and Accredo, we find it less than plausible that you do not endorse their positions. Regardless, however, we reiterate that SaveOnSP's position in relation to the instant TrialCard subpoena is inconsistent with the positions taken by its own business partners. *See* Ltr. from K. Brisson to E. Holland dated June 16, 2023 at 2.

All else aside, we have conveyed your position to our client and, in an effort to seek compromise, we are diligently working to determine whether there is anything more to be done to satisfy the concerns raised in your letter. We will provide an update as soon as possible.

Finally, you have requested information concerning who is paying for TrialCard's costs in connection with responding to the subpoena. This is a remarkable request given that SaveOnSP itself has refused to provide this information, absent Court order, in the context of the ongoing litigation. *See, e.g.*, Joint Ltr. to Judge Waldor dated Apr. 11, 2023 at 5 (memorializing SaveOnSP's refusal to respond to JJHCS's Interrogatory No. 14 requesting information concerning the payment of SaveOnSP's legal fees). SaveOnSP can hardly place demands on a third party for information that it itself has refused to provide in party discovery.

Very truly yours,

*/s/ Katherine Brisson*
Katherine Brisson

# Exhibit 34



www.pbwt.com

August 3, 2023

Katherine Brisson
(212) 336-2552

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

      **Re:**    *Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC*
          **Case No. 2:22-cv-02632 (ES) (CLW)**

Dear Emma:

      On behalf of TrialCard, we write in response to your July 26, 2023 letter concerning TrialCard's response to the third-party subpoena served by SaveOnSP.

      <u>Request No. 3</u>.  You appear to misunderstand how we will be responding to Request No. 3.  As we have explained, we have already agreed to search custodial files for documents responsive to this Request.  *See* July 13 Ltr. from K. Brisson to E. Holland.  The specific search terms we intend to apply to custodial data are addressed more fully below.

      As to non-custodial documents, we decline your invitation to add the proposed terms to our collection of case and tasks notes for the reasons already explained.  *See* June 7, 2023 Ltr. from K. Brisson to E. Holland.  Specifically, we have already produced 19,933 records from TrialCard's centralized database that hit on 12 existing search terms.  The limitations you have proposed with respect to the "out of pocket" term (specifically adding the terms "no" and "zero") are insufficient to address the substantial burden we have already identified in our June 7 letter. Indeed, as we have already explained, nearly every single call to TrialCard relating to the CarePath program likely involves some mention or reference to the terms "out-of-pocket" or "OOP," and SaveOnSP is not entitled to every call concerning out-of-pocket costs without some reasonable subject matter limitation.  Your proposed terms do not represent such a reasonable limitation.

      <u>Scope of Custodial Searches.</u>  TrialCard confirms that it will perform a custodial search for documents responsive to Request Nos. 8–9 and 11–15, as well as Request Nos. 1, 2, 3, 18(i)-(m), and 30 (which are the requests to which it previously agreed to produce non-custodial documents).  TrialCard will not produce custodial documents responsive to the remainder of the Requests.

      <u>Request No. 22/Documents in JJHCS's Possession.</u>  Regarding Request No. 22 specifically, we have previously explained that TrialCard will not produce documents that are

Emma Holland, Esq.
August 3, 2023
Page 2

already in the possession of JJHCS.  *See, e.g.*, May 12, 2023 Ltr. from G. Carotenuto to A. Dunlap.
Your own cited authority is in accord.  *See Wyeth v. Abbott Lab'ys*, 2011 WL 2429318, at *8
(D.N.J. June 13, 2011) ("To the extent Plaintiffs seek to compel Novartis to produce documents
already produced by Abbott, Plaintiffs' motions to enforce their subpoenas are denied as
duplicative.").  Moreover, as we have also previously explained at length, this is consistent with
the position that SaveOnSP has endorsed with respect to its own business partners, ESI and
Accredo, for which it has suggested that third-parties need not duplicate party productions.  *See
generally* Ltr. from K. Brisson to E. Holland dated June 16, 2023.

Nothing about JJHCS's Responses and Objections to SaveOnSP's Second Set of
Interrogatories alters this position.  TrialCard has already produced enrollment and claims data,
and to the extent JJHCS received analyses or other deliverables concerning this data, these
documents would be in JJHCS's possession.  Indeed, as we have already explained, analysis of
such data would have been done at the request of, or in consultation with, JJHCS.  Further, as
explained in its Responses and Objections to SaveOnSP's Second Set of Interrogatories, JJHCS
intends to produce documents sufficient to show the analyses at issue.

Finally, you ask TrialCard to confirm that JJHCS has produced all documents in
the possession of both JJHCS and TrialCard.  TrialCard has no reason to question JJHCS's
assertion that JJHCS has produced such documents to the extent necessary to satisfy JJHCS's
discovery obligations and as negotiated by the parties.

Additional Custodians and Custodial Search Terms.  We reiterate that while we still
do not believe custodial collections are necessary at all, we have undertaken such collections to
moot the concerns you have expressed and to avoid an unnecessary dispute.  *See* July 6, 2023 Ltr.
from K. Brisson to E. Holland.  In addition to the two custodians we have already proposed, you
now request the addition of sixteen document custodians.  This is grossly disproportionate to
TrialCard's status as a third-party and would present a significant burden.  Nevertheless, in the
interest of reaching compromise, we will agree to add Rick Fry[1] and Paul Esterline[2] as additional
custodians if that will resolve this dispute.  We are in the process of collecting these custodians'
file.  Once we have done so, we will revert to address the issues you have raised with respect to
additional search terms, including those proposed in Appendix A to your letter.

TRIALCARD_00000200.  TrialCard is investigating the legibility issue you have
identified and will reproduce a replacement version to the extent feasible.

Document Retention Policy.  The document retention policy produced as
TRIALCARD_00000125 has been in effect since December 16, 2020 and was modified on

---

[1] Mr. Fry served as Senior Vice President, Client Solutions from February 2020 to August 2022.  Prior to
that, he served in various roles in Operations and Client Services for nearly seven years.

[2] Mr. Esterline is currently Director of Reporting and Analytics and has held several prior roles in
analytics and strategic accounts.

Emma Holland, Esq.
August 3, 2023
Page 3


January 31, 2023 to include the "TC Script Records Portion" in Appendix A. Based on reasonable investigation, TrialCard does not have any other responsive retention documents.

       <u>Data Dictionary</u>. In the event you have a specific question concerning the meaning of a particular data field, we are open to addressing it on a case-by-case basis.

       Very truly yours,



       <u>*/s/ Katherine Brisson*</u>
       Katherine Brisson

# Exhibit 35



www.pbwt.com

December 22, 2023

Sara A. Arrow
(212) 336-2031

**By Email**

Elizabeth Snow, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
       **Case No. 2:22-cv-02632 (ES) (CLW)**

Dear Elizabeth:

On behalf of TrialCard, we write in response to your December 14, 2023 letter concerning the relevant time period for JJHCS's productions in response to the February 17, 2023 subpoena (the "Subpoena") served on TrialCard.

As you know, TrialCard, a non-party, and SaveOnSP have been engaged for several months in extensive negotiations related to the scope of TrialCard's response to the Subpoena. The Subpoena sought the production of documents for the period from January 1, 2017 through the date of the subpoena.   TrialCard timely raised relevance, breadth, and burden objections, agreeing to produce documents only for the period January 1, 2017 to July 1, 2022.  *See* TrialCard Responses and Objections dated March 6, 2023.[1]  Following negotiation, TrialCard subsequently agreed to expand the Relevant Time Period to cover April 1, 2016 through July 1, 2022.  *See* May 12, 2023 Ltr. from G. Carotenuto to A. Dunlap.

Throughout the course of our negotiations, TrialCard consistently reiterated that it would only produce documents from this time period.  *See, e.g.*, July 13, 2023 Ltr. from K. Brisson to E. Holland (identifying April 1, 2016 to July 1, 2022 as the Relevant Time Period for custodial productions); Sept. 8, 2023 Ltr. from K. Brisson to E. Holland (reiterating the Relevant Time Period).  SaveOnSP raised no objections whatsoever and accepted this as the Relevant Time Period

---

[1] You assert in the December 14 letter that TrialCard has articulated no relevance or burden objections to extending the applicable time period.  Not so.  Referencing our original Responses and Objections, we expressly preserved such objections during the December 12, 2023 meet and confer, and we maintain those objections for the reasons stated during our conferral and in this letter.

Elizabeth Snow, Esq.
December 22, 2023
Page 2

at least twice. *See* May 31, 2023 Ltr. from E. Holland to G. Carotenuto at 1 (referring to April 1, 2016 to July 1, 2022 as the "Relevant Time Period"); July 26, 2023 Ltr. from E. Holland to K. Brisson at 7 n.1 (proposing search terms for the "Relevant Time Period" defined as April 1, 2016 to July 1, 2022).

More than six months after TrialCard first identified the Relevant Time Period and several months after SaveOnSP accepted it, SaveOnSP now is attempting to rewrite the above history and demands that TrialCard supplement its productions through November 7, 2023. SaveOnSP's request is improper for several reasons, including the following:

- *First*, the Subpoena was issued on February 17, 2023. TrialCard seeks to extend the scope of the subpoena at least **nine months** beyond the service date. This is plainly improper and contrary to the Federal Rules of Civil Procedure. Neither Rule 45 nor any other authority supports the notion that a subpoena may seek the production of documents that were not created until after the subpoena was propounded.

- *Second*, as we have explained at length, nothing in the Court's November 7, 2023 Order directs TrialCard, as a non-party, to update its discovery responses. That Order only directs "both parties" to "supplement their discovery responses in accordance with the Federal Rules of Civil Procedure"—which, as noted, above, do not impose on TrialCard, a non-party, an obligation to supplement. *See Johnson & Johnson Healthcare Sys., Inc. v. Save On SP, LLC*, ECF No. 173 ("ECF No. 173"). Nor are we aware of any other third party (including your business partners, Express Scripts Inc. or Accredo Health Group, Inc.) who have made a comparable production pursuant to the November 7 Order.

- *Third*, citing to an April 7 letter, you claim that TrialCard purportedly confirmed that it would comply with any court order applicable to RFP Nos. 1, 2, 5–6, 18, 19, and 25–28, which contain requests similar to those in scope and substance as several requests directed to JJHCS. This ignores and mischaracterizes the relevant context surrounding the April 7 letter. As you know, RFP Nos. 1, 2, 5–6, 18, and 19 sought documents for the period January 1, 2009 to the present, and RFP Nos. 25–28 sought documents for the period January 1, 2015 to the present. The parties—JJHCS and SaveOnSP—have long disputed the proprietary of requiring collections beginning as early as 2009 or 2015, as applicable, and have engaged in extended motion practice related to those parallel requests served on JJHCS. To date, the Court has not endorsed SaveOnSP's requests for discovery *prior* to April 1, 2016 for any of the comparable RFPs as they relate to JJHCS. Nothing within Judge Waldor's November 7 Order addresses the earlier time period; to the contrary, Judge Waldor made clear that several of SaveOnSP's requests seeking pre-2016 documents should be narrowed, both as to time period and substance. *See e.g.*, ECF No. 173 at 1 (requiring SaveOnSP to "narrow" the scope of its requests for information relating to CarePath Terms and Conditions and financial information—two categories of information that overlap with several of the

Elizabeth Snow, Esq.
December 22, 2023
Page 3

Requests for Production referenced in TrialCard's April 7 letter).[2]  Thus, contrary to
your assertion, TrialCard's representations in its April 7 letter do not alter its consistent
position that the relevant time period is April 1, 2016 to July 1, 2022—a period that
SaveOnSP has repeatedly accepted over months of negotiation.

For these and all of the other reasons we provided during our meet and confer,
TrialCard will not update its response to the Subpoena beyond July 1, 2022.  TrialCard reserves
all rights, and we remain available to meet and confer.

Very truly yours,


/s/ Sara A. Arrow
Sara A. Arrow

---

[2] For example, RFP No. 5 seeks documents concerning CarePath Terms and Conditions.  SaveOnSP's RFP
No. 27 seeks documents concerning JJHCS's purported return on investment for copay assistance dollars.

# Exhibit 36

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

| | |
|---|---|
| Johnson & Johnson Health Care Systems Inc. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 22-2632 (JMV) (CLW) |
| Save On SP, LLC | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                          TrialCard Inc.
              2250 Perimeter Park Dr., #300, Morrisville, NC 27560
                  *(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **See attached requests for production.**

| Place: Robinson & Cole LLP<br>666 Third Avenue, 20th Floor<br>New York, NY 10017-4132 | Date and Time:<br>12/15/2023 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    12/01/2023

                    CLERK OF COURT

                                        OR

_____          /s/ E. Evans Wohlforth, Jr.
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    **Defendant**
Save On SP, LLC                                , who issues or requests this subpoena, are:
E. Evans Wohlforth, Jr., Gibbons P.C., One Gateway Center, Newark, NY 07102-5310

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 22-2632 (JMV) (CLW)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ **0.00** .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

| Print | Save As... | Add Attachment | | Reset |

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

David Elsberg
Andrew R. Dunlap
Meredith Nelson
Elizabeth H. Snow
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

E. Evans Wohlforth, Jr.
ROBINSON & COLE LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
212-451-2954
ewohlforth@rc.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., | Civil Action No. 22-2632 (ES) (CLW) |
| Plaintiff, | **NOTICE OF SUBPOENA FOR THE PRODUCTION OF DOCUMENTS** |
| v. | |
| SAVE ON SP, LLC, | |
| Defendant. | |

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26,

34, and 45 Defendant Save On SP, LLC ("SaveOnSP") requests TrialCard Inc. ("Trial-

Card"), to produce for inspection and copying the documents listed in these Requests, to

the office of the undersigned on December 15, 2023 or at a time and place mutually agreed

by the parties or ordered by the Court.

     **PLEASE TAKE FURTHER NOTICE** that this demand for production of docu-

ments shall be deemed continuing in nature to require supplemental responses if Plaintiff

or Plaintiff's counsel obtain or locate further or additional documents subsequent to the

time Plaintiff's responses are served.


Dated: December 1, 2023          By: /s/_____

                                 E. Evans Wohlforth, Jr.
                                 ROBINSON & COLE LLP
                                 666 Third Avenue, 20th floor
                                 New York, NY 10017-4132
                                 212-451-2954
                                 ewohlforth@rc.com

                                 David Elsberg
                                 Andrew R. Dunlap
                                 Meredith Nelson
                                 SELENDY GAY ELSBERG, PLLC
                                 1290 Avenue of the Americas
                                 New York, NY 10104
                                 212-390-9000
                                 deslberg@selendygay.com
                                 adunlap@selendygay.com
                                 mnelson@selendygay.com

                                 *Attorneys for Defendant Save On SP, LLC*

2

## DEFINITIONS

1. The singular form of a word includes the plural, and vice versa.

2. Any tense of a verb includes all tenses.

3. Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4. Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5. "Action" means this litigation styled as "Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (ES) (CLW).

6. "Affordable Care Act" means the Patient Protection and Affordable Care Act, Pub. L. 148, 124 Stat. 119.

7. "All," "any," and "each" mean any and all.

8. "And" and "or" are construed both conjunctively and disjunctively.

9. "Benefits Investigation" means any process by which TrialCard, or any entity acting on its behalf, receives information regarding the pharmacy benefits provided by a health plan, including information regarding prior authorization costs, Essential Health Benefits status, patient eligibility, and related information.

10. "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty

3

drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

11.   "CarePath Care Coordinator" means any person or entity encompassed by that term as used on CarePath's "Contact Us" webpage,[1] as well as any person responsible for communicating with patients who contact CarePath via an advertised help number (*e.g.*, 877-CarePath).

12.   "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

13.   "Complaint" means JJHCS's May 4, 2022 Complaint [ECF No. 1] or any subsequently amended Complaint in this Action.

14.   "Copay Accumulator Service" means (a) any service provided by Pharmacy Benefit Mangers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

15.   "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

---

[1] *See* Contact Us, https://www.janssencarepath.com/patient/contact-us (last visited November 20, 2023).

4

16.    "Copay Maximizer Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maximizer."

17.    "Document" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

18.    "Essential Health Benefit: means, in the context of prescription drug benefits at issue in this case, (a) a prescription drug benefit that satisfies the requirement for a plan to provide essential prescription drug benefits under the Affordable Care Act or that is treated as such by a plan;[2] and (b) any definition JJHCS ascribes to the term "essential health benefit" as used in the Complaint.

19.    "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

---

[2] 45 C.F.R. §§ 156.122, 156.115

5

20.    "<u>Including</u>" means including but not limited to.

21.    "<u>Janssen</u>" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

22.    "<u>Janssen Drug</u>" means any Specialty Drug manufactured or sold by Janssen from any time for which patients may receive copay assistance, including BALVERSA, DARZELEX, DARZELEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, PREZCOBIX, REMICADE, RYBREVANT, SIMPONI, STELARA, SYMTUZA, TRACLEER, TREMFYA, UPTRAVI, VENTAVIS, ZYTIGA, as well as any other specialty drugs that JJHCS asserts are at issue in this Action.

23.    "<u>JJHCS</u>" means Johnson & Johnson Health Care Systems Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Johnson & Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and Janssen Research & Development LLC.

6

24.     "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer, in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of such an entity.

25.     "Lash Group" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

26.     "Non-Essential Health Benefits" means, in the context of prescription drug benefits at issue in this case, (a) any prescription drug benefit covered by a plan in excess of those necessary for a plan to satisfy the requirements for providing essential prescription drug health benefits under the Affordable Care Act[3] and designated by the plan as a non-essential health benefit; and (b) any definition JJHCS ascribes to the term "non-essential health benefits" as used in the Complaint.

27.     "Patient" means a natural person prescribed or eligible to be prescribed any Janssen Drug, whether or not they use CarePath or are a participant in a health plan advised by SaveOnSP.

28.     "Person" means a natural person or legal entity including any business or governmental entity or association.

---

[3] *See* 45 C.F.R. §§ 156.122, 15.115

7

29.    "Regarding" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

30.    "Request" means any of these Requests for Production.

31.    "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Save On SP, LLC.

32.    "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

33.    "Stelara" means the Janssen Drugs sold under that name.

34.    "Tremfya" means the Janssen Drug sold under that name.

35.    "TrialCard" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

8

36.     "<u>TrialCard's Employee Health Plans</u>" means any health plans offered by TrialCard to its employees.

37.     "<u>You</u>" and "<u>Your</u>" means TrialCard.

## INSTRUCTIONS

1.     These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii).

2.     These Requests seek production of nonprivileged material. Fed. R. Civ. P. 26(b)(1).

3.     These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4.     For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 45(d)(2)(B).

5.     An objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. Fed. R. Civ. P. 45(d)(2)(B).

6.     If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection.

7.     If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest.

8.     If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 45(e)(2)(A), including by indicating whether any document

9

exists regarding the information re- quested and stating, to the extent the privilege is be- ing asserted in connection with a claim or defense governed by state law, the state privi- lege rule being invoked, Local Rule 34.1.

9.      If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction, the reason for its destruction, the name of the person who requested or authorized its destruction, and the name of the person who destroyed it.

10.      Produce documents as they are kept in the usual course of business or in a form specified in this subpoena. Fed. R. Civ. P. 45(e)(1)(b). For each document, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

11.      Produce electronically stored information in the form and manner required by any agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

12.      Produce each document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

13.      Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notations, revisions, enclo- sures, attachments, underlining, highlighting, or otherwise.

14.     These Requests are deemed continuing. If after responding to any Request you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner.

## TIME PERIOD

Unless otherwise specified, these Requests cover from and including April 1, 2016, through the present.

## REQUESTS

1.     Documents sufficient to show the identity of all drug makers for which TrialCard performs Benefits Investigations.

2.     Documents sufficient to show the identity of all drug makers for which TrialCard has performed investigations, including but not limited to Benefits Investigations, that identify or attempt to identify if patients are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service.

3.     Documents sufficient to show the methods by which TrialCard identifies or attempts to identify if patients are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service.

4.     All Documents and Communications between TrialCard and JJHCS regarding identification or attempts to identify patients who are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service, including without limitation proposals to perform such work.

5.     All Communications with patients receiving Stelara or Tremfya, including without limitation recordings of calls.

6.     Documents sufficient to show the methods by which TrialCard responded to Benefits Investigations that revealed or suggested that a patient was a member of a plan

11

advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service, including without limitation regarding the criteria by which TrialCard determined to send the letter previously produced at TRIALCARD_00000074—77.

       7.    All Communications between TrialCard and SaveOnSP, including without limitation recordings of calls.

       8.    All Documents and Communications regarding the creation or attempted creation of a response to SaveOnSP, Copay Accumulator Services, and/or Copay Maximizer Services, including without limitation the creation or attempted creation of a ███

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████, *see, e.g.,* TRIALCARD_00001815████████████████████████████████████

███  █████████  ██  ████████  █████████);   TRIALCARD_00002256;   TRIAL-CARD_00002725, as well as Documents and Communications regarding the sale or attempted sale of such a program to drug makers.

# Exhibit 37

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
Sara A. Arrow, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036

*Attorneys for TrialCard Inc.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., | Civil Action No. 22-2632 (ES) (CLW) |
| Plaintiff, | **NON-PARTY TRIALCARD INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS** |
| v. | |
| SAVE ON SP, LLC, | |
| Defendant. | |

## GENERAL OBJECTIONS

TrialCard Incorporated ("TrialCard") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in TrialCard objections to a specific Request.

TrialCard reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action.  The following responses and objections are based upon information known at this time.

1.      TrialCard is not a party to the above-captioned litigation pending in the District of New Jersey (the "Action") and objects to the Subpoena's imposition of significant burden on it because the vast majority of Requests in the Subpoena can be satisfied by obtaining documents directly from Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), a party to the Action.  TrialCard notes that several of the requests in the Subpoena are nearly identical to document requests made by SaveOnSP to JJHCS in the Action.  TrialCard objects to producing any documents unless and until SaveOnSP can demonstrate that it has not been able to obtain these documents in party discovery.

2.      TrialCard objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the First Amendment privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.  The inadvertent production by TrialCard of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of

competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

3.    TrialCard objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response TrialCard makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

4.    TrialCard objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

5.    TrialCard objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that TrialCard agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of TrialCard.  Instead, it means that TrialCard will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

6.    TrialCard objects to the Requests to the extent that they seek information that is obtainable from sources other than TrialCard in a manner that is more convenient, less burdensome, or less expensive.

7.      TrialCard objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

8.      TrialCard objects to the Requests to the extent that they are vague and/or ambiguous.

9.      TrialCard objects to the Requests to the extent that they require interpretation by it in providing a response.  TrialCard responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that differs from TrialCard's understanding of that Request, TrialCard reserves the right to modify or supplement its objections and responses.

10.      TrialCard objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests, including the requests contained within the subpoena served on TrialCard dated February 17, 2023 (the "February 2023 Subpoena").

11.      TrialCard objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. TrialCard further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

12.      TrialCard objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

13.      TrialCard objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

4

14.     TrialCard objects to the Requests to the extent that they seek the production of documents that are not in TrialCard's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.      TrialCard objects to the definition of the term "Benefits Investigation" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any means by which TrialCard, or any entity acting on its behalf, receives information regarding the pharmacy benefits provided by a health plan, including information regarding prior authorization costs, Essential Health Benefits status, patient eligibility, and related information" or purports to include entities and persons acting or purporting to act on behalf of or under the control of TrialCard.

2.      TrialCard objects to the definition of the term "Janssen" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf" of those entities.

3.      TrialCard objects to the definition of the term "JJHCS" as overbroad, unduly burdensome, and not proportional to the needs of the case to extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or] representatives" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development,

5

LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and Janssen Research & Development LLC.

4.      TrialCard objects to the definition of the term "JJHCS Hub Entity" as vague and as irrelevant to the extent it purports to include entities other than those responsible for administering CarePath during the Relevant Time Period.  TrialCard further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.  TrialCard further objects to the extent the term is used to seek documents and communications concerning entities other than JJHCS.

5.      TrialCard objects to the definition of the term "Lash Group" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc."

6.      TrialCard objects to the definition of the term "TrialCard" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control

of TrialCard Inc." TrialCard further objects to the extent the term is used to seek documents and communications in the possession of entities other than TrialCard.

## OBJECTIONS TO INSTRUCTIONS

1.      TrialCard objects to the Instructions to the extent that they impose requirements on TrialCard beyond those required by the Federal Rules of Civil Procedure.

2.      TrialCard objects to Instruction No. 14 to the extent that SaveOnSP attempts to impose requirements on TrialCard beyond those required by the Federal Rules of Civil Procedure or ordered by the Court. Rule 34, which contains a duty to supplement responses, does not apply to requests for production directed to a non-party, and Rule 45 contains no duty to supplement.

## OBJECTIONS TO THE TIME PERIOD FOR SPECIFIC REQUESTS

1.      TrialCard objects to SaveOnSP's Requests as overbroad, unduly burdensome, and not relevant to the subject matter of this Action to the extent they call for documents from before April 1, 2016 or after July 1, 2022. Except where expressly noted, TrialCard will only produce documents for the period April 1, 2016 to July 1, 2022 (the "Relevant Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

**Request No. 1**

Documents sufficient to show the identity of all drug makers for which TrialCard performed Benefits Investigations.

**Response to Request No. 1**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad and irrelevant to any claim or defense in this Action. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. TrialCard further objects to this Request to the extent it uses the terms "Benefits Investigations" and "TrialCard" for the reasons stated in TrialCard's

7

Objections to Definitions. TrialCard further objects to this Request on the grounds that the term "drug makers" is undefined. TrialCard further objects to this Request because it would require the disclosure of confidential business information, including information about other TrialCard clients, that has no relevance to this Action and is subject to confidentiality agreements between TrialCard and its other clients.

TrialCard will not search for or produce documents in response to this Request.

**Request No. 2**

Documents sufficient to show the identity of all drug makers for which TrialCard has performed investigations, including but not limited to Benefits Investigations, that identify or attempt to identify if patients are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service.

**Response to Request No. 2**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad and irrelevant to any claim or defense in this Action, insofar as it seeks documents related to efforts to identify or attempt to identify patients unaffiliated with SaveOnSP. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. TrialCard further objects to this Request to the extent it uses the terms "Benefits Investigations" and "TrialCard" for the reasons stated in TrialCard's Objections to Definitions. TrialCard further objects to this Request on grounds that the terms "investigations" and "drug makers" are undefined and/or vague and ambiguous. TrialCard further objects to this Request because it would require the disclosure of confidential business information, including information about other TrialCard clients, that has no relevance to this Action and is subject to confidentiality agreements between TrialCard and its other clients.

8

TrialCard will not search for or produce documents responsive to this Request.

## Request No. 3

Documents sufficient to show the methods by which TrialCard identifies or attempts to identify if patients are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service.

## Response to Request No. 3

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant to any claim or defense in this Action, insofar as it seeks information about services that TrialCard provides to clients other than JJHCS and in relation to patients unaffiliated with SaveOnSP. TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. TrialCard further objects to this Request to the extent it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome to TrialCard. TrialCard further objects to this Request to the extent it uses the term "TrialCard" for the reasons stated in TrialCard's Objections to Definitions.

Subject to the foregoing objections and without prejudice to those objections, to the extent that documents responsive to this Request are also arguably responsive to existing Requests for Production Numbers 20 and 22 in the February 2023 Subpoena, TrialCard has already agreed to produce certain documents subject to TrialCard's prior objections. Specifically, to the extent such documents have not already been produced by JJHCS, TrialCard has agreed to produce (1) non-privileged documents from certain agreed-upon TrialCard custodians that are responsive to Requests for Production Numbers 20 and 22 for the Relevant Time Period; and (2) Benefits

Investigations performed for JJHCS that sought to determine whether Stelara or Tremfya patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan, to the extent such non-privileged documents exist for the period January 1, 2022 to November 7, 2023.  TrialCard will not otherwise search for or produce documents or communications responsive to this Request.

**Request No. 4**

All Documents and Communications between TrialCard and JJHCS regarding identification or attempts to identify patients who are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service, including without limitation proposals to perform such work.

**Response to Request No. 4**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant to any claim or defense in this Action, insofar as it seeks documents unrelated to SaveOnSP. TrialCard further objects to this Request to the extent it seeks the production of documents and communications that are available from parties to the Action and, therefore, is unduly burdensome to TrialCard.  TrialCard further objects to this Request to the extent it seeks "all" documents and communications regarding a broad subject matter.  TrialCard further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege.  TrialCard further objects to this Request to the extent it uses the terms "TrialCard" and "JJHCS" for the reasons stated in TrialCard's Objections to Definitions.

Subject to the foregoing objections and without prejudice to those objections, to the extent that documents responsive to this Request are also arguably responsive to existing Requests for Production Numbers 20 and 22 in the February 2023 Subpoena, TrialCard has already agreed to

produce certain documents subject to TrialCard's prior objections.  Specifically, to the extent such documents have not already been produced by JJHCS, TrialCard has agreed to produce (1) certain non-privileged documents from certain agreed-upon TrialCard custodians that are responsive to Requests for Production Numbers 20 and 22 for the Relevant Time Period; and (2) Benefits Investigations performed for JJHCS that sought to determine whether Stelara or Tremfya patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan, to the extent such non-privileged documents exist for the period January 1, 2022 to November 7, 2023.  TrialCard will not otherwise search for or produce documents responsive to this Request.

## Request No. 5

All Communications with patients receiving Stelara and Tremfya, including without limitation recordings of calls.

## Response to Request No. 5

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant to any claim or defense in this Action, insofar as it seeks communications unrelated to the CarePath program (and the "withMe" programs) and/or with patients unaffiliated with SaveOnSP.  TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" communications regarding a broad subject matter.  TrialCard further objects to this Request to the extent that it seeks the production of communications that are available from parties to the Action (specifically, SaveOnSP) and, therefore, is unduly burdensome to TrialCard.

Subject to the foregoing objections and without prejudice to those objections, to the extent that documents responsive to this Request are also arguably responsive to existing Request for

11

Production Number 3 in the February 2023 Subpoena, TrialCard has already agreed to produce certain documents subject to TrialCard's prior objections. Specifically, to the extent such documents have not already been produced by JJHCS, TrialCard has agreed to produce (1) case and task notes reflecting communications between TrialCard and patients taking at least one Janssen Drug for the Relevant Time Period; and (2) for the period January 1, 2022 to November 7, 2023, certain documents sufficient to show written communications to patients receiving Stelara or Tremfya to the extent such communications concern whether those patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan. TrialCard will not otherwise search for or produce communications responsive to this Request.

**Request No. 6**

Documents sufficient to show the methods by which TrialCard responded to Benefits Investigations that revealed or suggested that a patient was a member of a plan advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service, including without limitation regarding the criteria by which TrialCard determined to send the letter previously produced at TRIALCARD_00000074–77.

**Response to Request No. 6**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant to any claim or defense in this Action, insofar as it seeks documents unrelated to SaveOnSP. TrialCard further objects to this Request to the extent it seeks the production of documents and information that are available from parties to the Action and, therefore, is unduly burdensome to TrialCard. TrialCard further objects to this Request on the ground that the phrase "methods by which TrialCard responded to Benefits Investigations" is vague and ambiguous. TrialCard further

12

objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. TrialCard further objects to this Request to the extent it uses the terms "Benefits Investigations" and "TrialCard" for the reasons stated in TrialCard's Objections to Definitions.

Subject to the foregoing objections and without prejudice to those objections, to the extent that documents responsive to this Request are also arguably responsive to existing Requests for Production Numbers 20 and 22 in the February 2023 Subpoena, TrialCard has already agreed to produce certain documents subject to TrialCard's prior objections. Specifically, to the extent such documents have not already been produced by JJHCS, TrialCard has agreed to produce (1) certain non-privileged documents from certain agreed-upon TrialCard custodians that are responsive to Requests for Production Numbers 20 and 22 for the Relevant Time Period; and (2) for the period January 1, 2022 to November 7, 2023, certain documents sufficient to show written communications to patients receiving Stelara or Tremfya to the extent such communications concern whether those patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan. TrialCard will not further search for or produce documents in response to this Request.

**Request No. 7**

All Communications between TrialCard and SaveOnSP, including without limitation recordings of calls.

**Response to Request No. 7**

In addition to the foregoing general objections, TrialCard, as a third party, objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant to any claim or defense in this Action, insofar as it seeks communications unrelated to any Janssen

Drug or to the CarePath (and the "withMe" programs). TrialCard further objects to the extent this Request seeks the production of documents and communications that are available from parties to the Action, in particular from SaveOnSP. TrialCard further objects to this Request to the extent it seeks documents and communications in the possession of entities other than TrialCard or outside of TrialCard's possession, custody, and/or control. TrialCard further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" communications regarding a broad subject matter. TrialCard further objects to this Request to the extent it uses the term "TrialCard" for the reasons stated in TrialCard's Objections to Definitions.

TrialCard further objects to this Request as unduly burdensome because it requires TrialCard to identify recordings of calls without the benefit of identifying information—specifically, all names and phone numbers used by SaveOnSP employees who communicated with TrialCard and its affiliates—that SaveOnSP has not provided. TrialCard further objects to this Request as duplicative of Request No. 5 to the extent communications between TrialCard and SaveOnSP included patients.

Subject to the foregoing objections, TrialCard will produce certain responsive call recordings as requested by JJHCS. TrialCard will not otherwise search for or produce documents or communications responsive to this Request.

**Request No. 8**

All Documents and Communications regarding the creation or attempted creation of a response to SaveOnSP, Copay Accumulator Services, and/or Copay Maximizer Services, including without limitation the creation or attempted creation of a ███████████████

████████████████████████████████████████████

14

████████████████████████████████, *see, e.g.,* TRIALCARD_00001815 (████████

████████████████████████████████████████████████████████████████████);

TRIALCARD_00002256; TRIALCARD_00002725, as well as Documents and Communications

regarding the sale or attempted sale of such a program to drug makers.

## Response to Request No. 8

In addition to the foregoing general objections, TrialCard, as a third party, objects to this

Request as overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant

to any claim or defense in this Action, insofar as it seeks information about services that TrialCard

provides to clients other than JJHCS and/or in relation to patients unaffiliated with SaveOnSP.

TrialCard further objects to this Request as it seeks the production of documents and information

that are available to parties to the Action and, therefore, is unduly burdensome to TrialCard.

TrialCard further objects to this Request to the extent it seeks information that is exempt from

discovery and protected from disclosure by any privilege.  TrialCard further objects to this Request

as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.

TrialCard will not search for or produce documents responsive to this Request.

Dated:  December 15, 2023

By:    */s/ Harry Sandick*

Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
Sara A. Arrow
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for TrialCard Inc.*

15

# Exhibit 38



www.pbwt.com

March 1, 2024

Sara Arrow
(212) 336-2031

**By Email**

Hannah Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:     **TrialCard's December 1, 2023 Subpoena**
            *Johnson & Johnson Health Care Services, Inc. v. Save On SP, LLC,*
            Case No. 2:22-cv-02632 (JKS) (CLW)

Dear Hannah:

On behalf of TrialCard, we write in response to SaveOnSP's February 16, 2024 letter regarding the December 1, 2023 Subpoena issued to TrialCard.

## I.      General Objections

**Time Period.** SaveOnSP continues to insist that TrialCard produce documents beyond July 1, 2022, the parties' agreed-upon cut-off date for discovery. However, nothing in Judge Waldor's November 7, 2023 Order directs third parties, such as TrialCard, to update its discovery responses. That Order only directs "both parties" to "supplement their discovery responses in accordance with the Federal Rules of Civil Procedure." *See Johnson & Johnson Health Care Sys., Inc. v. Save On SP, LLC*, ECF No. 173. This does not obligate TrialCard to update its discovery responses, as TrialCard is not a party to the underlying litigation. It certainly does not provide any basis for TrialCard to produce documents ***beyond*** the cutoff date for party discovery (November 7, 2023), as SaveOnSP now insists.

SaveOnSP also states that "TrialCard has not raised any valid burden objection" to extending the time period beyond July 1, 2022. That is not accurate. In its Responses and Objections to the December 1, 2023 Subpoena, TrialCard did so, objecting to SaveOnSP's Requests as "overbroad, ***unduly burdensome***, and not relevant to the subject matter of this Action to the extent they call for documents from before April 1, 2016 or after July 1, 2022" (emphasis supplied). Furthermore, TrialCard reiterated its burden objection during the January 12, 2024 meet and confer. For the avoidance of doubt, TrialCard asserts relevance, breadth, and burden objections to SaveOnSP's demand that TrialCard produce documents beyond July 1, 2022.

Hannah Miles, Esq.
March 1, 2024
Page 2

SaveOnSP next suggests that TrialCard should be required to produce documents beyond July 1, 2022 because it "is central to the litigation." However, TrialCard is a third party, and is far more removed from the SaveOnSP scheme at issue than SaveOnSP's own business partners, ESI and Accredo—yet SaveOnSP apparently does not believe that ESI and Accredo should update their productions. *See* Jan. 11, 2024 Email from H. Miles to S. Arrow. TrialCard's role in administering the CarePath program, at the direction of JJCHS, does not impose on it unique obligations that are different than those applicable to other third parties.

Nevertheless, in the interest of compromise, TrialCard has agreed to produce, through November 7, 2023, thousands of benefits investigations ███████████████████ ████████████████████████████████████████████████████████. *See* TRIALCARD_00008931. In addition, TrialCard agrees to "refresh" certain CarePath claims data through November 7, 2023. We are currently investigating the full scope of this data "refresh" and will revert when we have additional information.

**General References to Accumulators and Maximizers.** SaveOnSP also seeks documents that relate generally to copay accumulators and maximizers without any reference to SaveOnSP. SaveOnSP has failed to justify its insistence that TrialCard must produce documents that do not mention SaveOnSP, and TrialCard declines to engage in an overbroad, unduly burdensome review of them.[1]

## II.    TrialCard's Ability to Identify Patients

**Request Nos. 1 and 2.** Requests Nos. 1 and 2 seek documents sufficient to show the identity of all drug makers for which TrialCard performed investigations, including benefits investigations, that identify or attempt to identify if a patient is on a health plan affiliated with a copay maximizer, accumulator, or SaveOnSP. SaveOnSP's reference to general investigations (beyond benefits investigations) is vague and ambiguous. In any event, TrialCard's purported actions with respect to clients other than JJHCS are irrelevant to the underlying litigation, which only concerns the administration of CarePath, and not copay assistance programs offered by other pharmaceutical manufacturers. SaveOnSP has failed to articulate the relevance of documents sought by this request, and has similarly failed to explain how TrialCard's work performed for

---

[1] As you know, Judge Waldor's November 7, 2023 Order imposed a limitation that documents related to JJHCS's CAP Program must also mention SaveOnSP. *See* Dkt. No. 173 at 2–3 ("Plaintiff shall run custodial document searches fashioning a search designed to capture documents wherein the terms 'CAP A', 'CAP M', or 'adjustment program,' (or reasonable variations of those terms) are found *in the same documents as the term 'SaveOn'* (or reasonable variations / abbreviations)." (emphasis supplied)). While this Order is only applicable to party discovery, it suggests that expanding third party discovery to documents that do not mention or refer to SaveOnSP is improper and disproportionate to the needs of the case.

Hannah Miles, Esq.
March 1, 2024
Page 3

clients other than SaveOnSP has any relevance whatsoever to JJHCS or CarePath.  TrialCard will not search for or produce documents responsive to Requests 1 or 2.

      **Request No. 3.**  Request No. 3 seeks documents sufficient to show the methods by which TrialCard identifies or attempts to identify if patients are members of health plans affiliated with copay accumulators, maximizers, or SaveOnSP.  As you know, TrialCard produced thousands of benefits investigations on January 12, 2024.  *See* TRIALCARD_00008931.  As we have discussed, TrialCard is also in the process of identifying whether additional data fields exist for these benefits investigations.

      SaveOnSP nevertheless asserts that the benefits investigations do not satisfy this Request because "this request seeks 'method**s**,' plural."  Feb. 16, 2024 Ltr. from H. Miles to S. Arrow at 3.  SaveOnSP identifies two documents wherein TrialCard employees discuss potential methods for identifying patients on a copay accumulator, maximizer, or SaveOnSP and claims that it "needs to know if those, or other methods, were ever used to identify or attempt to identify if patients are members of plans advised by SaveOn, accumulators, or maximizers."  However, as SaveOnSP acknowledges, the documents that SaveOnSP cites reflect ██████████████ ███████████████████████████████████████████████████ *See id.*; ████████████ TRIALCARD_00003417.  As we have explained, to the extent such ████████ ███████████████, they are only relevant to the extent they were provided to JJHCS.  Accordingly, such documents are more properly obtained through party discovery.

      Accordingly, we decline to review documents to identify general identification "methods" of SaveOnSP patients that TrialCard may have considered.  To the extent SaveOnSP seeks to propose a more narrowly tailored request concerning other methods of identification that TrialCard may have developed with respect to CarePath, we remain open to considering such a request.

      **Request No. 4.**  Request No. 4 seeks documents and communications between TrialCard and JJHCS regarding the identification or attempted identification of patients who are members of plans affiliated with copay accumulators, maximizers, or SaveOnSP.  As we have explained repeatedly, documents and communications between TrialCard and JJHCS are more appropriately sought through party discovery.  TrialCard makes no representations as to the contents of JJHCS's productions, and further takes no position as to whether these documents would be relevant.

### III.    TrialCard's Responses to Patients Once Identified

      **Request No. 6.**  Request No. 6 seeks documents sufficient to show the methods by which TrialCard responded to benefits investigations that revealed or suggested that a patient was a member of a health plan that was affiliated with a copay accumulator, maximizer, or SaveOnSP.  SaveOnSP asserts that TrialCard has not satisfied this Request.  This is incorrect.  TrialCard has produced multiple letter templates that it has sent to patients in connection with the benefits investigation process, including following identification of a patient as affiliated with a copay

Hannah Miles, Esq.
March 1, 2024
Page 4

accumulator, maximizer, or SaveOnSP.  TrialCard has further satisfied this Request by providing the CarePath IDs of the patient recipients of these letters and the dates on which those letters were sent.  *See* TRIALCARD_00008931 ("Tasks").  Because Request No. 6 seeks "documents sufficient to show," these documents satisfy this request.

          **Request No. 8.**  Request No. 8 seeks documents and communications regarding TrialCard's creation or attempted creation of a response to SaveOnSP and/or copay accumulators or maximizers.  This overbroad request seeks documents and communications that are irrelevant to any claim or defense in the underlying litigation.  SaveOnSP is not entitled to go on a fishing expedition of all efforts TrialCard contemplated or took with respect to copay maximizers, accumulators, or even SaveOnSP.  TrialCard is a vendor for JJHCS, and only the work that TrialCard work performed for JJHCS is relevant to this litigation.  Further, documents regarding what responses or solutions TrialCard purportedly offered to JJHCS, to the extent they exist, are more appropriately sought through party discovery.

          Further, SaveOnSP has not shown how any responses or solutions that TrialCard may have contemplated or developed for copay assistance programs other than CarePath have any applicability to CarePath.  Once again, we remain open to considering a request that concerns TrialCard's responses to SaveOnSP with respect to JJHCS and the CarePath Program, but absent such a request, we decline to produce documents in response to this Request.

## IV.    Communications Between TrialCard and SaveOnSP

          Request No. 7 seeks all communications between TrialCard and SaveOnSP.  To the extent these communications occurred, SaveOnSP can search its own records to locate them.  SaveOnSP has not explained why it needs a third party to search for and produce documents that should be within its own files.  Accordingly, TrialCard declines to undertake the undue burden of searching for and producing communications sought by Request No. 7.

*    *    *    *

          Finally, for avoidance of doubt, TrialCard does not agree that the parties are at impasse with respect to the December 1, 2023 Subpoena.  We reserve all rights and are available to meet and confer.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

# EXHIBITS 39-41
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 42



www.pbwt.com

March 22, 2024

Sara A. Arrow
(212) 336-2031

**By Email**

Hannah Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:   **December 1, 2023 Subpoena to TrialCard**
      *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
      **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Hannah:

On behalf of TrialCard, we write in response to SaveOnSP's March 8, 2024 letter regarding the subpoena dated December 1, 2023 (the "Second Subpoena").

**I.   Time Period**

SaveOnSP asserts that TrialCard has provided "no reasoned basis" to justify a July 1, 2022 cutoff date. Not so: we have explained our position on this issue repeatedly in written correspondence and during meet and confers. *See, e.g.*, Mar. 1, 2024 Ltr. from S. Arrow to H. Miles; Jan. 12, 2024 Ltr. from S. Arrow to H. Miles; *see also* Dec. 22, 2023 Ltr. from S. Arrow to H. Miles. Specifically, as it relates to the February 17, 2023 subpoena (the "First Subpoena"), SaveOnSP **agreed** to July 1, 2022 as the cut-off date. *See* May 31, 2023 Ltr. from E. Holland to G. Carotenuto at 1 (referring to April 1, 2016 to July 1, 2022 as the "Relevant Time Period"); July 26, 2023 Ltr. from E. Holland to K. Brisson at 7 n.1 (proposing search terms for the "Relevant Time Period" defined as April 1, 2016 to July 1, 2022).

Belatedly disappointed with the agreement it struck, SaveOnSP then sought to circumvent this agreed-upon time period by propounding the Second Subpoena—containing several requests that overlapped with those in the First Subpoena and imposing a new "refresh" time period to partially match the "refresh" time period to which the parties are bound. But as SaveOnSP acknowledges, TrialCard, as a third party, is not bound by Judge Waldor's November 7, 2023 Order extending party discovery. *See* Jan. 11, 2024 Email from H. Miles to S. Arrow. Nor has SaveOnSP explained why TrialCard, as a third party, should be subject to such expansive discovery far beyond the initial agreed-upon cut-off date. SaveOnSP has already refused to say whether its own co-conspirators and business partners—Express Scripts, Inc. and Accredo Health

Hannah Miles, Esq.
March 22, 2024
Page 2

Group—should be required to update its third-party productions through November 7, 2023.  *See id.*  And perhaps most egregious, SaveOnSP has provided no basis whatsoever for why TrialCard must produce documents even ***beyond*** the cutoff date for party discovery (November 7, 2023), as SaveOnSP now insists.

Despite these objections, TrialCard has nevertheless agreed to produce multiple categories of documents through November 7, 2023 in the interest of compromise.  *See, e.g.*, Mar. 1, 2024 Ltr. from S. Arrow to H. Miles at 1–2.  For example, TrialCard has agreed to produce the results of thousands of benefits investigations to comply with the First and Second Subpoenas. *See* Mar. 12, 2024 Ltr. from S. Arrow to H. Miles at 1 n.1; Oct. 20, 2023 Ltr. from S. Arrow to E. Holland at 1.  Further, as discussed in greater detail below, TrialCard has agreed to refresh its production of CarePath enrollment data[1] and case and task notes for Stelara and Tremfya patients through November 7, 2023.  These productions, which are voluminous, represent a good-faith effort to comply with SaveOnSP's subpoenas in a manner proportional to its role as a third party.

Finally, if there are specific, targeted categories of documents that you seek through November 7, 2023, please so advise so that we can evaluate that request.  If you present a reasonable proposal, we are certainly willing to consider it—but we cannot agree to a wholesale expansion of the discovery cutoff without any justification or reasonable limitation.

## II.    TrialCard's Ability to Identify Patients

**Request Nos. 1 and 2** seek documents sufficient to show the identities of all drug makers for which TrialCard performed investigations, including benefits investigations, that identify or attempt to identify if a patient is on a health plan affiliated with a copay maximizer, accumulator, or SaveOnSP.  As we have explained, any actions that TrialCard may or may not have taken for clients other than JJHCS are irrelevant.  SaveOnSP has not explained how TrialCard's work performed for its non-JJHCS clients has any relevance whatsoever to JJHCS or CarePath.  Please so do and we will consider your position.

**Request No. 3** seeks documents sufficient to show the methods by which TrialCard identifies or attempts to identify whether patients are members of health plans affiliated with copay accumulators, maximizers, or SaveOnSP.  Despite TrialCard's production of the results of thousands of benefits investigations performed for patients taking Stelara or Tremfya, *see* TRIALCARD_00008931, SaveOnSP insists that TrialCard has not satisfied Request No. 3.  We disagree. ███████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

---

[1] Specifically, TrialCard agrees to refresh its prior production of CarePath enrollment data for the time period July 1, 2022 through November 7, 2023.  *See* TRIALCARD_00000001; TRIALCARD_00000004;    TRIALCARD_00000005;    TRIALCARD_00000006; TRIALCARD_00000007; TRIALCARD_00000008; and TRIALCARD_00000009.

Hannah Miles, Esq.
March 22, 2024
Page 3

████████████████████████████  TrialCard's production of the results of those benefits investigation therefore satisfies this request.

SaveOnSP nevertheless asserts that it is entitled to documents concerning some "methods" that TrialCard hypothetically employed to identify SaveOnSP-affiliated patients because SaveOnSP has asserted a "failure to mitigate defense."[2]  This argument rests on several unsubstantiated assumptions, including that (1) TrialCard developed other "methods" of identifying SaveOnSP patients; (2) such methods would be applicable to JJHCS and the CarePath program; (3) it disclosed those methods to JJHCS; and (4) having learned of those methods, JJHCS declined to implement them.  Each of these assumptions rests on pure speculation.  TrialCard, therefore, declines to go on a fishing expedition to satisfy SaveOnSP's curiosity into its business entirely unrelated to JJHCS or CarePath.

**Request No. 4** seeks documents and communications "between TrialCard and JJHCS" regarding the identification or attempted identification of patients who are members of plans affiliated with copay accumulators, maximizers, or SaveOnSP.  As we explained during the March 7 meet and confer, such documents—which necessarily would have been provided to JJHCS—can be obtained through party discovery.

SaveOnSP nevertheless insisted during the March 7 meet and confer that this request encompasses internal documents that "reflect" communications between TrialCard and JJHCS, including notes that TrialCard personnel may have taken during a phone call or meeting. As we discussed during the meet and confer, however, the plain language of this Request is not so expansive:  it seeks only Communications—i.e., "the transmittal of information"—***between*** JJHCS and TrialCard.  It does not request purely internal documents reflecting the contents of those transmittals.  *See* Second Subpoena at 4.

## III.    TrialCard's Responses to Identifying Patients

**Request No. 6** seeks documents sufficient to show the methods by which TrialCard responded to benefits investigations that revealed or suggested that a patient was a member of a health plan that was affiliated with a copay accumulator, maximizer, or SaveOnSP.  As we have explained in previous correspondence and during the March 7 meet and confer, TrialCard has produced multiple letter templates that it sent to SaveOnSP-patients in connection with the benefits investigation process.    TrialCard also produced a catalogue of these letters.    *See* TRIALCARD_0008931 ("Tasks").  Based on our reasonable investigation to date, we are unaware

---

[2] We note that the caselaw you cite in support of this argument appears inapposite.  *See Prusky v. Reliastar Life Ins.*, 532 F.3d 252, 258–59 (3d Cir. 2008) (discussing the failure to mitigate defense in the context of a breach of contract claim asserted under Pennsylvania law); *Grubbs v. Knoll*, 376 N.J. Super. 420, 437 (N.J. App. 2005) (discussing whether a jury instruction on the failure to mitigate defense is appropriate). Neither case stands for the broad proposition that a third party is obligated to produce any document that may have some hypothetical bearing on whether the plaintiff could have mitigated its damages.

Hannah Miles, Esq.
March 22, 2024
Page 4

of any other systematic "method" that TrialCard undertook to respond to the results of benefits investigations identifying patients as SaveOnSP-affiliated; to the extent JJHCS undertook such methods, JJHCS is the proper source for such discovery.  We trust that this resolves any dispute with respect to Request No. 6.

**Request No. 8** seeks documents and communications regarding the creation or attempted creation of a response or "solution" to copay maximizers, accumulators, or SaveOnSP. The search term that you have proposed is untethered to the claims at issue in this litigation:  it seeks documents related to any maximizer or accumulator irrespective of whether such documents concern SaveOnSP.  In the event you wish to pursue this request, please provide an appropriately narrowed term that addresses the relevant issues in this litigation.

## IV.    Communications with Stelara and Tremfya Patients

**Request No. 5** seeks "[a]ll Communications with patients receiving Stelara and Tremfya, including without limitation recordings of calls."  You have represented that if TrialCard "refresh[es] the call and task notes, subject to the same procedures in the May 12, 2023 letter, and agree that SaveOn reserves it rights to request call recordings and transcripts in the future, that would" resolve any dispute with respect to Request No. 5.

TrialCard agrees to refresh its production of case and task notes through November 7, 2023 using the same collection methodology we used during the initial collection of case and task notes, which involved filtering the records for the Janssen Drugs at issue in this litigation and further searching them for responsive material using the search terms listed the May 12, 2023 letter.  *See* May 12, 2023 Ltr. from G. Carotenuto to A. Dunlap at 2.  Additionally, as we did with the initial production of case and task notes, we invite SaveOnSP to use these records to identify a reasonable number of calls for which you would like TrialCard to attempt to locate and produce the associated audio recording and/or transcript, where available.  *See id.*

## V.    Communications Between TrialCard and SaveOnSP

**Request No. 7** seeks all communications between TrialCard and SaveOnSP.  As we have explained, SaveOnSP can search its own records for communications responsive to this request, including call recordings.  *See* TrialCard's Responses and Objections to RFP No. 5 ("TrialCard further objects to the extent this Request seeks the production of documents and communications that are available from parties to the Action, in particular from SaveOnSP."); *see also* Mar. 1, 2024 Ltr. from S. Arrow to H. Miles at 4.

In your March 8 letter, you clarified why you believe SaveOnSP would not possess the documents it seeks with this request.  Specifically, you confirmed that certain "outbound calls

Hannah Miles, Esq.
March 22, 2024
Page 5

may not have been recorded by SaveOn."[3]  Please explain, in as much detail as possible, which types of calls are recorded and which are not.  This will allow TrialCard to evaluate whether there are certain recordings that only TrialCard maintains that are not in SaveOnSP's possession.  To the extent you seek production of such recordings, please also provide identifying information that would allow TrialCard to identify the relevant calls—specifically, all names and phone numbers used by SaveOnSP employees to communicate with TrialCard.  Absent such information, TrialCard lacks identifying information to isolate responsive recordings without undertaking the enormous burden of assessing every incoming call that it received.

You also ask a series of questions regarding the 16 call recordings that TrialCard produced on January 12, 2024.  We confirm that, at JJHCS's request, TrialCard agreed to produce these 16 call recordings.  Please direct any further questions regarding these call recordings to JJHCS.

Very truly yours,


*/s/ Sara A. Arrow*
Sara A. Arrow

---

[3] Based on our meet and confer and SaveOnSP's March 8 letter, we understand that SaveOnSP has narrowed Request No. 7 to seek only this subset of call recordings—i.e., those that SaveOnSP did not record and thus does not have in its possession.  Please promptly clarify if this understanding is incorrect.

# Exhibit 43

David Elsberg
Andrew R. Dunlap
Meredith Nelson
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

E. Evans Wohlforth, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.,<br><br>Plaintiff,<br><br>v.<br><br>SAVE ON SP, LLC,<br><br>Defendant. | Civil Action No. 22-2632 (JMV) (CLW)<br><br>**DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

To:   Jeffrey J. Greenbaum, Esq.
      SILLS CUMMIS & GROSS, P.C.
      One Riverfront Plaza
      Newark, New Jersey 07102
      973-643-7000

1

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New

*Attorneys for Plaintiff Johnson & Johnson*
*Health Care Systems Inc.*

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26 and 34,

Defendant Save On SP, LLC ("SaveOnSP") requests Plaintiff Johnson & Johnson Health Care

Systems Inc. ("JJHCS"), to produce for inspection and copying the documents listed in these Re-

quests, to the office of the undersigned within 30 days of being served or at a time and place mu-

tually agreed by the parties or ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that this demand for production of documents

shall be deemed continuing in nature so as to require supplemental responses if Plaintiff or Plain-

tiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's

responses are served.

Dated: November 11, 2022        By: /s/ Andrew R. Dunlap
                      David Elsberg
                      Andrew R. Dunlap
                      Meredith Nelson
                      SELENDY GAY ELSBERG, PLLC
                      1290 Avenue of the Americas
                      New York, NY 10104
                      212-390-9000
                      deslberg@selendygay.com
                      adunlap@selendygay.com
                      mnelson@selendygay.com

                      E. Evans Wohlforth, Jr.
                      GIBBONS P.C.
                      One Gateway Center
                      Newark, NJ 07102-5310

973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

3

## DEFINITIONS

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses.

3.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.      "Action" means this litigation styled as "*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (JMV) (CLW).

6.      "Affordable Care Act" means the Patient Protection and Affordable Care Act, Pub. L. 148, 124 Stat. 119.

7.      "All," "any," and "each" mean any and all.

8.      "And" and "or" are construed both conjunctively and disjunctively.

9.      "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

4

10.    "CarePath Care Coordinator" means any person or entity encompassed by that term as used on CarePath's "Contact Us" webpage,[1] as well as any person responsible for communicating with patients who contact CarePath via an advertised help number (*e.g.*, 877-CarePath).

11.    "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

12.    "Complaint" means JJHCS's May 4, 2022 Complaint [ECF No. 1] or any subsequently amended Complaint in this Action.

13.    "Copay Accumulator Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

14.    "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

15.    "Copay Maximizer Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay

---

[1] *See* Contact Us, https://www.janssencarepath.com/patient/contact-us (last visited October 25, 2022).

5

assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maximizer."

16.    "Document" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

17.    "ESI" means "electronically stored information" as defined in the Federal Rules of Civil Procedure.

18.    "Essential Health Benefit" means, in the context of prescription drug benefits at issue in this case, (a) a prescription drug benefit that satisfies the requirement for a plan to provide essential prescription drug benefits under the Affordable Care Act or that is treated as such by a plan;[2] and (b) any definition JJHCS ascribes to the term "essential health benefit" as used in the Complaint.

19.    "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

20.    "Including" means including but not limited to.

21.    "Janssen" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents,

---

[2] 45 C.F.R. §§ 156.122, 156.115.

representatives, directors, officers, employees, committees, attorneys, accountants, and all persons

or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc.,

Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

22.     "Janssen Drug" means any Specialty Drug manufactured or sold by Janssen from

any time for which patients may receive copay assistance, including BALVERSA, DARZALEX,

DARZALEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, REMICADE, RYBREVANT,

SIMPONI, STELARA, TRACLEER, TREMFYA, UPTRAVI, and ZYTIGA, as well as any other

specialty drugs that JJHCS asserts are at issue in this Action.

23.     "JJHCS's Employee Health Plans" means any health plan offered by JJHCS or

Janssen to its employees.

24.     "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all pre-

decessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or depart-

ments, agents, representatives, directors, officers, employees, committees, attorneys, accountants,

and all persons or entities acting or purporting to act on behalf or under the control of Johnson &

Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil

Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals,

Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development,

LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc.,

Janssen BioPharma LLC, and Janssen Research & Development LLC.

25.     "JJHCS Access Group" means the team operating within and for JJHCS under this

or a substantially similar name (*i.e.*, Access Group, Access Team, or Access Division).

26.    "JJHCS Health Economics Group" means the team operating within and for JJHCS under this or a substantially similar name (*i.e.*, Health Economics Group, Health Economics Team, or Health Economics Division).

27.    "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer, in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of such an entity.

28.    "JJHCS Outcome Group" means the team operating within and for JJHCS under this or a substantially similar name (*i.e.*, Outcome Group, Outcome Team, or Outcome Division).

29.    "Lash Group" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

30.    "Non-Essential Health Benefits" means, in the context of prescription drug benefits at issue in this case, (a) any prescription drug benefit covered by a plan in excess of those necessary for a plan to satisfy the requirements for providing essential prescription drug health benefits under the Affordable Care Act[3] and designated by the plan as a non-essential health benefit; and (b) any definition JJHCS ascribes to the term "non-essential health benefits" as used in the Complaint.

31.    "Parties" means "SaveOnSP" and "JJHCS."

32.    "Patient" means a natural person prescribed or eligible to be prescribed any Janssen Drug, whether or not they use CarePath or are a participant in a health plan advised by SaveOnSP.

---

[3] *See* 45 C.F.R. §§ 156.122, 156.115.

33.     "Person" means a natural person or legal entity including any business or governmental entity or association.

34.     "Regarding" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

35.     "Request" means any of these Requests for Production.

36.     "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Save On SP, LLC.

37.     "SaveOnSP IPBC Video" means the IPBC and SaveOnSP training video created by Express Scripts as defined in Complaint ¶ 9.

38.     "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

39.     "Stelara" means the Janssen Drug sold under that name.

40.     "Tremfya" means the Janssen Drug sold under that name.

41.    "TrialCard" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

42.    "You" and "Your" means JJHCS.

## INSTRUCTIONS

1.    These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 34(a)(1).

2.    These Requests seek production of nonprivileged material. Fed. R. Civ. P. 26(b)(1).

3.    These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4.    For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 34(b)(2)(C).

5.    If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

6.    If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest. Fed. R. Civ. P. 34(b)(2)(C).

7.    If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 26(b)(5)(A)(ii), including by indicating whether any document exists regarding the information

10

requested and stating, to the extent the privilege is being asserted in connection with a claim or

defense governed by state law, the state privilege rule being invoked, Local Rule 34.1.

8.      If a document responsive to a Request was once in your possession, custody, or

control and has since been lost or destroyed, provide (a) a detailed description of the document;

(b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the

date on which the document was prepared or initially received; (e) the date on which the document

was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction, the

reason for its destruction, the name of the person who requested or authorized its destruction, and

the name of the person who destroyed it.

9.      Produce documents as they are kept in the usual course of business. Fed. R. Civ.

P. 34(b)(E)(i). For each document, identify the file or location from which it was taken and the

name, affiliation, and position of the producing custodian or non-custodial source.

10.      Produce electronically stored information in the form and manner required by any

agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of produc-

tion, consult SaveOnSP for further instruction.

11.      Produce each document in its entirety, without abbreviation or redaction, including

all attachments or materials attached thereto.

12.      Produce all versions of each document that are not identical to the original docu-

ment (including all drafts) whether due to handwritten notations, revisions, enclosures, attach-

ments, underlining, highlighting, or otherwise.

13.      These Requests are deemed continuing. If after responding to any Request you learn

that your response is in some material respect incomplete or incorrect, supplement or correct your

response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).

11

**TIME PERIOD**

Unless otherwise specified, these Requests cover from and including January 1, 2017, through the present.

**REQUESTS**

1.      From January 1, 2009 through the present, Documents sufficient to show JJHCS's organizational structure, including organizational charts.

2.      From January 1, 2009 through the present, Documents sufficient to show Janssen's organizational structure, including organizational charts.

3.      From January 1, 2009 through the present, Documents sufficient to show the organizational structure of each JJHCS Hub Entity.

4.      From January 1, 2009 through the present, Documents sufficient to show the organizational structure of any group or division within JJHCS, Janssen, or any JJHCS Hub Entity involved in developing, managing, marketing, or administering CarePath or any other copay assistance program offered for Janssen Drugs, and to identify their employees.

5.      From January 1, 2009 through the present, Documents sufficient to show the organizational structure of JJHCS's Health Economics, Access, and Outcome Groups and to identify employees working in those groups.

6.      From January 1, 2009 through the present, Documents sufficient to show the organizational structure of the drug product team for each Janssen Drug, and to identify employees working on those teams.

7.      From January 1, 2009 through the present, documents sufficient to identify all natural persons with decisionmaking authority over the sale or marketing of Janssen Drugs.

8.      All Documents and Communications with or regarding SaveOnSP.

9.     All Communications by JJHCS or Janssen with any Patient regarding SaveOnSP, including any Documents regarding those Communications.

10.     All Documents and Communications regarding any presentation, document, or information regarding SaveOnSP referenced in the Complaint, including the "SaveOnSP IPBC Video" and the materials referenced in Complaint ¶¶ 82-88.

11.     From January 1, 2009 through the present, all Documents and Communications regarding the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

12.     From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) JJHCS's decision to revise any of its CarePath terms and conditions for any Janssen Drug; and (d) JJHCS's understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

13.     From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

14.     From January 1, 2015 through the present, all Documents and Communications regarding JJHCS's or any JJHCS Hub Entity's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under

13

the Affordable Care Act and its regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

15.    All Documents and Communications regarding SaveOnSP's communications with Patients regarding CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 60-67, 109.

16.    All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 72.

17.    All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

18.    All Documents and Communications regarding any allegedly misleading or confusing communications between SaveOnSP and Patients, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 13, 75-77, 85-88.

19.    All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

20.    All Documents and Communications regarding any publicly distributed material (including, for example, articles, op-eds, white papers, and online postings) regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services, including Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect involvement with such material and JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect funding of the authors, publishers, or distributors of such material.

14

21.   All Documents and Communications regarding any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services.

22.   All Documents and Communications regarding any alleged harm caused by Save-OnSP to any Patient by allegedly making their healthcare more expensive, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

23.   All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

24.   All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than Care-Path, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

25.   All Documents and Communications regarding any alleged harm caused by Save-OnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 110, 115.

26.   All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

27.   All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

28.   From January 1, 2009 through the present, for each Janssen Drug for each year, Documents sufficient to show:

    a.    all Patients receiving the Janssen Drug;

    b.    the number of fills of the Janssen Drug received by each such Patient;

    c.    the dosage of the Janssen Drug received by each such Patient for each fill;

    d.    the projected number of Patients, average number of fills, and average dosage for the Janssen Drug;

    e.    the cost to manufacture the Janssen Drug;

    f.    the sales and marketing budget for the Janssen Drug;

    g.    the price of the Janssen Drug;

    h.    the revenue received by JJHCS from the Janssen Drug;

    i.    all Patients enrolled in the CarePath program for the Janssen Drug;

    j.    the dates on which each Patient was enrolled in CarePath;

    k.    the amounts of copay assistance funds that JJHCS offered to each Patient enrolled in CarePath;

    l.    the Janssen Drugs for which each Patient enrolled in CarePath received copay assistance;

    m.    all copay assistance payments that JJHCS made to or on behalf each Patient enrolled in CarePath; and

29.    From January 1, 2009 through the present, for each Janssen Drug for each year, all Documents and Communications regarding:

    a.    JJHCS's determination of the amounts of copay assistance funds that JJHCS offered to Patients enrolled in CarePath, including the determination of the maximum program benefit per calendar year for the Janssen Drug;

b.      JJHCS's budget for CarePath, including the sales and marketing budget;

c.      JJHCS's actual and projected annual costs for CarePath;

d.      JJHCS's use of or accounting for unused CarePath funds;

e.      the impact of the Affordable Care Act on JJHCS's CarePath budget or funding, including the impact of laws and regulations regarding out-of-pocket maximums;

f.      JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath;

g.      the impact of CarePath on Janssen's sales of any Janssen Drug;

h.      the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

i.      JJHCS's or Janssen's actual and projected return on investment for CarePath; and

j.      any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by SaveOnSP.

30.     From January 1, 2009 through the present, for each year for each Janssen Drug, all Documents and Communications regarding the basis for Janssen's decision to raise or lower the price of the Janssen Drug, including labor or manufacturing costs or the increase in efficacy of the Janssen Drug.

31.     All Documents and Communications regarding JJHCS's attempts to limit or eliminate the amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs, including Documents and Communications regarding JJHCS's attempts to limit or eliminate the

17

availability of CarePath copay assistance funds available to Patients enrolled in health plans advised by SaveOnSP.

32.     All Documents and Communications regarding any offer by JJHCS to provide to any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance funds available to a Patient.

33.     All Documents and Communications regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans.

34.     From any time, all Documents and Communications regarding JJHCS's or Janssen's negotiations or agreements regarding the potential use of SaveOnSP's services, or the services of any Copay Maximizer Service or Copay Accumulator Service, for JJHCS's Employee Health Plans, including JJHCS's abandonment of those negotiations or agreements.

35.     Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coordinators.

36.     From January 1, 2009 through the present, Documents sufficient to show the economic terms of JJHCS's retention of or agreements with any JJHCS Hub Entity or CarePath Care Coordinator regarding CarePath, including any assessment of the fair market value of those services.

37.     From January 1, 2009 through the present, documents sufficient to show the percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs.

18

38.     From January 1, 2009 through the present, all Documents and Communications received by JJHCS from any JJHCS Hub Entity or sent by JJHCS to any JJHCS Hub Entity regarding SaveOnSP or CarePath.

39.     All Documents and Communications received by JJHCS from any CarePath Care Coordinator regarding SaveOnSP.

40.     All Communications by any JJHCS Hub Entity or CarePath Care Coordinator with any Patient regarding SaveOnSP, including any Documents regarding those Communications and talk tracks or scripts prepared for use during those Communications.

41.     From January 1, 2015 through the present, all Documents and Communications relating to Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's return on investment for copay assistance dollars.

42.     From January 1, 2015 through the present, all Documents and Communications relating to JJHCS's or any JJHCS Hub Entity's understanding of the terms "copay accumulator" and "copay maximizer."

43.     All Documents and Communications concerning non-medical switching by participants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

44.     To the extent not requested above, Documents and Communications of any JJHCS Hub Entity or CarePath Care Coordinator regarding the topics of all Requests listed above.

45.     JJHCS's, Janssen's, any JJHCS Hub Entity's, and any CarePath Care Coordinator's document retention policies.

46.     Complete data dictionaries for any data that You produce.

19

47.     From any time, all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP, including in response to subpoenas served in this Action.

48.     To the extent not requested above, from any time, all Documents and Communications upon which you may rely in this Action.

# Exhibit 44

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza Newark,
New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10035

*Attorneys for Plaintiff Johnson & Johnson Health Care
Systems Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JMV) (CLW) <br><br> **PLAINTFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** |

# GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing.  It reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action.  The following responses and objections are based upon information known at this time.

1.    JJHCS objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.  The inadvertent production by JJHCS of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.    JJHCS objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation.  Any response JJHCS makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

2

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.      JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.     JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.     JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.     JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

13.     JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.      JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.

2.     JJHCS objects to the definition of the term "Janssen Drug" as irrelevant to the
extent it purports to include drugs that are not covered by CarePath.  JJHCS further objects to
the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to
the extent it includes "any Specialty Drug manufactured or sold by Janssen from any time."

3.     JJHCS objects to the definition of the term "JJHCS" to the extent it purports to
include attorneys and accountants who may be outside of JJHCS's possession, custody, and
control.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not
proportional to the needs of the case to extent it purports to include "any and all predecessors
and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or]
representatives" or purports to include entities and persons acting or purporting to act on behalf
of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc.,
including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil
Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech,
Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals,
Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and
Janssen Research & Development LLC.

4.     JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and
as irrelevant to the extent it purports to include entities other than those responsible for
administering CarePath during the relevant Time Period.  JJHCS further objects to the
definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the
extent it includes "any and all predecessors and successors in interest, assignees, parents,
subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers,
employees, committees, attorneys, accountants and all persons or entities acting or purporting to

4

act on behalf" of those entities.  JJHCS further objects on the ground that the phrase

"administer, in whole or in part, CarePath" is vague and ambiguous.  JJHCS further objects to

the extent the term is used to seek documents and communications in the possession of entities

other than JJHCS.

5.     JJHCS objects to the definition of the term "Lash Group" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of The Lash Group, Inc."  JJHCS further objects to the extent the term is used to seek

documents and communications in the possession of entities other than JJHCS.

6.     JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of TrialCard Inc."  JJHCS further objects to the extent the term is used to seek documents and

communications in the possession of entities other than JJHCS.

## **OBJECTIONS TO THE TIME PERIOD FOR SPECIFIC REQUESTS**

1.     JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome,

and not relevant to the subject matter of this Action to the extent they call for documents from

before January 1, 2017.  Unless otherwise noted, JJHCS will only produce documents from

January 1, 2017 through the July 1, 2022 (the "Time Period").

5

<u>**SPECIFIC RESPONSES AND OBJECTIONS**</u>

<u>**Request No. 1**</u>

From January 1, 2009 through the present, Documents sufficient to show JJHCS's organizational structure, including organizational charts.

<u>**Response to Request No. 1**</u>

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show the organizational structure of the JJHCS groups responsible for the administration of CarePath for the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

<u>**Request No. 2**</u>

From January 1, 2009 through the present, Documents sufficient to show Janssen's organizational structure, including organizational charts.

<u>**Response to Request No. 2**</u>

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 3**

From January 1, 2009 through the present, Documents sufficient to show the organizational structure of each JJHCS Hub Entity.

**Response to Request No. 3**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 4**

From January 1, 2009 through the present, Documents sufficient to show the organizational structure of any group or division within JJHCS, Janssen, or any JJHCS Hub Entity involved in developing, managing, marketing, or administering CarePath or any other copay assistance program offered for Janssen Drugs, and to identify their employees.

**Response to Request No. 4**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

7

extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other

than JJHCS.  JJHCS further objects to this Request on the ground that the phrase "any other

copay assistance program offered for Janssen Drugs" is vague and ambiguous.  JJHCS further

objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in

JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to show the organizational structure of the JJHCS groups responsible for

the administration of CarePath for the relevant Time Period, to the extent such documents exist

and can be located after a reasonable search.  Otherwise, JJHCS will not search for or produce

documents responsive to this Request.

**Request No. 5**

From January 1, 2009 through the present, Documents sufficient to show the
organizational structure of JJHCS's Health Economics, Access, and Outcome Groups and to
identify employees working in those groups.

**Response to Request No. 5**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the

JJHCS groups responsible for the administration of CarePath.  JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents outside of the relevant Time Period.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to show the organizational structure of the JJHCS groups responsible for

the administration of CarePath for the relevant Time Period, to the extent such documents exist

8

and can be located after a reasonable search.  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 6**

From January 1, 2009 through the present, Documents sufficient to show the organizational structure of the drug product team for each Janssen Drug, and to identify employees working on those teams.

**Response to Request No. 6**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request on the ground that the phrase "drug product team" is vague and ambiguous.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 7**

From January 1, 2009 through the present, documents sufficient to identify all natural persons with decisionmaking authority over the sale or marketing of Janssen Drugs.

**Response to Request No. 7**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to the JJHCS groups responsible for the administration of CarePath.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this

9

Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents in response to this Request.

**Request No. 8**

All Documents and Communications with or regarding SaveOnSP.

**Response to Request No. 8**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents related to any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period, to the extent such documents and communications exist and can be located after a reasonable search. However, notwithstanding the foregoing, JJHCS will not produce any documents or communications responsive to Request for Production No. 21, which seeks

10

documents that are irrelevant to any claim or defense in this Action.  JJHCS will not otherwise

search for or produce documents and communications responsive to this Request.

## Request No. 9

All Communications by JJHCS or Janssen with any Patient regarding SaveOnSP,
including any Documents regarding those Communications.

## Response to Request No. 9

In addition to the foregoing general objections, JJHCS objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of

entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

## Request No. 10

All Documents and Communications regarding any presentation, document, or in-
formation regarding SaveOnSP referenced in the Complaint, including the "SaveOnSP IPBC
Video" and the materials referenced in Complaint ¶¶ 82-88.

## Response to Request No. 10

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks documents related to any

advocacy to or communication with any governmental or regulatory body regarding SaveOnSP.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks "all" documents and communications regarding a

broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

## Request No. 11

From January 1, 2009 through the present, all Documents and Communications regarding the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

## Response to Request No. 11

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request on the ground that the phrase "any other copay assistance program offered for Janssen Drugs" is vague and ambiguous.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents unrelated to CarePath.

JJHCS will not search for or produce documents or communications responsive to this Request.  JJHCS is, however, willing to meet and confer to determine if this Request can be appropriately narrowed.

12

**Request No. 12**

From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) JJHCS's decision to revise any of its CarePath terms and conditions for any Janssen Drug; and (d) JJHCS's understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

**Response to Request No. 12**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the final CarePath terms and conditions at issue. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it calls for JJHCS's understanding of any particular term, as such a contention interrogatory would be premature at this point in the litigation pursuant to Local Rule 33.1(d).

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show all final versions of CarePath's terms and conditions for each Janssen Drug during the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 13**

From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen

13

Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

**Response to Request No. 13**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information beyond the final CarePath terms and conditions at issue. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession sufficient to show all final versions of CarePath's terms and conditions for each Janssen Drug during the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 14**

From January 1, 2015 through the present, all Documents and Communications regarding JJHCS's or any JJHCS Hub Entity's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

**Response to Request No. 14**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for views on a legal

14

question.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications in its possession regarding SaveOnSP's designation of specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its regulations during the relevant Time Period, to the extent such documents and communications exist and can be located after a reasonable search.  However, notwithstanding the foregoing, JJHCS will not produce any documents responsive to Request for Production No. 21, which is irrelevant to any claim or defense in this Action.  JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

## Request No. 15

All Documents and Communications regarding SaveOnSP's communications with Patients regarding CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 60-67, 109.

## Response to Request No. 15

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

15

objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 16**

All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 72.

**Response to Request No. 16**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request on the ground that the phrase "SaveOnSP's provision of services to qualified high deductible or health savings account plans" is vague and ambiguous.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 17**.

All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

16

**Response to Request No. 17**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks information about JJHCS's

payment of funds to patients enrolled in qualified high deductible or health savings account plans

as opposed to SaveOnSP's exploitation of a purported legal gray area with respect to those plans.

JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the

needs of the case to the extent it seeks "all" documents and communications regarding a broad

subject matter.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents and communications responsive to this

Request.

**Request No. 18**

All Documents and Communications regarding any allegedly misleading or confusing
communications between SaveOnSP and Patients, including Documents and Communications
regarding JJHCS's allegations in Complaint ¶¶ 13, 75-77, 85-88.

**Response to Request No. 18**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks documents related to any

advocacy to or communication with any governmental or regulatory body regarding SaveOnSP.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks "all" documents and communications regarding a

broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.  JJHCS further objects to this

Request to the extent it seeks "misleading or confusing communications," as those terms are

vague and ambiguous.

17

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 19**

All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 19**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 20**

All Documents and Communications regarding any publicly distributed material (including, for example, articles, op-eds, white papers, and online postings) regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services, including Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect involvement with such material and JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect funding of the authors, publishers, or distributors of such material.

**Response to Request No. 20**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information about JJHCS's or any other entity's relationship or connection, if any, to materials about SaveOnSP's conduct,

18

as opposed to information about SaveOnSP's conduct itself. JJHCS further objects to this

Request as irrelevant to any claim or defense in this Action to the extent it seeks information

relating to Copay Accumulator Services or Copay Maximizer Services other than SaveOnSP's.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks "all" documents and communications regarding a

broad subject matter. JJHCS further objects on the ground that the phrases "direct or indirect

involvement" and "direct or indirect funding" are vague and ambiguous. JJHCS further objects

to this Request to the extent it seeks documents and communications in the possession of entities

other than JJHCS or that are publicly available and therefore equally available to SaveOnSP.

JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the

reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

**Request No. 21**

All Documents and Communications regarding any advocacy to or communication with
any governmental or regulatory body regarding SaveOnSP, Copay Accumulator Services, or
Copay Maximizer Services.

**Response to Request No. 21**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks information about JJHCS's

advocacy to or communication with any governmental or regulatory body regarding SaveOnSP

as opposed to information about SaveOnSP's conduct itself. JJHCS further objects to this

Request as irrelevant to any claim or defense in this Action to the extent it seeks information

relating to Copay Accumulator Services or Copay Maximizer Services other than SaveOnSP's.

19

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the First Amendment privilege, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 22**

All Documents and Communications regarding any alleged harm caused by SaveOnSP to any Patient by allegedly making their healthcare more expensive, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 22**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

20

**Request No. 23**

All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 23**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 24**

All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

**Response to Request No. 24**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information about the financial viability of any Copay Assistance Program other than CarePath. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

21

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 25**

All Documents and Communications regarding any alleged harm caused by SaveOnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 110, 115.

**Response to Request No. 25**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request on the ground that the phrase "any alleged harm" is vague and ambiguous.  For the purposes of its response, JJHCS shall interpret the phrase "any alleged harm" to mean the damages identified by JJHCS relating to the increased average amount of CarePath expenditures incurred for patients enrolled in the SaveOnSP Program.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications in its possession relating to the extent of the harm SaveOnSP has caused JJHCS during the relevant Time Period, including the extent to which SaveOnSP has caused JJHCS to pay more in copay assistance than it otherwise would have, to the extent such documents exist and can be located after a reasonable search.  However, notwithstanding the foregoing, JJHCS will not produce any documents responsive to Request for Production No. 21, which is irrelevant to any claim or defense in this Action.  JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

22

**Request No. 26**

All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

**Response to Request No. 26**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum" is vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 27**

All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

**Response to Request No. 27**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter and seeks "complete databases from which [] data was drawn." JJHCS further objects to this Request to

23

the extent it seeks documents and communications in the possession of entities other than

JJHCS.  JJHCS further objects to this Request as duplicative of Request No. 25.

Subject to the foregoing objections, JJHCS will produce the data that formed the basis for

the allegations in Complaint ¶¶ 92-100.  Otherwise, JJHCS will not search for or produce

documents and communications responsive to this Request.

<u>**Request No. 28**</u>

From January 1, 2009 through the present, for each Janssen Drug for each year,
Documents sufficient to show:

a.     all Patients receiving the Janssen Drug;

b.     the number of fills of the Janssen Drug received by each such Patient;

c.     the dosage of the Janssen Drug received by each such Patient for each fill;

d.     the projected number of Patients, average number of fills, and average dosage for
       the Janssen Drug;

e.     the cost to manufacture the Janssen Drug;

f.     the sales and marketing budget for the Janssen Drug;

g.     the price of the Janssen Drug;

h.     the revenue received by JJHCS from the Janssen Drug;

i.     all Patients enrolled in the CarePath program for the Janssen Drug;

j.     the dates on which each Patient was enrolled in CarePath;

k.     the amounts of copay assistance funds that JJHCS offered to each Patient enrolled
       in CarePath;

l.     the Janssen Drugs for which each Patient enrolled in CarePath received copay
       assistance;

m.     all copay assistance payments that JJHCS made to or on behalf each Patient
       enrolled in CarePath; and

24

**Response to Request No. 28**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP's misconduct, including information relating to Patient fills, the cost of manufacturing Janssen Drugs, the sales and marketing budgets for Janssen drugs, and pricing and revenue generated by Janssen Drugs. JJHCS further objects to this Request on the ground that the phrases "the projected number of Patients, average number of fills, and average dosage for the Janssen Drug," "the cost to manufacture the Janssen Drug," and "the price of the Janssen Drug" are vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a variety of extremely broad subject matters. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS will produce Janssen Transparency Reports for the relevant Time Period. Further, JJHCS is willing to meet and confer to discuss subparts (i) through (m). Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 29**

From January 1, 2009 through the present, for each Janssen Drug for each year, all Documents and Communications regarding:

    a.     JJHCS's determination of the amounts of copay assistance funds that JJHCS offered to Patients enrolled in CarePath, including the determination of the maximum program benefit per calendar year for the Janssen Drug;

b.      JJHCS's budget for CarePath, including the sales and marketing budget;

c.      JJHCS's actual and projected annual costs for CarePath;

d.      JJHCS's use of or accounting for unused CarePath funds;

e.      the impact of the Affordable Care Act on JJHCS's CarePath budget or funding, including the impact of laws and regulations regarding out-of-pocket maximums;

f.      JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath;

g.      the impact of CarePath on Janssen's sales of any Janssen Drug;

h.      the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

i.      JJHCS's or Janssen's actual and projected return on investment for CarePath; and

j.      any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by SaveOnSP.

## Response to Request No. 29

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to SaveOnSP's misconduct, including information relating to the sales and marketing budget for CarePath, JJHCS's uses of or accounting for unused CarePath funds, the impact of the Affordable Care Act or other laws and regulations on CarePath's budget or funding, JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath, the impact of CarePath on Janssen's sales of any Janssen Drug, the impact of CarePath on JJHCS's or Janssen's gross to net calculations, JJHCS's or Janssen's actual and projected return on investment for CarePath, and the adherence rates of Patients enrolled in CarePath to Janssen Drugs.  JJHCS further objects to this Request on the ground that the phrases "the projected number of Patients, average number of fills, and average dosage for the Janssen Drug," "JJHCS's or Janssen's gross to net calculations," and "JJHCS's or Janssen's actual and projected return on investment for CarePath" are vague and ambiguous.  JJHCS further objects to this

26

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks "all" documents and communications regarding a variety of broad subject matters.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks documents and communications outside of the relevant

Time Period.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession for the relevant Time Period sufficient to show (1) how JJHCS determines the

amounts of copay assistance funds that JJHCS offers to Patients enrolled in CarePath,

(2) JJHCS's budget for copay assistance through CarePath, and (3) JJHCS's actual and projected

annual costs for CarePath, to the extent such documents exist and can be located after a

reasonable search.  Otherwise, JJHCS will not search for or produce documents responsive to

this Request.

## Request No. 30

From January 1, 2009 through the present, for each year for each Janssen Drug, all
Documents and Communications regarding the basis for Janssen's decision to raise or lower the
price of the Janssen Drug, including labor or manufacturing costs or the increase in efficacy of the
Janssen Drug.

## Response to Request No. 30

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it seeks information unrelated to

SaveOnSP's misconduct, including information related to the pricing of Janssen Drugs.  JJHCS

further objects to this Request on the ground that the phrases "the price of the Janssen Drug" and

"the increase in efficacy of the Janssen Drug" are vague and ambiguous.  JJHCS further objects

to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to

27

the extent it seeks "all" documents and communications regarding a broad subject matter.

JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to

the needs of the case to the extent it seeks documents and communications outside of the relevant

Time Period.  JJHCS further objects to this Request to the extent it seeks documents and

communications in the possession of entities other than JJHCS.

JJHCS will not search for or produce documents responsive to this Request.

## Request No. 31

All Documents and Communications regarding JJHCS's attempts to limit or eliminate the
amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based
on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs,
including Documents and Communications regarding JJHCS's attempts to limit or eliminate the
availability of CarePath copay assistance funds available to Patients enrolled in health plans
advised by SaveOnSP.

## Response to Request No. 31

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information beyond the

final CarePath terms and conditions at issue.  JJHCS further objects to this Request as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all"

documents and communications regarding a broad subject matter.  JJHCS further objects to this

Request to the extent it seeks documents and communications in the possession of entities other

than JJHCS.

Subject to the foregoing objections, JJHCS will produce non-privileged documents and

communications in its possession relating to JJHCS's decision to limit or eliminate the amount of

copay assistance funds available to Patients using Stelara or Tremfya who are also enrolled in the

SaveOnSP Program, to the extent such documents and communications exist and can be located

28

after a reasonable search.  JJHCS will not otherwise search for or produce documents and

communications responsive to this Request.

**Request No. 32**

    All Documents and Communications regarding any offer by JJHCS to provide to any
Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath
Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance
funds available to a Patient.

**Response to Request No. 32**

    In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information beyond the

extent to which SaveOnSP has caused JJHCS to pay more in copay assistance than it otherwise

would have.  JJHCS further objects to this Request on the ground that the phrases "CarePath

funds greater than the amounts that JJHCS generally offers to CarePath Patients" and "to waive

any limitation on or elimination of the amount of CarePath copay assistance funds available" are

vague and ambiguous.  JJHCS further objects to this Request as overbroad, unduly burdensome,

and not proportional to the needs of the case to the extent it seeks "all" documents and

communications regarding a broad subject matter.  JJHCS further objects to this Request to the

extent it seeks documents and communications in the possession of entities other than JJHCS.

    JJHCS will not search for or produce documents and communications responsive to this

Request.

**Request No. 33**

    All Documents and Communications regarding JJHCS's attempts to identify health plans
advised by SaveOnSP or Patients enrolled in such plans.

**Response to Request No. 33**

    In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to

SaveOnSP's misconduct.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter.  JJHCS further objects to this Request to

the extent it seeks documents and communications in the possession of entities other than JJHCS

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

## Request No. 34

From any time, all Documents and Communications regarding JJHCS's or Janssen's
negotiations or agreements regarding the potential use of SaveOnSP's services, or the services of
any Copay Maximizer Service or Copay Accumulator Service, for JJHCS's Employee Health
Plans, including JJHCS's abandonment of those negotiations or agreements.

## Response to Request No. 34

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about other

"services of Copay Maximizer Service[s] or Copay Accumulator Service[s]" and unrelated to

SaveOnSP's misconduct.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter.  JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents and communications outside of the relevant Time Period.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of

entities other than JJHCS.  JJHCS further objects to this Request to the extent it seeks

information that is exempt from discovery and protected from disclosure by a privilege

including, without limitation, the attorney-client privilege, the work-product doctrine, the joint

30

defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local

Rules of the Court, and relevant case law.

JJHCS will not search for or produce documents and communications responsive to this

Request.

**Request No. 35**

Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coordinators.

**Response to Request No. 35**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about

JJHCS "Hub Entities" or "CarePath Care Coordinators" that are not implicated in this litigation.

JJHCS further objects to this Request to the extent it seeks documents and communications in

the possession of entities other than JJHCS.  JJHCS further objects to this Request to the extent it

uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its

possession sufficient to identify the entities responsible for administering CarePath during the

relevant Time Period, to the extent such documents exist and can be located after a reasonable

search.  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 36**

From January 1, 2009 through the present, Documents sufficient to show the economic
terms of JJHCS's retention of or agreements with any JJHCS Hub Entity or CarePath Care
Coordinator regarding CarePath, including any assessment of the fair market value of those
services.

**Response to Request No. 36**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about

31

JJHCS "Hub Entities" or "CarePath Care Coordinators" that are not implicated in this litigation. JJHCS further objects to this Request on the ground that "any assessment of the fair market value of those services" is irrelevant.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce agreements in its possession between JJHCS and the entities responsible for administering CarePath during the relevant Time Period, to the extent such documents exist and can be located after a reasonable search. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 37**

From January 1, 2009 through the present, documents sufficient to show the percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs.

**Response to Request No. 37**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to SaveOnSP's misconduct, including information about JJHCS's advertising or marketing of

32

CarePath or Janssen Drugs. JJHCS further objects to this Request on the ground that the phrase

"Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub

Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs" is

vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome,

and not proportional to the needs of the case to the extent it seeks documents and

communications outside of the relevant Time Period. JJHCS further objects to this Request to

the extent it seeks documents and communications in the possession of entities other than

JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity"

for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents and communications responsive to this

Request.

**Request No. 38**

From January 1, 2009 through the present, all Documents and Communications received
by JJHCS from any JJHCS Hub Entity or sent by JJHCS to any JJHCS Hub Entity regarding
SaveOnSP or CarePath.

**Response to Request No. 38**

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information about

CarePath without relation to SaveOnSP. JJHCS further objects to this Request as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all"

documents and communications regarding a broad subject matter. JJHCS further objects to this

Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it seeks documents and communications outside of the relevant Time Period. JJHCS

further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons

stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent

it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 39**

All Documents and Communications received by JJHCS from any CarePath Care Coordinator regarding SaveOnSP.

**Response to Request No. 39**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 40**

All Communications by any JJHCS Hub Entity or CarePath Care Coordinator with any Patient regarding SaveOnSP, including any Documents regarding those Communications and talk tracks or scripts prepared for use during those Communications.

34

**Response to Request No. 40**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8. Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 41**

From January 1, 2015 through the present, all Documents and Communications relating to Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's return on investment for copay assistance dollars.

**Response to Request No. 41**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information about other "Copay Accumulator Services and Copay Accumulator Services" and information unrelated to SaveOnSP's misconduct. JJHCS further objects to this Request on the ground that the phrase "JJHCS's return on investment for copay assistance dollars" is vague and ambiguous. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the

35

needs of the case to the extent it seeks "all" documents and communications regarding a broad

subject matter.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks documents and communications

outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks

documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to

Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and

communications responsive to this Request.

## Request No. 42

From January 1, 2015 through the present, all Documents and Communications relating
to JJHCS's or any JJHCS Hub Entity's understanding of the terms "copay accumulator" and
"copay maximizer."

## Response to Request No. 42

In addition to the foregoing general objections, JJHCS objects to this Request as

irrelevant to any claim or defense in this Action to the extent it calls for information unrelated to

SaveOnSP's misconduct.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter.  JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents and communications outside of the relevant Time Period.  JJHCS further

objects to this Request to the extent it seeks documents and communications in the possession of

entities other than JJHCS.  JJHCS further objects to this Request to the extent it uses the term

"JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by a privilege including, without limitation, the attorney-client

36

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents and communications in JJHCS's possession during the relevant Time Period relating to JJHCS's understanding of whether the terms "copay accumulator" or "copay maximizer" apply to SaveOnSP.  However, notwithstanding the foregoing, JJHCS will not produce any documents or communications responsive to Request for Production No. 21, which is irrelevant to any claim or defense in this Action.  JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

**Request No. 43**

All Documents and Communications concerning non-medical switching by participants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

**Response to Request No. 43**

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it calls for information about any other "Copay Accumulator Service" or "Copay Maximizer Service" and information unrelated to SaveOnSP's misconduct.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

Subject to the foregoing objections, JJHCS incorporates by reference its response to Request for Production No. 8.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 44**

To the extent not requested above, Documents and Communications of any JJHCS Hub Entity or CarePath Care Coordinator regarding the topics of all Requests listed above.

**Response to Request No. 44**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "regarding the topics of all Requests listed above" is vague and ambiguous. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions.

JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 45**

JJHCS's, Janssen's, any JJHCS Hub Entity's, and any CarePath Care Coordinator's document retention policies.

**Response to Request No. 45**

In addition to the foregoing general objections, JJHCS objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it uses the term "JJHCS Hub Entity" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce its document retention policies for the relevant Time Period.  Otherwise, JJHCS will not search for or produce documents and communications responsive to this Request.

**Request No. 46**

Complete data dictionaries for any data that You produce.

**Response to Request No. 46**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "data dictionaries for any data that You produce" is vague and ambiguous. JJHCS further objects to this Request to the extent that it purports to require the creation of any document or record in a format not kept by JJHCS or seeks to impose production obligations that exceed those required by the Rules of Federal Procedure, the Local Rules of the Court, this Court's Orders, or with any applicable agreement among the parties.

JJHCS will not search for or produce documents or communications responsive to this Request.  JJHCS is, however, willing to meet and confer to determine if this Request can be appropriately narrowed.

**Request No. 47**

From any time, all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP, including in response to subpoenas served in this Action.

**Response to Request No. 47**

In addition to the foregoing general objections, JJHCS objects to this Request on the ground that the phrase "all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP" is vague and ambiguous.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject

39

matter.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not

proportional to the needs of the case to the extent it seeks documents and communications

outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it seeks

information that is exempt from discovery and protected from disclosure by a privilege

including, without limitation, the attorney-client privilege, the work-product doctrine, the joint

defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the Local

Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce documents obtained via third-

party subpoenas it serves in this Action.  Otherwise, JJHCS will not search for or produce

documents responsive to this Request.

**Request No. 48**

To the extent not requested above, from any time, all Documents and Communications
upon which you may rely in this Action.

**Response to Request No. 48**

In addition to the foregoing general objections, JJHCS objects to this Request on the

ground that the phrase "all Documents and Communications upon which you may rely in this

Action" is vague and ambiguous.  JJHCS further objects to this Request as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents

and communications regarding a broad subject matter.  JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks documents and communications outside of the relevant Time Period.  JJHCS further

objects to this Request to the extent it seeks information that is exempt from discovery and

protected from disclosure by a privilege including, without limitation, the attorney-client

40

privilege, the work-product doctrine, the joint defense privilege, the common interest privilege,

the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.

Subject to the foregoing objections, JJHCS will produce all non-privileged documents

and communications upon which it intends to rely at trial in compliance with the schedule set by

the Court.  Otherwise, JJHCS will not search for or produce documents responsive to this

Request.

Dated: December 12, 2022

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:    /s/Jeffrey J. Greenbaum
       JEFFREY J. GREENBAUM
       KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

# Exhibit 45

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Elizabeth H. Snow
Associate
212 390 9330
esnow@selendygay.com

January 30, 2024

**<u>Via E-mail</u>**

Sara Arrow
Patterson Belknap Webb & Tyler LLP
133 Avenue of the Americas
New York, NY 10036
Sarrow@pbwt.com

**Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC* (Case No. 2:22-cv-02632-ES-CLW)**

Dear Sara,

We write to you as counsel for TrialCard, Inc. ("TrialCard") and Johnson & Johnson health Care Systems, Inc. (with its affiliates, "J&J"), regarding the January 12, 2024 meet-and-confer between SaveOn and TrialCard regarding TrialCard's Responses and Objections, dated December 15, 2023, to SaveOn's second subpoena, dated December 1, 2023.

During the meet-and-confer, in your capacity as counsel for TrialCard, you cited the deposition testimony of Ayesha Zulqarnain in support of your objection to SaveOn's RFP No. 7. This violated the Discovery Confidentiality Order. Discovery Confidentiality Order, Nov. 22, 2022, Dkt No. 62 ("<u>DCO</u>"). SaveOn designated all of Zulqarnain's testimony as at least "Confidential" and J&J did not object. *See* Jan. 4, 2024 Ltr. from K. Brisson to E. Holland ("As an initial matter, JJHCS has no objection to SaveOnSP's designation of the entire transcript as Confidential"). Zulqarnain's testimony thus is "Designated Material" under the DCO and J&J was prohibited from sharing it with third parties including TrialCard. DCO ¶ 4.

Please let us know if J&J has shared with TrialCard (or any other third party) any other information that SaveOn produced to it in this litigation and

Sara Arrow
January 30, 2024

designated as Confidential or AEO under the DCO. Please also let us know what steps you will take to ensure that similar violations of the DCO do not occur in the future.

We request a response by February 6, 2023.

Sincerely,

Elizabeth Snow
Associate

# Exhibit 46



www.pbwt.com

January 4, 2024

Katherine Brisson
(212) 336-2552

**<u>By Email</u>**

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

   Re: ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,**
     <u>**Case No. 2:22-cv-02632-JKS-CLW**</u>

Dear Emma:

    We write in response to your December 5 letter that designates portions of the Ayesha Zulqarnain deposition transcript as Attorneys' Eyes Only ("AEO") and Attorneys' Eyes Only–Confidential Health Information ("AEO-CHI").

    As an initial matter, JJHCS has no objection to SaveOnSP's designation of the entire transcript as Confidential.

    However, many of your AEO designations do not appear to fall within the definition of "Attorneys' Eyes Only" in the Confidentiality Order.  *See* D. E. 62 at ¶ 2 (defining "Attorneys' Eyes Only" material as that which "contains **highly sensitive** business or personal information, the disclosure of which is **highly likely** to cause **significant harm** to an individual or to the business or competitive position of the Producing Party or the disclosure of which absent an Attorneys' Eyes Only designation could cause the Producing Party to violate its confidentiality obligations to others" (emphasis supplied)).  These AEO designations include testimony regarding:

- ████████████████████████████████████████, *see, e.g.*, 28:16–29:21, 35:16–38:14;

- ███████████████████████████████████████████████████████████ ████████████, *see, e.g.*, 108:20–24, 111:7–9, 112:6–113:5, 115:13–25, 116:14–117:12, 120:18–121:2, 145:4–6; 149:13–150:6;

- ███████████████████████████████████████, *see* 128:4–129:17, 141:4–10, 185:8–186:5;

Emma Holland, Esq.
January 4, 2024
Page 2

- , *see* 174:8–17;

- , *see* 206:16–21; and

- *see* 255:2–256:10, 263:18–266:10, 274:16–275:16, 277:18, 281:20–282:15.

    These and other designations by SaveOnSP are set forth on Appendix A to this letter. We ask that SaveOnSP explain with particularity the basis for each of these designations, or withdraw them, by January 11, 2024.

                                    Very truly yours,


                                    */s/Katherine Brisson*
                                    Katherine Brisson

Emma Holland, Esq.
January 4, 2024
Page 3

### Appendix A

| | | | |
|---|---|---|---|
| 28:16–29:21 | 121:18–25 | 144:9–12 | 180:8–13 |
| 35:16–38:14 | 124:15–25 | 145:4–6 | 185:8–186:5 |
| 91:24–92:4 | 125:20–21 | 147:5–10 | 206:16–21 |
| 103:22–105:11 | 128:4–129:17 | 149:13–150:6 | 263:18–266:10 |
| 108:20–24 | 131:18–19 | 152:18–20 | 274:16–275:16 |
| 111:7–9 | 132:8–9 | 154:2–155:11 | 277:18 |
| 111:19–25 | 136:19–21 | 170:14–21 | 279:15–19 |
| 112:6–113:5 | 137:3–6 | 171:6–11 | 280:12–13 |
| 115:13–25 | 137:19–22 | 172:2–6 | 281:10–11 |
| 116:14–117:12 | 138:2–7 | 174:8–17 | 281:20–282:15 |
| 120:18–121:2 | 141:4–10 | 177:21–178:22 | |

# Exhibit 47



www.pbwt.com

February 1, 2024

Sara A. Arrow
(212) 336-2031

**By Email**

Elizabeth Snow, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:  **January 12, 2024 Meet and Confer**
> *Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC*
> Case No. 2:22-cv-02632 (JKS) (CLW)

Dear Elizabeth:

We write in response to your January 30, 2024 letter concerning the January 12, 2024 meet and confer between SaveOnSP and TrialCard.

Your assertion that JJHCS has violated the Discovery Confidentiality Order ("DCO") is baseless.  JJHCS has not provided Ayesha Zulqarnain's deposition transcript to TrialCard, nor has it summarized its contents to TrialCard or otherwise provided to TrialCard any other materials designated by SaveOnSP as Confidential or Attorney's Eyes Only ("AEO") under the DCO.  As we have previously explained, your resort to unfounded accusations is disappointing and not collegial.  *See* Aug. 16, 2023 Email from G. LoBiondo to E. Snow.

Your letter also misrepresents the discussion that we had during the January 12 meet and confer.  Specifically, Request No. 7 requested all communications between TrialCard and SaveOnSP, including recordings of calls.  While discussing TrialCard's burden objections to producing documents in response to that request, we, in our capacity as counsel to TrialCard, noted that TrialCard could not identify recordings of such calls without the benefit of identifying information, including the names and phone numbers SaveOnSP has used to communicate with TrialCard.  We invited SaveOnSP to provide this information to TrialCard to assist it in its efforts to locate responsive documents.  We further mentioned in passing that, in our capacity as counsel for JJHCS, ███████████████████████████████████████████████████████████████████████████████████████████████.
We observed that such deception contributes to the burden TrialCard faces in producing the calls sought by Request No. 7.  At no point did we suggest or imply that TrialCard was in possession of Ms. Zulqarnain's deposition testimony; quite to the contrary, we recognized during the meet and confer, as we have throughout this litigation, that JJHCS and TrialCard are separate entities.

Elizabeth Snow, Esq.
February 1, 2024
Page 2


Finally, in light of the issues raised in the January 30 letter, we note that SaveOnSP has itself repeatedly attempted to blur the lines between JJHCS and TrialCard.  For example, SaveOnSP has cited JJHCS materials designated as AEO in letters to TrialCard (including even after we advised you that such an approach raised confidentiality concerns)[1] and by attempting to link issues involving TrialCard to unrelated issues involving JJHCS, *see* Jan. 19, 2024 Ltr. from H. Sandick to E. Snow.  We again caution you against this approach and ask you to observe the boundaries between JJHCS and TrialCard.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

---

[1] For example, your December 8, 2023 letter to TrialCard quoted from documents that JJHCS had designated as AEO, without recognition of that designation or of TrialCard's status as a third party.  Instead of jumping to conclusions—as SaveOnSP does in the January 30 letter—we recognized that this may have been an oversight and asked you to act in accordance with the DCO going forward.  *See* Dec. 22, 2023 Ltr. from S. Arrow to H. Miles at 1 n.1.  In two subsequent letters to TrialCard, SaveOnSP proceeded to ignore the concern we had raised in the December 22 letter.  *See* Jan. 5, 2024 Ltr. from H. Miles to K. Brisson (quoting JJHCS's AEO-designated documents to TrialCard without noting the confidentiality designation); Jan. 30, 2024 Ltr. from H. Miles to S. Arrow (same).

14888998

# Exhibit 48



February 22, 2024

Sara A. Arrow
(212) 336-2031

www.pbwt.com

**By Email**

Elizabeth Snow, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

     Re:    **January 12, 2024 Meet and Confer**
              *Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC*
              **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Elizabeth:

        We write in response to your February 16, 2024 letter concerning the January 12, 2024 meet and confer between SaveOnSP and TrialCard, and the related earlier correspondence.

        As you know, the January 12, 2024 meet and confer between TrialCard and SaveOnSP has been the subject of several discovery letters. In a letter dated January 30, 2024, SaveOnSP first suggested—without basis—that our client, JJHCS, violated the Discovery Confidentiality Order by purportedly sharing materials marked as Attorney's Eyes Only ("AEO") under the DCO with TrialCard, a third party in this matter. We explained at length why that accusation lacked merit. *See* Feb. 1, 2024 Ltr. from S. Arrow to E. Snow. JJHCS has not provided TrialCard with any materials designated by SaveOnSP as Confidential or AEO, and your mistaken characterization of the meet and confer did not prove otherwise. We also asked you in our February 1 letter to cease making unfounded accusations in the interest of collegiality.

        Unfortunately, you have not done so. Instead, you have now leveled a new baseless accusation, falsely suggesting that our firm, as counsel for both JJHCS and TrialCard, violated the DCO by "***using*** Confidential information" acquired through our firm's representation of JJHCS for a "purpose other than its prosecution of this action, including on behalf of a third party resisting a subpoena." *See* Feb. 16, 2024 Ltr. from E. Snow to S. Arrow (emphasis in original). A passing reference in a phone call does not amount to "use" of any kind, let alone a use that is prohibited by Paragraph 4 of the DCO. We did not use protected materials in violation of the DCO or otherwise.

        You nevertheless insist that we identify steps to ensure that "similar violations of the DCO do not occur in the future." The premise of your demand is flawed; there has been no violation. Accordingly, our firm will not "wall off its attorneys representing [JJHCS] in this

Elizabeth Snow, Esq.
February 22, 2024
Page 2

matter from those representing TrialCard on this matter," as you insist. We are aware of no authority to support this extraordinary request, and you have identified none. Our clients are free to select counsel of their choosing, and we will continue to represent them consistent with all applicable ethical and other obligations.

Finally, we have requested multiple times in discovery correspondence and during conferral that you observe the distinctions between our firm's clients, JJHCS on the one hand, and TrialCard on the other. *See, e.g.*, Feb. 1, 2024 from S. Arrow to E. Snow. We have made this request precisely because we recognize that the parties are separate, with distinct rights and obligations. Yet, even in the days following your allegations about the DCO, you have persisted in blurring the lines between these two clients. *See, e.g.*, Feb. 13, 2024 Ltr. From H. Miles to S. Arrow ("We write to you as counsel for TrialCard, Inc. ("TrialCard") and Johnson & Johnson Health Care Systems, Inc. (with its affiliates, "J&J")"). Once again, it is SaveOnSP—not JJHCS or TrialCard—that has attempted to conflate JJHCS and TrialCard. Please immediately cease this practice. We have and will continue to treat JJHCS and TrialCard as distinct entities—and we expect you to do the same.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

14928123

# Exhibit 49



www.pbwt.com

January 12, 2024

Sara A. Arrow
(212) 336-2031

**<u>By Email</u>**

Elizabeth Snow, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

    Re: ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
      <u>Case No. 2:22-cv-02632 (JKS) (CLW)</u>

Dear Elizabeth:

    On behalf of TrialCard, we write in response to your December 27, 2023 letter concerning the February 17, 2023 subpoena (the "Subpoena") served on TrialCard and our related email correspondence.

    Suffice it to say, we disagree with the statements in your December 27 letter, including for the reasons we have explained at length in discovery letters and during the conferral process. *See, e.g.*, Dec. 6, 2022 Ltr. from S. Arrow to H. Miles; Dec. 22, 2023 Ltr. from S. Arrow to E. Snow. As we have explained, SaveOnSP's request to the extend the scope of the Subpoena at least nine months beyond the service date is improper and contrary to the Federal Rules of Civil Procedure.

    In the interest of finality, we write to confirm that we are at impasse with respect to the applicable time period for the Subpoena. TrialCard does not consent to submit this dispute to Judge Wolfson.

    TrialCard reserves all rights.

        Very truly yours,

        <u>*/s/ Sara A. Arrow*</u>
        Sara A. Arrow

Patterson Belknap Webb & Tyler LLP  1133 Avenue of the Americas, New York, NY 10036  T 212.336.2000  F 212.336.2222

14801960

# Exhibit 50

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

March 8, 2024

**Via E-mail**

Sara A. Arrow
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
sarrow@pbwt.com

Re:  *Johnson & Johnson Health Care Systems Inc. v. Save On SP,
    LLC* (Case No. 2:22-cv-02632-JKS-CLW)

Dear Sara,

    We write regarding SaveOn's second subpoena, to TrialCard, dated December 1, 2023, and to follow up on the parties' meet-and-confer on March 7, 2024.

I.    **Time Period**

    SaveOn's subpoena—issued December 1, 2023—seeks documents through "the present," but TrialCard has generally refused to produce documents past July 1, 2022. We discussed SaveOn's position that TrialCard should produce documents through the present for all requests. TrialCard has provided no reasoned basis to explain the July 1, 2022 date—particularly for these requests which were served almost 18 months after that date.

    In your March 1, 2024 letter and during the meet and confer, you pointed to the Benefits Investigations spreadsheet, where you have agreed to produce records through November 7, 2023, as an instance where you agreed to go beyond TrialCard's obligations "in the interest of compromise." But, as we stated, TrialCard is producing those records on behalf of J&J, which has been ordered by the Court to produce responsive documents through November 7, 2023. *See* Jan. 24, 2024 Tr. at 21:10–17 ("[W]e [J&J] have already agreed to produce[,] ... either directly through us or by asking our vendor, a company called TrialCard, to produce what are known as benefits investigations. And those are the enforcement documents. We're in the process of making those productions for the relevant time period right now."); *see also* Oct. 30, 2023 Tr., at 62:8–13 ("[W]e [J&J] will also give

Sara A. Arrow
March 8, 2024

them through a production from TrialCard, which is our vendor, who we also represent and is subject to a subpoena, we'll give them benefits investigations that find any patient in a maximizer or accumulator through to the present. Through to the present.").

In addition, TrialCard represented that it intends to produce certain updated or refreshed CarePath claims data through November 7, 2023. You indicated that you were still exploring the scope of the refresh. Please let us know when we can expect that updated data, and whether you are producing claims data on behalf of TrialCard or J&J.

## II.    TrialCard's Ability to Identify Patients

Next, we discussed SaveOn's Requests 1, 2, 3, and 4, which seek documents related to TrialCard's ability to identify patients on accumulators, maximizers, or health plans advised by SaveOn. You continued to state that the information that we request in these RFPs is not relevant.

For Request 3, which requests "[d]ocuments sufficient to show the methods by which TrialCard identifies or attempts to identify if patients are members of plans advised by SaveOnSP, any Copay Accumulator Service, and/or any Copay Maximizer Service," you pointed to the Benefits Investigations spreadsheet that you previously produced. But you were not able to represent that Benefits Investigations are the <u>only</u> method that TrialCard uses to identify or attempt to identify such patients, and refused to search for additional documents responsive to this request. As we explained, it is not our burden to tell you exactly what methods we are looking for—only TrialCard has that information.

How TrialCard could identify patients on SaveOn-advised plans is highly relevant to our failure-to-mitigate defense. You responded that the only methods to identify patients that may be relevant are those that were squarely presented to J&J and thus that we could get anything we needed from party discovery. That misunderstands our failure-to-mitigate affirmative defense. "To prove a failure to mitigate, one must show: (1) what reasonable actions the plaintiff ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced." *Prusky v. ReliaSatar Life Ins.*, 532 F.3d 252, 258–59 (3d Cir. 2008) (quotation marks omitted). "Damages that could have been 'avoided with reasonable effort without undue risk, expense, burden, or humiliation will be considered … as not chargeable against the defendant.'" *Id.* at 259 (quoting Williston on Contracts, § 64:27, at 195). "Reasonableness is to be determined from all the facts and circumstances of each case, and must be judged in the light of one viewing the situation at the time the problem was presented." *Id.*; *see also Grubbs v. Knoll*, 376 N.J. Super. 420, 437 (N.J. App. 2005) ("Injured parties have a duty to take reasonable steps to mitigate damages … The reasonableness of the plaintiff's actions is measured by a subjective standard."). If TrialCard, J&J's vendor, used other methods to identify patients on SaveOn-advised plans, maximizers, and accumulators, those methods are relevant to our

Sara A. Arrow
March 8, 2024

failure-to-mitigate defense as "reasonable actions the plaintiff ought to have taken," whether or not there is direct evidence that the option was put in front of J&J.

The parties are at impasse on this issue.

## III.  TrialCard's Responses to Identifying Patients

Requests 6 and 8 seek documents related to TrialCard's responses to accumulators, maximizers, and plans advised by SaveOn. For Request 6, which asks for "[d]ocuments sufficient to show the methods by which TrialCard responded to Benefits Investigations that revealed or suggested that a patient was a member of a plan advised by SaveOnSP, any Copay Accumulator service, and/or any Copay Maximizer," you pointed to the form letters that TrialCard sent to Stelara and Tremfya patients after the patients were identified through Benefits Investigations. We asked if sending those letters (and the actions described in the letters) are the only methods or actions taken to respond to such Benefits Investigations. You did not confirm that, nor did you agree to produce documents reflecting other methods. You stated that we should seek this material from J&J because, as a vendor, TrialCard acted only according to J&J's direction in operating the CarePath program. As we stated, we are entitled to investigate both what J&J directed (through party discovery), and what TrialCard actually did (through third-party discovery). The parties are at impasse on this issue.

Request 8 seeks documents and communications regarding the creation or attempted creation of ███████████████████ You again stated that TrialCard's responses or solutions are only relevant to the extent that they were proposed or presented to J&J. For the reasons explained above, if TrialCard had developed responses or solutions that other drugs manufacturers were using or considered using to mitigate alleged losses relating to similar copay assistance program, that is relevant to our failure to mitigate defense, regardless of whether the option was directly pitched to J&J. TrialCard's capabilities are relevant. You suggested that we propose search terms for this request. Please see Appendix A. Please tell us by March 15, 2024 if you agree to run these search terms.

## IV.  Communications with Stelara and Tremfya Patients

In response to Request 5, which seeks all communications with patients receiving Stelara and Tremfya, including recordings of calls, you pointed to your previous productions of "(1) case and task notes reflecting communications between TrialCard and patients taking at least one Janssen drug [to January 1, 2022]; and (2) for the period January 1, 2022 to November 7, 2023, certain documents sufficient to show written communications to patients receiving Stelara and Tremfya to the extent such communications concern whether those patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan." TrialCard's R&Os, at 12 (Dec. 15, 2023). You clarified that, based on your reasonable investigation,

3

Sara A. Arrow
March 8, 2024

the letters that TrialCard produced were the only communications sent to Stelara and Tremfya patients regarding whether those patients were in a SaveOn-advised plan, a maximizer or an accumulator.

We asked you to please update the case and task notes to the present. You stated that you would take the request back but were open to such a refresh, if we agreed that doing so would resolve this Request. When you produced the original set of case and task notes, you explained that you "filtered these notes for the Janssen Drugs at issue in this litigation and [then] further search[ed] these notes for responsive material" using search terms. *See* May 12, 2023 Ltr. from G. Carotenuto to A. Dunlap, at 2. You then "invite[d] [SaveOn] to use these records to identify a reasonable number of calls for which you would like TrialCard to attempt to produce the associated audio recording and/or transcript, where available." *Id.* If you refresh the call and task notes, subject to the same procedures in the May 12, 2023 letter, and agree that SaveOn reserves its rights to request call recordings and transcripts in the future, that would indeed resolve this Request.

## V.     Communications Between TrialCard and SaveOn

Finally, we discussed Request 7, which asks for "[a]ll communications between TrialCard and SaveOnSP, including without limitation recordings of calls." You asked whether SaveOn itself has these call records, such that any request for TrialCard to produce them would be duplicative. To the extent that SaveOn employees contacted the CarePath call center run by TrialCard on behalf of J&J, those outbound calls may not have been recorded by SaveOn. That is why we have requested these call records from TrialCard, which we believe records incoming calls to its call center as a regular practice.

In addition, we discussed the 16 call records that TrialCard produced on January 12, 2024, marked as TRIALCARD_00008915-8930. We explained that we believe that these were the "certain responsive call recordings as requested by JJHCS" that TrialCard agreed to produce in its R&Os in response to Request 7. We explained that it was our understanding that J&J possessed and used these call recordings long before they were produced by TrialCard to SaveOn on January 12, 2024. We asked how it was that J&J had come to possess these call recordings, and what the nature of the request was that J&J made to TrialCard that led to it producing the call recordings to us. You stated that you were not prepared to answer those questions but that you would look into it. We then asked whether it is TrialCard's general practice to share recordings of calls with or regarding CarePath patients with J&J, whether those calls were shared as part of this litigation, or whether these 16 calls were specifically identified and shared.

Please tell us (1) how J&J came to possess the call recordings before they were produced in this litigation by TrialCard, (2) what the nature of J&J's request to TrialCard was that led it to produce the call recordings to SaveOn, and (3) whether it is TrialCard's general practice to share recordings of calls with or

4

Sara A. Arrow
March 8, 2024

regarding CarePath patients with J&J, whether those calls were shared as part of this litigation, or whether these 16 calls were specifically identified and shared.

We request a response by March 15, 2024.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

Sara A. Arrow
March 8, 2024

## **Appendix A**

- Proposed Custodians: Holly Weischedel, Sini Abraham, Paul Esterline, Rick Fry, Jason Zemcik, Rick Ford, April Harrison, Tommy Gooch, Lynsi Newton, Amber Maldonado, Cosimo Cambi.

- Search term:

    (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP) OR (accumulate* OR maximiz*) OR ("Essential Health Benefit*" OR NEHB OR EHB OR (variable /5 copay)) /20 (solution* OR response* OR shield* OR circumvent* OR prevent* OR avoid*)

# Exhibit 51

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

selendy
gay
elsberg

Elizabeth H. Snow
Associate
212 390 9330
esnow@selendygay.com

December 27, 2023

**Via E-mail**

Sara Arrow
Patterson Belknap Webb & Tyler LLP
133 Avenue of the Americas
New York, NY 10036
Sarrow@pbwt.com

Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP,
        LLC* **(Case No. 2:22-cv-02632-ES-CLW)**

Dear Sara,

We write in response to your December 22, 2023 letter concerning the sub-poena issued to TrialCard, Inc. ("TrialCard") by Save On SP, LLC ("SaveOn") on February 18, 2023 (the "Subpoena"), and to follow up on the parties' December 12, 2023 meet and confer.

We stated in our December 14, 2023 letter that, following the parties' meet and confer, the parties are at impasse on the question of whether TrialCard will produce documents through November 7, 2023, the date ordered by the Court for a refreshed party production. TrialCard's responses do not change this conclusion.

*First*, the May 31, 2023 letter that TrialCard cites to purportedly show that SaveOn "accepted [April 1, 2016 to July 1, 2022] as the Relevant Time," offers no support for its assertion that SaveOn agreed to a July 1, 2002 cutoff for TrialCard's production. The quoted language merely summarized TrialCard's position: "You replied that TrialCard will produce documents responsive to this request from April 1, 2016 through July 1, 2022 (the 'Relevant Time Period')." *See* May 31, 2023 Ltr. from E. Holland to G. Carotenuto at 1. Similarly, the July 26, 2023 letter simply proposed supplemental search terms to add to the search that TrialCard had agreed to conduct, reserving all rights. *See* July 26, 2023 Ltr. from E. Holland to K. Brisson at 7 n.1.

*Second*, while TrialCard asserts that it is improper to extend the scope of the subpoena beyond the date of service, federal courts have ordered third parties

Sara A. Arrow
December 27, 2023

to produce documents created after the return date or service date of subpoenas. *See, e.g.*, *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 449 (S.D.N.Y. 2011); *United States v. Int'l Bus. Machines Corp.*, 83 F.R.D. 92, 96 (S.D.N.Y. 1979); *Addison v. Monarch & Assocs., Inc.*, No. 14-CV-00358 (GW) (JEM), 2016 WL 11530426, at *1 (C.D. Cal. Dec. 12, 2016). Even were it otherwise, SaveOn could simply serve an updated subpoena covering the updated timeframe; TrialCard's position serves only to delay production of clearly relevant documents.

*Third*, while TrialCard points out that the Court's November 7, 2023 Order did not direct it to update its discovery responses, that issue was not before the Court. Now that the parties have been ordered to refresh their productions through November 7, 2023, the question is whether TrialCard—J&J's main vendor for CarePath—should produce documents from the same time period, and it should. TrialCard asserts that no other third party has updated its production through November 7; in fact, Archbow has agreed to do so, and TrialCard should as well.

In sum, the parties did not agree that TrialCard's production would not extend past July 1, 2022. TrialCard has not articulated a relevance or burden objection. The parties are thus at impasse on this issue. SaveOn requests that TrialCard consents to submit this dispute to Special Master Freda L. Wolfson.

We request a response by January 3, 2023.

Best,


Elizabeth H. Snow
Associate

# Exhibit 52



www.pbwt.com

July 6, 2023

Katherine Brisson
(212) 336-2552

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:  *Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC*
     **Case No. 2:22-cv-02632 (ES) (CLW)**

Dear Emma:

On behalf of TrialCard, Inc. ("TrialCard"), we write in response to your July 5, 2023 letter concerning TrialCard's responses to Save On SP, LLC's (SaveOnSP) subpoena.  As we previously stated, we have worked with our client to determine whether there is anything more to be done to satisfy the concerns you raised during our June 28, 2023 meet and confer.  While we still do not think it necessary, in order to moot the concerns you have expressed and to avoid an unnecessary dispute, we will make a custodial production from TrialCard.  We will update you further as that collection and review proceeds and will aim to make a prompt production.  We believe this resolves our present dispute.  However, if you insist on proceeding with a motion regarding the purported absence of a custodial production from TrialCard, we provide our consent to proceed before Magistrate Judge Waldor on that specific issue.

Very truly yours,

*/s/ Katherine Brisson*
Katherine Brisson

# Exhibit 53

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212 390 9000
hmiles@selendygay.com

March 13, 2024

**Via E-mail**

Sara A. Arrow
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
sarrow@pbwt.com

**Re:**  ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,***
***LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Sara,

We write to ask that J&J agree that it has possession, custody, and control
of documents held by TrialCard, Inc. ("TrialCard") regarding work that TrialCard
performed for J&J.

Pursuant to Rule 34(a) of the Federal Rules of Civil Procedure, a party has
an obligation to produce documents within its "possession, custody, or control."
Fed. R. Civ. P. 34(a). "Federal Courts construe 'control' very broadly under Rule
34." *Maniscalco v. Brother Int'l Corp.*, No. 3:06-CV-4907 (FLW), 2010 WL
762194, at *4 (D.N.J. Mar. 5, 2010). A party has control over documents if it "has
the legal right or ability to obtain the documents from another source upon de-
mand." *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004).

J&J has the legal right to obtain upon demand, and thus controls, Trial-
Card's documents regarding its administration of CarePath. "[A] litigating party
has control of documents if a contractual obligation requires a non-party to pro-
vide requested documents to the litigating party upon demand." *Haskins v. First
Am. Title Ins. Co.*, No. 10-CV-5044 (RMB)(JS), 2012 WL 5183908, at *1 (D.N.J.
Oct. 18, 2012). The 2017 Master Services Agreement between TrialCard and J&J
("MSA")[1] obligates TrialCard ███████████████████████████████████████
███████████████████████████████████████████████████████████████████

---

[1] The MSA was produced with Bates number JJHCS_00011273.

Sara A. Arrow
March 13, 2024

█████████████████████████████████████████
█████████████████████████████████████████
█████████ " MSA § 17.1. ██████████████████
█████████████████████████████████████████
██████████████████████████ *Id.* Courts regularly find such contractual provisions sufficient to establish a litigant's control over documents in the possession of a third party. *See, e.g.*, *Mercy Catholic*, 380 F.3d at 160–61 (establishing party's control over non-party's working papers via right to have papers "made available … at all reasonable times."); *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 410–11 (E.D. Pa. 2021) (establishing party's control through "right to access" non-party books and records); *Rosie D. v. Romney*, 256 F. Supp. 2d 115, 119 (D. Mass. 2003) (establishing party's "control" through contractual right to examine and copy non-party records).

█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████ *See* MSA § 8.2 █████
█████████████████████████████████████████
█████████████████████ ); MSA § 17.2 ███████
█████████████████████████████████████████
█████████████████████████ Similar agreements to cooperate in litigation by a non-party have been found sufficient to establish the party's legal right to obtain documents upon request, even if the party could not "force" the non-party's compliance. *Haskins*, 2012 WL 5183908, at *4 n.4. Because J&J has the legal right to obtain relevant TrialCard documents upon request, it has "control" over those documents.

J&J also has the practical ability to obtain TrialCard's documents. Even where a party does not have a legal right to a third-party's documents, "a company's ability to demand and have access to documents in the normal course of business gives rise to the presumption that such documents are in the litigating corporation's control." *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 443 (D.N.J. 1991). "One such business need is to provide highly relevant documents in litigation." *Id.* at 444. Where, as here, a party and non-party share "documents helpful for use in the litigation, the courts will not permit [the party] to deny control for purposes of discovery by an opposing party." *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 141 (3d Cir. 1988). J&J and TrialCard are clearly collaborating in discovery, as evidenced by the many times J&J has promised to make its own productions "from" or "through" TrialCard. *See, e.g.*, Jan. 24, 2024 Conf. Tr. at 21:10-17 ("We have already agreed to produce what are either directly through us or by asking our vendor, a company called Trial Card, to produce what are known as benefits investigations. And those are the enforcement

documents. We're in the process of making those productions for the relevant time period right now."); Nov. 20, 2023 Responses & Objections to SaveOnSP's Fourth Set of RFPs at 7 ("Subject to the foregoing objections, JJHCS will ask TrialCard, Inc. to produce all benefits investigation reports from the Time Period that reflect inquiries about whether a patient taking Stelara or Tremfya is enrolled in an accumulator or maximizer program (including SaveOnSP), to the extent such documents exist and can be located after a reasonable search."); Oct. 30, 2023 Conf. Tr. at 46:23-47:2 ("We produced call notes from thousands of calls at TrialCard, our vendor, that actually talks to the patients. We produced thousands of call notes from TrialCard to show how these things are being done."); *id.* at 62:8 ("In addition to all of the categories that I just pointed out, we will also give them a production from TrialCard, which is our vendor, who we also represent and is subject to a subpoena, we'll give them benefits investigations that find any patient in a maximizer or a [sic] accumulator through to the present. Through to the present."); June 27, 2023 Conf. Tr. at 90:2-6 (""[T]he administrator is TrialCard, this third party that is also—that we have identified and we've made document production from–and probably we'll be making more"). TrialCard confirms that it is making productions "as requested by" J&J. *See* Dec. 15, 2023 TrialCard Responses or Objections to SaveOnSP's Second Set of RFPs at 14 ("TrialCard will produce certain responsive call recordings as requested by JJHCS.").

Please confirm that J&J agrees that it has possession, custody, and control over documents in TrialCard's possession relating to TrialCard's services for J&J.

We request a response by March 20, 2024. We are available to meet and confer.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

# Exhibit 54

**Patterson Belknap Webb & Tyler** LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

January 27, 2023

Anthony C. LoMonaco
Associate
(212) 336-2642
alomonaco@pbwt.com

**VIA EMAIL**

Meredith Nelson, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
mnelson@selendygay.com

> Re:    **SaveOnSP's Requests For Production**
> *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
> No. 22 Civ. 2632 (JMV) (CLW)

Dear Meredith:

We write in response to your January 20, 2023 letter concerning our January 13, 2023 meet and conferring regarding Johnson & Johnson Health Care Systems Inc.'s ("JJHCS") Responses and Objections to Save On SP, LLC's ("SaveOnSP") First Set of Requests for Production.

## I.    GLOBAL ISSUES

### A.    Documents Related to the Development and Marketing of CarePath and SaveOnSP's Financial Impact on JJHCS and CarePath (RFPs 11, 26, 28-30, 36, and 37)

SaveOnSP claims that it needs documents relating to the development and marketing of CarePath as well as documents relating to the "finances of any entity with a stake in CarePath, including documents reflecting the financial impact of SaveOnSP's services and the plan terms set by its clients on JJHCS." In general, SaveOnSP advises it needs such documents because it "intends to show that CarePath is primarily a marketing tool that JJHCS and its affiliates use to sell more Janssen Drugs and to hike the price of those drugs year after year." SaveOnSP also claims that it needs such documents because JJHCS alleges that "SaveOnSP harms patients and threatens the continued viability of CarePath by making it 'prohibitively expensive,'" and that "the threat of CarePath's viability constitutes a public harm for purposes of JJHCS's GBL [section] 349 claim," and SaveOnSP "intends to show that Johnson & Johnson's ("J&J's") return on investment from CarePath is substantial, and that even if JJHCS' costs for CarePath have gone up, CarePath is still profitable for J&J." You elaborate on the rationale behind each specific RFP further. We address each RFP below in turn.

Meredith Nelson, Esq.
January 27, 2023
Page 2

RFP No. 11 seeks documents regarding "the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs." You state that such documents "relate to SaveOnSP's defense that CarePath is a marketing tool, developed to increase J&J's bottom line."

SaveOnSP has not explained how its assertion that CarePath is a marketing tool is relevant to any claim or defense, or how this fact, even if proved, would justify SaveOnSP inducing patients to breach their contracts with JJHCS. Nor has SaveOnSP explained how JJHCS's intention in operating CarePath is relevant to JJHCS's claims.

RFP Nos. 26 and 32 seek documents concerning the amounts of CarePath funds paid out to patients. You claim such documents "are relevant to disputing JJHCS's claims that its increased CarePath expenditures threaten the viability of CarePath by making it prohibitively expensive, as well as to the extent of JJHCS's alleged damages." We address RFP Nos. 26 and 32 in Section II.F, *infra*.

RFP No. 28 seeks a variety of categories of data relating to both Janssen Drugs (items a. through g.) and CarePath (items i. thorough m.), and RFP No. 29 seeks additional documents relating to CarePath's finances. You claim such requests are relevant to "understanding JJHCS's return on investment for CarePath, how CarePath enables JJHCS to increase the costs of Janssen Drugs, the financial impact of SaveOnSP on J&J more broadly, and JJHCS's damages." We address RFPs No. 28 & 29 in Section II.G, *infra*.

RFP No. 30 seeks documents "regarding the basis for Janssen's decision to raise or lower the prices of Janssen Drugs." You claim this relates to "SaveOnSP's defenses that CarePath is primarily a marketing tool that enables J&J to continue to raise drug prices year after year and that J&J profits from SaveOnSP increasing enrollment in CarePath, because it is able to sell more of its incredibly expensive drugs."

As noted above, SaveOnSP has not explained how Janssen's pricing decisions would justify or excuse SaveOnSP in causing patients to breach their contracts with JJHCS. Further, please explain how documents "regarding the basis for Janssen's decision to raise or lower the prices of Janssen Drugs" relates to SaveOnSP's claimed defense that it is somehow increasing JJHCS's profits by increasing enrollment in CarePath. Even if SaveOnSP did increase enrollment in CarePath, it is unclear how documents relating to decisions to raise or lower drug prices would prove the fact of that increased enrollment.

In short, proclaiming *ipse dixit* on a call that certain categories of documents relate to the litigation does not make it so, and the burden of explaining the relevance of the documents rests with SaveOnSP, especially where the documents requested are voluminous. Thus far, SaveOn has not carried its burden.

Meredith Nelson, Esq.
January 27, 2023
Page 3

      RFP Nos. 36 and 37 seek documents relating to the economic terms of its agreements with vendors that support CarePath and documents relating to enrollment in CarePath, respectively. We address RFP Nos. 36 and 37 in Sections II.I, *infra*.

### B.    Documents in the Possession of JJHCS Hub Entities, Janssen, and Other

### 1.    JJHCS Hub Entities

      You ask us to confirm (1) whether there previously were or currently are other JJHCS Hub Entities involved in the development, administration, and marketing of CarePath aside from Trial Card and Lash Group, and (2) if so, whether JJHCS will produce documents from those entities responsive to SaveOnSP's requests.

      As discussed in Section I.A., *supra*, SaveOnSP has not explained how documents relating to the development and marketing of CarePath are relevant to this litigation. Further, as explained in Section I.C., *infra*, it is unclear to us how documents dated from before 2017 are relevant to this litigation. Therefore, we focus our response on entities responsible for the administration of CarePath during the relevant Time Period and with regard to the scope that we have agreed is appropriate.

      Trial Card is the entity responsible for administering CarePath's co-pay assistance program during the relevant Time Period and is most likely to have documents responsive to SaveOnSP's requests. We had previously identified Lash Group as a predecessor to Trial Card in administering CarePath during a small portion of the relevant Time Period. Based on additional fact investigation, however, we no longer believe that Lash Group had a comparable role in the administration of CarePath's co-pay assistance program. We are continuing to investigate and will let you know if that understanding changes. We are otherwise unaware of any of vendors that have had a comparable role in administering CarePath. Other vendors that provide or have provided limited, episodic services to JJHCS relating to CarePath are not relevant to the litigation.

      As noted at our meet and confer, JJHCS is working with Trial Card to facilitate the production of documents responsive to SaveOnSP's requests. Such documents will be produced to SaveOnSP through JJHCS's counsel.

### 2.    J&J and Janssen

      You ask us to confirm whether JJHCS will produce documents held by Janssen or other J&J entities because you believe those entities will have "highly relevant" documents, including "documents related to the pricing of Janssen Drugs, the purpose of CarePath, and J&J's return on investment for CarePath." You also request that we provide a list of all J&J entities involved in the development, marketing, or administration of CarePath.

Meredith Nelson, Esq.
January 27, 2023
Page 4

As discussed, JJHCS is the entity that manages CarePath and it is the only J&J entity that is a party to this action. There is no need for JJHCS to provide any list of entities or for documents from other JJHCS affiliates to be produced. JJHCS is prepared to produce documents held by other J&J entities to the extent that such production is agreed upon or ordered by the Court, but we do not think any such production is necessary or appropriate.

### C.     Time Period

SaveOnSP requests several categories of documents from before January 1, 2017. You ask us whether JJHCS intends to produce any documents pre-dating January 1, 2017.

### 1.     Your Demand for Documents Dating Back to January 1, 2009

For certain categories of RFPs (Nos. 1-7, 11-13, 28-30, 36-37), you state that you chose January 1, 2009 as the starting date based on your understanding of when most of the Janssen Drugs first went to market. As we have explained, this start date is unjustified and inappropriate, reaching back almost a decade before SaveOnSP existed, and seven years before CarePath was launched. Nevertheless, we address each request in turn.

For RFP Nos. 12 and 13, which relate to extrinsic evidence concerning the drafting of CarePath's terms and conditions, you claim you need documents going back to January 1, 2009 so you can "make arguments about the meaning of the contracts that SaveOnSP allegedly induced patients to breach." As discussed in Section II.B, *infra*, the drafting history of CarePath's terms and conditions is not relevant to the claims or defenses in this case, but to the extent the parties can reach an agreement on JJHCS's proposal with respect to the scope of JJHCS's response to RFP Nos. 12 and 13, JJHCS is willing to consider producing documents dating back to January 1, 2016.

For RFP Nos. 11, 28-30, 36, and 37, which relate to the development, marketing, administration, and financials of CarePath and Janssen drugs, you claim that you need documents going back to January 1, 2009 so you can "probe why CarePath was created, J&J's historical return on investment for CarePath, and how SaveOnSP has impacted JJHCS and CarePath." Further, you claim that you are entitled to rely on "historical information to assess [JJHCS's] damages and the impact that SaveOnSP has on JJHCS and CarePath," particularly by comparing information pre-dating SaveOnSP's existence to information post-dating SaveOnSP's existence.

As explained more fully in Section I.A, *supra*, and in other sections of this letter, much of the information sought from these requests is irrelevant to the claims and defenses in this case. Nevertheless, JJHCS has agreed to produce certain documents in response to them, subject to general and specific objections, including:

Meredith Nelson, Esq.
January 27, 2023
Page 5

- In response to RFP No. 28, JJHCS agreed to produce Janssen Transparency Reports and also agreed to consider producing documents responsive to items (i) through (m), which relate to CarePath enrollment data.

- In response to RFP No. 29, JJHCS agreed to produce documents sufficient to show (1) how JJHCS determines the amounts of copay assistance funds that JJHCS offers to Patients enrolled in CarePath, (2) JJHCS's budget for copay assistance through CarePath, and (3) JJHCS's actual and projected annual costs for CarePath.

In order to allow SaveOnSP to perform an analysis comparing information from before and after SaveOnSP's existence, JJHCS would be willing to provide documents in these categories dating back to January 1, 2016, to the extent such documents exist and can be located by a reasonable search. Any date range beyond that would be unduly burdensome and unnecessary to the analysis that SaveOnSP wishes to perform.

Finally, for RFP Nos. 1-7, which ask for various categories of organizational charts, you state you need documents dating back to January 1, 2009 "in order to understand how the above information implicates the various entities whose conduct is relevant in this action and to identify potential sources of additional information." Subject to general and specific objections, JJHCS agreed in response to RFP Nos. 1, 4, and 5 to "produce non-privileged documents in its possession sufficient to show the organizational structure of the JJHCS groups responsible for the administration of CarePath." As above, JJHCS would be willing to provide documents in these categories dating back to January 1, 2016, to the extent such documents exist and can be located by a reasonable search.

## 2.     Your Demand for Documents Dating Back to January 1, 2015

For another category of RFPs (Nos. 14, 41, and 42), you seek documents from as early as January 1, 2015. These requests seek documents relating to JJHCS's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits (RFP No. 14), "Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's return on investment for copay assistance dollars," (RFP No. 41), and JJHCS's understanding of the terms "copay accumulator" and "copay maximizer." (RFP No. 42).

As we have explained, these requests are irrelevant to the claims and defenses at issue in this case because JJHCS's understanding of the regulatory backdrop or the meaning of the terms "copay accumulator" and "copay maximizer" have no bearing on whether SaveOnSP tortiously interfered with CarePath or violated the New York's GBL. Further, JJHCS has agreed to produce several categories of documents related to the harm SaveOnSP has caused it, so the effects of other programs are also not relevant to this case.

Meredith Nelson, Esq.
January 27, 2023
Page 6

Nevertheless, in response to RFP No. 14, subject to general and specific objections, JJHCS agreed to produce documents "regarding SaveOnSP's designation of specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its regulations." JJHCS discusses further compromise on this RFP in Section II.C, *infra*. Further, while JJHCS has not agreed to produce documents in response to RFP Nos. 41 and 42, JJHCS also discusses a potential compromise in Section I.D, *infra*. While JJHCS is prepared to compromise on the requests and go beyond what it is obligated to produce, extending the time period beyond January 1, 2017 is not appropriate for these requests.

**D.    Requests Related to Accumulators and Maximizers (RFP Nos. 20, 21, and 41-43).**

SaveOnSP's RFP Nos. 20, 21, and 41-43 seek documents related to accumulators and maximizers. For example, RFP No. 42 seeks documents relating to JJHCS's "understanding of the terms 'copay accumulator' and 'copay maximizer.'" JJHCS responded to most of these requests that it would produce documents relating to SaveOnSP specifically, except for RFP No. 21, which JJHCS objected to in full because, *inter alia*, it targets irrelevant lobbying efforts.

As we explained during the meet and confer, JJHCS's understanding or views about accumulators or maximizers in general are irrelevant. The key point in JJHCS's Complaint is that SaveOnSP has characteristics of such programs (*see* Compl. ¶¶ 50, 74), which is a fact that will be proved only by reference to documents in SaveOnSP's possession. In response, you ask whether JJHCS would agree to a proposal that both parties drop their requests concerning accumulators and maximizers.

We do not accept this proposal. The documents relating to maximizers and accumulators that JJHCS seeks are relevant for reasons that are not reciprocal. For instance, JJHCS's RFP No. 43 seeks "documents and communications relating to how SaveOnSP operates in jurisdictions with statutes or regulations that ban or limit accumulator adjustment programs and JJHCS's RFP No. 45 seeks "documents and communications relating to studies, reports, publications, analyses, research, white papers reviews, or other written work product" relating to, *inter alia*, "accumulator programs" and "maximizer programs." The wrongfulness of SaveOnSP's Program is at issue, so whether it can legally operate in states with accumulator bans is relevant. Further, SaveOnSP's intent is at issue, so given that it has characteristics of accumulators and maximizers, any analyses of whether such programs are wrongful or harmful is relevant. Because JJHCS's intent is not at issue, neither of those categories of documents are relevant with respect to JJHCS, nor is the broad category of "JJHCS's understanding of the terms 'copay accumulator' and 'copay maximizer'" an appropriate topic of discovery from JJHCS.

**II.    ISSUES RELATED TO SPECIFIC REQUESTS**

Meredith Nelson, Esq.
January 27, 2023
Page 7

### A.    RFP No. 11

You ask us to confirm whether J&J or JJHCS operates or previously operated any copay assistance programs other than CarePath.  We are unaware of any other copay assistance programs operated by J&J or JJHCS during the relevant Time Period of January 1, 2017 to July 1, 2022.  Any programs that predate CarePath's launch are irrelevant to this litigation.

### B.    RFP Nos. 12 and 13

SaveOnSP's Request Nos. 12 and 13 seek documents regarding CarePath's terms and conditions, including CarePath's requirement that patients enrolled in CarePath make payments toward Janssen Drugs.  In response, JJHCS has agreed to produce final versions of CarePath's terms and conditions because JJHCS's allegation that SaveOnSP causes a breach of those terms and conditions is evident by their plain meaning.  SaveOnSP nevertheless insists that it is entitled to gather extrinsic evidence on the meaning of CarePath's terms and conditions in support of its assertion that SaveOnSP does not cause of breach of cause a CarePath's terms and conditions.  You ask us to confirm whether JJHCS will produce internal communications regarding the meaning of SaveOnSP's terms and conditions.

During our meet and confer, we asked SaveOnSP to consider producing internal communications responsive to JJHCS's RFP No. 17 ("Any agreements, including drafts, between Express Scripts on the one hand, and health insurance plan sponsors, on the other, regarding the SaveOnSP Program, and any communications relating thereto") in exchange for JJHCS's agreement to produce internal communications relating to the drafting of CarePath's terms and conditions.  You rejected this proposal at the meet and confer and again in your letter because you claim that "the terms of SaveOnSP's contracts with health plans are not at issue in this case."

We ask you to reconsider our proposal.  The terms of SaveOnSP's contracts with health plans and Express Scripts are very much at issue in this case.  JJHCS alleges that SaveOnSP intentionally tortiously interferes with its CarePath program by contracting with Express Scripts and health plans to perpetuate the SaveOnSP Program.  *See, e.g.*, Compl. ¶¶ 28, 52, 68, 75, 113.  Because SaveOnSP's intent is at issue with respect to JJHCS's tortious interference claim, communications relating to SaveOnSP's understanding of those terms and whether they are wrongful is particularly relevant.  Further, because harm to both JJHCS and patients is at issue with respect both to JJHCS's tortious interference claim and its GBL claim, communications relating to whether the terms of SaveOnSP's agreements harm JJHCS or harm patients are also relevant.  If SaveOnSP intends to seek JJHCS's internal documents, fairness requires that SaveOnSP produces its internal documents, as we have proposed and propose again.

Meredith Nelson, Esq.
January 27, 2023
Page 8

### C.    RFP No. 14

SaveOnSP's RFP No. 14 seeks documents relating to JJHCS's and other entities' "understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits ('EHB') or Non-Essential Health Benefits ('NEHB') under the Affordable Care Act ('ACA') and its regulations." In response to this request, JJHCS agreed to produce non-privileged documents and communications regarding SaveOnSP's designation of specialty drugs as EHB or NEHB. You ask us to confirm whether in addition to these documents, JJHCS would be willing to produce internal communications relating to its understanding of a commercial health plans' ability to designate specialty drugs as EHB or NEHB under the ACA. In exchange, you indicate that "SaveOnSP would be open to producing internal documents that reflect its understanding of whether SaveOnSP's advice to health plans complies with the ACA."

We are willing to accept the following proposal: We would agree to produce all non-privileged documents and communications regarding JJHCS's understanding of commercial health plans' ability to designate specialty drugs as EHB or NEHB under the ACA and its regulations for the time period of January 1, 2017 to June 1, 2022 to the extent such documents exist and can be located after a reasonable search. In exchange, SaveOnSP would need to agree to produce all non-privileged documents and communications, including internal communications, regarding SaveOnSP's understanding of commercial health plans' ability to designate specialty drugs as EHB or NEHB under the ACA and its regulations for the time period from January 1, 2017 to July 1, 2022. Please let us know SaveOnSP is interested in such a proposal.

### D.    RFP No. 21

SaveOnSP's RFP No. 21 concerns "any advocacy to or communications with any governmental or regulatory body regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer." JJHCS has objected to this request, *inter alia*, as seeking documents and communications that are irrelevant to any claim or defense in this action and also subject to a First Amendment privilege.

In your letter, you claim "that such documents are relevant to JJHCS's GBL claim, as JJHCS's public advocacy efforts may include misinformation that causes the alleged patient stress and confusion that JJHCS attributes to SaveOnSP." As we discussed during our meet and confer, the Complaint alleges that SaveOnSP confuses patients by, for example, creating rejections and delays at the point of sale. *See* Compl. ¶ 88. You respond by maintaining that "you are entitled to discovery of such documents notwithstanding [JJHCS's] assertion that this case concerns only the specific types of stress and confusion that JJHCS alleged in its complaint."

SaveOnSP's request does not relate to the claims or defenses in this action and you have offered no logical explanation to the contrary. In response to our request that you

Meredith Nelson, Esq.
January 27, 2023
Page 9

identify stress or confusion alleged in the complaint that could reasonably be attributed to JJHCS, you instead suggest in conclusory fashion that this case does not concern "only the specific types of stress and confusion that JJHCS alleged in its complaint."  Please explain how, if JJHCS's public advocacy efforts to protect patients theoretically somehow caused stress or confusion other than that alleged in the Complaint, that would justify SaveOnSP causing the stress or confusion alleged in the Complaint.

Moreover, as we explained in our letter dated January 6, 2023, JJHCS has a privilege against the production of documents that would unjustifiably burden its First Amendment right to political association.  *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462-63 (1958).  In light of this First Amendment privilege, we asked SaveOnSP to explain why its request for documents concerning JJHCS's lobbying of government officials is permissible.  To date, you have provided no response to this request.  Please explain why SaveOnSP is entitled to documents and communications concerning JJHCS's lobbying efforts, notwithstanding the burden this request imposes on JJHCS's First Amendment protections.

### E.    RFP No. 25

SaveOnSP's RFP No. 25 seeks all documents and communications regarding any alleged harm caused by SaveOnSP to JJHCS, including JJHCS's allegations in Complaint ¶¶ 110, 115.  In response, JJHCS agreed to produce documents and communications relating to "the extent of the harm SaveOn has caused."  R&O to SaveOnSP's RFP No. 25.

During the meet and confer, you asked to confirm whether use of the phrase "extent of the harm," as compared to the phrase "any alleged harm," as used in the request, was intended to exclude any documents responsive to SaveOnSP's request.  There is no practical difference in the search terms or production that would follow from what was requested and what we have agreed to produce.  Thus, subject to its general and specific objections, JJHCS confirms that it will produce all documents responsive to SaveOnSP's request.

### F.    RFP Nos. 26 & 32

SaveOnSP's RFP No. 26 seeks "documents and communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum."  SaveOnSP's RFP No. 32 seeks all documents and communications "regarding any offer by JJHCS to provide to any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance funds available to a Patient."

With respect to Request No. 26, JJHCS agreed to produce documents sufficient to show "how JJHCS determines the amounts of copay assistance funds that JJHCS offers to

Meredith Nelson, Esq.
January 27, 2023
Page 10

Patients enrolled in CarePath." *See* R&O to RFP No. 29. However, JJHCS declined to produce any documents in response to Request No. 32 as, *inter alia*, irrelevant to the litigation.

During our meet and confer, you clarified that SaveOnSP is seeking not just documents showing how JJHCS determines the amount of copay funds it offers to patients, but also documents and communications concerning what amounts are actually paid to patients, including internal documents and communications regarding these amounts. In your letter, you contend that these amounts are "particularly relevant to both refuting JJHCS's allegations regarding viability as well as for contesting any damages amount put forward by JJHCS, as such overpayments would not be caused by SaveOnSP."

Internal communications regarding the amount of copay assistance funds paid to patients are not necessary for SaveOnSP to assess whether JJHCS pays out more in copay assistance than it has budgeted. Nor has SaveOnSP explained how such documents are otherwise relevant to any claims or defenses in this litigation. However, subject to the conditions laid out in Section II.F *infra* regarding RFP No. 28, JJHCS is willing to provide data regarding the actual amounts paid to patients in copay assistance, to the extent such data exists and can be located after a reasonable search. To the extent that data reflects that JJHCS is in fact paying more than the budgeted amount of CarePath funds to certain patients, JJHCS is willing to meet and confer further to determine if additional discovery is appropriate on those specific cases. Please confirm whether this compromise is acceptable to SaveOnSP.

G.     **RFP No. 28 & 29**

SaveOnSP's RFP No. 28 seeks a variety of categories of data relating to both Janssen Drugs (items a. through g.) and CarePath (items i. through m.). SaveOnSP's Request No. 29 seeks documents relating to CarePath's finances and the relationship between those finances and Janssen finances. In response, subject to general and specific objections, JJHCS agreed to produce Janssen Transparency Reports and invited SaveOnSP to confer on items i. through m. for RFP No. 28, and also agreed to produce documents sufficient to show "(1) how JJHCS determines the amount of copay assistance funds that JJHCS offers Patients enrolled in CarePath, (2) JJHCS's budget for copay assistance through CarePath, and (3) JJHCS's actual and projected annual costs for CarePath" for RFP No. 29. *See* R&Os to SaveOnSP's RFP Nos. 28 & 29.

You claim that the data SaveOnSP seeks in RFP Nos. 28 and 29 is relevant to its understanding of "JJHCS's return on investment for CarePath, how CarePath enables JJHCS to increase the costs of Janssen Drugs, and the financial impact of SaveOnSP on J&J more broadly." Further, during the meet and confer, you stated that SaveOnSP is entitled to discovery on the marketing and development of CarePath and other copay assistance programs for the *last thirteen years*, because Janssen increases drug prices for profit and uses CarePath to induce patients to take Janssen drugs, so any impact SaveOnSP has on CarePath does not constitute

Meredith Nelson, Esq.
January 27, 2023
Page 11

public harm.  Finally, you ask us to consider whether SaveOnSP's RFP Nos. 28 is similar to JJHCS's RFP No. 41, and whether there is potential for reciprocity.

After conferring internally, with to items a. through g. for RFP No. 28, we still do not see how those categories of documents relate to the claims and defenses in this case.

First, the items you request do not relate to the facts you seek to establish as outlined in your letter, namely: "JJHCS's return on investment for CarePath, how CarePath enables JJHCS to increase the costs of Janssen Drugs, and the financial impact of SaveOnSP on J&J more broadly."  Please explain how items like "actual and projected number of patients receiving Janssen drugs, the number of fills and dosages, the costs to manufacture Janssen Drugs, the sales and marketing budget for Janssen drugs, the price of Janssen Drugs, and the revenue received for Janssen Drugs" going back nearly thirteen years are relevant or necessary to determining the "return on investment for CarePath," "how CarePath enables JJHCS to increase the cost of Janssen Drugs," or "the financial impact of SaveOnSP on J&J more broadly."

Second,  the facts you seek to establish do not relate to the claims or defenses in this action.  Specifically, please explain how, even assuming there is a "return on investment on CarePath" or "CarePath enables JJHCS to increase the costs of Janssen Drugs," those facts would permit SaveOnSP to cause patients to breach their contracts with JJHCS and repurpose CarePath's funds for SaveOnSP's profit or would excuse the damages that JJHCS alleges SaveOnSP has caused.  Likewise, please explain how SaveOnSP's theoretical impact on "J&J more broadly" excuses those same damages.  There is no basis to convert this case from a claim brought against SaveOnSP for two specific causes of action into a free-wheeling exploration of all aspects of J&J's process of drug development and price.  Indeed, neither of the causes of action brought by JJHCS permit the type of discovery from JJHCS that SaveOnSP seeks.

With respect to items i. through m. for RFP No. 28, which relate to enrollment data for CarePath, JJHCS is willing to consider producing such data, to the extent it exists and can be located after a reasonable search, if SaveOnSP is willing to produce the categories of data requested in JJHCS's RFP No. 41 and 42, rather than just "data sufficient to show, for each Janssen Drug, the annual total amount of payments made by CarePath for participants advised by SaveOnSP."  *See* R&Os for JJHCS's RFP Nos. 41 and 42.  Please indicate whether SaveOnSP is willing to consider this compromise.

Finally, with respect to RFP No. 29, in addition to agreeing to produce documents showing the harm that results from SaveOnSP's conduct (*see, e.g.*, R&O to SaveOnSP's RFP No. 25), JJHCS has also agreed, subject to general and specific objections, to produce documents sufficient show (1) how JJHCS determines the amounts of copay assistance funds that JJHCS offers to Patients enrolled in CarePath, (2) JJHCS's budget for copay assistance through CarePath, and (3) JJHCS's actual and projected annual costs for CarePath."  R&O to SaveOnSP's RFP No. 29.  As noted above, we still do not see how the facts you seek to establish as outlined in your letter relate to the claims or defenses at issue, but we ask you to consider

Meredith Nelson, Esq.
January 27, 2023
Page 12

whether such data, in addition to the data JJHCS would be willing per the above compromise regarding RFP No. 28, is sufficient.

**H.      RFP No. 34**

SaveOnSP's Request No. 34 seeks documents and communications concerning JJHCS's consideration of SaveOnSP's services for its own employer-sponsored health plan. JJHCS declined to produce any such documents. As outlined in your letter, you indicated that "SaveOnSP understands that J&J or JJHCS conducted significant negotiations with SaveOnSP to use SaveOnSP's services for the health plan it provides for its own employees" but "[b]efore the parties could sign a contract, however, another division within J&J or JJHCS insisted that the negotiations cease."

As you are aware, J&J never signed a contract with SaveOnSP. Further, JJHCS itself was not involved in any such negotiations. Thus, RFP No. 34 is irrelevant to the claims and defenses in this action. JJHCS will not produce documents in response to this request.

**I.      RFP Nos. 36 & 37**

SaveOnSP's Request No. 36 seeks documents "sufficient to show the economic terms of JJHCS's retention of or agreements with any JJHCS Hub Entity or Care Path Coordinator regarding Care Path, including any assessment of the fair market value of those services." JJHCS has agreed to produce agreements for entities responsible for administering CarePath for the period of January 1, 2017 to the present, even if those entities are no longer involved in the administration of CarePath. *See* R&O to SaveOnSP's RFP No. 36. JJHCS is also endeavoring to produce work orders that document the cost of the services provided.

During the meet and confer, you clarified that in addition to these agreements, SaveOnSP is seeking internal communications regarding the value ascribed to the services provided by certain Hub Entities. In your letter, you again assert that in addition to the agreements themselves, SaveOnSP is seeking internal communications that "reflect[] the value of [those] services, including internal documents that may have been generated by JJHCS in the process of negotiating its contracts." Please explain how the value ascribed by JJHCS to the services provided its vendors or otherwise relevant to claims or defenses in this matter.

Relatedly, SaveOnSP's Request No. 37 seeks documents "sufficient to show the percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs." JJHCS declined to produce documents in response to this Request on the grounds that, *inter alia*, this Request is irrelevant to the subject matter at issue in this litigation. *See* R&O to RFP No. 37.

During the meet and confer, you explained that SaveOnSP believes it is actually more successful in getting patients to sign up for CarePath than Janssen is by itself. Therefore,

Meredith Nelson, Esq.
January 27, 2023
Page 13

you contend that SaveOnSP "provides a net benefit to J&J, because more patients are taking
Janssen drugs even if JJHCS is paying more in copay assistance."

We have investigated this issue further.   JJHCS does not keep statistics on
whether patients sign up for CarePath after being contacted by JJHCS or its vendors, which
moots this request regardless of its irrelevance.

**J.        Request No. 38**

SaveOnSP's Request No. 38 seeks documents and communications received by
JJHCS from any JJHCS Hub Entity or sent by JJHCS to any JJHCS Hub Entity regarding
SaveOnSP or CarePath.  As SaveOnSP indicates that it accepts JJHCS's offer to produce all
documents responsive to this Request regarding SaveOnSP, there appears to be no further
dispute on this issue.

* * *

We are available to meet and confer regarding the issues outlined above at your
convenience.  We look forward to your response.

Very truly yours,

*/s/Anthony C. LoMonaco*
Anthony C. LoMonaco

# Exhibit 55

# Ethics Opinion 381

# Responding to Third-Party Subpoena

**Introduction**

A lawyer's representation of a prospective client in responding to a third-party subpoena that seeks documents, tangible things, property, or testimony[1] ("Information") about a lawyer's existing client does not create a conflict of interest unless the lawyer's representation of either the prospective client or the client will be, or likely will be, adversely affected.[2] A lawyer's representation of a prospective client in responding to a third-party subpoena that seeks Information about a lawyer's former client does not create a conflict of interest unless the subpoena matter is the same or substantially related to the lawyer's former representation and the interests of the prospective client and former client are adverse.

**Applicable Rules**

- Rule 1.0 (Terminology)
- Rule 1.1 (Competence)
- Rule 1.3 (Diligence and Zeal)
- Rule 1.6 (Confidentiality of Information)
- Rule 1.7 (Conflict of Interest: General Rule)
- Rule 1.9 (Conflict of Interest: Former Client)
- Rule 1.10 (Imputed Disqualification: General Rule)

**Discussion**

In this opinion, the Committee considers whether a lawyer's representation of a client in responding to a third-party subpoena for Information that identifies specific parties by name (the "Prospective Client") creates a conflict of interest if the lawyer also represents or represented one of the named persons (the "Other Client") in unrelated matters.[3]

    *1. Current Client Conflict of Interest*

Typically, a lawyer may represent a Prospective Client, even if the Information sought relates to another client of the lawyer, without triggering a conflict under Rule 1.7(b).

Pursuant to D.C. Rule 1.7(b), a lawyer shall not represent a client in a matter if:

(1) That matter involves a specific party or parties and a position to be taken by that client is adverse to a position taken or to be taken by another client in the same matter even though that client is

unrepresented or represented by a different lawyer;

(2) Such representation will be or is likely to be adversely affected by representation of another client;

(3) Representation of another client will be or is likely to be adversely affected by such representation; [or]

(4) The lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests.[4]

A. Assessing Conflicts at the Outset of the Representation

A lawyer is required to assess conflicts on each proposed engagement at the outset of the representation.[5] Such assessment includes undertaking reasonable diligence concerning the subpoena. In assessing possible conflicts before undertaking the representation of the Prospective Client, a lawyer should consider the particulars of the proceeding out of which the subpoena issued and the information contained in the subpoena itself, including the time period, the scope of information sought, and the names of persons identified and their connection to the information sought. Whether additional diligence would be required is a question of fact and varies by the circumstances. For example, under certain circumstances, it might be necessary for the lawyer to review publicly available information or consult with the Other Client as part of the additional diligence effort.

Ordinarily, direct adversity will not exist between the interests of the Prospective Client and the Other Client because the issuer of the subpoena, not the subject of the subpoena, is adverse to the Prospective Client and a testimonial or documentary response by the Prospective Client does not constitute taking any "position" with respect to any of the subjects of the subpoena. Rather, the focus of the Prospective Client – and therefore the scope of the lawyer's representation – is the legality and propriety of the subpoena and the respondent's posting of proper objections to requests for production by the issuer of the subpoena.

The lawyer's representation of the Prospective Client may, however, create a conflict of interest if the representation of that client would likely adversely affect, or be adversely affected by, the representation of another client or personal interests of the lawyer. However, Rules 1.7(b)(2)-(4) do not obligate lawyers to assess the possibility of conflicts based upon rank conjecture and speculation but, rather, only to determine, based upon a reasonable objective belief, that certain facts will develop that would create a substantial risk that the lawyer's representation of a client will adversely affect or be adversely affected by ethical obligations to another client, former client, or herself.[6]

A few hypothetical examples may help to illustrate the applicable conflicts standard. Suppose a lawyer is asked to represent a hospital in producing medical records of a patient in response to a

third-party subpoena issued by an insurance company in a vehicular personal injury matter. The parties to the litigation are the at-fault driver's insurance company and the injured party, who is a client of the lawyer in a custody matter.[7] In representing the hospital, the lawyer would be advising it on the scope of the subpoena, any deficiencies, and any objections, including, for example, the relevance and responsiveness of any documents of the injured party (Other Client) in the hospital's possession.

At the outset of the representation, the lawyer does not know the contents of the medical records, and the lawyer's review of the complaint does not provide any more information about what the medical records of the hospital might reveal.  Typically, the lawyer may therefore undertake the hospital representation without it creating a Rule 1.7 conflict of interest.  The mere possibility that responsive medical records of the hospital that might undermine the injured party's claim exist and are produced does not give rise to a conflict of interest.  There may be circumstances, however, where the lawyer's knowledge about the facts surrounding the subpoena request and its implications might necessitate the lawyer's consultation with the Other Client (subject of the subpoena) to properly assess conflicts of interest before undertaking the engagement by the Prospective Client.[8]

Suppose that the lawyer knows through and in the course of representing the Other Client in the custody case that the Other Client has been unable to honor the temporary custody schedule because of injuries sustained from athletic activities. As a result of the custody matter, the lawyer has in her possession medical records from the hospital during the relevant subpoena time period reflecting those injuries.  Given the lawyer's knowledge about the cause of the injuries documented in the medical records, undertaking the prospective representation might well create a conflict of interest under Rule 1.7(b)(2) or (b)(3) or under Rule 1.7(b)(4) with the personal interest of the lawyer herself.

The Committee concludes that to determine whether a conflict of interest exists in undertaking the prospective engagement, the lawyer must assess whether the lawyer knows,[9] after performing reasonable diligence in evaluating the subpoena request as described above, that the Prospective Client possesses responsive information that, if produced, is or likely will be adverse[10] to the subject of the subpoena (the Other Client).[11] If so, then the lawyer must assess whether that knowledge will likely adversely affect the lawyer's representation of either client.  If it likely will, a Rule 1.7(b)(2) or (3) conflict exists.

If neither representation is likely to be adversely affected or the lawyer does not know in the first instance that the Prospective Client possesses responsive information that is likely to be adverse to the Other Client, the lawyer must nonetheless consider whether the lawyer has a personal conflict under Rule 1.7(b)(4).  That is, the lawyer must determine in undertaking the prospective matter whether the lawyer's professional judgment will or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own interests.[12]

A lawyer who concludes at the outset of the representation that undertaking the new engagement would create a Rule 1.7(b) conflict with the Other Client could still represent the Prospective Client

if the lawyer satisfies Rule 1.7(c)'s requirements that the lawyer obtain the informed consent from each affected client and reasonably believes that she can provide competent and diligent representation to each client.[13] A crucial initial consideration in this regard is whether the disclosure of the requisite information necessary to secure the informed consent of either the Prospective Client or the Other Client would violate the lawyer's Rule 1.6 duty to protect the confidences and secrets of each.[14] If so, then the lawyer could neither seek nor obtain informed consent and, as such, the lawyer would have to decline the prospective representation because the lawyer could not satisfy the Rule 1.7(c)(1) requirement.

If informed consent could be sought and were obtained, under Rule 1.7(c)(2), the lawyer must undertake both a subjective self–assessment and an objective analysis to determine whether, notwithstanding the clients' informed consent, the lawyer will be able to "provide competent and diligent representation" to each client.  That assessment would include consideration of whether the lawyer might pull punches during the new representation either out of concern over the impact on the lawyer's representation of the Other Client,[15] or because of the lawyer's own personal, financial or other interests.[16]

By way of further illustration, suppose a lawyer is asked to represent a bank that has received a Department of Justice subpoena for records of a party it is investigating for bribing a government official.  News reports indicate that the subject of the investigation is a close personal friend of the government official and also a business person whose business seeks zoning approval and a building permit within the jurisdiction of the government official.  The business is a long-standing client of the lawyer, which has generated substantial fees for the lawyer over time.  The lawyer currently represents the business in litigation alleging breach of a commercial contract.  The lawyer does not know at the outset of the prospective representation whether the bank possesses records reflecting payments from the business person to the government official, but the bank suspects that there might be some payments because of the frequency with which both transact at the bank and the time period involved.

While the lawyer does not have actual knowledge that the bank possesses any responsive documents damaging to the business person, nor does the lawyer represent the business person personally in a matter, the lawyer's long-standing and substantial professional relationship with the business might prevent the lawyer from providing competent and diligent representation to the bank.  For example, the lawyer might be overzealous in raising objections to production of the potentially damaging documents because they might adversely affect the principal of a long-standing and lucrative client, when the bank does not have any concerns about the production other than its own cost.  Under these circumstances, the bank representation could create a personal conflict of interest for the lawyer.  Barring a problem with the lawyer's ability to provide competent and diligent representation to each client, without the lawyer's actual knowledge that certain information harmful to the interests of the subject of the subpoena exists and is responsive, the mere possibility that documents responsive to the subpoena exist that are, or might be, adverse to the interests of the business person or the lawyer's Other Client, the business, and might be produced, is purely speculative.

Even if it later develops that the lawyer's speculation about the potentially damaging nature of the information produced results in the evidence being used adversely against the business, the subsequent factual confirmation of the lawyer's speculation would not change the analysis.[17] The production of Information adverse to a particular client would be an "unwitting" side effect of the representation of the Prospective Client, and not the lawyer's attempt to seek a result for the Prospective Client "to which another client is opposed."[18]< Nor would it be considered in hindsight to have been a Rule 1.7(b)(2) or (b)(3) conflict.

As discussed, although typically there is no ethical requirement that a lawyer disclose the prospective representation of a subpoenaed third-party to the Other Client (who is the subject of the subpoena), it might nonetheless be prudent for the lawyer to notify the Other Client of the prospective engagement – barring any Rule 1.6 (Confidentiality of Information) issues.  The consultation could permit the Other Client an opportunity to voice concerns about the lawyer's representation of the Prospective Client under the circumstances.

> B. Discovery or development of a conflict after commencement of the representation of the Prospective Client

If the lawyer undertakes the representation of the Prospective Client, a conflict under Rule 1.7(b)(2), (b)(3), or (b)(4) may nevertheless arise *after the representation commences* if the lawyer's discovery of potentially damaging information, prior to its production, might adversely affect the lawyer's ability to competently and diligently represent either the Prospective Client or the Other Client.[19]

Returning to the first example of the third-party subpoena to the hospital by an insurance company in a vehicular personal injury matter where the lawyer also represents Other Client in a custody matter but does not possess knowledge of the Other Client's medical issues: suppose after reviewing the medical records of the hospital for the Prospective Client for responsiveness and privilege, the lawyer discovers a note in the medical records that undermines, or would seem to undermine, the patient's injury claim.  Suppose further that the note reflects that the patient disclosed that he had participated in sports activities around the time of the accident and that such sports activities could have produced the same injuries being attributed to the accident.

As the lawyer learns information during the course of the third-party subpoena representation, through reviewing documents, discussions with the client, or otherwise, the lawyer might learn information prior to production that is harmful to the Other Client and might also conclude that such information is responsive to the subpoena.  Under such circumstances, continuing to represent the Prospective Client might adversely affect, or be adversely affected by, representation of the Other Client.[20] Or, the lawyer might conclude that there is a personal conflict pursuant to Rule 1.7(b)(4) because the lawyer's professional judgment on behalf of the subpoenaed client will be or reasonably may be adversely affected by her responsibilities to a third party or by her own interests.  Whether continuing the Prospective Client representation is a conflict of interest under Rules 1.7(b)(2) – (b)(4) is a matter of degree and a question of fact, which turns on whether a reasonable lawyer would

conclude that there would be a diminution in the quality of the representation of either the Prospective Client or the Other Client.

Should the lawyer conclude in the affirmative, he or she must assess whether the conflict is consentable and if so, seek informed consent from each affected client.[21] Such informed consent could be sought in advance in the engagement terms or sought contemporaneously.[22] If the lawyer concludes that she may not seek informed consent, either because the lawyer reasonably concludes that she would be unable to provide competent and diligent representation to each affected client given the nature and degree of the conflict, or because confidentiality obligations prevent her from disclosing information sufficient to obtain informed consent, she may retain conflicts counsel to address that portion of the representation if the client agrees and the retention is otherwise consistent with the Rules.[23] Otherwise, the lawyer must withdraw from the representation.[24]

### 2. Former Client Conflict of Interest

A lawyer's representation of a Prospective Client to produce documents or give testimony that might include information adverse to the interests of a former client might constitute a conflict of interest if the prospective engagement is "the same or a substantially related matter in which [the Prospective Client's] interests are materially adverse to the interests of the former client unless the former client gives informed consent."[25] The purpose of Rule 1.9, the former client conflicts rule, is twofold: first, to prevent "side-switching" and, second, to protect confidential factual information gained through or in the course of the prior representation from being used to the former client's detriment in the current representation.[26]

Side-switching occurs when parties are materially adverse to each other in a subsequent substantially related matter and the former client's lawyer begins representing a client in a matter adverse to the former client's interests.[27] In connection with a subpoena request, when a lawyer represents the Prospective Client either in a matter that is not adverse to the former client (subject of the subpoena) or in a matter that is not the same as nor substantially related to the matter in which the lawyer formerly represented the Other Client, the prohibition on side-switching is not implicated.

With respect to client confidences, the rule focuses on the risk that the former client's confidential information may be used to benefit another client in a subsequent representation to the former client's detriment. The rule assures the former client that information confided to the lawyer will not be used by the lawyer against the former client in a subsequent matter without the former client's consent. The rule does not concern the possibility that some other party may later have information detrimental to the former client.[28] In that circumstance, the lawyer is able to represent the Prospective Client to respond to a third-party subpoena involving the former client without running afoul of Rule 1.9.

**Conclusion**

A lawyer's representation of a Prospective Client does not create a conflict of interest unless: (1) the lawyer knows, after performing reasonable diligence in evaluating the subpoena request, that the Prospective Client possesses responsive information that, if produced, is or likely will be adverse to the Other Client, and such knowledge likely will adversely affect the lawyer's representation of either client; or (2) the lawyer's professional judgment will or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or other interests as a result of the prospective engagement.  Reasonable diligence prior to undertaking the new engagement includes considering the particulars of the proceeding out of which the subpoena issued and the information contained in the subpoena itself, including the time period, the scope of information sought, and the names of persons identified and their connection to the information sought.  It might also include review of publicly available information or consultation with the Other Client depending on the knowledge of the lawyer concerning the circumstances surrounding the subpoena request and its implications. Whether additional diligence would be required is a question of fact and varies by the circumstances.

A lawyer who undertakes a representation of a Prospective Client having concluded that there was not a conflict at the outset of the representation and who, despite reasonable diligence, does not discover a conflict throughout the engagement, has not violated Rule 1.7 if responsive Information produced is subsequently used by another party in a manner that is damaging to the Other Client.

However, if a lawyer discovers Information potentially damaging to the Other Client during the course of the Prospective Client engagement and prior to production, the lawyer must assess from both an objective and subjective perspective whether the lawyer's ability to competently and diligently represent either the Prospective Client or the Other Client might be comprised. If such Information readily appears to be, or reasonably will be, damaging to the lawyer's Other Client (not speculatively), then it is a conflict that develops after commencement of the engagement, for which informed consent from each affected client would be required.  If informed consent is not obtained, then conflicts counsel would have to be retained, if permissible, or the lawyer must withdraw.

Finally, a lawyer's representation of a prospective client in responding to a third-party subpoena that seeks Information about a lawyer's former client does not create a conflict of interest unless the subpoena matter is the same as or substantially related to the lawyer's former representation and the interests of the prospective client and former client are adverse.

Published: February 2021

---

1. The reference to documents, physical things, property, or testimony in this Opinion is intended to incorporate the same terms and definitions as contained in Federal Rule of Civil Procedure 34.
2. This Opinion does not address instances where the lawyer is the recipient of a third-party subpoena for his or her own records or for the records of the lawyer's firm. See D.C. Legal Ethics Opinion 288 (1999).
3. A lawyer reviewing a subpoena that does not specify names, but only a certain time period, will ordinarily be unable to

identify a conflict at the outset of the representation, but might become aware of one after commencement of the representation. See section 1.B. infra.

4. D.C. Rule 1.0(h) defines "matter" broadly to mean "any litigation, administrative proceeding, lobbying activity, application, claim, investigation, arrest, charge or accusation, the drafting of a contract, a negotiation, estate or family relations practice issue, or any other representation, except as expressly limited in a particular rule." Rule 1.0 (h).

5. Rule 1.7 and see, e.g., Comments [7], [19], and [29].

6. See Rule 1.7 Comments [7], [9], and [19]. See also D.C. Legal Ethics Opinion 356 (2010) ("a conflict must be clear, specific and not based on mere speculation."); Rule 1.7(d) (the standard is "reasonably foreseeable" when assessing whether a conflict could have been anticipated at the outset of the representation).

7. The Committee does not see any meaningful distinction in the conflicts analysis if the request for production of medical records is in the form of a pre-complaint letter request rather than a subpoena issued out of litigation.

8. See, e.g., Comment [19] to Rule 1.7.

9. Rule 1.0(f) defines "knowledge" or "knows" as "actual knowledge of the fact in question," which "may be inferred from the circumstances."

10. Whether or not information known to the lawyer is "adverse" or "harmful" is left to the reasonable judgment of the lawyer.

11. While Rule 1.3(b)(2) provides that "[a] lawyer shall not intentionally prejudice or damage a client during the course of the professional relationship," the act of producing responsive information on behalf of another client that might be harmful to a lawyer's client does not run afoul of Rule 1.3(b)(2) because it is not in the matter in which the lawyer represents the client and "Rule 1.3 is not meant to govern conflicts of interest, which are addressed by Rules 1.7, 1.8, and 1.9."

12. See Rule 1.7(b)(4) infra as quoted in the body of the Opinion.

13. Rule 1.0(e) defines informed consent as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably alternatives to the proposed course of conduct." Such required "information and explanation" varies by circumstances and is subject to a variety of factors, including the sophistication, vel non, of the person granting the informed consent.

Rule 1.7(c) provides that a lawyer may represent a client notwithstanding a conflict if "(1) each potentially affected client provides informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation; and (2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client under the circumstances."

14. Moreover, pursuant to Rule 1.18(b), "Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as permitted by Rule 1.6." Thus, the duty of confidentiality owed to a prospective client is coextensive with the duty owed to an actual client. In some instances, the mere fact of the representation or prospective representation may constitute a Rule 1.6 secret, further potentially complicating the ability of the lawyer to obtain the requisite informed consent.

15. As explained in D.C. Legal Ethics Opinion 380 (2021), "'Punch pulling' is a boxing term that refers to a fighter purposefully hitting his adversary with less than full force – as if the fighter pulled back a punch before making contact. In the professional responsibility context, a punch pulling conflict refers to circumstances where a lawyer is less zealous in advocating for, or advising, a client out of concern over the impact on the lawyer's representation of another client."

16. See Rules 1.1, 1.3, and 1.7(c)(2) and see, e.g., comment [7] ("The underlying premise is that disclosure and informed consent are required before assuming a representation if there is any reason to doubt the lawyer's ability to provide wholehearted and zealous representation of a client....").

17. See D.C. Legal Ethics Opinion 356 (2010).

18. See Rule 1.7, Comment [19].

19. Because of the nature of the third-party representation, a conflict of interest will not typically arise under Rule 1.7 (b)(1) because, as stated previously, raising objections to a subpoena or providing responsive documents is not adverse to the subject of the subpoena (the Other Client) but, rather, is adverse to the issuer of the subpoena. In the unusual circumstance that a Rule 1.7(b)(1) conflict arises in connection with responding to a third-party subpoena, the conflict might be considered under the "thrust upon" scenario pursuant to Rule 1.7(d). D.C. Legal Ethics Opinion 356 might also be instructive in this regard. But, see, footnote 22 infra.

20. See Rule 1.7(b)(2) or (b)(3).

21. See Rule 1.7(c) and Rules 1.1 and 1.3.

22. While advance waivers of conflicts of interest are permissible under certain circumstances, they are more susceptible to failing the informed consent standard than contemporaneous consents. See Rule 1.7, Comment [31]. See also D.C. Legal Ethics Opinion 309 (2001) ("The less specific the circumstances considered by the client and the less sophisticated the client, the less likely that an advanced waiver will be valid."). A client may also revoke valid consents. D.C. Legal Ethics Opinion 317 (2002).

23. "Conflicts counsel" has the same definition as set forth in endnote 11 of D.C. Legal Ethics Opinion 380 (2021). ("'Conflicts counsel' is the designation generally applied to the retention of a lawyer from a different firm engaged solely to represent the client on the discrete, severable aspect of the matter that gave rise to the conflict…").

24. Rule 1.7(d) will typically not be available to a lawyer who concludes that a conflict has arisen during a representation in this context because a conflict arising under Rule 1.7(b)(2)-(4) is not consentable under Rule 1.7(d). As to withdrawal, see Rule 1.16 (Declining or Terminating Representation).

25. Rule 1.9 states: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent."

26. See Rule 1.9, Comments [2] and [3]; D.C. Legal Ethics Opinion 272 (1997) ("purpose of the rule is to assure the preservation of attorney-client confidences gained in the prior representation and to preserve the reasonable expectations of the former client that the attorney will not seek to benefit from the prior representation at the expense of the former client"); and Brown v. District of Columbia Board of Zoning Adjustment, 486 A.2d 37 (D.C. 1984) (en banc).

27. Cf, Rule 1.9, Comment [2]: "[A] lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client."

28. See Rule 1.9, Comment [3]: "Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying."

