# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

May 14, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

>    Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
>    **No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Defendant Save On SP, LLC ("SaveOn"), we write in reply to Plaintiff Johnson & Johnson Health Care Systems, Inc.'s (with its affiliates, "J&J") opposition to SaveOn's motion to compel J&J to produce responsive documents in the possession of its vendor TrialCard, Inc. ("TrialCard"), related to work performed by TrialCard for J&J.

J&J's opposition confirms that Your Honor should grant SaveOn's motion.

*First*, SaveOn showed that J&J's Master Services Agreement ("MSA") gives it legal control over TrialCard's documents relating to TrialCard's work for J&J. J&J barely addresses the text of the MSA, and most of its arguments go to its practical ability to access the documents, not its legal control of those materials.

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

*Second*, SaveOn showed that J&J has the practical ability to obtain TrialCard's documents, as it has done multiple times in this litigation for its own advantage. J&J asks Your Honor to not apply the "practical ability" test, but that test is an independent basis to determine control, and J&J does not seriously dispute the facts showing that it has practical control here.

*Third*, J&J has no substantive basis to resist production of the documents that SaveOn seeks in TrialCard's possession: (1) documents from the "refresh" period of July 1, 2022 to November 7, 2023 of the sort that J&J already agreed to produce from the earlier discovery period; and (2) additional documents regarding TrialCard's involvement in the CAP Program, of the sort that Judge Waldor and Your Honor already compelled J&J to produce. These documents are plainly relevant and J&J does not show that producing them would be unduly burdensome to J&J.

*Finally*, if Your Honor determines that J&J does not control TrialCard's documents, SaveOn showed why Your Honor should require Patterson Belknap Webb & Tyler LLP ("Patterson") to impose an ethical wall between its attorneys representing J&J and those representing TrialCard. J&J's main objection is that SaveOn does not show that Patterson should be disqualified, but SaveOn does not seek that relief—only an ethical wall to prevent future violations of the Discovery Confidentiality Order ("DCO").

<u>**Argument**</u>

**I.     J&J Controls TrialCard's Documents Regarding TrialCard's Work for J&J**

A party must produce relevant documents within its "possession, custody, or control." Fed. R. Civ. P. 34(a). Control is construed "very broadly" under the federal rules, *Haskins v. First Am. Title Ins. Co.*, 2012 WL 5183908, at *1 (D.N.J. Oct. 18, 2012); a party has control over documents if it has (1) "the legal right" to the documents, or (2) the "ability to obtain the documents from another source upon demand." *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004). Under either test, J&J has control over TrialCard's documents relating to its work for J&J.

Hon. Freda L. Wolfson                                                    Page 3

### A.    J&J Has a Legal Right to TrialCard's Documents

J&J has control under Rule 34(a) of TrialCard's documents related to its work for J&J under the "legal right" test because "a contractual obligation requires a non-party [TrialCard] to provide requested documents to the litigating party [J&J] upon demand." *Haskins*, 2012 WL 5183908, at *1; *see also Moretti v. Hertz Corp.*, 2018 WL 4693473, at *2 (D. Del. Sept. 30, 2018) ("A contractual right to obtain documents in the possession of a third party can constitute control for Rule 34 purposes.") (collecting cases).

The MSA, under which TrialCard performs its work for J&J, gives J&J  MSA § 17.1. Those documents include ████████ ██████████████████████████ ████████████████████████ ██████████████████████ *Id*. The MSA also requires Trial-Card ██████████████████████████████████ ████████████████████████████████ ████ *Id.* § 8.2. As J&J admits, it has "asked TrialCard to produce itself some subset of documents in this litigation." Opp. 12.

This easily gives J&J legal control over the documents at issue. Mot. 13-15. *See Haskins*, 2012 WL 5183908 (finding contract "plainly" established litigant's control over agent's documents where it required agent to maintain books and records, gave litigant the right to examine the books and records, and required agent to cooperate in litigation); *Calhoun v. Invention Submission Corp.*, 2021 WL 640759, at *2 (W.D. Pa. Jan. 13, 2021) ("The Court concludes that based upon [litigant's] right to examine the business records of any [non-party], [litigant] has, or had, sufficient control of any insurance policies in which it was named, and therefore must undertake efforts to

Hon. Freda L. Wolfson                                                      Page 4

obtain copies…"); *Hertz Corp.*, 2018 WL 4693473, at *3 (contractual provisions granting litigant "the right 'to inspect' and 'to examine' [third party's] 'records' and 'any-other information required by [litigant] with respect to the' business [third party] engages in with [defendant]" sufficient to establish control).

In its opposition, J&J fails to show that the plain language of the MSA does not give it legal control over the requested documents.

*First*, J&J asserts that the MSA gives it the right to  Opp. 10 (citing MSA § 17.1). The MSA does much more than that. MSA § 17.1—effectively all documents relating to that work. The MSA also does not limit J&J to reviewing "whether Trial-Card is performing under the agreement," Opp. 10—it MSA § 17.1; *cf. Hertz Corp.*, 2018 WL 4693473, at *3 (rejecting plaintiff's argument that its access was limited to audit purposes because contract did not specify that its right to obtain documents was limited to any "particular purpose[] set forth in the agreements"). The MSA additionally requires TrialCard MSA § 8.2; *see also id.* § 17.2. This estab-

Hon. Freda L. Wolfson                                                                    Page 5

lishes J&J's legal control. *See Haskins*, 2012 WL 5183908, at *4 n.4 (D.N.J. Oct. 18, 2012) (con-

tractual agreements to cooperate in litigation "further demonstrate" control because non-parties

must comply with requests to share documents.)

    *Second*, J&J asserts that SaveOn fails to show "that JJHCS ordinarily requests internal

TrialCard communications in the normal course of business." Opp. 12. Even were this true (it is

not, *see* Part I.B), it would go only to J&J's practical ability to access the documents, not to its

legal right to do so. The "legal right" test is separate from the "practical ability" test and provides

an independent and sufficient basis for Your Honor to find control. *See Mercy Catholic Med. Ctr.*,

380 F.3d at 160 ("In the context of Fed. R. Civ. P. 34(a), so long as the party has the legal right ***or***

ability to obtain the documents from another source upon demand, that party is deemed to have

control" (emphasis added)); *Invention Submission Corp.*, 2021 WL 640759, at *2 ("documents are

considered to be under a party's control when that party has the right, authority, ***or*** practical ability

to obtain the documents from a non-party in the action." (emphasis added)). The legal right test

thus does not look at the "normal course of business," Opp. 12, so J&J's argument on this point is

irrelevant.[1]

---

[1] J&J's assertion that the MSA ███████████████████████████████████████████████
███████ Opp. 3, 13 n.7, is beside the point, as "[t]he rights" SaveOn asks "the Court [to] order[]
[J&J] to exercise arise from contract, not from any purportedly broader princip[al]-agent relation-
ship." *Hertz Corp.*, 2018 WL 4693473, at *4 (citing *McKesson Corp. v. Islamic Republic of Iran*,
185 F.R.D. 70, 78 (D.D.C. 1999) ("[W]hile the control required for Rule 34 purposes may be
established by virtue of a principal-agent relationship, a Rule 34 request only requires a showing
of control, not proof of a principal-agent relationship.")). To the extent Your Honor looks to the
language of the contract, under New York law ███████████████████ such "labels are
not dispositive, rather the facts and circumstances of the parties' relationship determines whether
an agent-principal relationship existed." *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp.
2d 94, 103 (S.D.N.Y. 2013). The MSA also ███████████████████████████ and so
lacks the "express and unambiguous" language that New York courts generally credit to disclaim
agency. *See Supreme Showroom, Inc. v. Branded Apparel Grp. LLC*, No. 16 CIV. 5211 (PAE),

Hon. Freda L. Wolfson                                                                                    Page 6

     *Third*, J&J asserts that HIPAA and the MSA prevent it from ████████████

████████████████████████████████████████. Opp. 12. Even if true (and

it is not), this would not affect whether J&J has **control** over such information; J&J could still

direct TrialCard to produce that information to SaveOn and restrict PHI access to the parties' out-

side litigation counsel—as J&J admits that it already has, *id.*, directing TrialCard to produce the

results of various benefits investigations and transaction-level data to SaveOn. *See generally An-

drews v. Holloway*, 256 F.R.D. 136, 145 n.13 (D.N.J. 2009) (where documents are "in the posses-

sion of others (such as a financial institution, attorney, business associate, spouse …), [defendant]

has the obligation to … authorize Plaintiffs to obtain the documents from such source").

     J&J's assertion is incorrect in any event. J&J fails to explain how HIPPA might bar its

vendor from sharing information with J&J that the vendor obtained on J&J's behalf. While the

MSA states that ████████████████████████████████████████

████████████████ MSA § 5.3.2—and ████████████████████████████████,

*id.* § 5.3.3 ████████████████████████████████

████████████████████████████████); *id.* § 17.1

████████████████████████████████████████

████████████████████████████████). In

_____

2018 WL 3148357, at *9 (S.D.N.Y. June 27, 2018) (collecting cases). Calling TrialCard an "inde-
pendent contractor" does not disclaim agency, as independent contractors can also be agents. *See
CBS Inc. v. Stokeley-Van Camp, Inc.*, 522 F.2d 369, 375 n.14 (2d Cir. 1975) ("[I]t is only collo-
quially that the terms independent contractor and agent are necessarily distinct.").

fact, discovery shows that TrialCard shared PHI with J&J for approximately 15,000 Stelara patients and approximately 8,000 Tremfya patients. Ex. 56 (JJHCS_00152367).[2] And, of course, any self-imposed limit on J&J's ability to view PHI would not affect its control of documents without PHI.

    *Fourth*, only one of J&J's cited cases even applied the legal control test, *Inline Connection Corp. v. AOL Time Warner Inc.*, 2006 WL 2864586 (D. Del. Oc. 5, 2006) (cited Opp. 10, 13 n.7, 14), and it is easily distinguishable. Opp. 10-12. The contract in *Inline* required a non-party to provide information only "where feasible" and did not require it to cooperate with the requesting party in litigation, *Inline Connection Corp.*, 2006 WL 2864586, at *4; the MSA here, in contrast,

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████[3] In addition, in *Inline* the non-party—defendants' competitor—had previously refused to provide information defendants requested; there is no concern here that TrialCard—J&J's vendor—would not provide information to J&J or produce it at J&J's direction. *Inline*, 2006 WL 2864586, at *4. J&J's other

---

[2] This spreadsheet was produced natively; PHI is accessible in links in that spreadsheet. Ex. 56 includes a PDF of the original spreadsheet and an excerpt of a linked spreadsheets containing PHI. SaveOn can provide the native file at Your Honor's request.

[3] J&J quotes *Inline* for the proposition that a contract that authorizes a party to access a non-party's information, "without more, is insufficient to establish legal control in the Third Circuit." Opp. 10 (citing *Inline*, 2006 WL 2864586 at *4). That assertion was *dicta*, as there was no such right of access in the contract at issue there. *Inline*, 2006 WL 2864586 at *3 ("[A] right of access … is irrelevant to the determination of whether [defendants] presently have or had legal control of the … information because there is no evidence that such a contractual provision exists").

cited cases, Opp. 11, do not apply the legal control test or examine contractual language, and so are irrelevant.[4]

   *Finally*, J&J asserts that SaveOn refused to confer with it about "about any specific subset of documents" which "makes it impossible" to determine if the MSA gives J&J control over "some more limited subset of documents." Opp. 13-14. In reality, SaveOn negotiated with TrialCard for months over the documents at issue and TrialCard refused to produce them. *See, e.g.,* Ex. 57 (Dec. 6, 2023 Letter) (TrialCard refusing to refresh its document productions through November 7, 2023); Ex. 58 (Dec. 22, 2023 Letter) (TrialCard refusing to add custodians). J&J's counsel— the same counsel representing TrialCard in those negotiations—knows exactly what those documents are. SaveOn asked J&J if it had control over those documents, Ex. 53, and J&J denied that it controlled them all, Ex. 5. If J&J believed that it controlled a subset of the documents, J&J should have identified them during the month it took to reply, but it did not. The parties are squarely at impasse on whether J&J has legal control over TrialCard's documents related to TrialCard's work for J&J—and it does.

### B.       J&J Has the Practical Ability to Obtain the Requested Documents

   The "practical ability" test provides an independent and sufficient basis under Rule 34(a) to find that J&J has control over TrialCard's documents concerning its work for J&J because J&J has repeatedly shown that it can obtain such documents. "[A] company's ability to demand and

---

[4] *See Princeton Digital Image Corp. v. Konami Dig. Ent. Inc.*, 316 F.R.D. 89, 92 (D. Del. 2016) (finding no practical control where plaintiff argued that defendant has been able to obtain documents in the past); *Maniscalco v. Brother Int'l Corp.*, 2010 WL 762194, at *11 (D.N.J. Mar. 5, 2010) (finding no practical control where plaintiff had requested documents but there was "not one instance in which documents of the nature sought were *ever* supplied" by the defendant); *Block v. Jaguar Land Rover N. Am.*, 2017 WL 11696617, at *1-2 (D.N.J. Aug. 23, 2017) (finding no practical control because "Plaintiffs have pointed to no evidence that [defendant] has control over the specific documents at issue, nor access to them in the ordinary course of business").

have access to documents in the normal course of business gives rise to the presumption that such documents are in the litigating corporation's control." *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 443 (D.N.J. 1991); *see also* 7 Moore's Fed. Pr.—Civ. § 34.14 (2024) ("[C]ontrol by a party over the person or entity in possession of the documents is sufficient to require that the party produce the documents.").

This reason why is simple fairness: "Where the relationship is such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party." *Gerling Int'l Ins. v. Comm'r*, 839 F.2d 131, 141 (3d Cir. 1988); *see also Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 396 (D.N.J. 2011) ("Sandoz cannot use its foreign affiliation with Lek as both a sword and a shield. Sandoz has relied on Lek … [but] now attempts to block discovery of these very activities because it claims this information is not 'reasonably available.' … Sandoz cannot have it both ways. Common sense and traditional notions of justice demand that Sandoz is required to provide discovery about Lek in this litigation.").

As SaveOn showed, J&J has strategically controlled production of TrialCard's documents, readily establishing its practical ability to obtain them. J&J used this power defensively, for example by directing TrialCard to make productions that it argued satisfied J&J's production obligations. *See, e.g.*, Mot. 6 (TrialCard "already agreed" to produce "through JJHCS" data that SaveOn sought from J&J); *id*. at 7 (J&J promised a forthcoming TrialCard production of Benefits Investigations to avoid its own production in response to SaveOn's request). J&J has wielded this power offensively, for example by suggesting that TrialCard will produce approximately 1,500 call re-

cordings identified by SaveOn only if SaveOn produces to J&J approximately 30,000 call record-

ings—which J&J termed an "equivalent production." *See* Ex. 59 (Mar. 26, 2024 Letter); Ex. 60

(Apr. 23, 2024 Letter); Ex. 61 (May 7, 2024 Letter). J&J has also used this power to circumvent

the discovery process, obtaining documents from TrialCard that TrialCard did not provide to

SaveOn that J&J then used to surprise a deponent in the litigation. *See* Mot. 9-10 (TrialCard pro-

duced call recordings "at JJHCS's request" only after J&J used them at a deposition of SaveOn's

witness). J&J clearly has "easy and customary access to [TrialCard's] documents" and can use

them "for its usual business needs," which include "to provide highly relevant documents in this

litigation." *Camden Iron*, 138 F.R.D. at 443-44. J&J's self-serving direction of TrialCard's pro-

ductions is precisely the gamesmanship that the practical ability test exists to remedy.

  J&J's arguments to the contrary are unavailing.

  *First*, J&J asserts that the Third Circuit does not recognize the practical ability test, citing

two non-binding cases from the District of Delaware[5] and one secondary source.[6] Opp. 14. In re-

ality, the Third Circuit recognizes that test, *see Mercy Cath. Med. Ctr. v. Thompson*, 380 F.3d 142,

---

[5] J&J's cases are also distinguishable. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005) noted that "parent corporations have been required to produce documents held by their subsidiaries" but that "the converse is not true. A subsidiary, by definition, does not control its parent corporation." *Id*. But the court did not apply the "practical ability" test under Rule 34(a): the case dealt with a plaintiff trying to force a non-party to gather documents from its parent company, and the court held that Rule 34(a) did not deal with control between two non-parties. *Id. Inline Connections*, in turn, relied on *Power Integrations. See Inline Connections Corp. v. AOL Time Warner Inc.*, 2006 WL 2864586, at *2 (D. Del. Oct. 5, 2006) ("More importantly, Inline's assertion that the law of the Third Circuit does not reject the Second Circuit's 'practical ability' approach is clearly contradicted by *Power Integrations, Inc.*").

[6] The secondary source J&J cites, *Commentary on Rule 34 and Rule 45 "Possession, Custody, or Control,"* 25 Sedona Conf. J. 1, 28 (2024), affirmatively recognized that some courts in the Third Circuit apply the practical ability test, citing *Barton v. RCI, LLC*, 2013 WL 1338235, at *6 (D.N.J. Apr. 1, 2013) (noting "[i]f the producing party has the legal right ***or practical ability*** to obtain the

Hon. Freda L. Wolfson                                                                     Page 11

160 (3d Cir. 2004) ("In the context of Fed.R.Civ.P. 34(a), so long as the party has the legal right

or ability to obtain the documents from another source upon demand, that party is deemed to have

control"), and the District of New Jersey regularly applies it, *see Camden Iron*, 138 F.R.D. at 443

("Control is defined as the legal right, authority or ability to obtain documents upon demand.");

*see also Sanofi-Aventis*, 272 F.R.D. at 395 ("Direct, legal control over the related entity is not

required… The availability of information in the possession of a related company turns on the facts

of each case, in particular as they relate [to] the 'control' standard of Rule 34(a)."). J&J's cases

show, at most, that the District of Delaware interpreted *Gerling,* 839 F.2d 131, more restrictively

than did the District of New Jersey. *Compare Power Integrations,* 233 F.R.D. at 145 (interpreting

*Gerling* to say "the separate and distinct corporate identities of a parent and its subsidiary are not

readily disregarded, except in rare circumstances") *with Camden Iron*, 138 F.R.D. at 441-42 (in-

terpreting *Gerling* to provide five grounds to establish control, including "access to documents

when the need arises in the ordinary course of business").[7]

  *Second*, J&J asserts that courts fail to find practical control where the party and non-party

are not corporate affiliates and that TrialCard is an "independent company." Opp. 3, 15. But courts

look to whether the relationship between the parties is "***akin to*** a case where an entity has been

found to have control over the records of its parent, subsidiary, or sister corporation." *In re Novo

Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 502-03 (D.N.J. 2021) (emphasis added). And the facts

---

documents, then it is deemed to have 'control' … even if the documents are actually in the pos-
session of a non-party" (emphasis added)).

[7] Even were this relevant, it is no longer accurate. The District of Delaware has expanded its use
of the practical ability test in the past twenty years. *See Moretti v. Hertz Corp.*, 2018 WL 4693473
at *5 (D. Del. Sept. 30, 2018) (finding "some support in this District" that courts can inquire into
a party's practical ability to obtain documents to determine control).

show that TrialCard is anything but "independent" of J&J. Among other things: (1) 

, MSA § 1.8; (2)

, *id.* § 1.9; (3)

, *id.* § 5.3.1; (4)

; Ex. 62 at -992 (JJHCS_00073990); (5)                                                   ,

Ex. 63 (JJHCS_00112408) (

); (6)                                                                    ,

Ex. 64 § 1.d (JJHCS_00045387); (7) J&J regularly "facilitates" or directs TrialCard to produce

documents in this litigation, Mot. 15-16; and (8) J&J asserts that TrialCard's employees are the

"functional equivalent" of J&J's employees, Ex. 31 at 4. This is more than enough to establish

J&J's practical ability to obtain the relevant documents from TrialCard. *See Sanofi-Aventis*, 272

F.R.D. at 395 (finding "evidence of an even closer relationship" than "corporate sisters" sufficient

to find control where non-party's "website projects itself to the general public as a 'Sandoz' com-

pany" and the "corporate logo of Sandoz is prominently displayed in several locations throughout

its homepage").

  *Third*, J&J asserts that SaveOn "identifies no types of documents suppressed by TrialCard

at JJHCS's behest or based on their content." Opp. 16. SaveOn does identify them: TrialCard

refuses to produce the documents at issue here and there is ample evidence that TrialCard generally

produces or withholds documents at J&J's behest. For example, TrialCard refused to produce Ben-

efits Investigations, Ex. 65 (Sep. 29, 2023 Letter), until J&J announced at a discovery conference

before Judge Waldor that, as an "additional concession" to avoid being ordered to produce CAP

documents, it would "give [SaveOn] through a production from TrialCard, which is our vendor,

who we also represent and is subject to a subpoena, we'll give them benefits investigations." Oct. 30, 2023 Hr'g Tr. at 62:7-13.[8] TrialCard similarly refused to produce recordings of calls between it and SaveOn until after it provided 16 recordings to J&J for J&J's surprise use in a November 10, 2023 deposition of SaveOn's witness. *See* Ex 42 at 5 (confirming that TrialCard produced these 16 call recordings on January 12, 2024 "at JJHCS's request"). J&J also directed TrialCard to produce patient claims data to fulfill J&J's obligation to produce such data for relevant Janssen drug. *See* Ex. 44 at 24-25; Ex. 54 at 11-12 (promising J&J would produce such data); Ex. 24 at 17-19 (stating TrialCard "has already agreed to produce through JJHCS" relevant claims data). This strong inference of control is bolstered by J&J's contractual obligation to ████████████████ ██████████████████, *see* MSA § 17.2, as TrialCard has no financial incentive to withhold documents while J&J has both a financial and strategic incentive for it to do so.

*Fourth*, J&J asserts that SaveOn "has long been on notice to (and has not objected to) TrialCard's search parameters." Opp. 16. Not so. After extensive negotiation, SaveOn and Trial-Card reached impasse regarding TrialCard's custodians and the time frame of its production. Ex. 66 (Jan. 12, 2024 Letter); Ex. 6. J&J cites a July 19, 2023 letter from TrialCard identifying search terms that SaveOn purportedly did not object to, J&J Ex. 29, but it omits a July 26, 2023 letter back from SaveOn in which SaveOn continued to object to TrialCard's search terms, including by asking TrialCard to add four terms ("zero out-of-pocket," "zero OOP," "no OOP," and "no

---

[8] J&J's assertion that TrialCard's production of "over 4,800 benefits investigations" is evidence that TrialCard produces "documents without regard to whether those documents are helpful or harmful to JJHCS," Opp. 16, is completely wrong. TrialCard refused to produce the benefits investigations until J&J directed it to produce them, and only after J&J determined that doing so might help it argue against having to produce other documents as well.

out-of-pocket") and to identify additional custodians, Ex. 67 (Jul. 26, 2023 Letter), which Trial-Card refused to do. *See* Ex. 26 at 2-3.

*Fifth*, J&J mischaracterizes SaveOn's position, saying that SaveOn argues "that Trial-Card's purportedly 'significant role' in the subject matter in this litigation "independently" confers on JJHCS control over [TrialCard's] documents." Opp. 16 (citing Mot. 16). SaveOn did not say this. SaveOn said: "The overwhelming evidence that J&J can obtain documents from ***TrialCard, which plays a 'significant role' in the subject matter in this litigation***, is an independently suffi-cient basis to conclude that J&J has possession, custody or control over TrialCard's documents regarding TrialCard's work for J&J." Mot 16 (emphasis added). That is, SaveOn described Trial-Card as "play[ing] a significant role in the subject matter in this litigation"; the independent basis for Your Honor to grant SaveOn's motion is "[t]he overwhelming evidence that J&J can obtain documents from TrialCard."

*Finally*, J&J says that "no authority" holds that its argument that TrialCard employees are the "functional equivalent" of J&J employees for purposes of privilege means that J&J has control of TrialCard's documents. Opp. 17. But whether J&J can in fact control TrialCard's employees is a factor in determining if it has the practical ability to obtain TrialCard's documents. In *Sanofi-Aventis*, for example, the court found practical control based in part on the fact that "Sandoz lists several Lek witnesses as 'Sandoz employee[s]' in its privilege log" as evidence for a finding of control. 272 F.R.D. at 395; J&J has asserted that—as a matter of fact—TrialCard's employees who work on J&J matters are the functional equivalent of J&J's own employees and J&J has claimed privilege on that basis. This is strong additional evidence that J&J has practical control over Trial-Card's documents concerning TrialCard's work for J&J. *See id.* at 396 ("Sandoz asserts privilege over communications held with Lek scientists because they were held with 'Sandoz employee[s].'

Yet it now argues that Lek is an entirely distinct legal entity for purposes of Rule 30(b)(6). Sandoz

cannot have it both ways."). J&J points to a provision in the MSA that states that ████████

██████████████████████████████████████████████████████████████

Opp. 17 (quoting MSA § 12), but this says nothing about whether TrialCard's employees will be

the functional equivalent of J&J's employees.

## II.   The Requested Documents are Relevant and Not Burdensome

Once Your Honor determines that J&J controls TrialCard's documents, she should then

consider if the documents that SaveOn seeks are relevant and if J&J raises any valid objection of

burden or proportionality. The documents are clearly relevant—they seek information on topics

that the Court and/or Your Honor has already ruled are relevant—and J&J makes no serious argu-

ments that production would be burdensome or disproportionate.

### A.   J&J Must Produce TrialCard's Documents from the "Refresh" Time Period of July 1, 2022 to November 7, 2023

In response to SaveOn's subpoena, TrialCard eventually agreed to produce five categories

of documents: (1) documents and communications from four custodians; (2) some records of

phone calls; (3) records of some Benefits Investigations; (4) patient letters; and (5) CarePath en-

rollment and claims data. Opp. 5-6. Although TrialCard had agreed to produce documents to the

same extent as J&J, Mot. 6, it now refuses to produce custodial documents through the Court-

ordered "refresh" period of July 1, 2022 to November 7, 2023, J&J Ex. 35 at 2. TrialCard's main

objection is that the Court's "refresh" order did not apply to non-parties, Ex. 68 at 1 (Mar. 22, 2024

Letter), but this objection is moot if Your Honor determines that J&J controls the documents.

J&J does not contest that these documents, of the same sort that TrialCard already pro-

duced, are relevant. As J&J acknowledged, the four custodians from whom it agreed to produce

documents are "TrialCard employees with key responsibilities for the administration of CarePath."

Opp. 5.[9] There is no principled basis to cut off custodial productions from these important individuals on July 1, 2022, especially when that date only captures a few months of the CAP Program—which went into effect in January 2022 and continues through the present. J&J also does not assert that production would be burdensome or disproportionate. J&J thus has no basis to withhold these documents.

**B.      J&J Must Produce TrialCard's Documents and Communications Related to the CAP Program, Benefits Investigations, and Other Efforts to Identify Patients on SaveOn-Advised Plans**

The Court held that J&J's CAP Program and Benefits Investigations into whether patients taking drugs at issue were on SaveOn-advised plans are relevant, *see* Apr. 10, 2024 Order at 2 (CAP-related documents are "highly relevant"); Feb. 6, 2024 Order at 24-26 (quoting guidance from Judge Waldor's Chambers and ordering search terms that "capture…CAP discussions"), and the Court and Your Honor have ordered J&J to produce documents on both topics, including ordering it to add multiple sets of "CAP custodians" and to use search terms targeted at documents regarding the CAP Program, *see* Dkt. 173 at 2; April 10, 2024 Order at 1-3. J&J has no valid argument that TrialCard's documents on these same topics are somehow not relevant.

J&J asserts that TrialCard's internal communications are irrelevant because "it is JJHCS's directions—not [TrialCard's] internal communications about those directions—that are germane

---

[9] J&J claims that its four existing custodians are adequate because it "agreed to a custodian for every interrogatory for which JJHCS identified responsible TrialCard employees." Opp. 5 n.2. But J&J identified ██████████████████████████████████████████████████ ██████████████ Ex. XX at 5-6 (Jan. 17, 2023 J&J R&Os to SaveOn's First Interrogatories), ████████████ *id.* at 15, and ██████████████████████████████████████████████████ *id.* at 16. SaveOn has reserved its rights to seek documents from additional TrialCard custodians.

to the claims here." Opp. 18. As J&J previously argued to the Court, however, "[i]nternal communications are a standard part of discovery—indeed, in many ways, they are the whole point of discovery." Dkt. 65 at 16 (Jan. 5, 2023 Joint Letter). TrialCard's internal communications here could reflect discussions between it and J&J not captured in written communications between them, and could help show how TrialCard implemented the CAP Program in practice. *See* Ex. 69 at 3 (Mar. 8, 2024 Letter).[10]

      J&J next asserts that additional TrialCard documents relating to the CAP Program are irrelevant or unnecessary because J&J is producing "CAP-related discovery" from its own files. Opp. 18-19. But there is extensive evidence that TrialCard was deeply involved in creating and implementing the CAP Program, Mot. 4-5, which easily shows that TrialCard's employees are likely to have relevant documents in addition to the documents of J&J's employees.[11]

      J&J also asserts that SaveOn does not need broad discovery into TrialCard's patient-identification efforts because ███████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████ Opp. 19-20 n.11 (emphasis added). But discovery is not limited to TrialCard's ███████████████████████████████████████████████

---

[10] In its opening brief, SaveOn cited an email where TrialCard ██████████████ ███████████████████. Mot. 5. J&J ███████████████████████████████. Opp. 18 n.9. In fact, SaveOn noted that TrialCard had not produced ███████████ ████████████████, Mot. 5; SaveOn said nothing about ██████████████.

[11] J&J asserts that TrialCard does not "independently craft[] strategies for [J&J] to respond to [SaveOn's] misappropriation." Opp. 3. In so doing, J&J appears to concede that TrialCard crafts such strategies along with J&J—as the documents that SaveOn cites confirm. Mot. at 3-4

Hon. Freda L. Wolfson                                                             Page 18

████████████████████ SaveOn is entitled to discover **all** methods that TrialCard used or considered using in identifying such patients for J&J, as J&J's failure to use reasonably available methods to identify those patients could show that J&J failed to mitigate its purported damages.

J&J offers no valid burden argument. It asks Your Honor to account for "the existing burdens that TrialCard has already been forced to endure as part of third-party discovery." Opp. 18; *see also id.* at 2 (arguing that "TrialCard should not be forced to endure undue burden"). But Your Honor will reach questions of burden in this motion only if Your Honor first finds that J&J controls TrialCard's documents. In that case, the only relevant burden is the burden on **J&J**, as the party from which discovery is sought, not the burden on TrialCard.[12] J&J does not assert, let alone quantify, its burden in producing these documents. It is also not clear how J&J could do so, as Patterson (either as J&J's counsel or as TrialCard's counsel) has refused to identify additional TrialCard custodians or collect their documents. Ex. 70 at 1 (Mar. 8, 2024 Letter). J&J must produce these documents.

### III.   If J&J Does Not Control TrialCard's Documents Concerning Its Work for J&J, Then Patterson Should Impose an Ethical Wall

J&J's lawyers at Patterson have access to SaveOn's confidential information pursuant to the DCO in this case. Dkt. 62. Contrary to the terms of the DCO, those same lawyers used SaveOn's confidential information on behalf of TrialCard to resist discovery by SaveOn. If Your Honor finds that J&J does not control TrialCard's documents related to its work for J&J, Patterson

---

[12] Even were TrialCard's burden somehow relevant here, it is not clear that it has endured any meaningful burden to date. The MSA provides that ███████████████████████████████ ███████████████████, MSA § 17.2, and both J&J and Patterson have refused to say that Trial-Card is paying its own fees and costs in this case, strongly indicating that J&J is paying. Ex. 33 at 2 (Jun. 30, 2023 Ltr.).

should implement an ethical wall such that its lawyers representing J&J do not represent TrialCard. J&J's arguments to the contrary are unavailing.

*First*, J&J asserts, without citation, that "[c]ounsel routinely represents both parties and related third parties in commercial litigation." Opp. 21. While it is common for a company's counsel to represent the company's former employees, it is unusual for them to represent the company's vendors. In any event, when a lawyer represents a nonparty in litigation in which she also represents a party, "there is a risk that a lawyer's representation of one client might materially limit [their] ability to fulfill [their] responsibility to the other client." *Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.*, 2009 WL 1211440, at *4 (E.D. Ark. May 4, 2009). For example, "[i]f a lawyer for a party interviews a witness, the lawyer is free to tell the client what the witness said, and he may even be obligated to do so, but if the lawyer represents the witness, the lawyer may be prohibited from telling anyone, including his client who is a party in the case, what the witness said." *Id.*; *see also Sapia v. Bd. of Educ. of City of Chicago*, 351 F. Supp. 3d 1125, 1131 (N.D. Ill. 2019) (whether to prohibit simultaneous representation is "decided on facts," though "[w]hether the practice in any given case is wise is, however, another matter."); *Adkisson v. Jacobs Eng'g Grp., Inc.*, 2016 WL 6534273, at *5 (E.D. Tenn. Nov. 1, 2016) (simultaneous representation "is fraught with ethical peril" requiring counsel to take "precautions"); *ChemFree Corp. v. J. Walter, Inc.*, 2008 WL 5234252, at *5 (N.D. Ga. June 11, 2008) (counsel could have "avoided any appearance of unethical conduct" by "refer[ring] the [non-parties] to alternative counsel"). This case presents an even more intractable problem, as J&J is prohibited by the DCO from consenting to its lawyers using SaveOn's confidential information on TrialCard's behalf, as they did.

*Second*, J&J says that SaveOn does not show that Patterson should be disqualified. Opp. 21-22 & n.13. This is a strawman. SaveOn does not seek to disqualify Patterson from representing J&J or TrialCard or both. SaveOn rather asks, in the alternative, that Patterson be required to "impose an ethical wall between the attorneys representing the entities, ensuring that no attorney representing TrialCard has (or had) access to SaveOn's confidential information." Mot. 18. SaveOn cited several cases in which courts required ethical walls, Mot. 18-19; while J&J notes that those cases did not order disqualification, Opp. 22 n.13, it has no answer to their imposition of ethical walls, the only relief that SaveOn seeks.

*Third*, J&J asserts that there is no conflict between it and TrialCard, that Patterson has "obtained appropriate waivers" from TrialCard, and that Patterson thus is not "torn between its obligations to" its two clients. Opp. 21-23. This misses the point. SaveOn does not argue that there is a conflict between J&J and TrialCard; it argues that there is a conflict between Patterson's obligations to its clients and its obligations to SaveOn—and the Court. Patterson's obligation to zealously represent TrialCard conflicts with its obligation under the DCO to not use SaveOn's confidential information on behalf of any party other than J&J. J&J's close coordination of legal strategy with TrialCard—to the point of waiving conflicts between them—increases the risk of continued misuse. If J&J does not control TrialCard's documents, the best cure is an ethical wall.

J&J also says that Patterson did not violate the DCO. But J&J admits to all the material facts: Patterson learned SaveOn's confidential information in Ayesha Zulqarnian's deposition as J&J's counsel and then used that information as TrialCard's counsel in resisting production of documents in a meet-and-confer session with SaveOn. Opp. 23-24. This is a plain violation of the DCO, which restricts disclosure of designated confidential information to specifically listed persons and entities. J&J's attempted excuses for this violation fail.

*First*, J&J asserts that Patterson had access to the information and was "permitted to discuss" it with SaveOn's counsel by the DCO. Opp. 24. This argument underscores why an ethical wall is necessary if J&J does not control TrialCard's documents. Patterson had access to SaveOn's confidential information and was permitted to discuss it with SaveOn only ***on behalf of J&J***. J&J's continuing failure to distinguish between Patterson's roles as J&J's counsel and as TrialCard's counsel and J&J's claim that Patterson was permitted to use SaveOn's information in this way shows the continuing risk that Patterson might again use SaveOn's confidential information on behalf of TrialCard.[13] J&J's argument, if accepted, would also create a perverse incentive for parties to have their counsel represent non-parties and use the opposing party's information on the non-parties' behalf to resist producing documents.

*Second*, J&J tries to retroactively justify Patterson's conduct. It says that Patterson simply told SaveOn's counsel that it needed SaveOn to provide phone numbers so that TrialCard could identify calls that it received from those numbers. Opp. 24. In fact, Patterson, as TrialCard's counsel, said that Zulqarnain's use of fake names prevented TrialCard from identifying records of calls that she, and potentially other SaveOn employees, made to TrialCard, Ex. 45 at 1—an assertion it could not have made without access to Zulqarnain's deposition. J&J asserts that TrialCard had its own records of Zulqarnain registering for CarePath and of a caller using different names and affiliations when calling from the same cell number. Opp. 24. But TrialCard did not know from its

---

[13] Contrary to J&J's claim, its counsel has only very recently requested SaveOn to "respect this separation." Opp. 23 n. 14. Indeed, its first such request was in February 2024, as demonstrated by J&J's citations. *Id*. Communications—both before and after February 2024—show that Patterson has not respected these separate roles when helpful to J&J. *See, e.g.*, June 27, 2023 Hr'g Tr. at 90:2-6 (J&J explaining, "we've made a document production from" TrialCard to resist discovery into non-JJHCS entities at J&J); Ex. 61 (May 7, 2024 Letter) (addressing SaveOn's burden argument associated with producing recorded calls by referencing SaveOn's allegedly "equivalent" request to TrialCard).

own files that Zulqarnain used multiple names when calling CarePath to obtain information on terms and conditions; Patterson learned that information exclusively from her deposition, as it stated in the meet-and-confer sessions with SaveOn's counsel. Ex. 45 at 1.

*Finally*, J&J's string of technical excuses for why Patterson did not violate the DCO fails. J&J says that Patterson did not share the deposition transcript with TrialCard (SaveOn did not allege that it did), Opp. 23—but Patterson used confidential information from the deposition on TrialCard's behalf. J&J says that the information was "undisputed," Opp. 24—but, disputed or not, the information was confidential, so Patterson could not use it on behalf of TrialCard. J&J says that Patterson did not "use" the information on TrialCard's behalf, Opp. 24—but it did, citing that information as a basis to withhold documents. J&J says that Patterson's "stray reference" to the information did not "amount to 'use,'" Opp. 24 n.15—but citing information on a party's behalf is "use" by any reasonable definition.

The Special Master should grant SaveOn's motion, recognizing that J&J has control over TrialCard's documents regarding its work for J&J for purposes of Rule 34(a). In the alternative, Your Honor should direct Patterson to implement an ethical wall separating attorneys who represent J&J from those who represent TrialCard.

Respectfully submitted,

/s/ E. Evans Wohlforth, Jr.
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# EXHIBIT 56
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 57



www.pbwt.com

December 6, 2023

Sara Arrow
(212) 336-2031

**By Email**

Hannah Miles, Esq.
Selendy Gay Elsberg, PLLC
1290 Avenue of the Americas
New York, NY 10104

        **Re:**    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,*
                **Case No. 2:22-cv-02632-ES-CLW**

Dear Hannah:

        We write on behalf of TrialCard in response to your November 30 letter regarding the applicable time period for TrialCard's document productions in response to the subpoena dated February 17, 2023.

        You claim that, during a meet and confer on April 25, 2023, we "agreed that TrialCard's productions would generally conform to the Court's orders as to JJHCS, including adjusting the time period for TrialCard's productions in line with JJHCS's." Suffice it to say, we disagree with your characterization of TrialCard's assertions during the April 25 meet and confer. At no point during the meet and confer did TrialCard and SaveOnSP contemplate or discuss a complete update of all discovery responses through November 7, 2023, much less agree to undertake the same.

        In any event, the Court's November 7, 2023 Order does not impose obligations on TrialCard as a third party, nor are we aware of any other third party (including your business partners, Express Scripts Inc. or Accredo Health Group, Inc.) undertaking a comparable production update pursuant to that Order. As a result, we decline your invitation to update our discovery responses, including productions, through November 7, 2023.

        Very truly yours,

        */s/ Sara A. Arrow*
        Sara A. Arrow

# Exhibit 58



www.pbwt.com

December 22, 2023

Sara Arrow
(212) 336-2031

**By Email**

Hannah Miles, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:     ***Johnson & Johnson Health Care Systems Inc. v. SaveOnSP, LLC,***
        ***Case No. 2:22-cv-02632-ES-CLW***

Dear Hannah:

We write on behalf of TrialCard in response to your December 8, 2023 letter.[1]

As you know, TrialCard maintains that custodial collections are disproportionate to its status as a non-party, burdensome, and unnecessary. *See, e.g.*, July 6, 2023 Ltr. from K. Brisson to E. Holland; Aug. 3, 2023 Ltr. from K. Brisson to E. Holland. Despite this, and in the interest of compromise, TrialCard has undertaken such collections for four custodians: Holly Weischedel, Sini Abraham, Rick Fry, and Paul Esterline. These custodial collections are in addition to TrialCard's extensive non-custodial productions. Yet SaveOnSP now again demands that TrialCard supplement its custodial productions, this time to include seven more document custodians. Of the seven, TrialCard has previously declined to add six of them. *See* Aug. 3, 2023 Ltr. from K. Brisson to E. Holland.

*Jason Zemcik*:  SaveOnSP asserts that JJHCS "asked Zemcik for guidance" or otherwise communicated with him regarding TrialCard deliverables. ███████████████ *See, e.g.*,  JJHCS_00026255;  JJHCS_00005528;  JJHCS_00008107;  JJHCS_00001745; JJHCS_00007308. Further, several of the documents SaveOnSP cites do not even mention JJHCS or CarePath. *See, e.g.*, TRIALCARD_00001804; TRIALCARD_00001815; TRIALCARD_00001884;  TRIALCARD_00003340;  TRIALCARD_00001951;

---

[1] SaveOnSP's December 8 letter quotes several documents that JJHCS or TrialCard marked as Attorney's Eyes Only ("AEO") pursuant to the Protective Order, but the letter was designated as Confidential. We assume this was an oversight, and that SaveOnSP will treat the AEO portions of the letter as such. If this is not so, please inform us in writing by January 3, 2024.

Hannah Miles, Esq.
December 22, 2023
Page 2

TRIALCARD_00002804; TRIALCARD_00002931.  Please explain why, in your view, abstract analyses unrelated to CarePath justify intrusive and voluminous discovery of Mr. Zemcik's custodial files.  Relatedly, we note that to the extent Mr. Zemcik's custodial files contain relevant documents, they would be cumulative of those that TrialCard and JJHCS have produced from other agreed-upon custodians, including TrialCard custodians Fry (*see, e.g.*, TRIALCARD_00001804, TRIALCARD_00001884) and Weischedel (*see, e.g.*, JJHCS_00008107) and JJHCS custodians John King (*see, e.g.*, JJHCS_00026255) and Bill Robinson (*see, e.g.*, JJHCS_00005528).

     *Rick Ford*:  SaveOnSP asserts that Mr. Ford provided ███████████ ██████████████.  However, as SaveOnSP acknowledges, ████████████████████.  *See* JJHCS_00035931.  Furthermore, as with Mr. Zemcik, several of the documents SaveOnSP cites do not even mention JJHCS or CarePath.  *See, e.g.*, TRIALCARD_00001951;     TRIALCARD_00001811;     TRIALCARD_00001966; TRIALCARD_00000348;     TRIALCARD_00001881;     TRIALCARD_00000356; TRIALCARD_00000362;     TRIALCARD_00000389;     TRIALCARD_00006722; TRIALCARD_00002552; TRIALCARD_00002430.  Again, please explain why, in your view, abstract analyses unrelated to CarePath justify intrusive and voluminous discovery of Mr. Ford's custodial files—especially since, to the extent Mr. Ford's files contain relevant documents, they would be cumulative of those TrialCard and JJHCS have produced from other agreed-upon custodians, including TrialCard custodian Fry (*see, e.g.*, TRIALCARD_00001951, TRIALCARD_00001811, TRIALCARD_00000389) and JJHCS custodians Robinson and King (*see, e.g.*, JJHCS_00035931).

     *April Harrison*:  SaveOnSP asserts that Ms. Harrison was involved in implementing JJHCS's CAP Program.  Yet, as SaveOnSP acknowledges, ████████████████████ ████████████████████████████████████████████████████████████████████.  *See, e.g.*, TRIALCARD_00002368.  To the extent Ms. Harrison performed work for JJHCS in relation to its CAP program, documents related to that work are in JJHCS's possession.  Additionally, to the extent Ms. Harrison's custodial files contain relevant documents, they would be captured by other existing TrialCard custodians, including Abraham, who is in Ms. Harrison's reporting line. SaveOnSP also asserts that Ms. Harrison purportedly assisted JJHCS in "efforts to modify copay assistance programs in responses to changes in the Best Price Rule."  Yet, SaveOnSP has not articulated the purported relevance of such contemplated changes to the claims and defenses in this litigation; please provide this explanation.

     *Tommy Gooch*:  SaveOnSP asserts that Mr. Gooch sent and received information from JJHCS and attended meetings with JJHCS employees.  ████████████████████ ████████████████████████████████████████████████████████████████████.
*See, e.g.*, JJHCS_00005784, JJHCS_00008104.  Indeed, one document that SaveOnSP cites makes clear that ████████ ██████████████████████ TRIALCARD_00005044.  Finally, to the extent Mr. Gooch's custodial files contain relevant documents, they would be cumulative of those that TrialCard and JJHCS have produced from other agreed-upon custodians, including JJHCS custodian Robinson (*see, e.g.*, JJHCS_00008104) and TrialCard custodians Weischedel and Esterline (*see, e.g.*,

Hannah Miles, Esq.
December 22, 2023
Page 3

JJHCS_00008104; TRIALCARD_00007157). In light of this additional information, if you still believe that cumulative discovery from Mr. Ford is necessary, please explain why.

       *Lynsi Newton*: SaveOnSP asserts that Ms. Newton was responsible for TrialCard's outreach regarding efforts to modify copay assistance programs in response to changes to the Best Price Rule. As noted above, SaveOnSP has not articulated the relevance of documents relating to the Best Price Rule; again, please explain the purported relevance. Further, ███████████████ ████████████████████████████████████████████████████████████████ *See* JJHCS_00004607 (including TrialCard custodian Weischedel); JJHCS_00004608; JJHCS_00004611. Similarly, ████████████████████████████████████████████ ██████████████████████████████████. *See* TRIALCARD_00008354; TRIALCARD_00008594. SaveOnSP's citation to TRIALCARD_00008594 is particularly unavailing given the references therein to ████████████████████████████████████████. Finally, to the extent Ms. Newton's custodial files contain relevant documents, they would be captured by other existing TrialCard custodians, including Weischedel and Abraham, to whom Ms. Newton reported. In light of this additional information, if you still believe that cumulative discovery from Ms. Newton is necessary, please explain why.

       *Amber Maldonado*: SaveOnSP asserts that Ms. Maldonado "played a key role in detecting and mitigating the alleged effects of maximizers and accumulators." In fact, one of the documents SaveOnSP cites in support, JJHCS_00005061, ████████████████████████ ████████████████████████████████████████████████. Further, ████████████████████████████████████████████████████████████ *See, e.g.*, JJHCS_00006991. Finally, to the extent Ms. Maldonado's custodial files contain relevant documents, they would be cumulative of those that TrialCard has produced from other agreed-upon custodians, including all existing TrialCard custodians. *See, e.g.*, TRIALCARD_00006499 (including all four TrialCard custodians); TRIALCARD_00006511 (including Weischedel and Esterline). In light of this additional information, if you still believe that cumulative discovery from Ms. Maldonado is necessary, please explain why.

       *Cosimo Cambi*: SaveOnSP asserts that Mr. Cambi was the "████████████████████ ████████" However, both TRIALCARD_00000334 and TRIALCARD_00002656 indicate that ████████████████████████████████████████████████ Again, TrialCard is a vendor. Its understanding of the health insurance market and its opinions about its participants in the abstract is irrelevant to any actual work it performed implementing the CarePath program. It cannot justify voluminous custodial discovery of the type SaveOnSP proposes. Finally, ████████████████ ████████████████████████. *See* TRIALCARD_00003079. In light of this additional information, if you still believe that cumulative discovery from Mr. Cambi is necessary, please explain why.

Hannah Miles, Esq.
December 22, 2023
Page 4

      &ast;  &ast;  &ast;  &ast;

  We are available to meet and confer.

      Very truly yours,

      */s/ Sara A. Arrow*
      Sara A. Arrow

# Exhibit 59

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy | Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

March 26, 2024

**Via E-mail**

Sara A. Arrow
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
sarrow@pbwt.com

**Re:**  ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*** (Case No. 2:22-cv-02632-JKS-CLW)

Dear Sara,

We write to you in your capacity as counsel for TrialCard. Upon review of the 19,930 case and task notes that TrialCard produced, we have identified 1,528 for which we would like TrialCard to produce the associated audio recording and/or transcript. *See* May 12, 2023 Ltr. from G. Carotenuto to A. Dunlap, at 2. Those calls are identified in the attached spreadsheet.

Please let us know by April 1, 2024 when you will be able to make this production.

Sincerely,

Hannah Miles

Hannah R. Miles
Associate

# Exhibit 60



www.pbwt.com

April 23, 2024

Elisabeth Shane
(212) 336-2659

**By Email**

Hannah Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re: **TrialCard Call Recordings**
*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
**Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Hannah:

We understand that you have sent TrialCard a letter dated March 26, 2024 seeking the audio recordings and transcripts associated with 1,528 case and task notes produced by TrialCard. We write in our capacity as counsel for JJHCS to address related issues.

Based on our understanding of your request to TrialCard, it appears that SaveOnSP is seeking the recordings and transcripts associated with case and task notes produced by TrialCard that hit on the term SaveOnSP or any variation thereof.

As you will recall, SaveOnSP agreed to produce "recordings of communications with persons enrolled in health plans advised by SaveOnSP concerning SaveOnSP's services and either CarePath or Janssen Drugs, identified during a reasonable search, that are reasonably accessible." *See* SaveOnSP's Response to JJHCS's RFP No. 54. These recordings are the conceptual equivalent of what SaveOnSP now seeks from TrialCard—namely, communications with persons likely enrolled in CarePath relating to SaveOnSP. Yet, notwithstanding SaveOnSP's prior agreement to produce them, SaveOnSP later refused to do so. *See* Mar. 29, 2023 Ltr. from A. Dunlap to H. Sandick, at 4.

In light of SaveOnSP's March 26 demand for recordings, SaveOnSP's refusal to produce its own relevant recordings is untenable. Accordingly, please confirm that SaveOnSP will produce the recorded calls it has identified with patients who spoke to SaveOnSP and were prescribed a Janssen drug.

Hannah Miles, Esq.
April 23, 2024
Page 2

Very truly yours,

*/s/ Elisabeth Shane*
Elisabeth Shane

# Exhibit 61



May 7, 2024

Elisabeth Shane
(212) 336-2659

**By Email**

Hannah Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

       Re:    **SaveOnSP's Call Recordings**
               *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
               Case No. 2:22-cv-02632 (JKS) (CLW)

Dear Hannah:

       We write in response to your April 26, 2024 letter and further to our prior correspondence regarding the same.

       As you know, JJHCS recently requested that SaveOnSP produce recorded calls and transcripts with patients who spoke to SaveOnSP and were prescribed a Janssen drug.  *See* Apr. 23, 2024 Ltr. from E. Shane to H. Miles.  We understand that, although SaveOnSP seeks the equivalent production from TrialCard (namely, communications with persons likely enrolled in CarePath relating to SaveOnSP), it objects to JJHCS's request on the basis of the purported burden. In light of this objection, please specify, in as much detail as possible, the burden associated with producing the call recordings and transcripts that JJCHS requested in its April 23 letter.  Please also explain what steps SaveOnSP has taken over the last thirteen months to "investigate ways to expedite the export" of responsive call recordings and transcripts, including any strategies it has identified to do so.  Mar. 29, 2023 Ltr. from A. Dunlap to H. Sandick at 4.  We appreciate that there can be burdens associated with producing call records on both sides and would like to work with you to find a mutually acceptable solution.

       To facilitate our discussion, please also let us know if SaveOnSP's burden concerns would be alleviated if its production were limited to the following two categories.  *First*, all call recordings and transcripts associated with calls to TrialCard with or without a patient on the line regarding a Janssen drug.  For the avoidance of doubt, this includes, but is not limited to, recordings and transcripts of all calls designated as "manufacturer calls" within Column P of the attached "JJHCS Requested Recordings" spreadsheet.  *Second*, to the extent these recordings and transcripts are not captured by the prior request, all recordings and transcripts associated with the calls identified in the attached spreadsheet.

Hannah Miles, Esq.
May 7, 2024
Page 2

We look forward to hearing from you and discussing these matters further.

Very truly yours,

*/s/ Elisabeth Shane*
Elisabeth Shane

15064980

**EXHIBITS 62-64
CONFIDENTIAL – FILED UNDER SEAL**

# Exhibit 65



www.pbwt.com

September 29, 2023

Katherine Brisson
(212) 336-2552

**BY EMAIL**

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
       *(Case No. 2:22-cv-02632-ES-CLW)*

Dear Emma:

   We write on behalf of TrialCard in response to your September 20, 2023 letter, and further to our correspondence on the same topic.

   Request Nos. 5, 20, 22, and 27.   TrialCard will produce documents that are responsive to Request Nos. 5, 20, 22, and 27 and that hit on the search terms identified in our August 24 letter.  *See* Aug. 24, 2023 Ltr. from K. Brisson to E. Holland at 2, n.1.  These search terms were designed to yield documents responsive to these specific Requests.  TrialCard will produce responsive, non-privileged documents that hit on these search terms whether or not they relate to benefits investigations; however, we otherwise decline to specifically search for, collect, and produce documents relating to benefits investigations.

   Request No. 3.  TrialCard agrees to produce case and task notes that are responsive to SaveOnSP's proposed search terms "zero out of pocket," "zero OOP," and "zero out-of-pocket." We trust that this resolves any remaining dispute on this issue.

   Custodians.    As we have explained at length, the four existing TrialCard custodians—Sini Abraham, Paul Esterline, Rick Fry, and Holly Weischedel—had operational and strategic responsibilities for the issues about which you have sought document production.  During the relevant time period, Ms. Weischedel held multiple roles at TrialCard, including positions in Client Services and Strategic Accounts.  Ms. Abraham has similarly held roles in Client Services, Market Access Operations, and Hub Services.  Mr. Esterline has held various roles in Analytics and Strategic Accounts.  And Mr. Fry has held roles in both Client Solutions and Client Services. Again, we encourage you to review the documents TrialCard produces from these four custodians to make an informed assessment about whether additional custodians are warranted.

Emma Holland, Esq.
September 29, 2023
Page 2

You nevertheless assert that additional custodians are required because the existing custodians "do not appear to be involved in communications with CarePath patients or tracking CarePath and copay assistance payments." Sept. 20, 2023 Ltr. from E. Holland to K. Brisson at 2. This concern does not justify your expansive request. As you know, TrialCard has already produced over 19,000 call and task notes describing communications with CarePath patients, and we have agreed to supplement that production as described above. We have similarly produced CarePath claims and enrollment data. These productions, along with the custodial productions described above, adequately address the issues you have raised.

Further, we decline to provide hit counts for each of the twelve additional custodians you have proposed. As you know, TrialCard cannot simply run a hit report without first collecting the custodial files of all of SaveOnSP's proposed custodians. This step is itself a burdensome and unnecessary undertaking for the reasons we have explained at length in our prior correspondence and herein. You also suggest that there is some "magical" number of documents—which you apparently believe to be greater than 37,000—that a third-party must review to satisfy its discovery obligations. Suffice it to say, we disagree (as do your business partners at Express Scripts, Inc. and Accredo Health Group, which have yet to make any custodial productions, aided in their efforts to avoid discovery by supporting affidavits from SaveOnSP counsel). Finally, we refer you to our prior correspondence on the issue of fees and costs.

Custodial Search Terms. TrialCard declines to add your proposed search terms as they are irrelevant to the requests for which TrialCard has agreed to produce custodial documents. As we have explained, TrialCard will not produce documents that generally relate to copay accumulator and maximizer programs, nor will it produce documents that mention Express Scripts or Accredo absent reference to SaveOnSP. See July 13, 2023 Ltr. from K. Brisson to E. Holland at 1 ("TrialCard agrees to search for and produce nonprivileged custodial documents expressly referencing SaveOnSP in response to Request Nos. 8, 9, 11, 12, 13, 14, and 15."). Contrary to your assertion, TrialCard's discovery obligations do not require it to undertake a large-scale substantive document review to determine whether a document "capture[s] discussions of SaveOnSP when it is not expressly mentioned." Sept. 20, 2023 Ltr. from E. Holland to K. Brisson at 2. First of all, we do not see how this suggestion is even feasible, as it would require an exercise in mind-reading to know when someone is secretly referring to SaveOnSP. In any event, this proposal is disproportionate to TrialCard's obligations as a third-party, and TrialCard will not undertake to do so.

As previously explained, we have produced all retention documents we have been able to identify based on a reasonable investigation for the applicable timeframe. We have added "retention policy" out of a good faith effort to satisfy any lingering concerns you may have but we are unwilling to adopt your proposed stand-alone "Retention Polic*" search term.

Finally, Request Nos. 18(i)-(m), which seek such information as the dates on which Patients were enrolled in CarePath, the amounts of co-pay assistance provided to those Patients, and the Janssen Drugs for which they received assistance, do not require a custodial production. These documents are centrally stored and those documents have been or will be produced, either

Emma Holland, Esq.
September 29, 2023
Page 3


by TrialCard, JJHCS, or both.  As we have stated previously, to the extent the custodial files of Abraham, Esterline, Fry, and Weischedel include non-privileged documents responsive to Request Nos. 18(i)-(m), we will produce them.  *See* July 13, 2023 Ltr. from K. Brisson to E. Holland at 1. We decline, however, to add new custodians or run additional search terms specific to this Request.

Very truly yours,


*/s/ Katherine Brisson*
Katherine Brisson

# Exhibit 66



www.pbwt.com

January 12, 2024

Sara A. Arrow
(212) 336-2031

**By Email**

Elizabeth Snow, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:     ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
          **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Elizabeth:

          On behalf of TrialCard, we write in response to your December 27, 2023 letter concerning the February 17, 2023 subpoena (the "Subpoena") served on TrialCard and our related email correspondence.

          Suffice it to say, we disagree with the statements in your December 27 letter, including for the reasons we have explained at length in discovery letters and during the conferral process. *See, e.g.*, Dec. 6, 2022 Ltr. from S. Arrow to H. Miles; Dec. 22, 2023 Ltr. from S. Arrow to E. Snow. As we have explained, SaveOnSP's request to the extend the scope of the Subpoena at least nine months beyond the service date is improper and contrary to the Federal Rules of Civil Procedure.

          In the interest of finality, we write to confirm that we are at impasse with respect to the applicable time period for the Subpoena. TrialCard does not consent to submit this dispute to Judge Wolfson.

          TrialCard reserves all rights.

                                   Very truly yours,

                                   */s/ Sara A. Arrow*
                                   Sara A. Arrow

# Exhibit 67

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000



Emma Holland
Associate
212 390 9364
eholland@selendygay.com

July 26, 2023

<u>**Via E-mail**</u>

Katherine Brisson
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
kbrisson@pbwt.com

**Re:**  ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC*** **(Case No. 2:22-cv-02632-ES-CLW)**

Dear Katherine,

We write in response to your July 13, 2023 and July 19, 2023 letter regarding TrialCard, Inc.'s ("TrialCard") response to the subpoena served by Save On SP, LLC ("SaveOnSP") and in further response to your June 7, 2023 letter on that subject.

*First*, in your July 13 letter, you state that TrialCard agrees to produce documents from non-custodial sources in response to Request No. 3, but, to the extent custodial files include non-privileged documents responsive to those requests, you will produce them. This is not sufficient. Request No. 3 seeks documents and communications "with or regarding SaveOnSP, including those between You and JJHCS, You and any patients, and You and any other Hub Entity." A reasonable search for documents responsive to this Request must include a search of custodial files that are likely to contain such communications. Please confirm that TrialCard will add custodians likely to have documents responsive to this Request and will produce such documents. Also in your June 7 letter, regarding Request No. 3, you decline to add the search terms "OOP" and "out-of-pocket." We propose that Trial-Card instead use the terms "zero out-of-pocket," which is mentioned frequently in sample patient letters regarding SaveOnSP, *see, e.g.*, TRIALCARD_00000119, and the similar terms "zero OOP", "no OOP", and "no out-of-pocket." Please confirm that TrialCard will add these four search terms.

*Second*, in your June 7 letter, you stated that TrialCard did not have any documents responsive to Request Nos. 5, 6, 7, 8, 10–17, 20–22, 24–25, 29, and 32

Katherine Brisson
July 26, 2023

beyond those that it had agreed to produce at that point. In your July 13 letter, you
state that TrialCard will now perform a custodial search for documents responsive
to Request Nos. 8-9 and 11-15, which includes six of those Requests. Please tell us
if TrialCard will produce documents responsive to Request Nos. 5, 6, 7, 16–17, 20–
22, 24–25, 29, and 32 beyond those that it has already agreed to produce.

*Third*, in your June 7, 2023 letter, you stated that TrialCard would not pro-
duce documents responsive to Request Nos. 13-15, 17, 20, and 22, stating that
"TrialCard would have furnished any such deliverables to JJHCS, which in turn
would be captured by JJHCS's document production" and documents "not fur-
nished to JJHCS" are irrelevant. In your July 13 letter, you state that TrialCard will
now perform a custodial search for documents responsive to Request Nos. 8-9 and
11-15, which includes three of those Requests. Please tell us if TrialCard will pro-
duce documents responsive to Request Nos. 17, 20, and 22.

Regarding Request No. 22 specifically, which seeks all Documents and
Communications regarding JJHCS's attempts to identify health plans advised by
SaveOnSP or Patients enrolled in such plans, JJHCS recently disclosed that Trial-
Card has responsive material. JJHCS has stated in its Responses and Objections
to SaveOnSP's Second Set of Interrogatories, that ████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████ *See* JJHCS's R&Os to
SaveOnSP's Second Set of Interrogatories at 4. Those ████████████████████
████████████████████████████████████████████████ are respon-
sive to this request and relevant to the claim and defenses at issue. Please tell us
whether TrialCard will produce them.

*Fourth*, you state that TrialCard will perform a custodial search for docu-
ments responsive to Request Nos. 8, 9, and 11-15 but only those that expressly ref-
erence SaveOnSP. This is insufficient, as documents regarding SaveOnSP may well
not reference SaveOnSP expressly. For example, TrialCard should produce docu-
ments referring to maximizers and Express Scripts, ████████████████████████
████████████████. *See, e.g.*, JJHCS_00081459 (JJHCS email saying that
████████████████████████████████████████████████████████████████████),
JJHCS_00081461 (report attached to JJHCS_00081459 stating that ████████████
████████████████████████████████████████), JJHCS_00008991 (JJHCS email
referring to ████████████████████████████████████). Please confirm
that TrialCard will search for documents relating to SaveOnSP beyond those ex-
pressly referencing SaveOnSP.

*Fifth*, in your July 19, 2023 letter you propose a handful of search terms that
TrialCard intends to use for its custodial search. You propose the term SaveOnSP
OR SaveOn OR "Save On SP" OR "Save On" OR SOSP as an independent search
but use (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org*

chart" OR "retention policy") to limit all three other proposed searches. In effect, you propose only SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP as a search term, plus a few searches for "org* chart" OR "retention policy." In searching for documents responsive to Request Nos. 8, 9, and 11-15, TrialCard should search for documents referring to SaveOnSP, without expressly naming it. We request that TrialCard supplement its list of proposed search terms with the terms on Appendix A. If JJHCS refuses to use any of these terms, please explain why. If JJHCS asserts that using any of these terms would be unduly burdensome, please provide a hit count of how many unique documents the proposed term generates.

*Sixth*, in your July 13, 2023 letter, you state that TrialCard does not intend to produce any documents that are also in the possession of JJHCS. This is insufficient. A non-party may not withhold documents simply because it shared those documents with a party to the litigation. *See Wyeth v. Abbott Lab'ys*, No. 08-230 (JAP), 2011 WL 2429318, at *8 (D.N.J. June 13, 2011). You also do not confirm that JJHCS has produced all relevant documents that are in the possession of both JJHCS and Trial Card. Please confirm that TrialCard will not withhold responsive documents on the basis that it believes that they are in JJHCS's possession.

*Seventh*, in your July 13, 2023 letter, you propose that Trial Card designate only Holly Weischedel and Sini Abraham as custodians. We propose that TrialCard also add the following individuals as custodians, as JJHCS's production shows that they have relevant documents. Please confirm that TrialCard will add:

- **Richard ("Rick") Ford.** Ford is the Vice President of Market Access at TrialCard and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.*, JJHCS_00011226 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Ford also explained to other TrialCard vice presidents how ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, JJHCS_00003009.

- **Jason Zemcik.** Zemcik is the Senior Director of Product Management, JJHCS_00001595, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* JJHCS_00003059. ▮▮▮▮▮▮▮▮▮▮ *See* JJHCS_00026255. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



- **Rick Fry.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Katherine Brisson
July 26, 2023



- **Jimmar Wilson.** Wilson is a Training Manager. *See* JJHCS_00058358.

- **Dorothy Williams.** Williams is a Trainer whose work includes Care-Path training. *See* JJHCS_00126193.

- **Amber Maldonaldo**. Based on email communications Maldonaldo sent to other TrialCard employees and to employees at JJHCS, ███████ ████████ JJHCS_00006991, JJHCS_00005061. Maldonaldo both sent and received information that is directly relevant to JJHCS's response to SaveOnSP. JJHCS_00006991, JJHCS_00005543.

- **April Harrison.** April Harrison is an Associate Director of Client Services at TrialCard, JJHCS_00104674, and as such, ████ ████████ *See, e.g.,* JJHCS_00008733, JJHCS_00008584. Harrison has been ████████ *See* JJHCS_00002344.

- **Tony McInnis.** As the Escalation Manager, McInnis ████ . *See* JJHCS_00002774. These patient communications would very likely include patient complaints, to the extent there are any, regarding stress, confusion or other harm. McInnis has received emails that ████████ . *See* JJHCS_0005543.

- **Tommy Gooch**. As TrialCard's Implementation Project Manager, JJHCS_00001885, ████████ *See, e.g.,* JJHCS_00005784, JJHCS_00008104. Gooch also communicated with JJHCS and TrialCard employees regarding

Katherine Brisson
July 26, 2023



*See* JJHCS_00008050, JJHCS_00004076.

- **Paul Esterline**. Esterline received inquiries from JJHCS employees regarding ▮▮▮▮ JJHCS_00007521. Esterline also ▮▮▮▮ JJHCS_00008104, and another email and discussion regarding ▮▮▮▮, JJHCS_00005543.

- **Lynsi Newton**. Newton ▮▮▮▮. TRIAL-CARD_00000201. ▮▮▮▮ *See* JJHCS_00004607, JJHCS_00004608, JJHCS_00004611.

- **Kimberly Spencer**. Spencer ▮▮▮▮ TRIALCARD_00000201. ▮▮▮▮, JJHCS_00122619, and thus may have information regarding Save-OnSP's alleged financial harm to JJHCS.

- **JeLisa Irving**. Irving ▮▮▮▮. TRIALCARD_00000201. Irving is ▮▮▮▮ JJHCS_00126221. ▮▮▮▮

- **Philip Sloate**. Sloate ▮▮▮▮. TRIAL-CARD_00000201. ▮▮▮▮

- **Samone Evans**. Evans ▮▮▮▮



TRIALCARD_00000201. ████████████████████████

████████████████████████████████████ *see*, JJHCS_00104997, JJHCS_00105016, so she is likely to have information on any complaints about SaveOnSP.

- **Mariel Chahin**. Chahin is an Associate Program Director at TrialCard. JJHCS_00004713. Chahin communicated with JJHCS employees related to ████████████████████████████

██████████████████████ *Id*. Chahin was also involved in ████████████ ████ JJHCS_00073983, JJHCS_00082761. Chahin's records will likely include any comments by patients regarding SaveOnSP or Save-OnSP's alleged harm to JJHCS.

*Eighth*, in your June 7, 2023 letter, you state that TrialCard produced its only company-wide document retention policy, which was published in 2023. Please either produce retention policy was operative from April 1, 2016 to July 1, 2022 or state that TrialCard had no such policies prior to 2023.

*Ninth*, the organizational chart that TrialCard provided at TRIAL-CARD_00000200, is illegible as produced. Please reproduce this document in a legible form.

*Finally*, please confirm that you will produce data dictionaries for data you produce in response to Request No. 31.

We request a response by August 2, 2023. We reserve all rights and are available to meet and confer.

Best,

/s/ Emma Holland

Emma C. Holland
Associate

Katherine Brisson
July 26, 2023

**Appendix A**

| No. | JJHSC's Proposed Search Terms¹ | New Search Term | Basis |
|---|---|---|---|
| 1 | SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP | SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "Save OnSP" OR Maximize* OR ("Express Scripts" OR ESI) OR Accredo OR CAP* | As explained above, TrialCard should produce documents referring to SaveOnSP without referencing it explicitly. |
| 2 | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | Note for all of these searches, the only documents that will not be captured by the first search term is documents with the terms "org* chart" OR "retention policy" which will return documents responsive to Request Nos. 1, 2, and 30. However, in your July 13 letter, you state that TrialCard agreed to produce documents from non-custodial sources in response to Request Nos. 1, 2, 3, 18(i)-(m), and 30, but would not directly search custodial records for responsive documents. |
| 3 | (CarePath OR "Care Path") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | (CarePath OR "Care Path") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | |
| 4 | (Accumulator OR Maximizer) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | (Accumulator OR Maximizer) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | |

---

¹ All proposed search terms cover the period of April 1, 2016 to July 1, 2022 (the "Relevant Time Period"). Please tell us if you do not agree to search all documents during this time period.

Katherine Brisson
July 26, 2023

| No. | JJHSC's Proposed Search Terms[1] | New Search Term | Basis |
|---|---|---|---|
| 5 | | "Retention Polic*" | To the extent TrialCard intends to search custodial documents for retention policies published prior to 2023 we do not believe that limiting your search to policies that mention Johnson & Johnson, JJHCS, CarePath, Accumulators, or Maximizers will return retention policies applicable to all of TrialCard. |

# Exhibit 68



www.pbwt.com

January 26, 2024

Caroline Zielinski
(212) 336-2206

**By Email**

Taylor Stone, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
       **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Taylor,

        We write in response to your January 2, 2024 letter concerning JJHCS's privilege log and further to related correspondence.[1]

        After reviewing the documents that you identified in your letter, we no longer seek to fully withhold or maintain all of the redactions in the documents listed in Appendix A to this letter. Accordingly, JJHCS will produce these documents either in full or with more limited redactions in a forthcoming production.

        With respect to the documents you identified that are not listed in Appendix A, we disagree with the assertions raised in your letter. These documents were properly withheld pursuant to applicable privileges, including the attorney-client and/or the work product privileges. To address your contentions, JJHCS provides additional information about those documents below.

        **Exhibit 1 Documents.** SaveOnSP first asserts that approximately 160 documents on Exhibit 1 were improperly withheld based on attorney-client privilege "without indicating that they involve communications with counsel." Contrary to SaveOnSP's assertion, JJHCS's privilege log indicates that an attorney was the author or recipient of multiple of the identified documents in this category. *See* PL000002020 (email in which S. Harris is the author); PL000002021 (email in which S. Harris is the recipient); and PL000001630 (email in which C. Bosch is copied). In addition, Exhibit 1 includes draft documents properly withheld pursuant

---

[1] We have separately addressed SaveOnSP's request for an updated privilege log and a log of all partially redacted documents. *See* Jan. 11, 2024 Ltr. from J. Long to E. Snow.

Taylor Stone, Esq.
January 26, 2024
Page 2

to the attorney-client privilege because they include comments from JJHCS's in-house attorneys reflecting legal advice related to the operation of JJHCS's copay assistance programs, including training modules, work orders, and terms and conditions.  *See, e.g.*, PL000000049 (comments from J. De Camara), PL000002012 (comments from C. Bosch); PL000002762 (comments from M. Shea).  Assertion of the attorney-client privilege in this circumstance is based on well-established law.  *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prods. Mtking, Sales Practices, & Prods. Liability Litig.*, 2021 WL 3144945, at *6 (D.N.J. July 26, 2021) (sustaining attorney-client privilege assertions with respect to "draft documents containing [an in-house attorney's] comments" as they "reflect [their] legal input and analysis").

Moreover, whether an attorney is listed as an author or recipient of a document does not determine whether a document is properly withheld pursuant to the attorney-client privilege.  The attorney-client privilege extends to communications comprising a discussion of legal analysis regardless of whether an attorney is included on the communication.  *See, e.g.*, *Engage Health Comms., LLC v. Intellisphere, LLC*, 2017 WL 10259770, at *3 (D.N.J. Sept. 12, 2017), *report & recommendation adopted* 2017 WL 10259774 (Nov. 21, 2017) (explaining that a document comes within the attorney-client privilege even if it reflects a "communication between two non-attorneys" as long as it "reflect[s] the [provision of] legal advice").  JJHCS has properly withheld documents included in Exhibit 1 that reflect legal analysis and incorporate requests for legal advice pertaining to the design and implementation of JJHCS's copay assistance programs.  *See, e.g.*, PL000000256; PL000000226; PL000000244; PL000000246; PL000000227.  *See also In re Johnson & Johnson*, 2021 WL 3144945, at *10 (explaining that the "absence of an attorney on a document is not necessarily determinative" as "[c]ommunications remain privileged if they assist [an] attorney to formulate and render legal advice" (internal quotation marks and citation omitted)).

**Exhibit 2 Documents.**  SaveOnSP next argues that JJHCS improperly withheld information in approximately 90 documents on Exhibit 2, because the documents "do not appear privileged based on their descriptions."  SaveOnSP provides no legal authority for its suggestion that the provision of legal advice must be apparent from the document's description.  To the contrary, the privilege determination depends on an assessment of whether the underlying document includes disclosures "necessary to obtain informed legal advice."  *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *4 (D.N.J. Dec. 5, 2016), *on reconsideration in part*, 2017 WL 11633446 (D.N.J. Jan. 5, 2017) (quoting *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423-24 (3d Cir. 1991)).  As with Exhibit 1, many of the documents on Exhibit 2 were properly withheld because they convey legal advice from JJHCS's in-house attorneys, *see, e.g.*, PL000001075 (reflecting legal advice from J. Williams on draft presentation); PL000000424 (conveying legal advice from J. De Camara); PL000000097 (reflecting J. De Camara's legal advice), or reflect requests for legal advice, *see, e.g.*, PL000000097 (identifying areas for which legal advice was required); PL000000427 (same); PL000000414 (same).  In addition, as JJHCS's privilege log indicates, PL000002242 was properly withheld pursuant to the attorney-client and work product privileges as it reflects an attorney-client communication relating to litigation strategy.

Taylor Stone, Esq.
January 26, 2024
Page 3

**Exhibit 3 Documents.**   SaveOnSP contests that JJHCS improperly withheld approximately 130 "calendar invites" included in Exhibit 3.  Although neither the attorney-client nor the work product privilege applies to "the facts underlying any given communication," a "communication concerning that fact is entirely different." *La. Mun. Police Employees Retirement Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 305 (D.N.J. 2008); *In re Johnson & Johnson*, 2021 WL 3144945, at *4.  Email communications accompanying the calendar invitations at issue in Exhibit 3 were properly withheld when they reflect discussions with JJHCS's legal team regarding strategies for this litigation.  *See* PL000001253 (email communication with S. Harris regarding strategy for current litigation); PL000001257 (same); PL000002117 (email from S. Harris explaining purpose of meeting tied to litigation strategy); PL000001913 (same); PL000001919 (same); PL000001920 (same).  Likewise, information underlying requests for legal advice, to be discussed at upcoming meetings with counsel, was also properly withheld.  *See, e.g.*, PL000000398 (email reflecting areas for legal input for discussion at meeting with in-house counsel); PL000001217 (email explaining topics for discussion at upcoming meeting with S. Harris); PL000000820 (same); PL000000821 (same); PL000001938 (email explaining purpose of call regarding legal questions for S. Harris).  That said, after further review, JJHCS will be producing certain calendar invitations previously withheld in redacted form.

**Exhibit 4 Documents.**   SaveOnSP identifies approximately 60 documents on Exhibit 4 that it contends were improperly withheld pursuant to the work product privilege.  As indicated in JJHCS's privilege log, however, Exhibit 4 includes documents prepared in anticipation of JJHCS's litigation against SaveOnSP.  *See, e.g.*, PL000001086 (Oct. 2021 email communication with S. Harris discussing litigation strategy); PL000001108 (same); PL000001088 (October 2021 email communication between S. Harris and outside counsel discussing litigation strategy).  Furthermore, contrary to SaveOnSP's description that Exhibit 4 "contains a list of documents withheld solely on the basis of the work product privilege," JJHCS's privilege log indicates that many documents included in Exhibit 4 were also withheld based on application of the attorney-client privilege.  These documents include communications with JJHCS's counsel that reflect requests for legal advice or convey counsel's legal analysis regarding the implementation of JJHCS's patient assistance programs.  *See, e.g.*, PL000000224 (email with J. De Camara requesting legal advice); PL000001045 (email with J. De Camara reflecting legal analysis).

**Exhibit 5 Documents**.  SaveOnSP argues that JJHCS has improperly withheld or redacted approximately 240 documents on Exhibit 5 because the attorney-client privilege was waived through disclosure of these documents to third parties.  As an initial matter, Exhibit 5 contains many emails in which no third parties are included on the latest-in-time communications.  In those instances, JJHCS employees have forwarded a communication with a third party to JJHCS's in-house counsel to request their legal analysis.  *See, e.g.*, PL000001869 (email communication with third party forwarded to S. Harris requesting legal analysis); PL000001854 (same).  These documents were properly withheld, as the attorney-client privilege extends to emails which "forward[] [to counsel] prior non-privileged emails" that underlie the request for legal advice and assist the attorney in providing their analysis.  *Engage Health*, 2017 WL 10259770, at *3 ("[E]ven though one email is not privileged, a subsequent and privileged email

Taylor Stone, Esq.
January 26, 2024
Page 4

which forwards that prior non-privileged email, will allow the privilege to attach to the entire email chain, including the non-privileged prior email messages." (quoting *Rhoads Indus. Inc. v. Building Materials Corp. of Am.*, 254 F.R.D. 238, 240 (E.D. Pa. 2008)).

With respect to documents shared with third parties, the attorney-client privilege is maintained when an independent consultant acts as the "functional equivalent" of the party's employee and the communication with the third party was "kept confidential and made for the purpose of obtaining or providing legal advice." *In re Johnson & Johnson*, 2021 WL 3144945, at *9 (citing *In re Flonase Antitrust Litig.*, 879 F. Supp. 2d 454, 460 (E.D. Pa. 2012)); *see id.* (explaining that communications between Johnson & Johnson and its consultants, "even in the absence of an attorney . . . may be privileged if they are necessary for the client to obtain[] informed legal advice"); *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *6, *8 (applying functional equivalent doctrine to documents between party and public relations and communications consultants).

This legal principle recognizes that "in-house counsel should be able to communicate freely with consultants about legal issues without being chilled by the prospect that their communications will be produced to an adversary in discovery." *In re Johnson & Johnson*, 2021 WL 3144945, at *9. Documents listed in Exhibit 5 were appropriately withheld pursuant to this standard because they include confidential communications between JJHCS and third parties relating to information requested by or provided to JJHCS's attorneys to assist in their analysis of legal issues. *See, e.g.*, PL000002658 (email in which third party provides information requested by JJHCS's counsel to assist in the provision of legal advice); PL000002370 (same); PL000002292 (email in which JJHCS's counsel requests information necessary to provision of legal advice); *see also In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *9 (holding that information provided by third party "needed by [party's] attorneys to render legal advice" is privileged). Exhibit 5 also includes documents protected by the attorney-client privilege because they convey the legal analysis of JJHCS's attorneys. *See, e.g.*, PL000001908 (email conveying legal advice); PL000001750 (draft document reflecting legal advice); PL000001751 (same). *See also In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *10 (finding documents shared with third party were privileged where the "documents indicate[d] actual legal advice was conveyed" including an "email asking for legal insight" or an "email referring to attorney advice"); *In re Johnson & Johnson*, 2021 WL 3144945, at *7 (finding documents shared with third party privileged where they were reviewed by counsel "with a view towards legal issues").

\*     \*     \*

Finally, based on our review of SaveOnSP's revised privilege log dated October 10, 2023, we have identified several areas of concern, where it appears that SaveOnSP has inappropriately redacted or withheld certain documents that should have been produced. For example, the following documents appear on SaveOnSP's privilege log:

- **Emails that were sent to or from third parties.** *See, e.g.*, SOSP_0817331 (an email fully withheld for privilege from an individual with a "RideMetro.Org"

Taylor Stone, Esq.
January 26, 2024
Page 5

domain to Claudia Dunbar, Ron Krawczyk, Jill Stearns, and two individuals at Express Scripts Inc. ("ESI")); SOSP_0827911 (an email redacted for privilege including Michael Kirchhoff with an ESI domain); SOSP_0828613 (an email redacted for privilege including Aaron Mallin with an ESI domain);

- **Inconsistent privilege calls.** *See* SOSP_0832627, which is an attachment titled "JnJ letter page 2.pdf." This document was withheld as privileged even though "page 1" of this same attachment was produced; and

We have identified similar issues for the following documents that have not yet been logged on SaveOnSP's privilege log:

- SOSP_0940021, which is a spreadsheet reflecting notes on SaveOnSP calls with external parties, including Allina Health System, International Association of Heat and Frost Insulators Local 17 Welfare Fund, SKC, Inc., AmerisourceBergen Corporation, and HealthSmart; and

- SOSP_1034728, which is text message exchange involving no lawyers that was sent to and from a third party.

Please explain by February 2, 2024 why you have withheld or redacted the specific documents identified above. In the event you no longer wish to assert privilege over any of the documents identified herein, please promptly produce them.

Finally, in response to your SaveOnSP's January 25, 2024 letter, we can confirm that JJHCS has included, and will continue to include, all thread participants on emails included on its privilege logs. Thank you for confirming that SaveOnSP will correct its privilege log to address this issue and to adopt this practice moving forward. *See* Jan. 25, 2024 Ltr. from E. Snow to J. Long. Please confirm that you will provide the corrected version of your privilege log by February 13, 2024.

Very truly yours,

*/s/Caroline Zielinski*
Caroline Zielinski