# Sills Cummis & Gross

A Professional Corporation

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102-5400**
**Tel: 973-643-7000**
**Fax: 973-643-6500**

Jeffrey J. Greenbaum
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

October 21, 2024

**By Email**

Hon. Freda L. Wolfson
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL**
**UNDER THE DISCOVERY CONFIDENTIALITY ORDER**

Re:     **Motion to Compel SaveOnSP to Produce Documents**
        **Responsive to JJHCS's Request Nos. 126, 127, and 129**
        ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC***,
        **Civil Action No. 22-2632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of JJHCS, we write in further support of JJHCS's motion to compel SaveOnSP to produce documents responsive to JJHCS's Request Nos. 126 and 127 (the "Personnel File Requests"), as well as JJHCS's Request No. 129 (the "Monthly Sales Team Request").

## I.    Personnel File Requests (Request Nos. 126 and 127)

SaveOnSP does not (and cannot) claim any undue burden associated with producing these four personnel files.  Instead, SaveOnSP contends that they are irrelevant and too "sensitive" to be disclosed.  As explained below, these arguments are meritless and pretextual:  the files contain highly relevant information, of the kind that SaveOnSP has already produced and cited to the Court when doing so suited its purposes.

Honorable Freda L. Wolfson, U.S.D.J.
October 21, 2024
Page 2

### A.  The Personnel Files Are Relevant to Manufacturer Deception

SaveOnSP previously told JJHCS in writing that the personnel files at issue "do not contain any information regarding attempts to deceive or evade detection by manufacturers."  Ex. 10 (Aug. 23, 2024 Ltr. from M. Nussbaum to I. Eppler) at 2.  But SaveOnSP now admits, for example, that

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████  Opp. at 3 n.2 (alterations in original).  To be clear, ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████  Ex. 3 (SOSP_2158522) at -522.0002 ██████████

████████████████████████████████  Moreover, even general praise that does not reference particular tasks is no less relevant.  If an employee whose role revolves around lying to manufacturers receives lavish praise, then JJHCS is entitled to ask questions in depositions about the bases for that praise.  These employees' deceptive efforts, and the "praise" they received as a result, are squarely relevant.

SaveOnSP's brief confirms that the covered personnel files contain employee "self-evaluation[s]" and "their supervisors' appraisal of their job performance," as well as compensation information.  Opp. at 3.  Given that manufacturer deception was a core job function of these employees, Mot. at 2–5, these documents may likewise reflect kudos, bonuses, or other incentives attributable to manufacturer deception work, whether described forthrightly or euphemistically.  SaveOnSP now suggests that such kudos and evaluations are irrelevant or otherwise too "highly sensitive" to be discoverable.  Opp. at 2–4.  But this is untenable:  if SaveOnSP praised employees

2

Honorable Freda L. Wolfson, U.S.D.J.
October 21, 2024
Page 3

engaged in manufacturer deception, then that surely clears the low bar for relevance. Indeed, SaveOnSP has itself made similar arguments in far more tenuous circumstances. *See, e.g.*, SaveOnSP Aug. 26, 2024 Mot. re Incelli and Khalil at 2 (SaveOnSP citing and relying upon a JJHCS document giving kudos to an employee).

Finally, SaveOnSP argues irrelevance on the grounds that JJHCS "fails to substantiate its assertion that these employees helped SaveOn evade detection by drug manufacturers." Opp. at 4. This is a bizarre claim, since SaveOnSP has already admitted that ███████████████████ ████████████████████████████████████████████████████████████████ Ex. 2 at 6–7. And SaveOnSP, in turn, used this ill-gotten information to restructure the SaveOnSP program in a manner intended to help SaveOnSP evade detection. For instance, ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ Ex. 21 (SOSP_0408440) at -442—████████████████████████████████████████ Ex. 17 (SOSP_0694247). Far from being only "marginally relevant," these employees' misconduct—and how SaveOnSP leveraged or otherwise reacted to that misconduct—is "wrongful means" evidence at the core of JJHCS's tortious interference claims. Apr. 10, 2024 Order at 8 n.4 (the Court: "Defendant's alleged conduct of making misrepresentations to Plaintiff is relevant to the tortious interference claim, because that conduct bears on the issue of whether Defendant employed wrongful means in its alleged efforts to induce patients to breach the terms of the CarePath Program."). And while SaveOnSP claims that JJHCS "fails to substantiate its assertion that SaveOn executives were aware that the four employees sometimes used false names," Opp. at 4 n.3, Zulqarnain testified that ████████████████████████████

Honorable Freda L. Wolfson, U.S.D.J.
October 21, 2024
Page 4



Ex. 1 at 73:5–73:25; 77:4–6.  Regardless, if SaveOnSP wishes to defend its employee evaluations by arguing these employees' deceptive conduct was somehow unknown to their supervisors, it can do so—that does not detract from the relevance of the underlying employee evaluations or the need to produce them in discovery.

**B.    SaveOnSP's Privacy Concerns Are Meritless**

SaveOnSP also asks the Court to deny JJHCS's motion because personnel files contain "highly sensitive information," which according to SaveOnSP includes "social security numbers, information about their salaries and retirement accounts, contact information for their references, their own self evaluations, [and] their supervisors' appraisal of their job performance."  Each category of information is addressed in turn below.

- Social security numbers:  SaveOnSP can redact this information from the files before producing them.

- Compensation information:  Information on compensation, bonuses, and raises is relevant.  Information regarding compensation will show how SaveOnSP valued the work of these four employees—including their manufacturer deception work.  And information regarding bonuses and raises is relevant to whether and how SaveOnSP encouraged its employees to deceive manufacturers.  Moreover, SaveOnSP has already produced compensation information, including for at least one of the employees at issue in this motion.  *See* Ex. 22 (SOSP_0198969).  There is no basis for SaveOnSP to use this same type of information as a pretext to withhold the personnel files.

- Contact information for references:  SaveOnSP can redact this information from the files before producing them.

- Performance evaluations and appraisals:  As noted above, what little SaveOnSP has revealed regarding performance evaluations suggests that they contain highly

4

Honorable Freda L. Wolfson, U.S.D.J.
October 21, 2024
Page 5

> relevant information. And even general praise or advancement for the implicated employees is squarely relevant and will form the basis for further inquiry at depositions.

SaveOnSP also seems to suggest that a generalized privacy interest in personnel files exempts them categorically from discovery. Opp. at 4. This argument does not hold water. The personnel files would be protected by the comprehensive Discovery Confidentiality Order in this case. Indeed, SaveOnSP has already produced highly sensitive information, including protected health information of patients, under the DCO. SaveOnSP does not, and cannot, explain why employee reviews and compensation information would merit greater protection than highly sensitive patient health records.

SaveOnSP's cited authority supports JJHCS on this point, not SaveOnSP. For example, while SaveOnSP claims the court "denied a motion to compel" personnel files in *Carroll v. Delaware River Port Authority*, *see* Opp. at 2 n.1, the opposite is true: the court found the files relevant and ordered the defendant to produce them subject to a protective order, exactly the outcome JJHCS seeks here. *See* 2015 WL 12819181, at *5 (D.N.J. Mar. 31, 2015). The other two cases cited by SaveOnSP are plainly not on point. In one, the court chose not to compel production of a personnel file because—unlike here—the party seeking it "had access to other sources for the same information through prior discovery." *Pro. Recovery Servs., Inc. v. Gen. Elec. Cap. Corp.*, 2009 WL 137326, at *4 (D.N.J. Jan. 15, 2009). And the other case dealt with a tangential personnel file sought **from a third party**. *See Boykins v. inVentiv Com. Servs., L.L.C.*, 2014 WL 413538, at *1 (D.N.J. Feb. 4, 2014). *Boykins* is inapposite here because "the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery." *Phillips v. Archdiocese of Newark*, 2023 WL 3303594, at *3 (D.N.J. May 8, 2023). These cases have no bearing here,

Honorable Freda L. Wolfson, U.S.D.J.
October 21, 2024
Page 6

where the discovery sought is available only through these personnel files in the course of party

discovery.

## II.    Monthly Sales Team Request (Request No. 129)

SaveOnSP now concedes the relevance of its Monthly Sales Team Discussions with ESI—

during which meetings SaveOnSP acknowledges "ESI and SaveOn employees [talked] about ways

to pitch and implement SaveOn's services for ESI's clients." Opp. at 4. Nevertheless, SaveOnSP

vehemently opposes production of documents relating to these Monthly Sales Team Discussions

on two grounds: *first*, that JJHCS purportedly failed to confer sufficiently before moving, and

*second*, that JJHCS's proposed search term is overbroad. Neither claim is true, and neither

argument is persuasive.

### A.  JJHCS Appropriately Conferred with SaveOnSP Before Moving to Compel

JJHCS conferred extensively with SaveOnSP before moving to compel but was

stonewalled at every turn. SaveOnSP served its Responses and Objections to the Monthly Sales

Team Request on July 15, 2024, and declared that it would "not produce further documents in

response to this Request." Ex. 9 (SaveOnSP's Responses and Objections to JJHCS's Thirteenth

Set of RFPs) at 7. JJHCS nonetheless conferred with SaveOnSP on July 23, 2024, and later

proposed a narrow and targeted search term designed to capture responsive documents. Ex. 23

(Jul. 24, 2024 Email from I. Eppler to M. Nussbaum). After a month of letters and emails

discussing the Monthly Sales Team Request, SaveOnSP made clear it would not run JJHCS's

proposed search term. *See, e.g.*, Ex. 19 (Jul. 24, 2024 Email from I. Eppler to M. Nussbaum); Ex.

20 (Aug. 6, 2024 Email from M. Nussbaum to I. Eppler); Ex. 24 (Aug. 9, 2024 Ltr. from I. Eppler

Honorable Freda L. Wolfson, U.S.D.J.
October 21, 2024
Page 7

to M. Nussbaum) at 2; Ex. 10 (Aug. 23, 2024 Ltr. from M. Nussbaum to I. Eppler) at 2. Only after

that did JJHCS file this motion.

### B. JJHCS's Proposed Term Is Narrowly Tailored

SaveOnSP acknowledges it must fill any "actual gap in SaveOn's production of documents

regarding the Monthly Sales Team Discussion" by running "an appropriately tailored search term

designed to fill it." Opp. at 6. That is what JJHCS seeks here. JJHCS has determined that

documents related to the Monthly Sales Team Discussion are relevant because that meeting

frequently addressed relevant issues such as manufacturer deception. Mot. at 8–9. And it has

proposed a narrowly tailored search term designed to fill in any gap in SaveOnSP's production

related to that meeting. JJHCS's proposed term would require SaveOnSP to review only 927

additional documents, *see* Ex. 20—much less effort, in other words, than SaveOnSP has spent

stonewalling production of these relevant documents. While SaveOnSP now maligns the supposed

overbreadth of this term, the truth is that SaveOnSP routinely cries overbreadth to avoid producing

damaging documents, and this Court has repeatedly rejected SaveOnSP's protests even when far

more documents are at issue. *See, e.g.*, Apr. 10, 2024 Order at 6 ("5,000 is not a prohibitive number

of documents"). SaveOnSP cannot explain why a search term requiring it to review only 927

documents is overbroad given this precedent.

SaveOnSP also asserts that JJHCS's proposed search term would elicit too many irrelevant

documents, but that argument is meritless. It points to several purportedly irrelevant documents

in its existing production that it claims would be captured by JJHCS's proposed search term,[1] and

---

[1] Although the documents SaveOnSP cites are not responsive to the Monthly Sales Team Request, they are relevant to this case. These documents are communications related to "meetings that ESI

Honorable Freda L. Wolfson, U.S.D.J.
October 21, 2024
Page 8

claims it is "willing to negotiate" what it calls an "appropriately tailored search term," while providing no guidance as to what sort of search term it would deem "appropriately tailored." Opp. at 6. This makes little sense when addressing a review universe of 927 documents—further negotiation and testing of search terms will take far longer and cost far more than just reviewing these documents for production.

SaveOnSP also asserts that JJHCS's proposed search term would capture mostly false hits because the Monthly Sales Team Discussions "were informal and not traditionally minuted." Mot. at 6. But it provides no basis for that assertion beyond say-so, and even if the Monthly Sales Team Discussion was not itself "minuted," JJHCS's proposed search term likely captures follow-on email traffic memorializing the meetings. Given the minimal burden associated with reviewing 927 documents, JJHCS should not have to take SaveOnSP's word that JJHCS's proposed search term does not capture relevant documents related to the Monthly Sales Team Discussions: the Court should order SaveOnSP to prove it by running the term and reviewing the documents it yields.[2]

_____

holds on a monthly or semi-monthly basis with its clients" that included SaveOnSP or involve meetings where SaveOnSP was discussed. Opp. at 6. SaveOnSP previously agreed to produce "communications with plan participants and plans that are relevant to the subject matter of this Action." Ex. 25 (SaveOnSP's R&Os to JJHCS's 6th Set of RFPs) at 3–4. If anything, they only confirm that this search term is eliciting a relevant universe of documents.

[2] SaveOnSP also claims that the proposed search term is overbroad because JJHCS has asked that SaveOnSP run the term over all 28 full custodians, when only four of those custodians attended the meetings at issue. Opp at 5–6. SaveOnSP never raised this concern to JJHCS during more than a month of conferral. In any event, SaveOnSP's argument is not a compelling basis to revisit JJHCS's proposed search parameters. Reviewing 927 documents does not meaningfully burden SaveOnSP, and even if only four custodians regularly attended the Monthly Sales Team Discussion, other custodians may have discussed the meetings in communications that do not involve the four attendees.

8

Honorable Freda L. Wolfson, U.S.D.J.
October 21, 2024
Page 9

## CONCLUSION

For the foregoing reasons, along with those set forth in JJHCS's opening brief, Your Honor

should compel SaveOnSP to produce documents to JJHCS's Request Nos. 126, 127, and 129.

Respectfully submitted,

s/ *Jeffrey J. Greenbaum*
JEFFREY J. GREENBAUM

cc:     Counsel of record for SaveOnSP