**Robinson+Cole**

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

October 14, 2024

<u>VIA E-Mail</u>

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

          Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
                ***No. 2:22-cv-02632 (JKS) (CLW)***

Dear Judge Wolfson:

On behalf of Save On SP, LLC ("<u>SaveOn</u>"), we write in opposition to Plaintiff Johnson and Johnson Health Care Systems, Inc.'s ("<u>JJHCS</u>," and, with its affiliates, "<u>J&J</u>") motion to compel the addition of four new custodians.

SaveOn has already designated 33 custodians, including its entire senior leadership. It has reviewed more than 1.2 million documents and produced more than 300,000, an effort costing tens

of millions of dollars.[1] J&J now demands that SaveOn run its full set of approximately 110 search terms over three new custodians' files and a subset of those terms over one new custodian's files. This request is unjustified. SaveOn has already produced documents from multiple custodians who worked on the topics that J&J raises, and J&J fails to substantiate its assertions that the custodians are likely to have unique documents on those topics. Your Honor should deny J&J's fishing expedition.

## I. Member and Patient Support Representatives and Supervisors

J&J fails to show that Leslie Kauffman, Brandon Bartz, and Paula Mighells are likely to have unique, relevant information from their roles as Patient and Member Support Representatives ("PSRs") and as PSR supervisors.[2] SaveOn has already produced documents from ten custodians employed as PSRs and PSR coaches, supervisors, and team leads, and in other roles in which they worked with and supervised PSRs:

---

[1] J&J asserts that its motion should be granted in part because it has designated 45 custodians while SaveOn has designated 33. Mot. at 2. This is, charitably, nonsense. First, it is unsurprising that J&J, a massive enterprise, would have more custodians than SaveOn, a business with fewer than 300 employees. SaveOn was also structured so that a small number of employees worked on the topics at issue in this case; J&J, in contrast, was structured so that many dozens of its employees across numerous entities and groups worked on relevant issues. Second, 28 of SaveOn's 33 custodians are *full* custodians, meaning that SaveOn has run approximately 110 search terms over their documents; only 18 of J&J's custodians are full custodians, the other 27 are *limited* custodians for whom it ran narrow search terms targeted to the custodians' work. These important distinctions partially explain why, to date, J&J has produced only 45,277 documents, fewer than one sixth of the over 300,000 documents that SaveOn has produced.

[2] SaveOn previously used the term "Patient Support Representative" for employees who interface with patients. It later changed the title of the role to "Member Support Representative." The terms are interchangeable. For consistency, SaveOn uses solely "Patient Support Representative" and "PSR" throughout this opposition. PSRs are employed by SaveOn to address patients' questions and assist them in obtaining their medications at no cost.

- Andrea Waker: PSR (2017-2019), *see* Ex. 1 at -116 (SOSP_0000114); PSR Team Lead[3] (2019-2021), *see* Ex. 2 at -141 (SOSP_0000137); Senior Team Lead (2021-2024), *see* Ex. 3 at PDF page 8 (SOSP_0000153);

- Jennifer Menz: PSR (2018-2019), *see* Ex. 4 at -122 (SOSP_0000121); PSR Team Lead (2019-2021), *see* Ex. 5 at -126 (SOSP_0000125); Pharmacy Relations Supervisor (2021-present), *see* Ex. 3 at PDF page 6 (SOSP_0000153);

- Brianna Reed: PSR (2019-2020), *see, e.g.*, Ex. 6 (SOSP_0302534); PSR Supervisor (2020-2023), *see* Ex. 7 (SOSP_0686494); Ex. 8 (SOSP_0704569); Senior Pharmacy Relations (Billing) Manager (2023-present), *see* Ex. 9 (SOSP_1315736);

- Sarah Segerson: PSR (2019-2020), *see, e.g.*, Ex. 10 at -812 (SOSP_0386810) (███████████████████████████████████████); Quality Assurance Auditor (2020-2021), *see* Ex. 2 at -141 (SOSP__0000137); Quality Assurance Supervisor (2021-present), *see* Ex. 3 at PDF page 8 (SOSP_0000153);

- Ted Mighells: PSR (2020), *see* Ex. 11 (SOSP_0840241) (██████████████████████████████████████); PSR Supervisor (2020-2021), *see* Ex. 12 (SOSP_0943830);

- Ayesha Zulqarnain: PSR (2018-2021), *see* Ex. 13 at -124 (SOSP_0000123); Pharmacy Support (2021-2022), *see* Ex. 14 at -134 (SOSP_0000133); Special Projects Coordinator (2022-current), *see* Ex. 3 at PDF page 2 (SOSP_0000153);

- Jillian Vincheski: PSR Supervisor (2018-2019), *see* Ex. 4 at -122 (SOSP_0000121); IT Security Analyst (2019-present), *see* Ex. 15 at -023 (SOSP_0711023);

- Nicole Haas: PSR Team Lead (2020), *see* Ex. 2 at -147 (SOSP_0000137); PSR Supervisor (2021-2022), *see* Ex. 16 at -349 (SOSP_0413349); Enrollment Manager (2022-present), *see* Ex. 17 at -889 (SOSP_0608889);

- Laura McClung: Denver Director of Member Services (2021-present), *see* Ex. 3 at PDF page 7 (SOSP_0000153); Ex. 18 (SOSP_0000001);

- Danielle Wagner: Call Center Director 2020-2021, *see* Ex. 2 at -139 (SOSP_0000137); Director of Member Services (2021-present), *see* Ex. 3 at PDF page 7 (SOSP_0000153).[4]

---

[3] SaveOn previously used the term "Quad Coach" to refer to PSR Team Leads. The terms are interchangeable. For consistency, SaveOn uses solely "Team Lead" throughout this opposition.

[4] The Directors of Member Services oversee all PSRs and their supervisors. *See* Ex. 3 at -159 (SOSP_0000153).

SaveOn has produced 49,508 documents from these ten custodians, from the full discovery period, almost a fifth of which mention Kauffman, Bartz, or Mighells.

Kauffman's, Bartz's, and Mighells's documents are likely duplicative of the tens of thousands of documents already produced from the other PSR custodians, because SaveOn's PSRs and their supervisors worked closely together, *see e.g.*, J&J Ex. 5 at -854 (███████████████); J&J Ex. 8 at -363 (███████████████); J&J Ex. 31 (███████████████); J&J Ex. 36 (███████████████), and frequently discussed their work in large group chats, *see, e.g.*, J&J Ex. 3 (SOSP_1370342) (███████████████); J&J Ex. 9 (SOSP_2389506) ███████████████); J&J Ex. 11 (SOSP_1944933) (same); J&J Ex. 12 (SOSP_2159340) (same); J&J Ex. 30 (███████████████).

While J&J asserts that Kauffman, Bartz, and Mighells likely encountered and discussed patient issues, Mot. at 3, 11, SaveOn has already produced documents from the ten existing PSR custodians, as well as the call notes and descriptions of **220,000** calls made by or to SaveOn's PSRs,[5] reflecting all calls with patients concerning Janssen drugs during the relevant period.[6] And while J&J asserts that these employees might have unique information about SaveOn's training

---

[5] *See, e.g.*, Ex. 19 (SOSP_0446832) (call records); Ex. 20 (SOSP_0446833) (same); Ex. 21 (SOSP_1320403) (same); Ex. 22 (SOSP_1320403) (same); Ex. 23 (SOSP_1320404) (same).

[6] SaveOn has agreed in principle to produce available corresponding call recordings. *See* Ex. 24 (Aug. 2, 2024 Ltr. from M. Nelson to J. Chefitz).

processes for PSRs, Mot. at 8, 12, SaveOn has already produced piles of training materials from both custodial and non-custodial sources, *see* Ex. 32 (SaveOn's R&Os to J&J's First Set of RFPs), including all recorded training sessions that it has been able to identify, and thousands of talk tracks, training guides, and presentations.[7] SaveOn's investigation shows that Kauffman, Bartz, and Paula Mighells did not have primary responsibility for drafting training materials; that responsibility lay with ███████████████████████████████████—all existing custodians. In light of this, J&J's requests should be denied.

### A. Leslie Kauffman

Nearly three months ago, SaveOn offered to add Kauffman as a limited custodian if J&J would add Joseph Incelli as a similarly limited custodian. *See* J&J Ex. 22 at 2 (July 19, 2024 Ltr. from M. Nelson to B. Robinson); *see also* J&J Ex. 26 (Aug. 1, 2024 Ltr. from M. Nelson to B. Robinson). J&J refused, insisting that Kauffman be a full custodian. J&J Ex. 21 (Aug. 5, 2024 Ltr. from B. Robinson to M. Nelson). This demand is meritless.

While J&J asserts that Kauffman interacted with patients as a PSR, Mot. at 3, SaveOn has already produced ample discovery about PSRs and patient complaints, *see supra* Section I. The only potentially unique information that J&J identifies is a single, discrete project beginning in 2021 in which she "obtain[ed] information f███████████████████████████████ ██████" Mot. at 3. As it offered in July*,* SaveOn remains willing to negotiate limited search parameters to identify these documents. But Kauffman's role on this one small project during a

---

[7] *See, e.g.*, Ex. 25 (SOSP_0505478) (talk track); Ex. 26 (SOSP_0300734) (call coaching form); Ex. 27 (SOSP_0297572) (enrollment process guide); Ex. 28 (SOSP_0302661) (guide on troubleshooting billing issues); Ex. 29 (SOSP_2371545) (March 2023 billing huddle guidance).

Hon. Freda L. Wolfson                                                                                          Page 6

short period of time comes nowhere close to justifying running more than 100 search terms over her documents for the full time period, requiring review of 19,488 more documents.

**B.    Brandon Bartz**

Bartz was a PSR in 2021 and a PSR supervisor from 2021 to 2023. Like the ten existing PSR custodians, he spoke with members of SaveOn-advised plans, answered questions from PSRs, and elevated issues to the PSR Director, Laura McClung (a current custodian), and the Member Services Manager, Danielle Wagner (also a current custodian). J&J does not show that Bartz—who appears on 4,222 documents that SaveOn already produced—is likely to have unique documents about training, policies, or patient complaints, Mot. at 7-10, given SaveOn's vast production on those topics. *See supra* Section I. (For instance, J&J cites a Microsoft Teams chat of PSR supervisors in which Bartz ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," J&J Mot. at 8 (citing J&J Ex. 30)—but SaveOn has already produced nearly ***250 talk tracks*** with that same language.) Adding Bartz as a full custodian would require SaveOn to review at least 22,700 additional documents.[8]

J&J's only unique argument about Bartz is that he "spoke with unusual candor and color" in private conversations with another SaveOn employee, Ted Mighells. Mot. at 9. But these discussions were mostly about irrelevant topics like office politics. *See* J&J Ex. 33 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); J&J Ex. 35 at -970-71 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). And the snippet of conversation that J&J cites reflects ***Ted Mighells's*** opinions, not Bartz's. *Compare* Mot. at 9 ("Bartz ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), *with* J&J Ex.

---

[8] SaveOn is still processing one final data-source for Bartz; this number is likely to increase once that data is processed.

33 at -955-56 (███████████████████████████████████████████████

███████████████████████████████). Bartz's water-cooler conversations do not show he is likely to have unique documents on actually relevant topics.

### C. Paula Mighells

Mighells—a PSR from 2019 to 2021 and a Quality Assurance Auditor from 2021 to 2023—had no unique knowledge of SaveOn or its operations, and her documents will be duplicative of the ten existing PSR custodians'. PSRs communicated extensively through chats, and SaveOn already produced all responsive messages from a Teams chat called "█████████████," *e.g.* J&J Ex. 43, because custodians Reed and Wagner were participants. SaveOn has also produced all responsive messages from the "████████████████████████" Teams chat, *e.g.* J&J Ex. 49, and the "█████████" Teams chat, *e.g.* J&J Ex. 45, which included Mighells and all other quality assurance employees, because other custodians were part of those chats too. Overall, SaveOn has already produced more than **218,000** Teams messages that Mighells sent or received (in addition to over 700 documents on which Mighells is the sender or recipient). Adding Mighells as a full custodian would require review of 16,323 additional documents.

While J&J asserts that Mighells would have unique documents about declined enrollments, Mot. at 11-12, SaveOn's investigation shows that, in her role as a Quality Assurance Auditor, Mighells ███████████████████████████████████████████████████

████████████ (a current custodian), ████████████████████████████

████████ (both current custodians). SaveOn has produced the relevant call recordings and emails. J&J cites a document stating that ████████████████████████████████████

████████████████████████████████████████, Mot. at 11 (citing J&J Ex. 46)—but SaveOn has produced extensive call center records showing which patients declined and accepted its services. *See* Ex. 19 (SOSP_0446832) (call records); Ex. 20 (SOSP_0446833) (same); Ex. 21

(SOSP_1320402) (same); Ex. 22 (SOSP_1320403) (same); Ex. 23 (SOSP_1320404) (same). J&J also cites an email ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as evidence that communications regarding declined enrollment calls would be in Mighells's possession, Mot. at 11-12 (citing J&J Ex. 47)—but SaveOn already produced call records showing that same information—plus more that Mighells did not receive.[9]

While J&J also asserts that Mighells is relevant to its unfounded allegation that SaveOn tried to silence its employees, Mot. at 12-13, Your Honor has already ruled on this issue. When J&J sought information about SaveOn's use of its confidentiality policies, Dkt. 298, the Court denied J&J's motion and told it to consider narrower requests. Dkt. 305 ¶ 10. SaveOn offered to produce exactly what J&J told Your Honor it wanted: documents from SaveOn executives Jody Miller, Claudia Dunbar, and Rob Saeli, the individuals who participated in decision-making on these issues. Ex. 30 (Aug. 30, 2024 Ltr.); Apr. 3, 2024 Hr'g Tr. at 106:21-23; 108:17-20 (J&J saying it wanted "very limited" discovery from "among the top three or four executives"). If J&J seeks information about why Mighells was terminated, Mot. at 12-13—and it still does not show why that would be relevant—that information would be in the files of the existing custodians who decided to terminate her.

---

[9] *Compare* J&J Ex. 47 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.") *with* Ex. 21 at Row 5893 (SOSP_1320402) ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").

II.     **Jenna Quinn**

Jenna Quinn, a Billing Services Supervisor and former Billing Specialist, is not likely to have unique documents on the "evasion" topics that J&J alleges. Mot. at 13-16. SaveOn has identified the employees who it understands, based on its reasonable investigation, engaged in the conduct that J&J calls evasive, and it has produced their responsive documents. *See* Ex. 31 (SaveOn's Apr. 24, 2024 Supplemental R&Os). Quinn was not one of them. SaveOn's investigation shows instead that Quinn took information from her supervisors—including custodians Brianna Reed, Nick Morrisey, and Jennifer Menz—and synthesized and shared it with her team in the billing department. This information included training policies and talk tracks. J&J's proposal would require SaveOn to review 2,524 additional documents.

J&J fails to back up its assertion that Quinn "worked closely with" Zulqarnain and Johnson to evade manufacturer detection. Mot. at 15. J&J cites documents showing that Quinn ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;[10] they do not show that Quinn had any substantive input. For example, while J&J says that Exhibit 62 shows that Quinn was involved with Zulqarnain and Johnson "lying to manufacturers," Mot. at 15, it shows only ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

---

[10] While J&J asserts that Zulqarnain testified "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mot. at 15, in fact, when asked ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ When asked ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" J&J Ex. 61 at 124:17-25.

▬▬▬▬▬ J&J Ex. 62 at -253. This comes nowhere close to showing that Quinn is likely to have unique, relevant documents.

\* \* \*

We appreciate Your Honor's attention to this matter.

Respectfully submitted,

/s/ E. Evans Wohlforth, Jr.
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*