

**Freda Wolfson**
Chief U.S. Dist. Judge (ret.)
Partner

One Lowenstein Drive
Roseland, New Jersey 07068

T: (862) 926-2708
F: (973) 597-2400
E: fwolfson@lowenstein.com

## SPECIAL MASTER LETTER ORDER

November 21, 2024

*VIA ECF and Email*
TO ALL COUNSEL OF RECORD

    RE:    *Johnson & Johnson Health Care Systems, Inc. v. SaveOnSP, LLC*
           **Civ. Action No.: 22-2632(JKS)(CLW)**

Counsel:

On November 18, 2024, I conducted an in-person motion hearing on two discovery-related motions filed by Plaintiff Johnson & Johnson Health Care Systems, Inc. ("Plaintiff" or "JJHCS"): 1) Motion to compel Defendant SaveOnSP, LLC ("Defendant" or "SaveOnSP") to add four additional custodians [ECF No. 390]; and 2) Motion to compel SaveOnSP to Produce Documents Responsive to JJHCS's Request for Production Nos. 126, 127, and 129 [ECF No. 392]. This Letter Order memorializes the rulings that I made on the record.

For the reasons set forth on the record, it is

**ORDERED** that Plaintiff's Motion to compel SaveOnSP to add four additional custodians is **GRANTED** in part and **DENIED** in part, as follows:

    1.    Leslie Kauffman was employed by SaveOnSP from June 2017 to approximately September 2023. She began her tenure as a Patient Support Representative ("PSR") and was promoted to Program Retention Specialist ("Specialist") sometime in 2021. According to Plaintiff, Kauffman tracked

    assistance programs, strategized to evade manufacturer detection, and often acted as a liaison between PSRs and management to relay instructions for avoiding such detection. Defendant has stated that it is willing to confer with Plaintiff to identify relevant, non-privileged documents related to Kauffman's role as a Specialist. Accordingly, the parties are directed to negotiate appropriate and targeted search terms, as well as the applicable time period. With respect to Kauffman's earlier role as a PSR, the parties are also directed to confer on the applicable time period and search terms to identify relevant, non-privileged documents. However, this search should focus on the earlier years of Kauffman's employment as a PSR. As Defendant noted, and I agreed, the need for custodial documents from Kauffman diminishes as the number of PSRs employed by Defendant increased over recent years.

2. Brandon Bartz is a Member Services Supervisor, and was a "Training Specialist," who has been employed by SaveOnSP since at least 2020. According to Plaintiff, Bartz trained PSRs on their communications with patients and drug manufacturers, such as Janssen, covering a wide range of topics relevant to this litigation. Plaintiff seeks two categories of documents from Bartz: (i) documents related to SaveOnSP's policies and procedures regarding PSRs' handling of member calls in practice, and (ii) communications reflecting Bartz's opinions on SaveOnSP's business and practices. Regarding the first category, while Defendant contends that any

2

relevant documents Bartz possesses would be duplicative, there is insufficient evidence to convince me that Bartz does not hold unique documents pertinent to Plaintiff's claims. This conclusion is supported by my review of exemplary documents submitted by Plaintiff. Therefore, the parties are directed to meet and confer to establish search terms to identify documents from Bartz's tenure as a Training Specialist, as well as his current role as Member Services Supervisor. However, as to the second category, Plaintiff is not entitled to documents or communications that reflect Bartz's internal or personal conversations with colleagues regarding his views on Defendant or its operations.

3. Paula Mighells was employed by SaveOnSP from mid-2019 to approximately mid-2023, initially as a PSR (2019–2021) and later in Quality Assurance (2021–2023). As I reasoned on the record, because there are already several PSRs designated as full custodians, any documents Mighells may have possessed during her tenure as a PSR are likely duplicative. However, this does not apply to her role as a Quality Assurance Auditor. I find that, in this capacity, Mighells would possess relevant and unique documents as a limited custodian. Therefore, the parties are directed to negotiate limited search terms to identify relevant, non-privileged documents. However, Plaintiff is precluded from obtaining any personnel documents or communications involving Mighells,

including those related to SaveOnSP's efforts to allegedly silence its employees.

4. Jenna Quinn joined SaveOnSP in early 2019 as a member of its billing department. She has served as a Billing Specialist, as well as a Billing Services Supervisor. JJHCS requests that Quinn be added as a limited custodian and that SaveOnSP be compelled to run over Quinn's custodial files a narrow set of search terms that will capture SaveOnSP's efforts to allegedly evade detection by manufacturers. Although Defendant argues reviewing relevant documents from Quinn would be burdensome, applying Plaintiff's narrow search terms resulted in a hit count of 2,524 documents. This volume is not unduly burdensome relative to the documents that have been produced and necessary for this complex case. I find that adding Quinn as a limited custodian as proposed by Plaintiff is appropriate. Defendant is directed to review the relevant documents and produce non-privileged documents to Plaintiff.

**ORDERED** that Plaintiff's Motion to compel SaveOnSP to produce documents responsive to JJHCS's Request Nos. 126, 127, and 129 is **GRANTED** in part and **DENIED** in part, as follows:

1. Request Nos. 126 and 127 relate to the personnel files of four SaveOnSP employees: Ayesha Zulqarnain, Alissa Langley, Kelsey Leger, and Jessica Johnson. Plaintiff seeks those files in order to demonstrate that Defendant sanctioned or lauded these employees' alleged efforts to deceive

4

      pharmaceutical manufacturers. After a review of the files, Defendant represents that they do not contain any information regarding attempts to deceive or evade detection by manufacturers, and at the hearing, Defendant offered and submitted the files to me for an *in camera* review.

2. While personnel files are not exempt from discovery, "[i]t has been recognized that [those files], even of a party's agent, may contain information that is both private and irrelevant to the case, and that special care must be taken before personnel files are turned over to an adverse party." *Prof'l Recovery Servs. v. GE Capital Corp.*, No. 06-2829, 2009 U.S. Dist. LEXIS 3889, at *10 (D.N.J. Jan. 15, 2009). Accordingly, discovery in this context "may be denied or it may be narrowly tailored to meet the needs of the case, balanced against the reasonable expectations of privacy of the subject party." *Id.* Given the privacy interests implicated by the sensitive information typically contained in personnel files, courts "expect[] a clear showing of relevance to permit the discovery . . . ." *Hashem v. Hunterdon Cnty.*, No. 15-8585, 2018 U.S. Dist. LEXIS 86483, at *15 (D.N.J. May 23, 2018). Here, aside from Defendant's representation that the files do not contain the type of conduct raised by Plaintiff, praising or disciplining Defendant's employees is only marginally relevant and does not outweigh the privacy concerns associated with the personnel files. Thus, at this time, Plaintiff's request for these files is denied. Nevertheless, I will conduct an *in camera*

5

        review of the files, and if that review identifies issues requiring further discussion, I will notify the parties.

3. In balancing the parties' interests, however, Plaintiff is permitted to serve one additional interrogatory to Defendant seeking compensation and bonus information regarding these four employees.

4. Request No. 129 seeks documents "concerning the Monthly Sales Team Discussion and its meetings . . . including all participant lists, associated emails, preparatory materials, research, agendas, meeting minutes, and calendar invitations."

5. Plaintiff proposed a search string to identify documents related to the Monthly Sales Team Discussions between SaveOnSP executives and ESI executives. Defendant ran the proposed terms, which yielded 927 additional documents for review. While this number is not overly burdensome, I find the search terms to be overbroad, as they may capture irrelevant documents. I proposed the following search string, which both parties have agreed to:

**("monthly sales" w/10 (ESI or "Express Scripts")) w/25 (discussion OR meet OR conversation OR call OR notes OR minutes)**

Defendant is directed to run this search string on all 28 existing custodians (excluding the custodians added in this Order), review the resulting documents, and produce all relevant, non-privileged documents to Plaintiff.

6

**ORDERED** that if any additional disputes arise regarding the aforementioned categories of documents, the parties are directed to bring them to my attention promptly. Furthermore, while no specific deadlines have been imposed for the meet-and-confers or productions, any disputes concerning timing may also be brought to my attention.

*/s/ Freda L. Wolfson*
Hon. Freda L. Wolfson (ret.)
Special Master
