# EXHIBIT B
# Part 2

# Sills Cummis & Gross
### A Professional Corporation

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102-5400**
**Tel: 973-643-7000**
**Fax: 973-643-6500**

Jeffrey J. Greenbaum
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

November 4, 2024

<u>VIA Email</u>

Honorable Freda L. Wolfson, U.S.D.J.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

> **Re:    Opposition to SaveOnSP's October 25, 2024 Motion to Compel**
> ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,**
> **Civil Action No. 22-2632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of JJHCS, we write to oppose SaveOnSP's October 25, 2024 motion to compel JJHCS to produce documents from TrialCard Inc., now known as Mercalis Inc. ("TrialCard"), within two weeks.

## PRELIMINARY STATEMENT

SaveOnSP's grievance-laden motion boils down to one complaint:  that JJHCS has not searched for and produced certain documents within the files of third party TrialCard, over which the Court held that JJHCS has legal "control," at a speed that SaveOnSP finds satisfactory.  Accordingly, SaveOnSP concludes, the Court should require that unspecified TrialCard documents be produced within two weeks, or it suggests that JJHCS should file a lawsuit against TrialCard for supposed violation of the Master Servicing Agreement ("MSA") between JJHCS and TrialCard, or violate its own obligations and withhold payments to TrialCard under the MSA.  SaveOnSP charges that "J&J

Honorable Freda L. Wolfson, U.S.D.J.
November 4, 2024
Page 2

has done nothing but 'ask' and then shrug its shoulders when TrialCard fails to cooperate."  Mot. at

7.

This is nonsense.  JJHCS has done everything reasonable in its power to comply with Your

Honor's Order and ensure production from TrialCard.  TrialCard has also been reasonable in its

responses to both JJHCS's requests and SaveOnSP's escalating demands—it has sought only to

ensure that the documents it turns over are limited to those involving JJHCS, not its other clients, and

appropriately tailored to fall within the scope permitted under the MSA.  TrialCard has produced

documents and is in the process of producing more.  The only entity that has acted unreasonably

throughout this process is SaveOnSP, which has demanded from JJHCS overbroad and unreasonable

searches of TrialCard documents.  And as is apparent from its moving submission, SaveOnSP is

determined to ignore the realities of the procedural pathway it has chosen over enforcing a subpoena.

Regardless of legal control of particular documents under the MSA, TrialCard is an independent

company based in North Carolina; JJHCS has no access to or physical control over TrialCard's

internal emails and files; TrialCard has its own independent counsel who have their own views on the

MSA—and they do not think it reasonable for TrialCard to have to turn over internal documents

pursuant to SaveOnSP's overbroad search terms that reach documents involving its other clients; and

this process of proceeding under the MSA with multiple sets of lawyers necessarily takes time, as

does resolving the myriad issues presented by SaveOnSP's expansive and intransigent demands

involving a third party.

Nonetheless, steady progress has been made.  Here is where things stand now.  First, a

"refresh" production of documents from four existing TrialCard custodians for an updated time period

has been completed.  Second, as to SaveOnSP's demand for new searches applied to both the four

2

Honorable Freda L. Wolfson, U.S.D.J.
November 4, 2024
Page 3

existing and eight new TrialCard custodians, the parties and TrialCard, after much back and forth, appear to have agreed on a "point of collection" limiter to help restrict TrialCard's collection of documents to only those that relate to its work for JJHCS. Third, TrialCard has been working to collect documents from the requested custodians and has now provided an updated hit report for SaveOnSP's proposed search terms, which JJHCS promptly provided to SaveOnSP. Next up, JJHCS anticipates negotiating with SaveOnSP to narrow the search terms by reference to the hit report provided by TrialCard, after which TrialCard will collect, review, and turn over the relevant documents to JJHCS. JJHCS will then review them for privilege, responsiveness, and confidentiality, and produce them. This cannot be accomplished in two weeks, not least because it involves the generation of hit reports from a North Carolina third party whose files JJHCS cannot access, depends on SaveOnSP being timely and reasonable in negotiating terms, requires two levels of document review by different lawyers with different clients, and the size of the review universe is not yet clear. But it will be done expeditiously because JJHCS is intent on moving this case forward to depositions.

Simply put, JJHCS has been doing everything it can to facilitate production from TrialCard. Far from make a request and "shrug its shoulders," JJHCS has actively conveyed requests to TrialCard and made repeated express demands pursuant to Your Honor's ruling, followed up in writing and on the phone, repeatedly conferred with TrialCard's counsel and SaveOnSP's counsel, addressed concerns from both TrialCard and SaveOnSP, and made steady progress forward despite SaveOnSP's serially escalating demands. Given the current status detailed above, intervention by the Court is neither necessary nor appropriate. If SaveOnSP wants to expedite TrialCard's production, it should be quick and reasonable in resolving the remaining issues so that TrialCard can promptly arrive at a final set of search parameters. On the other hand, if SaveOnSP wants to abandon this indirect process

Honorable Freda L. Wolfson, U.S.D.J.
November 4, 2024
Page 4

for pursuing TrialCard documents through JJHCS—a process that SaveOnSP itself insisted on

creating—then it can litigate its subpoenas against TrialCard in North Carolina.  But when it comes

to the parties here before this Court, there is nothing more that JJHCS can or should be required to

do.

Finally, the notion that JJHCS should imperil the critical patient needs that depend upon the

CarePath program by suing TrialCard or withholding payments to it is ludicrous.  TrialCard plays a

critical role in administrating CarePath.  There is no basis for JJHCS to sue TrialCard, which is acting

entirely reasonably and within its legal rights under the terms of the MSA.  Nor would any order

requiring such action be appropriate as a matter of law.

## BACKGROUND

Your Honor will recall that earlier in this case, JJHCS had agreed that it would voluntarily

facilitate the production of relevant documents from its vendor TrialCard.  *See* JJHCS Ex. 1 (Jan. 6,

2023 Ltr. from H. Sandick to M. Nelson) at 3.  SaveOnSP, apparently unsatisfied, decided to

subpoena TrialCard directly in February 2023.  SaveOnSP Ex. 5.  TrialCard is, of course, an

independent company based in North Carolina that represents many companies in the pharmaceutical

industry, as well as other industries.  JJHCS allowed its counsel to also represent its vendor TrialCard,

which meant that SaveOnSP could deal with one set of lawyers regardless of whether it wanted

documents that JJHCS arranged to have produced from TrialCard or production directly from

TrialCard under the subpoena.  Any hits report generation, negotiation, review, and production would

thus be done once by one set of attorneys.  Many documents were produced under this arrangement.

SaveOnSP ultimately even issued a second subpoena to TrialCard in December 2023 seeking yet

4

Honorable Freda L. Wolfson, U.S.D.J.
November 4, 2024
Page 5

more documents.  SaveOnSP Ex. 9.  TrialCard continued to negotiate with SaveOnSP to respond to

that subpoena too.

 But SaveOnSP decided to blow up this process.  SaveOnSP filed a motion demanding that

JJHCS produce documents within the internal files of TrialCard by virtue of its legal "control" over

those documents.  And it objected to JJHCS's counsel representing TrialCard.  SaveOnSP got its

wish.  In May 2024, Your Honor held that JJHCS's audit rights under the MSA provide JJHCS with

legal control over certain TrialCard documents.  And Your Honor suggested that JJHCS consider

further whether that ruling might render it more appropriate for TrialCard to have its own counsel,

because disputes could now arise as to whether TrialCard documents were under JJHCS's control

under the MSA.  *See* May 23, 2024 Hearing Tr. at 52–53 (observing that TrialCard "may need

separate counsel" in order to receive "independent advice" regarding its rights).  Accordingly,

TrialCard retained new counsel, its longstanding law firm of record in North Carolina, Smith

Anderson, to independently represent it in this matter.

 As a result, the process that SaveOnSP advocated for and has now received is more involved

than that which preceded it.  JJHCS fully understands and has taken great pains to comply with Your

Honor's ruling.  But that doesn't change the logistics on the ground.  When SaveOnSP demands

documents from JJHCS that are in the files of TrialCard, JJHCS must convey those demands to

TrialCard's counsel.  TrialCard then makes its own determinations as to what it considers reasonable

and within the scope of the MSA, and what it does not.  TrialCard's counsel must also run any

searches necessary to produce hit reports.  JJHCS cannot do so on its own.  And SaveOnSP has not

made this process easier.  SaveOnSP demanded that TrialCard run hugely overbroad terms from an

ever-expanding list of custodians.  Nonetheless, the process has continued to move forward.

Honorable Freda L. Wolfson, U.S.D.J.
November 4, 2024
Page 6

        Specifically, following Your Honor's May 2024 order, SaveOnSP requested that JJHCS

(a) "refresh" TrialCard's prior production of documents from the files of the four "original" TrialCard

custodians and (b) run fifteen search terms—consisting of the seven "[p]reviously agreed to TrialCard

search terms" plus eight "CAP search terms"—over the files of seven additional TrialCard custodians

and produce all responsive non-privileged documents.  *See* SaveOnSP Ex. 14 (May 24, 2024 Ltr.

from H. Miles to S. Arrow).

        As reported in JJHCS's October 10, 2024 letter, that refresh production was made in August

2024.  *See* Oct. 10, 2024 Ltr. at 3.  As for the additional custodial discovery that SaveOnSP requested,

JJHCS has objected to the breadth and scope of SaveOnSP's requests but has nonetheless asked that

TrialCard collect the requested custodians' documents, run SaveOnSP's proposed search terms, and

provide hit counts.  And TrialCard, while insisting on certain screening mechanisms to ensure that it

only provides documents related to its work for JJHCS, has been complying.  SaveOnSP now claims

that JJHCS made a perfunctory request of TrialCard and then shrugged its shoulders.  But the written

record shows otherwise.  JJHCS has taken extensive steps to work through the many issues presented

by SaveOnSP's demands.   JJHCS recounts the precise chronological details below to illustrate for

the Court just how active it has been to ensure that Your Honor's Order is fully complied with.

- In response to the additional custodial discovery that SaveOnSP has requested, JJHCS
  objected that several of SaveOnSP's proposed search terms were untethered to
  TrialCard's work for JJHCS and would thus sweep in many documents that are
  irrelevant to this lawsuit and outside the scope of the MSA,[1] but it offered to ask
  TrialCard to run seven of SaveOnSP's proposed terms.  SaveOnSP Ex. 16 (June 17,
  2024 Ltr. from J. Chefitz to H. Miles) at 3–4.   JJHCS also objected to the

---

[1] For instance, SaveOnSP's proposed term (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)
would likely sweep in many documents that are unrelated to TrialCard's work for JJHCS, given that
TrialCard provides services to many pharmaceutical companies beyond JJHCS.  *See* SaveOnSP Ex.
16 at 4.

Honorable Freda L. Wolfson, U.S.D.J.
November 4, 2024
Page 7

> appropriateness of SaveOnSP's seven proposed custodians, but it offered, as a compromise, to agree to four of them. *Id.* at 2.

- SaveOnSP refused to budge. Instead, on June 28, SaveOnSP demanded that JJHCS add an eighth additional TrialCard custodian and that all fifteen proposed search terms be run over their documents, refusing to address JJHCS's objections regarding those terms' overbreadth. *See* JJHCS Ex. 2 (June 28, 2024 Ltr. from H. Miles to J. Chefitz) at 1, 4.

- In response, on July 12, JJHCS again objected to the scope of SaveOnSP's demands and reiterated that SaveOnSP's proposed search terms will necessarily yield documents unrelated to TrialCard's work for JJHCS. JJHCS exhorted SaveOnSP to adopt a more reasonable position that would account for JJHCS's and TrialCard's concerns. *See* JJHCS Ex. 3 (July 12, 2024 Ltr. from J. Chefitz to H. Miles).

- Notwithstanding JJHCS's objections and to keep this issue moving, JJHCS simultaneously asked TrialCard's counsel to collect the documents of all eight additional custodians that SaveOnSP had requested and provide hit counts for all of SaveOnSP's proposed search terms. *Id.*; *see also* JJHCS Ex. 4 (July 12, 2024 Ltr. from J. Chefitz to I. Linnartz). JJHCS made clear to TrialCard that it was requesting these documents pursuant to JJHCS's rights under the MSA's audit provision, and JJHCS provided TrialCard with a copy of Your Honor's ruling concerning the scope of that provision. *See* JJHCS Ex. 4.

- TrialCard responded to JJHCS's request on August 16, 2024. *See* JJHCS Ex. 5 (Aug. 22, 2024 Ltr. from J. Chefitz to H. Miles) at App'x A. TrialCard informed JJHCS that it had collected documents from the eight requested custodians but that, "[i]n light of the breadth of the request, and to limit the collection to documents related to JJHCS's engagement with [TrialCard]," it had only collected documents that first hit on a search term that included variations of J&J, Janssen, CarePath, and two specific Janssen therapies.[2] *Id.* TrialCard also informed JJHCS that it had modified SaveOnSP's proposed search terms to include JJHCS-specific limiters, and TrialCard provided hit counts for the proposed search terms as modified. *Id.*

- JJHCS promptly informed SaveOnSP of TrialCard's response. *See* JJHCS Ex. 5 at 1–2. JJHCS also explained to SaveOnSP that, given the hit counts provided by TrialCard, SaveOnSP's proposed search terms were unduly burdensome. *Id.* at 2. JJHCS therefore asked SaveOnSP to narrow its search terms. *Id.*

---

[2] Specifically, TrialCard limited its collection to documents hitting on the following term: <"Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA*>.

Honorable Freda L. Wolfson, U.S.D.J.
November 4, 2024
Page 8

- At the same time, JJHCS wrote back to TrialCard seeking further explanation regarding the limitations TrialCard had placed on its collections and searches. *Id.* at App'x B.

- On September 4, 2024, TrialCard's counsel responded to JJHCS explaining that "it imposed reasonable limitations to (i) reduce the burden of collecting documents, which was substantial even with those limitations given the number of custodians (8) and years (7.5) at issue and (ii) limit the scope of searches that did not contain terms specific to the [TrialCard]-JJHCS relationship and thus were likely to sweep in a large number of documents unrelated to that relationship." JJHCS Ex. 7 (Sept. 6, 2024 Ltr. from J. Chefitz to H. Miles) at App'x A.

- After receiving TrialCard's hit counts, SaveOnSP again refused to narrow its search terms. *See* JJHCS Ex. 6 (Aug. 28, 2024 Ltr. from H. Miles to J. Chefitz). To the contrary, SaveOnSP insisted on more, demanding that TrialCard further expand its collection of documents by adding several additional terms to the JJHCS-specific search term that TrialCard had applied at the point of collection, and also that TrialCard run its additional search terms over the files of the four "original" TrialCard custodians and provide hit counts for them as well. *Id.* at 1–2.

- JJHCS agreed to ask—and did ask—TrialCard to provide hit counts for the additional search terms when run over the four original custodians. JJHCS Ex. 7 at 2–3. JJHCS also agreed to ask—and did ask—TrialCard to expand its point of collection search term. *Id.* at 2. And when SaveOnSP subsequently asked for an even broader point-of-collection search term, JJHCS requested that of TrialCard as well. *See* JJHCS Ex. 8 (Sept. 12, 2024 Ltr. from H. Miles to J. Chefitz); JJHCS Ex. 9 (Sept. 20, 2024 Ltr. from J. Chefitz to H. Miles). JJHCS also followed up with TrialCard's counsel regarding its requests. *See* JJHCS Ex. 10 (Sept. 20, 2024 Ltr. from J. Chefitz to I. Linnartz) at 2.

On October 18, 2024, while JJHCS was waiting to hear back from TrialCard in response to SaveOnSP's latest demands, SaveOnSP wrote to JJHCS, demanding that JJHCS "commit to completing negotiations over the scope of production from TrialCard by November 1, 2024" and "to producing the requested documents by December 1, 2024." SaveOnSP Ex. 18. On October 23, 2024, JJHCS informed SaveOnSP that TrialCard's counsel had told JJHCS that TrialCard has been working to collect and process the documents for all twelve TrialCard custodians that SaveOnSP had requested; that TrialCard anticipated completing that process that week; and that, once that process is

Honorable Freda L. Wolfson, U.S.D.J.
November 4, 2024
Page 9

complete, it would provide updated hit counts in short order.  SaveOnSP Ex. 19.  JJHCS made clear,

however, that it could not simply run the searches on its own, as these are documents in the physical

possession of TrialCard.  *Id.*  On October 25, 2024, SaveOnSP filed the instant motion.  JJHCS has

nonetheless continued to follow up with TrialCard, and on November 4, 2024, TrialCard provided

updated hit counts, which JJHCS promptly shared with SaveOnSP.  *See* JJHCS Ex. 11 (Nov. 4, 2024

Ltr. from J. Chefitz to H. Miles).  TrialCard reported that SaveOnSP's requested terms hit on more

than 36,000 unique documents, family inclusive.  *Id.* at App'x A.  JJHCS therefore once again

requested that SaveOnSP propose more narrowly tailored terms for these TrialCard custodians.

## DISCUSSION

## I.    JJHCS Has Complied With Your Honor's Ruling

SaveOnSP argues that JJHCS has not accepted Your Honor's ruling and that JJHCS is refusing

to produce evidence that it legally controls.  Not true.

As described above, JJHCS has exercised its audit rights and requested that TrialCard collect

the documents of the custodians requested by SaveOnSP and run SaveOnSP's proposed search terms

over them.  JJHCS has followed up with TrialCard, and TrialCard has been complying with its

obligations under the MSA, collecting documents from the requested custodians' files and providing

hit counts.  TrialCard, as is its right, has insisted on reasonable limitations to screen out documents

unrelated to its work for JJHCS—and thus outside the scope of the MSA.  JJHCS has been working

cooperatively with both TrialCard and SaveOnSP to obtain the documents to which JJHCS is entitled.

When SaveOnSP asked on multiple occasions that TrialCard expand the scope of its collection,

JJHCS requested that of TrialCard too, and TrialCard is complying with those requests as well.

Honorable Freda L. Wolfson, U.S.D.J.
November 4, 2024
Page 10

JJHCS is therefore fully complying with Your Honor's ruling, exercising its right under the

MSA's audit provision to obtain from TrialCard the documents that SaveOnSP has requested and to

make a production as soon as possible.

**II.    SaveOnSP's Requested Deadlines And Search Terms Are Unreasonable**

SaveOnSP now wants everything completed and all documents produced within two weeks.

This is entirely unreasonable.

First, while JJHCS can request that TrialCard run hit counts—and that TrialCard do so

expeditiously—it ultimately must rely on TrialCard to provide the hit counts and the underlying

documents.  JJHCS does not have physical access to TrialCard's custodians' documents such that

JJHCS can run search terms over them and provide hit counts, or export documents for review, as

JJHCS can do for its own custodians.  Nor does the MSA entitle JJHCS to all of TrialCard's

documents either, as TrialCard provides services to many manufacturers beyond JJHCS.  JJHCS must

therefore rely on TrialCard to run the requested searches, provide any requested hit counts, and

prepare documents for export.  JJHCS does not have control over the timing of that process, which

again is a process that SaveOnSP insisted the parties use.[3]

Second, even with the hit reports that TrialCard has produced, JJHCS and SaveOnSP still need

to complete negotiations to determinate the appropriate review universe.  JJHCS does not have

unilateral control over that process, and it does not have high hopes of finding a reasonable negotiating

partner in SaveOnSP.  Indeed, SaveOnSP has still not responded to JJHCS's objection that the hit

---

[3] SaveOnSP cites law for the proposition that "parties cannot refuse to produce evidence that they
legally control on the basis that they do not physically possess it."  Mot. at 5.  This is irrelevant.
JJHCS is making no such argument and is not refusing to produce evidence on that basis.
Nonetheless, the fact that JJHCS does not physically possess TrialCard's documents is of course a
factor to be considered in assessing what JJHCS can do and how quickly it can do it.

Honorable Freda L. Wolfson, U.S.D.J.
November 4, 2024
Page 11

counts that TrialCard provided in August 2024 are too high— and those hit counts have only increased

to more than 36,000 unique documents as TrialCard, as requested by SaveOnSP, expanded the scope

of its document collection.    Given SaveOnSP's intransigence in negotiating search terms and

custodians to date, it beggars belief that these discussions can be completed in one week as SaveOnSP

suggests.    And of course, any proposed narrowing of search terms would need to be tested through

revised hit reports, which can only be generated by TrialCard.

Third, after a search universe for review documents has been defined, JJHCS will then need

to obtain the documents from TrialCard, whose counsel will want to review the requested documents

both to protect TrialCard's privilege and to ensure that the documents are within the scope of the

MSA.   Upon receiving the documents from TrialCard, JJHCS in turn will need to review them for

responsiveness, privilege, and confidentiality before production.    The scope of that review universe

is unknown, but it could be very large, depending on how intransigent SaveOnSP continues to be—

likely many thousands of documents.    JJHCS cannot commit to a production timeline without

knowing how many documents will be involved.

Fourth, SaveOnSP's timetable is entirely arbitrary.   Its own record makes that clear.   In its last

demand before filing this motion, SaveOnSP asked that JJHCS commit to producing the requested

TrialCard documents within a month of the completion of negotiations.   *See* SaveOnSP Ex. 18.   Now

in this motion, SaveOnSP is asking for the documents within one week of completion of negotiations.

And even while making these absurd demands, SaveOnSP has steadfastly supported its codefendants

in stating that they cannot even conduct an initial conference or discuss a case management order

until they have another month just to review past discovery letters—let alone agree to fact discovery

closing rapidly.   SaveOnSP's proposed timing is just an arbitrary cudgel, not a good faith demand

11

Honorable Freda L. Wolfson, U.S.D.J.
November 4, 2024
Page 12

tethered to any legitimate discovery scheduling need.  Unlike SaveOnSP, JJHCS has no interest in

delaying the progress of this case, and it will work to complete this discovery promptly.

**III.    The Additional Steps That SaveOnSP Suggests Are Disproportionate and Unduly Burdensome**

Finally, while SaveOnSP does not appear to request any relief in this regard, it suggests that

to make TrialCard move faster, JJHCS must take drastic steps, such as suing TrialCard for violating

the MSA or "ceas[ing] payments to TrialCard for its services until it complies with its obligations

under the MSA."  Mot. at 7.  This should not go unremarked on.

The parties have a discovery dispute.  At core, it is a question of timing, and whether certain

steps should take two weeks or longer.  SaveOnSP's contention that this requires JJHCS filing a

lawsuit against TrialCard or withholding payments to it, and thereby imperiling the functioning of the

CarePath program and the health of patients that depend upon it, is astonishing.

It is also wrong.  TrialCard has not breached its obligations under the MSA; to the contrary,

it has fully complied.  TrialCard is responding to JJHCS's requests for information and providing hit

counts to JJHCS.  TrialCard has no obligation under the MSA to provide hit counts at light speed to

satisfy SaveOnSP.  Nor does it have any obligation under the MSA to disregard its obligations to its

other clients and turn over their documents to JJHCS for production to SaveOnSP just because

SaveOnSP demanded overbroad searches.

Finally, to the extent that SaveOnSP is suggesting that this Court encourage JJHCS to sue

TrialCard, SaveOnSP does not cite a single case where a court ordered a party to file a lawsuit against

its own vendor to satisfy the discovery demands of an adverse litigant.  To the contrary, all of the

cases cited by SaveOnSP involved highly distinguishable circumstances in which courts merely

observed that parties had options available to them to enforce compliance with discovery requests;

Honorable Freda L. Wolfson, U.S.D.J.
November 4, 2024
Page 13

none ordered a party to file a lawsuit against a third party, let alone in comparable circumstances.  *See*

*Haskins v. First Am. Title Ins. Co.*, 2012 WL 5183908 (D.N.J. Oct. 18, 2012); *In re Auction Houses*

*Antitrust Litigation*, 196 F.R.D. 444 (S.D.N.Y. 2000); *Chevron Corp. v Donziger*, 296 F.R.D. 168

(S.D.N.Y 2013).  Indeed, those cases involved non-cooperative third parties and often involved

parties that the courts suspected were acting in bad faith.  For example, in *Donziger*, defendants had

failed to produce documents under their agents' and attorneys' control in Ecuador, despite a court

order requiring them to do so.  *Id.* at 213–14.  The defendants argued that Ecuadorian law made

compliance with the court's order impossible, but the court found, based on "a variety of events that

occurred before [the court], in Ecuadorian courts, and behind the scenes" (including colluding to

obtain a contrived injunction from an Ecuadorian court), that the defendants had acted in bad faith.

*Id.* at 213; *see also id.* at 215–16.  And in finding bad faith, the court noted that defendants had never

even demanded that the Ecuadorian lawyers provide the relevant documents.  *Id.* at 218.  Here, by

contrast, JJHCS has made extensive efforts to facilitate production and TrialCard has taken entirely

reasonable steps to protect its own interests and its own clients.

*    *    *

JJHCS is doing all it reasonably can to provide SaveOnSP with the TrialCard discovery that

SaveOnSP has requested, subject to the usual constraints of burden and proportionality.  But just

because Your Honor has held that the MSA provides JJHCS with legal control over certain TrialCard

documents does not mean that obtaining those documents through JJHCS will be the most efficient

path.  The documents sought by SaveOnSP are not outside of the United States or beyond the reach

of normal legal process, as is the case in some of the authorities cited by SaveOnSP.  If SaveOnSP

were truly concerned about the speed and efficiency issues caused by involving JJHCS in this process,

Honorable Freda L. Wolfson, U.S.D.J.
November 4, 2024
Page 14

SaveOnSP could enforce its two Rule 45 subpoenas against TrialCard directly. As things stand, however, the process is nonetheless moving forward, and no intervention from the Court is necessary. To the contrary, SaveOnSP should be instructed to adopt a reasonable and proportionate approach to discovery from TrialCard and to negotiate search terms accordingly.

We appreciate Your Honor's attention to this matter.

Respectfully submitted,

_/s/ Jeffrey J. Greenbaum_
JEFFREY J. GREENBAUM

cc: All counsel of record

# Exhibit 1

## Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

January 6, 2023

Harry Sandick
(212) 336-2723
hsandick@pbwt.com

<u>By Email</u>

Meredith Nelson, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
mnelson@selendygay.com

> **Re:** ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC***
> ***(Case No. 2:22-cv-02632-JMV-CLW)***

Dear Meredith:

We write in response to your December 21, 2022 letter concerning Johnson & Johnson Health Care Systems Inc.'s ("JJHCS") Responses and Objections to Save On SP, LLC's ("SaveOnSP") First Set of Requests for Production.

As an initial matter, we note that the responses set out below are subject to ongoing factual investigation and document collection efforts. We reserve all rights to revise or amend these responses as necessary. Further, none of the responses set out below are intended to waive any of the general or specific objections or limitations provided in JJHCS's Responses and Objections to SaveOnSP's First Set of Requests for Production, or to suggest that responsive documents exist with respect to particular requests.

## I. GENERAL ISSUES

### A. Definition of "Janssen Drugs"

We objected to the term Janssen Drugs "to the extent it purports to include drugs that are not covered by CarePath." You ask us to clarify whether the drugs BALVERSA, DARZALEX, DARZALEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, REMICADE, RYBREVANT, SIMPONI, STELARA, TRACLEER, TREMFYA, UPTRAVI, and ZYTIGA are covered by CarePath. We write to confirm our understanding that patient assistance for these drugs is covered by CarePath.

### B. Time Period

We objected to SaveOnSP's requests to the extent that they sought documents from before January 1, 2017. SaveOnSP seeks documents for many requests dating as far back

Meredith Nelson, Esq.
January 6, 2023
Page 2

as 2009.  We do not see the basis for extending the relevant time period beyond 2017, but would like to further understand your position as part of the meet-and-confer process.

For example, you assert that you are entitled to documents about the budgeting and development of CarePath from its inception, as well as the budgeting and development of any predecessor of the CarePath program, in order to "investigate JJHCS's assertions that SaveOnSP's services make CarePath financially unviable."  JJHCS's assessment that SaveOnSP's services "jeopardiz[e] the viability of patient assistance programs like CarePath by making them prohibitively expensive," Compl. ¶ 114, is one that you are free to probe in depositions and at trial, but it self-evidently turns on the added expenses caused by SaveOnSP, and all documents about the developing and budgeting of the program have no proportionate relationship to that general proposition.  Moreover, JJHCS has already agreed to search for and produce documents that will show that SaveOnSP is making CarePath prohibitively expensive, including, *inter alia*, "all non-privileged documents and communications in its possession relating to the extent of the harm SaveOnSP has caused JJHCS during the relevant Time Period," "the data that formed the basis for the allegations in Complaint ¶¶ 92-100," "JJHCS's budget for copay assistance through CarePath," and "JJHCS's actual and projected annual costs for CarePath."  *See* R&Os to Requests 25, 27, 29.  Please explain why those documents, which include budget and harm-related materials, do not suffice.

Further, you claim that you need documents about CarePath's budget and cost for nearly a decade before SaveOnSP began operations, which we understand occurred in or about November 2017, when SaveOnSP executed its Master Program Agreement with Express Scripts Inc.  Please explain how CarePath's budget and development prior to 2017—a time when SaveOnSP did not exist—is relevant to investigating SaveOnSP's effect on CarePath's financial viability in the future.  Please also explain how the budgeting and development of any predecessors of the CarePath program, which only came into existence in 2015, has any bearing on the present dispute.

You also claim that you need documents from prior to 2017 in order to investigate whether "CarePath was designed solely to help patients, not to financially benefit JJHCS."  Please direct us to where JJHCS has claimed that CarePath was designed "solely to help patients" and "not to financially benefit JJHCS."  Please also explain why documents prior to 2017 are needed to make such an assessment.

Finally, you claim that you are entitled to documents relating to CarePath's terms and conditions from before 2017 to "fully assess the meaning and materiality of the terms and conditions at issue in this case, as decisions about many of these terms likely predate 2017."  Please explain what "decisions" prior to 2017 are relevant to this case, which concerns only whether SaveOnSP wrongfully induced patients to breach CarePath's actual terms and conditions during the time period when SaveOnSP was in operation.  Please also explain why SaveOnSP believes it needs additional documents apart from the final terms and conditions.  In any event, on this point, to the extent that SaveOnSP is willing to produce internal documents

Meredith Nelson, Esq.
January 6, 2023
Page 3

that it has thus far declined to produce, we are willing to discuss an appropriate compromise involving production from each side.

### C.    Documents in the Possession of JJHCS

You asked whether documents created or held by employees of entities other than JJHCS "within the J&J corporate family or involved in the administration of CarePath, including Janssen, CarePath Care Coordinators, JJHCS Hub Entities, Lash Group, and Trial Card" are in JJHCS's possession, custody, and control, and would accordingly be produced by JJHCS.

With respect to entities in the J&J corporate family, we plan to generally limit our production to documents in JJHCS's possession alone. The J&J corporate family consists of more than 140,000 employees who work at over 200 subsidiaries and affiliates across the world. Collecting and producing documents from all of these individuals and entities would be burdensome and disproportionate to the needs of this case. JJHCS is the sole corporate entity charged with administration of CarePath, and so it is incumbent on SaveOnSP to explain why the collection and production of documents outside of JJHCS is necessary and proportionate to the needs of this case. Please provide such an explanation to us, including an explanation of which of the J&J affiliates and subsidiaries you believe are likely to have relevant documents.

In addition, with respect to entities outside of the J&J corporate family, JJHCS objects to SaveOnSP's definition of "JJHCS Hub Entities" for a number of reasons, including to the extent it purports to include entities other than those responsible for administering CarePath during the relevant Time Period. Nevertheless, notwithstanding such objections, JJHCS will work with Trial Card, a third-party vendor with responsibility for the administration of CarePath during the relevant Time Period, to facilitate production of documents responsive to SaveOnSP's requests.

## II.    ISSUES RELATED TO SPECIFIC REQUESTS

### A.    Request Nos. 1-7, 35

SaveOnSP's Request Nos. 1-7 seek organizational charts, including charts for entities other than the JJHCS groups responsible for administration of CarePath. Request No. 35 seeks "documents sufficient to identify all JJHCS Hub Entities and CarePath Coordinators."

In response to Requests Nos. 1-7, JJHCS agreed to produce documents "sufficient to show the organizational structure of the JJHCS groups responsible for the administration of CarePath for the relevant Time Period." In response to Request No. 35, JJHCS agreed to produce "non-privileged documents in its possession sufficient to identify the entities responsible for administering CarePath during the relevant Time Period." We also note that while JJHCS will not produce organizational charts for Trial Card, we will work with Trial Card to facilitate production of such documents, to the extent they exist and can be located by a reasonable search.

Meredith Nelson, Esq.
January 6, 2023
Page 4

Please explain the basis for SaveOnSP's request that we collect and produce documents beyond this so that we can better understand your position.

We would also like to more fully understand the reasons you provided for why you need organizational charts beyond what JJHCS has agreed to produce. You claim that "SaveOnSP needs documents relating to CarePath's development, so that it can test JJHCS's assertion that CarePath was developed solely to benefit patients and not to benefit JJHCS financially." As requested in Section I.C, *supra*, please direct us to where JJHCS has claimed that CarePath was designed "solely to benefit patients" and "not to benefit JJHCS financially." Regardless, this provides no basis for additional organizational charts.

You claim that "SaveOnSP needs documents relating to CarePath's finances, so it can test JJHCS's assertion that SaveOnSP's conduct financially harms CarePath and threatens its financial viability." JJHCS has agreed to search for and produce, *inter alia*, "all non-privileged documents and communications in its possession relating to the extent of the harm SaveOnSP has caused JJHCS during the relevant Time Period," "the data that formed the basis for the allegations in Complaint ¶¶ 92-100," "JJHCS's budget for copay assistance through CarePath," and "JJHCS's actual and projected annual costs for CarePath." *See* R&Os to Requests 25, 27, 29. Please explain why SaveOnSP needs documents beyond this to analyze whether SaveOnSP's wrongful conduct financially harms CarePath and threatens its financial viability. Again, this provides no basis for additional organizational charts.

You claim that "SaveOnSP needs documents relating to the marketing of CarePath, so it can explore whether JJHCS's marketing caused any of the purported patient confusion that JJHCS attributes to SaveOnSP." The patient confusion alleged in the Complaint is that created by SaveOnSP when pharmacies refuse to fill prescriptions at the point of sale unless those patients enroll with SaveOnSP. Compl. ¶ 88. Please explain your factual basis for claiming that such patient confusion could reasonably be attributed to JJHCS's marketing efforts. In particular, please direct us to specific instances of confusion identified in the complaint that could reasonably be attributed to specific CarePath's marketing efforts. Otherwise, this provides no basis for additional organizational charts.

You claim that "SaveOnSP needs documents relating to the sale, pricing, and marketing of Janssen Drugs so that it can evaluate the relationship between CarePath and JJHCS's financial performance, including how JJHCS sets prices for Janssen Drugs (thus increasing costs for health plans and patients)." Please explain how Janssen's drug sales, pricing, or marketing are related to the claims or defenses in this action, which concern SaveOnSP's misconduct in extracting funds from CarePath. Please also explain how Janssen's conduct is relevant in any way to this action. Again, this provides no basis for additional organizational charts. Further, even assuming that these points were relevant, SaveOnSP and its health plan partners already have access to extensive information concerning the pricing of Janssen Drugs, based on their own reimbursement records for those Drugs.

Meredith Nelson, Esq.
January 6, 2023
Page 5

You claim that "SaveOnSP also needs documents relating to the drafting of JJHCS's terms and conditions, which JJHCS alleges that SaveOnSP induced patients into breaching."  Please explain why the drafting of the terms and conditions with which patients must comply is relevant to this action which is based on whether SaveOnSP has engaged in wrongdoing when it strong-arms patients into breaching those terms and conditions.  On this point again, however, to the extent that SaveOnSP is willing to produce internal documents that it has thus far declined to produce, we are willing to discuss a compromise.

**B.    Request No. 11**

SaveOnSP's Request No. 11 seeks documents "regarding the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs."  JJHCS offered to "meet and confer to determine if this Request can be appropriately narrowed."  We do not currently see the basis for producing the materials you request, but are willing to continue to discuss the merits of this Request.

You claim that documents pertaining to the "development, marketing, and management of [other copay assistance programs offered for Janssen Drugs,] as well as of CarePath itself, are relevant to refuting: JJHCS's assertions that SaveOnSP's services increase the cost and threaten the continued viability of 'patient assistance programs like CarePath by making them prohibitively expensive.'"  Compl. ¶ 114.

With respect to CarePath, JJHCS has agreed to search for and produce, *inter alia*, "all non-privileged documents and communications in its possession relating to the extent of the harm SaveOnSP has caused JJHCS during the relevant Time Period," "the data that formed the basis for the allegations in Complaint ¶¶ 92-100," "JJHCS's budget for copay assistance through CarePath," and "JJHCS's actual and projected annual costs for CarePath."  *See* R&Os to Requests 25, 27, 29.  Please explain why SaveOnSP needs documents beyond this to analyze whether its services increase the cost of CarePath and threatens its financial viability.

With respect to the reference to "patient assistance programs like CarePath" in Compl. ¶ 114, that is a general reference to patient assistance programs across the industry, not other patient assistance programs for Janssen Drugs.  As you know, SaveOnSP targets the patient assistance programs of other drug manufacturers as well.  JJHCS reasonably infers that SaveOnSP's services harm those programs in ways similar to how they have harmed CarePath. We do not see how the "development, marketing and management" of those programs is relevant to that inference of harm, but invite you to explain.

You also claim that such documents are relevant to "JJHCS's assertion that any increase in the cost of copay assistance programs amounts to a public harm."  JJHCS claims that SaveOnSP causes public harm by "causing undue stress and confusion through acts such as engineering false denials of coverage; jeopardizing the viability of patient assistance programs like CarePath by making them prohibitively expensive; and making other patient healthcare

Meredith Nelson, Esq.
January 6, 2023
Page 6

needs more expensive by not counting any of the funds spent on patients' medication towards
their ACA maximum or deductible." Compl. ¶ 114. Please direct us to where JJHCS alleges
that "*any* increase in the cost of copay assistance amounts to a public harm." (emphasis added).
Please also explain how the "development, marketing and management" of such programs is
relevant to whether an increase in their costs amounts to a public harm.

You also claim that such documents are relevant to "JJHCS's assertion that
SaveOnSP induces patients to breach CarePath's terms and conditions and deceives patients by
failing to inform them of that alleged breach." Please explain how documents relating to the
"development, marketing and management" of CarePath, let alone other programs, is relevant to
whether SaveOnSP induces patients to breach CarePath's terms and conditions. Please also
identify the elements in the relevant claims or defenses to which such documents are material.

C.    **Request Nos. 12 and 13**

SaveOnSP's Request Nos. 12 and 13 seek documents regarding CarePath's terms
and conditions and the CarePath requirement that patients enrolled in CarePath make payments
toward Janssen Drugs. JJHCS agreed to produce documents "sufficient to show all final
versions of CarePath's terms and conditions for each Janssen Drug during the relevant Time
Period."

Seeking additional documents beyond what JJHCS has promised to produce, you
claim "JJHCS's understanding of the terms and conditions in its CarePath contracts and the
drafting of those terms and conditions is relevant to whether SaveOnSP induced patients to
breach them, a central point for JJHCS's tortious interference claims. Compl. ¶ 109." As noted
in Sections I.B and II.A, *supra*, whether there has been a breach is dependent on SaveOnSP's
conduct and the final terms themselves, not the back-story of the drafting of the terms and
conditions. Nonetheless, so that we can consider your demand more precisely, please identify
which terms you believe are relevant but also unclear or ambiguous on their face such that
consideration of extrinsic evidence, such as the drafting history of the terms and conditions, is
relevant to this action. Again, we are willing to discuss a compromise on this point to the extent
that SaveOnSP is willing to produce internal documents that it has thus far declined to produce.

D.    **Request No. 14**

SaveOnSP's Request No. 14 seeks documents relating to JJHCS's and other
entities' "understanding of commercial health plans' ability to designate specialty drugs as
Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care Act and its
regulations." You claim JJHCS refused to produce any documents in response.

You have misstated JJHCS's response. JJHCS did not refuse to produce any
documents in response to RFP No. 14. We agreed to search for and produce "all non-privileged
documents and communications in its possession regarding SaveOnSP's designation of specialty

Meredith Nelson, Esq.
January 6, 2023
Page 7

drugs as Essential Health Benefits or Non-Essential Health Benefits under the Affordable Care
Act and its regulations during the relevant Time Period." *See* R&O to Request No. 14.  Subject
to the objections laid out in JJHCS's Responses and Objections, JJHCS will produce such
documents.  We hope this clarification resolves your concerns, but if there are additional
documents SaveOnSP believes it requires, please let us know.

E.    **Request Nos. 20, 41, 43**

SaveOnSP's Request Nos. 20, 41, and 43 seek documents concerning "Copay
Accumulator Services and Copay Maximizer Services."  JJHCS in response agreed to produce
documents relating to SaveOnSP.

You claim that documents relating to "Copay Accumulator Services" and "Copay
Maximizer Services" are relevant "because JJHCS has in its complaint blurred the lines between
SaveOnSP, accumulators, and maximizers.  *See, e.g.*, Compl. ¶ 74.  Thus, documents related to
JJHCS's understanding of accumulators and maximizers are also relevant to its understanding of
SaveOnSP's business and the impact of that business on JJHCS."

First, please explain how JJHCS's understanding of accumulators and maximizers
in general is relevant to the claims or defense in this action.  Please identify the elements of any
claims and defenses and explain the relevance of these requested documents to those elements.
Second, please explain why you need documents from JJHCS to refute an allegation that
SaveOnSP falls into the category of programs described in the article cited in Compl. ¶ 74.
Please explain why SaveOnSP needs documents from JJHCS in order to compare the contours of
its own program, as borne out by its own documents and other information within SaveOnSP's
control, against the descriptions in that article.

F.    **Request No. 21**

SaveOnSP's Request No. 21 concerns "any advocacy to or communications with
any governmental or regulatory body regarding SaveOnSP, Copay Accumulator Services, or
Copay Maximizer."  Based on, *inter alia*, relevance and privilege, JJHCS declines to produce
documents in response to this Request.

You claim that "JJHCS's lobbying campaign is, at a minimum, relevant to
showing that public confusion about SaveOnSP's services is the result of actions by JJHCS and
its allies, not SaveOnSP."  As noted in Section II.A, *supra*, the Complaint alleges that SaveOnSP
confuses patients in part by creating rejections and delays at the point of sale.  Compl. ¶ 88.
Please explain how such confusion could reasonably be attributed to any lobbying efforts by
JJHCS.  In addition, please direct us to instances of confusion identified in the Complaint that
could reasonably be attributed to any lobbying efforts as opposed to the conduct of SaveOnSP
and its partners.

Meredith Nelson, Esq.
January 6, 2023
Page 8

You also claim that "such communications may also show JJHCS's understanding of whether SaveOnSP violates the Affordable Care Act by advising plans to designate certain drugs as Non-Essential Health Benefits." Please explain how lobbying efforts are relevant to this question, as whether SaveOnSP violates the Affordable Care Act is a question of law.

Finally, please explain how requests for documents concerning JJHCS's lobbying of government officials are permissible given that JJHCS has a privilege against the production of documents that would unjustifiably burden its First Amendment right to political association. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462-63 (1958).

**G.    Request No. 25**

SaveOnSP's Request No. 25 seeks "all Documents and Communications regarding any alleged harm caused by SaveOnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 110, 115." JJHCS agreed to produce "all non-privileged documents and communications in its possession relating to the extent of the harm SaveOnSP has caused JJHCS during the relevant Time Period, including the extent to which SaveOnSP has caused JJHCS to pay more in copay assistance that it otherwise would have."

You ask us to confirm whether "based on its response JJHCS is producing fully in response to this Request." Without waiving the objections and limitations in its response, JJHCS intends to search for and produce the documents and communications it identified in its response. We are happy to meet and confer should you have specific questions.

**H.    Request No. 26**

SaveOnSP's Request No 26 seeks "documents and communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum." In its Responses, JJHCS objected to this Request on the grounds that it was vague and ambiguous and declined to produce any documents in response to this Request.

You now clarify that this Request "seeks documents and communications that reflect any payments for Janssen Drugs made by JJHCS, Janssen, or any Hub Entity on behalf of patients, both in the ordinary course of providing copay assistance and in any instance where such entity covered a patient's copay for a Janssen Drug in excess of what it otherwise would have under CarePath's terms and conditions."

JJHCS has agreed to produce documents sufficient to show "how JJHCS determines the amounts of copay assistance funds that JJHCS offers to Patients enrolled in CarePath. *See* R&O to RFP No. 29. Please let us know if that is sufficient or otherwise identify the claims or defenses for which SaveOnSP believes it needs documents beyond that. Please also let us know the rationale for seeking a broader production than what JJHCS has proposed.

Meredith Nelson, Esq.
January 6, 2023
Page 9

## I.    Request No. 28

SaveOnSP's Request No. 28 seek a variety of categories of data relating to both Janssen Drugs (items a. through g.) and CarePath (items i. through m.).  JJHCS does not believe that documents unrelated to SaveOnSP's misconduct, such as documents relating to the sales and marketing budgets for Janssen drugs, are relevant to this action, but nevertheless agreed to produce "Janssen Transparency Reports."  JJHCS also said it is willing to meet and confer regarding items i. through m.

You wrote that JJHCS's does not define the term "Janssen Transparency Reports" or clarify what responsive data is contained in those reports.  To clarify, those Reports summarize, *inter alia*, changes in Janssen drug prices, the amount of rebates paid for Janssen Drugs and total spend on CarePath patient assistance.  An example of such a report can be found here: *The 2021 Janssen U.S. Transparency Report*, JANSSEN PHARM., INC. (2022), https://transparencyreport.janssen.com/_document/the-2021-janssen-u-s-transparency-report?id=00000180-0108-dccf-a981-a52ec8300000.

You claim further that the data "SaveOnSP seeks is relevant to refuting JJHCS's claims that SaveOnSP threatens the viability of CarePath and causes it financial harm."  JJHCS has agreed to search for and produce, *inter alia*, "all non-privileged documents and communications in its possession relating to the extent of the harm SaveOnSP has caused JJHCS during the relevant Time Period," "the data that formed the basis for the allegations in Complaint ¶¶ 92-100," "JJHCS's budget for copay assistance through CarePath," and "JJHCS's actual and projected annual costs for CarePath."  *See* R&Os to Requests 25, 27, 29.  We invite you to explain why it is necessary for SaveOnSP to also receive additional data, including, for the last thirteen years, (i) a listing of "all patients receiving a Janssen Drug," (ii) "the number of fills of the Janssen Drug each received by each such Patient," (iii) "the dosage of the Janssen Drug received by each such Patient for each fill," (iv) "the projected number of Patients, average number of fills, and average dosage for the Janssen Drug," as well as the other revenue and cost data.  In particular, please explain how a request for the names of each and every of the tens of millions of patients who have received Janssen therapies over the past thirteen years is a proportional request for information given the claims and defenses at issue in this action, to the extent that JJHCS even has the data that SaveOnSP seeks.  We are interested to understand your rationale for this Request and to hear your explanation for why it is proportionate to this action, particularly in light of the fact that, as explained above, SaveOnSP and its health partners already have substantial information about the pricing of Janssen Drugs based on their own claims and reimbursement data.

You claim further that "there are clear parallels between the data SaveOnSP seeks in RFP No. 28 and the data JJHCS seeks in its RFP Nos. 41 and 42" and "invite[] JJHCS to meet and confer."  We do not understand this comparison but are willing to meet and confer to discuss this Request further.

Meredith Nelson, Esq.
January 6, 2023
Page 10

**J.        Request No. 29**

SaveOnSP's Request No. 29 seeks documents relating to CarePath's finances. JJHCS in response agreed to produce documents sufficient to show "(1) how JJHCS determines the amount of copay assistance funds that JJHCS offers Patients enrolled in CarePath, (2) JJHCS's budget for copay assistance through CarePath, and (3) JJHCS's actual and projected annual costs for CarePath."

You claim that these documents are insufficient because the additional documents SaveOnSP seeks, "including information on JJHCS's return on investment for CarePath, is relevant to refuting JJHCS's claims that SaveOnSP threatens the viability of CarePath and causes it financial harm." The documents JJHCS has agreed to produce, including the CarePath budget and actual costs, are sufficient to show the threat SaveOnSP poses to CarePath. We invite you to explain how further documents, including JJHCS's supposed "return on investment," are relevant or necessary, or how it is proportionate.

You also claim that additional data is necessary to dispute "JJHCS's claim that CarePath is designed to help patients and not simply J&J's bottom line." As noted in Section I.C and Section II.A, *supra*, please direct us to where JJHCS has claimed that CarePath was not "designed to help . . . J&J's bottom line."

**K.        Request No. 30**

SaveOnSP's Request No. 30 seeks "for each year for each Janssen Drug, all Documents and Communications regarding the basis for Janssen's decision to raise or lower the price of the Janssen Drug, including labor or manufacturing costs or the increase in efficacy of the Janssen Drug." JJHCS declined to produce any documents in response to this Request.

You claim that the documents requested are "relevant to JJHCS's allegations that SaveOnSP's conduct threatens the viability of copay assistance" and that it has "suffered monetary losses as a result of SaveOnSP's conduct." As noted above, JJHCS has agreed to search for and produce, *inter alia*, "all non-privileged documents and communications in its possession relating to the extent of the harm SaveOnSP has caused JJHCS during the relevant Time Period," "the data that formed the basis for the allegations in Complaint ¶¶ 92-100," "JJHCS's budget for copay assistance through CarePath," and "JJHCS's actual and projected annual costs for CarePath." *See* R&Os to Requests 25, 27, 29. Please explain why it is necessary for SaveOnSP to obtain documents relating to "Janssen's decision to raise or lower the price of" to further probe those allegations.

You also claim that such documents are relevant to JJHCS's allegations that "copay assistance programs like CarePath are a public good" and "that the threatened viability of copay assistance programs is a public harm." Please explain how "Janssen's decision to raise or lower the price of" its drugs is at all relevant to whether copay assistance programs like CarePath

Meredith Nelson, Esq.
January 6, 2023
Page 11

are a public good.  Please also explain why it is relevant to the claims and defenses in this action
whether CarePath and similar programs are a public good.

    **L.**    **Request No. 32**

        SaveOnSP's Request No. 32 seeks all documents and communications "regarding
any offer by JJHCS to provide to any Patient any CarePath funds greater than the amounts that
JJHCS generally offers to CarePath Patients or to waive any limitation on or elimination of the
amount of CarePath copay assistance funds available to a Patient."  JJHCS declined to produce
any documents in response to this Request.

        You assert that the requested documents are "relevant to JJHCS's allegations that
providing CarePath funds to individuals who do not qualify for CarePath threatens the viability
of copay assistance, as well as the significance of the CarePath terms and conditions at issue to
JJHCS.  If, for example, JJHCS offered CarePath funds to an individual whom it believed was on
a plan that does not comply with the revised Stelara or Tremfya terms, *see* Compl. ¶¶ 102-03,
such an offer would be relevant to JJHCS's allegation that providing copay assistance to patients
enrolled in such plans threatens the viability of JJHCS's copay assistance."

        Even if JJHCS continues to offer copay assistance to a patient who JJHCS
believes is enrolled in a health plan that does not comply with the revised Stelara or Tremfya
terms, please explain why this would be relevant to the claims at issue in this action.  For
example, please explain how JJHCS's willingness to continue to provide copay assistance to a
patient who does not comply with the Terms & Conditions would change the fact that SaveOnSP
causes JJHCS to spend more in CarePath patient assistance than it otherwise would absent the
SaveOnSP program.  That a plaintiff does not enforce a term in its contract is no defense to a
claim of tortious interference.  Indeed, New Jersey law is clear that a claim of tortious
interference may exist even where the underlying contract is *unenforceable*.  *See, e.g.*, *Halebian
N.J. v. Roppe Rubber Corp*., 718 F. Supp. 348, 360 (D.N.J. 1989) ("That the underlying contract
may be unenforceable is no defense to a claim of tortious interference."); *see also Mina L. Smith,
Inc. v. Cyprus Indus. Minerals Co*., 427 A.2d 1114 (N.J. App. Div. 1981) ("Unquestionably, one
who unjustifiably interferes with the contract of another is guilty of a wrong.  That the contract
may be unenforceable is no defense.").  We invite you to explain further why you believe such
information is relevant to the claims or defenses at issue in this action.

    **M.**    **Request No. 34**

        SaveOnSP's Request No. 34 seeks documents and communications concerning
JJHCS's consideration of SaveOnSP's services for its own employer-sponsored health plan.
JJHCS declined to produce any such documents.

        You claim that "whether JJHCS considered using such services for its own
employees is relevant to JJHCS' claims that SaveOnSP harms patients by causing stress and

Meredith Nelson, Esq.
January 6, 2023
Page 12

confusion, increasing costs of other healthcare, and threatening the viability of copay assistance." As you are no doubt aware, Johnson & Johnson did not contract with SaveOnSP. Given this fact, please explain how Johnson & Johnson's employer-sponsored health plan bears on any of these issues, or more generally to the claims and defenses at issue in this action.

### N.    Request No. 36

SaveOnSP's Request No. 36 seeks documents "sufficient to show the economic terms of JJHCS's retention of or agreements with any JJHCS Hub Entity or Care Path Coordinator regarding Care Path, including any assessment of the fair market value of those services." JJHCS agreed to produce agreements in its possession between it and the entities responsible for administering CarePath for the period of January 1, 2017 to the present.

You wrote to confirm (1) whether this production would encompass "agreements which have in the past administered CarePath, not simply those which currently administer CarePath" and (2) whether JJHCS will produce documents responsive to Request No. 36 that relate to the fair market value of JJHCS's Hub Entities' or CarePath Care Coordinators' services."

We write to confirm that JJHCS intends to produce agreements for entities that have administered CarePath for the period of January 1, 2017 to the present, even if those entities no longer administer CarePath today. Our current understanding is that those agreements will include work orders that document the cost of the services provided. We do not understand any other relevant documents to be responsive to this Request. If you seek any other documents, please let us know and we will consider your request.

### O.    Request No. 37

SaveOnSP's Request No. 37 seeks documents "sufficient to show the percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs." JJHCS declined to produce documents in response to this Request because this Request is irrelevant to the subject matter at issue in this litigation.

You assert that these documents are relevant to JJHCS allegations that SaveOnSP's conduct damages JJHCS, in part because they will "assist in demonstrating that SaveOnSP in fact causes more patients to use Janssen Drugs than would otherwise do so." We do not understand this purported rationale or its connection to this document request. Please explain how this might be the case. We do not understand SaveOnSP to make the decision to prescribe Janssen Drugs, and the "warm transfer" that is a necessary part of SaveOnSP's program will naturally deter some patients from using Janssen Drugs, as the patients are told that such medications are not covered by their health insurance unless additional steps are also taken. We invite you to describe any efforts that SaveOnSP has undertaken to alter individual

Meredith Nelson, Esq.
January 6, 2023
Page 13

prescribing decisions, including whether SaveOnSP collaborates with its health plan partners to require non-medical switching to drugs that SaveOnSP can designate as non-essential health benefits and for which manufacturer patient copay assistance exists.

    **P.**    **Request No. 38**

    SaveOnSP's Request No. 38 seeks all documents and communications "received by JJHCS from any JJHCS Hub Entity or sent by JJHCS to any JJHCS Hub Entity regarding SaveOnSP or CarePath." As noted in our initial Responses, JJHCS agreed to produce all documents responsive to this Request regarding SaveOnSP. *See* Response to Request Nos. 8, 38.

    You wrote to confirm that JJHCS will produce documents responsive to this Request regarding CarePath generally. Please explain why a Request that seeks all documents "regarding CarePath" and would necessarily encompass all documents exchanged between JJHCS and any entity with whom JJHCS contracts or partners with to administer CarePath is not overbroad or why complying with it would not be unduly burdensome. Given the Federal Rules' emphasis on proportionality, please also explain how such burdensome discovery would be proportional to SaveOnSP's needs in this action. *See* Fed. R. Civ. P. 26(b)(1).

    **Q.**    **Request No. 42**

    SaveOnSP's Request No. 42 seeks all documents and communications "relating to JJHCS's or any JJHCS Hub Entity's understanding of the terms 'copay accumulator' and 'copay maximizer.'" JJHCS responded that it would produce all non-privileged documents and communications in its possession for the period of January 1, 2017 to the present relating to JJHCS's understanding of whether the terms "copay accumulator" or "copay maximizer" apply to SaveOnSP.

    You wrote to inquire whether we would produce all documents and communications concerning those terms more generally. You assert that such documents are "relevant to whether JJHCS knowingly contributes to the alleged patient stress and confusion that it attempts to attribute to SaveOnSP by conflating SaveOnSP's conduct with that of 'maximizers' and 'accumulators,' including potentially harmful conduct commonly associated with 'copay accumulators' such as non-medical switching."

    We do not understand your assertions. This action concerns SaveOnSP's scheme to extract patient copay assistance funds in violation of the CarePath terms and conditions. The patient harms, including patient "stress and confusion," flow from how SaveOnSP operates its profit-seeking scheme, not from any entity's abstract understanding of the meaning of the terms "copay accumulator" or "copay maximizer." In light of this, please explain how JJHCS's, a third-party vendor's, or partner's understanding of these terms generally would be relevant to the claims at issue in this action.

*  *  *

Meredith Nelson, Esq.
January 6, 2023
Page 14

       We are available to meet and confer regarding the issues outlined above at your convenience.  We look forward to your response.

Very truly yours,

Harry Sandick

# Exhibit 2

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

June 28, 2024

**Via E-mail**

Jacob I. Chefitz
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

Re:    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC*** **(Case No. 2:22-cv-02632-JKS-CLW)**

Dear Jacob,

We write in response to your June 17, 2024 letter regarding discovery of
TrialCard documents controlled by J&J.

## I.    Custodians

In its May 24, 2024 Letter, SaveOn asked J&J to "identify and designate as
custodians any individuals at TrialCard" who worked "identifying patients on ac-
cumulators, maximizers, and SaveOn-advised plans, including but not limited to
the development, roll out, and operation of the CAP Program." We proposed seven
custodians to start: Jason Zemcik, Rick Ford, April Harrison, Tommy Gooch, Lynsi
Newton, Amber Maldonado, and Cosimo Cambi. *See* May 24, 2024 Ltr. App'x 2. In
its June 17, 2024 Letter, J&J agreed to add four—Zemcik, Gooch, Maldonado, and
Cambi—if SaveOn agreed to drop its request for the other three—Ford, Harison,
and Newton. *See* June 17, 2024 Ltr. at 2. J&J contends that these three individuals
"had minimal involvement in identifying, for JJHCS, patients on a SaveOnSP-ad-
vised plan, a maximizer plan, or an accumulator plan, and in the development and
rollout of the CAP Program." *Id.* J&J did not identify any other custodians who it
believes were involved in such work.

There is ample evidence that Ford, Harrison, and Newton are appropriate
custodians and are likely to have relevant documents in their files.

***Rick Ford***, Vice President of Market Access, was deeply involved in efforts
by TrialCard to respond to SaveOn, accumulators, and maximizers. *See, e.g.*,

Jacob Chefitz
June 28, 2024

TRIALCARD_00001951–55 (█████████████████████████████████████
████████████████████████████████████████████████). Ford
was central to TrialCard's efforts to ████████████████████
██████. TRIALCARD_00001811; *see also* TRIALCARD_00001966
███████████████████████████████████████████████████
████████). Ford internally ████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████ TRIAL-
CARD_00000348; *see also* TRIALCARD_00001881 ████████████
██████████████████████████████████████████).

████████████████████████████████████████████████████
████████. JJHCS_00000545; JJHCS_00003033. ████████████████
████████████████████████████████████████████████████
JJHCS_00002727; *see also* JJHCS_00003009 ████████████████
██████████████████████████████████████████). Ford's
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
JJHCS_00011226. He also ██████████████████████████████████
██████████████████████████████████████ *Id.* Benefit Inves-
tigations are the core of what later became known as the CAP Program.
████████████████████████████████████████████████████
███████████ JJHCS_00035426. On another occasion, ████████
██████████████████████████████████████████████████████
█████████████████████████████████ JJHCS_00226673.

**April Harrison**, Associate Director of Client Services, played an integral
role in implementing J&J's CAP Program. ███████████████████
███████████████████████████████████████████, TRIALCARD
00002368, and ████████████████████████████████████████████
███████████████████████████████ TRIALCARD_00003951; *see also* TRIAL-
CARD_00003893. ███████ *See* JJHCS_00100230, at -259.



2

Jacob Chefitz
June 28, 2024

████████████████████████████████████████████ TRIAL-
CARD_00003760.

████████████████████████████ TRIALCARD_00007218,
█████████████████████████████████████ TRIAL-
CARD_00007185, ████████████████████████████████
████████████████████

TRIAL-CARD_00007577.

Harrison was deeply involved in the planning and launch of the CAP Pro-
gram. ████████████████████████████████████████
████ JJHCS_00008800. ████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
*Id.* at 6; *see also* JJHCS_00008766 (███████████████
████████████████████████████████████████████
███ ). ████████████████████████████████████████
████████████████ JJHCS_00008771; *see also, e.g.*, JJHCS_00143619 (█
████████████████████████████████████████████
███ ). ███ , *see* JJHCS_00030204; JJHCS_00030295,
████████████████████████████████████████████
████████████████████████████████████████████
JJHCS_00104715.

*Lynsi Newton*, Program Manager, Immunology, was ███████
████████████████████████████████████████████
████████████████████████████████ TRIAL-
CARD_00003951. ██████████████████████████████████
████████████████████████████████████████ *See*
JJHCS_00004607, JJHCS_00004608, JJHCS_00004611.
████████████████████████ TRIALCARD_00008594; *see also* TRIAL-
CARD_00008354. ████████████████████████████████
████████████████████████████████████████████
████ JJHCS_00259132. In addition, █████████████████

Jacob Chefitz
June 28, 2024



JJHCS_00259344; *see also* JJHCS_00259349.

We have also discovered new evidence that **Tony McInnis**, Escalation Manager, Immunology, is likely to have unique, responsive documents, and we request that J&J add him as a custodian.

*See, e.g.,* JJHCS_00003307; JJHCS_00003312; JJHCS_00003328; JJHCS_00003341; JJHCS_00147164.

*See, e.g.,* JJHCS_00156295; JJHCS_00258993; JJHCS_00259104; JJHCS_00259108; JJHCS_00259543. McInnis is likely to have documents and communications about the process of identifying patients as being on accumulators, maximizers, and SaveOn-advised plans. In particular, he is likely to have communications with other TrialCard employees, as well as external contacts, regarding patients who claim to have been improperly identified as on a maximizer, accumulator, or SaveOn-advised plan.

## II.    Search Terms

You object to many of the search terms that we proposed in our May 24, 2024 letter because they do not specifically mention J&J or CarePath "and thus sweep too broadly." June 17, 2024 Ltr. at 3. Documents do not have to contain a specific reference to J&J to be relevant to TrialCard's work for J&J. Search terms targeting relevant topics, like SaveOn, accumulators, maximizers, or the CAP Program, applied to the files of custodians who worked on J&J projects are likely to hit on relevant material. If some of these documents include information relevant to both J&J and to other clients, J&J must produce them. Please let us know if J&J will agree to run the search terms listed in Appendix 2 to SaveOn's May 24, 2024 letter for all of the requested custodians.

J&J also claims that the only relevant documents in TrialCard's possession are those "regarding (i) TrialCard's work for JJHCS in identifying patients on accumulators, maximizers, and SaveOnSP-advised plans, and (ii) the development, roll out, and operation of the CAP Program." June 17, 2024 Ltr. at 4. Not so. Because J&J has legal control over TrialCard's documents related to its work for J&J, J&J is required to produce all such documents in TrialCard's possession relevant to any of the requests for which J&J has generally agreed to produce documents.

Jacob Chefitz
June 28, 2024

We request a response by July 8, 2024. We are available to meet and confer.

Sincerely,

/s/ Hanh Miles

Hannah R. Miles
Associate

# Exhibit 3



www.pbwt.com

July 12, 2024

Jacob I. Chefitz
(212) 336-2474

**By Email**

Hannah R. Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,*
       **2:22-cv-02632 (JKS) (CLW)**

Dear Hannah:

On behalf of JJHCS, we write in response to your June 28, 2024 letter regarding additional discovery of TrialCard documents.

We continue to object to the appropriateness of the additional TrialCard custodians and search terms that SaveOnSP has proposed. Your proposed search terms, in particular, are not appropriately tailored to this litigation. JJHCS has no authority under the audit provision of the MSA to request documents and communications from TrialCard that do not relate to TrialCard's work for JJHCS. And, as we explained in our June 17, 2024 letter, many of SaveOnSP's search terms will necessarily yield documents that do not relate to TrialCard's work for JJHCS. The simple fact that JJHCS may have agreed to run certain search terms over the files of relevant JJHCS custodians does not make those same search terms appropriate for TrialCard custodians, whose work was not limited to JJHCS-related tasks.

Nonetheless, in the interest of advancing this issue and fully assessing the burden and scope of SaveOnSP's requests here, we have asked TrialCard to collect the documents of the eight additional TrialCard custodians you have identified, and we have asked TrialCard to provide hit counts for the search terms that SaveOnSP has proposed. For the avoidance of doubt, those requests have been made to TrialCard's counsel at Smith Anderson, who TrialCard has retained to advise TrialCard regarding TrialCard's duties to JJHCS under the MSA.

We reserve all rights and are available to meet and confer.

Hannah R. Miles, Esq.
July 12, 2024
Page 2

Very truly yours,

*/s/Jacob I. Chefitz*

Jacob I. Chefitz

# Exhibit 4



www.pbwt.com

July 12, 2024

Jacob I. Chefitz
(212) 336-2474

**By Email**                    **CONFIDENTIAL**

Isaac A. Linnartz, Esq.
Smith Anderson
Wells Fargo Capitol Center
150 Fayettsville Street, Suite 2300
Raleigh, NC 27601

   **Re:** ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,***
     **2:22-cv-02632 (JKS) (CLW)**

Dear Isaac:

    We write to you in our capacity as counsel to JJHCS in the above-captioned matter.[1]

    As you know, Judge Freda Wolfson, who is the Special Master in this litigation, has ruled that Section 17 of the Master Services Agreement ("MSA") between JJHCS and Mercalis ("TrialCard") provides JJHCS with the right to request and examine TrialCard's "documents and communications relating to the administration of CarePath, call recordings and other records reflecting communications between TrialCard's CarePath call center and patients, and documents and communications related to the implementation of the CAP program and TrialCard's benefits investigations."  Ex. 1 (May 28, 2024 Letter Order) at 9-10; *see also* Ex. 2 (MSA) § 17.

    In light of the Court's ruling that JJHCS has "legal control" over those documents and communications, SaveOnSP has requested that JJHCS produce documents from TrialCard that relate to TrialCard's work for JJHCS "in identifying patients on accumulators, maximizers, and SaveOn-advised plans, including but not limited to the development, roll out, and operation of the CAP Program."  *See* May 24, 2024 Letter from H. Miles to S. Arrow at 1; *see also* June 28, 2024 Letter from H. Miles to J. Chefitz.  We have provided copies of these letters to you.

---

[1] As you are aware, while we have previously represented TrialCard in connection to subpoenas that TrialCard received in this case, our representation is now limited to facilitating TrialCard's "refresh" of the prior custodial productions it has made in this matter.  That "refresh" production is unrelated to the issues raised herein.

Patterson Belknap Webb & Tyler LLP  1133 Avenue of the Americas, New York, NY 10036  T 212.336.2000  F 212.336.2222

Isaac A. Linnartz, Esq.
July 12, 2024
Page 2

Specifically, SaveOnSP has requested that JJHCS produce responsive documents from the custodial files of the following eight TrialCard employees, covering the period April 1, 2016 to November 7, 2023, that hit on the search terms also listed below:

### *Custodians*

1. Jason Zemcik

2. Rick Ford

3. April Harrison

4. Tommy Gooch

5. Lynsi Newton

6. Amber Maldonado

7. Cosimo Cambi

8. Tony McInnis

### *Search Terms*

1. SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP

2. ("Johnson & Johnson" OR "Johnson and John-son" OR J&J OR JnJ OR JJHCS OR Janssen) AND (Save-OnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy")

3. (CarePath OR "Care Path") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy")

4. (Accumulator OR Maximizer) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy")

5. ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (CarePath w/5 "term* and condition*")

6. (Accumulator OR Maximizer OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP) w/10 (Care-Path AND (Stelara OR Tremfya) AND (limit OR eliminat*))

7. ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (enroll w/5 CarePath) AND contact*

Isaac A. Linnartz, Esq.
July 12, 2024
Page 3

8. (CAPa OR CAPm OR "adjustment program") **AND** (Save-OnSP OR SaveOn OR "Save On SP" OR Save On" OR SOSP OR accumlat* OR maximiz*)

9. ("essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*) **w/50** ("CAPa" OR CAPm" OR "adjustment program" OR accumulat* OR maximiz*)

10. "Save On" (*case sensitive*)

11. "save on" **w/50** (accumlat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

12. "other offer" **w/5** (accumlat* OR maximiz*)

13. ("Express Scripts" OR ESI OR ExpressScripts) **w/50** ("accumulat* OR maximiz*)

14. (Accredo OR Acredo) **w/50** (accumulat* OR maximiz*)

15. (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate)

Pursuant to Section 17 of the MSA and Judge Wolfson's May 28, 2024 Order, we request that TrialCard collect the documents and communications of the above-listed custodians, run the above-listed search terms over their files, and provide us with hit counts for each of those search terms. We request that you provide the number of documents hitting on each search term both including and excluding full families. We expect to provide this information to SaveOnSP in negotiating the scope of SaveOnSP's discovery requests to JJHCS for TrialCard's documents. Please let us know if you have any questions or would like to discuss further.

Very truly yours,

*/s/ Jacob I. Chefitz*

Jacob I. Chefitz

Exhibit 1

**LOWENSTEIN
Sandler**

| **Freda Wolfson** | One Lowenstein Drive |
| Chief U.S. Dist. Judge (ret.) | Roseland, New Jersey 07068 |
| Partner | |
| | **T: (862) 926-2708** |
| | **F: (973) 597-2400** |
| | **E: fwolfson@lowenstein.com** |

<u>**LETTER ORDER**</u>

May 28, 2024

<u>*VIA ECF and Email*</u>
**TO ALL COUNSEL OF RECORD**

    **RE:**    *Johnson & Johnson Health Care Systems, Inc. v. SaveOnSP, LLC*
                **Civ. Action No.: 22-2632(JKS)(CLW)**

Counsel:

    On May 23, 2024, I conducted a hearing via Zoom on three discovery-related motions filed by both Plaintiff Johnson & Johnson Health Care Systems, Inc. ("Plaintiff" or "JJHCS") and Defendant SaveOnSp, LLC ("Defendant" or "SaveOnSP"): 1) Plaintiff's motion to compel Darcie Falsioni's third-party communications; 2) Defendant's motion to compel JJHCS to produce documents in the possession of TrialCard, Inc. ("TrialCard"); and 3) Defendant's motion to compel document concerning Best Price Rule. Because my rulings are memorialized on the record, I summarize them here; however, as discussed, I will provide a more fulsome explanation on the issue of TrialCard's documents.

    First, Plaintiff sought additional documents from Falsioni, Defendant's Corporate Counsel and Chief Compliance Officer and a designated custodian. These requested documents relate to communications that Falsioni had with third parties regarding the SaveOnSp program. Plaintiff argued that these documents are relevant because Falsioni negotiates contractual terms with Defendant's clients which could shed light on the alleged interference scheme. Plaintiff proposed the following search string:

*"service agreement" OR BAA OR "business associate agreement" OR joinder OR PHI OR contract OR amendment*

On the record, I found that the requested documents are relevant; however, I agree with Defendant's position that the search string is too expansive by using "OR" in connecting each seemingly broad independent term, such as "contract" or "amendment." I instructed the parties to meet and confer on the search string, with the suggestion that each term should be qualified by other terms such that the search would only generate relevant documents. The parties shall confer on the appropriate search terms by June 4, 2024. If any dispute arises, I can assist the parties in resolving their differences.

As to the Best Price Rule motion, Defendant sought documents regarding Plaintiff's "best price" certification to the federal government pursuant to Department of Health and Human Services' Best Price Rule. These documents are related to Defendant's Requests for Production Nos. 8, 70 and 79. Defendant insists that it is entitled to such documents for its mitigation defense; that is, to show that Plaintiff changed certain terms and conditions of its CarePath program and the creation of the CAP Program in response to the promulgation of the 2023 Best Price Rule, which never went into effect. While I agree with Defendant's position that these documents *may* reveal Plaintiff's intent and motivation in identifying its patients who are on SaveOnSp's programs, nonetheless before any production on the part of Plaintiff, Defendant must first serve interrogatories on Plaintiff—I suggest no more than three—to explore the purpose of an internal

checklist[1] that may or may not relate to Plaintiff's obligations under the Best Price Rule.

Relatedly, Defendant may question Plaintiff regarding who was responsible for creating

the internal checklist. I advised Defendant that these interrogatories must be targeted and

narrow in scope.[2] Once the interrogatories are served and answered, the parties must

meet and confer on appropriate search terms and whether any additional custodians may

need to be included on this issue. Again, if any issues arise, the parties shall bring them

to my attention.

Finally, I will further expand upon my decision granting Defendant's motion to

compel JJHCS to produce TrialCard documents. In that motion, Defendant moved to

compel Plaintiff to produce the following responsive documents in the possession of its

vendor TrialCard, related to work performed by TrialCard for Plaintiff: (1) documents

and communications related to TrialCard's administration of CarePath from the

"refresh" time period of July 1, 2022 to November 7, 2023; and (2) documents and

communications regarding TrialCard's efforts on behalf of Plaintiff to identify patients

on accumulators, maximizers, and SaveOnSP-advised plans, including communications

about benefits investigations.

---

[1]    ███████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
SaveOn Ex. 7 (JJHCS_00204199) at -421, ████████████████████
███████████████████████████████████████████████████████████

[2]    The time period for the search should be limited to the period from the date when
the 2023 Best Price Rule was proposed by the government until it was invalidated by the
District Court in the District of Columbia.

As a third-party independent contractor, TrialCard administers the CarePath Program at the behest of Plaintiff. Indeed, TrialCard manages that program pursuant to a Master Services Agreement ("MSA") executed between the two parties. In that role, there is no dispute that TrialCard interfaces directly with patients, using materials that are approved by Plaintiff, to 1) screen patients to determine their eligibility for CarePath; and 2) disburse the CarePath funds. Additionally, TrialCard has been involved in identifying patients who are on SaveOnSp programs, and according to Defendant, TrialCard collaborated with Plaintiff in designing the CAP program.

According to Defendant, TrialCard has been withholding critical documents that relate to Defendant's defense, including mitigation of damages. Defendant maintains that while TrialCard produced a spreadsheet summary of the results of its benefits investigations for Plaintiff, TrialCard refuses, for example, to produce documents showing how it chooses which patients to investigate, how it conducts those investigations, how it determines if a patient is on an accumulator, maximizer, or plan advised by SaveOnSP, or any internal communications regarding any directions provided by Plaintiff. Defendant further maintains that although Plaintiff has produced some communications with TrialCard about patients identified through the CAP Program, documents show that TrialCard also held internal discussions related to the results of benefits investigations, which were not produced. In addition, Defendant argues that TrialCard is inappropriately withholding documents relating to methods that it used or considered using, in addition to benefits investigations, to attempt to identify members of SaveOnSP-advised plans.

Rather than filing a motion to compel TrialCard to produce those documents in North Carolina pursuant to Fed. R. Civ. P. 45, Defendant argues that these documents are within the "legal control" of Plaintiff such that Plaintiff may be compelled, here, to produce those documents.

The parties' primary dispute is whether Plaintiff has "legal control" over the documents Defendant seeks, as those documents are in the possession and custody of TrialCard. Defendant argues that the audit provisions in the MSA between Plaintiff and TrialCard are sufficient to establish control under Rule 34. On the other hand, Plaintiff insists that it does not have control over the requested documents because, in its view, the MSA provides only limited rights to audit certain documents for limited purposes. I disagree.

Federal Rule of Civil Procedure 34 allows "[a] party . . . [to] serve on any other party a request . . . to produce . . . in the responding party's possession, custody or control . . . any designated documents . . . ." Fed. R. Civ. P. 34(a). "In the absence of control by a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has no duty to produce." *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 140 (3d Cir. 1988). "In the context of Fed. R. Civ. P. 34(a), so long as the party has the legal right or ability to obtain the documents from another source upon demand, that party is deemed to have control." *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004). Importantly, a "practical ability to obtain the requested documents" from separate corporate entities is not enough to constitute control because an entity "could legally . . . refuse to turn over such documents." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107-

5

08 (9th Cir. 1999). Instead, "control" is defined as "the legal right to obtain documents upon demand." *United States v. International Union of Petroleum & Indus. Workers,* 870 F.2d 1450, 1452 (9th Cir. 1989). Federal courts construe "control" very broadly for Rule 34 purposes. *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991).

A contractual right to obtain documents in the possession of a third party can constitute control for Rule 34 purposes. *See, e.g., Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*, 2016 U.S. Dist. LEXIS 20076, at *4 (D. Del. Feb. 12, 2016) (stock purchase agreement with third party provided requisite control); *Lofton v. Verizon Wireless (Vaw) LLC*, 2014 U.S. Dist. LEXIS 165140, at *1 (N.D. Cal. Nov. 25, 2014) (audit provisions in vendor contracts provided control over third party's documents); *Haskins v. First Am. Title Ins. Co.*, 2012 U.S. Dist. LEXIS 149947, 2012 WL 5183908, at *2 (D.N.J. Oct. 18, 2012) (contracts provided control over and access to third party agents' files).

Here, the relevant audit provisions of the MSA provide:





(MSA, § 17 (emphasis added).)

First, that the intent of § 17 may be on financial audits is of no moment. Indeed,

the crux of the "control" analysis is whether the parties intended to provide Plaintiff

access to certain documents such that Plaintiff may audit or examine those documents.

In other words, the focus is on whether Plaintiff has "the contractual right to obtain the

documents requested." *Moretti v. Hertz Corp.*, No. 14-469, 2018 U.S. Dist. LEXIS 168609, at

*8 (D. Del. Sep. 30, 2018). In that regard, Plaintiff's reliance on *Inline Connection Corp. v.*

*AOL Time Warner, Inc.*, Nos. 02-272, 02-477, 2006 U.S. Dist. LEXIS 72724, at *11 (D. Del.

Oct. 5, 2006) is misplaced. For one, in that case, unlike the broad provision in the MSA

here, the contract in *Inline* required a non-party to provide information only "where

feasible," which the court construed as merely providing the contracting party access to

information. *Id.* Here, ██████████████████████████████████████

████████████████████████████████████████████ This language plainly

is distinguishable from the provision in *Inline*.[3]

Indeed, during oral argument, Plaintiff conceded that the MSA's audit provision

is quite broad. That provision states that TrialCard "███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[3]    During oral argument, Plaintiff argued that I should be guided by the decision in *Camden Iron*, and consider whether the documents sought are records which JJHCS may request and obtain in its normal course of business with TrialCard. But that case is distinguishable because it dealt with a parent and subsidiary relationship and the related companies' course of dealings, not control governed by a written agreement executed by two unrelated corporate entities.

███████████████████████" Courts that have examined similarly broad language have found control for the purposes of Rule 34. *See, e.g., Moretti*, 2018 U.S. Dist. LEXIS 168609, at *4-5 ("To allow representatives of International or Hertz, at any time during normal business hours, to inspect the premises, records, and vehicles of the Licensee used in operation as a Hertz System Licensee and to examine Licensee's records ascertaining and verifying the number of vehicles owned, leased, used or kept by the Licensee for use in Licensee's Vehicle Renting Business, the revenues therefrom and any - other information required by Hertz with respect to the Licensee's Vehicle Renting Business."); *Mercy*, 380 F.3d at 160 (where the subcontractor was "employed . . . to conduct the audit and receive documents," and thereby agreed to make available pertinent files "at all reasonable times, for review and obtaining any necessary information," the Third Circuit held that the "the documents were accessible to the [contracting party] and within its control"); *Haskins*, 2012 U.S. Dist. LEXIS 149947, at *2 (finding control from contract language that indicates that the third-party must "[m]aintain and carefully preserve all records . . . [and] [p]ermit [the defendant] to examine, audit and copy all financial information and records upon reasonable prior notice").

Turning to the documents sought by Defendant, these fall within the broad audit provision of the MSA. Defendant has requested production of documents and communications relating to the administration of CarePath, call recordings and other records reflecting communications between TrialCard's CarePath call center and patients, and documents and communications related to the implementation of the CAP program and TrialCard's benefits investigations. Presumably, these documents are being

"maintained by [TrialCard] in relation to [the MSA] and/or any applicable Work Orders" such that Plaintiff "shall at any time have the right to request [those] documents." (MSA, § 17.2.) They also fall under the term "other records" in the same provision. (*Id.* █████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

Accordingly, I find that by virtue of the MSA, Plaintiff has legal control over the requested documents.

Having made that determination, I direct the parties to meet and confer on the scope of the TrialCard discovery by June 4, 2024. While I am not making any rulings on the appropriate scope or burden of the requested discovery in this context, I nevertheless make the following observations. At the outset, I reiterate that the requested discovery is relevant as the documents at issue relate to the creation and implementation of the CAP Program, and benefits investigations into whether patients were on SaveOnSP programs. Although Plaintiff argues that many of the TrialCard documents that Defendant seeks are cumulative of party discovery, I am not convinced, based on the simple fact that TrialCard, itself, has not performed a search of the requested documents to determine whether it possesses additional relevant documents. In short, regardless of whether the documents may be cumulative, to make that determination, TrialCard must first conduct a search at the request of JJHCS. Finally, at this juncture, I note that Plaintiff has not

presented any compelling reasons to avoid refreshing the production of the categories of

documents that TrialCard has already agreed to produce.


*/s/ Freda L. Wolfson*
Hon. Freda L. Wolfson (ret.)
Special Master

Exhibit 2



















































































































# Exhibit 5



www.pbwt.com

August 22, 2024

Jacob I. Chefitz
(212) 336-2474

**By Email**

Hannah R. Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,***
***2:22-cv-02632 (JKS) (CLW)***

Dear Hannah:

On behalf of JJHCS, we write regarding the additional TrialCard (now known as Mercalis) documents that SaveOnSP has requested from JJHCS.

As stated in our prior correspondence on this subject, we asked TrialCard to collect the documents of the eight additional TrialCard custodians you identified[1] and to provide hit counts for the search terms that SaveOnSP has proposed.[2]  On August 16, 2024, TrialCard responded to our request, stating that it has collected documents from the eight identified custodians, run searches against that collection, and obtained hit counts for those searches.  We attach TrialCard's response, including the hit counts it has provided, as Appendix A to this letter.

TrialCard has told JJHCS that "[i]n light of the breadth of the request, and to limit the collection to documents related to JJHCS's engagement with Mercalis," it has only collected documents from the eight custodians that hit on the following search string:

"Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA

TrialCard has further stated that, for those same reasons, it has added the term <"Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR

---

[1] For the avoidance of doubt, those custodians are: Jason Zemcik, Rick Ford, April Harrison, Tommy Gooch, Lynsi Newton, Amber Maldonado, Cosimo Cambi, and Tony McInnis.

[2] Those search terms are the fifteen proposed terms listed in Appendix 2 to your May 24, 2024 letter.

Hannah R. Miles, Esq.
August 22, 2024
Page 2

"Care Path"> to several of the requested search terms, and that TrialCard is refusing to run Search No. 10, *i.e.* a search for "Save On" (*case sensitive*).  JJHCS has followed up with TrialCard to seek additional information, and we attach a copy of our letter to TrialCard as Appendix B to this letter.

Still, even with those limitations, SaveOnSP's requested terms hit on more than 41,000 documents, including families.  Given these hit counts, SaveOnSP's proposed search terms are unduly burdensome, and we therefore request that SaveOnSP propose more narrowly tailored search terms for these TrialCard custodial documents.

In proposing more narrowly tailored search terms, SaveOnSP should be mindful that, as we have repeatedly explained, JJHCS has no authority under the audit provision of the MSA to request documents and communications from TrialCard that do not relate to TrialCard's work for JJHCS.  Indeed, for that reason, TrialCard has limited its collection and searches here to documents hitting on JJHCS-specific terms.

We reserve all rights and are available to meet and confer.


Very truly yours,

*/s/Jacob I. Chefitz*

Jacob I. Chefitz

# **APPENDIX A**

# Sᴍɪᴛʜ, Aɴᴅᴇʀsᴏɴ, Bʟᴏᴜɴᴛ,
# Dᴏʀsᴇᴛᴛ, Mɪᴛᴄʜᴇʟʟ & Jᴇʀɴɪɢᴀɴ, L.L.P.

### LAWYERS

| | | |
|---|---|---|
| **OFFICES**<br>Wells Fargo Capitol Center<br>150 Fayetteville Street, Suite 2300<br>Raleigh, North Carolina 27601<br>——————<br>**ISAAC A. LINNARTZ**<br>DIRECT DIAL: (919) 821-6819<br>E-Mail: ilinnartz@smithlaw.com | August 16, 2024 | **MAILING ADDRESS**<br>P.O. Box 2611<br>Raleigh, North Carolina<br>27602-2611<br>——————<br>TELEPHONE: (919) 821-1220<br>FACSIMILE: (919) 821-6800 |

**<u>Via Email</u>**

Jacob I. Chefitz
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jchefitz@pbwt.com

      Re:     Johnson & Johnson Health Care Systems, Inc.'s ("JJHCS") Request Under Section 17 of the Amended and Restated Master Services Agreement Between JJHCS and Mercalis Inc. dated January 1, 2024 (the "MSA")

Dear Jacob:

      I am writing in response to your July 12, 2024 letter on behalf of JJHCS requesting that Mercalis Inc. (formerly known as TrialCard Incorporated) collect documents and communications for eight custodians, run fifteen different search strings against those documents, and provide hit counts for those searches.

      As an initial matter, the MSA does not contemplate or require running search terms or providing hit counts. That said, to assist JJHCS in assessing the breadth and burden of discovery sought in JJHCS's lawsuit against Save On SP, LLC, Mercalis has collected documents from the eight custodians you identified, has run searches against that collection, and is voluntarily providing hit counts for those searches as outlined below.

      JJHCS's request asks Mercalis to collect documents, run searches, and provide hit counts across eight custodians over a more than seven-and-a-half year period. Additionally, a number of the search strings you provided did not contain any terms limiting their scope to documents related to JJHCS's engagement with Mercalis. In light of the breadth of the request, and to limit the collection to documents related to JJHCS's engagement with Mercalis, we used the following initial search to collect documents from the eight custodians:

      "Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA*

Sᴍɪᴛʜ, Aɴᴅᴇʀsᴏɴ, Bʟᴏᴜɴᴛ, Dᴏʀsᴇᴛᴛ, Mɪᴛᴄʜᴇʟʟ, & Jᴇʀɴɪɢᴀɴ, L.L.P.

Mr. Jacob I. Chefitz
August 16, 2024
Page 2

For the same reasons, we made the following modifications to the searches you requested:

- Searches No. 1, 4, 8-9, 11-15:  We added the required term ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path").

- Search No. 10:  We did not run this search because it did not contain any terms limiting it to documents related to JJHCS's engagement with Mercalis and adding the limiting term identified in the prior bullet would not yield any new documents, since that would make it a subset of Search No. 1.

I have enclosed a spreadsheet that contains the specific search strings we used and the hit counts they returned (both with and without families). If you have any questions about the search methodology or hit counts, please let me know.

Please note that while Mercalis is voluntarily providing these hit counts, it does not concede that JJHCS is necessarily entitled to inspect or obtain the documents reflected in those hit counts and reserves its rights with respect to any future requests that JJHCS may make under the MSA or otherwise.

Sincerely,

Isaac A. Linnartz

Enclosure

Searches re JJHCS 7.22.24 R460531(12500434.1).xlsx

| Search # | Search Terms | Hits (with families) | Hits (no families) |
|---|---|---|---|
| 1 | (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP) AND ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path") | 7129 | 1958 |
| 2 | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | 7503 | 2139 |
| 3 | (CarePath OR "Care Path") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | 7129 | 1871 |
| 4 | (Accumulator OR Maximizer) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") AND ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path") | 2438 | 675 |
| 5 | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (CarePath w/5 "term* and condition*") | 1010 | 349 |
| 6 | (Accumulator OR Maximizer OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP) w/10 (Care Path AND (Stelara OR Tremfya) AND (limit OR eliminat*)) | 0 | 0 |
| 7 | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (enroll w/5 CarePath) AND contact* | 1745 | 686 |
| 8 | (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*) AND ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path") | 4128 | 2235 |
| 9 | (("essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*) w/50 (CAPa OR CAPm OR "adjustment program" OR accumulat* OR maximiz*)) AND ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path") | 91 | 46 |

| 11 | ("save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")) AND ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path") | 72 | 31 |
|----|----|----|----|
| 12 | "other offer" w/5 (accumulat* OR maximiz*) AND ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path") | 0 | 0 |
| 13 | (("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)) AND ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path") | 1003 | 354 |
| 14 | ((Accredo OR Acredo) w/50 (accumulat* OR maximiz*)) AND ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path") | 1173 | 481 |
| 15 | ((STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate)) AND ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path") | 8532 | 2568 |

# **APPENDIX B**



August 22, 2024

Jacob I. Chefitz
(212) 336-2474

**<u>By Email</u>**

Isaac A. Linnartz, Esq.
Smith Anderson
Wells Fargo Capitol Center
150 Fayettsville Street, Suite 2300
Raleigh, NC 27601

Re:     ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***,
        **<u>2:22-cv-02632 (JKS) (CLW)</u>**

Dear Isaac:

We write in response to your August 16, 2024 letter regarding the collection of documents and communications from Mercalis (formerly known as "TrialCard") that we previously requested.[1]

We appreciate that TrialCard has collected documents from the eight custodians we previously identified and that TrialCard has provided hit counts for certain searches run across those custodians' documents over the time period of April 1, 2016 to November 7, 2023.  As stated in our July 12, 2024 letter, we will be sharing those hit counts—along with your letter—with SaveOnSP as part of JJHCS's response to SaveOnSP's discovery requests to JJHCS for TrialCard's documents.

From your response, we understand that TrialCard has taken the position that TrialCard will only provide JJHCS with documents that hit on the following search string:

"Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA*

You explain that TrialCard has applied this limitation "[i]n light of the breadth of the request, and to limit the collection to documents related to JJHCS's engagement with Mercalis."  You further state that, for those same reasons, TrialCard has added the term <"Johnson & Johnson" OR

---

[1] As with our July 12, 2024 letter, we are writing to you here in our capacity as counsel to JJHCS in the above-captioned matter.

Isaac A. Linnartz, Esq.
August 22, 2024
Page 2

"Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path">
to several of the requested search terms, and that TrialCard is refusing to run Search No. 10, *i.e.* a
search for "Save On" (*case sensitive*).

JJHCS agrees that, under the MSA as construed by Judge Wolfson, it is not entitled
to any of TrialCard's documents that do not relate to TrialCard's work for JJHCS in administering
CarePath and implementing the CAP program. And JJHCS recognizes that, without search terms
that are specifically tailored to JJHCS and its work for TrialCard, screening such documents and
communications—especially when collected from eight custodians spanning more than seven
years—can be burdensome. But JJHCS would like to better understand TrialCard's chosen
methodology for screening those documents here, particularly in light of Judge Wolfson's ruling
that JJHCS has legal control over documents "relating to the administration of CarePath, call
recordings and other records reflecting communications between TrialCard's CarePath call center
and patients, and documents and communications related to the implementation of the CAP
program and TrialCard's benefits investigations." May 23, 2024 Order at 9. Please let us know
your availability to discuss.

JJHCS reserves all rights.

Very truly yours,

*/s/ Jacob I. Chefitz*

Jacob I. Chefitz

# Exhibit 6

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy | Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

August 28, 2024

**Via E-mail**

Jacob I. Chefitz
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jchefitz@pbwt.com

Re:  ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC*** **(Case No. 2:22-cv-02632-JKS-CLW)**

Dear Jacob,

We write in response to J&J's August 22, 2024 letter regarding SaveOn's request for TrialCard documents within J&J's control.

*First*, your letter states that TrialCard collected documents from the eight new custodians that SaveOn requested, but limited this collection to documents that hit on the term: "Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA*. We do not agree that this was appropriate. For J&J to comply with its obligation to collect relevant TrialCard documents within its control, the parties must agree on an appropriate protocol for identifying such documents. This starts with running all SaveOn's proposed search terms over all the proposed custodians' documents and providing us relevant hit counts (by custodian, by term, and in the aggregate, de-duplicated). You must also explain whether any of the requested custodians worked primarily on projects for J&J at any points during the relevant time period and whether any of them segregated any of their emails and/or documents relating to such work. Once we receive this information, we can discuss whether it makes sense to use some set of terms to limit the documents that TrialCard provides to J&J for review. We note that any such terms (if appropriate) would need to include, at a minimum, (1) terms describing the CAP program, like "CAP,"

Jacob I. Chefitz
August 28, 2024

"CAPa," and " CAPm;" (2) the names of J&J custodians with whom TrialCard employees regularly interacted; and (3) the names of all Janssen drugs at issue.[1]

*Second*, SaveOn asked that its proposed search terms be run over the eight new custodians that it requested as well as the four original custodians from whom TrialCard agreed to produce documents. *See* May 24, 2024 Ltr. from H. Miles to S. Arrow ("Please run the search terms proposed on Appendix 2 over the documents of *all custodians* and produce any responsive, non-privileged documents." (emphasis added)). These original custodians—Holly Weischedel, Sini Abraham, Paul Esterline, and Rick Fry—were involved in TrialCard's implementation of the CAP program for J&J,[2] and TrialCard originally identified them as the individuals most involved in its relevant work for J&J. *See* Sept. 29, 2023 Ltr. from K. Brisson to E. Holland at 1 ("As we have explained at length, the four existing TrialCard custodians … had operational and strategic responsibilities for the issues about which you have sought document production."). Please confirm that you will provide hit counts for SaveOn's proposed search terms for these four custodians as well.

---

[1] TrialCard administered CarePath for all drugs at issue, not just Stelara and Tremfya, ████████ , *see* JJHCS_00030214 ████); JJHCS_00160628 (████); JJHCS_00261754 ████), ██ , *see* JJHCS_00238492 ████); JJHCS_00216467 at summary, lines 119 and 121 (████). ████ JJHCS_00270487 at - 492.

[2] *See, e.g.*, JJHCS_00273365 (████); JJHCS_00276923 (████); TRIALCARD_00008521 (████); TRIALCARD_00008521 (████); TRIALCARD_00007164 (████); JJHCS_00269898 ████); TRIALCARD_00006523 (████).

Jacob I. Chefitz
August 28, 2024

*Third*, you state that "even with [the J&J limiter that TrialCard applied], SaveOnSP's requested terms hit on more than 41,000 documents, including families" making the terms "unduly burdensome." The 41,000-document figure appears nowhere in TrialCard's letter to J&J. It appears that it may have been derived by summing the hit counts for the fifteen individual search terms, which would have double counted documents that hit on more than one search term.[3] Please promptly provide us with the total number of unique documents hitting on the proposed search terms.

We request a response by September 4, 2024. We reserve all rights and are available to meet and confer.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

---

[3] For instance, we expect there to be significant overlap in the documents that hit on search terms 1-4, since each of those terms includes variations on SaveOn's name.

3

# Exhibit 7



www.pbwt.com

September 6, 2024

Jacob I. Chefitz
(212) 336-2474

**By Email**

Hannah R. Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re: ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***,
> **2:22-cv-02632 (JKS) (CLW)**

Dear Hannah:

We write in response to SaveOnSP's August 28, 2024 letter regarding the additional TrialCard (now known as Mercalis) documents that SaveOnSP has requested from JJHCS.

*First*, as we have repeatedly explained, JJHCS does not physically control TrialCard's documents. And legal control of TrialCard's documents under the MSA is not unlimited. The MSA does not provide JJHCS with legal control over TrialCard's documents that are unrelated to TrialCard's work for JJHCS, and Judge Wolfson has never suggested otherwise. While we have asked TrialCard to provide hit counts for all of SaveOnSP's proposed search terms, TrialCard, an independent entity, has made clear that it will not agree to collect its custodians' documents or run search terms without some initial limitation of the document population to documents generated within the scope of TrialCard's work for JJHCS.

In order to comply with our obligations under Judge Wolfson's order, we specifically asked TrialCard to explain the basis for the limitations it has imposed. We can report that TrialCard answered as follows:

> As an initial matter, there is nothing in the MSA that requires Mercalis to run searches or provide hit counts. While Mercalis elected to respond to JJHCS's request, it imposed reasonable limitations to (i) reduce the burden of collecting documents, which was substantial even with those limitations given the number of custodians (8) and years (7.5) at issue and (ii) limit the scope of searches that did not contain terms specific to the Mercalis-JJHCS relationship and thus were likely to sweep in a large number of documents unrelated to that relationship.

Sep. 4, 2024 Ltr. from I. Linnartz to J. Chefitz at 1 (attached herein as Appendix A).

Hannah R. Miles, Esq.
September 6, 2024
Page 2

Your letter states that SaveOnSP does not agree that the use of JJHCS-related limiting terms was appropriate. TrialCard, however, is not obligated under the MSA to provide JJHCS with documents outside the scope of TrialCard's work for JJHCS. TrialCard has taken what it believes are reasonable steps to remove non-JJHCS related documents from the population of documents at issue in order to make sure it only provides documents to which JJHCS is entitled under the MSA.

Your letter also states that, before "we can discuss whether it makes sense to use some set of terms to limit the documents that TrialCard provides to [JJHCS] for review," JJHCS must first "run[] all SaveOn's proposed search terms over all the proposed custodians' documents," "provide[] us relevant hit counts (by custodians, by term, and in the aggregate, de-duplicated)," and "explain whether any of the requested custodians worked primarily on projects for J&J at any points during the relevant time period and whether any of them segregated any of their emails and/or documents relating to such work."

Neither the MSA nor Judge Wolfson's ruling requires that JJHCS provide such detailed information. Again, JJHCS does not have physical access to the proposed custodians' documents; only TrialCard does. JJHCS cannot, therefore, run search terms over those custodians' documents like it would for JJHCS custodians. JJHCS can only request that TrialCard do so pursuant to JJHCS's audit rights under the MSA—which JJHCS has done, in full compliance with Judge Wolfson's order. TrialCard reasonably insists on using a set of terms to limit the documents at issue here to those within the scope of the MSA. SaveOnSP's repeated insistence that JJHCS require that TrialCard run all of SaveOnSP's proposed search terms over all of the proposed custodians' documents is unreasonable and impractical.

All that said, in the interest of advancing this issue, JJHCS is willing to ask TrialCard to expand its point-of-collection limitations, and JJHCS has asked TrialCard if it will agree to use the following, broader search term to do so:

> "Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA OR <span style="color:red">Balversa OR Darzalex OR Erleada OR Imbruvica OR Opsumit OR Remicade OR Rybrevant OR Simponi OR Tracleer OR Uptravi OR Zytiga OR CAPm OR CAPa</span>

We must again stress, however, that TrialCard is an independent entity, and JJHCS cannot guarantee that TrialCard will agree to the above proposal.

*Second*, your letter asks that JJHCS provide hit counts for SaveOnSP's proposed terms when run over the files of the four "original" TrialCard custodians (Holly Weischedel, Sini Abraham, Paul Esterline, and Rick Fry). As an initial matter, Appendix 2 to SaveOnSP's May 24, 2024 letter did not include the four original TrialCard custodians, indicating that SaveOnSP was not requesting that the newly proposed terms be run over their files as well. JJHCS has also long been clear that it understood SaveOnSP's request to pertain to the "eight additional TrialCard custodians you have identified." July 12, 2024 Ltr. from J. Chefitz to H. Miles. And TrialCard

Hannah R. Miles, Esq.
September 6, 2024
Page 3

has already produced responsive, non-privileged documents from the four original custodians
hitting on seven of the fifteen search terms that SaveOnSP has proposed here.  Nonetheless, JJHCS
has asked TrialCard to provide hit counts for the remaining eight search terms for the four original
custodians.  Please be advised, however, that TrialCard may impose the same limitations as it has
done with respect to the prior hit counts it has provided.

       *Third*, we have asked TrialCard to provide a de-duped, total hit count for the search
terms that TrialCard previously ran.  TrialCard has informed JJHCS that, de-duped, the search
terms that it ran hit on 16,722 unique documents, family inclusive.  While those hit counts are
lower than before, they still are unduly burdensome and would impose on JJHCS an unwarranted
expansion of discovery.  JJHCS therefore again requests that SaveOnSP propose more narrowly
tailored search terms for these TrialCard custodial documents.

       We reserve all rights and are available to meet and confer.

       Very truly yours,

       */s/Jacob I. Chefitz*

       Jacob I. Chefitz

# **APPENDIX A**

**SMITH, ANDERSON, BLOUNT,
DORSETT, MITCHELL & JERNIGAN, L.L.P.**

LAWYERS

| OFFICES | | MAILING ADDRESS |
|---|---|---|
| Wells Fargo Capitol Center | | P.O. Box 2611 |
| 150 Fayetteville Street, Suite 2300 | September 4, 2024 | Raleigh, North Carolina |
| Raleigh, North Carolina 27601 | | 27602-2611 |

September 4, 2024

ISAAC A. LINNARTZ                                    TELEPHONE:  (919) 821-1220
DIRECT DIAL:  (919) 821-6819                         FACSIMILE:  (919) 821-6800
E-Mail: ilinnartz@smithlaw.com

**<u>Via Email</u>**

Jacob I. Chefitz
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jchefitz@pbwt.com

> Re:    Johnson & Johnson Health Care Systems, Inc.'s ("JJHCS") Request Under Section
> 17 of the Amended and Restated Master Services Agreement Between JJHCS and
> Mercalis Inc. dated January 1, 2024 (the "MSA")

Dear Jacob:

I am writing to follow up on our August 28, 2024 discussion concerning Mercalis's response to JJHCS's request that it collect documents and communications for eight custodians, run fifteen different search strings against those documents, and provide hit counts for those searches.

You asked why Mercalis imposed the limitations described in my August 16, 2024 letter, rather than running the collecting and searches as originally requested in your July 12, 2024 letter. As an initial matter, there is nothing in the MSA that requires Mercalis to run searches or provide hit counts. While Mercalis elected to respond to JJHCS's request, it imposed reasonable limitations to (i) reduce the burden of collecting documents, which was substantial even with those limitations given the number of custodians (8) and years (7.5) at issue and (ii) limit the scope of searches that did not contain terms specific to the Mercalis-JJHCS relationship and thus were likely to sweep in a large number of documents unrelated to that relationship.

Please note that while Mercalis has voluntarily provided hit counts, it does not concede that JJHCS is necessarily entitled to audit, examine, or obtain the documents reflected in those hit counts and reserves its rights with respect to any future requests that JJHCS may make under the MSA or otherwise.

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL, & JERNIGAN, L.L.P.

Mr. Jacob I. Chefitz
September 4, 2024
Page 2

Sincerely,

Isaac A. Linnartz

# Exhibit 8

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

September 12, 2024

**Via E-mail**

Jacob I. Chefitz
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jchefitz@pbwt.com

**Re:** ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC*** **(Case No. 2:22-cv-02632-JKS-CLW)**

Dear Jacob,

We write in response to J&J's September 6, 2024 letter regarding SaveOn's requests for TrialCard documents within J&J's control.

*First,* thank you for agreeing to expand the requested point-of-collection limitation for TrialCard to use to collect J&J-related documents. The search term that J&J proposed appears to be missing some of the Janssen drugs at issue in this case. SaveOn requests that J&J revise the term to include them, as follows:

- "Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA OR Balversa OR Darzalex OR Edurant OR Erleada OR Imbruvica OR Intelence OR Opsumit OR Ponvory OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Symtuza OR Tracleer OR Uptravi OR Ventavis OR Zytiga OR CAPm OR CAPa

*Second,* thank you for agreeing to seek hit counts for SaveOn's proposed search terms for the four original TrialCard custodians as well as the eight additional TrialCard custodians that SaveOn has identified.

*Third,* we appreciate the corrected, de-duplicated hit counts indicating that all of SaveOn's requested search terms, as altered by TrialCard, would yield 16,722 unique documents for review, family inclusive. Please also provide hit counts for SaveOn's requested search terms without alterations.

Jacob I. Chefitz
September 12, 2024

We reserve all rights and are available to meet and confer. We request a response by September 19, 2024.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

# Exhibit 9



September 20, 2024

Jacob I. Chefitz
(212) 336-2474

**<u>By Email</u>**

Hannah R. Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,***
       **2:22-cv-02632 (JKS) (CLW)**

Dear Hannah:

On behalf of JJHCS, we write in response to SaveOnSP's September 12, 2024 letter regarding the additional TrialCard documents that SaveOnSP has requested from JJHCS.

We have asked TrialCard to expand its point of collection limitation to include the additional Janssen drug names requested in your letter, specifically:

"Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA OR Balversa OR Darzalex OR Edurant OR Erleada OR Imbruvica OR Intelence OR Opsumit OR Ponvory OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Symtuza OR Tracleer OR Uptravi OR Ventavis OR Zytiga OR CAPm OR CAPa

In your letter, you also ask that JJHCS "provide hit counts for SaveOn's requested search terms without alterations." We have asked that TrialCard provide such hit counts.

We reserve all rights and are available to meet and confer.

Very truly yours,

*/s/ Jacob I. Chefitz*

Jacob I. Chefitz

# Exhibit 10



www.pbwt.com

September 20, 2024

Jacob I. Chefitz
(212) 336-2474

**<u>By Email</u>**

Isaac A. Linnartz, Esq.
Smith Anderson
Wells Fargo Capitol Center
150 Fayettsville Street, Suite 2300
Raleigh, NC 27601

> Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,
> 2:22-cv-02632 (JKS) (CLW)***

Dear Isaac:

We write to follow up on our September 6, 2024 letter regarding the collection of documents and communications from Mercalis (formerly known as "TrialCard") that we previously requested.[1]

In our September 6, 2024 letter, we asked whether Mercalis would be willing, pursuant to Section 17 of the Master Servicing Agreement, to expand the search term that it has used to limit its collection as follows:

> "Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA OR Balversa OR Darzalex OR Erleada OR Imbruvica OR Opsumit OR Remicade OR Rybrevant OR Simponi OR Tracleer OR Uptravi OR Zytiga OR CAPm OR CAPa

SaveOnSP has recently requested that the above search term be expanded to include additional terms in red, which are the names of additional Janssen drugs at issue in this litigation:

---

[1] As with our previous letters on this subject, we are writing to you here in our capacity as counsel to JJHCS in the above-captioned matter.

---

Isaac A. Linnartz, Esq.
September 20, 2024
Page 2

"Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA OR Balversa OR Darzalex OR Edurant OR Erleada OR Imbruvica OR Intelence OR Opsumit OR Ponvory OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Symtuza OR Tracleer OR Uptravi OR Ventavis OR Zytiga OR CAPm OR CAPa

Please let us know whether Mercalis would be willing, pursuant to Section 17 of the Master Servicing Agreement, to use this revised search term to limit its collection of documents.

SaveOnSP has also requested hit counts for the search terms listed in our July 12, 2024 letter without alterations. Pursuant to Section 17 of the MSA and Judge Wolfson's May 28, 2024 Order, JJHCS asks that Mercalis provide such hit counts.

Finally, in our September 6, 2024 letter, we asked that Mercalis, pursuant to Section 17 of the MSA and Judge Wolfson's May 28, 2024 Order, run terms 8 through 15 listed in our July 12, 2024 letter over the files of the four "original TrialCard" custodians and that Mercalis provide hit counts for those searches, including the total number of unique documents hitting on those terms. Please let us know when Mercalis anticipates providing those hit counts.

Please let us know if you have any questions or would like to discuss further.

Very truly yours,

*/s/ Jacob I. Chefitz*

Jacob I. Chefitz

# Exhibit 11



www.pbwt.com

November 4, 2024

Jacob I. Chefitz
(212) 336-2474

**By Email**

Hannah R. Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,***
***2:22-cv-02632 (JKS) (CLW)***

Dear Hannah:

We write further to our October 23, 2024 letter regarding the additional TrialCard documents that SaveOnSP has requested from JJHCS.

Today, TrialCard responded to JJHCS's request for hit counts for the search terms that SaveOnSP has proposed. We attach TrialCard's response, including the hit counts that TrialCard provided, as Appendix A to this letter. Applying the point-of-collection limitation that SaveOnSP requested, *see* Sep. 20, 2024 Ltr. from J. Chefitz to H. Miles, TrialCard has reported that running SaveOnSP's requested search terms over its collection hits on 32,140 "unique search results" for the eight additional TrialCard custodians, plus another 3,936 unique search results for the four original TrialCard custodians. TrialCard has informed JJHCS that these unique search results are inclusive of full families,[1] and that there is no duplication across the 3,936 and 32,140 documents. The total number of unique search results, with families, is therefore 36,076.

These hit counts confirm that, as JJHCS has repeatedly stated, the search terms that SaveOnSP has proposed for these TrialCard custodians are too broad and would require the review of an unduly burdensome amount of documents. We therefore again request—as we have long requested—that SaveOnSP propose more narrowly tailored search terms for these TrialCard custodians.

---

[1] TrialCard has further informed JJHCS that, not counting families, the unique search hits are 18,159 and 1,044 for the eight additional custodians and four original custodians, respectively, totaling 19,203 unique documents.

Hannah R. Miles, Esq.
November 4, 2024
Page 2

JJHCS reserves all rights, and we are available to meet and confer.

Very truly yours,

*/s/ Jacob I. Chefitz*
Jacob I. Chefitz

# **APPENDIX A**

**SMITH, ANDERSON, BLOUNT,
DORSETT, MITCHELL & JERNIGAN, L.L.P.**

LAWYERS

<table>
<tr>
<td>

**OFFICES**
Wells Fargo Capitol Center
150 Fayetteville Street, Suite 2300
Raleigh, North Carolina 27601
_____

**ISAAC A. LINNARTZ**
DIRECT DIAL: (919) 821-6819
E-Mail: ilinnartz@smithlaw.com

</td>
<td align="center">

November 4, 2024

</td>
<td align="right">

**MAILING ADDRESS**
P.O. Box 2611
Raleigh, North Carolina
27602-2611
_____

TELEPHONE: (919) 821-1220
FACSIMILE: (919) 821-6800

</td>
</tr>
</table>

**Via Email**

Jacob I. Chefitz
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jchefitz@pbwt.com

      Re:    Johnson & Johnson Health Care Systems, Inc.'s ("JJHCS") Request Under Section
            17 of the Amended and Restated Master Services Agreement Between JJHCS and
            Mercalis Inc. dated January 1, 2024 (the "MSA")

Dear Jacob:

      I am writing in response to your August 22, 2024, September 6, 2024, and September 20, 2024 letters on behalf of JJHCS requesting that Mercalis Inc. (formerly known as TrialCard Incorporated) (i) expand the scope of its initial custodian collection search, which was previously described in its August 16, 2024 letter to you, to include the names of 17 additional Jannsen drugs and the terms "CAPm" and "CAPa" (raised in your September 6 and September 20 letters); (ii) provide hit counts for searches 8 through 15 requested in your July 12, 2024 letter after running those search terms over the original four TrialCard custodians (raised in your September 6 letter); and (iii) run the search terms listed in your July 12, 2024 letter without alterations (raised in your September 20 letter).

      As explained in our August 16, 2024 letter, the MSA does not contemplate or require running search terms or providing hit counts. That said, to assist JJHCS in assessing the breadth and burden of discovery sought in JJHCS's lawsuit against Save On SP, LLC, Mercalis had voluntarily collected additional documents from the four original custodians and eight additional custodians at issue, has run searches against that collection, and is providing hit counts for those searches as outlined below.

      JJHCS's requests ask Mercalis to collect documents, run searches, and provide hit counts across twelve custodians over a more than seven-and-a-half year period. Additionally, a number of the search strings you provided in your July 12, 2024 letter did not contain any terms limiting their scope to documents related to JJHCS's engagement with Mercalis. In light of the breadth of

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL, & JERNIGAN, L.L.P.

Mr. Jacob I. Chefitz
November 4, 2024
Page 2

the request, and to limit the collection to documents related to JJHCS's engagement with
Mercalis, we used the following updated initial search to collect documents from the custodians
for the period April 1, 2016 through November 7, 2023:

> "Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen
> OR CarePath OR "Care Path" OR STELARA* OR TREMFYA* OR Balversa OR
> Darzalex OR Edurant OR Erleada OR Imbruvica OR Intelence OR Opsumit OR Ponvory
> OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Symtuza OR Tracleer OR
> Uptravi OR Ventavis OR Zytiga OR CAPm OR CAPa

This initial search includes the 17 additional Jannsen drugs that you requested we add and the
terms "CAPm" and "CAPa."

We then ran the search terms provided in your July 12, 2024 letter with a few minor
corrections to address apparent syntax errors. The one exception was Search No. 10, which we did
not run because it is a subset of, and entirely subsumed within, Search No. 1. I have enclosed two
spreadsheets that contains the specific search strings we used and the hit counts they returned (both
with and without families). The first spreadsheet is for the four original custodians (Holly
Weischedel, Sini Abraham, Paul Esterline, and Rick Fry), and the hit counts do not include items
that were previously produced by Mercalis in connection with the JJHCS/SaveOn litigation. The
second spreadsheet is for the eight additional custodians (Jason Zemcik, Rick Ford, April Harrison,
Tommy Gooch, Lynsi Newton, Amber Maldonado, Cosimo Cambi, and Tony McInnis). If you
have any questions about the search methodology or hit counts, please let me know.

Please note that while Mercalis is voluntarily providing these hit counts, it does not concede
that JJHCS is necessarily entitled to inspect or obtain the documents reflected in those hit counts
and reserves its rights with respect to any future requests that JJHCS may make under the MSA or
otherwise.

Sincerely,

Isaac A. Linnartz

Enclosures

Searches, Digital Custodians

Page 10 of 55.4

| Search # | Search Terms | Hits (with families) | Hits (no families) |
|---|---|---|---|
| 8 | (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*) | 882 | 289 |
| 9 | ("essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*) w/50 (CAPa OR CAPm OR "adjustment program" OR accumulat* OR maximiz*) | 73 | 28 |
| 11 | "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") | 111 | 34 |
| 12 | "other offer" w/5 (accumulat* OR maximiz*) | 0 | 0 |
| 13 | ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) | 558 | 222 |
| 14 | (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) | 333 | 82 |
| 15 | (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate) | 2802 | 602 |
| | | | |
| Custodians: Holly Weischedel, Sini Abraham, Paul Esterline, and Rick Fry | | | |
| Unique Search Results: 3,936 | | | |

Searches Run on Additional Custodians

| Search # | Search Terms | Hits (with families) | Hits (no families) |
|---|---|---|---|
| 1 | SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP | 9377 | 3098 |
| 2 | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | 9104 | 2846 |
| 3 | (CarePath OR "Care Path") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | 8430 | 2344 |
| 4 | (Accumulator OR Maximizer) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | 4149 | 1500 |
| 5 | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (CarePath w/5 "term* and condition*") | 1606 | 616 |
| 6 | (Accumulator OR Maximizer OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP) w/10 (Care Path AND (Stelara OR Tremfya) AND (limit OR eliminat*)) | 0 | 0 |
| 7 | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (enroll w/5 CarePath) AND contact* | 2487 | 974 |
| 8 | (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*) | 13529 | 10215 |
| 9 | ("essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*) w/50 (CAPa OR CAPm OR "adjustment program" OR accumulat* OR maximiz*) | 364 | 168 |
| 11 | "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") | 405 | 136 |
| 12 | "other offer" w/5 (accumulat* OR maximiz*) | 0 | 0 |
| 13 | ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) | 1871 | 720 |
| 14 | (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) | 1967 | 854 |
| 15 | (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate) | 13434 | 5297 |
| | | | |
| Custodians: Jason Zemcik, Rick Ford, April Harrison, Tommy Gooch, Lynsi Newton, Amber Maldonado, Cosimo Cambi, and Tony McInnis | | | |
| Unique Search Results: 32,140 | | | |

# Robinson+Cole

E. Evans Wohlforth, Jr.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

November 12, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
       **No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Save On SP, LLC ("SaveOn"), we write in reply to Johnson & Johnson Health

Care Systems, Inc.'s ("JJHCS," and, with its affiliates, "J&J") opposition to SaveOn's motion to

compel J&J to produce documents regarding its CAP program and benefits investigations ("BIs")

from its vendor TrialCard Inc. ("TrialCard").

It has been five and a half months since Your Honor ruled that J&J has legal control over

TrialCard's documents relating to its work for J&J, and that documents relating to J&J's CAP

program and BIs into whether patients were on SaveOn-advised plans were relevant. May 28, 2024

Order. Yet J&J has produced nothing new from TrialCard beyond a limited "refresh" production.

J&J did not even provide accurate and complete hit counts for the search terms that SaveOn pro-

posed in May until November 4, 2024, the day that J&J filed its opposition to SaveOn's motion.

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                                    Page 2

J&J calls this "steady progress." Opp. at 2. It is not. In July 2024, Your Honor stated that J&J should "move things along" and figure out its production of TrialCard documents "sooner, rather than later." July 15, 2024 Tr. at 135:21-24. Nearly three months later, and five and a half months after SaveOn proposed search terms, Ex. 14, J&J still has not produced the requested CAP- and BI-related documents and still refuses to provide a date certain by which it will do so—even as it demands that Your Honor cut off SaveOn's ability to raise discovery disputes and to serve follow-up discovery requests, *see* Oct. 11, 2024 Tr. at 105:23-106:5.

This is not a dispute, as J&J would have it, about "whether certain steps should take two weeks or longer," Opp. at 12; it is about whether J&J can continue to delay complying with Your Honor's Order of well over five months ago. J&J's excuses for its failure to do so are meritless.

*First*, while J&J blames SaveOn for "blow[ing] up" TrialCard's production of documents via a third-party subpoena, Opp. at 4-5, SaveOn sought the documents directly from J&J because TrialCard—then represented by J&J's counsel—withheld documents responsive to SaveOn's subpoenas for over a year, while insisting that any motion to compel be heard in North Carolina, Ex. 12. If J&J had facilitated a reasonable production of documents from TrialCard in the first place (as it promised, Opp. at 4), SaveOn's subsequent motions might not have been necessary.[1]

---

[1] J&J's positions about what SaveOn should have done differently are themselves inconsistent. Even while it argues that SaveOn should be seeking these documents via subpoena, J&J faults SaveOn for subpoenaing TrialCard instead of relying on J&J's promise to "voluntarily facilitate the production of relevant documents from its vendor TrialCard." Opp. at 4. But SaveOn did so because J&J refused to state that it had possession, custody, or control over TrialCard's relevant documents, Ex. 4 at 3. And while J&J asserts that "[m]any documents were produced" pursuant to this subpoena and that SaveOn served a second subpoena "seeking yet more documents," Opp. at 4-5, SaveOn served a second subpoena because TrialCard refused to produce custodial documents from the "refresh" time period of July 1, 2022 to November 7, 2023 on the basis that they fell outside the first subpoena—and then refused to produce those documents in response to the second subpoena as well. *See* Ex. 20 (Mar. 22, 2024 Ltr.).

Hon. Freda L. Wolfson                                                                              Page 3

*Second*, while J&J says that its production has been slowed because it is using the "process that SaveOnSP insisted the parties use," Opp. at 10, SaveOn decidedly did not propose applying collection terms, having TrialCard's counsel review the documents, and then having J&J's counsel review the same documents—J&J did. Opp. at 10-11. J&J's chronology of its efforts shows just how slowly it has acted; for example, taking three weeks to respond to SaveOn's proposed search terms and then waiting another month for TrialCard to respond. *See* Opp. at 6-8.

*Third*, while J&J asserts that SaveOn delayed negotiations because it "has still not responded to JJHCS's objection that the hit counts that TrialCard provided in August 2024 are too high," Opp. at 10-11, those hit counts were incomplete and inaccurate. *See* Oct. 7, 2024 Ltr. at 3-4 & n.1-2. Among other things, J&J did not de-duplicate the hit counts and so falsely reported that "SaveOnSP's requested terms hit on more than 41,000 documents, including families." J&J Ex. 5 at 2 (Aug. 22, 2024 Lr. From J. Chefitz to H. Miles). J&J later had to admit that the terms actually "hit on 16,722 unique documents, family inclusive." J&J Ex. 7 at 3 (Sept. 6, 2024 Ltr. from J. Chefitz to H. Miles). Even after J&J belatedly addressed this issue, the hit counts that it provided were still incomplete—they resulted from running search terms on a limited group of documents that TrialCard had gathered using a patently inappropriate "collection term" that excluded the names of most Janssen drugs at issue and references to the CAPa and CAPm programs that Trial-Card administered for J&J. *See* Oct. 7, 2024 Ltr. at 3 n.1. J&J did not provide accurate and complete hit counts until November 4, 2024, J&J Ex. 11, five and a half months after SaveOn first asked for them, Ex. 14—hardly "light speed," Opp. at 12. While J&J accuses SaveOn of "intransigence in negotiating search terms and custodians," Opp. at 11, three days after receiving accurate

Hon. Freda L. Wolfson                                                          Page 4

hit counts, SaveOn sent a counter-proposal, dropping five requested search terms and narrowing

five others. Ex. 21 (Nov. 7, 2024 Ltr. from H. Miles to J. Chefitz).[2]

 *Finally*, while J&J insists that it "has done everything reasonable in its power to comply

with Your Honor's Order and ensure production from TrialCard," Opp. at 2, it fails to identify a

single action it has taken beyond asking TrialCard to produce the documents. J&J asserts that it is

not required to do more: "JJHCS can only *ask* TrialCard to provide it with documents relating to

its work for JJHCS, pursuant to the MSA, and JJHCS has done so." Oct. 10, 2024 Ltr. at 6 (original

emphasis). Because J&J has legal control over these documents, it cannot stand on the fact that it

has asked TrialCard for them when there are "myriad other ways" that it "could have attempted to

obtain the … documents." *Chevron Corp. v. Donzinger*, 296 F.R.D. 168, 217-19 (S.D.N.Y. 2013),

*aff'd* 833 F.3d 74, 146-49 (2d Cir. 2016). J&J dismisses such authorities as involving non-cooper-

ative parties and third parties, Opp. at 12-13, but that is exactly what J&J and TrialCard are here,

having withheld documents in response to a subpoena for over a year and then in response to party

discovery requests for well over another five months.

---

[2] SaveOn has compromised not only on search terms but also on document collection. While
SaveOn originally requested that J&J run its proposed search terms over all of the proposed Trial-
Card custodians' documents, *see* J&J Ex. 6 at 1, SaveOn then agreed to J&J's request that Trial-
Card collect documents using a "point of collection limiter" to identify documents about Trial-
Card's work for J&J, not other clients, as J&J admits, Opp. at 2-3. TrialCard has gathered these
documents and run hit counts over them, *see, e.g.*, J&J Ex. 11, but has not provided them to J&J,
Opp. at 3, and J&J has apparently not asked it to do so, even though they are inarguably within
J&J's control because they relate to TrialCard's work for J&J. *See* May 28, 2024 Order at 7-8.

For reference, that collection term is: Johnson & Johnson" OR "Johnson and Johnson" OR J&J
OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA*
OR Balversa OR Darzalex OR Edurant OR Erleada OR Imbruvica OR Intelence OR Opsumit OR
Ponvory OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Symtuza OR Tracleer OR
Uptravi OR Ventavis OR Zytiga OR CAPm OR CAPa.

Hon. Freda L. Wolfson                                                          Page 5

     Given these extensive and continuing delays, Your Honor should set a firm deadline for

production. SaveOn asks Your Honor to order J&J to produce the requested CAP-related docu-

ments within two weeks of Your Honor's resolution of this motion and complete any negotiations

with SaveOn about custodians and search terms for that production within one week of the reso-

lution of this motion.

     SaveOn appreciates Your Honor's attention to this matter.

                    Respectfully submitted,

                    /s/ *E. Evans Wohlforth, Jr.*
                    E. Evans Wohlforth, Jr.
                    Sabrina M. Galli
                    Robinson & Cole LLP
                    666 Third Avenue, 20th floor
                    New York, NY 10017-4132
                    Main (212) 451-2900
                    Fax (212) 451-2999
                    ewohlforth@rc.com
                    sgalli@rc.com

                    Philippe Z. Selendy (admitted *pro hac vice*)
                    Andrew R. Dunlap (admitted *pro hac vice*)
                    Meredith Nelson (admitted *pro hac vice*)
                    Elizabeth H. Snow (admitted *pro hac vice*)
                    SELENDY GAY PLLC
                    1290 Avenue of the Americas
                    New York, NY 10104
                    (212) 390-9000

                    pselendy@selendygay.com
                    adunlap@selendygay.com
                    mnelson@selendygay.com
                    esnow@selendygay.com

                    *Attorneys for Defendant Save On SP, LLC*

# Exhibit 20



March 22, 2024

Sara A. Arrow
(212) 336-2031

**<u>By Email</u>**

Hannah Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

>     Re:    **December 1, 2023 Subpoena to TrialCard**
>            *<u>Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC</u>,*
>            <u>**Case No. 2:22-cv-02632 (JKS) (CLW)**</u>

Dear Hannah:

On behalf of TrialCard, we write in response to SaveOnSP's March 8, 2024 letter regarding the subpoena dated December 1, 2023 (the "Second Subpoena").

### I.    Time Period

SaveOnSP asserts that TrialCard has provided "no reasoned basis" to justify a July 1, 2022 cutoff date.  Not so:  we have explained our position on this issue repeatedly in written correspondence and during meet and confers.  *See, e.g.*, Mar. 1, 2024 Ltr. from S. Arrow to H. Miles; Jan. 12, 2024 Ltr. from S. Arrow to H. Miles; *see also* Dec. 22, 2023 Ltr. from S. Arrow to H. Miles.  Specifically, as it relates to the February 17, 2023 subpoena (the "First Subpoena"), SaveOnSP ***agreed*** to July 1, 2022 as the cut-off date.  *See* May 31, 2023 Ltr. from E. Holland to G. Carotenuto at 1 (referring to April 1, 2016 to July 1, 2022 as the "Relevant Time Period"); July 26, 2023 Ltr. from E. Holland to K. Brisson at 7 n.1 (proposing search terms for the "Relevant Time Period" defined as April 1, 2016 to July 1, 2022).

Belatedly disappointed with the agreement it struck, SaveOnSP then sought to circumvent this agreed-upon time period by propounding the Second Subpoena—containing several requests that overlapped with those in the First Subpoena and imposing a new "refresh" time period to partially match the "refresh" time period to which the parties are bound.  But as SaveOnSP acknowledges, TrialCard, as a third party, is not bound by Judge Waldor's November 7, 2023 Order extending party discovery.  *See* Jan. 11, 2024 Email from H. Miles to S. Arrow. Nor has SaveOnSP explained why TrialCard, as a third party, should be subject to such expansive discovery far beyond the initial agreed-upon cut-off date.  SaveOnSP has already refused to say whether its own co-conspirators and business partners—Express Scripts, Inc. and Accredo Health

Hannah Miles, Esq.
March 22, 2024
Page 2

Group—should be required to update its third-party productions through November 7, 2023.  *See id.*  And perhaps most egregious, SaveOnSP has provided no basis whatsoever for why TrialCard must produce documents even ***beyond*** the cutoff date for party discovery (November 7, 2023), as SaveOnSP now insists.

Despite these objections, TrialCard has nevertheless agreed to produce multiple categories of documents through November 7, 2023 in the interest of compromise.  *See, e.g.*, Mar. 1, 2024 Ltr. from S. Arrow to H. Miles at 1–2.  For example, TrialCard has agreed to produce the results of thousands of benefits investigations to comply with the First and Second Subpoenas.  *See* Mar. 12, 2024 Ltr. from S. Arrow to H. Miles at 1 n.1; Oct. 20, 2023 Ltr. from S. Arrow to E. Holland at 1.  Further, as discussed in greater detail below, TrialCard has agreed to refresh its production of CarePath enrollment data[1] and case and task notes for Stelara and Tremfya patients through November 7, 2023.  These productions, which are voluminous, represent a good-faith effort to comply with SaveOnSP's subpoenas in a manner proportional to its role as a third party.

Finally, if there are specific, targeted categories of documents that you seek through November 7, 2023, please so advise so that we can evaluate that request.  If you present a reasonable proposal, we are certainly willing to consider it—but we cannot agree to a wholesale expansion of the discovery cutoff without any justification or reasonable limitation.

## II.    TrialCard's Ability to Identify Patients

**Request Nos. 1 and 2** seek documents sufficient to show the identities of all drug makers for which TrialCard performed investigations, including benefits investigations, that identify or attempt to identify if a patient is on a health plan affiliated with a copay maximizer, accumulator, or SaveOnSP.  As we have explained, any actions that TrialCard may or may not have taken for clients other than JJHCS are irrelevant.  SaveOnSP has not explained how TrialCard's work performed for its non-JJHCS clients has any relevance whatsoever to JJHCS or CarePath.  Please so do and we will consider your position.

**Request No. 3** seeks documents sufficient to show the methods by which TrialCard identifies or attempts to identify whether patients are members of health plans affiliated with copay accumulators, maximizers, or SaveOnSP.  Despite TrialCard's production of the results of thousands of benefits investigations performed for patients taking Stelara or Tremfya, *see* TRIALCARD_00008931, SaveOnSP insists that TrialCard has not satisfied Request No. 3.  We disagree.  Based on our reasonable investigation to date, the benefits investigations process is the only systematic method used by TrialCard on behalf of JJHCS to identify whether patients are

---

[1] Specifically, TrialCard agrees to refresh its prior production of CarePath enrollment data for the time period July 1, 2022 through November 7, 2023.  *See* TRIALCARD_00000001; TRIALCARD_00000004;        TRIALCARD_00000005;        TRIALCARD_00000006; TRIALCARD_00000007; TRIALCARD_00000008; and TRIALCARD_00000009.

Hannah Miles, Esq.
March 22, 2024
Page 3

affiliated with a copay accumulator, maximizer, or SaveOnSP. TrialCard's production of the results of those benefits investigation therefore satisfies this request.

SaveOnSP nevertheless asserts that it is entitled to documents concerning some "methods" that TrialCard hypothetically employed to identify SaveOnSP-affiliated patients because SaveOnSP has asserted a "failure to mitigate defense."[2] This argument rests on several unsubstantiated assumptions, including that (1) TrialCard developed other "methods" of identifying SaveOnSP patients; (2) such methods would be applicable to JJHCS and the CarePath program; (3) it disclosed those methods to JJHCS; and (4) having learned of those methods, JJHCS declined to implement them. Each of these assumptions rests on pure speculation. TrialCard, therefore, declines to go on a fishing expedition to satisfy SaveOnSP's curiosity into its business entirely unrelated to JJHCS or CarePath.

**Request No. 4** seeks documents and communications "between TrialCard and JJHCS" regarding the identification or attempted identification of patients who are members of plans affiliated with copay accumulators, maximizers, or SaveOnSP. As we explained during the March 7 meet and confer, such documents—which necessarily would have been provided to JJHCS—can be obtained through party discovery.

SaveOnSP nevertheless insisted during the March 7 meet and confer that this request encompasses internal documents that "reflect" communications between TrialCard and JJHCS, including notes that TrialCard personnel may have taken during a phone call or meeting. As we discussed during the meet and confer, however, the plain language of this Request is not so expansive: it seeks only Communications—i.e., "the transmittal of information"—*between* JJHCS and TrialCard. It does not request purely internal documents reflecting the contents of those transmittals. *See* Second Subpoena at 4.

### III.    TrialCard's Responses to Identifying Patients

**Request No. 6** seeks documents sufficient to show the methods by which TrialCard responded to benefits investigations that revealed or suggested that a patient was a member of a health plan that was affiliated with a copay accumulator, maximizer, or SaveOnSP. As we have explained in previous correspondence and during the March 7 meet and confer, TrialCard has produced multiple letter templates that it sent to SaveOnSP-patients in connection with the benefits investigation process. TrialCard also produced a catalogue of these letters. *See* TRIALCARD_0008931 ("Tasks"). Based on our reasonable investigation to date, we are unaware

---

[2] We note that the caselaw you cite in support of this argument appears inapposite. *See Prusky v. Reliastar Life Ins.*, 532 F.3d 252, 258–59 (3d Cir. 2008) (discussing the failure to mitigate defense in the context of a breach of contract claim asserted under Pennsylvania law); *Grubbs v. Knoll*, 376 N.J. Super. 420, 437 (N.J. App. 2005) (discussing whether a jury instruction on the failure to mitigate defense is appropriate). Neither case stands for the broad proposition that a third party is obligated to produce any document that may have some hypothetical bearing on whether the plaintiff could have mitigated its damages.

Hannah Miles, Esq.
March 22, 2024
Page 4

of any other systematic "method" that TrialCard undertook to respond to the results of benefits investigations identifying patients as SaveOnSP-affiliated; to the extent JJHCS undertook such methods, JJHCS is the proper source for such discovery.  We trust that this resolves any dispute with respect to Request No. 6.

Request No. 8 seeks documents and communications regarding the creation or attempted creation of a response or "solution" to copay maximizers, accumulators, or SaveOnSP.  The search term that you have proposed is untethered to the claims at issue in this litigation:  it seeks documents related to any maximizer or accumulator irrespective of whether such documents concern SaveOnSP.  In the event you wish to pursue this request, please provide an appropriately narrowed term that addresses the relevant issues in this litigation.

IV.    Communications with Stelara and Tremfya Patients

Request No. 5 seeks "[a]ll Communications with patients receiving Stelara and Tremfya, including without limitation recordings of calls."  You have represented that if TrialCard "refresh[es] the call and task notes, subject to the same procedures in the May 12, 2023 letter, and agree that SaveOn reserves it rights to request call recordings and transcripts in the future, that would" resolve any dispute with respect to Request No. 5.

TrialCard agrees to refresh its production of case and task notes through November 7, 2023 using the same collection methodology we used during the initial collection of case and task notes, which involved filtering the records for the Janssen Drugs at issue in this litigation and further searching them for responsive material using the search terms listed the May 12, 2023 letter.  *See* May 12, 2023 Ltr. from G. Carotenuto to A. Dunlap at 2.  Additionally, as we did with the initial production of case and task notes, we invite SaveOnSP to use these records to identify a reasonable number of calls for which you would like TrialCard to attempt to locate and produce the associated audio recording and/or transcript, where available.  *See id.*

V.    Communications Between TrialCard and SaveOnSP

Request No. 7 seeks all communications between TrialCard and SaveOnSP.  As we have explained, SaveOnSP can search its own records for communications responsive to this request, including call recordings.  *See* TrialCard's Responses and Objections to RFP No. 5 ("TrialCard further objects to the extent this Request seeks the production of documents and communications that are available from parties to the Action, in particular from SaveOnSP."); *see also* Mar. 1, 2024 Ltr. from S. Arrow to H. Miles at 4.

In your March 8 letter, you clarified why you believe SaveOnSP would not possess the documents it seeks with this request.  Specifically, you confirmed that certain "outbound calls

Hannah Miles, Esq.
March 22, 2024
Page 5

may not have been recorded by SaveOn."[3]  Please explain, in as much detail as possible, which types of calls are recorded and which are not.  This will allow TrialCard to evaluate whether there are certain recordings that only TrialCard maintains that are not in SaveOnSP's possession.  To the extent you seek production of such recordings, please also provide identifying information that would allow TrialCard to identify the relevant calls—specifically, all names and phone numbers used by SaveOnSP employees to communicate with TrialCard.  Absent such information, TrialCard lacks identifying information to isolate responsive recordings without undertaking the enormous burden of assessing every incoming call that it received.

You also ask a series of questions regarding the 16 call recordings that TrialCard produced on January 12, 2024.  We confirm that, at JJHCS's request, TrialCard agreed to produce these 16 call recordings.  Please direct any further questions regarding these call recordings to JJHCS.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

---

[3] Based on our meet and confer and SaveOnSP's March 8 letter, we understand that SaveOnSP has narrowed Request No. 7 to seek only this subset of call recordings—i.e., those that SaveOnSP did not record and thus does not have in its possession.  Please promptly clarify if this understanding is incorrect.

# Exhibit 21

1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

October 7, 2024

**<u>Via E-mail</u>**

Jacob I. Chefitz
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jchefitz@pbwt.com

**Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,***
***LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Jacob,

We write in response to your November 4, 2024 Letter regarding J&J's pro-
duction of documents from TrialCard.

Thank you for providing the requested hit counts for SaveOn's search terms,
proposed May 24, 2024. Please see the attached appendix for SaveOn's revised
proposed search terms. If J&J continues to object on the basis of burden to any
particular search term, please provide revised hit counts, broken down by term
within the string, and by custodian. Please also provide the total number of docu-
ments that J&J would be required to review, de-duplicated, for the revised search
terms.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

## Appendix 1

- **Collection Term**: "Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA* OR Balversa OR Darzalex OR Edurant OR Erleada OR Imbruvica OR Intelence OR Opsumit OR Ponvory OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Symtuza OR Tracleer OR Uptravi OR Ventavis OR Zytiga OR CAPm OR CAPa

- **Custodians**:
  - All terms: Jason Zemcik, Rick Ford, April Harrison, Tommy Gooch, Lynsi Newton, Amber Maldonado, Cosimo Cambi, and Tony McInnis
  - Terms 8-15 only: Holly Weischedel, Sini Abraham, Paul Esterline, and Rick Fry

| Search # | Original Search Term | Proposed Revised Search Term |
|---|---|---|
| 1 | SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP | SaveOn proposes no alterations to this search term. |
| 2 | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | SaveOn proposes to drop this search term. |
| 3 | (CarePath OR "Care Path") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | SaveOn proposes to drop this search term. |
| 4 | (Accumulator OR Maximizer) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | SaveOn proposes to drop this search term. |
| 5 | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (CarePath w/5 "term* and condition*") | SaveOn proposes no alterations to this search term. |
| 6 | (Accumulator OR Maximizer OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP) w/10 (Care Path AND (Stelara OR Tremfya) AND (limit OR eliminat*)) | SaveOn proposes to drop this search term. |
| 7 | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (enroll w/5 CarePath) AND contact* | SaveOn proposes no alterations to this search term. |
| 8 | (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*) | (CAPa OR CAPm OR "adjustment program") **w/50** (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*) |
| 9 | ("essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*) w/50 (CAPa OR CAPm OR "adjustment program" OR accumulat* OR maximiz*) | SaveOn proposes no alterations to this search term. |
| 10 | "Save On" (*case sensitive*) | SaveOn proposes to drop this search term. |
| 11 | "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") | SaveOn proposes no alterations to this search term. |
| 12 | "other offer" w/5 (accumulat* OR maximiz*) | "other offer" **w/25** (accumulat* OR maximiz*) |
| 13 | ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) | ("Express Scripts" OR ESI OR ExpressScripts) **w/25** (accumulat* OR maximiz*) |
| 14 | (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) | (Accredo OR Acredo) **w/25** (accumulat* OR maximiz*) |
| 15 | (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate) | (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") **w/15** (6000 OR 6,000 OR limit OR eliminate) |