UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., | : | Civil Action No. 22-2632 (JKS)(CLW) |
| | : | **CONFIDENTIAL –** |
| Plaintiff, | | **FILED UNDER SEAL** |
| | : | |
| v. | | Hon. Jamel K. Semper, U.S.D.J. |
| | : | Hon. Cathy L. Waldor, U.S.M.J. |
| SAVE ON SP, LLC, | : | Oral Argument Requested |
| EXPRESS SCRIPTS, INC., and | | |
| ACCREDO HEALTH GROUP, INC. | : | (Electronically Filed Document) |
| Defendants. | | |

---

**PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR LEAVE TO SUPPLEMENT THE AMENDED COMPLAINT**

---

PATTERSON BELKNAP WEBB
   & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000
aamangi@pbwt.com
hsandick@pbwt.com
globiondo@pbwt.com

SILLS CUMMIS & GROSS P.C.
Jeffrey J. Greenbaum
Katherine M. Lieb
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000
jgreenbaum@sillscummis.com
klieb@sillscummis.com

*Attorneys for Plaintiff
Johnson & Johnson Health Care Systems Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ...................................................................................3

    I.    Defendants Tortiously Interfere with the "May Not Use" Provision ................................................................................4

    II.    Defendants Tortiously Interfere with the "Out-of-Pocket Cost" Provision ..........................................................5

    III.    Defendants Tortiously Interfere with the "No SaveOnSP" Provisions ....................................................................7

ARGUMENT .....................................................................................................11

    I.    Rule 15's "Liberal Standard" Applies to JJHCS's Motion ................11

    II.    JJHCS's Motion Meets Rule 15(a)'s "Liberal Standard"....................14

        A.    The Supplemental Allegations Are Connected to the Original Pleadings ...............................................15

        B.    Defendants Cannot Demonstrate Undue Prejudice ................16

        C.    Defendants Cannot Demonstrate Undue Delay, Bad Faith, or Dilatory Motive ..........................................18

        D.    Defendants Cannot Demonstrate Futility ................................20

        E.    JJHCS's Supplemental Complaint Promotes Judicial Economy .................................................................21

CONCLUSION ..................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*,
  2020 WL 5775174 (C.D. Cal. July 8, 2020)......................................................13

*Altana Pharma AG v. Teva Pharms. USA, Inc.*,
  2007 WL 9724442 (D.N.J. Mar. 29, 2007) .....................................................19

*Beckett v. Inc. Vill. of Freeport*,
  2014 WL 1330557 (E.D.N.Y. Mar. 31, 2014)..................................................13

*Blizzard Ent. Inc. v. Ceiling Fan Software LLC*,
  28 F. Supp. 3d 1006 (C.D. Cal. Sept. 23, 2013).................................................10

*Brennan v. Brendell Mfg. Co.*,
  1974 WL 3158 (10th Cir. Nov. 25, 1974) ..........................................................10

*Cobra Enters., LLC v. All Phase Servs., Inc.*,
  2022 WL 214542 (D.N.J. Jan. 24, 2022)...........................................................19

*Conrad v. Lopez De Lasalle*,
  681 F. Supp. 3d 371 (D.N.J. July 12, 2023) .................................................12, 14

*Deen-Mitchell v. Lappin*,
  2012 WL 74900 (M.D. Pa. Jan. 10, 2012).........................................................11

*Desio v. State Farm Mut. Auto. Ins. Co.*,
  339 F.R.D. 632 (D. Nev. Nov. 16, 2021) ..........................................................13

*Eisai Co. v. Teva Pharms. USA, Inc.*,
  247 F.R.D. 445 (D.N.J. Dec. 6, 2007) ...............................................................18

*Garrett v. Richardson*,
  2019 WL 2205751 (D.S.C. May 22, 2019) ........................................................13

*Garrett v. Wexford Health*,
  938 F.3d 69 (3d Cir. 2019) ..........................................................................11, 12

ii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Glenside W. Corp. v. Exxon Co., U.S.A.*,
 761 F. Supp. 1118 (D.N.J. Apr. 8, 1991)...........................................................20

*Huber Engineered Woods LLC v. La.-Pac. Corp.*,
 2022 WL 18707841 (D. Del. Nov. 17, 2022).....................................................12

*Huertas v. City of Camden*,
 2003 WL 27386400 (D.N.J. Dec. 22, 2003).......................................................16

*Martinez v. UPMC Susquehanna*,
 986 F.3d 261 (3d Cir. 2021) ............................................................................9, 16

*Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*,
 318 F.R.D. 28 (S.D.N.Y. Nov. 30, 2016)...........................................................13

*Palmieri v. Cnty. of Ocean*,
 2008 WL 11510568 (D.N.J. Dec. 3, 2008)...................................................12, 14

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*,
 793 F.3d 1177 (10th Cir. 2015) ..........................................................................13

*Shire LLC v. Amneal Pharms., LLC*,
 2012 WL 12909909 (D.N.J. Dec. 28, 2012)......................................................19

*Singh v. Twp. of Weehawken*,
 2023 WL 2523640 (D.N.J. Mar. 15, 2023), *aff'd*, 2023 WL 3119792 (D.N.J. Apr. 27, 2023) ...........................................................................14

*Smith v. Honeywell Int'l, Inc.*,
 2014 WL 301031 (D.N.J. Jan. 27, 2014)......................................................16, 17

**Statutes**

N.Y. G.B.L. § 349.................................................................................................15

**Other Authorities**

Federal Rule of Civil Procedure 8 ....................................................................9, 16

Federal Rule of Civil Procedure 12 ......................................................................19

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Federal Rule of Civil Procedure 15 ..................................................................*passim*

Federal Rule of Civil Procedure 16 ..........................................................12, 13, 14

## PRELIMINARY STATEMENT

Plaintiff Johnson & Johnson Health Care Systems Inc. ("JJHCS") moves under Rule 15(d) to supplement its pleading. JJHCS seeks to add new allegations encompassed within just six paragraphs addressing recent factual developments.[1]

Rule 15(d) is titled "Supplemental Pleadings." It allows a plaintiff to "set[] out any transaction, occurrence, or event that happened ***after the date of the pleading***" (emphasis added). Motions to supplement are intended to ensure that a pleading is up to date, and are thus distinct from motions to amend, which serve a different purpose and are governed by Rules 15(a)-(c). Here, JJHCS files this motion to address in its pleading recent changes to the JJHCS terms and conditions governing patient admission to the CarePath program (the "New Terms"), as well as ongoing tortious interference by SaveOnSP, Express Scripts, and Accredo (together, the "Defendants") with the New Terms.

The New Terms expressly prohibit the use of SaveOnSP, by name, in conjunction with CarePath. JJHCS began implementing the New Terms for certain

---

[1] JJHCS recently filed an Amended Complaint, which *inter alia* adds defendants Express Scripts Inc. ("Express Scripts") and Accredo Health Group, Inc. ("Accredo"). This present motion, if granted, would thus authorize the filing of a third pleading by plaintiff—the Supplemented Amended Complaint ("SAC"). Attached as *Exhibit A* to the Notice of Motion is the Proposed SAC, and attached as *Exhibit B* is a redline showing the changes made to the Amended Complaint. All substantive proposed changes are in paragraphs 178 to 183 on pages 78 to 80 of that redline. *See* Ex. B.

drugs earlier this year and anticipates adding similar language across all of its copay assistance programs by early 2025.  The New Terms require patients to agree that "[i]f your insurance company or health plan partners with SaveOnSP, then except where prohibited by law, you will not be eligible for, and you agree not to use" CarePath.  The reason for the change is obvious.  Even though the prior CarePath terms already prohibited the use of SaveOnSP, Defendants flouted those terms.  JJHCS has thus updated its terms and conditions to call out SaveOnSP by name and further confirm what has always been true:  SaveOnSP members are not eligible for CarePath.  SaveOnSP knows all about the New Terms, but admits that Defendants are still running their scheme on Janssen drugs.  This confirms what JJHCS has long alleged:  Defendants "continue to act in concert to knowingly and wrongfully induce patients to breach the CarePath terms and conditions."  Am. Compl. ¶ 190.

Defendants' actions with regard to the New Terms are squarely within the scope of JJHCS's existing pleading, which alleges ongoing tortious conduct by Defendants with respect to the CarePath terms and conditions.  But SaveOnSP disagrees.  It has taken the position that the New Terms are somehow irrelevant to JJHCS's existing claims—even while serving and seeking discovery about those changes.  JJHCS cannot wait until the eve of trial to resolve this dispute about the scope of the case.  Accordingly, to moot SaveOnSP's one-sided relevance objection and clarify the scope of the case for all purposes, JJHCS moves to supplement its

2

complaint to include allegations regarding these 2024 developments.  Ensuring that an action is "up to date" in this manner is precisely what supplemental pleadings are for under Rule 15(d).  Supplementation also promotes judicial economy by allowing the Court to address the parties' dispute in one action, eliminating the need for separate, piecemeal lawsuits.  For those reasons, courts liberally grant parties leave to supplement the pleadings, and this Court should do the same.[2]

## STATEMENT OF FACTS

The terms and conditions of the CarePath program have undergone changes over the years, but this much has always been true:  they bar patients who are enrolled in the SaveOnSP program from using CarePath assistance.  Earlier versions of the terms prohibited the SaveOnSP program by reference to its characteristics; the New Terms now prohibit SaveOnSP by name.  As set forth below, Defendants have wrongfully induced patients to violate each set of conditions, causing hundreds of millions of dollars in damage to JJHCS.  Through this action, JJHCS seeks relief for Defendants' ongoing misconduct.  *See* Am. Compl. ¶¶ 180–81, 185, 191.

---

[2] JJHCS sent a version of the draft pleading to Defendants on October 3, 2024, asked for Defendants' position by October 4, 2024, and offered to confer with Defendants concerning the draft pleading.  In response, SaveOnSP requested additional time to provide its position.  JJHCS agreed and requested that Defendants provide their positions by October 7, 2024 at 2:00 PM.  As of this filing, Defendants still have not provided their position.

## I.    Defendants Tortiously Interfere with the "May Not Use" Provision

For the entire relevant period, the CarePath terms and conditions have prohibited a patient from using CarePath assistance with "any other coupon, discount, prescription savings card, free trial, or other offer." *Id.* ¶ 23.  That the SaveOnSP program is such an "offer" is evident not only from the plain meaning of the word but also from Defendants' own promotional efforts.  *See, e.g.*, *id.* ¶ 24 ("That's why your plan ***offers*** a program called SaveOnSP") (emphasis supplied).[3]

Defendants "are well aware of this prohibition on other offers because SaveOnSP systematically monitors drug manufacturers' patient copay assistance terms and conditions." *Id.* ¶ 25.  Defendants nevertheless continue to enroll CarePath patients in the SaveOnSP program, *id.* ¶ 180, and inflate those patients' copay obligations so that Defendants can access—and pocket—the extra patient assistance for themselves and their clients, *id.* ¶ 171.  Defendants tortiously interfere with patients' contracts with JJHCS by "causing those patients to breach their contract with JJHCS every time they use CarePath funds while enrolled in the SaveOnSP Program." *Id.* ¶ 185.

---

[3] Defendants also refer to the SaveOnSP Program as providing a "point of sale discount" to patients—a violation of the "May Not Use" provision's prohibition on other discounts. Am. Compl. ¶ 164.

4

## II.    Defendants Tortiously Interfere with the "Out-of-Pocket Cost" Provision

SaveOnSP has argued that it should not be held liable for tortious interference because, it insists, the "May Not Use" provision does not bar the SaveOnSP program. *See, e.g.*, Dkt. No. 31-1 (SaveOnSP Mem. of Law in Supp. of Mot. to Dismiss) at 27–29.  Yet even after JJHCS updated the CarePath terms and conditions to further confirm the prohibition on the SaveOnSP program, Defendants' misconduct continued.

Specifically, in December 2021, JJHCS released updated terms and conditions for two medications that are among the most heavily used in CarePath— STELARA® and TREMFYA®—stating that to be eligible for CarePath, patients "must pay an out-of-pocket cost for your medication."  *Id.* ¶ 179.  The rationale of these added terms is straightforward:  patients who are not being charged an out-of-pocket cost should have no need for cost support.  These December 2021 terms squarely apply to SaveOnSP, which advertises that patients "won't pay anything ($0) out-of-pocket" if they participate in the SaveOnSP program.  *Id.* ¶ 92; *see also id.* ¶ 90.  "To this date, however, SaveOnSP has not taken Janssen's drugs off its list, and continues to induce patients in the SaveOnSP Program to sign up for CarePath in violation of CarePath's terms and conditions."  *Id.* ¶ 180.

SaveOnSP takes pains to deceive manufacturers and patients alike about the fact that its program violates these terms.  For example, SaveOnSP edited its public

drug list to hide the $0 out-of-pocket aspect of the program, hoping to avoid enforcement of the condition that patients "must pay an out-of-pocket cost for your medication."  Specifically, SaveOnSP stopped telling patients "your final cost will be $0" and instead began stating "your final cost will be reduced."  *Compare* Mangi Decl., Ex. 1 (2022 SaveOnSP Drug List, *available at* https://hr.uky.edu/sites/default/files/Saveon%20Drug%20List%20July%202022_0. pdf), *with* Ex. 2 (2024 SaveOnSP Drug List, *available at* https://www.saveonsp.com/wp-content/uploads/2023/10/AllOther012024.pdf). This was not an actual change to how the SaveOnSP program worked; ██████████ ███████████████ , ████████████████████████████████████ ████████████████████████ ." *E.g.*, Mangi Decl., Ex. 3.  Instead, SaveOnSP just changed how it ***described*** its program, to avoid "████████████████████████ ██████████████ " like JJHCS, and to prevent them from "███████████████ ████████████████████████ ." *Id.*

Similarly, and to further "████████████ " of detection by manufacturers, SaveOnSP also █████████████████████████████████████████████████ █████████████████████████████ "[███████████████ ." Mangi Decl., Ex. 4.  And SaveOnSP likewise revised its patient-facing talking points to use phrases like █████████████████████████████████████████████████████ █████████████████████████████████████ ." Mangi Decl., Ex. 5.  Again,

SaveOnSP documents are unequivocal about the reason for all these cloak-and-dagger tactics:  they were a direct response "███████████████████████████████████████ ." *Id.*  Simply put, SaveOnSP has long been engaged in a series of semantic games to try and escape the inescapable:  manufacturer patient assistance program terms and conditions prohibit patients from using SaveOnSP.

## III.    Defendants Tortiously Interfere with the "No SaveOnSP" Provisions

Between April 2024 and October 2024—after JJHCS sought leave to file its Amended Complaint in March 2024—JJHCS further updated the CarePath terms and conditions for STELARA®, TREMFYA®, SIMPONI®, SIMPONI ARIA®, OPSUMIT®, TRACLEER®, UPTRAVI®, REMICADE®, RYBREVANT®, AKEEGA®, BALVERSA®, DARZALEX®, DARZALEX FASPRO®, and ERLEADA® to explicitly confirm that:

- "If your insurance company or health plan partners with SaveOnSP, then except where prohibited by law, you will not be eligible for, and you agree not to use, [CarePath]."

- "If your health plan removes [the Affected Drug] from its partnership with SaveOnSP or other non-essential health benefit maximizer, you may be eligible to be reinstated in [CarePath]."

- "Notwithstanding any other term of this program, patients who are members of health plans that partner with SaveOnSP, or who are subject to services administered by SaveOnSP, are not eligible for [CarePath]. If your health plan removes [the Affected Drug] from its partnership with SaveOnSP, you may be eligible for [CarePath]."

*See* Proposed SAC ¶ 182; Mangi Decl., Ex. 6.  These changes have been rolled out over time and the process remains ongoing.  For five of these drugs—AKEEGA®,

BALVERSA®, DARZALEX®, DARZALEX FASPRO®, and ERLEADA®—
these additional terms were publicly released on October 4, 2024. *See* Proposed
SAC ¶ 182. JJHCS anticipates adding similar language to all of its copay assistance
programs by early 2025. *Id.*

While the changes were still ongoing, in June 2024, JJHCS served an
interrogatory asking SaveOnSP to describe all actions it had taken relating to the
New Terms for STELARA®, TREMFYA®, and SIMPONI®—the drugs for which
the New Terms had been implemented by that date—including whether SaveOnSP
had removed or intended to remove those drugs from its program and related drug
lists. *See* Mangi Decl., Ex. 7. In response, ███████████████████████████
████████████████████████████████████████████████████████████████████
███████████████. *See* Mangi Decl., Ex. 6. Accordingly, a patient enrolled in the
SaveOnSP program who uses CarePath after the promulgation of the New Terms in
connection with one of these drugs will have violated the New Terms (as well as the
old terms). In this way, Defendants still "continue[] to induce patients in the
SaveOnSP Program to sign up for CarePath in violation of CarePath's terms and
conditions," just as JJHCS has long alleged. Am. Compl. ¶ 180.

But SaveOnSP did not stop there. Recognizing the impact of the New Terms
on this Action, SaveOnSP also attempted to concoct a defense foisting responsibility
for its misconduct onto patients. SaveOnSP stated in its Interrogatory response that



" *See* Mangi Decl., Ex. 6; Ex. 8 (

).  SaveOnSP no doubt intends to argue that it cannot be responsible for tortious interference when it has now told patients to tell Janssen that SaveOnSP is involved.  But this is too clever by half.  SaveOnSP knows that most patients are unlikely to take action based on these communications.

SaveOnSP itself has the responsibility to act.  It cannot now disclaim knowledge that the use of CarePath in conjunction with SaveOnSP is prohibited; nor can it rely on semantic excuses to justify to itself why that is not so.  In these circumstances, SaveOnSP can have no excuse for not removing JJHCS drugs from its program.  But it refuses to do so—thus confirming its intentions all along to plunder the CarePath program regardless of what its terms and conditions state.  Even worse, Defendants have created yet more confusion, stress, and burden for JJHCS's patients, many of whom are critically ill, by telling them

" and making them responsible for a problem that is entirely of Defendants' creation.  Mangi Decl., Ex. 9 (

).

*    *    *

This motion should not have been necessary, because Defendants' conduct with regard to the New Terms is encompassed within JJHCS's existing pleading. Under Rule 8, a complaint need only "give the defendant fair notice of what the…

9

claim is and the grounds upon which it rests." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).    And when the complaint clearly alleges continuing violations, post-complaint misconduct is within the scope of the case.  *See Brennan v. Brendell Mfg. Co.*, 1974 WL 3158, at *4 (10th Cir. Nov. 25, 1974); *see also Blizzard Ent. Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1011–12 & n.4 (C.D. Cal. Sept. 23, 2013).  Here, JJHCS's existing pleading puts Defendants on notice that SaveOnSP is prohibited by the CarePath terms and condition and clearly alleges continuing violations.  In these circumstances, JJHCS is not obligated to update its pleading to account for every new twist and turn in the CarePath terms and conditions and SaveOnSP's attempts to evade them—Defendants are on notice that their ongoing misconduct with respect to those terms and conditions is at issue.

*Blizzard*, also a tortious interference case, is particularly apt.  There, in granting plaintiff's motion for summary judgment, the court did not limit itself to the version of the contract in existence at the time the complaint was filed; rather, it considered "all versions," as well as "a number of other continuing actions" postdating the complaint showing ongoing misconduct by the defendants.  *Id.* at 1011 n.4, 1016.  Likewise here, JJHCS alleges an "ongoing" scheme by Defendants in which they "continue[] to induce patients in the SaveOnSP Program to sign up for

10

CarePath in violation of CarePath's terms and conditions."  Am. Compl. ¶ 180.
Defendants' latest misconduct is thus well within the scope of this litigation.

But SaveOnSP disagrees.  In both its Initial and Supplemental Responses and
Objections to JJHCS's Fourth Set of Interrogatories, SaveOnSP took the position
that the New Terms are categorically irrelevant to the parties' claims and defenses.
*See* Mangi Decl., Ex. 10; Ex. 6.  After SaveOnSP served document requests on
JJHCS related to the New Terms, it pivoted to arguing that the New Terms, while
not relevant to JJHCS's claims, are relevant to SaveOnSP's mitigation defense.
Mangi Decl., Ex. 11.  JJHCS tried to resolve this dispute without motion practice
and through further correspondence, but just days ago, SaveOnSP reiterated the same
position.  Mangi Decl., Ex. 12.  JJHCS informed Defendants immediately upon
receipt of that correspondence that it would be moving to supplement.  Given
SaveOnSP's position and in the interest of judicial efficiency, JJHCS moves to
supplement its pleadings to add allegations concerning Defendants' continued
misconduct with respect to the New Terms.

## ARGUMENT

### I.    Rule 15's "Liberal Standard" Applies to JJHCS's Motion

Under Rule 15(d) of the Federal Rules of Civil Procedure, "the court may, on
just terms, permit a party to serve a supplemental pleading setting out any
transaction, occurrence, or event that happened after the date of the pleading to be

11

supplemented."   In contrast to an amendment under Rule 15(a), "a supplemental pleading under Rule 15(d) presents more recent events."  *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019).  In other words, it "bring[s] an action 'up to date' by setting forth new facts that have occurred since the filing of the original complaint and that affect the controversy and the relief sought."  *Deen-Mitchell v. Lappin*, 2012 WL 74900, at *4 (M.D. Pa. Jan. 10, 2012).  "Rule 15(d) thus promotes a complete adjudication of the dispute between the parties."  *Garrett*, 938 F.3d at 82.

A motion to supplement "is subject to the same liberal standards applicable under 15(a), and leave to file a supplemental complaint should be freely permitted in the absence of undue delay, bad faith, dilatory tactics, undue prejudice to defendants, or futility, and when the supplemental facts are connected to the original pleading."  *Conrad v. Lopez De Lasalle*, 681 F. Supp. 3d 371, 378 (D.N.J. July 12, 2023) (cleaned up); *see also Huber Engineered Woods LLC v. La.-Pac. Corp.*, 2022 WL 18707841, at *13 (D. Del. Nov. 17, 2022) ("Leave to supplement a pleading under Rule 15(d) should be freely given unless there is a compelling reason not to do so.").

JJHCS anticipates that Defendants might argue it needs to also show "good cause" under Rule 16 based upon the Court's Amended Pretrial Scheduling Order.  That is not the case.  While that order imposed a March 14, 2024 deadline for "[a]ny motion to amend pleadings," there was no deadline for a motion to ***supplement*** the

pleadings. *See* Dkt. No. 177, ¶ 3. Because the scheduling order "did not set a deadline for motions to supplement the pleadings," JJHCS's present motion is timely and does not require a showing of good cause. *Palmieri v. Cnty. of Ocean*, 2008 WL 11510568, at *1 n.1 (D.N.J. Dec. 3, 2008).

This distinction—between deadlines for amendment on one hand, and supplementation on the other—is well recognized in this very context. *See, e.g.*, *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, 2020 WL 5775174, at *4 (C.D. Cal. July 8, 2020) (concluding that a scheduling order's amendment deadline did not apply to supplementation); *Garrett v. Richardson*, 2019 WL 2205751, at *2 (D.S.C. May 22, 2019) (same); *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 37 n.10 (S.D.N.Y. Nov. 30, 2016) (same); *Beckett v. Inc. Vill. of Freeport*, 2014 WL 1330557, at *6 (E.D.N.Y. Mar. 31, 2014) (same). As the court in *Agua Caliente* explained, "the Federal Rules distinguish" between amendment and supplementation, so "a deadline to amend does not automatically include supplementation." 2020 WL 5775174, at *4.[4]

---

[4] Some courts have applied Rule 16(b)'s good cause requirement to motions to supplement brought after an amendment deadline, often emphasizing "case management concerns." *E.g.*, *Desio v. State Farm Mut. Auto. Ins. Co.*, 339 F.R.D. 632, 640–42 (D. Nev. Nov. 16, 2021). But even if such concerns could vitiate Rule 15's and the scheduling order's plain text (and they cannot), supplementation aids case management, rather than undermining it, by avoiding multiple lawsuits involving overlapping facts and claims. *See infra* II.E.

13

This is only logical. "[B]ecause the need to supplement could presumably arise at any time during the litigation, it would be nonsensical to create a deadline for supplementation." *Id.* The Tenth Circuit, in fact, has criticized a district court for applying an amendment deadline to a motion to supplement, emphasizing the difference between the two. *See Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1192 (10th Cir. 2015).

Because JJHCS's motion is timely, JJHCS does not need to demonstrate "good cause" to supplement, as would be required under Rule 16(b) for an untimely motion under the scheduling order. *Palmieri*, 2008 WL 11510568, at *1 n.1. Rather, JJHCS need only meet the liberal Rule 15 standard, which it readily does.[5]

## II.    JJHCS's Motion Meets Rule 15(a)'s "Liberal Standard"

JJHCS's motion "should be freely permitted" because all the Rule 15(a) factors—connection to the original pleading, undue prejudice, undue delay, futility,

---

[5] Even under Rule 16(b), the result would be no different. The limited cases applying Rule 16(b) in this context recognize that the "good cause analysis is straightforward" when a plaintiff supplements a complaint to add recent factual developments that postdate the amendment deadline. *Singh v. Twp. of Weehawken*, 2023 WL 2523640, at *3 (D.N.J. Mar. 15, 2023), *aff'd*, 2023 WL 3119792 (D.N.J. Apr. 27, 2023) ("Plainly, no measure of diligence could have allowed [the plaintiff] to meet an amended pleading deadline that passed."). That is the circumstance here: JJHCS seeks to add allegations regarding Defendants' misconduct that occurred after the Scheduling Order's March 14, 2024 amendment deadline had already passed, and it did so promptly. *See infra* II.C.

and judicial economy—weigh heavily in favor of granting leave to supplement.  *See Conrad*, 681 F. Supp. 3d at 378.

## A.    The Supplemental Allegations Are Connected to the Original Pleadings

JJHCS's proposed supplemental allegations are of a piece with the scheme it has already alleged, *i.e.*, that Defendants tortiously cause patients to violate the CarePath terms and conditions despite knowing "that the enrollment in its program violates the express terms and conditions of the CarePath agreement that prohibit the patient from combining CarePath with the SaveOnSP Program."  Am. Compl. ¶ 90.  Because Defendants continue to harm JJHCS by causing "patients to breach their contract with JJHCS every time they use CarePath funds while enrolled in the SaveOnSP Program," *id.* ¶ 185, JJHCS has sought not just money damages but also injunctive relief to stop Defendants' "ongoing and future wrongdoing," *id.* ¶ 181.  And JJHCS's proposed supplemental allegations show that, despite updated terms and conditions confirming that patients in the SaveOnSP program are ineligible for CarePath, Defendants continue to engage in the same tortious conduct as previously alleged.  *See* Proposed SAC ¶¶ 183–84.  The proposed supplemental allegations also show that, in further violation of N.Y. G.B.L. § 349, SaveOnSP continues to cause patients undue stress and confusion, forcing them to address a problem that SaveOnSP has created and casting doubt on whether patients will have access to their critical medications.  And the new allegations are narrow; all material changes

15

appear within six paragraphs across three pages of a complaint that is 209 paragraphs and 87 pages long. *See* Ex. B. These modest changes are clearly integrated within the existing pleading and appropriately update it to account for recent events.

Indeed, even if JJHCS did not supplement its complaint, SaveOnSP's misconduct with respect to the New Terms would still be within the scope of this case. As described above, JJHCS has already alleged that the Defendants' wrongdoing is "ongoing" and that SaveOnSP "continues to induce patients in the SaveOnSP Program to sign up for CarePath in violation of CarePath's terms and conditions." Am. Compl. ¶¶ 180–81. While the operative pleadings cover SaveOnSP's latest misconduct, JJHCS nonetheless moves to supplement its complaint to leave no room for doubt.[6]

## B. Defendants Cannot Demonstrate Undue Prejudice

Undue prejudice to the non-moving party is "the touchstone for the denial of leave to amend" and likewise for denial of leave to supplement. *Huertas v. City of Camden*, 2003 WL 27386400, at *1–2 (D.N.J. Dec. 22, 2003) (quoting *Heyl &*

---

[6] JJHCS also alleges in the Proposed SAC that it may further modify its terms and conditions in the future, including by extending the New Terms across all drugs, and that the relief JJHCS seeks in this action includes relief from any future, unlawful conduct that Defendants may engage in with respect to those terms. Thus, if JJHCS further modifies its CarePath terms and conditions down the road, JJHCS will not need to supplement its allegations again because, as explained above, a pleading suffices under Rule 8 if it "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Martinez*, 986 F.3d at 265.

16

*Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands*, 663 F.2d 419, 425 (3d Cir. 1981)).  And to show undue prejudice, defendants must establish that the supplemental pleading would "(1) require [them] … to expend significant resources to conduct discovery and prepare for trial, (2) significantly delay resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction." *Smith v. Honeywell Int'l, Inc.*, 2014 WL 301031, at *8 (D.N.J. Jan. 27, 2014).

Defendants cannot make that showing.  "Generally, courts have not found unfair prejudice when a party moves to amend while discovery is still open." *Id.* (collecting cases).  That is the circumstance here.  As the Special Master recently observed, "the parties are still in the midst of written discovery."  Dkt. No. 380 at 23.  Only one deposition has been taken, and "expert discovery and substantive motion practice have not commenced, let alone be near completion." *Id.* at 23–24.  Moreover, the supplemental allegations concern a narrow issue (i.e., the New Terms and Defendants' response thereto), and discovery relating to that issue is already underway regardless.  Indeed, SaveOnSP already has served document requests on JJHCS calling for all documents and communications related to the New Terms.  SaveOnSP cannot now complain that such discovery, which it is taking anyway, would be prejudicial.  *See* Mangi Decl., Ex. 6 (SaveOnSP's Aug. 27, 2024 Supplemental Responses & Objections to JJHCS's Fourth Set of Interrogatories); Ex. 13 (SaveOnSP's Aug. 23, 2024 Eleventh Set of Requests for Production); Ex. 14

17

(Aug. 23, 2024 letter from SaveOnSP to JJHCS proposing search terms and custodians related to the New Terms).

### C. Defendants Cannot Demonstrate Undue Delay, Bad Faith, or Dilatory Motive

Defendants also cannot oppose JJHCS's motion on the basis of delay or dilatory motive. JJHCS's proposed supplemental allegations concern the New Terms, rolled out between April and October 2024, and Defendants' actions in response to them. *See* Proposed SAC ¶¶ 181–84. ████████████████████

████████████████████████████ in a supplemental response to an interrogatory that JJHCS had served in June 2024. JJHCS then further conferred with SaveOnSP regarding SaveOnSP's position that the New Terms are irrelevant to the claims and defenses in this case. *See* Mangi Decl., Ex. 15. On September 10, 2024—after SaveOnSP had served document requests on JJHCS related to the New Terms—SaveOnSP stated that the New Terms are relevant to its mitigation defense but still refused to agree that they are relevant to JJHCS's claims. *See* Mangi Decl., Ex. 11.

JJHCS pushed back to try and resolve this issue: in a September 23, 2024 letter served alongside its Responses and Objections to SaveOnSP's new document requests, JJHCS reiterated its position that the New Terms "are part and parcel and the Complaint and Proposed Amended Complaint." Mangi Decl., Ex. 16. But SaveOnSP again refused to acknowledge that the New Terms are relevant to JJHCS's

claims, writing on October 3, 2024 that it "disagree[d]" with JJHCS's "relevance arguments." Mangi Decl., Ex. 12.

JJHCS informed Defendants later ***the very same day*** that it would be moving to supplement the Amended Complaint, Mangi Decl. Ex. 17, and filed this motion immediately after Defendants had made themselves available for conferral. Meanwhile, JJHCS continued to roll out the New Terms for additional drugs. As noted above, the New Terms were publicly released for five additional drugs on October 4, 2024. *See* Proposed SAC ¶ 182. JJHCS thus made this motion immediately upon receiving Defendants' final position and while continuing to roll out the New Terms.[7]

That is not a delay, and certainly not one that is *undue*, which requires Defendants to show that the supposed delay "places an unwarranted burden on the court or an unfair burden on the opposing party." *Eisai Co. v. Teva Pharms. USA, Inc.*, 247 F.R.D. 445, 448 (D.N.J. Dec. 6, 2007). No such burden can be shown here. Granting JJHCS's supplemental pleading concerning the New Terms would not disrupt the cadence of this case, especially when the parties are still in discovery (in part on this very issue) and trial is not near. *See, e.g.*, *Shire LLC v. Amneal Pharms.*,

---

[7] This motion also came shortly after the District Court resolved another pending motion to amend the pleadings, making clear which pleading JJHCS must seek to supplement. *See* Dkt. No. 394.

19

*LLC*, 2012 WL 12909909, at *4 (D.N.J. Dec. 28, 2012) (granting leave to amend and finding delay had not become "undue" where discovery was ongoing).

Defendants likewise cannot show any "bad faith" on JJHCS's part. To establish bad faith, Defendants must demonstrate "something akin to an indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay." *Cobra Enters., LLC v. All Phase Servs., Inc.*, 2022 WL 214542, at *3 (D.N.J. Jan. 24, 2022) (Waldor, J.) (citations and internal quotation marks omitted). Defendants cannot show anything of the sort. JJHCS has moved expeditiously to supplement its complaint with new, relevant facts once SaveOnSP refused to either abide by the New Terms or agree that they are properly encompassed in JJHCS's existing allegations. As for the remaining Defendants, the District Court entered an Order adding them to this case just six days ago. Accordingly, JJHCS's motion will not prejudice Defendants.

### D. Defendants Cannot Demonstrate Futility

Defendants also cannot argue that supplementation would be futile. In assessing futility, courts apply "the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6)." *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 2007 WL 9724442, at *6 (D.N.J. Mar. 29, 2007). This Court has already held that JJHCS's Original Complaint sufficiently states a claim against SaveOnSP for tortious interference with contract. *See* Dkt. No. 68 (denying

20

SaveOnSP's motion to dismiss). The Special Master's Report and Recommendation similarly rejected Defendants' futility arguments against the Amended Complaint. *See* Dkt. No. 380 at 25–40. As discussed above, JJHCS's proposed supplement updates its allegations that the Defendants are still tortiously interfering with JJHCS's contracts with its patients. Because the Court has already rejected SaveOnSP's attempt to dismiss those claims, Defendants cannot argue that JJHCS's supplemental complaint is futile.

### E. JJHCS's Supplemental Complaint Promotes Judicial Economy

Finally, supplemental pleadings, by their nature, promote judicial economy "by permitting the court to deal with the entire dispute at once, rather than in piecemeal fashion." *Glenside W. Corp. v. Exxon Co., U.S.A.*, 761 F. Supp. 1118, 1134 (D.N.J. Apr. 8, 1991). If the proposed allegations concerning Defendants' response to the New Terms are not included here, JJHCS would have to initiate a separate action addressing that misconduct. This would be inefficient, especially given that JJHCS does not set forth any new cause of action and simply seeks to bring this action "up to date" by pleading new facts regarding an updated version of the terms and conditions already at issue in this case. Filing a separate action regarding the New Terms would only demand more of the court's (and the parties') time and resources. Such a perverse result would benefit no one.

21

## CONCLUSION

For the foregoing reasons, JJHCS respectfully requests that the Court grant it leave to file the Proposed SAC.

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:    s/ Jeffrey J. Greenbaum
JEFFREY J. GREENBAUM
KATHERINE M. LIEB

PATTERSON BELKNAP WEBB &
TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff Johnson & Johnson
Health Care Systems Inc.*

Dated:  October 7, 2024

22