**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JOHNSON & JOHNSON
HEALTH CARE SYSTEMS INC.,

        Plaintiff,

        v.

SAVE ON SP, LLC, EXPRESS SCRIPTS,
INC., AND ACCREDO HEALTH GROUP,
INC.,

        Defendants.

Case No. 22-2632 (JKS)(CLW)

---

## DEFENDANT SAVE ON SP, LLC'S BRIEF IN OPPOSITION TO JOHNSON & JOHNSON HEALTH CARE SYSTEM'S MOTION FOR LEAVE TO FILE SUPPLEMENTED AMENDED COMPLAINT

Date: November 4, 2024

E. Evans Wohlforth, Jr.
Sabrina M. Galli
**ROBINSON & COLE LLP**
666 Third Avenue, 20th Floor
New York, NY 10017
Telephone: (212) 451-2900
Facsimile: (212) 451-2999
ewohlforth@rc.com
sgalli@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
**SELENDY GAY PLLC**
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000
pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND............................................................................................3

ARGUMENT .....................................................................................................................5

I.    J&J's New Claims Regarding the 2024 T&Cs Are Improper ..............................5

    A.    J&J's Proposed Claims Regarding the 2024 T&Cs Are Futile and Unduly Prejudicial ......................................................................................6

    B.    Under Rule 16, J&J Lacks Good Cause to Bring New Claims Based on the 2024 T&Cs That It Issued Before It Filed the Amended Complaint.......................9

    C.    J&J Cannot Bring Claims Based on New T&Cs That It Has Not Issued .............12

    D.    J&J Cannot Justify Its New Claims Based on the 2024 T&Cs as a "Continuing Violation"....................................................................................14

II.   J&J's New Allegations Regarding the 2022 Stelara & Tremfya T&Cs Are Improper....................................................................................................17

CONCLUSION..................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdul-Aziz v. Lanigan*,
  2016 WL 1162753 (D.N.J. Mar. 24, 2016)................................................................15

*Blizzard Ent. Inc. v. Ceiling Fan Software LLC*,
  28 F. Supp. 3d 1006 (C.D. Cal. Sept. 23, 2013) ....................................................16

*Bridges v. Colvin*,
  136 F. Supp. 3d 620 (E.D. Pa. 2015) .....................................................................10

*Chester Cnty. Intermediate Unit v. Pa. Blue Shield*,
  896 F.2d 808 (3d Cir. 1990).....................................................................................6

*Com. Ins. Servs., Inc. v. Szczurek*,
  2006 WL 8457151 (D.N.J. Jan. 6, 2006) ...........................................................14, 16

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
  252 F.3d 267 (3d Cir. 2001)....................................................................................20

*Debjo Sales, LLC v. Houghton Mifflin Harcourt Publishing Co.*,
  2015 WL 1969380 (D.N.J. Apr. 29, 2015) ............................................................16

*Educ. Impact, Inc. v. Danielson*,
  2015 WL 381332 (D.N.J. Jan. 28, 2015) ...............................................................14

*Egg Harbor Assocs., LLC v. Village Supermarkets, Inc.*,
  2020 WL 132768 (N.J. App. Div. Jan. 13, 2020) ..................................................15

*Harrison Beverage Co. v. Dribeck Imp., Inc.*,
  133 F.R.D. 463 (D.N.J. 1990)...................................................................................6

*Huertas v. City of Camden*,
  2003 WL 27386400 (D.N.J. Dec. 22, 2003) ............................................................9

*Johnson & Johnson Health Care Sys. Inc. v. Save On SP, LLC*,
  2023 WL 415092 (D.N.J. Jan. 25, 2023) ..............................................................6, 7

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*,
  337 F.3d 314 (3d Cir. 2003)...............................................................................14, 15

*L&M Healthcare Comms. LLC v. Pantano*,
  2023 WL 9604290 (D.N.J. Dec. 23, 2023) ................................................. *passim*

*loanDepot.com v. CrossCountry Mortgage, Inc.*,
    399 F. Supp. 3d 226 (D.N.J. 2019) ........................................................................16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..............................................................................................13

*MedWell, LLC v. Cigna Corp.*,
    2023 WL 4045089 (D.N.J. June 16, 2023) ......................................................16, 17

*Mollinger v. Diversified Printing Corp.*,
    1989 WL 115125 (E.D. Pa. Sept. 29, 1989) ..........................................................16

*Only v. Ascent Media Group, LLC*,
    2006 WL 2865492 (D.N.J. Oct. 5, 2006) ...............................................................16

*Pezza v. Middletown Twp. Pub. Sch.*,
    2023 WL 2019623 (D.N.J. Feb. 15, 2023) ...............................................................6

*Pfizer Inc. v. Sandoz Inc.*,
    2013 WL 5934635 (D. Del. Nov. 4, 2013) .............................................................20

*Premier Comp Sols., LLC v. UPMC*,
    970 F.3d 316 (3d Cir. 2020) ...................................................................................10

*Ramos v. Walmart Inc.*,
    2024 WL 3456218 (D.N.J. July 17, 2024) ...................................................... *passim*

*Ramos v. Walmart Inc.*,
    2024 WL 4318603 (D.N.J. Sept. 24, 2024) .............................................................18

*Reich v. Fairleigh Dickinson Univ.*,
    2022 WL 2384007 (D.N.J. July 1, 2022) ..................................................................9

*T Mobile Northeast LLC v. City of Wilmington*,
    913 F.3d 311 (3d Cir. 2019) .......................................................................10, 13, 17

*Tormasi v. Hayman*,
    2010 WL 1878961 (D.N.J. May 10, 2010) ...............................................................6

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ............................................................................................8, 13

*Trump v. New York*,
    592 U.S. 125 (2020) ..............................................................................................13

*Turner v. N.J. State Police*,
    2015 WL 1850001 (D.N.J. Apr. 22, 2015) ..........................................................9, 10

*Wilson v. Quest Diagnostics Inc.*,
   2020 WL 401814 (D.N.J. Jan. 24, 2020) ...............................................................10

*Yah'Torah v. Emrich*,
   2021 WL 2018937 (D.N.J. May 20, 2021) ...............................................................6

**Rules**

Fed. R. Civ. P. 8 .................................................................................................................16

Fed. R. Civ. P. 8(a)(2) ........................................................................................................12

Fed. R. Civ. P. 12(b)(6) .......................................................................................................6

Fed. R. Civ. P. 15 ...................................................................................................... *passim*

Fed. R. Civ. P. 15(a) .............................................................................................................6

Fed. R. Civ. P. 15(d) ...........................................................................................6, 9, 10, 12

Fed. R. Civ. P. 16 ...................................................................................................... *passim*

Fed. R. Civ. P. 16(b) ..........................................................................................................20

Fed. R. Civ. P. 16(b)(4) ......................................................................................................10

Fed. R. Civ. P. 26(b)(1) ........................................................................................................9

## PRELIMINARY STATEMENT

What Johnson & Johnson Health Care Systems Inc. (with its affiliates, "J&J") presents as a simple motion to supplement its pleadings with six allegations about recent developments is, in truth, an untimely motion to amend its pleadings to add a host of new tortious interference claims and to allege facts of which it was aware many years ago.

In the operative Amended Complaint, J&J alleges that Save On SP, LLC ("SaveOn") tortiously induced patients into breaching two provisions of CarePath's terms and conditions ("T&Cs"): one that says that patients may not use CarePath with any "other offer," and another that began applying to the drugs Stelara and Tremfya in 2022 and says that CarePath patients "must pay" an out-of-pocket cost for their medications. J&J now proposes to add allegations about new T&Cs that J&J decided to issue in 2024 (the "2024 T&Cs") and new claims that SaveOn tortiously interfered with those provisions.

J&J's new claims based on the 2024 T&Cs are improper, first, because they would be futile under Rule 15. The 2024 T&Cs, incorporated by reference into the proposed new complaint, state that patients on SaveOn-advised plans may not receive CarePath funds—but they also instruct members of such plans to call J&J "to discuss [their] options." As J&J alleges in its proposed new complaint, SaveOn told plan members to do just that: call J&J, disclose that they are members of SaveOn-advised plans, and ask J&J about their options. These allegations that SaveOn instructed plan members to *comply* with the 2024 T&Cs by calling J&J negate any inference that SaveOn induced those members to violate the 2024 T&Cs or acted with malice. These allegations also show that SaveOn did not cause J&J any injury—once patients disclosed to J&J that they were on SaveOn-advised plans, J&J was the sole cause of any copay assistance that J&J decided to provide them. *See* Section I.A, *infra*.

J&J also lacks good cause under Rule 16 for its proposed new claims based on the 2024 T&Cs for nine of the drugs at issue. Because J&J alleges that it issued these T&Cs and that SaveOn induced patients to breach them before J&J filed the operative Amended Complaint on October 2, 2024, its allegations and claims based on the 2024 T&Cs are properly amendments (which deal with events before the operative complaint), not supplements (which deal with events after it). As proposed amendments that come after the amendment deadline, they are subject to the "good cause" standard of Rule 16. While J&J anticipated being asked to show good cause, it makes no attempt to do so. Nor could it. Months ago, J&J was aware of its 2024 T&Cs, was aware that hundreds of patients taking these drugs were enrolled in both CarePath and SaveOn-advised plans, and was aware too that it had decided to keep providing copay assistance to those patients. J&J did not act diligently to seek leave to amend its pleadings to add claims based on these events when they arose, so it lacks good cause to amend now. *See* Section I.B, *infra*.

Remarkably, J&J also tries to assert claims that SaveOn tortiously interfered with T&Cs that J&J has not yet issued. J&J lacks standing to bring claims based on conduct that has not yet occurred and cannot state tortious inference claims based on contracts that do not yet exist. *See* Section I.C, *infra*.

J&J cannot salvage its new claims for violations of the 2024 T&Cs by asserting that it previously pled a "continuing violation" of the T&Cs that encompasses alleged interference with all T&Cs that it has ever issued or may ever issue. J&J is judicially estopped from making this argument, as it successfully moved to amend its tortious inference claim to include Express Scripts, Inc. ("ESI") and Accredo Health Group, Inc. ("Accredo") as defendants on the explicit basis that it was *not* asserting continuing violations but rather independent, contract-by-contract torts. In any event, the continuing violation doctrine does not apply to tortious interference claims. And, as an

exception to the statute of limitations, that doctrine would not excuse J&J from failing to allege interference with specific contracts, as New Jersey law requires. *See* Section I.D, *infra*.

Finally, J&J tries to slip in additional allegations regarding the 2022 Stelara and Tremfya T&Cs and 2021 marketing materials issued by Cigna, both of which J&J was aware before it filed its original Complaint on May 4, 2022. Those new allegations too are untimely amendments, and J&J makes no attempt to explain why it could not have made them years ago. *See* Section II, *infra*.

J&J's motion should be denied.

## FACTUAL BACKGROUND

On May 4, 2022, J&J sued SaveOn, alleging violations of New York's consumer protection statute and tortious interference with contract. J&J claimed that SaveOn's conduct caused it to pay more in copay assistance funds from its CarePath program than it otherwise would have; it sought damages and an "injunction preventing SaveOnSP from implementing the SaveOnSP Program as to Janssen drugs." Dkt. 1 ("Compl.") at 41.

Relevant to its tortious inference claims, J&J alleged that SaveOn induced patients to violate two specific provisions of the T&Cs. First, J&J alleged that SaveOn induced patients to breach a provision "typically" contained in CarePath T&Cs that prohibits patients from using CarePath with "any … other offer" (the "May-Not-Use Provision"). Compl. ¶ 18-20, 89-90. Second, J&J alleged that SaveOn induced patients to breach a provision stating that, to be eligible for CarePath, a patient "must pay an out-of-pocket cost for [their] medication" (the "Must-Pay Provision"). Compl. ¶ 103. This provision appeared in a version of the T&Cs for two drugs at issue, Stelara and Tremfya, that took effect in January 2022 (the "2022 Stelara & Tremfya T&Cs").[1]

---

[1] J&J's original complaint also included an allegation about a different provision of the 2022 Stelara & Tremfya T&Cs, which stated that "[p]atients who are members of health plans that claim

J&J moved for leave to amend its complaint on March 14, 2024, Dkt. 219, the last day permitted for such motions under the scheduling order, Dkt. 177. Among other things, J&J sought to add two defendants, ESI and Accredo, along with claims for conspiracy to commit tortious interference and aiding and abetting tortious interference. Dkt. 220 at 1-4, 8-11.

From April to August 2024, J&J issued new T&Cs for several drugs at issue, including Stelara, Tremfya, Simponi, Simponi Aria, Opsumit, Tracleer, Uptravi, Remicade, and Rybrevant. Dkt. 404-2 ("Prop. SAC") ¶¶ 181-82. In those new 2024 T&Cs, J&J added a provision that states that patients on SaveOn-advised plans "will not be eligible for, and [] agree not to use" copay assistance (the "SaveOn Provision"). *See, e.g.*, *id.*, Ex. B (2024 Stelara T&Cs). J&J also added a provision instructing patients on SaveOn-advised plans to call J&J "to discuss [their] options" (the "Call-J&J Provision"). *Id.* J&J did not tell SaveOn about these new 2024 T&Cs.

As J&J admits in its proposed supplemental complaint, ████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. Prop. SAC ¶ 183; *see also* Nelson Decl., Ex. 1 (R&Os to J&J's Fourth Set of Interrogatories) at 5-6.

When J&J began issuing the 2024 T&Cs back in April, it did not alert the Court or SaveOn or ESI or Accredo that it intended to bring new claims based on those provisions. At no point during briefing or argument on its motion for leave to amend its original complaint did J&J even mention its new 2024 T&Cs. *See, e.g.*, Dkt. 310 (J&J Reply to Opp. to Mot. to Amend); July 15, 2024 Hr'g Tr.

---

to eliminate their out-of-pocket costs are not eligible for cost support." *Id.* ¶ 103. J&J removed any mention of this provision in the operative Amended Complaint. *See* Dkt. 220-2 (Prop. Am. Compl. Redline) ¶ 179; Am. Compl. ¶ 179.

On October 7, 2024, five days after filing its Amended Complaint, Dkt. 395 ("Am. Compl."), and 207 days after the Court's deadline to amend pleadings, Dkt. 177, J&J filed its Motion for Leave to Supplement the Amended Complaint, Dkt. 403; *see also* Dkt. 404 ("Mot."). Among other things, J&J seeks to add new tortious interference claims based on the 2024 T&Cs.

SaveOn now opposes J&J's motion.

## ARGUMENT

### I.    J&J's New Claims Regarding the 2024 T&Cs Are Improper

J&J seeks to add new claims that SaveOn tortiously interfered with the SaveOn Provision of the 2024 T&Cs. Mot. at 7-9. For purposes of this motion practice, those claims fall into three groups: (1) claims based on the 2024 T&Cs for nine drugs for which J&J changed the T&Cs before it filed the operative Amended Complaint on October 2, 2024; (2) claims based on the 2024 T&Cs for five drugs for which J&J changed the T&Cs after it filed the Amended Complaint; and (3) claims based on an unspecified number of additional drugs for which J&J has not yet implemented any changes to the existing T&Cs.

J&J's motion to add these claims fails to satisfy Rule 15, as they would be futile and their addition now would be unduly prejudicial. Section I.A, *infra*. J&J's motion to add the first group of claims, properly a motion for leave to amend, also fails to satisfy Rule 16, as J&J lacks good cause for its delay in pursuing them. Section I.B, *infra*. J&J's motion to add the third group of claims also lacks good cause under Rule 16 and would be futile for additional reasons under Rule 15, as J&J lacks both standing and a cause of action to challenge future conduct based on T&Cs it has not yet issued. Section I.C, *infra*.

5

A.    **J&J's Proposed Claims Regarding the 2024 T&Cs Are Futile and Unduly Prejudicial**

All of J&J's proposed new claims regarding the 2024 T&Cs, whether viewed as motions to amend or to supplement, must satisfy Rule 15. Under Rule 15, courts may deny leave to amend or supplement when the amendment would be futile or would unduly prejudice the non-moving party. *L&M Healthcare Comms. LLC v. Pantano*, 2023 WL 9604290, at *6 (D.N.J. Dec. 23, 2023) (Wolfson, J.) (citing *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016)); *see also Tormasi v. Hayman*, 2010 WL 1878961, at *2 (D.N.J. May 10, 2010) (applying the Rule 15(a) standard to Rule 15(d) motions for leave to supplement (citing *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 360-61 (D.N.J. 2000))).

An amended or supplemental pleading is futile under Rule 15 if it "advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990). Futility is evaluated under the Rule 12(b)(6) standard. *See id.*; *Pezza v. Middletown Twp. Pub. Sch.*, 2023 WL 2019623, at *5 (D.N.J. Feb. 15, 2023). In its analysis, the court may consider the complaint and exhibits attached to it. *Yah'Torah v. Emrich*, 2021 WL 2018937, at *2 (D.N.J. May 20, 2021) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *see also Chester Cnty. Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990). While the court is generally required to take the allegations in the proposed amended or supplemental pleading as true, it "need not accept bald assertions that have no factual underpinnings." *L&M Healthcare Comms. LLC*, 2023 WL 9604290, at *9.

To state a claim for tortious interference with the 2024 T&Cs, J&J must allege: "(1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference." *Johnson & Johnson Health Care Sys. Inc. v. Save On SP, LLC*, 2023 WL 415092,

at *7 (D.N.J. Jan. 25, 2023) (internal citation omitted).  J&J's allegations fail to satisfy these elements.[2]

J&J does not adequately allege that SaveOn induced patients to breach the 2024 T&Cs. While J&J alleges that SaveOn kept Janssen drugs on the SaveOn drug list, Prop. SAC ¶ 183, this alone does not breach the T&Cs. In denying the motion to dismiss the original Complaint, the Court agreed with J&J that its allegations plausibly claimed that patients breach the T&Cs when they receive CarePath funds while being members of SaveOn-advised plans. *Johnson & Johnson Health Care Sys. Inc.,* 2023 WL 415092, at *7. It further agreed with J&J that the original Complaint alleged that SaveOn induces such breaches by helping members of SaveOn-advised plans enroll in CarePath and receive CarePath funds. *Id.* For the 2024 T&Cs, however, J&J alleges that SaveOn tells patients to call J&J and disclose that they are on SaveOn-advised plans. Prop. SAC ¶ 183. This is not inducing breach; it is encouraging compliance with the Call-J&J Provision. *See, e.g.*, Prop. SAC, Ex. B (Stelara 2024 T&Cs). There is no plausible way to infer from SaveOn telling patients to call J&J and disclose that they are on a SaveOn-advised plan that SaveOn induced those patients to breach the T&Cs.

J&J also does not adequately allege that SaveOn intentionally and maliciously interfered with the 2024 T&Cs. Malice requires that "harm was inflicted intentionally and without justification or excuse." *L&M Healthcare Comms. LLC*, 2023 WL 9604290, at *7 (compiling cases). The 2024 T&Cs state in the Call-J&J Provision that patients must "let [J&J] know if [their] insurance company or health plan has one of these programs or benefit designs, including SaveOnSP, by

---

[2] J&J also brings a claim of conspiracy to commit tortious interference against SaveOn. To state such a claim, J&J must allege the same elements plus "proof of special damages." Dkt. 381 at 15 (citing *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003)). Accordingly, if J&J's tortious interference claims are futile, then so too are its new conspiracy claims.

calling [J&J] to discuss [their] options." *E.g.*, Prop. SAC, Ex. B (Stelara 2024 T&Cs). In the words of J&J's own proposed pleading, SaveOn told patients to do just that: "call JJHCS and tell it that their plan has a benefit administered by SaveOnSP." Prop. SAC ¶ 183. This allegation that SaveOn told patients to disclose to J&J that they were on SaveOn-advised plans negates any inference that SaveOn maliciously intended to induce those patients to breach the T&Cs. J&J cannot manufacture malice by alleging, on information and belief, that SaveOn secretly intended that patients would disregard its instructions to call J&J, *id.*; malice "requires more" than "bald assertions that have no factual underpinnings" and "supposition[s]" of SaveOn's "ulterior motives." *L&M Healthcare Comms. LLC*, 2023 WL 9604290, at *9-10 (denying defendant leave to add a tortious interference counterclaim for failing to plausibly allege malice).

J&J also does not adequately allege that SaveOn caused J&J's damages. To the contrary, J&J alleges that SaveOn instructed patients on SaveOn-advised plans to disclose that fact to J&J. Prop. SAC ¶ 183. And while J&J speculates that SaveOn wanted patients to ignore SaveOn's instructions, *id.*, J&J does not allege that patients failed to call it, just as SaveOn instructed them to.[3] If, after receiving calls from patients disclosing their enrollment in SaveOn-advised plans, J&J opted to give those patients copay assistance anyway, then J&J is the sole cause of those payments. For similar reasons, J&J cannot establish standing, as it has not adequately alleged that its purported injuries were "likely caused by" SaveOn as opposed to its own actions. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

J&J's proposed new claims based on the 2024 T&Cs would also be unduly prejudicial given J&J's attempts to shut the door on discovery. While J&J stated in its October 7, 2024 motion

_____

[3] This is no technical pleading deficiency. SaveOn understands from its conversations with plan members that hundreds of them called J&J, just as SaveOn instructed. SaveOn also understands that J&J continues to provide copay assistance to most of these plan members.

that Your Honor should grant its motion in part because "the parties are still in the midst of written discovery," Mot. at 17, four days later, at the October 11, 2024 conference, J&J asked Your Honor to impose a three-day deadline for SaveOn to serve any remaining discovery requests, *see* Oct. 11, 2024 Hr'g Tr. at 103:1 ("We propose 14 days from the ruling on the motion to amend."); Dkt. 394 (Oct. 1, 2024 Order granting J&J's motion to amend), and to allow SaveOn fewer than two months to raise any discovery disputes, *see* Oct. 11, 2024 Hr'g Tr. at 103:10-13. It would be prejudicial in the extreme to let J&J add new claims based on alleged violations of the 2024 T&Cs while denying SaveOn time to conduct even basic discovery into those claims and SaveOn's potential defenses. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.").

### B.   Under Rule 16, J&J Lacks Good Cause to Bring New Claims Based on the 2024 T&Cs That It Issued Before It Filed the Amended Complaint

J&J's motion to add claims based on the 2024 T&Cs for nine drugs—Stelara, Tremfya, Simponi, Simponi Aria, Opsumit, Tracleer, Uptravi, Remicade, and Rybrevant—is properly one to amend its pleadings, not to supplement them, and thus J&J must show good cause to amend its complaint, as the deadline for doing so has passed. That J&J calls its allegations supplemental, Mot. at 12-13, does not make them so; courts evaluate pleadings for what they are, not what the moving party calls them. *See, e.g.*, *Reich v. Fairleigh Dickinson Univ.*, 2022 WL 2384007, at *3 (D.N.J. July 1, 2022); *Huertas v. City of Camden*, 2003 WL 27386400, at *1 (D.N.J. Dec. 22, 2003).

When determining whether a movant's new allegations are proposed amendments or supplements, courts look to the date of filing of the operative complaint as the pleading to be altered. *See Turner v. N.J. State Police,* 2015 WL 1850001, at *7 (D.N.J. Apr. 22, 2015) ("In order to comply with Rule 15(d), [plaintiff's] supplemental pleading must therefore have alleged facts that

occurred after … the date that his second amended complaint was deemed filed."); *Bridges v. Colvin*, 136 F. Supp. 3d 620, 652 (E.D. Pa. 2015) (looking to the amended complaint to determine whether the events occurred after its filing). Amended pleadings relate to matters that occurred *before* the filing of the operative complaint, while "[supplemental pleadings] deal with events subsequent to the pleading to be altered." *T Mobile Northeast LLC v. City of Wilmington*, 913 F.3d 311, 317 n.4 (3d Cir. 2019); *see also* Fed. R. Civ. P. 15(d).[4]

J&J filed the operative Amended Complaint on October 2, 2024. Dkt. 395. It issued the 2024 T&Cs for these nine drugs, and alleges that SaveOn tortiously inferred with them, before that date. *See* Prop. SAC ¶¶ 181-83. Its motion to add claims based on the 2024 T&Cs for those nine drugs is thus properly a motion for leave to amend. *Turner*, 2015 WL 1850001, at \*7.

Because J&J brings its motion for leave to amend after the March 14, 2024 deadline for doing so, Dkt. 177, it must meet Rule 16's "good cause" standard. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *see also Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020); *Wilson v. Quest Diagnostics Inc.*, 2020 WL 401814, at \*4 (D.N.J. Jan. 24, 2020). While J&J "anticipate[d]" that it would be called on to show good cause, Mot. at 12, J&J makes no attempt to meet its burden of doing so, which provides sufficient grounds to deny its motion as to these nine drugs.

J&J could not show good cause in any event. It would have to show that it could not have moved to amend earlier, despite its diligence, *L&M Healthcare Comms. LLC*, 2023 WL 9604290,

---

[4] J&J asserts that the purpose of supplemental pleadings is to "set[] forth new facts that have occurred since the filing of the *original complaint*," Mot. at 12 (emphasis added) (quoting *Deen-Mitchell v. Lappin*, 2012 WL 74900, at \*4 (M.D. Pa. Jan. 10, 2012)), but J&J omits the language of Rule 15(d) stating that supplementation is for events that "happened after the date of the pleading *to be supplemented*," Fed. R. Civ. P 15(d) (emphasis added); *see also* Mot. at 1 (quoting Rule 15(d) but omitting the phrase "to be supplemented" after "pleading"). Here, the pleading J&J seeks to alter is the Amended Complaint, not the original Complaint.

at *4, as "Rule 16's 'good cause' standard hinges to a large extent on the diligence, or lack thereof, of the moving party," *Ramos v. Walmart Inc.*, 2024 WL 3456218, at *2 (D.N.J. July 17, 2024) (Wolfson, J.) (internal citations omitted). If a party "discovers new information leading to additional claims after the deadline to amend has passed," good cause requires that the party "exercise diligence" by, "at the very least, promptly rais[ing] the issue with the Court." *L&M Healthcare Comms. LLC*, 2023 WL 9604290, at *5 (internal citation omitted). The good cause standard is therefore "not satisfied where a party had several months in which it could have raised concerns over the possibility of moving to amend but failed to do so." *Id.* (internal citations omitted).

J&J had all the information necessary to bring its new claims for these nine drugs months ago. It knew of the 2024 T&Cs when it issued them between April 2024 and August 2024. Prop. SAC ¶¶ 181-82; *see also id.*, Ex. B. ████████████████████████████████████████ ████████████████████████, *see, e.g.*, Nelson Decl., Ex. 2 (JJHCS_00185958) (████████████████ ████████████████████████████████); *id.*, Ex. 3 (RISRX0045) ████████ ████████████████████████████████████), and, at a minimum, its lawyers knew from discovery exactly who those patients were. J&J also knew that those patients continued to draw copay assistance after it issued the 2024 T&Cs.

Yet instead of "at the very least, promptly rais[ing] the issue with the Court," J&J "sat on" its potential new claims regarding those new provisions for months before moving, making no mention of them even during the exhaustive briefing and argument on its prior motion for leave to amend. *See L&M Healthcare Comms. LLC*, 2023 WL 9604290, at *5 (internal citation omitted). Because J&J "possessed … the knowledge necessary to file the motion to amend" for new claims based on the 2024 T&Cs for these nine drugs months ago, it cannot show good cause for waiting

11

until now to do so. *Ramos*, 2024 WL 3456218, at *2 (denying leave for additional discovery to support untimely amendment).[5]

### C.   J&J Cannot Bring Claims Based on New T&Cs That It Has Not Issued

J&J asserts that its Proposed Amended Complaint includes claims based on "any future, unlawful conduct that Defendants *may* engage in" with respect to any T&Cs that J&J "*may* further modify in the future." Mot. at 16 n.6 (emphases added). J&J alleges that it "anticipates adding similar language" from the 2024 T&Cs to the T&Cs for other drugs at some point, Mot. at 8; *see also* Prop. SAC ¶ 182, asserts that SaveOn is henceforth on notice of such future claims and any other claims arising from any new T&Cs it may implement in the future, and concludes that J&J thus "will not need to supplement its allegations again," Mot. at 16 n.6. Not so.

J&J cannot add claims based on future T&Cs through supplementation. Supplementation is for events that "*happened* after the date of the pleading to be supplemented," Fed. R. Civ. P. 15(d) (emphasis added), and none of the events underlying these speculative claims have occurred. Because these allegations are not proper supplementation, J&J must meet Rule 16's "good cause" standard, because it moves after the deadline for motions to amend.[6] Dkt. 177. J&J could

---

[5] J&J cannot excuse its own delay by asserting that ███████████████████████████████ ████████████████████████████████, in a supplemental response to an interrogatory that JJHCS had served in June 2024," or by claiming that it did not know that SaveOn's position was that the 2024 T&Cs are irrelevant to J&J's claims until October 3, 2024. Mot. at 18-19. J&J had all the facts necessary to bring its new claims for those nine drugs long before then, and SaveOn told J&J months ago that the 2024 T&Cs were "irrelevant to J&J's existing claims" because "J&J has not asserted any claims based on the 2024 terms and conditions." *See* Nelson Decl., Ex. 4 (Aug. 2, 2024 Email from M. Nelson to J. Long). J&J also does not support its assertion that its obligation to promptly move for leave to amend turns on when SaveOn told J&J that its complaint did not encompass these claims—it is J&J's responsibility as plaintiff to ensure that its complaint includes the claims it wishes to assert. *See* Fed. R. Civ. P. 8(a)(2).

[6] While J&J's new allegations clearly do not fall under the purview of supplementation, they are arguably not proper amendments either, as the Third Circuit has explained that amended pleadings

not meet its burden of showing good cause: If J&J believed that it could bring claims based on

unissued T&Cs, it could have brought them months if not years ago. It chose not to and does not

explain its failure to timely do so.

In any event, J&J's claims based on future T&Cs would be futile under Rule 15. Most

glaringly, J&J lacks standing to bring claims for conduct that has not occurred. "Under Article III,

federal courts do not adjudicate hypothetical or abstract disputes." *TransUnion LLC*, 594 U.S. 413,

423 (2021); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]o establish

standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized,

and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the

injury would likely be redressed by judicial relief." *TransUnion LLC*, 594 U.S. at 423 (cit-

ing *Lujan*, 504 U.S. at 560-61). J&J's claims based on T&Cs it has not issued are entirely specu-

lative and lack a concrete injury. J&J's assertion that SaveOn will violate those future T&Cs can-

not create standing now, as "a mere risk of future harm … cannot qualify as a concrete harm."

*TransUnion LLC*, 594 U.S. at 436.[7]

Even if J&J had standing (it does not), it would not have a cause of action, and its claims

would be futile on that basis too. As J&J stated in prior briefing: "A claim for tortious interference

---

"relate to matters that *occurred* prior to the filing of the original pleading." *T Mobile Northeast LLC*, 913 F.3d at 317 n.4 (emphasis added) (internal citation omitted), and the speculative events underlying these claims have not occurred. The Rules do not appear to contemplate the addition of claims based on allegations of possible future conduct. If the claims here must be either amendments or supplements, they are most properly considered amendments, as J&J seems to allege that it formed its intention to amend all the T&Cs in April 2024, Prop. SAC ¶ 181, before it filed the operative Amended Complaint.

[7] For the same reason, J&J cannot show that its claims with respect to these future revisions to the T&Cs are sufficiently ripe to satisfy Article III's case-or-controversy requirement. *See Trump v. New York*, 592 U.S. 125, 131 (2020) (noting that ripeness requires a case to not be "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all'" (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998))).

with contract is not even actionable until the plaintiff suffers damages from the interference." Dkt. 310 at 11 (J&J Reply to Opp. to Mot. to Amend). Your Honor has held the same. *See Educ. Impact, Inc. v. Danielson*, 2015 WL 381332, at \*15-16 (D.N.J. Jan. 28, 2015) (Wolfson, J.); *see also Com. Ins. Servs., Inc. v. Szczurek*, 2006 WL 8457151, at \*8 (D.N.J. Jan. 6, 2006) ("[I]t is axiomatic that a claim for interference with existing contracts requires a showing of existing contracts."). J&J cannot bring claims that SaveOn tortiously interfered with contracts that do not exist.

### D.    J&J Cannot Justify Its New Claims Based on the 2024 T&Cs as a "Continuing Violation"

J&J cannot save its proposed new claims based on the 2024 T&Cs by asserting that its existing pleading "clearly alleges continuing violations" of the CarePath T&Cs. Mot. at 10.

J&J is judicially estopped from raising this argument. The "basic principle of judicial estoppel … is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (internal citations omitted). When J&J previously sought leave to amend its complaint, ESI and Accredo argued that its tortious interference claims against them would be time-barred because those claims were based on a continuing violation of the T&Cs that began more than six years ago. Dkt. 300 (ESI and Accredo Opp. to Mot. to Amend) at 29-30; July 15, 2024 Hr'g Tr. at 63:10-12. J&J responded that it "[did] not need the continuing violation doctrine" because it "does not accuse [Defendants] of a single episode of tortious interference." Dkt. 310 (J&J Reply to Opp. to Mot. to Amend) at 12. Rather, J&J argued, it brings its tortious interference claims on a contract-by-contract basis such that "every violation is a tort that can stand on its own." July 15, 2024 Hr'g Tr. at 44:19-21. Your Honor asked if J&J "conceded" that it was not pursuing

a continuing violation theory; J&J replied: "That is exactly right." July 15, 2024 Hr'g Tr. at 44:11-19.

Your Honor ruled in J&J's favor, concluding that "Plaintiff's interference and conspiracy claims against [ESI and Accredo] that accrued within six years of the filing of the PAC are not time barred." Sept. 5, 2024 Report and Recommendation at 40. Your Honor adopted J&J's argument that "each interference is a separate tort that triggers a new six-year limitations period" and not a continuing violation of the T&Cs. *Id.* at 37-38. Because J&J argued that its tortious interference claims were not a continuing violation but rather must be evaluated contract by contract—and won—it cannot be heard now to argue that those same claims are a continuing violation that excuses it from pleading its claims on a contract-by-contract basis. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc.*, 337 F.3d at 319.

Even if J&J were not judicially estopped, its invocation of the continuing violation doctrine would not excuse its failure to plead breaches of the 2024 T&Cs. Under New Jersey law, "[t]he continuing tort doctrine has been applied in limited cases," such as nuisance and workplace discrimination, but "tortious interference … claims fall outside the scope of the narrowly delineated contexts in which the continuing tort doctrine has been recognized." *Egg Harbor Assocs., LLC v. Village Supermarkets, Inc.*, 2020 WL 132768, at *3 (N.J. App. Div. Jan. 13, 2020). The doctrine simply does not apply to tortious interference claims. *See* July 15, 2024 Hr'g Tr. at 76:16-17 (Your Honor: "I pretty much told [J&J] I don't think continuing violation applies.").

And even if the continuing violation doctrine applied to tortious inference claims, it would not help J&J here. That doctrine "is an equitable exception to the limitations period," *Abdul-Aziz v. Lanigan*, 2016 WL 1162753, at *7 (D.N.J. Mar. 24, 2016) (Wolfson, J.); it would not excuse

J&J from pleading viable tortious interference claims.[8] Courts in this District routinely dismiss tortious inference claims for failing to "explicitly describe" the "contract or the terms thereof." *MedWell, LLC v. Cigna Corp.*, 2023 WL 4045089, at *3 (D.N.J. June 16, 2023) (the plaintiff "fail[ed] to plead tortious interference with contract" since allegations failed to "adequately allege an existing contract"); *Debjo Sales, LLC v. Houghton Mifflin Harcourt Publishing Co.*, 2015 WL 1969380, at *7 (D.N.J. Apr. 29, 2015) (allegations of "agreements" with various entities without specifying their terms or effective dates were deficient); *Only v. Ascent Media Group, LLC*, 2006 WL 2865492, at *8 (D.N.J. Oct. 5, 2006) (allegations failed to "identify existing contracts" with required specificity); *loanDepot.com v. CrossCountry Mortgage, Inc.*, 399 F. Supp. 3d 226, 237 (D.N.J. 2019) (allegations dismissed as to unnamed contracts for "failure to identify the contract at issue"); *Com. Ins. Servs.*, 2006 WL 8457151, at *8 (allegations failed to "identif[y] … existing contracts," an "axiomatic" requirement of a tortious interference claim); *see also Mollinger v. Diversified Printing Corp.*, 1989 WL 115125, at *7 (E.D. Pa. Sept. 29, 1989) ("To satisfy the Rule 8 requirement of fair notice, however, plaintiff must at least identify the specific contractual relations which defendants allegedly interfered with.").

    J&J thus cannot assert now that its existing pleadings contain claims for interference with T&Cs that it did not previously identify. *Contra* Mot. at 10 (asserting that J&J "is not obligated to

---

[8] The primary case that J&J relies on, *Blizzard Ent. Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006 (C.D. Cal. Sept. 23, 2013), is not to the contrary. While J&J says that the *Blizzard* court did not limit itself to the version of the contract in existence when the complaint was filed, Mot. at 10, there was no dispute in that summary judgment decision that "all versions" of the contract at issue contained the same allegedly breached provision as the version described in the complaint, *Blizzard*, 28 F. Supp. 3d at 1011 n.4. While J&J says that the court looked at actions post-dating the complaint to find "ongoing misconduct by the defendants," Mot. at 10, the court actually looked at "continuing actions" that violated the contractual provisions that were indisputably at issue, *Blizzard*, 28 F. Supp. 3d at 1016; it did not look at post-complaint conduct to identify new contractual provisions that were not described in the original complaint.

update its pleading to account for every new twist and turn in the CarePath terms and conditions and SaveOnSP's attempts to evade them"). J&J was required to say in its pleadings which T&C provisions SaveOn allegedly breached and how it breached them. *See MedWell, LLC*, 2023 WL 4045089, at *3. The operative Amended Complaint identifies only two: (1) the May-Not-Use Provision, Am. Compl. ¶¶ 23-25, 58, 113, 163-64, and (2) the Must-Pay Provision in the 2022 Stelara & Tremfya T&Cs, *id.* ¶ 179. Only alleged breaches of those two provisions are at issue. If J&J wanted to bring claims based on other provisions, it easily could have done so—it is the sole drafter of all the T&Cs and came up with its tortious interference theories—but it chose not to. SaveOn was not on "fair notice" of claims based on other provisions or T&Cs for other drugs, especially as J&J continues to this day to provide copay assistance to individuals who it knows are on SaveOn-advised plans, regardless of which T&Cs apply.[9]

## II.    J&J's New Allegations Regarding the 2022 Stelara & Tremfya T&Cs Are Improper

J&J also seeks to introduce new allegations concerning the 2022 Stelara & Tremfya T&Cs and SaveOn's response to them. *See* Prop. SAC ¶¶ 179–80. J&J implemented these T&Cs in January 2022, nearly three years before it filed the Amended Complaint on October 2, 2024. J&J's request to add allegations about these terms and SaveOn's response to them is thus properly an untimely motion for leave to amend, *T Mobile Northeast LLC*, 913 F.3d at 317 n.4, so J&J must satisfy Rule 16's "good cause" standard and show that it acted diligently, *Ramos*, 2024 WL 3456218, at *2.

---

[9] In 2023, in the midst of this litigation, J&J amended its T&Cs to remove provisions that it had previously claimed SaveOn violated and instead to state explicitly that patients on health plans that "claim to eliminate their out-of-pocket costs" (which allegedly includes SaveOn-advised plans, Compl. at ¶ 103) are *eligible* for a "$6,000 annual maximum program benefit." Nelson Decl., Ex. 5 (2023 Stelara T&Cs). ██████████████████████████████████████████
████████████ *See* Nelson Decl., Ex. 6 (JJHCS_00035939) at -946-48 ██████████████
██████████████████████████████████████████████████

17

J&J does not attempt to meet its burden of showing good cause, even though it "antici-pate[d]" being called on to do so. Mot. at 12. To the contrary, J&J does not address its allegations about the 2022 Stelara & Tremfya T&Cs at all except to argue SaveOn interfered with them. Mot. at 5-7. This is more than sufficient to deny its motion as to its allegations about these T&Cs.

Nor could J&J show good cause. J&J seeks to add an allegation that the Must-Pay Provision "precluded patients enrolled in SaveOnSP from receiving CarePath funds, *because* SaveOnSP promises that patients enrolled in its program 'won't pay anything ($0) out of pocket,'" quoting a document issued by Cigna titled *Pay $0 for Select Specialty Medications*. Prop. SAC ¶ 179 (emphasis added). While J&J cited this document in prior versions of its complaint, Compl. ¶ 67; Am. Compl. ¶ 92, J&J did not previously allege that this language showed that patients on SaveOn-advised plans breached the Must-Pay Provision "because" of these marketing materials. Prop. SAC ¶ 179.

J&J could have made this allegation concerning the Must-Pay Provision in its original Complaint. "Where … the [movant] knows or is in possession of the information that form[s] the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent." *Ramos v. Walmart Inc.*, 2024 WL 4318603, at *4 (D.N.J. Sept. 24, 2024) (quoting *Hildebrand v. Dentsplay Int'l, Inc.*, 264 F.R.D. 192, 198 (E.D. Pa. 2010)) (adopting Report and Recommendation of Wolfson, J.). J&J clearly knew of the Must-Pay Provision, effective January 2022, and the Cigna document, dated August 2021, before it filed its original Complaint on May 4, 2022, having cited both in its original Complaint. Compl. ¶¶ 11, 19, 67, 78, 90, 103. Having opted not to allege that the Cigna document showed a breach of the Must-Pay Provision back then, J&J cannot slip that allegation into its pleadings now, six months after the deadline for amendments

18

has passed. *See L&M Healthcare Comms. LLC*, 2023 WL 9604290, at *5 (collecting cases that "have deemed nearly six months of delay inexcusable under Rule 16").

J&J also cannot justify its delay in seeking to add new allegations about SaveOn's response to the 2022 Stelara & Tremfya T&Cs. J&J seeks to allege that SaveOn removed the "$0 out-of-pocket promise" from marketing materials and began using language about "'reduced' or 'lower' member cost" "in an attempt to avoid enforcement" of the Must-Pay Provision, while maintaining the core features of its services. Prop. SAC ¶ 180. J&J cites documents showing that ███████████ █████████████████████████████████████████████████████████, *see* Dkt. 404-1 ("J&J Decl."), Ex. 4 (SOSP_0855487), and decided to ██████████████████████ ██████████████████████████████████, *id.*, Ex. 5 (SOSP_1323681). SaveOn ████████████████████████████████. *See, e.g.*, Nelson Decl., Ex. 7 (SOSP_1043210) at -212.

Had J&J acted with diligence, it would have sought leave to add these allegations well before the amendment deadline of March 14, 2024. Dkt. 177. "[A]bsent diligence, there is no good cause." *Ramos*, 2024 WL 3456218, at *2 (internal citation omitted). By February 2024, SaveOn had already produced documents showing the conduct that J&J describes in its proposed amendments about SaveOn's response to the 2022 Stelara & Tremfya T&Cs,[10] and even a cursory

_____

[10] SaveOn produced Exhibits 3 and 4 to the J&J Declaration on February 8, 2024 and October 27, 2023, respectively, and SaveOn produced Exhibit 7 to the Nelson Declaration on February 8, 2024. By its own admission, J&J had sufficient time to review these documents before the deadline for motions for leave to amend, as it acknowledged that knowledge it gained from other documents in SaveOn's February 8, 2024 production informed its March 14, 2024 motion to add ESI and Accredo as parties. *See, e.g.*, July 15, 2024 Hr'g Tr. at 117:24-118:8..

internet search would have revealed SaveOn's language changes years before that.[11] J&J does not,

and could not, "provide [a] satisfactory explanation for [its] delay" in seeking to add amendments

for which it long "possessed, or through the exercise of reasonable diligence should have pos-

sessed, the knowledge necessary" to move. *Ramos*, 2024 WL 3456218, at *2 (internal citation

omitted). As such, J&J cannot carry its burden of proving good cause. *Id.*[12]

## **CONCLUSION**

J&J's motion should be denied.

---

[11] *See, e.g.*, Ltr. from Joint Indus. Bd. of Elec. Indus. at 2, https://www.jibei.org/media/2293/print-phbp-medicare-eligible-retiree-sbc-10-1-22-9-30-23.pdf (Effective Oct. 1, 2022, co-pay for SaveOn drugs "may be reduced to $0"); Sch. Health Ins. Fund Copay Assistance Plan Drug List, https://www.schoolshif.com/wp-content/uploads/2022/11/2023-SaveOn-Drug-List-All-States-except-CA-Co-UT.pdf (Effective Jan. 1, 2023, SaveOn-enrolled patients' "final cost will be as low as $0").

[12] For the same reasons that J&J cannot show good cause to add allegations regarding the 2022 Stelara & Tremfya T&Cs under Rule 16, its motion to add those allegations should be denied for undue delay under Rule 15. *See Ramos*, 2024 WL 3456218, at *1 (D.N.J. July 16, 2024) (citing *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) ("Delay becomes 'undue' … when the plaintiff has had previous opportunities to amend.")); *Pfizer Inc. v. Sandoz Inc.*, 2013 WL 5934635, at *4 (D. Del. Nov. 4, 2013) (applying the same diligence analysis to Rule 15 undue delay and Rule 16(b) good cause to deny defendant's proposed amendments). Undue delay "focus[es] on the movant's reasons for not amending sooner." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267 (3d Cir. 2001). J&J provides no compelling reasons for moving to amend years after these events occurred, nor could it.

Dated:    Newark, New Jersey                  Respectfully submitted,
          November 4, 2024

                                     By:    /s/          *E. Evans Wohlforth, Jr.*
                                            E. Evans Wohlforth, Jr.
                                            Sabrina M. Galli
                                            **ROBINSON & COLE LLP**
                                            666 Third Avenue, 20th Floor
                                            New York, NY 10017
                                            Telephone: (212) 451-2900
                                            Facsimile: (212) 451-2999
                                            ewohlforth@rc.com
                                            sgalli@rc.com

                                            Philippe Z. Selendy (admitted *pro hac vice*)
                                            Andrew R. Dunlap (admitted *pro hac vice*)
                                            Meredith Nelson (admitted *pro hac vice*)
                                            Elizabeth H. Snow (admitted *pro hac vice*)
                                            **SELENDY GAY PLLC**
                                            1290 Avenue of the Americas
                                            New York, NY 10104
                                            Telephone: 212-390-9000
                                            pselendy@selendygay.com
                                            adunlap@selendygay.com
                                            mnelson@selendygay.com
                                            esnow@selendygay.com

                                            *Attorneys for Defendant Save On SP, LLC*

21