UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., | : | Civil Action No. 22-2632 (JKS)(CLW) |
| | : | **CONFIDENTIAL – FILED UNDER SEAL** |
| Plaintiff, | : | |
| v. | : | Hon. Jamel K. Semper, U.S.D.J. |
| | : | Hon. Cathy L. Waldor, U.S.M.J. |
| SAVE ON SP, LLC, EXPRESS SCRIPTS, INC., and ACCREDO HEALTH GROUP, INC., | : | |
| | : | (Electronically Filed Document) |
| Defendants. | : | |

**PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR LEAVE TO SUPPLEMENT THE AMENDED COMPLAINT**

PATTERSON BELKNAP WEBB
  & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000
aamangi@pbwt.com
hsandick@pbwt.com
globiondo@pbwt.com

SILLS CUMMIS & GROSS P.C.
Jeffrey J. Greenbaum
Katherine M. Lieb
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000
jgreenbaum@sillscummis.com
klieb@sillscummis.com

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .................................................................................................................4

I.     JJHCS's Motion Promotes Judicial Economy ...................................................4

II.    Defendants Fail to Show Undue Prejudice ........................................................5

III.   Defendants Fail to Show Futility .......................................................................5

IV.   JJHCS Can State Claims For Future Violations ...............................................8

V.    Rule 16's Good Cause Standard Does Not Apply ...........................................11

VI.   JJHCS's Allegations Regarding the 2022 Terms Are Proper .........................14

CONCLUSION .............................................................................................................15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abdul-Aziz v. Lanigan*,
 2016 WL 1162753 (D.N.J. Mar. 24, 2016) .......................................................11

*Austar Int'l Ltd. v. AustarPharma LLC*,
 425 F. Supp. 3d 336 (D.N.J. 2019) ......................................................................7

*Barry's Cut Rate Stores Inc. v. Visa, Inc.*,
 2019 WL 7584728 (E.D.N.Y. Nov. 20, 2019) ....................................................9

*Bechtel v. Robinson*,
 886 F.2d 644 (3d Cir. 1989) ................................................................................5

*Garner v. Foster*,
 2018 WL 6573122 (W.D. Wis. Dec. 13, 2018) .................................................15

*Glenside W. Corp. v. Exxon Co., U.S.A.*,
 761 F. Supp. 1118 (D.N.J. 1991) .........................................................................4

*Gov't Emps. Ins. Co. v. Yoo*,
 2019 WL 13536629 (D.N.J. Nov. 5, 2019) .........................................................7

*Lucia v. McClain & Co.*,
 2013 WL 4517976 (D.N.J. Aug. 23, 2013) .........................................................7

*MedWell, LLC v. Cigna Corp.*,
 2023 WL 4045089 (D.N.J. June 16, 2023) .......................................................10

*Mollinger v. Diversified Printing Corp.*,
 1989 WL 115125 (E.D. Pa. Sept. 29, 1989) ......................................................10

*Richard Roe W.M. v. Devereux Found.*,
 650 F. Supp. 3d 319 (E.D. Pa. 2023) ............................................................. 8, 9

*Singh v. Twp. of Weehawken*,
 2023 WL 2523640 (D.N.J. Mar. 15, 2023) .......................................................13

# **TABLE OF AUTHORITIES**
## (continued)

**Page(s)**

*Taylor v. Carco Grp., Inc.*,
  2023 WL 5950476 (D.N.J. Sept. 13, 2023)........................................................12

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)..............................................................................................9

*Trump v. New York*,
  592 U.S. 125 (2020)..............................................................................................9

*Turner v. N.J. State Police*,
  2015 WL 1850001 (D.N.J. Apr. 22, 2015).........................................................12

**Statutes**

N.Y. G.B.L. § 349..................................................................................5, 7, 8

**Other Authorities**

Fed. R. Civ. P. 8.................................................................................................10

Fed. R. Civ. P. 15......................................................................................1, 4, 5, 12

Fed. R. Civ. P. 16.......................................................................................3, 11, 12, 13

## PRELIMINARY STATEMENT

JJHCS's motion to supplement is simple and narrow: as SaveOnSP acknowledges, it "deals exclusively with five proposed new allegations." *See* Greenbaum Decl., Ex. 1 (Nov. 12, 2024 email to the Special Master). And these allegations are similarly straightforward. They state that Defendants are still tortiously interfering with CarePath's terms and conditions—now including the "New Terms," which explicitly prohibit the SaveOnSP program by name.

Defendants do not dispute the underlying facts. They do not dispute that SaveOnSP has demanded discovery from JJHCS regarding the New Terms—a tacit admission that the New Terms are in the case already. And Defendants do not dispute that it is far more efficient for these "five new allegations" to be resolved here, in this action, rather than in a second lawsuit raising the same exact claims against the same exact Defendants. That ought to be the end of it, especially in light of Rule 15's liberal policy of encouraging supplemented or amended pleadings. *See* Dkt. No. 380 at 9, 40.

But Defendants raise a grab-bag of convoluted and nonsensical arguments for why the Court should nevertheless deny leave to supplement. ***First***, Defendants claim that they would be "unduly prejudice[d]" by the new paragraphs, in light of what they describe as JJHCS's "attempts to shut the door on discovery." That characterization is wrong—in fact, both sides agree that there should be additional

discovery on the New Terms. But more important, the concern is moot because the Court has now entered a new schedule extending fact discovery until late 2025. That gives the parties plenty of time to explore any issues relating to the New Terms.

*Second*, Defendants claim that it would be "futile" to add JJHCS's allegations regarding the New Terms. Hardly. SaveOnSP has admitted that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—thereby ensuring that Defendants can keep wrongfully inducing patients to use CarePath assistance in conjunction with the SaveOnSP program. There is nothing "futile" about conforming JJHCS's pleading to account for Defendants' ongoing violations. Nor is Defendants' misconduct somehow excused because they are now putting the onus on sick patients to turn themselves in.

*Third*, Defendants contend that they cannot be held liable for their future tortious interference with the New Terms once those terms are rolled out to additional Janssen drugs. There is no principled basis to draw any such distinction: the New Terms will soon be the same across Janssen's drugs, and Defendants' misconduct will apparently be the same too. Defendants attempt to muddy the waters by invoking such topics as Article III standing and judicial estoppel, but neither doctrine has the slightest relevance to this motion. From day one of this case, JJHCS has alleged ongoing tortious interference, and so Defendants are on notice

that JJHCS seeks relief for past, present, and future interference—both with the old terms and the New, before and after they are implemented for every drug. JJHCS is not obligated to keep its terms and conditions frozen for the duration of this litigation (which is now scheduled to continue until at least 2026). And try as they might, Defendants cannot simply declare themselves immunized from the consequences of their ongoing misconduct.

*Fourth*, Defendants concede that all of the relevant facts concerning the New Terms came into existence after JJHCS moved to amend its complaint in March. But Defendants posit that because the Court did not *grant* JJHCS's motion to amend until October, those new facts became old facts while the motion was sub judice—leading them to the bizarre conclusion that Your Honor should therefore penalize JJHCS by applying a higher Rule 16 standard to the instant motion. This "gotcha" attempt makes no sense. JJHCS was obviously not at liberty to make further updates to its proposed amended complaint after filing it in March. Equally obviously, JJHCS had no control over when its amended complaint would be approved. Regardless, this is an academic debate; even if the Court were to apply the Rule 16 standard, JJHCS easily meets it.

*Finally*, Defendants say that it was improper for JJHCS to "slip in" "new allegations about SaveOn's response to the 2022 Stelara & Tremfya T&Cs." But the two paragraphs cited by Defendants *already* alleged that those terms prohibited the

3

SaveOnSP program, and that SaveOnSP disregarded those terms and wrongfully coerced patients into its program anyway. The new portions of those paragraphs simply provide additional context for those allegations, as a prelude to the discussion of the New Terms (that is, the 2024 terms) in the paragraphs that follow. Defendants can deny the allegations in these paragraphs in their answers, if they wish. But Defendants cannot block JJHCS from asserting these allegations in the first place.

JJHCS's motion should be granted.

## ARGUMENT

### I. JJHCS's Motion Promotes Judicial Economy

Judicial economy is why Rule 15 exists—it "permit[s] the court to deal with the entire dispute at once, rather than in piecemeal fashion." *Glenside W. Corp. v. Exxon Co., U.S.A.*, 761 F. Supp. 1118, 1134 (D.N.J. 1991). But one would not know that from Defendants' opposition, which completely avoids addressing this core issue. That omission is understandable. Defendants have asked this Court to rule that five allegations should not be added to the complaint in this case but must instead be the subject of a separate complaint in follow-on litigation. And by their logic, if JJHCS further updates the CarePath terms and conditions, and Defendants continue to interfere with those terms, JJHCS would presumably need to file yet another new lawsuit. This outcome is so absurd on its face that Defendants do not even try to defend it.

## II. Defendants Fail to Show Undue Prejudice

Prejudice is the "touchstone" of any Rule 15 analysis, *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989), and Defendants have no credible basis to cry prejudice here. They speculate that they may not have enough time "to conduct even basic discovery" regarding the New Terms, Opp. at 9, but in fact SaveOnSP has already served discovery requests relating to the New Terms. *See* JJHCS Mot. at 17; *see also* Mangi Decl., Exs. 13 & 14. And SaveOnSP has done so because it contends that the New Terms are relevant to its mitigation defense. *See* Mangi Decl., Ex. 11. In other words, SaveOnSP has been and will be seeking discovery related to the New Terms regardless of this motion's outcome. ESI and Accredo, meanwhile, have plenty of time to seek the same discovery; their requests of JJHCS are not due for almost two months. *See* Dkt. No. 454. And particularly given that the Court has now entered a new schedule extending fact discovery until late 2025, *see id.*, Defendants' assertion that they will not have sufficient time to take discovery related to the New Terms rings hollow.

## III. Defendants Fail to Show Futility

This Court has already held that JJHCS's existing allegations state a claim for tortious interference of contract, as well as claims under New York General Business Law Section 349 ("Section 349"). *See* Op. & Order, Dkt. 68, at 12–16. JJHCS's proposed supplement simply adds that Defendants' unlawful conduct continues

5

undeterred by the latest version of CarePath's terms and conditions, which prohibit the SaveOnSP program by name. *See* SAC ¶¶ 181–83.

This time is different, Defendants say, because "SaveOn tells patients to call J&J and disclose that they are on SaveOn-advised plans." Opp. at 7. That fact is, in Defendants' telling, a silver bullet: it means that they are not inducing patients to violate their contracts, they have not acted with malice, and JJHCS has suffered no damage. Of course, the Court cannot make findings of fact and conclusions of law on each of these points at the pleading stage. And even if it could, Defendants' self-exoneration would still fail for the simple reason that SaveOnSP admits that, as JJHCS alleges, ███████████████████████████████████████████. *See* Opp. at 7. That means that every patient who does not report to JJHCS that they are in the SaveOnSP program will still receive CarePath funds in violation of the CarePath terms and conditions, just as before—with Defendants still reaping hundreds of millions of dollars in profit.

Defendants know full well that many if not most patients will never call JJHCS, and SaveOnSP does not even attempt to defend its decision to leave the relevant drugs on its drug list. Indeed, JJHCS has alleged that, upon information and belief, SaveOnSP is "anticipating that few patients will take any action in response" to SaveOnSP's communications and that SaveOnSP is just "attempt[ing] to foist responsibility for its misconduct onto patients," SAC ¶ 183—allegations that

6

the Court must "accept as true" here, *Gov't Emps. Ins. Co. v. Yoo*, 2019 WL 13536629, at *2 (D.N.J. Nov. 5, 2019). JJHCS therefore sufficiently alleges that Defendants continue to intentionally interfere with JJHCS's contracts and that they damage JJHCS "without justification or excuse," which states a claim for tortious interference with contract. *E.g.*, *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 359 (D.N.J. 2019).

SaveOnSP declares, in a footnote, that it "understands from its conversations with plan members that hundreds of them called J&J." Opp. at 8, n.3. JJHCS disputes this factual assertion, and the Court cannot resolve a factual dispute on this motion. *See Lucia v. McClain & Co.*, 2013 WL 4517976, at *11 (D.N.J. Aug. 23, 2013). In any event, there are thousands of patients in the SaveOnSP program who receive the drugs at issue. Thus, even if one were to assume that dozens or hundreds of affected patients called JJHCS, there would still be many patients who have not and are still receiving CarePath funding in violation of the New Terms. Defendants commit a tort each time every one of those patients uses CarePath funds through the SaveOnSP program. *See* Dkt. No. 68 at 15; *see also* Dkt. No. 380 at 37–40.

Defendants also ignore that, as JJHCS explained in its opening brief, the supplemental allegations support JJHCS's Section 349 claim as well because SaveOnSP, through its response to the New Terms, "continues to cause patients undue stress and confusion, forcing them to address a problem that SaveOnSP has

7

created and casting doubt on whether patients will have access to their critical medications." JJHCS Mot. at 15. Defendants have no response and thus effectively concede that, at the very least, JJHCS's motion is not futile with respect to JJHCS's Section 349 claim.

## IV. JJHCS Can State Claims For Future Violations

Defendants insist that JJHCS cannot assert claims based on future violations of the CarePath terms and conditions. They argue both that JJHCS's claims based on the New Terms are not within the scope of the prior pleadings, and that the proposed supplemental pleading cannot allege claims for further future violations. The Court should reject both suggestions.

As an initial matter, Defendants are wrong that JJHCS has no Article III standing to seek relief related to future violations of the CarePath terms and conditions, especially violations of the same language that JJHCS has already added as part of the New Terms. "[W]ell-pled claims of past harm coupled with a policy, pattern, or practice that suggests those harms are likely to recur meet the actuality or imminence requirement." *Richard Roe W.M. v. Devereux Found.*, 650 F. Supp. 3d 319, 329 (E.D. Pa. 2023). That is the case here.

JJHCS has alleged that Defendants, as part of an ongoing, years-long scheme, have been tortiously interfering with JJHCS contracts "every time [patients] use CarePath funds while enrolled in the SaveOnSP Program." Am. Compl. ¶ 185.

8

JJHCS has further alleged that Defendants have continued to engage in ongoing tortious conduct, even after JJHCS has updated the CarePath terms and conditions to make clear that, as has always been the case, patients in the SaveOnSP program are ineligible for CarePath funds. *See id.* ¶¶ 178–81. Defendants' ongoing misconduct in the face of these changes more than suggests that they "are likely to recur." *Richard Roe*, 650 F. Supp. 3d at 329. This is not, as Defendants argue, a case involving "a mere risk of future harm," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 437 (2021), or one "riddled with contingencies and speculation," *Trump v. New York*, 592 U.S. 125, 131 (2020). JJHCS is suffering actual, ongoing harm, and it "need not wait to be victimized further to seek forward-looking relief." *Richard Roe*, 650 F. Supp. 3d at 333; *see also Barry's Cut Rate Stores Inc. v. Visa, Inc.*, 2019 WL 7584728, at *21 (E.D.N.Y. Nov. 20, 2019) (plaintiffs have standing when they "have sufficiently alleged an ongoing injury that will continue to injure them in the future").

The Court should likewise reject Defendants' suggestion that, even if JJHCS has standing, it still cannot state a claim for tortious interference based on future violations of the CarePath terms and conditions. Since its original Complaint in this lawsuit, JJHCS has alleged "ongoing and future" tortious interference. Compl. ¶ 105; Am. Compl. ¶ 181. This Court has already denied SaveOnSP's attempts to dismiss the original Complaint, Dkt. No. 68 at 15–16, and it has rejected Defendants'

9

futility arguments with respect to the Amended Complaint as well, Dkt. No. 380 at 25–40. Defendants cannot now be heard to challenge JJHCS's ability to seek relief with respect to Defendants' future tortious interference.

Defendants' argument also fails on the merits. Defendants contend that JJHCS cannot state a claim for tortious interference based on a contract that does not yet exist, citing cases in which courts have dismissed tortious interference claims because the complaint did not identify "any contract or the terms thereof" with sufficient particularity. *MedWell, LLC v. Cigna Corp.*, 2023 WL 4045089, at *3 (D.N.J. June 16, 2023); *see also* Opp. at 16. In such situations, the "Rule 8 requirement of fair notice" is not satisfied because defendants will not know "the specific contractual relations which [they] allegedly interfered with." *Mollinger v. Diversified Printing Corp.*, 1989 WL 115125, at *7 (E.D. Pa. Sept. 29, 1989).

That is a far cry from the allegations here. To begin with, the Supplemented Amended Complaint clearly identifies contractual provisions that Defendants are tortiously interfering with (*i.e.*, the New Terms) and alleges ongoing violations. And more broadly, JJHCS has long alleged that Defendants are interfering—and continue to interfere—with provisions in the CarePath terms and conditions that prohibit patients from being enrolled in the SaveOnSP program while using CarePath. *See* Am. Compl. ¶¶ 184–85. Defendants are thus fairly on notice that, to the extent that

10

they tortiously interfere with future patient contracts that contain the New Terms, they are engaging in misconduct for which JJHCS is seeking relief.

Contrary to Defendants' suggestion, this does not require application of the continuing violation doctrine. Opp. at 14. That doctrine, as Defendants acknowledge, "is an equitable exception to the limitations period," which is not at issue here. *Abdul-Aziz v. Lanigan*, 2016 WL 1162753, at *7 (D.N.J. Mar. 24, 2016) (Wolfson, J.). The doctrine is certainly not needed to allege forward-looking claims. And there is no inconsistency between JJHCS's allegation that Defendants commit distinct torts with respect to "every contract that [JJHCS] has entered into with every patient enrolled in the SaveOnSp program," Dkt. No 380 at 37–38, and JJHCS's forward-looking claims. As explained above, JJHCS has adequately alleged that Defendants have been committing repeated tortious acts for years, with no indication of stopping absent judicial intervention. In light of such recurring tortious activity, JJHCS is entitled to seek relief for the ongoing and future torts that Defendants are committing, and Defendants are plainly on notice of these claims.

## V. Rule 16's Good Cause Standard Does Not Apply

Defendants apparently agree that a motion to ***supplement*** is not subject to the deadlines governing motions to ***amend***. *See* JJHCS Mot. at 11–14. Rather, they argue that JJHCS's motion should be construed as a motion to amend and thus must meet Rule 16's good cause standard. Not so. Supplemental pleadings are those that

11

include events "that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). JJHCS's proposed additions to the Amended Complaint concern developments that happened after the date JJHCS submitted its then-proposed Amended Complaint to the Court on March 14, 2024.

That is the relevant date here—not October 2, 2024, as Defendants argue. That is the date on which JJHCS's proposed Amended Complaint was "frozen"; JJHCS was not permitted to make more tweaks to the Amended Complaint while the Court was considering whether to grant leave. Similarly, the timing of the Court's decision to grant JJHCS's motion was not in JJHCS's hands.[1]

Even if the Court were to buy Defendants' contorted timing-based contentions, they are academic because JJHCS also meets the Rule 16 good cause standard. Under that standard, "courts typically ascertain whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *Taylor v. Carco Grp., Inc.*, 2023 WL 5950476, at *1 (D.N.J. Sept. 13, 2023). As

---

[1] The principal case on which Defendants rely—*Turner v. N.J. State Police*, 2015 WL 1850001, at *7 (D.N.J. Apr. 22, 2015)—is inapposite. *Turner* concerned a litigant who had previously filed multiple, rejected supplemental pleadings and, in defiance of multiple court orders, had filed a proposed, third supplemental pleading that still included facts pre-dating the operative pleading identified in the prior court orders. *Id.* at *7. The court in *Turner* did not consider whether allegations concerning events post-dating the filing of a proposed amended complaint but pre-dating the official filing of that amended complaint are properly classified as supplements or amendments.

12

JJHCS explained in its opening brief, the "Rule 16 good cause analysis is straightforward" when a plaintiff, like JJHCS here, seeks to add allegations regarding developments that post-date the amendment deadline. *Singh v. Twp. of Weehawken*, 2023 WL 2523640, at *3 (D.N.J. Mar. 15, 2023); *see also* JJHCS Mot. at 14 n.5. That is because "no measure of diligence could have allowed" JJHCS to meet that deadline. *Singh*, 2023 WL 2523640, at *3.

JJHCS also acted diligently. SaveOnSP first disclosed its response to the New Terms on August 27, 2024, when SaveOnSP stated in a supplemental interrogatory response that, ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. *See* Mangi Decl., Ex. 6 at 6. Following that disclosure, JJHCS further conferred with SaveOnSP regarding the relevance of the New Terms to the claims and defenses in this case—and thus whether a motion to supplement would even be necessary. *See* Mangi Decl., Ex. 15. SaveOnSP then took the position that the New Terms are in the case for purposes of its mitigation defense. *See* Mangi Decl., Ex. 11 at 1. It nonetheless maintained that the New Terms are ***not*** in the case for JJHCS's use, but only SaveOnSP's, a position SaveOnSP confirmed on October 3, 2024. *See* Mangi Decl., Ex. 12 at 1.[2] That same

---

[2] SaveOnSP argues that it informed JJHCS on August 2, 2024, of its position that the New Terms are irrelevant. Opp. at 12, n.5. But at that point, SaveOnSP had still not disclosed its response to the New Terms. Moreover, SaveOnSP then backtracked on its initial position; it eventually arrived at arguing that the New Terms are in the case for purposes of SaveOnSP's mitigation defense. *See* Mangi Decl., Ex. 11. Only on

13

day, JJHCS informed SaveOnSP that it would be filing the instant motion, which JJHCS then filed on October 7, 2024—to accommodate SaveOnSP's request for more time to consider its position. *See* Mangi Decl., Ex. 17. On this record, there is no basis to quarrel with JJHCS's diligence.

Defendants assert that JJHCS could have filed this motion "months ago" because, according to them, JJHCS knows which patients are on SaveOnSP-advised plans and thus JJHCS knew that those patients were still drawing copay assistance funds even after the launch of the New Terms. Opp. at 11. This is a rich argument, given that SaveOnSP went to great pains to secure a ruling from Judge Waldor that the list of SaveOnSP patients could ***not*** be shared with JJHCS's business personnel. *See* Dkt. No. 109 at 7–11. As a consequence of that ruling, the fastest way for JJHCS to ascertain SaveOnSP's program-wide response to the New Terms was to just ask SaveOnSP directly—which is precisely what JJHCS did. *See* Mangi Decl., Ex. 7.

## VI. JJHCS's Allegations Regarding the 2022 Terms Are Proper

Defendants finally fault JJHCS for adding more detail to two paragraphs (179 and 180) regarding the 2022 version of the CarePath terms and conditions. But those details simply provide context for the supplemented allegations that follow regarding further changes that JJHCS made to the CarePath terms and conditions in 2024.

---

October 3, 2024 did SaveOnSP confirm that, despite taking the position that the New Terms are relevant to SaveOnSP's defense, it still did not agree that the New Terms are relevant to JJHCS's claims. *See* Mangi Decl., Ex. 12.

14

There is nothing new or prejudicial about any of this—paragraph 179, for example, references language from public marketing materials that were ***already*** cited in the existing pleadings.  *See* SAC ¶ 179; *see also* Am. Compl. ¶ 12.  Likewise, the revised paragraph 180 does not allege any new claims—it just details SaveOnSP's interference with the 2022 terms and conditions, which were then further supplemented in 2024.  It was entirely proper for JJHCS to include such "additional background details," which "provide additional context, but … do not state new claims against the defendants."  *Garner v. Foster*, 2018 WL 6573122, at *3 (W.D. Wis. Dec. 13, 2018) (allowing party to add such details to amended complaint).

## CONCLUSION

JJHCS respectfully requests that the Court grant it leave to file the Proposed Supplemented Amended Complaint.

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:   s/ Jeffrey J. Greenbaum
JEFFREY J. GREENBAUM
KATHERINE M. LIEB

PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo

15

                                      1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff Johnson & Johnson Health Care Systems Inc.*

Dated: November 26, 2024