HARTMANN DOHERTY
ROSA BERMAN & BULBULIA
Limited Liability Partnership    Attorneys At Law

433 Hackensack Avenue, Ste. 1002
Hackensack, New Jersey 07601
t: 201.441.9056
f: 201.441.9435
www.hdrbb.com

New York Office
1270 Avenue of the Americas, Ste. 816
New York, New York 10020
t: 212.344.4619

Short Hills Office
830 Morris Turnpike, Ste. 304
Short Hills, New Jersey 07078
t: 973.467.1325

Rockland Office
2 Executive Boulevard, Ste. 300
Suffern, New York 10901
t: 845.357.7900

Miami Office
8821 SW 69th Court
Miami, Florida 33156
t: 305.419.2936

December 20, 2024

**VIA EMAIL ONLY**

Hon. Freda L. Wolfson
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

Re:    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC, et al.*
       Civil Action No. 22-2632 (JKS)(CLW)

### Express Scripts & Accredo's Opposition to JJHCS's Motion to Seal

Dear Judge Wolfson:

Having offered Johnson & Johnson Health Care Systems Inc. ("JJHCS") a reasonable compromise to replace the specific financial figures at issue with phrasing using only estimates (which JJHCS rejected), Defendants Express Scripts, Inc. ("Express Scripts") and Accredo Health Group, Inc. ("Accredo") (collectively, "Defendants") write in opposition to JJHCS's Motion to Seal the entirety of a key sentence of paragraph 131 of Defendants' affirmative defenses. JJHCS[1] has not met its burden to overcome the presumption of public access to financial information indicating Johnson & Johnson realized a return on its investment in copay assistance programs. Accordingly, JJHCS's motion should be denied.

### ARGUMENT

It is well settled that there is "a common law public right of access to judicial proceedings and records." *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001). This strong presumption of public access applies to pleadings such as the affirmative defenses at issue here. *United States v.*

---

[1] Defendants agree JJHCS may address the issue of sealing regarding the information extracted from a document belonging to the Janssen Pharmaceutical Companies of Johnson & Johnson (hereinafter "Johnson & Johnson").

Hon. Freda L. Wolfson
December 20, 2024
Page 2

*Martin*, 746 F.2d 964, 968 (3d Cir. 1984). "The party seeking to overcome the presumption of access bears the burden of showing 'that the interest in secrecy outweighs the presumption.'" *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 372 (3d Cir. 2019) (quoting *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)). To do so, the party seeking confidentiality must demonstrate good cause by establishing that disclosure will cause a "clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)). Local Rule 5.3 requires the moving party to address four factors: (a) the nature of the materials or proceedings at issue; (b) the legitimate private or public interest which warrants the relief sought; (c) the clearly defined and serious injury that would result if the relief sought is not granted; and (d) why a less restrictive alternative to the relief sought is not available.

    **A.    The Nature of The Information at Issue Does Not Warrant Redaction**

JJHCS fails to provide a sufficiently detailed description of the information it seeks to seal. Under Local Rule 5.3(c)(3), the moving party must describe "with particularity" the nature of the materials at issue as a part of its motion to seal. To demonstrate the first factor, a party is required to identify the materials they wish to have sealed and provide information as to the nature of those materials. *See Horizon Pharma AG v. Watson Lab'ys Inc.-Fla.*, No. CV 13-5124 (JEI/JS), 2015 WL 12859244, at *1 (D.N.J. Sept. 14, 2015).

JJHCS relies upon conclusory legal statements in their attempt to avoid identifying even the most basic nature of the financial information at issue. Specifically, JJHCS offers nothing more than a bald statement of counsel that the information in paragraph 131 includes "'critically sensitive and not publicly available financial figures' regarding the CarePath program" (Doc. 462

Hon. Freda L. Wolfson
December 20, 2024
Page 3

at 2 (quoting *Gonzalez v. Bob's Disc. Furniture*, No. 316CV3904PGSLHG, 2017 WL 11582047, at *2 (D.N.J. Jan. 25, 2017)).

Further, what little detail JJHCS ultimately does provide regarding the information's origin is unfortunately not quite accurate. JJHCS claims that the "highly confidential financial metrics" are pulled from a "draft" internal JJHCS presentation marked with the Attorneys' Eyes Only ("AEO") designation[2] (Doc. 462 at 1-2). The information contained in paragraph 131 is not found in just one document produced by JJHCS but in at least 15 documents including two different presentations.[3] While these presentations are uniformly marked as drafts, metadata and associated cover emails show that, despite the label, the slide with this information was included in two different final presentations. *See, e.g.*, JJHCS_00251057, JJHCS_00156896.

Even then, JJHCS fails to explain this "financial information" or these "financial metrics."[4] It is JJHCS's burden to explain with sufficient specificity the information such that the court may

---

[2] To the extent JJHCS suggests Express Scripts and Accredo could have challenged the AEO designations of these documents, "it is well-settled that merely because a document is designated 'confidential' pursuant to a Discovery Confidentiality Order does not necessarily mean that the document satisfies the criteria for sealing pursuant to Local Civil Rule 5.3." *Puma Biotechnology, Inc. v. Sandoz Inc.*, No. 21-19918 (RMB)(EAP), 2022 WL 17824076, at *2 (D.N.J. Dec. 20, 2022) (finding that plaintiff's generalized statements and argument that the information was "highly confidential" under the order did not warrant sealing). Further, Defendants have only recently been added to this years' old litigation. Since joining the litigation, however, Defendants have learned that *more than 95%* of all of JJHCS's designated documents, or *over 80%* of all documents, have been marked AEO. As such, Defendants may very well challenge some of these designations.

[3] JJHCS_00139822, JJHCS_00140478, JJHCS_00140485, JJHCS_00140699, JJHCS_00142660, JJHCS_00142803, JJHCS_00145568, JJHCS_00156898, JJHCS_00107134, JJHCS_00167339, JJHCS_00167472, JJHCS_00167537, JJHCS_00227657, JJHCS_00236543, JJHCS_00251058. Defendants provide the bates numbers here, and elsewhere, for reference. Defendants, like JJHCS, are happy to provide the Court with copies of these documents if doing so would facilitate the Court's review.

[4] JJHCS "disputes" Defendants' characterization of these figures but does nothing to explain the basis of its dispute or why the interpretation is incorrect (Doc. 462 at 3).

determine if JJHCS has a legitimate interest or would be seriously injured. JJHCS has not done so and the court may deny its motion for this reason alone.

      **B.**      **JJHCS Has No Legitimate Interest In Seeking The Information's Redaction**

JJHCS cannot establish a legitimate interest warranting the redaction of a key sentence of paragraph 131 or the precise dollar amounts contained within. Local Rule 5.3(c)(3)(b) requires the moving party to describe the legitimate private or public interest which warrants the relief sought. This factor is often utilized to weigh legitimate private interests against the public's general interest in disclosure. *Castellani v. City of Atl. City*, 102 F. Supp. 3d 657, 668–69 (D.N.J. 2015) (citing *Pansy*, 23 F.3d at 788). Legitimate private interests include "business agreements, trade secrets or commercial information" the disclosure of which could "be used for the improper purpose of causing harm to the litigant's competitive standing in the marketplace." *Bock v. Pressler & Pressler, LLP*, No. CIV.A. 11-7593 KM, 2014 WL 1233039, at *3 (D.N.J. Mar. 25, 2014) (internal quotation marks omitted).

JJHCS has not met its burden of proving that the information contained in Paragraph 131 represents a legitimate private interest either as a trade secret or commercial information. The public is aware of the subject matter of the sentence and its general principle — that drug manufacturers, like Johnson & Johnson, earn a return on copay assistance programs. That is, for every dollar a drug manufacturer invests in programs like CarePath, they realize significant profits. *See* Leemore Dafny, et al., *When Discounts Raise Costs: The Effect of Copay Coupons on Generic Utilization*, (Nat'l Bureau of Econ. Rsch., Working Paper No. w22745, 2016), https://ssrn.com/abstract=2853241 (collecting sources). Public estimates on the return on investment in these programs range anywhere from 4:1 to 7:1. *Id.* Ultimately, information that "may be gleaned from public sources" is "not the sort of information that justifies stripping the

public of its right to access." *See Jewitt v. IDT Corp.*, No. CV 04-1454 (JCL), 2004 WL 7321367, at *3 (D.N.J. Aug. 9, 2004). Johnson & Johnson does not have a legitimate privacy interest in a business practice that is already public.

As to the precise dollar amounts invested or amount of return realized in the various copay assistance programs here, JJHCS has not established, by declaration or other otherwise, that their estimated spend and return on investment on copay assistance could be used by competitors in the marketplace to gain an unfair competitive advantage to justify the sealing of such information. *See Gordian Med., Inc. v. Vaughn*, No. CV 22-319-MN-SRF, 2023 WL 2930257, at *2 (D. Del. Apr. 13, 2023) ("These conclusory allegations, which are not supported by a declaration or any supporting documents, do not . . . show that the information sought is a trade secret or that disclosure of the secret might be harmful.").

Contrary to JJHCS's contention, a legitimate private interest does not materialize simply because specific financial metrics are involved. Indeed, none of the cases cited by JJHCS support this proposition. Rather, these cases highlight that documents and financial figures considered to be trade secrets are those that competitors could use to gain a competitive advantage. *See Jewitt*, 2004 WL 7321367 at *3 (noting that the dollar amount of the per minute rate was the "sort of detailed information [that] could enable competitors to undercut [Defendant]" and Defendant established that "this information could allow competitors to offer services at prices below those charged by [Defendant]."); *Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. CV 11-1083 (RMB/KMW), 2016 WL 1394347, at *7 (D.N.J. Apr. 7, 2016), *aff'd,* 745 F. App'x 452 (3d Cir. 2018) (finding defendants had a legitimate private interest in keeping their "financial data that reveals their profit margins or costs in specific amounts" sealed from the public and their competitors "to ensure their competitiveness in the marketplace" because "[e]mpowered with the

[defendants'] profitability data, a competitor could use that information to gain an advantage in pricing."); *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, No. CV156210KMMAH, 2017 WL 6638204, at *2-*3 (D.N.J. Dec. 29, 2017) (permitting the redaction of confidential agreements between defendant and its third-party clients, of confidential finder's fees and sales representation agreements between the parties, and of defendant's net income statements upon detailed description and a clearly defined and serious injury supported by declaration). There is little or no risk of a competitor obtaining a competitive advantage here — public disclosure of Johnson & Johnson's successful investment in copay assistance does not provide a roadmap for how or why it was successful and paragraph 131 does not reveal any specific methods or business strategies that Johnson & Johnson used to obtain this return on investment. In any event, JJHCS placed these issues in the public sphere, significantly increasing the public's interest in them such that it would outweigh any private interest, by bringing claims based on allegations of public harm and by simultaneously contending to be acting to protect patients.

Nevertheless, JJHCS's request is not truly aimed at concealing the exact figures, but at preventing *any* disclosure of expenditures (or profit) related to copay assistance programs. JJHCS purports to redact the sentence "because it discloses highly confidential financial metrics." If this were the case, whatever potential privacy interests JJHCS has in this material would be protected by addressing just the specific dollar values. However, JJHCS rejected Express Scripts and Accredo's pre-filing proposal to modify the sentence in paragraph 131 to phrasing using only reasonable estimates (*i.e.* hundreds of millions, nearly one billion). This is because such disclosure does not support JJHCS's curated narrative of this case or of these programs. JJHCS cannot address its general concern regarding reputational harm with an alleged privacy interest that it does not actually seek to protect.

### C. JJHCS Has Not Shown How It Will Be Injured By Disclosure of The Information

JJHCS, and certainly Johnson & Johnson, may prefer that information indicating the extent to which it extracts massive returns on its investment in copay assistance programs not be disclosed, but JJHCS has not specified how it will be competitively *injured*, a necessary requisite for sealing. "In delineating the injury to be prevented, specificity is essential." *In re Avandia,* 924 F.3d at 673. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Pansy*, 23 F.3d at 786 (internal quotation marks omitted).

Rather than providing examples or analysis, JJHCS offers the court another blanket assertion — "This risk of commercial injury warrants sealing" (Doc. 462 at 4). Without defining "this risk," JJHCS seems to be referring to two cases it cites earlier in the section, both of which are inapposite here.

*First,* JJHCS points to *Goldenberg* for the general proposition that courts within the Circuit "have … repeatedly found serious harm in disclosing financial information which would injure a party's standing in the competitive marketplace." *Goldenberg v. Indel, Inc.*, No. CIV. 09-5202 JBS/AMD, 2012 WL 15909, at *3 (D.N.J. Jan. 3, 2012). JJHCS seems to suggest by parenthetical only that the return on investment figures here would cause it similar serious harm — competitor knowledge of how it structures its business internally — as the court found the documents in that case would cause the movants (Doc. 462 at 4). At issue in *Goldenberg*, however, were business agreements, financial spreadsheets showing calculations of payments made among non-party affiliated entities, and private email exchanges regarding private financial information. 2012 WL 15909, at *3. The court found the resulting clear and serious injury tied to the depth and breadth

Hon. Freda L. Wolfson
December 20, 2024
Page 8

of these documents as competitors would have access to specific terms of the movants' agreements, be able to review financial calculations between the affiliated entities, and thus learn sensitive information about how they structure their business internally. *Id.* at 4. The figures here simply do not compare in breadth, depth or continued significance, and JJHCS has not similarly tied them in any way to their business structure, by declaration or otherwise.

*Second*, JJHCS cites to *Boehringer* purportedly for the suggestion that "financial data" in the pharmaceutical industry should be afforded special protection. *Boehringer Ingelheim Pharma GmbH & Co. KG v. Mylan Pharms.,* Inc., No. CIV. 14-4727 NLH/KMW, 2015 WL 4715307, at *2 (D.N.J. Aug. 7, 2015). While the court there did seal "highly proprietary financial data regarding sales and revenue information" of an entity and its parent company, it did so with limited analysis. Additionally, and of special note, the quote relied upon by JJHCS is taken from a movant's declaration, not an opinion of the court. Id. Nonetheless, allegations of harm, even in the pharmaceutical industry, supported only by broad and conclusory statements are insufficient. See Supernus Pharms., Inc. v. Actavis, Inc., No. CIV. 13-4740 RMB/JS, 2014 WL 6474039, at *2-3 (D.N.J. Nov. 18, 2014) (denying a pharmaceutical company's motion to seal supported solely by "general and conclusory statements" of harm from the disclosure of "trade secret and other confidential research, development, commercial, and technical information").

Ultimately, JJHCS fails to provide more than broad, conclusory statements to explain how its financial information could "harm [its] competitive standing." In re Avandia, 924 F.3d at 679. At most, this information will cause JJHCS embarrassment and, potentially, reputational injury, which is insufficient to rebut the presumption of public access. *Id.* (collecting cases) ("Mere embarrassment is insufficient to overcome the strong presumption of public access inherent in the common law right.").

Hon. Freda L. Wolfson
December 20, 2024
Page 9

### D. JJHCS's Proposal Would Not Be the Least Restrictive Means

Because JJHCS's has failed to meet its burden to overcome the strong presumption in favor of public access, Defendants maintain that redaction of this key sentence in paragraph 131 of the Affirmative Defenses is not warranted. *See J.A. v. Monroe Twp. Bd. of Educ.*, 2024 WL 1827320, at *3 (D.N.J. Apr. 25, 2024) (redaction is unnecessary where party fails to show why redaction is "necessary to protect the cited privacy interests at stake"). Nonetheless, if the court determines JJHCS has met its burden, JJHCS has failed to propose the least restrictive means of protecting its privacy interests in this financial information. Again, JJHCS seeks to redact this sentence "because it discloses highly confidential financial metrics." Therefore, whatever potential privacy interests JJHCS has in this material can be protected by redacting just the specific dollar values, or through the proposed compromise JJHCS rejected. As previously mentioned, the remaining principles are publicly accessible. Accordingly, even if JJHCS had met its burden—and it has not—the appropriate solution would be redaction of just those specific amounts, or the alternative language JJHCS rejected. *See Bock*, 2014 WL 1233039, at *3 (denying motion to seal because movant's interests could be adequately served by filing a more narrowly tailored redacted copy of the document at issue).

### CONCLUSION

For the above stated reasons, JJHCS's motion to seal should be denied and Express Scripts' and Accredo's Answers and Affirmative Defenses should be unsealed in their entirety.

Respectfully submitted,

Mark A. Berman, Esq.

cc: All Counsel of Record (via email only)