# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

September 19, 2024

**<u>VIA E-Mail</u>**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

      Re:    *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
               **No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Save On SP, LLC ("<u>SaveOn</u>"), we write in reply to Plaintiff Johnson & Johnson Health Care Systems, Inc.'s ("<u>JJHCS</u>," and, with its affiliates, "<u>J&J</u>") opposition to SaveOn's motion to compel J&J to add Joseph Incelli and Norhaan (Nora) Khalil as custodians and to run a set of tailored search terms over their files. The discovery record shows that Incelli and Khalil are each likely to have unique, relevant documents.[1]

---

[1] Instead of simply engaging with the merits of SaveOn's request, J&J offers a series of unsubstantiated atmospheric attacks. *First*, J&J says that SaveOn is pursuing "salami tactics" by moving to compel the addition of Incelli and Khalil while negotiating with J&J to add other custodians, Opp. at 1, but there is nothing unusual about a party raising issues as they arise (as both J&J and

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                                                    Page 2

## I.      Incelli and Khalil Are Likely To Have Unique, Relevant Documents

J&J agrees with the basic facts that establish the relevance of Incelli and Khalil: Incelli, a

finance specialist, worked on CarePath and the CAP program, Opp. at 4, 6-7, while Khalil "liaised"

between J&J and the vendors who conducted relevant studies regarding ███████████████

███, *id.* at 8. J&J seeks to cast their involvement in its mitigation efforts as "tangential," *id.* at

7, 10, and their documents as duplicative of those produced from other custodians, *id.* at 2-3, but

J&J's documents show otherwise.

### A.      Incelli

J&J concedes that Incelli worked on CarePath. *Id.* at 4. ███████████████████



_____

SaveOn have done throughout this case). SaveOn first requested that J&J add Khalil and Incelli
nearly three months ago; J&J refused to add them, the parties are at impasse, and there is no reason
to further delay resolution of this issue. *Second*, J&J asserts that SaveOn is trying to forestall trial,
Opp. at 2, but adding custodians is unlikely to impact the case schedule, as J&J has said that it
wants a longer discovery period because of its decision to add ESI and Accredo as defendants, *see*
Ex. 7 at 233:16-25 (July 15, 2024 Hr'g Tr.). *Third*, J&J complains about the number of custodians
it has already designated and the documents that it has already produced, Opp. at 3, but J&J has
still reviewed only a small fraction of the more than 1.2 million documents that SaveOn has re-
viewed, and it continues to seek additional discovery from SaveOn. *Fourth*, J&J says that it tried
to find "compromise resolutions," Opp. at 4, but this consisted of offering to add Incelli as a cus-
todian if SaveOn would add one more custodian, *see* Ex. 2 at 3 (July 18, 2024 Email from, J. Long
to M. Nussbaum), then offering to add Khalil if SaveOn would add seven more custodians, *see* Ex.
34 (July 25, 2024 Email from J. Long to K. Cryan). SaveOn properly declined both offers, as the
individuals whom J&J named were unlikely to have unique, relevant documents—unlike Incelli
and Khalil. *See* Ex. 4 (Aug. 16, 2024 Email from K. Cryan to J. Long).

Hon. Freda L. Wolfson                                                                Page 3



Despite this, J&J implausibly contends that Incelli only "occasionally worked on issues related to aspects of CarePath" and that he was not a "core member" of the team responsible for CAP. Opp. at 4, 6.[2]



Hon. Freda L. Wolfson                                                                    Page 4



J&J tries to withhold Incelli's documents by asserting that Your Honor's February 6, 2024 Order "limited discovery into finance-related issues," Opp. at 4, but that Order did not address the financial information at issue here—███████████████████████████████████████████ ████████████████████████████  As Your Honor explained, J&J's financial information is relevant when it affects "the [CarePath] program itself." Ex. 40 at 68:8-10 (Jan. 24, 2024 Hr'g Tr.). While J&J misleadingly argues that SaveOn already has data on how much copay assistance J&J **actually paid** to its patients, Opp. at 5-6, SaveOn seeks Incelli's analyses to understand different topics: (1) how much copay assistance J&J **intended to pay**—which J&J put at issue as the basis of its damages, Compl. ¶¶ 110, 115; Prop. Am. Compl. ¶¶ 186, 192, 203 (alleging that SaveOn damaged J&J by causing it to pay more than it intended in CarePath funds); and ██████ ████████████████████████████████████████████████████████████████████████████████ ██████████████, see, e.g., O'Brien v. Biobanc USA, 2011 WL 2532465, at *7-8 (D.N.J. June 23,

─────────────────

[4] ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████

Hon. Freda L. Wolfson                                                        Page 5

2011) (ordering an evidentiary hearing to determine the value of a mitigating measure when cal-

culating damages).[5]

      J&J also offers several arguments that Incelli's documents will be duplicative of existing

discovery. ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████

         ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

---

[5] J&J claims that SaveOn is not entitled to "every possible document…that may bear on hypothet-
ical [mitigation] steps," Opp. at 5, but Incelli's documents concern J&J's *actual* mitigation steps—
the CAP program.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████

Finally, J&J asserts that it has already reviewed 54,000 documents responsive to CAP-
related search terms, Opp. at 5, but this cannot justify withholding unique documents relevant to a
mitigation defense that could dispense with hundreds of millions of dollars in purported damages.

**B.    Khalil**

J&J does not dispute that Khalil was the point person for two studies ████████████████

████████████████████████████████████████. Mot. at 6-8. Her files are
relevant to J&J's mitigation efforts and, importantly, its credibility. ████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████ J&J's allegations in its orig-
inal Complaint and its Amended Complaint that SaveOn violates the ACA and harms patients. *See*
Compl. ¶ 59, 114; Am. Compl. ¶ 84, 202. SaveOn is entitled to test J&J's knowledge of the falsity
of its allegations.

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████

       J&J tries to minimize the relevance of the studies. ████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

---

[6] J&J asserts that SaveOn did not accept its "offer" to produce the final version of ████████████
study or the underlying data for both studies, Opp. at 10 & n.2, but J&J never made such an offer.
J&J rather "agree[d] to investigate the existence of underlying data associated with both studies
and to produce the final ██████████████████ without condition. Ex. 27 at 6-7 (Aug. 13,
2024 Ltr.).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

       ████████████████████████████████████████████████

████████████████████████████████████████  █

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████  Because J&J allowed the recordings of these presentations

to be destroyed, Khalil's files are the best available means of showing how these slides were pre-

sented or received at all. *See* Ex. 42 at 1-2 (May 31, 2024 Ltr. from J. Long to E. Snow) (explaining

that J&J only extended its litigation hold to Zoom recordings in April 2024 when SaveOn specif-

ically requested those files); ████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████

## II.   The Requested Search Terms Are Appropriate

       Although SaveOn asked J&J, for months, to provide hit counts for its proposed search

terms, *see* Ex. 25 at 6 (June 28, 2024 Ltr.), J&J did not do so, instead waiting to reveal them for

---

[7] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████

Hon. Freda L. Wolfson                                                      Page 9

the first time in its opposition: 20,903 for Incelli, and 16,575 for Khalil. Opp. at 13. Gamesmanship

aside, these totals contradict J&J's assertions that their files likely are duplicative of current cus-

todians; if that were true, the requested search terms would not identify thousands of unique doc-

uments for review.[8] In any event, these numbers are not excessive for J&J, which has eye-popping

resources, or in the context of this case, where hundreds of millions of dollars are at issue. They

are also not out of proportion here, where J&J has reviewed only a small fraction of the 1.2 million

documents that it demanded SaveOn review.

      J&J calls the proposed search terms overbroad but has nothing to say about 13 of 16 of

them. It complains that one term, which combines "forecast*" in close proximity with "Stelara,"

could pick up irrelevant documents, Opp. at 12, but omitting that term would exclude relevant

ones. Exhibit 12, for example, would be identified only by this term:



Ex. 12. at -716 (JJHCS_00231715) (emphases added). If this document had not happened to be

placed in a family with a document that hit on other search terms, it would not have been produced.

J&J complains that a second term combines "research" or "studies" with "competitors" or "man-

ufacturers" could pick up studies irrelevant to this case, Opp. 12, but it does not represent that

Khalil worked on any other studies during her "limited period of time," Opp. at 13, working for

---

[8] SaveOn understands that J&J's hit counts represent the additional documents it would have to
review if it ran SaveOn's proposed search terms, subtracting those already reviewed for previous
custodians. *See* Ex. 43 at 7 (Sep. 9, 2024 Opposition to SaveOn's Motion to Compel Mitigation
Search Terms) (representing that search terms for Incelli and Khalil "would require JJHCS to re-
view over 37,000 additional documents.").

Hon. Freda L. Wolfson                                                          Page 10

J&J. J&J also complains that a third term includes the names of SaveOn executives, Opp. at 13, but it is hard to think of terms more narrowly tailored to this case.

      J&J also now says for the first time that Incelli began his "relevant role" in "approximately April 2021," Opp. at 13, n.5—something else that J&J did not disclose during the parties' discussions. SaveOn agrees that the searches should be limited to the time of his involvement; accounting for the "approximate" nature of J&J's representation, SaveOn proposes that J&J run the terms for Incelli from January 1, 2021 to November 7, 2023.

***

      We appreciate Your Honor's attention to this matter.

Respectfully submitted,

/s/ *E. Evans Wohlforth*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com


Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

10

# Exhibit 34

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Thursday, July 25, 2024 3:30 PM
**To:** Kevin Cryan <kcryan@selendygay.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Matthew Nussbaum <mnussbaum@selendygay.com>; Wohlforth, E. Evans <Ewohlforth@rc.com>; Galli, Sabrina M. <SGalli@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

Kevin,

Thanks for your email.  As you know, your June 28 letter demanded that JJHCS add two custodians:  Joseph Incelli and Norhaan Khalil.  On July 18, citing SaveOnSP's failure to respond to our June 25 letter requesting that SaveOnSP add Leslie Kauffman as a custodian, I stated that "subject to agreement on appropriate search terms, JJHCS is prepared to add Joseph Incelli as a custodian, subject to SaveOnSP's agreement to add Leslie Kauffman as a document custodian."  July 18, 2024 Email from J. Long to M. Nussbaum.  Our colleagues continue to trade letters regarding whether SaveOnSP will in fact agree to add Ms. Kauffman as a custodian, as I suggested last week.

Since that time, JJHCS also has requested that SaveOnSP add five custodians that SaveOnSP previously represented were already added as a custodian:  Brandon Bartz, Hailey Kramer, Sandy Mozrall, Jenna Quinn, Lauren Pacillo, Shannon Sommer, and Ingrid Vasquez.  *See* July 19, 2024 Ltr. from S. Suri to M. Nelson at 1.  Should SaveOnSP seek to propose an agreement whereby JJHCS adds Ms. Khalil as a custodian in exchange for SaveOnSP adding custodians that we have requested, JJHCS is open to considering that proposal.  But it is not tenable for SaveOnSP to demand that JJHCS add nearly **thirty** custodians over the course of four letters in the last month, all requesting five business-day turnarounds, while SaveOnSP slow walks JJHCS's requests.

For example, a week ago, I asked your colleague Matt a simple question regarding SaveOnSP's forthcoming Teams production, which I'll repeat here.  As part of the parties' agreement, SaveOnSP represented that the entirety of its Teams production would "take about a month" on June 20.  Nearly two weeks ago, Matt responded that

Selendy Gay PLLC  [Web]
Pronouns: he/him/his

+1 212.390.9373  [O]
+1 332.201.6763  [M]

---

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Monday, July 8, 2024 6:16 PM
**To:** Kevin Cryan <kcryan@selendygay.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry
(x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn
<JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>;
~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Meredith Nelson
<mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles
<hmiles@selendygay.com>; Matthew Nussbaum <mnussbaum@selendygay.com>; Wohlforth, E. Evans
<Ewohlforth@rc.com>; Galli, Sabrina M. <SGalli@rc.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)

Kevin,

We are in receipt of your June 28, 2024 letter and are continuing to investigate the issues cited therein.

Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jlong@pbwt.com**

---

**From:** Kevin Cryan <kcryan@selendygay.com>
**Sent:** Friday, June 28, 2024 7:36 PM
**To:** Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo,
George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn
<JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>;
~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Andrew Dunlap <adunlap@selendygay.com>; Philippe Selendy <pselendy@selendygay.com>; Meredith Nelson
<mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles
<hmiles@selendygay.com>; Matthew Nussbaum <mnussbaum@selendygay.com>; Wohlforth, E. Evans
<Ewohlforth@rc.com>; Galli, Sabrina M. <SGalli@rc.com>
**Subject:** JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW)


**External: Think before you click.**


Counsel,

Please see the attached correspondence.

Best,
Kevin

**Kevin Cryan**
Law Clerk  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he/him/his
-------------------------------------------
+1 212.390.9373  [O]
+1 332.201.6763  [M]

---

Privileged/Confidential Information may be contained in this message. If you are not
the addressee indicated in this message (or responsible for delivery of the message to
such person), you may not copy or deliver this message to anyone. In such case, you
should destroy this message and kindly notify the sender by reply email. Please advise
immediately if you or your employer do not consent to receiving email messages of this
kind.

---

Privileged/Confidential Information may be contained in this message. If you are not
the addressee indicated in this message (or responsible for delivery of the message to
such person), you may not copy or deliver this message to anyone. In such case, you
should destroy this message and kindly notify the sender by reply email. Please advise
immediately if you or your employer do not consent to receiving email messages of this
kind.

**EXHIBITS 35-39**
**CONFIDENTIAL – FILED UNDER SEAL**

# Exhibit 40

Page 1

```
 1          UNITED STATES DISTRICT COURT

 2          DISTRICT OF NEW JERSEY

 3          CIVIL ACTION NO. 22-2632

 4   JOHNSON & JOHNSON HEALTH CARE

 5   SYSTEMS, INC.,

 6       Plaintiff,                   TRANSCRIPT

 7       vs.                             OF

 8   SAVE ON SP, LLC,                 PROCEEDINGS

 9       Defendant.

10   - - - - - - - - - - - - - - - -

11

12          TRANSCRIPT of the stenographic notes of

13   the proceedings in the above-entitled matter as

14   taken by and before RUTHANNE UNGERLEIDER, a

15   Certified Court Reporter and Notary Public of the

16   State of New Jersey, held at the office of

17   LOWENSTEIN SANDLER LLP, One Lowenstein Drive,

18   Roseland, New Jersey, on Wednesday, January 24,

19   2024, commencing at approximately 10:00 in the

20   forenoon.

21

22

23

24

25
```

```
 1   B E F O R E:
 2   HONORABLE FREDA L. WOLFSON
 3   A P P E A R A N C E S:
 4   PATTERSON BELKNAP WEBB & TYLER LLP
     1133 Avenue of the Americas
 5   New York, New York  10036
          BY:  HARRY SANDICK, ESQ.
 6               JULIA LONG, ESQ.
                 GEORGE A. LoBIONDO, ESQ.
 7               SARA A. ARROW, ESQ.
     Attorneys for Plaintiff
 8
     SILLS CUMMIS & GROSS P.C.
 9   The Legal Center
     One Riverfront Plaza
10   Newark, New Jersey  07102
          BY:  JEFFREY J. GREENBAUM, ESQ. (VIA ZOOM)
11   Attorneys for Plaintiff
12   SILLS CUMMIS & GROSS P.C.
     101 Park Avenue, 28th Floor
13   New York, New York  10178
          BY:  KATHERINE M. LIEB, ESQ.
14   Attorneys for Plaintiff
15   SELENDY GAY ELSBERG PLLC
     1290 Avenue of the Americas
16   New York, New York  10104
          BY:  ANDREW R. DUNLAP, ESQ.
17               ELIZABETH SNOW, ESQ.
                 HANNAH MILES, ESQ.
18   Attorneys for Defendant
19   ROBINSON & COLE LLP
     666 Third Avenue 20th Floor
20   New York, New York  10017
          BY:  E. EVANS WOHLFORTH, JR., ESQ.
21   Attorneys for Defendant
22
23   ALSO PRESENT:
     SHERYN GEORGE, JJHCS In-House Counsel
24   WAYNE FANG, ESQ., Lowenstein Sandler
25
```

Page 3

1              JUDGE WOLFSON:  All right.

2              We're here today in connection with the

3       outstanding disputes, and when we had our Zoom

4       conference several weeks ago I indicated I wanted to

5       address whatever had been left open by Judge Waldor.

6       She's had many, many conferences in this case,

7       resolved many issues on the record, entered some

8       orders, and there were a couple of substantial issues

9       that have really been kicking around for a while

10      where she was looking for everyone to meet and confer

11      and see where you ended up.  And, primarily, they're

12      going to relate to discovery regarding the terms and

13      conditions, there was financial information, and now

14      there are other things to do with custodians, and I'm

15      going to try to get to everything.  But I want to

16      deal with this, in the first instance, with regard to

17      those pending discovery disputes, let me turn first

18      to the documents dealing with the CarePath terms and

19      conditions that have been talked about for quite a

20      while now and what should be discoverable with regard

21      to the drafting, understanding enforcement of the

22      terms and conditions.

23              We know that, in particular, what's

24      being looked at is that this program is supposed to

25      fall under the "Other Offer" category.  It's not the

Page 4

1    coupon.  No one is asserting that it falls within the
2    other language.  Right?  Everybody agrees?  Yes?  So
3    it's all about the other offer.
4              MR. GREENBAUM:  Your Honor, may I make
5    two short preliminary points for context to just kind
6    of set the table at least from our perspective?
7              JUDGE WOLFSON:  I don't think it's
8    necessary at this point.
9              Let me move forward.
10             And I will say this -- can I go off the
11   record one moment?
12             (Brief recess taken.)
13             JUDGE WOLFSON:  So let's break this down
14   into what's there.
15             There's no doubt -- or there's no
16   dispute that there certainly is relevance to evidence
17   regarding what this term means.  The question is, how
18   much discovery is to be given, and where does it go,
19   and what are our time tables for doing that, et
20   cetera?  And we're going to get to that.
21             The Plaintiff has said that it produced
22   thousands of pages of documents, approximately 1200,
23   in response to search terms that were used to find
24   documents relating to terms and conditions from
25   April 2016 to July 1, 2022 that had been an agreed

1    upon discovery period, however, the Court at the last
2    hearing had directed the parties to continue to
3    update discovery through October 2023.
4              So now we're all dealing with updating,
5    updating.
6              Okay.
7              There were requests also for documents
8    that bear on -- if I can, for short, I know it's
9    JJHCS -- if I can say J&J for purposes of the
10   hearing.  We know it's a different entity, but just
11   for ease -- J&J's enforcement and understanding of
12   the relevant terms and conditions.  And Plaintiff
13   says also that J&J has investigated availability of
14   additional documents and based on that investigation
15   understands that the terms and conditions at issue
16   are standard, uncontroversial terms, used in most, if
17   not all, manufacturer co-pay support programs that
18   long predate the time period of 2016 to 2023.  And
19   J&J has offered to review additional documents to see
20   what else might fall within that relevant time frame.
21             J&J has indicated that documents that go
22   further back to 2009, which is what really I think
23   SaveOn has been talking about, argues that either
24   they're irrelevant and also enforcement of terms and
25   conditions relating to other terms besides "other

                                                    Page 6

 1    offer."  I mean, I have all the arguments here.

 2                 So let's move into this.

 3                 Now, in this connection too we have

 4    custodian issues, and you agreed to some

 5    modifications.

 6                 I think what we have here is Defendant

 7    asked Plaintiff to conduct a search for documents

 8    relating to the drafting of the general T&C's to add

 9    additional search terms used designed to identify

10    documents relating to drafting, understanding and

11    enforcement, and add two custodians that J&J

12    identified as responsible for drafting the new

13    Stelara and Tremfya T&C's and to extend a search for

14    documents relating to enforcement of the new Stelara

15    and Tremfya T&C's.

16                 Plaintiff has indicated that it will

17    search eight more months of one custodian's documents

18    and add two limited search terms.

19                 So let's talk about where we are.

20                 With regard to the requests, it was

21    requested that Plaintiffs identify predecessor

22    programs from which CarePath's general T&C's were

23    drawn.  And I think there are also interrogatories on

24    that topic.  Right?

25                 MR. DUNLAP:  Yes, are honor.

```
 1              MR. SANDICK:  I don't think that there
 2    is an interrogatory that specifically tracks what
 3    they asked for in our discovery letters.  And not to
 4    get sidetracked, but one of the points of contention
 5    is that if they want detailed historical information
 6    about things within JJHCS, I think the discovery
 7    device for that is an interrogatory.  If they
 8    propound one, we'll answer it subject to objections.
 9    But I don't think that they have propounded one that
10    would cover all of the issues that they have raised
11    and have tried to use discovery correspondence as a
12    mechanism essentially as a substitute for
13    interrogatories.  And they're not at their
14    interrogatory cap.  They could propound
15    interrogatories.
16              MR. DUNLAP:  Could I respond to that,
17    your Honor?
18              JUDGE WOLFSON:  Sure.
19              MR. DUNLAP:  Just briefly.
20              We served document requests asking for
21    documents relating to the drafting of the terms and
22    conditions.  We served interrogatories asking them to
23    identify individuals with responsibility for the
24    drafting of the terms and conditions.  It turns out
25    that this specific term and condition, which is the
```

Page 8

1    heart of part of the case, ███████████████

     ██████████████████████████  We think our

3    existing interrogatory and document requests are

4    broad enough to cover whoever drafted it, whether

5    they were working at JJHCS or some other predecessor

6    program.  So we think it's covered.

7                    JUDGE WOLFSON:  Okay.

8                    We're going to talk about it today,

9    whether it was specifically asked in that way or not,

10   but I'm going to get to the bottom of this and be

11   done with it so that we have this resolved.

12                   Now, in that regard, you've asked for I

13   think January 1, 2009 to the present, right?

14                   MR. DUNLAP:  Yes.

15                   JUDGE WOLFSON:  Because it would include

16   predecessor programs.

17                   MR. DUNLAP:  Because that is our

18   understanding of when it began.  Obviously, if the

19   program began earlier, at some other time, then we

20   would want it to be tailored, our issue, but they

21   haven't given us information, so it's hard for us to

22   tailor our understanding of when the program started.

23                   JUDGE WOLFSON:  Okay.

24                   Why would you, Mr. Sandick, believe

25   that -- you know, we're looking for what the meaning

Page 9

1   of this is -- that if you had predecessor programs

2   that used the same term, why would that not be

3   relevant at a discovery stage?

4              MR. SANDICK:  So, a couple of things.

5              It's not so much that we're saying it

6   would be irrelevant.  What we're saying is, number

7   one, as we've explained to the Defendants before, we

8   do not have consistent record keeping within our

9   client's files.

10             JUDGE WOLFSON:  I'm going to get to

11   retention.

12             What I'm saying is, I want to take this

13   piece by piece.  Which is, if we start with

14   relevancy, now let's go to what the problems are with

15   producing it.

16             MR. SANDICK:  Sure.

17             I think the relevance issue is this:  As

18   to the meaning of "other offer" in the context of a

19   program like SaveOn, an accumulator or maximizer

20   program, those programs did not exist back in --

21   SaveOn was created in 2016.  So trying to figure out

22   prior to 2016 what the terms and conditions meant

23   with respect to a company like SaveOn I think is not

24   a productive project.

25             Also, for that matter, the current

 1  CarePath system, which started in around 2016, also
 2  did not exist prior to that.
 3          To be short, J&J through JJHCS has tried
 4  to help patients pay for co-pay support, help them
 5  pay their deductibles on drugs for many years, but
 6  the program was different.
 7          So we're going to a time period when
 8  SaveOn did not exist, when the CarePath program we're
 9  talking about did not exist, and in a time period
10  where -- and I know your Honor said you'll get to
11  this -- but where the document record is not what it
12  is in more recent years because 2013 is a long time
13  ago.
14          JUDGE WOLFSON:  And I'll deal with that,
15  but I have to say I don't agree with your position
16  on -- that it would not be relevant simply because
17  programs like SaveOn didn't exist, whether
18  accumulator or maximizer programs, or CarePath didn't
19  come into being.
20          You know, you have indicated that these
21  are terms, that is the position you have taken, that,
22  you know, through maybe time, this is a term that is
23  used.  So in creating that, how broad a meaning you
24  thought that had, what it meant outside of the other
25  things you described, coupons, rebates, et cetera,

1  that it could encompass, it may have nothing to do

2  with this, but that is okay.  So we need to answer

3  that question.

4              I do not agree with you.  I do agree

5  with SaveOn that I believe that going back in time is

6  relevant to the extent it was included in predecessor

7  programs.  It had to have a meaning.  If anyone even

8  discussed it.  Maybe they didn't.  And maybe that is

9  what will turn up.  But that is an answer in itself.

10             Now, talking about availability of

11 documents, because you have indicated that there are

12 preservation of retention issues, but I don't know

13 that you have provided anything that tells us what

14 those retention policies are or the issues as to why

15 they don't exist or how limited they are.

16             That has to be provided so that I could

17 determine, or your adversaries can determine, what

18 was done, and what the policy was, and whether it was

19 followed here.

20             That is always what we do when you have

21 a relevant document and a relevant time period and

22 there may be an issue.

23             So you're going to have to produce that

24 retention policy.

25             To the extent that you do find the

Page 12

1    documents regardless of that retention policy, I'm

2    ordering that they be produced.

3             Now, you've also indicated it's too

4    cumbersome, but you haven't done a search going back

5    because you haven't thought you had to produce them,

6    and the burden is on you to explain why it would be

7    burdensome.  And, frankly, if you're telling me you

8    may have nothing before 2013, it doesn't sound very

9    burdensome to me.  So I'm not buying that at the

10   moment without more.

11            For me, when I look at all of this,

12   rather this one seemed like an easy one, and I think

13   it's totally appropriate.

14            The crux of this case is going to be

15   what "other offer" means.  And in Judge Vazquez's

16   opinion in very short order in that last paragraph it

17   said this is going to need discovery and it could be

18   the subject of a summary judgment motion, but not a

19   dismissal motion, or maybe it goes to a trial, but he

20   noted that that was something that required

21   discovery.  And that term is going to be critical

22   here.

23            MR. SANDICK:  So, your Honor, we will

24   come back to you then with a submission on the

25   subject of burden and accessibility because I do

Page 13

```
 1  believe those are substantial issues here.  That, you
 2  know, very few companies would have sort of coherent
 3  organized records going back 15 years or longer.  And
 4  so I do think we have an issue that we need to bring
 5  to your Honor's attention on this.
 6                  JUDGE WOLFSON:  Okay.
 7                  You're going to have to really convince
 8  me because, first of all, I don't know what your
 9  retention policy is, but on the burdenness, I know
10  that Judge Waldor kept putting burden to the side.
11  She said, a hundred million dollar case, it's a big
12  case, big companies, don't argue burden to me.
13                  I'm not quite sure I always agree with
14  that because burden is something you are allowed to
15  assert.  I'm not preventing you from doing so, but I
16  think you have a high hurdle there.
17                  So you want to move this along, I want
18  to also, so those answers you're going to have to get
19  to me pretty quickly.
20                  MR. SANDICK:  We'll do that, your Honor.
21                  JUDGE WOLFSON:  Okay, when?
22                  MR. SANDICK:  I would like to talk to
23  people internally to figure out, but today is
24  Wednesday.  Next week?
25                  JUDGE WOLFSON:  Sure.
```

Page 14

1                MR. SANDICK:  Okay.

2                JUDGE WOLFSON:  That would be fine.

3                You want a week from today?

4                The end of next week?

5                MR. SANDICK:  Let me just confer for a

6     moment.

7                Next Friday.

8                JUDGE WOLFSON:  Next Friday is fine.

9                MR. DUNLAP:  I assume you would want us

10    to meet and confer about this.

11               JUDGE WOLFSON:  Yes.

12               MR. DUNLAP:  Part of our concern is that

13    they haven't been really forthcoming in explaining to

14    us what their preservation or retention issues are.

15               JUDGE WOLFSON:  Now you're going to get

16    it.

17               MR. DUNLAP:  I assume you want the

18    parties to meet and confer before they file the

19    motion.

20               JUDGE WOLFSON:  Yeah.

21               MR. SANDICK:  I mean, I'm happy to talk

22    to Andrew any time.  We're going to file something on

23    this.  And I do not agree that we have been not

24    forthcoming.  We explained that 2013 is the crucial

25    time period for our client when there were changes in

Page 15

1  the record keeping system and that before that time,

2  all though I can't say that there aren't documents

3  here and there sort of lying around, so to speak, the

4  digital equivalent of that, there is no consistent

5  effort to retain documents from that time period.

6             JUDGE WOLFSON:  Look, they haven't

7  gotten that, and, you know, simply indicating that is

8  not enough.

9             They said they would have an answer by

10  next Friday.  So what I'll direct is that information

11  be given to you, as to burden and retention, you can

12  meet and confer, and then tee it up for me.

13             MR. SANDICK:  Would you like us to

14  submit it to your Honor in parallel next Friday?

15             JUDGE WOLFSON:  I would love to see it.

16             MR. SANDICK:  We will send it to you and

17  of course copy defense counsel by next Friday.

18             JUDGE WOLFSON:  Okay.

19             And then you can meet and confer and

20  we'll see if we have an issue.

21             As I said, but from my perspective on

22  the burden aspect, it's going to have to be a pretty

23  darn heavy burden because I think this is highly

24  relevant information, and so on a weighing here as to

25  the relevance versus the burden on you, I think you

Page 16

```
 1   know where I'm going to come out.
 2              All right.  Let's move onto the next
 3   topic.
 4              These are, quote, the enforcement
 5   documents.
 6              So let's talk about this issue.
 7              This is I think where it -- the issue is
 8   whether it's enforcing all of the terms of that or
 9   only the other offer, correct?  That's where we are.
10              MR. DUNLAP:  I think that is part of it.
11   Part of it is also what search terms they employ.
12   Since this submission went in we met and conferred
13   with the other side and narrowed the search terms.
14   It cuts out about 20 percent of the documents that
15   were identified in my previous submission.
16              JUDGE WOLFSON:  Okay.
17              So tell me what is left on this issue
18   that you want to argue today.
19              MR. DUNLAP:  Well, we believe that they
20   should run a broader search for documents relating to
21   the meaning and understanding and enforcement of the
22   general terms and conditions, the "other offer"
23   provision.
24              JUDGE WOLFSON:  The "other offer"
25   provision is good.
```

Page 17

1          MR. DUNLAP:  Yes.

2          Well, we think there are other portions

3     of the general terms and conditions that are relevant

4     as well.

5          So the way this works is that a lot of

6     the -- they call this the SaveOn program, but a lot

7     of the things they're complaining about, the setting

8     of the co-pays, the not counting towards

9     out-of-pocket max, are actually plan terms.  Those

10    are part of what the commercial plan sets as terms

11    for their members.  And there are references within

12    the terms and conditions health plans.  And we

13    think -- part of our argument is that that indicates

14    whatever "other offer" means, it can't mean plan

15    terms.  So we think it can't be limited just to the

16    "other offer" provision.  That is point one.

17         Point two is, based on what we have seen

18    in the documents we don't --

19         JUDGE WOLFSON:  So let me think of

20    though what you're looking for in that regard.

21         You're not interested in coupons,

22    rebates, and the other things that are in there.

23         I want to make sure how we're limiting

24    this.

25         MR. DUNLAP:  Well, we are to the extent

Page 18

1    that we want to understand, there is an affirmative

2    case did they actually believe SaveOn was a coupon or

3    other offer or a program.

4              JUDGE WOLFSON:  I think we are clear

5    that you said it's only other offer.

6              MR. SANDICK:  The other offer is the

7    only term that we're doing.

8              There is a long list of terms and

9    conditions that patients have to agree, most of them

10   have nothing to do in not even any conceivable way

11   with this case.

12             For example, you cannot by federal law

13   be on Medicare or Medicaid and be part of SaveOn.

14   That is prohibition.  Children are not eligible to

15   receive drugs through this program.  And there are a

16   number of other things.  None of them are within the

17   scope of what we are alleging to be the contract that

18   was tortiously interfered with.  That's why the focus

19   has been -- in Judge Vasquez's decision and in our

20   complaint -- on the "other offer" language that your

21   Honor has spotlighted.

22             JUDGE WOLFSON:  So we're limiting it to

23   the only contractual term that they think is "other

24   offer."

25             MR. DUNLAP:  Right.

Page 19

```
 1              And I think we have a couple of issues

 2      with that.

 3              So, first, as you may have seen if

 4      you've looked at the Motion to Dismiss briefing,

 5      "other offer" appears in a string of other terms,

 6      coupon, et cetera.  And under ejusdem generis, if I'm

 7      pronouncing that doctrine correctly, you would

 8      understand what "other offer" means by looking at

 9      what the other terms in that clause mean.

10              So what they understand a coupon to

11      mean, what they understand another offer of financial

12      assistance to mean, is relevant to determining what

13      in context the "other offer" provision means.

14              So we do want to understand what they

15      think that means.

16              I would also make the point that --

17              JUDGE WOLFSON:  But we're on the

18      enforcement documents now, not on the actual

19      interpretation, terms, conditions.

20              MR. DUNLAP:  Well, but that period we're

21      talking about from 2016 through 2022 we're not just

22      looking for documents on enforcement, it also goes to

23      the meaning and their understanding of what the

24      "other offer" provision meant during that time

25      period.  And we submit to understand that you have to
```

Page 20

1    look not just at "other offer," but also at the other
2    terms that are in the clause where it appears other
3    provisions in the terms and conditions that relate to
4    health plans, there is a lot of contractual context
5    that we need in order to argue about what "other
6    offer" means.
7               But I do want to turn to enforcement
8    also.
9               So as Mr. Sandick said, there are other
10   eligibility requirements that are not at issue.  For
11   example, if you're on Medicare or Medicaid, or you're
12   not of a certain age, et cetera.
13              Part of our argument is that until they
14   decided to bring this lawsuit we don't think J&J
15   actually ever contemplated that the "other offer"
16   provision covered members on SaveOn plans.  They
17   never actually thought that being on a SaveOn plan
18   ran afoul of the "other offer" provision.
19              And part of the evidence of that will be
20   that they did enforce eligibility criteria.  That
21   they were able to enforce other parts of the terms
22   and conditions, on Medicare, Medicaid, on age
23   requirements, et cetera, but they never sought to
24   enforce their new position on SaveOn until they
25   brought this lawsuit.

Page 21

1          We think that information is highly
2    relevant circumstantial evidence to show their course
3    of performance was they didn't actually believe that
4    "other offer" applied to the SaveOn program.

5          And so we need to see what they were
6    doing in terms of enforcing the terms and conditions
7    generally not just on "other offer."

8          MR. SANDICK:  Your Honor, two things:
9    First of all, on the subject of enforcement, since
10   these letters were submitted I think in August we
11   have already agreed to produce what are either
12   directly through us or by asking our vendor, a
13   company called Trial Card, to produce what are known
14   as benefits investigations.  And those are the
15   enforcement documents.  We're in the process of
16   making those productions for the relevant time period
17   right now.

18         So the enforcement issue I think by
19   virtue of concessions made by HCS, by J&J, is already
20   being addressed.

21         I want to also though pause for a moment
22   on the subject of whether the other terms next to
23   "other offer" in that particular term and condition
24   are relevant.

25         I think it's important to say two

Page 22

1    things.  First of all, this particular language,

2    coupon, discount, prescription savings card, free

3    trial, those are primarily what is driving the hit

4    count for the search terms they have proposed.

5    Something like maybe two-thirds or three-quarters of

6    the documents that they are asking to be reviewed

7    relate not to "other offer," which, by the way, have

8    already been the subject of search terms.  That's

9    why, as your Honor pointed out, we have already

10   produced thousands of pages of documents.  But the

11   search terms that they are proposing go way beyond

12   that, into any time that someone uses the word

13   "coupon" and the word "Janssen," we would have to

14   produce those documents.

15            That is why Judge Waldor told -- well,

16   one of the reasons why she told them back in October

17   and in the order that they needed to narrow their

18   requests, not just the search terms, but the requests

19   themselves, that this is too broad, it goes beyond

20   the scope of what is actually necessary to resolve

21   this case.

22            And if we were focusing on things like

23   "other offer" language, again, we've already made a

24   lot of production on that.  And we had offered

25   before, as your Honor pointed out, to do some

Page 23

1    additional production on that subject.

2              It's when you blow it open into

3    everything -- every word that is used on the sheet of

4    terms and conditions that the burden in terms of

5    document review goes through the roof.  And as we

6    pointed out, probably for very little benefit.

7    Because these are standard industry terms that are

8    used in the co-pay program area and also used in all

9    sorts of other consumer areas.  The ABA said this is

10   a standard term in all consumer discount programs.

11             JUDGE WOLFSON:  So what I'm hearing is,

12   but what I want to understand too, is you are going

13   to produce documents with regard to this, quote,

14   benefits investigation.

15             What I want to get back to you here, Mr.

16   Dunlap, what you said a couple of moments ago is what

17   is important to you is to give definition to what

18   they're enforcing and what they're not enforcing, you

19   want to know, well, were you enforcing all of these

20   other programs that you have listed, whether they

21   were Medicare, Medicaid, and all the various coupons

22   and other things, right?

23             MR. DUNLAP:  The eligibility questions.

24             JUDGE WOLFSON:  The eligibility

25   questions.

Page 24

```
 1              You want to know, were you diligently
 2    and regularly enforcing.  You knew SaveOn was there
 3    and you didn't do it.  And you want to make an
 4    argument, so guess what, we're going to tell you, you
 5    never thought of any of these exclusions.
 6              I hear what you're saying.  The question
 7    is, how many documents do we need?  If they're going
 8    to give you what we would call the benefits
 9    investigations, would that not turn up every time
10    that they questioned eligibility?
11              MR. DUNLAP:  We don't think so, your
12    Honor.
13              Let me talk about the benefits
14    investigations.
15              So what they said at the last conference
16    was that ███████████████████████████████████
    █ ████████████████████████████████████████████
    █ ████████████████████████████████████████████
    █ ████████████████████████████████████████████████
    █ ██████████████████    ████████████████████████
    █ ████████████████████████████████████████████████
    █ ████████████████████████████████████████████
    █ ██████████████████████████████████████████████████
    █ ██████████████████████████████████████████████████
    █ ████████████████████████
```

Page 25

 1            They have so far declined to give us any

 2    documents related to those investigations, just the

 3    final reports themselves.

 4            We got a production the other day.  We

 5    had some issues with that.

 6            What they're offering to give us is

 7    very, very narrow.  They are not offering to give us

 8    benefits investigations going to the full relevant

 9    time period of this case from 2016 to present.  ███

      ████████████████████████████████████████████████

      ██████████████████████████████████ And they're

12    not offering to give us any documents, there are no

13    enforcement search terms, for example, that go to the

14    enforcement of eligibility criteria or the meaning of

15    things like coupon or discount or benefit card.

16            And I hear what opposing counsel is

17    saying about the search terms.

18            We have proposed search terms to them.

19    We have narrowed those search terms since we put in

20    our letter by about 20 percent.  We have not received

21    I believe a counteroffer from the other side about

22    which of our search terms they would be willing to

23    run.  Their response has generally been no.

24    Certainly inviting us to negotiate against ourselves.

25            We're always glad to talk about

1   appropriate search terms here, but we don't have

2   anything on enforcement.  We're not convinced that

3   just the benefits investigations process will give us

4   what we need here.

5           I'm glad to address the other points he

6   made, but I think those are the main ones.

7           MR. SANDICK:  Your Honor, I think there

8   are a few things I would like to address and correct.

9           So, first of all, it's not true that we

10  aren't giving other documents relating to the subject

11  of enforcement of the terms and conditions against

12  accumulator and maximizer programs.  We are running

13  to some extent voluntarily and to some extent in

14  response to Judge Waldor's order the so-called CAP

15  terms.

16

Page 27

1            As we said in some of our papers, SaveOn

2    goes to great effort to prevent anyone from finding

3    out which patients are in the program. ████████████

     ████████████████████████████████████████████████

     ████████████████████████████████████████████

     ████████████████████ they go to great length to

7    prevent us from figuring out who is in the program.

8                     ████████████████████████████████

     ████████████████████████████████████████████████

     ████████████████████████████████████████████████

     ████████████████████████████████████████████████

     ████████ That's why we have been producing for that

13   category from 2022, the beginning of the year, now up

14   through the date of Judge Waldor's order.

15            JUDGE WOLFSON:  Well, let me go back a

16   moment.

17            We got two things going on.  Now we're

18   talking about dates, how far back we go, but the

19   other is the various enforcement efforts with regard

20   to eligibility, which they have been talking about.

21   And the position there is, SaveOn was in existence

22   prior to 2022.  The fact that you started to take

23   some steps in response to what you believe was a

24   problematic program and would violate your terms in

25   that time frame doesn't address their concern, which

Page 28

1    is, okay, we were around before, and you also came to

2    this conclusion in 2022, whatever, but we'd like to

3    see what generally did you do as enforcement efforts

4    with regard to other eligibility criteria.  Do you

5    police generally?  Do you let things go?

6                    I mean, these are some of the arguments.

7                    I know you have some defenses you also

8    want to raise on, you know, latches, mitigations,

9    whatever, steps that were not taking, but I think

10   that there needs to be some understanding of,

11   generally, what are your enforcement efforts that you

12   take with regard to eligibility criteria.

13                   Now, it has to be cabined in some way.

14   I don't want it to be so broad because there are lots

15   of things here and much of it may not be relevant.

16   So I think we have to understand, or they have to

17   understand, how do you go about enforcing, when do

18   you do so, and there is more information that is

19   needed.

20                   MR. SANDICK:  So, your Honor, a couple

21   of things:  First of all, the subject of benefits

22   investigations.  Benefits investigations are,

23   generally speaking, not relevant to this case because

24   they don't touch on the application of the "other

25   offer" term, they don't touch on how that's applied

Page 29

1    in the context of a so-called maximizer or

2    accumulator program like SaveOn.

3              So what that would lead to, your Honor,

4    if there were to be some expansion of benefits

5    investigations, would be, essentially, meaningless

6    documents about, "Oh, this person is on Medicare.  We

7    can't cover that."  Things having nothing at all to

8    do with the scope of this case.

9              The other thing is, the questions that

10   Mr. Dunlap is raising, if he serves an interrogatory

11   on us that asks those questions, we'd be obliged to

12   answer those questions in a way that would be binding

13   as an admission on JJHCS.

14             To, you know, beat it back and forth in

15   discovery letters doesn't lead to that outcome.

16             JUDGE WOLFSON:  What would that

17   discovery interrogatory look like?

18             MR. SANDICK:  Sure.

19             It would be an interrogatory asking for

20   a statement of what the company's policy was on the

21   issue of enforcement of the terms and conditions.

22             It could ask for --

23             JUDGE WOLFSON:  And then they're going

24   to ask for all the documents that support what that

25   policy is and explain that policy and discuss the

Page 30

 1    policy.

 2                    MR. SANDICK:  And we produced those.

 3                    JUDGE WOLFSON:  There will be a document

 4    request.

 5                    MR. SANDICK:  As to "other offer," we

 6    produced those documents already.

 7                    JUDGE WOLFSON:  I'm not so limiting it

 8    at this point.

 9                    MR. SANDICK:  So, in any event, the

10    point I'm making is that, the subject of benefits

11    investigation is, unless it has something to do with

12    SaveOn, or maximizer, or accumulator programs, is

13    really just completely irrelevant to this case, and

14    it's going to lead to the production of documents

15    that talk about issues that have nothing to do with

16    the "other offer" term, nothing to do with SaveOn,

17    that just simply show that, you know, there are a

18    host of different eligibility requirements, and can

19    see this patient passing the test, this patient not

20    passing the test, but none of it relating to SaveOn,

21    none of it relating to maximizer or accumulator

22    programs, other than from the time period of 2022 to

23    the present, which we're already engaged in producing

24    documents for.

25                    JUDGE WOLFSON:  I think that -- and I

Page 31

```
 1   know that Judge Waldor would constantly say go meet
 2   and confer, but I hate kicking the can down the road
 3   and keep doing this, but I'm prepared to do it or
 4   discuss it with you now, but I think you need to
 5   narrow your request.  I believe we got to the crux of
 6   it a moment ago, which is, I believe you're entitled
 7   to documents that show what policies they had with
 8   regard to enforcement of eligibility criteria beyond
 9   "other offer."
10              They need a comparison here to what were
11   your policies.
12              Those documents I believe would be
13   relevant.
14              It doesn't mean, therefore, and now we
15   eliminate the burden of going through every time you
16   actually took an individual's eligibility criteria
17   and looked at it.
18              I think let's start with documents that
19   reflect what their policies were and anything that
20   reflects how they would go about enforcing it or
21   instructions given to enforce it, and it will also
22   identify, therefore, for you what areas that they
23   thought were important to enforce.
24              That is of a more general nature.
25              You said they could ask an interrogatory
```

Page 32

1    as to that.  The document request is going to follow,

2    so I'm saying go ahead with the document request

3    right now.  And it won't be involved with the

4    individual benefits investigations.

5              MR. SANDICK:  So what your Honor is

6    proposing is something limited, essentially, to

7    policy or discussion of policy.

8              My concern is that it really should be

9    tied to "other offer" because once it moves into

10   things like discount, or free trial, or coupon, the

11   burden escalates dramatically.

12             We're talking about the review of

13   perhaps a quarter of a million documents.  And we

14   told them this.

15             We haven't failed to engage them in meet

16   and confer.  I'm happy to relate the history of that,

17   your Honor, if you would like to hear it.  But we

18   have tried throughout to engage them in meet and

19   confer and for months the only position they took

20   was, these are our terms, you need to run them all.

21   Even for two months after Judge Waldor told them to

22   narrow their search terms, told them in court, told

23   them in a written order.  They did not even provide

24   us with narrow search terms, let alone narrowing the

25   request, which is what her order said, that they're

Page 33

```
 1   going too far, they're taking extreme positions.
 2               JUDGE WOLFSON:  I read every single
 3   transcript, not just the October one.
 4               MR. SANDICK:  Yes.
 5               It was in March too.
 6               JUDGE WOLFSON:  Okay.
 7               But you understand what I am saying is
 8   relevant.  I appreciate we don't want every little
 9   document every time they discuss a discount.
10               When you're talking about policies and
11   discussions with regard to enforcing those policies,
12   no, I don't believe that we're talking about millions
13   of documents.
14               So come up with better.  I'm not going
15   to create them for you, I mean, I have given general
16   categories about this.  You know, from my
17   perspective, the world has become search terms.  Not
18   how I grew up, or when I was a Magistrate judge, we
19   didn't have search terms.  Okay?  You made a document
20   request and everybody understood what it meant and go
21   find them, wherever they are.  Now everyone needs to
22   define custodians and search terms to make sure that
23   you have done it a certain way.
24               I have given you what the subject matter
25   is.
```

Page 34

1                So you think you need search terms to do

2       it, talk about what they are.

3                        MR. DUNLAP:  Your Honor, can I ask a

4       clarifying question?

5                        JUDGE WOLFSON:  Yes, go ahead.

6                        MR. DUNLAP:  So you said that policies

7       regarding enforcement would be relevant.  I've heard

8       my friend on the other side say he thinks enforcement

9       is only relevant as to "other offer."

10                       JUDGE WOLFSON:  I already said no.

11                       MR. DUNLAP:  I just wanted to clarify it

12      goes to other eligibility criteria as well.

13               Now, we still had -- within the request

14      for this 2016 to 2022 time period, part of our

15      request was also about their understanding and

16      meaning of things like coupon or discount or other

17      terms as well, which I don't believe your Honor

18      addressed in talking about the enforcement side of

19      the request.

20               So we would ask that whatever they do in

21      terms of running additional search terms, and we're

22      glad to continue meeting and conferring with them

23      about that, that there be an understanding that --

24      their understanding, their enforcement -- the meaning

25      of the other terms in that clause, coupon, discount

```
 1    and the others, is also relevant and something they
 2    look for.
 3              MR. SANDICK:  Your Honor, that's really
 4    where the heart of the burden comes in.  If they're
 5    asking for every time that someone at JJHCS talks
 6    about the word discount in the context of Janssen,
 7    you can just imagine the burden that that will
 8    create.
 9              JUDGE WOLFSON:  I don't want it that
10    broad, I agree.  So we have to figure out a way to
11    narrow that because, yes, we don't want to bring in
12    things that are not going to be relevant.
13              So you're going to go back and work as
14    to how to narrow this with the understanding of, I
15    appreciate your argument is, we want to see how they
16    define these terms or interpret them and then use
17    them.
18              They've already conceded, however, that
19    SaveOn doesn't fall within any of those terms, they
20    only fall within the "other offer."
21              So I understand -- what I'm trying to
22    figure out is what more that's relevant about
23    understanding how they interpreted coupon, rebate,
24    discount is important to your case?
25              MR. DUNLAP:  Sure.
```

Page 36

1          So, as you said, the "other offer"
2    provision is a big piece of this case.  It's a big
3    piece of the tortious interference claim.  What did
4    "other offer" mean?
5          They say it applies to SaveOn services.
6    We say it does not apply to SaveOn services.
7          So to the extent that the court finds
8    that term ambiguous, one of the standard tools of
9    construction that it may use is looking at the terms
10   that go along with it in that same clause.
11         And I'm sure you are familiar with that
12   doctrine.
13         JUDGE WOLFSON:  Absolutely.
14         MR. DUNLAP:  So in order to determine
15   whether or not other offer -- the scope of other
16   offer is like a coupon or discount savings card we
17   need to understand what they believe a coupon or
18   discount savings card meant.
19         So we don't want every time anyone at
20   Johnson & Johnson used the word "coupon."  What we
21   want to understand is, what did they believe, what
22   did they understand those terms within the context of
23   the general terms and conditions meant.
24         We believe that that is relevant.  And
25   if you can give us guidance that that is relevant,

Page 37

1    then we're glad to go back and continue meeting and

2    conferring with them on the search terms that are

3    designed to try and capture that.

4              MR. SANDICK:  Your Honor, Mr. Dunlap

5    said a moment ago words to the effect of, we're not

6    looking for every time that somebody mentioned

7    discount or coupon, but the search terms that they

8    proposed even after Judge Waldor ordered them to

9    narrow their request are exactly what Mr. Dunlap just

10   said --

11             JUDGE WOLFSON:  It's not going to

12   happen.

13             MR. SANDICK:  Okay.

14             Because I think what he is saying is,

15   I'd like guidance.  What I hear him saying is, he

16   would like you to say something that contradicts what

17   you said a moment ago.  And we'd ask you not to do

18   that.

19             JUDGE WOLFSON:  I got it.

20             MR. DUNLAP:  That is not what I said or

21   I asked for.

22             JUDGE WOLFSON:  We have what the

23   position is.  I appreciate your argument.

24             And this is also going again back to

25   interpreting what the terms and conditions mean.  And

Page 38

1   I do appreciate that one of the arguments is going to

2   be, if you look at this entire phrase, and the things

3   that they really wanted to exclude, it gives meaning

4   to "other offer."

5               I know that is your argument, and I

6   understand that, which is why I would permit the

7   discovery on what does that mean.

8               That is different than enforcement.

9               We have gone backwards now.  We are

10  going back to terms and conditions and what this

11  sentence means.  I was on enforcement for a moment.

12  We'll return to enforcement.  But, yes, I do.  But

13  we're not going to have search terms that you're

14  right that every time that phrase comes up it gets

15  produced.  It has to in some way be cabined to

16  capture what we are talking about, which is, what was

17  the understanding of those terms when they were

18  placed into these various agreements, plans,

19  whatever, and documents that reflect what that

20  understanding was and the intent of it.

21              MR. SANDICK:  And we've already produced

22  documents to the extent they exist, to the extent

23  that we have non-privileged documents, from the

24  period of 2016 to 2022.  We've already produced those

25  documents.

Page 39

```
 1              JUDGE WOLFSON:  And I guess you're going
 2     to have a privilege log.
 3              MR. SANDICK:  We do have a privilege
 4     log.  We're going to meet and confer on that subject.
 5     I'm sure that will go on too.
 6              JUDGE WOLFSON:  I would like to go back
 7     now to enforcement.
 8              It's of a similar nature, which is that
 9     the idea is, here, you want to know how vigilant were
10     they about enforcing these various terms that appear
11     here, or whatever the eligibility criteria are.
12              You don't need the underlying
13     investigations on all the other terms.  Right?  It's
14     really to figure out how they decided, one, if there
15     are documents that reflect, we are going to
16     aggressively pursue these terms.  You know, people
17     that get the coupons or whatever.  And do you
18     actually go about enforcing.  You know, because they
19     are going to make an argument you sat back on this
20     one.  Do you sit back on others too, is this kind of
21     what you do, or do you aggressively enforce that and
22     you didn't come about doing this for a few years.
23              These are, again, of a more general
24     nature than every individual one that they do.
25              So, go to work on figuring out -- I
```

1   would do it in general categories like I did in the

2   old days, but you'll come up with search terms

3   instead that create all these issues for us -- work

4   on those search terms that capture what I just said.

5            Okay?

6            MR. DUNLAP:  Yes, your Honor.

7            MR. SANDICK:  Okay.

8            JUDGE WOLFSON:  Next.

9            So then, I guess, part of this problem

10  has been we're still talking about the understanding

11  of what "other offer" means, how that overlaps with

12  the specific categories.  We're back to all these

13  search terms.  And I think you found 188,000

14  documents on using certain of the search terms they

15  gave you, and you say, hey, that is too burdensome.

16           MR. SANDICK:  Yes.

17           And after Judge Waldor asked them to

18  narrow their requests, they never narrowed their

19  requests, but they gave us somewhat narrower terms.

20           From an apples to apples comparison, if

21  we look at the same time period and the same

22  custodians, they went from about 180,000 to about

23  150,000.

24           The terms themselves are only slightly

25  narrowed.  The nature of the requests are not

Page 41

1  narrowed at all.  In our view, they have not complied

2  with what Judge Waldor asked them to do.

3           JUDGE WOLFSON:  I could sit here and we

4  could go through search terms and say, how can we

5  better do this, but the goal here is to come up with

6  the documents you need, and not more than you need,

7  which is going to be of no help for you either to

8  review.

9           So -- I hate to send you back to meet

10 and confer.

11          I've given you guidance on what

12 categories or subjects I think are relevant.  Based

13 on that, maybe you can do search terms that are honed

14 better to that.

15          But I want this meet and confer to

16 happen within the next week.  We're back and forth

17 too much.  And to the extent you can't agree, I'll do

18 a Zoom with you.  But we need to move this ahead.

19 Keeping in mind that I've defined for you areas that

20 I think are relevant.

21          Okay?

22          MR. DUNLAP:  We understand, your Honor,

23 yes.

24          Thank you.

25          JUDGE WOLFSON:  Okay, good.

Page 42

1          Now, I guess in January of 2022 there
2     were new terms and conditions for Stelara and Tremfya
3     medications that specifically excluded members of the
4     Defendant plans from CarePath.
5          I know SaveOn has argued that Plaintiff
6     didn't implement new terms and conditions for other
7     drugs.  Kind of a selective enforcement argument
8     maybe being made here.  And I guess you've asked for
9     documents reflecting the decision to revise those
10    terms and conditions for those two drugs, how it's
11    being enforced and implemented.
12         Okay.
13         I think the argument here is that there
14    have been -- the production is deficient, restrictive
15    search terms were used, and custodians, such as
16    Jennifer De Camara and Harman Grossman and Savaria
17    Harris were not added because they are attorneys, but
18    I don't think there has been a privilege log.
19         MR. SANDICK:  So a privilege log has
20    been sent.  They sent us a letter critiquing some of
21    it and we are going to this week, by the end of
22    Friday, send them back a response.  They identified
23    several hundred documents, we've reviewed every one,
24    and we have a response planned for them by Friday
25    close of business, so Friday the end of the day.

Page 43

1          JUDGE WOLFSON:  And then if there are

2    still documents upon which there is disagreement, I'm

3    going to do an in camera review of them.

4          MR. DUNLAP:  Yes, your Honor.

5          MR. SANDICK:  That is something we're

6    working through, and, of course, we'll bring it to

7    your Honor.

8          On the subject, your Honor, of the

9    Stelara and Tremfya terms and conditions, this is

10   really related to the CAP issue that was the subject

11   of movement at the October conference.  So we have

12   already produced documents that relate to this issue,

13   documents that show the changes in the Tremfya terms

14   and conditions, documents that show how the CAP

15   program operated, and that is going to be updated

16   right through, as Judge Waldor said, through

17   November 7.

18          So I think this issue is one that I

19   think has been kind of overtaken by events, so to

20   speak, since the letters in August.

21          MR. DUNLAP:  I agree to some extent.

22          Part of the original dispute was were

23   they going to search past July of 2022.  Judge Waldor

24   sort of took that out of everyone's hands by saying

25   go through November, and we understand they're going

1    to be running all their search terms, so that should

2    capture a lot of it.  I think there are a few pieces

3    that still remain.  One is the issue of these two

4    custodians who are attorneys but there is evidence

5    they worked in a business role at some point.  So we

6    ask that they be added.

7               There are two additional points.

8               We had asked that they run --

9               JUDGE WOLFSON:  Well, I'm assuming, by

10   what I was just asking about, because we always know,

11   in-house attorneys in particular, we have to decide

12   are they acting in their role as an attorney or in a

13   business sense?

14               I am assuming this is part of the

15   privilege log.  You did go through their documents.

16               MR. DUNLAP:  No.

17               MR. SANDICK:  So, your Honor, we have

18   not added these people as custodians.

19               Mr. Dunlap is wrong.  They play no

20   business role.  They are lawyers.  They are not,

21   let's say, JD's doing business, or former lawyers

22   doing business.  They work in a legal capacity as

23   lawyers for JJHCS.  So their documents do come up

24   from time to time because they will be in

25   communication with the people who are custodians in

Page 45

1    this case, the business people, and when they are,

2    those documents will be withheld or redacted for

3    privilege as appropriate.

4            On very rare occasions they may be in

5    communications with both the business people and

6    people external to JJHCS, and in some of those cases

7    the documents are produced because, obviously, if a

8    lawyer is talking to a complete stranger, that might

9    not be privileged.

10           We have not added them as custodians.

11   In other words, we have not undertaken specifically

12   to review all of the lawyers' files.  And let me tell

13   you why.  It's because, given that they are attorneys

14   working as attorneys, if we are reviewing all of

15   their documents, all we are going to wind up doing is

16   creating a massive privilege log problem for us, and

17   in the end I suppose for them, because their files

18   are going to be, if not exclusively, overwhelmingly

19   privileged, because what they do when they talk to

20   people within the company is going to be conveying

21   legal advice or receiving requests for legal advice.

22           To the extent that they have

23   communications with business people and those are not

24   privileged, those would be produced.

25           JUDGE WOLFSON:  How do you search for

Page 46

1    those, though?  If you're saying you're not doing a

2    search for them as a custodian, how are you

3    determining which I falls in which category?

4                    MR. SANDICK:  Sure.

5                    Let's take an example.

6                    You have a custodian at the company, an

7    employee named Heith Jeffcoat.  If he has e-mails

8    with Savaria Harris, who is the lawyer for JJHCS, we

9    may see those e-mails when we review Heith Jeffcoat's

10   files, and to the extent those documents are

11   privileged, they will be marked privilege, they will

12   be put on the log, they will either be withheld or

13   redacted, depending on the nature of the privilege

14   assertion.

15                   What we're not doing is specifically

16   collecting all of Ms. Harris' e-mails and looking at

17   those separately.

18                   JUDGE WOLFSON:  How about though -- we

19   use Ms. Harris as an example.  She's having

20   communications with Trial Card, she's having

21   communications with a third party outside that it

22   doesn't have a business person on it, so you're not

23   capturing it there, but if you're not doing a search

24   on her, you're not capturing Trial Card because

25   they're not part of the search.

Page 47

 1          MR. SANDICK:  So Trial Card is producing

 2   documents, actually, they're producing custodial

 3   documents from the most important people at Trial

 4   Card.  There has been a separate third-party subpoena

 5   back and forth between Trial Card and SaveOn.  But

 6   Trial Card is producing documents, number one.

 7          JUDGE WOLFSON:  I only gave that as an

 8   example.

 9          Any third party on the outside that she

10   is having a communication with, if you're not doing a

11   search on her, you're not going to capture any of

12   those communications that would not be protected by

13   the privilege.

14          MR. SANDICK:  Well, what we have seen is

15   that her communications will inevitably have business

16   people on them.  She is not doing business work on

17   her own.  She is the legal advisor to JJHCS.  So to

18   the extent that JJHCS is doing business-related work,

19   that is going to be conducted by the business

20   personnel.  And if Ms. Harris is copied on an e-mail,

21   and the e-mail is not a request for legal advice, or

22   the rendering of legal advice, then there will be no

23   privilege assertion.  That is how they have gotten

24   some documents that Ms. Harris is on.  Because not

25   every communication that she is copied on is

Page 48

1   necessarily going to be privileged.

2           But the issue is this:  Should we have

3   to undertake separately the burden of reviewing

4   attorney e-mails, which is very unusual in this

5   context.  It's common when the attorney is not really

6   functioning as an attorney, when the attorney is

7   really -- they have a JD, but they're doing business

8   work.

9           That is not the case here.  These are

10  in-house lawyers for J&J.

11          So if we are required to review their

12  documents separate from reviewing the business

13  people's documents, what we're going to do, you know,

14  we'll have someone sitting at a computer, privilege,

15  privilege, privilege, and at the end they will get

16  thousands more entries.

17          The cost of that to us is significant.

18  The benefit to them will be negligible or

19  non-existent, because these are people engaged in

20  legal work.  They're not doing business work for the

21  company.  They're lawyers practicing as lawyers.

22          MR. DUNLAP:  Your Honor, may I respond

23  briefly to that?

24          JUDGE WOLFSON:  Yes.

25          MR. DUNLAP:  So since the letter went

Page 49

1    out we have seen documents indicating that a couple

2    of these folks did have communications with third

3    parties, not just Trial Card, but another J&J

4    consultant called Archbow.

5              Where I think your Honor is going, and

6    this might be something we can discuss, is something

7    where they don't have to review, in the first

8    instance at least, all the internal e-mails, which

9    really seems to be Mr. Sandick's concern, but start

10   with the production of their communications with

11   third parties outside of JJHCS limited by search

12   terms, specifically folks like Archbow or Trial Card

13   or the other consultants that we know were involved

14   in discussions like this.  That might be a place to

15   start.

16             I just want to note that we have dropped

17   our request for the one in-house lawyer who

18   apparently functioned in a litigation function.

19             JUDGE WOLFSON:  Mr. Grossman?

20             MR. DUNLAP:  Mr. Grossman, yes.

21             So we're only down to these other two.

22   So we would think that that might be a place to

23   start.

24             MR. SANDICK:  Your Honor, even on the

25   issue of external communications there is, of course,

Page 50

```
1    a privilege doctrine that when someone working
2    outside of the company is either serving,
3    essentially, as a functional employee of the company
4    because of the nature of the work that they're doing,
5    or is part of a discussion in anticipation of
6    litigation, those e-mails involving the lawyer will
7    also be protected.
8              So even the screen that Mr. Dunlap is
9    proposing is a very -- it's a very poor tool for
10   limiting the burden on us.
11             What they are getting is, to the extent
12   that Ms. Harris is on communications with external
13   parties, for instance, let's say -- going to
14   Mr. Jeffcoat again, to use him as an example, he
15   wants to enter into some kind of a contract to help
16   manage the CarePath program, he has back and forth
17   with his business counterpart at this other company,
18   at some point he will copy Ms. Harris on that e-mail,
19   and then there will be some external discussions.
20   But those aren't discussions that drop the business
21   people.  The business people are always involved.
22   Ms. Harris is just there maybe to look at a contract
23   or provide legal advice offline to Mr. Jeffcoat about
24   the nature of the business that is being proposed.
25             So we do object to the inclusion of
```

Page 51

1   lawyer custodians when we know that these are lawyers
2   doing legal work, not business work.
3                   JUDGE WOLFSON:  I want to go back to the
4   limitation that Mr. Dunlap raised, which is as to
5   third parties.
6                   Address that.
7                   I know you said they subpoenaed Trial
8   Card.
9                   That doesn't relieve you.
10                  As you know, more than one party could
11  have a document, and sometimes one of the parties
12  doesn't maintain the documents properly.  It doesn't
13  relieve your obligation to produce them as well.
14                  So I want to address communications with
15  third parties.
16                  And I know you said, well, there could
17  be an occasion where she is having a communication
18  with a third party, but we still believe privilege
19  applies.  And that's when you put it on a privilege
20  log though.  It doesn't mean you produce it, it ends
21  up on a privilege log.
22                  What is the problem with the third-party
23  communications?
24                  MR. SANDICK:  So third-party
25  communication issue, number one, they are going to

1    have -- just saying based on our investigation for a

2    long time in this matter -- Ms. Harris'

3    communications with third parties when she has been

4    copied on an e-mail, or is the recipient of an

5    e-mail, they are going to be business people who are

6    already custodians in this case.  So we are doing

7    this work for no additional advantage.  We're going

8    to be reviewing documents that are already in the

9    files of the business people at JJHCS.

10                   JUDGE WOLFSON:  I hope.

11                   MR. SANDICK:  Well, or at least

12   overwhelmingly so.

13                   I can't sit here and say that there

14   might not be one document that falls outside of what

15   I'm describing, but, again, the question is, what is

16   reasonable and proportional in this context?

17                   They have 16 business unit custodians.

18   They are getting some more as a result of the Court's

19   order.  So they will be getting more production over

20   the next month.

21                   But the question is whether we should be

22   required to review all of the in-house lawyer e-mails

23   for the narrow purpose of seeing if maybe once in a

24   while she has done this.

25                   JUDGE WOLFSON:  I hope not all e-mails.

Page 53

1                    What are the search terms you're using?
2                    MR. DUNLAP:  Your Honor, may I respond
3       to that?
4                    JUDGE WOLFSON:  Yes.
5                    MR. DUNLAP:  It's not all of their
6       in-house lawyers.  It's not all of their e-mails.
7       It's just the third-party communications at this
8       point.
9                    JUDGE WOLFSON:  Third-party
10      communications on what subject?
11                   MR. DUNLAP:  Well, we will limit it to
12      search terms.
13                   The reason we're interested in these
14      folks specifically is because the other side has
15      indicated they were involved in revising the Stelara
16      and Tremfya search terms.  So communications they had
17      about the meaning of those terms outside of JJHCS
18      would be very relevant to us.
19                   And Mr. Sandick said, well, you know, a
20      lot of times when they communicate outside, they have
21      copied existing custodians.
22                   Well, if they have, then those documents
23      will be de-dupped, they will be taken out, they have
24      already been identified for review if they hit on our
25      search terms.

Page 54

1          So we think at least in the first

2    instance they should gather the documents, we can

3    talk about tailored search terms for those

4    custodians, and then give us the numbers, and then

5    they can make a burden argument that is based on

6    actual numbers.

7          JUDGE WOLFSON:  All right, this is where

8    we're going on this.

9          It's only as to two attorneys, it's

10   Jennifer De Camara and Savaria Harris, correct?

11         MR. DUNLAP:  Yes.

12         JUDGE WOLFSON:  Okay.

13         As to them we're only looking at

14   communications to third parties on narrowly-defined

15   search terms, which I don't know what they are yet.

16         MR. DUNLAP:  We're glad to meet and

17   confer.

18         JUDGE WOLFSON:  You will.

19         MR. SANDICK:  And one other thing that

20   is important here, this is only terms and conditions

21   related discovery, that's what their request was, not

22   the whole world of SaveOn.

23         JUDGE WOLFSON:  Yes.

24         MR. SANDICK:  So communications with

25   third parties relating to terms and conditions is

Page 55

1   what your Honor is asking for?

2              JUDGE WOLFSON:  And I think this was

3   really within the Stelara and Tremfya area.

4              MR. SANDICK:  Right.

5              MR. DUNLAP:  Yes, that's why we were

6   interested in them.

7              I will say, if they mention SaveOn to a

8   third party, we do want to know about that.

9              MR. SANDICK:  What is the entitlement to

10  that?

11             MR. DUNLAP:  Because it goes to J&J's

12  awareness of SaveOn and their responses to SaveOn.

13             MR. SANDICK:  This has never been

14  briefed, your Honor.

15             JUDGE WOLFSON:  Yeah, I'm not addressing

16  that today.  If you want to address that with them,

17  you can address that with them.

18             MR. DUNLAP:  I think there are two other

19  issues that I think linger from the later time

20  period.  The custodians was one of the three.

21             So in our original request we had ask

22  that they run I think five search terms during this

23  later time period.  Four of those they had already

24  agreed to run for the earlier time period, but there

25  is one search term that we had asked them to run for

1    the 2022 time period forward that was not caught up

2    by Judge Waldor's order, and it's my understanding

3    that they're declining to run it, and it's one that

4    we think is very important, and it is a term that

5    asks for the term EI, which is benefits

6    investigations, which is what Mr. Sandick discussed

7    earlier, within the same document as Stelara and

8    Tremfya.

9                 So you may have recalled him saying that

10   through Trial Card they are producing information or

11   copies of benefits investigations they conducted for

12   Stelara and Tremfya because at that point they

13   specifically started asking to look for whether

14   people were on SaveOn advised plans or not.

15                So we want documents relating to those

16   investigations, which is why we asked them to include

17   the search term.

18                I believe they're declining to run it

19   and we think that they should.

20                MR. SANDICK:  Your Honor, they are going

21   to be getting benefits investigations documents

22   relating to Stelara and Tremfya as a result of Judge

23   Waldor's order.  What they need beyond that I do not

24   perceive it or understand it, but maybe they should

25   wait to see what our production is.

Page 57

1          JUDGE WOLFSON:  See what their

2    production is, and if there is still an issue, I'll

3    resolve it.

4          MR. DUNLAP:  Glad to reserve that.

5          There is just one other issue that I

6    believe is still out there, which is within the

7    documents that they reviewed for this later period,

8    2022 through November of last year, we believe that

9    they should be looking for and producing documents

10   identified by the search terms that go to their

11   enforcement of the Stelara and Tremfya conditions.

12         I believe there was an indication in

13   some of their correspondence that they weren't going

14   to do that.  We don't think there is a basis for

15   that.  We think that if there is a document

16   identified by the search terms and it goes to

17   enforcement of these terms, we need to see it,

18   because we have seen some documents from that time

19   period indicating ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

24         We just want to make sure that they're

25   producing documents relating to the enforcement of

Page 58

1   those terms.

2               MR. SANDICK:  The first time that I ever

3   heard this issue raised was right now.

4               I have in front of me the search

5   terms that they proposed on terms and conditions.  I

6   don't know what he's saying, how it connects to any

7   of this.  I'm just totally surprised by what he's

8   proposing.

9               JUDGE WOLFSON:  Then talk after we're

10  done.

11              MR. DUNLAP:  Sure.

12              We have met and conferred about this,

13  but we'll do it again.

14              JUDGE WOLFSON:  Okay.

15              Let's turn to the financial documents.

16  I think that's the next thing.

17              Now, what I understand is Plaintiff has

18  produced documents that bear on the following:  The

19  extent of the harm that SaveOn has caused J&J during

20  the relevant time period; and then a number of other

21  things.

22              What are those documents?  That is a

23  general description.  What does that mean?  What are

24  you producing to them?

25              MR. SANDICK:  So what we've produced to

Page 59

```
1    them is ████████████████████████████████████████
     ███████████     ████████████████████████████████
     ██████████████████████████████    We have, of course,
4    agreed to update that through the present.
5    ████████████████████████████████████████████████
     ████████████████████████████████████████████
     ████████████████████████████████████████
8         What they are asking for is -- going
9    back at one point at least to 2009 -- all documents
10   and communications about those budgets.  And they've
11   offered no rational for why they need all documents
12   and communications about the budget.
13         So this is one where we do object on the
14   basis of relevance.
15         What matters is what budget was set; how
16   much was paid.
17   ████████████████████████████████████████████████
     ███████████████████████████████████████████████
     ████████████████████████████████.  So we've already
20   produced substantial budget data.
21         What we haven't produced is all
22   communications ever about how much money was going to
23   be spent.  We don't think that is necessary for the
24   case.  It creates burden for no benefit.
25              JUDGE WOLFSON:  Okay.
```

Page 60

1          MR. DUNLAP:  So, they bring a GBL claim

2    against us alleging that we caused public harm.

3          One of the things that they allege that

4    we do is that we threaten the financial viability of

5    CarePath.

6          That is right in their complaint.

7          We don't think that SaveOn threatens the

8    financial viability of CarePath, number one.

9          And number two, we don't think that this

10   is a public harm, because CarePath is actually the

11   marketing program.  It is designed to encourage

12   patients to buy Johnson & Johnson's drugs instead to

13   competitors' drugs.

14         And there is case law saying that if

15   what you're really doing is impacting somebody's

16   business, that is not a harm recognizable under the

17   general business law, which is about protecting the

18   public.

19         We need documents showing who sets the

20   budget, why is it set, where do the funds come from.

21         JJHCS is a division of Johnson & Johnson

22   that as far as we know doesn't make any products or

23   offer any services outside of Johnson & Johnson.

24   It's an administrative entity that serves other J&J

25   entities.

Page 61

1          If, in fact, the budget for CarePath is

2   part of the marketing budget, if, in fact, it is not

3   part of some sort of public or charitable effort,

4   that goes a long way in showing that this was a

5   marketing program.

6          If, in fact, we can show that the

7   budget -- the factors that go into setting the budget

8   are not actually impacted by what SaveOn is doing and

9   they're going to keep funding this anyway, that could

10  go a long way in showing that we don't actually

11  threaten their financial viability.

12         What they have produced are a limited

13  number of documents showing amounts paid out under

14  the CarePath program and some budgeting documents,

15  but they're just numbers, they don't show us why the

16  budgets were set, we don't know who sets the budgets,

17  there is no documents indicating any of that.

18         We're not asking for every single

19  communication under the sun about this.  It's a

20  question of whether this is relevant.  And we think

21  it's squarely relevant.

22         And if we can establish that, then we're

23  glad to work on determining who the right custodians

24  are and the search terms and all of that.

25         JUDGE WOLFSON:  Let me first stop you.

Page 62

```
 1              Judge Vazquez talked about public harm
 2    in his opinion, and the way he analyzed it was -- he
 3    said that "Plaintiffs plausibly allege at least two
 4    deceptions as to consumers:  One, enlisting
 5    pharmacies to reject Plaintiffs' claims for their
 6    prescriptions at the point of sale; and two, failing
 7    to inform patients that by enrolling in SaveOn SP can
 8    breach the CarePath terms and conditions."
 9              The things you're looking to do don't
10    answer those public harm questions.
11              So I want to get away from that for a
12    moment.
13              I think really the focus here is on the
14    harm to the Plaintiff itself and how the discovery
15    relates to that.
16              So let's focus on that.
17              I know that one of the arguments is the
18    viability, economic viability of the program.
19              Okay.
20              Yeah.  Documents that go to that are
21    important.
22              Could be communications go to it.
23              I think at this point what you've
24    done -- I don't know if you have produced any
25    communications.  You have given budgets.  You have
```

1   given I think you know -- let's see -- data.

2            What have you given?

3            MR. SANDICK:  We have given them

4   documents about how co-pay assistance is determined.

5   We answered interrogatory on this subject.

6            They said we don't know who makes the

7   decisions.

8            Literally that exact question of who

9   makes the decisions was the subject of our

10  interrogatory response that we provided this summer

11  after Judge Waldor told us that she wanted us to

12  broaden our response on that.

13           JUDGE WOLFSON:  Okay.

14           MR. SANDICK:  Patient level data to show

15  every patient enrolled, dates of enrollment, the

16  amounts of assistance, the drugs they took, all of

17  this for a six-and-a-half year period.

18           You know, why would they need

19  communications within various parts of the J&J

20  company, not just JJHCS, but other components of the

21  company, why would they need that to figure out what

22  damages are?  There is no need for that.

23           JUDGE WOLFSON:  I will tell you, I think

24  that your requests in the financial area are over

25  broad.

Page 64

1                    There may be areas that are pertinent,
2       and I want to define what they are.
3                    I think to the extent that the harm
4       being alleged is a financial harm to the CarePath
5       program and, as you call it, the viability of the
6       program, there could be communications that could be
7       relevant.  It's not just what the budget is, but if
8       people are saying, you know, this is going to hurt
9       our bottom line, we're going to be okay, but it's
10      going to hurt our bottom line, that could go to your
11      viability argument.
12                   There certainly could be communications.
13                   So what I would like is a better or more
14      narrow request for what those communications are as
15      opposed to the entire world.
16                   Frankly, the success of these drugs is
17      really not the issue for me or for this case.  These
18      are about programs.
19                   I know you say this is really a
20      marketing tool, it's not to help the patient.
21                   Maybe.
22                   Maybe they're not such good guys.  I
23      don't know, that is not my determination today.  That
24      is not what this is about.
25                   They created a program.  They are, you

Page 65

1    know, entitled to enforce the program how they'd
2    like.
3                And this is not a determination of, as I
4    said, are they benevolent here in doing something
5    great or not.  That is not the inquiry.  It's an
6    economic harm that is being alleged.
7                Right?
8                MR. DUNLAP:  Your Honor, may I respond
9    to that?
10               JUDGE WOLFSON:  Yeah.
11               MR. DUNLAP:  So I believe you said
12   that -- and you cited the Court's opinion in talking
13   about the harm and pointing to things like failing to
14   say that signing up for whatever it is allegedly
15   breaches the contract.
16               I just want to clarify the elements of
17   the GBL claim.
18               I believe when Judge Vazquez was talking
19   about those things he was talking about the
20   underlying acts.
21               The elements are, you have to have an
22   act that is consumer facing, public facing, that is
23   deceptive or missing.
24               That is one.
25               Two, that act has to cause some sort of

Page 66

 1   harm to the public.

 2             And then third, that act also has to

 3   cause some sort of harm to the Plaintiff bringing the

 4   suit.

 5             So when he was talking about failing to

 6   tell patients that they breached their contract, he

 7   was talking about the deceptive act, one of the

 8   alleged deceptive acts.  He wasn't talking about the

 9   harm that they allege.

10             The harm that they allege, if you look

11   at the complaint --

12             JUDGE WOLFSON:  Yeah, but I'm looking at

13   his opinion right here.

14             You're right, he is talking about the

15   deception.

16             But turning to Defendant's argument.

17             "The Court first agrees with Plaintiff

18   that a plausible belief that Defendant deceived

19   participants already enrolled in CarePath.

20   Similarly, the Court disagrees with Defendant's

21   reading that the statute requires a threat to the

22   health or safety of the public at large.  While

23   Plaintiff must plausibly allege some harm to the

24   public at large, while a threat to the health or

25   safety of the public is certainly a way to meet this

1   obligation, the statute is not related to health and

2   safety harms," and then it goes on to say what he

3   says.

4          Now, you may think that his opinion

5   didn't adequately address harm, but we have what he

6   did.  And, you know, it's not a lengthy opinion, and,

7   you know, but it is what is, and that is how he did

8   it.

9          But I want to get to, I think that -- I

10  believe that this financial information overall, your

11  request 28, 29, and I think 30, are over broad, and I

12  want to talk about what narrow requests could be

13  relevant to your claim.

14         MR. DUNLAP:  Your Honor, I don't want to

15  belabor this, but just in response to what you said,

16  which is, what the Court did was it disagreed with

17  our basis to dismiss the complaint in terms of

18  allegations of harm to the public.  So as I

19  understand it, he allowed J&J's allegations to go

20  through to discovery.

21         Those allegations of harm, paragraph 114

22  of their complaint, says SaveOn causes damage to the

23  public, including patients, through a series of

24  things, one of which is jeopardizing the viability of

25  patient assistance programs like CarePath by making

Page 68

1    them prohibitively expensive.

2                    JUDGE WOLFSON:  But that is the point.

3                    I am saying discovery about the

4    viability of the program is fine.  That is the

5    limitation.  And so that's what I'm focused on.  But

6    that's why I'm saying, things that you're saying

7    about, oh, but let's see how much money J&J makes on

8    Stelara, let's see how much money J&J makes overall,

9    is really not the issue.  I want to focus on the

10   program itself.

11                   MR. SANDICK:  And, your Honor, just to

12   clarify the subject of the public harm that we're

13   alleging.

14                   The public harm in this case is not even

15   exclusively or primarily this viability issue, what

16   it is, and as we have seen in discovery, is across

17   the country patients who come into contact with the

18   SaveOn program find their lives made much worse by

19   it.  ████████████████████████████████████████

20   ████████████████████████████████████████

21   ████████████████████████████████████████████

22   ████████████████████████████████████████

23   ████████████████████████████████████████████

24   ████████████████████████████████████████████████

25   ████████████████████████████████████

Page 69

1              So the idea that somehow this will be a
2       case primarily about the viability of SaveOn, 349, as
3       I'm sure the Court knows, is a statute about consumer
4       harm, and consumer fraud, and the consumers have been
5       very badly harmed.
6              That evidence will be what this trial is
7       about.
8              JUDGE WOLFSON:  That is fine, but I want
9       to now get to the other aspect, which was what his
10      requests were about, which is the viability of
11      CarePath and what documents are necessary to talk
12      about that economic harm that challenged the
13      viability of CarePath.  And let's come up with
14      requests that are more narrowly tailored to that.
15             I don't think getting discovery on, you
16      know, gee, you're making -- you know, this is really
17      a marketing program, or, more broadly, J&J makes a
18      lot of money on these drugs.
19             Let's break it down.
20             So, with regard to CarePath
21      specifically, what do you think you're missing that
22      you need to give you the discovery you require to
23      show how this impacts the viability of CarePath.
24             MR. DUNLAP:  We need to understand how
25      Johnson & Johnson sets the CarePath levels, how it

Page 70

1   decides on the budget, where that is done, the

2   factors that go into it, and relevant communications

3   about that.

4                   JUDGE WOLFSON:  Okay.

5                   Frankly, I find that okay.

6                   So that's where we are.

7                   Let's move onto the next.

8                   J&J's return on investment from

9   CarePath.

10                  MR. DUNLAP:  I'm glad to speak about it.

11                  Return on investment documents we think

12  goes to fundamental issues of injury and damages.

13                  Fundamental issues of injury and

14  damages.

15                  Their allegation is that somehow what we

16  do causes them to pay out more in CarePath, in these

17  co-pay assistance funds, and they say, we don't want

18  to be paying this much money, it costs us however

19  much it costs us, that is our injury, and those are

20  our damages.  We will figure that out.

21                  Part of what SaveOn does on behalf of

22  its plan clients is it helps more people enroll in

23  CarePath and take more Janssen drugs.

24                  So we believe that if you look at the

25  additional patients who have signed up for CarePath,

1    the additional patients who have bought more Janssen

2    drugs as a result of what we are doing on behalf of

3    our clients, that Johnson & Johnson has made much

4    more money in terms of drug sales, new drug sales, it

5    otherwise would not have made than in the money that

6    it pays out.

7              Now, it has been well documented,

8    including congressional hearings, that a lot of drug

9    companies specifically monitor their return on

10   investment.

11             You can spend a little bit of money to

12   help patients take your drugs as opposed to a

13   competitors.  You can sell many more of these drugs

14   that the commercial health plans then basically pay

15   for.

16             That's why they do this, it's part of

17   the purpose of the program, not to benefit the

18   public, but to make this amazing investment, this

19   amazing return for themselves.

20             So that goes to whether it's a public

21   harm.

22             But it also goes to the question of

23   injury and damages.

24             If we are signing more people up and

25   they are paying more in CarePath assistance funds,

Page 72

1    but they're making much more in drug sales, we think
2    that offsets or eliminates their damages, and it
3    might offset or eliminate their entire injury.
4              These return on investment documents are
5    absolutely critical to us.  We can talk about the
6    scope of how we get them, the type of data they
7    produce, the type of communication they produce, but
8    the subject of return on investment is critical to
9    our defenses on injury and damages, and it's relevant
10   to questions of public harm and GBL.
11             MR. SANDICK:  Judge, I would like to
12   respond.
13             JUDGE WOLFSON:  Sure.
14             MR. SANDICK:  This argument is
15   essentially that if CarePath, you know, and Johnson &
16   Johnson are still able to make money despite the
17   looting of the program that his client has engaged
18   in, then, you know, it's okay.  It's okay to steal
19   from someone, and to loot a program, so long as at
20   the end of the day they're still making money.
21             If this program was helping the
22   pharmaceutical manufacturers, as Mr. Dunlap suggests,
23   why have they gone through such extensive efforts to
24   hide their existence, to prevent us from knowing who
25   was in the program?

Page 73

1            If these were something that, you know,

2       advanced the profitability of the CarePath program,

3       or of pharmaceutical industry generally, why are they

4       hiding this from everyone?

5            This is a made for litigation argument

6       to obtain documents that have nothing to do with the

7       case in an effort to shift the case from a fairly

8       specific question, do their efforts lead CarePath to

9       pay more money than it would pay in the absence of

10      CarePath, into a huge question about how much money

11      is J&J making on its drugs, can it afford to absorb

12      some losses here because they're generally a

13      profitable company, things that are just totally

14      irrelevant.

15           Also, just for a moment on the burden

16      issue.

17           The question of how much money does a

18      drug company make on a particular drug is not a

19      simple question, you know, residing in a couple of

20      paper files in someone's office.  This is a massively

21      complicated question that goes to virtually every

22      corner of the entire J&J company to figure out, you

23      know, is a drug profitable relative to what?  To

24      other investments?  To other potential drugs?

25           It's an effort to place a huge burden on

Page 74

1   us for no benefit in the lawsuit.  It's totally

2   irrelevant to the lawsuit whether or not the whole

3   company of Johnson & Johnson makes more money or less

4   money.

5            The question is, are they inducing

6   people to breach the terms and conditions, the

7   patients, are they forcing them to do this in order

8   to get their medication, are they causing harm to

9   those patients, and does this lead to an increase in

10  the amount of co-pay support that we would pay absent

11  that?

12           They are reframing this to entities, by

13  the way, that are not part of this lawsuit.

14           JUDGE WOLFSON:  Well, that's why I want

15  to ask a question.

16           May I stop you there for a minute?

17           MR. SANDICK:  Sure.

18           JUDGE WOLFSON:  I find this curious, and

19  I have been wondering about this as I've looked at

20  this case since the beginning, the only Plaintiff in

21  this case is JJHCS, not J&J.  So the question is, you

22  have just defined, Mr. Sandick, that this is a very

23  narrow harm, narrow in the sense of to this one

24  subsidiary or affiliate that runs the CarePath

25  program.

Page 75

```
 1              You want to argument more broadly, it's
 2    much more than that.  J&J is making a lot of money.
 3              So, first of all, who funds the CarePath
 4    program?
 5              MR. SANDICK:  So -- I'm not actually
 6    sure what the -- it's something within the Johnson &
 7    Johnson family of companies, but I couldn't say
 8    specifically.  I think there are specific drugs that
 9    fund -- essentially that fund their own co-pay
10    support, it's not decided in one person's office
11    sitting alone.
12              JUDGE WOLFSON:  Okay.
13              So those decisions are made somewhere
14    else within corporate J&J perhaps, it's not limited
15    to this one entity who is the Plaintiff in the case,
16    but who may be the one administering it.
17              I understand your arguments, Mr. Dunlap.
18    I'm not buying it at the moment.
19              What I don't want to see happen too in
20    this case is that this becomes, essentially, J&J is a
21    big company that makes a lot of money.  Don't cry for
22    them.
23              And I don't think, by the way, any juror
24    is going to believe that anyway, that you're doing
25    something that's greatly going to harm the overall
```

1   J&J company.

2              So that's why I'm trying to figure out,

3   if you're narrowing harm as to the CarePath program

4   itself that exists within this one entity.

5              MR. SANDICK:  That is the case.

6              We are not, for example, this is not a

7   case about lost profits.  This is not a case about

8   the harm, more broadly, to Johnson & Johnson.  This

9   is a program that says, well, the program gets this

10  amount of money.  As a result of SaveOn, they need to

11  spend this amount of money.  And that delta is the

12  financial damage.  And then the patient harm is what

13  we talked about before.

14             JUDGE WOLFSON:  Yeah, that's what I'm

15  dealing with now on financials.

16             MR. DUNLAP:  So I have to reiterate how

17  strongly we believe this is relevant and how

18  important we think these documents are.  And, again,

19  we're glad to talk about exactly which documents they

20  would produce, what sort of data, et cetera.

21             But the name of the program, or it used

22  to be, it was not just CarePath, but Janssen

23  CarePath.  Janssen being the entity that actually

24  sells the drug.

25             They decided to arrange their business

1    so that this entity develops and sells the drug,

2    Janssen, and this entity administers the CarePath

3    program, but the two are related.  Of course they

4    analyze their return on investment.  There is, again,

5    congressional testimony showing that a number of

6    these drug companies do that.  And we haven't heard

7    them say that they don't have return on investment

8    related documents.  They figure out how much they're

9    going to give to CarePath to give to patients.  They

10   figure out how much that helps them drive additional

11   sales over in the Janssen entity.

12            We don't think that they should be able

13   to say, well, nothing that happens over in Janssen in

14   terms of additional sales is relevant because they

15   decided to put the CarePath program under JJHCS.

16            We're not trying to stand up and say,

17   oh, J&J makes a huge amount of money generally.

18   We're not interested in baby powder sales or shampoo

19   sales or anything.

20            JUDGE WOLFSON:  I know that.

21            MR. DUNLAP:  But we do think that this

22   fundamentally goes to what the purpose of this

23   program is and what the financial consequences of it

24   are.

25            They want to stand up and tell a story

Page 78

```
 1    that says, J&J provides this money to help patients
 2    for their drugs and SaveOn comes in and loots and
 3    steals and all the other pejorative terms Mr. Sandick
 4    used.
 5              We think that that is not true.
 6              What we want to be able to stand up and
 7    say, they don't offer this program to help patients.
 8    They offer this program to help persuade people to
 9    buy their drugs instead of their competitors.
10              And what SaveOn does on behalf of its
11    plans actually winds up with them making more money.
12    It's not, oh, they make lot of money, they can afford
13    this.  It's that the direct consequences of the
14    actions that they have put at issue causes them to
15    make more money.  That there is an offset through the
16    additional drug sales that we are able to drive by
17    signing more people up for CarePath that more than
18    offsets the additional CarePath funds that they're
19    spending.
20              This isn't some general argument, they
21    make a lot of money, they can afford it.  That is not
22    what it is.  It is directly tied to the allegations
23    in the complaint.
24              And I have to underscore -- you know,
25    we're glad to narrow, as I said, the search terms,
```

Page 79

1    the types of requests that we go after here.

2                    JUDGE WOLFSON:  Tell me what that

3    narrowing would be.  Let me hear that.

4                    And I do appreciate, but I'm assuming

5    you are producing documents about CarePath being

6    created and what it's intended to do and how it's

7    being funded.

8                    MR. SANDICK:  Absolutely.

9                    And the reason, by the way, it's named

10   Janssen CarePath is not like some secret thing, it's

11   because patients know the company as Janssen.  So if

12   you take Darzalex, you know that is a Janssen drug.

13   Janssen CarePath helps you pay for it.

14                   That is the reason that at one time

15   Janssen was part of the name, it's not some broad

16   conspiracy theory.

17                   MR. DUNLAP:  We're not alleging a

18   conspiracy theory.

19                   JUDGE WOLFSON:  What is the narrow terms

20   you would say?

21                   MR. DUNLAP:  We need documents showing

22   Johnson & Johnson's analysis of its return on

23   investment for CarePath.  Not just the data about

24   what it's paid out.  We know thing going to produce

25   that because that's driving their damages.

Page 80

1           JUDGE WOLFSON:  Repeat that.

2           MR. DUNLAP:  We need Johnson & Johnson's

3   analysis of its return on investment for the CarePath

4   program, including how it helps patients adhere to

5   Janssen drugs once they enroll in CarePath, and we

6   want relevant communications on that topic as well.

7           MR. SANDICK:  Your Honor, what that

8   would require is, essentially, a company wide X-ray

9   of how much money the company makes on all of these

10  different drugs, how much it costs to make these

11  drugs, how much it costs to market these drugs.  All

12  of that information would be necessary.  A vast

13  project, totally irrelevant to the case.

14          And on the subject of adherence, by the

15  way, this is something that is very important for

16  your Honor to know, ████████████████████████

17  ████████████████████████████████

18  ████████████████████████████████████

19  ████████████████       We have documents.  We can

20  produce those to the Court if that is relevant, I

21  don't think it is necessary to reach this.  But the

22  notion that the adherence story somehow resides

23  within JJHCS, they've looked at it.  They know

24  already.  Their partner is Express Scripts.  They get

25  all sorts of tremendous industry wide data.  Express

Page 81

1    Scripts manages pharmaceutical benefits for more

2    Americans than any other company.  So if there is an

3    adherence story, they would know it.  And what

4    they've have figured out was it's nonsense.  There is

5    no adherence story.

6              And what he said is not a narrowing of

7    the request, when he said, "oh, this is my narrowed

8    request."  It is almost verbatim what they've asked

9    for in the requests, in the discovery correspondence,

10   before Judge Waldor.  It's not a narrowing at all in

11   any regard.

12             MR. DUNLAP:  Can I respond to those

13   points, your Honor?

14             JUDGE WOLFSON:  Go ahead.

15             MR. DUNLAP:  So, first, he's acting as

16   if we're asking him to create a return on investment

17   analysis from scratch and just go out into the

18   company and all the various corners of it and try to

19   figure this out.

20             No.

21             We want whatever analyses they have

22   already done on their return on investment for

23   CarePath.  There has to be existing work product on

24   this.  Whatever finance teams or product teams drive

25   it must have done something.

Page 82

1          JUDGE WOLFSON:  He's limiting it to

2     CarePath not on your drugs.

3          MR. SANDICK:  Well, in order to figure

4     out the question of whether CarePath is helpful you

5     have to look at all of these other issues relating to

6     the manufacturing, development, marketing, and sale

7     of the drugs, and I don't think -- I know Mr. Dunlap

8     keeps saying there is one piece of paper and it will

9     have all the answers -- I don't think that is true,

10     not based on anything I have seen.

11          MR. DUNLAP:  So the return on investment

12     documents would say, we put this much money into

13     CarePath, and then we make this much money in terms

14     of selling additional drugs to patients over in the

15     Janssen entity.

16          We're not asking him to, you know,

17     search every single corner for documents that are

18     irrelevant or -- we want whatever analysis they have

19     done.

20          They do CarePath for a reason.  There

21     must be some analysis of the benefit that CarePath

22     has on Janssen's product line.

23          MR. SANDICK:  The question of whether

24     CarePath operates for charitable purposes or for

25     business purposes is not really relevant to the case

Page 83

1     if they're taking money from it.

2              If you run a car dealership and someone

3     steals a car once a week from your lot, it doesn't

4     matter whether as an overall matter the dealership is

5     still making money, it's still wrong to take cars

6     from people's lots, and it's wrong to induce people

7     to breach their terms and conditions in order to make

8     more money.

9              So the idea that somehow it matters how

10    profitable CarePath is or whether it's prudent for

11    J&J to run it, it's just moving the case far, far

12    away afield from anything in the complaint, the

13    judge's order, into this other subject of, is this

14    segment of J&J's business, the drug segment, is it

15    profitable, and is this just some gold dust from the

16    machine that it's okay for SaveOn to take.

17             Whether CarePath has a huge return on

18    investment or has no return on investment, it still

19    has no bearing on whether they're allowed to do this.

20    It's irrelevant to the case.

21             MR. DUNLAP:  Your Honor, if I could just

22    respond quickly.

23             JUDGE WOLFSON:  Yes.

24             MR. DUNLAP:  It has a huge bearing on

25    whether we have actually damaged them because if the

Page 84

```
1    action we take by signing someone up for CarePath,
2    what they call the SaveOn program, resulted in a new
3    patient signing up for CarePath, they're saying, wait
4    a minute, we have paid more to that patient than we
5    otherwise would have.  But if by signing them up we
6    gave them more drug sales, we produced more drug
7    sales for Janssen, which is a J&J entity, then that
8    additional money eliminates whatever damage we say
9    was caused -- they say was caused by the additional
10   expenditure of CarePath funds.
11           Now, of course it's fine for him to
12   argument differently at trial if he wants to, but we
13   need these documents to show that we're not actually
14   injuring them.
15           And the car dealership scenario he
16   provides makes no sense, frankly.  If you steal a car
17   a week from a car dealership, that might be illegal,
18   but it's not a GBL claim.
19           JUDGE WOLFSON:  Let me ask you this
20   question:  Mr. Sandick, is there any analysis --
21   their position is, guess what, we make more sales for
22   you.  More people sign up because of the SaveOn
23   program.  And that may not be accurate.  You may
24   dispute it.
25           Is there a document or do you have
```

Page 85

1    documents that show whether, indeed, as a result of

2    --

3             MR. SANDICK:  If we do and it talks

4    about SaveOn, it would have already been produced.

5             MR. DUNLAP:  Aw, if it talks about

6    SaveOn.  That is the critical point.

7             MR. SANDICK:  Well, yeah, this is a case

8    about SaveOn.

9             There is literally no way to search as a

10   practical matter without going to every corner of the

11   business to generate the information that Mr. Dunlap

12   wants to be generated for this case.

13            JUDGE WOLFSON:  I didn't ask you to

14   generate it.  What I asked was, has anyone done an

15   analysis for documents that exist as to whether there

16   are more patients signing up for your drugs or

17   getting the drugs who are SaveOn customers?

18            MR. SANDICK:  I have seen that analysis

19   in their files stating that it's not true.

20            They have, along with their business

21   partner --

22            JUDGE WOLFSON:  I asked if you have it?

23            MR. SANDICK:  I haven't seen that

24   document.

25            JUDGE WOLFSON:  Answer that question.

1              MR. SANDICK:  I have not seen that

2      document.

3              JUDGE WOLFSON:  I'm asking if there are.

4              Do a search for that.

5              I want to start in that instance.  I

6      think that is a starting point.

7              MR. SANDICK:  What is the search, your

8      Honor?

9              JUDGE WOLFSON:  Whether there are

10     documents that exist that have looked at whether

11     there are more patients taking your drugs as a result

12     of being in the SaveOn program.  That's the inquiry.

13             MR. DUNLAP:  Your Honor, may I?

14             JUDGE WOLFSON:  Yes.

15             MR. DUNLAP:  I think it is necessary for

16     them to do that search, but we don't think it should

17     be limited to that.  And let me tell you why.

18             JUDGE WOLFSON:  I'm going to start with

19     that.

20             MR. DUNLAP:  Limiting it to the SaveOn

21     program we think has too narrow a net because if they

22     have documents that say, you know, for every

23     additional hundred people we sign up for taking

24     Stelara, we make this much money, that may not

25     mention SaveOn, but if we could find those documents,

Page 87

1    if we could find that analysis, and then we compare
2    that with our own separate analysis of how many new
3    patients we got to sign up, we can show additional
4    profits to them as well.
5              So the relevant documents may not
6    mention SaveOn.  I understand you want to start
7    narrow, but I just want to put a stake in the ground
8    that we don't think limiting return on investment
9    information to SaveOn is sufficient.
10             MR. SANDICK:  Yeah, I mean, if it
11   doesn't mention SaveOn, then I don't see what it has
12   to do with this issue.
13             I should also point out that going back
14   right to the start of the case we made some requests
15   to SaveOn, saying, we want to know about how your
16   program operates with other pharmaceutical companies,
17   because the public harm in the GBL 349 claim is not
18   limited to harm to patients taking our drugs, it
19   could be patients taking Pfizer's drugs, or some
20   other company's drugs, those could also be harmed
21   under 349.
22             They objected and said, anything beyond
23   Janssen and SaveOn, CarePath and SaveOn, we object
24   to.  And Judge Waldor heard argument and ruled in
25   their favor and said, absent some very specific

Page 88

1    showing, and a couple of times that showing has been
2    made, they don't have to tell you about their program
3    as it ties to other drug companies.  But now they are
4    making the mirrored request saying we have to do
5    something that has nothing to do with SaveOn.
6              MR. DUNLAP:  The mirrored request is
7    about Janssen drugs.  We're not asking them for all
8    kinds -- the draft drugs at issue in this case.
9    We're not asking for return on investment on a whole
10   bunch of drugs that aren't at issue.  What is their
11   return on investment for the drugs at issue, those 14
12   drugs.
13             JUDGE WOLFSON:  I need it to be honed in
14   on SaveOn at the moment, and I'm limiting it to that.
15   You're certainly free to come back to me depending on
16   what we get.  I know we're not done.
17             MR. DUNLAP:  Thank you, your Honor.
18             JUDGE WOLFSON:  All right.
19             But answer that, please.
20             MR. SANDICK:  Okay.
21             JUDGE WOLFSON:  Are those all the old
22   requests?
23             MR. DUNLAP:  Well, I think there was
24   also a pricing issue, a pricing data issue.
25             JUDGE WOLFSON:  The pricing of Janssen

Page 89

 1    drugs.

 2              MR. DUNLAP:  I could address that

 3    briefly.

 4              JUDGE WOLFSON:  Go ahead.

 5              MR. DUNLAP:  So they allege in their

 6    complaint that they have actually lowered the cost of

 7    Janssen drugs, and they cite for that something that

 8    they call a transparency report, which is a

 9    publicly-available document that they put up on a

10    website that says, we have lowered the cost of

11    Janssen drugs, but it provides no actual data.  And,

12    in fact, if you go and look at those reports, it

13    drops footnotes that says, we base this on internal

14    Janssen financials.  But they haven't produced the

15    backup for them.  And, in fact, we think that they

16    don't actually reduce drug prices, that they increase

17    drug prices.  Which is relevant to why these plans

18    are fighting back, because the prices that Johnson &

19    Johnson continues to raise, continues to put

20    financial pressure on the plans.

21              We also think that there is information

22    showing that one of the reasons they're able to keep

23    raising drug prices is because of the CarePath

24    program and the fact that they're able to get more

25    people through that program to stay on their drugs as

Page 90

1    opposed to taking competitors' drugs.

2              We think that that is highly relevant to

3    their allegations here.

4              MR. SANDICK:  Your Honor, I think your

5    Honor may have said a few minutes ago that you didn't

6    think that the price of drugs was relevant in this

7    case, and it's not.

8              We produced the transparency reports as

9    a way of trying to give them something on an issue

10   that is actually irrelevant.

11             What they have asked for is, they say,

12   all internal data that supports the net price values.

13             Net price is, essentially, the price

14   that matters when we're talking about drug pricing.

15             And all internal data that supports it.

16             Again, this would require us to go well

17   outside of JJHCS to go through the entire company and

18   to try to explain what the pricing is, how it changes

19   over time.

20             First of all, they have a lot of this

21   information already through their business partners,

22   Express Scripts, and Accredo.  Accredo is a pharmacy.

23   The pharmacy collects payment on these drugs.  They

24   know, and their business partners know, what the drug

25   prices are.

1           But the case is not about what we charge

2     for the medication, is that a fair price, should be

3     charge something more or something less.

4           JUDGE WOLFSON:  You're not going to

5     argue that your drug pricing was affected by their

6     program?

7           MR. SANDICK:  No.  The drug pricing --

8     we're not seeking lost profits.  Drug pricing is set

9     by reference to a million factors.  SaveOn is not one

10    of them.

11          MR. DUNLAP:  If I could respond on that.

12          JUDGE WOLFSON:  Yeah.

13          MR. DUNLAP:  They say they produced

14    these transparency reports.  Of course they're on the

15    website.  This wasn't really much of a production.

16    It was something that was already available.  And

17    they say the net price is what matters.  And they

18    also say, oh, we have to go outside of JJHCS.  We

19    have to do this wide range search.

20          They put these numbers into the

21    transparency reports.

22          JUDGE WOLFSON:  But I want to know what

23    is the relevance of it.

24          MR. DUNLAP:  It's relevant -- first,

25    it's relevant because we believe it will show that

Page 92

1    their allegation that they actually lowered real

2    prices over the course of these years, something

3    they're intending to tell the jury --

4                JUDGE WOLFSON:  Well, I hope not.  I

5    just asked that.  And I'm going to put that right out

6    there again to Mr. Sandick.

7                Are you in any way going to put to a

8    jury that you lowered prices and put that up to

9    suggest implicitly or explicitly it's because of

10   SaveOn.

11               MR. SANDICK:  This is not a lost profits

12   case.  This is about the CarePath program and whether

13   that funding has had to go up over time because of

14   their efforts.

15               I think that answers your Honor's

16   question.

17               JUDGE WOLFSON:  But you're not going to

18   argue, and by that funding, we've now lowered prices,

19   or we've raised prices, or anything else?

20               MR. SANDICK:  No.  The drug pricing is

21   not set by reference to SaveOn, it's set by reference

22   to a million other things, but not SaveOn.

23               JUDGE WOLFSON:  I'm going to put this

24   right out, Mr. Dunlap, we're on the record today:  If

25   there will be no argument in this case at a trial, or

Page 93

1    at a motion for summary judgment, or wherever it

2    might be, that CarePath in any way has impacted the

3    pricing of these drugs, it's a non-issue.

4              MR. DUNLAP:  Well, they're going to

5    stand up --

6              JUDGE WOLFSON:  I'm asking.

7              I want that representation.

8              MR. SANDICK:  Yes, that is not the

9    theory of our damages.

10             JUDGE WOLFSON:  I ask for a

11   representation that you will not make that argument.

12             MR. SANDICK:  Yes, we are not going to

13   argue that our drug prices were lowered due to what

14   SaveOn has done.

15             The only argument we will make about

16   damages is how the funding for the CarePath program

17   within JJHCS has changed as a result of their

18   conduct.

19             MR. DUNLAP:  Paragraph 80 of their

20   complaint they say, "SaveOn SP has inflated patients'

21   drug co-pay obligations even as JJHCS has

22   consistently decreased the price of the drugs

23   targeted by the SaveOn SP program," and it cites its

24   own transparency report, a quote that says, "Net

25   prices for Janssen medicines has declined for the

Page 94

1    fifth year in a row."
2              MR. SANDICK:  But that is not in any way
3    different from what I just said a moment ago, your
4    Honor.  What we say there is that they have taken a
5    bigger share of the CarePath program payments even
6    while we have reduced drug prices, but we are not
7    alleging that the drug price reduction was caused by,
8    was driven by, is related to SaveOn's program.  The
9    drug prices are set not by reference to what SaveOn
10   is doing, by reference to lots of other things, but
11   not that.
12             MR. DUNLAP:  The issue, your Honor, is
13   that we don't think that allegation is true.  We
14   think that, in fact, they have raised drug prices.
15             JUDGE WOLFSON:  Well, I want to know
16   what you're going to do with allegation number 80.
17             MR. SANDICK:  What am I going to do with
18   allegation number 80?
19             JUDGE WOLFSON:  Yeah.
20             MR. SANDICK:  What I'm going to do with
21   allegation number 80 is show that they are taking an
22   increased piece of the co-pay support program.
23             We are not intending --
24             JUDGE WOLFSON:  And that is not
25   impacting your pricing?

1          MR. SANDICK:  No.

2          JUDGE WOLFSON:  Lowering your pricing or

3    raising your pricing?

4          MR. SANDICK:  No.

5          That line in there, which is far from

6    central to what our case is going to be about, what

7    that line in there is meant to say is that it is

8    commonly the case in sort of the market of public

9    discourse for insurance companies to say, oh, yes, we

10   know that your drug prices have gone up, but that is

11   not our fault, that is the drug company's fault that

12   raise their prices every year.

13         So we made this sort of rhetorical

14   aside.

15         We are not intending to show, will not

16   show, or not alleging that the cause of drug prices

17   moving up or down is because of SaveOn.

18         MR. DUNLAP:  Well, no, because they are

19   going to stand up and they're going to say, we have

20   been lowering our prices, and then they're going to

21   come in and say, while we have been lowering our

22   prices SaveOn has come in and taken a bunch of our

23   CarePath assistance programs --

24         JUDGE WOLFSON:  I think I heard you're

25   not going to say that.

1              MR. DUNLAP:  Well, I thought he said he

2      wasn't limiting it to the damages or the cause of the

3      increase.

4              MR. SANDICK:  No, we are not going to

5      argue that our damages are in the form of lost

6      profits by having reduced prices due to SaveOn.  That

7      is not our theory of the case, our damages, or

8      anything else like that.

9              If they make arguments in their case

10     using SaveOn data about drug pricing, say, no, no,

11     no, actually, these guys are -- you know, they're

12     ganas, they're taking from everyone, then we will be

13     able to come back and say something.  But our case is

14     not about the drug prices being set by reference to

15     anything that SaveOn does.  I want to make that very

16     clear.

17             MR. DUNLAP:  He keeps trying to link it

18     to SaveOn.

19             Put SaveOn aside for a second.

20             He is going to stand up at trial, if it

21     gets there, and say, Johnson & Johnson has been

22     lowering its drug prices.

23             JUDGE WOLFSON:  Why would you say that?

24             MR. SANDICK:  I don't think that we're

25     going to say that.

Page 97

1           MR. DUNLAP:  It's in his complaint.

2           JUDGE WOLFSON:  I hear it's in the

3    complaint.  Just because it's in the complaint --

4    that's why I'm looking for representations today.

5           MR. SANDICK:  We're not planning to

6    prove a case about our drug prices.  The case that

7    we're going to prove on damages, just to spell it out

8    --

9           JUDGE WOLFSON:  You're not going to open

10   and say, and you're not going to close and say, we're

11   such good guys, we keep reducing the price, but they

12   stealing from us?

13          MR. SANDICK:  No.

14          JUDGE WOLFSON:  Do you agree you're not

15   going to do that?

16          MR. SANDICK:  I agree that we're not

17   going to do that.  That's not the theory of our case.

18          MR. DUNLAP:  I just want to make clear,

19   he is not going to make any representation that they

20   have been lowering drug prices?

21          MR. SANDICK:  We are not going to make

22   that representation.

23          I want to leave myself one out, your

24   Honor.  If they start making allegations about the

25   greedy drug companies that have raised prices, I

Page 98

```
 1   think we're allowed to reply to that.  But that is
 2   not something we're planning to present.  And, in any
 3   event, they and their business partners have tons of
 4   data about this. ███████████████████████
 5   ████████████████████████████████████████
 6   ██████████████████████        ████████
 7   ███████████████████    ███████████████
 8   ██████████████████████████  Why all the
 9   lies and the deception?
10              MR. DUNLAP:  Well, I'm not getting into
11   all those false accusations.
12              Look, we had raised the drug pricing for
13   two reasons.  One is that they allege that they were
14   increasing these prices.  And if they are going to
15   make that allegation, we want to see the data on
16   which they are basing that.
17              JUDGE WOLFSON:  Okay.  I have just
18   gotten a commitment that they weren't.
19              MR. DUNLAP:  We also want to make the
20   point that it's our understanding that one of the
21   reasons Johnson & Johnson can, in fact, continue to
22   increase its drug prices is because it is able to get
23   patients to commit to taking its drugs through the
24   CarePath program.  That the CarePath program, one of
25   the consequences of it is, that it allows Johnson &
```

Page 99

1    Johnson to increase drug prices.  That they don't

2    exist separately, that, in fact, it's part of Johnson

3    & Johnson's strategy, that they've increased prices

4    for reasons having nothing to do with material costs

5    or efficacy or anything like that, but just because

6    they can.  And one of the reasons they can do that is

7    because they made the patients pricing sensitive to

8    this program and they keep buying more drugs.  And

9    the cost of that is borne by the employers.  And we

10   think that evidence goes to whether or not this is

11   actually a public harm or not or whether it's a

12   program designed to benefit J&J through increased

13   drug prices.  And we also think it could go to

14   damages and injury if we can show that by adding new

15   patients to the CarePath rolls, where they are able

16   to raise their prices more, not just make more sales,

17   but make more sales at a higher price.  That could

18   offset damages.

19              JUDGE WOLFSON:  Did you want to take a

20   break?

21              COURT REPORTER:  Yes, I would love to.

22              JUDGE WOLFSON:  Okay.

23              (Brief recess taken.)

24              JUDGE WOLFSON:  Mr. Dunlap, you got one

25   minute to summarize.  Before we took the break we

Page 100

1    kind of interrupted you.

2              MR. DUNLAP:  I think I just finished

3    making another pitch about why we thought drug

4    pricing was relevant even if they are not going to

5    affirmatively say that they have been decreasing

6    prices.

7              One other point I just want to make on

8    the financial stuff generally to the extent that your

9    Honor is going back and forth about whether or not

10   it's relevant or wants to put it off.

11             We have seen a number of documents that

12   have been produced since we submitted the letter and

13   since the conference occurred that we think

14   underscores that they do look at return on

15   investments.  And we're glad to make a supplemental

16   submission to you summarizing those documents, and

17   we're happy to do that promptly if that will help

18   you.

19             JUDGE WOLFSON:  Okay.

20             For today I'm not directing that

21   anything further be provided on the financial.  I

22   don't foreclose you if you got something else that

23   you want to submit to me that you think would be

24   convincing, but, first, would you please speak to the

25   other side and confer as to, based on that, why you

Page 101

1   think.
2              MR. DUNLAP:  This is on the drug
3   pricing?
4              JUDGE WOLFSON:  Yes.
5              MR. DUNLAP:  Okay.
6              JUDGE WOLFSON:  Okay, I think the next
7   thing now is with regard to this issue that's been
8   briefed the last week or so on custodians.
9              MR. DUNLAP:  And my associate Ms. Snow
10  is going to present argument on that.
11             JUDGE WOLFSON:  Okay.
12             All right.  So we got a couple of
13  disputes here.  This started with, I guess, 12
14  custodians, et cetera.  November 7 Judge Waldor
15  granted the motion as to six custodians.  And in that
16  regard the Plaintiff is now -- and I think you
17  reached some agreement on that, but the question is
18  the scope of the search terms.  Right now they have
19  been as to the CAP program, the Plaintiff has said,
20  right?
21             MS. SNOW:  Yes, just two narrow terms as
22  to the CAP program.
23             JUDGE WOLFSON:  And I think that you
24  have gone back and forth as to what did Judge Waldor
25  mean.

Page 102

1            Well, guess what?  As Judge Waldor had
2       put in her order, you know, I had the opportunity if
3       I would like to speak to her.  Actually, Wayne
4       communicated with her chambers and we got a response
5       that told us -- well, you know what, I'll let Wayne
6       put into the record because you communicated with
7       them about it.
8            MR. FANG:  The law clerk sent
9       correspondence back to my inquiry.
10           JUDGE WOLFSON:  Tim.
11           MR. FANG:  Tim.
12           And he summarized the dispute as he
13      understands it, and he spoke to Judge Waldor about
14      the differing interpretations, the parties'
15      interpretation of her order.  So, ultimately, what
16      she first said -- what he first said was, and
17      Defendant was right, that the judge did not
18      specifically order specifics regarding new custodian
19      searches, because the judge had asked the parties to
20      work up logistics, but upon reviewing and considering
21      the parties' dispute, Judge Waldor agrees -- and I'm
22      reading his e-mail -- that "Johnson & Johnson's
23      position is the only one that makes sense from a
24      proportionality standpoint.  We were only adding the
25      new custodians because of their association with the

Page 103

1    CAP program. ███████████████████████████████████

2    ███████████████████████████████████████████████

3    █████████████████████████████████

4    ███████████.  Similarly, we will limit the searches

5    of the new custodians' records to the CAP related

6    term that Judge Waldor specified since that is the

7    only reason these people are involved in the

8    discovery in the first place."

9              MS. SNOW:  Your Honor, you know, I hear

10   what she is saying.

11              ████████████████████████████████████

12   ███████████████████████████████████

13   ███████████████████████████████████████████████

14   ██████████████

15              I would ask that we be allowed discovery

16   on that earlier time period.

17              Additionally, I think we did raise new

18   evidence that demonstrates why the two narrow

19   searches --

20              JUDGE WOLFSON:  I'm going to address

21   that in a moment.  Okay?

22              ████████████████████

23              MR. SANDICK:  Let me pass it off to

24   Ms. Long.  I have had enough.  I don't want to say

25   anything else for the rest of the day.

Page 104

1          MS. LONG:  I just wanted to clarify, I

2     think as to the search terms at issue in the

3     November 7 order we did meet and confer where we were

4     considering the position that was offered by SaveOn

5     and a potential for compromise in the middle.

6     Ultimately we did not make that compromise.  But

7     prior to the October 30 conference we had agreed to

8     run a specific CAP search term which did not include

9     a SaveOn modifier for the 2016 to 2022 period.  We

10    did that to try to avoid the dispute that ultimately

11    went before Judge Waldor.  And what we took back from

12    the meet and confer was whether to consider running

13    that term over some period of these CAP custodians

14    earlier.

15          Ultimately we said back to Ms. Snow, and

16    we've had several meet and confers on this point,

17    that we did not consider that is what Judge Waldor

18    had ordered us to do so we declined to run the term.

19    ████████████████████████████████████████████

20    ████████████████████████████████████████████████████

21    ████████████████████████████████████████████████████

22    ████████████████████████████████████

23          It is always possible that there is some

24    correspondence just outside of that window, but

25    consistent with our meet and confer our position has

Page 105

```
 1   been, as Mr. Fang just said, the order prescribed
 2   only these search terms and only for that time
 3   period, and that is why we cabined our searches
 4   accordingly.
 5              JUDGE WOLFSON:  She didn't say that,
 6   though.  What she said is -- she didn't give a
 7   specific order on it, but she said what makes sense
 8   to her based on the discussion.
 9              So it was not ruled upon.  So to the
10   extent you went back and forth, you're right, I think
11   you're interpreting what her meaning might be, but it
12   does say, the short answer is, "we did not order
13   specifics regarding the new custodian searches.  We
14   wanted the parties to work it out."  And then the
15   rest of the response was her kind of weighing in on
16   proportionality though.
17              So it's not necessarily a done deal.
18              So, let's talk about, is there
19   compromise in here?  That is really where we are.
20   And, one, I want to talk about dates.  I don't
21   understand this whole thing about before 2022.  There
22   is some earlier date involved or not.
23              MS. LONG:  ██████████████████████
24   ████████████
25              JUDGE WOLFSON:  ████████████████████████
```

Page 106

1   █████████████████████████████████

2        MS. LONG:  ████████████████████

3   ████████████████████████████████████████

4   ██████████████████████████████

5        MS. SNOW:  If I can speak on that.  Two

6   points on that.

7           ███████████████████████████████

8   ████████████████████████████████████████

9   ██████████████████.

10       JUDGE WOLFSON:  ███████████████████

11  ███████████████████████████████

12       MR. LoBIONDO:  We'll search for those.

13       JUDGE WOLFSON:  You're going to search

14  for those.

15       MR. LoBIONDO:  ██████████████████████

16  ████████████████████████████

17       MS. SNOW:  So I think my second point is

18  that, really, it's about the essence of the CAP

19  program, and ██████████████████████████████

20  ████████████████████████████████████

21  ███████████████████████████████████████

22  ████████████  ████████████████████

23  ██████████████████████████████████████████

24  █████████████    And that is what we are -- that is what

25  we believe we're entitled to discovery on.

Page 107

1            And I think that for those custodians we

2     do need to go back further.  It is clear that, like,

3     for example, John Hoffman was working on the response

4     to accumulators and maximizers in 2020.

5            And I think there is another additional

6     point I have here, which is that the search terms

7     that they have agreed to run just on the CAP program

8     do not actually capture all of the documents that

9     would be involved in that response, which ultimately

10    turned into that program.

11            JUDGE WOLFSON:  Okay.

12            So you're saying there could be other

13    documents because perhaps even there wasn't a name of

14    a CAP program but the idea of what this program could

15    be was out there and maybe it's not being captured by

16    the search terms?

17            MS. SNOW:  Yes.

18            JUDGE WOLFSON:  What are the search

19    terms?

20            MS. SNOW:  So I believe they're

21    referring to the two additional search terms that

22    were requested in SaveOn's other motion regarding the

23    CAP program, and there is this additional term which

24    they agreed to starting -- they agreed to it in

25    September, which was also covering the CAP program

Page 108

```
1    specifically, but there are a number of other terms
2    that I'm happy to get into the specifics on but that
3    encompass mentions of SaveOn, mentions of ESI and of
4    accumulator because, of course, many of the documents
5    reveal that ████████████████████████████████████████
6    ████████████████████████████████████████.
7              JUDGE WOLFSON:  And you haven't reached
8    agreement on these?
9              MS. LONG:  I want to be clear that we're
10   limited as to the new CAP custodians.  We have run
11   these search terms for the original time period and
12   through the refresh as to 17 other custodians.
13             JUDGE WOLFSON:  Why wouldn't you run
14   them for these?
15             MS. LONG:  Because, respectfully, their
16   request was cabined -- was about the CAP program.
17   Judge Waldor opened the door about CAP.
18             We're happy to take the terms back to
19   mid-2021 or to another date, and we can investigate
20   what that date was.
21             JUDGE WOLFSON:  Well, the reason I asked
22   that is, if these were the people that were somehow
23   involved with the CAP program, they may have been
24   involved in the discussions at an earlier date as
25   well and may be relevant custodians.
```

Page 109

1          So I'm going to direct that it happen,
2     that you run them for these additional custodians as
3     well.
4          I can't believe they just suddenly
5     appeared just for CAP and didn't have involvement
6     before.
7               MR. LoBIONDO:  They were certainly
8     relevant, your Honor.
9               The argument we made before Judge Waldor
10    and she agreed with was, as I understand it, was, we
11    have custodians that are covering these issues.
12    These people would be cumulative of what we already
13    produced.  And she decided they were not cumulative
14    as to CAP, which is why she thought that they should
15    be added not with respect to proportionality, only as
16    to CAP.
17              JUDGE WOLFSON:  It's four more.  I'm not
18    worried about it.  I'm doing it.
19              MR. LoBIONDO:  It's six more for five
20    years.
21              MS. LONG:  Are we talking about number
22    of custodians or the search terms as to the CAP
23    custodians?
24              JUDGE WOLFSON:  Those custodians that
25    we've agreed to, but running the additional search

Page 110

1    terms on them.

2            MS. LONG:  Back to 2016?

3            JUDGE WOLFSON:  Right, what the

4    attorneys agreed to, correct.

5            MR. SANDICK:  So all of the search terms

6    that we've used in the case, that is your Honor's

7    ruling?

8            JUDGE WOLFSON:  I don't know of all the

9    search terms, it's whatever is related --

10            MR. SANDICK:  Because that is the core

11    issue.

12            MR. LoBIONDO:  This is part of the

13    issue, frankly, that we've been having, which is

14    that, we brief up an issue, they get a ruling they

15    don't like.  They say, no, Judge Waldor actually

16    meant something else.  Judge Waldor said, no, this is

17    what I meant.  And now we're re-litigating it for a

18    third time until they've finally gotten a ruling that

19    is going to give them everything they asked for.

20            JUDGE WOLFSON:  I don't know about

21    everything.  All I heard was the terms that would be

22    relevant to them would be referring to SaveOn,

23    referring to ESI.  It's not the world.

24            What I'm trying to capture with them,

25    the only reason is, that I'm saying it, is these are

Page 111

1   CAP people.  The likelihood is that they were

2   involved somehow before this in looking at these

3   issues, and to the extent they were, they should

4   produce documents.  But I want to limit it then to

5   this world, not every search term.

6                    MR. LoBIONDO:  Okay.

7                    JUDGE WOLFSON:  So come up with the

8   search terms that relate to this and confer on it.

9                    MS. SNOW:  Your Honor, we're happy to

10  make a narrow proposal of search terms.

11                   JUDGE WOLFSON:  Okay, let's do it.

12                   New custodians that were brought up in a

13  letter.

14                   I guess you brought up Scott White,

15  Blasine Penkowski, Karen Lade, and Juliette Deshaies.

16                   I think Plaintiff is saying that Judge

17  Waldor rejected proposal of these additional

18  custodians, that they were part of that motion to

19  compel 12, and she ordered only half basically,

20  right?

21                   Okay.

22                   And now what you're claiming is that

23  there are new documents that were not part of the

24  motion before Judge Waldor that show that these

25  proposed custodians have more knowledge than you

Page 112

1    previously knew and presented to her and that you

2    want them to be added, right?

3              MS. SNOW:  Yes, your Honor.

4              There are actually five remaining

5    custodians that were left undecided, and we have

6    renewed our motion as to all five, however, in the

7    event you determine that Judge Waldor did resolve as

8    to -- you know, we don't think the order states

9    that -- it doesn't name those custodians at all.  At

10   the conference she didn't issue a ruling as to those

11   custodians, and so we don't think she's decided

12   those.  But we have also put forth significant new

13   evidence as to White, Penkowski, Lade and Deshaies,

14   as we've mentioned.

15             JUDGE WOLFSON:  Ms. Long.

16             MS. LONG:  Yeah.

17             I think your Honor said our position

18   fairly succinctly.  We believe Judge Waldor already

19   decided this.  I think that is fairly clear from the

20   text of her order.  This issue was part of 27 single

21   spaces of briefing and 146 exhibits that went before

22   Judge Waldor, and ultimately Judge Waldor split the

23   issue.  As your Honor said, there were 12 custodians

24   that were at issue in the motion.  She ordered us to

25   provide six of seven.  We later conferred on which

Page 113

1    six those would be and agreed and resolved as to

2    those.  And I just don't think there is anything

3    ambiguous about the order and what was resolved.

4              JUDGE WOLFSON:  Do you think that --

5    their position is we've identified, now based on new

6    documents I'm assuming that you could not have

7    presented to her at the time because you didn't have

8    them, that based on new documents this is a new and

9    different argument to be made?

10             MS. LONG:  No.

11             If I could take the custodians in turn.

12             First, as to Ernie Knewitz, there are no

13   new documents.  There are no new documents in

14   SaveOn's opening brief.  There are no new documents

15   on the reply brief.

16             As to the remaining custodians that are

17   at issue --

18             JUDGE WOLFSON:  Yeah.

19             Let's start with White and Penkowski.

20             MS. LONG:  Sure.

21             They're the same types of documents that

22   were at issue, for example, calender invitations

23   concerning JALT, et cetera.  And as was before Judge

24   Waldor, the issue with Mr. Knewitz and Mr. White and

25   Ms. Penkowski are all that they serve on what's

                                                      Page 114

1   called the JALT.

2              We have a senior executive who was on

3   the JALT.  Her name is Katie Mazuk.  She has already

4   been designated as a custodian in this case on all

5   relevant issues on all agreed upon search terms.  And

6   so any discovery that would be relevant, anything

7   that the JALT considered, will be produced from Ms.

8   Mazuk's files.  That is something that was before

9   Judge Waldor.  That is consistent with the documents

10  that are still before your Honor.  Ms. Mazuk is the

11  senior most executive with responsibility for making

12  decisions about the CarePath program.

13             As to Mr. White.  Mr. White is one of

14  the highest ranking executives in the Johnson &

15  Johnson family of companies and he has no

16  responsibilities day to day for CarePath.

17             Mr. White came up first in a motion that

18  SaveOn brought in June about our interrogatory

19  responses, that was also at issue at the October

20  conference, where we have consistently provided

21  representation to the other side that Mr. White does

22  not have responsibility for -- does not have day to

23  day responsibility for the CarePath program.  He has

24  no unique documents because, again, he is on the

25  JALT, which is the main piece of evidence that SaveOn

Page 115

1   cites.  So is Ms. Mazuk.  And all of the documents

2   that SaveOn has cited Ms. Mazuk is either on or is a

3   custodian of.  The calendar invitations include

4   Ms. Mazuk.  And so the only --

5            JUDGE WOLFSON:  So let me ask you this

6   question:  The documents that they now provided say

7   that -- you know, forget the day to day

8   responsibility -- that White may have been involved

9   in the high level discussions about CarePath,

10  SaveOn's role and how it was impacting Plaintiff's

11  program, litigation.

12           Why do you think that White would not

13  have relevant documents?

14           MS. LONG:  ████████████████████████

15  ████████████████████████████████████████████

16  ███████████  ██████████████████████████  ███████

17  ██████████████████████████████████████████████

18  ████████████████████  ██████████████████████

19  ████████████████████████████████████████████

20  ███████████████████.

21           And that is consistent with all of the

22  documents that we've cited, including decks and

23  other -- the evidence that is at issue before your

24  Honor today.

25           The other evidence comes down to being a

Page 116

1    counterparty on certain work orders with Trial Card,

2    and, again, I don't see how that is relevant here.

3            And I think the last category of new

4    documents, which, you know, SaveOn points to as kind

5    of a smoking gun by a third party is an ████████

6    ████████████████████████████████████████████████

7    ████████████████████████████████████████████████

8    ████████████████████████████████████████████████████

9    ██████████████████████████████████████████████████et

10   ██████████████████████████████████████████████████

11   ████████████████████████████████.

12           First, we've now found the calendar

13   invitation -- what we believe is the calendar

14   invitation for this meeting.  It does not include any

15   of those individuals. ███████████████████████████████

16   ████████████████████████████.  And, also, as

17   your Honor just ordered, ████████████████████████████

18   ████████████████████████████████████████████████████

19   ██████████████████████████████████████

20   ████████████████████████████████.  John Hoffman is one of

21   the CAP custodians that you just ordered additional

22   search terms be run over.

23           So there is not a gap in our production

24   here.

25           I don't see in the document what SaveOn

Page 117

1  is claiming, but even if it was true, those files

2  would be produced already.

3          And I think when we're looking at

4  someone as senior was Mr. White and Ms. Penkowski,

5  and the same would apply for Mr. Knewitz, there is a

6  particular concern about Apex custodians.  And I

7  recognize that the Apex doctrine comes up more so in

8  the context of depositions, but if we're talking

9  about cumulative files from very senior people, I

10  don't think that SaveOn has met that showing.

11  ████████████████████████████████

12  ████████████████████████████████  █

13  ████████████████  ████████████████

14  ████████████████  There is no additional

15  benefit to these other custodians.

16          JUDGE WOLFSON:  Ms. Snow.

17          MS. SNOW:  Yes.

18          So, first of all, I just want to address

19  the point that ████████████████████████

20  ████████████████████.  That's because

21  that's who they actually have produced documents

22  from.  That doesn't mean that that's the only place

23  there are relevant documents.

24  ████████████████████████████

25  ██████████



Page 118

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮▮▮  You would -- I have a copy if you'd

4  like.

5         JUDGE WOLFSON:  I have it here too.

6         MS. SNOW:  ▮▮▮▮▮▮▮▮▮▮▮▮▮,

7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8         And I also want to make a point about

9  this document.

10        This is the only -- ▮▮▮▮▮▮▮▮▮

11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13        There is not a single document produced

14 before January 2022 that suggests this idea.

15        So what this document shows us is that

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19        For that reason alone I think he's

20 highly likely to have relevant documents.

21        And just addressing the Trial Card work

22 order.

23        I think we brought up Trial Card a few

24 times today.

25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Page 119

███████████████████████████████████████████

███████████████████████████████████████████

Those are very key aspects of how you actually run a

program like this. ███████████████████████ a

██████████████████████████████████████

██████████████                ██████████████████████

███████████████████████

                ██████████████████████████████

██████████████████████████████████

█████████████████████

            That goes to the viability we have been

discussing.  It goes to the harm, because they're

having to -- you know, J&J alleges that they're

having to up the amount that they're reimbursing

patients.

            JUDGE WOLFSON:  Yeah, so let me ask you

this question:  So Scott White is apparently the

company group chairman of North America

Pharmaceuticals, right?  So one of the highest

ranking executives.

                ████████████████████████████████

██████████████████████████████

██████████████████████████████

            MS. SNOW:  ███████████████████████

██████████████████████████████

Page 120

1  ████████████████████████████████████████████

2  ██████████████     So we see in numerous documents --

3             JUDGE WOLFSON:  At the what level?

4             MS. SNOW:  ████████  ███████  █████

5  ████████████████████████████████████████████

6  ████

7             You know, they make a point about us

8  going after so many executives.  ████████████████

9  ████████████████████████     ██████████████████

10 ████████████████████████████████████

11 ████████████████████████████████

12 ██████████████████████████████████.

13 ████████████████████████████████

14 ███████████████████████████████████████████

15 ██████████████████.

16             JUDGE WOLFSON:  What is it precisely

17 you're looking for Mr. White to produce?

18             MS. SNOW:  Well, I think we've been

19 missing many documents to show who actually -- like

20 the decisions being made.

21             You know, ████████████████████████████

22 █████████████     and we're not disputing that.

23 ██████████████████████████████████████

24 ████████████████████████████████████

25 ███████████   ██████████████████████████

Page 121



9        MS. LONG:  May I respond?

10       JUDGE WOLFSON:  Yes.

11       MS. LONG:

12       Let's start with just a brief look at

13  Exhibit 2.

22       What Ms. Snow was talking about,

Page 122



1   ████████████████████████████████████

2   █████████████████████   █████████████,

3   █████████████████████   ███████████████

4   ████████████████████████████████

5   ██████████████████████████████████████

6   ███████████████████.

7           JUDGE WOLFSON:  But how was that meeting

8   captured?

9           MS. LONG:  Sure.

10          So there are a couple of ways that the

11  meeting was captured.  There are, first, these

12  calendar invites.  Usually attaching a presentation.

13  The presentation has content, sometimes relevant to

14  the CAP program, for example.

15          Ms. Mazuk was on the calendar

16  invitation, was on the e-mail where those decks were

17  communicated.

18          JUDGE WOLFSON:  But what happens at the

19  meeting, and where is that document?

20          MS. LONG:  So what happened at the

21  meeting I believe is that the presentation -- the

22  deck is presented and there is a discussion.  I am

23  not aware of any minutes, for example, that come out

24  of that meeting, but if there was subsequent e-mail

25  discussion, it would presumably be as we've seen in

Page 123

1    the documents amongst ███████████████████████

2    ██████████████████████

3              ████████████████████████████████

4    ████████████████████████████████████████████,

5    █████████████████████████████████████    for

6    ████████████████████ -- this was at issue with

7    respect to our interrogatories -- different areas of

8    the company that have absolutely nothing to do with

9    the CarePath program.

10             And just, again, to emphasis, as to

11   Mr. Knewitz, we have also stated, for example, that

12   he has nothing to do with CarePath.  He occasionally

13   made statements regarding the lawsuit, and that is

14   the limitation.  We have represented that in

15   interrogatory responses.

16             JUDGE WOLFSON:  Which one are you

17   referring to?

18             MS. LONG:  Mr. Knewitz.  It's

19   K-N-E-W-I-T-Z.

20             JUDGE WOLFSON:  Okay.

21             MS. LONG:  And then as to the remaining

22   folks, again, those decisions would be captured -- to

23   the extent that there are documents, which I think if

24   ███████████████████████████████████████████

25   ██████████████████████████████████████

```
1    ███████████████████████, but certainly SaveOn is
2    welcomed, as I'm sure they will, to depose Ms. Mazuk
3    to learn about those discussions, but I don't have
4    any evidence, nor do they, that those discussions
5    were otherwise memorialized in e-mails that have
6    somehow been withheld from our productions.
7                 If there are relevant communications, if
8    there are relevant documents, decks, minutes, those
9    would have already been produced to opposing counsel.
10               MS. SNOW:  I just have a few quick
11   responses.
12               First of all, to the last point, we need
13   documents before we're taking depositions.  And the
14   standard that is at issue is, have we shown that
15   these individuals are likely to have relevant
16   documents.
17               Going to the point that Ms. Long was
18   making, while it's not in the new evidence, there are
19   ████████████████████████████████████████████████████
20   ████████████████████████████████████████████████████
21   ████████████████████████████████████████
22               JUDGE WOLFSON:  Did you present that to
23   Judge Waldor?
24               I don't want to go over ground that she
25   already decided.  So I don't want to do that.
```

Page 125

1           I'm only looking at if they're new

2    documents and you have a new argument to make,

3    because she obviously considered this already.

4           MS. SNOW:  Your Honor, if we could just

5    look at the old documents in the context of the new

6    documents.  There is evidence that shows that these

7    ████████████████████████████████████████████████████

8    ████████

9              █████████████████████████████████████████

10   ████████████

11          I████████████████████████████████████████████

12   ████████████████████████████████████████

13   ██████████████████████████████.  ████████

14   █████████████████████████████████████  █

15   █████████████████████████████████████████████

16   █████████████  ████████████████████████████,

17   ████████████████████████████████████████now,

18   ██████████████████████████████████████

19   ██████████████

20          JUDGE WOLFSON:  I don't know if you want

21   to take these one by one or as a group, I mean, you

22   dealt with them kind of as a group overall, but I

23   have a couple of concerns here.  I certainly don't

24   want to go over ground that Judge Waldor actually

25   dealt with unless, as I said, there was something new

Page 126

1    and there was a reason to do so and to revisit it.

2    Respectfully, I don't think it would be otherwise

3    appropriate.

4              Now, I don't know how well this was

5    addressed or simply if it was, like, get these, this

6    is all you're getting.  You know, you get six

7    custodians, I'm not giving you more, or whatever it

8    might be.

9              MS. SNOW:  So, actually, in the

10   transcript she said, I'm going to order some to

11   start, and then we'll deal with the Apex custodians

12   later, so I think today is that later.

13             JUDGE WOLFSON:  Did she leave that

14   opening?

15             They're seeming to shake their head no

16   on the other side of the table.

17             MS. LONG:  The transcript, your Honor,

18   is long.  In that context, we disagree with what was

19   set forth by Ms. Snow.

20             JUDGE WOLFSON:  Is it the October

21   transcript?

22             MS. LONG:  Yes, it is the October

23   transcript.  We agree on that.

24             But, your Honor, specifically Judge

25   Waldor said, "Well, I thought CAP -- the 12 new

Page 127

1    custodians included CAP custodians, I'm going to open

2    the doors on CAP," and then later, "I'm going to

3    permit additional custodians.  I know we're down to

4    six."  Referencing the six custodians that ultimately

5    Judge Waldor ordered.

6              I think that is also consistent with,

7    frankly, the natural reading of the order that

8    followed the conference.  Here the order read, "With

9    regard to SaveOn's requested relief as set forth in

10   docket entry number 165, custodians' motion, the

11   Court will require" --

12             JUDGE WOLFSON:  I'm looking at the

13   transcript, I'm reading, so if you could wait a

14   moment, please, I'm reading the portion of the

15   transcript.

16             Well, this is what she says, she said,

17   "I said start with four.  Mr. Mangi will talk to them

18   about it.  And then we can discuss the two that

19   you're trying to protect with the Apex doctrine,

20   which is, according to adversary, inapplicable to

21   documents."

22             Mr. Mangi, "Yeah."

23             The Court, "I assume ultimately you're

24   going to want to depose them."

25             MS. ARROW:  Your Honor, what page are

Page 128

1   you on?

2              JUDGE WOLFSON:  119, 120.

3              Well, it doesn't look like she

4   definitively closed the door, that is true.  So I

5   don't think I should look at it that way.  It clearly

6   was a start.  So I don't want to rely on that.

7              So let's talk about the merits of the

8   issue.

9              Now, what are the limited search terms

10  with regard to White and Penkowski that you want to

11  use?

12             MS. SNOW:  We're happy to provide a

13  proposal on that.

14             JUDGE WOLFSON:  Very limited.

15             MS. SNOW:  Very limited, yes, your

16  Honor.

17             JUDGE WOLFSON:  Very limited.

18             Confer with your adversary.

19             MS. SNOW:  And for the time period --

20  the full time period that they've used for every

21  other custodian?

22             JUDGE WOLFSON:  That's fine, but, as I

23  said, these are going to be limited search terms.  I

24  do understand they are high level executives and may

25  be duplicative of what others have, but I also know

Page 129

1    people sometimes write e-mails and do things that

2    don't include everybody else when they want to talk

3    to someone else in the company, and it happens, so

4    there could be other documents, but, please, limit

5    it.

6              Now we've got -- in fact, I mean,

7    ████████████████████████████████████████████

8    ██████.  Very relevant.  I've got quotes from her in

9    e-mails.  I understand others may have gotten them,

10   but that is an important person.

11             Yeah, do your search terms and I'm going

12   to allow it.

13             MS. SNOW:  Thank you, your Honor.

14             JUDGE WOLFSON:  Then we've got Lade,

15   L-A-D-E.

16             MS. SNOW:  Yes.

17             So just to start about the so-called

18   brand employees.

19             There's new evidence -- if you look at

20   Exhibit 6, it includes the e-mail, actually, that

21   ██████████████████     ████████████████████

22   ████████████████ -- I can give you a copy of the

23   exhibit.

24             JUDGE WOLFSON:  I have them here, it's

25   just finding where 6 starts.

Page 130

```
 1              Thank you, Wayne.

 2              Okay, I got it.

 3              MS. SNOW:  If you look at the -- I

 4    believe the very bottom of that first page, it says,

 5    ████████████████████████████████████████████████

 6    ████████████████████████████████████████

 7    ██████████████████████████████████████████████

 8    ███████████████████████████████████

 9              So Ms. Lade is a brand employee, and I

10    think -- you know, turning to just looking at the new

11    evidence, in May of 2017 -- if you look at Exhibit

12    11.

13              I'm happy to also give you a copy.

14              JUDGE WOLFSON:  Now, these documents

15    were produced to you because they came through other

16    custodians?

17              MS. SNOW:  Yes.

18              But if you look at Exhibit 11, there's

19    an e-mail -- I'll give you a minute.

20              JUDGE WOLFSON:  Okay, I'm up to 11.

21              Go ahead.

22              MS. SNOW:  So if you look at the second

23    page of that exhibit, there's an e-mail that Ms. Lade

24    sent and there is not a single current custodian on

25    that e-mail, and it's all about --
```

Page 131

```
1            JUDGE WOLFSON:  So how did you get it?

2            MS. SNOW:  Because later in the thread

3    it was forwarded to a custodian.

4            JUDGE WOLFSON:  Okay.

5            I see you shaking your heads on this

6    side, but that's happenstance, that it ended up being

7    forwarded to someone.  She authored an e-mail, and if

8    it's relevant -- and she's authoring a lot of

9    documents.  I don't know why she would not be a

10   custodian to search if it's relevant material.

11           MS. LONG:  Your Honor, one, there is no

12   mention of SaveOn in this document; and two, I want

13   to be ████████████████████████████████████

14   ██████████████████  ████████████████████████

15   █████████████████████████████████████████

16   █████████████████  ████████████████████████

17   ████████████████████████████████

18           JUDGE WOLFSON:  Yes, but you take the

19   position that they are.  Yes, you do.  So the fact

20   that they don't isn't really the issue because you

21   are going to be arguing they are.

22           Look, you know what, I have enough on

23   this.  This is someone who you should be getting

24   documents from.  I'm adding it.

25           You know, everybody wants to slice this
```

Page 132

1   so finely.  It's a huge case.  There is a lot of

2   discovery on both sides.  Let's just do it instead of

3   fighting over it.  It will take you less time to

4   produce and move on than to fight.

5              MS. SNOW:  And, your Honor, to be clear

6   on those, for the regular set of search terms and the

7   full regular time period?

8              JUDGE WOLFSON:  Regular time period, but

9   I don't know about all the search terms.  You have to

10  hone something that is appropriate for her, it cannot

11  be a universe.  I have to have some limitations.

12             So work on those search terms with your

13  adversary please.

14             Okay?

15             MS. SNOW:  And turning to Ms. Deshaies.

16             JUDGE WOLFSON:  Yes.

17             MS. SNOW:  So her primary -- or her

18  relevance in the new additional document is she was

19  working with a really important third party.  The

20  third party is named Archbow.  It's all one word,

21  A-R-C-H-B-O-W.  That third party was working on the

22  ██████████████████████████████████████████

23  ███████████████  ██████████████████████████████

24  ████████████████████████████████████████

25  █████████████████████████████████████

Page 133



18        JUDGE WOLFSON:  Why is that critical?

19        MS. SNOW:  It's critical to our

20   mitigation defense.

21             They have these ways that they're trying

22   to use to limit their damages.

23        JUDGE WOLFSON:  Aren't there others

24   involved in this issue that are already custodians?

25        MS. SNOW:  There are others involved in

Page 134

1    the CAP program. ████████████████████████

2    ██████████████████████    ██████████

3    ██████████████████████████████████████

4    ████████████████████████████████

5              JUDGE WOLFSON:  I never understood

6    Erleada to be the driving drug in this whole case.

7              I'm not buying this one.  I have to have

8    some limits.  So I'm not ordering that to be done.

9              Does that take care of all our new

10   custodians?

11             Go ahead.

12             MS. LONG:  I think Mr. Knewitz is still

13   at issue, your Honor.  That was the custodian without

14   any new evidence that we had discussed earlier.  I

15   believe you████████████████████████████████

16   ████████████████████████.

17             Mr. Knewitz is essentially a PR

18   professional. ████████████████████████

19   ████████████    ██████████████████

20             JUDGE WOLFSON:  I'm not adding him.

21             You have the ones we've added, Lade,

22   Penkowski and White, but you're going to confer on

23   search terms, please.

24             MS. SNOW:  Yes.

25             Thank you.

Page 135

1              JUDGE WOLFSON:  Anything else open?

2              MR. SANDICK:  No.

3              Thank you, your Honor.  We really

4    appreciate the evident time you spend reading all of

5    this paper and helping us resolve the issues.

6              Thank you very much.

7              JUDGE WOLFSON:  No problem.

8              MR. DUNLAP:  We greatly appreciate your

9    attention to this.

10             (Proceedings concluded at 1 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 136

```
 1              C E R T I F I C A T E

 2

 3         I, RUTHANNE UNGERLEIDER, a Certified Court

 4   Reporter and Notary Public of the State of New

 5   Jersey, certify that the foregoing is a true and

 6   accurate transcript of the stenographic notes of the

 7   deposition of said witness who was first duly sworn

 8   by me, on the date and place hereinbefore set forth.

 9         I FURTHER CERTIFY that I am neither

10   attorney, nor counsel for, nor related to or

11   employed by, any of the parties to the action in

12   which this deposition was taken, and further that I

13   am not a relative or employee of any attorney or

14   counsel in this case, nor am I financially

15   interested in this case.

16

17

18

19

20

     RUTHANNE UNGERLEIDER, C.C.R., C.R.R.

21   LICENSE NO. XIO1634, XIO0115

22

23

24

25
```

| & | | | a |
|---|---|---|---|

**&**  1:4 2:4,8,12
2:19 36:20
60:12,21,23
69:25 71:3
72:15 74:3
75:6 76:8
79:22 80:2
89:18 96:21
98:21,25 99:3
102:22 103:12
114:14

**0**

**07102**  2:10

**1**

**1**  4:25 8:13
135:10
**10017**  2:20
**10036**  2:5
**101**  2:12
**10104**  2:16
**10178**  2:13
**10:00**  1:19
**11**  130:12,18,20
**1133**  2:4
**114**  67:21
**11883**  136:20
**119**  128:2
**12**  101:13
111:19 112:23
126:25
**120**  128:2
**1200**  4:22

**1290**  2:15
**14**  88:11
**146**  112:21
**15**  13:3
**150,000**  40:23
**16**  52:17
**165**  127:10
**17**  108:12
**180,000**  40:22
**188,000**  40:13

**2**

**2**  119:5 121:13
**20**  16:14 25:20
120:9
**20,000**  121:3
**200**  119:7
125:12,18
**2009**  5:22 8:13
59:9
**2013**  10:12
12:8 14:24
**2016**  4:25 5:18
9:21,22 10:1
19:21 25:9
34:14 38:24
103:4 104:9
106:4,16 110:2
**2017**  130:11
**2020**  107:4
**2021**  106:3,9,20
108:19
**2022**  4:25
19:21 24:16,23
26:18 27:8,13
27:22 28:2

30:22 34:14
38:24 42:1
43:23 56:1
57:8 103:2,14
103:22 104:9
104:22 105:21
105:24 106:1
106:11,16
118:14
**2023**  5:3,18
24:24
**2024**  1:19
**20th**  2:19
**22-2632**  1:3
**24**  1:18
**27**  112:20
**28**  67:11
**28th**  2:12
**29**  67:11

**3**

**30**  67:11 104:7
**349**  69:2 87:17
87:21

**6**

**6**  129:20,25
**6,000**  121:3
**666**  2:19

**7**

**7**  24:24 43:17
101:14 104:3

**8**

**80**  93:19 94:16
94:18,21

**aba**  23:9
**able**  20:21
72:16 77:12
78:6,16 89:22
89:24 96:13
98:22 99:15
132:25
**above**  1:13
**absence**  73:9
**absent**  74:10
87:25
**absolutely**
36:13 72:5
79:8 123:8
**absorb**  73:11
**accessibility**
12:25
**accredo**  90:22
90:22
**accumulator**
9:19 10:18
26:12 29:2
30:12,21 108:4
108:5 129:7
130:7 131:13
131:15
**accumulators**
57:23 106:21
107:4 132:22
**accurate**  84:23
136:6
**accusations**
98:11

**act** 65:22,25
66:2,7
**acting** 44:12
81:15
**action** 1:3 84:1
136:11
**actions** 78:14
**acts** 65:20 66:8
**actual** 19:18
54:6 59:3
89:11 120:1
121:20
**actually** 17:9
18:2 20:15,17
21:3 22:20
31:16 39:18
47:2 60:10
61:8,10 75:5
76:23 78:11
83:25 84:13
89:6,16 90:10
92:1 96:11
99:11 102:3
103:13 107:8
110:15 112:4
117:21 118:25
119:3,5 120:19
125:24 126:9
129:20
**add** 6:8,11,18
**added** 42:17
44:6,18 45:10
109:15 112:2
134:21

**adding** 99:14
102:24 131:24
134:20
**additional** 5:14
5:19 6:9 23:1
34:21 44:7
52:7 70:25
71:1 77:10,14
78:16,18 82:14
84:8,9 86:23
87:3 107:5,21
107:23 109:2
109:25 111:17
116:21 117:14
127:3 132:18
**additionally**
103:17
**address** 3:5
26:5,8 27:25
51:6,14 55:16
55:17 67:5
89:2 103:20
117:18
**addressed**
21:20 34:18
126:5
**addressing**
55:15 118:21
**adequately**
67:5
**adhere** 80:4
**adherence**
80:14,18,22
81:3,5 98:5,6

**adjustment**
26:16 106:23
130:7 131:14
131:16
**administering**
75:16
**administers**
77:2 118:25
**administrative**
60:24 68:24
**admission**
29:13
**advanced** 73:2
**advantage** 52:7
**adversaries**
11:17
**adversary**
127:20 128:18
132:13
**advice** 45:21,21
47:21,22 50:23
**advised** 24:18
56:14
**advisor** 47:17
**affected** 91:5
**affiliate** 74:24
**affirmative**
18:1
**affirmatively**
100:5
**afford** 73:11
78:12,21
**afield** 83:12
**afoul** 20:18

**age** 20:12,22
**aggressively**
39:16,21
**ago** 3:4 10:13
23:16 31:6
37:5,17 90:5
94:3
**agree** 10:15
11:4,4 13:13
14:23 18:9
35:10 41:17
43:21 97:14,16
126:23
**agreed** 4:25 6:4
21:11 55:24
59:4 104:7
107:7,24,24
109:10,25
110:4 113:1
114:5
**agreement**
101:17 108:8
**agreements**
38:18
**agrees** 4:2
66:17 102:21
**ahead** 32:2
34:5 41:18
81:14 89:4
130:21 134:11
**allegation**
70:15 92:1
94:13,16,18,21
98:15

[allegations - asked]                                                Page 3

**allegations**
  67:18,19,21
  78:22 90:3
  97:24
**allege**  60:3 62:3
  66:9,10,23
  89:5 98:13
**alleged**  64:4
  65:6 66:8
**allegedly**  65:14
  116:19
**alleges**  119:13
**alleging**  18:17
  60:2 68:13
  79:17 94:7
  95:16
**allow**  129:12
  133:1
**allowed**  13:14
  67:19 83:19
  98:1 103:15
**allows**  98:25
**amazing**  71:18
  71:19
**ambiguous**
  36:8 113:3
**america**  119:18
**american**  123:6
**americans**  81:2
**americas**  2:4
  2:15 120:5
**amount**  74:10
  76:10,11 77:17
  119:14,22
  121:2,4,23

125:18
**amounts**  61:13
  63:16
**analyses**  81:21
**analysis**  79:22
  80:3 81:17
  82:18,21 84:20
  85:15,18 87:1
  87:2
**analyze**  77:4
**analyzed**  62:2
**andrew**  2:16
  14:22
**answer**  7:8
  11:2,9 15:9
  29:12 62:10
  85:25 88:19
  105:12
**answered**  63:5
**answers**  13:18
  82:9 92:15
**anticipation**
  50:5
**anyone's**
  123:25
**anyway**  57:22
  61:9 75:24
**apex**  117:6,7
  126:11 127:19
**apologies**  116:8
**apparently**
  49:18 119:17
**appear**  39:10
**appeared**  109:5

**appears**  19:5
  20:2 121:15,15
**apples**  40:20,20
**application**
  28:24
**applied**  21:4
  28:25
**applies**  36:5
  51:19
**apply**  36:6
  117:5
**appreciate**  33:8
  35:15 37:23
  38:1 79:4
  135:4,8
**appropriate**
  12:13 26:1
  45:3 126:3
  130:8 132:10
**approximately**
  1:19 4:22
  24:22
**april**  4:25
**archbow**  49:4
  49:12 116:5,10
  132:20
**area**  23:8 55:3
  63:24 122:6
**areas**  23:9
  31:22 41:19
  64:1 123:7
**argue**  13:12
  16:18 20:5
  91:5 92:18
  93:13 96:5

**argued**  42:5
**argues**  5:23
**arguing**  131:21
**argument**
  17:13 20:13
  24:4 35:15
  37:23 38:5
  39:19 42:7,13
  54:5 64:11
  66:16 72:14
  73:5 75:1
  78:20 84:12
  87:24 92:25
  93:11,15
  101:10 109:9
  113:9 125:2
  131:16
**arguments**  6:1
  28:6 38:1
  62:17 75:17
  96:9
**arrange**  76:25
**arrow**  2:7
  127:25
**aside**  95:14
  96:19
**asked**  6:7 7:3
  8:9,12 37:21
  40:17 41:2
  42:8 44:8
  55:25 56:16
  81:8 85:14,22
  90:11 92:5
  102:19 108:21
  110:19

| | | | |
|---|---|---|---|
| **asking** 7:20,22 21:12 22:6 29:19 35:5 44:10 55:1 56:13 59:8 61:18 81:16 82:16 86:3 88:7,9 93:6 | **attention** 13:5 135:9 **attorney** 44:12 48:4,5,6,6 136:10,13 **attorneys** 2:7 2:11,14,18,21 42:17 44:4,11 45:13,14 54:9 110:4 | 23:15 27:15,18 29:14 35:13 37:1,24 38:10 39:6,19,20 40:12 41:9,16 42:22 47:5 50:16 51:3 59:9 87:13 88:15 89:18 96:13 100:9 101:24 102:9 104:11,15 105:10 106:15 107:2 108:18 110:2 125:9 | **beat** 29:14 **began** 8:18,19 24:16 27:12 **beginning** 24:23 27:13 74:20 **behalf** 70:21 71:2 78:10 **belabor** 67:15 **belief** 66:18 **believe** 8:24 11:5 13:1 16:19 18:2 21:3 25:21 27:23 31:5,6 |
| **asks** 29:11 56:5 **aspect** 15:22 69:9 **aspects** 119:3 134:3 **assert** 13:15 **asserting** 4:1 **assertion** 46:14 47:23 **assistance** 19:12 59:1 63:4,16 67:25 70:17 71:25 95:23 121:2,4 **assistant** 121:16 125:14 **associate** 101:9 **association** 102:25 **assume** 14:9,17 125:11,15,16 127:23 **assuming** 44:9 44:14 79:4 113:6 **attaching** 122:12 | **august** 21:10 43:20 103:4 **authored** 131:7 **authoring** 131:8 **authority** 121:18,20 125:12 **availability** 5:13 11:10 **available** 89:9 91:16 121:2 **avenue** 2:4,12 2:15,19 **avoid** 104:10 **aw** 85:5 **aware** 122:23 **awareness** 55:12 | **backup** 89:15 **backwards** 38:9 **badly** 69:5 **bag** 68:22 **base** 89:13 **based** 5:14 17:17 41:12 52:1 54:5 82:10 100:25 105:8 113:5,8 **basically** 71:14 111:19 **basing** 98:16 **basis** 57:14 59:14 67:17 **bear** 5:8 58:18 **bearing** 83:19 83:24 | 31:12 33:12 34:17 36:17,21 36:24 51:18 56:18 57:6,8 57:12 65:11,18 67:10 70:24 75:24 76:17 91:25 103:11 106:25 107:20 109:4 112:18 116:13,18 122:21 130:4 134:15 **belknap** 2:4 **benefit** 23:6 25:15 48:18 59:24 71:17 74:1 82:21 99:12 117:15 |
| | **b** | | |
| | **b** 2:1 132:21 **baby** 77:18 **back** 5:22 9:20 11:5 12:4,24 13:3 22:16 | | |

[benefits - cap]

| | | | c |
|---|---|---|---|

**benefits** 21:14
23:14 24:8,13
24:17,21 25:8
26:3 28:21,22
29:4 30:10
32:4 56:5,11
56:21 81:1
98:6 104:20
**benevolent**
65:4
**best** 26:20
**better** 33:14
41:5,14 64:13
**beyond** 22:11
22:19 31:8
56:23 87:22
**big** 13:11,12
36:2,2 75:21
**bigger** 94:5
**binding** 29:12
119:6
**bit** 71:11
**blasine** 111:15
116:8
**blow** 23:2
**blowback**
133:12
**borne** 99:9
**bottom** 8:10
64:9,10 130:4
**bought** 71:1
**brand** 129:18
130:6,9
**breach** 62:8
74:6 83:7

**breached** 66:6
**breaches** 65:15
**break** 4:13
69:19 99:20,25
**brief** 4:12
99:23 110:14
113:14,15
121:12
**briefed** 55:14
101:8
**briefing** 19:4
112:21
**briefly** 7:19
48:23 89:3
**bring** 13:4
20:14 35:11
43:6 60:1
120:21
**bringing** 66:3
**broad** 8:4
10:23 22:19
28:14 35:10
63:25 67:11
79:15
**broaden** 63:12
**broader** 16:20
**broadly** 69:17
75:1 76:8
**brought** 20:25
111:12,14
114:18 118:23
**budget** 59:2,12
59:15,20 60:20
61:1,2,7,7 64:7
70:1

**budgeting**
61:14
**budgets** 59:3
59:10 61:16,16
62:25
**bunch** 88:10
95:22
**burden** 12:6,25
13:10,12,14
15:11,22,23,25
23:4 31:15
32:11 35:4,7
48:3 50:10
54:5 59:24
73:15,25
**burdenness**
13:9
**burdensome**
12:7,9 40:15
**business** 42:25
44:5,13,20,21
44:22 45:1,5
45:23 46:22
47:15,16,18,19
48:7,12,20
50:17,20,21,24
51:2 52:5,9,17
60:16,17 68:25
76:25 82:25
83:14 85:11,20
90:21,24 98:3
**buy** 60:12 78:9
**buying** 12:9
75:18 99:8
134:7

**c** 2:3 132:21
136:1,1
**c.c.r.** 136:20
**c.r.r.** 136:20
**cabined** 28:13
38:15 105:3
108:16
**calendar** 115:3
116:12,13
122:12,15
**calender**
113:22
**call** 17:6 24:8
64:5 84:2 89:8
**called** 21:13
26:14 29:1
49:4 114:1
129:17 133:7
**camara** 42:16
54:10
**camera** 43:3
**camouflage**
27:5
**cap** 7:14 26:14
26:16 43:10,14
101:19,22
103:1,5,13
104:8,13,19
106:9,18,19
107:7,14,23,25
108:10,16,17
108:23 109:5
109:14,16,22
111:1 116:21

120:24 121:23
122:14 126:25
127:1,2 132:22
133:7,10,12,14
133:16 134:1,2
**capacity** 44:22
**capture** 37:3
38:16 40:4
44:2 47:11
107:8 110:24
124:1
**captured**
107:15 122:8
122:11 123:22
**capturing**
46:23,24
**car** 83:2,3
84:15,16,17
**card** 21:13 22:2
25:15 36:16,18
46:20,24 47:1
47:4,5,6 49:3
49:12 51:8
56:10 116:1
118:21,23,25
119:6 125:19
**care** 1:4 134:9
**careful** 131:13
**carepath** 3:18
10:1,8,18 42:4
50:16 60:5,8
60:10 61:1,14
62:8 64:4
66:19 67:25
69:11,13,20,23

69:25 70:9,16
70:23,25 71:25
72:15 73:2,8
73:10 74:24
75:3 76:3,22
76:23 77:2,9
77:15 78:17,18
79:5,10,13,23
80:3,5 81:23
82:2,4,13,20,21
82:24 83:10,17
84:1,3,10
87:23 89:23
92:12 93:2,16
94:5 95:23
98:24,24 99:15
114:12,16,23
115:9,18,19
119:1,10 121:7
121:21 123:9
123:12 132:25
133:13 134:4
**carepath's** 6:22
118:12,18
120:14
**cars** 83:5
**case** 3:6 8:1
12:14 13:11,12
18:2,11 22:21
25:9 28:23
29:8 30:13
35:24 36:2
45:1 48:9 52:6
59:24 60:14
64:17 68:14

69:2 73:7,7
74:20,21 75:15
75:20 76:5,7,7
80:13 82:25
83:11,20 85:7
85:12 87:14
88:8 90:7 91:1
92:12,25 95:6
95:8 96:7,9,13
97:6,6,17
110:6 114:4
116:16 132:1
134:6 136:14
136:15
**cases** 45:6
**categories**
33:16 40:1,12
41:12
**category** 3:25
27:13 46:3
116:3
**caught** 56:1
**cause** 65:25
66:3 95:16
96:2
**caused** 58:19
60:2 84:9,9
94:7
**causes** 67:22
70:16 78:14
**causing** 74:8
**center** 2:9
**central** 95:6
**certain** 20:12
33:23 40:14

59:18 116:1
117:13 118:2
119:22
**certainly** 4:16
25:24 64:12
66:25 88:15
106:4,7 109:7
118:1 124:1
125:23
**certified** 1:15
136:3
**certify** 136:5,9
**cetera** 4:20
10:25 19:6
20:12,23 76:20
101:14 113:23
**chairman**
119:18
**challenged**
69:12
**chambers**
102:4
**change** 104:20
120:25 121:1,4
**changed** 93:17
**changes** 14:25
43:13 90:18
121:22,23
133:13
**charge** 91:1,3
**charitable** 61:3
82:24
**children** 18:14
**circumstantial**
21:2

cite 89:7
cited 65:12
  115:2,22
cites 93:23
  115:1
citing 133:5
civil 1:3
claim 36:3 60:1
  65:17 67:13
  84:18 87:17
claiming
  111:22 117:1
claims 62:5
clarify 34:11
  65:16 68:12
  104:1 121:19
clarifying 34:4
clause 19:9
  20:2 34:25
  36:10
clear 18:4
  96:16 97:18
  107:2 108:9
  112:19 132:5
clearly 128:5
clerk 102:8
client 14:25
  72:17
client's 9:9
clients 70:22
  71:3
close 42:25
  97:10
closed 128:4

closely 130:7
coherent 13:2
cole 2:19
collecting
  46:16
collects 90:23
colon 68:22
colostomy
  68:22
come 10:19
  12:24 16:1
  33:14 39:22
  40:2 41:5
  44:23 60:20
  68:17 69:13
  88:15 95:21,22
  96:13 111:7
  117:20 122:5
  122:23
comes 35:4
  38:14 78:2
  115:25 117:7
  133:3
commencing
  1:19
commercial
  17:10 71:14
commit 98:23
commitment
  98:18
common 48:5
commonly 95:8
communicate
  53:20

communicated
  102:4,6 122:17
communication
  44:25 47:10,25
  51:17,25 61:19
  72:7
communicati...
  45:5,23 46:20
  46:21 47:12,15
  49:2,10,25
  50:12 51:14,23
  52:3 53:7,10
  53:16 54:14,24
  59:10,12,22
  62:22,25 63:19
  64:6,12,14
  70:2 80:6
  115:15 116:11
  124:7 134:19
companies 13:2
  13:12 71:9
  75:7 77:6
  87:16 88:3
  95:9 97:25
  98:7,8 114:15
company 9:23
  21:13 45:20
  46:6 48:21
  50:2,3,17
  63:20,21 73:13
  73:18,22 74:3
  75:21 76:1
  79:11 80:8,9
  81:2,18 90:17
  119:18 121:7

  123:8 129:3
company's
  29:20 87:20
  95:11
compare 87:1
comparison
  31:10 40:20
compel 111:19
competitors
  60:13 71:13
  78:9 90:1
complaining
  17:7
complaint
  18:20 60:6
  66:11 67:17,22
  78:23 83:12
  89:6 93:20
  97:1,3,3
complete 45:8
completely
  30:13
complicated
  73:21
complied 41:1
components
  63:20
comprised
  130:5
compromise
  104:5,6 105:19
computer
  48:14
concede 121:17

conceded  35:18
conceivable
  18:10
conceptualize
  123:3
concern  14:12
  27:25 32:8
  49:9 117:6
concerned
  133:11
concerning
  113:23
concerns
  125:23
concessions
  21:19
concluded  98:5
  135:10
conclusion  28:2
condition  7:25
  21:23
conditions  3:13
  3:19,22 4:24
  5:12,15,25
  7:22,24 9:22
  16:22 17:3,12
  18:9 19:19
  20:3,22 21:6
  23:4 26:11,25
  29:21 36:23
  37:25 38:10
  42:2,6,10 43:9
  43:14 54:20,25
  57:11 58:5
  62:8 74:6 83:7

118:12,18
120:15 121:1
conduct  6:7
  93:18
conducted
  24:22 47:19
  56:11
conducting
  24:17
confer  3:10
  14:5,10,18
  15:12,19 31:2
  32:16,19 39:4
  41:10,15 54:17
  100:25 103:11
  104:3,12,25
  111:8 128:18
  134:22
conference  3:4
  24:15 43:11
  100:13 104:7
  112:10 114:20
  127:8
conferences  3:6
conferred
  16:12 58:12
  112:25
conferring
  34:22 37:2
confers  104:16
congressional
  71:8 77:5
connection  3:2
  6:3

connects  58:6
consequences
  77:23 78:13
  98:25
consider
  104:12,17
considered
  106:21 114:7
  125:3
considering
  102:20 104:4
  120:13
consistent  9:8
  15:4 104:25
  114:9 115:21
  127:6
consistently
  93:22 114:20
  117:11 131:14
conspiracy
  79:16,18
constantly  31:1
construction
  36:9
consultant  49:4
consultants
  49:13
consumer  23:9
  23:10 65:22
  69:3,4
consumers  62:4
  69:4
contact  68:17
contemplated
  20:15

content  122:13
contention  7:4
context  4:5
  9:18 19:13
  20:4 29:1 35:6
  36:22 48:5
  52:16 117:8
  125:5 126:18
continue  5:2
  34:22 37:1
  98:21
continues
  89:19,19
contract  18:17
  50:15,22 65:15
  66:6 125:13
contractual
  18:23 20:4
contradicts
  37:16
conveying
  45:20
convince  13:7
convinced  26:2
convincing
  100:24
copied  47:20,25
  52:4 53:21
copies  56:11
copy  15:17
  50:18 118:3
  129:22 130:13
core  110:10
corner  73:22
  82:17 85:10

corners  81:18
corporate
  75:14
correct  16:9
  26:8 54:10
  110:4
correctly  19:7
corresponden...
  7:11 57:13
  81:9 102:9
  104:24
cost  48:17 89:6
  89:10 99:9
  106:22 133:1
costs  70:18,19
  80:10,11 99:4
counsel  2:23
  15:17 25:16
  103:12 121:19
  124:9 125:14
  136:10,14
count  22:4
counter  119:5
counteroffer
  25:21
counterpart
  50:17
counterparty
  116:1
counting  17:8
country  68:17
couple  3:8 9:4
  19:1 23:16
  28:20 49:1
  73:19 88:1

101:12 122:10
125:23
coupon  4:1
  18:2 19:6,10
  22:2,13 25:15
  32:10 34:16,25
  35:23 36:16,17
  36:20 37:7
coupons  10:25
  17:21 23:21
  39:17
course  15:17
  21:2 43:6
  49:25 59:3
  77:3 84:11
  91:14 92:2
  108:4
court  1:1,15
  5:1 32:22 36:7
  66:17,20 67:16
  69:3 80:20
  99:21 127:11
  127:23 136:3
court's  52:18
  65:12
cover  7:10 8:4
  29:7
covered  8:6
  20:16
covering
  107:25 109:11
create  33:15
  35:8 40:3
  68:25 81:16

created  9:21
  64:25 79:6
creates  59:24
creating  10:23
  45:16
criteria  20:20
  25:14 28:4,12
  31:8,16 34:12
  39:11
critical  12:21
  72:5,8 85:6
  133:18,19
critiquing
  42:20
crucial  14:24
  133:15
crux  12:14 31:5
cry  75:21
cumbersome
  12:4
cummis  2:8,12
cumulative
  109:12,13
  117:9
curious  74:18
current  9:25
  130:24
custodial  47:2
custodian  6:4
  46:2,6 102:18
  105:13 114:4
  115:3 116:16
  128:21 130:24
  131:3,10
  134:13

custodian's
  6:17
custodians  3:14
  6:11 33:22
  40:22 42:15
  44:4,18,25
  45:10 51:1
  52:6,17 53:21
  54:4 55:20
  61:23 101:8,14
  101:15 102:25
  103:3,5 104:13
  107:1 108:10
  108:12,25
  109:2,11,22,23
  109:24 111:12
  111:18,25
  112:5,9,11,23
  113:11,16
  116:21 117:6
  117:15 126:7
  126:11 127:1,1
  127:3,4,10
  130:16 133:24
  134:10
customer  130:6
customers
  85:17
cutoff  24:24
cuts  16:14

d

d  129:15 133:8
damage  67:22
  76:12 84:8

| | | | |
|---|---|---|---|
| **damaged** 83:25 | **dealing** 3:18 | **decreased** | **depositions** |
| **damages** 63:22 | 5:4 76:15 | 93:22 | 117:8 124:13 |
| 70:12,14,20 | **dealt** 125:22,25 | **decreasing** | **deprived** 68:19 |
| 71:23 72:2,9 | **deceived** 66:18 | 100:5 | 68:23 |
| 79:25 93:9,16 | **deception** | **deductibles** | **described** |
| 96:2,5,7 97:7 | 66:15 98:9 | 10:5 | 10:25 |
| 99:14,18 | **deceptions** 62:4 | **defendant** 1:9 | **describing** |
| 133:22 | **deceptive** 65:23 | 2:18,21 6:6 | 52:15 |
| **darn** 15:23 | 66:7,8 | 42:4 66:18 | **description** |
| **darzalex** 79:12 | **decide** 44:11 | 102:17 | 58:23 |
| **data** 59:2,20 | 133:9 | **defendant's** | **deshaies** |
| 63:1,14 72:6 | **decided** 20:14 | 66:16,20 | 111:15 112:13 |
| 76:20 79:23 | 39:14 57:20,21 | **defendants** 9:7 | 132:15 133:3 |
| 80:25 88:24 | 75:10 76:25 | **defense** 15:17 | **designated** |
| 89:11 90:12,15 | 77:15 109:13 | 133:20 | 114:4 |
| 96:10 98:4,15 | 112:11,19 | **defenses** 28:7 | **designed** 6:9 |
| **date** 24:24 27:9 | 124:25 | 72:9 | 37:3 60:11 |
| 27:14 105:22 | **decides** 70:1 | **deficient** 42:14 | 99:12 |
| 108:19,20,24 | **decision** 18:19 | **define** 33:22 | **despite** 72:16 |
| 118:6 136:8 | 42:9 119:21,25 | 35:16 64:2 | **detailed** 7:5 |
| **dates** 27:18 | 120:1 134:2 | **defined** 41:19 | **determination** |
| 63:15 105:20 | **decisions** 63:7 | 54:14 74:22 | 64:23 65:3 |
| **day** 25:4 42:25 | 63:9 75:13 | **definition** | 119:8 |
| 72:20 103:25 | 114:12 115:18 | 23:17 | **determine** |
| 114:16,16,22 | 120:12,20 | **definitively** | 11:17,17 24:18 |
| 114:23 115:7,7 | 121:6,20,25 | 128:4 | 36:14 112:7 |
| 120:21,22 | 123:22 | **delta** 76:11 | **determined** |
| **days** 40:2 | **deck** 122:22 | **demonstrates** | 63:4 |
| **de** 42:16 53:23 | **decks** 115:22 | 103:18 | **determining** |
| 54:10 | 122:2,16 124:8 | **depending** | 19:12 46:3 |
| **deal** 3:16 10:14 | **declined** 25:1 | 46:13 88:15 | 61:23 133:6 |
| 105:17 126:11 | 93:25 104:18 | **depose** 117:14 | **development** |
| **dealership** 83:2 | **declining** 56:3 | 124:2 127:24 | 82:6 |
| 83:4 84:15,17 | 56:18 | **deposition** | **develops** 77:1 |
| | | 136:7,12 | |

| | | | |
|---|---|---|---|
| **device** 7:7 | **discourse** 95:9 | **dismissal** 12:19 | 5:7,14,19,21 |
| **different** 5:10 | **discoverable** | **dispute** 4:16 | 6:7,10,14,17 |
| 10:6 30:18 | 3:20 | 43:22 84:24 | 7:21 11:11 |
| 38:8 80:10 | **discovery** 3:12 | 102:12,21 | 12:1 15:2,5 |
| 94:3 113:9 | 3:17 4:18 5:1,3 | 104:10 | 16:5,14,20 |
| 116:11 123:7 | 7:3,6,11 9:3 | **disputes** 3:3,17 | 17:18 19:18,22 |
| **differently** | 12:17,21 29:15 | 101:13 | 21:15 22:6,10 |
| 84:12 | 29:17 38:7 | **disputing** | 22:14 23:13 |
| **differing** | 54:21 62:14 | 120:22,23 | 24:7 25:2,12 |
| 102:14 | 67:20 68:3,16 | **district** 1:1,2 | 26:10 27:4 |
| **dig** 26:20 | 69:15,22 81:9 | **division** 60:21 | 29:6,24 30:6 |
| **digital** 15:4 | 103:8,15 | **docket** 127:10 | 30:14,24 31:7 |
| **diligently** 24:1 | 106:25 114:6 | **doctrine** 19:7 | 31:12,18 32:13 |
| **direct** 15:10 | 132:2 | 36:12 50:1 | 33:13 38:19,22 |
| 78:13 109:1 | **discuss** 29:25 | 117:7 127:19 | 38:23,25 39:15 |
| **directed** 5:2 | 31:4 33:9 49:6 | **document** 7:20 | 40:14 41:6 |
| **directing** | 127:18 | 8:3 10:11 | 42:9,23 43:2 |
| 100:20 | **discussed** 11:8 | 11:21 23:5 | 43:12,13,14 |
| **directly** 21:12 | 56:6 134:14 | 27:9 30:3 32:1 | 44:15,23 45:2 |
| 78:22 | **discussing** | 32:2 33:9,19 | 45:7,15 46:10 |
| **disagree** | 119:12 | 51:11 52:14 | 47:2,3,6,24 |
| 126:18 | **discussion** 32:7 | 56:7 57:15 | 48:12,13 49:1 |
| **disagreed** | 50:5 105:8 | 59:1,5 84:25 | 51:12 52:8 |
| 67:16 | 118:17 122:22 | 85:24 86:2 | 53:22 54:2 |
| **disagreement** | 122:25 123:24 | 89:9 116:6,20 | 56:15,21 57:7 |
| 43:2 | **discussions** | 116:25 118:9 | 57:9,18,25 |
| **disagrees** 66:20 | 33:11 49:14 | 118:13,15 | 58:15,18,22 |
| **disburses** 119:1 | 50:19,20 106:1 | 121:15,16 | 59:9,11,17 |
| **discount** 22:2 | 106:3,4,7 | 122:19 125:16 | 60:19 61:13,14 |
| 23:10 25:15 | 108:24 115:9 | 131:12,17 | 61:17 62:20 |
| 32:10 33:9 | 122:2 124:3,4 | 132:18 | 63:4 69:11 |
| 34:16,25 35:6 | 124:20,21 | **documented** | 70:11 72:4 |
| 35:24 36:16,18 | 125:7 | 71:7 | 73:6 76:18,19 |
| 37:7 | **dismiss** 19:4 | **documents** | 77:8 79:5,21 |
| | 67:17 | 3:18 4:22,24 | 80:16,19 82:12 |

[documents - e]                                                    Page 12

82:17 84:13
85:1,15 86:10
86:22,25 87:5
100:11,16
107:8,13 108:4
111:4,23 113:6
113:8,13,13,14
113:21 114:9
114:24 115:1,6
115:13,22
116:4 117:19
117:21,23
118:20 120:2
120:11,19
123:1,23 124:8
124:13,16
125:2,5,6
127:21 129:4
130:14 131:9
131:24 133:11
**doing**  4:19
  13:15 18:7
  21:6 31:3
  39:22 44:21,22
  45:15 46:1,15
  46:23 47:10,16
  47:18 48:7,20
  50:4 51:2 52:6
  60:15 61:8
  65:4 71:2
  75:24 94:10
  109:18
**dollar**  13:11
  125:12

**door**  108:17
  128:4
**doors**  127:2
**doubt**  4:15
**draft**  88:8
**drafted**  8:1,4
**drafting**  3:21
  6:8,10,12 7:21
  7:24
**dramatically**
  32:11
**drawn**  6:23
**drive**  1:17
  77:10 78:16
  81:24
**driven**  94:8
**driving**  22:3
  79:25 134:6
**drop**  50:20
**dropped**  49:16
**drops**  89:13
**drug**  71:4,4,8
  72:1 73:18,18
  73:23 76:24
  77:1,6 78:16
  79:12 83:14
  84:6,6 88:3
  89:16,17,23
  90:14,24 91:5
  91:7,8 92:20
  93:13,21 94:6
  94:7,9,14
  95:10,11,16
  96:10,14,22
  97:6,20,25

98:7,8,12,22
99:1,13 100:3
101:2 133:7,17
134:6
**drugs**  10:5
  18:15 24:19,25
  25:11 42:7,10
  60:12,13 63:16
  64:16 68:24
  69:18 70:23
  71:2,12,13
  73:11,24 75:8
  78:2,9 80:5,10
  80:11,11 82:2
  82:7,14 85:16
  85:17 86:11
  87:18,19,20
  88:7,8,10,11,12
  89:1,7,11,25
  90:1,6,23 93:3
  93:22 98:23
  99:8 121:5
  123:6
**due**  93:13 96:6
**duly**  136:7
**dunlap**  2:16
  6:25 7:16,19
  8:14,17 14:9
  14:12,17 16:10
  16:19 17:1,25
  18:25 19:20
  23:16,23 24:11
  29:10 34:3,6
  34:11 35:25
  36:14 37:4,9

37:20 40:6
41:22 43:4,21
44:16,19 48:22
48:25 49:20
50:8 51:4 53:2
53:5,11 54:11
54:16 55:5,11
55:18 57:4
58:11 60:1
65:8,11 67:14
69:24 70:10
72:22 75:17
76:16 77:21
79:17,21 80:2
81:12,15 82:7
82:11 83:21,24
85:5,11 86:13
86:15,20 88:6
88:17,23 89:2
89:5 91:11,13
91:24 92:24
93:4,19 94:12
95:18 96:1,17
97:1,18 98:10
98:19 99:24
100:2 101:2,5
101:9 135:8
**duplicative**
  128:25
**dupped**  53:23
**dust**  83:15

|   e   |
| e  2:1,1,3,3,20 |
|   46:7,9,16 |
|   47:20,21 48:4 |

49:8 50:6,18
52:4,5,22,25
53:6 102:22
122:16,24
123:19,25
124:5,19 129:1
129:7,9,15,20
130:19,23,25
131:7 132:23
133:8,8 136:1
136:1
**earlier**  8:19
55:24 56:7
103:14,16,22
104:14 105:22
108:24 134:14
**early**  26:18
**ease**  5:11
**easy**  12:12
**economic**  62:18
65:6 69:12
**effect**  37:5
104:22 105:23
106:11
**efficacy**  99:5
**effort**  15:5 27:2
61:3 73:7,25
**efforts**  27:19
28:3,11 72:23
73:8 92:14
**ei**  56:5
**eight**  6:17
**either**  5:23
21:11 26:22
41:7 46:12

50:2 115:2
**ejusdem**  19:6
**elements**  65:16
65:21
**eligibility**  20:10
20:20 23:23,24
24:10 25:14
27:20 28:4,12
30:18 31:8,16
34:12 39:11
**eligible**  18:14
**eliminate**  31:15
72:3
**eliminates**  72:2
84:8
**elizabeth**  2:17
**elsberg**  2:15
**emphasis**
123:10
**employ**  16:11
**employed**
136:11
**employee**  46:7
50:3 130:9
136:13
**employees**
129:18
**employers**  99:9
**encompass**
11:1 108:3
**encourage**
26:23 60:11
**ended**  3:11
131:6

**ends**  51:20
**enforce**  20:20
20:21,24 31:21
31:23 39:21
57:21 65:1
**enforced**  42:11
**enforcement**
3:21 5:11,24
6:11,14 16:4
16:21 19:18,22
20:7 21:9,15
21:18 25:13,14
26:2,11 27:19
28:3,11 29:21
31:8 34:7,8,18
34:24 38:8,11
38:12 39:7
42:7 57:11,17
57:19,25
**enforcing**  16:8
21:6 23:18,18
23:19 24:2
28:17 31:20
33:11 39:10,18
**engage**  32:15
32:18
**engaged**  30:23
48:19 72:17
**enlisting**  62:4
**enroll**  70:22
80:5
**enrolled**  63:15
66:19
**enrolling**  62:7

**enrollment**
63:15
**enter**  50:15
**entered**  3:7
**entire**  38:2
64:15 72:3
73:22 90:17
**entities**  60:25
74:12
**entitled**  1:13
31:6 65:1
106:25
**entitlement**
55:9
**entity**  5:10
60:24 75:15
76:4,23 77:1,2
77:11 82:15
84:7
**entries**  48:16
**entry**  127:10
**equivalent**  15:4
**erleada**  133:8
133:10 134:2,4
134:6
**ernie**  113:12
**escalates**  32:11
**esi**  108:3
110:23
**esi's**  108:5,6
**esq**  2:5,6,6,7,10
2:13,16,17,17
2:20,24
**essence**  106:18
106:22

**essentially** 7:12 29:5 32:6 50:3 72:15 75:9,20 80:8 90:13 106:24 134:17
**establish** 61:22
**et** 4:19 10:25 19:6 20:12,23 76:20 101:14 113:23
**evans** 2:20
**event** 30:9 98:3 112:7
**events** 43:19
**everybody** 4:2 33:20 129:2 131:25
**everyone's** 43:24
**evidence** 4:16 20:19 21:2 44:4 69:6 99:10 103:18 112:13 114:25 115:23,25 124:4,18 125:6 129:19 130:11 134:14
**evident** 135:4
**exact** 63:8
**exactly** 37:9 76:19
**example** 18:12 20:11 25:13 46:5,19 47:8

50:14 76:6 107:3 113:22 122:14,23 123:11
**exclude** 38:3 121:1
**excluded** 42:3
**exclusions** 24:5
**exclusively** 45:18 68:15
**executive** 114:2 114:11 115:16
**executives** 27:4 114:14 119:20 120:8 122:4 128:24
**exhibit** 119:5 121:13 129:20 129:23 130:11 130:18,23
**exhibits** 112:21
**exist** 9:20 10:2 10:8,9,17 11:15 38:22 85:15 86:10 99:2
**existence** 27:21 72:24
**existent** 48:19
**existing** 8:3 53:21 81:23
**exists** 76:4
**expansion** 29:4
**expenditure** 84:10

**expensive** 68:1
**explain** 12:6 29:25 90:18
**explained** 9:7 14:24
**explaining** 14:13
**explicitly** 92:9
**express** 80:24 80:25 90:22
**extend** 6:13
**extensive** 72:23
**extent** 11:6,25 17:25 26:13,13 36:7 38:22,22 41:17 43:21 45:22 46:10 47:18 50:11 58:19 64:3 100:8 105:10 111:3 121:25 123:23
**external** 45:6 49:25 50:12,19
**extreme** 33:1

**f**

**f** 2:1 136:1
**facing** 65:22,22
**fact** 27:22 61:1 61:2,6 89:12 89:15,24 94:14 98:5,21 99:2 124:19 129:6 131:19 133:4

**factors** 61:7 70:2 91:9
**failed** 32:15
**failing** 62:6 65:13 66:5
**fair** 91:2 125:11
**fairly** 73:7 112:18,19
**fall** 3:25 5:20 35:19,20 106:3
**falls** 4:1 46:3 52:14
**false** 80:18 98:11
**familiar** 36:11
**family** 75:7 114:15
**fang** 2:24 102:8 102:11 105:1
**far** 25:1 27:18 33:1 60:22 83:11,11 95:5
**fault** 95:11,11
**favor** 87:25
**federal** 18:12
**fifth** 94:1
**fight** 132:4
**fighting** 89:18 132:3
**figure** 9:21 13:23 26:20 35:10,22 39:14 63:21 70:20 73:22 76:2

77:8,10 81:19
82:3
**figured**  81:4
**figuring**  27:7
39:25
**file**  14:18,22
**files**  9:9 45:12
45:17 46:10
52:9 73:20
85:19 114:8
115:20 117:1,9
117:13,20
122:3 123:25
**final**  24:21 25:3
**finally**  110:18
**finance**  81:24
130:6
**financial**  3:13
19:11 58:15
60:4,8 61:11
63:24 64:4
67:10 76:12
77:23 89:20
100:8,21
**financially**
136:14
**financials**
76:15 89:14
**find**  4:23 11:25
33:21 68:18
70:5 74:18
80:19 86:25
87:1
**finding**  27:2
129:25

**finds**  36:7
**fine**  14:2,8 68:4
69:8 84:11
128:22
**finely**  132:1
**finished**  100:2
**first**  3:16,17
13:8 19:3 21:9
22:1 26:9
28:21 49:7
54:1 58:2
61:25 66:17
75:3 81:15
90:20 91:24
100:24 102:16
102:16 103:8
113:12 114:17
116:12 117:18
118:11 122:11
124:12 130:4
136:7
**five**  55:22
109:19 112:4,6
**floor**  2:12,19
**focus**  18:18
62:13,16 68:9
**focused**  68:5
**focusing**  22:22
**folks**  49:2,12
53:14 116:9
123:5,22
**follow**  32:1
**followed**  11:19
127:8

**following**  58:18
**footnotes**  89:13
**forcing**  74:7
**forecasted**  59:3
**foreclose**
100:22
**foregoing**
136:5
**forenoon**  1:20
**forget**  115:7
**form**  96:5
**former**  44:21
**forth**  29:14
41:16 47:5
50:16 100:9
101:24 105:10
112:12 126:19
127:9 136:8
**forthcoming**
14:13,24
**forward**  4:9
56:1
**forwarded**
131:3,7
**found**  40:13
116:12
**four**  55:23
109:17 127:17
**frame**  5:20
27:25
**frankly**  12:7
64:16 70:5
84:16 110:13
127:7

**fraud**  69:4
**freda**  2:2
**free**  22:2 32:10
88:15
**friday**  14:7,8
15:10,14,17
42:22,24,25
**friend**  34:8
**front**  58:4
**full**  25:8 128:20
132:7
**function**  49:18
**functional**  50:3
**functioned**
49:18
**functioning**
48:6
**fund**  75:9,9
**fundamental**
70:12,13
**fundamentally**
77:22
**funded**  79:7
**funding**  61:9
92:13,18 93:16
**funds**  60:20
70:17 71:25
75:3 78:18
84:10 119:1
**further**  5:22
100:21 107:2
136:9,12

[ganas - gotten]                                                      Page 16

| g | | | |
|---|---|---|---|
| **ganas** 96:12 | 25:10,12 26:3 | 79:1 81:14,17 | 45:18,20 47:11 |
| **gap** 116:23 | 36:25 54:4 | 89:4,12 90:16 | 47:19 48:1,13 |
| **gather** 54:2 | 69:22 77:9,9 | 90:17 91:18 | 49:5 50:13 |
| **gay** 2:15 | 90:9 105:6 | 92:13 99:13 | 51:25 52:5,7 |
| **gbl** 60:1 65:17 | 110:19 129:22 | 107:2 124:24 | 54:8 56:20 |
| 72:10 84:18 | 130:13,19 | 125:24 130:21 | 57:13 59:8,22 |
| 87:17 | **given** 4:18 8:21 | 134:11 | 61:9 64:8,9,10 |
| **gee** 69:16 | 15:11 31:21 | **goal** 41:5 | 75:24,25 77:9 |
| **general** 6:8,22 | 33:15,24 41:11 | **goes** 12:19 | 79:24 85:10 |
| 16:22 17:3 | 45:13 62:25 | 19:22 22:19 | 86:18 87:13 |
| 31:24 33:15 | 63:1,2,3 | 23:5 27:2 | 91:4 92:5,7,17 |
| 36:23 39:23 | **gives** 38:3 | 34:12 55:11 | 92:23 93:4,12 |
| 40:1 58:23 | **giving** 26:10 | 57:16 61:4 | 94:16,17,20 |
| 60:17 78:20 | 125:15,17,18 | 67:2 70:12 | 95:6,19,19,20 |
| **generally** 21:7 | 126:7 | 71:20,22 73:21 | 95:25 96:4,20 |
| 25:23 28:3,5 | **glad** 25:25 26:5 | 77:22 99:10 | 96:25 97:7,9 |
| 28:11,23 73:3 | 34:22 37:1 | 119:11,12 | 97:10,15,17,19 |
| 73:12 77:17 | 54:16 57:4 | **going** 3:12,15 | 97:21 98:14 |
| 100:8 | 61:23 70:10 | 4:20 8:8,10 | 100:4,9 101:10 |
| **generate** 85:11 | 76:19 78:25 | 9:10 10:7 11:5 | 103:20 106:13 |
| 85:14 | 100:15 | 11:23 12:4,14 | 106:15 109:1 |
| **generated** | **go** 4:10,18 5:21 | 12:17,21 13:3 | 110:19 119:9 |
| 85:12 103:3 | 9:14 22:11 | 13:7,18 14:15 | 120:8,9,24,25 |
| **generating** | 25:13 27:6,15 | 14:22 15:22 | 121:1,3 124:17 |
| 118:17 | 27:18 28:5,17 | 16:1 23:12 | 126:10 127:1,2 |
| **generis** 19:6 | 31:1,20 32:2 | 24:4,7 25:8 | 127:24 128:23 |
| **george** 2:6,23 | 33:20 34:5 | 27:17 29:23 | 129:11 131:21 |
| **getting** 50:11 | 35:13 36:10 | 30:14 31:15 | 134:22 |
| 52:18,19 56:21 | 37:1 39:5,6,18 | 32:1 33:1,14 | **gold** 83:15 |
| 69:15 85:17 | 39:25 41:4 | 35:12,13 37:11 | **good** 16:25 |
| 98:10 126:6 | 43:25 44:15 | 37:24 38:1,10 | 41:25 64:22 |
| 131:23 | 51:3 57:10 | 38:13 39:1,4 | 97:11 98:7 |
| **give** 23:17 24:8 | 61:7,10 62:20 | 39:15,19 41:7 | **gotten** 15:7 |
| 24:21 25:1,6,7 | 62:22 64:10 | 42:21 43:3,15 | 47:23 98:18 |
| | 67:19 70:2 | 43:23,25 45:15 | 110:18 129:9 |

[granted - honor]

granted  101:15
granular
  119:21
great  27:2,6,6
  65:5
greatly  75:25
  135:8
greedy  97:25
greenbaum
  2:10 4:4
grew  33:18
gross  2:8,12
grossman
  42:16 49:19,20
ground  87:7
  124:24 125:24
group  119:18
  125:21,22
  129:22 130:5,6
guess  24:4 39:1
  40:9 42:1,8
  84:21 101:13
  102:1 111:14
guidance  36:25
  37:15 41:11
gun  116:5
guys  64:22
  96:11 97:11

h

h  132:21
half  63:17
  111:19
hands  43:24
hannah  2:17

happen  37:12
  41:16 75:19
  109:1
happened
  115:15 122:20
happens  77:13
  122:18 129:3
happenstance
  131:6
happy  14:21
  32:16 100:17
  108:2,18 111:9
  128:12 130:13
hard  8:21
harm  58:19
  60:2,10,16
  62:1,10,14
  64:3,4 65:6,13
  66:1,3,9,10,23
  67:5,18,21
  68:12,14 69:4
  69:12 71:21
  72:10 74:8,23
  75:25 76:3,8
  76:12 87:17,18
  99:11 119:12
harman  42:16
harmed  69:5
  87:20
harms  67:2
harris  42:17
  46:8,16,19
  47:20,24 50:12
  50:18,22 52:2
  54:10

harry  2:5
hate  31:2 41:9
hcs  21:19
head  126:15
heads  131:5
health  1:4
  17:12 20:4
  66:22,24 67:1
  71:14
hear  24:6 25:16
  32:17 37:15
  79:3 97:2
  103:9
heard  34:7 58:3
  77:6 87:24
  95:24 110:21
hearing  5:2,10
  23:11
hearings  71:8
heart  8:1 35:4
heavy  15:23
heith  46:7,9
held  1:16
help  10:4,4
  41:7 50:15
  64:20 71:12
  78:1,7,8
  100:17
helpful  82:4
helping  72:21
  135:5
helps  70:22
  77:10 79:13
  80:4

hereinbefore
  136:8
hey  40:15
hide  72:24 98:7
hiding  73:4
  98:8
high  13:16
  115:9 120:13
  128:24
higher  99:17
highest  114:14
  119:19
highly  15:23
  21:1 90:2
  118:20
historical  7:5
history  32:16
hit  22:3 53:24
hoffman  107:3
  116:8,17,20
hone  132:10
honed  41:13
  88:13
honor  4:4 6:25
  7:17 10:10
  12:23 13:20
  15:14 18:21
  21:8 22:9,25
  24:12 26:7
  28:20 29:3
  32:5,17 34:3
  34:17 35:3
  37:4 40:6
  41:22 43:4,7,8
  44:17 48:22

49:5,24 53:2
55:1,14 56:20
65:8 67:14
68:11 80:7,16
81:13 83:21
86:8,13 88:17
90:4,5 94:4,12
97:24 100:9
103:9 109:8
111:9 112:3,17
112:23 114:10
115:24 116:17
119:24 125:4
126:17,24
127:25 128:16
129:13 131:11
132:5 134:13
135:3
**honor's** 13:5
92:15 110:6
**honorable** 2:2
**hope** 52:10,25
92:4
**host** 30:18
**house** 2:23
44:11 48:10
49:17 52:22
53:6
**huge** 73:10,25
77:17 83:17,24
132:1
**hundred** 13:11
42:23 86:23
**hurdle** 13:16

**hurt** 64:8,10

**i**

**idea** 39:9 69:1
83:9 107:14
118:11,14,17
**identified** 6:12
16:15 42:22
53:24 57:10,16
113:5
**identify** 6:9,21
7:23 31:22
**illegal** 84:17
**imagine** 35:7
**impacted** 61:8
93:2
**impacting**
60:15 94:25
115:10
**impacts** 69:23
**implement** 42:6
120:24 133:7
133:10,16
**implemented**
42:11
**implicitly** 92:9
**important**
21:25 23:17
27:8 31:23
35:24 47:3
54:20 56:4
62:21 76:18
80:15 129:10
132:19
**inapplicable**
127:20

**include** 8:15
56:16 104:8
115:3 116:14
129:2
**included** 11:6
127:1
**includes** 59:2
116:15 129:20
**including** 67:23
71:8 80:4
115:22 123:2
134:4
**inclusion** 50:25
**inconsistent**
26:25
**increase** 74:9
89:16 96:3
98:22 99:1
**increased**
94:22 99:3,12
**increasing**
98:14 125:18
**indicate** 80:17
**indicated** 3:4
5:21 6:16
10:20 11:11
12:3 53:15
**indicates** 17:13
**indicating** 15:7
49:1 57:19
61:17
**indication**
57:12
**individual** 32:4
39:24

**individual's**
31:16
**individuals**
7:23 116:15
118:3 120:12
123:1 124:15
125:7
**induce** 83:6
**inducing** 74:5
**industry** 23:7
73:3 80:25
**inevitably**
47:15
**inflated** 93:20
**inform** 62:7
**information**
3:13 7:5 8:21
15:10,24 21:1
28:18 56:10
67:10 80:12
85:11 87:9
89:21 90:21
**inherently**
122:5
**injuring** 84:14
**injury** 70:12,13
70:19 71:23
72:3,9 99:14
**inquiry** 65:5
86:12 102:9
**instance** 3:16
49:8 50:13
54:2 86:5
**instructions**
31:21

[insurance - j&j's]                                                    Page 19

insurance  95:9
intended  79:6
intending  92:3
  94:23 95:15
intent  38:20
interested
  17:21 53:13
  55:6 77:18
  136:15
interfered
  18:18
interference
  36:3
internal  27:4
  49:8 89:13
  90:12,15
internally
  13:23
interpret  35:16
interpretation
  19:19 102:15
interpretations
  102:14
interpreted
  35:23
interpreting
  37:25 105:11
interrogatories
  6:23 7:13,15
  7:22 123:7
interrogatory
  7:2,7,14 8:3
  29:10,17,19
  31:25 63:5,10
  114:18 123:15

interrupted
  100:1
investigate
  108:19
investigated
  5:13
investigation
  5:14 23:14
  30:11 52:1
investigations
  21:14 24:9,14
  24:17,21 25:2
  25:8,10 26:3
  28:22,22 29:5
  32:4 39:13
  56:6,11,16,21
  104:20
investment
  70:8,11 71:10
  71:18 72:4,8
  77:4,7 79:23
  80:3 81:16,22
  82:11 83:18,18
  87:8 88:9,11
investments
  73:24 100:15
invitation
  116:13,14
  122:16
invitations
  113:22 115:3
invites  122:12
inviting  25:24
involved  32:3
  49:13 50:21

53:15 103:7
  105:22 107:9
  108:23,24
  111:2 115:8
  118:16 120:12
  133:24,25
  134:1,3,18
involvement
  109:5
involving  50:6
irrelevant  5:24
  9:6 30:13
  73:14 74:2
  80:13 82:18
  83:20 90:10
issue  5:15 8:20
  9:17 11:22
  13:4 15:20
  16:6,7,17
  20:10 21:18
  24:19 27:5
  29:21 43:10,12
  43:18 44:3
  48:2 49:25
  51:25 57:2,5
  58:3 64:17
  68:9,15 73:16
  78:14 87:12
  88:8,10,11,24
  88:24 90:9
  93:3 94:12
  101:7 104:2,19
  110:11,13,14
  112:10,20,23
  112:24 113:17

113:22,24
  114:19 115:23
  123:6 124:14
  128:8 131:20
  133:24 134:13
issues  3:7,8 6:4
  7:10 11:12,14
  13:1 14:14
  19:1 25:5
  30:15 40:3
  55:19 70:12,13
  82:5 98:5
  109:11 111:3
  114:5 135:5

j

j  2:10
j&j  5:9,13,19
  5:21 6:11 8:1
  10:3 20:14
  21:19 26:19
  48:10 49:3
  58:19 60:24
  63:19 68:7,8
  69:17 73:11,22
  74:21 75:2,14
  75:20 76:1
  77:17 78:1
  83:11 84:7
  99:12 108:5
  119:6,13 133:1
  133:9
j&j's  5:11
  55:11 67:19
  70:8 83:14
  106:8,20

125:13
jalt 113:23
  114:1,3,7,25
  117:19 120:2,4
  120:9 121:11
  122:1 123:2,4
  123:24 134:16
  134:19
janssen 22:13
  35:6 70:23
  71:1 76:22,23
  77:2,11,13
  79:10,11,12,13
  79:15 80:5
  82:15 84:7
  87:23 88:7,25
  89:7,11,14
  93:25 120:5
janssen's 82:22
january 1:18
  8:13 24:16
  42:1 104:22
  105:24 106:1
  106:11 118:14
jd 48:7
jd's 44:21
jeffcoat 46:7
  50:14,23
  116:15
jeffcoat's 46:9
jeffrey 2:10
jennifer 42:16
  54:10
jeopardizing
  67:24

jersey 1:2,16
  1:18 2:10
  136:5
jjhcs 2:23 5:9
  7:6 8:5 10:3
  27:10 29:13
  35:5 44:23
  45:6 46:8
  47:17,18 49:11
  52:9 53:17
  60:21 63:20
  74:21 77:15
  80:23 90:17
  91:18 93:17,21
john 107:3
  116:8,17,20
johnson 1:4,4
  36:20,20 60:12
  60:21,21,23,23
  69:25,25 71:3
  71:3 72:15,16
  74:3,3 75:6,7
  76:8,8 79:22
  80:2 89:18,19
  96:21,21 98:21
  98:21,25 99:1
  99:2 102:22
  103:12,12
  114:14,15
johnson's
  60:12 79:22
  80:2 99:3
  102:22
jr 2:20

judge 3:1,5 4:7
  4:13 7:18 8:7
  8:15,23 9:10
  10:14 12:15
  13:6,10,21,25
  14:2,8,11,15,20
  15:6,15,18
  16:16,24 17:19
  18:4,19,22
  19:17 22:15
  23:11,24 26:14
  27:14,15 29:16
  29:23 30:3,7
  30:25 31:1
  32:21 33:2,6
  33:18 34:5,10
  35:9 36:13
  37:8,11,19,22
  39:1,6 40:8,17
  41:2,3,25 43:1
  43:16,23 44:9
  45:25 46:18
  47:7 48:24
  49:19 51:3
  52:10,25 53:4
  53:9 54:7,12
  54:18,23 55:2
  55:15 56:2,22
  57:1 58:9,14
  59:25 61:25
  62:1 63:11,13
  63:23 65:10,18
  66:12 68:2
  69:8 70:4
  72:11,13 74:14

74:18 75:12
  76:14 77:20
  79:2,19 80:1
  81:10,14 82:1
  83:23 84:19
  85:13,22,25
  86:3,9,14,18
  87:24 88:13,18
  88:21,25 89:4
  91:4,12,22
  92:4,17,23
  93:6,10 94:15
  94:19,24 95:2
  95:24 96:23
  97:2,9,14
  98:17 99:19,22
  99:24 100:19
  101:4,6,11,14
  101:23,24
  102:1,10,13,17
  102:19,21
  103:6,20
  104:11,17
  105:5,25
  106:10,13
  107:11,18
  108:7,13,17,21
  109:9,17,24
  110:3,8,15,16
  110:20 111:7
  111:11,16,24
  112:7,15,18,22
  112:22 113:4
  113:18,23
  114:9 115:5

117:16 118:5
119:16 120:3
120:16 121:10
122:7,18
123:16,20
124:22,23
125:20,24
126:13,20,24
127:5,12 128:2
128:14,17,22
129:14,24
130:14,20
131:1,4,18
132:8,16
133:18,23
134:5,20 135:1
135:7
**judge's** 83:13
**judgment**
12:18 93:1
**julia** 2:6
**juliette** 111:15
**july** 4:25 43:23
**june** 114:18
**juror** 75:23
**jury** 92:3,8

**k**

**k** 123:19
**karen** 111:15
**katherine** 2:13
**katie** 114:3
116:7,19,20
**keep** 31:3 57:21
61:9 89:22
97:11 99:8

**keeping** 9:8
15:1 41:19
**keeps** 82:8
96:17
**kept** 13:10
**key** 119:3 130:5
**kicking** 3:9
31:2
**kind** 4:5 39:20
42:7 43:19
50:15 100:1
105:15 116:4
125:22
**kinds** 88:8
**knew** 24:2
112:1 125:17
**knewitz** 113:12
113:24 117:5
123:11,18
134:12,17
**know** 3:23 5:8
5:10 8:25
10:10,20,22
11:12 13:2,8,9
15:7 16:1
23:19 24:1
26:18 28:7,8
29:14 30:17
31:1 33:16
38:5 39:9,16
39:18 42:5
44:10 48:13
49:13 51:1,7
51:10,16 53:19
54:15 55:8

58:6 60:22
61:16 62:17,24
63:1,6,18 64:8
64:19,23 65:1
67:6,7 69:16
69:16 72:15,18
73:1,19,23
77:20 78:24
79:11,12,24
80:16,17,23
81:3 82:7,16
86:22 87:15
88:16 90:24,24
91:22 94:15
95:10 96:11
98:4 102:2,5
103:9 110:8,20
112:8 115:7
116:4 119:13
120:7,14,21
125:13,17,20
126:4,6 127:3
128:25 130:10
131:9,22,25
132:9
**knowing** 72:24
**knowledge**
111:25
**known** 21:13
**knows** 69:3

**l**

**l** 2:2 129:15
133:8
**lade** 111:15
112:13 129:14

130:9,23
134:21
**language** 4:2
18:20 22:1,23
**large** 66:22,24
**latches** 28:8
**law** 18:12
60:14,17 102:8
**lawsuit** 20:14
20:25 59:7
74:1,2,13
123:13
**lawyer** 45:8
46:8 49:17
50:6 51:1
52:22
**lawyers** 44:20
44:21,23 45:12
48:10,21,21
51:1 53:6
**lead** 29:3,15
30:14 73:8
74:9
**leadership**
120:5 123:4
**learn** 124:3
**leave** 26:24
97:23 126:13
**left** 3:5 16:17
68:22 112:5
**legal** 2:9 44:22
45:21,21 47:17
47:21,22 48:20
50:23 51:2

| | | | |
|---|---|---|---|
| **length** 27:6 | 128:23 | **logistics** 102:20 | 19:8,22 36:9 |
| **lengthy** 67:6 | **limiting** 17:23 | **long** 2:6 5:18 | 37:6 46:16 |
| **letter** 25:20 | 18:22 30:7 | 10:12 18:8 | 54:13 57:9 |
| 42:20 48:25 | 50:10 82:1 | 52:2 61:4,10 | 62:9 66:12 |
| 100:12 111:13 | 86:20 87:8 | 72:19 103:24 | 97:4 111:2 |
| **letters** 7:3 | 88:14 96:2 | 104:1 105:23 | 117:3 120:17 |
| 21:10 29:15 | **limits** 134:8 | 106:2 108:9,15 | 121:6 125:1 |
| 43:20 119:2 | **line** 59:2,2 64:9 | 109:21 110:2 | 127:12 130:10 |
| **level** 63:14 | 64:10 82:22 | 112:15,16 | **looks** 118:1 |
| 115:9 120:2,3 | 95:5,7 | 113:10,20 | **loot** 72:19 |
| 120:13 123:3 | **linger** 55:19 | 115:14 121:9 | **looting** 72:17 |
| 128:24 | **link** 96:17 | 121:11 122:9 | **loots** 78:2 |
| **levels** 69:25 | **list** 18:8 | 122:20 123:18 | **losses** 73:12 |
| **license** 136:21 | **listed** 23:20 | 123:21 124:17 | **lost** 76:7 91:8 |
| **lieb** 2:13 | **literally** 63:8 | 126:17,18,22 | 92:11 96:5 |
| **lies** 98:9 | 85:9 | 131:11 134:12 | **lot** 17:5,6 20:4 |
| **light** 26:18 | **litigating** | **longer** 13:3 | 22:24 44:2 |
| **likelihood** | 110:17 | **look** 12:11 15:6 | 53:20 69:18 |
| 111:1 | **litigation** 49:18 | 20:1 29:17 | 71:8 75:2,21 |
| **likely** 118:20 | 50:6 73:5 | 35:2 38:2 | 78:12,21 83:3 |
| 124:15 | 115:11 | 40:21 50:22 | 90:20 131:8 |
| **limit** 53:11 | **little** 23:6 33:8 | 56:13 66:10 | 132:1 |
| 103:4 111:4 | 71:11 | 70:24 82:5 | **lots** 28:14 83:6 |
| 129:4 133:22 | **lives** 68:18 | 89:12 98:12 | 94:10 |
| **limitation** 51:4 | **llc** 1:8 | 100:14 121:12 | **love** 15:15 |
| 68:5 123:14 | **llp** 1:17 2:4,19 | 125:5 128:3,5 | 99:21 |
| **limitations** | **lobiondo** 2:6 | 129:19 130:3 | **lowenstein** 1:17 |
| 132:11 | 106:12,15 | 130:11,18,22 | 1:17 2:24 |
| **limited** 6:18 | 109:7,19 | 131:22 | **lowered** 89:6 |
| 11:15 17:15 | 110:12 111:6 | **looked** 3:24 | 89:10 92:1,8 |
| 26:22 32:6 | **log** 39:2,4 | 19:4 31:17 | 92:18 93:13 |
| 49:11 61:12 | 42:18,19 44:15 | 74:19 80:18,23 | **lowering** 95:2 |
| 75:14 86:17 | 45:16 46:12 | 86:10 98:4 | 95:20,21 96:22 |
| 87:18 108:10 | 51:20,21 | **looking** 3:10 | 97:20 |
| 128:9,14,15,17 | | 8:25 17:20 | |

| | | | |
|---|---|---|---|
| **lying** 15:3 | 54:5 57:24 | **manufacturer** | **mazuk** 114:3 |
| **m** | 60:22 71:18 | 5:17 | 114:10 115:1,2 |
| **m** 2:13 | 72:16 73:18 | **manufacturers** | 115:4,16 |
| **machine** 83:16 | 78:12,15,21 | 72:22 | 116:20 117:12 |
| **made** 21:19 | 80:10 82:13 | **manufacturing** | 117:14,20 |
| 22:23 26:6 | 83:7 84:21 | 82:6 | 121:21,25 |
| 33:19 42:8 | 86:24 93:11,15 | **march** 33:5 | 122:1,5,15 |
| 68:18 71:3,5 | 96:9,15 97:18 | **mark** 116:8 | 123:2 124:2,20 |
| 73:5 75:13 | 97:19,21 98:15 | **marked** 46:11 | 125:7 |
| 87:14 88:2 | 98:19 99:16,17 | **market** 80:11 | **mazuk's** 114:8 |
| 95:13 99:7 | 100:7,15 103:2 | 95:8 | 115:20 |
| 109:9 113:9 | 104:6 111:10 | **marketing** | **mean** 6:1 14:21 |
| 115:19 120:20 | 118:8 120:7 | 60:11 61:2,5 | 17:14 19:9,11 |
| 121:7 123:13 | 125:2 133:13 | 64:20 69:17 | 19:12 28:6 |
| 134:15 | **makes** 63:6,9 | 82:6 134:4 | 31:14 33:15 |
| **magistrate** | 68:7,8 69:17 | **massive** 45:16 | 36:4 37:25 |
| 33:18 | 74:3 75:21 | **massively** | 38:7 51:20 |
| **mail** 47:20,21 | 77:17 80:9 | 73:20 | 58:23 87:10 |
| 50:18 52:4,5 | 84:16 102:23 | **material** 99:4 | 101:25 117:22 |
| 102:22 122:16 | 105:7 | 131:10 | 125:21 129:6 |
| 122:24 123:25 | **making** 21:16 | **matter** 1:13 | **meaning** 8:25 |
| 129:20 130:19 | 30:10 67:25 | 9:25 33:24 | 9:18 10:23 |
| 130:23,25 | 69:16 72:1,20 | 52:2 83:4,4 | 11:7 16:21 |
| 131:7 132:23 | 73:11 75:2 | 85:10 | 19:23 25:14 |
| **mails** 46:7,9,16 | 78:11 83:5 | **matters** 59:15 | 34:16,24 38:3 |
| 48:4 49:8 50:6 | 88:4 97:24 | 83:9 90:14 | 53:17 105:11 |
| 52:22,25 53:6 | 100:3 114:11 | 91:17 | **meaningless** |
| 124:5,19 129:1 | 119:22,25 | **max** 17:9 | 29:5 |
| 129:7,9 | 120:1,12 | **maximizer** 9:19 | **means** 4:17 |
| **main** 26:6 | 124:18 | 10:18 26:12 | 12:15 17:14 |
| 114:25 | **manage** 50:16 | 29:1 30:12,21 | 19:8,13,15 |
| **maintain** 51:12 | **manages** 81:1 | 108:6 | 20:6 38:11 |
| **make** 4:4 17:23 | **mangi** 127:17 | **maximizers** | 40:11 |
| 19:16 24:3 | 127:22 | 57:23 106:21 | **meant** 9:22 |
| 33:22 39:19 | | 107:4 132:23 | 10:24 19:24 |

33:20 36:18,23
95:7 110:16,17
**mechanism**
7:12
**medicaid** 18:13
20:11,22 23:21
**medicare** 18:13
20:11,22 23:21
29:6
**medication**
68:21 74:8
91:2
**medications**
42:3
**medicines**
93:25
**meet** 3:10
14:10,18 15:12
15:19 31:1
32:15,18 39:4
41:9,15 54:16
66:25 103:11
104:3,12,16,25
**meeting** 34:22
37:1 116:14,18
116:18 117:24
118:2 122:7,11
122:19,21,24
123:24
**members** 17:11
20:16 42:3
**memorialized**
124:5
**mention** 55:7
86:25 87:6,11

118:11 131:12
**mentioned** 37:6
112:14
**mentions** 108:3
108:3
**merits** 128:7
**met** 16:12
58:12 116:9
117:10
**mid** 108:19
**middle** 104:5
**miles** 2:17
**million** 13:11
32:13 91:9
92:22 119:7
125:12,18
**millions** 33:12
**mind** 41:19
**minute** 74:16
84:4 99:25
130:19
**minutes** 90:5
122:23 124:8
**mirrored** 88:4
88:6
**missing** 65:23
69:21 120:19
**mitigation**
133:20
**mitigations**
28:8
**modifications**
6:5
**modifier** 104:9

**moment** 4:11
12:10 14:6
21:21 27:16
31:6 37:5,17
38:11 62:12
73:15 75:18
88:14 94:3
103:21 127:14
**moments** 23:16
**money** 59:6,22
68:7,8 69:18
70:18 71:4,5
71:11 72:16,20
73:9,10,17
74:3,4 75:2,21
76:10,11 77:17
78:1,11,12,15
78:21 80:9
82:12,13 83:1
83:5,8 84:8
86:24 119:9,23
**monitor** 71:9
**monitoring**
130:7
**month** 52:20
**months** 6:17
32:19,21
**motion** 12:18
12:19 14:19
19:4 93:1
101:15 107:22
111:18,24
112:6,24
114:17 127:10
133:5

**move** 4:9 6:2
13:17 16:2
41:18 70:7
132:4
**movement**
43:11
**moves** 32:9
**moving** 83:11
95:17

**n**

**n** 2:3 123:19
**name** 76:21
79:15 106:20
107:13 112:9
114:3
**named** 46:7
79:9 132:20
**narrow** 22:17
25:7 31:5
32:22,24 35:11
35:14 37:9
40:18 52:23
64:14 67:12
74:23,23 78:25
79:19 86:21
87:7 101:21
103:18 111:10
**narrowed**
16:13 25:19
40:18,25 41:1
81:7
**narrower**
40:19
**narrowing**
32:24 76:3

79:3 81:6,10
**narrowly** 54:14
69:14
**natural** 127:7
**nature** 31:24
39:8,24 40:25
46:13 50:4,24
**necessarily**
48:1 105:17
115:15 123:25
**necessary** 4:8
22:20 59:23
69:11 80:12,21
86:15
**need** 11:2 12:17
13:4 20:5 21:5
24:7 26:4 27:5
31:4,10 32:20
34:1 36:17
39:12 41:6,6
41:18 56:23
57:17 59:11
60:19 63:18,21
63:22 69:22,24
76:10 79:21
80:2 84:13
88:13 107:2
124:12
**needed** 22:17
28:19 68:21
**needs** 28:10
33:21
**negligible**
48:18

**negotiate** 25:24
**neither** 136:9
**net** 86:21 90:12
90:13 91:17
93:24
**never** 20:17,23
24:5 40:18
55:13 134:5
**new** 1:2,16,18
2:5,5,10,13,13
2:16,16,20,20
6:12,14 20:24
42:2,6 71:4
84:2 87:2
99:14 102:18
102:25 103:5
103:17 105:13
108:10 111:12
111:23 112:12
113:5,8,8,13,13
113:14 116:3
124:18 125:1,2
125:5,25
126:25 129:19
130:10 132:18
134:9,14 136:4
**newark** 2:10
**non** 38:23
48:19 93:3
**nonsense** 81:4
**north** 119:18
**notary** 1:15
136:4
**note** 49:16
118:7

**notebook** 116:7
117:25
**noted** 12:20
**notes** 1:12
118:2,7 136:6
**notion** 80:22
**november**
24:24 43:17,25
57:8 101:14
104:3
**number** 9:6
18:16 47:6
51:25 58:20
60:8,9 61:13
77:5 94:16,18
94:21 100:11
108:1 109:21
120:10 127:10
**numbers** 54:4,6
61:15 91:20
**numerous**
120:2

| o |
| --- |

**o** 2:1 132:21
**object** 50:25
59:13 87:23
**objected** 87:22
**objections** 7:8
**obligation**
51:13 67:1
**obligations**
93:21
**obliged** 29:11
**obtain** 73:6

**obviously** 8:18
45:7 125:3
**occasion** 51:17
**occasionally**
123:12
**occasions** 45:4
**occurred**
100:13 116:19
**occurring**
120:1
**october** 5:3
22:16 33:3
43:11 104:7
114:19 126:20
126:22
**offer** 3:25 4:3
6:1 9:18 12:15
16:9,22,24
17:14,16 18:3
18:5,6,20,24
19:5,8,11,13,24
20:1,6,15,18
21:4,7,23 22:7
22:23 28:25
30:5,16 31:9
32:9 34:9
35:20 36:1,4
36:15,16 38:4
40:11 60:23
78:7,8
**offered** 5:19
22:24 59:11
104:4 121:24
**offering** 25:6,7
25:10,12

**office** 1:16
73:20 75:10
**offline** 50:23
**offset** 72:3
78:15 99:18
**offsets** 72:2
78:18
**oh** 29:6 68:7
77:17 78:12
81:7 91:18
95:9
**okay** 5:6 8:7,23
11:2 13:6,21
14:1 15:18
16:16 28:1
33:6,19 37:13
40:5,7 41:21
41:25 42:12
54:12 58:14
59:25 62:19
63:13 64:9
70:4,5 72:18
72:18 75:12
83:16 88:20
98:17 99:22
100:19 101:5,6
101:11 103:21
107:11 111:6
111:11,21
123:20 130:2
130:20 131:4
132:14
**old** 40:2 88:21
124:19 125:5

**once** 32:9 52:23
80:5 83:3
**oncology** 68:23
**ones** 26:6
134:21
**open** 3:5 23:2
97:9 127:1
135:1
**opened** 108:17
**opening** 113:14
126:14
**operated** 43:15
**operates** 82:24
87:16
**operation**
68:22
**opinion** 12:16
62:2 65:12
66:13 67:4,6
**opportunity**
102:2
**opposed** 64:15
71:12 90:1
119:22
**opposing** 25:16
121:19 124:9
**order** 12:16
20:5 22:17
26:14 27:14
32:23,25 36:14
52:19 56:2,23
74:7 82:3 83:7
83:13 102:2,15
102:18 104:3
105:1,7,12

112:8,20 113:3
118:22 125:10
125:15 126:10
127:7,8
**ordered** 37:8
104:18 111:19
112:24 116:17
116:21 127:5
**ordering** 12:2
134:8
**orders** 3:8
116:1
**organized** 13:3
**original** 43:22
55:21 108:11
118:16
**outcome** 29:15
**outside** 10:24
46:21 47:9
49:11 50:2
52:14 53:17,20
60:23 90:17
91:18 104:24
**outstanding**
3:3
**overall** 67:10
68:8 75:25
83:4 125:22
**overlaps** 40:11
**overtaken**
43:19
**overwhelmin...**
45:18 52:12
**own** 47:17 75:9
87:2 93:24

131:16

**p**

**p** 2:3,3
**p.c.** 2:8,12
**p.m.** 135:10
**page** 117:25
127:25 130:4
130:23
**pages** 4:22
22:10
**paid** 59:2,16
61:13 79:24
84:4 119:9
**paper** 73:20
82:8 116:6
135:5
**papers** 27:1
**paragraph**
12:16 67:21
93:19
**parallel** 15:14
**park** 2:12
**part** 8:1 14:12
16:10,11 17:10
17:13 18:13
20:13,19 34:14
40:9 43:22
44:14 46:25
50:5 61:2,3
70:21 71:16
74:13 79:15
99:2 110:12
111:18,23
112:20 119:8
132:23,23

| | | | |
|---|---|---|---|
| 133:5,13 | past 43:23 | payment 90:23 | period 5:1,18 |
| **partially** | **patient** 30:19 | **payments** 94:5 | 10:7,9 11:21 |
| 119:25 | 30:19 63:14,15 | **pays** 17:8 71:6 | 14:25 15:5 |
| **participants** | 64:20 67:25 | **pejorative** 78:3 | 19:20,25 21:16 |
| 27:11 66:19 | 76:12 84:3,4 | **pending** 3:17 | 24:22 25:9 |
| 118:7 | 133:1,12 | **penkowski** | 30:22 34:14 |
| **participated** | **patients** 10:4 | 111:15 112:13 | 38:24 40:21 |
| 122:2 | 18:9 24:18 | 113:19,25 | 55:20,23,24 |
| **particular** 3:23 | 26:21,23 27:3 | 117:4 118:16 | 56:1 57:7,19 |
| 21:23 22:1 | 57:22 60:12 | 121:17 124:20 | 58:20 63:17 |
| 44:11 73:18 | 62:7 66:6 | 128:10 129:7 | 103:16 104:9 |
| 117:6 | 67:23 68:17,23 | 129:21 134:16 | 104:13 105:3 |
| **parties** 5:2 | 70:25 71:1,12 | 134:22 | 108:11 128:19 |
| 14:18 49:3,11 | 74:7,9 77:9 | **people** 13:23 | 128:20 132:7,8 |
| 50:13 51:5,11 | 78:1,7 79:11 | 39:16 44:18,25 | **permit** 38:6 |
| 51:15 52:3 | 80:4 82:14 | 45:1,5,6,20,23 | 127:3 |
| 54:14,25 | 85:16 86:11 | 47:3,16 48:19 | **person** 29:6 |
| 102:14,19,21 | 87:3,18,19 | 50:21,21 52:5 | 46:22 117:12 |
| 105:14 136:11 | 93:20 98:23 | 52:9 56:14 | 129:10 133:6 |
| **partner** 80:24 | 99:7,15 119:2 | 64:8 68:19 | **person's** 75:10 |
| 85:21 | 119:2,9,15 | 70:22 71:24 | **personnel** |
| **partners** 68:25 | 121:24 | 74:6 78:8,17 | 47:20 |
| 90:21,24 98:3 | **patterson** 2:4 | 83:6 84:22 | **perspective** 4:6 |
| **parts** 20:21 | **pause** 21:21 | 86:23 89:25 | 15:21 33:17 |
| 63:19 | **pay** 5:17 10:4,4 | 103:7 108:22 | **persuade** 78:8 |
| **party** 46:21 | 10:5 23:8 | 109:12 111:1 | **pertinent** 64:1 |
| 47:4,9 51:10 | 26:16,22 59:1 | 117:9 120:9 | **pfizer's** 87:19 |
| 51:18,22,24 | 59:6,19 63:4 | 129:1 | **pharmaceutical** |
| 53:7,9 55:8 | 70:16,17 71:14 | **people's** 48:13 | 72:22 73:3 |
| 116:5,10 119:5 | 73:9,9 74:10 | 83:6 | 81:1 87:16 |
| 132:19,20,21 | 74:10 75:9 | **perceive** 56:24 | **pharmaceutic...** |
| **pass** 103:23 | 79:13 93:21 | **percent** 16:14 | 119:19 |
| **passing** 30:19 | 94:22 121:2,4 | 25:20 | **pharmacies** |
| 30:20 | **paying** 57:21 | **performance** | 62:5 |
| | 70:18 71:25 | 21:3 | |

[pharmacy - price]                                                    Page 28

pharmacy
  90:22,23
phrase  38:2,14
piece  9:13,13
  36:2,3 82:8
  94:22 114:25
  116:6
pieces  44:2
pitch  100:3
place  49:14,22
  73:25 103:8
  117:22 136:8
placed  38:18
plaintiff  1:6 2:7
  2:11,14 4:21
  5:12 6:7,16
  42:5 58:17
  62:14 66:3,17
  66:23 74:20
  75:15 101:16
  101:19 111:16
plaintiff's
  115:10
plaintiffs  6:21
  62:3,5
plan  17:9,10,14
  20:17 70:22
planned  42:24
planning  97:5
  98:2
plans  17:12
  20:4,16 24:18
  38:18 42:4
  56:14 71:14
  78:11 89:17,20

plausible  66:18
plausibly  62:3
  66:23
play  44:19
plaza  2:9
please  88:19
  100:24 127:14
  129:4 132:13
  134:23
pllc  2:15
pocket  17:9
point  4:8 17:16
  17:17 19:16
  30:8,10 44:5
  50:18 53:8
  56:12 59:9
  62:6,23 68:2
  85:6 86:6
  87:13 98:20
  100:7 104:16
  106:17 107:6
  117:19 118:8
  120:7 124:12
  124:17 125:9
pointed  22:9,25
  23:6
pointing  65:13
points  4:5 7:4
  26:5 44:7
  81:13 106:6
  116:4
police  28:5
policies  11:14
  31:7,11,19
  33:10,11 34:6

policy  11:18,24
  12:1 13:9
  29:20,25,25
  30:1 32:7,7
poor  50:9
portion  127:14
portions  17:2
position  10:15
  10:21 20:24
  27:21 32:19
  37:23 84:21
  102:23 104:4
  104:25 112:17
  113:5 131:15
  131:19
positions  33:1
possible  104:23
potential  73:24
  104:5
powder  77:18
pr  134:17
practical  85:10
practicing
  48:21
precisely
  120:16
predate  5:18
predecessor
  6:21 8:2,5,16
  9:1 11:6
preliminary
  4:5
prepared  31:3
prescribed
  105:1

prescription
  22:2
prescriptions
  62:6
present  2:23
  8:13 24:23
  25:9 30:23
  59:4 98:2
  101:10 124:22
presentation
  122:12,13,21
  132:24
presentations
  122:3
presented
  112:1 113:7
  122:1,22
preservation
  11:12 14:14
pressure  89:20
presumably
  122:25
pretty  13:19
  15:22
prevent  27:2,7
  72:24
preventing
  13:15
previous  16:15
previously
  112:1
price  90:6,12
  90:13,13 91:2
  91:17 93:22
  94:7 97:11

99:17
**prices**  89:16,17
  89:18,23 90:25
  92:2,8,18,19
  93:13,25 94:6
  94:9,14 95:10
  95:12,16,20,22
  96:6,14,22
  97:6,20,25
  98:14,22 99:1
  99:3,13,16
  100:6 133:1
**pricing**  88:24
  88:24,25 90:14
  90:18 91:5,7,8
  92:20 93:3
  94:25 95:2,3
  96:10 98:12
  99:7 100:4
  101:3
**primarily**  3:11
  22:3 68:15
  69:2
**primary**
  132:17
**prior**  9:22 10:2
  27:22 104:7
  133:5
**privilege**  39:2,3
  42:18,19 44:15
  45:3,16 46:11
  46:13 47:13,23
  48:14,15,15
  50:1 51:18,19
  51:21

**privileged**
  38:23 45:9,19
  45:24 46:11
  48:1
**probably**  23:6
  119:23
**problem**  40:9
  45:16 51:22
  135:7
**problematic**
  27:24
**problems**  9:14
**proceedings**
  1:8,13 135:10
**process**  21:15
  26:3
**produce**  11:23
  12:5 21:11,13
  22:14 23:13
  51:13,20 72:7
  72:7 76:20
  79:24 80:20
  111:4 120:17
  132:4
**produced**  4:21
  12:2 22:10
  30:2,6 38:15
  38:21,24 43:12
  45:7,24 58:18
  58:25 59:5,17
  59:20,21 61:12
  62:24 80:16
  84:6 85:4
  89:14 90:8
  91:13 100:12

109:13 114:7
  117:2,21
  118:13 124:9
  130:15
**producing**  9:15
  27:12 30:23
  47:1,2,6 56:10
  57:9,25 58:24
  79:5
**product**  81:23
  81:24 82:22
**production**
  22:24 23:1
  25:4 27:9
  30:14 42:14
  49:10 52:19
  56:25 57:2
  91:15 106:8
  116:23
**productions**
  21:16 124:6
**productive**
  9:24
**products**  60:22
**professional**
  134:18
**profitability**
  73:2
**profitable**
  73:13,23 83:10
  83:15
**profits**  76:7
  87:4 91:8
  92:11 96:6

**program**  3:24
  8:6,19,22 9:19
  9:20 10:6,8
  17:6 18:3,15
  21:4 23:8
  26:17,24 27:3
  27:7,24 29:2
  43:15 50:16
  59:7 60:11
  61:5,14 62:18
  64:5,6,25 65:1
  68:4,10,18
  69:17 71:17
  72:17,19,21,25
  73:2 74:25
  75:4 76:3,9,9
  76:21 77:3,15
  77:23 78:7,8
  80:4 84:2,23
  86:12,21 87:16
  88:2 89:24,25
  91:6 92:12
  93:16,23 94:5
  94:8,22 98:6
  98:24,24 99:8
  99:12 101:19
  101:22 103:1,1
  103:13 105:23
  106:9,10,16,19
  106:19,23
  107:7,10,14,14
  107:23,25
  108:6,6,16,23
  114:12,23
  115:11,18,19

[program - ran]                                                    Page 30

119:1,4,10
120:25 121:8
121:21,23
122:14 123:9
129:8 131:14
131:16 132:22
133:7,10,12,14
133:16 134:1
**programs**  5:17
6:22 8:2,16 9:1
9:20 10:17,18
11:7 23:10,20
26:12,19,21
27:10,11 30:12
30:22 64:18
67:25 95:23
130:7
**prohibition**
18:14
**prohibitively**
68:1
**project**  9:24
80:13
**promising**
119:6
**promptly**
100:17
**pronouncing**
19:7
**properly**  51:12
**proportional**
52:16
**proportionality**
102:24 105:16
109:15

**proposal**
111:10,17
128:13
**proposed**  22:4
25:18 37:8
50:24 58:5
111:25
**proposing**
22:11 32:6
50:9 58:8
**propound**  7:8
7:14
**propounded**
7:9
**protect**  127:19
**protected**
47:12 50:7
**protecting**
60:17
**prove**  97:6,7
**provide**  32:23
50:23 112:25
128:12 130:8
**provided**  11:13
11:16 63:10
100:21 114:20
115:6 117:13
**provides**  78:1
84:16 89:11
**provision**  16:23
16:25 17:16
19:13,24 20:16
20:18 36:2
**provisions**  20:3

**prudent**  83:10
**public**  1:15
60:2,10,18
61:3 62:1,10
65:22 66:1,22
66:24,25 67:18
67:23 68:12,14
71:18,20 72:10
87:17 95:8
99:11 136:4
**publicly**  89:9
**purpose**  52:23
71:17 77:22
132:25
**purposes**  5:9
82:24,25
**pursue**  39:16
**put**  25:19 46:12
51:19 77:15
78:14 82:12
87:7 89:9,19
91:20 92:5,7,8
92:23 96:19
100:10 102:2,6
112:12 118:6
**putting**  13:10

**q**

**quarter**  32:13
**quarters**  22:5
**question**  4:17
11:3 24:6 34:4
52:15,21 61:20
63:8 71:22
73:8,10,17,19
73:21 74:5,15

74:21 82:4,23
84:20 85:25
92:16 101:17
115:6 116:8
119:17
**questioned**
24:10
**questions**  23:23
23:25 29:9,11
29:12 62:10
72:10 122:4
**quick**  124:10
**quickly**  13:19
83:22
**quite**  3:19
13:13
**quote**  16:4
23:13 93:24
**quotes**  129:8

**r**

**r**  2:1,3,16
132:21 133:8
136:1
**raise**  28:8
89:19 95:12
99:16 103:12
103:17 133:1
**raised**  7:10
51:4 58:3
92:19 94:14
97:25 98:12
**raising**  29:10
89:23 95:3
**ran**  20:18

range 91:19
ranking 114:14
  119:20
rare 45:4
rather 12:12
rational 59:11
ray 80:8
reach 80:21
reached 101:17
  108:7
read 33:2 127:8
reading 66:21
  102:22 127:7
  127:13,14
  135:4
real 92:1
really 3:9 5:22
  13:7 14:13
  26:20 30:13
  32:8 35:3 38:3
  39:14 43:10
  48:5,7 49:9
  55:3 60:15
  62:13 64:17,19
  68:9 69:16
  82:25 91:15
  105:19 106:18
  131:20 132:19
  135:3
reason 27:8
  53:13 79:9,14
  82:20 103:7
  108:21 110:25
  118:19 126:1

reasonable
  52:16
reasons 22:16
  89:22 98:13,21
  99:4,6
rebate 35:23
rebates 10:25
  17:22
recalled 56:9
receive 18:15
received 25:20
receiving 45:21
recent 10:12
recess 4:12
  99:23
recipient 52:4
recognizable
  60:16
recognize
  117:7
record 3:7 4:11
  9:8 10:11 15:1
  92:24 102:6
records 13:3
  103:3,5
redacted 45:2
  46:13
reduce 89:16
reduced 94:6
  96:6
reducing 97:11
reduction 94:7
refer 124:19
reference 91:9
  92:21,21 94:9

94:10 96:14
  116:19 131:13
references
  17:11
referencing
  127:4
referring
  107:21 110:22
  110:23 123:17
refers 108:5
reflect 31:19
  38:19 39:15
reflecting 42:9
reflects 31:20
reframing
  74:12
refresh 108:12
regard 3:16,20
  6:20 8:12
  17:20 23:13
  27:19 28:4,12
  31:8 33:11
  69:20 81:11
  101:7,16 127:9
  128:10
regarding 3:12
  4:17 34:7
  102:18 105:13
  107:22 123:13
regardless 12:1
regular 132:6,7
  132:8
regularly 24:2
reimburse
  119:6

reimbursing
  119:14
reiterate 76:16
reject 62:5
rejected 111:17
relate 3:12 20:3
  22:7 32:16
  43:12 111:8
related 25:2
  43:10 47:18
  54:21 67:1
  77:3,8 94:8
  103:5 110:9
  136:10
relates 62:15
  104:20
relating 4:24
  5:25 6:8,10,14
  7:21 16:20
  26:10 30:20,21
  54:25 56:15,22
  57:25 82:5
relative 73:23
  136:13
relevance 4:16
  9:17 15:25
  59:14 91:23
  132:18 133:3
relevancy 9:14
relevant 5:12
  5:20 9:3 10:16
  11:6,21,21
  15:24 17:3
  19:12 21:2,16
  21:24 25:8

**[relevant - return]** Page 32

| | | | |
|---|---|---|---|
| 28:15,23 31:13 33:8 34:7,9 35:1,12,22 36:24,25 41:12 41:20 53:18 58:20 61:20,21 64:7 67:13 70:2 72:9 76:17 77:14 80:6,20 82:25 87:5 89:17 90:2,6 91:24 91:25 100:4,10 108:25 109:8 110:22 114:5,6 115:13 116:2 117:23 118:20 122:13 124:7,8 124:15 129:8 131:8,10,17 134:3 **relief** 127:9 **relieve** 51:9,13 **rely** 128:6 **remain** 44:3 **remaining** 112:4 113:16 123:21 **rendering** 47:22 **renewed** 112:6 **repeat** 80:1 **reply** 98:1 113:15 | **report** 89:8 93:24 **reporter** 1:15 99:21 136:4 **reports** 25:3 89:12 90:8 91:14,21 115:17 **representation** 93:7,11 97:19 97:22 114:21 **representations** 97:4 **represented** 123:14 **request** 30:4 31:5 32:1,2,25 33:20 34:13,15 34:19 37:9 47:21 49:17 54:21 55:21 64:14 67:11 81:7,8 88:4,6 108:16 **requested** 6:21 107:22 127:9 **requests** 5:7 6:20 7:20 8:3 22:18,18 40:18 40:19,25 45:21 63:24 67:12 69:10,14 79:1 81:9 87:14 88:22 | **require** 69:22 80:8 90:16 127:11 **required** 12:20 48:11 52:22 **requirements** 20:10,23 30:18 **requires** 66:21 **reserve** 57:4 **resided** 121:25 **resides** 80:22 **residing** 73:19 **resolve** 22:20 57:3 112:7 135:5 **resolved** 3:7 8:11 113:1,3 **respect** 9:23 109:15 121:20 123:7 **respectfully** 108:15 126:2 **respond** 7:16 48:22 53:2 65:8 72:12 81:12 83:22 91:11 121:9 **response** 4:23 25:23 26:14 27:23 42:22,24 63:10,12 67:15 102:4 105:15 106:20,23 107:3,9 132:22 | **responses** 55:12 114:19 123:15 124:11 **responsibilities** 114:16 120:22 **responsibility** 7:23 114:11,22 114:23 115:8 115:17 122:6 123:5 **responsible** 6:12 **rest** 103:25 105:15 **restrictive** 42:14 **result** 52:18 56:22 68:20 71:2 76:10 85:1 86:11 93:17 **resulted** 84:2 **retain** 15:5 **retention** 9:11 11:12,14,24 12:1 13:9 14:14 15:11 **return** 38:12 70:8,11 71:9 71:19 72:4,8 77:4,7 79:22 80:3 81:16,22 82:11 83:17,18 87:8 88:9,11 100:14 |

**reveal** 108:5
**review** 5:19
  23:5 32:12
  41:8 43:3
  45:12 46:9
  48:11 49:7
  52:22 53:24
**reviewed** 22:6
  42:23 57:7
**reviewing**
  45:14 48:3,12
  52:8 102:20
**revise** 42:9
**revising** 53:15
**revisit** 126:1
**rhetorical**
  95:13
**right** 3:1 4:2
  6:24 8:13 16:2
  18:25 21:17
  23:22 32:3
  38:14 39:13
  43:16 54:7
  55:4 58:3 60:6
  61:23 65:7
  66:13,14 87:14
  88:18 92:5,24
  101:12,18,20
  102:17 105:10
  110:3 111:20
  112:2 119:19
**riverfront** 2:9
**road** 31:2
**robinson** 2:19

**role** 44:5,12,20
  115:10
**rolls** 99:15
**roof** 23:5
**root** 27:10
**roseland** 1:18
**row** 94:1
**ruled** 87:24
  105:9
**rules** 59:18
**ruling** 110:7,14
  110:18 112:10
  134:15
**run** 16:20
  25:23 32:20
  44:8 55:22,24
  55:25 56:3,18
  83:2,11 104:8
  104:18 107:7
  108:10,13
  109:2 116:22
  119:3
**running** 26:12
  34:21 44:1
  104:12 109:25
**runs** 74:24
**ruthanne** 1:14
  136:3,20

**s**

**s** 2:3
**safety** 66:22,25
  67:2
**sale** 62:6 82:6
**sales** 71:4,4
  72:1 77:11,14

77:18,19 78:16
84:6,7,21
99:16,17
**sandick** 2:5 7:1
8:24 9:4,16
12:23 13:20,22
14:1,5,21
15:13,16 18:6
20:9 21:8 26:7
28:20 29:18
30:2,5,9 32:5
33:4 35:3 37:4
37:13 38:21
39:3 40:7,16
42:19 43:5
44:17 46:4
47:1,14 49:24
51:24 52:11
53:19 54:19,24
55:4,9,13 56:6
56:20 58:2,25
63:3,14 68:11
72:11,14 74:17
74:22 75:5
76:5 78:3 79:8
80:7 82:3,23
84:20 85:3,7
85:18,23 86:1
86:7 87:10
88:20 90:4
91:7 92:6,11
92:20 93:8,12
94:2,17,20
95:1,4 96:4,24
97:5,13,16,21

103:23 110:5
110:10 135:2
**sandick's** 49:9
**sandler** 1:17
2:24
**sara** 2:7
**sat** 39:19
**savaria** 42:16
46:8 54:10
**save** 1:8
**saveon** 5:23
9:19,21,23
10:8,17 11:5
17:6 18:2,13
20:16,17,24
21:4 24:2,18
26:19,24 27:1
27:4,11,21
29:2 30:12,16
30:20 35:19
36:5,6 42:5
47:5 54:22
55:7,12,12
56:14 58:19
60:7 61:8 62:7
67:22 68:18,25
69:2 70:21
76:10 78:2,10
80:17 83:16
84:2,22 85:4,6
85:8,17 86:12
86:20,25 87:6
87:9,11,15,23
87:23 88:5,14
91:9 92:10,21

92:22 93:14,20
93:23 94:9
95:17,22 96:6
96:10,15,18,19
104:4,9 106:21
106:23 108:3,5
110:22 114:18
114:25 115:2
116:4,25
117:10 121:1
124:1 131:12
131:14,17
**saveon's** 94:8
107:22 113:14
115:10 118:11
118:17 120:14
127:9
**savings** 22:2
36:16,18
**saying** 9:5,6,12
24:6 25:17
32:2 33:7
37:14,15 43:24
46:1 52:1 56:9
58:6 60:14
64:8 68:3,6,6
82:8 84:3
87:15 88:4
103:10 107:12
110:25 111:16
**says** 5:13 67:3
67:22 76:9
78:1 89:10,13
93:24 116:7
127:16 129:21

130:4
**scenario** 84:15
**scg** 130:5
**scope** 18:17
22:20 29:8
36:15 72:6
101:18
**scott** 111:14
116:7 119:4,17
121:8,14
**scratch** 81:17
**screen** 50:8
**scripts** 80:24
81:1 90:22
**search** 4:23 6:7
6:9,13,17,18
12:4 16:11,13
16:20 22:4,8
22:11,18 25:13
25:17,18,19,22
26:1 32:22,24
33:17,19,22
34:1,21 37:2,7
38:13 40:2,4
40:13,14 41:4
41:13 42:15
43:23 44:1
45:25 46:2,23
46:25 47:11
49:11 53:1,12
53:16,25 54:3
54:15 55:22,25
56:17 57:10,16
58:4 61:24
78:25 82:17

85:9 86:4,7,16
91:19 101:18
103:2 104:2,8
105:2 106:12
106:13 107:6
107:16,18,21
108:11 109:22
109:25 110:5,9
111:5,8,10
114:5 116:22
128:9,23
129:11 131:10
132:6,9,12
134:23
**searches**
102:19 103:4
103:19 105:3
105:13
**second** 96:19
106:17 130:22
**secret** 79:10
**see** 3:11 5:19
15:15,20 21:5
28:3 30:19
35:15 46:9
56:25 57:1,17
63:1 68:7,8
75:19 87:11
98:15 116:2,25
119:4 120:2
131:5
**seeing** 52:23
**seeking** 91:8
120:10

**seemed** 12:12
**seeming** 126:15
**seems** 49:9
**seen** 17:17 19:3
47:14 49:1
57:18 68:16
82:10 85:18,23
86:1 100:11
106:8 122:25
**segment** 83:14
83:14
**selective** 42:7
**selendy** 2:15
**sell** 71:13
**selling** 82:14
**sells** 76:24 77:1
**send** 15:16 41:9
42:22
**sends** 119:2
**senior** 27:4
114:2,11
115:16 117:4,9
122:4
**sense** 44:13
74:23 84:16
102:23 103:2
105:7
**sensitive** 99:7
**sensitivity**
133:2
**sent** 42:20,20
102:8 130:24
**sentence** 38:11
**separate** 47:4
48:12 87:2

124:21
**separately**
46:17 48:3
99:2
**september**
107:25
**series** 67:23
**serve** 113:25
**served** 7:20,22
**serves** 29:10
60:24
**services** 36:5,6
60:23 118:11
118:18 120:14
**serving** 50:2
**set** 4:6 59:15,18
60:20 61:16
91:8 92:21,21
94:9 96:14
126:19 127:9
132:6 136:8
**sets** 17:10
60:19 61:16
69:25
**setting** 17:7
61:7
**seven** 112:25
**several** 3:4
42:23 104:16
**shake** 126:15
**shaking** 131:5
**shampoo** 77:18
**share** 94:5
**sheet** 23:3

**sheryn** 2:23
**shift** 73:7
**short** 4:5 5:8
10:3 12:16
105:12
**show** 21:2
30:17 31:7
43:13,14 59:17
61:6,15 63:14
69:23 84:13
85:1 87:3
91:25 94:21
95:15,16 99:14
111:24 120:19
**showing** 59:1,5
60:19 61:4,10
61:13 77:5
79:21 88:1,1
89:22 117:10
**shown** 120:11
124:14
**shows** 118:15
125:6
**side** 13:10
16:13 25:21
34:8,18 53:14
100:25 114:21
126:16 131:6
**sides** 132:2
**sidetracked** 7:4
**sign** 84:22
86:23 87:3
119:23 120:24
**signatory**
121:18

**signature**
121:14 136:20
**signed** 70:25
121:16 125:16
**significant**
48:17 112:12
**signing** 65:14
71:24 78:17
84:1,3,5 85:16
125:12,13
**sills** 2:8,12
**similar** 39:8
**similarly** 66:20
103:4
**simple** 73:19
**simply** 10:16
15:7 30:17
126:5
**single** 33:2
61:18 82:17
112:20 116:6
118:10,13
130:24
**sit** 39:20 41:3
52:13
**sits** 120:5
**sitting** 48:14
75:11
**six** 63:17
101:15 109:19
112:25 113:1
126:6 127:4,4
**slice** 131:25
**slightly** 40:24

**small** 120:10,10
133:5
**smoking** 116:5
**snow** 2:17
101:9,21 103:9
104:15 106:5
106:17 107:17
107:20 111:9
112:3 117:16
117:17 118:6
119:24 120:4
120:18 121:22
124:10 125:4
126:9,19
128:12,15,19
129:13,16
130:3,17,22
131:2 132:5,15
132:17 133:19
133:25 134:24
**somebody** 37:6
**somebody's**
60:15
**someone's**
73:20
**somewhat**
40:19
**sorry** 120:4
**sort** 13:2 15:3
43:24 61:3
65:25 66:3
76:20 95:8,13
134:3
**sorts** 23:9
80:25

[sought - suggest]

| | | | |
|---|---|---|---|
| **sought** 20:23 | **sporadic** 57:20 | **statements** | **subject** 7:8 |
| **sound** 12:8 | **spotlighted** | 123:13 | 12:18,25 21:9 |
| **south** 123:6 | 18:21 | **states** 1:1 112:8 | 21:22 22:8 |
| **sp** 1:8 62:7 | **squarely** 61:21 | **stating** 85:19 | 23:1 26:10 |
| 93:20,23 | **stage** 9:3 | **statute** 66:21 | 28:21 30:10 |
| **spaces** 112:21 | **stake** 87:7 | 67:1 69:3 | 33:24 39:4 |
| **speak** 15:3 | **stand** 77:16,25 | **stay** 89:25 | 43:8,10 53:10 |
| 43:20 70:10 | 78:6 93:5 | **steal** 72:18 | 59:7 63:5,9 |
| 100:24 102:3 | 95:19 96:20 | 84:16 | 68:12 72:8 |
| 106:5 117:12 | **standard** 5:16 | **stealing** 97:12 | 80:14 83:13 |
| **speaking** 28:23 | 23:7,10 36:8 | **steals** 78:3 83:3 | **subjects** 41:12 |
| **specific** 7:25 | 124:14 | **stelara** 6:13,14 | **submission** |
| 40:12 73:8 | **standpoint** | 24:19 25:11 | 12:24 16:12,15 |
| 75:8 87:25 | 102:24 | 42:2 43:9 | 100:16 |
| 104:8 105:7 | **stands** 26:16 | 53:15 55:3 | **submit** 15:14 |
| **specifically** 7:2 | **start** 9:13 | 56:7,12,22 | 19:25 100:23 |
| 8:9 24:17 42:3 | 31:18 49:9,15 | 57:11 68:8,20 | **submitted** |
| 45:11 46:15 | 49:23 86:5,18 | 86:24 104:21 | 21:10 100:12 |
| 49:12 53:14 | 87:6,14 97:24 | 121:2,24 | **subpoena** 47:4 |
| 56:13 69:21 | 113:19 121:12 | **stenographic** | **subpoenaed** |
| 71:9 75:8 | 126:11 127:17 | 1:12 136:6 | 51:7 |
| 102:18 108:1 | 128:6 129:17 | **steps** 27:6,23 | **subsequent** |
| 126:24 134:1 | **started** 8:22 | 28:9 | 122:24 |
| **specifics** | 10:1 26:19 | **stop** 61:25 | **subsidiary** |
| 102:18 105:13 | 27:22 56:13 | 74:16 | 74:24 |
| 108:2 | 101:13 103:13 | **story** 77:25 | **substantial** 3:8 |
| **specified** 103:6 | 106:16 | 80:18,22 81:3 | 13:1 59:20 |
| **spell** 97:7 | **starting** 24:16 | 81:5 | **substitute** 7:12 |
| **spend** 71:11 | 86:6 107:24 | **stranger** 45:8 | **success** 64:16 |
| 76:11 135:4 | **starts** 129:25 | **strategic** 130:6 | **succinctly** |
| **spending** 78:19 | **state** 1:16 | **strategy** 99:3 | 112:18 |
| **spent** 59:6,23 | 136:4 | **string** 19:5 | **suddenly** 109:4 |
| **split** 112:22 | **stated** 123:11 | **strongly** 76:17 | **sufficient** 87:9 |
| **spoke** 102:13 | **statement** | **stuff** 100:8 | **suggest** 92:9 |
| | 29:20 | | 133:11 |

**suggests** 72:22 118:14
**suit** 66:4
**summarize** 99:25
**summarized** 102:12
**summarizing** 100:16
**summary** 12:18 93:1
**summer** 63:10
**sun** 61:19
**supplemental** 100:15
**support** 5:17 10:4 26:22 29:24 59:6,19 74:10 75:10 94:22
**supports** 90:12 90:15 116:9
**suppose** 45:17
**supposed** 3:24
**sure** 7:18 9:16 13:13,25 17:23 29:18 33:22 35:25 36:11 39:5 46:4 57:24 58:11 69:3 72:13 74:17 75:6 113:20 122:9 124:2

**surprised** 58:7
**sworn** 136:7
**system** 10:1 15:1
**systems** 1:5

**t**

**t** 123:19 136:1 136:1
**t&c's** 6:8,13,15 6:22
**table** 4:6 126:16
**tables** 4:19
**tailor** 8:22
**tailored** 8:20 54:3 69:14
**take** 9:12 27:6 27:22 28:12 46:5 70:23 71:12 79:12 83:5,16 84:1 99:19 106:10 108:18 113:11 118:2,7 125:21 131:18 132:3 134:9
**taken** 1:14 4:12 10:21 53:23 94:4 95:22 99:23 131:15 136:12
**talk** 6:19 8:8 13:22 14:21 16:6 24:13 25:25 30:15

34:2 45:19 54:3 58:9 67:12 69:11 72:5 76:19 105:18,20 127:17 128:7 129:2
**talked** 3:19 62:1 76:13
**talking** 5:23 10:9 11:10 19:21 27:18,20 32:12 33:10,12 34:18 38:16 40:10 45:8 65:12,18,19 66:5,7,8,14 90:14 109:21 117:8 121:22 123:4,5
**talks** 35:5 85:3 85:5
**targeted** 93:23
**team** 120:5 133:6,6
**teams** 81:24,24
**tee** 15:12
**tell** 16:17 24:4 45:12 63:23 66:6 77:25 79:2 86:17 88:2 92:3
**telling** 12:7
**tells** 11:13

**term** 4:17 7:25 9:2 10:22 12:21 18:7,23 21:23 23:10 28:25 30:16 36:8 55:25 56:4,5,17 103:6 104:8,13 104:18,19 107:23 111:5
**terminated** 26:23
**terms** 3:12,18 3:22 4:23,24 5:12,15,16,24 5:25 6:9,18 7:21,24 9:22 10:21 16:8,11 16:13,22 17:3 17:9,10,12,15 18:8 19:5,9,19 20:2,3,21 21:6 21:6,22 22:4,8 22:11,18 23:4 23:4,7 25:13 25:17,18,19,22 26:1,11,15,25 27:9,24 29:21 32:20,22,24 33:17,19,22 34:1,17,21,21 34:25 35:16,19 36:9,22,23 37:2,7,25 38:10,13,17

| | | | |
|---|---|---|---|
| 39:10,13,16 | 135:3,6 | 28:9,16 30:25 | 119:21,24 |
| 40:2,4,13,14,19 | **theory** 79:16,18 | 31:4,18 34:1 | 120:9,18 |
| 40:24 41:4,13 | 93:9 96:7 | 37:14 40:13 | 123:23 125:11 |
| 42:2,6,10,15 | 97:17 116:9 | 41:12,20 42:13 | 126:2,12 127:6 |
| 43:9,13 44:1 | **thicket** 68:24 | 42:18 43:18,19 | 128:5 130:10 |
| 49:12 53:1,12 | **thing** 29:9 | 44:2 49:5,22 | 131:14 133:10 |
| 53:16,17,25 | 54:19 58:16 | 54:1 55:2,18 | 134:12 |
| 54:3,15,20,25 | 79:10,24 101:7 | 55:19,22 56:4 | **thinks** 34:8 |
| 55:22 57:10,16 | 105:21 | 56:19 57:14,15 | **third** 2:19 |
| 57:17,20 58:1 | **things** 3:14 7:6 | 58:16 59:23 | 46:21 47:4,9 |
| 58:5,5 59:18 | 9:4 10:25 17:7 | 60:7,9 61:20 | 49:2,11 51:5 |
| 61:24 62:8 | 17:22 18:16 | 62:13,23 63:1 | 51:15,18,22,24 |
| 67:17 71:4 | 21:8 22:1,22 | 63:23 64:3 | 52:3 53:7,9 |
| 74:6 77:14 | 23:22 25:15 | 67:4,9,11 | 54:14,25 55:8 |
| 78:3,25 79:19 | 26:8 27:17 | 69:15,21 70:11 | 66:2 110:18 |
| 82:13 83:7 | 28:5,15,21 | 72:1 75:8,23 | 116:5,10 |
| 101:18,21 | 29:7 32:10 | 76:18 77:12,21 | 132:19,20,21 |
| 104:2,21 105:2 | 34:16 35:12 | 78:5 80:21 | **thirds** 22:5 |
| 107:6,16,19,21 | 38:2 58:21 | 82:7,9 86:6,15 | **thought** 10:24 |
| 108:1,11,18 | 60:3 62:9 | 86:16,21 87:8 | 12:5 20:17 |
| 109:22 110:1,5 | 65:13,19 67:24 | 88:23 89:15,21 | 24:5 31:23 |
| 110:9,21 111:8 | 68:6 73:13 | 90:2,4,6 92:15 | 96:1 100:3 |
| 111:10 114:5 | 92:22 94:10 | 94:13,14 95:24 | 103:13 109:14 |
| 116:22 118:12 | 129:1 | 96:24 98:1 | 126:25 |
| 118:18 120:14 | **think** 4:7 5:22 | 99:10,13 100:2 | **thousands** 4:22 |
| 120:25 128:9 | 6:6,23 7:1,6,9 | 100:13,23 | 22:10 48:16 |
| 128:23 129:11 | 8:2,6,13 9:17 | 101:1,6,16,23 | **thread** 131:2 |
| 132:6,9,12 | 9:23 12:12 | 103:17 104:2 | **threat** 66:21,24 |
| 134:23 | 13:4,16 15:23 | 105:10 106:17 | **threaten** 60:4 |
| **test** 30:19,20 | 15:25 16:7,10 | 107:1,5 111:16 | 61:11 |
| **testimony** 77:5 | 17:2,13,15,19 | 112:8,11,17,19 | **threatens** 60:7 |
| **text** 112:20 | 18:4,23 19:1 | 113:2,4 115:12 | **three** 22:5 |
| **thank** 41:24 | 19:15 20:14 | 115:14 116:3 | 55:20 133:6 |
| 88:17 129:13 | 21:1,10,18,25 | 117:3,10 | **tied** 32:9 78:22 |
| 130:1 134:25 | 24:11 26:6,7 | 118:19,23 | |

| | | | |
|---|---|---|---|
| **ties** 88:3 | **told** 22:15,16 | **tremfya** 6:13 | **turn** 3:17 11:9 |
| **tim** 102:10,11 | 32:14,21,22,22 | 6:15 24:19 | 20:7 24:9 |
| **time** 4:19 5:18 | 63:11 102:5 | 25:11 42:2 | 58:15 113:11 |
| 5:20 8:19 10:7 | 117:11 | 43:9,13 53:16 | **turned** 107:10 |
| 10:9,12,22 | **tons** 98:3 | 55:3 56:8,12 | **turning** 66:16 |
| 11:5,21 14:22 | **took** 31:16 | 56:22 57:11 | 117:24 130:10 |
| 14:25 15:1,5 | 32:19 43:24 | 68:20 104:21 | 132:15 |
| 19:24 21:16 | 63:16 99:25 | 121:3,24 | **turns** 7:24 |
| 22:12 24:9 | 104:11 105:23 | **trial** 12:19 | **two** 4:5 6:11,18 |
| 25:9 27:25 | 106:19 | 21:13 22:3 | 17:17 21:8,25 |
| 30:22 31:15 | **tool** 50:9 64:20 | 32:10 46:20,24 | 22:5 24:19,22 |
| 33:9 34:14 | **tools** 36:8 | 47:1,3,5,6 49:3 | 24:25 27:17 |
| 35:5 36:19 | **top** 116:7 118:6 | 49:12 51:7 | 32:21 42:10 |
| 37:6 38:14 | **topic** 6:24 16:3 | 56:10 69:6 | 44:3,7 49:21 |
| 40:21 44:24,24 | 80:6 | 84:12 92:25 | 54:9 55:18 |
| 52:2 55:19,23 | **tortious** 36:3 | 96:20 116:1 | 60:9 62:3,6 |
| 55:24 56:1 | **tortiously** | 118:21,23,25 | 65:25 77:3 |
| 57:18 58:2,20 | 18:18 | 119:6 125:19 | 98:13 101:21 |
| 79:14 90:19 | **totally** 12:13 | **tried** 7:11 10:3 | 103:18 106:5 |
| 92:13 103:16 | 58:7 73:13 | 32:18 | 107:21 127:18 |
| 105:2 108:11 | 74:1 80:13 | **true** 26:9 78:5 | 131:12 |
| 110:18 113:7 | **touch** 28:24,25 | 82:9 85:19 | **tyler** 2:4 |
| 128:19,20 | **towards** 17:8 | 94:13 117:1 | **type** 72:6,7 |
| 132:3,7,8 | **tracks** 7:2 | 128:4 132:25 | **types** 79:1 |
| 135:4 | **transcript** 1:6 | 136:5 | 113:21 |
| **times** 53:20 | 1:12 33:3 | **try** 3:15 26:20 | |
| 88:1 118:24 | 126:10,17,21 | 27:10 37:3 | **u** |
| **today** 3:2 8:8 | 126:23 127:13 | 81:18 90:18 | **ultimately** |
| 13:23 14:3 | 127:15 136:6 | 104:10 | 102:15 104:6 |
| 16:18 55:16 | **transparency** | **trying** 9:21 | 104:10,15 |
| 64:23 92:24 | 89:8 90:8 | 35:21 76:2 | 106:19 107:9 |
| 97:4 100:20 | 91:14,21 93:24 | 77:16 90:9 | 112:22 127:4 |
| 115:24 118:24 | **tremendous** | 96:17 110:24 | 127:23 133:9 |
| 126:12 | 80:25 | 121:18 127:19 | **uncontrovers...** |
| | | 133:21 | 5:16 |

| | | **v** | **w** |
|---|---|---|---|
| **undecided** 112:5 | **understands** 5:15 102:13 | **values** 90:12 | **w** 123:19 132:21 |
| **under** 3:25 19:6 60:16 61:13,19 77:15 87:21 | **understood** 33:20 57:22 134:5 | **various** 23:21 27:19 38:18 39:10 63:19 81:18 | **wait** 56:25 84:3 127:13 |
| **underlying** 39:12 65:20 | **undertake** 48:3 | **vasquez's** 18:19 | **waldor** 3:5 13:10 22:15 31:1 32:21 |
| **underscore** 78:24 | **undertaken** 45:11 | **vast** 80:12 | 37:8 40:17 41:2 43:16,23 |
| **underscores** 100:14 | **ungerleider** 1:14 136:3,20 | **vazquez** 62:1 65:18 | 63:11 81:10 87:24 101:14 |
| **understand** 18:1 19:8,10 19:11,14,25 23:12 28:16,17 33:7 35:21 36:17,21,22 38:6 41:22 43:25 56:24 58:17 67:19 69:24 75:17 87:6 105:21 109:10 128:24 129:9 | **unique** 114:24 | **vazquez's** 12:15 | 101:24 102:1 102:13,21 103:6 104:11 104:17 108:17 109:9 110:15 110:16 111:17 111:24 112:7 112:18,22,22 113:24 114:9 124:23 125:24 126:25 127:5 |
| | **unit** 52:17 | **vendor** 21:12 | |
| | **united** 1:1 | **verbatim** 81:8 | |
| | **universe** 132:11 | **versus** 15:25 | |
| | **unusual** 48:4 | **viability** 60:4,8 61:11 62:18,18 64:5,11 67:24 68:4,15 69:2 69:10,13,23 119:11 | |
| | **update** 5:3 59:4 | | |
| | **updated** 43:15 | | |
| | **updates** 130:8 | | |
| | **updating** 5:4,5 | | |
| | **use** 7:11 35:16 36:9 46:19 50:14 128:11 133:22 | **view** 26:24 41:1 | |
| | | **vigilant** 39:9 | **waldor's** 26:14 27:14 56:2,23 |
| **understanding** 3:21 5:11 6:10 8:18,22 16:21 19:23 28:10 34:15,23,24 35:14,23 38:17 38:20 40:10 56:2 98:20 104:21 132:24 133:15 | **used** 4:23 5:16 6:9 9:2 10:23 23:3,8,8 36:20 42:15 76:21 78:4 110:6 128:20 | **violate** 27:24 118:12,18 120:14 | **want** 3:15 7:5 8:20 9:12 13:17,17 14:3 14:9,17 16:18 17:23 18:1 19:14 20:7 21:21 23:12,15 23:19 24:1,3 28:8,14 33:8 35:9,11,15 |
| | | **virtually** 73:21 | |
| | | **virtue** 21:19 | |
| | **uses** 22:12 | **voluntarily** 26:13 | |
| | **using** 40:14 53:1 96:10 | **vs** 1:7 | |
| | **usually** 122:12 | | |

36:19,21 39:9
41:15 49:16
51:3,14 55:8
55:16 56:15
57:24 62:11
64:2 65:16
67:9,12,14
68:9 69:8
70:17 74:14
75:1,19 77:25
78:6 80:6
81:21 82:18
86:5 87:6,7,15
91:22 93:7
94:15 96:15
97:18,23 98:15
98:19 99:19
100:7,23
103:24 105:20
108:9 111:4
112:2 117:12
117:18 118:8
124:24,25
125:20,24
127:24 128:6
128:10 129:2
131:12
**wanted** 3:4
34:11 38:3
63:11 104:1
105:14
**wants** 50:15
84:12 85:12
100:10 131:25

**way** 8:9 17:5
18:10 22:7,11
28:13 29:12
33:23 35:10
38:15 61:4,10
62:2 66:25
74:13 75:23
79:9 80:15
85:9 90:9 92:7
93:2 94:2
118:1 128:5
**wayne** 2:24
102:3,5 130:1
**ways** 122:10
133:21
**we've** 9:7 22:23
38:21,24 42:23
58:25 59:5,19
92:18,19
104:16 109:25
110:6,13
112:14 113:5
115:22 116:12
120:18 122:25
129:6,14
134:21
**webb** 2:4
**website** 89:10
91:15
**wednesday**
1:18 13:24
**week** 13:24
14:3,4 41:16
42:21 83:3
84:17 101:8

103:12
**weeks** 3:4
68:20,24
**weighing** 15:24
105:15
**welcomed**
124:2
**went** 16:12
40:22 48:25
104:11 105:10
112:21
**white** 111:14
112:13 113:19
113:24 114:13
114:13,17,21
115:8,12,17
117:4 118:16
119:4,17
120:17 121:8
121:14,17
124:19 125:15
128:10 134:15
134:22
**white's** 125:14
**wide** 80:8,25
91:19
**willing** 25:22
**wind** 45:15
**window** 104:24
**winds** 78:11
**withheld** 45:2
46:12 124:6
**witness** 136:7
**wohlforth** 2:20

**wolfson** 2:2 3:1
4:7,13 7:18 8:7
8:15,23 9:10
10:14 13:6,21
13:25 14:2,8
14:11,15,20
15:6,15,18
16:16,24 17:19
18:4,22 19:17
23:11,24 27:15
29:16,23 30:3
30:7,25 33:2,6
34:5,10 35:9
36:13 37:11,19
37:22 39:1,6
40:8 41:3,25
43:1 44:9
45:25 46:18
47:7 48:24
49:19 51:3
52:10,25 53:4
53:9 54:7,12
54:18,23 55:2
55:15 57:1
58:9,14 59:25
61:25 63:13,23
65:10 66:12
68:2 69:8 70:4
72:13 74:14,18
75:12 76:14
77:20 79:2,19
80:1 81:14
82:1 83:23
84:19 85:13,22
85:25 86:3,9

[wolfson - zoom]                                                          Page 42

| | | |
|---|---|---|
| 86:14,18 88:13 | 134:5,20 135:1 | **written** 32:23 |
| 88:18,21,25 | 135:7 | **wrong** 44:19 |
| 89:4 91:4,12 | **wondering** | 83:5,6 |
| 91:22 92:4,17 | 74:19 | **wrote** 129:21 |
| 92:23 93:6,10 | **word** 22:12,13 | **x** |
| 94:15,19,24 | 23:3 35:6 | **x** 80:8 |
| 95:2,24 96:23 | 36:20 132:20 | **xio0115** 136:21 |
| 97:2,9,14 | **words** 37:5 | **xio1634** 136:21 |
| 98:17 99:19,22 | 45:11 | **y** |
| 99:24 100:19 | **work** 35:13 | **yeah** 14:20 |
| 101:4,6,11,23 | 39:25 40:3 | 55:15 62:20 |
| 102:10 103:20 | 44:22 47:16,18 | 65:10 66:12 |
| 105:5,25 | 48:8,20,20 | 76:14 85:7 |
| 106:10,13 | 50:4 51:2,2 | 87:10 91:12 |
| 107:11,18 | 52:7 61:23 | 94:19 112:16 |
| 108:7,13,21 | 81:23 102:20 | 113:18 119:16 |
| 109:17,24 | 105:14 116:1 | 127:22 129:11 |
| 110:3,8,20 | 118:21 125:10 | **year** 24:22 |
| 111:7,11 | 132:12 | 27:13 57:8 |
| 112:15 113:4 | **worked** 44:5 | 63:17 94:1 |
| 113:18 115:5 | 133:4 | 95:12 |
| 117:16 118:5 | **working** 8:5 | **years** 10:5,12 |
| 119:16 120:3 | 43:6 45:14 | 13:3 39:22 |
| 120:16 121:10 | 50:1 107:3 | 92:2 109:20 |
| 122:7,18 | 129:22 130:5 | **york** 2:5,5,13 |
| 123:16,20 | 132:19,21 | 2:13,16,16,20 |
| 124:22 125:20 | **works** 17:5 | 2:20 |
| 126:13,20 | **world** 33:17 | **z** |
| 127:12 128:2 | 54:22 64:15 | **z** 123:19 |
| 128:14,17,22 | 110:23 111:5 | **zoom** 2:10 3:3 |
| 129:14,24 | **worried** 109:18 | 41:18 |
| 130:14,20 | **worse** 68:18 | |
| 131:1,4,18 | **write** 129:1 | |
| 132:8,16 | **writing** 129:7 | |
| 133:18,23 | | |

Veritext Legal Solutions

800-227-8440                                                         973-410-4040

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2) Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.



DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

# EXHIBIT 41
# CONFIDENTIAL – FILED UNDER SEAL

# Exhibit 42



www.pbwt.com

May 31, 2024

Julia Long
(212) 336-2878

**VIA EMAIL**

Elizabeth H. Snow, Esq.
Selendy Gay, PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:   **Meeting Recordings and Presentations**
      *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*,
      **2:23-cv-02632 (JKS) (CLW)**

Dear Elizabeth:

        We write in response to SaveOnSP's April 26, 2024 letter, in which you identify 454 meeting invitations that JJHCS has produced to date, and demand that JJHCS produce any meeting recordings associated with those meetings.

        First, there is no indication that the overwhelming majority of invitations cited by SaveOnSP were recorded. ███████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████████████████████████ ███████████████████████████████
███████████████████████████████████████

        Second, as to the meetings that did take place, as to most of them, there is still no reason to believe that they were recorded. ████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████████████████ ████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████

        Finally, ██████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████ █████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

Elizabeth H. Snow, Esq.
May 31, 2024
Page 2

███████████   In the course of our investigation, we determined that Zoom recordings are stored on Zoom servers, rather than on servers maintained by JJHCS or any other J&J entity.  Historically, recordings of meetings held on Zoom and Microsoft Teams were not stored on cloud networks for more than 120 days.  Since receiving your letter, JJHCS has taken additional steps to retain indefinitely recordings of meetings hosted by designated JJHCS custodians on these platforms. As to WebEx-based meetings, JJHCS stopped using that platform in early 2019, and the cloud storing those recordings was decommissioned in or around April 2019, more than three years prior to the commencement of this litigation.

We remain available to meet and confer.

Very truly yours,

*/s/ Julia Long*
Julia Long

15115202

## Appendix A

| | | | | |
|---|---|---|---|---|
| JJHCS_00224570 | JJHCS_00212044 | JJHCS_00035048 | JJHCS_00197560 | JJHCS_00162470 |
| JJHCS_00129893 | JJHCS_00146421 | JJHCS_00035063 | JJHCS_00218530 | JJHCS_00173128 |
| JJHCS_00210246 | JJHCS_00132701 | JJHCS_00035066 | JJHCS_00145727 | JJHCS_00217763 |
| JJHCS_00072600 | JJHCS_00010072 | JJHCS_00035035 | JJHCS_00008107 | JJHCS_00001244 |
| JJHCS_00072919 | JJHCS_00038608 | JJHCS_00043255 | JJHCS_00156575 | JJHCS_00011154 |
| JJHCS_00040329 | JJHCS_00104243 | JJHCS_00183953 | JJHCS_00003126 | JJHCS_00001704 |
| JJHCS_00084078 | JJHCS_00212214 | JJHCS_00140621 | JJHCS_00003136 | JJHCS_00183187 |
| JJHCS_00083321 | JJHCS_00212458 | JJHCS_00214211 | JJHCS_00007876 | JJHCS_00186391 |
| JJHCS_00061290 | JJHCS_00113376 | JJHCS_00139378 | JJHCS_00151894 | JJHCS_00182212 |
| JJHCS_00065334 | JJHCS_00132606 | JJHCS_00184713 | JJHCS_00196214 | JJHCS_00219230 |
| JJHCS_00037344 | JJHCS_00212528 | JJHCS_00217203 | JJHCS_00218466 | JJHCS_00160905 |
| JJHCS_00065349 | JJHCS_00120191 | JJHCS_00027853 | JJHCS_00130684 | JJHCS_00185944 |
| JJHCS_00000560 | JJHCS_00212013 | JJHCS_00218667 | JJHCS_00117378 | JJHCS_00190442 |
| JJHCS_00207947 | JJHCS_00141281 | JJHCS_00217160 | JJHCS_00082514 | JJHCS_00171134 |
| JJHCS_00220716 | JJHCS_00034992 | JJHCS_00143702 | JJHCS_00140480 | JJHCS_00168856 |
| JJHCS_00220725 | JJHCS_00034977 | JJHCS_00146447 | JJHCS_00203973 | JJHCS_00183449 |
| JJHCS_00112110 | JJHCS_00034980 | JJHCS_00133499 | JJHCS_00218426 | JJHCS_00191658 |
| JJHCS_00141034 | JJHCS_00034982 | JJHCS_00133495 | JJHCS_00008416 | JJHCS_00158518 |
| JJHCS_00209791 | JJHCS_00101284 | JJHCS_00187058 | JJHCS_00157205 | JJHCS_00187018 |
| JJHCS_00112120 | JJHCS_00034994 | JJHCS_00197565 | JJHCS_00070997 | JJHCS_00158514 |
| JJHCS_00111869 | JJHCS_00034984 | JJHCS_00200616 | JJHCS_00144198 | JJHCS_00172626 |
| JJHCS_00111928 | JJHCS_00034987 | JJHCS_00146183 | JJHCS_00146402 | JJHCS_00158432 |
| JJHCS_00064572 | JJHCS_00211947 | JJHCS_00150651 | JJHCS_00197569 | JJHCS_00182483 |
| JJHCS_00114312 | JJHCS_00143599 | JJHCS_00200597 | JJHCS_00151335 | JJHCS_00181951 |
| JJHCS_00060078 | JJHCS_00034989 | JJHCS_00198011 | JJHCS_00198064 | JJHCS_00161266 |
| JJHCS_00065715 | JJHCS_00121576 | JJHCS_00150698 | JJHCS_00035919 | JJHCS_00186205 |
| JJHCS_00111006 | JJHCS_00034999 | JJHCS_00008874 | JJHCS_00198261 | JJHCS_00185340 |
| JJHCS_00142069 | JJHCS_00146367 | JJHCS_00150729 | JJHCS_00182186 | JJHCS_00183033 |
| JJHCS_00111220 | JJHCS_00211917 | JJHCS_00118928 | JJHCS_00011191 | JJHCS_00182302 |
| JJHCS_00082355 | JJHCS_00034996 | JJHCS_00077791 | JJHCS_00071669 | JJHCS_00181700 |
| JJHCS_00059381 | JJHCS_00152459 | JJHCS_00143697 | JJHCS_00171108 | JJHCS_00158791 |
| JJHCS_00142311 | JJHCS_00132484 | JJHCS_00119044 | JJHCS_00198258 | JJHCS_00172254 |

| JJHCS_00061949 | JJHCS_00152331 | JJHCS_00210654 | JJHCS_00170649 | JJHCS_00187039 |
|---|---|---|---|---|
| JJHCS_00065199 | JJHCS_00035001 | JJHCS_00139343 | JJHCS_00107700 | JJHCS_00172080 |
| JJHCS_00026529 | JJHCS_00152320 | JJHCS_00139396 | JJHCS_00129750 | JJHCS_00192721 |
| JJHCS_00035161 | JJHCS_00195885 | JJHCS_00139499 | JJHCS_00198018 | JJHCS_00160834 |
| JJHCS_00008253 | JJHCS_00006901 | JJHCS_00119174 | JJHCS_00219032 | JJHCS_00187012 |
| JJHCS_00117786 | JJHCS_00044594 | JJHCS_00008818 | JJHCS_00198047 | JJHCS_00187039 |
| JJHCS_00008262 | JJHCS_00044655 | JJHCS_00008733 | JJHCS_00198068 | JJHCS_00158810 |
| JJHCS_00213723 | JJHCS_00151263 | JJHCS_00150449 | JJHCS_00083793 | JJHCS_00165785 |
| JJHCS_00132917 | JJHCS_00035007 | JJHCS_00156868 | JJHCS_00182168 | JJHCS_00158920 |
| JJHCS_00208396 | JJHCS_00007131 | JJHCS_00145826 | JJHCS_00184650 | JJHCS_00192453 |
| JJHCS_00083211 | JJHCS_00035004 | JJHCS_00146452 | JJHCS_00185833 | JJHCS_00182510 |
| JJHCS_00080299 | JJHCS_00076057 | JJHCS_00141096 | JJHCS_00170120 | JJHCS_00167607 |
| JJHCS_00109712 | JJHCS_00035010 | JJHCS_00002474 | JJHCS_00169943 | JJHCS_00185806 |
| JJHCS_00008233 | JJHCS_00139245 | JJHCS_00150486 | JJHCS_00188806 | JJHCS_00178263 |
| JJHCS_0003506[1] | JJHCS_00035032 | JJHCS_00082952 | JJHCS_00161787 | JJHCS_00158785 |
| JJHCS_00102943 | JJHCS_00007201 | JJHCS_00033655 | JJHCS_00160327 | JJHCS_00165790 |
| JJHCS_00026514 | JJHCS_00211895 | JJHCS_00157602 | JJHCS_00173165 | JJHCS_00158357 |
| JJHCS_00156412 | JJHCS_00118668 | JJHCS_00150288 | JJHCS_00190079 | JJHCS_00161640 |
| JJHCS_00042623 | JJHCS_00152112 | JJHCS_00083748 | JJHCS_00190094 | JJHCS_00168472 |
| JJHCS_00126147 | JJHCS_00000545 | JJHCS_00157362 | JJHCS_00186618 | JJHCS_00161642 |
| JJHCS_00126196 | JJHCS_00197563 | JJHCS_00141195 | JJHCS_00163902 | JJHCS_00185823 |
| JJHCS_00026511 | JJHCS_00001391 | JJHCS_00008591 | JJHCS_00223778 | JJHCS_00192411 |
| JJHCS_00038618 | JJHCS_00121696 | JJHCS_00083751 | JJHCS_00189846 | JJHCS_00191219 |
| JJHCS_00104319 | JJHCS_00156381 | JJHCS_00218676 | JJHCS_00188812 | JJHCS_00160768 |
| JJHCS_00078220 | JJHCS_00152144 | JJHCS_00008639 | JJHCS_00163906 | JJHCS_00197716 |
| JJHCS_00081977 | JJHCS_00035019 | JJHCS_00002701 | JJHCS_00173284 | JJHCS_00161140 |
| JJHCS_00224069 | JJHCS_00000543 | JJHCS_00154319 | JJHCS_00189580 | JJHCS_00192331 |
| JJHCS_00038621 | JJHCS_00035016 | JJHCS_00083283 | JJHCS_00170668 | JJHCS_00168387 |
| JJHCS_00042017 | JJHCS_00006419 | JJHCS_00156376 | JJHCS_00182536 | JJHCS_00194265 |
| JJHCS_00065158 | JJHCS_00121511 | JJHCS_00150848 | JJHCS_00167018 | JJHCS_00161127 |
| JJHCS_00215320 | JJHCS_00079653 | JJHCS_00083798 | JJHCS_00189532 | JJHCS_00185062 |

---

[1] SaveOnSP referred to "JJHCS_0003506" in its April 26, 2024 letter.  It appears SaveOnSP meant to reference JJHCS_00035069.

| | | | | |
|---|---|---|---|---|
| JJHCS_00008285 | JJHCS_00129745 | JJHCS_00142700 | JJHCS_00189630 | JJHCS_00192372 |
| JJHCS_00079615 | JJHCS_00208427 | JJHCS_00084400 | JJHCS_00169539 | JJHCS_00185384 |
| JJHCS_00126113 | JJHCS_00035042 | JJHCS_00117421 | JJHCS_00172620 | JJHCS_00172237 |
| JJHCS_00200605 | JJHCS_00152077 | JJHCS_00117387 | JJHCS_00172530 | JJHCS_00182245 |
| JJHCS_00065174 | JJHCS_00035039 | JJHCS_00122611 | JJHCS_00189536 | JJHCS_00185089 |
| JJHCS_00121937 | JJHCS_00132445 | JJHCS_00184677 | JJHCS_00182856 | TJP0000157 |
| JJHCS_00008273 | JJHCS_00074255 | JJHCS_00002627 | JJHCS_00186521 | JJHCS_00182310 |
| JJHCS_00008281 | JJHCS_00210418 | JJHCS_00075169 | JJHCS_00172217 | JJHCS_00169268 |
| JJHCS_00062924 | JJHCS_00035045 | JJHCS_00198058 | JJHCS_00189184 | JJHCS_00161056 |
| JJHCS_00121906 | JJHCS_00006704 | JJHCS_00034691 | JJHCS_00170301 | JJHCS_00185117 |
| JJHCS_00078194 | JJHCS_00196880 | JJHCS_00197031 | JJHCS_00169527 | JJHCS_00172268 |
| JJHCS_00121873 | JJHCS_00152296 | JJHCS_00083830 | JJHCS_00159021 | JJHCS_00161050 |
| JJHCS_00145630 | JJHCS_00035023 | JJHCS_00084193 | JJHCS_00160233 | JJHCS_00191968 |
| JJHCS_00132744 | JJHCS_00146314 | JJHCS_00210956 | JJHCS_00165391 | JJHCS_00193779 |
| JJHCS_00157053 | JJHCS_00035026 | JJHCS_00084222 | JJHCS_00159036 | JJHCS_00185411 |
| JJHCS_00026365 | JJHCS_00035029 | JJHCS_00084343 | JJHCS_00190562 | JJHCS_00194222 |
| JJHCS_00117129 | JJHCS_00035051 | JJHCS_00140608 | JJHCS_00190567 | JJHCS_00193711 |
| JJHCS_00212953 | JJHCS_00152049 | JJHCS_00001460 | JJHCS_00175320 | JJHCS_00193713 |
| JJHCS_00145653 | JJHCS_00035054 | JJHCS_00044277 | JJHCS_00170319 | JJHCS_00168147 |
| JJHCS_00212608 | JJHCS_00152084 | JJHCS_00118738 | JJHCS_00169115 | JJHCS_00160964 |
| JJHCS_00212858 | JJHCS_00151231 | JJHCS_00122792 | JJHCS_00169123 | JJHCS_00161650 |
| JJHCS_00101641 | JJHCS_00035057 | JJHCS_00200612 | JJHCS_00183846 | JJHCS_00197576 |
| JJHCS_00122740 | JJHCS_00217095 | JJHCS_00001239 | JJHCS_00174248 | JJHCS_00146146 |
| JJHCS_00212894 | JJHCS_00035060 | JJHCS_00037103 | JJHCS_00224351 | JJHCS_00182529 |
| JJHCS_00118671 | JJHCS_00122834 | JJHCS_00122559 | JJHCS_00183108 | JJHCS_00200592 |
| JJHCS_00174318 | | | | |

iii

# Exhibit 43

# Sills Cummis & Gross
### A Professional Corporation

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102-5400**
**Tel: 973-643-7000**
**Fax: 973-643-6500**

Jeffrey J. Greenbaum
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

September 9, 2024

**By Email**

Hon. Freda L. Wolfson
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL**
**UNDER THE DISCOVERY CONFIDENTIALITY ORDER**

Re:    **Opposition to SaveOnSP's August 30, 2024 Motion to Compel**
       ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC***,
       **Civil Action No. 22-2632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of JJHCS, we write to oppose SaveOnSP's August 30, 2024 letter motion to compel JJHCS to produce documents elicited by three search terms related to JJHCS's vendors TrialCard and RISRx. As explained herein, JJHCS has agreed to an enormous number of SaveOnSP's search term demands, or has accepted them with only limited modifications. And JJHCS has repeatedly offered compromises involving reasonable search terms that satisfy SaveOnSP's legitimate discovery needs. But the three terms SaveOnSP demands in this motion are hugely overbroad and unduly burdensome, violate the Court's previous guidance, and contradict SaveOnSP's positions as to what search terms it will run on its own documents. Discovery is not a one-way street, nor is it a mechanism to penalize a plaintiff for having brought

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 2

a lawsuit.  SaveOnSP cannot shun reasonable compromises by JJHCS and insist on search terms of the kind that SaveOnSP has itself repeatedly refused to run.  The Court should stand by its previous search term guidance and deny SaveOnSP's motion to compel the use of these flawed terms.

## DISCUSSION

SaveOnSP's opening brief makes numerous extraneous claims about JJHCS's mitigation efforts.  Most are false.[1]  But the truth is fast coming into focus through newly produced documents from SaveOnSP's and ESI's files:  manufacturers could ***never*** effectively mitigate damages because SaveOnSP and ESI had a sophisticated and highly resourced operation dedicated to evading any manufacturer attempts to detect or thwart their scheme.[2]  The instant motion, however, does not require the Court to address the propriety of mitigation-related discovery writ large.  Accordingly, JJHCS does not endeavor here to correct every factual misstatement in SaveOnSP's

---

[1] For example, SaveOnSP misleadingly claims that the "only purported mitigation action that J&J has asserted that it took was attempts to identify patients on SaveOn-advised plans," but it cites a transcript colloquy describing the pled allegations about JJHCS's special damages, not mitigation efforts in general.  Mot. at 2.

[2] *See, e.g.,* 

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 3

brief—that record will be presented at trial. On this motion, the Court need only address whether
the additional, specific search terms at issue are proportionate and reasonably tailored. They are
not.

According to SaveOnSP, the disputed search terms ostensibly relate to requests for
production that SaveOnSP served almost a year ago, in October 2023. *See* Ex. 6 (Apr. 4, 2024
Ltr. from E. Snow to J. Long) at 5; Ex. 7 (SaveOnSP's Fourth Set of Requests for Production) at
10-11. The disputed search terms go far beyond the requests for production that allegedly support
them. Nevertheless, over the past many months—going back to February—JJHCS agreed to
search for even documents of marginal relevance to try and avoid burdening the Court with further
discovery disputes.[3] And JJHCS has repeatedly offered to work with SaveOnSP to resolve
remaining disputes by crafting search terms that meet SaveOnSP's legitimate discovery needs
without unduly burdening JJHCS.

But despite JJHCS's productions and efforts at compromise, SaveOnSP now demands
three more terms that are unduly burdensome and inconsistent with the Court's guidance on search
term construction. Two of the three relate to TrialCard, and the third relates to RISRx (a vendor

---

[3] For instance, when SaveOnSP demanded that JJHCS run several search terms related to JJHCS
vendors Archbow and Avalere, *see* Ex. 6 (Apr. 4, 2024 Ltr. from E. Snow to J. Long) at 3, JJHCS
assented to SaveOnSP's demand, *see* Ex. 8 (Apr. 26, 2024 Ltr. from I. Eppler to E. Snow) at 2.
The parties also reached agreement on a search term intended to satisfy SaveOnSP's demand for
documents related to JJHCS's work with the vendor IQVIA. *See* SaveOnSP Ex. 21 (Aug. 1, 2024
Ltr. from I. Eppler to H. Miles) at 3. JJHCS reviewed 10,307 documents (inclusive of families)
captured by that term. JJHCS also negotiated in good faith with SaveOnSP to establish workable
RISRx search terms, repeatedly offering to run variations of search terms containing the phrase
"RISRx or RIS." Ex. 8 (Apr. 26, 2024 Ltr. from I. Eppler to E. Snow) at 4; Ex. 9 (Jul. 3, 2024 Ltr.
from J. Long to E. Snow) at 2; SaveOnSP Ex. 21 (Aug. 1, 2024 Ltr. from I. Eppler to E. Snow).
The parties reached agreement on one term containing the phrase "RISRx OR RIS," as described
further below.

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 4

that offers an algorithm that can be used to identify accumulator and maximizer patients based on

claims data).  As explained below, JJHCS should not be compelled to run any of the disputed

searches.

**I.    TrialCard Terms**

SaveOnSP seeks to impose the following TrialCard-related search terms:

- (TrialCard w/25 identif*) AND (accumulat* OR maximiz* OR CAPa OR CAPm OR "adjustment program" OR EHB OR NEHB)

- TrialCard w/40 (accumulator* OR maximizer* OR CAPm OR CAPa OR "adjustment program")

The former elicits 3,586 documents, and the latter elicits 11,304 documents (both inclusive of

families).  *See* SaveOnSP Ex. 21 (Aug. 1, 2024 Ltr. from I. Eppler to H. Miles) at 2.

The first problem with SaveOnSP's TrialCard search terms is that they are inconsistent

with the requests that allegedly support them.  SaveOnSP has claimed that these search terms are

necessary to fulfill Request Nos. 58 and 59.  *See* Ex. 6 (Apr. 4, 2024 Ltr. from E. Snow to J. Long)

at 5.  Those requests seek documents related to Benefits Investigations:

58.    All documents or communications related to Benefits Investigations undertaken by JJHCS or any JJHCS Hub Entity that identified or attempted to identify whether a Person enrolled in CarePath was or could be a member of a health plan advised by SaveOnSP.

59.    To the extent not covered by the previous Request, all documents or communications related to Benefits Investigations undertaken by JJHCS or any JJHCS Hub Entity that identified or attempted to identify whether a Person enrolled in CarePath was or could be a member of a Maximizer or Accumulator health plan.

Ex. 7 (SaveOnSP's Fourth Set of Requests for Production) at 10-11

Although these requests cover only the discrete issue of Benefits Investigations, SaveOnSP

has demanded search terms that will capture a wide range of documents completely unrelated to

Benefits Investigations.   Indeed, the search strings do not even include terms like "Benefits

4

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 5

Investigation" or "BI." The Court should reject SaveOnSP's attempt to shoehorn these overly

broad search terms into far narrower requests for production.

These search terms are also an attempted end-run around this Court's previous ruling on

CAP search terms. The Court rejected SaveOnSP's efforts to compel JJHCS to run an exceedingly

broad search term—"CAPa OR CAPm OR 'adjustment program'"—and ruled that the CAP search

string must include both one of those terms **and** a reference to accumulators and maximizers. Apr.

10, 2024 Order ¶ 2. The Court's Order was itself an expansion of permissible discovery—Judge

Waldor had previously ruled that searches involving the CAP search string must include both one

of those terms **and** a reference to SaveOnSP specifically (not just accumulators or maximizers

generally). Dkt. No. 173 at 2-3. But SaveOnSP now seeks to ignore even the Court's prior order.

Both searches in SaveOnSP's latest motion demands violate the Court's ruling—they would pick

up documents hitting on CAPm **or** CAPa **or** "adjustment program" **or** accumulator **or** maximizer.

And they are not saved by the insertion of the word "TrialCard." Due to its role, "TrialCard" likely

appears in many documents containing those words or phrases "CAPm," "CAPa," or "adjustment

program," and so practically speaking it is no meaningful limitation at all. For there to be any

progress in discovery, it is essential that SaveOnSP not be rewarded for simply ignoring Court-

ordered limitations on discovery or gain ground every time it insists on revising prior rulings.

Aside from being inconsistent with the Requests for Production that ostensibly support

them and the Court's prior ruling, SaveOnSP's proposed searches are unnecessary and unduly

burdensome. First, as the Court knows, documents from TrialCard are already being produced

pursuant to subpoenas to TrialCard as well as document requests to JJHCS. TrialCard has

produced nearly 10,000 pages in response to these requests, many of which focus on the same

5

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 6

mitigation issues in focus here, and SaveOnSP continues to pursue additional documents in the

custody of TrialCard.   Second, SaveOnSP has demanded that JJHCS run several search terms

designed to capture documents related to the CAP program and JJHCS has done so, reviewing

over 54,000 documents (inclusive of families) hitting on terms including the words and phrases

"CAPm," "CAPa," or "adjustment program."  SaveOnSP Ex. 21 (Aug. 1, 2024 Ltr. from I. Eppler

to H. Miles) at 2.   Third, JJHCS has also agreed to several search terms related to other vendors

that SaveOnSP claims are involved in JJHCS's mitigation efforts, and has reviewed thousands of

documents responsive to those terms.  *See supra* n.3.  Finally, SaveOnSP's proposed TrialCard

searches cover an overly broad time period—going back to 2016 instead of late 2021, ███████

███████████████████████████████████████████████.  *See* SaveOnSP Ex. 4

(TrialCard_00005044).  Simply put, SaveOnSP has already taken endless discovery about CAPm,

CAPa, TrialCard, and every other mitigation-related topic, and these overbroad and unduly

burdensome search terms are superfluous.

In these circumstances, the review of over 13,000 additional TrialCard-related documents

would pose an undue burden on JJHCS.   SaveOnSP claims that this volume is "hardly

burdensome," but when the shoe is on the other foot, SaveOnSP has routinely complained that a

far smaller number of documents is too many.  *See, e.g.*, Dkt. No. 358-8 (objecting to a search

term eliciting an "additional 1,774 unique documents" as unduly burdensome); Dkt. No. 358-10

(claiming that a term "requir[ing] SaveOn to review 3,627 additional documents" "would . . . be

unduly burdensome").  And SaveOnSP's demand for over 13,000 documents cannot be considered

in isolation.  It is part of an onslaught of highly burdensome discovery demands from SaveOnSP,

including SaveOnSP's recent demand that JJHCS nearly double its custodian list by adding thirty

6

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 7

additional custodians.  Given that SaveOnSP's recent demands are complex and ever-changing,
JJHCS has not yet been able to assess the total burden associated with them.  But early indications
suggest that it will be overwhelming.  For example, only days before SaveOnSP filed the instant
motion, it moved to compel JJHCS to add Joe Incelli and Norhaan Khalil as custodians with a
lengthy list of broad search terms that would require JJHCS to review over 37,000 additional
documents.  So, while review of the 13,000 more documents implicated by this latest motion would
be unduly burdensome for JJHCS in and of itself, the cumulative effect of this additional review
*and* all of SaveOnSP's other demands would be even more so.

In arguing otherwise, SaveOnSP resorts to repeatedly mischaracterizing several JJHCS
documents.  None of these justify SaveOnSP's demands for ever-more discovery on these issues.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████    ██████████████████    ███████████████

██████████████████████████████████████████████████

██████████████████████.  The document also significantly predates the period in which
TrialCard "work[ed] to design and implement the CAP program and to identify patients on
accumulators, maximizers, and plans advised by SaveOn," SaveOnSP's purported topic of interest.
Mot. at 3-4.  Regardless, it was captured by existing search parameters and has already been
produced.

████████████████████████████████████████████████

██████████████████████████████████████████████████

7

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 8

████████████████████████████████████████████████████

████████████████████████████████████    ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

Even so, JJHCS repeatedly sought compromise with SaveOnSP by offering to run the following narrower TrialCard-specific term:

- (TrialCard w/25 identif*) /25 (accumulat* OR maximiz* OR CAPa OR CAPm OR "adjustment program" OR EHB OR NEHB)

*See* Ex. 10 (Jul. 12, 2024 Ltr. from I. Eppler to H. Miles) at 2-3; SaveOnSP Ex. 21 (Aug. 1, 2024 Ltr. from I. Eppler to H. Miles) at 2-3.  This term elicits 1,250 documents and is aligned with SaveOnSP's stated justification for TrialCard-specific search terms and the Court's instructions. SaveOnSP claims in its motion that "needs documents related to TrialCard's . . . efforts to identify patients on SaveOn-advised plans, accumulators, or maximizers."  Mot. at 3.  JJHCS's proposed term will capture documents that include the word "TrialCard" in proximity to variants of the words "identify," "accumulator," and "maximizer," giving SaveOnSP the documents it purports to need.  It also includes meaningful limits on the "CAPa OR CAPm OR 'adjustment program'" search string, as the Court required in its April 10, 2024 Order.

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 9

JJHCS has been clear: it is willing to produce documents elicited by a TrialCard-related term in the interests of finally ending these disputes.  But SaveOnSP's demand that it review over 13,000 documents is unduly burdensome in light of other TrialCard-related discovery, the Court's prior rulings, and SaveOnSP's own positions on the burdens associated with document review.

## II.    RISRx Term

SaveOnSP has moved to compel JJHCS to produce documents elicited by the following RISRx-related search term:

- ("RIS" OR "RISRx") w/50 (accumulator* OR maximizer* OR CAPm OR CAPa OR "adjustment program")

SaveOnSP insists that JJHCS run this search for the period from April 1, 2016 through November 7, 2023, Mot. at 6, even though it acknowledges in its motion that JJHCS did not commence work with RISRx on relevant issues ██████.  Mot. at 2 (citing SaveOnSP Ex. 6 (JJHCS_00001200)).

This search term is improper and unnecessary.  As is the case with its TrialCard search term, SaveOnSP attempts to justify this broad search term by reference to two requests for production involving Benefits Investigations, even though the search term does not even reference Benefits Investigations.  Indeed, JJHCS offered to run two additional searches that would capture any work by RISRx relating to individual Benefits Investigations.  (SaveOnSP did not bother to even respond to that offer and has ignored it for months.)  Ex. 9 (Jul. 3, 2024 Ltr. from J. Long to E. Snow) at 2.[4]  In any event, JJHCS has already reviewed tens of thousands of documents elicited

---

[4] Those two additional RISRx-specific search terms that JJHCS offered to run were:

- (RIS OR RISRx) AND ((Benefit* w/5 Investigation*) OR B.I. OR "BI's" OR BIs OR "B.I.'s")

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 10

by a series of broad search terms related to the CAP program as noted above, which would encompass documents involving RISRx.  JJHCS also already ran an exceedingly broad search that would capture efforts by RISRx to identify anyone at all: "(RIS OR RISRx) /50 (identif*)."  Ex. 11 (June 4, 2024 Ltr. from H. Miles to I. Eppler) at 2.  JJHCS completed that search, reviewed the thousands of results, and produced all relevant and responsive documents.  JJHCS has also made non-custodial productions of all the relevant RISRx reports provided to JJHCS related to attempts to identify patients on maximizers.  Ex. 12 (Aug. 6, 2024 Ltr. from J. Long to M. Nussbaum).  In view of the extensive work JJHCS has already done and offered to do, SaveOnSP has no basis to demand more.

SaveOnSP's motion to compel JJHCS to run *this* RISRx-specific search term should also be denied because it again is inconsistent with another of the Court's rulings.  Specifically, in April 2024, JJHCS asked SaveOnSP to review 3,627 documents elicited by a search term containing a "w/50" proximity limiter.  Dkt. No. 283 at 2.  That search term was narrowly tailored, and JJHCS even agreed to substantially restrict the date range of the search to 2022–23.  Dkt. No. 279 at 3.  SaveOnSP refused to run the search, even though it had itself demanded that JJHCS run searches involving a w/50 proximity limiter, including just weeks earlier the very broad RISRx specific term described above.  JJHCS sought relief from the Court, and when SaveOnSP opposed JJHCS's request, it argued that JJHCS's proposed term was overly broad because of its "w/50" proximity limiter.  Dkt. No. 358-10 at 3.  The Court agreed with SaveOnSP that "w/50 may be overly broad."  Dkt. No. 283 at 3.  In accordance with that ruling, JJHCS declined to run SaveOnSP's proposed

---

- (RIS OR RISRx) AND "BI" (case sensitive)

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 11

RISRx term with w/50 limiters, but repeatedly emphasized that it would be willing to run an

identical term with a narrower proximity limiter: ("RIS" OR "RISRx") w/25 (accumulator* OR

maximizer* OR CAPm OR CAPa OR "adjustment program"). Ex. 10 (Jul. 12, 2024 Ltr. from I.

Eppler to H. Miles) at 2; SaveOnSP Ex. 21 (Aug. 1, 2024 Ltr. from I. Eppler to H. Miles) at 1-2.

SaveOnSP has no reasonable arguments for why JJHCS's counterproposal is insufficient.

And while it attempts to distinguish between the term it now seeks and the term that the Court

rejected as overly broad, the attempt does not withstand scrutiny. SaveOnSP claims that the term

at issue in the May 9, 2024 Order was uniquely overbroad because the earlier term "featured the

commonly used word 'adapt,' so a 'w/50' connector might have picked up irrelevant documents."

Mot. at 7. That is an oversimplification: the earlier term sought documents featuring the word

"Adapt"—because that is the brand name *SaveOnSP* chose for one of its programs—near

uncommonly used health insurance industry terms related to that product. Dkt. No. 283 at 2 n.2.

And unlike the search SaveOnSP seeks now, JJHCS's proposal was limited to a narrow, crucial

timeframe (2022–23). But the Court still rejected it as overly broad. *Id.* at 3.

SaveOnSP also contends that JJHCS has "insisted that SaveOn use a 'w/50' connector in

various searches" even after the Court's ruling. Mot. at 7 n.1. That is misleading. Before the

Court issued its guidance on the proper use of proximity limiters, JJHCS requested "w/50"

proximity limiters in some instances in which they were appropriate due to the nature of the very

specific terms or custodians at issue, and where SaveOnSP has not objected to those agreed-upon

"w/50" proximity limiters in the wake of the Court's guidance JJHCS has not unilaterally sought

to revisit them. SaveOnSP Ex. 21 (Aug. 1, 2024 Ltr. from I. Eppler to H. Miles) at 1 n.1. And in

others, JJHCS has proposed multi-part terms that contain both "w/50" proximity limiters ***and***

Honorable Freda L. Wolfson, U.S.D.J.
September 9, 2024
Page 12

additional, narrower proximity limiters. *Id*. That is a far cry from what SaveOnSP has done here: successfully litigated a limit on overbroad search terms for itself, but refused to accept the Court's guidance as generally applicable.

JJHCS has reviewed and produced many documents regarding the CAP program, including many documents regarding RISRx's role in the CAP program. When SaveOnSP nonetheless demanded more, JJHCS proposed a reasonable compromise: it agreed to run SaveOnSP's proposed RISRx search term language with a narrowed proximity limiter rather than the "w/50" limiter that the Court has deemed overly broad. But instead of accepting JJHCS's invitation to compromise, SaveOnSP moved to compel, seeking to hold JJHCS to a standard regarding proximity limiters that is inconsistent with both the Court's guidance and SaveOnSP's own position. These tactics are counterproductive, vexatious, and should not be rewarded.

### CONCLUSION

For the foregoing reasons, SaveOnSP's August 30, 2024 motion should be denied.

Respectfully submitted,

s/ *Jeffrey J. Greenbaum*
JEFFREY J. GREENBAUM

cc:     Counsel of record for SaveOnSP