# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

November 11, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

      Re:   *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*
              No. 2:22-cv-02632 (JKS) (CLW)

Dear Judge Wolfson:

On behalf of Save On SP, LLC ("SaveOn"), we write in reply to Plaintiff Johnson & Johnson Health Care Systems Inc.'s ("JJHCS," and, with its affiliates, "J&J") opposition to SaveOn's motion to compel J&J to add nine custodians and run the tailored search terms in Appendix 1.

Extensive evidence shows that the proposed custodians are relevant and likely to have unique documents. As shown below for each, J&J does not contest much of this evidence and misrepresents much of the rest. While J&J accuses SaveOn of delay, Opp. 2-3, the true source of delay is J&J, which withheld key information at the start of discovery (like its CAP Program and benefits investigations), falsely insisted that no one outside of JJHCS had relevant evidence, refused to search non-JJHCS entities where relevant individuals work, and opposed new custodians,

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson     Page 2

who, once added, proved to have unique documents undercutting J&J's claims.

J&J has no valid burden argument. Granting SaveOn's motion would result in 55 total custodians, Opp. 1, a fraction of the *hundreds* of J&J employees who worked on key issues.[1] *E.g.*, Ans. ¶ 74. Even with its 46 current custodians, J&J has to date produced only 46,090 documents, a sliver of the 305,000 documents that SaveOn has produced. And J&J provides no hit counts for SaveOn's proposed search terms, failing to show any burden, let alone an undue one.

J&J's belated arguments—not raised in the parties' negotiations—to limit search terms or time periods are unpersuasive. Opp. 5, 19-20. SaveOn proposes nine general terms on the inarguably relevant topics of SaveOn and J&J's CAP program, App. 1 at 1, which J&J has run over all existing custodians; and specific terms for each new custodian, tailored to the topics on which they worked, *id.* at 1-9.[2] J&J asks to limit individual custodians' time periods, but many of SaveOn's proposed individual terms are already time-limited, beginning in January 2021. *Id.* at 2-8. J&J suggests further limiting the time periods of some custodians to the date ranges of the documents that SaveOn cites, Opp. 5, 9, 12-13, 17, 19, but J&J does not represent that they worked on relevant topics *only* during those times. Your Honor should not artificially limit discovery based on when relevant documents happened to be forwarded to existing custodians.

**Katie Hanculak**: J&J does not dispute that Hanculak (1) , *see* Mot. 3-4; Exs. 16-20;

---

[1] While J&J says that SaveOn will seek to compel J&J to add 14 additional custodians, Opp. 1, 3, SaveOn does not intend to do so based on the current record; it reserves it rights if newly produced documents show that any of them should be custodians.

[2] After SaveOn filed its October 9 motion, Your Honor modified two terms in ruling on a different motion, *see* Opp. 20; SaveOn modifies those two proposed terms to follow the October 21 Order.

Case 2:22-cv-02632-CJK-CLW     Document 486-3     Filed 12/11/24     Page 3 of 12 PageID: 56475
Case 2:22-cv-02632-JKS-CLW     Document 436-3     Filed 12/13/24     Page 3 of 22 PageID: 15647

Hon. Freda L. Wolfson                                                                                                   Page 3

(2) ███████████████████████████████████████████████

█████, *see* Mot. 4; Exs. 19-20; (3) ████████████████████████

████████████████, *see* Mot. 4-5; Exs. 21-32; and (4) ██████████████

███████████████████████████████████████████, *see* Mot. 5-6; Exs. 38-41.

J&J discusses only eight of SaveOn's 28 exhibits. █████████████████████

███████████████████████████████████████████████

███████████████" Opp. 4 (citing Exs. 23, 24, 39, and 40 and J&J Ex. 6), ████████

███████████████████████████████████████: (1) ███████████

███████████████████████████████████████████████

██████; (2) in █████████████████████████████████████████;

(3) █████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████ (4) in ██████████████████

███████████████████████████████████████████████

J&J does not dispute that the remaining two exhibits show that Hanculak was a member of

J&J's CAP Tiger Team. Opp. 5 (citing Exs. 34, 37). While J&J asserts it has ten custodians who

received invitations to the Tiger Team meeting that Hanculak attended, *id.*, this does not make her

duplicative—███████████████████████████████████████

███████████████████████████████████████. Ex. 35 at -044.

**Elizabeth Kreul-Star**: Kreul-Starr, ████████████████████████

███████████████████████████████████████████████.

Ex. 18 at -078 (████████████████████████████████████

██████); Ex. 67 at -593 (████████████████████████████



"). J&J does not dispute that Kreul-Starr (1) ███████, Mot. 8-9; (2) ███████ Ex. 33 at -568; *see also* Ex. 57; (3) ███████, *see* Exs. 60, 61; and (4) ███████ *see* Ex. 63 at -365 (███████).[3]

While J&J says that some exhibits do not refer to SaveOn by name, Opp. 7, ███████ *e.g.*, Ex. 46 at -267, -269; Exs. 47-50, and SaveOn is "entitled to discovery from representatives who were internally involved in responding to accumulator programs," Dkt. 192 at 29. ███████, Opp. 7, ███████, Ex. 51 at -477, ███████. And while J&J says that Kreul-Starr is not relevant to damages, Opp. 6-7, it ███████ Opp. 7, ███████ *See also* Exs. 57, 60-61; Ex. 53 at -990, -005.[4]

---

[3] J&J asks Your Honor to ignore exhibits referring to the Best Price Rule, saying that Your Honor held that topic irrelevant, Opp. 8, but Your Honor "agree[d] with Defendant's position that these documents *may* reveal Plaintiff's intent and motivation in identifying its patients who are on Save-OnSP's programs," Dkt. 307 at 2 (original emphasis). In any event, those documents also relate to J&J's mitigation efforts, Ex. 49 at -196, Ex. 50 at -740. J&J also asks Your Honor to ignore documents regarding enforcement of T&C provisions other than the May-Not-Use Provision, Opp. 8, but ███████, *e.g.*, Ex. 56.

[4] SaveOn did not "delay" in requesting Kreul-Starr. *Contra* Opp. 6. ███████ J&J Ex. 8 at 10, it did not disclose her additional responsibilities for revising CarePath's T&Cs, identifying patients on maximizers, and determining CarePath's annual maximum benefit, *see* Ex. 2

**Matthew Saggese:** Saggese worked to leverage copay assistance to sell more gastrointestinal drugs for J&J. Mot. 10-11. While J&J asserts that he only received updates from others about CarePath, Opp. 9, in fact he *implemented* J&J's policies for CarePath patients on accumulators and maximizers.

Saggese was also involved with J&J's scheme to send patients to SaveOn after they exhausted CarePath funds. Mot. 11 (citing Ex. 82). While J&J says that there is "zero evidence for this claim," Opp. 10, 

 Ex. 82 at -853-54, -855.0001.  , Opp. 10-11,  . Ex. 139 (JJHCS_00073531).  , Opp. 11,  , Opp. 11,  . Ex. 82

---

( ); J&J would not produce documents showing this involvement until 2024, *e.g.*, Ex. 57; Ex. 33. Kreul-Starr also did most of her work at non-JJHCS entities, *e.g.*, Ex. 64 ( ); Exs. 65, 72-73 ; Exs. 69 & 74 ( ), and J&J refused to voluntarily provide information about non-JJHCS entities. SaveOn sought discovery from those entities, Dkt. 360 Ex. C at 9 n.14, which J&J opposed. SaveOn then sought her as a custodian, Ex. 3 at 8, two days after Your Honor's order that it proceed on a custodian-by-custodian basis, Dkt. 336 at 2.

5

at -853.



," Ex. 79 at -559, ▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Exs. 79-81; Mot. 10; Opp. 10. While J&J calls this irrelevant, Opp. 10, ▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

**Jane Frechette:** J&J does not dispute that Frechette monitored how other manufacturers changed their copay assistance programs' T&Cs to respond to accumulators and maximizers. Mot. 11-13. J&J put these changes at issue by asserting that the meaning of the May-Not-Use Provision is informed by industry custom and practice, *e.g.*, Dkt. 146 at 16, 19 (asserting it is "ubiquit[ous] in the industry" and "common in copay support programs"), so it cannot now credibly call its knowledge of other manufacturers' T&Cs irrelevant, Opp. 11. It is also no answer for J&J to say that those other T&Cs are public, *id.*; SaveOn seeks Frechette's documents to probe J&J's knowledge of and reaction to those changes, even as J&J failed to update its own T&Cs.

While J&J asserts that "there is no suggestion that Frechette gave substantive feedback on the terms themselves," *id.* at 12, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉



," Ex. 92 at -453.

, Opp. 12,

Ex. 94 at -272

[5]

**Casey Sasse:** J&J does not dispute the extensive evidence showing Sasse's central roles in tracking accumulator and maximizer participation based on copay spend and in identifying patients on such programs. Mot. 13-14. While J&J asserts that her work is captured in existing custodians' documents, Opp. 13,

. *Id.* at -583. J&J similarly suggests that Sasse's work on the CAP 2023 Project is captured in the documents of other team members, Opp. 13,

*See* Ex. 105 at -241 (

).

**Barbara McCabe:** J&J does not dispute that McCabe tracked other drug manufacturers' updates of their T&Cs in response to accumulators and maximizers. Mot. 15-16. While J&J asserts that these terms were public, Opp. 15, J&J's reaction to and understanding of them is not. And while J&J asserts that McCabe did not draft its T&Cs, *id.* at 13-14, it concedes that she helped

---

[5] While J&J suggests that it did not consider SaveOn to be an accumulator, Mot. 12, its "denial that [SaveOn] is an accumulator does not change the fact that [J&J] refers to [SaveOn's] program in that manner," Dkt. 192 at 29; *see also* Oct. 11, 2024 Hr'g Tr. 55:9-15 (J&J counsel asserting that "there are aspects of SaveOn's programs that do mirror an accumulator program as well").

Case 2:22-cv-02632-CJB-SLVW Document 486-3 Filed 12/11/24 Page 8 of 12 PageID: 15667
Case 2:22-cv-02632-JKS-CLW Document 436 Filed 12/10/24 Page 23 of 72 PageID: 15541
Hon. Freda L. Wolfson                                                                  Page 8

draft training materials and call guides that J&J used to explain the T&Cs' meaning to J&J employees and to patients, *id.*—███████████████████████████████████████

███████████, Ex. 108 at -050 slide 11, ███████████, Ex. 109 at -571.

J&J also does not dispute that McCabe had access to PAFA+, the platform through which J&J identified by name patients on accumulators, maximizers, or SaveOn-advised plans; she would be the only custodian with such access. J&J asserts that PAFA+ contains data on BIs that TrialCard already produced, Opp. 15 n.11, ████████████████████████████████████

████████████████████████████████████████████████████████████████, *compare* Ex. 140 (TRIALCARD_00009752), *with* Ex. 111 (slide 3). J&J also says that McCabe shared all her materials regarding PAFA+ with her supervisor, Singh, Opp. 14-15, but it cites nothing showing that Singh, █████████████████████████, Ex. 110 at -970, had access to PAFA+. McCabe is thus highly likely to have unique materials regarding PAFA+ that Singh does not.

**Kevin Kleemeier:** Kleemeier played a lead role in implementing J&J's advocacy-related response to accumulators and maximizers. Mot. 16-18. While J&J denies him a "noteworthy role," Opp. 15, 

████ Ex. 113 at -200. ████████████████████

██████████████, Opp. 16, ███████████████████████████. 113 at -184.[6]

---

[6] ████████████████████████████████████████████████████████████████████████, Opp. 16, ██████████████████████████████████████████████████. *E.g.*, Ex. 141 (JJHCS_00221284) (█████████████████); Ex. 142 at -600-01 (JJHCS_00170600) (██████████████████████████████████████████████████████).

Case 2:22-cv-02632-CCC-CLW Document 486-3 Filed 12/11/24 Page 23 of 32 PageID: 55642
Case 2:22-cv-02632-JKS-CLW Document 468-3 Filed 12/13/24 Page 23 of 34 PageID: 57542
Hon. Freda L. Wolfson     Page 9

J&J also does not dispute that Kleemeier was involved with developing a response to accumulators ▮▮▮▮▮▮▮▮▮▮"; it also does not dispute that this program is relevant or that Kleemeier will have unique documents about it. Mot. 18 (citing Ex. 119). ▮▮▮▮▮▮▮" Opp. 16, ▮▮▮▮▮ Ex. 119 at -825 ("▮▮▮▮▮ (altered emphases)).

**Mitchell Akright:** J&J does not dispute that ▮▮▮▮ IMM Cap Tiger Team, ▮▮▮▮. Mot. 18-19 (citing Exs. 121-124). While J&J asserts that Akright ▮▮▮▮, Opp. 17, it ▮▮▮▮, *see* Ex. 143 (JJHCS_00139553) (▮▮▮▮)—▮▮▮▮ Ex. 124 at -296.

J&J also does not dispute that Akright sought feedback about patient reactions to accumulators and maximizers and J&J's reactions to them, or that this information is relevant. Mot. 19.

---

▮▮▮▮, and J&J cites nothing indicating he did so.

While J&J says that his work is likely captured by other custodians' documents, Opp. 17, ███

███.

███." *Id.*

at -760-61. ███

███." Ex. 127 at -759 (emphasis added). And Exhibit 128,

which J&J does not address, ███.

**Cecelia Trybus:** J&J does not dispute that Trybus was the lead Nurse Navigator for the

Stelara withMe Program (formerly CarePath) and would be the only Nurse Navigator custodian.

Mot. 19-20. ███" Opp. 18, ███

███, *see* Ex. 138 at -154, ███

███." *Id.* ███

███

███ts, Opp. 18-19, ███

███

███" Ex. 144 at -946 (JJHCS_00218944) (same as

Ex. 133, but with full document family). ███

███, *see* Ex. 145 at 299-300

(JJHCS_00182999), ███."

Ex. 146 at -877-78 (JJHCS_00192875). ███

███, Opp. 19, ███

███s, *see, e.g.*, Ex. 144 at -945 (JJHCS_00218944).

\* \* \*

SaveOn appreciates Your Honor's attention to this matter.

Respectfully submitted,

/s/ *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# EXHIBITS 139 - 146

## Confidential - Filed Under Seal