

**Freda Wolfson**
Chief U.S. Dist. Judge (ret.)
Partner

One Lowenstein Drive
Roseland, New Jersey 07068

T: (862) 926-2708
F: (973) 597-2400
E: fwolfson@lowenstein.com

## SPECIAL MASTER LETTER ORDER

January 23, 2025

*VIA ECF and Email*
TO ALL COUNSEL OF RECORD

    RE:    *Johnson & Johnson Health Care Systems, Inc. v. SaveOnSP, LLC, et al.*
             **Civ. Action No.: 22-2632(JKS)(CLW)**

Counsel:

On January 15, 2025, I conducted a hearing via Zoom on Defendant SaveOnSp, LLC's ("Defendant" or "SaveOnSP") motion to add the following nine additional non-Johnson & Johnson Health Care Systems, Inc. ("Plaintiff" or "JJHCS") custodians: Katie Hanculak, Elizabeth Kreul-Starr, Matthew Saggese, Jane Frechette, Casey Sasse, Barbara McCabe, Kevin Kleemeier, Mitchell Akright, and Cecelia Trybus. Plaintiff has opposed the Motion. In connection with the Motion, the parties submitted over 150 exhibits, which I reviewed. Based on those exhibits, I rendered my decision, on the record, regarding each of the proposed custodians. I summarize my rulings in this Letter Order.

**1.  Katie Hanculak**

Hanculak served as a Product Director at Janssen Biotech. According to Defendant, she should be designated as a custodian because she (1) assisted Johnson & Johnson ("J&J") in identifying patients who received CarePath Funds before JJHCS undertook any mitigation efforts, (2) coordinated J&J's response to accumulator and

1

maximizer programs, and (3) contributed recommendations for the CAP program as a member of the IMM CAP 2022 Tiger Team.

After reviewing the exhibits, I conclude that, from a data standpoint, Hanculak analyzed the impact of accumulator and maximizer programs on J&J's copay assistance for certain drugs. She also helped train personnel and answered questions about the prevalence and effect of these programs. While her involvement in mitigation strategies may not have been specific to SaveOnSP's advised programs, the exhibits show she was immersed in analyzing how accumulators and maximizers affected J&J's copay assistance programs.

Although Plaintiff downplays her role, the exhibits suggest that documents in Hanculak's possession may be relevant to Defendant's mitigation defense and to J&J's broader knowledge of, and response to, these programs. More importantly, it appears that she may have unique documents related to the meaning of T&Cs for Janssen drugs. While other custodians may hold similar materials, I cannot conclude that she lacks unique documents, given her significant responsibilities. Accordingly, I directed Plaintiff to add Hanculak as a limited custodian.

However, I have restricted the relevant timeframe to approximately 17 months (June 2020 through November 2021), as all the exhibits I reviewed date to that period. Contrary to Defendant's argument, there is no basis to expand this timeframe. At this stage of discovery, there is no need to speculate about other periods in which Hanculak might possess unique and relevant documents.

**2.       Elizabeth Kreul-Starr**

Kreul-Starr served as the Director of Marketing at Janssen Biotech. According to Defendant, she was involved in all aspects of CarePath, including J&J's response to SaveOnSP, revisions to T&Cs, and oversight of benefits investigations ("BIs") and the CAP program. Defendant argues that Kreul-Starr should be added as a custodian because she (1) helped strategize J&J's response to accumulators, maximizers, and SaveOnSP; (2) advised and consulted with J&J's highest decisionmakers about CarePath and changes to the CAP program; (3) worked on revisions to CarePath's T&Cs and related documents; (4) contributed to J&J's mitigation strategies under the CAP program; and (5) oversaw third-party vendors conducting BIs and designing the CAP program. Defendant seeks documents from April 1, 2016 to November 7, 2023.

Plaintiff represents that Kreul-Starr transitioned to a new position within J&J around January 2018, and left the company in September 2022. Based on that representation, Defendant agreed to narrow the timeframe to January 2018 through September 2022. While Plaintiff asserts that Kreul-Starr's documents would duplicate those held by other custodians, my review of the exhibits indicates that she may possess unique documents. Accordingly, I direct Plaintiff to add Kreul-Starr as a custodian; however, the search should be limited to her roles in formulating responses to accumulators, maximizers, and related mitigation efforts, as well as her involvement in designing and implementing the CAP program.

**3.     Matthew Saggese**

Saggese served as a Product Director at Janssen Biotech and purportedly led the "GI Cx Core Team," which focused on selling Stelara, including leveraging copay assistance to boost sales. According to Defendant, Saggese launched two CAP program workarounds that undermine J&J's assertion that patients on SaveOn plans are ineligible for copay assistance, suggesting that J&J willingly provided CarePath funds to patients on maximizers.

I conclude that Saggese is unlikely to have unique, relevant documents that would warrant adding him as a custodian. As Plaintiff points out, the exhibits show that pertinent communications were sent to other custodians, and Saggese's involvement appears limited and isolated rather than broadly relevant. Based on the small number of exhibits presented, it seems he primarily addressed patient experiences regarding specific Janssen drugs, and any CAP-related emails he received were tied to individual patient matters rather than general policy. Accordingly, I deny Defendant's request to add Saggese as a custodian.

**4.     Jane Frechette**

Frechette was a Group Product Director at Janssen Biotech who, according to Defendant, helped develop the CAP and Stelara withMe programs, monitored other manufacturers' T&Cs, and tracked CarePath usage for patients using accumulator and maximizer programs. Defendant overstates Frechette's roles.

4

Based on the exhibits, I conclude that Frechette is unlikely to possess unique documents. While she was responsible for addressing patient issues stemming from accumulator and maximizer impacts, none of the exhibits show that she was actually involved in developing the CAP program. Although she monitored other manufacturers' T&Cs, there is no indication that she participated in drafting or creating J&J's T&Cs or that this monitoring role directly contributed to forming the CAP program.

SaveOnSP also asserts that Frechette "gave feedback on the CAP Stelara T&Cs," but the materials in question appear to be promotional in nature, merely referencing the Stelara terms and conditions. There is no indication that Frechette was involved in amending T&Cs generally. While she did express concern about some patients reaching the cap on J&J's assistance programs, the exhibits do not show that she implemented, or assisted in implementing, any policies in response to accumulators or maximizers. Rather, her role appears focused on patient experience.

In any event, as Plaintiff points out, current custodians, such as Schoenly and Pennington, likely possess any relevant documents sought by Defendant. Therefore, I do not find that Frechette is an additional appropriate custodian.

**5.  Casey Sasse**

Sasse was an Associate Director at Janssen Immunology. According to Defendant, Sasse tracked co-pay utilization to analyze the CAP program's performance, determine whether CarePath enrollees were on accumulator or maximizer plans, and contributed to developing the CAP program.

It is clear that Sasse played a key role in monitoring accumulator and maximizer participation based on copay spend and identifying patients enrolled in such programs. The only question is whether other custodians would possess the same materials, making her documents duplicative. However, after reviewing the exhibits and keeping in mind the broad scope of discovery, it appears that Sasse likely maintains unique documents. Indeed, she was on the front line of tracking participation and worked with TrialCard to identify patients under accumulators or maximizers. In fact, she was the only team member specializing in market research in this area, which makes her documents particularly relevant, at least to the issue of damages. I therefore conclude that Sasse should be added as a custodian. As for the timeframe of the search, Defendant requested—and I agreed—that the relevant period runs from March 1, 2022 to November 7, 2023, consistent with the exhibits.

6. **Barbara McCabe**

Defendant argues that McCabe, a brand employee at Janssen Immunology, monitored other manufacturers' copay assistance programs, implemented changes to CarePath's T&Cs, and was on the team responsible for managing the platform through which J&J identified patients on accumulators and maximizers.

However, weighing the evidence of her roles, I do not find that McCabe should be added as a custodian. Based on the exhibits submitted, there is no doubt that McCabe performed data analysis on certain metrics and kept track of other manufacturers' copay assistance programs. However, the tracking's purpose was not focused solely on accumulator or maximizers. Rather, it was to keep J&J abreast of competitors. And, while

6

McCabe certainly assisted in drafting training manuals or call guides, there is no indication from any of the exhibits that she would possess any relevant documents that would shed light on policy decisions. Significant to my finding, McCabe has not been shown to be involved in forming policies or participated in any policy discussions such that documents that she does possess would be relevant. Rather, as Plaintiff points out, McCabe reports to current custodians, such as Jasmeet Singh, and those custodians possess relevant documents that have been produced. McCabe would not possess unique documents.

Further, as of note, during the hearing, I questioned Plaintiff who at J&J would have access to the PAFA database, supported the database, or analyzed the data from the database. In connection with these inquiries, I directed the parties to submit a letter regarding the PAFA database issues. By January 29, 2025, SaveOnSP is directed to submit the initial letter as to why the database is relevant to its defense and identify a potential custodian related to the database. Plaintiff may then submit its response by February 5, 2025.

7.  **Kevin Kleemeier**

Defendant contends that Kleemeier, a Product Director at Janssen Biotech, worked with advocacy partners from 2016 to 2018 to publish information about accumulators, maximizers, and SaveOn, and that he proposed a "2Card solution" to address accumulator and maximizer programs.

However, none of the exhibits—individually or collectively—demonstrate that Kleemeier led advocacy group engagement or was the person responsible for creating

7

the 2Card solution that Defendant refers to as a workaround for accumulator programs. While he was copied on several email discussions, he appears merely as a recipient, without offering substantive input. Current custodians either initiated or responded to these emails. Although Defendant emphasizes Kleemeier's alleged leadership on various projects, the exhibits do not support that level of involvement. As such, at this time, I deny Defendant's request to add Kleemeier as a custodian.

However, I directed the parties to meet and confer on search terms for Hoffman, a current custodian, limited to Hoffman's contact with the advocacy group, the Arthritis Foundation, a group referred in the Kleemeier exhibits.

**8.    Mitchell Akright**

According to Defendant, Mitchell Akright was a Director at Janssen Immunology and a member of the CAP Tiger Team. He led internal training on CarePath program requirements and appeared to play a leading role in messaging and training. Based on my review, Defendant is correct in asserting that Akright worked independently from existing custodians to develop J&J's training materials and the e-module to address questions about CarePath, accumulators, and maximizers. Akright was also deeply involved in soliciting feedback about patient reactions to accumulators and maximizers.

While Plaintiff argues that Akright's work is likely captured by other custodians, what sets Akright apart from the other proposed custodians that I have decline to add here is that he appears to have led J&J's effort to instruct field representatives on proper messaging about the CAP program and their training. Therefore, I find that Akright should be added as a custodian for the period of October 2021 – November 2023.

8

**9.     Cecelia Trybus**

Finally, the Defendant argues that Trybus, a manager of IMM Patient and Caregiver Solutions at Janssen Biotech, was the lead Nurse Navigator for the Stelara withMe program. In this role, she communicated with patients on relevant issues, such as J&J's position on accumulators and maximizers, received patient feedback from other nurse navigators, and helped shape the CAP program by sharing patient feedback.

The purpose of the Nurse Navigator is to ensure a positive patient experience, and it appears that Trybus led that program. Based on the exhibits, J&J included Trybus in CAP discussions because of patient feedback. Defendant correctly posits that Trybus would have unique documents related to patient experience—feedback from people who may be frustrated with maximizer/accumulator programs, which I find relevant to Plaintiff's GBL claim. Indeed, Trybus would be the first custodian in this kind of role.

Plaintiff attempts to minimize the Nurse Navigators program, explaining that it has a clinical focus and a very limited role regarding cost support—to point patients "in the right direction." Plaintiff further argues that Trybus did not provide feedback or any insights into patients' reactions. I disagree; the exhibits paint a different picture. Indeed, Trybus was included in various emails that sought her feedback and comments involving the CAP program. On balance, I find that Trybus would have unique and relevant information such that she should be a custodian. The time limitation is June 2022 – November 7, 2023. Moreover, I find the Defendant's suggested search string, ("Nurse Navigator*" OR "NN*") w/50 ("CAP"), overly broad. I recommend shortening the connector to "w/25."

9

10. **Final Guidance**

For each designated custodian, whether limited or otherwise, the parties are directed to meet and confer on the search terms based on the parameters set forth on the record and herein. If the agreed-upon search terms yield a disproportionate number of documents, the parties must meet and confer to narrow the search. Should disputes arise regarding proportionality or if the parties cannot agree on search terms for one or more designated custodians, they are directed to email me and I will resolve these issues promptly, without requiring additional formal written submissions, which will conserve the parties' resources and time.

Lastly, unrelated to the Motion, the status conference scheduled for January 22, 2025 was adjourned to February 12, 2025 at 11:00 am. With regard to potential discovery disputes between JJHCS and SaveOnSP, by February 3, 2025, SaveOnSP is directed to identify disputes with those documents that have been produced by JJHCS, and the parties must use their best efforts to meet and confer on those issues. If negotiations break down, the parties shall notify me promptly.

*/s/ Freda L. Wolfson*
Hon. Freda L. Wolfson (ret.)
Special Master