# EXHIBIT B

# Sills Cummis & Gross
A Professional Corporation

The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102-5400
Tel: 973-643-7000
Fax: 973-643-6500

**Jeffrey J. Greenbaum**
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL UNDER THE DISCOVERY CONFIDENTIALITY ORDER**

January 13, 2025

**By Email**

Hon. Freda L. Wolfson, U.S.D.J.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

Re: **JJHCS's Opposition to SaveOnSP's Dec. 13, 2024 Motion to Compel**
*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC, et al.*,
**Civil Action No. 22-2632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), we write in opposition to SaveOnSP's December 13, 2024 motion to compel JJHCS to conduct a further search from the files of Scott White, one of Johnson & Johnson's highest-ranking executives and an apex custodian. SaveOnSP now demands a broad search of Mr. White's files for the time period from January 1, 2009 to April 1, 2016—which SaveOnSP admits is before it was even operational. (SaveOnSP has represented that it only began "limited operations" in August 2016.[1])

Your Honor has already recognized that any discovery from Mr. White should be "[v]ery limited" in view of his position. Jan. 24, 2024 Tr. at 128:14–17. But SaveOnSP has repeatedly

---

[1] *See* Aug. 22, 2024 SaveOnSP Ltr. to Judge Wolfson at 2 n.1.

Honorable Freda L. Wolfson, U.S.D.J.
January 13, 2025
Page 2

sought expanded discovery from him and other apex executives—and now does so for this expansive time period going back sixteen years. JJHCS's perspective on what is happening here is simple: this is not a good faith effort to pursue relevant and proportionate discovery. Rather, it is a campaign to make discovery as painful as possible to punish Johnson & Johnson for having challenged it and to discourage anyone else from doing the same. The Court should therefore scrutinize closely the need for any additional discovery and SaveOnSP's substantive bases for returning to Mr. White. Such scrutiny will reveal that SaveOnSP's demands are unsustainable.

**First**, SaveOnSP claims it needs this 2009–16 discovery from Mr. White to show the true meaning of JJHCS's terms and conditions that prohibit "other offers." The notion that discovery is needed on this point in the first place is questionable. This term has a plain meaning. And the "cannot be combined with other offers" concept is ubiquitous in American commerce, not only in patient assistance programs but everything from sweepstakes to restaurants and retailers. *See* Dkt. 146 at 18–20 (collecting numerous examples). All the same, after this Court held that some targeted discovery on this question was appropriate, JJHCS added eight custodians going back to 2009 and reviewed 30,000 documents to answer it. And the answer was as expected: JJHCS's files contain no exegesis on the meaning of "no other offers" because it is self-evident plain English. Instead, these files only confirmed JJHCS's longstanding intent that its patient assistance programs ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." *E.g.*, SaveOnSP Ex. 5 at -696. Just because this fishing expedition across all relevant custodians proved spectacularly unhelpful to SaveOnSP does not justify yet another prehistoric voyage into Mr. White's files.

**Second**, Mr. White is a particularly poor fit for additional discovery on this topic. There is no evidence to suggest his files would provide any insight into the meaning of the "other offers"

2

Honorable Freda L. Wolfson, U.S.D.J.
January 13, 2025
Page 3

term whatsoever. SaveOnSP attempts to inflate Mr. White's relevance to this case by contending that he "created CarePath," but that notion finds zero support in the documents SaveOnSP cites. And regardless, the creation of CarePath is not what this lawsuit is about. Nor is it about the slew of other miscellaneous patient assistance related topics on which SaveOnSP has dredged up incidental references to Mr. White in documents. The truth is that JJHCS has already produced documents from eight custodians who played central roles in the drafting of CarePath terms and conditions, and their documents—not Mr. White's—provide a robust window into the time period SaveOnSP seeks.

*Third*, SaveOnSP's proposed search terms are entirely untethered to its claimed basis for needing this discovery. They are overbroad and needlessly burdensome, identifying nearly 5,000 additional documents for JJHCS to review. SaveOnSP claims this high volume proves Mr. White's relevance, but all it really shows is that his files contain lots of emails with words like "discount" and the names of the top Janssen drugs—hardly a surprise given his role. Indeed, as explained below, based on an analysis of which parts of the search string are generating hits, it is clear that only *two* documents out of the 5,000 even contain the "other offer" or "T&C" language that is the focus of SaveOnSP's motion and the Court's prior rulings. And both of those documents are incidental references that are irrelevant to the issues in this case or the meaning of "other offer."

Discovery must be guided by proportionality. SaveOnSP appears to be operating under the notion that it is entitled to every document from every witness—even an apex witness like Mr. White—that relates to patient assistance or the CarePath program, even documents that predate SaveOnSP becoming operational. It is not. SaveOnSP's pursuit of endless discovery will not stop until this Court makes it stop. SaveOnSP's motion should be denied.

3

Honorable Freda L. Wolfson, U.S.D.J.
January 13, 2025
Page 4

### I. JJHCS's Existing Productions Are More Than Sufficient

There can be no dispute that JJHCS has already produced significant terms-and-conditions discovery from January 1, 2009 to April 1, 2016. As SaveOnSP acknowledges, JJHCS agreed to run the search term at issue in this motion over six of its eight existing custodians for this period. *See* Mot. at 5; SaveOnSP Ex. 19. As to the remaining two custodians, Kimberly Wortman and Katherine Chapman, JJHCS ran an even broader search term.[2] The selection of these eight custodians and search protocols followed months of negotiations,[3] and resulted in JJHCS reviewing over 30,000 documents from a seven-year period, largely predating SaveOnSP's very existence by many years.

Perpetually dissatisfied, SaveOnSP now complains that JJHCS's existing productions do not reflect "an intent . . . that would be consistent with the May-Not-Use Provision barring patients on Save-On-advised plans." Mot. at 4. But JJHCS has produced multiple documents—including an exhibit cited in SaveOnSP's motion—demonstrating that JJHCS has long intended that its patient assistance programs ██████████████████████████████████ *E.g.*, SaveOnSP Ex. 5 at -696. Indeed, SaveOnSP recycled an identical argument in several briefs over the past year, and JJHCS has repeatedly refuted it. *See, e.g.*, JJHCS May 2, 2024 Opp. to SaveOnSP's Apr. 18, 2024 Mot. to Compel at 14–15; JJHCS Sept. 10, 2024 Opp. to SaveOnSP's

---

[2] During the relevant period, Ms. Wortman served as Senior Director, Access Services, and Ms. Chapman served as Director, Access Services.

[3] Between April and July 2024, SaveOnSP demanded nine custodians for the 2009–16 time period, and JJHCS ultimately acceded to eight of those custodians. *See* Ex. 1, Apr. 19, 2024 Ltr. from E. Snow to J. Long; SaveOnSP Ex. 19.

Honorable Freda L. Wolfson, U.S.D.J.
January 13, 2025
Page 5

Aug. 23, 2024 Mot. to Compel at 5 (citing, in response to the same argument, several documents demonstrating JJHCS's consistent view that patient assistance is for patients, not payors).

SaveOnSP similarly protests that it lacks information about what it calls " ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇s." Mot. at 5. But the document it cites is about ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* SaveOnSP Ex. 11 at -185. This is irrelevant to the case in general and to the meaning of "other offer" in particular. And in any event, an existing custodian ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ this decision, so any relevant documents would also be in her files. SaveOnSP Ex. 12. Given the adequacy of JJHCS's existing productions, there is no need to expand the parameters of production from Mr. White.

## II. Mr. White Had No Unique Role in Drafting CarePath Terms and Conditions

There is no need for a ninth custodian on the topic of pre-2016 terms and conditions—let alone a top-ranking executive like Mr. White.[4] *See, e.g.*, *Lutzeier v. Citigroup, Inc.*, 2015 WL 430196, at *7 (E.D. Mo. Feb. 2, 2015) (denying request to collect executives' files because they lacked "unique or personal knowledge of the subject matter"). In arguing otherwise, SaveOnSP claims that Mr. White "created CarePath," Mot. 1, 3, and "designed and implemented strategic changes to CarePath's predecessor programs," *id.* at 2. Even if that were true, it would provide no basis for this discovery. The creation of CarePath and the strategy behind its predecessor programs in general are not relevant to this case. But in reality, these claims grossly distort the exhibits

---

[4] Mr. White served recently as Company Group Chairman, North America Pharmaceuticals and is now Chief Operations Officer, NA Innovative Medicine, Johnson & Johnson Innovative Medicine —both among the highest-ranking executives in the Johnson & Johnson family of companies. *See* SaveOnSP Ex. 3.

5

Honorable Freda L. Wolfson, U.S.D.J.
January 13, 2025
Page 6

SaveOnSP cites, which do not show that Mr. White played a unique role with respect to CarePath. To the contrary, they demonstrate that more junior employees, who are already custodians, were responsible for the strategy and operationalization of JJHCS's patient assistance programs. The fact that Mr. White was a senior executive at the time some of this work was done changes nothing.

For example, SaveOnSP suggests that Mr. White ███████████████, an existing custodian, ███████████████████████████████. Mot. at 2. SaveOnSP's cited exhibit shows, however, that ███████████████████████ ███████████████. SaveOnSP Ex. 4 at -034 ███████████████████████ ███████████████████████████████████ But more important, ███████ ███████████████ many years before SaveOnSP came on the scene have no bearing on the T&C issues currently in dispute. The income requirement applied in 2010 is entirely irrelevant.

SaveOnSP similarly contends, in sweeping fashion, that Mr. White "helped create new copay assistance programs for new Janssen drugs." Mot. at 3. But the only document that SaveOnSP cites shows that ███████████████████████████████████ ███████████████████████████████. SaveOnSP Ex. 13 at -766–67. Such "distant oversight" of this project cannot justify intrusive discovery from a senior executive like Mr. White. *Lifescan, Inc. v. Roche Diagnostics Corp.*, 2023 WL 11986899, at *4 (D.N.J. Sept. 27, 2023) (refusing to compel documents from a vice president who managed a "relatively large, multi-faceted organization" even where he "approve[d] budgeting," communicated with relevant team members, and requested status reports on the subject matter at issue in the litigation).

SaveOnSP next relies on Mr. White's purported involvement in 2013 in work related to the ███████████████████████████████████████████████████████

6

████████████████████████████████████████ *See* Mot. 2, 4. If the ██████████████████████ is relevant at all, it is because it reaffirms JJHCS's commitment to ensuring that its patient assistance programs benefit only patients. *See* SaveOnSP Ex. 5 at -696. Its existence, however, does not suggest that Mr. White would have unique information concerning the meaning of the "other offer" provision, much less how this provision relates to SaveOnSP. In any event, SaveOnSP's exhibits make clear that existing custodians Ms. Wortman and Ms. Chapman—not Mr. White—were responsible for ██████████████ of this issue. SaveOnSP Ex. 9 at -102.

For example, Ms. Wortman was responsible for ████████████████████████ ████████████████████████████████████████████ SaveOnSP Ex. 5 at -682. ██ ████████████████████████████████████████████████████████████████████████████ ████████████████████████, SaveOnSP Ex. 7 at -811—not, as SaveOnSP suggests, because ████████████████████████████████████, Mot. at 2. That Mr. White may have provided some high-level feedback on matters ██████████████████████ ██ ████████████████, *see* SaveOnSP Ex. 8 at -312, does not make him a necessary custodian. Indeed, employees sought out Ms. Wortman as the ████████ for questions regarding ████████, *see* SaveOnSP Ex. 15; and ████████████████████████████████████████ ████████████████, *see* SaveOnSP Ex. 10 at -110 (████████████████████████████ ████████████████████████████████████████████████████). Ms. Chapman, another existing custodian, likewise played a critical role in the ████████████ project, preparing analysis of the guidance, *see* SaveOnSP Ex. 9 at -105, and serving as a resource when colleagues sought to ████████████████████████ on these issues, *id.* at -103. Because none of the

7

Honorable Freda L. Wolfson, U.S.D.J.
January 13, 2025
Page 8

documents SaveOnSP cites shows Mr. White having a unique role related to the ▇▇▇▇, none can support expansion of his search parameters.

SaveOnSP's speculation that Mr. White purportedly discussed ▇▇▇▇ issues with non-custodians similarly cannot justify an expanded search of his files. *See* Mot. at 3–4. SaveOnSP relies on two documents: ▇▇▇▇ *see* SaveOnSP Ex. 15, while the other included a fully redacted portion of an email sent from a non-custodian to Mr. White with the subject line ▇▇▇▇ *see* Mot. at 3 (citing SaveOnSP Ex. 10 at -110–11). These documents do not show that Mr. White regularly discussed the ▇▇▇▇ with non-custodians, nor that his files would contain any unique information. Rather, both exhibits confirm Ms. Wortman's and Ms. Chapman's central involvement with the ▇▇▇▇. *See* SaveOnSP Ex. 10 (▇▇▇▇); SaveOnSP Ex. 15 (▇▇▇▇).

SaveOnSP also asserts that it is entitled to further discovery from Mr. White because he served as a ▇▇▇▇ of a 2014 project to consolidate JJHCS's drug-specific copay assistance programs into a single offering. Mot. at 3. But SaveOnSP fails to mention that JJHCS has already designated as custodians five individuals who had a leadership role on this project, either on the ▇▇▇▇ *See* SaveOnSP Ex. 14 at 6.[5] Mr. White's presence on

---

[5] *See* SaveOnSP Ex. 14 at 6 ▇▇▇▇

8

Honorable Freda L. Wolfson, U.S.D.J.
January 13, 2025
Page 9

this project, without more, cannot support further intrusive discovery from him. *Assured Guar. Mun. Corp. v. UBS Real Est. Sec. Inc.*, 2013 WL 1195545, at *3 (S.D.N.Y. Mar. 25, 2013) (denying cumulative discovery from senior executives). And regardless, this 2014 initiative is entirely irrelevant to this case.

**III.     SaveOnSP's Proposed Search Term Identifies Wholly Irrelevant Documents**

SaveOnSP seeks to compel JJHCS to review nearly 5,000 more documents, but claims this high count is justified because it shows that Mr. White was "heavily involved in relevant work drafting early CarePath T&Cs." Mot. at 5. Not so. As noted above, SaveOnSP's proposed search term is overbroad because it includes words, like "coupon" or "discount," that are likely to hit on numerous documents in a pharmaceutical executive's files that have absolutely nothing to do with the narrow topic of CarePath terms and conditions. SaveOnSP itself has recognized this overbreadth. *See* Jan. 24, 2024 Tr. at 36:19–20 (Counsel for SaveOnSP: "[W]e don't want every time anyone at Johnson & Johnson used the word 'coupon.'").

In fact, JJHCS has analyzed the search term "hits" and determined that all but two of the hits arose from one of the bolded terms below:

> (CarePath OR "Savings Program" OR "Rebate Program" OR "Access Program" OR "copay assistance" OR "Instant Savings Card" OR YOU&I OR RemiStart OR AccessOne OR Darzalex OR Imbruvica OR Opsumit OR Remicade OR Simponi OR SimponiOne OR Stelara OR Sylvant OR SylvantOne OR Tracleer OR Uptravi OR Ventavis OR Zytiga OR ZytigaOne OR Invokana OR Xarelto OR Olysio OR Risperdal OR Invega) w/10 ((term* w/3 condition) OR "T&C" OR "TNC" OR "other offer" OR **"coupon*" OR "discount*" OR "free trial" OR "prescription savings card*"**)

JJHCS has reviewed those two documents and can confirm they are non-responsive "false hits" and not relevant to this case. The remaining 1,212 documents identified by SaveOnSP's proposed

9

Honorable Freda L. Wolfson, U.S.D.J.
January 13, 2025
Page 10

search do not even **mention** "terms and conditions," or T&Cs, or even "other offer."  They are likely false hits or otherwise totally irrelevant to what SaveOnSP's motion claims is the "crux of this case . . . what 'other offer' means."  Mot. at 5–6.  JJHCS should not be compelled to review and produce these irrelevant documents.

*   *   *

For the foregoing reasons, Your Honor should deny SaveOnSP's December 13, 2024 motion.

Respectfully submitted,

s/ *Jeffrey J. Greenbaum*
JEFFREY J. GREENBAUM

cc: Counsel of record

# Exhibit 1

Case 2:22-cv-02632-CCC-CLW    Document 523-3    Filed 02/11/25    Page 12 of 16
PageID: 64091

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy | Gay

Elizabeth Snow
Associate
212.390.9330
esnow@selendygay.com

April 19, 2024

**Via E-mail**

Julia Long
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jlong@pbwt.com

Re: *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC* (Case No. 2:22-cv-02632-ES-CLW)

Dear Julia,

We write regarding J&J's production of documents regarding the drafting of CarePath's terms and conditions.

*First*, J&J represented to the Court that J&J would make its initial production from the custodial files of Kimberly Wortman and Katherine Chapman by April 12, 2024 *See* Apr. 3, 2024 Hr'g at 43:12-44:14; 55:10-20; 57:12-21. You indicated that you have their records going back to 2009. Mar. 4, 2024 Ltr. at 2. And the parties have agreed that you will run the following search term over their files:

- (CarePath OR "Savings Program" OR "Rebate Program" OR "Access Program" OR "copay assistance" OR Instant Savings Card OR YOU&I OR RemiStart OR AccessOne OR Darzalex OR Imbruvica OR Opsumit OR Remicade OR Simponi OR SimponiOne OR Stelara OR Sylvant OR SylvantOne OR Tracleer OR Uptravi OR Ventavis OR Zytiga OR ZytigaOne OR Invokana OR Xarelto OR Olysio OR Risperdal OR Invega) w/50 ((term* w/3 condition) OR "T&C" or "TNC" OR "other offer" OR "coupon*" OR "discount*" OR "prescription savings card*" OR "free trial")

It appears, however, that J&J has yet to produce documents from the custodial files of Chapman. Please tell us when J&J will produce these documents.

Julia Long
April 19, 2024

*Second,* it also appears that J&J's production to date of drafting-related documents from Wortman starts in 2013. Please confirm that J&J will review and produce documents for Wortman and Chapman going back to 2009.

*Third,* in her April 10, 2024 Order, the Special Master directed J&J to "further investigate whether there are any additional custodians who were tasked in drafting, or otherwise involved in drafting, the terms or conditions of predecessor programs," and to "promptly notify" SaveOn if it discovers any. Apr. 10, 2024 Order at 3; *see also* Apr. 3, 2024 Hr'g Tr. at 45:1-13 (expressing skepticism that only two custodians were involved in the drafting of copay assistance terms and conditions). Please let us know when J&J will complete this investigation and identify any additional custodians.

*Fourth,* based upon the limited documents you have produced to date back to 2013, SaveOn has identified two existing custodians—Scott White and Karen Lade—and two additional custodians—Andrea Normandia and Rhonda Burden—who apparently worked on the development of the CarePath terms and conditions as early as 2013, indicating that they may have worked on drafting those terms and conditions earlier.

**Scott White** appears to , JJHCS_00225682, , JJHCS_00225683. *See also* JJHCS_00225199. . JJHCS_00225683 at 2. JJHCS_00226215. JJHCS_00225849. JJHCS_00225480. . JJHCS_00225183; *see also* JJHCS_00225190 ( ). These documents indicate that White approved of, and was frequently consulted regarding, the terms and conditions for J&J's copay assistance programs in 2013 and before.

**Karen Lade**,  . JJHCS_00226567. . *Id.* . JJHCS_0024570. Given Karen Lade's later involvement in CarePath, Dkt. 192 at 29, and these earlier documents showing she revised

2

terms of J&J's copay assistance programs, she appears reasonably likely to possess relevant documents regarding the terms and conditions from before 2013.

**Andrea Normandia**, Access Services Manager, JJHCS_00226592,   JJHCS_00225397. " *Id*. The ." JJHCS_00225402; *see also* JJHCS_00225406 (). JJHCS_0024570. JJHCS_00225184. Normandia thus appears to have been involved in running copay assistance for many predecessor programs and changes to their terms and conditions.

**Rhonda Burden**, Director of Access Services in 2013, , JJHCS_00224701, JJHCS_00224702. JJHCS_00225413. JJHCS_00224800 (attaching JJHCS_00224802). . JJHCS_00224577 (attaching JJHCS_00224578). These documents indicate that Burden had oversight over and directly worked on the terms and conditions of J&J's copay assistance programs.

SaveOn requests that J&J's searches the files of these four individuals using the following search term for the time period January 1, 2009 through April 1, 2016:

- (CarePath OR "Savings Program" OR "Rebate Program" OR "Access Program" OR "copay assistance" OR Instant Savings Card OR YOU&I OR RemiStart OR AccessOne OR Darzalex OR Imbruvica OR Opsumit OR Remicade OR Simponi OR SimponiOne OR Stelara OR Sylvant OR SylvantOne OR Tracleer OR Uptravi OR Ventavis OR Zytiga OR ZytigaOne OR Invokana OR Xarelto OR Olysio OR Risperdal OR Invega) w/50 ((term* w/3 condition) OR "T&C" or "TNC" OR "other offer" OR "coupon*" OR "discount*" OR "prescription savings card*" OR "free trial")

Julia Long
April 19, 2024

If J&J objects to adding any of these custodians or running this search term based on burden, SaveOn requests that J&J provide hit counts for each custodian and for each individual term within the string. Please also tell us if J&J preserved the custodial documents of these found individuals before 2013 and, if not, please explain the circumstances of the documents' destruction.

*Fifth*, in its July 17, 2023 letter, J&J offered to add Adrienne Minecci as a custodian for the time period from August 1, 2015 through April 1, 2016, stating that she was involved "in the drafting and revision of the CarePath terms and conditions referenced in the Complaint" and possessed relevant documents going back to at least August 1, 2015. Dkt. 146 at 25. During that time, she was involved in the transition to combine the predecessor programs "under the CarePath Umbrella." *Id*. SaveOn accordingly asks that J&J run the following search term over Minecci's documents from August 1, 2015 through April 1, 2016:

- (CarePath OR "Savings Program" OR "Rebate Program" OR "Access Program" OR "copay assistance" OR Instant Savings Card OR YOU&I OR RemiStart OR AccessOne OR Darzalex OR Imbruvica OR Opsumit OR Remicade OR Simponi OR SimponiOne OR Stelara OR Sylvant OR SylvantOne OR Tracleer OR Uptravi OR Ventavis OR Zytiga OR ZytigaOne OR Invokana OR Xarelto OR Olysio OR Risperdal OR Invega) w/50 ((term* w/3 condition) OR "T&C" or "TNC" OR "other offer" OR "coupon*" OR "discount*" OR "prescription savings card*" OR "free trial")

We request a response by April 26, 2024. We reserve all rights and are available to meet and confer.

Best,

/s/ Elizabeth Snow

Elizabeth H. Snow
Associate

4