# EXHIBIT A

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

December 19, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

      Re:    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,***
           ***Express Scripts, Inc., and Accredo Health Group, Inc.***
           **No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

      Save On SP, LLC ("SaveOn") moves to compel Johnson & Johnson Health Care Systems Inc. ("JJHCS" and, with its affiliates, "J&J") to produce documents concerning the development and calculation of J&J's projections of its spending on CarePath.

      J&J alleges that SaveOn "cause[d] JJHCS damage by making it pay more money from CarePath than it otherwise would have for a purpose JJHCS did not intend." Am. Compl. ¶ 186; *see also id.* ¶¶ 192, 203; Compl. ¶¶ 110, 115. J&J thus squarely put at issue how much it intended to pay in copay assistance, and why. SaveOn has served multiple RFPs to elicit this information. Ex. 1 at 16-17 (SaveOn's First Set of RFPs, RFP No. 29); Ex. 2 at 10 (SaveOn's Ninth Set of

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                    Page 2

RFPs, RFP No. 94). Yet J&J has produced nothing on topic but ███████████████,

with no explanation of how those numbers were calculated or by whom. This is plainly insufficient.

Your Honor should compel J&J to produce the data underlying these projections and the "business

plan" documents that will show how and why J&J came up with these projections.

## Background

Early in discovery, SaveOn asked J&J to produce documents and communications con-

cerning "JJHCS's actual and projected annual costs for CarePath." Ex. 1 at 16-17. In response,

J&J produced ████████████████████████████████████████████

████████████████. *See* Ex. 3 (JJHCS_00130090). ████████████████ are quite limited;

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████:



Hon. Freda L. Wolfson                                                                                    Page 3

Ex. 3.[1]

   J&J refuses to produce the data underlying the ███████████, asserting that produc-

ing the ████████████ is sufficient. *See, e.g.*, Ex. 6 at 1 (Oct. 9, 2024 Ltr.) (citing

JJHCS_00130090). SaveOn explained that the ████████████ do not appear to be a full or

contemporaneous record of J&J's forecasted copay assistance spending, ████████████████

████████████████████████████████████████. Ex. 7 at 1

(Oct. 1, 2024 Ltr.). After SaveOn raised this, J&J confirmed that the ██████████████ were

████████████████████████████████████████████████████████

████████████████████████ Ex. 4 at 1. But J&J still refuses to produce the underlying

data. It also will not provide basic information about how the underlying data was created and

updated, who maintained it, or how it was used, despite SaveOn's multiple requests for that infor-

mation. *See* Ex. 7; Ex. 8 (Aug. 23, 2024 Ltr.); Ex. 9 (Oct. 17, 2024 Ltr.).

   J&J also produced documents revealing that ████████████████████████████

████████████████████████. *See, e.g.*, Ex. 10 at -322, -325

(JJHCS_00183322) (████████████████████████████████████████

████████████████████████████████████████████████████████

SaveOn then served its RFP No. 94, requesting "[d]ocuments sufficient to show business plans

reflecting the total Co-Pay Spend, both anticipated and actual, for each Janssen Drug." Ex. 2 at 10.

This request sought documents that would show J&J's final projections for its copay assistance

---

[1] At SaveOn's request, J&J subsequently refreshed its production of the ████████████ to
extend to the discovery cut-off date of November 7, 2023, which had been "inadvertently excluded
from a prior production." Ex. 4 at 1 (Sept. 27, 2024 Ltr.); *see also* Ex. 5 (excerpt of
JJHCS_00283569).

Hon. Freda L. Wolfson                                                                      Page 4

spending, how J&J developed those projections, how much J&J intended or planned to spend in

light of various assumptions, and key decisionmakers' involvement in the process.

J&J refuses to produce business plans showing why and how it calculated and developed

its copay assistance spending projections, again asserting that the ███████████ are suffi-

cient. *See* Ex. 11 at 6-7 (J&J's R&Os to SaveOn's 9th RFPs) (citing JJHCS_00130090); Ex. 4

at 1-2; Ex. 6 at 1; Ex. 12 at 1-2 (Nov. 1, 2024 Ltr.). SaveOn explained that RFP No. 94 seeks not

only "the raw dollar value of J&J's projected copay spend" but also "the business plans or similar

documents showing how [J&J] came up with these projections and presented them to decisionmak-

ers." Ex. 8 at 2. But J&J refuses to produce such documents, which SaveOn requires to assess

J&J's formulation of its copay spend projections—including whether those projections fully ac-

counted for the increase in benefit plans employing accumulators, maximizers, or SaveOn—and

to paint an accurate portrait of J&J's intent with respect to its CarePath spending.

The parties have met and conferred and are at impasse. Ex. 13 (Nov. 26, 2024 Ltr.).

<u>Argument</u>

Documents concerning J&J's development and calculation of its projected copay assis-

tance spending are centrally relevant to this case. J&J's purported damages are premised on its

allegation that J&J spent more on CarePath than it intended to—that SaveOn "cause[d] JJHCS

damage by making it pay more money from CarePath than it otherwise would have for a purpose

JJHCS did not intend." Am. Compl. ¶ 186; *see also id.* ¶¶ 192, 203. The data and documents that

SaveOn seeks go directly to how much copay assistance J&J "intend[ed]" to spend, and how it

determined those amounts.

**I.    The Data Underlying J&J's Copay Assistance Projections Are Relevant**

Because the ███████████ are relevant, there can be no serious dispute that the data

and information underlying them is equally relevant. SaveOn needs this additional information to

determine how J&J calculated its projected copay assistance spending and to test the veracity and

reasonableness of the ▮▮▮▮▮▮▮▮.

The Federal Rules require J&J to produce this underlying data. While the Rules permit

flexibility in the form of production, *see* Fed. R. Civ. P. 34(b)(2)(E)(i)-(ii), they strictly require

"production of ***entire*** documents—not particular pictures, graphics, paragraphs, sentences, or

words," *Rodriguez-Ocasio v. Midland Credit Mgmt., Inc.*, 2019 WL 3821769, at *2 (D.N.J.

July 23, 2019) (emphasis added) (quotation marks omitted); *accord Columbus Life Ins. Co. v. Wil-*

*mington Tr., N.A.*, 344 F.R.D. 207, 216-17 (D.N.J. 2023). Courts have thus repeatedly held that

parties cannot unilaterally alter, withhold, or redact portions of relevant documents on the grounds

that they deem those portions irrelevant. *See Lawson v. Praxair, Inc.*, 2021 WL 12102367, at *2

(D.N.J. Mar. 26, 2021) (collecting cases) (holding that defendant could not "unilaterally decide

which portions [of a document] are relevant and which are not"); *Columbus Life Ins. Co.*, 344

F.R.D. at 216 (holding that "unilateral redactions based on one party's subjective view of relevancy

are improper"); *Cyris Jewels v. Casner*, 2016 WL 2962203, at *5 (E.D.N.Y. May 20, 2016) (find-

ing "there is no right to make substantive unilateral redactions"); Wright & Miller, Fed. Prac. &

Proc. § 2213 (3d ed.) ("[Rule 34] calls for production of entire documents" and the "producing

party has no unilateral right to withhold the portions of documents it concludes are not relevant.").

Just as J&J could not produce only portions of relevant documents, *see, e.g.*, *Columbus Life Ins.*

*Co.*, 344 F.R.D. at 216-17, it cannot produce a barebones series of financial projections while

withholding the data underlying those projections.

J&J has no valid basis for withholding this data. J&J asserted in negotiations that because

the ▮▮▮▮▮▮▮▮ were ▮▮▮▮▮▮▮▮▮▮▮▮ it need not produce anything

else. Ex. 12 at 1. In support of that position, J&J cited only two cases, neither of which let parties

withhold relevant data, as J&J does here.[2] In any event, J&J has not explained what ████ it

pulled the ███████████ from, it has not stated what purportedly irrelevant information the

████ t contains, and it has not shown that the ███████████" that it could not produce

the whole thing. *See* Exs. 7-9 (requesting information from J&J about the dataset); Ex. 12 (J&J

refusing to say how the dataset was created and updated, who was responsible for maintaining it,

what it contains, or how it was used). It would be difficult for J&J to justify its conduct based on

the volume of data, as the parties have already produced, and continue to produce, hundreds of

thousands of lines of claims data and call records information. J&J thus presents no legal or factual

basis for withholding the data underlying the ███████████ .

## II.    J&J's Business Plans Are Relevant

The ███████████ and their underlying data likely will not show how and why J&J

developed its projected copay assistance spending—but J&J has produced numerous documents

showing ███████████ . *See, e.g.*, Ex. 10 at -322, -325 (████████████

████████████████████████████████████

████████████████████████████████

████████ ███ ███████ ███ ████ ████); Ex. 14 at -327-28

(JJHCS_00183327) (████████████████████████████

---

[2] The two cases that J&J cited in negotiations dealt with the admissibility of database excerpts as business records, not with parties' production obligations under Rule 34. Ex. 12 at 1-2 (quoting *Health All. Network, Inc. v. Cont'l Cas. Co.*, 245 F.R.D. 121, 129 (S.D.N.Y. 2007); *aff'd*, 294 F. App'x 680 (2d Cir. 2008)); *see also id.* at 1 (citing *Branch v. Gov't Emps. Ins. Co.*, 286 F. Supp. 3d 771, 778 (E.D. Va. 2017)). These cases suggested that parties might produce data excerpts, in lieu of producing full databases, on the basis that the producing party should not be required to turn over other, "**non-relevant** data." *Health All. Network, Inc.*, 245 F.R.D. at 129 (emphasis added). That dicta has no bearing here, where J&J withholds **relevant** data regarding its copay assistance spending projections.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████); Ex. 15 (JJHCS_00259917) ██████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████).

    This additional information is key. If, for instance, J&J projected that it would spend more in copay assistance for patients on accumulator or maximizer plans, but did nothing to decrease that spending, then J&J likely "intended" to spend what it projected, and its damages would be zero. Discovery shows that J&J's business plans likely speak to this issue. *See* Ex. 16 at -271-273 (JJHCS_00222271) (███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ Ex. 17 at -881 (JJHCS_00270881) (███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████

    SaveOn's request for these business plans, to discover J&J's intent regarding its copay assistance spending, falls squarely within Judge Waldor's prior orders. June 29, 2023 Text Order (Dkt. 127) (ordering SaveOn to "produce its business plan documents to [J&J] for the years 2016 through 2022"); *see also* June 2, 2023 Joint Letter (Dkt. 110) at 2 (J&J arguing that SaveOn must produce its business plans because they "present the key strategic information about SaveOnSP's

Hon. Freda L. Wolfson                                                                  Page 8

operations in one place and in SaveOnSP's own words"); June 27, 2023 Tr. (Dkt. 131) at 9:3-4

(J&J arguing that SaveOn must produce all business plans because "[t]he business plans show

what [SaveOn's] intent is").

### III.    J&J Cannot Withhold This Relevant Information

While J&J asserted during the parties' negotiations that its production of the ███████

████  is sufficient, *see, e.g.*, Ex. 6 at 1 (citing JJHCS_00130090), this is patently not the case.

The ████████████  do not show the full data from which those projections were derived,

which SaveOn needs to understand, contextualize, and scrutinize J&J's projections. *See supra*

pp. 4-6. Even a complete production of this data will not explain how and why J&J developed its

projections or the assumptions and inputs underlying them. SaveOn needs those explanations to

fully assess J&J's intent with respect to its CarePath spending—the basis of J&J's alleged dam-

ages—and those explanations are likely to be found in J&J's business plans.

J&J also wrongly stated in negotiations that SaveOn's request is barred by Your Honor's

prior orders. *See* Ex. 6 at 1 (citing Apr. 25, 2024 Order (Dkt. 264) at 5–6; Feb. 6, 2024 Order (Dkt.

192) at 17–24); Ex. 12 at 1 (citing Dkt. 192 at 19–22). J&J points to a February 6, 2024 Order in

which Your Honor held that (1) "the changes that Plaintiff contemplated implementing" to the

CarePath budget were not relevant, so communications about them were not relevant, Dkt. 192 at

19; and (2) J&J's return on investment for CarePath was not relevant to J&J's damages under NY

GBL § 349, or its theory of public harm for its GBL claim, *id.* at 21-22; *see also* Dkt. 264 at 5. But

SaveOn does not seek documents on contemplated changes or J&J's return on investment. It seeks

information showing the details of J&J's copay assistance spending projections and J&J's reasons

for those projections—exactly the type of information that J&J told Your Honor it would produce

but continues to withhold. Dkt. 192 at 16 (detailing the types of "documents and communications

that bear on the financial aspects of CarePath," that J&J committed to producing, "including

JJHCS's actual and projected annual costs for CarePath").

***

Your Honor should compel J&J to produce: (1) all data and information relied on in calcu-

lating the ███████████████ ; and (2) documents sufficient to show business plans reflecting

J&J's anticipated and actual copay assistance spending for each Janssen Drug.

We appreciate Your Honor's attention to this matter.

Respectfully submitted,

/s/ *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# Exhibit 1

David Elsberg
Andrew R. Dunlap
Meredith Nelson
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com

E. Evans Wohlforth, Jr.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JMV) (CLW) <br><br> **DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

To:    Jeffrey J. Greenbaum, Esq.
       SILLS CUMMIS & GROSS, P.C.
       One Riverfront Plaza
       Newark, New Jersey 07102
       973-643-7000

1

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New

*Attorneys for Plaintiff Johnson & Johnson
Health Care Systems Inc.*

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26 and 34,

Defendant Save On SP, LLC ("SaveOnSP") requests Plaintiff Johnson & Johnson Health Care

Systems Inc. ("JJHCS"), to produce for inspection and copying the documents listed in these Re-

quests, to the office of the undersigned within 30 days of being served or at a time and place mu-

tually agreed by the parties or ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that this demand for production of documents

shall be deemed continuing in nature so as to require supplemental responses if Plaintiff or Plain-

tiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's

responses are served.

Dated:  November 11, 2022              By:  /s/ Andrew R. Dunlap
                                            David Elsberg
                                            Andrew R. Dunlap
                                            Meredith Nelson
                                            SELENDY GAY ELSBERG, PLLC
                                            1290 Avenue of the Americas
                                            New York, NY 10104
                                            212-390-9000
                                            deslberg@selendygay.com
                                            adunlap@selendygay.com
                                            mnelson@selendygay.com

                                            E. Evans Wohlforth, Jr.
                                            GIBBONS P.C.
                                            One Gateway Center
                                            Newark, NJ 07102-5310

2

973-596-4500
ewohlforth@gibbonslaw.com

*Attorneys for Defendant Save On SP, LLC*

## **DEFINITIONS**

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses.

3.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.      "Action" means this litigation styled as "*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (JMV) (CLW).

6.      "Affordable Care Act" means the Patient Protection and Affordable Care Act, Pub. L. 148, 124 Stat. 119.

7.      "All," "any," and "each" mean any and all.

8.      "And" and "or" are construed both conjunctively and disjunctively.

9.      "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

4

10.    "CarePath Care Coordinator" means any person or entity encompassed by that term as used on CarePath's "Contact Us" webpage,[1] as well as any person responsible for communicating with patients who contact CarePath via an advertised help number (*e.g.*, 877-CarePath).

11.    "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

12.    "Complaint" means JJHCS's May 4, 2022 Complaint [ECF No. 1] or any subsequently amended Complaint in this Action.

13.    "Copay Accumulator Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

14.    "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

15.    "Copay Maximizer Service" means (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay

---

[1] *See* Contact Us, https://www.janssencarepath.com/patient/contact-us (last visited October 25, 2022).

assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maxi-
mizer."

16.    "Document" means "document" and "electronically stored information" as defined
in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within
the meaning of this term.

17.    "ESI" means "electronically stored information" as defined in the Federal Rules of
Civil Procedure.

18.    "Essential Health Benefit" means, in the context of prescription drug benefits at
issue in this case, (a) a prescription drug benefit that satisfies the requirement for a plan to provide
essential prescription drug benefits under the Affordable Care Act or that is treated as such by a
plan;[2] and (b) any definition JJHCS ascribes to the term "essential health benefit" as used in the
Complaint.

19.    "Identify" means (a) with respect to persons, to give, to the extent known, the per-
son's full name, present or last known address, and when referring to a natural person, additionally,
the present or last known place of employment; (b) with respect to documents, either (i) to give,
to the extent known, the (A) type of document; (B) general subject matter; (C) date of the docu-
ment; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together
with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

20.    "Including" means including but not limited to.

21.    "Janssen" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen
Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and
successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents,

---

[2] 45 C.F.R. §§ 156.122, 156.115.

representatives, directors, officers, employees, committees, attorneys, accountants, and all persons

or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc.,

Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

22.    "Janssen Drug" means any Specialty Drug manufactured or sold by Janssen from

any time for which patients may receive copay assistance, including BALVERSA, DARZALEX,

DARZALEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, REMICADE, RYBREVANT,

SIMPONI, STELARA, TRACLEER, TREMFYA, UPTRAVI, and ZYTIGA, as well as any other

specialty drugs that JJHCS asserts are at issue in this Action.

23.    "JJHCS's Employee Health Plans" means any health plan offered by JJHCS or

Janssen to its employees.

24.    "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all pre-

decessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or depart-

ments, agents, representatives, directors, officers, employees, committees, attorneys, accountants,

and all persons or entities acting or purporting to act on behalf or under the control of Johnson &

Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil

Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals,

Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development,

LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc.,

Janssen BioPharma LLC, and Janssen Research & Development LLC.

25.    "JJHCS Access Group" means the team operating within and for JJHCS under this

or a substantially similar name (*i.e.*, Access Group, Access Team, or Access Division).

26.    "<u>JJHCS Health Economics Group</u>" means the team operating within and for JJHCS under this or a substantially similar name (*i.e.*, Health Economics Group, Health Economics Team, or Health Economics Division).

27.    "<u>JJHCS Hub Entity</u>" means any entity retained or utilized by JJHCS to administer, in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of such an entity.

28.    "<u>JJHCS Outcome Group</u>" means the team operating within and for JJHCS under this or a substantially similar name (*i.e.*, Outcome Group, Outcome Team, or Outcome Division).

29.    "<u>Lash Group</u>" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

30.    "<u>Non-Essential Health Benefits</u>" means, in the context of prescription drug benefits at issue in this case, (a) any prescription drug benefit covered by a plan in excess of those necessary for a plan to satisfy the requirements for providing essential prescription drug health benefits under the Affordable Care Act[3] and designated by the plan as a non-essential health benefit; and (b) any definition JJHCS ascribes to the term "non-essential health benefits" as used in the Complaint.

31.    "<u>Parties</u>" means "SaveOnSP" and "JJHCS."

32.    "<u>Patient</u>" means a natural person prescribed or eligible to be prescribed any Janssen Drug, whether or not they use CarePath or are a participant in a health plan advised by SaveOnSP.

---

[3] *See* 45 C.F.R. §§ 156.122, 156.115.

33.     "Person" means a natural person or legal entity including any business or governmental entity or association.

34.     "Regarding" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

35.     "Request" means any of these Requests for Production.

36.     "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Save On SP, LLC.

37.     "SaveOnSP IPBC Video" means the IPBC and SaveOnSP training video created by Express Scripts as defined in Complaint ¶ 9.

38.     "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

39.     "Stelara" means the Janssen Drug sold under that name.

40.     "Tremfya" means the Janssen Drug sold under that name.

41.    "TrialCard" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

42.    "You" and "Your" means JJHCS.

## INSTRUCTIONS

1.    These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 34(a)(1).

2.    These Requests seek production of nonprivileged material. Fed. R. Civ. P. 26(b)(1).

3.    These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4.    For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 34(b)(2)(C).

5.    If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

6.    If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest. Fed. R. Civ. P. 34(b)(2)(C).

7.    If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 26(b)(5)(A)(ii), including by indicating whether any document exists regarding the information

10

requested and stating, to the extent the privilege is being asserted in connection with a claim or

defense governed by state law, the state privilege rule being invoked, Local Rule 34.1.

8.      If a document responsive to a Request was once in your possession, custody, or

control and has since been lost or destroyed, provide (a) a detailed description of the document;

(b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the

date on which the document was prepared or initially received; (e) the date on which the document

was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction, the

reason for its destruction, the name of the person who requested or authorized its destruction, and

the name of the person who destroyed it.

9.      Produce documents as they are kept in the usual course of business. Fed. R. Civ.

P. 34(b)(E)(i). For each document, identify the file or location from which it was taken and the

name, affiliation, and position of the producing custodian or non-custodial source.

10.     Produce electronically stored information in the form and manner required by any

agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of produc-

tion, consult SaveOnSP for further instruction.

11.     Produce each document in its entirety, without abbreviation or redaction, including

all attachments or materials attached thereto.

12.     Produce all versions of each document that are not identical to the original docu-

ment (including all drafts) whether due to handwritten notations, revisions, enclosures, attach-

ments, underlining, highlighting, or otherwise.

13.     These Requests are deemed continuing. If after responding to any Request you learn

that your response is in some material respect incomplete or incorrect, supplement or correct your

response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).

## TIME PERIOD

Unless otherwise specified, these Requests cover from and including January 1, 2017, through the present.

## REQUESTS

1.    From January 1, 2009 through the present, Documents sufficient to show JJHCS's organizational structure, including organizational charts.

2.    From January 1, 2009 through the present, Documents sufficient to show Janssen's organizational structure, including organizational charts.

3.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of each JJHCS Hub Entity.

4.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of any group or division within JJHCS, Janssen, or any JJHCS Hub Entity involved in developing, managing, marketing, or administering CarePath or any other copay assistance program offered for Janssen Drugs, and to identify their employees.

5.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of JJHCS's Health Economics, Access, and Outcome Groups and to identify employees working in those groups.

6.    From January 1, 2009 through the present, Documents sufficient to show the organizational structure of the drug product team for each Janssen Drug, and to identify employees working on those teams.

7.    From January 1, 2009 through the present, documents sufficient to identify all natural persons with decisionmaking authority over the sale or marketing of Janssen Drugs.

8.    All Documents and Communications with or regarding SaveOnSP.

12

9.     All Communications by JJHCS or Janssen with any Patient regarding SaveOnSP, including any Documents regarding those Communications.

10.     All Documents and Communications regarding any presentation, document, or information regarding SaveOnSP referenced in the Complaint, including the "SaveOnSP IPBC Video" and the materials referenced in Complaint ¶¶ 82-88.

11.     From January 1, 2009 through the present, all Documents and Communications regarding the development, management, and marketing of CarePath or any other copay assistance program offered for Janssen Drugs, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 6-7, 36-49.

12.     From January 1, 2009 through the present, all Documents and Communications regarding CarePath's terms and conditions, including Documents and Communications regarding (a) JJHCS's allegations in Complaint ¶¶ 3, 8, 18-26, 102-103, 108; (b) all CarePath terms and conditions for each Janssen Drug; (c) JJHCS's decision to revise any of its CarePath terms and conditions for any Janssen Drug; and (d) JJHCS's understanding of the term "offer" or "health plan" as used in CarePath's terms and conditions.

13.     From January 1, 2009 through the present, all Documents and Communications regarding CarePath's requirement that Patients enrolled in CarePath make any payments towards Janssen Drugs, including Documents and Communications regarding JJHCS's basis for setting the amounts of those payments and JJHCS's allegations in Complaint ¶¶ 48-49, 70, 89.

14.     From January 1, 2015 through the present, all Documents and Communications regarding JJHCS's or any JJHCS Hub Entity's understanding of commercial health plans' ability to designate specialty drugs as Essential Health Benefits or Non-Essential Health Benefits under

the Affordable Care Act and its regulations, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 9-10, 43, 53-59, 71, 79.

15.    All Documents and Communications regarding SaveOnSP's communications with Patients regarding CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 60-67, 109.

16.    All Documents and Communications regarding SaveOnSP's provision of services to qualified high deductible or health savings account plans, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 72.

17.    All Documents and Communications regarding JJHCS's payment of copay assistance funds to or on behalf of Patients enrolled in qualified high deductible or health savings account plans.

18.    All Documents and Communications regarding any allegedly misleading or confusing communications between SaveOnSP and Patients, including Documents and Communications regarding JJHCS's allegations in Complaint ¶¶ 13, 75-77, 85-88.

19.    All Documents and Communications regarding any alleged stress or confusion caused by SaveOnSP to any member of the public, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

20.    All Documents and Communications regarding any publicly distributed material (including, for example, articles, op-eds, white papers, and online postings) regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services, including Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect involvement with such material and JJHCS's, Janssen's, or any JJHCS Hub Entity's direct or indirect funding of the authors, publishers, or distributors of such material.

14

21.    All Documents and Communications regarding any advocacy to or communication with any governmental or regulatory body regarding SaveOnSP, Copay Accumulator Services, or Copay Maximizer Services.

22.    All Documents and Communications regarding any alleged harm caused by Save-OnSP to any Patient by allegedly making their healthcare more expensive, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

23.    All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of CarePath, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

24.    All Documents and Communications regarding how SaveOnSP directly or indirectly affects or threatens the financial viability of any Copay Assistance Program other than Care-Path, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 114.

25.    All Documents and Communications regarding any alleged harm caused by Save-OnSP to JJHCS, including Documents and Communications regarding JJHCS's allegations in Complaint ¶ 110, 115.

26.    All Documents and Communications regarding JJHCS's, Janssen's, or any JJHCS Hub Entity's payment of any Patient's costs, including those that accumulate towards the Patient's deductible or out-of-pocket maximum.

27.    All Documents and Communications regarding the "internal JJHCS data" discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn.

28.    From January 1, 2009 through the present, for each Janssen Drug for each year, Documents sufficient to show:

15

a.    all Patients receiving the Janssen Drug;

b.    the number of fills of the Janssen Drug received by each such Patient;

c.    the dosage of the Janssen Drug received by each such Patient for each fill;

d.    the projected number of Patients, average number of fills, and average dosage for the Janssen Drug;

e.    the cost to manufacture the Janssen Drug;

f.    the sales and marketing budget for the Janssen Drug;

g.    the price of the Janssen Drug;

h.    the revenue received by JJHCS from the Janssen Drug;

i.    all Patients enrolled in the CarePath program for the Janssen Drug;

j.    the dates on which each Patient was enrolled in CarePath;

k.    the amounts of copay assistance funds that JJHCS offered to each Patient enrolled in CarePath;

l.    the Janssen Drugs for which each Patient enrolled in CarePath received copay assistance;

m.    all copay assistance payments that JJHCS made to or on behalf each Patient enrolled in CarePath; and

29.    From January 1, 2009 through the present, for each Janssen Drug for each year, all Documents and Communications regarding:

a.    JJHCS's determination of the amounts of copay assistance funds that JJHCS offered to Patients enrolled in CarePath, including the determination of the maximum program benefit per calendar year for the Janssen Drug;

16

b.      JJHCS's budget for CarePath, including the sales and marketing budget;

c.      JJHCS's actual and projected annual costs for CarePath;

d.      JJHCS's use of or accounting for unused CarePath funds;

e.      the impact of the Affordable Care Act on JJHCS's CarePath budget or funding, including the impact of laws and regulations regarding out-of-pocket maximums;

f.      JJHCS's and Janssen's revenue and revenue projections from fills by Patients enrolled in CarePath;

g.      the impact of CarePath on Janssen's sales of any Janssen Drug;

h.      the impact of CarePath on JJHCS's or Janssen's gross to net calculations;

i.      JJHCS's or Janssen's actual and projected return on investment for CarePath; and

j.      any analysis of the adherence rates of Patients enrolled in CarePath to Janssen Drugs, including such Patients enrolled in plans advised by SaveOnSP.

30.      From January 1, 2009 through the present, for each year for each Janssen Drug, all Documents and Communications regarding the basis for Janssen's decision to raise or lower the price of the Janssen Drug, including labor or manufacturing costs or the increase in efficacy of the Janssen Drug.

31.      All Documents and Communications regarding JJHCS's attempts to limit or eliminate the amount of CarePath copay assistance funds available to Patients using Stelara or Tremfya based on whether the Patients' plans allegedly reduce or eliminate Patients' out-of-pocket costs, including Documents and Communications regarding JJHCS's attempts to limit or eliminate the

17

availability of CarePath copay assistance funds available to Patients enrolled in health plans advised by SaveOnSP.

32.     All Documents and Communications regarding any offer by JJHCS to provide to any Patient any CarePath funds greater than the amounts that JJHCS generally offers to CarePath Patients or to waive any limitation on or elimination of the amount of CarePath copay assistance funds available to a Patient.

33.     All Documents and Communications regarding JJHCS's attempts to identify health plans advised by SaveOnSP or Patients enrolled in such plans.

34.     From any time, all Documents and Communications regarding JJHCS's or Janssen's negotiations or agreements regarding the potential use of SaveOnSP's services, or the services of any Copay Maximizer Service or Copay Accumulator Service, for JJHCS's Employee Health Plans, including JJHCS's abandonment of those negotiations or agreements.

35.     Documents sufficient to identify all JJHCS Hub Entities and CarePath Care Coordinators.

36.     From January 1, 2009 through the present, Documents sufficient to show the economic terms of JJHCS's retention of or agreements with any JJHCS Hub Entity or CarePath Care Coordinator regarding CarePath, including any assessment of the fair market value of those services.

37.     From January 1, 2009 through the present, documents sufficient to show the percentage of Patients who enroll in CarePath after being contacted by JJHCS, Janssen, any JJHCS Hub Entity, or any other third party authorized to advertise or market CarePath or Janssen Drugs.

38.     From January 1, 2009 through the present, all Documents and Communications received by JJHCS from any JJHCS Hub Entity or sent by JJHCS to any JJHCS Hub Entity regarding SaveOnSP or CarePath.

39.     All Documents and Communications received by JJHCS from any CarePath Care Coordinator regarding SaveOnSP.

40.     All Communications by any JJHCS Hub Entity or CarePath Care Coordinator with any Patient regarding SaveOnSP, including any Documents regarding those Communications and talk tracks or scripts prepared for use during those Communications.

41.     From January 1, 2015 through the present, all Documents and Communications relating to Copay Accumulator Services and Copay Maximizer Services and their effect on JJHCS's return on investment for copay assistance dollars.

42.     From January 1, 2015 through the present, all Documents and Communications relating to JJHCS's or any JJHCS Hub Entity's understanding of the terms "copay accumulator" and "copay maximizer."

43.     All Documents and Communications concerning non-medical switching by participants of plans that implement SaveOnSP's services, a Copay Accumulator Service, or a Copay Maximizer Service.

44.     To the extent not requested above, Documents and Communications of any JJHCS Hub Entity or CarePath Care Coordinator regarding the topics of all Requests listed above.

45.     JJHCS's, Janssen's, any JJHCS Hub Entity's, and any CarePath Care Coordinator's document retention policies.

46.     Complete data dictionaries for any data that You produce.

47.     From any time, all Documents and Communications regarding this Action provided to you by any person or entity other than SaveOnSP, including in response to subpoenas served in this Action.

48.     To the extent not requested above, from any time, all Documents and Communications upon which you may rely in this Action.

# Exhibit 2

E. Evans Wohlforth, Jr.
Sabrina M. Galli
ROBINSON & COLE
666 3rd Avenue #20
New York, NY 10174
212-451-2954
ewolforth@rc.com
sgalli@rc.com

Philippe Z. Selendy
Andrew R. Dunlap
Meredith Nelson
Elizabeth Snow
SELENDY GAY, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JKS) (CLW) <br><br> **DEFENDANT'S NINTH REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

To:   Jeffrey J. Greenbaum, Esq.
      SILLS CUMMIS & GROSS, P.C.
      One Riverfront Plaza

Newark, NJ 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, NY

*Attorneys for Plaintiff Johnson & Johnson*
*Health Care Systems Inc.*

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26 and 34,

Defendant Save On SP, LLC ("SaveOnSP"), requests Plaintiff Johnson & Johnson Health Care

Systems Inc.'s ("JJHCS"), to produce for inspection and copying the documents listed in these

Requests, to the office of the undersigned within 30 days of being served or at a time and place

mutually agreed by the parties and ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that this demand for production of documents

shall be deemed continuing in nature so as to require supplemental responses if Plaintiff or Plain-

tiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's

responses are served.

2

Dated:  June 21, 2024                    By:  */s/ E. Evans Wohlforth, Jr.*
                                         E. Evans Wohlforth, Jr.
                                         Sabrina M. Galli
                                         ROBINSON & COLE
                                         666 3rd Avenue #20
                                         New York, NY 10174
                                         212-451-2954
                                         ewolforth@rc.com
                                         sgalli@rc.com

                                         Philippe Z. Selendy
                                         Andrew R. Dunlap
                                         Meredith Nelson
                                         Elizabeth Snow
                                         SELENDY GAY, PLLC
                                         1290 Avenue of the Americas
                                         New York, NY 10104
                                         212-390-9000
                                         pselendy@selendygay.com
                                         adunlap@selendygay.com
                                         mnelson@selendygay.com
                                         esnow@selendygay.com

                                         *Attorneys for Defendant Save On SP, LLC*

## **DEFINITIONS**

The following definitions apply to these Requests:

1.    The singular form of a word includes the plural, and vice versa.

2.    Any tense of a verb includes all tenses.

3.    Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.    Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.    "Accumulator" means a copay accumulator service, including (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

6.    "Action" means this litigation styled as "*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (JKS) (CLW).

7.    "All," "any," and "each" mean any and all.

8.    "And" and "or" are construed both conjunctively and disjunctively.

4

9.      "<u>Appeals Process</u>" means an appeal by a patient who believes that they have been incorrectly identified as a maximizer or accumulator patient.

10.      "<u>CarePath</u>" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

11.      "<u>Communication</u>" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

12.      "<u>Copay Assistance</u>" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

13.      "<u>Co-Pay Spend</u>" means the money that JJHCS intended to spend or spent on Copay Assistance, as used in JJHCS_00230997.

14.      "<u>Document</u>" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

15.      "<u>Identify</u>" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

16.      "<u>Including</u>" means including but not limited to.

5

17.    "Janssen" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

18.    "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Johnson & Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and Janssen Research & Development LLC. "JJHCS" also includes TrialCard to the extent that any J&J entity has legal control over its documents relating to its work for any J&J entity pursuant to a Master Services Agreement, per the Special Master's order of May 28, 2023; and any other entity to the extent that any J&J entity has legal control over its documents relating to its work for any J&J entity pursuant a contract containing provisions similar to those in the Master Service Agreement discussing the May 28 order.

19.    "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer, in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments,

agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of such an entity.

20.  "Lash Group" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

21.  "Maximizer" means copay maximizer service, including (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maximizer."

22.  "Patient" means a natural person prescribed or eligible to be prescribed any Janssen Drug, whether or not they use CarePath or are a participant in a health plan advised by SaveOnSP.

23.  "Person" means a natural person or legal entity including any business or governmental entity or association.

24.  "Regarding" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting,

7

touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

25.    "Request" means any of these Requests for Production.

26.    "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, represent-atives, directors, officers, employees, committees, attorneys, accountants, and all persons or enti-ties acting or purporting to act on behalf or under the control of Save On SP, LLC.

27.    "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

28.    "TrialCard" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representa-tives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

29.    "You" and "Your" means JJHCS.

## **INSTRUCTIONS**

1.    These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 34(a)(1).

2.    These Requests seek production of nonprivileged information. Fed. R. Civ. P. 26(b)(1).

3.    These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4.    For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 34(b)(2)(C).

5.      If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

6.      If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest. Fed. R. Civ. P. 34(b)(2)(C).

7.      If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 26(b)(5)(A)(ii), including by indicating whether any document exists regarding the information, requested and stating, to the extent the privilege is being asserted in connection with a claim or defense governed by the state law, the state privilege rule being invoked, Local Rule 34.1.

8.      If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction the reason for its destruction, the name of the person who requested or authorized its decision, and the name of the person who destroyed it.

9.      Produce documents as they are kept in the usual course of business. Fed. R. Civ. P. 34(b)(E)(i). For each document, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

10.     Produce electronically stored information in the form and manner required by any agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

11.     Produce each document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

12.     Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notation, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

13.     These Requests are deemed continuing. If after responding to any Request you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).

## TIME PERIOD

Unless otherwise specified, these Requests relate to the time period from and including April 1, 2016 through the present.

## REQUESTS

94.     Documents sufficient to show business plans reflecting the total Co-Pay Spend, both anticipated and actual, for each Janssen Drug.

95.     All Documents and Communications regarding any expenses incurred by JJHCS to mitigate any purported harm caused by SaveOnSP to JJHCS, including the expenditures of resources to identify members of plans advised by SaveOnSP.

96.     All Documents and Communications regarding setting $9,100 as the maximum benefit for Copay Assistance for any Janssen Drug, including any decision to not publish that maximum benefit publicly.

97.     All Documents and Communications regarding the Appeals Process.

Exhibit 3 Confidential

Filed Under Seal

# Exhibit 4



September 27, 2024

Jacob I. Chefitz
(212) 336-2474

**By Email**

Hannah R. Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***,
       **2:22-cv-02632 (JKS) (CLW)**

Dear Hannah:

We write in response to your August 23, 2024 letter regarding JJHCS's Responses and Objections to SaveOnSP's Ninth Set of Requests for Production ("JJHCS's Ninth Set of R&Os").

### I.    Request No. 94

Request No. 94 seeks "[d]ocuments sufficient to show business plans reflecting the total Co-Pay Spend, both anticipated and actual, for each Janssen Drug." SaveOnSP's Ninth Set of RFPs at 10. As JJHCS explained in its R&Os, JJHCS has already produced to SaveOnSP the forecasted and actual co-pay spend from the drugs at issue in this case. *See* JJHCS's Ninth Set of R&Os at 7. To provide one example, JJHCS pointed in its R&Os to JJHCS_00130090, ███████
███████████████████████████████████████████████████████████.

Your letter first takes issue with JJHCS 00130090, claiming that ████████████
███████████████████████████████████████████████████ Aug. 23, 2024 Ltr. from H. Miles to J. Long at 1. But, ███████████████████████████████████████
██████████████, we understand that this is so only because █████████████████ in JJHCS_00130090 was pulled on or around that date from a larger dataset containing financial projections that JJHCS maintains in the normal course.

Your letter also notes that "JJHCS_00130090 ████████████████████████████████
██████ As part of the refresh of discovery through November 7, 2023, JJHCS collected data covering the July 1, 2022 to November 7, 2023 window; that data, however, was inadvertently excluded from a prior production due to a technical error. JJHCS will be producing it next week.

More broadly, SaveOnSP insists that it is entitled to "all data and analysis underlying" JJHCS's forecasted spend; "business plans or similar documents showing how it came up with these projections and presented them to decisionmakers"; and "drafts or changes to the business plan." These new demands are well outside the scope of Request No. 94. And SaveOnSP

Hannah R. Miles, Esq.
September 27, 2024
Page 2

is not entitled to such documents in any event, as Judge Wolfson has repeatedly ruled. *See* Apr. 25, 2024 Order, Dkt. No. 264, at 5–6; Feb. 6, 2024 Order, Dkt. No. 192, at 17–24. As Judge Wolfson put it, "[i]t matters not—for mitigation purposes—how [JJHCS] came to [its] budgetary decisions." Dkt. No. 264 at 5.

Your letter argues that JJHCS put its business plans at issue, citing to JJHCS's statement in the parties' June 2, 2023 joint letter that *SaveOnSP*'s business plans are relevant because they "will present the key strategic information about SaveOnSP's operations in one place and in SaveOnSP's own words." June 2, 2023 Joint Letter at 2. But, as JJHCS further explained in the very next sentence of that letter, SaveOnSP's business plans are relevant "[b]ecause SaveOnSP's diversion of patient assistance funds is the whole point of its business operations." *Id.* In other words, SaveOnSP's business plans are relevant because SaveOnSP's business is the subject matter of this case. That is not the case for JJHCS's business plans.

SaveOnSP also asserts that JJHCS's business plans are relevant because JJHCS has alleged that "SaveOnSP knowingly and proximately causes JJHCS damage by making it pay more money from CarePath than it otherwise would have for a purpose JJHCS did not intend." Compl. ¶ 110. But that allegation—that JJHCS simply does not intend for CarePath funds to be used to enrich SaveOnSP and its partners—does not make relevant "all data and analysis" underlying JJCHS's projected and actual co-pay spend.

## II.    Request No. 95

Request No. 95 seeks "Documents and Communications regarding any expenses incurred by JJHCS to mitigate any purported harm caused by SaveOnSP to JJHCS, including the expenditures of resources to identify members of plans advised by SaveOnSP." SaveOnSP's Ninth Set of RFPs at 10. In response to this request, JJHCS agreed to produce non-privileged documents "sufficient to show the expenses incurred by JJHCS to identify patients enrolled in the SaveOnSP Program, to the extent such documents exist and can be located after a reasonable search." JJHCS's Ninth Set of R&Os at 7. Some of these documents were produced long ago. *See, e.g.*, JJHCS_00001497 at -1504. JJHCS is in the process of collecting additional responsive documents and will provide a further update once that process is complete.

SaveOnSP states that it "understands [JJHCS] to be representing that the only mitigation effort it undertook—and therefore will seek damages in conjunction with—was the identification of patients 'enrolled in the SaveOnSP Program.'" Ltr. at 3 (quoting JJHCS's R&Os at 7). JJHCS has not represented that its mitigation efforts were limited to identifying patients enrolled in the SaveOnSP Program; rather, as alleged in the Proposed Amended Complaint, JJHCS simply seeks special damages for its "expenditure of resources to identify patients in the SaveOnSP Program and thereby preserve the integrity of CarePath and to ensure that CarePath funds are utilized for their authorized purpose pursuant to the CarePath terms and conditions." Proposed A. Compl. ¶ 193; *see also* July 15, 2024 Hearing Tr. at 102 (explaining that "[t]he inquiry [for special

Hannah R. Miles, Esq.
September 27, 2024
Page 3

damages] is about damage to [JJHCS]. It's not about mitigation of damages"). That JJHCS seeks
such special damages does not mean that JJHCS has undertaken no other mitigation efforts.[1]

SaveOnSP further states that JJHCS must also "produce communications regarding
*all* its expenses incurred through its attempt to mitigate." Aug. 23, 2024 Ltr. from H. Miles to J.
Long at 3 (emphasis in original). But again, as Judge Wolfson has admonished, SaveOnSP "does
not require communications as to why" JJHCS took the actions it did with respect to mitigation.
*See* Dkt. No. 264 at 5. And, even so, JJHCS has produced—and is continuing to produce—
numerous communications related to its mitigation efforts, including extensive discovery related
to the CAP program, as well as documents relating to work done by several JJHCS vendors. *See*
JJHCS's Sep. 9, 2024 Opp. to SaveOnSP's Aug. 30, 2024 Mot. to Compel at 2 n.2. Any further
discovery of mitigation-related communications is unwarranted.

## III.    Request No. 96

Request No. 96 seeks "Documents and Communications regarding setting $9,100
as the maximum benefit for Copay Assistance for any Janssen Drug, including any decision to not
publish that maximum benefit publicly." SaveOnSP's Ninth Set of RFPs at 10. SaveOnSP first
served a discovery request on these types of documents in July 2023, and JJHCS agreed to produce
documents sufficient to show why this change was made in response to SaveOnSP's Request No.
52. *See* JJHCS's R&OS to SaveOnSP's Third Set of Requests for Production at 6–7. As
JJHCS_00130092 makes clear, ███████████████████████████████████████
███████████████████████████████████████████████████████████████████

As stated in its R&Os, JJHCS is still willing to meet and confer on a narrow
supplemental search that targets documents and communications responsive to Request No. 96.
But the search proposed by SaveOnSP is unacceptable. For one thing, SaveOnSP's list of proposed
custodians includes the CAP custodians. As we have repeatedly explained, Judge Wolfson
directed only the use of "CAP-related search terms" when searching the files of the CAP
custodians, rejecting SaveOnSP's motion to treat those custodians as full custodians in this case.
*See* Dkt. No. 192 at 26 (adopting Judge Waldor's instruction that search terms for CAP custodians
"must be limited" to "CAP-related terms" because "that's the only reason these people are involved
in discovery in the first place"). SaveOnSP has no basis for expanding the scope of that ruling
here. SaveOnSP's proposed search term, as constructed, will also hit on any document that
mentions either Stelara or Tremfya and also includes dollar figures like $6,000, $9,100, $9,450, or
$8,900. This is not only facially overbroad but also a backdoor means of capturing financial
documents related to the pricing and profitability of Stelara and Tremfya that the Court has

---

[1] Your letter also asks that JJHCS "identify all other mitigation efforts that [JJHCS] undertook."
Aug. 23, 2024 Ltr. from H. Miles to J. Long at 3. As you know, such questions are not
appropriately raised in informal discovery correspondence, and so we decline to respond to it here.

Hannah R. Miles, Esq.
September 27, 2024
Page 4

repeatedly held is irrelevant. *See, e.g.*, Dkt. 192 at 19–24. JJHCS therefore cannot accept SaveOnSP's proposal.

## IV. Request No. 97

Request No. 97 seeks "Documents and Communications regarding the Appeals Process." SaveOnSP's Ninth Set of RFPs at 10. In its RFPs, SaveOnSP defined "Appeals Process" as "an appeal by a patient who believes that they have been incorrectly identified as a maximizer or accumulator patient." *Id.* at 5. As JJHCS responded in its R&Os, this definition is vague and ambiguous, and JJHCS construed it as referring "to benefits investigations that TrialCard performed to determine whether patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan." JJHCS's Ninth Set of R&Os at 3.

SaveOnSP now states that, in Request No. 97, it seeks documents and communications regarding the appeals process outlined in JJHCS_00004439, a document that JJHCS produced on March 16, 2023, more than fifteen months ago. SaveOnSP does not explain why it is entitled to "all documents and communications" related to that appeals process, especially given that SaveOnSP has already received the results of more than 4,800 benefits investigations from TrialCard, as well as substantial discovery from JJHCS related to the CAP Program. *See* JJHCS's Ninth Set of R&Os at 9–10. Regardless, running SaveOnSP's proposed search term here over the proposed list of custodians hits on 60,490 unreviewed documents inclusive of families, an unduly burdensome amount. JJHCS cannot agree to run it.

Finally, you ask in your letter that JJHCS reproduce five documents (JJHCS_00150152, JJHCS_00150292, JJHCS_00150853, JJHCS_00251326, JJHCS_00257179) that SaveOnSP claims are illegible. While JJHCS disagrees that those documents are illegible, JJHCS will reproduce them in native form.

\* \* \*

JJHCS reserves all rights, and we are available to meet and confer.


Very truly yours,

*/s/ Jacob I. Chefitz*
Jacob I. Chefitz

Exhibit 5 Confidential

Filed Under Seal

# Exhibit 6



www.pbwt.com

October 9, 2024

Jacob I. Chefitz
(212) 336-2474

**By Email**

Hannah R. Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:  *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC*,
     *2:22-cv-02632 (JKS) (CLW)*

Dear Hannah:

        We write in response to your October 1, 2024 letter regarding SaveOnSP's Request
No. 94, which seeks "[d]ocuments sufficient to show business plans reflecting the total Co-Pay
Spend, both anticipated and actual, for each Janssen Drug."  SaveOnSP's Ninth Set of RFPs at 10.

        As we explained in our September 27, 2024 letter, Judge Wolfson has repeatedly
made clear that SaveOnSP is not entitled to the CarePath business plans that SaveOnSP once again
seeks here.  *See* Apr. 25, 2024 Order, Dkt. No. 264, at 5–6; Feb. 6, 2024 Order, Dkt. No. 192, at
17–24.  It does not matter that SaveOnSP purports to seek these documents only to "investigat[e]
the basis and veracity of [JJHCS]'s damages claim that, because of SaveOn, [JJHCS] spent more
money than it otherwise would have for a purpose it did not intend."  This is the same argument
that SaveOnSP previously made to the Court in seeking broad financial documents and data from
JJHCS.  *See* Dkt. No. 192, at 15 ("Defendant argues that it is entitled to these financial documents
to support its defense[ that] SaveOnSP did not injure JJHCS because any increase in JJHCS's
copay assistance payments is traceable to JJHCS's CarePath budget…").  Judge Wolfson rejected
this argument, explaining that the financial data JJHCS has already produced in this litigation "is
sufficient for Defendant's damages analysis."  *Id.* at 18.  And when SaveOnSP moved for
clarification and reconsideration, Judge Wolfson rejected it again.  SaveOnSP is not entitled to yet
another bite at the apple.

        Your letter also continues to take issue with JJHCS_00130090.  As we previously
explained, JJHCS_00130090 ███████████████████████████████. Just because JJHCS has exported those forecasts from
a broader dataset containing other financial information does not make them any less
contemporaneous.  And SaveOnSP is not entitled to that full dataset, which is voluminous and
consists of financial information that Judge Wolfson has made clear is outside the scope of this
litigation.

        JJHCS reserves all rights, and we are available to meet and confer.

Hannah R. Miles, Esq.
October 9, 2024
Page 2

Very truly yours,

*/s/ Jacob I. Chefitz*
Jacob I. Chefitz

# Exhibit 7

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

October 1, 2024

**Via E-mail**

Jacob I. Chefitz
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jchefitz@pbwt.com

Re:  ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC*** **(Case No. 2:22-cv-02632-JKS-CLW)**

Dear Jacob,

We write in partial response to your September 27, 2024 letter regarding
SaveOn's Ninth Requests for Production, in particular regarding Request No. 94.

Request 94 seeks documents sufficient to show business plans reflecting ac-
tual and anticipated copay spend for each J&J drug at issue in this litigation. These
documents are relevant to J&J's damages, which are based on J&J's allegation that
SaveOn caused it to "pay more money from CarePath than it otherwise would have
for a purpose JJHCS did not intend." Compl. ¶ 110.

Thank you for agreeing to extend the production of copay spend projections
reflected in JJHCS_00130090 for the refresh period of July 1, 2022 to Novem-
ber 7, 2023. We look forward to receiving that production this week.

The projections provided in JJHCS_00130090 are not sufficient, however,
for the reasons that SaveOn explained in its August 23, 2024 letter. You admit that
the document that J&J produced was created in June 2023 when "the data … was
pulled … from a larger dataset containing financial projections that JJHCS main-
tains in the normal course"—something that you failed to affirmatively disclose to
SaveOn when you produced it. The Federal Rules of Civil Procedure require parties
to produce discovery as it is maintained in the normal course and do not permit
parties to create a document to fulfill their discovery obligations and try to pass it
off as a contemporaneous record. *See* Fed. R. Civ. P. 34(b)(2)(E)(i) ("A party must
produce documents as they are kept in the usual course of business."). You provide

Jacob I. Chefitz
October 1, 2024

no details about the "larger dataset" from which the data was purportedly pulled, including how that dataset was created and updated, who was responsible for maintaining it, what it contains, or how it is used. SaveOn is entitled to the dataset that J&J maintained in the ordinary course of business, as well as the requested business plans for each drug.

J&J's made-for-litigation summary is not an acceptable substitute. Contemporaneous records could reveal how J&J's projections changed over time, and whether there were assumptions or relevant context that informed its projections. Documents show that ███████████████████████████████████████████████████████████. JJHCS_00270881 (██████████████████████████████████████████████████████████████████████████████████████). SaveOn is entitled to those "input[s]" and the context of how they were used to inform projections in the business plans.

In resisting production of the full dataset and associated business plans, you point first to a statement that Judge Wolfson made regarding discovery on mitigation. Sept. 27, 2024 Ltr. at 2. Putting aside the question of whether J&J has correctly interpreted that statement (it has not), SaveOn is not seeking this discovery for mitigation purposes—SaveOn is investigating the basis and veracity of J&J's damages claim that, because of SaveOn, J&J spent more money than it otherwise would have for a purpose it did not intend.

You next argue that different rules ought to apply to J&J's business plans as opposed to SaveOn's business plans because "SaveOnSP's business is the subject matter of the case. That is not the case for JJHCS's business plans." Sept. 27, 2024 Ltr. at 2. Not so. J&J put its business plans for CarePath at issue in this litigation when it alleged that SaveOn caused CarePath to spend more money than it otherwise would have for a purpose that it did not intend. J&J's business plans—in particular, how much it intended to spend on the CarePath program for each drug, and for what purpose it intended to spend that money—are thus a core "subject matter of the case."

Finally, you argue that J&J need not produce "all data and analysis" underlying its projected and actual co-pay spend because such demands are "outside the scope of Request No. 94." But if the data and analysis is contained in the business plans that SaveOn requested in its RFP, then it must be produced.

2

Jacob I. Chefitz
October 1, 2024

We note that it took you five weeks to respond to SaveOn's August 23 letter on this topic. We request a response to this letter by October 8, 2024. We are available to meet and confer and reserve all rights.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

# Exhibit 8

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

August 23, 2024

**Via E-mail**

Julia Long
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jlong@pbwt.com

**Re:** ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,***
***LLC*** **(Case No. 2:22-cv-02632-JKS-CLW)**

Dear Julia,

We write regarding J&J's July 22, 2024 Responses and Objections (R&Os) to SaveOn's June 21, 2024 9th Set of Requests for Production.

**I.    Business Plans Reflecting the Co-Pay Spend for Each Janssen Drug (RFP 94)**

SaveOn's RFP No. 94 seeks documents sufficient to show business plans reflecting actual and anticipated copay spend for each J&J drug at issue in the litigation. J&J's damages claim is that J&J paid more than it intended from CarePath. *See* Compl. ¶ 110 ("SaveOnSP knowingly and proximately causes JJHCS damage by making it pay more money from CarePath than it otherwise would have for a purpose JJHCS did not intend."); ¶ 115. How much J&J intended or planned to spend is thus highly relevant to understanding J&J's claimed damages, including whether it experienced damages at all. Compl. ¶ 115.

J&J objects that it has already produced financial data including forecasted and actual copay spend, including at JJHCS_00130090. This is insufficient.

*First*, metadata reveals that the document, JJHCS_00130090, ██████████ ██████████████████████, indicating that it is not a contemporaneous record of J&J's forecasted or projected copay spend. J&J must produce records showing its intended spend over the relevant time period so that SaveOn can learn, for example, if and how its projections changed over time.

Julia Long
August 23, 2024

*Second*, this document is a . This suggests that it is an ▮▮▮▮▮▮, or derived from some other source. J&J must produce all data and analysis underlying this summary, including any business plans.

*Third*, JJHCS_00130090 ▮▮▮▮▮▮▮▮▮▮. Documents produced to date indicate that . *See, e.g.*, JJHCS_00183322 ▮▮▮▮▮▮ JJHCS_00129990 (▮▮ .

*Fourth*, the raw dollar value of J&J's projected copay spend, standing alone, is not sufficient. J&J must produce the business plans or similar documents showing how it came up with these projections and presented them to decisionmakers. *See, e.g.*, JJHCS_00259917. These business plans helped inform choices about how to structure CarePath, including key decisions like whether to lower the maximum benefit, change the CarePath T&Cs, or create alternative plans like CAPa or CAPm to respond to accumulators, maximizers, or SaveOn. J&J put its business plans—including the forecasted or projected copay spend—at issue by using its anticipated copay spend as the basis for its alleged damages. *See* June 2, 2023 Joint Letter at 2 (J&J arguing that "business plans will present the key strategic information about SaveOnSP's operations in one place and in SaveOnSP's own words").

*Fifth*, business plans, including drafts or changes to the business plans, are relevant because projections, unlike summaries of actual dollars spent retroactively, require context to understand. Forecasts necessarily rely upon assumptions, and may include a range of projections if some assumptions are fulfilled or not fulfilled. *See* JJHCS_00183322 (). This context is not reflected in a single number on a spreadsheet but may be presented business plans. Business plans may also discuss the inputs that J&J relied upon for its projections. *See, e.g.*, JJHCS_00270881 (▮▮▮▮▮▮▮ .

*Finally*, J&J alleges in its Complaint that SaveOn caused it damage by forcing it to spend more money than it otherwise would have "for a purpose JJHCS did not intend." Compl. ¶ 110. Raw data alone is insufficient to show what J&J's intentions were in allocating money to the CarePath program and where J&J intended, knew, or understood that the money would go. J&J's business plans are highly relevant evidence of its intentions.

2

Julia Long
August 23, 2024

## II. Expenses Incurred by J&J to Mitigate Any Purported Harm Caused by SaveOn (RFP 95)

SaveOn's RFP No. 95 seeks documents and communications regarding the expenses incurred by J&J to mitigate any purported harm, including, but not limited to, expenditures to identify patients.

*First*, J&J indicates that it will produce documents sufficient to show the expenses incurred by JJHCS to identify patients in the SaveOn program. Please advise by when J&J will make that production.

*Second*, RFP No. 95 seeks documents regarding expenditures incurred to mitigate any purported harm that SaveOn caused to J&J. SaveOn understands J&J to be representing that the only mitigation effort it undertook—and therefore will seek damages in conjunction with—was the identification of patients "enrolled in the SaveOnSP Program," R&Os at 7. Please confirm that representation. If that is not the case, please identify all other mitigation efforts that J&J undertook.

*Third*, J&J's proposed production is insufficient because it does not include communications. J&J does not suggest that such communications would be irrelevant. And it could not. It is well settled that injured parties have a duty to take reasonable steps to mitigate damages. *State v. Ernst & Young, L.L.P.*, 386 N.J. Super. 600, 618 (App. Div. 2006). Courts look at the plaintiff's perspective when assessing the reasonableness of measures taken to mitigate damages. It is thus relevant what costs J&J considered and deemed unreasonable, which can only be discovered through the production of pertinent communications. Please advise whether J&J will produce communications regarding *all* its expenses incurred through its attempts to mitigate.

## III. Documents and Communications Regarding Setting $9,100 as the Maximum Benefit for Copay Assistance for Janssen Drugs (RFP 96)

RFP No. 96 seeks documents and communications regarding setting $9,1000 as the maximum benefit for copay assistance, including any decision to not publish the maximum benefit publicly.

*First*, J&J objects that this request is duplicative of RFP Nos. 29(a) and 31. Not so. Request 29(a) sought documents and communications regarding J&J's determination of the amount of copay assistance funds to offer to patients enrolled in CarePath, including the maximum program benefit. Request No. 31 sought all documents and communications regarding J&J's attempt to limit or eliminate the amount of CarePath assistance available to patients on Stelara or Tremfya.

*Second*, J&J states that it has already produced documents sufficient to show the nature and extent of the change to the $9,100 maximum benefit, pointing to JJHCS_00130092. ████████████████████

Julia Long
August 23, 2024

██ e. J&J's public statement about why it has changed the maximum benefit is not sufficient to show why it actually did so. SaveOn is entitled to all documents and communications about this change, including but not limited to internal drafts and discussions about the creation of this document. (The document that J&J points to was ██████████████████████████████████ .)

J&J also points to the search term that it has run for Savaria Harris and Jennifer De Camara, which includes a $9,100 term, and another CAP term with $6,000 included. J&J's current search terms are insufficient for multiple reasons: (1) J&J is not running a term to identify the 2024 out-of-pocket maximum, $9,450, which was likely discussed in 2023; (2) J&J is not running a term containing $9100 for any custodians other than Harris and De Camara; and (3) the other CAP term says nothing about J&J using the ACA out-of-pocket maximum as the maximum for copay assistance.

SaveOn has identified numerous additional documents showing that other existing custodians were involved:



- JJHCS_00276037, ████████████████████████████████

- JJHCS_00158331, JJHCS_00158333, ████████████

- JJHCS_00164633, ██████████████████████████████████

- JJHCS_00158351, ██████████████████████████████████

- JJHCS_00158442, ██████████████████████████████████

- JJHCS_00164490, ██████████████████████████████████

Julia Long
August 23, 2024

- JJHCS_00173390, ███████████████████████
██████████████████████████████████

*Third*, J&J indicated that it is willing to meet and confer on a narrow sup-plemental search. SaveOn proposes that J&J run the following additional term over the files of the following custodians:

- **Custodians**: Lindsey Anderson, Spilios Asimakopoulos, John Paul Franz, Evelyn (Lynn) Hall, Brandon (Heith) Jeffcoat, John King, Jeremy Mann, Katie Mazuk, Silviya McCool, Hattie McKelvey, Adrienne Minecci, Lauren Pennington, William Robinson III, Nidhi Saxena, Heather Schoenly, Carol Scholz, Jasmeet Singh, Debbie Kenworthy, Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, Alison Barklage, Lawrence (L.D.) Platt

- **Search Term**: (\$6,000 OR \$6000 OR OR \$6k OR 6k OR \$9,100 OR \$9100 OR \$9,450 OR \$9450 OR \$8,900 OR \$8900 OR (OOP) OR (out-of-pocket)) AND (Stelara OR Tremfya)

If J&J intends to object based on burden, please provide hit counts demonstrating how many additional documents J&J would have to review.

## IV.    J&J's Appeals Process (RFP 97)

RFP No. 97 seeks documents and communications related to the Appeal Process. J&J objects to SaveOn's definition of the Appeal Process and instead stated that it will "construe that term as referring to the benefits investigations that TrialCard performed to determine whether patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan." R&Os at 9.

J&J's proffered definition is inaccurate. As SaveOn explained in its defini-tion, the Appeals Process means "an appeal by a patient who believes that they have been incorrectly identified as a maximizer or accumulator patient." SaveOn's 9th RFPs at 5. Far from being the same as the benefits investigations that TrialCard (and other vendors) conducted, an appeal is what comes *after* a benefits investiga-tion or other process identified a patient as being on an accumulator or maximizer plan, or a plan advised by SaveOn.

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

Julia Long
August 23, 2024

JJHCS_00004439.[1]

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████ *Id.*; *see* JJHCS_00258666 (████
███████████████████████████████████████████████████
███████████████████████████████████████████████ ).
███████████████████████████████████
████████ JJHCS_00035812.
JJHCS_00035922; *see also* JJHCS_00117449 (███████████████
███████████████████████████████████████████████████
███████████████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████ . For example,
JHCS_00003888 is ████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████ ; *see also*
JJHCS_00004076; JJHCS_00004357 (█████████████████████████
█████████████████████████████ ").

J&J must respond to RFP No. 97 using SaveOn's actual definition of "Appeal Process," which referred to the process described above. Please confirm that J&J will update its responses accordingly.

SaveOn proposes that J&J run the following additional term over the files of the following custodians:

- **Custodians**: Lindsey Anderson, Spilios Asimakopoulos, John Paul Franz, Evelyn (Lynn) Hall, Brandon (Heith) Jeffcoat, John King, Jeremy Mann, Katie Mazuk, Silviya McCool, Hattie McKelvey, Adrienne Minecci, Lauren Pennington, William Robinson III, Nidhi Saxena, Heather Schoenly, Carol Scholz, Jasmeet Singh, Debbie Kenworthy, Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, Alison Barklage, Lawrence (L.D.) Platt

- **Search Term**: (appeal* OR AskJCP OR ("Ask JCP") OR escalat*) w/50 (CAP OR CAPa OR CAPm OR "adjustment program" OR maximiz* OR accumulat* OR "benefit* investigation*" OR (divert* /3 program*))

                    *       *       *

---

[1] Please reproduce the documents JJHCS_00150152, JJHCS_00150292, JJHCS_00150853, JJHCS_00251326, JJHCS_00257179, all of which appear to be versions of flow charts showing the appeals process, none of which are legible.

Julia Long
August 23, 2024

      We request a response by August 30, 2024. We reserve all rights and are available to meet and confer.

Best,

/s/ Hannah Miles

Hannah R. Miles
Associate

# Exhibit 9

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

October 17, 2024

**Via E-mail**

Jacob I. Chefitz
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jchefitz@pbwt.com

**Re:** ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC*** **(Case No. 2:22-cv-02632-JKS-CLW)**

Dear Jacob,

We write in response to your October 9, 2024 letter and further to our Oc-
tober 1, 2024 letter regarding SaveOn's Request No. 94, which seeks documents
sufficient to show J&J's actual and anticipated copay spend for each J&J drug at
issue in this litigation.

*First*, you state that Judge Wolfson has "repeatedly made clear that Save-
OnSP is not entitled to the CarePath business plans that SaveOnSP once again
seeks here." Oct. 9, 2024 Ltr. That is inaccurate. The rulings you cite were limited
to SaveOn's motion to compel J&J to produce internal communications related to
the CarePath budget, not to J&J's business plans. *See* Feb. 6, 2024 Order at 18-19;
Apr. 25, 2024 Order at 5. In fact, Judge Wolfson noted that J&J had "already pro-
duced certain documents reflecting budgetary changes to CarePath" as a reason
why internal communications were not necessary. Apr. 25, 2024 Order at 5. Here,
SaveOn requests additional documents of the kind that J&J said that it was pro-
ducing—documents regarding changes to CarePath's budget. That request is not
barred by any prior order and seeks documents that are relevant to J&J's damages
claim, as we have previously explained. Please confirm that you will produce the
requested business plans.

*Second*, you assert that the data produced at JJHCS_00130090 is sufficient
to address SaveOn's request, even though it is a made-for-litigation summary and
not a contemporaneous record. As we have explained, that is improper. *See, e.g.*,
*Twin Falls NSC, LLC v. S. Idaho Ambulatory Surgery Ctr.*, 2020 WL 5523384, a

Jacob I. Chefitz
October 17, 2024

*12 (D. Idaho 2020) (requiring a party to produce documents "as they are kept in the usual course of business" instead of "altering or correcting financial documents specifically for production in litigation"). J&J's tactic—excerpting relevant data from a responsive document—is functionally equivalent to redacting information from an otherwise responsive document, which is improper under the law of this District. *See Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 344 F.R.D. 207, 216 (D.N.J. 2023) (holding that "unilateral redactions based on one party's subjective view of relevancy are improper"); *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, 2017 WL 3624262 at *4 (D.N.J. 2017), *report and recommendation adopted*, 2017 WL 3668391 (D.N.J. 2017) (holding that a party cannot "unilaterally redact documents" because Rule 34 "intimates that the copy produced would be identical to the document to be inspected" in that it must "contain the same content as the document" would have if it were inspected by the requesting party); *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, 2008 WL 4462301 at *1-2 (W.D. Pa. 2008) (rejecting a party's "novel interpretation of their discovery obligations" as "not supported by the text of" the Rules because "Rule 34 talks about production of 'documents,' as opposed to the relevant information contained in those documents"). *See also* Wright & Miller, Fed. Prac. & Proc. § 2213 (3d ed.) ("[P]roduction calls for production of entire documents" and the "producing party has no unilateral right to withhold portions of documents it concludes are not relevant."). Such redactions "give[] rise to suspicion that relevant material has been obscured." *Chabot v. Walgreens Boots All., Inc.*, 2019 WL 13162432, at *2 (M.D. Pa. 2019).

*Third*, in our October 1 letter, we pointed out that you have not provided any "details about the 'larger dataset' from which the data was purportedly pulled, including how the dataset was created and updated, who was responsible for maintaining it, what it contains, or how it was used." Oct. 1, 2024 Ltr. at 2. You do not address any of these questions in your letter, summarily stating that we are not entitled to the full dataset. Please confirm that J&J will produce the full dataset from which the report was drawn and provide the requested details about that dataset.

We request a response by October 24, 2024, are available to meet and confer, and reserve all rights.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

Exhibit 10 Confidential

Filed Under Seal

# Exhibit 11

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036

*Attorneys for Plaintiff Johnson & Johnson Health Care*
*Systems Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JKS) (CLW) <br><br> **PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S NINTH REQUEST FOR PRODUCTION OF DOCUMENTS** |

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing. It reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action. The following responses and objections are based upon information known at this time.

1.      JJHCS objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the First Amendment privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. The inadvertent production by JJHCS of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.      JJHCS objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response JJHCS makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek documents or information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

2

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.      JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.     JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.     JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.     JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" documents where a subset of documents would be sufficient to provide the relevant information.

13.     JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.      JJHCS objects to the definition of the term "Appeals Process" as vague and ambiguous and construes this term to refer to benefits investigations that TrialCard performed to determine whether patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan.

2.      JJHCS objects to the definition of "Co-Pay Spend" to the extent the definition of that term purports to characterize the meaning of "Co-Pay Spend" as used in JJHCS_00230997.

3.      JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS beyond

3

the scope of the Court's July 15, 2024 Letter Order. JJHCS further objects to the definition of

the term as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it purports to include "any and all predecessors and successors in interest, assignees,

parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors,

officers, employees, committees, attorneys, accountants, and all persons or entities" or purports

to include entities and persons acting or purporting to act on behalf of or under the control of

entities other than JJHCS, including Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen

Products, LP, or Actelion Pharmaceuticals U.S., Inc.

4.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to

include attorneys and accountants whose documents and communications may be outside of

JJHCS's possession, custody, and control. JJHCS further objects to the definition of the term as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

purports to include "any and all predecessors and successors in interest, assignees, parents,

subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers,

employees, committees, attorneys, accountants, and all persons or entities" or purports to include

entities and persons acting or purporting to act on behalf of or under the control of entities other

than JJHCS, including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical,

Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc.,

Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen

Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen

BioPharma LLC, Janssen Research & Development LLC, and TrialCard. JJHCS further objects

to this definition of "JJHCS" to the extent it purports to include "TrialCard and any other vendor

over whom JJHCS has legal contract of documents."

4

5.      JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and as irrelevant to the extent it purports to include entities other than those responsible for administering CarePath during the relevant Time Period.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.  JJHCS further objects on the ground that the phrase "administer, in whole or in part, CarePath" is vague and ambiguous.  JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

6.      JJHCS objects to the definition of the term "CarePath" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this definition to the extent that the definition of the term "CarePath" to the extent it purports to include the term "Janssen" for the reasons stated in JJHCS's Objections to Definitions.

7.      JJHCS objects to the definition of the term "Lash Group" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to the definition of the term as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc."

5

8.      JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc." JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

## OBJECTIONS TO THE TIME PERIOD

1.      JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome, and not relevant to the subject matter of this Action to the extent they call for documents from after November 7, 2023. Unless otherwise noted, JJHCS will only provide information from April 1, 2016 through November 7, 2023 (the "Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

### Request No. 94

Documents sufficient to show business plans reflecting the total Co-Pay Spend, both anticipated and actual, for each Janssen Drug.

### Response to Request No. 94

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents related to any drug manufactured or sold by Janssen that is not covered by CarePath or otherwise implicated in SaveOnSP's scheme to misuse copay assistance funds. JJHCS further objects to this Request to the extent it uses the term "Janssen" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as duplicative of Requests Nos. 28(k), (m) and 29(a)–(c), and JJHCS incorporates by reference its responses to those Requests. JJHCS further objects to the

6

Request to the extent it seeks financial documents that the Court, in its February 6, 2024 and April 25, 2024 orders, has ruled are outside the scope of discovery in this case.  *See* Dkt. No 264 at 3–9; Dkt. No. 192 at 15–24.

JJHCS has already produced to SaveOnSP financial data related to JJHCS's operation of CarePath, including forecasted and actual co-pay spend for the drugs at issue in this litigation.  *See, e.g.*, JJHCS_00130090; *see also* July 24, 2023 Ltr. From H. Sandick to A. Dunlap at 2, 5.  JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

## Request No. 95

All Documents and Communications regarding any expenses incurred by JJHCS to mitigate any purported harm caused by SaveOnSP to JJHCS, including the expenditures of resources to identify members of plans advised by SaveOnSP.

## Response to Request No. 95

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession from the Time Period sufficient to show the expenses incurred by JJHCS to identify patients enrolled in the SaveOnSP Program, to the extent such documents exist and can be located after a reasonable search.  JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

7

**Request No. 96**

All Documents and Communications regarding setting $9,100 as the maximum benefit for Copay Assistance for any Janssen Drug, including any decision to not publish that maximum benefit publicly.

**Response to Request No. 96**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents related to any drug manufactured or sold by Janssen that is not covered by CarePath or otherwise implicated in SaveOnSP's scheme to misuse copay assistance funds.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request as duplicative of Requests Nos. 29(a) and 31, and JJHCS incorporates by reference its responses to those Requests.

JJHCS has already produced documentation sufficient to show the nature and extent of the change relating to a $9,100 co-pay assistance maximum for certain patients.  *See* Aug. 2, 2023 Ltr. from S. Arrow to M. Nelson (identifying JJHCS_00130092).  JJHCS has also already agreed to search Savaria Harris's and Jennifer De Camara's communications with third parties, from January 1, 2021 through November 7, 2023, for documents hitting on the search term ($6,000 OR $6k OR 6k OR $9,100 OR $8,900 OR (OOP) OR (out-of-pocket)) AND (Stelara OR Tremfya).  *See* Mar. 1, 2024 Ltr. from J. Long to E. Snow at 3–4.  And JJHCS has already produced an extensive amount of documents relating to the CAP program from its agreed-upon custodians, including responsive, non-privileged documents hitting on the term (STELARA* OR TREMFYA* OR

8

CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate), among several other search terms.  Subject to the foregoing objections, JJHCS is willing to meet and confer on a narrow supplemental search that targets documents and communications responsive to this Request, but JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

**Request No. 97**

All Documents and Communications regarding the Appeals Process.

**Response to Request No. 97**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it uses the term "Appeals Process" for the reasons stated in JJHCS's Objections to Definitions.  As stated therein, JJHCS will construe that term as referring to the benefits investigations that TrialCard performed to determine whether patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan.  JJHCS further objects to this Request as duplicative of Requests Nos. 58 and 59, and JJHCS incorporates by reference its responses to those Requests.

SaveOnSP has already received from TrialCard the results of over 4,800 benefits investigations that TrialCard performed to determine whether patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan.  To the extent this Request seeks other documents and communications related to the identification of patients, through the CAP program,

as being in any such plan, JJHCS has already produced an extensive amount of documents relating to the CAP program from its agreed-upon custodians, including responsive, non-privileged documents hitting on the search term ("CAPa" OR "CAPm" OR "adjustment program") AND (SaveOnSP OR SaveOn OR "SaveOn SP" OR "Save OnSP" OR Save-On OR SOSP OR accumulat* OR maximiz*), among several other search terms.  JJHCS will not otherwise search for or produce documents and communications responsive to this Request.


Dated: July 22, 2024

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:     /s/Jeffrey J. Greenbaum
         JEFFREY J. GREENBAUM
         KATHERINE M. LIEB


PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

10

# Exhibit 12



www.pbwt.com

November 1, 2024

Jacob I. Chefitz
(212) 336-2474

**By Email**

Hannah R. Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:     ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,
2:22-cv-02632 (JKS) (CLW)***

Dear Hannah:

We write in response to your October 17, 2024 letter regarding SaveOnSP's Request No. 94, which seeks "[d]ocuments sufficient to show business plans reflecting the total Co-Pay Spend, both anticipated and actual, for each Janssen Drug." SaveOnSP's Ninth Set of RFPs at 10.

Your letter states that the requested business plans are outside the scope of Judge Wolfson's prior rulings because those rulings "were limited to SaveOn's motion to compel J&J to produce internal communications related to the CarePath budget, not to J&J's business plans." Ltr. at 1. But Judge Wolfson's rulings were broader than that. She rejected SaveOnSP's attempt to obtain not just "internal communications related to the CarePath budget" but also several categories of financial documents, including documents relating to CarePath's profitability and return on investment. *See* Dkt. No. 192 at 19–22. As stated previously, SaveOnSP is not entitled to relitigate this issue yet again.

To the extent that SaveOnSP simply seeks anticipated and actual copay spend for the drugs at issue, or just "documents regarding changes to CarePath's budget," it is not clear what more SaveOnSP is requesting here that it does not already have and is not barred by Judge Wolfson's rulings.

Finally, SaveOnSP continues to challenge the propriety of JJHCS_00130090, again arguing that it is ███████████████████████ As we have explained, JJHCS_00130090 are ███████████████████████████████████████████████████████████████████ . That is entirely proper under the Federal Rules. *See, e.g.*, *Branch v. Gov't Emps. Ins. Co.*, 286 F. Supp. 3d 771, 778 (E.D. Va. 2017). Exporting a subset of relevant data from a larger dataset is not the same as "altering or correcting financial documents specifically for production in litigation," as occurred in the case SaveOnSP cites. *Twin Falls NSC, LLC v. S. Idaho Ambulatory Surgery Ctr., LLC*, 2020 WL 5523384, at *12 (D. Idaho Sept. 14, 2020). Nor is it analogous to "to redacting information from an otherwise responsive document," as SaveOnSP also argues. Rather, "producing limited data from a larger database is more akin to reviewing a

Hannah R. Miles, Esq.
November 1, 2024
Page 2

set of documents in response to a discovery request and producing only responsive documents, than it is creating a new data compilation or document for the purposes of litigation." *Health All. Network, Inc. v. Cont'l Cas. Co.*, 245 F.R.D. 121, 129 (S.D.N.Y. 2007), *aff'd,* 294 F. App'x 680 (2d Cir. 2008). And arguing otherwise "ignores the realities of modern business litigation, where many business records are kept in databases, and parties query these databases in order to provide responses to discovery requests." *Id.*

JJHCS reserves all rights, and we are available to meet and confer.

Very truly yours,

*/s/ Jacob I. Chefitz*
Jacob I. Chefitz

# Exhibit 13

Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104
212.390.9000

Selendy|Gay

Hannah Miles
Associate
212.390.9055
hmiles@selendygay.com

November 26, 2024

<u>Via E-mail</u>

Jacob I. Chefitz
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jchefitz@pbwt.com

**Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*** **(Case No. 2:22-cv-02632-JKS-CLW)**

Dear Jacob,

We write to memorialize the parties' November 25, 2024 meet and confer regarding SaveOn's RFP No. 94. SaveOn requested that J&J produce "[d]ocuments sufficient to show business plans reflecting the total Co-Pay Spend, both anticipated and actual, for each Janssen Drug." RFP No. 94. We have clarified that this request seeks not merely "the raw dollar value of J&J's projected copay spend," but also "the business plans or similar documents showing how [J&J] came up with these projections and presented them to decisionmakers." Aug. 23, 2024 Ltr. from H. Miles to J. Long at 2. We have repeatedly explained that these documents are relevant to J&J's damages, premised on J&J's allegation that SaveOn caused it to "pay more in CarePath funds than it otherwise would have for a purpose JJHCS did not intend." Compl. ¶ 110.

J&J has taken the position that these documents are irrelevant, and that J&J's limited production of excerpted financial data, "including forecasted and actual co-pay spend for the drugs at issue in this litigation," is sufficient to respond to SaveOn's request. R&Os to RFP 94 (citing JJHCS_00130090). But J&J has refused to produce the full dataset from which JJHCS_00130090 was derived or provide relevant details on said dataset, including how and when the dataset was created and updated, who was responsible for maintaining it, what it contains, and how it was used. *See* Oct. 17, 2024 Ltr. from H. Miles to J. Chefitz. SaveOn maintains that J&J must produce the full dataset in addition to the business plans referenced above.

J. Chefitz
November 26, 2024

   The parties have been unable to resolve these disputes despite exchanging numerous letters, nor were the parties able to do so during the November 25, 2024 meet and confer. The parties have therefore reached impasse. SaveOn reserves all rights.

Sincerely,

/s/ Hannah Miles

Hannah Miles
Associate

Exhibits 14-17 Confidential

Filed Under Seal

# Sills Cummis & Gross

A Professional Corporation

**The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102-5400
Tel: 973-643-7000
Fax: 973-643-6500**

Jeffrey J. Greenbaum
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL UNDER THE
DISCOVERY CONFIDENTIALITY ORDER**

January 21, 2025

**By Email**

Hon. Freda L. Wolfson, U.S.D.J.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

> Re:   **JJHCS's Opposition to SaveOnSP's Dec. 19, 2024 Motion to Compel**
> *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC, et al.,*
> Civil Action No. 22-2632 (JKS) (CLW)

Dear Judge Wolfson:

On behalf of Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), we write in

opposition to SaveOnSP's December 19, 2024 motion to compel JJHCS to produce documents

relating to JJHCS's "projections of its spending on CarePath."

***First***, this motion should be denied because it is a particularly brazen attempt to relitigate

motions that SaveOnSP has already lost. Today's motion is SaveOnSP's fourth bite at the apple

on CarePath spending documents. Nearly two years ago, SaveOnSP first sought "documents about

how [JJHCS] set the CarePath budgets" in multiple requests that Judge Waldor condemned as

"awfully broad." Mar. 17, 2023 Tr. 29:6–7, 34:5–6. Undeterred, SaveOnSP made another lengthy

submission six months later seeking to compel "documents regarding JJHCS's budget for the

CarePath program." *See* Dkt. 150 at 1 (September 7, 2023 joint letter). Judge Waldor again

Honorable Freda L. Wolfson, U.S.D.J.
January 21, 2025
Page 2

required SaveOnSP to "narrow the scope of its requests." Dkt. 173 at 1. Your Honor ultimately

denied that motion, emphasizing that "communications of budgetary decisions are not relevant to

Defendant's defenses or Plaintiff's claims." Dkt. 192 at 19. SaveOnSP sought reconsideration of

the Court's order. Feb. 20, 2024 SaveOnSP Ltr. to J. Wolfson. Your Honor recognized that

SaveOnSP's arguments were "not new" and rejected them again. Dkt. 264 at 5 (denying as

"irrelevant" discovery concerning changes to the CarePath budget). The Court further rejected

discovery on "*why* [JJHCS] set the annual maximum amounts of copay assistance for the drugs at

issue *at the levels that it did*." *Id.* (emphasis added).

SaveOnSP's new motion seeks the same information as its old motions: in SaveOnSP's

own words, it seeks discovery showing the "how" and the "why" of JJHCS's projected copay

assistance spending. Mot. at 6. There is no basis to reconsider the Court's ruling—and multiple

subsequent reaffirmations of that ruling—that this financial information is off limits.

**Second**, SaveOnSP's motion is not just procedurally improper but also substantively

meritless. SaveOnSP claims that it is entitled to business plans related to CarePath budgets because

the plans purportedly "speak to" JJHCS's damages. Mot. at 7. The Court's prior rulings could

not have been clearer that this rationale cannot support additional discovery of budget-related

documents. *See* Dkt. 264 at 5 ("It matters not—for mitigation purposes—how Plaintiff came

to . . .[its] budgetary decisions.").

SaveOnSP tries to engineer a different result this time by simply changing its pretext from

"mitigation" to "intent." *See* Mot. at 1, 4, 7, 8. That attempt fails too, not least because it flows

from a mistaken premise. SaveOnSP points to JJHCS's allegation that SaveOnSP's wrongful

conduct caused it to pay more in copay assistance funding for a "purpose [that it] did not intend."

Honorable Freda L. Wolfson, U.S.D.J.
January 21, 2025
Page 3

*Id.* at 1 (citing Am. Compl. ¶¶ 186, 192, 203). According to SaveOnSP, this allegation "put[s] at issue how much" JJHCS "intended to pay in copay assistance," entitling SaveOnSP to expansive discovery regarding CarePath spending. *Id.* It does no such thing. The "intent" at issue in that sentence relates to the **"*purpose*"** of the CarePath program, which is to help patients, not SaveOnSP or its partners. *Id.* (emphasis added). Not one cent of CarePath funding was meant for payers or profit-seeking middlemen like SaveOnSP; all of it was meant for patients. SaveOnSP does not need financial discovery to ascertain CarePath's purpose—a topic which itself has already been the subject of an enormous amount of discovery.

**Third**, SaveOnSP is wrong to suggest that the record somehow helps it (even as it avoids discussing its repeated losses on this precise issue). For example, SaveOnSP notes that Judge Waldor ordered ***it*** to produce certain business plans, and reasons that JJHCS's own business plans are therefore fair game. Not even close. SaveOnSP's business plans were relevant because SaveOnSP's core business (misappropriating patient assistance) is the subject of claims in this litigation, whereas JJHCS's is not.

Similarly, SaveOnSP contends that JJHCS agreed to produce more information about CarePath spending. *See* Mot. at 8. That is false. In fact, Your Honor recognized that JJHCS already produced everything SaveOnSP is entitled to on its demands for budget information. *See* Dkt. 192 at 16, 19. JJHCS has produced its actual and projected CarePath budget projections as they are kept in the normal course of business and consistent with principles of modern electronic discovery. SaveOnSP's demand that JJHCS produce additional irrelevant, voluminous data is just one more pretext to open discovery on a topic that the Court closed long ago.

3

Honorable Freda L. Wolfson, U.S.D.J.
January 21, 2025
Page 4

### I.    The Court's Prior Rulings Foreclose This Motion

The Court has consistently held that documents concerning CarePath spending are irrelevant. *See* Dkt. 192 at 19; Dkt. 264 at 5. SaveOnSP previously argued, among other things, that it needed such documents to support its defense that it "did not injure JJHCS because any increase in JJHCS's copay assistance payments is traceable to JJHCS's CarePath budget." Dkt. 192 at 15. Concluding that JJHCS "has the better argument on this issue," the Court disagreed and refused to compel "communications of budgetary decisions" from JJHCS. *Id.* at 19. The Court's Orders not only precluded discovery of internal communications, but also more broadly barred "discovery on the reasons why J&J set the annual maximum amounts of copay assistance for the drugs at issue at the levels that it did, and why J&J chose to maintain those levels after learning of Defendant's services." Dkt. 264 at 5. That is ***precisely*** what SaveOnSP again seeks in this motion. *See* Mot. at 4 ("The data and documents that SaveOn seeks go directly to how much copay assistance J&J 'intend[ed]' to spend, and how it determined those amounts.").

The Court further found that documents concerning changes to the CarePath budget are irrelevant "for purposes of liability or damages." Dkt. 192 at 19. In reaching this result, the Court recognized that JJHCS had already made "substantial document productions"—including of "actual and forecasted budgets," "line by line ledger budget data," and documents reflecting "other budgetary decisions"—and declined to compel JJHCS to produce more in response to SaveOnSP's Request for Production 29 (one of the two document requests at issue here).[1] *Id.* at 18–19; *see* SaveOnSP Ex. 1 at 16–17.

---

[1] Request No. 29 seeks, among other things, documents regarding JJHCS's determination of the amounts of copay assistance funds it offered to patients, the CarePath budget, and actual and

Honorable Freda L. Wolfson, U.S.D.J.
January 21, 2025
Page 5

SaveOnSP now insists that it "does not seek documents on contemplated changes [to the CarePath budget] or J&J's return on investment." Mot. at 8. But this misses the point. SaveOnSP relies on the exact same arguments and reasoning to seek precisely the same type of information that it previously pursued. Whether SaveOnSP frames its request as seeking documents about the "development and calculation of . . . projected copay assistance spending," as it now does, *e.g.*, Mot. at 4, or as one for documents "related to the CarePath budget" as it previously did, Dkt. 150 at 2, both requests are identical. Using slightly different verbal formulations does not change the underlying reality: this motion is nothing more than old wine in new bottles. SaveOnSP is not entitled to yet another bite at the apple.

Indeed, SaveOnSP recycles nearly verbatim the same old arguments the Court has already rejected. Just as before, SaveOnSP again asks for information about "how much" copay assistance JJHCS intended to spend and "how it determined those amounts." *Compare* Mot. at 4, *with* Dkt. 150 at 4–5 n.5 (seeking "all" documents regarding JJHCS's determination of the amounts of copay assistance funds, including "*why* or *how* it changed" benefit amounts). And as it did previously, it ties those requests directly to its supposed need to assess JJHCS's "alleged damages." *Compare* Mot. at 8, *with* Feb. 20, 2024 SaveOnSP Ltr. to J. Wolfson at 11–12 (asserting that budget documents are "relevant to SaveOn's defense that J&J failed to mitigate its purported damages"). It even parrots the very same claim that a hypothetical decision by JJHCS not "to decrease [its]

_____

projected annual costs for CarePath. SaveOnSP Ex. 1 at 16–17. SaveOnSP also relies on Request No. 94, which seeks "Documents sufficient to show business plans reflecting the total Co-Pay Spend, both anticipated and actual, for each Janssen Drug." See SaveOnSP Ex. 2 at 10. As Your Honor has recognized, JJHCS has already produced "JJHCS's budget for copay assistance through CarePath, including JJHCS's actual and projected annual costs for CarePath." Dkt. 192 at 16. Any further production of business plans "reflecting" the exact same data would be cumulative.

Honorable Freda L. Wolfson, U.S.D.J.
January 21, 2025
Page 6

spending" projections in response to accumulator or maximizer plans bears directly on JJHCS's damages. *Compare* Mot. at 7, *with* Dkt. 192 at 18–19 (describing SaveOnSP's request for budget documents as relating to its claim that JJHCS purportedly "fail[ed] to mitigate its damages by not reducing CarePath's budget"). Just as SaveOnSP's requests were "not new" when SaveOnSP raised them for the third time in April 2024, they are "not new" now—and should similarly be rejected for the same reasons. Dkt. 264 at 5.

## II.    JJHCS's Business Plans and Underlying Budget Data Are Irrelevant

SaveOnSP claims that the business plans it seeks are relevant to determine the "***how*** and ***why***" of JJHCS's CarePath spending decisions. Mot. at 6 (emphasis added). But JJHCS's determination of its overall copay assistance budget—the "how"—is not relevant to any of the claims or defenses. Indeed, how much co-pay spending JJHCS allocated over time for all patients, including those who were not coerced to enroll in the SaveOnSP program, is entirely beside the point. Rather, as the Court previously explained, all that matters is "evidence as to actual changes" to the CarePath budgets. Dkt. 264 at 5. That is exactly what JJHCS has produced: forecasted and actual co-pay spend for the drugs at issue in this case over time. *See* SaveOnSP Ex. 3. SaveOnSP does not need any further "underlying data" to assess this information. Nor does it require the "assumptions" that purportedly appear in JJHCS's business planning documents.[2] Mot. at 6–7.

---

[2] Even if these assumptions were relevant (and they are not), SaveOnSP's exhibits reveal that it already has all the information it seeks. For example, to support its request, SaveOnSP relies on Exhibit 10, which " ███████████████████████████████████████████████ ███████████████████████████ Ex. 10. SaveOnSP already has that attachment. SaveOnSP's Exhibit 14 similarly includes—directly within the cited document— ███████████████████████████." SaveOnSP Ex. 14. Another cited exhibit likewise contains ████████████████████████████████████████████████████████████ █████████████████████. Ex. 15 at 11–12.

Honorable Freda L. Wolfson, U.S.D.J.
January 21, 2025
Page 7

The "why" behind JJHCS's spending decisions is also not relevant. SaveOnSP says it needs to review business plans to understand why JJHCS determined the amount of its CarePath spending and whether it considered decreasing its spending in response to SaveOnSP—information that it claims goes to JJHCS's damages. *See* Mot. at 7. But the Court has already rejected an identical argument, ruling that SaveOnSP is not entitled to documents as to "why" JJHCS "did not make certain decisions or vice versa" with respect to CarePath spending. Dkt. 264 at 5. Such "budgetary decisions," Your Honor found, were wholly irrelevant to SaveOnSP's mitigation defense, which as noted above, requires evidence only of "actual changes" to the CarePath budget. *Id.* Indeed, as Your Honor observed, the existing caselaw recognizes that to mount a mitigation defense, a defendant only requires evidence of plaintiff's ***actual*** failure to take "reasonable mitigating measures"—not evidence of measures considered and rejected. *Id.* (citing *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 299 (3d Cir. 2014)). Discussions employees may have had about the "financial implications" of certain spending decisions, *see* Mot. at 7 (citing SaveOnSP Ex. 16), or "input" for the business plan, *see id.* (citing SaveOnSP Ex. 17), have no bearing on SaveOnSP's mitigation defense. Because JJHCS's "intent with respect to its CarePath spending," Mot. at 8, is simply not at issue in this case, there is no basis for SaveOnSP to obtain JJHCS's business plans for that information.

## III.    No Further Discovery Is Required

SaveOnSP's remaining arguments not only distort the Court's prior rulings, but also are unavailing. First, SaveOnSP argues that its request for business plans "falls squarely within Judge Waldor's prior order[]" compelling SaveOnSP to produce its own business plans to JJHCS. Mot. at 7. This tit-for-tat argument misapprehends the role that each party plays in this litigation.

7

Honorable Freda L. Wolfson, U.S.D.J.
January 21, 2025
Page 8

As SaveOnSP recognizes, JJHCS sought SaveOnSP's business plans to gain a window into SaveOnSP's "intent," which is relevant to JJHCS's claims. *See* Mot. at 8. JJHCS alleges that SaveOnSP's business model is to unlawfully enrich itself (and its partners) by misappropriating funds that are intended to help patients access the medications they need to treat serious conditions. *E.g.*, Am. Compl. ¶¶ 1–5, 8–17. Because this misappropriation is the whole point of its business, SaveOnSP's business plan documents are relevant, and the Court ordered their production. *See* Dkt. 110 at 2; Dkt. 127. By contrast, JJHCS is the plaintiff here, and SaveOnSP has not raised any claims or defenses related to JJHCS's business practices writ large that could justify review of its business plans. Merely interspersing references to JJHCS's supposed "intent" throughout its brief—particularly when such arguments are so defective—does not change this basic fact. JJHCS and SaveOnSP are not similarly situated and are not similarly obligated to produce business plans. Regardless, as SaveOnSP's own cited exhibits confirm, JJHCS's extensive existing search parameters have already captured documents that both hit upon relevant issues and relate to its business planning, and JJHCS has produced those documents. *See supra* n.2.

Second, SaveOnSP asserts that JJHCS "committed to producing" some additional "information" concerning the "details" of JJHCS's "copay assistance spending projections." Mot. at 8–9 (citing Dkt. 192 at 16). This grossly misrepresents the record. In fact, far from requiring additional documents from JJHCS, Your Honor catalogued the multitude of documents that JJHCS had *already* produced relating to its CarePath spending. *See* Dkt. 192 at 16 (identifying five broad categories of JJHCS financial documents produced in discovery). JJHCS has already produced to SaveOnSP exactly what it promised and all that SaveOnSP requires to conduct its damages analysis. *See id.* at 18–19.

Honorable Freda L. Wolfson, U.S.D.J.
January 21, 2025
Page 9

SaveOnSP nevertheless takes issue with the projections produced at JJHCS_00130090—a document that it has had since July 2023, many months before the Court's rulings on this issue. As JJHCS has repeatedly explained to SaveOnSP, JJHCS_00130090 ██████████████

████████████████████████████████████████████████████████████

████████████████████████████████ *See* SaveOnSP Exs. 6 & 12.  For example, ██████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████, *see* Dkt. 192 at 24; ████████

████████████████████████████████████████████████

██████████████████████████ To the contrary, the Court's prior ruling recognized that JJHCS's data productions were "sufficient for Defendant's damages analysis." Dkt. 192 at 18–19.  SaveOnSP is not entitled to any purported "underlying" data as it now demands.  Mot. at 4.

JJHCS also did not "unilaterally alter, withhold or redact" this data, as SaveOnSP contends, and its cited caselaw is thus inapposite.  Mot. at 5.[3]  Rather, JJHCS carefully queried a voluminous database to identify all relevant entries, and exported precisely the line-by-line ledger budget data that SaveOnSP has requested.  This was entirely proper, and indeed consistent with "best practice"

---

[3] Tellingly, none of the cases that SaveOnSP cites concern, as here, an export from a voluminous data repository.  *See Rodriguez-Ocasio v. Midland Credit Mgmt., Inc.*, 2019 WL 3821769, at *2 (D.N.J. July 23, 2019) (redactions to a purchase agreement); *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 344 F.R.D. 207, 216 (D.N.J. 2023) (redactions of documents containing information related to "other policies and insured persons" unrelated to the litigation); *Lawson v. Praxair, Inc.*, 2021 WL 12102367, at *2 (D.N.J. Mar. 26, 2021) (redactions of a safety manual); *Cyris Jewels v. Casner*, 2016 WL 2962203, at *5 (E.D.N.Y. May 20, 2016) (redactions to foster care records).

9

Honorable Freda L. Wolfson, U.S.D.J.
January 21, 2025
Page 10

in modern electronic discovery. *Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of N.Y.*, 2024 WL 1856302, at *3 (S.D.N.Y. Apr. 26, 2024) ("The Sedona Principles on Databases explicitly contemplate that when a large portion of a data set is not responsive, custom queries may need to be used to obtain the data."). SaveOnSP's arguments to the contrary "ignore[] the realities of modern business litigation, where many business records are kept in databases, and parties query these databases in order to provide responses to discovery requests." *Health All. Network, Inc. v. Cont'l Cas. Co.*, 245 F.R.D. 121, 129 (S.D.N.Y. 2007), *aff'd*, 294 F. App'x 680 (2d Cir. 2008).[4] SaveOnSP's overbroad demand for the "whole thing"—an entire database of irrelevant data—should be denied. Mot. at 6.

*        *        *

For the foregoing reasons, Your Honor should deny SaveOnSP's motion.

Respectfully submitted,

s/ *Jeffrey J. Greenbaum*
JEFFREY J. GREENBAUM

cc:    Counsel of record

---

[4] SaveOnSP claims that this case is somehow inapposite because it dealt with the "admissibility" of database excerpts—not a party's Rule 34 obligations. Mot. at 6 n.2. That is a distinction without a difference here, and it is no response at all to the court's ruling blessing parties exporting portions of databases to respond to discovery requests. Moreover, and contrary to SaveOnSP's assertions, the data that SaveOnSP seeks here is just like the "non-relevant" data in *Health Alliance Network*, which the court admonished should not be disclosed consistent with routine discovery practices. *See* 245 F.R.D. at 129 ("[P]roduc[ing] *all* data found in the[] database . . . would hurt both the producing party, who may be required to produce . . . non-relevant data . . . , and to the party making the discovery request, who would have to sort through mountains of unhelpful information during discovery. Moreover, producing limited data from a larger database is more akin to reviewing a set of documents in response to a discovery request and producing only responsive documents, than it is creating a new data compilation or document for the purposes of litigation.").

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

February 7, 2025

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

> Re:    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,
> Express Scripts, Inc., and Accredo Health Group, Inc.***
> <u>No. 2:22-cv-02632 (JKS) (CLW)</u>

Dear Judge Wolfson:

Save On SP, LLC ("<u>SaveOn</u>") writes in reply to Plaintiff Johnson & Johnson Health Care

Systems Inc.'s ("<u>JJHCS</u>" and, with its affiliates, "<u>J&J</u>") opposition to SaveOn's motion to compel

J&J to produce (1) the data and information underlying the Topline Projections; and (2) J&J's

business plans showing how and why it came to these projections.

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                                    Page 2

## I.    SaveOn's Request is Consistent with Your Honor's Prior Orders

J&J's primary argument in opposition is that Your Honor purportedly held that "documents concerning CarePath spending are irrelevant" in Orders of February 6, 2024, Dkt. 192 (the "February Order") and of April 25, 2024, Dkt. 264 (the "April Order"). Opp. 1-2, 4-7. J&J is wrong, as the text and context of those Orders show.

SaveOn moved to compel J&J to produce, among other things, "documents regarding JJHCS's budget for the CarePath program." Dkt. 150 at 1. It argued that such documents were relevant to show that (1) J&J offers CarePath funds "primarily as a marketing program to increase the sale of Janssen drugs"—relevant to SaveOn's argument that marketing expenditures could not support a GBL claim, *id.* at 4-5; (2) J&J did not anticipate providing the full $20,000 that it offers in CarePath funds to most patients because of the ACA out-of-pocket maximum—relevant to J&J's allegation that it made up to $20,000 available to all patients, *id.* at 5; (3) SaveOn does not make CarePath prohibitively expensive—relevant to J&J's allegations that SaveOn threatened CarePath's "viability," *id.*, and (4) that J&J could "reduc[e] its CarePath expenditures but chose not to"—relevant to SaveOn's failure to mitigate and acquiescence defenses, *id.* at 2, 5. SaveOn did ***not*** seek data on J&J's spending or forecasted spending for CarePath.

In denying SaveOn's request, Your Honor held that "what matters for purposes of liability and damages are not the changes that Plaintiff contemplated implementing, but actual changes that occurred." Feb. Order at 19. Your Honor accepted J&J's representation that it had produced "actual and forecasted budgets, as well as line by line ledger budget data" and had "already agreed to produce data concerning forecasted and actual expenditures." *Id.* at 18-19. Your Honor did ***not*** hold that "documents concerning CarePath spending" or "concerning changes to the CarePath budget" are "irrelevant 'for purposes of liability or damages.'" *Contra* Opp. 4 (quoting Feb. Order at 19).

SaveOn moved for reconsideration, saying that it sought "only documents going to why J&J set CarePath's annual maximums at the levels it did during the relevant time period and why, despite knowing that it was paying more due to accumulators and maximizers, J&J did not change the CarePath annual maximums." Feb. 20, 2024 Ltr. from SaveOn to J. Wolfson at 14. SaveOn asked Your Honor to "rule that the reasons why J&J set the annual maximum amounts of copay assistance for the drugs at issue at the levels that it did, and why J&J chose to maintain those levels after learning of SaveOn's services … are relevant to SaveOn's defense that J&J failed to mitigate its purported damages." *Id.* at 11-12. SaveOn did **not** ask Your Honor to rule that information on J&J's CarePath spending was relevant to J&J's alleged damages.

In denying SaveOn's reconsideration motion, Your Honor held that documents and "internal communications about why certain changes were or were not implemented" were irrelevant to SaveOn's "mitigation defense" because "[i]t matters not—for mitigation purposes—how [J&J] came to those budgetary decisions." Apr. Order at 5. Your Honor did **not** hold that discovery about CarePath's budget was irrelevant to J&J's alleged damages, much less that such discovery was categorically "irrelevant" to all topics. *Contra* Opp. 2 (quoting Apr. Order at 5).

SaveOn now seeks specific information not discussed in the February and April Orders or the parties' briefing of the disputes leading to those Orders: It seeks data underlying the actual amounts that J&J spent and forecasted spending on CarePath, and its reasons for spending those amounts. SaveOn does **not** seek documents showing that J&J's injuries are traceable to J&J's budget, *contra* Opp. 4, it does **not** seek documents showing why J&J set annual maximum payment amounts, *contra id.* at 2, 4, and it does **not** seek documents showing why J&J did or did not change benefit amounts, *contra id.* at 5. That is, SaveOn does not seek information about "changes that [J&J] contemplated implementing," but about J&J's "actual" spending and "actual" forecasts. Feb.

Hon. Freda L. Wolfson                                                              Page 4

Order at 19. J&J cannot withhold this vitally relevant information simply because it relates to CarePath's budget. *Contra* Opp. 5.

SaveOn seeks this information for a reason not at issue in the February and April Orders—to assess J&J's alleged damages. J&J put at issue the amounts that it intended to spend from CarePath absent SaveOn's conduct by alleging that it "pa[id] more money from CarePath than it otherwise would have." Am. Compl. ¶ 186. Evidence that J&J projected spending more in copay assistance because of accumulators and maximizers could show that J&J intended to pay those amounts regardless of SaveOn's conduct, and thus did not spend more than it otherwise would have. J&J also put at issue the reasons for its purportedly increased copay assistance payments when it alleged that it made those payments for a "purpose [it] did not intend." Am. Compl. ¶ 186. Evidence that providing copay assistance to members of SaveOn-advised plans was part of J&J's business model for CarePath could show that, contrary to its assertions, *see* Opp. 3, 6-7, J&J intended to make those payments to those patients. SaveOn does ***not*** seek documents about the general purpose of the CarePath program, *contra* Opp. 3—it seeks documents about J&J's specific intent in making the CarePath payments that J&J claims as its alleged damages[1]—and SaveOn does ***not*** seek documents to support a mitigation defense, *contra* Opp. 2, 5-6.

Your Honor also did ***not*** find that J&J had produced all relevant information about its alleged damages. *Contra* Opp. 3, 4-5 n.1, 8. Your Honor accepted J&J's representation that it had

---

[1] When SaveOn previously sought documents showing that the purpose of the CarePath program was to market Janssen Drugs, Feb. 20, 2024 Ltr. from SaveOn to J. Wolfson at 16, Your Honor held that J&J could sustain a GBL claim "regardless of the purpose or motivation of [J&J's] assistance program" and that "the focus is … on [J&J's'] injury as a result of the alleged deceptive practices," Feb. Order at 21. Consistent with that ruling, SaveOn seeks here documents going to J&J's alleged damages, not the purpose or motivation of the CarePath program.

Hon. Freda L. Wolfson                                                          Page 5

produced several categories of documents, saying that "according to [J&J] it has produced … doc-
uments and communications that bear on": "[t]he extent of the harm that SaveOnSP has caused
JJHCS," "[t]he data that formed the basis for the damages allegations in the Complaint," and
"JJHCS's budget for copay assistance through CarePath, including JJHCS's actual and projected
annual costs for CarePath." Feb. Order at 16; *see also id.* at 18-19 ("[J&J] claims that it made
substantial document productions … which include actual and forecasted budgets, as well as line
by line ledger budget data," as well as "data concerning forecasted and actual expenditures").
While J&J asserts that it has produced "exactly what it promised," Opp. 8, J&J is actually with-
holding key information about its alleged damages that Your Honor should compel it to produce.

## II.    The Data Underlying the Topline Projections Is Relevant

SaveOn seeks data and information underlying the ████████████. J&J concedes that
it "exported" the ████████████ from a "dataset," Opp. 9, and does not dispute that it with-
holds data underlying those projections, Mot. 4-6, 8.

J&J's assertion that SaveOn does not need this underlying data to assess the ████████
████s, Opp. 6, is incorrect. J&J's projected CarePath spending necessarily incorporates and re-
lies on a series of other data points, including for example the anticipated number of patients en-
rolled in CarePath and the anticipated average amount of copay assistance provided to those pa-
tients. The Topline Projections do not include this information; they provide only J&J's topline
conclusions about its future budgets. SaveOn requires all data that feeds directly or indirectly into
the Topline Projections to assess their accuracy, veracity, and reasonableness.

J&J's also asserts that it need not produce anything other than the ████████████ un-
der the Sedona Principles for Databases. Opp. 10. But those Principles allow parties to query only
databases containing "structured" data. The Sedona Conference, *The Sedona Conference Database
Principles Addressing the Preservation and Production of Databases and Database Information*

5

Hon. Freda L. Wolfson                                                                    Page 6

*in Civil Litigation* (the "*Sedona Database Principles*"), 15 Sedona Conf. J. 171, 177-78 (2014)

(defining "[d]atabase" as a collection of "'structured' data" with layered data elements or fields,

often with "strict rules that define how information can be entered, stored, and retrieved"). They

do not provide that parties may withhold portions of documents containing "'unstructured' data"

like "'[s]tand-alone' [electronically stored information] consisting of a self-contained file or doc-

ument," including "MS Excel" files. *Id.* at 178.

    J&J does not show that the "dataset" from which it exported the ███████████ is a

database of structured data to which the Principles might apply. Despite SaveOn's repeated re-

quests, *see* Exs. 7-9, J&J refused to provide any information about the nature of the dataset from

which it drew the ████████████, *see* Ex. 12. In opposition, J&J says that the dataset is "vo-

luminous," Opp. 9, but does not say that it is a ***structured*** database or describe any aspects of the

dataset that would allow the court to determine if it is structured. J&J thus has not shown that the

database at issue is one to which the Principles were meant to apply. Your Honor may compel J&J

to produce the underlying dataset in full, consistent with the general proposition that a party cannot

withhold allegedly irrelevant information from a relevant document. *See, e.g.*, *Rodriguez-Ocasio

v. Midland Credit Mgmt., Inc.*, 2019 WL 3821769, at *2 (D.N.J. July 23, 2019); *Lawson v. Praxair,

Inc.*, 2021 WL 12102367, at *2 (D.N.J. Mar. 26, 2021).

    Even if J&J had shown that the underlying dataset consists of structured data (it has not),

that would not allow it to withhold additional relevant data from that dataset. Under the Principles,

"the manner in which the requesting party intends to use the information" is an "important consid-

eration in how database information should be ... produced." 15 Sedona Conf. J. at 182. "For ex-

ample, when a requesting party has a legitimate need to develop an independent analysis or show

the significance of viewing the data in a certain way, responsive data must be provided in a format

that supports the legitimate intended use," often including the production of information "beyond the immediate fields that contain the substantive information at issue." *Id.* at 183-84.

SaveOn seeks the data and information underlying the ████████████, Mot. 9, so that it can test the accuracy, veracity, and reasonableness of those projections. SaveOn does not seek irrelevant information that may be in any structured database (*e.g.*, data on drugs not at issue), *contra* Opp. 10. Consistent with the Principles, J&J must produce the requested relevant information, even if that data exists within a structured database.[2]

## III.    J&J's Business Plans Are Relevant

SaveOn seeks J&J's business plans or equivalent documents showing how J&J developed its copay spending and forecasted that spending. Mot. 6-8.

J&J asserts that Your Honor held that why J&J made or did not make decisions "with respect to CarePath spending" are "wholly irrelevant," Opp. 7 (citing Apr. Order at 5), but Your Honor actually held that why J&J did or did not "make certain decisions" to mitigate was irrelevant "for mitigation purposes," Apr. Order at 5. SaveOn does not seek J&J's business plans to determine why it did not mitigate its alleged damages, but rather to assess J&J's alleged damages regardless of mitigation—to understand how much J&J intended to spend in copay assistance and the purpose for which it intended to spend it. J&J's documents show that its business plans speak to this intent in a way that other documents do not, including by explaining the assumptions built

---

[2] The only case that J&J cites applying the Principles involved a complex, structured dataset of the type that J&J has not established is present here—demographic and employment information from a variety of New York City agencies stored in multiple databases, including those maintained by the New York City Automated Personnel System and New York City Financial Information Services Agency. *Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, 2024 WL 1856302, at *4-6 (S.D.N.Y. Apr. 26, 2024).

Hon. Freda L. Wolfson                                                              Page 8

into J&J's spending projections and J&J's knowledge of the extent to which it was paying Care-
Path funds to patients on accumulator or maximizer plans. Mot. 6-7 (citing Exs. 10, 14-17). J&J
cannot withhold this information on the basis that its business plans might also include information
regarding contemplated mitigation. *Contra* Opp. 7.[3]

J&J asserts that Judge Waldor's order compelling SaveOn to produce its own business
plans is irrelevant because "SaveOnSP's core business (misappropriating patient assistance) is the
subject of claims in this litigation, whereas JJHCS's is not." Opp. 3. In fact, J&J put at issue the
intent behind the copay assistance payments that it claims as damages by alleging that those pay-
ments were more than it otherwise would have paid for a purpose it did not intend. Am. Compl.
¶ 186; *see also id.* ¶¶ 192, 203. Just as Judge Waldor held that SaveOn's business plans could
demonstrate SaveOn's business model, J&J's business plans will show whether its business model
for CarePath included payments to patients on accumulators, maximizers, or SaveOn-advised
plans.

J&J also asserts in a footnote that it has produced "all the information [SaveOn] seeks."
Opp. 6 n.2. But the fact that J&J has produced a few scattered documents revealing the existence
of its business plans, or showing limited portions of them, does not provide SaveOn with complete
information. SaveOn does not have documents, for example, covering all relevant years and drugs,
showing the ways in which J&J incorporated ███████████████████████ into its business
plans after recognizing that accumulators and maximizers were a ████████████████████
Ex. 18 at -839 (JJHCS_00352839); *see also* Ex. 17 at -881, or other assumptions and inputs rele-
vant to its projections, ██████████████████████████████████████

_____

[3] For the same reason, J&J's cited caselaw regarding what is necessary to establish a failure to
mitigate, Opp. 7, is inapposite.

Hon. Freda L. Wolfson                                                        Page 9

████████████, *see* Ex. 10 at -322, -325 ████████████████████████████████████

████████████); Ex. 14 at -327-28 (same). SaveOn needs complete information about J&J's

actual and anticipated CarePath spending for all relevant drugs for the full relevant time period.

     SaveOn appreciates Your Honor's attention to this matter.

     Respectfully submitted,

/s/ *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

Exhibit 18 Confidential

Filed Under Seal