# EXHIBIT B

# Sills Cummis & Gross

A Professional Corporation

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102-5400**
**Tel: 973-643-7000**
**Fax: 973-643-6500**

Jeffrey J. Greenbaum
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL**
**UNDER THE DISCOVERY CONFIDENTIALITY ORDER**

January 24, 2025

<u>**VIA Email**</u>

Honorable Freda L. Wolfson, U.S.D.J.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

> Re:    Opposition to SaveOnSP's January 3, 2025 Motion to Compel
> *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
> Civil Action No. 22-2632 (JKS) (CLW)

Dear Judge Wolfson:

On behalf of JJHCS, we write to oppose SaveOnSP's January 3, 2025 motion to compel the review of approximately 26,000 documents from 12 custodians at TrialCard Inc., now known as Mercalis Inc. ("TrialCard"). TrialCard, which is a third party, has already produced thousands of custodial and non-custodial documents in this case. And JJHCS's own productions also thoroughly cover the topics for which SaveOnSP claims to need more discovery from TrialCard. Nonetheless, SaveOnSP persists in its unduly burdensome, unjustified, and disproportionate demands.

As the Court will recall, TrialCard is a vendor that helps JJHCS administer the CarePath program pursuant to a Master Services Agreement ("MSA"). Most of its work is logistical in nature and has nothing to do with the claims and defenses in this case. Indeed, TrialCard provides services across the industry and has more than 500 other life sciences clients. While the Court has held that

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 2

JHCS has access to certain documents from TrialCard's files under the MSA, the fact remains that TrialCard is an independent company, with its own leadership, offices, and counsel.

At this point in discovery, TrialCard's relevance is largely cabined to the role it played with respect to the CAP Program and the benefits investigations that TrialCard conducted for JHCS to determine whether a patient was, in fact, on a maximizer like SaveOnSP. SaveOnSP claims to need more TrialCard discovery to learn which patients JHCS suspected might be in SaveOnSP. But on that score, SaveOnSP has everything it needs. TrialCard has already produced thousands of documents from four custodians—Holly Weischedel, Sini Abraham, Paul Esterline, and Rick Fry—who worked with JHCS on the CAP Program. *See, e.g.*, SaveOnSP Ex. 75. TrialCard has also produced many noncustodial documents, including every single relevant benefits investigation, all relevant data compilations, and call and task notes. That is an extraordinary volume of discovery from an independent third party company. And that is on top of voluminous discovery that JHCS has itself provided to SaveOnSP about all relevant issues, including the CAP Program.

But SaveOnSP wants more. It demands that JHCS add eight additional custodians from TrialCard and run a variety of expansive search terms over their documents. It also demands that JHCS run many of those search terms over the files of the four existing TrialCard custodians—even though thousands of documents have already been produced from their files. Demanding 12 custodians from a third party on a range of issues is simply extraordinary—it is more than the number of party custodians in many cases. Yet SaveOnSP has demanded that TrialCard run broad terms over their documents and then turn those documents over to JHCS for further review and production. Unsurprisingly, SaveOnSP's blunderbuss approach would require the review of approximately 26,000 new documents (family inclusive).

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 3

SaveOnSP's take-it-or-leave-it demand is more of the same "follow every breadcrumb" approach that SaveOnSP has pursued for months. SaveOnSP also lards this filing, like several of its others, with more than 100 exhibits.[1] As before, SaveOnSP mischaracterizes many of these documents, hoping that the sheer volume will suffice, regardless of their substance. In reality, they show only this: SaveOnSP has received extensive discovery on JJHCS's mitigation efforts, and it cannot identify material gaps that would warrant the sweeping discovery it demands now from TrialCard. Your Honor should deny SaveOnSP's motion.

## BACKGROUND

### I.    TrialCard Provides a Vast Array of Services to JJHCS and Hundreds of Other Clients

TrialCard works with more than 500 life sciences clients. *See* www.mercalis.com. TrialCard's services include administering patient assistance programs for several pharmaceutical companies, but its offerings also go well beyond that, "span[ning] the entire biopharmaceutical value chain" to include services as varied as "late-stage clinical trial management" and "life sciences consulting." Ex. 1 (2024 MSA) at 1. JJHCS is just one of TrialCard's many clients.

Since at least 2011, JJHCS has engaged TrialCard as a vendor to "support patients prescribed a Janssen medication." Ex. 2 (2017 MSA) at 1. That includes administering not only the CarePath program but also other JJHCS programs not at issue in this case. Ex. 1 (2024 MSA) at 30–31. With respect to CarePath, TrialCard performs a variety of functions, such as setting up a patient portal on JJHCS's website, administering a patient hotline, developing and issuing debit cards to patients, and remitting payments to patients. *See* SaveOnSP Ex. 47 at -1126–27. TrialCard also conducts benefits

---

[1] In addition, SaveOnSP shows disregard for this Court's page limit rules by once again submitting a letter brief filled with many exceedingly long, single-spaced footnotes (some taking more than a half-page) that result in a far wordier brief than contemplated by the Court's page limit.

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 4

investigations, the "vast majority" of which are done to simply confirm a patient's insurance coverage and do not relate to issues relevant to this litigation.  Dkt. 163 at 1.

At issue here is one slice of TrialCard's work for JJHCS—its work identifying patients in the SaveOnSP program, and in particular, helping develop and administer the CAP Program.  The CAP Program, and TrialCard's role with respect to it, has been the subject of extensive discovery.  At this point, JJHCS has reviewed more than 60,000 documents (family inclusive) from dozens of its own custodians that hit on the terms "CAPm," "CAPa," or "adjustment program."  Ex. 3 (Aug. 1, 2024 Ltr. from I. Eppler to H. Miles).  That includes approximately 8,000 documents, family inclusive, that hit on a TrialCard-specific search term[2] that JJHCS has run over the files of 22 of its custodians. Those terms would capture any relevant communications between JJHCS and TrialCard.

TrialCard itself has produced thousands of documents from four custodians involved in relevant issues—Sini Abraham, Holly Weischedel, Paul Esterline, and Rick Fry.  All four had operational and strategic responsibilities related to the CAP Program.  During the relevant time period, Weischedel served as Senior Director of Patient Affordability Support; Abraham served as Senior Vice President, Market Access Operations and also held roles in TrialCard's Client Services and Hub Services divisions; Esterline served as Director of Reporting and Analytics; and Fry served as Senior Vice President, Client Solutions.  *See* Ex. 4 (July 13, 2023 Ltr. from K. Brisson to E. Holland) at 3; SaveOnSP Ex. 2 at 2.

And in addition to those custodial documents, TrialCard has produced thousands of patient call notes and records of benefits investigations that TrialCard conducted specifically to determine

---

[2] That term is: TrialCard w/25 (accumulator OR maximizer OR CAPm OR CAPa OR "adjustment program" OR EHB OR NEHB).

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 5

whether a patient taking Stelara or Tremfya was also enrolled in a maximizer program such as

SaveOnSP.  SaveOnSP has everything it needs to fully understand the CAP Program.

## II.    SaveOnSP Demands Sweeping TrialCard Discovery In Response to Your Honor's May 2024 Ruling

In May 2024, Your Honor ruled that the MSA between JJHCS and TrialCard provides JJHCS

with legal control over certain TrialCard documents requested by SaveOnSP.  SaveOnSP has taken

Your Honor's ruling as a license to demand expansive discovery from TrialCard.  As reflected by its

complaints about pace of production, SaveOnSP has also routinely disregarded the fact that TrialCard

is an independent company and that JJHCS has no physical control over TrialCard's documents.

Following Your Honor's ruling, SaveOnSP requested not only a "refresh" of TrialCard's prior

productions from the files of the four original TrialCard custodians but also that JJHCS run fifteen

broad search terms for the entire discovery period (April 1, 2016 to November 7, 2023) over the files

of seven additional TrialCard custodians—at first.  SaveOnSP Ex. 3.  It later demanded an eighth

TrialCard custodian, *see* SaveOnSP Ex. 82, and eight new search terms over the files of the four

original TrialCard custodians, *see* Ex. 5 (Sep. 6, 2024 Ltr. from J. Chefitz to H. Miles) at 2–3.

Notwithstanding its objections, JJHCS asked TrialCard's counsel to collect the documents of

all eight additional custodians that SaveOnSP had requested in order to provide hit counts for all of

SaveOnSP's proposed search terms.[3]  Those hit counts confirmed what JJHCS had long explained to

SaveOnSP:  its requested discovery was overbroad and disproportionate.  More back-and-forth

---

[3] As it has done in previous filings, SaveOnSP accuses JJHCS of unwarranted delay in "provid[ing] accurate hit counts for SaveOn's proposed searches."  Mot. at 2.  Not so.  As JJHCS has previously explained, it cannot run these hit counts on its own; it must convey SaveOnSP's requests to TrialCard, which then makes its own determinations as to what it considers reasonable and within the scope of the MSA.  *See* Oct. 10, 2024 JJHCS Opp. Ltr. at 5.  And JJHCS has taken extensive steps to address SaveOnSP's requests and comply with Your Honor's May 2024 ruling.  *Id.* at 6–8.

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 6

followed, but SaveOnSP's final proposal still hit on a very large universe: 25,988 unique documents, family inclusive.  SaveOnSP Ex. 95.  SaveOnSP demanded that JJHCS either agree to its proposal or it would consider the parties at impasse.  SaveOnSP Ex. 14.  This motion ensued.

<strong>ARGUMENT</strong>

## I.  SaveOnSP's Request Is Unduly Burdensome and Disproportionate

Your Honor has taken great care, even in connection with party discovery, to limit discovery to any legitimate gaps that remain.  Here, both JJHCS and TrialCard have already produced extensive discovery on "the creation and implementation of the CAP Program, and benefits investigations into whether patients were on SaveOnSP programs."  Dkt. No. 307 (May 28, 2024 Order) at 10.  And Your Honor's prior rulings on the scope of the MSA do not allow SaveOnSP to seek TrialCard documents without regard to proportionality.  Requiring the review of around 26,000 additional documents from 12 custodians associated with a third party, including 8 entirely new custodians, should not be countenanced.

The vexatious nature of SaveOnSP's request is compounded by the fact that these are documents that JJHCS must obtain from TrialCard pursuant to JJHCS's audit rights under the MSA.  As JJHCS has previously explained, TrialCard has decided to review the requested documents before providing them to JJHCS, both to protect TrialCard's privilege and to ensure that the documents are, in fact, within the scope of the MSA.  *See* Nov. 4, 2024 JJHCS Opp. Ltr. at 11.  That means that, to review and produce these documents, both JJHCS counsel and TrialCard counsel will engage in separate review of the relevant universe.

SaveOnSP tries to justify the burden of its request by reframing it in terms of documents per custodian, claiming that it is requesting "an average of fewer than 2,200 documents per custodian"

6

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 7

and that Your Honor has previously found that 2,500 would not be unduly burdensome for a new

custodian. Mot. at 13. But this argument is flawed because SaveOnSP is asking for eight custodians,

not one—all of whom are third party custodians. The average documents per custodian is irrelevant

to the burden that SaveOnSP's proposal imposes; what matters is the *total* number of documents that

will need to be reviewed, which is close to 26,000.

## II.    SaveOnSP Cannot Justify Adding the Eight Additional TrialCard Custodians

The infirmity of SaveOnSP's position is apparent upon close review of its eight proposed

additional custodians. SaveOnSP distorts and inflates each individual's actual role, and none are

necessary to fill any material gap in the record.

**Rick Ford.** SaveOnSP argues that it needs Ford's documents because he "evaluated J&J's

potential responses to SaveOn as early as 2019." Mot. at 4. Nonsense. What SaveOnSP characterizes

to the Court as a document ███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████—seemingly in response to a request from a

different manufacturer (Biogen). SaveOnSP Ex. 16.

SaveOnSP fares no better with its other "evidence." None of its many exhibits suggest that

Ford was involved in JJHCS's *actual* response to SaveOnSP, or even the CAP Program. As Your

Honor has repeatedly made clear, "What matters for purposes of liability and damages are not the

changes that Plaintiff contemplated implementing, but actual changes that occurred." Dkt. No. 192

at 19. Nearly all the exhibits that SaveOnSP cites involve generalized discussions about accumulators

and maximizers, not about JJHCS in particular or its actual response to SaveOnSP. Indeed, some

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 8

pertain to other manufacturers.  *See* SaveOnSP Ex. 19 (█████████████████████

███████████).  SaveOnSP's attempts to inflate Ford's role vis-à-vis JJHCS fail too.  SaveOnSP

suggests that Ford ████████████████████████████ Mot. at 5, when, in fact, he

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████ SaveOnSP Ex. 18.  And while SaveOnSP claims that JJHCS "relied on

Ford's knowledge of SaveOn and similar services," Mot. at 5, the slides referenced in SaveOnSP's

cited exhibit provide only a high-level overview of ████████████████████████████

████████████████████████████████████████████████████████████

██████████ Ex. 6 (JJHCS_00290368) at slide 2.  They do not discuss the CAP program or offer

suggestions about how to combat SaveOnSP.  *Id.*

   Given Ford's lack of involvement in JJHCS's response to SaveOnSP, it is unreasonable and

disproportionate to run eight expansive search terms over his files.  And it is all the more unreasonable

and disproportionate to seek documents from him going back to April 1, 2016 when SaveOnSP cites

no document involving Ford from before 2019 and when the CAP program did not begin until 2022.

   Finally, SaveOnSP suggests that Ford's documents are needed to cast light on the meaning of

the CarePath T&Cs because, at one point, he commented that ████████████████████████

███████████████████████████████ SaveOnSP Ex. 23.  This is a slender reed.

That comment was not about the CarePath T&Cs in particular.  Nor does SaveOnSP explain why

Ford's general industry commentary is probative of the meaning of the CarePath T&Cs, which were

written by JJHCS.  At this point, SaveOnSP has taken extensive discovery from JJHCS regarding the

meaning of the CarePath T&Cs; JJHCS has now reviewed more than 130,000 documents on that issue

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 9

from more than 40 custodians, not including the further discovery on this issue stemming from Your

Honor's January 15, 2024 rulings.  Further discovery on that subject from Ford is not warranted on

this record.

**Jason Zemcik.**  As with Ford, SaveOnSP cites no evidence suggesting that Zemcik played

any significant role in the CAP Program.  Instead, SaveOnSP points to several documents that involve

high-level, generalized discussions that TrialCard had about accumulators, maximizers, and

SaveOnSP, including some in the context of TrialCard's work for other manufacturers.  *See, e.g.*,

SaveOnSP Ex. 26 (███████████████████████████).  What SaveOnSP

characterizes as ███████████████████████████████████████

████████████ Mot. at 6 n.6, is in fact ████████████████████████

█████████████████████████████████████ SaveOnSP Ex. 28.

None of this justifies adding Zemcik as a custodian, let alone running a sweeping array of search

terms over his files.

SaveOnSP points to JJHCS's initial interrogatory responses from January 2023, in which

JJHCS █████████████████████████████████████████

████████████████████████ But as subsequent discovery has shown,

his role was peripheral, whereas TrialCard's existing four custodians played a central role.  Indeed,

SaveOnSP's own exhibits show that, in July 2022 (shortly after the CAP Program began), Zemcik

moved to an entirely new role within the company.  *See* SaveOnSP Ex. 31 at -464.  That, of course,

has not stopped SaveOnSP from demanding Zemcik's documents through November 7, 2023—over

a year after he had stopped working on issues related to accumulators and maximizers.  Anything

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 10

further from Zemcik would be disproportional and unreasonable: SaveOnSP has not shown any gap

that his documents will fill.

**Tommy Gooch.**  Expansive discovery from Gooch is also unwarranted.  While he did play a

role in implementing the CAP Program, SaveOnSP overstates his significance.  SaveOnSP asserts

that Gooch was the "Implementation Manager" for ███████████████████ but ignores that

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████  *See* SaveOnSP

Ex. 36 at 2406–07.  That CAP program, unlike the one for Stelara and Tremfya, was of a far more

limited scope and did not apply to patients in the SaveOnSP program.  *See* Ex. 7 (JJHCS_00248525).

Indeed, several of SaveOnSP's cited documents with respect to Gooch involved entirely different

programs from the one at issue, including a ███████████████████████, which as

JJHCS has repeatedly explained, was never even implemented during the relevant time period.  *See*

Jan. 17, 2025 Ltr. from J. Long to H. Miles at 1.

Finally, even as to the CAP Program for Stelara and Tremfya, SaveOnSP's proposed

discovery sweeps too broad.  SaveOnSP demands his documents going back to April 1, 2016, despite

citing not a single document from before November 2021.  Nor does SaveOnSP explain why several

of the proposed search terms makes sense for Gooch.  For instance, SaveOnSP does not explain why

general terms related to CarePath, such as ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J

OR JnJ OR JJHCS OR Janssen) AND (enroll w/5 CarePath) AND contact* are reasonably calculated

to identify responsive documents in Gooch's files related to the implementation and administration

of the CAP Program.  And again, the CAP Program has been thoroughly covered and SaveOnSP

makes no showing that Gooch's documents are needed to fill any apparent gap.

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 11

**Lynsi Newton.**  SaveOnSP argues that it needs Newton's documents because she has "oversee[n] the day-to-day administration" of the CAP program "since 2022."  Mot. at 8.  To begin with, that does not justify SaveOnSP's demand that TrialCard search for Newton's documents from as far back as April 2016.  And the examples that SaveOnSP provides of Newton's involvement in the CAP Program also do not suggest that she is a significant source of unique, relevant documents.  SaveOnSP points to an email in which Newton ███████████████████████████████ ███████████████████████████████████████████████████████.  *See* SaveOnSP Ex. 52.  But another JJHCS custodian (Bill Robinson) and multiple current and proposed TrialCard custodians are all on that email thread.  That Newton sent such an email—which SaveOnSP mischaracterizes as ███████████████████████████████ Mot. at 8—hardly justifies adding her as yet another custodian in this case.  And several other emails that SaveOnSP cites show that Newton generally worked together with existing TrialCard custodians Holly Weischedel and Sini Abraham when responding to requests from JJHCS (including JJHCS custodians such as Jasmeet Singh) related to the CAP Program.  *See, e.g.*, SaveOnSP Exs. 59 & 60.  Seeking extensive discovery from Newton is disproportionate and unreasonable.[4]

**April Harrison**.  According to SaveOnSP, Harrison is relevant because she "was responsible for ███████████████████████████████████████."  Mot. at 9.  The documents that SaveOnSP cites, however, show nothing of the sort.  SaveOnSP points to an email in

---

[4] It is also of no moment that JJHCS ███████████████████████████████████ ████████████  SaveOnSP Ex. 24 at 5.  That Newton and others had such responsibility does not warrant adding them as additional custodians at this late date, especially since TrialCard communicates with CarePath patients for a whole host of reasons, many of which have nothing to do with the CAP Program.

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 12

which Harrison states that ███████████████████████████████████████

████████    *See* SaveOnSP Ex. 62.  That is not the same thing as █████████████████

███████████    Mot. at 9.  Moreover, Harrison's edits and comments, which SaveOnSP failed to

provide the Court, were minor (*e.g.*, adding a TrialCard phone number) and presented along with

edits and comments from several others, including existing JJHCS custodians such as Daphne

Longbothum.  *See* Ex. 8 (JJHCS_00008769).  And the business rules document at issue did not even

concern the CAP Program for Stelara and Tremfya.  Rather, it related to ████████████████████

████████████████████████████████████████████████████████████████████████

█████████.  In fact, nearly all of the exhibits that SaveOnSP cites in support of Harrison involve

plans for irrelevant programs for drugs other than Stelara and Tremfya that have not been

implemented with respect to SaveOnSP.  *See, e.g.*, SaveOnSP Exs. 63, 65–72 (████████████████

█████████████████████████).  As discussed above with respect to Gooch, such documents

are irrelevant here.  *See supra* at 10.  They certainly provide no basis to add Harrison as a custodian

and run sweeping search terms over her documents as far back as April 2016.

**Amber Maldonado**.  SaveOnSP demands a wide array of search terms over Maldonado's

files going back to April 1, 2016.  But SaveOnSP does not show any relevant activity by Maldonado

before late 2021.  SaveOnSP also does not explain the relevance of the search terms that it proposes,

as only three of SaveOnSP's eight proposed terms for her are "terms related to the CAP Program."

*See* Mot. at App'x 1.  The others are not tied to CAP at all (*e.g.*, (Accredo OR Acredo) w/25

(accumulat* OR maximiz*)).  And, to the extent that Maldonado worked on relevant issues related

to the CAP Program after 2022, she did so alongside several existing JJHCS and TrialCard

custodians—many of SaveOnSP's cited exhibits for Maldonado are email threads with existing

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 13

TrialCard custodians, *see, e.g.*, SaveOnSP Ex. 75 (email including all four existing TrialCard custodians), and/or existing JJHCS custodians, *see, e.g.*, SaveOnSP Ex. 80 (email including JJHCS custodian Jasmeet Singh and TrialCard custodians Sini Abraham and Holly Weischedel). Nothing further from her specifically is appropriate.

**Tony McInnis.** According to SaveOnSP, McInnis is relevant because of his role with respect to one, limited subject: the CAP appeals process. At the threshold, and as with other custodians, this theory of relevance does not justify searching his documents from as early as April 2016—the first CAP appeal did not occur until February 2022. *See* Ex. 9 (JJTCMSA_0000002) (record of CAP appeals maintained by TrialCard). Nor does this theory of relevance support running the full suite of terms that SaveOnSP is demanding here, which hit on thousands of documents from McInnis's files alone. *See* Ex. 10 (TrialCard hit counts) at 3. Indeed, each of SaveOnSP's requested terms sweeps far broader than "CAP appeals" and many have nothing to do with them, such as ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (enroll w/5 CarePath) AND contact*. Such expansive discovery is unjustified for a custodian who SaveOnSP admits has only limited relevance.

Even as to CAP appeals specifically, JJHCS has already made a noncustodial production from TrialCard showing the outcome of every relevant CAP appeal since the program's inception. *See* Ex. 9 (JJTCMSA_0000002). And that is on top of the many emails that JJHCS has produced from its own custodians on this subject. SaveOnSP certainly does not need every email about every appeal from every patient—the documents produced about appeals are more than sufficient for SaveOnSP to present whatever mitigation arguments it chooses regarding this tangential topic.

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 14

**Cosimo Cambi.** SaveOnSP seeks Cambi's documents because he is TrialCard's supposed

█████████████████████████████████████ and because JJHCS identified him over two years ago as █

█████████████████████████████████████████████████████████████████

███████████████████████ Mot. at 11. But as with other custodians, SaveOnSP presents

scant evidence of Cambi's actual work on the CAP Program that would justify adding him as a

custodian here. Instead, SaveOnSP largely points to discussions and analyses regarding accumulators

and maximizers more generally. *See, e.g.*, SaveOnSP Ex. 20. That is not enough to support adding

Cambi as yet another custodian in this case.

**III.    SaveOnSP's Search Terms Are Overbroad**

SaveOnSP also cannot justify the eight search terms that it proposes, which sweep too broadly

and are not narrowly tailored. SaveOnSP defends all of its proposed terms by arguing that either

JJHCS or TrialCard has already run these terms (or broader versions of them) over many existing

JJHCS and/or TrialCard custodians. *See, e.g.*, Mot. at 12. As the Court has recognized in its rulings,

however, just because a term is appropriate for one set of custodians does not make it so for every

custodian in the case, all the more so given that JJHCS and TrialCard are not similarly situated.

Moreover, the fact that JJHCS and/or TrialCard has already run these terms over other custodians'

files (and therefore produced relevant documents) only underscores the cumulative nature of

SaveOnSP's proposal here.

SaveOnSP's terms also have several other problems, as detailed below in the same three

categories used in SaveOnSP's motion: (i) "terms related to SaveOn"; (ii) "terms related to CarePath";

and (iii) "terms related to the CAP Program." *See* Mot. at App'x 1.

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 15

### a. "Terms Related to SaveOn"

SaveOnSP proposes three terms in this category, all of which are overbroad:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP

- ("Express Scripts" OR ESI OR ExpressScripts) w/25 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/25 (accumulat* OR maximiz*)

The first term includes the phrase "save on," which sweeps in numerous false hits, including standard CarePath promotional material unrelated to SaveOnSP that has been produced many times over from both JJHCS and TrialCard. *See, e.g.*, Ex. 11 (JJHCS_00082344) at -2347 (███████████████████████████████████████████████████████████████████████████████) (emphasis added). Given TrialCard's role in administering CarePath, its custodians likely possess many such documents. That this term hits on 3,098 documents (9,377 with families) therefore does not confirm that these custodians "regularly discussed SaveOn while working for J&J," as SaveOnSP argues. Mot. at 14.

SaveOnSP's other two terms in this category are likewise overbroad. SaveOnSP insists that it needs those terms to "pick up documents concerning benefits investigations that often classified ESI and Accredo patients as associated with a maximizer or accumulator without mentioning SaveOn by name," citing three benefits investigations that "hit on SaveOn's proposed search terms." Mot. at 14 & n.20. But those investigations in fact address a ***different*** maximizer company (Pillar Rx), not SaveOnSP, confirming the overbreadth of these terms. *See* SaveOnSP Exs. 98–100; *see also* Oct. 30, 2023 Hearing Tr. at 101, 104 (ordering that searches related to the CAP Program must be "related to SaveOn[SP]," not other maximizers). Regardless, TrialCard has already produced all relevant benefits investigations to SaveOnSP. *See* Ex. 12 (Mar. 12, 2024 Ltr. from S. Arrow to H. Miles).

15

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 16

### b. "Terms Related to CarePath"

This second category contains the following two terms:

- ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (enroll w/5 CarePath) AND contact*

- ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (CarePath w/5 "term* and condition*")

As with the prior category, these are not narrowly tailored to identify relevant documents in TrialCard's files. The first term will hit on virtually any communication (or template thereof) to a patient enrolled in CarePath. *See, e.g.*, Ex. 13 (TRIALCARD_00010300) (███████████ ████████████████████████████████████████████████████ ████████████████). It will also hit on images of patient portals. *See, e.g.*, Ex. 14 (TRIALCARD_00010560). To the extent that any such documents are even relevant, SaveOnSP should already have them, as it admits that this term has already been run over the files of the existing TrialCard custodians, and JJHCS has produced documents responsive to these searches as well. Insisting that it be run again over eight more custodians is disproportionate.

SaveOnSP likewise fails to justify the second term in this category. That term is seemingly designed to hit on any document that mentions the CarePath terms and conditions. Not only will that generate false hits, but it also is a topic on which JJHCS has already produced substantial discovery—including the review of more than 130,000 documents across 40 custodians. SaveOnSP insists that this search is necessary to locate "documents relevant to the T&Cs' 'disputed meaning,'" Mot. at 18, but it fails to explain why the proposed TrialCard custodians are likely to have relevant documents on this subject, *see supra* at 8–9. TrialCard's views about the meanings of the terms and conditions are irrelevant, as TrialCard did not write them and there is no reason to think any of these custodians

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 17

debated their meaning.  SaveOnSP asserts that the proposed TrialCard custodians "helped revise the

CarePath T&Cs," Mot. at 18, but SaveOnSP's cited documents show nothing of the sort; at most, one

proposed custodian suggested minor irrelevant edits to a business rules document.  *See* SaveOnSP

Ex. 62.  That does not support running these broad terms.  At this point, SaveOnSP has taken extensive

discovery from JJHCS regarding the meaning of the CarePath T&Cs; there is no basis to extract

further discovery on that subject now from TrialCard.

### c. "Terms Related to the CAP Program"

SaveOnSP's final category of proposed terms are three that supposedly relate to the CAP

Program and contain the largest drivers of hits:

- (CAPa OR CAPm OR "adjustment program") w/25 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*)

- (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/15 (6000 OR 6,000 OR limit OR eliminate) w/50 (OOP OR "out of pocket" OR "out-of-pocket" OR max* OR benefit* OR offer*)

- ("essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*) w/50 (CAPa OR CAPm OR "adjustment program" OR accumulat* OR maximiz*)

These are not, as SaveOnSP asserts, "narrowly tailored" search terms.  SaveOnSP admits that,

despite calling them terms "related to the CAP Program," the terms actually seek documents that are

not relevant to CAP, including documents from "years before J&J launched the CAP program" (in

2022).  Mot. at 15.  That is far afield from the scope of the Court's order, which referred to "the

creation and implementation of the CAP Program, and benefits investigations into whether patients

were on SaveOnSP programs."  Dkt. No. 307 (May 28, 2024 Order) at 10.

And that is not all that these terms sweep in.  The first will hit on any document containing

the term "adjustment program" within 25 words of general terms like "accumulate" and "maximize."

Honorable Freda L. Wolfson, U.S.D.J.
January 24, 2025
Page 18

That will draw in any reference to an "accumulator adjustment program" regardless of its connection to either SaveOnSP or the CAP Program.  What's more, most of the documents hitting on that term appear to come from Tony McInnis's files.  *See* Ex. 10 (TrialCard hit counts).  As explained above, and as SaveOnSP acknowledges, Tony McInnis's relevance is limited to his involvement in the CAP appeals process, a topic on which SaveOnSP has already received significant discovery.  *See supra* at 13.

The second term in this category is likewise overbroad.  Given TrialCard's role as the administrator of the CarePath program, the TrialCard custodians certainly have many documents in their possession that contain works like "Stelara" or "CarePath" or "Savings Program" that are irrelevant to the claims and defenses in this case.  But they will be swept into this search, and the loose w/50 limiter to generic terms like max*, benefit*, and offer* imposes no meaningful guardrail.

Unsurprisingly, the first two terms of this set alone hit on more than 16,000 documents, family inclusive.  That does not mean, as SaveOnSP argues, that these custodians "were central to the CAP program."  Mot. at 18.  It simply means that the terms are overbroad.

* * *

For the foregoing reasons, the Court should deny SaveOnSP's motion.

Respectfully submitted,

*/s/ Jeffrey J. Greenbaum*
    JEFFREY J. GREENBAUM


cc:  All counsel of record

# Exhibits 1-2 Confidential

# Filed Under Seal

# Exhibit 3



August 1, 2024

Ian Eppler
(212) 336-2205

**VIA EMAIL**

Hannah R. Miles, Esq.
Selendy Gay, PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    **SaveOnSP's Request Nos. 58-62, 68, 73, 82**
*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
No. 2:22-cv-02632 (JKS) (CLW)

Dear Hannah:

We write in response to your July 25, 2024 letter, and in further to our letters of February 28, 2024, April 26, 2024, May 22, 2024, June 13, 2024, and July 12, 2024, regarding JJHCS's Responses and Objections to SaveOnSP's Fourth and Fifth Sets of Requests for Production.

## I.    RISRx Search Terms—Request Nos. 58 and 59

JJHCS stands by its objection to the "w/50" proximity limiter in SaveOnSP's proposed search term, in light of Judge Wolfson's May 9, 2024 Order holding that "w/50" proximity limiters are generally overbroad. Contrary to SaveOnSP's claims, JJHCS has sought to comply with Judge Wolfson's guidance regarding the use of proximity limiters, and it expects SaveOnSP to do the same.[1]

---

[1] SaveOnSP cites instances in which JJHCS has sought "w/50" connectors, but those instances are distinguishable. Some of the requests cited by SaveOnSP are not new requests for terms relying on "w/50" proximity limiters, but were made before Judge Wolfson provided new guidance on the proper use of proximity limiters. *See, e.g.*, Apr. 24, 2024 Ltr. from M. Nussbaum to I. Eppler at 2 (conditionally agreeing to run search term containing a "w/50" proximity limiter to satisfy JJHCS's Request No. 110); June 17, 2024 Ltr. from S. Suri to M. Nussbaum (asking SaveOnSP to confirm that it will abide by its agreement). Others are instances in which JJHCS has asked SaveOnSP to run multi-part terms that contain "w/50" or "AND" limiters, but also incorporate narrower proximity limiters (such as "w/20") in an effort to comply with Judge Wolfson's guidance. *See,*

Hannah Miles, Esq.
August 1, 2024
Page 2

As an alternative to SaveOnSP's overbroad term, JJHCS reiterates its offer to run the following term, which elicits 745 documents (inclusive of families). Please confirm whether SaveOnSP will accept JJHCS's compromise proposal:

- (RIS OR RISRx) **w/25** (accumulator* OR maximizer* OR CAPm OR CAPa OR "adjustment program")

## II.    TrialCard Search Terms—Request Nos. 58 and 59

In its July 12, 2024 letter, JJHCS previously explained that the following proposed search terms are unduly burdensome, citing the excessive hit counts elicited by the terms, the near-complete overlap between the two terms, and the use of excessively broad "w/50" proximity limiters:

- (TrialCard /50 identif*) AND (accumulat* OR maximiz* OR CAPa OR CAPm OR "adjustment program" OR EHB OR NEHB)

- TrialCard /50 (accumulator* OR maximizer* OR CAPm OR CAPa OR "adjustment program")

JJHCS proposed a compromise, which SaveOnSP has now rejected in favor of marginally narrower versions of its previous proposal:

- (TrialCard **/25** identif*) AND (accumulat* OR maximiz* OR CAPa OR CAPm OR "adjustment program" OR EHB OR NEHB)

- TrialCard **/40** (accumulator* OR maximizer* OR CAPm OR CAPa OR "adjustment program")

Although SaveOnSP's latest proposal removes the overly broad "w/50" proximity limiters, these newly proposed terms remain unduly burdensome. The first proposed term elicits 3,586 documents, and the second elicits 11,304 documents (both inclusive of families). Reviewing and producing this volume of documents will be unduly burdensome for JJHCS. The burden associated with these search terms is especially significant because JJHCS has already agreed to run several search terms designed to capture documents related to these topics, including over 54,000 documents (inclusive of families) hitting on the terms "CAPm," "CAPa," or "adjustment program." Additionally, the two proposed terms retain the near-complete overlap noted in JJHCS's July 12, 2024 letter.

_____

*e.g.*, June 25, 2024 Letter from B. Robinson to M. Nelson (proposing "gift card" **w/20** (enroll* OR join* OR use OR "sign up" OR regist*)) AND (patient* OR member*)).

Hannah Miles, Esq.
August 1, 2024
Page 3

JJHCS stands by the compromise it proposed in its July 12, 2024 letter.  Subject to SaveOnSP's agreement that will resolve the parties' dispute over both TrialCard-related search terms, JJHCS will run the term below to search for documents responsive to Request Nos. 58 and 59.  Please confirm whether SaveOnSP will accept JJHCS's proposed compromise.

- (TrialCard /25 identif*) **/25** (accumulat* OR maximiz* OR CAP OR CAPa OR CAPm OR "adjustment program" OR EHB OR NEHB)

**III.    IQVIA**

JJHCS confirms that it will run SaveOnSP's proposed IQVIA search term: "IQVIA w/15 (accumulat* OR maximiz* OR copay OR co-pay OR CAP OR CAPa OR CAPm OR "adjustment program")."

*        *        *

We are available to meet and confer.

Very truly yours,

Ian Eppler

# Exhibit 4



July 13, 2023

Katherine Brisson
(212) 336-2552

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:     ***Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC***
          ***Case No. 2:22-cv-02632 (ES) (CLW)***

Dear Emma:

On behalf of TrialCard, we write in response to your July 7, 2023 letter concerning TrialCard's production from document custodians in response to Save On SP, LLC's subpoena.

First, TrialCard will conduct custodial searches and produce documents in response to the requests for which it has already agreed to produce documents. As you know, we have previously agreed to produce from non-custodial sources documents that are responsive to Request Nos. 1, 2, 3, 18(i)-(m), and 30. To the extent the custodial files that are to be searched as detailed below include non-privileged documents responsive to those requests, we will produce them.

In addition, in the interest of resolving the issues raised during the meet and confer process and subject to our prior objections, TrialCard agrees to search for and produce non-privileged custodial documents expressly referencing SaveOnSP in response to Request Nos. 8, 9, 11, 12, 13, 14, and 15. As to the remaining requests, we refer you to our Responses and Objections to the subpoena, dated March 6, 2023, and our prior correspondence dated April 7, 2023, May 12, 2023, and June 7, 2023 for our position on each request. For the avoidance of doubt, we do not intend to produce any documents that are also in the possession of JJHCS.

Second, this production will include non-privileged documents that are internal to TrialCard and that are otherwise responsive to the requests for which TrialCard has agreed to produce documents.

Third, TrialCard will produce responsive, non-privileged documents for the period April 1, 2016 through July 1, 2022, as applicable, for the following two TrialCard employees:

Emma Holland, Esq.
July 13, 2023
Page 2

- Holly Weischedel, Senior Director of Patient Affordability Support,[1] and

- Sini Abraham, Senior Vice President, Market Access Operations[2]

We are working expeditiously with our client to complete the collections, and we will shortly provide additional information concerning the search terms we intend to use.

Very truly yours,

*/s/ Katherine Brisson*
Katherine Brisson

---

[1] Ms. Weischedel has been a TrialCard employee since at least July 2018 and has held several roles in client services.

[2] Ms. Abraham has been a TrialCard employee since at least June 2016 and has held several roles in Hub Services and Market Access.

# Exhibit 5



www.pbwt.com

September 6, 2024

Jacob I. Chefitz
(212) 336-2474

**By Email**

Hannah R. Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

      **Re:**    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,***
              **2:22-cv-02632 (JKS) (CLW)**

Dear Hannah:

      We write in response to SaveOnSP's August 28, 2024 letter regarding the additional
TrialCard (now known as Mercalis) documents that SaveOnSP has requested from JJHCS.

      *First*, as we have repeatedly explained, JJHCS does not physically control
TrialCard's documents. And legal control of TrialCard's documents under the MSA is not
unlimited. The MSA does not provide JJHCS with legal control over TrialCard's documents that
are unrelated to TrialCard's work for JJHCS, and Judge Wolfson has never suggested otherwise.
While we have asked TrialCard to provide hit counts for all of SaveOnSP's proposed search terms,
TrialCard, an independent entity, has made clear that it will not agree to collect its custodians'
documents or run search terms without some initial limitation of the document population to
documents generated within the scope of TrialCard's work for JJHCS.

      In order to comply with our obligations under Judge Wolfson's order, we
specifically asked TrialCard to explain the basis for the limitations it has imposed. We can report
that TrialCard answered as follows:

> As an initial matter, there is nothing in the MSA that requires Mercalis to run
> searches or provide hit counts. While Mercalis elected to respond to JJHCS's
> request, it imposed reasonable limitations to (i) reduce the burden of collecting
> documents, which was substantial even with those limitations given the number of
> custodians (8) and years (7.5) at issue and (ii) limit the scope of searches that did
> not contain terms specific to the Mercalis-JJHCS relationship and thus were likely
> to sweep in a large number of documents unrelated to that relationship.

Sep. 4, 2024 Ltr. from I. Linnartz to J. Chefitz at 1 (attached herein as Appendix A).

Hannah R. Miles, Esq.
September 6, 2024
Page 2

Your letter states that SaveOnSP does not agree that the use of JJHCS-related limiting terms was appropriate. TrialCard, however, is not obligated under the MSA to provide JJHCS with documents outside the scope of TrialCard's work for JJHCS. TrialCard has taken what it believes are reasonable steps to remove non-JJHCS related documents from the population of documents at issue in order to make sure it only provides documents to which JJHCS is entitled under the MSA.

Your letter also states that, before "we can discuss whether it makes sense to use some set of terms to limit the documents that TrialCard provides to [JJHCS] for review," JJHCS must first "run[] all SaveOn's proposed search terms over all the proposed custodians' documents," "provide[] us relevant hit counts (by custodians, by term, and in the aggregate, de-duplicated)," and "explain whether any of the requested custodians worked primarily on projects for J&J at any points during the relevant time period and whether any of them segregated any of their emails and/or documents relating to such work."

Neither the MSA nor Judge Wolfson's ruling requires that JJHCS provide such detailed information. Again, JJHCS does not have physical access to the proposed custodians' documents; only TrialCard does. JJHCS cannot, therefore, run search terms over those custodians' documents like it would for JJHCS custodians. JJHCS can only request that TrialCard do so pursuant to JJHCS's audit rights under the MSA—which JJHCS has done, in full compliance with Judge Wolfson's order. TrialCard reasonably insists on using a set of terms to limit the documents at issue here to those within the scope of the MSA. SaveOnSP's repeated insistence that JJHCS require that TrialCard run all of SaveOnSP's proposed search terms over all of the proposed custodians' documents is unreasonable and impractical.

All that said, in the interest of advancing this issue, JJHCS is willing to ask TrialCard to expand its point-of-collection limitations, and JJHCS has asked TrialCard if it will agree to use the following, broader search term to do so:

"Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA <span style="color:red">OR Balversa OR Darzalex OR Erleada OR Imbruvica OR Opsumit OR Remicade OR Rybrevant OR Simponi OR Tracleer OR Uptravi OR Zytiga OR CAPm OR CAPa</span>

We must again stress, however, that TrialCard is an independent entity, and JJHCS cannot guarantee that TrialCard will agree to the above proposal.

*Second*, your letter asks that JJHCS provide hit counts for SaveOnSP's proposed terms when run over the files of the four "original" TrialCard custodians (Holly Weischedel, Sini Abraham, Paul Esterline, and Rick Fry). As an initial matter, Appendix 2 to SaveOnSP's May 24, 2024 letter did not include the four original TrialCard custodians, indicating that SaveOnSP was not requesting that the newly proposed terms be run over their files as well. JJHCS has also long been clear that it understood SaveOnSP's request to pertain to the "eight additional TrialCard custodians you have identified." July 12, 2024 Ltr. from J. Chefitz to H. Miles. And TrialCard

Hannah R. Miles, Esq.
September 6, 2024
Page 3

has already produced responsive, non-privileged documents from the four original custodians hitting on seven of the fifteen search terms that SaveOnSP has proposed here. Nonetheless, JJHCS has asked TrialCard to provide hit counts for the remaining eight search terms for the four original custodians. Please be advised, however, that TrialCard may impose the same limitations as it has done with respect to the prior hit counts it has provided.

*Third*, we have asked TrialCard to provide a de-duped, total hit count for the search terms that TrialCard previously ran. TrialCard has informed JJHCS that, de-duped, the search terms that it ran hit on 16,722 unique documents, family inclusive. While those hit counts are lower than before, they still are unduly burdensome and would impose on JJHCS an unwarranted expansion of discovery. JJHCS therefore again requests that SaveOnSP propose more narrowly tailored search terms for these TrialCard custodial documents.

We reserve all rights and are available to meet and confer.


Very truly yours,

*/s/Jacob I. Chefitz*

Jacob I. Chefitz

# **APPENDIX A**

## SMITH, ANDERSON, BLOUNT,
## DORSETT, MITCHELL & JERNIGAN, L.L.P.

### LAWYERS

<table>
<tr>
<td><b>OFFICES</b><br>Wells Fargo Capitol Center<br>150 Fayetteville Street, Suite 2300<br>Raleigh, North Carolina 27601</td>
<td></td>
<td><b>MAILING ADDRESS</b><br>P.O. Box 2611<br>Raleigh, North Carolina<br>27602-2611</td>
</tr>
</table>

September 4, 2024

<table>
<tr>
<td><b>ISAAC A. LINNARTZ</b><br>DIRECT DIAL: (919) 821-6819<br>E-Mail: ilinnartz@smithlaw.com</td>
<td><b>TELEPHONE: (919) 821-1220</b><br>FACSIMILE: (919) 821-6800</td>
</tr>
</table>

**<u>Via Email</u>**

Jacob I. Chefitz
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jchefitz@pbwt.com

   Re: Johnson & Johnson Health Care Systems, Inc.'s ("JJHCS") Request Under Section 17 of the Amended and Restated Master Services Agreement Between JJHCS and Mercalis Inc. dated January 1, 2024 (the "MSA")

Dear Jacob:

   I am writing to follow up on our August 28, 2024 discussion concerning Mercalis's response to JJHCS's request that it collect documents and communications for eight custodians, run fifteen different search strings against those documents, and provide hit counts for those searches.

   You asked why Mercalis imposed the limitations described in my August 16, 2024 letter, rather than running the collecting and searches as originally requested in your July 12, 2024 letter. As an initial matter, there is nothing in the MSA that requires Mercalis to run searches or provide hit counts. While Mercalis elected to respond to JJHCS's request, it imposed reasonable limitations to (i) reduce the burden of collecting documents, which was substantial even with those limitations given the number of custodians (8) and years (7.5) at issue and (ii) limit the scope of searches that did not contain terms specific to the Mercalis-JJHCS relationship and thus were likely to sweep in a large number of documents unrelated to that relationship.

   Please note that while Mercalis has voluntarily provided hit counts, it does not concede that JJHCS is necessarily entitled to audit, examine, or obtain the documents reflected in those hit counts and reserves its rights with respect to any future requests that JJHCS may make under the MSA or otherwise.

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL, & JERNIGAN, L.L.P.

Mr. Jacob I. Chefitz
September 4, 2024
Page 2

Sincerely,

Isaac A. Linnartz

Exhibits 6-9 Confidential

Filed Under Seal

# Exhibit 10

| Search # | Search Terms | Hits (with families) | Hits (no families) |
|---|---|---|---|
| 8 | (CAPa OR CAPm OR "adjustment program") w/25 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*) | 1101 | 280 |
| 9 | ("essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*) w/50 (CAPa OR CAPm OR "adjustment program" OR accumulat* OR maximiz*) | 79 | 31 |
| 11 | "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") | 120 | 40 |
| 12 | "other offer" w/25 (accumulat* OR maximiz*) | 0 | 0 |
| 13 | ("Express Scripts" OR ESI OR ExpressScripts) w/25 (accumulat* OR maximiz*) | 485 | 185 |
| 14 | (Accredo OR Acredo) w/25 (accumulat* OR maximiz*) | 155 | 58 |
| 15 | (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/15 (6000 OR 6,000 OR limit OR eliminate) w/50 (OOP OR "out of pocket" OR "out-of-pocket" OR max* OR benefit* OR offer*) | 1031 | 289 |
|  |  |  |  |
| Custodians: Holly Weischedel, Sini Abraham, Paul Esterline, and Rick Fry | | | |
| Unique Search Results (all searches listed above): 2,382 | | | |
| Unique Search Results (searches 8 & 15 only): 1,916 | | | |

| Search # | Search Terms | Hits (with families) | Hits (no families) |
|---|---|---|---|
| 1 | SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP | 9377 | 3098 |
| 5 | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (CarePath w/5 "term* and condition*") | 1606 | 616 |
| 7 | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (enroll w/5 CarePath) AND contact* | 2487 | 974 |
| 8 | (CAPa OR CAPm OR "adjustment program") w/25 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*) | 11190 | 8485 |
| 9 | ("essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*) w/50 (CAPa OR CAPm OR "adjustment program" OR accumulat* OR maximiz*) | 364 | 168 |
| 11 | "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") | 405 | 136 |
| 12 | "other offer" w/25 (accumulat* OR maximiz*) | 0 | 0 |
| 13 | ("Express Scripts" OR ESI OR ExpressScripts) w/25 (accumulat* OR maximiz*) | 1539 | 547 |
| 14 | (Accredo OR Acredo) w/25 (accumulat* OR maximiz*) | 1615 | 687 |
| 15 | (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/15 (6000 OR 6,000 OR limit OR eliminate) w/50 (OOP OR "out of pocket" OR "out-of-pocket" OR max* OR benefit* OR offer*) | 4393 | 1899 |
| | | | |
| Custodians: Jason Zemcik, Rick Ford, April Harrison, Tommy Gooch, Lynsi Newton, Amber Maldonado, Cosimo Cambi, and Tony McInnis | | | |
| Unique Search Results (all searches listed above): 23,606 | | | |
| Unique Search Results (searches 8 & 15 only): 14,112 | | | |

Hit Counts by Custodian
Page 11 of 16

| | Hits by Custodian | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Search Number | Newton | McInnis | Harrison | Zemcik | Gooch | Maldonado | Cambi | Ford | Weischedel | Abraham | Esterline | Fry |
| Search 1 (Families) | 4590 | 1546 | 1243 | 749 | 668 | 345 | 165 | 71 | N/A | N/A | N/A | N/A |
| Search 1 (Without Families) | 1214 | 521 | 375 | 466 | 217 | 182 | 81 | 42 | N/A | N/A | N/A | N/A |
| Search 5 (Families) | 344 | 199 | 707 | 0 | 303 | 53 | 0 | 0 | N/A | N/A | N/A | N/A |
| Search 5 (Without Families) | 145 | 82 | 244 | 0 | 133 | 12 | 0 | 0 | N/A | N/A | N/A | N/A |
| Search 7 (Families) | 899 | 452 | 418 | 6 | 430 | 226 | 45 | 11 | N/A | N/A | N/A | N/A |
| Search 7 (Without Families) | 323 | 177 | 146 | 2 | 196 | 103 | 21 | 6 | N/A | N/A | N/A | N/A |
| Search 8 (Families) | 1013 | 7596 | 188 | 250 | 527 | 1482 | 19 | 115 | 264 | 642 | 31 | 164 |
| Search 8 (Without Families) | 844 | 6347 | 110 | 76 | 298 | 734 | 7 | 69 | 79 | 124 | 14 | 63 |
| Search 9 (Families) | 51 | 28 | 5 | 149 | 12 | 37 | 6 | 76 | 6 | 6 | 33 | 34 |
| Search 9 (Without Families) | 27 | 22 | 2 | 53 | 5 | 22 | 1 | 36 | 6 | 3 | 12 | 10 |
| Search 11 (Families) | 18 | 121 | 17 | 209 | 5 | 11 | 13 | 11 | 61 | 9 | 31 | 19 |
| Search 11 (Without Families) | 10 | 39 | 6 | 62 | 1 | 7 | 4 | 7 | 16 | 6 | 9 | 9 |
| Search 12 (Families) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Search 12 (Without Families) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Search 13 (Families) | 27 | 492 | 23 | 350 | 73 | 437 | 30 | 107 | 93 | 6 | 171 | 215 |
| Search 13 (Without Families) | 11 | 208 | 9 | 120 | 11 | 111 | 19 | 58 | 21 | 2 | 53 | 109 |
| Search 14 (Families) | 16 | 800 | 4 | 169 | 64 | 502 | 16 | 44 | 24 | 15 | 23 | 93 |
| Search 14 (Without Families) | 7 | 394 | 2 | 81 | 17 | 167 | 7 | 12 | 6 | 8 | 10 | 34 |
| Search 15 (Families) | 1692 | 945 | 861 | 50 | 430 | 388 | 10 | 17 | 475 | 490 | 22 | 44 |
| Search 15 (Without Families) | 379 | 852 | 310 | 27 | 210 | 91 | 9 | 11 | 73 | 185 | 8 | 23 |

# Exhibit 11 Confidential

# Filed Under Seal

# Exhibit 12



www.pbwt.com

March 12, 2024

Sara A. Arrow
(212) 336-2031

**By Email**

Hannah Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    **TrialCard's Production of Benefits Investigations**
       *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
       *Case No. 2:22-cv-02632 (JKS) (CLW)*

Dear Hannah:

On behalf of TrialCard, we write in response to your February 13, 2024 letter regarding TrialCard's production of benefits investigations.

You object to TrialCard's production of benefits investigations on the basis that TRIALCARD_00008931 is a "summary of the results of a benefits investigation, [which] is not the same as the final Benefits Investigations that you agreed to produce."[1]  This is inaccurate.  TRIALCARD_00008931 reflects ███████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████  *See* Jan. 19, 2024 Ltr. from S. Arrow to H. Miles; *see also* Oct. 20, 2023 Ltr. from S. Arrow to E. Holland at 1.  It is not a "summary" at all—it contains ███████████████████

---

[1] SaveOnSP relatedly asserts that "[p]roducing TRIALCARD_00008931 does not fulfill [JJHCS's] representation to the Court" to produce relevant benefits investigations.  As both TrialCard and JJHCS have made clear, TrialCard agreed to produce the relevant benefits investigations "pursuant to the third-party subpoena served on TrialCard by SaveOnSP."  *See* Oct. 23, 2023 Ltr. from H. Sandick (on behalf of JJHCS) to A. Dunlap; *see also* Oct. 20, 2023 Ltr. from S. Arrow to E. Holland at 1 (describing scope of TrialCard's production in response to the subpoena served on it).  Regardless, even if TrialCard were producing such documents at JJHCS's request or on its behalf, that would not impact the sufficiency of production for the reasons identified herein.  Finally, as you know, we have repeatedly asked you not to blur the lines between our firm's two clients, JJHCS and TrialCard, which are separate entities.  As a result, to the extent you have further questions related to JJHCS's representations to the Court, we once again ask you to direct them to JJHCS in separate correspondence.

Hannah Miles, Esq.
March 12, 2024
Page 2

███████████. *See* Jan. 19, 2024 Ltr. from S. Arrow to H. Miles.  Documents are to be produced in the manner in which they are kept, which is what TrialCard has done here.

You next request that TrialCard re-produce the benefits investigation spreadsheet with additional categories of information, namely: ████████████████████████████ ████████████████████████████████████. *See* Feb. 13, 2024 Ltr. from S. Arrow to H. Miles at 2.  TrialCard confirms that it will re-produce the benefits investigation spreadsheet with the additional requested categories of information, to the extent such information is available in the normal course of business.[2]

Finally, you note that TRIALCARD_00008931 omits the results of a specific benefits investigation identified in a de-identified document produced by JJHCS.  *See* JJHCS_00003356.  This was inadvertent.  We have investigated the issue and understand that certain benefits investigations conducted for the period January 2022 to June 2022 were entered into the SalesForce application using a manual process.  Following investigation, we have taken reasonable steps to confirm that our search parameters are designed to capture such manually entered benefits investigations, to the extent they are not already captured in TRIALCARD_00008931.  TrialCard will re-produce TRIALCARD_00008931 to include an entry for the benefits investigation reflected in JJHCS_00003356, along with any additional relevant benefits investigations that TrialCard locates after reasonable investigation that were inadvertently omitted from TRIALCARD_00008931.  TrialCard expects to re-produce the benefits investigation spreadsheet on or around March 29, 2024.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

---

[2] Certain requested information may not be available in all circumstances—for example, ████████ █████████████████████████████████████████████████████████████████████████.  To the extent such additional data fields exist for any given benefit investigation, TrialCard will produce those fields.

# Exhibits 13-14 Confidential

# Filed Under Seal