# EXHIBIT C

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

February 10, 2025

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

> Re:  *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC, Express Scripts, Inc., and Accredo Health Group, Inc.*
> No. 2:22-cv-02632 (JKS) (CLW)

Dear Judge Wolfson:

On behalf of SaveOn, we write in reply to J&J's opposition to SaveOn's motion to add the Proposed TrialCard Custodians and to run search terms over their documents and those of the Existing TrialCard Custodians.[1]

As J&J raises no dispute with SaveOn's request regarding the Existing TrialCard Custodians, Your Honor should compel it to run the terms on Appendix 1 over their documents. J&J's arguments regarding the Proposed TrialCard Custodians are meritless.

---

[1] SaveOn uses the same definitions as in its opening motion.

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                                          Page 2

## I.    SaveOn Seeks Relevant, Nonduplicative Discovery

J&J fundamentally mischaracterizes SaveOn's motion. SaveOn does **not** seek to fill in "gaps" in an otherwise fulsome production of TrialCard documents, *contra* Opp. 3, 6—it seeks to compel J&J to produce patently relevant TrialCard documents that it and TrialCard should have produced years ago. TrialCard should have added these custodians at the outset of discovery, when SaveOn first requested them. Ex. 1 at 3-5. Your Honor has held, twice, that SaveOn is entitled to the discovery that it seeks, Dkt. 307 at 10; Dkt 484, yet J&J still refuses to provide it.

The documents that SaveOn seeks are indisputably relevant, given TrialCard's broad mandate to "run[]" CarePath. Jan. 15, 2025 Tr. at 83:2-4. TrialCard's relevance is **not** limited to its work on the CAP program and BIs, *contra* Opp. 2—TrialCard employees also screened patients for eligibility, Ex. 116 at § 10 (JJHCS_00045387), enrolled them in CarePath, Jan. 15, 2025 Tr. at 121:25-122:2, communicated with them daily, Ex. 116 at § 4(c) (JJHCS_00045387), and disbursed CarePath funds, Jan. 15, 2025 Tr. at 52:16-19. They also "edit[ed]" CarePath's T&Cs, Jan. 15, 2025 Tr. at 46:11-21, and drafted and disseminated communications about those changes to patients, Exs. 52-57. J&J cannot withhold relevant TrialCard documents on these topics.

It is also **not** true that SaveOn "has everything it needs" from TrialCard on the CAP program and BIs, *contra* Opp. 2—Your Honor recognized as much in ordering J&J to produce documents on those subjects from both "original" and "new" TrialCard custodians, Dkt. 484 at 1-2. TrialCard has **not** produced an "extraordinary volume of discovery", *contra* Opp. 2—it has produced fewer than 4,500 documents, of which about 1,800 are "junk files" like logos and images, Dkt. 382 at 7 n.8, leaving about 2,700 genuine documents. This is not much from the entity that administered the massive CarePath program for the nearly eight-year relevant period and the CAP

Hon. Freda L. Wolfson                                                              Page 3

program since its inception.[2] J&J must produce unique relevant documents from the Proposed TrialCard Custodians, who performed unique relevant work distinct from existing custodians.

### A.    The Proposed TrialCard Custodians Are Appropriate

**Rick Ford**, TrialCard's preeminent subject-matter expert on SaveOn's operations, *see, e.g.*, Exs. 15-18, 21-23, was apparently the first to develop the idea of using BIs and creating the CAP program to respond to accumulators, maximizers, and SaveOn, Exs. 18, 19, 20 at -353. Far from "contemplat[ing]" these strategies, Opp. 7, J&J implemented both, albeit years later. While J&J claims that Ford's proposals were not specific to SaveOn or directed only toward J&J, it ignores exhibits showing that ███████████████████ SaveOn, Ex. 17; *see also* Exs. 18-20, 15, and advised J&J on how to do so, Exs. 21-23; *contra* Opp. 8.[3] Notably, he ██████ ████████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ Ex. 23 at -932-33; *see also* Ex. 21. Ford's analysis spurred multiple follow-up conversations and internal J&J meetings, Ex. 23 at -932 (████████████████████████); Ex. 120 (JJHCS_00011226) (redacted conversation with legal counsel), indicating that it related to Care-Path's T&Cs, *contra* Opp. 8.

---

[2] J&J points to TrialCard's noncustodial production of records like BIs and case and task notes, Opp. 2, but these are no substitute for custodial discovery and, in any case, have numerous deficiencies, *see* Dkt. 511 at 9-12 (Jan. 29, 2025 Mot. re PAFA+).

[3] *See also* Ex. 117 (TRIALCARD_00000336) (████████████████████████████████████ ████████████████████████████████████); Ex. 118 at -147 (JJHCS_00345140) (████████████████████████████████████); Ex. 119 (JJHCS_00003009) (████████████████████████████████████).

Hon. Freda L. Wolfson                                                                        Page 4

     J&J does not contest that **Jason Zemcik** played a central role in helping J&J formulate its response to SaveOn. Zemcik ██████████████████████████, Exs. 17, 29, █████████ ███████, Ex. 27 at -383-85; Ex. 28 at -640, and designed and implemented the CAP program, Exs. 30, 31. Though J&J previously agreed to add him as a custodian, Ex. 96 at 2, it now calls his role "peripheral," arguing that SaveOn "cites no evidence suggesting that Zemcik played any significant role in the CAP program," Opp. 9—but J&J fails to address the vast majority of SaveOn's exhibits, which show that he did.[4] And while J&J argues that Zemcik moved to a different role in July 2022, Opp. 9, after that he still ████████████████████████████████████ ████████████ Ex. 31 at -464, so is likely to have unique, relevant documents for the entire discovery period, *see* Ex. 123 (TRIALCARD_00010448); Ex. 124 (JJHCS_00244906).[5]

     J&J admits that **Tommy Gooch**, whom it previously agreed to add as a custodian, Ex. 96 at 2, played a key role designing and "implementing the CAP program." Opp. 10. J&J says that he ████████████████████████████████████████████, *id.*, but those drugs are all at issue. Even if J&J ultimately chose not to put patients taking those drugs into CAPm programs, *id.*, J&J still ████████████████████████████████████████████████████████, *e.g.*, Ex. 125 (JJTCMSA_0000001) (████████████████████████████████████████ ████████████), yet J&J kept giving them CarePath funds, *see, e.g.*, Exs. 67, 70-71;

---

[4] *See, e.g.*, Exs. 15-17, 27-30, 101, 103 at -642-43; *see also* Ex. 121 at -309 (JJHCS_00347309) (████████████████████████████████████████████████████████████ ████████████████████████); Ex. 122 at -028 (JJHCS_00346026) (████████ ████████████████████).

[5] J&J suggests that its 2023 interrogatory responses—████████████████████████ ██████████████████████████████—are out of date, Opp. 9, 11 n.4, but J&J has not withdrawn those responses and, to the contrary, in its Court-ordered 2024 supplemental interrogatory responses *again* identified those individual the same way, Ex. 25 at 26, 5-6.

Hon. Freda L. Wolfson                                                                                     Page 5

Dkt. 511 at 10-12 (Jan. 29, 2025 Mot. re PAFA+)—relevant to J&J's failure to mitigate. J&J also

fails to address ample evidence showing that Gooch was ██████████████████████████

███████████. Ex. 39 at -898. For instance, he ████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████. Ex. 33 at -044, -051; *see also* Ex. 126 (TRIAL-

CARD_00005657) (████████████████████████████████████████████████

██████████); Ex. 38 at -811 (███████████████████████████████████████████);

Ex. 37 (███████████████████████████████).

J&J does not contest that **Lynsi Newton** has been the program manager for Stelara and

Tremfya's CarePath and CAP Programs since 2022, Exs. 46-51, or that she personally updated

CarePath's maximum benefit for 2023, Ex. 49 at -206.0043, -206.0046, -206.0052. While J&J

argues that Exhibit 52 alone does not justify adding Newton as a custodian, Opp. 11, it does not

address SaveOn's seven other exhibits showing that Newton ████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████, *see* Ex. 49 at -206.0065-66; Exs. 53-58. J&J says that other custodians were copied

on two emails, Opp. 11 (citing Exs. 59-60), but one was a query addressed only to Newton, and

both show her to be the only person preparing and supplying the requested, relevant data.

**April Harrison** implemented the CAP program, including changes to the T&Cs, on J&J's

behalf. Mot. 9. J&J downplays her █████████████████████████████████████████

████████, Opp. 11-12 (citing Ex. 62), but the ████████████████████████████████

██████. J&J does not address an exhibit showing that ████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████, Ex. 64—directly relevant to the meaning of the May-Not-Use Provision, and

contrary to J&J's assertion that Harrison's work did not concern Stelara or Tremfya, Opp. 8. Harrison's work for other at-issue drugs—including Erleada, Tracleer, Uptravi, Opsumit, Darxalex, Darzalex Faspro, Rybrevant, and Zytiga, Exs. 65-72—is also relevant, as J&J seeks millions of dollars in damages for CarePath funds that it paid to patients on these drugs after identifying them as being on maximizers or SaveOn-advised plans, *supra* 4 (citing Ex. 125).

J&J does not contest that **Amber Maldonado**, whom it previously agreed to add as a custodian, Ex. 96 at 2, frequently organized, led, and took notes during key meetings regarding the CAP program, Mot. 10. J&J also concedes that SaveOn's CAP terms are appropriate for Maldonado, Opp. 12, who designed and implemented the CAP program, *e.g.*, Ex. 127 (JJHCS_00342729) (⬛⬛⬛⬛⬛⬛⬛⬛⬛); Ex. 128 at -409 (JJHCS_00342409) (⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛); Exs. 73-80. While J&J says the other terms are not tied to the CAP program, Opp. 12, they are relevant to Maldonado's work updating patient communications and responding to SaveOn. Ex. 129 (TRIALCARD_00009770) (⬛⬛⬛⬛⬛⬛⬛); Ex. 130 (TRIALCARD_00007074) (⬛⬛⬛⬛⬛⬛⬛); *see also* Ex. 103 at -643.

**Tony McInnis** will be the only custodian with primary responsibility for the CAP appeals and escalation process. Mot. 10-11. J&J does not dispute that McInnis should be added as a custodian or that the CAP terms are appropriate for him. Opp. 13. While it points to its non-custodial production of the outcomes of CAP appeals, *id.*, J&J has not produced relevant communications regarding those appeals, including decisions by J&J employees to knowingly provide CarePath funds to patients on SaveOn-advised plans, *see, e.g.*, Ex. 131 (JJHCS_00192240). Appeals records

Hon. Freda L. Wolfson                                                                    Page 7

also do not capture ad hoc requests for verification or status changes that J&J employees sent McInnis, *see, e.g.*, Exs. 5, 86, or the criteria that McInnis used to determine whether to escalate appeals to J&J. J&J ███████████████████████████████████████████████████████ ███████████, Ex. 87, so his files necessarily have unique documents.

J&J does not dispute that it identified **Cosimo Cambi**, whom it previously agreed to add as a custodian, Ex. 96 at 2, as ██████████████████████████████████████ ███████████████████████████████████, Ex. 25 at 23. Cambi ███████████████████████ ██████████████████████████████████████, Exs. 88, 20, and J&J concedes that it has not yet produced Cambi's underlying data analyses. While J&J asserts that all these analyses were about "accumulators and maximizers more generally," the exhibit it cites was demonstrably about SaveOn, Opp. 14 (citing Ex. 20), as were multiple other analyses J&J failed to address, Exs. 88-91. And while J&J asserts that Cambi did not work on CAP, Opp. 14, J&J ███████████ ████████████████████████████████████████████████████ Ex. 92.

### B.    SaveOn's Search Terms Are Narrowly Tailored

J&J does not dispute that SaveOn's proposed search terms are narrower versions of terms that J&J or TrialCard already ran. Mot. 13 n.19, 14 n.20, 17 n.27. After SaveOn again moved to compel this discovery in October 2024, *see* Dkt. 425, J&J finally provided accurate hit counts, Ex. 7. SaveOn has narrowed its proposals three times, *see* Mot. 3-4, but, for nine months, J&J has refused to provide counterproposals or articulate substantive objections and should not be heard to raise objections for the first time in opposition. Its objections are also meritless.

***SaveOn Terms***. J&J's counsel, then representing TrialCard, proposed Term 1 (variations of SaveOn's name) for the Existing TrialCard Custodians nineteen months ago, *see* Ex. 132 (July 19, 2023 Ltr.), and J&J does not explain why a narrower version is inappropriate for the Proposed TrialCard Custodians now. While J&J says that the term "save on" might capture false

Hon. Freda L. Wolfson                                                                    Page 8

hits, Opp. 15 (citing one document), if that were truly so, J&J would have raised it before now and would not have agreed in June 2024 to run Term 1 for the Existing TrialCard custodians for the "refresh" period of July 2022 to November 2023. Ex. 96 at 1.

J&J does not contest that Terms 2 and 3 will capture relevant documents or that TrialCard ███████████████████████████████████████████. Mot. 14 (citing Ex. 17 at -181; Ex. 97). J&J says it has "produced all relevant" BIs, Opp. 15, but these terms will capture references to SaveOn, not BIs, Mot. 14—as in exhibits that J&J ignores but show that the custodians ████████████████████████████████████ Ex. 101, and ████████████████ ████████████████████████████████, Ex. 103 at -642-43. While J&J calls the terms "overbroad," Opp. 15, it ran far broader versions for 28 custodians without complaint, Mot. 14 n.20; Ex. 133 at 4-5 (Mar. 16, 2023 Ltr.).

*CAP Terms*. Judge Waldor and Your Honor have ordered J&J to run broader versions of Terms 4, 5, and 6 for other custodians involved with the CAP program. Dkt. 173 at 2-3; Dkt. 192 at 26, Dkt. 305 at 2 (holding these CAP-related search terms "clearly" capture "highly relevant documents"). While J&J takes issue with the court-ordered term "adjustment program" in Term 4, Opp. 17, that phrase captures the full name of the CAP program—the "Cost Adjustment Program," *see, e.g.*, Ex. 49 at -207.0001; Ex. 50 at -497. And while J&J asserts that the "w/50 limiter" in Term 5 is overbroad, Opp. 18, Term 5 has three limiters, including a "w/15" limiter and an "AND" connector with the point-of-collection term.

*CarePath Terms*. J&J's own counsel, representing TrialCard, proposed Terms 7 and 8 for the Existing TrialCard Custodians seventeen months ago, Ex. 113 at 1 n.1, and J&J does not explain why these terms are inappropriate for the Proposed TrialCard Custodians now. While it says that Term 7 will hit on "virtually any" communication with CarePath patients, Opp. 16 (citing

JJHCS Exs. 13, 14), the documents it cites are relevant communications about eligibility and the

T&Cs, and the term's connectors, including a "w/5" limiter, will minimize any false hits. J&J also

says that any documents responsive to Term 7 would be in the Existing TrialCard Custodians'

files, Opp. 16, but TrialCard produced just 20 documents from those custodians containing this

term, while the narrower version identifies 974 documents for the Proposed TrialCard Custodi-

ans—showing the scale of their relevant work. Mot. 19. And while J&J says of Term 8 that "there

is no reason to think" the Proposed TrialCard Custodians discussed the meaning of the T&Cs,

Opp. 16, it does not address the extensive evidence to the contrary, Mot. 18 n.28.

### C.    SaveOn's Requested Time Periods Are Appropriate

SaveOn has shown that the Proposed TrialCard Custodians performed a host of relevant

work that justifies searching their documents from the full discovery period,[6] and J&J raised no

time-based objections in negotiations. J&J now seeks to limit the time periods for these custodians

and for the CAP Terms because the CAP program did not formally launch until 2022, Opp. 10 (re

custodians); *id.* 17 (re CAP Terms)—but Your Honor rejected that argument in ordering J&J to

add the CAP Custodians and to run CAP-related terms for the full discovery period, Dkt. 192 at 26

("[B]ecause I am of the view that CAP discussions began before 2022, I am directing Plaintiff to

---

[6] This relevant work included █████████████████████████████████████████
█████ . *E.g.*, Exs. 17, 15, 20, 88; Ex. 134 (JJHCS_00045624) ███████████
████████████████████████████████████████████████ ); Ex. 135
(JJHCS_00045282) ( ██████████████████████████████████████
████████████████████████████████ ); Ex. 136 at -322 (JJHCS_00100293) ( ████████
█████████████████████████████████████████ ); Ex. 127; Ex. 137 at 11
(JJHCS_00126873) ( █████████████████████████████████████ ).

run the search terms for the time period of April 2016 through November 2023"),[7] and all Proposed TrialCard Custodians were involved with the CAP program, *see supra*; *contra* Opp. 8, 9, 14. J&J also argues for limited time periods for some proposed custodians based on the dates of produced documents, Opp. 8 (Ford), 9 (Zemcik), 12 (Maldonado), 13 (McInnis)—but while Your Honor has recently approved such limits for new ***J&J-employed*** custodians in light of J&J's prior productions, *e.g.*, Dkt. 495, there are only four ***TrialCard***-employed custodians and very few documents have been produced from their files, so no time restrictions are warranted.

## II.    J&J Has No Valid Burden Arguments

J&J's scattered burden arguments run counter to Your Honor's rulings. SaveOn's requests do not burden a "third party," *contra* Opp. 1, 2, 6, 7—J&J has legal control over the requested documents, so this is party discovery, Dkt. 307 at 10; *see also* May 23, 2024 Tr. at 48:23-24 (directing SaveOn to seek the documents from J&J, not TrialCard). J&J cannot now plead that it has "no physical control over TrialCard's documents," Opp. 5, as Your Honor ordered it to address any physical collection issues "expeditiously," Dkt. 484 at 3. J&J also cannot complain that TrialCard opted to conduct its own additional review of the documents, *contra* Opp. 6—SaveOn agreed to a point-of-collection limiter that excludes any documents unrelated to J&J to make such a review unnecessary; that J&J agreed to let TrialCard review J&J's documents anyway was J&J's choice.

SaveOn appreciates Your Honor's attention to this matter.

Respectfully submitted,

/s/ *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.

---

[7] J&J ███████████████████████████████████████, Ex. 138 at -250 (JJHCS_00222250), and ███████████████████████████████████████, Ex. 139 (JJHCS_00330725).

Hon. Freda L. Wolfson                                                      Page 11

Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

Hon. Freda L. Wolfson                                                                 Page 12

## Appendix 1

*Search Terms by Custodian*

**I.      Search Terms for Proposed TrialCard Custodians**

- Terms Related to SaveOn

1.      SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP

2.      ("Express Scripts" OR ESI OR ExpressScripts) w/25 (accumulat* OR maximiz*)

3.      (Accredo OR Acredo) w/25 (accumulat* OR maximiz*)

- Terms Related to the CAP Program

4.      (CAPa OR CAPm OR "adjustment program") w/25 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*)

5.      (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/15 (6000 OR 6,000 OR limit OR eliminate) w/50 (OOP OR "out of pocket" OR "out-of-pocket" OR max* OR benefit* OR offer*)

6.      ("essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*) w/50 (CAPa OR CAPm OR "adjust-ment program" OR accumulat* OR maximiz*)

- Terms Related to CarePath

7.      ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (enroll w/5 CarePath) AND contact*

8.      ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (CarePath w/5 "term* and condition*")

**II.     Search Terms for Existing TrialCard Custodians**

- Terms Related to SaveOn

2.      ("Express Scripts" OR ESI OR ExpressScripts) w/25 (accumulat* OR maximiz*)

3.      (Accredo OR Acredo) w/25 (accumulat* OR maximiz*)

- Terms Related to the CAP Program

4.      (CAPa OR CAPm OR "adjustment program") w/25 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*)

Hon. Freda L. Wolfson                                                           Page 13

5.     (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/15 (6000 OR 6,000 OR limit OR eliminate) w/50 (OOP OR "out of pocket" OR "out-of-pocket" OR max* OR benefit* OR offer*)

6.     ("essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*) w/50 (CAPa OR CAPm OR "adjustment program" OR accumulat* OR maximiz*)

# Exhibits 116-131
# Confidential
# Filed Under Seal

# Exhibit 132



www.pbwt.com

July 19, 2023

Katherine Brisson
(212) 336-2552

Emma Holland, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104

**Re:**    *Johnson & Johnson Healthcare Systems, Inc. v. Save On SP, LLC*
     *Case No. 2:22-cv-02632 (ES) (CLW)*

Dear Emma:

On behalf of TrialCard, we write further to our letter of July 13, 2023 to provide additional information concerning the search terms we intend to use to identify responsive materials from the TrialCard custodians identified in our prior correspondence.

We intend to use the following search terms:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP

- ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy")

- (CarePath OR "Care Path") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy")

- (Accumulator OR Maximizer) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy")

Very truly yours,

*/s/ Katherine Brisson*
Katherine Brisson

# Exhibit 133



March 16, 2023

Harry Sandick
(212) 336-2723
hsandick@pbwt.com

**VIA EMAIL**

Andrew Dunlap, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
adunlap@selendygay.com

> Re:    **JJHCS's Proposed Search Methodology**
> *Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,*
> No. 22 Civ. 2632 (ES) (CLW)

Dear Andrew:

We write in response to your March 7, 2023 letter regarding JJHCS's proposed custodians and search methodology for its production of documents in response to SaveOnSP's Requests for Production.

**I.      JJHCS's Proposed Custodians**

JJHCS designated 11 custodians.  SaveOnSP requests that JJHCS add an additional 23 custodians.

JJHCS agrees to add Lynn Hall, John King, Adrienne Minecci, Heather Schoenly, Carol Scholz as additional custodians.

JJHCS declines to add Jennifer De Camara, Harman Grossman, and Savaria Harris as custodians.  All three individuals are attorneys and are not proper custodians in this matter, as any relevant documents or communications would be protected by the attorney-client privilege, work product doctrine, or another applicable privilege or protection from disclosure.

JJHCS declines to add Laura Bohorquez Perez as a custodian.  Based on its investigation to date, JJHCS has no reason to believe that Ms. Perez would have unique documents or communications relating to SaveOnSP or JJHCS's response to the SaveOnSP program and any relevant documents or communications will be captured by other custodians from whom JJHCS has agreed to produce documents, including Katie Mazuk, to whom Ms. Perez reported.  In addition, documents sufficient to show CarePath's budget and costs for the relevant time period can be produced from non-custodial sources.  Further, JJHCS has not agreed or otherwise been ordered to produce documents or communications related to the marketing of CarePath.

Andrew Dunlap, Esq.
March 16, 2023
Page 2

JJHCS declines to add Chad Bower as a custodian. Based on its investigation to date, JJHCS has no reason to believe that Mr. Bower would have unique documents or communications relating to SaveOnSP or JJHCS's response to the SaveOnSP program, and any relevant documents or communications will be captured by other custodians from whom JJHCS has agreed to produce documents, including John King, to whom Mr. Bower reported. In addition, documents sufficient to show CarePath's budget and costs for the relevant time period can be produced from non-custodial sources. Further, JJHCS has not agreed or otherwise been ordered to produce documents or communications related to the marketing of CarePath.

JJHCS declines to add Rhonda Burden as a custodian. Based on its investigation to date, JJHCS has no reason to believe that Ms. Burden would have unique documents or communications relating to SaveOnSP or JJHCS's response to the SaveOnSP program, and any relevant documents or communications will be captured by other custodians from whom JJHCS has agreed to produce documents, including John Paul Franz, to whom Ms. Burden reported. In addition, documents sufficient to show CarePath's budget and costs for the relevant time period can be produced from non-custodial sources. Further, JJHCS has not agreed or otherwise been ordered to produce documents or communications related to the marketing of CarePath.

JJHCS declines to add Stacy Cashman as a custodian. Based on its investigation to date, JJHCS has no reason to believe that Ms. Cashman would have unique documents or communications relating to SaveOnSP or JJHCS's response to the SaveOnSP program, and any relevant documents or communications will be captured by other custodians from whom JJHCS has agreed to produce documents, including Katie Mazuk and John King, to whom Ms. Cashman reported. In addition, documents sufficient to show CarePath's budget and costs for the relevant time period can be produced from non-custodial sources. Further, JJHCS has not agreed or otherwise been ordered to produce documents or communications related to the marketing of CarePath.

JJHCS declines to add Diane DeLoria as a custodian. Based on its investigation to date, JJHCS has no reason to believe that Ms. DeLoria would have unique documents or communications relating to SaveOnSP or JJHCS's response to the SaveOnSP program, and any relevant documents or communications will be captured by other custodians from whom JJHCS has agreed to produce documents, including John King, to whom Ms. DeLoria reported. In addition, documents sufficient to show CarePath's budget and costs for the relevant time period can be produced from non-custodial sources. Further, JJHCS has not agreed or otherwise been ordered to produce documents or communications related to the marketing of CarePath.

JJHCS declines to add Jeffrey Doherty as a custodian. Based on its investigation to date, JJHCS has no reason to believe that Mr. Doherty would have unique documents or communications relating to SaveOnSP or JJHCS's response to the SaveOnSP program, and any relevant documents or communications will be captured by other custodians from whom JJHCS has agreed to produce documents, including John King, to whom Mr. Doherty reported. In addition, documents sufficient to show CarePath's budget and costs for the relevant time period

Andrew Dunlap, Esq.
March 16, 2023
Page 3

can be produced from non-custodial sources.  Further, JJHCS has not agreed or otherwise been ordered to produce documents or communications related to the marketing of CarePath.

JJHCS declines to add Gina Giordano as a custodian.  Based on its investigation to date, JJHCS has no reason to believe that Ms. Giordano would have unique documents or communications relating to SaveOnSP or JJHCS's response to the SaveOnSP program, and any relevant documents or communications will be captured by other custodians from whom JJHCS has agreed to produce documents, including John King, to whom Ms. Giordano reported.  In addition, documents sufficient to show CarePath's budget and costs for the relevant time period can be produced from non-custodial sources.  Further, JJHCS has not agreed or otherwise been ordered to produce documents or communications related to the marketing of CarePath.

JJHCS declines to add Stephanie Hoch as a custodian.  JJHCS has not agreed or otherwise been ordered to produce documents or communications related to the marketing of CarePath.  Further, to the extent JJHCS does produce documents or communications related to the marketing of CarePath, any relevant documents or communications will be captured by other custodians from whom JJHCS has agreed to produce documents, including Adrienne Minecci, to whom Ms. Hoch reported.

JJHCS declines to add Brad Katz as a custodian.  Documents sufficient to show CarePath's budget and costs for the relevant time period can be produced from non-custodial sources.  Further, JJHCS has not agreed or otherwise been ordered to produce documents or communications related to the marketing of CarePath, and to the extent JJHCS does produce documents or communications related to the marketing of CarePath, any relevant documents or communications will be captured by other custodians from whom JJHCS has agreed to produce documents, including Adrienne Minecci, to whom Mr. Katz reported.

JJHCS declines to add Quinton Kinne as a custodian.  Documents or communications relating to Mr. Kinne's work with counsel would be protected by the attorney-client privilege, work product doctrine, or another applicable privilege or protection from disclosure.  Further, any relevant documents or communications not covered by such privileges or protections will be captured by other custodians from whom JJHCS has agreed to produce documents, including John Paul Franz, to whom Mr. Kinne reported.

JJHCS declines to add Renee Shiota as a custodian.  Based on its investigation to date, JJHCS has no reason to believe that Ms. Shiota would have unique documents or communications relating to SaveOnSP or JJHCS's response to the SaveOnSP program, and any relevant documents or communications will be captured by other custodians from whom JJHCS has agreed to produce documents, including John King, to whom Ms. Shiota reported.  In addition, documents sufficient to show CarePath's budget and costs for the relevant time period can be produced from non-custodial sources.  Further, JJHCS has not agreed or otherwise been ordered to produce documents or communications related to the marketing of CarePath.

Andrew Dunlap, Esq.
March 16, 2023
Page 4

JJHCS declines to add Maura Snyder as a custodian. Based on its investigation to date, JJHCS has no reason to believe that Ms. Snyder would have unique documents or communications relating to SaveOnSP or JJHCS's response to the SaveOnSP program, and any relevant documents or communications will be captured by other custodians from whom JJHCS has agreed to produce documents, including Katie Mazuk, to whom Ms. Snyder reported. In addition, documents sufficient to show CarePath's budget and costs for the relevant time period can be produced from non-custodial sources. Further, JJHCS has not agreed or otherwise been ordered to produce documents or communications related to the marketing of CarePath.

JJHCS declines to add Jeff Vernice as a custodian. Based on its investigation to date, JJHCS has no reason to believe that Mr. Vernice would have unique documents or communications relating to SaveOnSP or JJHCS's response to the SaveOnSP program, and any relevant documents or communications will be captured by other custodians from whom JJHCS has agreed to produce documents, including Hattie McKelvey and John King, to whom Mr. Vernice reported. In addition, documents sufficient to show CarePath's budget and costs for the relevant time period can be produced from non-custodial sources. Further, JJHCS has not agreed or otherwise been ordered to produce documents or communications related to the marketing of CarePath.

JJHCS declines to add Leigh Wyszkowski as a custodian. Any relevant documents or communications will be captured by other custodians from whom JJHCS has agreed to produce documents, including John Paul Franz, to whom Ms. Wyszkowski reported. In addition, documents sufficient to show CarePath's budget and costs for the relevant time.

JJHCS declines to add Daniel Xavier as a custodian. JJHCS has not agreed or otherwise been ordered to produce documents or communications related to the marketing of CarePath. Further, to the extent JJHCS does produce documents or communications related to the marketing of CarePath, any relevant documents or communications will be captured by other custodians from whom JJHCS has agreed to produce documents, including Adrienne Minecci, to whom Mr. Xavier reported.

## II.    JJHCS's Proposed Search Terms

SaveOnSP has proposed several revisions and additions to JJHCS's search terms. JJHCS is willing to make the following additions, shown in redline, to the search terms proposed in JJHCS's February 6 letter for the January 1, 2017 to July 1, 2022 time period:

- SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk"

- ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*)

- (Accredo OR Acredo) w/50 (accumulat* OR maximiz*)

Andrew Dunlap, Esq.
March 16, 2023
Page 5

JJHCS also agrees to run the following search term requested by SaveOnSP for the January 1, 2017 to July 1, 2022 time period:

- "essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*

The remainder of SaveOnSP's proposed revisions and additions to JJHCS's search terms are inappropriate.  SaveOnSP requests a date range of January 1, 2009 to July 1, 2022 for most of its terms, but JJHCS has not agreed to produce documents for that time period, nor has it been ordered to do so.  Further, SaveOnSP has not identified which RFPs it is targeting with its proposed terms, but the remainder of SaveOnSP's proposed terms appear to be aimed at capturing categories of documents that JJHCS has not agreed to or otherwise been ordered to produce, including documents relating to CarePath's marketing and Janssen drug prices.

## III.    JJHCS's Proposed Document Sources

SaveOnSP objects to JJHCS's use of exclusively non-custodial sources for RFP Nos. 12 and 13.  In its February 17 letter, JJHCS agreed to produce "internal documents and communications relating to the drafting of CarePath's terms and conditions during the relevant time period of January 1, 2017 to July 1, 2022, to the extent such non-privileged documents exist and can be identified after a reasonable search."  Feb. 17 Ltr. at 2.  Further, in its February 24 letter, JJHCS agreed to "conduct a reasonable search for non-privileged documents and communications during the relevant time period of January 1, 2017 to July 1, 2022 bearing on the meaning of the 'other offer' provision at issue in this case."  Feb. 23 Ltr. at 2.  Accordingly, JJHCS agrees to run the following two search terms for the January 1, 2017 to July 1, 2022 time period:

- "other offer" W/5 (accumulat* OR maximiz* OR "health plan*" OR insur*)

- "This program offer may not be used with any other coupon, discount, prescription savings card, free trial, or other offer"

SaveOnSP also objects to JJHCS's use of exclusively non-custodial sources for RFP No. 27.  SaveOnSP requests "all Documents and Communications regarding the 'internal JJHCS data' discussed in Complaint ¶¶ 92-101, including the complete databases from which that data was drawn."  RFP No. 27.  JJHCS, however, agreed to produce only "the data that formed the basis for the allegations in Complaint ¶¶ 92-100."  R&O to RFP No. 27.  Production of that data can be accomplished via non-custodial sources.  Therefore, JJHCS will not produce documents from custodial sources for RFP No. 27.

Further, SaveOnSP objects to JJHCS's use of exclusively non-custodial sources for RFP No. 29.  SaveOnSP requests "[f]rom January 1, 2009 through the present, for each Janssen Drug for each year, all Documents and Communications regarding" a variety of categories relating to CarePath's budget and revenues generated by Janssen drugs.  RFP No. 29.  JJHCS, however, agreed to produce only "non-privileged documents in its possession for the relevant Time Period

Andrew Dunlap, Esq.
March 16, 2023
Page 6

sufficient to show (1) how JJHCS determines the amounts of copay assistance funds that JJHCS offers to Patients enrolled in CarePath, (2) JJHCS's budget for copay assistance through CarePath, and (3) JJHCS's actual and projected annual costs for CarePath, to the extent such documents exist and can be located after a reasonable search." R&O to RFP No. 29. Production of those documents can be accomplished via non-custodial sources. Therefore, JJHCS will not produce documents from custodial sources for RFP No. 29.

Finally, SaveOnSP objects to "JJHCS's apparent refusal to search any sources in response to RFPs not listed on its Appendix A" and states that it "understand[s] that JJHCS's apparent refusal to conduct these searches is based on its objections to SaveOnSP's RFPs, and that it will modify Appendix A to reflect agreements reached by the parties or orders issued by the Court." To the extent JJHCS agrees or is otherwise ordered to produce additional documents, it will update its Appendix A. To that end, Appendix A attached includes updates to reflect the agreements that JJHCS has made to date.

* * *

Best regards,

Harry Sandick



**Appendix A**

| Req # | Custodial or Non-Custodial |
|---|---|
| 1 | Non-custodial |
| 4 | Non-custodial |
| 5 | Non-custodial |
| 8 | Custodial & non-custodial |
| 12 | Custodial & non-custodial |
| 13 | Custodial & non-custodial |
| 14 | Custodial |
| 20 | Custodial & non-custodial |
| 25 | Custodial & non-custodial |
| 27 | Non-custodial |
| 28 | Non-custodial |
| 29 | Non-custodial |
| 31 | Custodial |
| 35 | Non-custodial |
| 36 | Non-custodial |
| 42 | Custodial |
| 45 | Non-custodial |

# Exhibits 134-139
# Confidential
# Filed Under Seal