# Sills Cummis & Gross

A Professional Corporation

**The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102-5400
Tel: 973-643-7000
Fax: 973-643-6500**

Jeffrey J. Greenbaum
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

October 10, 2024

<u>**By Email**</u>

Hon. Freda L. Wolfson, U.S.D.J.
Lowenstein Sandler
One Lowenstein Drive LLP
Roseland, NJ 07068

> Re:  *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
> <u>Civil Action No. 2:22-cv-02632 (JKS) (CLW)</u>

Dear Judge Wolfson:

On behalf of JJHCS, we write to respond to the October 7, 2024 "update" that SaveOnSP submitted to Your Honor regarding the production of documents from TrialCard (which is now represented by separate counsel). That update, which SaveOnSP unilaterally submitted without conferring with JJHCS, is incomplete and misleading. While we do not see a need to address these issues at the October 11, 2024 conference—indeed, SaveOnSP's letter is not a motion and requests no action from Your Honor—we write to set the record straight.

In short, JJHCS has fully complied with the Court's May 2024 ruling regarding TrialCard, and SaveOnSP has nothing to complain about. In that order, the Court held that JJHCS's audit rights under the Master Servicing Agreement ("MSA") between JJHCS and TrialCard give it the right to seek from TrialCard certain documents sought by SaveOnSP in this case. JJHCS has done exactly that, making multiple requests to TrialCard and working with both TrialCard and

Hon. Freda Wolfson, U.S.D.J.
October 10, 2024
Page 2

SaveOnSP to provide SaveOnSP with the documents it seeks, after meet-and-confer and subject

to the usual constraints of burden and proportionality. SaveOnSP's grievance is not based on any

failure by JJHCS to comply with the Court's order. Rather, SaveOnSP's real complaint seems to

be that JJHCS has not marched into TrialCard's offices and taken whatever files SaveOnSP has

requested. But this is not how the MSA works. TrialCard is an independent company that is not

under JJHCS's physical control. JJHCS's audit rights only allow it to ask TrialCard to provide it

with the documents that relate to TrialCard's work for JJHCS, and Trial Card is entitled to withhold

from JJHCS documents that do not relate to its work for JJHCS. We recount in more detail below

the many steps JJHCS has taken.

    *TrialCard Has Independent Counsel.* As an initial matter, SaveOnSP did not disclose to

Your Honor an important fact relevant to its complaints: TrialCard is no longer represented by

Patterson Belknap Webb & Tyler LLP. Since June 2024, TrialCard has been represented in

connection with SaveOnSP's new requests by its longtime counsel at the firm of Smith Anderson.[1]

TrialCard's retention of Smith Anderson ensures that it has independent advice concerning its

rights and obligations under the MSA—an issue that Your Honor flagged during the May 23, 2024

hearing. *See* May 23, 2024 Hearing Tr. at 52–53. TrialCard's retention of independent counsel

was also something that SaveOnSP sought. Indeed, SaveOnSP previously objected to Patterson

---

[1] While Patterson Belknap continued to represent TrialCard for the limited purpose of facilitating the completion of the "refresh" production that SaveOnSP requested, that production was completed on August 29, 2024. *See* SaveOnSP Ex. 1. Patterson Belknap now no longer represents TrialCard for any purpose in this case.

Hon. Freda Wolfson, U.S.D.J.
October 10, 2024
Page 3

Belknap's prior joint representation of both JJHCS and TrialCard in this litigation.  *See* Apr. 19, 2024 SaveOnSP Ltr. Mot. at 17–19.

*TrialCard Made The "Refresh" Production In August 2024.*  Following Your Honor's May 2024 order, SaveOnSP requested that JJHCS (a) "refresh" TrialCard's prior production of documents from the files of the four "original" TrialCard custodians and (b) run fifteen search terms—consisting of the seven "[p]reviously agreed to TrialCard search terms" plus eight "CAP search terms"—over the files of several additional TrialCard custodians and produce all responsive non-privileged documents.[2]  *See* SaveOnSP Ex. 2.  As SaveOnSP concedes, the first of these projects is complete:  TrialCard readily agreed to the refresh production and did so in August.  *See* SaveOnSP Ex. 1.

*JJHCS Has Requested Documents From TrialCard Pursuant To The MSA.*  With respect to the additional search terms and custodians, JJHCS has repeatedly explained to SaveOnSP that it does not have physical access to these TrialCard files, so it cannot simply run search terms over them and provide hit counts.  *See, e.g.*, SaveOnSP Ex. 5 (Aug. 8, 2024, 1:38 pm email from J. Chefitz to H. Miles).  However, in full compliance with the Court's order, JJHCS asked TrialCard's counsel to collect documents from the additional custodians that SaveOnSP requested, run SaveOnSP's fifteen search terms over those documents, and provide hit counts.  *See* JJHCS

---

[2] In its October 7, 2024 letter, SaveOnSP asserts that it sought documents from those additional custodians in its April 2024 motion to compel.  Ltr. at 1–2.  SaveOnSP's April 2024 motion did not identify any particular custodians.  *See* Apr. 19, 2024 Ltr. Motion.  Nor did Your Honor ever rule on the appropriateness of the additional custodians from whom SaveOnSP now seeks documents.  *See* May 28, 2024 Ltr. Order at 10 ("I am not making any rulings on the appropriate scope or burden of the requested discovery in this context[.]").

Hon. Freda Wolfson, U.S.D.J.
October 10, 2024
Page 4

Ex. 1 (July 12, 2024 Ltr. from J. Chefitz to I. Linnartz) at 2–3. JJHCS made clear to TrialCard

that it was making this request pursuant to the audit provision of the MSA. JJHCS also related

that Your Honor had ruled that that provision "provides JJHCS with the right to request and

examine TrialCard's 'documents and communications relating to the administration of CarePath,

call recordings and other records reflecting communications between TrialCard's CarePath call

center and patients, and documents and communications related to the implementation of the CAP

program and TrialCard's benefits investigations.'" *Id.* at 1 (quoting May 28, 2024 Letter Order).

On August 16, 2024, TrialCard—a company that does work for many different

pharmaceutical companies—informed JJHCS through its counsel that, "[i]n light of the breadth of

the request, and to limit the collection to documents related to JJHCS's engagement with

[TrialCard]," TrialCard (i) only collected documents that hit on a search term that included

variations of J&J, Janssen, CarePath, and two specific Janssen therapies, and (ii) modified several

of SaveOnSP's proposed search terms to likewise include such variations.[3] *See* SaveOnSP Ex. 6,

App'x A. TrialCard provided hit counts for its modified search terms.[4] *Id.*

---

[3] In particular, TrialCard limited its collection to documents hitting on the search term <"Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA*>, and TrialCard modified several of SaveOnSP's search terms to include <("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path">.

[4] SaveOnSP complains that the hit counts that TrialCard provided were not de-duplicated. Oct. 7, 2024 Ltr. at 3 n.1. SaveOnSP did not originally ask for this, and as soon as SaveOnSP requested de-duplicated counts, JJHCS promptly asked TrialCard to provide them, and then relayed them to SaveOnSP. *See* SaveOnSP Ex. 8 at 3. But even de-duped, TrialCard's hit counts showed that SaveOnSP's proposed search terms would require the review of an unduly burdensome number of documents. Even after JJHCS made this objection clear to SaveOnSP, *see id.*, SaveOnSP has refused to propose narrower search terms, *see* SaveOnSP Ex. 9.

Hon. Freda Wolfson, U.S.D.J.
October 10, 2024
Page 5

JJHCS promptly informed SaveOnSP of TrialCard's response. *See* SaveOnSP Ex. 6 at 1–2. JJHCS also wrote back to TrialCard's counsel, asking for further explanation as to why it limited its collections and searches in the way it did. *See* SaveOnSP Ex. 6, App'x B. TrialCard's counsel responded that "it imposed reasonable limitations to (i) reduce the burden of collecting documents, which was substantial even with those limitations given the number of custodians (8) and years (7.5) at issue and (ii) limit the scope of searches that did not contain terms specific to the [TrialCard]-JJHCS relationship and thus were likely to sweep in a large number of documents unrelated to that relationship." SaveOnSP Ex. 8, App'x A.

When SaveOnSP objected to TrialCard's decision to limit its response, JJHCS worked—and continues to work—cooperatively with SaveOnSP and TrialCard's counsel in an effort to resolve this issue. After SaveOnSP expressed disagreement with TrialCard's use of a point-of-collection limiter to avoid providing JJHCS with documents unrelated to CarePath, JJHCS asked TrialCard to broaden the limiter. *See* SaveOnSP Ex. 8 at 2. When SaveOnSP requested another modification to that limiter, JJHCS made that request of TrialCard too. *See* SaveOnSP Ex. 10. When SaveOnSP further asked that TrialCard run its requested search terms without alteration, JJHCS made that request to TrialCard's counsel. *See id.* And when SaveOnSP asked that TrialCard also run the additional search terms over the four "original" TrialCard custodians, JJHCS requested that of TrialCard's counsel as well. *See* SaveOnSP Ex. 8 at 2–3. JJHCS has also been following up with TrialCard's counsel on these requests. *See* JJHCS Ex. 2 (Sep. 20, 2024 Ltr. from J. Chefitz to I. Linnartz).

*JJHCS Has Complied With The Court's Order.* All of this was done to comply with the Court's order. Although SaveOnSP may pretend otherwise, TrialCard is an independent company

Hon. Freda Wolfson, U.S.D.J.
October 10, 2024
Page 6

with independent counsel.  It is not an affiliate of JJHCS.  While Your Honor has ruled that JJHCS

has the legal right to request certain documents from TrialCard pursuant to the audit provision of

the MSA, JJHCS does not have physical access to TrialCard's documents such that it can collect

documents from TrialCard custodians and run search terms over them, as JJHCS does for its own

custodians.  Nor can JJHCS order TrialCard to provide all of its documents to JJHCS so that JJHCS

"could run proposed search terms over the documents directly," as SaveOnSP demands.  Oct. 7,

2024 Ltr. at 3, n.1.  TrialCard provides services to many companies aside from JJHCS, and the

MSA does not allow JJHCS to insist that TrialCard turn over all of its documents wholesale.

JJHCS can only *ask* TrialCard to provide it with documents relating to its work for JJHCS,

pursuant to the MSA, and JJHCS has done so.

Contrary to the premise of SaveOnSP's October 7, 2024 letter, JJHCS is doing all it

reasonably can to provide SaveOnSP with discovery from TrialCard, consistent with the MSA and

Your Honor's prior ruling.  JJHCS will continue to do so, and SaveOnSP has no legitimate

grievance to bring to the Court.  If SaveOnSP is unsatisfied with the inefficiency of the process it

has insisted upon—that is, only seeking TrialCard documents indirectly through JJHCS pursuant

to JJHCS's audit rights under the MSA—SaveOnSP retains the option of seeking documents

directly from TrialCard pursuant to its pending Rule 45 subpoenas.

Respectfully submitted,

*/s/ Jeffrey J. Greenbaum*
JEFFREY J. GREENBAUM

cc:  All Counsel of Record

# Exhibit 1



www.pbwt.com

July 12, 2024

Jacob I. Chefitz
(212) 336-2474

**By Email**                    **CONFIDENTIAL**

Isaac A. Linnartz, Esq.
Smith Anderson
Wells Fargo Capitol Center
150 Fayettsville Street, Suite 2300
Raleigh, NC 27601

> Re:  ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***,
> **2:22-cv-02632 (JKS) (CLW)**

Dear Isaac:

We write to you in our capacity as counsel to JJHCS in the above-captioned matter.[1]

As you know, Judge Freda Wolfson, who is the Special Master in this litigation, has ruled that Section 17 of the Master Services Agreement ("MSA") between JJHCS and Mercalis ("TrialCard") provides JJHCS with the right to request and examine TrialCard's "documents and communications relating to the administration of CarePath, call recordings and other records reflecting communications between TrialCard's CarePath call center and patients, and documents and communications related to the implementation of the CAP program and TrialCard's benefits investigations." Ex. 1 (May 28, 2024 Letter Order) at 9-10; *see also* Ex. 2 (MSA) § 17.

In light of the Court's ruling that JJHCS has "legal control" over those documents and communications, SaveOnSP has requested that JJHCS produce documents from TrialCard that relate to TrialCard's work for JJHCS "in identifying patients on accumulators, maximizers, and SaveOn-advised plans, including but not limited to the development, roll out, and operation of the CAP Program." *See* May 24, 2024 Letter from H. Miles to S. Arrow at 1; *see also* June 28, 2024 Letter from H. Miles to J. Chefitz. We have provided copies of these letters to you.

---

[1] As you are aware, while we have previously represented TrialCard in connection to subpoenas that TrialCard received in this case, our representation is now limited to facilitating TrialCard's "refresh" of the prior custodial productions it has made in this matter. That "refresh" production is unrelated to the issues raised herein.

Isaac A. Linnartz, Esq.
July 12, 2024
Page 2

Specifically, SaveOnSP has requested that JJHCS produce responsive documents from the custodial files of the following eight TrialCard employees, covering the period April 1, 2016 to November 7, 2023, that hit on the search terms also listed below:

**_Custodians_**

1. Jason Zemcik

2. Rick Ford

3. April Harrison

4. Tommy Gooch

5. Lynsi Newton

6. Amber Maldonado

7. Cosimo Cambi

8. Tony McInnis

**_Search Terms_**

1. SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP

2. ("Johnson & Johnson" OR "Johnson and John-son" OR J&J OR JnJ OR JJHCS OR Janssen) AND (Save-OnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy")

3. (CarePath OR "Care Path") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy")

4. (Accumulator OR Maximizer) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy")

5. ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (CarePath w/5 "term* and condition*")

6. (Accumulator OR Maximizer OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP) w/10 (Care-Path AND (Stelara OR Tremfya) AND (limit OR eliminat*))

7. ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (enroll w/5 CarePath) AND contact*

Isaac A. Linnartz, Esq.
July 12, 2024
Page 3

8. (CAPa OR CAPm OR "adjustment program") **AND** (Save-OnSP OR SaveOn
   OR "Save On SP" OR Save On" OR SOSP OR accumlat* OR maximiz*)

9. ("essential health benefit*" OR EHB* OR "non-essential health benefit" OR
   "nonessential health benefit*" OR NEHB*) **w/50** ("CAPa" OR CAPm" OR
   "adjustment program" OR accumulat* OR maximiz*)

10. "Save On" (*case sensitive*)

11. "save on" **w/50** (accumlat* OR maximiz* OR "essential health benefit*" OR
    EHB* OR "non-essential health benefit*" OR "nonessential health benefit*"
    OR NEHB* OR accredo OR ESI OR "express scripts")

12. "other offer" **w/5** (accumlat* OR maximiz*)

13. ("Express Scripts" OR ESI OR ExpressScripts) **w/50** ("accumulat* OR
    maximiz*)

14. (Accredo OR Acredo) **w/50** (accumulat* OR maximiz*)

15. (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings
    Program") w/25 (6000 OR 6,000 OR limit OR eliminate)

     Pursuant to Section 17 of the MSA and Judge Wolfson's May 28, 2024 Order, we
request that TrialCard collect the documents and communications of the above-listed custodians,
run the above-listed search terms over their files, and provide us with hit counts for each of those
search terms.  We request that you provide the number of documents hitting on each search term
both including and excluding full families.  We expect to provide this information to SaveOnSP
in negotiating the scope of SaveOnSP's discovery requests to JJHCS for TrialCard's documents.
Please let us know if you have any questions or would like to discuss further.

               Very truly yours,

               */s/ Jacob I. Chefitz*

               Jacob I. Chefitz

# Exhibit 1

![LS Lowenstein Sandler logo]

**Freda Wolfson**
Chief U.S. Dist. Judge (ret.)
Partner

One Lowenstein Drive
Roseland, New Jersey 07068

**T:** (862) 926-2708
**F:** (973) 597-2400
**E:** fwolfson@lowenstein.com

<u>**LETTER ORDER**</u>

May 28, 2024

<u>*VIA ECF and Email*</u>
**TO ALL COUNSEL OF RECORD**

> **RE:**   *Johnson & Johnson Health Care Systems, Inc. v. SaveOnSP, LLC*
> **Civ. Action No.: 22-2632(JKS)(CLW)**

Counsel:

On May 23, 2024, I conducted a hearing via Zoom on three discovery-related motions filed by both Plaintiff Johnson & Johnson Health Care Systems, Inc. ("Plaintiff" or "JJHCS") and Defendant SaveOnSp, LLC ("Defendant" or "SaveOnSP"): 1) Plaintiff's motion to compel Darcie Falsioni's third-party communications; 2) Defendant's motion to compel JJHCS to produce documents in the possession of TrialCard, Inc. ("TrialCard"); and 3) Defendant's motion to compel document concerning Best Price Rule. Because my rulings are memorialized on the record, I summarize them here; however, as discussed, I will provide a more fulsome explanation on the issue of TrialCard's documents.

First, Plaintiff sought additional documents from Falsioni, Defendant's Corporate Counsel and Chief Compliance Officer and a designated custodian. These requested documents relate to communications that Falsioni had with third parties regarding the SaveOnSp program. Plaintiff argued that these documents are relevant because Falsioni negotiates contractual terms with Defendant's clients which could shed light on the alleged interference scheme. Plaintiff proposed the following search string:

1

*"service agreement" OR BAA OR "business associate agreement" OR joinder OR PHI OR contract OR amendment*

On the record, I found that the requested documents are relevant; however, I agree with Defendant's position that the search string is too expansive by using "OR" in connecting each seemingly broad independent term, such as "contract" or "amendment." I instructed the parties to meet and confer on the search string, with the suggestion that each term should be qualified by other terms such that the search would only generate relevant documents. The parties shall confer on the appropriate search terms by June 4, 2024. If any dispute arises, I can assist the parties in resolving their differences.

As to the Best Price Rule motion, Defendant sought documents regarding Plaintiff's "best price" certification to the federal government pursuant to Department of Health and Human Services' Best Price Rule. These documents are related to Defendant's Requests for Production Nos. 8, 70 and 79. Defendant insists that it is entitled to such documents for its mitigation defense; that is, to show that Plaintiff changed certain terms and conditions of its CarePath program and the creation of the CAP Program in response to the promulgation of the 2023 Best Price Rule, which never went into effect. While I agree with Defendant's position that these documents *may* reveal Plaintiff's intent and motivation in identifying its patients who are on SaveOnSp's programs, nonetheless before any production on the part of Plaintiff, Defendant must first serve interrogatories on Plaintiff—I suggest no more than three—to explore the purpose of an internal

checklist[1] that may or may not relate to Plaintiff's obligations under the Best Price Rule. Relatedly, Defendant may question Plaintiff regarding who was responsible for creating the internal checklist. I advised Defendant that these interrogatories must be targeted and narrow in scope.[2] Once the interrogatories are served and answered, the parties must meet and confer on appropriate search terms and whether any additional custodians may need to be included on this issue. Again, if any issues arise, the parties shall bring them to my attention.

Finally, I will further expand upon my decision granting Defendant's motion to compel JJHCS to produce TrialCard documents. In that motion, Defendant moved to compel Plaintiff to produce the following responsive documents in the possession of its vendor TrialCard, related to work performed by TrialCard for Plaintiff: (1) documents and communications related to TrialCard's administration of CarePath from the "refresh" time period of July 1, 2022 to November 7, 2023; and (2) documents and communications regarding TrialCard's efforts on behalf of Plaintiff to identify patients on accumulators, maximizers, and SaveOnSP-advised plans, including communications about benefits investigations.

---

[1] ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
SaveOn Ex. 7 (JJHCS_00204199) at -421,
███████████████████████████████████████████████████████████

[2] The time period for the search should be limited to the period from the date when the 2023 Best Price Rule was proposed by the government until it was invalidated by the District Court in the District of Columbia.

As a third-party independent contractor, TrialCard administers the CarePath Program at the behest of Plaintiff. Indeed, TrialCard manages that program pursuant to a Master Services Agreement ("MSA") executed between the two parties. In that role, there is no dispute that TrialCard interfaces directly with patients, using materials that are approved by Plaintiff, to 1) screen patients to determine their eligibility for CarePath; and 2) disburse the CarePath funds. Additionally, TrialCard has been involved in identifying patients who are on SaveOnSp programs, and according to Defendant, TrialCard collaborated with Plaintiff in designing the CAP program.

According to Defendant, TrialCard has been withholding critical documents that relate to Defendant's defense, including mitigation of damages. Defendant maintains that while TrialCard produced a spreadsheet summary of the results of its benefits investigations for Plaintiff, TrialCard refuses, for example, to produce documents showing how it chooses which patients to investigate, how it conducts those investigations, how it determines if a patient is on an accumulator, maximizer, or plan advised by SaveOnSP, or any internal communications regarding any directions provided by Plaintiff. Defendant further maintains that although Plaintiff has produced some communications with TrialCard about patients identified through the CAP Program, documents show that TrialCard also held internal discussions related to the results of benefits investigations, which were not produced. In addition, Defendant argues that TrialCard is inappropriately withholding documents relating to methods that it used or considered using, in addition to benefits investigations, to attempt to identify members of SaveOnSP-advised plans.

Rather than filing a motion to compel TrialCard to produce those documents in North Carolina pursuant to Fed. R. Civ. P. 45, Defendant argues that these documents are within the "legal control" of Plaintiff such that Plaintiff may be compelled, here, to produce those documents.

The parties' primary dispute is whether Plaintiff has "legal control" over the documents Defendant seeks, as those documents are in the possession and custody of TrialCard. Defendant argues that the audit provisions in the MSA between Plaintiff and TrialCard are sufficient to establish control under Rule 34. On the other hand, Plaintiff insists that it does not have control over the requested documents because, in its view, the MSA provides only limited rights to audit certain documents for limited purposes. I disagree.

Federal Rule of Civil Procedure 34 allows "[a] party . . . [to] serve on any other party a request . . . to produce . . . in the responding party's possession, custody or control . . . any designated documents . . . ." Fed. R. Civ. P. 34(a). "In the absence of control by a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has no duty to produce." *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 140 (3d Cir. 1988). "In the context of Fed. R. Civ. P. 34(a), so long as the party has the legal right or ability to obtain the documents from another source upon demand, that party is deemed to have control." *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004). Importantly, a "practical ability to obtain the requested documents" from separate corporate entities is not enough to constitute control because an entity "could legally . . . refuse to turn over such documents." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107-

08 (9th Cir. 1999). Instead, "control" is defined as "the legal right to obtain documents upon demand." *United States v. International Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989). Federal courts construe "control" very broadly for Rule 34 purposes. *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991).

A contractual right to obtain documents in the possession of a third party can constitute control for Rule 34 purposes. *See, e.g., Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*, 2016 U.S. Dist. LEXIS 20076, at *4 (D. Del. Feb. 12, 2016) (stock purchase agreement with third party provided requisite control); *Lofton v. Verizon Wireless (Vaw) LLC*, 2014 U.S. Dist. LEXIS 165140, at *1 (N.D. Cal. Nov. 25, 2014) (audit provisions in vendor contracts provided control over third party's documents); *Haskins v. First Am. Title Ins. Co.*, 2012 U.S. Dist. LEXIS 149947, 2012 WL 5183908, at *2 (D.N.J. Oct. 18, 2012) (contracts provided control over and access to third party agents' files).

Here, the relevant audit provisions of the MSA provide:





(MSA, § 17 (emphasis added).)

First, that the intent of § 17 may be on financial audits is of no moment. Indeed,

the crux of the "control" analysis is whether the parties intended to provide Plaintiff

access to certain documents such that Plaintiff may audit or examine those documents. In other words, the focus is on whether Plaintiff has "the contractual right to obtain the documents requested." *Moretti v. Hertz Corp.*, No. 14-469, 2018 U.S. Dist. LEXIS 168609, at *8 (D. Del. Sep. 30, 2018). In that regard, Plaintiff's reliance on *Inline Connection Corp. v. AOL Time Warner, Inc.*, Nos. 02-272, 02-477, 2006 U.S. Dist. LEXIS 72724, at *11 (D. Del. Oct. 5, 2006) is misplaced. For one, in that case, unlike the broad provision in the MSA here, the contract in *Inline* required a non-party to provide information only "where feasible," which the court construed as merely providing the contracting party access to information. *Id.* Here, ███████████████████████████████████

██████████████████████████████████████████ This language plainly is distinguishable from the provision in *Inline*.[3]

Indeed, during oral argument, Plaintiff conceded that the MSA's audit provision is quite broad. That provision states that TrialCard "█████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[3]      During oral argument, Plaintiff argued that I should be guided by the decision in *Camden Iron*, and consider whether the documents sought are records which JJHCS may request and obtain in its normal course of business with TrialCard. But that case is distinguishable because it dealt with a parent and subsidiary relationship and the related companies' course of dealings, not control governed by a written agreement executed by two unrelated corporate entities.

8

██████████████████████" Courts that have examined similarly broad language have found control for the purposes of Rule 34. *See, e.g., Moretti*, 2018 U.S. Dist. LEXIS 168609, at *4-5 ("To allow representatives of International or Hertz, at any time during normal business hours, to inspect the premises, records, and vehicles of the Licensee used in operation as a Hertz System Licensee and to examine Licensee's records ascertaining and verifying the number of vehicles owned, leased, used or kept by the Licensee for use in Licensee's Vehicle Renting Business, the revenues therefrom and any - other information required by Hertz with respect to the Licensee's Vehicle Renting Business."); *Mercy*, 380 F.3d at 160 (where the subcontractor was "employed . . . to conduct the audit and receive documents," and thereby agreed to make available pertinent files "at all reasonable times, for review and obtaining any necessary information," the Third Circuit held that the "the documents were accessible to the [contracting party] and within its control"); *Haskins*, 2012 U.S. Dist. LEXIS 149947, at *2 (finding control from contract language that indicates that the third-party must "[m]aintain and carefully preserve all records . . . [and] [p]ermit [the defendant] to examine, audit and copy all financial information and records upon reasonable prior notice").

Turning to the documents sought by Defendant, these fall within the broad audit provision of the MSA. Defendant has requested production of documents and communications relating to the administration of CarePath, call recordings and other records reflecting communications between TrialCard's CarePath call center and patients, and documents and communications related to the implementation of the CAP program and TrialCard's benefits investigations. Presumably, these documents are being

"maintained by [TrialCard] in relation to [the MSA] and/or any applicable Work Orders" such that Plaintiff "shall at any time have the right to request [those] documents." (MSA, § 17.2.) They also fall under the term "other records" in the same provision. (*Id.* ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

Accordingly, I find that by virtue of the MSA, Plaintiff has legal control over the requested documents.

Having made that determination, I direct the parties to meet and confer on the scope of the TrialCard discovery by June 4, 2024. While I am not making any rulings on the appropriate scope or burden of the requested discovery in this context, I nevertheless make the following observations. At the outset, I reiterate that the requested discovery is relevant as the documents at issue relate to the creation and implementation of the CAP Program, and benefits investigations into whether patients were on SaveOnSP programs. Although Plaintiff argues that many of the TrialCard documents that Defendant seeks are cumulative of party discovery, I am not convinced, based on the simple fact that TrialCard, itself, has not performed a search of the requested documents to determine whether it possesses additional relevant documents. In short, regardless of whether the documents may be cumulative, to make that determination, TrialCard must first conduct a search at the request of JJHCS. Finally, at this juncture, I note that Plaintiff has not

10

presented any compelling reasons to avoid refreshing the production of the categories of

documents that TrialCard has already agreed to produce.


*/s/ Freda L. Wolfson*
Hon. Freda L. Wolfson (ret.)
Special Master

Exhibit 2



































































































































# Exhibit 2



www.pbwt.com

September 20, 2024

Jacob I. Chefitz<br>(212) 336-2474

**<u>By Email</u>**

Isaac A. Linnartz, Esq.
Smith Anderson
Wells Fargo Capitol Center
150 Fayettsville Street, Suite 2300
Raleigh, NC 27601

> Re:   ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***, <u>**2:22-cv-02632 (JKS) (CLW)**</u>

Dear Isaac:

  We write to follow up on our September 6, 2024 letter regarding the collection of documents and communications from Mercalis (formerly known as "TrialCard") that we previously requested.[1]

  In our September 6, 2024 letter, we asked whether Mercalis would be willing, pursuant to Section 17 of the Master Servicing Agreement, to expand the search term that it has used to limit its collection as follows:

> "Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA OR Balversa OR Darzalex OR Erleada OR Imbruvica OR Opsumit OR Remicade OR Rybrevant OR Simponi OR Tracleer OR Uptravi OR Zytiga OR CAPm OR CAPa

  SaveOnSP has recently requested that the above search term be expanded to include additional terms in red, which are the names of additional Janssen drugs at issue in this litigation:

---

[1] As with our previous letters on this subject, we are writing to you here in our capacity as counsel to JJHCS in the above-captioned matter.

Isaac A. Linnartz, Esq.
September 20, 2024
Page 2

      "Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA OR Balversa OR Darzalex OR Edurant OR Erleada OR Imbruvica OR Intelence OR Opsumit OR Ponvory OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Symtuza OR Tracleer OR Uptravi OR Ventavis OR Zytiga OR CAPm OR CAPa

      Please let us know whether Mercalis would be willing, pursuant to Section 17 of the Master Servicing Agreement, to use this revised search term to limit its collection of documents.

      SaveOnSP has also requested hit counts for the search terms listed in our July 12, 2024 letter without alterations.  Pursuant to Section 17 of the MSA and Judge Wolfson's May 28, 2024 Order, JJHCS asks that Mercalis provide such hit counts.

      Finally, in our September 6, 2024 letter, we asked that Mercalis, pursuant to Section 17 of the MSA and Judge Wolfson's May 28, 2024 Order, run terms 8 through 15 listed in our July 12, 2024 letter over the files of the four "original TrialCard" custodians and that Mercalis provide hit counts for those searches, including the total number of unique documents hitting on those terms.  Please let us know when Mercalis anticipates providing those hit counts.

      Please let us know if you have any questions or would like to discuss further.

               Very truly yours,

               */s/ Jacob I. Chefitz*

               Jacob I. Chefitz

15271854