# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

November 12, 2024

<u>VIA E-Mail</u>

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

    Re: ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC***
       ***No. 2:22-cv-02632 (JKS) (CLW)***

Dear Judge Wolfson:

  On behalf of Save On SP, LLC ("SaveOn"), we write in reply to Johnson & Johnson Health Care Systems, Inc.'s ("JJHCS," and, with its affiliates, "J&J") opposition to SaveOn's motion to compel J&J to produce documents regarding its CAP program and benefits investigations ("BIs") from its vendor TrialCard Inc. ("TrialCard").

  It has been five and a half months since Your Honor ruled that J&J has legal control over TrialCard's documents relating to its work for J&J, and that documents relating to J&J's CAP program and BIs into whether patients were on SaveOn-advised plans were relevant. May 28, 2024 Order. Yet J&J has produced nothing new from TrialCard beyond a limited "refresh" production. J&J did not even provide accurate and complete hit counts for the search terms that SaveOn proposed in May until November 4, 2024, the day that J&J filed its opposition to SaveOn's motion.

Case 2:22-cv-02632-CJK-CLW Document 554-6 Filed 03/12/25 Page 2 of 4 PageID: 68285
Case 3:22-cv-02632-CJK-CLW Document 546-3 Filed 12/12/24 Page 2 of 14 PageID: 62957

Hon. Freda L. Wolfson  Page 2

J&J calls this "steady progress." Opp. at 2. It is not. In July 2024, Your Honor stated that J&J should "move things along" and figure out its production of TrialCard documents "sooner, rather than later." July 15, 2024 Tr. at 135:21-24. Nearly three months later, and five and a half months after SaveOn proposed search terms, Ex. 14, J&J still has not produced the requested CAP- and BI-related documents and still refuses to provide a date certain by which it will do so—even as it demands that Your Honor cut off SaveOn's ability to raise discovery disputes and to serve follow-up discovery requests, *see* Oct. 11, 2024 Tr. at 105:23-106:5.

This is not a dispute, as J&J would have it, about "whether certain steps should take two weeks or longer," Opp. at 12; it is about whether J&J can continue to delay complying with Your Honor's Order of well over five months ago. J&J's excuses for its failure to do so are meritless.

*First*, while J&J blames SaveOn for "blow[ing] up" TrialCard's production of documents via a third-party subpoena, Opp. at 4-5, SaveOn sought the documents directly from J&J because TrialCard—then represented by J&J's counsel—withheld documents responsive to SaveOn's subpoenas for over a year, while insisting that any motion to compel be heard in North Carolina, Ex. 12. If J&J had facilitated a reasonable production of documents from TrialCard in the first place (as it promised, Opp. at 4), SaveOn's subsequent motions might not have been necessary.[1]

---

[1] J&J's positions about what SaveOn should have done differently are themselves inconsistent. Even while it argues that SaveOn should be seeking these documents via subpoena, J&J faults SaveOn for subpoenaing TrialCard instead of relying on J&J's promise to "voluntarily facilitate the production of relevant documents from its vendor TrialCard." Opp. at 4. But SaveOn did so because J&J refused to state that it had possession, custody, or control over TrialCard's relevant documents, Ex. 4 at 3. And while J&J asserts that "[m]any documents were produced" pursuant to this subpoena and that SaveOn served a second subpoena "seeking yet more documents," Opp. at 4-5, SaveOn served a second subpoena because TrialCard refused to produce custodial documents from the "refresh" time period of July 1, 2022 to November 7, 2023 on the basis that they fell outside the first subpoena—and then refused to produce those documents in response to the second subpoena as well. *See* Ex. 20 (Mar. 22, 2024 Ltr.).

*Second*, while J&J says that its production has been slowed because it is using the "process that SaveOnSP insisted the parties use," Opp. at 10, SaveOn decidedly did not propose applying collection terms, having TrialCard's counsel review the documents, and then having J&J's counsel review the same documents—J&J did. Opp. at 10-11. J&J's chronology of its efforts shows just how slowly it has acted; for example, taking three weeks to respond to SaveOn's proposed search terms and then waiting another month for TrialCard to respond. *See* Opp. at 6-8.

*Third*, while J&J asserts that SaveOn delayed negotiations because it "has still not responded to JJHCS's objection that the hit counts that TrialCard provided in August 2024 are too high," Opp. at 10-11, those hit counts were incomplete and inaccurate. *See* Oct. 7, 2024 Ltr. at 3-4 & n.1-2. Among other things, J&J did not de-duplicate the hit counts and so falsely reported that "SaveOnSP's requested terms hit on more than 41,000 documents, including families." J&J Ex. 5 at 2 (Aug. 22, 2024 Lr. From J. Chefitz to H. Miles). J&J later had to admit that the terms actually "hit on 16,722 unique documents, family inclusive." J&J Ex. 7 at 3 (Sept. 6, 2024 Ltr. from J. Chefitz to H. Miles). Even after J&J belatedly addressed this issue, the hit counts that it provided were still incomplete—they resulted from running search terms on a limited group of documents that TrialCard had gathered using a patently inappropriate "collection term" that excluded the names of most Janssen drugs at issue and references to the CAPa and CAPm programs that TrialCard administered for J&J. *See* Oct. 7, 2024 Ltr. at 3 n.1. J&J did not provide accurate and complete hit counts until November 4, 2024, J&J Ex. 11, five and a half months after SaveOn first asked for them, Ex. 14—hardly "light speed," Opp. at 12. While J&J accuses SaveOn of "intransigence in negotiating search terms and custodians," Opp. at 11, three days after receiving accurate

Hon. Freda L. Wolfson                                                                                                   Page 4

hit counts, SaveOn sent a counter-proposal, dropping five requested search terms and narrowing five others. Ex. 21 (Nov. 7, 2024 Ltr. from H. Miles to J. Chefitz).[2]

*Finally*, while J&J insists that it "has done everything reasonable in its power to comply with Your Honor's Order and ensure production from TrialCard," Opp. at 2, it fails to identify a single action it has taken beyond asking TrialCard to produce the documents. J&J asserts that it is not required to do more: "JJHCS can only *ask* TrialCard to provide it with documents relating to its work for JJHCS, pursuant to the MSA, and JJHCS has done so." Oct. 10, 2024 Ltr. at 6 (original emphasis). Because J&J has legal control over these documents, it cannot stand on the fact that it has asked TrialCard for them when there are "myriad other ways" that it "could have attempted to obtain the … documents." *Chevron Corp. v. Donzinger*, 296 F.R.D. 168, 217-19 (S.D.N.Y. 2013), *aff'd* 833 F.3d 74, 146-49 (2d Cir. 2016). J&J dismisses such authorities as involving non-cooperative parties and third parties, Opp. at 12-13, but that is exactly what J&J and TrialCard are here, having withheld documents in response to a subpoena for over a year and then in response to party discovery requests for well over another five months.

---

[2] SaveOn has compromised not only on search terms but also on document collection. While SaveOn originally requested that J&J run its proposed search terms over all of the proposed TrialCard custodians' documents, *see* J&J Ex. 6 at 1, SaveOn then agreed to J&J's request that TrialCard collect documents using a "point of collection limiter" to identify documents about TrialCard's work for J&J, not other clients, as J&J admits, Opp. at 2-3. TrialCard has gathered these documents and run hit counts over them, *see, e.g.*, J&J Ex. 11, but has not provided them to J&J, Opp. at 3, and J&J has apparently not asked it to do so, even though they are inarguably within J&J's control because they relate to TrialCard's work for J&J. *See* May 28, 2024 Order at 7-8.

For reference, that collection term is: Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA* OR Balversa OR Darzalex OR Edurant OR Erleada OR Imbruvica OR Intelence OR Opsumit OR Ponvory OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Symtuza OR Tracleer OR Uptravi OR Ventavis OR Zytiga OR CAPm OR CAPa.

Given these extensive and continuing delays, Your Honor should set a firm deadline for production. SaveOn asks Your Honor to order J&J to produce the requested CAP-related documents within two weeks of Your Honor's resolution of this motion and complete any negotiations with SaveOn about custodians and search terms for that production within one week of the resolution of this motion.

SaveOn appreciates Your Honor's attention to this matter.

Respectfully submitted,

/s/ *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
Sabrina M. Galli
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
sgalli@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# Exhibit 20



www.pbwt.com

March 22, 2024

Sara A. Arrow
(212) 336-2031

**By Email**

Hannah Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

>    Re:   December 1, 2023 Subpoena to TrialCard
>          *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
>          **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Hannah:

On behalf of TrialCard, we write in response to SaveOnSP's March 8, 2024 letter regarding the subpoena dated December 1, 2023 (the "Second Subpoena").

    **I.**    **Time Period**

SaveOnSP asserts that TrialCard has provided "no reasoned basis" to justify a July 1, 2022 cutoff date. Not so: we have explained our position on this issue repeatedly in written correspondence and during meet and confers. *See, e.g.*, Mar. 1, 2024 Ltr. from S. Arrow to H. Miles; Jan. 12, 2024 Ltr. from S. Arrow to H. Miles; *see also* Dec. 22, 2023 Ltr. from S. Arrow to H. Miles. Specifically, as it relates to the February 17, 2023 subpoena (the "First Subpoena"), SaveOnSP *agreed* to July 1, 2022 as the cut-off date. *See* May 31, 2023 Ltr. from E. Holland to G. Carotenuto at 1 (referring to April 1, 2016 to July 1, 2022 as the "Relevant Time Period"); July 26, 2023 Ltr. from E. Holland to K. Brisson at 7 n.1 (proposing search terms for the "Relevant Time Period" defined as April 1, 2016 to July 1, 2022).

Belatedly disappointed with the agreement it struck, SaveOnSP then sought to circumvent this agreed-upon time period by propounding the Second Subpoena—containing several requests that overlapped with those in the First Subpoena and imposing a new "refresh" time period to partially match the "refresh" time period to which the parties are bound. But as SaveOnSP acknowledges, TrialCard, as a third party, is not bound by Judge Waldor's November 7, 2023 Order extending party discovery. *See* Jan. 11, 2024 Email from H. Miles to S. Arrow. Nor has SaveOnSP explained why TrialCard, as a third party, should be subject to such expansive discovery far beyond the initial agreed-upon cut-off date. SaveOnSP has already refused to say whether its own co-conspirators and business partners—Express Scripts, Inc. and Accredo Health

Hannah Miles, Esq.
March 22, 2024
Page 2

Group—should be required to update its third-party productions through November 7, 2023. *See id.* And perhaps most egregious, SaveOnSP has provided no basis whatsoever for why TrialCard must produce documents even ***beyond*** the cutoff date for party discovery (November 7, 2023), as SaveOnSP now insists.

Despite these objections, TrialCard has nevertheless agreed to produce multiple categories of documents through November 7, 2023 in the interest of compromise. *See, e.g.*, Mar. 1, 2024 Ltr. from S. Arrow to H. Miles at 1–2. For example, TrialCard has agreed to produce the results of thousands of benefits investigations to comply with the First and Second Subpoenas. *See* Mar. 12, 2024 Ltr. from S. Arrow to H. Miles at 1 n.1; Oct. 20, 2023 Ltr. from S. Arrow to E. Holland at 1. Further, as discussed in greater detail below, TrialCard has agreed to refresh its production of CarePath enrollment data[1] and case and task notes for Stelara and Tremfya patients through November 7, 2023. These productions, which are voluminous, represent a good-faith effort to comply with SaveOnSP's subpoenas in a manner proportional to its role as a third party.

Finally, if there are specific, targeted categories of documents that you seek through November 7, 2023, please so advise so that we can evaluate that request. If you present a reasonable proposal, we are certainly willing to consider it—but we cannot agree to a wholesale expansion of the discovery cutoff without any justification or reasonable limitation.

## II. TrialCard's Ability to Identify Patients

**Request Nos. 1 and 2** seek documents sufficient to show the identities of all drug makers for which TrialCard performed investigations, including benefits investigations, that identify or attempt to identify if a patient is on a health plan affiliated with a copay maximizer, accumulator, or SaveOnSP. As we have explained, any actions that TrialCard may or may not have taken for clients other than JJHCS are irrelevant. SaveOnSP has not explained how TrialCard's work performed for its non-JJHCS clients has any relevance whatsoever to JJHCS or CarePath. Please so do and we will consider your position.

**Request No. 3** seeks documents sufficient to show the methods by which TrialCard identifies or attempts to identify whether patients are members of health plans affiliated with copay accumulators, maximizers, or SaveOnSP. Despite TrialCard's production of the results of thousands of benefits investigations performed for patients taking Stelara or Tremfya, *see* TRIALCARD_00008931, SaveOnSP insists that TrialCard has not satisfied Request No. 3. We disagree. Based on our reasonable investigation to date, the benefits investigations process is the only systematic method used by TrialCard on behalf of JJHCS to identify whether patients are

---

[1] Specifically, TrialCard agrees to refresh its prior production of CarePath enrollment data for the time period July 1, 2022 through November 7, 2023. *See* TRIALCARD_00000001; TRIALCARD_00000004; TRIALCARD_00000005; TRIALCARD_00000006; TRIALCARD_00000007; TRIALCARD_00000008; and TRIALCARD_00000009.

Hannah Miles, Esq.
March 22, 2024
Page 3

affiliated with a copay accumulator, maximizer, or SaveOnSP. TrialCard's production of the results of those benefits investigation therefore satisfies this request.

SaveOnSP nevertheless asserts that it is entitled to documents concerning some "methods" that TrialCard hypothetically employed to identify SaveOnSP-affiliated patients because SaveOnSP has asserted a "failure to mitigate defense."[2] This argument rests on several unsubstantiated assumptions, including that (1) TrialCard developed other "methods" of identifying SaveOnSP patients; (2) such methods would be applicable to JJHCS and the CarePath program; (3) it disclosed those methods to JJHCS; and (4) having learned of those methods, JJHCS declined to implement them. Each of these assumptions rests on pure speculation. TrialCard, therefore, declines to go on a fishing expedition to satisfy SaveOnSP's curiosity into its business entirely unrelated to JJHCS or CarePath.

**Request No. 4** seeks documents and communications "between TrialCard and JJHCS" regarding the identification or attempted identification of patients who are members of plans affiliated with copay accumulators, maximizers, or SaveOnSP. As we explained during the March 7 meet and confer, such documents—which necessarily would have been provided to JJHCS—can be obtained through party discovery.

SaveOnSP nevertheless insisted during the March 7 meet and confer that this request encompasses internal documents that "reflect" communications between TrialCard and JJHCS, including notes that TrialCard personnel may have taken during a phone call or meeting. As we discussed during the meet and confer, however, the plain language of this Request is not so expansive: it seeks only Communications—i.e., "the transmittal of information"—*between* JJHCS and TrialCard. It does not request purely internal documents reflecting the contents of those transmittals. *See* Second Subpoena at 4.

### III. TrialCard's Responses to Identifying Patients

**Request No. 6** seeks documents sufficient to show the methods by which TrialCard responded to benefits investigations that revealed or suggested that a patient was a member of a health plan that was affiliated with a copay accumulator, maximizer, or SaveOnSP. As we have explained in previous correspondence and during the March 7 meet and confer, TrialCard has produced multiple letter templates that it sent to SaveOnSP-patients in connection with the benefits investigation process. TrialCard also produced a catalogue of these letters. *See* TRIALCARD_0008931 ("Tasks"). Based on our reasonable investigation to date, we are unaware

---

[2] We note that the caselaw you cite in support of this argument appears inapposite. *See Prusky v. Reliastar Life Ins.*, 532 F.3d 252, 258–59 (3d Cir. 2008) (discussing the failure to mitigate defense in the context of a breach of contract claim asserted under Pennsylvania law); *Grubbs v. Knoll*, 376 N.J. Super. 420, 437 (N.J. App. 2005) (discussing whether a jury instruction on the failure to mitigate defense is appropriate). Neither case stands for the broad proposition that a third party is obligated to produce any document that may have some hypothetical bearing on whether the plaintiff could have mitigated its damages.

Case 2:22-cv-02632-JKS-CLW    Document 455-2    Filed 12/3/25    Page 12 of 176
Case 2:22-cv-02632-JKS-CLW    Document 659-2    Filed 12/31/25    Page 170 of 174
PageID: 48205
PageID: 66295

Hannah Miles, Esq.
March 22, 2024
Page 4

of any other systematic "method" that TrialCard undertook to respond to the results of benefits investigations identifying patients as SaveOnSP-affiliated; to the extent JJHCS undertook such methods, JJHCS is the proper source for such discovery. We trust that this resolves any dispute with respect to Request No. 6.

**Request No. 8** seeks documents and communications regarding the creation or attempted creation of a response or "solution" to copay maximizers, accumulators, or SaveOnSP. The search term that you have proposed is untethered to the claims at issue in this litigation: it seeks documents related to any maximizer or accumulator irrespective of whether such documents concern SaveOnSP. In the event you wish to pursue this request, please provide an appropriately narrowed term that addresses the relevant issues in this litigation.

### IV.   Communications with Stelara and Tremfya Patients

**Request No. 5** seeks "[a]ll Communications with patients receiving Stelara and Tremfya, including without limitation recordings of calls." You have represented that if TrialCard "refresh[es] the call and task notes, subject to the same procedures in the May 12, 2023 letter, and agree that SaveOn reserves it rights to request call recordings and transcripts in the future, that would" resolve any dispute with respect to Request No. 5.

TrialCard agrees to refresh its production of case and task notes through November 7, 2023 using the same collection methodology we used during the initial collection of case and task notes, which involved filtering the records for the Janssen Drugs at issue in this litigation and further searching them for responsive material using the search terms listed the May 12, 2023 letter. *See* May 12, 2023 Ltr. from G. Carotenuto to A. Dunlap at 2. Additionally, as we did with the initial production of case and task notes, we invite SaveOnSP to use these records to identify a reasonable number of calls for which you would like TrialCard to attempt to locate and produce the associated audio recording and/or transcript, where available. *See id.*

### V.   Communications Between TrialCard and SaveOnSP

**Request No. 7** seeks all communications between TrialCard and SaveOnSP. As we have explained, SaveOnSP can search its own records for communications responsive to this request, including call recordings. *See* TrialCard's Responses and Objections to RFP No. 5 ("TrialCard further objects to the extent this Request seeks the production of documents and communications that are available from parties to the Action, in particular from SaveOnSP."); *see also* Mar. 1, 2024 Ltr. from S. Arrow to H. Miles at 4.

In your March 8 letter, you clarified why you believe SaveOnSP would not possess the documents it seeks with this request. Specifically, you confirmed that certain "outbound calls

Hannah Miles, Esq.
March 22, 2024
Page 5

may not have been recorded by SaveOn."[3]  Please explain, in as much detail as possible, which types of calls are recorded and which are not.  This will allow TrialCard to evaluate whether there are certain recordings that only TrialCard maintains that are not in SaveOnSP's possession.  To the extent you seek production of such recordings, please also provide identifying information that would allow TrialCard to identify the relevant calls—specifically, all names and phone numbers used by SaveOnSP employees to communicate with TrialCard.  Absent such information, TrialCard lacks identifying information to isolate responsive recordings without undertaking the enormous burden of assessing every incoming call that it received.

You also ask a series of questions regarding the 16 call recordings that TrialCard produced on January 12, 2024.  We confirm that, at JJHCS's request, TrialCard agreed to produce these 16 call recordings.  Please direct any further questions regarding these call recordings to JJHCS.

Very truly yours,

*/s/ Sara A. Arrow*
Sara A. Arrow

---

[3] Based on our meet and confer and SaveOnSP's March 8 letter, we understand that SaveOnSP has narrowed Request No. 7 to seek only this subset of call recordings—i.e., those that SaveOnSP did not record and thus does not have in its possession.  Please promptly clarify if this understanding is incorrect.

# Exhibit 21

Case 2:22-cv-02632-JKS-CLW  Document 455-4  Filed 12/31/24  Page 12 of 14 PageID: 46207

Case 2:22-cv-02632-JKS-CLW     Document 465-4     Filed 12/30/24     Page 13 of 14
Case 2:22-cv-02632-JKS-CLW     Document 455-2     Filed 12/10/24     Page 13 of 14
PageID: 46207
PageID: 48208

1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

October 7, 2024

**Via E-mail**

Jacob I. Chefitz
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jchefitz@pbwt.com

Re:   *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC* **(Case No. 2:22-cv-02632-JKS-CLW)**

Dear Jacob,

We write in response to your November 4, 2024 Letter regarding J&J's production of documents from TrialCard.

Thank you for providing the requested hit counts for SaveOn's search terms, proposed May 24, 2024. Please see the attached appendix for SaveOn's revised proposed search terms. If J&J continues to object on the basis of burden to any particular search term, please provide revised hit counts, broken down by term within the string, and by custodian. Please also provide the total number of documents that J&J would be required to review, de-duplicated, for the revised search terms.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

<u>Appendix 1</u>

- **Collection Term**: "Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen OR CarePath OR "Care Path" OR STELARA* OR TREMFYA* OR Balversa OR Darzalex OR Edurant OR Erleada OR Imbruvica OR Intelence OR Opsumit OR Ponvory OR Prezcobix OR Remicade OR Rybrevant OR Simponi OR Symtuza OR Tracleer OR Uptravi OR Ventavis OR Zytiga OR CAPm OR CAPa

- **Custodians**:
  - All terms: Jason Zemcik, Rick Ford, April Harrison, Tommy Gooch, Lynsi Newton, Amber Maldonado, Cosimo Cambi, and Tony McInnis
  - Terms 8-15 only: Holly Weischedel, Sini Abraham, Paul Esterline, and Rick Fry

| Search # | Original Search Term | Proposed Revised Search Term |
|---|---|---|
| 1 | SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP | SaveOn proposes no alterations to this search term. |
| 2 | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | SaveOn proposes to drop this search term. |
| 3 | (CarePath OR "Care Path") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | SaveOn proposes to drop this search term. |
| 4 | (Accumulator OR Maximizer) AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR "org* chart" OR "retention policy") | SaveOn proposes to drop this search term. |
| 5 | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (CarePath w/5 "term* and condition*") | SaveOn proposes no alterations to this search term. |
| 6 | (Accumulator OR Maximizer OR SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP) w/10 (Care Path AND (Stelara OR Tremfya) AND (limit OR eliminat*)) | SaveOn proposes to drop this search term. |
| 7 | ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) AND (enroll w/5 CarePath) AND contact* | SaveOn proposes no alterations to this search term. |
| 8 | (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*) | (CAPa OR CAPm OR "adjustment program") **w/50** (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*) |
| 9 | ("essential health benefit*" OR EHB* OR "non-essential health benefit" OR "nonessential health benefit*" OR NEHB*) w/50 (CAPa OR CAPm OR "adjustment program" OR accumulat* OR maximiz*) | SaveOn proposes no alterations to this search term. |
| 10 | "Save On" (*case sensitive*) | SaveOn proposes to drop this search term. |
| 11 | "save on" w/50 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts") | SaveOn proposes no alterations to this search term. |
| 12 | "other offer" w/5 (accumulat* OR maximiz*) | "other offer" **w/25** (accumulat* OR maximiz*) |
| 13 | ("Express Scripts" OR ESI OR ExpressScripts) w/50 (accumulat* OR maximiz*) | ("Express Scripts" OR ESI OR ExpressScripts) **w/25** (accumulat* OR maximiz*) |
| 14 | (Accredo OR Acredo) w/50 (accumulat* OR maximiz*) | (Accredo OR Acredo) **w/25** (accumulat* OR maximiz*) |
| 15 | (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate) | (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") **w/15** (6000 OR 6,000 OR limit OR eliminate) |