

**Freda Wolfson**
Chief U.S. Dist. Judge (ret.)
Partner

One Lowenstein Drive
Roseland, New Jersey 07068

T: (862) 926-2708
F: (973) 597-2400
E: fwolfson@lowenstein.com

## SPECIAL MASTER LETTER ORDER

March 11, 2025

<u>*VIA ECF and Email*</u>
**TO ALL COUNSEL OF RECORD**

   **RE:**  *Johnson & Johnson Health Care Systems, Inc. v. SaveOnSP, LLC*
      **Civ. Action No.: 22-2632(JKS)(CLW)**

Counsel:

   On March 6, 2025, I held oral argument on the following four discovery motions filed by Defendant SaveOnSP, LLC ("SaveOnSP" or "Defendant"): 1) motion to run certain search terms on five agreed-upon custodians; 2) motion to run certain search terms over Scott White's files; 3) motion to compel Plaintiff Johnson & Johnson Health Care Systems, Inc. ("Plaintiff" or "JJHCS") to produce CarePath budget-related documents; and 4) motion to add eight TrialCard custodians. This Letter Order memorializes, and expands upon, the rulings I made in connection with these motions, and provides further guidance.

## I.  Standard of Review

   As to each of the pending motions, I am guided by the following standard of review. District Courts "have broad discretion to manage discovery." *See Robinson, v. Horizon Blue Cross-Blue Shield of New Jersey*, No. 12-2981, 2014 WL 3573339, at *3 (D.N.J. July 21, 2014) (quoting *EEOC v. Princeton Healthcare Sys.*, No. 10-4126, 2012 WL 1623870, at *18 (D.N.J. May 9, 2012)).

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

While the right to discovery is broad, it is not unlimited, and courts may in the exercise of their discretion deny "unreasonably cumulative" discovery requests. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Rule 26(b)(2)(C) requires that a court limit discovery otherwise permitted by the rules if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

*Id.*

This rule "is intended to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989) (quoting Fed. R. Civ. P. 26 advisory committee note) (internal quotations omitted).

Courts in the District of New Jersey have noted that amendments to Rule 26 have been added to "confront the problem of over-discovery and to allow the court to proportion discovery, even though it may be relevant." *See Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 107 (D.N.J. 1990); *City of Sterling Heights Gen. Emples. Ret. Sys. v. Prudential Fin., Inc.*, No. 12-05275, 2015 U.S. Dist. LEXIS 110712, at *7 (D.N.J. Aug. 21, 2015). The emergence of e-discovery only has intensified the need for judicial scrutiny of the scope of discovery. "Rule 26 was amended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery in light of the information explosion of recent decades [that] has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression." *City of Sterling Heights*, 2015 U.S. Dist. LEXIS 110712, at *7 (citation and internal quotations omitted)(alteration in the original).

There is a dearth of legal authority on the appropriate standard regarding the designation of additional ESI custodians. Nonetheless, mindful of "over-discovery," courts have articulated that when parties propose custodians, the moving party must make a sufficient showing that the resisting party's previous production is deficient and state a basis to find that there may exist documents in the possession of other custodians that are "unique," meaning distinctly different from and not simply duplicative of information that has already been produced. *See Lifescan, Inc. v. Smith*, No. 17-5552, 2023 U.S. Dist. LEXIS 194571, at *32-33 (D.N.J. Oct. 11, 2023); *see In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 18-MD-2843, 2021 U.S. Dist. LEXIS 264066, at *21 (N.D. Cal. Oct. 21, 2021) (finding that the party seeking designation of additional custodians must

show "that the disputed custodians possess uniquely relevant information that is not available from the sources already designated"). I will turn to each of the subject motions.

## II.    Motion to Run Search Terms on Five Agreed-Upon Custodians

In July 2024, I issued a Letter Order addressing Defendant's motion to compel production of documents from various Janssen entities. While Defendant's request was denied, the Letter Order directed Defendant to serve a list of proposed custodians from Janssen entities who may have relevant documents. After reviewing over 100 exhibits, I suggested the following individuals as custodians because, they may possess relevant documents: Sylvia Shubert, Jennifer Goldsack, Mark Wiley, Michelle Barnard, Mitch Akright and Cherilyn Nichols. The parties were directed to meet and confer on this issue. After the parties' conferral in August 2024, Plaintiff agreed to add the following custodians:

1. **Sylvia Shubert** - the Vice President of Value, Access and Pricing Strategy for the Strategic Customer Group ("SCG")
2. **Jennifer Goldsack** - Director of Pricing for the SCG
3. **Michelle Barnard** - Senior Director of Value, Access and Pricing Strategy, Immunology for the SCG
4. **Cherilyn Nichols** - Director of Patient Engagement and Customer Solutions, Commercial Excellence
5. **Pinal Shah** - employee of Janssen Immunology, working in Patient Access and Affordability Solutions

Since then, Defendant submits that Plaintiff has refused to apply any search terms over the files of these custodians, which necessitated the filing of the instant motion. Defendant has proposed a number of search terms encompassing six different categories of documents, which include:

1.    Terms Related to SaveOnSP
2.    Terms Related to the CAP Program
3.    Terms Related to CarePath's T&Cs
4.    Terms Related to Vendors
5.    Terms Related with Affordable Care Act and Compliance

For its part, Plaintiff argues while it has agreed to add the Custodians, it has sought to narrow Defendant's request since the proposed search terms place a disproportionate burden on Plaintiff. Plaintiff faults Defendant for having no appetite to limit the terms. In sum, Plaintiff makes the following arguments as to why the search terms should be either rejected or narrowed: 1) based on the Custodians' circumstances, the fully seven-year time period Defendant seeks is not appropriate; and 2) SaveOnSP's proposed search parameters for each topic are neither reasonable nor tailored to the custodians at issue.

In connection with this motion, I have reviewed well over 130 exhibits. Below, I will summarize my rulings that were placed on the record with regard to each custodian.

A.    *Michelle Barnard*

1.    <u>Time Frame</u> – June 28, 2021 to July 12, 2023

2.    <u>SaveOnSP Search Term</u>[1]

- (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk") w/25 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

---

[1]    I note that all the search terms that I set forth in this Letter Order are suggestions. They reflect the parties' respective positions and the numerous documents I have reviewed. These terms are recommended to ensure that only relevant, non-duplicative documents are retrieved for each custodian, making the document production proportional to the needs of the case at this stage of discovery.  However, guided by these recommendations, the parties may confer and agree upon their own terms.

3.    CAP Search Term

Barnard was a core member of the Tiger Team and the project lead for IQVIA, responsible for addressing key business questions related to co-pay assistance. Her work included estimating the volume of maximizer patients to help J&J adjust the maximum CarePath benefit and analyzing the "Behavior Impact of Maximizers on Patients." As such, she is an appropriate custodian for CAP related documents. However, at this stage of discovery, Defendant's proposed search terms must be narrowed to avoid duplicative documents. I suggest:

- (CAPa OR CAPm OR "adjustment program") w/25 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR accumulat* OR maximiz*)

- ("CAP 2023" OR "CAP 23" OR "CAP '23") w/25 (accumulat* OR maximizer*)

- "Tiger Team" w/25 (accumulat* OR maximiz* OR copay OR co-pay OR CAP OR CAPa OR CAPm OR "adjustment program")

4.    CarePath T&Cs Term

Defendant provides little evidence that Barnard played a role in drafting or shaping the CarePath T&Cs, suggesting she is unlikely to possess unique documents. While it is undisputed that Barnard was involved in the CarePath program, Defendant has not shown that her role differed significantly from other existing custodians in a way that would yield relevant, non-duplicative documents. Accordingly, no search terms shall be run for this category.

     5.    Third-Party Vendor Terms

I find that Barnard is not a suitable custodian for TrialCard, Fein, or Avalere. This conclusion is based on my review of the exhibits proffered by Defendant. Defendant has not sufficiently met its burden of demonstrating that Barnard is a unique custodian who possesses non-duplicative documents related to these thirds-party vendors, particularly given that existing custodians have already produced a substantial volume of documents, and Defendant has also received document production from certain vendors themselves.

That said, I do find that Barnard likely possesses unique documents related to IQVIA, as she was involved in communications with IQVIA agents and discussions concerning research information gathered by IQVIA. However, Defendant's proposed search term is too broad. My suggested search term for IQVIA is:

> IQVIA w/15 (accumulat* OR maximiz* OR CAP OR CAPa OR CAPm OR "adjustment program")

*B.*    *Sylvia Shubert*

    1.    Time Frame – October 12, 2020 to October 2, 2022

    2.    SaveOnSP Search Term

- (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk") w/25 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

    3.    CAP Search and CarePath T&Cs Terms

Defendant has not submitted sufficient evidence to demonstrate the extent of Shubert's involvement in the CAP program or in the drafting of the CarePath T&Cs.

While Shubert may have played a minor role, the exhibits proffered by Defendant do not establish that she had substantial involvement in either program to justify her inclusion as a custodian for those topics at this stage of discovery.

> 4.    Third-Party Vendor Terms

While I find that Shubert is not an appropriate custodian for TrialCard, Fein, or Archbow, I do find that Shubert likely possesses unique documents related to IQVIA and Avalere. Based on the documents I reviewed, Shubert was involved in discussions with Avalere, and tellingly, other existing custodians relied on her for that information. Moreover, Plaintiff does not dispute that Shubert played a more significant role with information sent from IQVIA. Indeed, communications show that Shubert was the point person that existing custodians approached with questions involving IQVIA data. The suggested search terms for Avalere and IQVIA are as follows:

- Avalere w/25 (accumulator* OR maximizer* OR mitigat* OR "NEHB" OR (variable w/5 "EHB") OR "CAPa" OR "CAPm" OR "adjustment program")

- IQVIA w/15 (accumulat* OR maximiz* OR CAP OR CAPa OR CAPm OR "adjustment program")

> 5.    ACA Compliance Term

There is no dispute that the documents sought pursuant to the ACA compliance term are relevant since they concern SaveOnSP's purported recommendations that plans designate various drugs as NHBs under the ACA. Based on the exhibits cited, it appears that Shubert solicited information about SaveOnSP's contractual relationship with ESI and Accredo and the EHB and NEHB distinction, and she received information regarding

such topic from third party vendors.  As such, running the ACA term on Shubert's files is appropriate. Below is my suggestion:

- (essential OR nonessential OR non-essential OR "non essential") w/25 ("Affordable Care Act" OR ACA OR Obamacare)

C.    *Jennifer Goldsack*

    1.    <u>Time Frame</u> – September 1, 2020 to November 7, 2023

    2.    <u>SaveOnSP Search Term</u>

- (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk") w/25 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

    3.    <u>CAP Search and CarePath T&Cs Terms</u>

Like Shubert, Defendant has not provided sufficient evidence that Goldsack was sufficiently involved in the CAP program or the drafting of the CarePath T&Cs to warrant her inclusion as a custodian. While Defendant asserts that she participated in responding to Copay Adjustment Programs before J&J formed the CAP Tiger Team, the evidence only shows that she worked on a single slide related to the CAP program. Other communications confirm Goldsack's involvement in the CAP program, but without more, Defendant has not justified adding her as a custodian for these topics—especially given the numerous existing custodians already covering CAP and CarePath.

    4.    <u>Third-Party Vendor Terms</u>

I do not find Goldsack to be an appropriate custodian for Avalere or TrialCard, as Defendant's exhibits merely show that she sent or received information from these third-

party vendors without demonstrating substantial involvement. However, communications indicate that Goldsack, along with Shubert and Barnard, participated in discussions regarding IQVIA-related data. Additionally, since no existing custodian covers Deloitte, I find it appropriate to designate Goldsack as a custodian for this subject, as the exhibits confirm her involvement with this vendor. I suggest:

- IQVIA w/15 (accumulat* OR maximiz* OR CAP OR CAPa OR CAPm OR "adjustment program")

- Deloitte w/25 (accumulator* OR maximizer* OR "NEHB" OR (variable w/5 "EHB") OR "CAPa" OR "CAPm" OR "adjustment program")

D.    *Cherilyn Nichols*

1.    <u>Time Frame</u> – July 1, 2021 to November 7, 2023

2.    <u>SaveOnSP Search Term</u>

- (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk") w/25 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

3.    <u>CAP Search and CarePath T&Cs Terms</u>

The limited exhibits cited in support of Nichols's role in the CAP program, CAP 2023, or the Tiger Program do not establish that she possesses unique, non-duplicative documents beyond those of existing custodians. While Nichols was the CE lead for CAP 2023, multiple existing custodians already cover that program. Given that Defendant has already received thousands of documents on these subjects during discovery, it must demonstrate that the proposed custodian possesses unique and non-duplicative documents. It has not done so here.

4.     <u>Third-Party Vendor Terms</u>

Plaintiff's argument that my July 16, 2024 Order bars requests related to third-party vendors concerning Nichols is incorrect. While the Order required Plaintiff to produce Janssen employee communications specifically related to Sundial Market Research, it also directed the parties to confer on additional relevant third-party research and produce any relevant communications from J&J employees regarding those reports. The parties' subsequent discussions were unproductive, leading to Defendant's motion. Plaintiff has not presented any substantive arguments against the expansive third-party vendor terms proposed for Nichols. Since Plaintiff has agreed that Nichols is an appropriate custodian, the parties should confer on this issue. Indeed, the exhibits indicate that Nichols, who was responsible for CarePath's market research, participated in discussions and received various third-party data.

5.     <u>Adherence of Patients Term</u>

Based on the exhibits I have reviewed, it appears that Nichols analyzed the impact of accumulators and maximizers on patient adherence to Janssen drugs. In fact, Nichols not only interpreted data on patient adherence but also led certain studies comparing J&J with its competitors in this area. However, Defendant's proposed search terms on this topic are overly broad. The search should focus specifically on how SaveOnSP plans affect patient adherence, rather than encompassing all accumulators and maximizers. The parties are directed to confer on a more narrowly tailored search term.

E.    *Pinal Shah*

1.     <u>Time Frame</u> – September 1, 2021 to November 7, 2023

2.    <u>SaveOnSP Search Term</u>

•    (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP OR "Jody Miller" OR "Ron Krawczyk") w/25 (accumulat* OR maximiz* OR "essential health benefit*" OR EHB* OR "non-essential health benefit*" OR "nonessential health benefit*" OR NEHB* OR accredo OR ESI OR "express scripts")

3.    <u>CAP Search Term</u>

I am not persuaded by Defendant's argument that Shah should be added as a custodian for the CAP program. Although she attended meetings where relevant topics were discussed, mere attendance is not sufficient. There are no exhibits demonstrating that Shah played a substantive role. Up until now, every newly added custodian has been permitted based on extensive emails or other communications showing that the individual was deeply involved. Here, no such evidence has been provided.

4.    <u>CarePath T&Cs Term</u>

On the other hand, Shah was significantly involved in T&C updates, actively emailing existing custodians with suggestions for updating CarePath T&Cs for CAP enhancements based on competitors' terms. Shah also proposed edits to the eligibility provisions for maximizer patients and discussed additional potential changes to CarePath's T&Cs. However, Defendant's seven proposed search strings are overly broad. The parties are directed to confer and narrow the terms to two search strings.

5.    <u>Third-Party Vendor Terms</u>

Plaintiff does not make any specific arguments as to why each of the proposed third-party vendor terms should not be run over Shah's files. With respect to RIS Rx, it appears that Shah played a more significant role as she communicated with RIS Rx

regarding identifying patients on accumulators and maximizers, received data from RIS Rx on Stelara and Tremfya patient spending, and Shah performed quality checks of RIS Rx-related data. Thus, Shah is an appropriate custodian for this vendor. The suggested RIS Rx term is:

- ("RIS" OR "RISRx") w/25 (accumulator* OR maximizer* OR CAPm OR CAPa OR "adjustment program")
  Time period: January 1, 2022 to November 7, 2023

During oral argument, I also directed Plaintiff to produce Shah's documents as to Archbow since the proposed search term only produced four hits. As to TrialCard, I directed to the parties to confer on the issue. My suggested term for TrialCard is as follows:

- TrialCard w/15 (accumulator* OR maximizer* OR CAPm OR CAPa OR "adjustment program" OR EHB OR NEHB)[2]

## III.    Defendant's Motion to Compel Production of CarePath Projection Documents

### A.    Parties' Arguments

Defendant moves to compel Plaintiff to produce documents concerning (1) the development and calculation of J&J's projections for its CarePath spending and (2) Plaintiff's business plans explaining how and why these projections were determined. Defendant argues that discovery on these topics is warranted because Plaintiff has alleged that SaveOnSP caused JJHCS damage by making it pay more money from

---

[2]    My suggestion places a narrower connector (*i.e.*, w/15) because there are many custodians on this topic, and as explained *infra*, I am designating more TrialCard custodians.

CarePath than it otherwise would have for a purpose JJHCS did not intend. As a result, Plaintiff has placed at issue both the amount it intended to pay in copay assistance and the rationale behind that intention. According to Defendant, Plaintiff has only produced a single topline number per quarter, without any explanation of how the figures were calculated or who was responsible for the calculations. Through this motion, Defendant seeks production of the data underlying these projections, as well as the "business plan" documents that explain how and why Plaintiff arrived at these projections.

In response, Plaintiff contends that this motion is Defendant's fourth attempt to obtain the same information. Plaintiff explains that nearly two years ago, SaveOnSP sought documents on how JJHCS set CarePath budgets, which Judge Waldor found overly broad. Six months later, SaveOnSP moved to compel similar documents, prompting Judge Waldor to request narrower requests. Then, Plaintiff claims that I later denied the motion, ruling that budgetary communications were irrelevant to Defendant's defenses. Plaintiff contends this motion simply rehashes prior requests.

On the merits, Plaintiff argues that CarePath budgetary decisions are unnecessary for Defendant's defense, as all CarePath funds were intended for patients, not payers or profit-seeking middlemen like SaveOnSP. Plaintiff maintains that Defendant does not need financial discovery to understand CarePath's purpose, a topic already extensively covered. Regarding business plans, Plaintiff asserts that Judge Waldor's order requiring SaveOnSP to produce its business plans does not obligate Plaintiff to do the same. Plaintiff maintains that SaveOnSP's business plans were relevant because they pertain to its alleged misappropriation of patient assistance, whereas JJHCS's are not.

B.    *Prior Rulings*

Previously, I determined that internal discussions on CarePath budget changes were irrelevant. In that connection, documents reflecting budgetary changes and internal communications on why certain decisions were made or not made are unnecessary for Defendant's defense. Indeed, I explained that to establish its mitigation defense, Defendant must show that Plaintiff failed to take reasonable mitigating measures, which requires evidence of actual changes—not internal deliberations. I also found that CarePath's purpose is irrelevant to Plaintiff's New York unfair business practice (GBL) claim because Plaintiff's allegation of public harm—linked to CarePath's viability and fund availability—was sufficient. The alleged harm is unrelated to Janssen drug profitability, meaning even significant profits would not negate Plaintiff's claims. Accordingly, I denied Defendant's request for Janssen drug pricing documents as irrelevant.

Similarly, SaveOnSP previously argued that CarePath spending documents were needed to support its defense that JJHCS was not injured, as any increase in copay assistance was tied to JJHCS's budget. I rejected that argument and precluded discovery into why Plaintiff set or maintained copay assistance limits after learning of Defendant's services. On this motion, while Defendant contends it is not seeking documents on potential CarePath budget changes or J&J's return on investment, nonetheless I find that its request for information on how Plaintiff calculated its Topline Projections is substantially similar to previously rejected requests. Defendant claims it seeks data on

actual and forecasted CarePath spending and the rationale behind those amounts, but these requests still relate to topics I have already deemed not relevant.

C.    *Relevancy*

Defendant's arguments for obtaining budget data and business plans are similarly unpersuasive. While Defendant claims these documents are relevant to understanding the "how and why" of JJHCS's CarePath spending, I have already determined that Plaintiff's internal budgeting decisions have no bearing on damages in this case. The amount JJHCS intended to allocate for co-pay spending over time, including for patients in the SaveOnSP program, is irrelevant. Only actual changes or topline budget figures matter for assessing damages.

Defendant also argues that it needs Plaintiff's business plans to determine why JJHCS set its CarePath spending at certain levels and whether it considered reducing spending in response to SaveOnSP's actions. I previously rejected this argument, finding that SaveOnSP is not entitled to documents explaining "why" JJHCS did or did not make certain budget decisions. Such information is irrelevant to SaveOnSP's mitigation defense, which requires evidence of actual budget changes, not internal decision-making.

In an attempt to distinguish its current request, Defendant now claims it seeks business plans to assess Plaintiff's damages independently of mitigation—to understand how much Plaintiff intended to spend on copay assistance and for what purpose. However, Plaintiff's intended spending is irrelevant; only actual expenditures matter for damages. With respect to business plans, Defendant argues that Judge Waldor previously allowed the production, but that decision applied only to SaveOnSP's plans, not

Plaintiff's. The distinction is crucial. SaveOnSP's business plans are relevant because they may reveal Defendant's intent, which could support Plaintiff's intentional tort claim. In contrast, Defendant has not articulated any defense that would justify access to JJHCS's business practices or strategies.

Accordingly, Defendant's motion to compel Plaintiff to produce CarePath Projection Documents is denied.


IV.    **Defendant's Motion to Compel Plaintiff to Run Proposed Search Terms Over Scott White's Files**

Based on my prior rulings in January and April 2024, White was added as a custodian for his role in the CAP program and CarePath, but with limited search terms applied to his files. Defendant now seeks to expand the search to capture documents related to White's role in drafting CarePath's T&Cs from January 1, 2009 to April 1, 2016, arguing that White likely possesses unique, relevant documents from the program's early stages. Defendant contends that lower-level custodians' productions do not reflect J&J's intent behind the May-Not-Use Provision, and because White helped develop CarePath from predecessor programs, he may have relevant documents from that earlier period.

Plaintiff opposes this request, arguing that it has already reviewed 30,000 documents from eight custodians dating back to 2009 without finding any documents that would shed light on the meaning of the term "other offer." Plaintiff disputes Defendant's claim that White created CarePath and asserts that his files are unlikely to

provide insight into the meaning of key terms. Plaintiff further argues that Defendant's proposed search term is overly broad and unrelated to its stated need for discovery.

I have previously determined that documents related to the drafting of CarePath's T&Cs and predecessor programs are relevant due to ambiguities in the agreement's terms. As such, those documents are crucial to Defendant's defense. Given White's role in creating the Coupon Guidance Document—which Defendant characterizes as a key piece of evidence—there may be additional relevant documents in his possession that would be highly relevant in this case. However, I find the proposed timeframe too broad. Having reviewed Defendant's submissions, the more appropriate period is January 2013 to April 2016, though the parties may further confer on this. There is little evidence of White's involvement in drafting CarePath T&Cs before 2013.

Accordingly, Defendant's motion is granted in part and denied in part. The parties are directed to confer on limited search terms, and I suggest the following:

> (CarePath OR "Savings Program" OR "Rebate Program" OR "Access Program" OR "copay assistance") w/10 ((term w/3 condition) OR "T&C" OR "TNC" OR "other offer" OR "coupon*" OR "discount*" OR "free trial" OR "prescription savings card*")

## V.    Defendant's Motion to Add Eight Additional TrialCard Custodians

Defendant moves to compel Plaintiff to add eight additional TrialCard custodians—Rick Ford, Jason Zemcik, Tommy Gooch, Lynsi Newton, April Harrison, Amber Maldonado, Tony McInnis, and Cosimo Cambi (the "Proposed Custodians")—and to apply certain search terms to four existing custodians: Sini Abraham, Paul Esterline, Rick Fry, and Holly Weischedel.

TrialCard is retained by J&J, through a Master Service Agreement ("MSA"), to perform benefits investigations to determine if CarePath patients are on accumulators, maximizers, or SaveOn-advised plans. In mid-2023, TrialCard, itself, agreed to add the four existing TrialCard custodians and to run seven search terms over their files, most relating to SaveOnSP's name and CarePath's T&Cs, from April 1, 2016 to July 1, 2022. The production was later refreshed at my direction. TrialCard has produced documents, including patient call notes, from the four existing custodians, all of whom worked with JJHCS on the CAP Program. According to Defendant, Plaintiff's documents showed that TrialCard, the Proposed Custodians in particular, played a central role in all aspects of CarePath, from its creation and original implementation to later efforts to assess its efficacy and make improvements. Defendant asked TrialCard in late 2023 to add seven of the eight Proposed Custodians. TrialCard declined to do so, and this motion ensued.

As an initial matter, I note that Plaintiff did not substantively address the request to add search terms for existing custodians. During oral argument, Plaintiff's counsel argued that the proposed terms remain overly broad but expressed openness to narrower terms. I directed the parties to confer on refining the search parameters for these custodians.[3]

Regarding the Proposed Custodians, I will permit their addition for two reasons. First, the exhibits demonstrate that each likely possesses relevant documents on key topics. Second, based on the current production, I find that TrialCard may possess

---

[3]    I note that the parties have agreed to apply a client limiter when TrialCard performs searches of J&J-related documents.

additional relevant documents from these individuals. However, I caution that the search scope and timeframe for the custodians must remain narrowly tailored as the parties confer on terms.

A.    *Rick Ford*

As TrialCard's Vice President of Market Access, Defendant asserts that Ford evaluated J&J's potential responses to SaveOnSP as early as 2019, using his expertise in insurance plan design. Defendant further claims that Ford proposed a high-level strategy that ultimately led to the CAP program. Plaintiff, however, argues that none of Defendant's exhibits show Ford's direct involvement in JJHCS's response to SaveOnSP or the CAP program. According to Plaintiff, nearly all the cited exhibits involve general discussions on accumulators and maximizers rather than JJHCS's actual response to SaveOnSP. Plaintiff contends that Ford's industry commentary on copay programs is not probative of the CarePath T&Cs' meaning.

TrialCard's relevance in this case is limited to its role in the CAP program and the benefits investigations it conducted to determine whether a patient was on a maximizer like SaveOnSP. Given these topics, Ford appears to have relevant knowledge. He participated in strategizing responses to programs like SaveOnSP and frequently communicated with J&J employees, advising them on methods to "combat" accumulators and maximizers. Accordingly, Ford likely possesses relevant, non-duplicative documents on the CAP program. I suggest narrowing the timeframe to January 2019 – November 2023 and using the following search term::

(CAPa OR CAPm OR "adjustment program") w/25 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*)

B.    *Jason Zemick*

Defendant argues that, as TrialCard's Director of Product Management, Zemcik was responsible for (1) identifying health plans advised by SaveOnSP or patients enrolled in the SaveOnSP plan through benefits investigations, and (2) monitoring and addressing the amount of CarePath copay assistance provided to these patients. Plaintiff, however, contends that Defendant has not cited any substantive evidence showing Zemcik played a significant role in the CAP program. Despite previously designating Zemcik in its interrogatory responses as having participated in TrialCard's work related to CarePath, Plaintiff now downplays his role as peripheral.

For that reason, I disagree with Plaintiff's position. Plaintiff's own interrogatory responses identify Zemcik as having worked on identifying SaveOnSP-advised health plans and patients, as well as monitoring CarePath copay assistance for those enrolled in SaveOnSP. Based on these admissions and my review of the exhibits, I find that Zemcik likely possesses non duplicative, relevant documents. Accordingly, I direct the parties to confer on a narrower set of search terms and a refined timeframe as proposed by Defendant.

C.    *Tommy Gooch*

Defendant asserts that as TrialCard's Director of Major Client Implementation, Gooch led the development and launch of the CAP program for Stelara and Tremfya, among other drugs. Defendant further claims that Gooch served as the Implementation

Manager for a CAP enrollment data feed designed to cross-reference and track CAP-enrolled patients and those on SaveOn-advised plans, demonstrating his ongoing role in identifying such patients. Additionally, Defendant argues that Gooch has remained instrumental in the CAP program since its inception, updating project requirements documents for at-issue drugs as recently as October 2023.

Plaintiff effectively concedes that Gooch was involved in implementing the CAP Program but argues that Defendant is not entitled to expansive discovery from him. Plaintiff contends that Defendant overstates Gooch's role, noting that several cited documents pertain to unrelated programs, including a proposed CAP program for Erleada, which was never implemented during the relevant period. Plaintiff further objects to Defendant's request for Gooch's documents dating back to April 1, 2016, despite no cited documents predating November 2021. Additionally, Plaintiff argues that Defendant fails to justify broad search terms as reasonably tailored to identifying relevant documents related to the CAP Program's implementation and administration.

I find that because Gooch was involved in the CAP program, the search terms should be tailored to locate documents specifically related to that program. However, consistent with Plaintiff's position, I do not believe Defendant's cited exhibits justify a broad search of Gooch's files on unrelated topics. I also agree with Plaintiff that the timeframe for the search should begin with November 2021. Below is my suggestion for the search term.

> (CAPa OR CAPm OR "adjustment program") w/25 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*)

D.    *Lynsi Newton*

Defendant claims that Newton, TrialCard's Program Manager for Immunology, has overseen the day-to-day administration of the Stelara and Tremfya CarePath and CAP programs since 2022. Indeed, Plaintiff identified her as responsible for patient communications and overseeing the drafting of letters to patients on a maximizer or accumulator. According to Defendant, Newton also fulfilled requests from J&J employees to assess the financial impact of accumulators, maximizers, and the CAP program. Plaintiff argues that Newton's role since 2022 does not justify searching her documents back to April 2016. Plaintiff further contends that other existing custodians possess the same types of documents and that Newton's involvement primarily overlapped with custodians such as Holly Weischedel and Sini Abraham when responding to JJHCS requests related to the CAP program.

I find inclusion of Newton as a custodian is appropriate. When Defendant asked Plaintiff to identify individuals responsible for patient and health plan communications from 2009 to the present, Plaintiff listed Newton among those involved in administering CarePath and communicating with patients. Newton was also the project manager for CarePath programs of various Janssen drugs. Given her roles, Newton should be added as a custodian. However, the search terms must be narrowed, and the timeframe should be limited to when the CAP program was implemented to November 2023. My suggested search terms are as follows:

(CAPa OR CAPm OR "adjustment program") w/25 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*)

(STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/15 (OOP OR "out of pocket" OR "out-of-pocket" OR max* OR benefit* OR offer*)

### E.    April Harrison

As TrialCard's Associate Director of Client Services, Defendant claims that Harrison was responsible for editing CarePath's eligibility requirements to reflect the CAP program by drafting changes to the CAPa and CAPm portions of CarePath's T&Cs/eligibility. Defendant argues that Harrison led the CAP program for Erleada, drafting and negotiating its Business Rules Document and Statement of Work, and discussing CAP strategy and J&J's approach to SaveOnSP. Defendant also claims she performed similar work for other Janssen drugs, including Tracleer, Uptravi, Opsumit, Darzalex, Darzalex Faspro, Rybrevant, and Zytiga.

In response, Plaintiff contends that most of the exhibits cited by SaveOnSP relate to irrelevant programs for drugs other than Stelara and Tremfya, which have not been implemented in connection with SaveOnSP. Plaintiff argues that these documents do not justify adding Harrison as a custodian or applying broad search terms dating back to April 2016.

The cited exhibits confirm that Harrison was not involved in decision-making but rather implemented J&J-directed changes to the T&Cs. She also drafted communications for patients deemed ineligible for CarePath assistance due to enrollment in the SaveOnSP plan. While, admittedly, Harrison's role was more limited than Defendant suggests, she

corresponded with J&J agents regarding T&Cs, assisted in implementing CAP program changes, and analyzed data for J&J to assess CAP program effectiveness. Even though she did not shape policy, she would likely possess unique documents related to the T&Cs through her communications with J&J. Accordingly, I find Harrison to be an appropriate custodian but with a narrowed timeframe and search terms. As with Newton, the timeframe should be limited to 2022–November 2023, when the CAP program was implemented. Suggested search terms are below:

> (CAPa OR CAPm OR "adjustment program") w/25 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*)

> (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/15 (OOP OR "out of pocket" OR "out-of-pocket" OR max* OR benefit* OR offer*)

> ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) w/25 (CarePath w/5 "term* and condition*")

F.   *Amber Maldonado*

According to Defendant, ss TrialCard's Director of Immunology, Maldonado helped J&J create and implement the CAP program. Defendant claims she led CAP-related meetings, prepared materials, and made recommendations to J&J custodians. Critically, Defendant argues that Maldonado would possess meeting notes that may be very important to this case. Plaintiff concedes that Maldonado's role may warrant her being a custodian, but argues that SaveOnSP has not demonstrated any relevant activity before late 2021. Plaintiff also contends that SaveOnSP fails to justify its proposed search terms, noting that only three of eight terms specifically relate to the CAP Program. Additionally, Plaintiff argues that after 2022, Maldonado worked alongside existing

JJHCS and TrialCard custodians, and many cited exhibits involve email threads with already-designated custodians, making broad discovery unnecessary.

I disagree with Plaintiff's position. First and foremost, Plaintiff previously agreed to add Maldonado as a custodian. Based on the exhibits reviewed, she played a senior role at TrialCard, actively participating in CAP program design and suggesting changes to J&J. Maldonado also distributed call guides to TrialCard employees, instructing them that patients using both CarePath and SaveOnSP violated CarePath's T&Cs. These communications strongly indicate that Maldonado possesses unique, non-duplicative documents relevant to this case. However, as with other custodians, the search terms and timeframe must be narrowed. Below are my suggestions:

> (CAPa OR CAPm OR "adjustment program") w/25 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*)

> (STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/15 (OOP OR "out of pocket" OR "out-of-pocket" OR max* OR benefit* OR offer*)

> ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) w/15 (CarePath w/5 "term* and condition*")

G.  *Tony McInnis*

As TrialCard's Escalation Manager for Immunology, McInnis is responsible for the CAP appeals process, handling cases where patients believe they were misidentified as being on accumulators, maximizers, or a SaveOn-advised plan. Defendant argues that McInnis is the only custodian primarily handling patient appeals and is likely to possess unique documents on the CAP identification process and escalation procedures. Additionally, Defendant claims that since J&J delegated the approval process for CAPm

escalations to TrialCard in August 2023, McInnis is likely to have non-duplicative records absent from J&J custodians' files. Plaintiff responds that searching McInnis's files as far back as April 2016 is unwarranted, as the first CAP appeal occurred in February 2022. Plaintiff also argues that SaveOnSP's proposed search terms are overly broad, generating thousands of hits, which is excessive given McInnis's limited relevance.

Plaintiff does not appear to oppose adding McInnis as a custodian for CAP appeals. While Plaintiff asserts that it has produced non-custodial appeal records, those records do not reflect the criteria McInnis used to determine whether to escalate appeals to J&J. Since J&J delegated the CAP approval process to McInnis in August 2023, his files likely contain unique, relevant documents. The time frame and search terms, again, must be narrowed. My suggested term is:

> CAPa OR CAPm OR "adjustment program") w/25 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*)

### H.   Cosimo Cambi

As a TrialCard Analytics Consultant, Cambi was named in J&J's interrogatory responses as an individual who identified health plans advised by SaveOnSP and patients enrolled in the SaveOnSP program. Defendant describes Cambi as TrialCard's "data guru", responsible for conducting quantitative analyses on accumulators, maximizers, and SaveOnSP specifically. He was also tasked with identifying patients on SaveOnSP-advised plans using J&J-provided data and evaluating the "Program Health" of the CAP program. Defendant argues that Plaintiff has not produced Cambi's resulting analysis or related reports. On the other hand, Plaintiff contends that SaveOnSP provides

little evidence of Cambi's actual work on the CAP Program, instead citing general discussions on accumulators and maximizers. Plaintiff argues this does not justify adding Cambi as a custodian. I disagree.

Based on the parties' correspondence Plaintiff had agreed to add Cambi as a custodian, contingent upon SaveOnSP dropping requests for other custodians. Plaintiff itself identified Cambi as a TrialCard agent involved in identifying SaveOnSP-advised health plans and patients, and multiple exhibits support this fact. While Plaintiff argues that Defendant has not presented any evidence that Cambi's analyses were more than about accumulators/maximizers generally; the exhibits show otherwise. Accordingly, based on the exhibits I reviewed, Cambi is an appropriate custodian. However, like all other custodians, the search terms and time frame must be narrowed. The suggested search terms are below.

> (CAPa OR CAPm OR "adjustment program") w/25 (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP OR accumulat* OR maximiz*)

> (SaveOnSP OR SaveOn OR "Save On SP" OR "Save On" OR SOSP) w/25 ("Johnson & Johnson" OR "Johnson and Johnson" OR J&J OR JnJ OR JJHCS OR Janssen) w/25 (enroll w/5 CarePath)

If the parties cannot come to an agreement as to any of the issues addressed in this Letter Order, they are directed to promptly inform me by way of email.

/s/ Freda L. Wolfson<br>Hon. Freda L. Wolfson (ret.)<br>Special Master