# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHNSON & JOHNSON HEALTH CARE SYSTEMS, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**SAVE ON SP, LLC, et al.,**<br><br>Defendants. | Civil Action No.: 22-2632 (JKS)(CLW)<br><br>**SPECIAL MASTER<br>REPORT AND RECOMMENDATION** |

**Hon. Freda L. Wolfson (ret.), Special Master:**

In the instant motion, Plaintiff Johnson & Johnson Healthcare Systems ("Plaintiff" or "JJHCS") moves to supplement its Amended Complaint against SaveOnSP, LLC ("SaveOnSP"), Accredo Health Group, Inc. ("Accredo"), and Express Scripts, Inc., ("ESI"), (collectively "Defendants") under Fed. R. Civ. P. 15(d). Defendants oppose the Motion.[1] The Court referred this Motion to me for a Report and Recommendation ("R&R"). For the reasons set forth herein, I recommend that Plaintiff be permitted to supplement and amend paragraph 178; however, for lack of good cause pursuant to Fed. R. Civ. Rule 16, I do not recommend Plaintiff be permitted to supplement or amend paragraphs 179 and 180. Finally, with respect to paragraphs 181-183, while I find that Plaintiff has demonstrated good cause pursuant to Rule 16 to supplement these paragraphs, I defer my recommendation on this aspect of Plaintiff's motion until after the

---

[1]    Defendants Accredo and ESI join SaveOnSP's opposition brief. (ECF No. 432.)

parties submit supplemental briefing regarding the futility of paragraphs 181-183, consistent with this R&R.

## BACKGROUND AND PROCEDURAL HISTORY[2]

### I.     CarePath Program & Defendants' Alleged Scheme

In this action, Plaintiff accuses Defendants of implementing a scheme to misappropriate funds from Plaintiff's payment assistance program, also known as the Janssen CarePath Program ("CarePath" or "the Program"). (*See* Am. Compl. ¶¶ 1–2, 7.) CarePath provides critical financial assistance to help patients afford out-of-pocket costs for forty-three medications manufactured by other Johnson & Johnson entities. (*Id.* ¶¶ 7, 46, 57.) Recognizing the rapidly increasing costs that patients must pay out-of-pocket for those medications, CarePath helps to "defray" patients' copay costs. (*Id.* ¶ 6.) To be eligible for the Program, patients must be enrolled in commercial or private health insurance plans. (*Id.* ¶ 58.)

As alleged, despite Defendants' awareness of the vital role CarePath plays in easing the financial burden of patients, Defendants nonetheless have orchestrated a scheme that "exploit[s] and interfere[s]" with the Program. (*Id.* ¶ 8.) Working in tandem with insurance plans, the alleged scheme operates by (1) "circumventing statutory constraints on the level of copay costs that payors may require patients to pay for

---

[2]     The background facts and procedural history of this matter were recently set forth in my September 5, 2024 R&R, adopted by the District Court, and therefore, I fully incorporate them herein. For purposes of this R&R, I only recount necessary facts asserted in the Amended Complaint ("Am. Compl.") and reference the allegations in the Proposed Supplemented Amended Complaint ("PSAC").

pharmaceuticals"; (2) "inflating patients' copay costs in order to increase the funds extracted from JJHCS's copay assistance program and thereby reduce the portion of the drug cost that the payors otherwise would have to pay to the pharmacy"; (3) using the inflated copay cost to "coerce" patients to join in SaveOnSP's program (the "SaveOnSP program"), which allegedly violates the terms and conditions of CarePath; and (4) using such a program to extract inflated amounts of copay assistance funds. (*Id.* ¶¶ 3, 63.)

Plaintiff relies on an online video featuring a program presentation to a plan sponsor as evidence of Defendants' execution of the purported scheme. (*Id.* ¶ 76.) The representative "admit[ted] that the SaveOnSP Program works by designating drugs covered under the health plan as non-essential health benefits." (*Id.* (citing SaveOnSP IPBC Video, 5:30).) The representative went to say that this change of designation "prevents any money paid toward the drug from applying to the ACA's annual limit," (*id.* ¶ 76), and "the moment [SaveOnSP] reclassif[ies] these as non-essential we get to operate outside of those [ACA] rules, which removes the limitations for how high we set the copay . . . ," (*id.* ¶ 78). "[I]n order for us to capitalize on this copay assistance funding, *we have to have that inflated copay upfront to bill to copay assistance.*" (*Id.* ¶ 79.)

Plaintiff avers that ESI and SaveOnSP are in an exclusive partnership, governed by a Master Program Agreement. (*Id.* ¶ 63.) According to Plaintiff, this agreement provides that ESI promotes SaveOnSP's program to ESI's clients and it "operationalizes" that program by providing "set-up and support, member and claims support, program and benefit coordination, program invoicing and fee collections." (*Id.*) For these services, ESI allegedly charges health plans an administrative fee of the savings "extracted from

CarePath via the artificially inflated SaveOnSP copay amount." (*Id.* (citing SaveOnSP IPBC Video at 37:38).)

Accredo administers the insurance claims process for patients filling prescriptions for drugs, including the J&J drugs at issue. (*Id.* ¶ 66.) According to Plaintiff, by design, most patients enrolled in the SaveOnSP program must use Accredo as the pharmacy to fill their prescriptions for SaveOnSP-eligible medications. (*Id.* ¶ 67.) In that connection, Plaintiff alleges that when patients seek to fill a prescription, Accredo transfers those patients to SaveOnSP, ensuring the patients enroll in SaveOnSP and the pharmaceutical company's copay assistance program. (*Id.*) Accredo "*reject*[s] a patient's claim for their prescription medication at the point of sale in order to transfer them to SaveOnSP, even though that medication is covered by the patient's insurance," if a patient refuses to enroll in the SaveOnSP program. (*Id.* ¶ 88.) Accredo's rejection forces contact with SaveOnSP to accept or decline enrollment in order to fill SaveOnSP-elgibile prescriptions. (*Id.*) Defendants allegedly work in tandem with one another to execute the purported scheme, and to pad their own earnings. (*Id.* ¶¶ 69–74.)

As the amended pleading currently alleges, CarePath's terms and conditions provide, *inter alia*, that the Program may "not be used with any other coupon, discount, prescription savings card, free trial, or other offer." (*Id.* ¶¶ 23, 58.) Plaintiff claims that the described scheme "is expressly prohibited by the CarePath terms and condition." (*Id.* ¶ 23.) Further, to be eligible for CarePath the patients "must pay an out-of-pocket cost for [their] medication." (*Id.* ¶ 179.) Plaintiff further claims that patients contractually agree

to meet these requirements each time they utilize the financial assistance provided by CarePath. (*Id.* ¶ 58.)

## II.    Proposed Supplemental Language

Plaintiff moves to supplement its Amended Complaint with additional allegations. (*See generally* PSAC.) The proposed supplemental language is not extensive. Indeed, it spans approximately six paragraphs. (*Id.* ¶¶ 178–183.) The major additions primarily refer to CarePath's new terms and conditions, which were developed and released from April to August 2024 ("2024 Terms and Conditions").[3] (*Id.* ¶¶ 181–182.) While the current Amended Complaint states that the CarePath terms and conditions prohibit use "with any other . . . offer," (Am. Compl. ¶¶ 23, 58), the updated terms in the PSAC specifically prohibit SaveOnSP by name, (PSAC ¶ 181). For example, the terms and conditions for nine[4] drugs now state:

- If your insurance company or health plan partners with SaveOnSP, then except where prohibited by law, you will not be eligible for, and you agree not to use, [CarePath].

- If your health plan removes [the affected drug] from its partnership with SaveOnSP or other non-essential health benefit maximizer, you may be eligible to be reinstated in [CarePath].

---

[3]    Prior to Plaintiff's filing the instant motion, the parties communicated regarding the 2024 Terms and Conditions. (*See generally* Decl. of Meredith Nelson, Ex. 4.) Through this exchange, Defendants expressed that those Terms were irrelevant to the causes of action currently asserted in the Amended Complaint, but relevant to its mitigation defenses. (*Id.* at 1–2.) Plaintiff disagreed, positing that its Amended Complaint alleges ongoing harm in its tortious interference and GBL § 349 claims. (*Id.* at 2.)

[4]    The names of these drugs include: STELARA®, TREMFYA®, SIMPONI®, SIMPONI ARIA®, OPSUMIT®, TRACLEER®, UPTRAVI®, REMICADE®, RYBREVANT®, AKEEGA®, BALVERSA®, DARZALEX®, DARZALEX FASPRO®, and ERLEADA®.

- Notwithstanding any other term of this program, patients who are members of health plans that partner with SaveOnSP, or who are subject to services administered by SaveOnSP, are not eligible for [CarePath]. If your health plan removes [the affected drug] from its partnership with SaveOnSP, you may be eligible for [CarePath].

(*Id.* ¶ 182.) These additional terms and conditions have been publicly released for five[5] of the drugs since October 4, 2024. (*Id.*) Plaintiff "anticipates adding the above language across all of its copay assistance programs by early 2025." (*Id.*)

According to Plaintiff's proposed supplemental allegations, SaveOnSP has responded to these changes, now instructing "patients on certain drugs to call JJHCS and tell it that their plan has a benefit administered by SaveOnSP." (*Id.* ¶ 183.) Plaintiff maintains that SaveOnSP's response to the updated terms and conditions in this regard is SaveOnSP's way of directing its misconduct onto patients, because SaveOnSP anticipates patients will not call JJHCS. (*Id.*) Plaintiff alleges that despite SaveOnSP's instructions, SaveOnSP continues to "pilfer funds from CarePath's copay assistance programs" because it has failed to remove the J&J drugs off its list even with the new terms and conditions. (*Id.*) As a result, Plaintiff avers that SaveOnSP's conduct in violating the 2024 Terms and Conditions constitutes tortious interference. (*Id.*)

The proposed supplemented allegations are not limited to the 2024 Terms and Conditions—Plaintiff also seeks to supplement the Amended Complaint with allegations related to its 2021 terms and conditions for STELARA® and TREMFYA® ("2021 Terms

---

[5]    The names of these drugs include: AKEEGA®, BALVERSA®, DARZALEX®, DARZALEX FASPRO®, and ERLEADA®.

and Conditions"). (*Id.* ¶ 179.) Specifically, Plaintiff seeks to add that the 2021 Terms and Conditions which required "out-of-pocket costs" for eligibility for CarePath, **"precluded patients enrolled in SaveOnSP from receiving CarePath funds, because SaveOnSP promises that patients enrolled in its program 'won't pay anything ($0) out of pocket.'"** (*Id.* (emphasis added to demonstrate proposed language).) Plaintiff also seeks to include changes to SaveOnSP's marketing material for the purpose of "avoid[ing] enforcement of the CarePath condition that patients 'must pay an out-of-pocket cost' for their medication." (*Id.* ¶ 180.) Specifically, Plaintiff now alleges that SaveOnSP removed any $0 out-of-pocket promises and replaced those with "reduced" or "lower" member costs. (*Id.*) Despite this change in marketing, Plaintiff alleges that the program remained functionally the same and violated the 2021 Terms and Conditions. (*Id.*)

## III.    Procedural History

In May 2022, Plaintiff filed suit against SaveOnSP. In January 2023, the Court denied SaveOnSP's motion to dismiss, finding that Plaintiff had sufficiently alleged its tortious interference and deceptive business practices claims. *See generally Johnson & Johnson Health Care Sys. v. Save on SP, LLC*, No. 22-2632, 2023 U.S. Dist. LEXIS 12619, at *1 (D.N.J. Jan. 25, 2023). During the pendency of that motion, the Court permitted discovery to proceed, and it has been ongoing. In addition, the Court entered a Pre-Trial Scheduling Order ("PTSO") [ECF No. 177], which set a deadline of March 14, 2024, for Plaintiff to file any motion for leave to amend. Plaintiff filed a motion to amend prior to the deadline in the PTSO, seeking to add then non-parties, Accredo and ESI as defendants under Fed. R.

Civ. P. 21, and to add a civil conspiracy claim against all defendants, including SaveOnSP, pursuant to Fed. R. Civ. P. 15(a).

On September 5, 2024, I recommended to the Court to grant Plaintiff's motion to amend after conducting a comprehensive Rule 15(a) analysis via an R&R, which the District Court adopted in full. (*See generally* ECF No. 394.) Accordingly, on October 2, 2024, Plaintiff filed its Amended Complaint which: (1) asserts a claim of tortious interference with contract and a claim of conspiracy to tortiously interference with contract against all Defendants; (2) asserts one claim of aiding and abetting tortious interference with contract against ESI and Accredo; and (3) asserts one claim of deceptive trade practices under the New York General Business Law ("GBL") § 349 against SaveOnSP. (ECF No. 395.)

On October 7, 2024, Plaintiff filed the instant motion to supplement its amended pleadings. (ECF No. 403.) Plaintiff seeks to add approximately six new paragraphs to its Amended Complaint under Rule 15(d). (*See generally* ECF No. 404; ECF No. 457.) Defendants oppose, contending, *inter alia*, that Plaintiff's motion to supplement in actuality is an untimely motion to amend, and therefore should be denied under Rule 16. (*See generally* ECF No. 431.)

## DISCUSSION

## I.    Standard of Review

Under Fed. R. Civ. P. 15(d) the Court may allow "a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Although the Rule does not explicitly state that leave

must be "freely give[n]," like that of Rule 15(a), "courts have construed Rule 15(d) to require such a liberal approach." *See Tormasi v. Hayman*, No. 09-2330, 2010 U.S. Dist. LEXIS 45922, at *5 (D.N.J. May 7, 2010). Accordingly, courts evaluate motions to supplement under a similar standard of 15(a), and therefore may deny a motion to supplement where there is undue delay, bad faith, dilatory motive, or futility. *See Vares-Ebert v. Twp. of Hamilton*, No. 15-7331, 2020 U.S. Dist. LEXIS 33378, at *4–5 (D.N.J. Feb. 27, 2020). A motion to supplement may also be denied where supplementation "would raise new issues and unduly delay resolution of the case." *See Albanian Assoc. Fund v. Twp. of Wayne*, No. 06-cv-3217, 2007 U.S. Dist. LEXIS 87666, at *4–5 (D.N.J. Nov. 29, 2007). While a motion to supplement may permissibly seek to add new claims, the claims must have a factual or legal connection to the complaint. *See Yah'Torah v. Emrich*, No. 20-5533, 2021 U.S. Dist. LEXIS 95906, at *8 (D.N.J. May 20, 2021). Whether to grant a party's request to supplement its pleading is within the sound discretion of the court. *See Gilliam v. Cavallaro*, No. 21-16844, 2024 U.S. Dist. LEXIS 73517, at *5 (D.N.J. Apr. 22, 2024).

"The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed." *Planker v. Christie*, No. 13-4464, 2018 U.S. Dist. LEXIS 166259, at *7 (D.N.J. Sept. 27, 2018) (quotations and citations omitted). This in turn promotes judicial efficiency and conservation of the court's resources. *See Tormasi*, 2010 U.S. LEXIS 45922, at *5 ("Rule 15(d) serves many important purposes. It promotes judicial economy, avoids multiplicity of litigation, and promotes as complete an adjudication of

the dispute between the parties as possible . . . ." (internal quotations and citations omitted)).

## II.    Whether Plaintiff's Motion to Supplement Must First Satisfy Rule 16

As an initial matter, the parties dispute whether Plaintiff must meet the good cause standard under Rule 16 since it filed this motion after the deadline to amend (*i.e.*, March 14, 2024) had elapsed in the PTSO. Plaintiff filed its Amended Complaint on October 2, 2024. (ECF No. 395.) It then moved to supplement that Complaint on October 7, 2024, with factual allegations that occurred between April 2024 and August 2024, and in 2021. (*See generally* PSAC ¶¶ 179–183.)

### A.    Parties' Arguments

Plaintiff contends that I should apply Rule 15(d), arguing that its motion is timely because the PTSO does not have a deadline for motions to supplement. (ECF No. 404, at 13.) Plaintiff cites to a number of cases, none within this District, which support its position that the deadline to amend pleadings in a scheduling order does not typically apply to motions to supplement under Rule 15(d). (*Id.* at 13–14.) Plaintiff further contends that Rule 16 does not govern its motion, because Plaintiff's proposed additions relate to developments in this matter that occurred in March 2024, after it moved to amend and filed its proposed amended complaint. (ECF No. 457.) According to Plaintiff, its motion effectively paused the pleading it now seeks to supplement. (*Id.* at 12.)

In response, Defendant argues that the timeliness of Plaintiff's Rule 15(d) motion must be analyzed under Rule 16's "good cause" standard, because Plaintiff seeks to add claims which occurred before it filed the Amended Complaint on October 2, 2024, and

-10-

after the deadline to amend had long passed. (ECF No. 431, at 10.) Stated another way, Defendant maintains that Plaintiff's motion is in actuality a motion to amend disguised as a motion to supplement, and therefore, should be governed by the deadlines to amend set forth in the PTSO. (*Id.*) Defendants also highlight that Plaintiff's new allegations regarding the 2021[6] Terms and Conditions for STELARA® and TREMFYA® occurred three years before Plaintiff filed the Amended Complaint and could have been alleged in its initial Complaint. (*Id.* at 18.) Thus, the timeliness of that portion of Plaintiff's motion should also meet the good cause standard under Rule 16. (*Id.*)

## B.    Application

I agree with Defendants that Plaintiff is required to first satisfy Rule 16's requirement of "good cause" before amending, since the time to amend under the PTSO has passed. Rule 15(d) states that the Court may allow "a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened *after the date of the pleading to be supplemented.*" (emphasis added). In that regard, in order for Plaintiff to be excused from meeting the Rule 16 requirement, its motion to supplement "must therefore have alleged facts that occurred after . . . the date that [the] . . . amended

---

[6]    Because the PSCA refers to these as the 2021 terms and conditions, (PSAC ¶ 179), I refer to them as such. I note, however, that Defendants and Plaintiff refer to these as the 2022 Stelara & Tremfya terms and conditions in their submissions before me. (ECF No. 431 at 17; ECF No. 457 at 14.)

complaint was deemed filed." *Turner v. N.J. State Police*, No. 08-cv-5163, 2015 U.S. Dist. LEXIS 52682, at *18–19 (D.N.J. Apr. 22, 2015).[7]

Here, the operative pleading Plaintiff seeks to supplement is its Amended Complaint filed on October 2, 2024, but with allegations that occurred in 2021, and throughout April and August 2024; these proposed averments clearly predate the filing of its Amended Complaint. Plaintiff argues that for the purposes of supplementation, the relevant date is March 14, 2025—the date when Plaintiff moved to amend its Complaint—because it was not permitted to make more tweaks to the proposed amended complaint while its motion to amend was pending before the Court. However, Plaintiff could have sought guidance from me if it had intended to supplement its proposed amended complaint at that time. Logistics aside, Plaintiff's argument is not supported by the case law; in fact, it is contrary to the express language of Rule 15(d). In short, Plaintiff cannot proceed under Rule 15(d) when its proposed supplemental allegations predate the

---

[7]    I do not find Plaintiff's case law helpful in arguing that Rule 16 does not apply here. Plaintiff's cited cases are not factually similar to the present matter. For instance, in *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.* No. 13-883, 2020 U.S. Dist. LEXIS 188384, at *10, (C.D. Cal. July 8, 2020), the claims the plaintiff sought to add were based on facts that occurred *after* the complaint was filed. Similarly, in *Beckett v. Inc. Vill. of Freeport*, 2014 U.S. Dist. LEXIS 45605, at *23 (E.D.N.Y. Mar. 31, 2014), the plaintiff sought leave to supplement the complaint with facts that arose *after* filing of the second amended complaint. Moreover, Plaintiff's reliance on *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1186 (10th Cir. 2015) and *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 35 (S.D.N.Y. 2016), is misplaced. In both cases, although the courts noted that motions to supplement are not subject to the amendment deadlines set in a pretrial scheduling order, the plaintiffs were not trying to include new allegations or claims based on facts that occurred before filing of an amended pleading.

Amended Complaint, and as such, Plaintiff must instead meet the requirements of Rules 16 and 15(a).

## III.    Good Cause under Rule 16(b)(4)

When a party fails to seek leave to amend prior to the deadline set forth in a scheduling order, that party's application must satisfy the requirements of both Rule 15 and Rule 16(b)(4). "In these situations, the Court must conduct a threshold 'good cause' inquiry under Rule 16 because scheduling orders would otherwise 'be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling deadlines have expired.'" *See Santa Lucia v. McClain & Co.*, 2013 U.S. Dist. LEXIS 120591, at *18 (D.N.J. Aug. 23, 2013) (quoting *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990)).

To demonstrate good cause, a movant must establish that despite his or her attentiveness "the deadlines set forth in the scheduling order could not reasonably be met." *Korrow v. Aaron's, Inc.*, 300 F.R.D. 215, 220 (D.N.J. 2014). In addition, "good cause may be satisfied if the movant shows that their delay in filing the motion to amend stemmed from 'any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order.'" *Fermin v. Toyota Material Handling, U.S.A., Inc.*, No. 10-3755, 2012 U.S. Dist. LEXIS 56422, at *7 (D.N.J. Apr. 23, 2012) (internal quotations omitted). "[A] party is presumptively not diligent if, at the commencement of the lawsuit, the party knows or is in possession of information that is the basis for that party's later motion to amend." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 702 (E.D. Pa. 2007); *see also Kennedy*

*v. City of Newark*, No. 10-1405, 2011 U.S. Dist. LEXIS 73058, at *4 (D.N.J. July 7, 2011) ("The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed.").

### A.    Parties' Arguments

Plaintiff argues that no amount of diligence could have permitted it to meet the deadline set forth in the PTSO. According to Plaintiff, SaveOnSP did not disclose how the company responded to the 2024 Terms and Conditions until August 2024, when it served its supplemental interrogatory responses. (ECF No. 457 at 13.) Following the disclosure, the parties engaged in further meet-and-conferrals regarding the relevance of the new terms and conditions, which Plaintiff maintains further impeded its ability to meet any deadline in the PTSO. (*Id.*) Plaintiff claims it could have only filed its motion to supplement after fully understanding Defendants' position—that the new terms and conditions are not relevant to the current claims, only to Defendants' mitigation defenses. (*Id.* at 14.) When it fully grasped Defendants' stance, Plaintiff posits that it acted diligently in filing its motion to supplement. (*Id.*)

On the other hand, Defendants argue that Plaintiff has not established good cause for the delay in filing its motion. They contend that Plaintiff had "all the information necessary to bring its new claims" for several months, because the 2024 Terms and Conditions were issued between April and August 2024. (ECF No. 431 at 11.) Instead of formally moving to amend before the deadline, Defendants claim that Plaintiff purposefully waited. (*Id.* at 12.) Furthermore, Defendants argue that Plaintiff's inclusion of supplemental allegations regarding the 2021 Terms and Conditions lacks diligence,

because Plaintiff was certainly aware of those facts years prior to filing the current motion. Specifically, Defendants argue that the proposed allegation—that patients must pay "out-of-pocket costs" to be eligible for CarePath, thereby precluding patients enrolled in SaveOnSP from receiving CarePath funds because SaveOnSP promises that patients in its program "won't pay anything ($0) out of pocket"—could have been included in the initial pleading, as these terms were implemented in 2021. (PSAC ¶ 179.) Additionally, Defendants contend that the information in Plaintiff's allegations regarding SaveOnSP's marketing response to the 2021 Terms and Conditions was available through discovery produced before the motion to amend deadline in the PTSO. (ECF No. 431 at 11.) Therefore, they submit, Plaintiff is improperly attempting to "slip in additional allegations" that were not included in its prior Motion to Amend. (*Id.* at 3.)

**B.    Application**

Because Plaintiff seeks to supplement two different sets of allegations that occurred in 2021 and 2024, I analyze those allegations separately. First, I find that Plaintiff has demonstrated good cause under Rule 16 to amend the deadline in the PTSO for its allegations related to the 2024 Terms and Conditions. (PSAC ¶¶ 181–183.) Indeed, those proposed allegations relate to conduct which occurred following the deadline to move to amend, namely the development and release of the 2024 terms. Therefore, it would not have been possible for Plaintiff to move prior to the March 14, 2024 deadline to incorporate these allegations. *See Fermin*, 2012 U.S. Dist. LEXIS 56422, at *18 (finding that Rule 16 allows that "information obtained after a deadline to amend can constitute good cause").

Further, I am not convinced that when Plaintiff's then-motion to amend was pending before me, Plaintiff could have sought to include its proposed 2024 supplemental allegations. Indeed, during that time, the parties met and conferred several times on the relevance of the new terms and conditions, and it was not until October 2024 that SaveOnSP fully expressed its position on those terms. Although SaveOnSP argues that it had informed Plaintiff months ago that these terms are not relevant, I have reviewed the parties' submissions on their meet and conferrals, and I am satisfied that Plaintiff required the information contained in SaveOnSP's interrogatory responses to Plaintiff's Fourth Set of Interrogatories, in which Plaintiff asked SaveOnSP its position regarding the 2024 Terms and Conditions. After these responses were provided in late July 2024, the parties conferred further on their respective positions, which culminated in the filing of this motion to supplement.[8]

While it might have been preferable for Plaintiff to inform me about the possibility of supplementation based on the 2024 Terms and Conditions while the motion to amend was pending—contrary to Defendants' suggestion—Plaintiff is not obligated under the Federal Rules to file its Amended Complaint simultaneously with its motion to supplement or at any time before Plaintiff had sufficient information to do so, even if the motion to amend was pending. Given the facts presented before me, I cannot find that

---

[8]    I note that, for the reasons set forth *infra*, the allegations concerning the 2024 Terms and Conditions constitute new claims—as Defendants contend—which require Plaintiff to separately demonstrate futility under Rule 15(a). Hence, SaveOnSP's interrogatory responses are critical to Plaintiff's ability to assert its new tortious interference claims against Defendants based on these updated Terms and Conditions.

Plaintiff's actions represent a lack of diligence in moving to add these new allegations in early October 2024. *Korrow*, 300 F.R.D. at 220 ("A determination of 'good cause' under Rule 16 depends on the diligence of the moving party."). Accordingly, with respect to the allegations related to the 2024 Terms and Conditions (*i.e.*, PSAC ¶¶ 181-183) I find that Plaintiff has satisfied Fed. R. Civ. P. 16(b).

The allegations concerning the 2021 Terms and Conditions stand on a different footing. (*See* PSAC ¶¶ 179–180.)[9] I find that Plaintiff lacks good cause to amend these two paragraphs. The original paragraphs 179 and 180 pertain to the 2021 Terms and Conditions for STELARA® and TREMFYA®. Paragraph 179 specifically states that, as set forth in the 2021 Terms and Conditions, to be eligible for CarePath, "[patient] . . . must pay an out-of-pocket cost for your medication." The supplemental language then alleges that this term precludes patients in the SaveOnSP program from receiving CarePath funds (*Id.* ¶ 179). Similarly, paragraph 180 currently claims that SaveOnSP induces patients to enroll in its program while those same patients are receiving CarePath funds. The additional language in the PSAC alleges that SaveOnSP has modified its marketing materials in an attempt to circumvent the 2021 Terms and Conditions (*Id.* ¶ 180).

I conclude that Plaintiff had sufficient information to amend these two paragraphs at least prior to filing its motion to amend in March 2024, and thus, to do so now does not

---

[9]    I recommend that Plaintiff be permitted to supplement paragraph 178 because the revised language simply removes the hyperlinks for STELARA® and TREMFYA® terms and conditions, while the PSAC attaches those terms as exhibits. Indeed, referencing these exhibits is far more efficient for the Court than navigating to a website via a hyperlink.

amount to good cause. Indeed, there is no dispute that the 2021 Terms and Conditions were implemented years before the motion to amend was filed. Importantly, Plaintiff does not argue that the additional information alleged in these paragraphs was revealed by discovery after the filing of the motion to amend. In fact, Plaintiff explains in its Reply Brief that the proposed language of paragraph 180 does not allege any new claims, but rather supplements, and provides context for, the allegations regarding the 2024 Terms and Conditions.

Plaintiff's explanation is unpersuasive. Although the proposed supplemental language is brief, it introduces substantive allegations. For the first time, Plaintiff alleges that SaveOnSP materially altered its marketing materials by omitting its "$0 out-of-pocket promise" and instead describing its offering as involving a "reduced" or "lower" member cost. However, Plaintiff claims that in actuality, SaveOnSP did not alter the underlying functioning of its program—patients continued to incur no out-of-pocket expense, in violation of the CarePath terms and conditions (*Id.* ¶ 180). This allegation does not merely add context to the new claims regarding SaveOnSP's interference with the 2024 Terms and Conditions, but it also seeks to amend the current tortious interference claim by introducing additional alleged misconduct by SaveOnSP—misconduct of which Plaintiff had long been aware. On that basis, Plaintiff has failed to demonstrate good cause, and I recommend that Plaintiff's motion to supplement paragraphs 179 and 180 be denied.[10]

---

[10]    I acknowledge that paragraph 179 adds only a conclusory statement regarding how Defendant's conduct interfered with 2021 Terms and Condition with respect to

## IV.    Rule 15(a) Factors

Having determined that Plaintiff has satisfied good cause under Rule 16 with respect to supplementing paragraphs 181-183, I turn to my analysis of the proposed supplemental amendments under Rule 15(d), which requires the same elements as Rule 15(a). *Vares-Ebert*, 2020 U.S. Dist. LEXIS 33378, at *4–5. The Third Circuit has advised of "three instances when a court typically may exercise its discretion to deny a Rule 15(a) motion for leave to amend: when '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016). I turn to those elements, below

### A.    Undue Delay

Undue delay focuses on whether the party seeking leave has inexplicably failed to take advantage of previous opportunities to amend, resulting in unfair burdens to the court and the opposing party. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2005). "The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay." *Cureton v. Nat'l Collegiate Ath. Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). In other words, delay becomes undue "when it places an unwarranted burden on the

---

Plaintiff's tortious interference claim. Nevertheless, because I find Plaintiff lacks good cause to amend, I cannot recommend that Plaintiff do so at this time. My recommendation in this regard, however, does not address whether Plaintiff may later introduce the alleged facts in the proposed supplemental paragraphs 179 and 180 for evidentiary purposes. Under Rule 8 notice pleading, evidence uncovered during discovery need not be included in the complaint in order to be introduced at trial or on a dispositive motion.

court or when the plaintiff has had previous opportunities to amend." *Bjorgung*, 550 F.3d at 266 (citing *Cureton*, 252 F.3d at 273). In making this determination, the court "focus[es] on the movant's reasons for not amending sooner," *Cureton*, 252 F.3d at 273, and balances "these reasons against the burden of delay on the District Court." *Bjorgung*, 550 F.3d at 266 (citing *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 520 (3d Cir. 1988)); *Le v. City of Wilmington*, No. 08-615, 2010 U.S. Dist. LEXIS 69038, at *6 (D. Del. July 12, 2010) ("In evaluating whether a party's delay is undue, the Court must focus on the movant's reasons for not amending its pleading earlier."). In that regard, the Third Circuit places an importance on a movant articulating a "colorable excuse" for the delay. *See Arthur*, 434 F.3d at 205 n.11 (citing *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) (internal quotation marks omitted)).

In this matter, the reasons advanced in support of good cause substantially align with my analysis of undue delay. Because the allegations set forth in paragraphs 181–183 relate to facts or conduct uncovered during discovery after the deadline for amending pleadings had passed, Plaintiff appropriately sought to supplement those allegations pursuant to Rule 15(d). Moreover, as previously stated, Plaintiff did not unduly delay in filing the present motion, given that Plaintiff was engaged in discussions with SaveOnSP in order to determine whether filing this very motion was necessary. Although Plaintiff might have been able to seek supplementation earlier, I find that the brief delay imposed no significant burden on the Court or Defendants.

### B.    Prejudice and Judicial Economy

Even if I were to find that Plaintiff's motion was delayed, delay alone cannot justify denying a motion to amend. *See Cureton,* 252 F.3d at 273. Rather, it is only where delay becomes prejudicial, which places "an unfair burden on the opposing party" that denial of a motion to amend is appropriate. *Adams*, 739 F.2d at 868. Accordingly, in deciding whether to grant leave to amend, "'prejudice to the non-moving party is the touchstone for the denial of the amendment.'" *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).

To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

In my view, no prejudice exists, for reasons similar to those set forth in my September 5, 2024 R&R that resolved Plaintiff's previous motion to amend. At this juncture, written discovery remains ongoing—with only a limited number of depositions taken—and expert discovery and substantive motion practice have yet to commence. Thus, supplementing the allegations will not materially affect the ultimate resolution of this case. Indeed, the recent filing of more than five discovery motions underscores that this matter is far from adjudication on its merits.

Moreover, it is unlikely that permitting these supplemental allegations will impose substantial additional discovery costs on Defendants, especially given that the parties are actively exchanging discovery related to the 2024 Terms and Conditions. Finally, Plaintiff's proposed allegations do not fundamentally alter the legal theories at issue; the new claims remain focused on Defendants' purported tortious interference with the conditions of CarePath's contract. *See Holmes v. Christie*, 2024 U.S. Dist. LEXIS 199747, at *16 (D.N.J. Nov. 4, 2024) (finding prejudice where the plaintiff's proposed amendments would change the causes of action entirely"). Accordingly, I find that Defendants will not suffer prejudice.

Furthermore, judicial economy is better served by permitting Plaintiff to supplement its pleadings because the Court can deal with the entire dispute at once, rather than in piecemeal fashion. *Glenside W. Corp. v. Exxon Co., U.S.A.*, 761 F. Supp. 1118, 1134 (D.N.J. Apr. 8, 1991). Excluding the proposed allegations regarding Defendants' response to the 2024 Terms and Conditions would compel Plaintiff to initiate a separate action to address that misconduct—a prospect that I find both inefficient and contrary to the interests of judicial economy.

### C.    Futility

The futility of amendment is one of the factors that must be considered by the Court in denying a motion to amend. *Fed. Deposit Ins. Corp. v. Bathgate*, 27 F.3d 850, 874 (3d Cir. 1994); *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1203 (3d Cir. 1989). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). In assessing futility, a district

court must apply the same standard of legal sufficiency that applies under Fed. R. Civ. P. 12(b)(6). *Id.* (citation omitted).

The main issue here is the propriety of Plaintiff's allegations concerning the 2024 Terms and Conditions, which ultimately hinges on whether their inclusion would be futile. Initially, I address Plaintiff's description of the supplemental pleadings it seeks to incorporate into its Amended Complaint. Plaintiff contends that considerations of futility on its motion to supplement should be unnecessary and that its proposed changes are modest and clearly integrated into the existing pleading. I disagree. While there is some connection between the new allegations and the existing claims—specifically, they concern Defendants' alleged scheme to misappropriate funds from the CarePath Program—these new allegations also raise new claims. Up until the issuance of the 2024 Terms and Conditions, the interpretation of "other offer" within the CarePath contract has been a subject of significant dispute between the parties. The parties have been engaged in discovery over this precise issue—whether patients enrolled in SaveOnSP plans are not eligible for CarePath funds because that would violate the "other offer" provision of the CarePath contract. In amending the contract during the pendency of this litigation to expressly bar CarePath assistance to patients enrolled in SaveOnSP plans, Plaintiff's proposed supplemental allegations addressing that change can be read as substantively defining the potentially ambiguous term "other offer." In effect, Plaintiff is not merely alleging that Defendants' unlawful conduct *continues* under the latest

version of CarePath's terms and conditions; rather, Plaintiff seeks to introduce new explicit terms and conditions into its Amended Complaint.[11]

As previously explained in my R&R and consistent with Plaintiff's position in its motion to amend, each alleged instance of tortious interference occurs when Defendants interfere with an individual patient's CarePath agreement. Each such agreement is a distinct contract. In other words, the CarePath agreements incorporating the 2024 Terms and Conditions are separate from the contracts set forth in Plaintiff's Amended Complaint, which do not include these new terms. Consequently, because Plaintiff contends in its PSAC that Defendants are interfering with these new terms, Plaintiff is effectively introducing new causes of action rather than merely supplementing existing ones.[12] Hence, Plaintiff must now demonstrate that these new claims meet the Rule 12(b)(6) pleading standard.

---

[11]    Having found that Plaintiff's allegations regarding the 2024 Terms and Conditions amount to new claims, rather than supplementing existing claims, any future claims or factual allegations based on forthcoming updates to CarePath's terms and conditions—yet to be implemented—must be added separately by way of a motion.

[12]    Plaintiff's reliance on *Blizzard Entertainment v. Ceiling Fan Software*, 28 F. Supp. 3d 1006 (C.D. Cal. 2013), is misplaced. In that case, both parties moved for summary judgment regarding claims for tortious interference of contracts which prohibited the use of specific software programs. *Id.* at 1010. The contracts at issue contained a provision which prohibited players from using "cheats, automation software (bots), hacks, mods, or any other unauthorized third-party software designed to modify the World of Warcraft experience." *Id.* However, when evaluating whether continuing actions demonstrated tortious interference of the contracts, the various versions of the contracts contained this same provision. *Id.* at 1011 n.4. The same cannot be said here as Plaintiff seeks to add the 2024 Terms and Conditions of several drugs which were not previously part of the CarePath agreement as alleged in the Amended Complaint, and furthermore, given the hotly contested issue of whether "other offer" always includes SaveOnSP plans,

To adequately assert a claim of tortious interference with a contract, a plaintiff must allege "(1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference." *DiGiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 558 (D.N.J. 2002) (citing *Printing Mart-Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 37 (1989)).

On the issue of futility, Defendants argue that Plaintiff does not adequately allege that SaveOnSP (i) induced patients to breach the 2024 Terms and Conditions; and (ii) intentionally and maliciously interfered with those terms. Defendants also argue that Plaintiff fails to allege damages. Plaintiff does not substantively respond to these arguments, except to say that its tortious interference claims have already survived Rule 12(b)(6) scrutiny. While the Court's decision on SaveOnSP's prior motion to dismiss must certainly guide the futility analysis, the Court, however, did not consider the merits of these new claims based on the 2024 Terms and Conditions, which were not in existence at that time. Accordingly, Plaintiff must address Defendant's merit-based arguments before I can make the appropriate recommendation to the Court on futility.

In the interest of fairness, I will permit Plaintiff to submit a supplemental brief only on the futility of its new claims, consistent with this R&R, by March 3, 2025. Defendant may respond by March 10, 2025. The briefs must not exceed 8 pages in length, and they

---

it cannot be decided on this motion whether these 2024 Terms and Conditions are in fact new terms that are separate and apart from the term "other offer."

must be formatted according to the Local Civil Rules. The parties are advised to only address the issue of futility.[13]

I will defer my final recommendation on paragraphs 181-183 pending the conclusion of the parties' supplemental briefing.

DATED: February 24, 2025                         */s/ Freda L. Wolfson*
                                                 Hon. Freda L. Wolfson (ret.)
                                                 Special Master

---

[13]    Defendants make various arguments regarding standing, the continuing violation doctrine, and judicial estoppel. I decline to address these arguments in this R&R and will do so, if necessary, following supplemental briefing.