UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVEONSP, LLC, *et al.*, <br><br> Defendants. | Civil Action No.: 22-2632 (JKS)(CLW) <br><br> **SPECIAL MASTER <br> REPORT AND RECOMMENDATION** |

**WOLFSON, Special Master:**

This Report and Recommendation ("R&R") follows my previous R&R dated February 24, 2025, in which I directed the parties to submit supplemental briefing[1] regarding Plaintiff Johnson & Johnson Healthcare Systems' ("Plaintiff" or "JJHCS") motion to supplement its Amended Complaint. Specifically, I requested further briefing on the issue of futility concerning Plaintiff's proposed new tort claims—tortious interference and unfair business practices under New York's General Business Law

---

[1] I limited the parties' briefs to no more than eight pages, with formatting in compliance with the Local Civil Rules. After the submission from SaveOnSP, LLC ("SaveOnSP"), Accredo Health Group, Inc. ("Accredo"), and Express Scripts, Inc. ("ESI") (collectively, "Defendants"), Plaintiff informed me that Defendants' supplemental brief fails to comply with L. Civ. R. 7.2(d) and that Defendants did not timely raise the futility of Plaintiff's Section 349 claim, thereby waiving that argument. Upon review, Defendants' brief does not comply with the Rules. If Defendants require additional pages beyond the stated limitation, they must seek leave. Nevertheless, because I prefer to consider the issues on their full merits and to avoid further delays, I will permit Defendants' submission in this instance. However, Defendants must adhere to my instructions going forward.

("GBL")—as asserted in the Proposed Supplemented Amended Complaint ("PSAC").[2] For the reasons set forth below, I find that Plaintiff's new claims are not futile. Accordingly, I recommend that Plaintiff's motion to supplement the Amended Complaint be granted and that Plaintiff be directed to file a Second Amended Complaint immediately upon adoption of this R&R by the Court.

I will not restate the facts already outlined in detail in my prior R&R. Briefly, in its motion to supplement, Plaintiff seeks to add paragraphs 178–183, arguing that they merely describe additional conduct by Defendants in support of its existing claims. While I recommended the inclusion of paragraph 178, I did not recommend adding paragraphs 179–180 due to Plaintiff's undue delay. As for paragraphs 181–183, I found—contrary to Plaintiff's assertion—that these allegations introduce new claims, as they reference additional contract terms and new conduct by Defendants that allegedly interfere with those terms. As such, I concluded, *inter alia*, they were not barred by undue delay/ However, because Plaintiff did not substantively address the futility requirement under Rule 15(a), I directed supplemental briefing on the issue.[3]

---

[2] In my previous R&R, despite arguments to the contrary from Defendants, I found—and recommended—that Plaintiff met its burden to show good cause under Fed. R. Civ. P. 16, as well as the undue delay and prejudice factors under Rule 15(a). The only remaining issue is whether Plaintiff has satisfied the futility requirement.

[3] It does not appear that Defendants challenge the inclusion of ¶ 178.

I. **Futility of Plaintiff's Newly Proposed Tortious Interference Claim**

As I set forth in my previous R&R, and they are worth repeating here, paragraphs 181-183 allege the following:

> 181. Beginning in April 2024, JJHCS developed and released additional CarePath terms that further confirm what has always been the case: CarePath cannot be used in conjunction with SaveOnSP's program or services. While previous iterations of the terms prohibited the SaveOnSP Program by reference to its characteristics (e.g., it is an "other offer," pursuant to which patients do not "pay an out-of-pocket cost" for their medication), the 2024 iteration of the CarePath terms also prohibits SaveOnSP by name.
>
> 182. The 2024 iteration of the CarePath terms and conditions [("2024 Terms and Conditions")] for STELARA®, TREMFYA®, SIMPONI®, SIMPONI ARIA®, OPSUMIT®, TRACLEER®, UPTRAVI®, REMICADE®, RYBREVANT®, AKEEGA®, BALVERSA®, DARZALEX®, DARZALEX FASPRO®, and ERLEADA® states that:
>
> - "If your insurance company or health plan partners with SaveOnSP, then except where prohibited by law, you will not be eligible for, and you agree not to use, [CarePath]."
>
> - "If your health plan removes [the affected drug] from its partnership with SaveOnSP or other non-essential health benefit maximizer, you may be eligible to be reinstated in [CarePath]."
>
> - "Notwithstanding any other term of this program, patients who are members of health plans that partner with SaveOnSP, or who are subject to services administered by SaveOnSP, are not eligible for [CarePath]. If your health plan removes [the affected drug] from its partnership with SaveOnSP, you may be eligible for [CarePath]."
>
> JJHCS also added language that "[CarePath] is designed solely for the benefit of the patient." For five of these drugs—AKEEGA®, BALVERSA®, DARZALEX®, DARZALEX FASPRO®, and ERLEADA®—these additional terms were publicly released on October 4, 2024. JJHCS anticipates adding the above language across all of its copay assistance programs by early 2025.

>       183. SaveOnSP claims that it has instructed patients on certain drugs to now call JJHCS and tell it that their plan has a benefit administered by SaveOnSP. Upon information and belief, SaveOnSP has done so in an attempt to foist responsibility for its misconduct onto patients, while anticipating that few patients will take any action in response. But SaveOnSP has not taken Janssen's drugs off its list, and thus continues to pilfer funds from CarePath's copay assistance programs in violation of CarePath's terms and conditions despite knowing that those terms and conditions now expressly prohibit CarePath patients from being enrolled in SaveOnSP by name. JJHCS has no reason to believe SaveOnSP will stop misappropriating JJHCS's copay assistance, including through tortious interference with CarePath's terms and conditions (both the current iteration and any future updates).

(PSAC ¶¶ 180-183 (citations omitted).)

To adequately assert a claim of tortious interference with a contract, a plaintiff must allege "(1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference." *DiGiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 558 (D.N.J. 2002) (citing *Printing Mart-Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 37 (1989)).

A.   *Interference*

Defendants dispute the sufficiency of Plaintiff's allegations regarding interference, malicious and intentional conduct, and damages. With respect to interference, Defendants argue that Plaintiff has failed to sufficiently allege this element because Plaintiff itself asserts that SaveOnSP "has instructed patients on certain drugs to now call JJHCS and tell it that their plan has a benefit administered by SaveOnSP." (PSAC ¶ 183.) In other words, Defendants contend that if Plaintiff alleges SaveOnSP is instructing patients to inform JJHCS that their plan includes a benefit administered by SaveOnSP,

then SaveOnSP is actively ensuring patient compliance with the 2024 Terms and Conditions, rather than inducing a violation. Defendant further submits that if a patient calls Plaintiff and discloses that he/she is on a SaveOnSP-advised plan, then that patient complies with the 2024 Terms and Conditions. I disagree.

While Defendant's argument has some facial appeal regarding the proposed allegations in the PSAC, I must consider all allegations in the PSAC in *toto* to determine whether Plaintiff has sufficiently alleged the elements of tortious interference. *See Braden v. Wal – Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (when considering a motion to dismiss, the plaintiff's complaint must be read as a whole, rather than "parsed piece by piece to determine whether each allegation, in isolation, is plausible"); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 289 (5th Cir. 2004) ("[w]hen considering a motion to dismiss . . . the court must "view[ ] the complaint as a whole, rather than any one statement in isolation"); *Touristic Enters. Co. v. Trane, Inc.*, No. 09-02732 (SRC), 2009 U.S. Dist. LEXIS 106145, at *4 (D.N.J. Nov. 13, 2009) ("The Court must consider the Complaint in its entirety and review the allegations as a whole and in context.").

When Plaintiff's proposed allegations are viewed in the context of the existing allegations, I find that Plaintiff has adequately alleged interference. At the outset, I must take into account the Court's reasoning in its prior dismissal opinion, which guides my analysis. In that opinion, the Court determined that, with respect to Plaintiff's current tortious interference claim, the first element is satisfied. Specifically, the Court found that once patients enroll in CarePath, they agree under CarePath's terms and conditions "not to participate in another offer each time they utilize the co-pay assistance program."

*Johnson & Johnson Health Care Sys. v. Save on SP, LLC,* No. 22-2632, 2023 U.S. Dist. LEXIS 12619, at *22 (D.N.J. Jan. 25, 2023). The Court further found that Defendant intentionally causes those patients to breach their contract with Plaintiff each time they use CarePath funds while enrolled in the SaveOnSP Program. *Id.*

With respect to the 2024 Terms and Conditions, Plaintiff's central theory of interference remains intact despite SaveOnSP allegedly directing patients to call Plaintiff and self-report their enrollment in a SaveOnSP-advised plan. As Defendants acknowledge, Plaintiff sufficiently alleges interference if Defendants "induc[e] a breach of the 2024 T&Cs by wrongful means . . .." (Defs. Supp. Br. 5.) Indeed, Plaintiff alleges that SaveOnSP, despite knowing that Plaintiff's patients would violate the 2024 Terms and Conditions by either enrolling in or remaining in SaveOnSP's plan, continues to induce such violations by failing to remove Janssen's drugs from its list. In other words, Plaintiff contends that regardless of whether SaveOnSP informs its patients to contact JJHCS, SaveOnSP still unlawfully interferes with patients' CarePath Terms and Conditions, including the 2024 updates, by taking no affirmative steps to either prevent enrollment of Plaintiff's patients or remove Janssen's drugs. These allegations align with the Court's prior ruling on SaveOnSP's alleged conduct, and thus, there is no basis to depart from that decision.[4]

---

[4] Defendants further argue that merely including a Janssen drug on SaveOnSP's list does not induce a breach, particularly since Plaintiff's own terms and conditions acknowledge that it may, in some instances, choose to provide copay assistance to patients it knows are enrolled in SaveOnSP-advised plans. This argument misses the mark. The element of interference hinges on Defendants' alleged conduct; whether Plaintiff elects to waive its enforcement rights under the CarePath agreement does not

Additionally, Defendants' argument that Plaintiff has not alleged any patient breaches of the 2024 Terms and Conditions is unpersuasive. As the Court noted in its opinion, Plaintiff alleges that Defendants "induce[] patients to agree to CarePath's terms and conditions, thereby intentionally causing those patients to breach their contract with JJHCS every time they use CarePath funds while enrolled in the SaveOnSP program." (PSAC ¶ 188.) As pled, any patient enrolled in a SaveOnSP-advised plan who simultaneously uses CarePath funds breaches the agreement's terms. In its proposed allegations, Plaintiff asserts that SaveOnSP "continues to pilfer funds from CarePath's copay assistance programs in violation of CarePath's terms and conditions, despite knowing that those terms and conditions now expressly prohibit CarePath patients from being enrolled in SaveOnSP by name." (*Id.* ¶ 183.) These allegations are sufficient to establish a breach.

B. Malice

Malice is defined as "the harm was inflicted intentionally and without justification or excuse." *MacDougall v. Weichert*, 144 N.J. 380, 404 (1996) (quoting *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751 (1989)). The relevant inquiry for malice is "whether the conduct was sanctioned by the 'rules of the game.'" *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 306 (2001). And, the "line clearly is drawn at conduct that is fraudulent, dishonest, or illegal." *Lamorte*, 167 N.J. at 307 (citing *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 205 (App. Div. 1995)).

---

excuse Defendants' actions. Indeed, SaveOnSP has repeatedly referenced such in action by Plaintiff as a failure to mitigate for damages purposes.

Here, Defendants argue that Plaintiff fails to plead malice because the PSAC merely alleges that SaveOnSP instructed patients to comply with the 2024 Terms and Conditions. Plaintiff, however, contends that SaveOnSP issues this instruction to "foist responsibility for its misconduct onto patients." (PSAC ¶ 183.) Furthermore, Plaintiff alleges that SaveOnSP does so assuming noncompliance by patients, and in addition, SaveOnSP failing to remove Janssen drugs from its list further demonstrate malicious intent. While the proposed allegations provide factual support for malice, the remaining allegations in the PSAC sufficiently establish it. Specifically, Plaintiff alleges deceit and dishonesty in the implementation of SaveOnSP's scheme. According to Plaintiff, SaveOnSP "directs its agents to surreptitiously collect information regarding the requirements of drug manufacturers' copay assistance programs" and encourages those representatives to misrepresent their identities and affiliations, falsely claiming to be calling from a patient's doctor's office or pharmacy. (*Id.* ¶ 25.) By doing so, Plaintiff asserts, Defendants remain undetected and "continue to coerce patients into signing up for and using the SaveOnSP Program—thereby inducing those patients to breach the terms and conditions of their CarePath agreement with JJHCS." (*Id.*)

Additionally, Plaintiff avers that Defendants affirmatively mislead patients regarding the consequences of enrolling in the SaveOnSP Program, particularly in relation to CarePath's copay assistance. (*See id.* ¶¶ 108-113.) Plaintiff alleges that this scheme is designed to enrich Defendants at the expense of both drug manufacturers and patients. (*See id.* ¶ 1.) I find that these allegations adequately establish malice. *See, e.g., Rodgers Grp., LLC v. Lewis*, No. 22-482, 2024 U.S. Dist. LEXIS 144150, at *10 (D.N.J. Aug.

12, 2024) (finding that plaintiffs "adequately plead malice at this juncture, based on allegations that Counterclaim Defendants disseminated false statements about a competitor to the competitor's prospective customer"); *Industria De Alimentos Zenú S.A.S. v. Latinfood U.S. Corp.*, No. 16-6576, 2018 U.S. Dist. LEXIS 38897, at *16-17 (D.N.J. Mar. 9, 2018) (finding malice for a tortious interference claim when defendant made "willfully false statements" about plaintiff and its products); *Church & Dwight Co. v. SPD Swiss Precision Diagnostics*, No. 10-453, 2010 U.S. Dist. LEXIS 133114, at *21-22 (D.N.J. Dec. 16, 2010) (finding that a defendant's "false and misleading representations" to a third party, impacting plaintiff's business, sufficed to satisfy the malice element in the motion to dismiss stage).

  C. *Damages*

Finally, Defendants contend that Plaintiff has failed to adequately plead damages resulting from SaveOnSP's alleged interference with the 2024 Terms and Conditions. I disagree. Although Plaintiff asserts new claims based on the 2024 Terms and Conditions, the underlying theory of interference and the alleged resulting damages remain consistent with those asserted in connection with Plaintiff's existing tortious interference claim, which is premised on the "other offer" provision in the CarePath agreement. In other words, while the interference claims are predicated on distinct contractual terms, they are grounded in the same allegations of interference and resulting harm. In this regard, the PSAC sets forth sufficient factual allegations of economic loss—namely, that Plaintiff is compelled to expend millions of dollars in additional CarePath funds due to Defendants' alleged conduct. (*See* PSAC ¶ 173 ("Through the SaveOnSP Program,

Defendants knowingly and wrongfully harm JJHCS by causing it to pay . . . out exponentially more CarePath funds per patient only so that [Defendants] may profit in violation of the CarePath terms and conditions."); ¶ 183 (Defendants continue "to pilfer funds from CarePath's copay assistance programs in violation of CarePath's terms and conditions despite knowing that those terms and conditions now expressly prohibit CarePath patients from being enrolled in SaveOnSP by name")).

Accordingly, for substantially the same reasons set forth in the Court's dismissal opinion, I conclude that Plaintiff's newly asserted tortious interference claim is not futile. As all other Rule 15(a) factors have been satisfied, I recommend that Plaintiff be permitted to amend its complaint to include this claim against Defendants. Should the Court adopt my recommendation, Plaintiff, however, must file a second amended complaint to separately assert this new cause of action.

## II.     GBL § 349 Claim

As Defendants did not initially address whether paragraphs 181-183 may support Plaintiff's GBL claim, I did not discuss it in my previous R&R.[5] Plaintiff argues that the proposed allegations buttress its existing GBL claim, while Defendants argue that the allegations have nothing to do with the GBL claim as they solely allege interference with CarePath's terms and conditions.

GBL § 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby

---

[5] While Plaintiff argues that Defendants have waived such an argument, I nonetheless address it since I, again, prefer resolving disputes on their merits.

declared unlawful." N.Y. Gen. Bus. § 349. To state a section 349 claim, a plaintiff must allege that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Duran v. Henkel of Am.*, Inc., 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). The Court found that Plaintiff satisfied § 349 requirements by plausibly alleging that SaveOnSP deceives consumers by (1) enlisting pharmacies to reject patients' claims for their prescription at the point of sale, and (2) failing to inform patients that by enrolling in SaveOnSP, they breach the CarePath terms and conditions. *Johnson & Johnson*, 2023 U.S. Dist. LEXIS 12619, at *19. Additionally, the Court found that Plaintiff adequately alleges a direct injury because SaveOnSP Program causes Plaintiff to pay more money from CarePath than it otherwise would have. *Id.* at *21.

Because paragraphs 181–183 do not introduce a new theory of damages to Plaintiff or additional harm to the public, these allegations may properly supplement Plaintiff's existing GBL claim. In essence, Plaintiff asserts that, in connection with the 2024 Terms and Conditions, Defendants continue to unlawfully interfere with patients' CarePath agreements, despite the new terms expressly prohibiting SaveOnSP by name. Plaintiff relies on these additional instances of alleged interference to further substantiate its GBL claim, illustrating how Defendants allegedly adapt their conduct to circumvent new contractual provisions, thereby perpetuating harm to the public at large consistent with the Court's prior ruling.

Accordingly, I recommend that (1) Plaintiff's motion to supplement to add paragraphs 181-183 be granted; (2) Plaintiff be permitted to add an additional tortious interference count in connection with CarePath's 2024 Terms and Conditions, without adding further allegations beyond those permitted in this R&R; and (3) Plaintiff be permitted to relied upon paragraphs 181-183 in support of its GBL § 349 claim.[6]

DATED: March 20, 2025

*/s/ Freda L. Wolfson*
Hon. Freda L. Wolfson (ret.)
Special Master

---

[6] Plaintiff contemplates that it may add or alter CarePath's terms and conditions, which would support further amending its complaint against Defendants. I caution that as written discovery is drawing to a close, Plaintiff should be aware that continually adding claims even under the liberal standard of Rule 15, may unduly delay the resolution of this case.