# EXHIBIT A

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

February 3, 2025

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

> Re:    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,***
> ***Express Scripts, Inc., and Accredo Health Group, Inc.***
> ***No. 2:22-cv-02632 (JKS) (CLW)***

Dear Judge Wolfson:

Defendant Save On SP, LLC ("SaveOn") moves to compel Johnson & Johnson Health Care Systems Inc. (with its affiliates, "J&J") to run a tailored search term regarding its CAP appeals process over the documents of three custodians—Lauren Pennington, William Robinson III, and Adrienne Minecci—for the limited time period of September 1, 2021 to November 7, 2023.

As Your Honor knows, J&J implemented its CAP program to identify patients on accumulators, maximizers, and SaveOn-advised plans and sort them into specialized versions of its Care-Path program, known as CAPa and CAPm. Ex. 1 (JJHCS_00001497) ( ▮▮▮▮▮▮▮▮▮ ); Ex. 2 (JJHCS_00139021) ( ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ). While J&J alleges that it could not reduce or eliminate copay assistance payments for patients on SaveOn-advised plans because it might misidentify them, Am. Compl. at ¶ 174, J&J's CAP program had a robust appeals

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

process that virtually eliminated that risk. Ex. 3 at -444 (JJHCS_00004434). This appeal process permitted patients that believed they had been misidentified as on a maximizer or SaveOn-advised plan to challenge their placement in the CAPm program. Yet J&J refuses to run any search terms to identify documents on this important topic. The parties have met and conferred and are at impasse.

## **BACKGROUND**



, Ex. 4 at -826 (JJHCS_00001805),

see Ex. 5 at 2

(JJHCS_00198737).

Ex. 2 at 9 (JJHCS_00139021).

See Ex. 3 at -439, -444 (JJHCS_00004434).

Id. at -441.

A patient placed in CAPm, or a Field Reimbursement and Access Specialist ("FRAS") acting on their behalf, could initiate an appeal by calling CarePath's call center to report that the patient believed they had been incorrectly identified as a maximizer patient and wrongfully moved into the CAPm program. See Ex. 3 at -444 (JJHCS_00004434); Ex. 6 at -860 (JJHCS_00272860).

████████████████████████████████████████████████████

██████████████████████████████ Ex. 3 at -444, -446 (JJHCS_00004434).

J&J closely monitored the results of this appeals process on a weekly basis. *See* Ex. 7 (JJHCS_00003888) (███████████████████████████████████████████

████); *see also* Ex. 8 (JJHCS_00004076); Ex. 9 (JJHCS_00004357). ██████████████████

██████████████████████████████████ *See e.g.*, Ex. 7 at -892, -897, -900 (JJHCS_00003888).

Early reports from the appeals process showed that J&J's CAP program was highly accurate at identifying patients on maximizers. ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ *See* Ex. 10 at -813-14 (JJHCS_00035812); *see also* Ex. 11 at -450 (JJHCS_00117448) (█████████████████████████████████████████████

███████████████████████████████████████████████████).

The few identification errors that J&J identified through its appeals process, it quickly corrected. *See e.g.*, Ex. 9 at -357 (JJHCS_00004357) (████████████████████████████████

██████).

SaveOn served Request No. 97, seeking documents about the "Appeals Process." Ex. 12 at 10 (SaveOn's Ninth Requests for Production). J&J has refused to produce any documents in response, arguing that SaveOn's request is duplicative of other documents "relating to the CAP program," Ex. 13 at 8 (J&J's July 22, 2024 Resps. & Objs. to SaveOn's Ninth Requests for Production), even though J&J has run no search terms targeted towards this appeals process. SaveOn

3

narrowed its proposed search term for this Request three times, but J&J refused to make any counterproposals. Ex. 14 at 2 (Oct. 2, 2024 Ltr.); Ex. 15 at 2 (Oct. 17, 2024 Ltr.); Ex. 16 at 2 (Jan. 17, 2025 Ltr.).

## ARGUMENT

### I.    The CAP Appeals Program is Relevant

SaveOn is entitled to discovery about whether J&J took "reasonable" steps to mitigate its damages. *See, e.g.*, *Hite v. Peters*, 2009 WL 1748860, at *4 (D.N.J. June 19, 2009). Whether J&J failed to take such reasonable steps is determined in the context of "all the facts and circumstances of each case, and … judged in the light of one viewing the situation at the time the problem was presented." *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 259 (3d Cir. 2008) (citation omitted). SaveOn is also entitled to discovery that will show J&J's failure to enforce its claimed interpretation of CarePath's Terms and Conditions ("T&Cs"), and to show J&J's acquiescence to SaveOn's conduct. *See, e.g.*, *N.J., Dep't of Env't Prot. v. Gloucester Env't Mgmt. Servs., Inc.*, 264 F.Supp.2d 165, 177-78 (D.N.J. 2003) (finding a party to have "acquiesced" to an alteration in the terms of a contract, "thereby barring its enforcement" where the party failed to declare a breach of contract).

J&J's primary excuse for failing to mitigate its damages, acquiescing to SaveOn's conduct, and not enforcing its stated interpretation of the T&Cs is that "there is no easy or foolproof way for JJHCS to simply reduce the amount of assistance it provides to all patients enrolled in the SaveOnSP Program" because "[r]educing cost support … creates an unacceptable risk that individual patients may be misidentified and suffer from reduced costs support and consequently be unable to afford their therapy." Am. Compl. at ¶¶ 174, 177. As recently as the October 11, 2024

4

conference, J&J said that it could not mitigate its damages because "anything we could do to iden-tify … was inherently [im]precise" and J&J "did not want to risk patients dying and suffering se-vere impacts on their health by misclassifying them." Oct. 11, 2024 Tr. at 85:4-6, 14-16.

J&J's documents show that—contrary to its representations— ███████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ Ex. 5 at 2

(JJHCS_00198737); Ex. 10 at -813 (JJHCS_00035812). This also shows that J&J acquiesced to SaveOn's conduct for years and could have enforced its T&Cs against members of SaveOn-advised plans had it genuinely believed that the T&Cs barred such patients. *See also* Ex. 2 at 9 (JJHCS_00139021). Such evidence could dispense with large swaths of J&J's claims—for example, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████. *Id.* SaveOn is entitled to documents regarding how J&J verified its patient identifications.

## II.    The Requested Documents Are Not Duplicative of Prior Productions

J&J has not disputed that documents about appeals are relevant; its main objection is that it has already produced enough documents about CAP. Ex. 17 (Jan. 29, 2025 Ltr.). Not so. J&J has never run a search term specifically targeted to identify documents about CAP appeals. As a result, its production of documents about those appeals—directly relevant to its allegation that patients might be misidentified—has been limited.[1]

---

[1] Most of what J&J has produced on appeals thus far is ████████████████████████████ ████████████████████████████, Ex. 18 (JJTCMSA_0000002),

Critically, J&J has not produced documents and communications sufficient to show how the CAP appeal process worked. ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████ Ex. 3 at -439 (JJHCS_00004434) (dated March 2022). But J&J has produced only sporadic documents showing how the appeals process worked in practice. ████████ ████████████████████████████████████████████████████" *id.* at -447, but J&J has not produced records showing when and how the attestation form was completed. SaveOn needs these documents so it can understand what information J&J had available to it as it decided whether to designate patients as being on accumulators or maximizers. J&J has also produced only scattered documents showing how it explained the CAP appeals process to CarePath patients and members of its patient- and provider-facing outreach teams, including the FRAS, or documents on how it approved such communications. *See e.g.*, Ex. 21 (JJHCS_00158482) ( ████████████ ████████████████████████████████████████████████████ ███████████████ ).

J&J has also not produced documents showing its updates to and refinement of the appeals process during the relevant time period. J&J continued to adjust the appeals process, primarily to improve the patient experience. Ex. 22 (JJHCS_00035263) ( ████████████████████ ████████████████████████████████████████████████████ ████. On the few occasions when it found that it had misidentified a patient, J&J worked to optimize the appeals process and make filing appeals easier for patients. Ex. 23 at -923

_____

████████████████████████████ *see e.g.,* Ex. 19 (JJHCS_00291128); Ex. 20 (JJHCS_00290824).

(JJHCS_00035922) ( ██████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ ). I ███████████████

█████████████████████████████ Ex. 24 at -738-39

(JJHCS_00002738), Ex. 23 (JJHCS_00035922) ( ███████████ ),

Ex. 25 (JJHCS_00254596) ( ██████████████████████ ). J&J

apparently ██████████████████████, but SaveOn does not have

complete documentation about how the process changed. Ex. 26 at -907 (JJHCS_00253904) ( ███

██████████████████████████████ );  Ex.  27  at -846,  -851.013

(JJHCS_00182846) ( ██████████████████████████████

████████████████████████████████████████████████

██████████ ). SaveOn needs these documents to obtain a complete and accurate picture of this

key process. *See also* Ex. 3 at -450 (JJHCS_00004434) ( ██████████████

████████████████████████████████████████████████

██████████████████████████ ).

## III.    The Proposed Searches Are Narrowly Tailored

J&J should run the proposed CAP appeals search term over the files of Robinson, Penning-

ton, and Minecci, who apparently were the custodians most directly involved with J&J's CAP

appeals. Each is already a "full" custodian, and is likely to have unique, relevant documents.

**William Robinson** is a member of the PAAS team ("Patient Access and Affordability

Solutions") within J&J's Immunology group, the group that oversaw Stelara and Tremfya, and

appears to be the only J&J custodian who ██████████████████████████████



██████████████[2] Ex. 34 at -003 (JJHCS_00000001). He was recognized as a leader in the day-to-day implementation of the appeals process. Ex. 35 (JJHCS_00035757) (███████████████

████████████████████████████████████████████████████████████████████

████). ██████████████████████████████████████████████████████████████

████ (██████████████████████████████████████████████████████████████

██████████████████) ████████████████████████████████████████████████

████████████████████████████████████.[3]

  J&J's documents indicate that Robinson was the person in charge of coordinating any changes to the appeals process with TrialCard. ██████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Ex. 23 at -923 (JJHCS_00035922). ████████████████████████████████████████████████

███████████████████████████████████████████ *Id.*; *see also* Ex. 38 at -468-69 (JJHCS_00157466) (██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

[2] *See, e.g.*, Ex. 28 (JJHCS_00002774); Ex. 29 (JJHCS_00005528); Ex. 30 (JJHCS_00005550); Ex. 31 (JJHCS_00003307); Ex. 32 (JJHCS_00003320); *see also* Ex. 24 (JJHCS_00002738) (███████████████████████████████████████████████████████████████████); Ex. 33 (JJHCS_00035819) (████████████████████████████████████████████████ ██████████████).

[3] Ex. 25 at 3 at -598 (JJHCS_00254596); Ex. 36 (JJHCS_00149686) (████████████████████ ██████████████████████████████); Ex. 3 (JJHCS_00004434) (██████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████); Ex. 37 (JJHCS_00151363) (██████████████ ████████████████████████); Ex. 25 (JJHCS_00254596) (███████████████████ ██████████████████████████████████).

██████████████████████████████). J&J has not produced documents showing

whether those changes were implemented.

**Lauren Pennington**, the director of patient marketing for Immunology, was responsible

for ███████████████████████████████. Ex. 39 at -406 (JJHCS_00146405);

Ex. 34 at -003 (JJHCS_00000001); Ex. 40 at -.003, -.013 (JJHCS_00182189). She was responsible

for Stelara and Tremfya patients' overall experience with the drugs, including troubleshooting af-

fordability and access issues, and so was heavily involved with CAP appeals. *See* Ex. 41

(JJHCS_00342490) (███████████████████████████████████

████████████████); Ex. 42 at -335-39 (JJHCS_00253334) (███████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████); Ex. 43 at

-607-08 (JJHCS_00253607) (████████████████████████████████

████████████████████████). 


████████████████████████████████████████████████

████████████████████████████████████████████████

Ex. 10 at -814 (JJHCS_00035812); *see also* Ex. 25 at 3 at -598 (JJHCS_00254596) (███████

████████████). ████████████████████████████████████

███████████████, Ex. 44 (JJHCS_00002658), █████████████████████

█████████████████████████████████████████████████

███████████████, Ex. 39 at -405-06 (JJHCS_00146405) (█████████████

█████████████████████████████████████████████████

█████████████████████████████). █████████████████████

9



██████████. Ex. 26 at -905 (JJHCS_00253904) ( ████████████████

████████████████████████ ).

   **Adrienne Minecci**, the director of patient experience excellence, was a member of the

Janssen CarePath Copy Approval Committee ("CAC") team responsible for approving changes to

various documents regarding the CAP appeals process. Ex. 34 at -024 (JJHCS_00000001); Ex. 40

at -.003 (JJHCS_00182189); *see also, e.g.,* Ex. 45 at -956, -963 (JJHCS_00182956) ( ████████

████████████████████████████████████████

████████████████ ). She also frequently reviewed and edited documents regarding the Care-

Path program, *see e.g.*, Ex. 46 (JJHCS_00052627) ( ████████████████████████

████████████████████████ *see* Ex. 21 (JJHCS_00158482) ( ████████

████████████████ ). While Minecci's team had to approve a variety of

documents explaining this program to patients prior to the launch, *see, e.g.*, Ex. 3 at -451

(JJHCS_00004434) ( ████████████████████████████████████████

████████████████ ), J&J has provided only a few, one-off documents regarding

the approval of those materials, *see e.g.,* Ex. 45 at -963 (JJHCS_00182956); Ex. 21

(JJHCS_00158482).

   SaveOn asks Your Honor to order J&J to run the following search term over the files of

these three custodians from September 1, 2021—four months before the CAP program launched,

while it was in development—to November 7, 2023:

- (appeal* OR AskJCP OR "Ask JCP" OR escalat*) w/15 (CAP OR CAPa OR
  CAPm OR "adjustment program" OR maximiz* OR accumulat*)

The term is narrowly tailored to identify documents relating to the CAP appeals process. J&J says that running this term for the three custodians identifies only 2,038 new documents (with families, 2,314). Ex. 17 at 1 (Jan. 29, 2025 Ltr.).[4] Given the importance of J&J's ability to accurately identify patients, this is easily proportional to the needs of the case.

SaveOn appreciates Your Honor's attention to this matter.

Respectfully submitted,

/s/ *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

---

[4] In response to J&J's objections to prior iterations of this term, SaveOn significantly narrowed its request from its originally proposed term, moving from a "within 50" to a narrower "within 15" limiter, and by removing several terms. Ex. 47 at 6 (Aug. 23, 2024 Ltr.). SaveOn also reduced its requested custodians from 24 to just three, and narrowed its requested time period to four months before the CAP program launched until the end of the discovery period.

# Exhibits 1-11 Confidential

# Filed Under Seal

# Exhibit 12

E. Evans Wohlforth, Jr.
Sabrina M. Galli
ROBINSON & COLE
666 3rd Avenue #20
New York, NY 10174
212-451-2954
ewolforth@rc.com
sgalli@rc.com

Philippe Z. Selendy
Andrew R. Dunlap
Meredith Nelson
Elizabeth Snow
SELENDY GAY, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.,<br><br>Plaintiff,<br><br>v.<br><br>SAVE ON SP, LLC,<br><br>Defendant. | Civil Action No. 22-2632 (JKS) (CLW)<br><br>**DEFENDANT'S NINTH REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

To:     Jeffrey J. Greenbaum, Esq.
        SILLS CUMMIS & GROSS, P.C.
        One Riverfront Plaza

Newark, NJ 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, NY

*Attorneys for Plaintiff Johnson & Johnson
Health Care Systems Inc.*

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26 and 34,

Defendant Save On SP, LLC ("SaveOnSP"), requests Plaintiff Johnson & Johnson Health Care

Systems Inc.'s ("JJHCS"), to produce for inspection and copying the documents listed in these

Requests, to the office of the undersigned within 30 days of being served or at a time and place

mutually agreed by the parties and ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that this demand for production of documents

shall be deemed continuing in nature so as to require supplemental responses if Plaintiff or Plain-

tiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's

responses are served.

2

Dated:  June 21, 2024

By:  */s/ E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
Sabrina M. Galli
ROBINSON & COLE
666 3rd Avenue #20
New York, NY 10174
212-451-2954
ewolforth@rc.com
sgalli@rc.com

Philippe Z. Selendy
Andrew R. Dunlap
Meredith Nelson
Elizabeth Snow
SELENDY GAY, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

3

## **DEFINITIONS**

The following definitions apply to these Requests:

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses.

3.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.      "Accumulator" means a copay accumulator service, including (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

6.      "Action" means this litigation styled as "*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (JKS) (CLW).

7.      "All," "any," and "each" mean any and all.

8.      "And" and "or" are construed both conjunctively and disjunctively.

4

9.      "Appeals Process" means an appeal by a patient who believes that they have been incorrectly identified as a maximizer or accumulator patient.

10.     "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

11.     "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

12.     "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

13.     "Co-Pay Spend" means the money that JJHCS intended to spend or spent on Copay Assistance, as used in JJHCS_00230997.

14.     "Document" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

15.     "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

16.     "Including" means including but not limited to.

5

17.    "Janssen" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

18.    "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Johnson & Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and Janssen Research & Development LLC. "JJHCS" also includes TrialCard to the extent that any J&J entity has legal control over its documents relating to its work for any J&J entity pursuant to a Master Services Agreement, per the Special Master's order of May 28, 2023; and any other entity to the extent that any J&J entity has legal control over its documents relating to its work for any J&J entity pursuant a contract containing provisions similar to those in the Master Service Agreement discussing the May 28 order.

19.    "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer, in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments,

6

agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of such an entity.

20.    "Lash Group" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

21.    "Maximizer" means copay maximizer service, including (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maximizer."

22.    "Patient" means a natural person prescribed or eligible to be prescribed any Janssen Drug, whether or not they use CarePath or are a participant in a health plan advised by SaveOnSP.

23.    "Person" means a natural person or legal entity including any business or governmental entity or association.

24.    "Regarding" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting,

7

touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

25.    "Request" means any of these Requests for Production.

26.    "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, represent-atives, directors, officers, employees, committees, attorneys, accountants, and all persons or enti-ties acting or purporting to act on behalf or under the control of Save On SP, LLC.

27.    "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

28.    "TrialCard" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representa-tives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

29.    "You" and "Your" means JJHCS.

## INSTRUCTIONS

1.    These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 34(a)(1).

2.    These Requests seek production of nonprivileged information. Fed. R. Civ. P. 26(b)(1).

3.    These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4.    For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 34(b)(2)(C).

8

5.      If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

6.      If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest. Fed. R. Civ. P. 34(b)(2)(C).

7.      If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 26(b)(5)(A)(ii), including by indicating whether any document exists regarding the information, requested and stating, to the extent the privilege is being asserted in connection with a claim or defense governed by the state law, the state privilege rule being invoked, Local Rule 34.1.

8.      If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction the reason for its destruction, the name of the person who requested or authorized its decision, and the name of the person who destroyed it.

9.      Produce documents as they are kept in the usual course of business. Fed. R. Civ. P. 34(b)(E)(i). For each document, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

10.     Produce electronically stored information in the form and manner required by any agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

11.     Produce each document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

12.     Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notation, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

13.     These Requests are deemed continuing. If after responding to any Request you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).

## TIME PERIOD

Unless otherwise specified, these Requests relate to the time period from and including April 1, 2016 through the present.

## REQUESTS

94.     Documents sufficient to show business plans reflecting the total Co-Pay Spend, both anticipated and actual, for each Janssen Drug.

95.     All Documents and Communications regarding any expenses incurred by JJHCS to mitigate any purported harm caused by SaveOnSP to JJHCS, including the expenditures of resources to identify members of plans advised by SaveOnSP.

96.     All Documents and Communications regarding setting $9,100 as the maximum benefit for Copay Assistance for any Janssen Drug, including any decision to not publish that maximum benefit publicly.

97.     All Documents and Communications regarding the Appeals Process.

10

# Exhibit 13

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036

*Attorneys for Plaintiff Johnson & Johnson Health Care
Systems Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JKS) (CLW) <br><br> **PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S NINTH REQUEST FOR PRODUCTION OF DOCUMENTS** |

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing.  It reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action.  The following responses and objections are based upon information known at this time.

1.      JJHCS objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the First Amendment privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law.  The inadvertent production by JJHCS of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.      JJHCS objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation.  Any response JJHCS makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek documents or information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

2

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.      JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.     JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.     JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.     JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" documents where a subset of documents would be sufficient to provide the relevant information.

13.     JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.      JJHCS objects to the definition of the term "Appeals Process" as vague and ambiguous and construes this term to refer to benefits investigations that TrialCard performed to determine whether patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan.

2.      JJHCS objects to the definition of "Co-Pay Spend" to the extent the definition of that term purports to characterize the meaning of "Co-Pay Spend" as used in JJHCS_00230997.

3.      JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS beyond

the scope of the Court's July 15, 2024 Letter Order.  JJHCS further objects to the definition of

the term as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it purports to include "any and all predecessors and successors in interest, assignees,

parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors,

officers, employees, committees, attorneys, accountants, and all persons or entities" or purports

to include entities and persons acting or purporting to act on behalf of or under the control of

entities other than JJHCS, including Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen

Products, LP, or Actelion Pharmaceuticals U.S., Inc.

     4.     JJHCS objects to the definition of the term "JJHCS" to the extent it purports to

include attorneys and accountants whose documents and communications may be outside of

JJHCS's possession, custody, and control.  JJHCS further objects to the definition of the term as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

purports to include "any and all predecessors and successors in interest, assignees, parents,

subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers,

employees, committees, attorneys, accountants, and all persons or entities" or purports to include

entities and persons acting or purporting to act on behalf of or under the control of entities other

than JJHCS, including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical,

Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc.,

Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen

Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen

BioPharma LLC, Janssen Research & Development LLC, and TrialCard.  JJHCS further objects

to this definition of "JJHCS" to the extent it purports to include "TrialCard and any other vendor

over whom JJHCS has legal contract of documents."

4

5.    JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and as irrelevant to the extent it purports to include entities other than those responsible for administering CarePath during the relevant Time Period.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.  JJHCS further objects on the ground that the phrase "administer, in whole or in part, CarePath" is vague and ambiguous.  JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

6.    JJHCS objects to the definition of the term "CarePath" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this definition to the extent that the definition of the term "CarePath" to the extent it purports to include the term "Janssen" for the reasons stated in JJHCS's Objections to Definitions.

7.    JJHCS objects to the definition of the term "Lash Group" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to the definition of the term as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc."

8.      JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc."  JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

## OBJECTIONS TO THE TIME PERIOD

1.      JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome, and not relevant to the subject matter of this Action to the extent they call for documents from after November 7, 2023.  Unless otherwise noted, JJHCS will only provide information from April 1, 2016 through November 7, 2023 (the "Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

### Request No. 94

Documents sufficient to show business plans reflecting the total Co-Pay Spend, both anticipated and actual, for each Janssen Drug.

### Response to Request No. 94

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents related to any drug manufactured or sold by Janssen that is not covered by CarePath or otherwise implicated in SaveOnSP's scheme to misuse copay assistance funds.  JJHCS further objects to this Request to the extent it uses the term "Janssen" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as duplicative of Requests Nos. 28(k), (m) and 29(a)–(c), and JJHCS incorporates by reference its responses to those Requests.  JJHCS further objects to the

Request to the extent it seeks financial documents that the Court, in its February 6, 2024 and April 25, 2024 orders, has ruled are outside the scope of discovery in this case.  *See* Dkt. No 264 at 3–9; Dkt. No. 192 at 15–24.

JJHCS has already produced to SaveOnSP financial data related to JJHCS's operation of CarePath, including forecasted and actual co-pay spend for the drugs at issue in this litigation.  *See, e.g.*, JJHCS_00130090; *see also* July 24, 2023 Ltr. From H. Sandick to A. Dunlap at 2, 5.  JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

**Request No. 95**

All Documents and Communications regarding any expenses incurred by JJHCS to mitigate any purported harm caused by SaveOnSP to JJHCS, including the expenditures of resources to identify members of plans advised by SaveOnSP.

**Response to Request No. 95**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions.

Subject to the foregoing objections, JJHCS will produce non-privileged documents in its possession from the Time Period sufficient to show the expenses incurred by JJHCS to identify patients enrolled in the SaveOnSP Program, to the extent such documents exist and can be located after a reasonable search.  JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

**Request No. 96**

All Documents and Communications regarding setting $9,100 as the maximum benefit for Copay Assistance for any Janssen Drug, including any decision to not publish that maximum benefit publicly.

**Response to Request No. 96**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents related to any drug manufactured or sold by Janssen that is not covered by CarePath or otherwise implicated in SaveOnSP's scheme to misuse copay assistance funds. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as duplicative of Requests Nos. 29(a) and 31, and JJHCS incorporates by reference its responses to those Requests.

JJHCS has already produced documentation sufficient to show the nature and extent of the change relating to a $9,100 co-pay assistance maximum for certain patients. *See* Aug. 2, 2023 Ltr. from S. Arrow to M. Nelson (identifying JJHCS_00130092). JJHCS has also already agreed to search Savaria Harris's and Jennifer De Camara's communications with third parties, from January 1, 2021 through November 7, 2023, for documents hitting on the search term ($6,000 OR $6k OR 6k OR $9,100 OR $8,900 OR (OOP) OR (out-of-pocket)) AND (Stelara OR Tremfya). *See* Mar. 1, 2024 Ltr. from J. Long to E. Snow at 3–4. And JJHCS has already produced an extensive amount of documents relating to the CAP program from its agreed-upon custodians, including responsive, non-privileged documents hitting on the term (STELARA* OR TREMFYA* OR

8

CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate), among several other search terms.  Subject to the foregoing objections, JJHCS is willing to meet and confer on a narrow supplemental search that targets documents and communications responsive to this Request, but JJHCS will not otherwise search for or produce documents and communications responsive to this Request.

**Request No. 97**

All Documents and Communications regarding the Appeals Process.

**Response to Request No. 97**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP.  JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it uses the term "Appeals Process" for the reasons stated in JJHCS's Objections to Definitions.  As stated therein, JJHCS will construe that term as referring to the benefits investigations that TrialCard performed to determine whether patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan.  JJHCS further objects to this Request as duplicative of Requests Nos. 58 and 59, and JJHCS incorporates by reference its responses to those Requests.

SaveOnSP has already received from TrialCard the results of over 4,800 benefits investigations that TrialCard performed to determine whether patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan.  To the extent this Request seeks other documents and communications related to the identification of patients, through the CAP program,

9

as being in any such plan, JJHCS has already produced an extensive amount of documents relating

to the CAP program from its agreed-upon custodians, including responsive, non-privileged

documents hitting on the search term ("CAPa" OR "CAPm" OR "adjustment program") AND

(SaveOnSP OR SaveOn OR "SaveOn SP" OR "Save OnSP" OR Save-On OR SOSP OR

accumulat* OR maximiz*), among several other search terms. JJHCS will not otherwise search

for or produce documents and communications responsive to this Request.

Dated: July 22, 2024

> SILLS CUMMIS & GROSS P.C.
> One Riverfront Plaza
> Newark, New Jersey 07102
> (973) 643-7000
>
> By:    /s/Jeffrey J. Greenbaum
> _____
>        JEFFREY J. GREENBAUM
>        KATHERINE M. LIEB
>
> PATTERSON BELKNAP WEBB & TYLER LLP
> Adeel A. Mangi
> Harry Sandick (admitted *pro hac vice*)
> George LoBiondo
> 1133 Avenue of the Americas
> New York, New York 10036
> (212) 336-2000
>
> *Attorneys for Plaintiff*
> *Johnson & Johnson Health Care Systems Inc.*

# Exhibit 14

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

October 2, 2024

**Via E-mail**

Jacob I. Chefitz
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jchefitz@pbwt.com

**Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP,
        LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Jacob,

We write in partial response to your September 27, 2024 letter regarding
SaveOn's Ninth Requests for Production, in particular regarding Request No. 97.

Request No. 97 seeks documents and communications related to the Appeal
Process described in JJHCS_00004439, ████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████ JJHCS_00004439.

You assert that we have not explained the documents' relevance. The docu-
ments will provide important information about the accuracy of J&J's processes of
identifying patients on maximizer plans or plans advised by SaveOn, which is rel-
evant to J&J's mitigation efforts. They also will provide insight into the stress and
confusion that J&J's CAP program caused patients, which is relevant to J&J's alle-
gations that SaveOn's services caused stress and confusion.

You next say that your prior productions of (1) the results of benefits inves-
tigations from TrialCard; and (2) discovery related to the CAP program are suffi-
cient. We disagree. The results of benefits investigations do not appear to be the
same as the results of the appeals process. The fact that SaveOn's proposed search
term, targeted at the appeals process, returns more than 60,000 unreviewed doc-
uments (inclusive of families), clearly shows that J&J's existing CAP-related pro-
duction has not captured relevant documents related to the appeals process.

Jacob I. Chefitz
October 2, 2024

Given the hit count that you provided, SaveOn proposes the following revised search term:

- **Search Term**: (appeal* OR AskJCP OR ("Ask JCP") OR escalat*) ~~w/50~~ w/25 (CAP OR CAPa OR CAPm OR "adjustment program" OR maximiz* OR accumulat* OR "benefit* investigation*" OR ((divert* OR diversion) /3 program*))[1]

- **Custodians**: Lindsey Anderson, Spilios Asimakopoulos, John Paul Franz, Evelyn (Lynn) Hall, Brandon (Heith) Jeffcoat, John King, Jeremy Mann, Katie Mazuk, Silviya McCool, Hattie McKelvey, Adrienne Minecci, Lauren Pennington, William Robinson III, Nidhi Saxena, Heather Schoenly, Carol Scholz, Jasmeet Singh, Debbie Kenworthy, Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, Alison Barklage, Lawrence (L.D.) Platt

If J&J intends to object on the basis of burden or proportionality, please provide broken-down hit counts to allow productive negotiation. Please also provide the number of unique hits separate from the number of family documents.

We request a response by October 9, 2024. We are available to meet and confer and reserve all rights.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

---

[1] This proposal also updates the proposed "diversion program" search term to be in line with SaveOn's September 27, 2024 proposal related to documents in the possession of Scott White and Blasine Penkowski.

2

# Exhibit 15

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

October 17, 2024

**Via E-mail**

Jacob I. Chefitz
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jchefitz@pbwt.com

**Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC*** **(Case No. 2:22-cv-02632-JKS-CLW)**

Dear Jacob,

　　We write in response to your October 11, 2024 letter regarding SaveOn's
RFP No. 97, which seeks documents and communications regarding the Appeals
Process by which patients can challenge their identification as a maximizer or ac-
cumulator patient. *See* JJHCS_00004439.

　　*First*, documents regarding the Appeals Process are relevant. You do not
dispute (or address) that documents regarding the Appeals Process will provide
insight into the accuracy of J&J's processes of identifying patients on accumulator
or maximizer plans or plans advised by SaveOn. J&J has frequently argued, includ-
ing at the October 11 conference, that it could not mitigate its damages because
"anything we could do to identify … was inherently [im]precise" and that it "did
not want to risk patients dying and suffering severe impacts on their health by mis-
classifying them." Oct. 11, 2024 Tr. at 85:4-6, 14-16. That J&J implemented a ro-
bust—and apparently successful[1]—appeals process to resolve any issues that arose
due to patients being allegedly misidentified undermines J&J's assertions that it
could not mitigate its damages.

---

[1] One document produced by J&J shows that ███████████████████████████
███████████████████████████████████████. JJHCS_00117449 at -450.

Jacob I. Chefitz
October 17, 2024

Documents regarding the Appeals Process are also relevant because they provide insight into the stress and confusion that the CAP program caused patients, relevant to J&J's allegations that SaveOn's services caused patients stress and confusion. You state that this theory of relevance is "implausible." Yet J&J's own documents show that the CAP program—and the Appeals Process in particular—stressed and confused patients. *See* JJHCS_00117449 (               ); *id.* at -451 (

                                        ).

*Second*, J&J should search for and produce noncustodial files in the possession of J&J and its vendors (including but not limited to TrialCard and RISRx) regarding the Appeals Process. In particular, please produce the records of all appeals filed in connection with the CAP program including (1) the appeal itself, whether it came from a patient, healthcare provider, FRAS, or elsewhere; (2) any initial determination of the appeal; (3) any escalation; and (4) any final disposition of the appeal. J&J should also produce all noncustodial files regarding the operation of the Appeals Process. J&J's current productions are insufficient because they include the results of appeals only haphazardly, as they happened to be included in emails, but do not provide a full picture of the appeals that J&J and its vendors received and resolved.

*Third*, as for custodian files, you assert that SaveOn's revised proposed search term is still too broad and represent that the search term hit 18,928 unreviewed documents. We ask that J&J run the proposed search term[2] over the custodial files of those who were most involved in the Appeals Process, from January 1, 2021 to November 7, 2023. These custodians should include, at minimum, William Robinson III, Cinthia Campbell, Tony McInnis, and Tommy Gooch. *See, e.g.*, JJHCS_00003420, JJHCS_00005550; JJHCS_00004457. If J&J continues to object to running these terms on the basis of burden, please provide the total unique hit counts, the total additional unique documents the term would require J&J to review, and hit counts as broken out on Appendix 1.

---

[2] (appeal* OR AskJCP OR ("Ask JCP") OR escalat*) w/25 (CAP OR CAPa OR CAPm OR "adjustment program" OR maximiz* OR accumulat* OR "benefit* investigation*" OR ((divert* OR diversion) /3 program*))

Jacob I. Chefitz
October 17, 2024

We request a response by October 24, 2024 and are available to meet and confer.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

**Appendix 1**

| (appeal* OR AskJCP OR ("Ask JCP") OR escalat*) w/25 (CAP OR CAPa OR CAPm OR "adjustment program" OR maximiz* OR accumulat* OR "benefit* investigation*" OR ((divert* OR diversion) /3 program*)) |
|---|
| appeal* w/25 CAP |
| appeal* w/25 CAPa |
| appeal* w/25 CAPm |
| appeal* w/25 "adjustment program" |
| appeal* w/25 maximiz* |
| appeal* w/25 accumulat* |
| appeal* w/25 "benefit* investigation*" |
| appeal* w/25 ((divert* OR diversion) /3 program*) |
| AskJCP w/25 CAP |
| AskJCP w/25 CAPa |
| AskJCP w/25 CAPm |
| AskJCP w/25 "adjustment program" |
| AskJCP w/25 maximiz* |
| AskJCP w/25 accumulat* |
| AskJCP w/25 "benefit* investigation*" |
| AskJCP w/25 ((divert* OR diversion) /3 program*) |
| ("AskJCP") w/25 CAP |
| ("AskJCP") w/25 CAPa |
| ("AskJCP") w/25 CAPm |
| ("AskJCP") w/25 "adjustment program" |

| |
|---|
| ("AskJCP") w/25 maximiz* |
| ("AskJCP") w/25 accumulat* |
| ("AskJCP") w/25 "benefit* investigation*" |
| ("AskJCP") w/25 ((divert* OR diversion) /3 program*) |
| escalat* w/25 CAP |
| escalat* w/25 CAPa |
| escalat* w/25 CAPm |
| escalat* w/25 "adjustment program" |
| escalat* w/25 maximiz* |
| escalat* w/25 accumulat* |
| escalat* w/25 "benefit* investigation*" |
| escalat* w/25 ((divert* OR diversion) /3 program*) |

# Exhibit 16

Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

January 17, 2025

<u>Via E-mail</u>

Jacob Chefitz
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jchefitz@pbwt.com

**Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC* (Case No.
2:22-cv-02632-JKS-CLW)**

Dear Jacob,

        We write regarding SaveOn's Request No. 97, seeking documents and
communications regarding J&J's Appeals Process.

        Thank you for producing "a record of all Ask JCP appeals through to the present."
Dec. 19, 2024 Ltr. from J. Long to E. Snow.[1] As you know, SaveOn reserved its right to
seek additional documents regarding J&J's CAP appeals following J&J's production of
noncustodial records. Upon initial review of the appeals records produced, SaveOn has
identified at least two deficiencies in J&J's production.

        *First*, the noncustodial spreadsheet that J&J produced, JJTCMSA_0000002, does
not appear to include all information collected in connection with the appeals listed.
In particular, ███████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
JJHCS_00004439 at -444. TrialCard agents thus appear to have gathered information from
patients to begin the appeal process, but the spreadsheet does not include that information.

---

[1]   The   cited   document,   JJTCMSA_0000002, ████████████████████████
████████████  Please clarify whether this document includes the records of *all*
CAP appeals, as you stated you had produced in your December 19 letter, or whether it
includes only CAPm appeals.

Jacob Chefitz
January 17, 2025

The spreadsheet also does not include records of any notes regarding the appeals. Please let us know if J&J has any non-custodial information related to CAP appeals in sources other than PAFA+—including without limitation information gathered from patients and call notes—and if it will produce that information. (We understand that J&J refuses to produce further information from PAFA+. Dec. 19, 2024 Ltr. from J. Long to E. Snow.)

*Second*, documents and communications regarding the implementation of the appeals process—including the steps by which J&J and its vendors completed the appeals and changes that J&J wanted to make in the appeals process—are necessary to understand how the process worked. Documents and communications regarding difficulties with running the appeals and how J&J responded are also necessary to understand the process. These topics are all relevant to J&J's claims that it "cannot reduce copay assistance on a patient-by-patient basis without taking the risk that some patients might be erroneously identified as having been enrolled in the SaveOnSP Program." Dkt. 395 ¶ 127.

Please let us know if you will run the following search term to identify these relevant documents:

- (appeal* OR AskJCP OR "Ask JCP" OR escalat*) w/15 (CAP OR CAPa OR CAPm OR "adjustment program" OR maximiz* OR accumulat*)

- Custodians: William Robinson III, Lauren Pennington, and Adrienne Minneci

- Time Period: September 1, 2021 to November 7, 2023

This term is narrowed from the search term that we requested on October 17, 2025 and tailored to capture documents specifically related to the CAP appeals process. SaveOn has also significantly narrowed its custodian request to target the existing J&J custodians who are most likely to have the relevant information identified above in their files.[2]

If you object based on burden, please provide hit counts for SaveOn's proposed term as well as any counterproposal J&J may make, with and without families, and broken down by custodian.

We request a response by January 24, 2025, and are available to meet and confer.

Sincerely,

Hannah Miles

Hannah R. Miles
Associate

---

[2] SaveOn reserves the right to request that J&J also run this search term for TrialCard employees Tony McInnis and Tommy Gooch if they are added as custodians.

# Exhibit 17



January 29, 2025

Jacob I. Chefitz
(212) 336-2474

**<u>By Email</u>**

Hannah R. Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:  ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,***
> ***2:22-cv-02632 (JKS) (CLW)***

Dear Hannah:

We write in response to your January 27, 2025 email regarding CAP appeals, and to follow up on our January 28, 2025 meet and confer on that subject.

In your email, you claim that "contrary to [JJHCS's] December 19, 2024 letter," JJHCS has provided only the records of CAPm appeals and suggest that JJHCS's production is deficient because SaveOnSP also is entitled to "records of the appeals of patients initially assigned to CAPa who appealed and were moved to CAPm."  Jan. 27, 2025 Email from H. Miles to J. Chefitz (citing JJTCSMSA_0000002).  We disagree.

As you know, JJHCS previously agreed—as a compromise and to resolve the parties' dispute with respect to documents relating to the appeals process—to investigate whether it, TrialCard, or RISRx had any additional noncustodial documents showing the results of CAP appeals.  That investigation resulted in the production of JJTCMSA_0000002—███████████████ ██████████████—as that document is maintained in the ordinary course of business.  JJHCS has not removed or otherwise filtered any purported CAPa appeals from this data set.

During our January 28, 2025 conferral, we also explained that, to the extent that SaveOnSP seeks here to assess the accuracy of patient assignment to CAPa by reviewing the instances of patients who were initially assigned to CAPa but were then moved to CAPm, SaveOnSP will receive data sufficient to make those assessments as part of JJHCS's forthcoming PAFA+ production.  *See* Jan. 27, 2025 Ltr. from J. Long to E. Snow.  As discussed during the conferral, to facilitate a resolution of this dispute, JJHCS is available to meet and confer concerning its forthcoming PAFA+ production.

Finally, as stated during our meet and confer, SaveOnSP's proposed search term, when run over the custodians and time period specified in your January 17, 2025 letter, hits on 2,038 unreviewed documents (2,314 unreviewed documents including families).  As we have

Hannah R. Miles, Esq.
January 29, 2025
Page 2

explained, JJHCS has already produced voluminous custodial discovery on the CAP Program, including with respect to CAP appeals in particular. SaveOnSP has identified no deficiency that would warrant JJHCS's review of thousands of more documents, and doing so would be disproportionate at this point.

JJHCS reserves all rights, and we are available to meet and confer.

Very truly yours,

*/s/Jacob I. Chefitz*
Jacob I. Chefitz

# Exhibits 18-46 Confidential

# Filed Under Seal

# Exhibit 47

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

August 23, 2024

**Via E-mail**

Julia Long
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jlong@pbwt.com

**Re:**    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Julia,

We write regarding J&J's July 22, 2024 Responses and Objections (R&Os)
to SaveOn's June 21, 2024 9th Set of Requests for Production.

**I.    Business Plans Reflecting the Co-Pay Spend for Each Janssen
Drug (RFP 94)**

SaveOn's RFP No. 94 seeks documents sufficient to show business plans re-
flecting actual and anticipated copay spend for each J&J drug at issue in the litiga-
tion. J&J's damages claim is that J&J paid more than it intended from CarePath.
*See* Compl. ¶ 110 ("SaveOnSP knowingly and proximately causes JJHCS damage
by making it pay more money from CarePath than it otherwise would have for a
purpose JJHCS did not intend."); ¶ 115. How much J&J intended or planned to
spend is thus highly relevant to understanding J&J's claimed damages, including
whether it experienced damages at all. Compl. ¶ 115.

J&J objects that it has already produced financial data including forecasted
and actual copay spend, including at JJHCS_00130090. This is insufficient.
███████████████████████████████████, JJHCS_00130090, ███████████
████████████████████████████████████████████████████████ J&J must
produce records showing its intended spend over the relevant time period so that
SaveOn can learn, for example, if and how its projections changed over time.

Julia Long
August 23, 2024

██████████████████████████████████████████ This suggests that it is an excerpt or summary of a more complete set of financial data, or derived from some other source. J&J must produce all data and analysis underlying this summary, including any business plans.

*Third*, JJHCS_00130090 ████████████████████████ Documents produced to date indicate that J&J would have forecasted its copay spend for 2023 and 2024 before the discovery cut-off date of November 7, 2023. *See, e.g.*, JJHCS_00183322 (███████████████████████████); JJHCS_00129990 (█████████ ██████████████████). J&J must produce all such projections.

*Fourth*, the raw dollar value of J&J's projected copay spend, standing alone, is not sufficient. J&J must produce the business plans or similar documents showing how it came up with these projections and presented them to decisionmakers. *See, e.g.*, JJHCS_00259917. These business plans helped inform choices about how to structure CarePath, including key decisions like whether to lower the maximum benefit, change the CarePath T&Cs, or create alternative plans like CAPa or CAPm to respond to accumulators, maximizers, or SaveOn. J&J put its business plans—including the forecasted or projected copay spend—at issue by using its anticipated copay spend as the basis for its alleged damages. *See* June 2, 2023 Joint Letter at 2 (J&J arguing that "business plans will present the key strategic information about SaveOnSP's operations in one place and in SaveOnSP's own words").

*Fifth*, business plans, including drafts or changes to the business plans, are relevant because projections, unlike summaries of actual dollars spent retroactively, require context to understand. Forecasts necessarily rely upon assumptions, and may include a range of projections if some assumptions are fulfilled or not fulfilled. *See* JJHCS_00183322 (████████████████████████████████████ ██████████████████████████████████████). This context is not reflected in a single number on a spreadsheet but may be presented business plans. Business plans may also discuss the inputs that J&J relied upon for its projections. *See, e.g.*, JJHCS_00270881 (█████████████████████████ ████████████████████████████████████████ ████████████████████).

*Finally*, J&J alleges in its Complaint that SaveOn caused it damage by forcing it to spend more money than it otherwise would have "for a purpose JJHCS did not intend." Compl. ¶ 110. Raw data alone is insufficient to show what J&J's intentions were in allocating money to the CarePath program and where J&J intended, knew, or understood that the money would go. J&J's business plans are highly relevant evidence of its intentions.

2

Julia Long
August 23, 2024

## II.     Expenses Incurred by J&J to Mitigate Any Purported Harm Caused by SaveOn (RFP 95)

SaveOn's RFP No. 95 seeks documents and communications regarding the expenses incurred by J&J to mitigate any purported harm, including, but not limited to, expenditures to identify patients.

*First*, J&J indicates that it will produce documents sufficient to show the expenses incurred by JJHCS to identify patients in the SaveOn program. Please advise by when J&J will make that production.

*Second*, RFP No. 95 seeks documents regarding expenditures incurred to mitigate any purported harm that SaveOn caused to J&J. SaveOn understands J&J to be representing that the only mitigation effort it undertook—and therefore will seek damages in conjunction with—was the identification of patients "enrolled in the SaveOnSP Program," R&Os at 7. Please confirm that representation. If that is not the case, please identify all other mitigation efforts that J&J undertook.

*Third*, J&J's proposed production is insufficient because it does not include communications. J&J does not suggest that such communications would be irrelevant. And it could not. It is well settled that injured parties have a duty to take reasonable steps to mitigate damages. *State v. Ernst & Young, L.L.P.*, 386 N.J. Super. 600, 618 (App. Div. 2006). Courts look at the plaintiff's perspective when assessing the reasonableness of measures taken to mitigate damages. It is thus relevant what costs J&J considered and deemed unreasonable, which can only be discovered through the production of pertinent communications. Please advise whether J&J will produce communications regarding *all* its expenses incurred through its attempts to mitigate.

## III.     Documents and Communications Regarding Setting $9,100 as the Maximum Benefit for Copay Assistance for Janssen Drugs (RFP 96)

RFP No. 96 seeks documents and communications regarding setting $9,1000 as the maximum benefit for copay assistance, including any decision to not publish the maximum benefit publicly.

*First*, J&J objects that this request is duplicative of RFP Nos. 29(a) and 31. Not so. Request 29(a) sought documents and communications regarding J&J's determination of the amount of copay assistance funds to offer to patients enrolled in CarePath, including the maximum program benefit. Request No. 31 sought all documents and communications regarding J&J's attempt to limit or eliminate the amount of CarePath assistance available to patients on Stelara or Tremfya.

*Second*, J&J states that it has already produced documents sufficient to show the nature and extent of the change to the $9,100 maximum benefit, pointing to JJHCS_00130092. This document is an apparently final, public, FAQ document presenting J&J's official talking points to healthcare providers regarding the

3

Julia Long
August 23, 2024

change. J&J's public statement about why it has changed the maximum benefit is not sufficient to show why it actually did so. SaveOn is entitled to all documents and communications about this change, including but not limited to internal drafts and discussions about the creation of this document. (The document that J&J points to was not even produced from a custodian's files, so it provides no insight into who worked on this project.)

J&J also points to the search term that it has run for Savaria Harris and Jennifer De Camara, which includes a $9,100 term, and another CAP term with $6,000 included. J&J's current search terms are insufficient for multiple reasons: (1) J&J is not running a term to identify the 2024 out-of-pocket maximum, $9,450, which was likely discussed in 2023; (2) J&J is not running a term containing $9100 for any custodians other than Harris and De Camara; and (3) the other CAP term says nothing about J&J using the ACA out-of-pocket maximum as the maximum for copay assistance.

SaveOn has identified numerous additional documents showing that other existing custodians were involved:

- JJHCS_00276037, from the files of **Silviya McCool**, indicates for Stelara and Tremfya, &J is going to "[i]ncrease annual max benefit … (9,100 to 9,450)."

- JJHCS_00158331, JJHCS_00158333, **Lauren Pennington**, **Spilios Asimakopoulos**, and **Jasmeet Singh** discussing the new maximum benefit of $9,100, including that "the CAP and non-CAP agents [at Trial-Card] are trained and both call guides have been updated with the change to $9,100."

- JJHCS_00164633, **Heith Jeffcoat**, **Lynn Hall**, and **William Shontz** discussing "options to mitigate Maximizer program" including "Max cap at $9,100 without publishing it but add a sentence to give us flexibility."

- JJHCS_00158351, Asimakopoulos discussing the "proactive decision to reset all [accumulator] patients to $9100 to eliminate any short-term friction."

- JJHCS_00158442, Askimakopoulos and **Katie Mazuk** discussing the "rational for $9100 limit for our savings program," including that "[t]he $9100 limit ensures that any patient that does not have an accumulator or maximizer insurance program will have their full OOP covered."

- JJHCS_00164490, Heith Jeffcoat and William Shontz discussing that "ALL patients start w/9100 as their max OoP, maximizers are reduced to 6000 and accumulators use the two card."

4

Julia Long
August 23, 2024

- JJHCS_00173390, Jasmeet Singh explaining to **Hattie McKelvey** that "[g]iven all the noise around CAP, we will be giving all Accumulator patients incorrectly identified a full $9100. That is approx. 8k patients."

*Third*, J&J indicated that it is willing to meet and confer on a narrow supplemental search. SaveOn proposes that J&J run the following additional term over the files of the following custodians:

- **Custodians**: Lindsey Anderson, Spilios Asimakopoulos, John Paul Franz, Evelyn (Lynn) Hall, Brandon (Heith) Jeffcoat, John King, Jeremy Mann, Katie Mazuk, Silviya McCool, Hattie McKelvey, Adrienne Minecci, Lauren Pennington, William Robinson III, Nidhi Saxena, Heather Schoenly, Carol Scholz, Jasmeet Singh, Debbie Kenworthy, Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, Alison Barklage, Lawrence (L.D.) Platt

- **Search Term**: ($6,000 OR $6000 OR OR $6k OR 6k OR $9,100 OR $9100 OR $9,450 OR $9450 OR $8,900 OR $8900 OR (OOP) OR (out-of-pocket)) AND (Stelara OR Tremfya)

If J&J intends to object based on burden, please provide hit counts demonstrating how many additional documents J&J would have to review.

## IV.    J&J's Appeals Process (RFP 97)

RFP No. 97 seeks documents and communications related to the Appeal Process. J&J objects to SaveOn's definition of the Appeal Process and instead stated that it will "construe that term as referring to the benefits investigations that TrialCard performed to determine whether patients were in a SaveOnSP-advised plan, a maximizer plan, or an accumulator plan." R&Os at 9.

J&J's proffered definition is inaccurate. As SaveOn explained in its definition, the Appeals Process means "an appeal by a patient who believes that they have been incorrectly identified as a maximizer or accumulator patient." SaveOn's 9th RFPs at 5. Far from being the same as the benefits investigations that TrialCard (and other vendors) conducted, an appeal is what comes *after* a benefits investigation or other process identified a patient as being on an accumulator or maximizer plan, or a plan advised by SaveOn.

5

Julia Long
August 23, 2024

JJHCS_00004439.¹ 

*Id.*; *see* JJHCS_00258666 ( ).

JJHCS_00035922; *see also* JJHCS_00117449 ( ).

For example, JHCS_00003888 ; *see also* JJHCS_00004076; JJHCS_00004357 ( ).

J&J must respond to RFP No. 97 using SaveOn's actual definition of "Appeal Process," which referred to the process described above. Please confirm that J&J will update its responses accordingly.

SaveOn proposes that J&J run the following additional term over the files of the following custodians:

- **Custodians**: Lindsey Anderson, Spilios Asimakopoulos, John Paul Franz, Evelyn (Lynn) Hall, Brandon (Heith) Jeffcoat, John King, Jeremy Mann, Katie Mazuk, Silviya McCool, Hattie McKelvey, Adrienne Minecci, Lauren Pennington, William Robinson III, Nidhi Saxena, Heather Schoenly, Carol Scholz, Jasmeet Singh, Debbie Kenworthy, Quinton Kinne, Daphne Longbothum, William Shontz, John Hoffman, Alison Barklage, Lawrence (L.D.) Platt

- **Search Term**: (appeal* OR AskJCP OR ("Ask JCP") OR escalat*) w/50 (CAP OR CAPa OR CAPm OR "adjustment program" OR maximiz* OR accumulat* OR "benefit* investigation*") OR (divert* /3 program*))

*       *       *

---

¹ Please reproduce the documents JJHCS_00150152, JJHCS_00150292, JJHCS_00150853, JJHCS_00251326, JJHCS_00257179, all of which appear to be versions of flow charts showing the appeals process, none of which are legible.

Julia Long
August 23, 2024

We request a response by August 30, 2024. We reserve all rights and are available to meet and confer.

Best,

/s/ Hannah Miles

Hannah R. Miles
Associate

# Sills Cummis & Gross
### A Professional Corporation

**The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102-5400
Tel: 973-643-7000
Fax: 973-643-6500**

Jeffrey J. Greenbaum
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL
UNDER THE DISCOVERY CONFIDENTIALITY ORDER**

February 26, 2025

**VIA Email**

Honorable Freda L. Wolfson, U.S.D.J.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

> Re:    **Opposition to SaveOnSP's February 3, 2025 Motion to Compel**
> *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
> **Civil Action No. 22-2632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of JJHCS, we write to oppose SaveOnSP's February 3, 2025 motion to compel JJHCS to run an additional search term regarding the "CAP appeals process" over the files of multiple custodians. SaveOnSP's motion should be denied because JJHCS already ran exhaustive searches regarding every aspect of CAP, and as a result has already identified and produced thousands of documents regarding CAP appeals. The remaining scattershot documents that SaveOnSP now seeks—e.g., emails about minor "refinements" to the appeals process, or references to other proposals never implemented—are either irrelevant or so marginal that compelling their production would not be reasonable or proportional to the needs of the case.

Some background will aid the Court's consideration. SaveOnSP's motion concerns CAPm appeals, which are available to patients who believe that they have been incorrectly identified by

Honorable Freda L. Wolfson, U.S.D.J.
February 26, 2025
Page 2

JJHCS as on a maximizer.  *See, e.g.*, SaveOnSP Ex. 28.  The process works like this:  after a CAPm

appeal is initiated, JJHCS's vendor, TrialCard, will conduct a benefits investigation to review whether

available information suggests the appealing patient is, in fact, on a maximizer.  *See id.*  If it appears

the patient is indeed on a maximizer, the patient will remain in CAPm.  *Id.*; *see also* SaveOnSP Ex.

18.  If the patient is not on a maximizer, the patient would then be transitioned to either a separate

program called CAPa (for accumulator-impacted patients) or to the standard CarePath copay

assistance program (for all other patients with commercial insurance).  *See* SaveOnSP Ex. 18.

SaveOnSP would have Your Honor believe that JJHCS has produced next to nothing

concerning such CAPm appeals.  The exact opposite is true.  While the CAP appeals process is

marginal to the claims and defenses in this action, SaveOnSP has received more than ample discovery

concerning them, as evidenced by the 47 exhibits to SaveOnSP's motion.  To begin with, JJHCS has

produced records maintained by TrialCard of thousands of benefits investigations, as well as records

showing every CAPm appeal and its outcome.  To the extent SaveOnSP claims it needs records

concerning the accuracy of JJHCS's identification efforts and the extent to which patients

successfully challenged their identification as on a maximizer, SaveOnSP already has those

documents.  And JJHCS's productions go far beyond that.  They also include extensive custodial

discovery relating to CAPm appeals, which encompass everything from day-to-day adjudications of

appeals to the overall architecture of the CAPm appeals process.  JJHCS's search parameters on this

topic were broad and yielded the production of thousands of documents.  And so it is misdirection for

SaveOnSP to now complain that JJHCS "has never run a search term specifically targeted to identify

documents about CAP appeals."  Mot. at 5.  JJHCS did not need to run narrow searches because it

agreed to broad ones.

Honorable Freda L. Wolfson, U.S.D.J.
February 26, 2025
Page 3

Nothing more is warranted. SaveOnSP's proposed search would only make sense if SaveOnSP were entitled to every scrap of paper about every individual patient appeal. But Your Honor already rejected that principle. *See* Jan. 24, 2024 Tr. at 24, 31–33 (ruling, in the enforcement context, that SaveOnSP was entitled to benefit investigations and policies, but not documents about "every time [JJHCS] actually took an individual's eligibility criteria and looked at it"). And rightfully so. There are no claims against JJHCS in this case, which is about Defendants' misconduct. While SaveOnSP contends that it needs CAP documents to support its mitigation defenses, JJHCS's productions on this topic have been exhaustive. Compelling JJHCS to do even more would be far beyond what is reasonable or proportional under the circumstances of this case, especially given the marginal relevance of minutiae relating to the CAP appeals process. Worse still, the search term that SaveOnSP proposes would almost certainly hit on many documents concerning other types of appeals that are irrelevant, refuting SaveOnSP's now-routine claim that its search term proposal is "tailored" to the needs of this case. It is not, and Your Honor should deny SaveOnSP's motion.

## I.    Details About the CAPm Appeals Process Are Irrelevant

SaveOnSP claims that documents regarding the CAPm appeals process will allow it to prove that JJHCS failed to mitigate its damages, acquiesced to SaveOnSP's misconduct, and did not enforce its stated interpretation of the CarePath T&Cs. *See* Mot. at 4–5. This is a dead end. Although SaveOnSP claims that JJHCS was able to "identify patients . . . with an extremely high degree of accuracy," *id.* at 5, its own example shows that ███████████████████████████████

███████████████████████████████████████████████████ *See id.* at 3

(citing SaveOnSP Exs. 10 & 11). And those appeals only increased as CAPm-identified patients

Honorable Freda L. Wolfson, U.S.D.J.
February 26, 2025
Page 4

exhausted their copay assistance later in the calendar year.  *See* Ex. 1 (JJHCS_00259893) ( ███

███████████████████████████████████████████████████████████████████ ).

But even if it were otherwise, SaveOnSP fails to explain how the ***process*** by which JJHCS

handles CAPm appeals will shed light on JJHCS's interpretation of the CarePath T&Cs, or whether

JJHCS "acquiesced" to SaveOnSP's misconduct.  The most SaveOnSP can say is that the results of

CAPm appeals will show that JJHCS could try to identify maximizer patients and that JJHCS's

concerns about misidentifying patients was unreasonable.  *See id.*  But even accepting that premise

as true, all SaveOnSP would need to support it are the ***results*** of CAPm appeals—which, as discussed

below, JJHCS has already produced.

## II.    JJHCS Has Already Produced Voluminous Discovery Related to CAP Appeals

SaveOnSP's repeated argument that JJHCS has produced only "limited" discovery regarding

CAPm appeals, Mot. at 5, is not true.

First, JJHCS has searched for and produced TrialCard's centralized record of all CAPm

appeals and their outcomes for the relevant period.  *See* SaveOnSP Ex. 18.  This document provides

SaveOnSP with evidence concerning each and every CAPm appeal—████████████████████—

since the CAPm program began in January 2022.  SaveOnSP also has the results of thousands of

benefits investigations that TrialCard conducted as part of the appeals process to assess whether a

patient appealing their classification in the CAPm program was likely correctly classified.  *See, e.g.*,

Ex. 2 (TRIALCARD_00009752).  This gives SaveOnSP detailed information about how TrialCard

confirmed CAPm classifications and shows the type of evidence that TrialCard considered relevant

in this process.  SaveOnSP is free to make whatever arguments it deems appropriate based on those

records.

4

Honorable Freda L. Wolfson, U.S.D.J.
February 26, 2025
Page 5

Second, JJHCS has also produced its monthly "CAP Reporting" spreadsheets for the entire

relevant period.



*See, e.g.*, Ex. 3 (JJHCS_00139032) (

*Id.*  SaveOnSP is free to argue at trial that JJHCS should have set these concerns aside and

cut patients off of CarePath copay assistance funds sooner.  But the documents long in SaveOnSP's

possession provide ample background for why JJHCS took a careful approach.

Third, SaveOnSP can also assess the accuracy of CAP appeals using JJHCS's forthcoming

PAFA+ production.  *See* Feb. 12, 2025 JJHCS Opp. to SaveOnSP's Motion to Compel PAFA+ Data

at 8.  That data set includes not only the results of appeals but also the results of any algorithmic

benefits investigations and any changes to a patient's classification status (*i.e.*, "CAPa," "CAPm," or

"Standard") during the relevant period.  *See id.*

Finally, JJHCS has produced a substantial amount of custodial discovery on CAP appeals.

SaveOnSP complains that JJHCS "has never run a search term specifically targeted to identify CAP

appeals," Mot. at 5—but that is because JJHCS has run far ***broader*** CAP-related search terms over

more than 20 custodians' files.  These terms include, among others:

- CAPa OR CAPm OR "adjustment program"

- (CAPa OR CAPm OR "adjustment program") AND (SaveOnSP OR SaveOn OR "Save On SP" OR "Save OnSP" OR Save-On OR SOSP)

- CAPa OR CAPm OR "adjustment program" AND "Save On" (case sensitive)

Honorable Freda L. Wolfson, U.S.D.J.
February 26, 2025
Page 6

- (CAPa OR CAPm OR "adjustment program") AND (accumulat* OR maximiz*)

- (RIS OR RISRx) w/50 identif*

- (RIS OR RISRx) w/50 (accumulator* OR maximizer* OR CAPm OR CAPa OR "adjustment program")

- TrialCard w/25 (accumulator OR maximizer OR CAPm OR CAPa OR "adjustment program" OR EHB OR NEHB)

These broad terms were designed to sweep in all relevant CAP Program documents, including for example every document containing the words "CAPa," "CAPm," or "adjustment program" and any reference to the words "accumulator" or "maximizer"—regardless of how close those terms appear in the underlying documents. These same terms necessarily capture documents related to CAP appeals and JJHCS's efforts to identify accumulator- and maximizer-impacted patients. Indeed, a targeted search of JJHCS's existing custodial productions show that over 3,000 documents produced by JJHCS hit on the term "CAP* w/10 appeal*". And even the search term SaveOnSP demands in this motion, when run over JJHCS's *existing* productions, hits on more than 5,700 produced documents. Thus, the core documents that SaveOnSP claims to need have already been produced.

The 47 exhibits to SaveOnSP's motion confirm this point. JJHCS has produced many documents outlining the CAP appeals process, *see, e.g.*, SaveOnSP Ex. 25, as well as numerous emails showing it in action, *see, e.g.*, SaveOnSP Exs. 7–9, 28–32. These documents, and the dozens of other exhibits, bely SaveOnSP's contention that JJHCS "has not produced documents and communications sufficient to show how the CAP appeal[s] process worked." Mot. at 6.

## III.    Further Searches Regarding the CAPm Appeals Process Are Unreasonable and Disproportionate to the Needs of the Case

Perhaps recognizing that it has received a mountain of discovery on CAP appeals, SaveOnSP tries to identify supposed gaps in the record that it claims must be filled. In the end, SaveOnSP only

6

Honorable Freda L. Wolfson, U.S.D.J.
February 26, 2025
Page 7

proves that it has reached the bottom of the proverbial barrel.  For example, although SaveOnSP

claimed in its originally filed moving brief that it lacked "a copy of [an] attestation form" related to

so-called "Hardship Appeals," it later corrected that statement to acknowledge that it has in fact

received copies of that form and seeks only "records showing when and how the attestation form was

completed."  *See* Corrected Mot. at 6.  In fact, SaveOnSP has those documents, too.  SaveOnSP

Exhibit 3 describes "█████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████.  *See* SaveOnSP Ex. 3 at -4446–-4447.  And more important, none of this is

relevant.  The process that these forms relate to was never used to give additional money to a CAPm

patient (i.e. a patient on a maximizer like SaveOn), and SaveOn does not suggest otherwise.

As another example, SaveOnSP asserts that JJHCS has "not produced documents showing its

updates to and refinement of the appeals process during the relevant time period."  Mot. at 6.  Many

of the documents that SaveOnSP characterizes as JJHCS ████████████████████████████

████████████████████████████████ show nothing of the sort.  *See, e.g.*, SaveOnSP Ex.

24 (██████████████████████████████████████████████████████████████████████);

SaveOnSP Ex. 26 (████████████████████████████████████████████████████████

██████████).  But to the extent that there were "updates" and "refinements," SaveOnSP does not explain

why documents concerning them would not be captured by the existing CAP-related search terms,

which specifically include terms meant to capture ongoing communications with the two vendors that

JJHCS engaged to attempt to identify maximizer-impacted patients (TrialCard and RIS Rx).  *See,*

Honorable Freda L. Wolfson, U.S.D.J.
February 26, 2025
Page 8

*e.g.*, Ex. 1 (JJHCS_00259893) ( ███████████████████████████████

████████████████████████████████████████████████ ).

     SaveOnSP also asserts that JJHCS "has not produced documents showing whether" a proposal

to have ███████████████████████ was "implemented."  Mot. at 8–9.  In fact, the

exhibit that SaveOnSP cites itself reveals that this proposal was not implemented.  *See* SaveOnSP Ex.

38 (█████████████████████████████ ).  And regardless,

such documents—which are far afield from the claims and defenses at issue—are already captured

by existing search terms.[1]

## IV.    SaveOnSP's Search Terms Are Not "Narrowly Tailored"

     Making matters worse, SaveOnSP's proposed search term is not, as SaveOnSP argues, a term

that "is narrowly tailored to identify documents relating to the CAP appeals process."  Mot. at 11.  At

the outset, SaveOnSP's search term[2] seems designed to find every document concerning individual

patient appeals.  *See id.* at 5.  That is flatly inconsistent with Your Honor's ruling that it would be

unnecessarily burdensome to search and produce documents concerning every individual patient

record.  *See* Dkt. No. 192 at 12–13.

     Moreover, the proposed term would sweep in a great deal of irrelevant material, burdening

JJHCS without providing any material benefit to SaveOnSP.  For starters, the term includes "CAPa,"

even though SaveOnSP's motion is addressed to the CAP*m* program, not the CAP*a* program.  *See*

Mot. at 2 (seeking documents regarding "patients that believed they had been misidentified as on a

---

[1] SaveOnSP Ex. 38 is captured, for example, by JJHCS's existing search term ("CAPm" OR "CAPa"
OR "adjustment program") AND (accumulat* OR maximiz*).

[2] (appeal* OR AskJCP OR "Ask JCP" OR escalat*) w/15 (CAP OR CAPa OR CAPm OR
"adjustment program" OR maximiz* OR accumulat*)

Honorable Freda L. Wolfson, U.S.D.J.
February 26, 2025
Page 9

maximizer or SaveOn-advised plan to challenge their placement in the CAPm program"). And

indeed, the CAP*a* program is irrelevant to this case because the CAP program logic classified all

SaveOnSP patients as being maximizer patients (not accumulator patients) and thus subject to CAP*m*

only. Additionally, the term is likely to pick up a wholly unrelated appeals process called "CAPa

Level II appeals." *See* Ex. 4 (JJHCS_00193187) (███████████████████). Unlike the CAPm

appeals that SaveOnSP claims to seek, CAPa Level II appeals are not challenges to JJHCS's

determination that the patient is on an accumulator. Rather, they are appeals by patients in the CAPa

program (by definition, patients identified as not on SaveOnSP) that have reached the maximum

benefit permitted by the CarePath program and seek additional funding. *See id.*; *see also* Ex. 5

(JJHCS_00344621). CAPa Level II appeals thus do not concern patients in SaveOnSP **and** do not

concern the accuracy of JJHCS's identification of patients. CAPa Level II appeals are irrelevant to

this lawsuit and to the question of proper patient classification.

Another problem with the proposed search term: 

*See* Ex. 4 (JJHCS_00193187)

(██████████████). Running SaveOnSP's proposed search term will therefore very likely

hit on many irrelevant documents. And requiring JJHCS to sift through the documents hitting on that

term—just to locate a small handful of documents that are already addressed by JJHCS's prior

productions—is not reasonable or proportional.[3]

---

[3] SaveOnSP's proposed search parameters are all the more likely to lead to nonresponsive material
because at least one of its proposed custodians, Adrienne Minecci, had no role in the CAP appeals
process. Indeed, SaveOnSP's own exhibits concerning Minecci show her editing documents that had
nothing to do with the CAP appeals process, *see* SaveOnSP Ex. 47 (JJHCS_00052627) (████

Honorable Freda L. Wolfson, U.S.D.J.
February 26, 2025
Page 10

*     *     *

     For the foregoing reasons, the Court should deny SaveOnSP's motion.

                                   Respectfully submitted,

                                   */s/ Jeffrey J. Greenbaum*
                                   JEFFREY J. GREENBAUM

cc:  All counsel of record

---

█████████████████████████), ████████████████████████████████████, *see*
SaveOnSP Ex. 3 (JJHCS_00004434); SaveOnSP Ex. 21 (JJHCS_00158482).

Exhibits 1-5 Confidential

Filed Under Seal

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

March 10, 2025

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

Re:     ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,
         Express Scripts, Inc., and Accredo Health Group, Inc.
         No. 2:22-cv-02632 (JKS) (CLW)***

Dear Judge Wolfson:

SaveOn[1] writes in reply to J&J's opposition to SaveOn's motion to compel J&J to run a

tailored search term regarding its CAP appeals process over the files of three custodians for a two-

year time period. This appeals process permitted patients who believed they had been misidentified

as on a maximizer or SaveOn-advised plan to challenge their placement in the CAP program.

---

[1] SaveOn uses the defined terms from its opening motion.

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

## I.    The CAP Appeals Program Is Relevant

Contrary to J&J's assertions, Opp. 3-4, the CAP appeals program is relevant to, among other things, SaveOn's mitigation and acquiescence affirmative defenses and the meaning of Care-Path's Terms and Conditions ("T&Cs"). *See* Mot. 4. J&J's primary excuse for continuing to provide copay assistance to patients on SaveOn-advised plans is that "there is no easy or foolproof way for JJHCS to simply reduce the amount of assistance it provides to all patients enrolled in the SaveOn Program" because "[r]educing cost support … creates an unacceptable risk that individual patients may be misidentified and suffer from reduced costs support and consequently be unable to afford their therapy." *Id.* (citing Am. Compl. ¶¶ 174, 177). This assertion is disproved by evidence that J&J made vanishingly few misidentifications of such patients and had an appeals process that corrected the few errors it did make. *See* Mot. 2-3.

J&J cannot withhold documents about its appeals program by asserting that it was bad at identifying patients on accumulators, maximizers, and SaveOn-advised plans. Opp. 3-4. This is a merits issue and is the subject of legitimate dispute. ██████████████████████████ ████████████████████████████████████████████████ *See* Mot. 5 (citing Exs. 5, 10).[2] SaveOn is entitled to discovery into whether J&J's identifications were accurate and whether J&J knew it.

J&J's efforts to undercut the accuracy of its identifications are misleading in any event. While J&J focuses on how many appeals led to reversals, the appeals system is relevant to show how accurate it was in identifying the total population of patients on relevant plans. J&J Exhibit

---

[2] *See also* Ex. 48 at -435 (JJHCS_00342427) ( ██████████████████████████████ ████████████████████████████████████████████ ).

2

3, for example, shows that, ████████████████████████████████████

████████████████████████████████████████████████████████████

████ . J&J Ex. 3 at 12. While J&J says that ██████████████████████████

█████████████ , Opp. 5, it ignores the relevant finding—██████████████████

██████████████████ :



J&J Ex. 3 at 12. While J&J similarly asserts that Exhibit 10 shows that ████████████

████████████████████ Opp. 3 (citing Ex. 10), it ignores that its error rate for the total

population was ████████ . Mot. 3 (citing Ex. 10). And while J&J asserts that its Exhibit 1 shows

that, of the patients that filed appeals, ████████████████████████████████

Opp. 3-4, it ignores that this was a very small proportion of the total population, the ██████████

████████████████████████████████ J&J Ex. 1 at 4.[3]

---

[3] J&J Exhibit 1 shows that, of the tens of thousands of patients in the CAP program, ████████

████████████████████████████████████████████████ J&J Ex. 1 at 4,
which J&J claims to be ineligible for CarePath.
███████████████████████ *id.*—a ██████████████████████████████████
██████████████ .

3

## II.    The Requested Discovery Would Yield New Documents and Is Proportionate to the Needs of the Case

The limited non-custodial discovery that J&J has produced regarding its CAP appeals process—a single spreadsheet showing appeals and their outcomes, Opp. 1-2; Ex. 18—does not provide a full understanding of the appeals process. Noncustodial records are no substitute for the documents and communications at issue here, which would likely include important details about how J&J viewed the accuracy of its appeals process and how it changed that process over time. And even the spreadsheet that J&J produced does not include all its appeals data, Mot. 2; for example, a different spreadsheet shows additional data for each appeal that do not appear in the main spreadsheet. *Compare* Ex. 18, *with* Ex. 49 at -240 (JJHCS_00192239). 

Ex. 49 at -240, No. 441 column K , another patient informed J&J

*id* at No. 509 column H;

*id.* at No. 546 column K.[4]

The few custodial documents that J&J has produced by happenstance about the CAP appeals process are also insufficient to remedy the gap in J&J's production. *Contra* Opp. 7. For example, while J&J asserts that SaveOn has enough documents to understand "the overall architecture of the CAPm appeals process," Opp. 2, t

, not how the program

---

[4] J&J cannot credibly claim that SaveOn will be able to assess the accuracy of CAP appeals using J&J's forthcoming production of data from PAFA+. Opp. 5. J&J has not made that production (despite agreeing to do so more than three months ago, Ex. 50 (Nov. 27, 2024 Ltr.)), it has never agreed to produce all relevant information from PAFA+, such as case-and-task notes, Feb. 24, 2025 Reply Br. re. PAFA at 6, and it opposes SaveOn's motion to compel a complete production of relevant PAFA+ data.

actually operated or how it evolved over time. *See* Ex. 3 at -439 (dated March 2022). It does not

show "when and how" the attestation form was completed "in practice." *Contra* Opp. 7; *see* Mot.

6; Ex. 3 at -446-47. And, contrary to J&J's denials, Opp. 7, the documents SaveOn cited show that

the appeals process did, in fact, change over time. *See* Ex. 36 at -686 ( ███████████████████

███████████████████████████████ ); Ex. 37 at -363 ( █████████████

███████████████████████████████ ); *see also* Ex. 24 ████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████ ); Ex. 26 ( ███████████████████

███████████████████████████████████████████████

███████████████████ ); J&J Ex. 1 at 5 ( ███████████████████

███████████████████████████████████████████████ )

(emphasis removed).

     Contrary to J&J's assertions, Opp. 3, additional discovery on the CAP appeals process is

fully consistent with Your Honor's prior rulings. In the ruling that J&J cites, Your Honor granted

SaveOn discovery on "documents that reflect[ed] what [J&J's] policies were and anything that

reflect[ed] how they would go about enforcing [them]." Jan. 24, 2024 Tr. at 31:18-23. Your Honor

also held that SaveOn is entitled to enforcement records including benefit investigations and poli-

cies, but not to documents about "every time [JJHCS] actually took an individual's eligibility cri-

teria and looked at it." Opp. 3; *see* Jan. 24, 2024 Tr. at 24:6-10, 31:14-32:4. The requested discov-

ery seeks only 2,038 documents (2,314 with families) Ex. 17 at 1 (Jan. 29, 2025 Ltr.), on the pa-

tently relevant topic of whether J&J accurately identified patients as being on a maximizer, accu-

mulator, or SaveOn-advised plans. This is nothing like the hypothetical that J&J concocted at the

prior hearing that would have involved reviewing hundreds of thousands of records regarding "a host of different eligibility requirements," many of which are irrelevant. Jan. 24, 2024 Tr. at 30:17-18.

### III.    SaveOn's Search Parameters Are Narrowly Tailored

While J&J claims it has run "exhaustive searches regarding every aspect of CAP," it admits that it has not run search terms regarding CAP appeals. Opp. 1-2. Documents it has produced to date, including many cited in its Opposition, show that J&J's employees routinely refer to the appeals program with words like "Ask JCP," "appeal," and "escalation" that are not part of any existing search terms. *See* J&J Ex. 3 ███████████████████); J&J Ex. 4 (same); Ex. 28 at -774  ( ██████████████████████████████████████████████████████████████ ); Ex. 51 (JJHCS_00002625) ( █████████████████████████████████████ ); Ex. 52 (JJHCS_00002653) ( █████████████████████████████ ); Ex. 44 ( ████████████████████████████ ); Ex. 53 (JJHCS_00149671) ( ███████████████████████████████████████████████████ ); Ex. 54 at -495 (JJHCS_00231493) ( █████████████████████████████████ █████████████████████ ). None of the terms to which J&J points would identify references to "CAP appeals" or "Ask JCP."

SaveOn proposes very limited search parameters here. SaveOn requests that J&J run the term for only three custodians who were particularly involved in the CAP appeals process, for a limited two-year time period—from four months before the start of the CAP program until the end of the discovery period. Mot. 11. J&J does not contest that the proposed time period is appropriate or that Lauren Pennington and William Robinson are appropriate custodians. In a footnote, J&J

asserts that Adrienne Minecci had "no role" in the CAP appeals process, Opp. 9, n. 3, █████████

████████████████████████████████████████████████████

████████████████████, Ex. 45 at -963; *see also* Ex. 21 ( ███████

█████████████████); Ex. 46 at 2 ( ██████████████████

███████████████).

SaveOn also proposes a narrowly tailored search term with significantly limited parameters

to target relevant documents regarding CAP appeals. It includes a "within 15" connector, requiring

a very close connection between the relevant terms.[5] J&J says that the word "CAPa" will pick up

an unrelated appeals process called CAPa Level II, Opp. 9— ████████████████████

████████████████████████████████████████████████████

███████████████. J&J Ex. 4 at 3, 4; *see also* Ex. 55 at

269-270 (JJHCS_00244267) ( ██████████████████████████

██████████████████); Ex. 3 at -435 ( ██████████████████

███████████████████). J&J also objects to the in-

clusion of the term "Ask JCP," which it says encompasses more than appeals, Opp. 9-10—but it

does not contest that "Ask JCP" did encompass CAP appeals, and running this term over the files

of custodians with substantial involvement in the CAP program makes it highly likely that the term

will identify such appeals. And J&J's own exhibits show that ██████████████████████

████████████████████████████████████" J&J Ex. 4 at 1.

SaveOn appreciates Your Honor's attention to this matter.

---

[5] (appeal* OR AskJCP OR "Ask JCP" OR escalat*) **w/15** (CAP OR CAPa OR CAPm OR "ad-
justment program" OR maximiz* OR accumulat*)

Respectfully submitted,


_/s/ E. Evans Wohlforth, Jr._
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

Philippe Z. Selendy (admitted _pro hac vice_)
Andrew R. Dunlap (admitted _pro hac vice_)
Meredith Nelson (admitted _pro hac vice_)
Elizabeth H. Snow (admitted _pro hac vice_)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

8

Exhibits 48-49 Confidential

Filed Under Seal

# Exhibit 50



www.pbwt.com

November 27, 2024

Julia Long
(212) 336-2878

**<u>By Email</u>**

Elizabeth Snow, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

> **Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC***,
> <u>**Case No. 2:22-cv-02632 (JKS) (CLW)**</u>

Dear Elizabeth:

We write in response to SaveOnSP's October 22, 2024 and November 21, 2024 letters and further to our letters of August 19, 2024 and October 2, 2024 regarding PAFA+ and SaveOnSP's related 12th Set of Requests for Production of Documents ("RFPs").

## I.    JJHCS's Objections to SaveOnSP's 12th Set of RFPs

In your November 21, 2024 letter, you raise several questions concerning JJHCS's October 23, 2024 responses and objections to SaveOnSP's 12th Set of RFPs.[1]  JJHCS objected to RFP No. 103[2] and RFP No. 104[3] on relevance and burden grounds.

---

[1] In your letter, you quote to SaveOnSP's 12th Set of RFPs but refer to those individual requests as "RFP No. 102" and "RFP No. 103."  We assume this is a typographical error.  Note that, on September 24, 2024, SaveOnSP served a corrected 12th Set of RFPs which are numbered "RFP No. 103" and "RFP No. 104."

[2] RFP No. 103 seeks "Documents sufficient to Identify all individuals at Janssen, JJHCS or any JJHCS Hub Entity who have had access to Identified Patient Information, including but not limited to PAFA+ Data, regarding whether a person enrolled in CarePath was or could be a member of an Accumulator or Maximizer health plan, or a health plan advised by SaveOnSP."

[3] RFP No. 104 seeks "Documents sufficient to Identify all individuals at Janssen, JJHCS or any JJHCS Hub Entity who have had access to De-Identified Patient Information or De-Identified Claim Information, including but not limited to PAFA+ Data, regarding whether a person enrolled in CarePath was or could be a member of an Accumulator or Maximizer health plan, or a health plan advised by SaveOnSP."

---

Elizabeth Snow, Esq.
November 27, 2024
Page 2

You claim that SaveOnSP is entitled to the requested information because "J&J's ability to identify patients on accumulators, maximizers, or SaveOn-advised plans—including the personnel able to make those identifications—is central to SaveOn's mitigation defense." Nov. 21, 2024 Ltr. from E. Snow to J. Long at 2. Not so. As detailed below, JJHCS has produced scores of data related to JJHCS's efforts to identify SaveOnSP patients—and, at SaveOnSP's insistence, continues to review thousands of new custodial documents related to the same requests. *E.g.*, Oct. 23, 2024 Ltr. from J. Long to H. Miles (search terms related to TrialCard and RIS RX); Nov. 21, 2024 Ltr. from I. Eppler to H. Miles (TrialCard search term). SaveOnSP has access to extensive details on who was involved in those efforts and had relevant information. But the identities of *who* at any J&J entity or any JJHCS Hub Entity (including TrialCard) had access to patient data in the abstract (including in anonymized form) is not relevant to SaveOnSP's claims and defenses.

JJHCS also objects on burden grounds. As you know, SaveOnSP has not limited its request to any particular J&J entity, JJHCS Hub Entity, or any particular time period. As we understand your RFPs, JJHCS would effectively be required to ask various vendors for a listing of their employees (including to reflect any personnel changes) over a seven-year period. But the name of every call center representative at TrialCard, for example, will not advance SaveOnSP's mitigation defense, nor is the burden in compiling that data proportional to the needs of the case.

## II.    Benefits Investigations

In your October 22, 2024 letter, you claim that JJHCS should produce data from PAFA+ related to benefits investigations performed by TrialCard and RIS RX. We addressed nearly verbatim arguments in our October 2, 2024 letter and do so again here.

*First*, you claim that TrialCard's production of benefits investigations insufficiently covers PAFA+ because "[JJHCS] (or its vendors) has not produced BIs for drugs other than Stelara and Tremfya" and SaveOnSP apparently seeks benefits investigations as to other drugs. Oct. 22, 2024 Ltr. from E. Snow to J. Long at 1. As we have repeatedly explained, "the vast majority of benefits investigations" that TrialCard conducted are not relevant to the enforcement of the "other offer" provision. *See* Dkt. No. 163 at 1. They relate to irrelevant issues like government coverage. The only exception is that, beginning "[i]n January 2022, . . . TrialCard . . . began evaluating as part of a separate benefits investigation process whether patients taking either of two Janssen drugs (Stelara and Tremfya) were concurrently enrolled in an accumulator or maximizer program (such as SaveOnSP)." *Id.* In your latest letter, you claim that, "at a minimum," TrialCard's production is deficient because it excludes CarePath patients on "Erleada and PAH drugs Opsumit, Uptravi, and Tracleer as being on accumulators, maximizers or SaveOn-advised plans." Oct. 22, 2024 Ltr. from E. Snow to J. Long at 2 (citing JJHCS_00122838 and JJHCS_00164273). Neither document supports your claim. ████████████████████████████████████████████████████████████████████████████████████████████████

JJHCS_00164271. ████████████████████████████  JJHCS_00122838, ████████████████████████████████████████████████████████████████████████████████████████████████

Elizabeth Snow, Esq.
November 27, 2024
Page 3



_Second_, you claim that TrialCard's benefits investigations are incomplete because
JJHCS_00139026 ███████████████████████████████████████████████

███████████████ Again, not so. JJHCS refers SaveOnSP to its productions for an overview of
TrialCard's identification process. _E.g._, JJHCS_00244610 ( ███████████████████

███████████████ ). Regardless, this is not a reason to produce from PAFA+ (which, again, is
viewable version of TrialCard's Salesforce database). Nevertheless, JJHCS has undertaken a
reasonable investigation and will produce "final Patient Segmentation Decision for each patient.
identified as being on (or likely being on) an accumulator, maximizer, or SaveOn-advised plan."[4]
Oct. 22, 2024 Ltr. from E. Snow to J. Long at 2.

_Finally_, you claim that "[JJHCS's] recent production of BIs performed by RIS
Rx . . . is similarly deficient." Oct. 22, 2024 Ltr. from E. Snow to J. Long at 2 (citing RISRx.0045).
Your colleague, Matthew Nussbaum, wrote to us under separate cover raising identical complaints
concerning RIS RX's production, _see_ Nov. 1, 2024 Ltr. from M. Nussbaum to J. Long, and we
responded on November 12, 2024, _see_ Nov. 12, 2024 Ltr. from J. Long to M. Nussbaum.

## III.    Case and Task Notes

In your October 22, 2024 letter, you claim that JJHCS must produce records from
PAFA+ because TrialCard's production of "Case-and-Task Notes" does not include "CAP" related
search terms. _See_ Oct. 22, 2024 Ltr. from E. Snow to J. Long at 3-4. You claim that it is
appropriate to revisit this issue—which the parties resolved in May 2023—because JJHCS "did
not advise SaveOn of the existence of the CAP program" until after the parties agreed on search
parameters for call notes. _Id._ We disagree with your characterization of the parties' negotiations.
Nonetheless, even under your retelling, SaveOnSP has had over a year to raise this purported
deficiency and did not do so until November 26, 2024, when your colleague, Hannah Miles, wrote
under separate cover to request that JJHCS produce these additional records through its vendor
TrialCard. _See_ Nov. 26, 2024 Ltr. from H. Miles to J. Chefitz. We will respond to SaveOnSP's
belated request under separate cover.

---

[4] SaveOnSP defines "Patient Segmentation Decision" as "J&J's choice of 'Program Type' in
which to put each patient: CAPa, CAPm, Standard, or Not Enrolled." Sept. 23, 2024 Ltr. from E.
Snow to J. Long at 2 n.2.

Elizabeth Snow, Esq.
November 27, 2024
Page 4

Very truly yours,

*/s/ Julia Long*
Julia Long

Exhibits 51-55 Confidential

Filed Under Seal