# EXHIBIT B

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

February 3, 2024

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

   Re:   *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC, Express Scripts, Inc., and Accredo Health Group, Inc.*
         *No. 2:22-cv-02632 (JKS) (CLW)*

Dear Judge Wolfson:

Defendant Save On SP, LLC ("SaveOn") moves to compel Johnson & Johnson Health Care Systems Inc. (with its affiliates, "J&J") to search for and produce: (1) the Master Services Agreement ("MSA") between J&J and Xcenda, LLC ("Xcenda") and/or AmerisourceBergen Corp. ("AmerisourceBergen"), the entities that administer its Field Reimbursement and Access Specialists ("FRAS") program; and (2) documents sufficient to show J&J's relationship with Xcenda and/or AmerisourceBergen regarding the FRAS, including Work Orders, Change Orders, Statements of Work, Rules of Engagement, and other relevant contracts and agreements, in response to SaveOn's RFP Nos. 107 and 108.

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | **rc.com**

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                          Page 2

The FRAS are individuals who educate healthcare providers and patients about CarePath, including the CAP program, and respond to patient concerns, including from patients on SaveOn-advised plans.[1] They are, therefore, J&J's public-facing representatives on these issues and topics. To understand J&J's degree of control over and responsibility for the actions and statements of its FRAS, SaveOn seeks a limited set of documents that will show the relationship between them.

**BACKGROUND**

The FRAS serve as J&J's ███████████████████████ for CarePath communications with healthcare providers, including on CAP-related issues. Ex. 3 at -.026 (JJHCS_00139982) (generally on CarePath); Ex.4 at -664 (JJHCS_00002662) (CAP); *see* Ex. 5 (JJHCS_00158284) (████████████████████████████████████ ███████████████████████████████).

The FRAS also sometimes spoke with patients, assisting with affordability issues, including concerns about the CAP program. *See, e.g.*, Ex. 4 at -664 (JJHCS_00002662) (████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████); Ex. 1 at -534 (JJHCS_00300505) (███████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████); Ex. 6 at -.021



---

[1] J&J's FRAS work for Xcenda and/or AmerisourceBergen. *See* Ex. 1 at -513 (JJHCS_00300505) (████████████████████████████████████████████████████ Ex. 2 at -626 (JJHCS_00002625) (███████████████████████████████████ ████████████████).

Hon. Freda L. Wolfson                                                                    Page 3

(JJHCS_00329189) (███████████████████████████████████████████
███████████████████████).

 J&J extensively trained the FRAS on topics including accumulators, maximizers, and SaveOn, to ensure that they accurately conveyed J&J's positions to providers and patients. *See* Ex. 7 at -150.024-25, -150.027-28, -150.030-31, -150.059-62, -150.071 (JJHCS_00173148) (███████████████████████████████████████████████████████████); Ex. 8 at -133 (JJHCS_00003131) (███████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████) (emphasis omitted).

 As part of this training, J&J instructed the FRAS on how CarePath's terms and conditions ("T&Cs") apply to patients on SaveOn-advised plans. In April 2023, for example, J&J told the FRAS that, for patients on maximizers and SaveOn-advised plans, █████████████████████ ███████████████████████████ Ex. 7 at -150.054 (JJHCS_00173148)—but J&J did ***not*** say that such patients were ineligible for CarePath. The FRAS, on J&J's behalf, ████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████ Ex. 9 at -980 (JJHCS_00158977).

 On J&J's behalf, t███████████████████████████████████████. *See* Ex. 10 at -599-601 (JJHCS_00291599) (███████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████

3

Hon. Freda L. Wolfson                                                                 Page 4



; Ex. 11 at -860 (JJHCS_00182856) (███████████████████████); Ex. 12 at -853, 855.001 (JJHCS_00181853) (████████████████); Ex. 13 at -961 (JJHCS_00182956) (███████████████████████████████████████).

The FRAS also assisted J&J with the implementation of the CAP program—first, by identifying patients on accumulators, maximizers, and SaveOn-advised plans, Ex. 14 at -103-04 (JJHCS_00351098); *see also* Ex. 15 at -951-52 (JJHCS_00272950) (████████████████████████████████████████████████, and second, by appealing J&J's identifications on the patients' behalf at their request, Ex. 16 at -572 (JJHCS_00259571) (s████████████████████████████████████); *see also* Ex. 17 at -860 (JJHCS_00272860) ("████████████████████████████████████████.

The FRAS also compiled feedback on the CAP program from healthcare providers and patients, Ex. 18 at -766 (JJHCS_00333765) (████████████████████████████████), and transmitted those concerns to J&J employees, *see, e.g.*, Ex. 19 at -366-67 (JJHCS_00291365) (███████████████████████████████); Ex. 2 at -626 (JJHCS_00002625) (██████████████████

Hon. Freda L. Wolfson                                                                    Page 5

███████████████████████ ); Ex. 20 at -326 (JJHCS_00231322) ( ████████████

████████████████████████████████████████████████████████████████████

██████████████████████████ ).

SaveOn served Request Nos. 107 and 108 to learn about the relationship between the FRAS and J&J. In this motion, SaveOn seeks only the MSAs, and the relevant contracts, agreements, and rules of engagement, between J&J and Xcenda and/or AmerisourceBergen. Ex. 21 at 10 (SaveOn's Fourteenth Requests for Production).

J&J refused to produce the MSAs. *See* Ex. 22 at 7 (J&J's Resps. & Objs. to SaveOn's 14th RFPs). It offered to "investigate whether there are '[d]ocuments sufficient to show the relationship between JJHCS and its FRAS,'" Ex. 23 at 3 (Jan. 23, 2025 Ltr.), said it would not produce work orders, and did not say what it would produce, Ex. 24 (Jan. 31, 2025 Email). The parties have met and conferred and are at impasse.

## ARGUMENT

### I.    Contracts Regarding the FRAS Are Relevant

The FRAS do work relevant to this case, as Your Honor recognized in adding Mitchell Akright as a custodian, Jan. 15, 2025 Tr. at 110:15-111:1 (highlighting that Akright "interacted with [the FRAS] on proper messaging" and that he had "some very, very relevant information"), and ordering the parties to confer about a search term related to his training and messaging for the FRAS, *id.* at 116:15-21.

Even when the FRAS knew that patients were on accumulators or maximizers, they helped those patients enroll or stay in CarePath, *see* Ex. 14 at -099-105 (JJHCS_00351098), and even directed some of them to call SaveOn to ensure that they qualified for the plan benefit that SaveOn administers. *See, e.g.*, Ex. 12 at -855.001 (JJHCS_00181853); Ex. 25 at -573-75

(JJHCS_00183573). This is strong evidence that the FRAS did not understand CarePath's T&Cs to bar patients on SaveOn-advised plans. *Contra* Am. Compl. at ¶¶ 8, 23.

J&J has produced documents showing that . *See, e.g.*, Ex. 1 at -513 (JJHCS_00300505) ("                                                                    (emphasis added)); Ex. 3 at -.013 (JJHCS_00139982) (                                                                    (emphases added)). But SaveOn also needs the contracts and related agreements that show J&J's relationship with Xcenda and/or AmerisourceBergen to show J&J's authority to direct the FRAS to identify themselves this way and to make these statements.

### A.    J&J's MSA(s) with Xcenda and/or AmerisourceBergen Governs its Legal Relationship with its FRAS

As Your Honor recognized with respect to TrialCard, *see* Dkt. 306 at 10, an MSA is the best document to understand the legal relationship between J&J and one of its vendors, including the scope of authority of the vendor, and the degree of control that J&J exercises over its work. J&J's MSAs with other vendors, including those with RIS RX and TrialCard,                                                                    " Ex. 26 at -017 (RISRX0001); Ex. 27 at -288 (JJHCS_00011271), define the scope of the vendor's services, *see* Ex. 26 at -001 (RISRX0001); Ex. 27 at -272 (JJHCS_00011271), establish standard operating procedures for the vendor to follow, Ex. 26 at -002 (RISRX0001); Ex. 27 at -273 (JJHCS_00011271), and detail the parties' legal relationship, Ex. 26 at -013 (RISRX0001); Ex. 27 at -286 (JJHCS_00011271).

J&J's MSAs with Xcenda and/or AmerisourceBergen are very likely to similarly define the parties' legal relationship regarding the FRAS. J&J does not deny that it has MSAs with these entities regarding the FRAS, and it has produced documents referring to such MSAs, *see* Ex. 1 at

Hon. Freda L. Wolfson                                                                    Page 7

-513 (JJHCS_00300505) (█████████████████████████████████████████████

███████████████████████████████████████████); Ex. 28 at -737

(JJHCS_00268737) (██████████████████████████████████████████

███████████████████████. J&J should produce the MSAs themselves.

### B.    Other Contracts Further Define the FRAS's Responsibilities and Authority

Agreements that parties enter pursuant to an MSA—such as work orders, statements of

work, and change orders—further define the contours of their relationship, as Your Honor recog-

nized with respect to TrialCard. *See* Dkt. 192 at 28 (ordering the addition of Scott White as a

custodian, in part based on a TrialCard work order); Dkt. 305 at 3-4 (ordering addition of a search

term on TrialCard's statements of work).

The work orders, statements of work, and related contracts that J&J has produced for Trial-

Card and RIS Rx provide a host of relevant information about these entities' work and responsi-

bilities. *See, e.g.*, Ex. 29 at -646 (JJHCS_00035637) (███████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████); Ex. 30 at -942 (JJHCS_00166932) (█████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████).

It is highly likely that similar agreements relating to the FRAS will show additional legal

and practical details of J&J's relationship with its FRAS, including (1) J&J's instructions and di-

rectives to Xcenda and/or AmerisourceBergen; (2) J&J's degree of control and oversight over the

FRAS; and (3) the extent of autonomy that the FRAS exercised to act on J&J's behalf. *See, e.g.*,

Ex. 1 at -535 (JJHCS_00300505) (███████████████████████████████████████████

Hon. Freda L. Wolfson                                                                           Page 8

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████).

J&J should produce all work orders, statements of work, and change orders regarding the FRAS.

J&J should also produce all Field Reimbursement Rules of Engagement ("ROEs"), includ-

ing their appendices, regarding the FRAS and the Field Reimbursement Managers.[2] J&J's Stand-

ard Operating Policies & Procedures Guide provides that ████████████████████████

████████████████████████████████████████████████████████████

██████). Ex. 31 at -177 (JJHCS_00131027). The one ROE that J&J has produced governs the

work of the Field Reimbursement Managers, the FRAS's managerial counterparts; it provides that:

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Ex. 1 at -524

(JJHCS_00300505). It defines the scope of authorized patient interactions, *id.* at -540-42, provides

examples of appropriate and inappropriate topics of discussion with patients, *id.* at -532-33, and

details J&J's corresponding oversight roles and responsibilities, *id.* at -526-27. Yet J&J withholds

the ROEs regarding the FRAS themselves.

ROEs regarding the FRAS are particularly important because J&J apparently gave the

FRAS some authority to resolve various problems on the spot when communicating with patients.

---

[2] The appendices highlight the responsibilities unique to individual teams—organized by "thera-
peutic areas"—of FRAS. Ex. 1 at -524 (JJHCS_00300505); *see id.* at -515 (t███████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████). The single ROE that J&J has produced
has only one appendix, for the FRAS that worked for its Immunology division. *See id.* at -513.
Your Honor should compel J&J to produce the appendices for all divisions that made drugs at
issue in this litigation: "Oncology"; "Pulmonary Arterial Hypertension"; and "Neuroscience—
Ponvory." *Id.* at -545.

*See* Ex. 32 at -499 (JJHCS_00291495) 

); Ex. 33 at -813 (JJHCS_00035812) (

). These solutions apparently included helping patients on maximizers and SaveOn-advised plans enroll in CarePath. *See* Ex. 34 at -.005 (JJHCS_00130977)

). J&J has no basis to withhold ROEs that likely will reveal the nature of the FRAS's involvement with CarePath.

## II.    SaveOn's Request Is Limited

SaveOn seeks a limited, well-defined set of highly relevant contractual documents, which are almost certainly stored in non-custodial repositories. This request is easily proportional to the issues and scope of this litigation. J&J has already produced its MSAs for nearly a dozen other vendors—including RIS Rx, TrialCard, Lash Group, Avalere Health, Archbow Consulting, Thomas J. Paul, IBM, Keen 360, IQVIA, Deloitte, and Pembroke Consulting—and has produced work orders, statements of work, and change orders for vendors including TrialCard, Ex. 35 at -805 (JJHCS_00001803), Lash Group, Ex. 36 (JJHCS_00242671), and RIS Rx, Ex. 37 at -306 (JJHCS_00190304). J&J offers no good reason why it cannot do the same for the FRAS.

SaveOn appreciates Your Honor's attention to this matter.

Respectfully submitted,

/s/ *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999

Hon. Freda L. Wolfson                                                                                    Page 10

ewohlforth@rc.com

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# Exhibits 1-20 Confidential

# Filed Under Seal

# Exhibit 21

E. Evans Wohlforth, Jr.
Sabrina M. Galli
ROBINSON & COLE
666 3rd Avenue #20
New York, NY 10174
212-451-2954
ewolforth@rc.com
sgalli@rc.com

Philippe Z. Selendy
Andrew R. Dunlap
Meredith Nelson
Elizabeth Snow
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JMV) (CLW) <br><br> **DEFENDANT'S FOURTEENTH REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

To:    Jeffrey J. Greenbaum, Esq.
       SILLS CUMMIS & GROSS, P.C.
       One Riverfront Plaza
       Newark, NJ 07102
       973-643-7000

       Adeel A. Mangi, Esq.
       Harry Sandick, Esq.
       George LoBiondo, Esq.
       PATTERSON BELKNAP WEBB
       & TYLER LLP
       1133 Avenue of the Americas
       New York, NY

       *Attorneys for Plaintiff Johnson & Johnson
       Health Care Systems Inc.*

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26 and 34,

Defendant Save On SP, LLC ("SaveOnSP"), requests Plaintiff Johnson & Johnson Health Care

Systems Inc. ("JJHCS"), to produce for inspection and copying the documents listed in these Re-

quests, to the office of the undersigned within 30 days of being served or at a time and place mu-

tually agreed by the parties and ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that this demand for production of documents

shall be deemed continuing in nature so as to require supplemental responses if Plaintiff or Plain-

tiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's

responses are served.

Dated:  November 5, 2024         By:  */s/*   _E. Evans Wohlforth, Jr._
                                         E. Evans Wohlforth, Jr.
                                         Sabrina M. Galli
                                         ROBINSON & COLE
                                         666 3rd Avenue #20
                                         New York, NY 10174
                                         212-451-2954
                                         ewolforth@rc.com
                                         sgalli@rc.com

                                         Philippe Z. Selendy
                                         Andrew R. Dunlap
                                         Meredith Nelson
                                         Elizabeth Snow
                                         SELENDY GAY PLLC
                                         1290 Avenue of the Americas
                                         New York, NY 10104
                                         212-390-9000
                                         pselendy@selendygay.com
                                         adunlap@selendygay.com
                                         mnelson@selendygay.com
                                         esnow@selendygay.com

                                         *Attorneys for Defendant Save On SP, LLC*

## DEFINITIONS

The following definitions apply to these Requests:

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses.

3.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.      "Action" means this litigation styled as "*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*" currently pending in the United States District Court for the District of New Jersey, No. 22-2632 (JMV) (CLW).

6.      "All," "any," and "each" mean any and all.

7.      "And" and "or" are construed both conjunctively and disjunctively.

8.      "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

9.      "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

4

10.    "<u>Copay Assistance</u>" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

11.    "<u>Document</u>" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

12.    "<u>Identify</u>" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

13.    "<u>Including</u>" means including but not limited to.

14.    "<u>Janssen</u>" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

15.    "<u>Janssen Drug</u>" means any Specialty Drug manufactured or sold by Janssen from any time for which patients may receive copay assistance, including BALVERSA, DARZALEX, DARZALEX FASPRO, EDURANT, ERLEADA, IMBRUVICA, INTELENCE, OPSUMIT, PONVORY, PREZCOBIX, REMICADE, RYBREVANT, SIMPONI, SIMPONI ARIA,

STELARA, SYMTUZA, TRACLEER, TREMFYA, UPTRAVI, VENTAVIS, and ZYTIGA, as well as any other specialty drugs that JJHCS asserts are at issue in this Action.

16.    "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Johnson & Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and Janssen Research & Development LLC. "JJHCS" also includes TrialCard to the extent that any J&J entity has legal control over its documents relating to its work for any J&J entity pursuant to a Master Services Agreement, per the Special Master's order of May 28, 2023; and any other entity to the extent that any J&J entity has legal control over its documents relating to its work for any J&J entity pursuant a contract containing provisions similar to those in the Master Service Agreement discussing the May 28 order.

17.    "JJHCS Hub Entity" means any entity retained or utilized by JJHCS to administer, in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of such an entity.

18.    "Lash Group" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents,

representatives, directors, officers, employees, committees, attorneys, accountants, and all persons

or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

19.     "Person" means a natural person or legal entity including any business or govern-

mental entity or association.

20.     "Regarding" means (directly or indirectly, partially or wholly) about, alluding to,

assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to,

considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidenc-

ing, identifying, in connection with, indicating, in respect of, involving, memorializing, mention-

ing, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to, re-

porting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touch-

ing upon a subject, or having been created, generated, or maintained in connection with or as a

result of that subject.

21.     "Request" means any of these Requests for Production.

22.     "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors

in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, represent-

atives, directors, officers, employees, committees, attorneys, accountants, and all persons or enti-

ties acting or purporting to act on behalf or under the control of Save On SP, LLC.

23.     "TrialCard" means TrialCard Inc. and any and all predecessors and successors in

interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representa-

tives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities

acting or purporting to act on behalf or under the control of TrialCard Inc.

24.     "You" and "Your" means JJHCS.

7

## **INSTRUCTIONS**

1.      These Requests seek production of material in Your possession, custody, or control.

Fed. R. Civ. P. 34(a)(1).

2.      These Requests seek production of nonprivileged information. Fed. R. Civ.

P. 26(b)(1).

3.      These Requests seek production of material that is proportional to the needs of this

case. Fed. R. Civ. P. 26(b)(1).

4.      For each Request, either state that you will produce the requested material or state

with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P.

34(b)(2)(C).

5.      If you object to all or part of a Request, state whether you are withholding any

responsive material based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

6.      If you object to part of a Request, specify the part and state that you will produce

documents responsive to the rest. Fed. R. Civ. P. 34(b)(2)(C).

7.      If you withhold responsive information by claiming that the information is privi-

leged or subject to protection as trial-preparation material, expressly make the claim and describe

the nature of the information privileged or protected in a manner that, without revealing infor-

mation itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P.

26(b)(5)(A)(ii), including by indicating whether any document exists regarding the information,

requested and stating, to the extent the privilege is being asserted in connection with a claim or

defense governed by the state law, the state privilege rule being invoked, Local Rule 34.1.

8.      If a document responsive to a Request was once in your possession, custody, or

control and has since been lost or destroyed, provide (a) a detailed description of the document;

(b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the

8

date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction the reason for its destruction, the name of the person who requested or authorized its decision, and the name of the person who destroyed it.

9.       Produce documents as they are kept in the usual course of business. Fed. R. Civ. P. 34(b)(E)(i). For each document, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

10.      Produce electronically stored information in the form and manner required by any agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

11.      Produce each document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

12.      Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notation, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

13.      These Requests are deemed continuing. If after responding to any Request you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).

## **TIME PERIOD**

Unless otherwise specified, these Requests relate to the time period from and including April 1, 2016 through the present.

## REQUESTS

107.    All final Master Service Agreements (MSAs) relating to the relationship between JJHCS and its Field Based Reimbursement and Access Specialists (FRAS), including with AmerisourceBergen and Xcenda.

108.    Documents sufficient to show the relationship between JJHCS and its FRAS, including its Work Orders (WOs), Statements of Work (SOWs), and Change Orders (COs) with AmerisourceBergen and Xcenda.

# Exhibit 22

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036

*Attorneys for Plaintiff Johnson & Johnson Health Care
Systems Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, EXPRESS SCRIPTS, INC., AND ACCREDO HEALTH GROUP, INC., <br><br> Defendants. | Civil Action No. 22-2632 (JKS) (CLW) <br><br> **PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT SAVE ON SP, LLC'S FOURTEENTH REQUEST FOR PRODUCTION OF DOCUMENTS** |

15395428

# GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the General Objections below into its specific objections to each Request, whether or not each such General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing. It reserves the right to supplement, amend, modify, or correct its responses under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this Action. The following responses and objections are based upon information known at this time.

1.      JJHCS objects to the Requests to the extent that they seek documents or information protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, the First Amendment privilege, the Federal Rules of Civil Procedure, the Local Rules of the Court, and relevant case law. The inadvertent production by JJHCS of information, documents, materials, or things covered by any privilege or doctrine shall not constitute a waiver of any applicable privilege or doctrine, including but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.      JJHCS objects to the Requests to the extent that they seek documents or information that are not relevant to a claim or defense or to the subject matter of this litigation. Any response JJHCS makes to any Request shall not be deemed an admission that the response, information, document, or thing produced is relevant to a claim or defense or to the subject matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence, is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek documents or information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9.    JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10.    JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11.    JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12.    JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" documents where a subset of documents would be sufficient to provide the relevant information.

13.    JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1.    JJHCS objects to the definition of the term "Identify" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes a person's "present or last known address" and "the present or last known place of employment," or "with respect to documents . . . the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s)."

2.    JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS beyond the scope of the Court's July 15, 2024 Letter Order. JJHCS further objects to the definition of

3

the term as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than JJHCS, including Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

3.      JJHCS objects to the definition of the term "Janssen Drug" as irrelevant to the extent it purports to include drugs that are not covered by CarePath or otherwise implicated in SaveOnSP's scheme to misuse copay assistance funds.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any Specialty Drug manufactured or sold by Janssen from any time for which patients may receive copay assistance," even if the drug is not covered by CarePath or otherwise implicated in SaveOnSP's scheme to misuse copay assistance funds.

4.      JJHCS objects to the definition of the term "JJHCS" to the extent it purports to include attorneys and accountants whose documents and communications may be outside of JJHCS's possession, custody, and control.  JJHCS further objects to the definition of the term as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than JJHCS, including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical,

15395428

Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc.,

Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen

Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen

BioPharma LLC, Janssen Research & Development LLC, and TrialCard.  JJHCS further objects

to this definition of "JJHCS" to the extent it purports to include "TrialCard . . . and any other

entity to the extent that any J&J entity has legal control over [their] documents."

     5.     JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and as

irrelevant to the extent it purports to include entities other than those responsible for administering

CarePath during the relevant Time Period.  JJHCS further objects to the definition as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it includes "any

and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates,

divisions or departments, agents, representatives, directors, officers, employees, committees,

attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those

entities.  JJHCS further objects on the ground that the phrase "administer, in whole or in part,

CarePath" is vague and ambiguous.  JJHCS further objects to the extent the term is used to seek

documents and communications in the possession of entities other than JJHCS.

     6.     JJHCS objects to the definition of the term "CarePath" to the extent the term is

used to seek documents and communications in the possession of entities other than JJHCS.

JJHCS further objects to this definition to the extent that the definition of the term "CarePath" to

the extent it purports to include the term "Janssen" for the reasons stated in JJHCS's Objections

to Definitions.

     7.     JJHCS objects to the definition of the term "Lash Group" to the extent the term is

used to seek documents and communications in the possession of entities other than JJHCS.

15395428

JJHCS further objects to the definition of the term as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc."

8.      JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc."  JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS.

## OBJECTIONS TO THE TIME PERIOD

1.      JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome, and not relevant to the subject matter of this Action to the extent they call for documents from after November 7, 2023. Unless otherwise noted, JJHCS will only provide information from April 1, 2016 through November 7, 2023 (the "Time Period").

6

## SPECIFIC RESPONSES AND OBJECTIONS

**Request No. 107**

All final Master Service Agreements (MSAs) relating to the relationship between JJHCS and its Field Based Reimbursement and Access Specialists (FRAS), including with AmerisourceBergen and Xcenda.

**Response to Request No. 107**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action because it seeks information unrelated to SaveOnSP and this lawsuit. JJHCS further objects to this Request to the extent it uses the terms "JJHCS" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it uses the terms "Field-Based Reimbursement Specialists ('FRAS')," "Amerisource Bergen," and "Xcenda" which are not included in SaveOnSP's Definitions. JJHCS further objects to this Request to the extent that it calls for documents and communications in the possession of non-JJHCS entities in the Johnson & Johnson family of companies and are not within the scope of the Court's July 15, 2024 Letter Order. JJHCS further objects to this Request as duplicative of Request No. 92, and JJHCS incorporates by reference its responses to that Request. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

Subject to the foregoing objections, to the extent that documents responsive to this Request are also responsive to Request No. 8, JJHCS has already agreed to produce, subject to prior objections, "all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period." *See* JJHCS's Responses and Objections to Defendant's First Request for Production of Documents. JJHCS will not otherwise search for or produce additional documents responsive to this Request.

7

15395428

**Request No. 108**

Documents sufficient to show the relationship between JJHCS and its FRAS, including its Work Orders (WOs), Statements of Work (SOWs), and Change Orders (COs) with AmerisourceBergen and Xcenda.

**Response to Request No. 108**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. JJHCS further objects to this Request as irrelevant to the extent it seeks documents and communications related to "FRAS [*i.e.*, Field Based Reimbursement and Access Specialists]." JJHCS further objects to this Request as irrelevant to any claim or defense in this Action because it seeks information unrelated to SaveOnSP and this lawsuit. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege, including, but not limited to, the attorney-client privilege and the work-product doctrine. JJHCS further objects to this Request to the extent it uses the terms "JJHCS" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it uses the terms "FRAS," "AmerisourceBergen," and "Xcenda" which are not included in SaveOnSP's Definitions. JJHCS further objects to this Request to the extent that it calls for documents and communications in the possession of non-JJHCS entities in the Johnson & Johnson family of companies and are not within the scope of the Court's July 15, 2024 Letter Order. JJHCS further objects to this Request as duplicative of Request No. 93, and JJHCS incorporates by reference its responses to that Request. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.

JJHCS will not search for or produce additional documents responsive to this Request.

15395428

Dated: December 5, 2024

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:  /s/Jeffrey J. Greenbaum
JEFFREY J. GREENBAUM
KATHERINE M. LIEB

PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

9

15395428

# Exhibit 23



www.pbwt.com

January 23, 2025

Julia Long
(212) 336-2878

**By Email**

Taylor Stone, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

   Re: **Request Nos. 107 and 108**
     *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
     **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Taylor:

   We write in response to your January 6, 2025 letter concerning SaveOnSP's
Request Nos. 107 and 108.[1]

   *First*, you ask that JJHCS "confirm" that it is "not withhold[ing] any documents"
based on SaveOnSP's failure to define "AmerisourceBergen," "Field Based Reimbursement and
Access Specialist ('FRAS')," and "Xcenda" in SaveOnSP's Fourteenth Set of Requests for
Production. We acknowledge your January 6, 2025 letter provides definitions for these terms for
the first time and confirm that JJHCS is not withholding documents responsive to Request Nos.
107 and 108 on this ground.

   *Second*, you claim there is "no merit" to our relevance objections and maintain the
position that the "FRAS play a key role in implementing CarePath and administering CAP." Jan.
6, 2025 Ltr. from T. Stone to J. Long at 2. We disagree. As we have previously explained, "the
'FRAS' team" consists of "contracted field representatives working for non-J&J companies who
assist medical providers." Oct. 29, 2024 Opp. at 9. But the FRAS are not responsible for

---

[1] Request No. 107 seeks "All final Master Service Agreements (MSAs) relating to the relationship
between JJHCS and its Field Based Reimbursement and Access Specialists (FRAS), including
with AmerisourceBergen and Xcenda."

Request No. 108 seeks "Documents sufficient to show the relationship between JJHCS and its
FRAS, including its Work Orders (WOs), Statements of Work (SOWs), and Change Orders (COs)
with AmerisourceBergen and Xcenda."

---

Patterson Belknap Webb & Tyler LLP 1133 Avenue of the Americas, New York, NY 10036 T 212.336.2000 F 212.336.2222

15467143

Taylor Stone, Esq.
January 23, 2025
Page 2

"implementing CarePath" or "administering CAP," as you suggest.[2]  Indeed, SaveOnSP's own exhibits in support of other motions show that the FRAS team was trained to pass on any CAP-related issues to TrialCard.  *E.g.*, JJHCS_00231180 (█████████████████████████████████████████████████████████████████████████████████████████████).  There is nothing relevant or proportionate about SaveOnSP's ask for "[a]ll final Master Service Agreements (MSAs) relating to the relationship between JJHCS and its Field Based Reimbursement and Access Specialists (FRAS), including with AmerisourceBergen and Xcenda" or your ask for "Work Orders (WOs), Statements of Work (SOWs), and Change Orders (COs) with AmerisourceBergen and Xcenda."  *See* SaveOnSP's Request Nos. 107 & 108.

*Third*, your January 6, 2025 letter raises PAFA+ as an additional ground for SaveOnSP's demand for documents responsive to Request Nos. 107 and 108.  Jan. 6, 2025 Ltr. from T. Stone to J. Long at 2.  This makes little sense.  As we have explained across scores of letters, conferrals, and, most recently, on the record before Judge Wolfson last week, SaveOnSP already has the relevant data from PAFA+ and it is not maintained by the FRAS.  *See, e.g.*, Dec. 19, 2024 Ltr. from J. Long to E. Snow at 2-3.  Accordingly, PAFA+ provides no relevance hook for documents responsive to Request Nos. 107 and 108.

*Fourth*, you ask that JJHCS clarify its duplication objection with respect to Request No. 8.  As you know, JJHCS already has agreed to produce all documents "with or regarding SaveOnSP," and has run sweeping searches with respect to Request No. 8.  To the extent documents responsive to Request No. 8 also concern the FRAS or JJHCS's agreements with third-party vendors, JJHCS is not withholding those documents as non-responsive.  *See, e.g.*, JJHCS_00158977.

*Fifth*, you ask us to "confirm" that JJHCS "will not withhold [responsive] documents based on burden."  Jan. 6, 2025 Ltr. from T. Stone to J. Long at 4.  We do not agree.  As articulated in our December 5, 2024 responses and objections, JJHCS maintains both its burden and proportionality objections with respect to Request Nos. 107 and 108.

---

[2] You separately ask that JJHCS clarify its duplication objection with respect to SaveOnSP's Request Nos. 92 and 93.  As you note, those Requests seek "all Master Service Agreements (MSAs) with third parties involved in the administration, management, design, and marketing of CarePath" and "[d]ocuments sufficient to show all final contracts, including Work Orders (WOs), Statements of Works (SOWs), and Change Orders (COs), with third parties involved in the administration, management, design, and marketing of CarePath," respectively.  SaveOnSP's Eighth Set of Requests for Production at 9-10.  To the extent SaveOnSP claims the FRAS-related Master Services Agreements are relevant because the FRAS "administer[ed]" CAP—a claim JJHCS disputes—SaveOnSP's earlier Request Nos. 92 and 93 would have covered responsive documents and we object on duplication grounds.  As a practical matter, we see no reason to revisit the parties' negotiations with respect to near-identical Requests at this late juncture.

15467143

Taylor Stone, Esq.
January 23, 2025
Page 3


     *Finally*, notwithstanding the above, in response to Request No. 108, JJHCS is prepared to investigate whether there are "[d]ocuments sufficient to show the relationship between JJHCS and its FRAS," subject to SaveOnSP's agreement that this resolves the parties' dispute with respect to Request Nos. 107 and 108.

     We remain available to meet and confer.

                    Very truly yours,

                    */s/ Julia Long*
                    Julia Long

# Exhibit 24

| From: | Taylor Stone |
|---|---|
| Sent: | Friday, January 31, 2025 2:22 PM |
| To: | Long, Julia (x2878); Brill, Emma (x2272); Mangi, Adeel A. (x2563); Sandick, Harry (x2723); LoBiondo, George (x2008); _cg J&J-SaveOn; ~jgreenbaum@sillscummis.com; ~klieb@sillscummis.com |
| Cc: | Philippe Selendy; Andrew Dunlap; Meredith Nelson; Elizabeth Snow; Hannah Miles; Wohlforth, E. Evans; HK-JJHCS@hklaw.com; ~mberman@hdrbb.com; chris.smith@huschblackwell.com; sarah.hellmann@huschblackwell.com; kate.ledden@huschblackwell.com; HB-JJHCS@huschblackwell.com |
| Subject: | RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW) // SaveOn's 14th RFPs |

Julia,

Thank you speaking with us on Tuesday regarding SaveOn's RFP Nos. 107 and 108.

Regarding RFP No. 107, we understand that J&J refuses to produce its MSAs with AmerisourceBergen and Xcenda. The parties are at impasse.

Regarding RFP No. 108, we understand that J&J will not produce "documents sufficient to show the relationship between J&J and its FRAS" unless SaveOn agrees to waive its right to raise production deficiencies relating to RFP Nos. 107 and 108. SaveOn does not agree and the parties are at impasse.

Thank you,
Taylor

**Taylor Stone**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: she, her, hers
———————————————
+1 212.390.9088 [O]
+1 650.759.9799 [M]

---

**From:** Taylor Stone
**Sent:** Friday, January 24, 2025 1:09 PM
**To:** Long, Julia (x2878) <jlong@pbwt.com>; Brill, Emma (x2272) <ebrill@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; HK-JJHCS@hklaw.com; ~mberman@hdrbb.com <mberman@hdrbb.com>; chris.smith@huschblackwell.com; sarah.hellmann@huschblackwell.com; kate.ledden@huschblackwell.com; HB-JJHCS@huschblackwell.com
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW) // SaveOn's 14th RFPs

Julia,

1

We are available January 28 at 10 am. I will circulate a dial-in shortly.

Thank you,
Taylor

**Taylor Stone**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: she, her, hers

+1 212.390.9088 [O]
+1 650.759.9799 [M]

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Friday, January 24, 2025 12:41 PM
**To:** Taylor Stone <tstone@selendygay.com>; Brill, Emma (x2272) <ebrill@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; HK-JJHCS@hklaw.com; ~mberman@hdrbb.com <mberman@hdrbb.com>; chris.smith@huschblackwell.com; sarah.hellmann@huschblackwell.com; kate.ledden@huschblackwell.com; HB-JJHCS@huschblackwell.com
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW) // SaveOn's 14th RFPs

Taylor,

In our January 23 letter, we detailed JJHCS's objections to SaveOnSP's Request Nos. 107 and 108, including why the Master Services Agreements and Work Orders sought are irrelevant and unduly burdensome to produce. We did not agree to "investigate" or produce them, as your email below suggests.

Instead, in our letter, we stated that, in response to Request No. 108, JJHCS is prepared to investigate whether there are "[d]ocuments sufficient to show the relationship between JJHCS and its FRAS," subject to SaveOnSP's agreement that this resolves the parties' dispute with respect to Request Nos. 107 and 108. We stand by that offer. For the avoidance of doubt, we do not anticipate that those documents would be work orders, but would instead be documents that outline or otherwise show the "relationship" between the "JJHCS and its FRAS," consistent with SaveOnSP's request.

We are available to confer on January 27 at 4:00 p.m. or January 28 at 10:00 a.m.

Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

2

jlong@pbwt.com

**From:** Taylor Stone <tstone@selendygay.com>
**Sent:** Friday, January 24, 2025 10:07 AM
**To:** Long, Julia (x2878) <jlong@pbwt.com>; Brill, Emma (x2272) <ebrill@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; HK-JJHCS@hklaw.com; ~mberman@hdrbb.com <mberman@hdrbb.com>; chris.smith@huschblackwell.com; sarah.hellmann@huschblackwell.com; kate.ledden@huschblackwell.com; HB-JJHCS@huschblackwell.com
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW) // SaveOn's 14th RFPs

External: Think before you click.

Julia,

You say that J&J is "prepared to investigate whether there are '[d]ocuments sufficient to show the relationship between JJHCS and its FRAS.'" Jan. 23, 2025 Ltr. from J. Long to T. Stone at 3. Please let us know whether J&J agrees to conduct a reasonable search for the documents SaveOn has requested in response to RFP Nos. 107 and 108—*i.e.*, all final Master Service Agreements between JJHCS and its FRAS, as well as documents such as Work Orders, Statements of Work, and Change Orders sufficient to show the relationship between JJHCS and its FRAS—and to produce all such documents located during that search. If you are unwilling to clearly commit to both search for and produce those documents, please provide your availability to meet and confer on January 27 or January 28.

Thank you,
Taylor

**Taylor Stone**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: she, her, hers

+1 212.390.9088 [O]
+1 650.759.9799 [M]

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Thursday, January 23, 2025 2:38 PM
**To:** Taylor Stone <tstone@selendygay.com>; Brill, Emma (x2272) <ebrill@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>;

Wohlforth, E. Evans <EWohlforth@rc.com>; HK-JJHCS@hklaw.com; ~mberman@hdrbb.com <mberman@hdrbb.com>; chris.smith@huschblackwell.com; sarah.hellmann@huschblackwell.com; kate.ledden@huschblackwell.com; HB-JJHCS@huschblackwell.com
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW) // SaveOn's 14th RFPs

Counsel:

Please see the attached correspondence.

Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

**jlong@pbwt.com**

---

**From:** Long, Julia (x2878) <jlong@pbwt.com>
**Sent:** Friday, January 17, 2025 7:09 PM
**To:** Taylor Stone <tstone@selendygay.com>; Brill, Emma (x2272) <ebrill@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; HK-JJHCS@hklaw.com; ~mberman@hdrbb.com <mberman@hdrbb.com>; chris.smith@huschblackwell.com; sarah.hellmann@huschblackwell.com; kate.ledden@huschblackwell.com; HB-JJHCS@huschblackwell.com
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW) // SaveOn's 14th RFPs

Taylor,

We are in receipt of your letter concerning Request Nos. 107 and 108 and will respond next week.

Best,
Julia

**Julia Long**
She | Her | Hers
Associate

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2878

jlong@pbwt.com

---

**From:** Taylor Stone <tstone@selendygay.com>
**Sent:** Tuesday, January 14, 2025 7:47 PM
**To:** Brill, Emma (x2272) <ebrill@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; HK-JJHCS@hklaw.com; ~mberman@hdrbb.com <mberman@hdrbb.com>; chris.smith@huschblackwell.com; sarah.hellmann@huschblackwell.com; kate.ledden@huschblackwell.com; HB-JJHCS@huschblackwell.com
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW) // SaveOn's 14th RFPs

<mark>External: Think before you click.</mark>

Counsel,

We requested a response to the attached January 6, 2025 letter by January 13, 2025. Please let us know when you expect to respond.

Thank you,
Taylor

**Taylor Stone**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: she, her, hers
—————————————————
+1 212.390.9088 [O]
+1 650.759.9799 [M]

---

**From:** Taylor Stone
**Sent:** Monday, January 6, 2025 3:33 PM
**To:** Brill, Emma (x2272) <ebrill@pbwt.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Harry Sandick <hsandick@pbwt.com>; George A. LoBiondo <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; Jeffrey Greenbaum <jgreenbaum@sillscummis.com>; Katherine Lieb <klieb@sillscummis.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; 'HK-JJHCS@hklaw.com' <HK-JJHCS@hklaw.com>; Mark Berman (mberman@hdrbb.com) <mberman@hdrbb.com>; chris.smith@huschblackwell.com; sarah.hellmann@huschblackwell.com; kate.ledden@huschblackwell.com; 'HB-JJHCS@huschblackwell.com' <HB-JJHCS@huschblackwell.com>
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW) // SaveOn's 14th RFPs

Counsel,

Please see attached correspondence in the above-referenced matter.

Thank you,
Taylor

**Taylor Stone**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: she, her, hers
_____
+1 212.390.9088 [O]
+1 650.759.9799 [M]

---

**From:** Brill, Emma (x2272) <ebrill@pbwt.com>
**Sent:** Thursday, December 5, 2024 1:33 PM
**To:** Taylor Stone <tstone@selendygay.com>; Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; Alex.Schnarre@huschblackwell.com; Andrew.solinger@hklaw.com; Brittany.Barrios@huschblackwell.com; Chris.Smith@huschblackwell.com; Christiana.Ogletree@huschblackwell.com; ~Christine.Herrmann@huschblackwell.com <Christine.Herrmann@huschblackwell.com>; Cindy.Missey@huschblackwell.com; Emily Robey-Phillips (emily.robey-phillips@hklaw.com) <emily.robey-phillips@hklaw.com>; james.lockett@hklaw.com; Jeremy Sternberg (Jeremy.sternberg@hklaw.com) <Jeremy.sternberg@hklaw.com>; Kate.Ledden@huschblackwell.com; Krithika.rajkumar@hklaw.com; ~mberman@hdrbb.com <mberman@hdrbb.com>; Sarah.Hellmann@huschblackwell.com
**Subject:** RE: JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW) // SaveOn's 14th RFPs

Counsel,

Please find attached JJHCS's Responses and Objections to SaveOn's 14th set of Requests for Production.

Thank you.

Best,
Emma

**Emma Guido Brill**
She | Her | Hers
**Patterson Belknap Webb & Tyler LLP**
T: 212.336.2272
ebrill@pbwt.com

---

**From:** Taylor Stone <tstone@selendygay.com>
**Sent:** Tuesday, November 5, 2024 5:11 PM
**To:** Mangi, Adeel A. (x2563) <aamangi@pbwt.com>; Sandick, Harry (x2723) <hsandick@pbwt.com>; LoBiondo, George (x2008) <globiondo@pbwt.com>; _cg J&J-SaveOn <JJSaveOn@pbwt.com>; ~jgreenbaum@sillscummis.com <jgreenbaum@sillscummis.com>; ~klieb@sillscummis.com <klieb@sillscummis.com>
**Cc:** Philippe Selendy <pselendy@selendygay.com>; Andrew Dunlap <adunlap@selendygay.com>; Meredith Nelson <mnelson@selendygay.com>; Elizabeth Snow <esnow@selendygay.com>; Hannah Miles <hmiles@selendygay.com>; Wohlforth, E. Evans <EWohlforth@rc.com>; Alex.Schnarre@huschblackwell.com; Andrew.solinger@hklaw.com; Brittany.Barrios@huschblackwell.com; Chris.Smith@huschblackwell.com; Christiana.Ogletree@huschblackwell.com;

~Christine.Herrmann@huschblackwell.com <Christine.Herrmann@huschblackwell.com>;
Cindy.Missey@huschblackwell.com; Emily Robey-Phillips (emily.robey-phillips@hklaw.com) <emily.robey-phillips@hklaw.com>; james.lockett@hklaw.com; Jeremy Sternberg (Jeremy.sternberg@hklaw.com)
<Jeremy.sternberg@hklaw.com>; Kate.Ledden@huschblackwell.com; Krithika.rajkumar@hklaw.com;
~mberman@hdrbb.com <mberman@hdrbb.com>; Sarah.Hellmann@huschblackwell.com
**Subject:** JJHCS v. SaveOnSP (Case No. 2:22-cv-02632-JKS-CLW) // SaveOn's 14th RFPs

**External: Think before you click.**

Counsel,

Please see attached SaveOn's 14th set of Requests for Production.

Thank you,
Taylor

**Taylor Stone**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: she, her, hers

+1 212.390.9088 [O]
+1 650.759.9799 [M]

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

Exhibits 25-37 Confidential

Filed Under Seal

# Sills Cummis & Gross

**A Professional Corporation**

The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102-5400
Tel: 973-643-7000
Fax: 973-643-6500

Jeffrey J. Greenbaum
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL
UNDER THE DISCOVERY CONFIDENTIALITY ORDER**

February 21, 2025

**VIA Email**

Honorable Freda L. Wolfson, U.S.D.J.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

> **Re: Opposition to SaveOnSP's February 3, 2025 Motion to Compel
> FRAS Contracts**
> ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC***,
> **Civil Action No. 22-2632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of JJHCS, we write to oppose SaveOnSP's February 3, 2025 motion to compel

JJHCS to produce documents responsive to SaveOnSP's Request Nos. 107 and 108 (collectively,

the "Requests"), which respectively call for (1) "Master Service Agreements (MSAs) relating to

the relationship between JJHCS and its Field Based Reimbursement and Access Specialists

(FRAS), including with AmerisourceBergen and Xcenda" and (2) "[d]ocuments sufficient to show

the relationship between JJHCS and its FRAS, including its Work Orders (WOs), Statements of

Work (SOWs), and Change Orders (COs) with AmerisourceBergen and Xcenda."[1]

---

[1] JJHCS collectively refers to the FRAS MSAs, WOs, SOWs, COs, and Rules of Engagement
("ROEs") hereafter as the "FRAS Contracts."

Honorable Freda L. Wolfson, U.S.D.J.
February 21, 2025
Page 2

SaveOnSP's motion should be denied because the FRAS are entirely peripheral to this lawsuit. They are third-party contractors with a single purpose: to help medical providers clear certain bureaucratic hurdles—irrelevant to this case—that impede their patient's access to getting medication. *See* SaveOnSP Ex. 23 (Jan. 23, 2025 Ltr. from J. Long to T. Stone) at 1–2; Ex. 1 Oct. 29, 2024 Opp. at 9. The FRAS have no material role in CarePath administration or the CAP program. SaveOnSP exaggerates the FRAS' responsibilities in connection with the CAP program to justify its asserted "need" for the FRAS Contracts, incorrectly claiming that the FRAS helped implement the CAP program. The reality is far more mundane: to the extent the FRAS were involved with the CAP program, it was merely to forward or escalate CAP-related concerns to the CarePath vendors with actual responsibility for these matters. Other than to spot an issue and pass it on, the FRAS had no role to play at all with respect to the CAP program. Indeed, several documents that JJHCS has already produced to SaveOnSP—including documents that SaveOnSP cites in its own motion—

. *E.g.*, SaveOnSP Ex. 7 (JJHCS_00173148) at .0087–.0088 (

).

Given these facts, the FRAS Contracts have no bearing on the claims and defenses in this Action. Further, SaveOnSP does not need the FRAS Contracts to "show the relationship between" JJHCS and the FRAS. Mot. at 2. This relationship is already clear and the FRAS Contracts will not provide SaveOnSP with more useful information than it already has, as many FRAS documents have already been produced to SaveOnSP. And the Court should bear in mind that SaveOnSP's demands are unlikely to stop at the FRAS contracts. If past is prologue, today's motion is only a precursor to additional requests by SaveOnSP that will seek to further expand and extend

Honorable Freda L. Wolfson, U.S.D.J.
February 21, 2025
Page 3

discovery.  There is no basis for JJHCS to produce additional FRAS-related documents, and

SaveOnSP's motion to compel should be denied.

## BACKGROUND

When SaveOnSP served the Requests in November 2024, JJHCS objected because the

Requests were irrelevant to the claims and defenses in this Action and duplicative of prior

Requests.  SaveOnSP Ex. 22 (JJHCS's R&Os to SaveOnSP's Fourteenth Set of Requests for

Production) at 7–8.  JJHCS advised SaveOnSP that it "has already agreed to produce, subject to

prior objections, 'all non-privileged documents and communications in its possession with or

regarding SaveOnSP from the relevant Time Period.'"  *Id.* at 7.

In January 2025, SaveOnSP challenged JJHCS's position and argued that the FRAS "play

a key role in implementing CarePath and administering CAP."  Ex. 2 (Jan. 6, 2025 Ltr. from T.

Stone to J. Long) at 2.  JJHCS corrected this misunderstanding from the outset.  JJHCS explained

in no uncertain terms that the FRAS are third party contractors who are "not responsible for

'implementing CarePath' or 'administering CAP.'"  SaveOnSP Ex. 23 (Jan. 23, 2025 Ltr. from J.

Long to T. Stone) at 1–2.  Nevertheless, in the interest of compromise and to avoid a dispute,

JJHCS offered to investigate whether there are "[d]ocuments sufficient to show the relationship

between JJHCS and its FRAS, subject to SaveOnSP's agreement that this resolves the parties'

dispute with respect to" the Requests.  *Id.* at 3 (internal quotation marks omitted).  SaveOnSP

refused this proposal, declared impasse, and filed this motion on the eve of the discovery deadline.

## ARGUMENT

### I.    The FRAS Contracts Are Irrelevant To This Lawsuit

SaveOnSP contends that it needs to review the FRAS contracts to understand JJHCS's

"degree of control over and responsibility for the actions and statements" of the FRAS.  Mot. at 2.

Honorable Freda L. Wolfson, U.S.D.J.
February 21, 2025
Page 4

But its premise for this demand is misguided. SaveOnSP would have the Court believe that the

FRAS played a pivotal role in the administration of CarePath, and the CAP program in particular.

*Id.* at 2–4. But that simply isn't true. As JJHCS has explained to SaveOnSP before, the FRAS are

external contractors hired by JJHCS specifically to assist medical providers and their patients. *See*

SaveOnSP Ex. 23 (Jan. 23, 2025 Ltr. from J. Long to T. Stone) at 1. The FRAS' primary role is

to ensure that patients receive their medications and to assist patients in clearing certain

bureaucratic hurdles that they may face. For instance, if a patient's insurance plan requires a prior

authorization to be completed before the patient's prescription is filled, the FRAS will confirm

that a physician submitted this prior authorization. *See*, *e.g.*, Ex. 3 (JJHCS_00139778) at 20

(█████████████████████████████████████████████████████████); Ex. 4

(JJHCS_00217851) at '854 (███████████████████████████████████████

███████████████████████████████████).

SaveOnSP claims that the FRAS supported JJHCS in the "implementation" of the CAP

program. Mot. at 4. This is incorrect. To the extent that the FRAS engaged with the CAP program

at all while assisting medical providers, their directive was simply to ██████████████████

████████████████████████████████████████████████████████. *See*, *e.g.*, Ex. 5

(JJHCS_00231180) (████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████). Several JJHCS documents—including many of the very documents that

SaveOnSP submitted as exhibits in support of its motion—show that the FRAS played no

substantive role in relation to CAP.

For example, SaveOnSP argues that JJHCS "extensively trained the FRAS on topics

including accumulators, maximizers, and SaveOn, to ensure that they accurately conveyed

Honorable Freda L. Wolfson, U.S.D.J.
February 21, 2025
Page 5

[JJHCS's] positions to providers and patients." Mot. at 3 (citing SaveOnSP Ex. 7 (JJHCS_00173148)). However, the training the FRAS received was limited to deciphering what accumulators and maximizers (or "optimizers" like SaveOnSP) are for the sole purpose of identifying CAP-related issues and understanding when to bring them to other CarePath vendors. Indeed, the very training document SaveOnSP cites in its motion—thus already produced—

████████████████████████████████████████████████████████████

██████████████████████████████████████. *See* SaveOnSP Ex. 7 (JJHCS_00173148) at '150.075-76, '150.079.

SaveOnSP also points to a description of the FRAS' work in a Tremfya withMe training document, arguing that the FRAS' "███████████████████████████████████████████

███████████████████████" *See* Mot. at 2–3 (quoting SaveOnSP Ex. 6 (JJHCS_00329189) at '021) (internal quotation marks and alterations omitted). But in distinguishing between the FRAS' responsibilities and that of other entities, ████████████████████████████████████

█████████████████████████████████████████████ SaveOnSP Ex. 6 (JJHCS_00329189) at '021 (emphasis added). In other words, the FRAS are not involved in the CAP program other than to hand off a patient to someone else. SaveOnSP omits this reference in its motion, which renders its description of this document unreliable.

Other JJHCS documents that SaveOnSP submitted as exhibits underscore the fact that the FRAS were instructed to convey CAP-related issues to others, merely playing the role of a conduit without exercising any discretion or decision-making. *See*, *e.g.*, SaveOnSP Ex. 8 (JJHCS_00003131) (████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████); SaveOnSP Ex. 9 (JJHCS_00158977) at '978 (█████████████████████

Honorable Freda L. Wolfson, U.S.D.J.
February 21, 2025
Page 6



; SaveOnSP Ex. 17 (JJHCS_00272860)

(

; SaveOnSP Ex. 25 (JJHCS_00183573) (

). All of these documents show that

the FRAS had a singular part to play: to pass the patient on to a person who had responsibility to

address CAP-related issues. Even SaveOnSP acknowledges as much in its own motion. *See* Mot.

at 4 (noting that the FRAS "transmitted," "elevated," and "flagg[ed]" CAP-related concerns to

others).[2]

Finally, SaveOnSP cites JJHCS documents showing that the FRAS facilitated temporary

financial support for patients experiencing delays in receiving their medications. *See* Mot. at 8–9

(citing SaveOnSP Ex. 32 (JJHCS_00291495) at '499 and SaveOnSP Ex. 33 (JJHCS_00035812)

at '813. SaveOnSP argues that it needs the FRAS Contracts since JJHCS "apparently gave the

FRAS some authority to resolve various problems on the spot when communicating with patients."

Mot. at 8. This is again misleading. These documents reveal that the FRAS helped patients obtain

sample medications and take advantage of alternative support programs to ensure they could

continue taking critical medications for some period of time while underlying bureaucratic issues

---

[2] SaveOnSP mentions in passing that Your Honor added Mitchell Akright as a limited purpose
custodian because Akright "interacted with [the FRAS] on proper messaging" and had "some very,
very relevant information." Mot. at 5 (quoting Jan. 15, 2025 Tr. at 110:15–111:1). SaveOnSP
suggests that this ruling means the Court has necessarily determined that the FRAS Contracts must
also be relevant and therefore must be produced. The Court made no such ruling. And while Your
Honor recognized that Akright worked with the FRAS on communications about CarePath and the
CAP program, those communications also show only that the FRAS forwarded patients to the
entities that were prepared to address the relevant substantive issues.

Honorable Freda L. Wolfson, U.S.D.J.
February 21, 2025
Page 7

were resolved.  That is irrelevant to the copay support provided by CarePath and the CAP program,

and by extension, to the claims and defenses in this Action.

To be sure, SaveOnSP is correct that JJHCS has already produced MSAs for other vendors,

such as TrialCard and RIS Rx.  Mot. at 9.  But they are different than the FRAS in that TrialCard

and these other entities helped administer the CAP program in some fashion.  The FRAS did not.

Thus, the FRAS MSAs (and other contracts such as Statements of Work or Work Orders) are of

no moment to this case.[3]

## II.    SaveOnSP Has Already Received Sufficient Information About The FRAS

SaveOnSP also urges that the FRAS ███████████████████████████████

and, therefore, SaveOnSP "needs" the FRAS Contracts to understand JJHCS's "authority to direct

the FRAS" to make such statements.  Mot. at 5–6.  SaveOnSP's factual premise is wrong.  As

discussed at-length at the January 15, 2025 conference, SaveOnSP is misreading as JJHCS-

approved direction what is in fact ██████████████████████████████████

██████████████████████████████.  *Compare* Jan. 15, 2025 Tr. at 36:10–38:5,

*with* Mot. at 5 (citing SaveOnSP Ex. 12 (JJHCS_00181853) at '855.001).  In response to that draft,

████████████████████████████████████████████████████████████████████

███████████████     SaveOnSP Ex. 12 at '853.  But even if SaveOnSP's misinterpretation was

correct, that document provides no basis for further discovery because it shows only the "general

policy-related issues" that are well-covered by JJHCS's existing custodians and search terms.  *See*

Jan. 15, 2025 Tr. at 41:20–42:7.

---

[3] The same is true for other FRAS agreements, such as the Field Reimbursement ROEs.  SaveOnSP
complains that JJHCS has only produced one FRAS ROE to date.  *See* Mot. at 8–9.  But if other
ROEs (assuming they exist) related to SaveOnSP they would have been produced.  SaveOnSP has
shown no basis for demanding all FRAS ROEs on irrelevant topics.

Honorable Freda L. Wolfson, U.S.D.J.
February 21, 2025
Page 8

SaveOnSP also suggests the FRAS Contracts will aid its mitigation defense. *See* Ex. 2
(Jan. 6, 2025 Ltr. from T. Stone to J. Long) at 2 (arguing that the FRAS' "work is directly relevant
to, among other things, [JJHCS's] allegations of public harm and SaveOn's mitigation defense").
SaveOnSP is again mistaken. The FRAS Contracts will not help SaveOnSP uncover anything
about mitigation that it does not already know. JJHCS has already produced countless documents
regarding JJHCS's efforts to identify patients enrolled in accumulators and maximizers (and in
SaveOnSP specifically), its enforcement of CarePath's terms and conditions, and its development
and execution of the CAP program. The FRAS Contracts add nothing.

SaveOnSP also claims that its request is "limited" because it can be addressed with non-
custodial discovery. Even if this is true, it does not make the Requests reasonable where any
further production would be cumulative of documents JJHCS has already produced. In addition,
as the Court has seen before with other non-party vendors, SaveOnSP is no doubt looking for a
proverbial "foot in the door" with respect to the FRAS Contracts, making a "modest proposal"
today as a precursor to more burdensome requests in the future. The Court should not allow this
to play out further. There is no need for JJHCS to make additional productions on this issue.

\* \* \*

For the foregoing reasons, the Court should deny SaveOnSP's motion.

Respectfully submitted,

*/s/ Jeffrey J. Greenbaum*
JEFFREY J. GREENBAUM

cc: All counsel of record

# EXHIBIT 1

# Sills Cummis & Gross
### A Professional Corporation

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102-5400**
**Tel: 973-643-7000**
**Fax: 973-643-6500**

Jeffrey J. Greenbaum
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL UNDER THE DISCOVERY CONFIDENTIALITY ORDER**

October 29, 2024

**By Email**

Hon. Freda L. Wolfson, U.S.D.J.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

Re:     **JJHCS's Opposition to SaveOnSP's October 9, 2024 Motion to Compel**
         ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC, et al.***,
         **Civil Action No. 22-2632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of Johnson & Johnson Health Care Systems, Inc. ("JJHCS"), we write in opposition to SaveOnSP's October 9, 2024 motion to compel JJHCS to add nine more custodians—which would make JJHCS's total custodian count 55. (SaveOnSP has separately demanded another 14, which would take the count to 69. SaveOnSP itself has only 33 custodians.)

SaveOnSP's "follow every breadcrumb" approach has led it astonishingly far from the straightforward issues that will be tried in this case: whether SaveOnSP "induced patients to breach their contracts with JJHCS or whether it deceives the public." D.E. 66 at 7–8. In this latest motion, SaveOnSP now demands the addition of employees who worked on issues like the printing specifications for color brochures or on the "Nurse Navigator" service that helps patients learn how to inject their medicine.

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 2

Other employees whose documents SaveOnSP seeks did have exposure to relevant issues—indeed, JJHCS disclosed one of them in its responses to the very first set of interrogatories that SaveOnSP served in *2022*.  But at this late stage they are entirely redundant of the 46 custodians JJHCS has added in the intervening two years.  Some of them, if added, would be the ninth or 10th member of their team to be custodians.  And tellingly, many of SaveOnSP's 138 exhibits are documents JJHCS produced well over a year ago, some as early as its very first custodial production in March 2023.  In other words, not only does SaveOnSP already have the documents it needs to try this case, it has had them for a very long time.

SaveOnSP claims that its vexatious tactics are the natural consequence of Your Honor's July 16, 2024 ruling.  Mot. at 2.  They are not.  Your Honor's ruling rejected SaveOnSP's attempt to effectively restart discovery as to eight Janssen entities, and suggested that the parties focus their conferral on six specific employees.  D.E. 336 at 2.  Where Your Honor gave SaveOnSP an inch, SaveOnSP took a mile.  Because the order said that Your Honor was only "suggest[ing]" six names, SaveOnSP felt emboldened to send a deluge of letters demanding *30* more custodians,[1] going far beyond the scope not only of Your Honor's order, but even SaveOnSP's own prior motion.  Nevertheless, JJHCS in good faith quickly agreed to add six custodians (including most of those Your Honor had suggested the parties discuss) and provided detailed explanations why the others were not appropriate.  SaveOnSP Ex. 4 (Aug. 13, 2024 Ltr. from I. Eppler to E. Snow);

---

[1] *See* Ex. 1 (Aug. 28, 2024 Ltr. from E. Snow to I. Eppler) at 2 (demanding that JJHCS add an additional custodian); Ex. 2 (July 19, 2024 Ltr. from E. Snow to J. Long) (demanding that JJHCS add three additional custodians); SaveOnSP Ex. 3 (July 19, 2024 Ltr. from E. Snow to J. Long) (demanding that JJHCS add 22 additional custodians); Ex. 3 (July 19, 2024 Ltr. from E. Snow to J. Long) (demanding that JJHCS add two additional custodians); Ex. 4 (June 28, 2024 Ltr. from E. Snow to J. Long) (demanding that JJHCS add two additional custodians).

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 3

Ex. 5 (Aug. 19, 2024 Ltr. from J. Long to E. Snow).  SaveOnSP's response, as always, has been

to double down and pursue even more extreme tactics.  This is SaveOnSP's second recent motion

with incremental demands for new JJHCS custodians, but it will not be the last:  there are up to 14

additional employees SaveOnSP seeks but has not yet moved on, and new SaveOnSP demands are

coming in every day.  Indeed, even after filing this motion, SaveOnSP sent JJHCS a letter on

October 17 (one of six discovery letters SaveOnSP sent that day) to insist that yet another custodian

be added, over and above the 30 already referenced.  The imposition of burden on JJHCS through

these demands and motions is not incidental—it is the point.  The Court should put a categorical

stop to it.  Anything less will not suffice, because as the record shows, SaveOnSP treats every split

ruling as an invitation to multiply its demands.

 One final note:  SaveOnSP's submission must be read with caution, because its 138 exhibits

do not support the sweeping propositions made in SaveOnSP's brief.  Attaching 138 exhibits to a

discovery motion is itself improper, designed to overwhelm the Court and JJHCS and undermine

the Court-imposed page limits that are in place to minimize expense and burden.  SaveOnSP's

brief distorts the contents of these exhibits in ways both small (e.g., claiming someone "presented"

on a topic when in fact she was simply sharing her screen in a Zoom meeting to help participants

to view the deck) and large (e.g., citing documents mentioning accumulators *in general* to argue

that JJHCS did not think SaveOnSP's *particular* features violate the CarePath terms and

conditions).  JJHCS does not and cannot correct every misstatement here, and ultimately they are

a distraction from the point:  these nine employees are irrelevant, duplicative, or both.  Adding

them now would be unduly burdensome and disproportionate to the needs of the case.

 SaveOnSP's motion should be denied.

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 4

## DISCUSSION

**I.    SaveOnSP Has Not Shown That These Nine Individuals Possess Unique And Relevant Documents**

JJHCS addresses the new custodians demanded by SaveOnSP in the order chosen by SaveOnSP as set forth in its moving submission.

### 1.    Katie Hanculak

SaveOnSP seeks to add Hanculak as a custodian for a seven-year period, yet its own exhibits show that her period of potential relevance was at most 17 months in the middle of that period—and that even during that short window, she worked alongside numerous existing custodians.  There would be nothing proportionate about adding her as a 47th JJHCS custodian.

Despite referring to 28 exhibits to support Hanculak's addition, not a single document involving Hanculak is dated before June 2020 or after November 2021.  This is because outside that brief window, Hanculak held irrelevant roles and had nothing to do with the issues in this case.  As to the remaining 17-month period, Hanculak worked alongside existing custodians such as Spilios Asimakopoulos, Lauren Pennington, Karen Lade, Cherilyn Nichols, Jasmeet Singh, Bill Robinson, Michelle Barnard, and Heith Jeffcoat on immunology patient experience issues.  *See, e.g.*, SaveOnSP Ex. 24 (JJHCS_00246272); Ex. 6 (JJHCS_00252940); SaveOnSP Ex. 23 (JJHCS_00252942); SaveOnSP Ex. 40 (JJHCS_00272514).  Moreover, SaveOnSP's exhibits demonstrate that ████████████████████████████████████████████ ████████████████████████████████████████.  *See* SaveOnSP Ex. 39 (JJHCS_00272720) (████████████████████████████████████████████ ████████████████████████████████████).  Adding a ninth, passive custodian covering identical topics for this brief window in time is neither necessary nor proportional.

4

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 5

SaveOnSP also cites Hanculak's membership on the IMM CAP 2022 Tiger Team.  Mot. at

5–6.  But as the documents cited by SaveOnSP demonstrate, 

.  *See* SaveOnSP Ex. 37 (JJHCS_00034977) (

).  SaveOnSP's exhibits also show

SaveOnSP Ex. 34 (JJHCS_00047500) at -502.   Given this

comprehensive coverage at multiple levels, there is no basis to compel an ***11th*** Tiger Team

custodian.[2]

### 2.    Elizabeth Kreul-Starr

SaveOnSP's arguments for adding Kreul-Starr fail for four reasons.   ***First***, as with

Hanculak, there is a threshold issue of time period:  SaveOnSP's 32 exhibits concerning Kreul-

Starr are all concentrated between February 2018 and September 2022, not the seven-year period

that it demands.  And indeed, Kreul-Starr transitioned into a new position at J&J in or around

January 2018 and left the company in September 2022.

---

[2] SaveOnSP also lists two exhibits related to a second group—the "IMM CAP 2023 Tiger Team"—
but Hanculak was not a member of this group.  SaveOnSP Ex. 35 (JJHCS_00117039); SaveOnSP
Ex. 36 (JJHCS_00011148); *see also* Ex. 7 (JJHCS_00231759) (
).

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 6

***Second***, SaveOnSP's extreme delay on Kreul-Starr demonstrates that she has been a low

priority even for SaveOnSP, which is not surprising given that her documents are duplicative of

other custodians. ███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████. Ex. 8 (JJHCS's Responses and Objections to Defendant's

First Set of Interrogatories) at 10–11.[3]  SaveOnSP's brief does not explain why it decided to wait

a year and a half to seek her addition as a custodian, but the reason seems clear:  SaveOnSP

repeatedly chose to prioritize other custodians it regarded as more relevant and important, and is

only belatedly circling back to Kreul-Starr now because there is practically no one left to demand.

JJHCS has already added everyone who matters and then some, including two of Kreul-Starr's

direct reports (Jeffcoat and Minecci); her immediate supervisor (Mazuk); and others in her

reporting line at various portions of the relevant time period (Lade, Asimakopoulos, Pennington,

and Anderson).   At this point, any relevant documents in Kreul-Starr's files are likely to be

cumulative of JJHCS's existing productions, as even SaveOnSP's exhibits illustrate.  *See, e.g.*,

SaveOnSP  Ex.  18  (JJHCS_00035075)  (███████████████);  SaveOnSP  Ex.  57

(JJHCS_00272715) (███████████████████████████████

██████);  SaveOnSP Ex. 62 (JJHCS_00011222) (██████████████████

█████████████).

***Third***, SaveOnSP's arguments for Kreul-Starr's relevance—her purported knowledge of

SaveOnSP, advice to decisionmakers, and J&J's damages—are all meritless.

---

[3] Similarly, most of the exhibits that SaveOnSP cites in support of its motion to compel Kreul-Starr (24 out of 32) were produced in 2023, nearly a year ago now.

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 7



- Knowledge regarding SaveOnSP:  None of SaveOnSP's exhibits suggest that Kreul-Starr had any "                    " Mot. at 7.  Indeed, the

  *see* SaveOnSP Ex. 71 (JJHCS_00000630),

  , *see* SaveOnSP Ex. 60 (JJHCS_00001221).[4]  Neither shows that Kreul-Starr had "extensive" relevant knowledge.

- Advice to decisionmakers:  Although SaveOnSP

  Mot. at 7, its own exhibit reveals that

  , SaveOnSP Ex. 52 (JJHCS_00140480).  And, in any event, SaveOnSP has these materials from existing custodians' files (White, Mazuk, and Asimakopoulos).[5]

- Damages:  Although SaveOnSP claims that

  Mot. at 6 (citing SaveOnSP Ex. 45),

  , *see* SaveOnSP Ex. 45 (JJHCS_00222582) at -584, -586.  That does not merit adding Kreul-Starr, who in any event was                    .[6]  The

---

[4] SaveOnSP faults JJHCS for not changing CarePath's maximum benefit to the same amounts that SaveOnSP was then using as its fixed copays.  *See* Mot. at 8 (citing SaveOnSP Ex. 60).  Setting aside the fact that SaveOnSP has no standing to dictate how much copay assistance JJHCS offers to its patients, the point is moot because SaveOnSP

.  Instead, SaveOnSP soon moved to a

  *E.g.*, Ex. 9 (Express_Scripts_1350_00012745) at -746.

[5]

  Mot. at 7 (citing SaveOnSP Ex. 53 (JJHCS_00002989)).

  .  *See* SaveOnSP Ex. 53 (JJHCS_00002989) at -3000.  And, once again, JJHCS produced this document in March 2023, yet SaveOnSP never raised it as a basis to add Kreul-Starr as a custodian until late August 2024.

[6] Separately, SaveOnSP advances the fallacy that, because JJHCS updated the terms and conditions for Stelara and Tremfya in late 2021, JJHCS somehow concedes that the "other offer" provision

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 8

same is true for SaveOnSP's claim that ███████████████████████████
████████████████████████  Mot. at 7.  ████████████████████████████
████████████████████████████████████████████████████  *See* SaveOnSP Exs. 46–48
(JJHCS_00221267; JJHCS_00221271; JJHCS_00221286).  SaveOnSP has no claims
against Janssen or JJHCS, let alone claims relating to some alleged deception.

   ***Finally***, SaveOnSP's remaining exhibits relate to topics that Your Honor has repeatedly

ruled irrelevant.  For example, SaveOnSP cites to a bevy of exhibits related to JJHCS's terms and

conditions regarding patients with government insurance.  *See* Mot. at 8.  But Your Honor denied

SaveOnSP discovery related to such irrelevant terms and conditions in January, and denied

SaveOnSP's motion for reconsideration on this topic in April.  *See* Feb. 6, 2024 Order at 13

(denying motion to compel related to enforcement of terms and conditions outside of "May-Not-

Use" provision); Apr. 25, 2024 Order at 2–3 (denying motion for reconsideration of February 6,

2024 Order).[7]  SaveOnSP does the same thing with respect to the Best Price Rule.  *See* Mot. at 7

(citing SaveOnSP Exs. 49–50, 67 ██████████████████████████).  Here, too, Your

Honor already has rejected SaveOnSP's request for document discovery.  *See* May 28, 2024 Order

at 3.  These topics, long deemed irrelevant, cannot be the basis to belatedly add Kreul-Starr now.

---

did not prohibit SaveOnSP.  *See* Mot. at 8 (citing SaveOnSP Ex. 57 (JJHCS_00272715)).  For the
avoidance of doubt, both the Amended Complaint and Proposed Supplemented Amended
Complaint allege that SaveOnSP independently violates both versions of the CarePath terms and
conditions, as well as subsequent updates to them.  *See* D.E. 403.

[7] Similarly, ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████  *See* SaveOnSP Ex. 64 (JJHCS_00117264) at -265–-266; SaveOnSP Ex. 65
(JJHCS_00080822) (same).

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 9

### 3.    Matthew Saggese

SaveOnSP makes two arguments as to why Saggese should be added as a custodian: first, that he "pushed [JJHCS] to increase CarePath payments to patients on maximizer plans," and second, that he "developed a scheme to send CarePath patients to SaveOn once they exhausted CarePath funds." Mot. at 10–11. Saggese's work reflected in these documents involved numerous existing custodians. Moreover, both arguments entirely misread the documents SaveOnSP cites.

To begin with, Saggese's role focused on oversight of marketing and customer experience issues related to the use of Janssen immunology products to treat gastrointestinal conditions. *See* SaveOnSP Ex. 76 (JJHCS_00190387) (███████████████████████████"). That work, for the most part, is irrelevant. █████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████. *Id.* at -388 (████████████████████████████████████████[8]

Saggese's role also involved working with the "FRAS" team, i.e., contracted field representatives working for non-J&J companies who assist medical providers. As part of this work, he sometimes received comments or feedback on Janssen offerings (including CarePath) from these external contractors. ████████████████████████ ████████████████████████████████████████████████ ██████████████████████████. *See, e.g.*, SaveOnSP Ex. 82 (JJHCS_00181853) (████████████████████████████████);

---

[8] Again, although SaveOnSP demands Saggese for a seven-year period, it cites to exhibits from only a brief portion of that time period to support its motion (March 2022 to August 2023).

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 10

SaveOnSP Ex. 78 (JJHCS_00258908) (███████████████████); SaveOnSP Ex.

84 (JJHCS_00259257) (███████████████████████████████████

███████████████████); SaveOnSP Ex. 85 (JJHCS_00231590) (██████████████

████████████████████████).  He was, in other words, a messenger—

and the messages he delivered are already in JJHCS's production.

    SaveOnSP focuses on an episode that it characterizes as ████████████████

█████████████████████████████████.  Mot. at 11.  Nonsense.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████  SaveOnSP Ex. 79 (JJHCS_00253558); SaveOnSP Ex. 80 (JJHCS_00253352); SaveOnSP

Ex. 81 (JJHCS_00258993).  █████████████████████████

████████████████████████████████████████████████

██████████████████████████████  SaveOnSP Ex. 81

(JJHCS_00258993) at -997, and SaveOnSP claims to ensure that patients pay nothing out of pocket

for their medication.  This episode sheds no light on JJHCS's policies with respect to maximizer

patients or the meaning of CarePath's terms and conditions, █████████████████████

███████████████████████████████████.

    Similarly, SaveOnSP accuses Saggese of ██████████████████████

██████████████████████"  Mot. at 11.  Again, there is zero evidence for

this claim.  ████████████████████████████████████████

10

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 11



██████████████████████████████████████). SaveOnSP Ex. 82

(JJHCS_00181853) at -854. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ *Id.* ████████████████████

████████████████████████████████████████████████

████████████ *Id.* at -855.0001. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ *Id.* at -853

(emphasis in original). Thus, ██████████████████████████████

████████████████████████████████████████████████

████████████████ Regardless, this episode again involved Pennington, an existing custodian.

4.    **Jane Frechette**

SaveOnSP first claims that Frechette ████████████████████████

████████████ which purportedly makes her relevant because her "████████████████

████████████████████████████████████████████████

Mot. at 12 (emphasis in original). This is a puzzling theory of relevance—other manufacturers'

views on the need for changes are not relevant, and even if they were somehow relevant, Frechette

did not work for those manufacturers and so obviously had no firsthand "understanding" of their

"beliefs." In any event, SaveOnSP does not need Frechette's emails to find those other

manufacturers' terms and conditions. For one thing, they are already public; ████████████████

████████████████████████████████████████████████

████████████████████████ d. *See, e.g.*, SaveOnSP Ex. 86 (JJHCS_00267848)

11

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 12



SaveOnSP Ex. 87 (JJHCS_00259753) (███████████████████████████████); SaveOnSP Ex. 90 (JJHCS_00145406) at -467 (████████████████████████████████████████████████████████████).

      SaveOnSP also claims that ███████████████████████████████████ Mot. at 12.  Not so.  ████████████████████████████████████████████████████████████. *See* SaveOnSP Ex. 92 (JJHCS_00218451); SaveOnSP Ex. 93 (JJHCS_00002593).  ████████████████████████████████████████████, there is no suggestion that Frechette gave substantive feedback on the terms themselves.  Moreover, current JJHCS custodians such as Lindsey Anderson and current TrialCard custodians such as Holly Weischedel were involved in these discussions.

      Finally, SaveOnSP claims that Frechette should be added as a custodian because her "documents show that, for years, J&J knew that patients on accumulators and maximizers were using CarePath and did nothing."  Mot. at 13.[9]  These documents do not demonstrate that "J&J knew that patients on . . . maximizers were using CarePath," as the documents at issue refer only to ████████████████████████████████████████████████████████████ ████████.  SaveOnSP Ex. 18 (JJHCS_00035075), SaveOnSP Ex. 94 (JJHCS_00080271).  In any event, current custodians such as Heather Schoenly and Pennington were involved in ████, so there is no need to add Frechette as a custodian to capture documents related to it.

---

[9] SaveOnSP again fails to substantiate the seven-year time period it demands for Frechette, citing only to sporadic emails that Frechette received between September 2020 and October 2023.

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 13

     **5.**     **Casey Sasse**

     SaveOnSP does not even claim, much less demonstrate, that Sasse has unique documents

for the seven-year period it demands. As with SaveOnSP's other demands, there is a threshold

issue of time period: SaveOnSP's 11 exhibits are concentrated in just a 16-month window.

Moreover, JJHCS's existing custodians include a number of individuals who, like Sasse, worked

on immunology products, including Asimakopoulos, Pennington, Singh, and Anderson. Any

relevant work Sasse did was with these custodians. *See, e.g.*, SaveOnSP Ex. 96

(JJHCS_00140862) (███████████████████████████████); SaveOnSP Exs. 97

(JJHCS_00259564) & 98 (JJHCS_00191210) (█████████████████████████████);

SaveOnSP Ex. 102 (JJHCS_00231311) (██████████████████████████████████████

████████).

     SaveOnSP also cites Sasse's status as a team member for the CAP 2023 project. Mot. at

14. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████. SaveOnSP Ex. 104 (JJHCS_00033653) at -653.0009.

     **6.**     **Barbara McCabe**

     McCabe was an external consultant for the immunology brand. ██████████████

████████████████████████████████████████████████████. *See* SaveOnSP Ex.

108 (JJHCS_00143048); SaveOnSP Ex. 109 (JJHCS_00035571). However, SaveOnSP fails to

demonstrate—nor can it—that McCabe had any involvement in drafting or revising the CarePath

terms and conditions themselves, or has unique insight into what they mean. ████████████

████████████████████████████████████████████████████████████

13

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 14



. *See, e.g.*, SaveOnSP Ex. 106 (JJHCS_00045430) (███████████

████████████████████████████████████)

Even when McCabe's duties touched on issues related to the CarePath terms and conditions, such as drafting or updating training and call guides that referenced the terms and conditions, she was not involved in the actual drafting of the terms and conditions, nor did she have unique insight into the meaning of the terms. ████████████████████████████ ████████████████████████████████. *See* SaveOnSP Ex. 108 (JJHCS_00143048) (███████████████████████ ███████████); SaveOnSP Ex. 109 (JJHCS_00035571) (███████████ ████████████████████████████████████ ██████████████████████).[10]

McCabe also is unlikely to have unique documents related to her work on the █████ ███████████ team for Immunology Patient Access and Affordability Solutions because McCabe's reporting line feeds into current custodian ███████████ *See* SaveOnSP Ex. 110

---

[10] SaveOnSP mischaracterizes these exhibits by suggesting that they show JJHCS facilitating the operation of an accumulator program.  Mot. at 15 ("█████████████████████████████ ██████████████████████████████████████████ ██████████████).  Just the opposite:  t████████████ ████████████████████████████████████████████ ████████████████████████  *See* SaveOnSP Ex. 108 (JJHCS_00143048) at -050.  This direction is consistent with CarePath's terms and conditions.

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 15

(JJHCS_00230918) at -970.  Therefore, any relevant work ███████████████████

███████████████ would already be captured in JJHCS's current productions.[11]

SaveOnSP also overstates McCabe's one-off project tracking other manufacturers' copay

assistance programs.  Most of the information in question—which, again, is public—had nothing

to do with these programs' response to accumulators and maximizers.  *See SaveOnSP* Ex. 107

(JJHCS_00139795)  (█████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████).  And, once again, there is simply no basis to add McCabe as a custodian on the

topic of what "other manufacturers believed."  Mot. at 15.

**7.    Kevin Kleemeier**

None of SaveOnSP's nine exhibits support adding Kleemeier as a custodian.  One is a

discovery letter, and the remaining eight—each of which is discussed below—do not even mention

SaveOnSP.  ████████████████████████████.  *See SaveOnSP* Ex. 112

(JJHCS_00226370) (█████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████.  *See SaveOnSP* Ex. 118 (JJHCS_00002726) (█████████████

████████████████████████); SaveOnSP Ex. 113 (JJHCS_00237184) (█████████████

---

[11] SaveOnSP mischaracterizes the PAFA+ platform, which holds data entered by third-party
vendor TrialCard. ████████████████████████████████████████████████
████████████████████████████████████████████.  Ex. 9 (July 17, 2024 Ltr. from J.
Long to E. Snow).  And as JJHCS told SaveOnSP months ago, ███████████████████
████████████████████████" *Id.*

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 16

███████████████████████████████████████████████████████████████████);

SaveOnSP Ex. 114 (JJHCS_00222271) (████████████████████████████████

████████████████████████████████████████████████████████████████

████████████); SaveOnSP Ex. 115 (JJHCS_00237101) (████████████████

████████████████████████████████████████████████████████████████

██████████). ████████████████████████████████████████████████

██████████████████████████████████. *See* SaveOnSP Ex. 114 (JJHCS_00222271).

In █████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

SaveOnSP Ex. 113 (JJHCS_00237184).

      SaveOnSP mischaracterizes the other cited exhibits. For example, █████████████

████████████████████████████████████████████████████████████████

██████████ Mot. at 18. ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

SaveOnSP Ex. 119 (JJHCS_00236825). ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ *See* SaveOnSP Ex. 12 (██████████████████

██████████; SaveOnSP Ex. 117 (██████████████████████████████████

█████████████████████████████"). None of this makes Kleemeier necessary or proportional

to the needs of the case.

16

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 17

### 8.    Mitchell Akright

SaveOnSP claims that Akright should be added as a custodian because ███████████ ███████ 'on the IMM CAP Tiger Team."    Mot. at 18 (quoting SaveOnSP Ex. 121 (JJHCS_00183029)). ████████████████████████████████████████████ ███████████████████████████.    SaveOnSP Ex. 121 (JJHCS_00183029) (███████ ████████████████████████████████████████████ ████████████).  Any relevant documents will be captured in the files of these custodians.[12]

SaveOnSP asserts that existing custodians are insufficient because Akright "worked independently from current custodians to develop J&J's training materials ███████████."  Mot. at 18–19 (citing SaveOnSP Ex. 123 (JJHCS_00145337) and SaveOnSP Ex. 124 (JJHCS_00146296)).  ████████████████████████████████████ ████████████████████████████████.  *See* SaveOnSP Ex. 122 (JJHCS_00130245) at -273.  And in any event, SaveOnSP does not explain why these internal training materials are relevant, much less proportional to the needs of the case.

SaveOnSP also suggests that Akright should be added as a custodian because he "sought feedback about how accumulators and maximizers, and J&J's responses to them, were received by patients, which is relevant to J&J's GBL claim."  Mot. at 19.  ████████████████ ████████████████████████████████████████████ ████████████████████e.  *See, e.g.*, SaveOnSP Ex. 125 (JJHCS_00261232) (███ ████████████████████████████████████████████

---

[12] Indeed, despite demanding Akright for a seven-year period, SaveOnSP's cited exhibits cover just a four-month window related to his work on this team (December 2021 to March 2022).

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 18

██████). And where SaveOnSP suggests that Akright had a unique role, the cited documents

refute that claim. ████████████████████████████████████████████████████

█████████████████████████████████ Mot. at 19 (citing SaveOnSP Ex. 127

(JJHCS_00130759)). ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████. SaveOnSP Ex. 127 (JJHCS_00130759).

**9.     Cecelia Trybus**

Trybus, the lead for the Stelara withMe "Nurse Navigators" Program, is irrelevant to this

case. *See* SaveOnSP Ex. 131 (JJHCS_00144065). As the name implies, ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████.

SaveOnSP Ex. 136 (JJHCS_00181615) at -624, -629. ████████████████████████████

████████████████████████████████████████████████████." *Id.* at

-625. ██████████████████████████████████████████████████████████

███████████████████████████████████████████. *See id.* at -637, -641 ████████

████████████████████████████████████████████████████████████████

████████████████

Contrary to SaveOnSP's suggestion, Trybus did not answer "questions about J&J's

position on maximizers." Mot. at 20 (citing SaveOnSP Ex. 133 (JJHCS_00218944) (███████

███████████████████████████████████████████)). Nor did she provide

feedback, as SaveOnSP suggests, on a communication sent to "all Maximizer impacted patients."

*Id.* ████████████████████████████████████████████████████████████

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 19



.” SaveOnSP Ex. 134 (JJHCS_00182184) (███████████
██████████████████████████████████████████ s).

██████████████████████████████████████████

██████████.” Mot. at 20; *see* SaveOnSP Ex. 136 (JJHCS_00181615) at -615 (████
██████████████████████████████████████ ). ████

██████████████████████████████████████████

███████████████████████. *See* SaveOnSP Ex. 137 (JJHCS_00164517)
(██████████████████████████████████████████

██████ ); SaveOnSP Ex. 138 (███████████████████████

██████████████████ ).

Finally, SaveOnSP attempts to present Trybus as being uniquely situated, given that there
are no current custodians from Trybus's team. Mot. at 19 n.13. But that is a mistaken premise:
no one on Trybus's team is a custodian because they, like Trybus herself, are all irrelevant.[13]

## II.    SaveOnSP's  Overbroad, Burdensome  Search  Terms  Elicit  Irrelevant  Documents

SaveOnSP has not shown that these nine individuals possess unique, relevant documents,
and the Court should deny SaveOnSP's motion on that basis alone. But even if the Court compels
JJHCS to add one of these custodians, Your Honor should not bless SaveOnSP's requested search
terms, which are exceedingly overbroad and impose an undue burden on JJHCS.

SaveOnSP claims here—as it always does—to have "tailored" its search terms to each of
the custodians at issue. Mot. at 1. There is nothing "tailored" about SaveOnSP's search term

---

[13] And again, SaveOnSP demands Trybus for an exceedingly broad seven-year time period given
that it cites exhibits limited to a 16-month window (June 2022 to October 2023).

Honorable Freda L. Wolfson, U.S.D.J.
October 29, 2024
Page 20

proposal, which includes nine terms to be run over all custodians for a seven-year period, as well as up to 17 additional search terms to be run over each custodian's individual files. Some of these are terms Your Honor has already rejected.[14] Others are untethered to the issues in this case and so will return numerous false hits if run across the files of "brand" employees who worked every day on drugs like Stelara and Tremfya.[15] Thus, if the Court sees fit to compel JJHCS to increase its custodian count past the 46 it already has designated, it should require SaveOnSP to make an appropriate search term proposal as to any new custodian that is limited to the years of his or her relevant work, and directly connected to an actual gap in JJHCS's productions to date.

**CONCLUSION**

For the foregoing reasons, Your Honor should deny SaveOnSP's October 9, 2024 motion.

Respectfully submitted,

s/ *Jeffrey J. Greenbaum*
JEFFREY J. GREENBAUM

cc:    Counsel of record

---

[14] These terms are:

TrialCard w/40 (accumulator* OR maximizer* OR CAPm OR CAPa OR "adjustment program")

((violat* OR bar* OR prohibit* OR breach* OR preclude* OR allow* OR permit*) w/50 (accumulat* OR maximiz*)) w/50 ("other offer*" OR coupon* OR "discount*OR" "savings card*" OR "free trial*"))

[15] For example:

(STELARA* OR TREMFYA* OR CarePath OR JCP OR "Savings Program") w/25 (6000 OR 6,000 OR limit OR eliminate)

# EXHIBIT 2

Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104
212.390.9000

Selendy|Gay

Taylor Stone
Associate
212.390.9088
tstone@selendygay.com

January 6, 2025

<u>Via E-mail</u>

Julia Long
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jlong@pbwt.com

**Re:    Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC (Case No.
2:22-cv-02632-JKS-CLW)**

Dear Julia,

We write regarding J&J's Responses and Objections ("R&Os") to SaveOn's 14th
Set of Requests for Production ("RFPs"). RFP No. 107 seeks all final Master Service
Agreements regarding the relationship between J&J and Field Based Representatives and
Access Specialists ("FRAS"), including agreements with AmerisourceBergen and Xcenda.
RFP No. 108 seeks documents sufficient to show the relationship between J&J and its
FRAS, including work orders, statements of work, and change orders with the same two
vendors.

*First,* to the extent that J&J objects that SaveOn did not define entities with whom
J&J itself contracted, please see the below definitions:

- "<u>AmerisourceBergen</u>" means any and all predecessors and successors in
  interest, assignees, parents, subsidiaries, affiliates, divisions or departments,
  agents, representatives, directors, officers, employees, committees, attorneys,
  accountants, and all persons or entities acting or purporting to act on behalf or
  under the control of AmerisourceBergen Corporation, including Xcenda, LLC
  and Cencora, Inc.

- "<u>Field Based Reimbursement and Access Specialists ('FRAS')</u>" means persons
  who work for, contract with, or collaborate with JJHCS or any JJHCS Hub
  Entity to disseminate information to patients and/or healthcare providers about
  J&J's copay assistance programs, address patient access issues for Janssen

Julia Long
January 6, 2025

Drugs, or identify barriers to patient access for JJHCS or any JJHCS Hub Entity. This includes, but is not limited to, individuals to whom JJHCS or JJHCS Hub Entities refer as FRAS or field reimbursement access specialists, as well as individuals whom You understand to be FRAS representatives.

- "<u>Xcenda</u>" means any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Xcenda, LLC.

Please confirm that J&J will not withhold any documents based on its objections to these definitions.

*Second*, there is no merit to J&J's refusal on relevance grounds to produce any additional documents responsive to RFP Nos. 107 and 108. J&J's R&Os to SaveOn's 14th RFPs at 7, 8. J&J's FRAS play a key role in implementing CarePath and administering CAP.[1] Employed by AmerisourceBergen and Xcenda, *see* JJHCS_00118921 at -923; JJHCS_00002638, J&J's FRAS directly communicate with patients and healthcare providers about the CAP program, maximizers, accumulators, and SaveOn. *See, e.g.*, JJHCS_00158977 at -980 (████████████████████████████████████████████████████████████████████████████████████████████████████████████████); JJHCS_00002613 ("F███████████████████████████████████████████████████████████████████████████████████████████████████████); *see also* JJHCS_000741114 at -114 (███████████████████████████████████████████████████████████████████████████████████████████████████████). This work is directly relevant to, among other things, J&J's allegations of public harm and SaveOn's mitigation defense.

FRAS perform a host of other work relevant to SaveOn's mitigation defense. For example, t██████████████████████████. *See, e.g.*, JJHCS_00158977 at -980; JJHCS_00183456 at -456 (████████████████████████████████F███████████████████████, ███████████████████████████████████████ JJHCS_00159195; *see also* JJHCS_00158977 at -980 (e█████████████████████████████████

---

[1] J&J appears to concede that the FRAS conduct such relevant work by objecting to RFP Nos. 107 and 108 as duplicative of RFP Nos. 92 and 93 respectively. RFP Nos. 92 and 93 mirror RFP Nos. 107 and 108 but seek the same information for third parties "involved in the administration, management, design, and marketing of CarePath," so J&J must agree that AmerisourceBergen and Xcenda play a role in the "administration, management, design, and marketing of CarePath" as entities responsible for J&J's Field Based Representatives and Access Specialists ("FRAS").

Julia Long
January 6, 2025



); JJHCS_00183456 at -458 (

); *id.* at -456-57 (

).

*See, e.g.,* JJHCS_00181852 (J

); JJHCS_00158952 at -952

).

Please confirm that J&J will not withhold any documents based on its relevance objections.

*Third*, while J&J objects to RFP Nos. 107 and 108 as duplicative of RFP Nos. 92[2] and 93[3], respectively, J&J's R&Os to SaveOn's 14th RFPs at 7, 8, J&J does not appear to have produced any documents responsive to RFP Nos. 92 and 93 concerning FRAS, AmerisourceBergen, or Xcenda that could duplicate the documents requested by RFP Nos. 107 and 108. If you believe that you have already produced MSAs relating to the relationship between J&J and FRAS, including those from AmerisourceBergen and Xcenda, please identify them by Bates number. If you have not done so, please confirm that J&J will produce the requested documents regarding FRAS, AmerisourceBergen, and Xcenda in its next production.

*Fourth*, J&J claims that it has "already agreed to produce" documents responsive to RFP No. 107 to the extent that they are also responsive to RFP No. 8, which concerns all documents "with or regarding SaveOnSP." J&J's R&Os to SaveOn's 14th RFPs at 7. Please advise whether J&J believes that all MSAs relating to the relationship between J&J and its FRAS, including MSAs with AmerisourceBergen and Xcenda, are responsive to RFP No. 8. If you believe that J&J has already produced all MSAs relating to the relationship between JJHCS and FRAS, including those from AmerisourceBergen and Xcenda, please identify them by Bates number. If you have not done so, please confirm that J&J will produce them in its next production.

---

[2] RFP No. 92 seeks "all Master Service Agreements (MSAs) with third parties involved in the administration, management, design, and marketing of CarePath." SaveOn's 8th RFPs at 9.

[3] RFP No. 93 seeks "[d]ocuments sufficient to show all final contracts, including Work Orders (WOs), Statements of Works (SOWs), and Change Orders (COs), with third parties involved in the administration, management, design, and marketing of CarePath." SaveOn's 8th RFPs at 10.

Julia Long
January 6, 2025

*Fifth*, while J&J objects that these RFPs are unduly burdensome, there is no apparent burden to J&J producing the relevant MSAs requested by RFP No. 107. As for RFP No. 108, while reserving all rights, SaveOn asks J&J to produce in the first instance the relevant change orders, statements of work, and work orders for Amerisource Bergen and Xcenda; there should not be any undue burden to producing these documents, which likely can be collected from accessible non-custodial sources. Please confirm that J&J will not withhold these documents based on burden.

Please respond by January 13, 2025. We reserve all rights and are available to meet and confer.

Sincerely,

/s/ Taylor Stone

Taylor Stone
Associate

4

# Exhibits 3-5 Confidential

# Filed Under Seal

# Robinson+Cole

E. Evans Wohlforth, Jr.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

March 11, 2025

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

> Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,***
> ***Express Scripts, Inc., and Accredo Health Group, Inc.***
> <u>**No. 2:22-cv-02632 (JKS) (CLW)**</u>

Dear Judge Wolfson:

SaveOn[1] writes in reply to J&J's opposition to SaveOn's motion to compel J&J to search for and produce documents responsive to SaveOn's RFP Nos. 107 and 108. Contrary to J&J's assertions, the FRAS did relevant work on CarePath and the CAP program—███████████ ██████████████████████. J&J has no valid basis to withhold the limited set of documents that SaveOn seeks regarding J&J's relationship with the FRAS.

---

[1] SaveOn uses the defined terms from its opening motion.

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                    Page 2

## I.      The FRAS Are Relevant

J&J's primary argument in opposition is that the FRAS purportedly "have no material role in CarePath administration or the CAP program" and "merely [] forward or escalate CAP-related concerns" to others. Opp. 2. The evidence shows otherwise.

J&J does not dispute that the FRAS helped patients enroll in CarePath and advised patients about CarePath's eligibility requirements. *See, e.g.*, J&J Ex. 3 at slide 18 (█████████████████ ██████████████████████████████); Ex. 3 at -.012, -.020-24 (██████████████████████ ██████████); Ex. 38 at -.001, -.153-56 (JJHCS_00010412) ████████████████████████ ████████t). This included the eligibility of patients on SaveOn-advised plans. Ex. 7 at -150.001, -150.054 (████████████████████████████████████████████████ ████████████████████████).

J&J concedes that it trained the FRAS in "identifying CAP-related issues," including whether patients enrolled in CarePath were on plans with "accumulators and maximizers (or 'optimizers' like SaveOnSP)." Opp. 5. J&J does not dispute that this training was extensive. *See* Ex. 8 at -133 (ta████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████); Ex. 13 at -959 (████████████████████████████████████████████████████████████████████ ██████████████████████); Ex. 33 at -817 (████████████████████████████████████ ██████████). J&J also does not dispute that the training included how CarePath's terms and conditions applied to patients on SaveOn-advised plans. Mot. 3 (citing Exs. 7, 9).

J&J also does not dispute that the FRAS identified CarePath patients who were on plans with accumulators, maximizers, or SaveOn. Mot. 4 (citing Ex. 14) (█████████████████ ██████████); Ex. 15 at -952 (██████████████████████████████████████████ ████████████████████████████████████████████████████████████)).

The FRAS not only identified patients on SaveOn-advised plans—i██████████████
████████████████████████████████████████████s. *See, e.g.*, Ex. 39
(JJHCS_00192239) at -240, Row 3302 (█████████████████████████████████████
████████████████████████████████████████████████████████████████████████

████████); *see also id.* at Row 3796 (███████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████) (emphasis added)); Ex. 39 (JJHCS_00192239) (████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
█████████████████████████████████).[2]

  J&J does not address most of the evidence that the FRAS regularly told CarePath patients

to ████████████ Mot. 3-4 (citing, *e.g.*, Ex. 10 at -599-601) (f████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████; Ex. 11 at -860 (████████████████████████████
████████████████████████████████████████████████████████████████████████
████); Ex. 13 at -961 (███████████████████████████████████████████████████

―――――――――――――――――――――

[2] J&J asserts, based on a single email, that ███████████████████████████████████
████████████. Opp. 6 (discussing Ex. 25); *see also* Ex. 39 at Row 3928 (JJHCS_00192239) ("█
████████████████"). The documents show, at
most, that ██████████████████████████████████████████████████████████████. *Com-
pare* Ex. 39 at Row 3928 with *id.* at Row 3302 (f████████████████████████████████████
████████████████████████████████████) and *id.* at Row 3796 (██████████████████████
████). It does not outweigh the evidence discussed in text showing that the FRAS regularly re-
quested benefits investigations.

████████████████████████████████████████████████████████████████

██████████████████████████████████████████ )).[3]

        The FRAS told patients to ████████████████ because J&J trained the FRAS to do so. ████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████ Ex. 40 at -791, 792 (JJHCS_00181780) (talking points); Ex. 41

at -263 (JJHCS_001822648) (similar); Ex. 7 at -150.079 (██████████████████████████████

███████████████████. In J&J's words, these talking points ██████████████████████████

████████████████████████████████████████████ Ex. 42 at -763

(JJHCS_00253762) (emphasis added). That is, J&J told the FRAS to encourage patients to both

enroll in CarePath and use their plans' SaveOn-administered benefit—the same conduct that it

says breaches its T&Cs. Am. Compl. ¶¶ 85-86, 182-87.

        J&J also concedes that the FRAS could help CarePath patients on SaveOn-advised plans

receive alternative sources of funding from J&J for their Janssen drugs. J&J does not dispute that,

if a patient encountered an issue relating to an accumulator or maximizer, the FRAS had the au-

thority to implement an ████████████████████████████ Mot. 8-9 (citing Exs. 32, 33).



---

[3] The only exhibit that J&J addresses on this point, Exhibit 12, is ██████████████████████
████████████████████████████████████████████████████████████████
████████████████████ Ex. 12 at -853-54, 855.001. J&J concedes that t████████████████
████████████████████ l. Opp. 7. J&J tries to imply that the document shows that J&J did not
approve the guide because it says that the FRAS needed ████████████████████████████
Opp. 7 (citing Ex. 12 at -853), but J&J did not propose this training because it believed the guide
was inaccurate—████████████████████████████████████████████████████████████
██████████████ Ex. 12 at -853-54 (████████████████
████████████████████████ ). J&J has never denied that it
approved this guide. *Compare* Jan. 15, 2025 Tr. at 38:1-5 (stating that the guide was created by an
"outside provider" and was a draft, but not addressing whether the draft was approved).

J&J admits that these solutions included "help[ing] patients … take advantage of alternative support programs" to obtain their specialty drugs. Opp. 6-7. This reference to "alternative" funding is highly relevant, because it shows that J&J believed that CarePath patients could receive funds from other sources to help cover the costs of their drugs, a belief that is flatly contradictory to J&J's position in this litigation on the meaning of the May-Not-Use Provision. *Contra* Opp. 7.

This evidence easily establishes the FRAS's relevance.

## II.    J&J Has No Valid Basis to Withhold the Requested Documents

Given the FRAS's patent relevance, J&J cannot withhold the limited documents that SaveOn seeks about their relationship with J&J.

*First*, while J&J says that the FRAS contracts are irrelevant because the FRAS did not "administer" CarePath or the CAP program, Opp. 7 & n3, the evidence is overwhelming that the FRAS enrolled patients in CarePath, identified patients on SaveOn-advised plans, directed TrialCard to investigate if patients were on such plans, told those patients to "enroll" in SaveOn, and helped them secure funds to cover their copays if their CarePath funds ran out. *Supra* Section I. This meets any commonsense definition of helping to administer CarePath and the CAP program.

*Second*, while J&J says the FRAS contracts will not provide any new information, Opp. 8, those agreements likely will establish J&J's contractual right to direct the FRAS's actions. If the FRAS acted only pursuant to J&J's direction, it would help establish that J&J directed the FRAS to regularly direct patients to "enroll" in SaveOn, *see, e.g.*, Exs. 9 at -980, 10 at -599-601, 12 at -853, 855.001, 25 at -573-75, Ex. 39 (JJHCS_00192239); Ex. 40 at -791 (JJHCS_00181780); *compare* Opp. 7 (J&J denying that it approved talking points directing the FRAS to tell patients to "enroll" in SaveOn).

Hon. Freda L. Wolfson                                                    Page 6

*Third*, while J&J asserts that the requested documents would be cumulative of documents that it has already produced, Opp. 2, 8, J&J has not produced the contracts and agreements showing its relationship with and authority over the FRAS. This is a clear gap in J&J's production.

*Fourth*, while J&J asserts that SaveOn will use the contracts to seek additional discovery, Opp. 2-3, the only documents at issue are a limited set of contracts and relationship documents, all or most of which J&J apparently concedes are kept in non-custodial sources, Opp. 8. J&J cannot use the speculative burden of hypothetical future requests to withhold a modest set of documents that pose little to no burden to produce now.

* * * * *

SaveOn appreciates Your Honor's attention to this matter.

Hon. Freda L. Wolfson                                                    Page 7

Respectfully submitted,


/s/ *E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com


Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000
pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# Exhibits 38-42 Confidential

# Filed Under Seal