# EXHIBIT B

# Sills Cummis & Gross

A Professional Corporation

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102-5400**
**Tel: 973-643-7000**
**Fax: 973-643-6500**

Jeffrey J. Greenbaum
Member
Direct Dial: (973) 643-5430
E-mail: jgreenbaum@sillscummis.com

101 Park Avenue
New York, NY 10112
Tel: 212-643-7000
Fax: 212-643-6500

**CONTAINS INFORMATION MARKED AS AEO/CONFIDENTIAL**
**UNDER THE DISCOVERY CONFIDENTIALITY ORDER**

February 18, 2025

**<u>Via Email</u>**

Honorable Freda L. Wolfson, U.S.D.J.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068

>       **Re:      Opposition to SaveOnSP's February 3, 2025 Motion to Compel**
>       ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,***
>       **Civil Action No. 22-2632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of JJHCS, we write to oppose SaveOnSP's February 3, 2025 motion to compel

JJHCS to produce documents responsive to SaveOnSP's Request Nos. 77 and 78 (collectively, the

"Requests"), which seek documents related to JJHCS's purported work with patient advocacy groups

and pharmaceutical industry associations ("Advocacy Groups").

SaveOnSP served the Requests in December 2023 and JJHCS promptly objected. Despite

extensive motion practice on other issues in the months thereafter, SaveOnSP did not move to compel

on the Requests. It instead waited until the deadline for discovery motions in 2025, and then lobbed

out this motion amidst a slew of others. SaveOnSP's indifferent attitude towards the Requests

underlines that these are not documents that it needs to defend itself. Rather, this is a low-priority

motion even for SaveOnSP, which has filed an endless stream of them.

Honorable Freda L. Wolfson, U.S.D.J.
February 18, 2025
Page 2

SaveOnSP's lack of enthusiasm has a logical basis: it has no plausible theory of relevance. The harm caused to patients *by the SaveOnSP scheme* is relevant because JJHCS has sued SaveOnSP under the New York General Business Law ("GBL") § 349, which includes harm to the public as an element. JJHCS has alleged that SaveOnSP harmed patients by denying them access to life-saving and life-changing medications, which among other things caused them stress and confusion. But that does not mean that every speculative and potential cause of stress and confusion in those patients' lives is somehow relevant to this case. And it certainly does not mean that SaveOnSP can manufacture out of whole cloth purported patient harm by the plaintiff, JJHCS, and then use that invention to justify discovery about issues that it finds interesting.

Specifically, SaveOnSP contends that it is entitled to explore whether JJHCS's work with Advocacy Groups somehow also caused patients stress and confusion. This is an exercise in projection that would make Freud blush. But it cannot justify discovery. There is not a scintilla of evidence to back up SaveOnSP's theory. And even if there was, any such "harm" would be irrelevant to the issues in this case. Even SaveOnSP does not contend that Advocacy Groups were denying patients access to drugs, and anyway neither Advocacy Groups nor JJHCS are defendants. There are no GBL claims against them. Nor could there be. It is entirely appropriate and logical for JJHCS to work with Advocacy Groups to help protect patients from SaveOnSP and other predatory companies. And to the extent that SaveOnSP is arguing that the harm to the public lay not in being denied access to drugs under the SaveOnSP program, but instead in learning the truth about what was happening to them from Advocacy Groups, that theory is nonsensical. Finally, the "credibility" of Advocacy Groups is not a triable issue—the parties are not going to be litigating at trial the credibility of amici

2

Honorable Freda L. Wolfson, U.S.D.J.
February 18, 2025
Page 3

who made submissions on a motion to dismiss.  Trial will be about whether SaveOnSP is liable for its conduct under the GBL and other claims.

It is time for SaveOnSP to focus on defending its conduct harming patients—not trying to enlist the Court in an entirely speculative discovery quest pursuing irrelevant evidence.  SaveOnSP's motion to compel should be denied.

## BACKGROUND

Although this dispute over the Requests is new to the Court, the Requests themselves are old. SaveOnSP served the Requests as part of its Sixth Set of Requests for Production, in December 2023. Ex. 1 (SaveOnSP's Sixth Set of Requests for Production) at 11–12.  In January 2024, JJHCS explained that it would not produce additional documents in response to the Requests because they sought "documents and communications unrelated to SaveOnSP and communications with multiple entities whose relevance has not been established."  Ex. 2 (JJHCS's R&Os to SaveOnSP's Sixth Set of Requests for Production) at 8–9.

After JJHCS objected to the Requests and refused to produce any documents, SaveOnSP responded in February 2024 and put forward its theory of relevance.  SaveOnSP said it needed to "investigate whether J&J used its influence over these groups to promote the false narrative that copay maximizers and accumulators . . . harm patients," which could have "caused confusion, concern and stress to patients."  Ex. 3 (Feb. 12, 2024 Ltr. from H. Miles to I. Eppler) at 2.  SaveOnSP did not articulate—and has never articulated—the nature of this alleged "confusion, concern, and stress." Nor has it offered any evidence of a single patient experiencing any such harm.  And it certainly has never even alleged, much less offered any supporting evidence, that the delays patients experienced

3

Honorable Freda L. Wolfson, U.S.D.J.
February 18, 2025
Page 4

in receiving medication and other serious harms that resulted from SaveOnSP's scheme somehow are

attributable to JJHCS or any Advocacy Groups working in conjunction with JJHCS.

JJHCS stood by its refusal, explaining that it would not produce documents because

SaveOnSP had offered this theory without "point[ing] to even a scintilla of evidence to support this

entirely speculative chain of reasoning." Ex. 4 (Feb. 22, 2024 Ltr. from I. Eppler to H. Miles) at 2.

Moreover, JJHCS explained that even if the theory that JJHCS's support of patient advocates could

have caused some form of "confusion, concern and stress to patients," the Requests would still be

irrelevant because "SaveOnSP has not asserted any claims against JJHCS." *Id.*

SaveOnSP appeared to give up. After JJHCS reiterated its position in a March 4, 2024

conferral, SaveOnSP went silent for three months. Without explanation, SaveOnSP then revived its

theory in June 2024. Ex. 5 (Jun. 6, 2024 Ltr. from H. Miles to I. Eppler) at 1 ("follow[ing] up on the

parties' March 4, 2024 meet and confer regarding" the Requests and reiterating that SaveOnSP was

purportedly "entitled to understand" whether JJHCS's work with advocacy groups "caused confusion,

concern and stress to patients"). Like a flickering bulb, SaveOnSP made several more half-hearted

attempts to return to the Requests thereafter, but often ignored JJHCS's correspondence regarding the

Requests for months at a time.[1] Each time SaveOnSP renewed its demand, JJHCS reiterated that the

documents sought by the Requests are irrelevant. *See, e.g.*, Ex. 8 (June 17, 2024 Ltr. from I. Eppler

to H. Miles) at 2 ("This case is about SaveOnSP's conduct . . . . It is not about whether JJHCS's work

to help patients afford their medications somehow causes them stress."); Ex. 9 (Oct. 8, 2024 Ltr. from

---

[1] *See, e.g.*, Ex. 6 (Dec. 10, 2024 Ltr. from H. Miles to I. Eppler) at 1 (December 2024 SaveOnSP letter "in response to [JJHCS's] October 8, 2024 letter regarding [the Requests]"); Ex. 7 (Oct. 3, 2024 Ltr. from T. Stone to I. Eppler) at 1 (October 2024 letter responding to an August 2024 letter from JJHCS regarding the Requests).

Honorable Freda L. Wolfson, U.S.D.J.
February 18, 2025
Page 5

I. Eppler to T. Stone) at 1 (explaining that SaveOnSP's claimed effort to "understand[] whether J&J used its influence to promote the narrative that SaveOn harms patients" concerns "an irrelevant issue," untethered to the allegations of harm against SaveOnSP).

Only on the eve of the discovery motions deadline did SaveOnSP demand once again that JJHCS produce documents responsive to the Requests. Ex. 10 (Jan. 22, 2025 Ltr. from D. Budetti to I. Eppler) at 1. Just a week earlier, Your Honor denied SaveOnSP's request for "broader" discovery regarding multiple Advocacy Groups and instead ordered JJHCS to run only "a very limited search term" as to a single group over one custodian. *See* Jan. 15, 2025 Tr. 105:5–107:21.[2] SaveOnSP nonetheless insisted that JJHCS run terms covering eight different entities over the documents of three custodians for a nearly eight-year period in order to satisfy the Requests. *Id*. at 2. JJHCS reiterated yet again that it objected to the Requests as irrelevant. Ex. 11 (Jan. 23, 2025 Ltr. from I. Eppler to D. Budetti). SaveOnSP's motion followed.

**ARGUMENT**

In support of its motion, SaveOnSP makes two principal arguments. ***First***, SaveOnSP renews its stale theory that discovery could show that "J&J, not SaveOn, was the source of alleged 'stress and confusion' about SaveOn's services." Mot. at 5. ***Second***, SaveOnSP claims that JJHCS must produce additional documents because JJHCS has put Advocacy Groups' "credibility" at issue. *Id*. at 4. Neither argument is persuasive. There is no evidence that that JJHCS or any Advocacy Groups are the "real" cause of the harm to patients at issue in this case, and it is hard to conceive of how they

---

[2] As Your Honor recognized, JJHCS offered to run this term during the parties' January 15, 2025 conference as a compromise. *See* Jan. 15, 2025 Tr. 105:21–24 ("I think what I heard from Ms. Long is 'if that's all you want, I guess we can run a very limited search term . . . .'"). JJHCS did not concede the relevance of discovery regarding the Advocacy Group in question or any other group.

Honorable Freda L. Wolfson, U.S.D.J.
February 18, 2025
Page 6

could be.  Indeed, even if there were support for SaveOnSP's vague speculation that Advocacy Groups funded by JJHCS caused patients some other, unspecified "stress and confusion," that would provide no defense to JJHCS's claims.  And referring to an organization in footnotes to a pleading or providing funding to a group that submitted an amicus brief does not make discovery about that group relevant to the claims and defenses at trial.  Regardless, JJHCS has already produced extensive discovery concerning its work with Advocacy Groups.  Further production would be disproportionate to the relevance of this issue to the claims and defenses in this case.  For all these reasons, the motion should be denied.

## A.    There Is No Evidence That JJHCS's Support Of Patient Advocacy Groups Caused Patient Harm

SaveOnSP argues that it is entitled to the documents covered by the Requests to prove that JJHCS, not SaveOnSP, caused "alleged 'stress and confusion' about SaveOn's services" by "fund[ing] negative campaigns against accumulators, maximizers, and SaveOn."  Mot. at 5.  This is both factually and legally meritless.

On the facts, SaveOnSP has not provided any evidence in support of this argument, as a review of the relied-upon documents demonstrates.  For example, SaveOnSP points to several documents about JJHCS's efforts to inform patients about the "detrimental impacts" of programs like SaveOnSP on "medication access and affordability."  Mot. at 5 (citing SaveOnSP Ex. 10 (JJHCS_00183953)).  But these documents only show that ███████████████████████████████████████████████ ███████████████████████████████████.  *See, e.g.*, SaveOnSP Ex. 12 (JJHCS_00227193) at -195 (describing "███████████████████████████████████████████████ ███████████████████████████████████████████████").  It is no secret that JJHCS is critical of SaveOnSP and similar companies, and nothing in these documents even suggests that these

Honorable Freda L. Wolfson, U.S.D.J.
February 18, 2025
Page 7

efforts by JJHCS and patient advocacy organizations are themselves the cause of patient stress or confusion.   By contrast, SaveOnSP's own internal documents indicate that ███████████████████

██████████████████████████████████████████████████████ Ex.  12

(SOSP_0685665), ███████████████████████████████ Ex. 13  (SOSP_0409971).

Without any evidence to justify it, SaveOnSP's speculation should be thrown out.

But the legal underpinning of SaveOnSP's motion is also untenable.  SaveOnSP claims any "stress and confusion" that JJHCS may have caused through advocacy work "provides a defense to J&J's G.B.L § 349 claim because it offers an alternative cause for any 'undue stress and confusion' . . . that J&J alleges SaveOn caused."  Ex. 3 (Feb. 12, 2024 Ltr. from H. Miles to I. Eppler) at 2. JJHCS's GBL claim, of course, requires a showing that SaveOnSP's conduct caused "harm to the public at large."  Dkt. No. 68 at 13.  JJHCS has alleged and will prove that SaveOnSP causes harm to the public at large by "causing undue stress and confusion," Am. Compl. ¶ 202, including through, *inter alia*, "false denials of [patients'] coverage" resulting in delayed medication and increased costs because funds spent on that medication do not count towards patients' ACA maximum or deductible. *See id*.  But SaveOnSP cannot defeat this claim by showing that patients also faced stress from other sources in their lives.  Even if SaveOnSP were to magically uncover evidence that JJHCS did something to cause patients stress and confusion—something SaveOnSP has been unable to do after many months and hundreds of thousands of pages of document discovery—that would not absolve SaveOnSP of the harm that it caused.  SaveOnSP has not alleged any claims against JJHCS, and it is SaveOnSP's conduct that will be on trial, not JJHCS's.

In this regard, SaveOnSP's own hand-picked example is illustrative.  SaveOnSP extensively discusses the case of Anndi McAfee.  Mot. at 5–6.  And it deserves close review.  Ms. McAfee is a

Honorable Freda L. Wolfson, U.S.D.J.
February 18, 2025
Page 8

rare disease patient and SaveOnSP victim who has written about her experience confronting "a frantic alert from my drug manufacturer that all of the money allotted me through its co-pay assistance program was gone—due to a copay maximizer program called SaveonSP" and having to make calls to "anyone and everyone, everywhere—multiple times" in order to ensure continued availability of the drug she needed to "live a 'normal' life." Anndi McAfee, *SaveOnSP's Copay Maximizer Failed Me: A Patient's Perspective*, Drug Channels (Nov. 13, 2020), https://www.drugchannels.net/2020/11/saveonsps-copay-maximizer-failed-me.html. SaveOnSP speculates that Ms. McAfee's stress might not have arisen from SaveOnSP's callous depletion of her co-pay assistance funds. Mot. at 5–6. Rather, because Ms. McAfee was "unaware of SaveOn's involvement with her health insurance and did not report any related stress or confusion" until JJHCS' vendor TrialCard connected her with Advocacy Groups, somehow JJHCS caused the "stress and confusion that it now blames on SaveOn." Mot. at 5–6.

Ms. McAfee's case demonstrates the absurdity of SaveOnSP's projection. SaveOnSP's conduct threatened her access to a drug upon which she critically relies. JJHCS's business partner TrialCard connected her to advocacy resources to help her and prevent similar harm from befalling others. Defying logic and shame, SaveOnSP argues that shedding light on the wrongdoing, not the wrongdoing itself, caused patients harm. In other words, if the patients were instead left in the dark to suffer in silence, they somehow would not have been harmed. This logic is self-serving and specious. SaveOnSP's peculiar argument that somehow JJHCS or Advocacy Groups harmed Ms. McAfee is entirely implausible and insufficient to carry SaveOnSP's burden to justify forcing JJHCS to run entirely new search terms over the documents of multiple custodians.

Honorable Freda L. Wolfson, U.S.D.J.
February 18, 2025
Page 9

**B.     JJHCS's Support Of Patient Advocacy Groups Is Irrelevant**

SaveOnSP also claims it is entitled to the documents covered by the Requests because JJHCS

"has either directly relied on or received support from each of the Advocacy Groups in this litigation."

Mot. at 4.  It argues that, because JJHCS has cited work by certain Advocacy Groups in its pleading

and because other such groups filed an amicus brief in support of JJHCS at the motion to dismiss

stage, the credibility of these advocacy groups is at issue in this case and SaveOnSP "is entitled to

discovery showing that J&J paid for and heavily influenced the anti-accumulator, anti-maximizer,

and anti-SaveOn narratives that these groups pushed."  *Id.* at 4–5.

SaveOnSP's argument fails.  Whether JJHCS supports patient advocacy groups that are

critical of maximizer programs like SaveOnSP has no bearing on the claims and defenses in this

lawsuit.  SaveOnSP does not even attempt to link this financial support to a single element of JJHCS's

claims or SaveOnSP's defenses.  That a paragraph and couple of footnotes in JJHCS's 206-paragraph

pleading cite to certain Advocacy Groups—for propositions that are not in dispute[3]—does not "put

---

[3] The claimed "reli[ance]" that SaveOnSP claims JJHCS placed on such Advocacy Groups in its
Amended Complaint, *see* Mot. at 4, amounts to the following:

(1) JJHCS observed in a footnote that the "All Copays Count Coalition" sought to "stop
payer use of programs that reclassify drugs as non-essential health benefits to
circumvent the ACA's limitations on patients' cost-sharing obligations, inflate copays
to drain the maximum amount of manufacturer copay assistance available, and refuse
to count copay assistance funds towards the patient's deductible or out-of-pocket-
maximum."  Am. Compl. ¶ 30 n.6.

(2) JJHCS stated that patient advocacy groups have "condemned" SaveOnSP and
similar groups because they prevent copay assistance funds from being credited toward
a patient's deductible or out-of-pocket maximums, and one such group—the Arthritis
Foundation—"praised [a court] ruling" striking down a certain rule promulgated by the
United States Department of Health and Human Services as "a victory for patients."
*Id.* ¶ 32 & n.9;

Honorable Freda L. Wolfson, U.S.D.J.
February 18, 2025
Page 10

the credibility of the Advocacy Groups" at issue so as to warrant additional discovery, and SaveOnSP

offers no legal authority to suggest otherwise.  Mot. at 4–5.  Nor does SaveOnSP provide support for

its contention that Advocacy Groups' submission of amicus briefs almost three years ago in support

of a long-resolved motion to dismiss provides a basis for discovery.  Discovery is in aid of the

adjudication at claims at trial—and the parties will not be litigating at trial the credibility of amici on

the motion to dismiss.  To be sure, it is no surprise that SaveOnSP is interested in the details of

JJHCS's internal procedures and its dealings with patient advocacy organizations, so that SaveOnSP

might better position itself in the public square.  But that is a reason to deny this motion, not grant it.

**C.      SaveOnSP Already Has The Documents It Needs Regarding Patient Advocacy Groups**

As SaveOnSP acknowledges, it has already received extensive discovery into these issues,

including documents showing JJHCS's grants to certain advocacy groups to support those groups'

work on issues related to this case.  *See* Mot. at 7–9.  SaveOnSP does not and cannot explain what

else it needs from JJHCS.  For example, SaveOnSP confirms in its own motion that JJHCS has already

produced:

- A document explaining that the " ███████████ " to accumulators, maximizers, and
SaveOnSP would include " ████████████████████
██████████████████████ ," consistent with the practices of its
pharmaceutical industry peers.  SaveOnSP Ex. 9 (JJHCS_00246561) (r██████████
████████████████████████████
██████████████████ ).

- Documents regarding J██████████████████████████████████
████████████████████████████████████████████

_____

(3)  JJHCS cited a publication by PHRMA for the proposition that "[h]ealth plans with
deductibles for prescription medications are becoming more common."  *Id.* ¶ 50.

It is a mystery what about this "reli[ance]" warrants discovery or a need to investigate the Advocacy
Groups' "credibility."

Honorable Freda L. Wolfson, U.S.D.J.
February 18, 2025
Page 11

███████████████████████████████████████████████." SaveOnSP Ex. 26
(JJHCS_00288446) at -447. These documents include █
█████████████████████, *id.* at -450, █████████████
███████████████████████████████████, SaveOnSP Ex. 24
(HOFFMAN_00000004).

• Documents discussing █████████████████████████████
  ████████████████████████████████████████████████████
  ███████████████████" SaveOnSP Ex. 20 (JJHCS_00289879) at -879–880.

• Documents on how JJHCS's advocacy on accumulators, maximizers, and SaveOnSP
  involved collaboration with advocacy groups to highlight the "████████████
  ████████████████████████████████████████████████████
  ████████████████████████████████████████████████████
  █████████████████████████████████████████" SaveOnSP Ex. 8
  (JJHCS_002365780) at -760–761.

There is no need to run eight new search terms over the documents of three custodians to

further cover this well-trodden ground. Any further production would be disproportionate and

cumulative of what has already been produced.

* * *

For the foregoing reasons, the Court should deny SaveOnSP's motion.

Respectfully submitted,

 */s/ Jeffrey J. Greenbaum*
JEFFREY J. GREENBAUM

cc: All counsel of record

11

# EXHIBIT 1

E. Evans Wohlforth, Jr.
ROBINSON & COLE
666 3rd Avenue #20
New York, NY 10174
212-451-2954
ewolforth@rc.com

David Elsberg
Andrew R. Dunlap
Meredith Nelson
Elizabeth Snow
SELENDY GAY ELSBERG, PLLC
1290 Avenue of the Americas
New York, NY 10104
212-390-9000
deslberg@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.,<br><br>     Plaintiff,<br><br>  v.<br><br>SAVE ON SP, LLC,<br><br>     Defendant. | Civil Action No. 22-2632 (ES) (CLW)<br><br>**DEFENDANT'S SIXTH REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

To: Jeffrey J. Greenbaum, Esq.
   SILLS CUMMIS & GROSS, P.C.
   One Riverfront Plaza
   Newark, NJ 07102
   973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq.
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, NY

*Attorneys for Plaintiff Johnson & Johnson*
*Health Care Systems Inc.*

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26 and 34,

Defendant Save On SP, LLC ("SaveOnSP"), requests Plaintiff Johnson & Johnson Health Care

Systems Inc.'s ("JJHCS"), to produce for inspection and copying the documents listed in these

Requests, to the office of the undersigned within 30 days of being served or at a time and place

mutually agreed by the parties and ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that this demand for production of documents

shall be deemed continuing in nature so as to require supplemental responses if Plaintiff or Plain-

tiff's counsel obtain or locate further or additional documents subsequent to the time Plaintiff's

responses are served.

Dated:  December 28, 2023                    By: */s/ E. Evans Wohlforth, Jr.*
                                                E. Evans Wohlforth, Jr.
                                                ROBINSON & COLE
                                                666 3rd Avenue #20
                                                New York, NY 10174
                                                212-451-2954
                                                ewolforth@rc.com

                                                David Elsberg
                                                Andrew R. Dunlap
                                                Meredith Nelson
                                                Elizabeth Snow
                                                SELENDY GAY ELSBERG, PLLC
                                                1290 Avenue of the Americas
                                                New York, NY 10104
                                                212-390-9000
                                                deslberg@selendygay.com
                                                adunlap@selendygay.com
                                                mnelson@selendygay.com
                                                esnow@selendygay.com

                                                *Attorneys for Defendant Save On SP, LLC*

3

## DEFINITIONS

The following definitions apply to these Interrogatories:

1.    The singular form of a word includes the plural, and vice versa.

2.    Any tense of a verb includes all tenses.

3.    Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.    Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.    "2023 Best Price Rule" means 85 Fed. Reg 87,000 which required that, starting on January 1, 2023, manufacturers must ensure that the full amount of copay assistance programs is passed on to the patient and that no other entity receives any price concession, in order to exclude any such benefits from the calculation of the drug's "Best Price."

6.    "Accredo" means Accredo Health Group, Inc. as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Accredo.

7.    "Accumulator" means a copay accumulator service, including (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which

4

members remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay accumulator."

8.      "All," "any," and "each" mean any and all.

9.      "And" and "or" are construed both conjunctively and disjunctively.

10.     "Archbow" means Archbow Consulting, LLC and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Archbow.

11.     "Avalere" means Avalere Health LLC and any predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions and departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of or under the control of Avalere.

12.     "Benefits Investigation" means any process by which JJHCS, or any entity acting on its behalf, receives information regarding the pharmacy benefits provided by a health plan, including information regarding prior authorization, costs, Essential Health Benefits status, patient eligibility, and related information.

13.     "Best Price" is the lowest price available from the manufacturer during the rebate period to any wholesaler, retailer, provider, health maintenance organization, nonprofit entity, or governmental entity in the United States in any pricing structure.

14.     "Best Price Quarterly Report" is a quarterly report submitted by a pharmaceutical manufacturer to the Centers for Medicare & Medicaid Services in compliance with 42 C.F.R. § 447.510(a).

15.    "CarePath" means the Janssen copay assistance program marketed under the name CarePath that provides financial support services for patients using specialty drugs researched, developed, and marketed by the pharmaceutical companies of Johnson & Johnson, including Janssen (as defined herein).

16.    "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

17.    "Copay Assistance" means any type of patient support that allows a drug manufacturer to pay all or some of a patient's prescription drug cost for that manufacturer's drug.

18.    "Document" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

19.    "ESI" means "electronically stored information" as defined in the Federal Rules of Civil Procedure.

20.    "Express Scripts" means Express Scripts, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Express Scripts.

21.    "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

6

22.    "Including" means including but not limited to.

23.    "Janssen" means Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, and Actelion Pharmaceuticals U.S., Inc., as well as any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Janssen Biotech, Inc., Janssen Pharmaceuticals, Inc., Janssen Products, LP, or Actelion Pharmaceuticals U.S., Inc.

24.    "Janssen Drug" means any Specialty Drug manufactured or sold by Janssen from any time for which patients may receive copay assistance, including BALVERSA, DARZELEX, DARZELEX FASPRO, ERLEADA, IMBRUVICA, OPSUMIT, PREZCOBIX, REMICADE, RYBREVANT, SIMPONI, SIMPONI ARIA, STELARA, SYMTUZA, TRACLEER, TREMFYA, UPTRAVI, VENTAVIS, ZYTIGA, as well as any other specialty drugs that JJHCS asserts are at issue in this Action.

25.    "JJHCS" means Johnson & Johnson Health Care Systems Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Johnson & Johnson Health Care Systems Inc., including Centocor, Inc., Ortho Biotech Products LP, McNeil Pharmaceutical, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Scios Inc., Janssen Biotech, Inc., Janssen Oncology, Inc., Janssen Research & Development, LLC, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Actelion Pharmaceuticals U.S., Inc., Janssen BioPharma LLC, and Janssen Research & Development LLC.

26.    "<u>JJHCS Hub Entity</u>" means any entity retained or utilized by JJHCS to administer, in whole or in part, CarePath (including Lash Group and TrialCard), and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf of such an entity.

27.    "<u>Lash Group</u>" means The Lash Group, Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of The Lash Group, Inc.

28.    "<u>Maximizer</u>" means copay maximizer service, including (a) any service provided by Pharmacy Benefit Managers or insurance companies, or any third party providing services to the same, to manage the cost of specialty drugs by preventing manufacturer copay assistance from counting towards a patient's deductible and out-of-pocket maximum and under which members do not remain responsible for all or most of their plans' copays, co-insurance requirements, and deductibles once copay assistance has been exhausted; and (b) any definition JJHCS ascribes to the term "copay maximizer."

29.    "<u>Person</u>" means a natural person or legal entity including any business or governmental entity or association.

30.    "<u>Regarding</u>" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, concerning, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, referring to, reflecting, relating to,

8

reporting on, reviewing, setting forth, showing, stating, suggesting, summarizing, supporting, touching upon a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

31.    "Request" means any of these Requests for Production.

32.    "SaveOnSP" means Save On SP, LLC, and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of Save On SP, LLC.

33.    "Specialty Drug" means any specialty pharmaceutical, medication, biologic, or other therapy treated as a pharmaceutical for purposes of health plan benefit coverage.

34.    "TrialCard" means TrialCard Inc. and any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants, and all persons or entities acting or purporting to act on behalf or under the control of TrialCard Inc.

35.    "You" and "Your" means JJHCS.

## INSTRUCTIONS

1.    These Requests seek production of material in Your possession, custody, or control. Fed. R. Civ. P. 34(a)(1).

2.    These Requests seek production of nonprivileged information. Fed. R. Civ. P. 26(b)(1).

3.    These Requests seek production of material that is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).

4.     For each Request, either state that you will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons. Fed. R. Civ. P. 34(b)(2)(C).

5.     If you object to all or part of a Request, state whether you are withholding any responsive material based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

6.     If you object to part of a Request, specify the part and state that you will produce documents responsive to the rest. Fed. R. Civ. P. 34(b)(2)(C).

7.     If you withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable SaveOnSP to assess the claim, Fed. R. Civ. P. 26(b)(5)(A)(ii), including by indicating whether any document exists regarding the information, requested and stating, to the extent the privilege is being asserted in connection with a claim or defense governed by the state law, the state privilege rule being invoked, Local Rule 34.1.

8.     If a document responsive to a Request was once in your possession, custody, or control and has since been lost or destroyed, provide (a) a detailed description of the document; (b) the name of the author; (c) the names of all persons to whom the document was sent; (d) the date on which the document was prepared or initially received; (e) the date on which the document was lost or destroyed; and (f) if the document was destroyed, the manner of its destruction the reason for its destruction, the name of the person who requested or authorized its decision, and the name of the person who destroyed it.

9.      Produce documents as they are kept in the usual course of business. Fed. R. Civ. P. 34(b)(E)(i). For each document, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

10.      Produce electronically stored information in the form and manner required by any agreed-upon or court-ordered protocols. In the absence of any such protocol at the time of production, consult SaveOnSP for further instruction.

11.      Produce each document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

12.      Produce all versions of each document that are not identical to the original document (including all drafts) whether due to handwritten notation, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

13.      These Requests are deemed continuing. If after responding to any Request you learn that your response is in some material respect incomplete or incorrect, supplement or correct your response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).

## TIME PERIOD

Unless otherwise specified, these Requests relate to the time period from and including April 1, 2016, through the present.

## REQUESTS

77.      All Documents and Communications regarding efforts by JJHCS to work with, inform, sponsor, or influence patient advocacy groups regarding those organizations' public statements, patient outreach, or lobbying in any form about Copay Assistance programs, Copay Maximizers, Copay Accumulators, and/or SaveOnSP (including but not limited to AIDS Foundation of Chicago, AIDS Institute, Aimed Alliance, American Cancer Society Cancer Action Network, American Chronic Pain Association, American College of Rheumatology, American Diabetes

Association, American Kidney Fund, American Lung Association, American Society of Clinical

Oncology, Arthritis Foundation, Coalition of State Rheumatology Organizations, Crohn's & Co-

litis Foundation, Cystic Fibrosis Research Institute, Connecticut Oncology Association, COPD

Foundation, Epilepsy Foundation, Gay Men's Health Crisis, HealthyWomen, HIV + Hepatitis Pol-

icy Institute, Immune Deficiency Foundation, International Myeloma Foundation, Leukemia &

Lymphoma Society, LUNGevity Foundation, Lupus Research Alliance, Lupus Foundation of

America, Lupus Alliance Research, Mary M. Gooley Treatment Center, Men's Health Network,

Multiple Sclerosis Association of America, Nashville CARES, National Alopecia Areata Founda-

tion, National Multiple Sclerosis Association of America, National Multiple Sclerosis Society,

National Oncology State Network, National Organization of Rare Disorders, National Psoriasis

Foundation, Prevent Blindness, Pulmonary Hypertension Association, Rheumatology Research

Foundation, Scleroderma Foundation, Stand Up To Cancer, Susan G. Komen, The ALS Associa-

tion, Treatment Action Group, Triage Cancer, U.S. Pain Foundation, Vasculitis Foundation, and

ZERO Prostate Cancer).

78.     All Documents and Communications regarding efforts by JJHCS to work with, in-

form, sponsor, or influence pharmaceutical industry associations or groups regarding those organ-

izations' public statements, patient outreach, or lobbying in any form about Copay Assistance pro-

grams, Copay Maximizers, Copay Accumulators, and/or SaveOnSP (including but not limited to

Biotechnology Innovation Organization, Pharmaceutical Care Management Association, and

Pharmaceutical Research and Manufacturers of America).

79.     All Best Price Quarterly Reports created or submitted by JJHCS, Janssen, or their

affiliates for each Janssen Drug.

80. A copy of each final contract executed between JJHCS and TrialCard regarding CarePath, including without limitation any final work order.

81. All draft contracts exchanged between JJHCS and TrialCard regarding Copay Maximizers, Copay Accumulators, and/or SaveOnSP, including without limitation any draft work orders.

82. All Documents and Communications between JJHCS and Avalere regarding CarePath or Copay Assistance Programs, including regarding (1) Copay Maximizers, Copay Accumulators, and/or SaveOnSP, (2) patient satisfaction with Copay Assistance Programs, including but not limited to CarePath, (3) the impact of Copay Assistance Programs on patient adherence to medication, and (4) reevaluating or changing Copay Assistance Programs based on expected changes to the Best Price Rule.

# EXHIBIT 2

Jeffrey J. Greenbaum, Esq.
Katherine M. Lieb, Esq.
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

Adeel A. Mangi, Esq.
Harry Sandick, Esq. (admitted *pro hac vice*)
George LoBiondo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036

*Attorneys for Plaintiff Johnson & Johnson Health Care
Systems Inc.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAVE ON SP, LLC, <br><br> Defendant. | Civil Action No. 22-2632 (JKS) (CLW) <br><br> **PLAINTIFF JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S SIXTH REQUEST FOR PRODUCTION OF DOCUMENTS** |

## GENERAL OBJECTIONS

Johnson and Johnson Health Care Systems, Inc. ("JJHCS") incorporates each of the

General Objections below into its specific objections to each Request, whether or not each such

General Objection is expressly referred to in JJHCS's objections to a specific Request.

JJHCS's investigation of facts related to this Action is ongoing.  It reserves the right to

supplement, amend, modify, or correct its responses under Rule 26(e) should it discover

additional information or grounds for objections at any time prior to the conclusion of this

Action.  The following responses and objections are based upon information known at this time.

1.    JJHCS objects to the Requests to the extent that they seek documents or

information protected from disclosure by a privilege including, without limitation, the attorney-

client privilege, the work-product doctrine, the joint defense privilege, the common interest

privilege, the First Amendment privilege, the Federal Rules of Civil Procedure, the Local Rules

of the Court, and relevant case law.  The inadvertent production by JJHCS of information,

documents, materials, or things covered by any privilege or doctrine shall not constitute a

waiver of any applicable privilege or doctrine, including but not limited to, objections on the

basis of competency, confidentiality, relevancy, materiality, work-product, privilege, and/or

admissibility as evidence, as such objections may apply at trial or otherwise in this Action.

2.    JJHCS objects to the Requests to the extent that they seek documents or

information that are not relevant to a claim or defense or to the subject matter of this litigation.

Any response JJHCS makes to any Request shall not be deemed an admission that the response,

information, document, or thing produced is relevant to a claim or defense or to the subject

matter of this litigation, is reasonably calculated to lead to the discovery of admissible evidence,

is material, or is admissible as evidence.

1

3.      JJHCS objects to the Requests to the extent that they impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Court, the Court's orders, the discovery schedule entered in this Action, or any other applicable rule, order, or source of law.

4.      JJHCS objects to the Requests to the extent that they seek the production of documents or things that are equally available to or already in SaveOnSP's possession, custody, or control.  To the extent that JJHCS agrees in these responses to produce certain documents, information, or things, these responses shall not be construed as conceding that the documents, information, or things exist and/or are in the possession, custody, or control of JJHCS.  Instead, it means that JJHCS will perform a reasonable search for documents in its possession and produce such documents, information, or things to the extent any responsive documents, information, or things exist and are not otherwise protected from disclosure.

5.      JJHCS objects to the Requests to the extent that they seek documents or information that is obtainable from sources other than JJHCS in a manner that is more convenient, less burdensome, or less expensive.

6.      JJHCS objects to the Requests to the extent that they seek production of documents, records, tangible things, or other materials to the extent that such disclosure would violate a confidentiality agreement, court order, or applicable law.

7.      JJHCS objects to the Requests to the extent that they are vague and/or ambiguous.

8.      JJHCS objects to the Requests to the extent that they require interpretation by it in providing a response.  JJHCS responds to the Requests as it interprets and understands each Request as set forth.  If SaveOnSP subsequently asserts an interpretation of any Request that

2

differs from JJHCS's understanding of that Request, JJHCS reserves the right to modify or supplement its objections and responses.

9. JJHCS objects to the Requests to the extent that they are duplicative of other document requests, interrogatories, and/or other discovery requests.

10. JJHCS objects to the Requests to the extent that they are argumentative, lack foundation, or incorporate assertions that are disputed, erroneous, or irrelevant to the Action. JJHCS further objects to the Requests to the extent that they assume facts that do not exist or the occurrence of events that did not take place.

11. JJHCS objects to the Requests to the extent that they seek documents and information relating to any business affairs other than those that are the subject of the Action.

12. JJHCS objects to the Requests as overbroad and unduly burdensome to the extent they purport to require production of "all" or "any" documents where a subset of documents would be sufficient to provide the relevant information.

13. JJHCS objects to the Requests to the extent that they seek the production of documents that are not in JJHCS's possession, custody, or control.

## OBJECTIONS TO DEFINITIONS

1. JJHCS objects to the definition of the term "Archbow" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf or under the control of Archbow." JJHCS further objects to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS or documents that have already

3

been produced in response to discovery requests made by SaveOnSP to other entities, including

but not limited to Archbow.

     2.     JJHCS objects to the definition of the term "Avalere" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of Avalere." JJHCS further objects to the extent the term is used to seek documents and

communications in the possession of entities other than JJHCS or documents that have already

been produced in response to discovery requests made by SaveOnSP to other entities, including

but not limited to Avalere.

     3.     JJHCS objects to the definition of the term "Benefits Investigation" to the extent

the term is used to seek documents and communications in the possession of entities other than

JJHCS. JJHCS further objects to the definition on the grounds that the phrase "receives

information regarding the pharmacy benefits provided by a health plan" is vague and

ambiguous; JJHCS construes this phrase in the context of this case to refer to information

received through investigations into whether a patient is affiliated with SaveOnSP or another

copay accumulator or maximizer service. JJHCS further objects to the definition as irrelevant,

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it

encompasses instances in which JJHCS may receive "information regarding the pharmacy

benefits provided by a health plan" for purposes other than establishing whether a patient is

affiliated with SaveOnSP or another copay accumulator or maximizer service.

4

4.    JJHCS objects to the definition of the term "Janssen" to the extent the term is used to seek documents and communications in the possession of entities other than JJHCS. JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers, employees, committees, attorneys, accountants and all persons or entities acting or purporting to act on behalf" of those entities.

5.    JJHCS objects to the definition of the term "Janssen Drug" as irrelevant to the extent it purports to include drugs that are not covered by CarePath or otherwise implicated in SaveOnSP's scheme to misuse copay assistance funds.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to include "any Specialty Drug manufactured or sold by Janssen from any time for which patients may receive copay assistance," even if the drug is not covered by CarePath or otherwise implicated in SaveOnSP's scheme to misuse copay assistance funds.

6.    JJHCS objects to the definition of the term "JJHCS" to the extent it purports to include attorneys and accountants whose documents and communications may be outside of JJHCS's possession, custody, and control.  JJHCS further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of the case to extent it purports to include "any and all predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, . . . agents, [or] representatives" or purports to include entities and persons acting or purporting to act on behalf of or under the control of entities other than Johnson & Johnson Healthcare Systems, Inc., including Centocor, Inc.; Ortho Biotech Products LP; McNeil Pharmaceutical; Ortho-McNeil Pharmaceutical, Inc.; Ortho-McNeil-Janssen Pharmaceuticals,

Inc.; Scios Inc.; Janssen Biotech, Inc.; Janssen Oncology, Inc.; Janssen Research &

Development, LLC; Janssen Pharmaceuticals, Inc.; Janssen Products, LP; Actelion

Pharmaceuticals U.S., Inc.; Janssen BioPharma LLC; and Janssen Research & Development

LLC.

      7.     JJHCS objects to the definition of the term "JJHCS Hub Entity" as vague and

as irrelevant to the extent it purports to include entities other than those responsible for

administering CarePath during the relevant Time Period.  JJHCS further objects to the

definition as overbroad, unduly burdensome, and not proportional to the needs of the case to the

extent it includes "any and all predecessors and successors in interest, assignees, parents,

subsidiaries, affiliates, divisions or departments, agents, representatives, directors, officers,

employees, committees, attorneys, accountants and all persons or entities acting or purporting to

act on behalf" of those entities.  JJHCS further objects on the ground that the phrase

"administer, in whole or in part, CarePath" is vague and ambiguous.  JJHCS further objects to

the extent the term is used to seek documents and communications in the possession of entities

other than JJHCS.

      8.     JJHCS objects to the definition of the term "Lash Group" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of The Lash Group, Inc."  JJHCS further objects to the extent the term is used to seek

documents and communications in the possession of entities other than JJHCS.

9.      JJHCS objects to the definition of the term "TrialCard" as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it includes "any and all

predecessors and successors in interest, assignees, parents, subsidiaries, affiliates, divisions or

departments, agents, representatives, directors, officers, employees, committees, attorneys,

accountants and all persons or entities acting or purporting to act on behalf or under the control

of TrialCard Inc."  JJHCS further objects to the extent the term is used to seek documents and

communications in the possession of entities other than JJHCS.

## OBJECTIONS TO THE TIME PERIOD

1.      JJHCS objects to SaveOnSP's Requests as overbroad, unduly burdensome, and

not relevant to the subject matter of this Action to the extent they call for documents from after

November 7, 2023.  Unless otherwise noted, JJHCS will only provide information from April

1, 2016 through November 7, 2023 (the "Time Period").

## SPECIFIC RESPONSES AND OBJECTIONS

### Request No. 77

All Documents and Communications regarding efforts by JJHCS to work with, inform,
sponsor, or influence patient advocacy groups regarding those organizations' public statements,
patient outreach, or lobbying in any form about Copay Assistance programs, Copay Maximizers,
Copay Accumulators, and/or SaveOnSP (including but not limited to AIDS Foundation of
Chicago, AIDS Institute, Aimed Alliance, American Cancer Society Cancer Action Network,
American Chronic Pain Association, American College of Rheumatology, American Diabetes
Association, American Kidney Fund, American Lung Association, American Society of Clinical
Oncology, Arthritis Foundation, Coalition of State Rheumatology Organizations, Crohn's &
Colitis Foundation, Cystic Fibrosis Research Institute, Connecticut Oncology Association,
COPD Foundation, Epilepsy Foundation, Gay Men's Health Crisis, HealthyWomen, HIV +
Hepatitis Policy Institute, Immune Deficiency Foundation, International Myeloma Foundation,
Leukemia & Lymphoma Society, LUNGevity Foundation, Lupus Research Alliance, Lupus
Foundation of America, Lupus Alliance Research, Mary M. Gooley Treatment Center, Men's
Health Network, Multiple Sclerosis Association of America, Nashville CARES, National
Alopecia Areata Foundation, National Multiple Sclerosis Association of America, National
Multiple Sclerosis Society, National Oncology State Network, National Organization of Rare
Disorders, National Psoriasis Foundation, Prevent Blindness, Pulmonary Hypertension
Association, Rheumatology Research Foundation, Scleroderma Foundation, Stand Up To

Cancer, Susan G. Komen, The ALS Association, Treatment Action Group, Triage Cancer, U.S. Pain Foundation, Vasculitis Foundation, and ZERO Prostate Cancer).

**Response to Request No. 77**

In addition to the foregoing general objections, JJHCS objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP and communications with multiple entities whose relevance has not been established. JJHCS further objects to this Request to the extent it seeks information that is exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents and communications outside of the relevant Time Period. JJHCS further objects to this request as duplicative of Request Nos. 8, 20, and 21, and JJHCS incorporates by reference its response to those Requests.

To the extent that documents responsive to this Request are also responsive to Request No. 8, JJHCS has already agreed to produce, subject to prior objections, "all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period." *See* JJHCS's Responses and Objections to Defendant's First Request for Production of Documents. To the extent that documents responsive to this Request are also responsive to Request No. 20, JJHCS has already agreed to produce, subject to prior objections, "studies, reports, and publications that JJHCS has funded or supported regarding accumulator and maximizer programs generally, as well as internal communications about such documents."

*See* Feb. 17, 2023 Letter from A. LoMonaco to M. Nelson.  Subject to prior objections and those

presented here, JJHCS has or will update its production of any documents responsive to Request

Nos. 8 and 20 pursuant to the Court's November 7, 2023 Order.  *See* Dkt. No. 173.  Otherwise,

JJHCS will not search for or produce documents responsive to this Request.

**Request No. 78**

All Documents and Communications regarding efforts by JJHCS to work with, inform,
sponsor, or influence pharmaceutical industry associations or groups regarding those
organizations' public statements, patient outreach, or lobbying in any form about Copay
Assistance programs, Copay Maximizers, Copay Accumulators, and/or SaveOnSP (including but
not limited to Biotechnology Innovation Organization, Pharmaceutical Care Management
Association, and Pharmaceutical Research and Manufacturers of America).

**Response to Request No. 78**

In addition to the foregoing general objections, JJHCS objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS objects to

this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents

and communications unrelated to SaveOnSP and communications with multiple entities whose

relevance has not been established.  JJHCS further objects to this Request to the extent it seeks

information that is exempt from discovery and protected from disclosure by any privilege.

JJHCS further objects to this Request to the extent it uses the term "JJHCS" for the reasons

stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request as overbroad,

unduly burdensome, and not proportional to the needs of the case to the extent it seeks

documents and communications outside of the relevant Time Period.  JJHCS further objects to

this request as duplicative of Request Nos. 8, 20, and 21, and JJHCS incorporates by reference its

response to those Requests.

To the extent that documents responsive to this Request are also responsive to Request No. 8, JJHCS has already agreed to produce, subject to prior objections, "all non-privileged documents and communications in its possession with or regarding SaveOnSP from the relevant Time Period." *See* JJHCS's Responses and Objections to Defendant's First Request for Production of Documents. To the extent that documents responsive to this Request are also responsive to Request No. 20, JJHCS has already agreed to produce, subject to prior objections, "studies, reports, and publications that JJHCS has funded or supported regarding accumulator and maximizer programs generally, as well as internal communications about such documents." *See* Feb. 17, 2023 Letter from A. LoMonaco to M. Nelson. Subject to prior objections and those presented here, JJHCS has or will update its production of any documents responsive to Request Nos. 8 and 20 pursuant to the Court's November 7, 2023 Order. *See* Dkt. No. 173. Otherwise, JJHCS will not search for or produce documents responsive to this Request.

## Request No. 79

All Best Price Quarterly Reports created or submitted by JJHCS, Janssen, or their affiliates for each Janssen Drug.

## Response to Request No. 79

In addition to the foregoing general objections, JJHCS objects to this Request as irrelevant to the extent it seeks information unrelated to the claims and defenses in this Action, including information related to the calculation of Best Price for each Janssen Drug. Issues related to "Best Price" are completely irrelevant to this action. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter. JJHCS further objects to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to

this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "Janssen Drug" and "JJHCS" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS. JJHCS further objects to this Request to the extent it is duplicative of Request No. 28, and JJHCS incorporates by reference its response to that Request and its subsequent representations regarding that Request.

JJHCS will not search for or produce documents responsive to this Request.

**Request No. 80**

A copy of each final contract executed between JJHCS and TrialCard regarding CarePath, including without limitation any final work order.

**Response to Request No. 80**

In addition to the foregoing general objections, JJHCS objects to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege. JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period. JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "TrialCard" for the reasons stated in JJHCS's Objections to Definitions. JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP or copay assistance provided through the CarePath program. JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.

11

Subject to the foregoing objections, JJHCS will produce non-privileged final contracts between JJHCS and TrialCard from the Time Period concerning copay assistance provided through the CarePath program, to the extent that such contracts exist, are in JJHCS's possession, and can be located after a reasonable search.  Otherwise, JJHCS will not search for or produce documents responsive to this Request.

**Request No. 81**

All draft contracts exchanged between JJHCS and TrialCard regarding Copay Maximizers, Copay Accumulators, and/or SaveOnSP, including without limitation any draft work orders.

**Response to Request No. 81**

In addition to the foregoing general objections, JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all" documents and communications regarding a broad subject matter.  JJHCS further objects to this Request to the extent it seeks documents and communications that are exempt from discovery and protected from disclosure by any privilege.  JJHCS further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents outside of the relevant Time Period.  JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and "TrialCard" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks documents and communications unrelated to SaveOnSP.  JJHCS further objects to this Request to the extent it seeks documents and communications in the possession of entities other than JJHCS.  JJHCS further objects to this Request as irrelevant to any claim or defense in this Action to the extent it seeks non-final, draft contracts that were never adopted or that do not concern Copay Assistance or SaveOnSP.  JJHCS further objects to this Request as duplicative of Request No. 80.

12

JJHCS will not search for or produce documents or communications responsive to this

Request.

**Request No. 82**

All Documents and Communications between JJHCS and Avalere regarding CarePath or Copay Assistance Programs, including regarding (1) Copay Maximizers, Copay Accumulators, and/or SaveOnSP, (2) patient satisfaction with Copay Assistance Programs, including but not limited to CarePath, (3) the impact of Copay Assistance Programs on patient adherence to medication, and (4) reevaluating or changing Copay Assistance Programs based on expected changes to the Best Price Rule.

**Response to Request No. 82**

In addition to the foregoing general objections, JJHCS further objects to this Request as

overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it

seeks "all" documents and communications regarding a broad subject matter.  JJHCS further

objects to this Request as irrelevant to any claim or defense in this Action insofar as it seeks

information related to patient satisfaction with copay assistance programs (including copay

assistance programs not at issue in this Action), the impact of copay assistance programs on

patient adherence to medication, and purported changes to CarePath's copay assistance program

based on expected changes to the Best Price Rule.  JJHCS further objects to this Request as

irrelevant to the extent that it seeks documents and communications between JJHCS and Avalere

that are unrelated to SaveOnSP.  JJHCS further objects to this Request to the extent it seeks

documents and communications that are exempt from discovery and protected from disclosure

by any privilege.  JJHCS further objects to this Request as overbroad, unduly burdensome, and

not proportional to the needs of the case to the extent it seeks documents outside of the relevant

Time Period.  JJHCS further objects to this Request to the extent it uses the terms "JJHCS" and

"Avalere" for the reasons stated in JJHCS's Objections to Definitions.  JJHCS further objects to

this Request to the extent it seeks documents and communications in the possession of entities

other than JJHCS.

JJHCS will not search for or produce documents responsive to this Request.

Dated: January 29, 2024

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

By:     /s/Jeffrey J. Greenbaum
JEFFREY J. GREENBAUM
KATHERINE M. LIEB

PATTERSON BELKNAP WEBB & TYLER LLP
Adeel A. Mangi
Harry Sandick (admitted *pro hac vice*)
George LoBiondo
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff*
*Johnson & Johnson Health Care Systems Inc.*

# EXHIBIT 3

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

February 12, 2024

**Via E-mail**

Ian Eppler
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
ieppler@pbwt.com

**Re:**   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,***
***LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Ian,

We write regarding J&J's January 29, 2024 Responses and Objections to
SaveOn's Sixth Set of Requests for Production, served December 28, 2023.

## I.   General Objections & Definitions

*First*, J&J objects that certain "documents or things" sought by SaveOn "are
equally available to or already in SaveOnSP's possession, custody, or control" and
that other "documents or information . . . is [sic] obtainable from sources other
than" J&J. *See* R&Os at 2. But "it is not a bar to the discovery of relevant material
that the same material may be in the possession of the requesting party or obtain-
able from another source." *Fort Washington Res., Inc. v. Tannen*, 153 F.R.D. 78,
79 (E.D. Pa. 1994). Please confirm that J&J is not withholding any documents
based on that general objection.

*Second*, J&J objects to the requests to the extent that they seek production
of materials the disclosure of which "would violate a confidentiality agreement,
court order, or applicable law." *See* R&Os at 2. Please either (1) confirm that J&J
is not withholding any documents based on that general objection; or (2) identify
the documents that it withholds on that basis and promptly produce the relevant
agreements.

Ian Eppler
February 12, 2024

*Third*, J&J objects to the definition of "JJHCS" to the extent the term is used to seek documents and communications in the possession of J&J entities other than JJHCS, including Janssen. In the February 6, 2024 Order, the Court made clear that J&J's discovery obligations include Janssen. *See, e.g.*, February 6, 2024 Tr. at 14 ("The parties shall meet and confer on a new set of search terms to adequately vet documents in the possession of Plaintiff or any of the J&J entities responsible for drafting the Stelara & Tremfya T&Cs.").Please confirm that J&J is not withholding documents or communications on the basis of this objection and that J&J will search for relevant documents, including noncustodial documents, within Janssen. If J&J intends to stand on this objection, please explain the basis for J&J's objection.

## II.    Requests 77 and 78

SaveOn's RFP Nos. 77 and 78 seek documents and communications regarding efforts by JJHCS to work with, inform, sponsor, or influence various named patient advocacy groups (RFP No. 77) and pharmaceutical industry associations (RFP No. 78) regarding public statements, patient outreach, or lobbying about copay assistance programs, maximizers, accumulators, or SaveOn.

J&J objects to these requests because it seeks "documents and communications unrelated to SaveOnSP and communications with multiple entities whose relevance has not been established." Numerous publicly available sources show that J&J has sponsored and provided funding to each of the groups listed in the Requests and that each group made public statements or lobbied in favor of copay assistance programs, and/or against maximizers, accumulators, or SaveOn. It is thus reasonable to investigate whether J&J used its influence over these groups to promote the false narrative that copay maximizers and accumulators (which, according to J&J, includes SaveOn) harm patients. If that narrative impacted patients' experiences with the CarePath copay assistance program and caused confusion, concern and stress to patients, that provides a defense to J&J's G.B.L § 349 claim because it offers an alternative cause for any "undue stress and confusion," Compl. ¶ 114, that J&J alleges SaveOn caused.

J&J also recently produced additional documents in which Avalere, one of its vendors, proposed as a "" related to the Best Price that "                                                                    . JJHCS_00145576, at 40. J&J's efforts to provide financial assistance to patients related to their specialty drugs is relevant to SaveOn's defense that J&J failed to mitigate its damages.

J&J refuses to search for or produce additional documents responsive to these Requests, arguing that the documents it has agreed to produce in response to prior RFPs, most notably RFP No. 20, are sufficient. If J&J had conducted a fulsome search for "studies, report, and publications that JJHCS has funded or

2

supported regarding accumulator and maximizer programs generally, as well as internal communications about such documents," Feb. 17, 2023 Ltr. from A. Lo-Monaco to M. Nelson, that might be true, but it has not.

We therefore propose that J&J run the search terms included in Exhibit A, which are designed to target communications with and documents regarding the organizations we have identified through our independent research. Please confirm that J&J will run these search terms and produce documents responsive to RFPs 77 and 78. If J&J objects on the basis of burden, please provide hit counts for each term, individually and in the aggregate.

## III.    Request 79

RFP No. 79 seeks copies of each Best Price Quarterly Report created or submitted by J&J for each Janssen Drug. J&J first objects on the ground of relevance, arguing that "[i]ssues related to 'Best Price' are completely irrelevant to this action." We disagree. Issues surrounding the Best Price Rule are relevant to this litigation for numerous reasons, as explained in our January 26, 2024 letter regarding SaveOn's 5th RFPs. Jan. 26, 2024 Ltr. from E. Snow to I. Eppler, at 5–6. Most germane here, J&J alleges that SaveOn takes CarePath funds for its own purposes, Compl. ¶¶ 1–5, 8, 15, but appears to regularly certify that ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████ " JJHCS_00136632. The Best Price Quarterly Reports will reveal whether J&J accounts for its copay assistance program in government filings.

J&J also objects based on burden. That objection is inapposite here, where SaveOn has identified a discrete number of government reports that it seeks. J&J is required by federal law to submit "Quarterly reports" that "report product and pricing information for covered outpatient drugs to CMS not later than 30 days after the end of the rebate period." 42 C.F.R. § 447.510(a). We seek copies of these as-filed reports, which J&J presumably maintains in a noncustodial, centralized location. Please confirm that J&J will produce these reports.

## IV.    Requests 80 and 81

These requests seek a copy of each final, executed contract between JJHCS and TrialCard regarding CarePath (RFP No. 80), and all draft contracts exchanged between JJHCS and TrialCard regarding Copay Maximizers, Copay Accumulators, and/or SaveOn (RFP No. 81). J&J has agreed to produce non-privileged final contracts in response to RFP No. 80, but objects to RFP No. 81 as unduly burdensome and irrelevant.

Contrary to J&J's relevance and burden objection, this request is narrow and targeted. It is narrower even than RFP No. 80, as it seeks copies of only those draft contracts between J&J and TrialCard regarding Copay Maximizers, Copay Accumulators, and/or SaveOn, not all contracts between the two. These contracts

Ian Eppler
February 12, 2024

are critical to SaveOn's failure-to-mitigate and acquiescence defenses, and drafts are necessary to get the full story. In particular, as we have previously explained, J&J could have asked TrialCard to start identifying and excluding patients on plans advised by SaveOn earlier than January 2022, and for more drugs than just Stelara and Tremfya. Copies of draft contracts, especially contracts that were never adopted, are thus relevant to our defenses in this action.

Because this request can likely be fulfilled with a noncustodial production of the draft contracts, the burden on J&J is significantly less than a custodial production.

J&J also objects to RFP No. 81 "to the extent it seeks documents and communications in the possession of entities other than JJHCS." Please clarify this objection. In particular, please clarify whether you refuse to search for and produce documents from entities within J&J other than JJHCS, or whether you refuse to search for and produce documents from TrialCard.

## V.    Request 82

This request seeks documents and communications between JJHCS and Avalere regarding CarePath and copay assistance programs. J&J objects based on relevance and burden.

The documents requested are relevant to this litigation. To start, J&J claims that "information related to patient satisfaction with copay assistance programs" and "the impact of copay assistance programs on patient adherence to medication" are irrelevant to this action. But one of J&J's two charges in this lawsuit is that SaveOn violated N.Y. G.B.L. § 349 by causing patients enrolled in the CarePath program "undue stress and confusion," Compl. ¶ 114. And during the January 24, 2024 conference, J&J's counsel asserted that, due to SaveOn's actions, "[t]here are people who were deprived of the[ir] Stelara and Tremfya for weeks and as a result, instead of just taking medication, needed to have colon operations," and others who "were deprived of their oncology drugs for weeks." Jan. 24, 2024 Tr. 68. These are serious accusations, and SaveOn is entitled to investigate whether these harms were in fact caused by the "administrative thicket" that JJHCS's CarePath program creates. *Id.*

From J&J's prior productions, we understand that Avalere conducted primary source research on J&J's behalf, ." JJHCS_00157058, at 5. This research is relevant to J&J's G.B.L. § 349 claim.

In addition, J&J claims that information related to "purported changes to CarePath's copay assistance program based on expected changes to the Best Price Rule" are irrelevant. Among other reasons, this information is relevant because, under the rule, if J&J knew copay assistance funds were provided by a third party,

Ian Eppler
February 12, 2024

such as an insurer or a PBM, then J&J would be required to count copay assistance funds towards AMP and Best Price, creating an incentive for J&J to *not* identify patients on SaveOn-advised plans. J&J's documents show that Avalere performed significant work for J&J to "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████)." JJHCS_00157058, at 5. This research is relevant.

J&J also objects to RFP No. 81 "to the extent it seeks documents and communications in the possession of entities other than JJHCS." Please clarify this objection. In particular, please clarify whether you refuse to search for and produce documents from entities within J&J other than JJHCS, or whether you refuse to search for and produce documents from Avalere.

Finally, to the extent that J&J objects to this request based on burden, it must produce hit counts for all search terms, both individually and in the aggregate.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

5

Ian Eppler
February 12, 2024

## Exhibit A

(AIDS Foundation of Chicago OR AFC OR AIDS Institute OR TAI OR Aimed Alliance OR Alliance for the Adoption of Innovations in Medicine OR American Cancer Society Cancer Action Network OR ACS CAN OR American Chronic Pain Association OR ACPA OR American College of Rheumatology OR ACR OR American Diabetes Association OR ADA OR American Kidney Fund OR AKF OR American Lung Association OR ALA OR American Society of Clinical Oncology OR ASCO OR Arthritis Foundation OR AF OR Coalition of State Rheumatology Organizations OR CSRO OR Crohn's & Colitis Foundation OR CCF OR Cystic Fibrosis Research Institute OR CFRI OR Connecticut Oncology Association OR CtOA OR COPD Foundation OR Epilepsy Foundation OR Epilepsy Foundation of America OR EFA OR Gay Men's Health Crisis OR GMHC OR HealthyWomen OR HW OR HIV + Hepatitis Policy Institute OR HIV+Hepatitis Policy Institute OR HIV and Hepatitis Policy Institute OR HIV & Hepatitis Policy Institute OR HHPI OR Immune Deficiency Foundation OR IDF OR International Myeloma Foundation OR IMF OR Leukemia & Lymphoma Society OR LLS OR LUNGevity Foundation OR LUNGevity OR Lupus Research Alliance OR LRA OR Lupus Foundation of America OR LFA OR  Mary M. Gooley Treatment Center OR Mary Gooley Treatment Center OR Mary M. Gooley HTC OR Mary M. Gooley Hemophilia Center OR Mary Gooley Hemophilia Center OR Mary M. Gooley Hemophilia Treatment Center OR Mary Gooley Hemophilia Treatment Center OR MMGHTC OR Men's Health Network OR MHN OR Multiple Sclerosis Association of America OR MSAA OR Nashville CARES OR National Alopecia Areata Foundation OR NAAF OR National Multiple Sclerosis Association of America OR MSAA OR National Multiple Sclerosis Society OR National MS Society OR NMSS OR National Oncology State Network OR NOSN OR National Organization of Rare Disorders OR NORD OR National Psoriasis Foundation OR NPF OR Prevent Blindness OR Prevent Blindless America OR PBA OR Pulmonary Hypertension Association OR PHA OR Rheumatology Research Foundation OR RRF OR Scleroderma Foundation OR National Scleroderma Foundation OR NSF OR Stand Up To Cancer OR SU2C OR Susan G. Komen OR Komen OR SGK OR The ALS Association OR ALS Association OR ALSA OR Treatment Action Group OR TAG OR Triage Cancer OR U.S. Pain Foundation OR US Pain Foundation OR U.S. Pain OR Vasculitis Foundation OR VF OR ZERO /3 Prostate Cancer OR ZERO Cancer) AND (accumulator* OR maximizer* or copay assistance)

(Biotechnology Innovation Organization OR BIO OR Pharmaceutical Care Management Association OR PCMA OR Pharmaceutical Research and Manufacturers of America OR PhRMA) AND (accumulator* OR maximizer* OR copay assistance)

# EXHIBIT 4



www.pbwt.com

February 22, 2024

Ian Eppler
(212) 336-2205

**VIA EMAIL**

Hannah R. Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
          **No. 2:22-cv-02632 (JKS)(CLW)**

Dear Hannah:

We write in response to SaveOnSP's February 12, 2024 letter regarding JJHCS's responses and objections to SaveOnSP's Sixth Set of Requests for Production ("JJHCS's Sixth Set of R&Os").

I.    **General Objections & Definitions**

SaveOnSP requests confirmation that JJHCS is not withholding documents based on two of its general objections:  JJHCS's objection that SaveOnSP's requests seek documents or information "obtainable from sources other than JJHCS" in a more efficient manner, and JJHCS's objection that SaveOnSP's requests require JJHCS to disclose materials in a manner that would violate "a confidentiality agreement, court order, or applicable law."  *See* JJHCS's Sixth Set of R&Os, at 2.  As we have repeatedly stated—including in response to several prior letters from SaveOnSP—JJHCS's specific responses and objections to each of SaveOnSP's requests explain how JJHCS plans to respond, including with respect to what JJHCS is willing to produce.  *See* Feb. 8, 2024 Ltr. from I. Eppler to E. Snow at 1; Jan. 2, 2024 Ltr. from J. Long to E. Snow at 1.  If you believe any of our responses or objections are unclear, please let us know.

As to non-JJHCS discovery, JJHCS has repeatedly explained its objection to SaveOnSP's definition of Janssen.  JJHCS has consistently made clear—including in several prior letters addressing the same issue—that of roughly 200 J&J subsidiaries, "JJHCS is the sole relevant J&J entity involved in the development, marketing, [and] administration of CarePath."  Feb. 13, 2024 Ltr. from C. Zielinski to E.Snow (quoting Feb. 8, 2024 Ltr. from I. Eppler to E. Snow at 1; Jan. 2, 2024 Ltr. from J. Long to E. Snow at 1; Dkt. No. 122 at 1; Dkt. No. 29 at 20).  In compliance with Judge Wolfson's February 6, 2024 order (Dkt. No. 192), JJHCS will designate three additional custodians for limited discovery.  *See* Feb. 13, 2024 Ltr. from C. Zielinski to E. Snow

Hannah R. Miles, Esq.
February 22, 2024
Page 2

at 2.  JJHCS will not undertake a "further investigation into whether individuals outside of JJHCS possess relevant information or responsive documents," and JJHCS "reject[s] SaveOnSP's latest attempt to relitigate issues that have already been foreclosed by prior orders."  *Id.*

## II.    Request Nos. 77 and 78

These Requests demand a bevy of documents and communications related to relationships between JJHCS and various patient and pharmaceutical advocacy groups, and alleged coordination between JJHCS and those groups regarding public communications about copay assistance programs, SaveOnSP, accumulators, or maximizers.  As a basis for these Requests, SaveOnSP claims JJHCS may have used "its influence over these groups to promote the false narrative that copay maximizers and accumulators . . . harm patients," which could have "impacted patients' experiences with the CarePath copay assistance program and caused confusion, concern and stress to patients."  Feb. 12, 2024 Ltr. from H. Miles to I. Eppler at 2.  SaveOnSP does not, and cannot, point to even a scintilla of evidence to support this entirely speculative chain of reasoning.[1]  And SaveOnSP has not asserted any claims against JJHCS.  Accordingly, JJHCS objects to these Requests based on relevance.

JJHCS also objects to these Requests as duplicative for several reasons.  JJHCS agreed to run several search terms intended to identify documents related to relevant public communications and alleged JJHCS support for publishers of relevant material in response to Request No. 20.  SaveOnSP claims, without evidence or citation, that JJHCS has not undertaken "a fulsome search" for material responsive to Request No. 20.  Feb. 12, 2024 Ltr. from H. Miles to I. Eppler at 2–3.  But it has been over a year since JJHCS began producing documents (including documents responsive to Request No. 20), and at no point before the instant letter did SaveOnSP ever suggest that JJHCS's production of documents responsive to Request No. 20 was inadequate.  Moreover, to the extent that these Requests call for documents and communications regarding any JJHCS communications with these advocacy groups about SaveOnSP, these Requests are duplicative, as JJHCS has already agreed to run several search terms intended to identify documents related to SaveOnSP in response to Request No. 8.

JJHCS reiterates that it has produced, and will continue to produce, responsive documents in accordance with agreed-upon search terms.  But JJHCS will not search for and review wholly irrelevant documents based on SaveOnSP's speculation.  And because JJHCS objects to producing documents responsive to these Requests based on relevance and duplication, in addition to burden, it will not provide SaveOnSP's requested hit counts.

---

[1] Moreover, SaveOnSP's argument is a disingenuous effort to shift focus to JJHCS and away from the evidence that SaveOnSP knowingly harmed patients. *See, e.g.*, SOSP_0685665 at -665 ███████
███████ SOSP_0409971 at -976 ███

Hannah R. Miles, Esq.
February 22, 2024
Page 3

### III.    Request No. 79

Request No. 79 demands "All Best Price Quarterly Reports created or submitted by JJHCS, Janssen, or their affiliates for each Janssen Drug." JJHCS will not produce documents in response to this Request. As JJHCS explained in its Responses and Objections to this Request, issues related to the Best Price Rule are completely irrelevant to this action. JJHCS rejects SaveOnSP's contention that the reports are relevant because they will "reveal whether J&J accounts for its copay assistance program in government filings." *See* Feb. 12. 2024 Ltr. from H. Miles to I. Eppler at 3. Such speculation does not make these documents relevant. SaveOnSP is the defendant in this litigation. JJHCS asserts that SaveOnSP misappropriated hundreds of millions of dollars from CarePath by tortiously interfering with JJHCS's contracts with CarePath patients and deceiving consumers in violation of GBL § 349. It is SaveOnSP's conduct, not the language used in JJHCS's filings with the government, that is at issue.

### IV.    Request No. 81

This Request calls for draft contracts exchanged between JJHCS and TrialCard regarding maximizers, accumulators, and SaveOnSP. The very nature of the term "draft" means that draft contracts between JJHCS and TrialCard never governed the relationship between JJHCS and TrialCard, have no bearing on the work TrialCard did to mitigate the harm SaveOnSP caused to CarePath, and are irrelevant to SaveOnSP's understanding of the relationship between the companies.

As its sole cited basis for the relevance of these documents, SaveOnSP speculates that draft contracts could be relevant because "J&J could have asked TrialCard to start identifying and excluding patients on plans advised by SaveOn earlier than January 2022," before JJHCS and TrialCard implemented the CAP program, "and for more drugs than just Stelara and Tremfya." Feb. 12, 2024 Ltr. from H. Miles to I. Eppler at 4. But if any such work occurred, it would be captured in the ***final*** contracts between JJHCS and TrialCard responsive to SaveOnSP's Request No. 80, which JJHCS has already agreed to produce. Moreover, as JJHCS has repeatedly made clear, JJHCS will produce any non-privileged, responsive documents regarding "SaveOnSP" (or variations thereof) in response to Request No. 8. Accordingly, consistent with JJHCS's Sixth Set of R&Os, JJHCS declines to search for and produce any draft contracts in response to Request No. 81.

### V.    Request No. 82

Request No. 82 demands a variety of documents and communications regarding work related to copay assistance programs undertaken by Avalere Health, a health care industry consulting firm, on behalf of JJHCS. To the extent that the Request calls for documents and communications with Avalere regarding SaveOnSP, JJHCS has already agreed to run several search terms intended to identify documents related to SaveOnSP in response to Request No. 8. Any documents regarding SaveOnSP that involve Avalere would be subsumed by those previously agreed-upon search terms. Otherwise, as JJHCS explained in its Responses and Objections, this

Hannah R. Miles, Esq.
February 22, 2024
Page 4

Request is irrelevant because it demands a variety of material unrelated to SaveOnSP. *See* JJHCS's JJHCS's Sixth Set of R&Os, at 13. SaveOnSP offers two arguments as to the relevance of Avalere-related documents unconnected to SaveOnSP, but neither are convincing.

First, SaveOnSP claims that it is entitled to this broad swath of Avalere-related documents because they are relevant to its professed investigation into whether CarePath, and not SaveOnSP, is responsible for the patient stress and confusion that JJHCS alleges in its complaint. Yet SaveOnSP provides no basis to speculate that evidence of this patient harm would be found in Avalere-related documents unconnected to SaveOnSP

Second, SaveOnSP asserts that Avalere-related documents unrelated to SaveOnSP are relevant because Avalere conducted research related to the proposed 2023 modifications to the Best Price Rule. SaveOnSP speculates that this research could be relevant because, under the proposed rule, "J&J would be required to count copay assistance funds towards AMP and Best Price, creating an incentive for J&J to not identify patients on SaveOn-advised plans." Feb. 12, 2024 Ltr. from H. Miles to I. Eppler, at 5. The chain of logic supporting SaveOnSP's assertion of relevance fails on several levels. Most importantly, the proposed Best Price Rule never went into effect, undermining SaveOnSP's suggestion that the rule influenced JJHCS's behavior. It defies logic to suggest that JJHCS would have allowed SaveOnSP to continue draining millions of dollars of copay assistance funds because the government did not adopt a regulation. Accordingly, JJHCS declines to produce documents in response to Request No. 82.

We are available to meet and confer and reserve all rights.

Very truly yours,

*/s/ Ian Eppler*
Ian Eppler

# EXHIBIT 5

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

**Selendy|Gay**

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

June 6, 2024

<u>**Via E-mail**</u>

Ian Eppler
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
ieppler@pbtw.com

Re:  ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
     LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Ian,

    We write to follow up on the parties' March 4, 2024 meet and confer regarding SaveOn's Sixth Requests for Production, and, in particular, Requests 77 and 78.

    Request 77 seeks documents and communications regarding efforts by J&J to "work with, inform, sponsor, or influence patient advocacy groups regarding those organizations' public statements, patient outreach, or lobbying in any form about Copay Assistance programs, Copay Maximizers, and/or SaveOnSP." Request 78 seeks similar documents and communications about J&J's work with pharmaceutical industry associations and groups.

    During the meet and confer, and in our February 12, 2024 letter, SaveOn explained that publicly available sources show that J&J provides funding for each of the identified groups, and that each group has made public statements or lobbied in favor of copay assistance, and/or against maximizers, accumulators, or SaveOn. *See, e.g.*, The Aids Institute, *Unchecked: Copay Accumulator Adjustment Policies in 2024*, February 2024, https://aidsinstitute.net/documents/TAI-2024-Report-2.27.pdf; Ashira Vantrees, Aimed Alliance, Letter to Lina Khan, Chairwoman of the Federal Trade Commission, *Non-EHB, Alternative Funding Programs, and Unfair Trade Practices*, June 14, 2023, https://aimedalliance.org/wp-content/uploads/2023/06/Aimed-Alliance-Letter-Regarding-Alt.-Funding-and-Non-EHB-Programs-as-Unfair-Trade-Practices-June-2023.pdf.

Ian Eppler
June 6, 2024

SaveOn then explained that it is "reasonable to investigate whether J&J used its influence over these groups to promote the false narrative that copay maximizers and accumulators (which, according to J&J, includes SaveOn) harm patients" because SaveOn is entitled to understand whether "that narrative impacted patients' experiences with the CarePath copay assistance program and caused confusion, concern and stress to patients." Feb. 12, 2024 Ltr. from H. Miles to I. Eppler. For example, J&J's Complaint cites and quotes an article purportedly written by a patient named Anndi McAfee. Compl. ¶ 138. Discovery has shown that Trial-Card, J&J's vendor that runs CarePath, presented a webinar to the general public regarding copay accumulators, which prompted McAfee to email TrialCard with her complaint about SaveOn. TRIALCARD_0000324O. TrialCard employees then referred her to "Stacey" (apparently Stacey Worthy, associated with the patient advocacy group Aimed Alliance, TRIALCARD_00002745), and "███████████████
████████████████████" *Id.* Four days later, McAfee published her complaint on "Drug Channels," J&J contractor Adam Fein's website.

The documents that J&J has produced so far also show that J&J worked with advocacy groups to lobby against copay accumulators, maximizers, and SaveOn. *See, e.g.*, JJHCS_00227193 (Blaine Penkowski asking whether "████████████
████████████████████████████████████████████████████████
███████████████████████████████████████████████, and LD Platt responding: "████████████████████████████████████████
███████████"); JJHCS_00132467 (email about "███████████████████
████████████████████████████████████████████████████████████
████████████████████"). As early as 2016, J&J custodian Karen Lade considered working with patient advocacy groups to "████████████████████████████████
████████████████████████████████████████████████████████████.
JJHCS_00222271. Coordination with patient advocacy groups also occurred at the highest levels of J&J, including the JALT. *See* JJHCS_00237117 (John Hoffman requesting "██████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████").

In its February 22, 2024 letter, J&J asserted that the Requests were duplicative because it has "agreed to run several search terms intended to identify documents related to relevant public communications and alleged JJHCS support for publishers of relevant material in response to Request 20." Feb. 22, 2024 Ltr. from I. Eppler to H. Miles, at 2. Please identify what search parameters, if any, J&J has run that you believe would identify such documents and communications, including the relevant custodians and time periods.

SaveOn accordingly asks that J&J agree to run the search terms listed in Appendix 1 over the files of its existing custodians. These terms are intended to target communications with and documents regarding the specific organizations that have apparently accepted funds from J&J and also made public statements or

Ian Eppler
June 6, 2024

performed lobbying in support of copay assistance and/or against maximizers, ac-
cumulators, and/or SaveOn. If J&J objects to running any of these terms based on
burden, it should provide hit counts for each such term.

We request a response by June 13, 2024.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

Ian Eppler
June 6, 2024

## Appendix 1

| Patient Advocacy Groups (RFP No. 77) |
|---|
| ("AIDS Foundation of Chicago" OR AFC) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("AIDS Institute" OR TAI) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Aimed Alliance" OR "Alliance for the Adoption of Innovations in Medicine") w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("American Cancer Society Cancer Action Network" OR "ACS CAN") w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("American Chronic Pain Association" OR ACPA) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("American College of Rheumatology" OR ACR) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("American Diabetes Association" OR ADA) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("American Kidney Fund" OR AKF) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("American Lung Association" OR ALA) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("American Society of Clinical Oncology" OR ASCO) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Arthritis Foundation" OR AF) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Coalition of State Rheumatology Organizations" OR CSRO) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Crohn's & Colitis Foundation" OR "Crohns & Colitis Foundation" OR CCF) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Cystic Fibrosis Research Institute" OR CFRI) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Connecticut Oncology Association" OR CtOA) w/50 (accumulator* OR maximizer* or "copay assistance") |
| "COPD Foundation" w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Epilepsy Foundation" OR EFA) w/50 (accumulator* OR maximizer* or "copay assistance") |

Ian Eppler
June 6, 2024

| |
|---|
| ("Gay Men's Health Crisis" OR "Gay Mens Health Crisis" OR GMHC) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("HealthyWomen" OR HW) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("HIV + Hepatitis Policy Institute" OR "HIV and Hepatitis Policy Institute" OR "HIV & Hepatitis Policy Institute" OR HHPI) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Immune Deficiency Foundation" OR IDF) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("International Myeloma Foundation" OR IMF) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Leukemia & Lymphoma Society" OR "Leukemia and Lymphoma Society" OR LLS) w/50 (accumulator* OR maximizer* or "copay assistance") |
| LUNGevity w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Lupus Research Alliance" OR LRA) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Lupus Foundation of America" OR LFA) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Mary M. Gooley Treatment Center" OR "Mary Gooley Treatment Center" OR "Mary M. Gooley" OR "Mary M. Gooley Hemophilia Center" OR "Mary Gooley Hemophilia Center" OR "Mary M. Gooley Hemophilia Treatment Center" OR "Mary Gooley Hemophilia Treatment Center" OR MMGHTC OR HTC) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Men's Health Network" OR MHN) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Multiple Sclerosis Association of America" OR MSAA) w/50 (accumulator* OR maximizer* or "copay assistance") |
| "Nashville CARES" w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("National Alopecia Areata Foundation" OR NAAF) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Multiple Sclerosis Association of America" OR MSAA) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("National Multiple Sclerosis Society" OR "National MS Society" OR NMSS) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("National Oncology State Network" OR NOSN) w/50 (accumulator* OR maximizer* or "copay assistance") |

Ian Eppler
June 6, 2024

| |
|---|
| ("National Organization of Rare Disorders" OR NORD) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("National Psoriasis Foundation" OR NPF) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Prevent Blindness" OR PBA) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Pulmonary Hypertension Association" OR PHA) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Rheumatology Research Foundation" OR RRF) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Scleroderma Foundation" OR NSF) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Stand Up To Cancer" OR SU2C) w/50 (accumulator* OR maximizer* or "copay assistance") |
| (Komen OR SGK) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("ALS Association" OR ALSA) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Treatment Action Group" OR TAG) w/50 (accumulator* OR maximizer* or "copay assistance") |
| "Triage Cancer" w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("U.S. Pain Foundation" OR "US Pain Foundation" OR "U.S. Pain") w/50 (accumulator* OR maximizer* or "copay assistance") |
| ("Vasculitis Foundation" OR VF) w/50 (accumulator* OR maximizer* or "copay assistance") |
| ((ZERO /3 "Prostate Cancer" OR "ZERO Cancer") w/50 (accumulator* OR maximizer* or "copay assistance") |
| **Pharmaceutical Industry Groups (RFP No. 78)** |
| ("Biotechnology Innovation Organization" OR BIO) w/50 (accumulator* OR maximizer* OR "copay assistance") |
| ("Pharmaceutical Care Management Association" OR PCMA) w/50 (accumulator* OR maximizer* OR "copay assistance") |
| ("Pharmaceutical Research and Manufacturers of America" OR PhRMA) w/50 (accumulator* OR maximizer* OR "copay assistance") |

# EXHIBIT 6

Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104
212.390.9000

**Selendy|Gay**

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

December 10, 2024

<u>Via E-mail</u>

Ian Eppler
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
ieppler@pbwt.com

**Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Ian,

We write in response to your October 8, 2024 letter regarding SaveOn's Request Nos. 77 and 78. SaveOn has continued to receive documents showing how closely J&J coordinated with purportedly independent advocacy groups to shape anti-accumulator, maximizer, and SaveOn narratives. For the reasons stated below, we renew our request that J&J produce relevant documents.

On December 2, 2024, SaveOn received a small production from third party John Hoffman, including a July 11, 2022 text message showing that Hoffman, along with non-custodian Melia Becker, decided to proceed with "█████████████████████████ ████████████████," in part "█████████████████████████████████████████ ████████████████████████████," HOFFMAN_00000004. A June 6, 2022 presentation titled: "███████████████████████████████████████████ ███████████████████████████████████████," JJHCS_00288447, explains the context: J&J was working to "███████████████████████████████ █████████████████████," *id.* at -448; *see also* JJHCS_00288458 (email from LD Platt explaining that "█████████████████████████████████████████"). Hoffman's text message makes clear that the "████████" identified was the AIDS Institute, with partnership from the All Copays Count Coalition. *See also id.* at -450 (listing "██████ ████████████████████████████████"). To support this "█████████ ███████████████████████████████████████████████████████ ███████████████. *Id.* at -456.

Ian Eppler
December 10, 2024

On September 20, 2022, Rational 360—the strategic communications agency hired by J&J to assist with this campaign—sent The AIDS Institute a memorandum recommending that the organization "████████████████████████████████████████████████" to "████████████████████████████████████████████████████████. JJHCS_00236760. The next day, September 21, 2022, J&J employees including LD Platt and Melia Becker had a "████████████████████████████████████" with Rational 360, and the agenda included "████████████████" JJHCS_00254198. *See also* https://rational360.com/case-studies/activating-grassroots-advocates-on-critical-healthcare-access-issues-across-35-states/ ("Rational 360 serves as the lead state grassroots advocacy and communications consultant for a Fortune 50 healthcare company, leading, developing, and managing unbranded customized state-level advocacy, messaging, and media campaigns in approximately 35 states."); *id.* ("Rational 360 has built influential advocacy campaigns, engaging leading third-party groups.").

Productions from J&J and third parties continue to show how important coordination with these patient advocacy groups was to J&J's response to copay accumulators, maximizers, and SaveOn. Contrary to J&J's protests in its motion to strike that SaveOn has unfairly "disparage[d] nonprofit organizations, like the AIDS Institute, that have sounded the alarm about SaveOnSP's misconduct," Nov. 27, 2024 Motion at 1, 9, discovery shows that these organizations were acting as mouthpieces of J&J's lobbying efforts. Because J&J appears to intend to rely on testimony or statements from these "third parties" to demonstrate public harm in support of its GBL claim, *see* Am. Compl. ¶¶ 30 n. 6, 32 & n.9; SaveOn is entitled to further discovery to explore the relationship between J&J and these groups.

Please let us know if, considering this new evidence, J&J will produce documents responsive to RFP Nos. 77 and 78. If so, please provide the hit counts that SaveOn requested on June 6, 2024. *See* June 6, 2024 Ltr. from H. Miles to I. Eppler. If you do not agree to produce responsive documents by December 17, 2024, we will consider the parties to be at impasse.

We request a response by December 17, 2024. We reserve all rights and are available to meet and confer.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

2

# EXHIBIT 7

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Taylor Stone
Associate
212.390.9088
tstone@selendygay.com

October 3, 2024

**Via E-mail**

Ian Eppler
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
ieppler@pbwt.com

**Re:    *Johnson & Johnson Health Care Systems Inc. v. Save On SP,
LLC* (Case No. 2:22-cv-02632-JKS-CLW)**

Dear Ian,

We write regarding SaveOn's Requests for Production Nos. 77 and 78 and
in partial response to J&J's August 15, 2024 letter regarding the same.

In prior correspondence, SaveOn explained that J&J's correspondence with
advocacy groups that it financially supports regarding copay assistance programs,
maximizers, accumulators, and SaveOn is relevant to understanding whether J&J
used its influence to promote the narrative that SaveOn harms patients, thereby
causing patients the stress and confusion that J&J alleges that SaveOn causes.

Documents in J&J's recent productions show that J&J has been closely co-
ordinating with advocacy groups to shape anti-accumulator, maximizer, and
SaveOn narratives since 2018. *See, e.g.*, JJHCS_00248257 at 3 ("███████████
███████████████████████████████████████████████████████████████
███████████████"); JJHCS_00237172 at 2 (Copay Support Programs deck stat-
ing "█████████████████" is "███████████████████████████████████
██████████████████████"); JJHCS_00246561 at 16 (Co-Pay Accumulator
& Maximizer Programs Implications and Considerations deck stating "██████████
███████████████████████████████████████████████████████████████
███████████████████"); JJHCS_00280177 ("███████████████████████
███████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████");
JJHCS_00249492 at -513 ("████████████████████████████████████████████

Ian Eppler
October 3, 2024

█████████████████████████████████████████████"). *See also*
JJHCS_00285500 at 3 (Pembroke Consulting SOW including the project goal
"███████████████████████████████████").

     Please let us know if, considering this evidence, J&J will produce the requested documents. We request a response by October 10, 2024.

     We reserve all rights and are available to meet and confer.

Sincerely,

/s/ Taylor Stone

Taylor Stone
Associate

2

# EXHIBIT 8



June 17, 2024

Ian Eppler
(212) 336-2205

**<u>VIA EMAIL</u>**

Hannah R. Miles, Esq.
Selendy Gay, PLLC
1290 Avenue of the Americas
New York, NY 10104

   Re: **SaveOnSP's Request Nos. 77 and 78**
      *<u>Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC</u>*<u>,</u>
      <u>No. 2:22-cv-02632(JKS) (CLW)</u>

Dear Hannah:

   We write in response to your June 6, 2024 letter purportedly "follow[ing] up on the parties' March 4, 2024 meet and confer" regarding SaveOnSP's Request Nos. 77 and 78 (the "Requests"). During our early March conferral, JJHCS made clear that it would not produce documents responsive to the Requests, on the grounds that the Requests are irrelevant and duplicative. Your June 6, 2024 letter does not provide a basis for JJHCS to revisit its position.

   As JJHCS explained in its February 22, 2024 letter, JJHCS has already produced numerous responsive documents. Feb. 22, 2024 Ltr. from I. Eppler to H. Miles at 2. For example, non-privileged "documents and communications regarding any JJHCS communications with . . . advocacy groups about SaveOnSP" are encompassed within JJHCS's production responsive to SaveOnSP's Request No. 8. Feb. 22, 2024 Ltr. from I. Eppler to H. Miles at 2. In response to that demand, JJHCS has already produced non-privileged documents and communications "with or regarding SaveOnSP" from more than twenty custodians—including substantially completing its production of documents through the Court-ordered "refresh" almost five months ago and substantially completing production as to recently added apex custodians, Scott White and Blasine Penkowski, as of May 31, 2024. If any of these more than twenty custodians had non-privileged and responsive communications "with or regarding SaveOnSP"—including with the dozens of advocacy groups mentioned in the Request Nos. 77 and 78—JJHCS would have produced them as part of its prior productions.

   In the same February 22, 2024 letter, JJHCS explained that it has also produced relevant materials in response to SaveOnSP's Request No. 20, which demanded "studies, reports, and publications that JJHCS has funded or supported regarding accumulator and maximizer programs." Feb. 22, 2024 Ltr. from H. Miles to I. Eppler at 2-3. SaveOnSP failed to respond to

Hannah Miles, Esq.
June 17, 2024
Page 2

this letter for over three months, only to finally reply on June 6, 2024 and demand that JJHCS "identify what search parameters" were run in response to Request No. 20. June 6, 2024 Ltr. from H. Miles to I. Eppler at 2. In fact, JJHCS disclosed those "parameters" on September 6, 2023 and again on December 22, 2023. Sept. 6, 2023 Ltr. from E. Shane to E. Snow at 2 (Silas Martin search terms); Dec. 22, 2023 Ltr. from J. Long to E. Snow at 3 (clarifying search terms and date range for refresh period). Documents responsive to these prior Requests are sufficient to satisfy SaveOnSP's legitimate discovery needs.

Despite this discovery to date, SaveOnSP now demands that JJJHCS run about 50 new search terms, each of which is in the form of [name of advocacy group] w/50 (accumulator* OR maximizer* OR "copay assistance"). This search uses an overly broad proximity limiter. *See* May 9, 2024 Order at 3 (rejecting a "w/50" proximity limiter as overly broad). But more important, the Requests go well beyond legitimate, previously agreed-upon discovery into issues unrelated to SaveOnSP and encompass a wide swath of irrelevant material related to other accumulators, other maximizers, and even copay assistance programs not at issue in this case.

SaveOnSP contends that it is entitled to these irrelevant documents because it is "reasonable to investigate whether J&J used its influence over these groups to promote the false narrative that copay maximizers and accumulators (which, according to J&J, includes SaveOn) harm patients" and "impacted patients' experiences with the CarePath copay assistance program and caused confusion, concern and stress to patients." June 6, 2024 Ltr. from H. Miles to I. Eppler at 2 (quoting Feb. 12, 2024 Ltr. from H. Miles to I. Eppler).

This case is about SaveOnSP's conduct and whether it harms patients. It is not about whether JJHCS's work to help patients afford their medications somehow causes them stress, about copay assistance programs other than CarePath, or whether JJHCS somehow causes stress to patients in accumulators or maximizers other than SaveOnSP. There are no claims against JJHCS in this case. SaveOnSP points to a single instance in which a patient contacted *TrialCard* (not JJHCS) with a complaint about SaveOnSP, which led *TrialCard* to refer this patient to an advocacy group. This instance involving TrialCard does not somehow transform this case into an enquiry about JJHCS's work with patient advocacy groups, including work with patient advocacy groups involving accumulators, maximizers, and copay assistance programs unrelated to SaveOnSP and/or CarePath. JJHCS will not participate in a broad expansion of discovery into irrelevant matters based on such threadbare justification. Because JJHCS objects to the Requests on relevance, duplication, and privilege grounds, it will not provide SaveOnSP's requested hit counts.

Finally, in addition to being irrelevant, documents related to instances in which JJHCS may have worked with advocacy groups on lobbying, to the extent that any such documents even exist, would be protected from discovery by the First Amendment privilege. *See, e.g.*, *Fraternal Ord. of Police Pennsylvania Lodge v. Twp. of Springfield*, 668 F. Supp. 3d 375, 385 (E.D. Pa. 2023) (explaining that communications regarding "lobbying efforts" are protected from discovery because of the burden on First Amendment associational rights resulting from discovery). JJHCS will not produce privileged documents.

Hannah Miles, Esq.
June 17, 2024
Page 3


        For the aforementioned reasons, your June 6, 2024 letter alone does not provide a
basis for JJHCS to revisit its refusal to produce documents responsive to the Requests.  However,
JJHCS invites SaveOnSP to meet and confer regarding the Requests.

                        Sincerely,



                        Ian Eppler

# EXHIBIT 9



www.pbwt.com

October 8, 2024

Ian Eppler
(212) 336-2205

**VIA EMAIL**

Taylor Stone, Esq.
Selendy Gay, PLLC
1290 Avenue of the Americas
New York, NY 10104

      Re:   **SaveOnSP's Request Nos. 77 and 78**
           *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
           No. 2:22-cv-02632 (JKS) (CLW)

Dear Taylor:

      We write in response to your October 3, 2024 letter—and further to our letters of August 15, 2024, July 29, 2024, and June 17, 2024—regarding SaveOnSP's Request Nos. 77 and 78 (the "Requests"). In half a year of correspondence and conferrals, dating back to February 2024, we have consistently explained that the documents covered by these Requests are irrelevant. JJHCS stands by its position that it will not produce these documents.

      SaveOnSP claims (and reiterates in its October 3, 2024 letter) that it served these Requests to "understand[] whether J&J used its influence to promote the narrative that SaveOn harms patients, thereby causing patients the stress and confusion that J&J alleges that SaveOn causes." Oct. 3, 2024 Ltr. from T. Stone to I. Eppler at 1. But as we have repeatedly explained, SaveOnSP is trying to "understand" an irrelevant issue. "This case is about SaveOnSP's conduct and whether it harms patients, and is not about whether JJHCS's work to help patients afford their medications somehow causes them stress, about copay assistance programs other than CarePath, or whether JJHCS somehow causes stress to patients in accumulators or maximizers other than SaveOnSP." Jul. 29, 2024 Ltr. from I. Eppler to H. Miles at 1 (quotation marks omitted); *see also* Aug. 15, 2024 Ltr. from I. Eppler to T. Stone at 1-2; Jun. 17, 2024 Ltr. from I. Eppler to H. Miles at 2; Feb. 22, 2024 Ltr. from I. Eppler to H. Miles at 2.

      Moreover, even if the question whether JJHCS "cause[s] patients . . . stress and confusion" were relevant to this case, "SaveOnSP provides no reason to conclude that discovery into JJHCS's work with advocacy groups would support this theory" because it "has been unable to point to a single document supporting the theory that JJHCS's work with advocacy groups

Taylor Stone, Esq.
October 8, 2024
Page 2

somehow results in patient 'stress or confusion.'" Jul. 29, 2024 Ltr. from I. Eppler to H. Miles at
1. The documents cited in SaveOnSP's recent letter are not to the contrary.[1]

    For example, SaveOnSP cites JJHCS_00248257, but this document refers to
"█████████████████████████████████████████████████████████████████████████
███████" about accumulators, not maximizers. Other documents cited by SaveOnSP describe
advocacy directed to regulators, not consumers. *See, e.g.,* JJHCS_00237172 at 17 (describing
"█████████████████████████████████████████████" that involved meeting "███████████████
████████████████████") . Advocacy targeted at regulators would not "caus[e] patients . . . stress and
confusion." Still other documents cited by SaveOnSP refer generically to "████████████████████
██████████████████████████████████████████████████████████████" JJHCS_00246561;
JJHCS_00249492. They do not indicate that the engagement or advocacy had the purpose or effect
of "promot[ing] the narrative that SaveOn harms patients" in a way that "caus[ed] patients . . .
stress and confusion."

    Because SaveOnSP has not provided documents to support its claims regarding the
relevance of documents sought by the Requests, JJHCS will not revisit its relevance objection.
Moreover, for the reasons set forth in our prior letters regarding the Requests, JJHCS also
continues to stand by its objection to producing the documents sought by the Requests on burden
and privilege grounds.

           Very truly yours,

           Ian Eppler

---

[1] While SaveOnSP claims that the documents cited in its recent letter were produced recently,
some were not. For example, SaveOnSP cites JJHCS_00248257, a document that JJHCS produced
in May. SaveOnSP could have cited this document in three prior letters it sent to JJHCS regarding
the Requests. *See* Aug. 12, 2024 Ltr. from T. Stone to I. Eppler; Jul. 19, 2024 Ltr. from H. Miles
to I. Eppler; Jun. 6, 2024 Ltr. from H. Miles to I. Eppler. This prolonged delay and failure to
diligently pursue this material raises questions as to why SaveOnSP "now believes it is entitled to
this discovery." Sept. 9, 2024 Email from M. Nussbaum to I. Eppler.

# EXHIBIT 10

Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104
212.390.9000

Selendy|Gay

Dominic V. Budetti
Associate
212.390.9317
dbudetti@selendygay.com

January 22, 2025

<u>Via E-mail</u>

Ian Eppler
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
ieppler@pbwt.com

**Re:**    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC et al.* (Case
No. 2:22-cv-02632-JKS-CLW)**

Dear Ian,

We write in response to Judge Wolfson's guidance at the January 15, 2025
discovery conference regarding search terms for John Hoffman's work with the advocacy
group the Arthritis Foundation and further to the parties' correspondence regarding
SaveOn's Request Nos. 77 and 78.

*First*, as you know, during the January 15, 2025 conference, Judge Wolfson ordered
J&J to run a search term related to the Arthritis Foundation over John Hoffman's
documents. SaveOn proposes the following term: "Arthritis Foundation" w/50
(accumulator* OR maximizer* OR "copay assistance" OR "adjustment program"). Please
let us know if J&J agrees to this search term. If J&J objects on the basis of burden, please
provide us with the number of documents this search term hits in Hoffman's files, as well
as the total number of additional documents this term would require J&J to review.

*Second*, J&J has previously refused to produce any documents or communications
in response to SaveOn's Request Nos. 77 and 78, which seek documents and
communications regarding J&J's efforts to work with, inform, sponsor, or influence
various named patient advocacy groups (RFP No. 77) and pharmaceutical industry associa-
tions (RFP No. 78) (together with RFP No. 77, the "Requests") in connection with public
statements, patient outreach, or lobbying about copay assistance programs, maximizers,
accumulators, or SaveOn on the ground that those documents are irrelevant. Judge
Wolfson's order regarding Hoffman, however, dispensed with J&J's categorical relevance
objection.

Ian Eppler
January 22, 2025

In the interest of compromise, and reserving all rights, SaveOn proposes that J&J run the following search terms over the documents of John Hoffman, Lawrence (L.D.) Platt, and Silas Martin, for the period of April 1, 2016 to November 7, 2023:

- ("AIDS Institute" OR TAI) w/50 (accumulator* OR maximizer* OR "copay assistance" OR "adjustment program")

- ("Aimed Alliance" OR "Alliance for the Adoption of Innovations in Medicine") w/50 (accumulator* OR maximizer* OR "copay assistance" OR "adjustment program")

- ("All Copays Count Coalition" OR ACCC) w/50 (accumulator* OR maximizer* OR "copay assistance" OR "adjustment program")

- ("Arthritis Foundation" OR AF) w/50 (accumulator* OR maximizer* OR "copay assistance" OR "adjustment program")

- ("Coalition of State Rheumatology Organizations" OR CSRO) w/50 (accumulator* OR maximizer* OR "copay assistance" OR "adjustment program")

- ("HIV + Hepatitis Policy Institute" OR "HIV and Hepatitis Policy Institute" OR "HIV & Hepatitis Policy Institute" OR HHPI) w/50 (accumulator* OR maximizer* OR "copay assistance" OR "adjustment program")

- ("Pharmaceutical Research and Manufacturers of America" OR PhRMA) w/50 (accumulator* OR maximizer* OR "copay assistance" OR "adjustment program")

- ("Rational360" OR "Rational 360") w/50 (accumulator* OR maximizer* OR "copay assistance" OR "adjustment program")

J&J has produced, and SaveOn has previously identified, a litany of documents showing that each of these three custodians were closely involved in J&J's efforts to influence and fund these organizations to push anti-accumulator, anti-maximizer, and anti-SaveOn narratives for its own purposes. *See* JJHCS_00237101 at -101-02 (Hoffman discussing media strategy and advocacy partners); JJHCS_00289879 (Hoffman receiving confirmation of paid work with the Arthritis Foundation); JJHCS_00289880 (proposal from Arthritis Foundation regarding anti-accumulator media campaign); JJHCS_00237172 at 2 (slide deck sent to Hoffman discussing "███████████████████████████████"); JJHCS_00237117 (Hoffman requesting and receiving information about advocacy groups' work on accumulators, including Aimed Alliance, CSRO, Aids Institute, and the Arthritis Foundation); JJHCS_00132931 (email exchange between Hoffman, Martin, and others discussing work with advocacy groups to push anti-accumulator messaging); TRIALCARD_00008937 (email describing Martin as "████████████████████████████████████

2

Ian Eppler
January 22, 2025

█████████████████████████████████"); JJHCS_00133073 at 075-79 (slide deck composed by Hoffman and shared with Martin, Platt, and others discussing ████████████████████████████████████████████████████████████████████████████████████████████████ ); JJHCS_00254296 at -296-97 (memorandum titled "█████████████████████████████████████ ██████" sent from Rational360 to Platt); JJHCS_00288447 at -446-48 (slide deck shared between Platt and Rational360 describing J&J's plan to pay a grant to support a "███████████████████████████████████████████████"); JJHCS_00236758-760 (media strategy memo from Rational360 sent to Platt, Hoffman, and the Aids Institute in advance of "████████████████████████████" involving all four); JJHCS_00183956 at 23 (slide deck sent to Platt discussing direct outreach to patients through various organizations); JJHCS_00227193 (Platt, responding to request for ████████████ ████████████████████████████████████████████████████████); JJHCS_00254198 (email from Rational360 to Platt describing the advocacy activities of the Aids Institute and the ACCC as a topic for discussion); JJHCS_00224430-431 (email from Platt setting out Rational360's role in developing J&J's media strategy); JJHCS_00331243 at 12 (slide deck discussing potential work with PhRMA and other groups to push back against accumulators).

With the exception of Rational360, J&J has either relied on or received support from each of the organizations identified above throughout this litigation, putting their credibility at issue. *See* Am. Compl. ¶¶ 30 n. 6, 32 & n.9, 50, 138; Dkt. 35 (motion of Aimed Alliance, Triage Cancer, The HIV and Hepatitis Policy Institute, the Coalition of State Rheumatology Organizations, the AIDS Institute, The National Oncology State Network and the Connecticut Oncology Association for leave to appear as amicus curiae in support of J&J); Dkt. 38 (PhRMA's motion for leave to appear as amicus curiae in support of J&J). Documents also demonstrate that J&J worked closely with its media consultant, Rational360, to further its efforts with the groups listed above, including by partnering with them to ███████████████████████████████████████████████████████████, JJHCS_00254296 at -296-98, and by ████████████████████ ████████████████████████████████████████████████████████████████████████████████████████████, JJHCS_00236760; *see also* JJHCS_00288447 at -447-48; HOFFMAN_00000004.

Please let us know if J&J accepts SaveOn's proposal. If J&J does not accept SaveOn's proposal, please provide us with your availability on Thursday January 23 and Friday January 24 to meet and confer. If J&J intends to object on the basis of burden, please provide us with the number of documents these search terms hit in each custodians' files, as well as the total number of additional documents these terms would require J&J to review.[1] We reserve all rights.

---

[1] J&J cannot legitimately argue that providing these hit counts would somehow chill J&J's free speech by revealing the groups with which J&J most frequently communicated, July

Ian Eppler
January 22, 2025

Sincerely,

/s/ Dominic V. Budetti

Dominic V. Budetti
Associate

---

29, 2024 Ltr. from I. Eppler to H. Miles at 3 n.2, because J&J's document productions have already revealed the identities of these groups to SaveOn.

# EXHIBIT 11



**www.pbwt.com**

January 23, 2025

Ian D. Eppler
(212) 336-2205

**By Email**

Dominic Budetti, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Re:    **John Hoffman Search Term and SaveOnSP's Request Nos. 77 and 78**
*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
Case No. 2:22-cv-02632 (JKS) (CLW)

Dear Dominic:

We write in response to SaveOnSP's January 22, 2025 letter proposing a search term for John Hoffman's work with the Arthritis Foundation, as well as SaveOnSP's Request Nos. 77 and 78.

Judge Wolfson has ordered the parties to "meet and confer on search terms for Hoffman . . . limited to Hoffman's contact with the advocacy group, the Arthritis Foundation." Jan. 23, 2025 Order at 8.  In its January 22 letter, SaveOnSP proposed that JJHCS run the following term over Mr. Hoffman's documents:

- "Arthritis Foundation" w/50 (accumulator* OR maximizer* OR "copay assistance" OR "adjustment program").

JJHCS agrees to run this term over Mr. Hoffman's documents for the period from April 1, 2016 to November 7, 2023.

In the same letter, SaveOnSP also demands that JJHCS run eight search terms related to purported "efforts to work with, inform, sponsor, or influence various named patient advocacy groups . . . and pharmaceutical industry associations" over the files of three custodians, including Mr. Hoffman, to satisfy SaveOnSP's Request Nos. 77 and 78.  Jan. 22, 2025 Ltr. from D. Budetti to I. Eppler at 1.  JJHCS declines to do so.  Judge Wolfson's recent Order makes clear that discovery into JJHCS's work with advocacy groups is to be limited to Mr. Hoffman's files and cover only the Arthritis Foundation.  Jan. 23, 2025 Order at 8.  SaveOnSP's demands for eight additional terms cannot be squared with Judge Wolfson's clear guidance.  *See* Jan. 15, 2025 Tr. at 107:8–21 (specifically rejecting SaveOnSP's request for searches except for those related to the Arthritis Foundation).  Moreover, JJHCS stands behind its objection to Request Nos. 77 and 78 on

Dominic Budetti, Esq.
January 23, 2025
Page 2


relevance, burden, privilege, and dormancy grounds. *See, e.g.*, Dec. 13, 2024 Ltr. from I. Eppler to H. Miles; Oct. 8, 2024 Ltr. from I. Eppler to T. Stone; Aug. 15, 2024 Ltr. from I. Eppler to T. Stone; Jul. 29, 2024 Ltr. from I. Eppler to H. Miles.

Very truly yours,

*/s/ Ian Eppler*
Ian D. Eppler

Exhibits 12-13 Confidential

Filed Under Seal