# EXHIBIT C

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

February 28, 2025

<u>**VIA E-Mail**</u>

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

> Re:    ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC,***
> ***Express Scripts, Inc., and Accredo Health Group, Inc.***
> <u>**No. 2:22-cv-02632 (JKS) (CLW)**</u>

Dear Judge Wolfson:

SaveOn[1] writes in reply to J&J's opposition to SaveOn's motion to compel J&J to search for and produce documents from existing custodians John Hoffman, Lawrence (L.D.) Platt, and Silas Martin regarding J&J's work with Rational360 and the Advocacy Groups. J&J does not deny that the proposed custodians and search terms are highly likely to identify the requested documents, which are patently relevant.

---

[1] SaveOn uses the defined terms from its opening motion.

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | rc.com

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                                Page 2

## I.    The Requested Documents are Relevant

Documents about J&J's work with Rational360 and the Advocacy Groups are relevant, first, because they speak to the credibility of the Advocacy Groups, which J&J put at issue by relying on them in this litigation. Mot. 4-5. J&J did not simply support or fund many of these organizations, *contra* Opp. 9-10—it secretly worked with them to create and peddle J&J's anti-accumulator, anti-maximizer, and anti-SaveOn narratives, and it then cited those materials in support of its claims against SaveOn. *See* Mot. 4-6, 7-9 (citing Exs. 7-15, 20, 24, 26) (detailing J&J's role in crafting messages and materials for the Advocacy Groups and the Advocacy Groups' role in this litigation to date). J&J does not deny that it may rely on the testimony of witnesses affiliated with or sponsored by the Advocacy Groups, or who were influenced by the narratives that J&J secretly pushed through these groups. J&J's experts might also rely on these groups' work. SaveOn is entitled to discovery showing that J&J paid for and helped create "evidence" that it uses to support its claims.

The requested documents are also relevant because they will likely show that, through its work with the Advocacy Groups, J&J itself caused patients the "stress and confusion" for which it seeks to hold SaveOn liable in its General Business Law ("GBL") claim. Mot. 5-6. J&J argues that such evidence is irrelevant because if it can show that SaveOn caused patients stress and confusion, then "SaveOnSP cannot defeat [the GBL] claim by showing that patients also faced stress from other sources in their lives." Mot. 7. J&J cites no authority in support of its position, and SaveOn is aware of none. But even if this were true as a legal matter, it is beside the point: SaveOn seeks evidence that may well show that J&J caused the very patient stress and confusion that it tries to blame on SaveOn in its GBL claim.

This is not some "stale theory," *contra* Opp. 5—it is documented. J&J does not deny that, to avoid ████████████████ Mot. 4 (quoting Ex. 7 at -747.0006); *see also id.* (citing Ex. 8

2

at -760, and Ex. 9 at 11), it pushed a smear campaign targeted specifically at SaveOn via groups like the AIDS Institute, Aimed Alliance, and HIV+Hepatitis Policy Institute, Ex. 15 at -295-97. This J&J-orchestrated campaign intentionally downplayed—and, at times, affirmatively misrepresented—the neutral or positive aspects of accumulators and maximizers. Ex. 8 at -760-61 (explaining that J&J and its advocacy partners needed to develop materials "███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████"); Ex. 10 at -956.0006 (falsely suggesting that accumulators and maximizers "████████████████████████████████████████████████████████"); Ex. 15 at -298-99 (baselessly describing SaveOn's practices as "█████████████████████████████

████████████████████"). By pushing negative and often false narratives through ostensibly "independent" organizations, J&J caused patients stress and confusion.[2]

That is what happened with Anndi McAfee, the only patient whose experience with SaveOn J&J cited in its original complaint. Dkt. 1 ¶ 88. J&J does not (and cannot) dispute the facts evidenced by its own documents: (1) McAfee did not know of SaveOn's involvement with her health insurance until she spoke to TrialCard, J&J's vendor; (2) TrialCard told her that her drug was "non-essential," without telling her that this designation had nothing to do with the drug's medical necessity; (3) TrialCard connected her to one of J&J's closest, paid advocacy partners;

---

[2] J&J also attacks SaveOn's relevance arguments through a series of straw men. SaveOn does not contend (1) that the Advocacy Groups denied patients access to their drugs, *contra* Opp. 2; (2) that the Advocacy Groups are defendants, *contra id.*; (3) that J&J or the Advocacy Groups delayed patients in receiving their drugs, *contra id.* at 3-4; or (4) that SaveOn has asserted claims against J&J, *contra id.* at 4, 7.

Hon. Freda L. Wolfson                                                                                      Page 4

and (4) McAfee published a negative story about SaveOn a few days later, which J&J cited in its complaint. Mot. 5-6 (citing Am. Compl. ¶ 138, and Exs. 13-15).

While J&J calls it "speculat[ion]" and "projection" that McAfee's stress arose from J&J and its vendors, Opp. 8, on the same page J&J confirms that this is true, quoting McAfee's statement that she received "a frantic alert from [her] drug manufacturer that all of the money allotted [to her] through its co-pay assistance program was gone—due to a copay maximizer program called SaveonSP." Opp. 8 (citing Anndi McAfee, *SaveonSP's Copay Maximizer Failed Me: A Patient's Perspective*, DRUG CHANNELS (Nov. 13, 2020), https://www.drugchannels.net/2020/11/saveonsps-copay-maximizer-failed-me.html). The "frantic alert" that sparked McAfee's stress and confusion came not from SaveOn, but from her "drug manufacturer"—from J&J, via TrialCard—telling her that her copay assistance was depleted and falsely implying that she might not receive or be able to afford her drug.

J&J says its actions were justified because SaveOn's "conduct threatened [McAfee's] access to a drug upon which she critically relies." Opp. 8. J&J also says it cannot be blamed for "connect[ing] [McAfee] to advocacy resources to help her and prevent similar harm from befalling others," otherwise patients like her would be "left in the dark to suffer in silence." *Id.*

These assertions are false, as a document that J&J wrongfully withheld on privilege grounds until late last week confirms. ████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████



*Id.* There you have it. J&J executives knew that McAfee suffered no relevant stress or confusion until J&J (via TrialCard) told her that her copay assistance had run out without telling her that she would still get her drug free of charge. They also knew that SaveOn did not threaten McAfee's access to her drug, which she received when she needed it. As J&J persists with its accusations that SaveOn caused patients stress and confusion, SaveOn is entitled to discovery showing that, in fact, their stress and confusion was caused by J&J—and that J&J knew it.

## II.    J&J's Other Arguments are Meritless

*First*, while J&J asserts SaveOn's motion was a "low-priority" on which SaveOn earlier "appeared to give up," Opp. 1, 4-5, SaveOn filed its motion by the relevant the deadline, Dkt. 454; *see also* Nov. 18, 2024 Tr. at 21:4-10 (stating that "delay" would not be a reason why Your Honor "[does not] permit something to happen"); Feb. 24, 2025 Report and Recommendation (stating that "written discovery remains ongoing"). In any event, J&J caused any delay here by repeatedly demanding that SaveOn provide evidence supporting its request, and then refusing to engage with the evidence that SaveOn provided. *See* Ex. 3 at 2; Ex. 38 at 2 (June 17, 2024 Ltr.); Ex. 39 at 1-2 (July 19, 2024 Ltr.); Ex. 32 at 1-2; Ex. 33 at 1; Ex. 34 at 1-2; Ex. 36 at 1; Ex. 40 at 1-2 (Oct. 3, 2024 Ltr.); Ex. 41 at 2 (Oct. 8, 2024 Ltr.); Ex. 42 at 1-2 (Dec. 10, 2024 Ltr.); Ex. 43 at 2 (Dec. 13, 2024 Ltr.).

*Second*, J&J has not produced sufficient documents regarding the Advocacy Groups, *contra* Opp. 10-11—it has produced such documents only incidentally when identified by other search

Hon. Freda L. Wolfson                                                                                    Page 6

terms. J&J has consistently refused to run search terms aimed at uncovering J&J's work with Rational360 and the Advocacy Groups. And because the terms proposed here are narrowly tailored to uncover such documents, hit counts that are more than de minimis would show that there are unique documents on this subject that J&J has not produced, but J&J refuses to provide hit counts showing how many documents the terms identify. *See* Ex. 32 at 3 n.2; Ex. 34 at 2; Ex. 36 at 1.

*Finally*, Your Honor's order during the January 15, 2025 conference did not foreclose this motion. *Contra* Opp. 5; Ex. 5 at 1-2. Your Honor denied without prejudice SaveOn's motion for J&J to add Kevin Kleemeier as a custodian, based in part on his work with advocacy partners, but compelled J&J to search John Hoffman's documents regarding the Arthritis Foundation. Dkt. 495 at 7-8; *see also* Jan. 15, 2025 Tr. at 106-07. Your Honor did not foreclose additional discovery on J&J's work with the Advocacy Groups, and the evidence here shows that the requested discovery is appropriate.

* * * * *

SaveOn appreciates Your Honor's attention to this matter.

Hon. Freda L. Wolfson                                                    Page 7

Respectfully submitted,


<u>/s/ *E. Evans Wohlforth, Jr.*</u>
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com


Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000
pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

Exhibit 37 Confidential

Filed Under Seal

# Exhibit 38



www.pbwt.com

June 17, 2024                                                        Ian Eppler
                                                                    (212) 336-2205

**VIA EMAIL**

Hannah R. Miles, Esq.
Selendy Gay, PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:     **SaveOnSP's Request Nos. 77 and 78**
>         *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
>         **No. 2:22-cv-02632(JKS) (CLW)**

Dear Hannah:

        We write in response to your June 6, 2024 letter purportedly "follow[ing] up on the parties' March 4, 2024 meet and confer" regarding SaveOnSP's Request Nos. 77 and 78 (the "Requests").  During our early March conferral, JJHCS made clear that it would not produce documents responsive to the Requests, on the grounds that the Requests are irrelevant and duplicative.  Your June 6, 2024 letter does not provide a basis for JJHCS to revisit its position.

        As JJHCS explained in its February 22, 2024 letter, JJHCS has already produced numerous responsive documents.  Feb. 22, 2024 Ltr. from I. Eppler to H. Miles at 2.  For example, non-privileged "documents and communications regarding any JJHCS communications with . . . advocacy groups about SaveOnSP" are encompassed within JJHCS's production responsive to SaveOnSP's Request No. 8.  Feb. 22, 2024 Ltr. from I. Eppler to H. Miles at 2.  In response to that demand, JJHCS has already produced non-privileged documents and communications "with or regarding SaveOnSP" from more than twenty custodians—including substantially completing its production of documents through the Court-ordered "refresh" almost five months ago and substantially completing production as to recently added apex custodians, Scott White and Blasine Penkowski, as of May 31, 2024.  If any of these more than twenty custodians had non-privileged and responsive communications "with or regarding SaveOnSP"—including with the dozens of advocacy groups mentioned in the Request Nos. 77 and 78—JJHCS would have produced them as part of its prior productions.

        In the same February 22, 2024 letter, JJHCS explained that it has also produced relevant materials in response to SaveOnSP's Request No. 20, which demanded "studies, reports, and publications that JJHCS has funded or supported regarding accumulator and maximizer programs."  Feb. 22, 2024 Ltr. from H. Miles to I. Eppler at 2-3.  SaveOnSP failed to respond to

---

Hannah Miles, Esq.
June 17, 2024
Page 2

this letter for over three months, only to finally reply on June 6, 2024 and demand that JJHCS "identify what search parameters" were run in response to Request No. 20. June 6, 2024 Ltr. from H. Miles to I. Eppler at 2. In fact, JJHCS disclosed those "parameters" on September 6, 2023 and again on December 22, 2023. Sept. 6, 2023 Ltr. from E. Shane to E. Snow at 2 (Silas Martin search terms); Dec. 22, 2023 Ltr. from J. Long to E. Snow at 3 (clarifying search terms and date range for refresh period). Documents responsive to these prior Requests are sufficient to satisfy SaveOnSP's legitimate discovery needs.

Despite this discovery to date, SaveOnSP now demands that JJJHCS run about 50 new search terms, each of which is in the form of [name of advocacy group] w/50 (accumulator* OR maximizer* OR "copay assistance"). This search uses an overly broad proximity limiter. *See* May 9, 2024 Order at 3 (rejecting a "w/50" proximity limiter as overly broad). But more important, the Requests go well beyond legitimate, previously agreed-upon discovery into issues unrelated to SaveOnSP and encompass a wide swath of irrelevant material related to other accumulators, other maximizers, and even copay assistance programs not at issue in this case.

SaveOnSP contends that it is entitled to these irrelevant documents because it is "reasonable to investigate whether J&J used its influence over these groups to promote the false narrative that copay maximizers and accumulators (which, according to J&J, includes SaveOn) harm patients" and "impacted patients' experiences with the CarePath copay assistance program and caused confusion, concern and stress to patients." June 6, 2024 Ltr. from H. Miles to I. Eppler at 2 (quoting Feb. 12, 2024 Ltr. from H. Miles to I. Eppler).

This case is about SaveOnSP's conduct and whether it harms patients. It is not about whether JJHCS's work to help patients afford their medications somehow causes them stress, about copay assistance programs other than CarePath, or whether JJHCS somehow causes stress to patients in accumulators or maximizers other than SaveOnSP. There are no claims against JJHCS in this case. SaveOnSP points to a single instance in which a patient contacted *TrialCard* (not JJHCS) with a complaint about SaveOnSP, which led *TrialCard* to refer this patient to an advocacy group. This instance involving TrialCard does not somehow transform this case into an enquiry about JJHCS's work with patient advocacy groups, including work with patient advocacy groups involving accumulators, maximizers, and copay assistance programs unrelated to SaveOnSP and/or CarePath. JJHCS will not participate in a broad expansion of discovery into irrelevant matters based on such threadbare justification. Because JJHCS objects to the Requests on relevance, duplication, and privilege grounds, it will not provide SaveOnSP's requested hit counts.

Finally, in addition to being irrelevant, documents related to instances in which JJHCS may have worked with advocacy groups on lobbying, to the extent that any such documents even exist, would be protected from discovery by the First Amendment privilege. *See, e.g.*, *Fraternal Ord. of Police Pennsylvania Lodge v. Twp. of Springfield*, 668 F. Supp. 3d 375, 385 (E.D. Pa. 2023) (explaining that communications regarding "lobbying efforts" are protected from discovery because of the burden on First Amendment associational rights resulting from discovery). JJHCS will not produce privileged documents.

Hannah Miles, Esq.
June 17, 2024
Page 3

       For the aforementioned reasons, your June 6, 2024 letter alone does not provide a basis for JJHCS to revisit its refusal to produce documents responsive to the Requests.  However, JJHCS invites SaveOnSP to meet and confer regarding the Requests.

       Sincerely,


       Ian Eppler

# Exhibit 39

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

July 19, 2024

**Via E-mail**

Ian Eppler
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
ieppler@pbtw.com

Re:     *Johnson & Johnson Health Care Systems Inc. v. Save On SP,*
       *LLC* (Case No. 2:22-cv-02632-JKS-CLW)

Dear Ian,

       We write in response to your June 17, 2024 letter regarding SaveOn's Requests Nos. 77 and 78.

       These Requests seek relevant documents and communications regarding J&J's collaboration with patient advocacy groups or pharmaceutical industry groups about copay assistance programs, accumulators, maximizers, or SaveOn. The documents are relevant to understand whether J&J uses its influence over these groups to promote the narrative that SaveOn harms patients and thereby causes them stress and confusion. These documents may also help show J&J's response to SaveOn, as J&J may have encouraged patient advocacy groups to try and pressure accumulators and maximizers to shut down as early as 2016. JJHCS_0022271 (July 25, 2016 email in which Lade writes, "█████████ ████████████████████████████████████████████████ ███████████████████████████████████████").

       J&J states that it has already produced relevant documents regarding communications with advocacy groups as well as studies, reports and publications it funded or supported regarding accumulators and maximizers. J&J points to four search terms that it has run over a single custodian's documents (Silas Martin). *See* Sept. 6, 2024 Ltr. from E. Shane to E. Snow; Dec. 22, 2023 Ltr. from J. Long to E. Snow. That is not sufficient. The documents that SaveOn cited, *see* June 6, 2024 Ltr. at 2, show that Martin was not the only J&J custodian involved in coordinating

Ian Eppler
July 19, 2024

with these patient advocacy groups. *See, e.g.*, JJHCS_00227193 (Penkowski and Platt); JJHCS_00222271 (Lade); JJHCS_00237117 (Hoffman); *see also*, JJHCS_00237101 (Penkowski and Hoffman). Please provide the hit counts requested in SaveOn's June 6, 2024 letter.[1]

J&J also asserts that it need not produce the requested discovery because any documents regarding its work "with advocacy groups on lobbying ... would be protected from discovery by the First Amendment privilege." June 17, 2024 Ltr. from I. Eppler to H. Miles at 2. The case that J&J cites, *Fraternal Order of Police v. Township of Springfield*, 668 F. Supp. 3d 375, 385 (E.D. Pa. 2023) stands for the uncontroversial proposition that a party asserting a First Amendment privilege might be able to show that enforcement of discovery requests could result in the chilling of protected associational rights in certain circumstances. J&J's relationship with each of the listed advocacy groups is a matter of public record, so privacy interests are not at stake, and there has been no suggestion that disclosure of the communications sought would result in any chilling effects. *Fraternal Order of Police*, 668 F. Supp. 3d at 386.

We request a response by July 26, 2024. We reserve all rights.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

---

[1] J&J wrongly asserts that Judge Wolfson held that the "w/50" proximity limiter is overly broad as a general matter. *See* June 17, 2024 Ltr. from I. Eppler to H. Miles. If J&J intends to assert a burden argument, it must produce hit counts to substantiate its alleged burden.

# Exhibit 40

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

Taylor Stone
Associate
212.390.9088
tstone@selendygay.com

October 3, 2024

**Via E-mail**

Ian Eppler
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
ieppler@pbwt.com

Re:   ***Johnson & Johnson Health Care Systems Inc. v. Save On SP,
      LLC*** (Case No. 2:22-cv-02632-JKS-CLW)

Dear Ian,

We write regarding SaveOn's Requests for Production Nos. 77 and 78 and
in partial response to J&J's August 15, 2024 letter regarding the same.

In prior correspondence, SaveOn explained that J&J's correspondence with
advocacy groups that it financially supports regarding copay assistance programs,
maximizers, accumulators, and SaveOn is relevant to understanding whether J&J
used its influence to promote the narrative that SaveOn harms patients, thereby
causing patients the stress and confusion that J&J alleges that SaveOn causes.

Documents in J&J's recent productions show that J&J has been closely co-
ordinating with advocacy groups to shape anti-accumulator, maximizer, and
SaveOn narratives since 2018. *See, e.g.*, JJHCS_00248257 at 3 ("███████████
████████████████████████████████████████████████████
██████████████"); JJHCS_00237172 at 2 (Copay Support Programs deck stat-
ing "██████████████████" is "████████████████████
████████████████████████████"); JJHCS_00246561 at 16 (Co-Pay Accumulator
& Maximizer Programs Implications and Considerations deck stating "█████████
████████████████████████████████████████████████████
████████████"); JJHCS_00280177 ("█████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████████");
JJHCS_00249492 at -513 ("████████████████████████████

Ian Eppler
October 3, 2024

████████████████████████████████████████"). *See also*
JJHCS_00285500 at 3 (Pembroke Consulting SOW including the project goal
"████████████████████████████████████").

Please let us know if, considering this evidence, J&J will produce the requested documents. We request a response by October 10, 2024.

We reserve all rights and are available to meet and confer.

Sincerely,

/s/ Taylor Stone

Taylor Stone
Associate

# Exhibit 41



www.pbwt.com

October 8, 2024

Ian Eppler
(212) 336-2205

**<u>VIA EMAIL</u>**

Taylor Stone, Esq.
Selendy Gay, PLLC
1290 Avenue of the Americas
New York, NY 10104

> Re:   **SaveOnSP's Request Nos. 77 and 78**
> *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC,*
> <u>No. 2:22-cv-02632 (JKS) (CLW)</u>

Dear Taylor:

We write in response to your October 3, 2024 letter—and further to our letters of August 15, 2024, July 29, 2024, and June 17, 2024—regarding SaveOnSP's Request Nos. 77 and 78 (the "Requests").  In half a year of correspondence and conferrals, dating back to February 2024, we have consistently explained that the documents covered by these Requests are irrelevant. JJHCS stands by its position that it will not produce these documents.

SaveOnSP claims (and reiterates in its October 3, 2024 letter) that it served these Requests to "understand[] whether J&J used its influence to promote the narrative that SaveOn harms patients, thereby causing patients the stress and confusion that J&J alleges that SaveOn causes."  Oct. 3, 2024 Ltr. from T. Stone to I. Eppler at 1.  But as we have repeatedly explained, SaveOnSP is trying to "understand" an irrelevant issue.  "This case is about SaveOnSP's conduct and whether it harms patients, and is not about whether JJHCS's work to help patients afford their medications somehow causes them stress, about copay assistance programs other than CarePath, or whether JJHCS somehow causes stress to patients in accumulators or maximizers other than SaveOnSP."  Jul. 29, 2024 Ltr. from I. Eppler to H. Miles at 1 (quotation marks omitted); *see also* Aug. 15, 2024 Ltr. from I. Eppler to T. Stone at 1-2; Jun. 17, 2024 Ltr. from I. Eppler to H. Miles at 2; Feb. 22, 2024 Ltr. from I. Eppler to H. Miles at 2.

Moreover, even if the question whether JJHCS "cause[s] patients . . . stress and confusion" were relevant to this case, "SaveOnSP provides no reason to conclude that discovery into JJHCS's work with advocacy groups would support this theory" because it "has been unable to point to a single document supporting the theory that JJHCS's work with advocacy groups

Taylor Stone, Esq.
October 8, 2024
Page 2

somehow results in patient 'stress or confusion.'" Jul. 29, 2024 Ltr. from I. Eppler to H. Miles at
1. The documents cited in SaveOnSP's recent letter are not to the contrary.[1]

        For example, SaveOnSP cites JJHCS_00248257, but this document refers to
"███████████████████████████████████████████████████████████
███████" about accumulators, not maximizers. Other documents cited by SaveOnSP describe
advocacy directed to regulators, not consumers. *See, e.g.*, JJHCS_00237172 at 17 (describing
"██████████████████████████████████████" that involved meeting "█████████████
█████████████████"). Advocacy targeted at regulators would not "caus[e] patients . . . stress and
confusion." Still other documents cited by SaveOnSP refer generically to "████████████████
███████████████████████████████████████████████" JJHCS_00246561;
JJHCS_00249492. They do not indicate that the engagement or advocacy had the purpose or effect
of "promot[ing] the narrative that SaveOn harms patients" in a way that "caus[ed] patients . . .
stress and confusion."

        Because SaveOnSP has not provided documents to support its claims regarding the
relevance of documents sought by the Requests, JJHCS will not revisit its relevance objection.
Moreover, for the reasons set forth in our prior letters regarding the Requests, JJHCS also
continues to stand by its objection to producing the documents sought by the Requests on burden
and privilege grounds.

        Very truly yours,


        Ian Eppler

---

[1] While SaveOnSP claims that the documents cited in its recent letter were produced recently,
some were not. For example, SaveOnSP cites JJHCS_00248257, a document that JJHCS produced
in May. SaveOnSP could have cited this document in three prior letters it sent to JJHCS regarding
the Requests. *See* Aug. 12, 2024 Ltr. from T. Stone to I. Eppler; Jul. 19, 2024 Ltr. from H. Miles
to I. Eppler; Jun. 6, 2024 Ltr. from H. Miles to I. Eppler. This prolonged delay and failure to
diligently pursue this material raises questions as to why SaveOnSP "now believes it is entitled to
this discovery." Sept. 9, 2024 Email from M. Nussbaum to I. Eppler.

# Exhibit 42

Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104
212.390.9000

Selendy|Gay

Hannah R. Miles
Associate
212.390.9055
hmiles@selendygay.com

December 10, 2024

<u>Via E-mail</u>

Ian Eppler
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
ieppler@pbwt.com

**Re:**    ***Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*** **(Case No.
2:22-cv-02632-JKS-CLW)**

Dear Ian,

We write in response to your October 8, 2024 letter regarding SaveOn's Request
Nos. 77 and 78. SaveOn has continued to receive documents showing how closely J&J
coordinated with purportedly independent advocacy groups to shape anti-accumulator,
maximizer, and SaveOn narratives. For the reasons stated below, we renew our request that
J&J produce relevant documents.

On December 2, 2024, SaveOn received a small production from third party John
Hoffman, including a July 11, 2022 text message showing that Hoffman, along with non-
custodian Melia Becker, decided to proceed with " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" in part " ▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" HOFFMAN_00000004. A June 6, 2022
presentation titled: " ▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," JJHCS_00288447,
explains the context: J&J was working to " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *id.* at -448; *see also* JJHCS_00288458 (email from LD Platt
explaining that " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"). Hoffman's text
message makes clear that the " ▮▮▮▮▮▮▮" identified was the AIDS Institute, with
partnership from the All Copays Count Coalition. *See also id.* at -450 (listing " ▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"). To support this " ▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮. *Id.* at -456.

Ian Eppler
December 10, 2024

On September 20, 2022, Rational 360—the strategic communications agency hired by J&J to assist with this campaign—sent The AIDS Institute a memorandum recommending that the organization "████████████████████████████████████████████████ " to "████████████████████████████████████████████████████████████████████████. JJHCS_00236760. The next day, September 21, 2022, J&J employees including LD Platt and Melia Becker had a "███████████████████████████████████ " with Rational 360, and the agenda included "███████ " JJHCS_00254198. *See also* https://rational360.com/case-studies/activating-grassroots-advocates-on-critical-healthcare-access-issues-across-35-states/ ("Rational 360 serves as the lead state grassroots advocacy and communications consultant for a Fortune 50 healthcare company, leading, developing, and managing unbranded customized state-level advocacy, messaging, and media campaigns in approximately 35 states."); *id.* ("Rational 360 has built influential advocacy campaigns, engaging leading third-party groups.").

Productions from J&J and third parties continue to show how important coordination with these patient advocacy groups was to J&J's response to copay accumulators, maximizers, and SaveOn. Contrary to J&J's protests in its motion to strike that SaveOn has unfairly "disparage[d] nonprofit organizations, like the AIDS Institute, that have sounded the alarm about SaveOnSP's misconduct," Nov. 27, 2024 Motion at 1, 9, discovery shows that these organizations were acting as mouthpieces of J&J's lobbying efforts. Because J&J appears to intend to rely on testimony or statements from these "third parties" to demonstrate public harm in support of its GBL claim, *see* Am. Compl. ¶¶ 30 n. 6, 32 & n.9; SaveOn is entitled to further discovery to explore the relationship between J&J and these groups.

Please let us know if, considering this new evidence, J&J will produce documents responsive to RFP Nos. 77 and 78. If so, please provide the hit counts that SaveOn requested on June 6, 2024. *See* June 6, 2024 Ltr. from H. Miles to I. Eppler. If you do not agree to produce responsive documents by December 17, 2024, we will consider the parties to be at impasse.

We request a response by December 17, 2024. We reserve all rights and are available to meet and confer.

Sincerely,

/s/ Hannah Miles

Hannah R. Miles
Associate

# Exhibit 43



December 13, 2024

Ian D. Eppler
(212) 336-2205

**By Email**

Hannah Miles, Esq.
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

  Re: **SaveOnSP's Request Nos. 77 and 78**
    *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
    **Case No. 2:22-cv-02632 (JKS) (CLW)**

Dear Hannah:

    We write in response to SaveOnSP's December 10, 2024 letter regarding SaveOnSP's Request Nos. 77 and 78 (the "Requests"), and further to our October 8, 2024, August 15, 2024, July 29, 2024, and June 17, 2024 letters regarding the same.

    As an initial matter, JJHCS objects to SaveOnSP's demand because it seeks to reopen a dormant issue. SaveOnSP served the Requests nearly a year ago, in December 2023. In January 2024, JJHCS timely objected to the Requests and declined to produce responsive documents, on relevance and duplication grounds. *See* JJHCS's Responses and Objections to SaveOnSP's Sixth Set of RFPs at 8–9. During the intervening year, SaveOnSP has failed to diligently pursue the Requests, often ignoring JJHCS's correspondence regarding the Requests for months at a time. *See* Dec. 10, 2024 Ltr. from H. Miles to I. Eppler at 1 ("We write in response to your October 8, 2024 letter regarding [the Requests]"); Oct. 3, 2024 Ltr. from T. Stone to I. Eppler at 1 (responding to an August 15, 2024 letter from JJHCS regarding the Requests).

    Yet despite its own decision to let the Requests go dormant, SaveOnSP now revives the Requests and demands that JJHCS "agree to produce responsive documents" within one week of its most recent missive. Dec. 10, 2024 Ltr. from H. Miles to I. Eppler at 2. JJHCS will not do so. JJHCS has previously explained that SaveOnSP's belated attempts to revive dormant discovery issues are improper. *See, e.g.*, Sept. 19, 2024 Ltr. from J. Chefitz to H. Miles at 1–2 (declining to comply with SaveOnSP's request to reopen, "almost a year later", a discovery issue that "ha[d] long been settled"). Moreover, SaveOnSP's lack of diligence in pursuing the Requests undermines SaveOnSP's claim that the Requests seek "important" and relevant documents. Dec. 10, 2024 Ltr. from H. Miles to I. Eppler at 2. If the Requests genuinely called for relevant documents important to SaveOnSP's defense, SaveOnSP would not have ignored the Requests for months at a time over the past year.

Hannah Miles, Esq.
December 13, 2024
Page 2

In any event, JJHCS has serially explained over the course of the past year that the Requests call for irrelevant documents. *See* Oct. 8, 2024 Ltr. from I. Eppler to T. Stone at 1; Aug. 15, 2024 Ltr. from I. Eppler to T. Stone at 1; Jul. 29, 2024 Ltr. from I. Eppler to H. Miles at 1; Jun. 17, 2024 Ltr. from I. Eppler to H. Miles at 2. Nothing has changed. In its most recent letter, SaveOnSP points to a handful of documents—most of which were produced months ago—that purportedly illustrate "how important coordination with these patient advocacy groups was to J&J's response to copay accumulators, maximizers, and SaveOn." Dec. 10, 2024 Ltr. from H. Miles to I. Eppler at 2. Even if SaveOnSP's claim of "coordination" were true, SaveOnSP does not explain why such "coordination" would be relevant. We have explained that "[t]his case is about SaveOnSP's conduct and whether it harms patients," and is not "an enquiry about JJHCS's work with patient advocacy groups." Jun. 17, 2024 Ltr. from I. Eppler to H. Miles at 2. Nothing in SaveOnSP's most recent letter, or the documents cited therein, provides a reason to revisit that conclusion.

JJHCS stands by its objection to the Requests on relevance grounds. Additionally, JJHCS maintains its previously articulated objections to the Requests on the basis of undue burden and privilege. *See, e.g.,* Aug. 15, 2024 Ltr. from I. Eppler to T. Stone at 2; Jul. 29, 2024 Ltr. from I. Eppler to H. Miles at 2–3.

Very truly yours,

*/s/ Ian Eppler*
Ian D. Eppler