# EXHIBIT C

# Robinson+Cole

E. EVANS WOHLFORTH, JR.

666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com
Direct (212) 451-2954

Admitted in New York
and New Jersey

February 24, 2025

**VIA E-Mail**

Hon. Freda L. Wolfson, U.S.D.J. (ret.)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068

> **Re:**   ***Johnson & Johnson Health Care Systems, Inc. v. Save On SP, LLC, Express Scripts, Inc., and Accredo Health Group, Inc.***
> **No. 2:22-cv-02632 (JKS) (CLW)**

Dear Judge Wolfson:

On behalf of SaveOn,[1] we write in reply to J&J's opposition to SaveOn's motion to compel J&J to produce documents sufficient to show J&J employees with access to PAFA+ and to produce three categories of relevant data from that platform.

J&J now concedes that some of its employees could access information in PAFA+ showing individual patients that J&J and its vendors had identified as being on accumulators, maximizers, or SaveOn-advised plans. This information is obviously relevant. J&J knew which patients were

---

[1] SaveOn uses the same abbreviations as its opening brief.

Boston | Hartford | New York | Washington, DC | Providence | Miami | Stamford | Wilmington | Philadelphia | Los Angeles | Albany | **rc.com**

Robinson & Cole LLP

Hon. Freda L. Wolfson                                                    Page 2

on such plans and intentionally decided to keep giving them copay assistance, paying them what it intended to pay, acquiescing to the conduct it now claims breaches its T&Cs, and failing to mitigate any purported damages.

J&J agrees, for the most part, that PAFA+ contains relevant records related to BIs, case-and-task notes, and Patient Segmentation Decisions. Contrary to its assertions, J&J has not produced (or agreed to produce) all relevant data—it still withholds data about its algorithmic BIs, data about BIs and Patient Segmentation Decisions for multiple drugs at issue, and nearly all case-and-task notes. J&J has no valid basis to withhold this vital information and must produce it.

**I.    J&J's Knowledge of Information On PAFA+ is Relevant**

J&J's access to and knowledge of patient information of PAFA+ is relevant to SaveOn's affirmative defenses of acquiescence and mitigation. Acquiescence looks at whether J&J "perform[ed] under the contract after learning of the breach." *N.J., Dep't of Env't Prot. v. Gloucester Env't Mgmt. Servs., Inc.*, 264 F. Supp. 2d 165, 177 (D.N.J. 2003). Mitigation looks at whether J&J took steps that were "reasonable" to avoid its alleged damages. *Natreon, Inc. v. Ixoreal Biomed, Inc.*, 2017 WL 3131975, at *7 (D.N.J. July 21, 2017) (Wolfson, J.).

As Your Honor recognized, both defenses turn on "knowledge on the part of J&J, or JJHCS, not just what TrialCard knows." Jan. 15, 2025 Hr'g Tr. at 84:22-24. J&J does not dispute that PAFA+ contained information identifying specific patients on SaveOn plans and patients on accumulators and maximizers generally. Opp. 3 (acknowledging that TrialCard's production of BIs came from PAFA+). Evidence that J&J's employees could access this information could show that J&J knew of specific patients on SaveOn-advised plans but continued to provide them with copay assistance—showing that J&J acquiesced to SaveOn's conduct and failed to mitigate any

Hon. Freda L. Wolfson                                                                                    Page 3

alleged damages.[2] It could also show that J&J paid these patients what it intended to pay, showing

that J&J has no damages in the first place. This evidence is also relevant to J&J's credibility.[3]

For the first time in this case, J&J now says that it "is not arguing that an inability to access

the PAFA+ database is the reason why it did not take further action." Opp. 2; *see also id.* at 9-10

("JJHCS is not arguing that lack of access to PAFA+ was the reason why it failed to take any steps

relevant to mitigation."). But J&J does not represent that it had knowledge of all information on

PAFA+. The most direct evidence for SaveOn to prove this knowledge would be documents suf-

ficient to show which individuals at J&J had permission to view patient data, in identified and de-

identified form, on PAFA+, as SaveOn requested. Mot. 6-7. [4]

---

[2] J&J asserts that its "response to SaveOnSP's lack of mitigation defense" will be that it could not
identify patients on SaveOn-advised plans "with sufficient accuracy" because of SaveOn's pur-
ported "efforts to evade manufacturer detection." Opp. 9 & n.5. Even if J&J's factual theory had
merit (it does not), the requested evidence is still relevant to those defenses, because SaveOn is
entitled to show that J&J had all the information it needed to enforce its claimed interpretation of
the T&Cs and mitigate its damages and chose not to. In fact, the data SaveOn seeks in this motion
is centrally relevant to the question of whether J&J's identifications of patients were reliable, be-
cause it will show not only that J&J identified patients, but *how* it identified patients.

[3] J&J recently admitted that "[c]ertain individuals at J&J did have view-only log-in access to
[PAFA+]." Jan. 15, 2025 Hr'g Tr. at 77:7-8. This contradicts J&J's sworn interrogatory response
that it ███████████████████████████████████████████████████████████████
███████████████████████ Ex. 5. at 4—if J&J had access to data in PAFA+ identifying patients
on SaveOn-advised plans then it ███████████████████████████████████████
This raises a legitimate question about J&J's credibility, even if J&J asserts that its interrogatory
response was somehow accurate (without explaining how). Opp. 11.

[4] SaveOn's alternative request, for J&J to add the senior-most employee with access to patient
information on PAFA+ as a custodian, could allow SaveOn to chain together knowledge from
J&J's vendors to its decisionmakers. While J&J complains about the potential burdens of an addi-
tional custodian, Opp. 10-11, those complaints are premature unless and until Your Honor grants
SaveOn's alternative relief, J&J identifies the proper custodian, and the parties meet and confer
about potential search terms.

Hon. Freda L. Wolfson                                                                    Page 4

J&J articulates no clear burden associated with SaveOn's request, except to call it "no simple ask." Opp. 10. But standard databases routinely keep track of user permissions and changes to them over time. J&J does not suggest, let alone show, that it could not easily pull this information from PAFA+.

## II.    J&J Has Not Produced All Relevant Data from PAFA+

### A.    Benefits Investigations

**Vendors.** J&J says that TrialCard and RISRx are the "two vendors" that it "hired" to conduct BIs, Opp. 3—but SaveOn's request includes all vendors who actually identified or attempted to identify patients, not just those that J&J specifically "hired" to do so, and J&J does not address evidence that at least one other vendor, CareMetX, performed relevant BIs. Mot. 11-12 & n.6.

**Algorithmic BIs.** J&J does not dispute that its vendors conducted algorithmic benefits investigations in addition to formal benefits investigations. J&J pretends that SaveOn seeks only the "results" of these algorithmic BIs, Opp. 4, but SaveOn seeks all records about them, Mot. 8, not just their results. J&J does not deny that it has records beyond the results. TrialCard's documents indicate that there are additional records: ████████████████████████████████████

██████████  *see* Ex. 43 (TRIALCARD_00007164) (████████████████████████████

███████████████████████████████████████████████████████████████████

██████ c, *see* Ex. 44 (TRIALCARD_00007177) (████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████).

J&J suggests that SaveOn seeks only information about algorithmic BIs conducted by TrialCard, Opp. 4, but SaveOn's request includes all vendors. J&J points to separate negotiations about production of records from RIS Rx, Opp. 3-4—but this is irrelevant to SaveOn's request for data from PAFA+, which J&J inarguably controls. J&J has never represented that the records of

4

Hon. Freda L. Wolfson                                                                    Page 5

algorithmic BIs that RIS Rx produced are the same data that exists in PAFA+ or that PAFA+ contains no additional information about these BIs beyond what RIS Rx has provided.

**Other Drugs**. SaveOn seeks all records concerning BIs that any of J&J's vendors performed regarding patients taking any drug at issue. J&J says that the only relevant drugs are Stelara and Tremfya because it did not have a "CAP program" for other drugs. Opp. 5. But the absence of a CAP program shows just that J&J took no actions to address the impact of accumulators, maximizers, and SaveOn-advised plans for those drugs. The relevant question here is whether J&J *identified* patients on those other drugs as being on accumulators, maximizers, or SaveOn—regardless of what J&J called those identification efforts or what it did (or failed to do) after it identified the patients. J&J does not dispute that it identified patients on SaveOn-advised plans who took, at a minimum, Erleada, Opsumit, Uptravi, and Tracleer, and it does not deny that its vendors conducted BIs to identify those patients. Mot. 10-12.

**Reliability.** J&J admits that it is relevant "whether the information in the PAFA+ database was complete, accurate, and reliable such that JJHCS should have done more than it did." Opp. 2. J&J also does not dispute that TrialCard and RIS Rx have produced deficient data. Mot. 12. J&J must produce all relevant data from PAFA+ so that SaveOn can have a clear view of the information that J&J could access through PAFA+. J&J's proposed solution—that SaveOn identify records that it thinks are missing from PAFA+ so that J&J can ask its vendors to produce them, Opp. 5-6—flips discovery on its head, imposing burdens on SaveOn that far outweigh the minimal costs of producing this data. J&J has an affirmative obligation to produce the relevant data in its control in the first instance and only J&J knows the full extent of the data in PAFA+. Nor has J&J explained how producing this data would be unduly burdensome. SaveOn should not have to sift

5

Hon. Freda L. Wolfson                                                              Page 6

through existing data to negotiate piecemeal additional productions from J&J's vendors when J&J

can simply produce the PAFA+ information itself.

### B.    Case-and-Task Notes

J&J does not dispute that all requested patient-level case-and-task notes are stored on

PAFA+. Mot. 12-14. It does not dispute that these records are relevant. J&J also does not quantify

the burden of exporting case-and-task notes from PAFA+, which is almost certainly minimal.[5]

J&J instead asserts that, in a prior ruling, Your Honor somehow excused J&J from produc-

ing all case-and-task notes from PAFA+. Opp. 7-8 (citing Dkt. 192 at 12-13). J&J takes this ruling

well out of context. That dispute concerned a request that J&J review 188,000 custodial documents

identified by three search terms, Dkt. 146 at 11 (August 24, 2023 Joint Letter), which Your Honor

found to be an undue burden, Dkt. 192 at 12-13. That dispute did not involve the production of

data from a non-custodial source, and it could not have involved a production from PAFA+, be-

cause J&J did not acknowledge that database's existence for another six months. Opp. 2-3 (citing

J&J Ex. 1). J&J does not dispute that it could readily export the requested information from

PAFA+.

---

[5] While J&J suggests that SaveOn's request for case-and-task notes is tardy, Opp. 6-7, Your Honor gave the parties until February 3, 2025 to raise any disputes about discovery up until that point. Dkt. 454 at 1. In any event, J&J's story of delay is wrong. SaveOn had only limited visibility into the CAP program in September 2023, when it agreed to an initial set of search terms with Trial-Card, *contra* Opp. 6. SaveOn certainly was not aware that J&J had a database in which it could sort by patients identified as on an accumulator or maximizer and easily locate all their call notes. *See* Dkt. 171 at 81:14-16 (J&J disclaiming that such a "pool of data" exists). J&J did not begin to make meaningful productions about the CAP program, with CAP custodians, until January 31, 2024. *See* Ex. 45 (Jan. 31, 2024 Ltr.). Those documents showed for the first time how significant J&J's mitigation solution was, including how many thousands of patients it identified and moved into a CAP program—clarifying how pitifully small J&J's production of case-and-task notes has been. Mot. 13-14.

Hon. Freda L. Wolfson                                                                        Page 7

### C.      Patient Segmentation Decisions

SaveOn requested all Patient Segmentation Decisions for all patients enrolled in CarePath for a drug at issue. Mot. 8. J&J acknowledges that these PSDs will show the results of any algorithmic BIs and any patient appeals, if J&J placed a patient into a CAP program (including which program and when), and "any changes in patient classification." Opp. 8. J&J confirms that it will produce this data on a patient-by-patient basis for patients taking Stelara and Tremfya. *Id.*

While J&J admits that it had CAP programs for three other drugs at issue—Opsumit, Uptravi, and Tracleer—it refuses to produce PSDs for patients on those drugs, asserting that it had only "CAPa" programs for them, which it says were not "aimed at identifying patients in SaveOnSP (or even patients in maximizers generally)[.]" Opp. 8-9. But J&J does not address evidence that it identified "CAPm" patients on those drugs, even if it did not place them into an active CAP program. Ex. 32 at 19. It also does not address evidence that it sometimes intentionally placed those patients into a CAPa program. Ex. 41 at Tab "PH Accumulators". And the PSDs would be relevant even if J&J identified the patients solely as being on accumulators—J&J would know that the patients' plans did not count copay assistance towards the out-of-pocket maximum and could have reduced payments to those patients. J&J must produce all PSDs for patients on Opsumit, Uptravi, and Tracleer.

For all other drugs at issue, J&J says that it "did not have a CAP program of any kind," Opp. 8, but it stops short of representing that it has no PSDs for patients taking those drugs or that it took no steps to identify whether those patients were on accumulators, maximizers, or SaveOn-advised plans. Your Honor should compel J&J to produce all PSDs for patients taking these drugs.

Hon. Freda L. Wolfson                                                     Page 8

If J&J has no PSDs for them, it will produce nothing. But if J&J does have PSDs for these drugs,

it must produce them, whether it formally had a CAP program for the drugs or not.[6]

In sum, J&J must produce *all* relevant records—Benefits Investigations (algorithmic or

otherwise), case-and-task notes, and Patient Segmentation Decisions—for patients on *any* drug at

issue, created by *any* vendor during the discovery period, including *all* such records in PAFA+.[7]

SaveOn appreciates Your Honor's attention to this matter.

Respectfully submitted,


/s/ E. Evans Wohlforth, Jr.
E. Evans Wohlforth, Jr.
Robinson & Cole LLP
666 Third Avenue, 20th floor
New York, NY 10017-4132
Main (212) 451-2900
Fax (212) 451-2999
ewohlforth@rc.com

---

[6] J&J makes no serious argument that producing any of the data at issue here would be burdensome. While it asserts that "re-pull[ing]" data is "by definition unduly burdensome," Opp. 9 n.4, J&J does not deny that it could simply download and produce the requested data, Mot. 15, or that pulling only some data, as it proposes, would be more burdensome and prone to errors. Mot. 16.

[7] J&J says that some records about Erleada and PAH drugs are not on PAFA+, Opp. 5 & n.3, but does not say where the records that SaveOn identified came from. J&J has also not represented that all case-and-task notes are on PAFA+, and documents suggest that s███████████████████ ███████████. *See* Ex. 46 (JJHCS_00253572). If J&J has data outside of PAFA+ regarding its efforts to identify patients on accumulator, maximizers, or SaveOn plans who were taking any of the drugs at issue, it must produce it. *See* Mot. 11 n. 6 (explaining that J&J refuses to state whether other relevant databases with noncustodial data exist and moving to compel records from any undisclosed databases housing relevant records).

Hon. Freda L. Wolfson                                                                Page 9

Philippe Z. Selendy (admitted *pro hac vice*)
Andrew R. Dunlap (admitted *pro hac vice*)
Meredith Nelson (admitted *pro hac vice*)
Elizabeth H. Snow (admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

pselendy@selendygay.com
adunlap@selendygay.com
mnelson@selendygay.com
esnow@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

# Exhibits 43-44 Confidential

# Filed Under Seal

# Exhibit 45



www.pbwt.com

January 31, 2024

Julia Long
(212) 336-2878
jlong@pbwt.com

**VIA EMAIL**

Elizabeth Snow, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
esnow@selendygay.com

> **Re:**  **JJHCS's Eleventh Production**
> *Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC*,
> No. 22 Civ. 2632 (JKS) (CLW)

Dear Elizabeth:

Today, JJHCS is producing JJHCS_PROD011, bearing Bates numbers JJHCS_00157643– JJHCS_00195480.  Accompanying this letter is an FTP link you can use to download the production.  The password will be sent separately via email.

This production contains, among other things, certain re-imaged documents, as agreed to by the parties.  JJHCS refers SaveOnSP to **Exhibit A**, which cross-references the Bates numbers of the files in our prior productions with the Bates numbers of the new files being produced today.

The production contains documents that are designated "CONFIDENTIAL," "ATTORNEYS' EYES ONLY," and "CONFIDENTIAL HEALTH INFORMATION" pursuant to the Discovery Confidentiality Order in this matter, dated November 22, 2022.  In the event this production contains any material protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection, such production was inadvertent and should not be construed as a waiver of any privilege or protection by JJHCS.  JJHCS reserves the right to demand the immediate return and/or destruction of any such materials.  JJHCS further reserves the right to amend or add a designation of confidentiality upon discovery of any material inadvertently produced without the appropriate designation.

Please do not hesitate to reach out if you have any questions.

Very truly yours,

*/s/ Julia Long*
Julia Long

**Exhibit A - Attorneys' Eyes Only**
*Johnson & Johnson Health Care Systems Inc. v. Save On SP, LLC ,*
No. 22 Civ. 2632 (ES) (CLW)

| PRODBEG | PRODBEG_REP | PRODBEGATT | PRODBEGATT_REP | PRODEND | PRODEND_REP | PRODENDATT | PRODENDATT_REP |
|---|---|---|---|---|---|---|---|
| JJHCS_00188655 | JJHCS_00157071 | JJHCS_00188655 | JJHCS_00157071 | JJHCS_00188656 | JJHCS_00157072 | JJHCS_00188676 | JJHCS_00157092 |
| JJHCS_00188657 | JJHCS_00157073 | JJHCS_00188655 | JJHCS_00157071 | JJHCS_00188676 | JJHCS_00157092 | JJHCS_00188676 | JJHCS_00157092 |
| JJHCS_00173742 | JJHCS_00144726 | JJHCS_00173742 | JJHCS_00144726 | JJHCS_00173745 | JJHCS_00144729 | JJHCS_00173755 | JJHCS_00144739 |
| JJHCS_00173746 | JJHCS_00144730 | JJHCS_00173742 | JJHCS_00144726 | JJHCS_00173755 | JJHCS_00144739 | JJHCS_00173755 | JJHCS_00144739 |
| JJHCS_00181467 | JJHCS_00145720 | JJHCS_00181467 | JJHCS_00145720 | JJHCS_00181471 | JJHCS_00145724 | JJHCS_00181473 | JJHCS_00145726 |
| JJHCS_00181472 | JJHCS_00145725 | JJHCS_00181467 | JJHCS_00145720 | JJHCS_00181473 | JJHCS_00145726 | JJHCS_00181473 | JJHCS_00145726 |
| JJHCS_00184735 | JJHCS_00152506 | JJHCS_00184735 | JJHCS_00152506 | JJHCS_00184851 | JJHCS_00152622 | JJHCS_00184852 | JJHCS_00152623 |
| JJHCS_00184852 | JJHCS_00152623 | JJHCS_00184735 | JJHCS_00152506 | JJHCS_00184852 | JJHCS_00152623 | JJHCS_00184852 | JJHCS_00152623 |
| JJHCS_00184853 | JJHCS_00152654 | JJHCS_00184853 | JJHCS_00152654 | JJHCS_00184943 | JJHCS_00152744 | JJHCS_00184944 | JJHCS_00152745 |
| JJHCS_00184944 | JJHCS_00152745 | JJHCS_00184853 | JJHCS_00152654 | JJHCS_00184944 | JJHCS_00152745 | JJHCS_00184944 | JJHCS_00152745 |

# Exhibit 46 Confidential

# Filed Under Seal